1   Michael D. Braun (167416)
    Marc L. Godino (182689)
2   BRAUN LAW GROUP, P.C.
    12400 Wilshire Boulevard
3   Suite 920
    Los Angeles, CA 90025
4   Tel:    (310) 442-7755
    Fax:    (310) 442-7756
5
    Roy A. Katriel
6   THE KATRIEL LAW FIRM, P.C.
    1101 30th Street, NW
7   Suite 500
    Washington, DC 20007
8   Tel:    (202) 625-4342
    Fax:    (202) 625-6774
9
    Jacqueline Sailer
10  Eric J. Belfi
    MURRAY, FRANK & SAILER LLP
11  275 Madison Avenue
    Suite 801
12  New York, NY 10016-1101
    Tel:    (212) 682-1818
13  Fax:    (212) 682-1892

14  Attorneys for Plaintiff

15

16                      UNITED STATES DISTRICT COURT

17                      NORTHERN DISTRICT OF CALIFORNIA

18                              SAN JOSE DIVISION

19                                          C05          00037

20                                   File via fax

21  THOMAS WILLIAM SLATTERY,           )    CASE NO.:
    Individually, And On Behalf Of All Others  )
22  Similarly Situated,                )    CLASS ACTION COMPLAINT
                                       )
23                      Plaintiff,     )    JURY TRIAL DEMANDED
                                       )
24          vs.                        )
                                       )
25  APPLE COMPUTER, INC.               )
                                       )
26                      Defendant.     )
                                       )
27  ─────────────────────────────────

28

Dockets.Justia.com

1

## NATURE OF THE ACTION

2      1.      Plaintiff Thomas William Slattery ("Plaintiff" or "Slattery") brings this action

3   individually on behalf of himself and on behalf of all other similarly situated persons who have

4   purchased online music recordings directly from Apple's online iTunes music store for playback on

5   portable hard drive digital music players.  In the normal course of business, a music Compact Disc

6   ("CD") purchased at any neighborhood music store is playable on any CD player of the customer's

7   choosing.  Thus, it would be egregious and unlawful for a major retailer such as Tower Records, for

8   example, to require that all music CDs purchased by consumers at Tower Records stores be played

9   only with CD players purchased at Tower Records.  Yet, this is precisely what Apple has done.

10  Apple, which possesses monopoly market power in the relevant market for the legal sale of online

11  digital music files through its Apple iTunes online music store, prevents consumers who purchase

12  music recordings from Apple's iTunes online music store from playing this music on any portable

13  hard drive digital music player other than Apple's own iPod portable digital music player.  This

14  unlawful bundling and tying arrangement violates the federal antitrust laws and California's unfair

15  competition law by suppressing competition, denying consumer choice, and forcing consumers to

16  pay supra-competitive prices for their digital portable music players.  Worse yet, Apple similarly

17  requires that owners of its iPod portable hard drive digital music player only be able to purchase

18  music online to play directly on the iPod from Apple's own iTunes store.  Apple has rigged the

19  hardware and software in its iPod such that the device will not directly play any music files

20  originating from online music stores other than Apple's iTunes music store. Plaintiff brings this

21  class action individually and on behalf of all other similarly situated consumers to seek redress for

22  Defendant's unlawful conduct.

23                          ## JURISDICTION AND VENUE

24      2.      Counts I and II of this Complaint are brought pursuant to Section 1 of the Sherman

25  Act, 15 U.S.C. § 1, to seek redress for Defendant's illegal tying and/or bundling conduct.  This

26  Court, therefore, has subject matter jurisdiction over these counts of the Complaint pursuant to 28

27  U.S.C. § 1331.

28

2

1    3.    Count III and IV of this Complaint are brought pursuant to Section 2 of the Sherman

2    Act, 15 U.S.C. § 2, to seek redress for Defendant's monopolization of the portable hard drive digital

3    music player market and the market for online sales of digital music files, respectively. This Court,

4    therefore, has subject matter jurisdiction over these counts of the Complaint pursuant to 28 U.S.C. §

5    1331.

6    4.    Counts V and VI of this Complaint are brought pursuant to Section 2 of the Sherman

7    Act, 15 U.S.C. § 2 to seek redress for Defendants' unlawful monopoly leveraging conduct. This

8    Court, therefore, has subject matter jurisdiction over these counts of the Complaint pursuant to 28

9    U.S.C. § 1331.

10    5.    Count VII of this Complaint is brought pursuant to the California Cartwright Act,

11    California Business and Professions Code § 16700 et. seq. to seek redress for Defendant's unlawful

12    conduct in violation of state law. Because the facts underlying this count share a common nucleus

13    of operative facts and law with the remaining counts of this Complaint, this Court has supplemental

14    subject matter jurisdiction over this Count of the Complaint pursuant to 28 U.S.C. § 1367.

15    6.    Count VIII of the Complaint is brought pursuant to California's Unfair Competition

16    Law, California Business and Professions Code Section 17200 et. seq. Because the facts underlying

17    this count share a common nucleus of operative facts and law with the remaining counts of this

18    Complaint, this Court has supplemental subject matter jurisdiction over this Count of the Complaint

19    pursuant to 28 U.S.C. § 1367.

20    7.    Counts IX and X of the Complaint are brought pursuant to the common law of unjust

21    enrichment and monopolization, respectively. Because the facts underlying these counts share a

22    common nucleus of operative facts and law with the remaining counts of this Complaint, this Court

23    has supplemental subject matter jurisdiction over these Counts of the Complaint pursuant to 28

24    U.S.C. § 1367.

25    8.    Defendant Apple Computer, Inc. is headquartered in Cupertino, California, transacts

26    significant business within this Judicial District, and crafted the conduct giving rise to this

27    complaint within this judicial district. Venue in this District is, therefore, proper pursuant to 28

28    U.S.C. § 1391 and 15 U.S.C. § 22.

3

1

**PARTIES**

2    9.    Plaintiff Thomas William Slattery is a resident of California. During the Class

3  Period (as defined below), Plaintiff purchased music online from Apple's iTunes music store. As

4  Apple has acted to prevent any portable hard drive digital music player, other than its own Apple

5  iPod, from playing digital music files  purchased at Apple's iTunes online music store, Plaintiff was

6  also forced to purchase an Apple iPod device if he wished to play and portably enjoy the music he

7  purchased online from Apple's iTune's music store. Similarly, as Apple has prevented any online

8  music store, other than its own iTunes store, from selling digital music files that can be directly

9  played on Apple's iPod device, Plaintiff has been forced to continue purchasing online digital music

10  files solely from Apple's iTunes store to the exclusion of all other online vendors of digital music

11  files.

12    10.    Defendant Apple Computer, Inc. ("Apple" or "Defendant") is a corporation

13  organized under the laws of the State of California, and having its principal place of business at 1

14  Infinite Loop in Cupertino, California 95014. Apple designs, manufactures, and sells personal

15  computers and related software, services, peripherals, and network solutions. Of particular

16  significance to this complaint, Apple also designs, develops, and markets a line of portable hard

17  drive digital music players, known as the Apple iPod, along with related accessories and services

18  including the online distribution, through its iTunes music store, of music and audio books.

19  **MARKET DEFINITIONS AND MARKET POWER**

20    11.    For purposes of this complaint, there are two relevant product markets. The first

21  product market consists of the product market for legal online sales of digital music files. The

22  second product market consists of the product market for portable hard drive digital music players.

23  The relevant geographic market for both of these foregoing relevant product markets is the United

24  States.

25  **The Market for Legal Online Sales of Digital Music Files**

26    12.    In the days before the advent and prevalence of the Internet, purchases of music were

27  generally limited to sales of records, tapes, and/or compact disc recordings through traditional

28  "brick and mortar" music stores. Although this sales channel continues to exist, the advent of the

4

1    Internet has created a new market, wherein consumers can search for and purchase music tracks of
2    their choice via their computer by simply logging onto the Internet. When this new market first
3    came into being, its legality was called into question and was the subject of contentious litigation, as
4    was epitomized by the much publicized "Napster" litigation. The result of this litigation history was
5    that the marketplace recognized a need for legitimate outlets wherein consumers could avail
6    themselves of their Internet access to make online purchases of digital music files in legitimate and
7    lawful transactions.

8        13.    Defendant Apple recognized the need and potential for such a market, and on
9    approximately April 28, 2003 launched its iTunes online music store ("iTunes"). iTunes, which any
10   consumer with access to the Internet can access by merely logging onto the Apple iTunes' website,
11   is both an online music selling venue and a software package. iTunes allows consumers to log onto
12   Apple's iTunes online store, and browse for various digital files of songs and music recordings by
13   thousands of individual artists and virtually all of the major music recording labels.

14       14.    Users of the iTunes store may then choose to purchase a particular track of
15   music. Currently iTunes charges $0.99 per track of music. Unlike a purchaser at a traditional
16   "brick and mortar" music store, users of iTunes who purchase a track of music do not walk away
17   with an audio cassette tape or record album. Instead, upon purchasing a track of music and paying
18   the requisite price for the purchase, a digital file containing the music purchased is downloaded
19   from Apple's iTunes site to the user's computer or portable hard drive digital music player, where it
20   may be stored for further use by the user. The process by which this digital music file is transmitted
21   and used is described more fully in paragraphs 28-54 below.

22       15.    There is a recognized distinct product market for the legal purchase of digital music
23   files online. Consumers and merchants have come to recognize the online digital music file sale
24   market as a separate and distinct market.

25       16.    The online digital music file market offers a number of features not readily available
26   at traditional "brick and mortar" music stores, which help set this online digital music file market
27   apart as a distinct market. For example, whereas shoppers at traditional "brick and mortar" music
28   stores must typically purchase an entire album of the artist or group selected, online sales of digital

5

1    music files offer consumers the option to purchase only individual songs or tracks of music

2    separately. Further, unlike traditional "brick and mortar" music stores, online music selling venues

3    offer consumers the ability to create their own customized "playlists" wherein consumers can, in

4    effect, create their own customized music album comprising individual songs from various artists.

5    Thus, for example, a consumer of online music stores that had a liking for the song "Help" from the

6    Beatles and the song "Goodbye Yellow Brick Road" from Elton John could create a customized

7    playlist that would comprise just these two songs (as well as any other song from any other artist

8    that consumer wished to purchase). That consumer would only be charged for the particular songs

9    purchased (i.e. in this case, "Help" and "Yellow Brick Road"). By contrast, if that same consumer

10   wished to avail himself of these same two songs by making purchases at a traditional "brick and

11   mortar" music store, that consumer would have to purchase an entire Beatles album containing a

12   dozen songs or more, and an entire Elton John album, which also contains approximately a dozen

13   songs or tracks. Thus, while the consumer of the iTunes online music venue would only pay $1.98

14   for his total purchase (i.e. $0.99 per song), the price paid by the same consumer at a traditional

15   "brick and mortar" store would likely be approximately $30.00—i.e. the price for two complete

16   albums or CDs.

17        17.    In addition, the music selection available at online music stores is not coextensive

18   with the music selection available at traditional "brick and mortar" music stores. Due to the

19   efficiency with which music can be saved into computer digital format, online music stores provide

20   a ready outlet for independent artists and music labels whose music is not readily available at

21   traditional "brick and mortar" music stores that necessarily carry media in the more expensive CD,

22   cassette or record format.

23        18.    In the eyes of consumers, the online digital music file market and the "brick and

24   mortar" market are not in price-competition with one another. For one thing, as mentioned herein,

25   whereas the online digital music file market focuses on selling individual tracks or songs, the "brick

26   and mortar" market is focused on selling whole albums or CDs, thereby making price-comparison

27   between these two distinct markets a non sequitur. Further, because of the ubiquitous nature of the

28   Internet, online music sales are available to a whole host of consumers who do not have ready

6

1   access to a nearby "brick and mortar" music store, let alone a nearby "brick and mortar" store
2   stocking the particular recording desired by these consumers at any given time. Similarly, because
3   search costs on the Internet are a fraction of search costs involved in the "brick and mortar" market,
4   consumers are not likely to and do not forego a purchase of a music recording online even if they
5   hypothetically would believe that the same recording could be obtained somewhat less expensively
6   at a traditional "brick and mortar" store. The costs associated with traveling to "brick and mortar"
7   music stores, searching one or more such stores for a particular recording, and comparison shopping
8   between these "brick and mortar" music stores and online stores dissuade consumers from foregoing
9   a purchase made from the comfort of their own home or office for the same piece of music, even if
10  doing the foregoing tasks could hypothetically result in a savings of a few cents per song. Put
11  differently, consumers are not likely to and do not travel miles to their nearest "brick and mortar"
12  music store in the hopes of saving a few cents off a song purchase that they could make
13  instantaneously on their home computer.

14      19.    For these and other reasons, the market for legal online sales of digital music files is
15  and has been recognized as a separate relevant product market.

16      20.    Within the relevant market for online legal sales of digital music files, Defendant
17  Apple, through its iTunes online music store, possesses and has possessed throughout the Class
18  Period monopoly market power sufficient to exclude competition. Upon information and belief,
19  during the Class Period iTunes' share of this relevant market has exceeded 80 percent. Indeed, on
20  its website, Apple touts its iTunes online music store as the "#1 music download store according to
21  Nielsen Soundscan." Apple's iTunes website also touts that iTunes is "[s]etting a new milestone for
22  the online music business, the iTunes Music Store has sold more than 200 million songs." Further,
23  as early as November 5, 2003, Apple CEO Steve Jobs publicly confirmed at a financial analyst
24  conference that Apple's iTunes store possessed at least an 80 percent share of the legal music
25  download market.

26      21.    Other legal online music selling stores exist, such as: Napster, Walmart.com,
27  Musicmatch, RealPlayer, Buy.com, Sony Connect, eMusic, Music Rebellion, Audio Lunch Box,
28  Live Downloads, and Bleep among others. None of these other online music sites, however, posses

7

1  any significant market share in comparison to Apple's iTunes music store, and hence their existence
2  does not pose price-constraining competition to Apple's iTunes online music store.

3  **The Market for Portable Hard Drive Digital Music Players**

4      22.    The second relevant market pertinent to this complaint consists of the relevant
5  market for portable hard drive digital music players. Portable hard drive digital music players are
6  portable devices that enable their users to listen to digital audio recordings without requiring users
7  to carry any external media, such as a compact discs, cassette tapes, or cartridges. Since
8  approximately November 10, 2001, Apple has manufactured, marketed, sold, and shipped a portable
9  hard drive digital music player known as the "iPod."

10     23.    As stated, when a consumer purchases a digital music recording online, a digital file
11  with that music recording is downloaded to that consumer's computer or portable hard drive digital
12  music player for future use. One use to which that digital audio file can be put to by the consumer is
13  to play back that audio digital file on a portable hard drive digital music player.

14     24.    Through its iPod device, Apple possesses monopoly market power in the market for
15  portable hard drive digital music players. Apple's iPod accounts for over 90 percent of the market
16  for portable hard drive digital music players in the United States. Indeed, as of October 2004, Apple
17  announced that it possessed 92 percent of the market for portable hard-drive digital music players,
18  and that its nearest competitor, Creative, possessed only 3.7 percent share of this market. Other
19  portable hard drive digital music player manufacturers do exist, including: Rio, iRiver, Creative,
20  Archos, e.Digital, RCA, Panasonic, Nokia, Tatung, Epson, Gateway, and others. These other
21  portable hard drive digital music player manufacturers, however, lack the market power possessed
22  by Apple's iPod, as the combined market share of all of these alternative portable hard drive digital
23  music players amounts to less than 10 percent of the market (in comparison to Apple iPod's over 90
24  percent market share).

25     25.    As detailed herein, Apple has unlawfully bundled, tied, and/or leveraged its
26  monopoly in the market for the sale of legal online digital music recordings to thwart competition in
27  the separate market for portable hard drive digital music players, and vice-versa.

28

8

1    26.    As shown more fully below, Apple has engaged in this wrongdoing by embedding a
2    code in all digital music files downloaded from Apple's iTunes online music store that forces
3    consumers wishing to play these files on a portable hard drive digital music player to do so only on
4    an Apple iPod. Absent Apple's unlawful action, consumers purchasing music recordings from
5    Apple's iTunes music store would be able to play this music on the portable hard drive digital music
6    player of their choosing, including the portable hard drive digital music players manufactured by the
7    rival manufacturers listed in paragraph 24 herein. By deliberately embedding its code in this
8    manner in all  digital music files sold by iTunes, therefore, Apple has unlawfully leveraged, bundled
9    and/or tied its monopoly market power in the market for online sale of digital music files to thwart
10    competition in the separate market for portable hard drive digital music players. At the same time,
11    by engaging in the foregoing conduct, Apple has managed to unlawfully maintain its monopoly
12    market power over portable hard drive digital music players because purchasers of tracks from
13    Apple's iTunes music store, the monopoly market share holder in the online music selling market,
14    who wish to play their purchased tracks on a portable hard drive digital music player, have no
15    choice (given Apple's conduct) but to purchase an iPod player to the exclusion of all other available
16    players.

17    27.    Similarly, by embedding this code into all digital music files sold by Apple on its
18    iTunes store, Apple has been able to design and has designed its iPod portable hard drive digital
19    music player so that the iPod will only directly play digital music files purchased by the user online
20    if that music file was purchased online from Apple's iTunes music store. If the digital music file
21    was purchased from any other online music selling venues listed in paragraph 21, the iPod will not
22    directly play that music recording. By engaging in this unlawful conduct, therefore, Apple has tied,
23    bundled and/or leveraged its monopoly market power in the market for online music sales to thwart
24    competition in the separate market for portable hard drive digital music players. At the same time,
25    by engaging in this unlawful conduct, Apple has managed to unlawfully maintain its monopoly
26    market power in the market for online music sales because owners of the monopolized iPod product
27    who wish to purchase music tracks online have no choice, given Apple's conduct, but to purchase
28    these tracks only from Apple's iTunes store.

9

1    **APPLE'S ANTICOMPETITIVE CONDUCT**

2        28.    To more fully appreciate and understand the anticompetitive nature of Apple's

3    wrongdoing, it is helpful to understand a few fundamentals about the process of digitizing,

4    downloading, and playing digital music recordings.

5        29.    At their most basic level, digital music files, such as MP3 files, look a lot like any

6    other computer data file: a long series of 1s and 0s. In order to turn an analog signal (such as one

7    picked up by a standard microphone) into a digital stream, analog-to-digital converter ("ADC")

8    software measures the signal at a regular interval to find the sampling rate. These samples, if

9    measured close enough together, form a near-exact representation of the analog signal so as to

10    approximate the transmission using 1s and 0s that computers and MP3 players can read.

11        30.    Each second of true CD-quality sound takes up more than 1.3MB of disk space,

12    which is why file-compression technology is essential to digital audio, especially portable audio.

13    Using principles of psychoacoustics (how the brain perceives sound) and perceptual coding

14    (eliminating imperceptible sounds), engineers develop algorithms, called codecs (compression

15    decompression), that compress songs into the smallest possible sizes with minimal loss of quality.

16        31.    When a user plays a digital music file, the user essentially reverses the analog-to-

17    digital process. A digital audio device, such as an MP3 player or a computer sound card, uses a

18    DAC (digital-to-analog converter) to turn the 1s and 0s back into an analog signal that can then be

19    amplified and broadcast over headphones or speakers. When a digital device plays music that has

20    been compressed by a codec, software on its chip (called firmware) applies the codec to decode the

21    file, then sends the decompressed 1s and 0s to the DAC. Thus, for a digital audio device to be able

22    to play a compressed music file, that device's hardware must be able to recognize and decode the

23    codec software format that was used to initially compress that audio file.

24        32.    The first format or codec to gain widespread acceptance was Motion Pictures Experts

25    Group Layer 3, known more commonly as "MP3." Today, virtually every portable digital music

26    player on the market is able to play digital music encoded using the MP3 format. Thus, virtually all

27    portable digital music players are able to play MP3 music files.

28

10

1    33.    Over the years, however, codec formats other than MP3 have gained widespread

2    acceptance. These formats include WMA, AIFF, AAC, AA, and others.

3    34.    Many major portable digital music players support a number of these formats in

4    addition to the MP3 format. For example, most portable hard drive digital music players, except for

5    iPod, support the WMA format, which is the acronym for Microsoft's Windows Media Audio

6    format. Thus, digital music files compressed with the WMA codec can be played on most major

7    portable digital music players on the market today, except for Apple's iPod.

8    35.    Of significance to this complaint, is a codec format commonly known by the

9    acronym AAC. AAC stands for Advanced Audio Coding, and was a format developed by, *inter*

10   *alia*, Dolby Laboratories. Compressing digital audio files using the AAC format purportedly allows

11   more files to be stored per file size than would be possible if the same music files were compressed

12   using the MP3 format. Of significance, under normal operation, files compressed with the AAC

13   format, much like files originally compressed and saved on any other coded format, can be saved or

14   converted to MP3 formatted files. Thus, under normal operation, a digital music file that was

15   originally compressed and saved with an AAC codec format can be played either by a device

16   supporting AAC encoded files, or alternatively, that music file can be converted to and saved as an

17   MP3 formatted file, which would then be playable on virtually every major portable hard drive

18   digital music player (because all portable hard drive digital music players support MP3 files).

19   36.    Apple's iPod is a portable digital music player capable of playing music files

20   compressed with the AAC codec format. Other rival portable digital music players, including those

21   manufactured by Nokia, Creative, Panasonic, Epson, Tatung, Gateway, Digital Square, and others

22   are also similarly equipped to play AAC digital music files. In addition, of course, because AAC

23   files can readily be converted to MP3 format, virtually every portable digital music player on the

24   market today can play a file that was originally encoded in AAC format by merely having that same

25   file converted and saved to MP3 format.

26   **Apple's Unlawful Manipulation of the AAC Format To Force Use of Apple's iPod**

27   37.    Apple's iTunes online music store's music files are encoded in AAC format. As the

28   foregoing illustrates, therefore, consumers purchasing music from iTunes should and would be free

11

1  to play the songs purchased from iTunes at any of a number of portable hard drive digital music

2  players that can play AAC formatted files, or at virtually any portable digital music player by merely

3  converting the AAC file to an MP3 file.

4      38.    Apple, however, has manipulated and rigged the AAC format to prevent this

5  competitive scenario. Specifically, Apple has altered the AAC format used to compress and record

6  the song recordings available at its iTunes online music store so that these songs cannot be played

7  on any portable hard drive digital music player other than Apple's own iPod. Apple has done so by

8  incorporating into the AAC file format an Apple addition known as Fairplay Digital Rights

9  Management ("DRM").

10     39.    Fairplay DRM is an extra piece of software code that Apple adds to every music file

11  sold by Apple on its iTunes online music store. The addition of this extra software code has the

12  effect of preventing any portable hard drive digital music player, other than Apple's own iPod

13  player, from playing songs purchased from Apple's iTunes music store. Users purchasing songs

14  from iTunes can still play those songs on their computers (whether they be manufactured by Apple

15  or not), but if these users wish to play the music they just purchased from iTunes on a portable hard

16  drive digital music player, they can only do so on an iPod. Thus, in effect, Apple has turned an open

17  and interactive standard into an artifice that prevents consumers from using the portable hard drive

18  digital music player of their choice, even where players exist that would otherwise be able to play

19  these music files absent Apple's actions.

20     40.    Another consequence of Apple's manipulation of the AAC codec format, is that

21  Apple's addition of its Fairplay DRM code portion to these music files makes it impossible to

22  convert these AAC music files into MP3 files that can be decompressed and played by portable hard

23  drive music players other than the iPod. Thus, whereas absent Apple's action, all AAC files could

24  be converted to MP3 format and therefore could be played on virtually any major portable hard

25  drive digital music player on the market, Apple's action prevents this from happening, and forces a

26  user to use only Apple's iPod device as the sole portable hard drive digital music player capable of

27  playing files purchased at Apple's iTunes music store.

28

12

CLASS ACTION COMPLAINT
CASE NO.:
\\Fileserver\shareddocs\BLG\APPLE\PLD-WPD\Complaint.wpd

1      41.     Apple calls this rigged digital format, obtained after incorporating Apple's extra

2   Fairplay DRM software code to the AAC file, an "AAC Protected" format or file. Apple blatantly

3   announces that the difference between a regular AAC formatted music file and Apple's "Protected

4   AAC" music file is that if one desires to play the latter type of file (which is an artifice of Apple's

5   iTunes online music store) on a portable hard drive digital music player, one can only do so on an

6   Apple iPod player. In this regard, Apple's website proclaims the following with respect to AAC,

7   AAC Protected music files, and the relationship between iTunes, iPod, and other portable players:

8              To play AAC and AAC Protected songs, your iPod must have iPod Software
             1.3 or later installed. Not all digital music players can play AAC songs and *only iPod*
9            *can play AAC Protected songs.*
               . . . .
10

11             *Songs purchased from the iTunes Music Store are encoded using the AAC*
             *Protected format and cannot be converted to MP3 format.* You can burn them to
             audio CDs and play them in consumer audio CD players.
12

13             A copy of Apple's webpage containing the foregoing restriction is attached hereto as Exhibit

14   A to this complaint.

15      42.     Thus, as Apple itself admits on its website, "[s]ongs purchased from the iTunes

16   Music Store are encoded using the AAC Protected format and cannot be converted to MP3 format."

17   Further, "only iPod can play AAC Protected songs." The result is readily apparent—customers

18   buying music online from Apple's iTunes store can play their music at their computer or CD player,

19   but if they wish to play the music on a portable hard drive digital music player, they can do so only

20   via Apple's iPod. Moreover, this restriction, as Apple itself admits, is brought about only because

21   Apple has unilaterally incorporated its Fairplay DRM extra software code into the otherwise

22   interactive AAC format.

23      43.     But for Apple's action, any consumer owning any portable digital music player

24   would have been able to convert a song purchased on AAC format from iTunes into an MP3

25   formatted file, and could have played that file on his portable hard drive digital music player of

26   choice. This is necessarily the case because virtually any portable digital music player on the

27   market today is capable of playing MP3 music files. Further, even without this conversion from

28   AAC to MP3 formats, absent Apple's manipulation of the AAC format for the songs it sells through

13

1    iTunes, songs purchased from iTunes would have  been able to be played on a whole host of
2    portable hard drive digital music players that are capable of playing AAC formatted files, such as
3    players manufactured by Panasonic, Nokia, Gateway, Epson, Tatung, and others.  Apple's unilateral
4    action to rig the AAC format in this fashion for the songs it sells through iTunes, by inserting its
5    own Fairplay DRM extra software code onto the AAC format, prevents any of the foregoing from
6    taking place, and restricts consumers to using Apple's iPod as their only available portable hard
7    drive digital music player.

8        44.    Apple has steadfastly refused to license its Fairplay DRM or otherwise let any other
9    manufacturer of portable hard drive digital music players gain interactive access to files sold by
10    Apple through iTunes so that these music files could be played in the portable hard drive digital
11    music player of the consumer's choice.

12        45.    Through the foregoing actions, Apple has misused its monopoly market power in the
13    market for the legal sales of digital music files (which it holds by virtue of its iTunes online music
14    store) to unlawfully suppress competition in the separate market for portable hard drive digital
15    music players.

16    **Apple's Resistance to Rival Online Song Outlets for Apple iPod**

17        46.    As stated in paragraph 31, for a device to play a digital music file compressed with a
18    particular format, firmware within the chip of the device must be able to recognize and decode the
19    encoding format used to compress the music file.  Because Apple has rigged the otherwise
20    interactive AAC format, through the addition of its extra Fairplay DRM software code to music files
21    sold via iTunes, only portable hard drive digital music players whose firmware recognizes this
22    "Protected AAC" format can decode and play songs purchased from iTunes.  Apple has not licensed
23    or given access to this "Protected AAC" format to any other portable hard drive device
24    manufacturer, thereby ensuring two results—both of which are anticompetitive.  First, through the
25    foregoing, Apple has managed to ensure that songs purchased from iTunes can only be played on
26    portable hard drive digital music players manufactured by Apple; namely, the Apple iPod.  Second,
27    through the foregoing, Apple has managed to ensure that owners of iPod hard drive digital music
28    players wishing to purchase music files online to be directly played on their iPod can only do so by

14

1  purchasing these files at Apple's iTunes music store.

2      47.    Despite this anticompetitive restriction, RealNetworks, a rival seller of online digital
3  music recordings through its RealNetworks Music Store, managed to independently analyze the
4  firmware within the Apple iPod portable hard drive digital music player.  As a result of this analysis,
5  RealNetworks was able to discern the necessary extra software code added by Apple to make
6  downloaded songs playable on the Apple iPod.  Armed with this knowledge, RealNetworks was
7  able to insert a corresponding code of its own into song files sold through its RealNetworks Music
8  Store so that they too would be playable on the Apple iPod.

9      48.    Thus, on July 26, 2004, RealNetworks announced publicly that songs sold through its
10  online RealNetworks Music Store would now be playable on the Apple iPod portable hard drive
11  digital music player, thereby giving iPod owners a competitive outlet for their purchases of online
12  music files.  This announcement was significant not only because it represented the first alternative
13  to the stronghold that Apple's iTunes store had heretofore exerted as the sole supplier of
14  downloaded digital music files that could be played on Apple's iPod player, but also because
15  RealNetworks began selling its digital online songs for as low as 49 cents per track, well below the
16  99 cents per track charged by Apple's iTunes store.

17      49.    Rather than embracing this competitive offering to consumers and owners of its iPod
18  device, Apple immediately threatened RealNetworks and iPod users.  On Thursday, July 29, 2004,
19  merely four days after RealNetworks' announcement, Apple issued its own public statement
20  warning RealNetworks and iPod users that "[w]e are stunned that RealNetworks has adopted the
21  tactics and ethics of a hacker to break into the iPod, and we are investigating the implications of
22  their actions under the DMCA and other laws.  We strongly caution Real and their customers that
23  when we update our iPod software from time to time it is highly likely that Real's Harmony
24  technology will cease to work with current and future iPods."

25      50.    True to its threat, by December 2004, Apple updated its iPod software to prevent
26  songs downloaded from RealNetworks Music Store (or any other online music store) from being
27  played on Apple iPod devices.  Thus, Apple continues to impede competition, and forces iPod users
28  who wish to buy music online to do so exclusively from Apple's iTunes store.

15

1

2

**Apple's Proffered Justification For Rigging the AAC Format In This Restrictive Manner Is Irrelevant, And In Any Event, Unavailing**

3    51.    Faced with the obvious anticompetitive effect and impact of its actions to restrict the

4  use of music purchased on iTunes to only iPod portable music players, and to restrict the source of

5  online music files playable on its iPod device to only its own iTunes store, Apple has attempted to

6  defend its actions by citing that these restrictions are necessary to protect the copyrights owned by

7  the artists or music labels for the songs sold through iTunes. That defense, however, is both

8  irrelevant and unavailing.

9    52.    In fact, other than Apple's iTunes, no other online music vendor has such a

10  restriction in place; yet these other online vendors still manage to provide copyright protection

11  mechanisms to artists and record labels—often the same artists and labels whose same songs are

12  sold online through iTunes.

13    53.    Similarly, Apple's Fairplay DRM addition to the otherwise interactive AAC

14  encoding format is not a device that effectively controls access to copyrighted works because, as

15  Apple itself admits, the extra Fairplay DRM software code inserted by Apple has no effect

16  whatsoever on the ability of any user using any computer to access, purchase, and playback any of

17  the song files sold through Apple's iTunes music store on the user's computer. Only when the user

18  wishes to play the song on a portable hard drive digital music player does Apple restrict that user to

19  using the iPod device, presumably to protect Apple's market dominance in that market.

20    54.    In truth and in fact, as widely reported in the press, artists and record label companies

21  have urged Apple to release its stronghold on the online source for music files playable on the Apple

22  iPod, and to allow music files from other legitimate online music vendors play on the Apple iPod.

23  Opening this restriction would benefit both the artists and record labels by providing them with

24  additional outlet channels for selling music playable on the most prevalent portable hard drive

25  digital music player (i.e. the iPod). Similarly, opening this restriction would also benefit consumers

26  by providing iPod owners with a competitive choice of where they can purchase their online music

27  files for playback on their iPod devices. Despite these pleas and the anticompetitive impact of

28  Apple's actions, Apple has steadfastly refused to permit any vendors other than its own iTunes store

16

1    to sell digital music files that can be played on Apple's iPod. At the same time, Apple has also

2    steadfastly refused to allow the music files Apple sells through its iTunes store from being played

3    on any portable hard drive digital music player other than the iPod.

4    **ANTICOMPETITIVE EFFECT ON CONSUMERS – ANTITRUST INJURY**

5        55.    As a direct, proximate, and foreseeable result of Apple's actions, consumers, like

6    Plaintiff and the members of the Class he seeks to represent, have been injured in their business

7    and/or property. By restricting the sources of online digital music files that can be directly played

8    on Apple's iPod to only such files purchased from Apple's iTunes online music store, Apple has

9    restrained competition, denied consumers a competitive choice of online music sellers for use on

10   their iPod devices, maintained its monopoly in the market for portable hard drive digital music

11   players, and forced consumers to pay supra-competitive prices for their purchases of online digital

12   music files and their purchases of portable hard drive digital music players. Similarly, by restricting

13   the portable hard drive digital music players that can play songs downloaded from the iTunes online

14   music store to just the Apple iPod device, Apple has restrained competition, denied consumers a

15   competitive choice of portable hard drive digital music players, unlawfully maintained its monopoly

16   market power in the market for the legal sale of online digital music files, and caused consumers to

17   pay supra-competitive prices for their purchases of portable hard drive digital music players, and for

18   their purchases of online music files.

19                          **CLASS ACTION ALLEGATIONS**

20       56.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf

21   of himself and on behalf of all other similarly situated consumers who, during the period April 28,

22   2003 to the present ("the Class Period") purchased an iPod device directly from Apple, and online

23   digital music files from Apple's iTunes store. Excluded from the Class are all judicial officers and

24   their staff, as well as all governmental entities.

25       57.    The number of putative class members is sufficiently large, such that joinder of all

26   individual class members would be impracticable, if not impossible. Although the precise number

27   of class members is not presently known to Plaintiff, based on the sales volumes of the Apple iPod

28   device and the iTunes online music store during the Class Period, it is reasonable to assume that the

17

1 | number of individual class members is at least in the tens or hundreds of thousands.

2 |     58.    Plaintiff's claims are typical of the claims of the class. Specifically, Plaintiff claims

3 | that by restricting the use of the iPod to only those online digital music files purchased from iTunes,

4 | Apple has injured Plaintiff and the class members in their business and/or property, in violation of

5 | the federal and state antitrust laws, California's unfair competition law, and the common law.

6 | Similarly, Plaintiff claims that by restricting the portable hard drive digital music players that can

7 | play music files purchased from the iTunes store to only the iPod, Apple has injured Plaintiff and

8 | the class members in their business and/or property, in violation of the federal and state antitrust

9 | laws, California's unfair competition law, and the common law. There are no conflicts or defenses

10 | unique to Plaintiff that would render his claim atypical from the claims of the absent class members.

11 |     59.    Common questions of fact and law exist in this litigation, and these common

12 | questions affecting the class as a whole predominate over any individual questions that may affect

13 | only individual class members. Among these common questions of fact or law are the following:

14 |         a.    the definition of the relevant market(s);

15 |         b.    Apple's market power within these relevant market(s);

16 |         c.    Whether Apple unlawfully restrained competition in any or all of these

17 | relevant markets;

18 |         d.    Whether any unlawful restriction of competition caused by Apple caused

19 | injury to the business or property of Plaintiff and the class members;

20 |         e.    The extent of any such injury;

21 |         f.    The appropriate remedy for any such injury.

22 |     60.    Plaintiff is an adequate representative of the interests of the absent class members in

23 | this litigation. During the Class Period, Plaintiff purchased an Apple iPod directly from Apple, and

24 | purchased music files for use on his iPod directly from Apple's iTunes music store. Plaintiff has

25 | retained competent counsel experienced in antitrust and class action litigation to vigorously

26 | prosecute and litigate this action on behalf of the putative class members.

27 |     61.    This action is manageable as a class action. The identity of all class members, or of a

28 | significant majority, is ascertainable, as each class member, by definition, must have made online

18

1 | purchases from Apple iTunes store, requiring the class member to provide his identifying

2 | information. Prosecuting this action on an individual, as opposed to a classwide, basis would risk

3 | the prospect of conflicting findings and adjudications with respect to the rights and obligations of

4 | the parties. Further, the average overall amount of monetary injury sustained by each individual

5 | class members is likely to be too small relative to the costs of individual litigation of this action so

6 | that classwide litigation effectively provides the only available means for individual class members

7 | to seek judicial redress for their injuries.

8 | **COUNT I**

9 | **(UNLAWFUL TYING OR BUNDLING OF APPLE iTUNES TO PURCHASE OF APPLE iPOD IN VIOLATION OF 15 U.S.C. § 1)**

10

11 | 62. Plaintiff hereby incorporates by reference all of the allegations of this complaint with

12 | the same force and effect as if fully restated herein.

13 | 63. Through its iTunes online music store, Apple has monopoly market power in the

14 | U.S. market for legal sales of online digital music files. In any event, Apple has sufficient market

15 | power in this relevant market to coerce consumers of Apple's iTunes store to purchase an Apple

16 | iPod portable hard drive digital music player, even if these same consumers would have preferred to

17 | purchase a portable hard drive digital music player other than Apple's iPod.

18 | 64. There are manufacturers and models of portable hard drive digital music players,

19 | other than Apple's iPod, that, but for Apple's anticompetitive conduct, would be able to play digital

20 | music files downloaded from Apple's iTunes music store.

21 | 65. During the Class Period Apple has rigged the otherwise interactive and open AAC

22 | codec format in the manner described herein, such that digital music files purchased from Apple's

23 | iTunes online music store could not be played back on any portable hard drive digital music player

24 | other than Apple's iPod.

25 | 66. As a direct and proximate result of Apple's anticompetitive actions, consumers of

26 | Apple's iTunes store who wish to play the digital music files they purchased from iTunes on a

27 | portable hard drive digital music player must also purchase an Apple iPod device, even where other

28 | portable hard drive digital music players exist at lower prices that would otherwise be able to

19

1  playback the music files sold by Apple's iTunes store.

2      67.     Apple's actions have caused injury to the business and/or property of Plaintiff and

3  the class members he seeks to represent by: forcing consumers to buy Apple's iPod as the portable

4  hard drive digital music player of their choice, to the exclusion of all competing portable hard drive

5  digital music players; suppressing competition in the market for portable hard drive digital music

6  players; and, forcing consumers to pay supra-competitive prices for their portable hard drive digital

7  music players.

8      68.     Apple's unlawful bundling or tying of its Apple iTunes store to use of its

9  Apple iPod portable hard drive digital music player is unlawful per se under the antitrust laws.

10  Alternatively, Apple's unlawful bundling or tying of its Apple iTunes store to use of its Apple iPod

11  portable hard drive digital music player is unlawful under the antitrust rule of reason because the

12  anticompetitive effects of this conduct are not outweighed by procompetitive considerations.

13                              **COUNT II**

14      **(UNLAWFUL TYING OR BUNDLING OF APPLE'S iPOD TO
        APPLE iTUNES IN VIOLATION OF 15 U.S.C. § 1)**

15

16      69.     Plaintiff hereby incorporates by reference all of the allegations of this complaint with

17  the same force and effect as if fully restated herein.

18      70.     Through its iPod device, Apple has monopoly market power in the U.S. market for

19  portable hard drive digital music players. In any event, Apple has sufficient market power in this

20  relevant market to coerce consumers of Apple's iPod device to make purchases of online music files

21  only from Apple's iTunes online music store, even if these same consumers would have preferred to

22  purchase their online music files from a source other than iTunes.

23      71.     There are online music stores, other than Apple's iTunes music store, that, but for

24  Apple's anticompetitive conduct, would and could sell online music files to consumers for direct

25  playback on Apple's iPod portable hard drive digital music player.

26      72.     During the Class Period Apple has rigged the otherwise interactive and open AAC

27  codec format in the manner described herein, such that owners of Apple iPods cannot purchase

28  digital music files online from online music stores, other than Apple's iTunes store, for direct play

                                    20

1  back on the iPod.

2      73.    As a direct and proximate result of Apple's anticompetitive actions, consumers of
3  Apple's iPod who wish to purchase music online for use in their iPods must make their purchases
4  only from Apple's iTunes music store, even where other online music stores exist that, but for
5  Apple's unlawful conduct, would otherwise be able to sell online digital music files for playback on
6  an iPod at less expensive prices than the prices charged by iTunes.

7      74.    Apple's actions have caused injury to the business and/or property of Plaintiff and
8  the class members he seeks to represent by: forcing consumers to buy online digital music files only
9  from Apple's iTunes store, to the exclusion of all other competing legal online digital music file
10  vendors, if consumers wished to play downloaded songs on their iPod devices; suppressing
11  competition in the market for the legal online sale and purchase of digital music files; and, forcing
12  consumers to pay supra-competitive prices for their online purchases of digital music files.

13      75.    Apple's unlawful bundling or tying of its Apple iPod device to purchases from
14  Apple's iTunes store is unlawful per se under the antitrust laws. Alternatively, Apple's unlawful
15  bundling or tying of its Apple iPod device to purchases from its Apple iTunes store is unlawful
16  under the antitrust rule of reason because the anticompetitive effects of this conduct are not
17  outweighed by procompetitive considerations.

18                                **COUNT III**

19                **(UNLAWFUL ACQUISITION OR MAINTENANCE OF MONOPOLY**
      **MARKET POWER IN MARKET FOR LEGAL ONLINE DIGITAL MUSIC FILES IN**
20                        **VIOLATION OF 15 U.S.C. § 2)**

21      76.    Plaintiff hereby incorporates by reference all of the allegations of this complaint with
22  the same force and effect as if fully restated herein.

23      77.    Through its iPod device, Apple possesses monopoly market power in the U.S. market
24  for portable hard drive digital music players.

25      78.    Given the prevalence of the iPod, owners of this device have a need for legal online
26  sellers of digital music files to be played on the iPods. Although a number of competing legal
27  online sellers of digital music files exist, Apple has rigged the operating AAC codec format and
28  corresponding firmware in the iPod so that only online digital music files purchased from Apple's

                                    21

1  iTunes music store, to the exclusion of all other online music files purchased from any other online

2  store, can be directly played on the iPod. In this manner, Apple has been able to acquire and/or

3  maintain monopoly market power in the U.S. market for the legal sale of digital music files. But for

4  Apple's rigging of the AAC codec format and firmware in the iPod, any number of existing legal

5  sellers of digital music files, other than Apple's iTunes music store, would be able to sell competing

6  digital music files for play back on the iPod.

7      79.    Thus, Apple has acquired and/or maintained its monopoly market power in the U.S.

8  market for the legal sale of online digital music files, not through superior skill, business acumen, or

9  enterprise, but rather through the foregoing anticompetitive and exclusionary conduct.

10     80.    Apple's monopolization of the U.S. market for the legal sale of online digital music

11 files has injured Plaintiff and the Class members in their business and/or property by suppressing

12 competition in this relevant market, and forcing consumers to pay supra-competitive prices for their

13 online purchases of digital music files.

14                                 **COUNT IV**

15 **(UNLAWFUL ACQUISITION AND/OR MAINTENANCE OF MONOPOLY MARKET POWER IN THE U.S. MARKET FOR PORTABLE HARD DRIVE DIGITAL MUSIC**
16 **PLAYERS IN VIOLATION OF 15 U.S.C. § 2)**

17     81.    Plaintiff hereby incorporates by reference all of the allegations of this complaint with

18 the same force and effect as if fully restated herein.

19     82.    Through its iTunes online music store, Apple possesses monopoly market power in

20 the U.S. market for the legal online sale of digital music files.

21     83.    Given the popularity and market penetration of iTunes, there is a need for a portable

22 hard drive digital music player that can play back music files downloaded from iTunes. Although a

23 number of competing manufacturers and models of portable hard drive digital music players exist,

24 Apple has rigged the operating AAC codec format in the music files sold through iTunes, as well as

25 the corresponding firmware in the iPod, so that the only portable hard drive digital music player that

26 will be able to be used to play back music files purchased from iTunes is the Apple iPod, to the

27 exclusion of any other portable hard drive digital music players. In this manner, Apple has been

28 able to acquire and/or maintain monopoly market power in the U.S. market for portable hard drive

                                      22

1   digital music players. But for Apple's rigging of the AAC codec format in music files sold through

2   iTunes and of the firmware in the iPod, any number of existing portable hard drive digital music

3   players, other than Apple's iPod, would be able to play back digital music files sold through iTunes.

4       84.     Thus, Apple has acquired and/or maintained its monopoly market power in the U.S.

5   market for portable hard drive digital music players, not through  superior skill, business acumen, or

6   enterprise, but rather through the foregoing anticompetitive and exclusionary conduct.

7       85.     Apple's monopolization of the U.S. market for portable hard drive digital music

8   players has injured Plaintiff and the Class members in their business and/or property by suppressing

9   competition in this relevant market, and forcing consumers to pay supra-competitive prices for their

10  portable hard drive digital music players.

11                              **COUNT V**

12  **(UNLAWFUL LEVERAGING OF MONOPOLY IN MARKET FOR ONLINE DIGITAL
    MUSIC FILES TO ATTEMPT TO AND ACTUALLY MONOPOLIZE SEPARATE**
13  **MARKET FOR PORTABLE HARD DRIVE DIGITAL MUSIC PLAYERS IN VIOLATION
    OF 15 U.S.C. § 2)**

14

15      86.     Plaintiff hereby incorporates by reference all of the allegations of this complaint with

16  the same force and effect as if fully restated herein.

17      87.     The foregoing allegations amount to unlawful monopoly leveraging in violation of

18  Section 2 of the Sherman Act, wherein Apple has used its monopoly market power, however

19  acquired, in the market for legal sales of online digital music files, in an attempt to and actual

20  monopolization of the separate market for portable hard drive digital music players.

21      88.     The foregoing conduct has injured Plaintiff and the class members in their business

22  and/or property by unlawfully thwarting competition in the market for portable hard drive digital

23  music players and by forcing consumers, like Plaintiff and the class members, to pay supra-

24  competitive prices for their portable hard drive digital music players.

25

26  ///

27  ///

28  ///

                                        23

1

## COUNT VI

2
3
4

**(UNLAWFUL LEVERAGING OF MONOPOLY IN MARKET FOR PORTABLE HARD DRIVE DIGITAL MUSIC PLAYERS TO ATTEMPT TO AND ACTUALLY MONOPOLIZE SEPARATE MARKET FOR THE LEGAL ONLINE SALE OF DIGITAL MUSIC FILES, IN VIOLATION OF 15 U.S.C. § 2)**

5        89.     Plaintiff hereby incorporates by reference all of the allegations of this complaint with

6   the same force and effect as if fully restated herein.

7        90.     The foregoing allegations amount to unlawful monopoly leveraging in violation of

8   Section 2 of the Sherman Act, wherein Apple has used its monopoly market power, however

9   acquired, in the market for portable hard drive digital music players, in an attempt to and actual

10  monopolization of the separate market for the legal online sale of digital music files.

11       91.     The foregoing conduct has injured Plaintiff and the class members in their business

12  and/or property by unlawfully thwarting competition in the market for the legal online purchases of

13  digital music files, and by forcing consumers, like Plaintiff and the class members, to pay supra-

14  competitive prices for their purchases of online digital music files.

15

## COUNT VII

16
17

**(VIOLATION OF CALIFORNIA'S CARTWRIGHT ACT, CALIF. BUS. AND PROFESSIONS CODE SECTION 16700 ET. SEQ.)**

18       92.     Plaintiff hereby incorporates by reference all of the allegations of this complaint with

19  the same force and effect as if fully restated herein.

20       93.     Through the conduct alleged herein, Apple has violated the California Cartwright

21  Act, California Business and Professions Code Section 16700 et. seq.

22       94.     Apple's violations of the Cartwright Act have injured Plaintiff and the class members

23  in their business and/or property by, *inter alia*, suppressing competition, and by forcing consumers,

24  like Plaintiff and the class members, to pay supra-competitive prices for their purchases of online

25  digital music files and/or their purchases of portable hard drive digital music players.

26  ///

27  ///

28  ///

24

1

## COUNT VIII

2

## (VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CALIF. BUS. AND PROF. CODE SECTION 17200 ET. SEQ.)

3

4      95.    Plaintiff hereby incorporates by reference all of the allegations of this complaint with

5   the same force and effect as if fully restated herein.

6      96.    The foregoing conduct amounts to an unlawful and/or unfair business

7   practice within the meaning of the California Unfair Competition Law, California Business and

8   Professions Code, Section 17200 et. seq.

9      97.    Apple's violations of California's Unfair Competition Law have injured Plaintiff and

10  the class members in their business and/or property by, *inter alia*, suppressing competition, and by

11  forcing consumers, like Plaintiff and the class members, to pay supra-competitive prices for their

12  purchases of online digital music files and/or their purchases of portable hard drive digital music

13  players.

14     98.    Because Plaintiff and the class members have conveyed money directly onto Apple,

15  and Apple has violated the Unfair Competition Law in connection with that transaction, Plaintiff

16  and the Class members are entitled to restitution of the moneys paid by them to Apple, and to an

17  injunction restraining and enjoining Apple from continuing to engage in this conduct.

18

## COUNT IX

19

## (COMMON LAW UNJUST ENRICHMENT)

20     99.    Plaintiff hereby incorporates by reference all of the allegations of this complaint with

21  the same force and effect as if fully restated herein.

22     100.   Plaintiff and the class members conveyed benefits onto Defendant Apple in the form

23  of money paid and business given to Apple for purchases of digital music files from iTunes and for

24  purchases of Apple's iPod portable hard drive digital music player.

25     101.   Defendant Apple appreciated the granting of these benefits, as it repeatedly touted in

26  the media and public statements how it had achieved heretofore unmatched and unprecedented sales

27  figures for its iTunes store and iPod devices.

28

1    102.    Given Apple's anticompetitive and unlawful conduct, Apple has been unjustly

2  enriched at the expense of Plaintiff and the class members, and it would, therefore, be inequitable to

3  let Apple retain these benefits that it obtained from Plaintiff and the class members.

4    103.    Plaintiff and the class members are, therefore, entitled to disgorgement of Apple's ill-

5  gotten gains and restitution of money paid by them to Apple.

6                          **COUNT X**

7                  **(COMMON LAW MONOPOLIZATION)**

8    104.    Plaintiff hereby incorporates by reference all of the allegations of this complaint with

9  the same force and effect as if fully restated herein.

10    105.    The foregoing acts amount to unlawful monopolization under the common law of the

11  relevant U.S. markets for the legal online sale of digital music files and/or the market for portable

12  hard drive digital music players.

13    106.    As a result of Apple's unlawful monopolization under the common law, Plaintiff and

14  the class members have been injured in their business and/or property by being denied true and

15  unfettered competition in the relevant markets described herein, and by being forced to pay supra-

16  competitive prices for their purchases on online digital music files and/or their purchases of portable

17  hard drive digital music players.

18                      **PRAYER FOR RELIEF**

19    **WHEREFORE,** Plaintiff prays for an Order from the Court as follows:

20    1.    Entering Judgment for Plaintiff and the class and against Defendant on all counts;

21    2.    Certifying this action as a class action on behalf of the class defined herein, and

22        designating Plaintiff and his counsel as class representative and class counsel,

23        respectively;

24    3.    Directing that notice of this action be disseminated to the absent class members at

25        Defendant's expense;

26    4.    Awarding Plaintiff and the class members their compensatory and statutory money

27        damages, including trebled damages and punitive damages where appropriate;

28

5.  Awarding Plaintiff's counsel their reasonable attorneys' fees, expenses, and costs of suit;

6.  Declaring Defendant's actions to be violations of the federal and state antitrust laws, state law of unfair competition, and the common law, and enjoining Defendant from carrying on such conduct;

7.  Requiring Defendant to disgorge its ill-gotten gains, and awarding the proceeds of this disgorgement to Plaintiff and the class members;

8.  Requiring Defendant to provide restitution to Plaintiff and the class members of moneys paid by Plaintiff and the class members to Defendant;

9.  Requiring Defendant to establish a common fund from which compensation can be made to Plaintiff and the class members, and from which Plaintiff's counsel may recover their reasonable attorneys' fees, expenses, and costs of suit;

10. Awarding such other relief as this Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all counts so triable.

Dated: January 3, 2005

Michael D. Braun
Marc L. Godino
BRAUN LAW GROUP, P.C.

By: _____
Marc L. Godino
12400 Wilshire Boulevard
Suite 920
Los Angeles, CA 90025
Tel:   (310) 442-7755
Fax:  (310) 442-7756

Roy A. Katriel
THE KATRIEL LAW FIRM, P.C.
1101 30th Street, NW
Suite 500
Washington, DC 20007
Tel:   (202) 625-4342
Fax:  (202) 625-6774

27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jacqueline Sailer
Eric J. Belfi
MURRAY, FRANK & SAILER LLP
275 Madison Avenue
Suite 801
New York, NY 10016-1101
Tel:    (212) 682-1818
Fax:    (212) 682-1892

*Attorneys for Plaintiff*

28

# EXHIBIT A

iTunes 4 for Mac OS X: Compatible Players

12/23/2004   17:58    202-6256774                    KATRIELLAW                          PAGE   82

Page

| ♦ | Store | iPod + iTunes | .Mac | QuickTime | Support | Mac OS X |

Advanced Search » Downloads » Manuals » Specifications » Discussion » Discussions » Training » Products & Services

# iTunes 4 for Mac OS X: Compatible Players

Learn which digital music players and CD MP3 players you can use with iTunes 4 and Mac OS X.

iTunes 4 for Mac OS X has built-in support for digital music players and for CD MP3 players.

## Notes

1. To play AAC and AAC Protected songs, your iPod must have iPod Software 1.3 or later installed. Not all digital music players can play AAC songs and only iPod can play AAC Protected songs.

2. Songs you import from an audio CD using the AAC format can be converted to MP3 files, which you can burn to MP3 CDs or play on third-party digital music players.

3. Songs purchased from the iTunes Music Store are encoded using the AAC Protected format and cannot be converted to MP3 format. You can burn them to audio CDs and play them in consumer audio CD players.

| Digital Players | Manufacturer | Connection |
|---|---|---|
| iPod | Apple | FireWire / USB |
| Nomad II | Creative Labs | USB |
| Nomad II MG | Creative Labs | USB |
| Nomad II c | Creative Labs | USB |
| Nomad Jukebox | Creative Labs | USB |

http://docs.info.apple.com/article.html?artnum=93548