Robert A. Mittelstaedt #060359
Caroline N. Mitchell #143124
Adam R. Sand #217712
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:     (415) 626-3939
Facsimile:     (415) 875-5700
ramittelstaedt@jonesday.com
cnmitchell@jonesday.com
arsand@jonesday.com

Attorneys for Defendant
APPLE COMPUTER, INC.

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **THOMAS WILLIAM SLATTERY, Individually, And On Behalf Of All Others Similarly Situated,**<br><br>        **Plaintiff,**<br><br>    v.<br><br>**APPLE COMPUTER, INC.,**<br><br>        **Defendant.** | **Case No. C 05 00037 JW**<br><br>**APPLE COMPUTER, INC.'S MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>**Date:** March 21, 2005<br><br>**Time:** 9:00 A.M.<br><br>**Place:** Courtroom 8, 4th Floor |

**TABLE OF CONTENTS**

**PAGE**

I.     INTRODUCTION...................................................................................................... 1

II.    THE COMPLAINT................................................................................................... 3

III.   THE LEGAL STANDARD ...................................................................................... 4

IV.   ARGUMENT ........................................................................................................... 4

     A.      Slattery's Tying Allegations Fail to State a Claim.................................... 4

     B.      Slattery's Monopolization Allegations Do Not State a Claim ................ 7

          1.      The market power allegations are inadequate as a matter of law .............. 8

          2.      The alleged refusals-to-deal are permitted under § 2.................................. 9

     C.      The Ninth Circuit Does Not Recognize Monopoly Leveraging Claims ............... 14

     D.      The State Law Claims Are Meritless As A Matter of Law................................... 15

          1.      The Cartwright Act does not reach unilateral activity such as alleged monopolization ............................................................................... 15

          2.      The tying, common law monopolization and UCL claims fall with the federal claims ...................................................................................... 16

          3.      Slattery's unjust enrichment claim is contrary to established law ............ 17

V.     CONCLUSION....................................................................................................... 18

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Aguilar v. Atlantic Richfield Company*
    25 Cal. 4th 826 (2001) ........................................................................................ 17

*Alaska Airlines, Inc. v. United Airlines, Inc.*
    948 F.2d 536 (9th Cir. 1991) ............................................................................. 14

*American Prof'l Testing Serv, Inc. v. Harcourt Brace Jovanovich Legal and Prof'l Publ'ns, Inc.*
    108 F.3d 1147 (9th Cir. 1997)......................................................................... 8, 15

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*
    472 U.S. 585 (1985) .................................................................................... 11, 12

*California Computer Products, Inc. v. IBM*
    613 F.2d 727 (9th Cir. 1979).............................................................................. 15

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telegraph Co.*
    20 Cal. 4th 163 (1999) ...................................................................................... 16

*Chavez v. Whirlpool Corp.*
    93 Cal. App. 4th 363 (2001)......................................................................... 16, 17

*Churchill Village, L.L.C. v. Gen'l Electric Co.*
    169 F. Supp.2d 1119 (N.D. Cal. 2000) ............................................................. 16

*Covad Communications Co. v BellSouth Corp.*
    374 F.3d 1044 (11th Cir. 2004)......................................................................... 12

*Dimidowich v. Bell & Howard*
    803 F.2d 1473 (9th Cir. 1988)............................................................................ 15

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*
    703 F.2d 534 (9th Cir. 1983)............................................................................... 6

*Gerlinger v. Amazon.com, Inc.*
    311 F. Supp.2d 838 (N.D. Cal. 2004) ......................................................... 17, 18

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*
    125 F.3d 1195 (9th Cir. 1997)........................................................................... 13

*Independent Serv. Orgs. Antitrust Litig.*
    203 F.3d 1322 (Fed. Cir. 2000) .................................................................... 12, 13

*Innovation Data Processing, Inc. v. IBM Corp.*
    585 F. Supp. 1470 (D.C.N.J. 1984)..................................................................... 7

*Jefferson Parish Hospital District No. 2 v. Hyde*
    466 U.S. 2 (1984).................................................................................................. 5

1

**TABLE OF AUTHORITIES**
(continued)

2

**PAGE**

3

4
*JM Computer Servs., Inc. v. Schlumberger Techs., Inc.*
    1996 WL 241607 (N.D. Cal. 1996)........................................................................ 4

5
*Los Angeles Land Co. v. Brunswick Corp.*
6
    6 F.3d 1422 (9th Cir. 1993)................................................................................ 8

7
*Metro Mobile CTS, Inc. v. NewVector Communications, Inc.*
    892 F.2d 62 (9th Cir. 1989)................................................................................ 9

8
*Metronet Servs. Corp. v. Qwest Corp.*
9
    2001 WL 765167, 5 (W.D. Wash. 2001) *aff'd on other grounds* ........................................ 9

10
*Metronet Servs. Corp. v. Qwest Corp.*
    383 F.3d 1124 (9th Cir. 2004)............................................................................ 9

11
*Monsanto Co. v. Scruggs*
12
    342 F. Supp. 2d 568 (N.D. Miss. 2004) ................................................................ 7

13
*Morris Communications Corp. v. PGA Tour, Inc.*
    364 F.3d 1288 (11th Cir. 2004)........................................................................ 13, 14

14
*Morrison v. Viacom, Inc.*
15
    66 Cal. App. 4th 534 (1998)............................................................................ 16

16
*National Credit Reporting Assoc., Inc. v. Experian Information Solutions, Inc.*
    2004 WL 1888769 (N.D.Cal. 2004)................................................................ 15, 16

17
*Northern Pac. Ry. Co. v. United States*
18
    356 U.S. 1 (1958) ........................................................................................ 4, 5

19
*Oahu Gas Serv. v. Pacific Res., Inc.*
    838 F.2d 360 (9th Cir. 1988)............................................................................ 9

20
*Oakland-Alameda County Builders' Exchange v. F.P. Lathrop Con. Co.*
21
    4 Cal. 3d 354 (1971)...................................................................................... 16

22
*Paracor Finance, Inc. v. General Electric Capital Corp.*
    96 F.3d 1151 (9th Cir. 1996)............................................................................ 17

23
*Rebel Oil Co. v. Atlantic Richfield Co.*
24
    51 F.3d 1421 (9th Cir. 1995) *cert. denied*, 516 U.S. 987................................................ 8

25
*Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Sys., Inc.*
    732 F.2d 1403 (9th Cir. 1984)............................................................................ 5

26
*Rutman Wine Co. v. E. & J. Gallo Winery*
27
    829 F.2d 729 (9th Cir. 1987)............................................................................ 9

28
*Sanders v. Kennedy*
    794 F.2d 478 (9th Cir. 1986)............................................................................ 4

**TABLE OF AUTHORITIES**
(continued)

                                                                    **PAGE**

*Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*
    1995 WL 853037 (N.D. Cal. 1995)..............................................................14

*Seagood Trading Corp. v. Jerrico, Inc.*
    924 F.2d 1555 (11th Cir. 1991)..................................................................14

*Spectrum Sports, Inc. v. McQuillan*
    506 U.S. 447 (1993)....................................................................................14

*Stein v. Pacific Bell Telegraph Co.*
    173 F. Supp.2d 975 (N.D. Cal. 2001) ........................................................14

*Stein v. Pacific Bell Telephone Co.*
    No. C 00-2915 SI (N.D. Cal. 2004) ...........................................................10

*Ticketmaster Corp. v. Tickets.com, Inc.*
    2003 WL 21397701 (C.D. Cal. 2003)...........................................................9

*United States v. Colgate*
    250 U.S. 300 (1919)....................................................................................10

*United States v. Grinnell Corp.*
    384 U.S. 563 (1966)...................................................................................7, 8

*In re VeriFone Secs. Litig.*
    11 F.3d 865 (9th Cir. 1993)..........................................................................4

*Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*
    540 U.S. 398 (2004)......................................................................................1

*Z-Telegraph Communications, Inc. v. SBC Communications, Inc.*
    331 F.Supp.2d 513 (E.D. Texas 2004)...................................................14, 15

**FEDERAL STATUTES**

15 U.S.C. § 1 ..................................................................................................16

Federal Rule of Civil Procedure
    12(b)(6) .....................................................................................................1, 4

**CALIFORNIA STATUTES**

California Business & Professional Code
    §§ 16700-16770 .........................................................................................15
    §§ 17200 et seq...........................................................................................16

California Commercial Code
    § 2106........................................................................................................18
    § 2204(1) ...................................................................................................18

1

## NOTICE OF MOTION AND MOTION

2 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3       PLEASE TAKE NOTICE that on March 21, 2005 at 9 a.m., or as soon thereafter as

4 counsel may be heard, in Courtroom 8, 4th floor of the above-captioned Court, defendant Apple

5 Computer, Inc. (Apple) will bring on for hearing this motion for an order, pursuant to Federal

6 Rule of Civil Procedure 12(b)(6), dismissing the Class Action Complaint filed by Thomas

7 Slattery on January 3, 2005.

8

## RELIEF SOUGHT

9       Apple seeks an order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,

10 dismissing the Complaint with prejudice for failure to state a claim.

11

## MEMORANDUM OF POINTS AND AUTHORITIES

12 I.     **INTRODUCTION.**

13       This action, which attacks Apple's iPod and iTunes Music Store (iTMS) as antitrust

14 violations, is premised on a fundamental misunderstanding of the antitrust laws. It seeks to

15 inhibit Apple from engaging in the very creativity and competition that those laws are designed to

16 encourage. The complaint is meritless on its face, and should be dismissed.

17       Through innovation and ingenuity, Apple has designed consumer offerings—the iTunes

18 Music Store and the iPod—that have tapped into an enormous, previously unmet consumer

19 demand. The iTunes Music Store, launched in 2003, is Apple's pioneering solution to the

20 pernicious problem of music piracy. It enables consumers to purchase digital music files

21 online—lawfully, conveniently and inexpensively. The iPod, introduced two years earlier, is

22 Apple's sleek and highly popular version of a portable hard drive digital music player which has

23 won accolades worldwide. Pioneering new lines of consumer services and developing superior

24 products are exactly what the antitrust laws are intended to promote. *See Verizon*

25 *Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004)

26 (recognizing that the antitrust laws "safeguard the incentive to innovate"). Indeed, Apple is a

27 prime example of how innovation has benefited consumers and our economy, from introducing

28 the first personal computer in 1977 to now developing the first successful online music service.

C 05 00037 JW
DEF'S MOTION TO DISMISS

1      While the iPod and iTMS have enjoyed widespread consumer acceptance and fostered

2  exponential growth in consumer demand, they are not the only alternatives for consumers in

3  either of these nascent, emerging arenas.  Companies as substantial as Microsoft, Napster, Sony,

4  RealNetworks, Walmart and others offer digital music at numerous online sites.  Rio, Creative,

5  Nokia, Panasonic, Sony and others offer their own versions of portable digital music players.

6      There would be nothing wrong with Apple designing a portable player that played only

7  music from iTMS (or vice versa).  But that is not what Apple has done.  The reality, known to all

8  iPod owners and nowhere denied in the complaint, is that anyone can buy an iPod and use it to

9  play music obtained from any number of sources—**without ever buying a single track of music**

10  **from iTMS**.  Likewise, music downloaded from iTMS can be played on any computer or CD

11  player—**without ever buying an iPod**.  In short, one need not purchase an iPod to play music

12  from iTMS, and one need not purchase music from iTMS to use an iPod.

13      Recognizing this reality as an owner of an iPod, plaintiff Thomas Slattery tries to plead

14  around it.  His allegations, however, are insufficient on their face to state any cause of action.

15  The first two counts allege, in conclusory fashion, that Apple unlawfully tied the purchase of

16  iTMS music to the purchase of an iPod, and vice versa.  But he does not and cannot allege a key

17  element of unlawful tying, *i.e.*, that Apple refuses to sell iPods to consumers unless they also

18  download music from iTMS, or that Apple permits only iPod owners to download music from

19  iTMS.  Thus, his allegations are insufficient to state a claim for unlawful tying.

20      The third and fourth counts, for monopolization, allege in essence that if Apple would

21  license its intellectual property to competitors, there would be more compatibility between music

22  from online services and portable hard drive digital players.  That claim is defective in two

23  incurable ways.  First, Slattery does not allege facts showing that Apple has monopoly power in

24  either alleged market (legal online music and portable digital music players with hard drives).

25  His allegations that Apple has a large share of what he concedes are new markets with numerous

26  competitors is insufficient.  Particularly given the entry that has occurred in these alleged

27  markets, Slattery does not and cannot allege that entry barriers foreclose competition.  Second, as

28  the Supreme Court held last term in *Trinko*, the antitrust laws do not require any company, even a

1   "monopolist," to deal with competitors absent a pre-existing, voluntary course of dealing.  Here,

2   Slattery admits that Apple has followed a consistent policy of not licensing the intellectual

3   property at issue.  Thus, the monopolization claim fails as a matter of law.

4        The fifth and sixth counts allege an antitrust theory—"monopoly leveraging"—that the

5   Ninth Circuit has explicitly rejected.  Those counts also fail as attempt to monopolize claims,

6   because Slattery has not pled the requisite specific intent to monopolize or any cognizable

7   predatory or anticompetitive conduct.

8        Finally, the related state law claims in the seventh through tenth counts fall of their own

9   weight with the collapse of the federal claims.  They should be dismissed on the merits.

10  II.   **THE COMPLAINT.**

11       According to the complaint, consumers historically purchased music in the form of

12  records, tapes and compact discs from traditional "brick and mortar" music stores.  ¶ 12.  With

13  the advent of the Internet, the demand for obtaining music in digital format online emerged.  *Id.*

14  The legality of the initial methods of doing so was challenged in the Napster litigation, the

15  outcome of which highlighted the need for legitimate outlets for purchasing music online.  *Id..*

16       In April 2003, Apple launched iTMS—two years after introducing the alleged tying or

17  tied product, the iPod.  ¶¶ 13, 22.  To access iTMS, consumers log onto the "iTunes site" where

18  they can browse music recordings and purchase individual songs (at 99 cents per song) instead of

19  entire CDs.  ¶¶ 13, 14, 16.  The purchased music is downloaded to the consumer's computer,

20  where it is stored for further use.  ¶ 14.

21       At some undisclosed time, Slattery purchased digital music from iTMS and downloaded it

22  to the hard drive of his computer.  ¶¶ 9, 14.  He could play that music on his computer and CD

23  player.  ¶¶ 39, 42.  If he wished to "portably enjoy" the music, he alleges that the iPod was the

24  only product that could "directly" play it.  ¶¶ 9, 27, 41 and 72.  In that sense, he claims he was

25  "forced" to buy an iPod.  ¶ 9.

26       Slattery alleges two relevant product markets in the United States: a purported market for

27  legal online sales of digital music files (which excludes all other sources of music), and a

28  purported market for portable hard drive digital music players (which excludes all other portable

C 05 00037 JW
DEF'S MOTION TO DISMISS

1    players such as CD players, players with flash or removable memory and all other means of

2    playing music). ¶ 11.  He acknowledges that Apple faces competition in each alleged market

3    (even under his artificially narrow definition).  For portable hard drive digital music players, he

4    points to "Rio, iRiver, Creative, Archos, e.Digitial, RCA, Panasonic, Nokia, Tatung, Epson,

5    Gateway, and others." ¶ 24.  For legal online sales of music, he admits that Apple's competitors

6    include "Napster, Walmart.com, Musicmatch, RealPlayer, Buy.com, Sony Connect, eMusic,

7    Music Rebellion, Audio Lunch Box, Live Downloads, and Bleep among others." ¶ 21.  He omits

8    Microsoft's MSN music website.  Although he alleges that Apple has a large share of the two

9    narrowly-defined alleged markets, he claims no barriers to entry.

10          Slattery alleges three pairs of purported antitrust violations:  tying in violation of § 1 of

11    the Sherman Act (Counts I and II); monopolization in violation of § 2 of the Sherman Act

12    (Counts III and IV); and "monopoly leveraging" in violation of § 2 (Counts V and VI).  The only

13    difference between the two counts in each pair is that they reverse the allegedly tying and tied

14    products or the allegedly monopolized market.  The state law claims (Counts VII-X) are tag-along

15    analogs to his federal claims and rely on the same allegations of tying and monopolization.

16    III.    **THE LEGAL STANDARD**.

17          Under Federal Rule of Civil Procedure 12(b)(6) a cause of action that fails to state a claim

18    upon which relief can be granted must be dismissed.  "All material allegations in the complaint

19    are to be taken as true and construed in the light most favorable to the non-moving party."

20    *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  Conclusory allegations are disregarded.

21    *See In re VeriFone Secs. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993).  Legal conclusions pled as facts

22    may be disregarded.  *JM Computer Servs., Inc. v. Schlumberger Techs., Inc.* 1996 WL 241607, *2

23    (N.D. Cal. 1996).

24    IV.    **ARGUMENT**.

25          A.    **Slattery's Tying Allegations Fail to State a Claim.**

26          A tying arrangement is "an agreement by a party to sell one product but only on the

27    condition that the buyer also purchases a different (or tied) product." *Northern Pac. Ry. Co. v.*

28    *United States*, 356 U.S. 1, 5-6 (1958) (footnote omitted).  "[W]here the buyer is free to take either

C 05 00037 JW
DEF'S MOTION TO DISMISS

1    product by itself there is no tying problem." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S.

2    2, 12 n.17 (1984) (quoting *North Pac. Ry. Co.*, 356 U.S. at 6 n.4.).  No tying exists where the

3    buyer purchases the second product on account of its "intrinsic superiority" rather than any

4    coercion by the seller.  *North Pac. Ry Co.*, 356 U.S. at 10-11; *see also Robert's Waikiki U-Drive,*

5    *Inc. v. Budget Rent-A-Car Sys., Inc.*, 732 F.2d 1403, 1407 (9th Cir. 1984) (no tying where an

6    airline and a rental car company offered a package deal with discounted rates on airfare and rental

7    car fees but consumers were free to purchase airline travel and rental car services separately,

8    albeit at a higher price).

9         Slattery's allegations do not meet this standard.  Most fundamentally, he does not allege

10   that Apple refuses to sell iPods to consumers unless they also agree to download music from

11   iTMS, or that Apple refuses to permit consumers to download music from iTMS unless they also

12   buy an iPod.  Nor does he contend that music downloaded from iTMS can only be played on an

13   iPod, or that only iPods can play music from iTMS.  Indeed, he acknowledges that music from

14   iTMS can be played on computers and CD players (some of which are portable, of course) and,

15   inferentially, that it can be played indirectly on other portable players.  ¶ 9 (can be played

16   "directly" only on iPod); ¶ 42 (can be played on computer and CD player); ¶ 23 ("one" use is

17   portable digital player).  Conversely, he acknowledges, again in a backhanded way, that iPods can

18   indirectly play music from sources other than iTMS (¶¶ 9, 27, 72)—such as importing music

19   from the consumer's CD library.[1]

20        At most, therefore, Slattery's complaint is that if he wants to play music from iTMS in

21   one particular way—direct playback on a portable digital player with a hard drive—an iPod is the

22   most practical and effective, or the "intrinsically superior," option.  It is only in that sense that he

23   claims that he was "forced" to buy an iPod and music from iTMS.  ¶ 9.  As a matter of law, his

---

24   [1]      Slattery does not explain what he means by "direct" in alleging that only iPods
     "directly" play music from iTMS (*e.g.*, ¶ 9) and that only iTMS music can be played "directly" on
25   iPods (*e.g.*, ¶ 27).  Presumably, he is referring to the fact that music from online music services
     can be burned to a CD and played on most if not all CD players or digital music players.  We
26   assume that the absence of the modifier "direct" in otherwise identical allegations (*e.g.*, ¶¶ 38-39)
     is inadvertent.  In any event, given the separate availability of iPods and iTMS music and the
27   other options for playing music from iTMS and on iPods, it does not matter what music can be
     played directly or indirectly on which portable player.
28

C 05 00037 JW
DEF'S MOTION TO DISMISS

1   allegations are insufficient to establish an unlawful tying arrangement. *See Foremost Pro Color,*

2   *Inc. v. Eastman Kodak Co.*, 703 F.2d 534 (9th Cir. 1983).

3   In *Foremost Pro Color*, the Ninth Circuit considered a tying challenge to Kodak's

4   decision to introduce its Instamatic camera, a new film and developing process, and the

5   equipment necessary to process the new film, all at the same time. A competitor alleged an

6   unlawful tying arrangement because the new Kodak system was "incompatible" with existing

7   products. *Id.* at 544. Affirming dismissal for failure to state a claim, the Ninth Circuit held that

8   the rationale underlying tying claims did not apply to so-called "technological ties." A

9   "technological interrelationship among complementary products" does not constitute the type of

10  coerced or forced purchase of two products that constitute unlawful tying. *Id.* at 542. The claim

11  that the "effective use" of one product "necessitates purchase of some or all of the others" is

12  insufficient where the products are separately available for purchase. *Id.* at 543. "Any other

13  conclusion would unjustifiably deter the development and introduction of those new technologies

14  so essential to the continued progress of our economy." *Id.* "Quite obviously, a firm that

15  pioneers new technology will often introduce the first of a new product type along with related,

16  ancillary products that can only be utilized effectively with the newly developed technology." *Id.*

17  at 542. In short, the Ninth Circuit held that "the introduction of technologically related products,

18  even if incompatible with the products offered by competitors, is alone neither a predatory nor

19  anticompetitive act." *Id.* at 544.

20  Slattery does not even allege that the "effective use" of iTMS music or an iPod

21  "necessitates" the purchase of the other. Given the other ways to play iTMS music and to obtain

22  music for an iPod, Slattery could not possibly make that allegation. Even if he could, it would

23  still be insufficient under *Foremost* because even where "effective use" of one product

24  "necessitates purchase of some or all of the others," there is no unlawful tying so long as the

25  products are separately available for purchase. Indisputably, one can buy and use an iPod without

26  downloading a single track from iTMS. And one can buy and listen to any number of tracks from

27  iTMS without buying or using an iPod.

28

C 05 00037 JW
DEF'S MOTION TO DISMISS

1    In accord is *Innovation Data Processing, Inc. v. IBM Corp.*, 585 F. Supp. 1470 (D.C.N.J.

2    1984), in which a data recovery software company brought a tying claim against IBM. The key

3    issue was whether IBM had tied sales of its data recovery software (DFDSS) to a package of

4    software updates (IPOJ), by including it in the integrated version of IPOJ. The competitor alleged

5    that although the various pieces of software could be licensed separately, IBM had tied DFDSS to

6    IPOJ "as a practical matter" because customers would want "to avoid the technical and

7    administrative problems" of licensing competing data recovery software. *Id.* at 1474. The district

8    court granted summary judgment to IBM:

> "[A]s a matter of law, in the absence of evidence that the purchase of the alleged tied product was required as a condition of sale of the alleged tying product -- rather than merely as a prerequisite for practical and effective use of the tying product -- [plaintiff] has failed to show the requisite coercion necessary to establish a per se illegal tying arrangement."

*Id.* at 1475-76.[2]

    Thus, because he does not and cannot allege that Apple refuses to sell iPods to consumers

who do not download music from iTMS, or vice versa, Slattery's tying claim is insufficient as a

matter of law, and Counts I and II should be dismissed.[3]

    B.    **Slattery's Monopolization Allegations Do Not State a Claim.**

    A monopolization claim requires sufficient factual allegations showing (1) the possession

of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that

power as distinguished from growth or development as a consequence of a superior product,

business acumen, or historic accident. *See Trinko*, 540 U.S. at 407, *citing United States v.*

---

    [2]    *See also Monsanto Co. v. Scruggs,* 342 F. Supp. 2d 568, 578 (N.D. Miss. 2004) ("Defendants fall short of demonstrating that Monsanto forces its seed partners to buy Roundup herbicide in order to obtain a desired license. Although the provision at issue forecloses seed partners from using glyphosate-based herbicides other than Roundup, Monsanto's seed partners are under no compulsion to buy Roundup. The seed partners remain free to refrain from the use of any glyphosate-based herbicide. They are likewise free to use any non-glyphosate herbicide they choose.")

    [3]    Slattery's class definition recognizes implicitly the absence of any legally cognizable tie. Because some iPod owners never obtain any music from iTMS and, conversely, some consumers obtain music from iTMS but never buy an iPod, the purported class is defined to consist only of those who did both. ¶¶ 1, 56.

1    *Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). Slattery's monopolization claims (Counts III and

2    IV) rest on Apple's decision not to license its Digital Rights Management (DRM) software to

3    competitors. To comply with usage rules imposed by major record companies that own the music

4    rights, all legal online music services encrypt, with the assistance of a DRM, the digital music

5    files they sell. Most online services use a DRM developed by Microsoft called Windows Media

6    Audio or WMA DRM.[4] Apple developed and uses its own DRM called FairPlay.

7         Counts III and IV are deficient as a matter of law in two respects.

8         1.    **The market power allegations are inadequate as a matter of law.**

9         Slattery's allegations of market power in the two alleged markets are deficient. As to the

10   purported market for legal online sales of digital music files, Slattery alleges that Apple has

11   unrestrained pricing power, but he bases that assertion solely on the allegation that other

12   competitors have small market shares. ¶¶ 20-21. As to the alleged market for hard drive digital

13   music players, Slattery again relies solely on market shares without even alleging that Apple's

14   pricing is unrestrained. ¶ 24. He alleges no barriers to entry or expansion by Apple's competitors

15   in either alleged market. Nor could he given his admission that Apple faces a dozen or more

16   competitors in each alleged market. ¶¶ 21, 24. He also does not allege that Apple can exclude

17   competition in either alleged market.

18        Naked allegations of market share are insufficient to establish monopoly power. *See*

19   *American Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal and Prof'l Publ'ns, Inc.*,

20   108 F.3d 1147, 1154 (9th Cir. 1997) ("Even if Harcourt has a high market share, neither

21   monopoly power nor a dangerous probability of achieving monopoly power can exist absent

22   evidence of barriers to new entry or expansion."); *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d

23   1421, 1439 (9th Cir. 1995), *cert. denied*, 516 U.S. 987 (1995) ("mere showing of substantial or

24   even dominant market share" is insufficient; must show that "new rivals are barred from entering

25   the market"); *Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1425 (9th Cir. 1993)

26   ("proof of its [defendant's] 100% market share does not demonstrate that it had the power to

27   _____

28       [4]   *See, e.g.*, http://www.iht.com/articles/2005/01/23/yourmoney/music24.html
    (Microsoft's version of DRM is "already the standard," quoting the CEO of Napster's parent ).

C 05 00037 JW
DEF'S MOTION TO DISMISS

1   control prices or exclude competition in the absence of any evidence that it could prevent entry of

2   other market participants"); *Oahu Gas Serv. v. Pacific Res., Inc.*, 838 F.2d 360, 366 (9th Cir.

3   1988) (high market share does not imply monopoly power "in a market with low entry barriers or

4   other evidence of a defendant's inability to control prices or exclude competitors"); *Ticketmaster*

5   *Corp. v. Tickets.com, Inc.*, 2003 WL 21397701, *4 (C.D. Cal. 2003) ("[s]ize alone or heavy

6   market share alone does not make one a monopolist (or in danger of becoming one)").

7        Market share is a particularly suspect measure in new and emerging markets, where the

8   pioneer by definition starts with a large market share, indeed 100% in cases where the first

9   company in effect creates the market. *See Metro Mobile CTS, Inc. v. NewVector*

10  *Communications, Inc.*, 892 F.2d 62, 63 (9th Cir. 1989) ("NewVector's 100% share of the

11  wholesale market during the headstart period is insufficient to establish market power. 'Blind

12  reliance on market share, divorced from commercial reality, [can] give a misleading picture of a

13  firm's actual ability to control prices or exclude competition.'") (citation omitted); *Metronet*

14  *Servs. Corp. v. Qwest Corp.*, 2001 WL 765167, *5 (W.D. Wash. 2001) (granting summary

15  judgment on monopoly claims because although Qwest had a 95% market share it was "highly

16  unlikely that Qwest's high market share confers upon it market power" where the market was less

17  than five years old and other competitors were entering rapidly) *aff'd on other grounds*, *Metronet*

18  *Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1126 (9th Cir. 2004).

19       Slattery's allegations do not withstand a motion to dismiss. *See Rutman Wine Co. v. E. &*

20  *J. Gallo Winery*, 829 F.2d 729, 736 (9th Cir. 1987) (affirming grant of motion to dismiss where

21  plaintiff failed to allege monopoly power with requisite specificity).  As a matter of law, it is

22  impossible to monopolize markets with no alleged entry barriers, particularly with existing

23  competitors like Microsoft, Sony, Napster, Gateway, Panasonic, Nokia and the other substantial

24  companies that offer online music services or manufacture and sell portable digital music players.

25              2.    **The alleged refusals-to-deal are permitted under § 2.**

26       If Slattery could overcome the defects in his monopoly power allegations, his

27  monopolization claims would still fail because they allege only lawful refusals-to-deal.  Well

28  aware of the impact of *Trinko* on refusal-to-deal claims from the dismissal of an earlier case

C 05 00037 JW
DEF'S MOTION TO DISMISS

1    brought by his counsel,[5] Slattery avoids using the refusal-to-deal nomenclature. But that is

2    exactly what his claims are. He alleges that Apple has "refused to license its FairPlay DRM or

3    otherwise let any other manufacturer of portable hard drive digital music players gain interactive

4    access to files sold" by iTMS. ¶ 44.[6] But Apple's refusal to deal with competitors in this way

5    does not state a claim under the antitrust laws.

6        In *Trinko*, the Supreme Court affirmed the *Colgate* rule that "the Sherman Act 'does not

7    restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private

8    business, freely to exercise his own independent discretion as to parties with whom he will deal.'"

9    *Trinko*, 540 U.S. at 408, *quoting United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919). The

10   Court explained that "mere possession of monopoly power" is "not only not unlawful; it is an

11   important element of the free-market system." *Id.* at 407. Allowing firms to reap the rewards of

12   their superior products and business acumen "induces risk taking that produces innovation and

13   economic growth." *Trinko*, 540 U.S. at 407. The Court explained that "[f]irms may acquire

14   monopoly power by establishing an infrastructure that renders them uniquely suited to serve their

15   customers." *Id.* Requiring such firms to "share the source of their advantage" is problematic for

16   several reasons. *Id.* at 407-08. First, it is in "some tension with the underlying purpose of

17   antitrust law, since it may lessen the incentive for the monopolist, the rival, or both to invest in

18   those economically beneficial facilities." *Id.* Second, "[e]nforced sharing . . . requires antitrust

19   courts to act as central planners, identifying the proper price, quantity, and other terms of

20   dealing—a role for which they are ill-suited." *Id.* at 408. Finally, "compelling negotiation

21      [5]    Order Granting Defendants' Motion for Summary Judgment; Denying Plaintiffs'
22   Motion for Summary Judgment; and Denying Motions to Exclude Evidence and to Stay, filed
     March 4, 2004, *Stein v. Pacific Bell Telephone Company*, No. C 00-2915 SI, Northern District of
23   California, *14. A copy of this Order is submitted in the Appendix.

24      [6]    Although the complaint is cryptic, plaintiff does not and cannot dispute that the
     major record companies require online music services to use some form of DRM to enforce the
25   usage rules imposed as a condition of granting a license to the services, thereby protecting their
     intellectual property and copyright interests in the music. Like Microsoft's WMA DRM, which
26   most online services license from Microsoft, Apple's FairPlay DRM is essentially an encrypted
     security system to ensure that the consumer's use of music files is consistent with the contract
27   between the record companies and the online service. While the complaint's attempt to make
     DRM seem sinister is inaccurate, it is ultimately irrelevant to this motion to dismiss for the
28   reasons discussed in the text.

C 05 00037 JW
DEF'S MOTION TO DISMISS

1    between competitors may facilitate the supreme evil of antitrust: collusion." *Id.* "To safeguard

2    the incentive to innovate," the Court emphasized that "the possession of monopoly power will not

3    be found unlawful unless it is accompanied by an element of anticompetitive **conduct**." *Id.* at 407

4    (emphasis in original).

5        The Court stressed that the exceptions in which a refusal to cooperate with rivals may

6    constitute anticompetitive conduct are narrow: "We have been very cautious in recognizing such

7    exceptions, because of the uncertain virtue of forced sharing and the difficulty of identifying and

8    remedying anticompetitive conduct by a single firm." *Id.* at 408. The Court described the

9    exception permitted in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585 (1985),

10   as "at or near the outer boundary of § 2 liability." *Id.* at 409. In *Aspen Skiing*, defendant owned

11   three of four mountains in a popular skiing area. For years, defendant had cooperated with

12   plaintiff, who owned the fourth mountain, to offer joint, multi-day, all-area ski tickets. After

13   demanding an increasing larger share of the proceeds from the tickets, defendant canceled the

14   joint tickets. Defendant went so far as to refuse to permit plaintiff to buy defendant's tickets at

15   retail prices. *Id.* at 593-94. The Court upheld a jury verdict for plaintiff, reasoning that the jury

16   could reasonably conclude that defendant "elected to forgo these short-run benefits because it was

17   more interested in reducing competition . . . over the long run by harming its smaller competitor."

18   *Id.* at 608.

19       In *Trinko*, the Court contrasted the facts before it with the key aspects of *Aspen Skiing*.

20   First, in *Aspen Skiing* the defendant had voluntarily entered into a course of dealing and "had

21   cooperated for years" with its competitor, after which it had unilaterally terminated a voluntary

22   relationship. This was central to the Court's decision because the prior course of dealing was

23   presumed to be profitable and abandoning it suggested a willingness to foresake short-term profits

24   to achieve an anticompetitive end. *See Trinko*, 540 U.S. at 409. By contrast, in *Trinko*, there was

25   no allegation that "Verizon voluntarily engaged in a course of dealing with its rivals, or would

26   ever have done so absent statutory compulsion." *Id.*

27       The Court also pointed to a "more fundamental" difference between the two cases. In

28   *Aspen Skiing*, "what the defendant refused to provide to its competitor was a product that it

C 05 00037 JW
DEF'S MOTION TO DISMISS

11

1  already sold at retail" whereas in *Trinko*, "the services allegedly withheld are not otherwise

2  marketed or available to the public." *Id.* at 410. Instead, granting access meant that "[n]ew

3  systems must be designed and implemented" at "considerable expense and effort." *Id.*

4       These differences between *Aspen Skiing* and *Trinko* compelled the Court to find that

5  "Verizon's alleged insufficient assistance in the provision of service to rivals is not a recognized

6  antitrust claim under this Court's existing refusal-to-deal precedents." *Id.*

7       The *Trinko* analysis disposes of Slattery's monopolization claims. First, as in *Trinko*,

8  Slattery is not alleging that Apple cut off a voluntary course of dealing. Instead, he asserts that

9  Apple has "steadfastly" refused to deal with its competitors. This dooms his claim. *See Covad*

10  *Communications Co. v BellSouth Corp.*, 374 F.3d 1044, 1049 (11th Cir. 2004) ("*Trinko* now

11  effectively makes the unilateral termination of a voluntary course of dealing a requirement for a

12  valid refusal-to-deal claim under *Aspen*"). Second, as in *Trinko*, Slattery does not claim that

13  Apple is refusing to provide competitors with a product that it is selling to the public at retail. His

14  refusal-to-deal claims are premised on Apple's failure to license its FairPlay DRM to competitors.

15  He does not allege that Apple provides such licenses to the public. For these reasons, Slattery's

16  allegations fail to state a valid claim for monopolization under § 2.

17       The same policy reasons cited by the Supreme Court apply here. As in *Trinko*, forcing

18  Apple to deal with rivals "may lessen the incentive" for Apple or rivals to innovate and invest in

19  "economically beneficial facilities." *Trinko*, 540 U.S. at 408. It would require antitrust courts "to

20  act as central planners, identifying the proper price, quantity, and other terms of dealing—a role

21  for which they are ill-suited." *Id.* And, theoretically at least, forcing Apple to negotiate with

22  rivals "may facilitate the supreme evil of antitrust: collusion." *Id.*

23       The *Trinko* approach is particularly compelling where the refusal-to-deal is a refusal to

24  license intellectual property. Courts have repeatedly held that § 2 does not require even a

25  dominant firm to create competition against itself within its own technology by licensing

26  intellectual property to rivals. In *Independent Serv. Orgs. Antitrust Litig.,* 203 F.3d 1322, 1326

27  (Fed. Cir. 2000), the Federal Circuit held that refusals to license are beyond the reach of the

28  Sherman Act, absent a showing of tying, sham litigation or fraud in obtaining the intellectual

1   property rights. Even if market power results from control of a patent, such "market power does

2   not impose on the intellectual property owner an obligation to license the use of that property to

3   others." *Independent Serv. Orgs. Antitrust Litig.*, 203 F.3d at 1326 (citations omitted) (declining

4   invitation to examine Xerox's subjective motivation in asserting its right to exclude under the

5   copyright law for pretext in absence of allegation that copyrights obtained unlawfully or

6   allegations of copyright misuse). No such showing is possible here. Only tying is even alleged

7   and, as shown above, there is no cognizable tie.[7]

8          Slattery's allegations regarding a competitor, RealNetworks, underscore that Apple did

9   not voluntarily engage in a course of dealing with rivals. According to the complaint,

10  RealNetworks cracked the code in Apple's FairPlay DRM so that music from RealNetworks

11  Music Store could be played directly on the iPod without the intermediary step of burning to a

12  CD. ¶¶ 47-50.[8] Apple was "stunned" by RealNetworks' decision to adopt "the tactics and ethics

13  of a hacker" and, according to the complaint, updated its iPod software to prevent this

14  circumvention of its DRM. ¶¶ 49-50. Hacking is not what the Supreme Court had in mind in

15  referring to a voluntary, presumably profitable course of dealing, the termination of which is

16  presumably motivated by anti-competitive intent and may constitute an actionable refusal-to-deal.

17  Under *Trinko*, RealNetworks' efforts to force dealing do not create an antitrust duty on Apple to

18  cooperate and facilitate dealing on a going forward basis, particularly where RealNetworks pays

19  nothing and simply free rides on the economic rewards of Apple's innovation. *See Morris*

20  *Communications Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1296 (11th Cir. 2004), *citing Seagood*

21

22          [7]    In one case where a refusal to license gave rise to § 2 liability (albeit pre-*Trinko*),
    the defendant had voluntarily dealt with competitors and allegedly changed its policies over time
23  based on its desire to exclude increasingly aggressive competitors. *See Image Tech. Servs., Inc. v.*
    *Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997). If that decision survives *Trinko* and
24  *Independent Serv. Org.*, which is doubtful, it still does not help Slattery because he does not and
    cannot allege any voluntary course of dealing with respect to FairPlay DRM, let alone a
25  termination thereof.

26          [8]    Using euphemisms for hacking, Slattery alleges that RealNetworks "managed to
    independently analyze the firmware" in the iPod, "was able to discern" Apple's software code,
27  and inserted a "corresponding code" into its own song files so that music from its own online
    store could play on the iPod. ¶ 47.
28

C 05 00037 JW
DEF'S MOTION TO DISMISS

1   *Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1573 (11th Cir. 1991) ("[I]t 'is not a function of

2   the antitrust laws' to equip plaintiffs with defendants' competitive advantages.").

3          In short, Slattery alleges nothing more than a consistent refusal by Apple to license its

4   intellectual property. That claim is insufficient as a matter of law and should be dismissed.

5          C.     **The Ninth Circuit Does Not Recognize Monopoly Leveraging Claims**.

6          In Count V, Slattery accuses Apple of violating § 2 by engaging in "monopoly

7   leveraging"—that is, using iTMS's purported monopoly power in legal online sales of digital

8   music files to achieve a monopoly for the iPod in the portable hard drive digital music player

9   market. Evidently uncertain of that claim, the next count, Count VI, alleges the reverse (just like

10  the other pairs of alleged violations discussed above). The fundamental infirmity of both counts

11  is that the Ninth Circuit has rejected the "monopoly leveraging doctrine as an independent theory

12  of liability under Section 2." *Alaska Airlines, Inc. v. United Airlines, Inc.,* 948 F.2d 536, 547 (9th

13  Cir. 1991); *see also Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*, 1995 WL 853037,

14  *2 (N.D. Cal. 1995) (plaintiff voluntarily dismissed leveraging claims in light of *Alaska Airlines*

15  decision). Indeed, Judge Illston so held in dismissing, without leave to amend, a monopoly

16  leveraging claim in another case brought by Slattery's counsel. *See Stein v. Pacific Bell Tel. Co.*,

17  173 F. Supp.2d 975, 983 (N.D. Cal. 2001). This is consistent with the Supreme Court's

18  recognition in *Trinko* that "monopoly leveraging" is not an independent claim but must meet the

19  requirements for attempted monopolization. *Trinko*, 540 U.S. at 415 n.4. The elements of that

20  offense are: "(1) that the defendant has engaged in predatory or anticompetitive conduct with

21  (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly

22  power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993) (citing multiple cases).

23  Slattery's complaint does not adequately allege facts for any of these elements, never mind all

24  three.

25         The anticompetitive conduct necessary to support such a claim cannot be conduct that

26  otherwise passes muster under the Sherman Act. As *Trinko* held, a refusal-to-deal is not

27  anticompetitive conduct except in the narrow circumstance not here pled. *See also Z-Tel*

28  *Communications, Inc. v. SBC Communications, Inc.*, 331 F.Supp.2d 513, 543 (E.D. Texas 2004)

C 05 00037 JW
DEF'S MOTION TO DISMISS

1    (recognizing that "the absence of legally cognizable anticompetitive conduct" motivated *Trinko*'s

2    rejection of the leveraging claim). Here, Slattery alleges no cognizable anticompetitive conduct.

3    His tying claims fail, as shown above, because there is no tie. *See supra*, pp. 4-7. His refusal-to-

4    deal claims suffer a similar fate because Slattery can point to no obligation to deal, and his claims

5    fall far outside the narrow confines of *Aspen Skiing.*

6        Slattery's complaint also fails to allege the requisite "specific intent" to monopolize.

7    Although the complaint grouses extensively about Apple's conduct, it never alleges that the

8    conduct was undertaken with the "specific intent to destroy competition or build monopoly"

9    which "is essential to guilt for the mere attempt." *California Computer Prods., Inc. v. IBM*, 613

10   F.2d 727, 736 (9th Cir. 1979) (citations omitted).

11       Finally, Slattery fails to allege that there is a dangerous probability that Apple will

12   succeed in achieving a monopoly. Allegations of high market share do not satisfy this element.

13   *See American Prof'l Testing Serv.*, 108 F.3d at 1154, and other cases cited *supra* at pp. 8-9.

14       For these reasons, Slattery's monopoly leveraging claims, even if construed as attempt to

15   monopolize claims, should be dismissed without leave to amend.

16   D.    **The State Law Claims Are Meritless As A Matter of Law.**

17       The state law claims suffer the same defects as the federal antitrust claims, as well as

18   additional infirmities. Like the federal claims, they should be dismissed with prejudice.

19       1.    **The Cartwright Act does not reach unilateral activity such as alleged**

20             **monopolization.**

21       The Cartwright Act, codified in California Business & Professions Code §§ 16700-16770,

22   generally prohibits the formation of trusts that "create or carry out restrictions in trade or

23   commerce." Cal. Bus. & Prof. C. § 16720(a). Restrictions are wrongful only if carried out by a

24   "trust" which is a "combination of capital, skill or acts by two or more persons." Cal. Bus. &

25   Prof. C. § 16720. The Cartwright Act does not reach unilateral acts, *i.e.*, acts taken by a single

26   company. It does not contain the equivalent of section 2 of the Sherman Act. *See Dimidowich v.*

27   *Bell & Howard*, 803 F.2d 1473, 1478 (9th Cir. 1988) (holding that claims for unilateral conduct

28   are not "cognizable under the Cartwright Act."); *National Credit Reporting Assoc., Inc. v.*

C 05 00037 JW
DEF'S MOTION TO DISMISS

1   *Experian Information Solutions, Inc.,* 2004 WL 1888769, *3 (N.D.Cal. 2004) (dismissing

2   monopolization claim brought under Cartwright Act, on ground that that "California's antitrust

3   laws do not address such unilateral, monopolization conduct"). Here, Slattery's monopolization

4   and attempted monopolization claims allege only unilateral conduct of Apple and thus do not

5   state a claim under the Cartwright Act.

6               2.      **The tying, common law monopolization and UCL claims fall with the**

7                       **federal claims.**

8       The tying allegations fail to state a claim under the Cartwright Act for the reasons stated

9   *supra* at pp. 4-7. *Oakland-Alameda County Builders' Exchange v. F.P. Lathrop Constr. Co.,* 4

10  Cal. 3d 354, 361-62, n.3 (1971) (federal cases interpreting the Sherman Act are applicable in

11  construing Cartwright Act as applied to tying claims); *Morrison v. Viacom, Inc.,* 66 Cal. App. 4th

12  534, 541 (1998) (tying case noting that "[f]ederal law interpreting Sherman Antitrust Act section

13  1 (15 U.S.C. § 1) is useful when addressing issues arising under section 16720 [the Cartwright

14  Act]"). Accordingly, the Cartwright Act claim should be dismissed on the merits.

15      The purported "common law monopolization" claim does not add anything. Assuming

16  *arguendo* that such a claim exists, its elements would not differ from the federal monopolization

17  claims. As shown above, those federal claims are insufficient as a matter of law. So too is any

18  common law claim.

19      The Unfair Competition Law (UCL) claim, California Business & Professional Code §§

20  17200 et seq., suffers the same fate. The California Supreme Court's decision in *Cel-Tech*

21  *Communications, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163 (1999), as applied in

22  *Chavez v. Whirlpool Corp.,* 93 Cal. App. 4th 363 (2001), governs this claim. *See also Churchill*

23  *Village, L.L.C. v. Gen'l Elec. Co.,* 169 F. Supp.2d 1119, 1130 (N.D. Cal. 2000) (finding *Cel-Tech*

24  equally applicable in consumer actions). The UCL prohibits, to the extent relevant here, unlawful

25  and unfair business practices. Slattery alleges that the same conduct that is the basis of his

26  antitrust claims is also the basis of his UCL claim. ¶¶ 95-96. As shown above, that conduct is

27  lawful and, for the reasons stated in *Chavez*, it cannot be considered "unfair."

28

C 05 00037 JW
DEF'S MOTION TO DISMISS

1     In *Chavez* , plaintiff challenged Whirlpool's policy of not dealing with distributors that

2   failed to comply with its suggested resale prices as violations of the Cartwright Act and the UCL.

3   Sustaining a demurrer, the Court first held that Whirlpool had a right to refuse to deal based on

4   the *Colgate* doctrine which, as noted in the discussion of *Trinko*, protects a company's "right to

5   select with whom to do business and on what terms." *Chavez*, 93 Cal. App. 4th at 370.  On that

6   basis, the Court held that Whirlpool's conduct was permissible under the Cartwright Act.

7   Turning to the UCL claim, the Court held as a matter of law that "conduct that is permissible

8   under the *Colgate* doctrine is neither unlawful nor 'unfair' under the unfair competition law." *Id.*

9   at 367; *see also id.* at 375.  The Court reasoned that if conduct that allegedly restrains competition

10  and harms consumers does not violate the antitrust laws, it cannot be considered "unfair" to

11  consumers.  Permitting a "separate inquiry into essentially the same question under the unfair

12  competition law would only invite conflict and uncertainty and could lead to the enjoining of

13  procompetitive conduct." *Id.*  In accord is *Aguilar v. Atlantic Richfield Company*, 25 Cal. 4th

14  826, 866 (2001) (where antitrust claim is dismissed on the merits, "derivative" UCL claim

15  asserting the same conspiracy must be dismissed as well).

16     As in *Chavez* and *Aguilar*, Slattery relies on the same conduct for his antitrust and UCL

17  claims, and contends that it restrains competition and harms consumers. ¶¶ 96-97.  As shown

18  above, the challenged conduct is lawful and protected by the *Colgate* doctrine as applied in

19  *Trinko*.  Thus, his UCL counts do not state a valid claim and should be dismissed.

20     Because the common law monopolization and UCL counts (and the unjust enrichment

21  claim discussed next) are intertwined with the federal claims, it is appropriate for this Court to

22  dismiss them on the merits rather than permitting plaintiff to refile in state court.

23              3.      **Slattery's unjust enrichment claim is contrary to established law**.

24     Under California law, an unjust enrichment claim does not lie where, as here, plaintiff

25  alleges that he purchased a product in a transaction that creates a contract. *Paracor Fin., Inc. v.*

26  *General Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (holding that under California

27  law, unjust enrichment is action in quasi-contract which does not lie when valid contract defines

28  rights of parties); *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp.2d 838, 856 (N.D. Cal. 2004).  In

C 05 00037 JW
DEF'S MOTION TO DISMISS

1    *Gerlinger*, a consumer purchased books over the Internet sued Amazon and Borders for antitrust

2    violations and unjust enrichment. Because the purchases created contracts between the buyer and

3    seller under California Commercial Code §§ 2106(1) and 2204(1), the Court dismissed the unjust

4    enrichment claim. "An action based on quasi-contract [such as unjust enrichment] cannot lie

5    where a valid contract covering the same subject matter exists between the parties." *Gerlinger,*

6    311 F. Supp. 2d at 856 (citations omitted).

7        Slattery alleges that he purchased music from the iTMS and, later, an iPod from Apple.

8    ¶¶ 9, 56, 60. As in *Gerlinger*, each transaction created a contract between Slattery and Apple.

9    Accordingly, Slattery's quasi-contract claim for unjust enrichment fails as a matter of law.

10   V.    **CONCLUSION.**

11       For these reasons, the complaint should be dismissed in its entirety, and the dismissal

12   should be without leave to amend because the defects are incurable.

13

14   Dated: February 10, 2005                    Respectfully submitted,

15                                               JONES DAY

16

17                                               By: _____

18                                                   Robert A. Mittelstaedt

19                                               Counsel for Defendant
                                                 APPLE COMPUTER, INC.

20

21   SFI-520322v4

22

23

24

25

26

27

28