Robert A. Mittelstaedt #060359
Caroline N. Mitchell #143124
Adam R. Sand #217712
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
cnmitchell@jonesday.com
arsand@jonesday.com

Attorneys for Defendant
APPLE COMPUTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS WILLIAM SLATTERY, Individually, And On Behalf Of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>  v.<br><br>APPLE COMPUTER, INC.,<br><br>          Defendant. | Case No. C 05 00037 JW<br><br>**CLASS ACTION**<br><br>**APPLE COMPUTER, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Date: March 21, 2005<br>Time: 9:00 a.m.<br>Place: Courtroom 8, 4th floor |

# TABLE OF CONTENTS

**PAGE**

# TABLE OF AUTHORITIES

PAGE

## CASES

Advance Business Systems & Supply Co. v. SCM Corp.
   415 F.2d 55 (4th Cir. 1969) .................................................................................... 4

Aspen Skiing Co. v. Aspen Highland Skiing Corp.
   472 U.S. 585 (1985) ........................................................................................ 10, 11

C.R. Bard, Inc. v. M3 System, Inc.
   157 F.3d 1340 (Fed. Cir. 1998) ........................................................................... 12

Cost Management Services, Inc. v. Washington Natural Gas Co.
   99 F.3d 937 (9th Cir. 1996) .................................................................................. 9

Covad Communications Co. v BellSouth Corp.
   374 F.3d 1044 (11th Cir. 2004) .......................................................................... 11

Dimidowich v. Bell & Howard
   803 F.2d 1473 (9th Cir. 1988) ............................................................................ 13

Electroglas, Inc. v. Dynatex Corp.
   473 F. Supp. 1167 (N.D. Cal. 1979) .............................................................. 13, 14

Foremost Pro Color, Inc. v. Eastman Kodak Co.
   703 F.2d 534 (9th Cir. 1983) ................................................................................ 7

Gerlinger v. Amazon.com, Inc.
   311 F. Supp.2d 838 (N.D. Cal. 2004) ........................................................... 13, 14

In re IBM Peripheral EDP Devices Antitrust Litigation
   481 F. Supp. 965 (N.D. Cal. 1979), *aff'd sub nom* .......................................... 12

Innovation Data Processing, Inc. v. IBM Corp.
   585 F. Supp. 1470 (D.C.N.J. 1984) ...................................................................... 6

Jefferson Parish Hospital District No. 2 v. Hyde
   466 U.S. 2 (1984) .................................................................................................. 5

Kelly v. Kosuga
   358 U.S. 516 (1959) ............................................................................................ 14

Lexmark v. Int'l. v. Static Control Components
   387 F.3d 522 (6th Cir. 2004) ............................................................................ 7, 8

Microsoft v. U.S.
   253 F.3d 34 (D.C. Cir. 2001) ................................................................................ 6

Monsanto Co. v. Scruggs
   342 F. Supp. 2d 568 (N.D. Miss. 2004) ............................................................ 6, 7

**TABLE OF AUTHORITIES**
(continued)

**PAGE**

North Pac. Ry. Co. v. United States
    356 U.S. 1 (1958) .................................................................................................... 5

Response of Carolina v. Leasco Response
    537 F.2d 1307 (5th Cir. 1976) ................................................................................ 7

Stein v. Pacific Bell Telegraph Co.
    173 F.Supp.2d 975 (N.D. Cal. 2001) ..................................................................... 2

Transamerica Comp. Co., Inc. v. IBM
    698 F.2d 1377 (9th Cir. 1988) .............................................................................. 12

Verizon Communications Inc. v. Law Offices of Curtis V. Trinko
    540 U.S. 398 (2004) ........................................................................................ passim

Ways & Means v. IVAC Corp.
    506 F. Supp. 697 (N.D. Cal. 1979) ........................................................................ 4

## I. INTRODUCTION.

Misstating the applicable law, Slattery's opposition brief advocates an unprecedented legal standard that would punish the very innovation and development of superior products that the antitrust laws are designed to encourage. Slattery does not dispute that the major record companies require legitimate online music services to use some form of Digital Rights Management to protect the record companies' intellectual property rights. He quarrels only with Apple's decision to develop its own proprietary DRM—as opposed to licensing Microsoft's DRM—and to not license it to rivals. As shown in Apple's opening brief the antitrust laws are intended to "safeguard the incentive to innovate," and not even alleged monopolists are required to "share the source of their advantage" except in limited circumstances not here present. *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko*, 540 U.S. 398, 407, 415 (2004).

Not only is Slattery's challenge to Apple's decision to follow its own course meritless as a matter of law, his brief considerably overstates the consequences of that course. Apple's use of its own DRM does not mean that music from its online music store, iTMS, can be played only on an iPod. As Slattery's complaint conceded, music from iTMS can be downloaded and played not only directly on computers but indirectly on competitors' portable hard drive digital music players. This indirect method is accomplished by burning the music onto a CD and "ripping" it back to a computer. Likewise, iPod owners can transfer music from sources other than the iTMS to their iPods. All of this occurs without any need for any iTMS consumer to purchase an iPod or vice versa. *See* Def. Br., p. 5 fn.1. Slattery's complaint, in essence, is that if Apple licensed its FairPlay DRM to competitors, it would facilitate playing iTMS music directly rather than indirectly on competitors' portable hard drive digital music players and, conversely, competitors' music could be played directly on the iPod, without any intermediary step. Although his brief tries to obscure the point, Slattery is making the very narrow claim that Apple's adoption of FairPlay forces an intermediary step when the iPod is used with music purchased online from a competitor or when music purchased from the iTMS is played on a competitor's device.

Against this backdrop, Slattery's causes of action are insufficient as a matter of law. As to the tying claim, the threshold defect is that, as the complaint shows, Apple offers iPods for sale

1  regardless of whether the consumer also downloads music from iTMS, and vice versa. In other
2  words, Apple sells iPods separate from music from the iTMS music store with no strings or
3  conditions attached to either. And the complaint concedes that iPods and music from iTMS can
4  be used independently of each other. No court has ever found an unlawful tying arrangement in
5  these circumstances; such a finding would be contrary to decades of antitrust jurisprudence.

6  As to the monopolization or attempted monopolization claims, they are barred both
7  because Slattery does not and cannot allege any barriers to entry and because his refusal-to-
8  license claims are barred by *Trinko*. Without barriers to entry, Apple has no power to exclude
9  competitors, which is a bedrock element for these claims. To avoid *Trinko*, Slattery's brief tries
10 to recharacterize his claims as something other than refusal to deal. But his complaint makes
11 clear that that is exactly what he is claiming: "Apple has steadfastly refused to license its
12 Fairplay DRM or otherwise let any other manufacturer of portable hard drive digital music
13 players gain interactive access to files sold by Apple through iTunes." Complt., ¶ 44.

14 Contrary to Slattery's argument, *Trinko* cannot be distinguished on the ground that it did
15 not involve "affirmative acts to shut out competitors." *See* Opp. Br. p. 17. Just like this
16 complaint and the complaint filed by Slattery's counsel in *Stein v. Pacific Bell*, 173 F.Supp.2d
17 975 (N.D. Cal. 2001), the *Trinko* complaint alleged affirmative acts to impede competitors. Just
18 as the Supreme Court affirmed dismissal in *Trinko* and Judge Illston dismissed the *Stein*
19 complaint (in a decision that Slattery ignores), this complaint merits dismissal for the same
20 reasons.

21 The only state law claim for which Slattery offers more than a conclusory argument is his
22 unjust enrichment claim. Judge Patel, however, properly rejected the same arguments in another
23 case by Slattery's lawyers with reasoning that applies with equal force here. *Infra* at 13-145.

24 II. **SLATTERY'S TYING ALLEGATIONS DO NOT STATE A CLAIM: A TIE**
25 **REQUIRES A TIE.**

26 Slattery's tying claim suffers multiple, incurable defects. First and most fundamentally,
27 he does not and cannot allege that Apple offers iPods and music from iTMS only as a package
28 and refuses to provide them separately. Indeed, he concedes that they are separately available.

Absent an allegation that two products are offered together at such a steep discount that individual availability is illusory (and Slattery makes no such allegation), the concession that the two products are separately available ends the analysis. Second, Slattery admits that iPods and iTMS music can be used independently of each other. Thus, he cannot possibly claim that consumers were tacitly forced to buy one product in order to use the other, even it that were the test for tying (which it is not). Third, his narrow claim, focusing on just one use of iTMS music or the iPod, is insufficient given the separate availability and other independent uses of iPods and iTMS music. Fourth, the complaint concedes that iTMS music can be played "indirectly" on competitors' portable digital players, and that music from competing online services can be played "indirectly" on iPods, further making it impossible to claim that consumers were forced to buy iPods and download iTMS as a package.

For each of these reasons, Slattery's tying claims must be dismissed.

### A. Slattery Concedes That The Alleged Tying And Tied Products Are Separately Available.

Slattery begins (p. 5) by misstating Apple's position. Apple's position, taken verbatim from the seminal Supreme Court decisions, is that a tying arrangement is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product" and that "where the buyer is free to take either product by itself there is no tying problem." Def. Br., pp. 4-5 (citations omitted).

Significantly, Slattery does not and cannot contend that his allegations satisfy this standard. To the contrary, his complaint admits that iPods and music from iTMS are separately available. They were introduced in the marketplace 18 months apart, and Slattery bought his iPod separately from downloading music from iTMS. *Id.* at 3. His opposition brief also admits (p. 5) that they can be purchased separately. Those admissions defeat his tying claim.

So Slattery resorts to diversion. He claims (p. 6), without citation, that Apple argued that no tie exists when the two products are sold separately "irrespective of the restrictions imposed on such 'separate sales.'" In fact, Apple did not make that argument. But having set up this straw man, Slattery attempts to strike it down by citing several cases in which tying was found where

defendant's "pricing policy" made purchasing the tying and tied products as a package the "only viable economic option." *See* Opp. Br., pp. 5-8. The logic of those cases is that a tie may exist when the price advantage of purchasing the products as a package is so great that no one would purchase them separately, thus making the separate availability illusory. Unlike those cases, however, Slattery does not allege that Apple's pricing policy forces a package sale. Indeed, he admits that the price of music on Apple's online music store is a flat 99 cents per track—with no allegation that the price varies depending on whether the consumer also buys an iPod. Nor does he claim that the price of an iPod varies depending on whether the consumer downloads music from iTMS. In short, Slattery does not and cannot contend that Apple's pricing policy forces consumers to obtain iPods and music from iTMS as a package.[1]

Slattery argues (p. 9) that an illegal tie occurs unless the two products are separately available to consumers "on a basis as favorable as" the two products together, with the implication that this test is not limited to pricing effects. As support, however, he cites only *Advance Business Systems & Supply Co. v. SCM Corp.*, 415 F.2d 55, 62 (4th Cir. 1969) where the price of separately using defendant's copier with a rival's supplies was so high that the Court concluded that the copier and supplies "cannot realistically be regarded as separately available." Nothing in that or any other case suggests that tying can be found absent package pricing that is so extreme that the separate availability of the products is illusory. *See, e.g., Ways & Means v. IVAC Corp.*, 506 F. Supp. 697, 701 (N.D. Cal. 1979) (holding that theoretical separate availability will not defeat tying allegation where, as a result of the package pricing, "the only viable economic option" is to purchase the tying product and the tied product in a single package). Applying Slattery's reading of *Advance Business* would not only be unprecedented but would lead to absurd results. As Slattery interprets it, it would mean that a company could not make complementary products that work better with each other than with competitors' versions even if

---

[1] Slattery also claims (p. 5), again without citation, that Apple's position is that the conditioning of sale of the tying product on the purchase of the tied product must be explicit, a position not advanced in Apple's moving papers. His admission that the two products are separately available—and the reality that consumers buy iPods every day without downloading music from iTMS, and vice versa—makes it impossible for him to claim that Apple offers them only as a package, whether explicit or otherwise.

the products are offered separately. No case suggests that that is the law. Indeed the Supreme Court has rejected that approach, holding that no tying arrangement exists where the buyer purchases the second product on account of its "intrinsic superiority." *North Pac. Ry. Co. v. United States* 356 U.S. 1, 11 (1958). Otherwise, every time a seller of a product with market power also sold accessories that enhanced the usefulness of that product and were superior to those sold by its competitors, it would be liable for tying. The negative impact of such a rule on a company's incentive to innovate and develop superior products needs no elaboration.[2]

In sum, Slattery's allegations do not state a claim for unlawful tying in that he concedes that the two products are separately available and he does not allege that Apple's pricing makes the separate availability illusory.

B. **Slattery Concedes That iPods And Music From iTMS Can Be Used Separately.**

Slattery concedes (p. 8) that iPods and iTMS music are not dependent on each other and can be used separately, *e.g.*, iTMS music can be played on devices other than iPods, and iPods can play music from sources other than iTMS such as a consumer's CD library. He argues, however, that these other uses are irrelevant to the tying analysis because some consumers also may want to play iTMS music on portable digital players with hard drives. But Slattery's quotation from *Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 21 n.30 (1984) answers his own argument. As the Supreme Court explained: "[w]e have often found arrangements involving functionally linked products **at least one of which is useless without the other** to be prohibited tying devices." *Id.* (emphasis added). That is a key reason why the issue of

---

[2] Slattery urges an absurdly unrealistic hypothetical where only Ford-manufactured gasoline can be used in Ford vehicles going more than 20 mph. There are significant differences between that extreme hypothetical and this case. First, iPods and iTMS music can be used separately in significant ways. Indeed, the iPod plays all types of music even if it is not downloaded from iTMS. As noted, consumers purchased iPods for 18 months before iTMS even existed. Conversely, music from iTMS can be played in a number of ways without ever owning an iPod. Second, Slattery's complaint admits that the iPod can play music from iTMS competitors indirectly and that by burning a CD music from iTMS can be played on devices other than the iPod. No indirect alternative exists in Slattery's Ford example.

separate use is relevant. Here, as noted, Slattery concedes that iPods and music from iTMS can be put to separate uses. *See* Def. Br., p. 3.[3]

### C. Slattery's Narrow Claim, Focused On One Particular Use of iTMS Music, Is Insufficient To State A Tying Claim.

Slattery's claim, as noted, is that if he wants to play iTMS music in one particular way—on a digital music player with a hard drive, portably and directly, without the intermediate step of burning a CD—he must use an iPod. In other words, he contends that consumers obtain more functionality if they obtain digital music and a digital music player from Apple, compared with obtaining one from Apple and the other from a competitor. But these facts do not make purchasing the iPod and music from iTMS together the "only viable economic option," nor do they establish that Apple's actions amount to a refusal to sell one without the other. Absent allegations sufficient to make such a showing, Slattery's claim fails. As stated in *Innovation Data Processing, Inc. v. IBM Corp.*, 585 F. Supp. 1470 (D.N.J. 1984):

> "[A]s a matter of law, in the absence of evidence that the purchase of the alleged tied product was required as a condition of sale of the alleged tying product—rather than merely as a prerequisite for practical and effective use of the tying product—[plaintiff] has failed to show the requisite coercion necessary to establish a per se illegal tying arrangement."

*Id.* at 1475-76. Because it is not a tie when an alleged tied product is simply a prerequisite for the practical use of the allegedly tying product, it follows that it cannot be a tie when the alleged tied product is a prerequisite for only one of multiple uses of the allegedly tying product. And that is all that Slattery has alleged.

Slattery attempts to avoid the *Innovation Design* holding by arguing (p. 13 n.2) that it was in the context of granting summary judgment for defendant. But the legal standard is what matters, and it is clear he cannot meet it, whether at the pleading or proof stage. In accord is *Monsanto Co. v. Scruggs,* 342 F. Supp. 2d 568, 578 (N.D. Miss. 2004), cited in Def. Br., p. 7, n.2,

---

[3] Nothing in *Microsoft v. U.S.*, 253 F.3d 34 (D.C. Cir. 2001) *en banc*, supports Slattery's theory. There, the allegation the Court relied on was not simply that Microsoft's browser worked better with its operating system. It was instead that Microsoft physically integrated the browser in the operating system and refused to allow most OEMs to uninstall the browser or consumers to choose another browser. *Id.* at 66. No such allegations are made here.

1  where the court rejected a tying claim because defendant required purchase of the alleged tied
2  product in only certain circumstances, *i.e.,* if seed purchasers wanted to use a glyphosate-based
3  herbicide. With no answer to this decision, Slattery ignores it.
4          *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 545 (9th Cir. 1983) sets
5  forth the same legal standard as *Innovation Data*, and Slattery's attempt to distinguish it is
6  unavailing. First, although *Foremost* addressed a *per se* claim, the distinction between *per se* and
7  rule of reason claims in the tying area is irrelevant for this analysis. The presence of a tie is
8  essential under any theory, and that is what is missing in Slattery's complaint. Second, while the
9  *Foremost* court noted the absence of any allegation that Kodak intended to compel consumers to
10 purchase the new Instamatic camera and the processing system as a package, the court added: "It
11 is of no legal import that Foremost chooses to characterize the technological incompatibilities of
12 the 110 system with the products offered by Kodak's competitors . . . as a form of technological
13 predation." *Id.* at 545. The principle announced in *Foremost* is that developing a system of
14 "technologically interrelated products" does not create tying liability "even if the new products
15 are incompatible with the products then offered by the competition and effective use of any one
16 of the new products necessitates purchase of some or all of the others." *Id.* at 543. That is
17 precisely what Slattery is claiming, and it is insufficient to state a claim.[4]
18         Slattery's citation to *Response of Carolina v. Leasco Response*, 537 F.2d 1307
19 (5th Cir. 1976), a case ruling for the defendant on a tying claim, does not support his complaint.
20 Indeed, *Leasco* found no tie for the same reason that there is no tie here: the franchise and
21 hardware lease at issue were separately available, as are the iPod and music from iTMS. *See id.*
22 at 1328-1330. The Court's observation that had Leasco taken steps to make separate purchasing
23 of the hardware useless, the result may have been different, does not help Slattery. He admits that
24 both the iPod and music from iTMS have uses unrelated to each other.[5]

---

[4] Slattery argues (p. 1) that Apple requires consumers to "agree not to buy complementary products from a source other than Apple." Nothing in the complaint supports that argument. Apple does not extract any agreement from its customers not to buy competitors' products.

[5] Contrary to Slattery's implication (p. 10), *Lexmark Int'l. v. Static Control Components*, 387 F.3d 522 (6th Cir. 2004) was a Digital Millennium Copyright Act case, not an antitrust case. Nor did it "indicate," let alone hold, that the antitrust laws require a company to design its products to

In short, Slattery's complaint that, for one of their multiple uses, the iPod and iTMS music work with each other more effectively or "directly" than if either is used with competitors' devices or music services does not give rise to antitrust liability.

### D. Slattery's Concession of Indirect Interoperability Is A Further Reason Why There Is No Tie.

As noted in Apple's opening brief (p. 5 and n.1), the complaint admits implicitly that music downloaded from iTMS can be played "indirectly" on portable hard drive digital music players other than iPods, and iPods can "indirectly" play music downloaded from competing online music services. As noted, this is accomplished by burning a CD and "ripping" it back to a computer. In his opposition brief, Slattery ignores that concession and pretends that his complaint alleges that an iPod is the only portable hard drive digital music player on which iTMS music can be played, directly or indirectly. But Slattery cannot avoid the admission in his complaint that indirect interoperability exists. Thus, his real claim is that even though iTMS music can be played, either directly or indirectly, on a wide array of devices, an iPod is the only portable digital music player with a hard drive that can play the music without the intermediate step of burning a CD. With the concession that iTMS music can be played "indirectly" on other portable hard drive digital players, Slattery's claim is even further removed from any cognizable tying claim.

For these reasons, Counts I and II must be dismissed.

## III. SLATTERY'S MONOPOLIZATION ALLEGATIONS DO NOT STATE A CLAIM.

As shown in defendant's opening brief, Slattery's monopolization claims suffer two incurable, independent defects. First, he does not and cannot allege the existence of barriers to

---

(continued...)

be compatible with industry standards (which is what Slattery means by "insert[ing] lock-out devices.") It simply held that the DMCA did not apply to a competitor's effort to circumvent a technological measure designed to control access to defendant's consumer product. *See id.* at 529.

entry in either of the alleged product markets. Without entry barriers, no monopolization can exist. Second, even if he properly alleged monopoly power, the allegations of exclusionary conduct on which his complaint is built are insufficient as a matter of law. His complaint reduces to a claim that Apple uses a proprietary DRM system that it has "steadfastly" refused to license to competitors. That claim that is barred by the Supreme Court's recent decision in *Trinko*.

### A. A Naked Allegation Of High Market Share Is Insufficient To Establish Market Power, Particularly In A Rapidly Developing Market.

Contrary to Slattery's argument (pp. 14-16), *Cost Management Services, Inc. v. Washington Natural Gas Co.*, 99 F.3d 937 (9th Cir. 1996), does not hold that mere allegations of a high market share is sufficient to allege monopoly power. Indeed, the Ninth Circuit observed that "it is true that market share standing alone does not automatically equate to market power." *Id.* at 950. The Court found the complaint sufficient only because plaintiff's allegation of market power did "not rest entirely on its market share allegation" but added that defendant had engaged in a certain exclusionary pricing practice as well. *Id.* at 950-51. Here, by contrast, Slattery's showing of monopoly power depends exclusively on Apple's market share and the corresponding market share of competitors, and thus is inadequate.

Slattery's argument (p. 15) about the procedural posture of cases establishing the insufficiency of market share alone misses the point. These cases establish the necessary elements of an antitrust claim, which do not vary with the procedural posture of a case.

Tacitly recognizing the inadequacy of his market share allegations, Slattery strains (p. 16) to read barriers of entry into his complaint, which alleges none. Slattery relies on an allegation that the songs available from Apple's iTunes Music Store are subject to copyright by the songs' owners as a barrier to entry. But the complaint does not allege that these copyrights function as a barrier to entry. *See* Complaint, ¶ 51 (making no reference to the copyrights as a barrier to entry). Given Slattery's acknowledgement that Sony, Walmart, Napster and others (including Microsoft) in fact have entered the business of online digital music stores, he cannot possibly allege in good faith that they have been barred entry by the need to obtain copyright permission from song

owners. *See* Complaint, ¶ 21 (acknowledging that the number of competitors in the legal online music market alleged by Slattery now exceed a dozen).

### B. *Trinko* Governs Slattery's Claims.

If Slattery had sufficiently alleged market power, his monopolization claim would still fail because he has not alleged actionable exclusionary conduct. *Trinko*, 540 U.S. at 407 (market power without anticompetitive conduct does not violate the antitrust laws). Slattery's basic claim is that Apple has not adopted the Microsoft DRM industry standard that would make its products interconnect or interoperate with competitors' products, and has not licensed its own proprietary DRM to others. *See* Def. Br., p. 8 at n.4 and p. 10, n.6. In other words, Apple has refused to deal with its competitors, a claim that falls squarely within *Trinko*.

Slattery tries to distinguish *Trinko* by arguing (p. 17) that "Verizon had not taken any affirmative act to shut out competition." In fact, precisely such an allegation was the linchpin of plaintiff's claim in that case. In *Trinko*, plaintiff alleged that Verizon had deliberately thwarted competitors' ability to interconnect with and use Verizon's facilities by delaying their orders or leaving them unfilled "as part of an anticompetitive scheme to discourage customers from becoming or remaining customers of competitive LECs, thus impeding competitive LECs' ability to enter and compete in the market for local telephone service." *Trinko*, 540 U.S. at 404-05. In short, the complaint alleged that "Verizon denied interconnection services to rivals in order to limit entry." *Id.* at 407. Slattery's argument that none of this alleged conduct was "affirmative" is fanciful.

Slattery's claim of exclusionary conduct is no different. He alleges that Apple, by the way it has designed its system using a proprietary DRM (*i.e.*, "rigging" the encoding format allegedly used to protect the copyright) and by refusing to license its proprietary DRM to competitors, denied competitors the ability to interconnect their products and services with Apple's. As in *Trinko*, the pivotal question is whether Apple has an antitrust duty to do so. Slattery articulates no legal principle that would give rise to such a duty, and *Trinko* teaches that there is none. As detailed in Apple's opening brief, (pp. 9-13), absent a prior course of dealing that would bring Apple within the narrow exception articulated by *Aspen Skiing Co. v. Aspen Highland Skiing*

*Corp.*, 472 U.S. 585 (1985), *Trinko* recognizes Apple's right to "exercise [its] own independent discretion as to parties with whom [it] will deal." *Trinko*, 540 U.S. at 408, *citing United States v. Colgate & Co.*, 250 U.S. 300 (1919); *see also Covad Communications Co. v BellSouth Corp.*, 374 F.3d 1044, 1049 (11th Cir. 2004) ("*Trinko* now effectively makes the unilateral termination of a voluntary course of dealing a requirement for a valid refusal-to-deal claim under *Aspen*").

      Slattery asserts (p. 20, n.4) that if *Trinko* applies, Apple's conduct nonetheless would be unlawful because Apple initially adopted an "open source" unprotected format (called AAC) and only added a protective DRM when competitors began offering music that could be played on the iPod. First, as the absence of any citation in his footnote suggests, these allegations are not in the complaint. In fact, they are contrary to the complaint which alleges that FairPlay DRM was added to every music file at iTMS and which seeks damages for all consumers from the outset of iTMS. Complt., ¶¶ 39, 56. In any event, under *Trinko*, Slattery must allege a voluntary course of dealing between Apple and its competitors, not between Apple and the licensor of the AAC format that Apple allegedly "rigged." Because Slattery cannot point to a voluntary, cooperative arrangement between Apple and its competitors that Apple terminated, Slattery's allegations do not state a claim cognizable under *Trinko*.

      Nor did RealNetworks' attempt to force dealings with Apple create an obligation on Apple's part to continue those dealings. Slattery does not dispute that if RealNetworks hacked into Apple's software code and inserted a "corresponding code" into its song files, it would not create the type of voluntary course of dealing that is a necessary predicate to refusal-to-deal liability under *Trinko*. He disputes only the characterization of RealNetworks as a "hacker." But his claim fares no better using the exact words of the complaint. According to the complaint (¶ 47), RealNetworks "managed to independently analyze the firmware" in the iPod, "was able to discern" Apple's software code, and "armed with this knowledge" was able to "insert a 'corresponding code' into its own song files. Whether described in those euphemistic terms or called "hacking," that conduct is not the type of voluntary dealing required by the Supreme Court as the predicate for liability under *Trinko*. Apple's efforts to prevent competitors from

"discerning" its software code and circumventing it does not constitute termination of a voluntary course of dealing.[6]

There is another independent reason why Slattery's allegations are insufficient to state a claim for refusal to deal under *Trinko*. The "more fundamental" difference between *Aspen Skiing*, in which liability was found, and *Trinko*, in which the claim was dismissed under Rule 12(b)(6), was that the defendant in *Aspen Skiing* refused to provide its competitor what it was selling to the public at retail, while in *Trinko* the interconnection services that Verizon withheld from competitors were not available to the public. See Def. Br., pp. 11-12. Slattery cannot meet this requirement. He does not allege that Apple is licensing its FairPlay DRM to the public, so under *Trinko* his claim that Apple is refusing to license it to competitors does not state an antitrust violation. With no response to this point, Slattery ignores it.

For these reasons, Counts III and IV must be dismissed.

## IV. SLATTERY CANNOT PURSUE A STAND-ALONE MONOPOLY LEVERAGING CLAIM. HIS ATTEMPTED MONOPOLIZATION CLAIM FAILS AS A MATTER OF LAW.

Slattery's treatment of his "monopoly leveraging" is an exercise in diversion. Apple's position, stated in its opening brief (pp. 14-15), is that the Ninth Circuit and the Supreme Court do not recognize a stand-alone claim for monopoly leveraging; that a plaintiff must allege the elements of attempted monopolization; and that Slattery had failed to do so. In his opposition, Slattery accuses Apple of the "most blatant misstatement of the law," arguing that the Ninth Circuit had rejected monopoly leveraging as an independent theory but permitted claims for attempted monopolization. That, however, is exactly what Apple said in its opening brief. So in 4 1/2 pages of diversionary rhetoric, Slattery ends up only conceding our point: that under the

---

[6] Slattery's two cases—*In re IBM Peripheral EDP Devices Antitrust Litigation*, 481 F. Supp. 965, 968 (N.D. Cal. 1979), *aff'd sub nom. Transamerica Comp. Co., Inc. v. IBM*, 698 F.2d 1377 (9th Cir. 1988) and *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1347, 1382 (Fed. Cir. 1998)—do not change the analysis. Both predate *Trinko* and defendants in both cases had prior voluntary courses of dealing which were terminated.

decisions of the Supreme Court and the Ninth Circuit, no claim of monopoly leveraging exists separate from the required elements of monopolization or attempted monopolization.

What Slattery fails to address is Apple's showing that his complaint does not sufficiently allege the elements of attempted monopolization. The anticompetitive conduct necessary to support an attempted monopolization claim cannot be conduct that otherwise passes muster under the Sherman Act. As shown in Apple's opening brief (pp. 14-15), Slattery fails to allege any cognizable anticompetitive conduct or the other requisite elements of an attempt claim. Apart from saying he disagrees (Opp., p. 24), Slattery offers no argument on this point. Accordingly, Counts V and VI must be dismissed.

## V.   SLATTERY'S RELATED STATE LAW CLAIMS SHOULD ALSO BE DISMISSED ON THE MERITS.

Slattery effectively abandons (p. 24) his Cartwright Act claims based on alleged unilateral monopoly conduct. Because the Cartwright Act has no section 2 analog, unilateral conduct claims are not cognizable under the Cartwright Act. *See Dimidowich v. Bell & Howard*, 803 F.2d 1473, 1478 (9th Cir. 1988). Slattery does not challenge this conclusion.

Although the Cartwright Act encompasses tying claims, Slattery's state law tying allegations fail for the same reasons as their Sherman Act counterparts, *see infra*, pp. 2-8.

Slattery's common law monopoly claim and unfair competition law claim must likewise be dismissed because Slattery acknowledges that those claims depend upon the same theories as the federal claims which, as shown above, fail as a matter of law.

Finally, Slattery does not dispute that, as Judge Patel held in another case brought by his counsel, *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp.2d 838, 856 (N.D. Cal. 2004), an unjust enrichment claim "cannot lie where a valid express contract covering the same subject matter exists between the parties." Nor does he dispute that his purchases created contracts between him and Apple under the California Commercial Code. He argues (pp. 24-25) instead that those contracts are invalid and unenforceable because they purportedly violated the federal antitrust laws. That argument is wrong because the enforceability of fully performed contracts is not affected by alleged illegality based on antitrust violations. *See Electroglas, Inc. v. Dynatex Corp.*,

1  473 F. Supp. 1167, 1170 (N.D. Cal. 1979) (violation of federal antitrust laws is not a valid
2  defense to a breach of contract claim to avoid payment for goods received pursuant to contract,
3  citing *Kelly v. Kosuga*, 358 U.S. 516, 520-21 (1959)).

4  Finally, Slattery conclusorily argues (p. 24) that he can plead inconsistent causes of action
5  under Rule 8(e)(2), Fed. Rules Civ. Proc. Although he does not elaborate, he evidently means
6  that he could plead both that he did have a contract with Apple (for purposes of giving him
7  standing for his antitrust claim) and that he did not have such a contract (for purposes of his
8  unjust enrichment claim). His complaint does not make the latter allegation. But if it did, it
9  would be improper for reasons stated by Judge Patel in *Gerlinger*, a decision that he ignores:

> Even though Rule 8(e)(2) of the Federal Rules of Civil Procedure allows a party to state multiple, even inconsistent claims, it does not alter a substantive right between the parties and accordingly does not allow a plaintiff invoking state law to [assert] an unjust enrichment claim while also alleging an express contract. [citations omitted]. As a result, plaintiff cannot assert his unjust enrichment claim in the alternative.

*Gerlinger*, 311 F.Supp.2d at 856. As in *Gerlinger*, Slattery alleges that he bought an iPod from Apple and obtained music from Apple's online music store, conduct that creates express contracts between him and Apple. That allegation is implicitly incorporated in the unjust enrichment claim. If he now pleads that he did not buy an iPod from Apple, he would be giving up his claim for standing to assert an antitrust claim. And if he did not buy an iPod from Apple, he would have no basis for an unjust enrichment claim either.

Thus, Counts VII through X must be dismissed.

## VI. CONCLUSION.

For these reasons and those set forth in Apple's opening brief, the motion to dismiss the complaint should be granted.

Dated: March 7, 2005

JONES DAY

By: /s/ *Robert Mittelstaedt* ARS
Robert A. Mittelstaedt
Counsel for Defendant
APPLE COMPUTER, INC.

SFI-521710v4

15

C 05 00037 JW
REPLY IN SUPP. OF MTN TO DISMISS