IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Thomas William Slattery, individually, and on behalf of all others similarly situated,<br><br>           Plaintiff(s),<br>    v.<br><br>Apple Computer, Inc.,<br><br>           Defendant. | NO. C 05-00037 JW<br><br>**ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

## I. INTRODUCTION

Plaintiff Thomas William Slattery ("Plaintiff") brings this action on behalf of himself and all other similarly situated to challenge alleged anticompetitive conduct by Defendant Apple Computer, Inc. ("Defendant"), relating to portable hard drive digital music players and legal online sales of digital music. On June 6, 2005, the Court heard arguments on Defendant's Motion to Dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(6). Having carefully considered the arguments of the parties and the papers submitted, this Court GRANTS in part and DENIES in part Defendant's Motion.

## II. BACKGROUND

Plaintiff, alleges that at some undisclosed time, he purchased digital music from Defendant's iTunes online music store. (Compl. ¶¶ 9, 14.) The music was downloaded to the hard drive of his computer. He admits that he could play the purchased music on his computer and compact disc ("CD") player. (Compl. ¶¶ 39, 42.) However, the crux of Plaintiff's complaint is that if he wishes to directly play the downloaded music from iTunes on a portable hard drive digital music player, an iPod is the only product that can play

the purchased songs. In this sense, Plaintiff claims he has been forced to buy an iPod. (Compl. ¶ 9.)

The Plaintiff alleges that there are two separate relevant markets pertinent to these claims. The first is the market for the legal online sale of digital music. (Compl. ¶ 11.) Plaintiff asserts that through its iTunes online music store, Defendant possesses monopoly market power in the legal online sale of digital music. (Compl. ¶¶ 20-21.) The second market is portable hard drive digital music players. (Compl. ¶ 11.) Plaintiff asserts that through its iPod product, Defendant possesses monopoly market power in the portable hard drive digital music players market.

The Plaintiff has pled a number of Claims that all relate to Defendant's alleged anticompetitive conduct. Primarily, the Plaintiff alleges that Defendant foreclosed iTunes digital music files from being played on any portable hard drive digital music player other than an iPod. Likewise, Defendant foreclosed digital music files downloaded from other online music vendors from being played on the iPod. The Complaint alleges that when it first launched iTunes, Defendant adopted an encoding format, called Advanced Audio Coding ("AAC"), for its digital music files. According to the Plaintiff, this format was an "open-source" format used by many competing vendors and players that would allow iTunes' music files to play on many different competing portable hard drive digital players. (Compl. ¶¶ 37-45.) Plaintiff alleges that to stifle competition, Defendant altered the AAC format by embedding within it a separate propriety code that prevents portable hard drive digital music players other than the iPod from playing iTunes music files, and that also prevents music files bought from online music vendors other than iTunes from being played on the iPod. (Compl. ¶¶ 26-27, 37-45.)

According to the Plaintiff, the net effect of Defendant's alteration of the AAC format into the "AAC Protected" format is that the user must purchase both the online digital music file and the portable hard drive digital music player from Defendant. (Compl. ¶ 41-43.) Likewise, due to the alteration of formats, an owner of Defendant's iPod who wishes to legally purchase online digital music files must purchase such files only from Defendant's iTunes to the exclusion of any other competing online music vendor. (Compl. ¶ 46.) Thus, but for the alteration, iTunes files would be readily playable on any number of competing portable hard drive digital music players other than the iPod, and owners of an iPod could play online digital music files purchased from any number of competing online music vendors other than Defendant's iTunes store. (Compl. ¶¶ 43, 46.)

In addition to Defendant's initial alteration of the AAC format into its proprietary protected format, Plaintiff alleges that on one occasion, Defendant took action to prevent a competitor from selling online digital music to customers. According to Plaintiff, when RealNetwork, a competing online vendor of digital music files, independently defeated Defendant's "AAC Protected" format and began selling music files that played on the iPod for 45 cents a song verses iTunes' price at 99 cents per song, Defendant immediately changed its software code so as to prevent RealNetwork's music files from being played on Defendant's iPod devices. RealNetwork's digital music files were being sold for less than the price of Defendant's iTunes music files. Thus, Plaintiff alleges that Defendant's actions prevented consumers of the iPod from accessing these competing, less expensive music files. (Compl. ¶¶ 46-50.)

### III. STANDARDS

A complaint may be dismissed for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A claim may be dismissed as a matter of law for: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory." Robertson v. Dean Witter Reynolds, Co., 749 F.2d 530, 534 (9th Cir. 1984). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). In determining the propriety of a FED. R. CIV. P. 12(b)(6) dismissal, a court may not look beyond the complaint. Schneider v. California Dept. of Corrections, 151 F.3d 1194, 1197 (9th Cir. 1998) ("The focus of any Rule 12(b)(6) dismissal . . . is the complaint"). A court may dismiss a case without leave to amend if the Plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000). To survive a FED. R. CIV. P. 12(b)(6) motion, an antitrust complaint "need only allege sufficient facts from which the court can discern the elements of an injury resulting from an act forbidden by the antitrust laws." Newman v. Universal Pictures, 813 F.2d 1519, 1522 (9th Cir. 1987), cert. denied, 486 U.S. 1059 (1988); United States v. LSL Biotechnologies, 379 F.3d 672, 698 (9th Cir. 2004) (stating that notice pleading is the only requirement for an antitrust claim).

### IV. DISCUSSION

3

1   Based on alleged anticompetitive behavior, Plaintiff charges Defendant with violating the Sherman
2   Act, California's Cartwright Act, California's unfair competition law, common law monopolization, and
3   common law unjust enrichment. Defendant now moves the Court to dismiss Plaintiff's Complaint under
4   FED. R. CIV. P. 12(b)(6), for failure to state a claim upon which relief can be granted.

**A.     Illegal Tying Claims**

In order to establish an illegal tying arrangement under 15 U.S.C. § 1, plaintiffs must show "three elements: (1) a tie between two separate products or services sold in relevant markets; (2) sufficient economic power in the tying product market to affect the tied market; and (3) an effect on a non-insubstantial volume of commerce in the tied product market." County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1157-58 (9th Cir. 2001). Implicit in these elements is the need of the seller of the tying product "to force the buyer into the purchase of the tied product that the buyer did not want at all, or might have preferred to purchase elsewhere on different terms." Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 12 (1984); Paladin Assocs., Inc. v. Montana Power Co., 328 F.3d 1145, 1159 (2003).

Plaintiff, in Claims I and II, alleges two federal antitrust tying claims against the Defendant. (Compl. 19:8-21:17.) Claim I alleges that the tying product is the legal sale of online digital music files, sold through its iTunes music store. (Compl. ¶ 63.) The tied product is the iPod. (Compl. ¶ 63.) Plaintiff alleges, if a consumer purchases digital music from Defendant's iTunes music store and chooses to purchase a portable hard drive digital music player in order to listen to the purchased digital music remotely, Defendant coerces the consumer to purchase its iPod. (Compl. ¶ 63.) Claim II alleges that the tying product is the iPod and the tied product is iTunes. (Compl. ¶ 70.) If a consumer purchases Defendant's iPod and chooses to purchase an online digital music file, Defendant coerces the consumer to purchase online digital music from its iTunes music store. (Compl. ¶ 70.)

In both Claims I and II, Plaintiff alleges that Defendant has market power in the tying product which is used to coerce the consumer to purchase the tied product. Both Claims include the same two allegedly separate products, the difference being the two products are switched as to which is the "tying" product and which is the "tied" product. It seems inconsistent to allege that a product is both a "tying" product and a "tied" product. However, for pleading purposes, the Court will allow the inconsistency to persist. At

4

some appropriate point in the litigation, an election might be necessary.

Accepting Plaintiff's allegations as true, all elements of a tying claim are met. The Plaintiff alleges two relevant markets: the legal sale of online digital music files and portable hard drive digital music players in the geographic market of the United States. (Compl. ¶ 11.) The Plaintiff also alleges that Defendant possesses an 80 percent market share in the legal sale of online digital music files, and over a 90 percent market share in portable hard drive digital music players. (Compl. ¶¶ 20, 24.) This Court also finds that the tying would have an effect on a substantial volume of commerce. (Compl. ¶¶ 20.) The element of coercion is also adequately plead in Plaintiff's Complaint. (Compl. 19:8-21:17.) This Court finds that, at the pleading stage, Plaintiff has satisfied the burden of alleging Defendant has sufficient economic power in the tying markets to affect the tied markets.

The Defendant argues that a tying claim cannot be made because consumers can purchase either iTunes or the iPod separately. (Motion to Dismiss at 4:26-5:8.) However, the fact that Plaintiff can purchase the items separately does not dismiss a tying claim. Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 463 (1992). The Defendant further contends that both products are capable of functioning independently without a consumer purchasing both. (Motion to Dismiss at 5:9-19.) However, this argument ignores Plaintiff's allegations of the relevant markets. The alleged relevant markets, as this Court must limit itself to, are the legal sale of online digital music files and portable hard drive digital music players. (Compl. ¶ 11.) Plaintiff alleges that, within these relevant markets, the only legal digital music files capable of playing directly on an iPod are music files sold by Defendant's iTunes music store. (Compl. 19:8-21:17.) Further, the only portable hard drive digital music player capable of directly playing music from Defendant's iTunes music store is the iPod. (Compl. 19:8-21:17.) Although the alleged markets are narrowly defined by Plaintiff, this Court accepts these allegations as true for the purposes of this motion. Thus, as plead, Plaintiff alleges all of the elements of a tying claim to survive a motion to dismiss under Rule 12(b)(6).

### B. Monopolization Claims

Plaintiff, in Claims III and IV, alleges that Defendant violated 15 U.S.C. § 2 by acquiring or maintaining monopoly market power. (Compl. at 21:18-23:10.) In order to state a claim for monopolization under 15 U.S.C. § 2, a plaintiff must show that: "(1) the defendant possesses monopoly

5

power in the relevant market; (2) the defendant has willfully acquired or maintained that power; and (3) the defendant's conduct has caused antitrust injury." Cost Mgmt. Servs. v. Washington Natural Gas, 99 F.3d 937, 949 (9th Cir. 1996). Both Claims III and IV of Plaintiff's Complaint allege Defendant possesses monopoly market power in the legal sale of online digital music and portable hard drive digital music players, respectively. (Compl. ¶¶ 79, 84.) Further, the Plaintiff alleges facts which if proven could be found to suggest the conclusion that Defendant has willfully acquired or maintained that power. (Compl. ¶¶ 78, 83.) Finally, the Plaintiff alleges that an antitrust injury has resulted from Defendant's conduct. (Compl. ¶¶ 80, 85.) This Court finds that Plaintiff has sufficiently plead the elements for a claim of monopolization to survive a FED. R. CIV. P. 12(b)(6) motion. Further, by satisfying the elements of a Sherman Act monopolization claim, the Plaintiff has adequately plead, in Claim X, a common law claim of monopolization.

**C.     Attempted Monopolization and Leveraging Claims**

Plaintiff, in Claims V and VI, alleges that Defendant has violated 15 U.S.C. § 2 by leveraging its power in one market to attempt to establish a monopoly in another. (Compl. at 23:11-24:17.) The Ninth Circuit does not view leveraging of a monopoly as an independent claim under section 2 of the Sherman Act. Alaska Airlines, Inc. v. United Airlines, Inc., 948 F.2d 536, 546 (9th Cir. 1991). However, attempted monopolization may include allegations of monopoly leveraging. Id. at 549 ("If there is a dangerous probability that a monopoly will be created by leveraging conduct, then the conduct will be reached under the doctrine of attempted monopoly."). Therefore, in order to state a claim, Plaintiff must allege the elements of attempted monopolization. The elements include, "(1) a specific intent to monopolize a relevant market--i.e., an intent to control prices or destroy competition in a relevant market; (2) predatory or anticompetitive conduct designed to control prices or destroy competition; (3) a dangerous probability of success--i.e., a probability of achieving monopoly power in the relevant market; and (4) causal antitrust injury." Paladin Assocs., 328 F.3d at n.22. This Court finds that Plaintiff has not adequately plead the elements of attempted monopolization. Therefore this Court dismisses Claims V and VI with leave to amend.

**D.     Cartwright Claim**

Plaintiff, in Claim VII, alleges Defendant violated California state law under the Cartwright Act.

1  (Compl. at 24:15-25.) "Because the Cartwright Act has objectives identical to the federal antitrust acts, the
2  California courts look to cases construing the federal antitrust laws for guidance in interpreting the
3  Cartwright Act." Vinci v. Waste Mgmt., Inc., 43 Cal. Rptr. 2d. 337, n.1 (Cal. Ct. App. 1995). Typically,
4  if a plaintiff is capable of maintaining a Sherman Act claim, the plaintiff is capable of maintaining a similar
5  Cartwright Act claim. However, the laws are distinct. Dimidowich v. Bell & Howell, 803 F.2d 1473,
6  1478 (9th Cir. 1986). In this instance, although Plaintiff uses overly broad language to allege a Cartwright
7  Act violation, Plaintiff has incorporated the elements of the Sherman Act violation and thus, the Court will
8  allow Claim VII to stand at the pleading stage of the litigation. (Compl. at 24:20-25.)

### E. **Unfair Competition Law Claim**

10  Plaintiff, in Claim VIII, alleges that Defendant has violated California's unfair competition law.
11  (Compl. at 25:1-17.) A claim under California Business & Professions Code section 17200 is far broader
12  than a federal antitrust claim, and thus Defendant's conduct may constitute a violation of section 17200
13  even if not rising for some technical reason to an antitrust violation. Cel-Tech Comms., Inc. v. Los Angeles
14  Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999). Section 17200 defines "unfair competition" as "any
15  unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. The California
16  Supreme Court has consistently recognized the sweeping nature of section 17200, stating: "When a plaintiff
17  who claims to have suffered injury from a direct competitor's "unfair" act or practice invokes section 17200,
18  the word "unfair" in that section means conduct that threatens an incipient violation of an antitrust law."
19  Cel-Tech, 20 Cal. 4th at 187. This Court finds that Plaintiff's pleading of a section 17200 violation is
20  adequate to survive a motion to dismiss.

### F. **Plaintiff's Unjust Enrichment Claim Fails as a Matter of Law**

22  Plaintiff, in Claim IX, alleges that Defendant has been unjustly enriched from the money and
23  business given for purchases from iTunes or iPods. (Compl. ¶ 100.) Plaintiff further states that he is
24  entitled to disgorgement of Defendant's ill-gotten gains. (Compl. ¶ 100.) Defendant argues that the unjust
25  enrichment claim should be dismissed at a matter of law because Plaintiff has purchased a product in a
26  transaction that creates a contract. (Motion to Dismiss at 17:24-25.) Under California law, an action for
27  unjust enrichment is not possible where a contractual relationship exists between the two parties. Gerlinger
28  v. Amazon.com, Inc., 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004). By Plaintiff's own statements, a

contract under California law is made when consumers purchase either an iPod or a music file from iTunes. See CAL. COM. CODE §§ 2106(1), 2204(1). Therefore, Plaintiff's common law unjust enrichment claim is dismissed as a matter of law with prejudice.

## V. CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's Motion to Dismiss First, Second, Third, Fourth, Seventh, Eighth, and Tenth Claims. The Court GRANTS Defendant's Motion to Dismiss Plaintiff's Fifth and Sixth Claims with leave to amend. This Court GRANTS Defendants' Motion to Dismiss Plaintiff's Ninth Claim with prejudice. To avoid confusion as the case proceeds, on or before **October 11, 2005**, Plaintiff shall file and serve an amended complaint which contains only the allowed claims, including those that the Court has granted leave to amend if Plaintiff wishes to amend. Defendant shall file a response to the amended complaint no later than 15 days following the filing and service of the amended complaint.

Dated: September 9, 2005

/s/ James Ware
JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Adam Richard Sand arsand@JonesDay.com
Caroline N. Mitchell cnmitchell@jonesday.com
Eric J. Belfi ebelfi@murrayfrank.com
Marc L. Godino service@braunlawgroup.com
Michael David Braun mdb@braunlawgroup.com
Robert A. Mittelstaedt ramittelstaedt@jonesday.com

Dated: September 9, 2005                     Richard W. Wieking, Clerk

                                             By:  /s/ JW Chambers
                                                  **Ronald L. Davis**
                                                  **Courtroom Deputy**

**United States District Court**
For the Northern District of California