1           IN THE UNITED STATES DISTRICT COURT

2         FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

5   THOMAS WILLIAM          )   C-05-00037-JW
    SLATTERY,               )
6                           )   JUNE 6, 2005
                PLAINTIFF,  )
7                           )   MOTION
              V.            )
8                           )   PAGES 1-34
    APPLE COMPUTER, INC.,   )
9                           )   **ORIGINAL**
                DEFENDANT.  )
10  _____)

11        THE PROCEEDINGS WERE HELD BEFORE

12       THE HONORABLE UNITED STATES DISTRICT

13                  JUDGE JAMES WARE

14  A P P E A R A N C E S :

15  FOR THE PLAINTIFF:   THE KATRIEL LAW FIRM
                         BY:  ROY A. KATRIEL
16                       1101 30TH STREET NW
                         SUITE 500
17                       WASHINGTON, DC  20007

18                       MURRAY, FRANK & SAILER
                         BY:  ERIC J. BELFI
19                       275 MADISON AVENUE
                         NEW YORK, NEW YORK 10016
20
                         BRAUN LAW GROUP
21                       BY:  MICHAEL D. BRAUN
                         12400 WILSHIRE BOULEVARD
22                       SUITE 920
                         LOS ANGELES, CALIFORNIA 90025
23
          (APPEARANCES CONTINUED ON THE NEXT PAGE.)
24
    OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
25                           CERTIFICATE NUMBER 8074

                                                        1

                    U.S. COURT REPORTERS

1

2      A P P E A R A N C E S: (CONT'D)

3      FOR THE DEFENDANT:        JONES DAY
                                 BY: ROBERT A. MITTELSTAEDT
4                                     ADAM SAND
                                 555 CALIFORNIA STREET
5                                26TH FLOOR
                                 SAN FRANCISCO, CALIFORNIA
6                                94104

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2

```
1     SAN JOSE, CALIFORNIA                    JUNE 6, 2005

2

3                  P R O C E E D I N G S

4          (WHEREUPON, COURT CONVENED AND THE

5     FOLLOWING PROCEEDINGS WERE HELD:)

6          THE CLERK:  NEXT MATTER C-05-00037,

7     THOMAS WILLIAM SLATTERY VERSUS APPLE COMPUTER, INC.

8          ON FOR DEFENDANT'S MOTION TO DISMISS.

9          MR. MITTELSTAEDT:  ROBERT MITTELSTAEDT

10    FOR DEFENDANT APPLE COMPUTER.

11         MR. KATRIEL:  GOOD MORNING.  ROY KATRIEL

12    APPEARING PRO HAC VICE FOR THOMAS SLATTERY.

13         MR. BELFI:  GOOD MORNING.  ERIC BELFI

14    FROM MURRAY, FRANK & SAILER APPEARING FOR THOMAS

15    SLATTERY.

16         MR. BRAUN:  GOOD MORNING, YOUR HONOR.

17    MICHAEL BRAUN ALSO ON BEHALF OF THE PLAINTIFF.

18         MR. MITTELSTAEDT:  AND WITH ME IS

19    ADAM SAND FROM MY OFFICE.

20         THE COURT:  GOOD MORNING.

21         VERY WELL.  THIS IS A DEFENSE MOTION.

22         MR. MITTELSTAEDT:  IF IT MAY PLEASE THE

23    COURT, THE ANTITRUST THEORIES BY MR. SLATTERY ARE

24    DEMONSTRABLY WRONG AS A MATTER OF LAW.  THEY ARE AN

25    ATTACK ON APPLE'S INNOVATION AND DEVELOPMENT OF
```

3

1    SUPERIOR PRODUCTS THAT ARE IN HIGH CONSUMER DEMAND.

2              THE COMPLAINT FAILS TO ALLEGE THE

3    REQUISITE ELEMENTS OF HIS ANTITRUST THEORIES AND

4    MORE THAN THAT IT SHOWS THAT HE CANNOT CURE DEFECTS

5    THROUGH AMENDMENT.

6              LET ME START WITH THE TYING CLAIM.  THE

7    LAW ON TYING IS THAT WHEN A SELLER REQUIRES THE

8    BUYER TO BUY AN UNWANTED PRODUCT AS A CONDITION FOR

9    BUYING A PRODUCT THAT THE CONSUMER WANTS THAT CAN

10   BE AN UNLAWFUL TIE.

11             BUT THE CRITICAL ELEMENT IS THAT THE

12   SELLER REQUIRES THE BUYER TO BUY THE TWO PRODUCTS

13   AS A PACKAGE.

14             AND AS THE SUPREME COURT PUT IT IN THE

15   NORTHERN PACIFIC RAILWAY CASE, IF A BUYER IS FREE

16   TO TAKE EITHER PRODUCT BY ITSELF, THERE IS NO TYING

17   PROBLEM.

18             SO THE INITIAL QUESTION IS WHEN A

19   CONSUMER GOES INTO AN APPLE STORE AND ASKS TO BUY

20   AN IPOD, DOES APPLE SAY YOU CAN BUY AN IPOD ONLY IF

21   YOU AGREE TO DOWNLOAD MUSIC FROM APPLE'S ON-LINE

22   MUSIC STORE OR DOES APPLE SAY WE'LL SELL YOU THIS,

23   NO MATTER WHAT YOU LOAD IT WITH, NO MATTER IF YOU

24   EVER IN YOUR WHOLE LIFE DOWNLOAD A SONG FROM OUR

25   ON-LINE MUSIC STORE.

4

1          THE COURT:  NOW, LET ME, LET ME QUESTION

2     THAT JUST A LITTLE BIT.  AND I'VE READ THE CASES

3     THAT SAY EXACTLY THAT BUT IS THAT THE ONLY BASIS OF

4     A TYING CLAIM?  WHAT, FOR INSTANCE, IS THE LAW IF I

5     SELL YOU A COPYRIGHT AND I SET THE COPIER UP SO

6     THAT ONLY A SERVICE PERSON FROM MY STORE HAS A KEY

7     THAT WILL ALLOW YOU TO OPEN UP THE COPIER TO

8     SERVICE IT, ALTHOUGH I HAVEN'T FORCED YOU TO BUY MY

9     SERVICE, BY PUTTING A KEY, PUTTING A DOOR IN THE

10    COPIER, THE ONLY WAY YOU'RE GOING TO BE ABLE TO

11    SERVICE YOUR COPIER IS TO BUY SERVICE FROM ME.

12    HAVEN'T I THEN EFFECTIVELY TIED SERVICE OF A

13    COPIER, WHICH IS DIFFERENT THAN THE COPIER ITSELF?

14          MR. MITTELSTAEDT:  I DON'T THINK SO, YOUR

15    HONOR.  I THINK THE CASES SAY THERE ARE TWO WAYS TO

16    CREATE A TIE, ONE IS IF IT'S AN EXPRESS

17    REQUIREMENT, THE KIND I WAS DESCRIBING AS THE

18    INITIAL QUESTION AND THE SECOND IS IF THERE IS A

19    PRICING POLICY THAT IN EFFECT COERCES THE SELLER OR

20    THE BUYER TO BUY BOTH PRODUCTS SO THAT IF YOU BUY

21    THE TWO PRODUCTS SEPARATELY, THEY COST A LOT MORE

22    THAN IF YOU BUY THEM AS A PACKAGE.

23          BUT THE LAW CERTAINLY AFTER TRINKO, AFTER

24    THE SUPREME COURT DECIDED TRINKO, IS THAT A

25    COMPANY, EVEN A MONOPOLIST, IS FREE TO REFUSE TO DO

5

1    BUSINESS WITH A COMPETITOR, EVEN A MONOPOLIST IS

2    NOT REQUIRED TO MAKE LIFE EASY FOR A COMPETITOR,

3    AND TO LET ANY COMPETITOR INTERSECT OR OPERATE

4    BUSINESS PRODUCTS.  THERE'S NO REQUIREMENT TO DO

5    BUSINESS OR MAKE LIFE EASIER FOR A COMPETITOR

6    EXCEPT IN THE NARROW CIRCUMSTANCES THAT TRINKO WAS

7    TALKING ABOUT.  AND THE NARROW CIRCUMSTANCE, THE

8    NARROW EXCEPTION TO THAT REFUSAL TO DEAL WITH LAW

9    IS WHEN THERE'S A PREEXISTING VOLUNTARY COURSE OF

10    CONDUCT WHERE THE MONOPOLIST IS DEALING WITH ITS

11    COMPETITORS.  AND THERE IS NO ALLEGATION OF THAT IN

12    THIS CASE.

13          MORE THAN THAT, YOUR HONOR, THE

14    HYPOTHETICAL YOU POSIT IS NOT ALLEGED IN THIS

15    COMPLAINT.

16          THE COURT:  IT MIGHT BE IN THE SENSE THAT

17    I HAVE TO ACCEPT SOME OF THE COMPLAINT AS TRUE, NOT

18    EVERYTHING, ONLY THE WELL PLEADED FACTS.  DON'T

19    THEY ALLEGE A TECHNOLOGICAL TIE?

20          MR. MITTELSTAEDT:  YES, THEY DO, AND THAT

21    REALLY IS THE ONLY, ONLY CLAIM.  AND LET ME STATE

22    IT AS NARROWLY AS IT'S STATED IN THE COMPLAINT.

23          THE COMPLAINT IS NOT THAT IN YOUR EXAMPLE

24    SOMEBODY WITH REPLACEMENT PARTS FOR A COPIER CAN'T

25    USE IT.  THEIR COMPLAINT, THEY, THEY NEVER SAY,

6

1    YOUR HONOR, THAT, THAT AN IPOD CANNOT PLAY MUSIC

2    FROM ANOTHER ON-LINE MUSIC STORE.

3         THEY NEVER SAY THAT YOU CAN'T PUT CD'S ON

4    HERE.  AND IN THE GROXTER CASE IN THE SUPREME

5    COURT, JUSTICE SOUTER ASKED THE QUESTION, HE SAID,

6    I KNOW PERFECTLY WELL THAT I CAN BUY A CD AND I CAN

7    PUT IT ON MY IPOD.  SO THERE'S A LOT OF WAYS TO PUT

8    MUSIC ON AN IPOD, INCLUDING MUSIC FROM AN ON-LINE

9    STORE FROM A COMPETITOR.

10         ALL THE COMPLAINT SAYS IS THAT IF I WANT

11   TO PUT MUSIC ON HERE FROM AN ON-LINE STORE, AND I

12   WANTED TO DO IT DIRECTLY, THEN I HAVE TO USE

13   APPLE'S MUSIC STORE.

14         BUT THEY KEEP SAYING DIRECT, DIRECT,

15   DIRECT.  THE REASON THEY SAY IS THAT WITH JUST ONE

16   OTHER STEP, BURNING IT BACK TO A CD YOU CAN DO IT

17   INCORRECTLY.

18         THE COURT:  SO WAIT.  IS THAT THE ONLY

19   WAY?  DO YOU CONCEDE THAT YOU CAN'T TAKE MUSIC FROM

20   A DIFFERENT SOURCE THAN THE APPLE I-TUNE CITE AND

21   PUT IT ONTO THE IPOD WITHOUT FIRST BURNING IT TO A

22   CD?

23         MR. MITTELSTAEDT:  WELL, IF WE'RE JUST

24   TALKING ABOUT DIGITAL MUSIC.

25         THE COURT:  AH.

7

1          MR. MITTELSTAEDT:  AND, AND IF YOU'RE

2   TALKING ABOUT LEGAL DIGITAL MUSIC.

3          THE COURT:  OF COURSE.

4          MR. MITTELSTAEDT:  THAT HAS ITS OWN DRM,

5   OR DIGITAL RIGHTS MANAGEMENT, PROTOCOL ON IT, THAT

6   DRM, IF IT'S THE DRM IS COMPATIBLE WITH THE ONE

7   THAT APPLE USES, YES, YOU HAVE TO BURN IT TO A CD

8   AND THAT'S THE INDIRECT METHOD THAT THEY'RE TALKING

9   ABOUT IN THE COMPLAINT.

10         THE COURT:  WHY DO YOU HAVE TO BURN IT TO

11  A CD?  WHY CAN'T YOU MAKE THAT CONVERSION RIGHT IN

12  THE COMPUTER?

13         MR. MITTELSTAEDT:  BECAUSE IF YOU

14  DOWNLOAD IT FROM MICROSOFT'S MUSIC STORE, FOR

15  EXAMPLE, MICROSOFT HAS IT PROTECTED BY ITS OWN DRM

16  CALLED WINDOWS MEDIA AUDIO, AND ONLY A DEVICE THAT

17  HAS WINDOWS DRM IN IT CAN PLAY THAT DIRECTLY, AND

18  SO WHAT HAPPENS IS IF YOU DOWNLOAD IT TO -- IF YOU

19  DOWNLOAD IT TO A COMPUTER, BURN IT TO A CD, THAT

20  EFFECTIVELY DESTROYS THE DRM.

21         THE COURT:  SO IT'S NECESSARY TO BURN IT

22  TO A CD IN ORDER TO DESTROY THE CODED DRM.  YOU

23  CAN'T DO THAT IN THE COMPUTER ITSELF?

24         MR. MITTELSTAEDT:  THAT'S MY

25  UNDERSTANDING, YOUR HONOR.  BUT I THINK THE POINT

8

1    IS THAT CAN FILL UP THIS IPOD WITHOUT EVER

2    DOWNLOADING A SINGLE SONG FROM MUSIC'S SAMPLE

3    STORE.  YOU CAN DO IT FROM YOUR CD AND OTHER MUSIC

4    ON-LINE STORES AND YOU CAN DO IT FROM A VARIETY OF

5    SOURCES AND SO IT JUST IS NOT TRUE, EVEN BASED ON

6    THE ALLEGATIONS OF THE COMPLAINT THAT THE ONLY WAY

7    TO PUT ANY MUSIC ON AN IPOD IS THROUGH APPLE'S

8    ON-LINE MUSIC STORE.

9            AND SO THE TECHNOLOGICAL TYING CASES,

10   LIKE THE FOREMOST CASE, THE FOREMOST CASE SAYS THAT

11   IT'S NOT AN UNLAWFUL TIE JUST BECAUSE THE MOST

12   PRACTICAL OR EFFECTIVE USE OF ONE PRODUCT IS TO USE

13   THE MONOPOLIST OTHER PRODUCT.  AND THAT CASE

14   INTRODUCED ANOTHER CAMERA ALONG WITH NEW FILM AND

15   NEW PROCESSING CHEMICALS.  AND THE COURT FOUND THAT

16   THAT WAS NOT AN UNLAWFUL PER SE TYING ARRANGEMENT

17   JUST BECAUSE THE PRODUCTS WORKED BETTER AS A

18   PACKAGE.  AND THAT'S WHY THE COURTS HAVE SAID, YOUR

19   HONOR, THAT YOU CAN'T MAKE A TIE EXPRESS, YOU CAN'T

20   MAKE -- YOU CAN'T FORCE A TIE BY A PRICING POLICY,

21   BUT THE COURTS HAVE STOPPED SHORT OF SAYING, YOU

22   CAN'T MAKE YOUR PRODUCTS WORK BETTER TOGETHER, AND

23   JUST BECAUSE YOUR PRODUCTS WORK BETTER TOGETHER

24   AUTOMATICALLY OR NECESSARILY THAT BECOMES A TIE.

25            AND IF ONE THINKS ABOUT IT, THERE'S A LOT

9

U.S. COURT REPORTERS

1    OF SENSE IN DRAWING THE LINE THERE.  AND THAT IS

2    BECAUSE IF YOU SAY TO A COMPANY YOU CAN'T MAKE YOUR

3    PRODUCTS WORK BETTER TOGETHER, THEN THEY WORK WITH

4    A COMPETITOR'S PRODUCT, THEN YOU HAVE STIFLED

5    INNOVATION.  THE VERY THING THE ANTITRUST LAWS ARE

6    DESIGNED TO PROTECT, ARE TO ENCOURAGE.

7          LET ME GO BRIEFLY, IF I MAY, TO THE

8    MONOPOLIZATION CLAIM.

9          SLATTERY IS CLAIMING TWO THINGS AND THEY

10   ALL START FROM WHAT I THINK BOTH SIDES AGREE TO AND

11   THAT IS THE RECORD COMPANIES THAT OWN THE MUSIC

12   REQUIRE SOME KIND OF COPYRIGHT PROTECTION AND IT'S

13   DIGITAL MANAGEMENT AND THAT'S THE DIFFERENCE

14   BETWEEN MUSIC ON-LINE STORES AND THERE ARE SEVERAL

15   DIFFERENT VERSIONS OF DRM.  MICROSOFT OFFERS ITS

16   OWN AS I MENTIONED AND APPLE DEVELOPED ITS OWN

17   WHICH IS CALLED FAIR PLAY.

18          SLATTERY IS BASICALLY CLAIMING THAT IT'S

19   AN ANTITRUST VIOLATION BECAUSE APPLE DEVELOPED ITS

20   OWN DRM RATHER THAN LICENSING MICROSOFT'S INDUSTRY

21   STANDARD.  IT'S LIKE IF MICROSOFT CAME INTO THIS

22   COURT, YOUR HONOR, AND SAID APPLE IS MONOPOLIZING

23   THE DRM MARKET OR SOME OTHER MARKET BECAUSE IT

24   WON'T LICENSE MICROSOFT'S DRM AND USE IT.  THAT

25   WOULD BE A FRIVOLOUS COMPLAINT AND I SUBMIT IT'S

10

1    EQUALLY FRIVOLOUS WHEN A CONSUMER MAKES THAT CLAIM.

2    SO HE QUICKLY GOES TO HIS FALLBACK POSITION AND HIS

3    FALLBACK POSITION IS, OKAY, IT'S OKAY FOR APPLE TO

4    DEVELOP ITS OWN DRM BUT THEN IT'S REQUIRED TO

5    LICENSE THAT TO COMPETITORS AND IF IT ONLY LICENSED

6    IT TO COMPETITORS THEN EVERYBODY'S ON-LINE MUSIC

7    COULD PLAY DIRECTLY ON AN IPOD.

8              THE SHORT ANSWER TO THAT IS THE SUPREME

9    COURT'S DECISION IN TRINKO AND IN TRINKO THE

10   SUPREME COURT SAYS, AS I MENTIONED, THERE'S NO

11   ANTITRUST DUTY TO DEAL WITH COMPETITORS, ABSENT A

12   PREEXISTING VOLUNTARY COURSE OF CONDUCT.  AND HERE

13   NOT ONLY IS THERE NO ALLEGATION OF A PREEXISTING

14   VOLUNTARILY CONDUCT WHERE APPLE IS LICENSING ITS

15   COMPETITORS BUT THE COMPLAINT ALLEGES IN PARAGRAPH

16   44 APPLE HAS STEADFASTLY REFUSED TO LICENSE ITS

17   FAIR PLAY DRM.

18             SO THEY ALLEGE THEMSELVES OUT OF A TRINKO

19   VIOLATION BY ALLEGING THERE WAS NO PRECOURSE OF

20   CONDUCT.  THEY TRY AND CURE THAT, YOUR HONOR, IN

21   PARAGRAPH 47 WHERE THEY GO THROUGH THE REAL

22   NETWORKS EPISODE.  REAL NETWORKS IS A COMPETITOR

23   THAT SELLS ON-LINE DIGITAL MUSIC.  AND BASICALLY

24   HACKED INTO THE IPOD AND HERE'S WHAT THEY SAY, REAL

25   NETWORKS MANAGED TO ANALYZE THE FIRMWARE IN THE

11

1    IPOD, IT WAS ABLE TO DISCERN THE NECESSARY EXTRA

2    SOFTWARE CODE AND ARMED WITH THIS KNOWLEDGE REAL

3    NETWORKS WAS ABLE TO INSERT A CORRESPONDING CODE OF

4    ITS OWN SO THAT ITS MUSIC COULD PLAY DIRECTLY ON AN

5    IPOD.  THAT IS NOT A PREEXISTING VOLUNTARY COURSE

6    OF DEALING WHETHER YOU CALL THAT HACKING AS I

7    BELIEVE IT IS OR WHETHER YOU USE THE EUPHEMISTIC

8    TERMS ABOUT MANAGE TO INDEPENDENTLY ANALYZE AND

9    INSERT ITS OWN CODE AND SO FORTH.

10         IN TRINKO THE COURT SAID THAT UNLESS A

11   COMPETITOR IS VOLUNTARILY AGREED TO DEAL WITH

12   COMPETITORS AND DONE IT REPEATEDLY THERE IS NO DUTY

13   TO DEAL WITH COMPETITORS.  AND THAT DOVETAILS VERY

14   NICELY WITH THE LAW IN THE NINTH CIRCUIT THAT

15   THERE'S NO REQUIREMENT TO LICENSE A PATENT AND

16   THAT'S IN THE IMAGE TECHNICAL SERVICES CASE WHERE

17   THE NINTH CIRCUIT SAYS THAT WE FIND NO REPORTED

18   CASE IN WHICH A COURT HAS IMPOSED ANTITRUST

19   LIABILITY FOR A UNILATERAL REFUSAL TO SELL OR

20   LICENSE A PATENT OR COPYRIGHT.

21         AND THAT IS THE ESSENCE OF THEIR

22   MONOPOLIZATION CLAIM HERE THAT APPLE REFUSED TO,

23   REFUSED -- APPLE HAD THE AUDACITY TO DEVELOP ITS

24   OWN DRM RATHER THAN USING MICROSOFT AND WHEN IT DID

25   THAT IT DECIDED NOT TO LICENSE THAT TO COMPETITORS.

12

1    THE KEY WORD AGAIN IS "STEADFAST."  APPLE HAS BEEN

2    STEADFAST IN ITS REFUSAL TO, IN ITS REFUSAL TO

3    LICENSE DRM AND THAT MEANS THAT THERE IS NO REFUSAL

4    TO DEAL CLAIM.  LET ME INTERRUPT.

5         THE COURT:  LET ME INTERRUPT YOUR

6    ARGUMENT AND HEAR FROM YOUR OPPONENT.

7         MR. KATRIEL:  THANK YOU.  GOOD MORNING,

8    YOUR HONOR.  MAY IT PLEASE THE COURT.  I WOULD LIKE

9    TO BEGIN WHERE THE COMPLAINT BEGINS AND WHERE

10   MR. MITTELSTAEDT BEGINS AND THAT'S IN THE TYING

11   ALLEGATIONS.

12        ONE WORD I DIDN'T USE IN DESCRIBING THE

13   TYING WAS COERCION WHICH IS ACTUALLY WHAT TYING IS

14   ALL ABOUT.  IT'S NOT A QUESTION OF PRICING OR

15   EXQUISITE MAKING.  IT'S WHETHER THE PERSON MAKES OR

16   COERCES THE CONSUMER INTO DOING THAT SAME ACT THAT

17   THE CONSUMER WOULD CHOOSE TO PURCHASE FROM ANOTHER

18   SOURCE.

19        THE COURT:  WHAT IS THE PRODUCT?

20        MR. KATRIEL:  THE PRODUCT IN THIS CASE IS

21   TWO-FOLD, ONE, OF COURSE, IS A PORTABLE DIGITAL

22   MUSIC PLAYER AND HERE THE IPOD IS THAT WITHIN THE

23   RELEVANT MARKET.

24        THE COURT:  THAT'S THE ONE THE CONSUMER

25   WANTS OR DOES NOT WANT?

13

1          MR. KATRIEL:  IT DEPENDS ON WHICH COUNTS.

2          THE COURT:  YEAH, I THOUGHT THAT.  I HAVE

3    YET TO SEE AN ANTITRUST CLAIM WHERE THE TIED

4    PRODUCT IS ALLEGED BOTH AS THE DESIRED PRODUCT AND

5    AS THE UNDESIRED PRODUCT, BUT I KNOW YOU CAN PLEAD

6    THINGS INCONSISTENTLY BUT DON'T YOU NEED TO CHOOSE

7    HERE TO MAKE YOUR CLAIM VIABLE?

8          MR. KATRIEL:  I THINK THE PLEADING IN THE

9    ALTERNATIVE IS PRECISELY WHAT WE HAVE DONE.  IT MAY

10   VERY WELL BE THE CASE THAT SOME WAY DOWN THE ROAD

11   THE MARKET FIGURES DON'T BEAR OUT OR THE PARTICULAR

12   DETAILS OF THE MARKET STRUCTURE ARE NOT WHAT WE

13   KNOW GOING INTO THE COMPLAINT AND IT MAY VERY WELL

14   BE THAT ONE CLAIM WILL SURVIVE AND ANOTHER WON'T.

15   BUT GOING INTO THE COMPLAINT TO GET INTO COURT, WE

16   DON'T HAVE TO MAKE THAT CHOICE.

17         THE COURT:  IS THERE A CASE?  CAN YOU

18   CITE ME TO ANY CASE WHERE A PERSON IS ALLOWED TO

19   STATE A CLAIM WHERE THE UNDESIRED PRODUCT IS

20   ALLEGED IN ONE CLAIM AS THE DESIRED PRODUCT AND

21   ANOTHER AS THE UNDESIRED PRODUCT?

22         MR. KATRIEL:  WELL, I THINK WITHOUT

23   HAVING THE COMPLAINT IN FRONT OF ME I THINK

24   MICROSOFT IS CERTAINLY A SOMEWHAT OF AN EXAMPLE OF

25   THAT CASE WAS THE DESIRED PRODUCT THE OPERATING

14

1    SYSTEM OR THE BROWSER?

2              NOW, MOST OF THE CASE FOCUSSED ON THE

3    FACT THAT APPLE WAS TYING THE USE OF THE BROWSER TO

4    WINDOWS BUT ONE COULD MAKE THE ARGUMENT THAT IN

5    ORDER TO GET THE BROWSER YOU HAD TO HAVE WINDOWS AS

6    WELL.

7              THE COURT:  YOU SAID APPLE.

8              MR. KATRIEL:  I'M SORRY, I MEANT

9    MICROSOFT.

10             THE COURT:  LET'S ASSUME THAT I ALLOW YOU

11   TO GET AWAY WITH THAT.  ISN'T THE CASE THAT IS

12   CITED BY YOUR OPPONENT THE CASE FOREMOST

13   CONTROLLING HERE?

14             MR. KATRIEL:  NO, AND IN FOREMOST KODAK

15   DEVELOPED THIS CAMERA WITH NEW TECHNOLOGY AND

16   BASICALLY AT THE TIME THERE WAS NO OTHER PAPER THAT

17   COULD BE USED TO DEVELOP PICTURES FROM THAT CAMERA

18   BUT KODAK DID ABSOLUTELY NOTHING TO FORBID OTHER

19   COMPETITORS TO DEVELOPING THAT PAPER.

20             HERE THE OPPOSITE IS TRUE.  IT'S NOT THAT

21   THERE ARE NO OTHER PLAYERS CAPABLE OF PLAYING

22   APPLE'S TECHNOLOGY.  IN FACT, WE KNOW THAT REAL

23   NETWORKS MANAGED TO DO SO.  IT IS THAT APPLE HAS

24   AFFIRMATIVELY INSERTED A CODE TO PREVENT COMPETING

25   PROVIDERS FROM PLAYING THOSE SONGS AND FOREMOST

1    STRESSED THAT.  AT FOOTNOTE 4 TO QUOTE FROM IT IT

2    SAYS THAT UNDER THE FACTS ALLEGED IN THE COMPLAINT

3    THERE COULD NOT AS A MATTER OF LAW BE THE SORT OF

4    COERCION DISCUSSED IN MOORE V. JAMES MATTHEWS

5    BECAUSE FOREMOST WAS NOT FORCED TO ACCEPT THE TIED

6    ITEM AND FOREGO POSSIBLE SUBSTITUTES.

7           SINCE THE COMPLAINT ALLEGES THAT WHEN THE

8    110 SYSTEM WAS INTRODUCED NO COMPETING

9    MANUFACTURERS PRODUCED CHEMICALS AND PAPERS

10   COMPATIBLE WITH KODAK COLOR TO FILM, THERE COULD

11   HAVE BEEN NO SUBSTITUTES THAT FOREMOST OR OTHER

12   CUSTOMERS WERE FORECLOSED FROM PURCHASING.  WE

13   ALLEGE PRECISELY WHAT WAS LACKING IN FOREMOST THAT

14   THERE ARE OTHER PROVIDERS OF ON-LINE MUSIC, THAT

15   THERE ARE OTHER PROVIDERS OF DIGITAL MUSIC PLAYERS,

16   BUT THE INSERTION OF THIS CODE AND THE CHANGING OF

17   THIS CODE, IF YOU MANAGE TO ACQUIRE IT BY APPLE

18   FORECLOSES PEOPLE FROM MAKING A FREE CHOICE.

19          THE COURT:  HOW?  I NOTICE

20   MR. MITTELSTAEDT DID NOT SUBMIT THE IPOD AS EXHIBIT

21   A FOR THE COURT TO HAVE BUT CAN I TAKE JUDICIAL

22   NOTICE OF CERTAIN FACTS WITH RESPECT TO THIS

23   CONSUMER PRODUCT IN THE SENSE THAT THE COURT CAN

24   KNOW BEYOND, AND, IN FACT, YOU ALLEGED IN YOUR

25   COMPLAINT THAT IT IS NOT POSSIBLE, FIRST OF ALL, TO

16

1    CONNECT AN IPOD DIRECTLY TO THE INTERNET.  THE USER

2    OF THE PRODUCT HAS TO GO THROUGH A COMPUTER;

3    CORRECT?

4            MR. KATRIEL:  YOU CAN'T CONNECT TO THE

5    INTERNET WITH OR WITHOUT A COMPUTER ABSENT SO.

6            THE COURT:  RIGHT.  BUT IN ORDER TO USE

7    THE TWO PRODUCTS THAT YOU'RE COMPLAINING ABOUT, YOU

8    HAVE TO HAVE A COMPUTER?

9            MR. KATRIEL:  CORRECT.

10           THE COURT:  AND SO IF YOU ARE USING A

11   COMPUTER, IT IS POSSIBLE FOR YOU TO USE YOUR IPOD

12   TO PLAY MUSIC FROM ANY OTHER VENDOR, INCLUDING

13   APPLE, AND I COULD USE YOUR COMPUTER TO TAKE TUNES

14   FROM APPLE AND ANY OTHER VENDOR AND PUT THEM INTO

15   YOUR IPOD; ISN'T THAT CORRECT?

16           MR. KATRIEL:  YOUR HONOR, RESPECTFULLY I

17   WOULD NOT BE WILLING TO AGREE WITH THAT THERE.

18   THERE IS NO EVIDENCE ON THAT OTHER THAN MR.

19   MITTELSTAEDT'S OWN REPRESENTATIONS.

20           THE COURT:  THAT'S WHY I ASK CAN I TAKE

21   JUDICIAL NOTICE?  IN OTHER WORDS, ISN'T IT THE CASE

22   THAT THROUGH THE COMPUTER YOU'RE ABLE TO CONVERT

23   FILES IN VARIOUS FORMATS THROUGH ITS HARDWARE AND

24   SOFTWARES TO FILES IN OTHER FORMATS AND THAT'S

25   SOMETHING THAT I COULD KNOW AS A RESULT OF LIVING

17

1    IN THIS VALLEY?

2         MR. KATRIEL:  EXCEPT, AS EXHIBIT A TO OUR

3    COMPLAINT, WHICH IS THE LAST PAGE OF THE COMPLAINT,

4    APPLE'S OWN REPRESENTATIONS, WHICH IT MAKES TO ITS

5    CONSUMERS, IS THAT PARAGRAPH 3, SONGS PURCHASED

6    FROM I-TUNES MUSIC STORES ARE ENCODED USING THE AAC

7    PROTECTED FORMAT AND CANNOT BE CONVERTED TO MP3

8    FORMAT.  YOU CAN BURN THEM AND PLAY THEM IN AUDIO

9    CD PLAYERS.

10         WHAT MR. MITTELSTAEDT IS NOW REPRESENTING

11    TO THE COURT IS THAT YOU CAN TAKE AN EXTRA STEP AND

12    USE THAT AUDIO CD TO CONVERT IT BACK TO ANOTHER

13    PORTABLE DIGITAL MUSIC PLAYER.  I DON'T KNOW IF

14    THAT'S TRUE OR NOT.  WE CERTAINLY ARE NOT MAKING

15    ANY ALLEGATIONS WITH RESPECT TO THAT IN THE

16    COMPLAINT BUT ASSUMING THAT WERE TRUE FOR THE

17    PURPOSES OF ARGUMENT, THAT STILL DOESN'T SOLVE THE

18    PROBLEM BECAUSE THE ARGUMENT IS THAT BASICALLY THAT

19    THERE'S A METHOD BY WHICH YOU CAN CIRCUMVENT THE

20    TIE.  OF COURSE THERE ALWAYS IS.  ASSUME THIS

21    DIDN'T EXIST.  I COULD ALWAYS SPEND MY MONEY AND

22    HIRE SOMEONE TO CRACK THE CODE AND THEN CIRCUMVENT

23    THE TIE.  NOW WHAT THEY'RE SAYING IS THAT YOU CAN

24    GO OUT AND BUY A DVD BURNER.

25         THE COURT:  BUT THE TIE, THE TIE IS NOT

18

1    ONE THAT IS COMPELLED THEN BY THE DEFENDANT IN THIS

2    CASE.

3              IN OTHER WORDS, I CAN BUY BOTH PRODUCTS

4    SEPARATELY.  I CAN SUBSCRIBE TO I-TUNES ON MY

5    COMPUTER AND NEVER BUY AN IPOD AND I CAN THEN

6    LISTEN TO THE MUSIC THAT I DOWNLOAD AND I CAN TAKE

7    IT WITH ME; IS THAT CORRECT?

8              MR. KATRIEL:  NOT UNLESS YOU MAKE AN

9    EXTRA PURCHASE AND THAT'S THE POINT.  YOU HAVE TO

10   SPEND ANOTHER HUNDRED.

11             THE COURT:  WHAT OTHER PURCHASE DO I HAVE

12   TO MAKE?

13             MR. KATRIEL:  YOU HAVE TO BUY A DVD

14   BURNER.

15             THE COURT:  IT WON'T DO IT ON A CD?

16             MR. KATRIEL:  WELL, A CD BURNER.

17             THE COURT:  BUT THAT'S ALL PART OF MY

18   COMPUTER EQUIPMENT.

19             MR. KATRIEL:  BUT THERE'S A COST

20   ASSOCIATED WITH THAT.

21             THE COURT:  THAT'S WHY I ASK WHETHER OR

22   NOT THE COMPUTER IS AN IMPORTANT INGREDIENT.  BOTH

23   PRODUCTS NEED A COMPUTER, IT'S JUST A QUESTION OF

24   WHAT DEVICES ARE IN THE COMPUTER.  YOU'RE TELLING

25   ME YOU NEED A COMPUTER WITH CERTAIN DEVICES IN

19

1    ORDER TO USE IT AND THAT'S NOT IN YOUR COMPLAINT.

2         IN OTHER WORDS, YOUR ALLEGATION IS THAT

3    APPLE IS FORCING CONSUMERS TO BUY A COMPUTER WITH A

4    CERTAIN CONFIGURATION IN ORDER TO USE I-TUNES

5    WHEREAS OTHER PEOPLE DON'T?

6         MR. KATRIEL:  WELL, MY -- I'M ONLY HERE

7    RESPONDING TO THE REPRESENTATION MADE BY

8    MR. MITTELSTAEDT.  OUR COMPLAINT, THE FOUR CORNERS

9    OF THE COMPLAINT MAKE NO ALLEGATION SUCH AS ONE

10   MADE BY MR. MITTELSTAEDT THAT YOU CAN SOMEHOW

11   CIRCUMVENT THE TIE BY CONVERTING TO THE AAC AND

12   THEN CONVERTING IT BACK.

13        THE COURT:  I'M ACTUALLY FOCUSSED ON YOUR

14   COMPLAINT.  YOUR COMPLAINT IS, AS I UNDERSTOOD IT,

15   THAT YOU COULD NOT PORTABLY TAKE MUSIC FROM I-TUNES

16   WITHOUT BUYING AN IPOD AND MY QUESTION TO YOU IS,

17   IS THAT TRUE IF I HAVE I-TUNES, CAN'T I PORTABLY

18   TAKE THAT MUSIC WITH ME IN A PRODUCT PRODUCED BY

19   ANOTHER COMPANY BY USING THE HARDWARE OF MY

20   COMPUTER?  IF THAT'S A FALSE STATEMENT, THEN YOU

21   NEED TO ADD THIS OTHER INGREDIENT THAT YOU NEED A

22   COMPUTER.

23        MR. KATRIEL:  THAT'S RIGHT.  THAT'S

24   CERTAINLY THE CASE.  EVEN IF THAT WERE TRUE YOU

25   WOULD NEED A COMPUTER, CERTAIN INGREDIENTS AND

20

1    THOSE INGREDIENTS WOULD NOT BE NECESSARY IF YOU HAD

2    AN IPOD.

3              MY POINT ABOUT COERCION, WHICH IS WHERE I

4    STARTED WAS, THAT WE HAVE TO LOOK AT APPLE'S

5    BUSINESS MOTTO TO DETERMINE WHETHER THEIR BUSINESS

6    PRACTICES EQUALLY COERCE CONSUMERS TO PURCHASE FROM

7    I-TUNES EVEN IF THEY WOULD HAVE CHOSEN TO PURCHASE

8    FROM ANOTHER SOURCE.

9              AND THE PRODUCT THAT I-TUNES SELLS IS AN

10   ON-LINE DIGITAL MUSIC FILE THAT IS DIRECTLY

11   PLAYABLE ON A PORTABLE DIGITAL MUSIC PLAYER AND

12   THAT MUSIC STORE IS OPEN TO ONE AND ALL AND ALL

13   COMERS ARE WELCOME EXCEPT IF APPLE LEARNS THAT THE

14   PORTABLE DIGITAL MUSIC PLAYER IS NOT AN APPLE, IT'S

15   A COMPETITOR, THEN THAT PRODUCT IS DISABLED.  YOU

16   CAN GET ANOTHER PRODUCT.  YOU CAN GET A PRODUCT

17   THAT WILL PLAY ON YOUR CD OR A COMPUTER AND YOU CAN

18   DO WITH THAT PRODUCT WHATEVER YOU WOULD LIKE BUT

19   THAT SINGLE PRODUCT WHICH WE ARE FOCUSSING ON, THE

20   ON-LINE DIGITAL MUSIC FILE IS DISABLED TO USE AS A

21   CONSUMER UNLESS YOU BUY AN APPLE IPOD.

22              THE COURT:  NOW, THE OTHER PART OF THE

23   COMPLAINT THAT I WANTED TO MAKE SURE OF IS THAT SO

24   FAR YOU HAVE SAID PORTABLE DIGITAL MUSIC PLAYERS.

25   IN YOUR COMPLAINT YOU LIMIT YOUR COMPLAINT TO

21

1    PORTABLE HARD DRIVE DIGITAL MUSIC PLAYERS.

2           IS THAT THE COMPLAINT THAT YOU WANT OR

3    ARE YOU NOW EXPANDING IT TO ALL PORTABLE DIGITAL

4    MUSIC PLAYERS?

5           MR. KATRIEL:  NO, THE COMPLAINT IS AS

6    PLEADED WHICH IS PORTABLE HARD DRIVE DIGITAL MUSIC

7    PLAYERS.

8           THE COURT:  THEN THAT RAISES THE QUESTION

9    WHY ISN'T THAT A RELEVANT MARKET?  WHY ISN'T IT FOR

10   THE PEOPLE WHO WANT TO USE THE MORE DIGITAL MUSIC

11   PLAYERS?  WHY IS THE HARD DRIVE AN IMPORTANT PART

12   OF THAT?

13          MR. KATRIEL:  WE MADE ALLEGATIONS IN THE

14   COMPLAINT, OF COURSE, THE MARKET DEFINITION IS A

15   QUESTION OF FACT AND IT WOULD SUPPORT THAT MARKET

16   DEFINITION, NAMELY, THAT OTHER TYPES OF DIGITAL

17   MUSIC PLAYERS REQUIRE EXTERNAL MEDIA TO BE CARRIED,

18   FOR INSTANCE, A PORTABLE CD PLAYER IS A DIGITAL

19   MUSIC PLAYER BUT YOU HAVE TO CARRY THE CD'S YOU

20   WANT TO LISTEN TO ALONG WITH YOU.

21          THE HARD DRIVE IN THE DIGITAL MUSIC

22   PLAYER BY IT'S VERY NATURE, IT STORES IN THAT DRIVE

23   THE FILES THAT YOU, ANY FILES THAT YOU MAY DESIRE

24   TO PLAY UP TO THE STORAGE CAPACITY OF THE DRIVE.

25          THE COURT:  BUT A CONSUMER ISN'T LIMITED

22

1    TO THAT FOR ALL PRACTICAL PURPOSES ANY PORTABLE

2    DIGITAL MUSIC PLAYER THAT DOESN'T HAVE SEPARATE

3    MEDIA CAN DO THE SAME THING THAT ONE WITH A DRIVE

4    CAN DO, CAN'T IT?

5         MR. KATRIEL:  THE QUESTION IS ALSO THE

6    DEVELOPMENT OF THE TECHNOLOGY.  OUR CLASS PERIOD

7    HARKENS BACK TO 2003, AND I THINK FOR PRACTICAL

8    PURPOSES THERE WAS A QUESTION AS TO WHAT WERE THE

9    PRACTICAL REALITIES OF THE MARKET IN 2003 AND 2004

10   AND SO FORTH.  AND I THINK, AND DISCOVERY MAY PROVE

11   US WRONG, BUT HARD DRIVE DIGITAL MUSIC PLAYERS WERE

12   RECOGNIZED AS A SEPARATE MARKET DURING THE HEART OF

13   THE COMPLAINT THE CLASS PERIOD.  IF THAT TURNS OUT

14   NOT TO BE THE CASE, OBVIOUSLY WE'LL HAVE TO AMEND.

15        THE COURT:  AND MANUFACTURERS YOU LIST IN

16   YOUR COMPLAINT ARE ALL MAKERS OF HARD DRIVE DIGITAL

17   MUSIC PLAYERS?

18        MR. KATRIEL:  THAT'S MY UNDERSTANDING.

19        THE COURT:  THERE ARE SIX OR SEVEN OF

20   THEM.

21        MR. KATRIEL:  THAT'S CORRECT, AND THE

22   SALIENT FEATURE ABOUT THAT, YOUR HONOR, IS THAT

23   NONE OF THEM MANAGE TO GARNER A MARKET SHARE

24   COMBINED OF LESS THAN 10 PERCENT.  EVER SINCE IT

25   CAME OUT IT CORNERED THE MARKET OF 90 PLUS AND WE

23

1    MAINTAIN THE REASON FOR THAT IS THAT THE ABILITY TO

2    PURCHASE DIRECTLY FROM I-TUNES INTO A PORTABLE

3    DIGITAL MUSIC PLAYER IS LIMITED TO IPOD.  IF APPLE

4    FINDS OUT AND I SAY IF IT FINDS OUT IN QUOTES

5    BECAUSE IT'S TECHNICALLY BASED.  IF THE SOFTWARE

6    RECOGNIZED THAT WHAT YOU'RE PLUGGING INTO YOUR

7    COMPUTER IS NOT AN IPOD, THERE WILL NOT BE A DIRECT

8    LOAD TO THAT DEVICE.

9            THE COURT:  YOUR TIME HAS RUN, BUT I WANT

10   TO GIVE YOU AN OPPORTUNITY TO VERBALLY DISCUSS YOUR

11   MONOPOLY CLAIM.

12           MR. KATRIEL:  THANK YOU, YOUR HONOR.  THE

13   MONOPOLY CLAIM HAS BEEN ASSAILED HERE BY MY

14   OPPONENT ON THE BASIS PRIMARILY OF TRINKO, THE

15   RECENT SUPREME COURT DECISION DECIDED EARLIER THIS

16   TERM.

17           BUT TRINKO DEALT WITH THE REFUSAL TO

18   DEAL, A REFUSAL TO COOPERATE WITH RIVALS AND IT, IT

19   DEALT NOT SURPRISINGLY IN THE HEAVILY REGULATED

20   TELECOMMUNICATIONS AGENCY WHERE STATUTE REGIMES

21   THAT FORCES INCUMBENT CARRIERS TO COOPERATE WITH

22   RIVALS.  OURS ALLEGES NOTHING OF THE KIND.  IT'S

23   NOT A BREACH OF A DUTY TO DEAL.

24           WHAT WE ALLEGE IS A CHANGE OF THE DESIGN

25   ITSELF FOR A PREDATORY PURPOSE.  AND THE NINTH

24

1    CIRCUIT ADDRESSED THAT IN THE COMPUTER PERIPHERALS

2    CASE AND THAT WAS THE NAME AT THE DISTRICT COURT

3    AND IT WAS AFFIRMED AS THE TRANSAMERICA NAME.

4         THE NINTH CIRCUIT SAYS, LOOK, IF YOU'RE A

5    MONOPOLIST, THERE'S A WAY THAT YOU CAN CONTINUOUSLY

6    ALTER THE DESIGN OF YOUR PRODUCT IN A WAY THAT'S

7    PREDATORY, THAT SERVES NO LEGITIMATE TECHNICAL

8    PURPOSE OTHER THAN TO KEEP COMPETITORS OUT AND YOU

9    KEEP CHANGING THE INTERFACES SO THAT NO OTHER

10   PERSON'S PERIPHERALS WILL WORK.  THAT WAS THE

11   ALLEGATION IN THE TRANSAMERICA CASE.

12        WE HAVE INTRODUCED ALLEGATIONS THAT ARE

13   NOT DISPUTED THAT REAL NETWORKS MANAGE TO ACTUALLY

14   PRODUCE AN ON-LINE MUSIC VENUE THAT WOULD

15   INTERCONNECT WITH THE IPOD SO THERE WOULD BE A

16   SOURCE OTHER THAN I-TUNES AND WE ALLEGE WHEN

17   I-TUNES FINDS OUT ABOUT THAT THEY CHANGE THE CODE

18   YET AGAIN.

19        NOW, THE CODE WASN'T CHANGED AT THAT

20   POINT FOR ANY TECHNICAL IMPROVEMENT.

21        THE COURT:  NOW, ARE YOU -- DO YOU HAVE

22   STANDING TO SUE ON BEHALF OF REAL NETWORKS HERE?

23        MR. KATRIEL:  WE HAVE STANDING IN THE

24   SENSE THAT ASSUME FOR A MINUTE THAT APPLE BURNED

25   DOWN REAL NETWORKS AND DESTROYED THEIR FACTORY SO

25

1    THEY COULD OBTAIN A MONOPOLY AND REAL NETWORKS

2    COULD SUE AND WE COULD SUE FOR DIRECT OVERCHARGES.

3    EVERY CONSUMER MONOPOLIZATION CASE IS DONE.  BOTH

4    HAVE STANDING TO SUE.  THE BUSINESS SUES FOR LOST

5    BUSINESS AND THE CONSUMERS SUE FOR COMPETITIVE

6    PRICING AND THAT'S WHAT WE ALLEGED.  IT'S NO

7    DIFFERENT THAN IF APPLE WENT TO ON-LINE MUSIC

8    STORES AND FACTORIES AND SAID NOW WE'RE THE ONLY

9    GAME IN TOWN.  SURE THEY COULD HAVE SUED FOR THEIR

10   LOST BUSINESS BUT WE AS CONSUMERS WOULD HAVE

11   STANDING TO SUE FOR THE COMPETITIVE PRICE.

12           THE COURT:  ISN'T THERE A .49 VERSUS

13   .99 CENT PER SONG SERVICE AVAILABLE THAT CONSUMERS

14   COULD USE OTHER THAN I-TUNES?

15           MR. KATRIEL:  THAT WAS THE REAL NETWORKS

16   AND THAT'S --

17           THE COURT:  AND IT'S GONE.

18           MR. KATRIEL:  IT'S GONE FOR DIRECT PLAY

19   ON THE IPOD AND THAT'S THE REASON WE MAINTAIN THEY

20   SHUT IT DOWN.

21           THE COURT:  BUT IT'S NOT GONE FOR PLAY.

22   IT'S THE TERM DIRECT PLAY.  I HAVE TO FIND THAT YOU

23   NEED TO BE ABLE TO GO DIRECTLY AND THAT STATES A

24   CLAIM.  IF I DECIDE THAT PLAYING IS SUFFICIENT, YOU

25   DON'T HAVE A CLAIM.

26

1          MR. KATRIEL:  WELL, IN A SENSE THAT'S

2     CORRECT BUT I WOULD SHARPEN IT THIS WAY.  THE,

3     THE -- HOW MUCH DO YOU HAVE TO SPEND TO BE ABLE TO

4     GET AROUND THE TIE IS THE WAY WE LOOK AT IT.

5          YOUR HONOR GAVE THE EXAMPLE OF THE

6     PHOTOCOPIER MACHINE FOR KEY LOCK IN THE SERVICE.

7     SO YOU CAN'T DO IT.  SO YOU'RE COERCED BECAUSE YOU

8     CAN'T DO IT UNLESS YOU HAVE THE KEY FROM THE

9     MANUFACTURER.

10          BUT I WOULD IMAGINE THAT YOU COULD HIRE

11    SOMEBODY TO CRACK THAT KEY AND THE QUESTION IS IF

12    YOU HAVE TO HIRE SOMEONE FOR $10,000 TO UNLOCK THAT

13    WITH THAT KEY, IS IT A TIE?  HOW MUCH DO YOU HAVE

14    TO SPEND?  BECAUSE THE POINT THE MARKET REALITIES

15    IS THAT YOU WON'T SPEND IT.  HERE THE REALITIES IS

16    THAT.  YOU'RE NOT GOING TO BUY A $49 CD BURNER TO

17    BUY A .49 SONG.

18          THE COURT:  NOW, LET ME ASK ONE QUESTION,

19    I'M INCLINED TO GRANT THE MOTION BUT AT THE SAME

20    TIME WORRIED I SHOULD ALLOW YOUR COMPLAINT AND WAIT

21    FOR THE INEVITABLE MOTION SO I COULD HAVE MORE

22    INFORMATION BECAUSE I HAVE TO ACCEPT, AS I SAID,

23    THE WELL PLEADED FACTS AS TRUE FOR PURPOSES OF THIS

24    MOTION AND IF I'M IN SUMMARY JUDGMENT MODE THEN I

25    AM GOING TO GET MORE INFORMATION FROM YOU ALL.

27

1                  BUT AS I SAID, I COULD TAKE JUDICIAL

2       NOTICE OF CERTAIN FACTS.  YOU HAVE CRAFTED A

3       COMPLAINT THAT WHERE THE MUSIC THAT IS INVOLVED

4       HERE IS ALL DIGITAL MUSIC WHICH IS DOWNLOADED.

5                  WHY SHOULD THE COURT IGNORE THE MARKET

6       FOR USING THE DEVICE, THE IPOD FOR CD'S?  WOULDN'T

7       IT BE THE SAME AS ANY OTHER DEVICE IN THAT RESPECT?

8       IN OTHER WORDS, IF I HAVE A COLLECTION OF MUSIC AND

9       WANT TO TAKE THEM PORTABLE, NO ADDITIONAL

10      IMPEDIMENTS ARE INTRODUCED BY APPLE THAN ANY OTHER

11      VENDOR OF THESE DEVICES; IS THAT CORRECT?

12                 MR. KATRIEL:  THAT'S CORRECT, YOUR HONOR,

13      AND WE ADDRESSED IT IN THE COMPLAINT IN THIS SENSE.

14      THE WHOLE THRUST BEHIND A SEPARATE MARKET FOR

15      ON-LINE DIGITAL MUSIC FILES IS THAT YOU CAN BUY

16      THEM SEPARATELY AND PAY PER TRACK, PAY .49, .99 AND

17      MIX AND MATCH.  YOUR SELECTION OF CD'S, DEPENDING

18      ON WHEN YOU PURCHASED THEM, YOU COULD HAVE PAID AS

19      MUCH AS $18, $15, $12 BECAUSE YOU WERE REQUIRED TO

20      BUY THE WHOLE ALBUM.  A MARKET AROSE BECAUSE THE

21      CONSUMERS FEEL THEY WERE GETTING TAKEN ADVANTAGE

22      OF.  WHEN THEY LIKED ONE SONG THEY WERE FORCED TO

23      PAY THE $12 OR $14.  THE FACT THAT YOU CAN TAKE

24      YOUR ALREADY PURCHASED AND PUT IT ON AN IPOD

25      DOESN'T SOLVE THE PROBLEM.  THE CONSUMER NEED HERE

28

1    IS THAT THIS MARKET ADDRESSES YOUR ABILITY TO BUY

2    THAT SINGLE SONG AND PUT IT ON YOUR HARD DRIVE

3    MUSIC PLAYER WHILE ONLY PAYING FOR THAT ONE SONG SO

4    THE FACT THAT YOU CAN MAKE OTHER USES OF YOUR IPOD.

5    YOU CAN USE IT AS A PAPER WEIGHT.  THAT DOESN'T

6    SOLVE THE PROBLEM THAT THE PRIMARY USE OF THE IPOD

7    IS DISABLED IF YOU DON'T BUY FROM I-TUNES AND VICE

8    VERSA.

9           THE COURT:  WHAT PRIMARY USE IS DISABLED?

10          MR. KATRIEL:  THE PRIMARY USE OF BEING

11   ABLE TO DIRECTLY LOAD A SONG FROM THE INTERNET THAT

12   YOU PURCHASED, THE DIGITAL MUSIC FILE FROM THE

13   INTERNET.

14          THE COURT:  AGAIN, THE TERM -- YOU CAN

15   LOAD A SONG THAT YOU PURCHASE SINGULARLY INTO AN

16   IPOD BUT YOU HAVE TO GO THROUGH THE EXTRA STEP.

17   YOU CAN'T DO IT DIRECTLY.

18          MR. KATRIEL:  JUST FOR THE RECORD, I'M

19   NOT CONCEDING THAT.  I'M LISTENING TO WHAT

20   MR. MITTELSTAEDT REPRESENTS.  CERTAINLY APPLE

21   DOESN'T MAKE THAT CLEAR ON THEIR OWN WEB SITE.

22          THE COURT:  THAT'S WHY I ASKED THE

23   QUESTION I JUST ASKED.  IN OTHER WORDS, IF I HAVE

24   MY CD COLLECTION AND I'M PUTTING IT INTO AN IPOD,

25   YOU DON'T CITE ANY ADDITIONAL IMPEDIMENTS.

29

1         IF I'M PURCHASING MUSIC FROM SOME OTHER

2    VENDOR AND PUTTING IT ON A CD, I'M PUTTING IN THE

3    PRECISE SITUATION WHERE I PURCHASE THE CD.  I HAVE

4    THE MUSIC IN ONE FORMAT AND I PURCHASED IT .49 A

5    SONG OR .99 A SONG AND NOW I WANT TO PLAY IT ON MY

6    IPOD.  IF THE CONSUMER IS ABLE TO DO -- TO TAKE A

7    CD AND PUT IT ON, THEN THE CONSUMER IS IN PRECISELY

8    THE SAME SITUATION AS IF THE PERSON WANTS TO TAKE

9    ONE SONG AT A TIME AS OPPOSED TO BUYING A WHOLE CD.

10        MR. KATRIEL:  THERE'S TWO QUESTIONS, TWO

11   REASONS WHY THAT'S NOT NECESSARILY THE CASE.  THE

12   FIRST IS THAT THERE'S AN OPEN QUESTION AS TO

13   WHETHER THE CODES, THE DIGITAL RIGHTS MANAGEMENT

14   CODES WHEN THE SOURCE ORIGINATES FROM I-TUNES

15   REMAIN AFTER YOU BURN INTO IT A CD.

16   MR. MITTELSTAEDT GAVE HIS ANSWER THAT IT'S ERASED

17   AND I DON'T KNOW THAT THE SECOND IS WHEN YOU BUY

18   YOUR CD OFF A STORE YOU DON'T NEED IT.  TO ACHIEVE

19   THAT CIRCUMVENTION OF THE TIE, YOU NEED ANOTHER

20   PIECE OF EQUIPMENT WHICH AN IPOD USER IS NOT FORCED

21   TO BUY AND THE ONLY REASON YOU'RE FORCED TO BUY

22   THAT PIECE OF EQUIPMENT IS BECAUSE YOU NEED THAT TO

23   CIRCUMVENT THAT TECHNOLOGICAL --

24        THE COURT:  I UNDERSTAND YOUR ARGUMENT.

25        MR. MITTELSTAEDT:  TWO MINUTES.

30

U.S. COURT REPORTERS

1          THE COURT:  YES, SINCE IT'S YOUR MOTION

2     I'LL GIVE YOU A BRIEF REBUTTAL.

3          MR. MITTELSTAEDT:  FIRST OF ALL, THIS

4     IPOD HOLDS ABOUT 10,0000 SONGS.  IT ALSO HOLDS

5     PHOTOS, CONTACT INFORMATION AND SCHEDULING AND SO

6     FORTH.

7          IF SOMEBODY IS GOING TO FILL THIS UP FROM

8     I-TUNES MUSIC STORE, THAT'S ABOUT $10,000 AND

9     UNFORTUNATELY FOR APPLE --

10         THE COURT:  DO YOU ADVERTISE THAT FACT?

11         MR. MITTELSTAEDT:  NAPSTER DOES.

12         THE COURT:  THAT'S AN INCREDIBLE NUMBER.

13         MR. MITTELSTAEDT:  WELL, IT'S 10,000

14    TIMES 99 ROUNDED.  THE POINT BEING IS THAT THERE

15    ARE MULTIPLE USES FOR THIS IPOD AND THAT'S WHY

16    SOMEBODY IS REQUIRED TO DOWNLOAD MUSIC FROM ANY

17    MUSIC STORE.

18         I THINK AS A MATTER OF LAW, YOUR HONOR,

19    THE COERCION ELEMENT IS NOT SATISFIED SIMPLY BY A

20    COMPANY MAKING A PRODUCT THAT WORKS BETTER WITH ITS

21    OTHER PRODUCTS PARTICULARLY WHEN WE'RE ONLY TALKING

22    ABOUT ONE USE OF THE PRODUCT.

23         THE COURT:  YOU STOOD UP SO LET ME TAKE

24    THIS OPPORTUNITY.  WHY SHOULDN'T I WAIT AND WHY

25    SHOULDN'T I LOOK AT THIS AS A COMPLAINT THAT

31

 1    ALLEGES THINGS THAT ULTIMATELY MAY NOT BE ABLE TO

 2    BE PROVED, NAMELY, THAT YOU CAN DO IT IN A WAY THAT

 3    DOESN'T VIOLATE ANTITRUST LAWS AND LEAVE IT TO THE

 4    MOTION FOR SUMMARY JUDGMENT?

 5         IN OTHER WORDS, AREN'T I SAFER ALLOWING

 6    THIS COMPLAINT BECAUSE I'M STARTING TO WORRY THAT

 7    I'M SAYING TOO MUCH THAT I KNOW TO EXIST BEYOND

 8    WHAT IS ALLEGED IN THE COMPLAINT?

 9         MR. MITTELSTAEDT:  WELL, I THINK THE

10    COURT CAN TAKE JUDICIAL NOTICE WHAT EVERYBODY KNOWS

11    INCLUDING WHAT JUSTICE SOUTER KNOWS FROM THE BENCH

12    AT THE SUPREME COURT BUT MORE THAN THAT, MORE THAN

13    THAT I THINK THE COMPLAINT GIVES THE COURT ENOUGH

14    COMFORT BECAUSE IT ALLEGES THE DIRECT LIMITATION

15    AND IT DOES THAT IN PARAGRAPH 39.  IT SAYS SONGS

16    FROM I-TUNES MUSIC STORE CAN BE PLAYED ON COMPUTERS

17    AND CD PLAYERS.  THAT'S PARAGRAPH 42.

18         IT SAYS IPOD'S DIRECTLY PLAY MUSIC FROM

19    I-TUNES.  THAT'S PARAGRAPH 9.

20         AND SO WHAT IT IMPLIES, WHAT IT ADMITS IS

21    THAT INDIRECTLY CONSUMERS CAN PLAY MUSIC ON HERE

22    FROM ANY SOURCE AND CAN PLAY MUSIC FROM I-TUNES

23    MUSIC STORE ON ANY SOURCE.  SO IT'S NOT A MATTER OF

24    THE COURT SIMPLY USING WHAT EVERYBODY KNOWS TO BE

25    TRUE.  IT'S BASED ON THE COMPLAINT.

32

1           AND WHEN ONE -- IT'S A MATTER OF LAW THAT

2    THERE'S NEVER BEEN A TYING CASE THAT FINDS AN

3    UNLAWFUL TIE WHERE THERE'S NO EXPRESS REQUIREMENT

4    OR THERE'S NO REQUIREMENT TO BUY A PACKAGE AS A

5    MATTER OF PRICING POLICY AND WHERE THE ONLY CLAIM

6    AT MOST IS THAT IF YOU WANT TO USE IT FOR ONE

7    PARTICULAR USE AND YOU WANT TO DO IT DIRECTLY

8    RATHER THAN INDIRECTLY, THEN YOU HAVE TO USE A

9    COMPLIMENTARY PRODUCT.  THERE'S NEVER BEEN A CASE

10   THAT GOES THAT FAR.

11          AND THEN ON THE SECOND CLAIM, THE

12   MONOPOLIZATION REFUSAL TO DEAL CLAIM, WHAT THEY

13   WOULD HAVE TO DO IS TO COME BACK IN THE COMPLAINT

14   AND ALLEGE SOME VOLUNTARY COURSE OF DEALING AND I

15   THINK AS A MATTER OF LAW THE COURT CAN LOOK AT

16   PARAGRAPH 47 WITH RESPECT TO REAL NETWORKS AND

17   CONCLUDE BASED ON THE WAY THAT THEY ALLEGE IT THAT

18   THAT'S NOT A PREEXISTING VOLUNTARY COURSE OF

19   CONDUCT WHERE APPLE WAS DOING BUSINESS WITH

20   REALTIME.

21          AND THEN FINALLY ON PARAGRAPH 44, THEY

22   SAY STEADFASTLY REFUSED TO LICENSE TAKING THEM OUT

23   OF TRINKO.  THANK YOU, YOUR HONOR.

24          THE COURT:  MATTER SUBMITTED.  THANK YOU

25   BOTH.

33

1               (WHEREUPON, THE PROCEEDINGS IN THIS

2     MATTER WERE CONCLUDED.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                        U.S. COURT REPORTERS

1

2

3

4                    CERTIFICATE OF REPORTER

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE, INCLUSIVE, CONSTITUTED A TRUE, FULL

15   AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN

16   AS SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23                    IRENE RODRIGUEZ, CSR, CRR
                      CERTIFICATE NUMBER CSR 8074

24

25