1  Michael D. Braun (167416)
   BRAUN LAW GROUP, P.C.
2  12400 Wilshire Boulevard
   Suite 920
3  Los Angeles, CA 90025
   Tel:    (310) 442-7755
4  Fax:    (310) 442-7756
   E-mail: service@braunlawgroup.com
5
   Roy A. Katriel *(Admitted Pro Hac Vice)*        Brian P. Murray
6  THE KATRIEL LAW FIRM, P.C.                       Eric J. Belfi *(Admitted Pro Hac Vice)*
   1101 30th Street, NW                             MURRAY, FRANK & SAILER LLP
7  Suite 500                                        275 Madison Avenue
   Washington, DC 20007                             Suite 801
8  Tel:    (202) 625-4342                           New York, NY 10016-1101
   Fax:    (202) 625-6774                           Tel:    (212) 682-1818
9  E-mail: rak@katriellaw.com                       Fax:    (212) 682-1892
                                                    Email:  ebelfi@murrayfrank.com
10
   **Attorneys for Plaintiff**
11

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14                  **SAN JOSE DIVISION**

15

16  THOMAS WILLIAM SLATTERY,           )   **CASE NO.: C05-00037 JW**
    Individually, And On Behalf Of All Others )
17  Similarly Situated,                )   **CLASS ACTION**
                                        )
18              Plaintiff,             )   **MEMORANDUM OF POINTS AND**
                                        )   **AUTHORITIES IN SUPPORT OF**
19        vs.                          )   **PLAINTIFF'S MOTION FOR LEAVE TO**
                                        )   **FILE A SECOND AMENDED**
20  APPLE COMPUTER, INC.               )   **COMPLAINT**
                                        )
21              Defendant.             )   **DATE:     May 8, 2006**
                                        )   **TIME:     9:00 a.m.**
22  _____ )   **CRTM:     8, 4th floor**

23

24                  **"REDACTED/PUBLIC VERSION"**

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT
CASE NO.: C05-00037 JW
\\Fileserver\shareddocs\BLG\APPLE\PLD-WPD\MPA re Leave to File SAC - Redacted.wpd

Dockets.Justia.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................ ii

INTRODUCTION ............................................................... 1

FACTUAL BACKGROUND ...................................................... 2

    Slattery's Original Complaint: ................................................. 2

    This Court's Ruling On Apple's Motion To Dismiss Slattery's Complaint, and Slattery's
    Timely Filing of the First Amended Complaint: .................................. 4

    Plaintiff's Proposed Second Amended Complaint ................................ 5

ARGUMENT .................................................................. 6

I.    PLAINTIFF MEETS THE "EXTREME LIBERALITY" STANDARD FOR
    ALLOWANCE OF THE FILING OF AN AMENDED COMPLAINT .......... 6

II.   PLAINTIFF'S REASONS FOR SEEKING AN AMENDMENT TO THE
    PLEADINGS JUSTIFY ALLOWANCE OF THE MOTION FOR LEAVE ...... 7

    A.    An Amendment To The Pleadings Was Explicitly Contemplated
        By The Court ..................................................... 7

    B.    Substituting Plaintiffs To Avoid A Conflict of Interest In Slattery's
        Status As Class Representative Is A Legitimate Basis To Amend The
        Complaint ........................................................ 9

III.  THE PROPOSED AMENDMENT IS NEITHER UNDULY PREJUDICIAL TO
    APPLE NOR FUTILE ................................................. 12

    A.    The Proposed Amendment Is Not Unduly Prejudicial ................. 12

    B.    The Proposed Amendment Is Not Futile ........................... 14

CONCLUSION ............................................................... 16

i

1

## <u>TABLE OF AUTHORITIES</u>

2

3

### FEDERAL CASES

4    *Besig v. Dolphin Boat and Swimming Club,*
     683 F.2d 1271 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5

     *DCD Programs v. Leighton,*
6    833 F.2d 183 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7    *Morongo Band of Mission Indians v. Rose,*
     893 F.2d 1074 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8
     *Raynor Brothers v. American Cyanamid,*
9    695 F.2d 382 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

10   *United States v. Webb,*
     655 F.2d 977 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11
     *Wagner v. Central Louisiana Electric Co., Inc.,*
12   102 F.R.D. 196 (E.D. La. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

13

### STATE CASES

14   *Carson v. Merrill, Lynch, Fenner & Smith Inc.,*
     1998 WL. 34076402 (W.D. Ark. Mar. 30, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15
     *Hill v. Priority Financial Servcs. Inc.,*
16   2000 WL. 1876582 (S.D. Ill. Dec. 22, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

17

### FEDERAL STATUTES

18   Fed. R. Civ. P. 8(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

19   Fed. R. Civ. P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

20

21

22

23

24

25

26

27

28

ii

1

**INTRODUCTION**

2    Pursuant to Federal Rule of Civil Procedure 15, plaintiff hereby moves for an order from this

3    Court granting him leave to file a Second Amended Complaint. The proposed amended complaint

4    is attached as Exhibit 1 to the Declaration of Michael D. Braun ("Braun Decl.") filed herewith. The

5    purpose for the filing of this proposed amended complaint is extremely limited.

6    First, in seeking to amend the complaint, plaintiff is merely adhering to this Court's prior

7    September 9, 2005 Order. Therein, in denying, in large part, Apple's motion to dismiss plaintiff's

8    complaint, the Court noted that although the original complaint pleaded apparently internally

9    inconsistent counts as is permissible under Federal Rule of Civil Procedure 8, "[a]t some

10   appropriate point in the litigation, an election might be necessary. *Slattery v. Apple Computer, Inc*,

11   No. 05-cv-37, 2005 WL 2204981, at \*3 (N.D. Cal. Sept. 9, 2005) (emphasis added)." Plaintiff now

12   seeks to file an amended complaint to make precisely such an election. Second, during the course of

13   class discovery, Slattery and his counsel have learned that Slattery has an irreconcilable conflict

14   between his duties as a criminal defense lawyer and his duties as a putative class representative. As

15   a result, plaintiff's counsel also seek to amend the complaint for the additional limited purpose of

16   substituting to new plaintiffs, Mr. Somtai Troy Charoensak and Ms. Mariana Rosen, in lieu of Mr.

17   Slattery so that this putative class action may proceed without regard to any conflict that would

18   apply to Mr. Slattery. Courts routinely grant leave to amend a complaint for this limited purpose.

19   The proposed filing of an amended complaint would also not unduly prejudice Apple in this

20   action. After all, were this motion denied, the two new proposed plaintiffs, Mr. Charoensak and

21   Ms. Rosen, could simply opt to file a brand new complaint against Apple without regard to

22   Slattery's existing action. Allowing the filing of a second amended complaint would streamline the

23   process and result in greater efficiency, as it would not require the action against Apple to start anew

24   from scratch. Further, no motion for class certification or summary judgment has been filed, and

25   Apple has: taken only a single deposition (that of Mr. Slattery); issued only a single set of document

26   requests (to which Mr. Slattery has responded); and, has still failed to respond to Slattery's

27   outstanding document requests and interrogatories. Moreover, plaintiff's counsel has offered to

28   make the two new plaintiffs available for prompt deposition by Apple's counsel, and to provide

1

1  responses and documents from these two new plaintiffs to the same discovery requests served by

2  Apple on Mr. Slattery.

3          Amendment of the complaint would also not be futile. In denying Apple's motion to

4  dismiss Slattery's original complaint, this Court has already held that plaintiff's claims properly

5  state legally cognizable claims, and those claims are borne out by the facts. Because denial of the

6  proposed amendment would accomplish nothing (as the two new plaintiffs could simply file a new

7  original complaint), plaintiff's motion should be granted and the second amended complaint should

8  be deemed filed as of the date of this Court's order granting the motion for leave to amend.

9                          **FACTUAL BACKGROUND**

10  **Slattery's Original Complaint:**

11          On January 3, 2005, Slattery filed this consumer antitrust putative class action complaint.

12  Slattery, a consumer of Apple's iPod portable hard-drive digital music player and of Apple's iTunes

13  online music store, alleged that there are two separate relevant markets pertinent to the action. The

14  first is the relevant market for the legal online sale of digital music files. Original Complt., at ¶ 11.

15  In his complaint, Slattery alleged with detailed specificity the reasons why such a relevant market

16  definition was proper (*id.* at ¶¶ 12-21), and further alleged that, through its iTunes online music

17  store, Apple possessed monopoly market power within this relevant market. *Id.* at ¶¶ 20-21. The

18  second relevant market alleged by Slattery is the market for portable hard-drive digital music

19  players. *Id.* at ¶ 11. Again, Slattery provided detailed reasons why this market was separate from

20  the market for other different music players like compact discs or cassette tapes. *Id.* at ¶ 22.

21  Slattery further alleged that, through its iPod device, Apple possessed monopoly market power in

22  this second market, as it possessed over 90 percent market share. *Id.* at ¶ 24.

23          Although a number of antitrust violations were pled in the original complaint, all related to

24  Apple's anticompetitive conduct in connection with the manner in which Apple forecloses iTunes

25  digital music files from being played on any portable hard-drive digital music player other than an

26  iPod, and in the manner in which Apple similarly forecloses music files downloaded from an online

27  music vendor other than iTunes from being played on the iPod. The original complaint alleged that

28  Apple adopted the open-source AAC music encoding format for its digital music files—an open-

2

1  source format used by many competing vendors and players that would allow iTunes' music files to

2  play on many different competing portable hard drive digital players. *Id.* at ¶¶ 37-45. Slattery

3  alleged that, in order to stifle competition, Apple altered this open code AAC format by embedding

4  within it a separate proprietary code that locks out portable hard drive digital music players other

5  than the iPod from playing iTunes music files, and that also locks out songs bought from online

6  music vendors other than iTunes from being played on the iPod. *Id.* at ¶¶ 26-27, 37-45. Apple calls

7  the AAC format that it has altered by embedding this proprietary lock-out code, an "AAC

8  Protected" format. *Id.* at ¶ 41.

9       The net effect of Apple's alteration and rigging of the AAC format in this manner is that in

10 order to directly play a music file purchased from Apple's iTunes (the monopolist) on a portable

11 hard-drive digital music player, the user must purchase *both* the online digital music file *and* the

12 portable hard-drive digital music player from Apple. *Id.* at ¶¶ 41-43. Apple's modification has

13 turned the AAC open-source format into the "AAC Protected" format, and, as Apple's own website

14 explains, "only iPod can play AAC protected songs." *Id.* at ¶ 41 and at Ex. A to Original Complt.

15 Likewise, Slattery alleged, due solely to Apple's actions, an owner of an Apple iPod digital player

16 who wishes to legally purchase online digital music files must also purchase such files only from

17 Apple's iTunes to the exclusion of any other competing online music vendor. *Id.* at ¶ 46. But for

18 Apple's rigging and alteration of the open source AAC format by inclusion of this lock-out code,

19 iTunes files would be readily playable on any number of competing portable hard-drive digital

20 music players other than the iPod, and owners of an iPod could have played online digital music

21 files purchased from any number of competing online music vendors other than Apple's iTunes

22 store. *Id.* at ¶¶ 43, 46.

23      In addition to Apple's initial alteration of the open-source AAC format into its proprietary

24 "AAC Protected" format, Slattery also documented how when RealNetworks, a major competing

25 online vendor of digital music files, managed to independently sell digital music files that would

26 play on Apple's iPod, Apple immediately proceeded to once again change its software code so as to

27 lock out RealNetwork's files from being played on Apple's iPod devices. *Id.* at ¶¶ 46-50. Thus,

28 even though RealNetworks' digital music files were being sold for half the price of Apple's iTunes

3

1  files, Apple's actions prevented consumers of the iPod (the monopoly product) from accessing these

2  competing music files. *Id.* at ¶¶ 48-49.

3      Counts I and II of the original complaint asserted tying claims under Section 1 of the

4  Sherman Act, claiming, respectively, that, by its actions, Apple tied the purchase of iTunes' files to

5  the purchase of an iPod, and vice versa. Thus, whereas Count I of the original complaint alleged

6  that the tying product was Apple's iTunes music store and that the tied product was the Aple iPod,

7  Count II alleged the precise opposite; namely, that the tying product was the Apple iPod and the

8  tying product was Apple's iTunes music store. Counts III and IV of the original complaint alleged

9  monopolization claims under Section 2 of the Sherman Act of each of the relevant product markets.

10 Counts V and VI alleged unlawful monopolization of each of the product markets under a theory of

11 monopoly leveraging because Apple had used its monopoly power in the online music sale market

12 to obtain or attempt to obtain a monopoly in the separate market for portable hard-drive digital

13 music players, and vice-versa. Counts VII-X alleged state and common law claims based on the

14 same underlying conduct as the federal antitrust claims.

15 **This Court's Ruling On Apple's Motion To Dismiss Slattery's Complaint, and Slattery's**
   **Timely Filing of the First Amended Complaint:**

16

17     Apple moved to dismiss Slattery's complaint in its entirety, claiming that Slattery had failed

18 to state any legally cognizable claim. On September 9, 2005, the Court issued its order denying, in

19 large part, Apple's motion and allowing the action to proceed. As to the tying claims, the Court

20 found that "all elements of a tying claim are met." *Slattery*, 2005 WL 2204981, at *3 (N.D. Cal.

21 Sept. 9, 2005). At the same time, the Court acknowledged that Counts I and II of the complaint,

22 both of which alleged tying claims, but with the tying and tied products reversed, seemingly pled

23 internally inconsistent counts that may call for a later election of claims by the plaintiff. As the

24 Court explained:

25     Both Claims include the same two allegedly separate products, the difference being
       the two products are switched as to which is the "tying" product and which is the
26     "tied" product. It seems inconsistent to allege that a product is both a "tying" product
       and a "tied" product. However, for pleading purposes, the Court will allow the
27     inconsistency to persist. At some appropriate point in the litigation, an election
       might be necessary.

28 *Id.*

4

1        Thus, the Court allowed the two counts pled in the alternative to proceed, as is explicitly

2    allowed for in Federal Rule of Civil Procedure 8, but expressed the possibility that the claims as

3    pleaded may eventually have to be narrowed down, so as to elect between one or the other.

4        With respect to the remaining counts of the original complaint, the Court found that,

5    "Plaintiff has sufficiently plead the elements for a claim of monopolization to a Fed. R. Civ. P.

6    12(b)(6) motion. Further, by satisfying the elements of a Sherman Act monopolization claim, the

7    Plaintiff has adequately plead, in Claim X, a common law claim of monopolization." *Id.* at *4.

8    Having found a proper pleading of a federal antitrust law, the Court also let stand Slattery's state

9    law claims under the Cartwright Act and Section 17200 of California's Business and Professions

10    Code, but found Slattery's unjust enrichment common law claim precluded by Slattery's allegation

11    of an existing contract between Apple and plaintiff. *Id.* at *5.

12        Finally, with respect to counts V and VI of the original complaint, which alleged attempted

13    monopolization through monopoly leveraging, the Court found that such claims could be asserted,

14    but that Slattery did not explicitly plead all of the technical elements of these claims. *Id.* at *4. The

15    Court granted Slattery leave to amend his original complaint for the purpose of including an explicit

16    pleading of these requisite technical elements of counts V and VI, if he chose to do so. *Id.*

17        Slattery timely filed his First Amended Complaint, whose sole change from the original

18    complaint amounted to the inclusion of the technical pleading requirements for counts V and VI of

19    the complaint, and the dropping of the unjust enrichment claim that the Court had dismissed with

20    prejudice. Apple filed its answer to the first amended complaint on October 18, 2005.

21    **Plaintiff's Proposed Second Amended Complaint**

22        As is self-evident from reviewing the proposed second amended complaint, which is

23    attached hereto as Exhibit 1 to the Braun Declaration, the proposed second amended complaint

24    similarly makes only limited technical amendments to the operative complaint. Specifically, the

25    proposed second amended complaint seeks to make an election of claims as between the two tying

26    claims, as the Court had initially contemplated. Thus, the proposed second amended complaint no

27    longer alleges that the same product is both the tying and the tied product. Instead, the complaint

28    now alleges that the iTunes music store is the tying product and the Apple iPod player is the tied

5

1  product. In keeping with this amendment, the proposed second amended complaint also no longer

2  alleges that Apple monopolized both of the relevant markets (i.e. the market for legal online digital

3  music file sales and the market for portable hard drive digital music players), but limits its

4  monopolization claim to the market for the legal sale of online digital music files.

5      In addition, the only other change made in the proposed second amended complaint is the

6  substitution of two new named plaintiff putative class representatives, Mr. Charoensak and Ms.

7  Rosen, in lieu of Mr. Slattery. As we detail more fully below, this amendment was brought about as

8  a result of a conflict of interest pertinent to Mr. Slattery that became apparent during the course of

9  class discovery.

10     Because two new plaintiffs are sought to be introduced as part of the proposed second

11  amended complaint, it is axiomatic that granting or denial of the instant motion would have no

12  undue prejudice on Apple. The reason is straightforward. Even assuming arguendo that the motion

13  were denied and a second amended complaint were not permitted, these two new plaintiffs could

14  still opt to file their own new complaints against Apple from scratch. Thus, whether or not the

15  motion is granted and the second amended complaint is allowed to be filed, Apple still faces the

16  exact same exposure. That, in addition to the fact, that the proposed second amended complaint's

17  amendments are truly limited and technical in nature militate strongly in favor of granting the

18  instant motion. Certainly, plaintiff's motion for leave to amend satisfies the "extreme liberality"

19  standard governing motions to amend the pleadings.

20                                    **ARGUMENT**

21  **I.    PLAINTIFF MEETS THE "EXTREME LIBERALITY" STANDARD FOR
         ALLOWANCE OF THE FILING OF AN AMENDED COMPLAINT**

22

23     Federal Rule of Civil Procedure governs motions for leave to file an amended complaint.

24  See Fed. R. Civ. P. 15(a). It provides that a plaintiff may amend the complaint once as of right, and

25  thereafter either by stipulation or by leave of court, which the rule emphasizes "shall be freely given

26  when justice so requires." Id.[1]

27  _____

28      [1] Prior to filing this motion, plaintiff's counsel sought Apple's agreement to a stipulation to
    file the proposed Second Amended Complaint, but Apple's counsel refused to agree to the

                                          6

1    Interpreting Rule 15's permissive stance toward amendment of the pleadings, the Ninth

2 Circuit has recognized that "the underlying purpose of Rule 15 [is] to facilitate decision on the

3 merits, rather than on the pleadings or technicalities," and as a result has consistently held that "Rule

4 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'"

5 *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981); *see Morongo Band of Mission Indians v.*

6 *Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (same); *DCD Programs v. Leighton*, 833 F.2d 183, 186

7 (9th Cir. 1987) ("This court has noted "on several occasions ... that the 'Supreme Court has

8 instructed the lower federal courts to heed carefully the command of Rule 15 F[ed].R.Civ.P., by

9 freely granting leave to amend when justice so requires.'")(quoting Gabrielson v. Montgomery

10 Ward & Co., 785 F.2d 762, 765 (9th Cir. 1986). As shown below, plaintiff's instant motion

11 assuredly meets this "extreme liberality" standard. Plaintiff's two reasons for the proposed limited

12 amendment—conforming the complaint to the Court's Order by making an election of claims, and

13 substituting named plaintiffs—both are bona fide reasons that have been recognized as legitimately

14 justifying amending a complaint.

15 **II.   PLAINTIFF'S REASONS FOR SEEKING AN AMENDMENT TO THE
     PLEADINGS JUSTIFY ALLOWANCE OF THE MOTION FOR LEAVE**

16

17    Slattery seeks leave to amend his complaint for two discrete reasons. First, Slattery seeks to

18 heed the Court's directive in its September 9, 2005 Order by making an election of claims. Second,

19 Slattery seeks to amend the complaint in order to substitute two named plaintiff class representatives

20 in lieu of Slattery's so that a conflict of interest pertinent to Slattery's status as named plaintiff will

21 not impede the class action complaint from going forward. Both of these reasons provide legitimate

22 justifications for granting the instant motion.

23    **A.   An Amendment To The Pleadings Was Explicitly Contemplated By The Court**

24    Slattery's motion to file an amended complaint should come as no surprise either to Apple or

25 to the Court. Indeed, in its September 9, 2005 Order, this Court explicitly contemplated that the

26 operative pleading would eventually have to be further amended at some later point so that the

27

28

---

stipulation.

7

1  plaintiff would make an election of claims.  Slattery's operative complaint pled in the alternative

2  that, for some counts, the tying market was the market for the legal sale of online digital music

3  sales, and the tied market was the market for portable hard-drive digital music players, while on the

4  other hand, for other hands, the complaint pled the precise opposite; namely, that the tying market

5  was the market for portable hard-drive digital music players while, and the tied market was the

6  market for the legal sale of online digital music files.  See Complaint and First Amended Complaint,

7  at Counts I and II.  As the Court recognized in denying Apple's motion to dismiss the complaint,

8  this practice of pleading in the alternative is specifically permitted by Federal Rule of Civil

9  Procedure 8, which provides in pertinent part that "[a] party may also state as many separate claims

10  or defenses as the party has regardless of consistency." Fed. R. Civ. P. 8(e)(2).

11      At the same time, the Court noted that, even though such alternative form of pleading was

12  permissible at the initial pleading stage, there may come a point where Slattery would have to make

13  an election of claims.  As the Court explained,

14      It seems inconsistent to allege that a product is both a "tying" product and a "tied"
       product.  However, for pleading purposes, the Court will allow the inconsistency to
15      persist.  At some appropriate point in the litigation, an election might be necessary.

16  Slattery, 2005 WL 2204981, at *3 (N.D. Cal. Sept. 9, 2005) (emphasis added).

17      Slattery's instant motion seeks to heed the Court's directive precisely by making the very

18  election that the Court contemplated may be required in this action.  In this regard, the proposed

19  Second Amended Complaint does away with the apparently inconsistent pleading of a single

20  product as being both the tying and tied product.  It is also readily apparent that making such an

21  election now, prior to a ruling on class certification, is particularly appropriate because the scope of

22  the claims actually asserted may impact the Court's decision on class certification or the definition

23  and/or scope of any class actually certified.  Given that the Court contemplated a further amendment

24  of the pleadings to provide for an election of claims, and that Slattery's proposed amendment

25  effectuates this election, there is no basis to claim, as Apple appears to do, that the motion to amend

26  should be denied.

27

28

8

**B.**    **Substituting Plaintiffs To Avoid A Conflict of Interest In Slattery's Status As Class Representative Is A Legitimate Basis To Amend The Complaint**

Slattery's second reason to seek leave to file an amended complaint is to allow him to substitute two new individuals, Mr. Charoensak and Ms. Rosen, as the named putative class representative plaintiffs in lieu of Slattery. As shown below, this substitution of plaintiffs is required due to a recently discovered conflict of interest that may impair Slattery's ability to adequately represent the interests of the absent class members in this litigation.

The Ninth Circuit and district courts within this circuit have repeatedly allowed amendment of the pleadings in order to substitute plaintiffs. *See e.g., Raynor Brothers v. American Cyanamid*, 695 F.2d 382, 383-85 (9th Cir. 1982) (affirming trial court's decision to grant motion to amend complaint in order to substitute plaintiffs and relating amended complaint to date of filing of original complaint); *Besig v. Dolphin Boat and Swimming Club*, 683 F.2d 1271, 1274 (9th Cir. 1982) (noting with respect to litigation history that plaintiff's, "attorney submitted a motion to amend the complaint to substitute plaintiffs and to add defendants. On April 20, 1978, the judge permitted the filing of the amended complaint."). Courts across the country are also in virtual unanimous agreement that a substitution of plaintiffs provides a legitimate basis for amending a complaint. *See, e.g., Hill v. Priority Financial Servcs. Inc.*, 2000 WL 1876582 (S.D. Ill. Dec. 22, 2000) ("In our September 29, 2000 Entry Resolving Pending Motions, we granted Plaintiff leave to amend the Complaint to substitute Johnathan Hill as proposed class representative."); *Carson v. Merrill, Lynch, Fenner & Smith Inc.*, 1998 WL 34076402 (W.D. Ark. Mar. 30, 1998) (granting motion to amend complaint so as to substitute named class representative plaintiff); *Wagner v. Central Louisiana Elec. Co., Inc.*, 102 F.R.D. 196, 197 (E.D. La. 1984) (noting that "the Court subsequently granted plaintiffs leave to amend the proposed definition of the class and to substitute named plaintiffs and proposed class representatives.").

Here, allowing the substitution of plaintiffs is especially proper given the class action status of the filed complaint. The named plaintiff must be able to not only litigate his own interests, but must also be able to adequately represent the interest of the absent class members. Because a conflict in the named plaintiff putative class representative may impair the rights of absent class

9

1  members not before the Court, it is especially appropriate to ensure that a proper plaintiff is

2  representing the interests of the class.

3    The limited discovery in this case has highlighted that Mr. Slattery faces an actual or

4  potential conflict of interest that may impair his ability to act as a plaintiff class representative in

5  this action.  Specifically, as part of its document requests propounded on Slattery, Apple demanded

6  that Slattery produce for forensic inspection his portable digital music players and his computer

7  hard-drives.  Slattery had no difficulty in complying with the request to produce his portable music

8  players, and did so, allowing Apple's technicians to make presumably forensic copies of the data

9  contents of all his players.  Apple's request to obtain a forensic copy Mr. Slattery's computer,

10  however, proved much more problematic.

11    The reason is that Mr. Slattery is a criminal defense attorney in private practice, and as such,

12  his computer stores or has stored confidential client files.  Understandably, therefore, Slattery

13  initially objected to any request by Apple to copy or inspect his computer.  At his deposition,

14  however, Apple's counsel again insisted on its demand to inspect Slattery's computer, and Slattery

15  again reiterated his reluctance, given the confidential attorney-client files contained therein.  The

16  following deposition exchange regarding Slattery's reluctance to hand over his computer containing

17  his confidential attorney-client files for Apple's inspection is illustrative:

18    Q: For counsel, I would like to arrange to get a copy of the CD's, as we've asked for,
    and then to inspect the hard – or image the hard drive on the  -- on the computers that
19      he uses, making due account for the privileged files that are on there.

20

21  **REDACTED**     **REDACTED**

22

23

24  **REDACTED**     **REDACTED**

25

26

27  **REDACTED**     **REDACTED**

28

10

REDACTED          REDACTED

REDACTED          REDACTED

REDACTED          REDACTED

Ex. 2 to Braun Decl. (Slattery Depo. Tr.) at 326:17- 328:11.

Since he was deposed, Slattery has gone back and verified that his computer does, indeed, contain protected and/or privileged attorney-client material. He has also sought consent from his clients and law firm to provide his computer containing these files for Apple's inspection and imaging, but that consent has been denied. That position is clearly understandable, given the potential liability implications of releasing computer files that contain client sensitive or privileged files to a third-party. Given the foregoing litigation demands propounded by Apple, Slattery is caught in an inherent conflict of interest between his duties as a criminal defense attorney to protect his client's confidential and privileged files, on the one hand, and responding to Apple's document requests in this class action litigation on the other. This conflict provides a bona fide basis for Slattery's motion to seek leave to amend his complaint so as to substitute new plaintiffs who are not subject to this unique conflict of interest.

Apple tries to unconvincingly downplay this obvious conflict by suggesting that Slattery's computer, which Apple seeks to image, contains only "a few work-related documents that he has on his home computer—documents that can be protected during the forensic inspection of his computer for music files." Ltr to Court from R. Mittelstaedt (Mar. 8, 2006), at 1.  But neither the quantity of the privileged attorney-client documents contained on Slattery's computer, nor Apple's counsel vague assertion that those privileged files "can be protected" serve to undo Slattery's conflict as a criminal defense attorney with duties and obligations to his own clients. As Slattery explained in his deposition, because Apple seeks to forensically image his computer hard drive, he has no

11

1  guarantee as to what files on his computer may read or recovered by Apple's imaging. Even files

2  that have been deleted may be recovered as part of a forensic imaging. In any event, absent consent

3  from his law firm and affected clients, which has been denied to Slattery, he simply cannot produce

4  his computer for Apple's inspection, and as such will be unable to comply with Apple's discovery

5  demands. Even were Apple to withdraw its demand to inspect Slattery's computer (which it has

6  steadfastly declined to do), that would still not alleviate Slattery's apparent conflict. His duty is to

7  adequately represent the interest of the absent class members.[2]

8      Slattery's conflict of interest is brought about by his unique position and duties as a criminal

9  defense lawyer. It is self-evident that are any number of putative class members that do not have

10  this type of disabling conflict involving attorney-client confidentiality duties. Given the uniqueness

11  of Slattery's situation, the proper course of conduct is to allow the class action litigation to proceed

12  with alternative named plaintiffs. The instant motion and proposed amended complaint seeks to do

13  just that by naming to new plaintiff class representative, Mr. Charoensak and Ms. Rosen.

14      As we show below, moreover, Slattery's proposed amendment is neither unduly prejudicial

15  to Apple nor futile.

16  **III.    THE PROPOSED AMENDMENT IS NEITHER UNDULY PREJUDICIAL TO**
          **APPLE NOR FUTILE**

17

18      **A.    The Proposed Amendment Is Not Unduly Prejudicial**

19      Slattery's motion to amend will not unduly prejudice Apple. The reason is self-evident.

20  Even assuming arguendo that the instant motion to amend were denied or had never been filed, the

21  two new proposed plaintiffs, Mr. Charoensak and Ms. Rosen, could always elect to file their own

22  new complaint against Apple from scratch. Thus, regardless of the outcome of this motion and

23  Slattery's plan for amendment, Apple would always be subject to facing the same claims from these

24

25      [2]  Regardless of Apple's discovery requests, Slattery's duty as a class representative may

26  call for him to produce his own computer file for inspection as evidence in support of his case and
that of the absent class members. Given his conflict of interest in producing his computer, however,

27  that option is effectively unavailable to Slattery and, thereby, to the absent class members. The

28  proper course is, therefore, to allow the inclusion of other named class representatives that do not
have this inherent but unique conflict of interest.

two new plaintiffs as are asserted in newly proposed Second Amended Complaint. Because Apple faces the exact same exposure with or without the instant motion, it can hardly claim to be prejudiced by the amended complaint. To the contrary, proceeding by way of an amended complaint, as opposed to having these new plaintiffs file new actions from scratch, will serve to streamline the process by not requiring the parties to waste valuable judicial resources in starting an identical action anew and "reinventing the wheel."

The foregoing realization should end the inquiry. Beyond that, however, the relatively early procedural posture of this case also precludes any finding of undue prejudice. Pursuant to the Court's scheduling order limiting the initial scope of discovery, merits discovery has not even begun in this action, nor has any motion for class certification been filed. With respect to class discovery, Apple has served only one set of document requests and has taken only a single deposition—that of Mr. Slattery. Plaintiff's counsel has already represented, that as part of the proposed amended complaint, the two new plaintiffs would also similarly be made available for prompt deposition by Apple's counsel at a mutually agreeable date, and that they would promptly offer responses to the same discovery requests propounded by Apple on Slattery. At the same time, Apple has yet to serve its responses to plaintiff's interrogatories and document requests.

Given this early procedural stage of the case, Apple can hardly lay claim to undue prejudice from this limited amendment of the complaint. By way of contrast, the Ninth Circuit has recognized that motions to amend a complaint so as to substitute plaintiffs have been granted even after the court adjudicated the parties' motion for summary judgment. *See Raynor Bros.*, 695 F.2d at 384, n.2 (noting that "[i]n Staren, the motion to substitute plaintiffs was made after defendant's motion for summary judgment had been granted against the original plaintiffs. The court reversed the grant of summary judgment and remanded for plaintiffs to amend the complaint and for trial."). Here, by contrast, the motion to amend is being made well before any summary judgment motions have even been scheduled, let alone adjudicated. Indeed, unlike Staren (where a motion to amend was also granted), in this action, the only dispositive motion to have been litigated—Apple's motion to dismiss the complaint—has been won by the plaintiff.

13

1       Given the early procedural posture of this case and the fact that Apple would face the precise

2   same complaint as is proposed to be filed here even if the motion to amend were to be denied,

3   Apple can lay no claim to any undue prejudice that would serve to defeat the instant motion.

4       **B.    The Proposed Amendment Is Not Futile**

5       This Court's prior ruling on Apple's motion to dismiss Slattery's complaint also makes clear

6   that there is no grounds for Apple to argue futility as a basis to deny the instant motion.  In its

7   September 7th Order, this Court found that the allegations of Slattery's complaint sufficed to state

8   legally cognizable claims.  Because all of the allegations of the proposed Second Amended

9   Complaint are verbatim identical to those found in Slattery's original complaint, there is plainly no

10  grounds to argue that the amendment would be futile.  Indeed, futility is typically an argument that

11  is used when a motion to dismiss the original complaint has been granted and the losing plaintiff

12  seeks to salvage that loss by seeking leave to amend the complaint.  Where, as here, the plaintiff,

13  has won the underlying motion to dismiss the original complaint, there is no basis to even argue

14  futility because the Court's Order on the original motion to dismiss the complaint, by definition,

15  defeats a futility argument.

16      Beyond the foregoing, however, Apple's own documents provide the requisite evidentiary

17  support for the claims asserted in the proposed Second Amended Complaint (which are also found

18  in the original complaint that this Court has already upheld).  The gravamen of the proposed Second

19  Amended Complaint, like that of the original complaint, is that songs purchased online from

20  Apple's iTunes store (the allegedly dominant player in the market for legal online music sales) can

21  only be directly played by Apple's iPod portable hard-drive digital music player.  Far from denying

22  this allegation, Apple's own website underscores that:

23          Not all digital music players can play AAC songs and only iPod can play AAC
        protected songs. . . . Songs purchased from the iTunes Music Store are encoded using

24          the AAC Protected format and cannot be converted to MP3 format.

25  Ex. A to First Amended Complaint, at ¶¶ 1, 3 (emphasis added).

26      Further, as part of the limited discovery that has been conducted to date in this action, on

27  January 30, 2006, Slattery propounded interrogatories and document requests on Apple.  Those

28  interrogatories addressed the heart of the complaint's allegation that only the iPod could be used to

14

play music files purchased from iTunes. By way of illustration, the following four interrogatories were propounded on Apple by plaintiff:

1.   Other than the iPod, identify by brand and model number and/or nameeach and every portable hard-drive digital music player that you contend is capable of playing DIGITAL MUSIC FILES purchased from iTMS without first altering in any way the DIGITAL MUSIC FILE (including without limitation altering and/or converting the file format, encryption format, Digital Rights Management codes or programs associated with the file).

2.   Other than the iPod, identify by brand and model number and/or name, each and every PORTABLE DIGITAL HARD DRIVE DIGITAL MUSIC PLAYER that is capable of playing DIGITAL MUSIC FILES encoded in Apple's "AAC Protected" format in that file's native form, without first altering the file in any way (including without limitation altering and/or converting the file format, encryption format, Digital Rights Management codes or programs associated with the file).

3.   Other than the iPod, identify by brand and model number and/or name each and every PORTABLE HARD-DRIVE DIGITAL MUSIC PLAYER that is capable of playing DIGITAL MUSIC FILES containing Apple's Fairplay Digital Rights Management in that file's native form, without first altering the file in any way (including without limitation altering and/or converting the file format, encryption format, Digital Rights Management codes or programs associated with the file).

4.   Do you contend that under the iTMS Terms of Service agreement, which is attached hereto as Ex. A, it is permissible for consumers who purchase a DIGITAL MUSIC FILE from iTMS that is subject to Apple's Fairplay Digital Rights Management to burn a copy of that file to a compact disc and rip or transfer that file back to the consumer's computer so that the file may be played in a digital portable hard-drive music player other than an iPod ?

5.   Do you contend that burning onto a compact disc a DIGITAL MUSIC FILE that is purchased from iTMS and "RIPPING" that file back into a computer so as to

15

1    circumvent Apple's Fairplay Digital Rights Management violates any of Apple's

2    Terms of Service, agreements, policies, licenses, rules, policies, and/or practice that

3    are or were in effect during any portion of the Class Period identified in the First

4    Amended Complaint in this action ?

5  Ex. 4 to Braun Decl., at Interrogatories 1-5.

6    Even though this limited interrogatory set, containing a total of only eight interrogatories,

7  was served on Apple on January 30th, to date, Apple has refused to provide any interrogatory

8  responses.  Apple has also similarly refused to provide any documents to Slattery's document

9  requests.  It has never served or filed formal objections to either.  Apple's baseless refusal to

10 respond to these basic and limited discovery interrogatories will be addressed by plaintiff in a

11 separate motion to compel, should that be necessary, but the point here, is that Apple cannot argue,

12 on the one hand that the complaint is baseless and the motion to amend futile, while at the same

13 time refusing to provide any responses to basic interrogatories that to go to the heart of the

14 complaint's allegations.

15    Because the proposed Second Amended Complaint is neither unduly prejudicial nor futile,

16 plaintiff's motion should be granted.

17                                  **CONCLUSION**

18    For the foregoing reasons, plaintiff's motion for leave to file a Second Amended Complaint

19 should be GRANTED.

20

21 Dated: March 23, 2006                 Michael D. Braun
                                         BRAUN LAW GROUP, P.C.
22

23
                              By:    S/ MICHAEL D. BRAUN
24                                   Michael D. Braun
                                     12400 Wilshire Boulevard
25                                   Suite 920
                                     Los Angeles, CA 90025
26                                   Tel:    (310) 442-7755
                                     Fax:    (310) 442-7756
27

28

                                         16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Roy A. Katriel
THE KATRIEL LAW FIRM, P.C.
1101 30th Street, NW
Suite 500
Washington, DC 20007
Tel:    (202) 625-4342
Fax:    (202) 625-6774

Brian P. Murray
Eric J. Belfi
MURRAY, FRANK & SAILER LLP
275 Madison Avenue
Suite 801
New York, NY 10016-1101
Tel:    (212) 682-1818
Fax:    (212) 682-1892

**Attorneys for Plaintiff**

17

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA                  )
                                     )ss.:
3      COUNTY OF LOS ANGELES          )

4          I am employed in the county of Los Angeles, State of California, I am over the age of 18 and
       not a party to the within action; my business address is 12400 Wilshire Boulevard, Suite 920, Los
5      Angeles, CA  90025.

6          On March 24, 2006, using the Northern District of California's Electronic Case Filing System,
       with the ECF ID registered to Michael D. Braun, I filed and served the document(s) described as:
7

       **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S**
8      **MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**
       **"REDACTED/PUBLIC VERSION"**
9
           The ECF System is designed to send an e-mail message to all parties in the case, which
10     constitutes service.  According to the ECF/PACER system, for this case, the parties served are as
       follows:
11
       Eric J. Belfi, Esq.                                        ebelfi@murrayfrank.com
12                                                                rak@katriellaw.com
       Roy A. Katriel, Esq.
13
       **Attorneys for Plaintiff**
14
       Caroline N. Mitchell, Esq.                                 cnmitchell@jonesday.com
15                                                                mlandsborough@jonesday.com
                                                                  cyip@jonesday.com
16
       Robert A. Mittelstaedt, Esq.                               ramittelstaedt@jonesday.com
17                                                                ybennett@jonesday.com
                                                                  arsand@jonesday.com
18
       Adam Richard Sand , Esq.                                   arsand@jonesday.com
19

20     **Attorneys for Defendant**

21         On March 24, 2006, I served the document(s) described as:

22     **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S**
       **MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**
23     **"REDACTED/PUBLIC VERSION"**

24

25

26     ///

27     ///

28     ///

1  by placing a true copy(ies) thereof enclosed in a sealed envelope(s) addressed as follows:

2  Jacqueline Sailer, Esq.
   MURRAY, FRANK & SAILER LLP
3  275 Madison Avenue
   Suite 801
4  New York, NY 10016
   Tel:    (212) 682-1818
5  Fax:    (212) 682-1892

6  **Attorneys for Plaintiff**

7      I served the above document(s) as follows:

8      BY MAIL. I am familiar with the firm's practice of collection and processing correspondence
   for mailing. Under that practice it would be deposited with U.S. postal service on that same day with
9  postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware
   that on motion of the party served, service is presumed invalid if postal cancellation date or postage
10 meter date is more than one day after date of deposit for mailing in an affidavit.

11     I further declare, pursuant to Civil L.R. 23-2, that on the date hereof I served a copy of the
   above-listed document(s) on the Securities Class Action Clearinghouse by electronic mail through the
12 following electronic mail address provided by the Securities Class Action Clearinghouse:

13                          **jcarlos@law.stanford.edu**

14     I further declare that I am employed in the office of a member of the bar of this Court at whose
   direction the service was made.
15
       I further declare under penalty of perjury under the laws of the United States that the above is
16 true and correct.

17     Executed on March 24, 2006, at Los Angeles, California 90025.

18

19                                      _____s/ LEITZA MOLINAR_____
                                             Leitza Molinar
20

21

22

23

24

25

26

27

28