# EXHIBIT A

Dockets.Justia.com

1  LERACH COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
2  JOHN J. STOIA, JR. (141757)
   BONNY E. SWEENEY (176174)
3  CHRISTOPHER M. BURKE (214799)
   655 West Broadway, Suite 1900
4  San Diego, CA  92101
   Telephone:  619/231-1058
5  619/231-7423 (fax)
   jstoia@lerachlaw.com
6  bsweeney@lerachlaw.com
   cburke@lerachlaw.com
7
   BONNETT, FAIRBOURN, FRIEDMAN
8    & BALINT, P.C.
   ANDREW S. FRIEDMAN
9  ELAINE A. RYAN
   TODD D. CARPENTER
10 2901 N. Central Avenue, Suite 1000
   Phoenix, AZ  85012
11 Telephone:  602/274-1100
   602/274-1199 (fax)
12 afriedman@bffb.com
   eryan@bffb.com
13 tcarpenter@bffb.com

14 Attorneys for Plaintiff

15                 UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                      SAN JOSE DIVISION

18 MELANIE TUCKER, On Behalf of Herself       )  No. C-06-04457-JW
   and All Others Similarly Situated,         )
19                                            )  CLASS ACTION
                          Plaintiff,          )
20                                            )  PLAINTIFF MELANIE TUCKER'S FIRST
            vs.                               )  SET OF REQUESTS FOR PRODUCTION
21                                            )  OF DOCUMENTS TO DEFENDANT
   APPLE COMPUTER, INC., a California         )  APPLE, INC.
22 corporation,                               )
                                              )
23                        Defendant.          )
                                              )
24

25 **PROPOUNDING PARTY**:        Plaintiff Melanie Tucker

26 **RESPONDING PARTY**:         Defendant Apple, Inc.

27 **SET NUMBER**:               One

28

1  TO:    DEFENDANTS AND COUNSEL OF RECORD

2          Pursuant to Fed. R. Civ. P. 34, Plaintiff Melanie Tucker requests defendant Apple, Inc. f/k/a

3  Apple Computer, Inc. ("Apple" or "defendant"), to produce and permit her counsel to inspect and

4  copy the documents described herein which are in Apple's possession, custody or control, at the law

5  offices of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 100 Pine Street, Suite 2600, San

6  Francisco, CA 94111.

7  **I.   DEFINITIONS**

8          1.    "Apple" means defendant Apple, Inc. and any of its predecessors, successors, parents,

9  subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic),

10  any of its present or former officers, directors, administrators, agents, employees, investigators,

11  accountants, attorneys and all other persons acting or purporting to act on its behalf.

12          2.    The "Big Four" refers to the largest four music recording companies. The companies

13  are Sony BMG, Warner Music Group, EMI, and Universal Music Group and any of their

14  predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or

15  business lines (foreign and domestic), any of their present or former officers, directors,

16  administrators, agents, employees, investigators, accountants, attorneys and all other persons acting

17  or purporting to act on their behalf.

18          3.    "Communication(s)"refers to any exchange of information by any means of

19  transmission, sending or receipt of information of any kind by or through any means including, but

20  not limited to, speech, writings, Documents, language (machine, foreign or otherwise) of any kind,

21  computer electronics or Electronic Data, electronic mail ("e-mail"), instant messages, voicemail,

22  sound, radio or video signals, telecommunication, telephone, teletype, facsimile, telegram,

23  microfilm, microfiche, photographic film of all types or other media of any kind.   The term

24  "communication" also includes, without limitation, all inquiries, discussions, conversations,

25  correspondence, negotiations, agreements, understandings, meetings, notices, requests, responses,

26  demands, complaints, or press, publicity or trade releases.

27          4.    "Concerning" shall mean constituting, analyzing, discussing, evaluating, estimating,

28  measuring, evidencing, reflecting, incorporating, effecting, including, or otherwise pertaining or

PLAINTIFF MELANIE TUCKER'S FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT APPLE, INC. - C-06-04457-JW                                    - 1 -

relating, either directly or indirectly, or being in any way logically or factually connected with the subject matter of the inquiry or Request. Requests for Documents Concerning any subject matter include Documents Concerning communication regarding that subject matter.

5.    "Cost of Manufacturing" refers to the manufacturing standard cost figure that Apple refers to in Note 11 of the Notes to Consolidated Financial Statements, located on page 110 of Apple's Annual Report (10-K), filed with the Securities and Exchange Commission on or about December 29, 2006.

6.    "Current Cost of Manufacturing" means refers to the cost of manufacturing using estimates from the quarter ending July 1, 2006, or a more recent quarter if available.

7.    "Digital Music File" means a computer file containing audio data, regardless of format, including without limitation, AAC, FLAC, MP3, Real Audio, WAV and WMA, that can be played on a computer or other device that utilizes computer software (*e.g.*, a Digital Music Player).

8.    "Digital Music Player" means any device that can be easily transported, weighs less than 12 ounces, is capable of playing a digital music file, can store more than 150 music files assuming an average file size of 3.0 megabytes but does not employ external media such as compact discs, cartridges, cassettes or compact flash cards.

9.    The term "Document(s)" is intended to be interpreted in the broadest possible sense and includes, but is not limited to, all Electronic Data and all Communications which are stored or retrievable or recorded in any manner and also includes, without limitation, any writing or other record of information or images, including, but not limited to, print, handwriting, photographs, film, recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge slips, letters, electronic mail ("e-mail"), compact discs, CDROM discs, magnetic tape, videotape, magnetic or optical disks, floppy disks, PowerPoint or other presentation software systems, metadata belonging to any electronic Document, telegrams, mailgrams, correspondence, notes and minutes of meetings, conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars,

1  appointment books, circulars, charts, transcripts, news releases, trade releases, advertisements, press

2  books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards,

3  computer printouts and data, telecopier or facsimile transmissions and printouts, letters of credit,

4  stock certificates and securities. The term "Document" also includes preliminary drafts or revisions

5  or copies of any such Document if the copy is in any way different from the original, now in your

6  possession, custody or control, or in the possession, custody or control of your advisors, agents,

7  employees, servants, representatives, trustees, counsel or other persons acting or purporting to act on

8  your behalf.

9      10.    "DRM" refers to digital rights management software and technology, *e.g.*, Apple's

10  FairPlay.

11      11.    "Electronic Data" refers to any original and any non-identical copies (whether non-

12  identical because of notes made on copies or attached comments, annotations, marks, transmission

13  notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital or

14  other programs (whether private, commercial, or work-in-progress), programming notes or

15  instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use

16  of any software program, including word processing Documents, spreadsheets, database files, charts,

17  graphs and outlines, electronic mail ("e-mail"), personal digital assistant ("PDA") messages, instant

18  messenger messages, operating systems, source code of all types, programming languages, linkers

19  and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code

20  keys, pull down tables, logs, file layouts and any and all miscellaneous files or file fragments,

21  regardless of the media on which they reside and regardless of whether said Electronic Data consists

22  of an active file, deleted file or file fragment. "Electronic Data" also includes any and all items

23  stored on computer memory or memories, hard disks, floppy disks, zip drives, CDROM discs,

24  Bernoulli Boxes and their equivalents, magnetic tapes of all types and kinds, microfiche, punched

25  cards, punched tape, computer chips (including, but not limited to, EPROM, PROM, ROM or RAM

26  of any kind) on or in any other vehicle for digital data storage or transmittal, files, folder tabs, or

27  containers and labels appended to or associated with any physical storage device associated with

28  each original and each copy.

1    12.    The term "Financial Statements" includes, but is not limited to, interim, final, pro

2    forma, actual, projected, complete, or partial, annual, quarterly, monthly, weekly or otherwise,

3    audited or unaudited, budgets, budget plans, balance sheets, schedules of direct costs, schedules of

4    miscellaneous income, schedules of general services, fiscal serviceman administrative services,

5    statements of earnings and earnings per share, income statements, cash flow statements, statement of

6    revenues and statements of expenses, all notes or other commentary concerning any of the foregoing

7    and all underlying work papers and all drafts used in connection with the preparation of any of the

8    foregoing.

9    13.    "iTMS" or "iTunes Music Store" or "Apple's Online Music Store" means Apple's

10   iTunes Store, previously called iTunes Music Store.

11   14.    "iPod" refers to the Digital Music Players manufactured by Apple, including iPod,

12   iPod photo, iPod mini, iPod nano and iPod shuffle.

13   15.    "Online Music Store" relates to any place on the Internet from which Digital Music

14   Files may be purchased and downloaded.

15   16.    The term "Telephone Records" includes, without limitation, telephone directories,

16   rolodexes, messages, telephone logs, recordings of telephone conversations and telephone bills (local

17   and long distance).

18   17.    "You" or "Your" refers to Apple.

19   **II. INSTRUCTIONS**

20   1.    Words used in the plural include the singular, and words used in the singular include

21   the plural.

22   2.    The words "and" and "or" shall be used interchangeably and interpreted in the most

23   inclusive manner possible.

24

25   3.    All Documents shall be produced in the order they are kept in the ordinary course of

26   business, and shall be produced in their original folders, binders, covers or containers, or facsimile

27   thereof.

28

4.      These requests relate to all Documents which are in your possession, custody or control.

5.      You shall produce the original of each Document described below or if the original is not in your custody, then a copy thereof, and in any event, all non-identical copies which differ from the original or from the other copies produced for any reason, including, but not limited to, the making of notes thereon.

6.      If production of Documents is withheld on the ground of privilege, as to each such withheld Document provide the following information no later than the first date on which Documents are produced:

    (a)      which privilege is claimed;

    (b)      a precise statement of the facts upon which said claim of privilege is based;

    (c)      the following information describing each purportedly privileged document:

        (i)      its nature (*e.g.*, agreement, letter, memorandum, tape);

        (ii)     the date it was prepared;

        (iii)    the date it bears;

        (iv)     the date it was sent;

        (v)      the date it was received;

        (vi)     the name, employer and job title of the person preparing it;

        (vii)    the name, employer and job title of the person sending it;

        (viii)   the name, employer and job title of each person to whom it was sent or was to have been sent, including all addressees and all recipients of copies;

        (ix)     a statement as to whom each identified person represented or purported to represent at all relevant times; and

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        (x)      a description of the place where each copy of that Document is kept, including the title or description of the file in which said Document may be found and the location of such file.

    7.      Documents shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the natural person in whose possession they were found and the business address of each Document's custodian(s).

    8.      Whenever a Document is not produced in full or is produced in redacted form, so indicate on the Document and state with particularity the reason or reasons it is not being produced in full and describe with particularity those portions of the Document which are not being produced.

    9.      If a Document responsive to these requests was at any time in your possession, custody or control but is no longer available for production, as to each such Document state the following information:

        (a)      whether the Document is missing or lost;

        (b)      whether the Document has been destroyed;

        (c)      whether the Document has been transferred or delivered to another person and, if so, at whose request;

        (d)      whether the Document has been otherwise disposed of; and

        (e)      the circumstances surrounding the destruction of the Document and the date of its destruction.

    10.      These document requests are deemed continuing in nature and any Documents or information secured after the service of your responses, which would have been included in the responses had they been known or available at the time of the response, must be supplied in supplemental responses as required by the Federal Rules of Civil Procedure.

PLAINTIFF MELANIE TUCKER'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT APPLE, INC. - C-06-04457-JW        - 6 -

11.     No Document request shall be construed to include individual transactional Documents, unless otherwise specified.

## III.     RELEVANT TIME PERIOD

1.     Unless otherwise indicated, these requests relate to the period between January 1, 2000 and the present (the "Relevant Time Period"). Your responses should reflect information for that entire period. Where your responses relate to only a portion of that period, indicate the date or dates to which your response relates.

## IV.     REQUESTS FOR THE PRODUCTION OF DOCUMENTS

REQUEST NO. 1:

All Documents Concerning or mentioning the market for Apple's iPods.

REQUEST NO. 2:

All Documents Concerning or mentioning the market for video files purchased from Apple's iTunes Store.

REQUEST NO. 3:

All Documents Concerning or mentioning the market for audio files purchased from Apple's iTunes Store.

REQUEST NO. 4:

All Documents Concerning or mentioning the Digital Millennium Copyright Act.

REQUEST NO. 5:

All Documents Concerning or mentioning DRM or other digital media files or copy protection methods other then FairPlay.

REQUEST NO. 6:

All Communications between you and Microsoft Corporation Concerning or mentioning licensing or royalty agreements and/or payments Concerning media formats, including audio, image, and video file formats, and all Communications with Microsoft Corporation concerning Digital Music Players and/or DRM.

1  REQUEST NO. 7:

2      All Communications between you and RealNetworks, Inc.; Archos S.A.; the companies over

3  the class period that have controlled Rio (including D&M Holdings U.S., Inc); and Creative

4  Technologies Ltd., and memos Concerning, analyzing, discussing or answering these

5  Communications.

6  REQUEST NO. 8:

7      All Documents and correspondence Concerning agreements to license DRM software,

8  methods, or other DRM related intellectual property, including the agreements themselves and

9  Concerning any request by any company to license Apple's FairPlay DRM.

10  REQUEST NO. 9:

11      All Documents Concerning exporting, copying, burning, transferring, converting or "ripping"

12  of audio files from one audio format to another. For example, the conversion of AAC Files to MP3

13  files.

14  REQUEST NO. 10:

15      Full copies of the spreadsheets for which excerpts were produced to Somtai Troy Charoensak

16  and marked APPLE CHAR 00059 through APPLE CHAR 00066 and all Documents used in the

17  production of these Documents, including but not limited to all Profit and Loss Statements for all

18  iPod models.

19  REQUEST NO. 11:

20      All Documents and answers Apple produced, and all transcripts of depositions taken in

21  litigation or investigations involving the iPod, iTunes and/or iTunes Store brought by the

22  governments of France, Germany, Norway, Sweden, Finland, Denmark, the United Kingdom, the

23  European Union/European Commission, the French consumer rights organization UFC Que Choisir

24  and as a Third Party to the *In re Napster, Inc. Copyright Litigation*, No. C MDL-00-1369-MHP

25  (N.D. Cal.).

26  REQUEST NO. 12:

27      All Documents that identify, describe or refer to any actual, prior or potential competitor of

28  Apple's iPod and audio and video files sold by iTMS.

1  REQUEST NO. 13:

2      All Documents analyzing, describing, estimating or projecting the past, present, future or

3  projected market share of:

4          (i) iPod;

5          (ii) online music files;

6          (iii) online video files; and

7          (iv) music software, including but not limited to iTunes and GarageBand.

8  REQUEST NO. 14:

9      All Documents analyzing, describing, estimating or projecting your sales of:

10          (i) the iPod;

11          (ii) online music files; or

12          (iii) the online video files.

13  REQUEST NO. 15:

14      All Documents Concerning the actual or potential impact on your iPod and/or iTunes music

15  and video market shares, sales or profits resulting from the introduction, modification, changes to

16  the terms of use for, changes to the pricing, employment or maintenance of FairPlay DRM.

17  REQUEST NO. 16:

18      All Documents Concerning the actual or potential impact on your iPod and/or iTunes music

19  and video market shares, sales or profits resulting from any restriction or limitation on the

20  compatibility of files protected by Apple's FairPlay DRM with other file formats or any Digital

21  Music Player other than iPod.

22  REQUEST NO. 17:

23      All Documents reflecting or constituting any internal communications concerning:

24          (i) the licensing or sharing of FairPlay DRM;

25          (ii) the compatibility (or lack thereof) of files protected by Apple's FairPlay DRM with other

26          file formats or any Portable Digital Music Player other than iPod; and

27          (iii) the actual, anticipated or potential entry into the market(s) of any actual or potential

28  competitor of the iPod, the iTMS or iTunes Software.

PLAINTIFF MELANIE TUCKER'S FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT APPLE, INC. - C-06-04457-JW                                    - 9 -

REQUEST NO. 18:

All Documents analyzing, describing, estimating or projecting the impact on your iPod and/or iTunes music and video market shares or sales resulting from:

(i) the licensing of Apple's FairPlay DRM to third parties;

(ii) any measures that would make iPods interoperable with music files protected by means other than Apple's FairPlay DRM; or

(iii) any measures that would make music purchased from the iTMS interoperable with any Digital Music Player other than iPod.

REQUEST NO. 19:

All Documents necessary to allow the calculation for each quarter since the introduction of the iPod for each model that iPod has Apple sold, the number of iPods that have been purchased, Apple's total revenue from the sale of each iPod model and Apple's Cost of Manufacturing and cost of sale for each iPod model.

REQUEST NO. 20:

All complaints and other correspondence from individuals Apple has received regarding the lack of interoperability of iTunes audio and video files with non-Apple Digital Music Players, the iPod with non-Apple music and video file formats Concerning FairPlay DRM and any summaries or analysis of such complaints.

REQUEST NO. 21:

All Documents Concerning RealNetworks Harmony Technology, which according to RealNetworks press release entitled "RealNetworks Introduces Harmony Enabling Consumers to Buy Digital Music that Plays on All Popular Devices" dated July 26, 2004: "[E]nable[s] consumers to securely transfer purchased music to every popular secure music device" and "frees consumers from the limitation of being locked into a specific portable device when they buy digital music."

1   REQUEST NO. 22:

2        All personnel charts, related personnel listings, indices or directories, organizational charts

3   and document retention policies produced, compiled, or dated after January 1, 2000.

4   DATED:  January 18, 2006                    LERACH COUGHLIN STOIA GELLER
                                                        RUDMAN & ROBBINS LLP
5                                               JOHN J. STOIA, JR.
                                                BONNY E. SWEENEY
6                                               CHRISTOPHER M. BURKE

7

8                                               _____
                                                        BONNY E. SWEENEY
9
                                                655 West Broadway, Suite 1900
10                                              San Diego, CA  92101
                                                Telephone:  619/231-1058
11                                              619/231-7423 (fax)

12                                              BONNETT, FAIRBOURN, FRIEDMAN
                                                        & BALINT, P.C.
13                                              ANDREW S. FRIEDMAN
                                                ELAINE A. RYAN
14                                              TODD D. CARPENTER
                                                2901 N. Central Avenue, Suite 1000
15                                              Phoenix, AZ  85012
                                                Telephone:  602/274-1100
16                                              602/274-1199 (fax)

17                                              Attorneys for Plaintiff

18   S:\CasesSD\Apple Tying\REQ00038281-RFP.doc

19

20

21

22

23

24

25

26

27

28

1    <u>DECLARATION OF SERVICE BY MAIL</u>

2    I, the undersigned, declare:

3    1.    That declarant is and was, at all times herein mentioned, a citizen of the United States

4    and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested

5    party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San

6    Diego, California 92101.

7    2.    That on January 18, 2007, declarant served the PLAINTIFF MELANIE TUCKER'S

8    FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT APPLE,

9    INC. by depositing a true copy thereof in a United States mailbox at San Diego, California in a

10    sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached

11    Service List.

12    3.    That there is a regular communication by mail between the place of mailing and the

13    places so addressed.

14    I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th

15    day of January, 2007, at San Diego, California.

16

17    _____
      TERESA A. TURNER

18

19

20

21

22

23

24

25

26

27

28