Robert A. Mittelstaedt #060359
Elaine Wallace #197882
Tracy M. Strong #221540
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
ewallace@jonesday.com
tstrong@jonesday.com

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION** | Case No. C 05 00037 JW<br><br>**APPLE'S OPPOSITION TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS "RELATING TO CLASS CERTIFICATION"**<br><br>Date: January 16, 2008<br>Time: 9:30 a.m.<br>Courtroom: 4, 5th Floor<br>Judge: Magistrate Judge Richard Seeborg |

## INTRODUCTION

Like plaintiffs, we begin with a description of the case. The complaint in these consolidated actions is based on the theory that the antitrust laws supposedly require Apple to make its most popular products – the iPod and digital music from its online store – interoperable with competitors' products. That theory is unprecedented and contrary to the purpose of the

antitrust laws. Those laws are designed to promote innovation and competition, not to thwart it by preventing the introduction of new products unless they are compatible with existing products.

The complaint focuses on the anti-piracy software (Digital Rights Management or DRM) used by Apple and other legal online digital music stores. As admitted in an earlier version of the complaint, legal online stores used anti-piracy software because it was a condition imposed by the music owners in light of their concern over Internet piracy. To comply with that condition, Apple chose to develop its own software rather than licensing Microsoft's and incorporating it into Apple's products. Plaintiffs claim in essence that if Apple had designed its products to use Microsoft's software, Apple's products would be directly interoperable with products sold by Microsoft and its licensees.

To state that theory is to show how unfounded it is. If the antitrust laws mean anything, they stand for the proposition that companies are entitled to compete against Microsoft. To try to avoid this fatal defect in their antitrust theory, plaintiffs mischaracterize anti-piracy software as "crippleware" and allege that Apple uses it for the express purpose of making its products incompatible and excluding competition. Although that allegation was sufficient to get plaintiffs past a motion to dismiss, it is flatly wrong and has no conceivable factual basis, as further proceedings in this action will establish.

Plaintiffs' motion to compel is as misguided and misleading as their antitrust theory. Judge Ware ruled last July that, until plaintiffs move to certify a class and a further case management conference is held after defendant's opposition to the certification motion is filed, discovery in these consolidated actions must be limited to matters relating to class certification, subject only to three specific, narrow exceptions that are inapplicable here. In the intervening six months, plaintiffs have not filed a certification motion (and thus no opposition has been filed and no further case management conference has been held). Thus, plaintiffs are not entitled to the discovery they now seek.

Although the title of their motion suggests that they are moving to compel "documents relating to class certification," they present no argument or evidence to support that assertion. That is because their assertion is unsupportable. Plaintiffs are demanding all documents used to

2

create profit and loss statements for iPods and the iTunes Store (iTS) as well as the profit and loss statements themselves (Request No. 10) and all documents showing revenues and costs of manufacture and sale of iPods (Request No. 19). These documents have no conceivable bearing on, for example, whether individual consumers have been coerced to buy an iPod, or any other issue relating to whether to certify a class.

Misleadingly, plaintiffs do not advise the Court that Apple has already produced some of the very information they are seeking. One exception in Judge Ware's order was for documents previously produced by Apple in related matters including as a non-party witness in the *In re Napster Copyright Litigation*. In compliance with that order, Apple produced in this litigation the iTS profit and loss statements that it had produced in *Napster*. If plaintiffs or their economist intend to use this type of information in their class certification motion, they certainly would have been in a position to say so in their motion to compel, and to explain its relevancy. Their failure to do so underscores the absence of relevancy. Their motion is further undermined by the fact that when the plaintiffs in the first action, before consolidation, filed their class certification motion (which was later deemed withdrawn when the cases were consolidated), they did not claim that they needed any of this type of information.

Equally unpersuasive is plaintiffs' fallback argument that production of all documents used to create P&L statements, or all documents relating to manufacturing and sale costs, impose only a *de minimus* burden. As shown in the accompanying declarations, the burden in searching for and producing those voluminous documents would be enormous.

## BACKGROUND

Two actions are consolidated in this docket: the first filed case, *Charoensak v. Apple Computer, Inc.*, C 05-00037 JW, and the later filed case, *Tucker v. Apple Computer, Inc.*, C 06-04457 JW.[1] In January 2006, before consolidation, Judge Ware limited discovery in *Charoensak* to matters related to whether a consumer class should be certified. Docket No. 86, p. 1. Plaintiffs

---

[1] The original plaintiff in the first case was Thomas Slattery. He withdrew and was replaced by Charoensak and Rosen after he admitted that, far from being coerced, he was given an iPod for his birthday and did not buy any music from Apple before suing. His view was that like all art, music should be free. Docket No. 44.

3

C 05 00037 JW

requested documents showing the number of iPods and iTS songs sold. Strong Decl. ¶ 2, Ex. A. Apple provided that information for iTS songs by producing iTS profit and loss statements with the irrelevant, not-requested information redacted. *Id.* ¶ 3. Apple also produced a document showing the quarterly unit sales numbers for iPods sold directly by Apple in the United States through the fourth quarter of fiscal year 2006. *Id.* The *Charoensak* plaintiffs did not object to the redactions, because the redacted financial information was irrelevant to their class certification motion. Nor did they seek any further financial information. *Id.*

With no disputes about the scope of discovery, Charoensak and Rosen moved to certify a class in January 2007. Docket No. 93. They submitted a declaration from an economist in support of the motion. Docket Nos. 97, 103. That motion was deemed withdrawn when the two cases were consolidated in March 2007. Docket No. 106.

After the cases were consolidated, instead of moving to certify a class, plaintiffs sought to proceed with merits discovery by serving voluminous document requests. *See* Sweeney Decl. Ex. A. During the ensuing meet-and-confer process, defendant took the position that the Court's prior ruling limiting discovery to class issues should apply to the consolidated cases. This is what plaintiffs describe, unfairly and inaccurately (Mot., pp. 2, 8), as defendant responding with "boilerplate objections," "refusing" to make any "initial effort" to produce documents and "refus[ing] to present witnesses." Far from being unreasonable or obdurate as plaintiffs suggest, defendant was simply adhering to the Court's order that discovery be limited to class issues – a position that was largely vindicated. Moreover, plaintiffs neglect to mention that in response to the requests at issue in this motion defendant produced updated unit sales information beyond what it had previously produced in *Charoensak*, including unit sales numbers for iTS music and video files and monthly iPod unit sales broken down by type of iPod through period six of fiscal year 2007. Strong Decl. ¶ 4.

In June 2007, with the parties having reached impasse, plaintiffs asked Judge Ware to rule that, contrary to the prior order, discovery should not be limited to class issues but should be expanded to include any and all issues related to the merits of the complaint. Docket No. 119. Rejecting that position, Judge Ware limited discovery to class certification issues pending the

filing of the consolidated plaintiffs' class certification motion and the holding of another case management conference. Docket No. 128. The purpose of the case management conference, to be held after defendant files its opposition, is to determine if plaintiffs need any further discovery before filing a reply. *Id.* The only exceptions to Judge Ware's order are for discovery relating to "the preliminary issues of Defendant's organizational structure and document retention policies" and "documents whose production would impose only a *de minimus* burden on either party" which "may include documents already produced by Defendant in European litigation, government investigations involving similar claims against Defendant, and documents and deposition transcripts produced by Defendant as a third-party litigant in the [*Napster* litigation]." *Id.*, p. 2 & n.1. In the *Napster* litigation, Apple as a third-party had produced some financial data. As noted, in compliance with the Court's order, Apple has re-produced those documents to plaintiffs. Strong Decl. ¶ 5. These documents included non-redacted iTunes Music Store Results and "Business P&L" statements through the fourth quarter of fiscal year 2004, showing revenue, cost and margin numbers for iTS. *Id.*

These discovery limitations are still in force, because plaintiffs have not filed a certification motion (and thus no opposition has been filed and no further case management conference has been held).

## ARGUMENT

Plaintiffs have not carried their burden of showing that the financial data at issue are relevant to their intended motion to certify a class. Indeed, they have not attempted to link the requested discovery to anything they intend to argue in their certification motion, and it would be too late to do so in their reply brief. Nor does this discovery fall into the *de minimus* burden category. It is one thing to produce the type of documents specifically referred to in the Court's order, *i.e.*, documents already produced in other litigation, which Apple has already done here. It is quite another to search for and produce all documents used to create profit and loss statements or that reflect manufacturing or sale costs for iPods.

5

C 05 00037 JW

## I. PLAINTIFFS DO NOT DEMONSTRATE THAT THE REQUESTS ARE RELEVANT TO CLASS CERTIFICATION.

Plaintiffs do not attempt to show how or why the two categories of discovery at issue are relevant to class certification. Local Rule 37-2 requires plaintiffs' moving papers to "detail the basis for the party's contention that it is entitled to the requested discovery." Instead, plaintiffs offer only their say-so that they are. The heading of the main section of their brief asserts that "The Revenue, Cost and Profit Documents Are Relevant to Class Certification." Mot., p. 6. But the text of that section says nothing more than that antitrust actions are supposedly good candidates for class treatment, including tying cases where plaintiffs show "a plausible theory whereby antitrust injury and damages may be proven on a class-wide basis." *Id.* In truth, courts in tying cases have held that proof of coercion must be shown on an individual basis and denied class certification on that basis. *See e.g., Ungar v. Dunkin' Donuts of America, Inc.*, 531 F.2d 1211, 1226 (3d Cir. 1976); 5 *Moore's Federal Practice* § 23.45[5][c] (3d ed. 2006) ("In the absence of a common contractual provision, proof of a tie-in is an individual question, and individual questions will predominate."). But the important point for present purposes is that, beyond their platitudes, plaintiffs do not attempt to show that the requested information is relevant to their obligation to prove that class treatment is appropriate.

Nor does the next section of their brief live up to the promise of its heading, which asserts that the discovery at issue is relevant to class-wide proof of antitrust injury. Mot., pp. 6-7. They cite four cases in which courts have held that testimony by economists was sufficient to carry plaintiffs' burden on class certification motions. But none of those cases involved the type of data at issue here – profit/loss, revenue and manufacturing and sales cost data. As plaintiffs' own description of the cases demonstrates, those cases involved data about usage of debit cards (*In re VISA Check/Master Money Antitrust Litig.*, 280 F.3d 124, 134 (2d Cir. 2001)); sales data (*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, at *9 (N.D. Cal. June 5, 2006)); and conditions of sale (*Bafus v. Aspen Realty, Inc.*, 236 F.R.D. 652, 658 (D. Id. 2006). (*Garrison v. Warner Bros., Inc.*, 1996 WL 407849, at *4 (C.D. Cal. June 25, 1996), does not specify what information was at issue). Plaintiffs make no attempt to show that the data at

issue in their cited cases is comparable in any way to the profit/loss, revenue and cost data requested here. Indeed, Apple has already produced its sales data, which is the data comparable to the information produced in those cases.

In the next section (Mot., pp. 7-8), plaintiffs assert that they will use one or more of three methods to calculate damages on a class-wide basis. But again they do not even attempt to show that any of the requested data is relevant to any of those methods. Indeed, the experts in some of their cited cases did not use actual data when proposing methods for calculating class-wide damages and the others relied on data different from the type sought here.[2]

Plaintiffs' generalized, unsubstantiated argument about relevancy is undermined by two factors. As noted, although not disclosed by plaintiffs, Apple has already produced some financial data of the type that plaintiffs are now seeking (because it was previously produced in another case and thus was ordered produced by Judge Ware). If those data were relevant to their economist, they could have easily submitted a declaration (or made an argument) attempting to demonstrate relevancy. In other words, this is not a case where they have no idea what the documents contain. Moreover, before consolidation, plaintiffs in the first case in fact moved to certify a class, and submitted an economist's supporting declaration. Neither plaintiffs nor the economist claimed to need further discovery before moving to certify. The first motion to certify was deemed withdrawn. While plaintiffs are not limited to the same arguments made in the first motion, the absence of any suggestion the first time around that they needed this type of information further underscores its continuing lack of relevancy.

Finally, plaintiffs argue (Mot., p. 8) that a showing of relevancy to class certification would shift the burden to defendant to show that the requested discovery is overly burdensome. But plaintiffs have not crossed the threshold of showing relevancy to class certification. So the issue of burden does not arise. In their section on burden (Mot., pp. 8-9), plaintiffs cite six cases

---

[2] *See Bafus*, 236 F.R.D. at 658 (expert declaration "describes what appears to be a viable method" and that "based on documentation . . . he could describe, on a classwide basis, . . . economic effects"); *Garrison*, 1996 Wl 407849, at * 4 (expert declaration stated that damages may be calculated using general accounting principles and "[o]nce the calculations are made" they can be applied).

that stand for the unremarkable proposition that financial information may be relevant in price-fixing and other antitrust cases. But the issue here is whether financial information is relevant to **class certification**. Only one of the cases refers to that issue, and it simply says in passing that financial information may show common questions predominate in a price-fixing case. *In re NASDAQ Market-Makers Antitrust Litig.*, 929 F. Supp. 723, 725 (S.D.N.Y. 1996). That does not help these plaintiffs show that the particular data they are seeking has any relevancy to class certification in this alleged tying/monopolization case.

## II. THIS IS NOT THE TYPE OF *DE MINIMUS* DISCOVERY ENVISIONED BY JUDGE WARE'S ORDER.

Plaintiffs' fall-back argument is that their document requests calling for all documents used to create P&L statements for the iTunes Store and all documents showing revenues and costs for iPods impose only a *de minimus* burden. However, this is not the type of discovery that plaintiffs had in mind when they suggested an exception to class-related discovery, nor can the burden be considered *de minimus* by any stretch.

Last July, plaintiffs argued that if the Court limited discovery to class issues, it should nonetheless permit "documents whose production would impose only a *de minimus* burden on Plaintiffs or Defendants, such as all documents already produced in European litigation and government investigations involving similar antitrust claims against Defendant, and documents and deposition transcripts produced by Defendants as a third-party litigant" in the *Napster* litigation. Docket No. 119, pp. 2-3. Notably, plaintiffs did not claim at that point that their then-pending Document Requests 10 and 19 (the two requests at issue here) fit into that category.

Judge Ware's order adopted plaintiffs' formulation. Docket No. 128, p. 2 & n.1. There is no basis for plaintiffs now to try to expand that *de miminus* category to include the materials at issue. Reproducing documents that have already been gathered, reviewed and produced in other litigation is one thing, and that is what both plaintiffs and the Court had in mind. Searching for and producing the documents at issue here would impose far greater burden, as detailed in the accompanying declarations. *See* Leung Declaration; Lancaster Declaration. Nor was the *de minimus* exception designed to prevent a party from redacting irrelevant information which is

8

how plaintiffs are trying to use the exception to compel production of the redacted P&L statements for the iTunes store.[3]

To be clear, the issue is not whether the documents would be unduly burdensome to produce if merits discovery were open (although all documents used to create a P&L statement or showing costs or revenues clearly would meet even that standard). At this stage, under Judge Ware's order, the issue for discovery on issues unrelated to class certification is only whether the burden is more than *de minimus*. Searching for all documents used to create profit and loss statements, or all documents necessary to show costs and revenues, clearly imposes more than a negligible burden and, under Judge Ware's order, should not be permitted at this time.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel should be denied.

Dated: December 21, 2007           JONES DAY

By:/s/ Robert A. Mittelstaedt
———————————————
    Robert A. Mittelstaedt

Counsel for Defendant
APPLE INC. f/k/a Apple Computer, Inc.

SFI-575349v2

---

[3] Apple offered to produce unredacted copies of the previously produced P&L statements as a compromise to avoid burdening the Court with this motion. But plaintiffs insisted on pursuing the much broader categories of documents. Strong Decl. ¶ 6.