1   COUGHLIN STOIA GELLER
       RUDMAN & ROBBINS LLP
2   BONNY E. SWEENEY (176174)
    655 West Broadway, Suite 1900
3   San Diego, CA  92101
    Telephone:  619/231-1058
4   619/231-7423 (fax)
    bonnys@csgrr.com
5
    THE KATRIEL LAW FIRM
6   ROY A. KATRIEL (*pro hac vice*)
    1101 30th Street, N.W., Suite 500
7   Washington, DC  20007
    Telephone:  202/625-4342
8   202/330-5593 (fax)
    rak@katriellaw.com
9
    Co-Lead Counsel for Plaintiffs
10
    [Additional counsel appear on signature page.]
11
                    UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13
                         SAN JOSE DIVISION
14

| | | |
|---|---|---|
| THE APPLE IPOD ITUNES ANTI-TRUST LITIGATION | ) ) ) | Lead Case No. C-05-00037-JW(RS) |
| | ) | <u>CLASS ACTION</u> |
| This Document Relates To: | ) ) | NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND |
| ALL ACTIONS. | ) ) ) | APPOINTMENT OF CLASS COUNSEL |

                                    JUDGE:   Hon. James Ware
                                    DATE:    November 10, 2008
                                    TIME:    9:00 a.m.
                                    CTRM:    8-4th Floor

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..............................................................................................1

II.    PLAINTIFFS' FEDERAL ANTITRUST CLAIMS.......................................3

       A.     The Elements of Plaintiffs' Tying Claim.................................................3

       B.     The Elements of Plaintiffs' Monopolization Claims ..............................4

III.   THE REQUIREMENTS OF RULE 23 ARE READILY SATISFIED IN THIS
       CASE ...............................................................................................................5

       A.     Rule 23(a) Is Satisfied.............................................................................6

              1.     Numerosity.....................................................................................6

              2.     Commonality...................................................................................6

              3.     Typicality ........................................................................................7

              4.     Adequacy.........................................................................................8

       B.     Rule 23(b) Is Satisfied. ...........................................................................9

              1.     Injunctive Relief under Rule 23(b)(2).........................................9

              2.     Monetary Relief under Rule 23(b)(3) .......................................11

                     a.     Predominance......................................................11

                     b.     Superiority...........................................................22

       C.     There Exists Readily Definable Classes of Apple Customers ...............23

       D.     Appointment of Class Counsel ..............................................................24

IV.    PLAINTIFFS' STATE LAW CLAIMS .......................................................24

V.     CONCLUSION...............................................................................................25

# TABLE OF AUTHORITIES

Page

## CASES

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).........................1, 11, 23

*Anderson Foreign Motors, Inc. v. New England Toyota Distrib., Inc.*,
   475 F. Supp. 973 (D. Mass. 1979) .................................................................16

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
   472 U.S. 585, 105 S. Ct. 2847, 86 L. Ed. 2d 467 (1985).................................19

*Bafus v. Aspen Realty, Inc.*,
   236 F.R.D. 652 (D. Idaho 2006) .............................................................. *passim*

*Behrend v. Comcast Corp.*,
   No. 03-6604, 2007 WL 2972601 (E.D. Pa. Oct. 10, 2007) ...............................5

*Betaseed, Inc. v. U&I, Inc.*,
   681 F.2d 1203 (9th Cir. 1982) .......................................................................14

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) .......................................................................6, 8

*Bogosian v. Gulf Oil Corp.*,
   561 F. 2d 434 (3rd Cir. 1977) .......................................................................16

*Cascade Health Solutions v. PeaceHealth*,
   515 F.3d 883 (9th Cir. 2008) .................................................................3, 4, 19

*Collins v. Int'l Dairy Queen, Inc.*,
   168 F.R.D. 668 (M.D. Ga. 1996) ............................................................ *passim*

*Cost Mgmt. Servs., Inc. v. Washington Natural Gas Co.*,
   99 F.3d 937 (9th Cir. 1996) ............................................................................5

*Datagate, Inc. v. Hewlett-Packard Co.*,
   60 F.3d 1421 (9th Cir. 1995) .....................................................................3, 13

*Digidyne Corp. v. Data Gen. Corp.*,
   734 F.2d 1336 (9th Cir. 1984) ............................................................... *passim*

*Dukes v. Wal-Mart, Inc.*,
   509 F.3d 1168 (9th Cir. 2007) ..............................................................5, 8, 22

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
   504 U.S. 451, 112 S. Ct. 2072, 119 L. Ed. 3d.......................................... *passim*

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)....................................5

1

2
**Page**

3
*Estate of Garrison v. Warner Bros., Inc.,*
    No. CV 95-8328 RMT, 1996 WL 407849
4
    (C.D. Cal. June 25, 1996) .......................................................................7, 20

5
*Foremost Pro Color, Inc. v. Eastman Kodak Co.,*
    703 F.2d 534 (9th Cir 1983) ...................................................................17, 20
6

*Fortner Enters., Inc. v. United States Steel Corp.,*
7
    394 U.S. 495, 89 S. Ct. 1252, 22 L. Ed. 2d 495 (1969)....................................3, 12

8
*George Lussier Enters., Inc. v. Subaru of New England, Inc.,*
    No. CIV 99-109-B, 2001 WL 920060
9
    (D.N.H. Aug. 3, 2001) .....................................................................11, 13, 23

10
*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ................................................................6, 7, 8
11

*Hanon v. Dataproducts Corp.,*
12
    976 F.2d 497 (9th Cir. 1992) ........................................................................7

13
*Hardy v. City Optical, Inc.,*
    39 F.3d 765 (7th Cir. 1994) ........................................................................17
14

*Hawaii v. Standard Oil Co. of Cal.,*
15
    405 U.S. 251, 92 S. Ct. 885, 31 L. Ed. 2d 184 (1972) .......................................2

16
*Hill v. A-T-O, Inc.,*
    535 F.2d 1349 (2d Cir. 1976).......................................................................17
17

*Hill v. A-T-O, Inc.,*
18
    80 F.R.D. 68 (E.D.N.Y. 1978).................................................................16, 21

19
*Image Tech. Servs., Inc. v. Eastman Kodak Co.,*
    No. C 87-1686 BAC, 1994 WL 508735
20
    (N.D. Cal. Sept. 2, 1994) ...................................................................... *passim*

21
*In re Catfish Antitrust Litig.,*
    826 F. Supp. 1019 (N.D. Miss. 1993)...............................................................9
22

*In re Corrugated Container Antitrust Litig.*
23
    No. 310, 1979 WL 1751
    (S.D. Tex. Dec. 21, 1979) ..........................................................................22
24

*In re Domestic Air. Transp. Antitrust Litig.,*
25
    137 F.R.D. 677 (N.D. Ga. 1991)................................................................9, 22

26
*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    No. M 02-1486 PJH, 2006 WL 1530166
27
    (N.D. Cal. June 5, 2006) ...................................................................... *passim*

28

**Page**

*In re Indus. Silicon Antitrust Litig.,*
        No. 95-1131, 1998 WL 1031507
        (W.D. Pa. Oct. 13, 1998) ...............................................................22

*In re Live Concert Antitrust Litig.,*
        247 F.R.D. 98 (C.D. Cal. 2007) .............................................. *passim*

*In re Lorazepam & Clorazepate Antitrust Litig.,*
        202 F.R.D. 12 (D.D.C. 2001) ............................................................5

*In re NASDAQ Market Makers Antitrust Litig.,*
        169 F.R.D 493 (S.D.N.Y. 1996) .....................................................22

*In re Playmobil Antitrust Litig.,*
        35 F. Supp 2d 231 (E.D.N.Y. 1998) ..............................................1, 6

*In re Relafen Antitrust Litig.,*
        221 F.R.D. 260 (D. Mass. 2004) ....................................................24

*In re Rubber Chems. Antitrust Litig.,*
        232 F.R.D. 346 (N.D. Cal. 2005) ............................................. *passim*

*In re Sugar Indus. Antitrust Litig.,*
        No. MDL 201, 1976 WL 1374
        (N.D. Cal. May 21, 1976) ..............................................................21

*In re Tableware Antitrust Litig.,*
        241 F.R.D. 644 (N.D. Cal. 2007) ............................................. *passim*

*In re Visa Check/Mastermoney Antitrust Litig.,*
        192 F.R.D. 68 (E.D.N.Y. 2000),
        *aff'd*, 280 F.3d 124 (2d Cir. 2001) ......................................... *passim*

*Jefferson Parish Dist. No. 2 v. Hyde,*
        466 U.S. 2117, 104 S. Ct. 1551, 80 L. Ed. 2d 2 ............................12

*Krehl v. Baskin-Robbins Ice Cream Co.,*
        78 F.R.D. 108 (C.D. Cal. 1978) .........................................................6

*Linney v. Cellular Alaska P'ship.,*
        151 F.3d 1234 (9th Cir. 1998) ........................................................10

*Little Caesar Enters., Inc. v. Smith,*
        172 F.R.D. 236 (E.D. Mich. 1997) ........................................... *passim*

*Mailand v. Burckle,*
        20 Cal. 3d 367, 143 Cal. Rptr. 1 (1978)........................................24

*Martino v. McDonald's System, Inc.,*
        81 F.R.D. 81 (N.D. Ill. 1979)..........................................................18

**Page**

*Milonas v. Amerada Hess Corp.,*
    No. 73 CIV 4263 (JMC), 1976 WL 1312
    (S.D.N.Y. Aug. 19, 1976) ...................................................................................13, 17

*Molski v. Gleich,*
    318 F.3d 937 (9th Cir. 2003) ...................................................................................10

*Moore v. Jas. H. Matthews & Co.,*
    550 F.2d 1207 (9th Cir. 1977) ......................................................................... *passim*

*Moore v. Jas. H. Matthews & Co.,*
    682 F.2d 830 (9th Cir. 1982) ...................................................................................21

*Northern Pac. Ry. Co. v. United States,*
    356 U.S. 1, 78 S. Ct. 514, 2 L. Ed. 2d 545 (1958) ........................................3, 16

*Nova Designs, Inc. v. Scuba Retailers Ass'n,*
    202 F.3d 1088 (9th Cir. 2000) ...................................................................................24

*O'Connor v. Boeing North Am., Inc.,*
    184 F.R.D. 311 (C.D. Cal. 1998) ...................................................................................23

*Paladin Assocs., Inc. v. Montana Power Co.,*
    328 F.3d 1145 (9th Cir. 2003) ...................................................................................17

*Probe v. State Teachers' Ret. Sys.,*
    780 F.2d 776 (9th Cir. 1986) ...................................................................................10

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.,*
    51 F.3d 1421 (9th Cir. 1995) ........................................................................5, 18

*Rick-Mik Enters., Inc. v. Equilon Enters., LLC,*
    ___ F.3d ___, 2008 WL 2697793 (9th Cir. July 11, 2008)............................3, 4

*Slattery v. Apple Comp., Inc.,*
    No. C 05-00037 JW, 2005 WL 2204981
    (N.D. Cal. Sept. 9, 2005) ...............................................................................1, 4, 5

*Slaven v. BP Am., Inc.,*
    190 F.R.D. 649 (C.D. Cal. 2000) ...................................................................................23

*Spectrum Sports v. McQuillan,*
    506 U.S. 447, 113 S.Ct. 884, 122 L. Ed. 2d 247 (1993)............................................5

*Tele Atlas N.V. v. Navteq Corp.,*
    397 F. Supp. 2d 1184 (N.D. Cal. 2005) ...................................................................................4

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.,*
    209 F.R.D. 159 (C.D. Cal. 2002)...................................................................................7

                                                                                    **Page**

*Tucker v. Apple Comp., Inc.,*
 493 F. Supp. 2d 1090 (N.D. Cal., 2006) ................................................................. *passim*

*Tuolumne v. Sonora Cmty. Hosp.,*
 236 F.3d 1148 (9th Cir. 2001) .......................................................................4, 15, 24

*Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.,*
 512 F.2d 1264 (9th Cir. 1975) ....................................................................................20

*United States Steel Corp. v. Fortner Enters., Inc.,*
 429 U.S. 610, 97 S. Ct. 861, 51 L. Ed. 2d 80 (1977)......................................................12

*United States v. Loew's, Inc.,*
 371 U.S. 38 (1962)......................................................................................................14

*Valentino v. Carter-Wallace, Inc.,*
 97 F.3d 1227 (9th Cir. 1996) .....................................................................................22

*Westways World Travel, Inc. v. AMR Corp.,*
 218 F.R.D. 223 (C.D. Cal. 2003) .................................................................................9

*Xiufang Situ v. Leavitt,*
 No. C 06-2841 TEH, 2007 WL 127993
 (N.D. Cal. Jan. 12, 2007) ............................................................................................9

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
 395 U.S. 100, 89 S. Ct. 1562, 23 L. Ed. 2d 129 (1969)......................................................20

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
 §1............................................................................................................... *passim*
 §2............................................................................................................... *passim*

California Business & Professions Code
 §16700 *et seq.* ..........................................................................................................24

Federal Rules of Civil Procedure
 Rule 23 ..................................................................................................... *passim*
 Rule 23(a)...........................................................................................................6, 7, 8
 Rule 23(a)(1)........................................................................................................6
 Rule 23(a)(2)........................................................................................................6
 Rule 23(a)(3)........................................................................................................7
 Rule 23(a)(4).....................................................................................................8, 24
 Rule 23(b)............................................................................................................9
 Rule 23(b)(2)....................................................................................................9, 10
 Rule 23(b)(3)....................................................................................................6, 11
 Rule 23(g)(1)........................................................................................................24

1

2                                                                                          **Page**

3   **SECONDARY AUTHORITIES**

4   6 A. Conte & H. Newberg, *Newberg on Class Actions*, §18:1 (4th ed. 2002) ................................2
                 §4:32 ............................................................................................................23
5                §18.8 ............................................................................................................7
                 §18.14 ..........................................................................................................8
6                §18:24 ..........................................................................................................9
                 §18:26 ........................................................................................................11
7                §18:27 ........................................................................................................21
                 §18:30 ........................................................................................................15
8                §18:5 ..........................................................................................................6

9   Press Release, Apple, *Apple launches iTune Plus Higher Quality DRM-Free Tracks
            Now Available on the iTunes Store Worldwide* May 30, 2007 .........................................10
10

11  Press Release, Apple, *iTunes Music Store Catalog Tops One Million Songs*
            Aug. 10, 2004 ............................................................................................................12

12  S. Jobs, *Thoughts on Music* Feb. 6, 2007 .......................................................................10, 13, 16

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2       PLEASE TAKE NOTICE that on November 10, 2008 at 9:00 a.m., in Courtroom 8, 4th

3  Floor of the above-entitled Court, located at 280 South 1st Street, San Jose, California, Plaintiffs

4  Melanie Tucker, Mariana Rosen, and Somtai Troy Charoensak (collectively, "Plaintiffs"), will, and

5  hereby do, respectfully move the Court for class certification and to appoint the law firms of

6  Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") and The Katriel Law Firm as Co-

7  Lead Class Counsel.

8  **I.    INTRODUCTION**

9       Plaintiffs respectfully seek certification of their claims that Defendant Apple, Inc. ("Apple"

10  or "AAPL") violated antitrust laws when, beginning in April 2003, Apple encrypted online audio

11  and video recording files purchased from its online music store ("the iTunes Store") so that they

12  could only be played on portable digital media players manufactured by Apple (collectively,

13  "iPods"). Given Apple's overwhelming market power in the online recordings markets, Plaintiffs

14  allege that Apple's unremitting policy of incompatibility constitutes an unlawful tying arrangement

15  in violation of Section 1 of the Sherman Act.  Apple furthermore allegedly obtained, maintained

16  and/or attempted to obtain a monopoly of the online audio and video recordings and portable digital

17  media player markets through a series of anticompetitive actions beyond the initial tie, precluding

18  competition from other portable player makers in violation of Section 2 of the Sherman Act.

19  Plaintiffs seek injunctive relief requiring Apple to remedy the "lock-in" predicament it has created

20  for iPod purchasers, and damages for the supracompetitive price paid for iPods. The Court has

21  already ruled that Plaintiffs have alleged viable federal antitrust claims.  *See Slattery v. Apple Comp.,*

22  *Inc.*, No. C 05-00037 JW, 2005 WL 2204981, at *3 (N.D. Cal. Sept. 9, 2005); *Tucker v. Apple*

23  *Comp., Inc.*, 493 F. Supp. 2d 1090 (N.D. Cal., 2006); *see generally*, *Eastman Kodak Co. v. Image*

24  *Tech. Servs., Inc.*, 504 U.S. 451, 462, 112 S. Ct. 2072, 119 L. Ed. 3d 265 (1992).

25       As the Supreme Court and numerous other courts have recognized, few cases are better

26  candidates for class-wide resolution than antitrust actions. *Amchem Products, Inc. v. Windsor*, 521

27  U.S. 591, 625, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ("Predominance is a test readily met in

28  certain cases alleging . . . violations of the antitrust laws."); *In re Playmobil Antitrust Litig.*, 35 F.

1   Supp 2d 231, 238 (E.D.N.Y. 1998) ("Antitrust claims are well suited for class actions.").  And, in

2   turn, class actions "play a particularly vital role in the private enforcement of antitrust [laws]." *In re*

3   *Tableware Antitrust Litig.*, 241 F.R.D. 644, 648 (N.D. Cal. 2007); *accord In re Dynamic Random*

4   *Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *3 (N.D. Cal.

5   June 5, 2006) ("DRAM") (same); *see generally* 6 A. Conte & H. Newberg, *Newberg on Class*

6   *Actions*, §18:1, at 3-6 (4th ed. 2002) ("*Newberg*").  In the words of the Supreme Court:

7           Every violation of the antitrust laws is a blow to the free-enterprise system
        envisaged by Congress.  This system depends on strong competition for its health
8       and vigor, and strong competition depends, in turn, on compliance with antitrust
        legislation.  In enacting these laws, Congress had many means at its disposal to
9       penalize violators.  It could have, for example, required violators to compensate
        federal, state, and local governments for the estimated damage to their respective
10      economies caused by the violations.  But, this remedy was not selected.  Instead,
        Congress chose to permit all persons to sue to recover three times their actual
11      damages every time they were injured in their business or property by an antitrust
        violation.  By offering potential litigants the prospect of a recovery in three times the
12      amount of their damages, Congress encouraged these persons to serve as "private
        attorneys general."

13                                  *       *       *

14

15          Congress has given private citizens rights of action for injunctive relief and
        damages for antitrust violations without regard to the amount in controversy.  28
16      U.S.C. §1337; 15 U.S.C. §15.  Rule 23 of the Federal Rules of Civil Procedure
        provides for class actions that may enhance the efficacy of private actions by
17      permitting citizens to combine their limited resources to achieve a more powerful
        litigation posture.[1]

18  *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262, 92 S. Ct. 885, 31 L. Ed. 2d 184 (1972).

19  Given the salutary role of the class mechanism in private antitrust actions, any doubt under Rule 23

20  is to be resolved in favor of certification.  *Tableware*, 241 F.R.D. at 648; *In re Rubber Chems.*

21  *Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005).

22          Plaintiffs' claims against Apple are ideally suited for class treatment because, as shown

23  below, ***every*** element of those claims can and will be established by evidence and economic analysis

24  common to all iPod purchasers.  Indeed, as confirmed in the declaration of esteemed Stanford

25  economist, Professor *Emeritus* Roger G. Noll ("Noll Decl."), based on his expertise, preliminary

26  _____

27  [1]          Unless otherwise noted, citations are omitted and emphasis is added, here and throughout.

28

1  research and the exemplar data provided by Apple as the prelude to full discovery, there are

2  established and reliable econometric methodologies available to prove liability, antitrust impact and

3  damages caused by Apple's alleged anticompetitive conduct on a class-wide basis.  Sweeney Decl.,

4  Ex. 1 (Declaration of Roger G. Noll, dated July 15, 2008).[2]

5         Accordingly, Plaintiffs respectfully seek certification of the following class:

6         "All persons or entities in the United States (excluding federal, state and local
        governmental entities, Apple, its directors, officers and members of their families)
7         who since April 28, 2003 purchased an iPod directly from Apple."

8  **II.    PLAINTIFFS' FEDERAL ANTITRUST CLAIMS**

9         **A.    The Elements of Plaintiffs' Tying Claim**

10        "A tying arrangement is a device used by a competitor with market power in one market (for

11 the 'tying' product) to extend its market power into an entirely distinct market (for the 'tied'

12 product)."  *Datagate, Inc. v. Hewlett-Packard Co.*, 60 F.3d 1421, 1423 (9th Cir. 1995); *see generally*

13 *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5-6, 78 S. Ct. 514, 2 L. Ed. 2d 545 (1958);

14 *Fortner Enters., Inc. v. United States Steel Corp.*, 394 U.S. 495, 499, 89 S. Ct. 1252, 22 L. Ed. 2d

15 495 (1969).  Ties are prohibited where a seller "exploits," "controls," "forces," or "coerces" a buyer

16 of a tying product into purchasing a tied product.  *Rick-Mik Enters., Inc. v. Equilon Enters., LLC*,

17 ___ F.3d ___, 2008 WL 2697793, at *6 (9th Cir. July 11, 2008); *Cascade Health Solutions v.*

18 *PeaceHealth*, 515 F.3d 883, 913 (9th Cir. 2008)).  Here, Plaintiffs will prove that Apple engaged in

19 just such conduct when it intentionally encrypted recordings purchased from the iTunes Store with

20 Apple's proprietary FairPlay/DRM so as to restrict portable play-back to Apple's own iPods.

21        The tying arrangement "is one of the few practices that the Supreme Court has determined to

22 be illegal *per se* under the Sherman Act, §1."  *Datagate*, 60 F.3d at 1423; *see also Eastman Kodak*,

23 504 U.S. at 461-62 (reaffirming theory of *per se* liability).  Indeed, "[a] *per se* tying violation is

24 proscribed without examining the actual market conditions, when the seller has such power in the

25

26 [2]    All "Ex." and "Exs." references are to the Declaration of Bonny E. Sweeney ("Sweeney
   Decl.") in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Counsel,
27 filed concurrently herewith.

28

1    tying product or service market that the existence of forcing is probable, . . . and there is a substantial

2    potential for impact on competition." *Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1157 (9th

3    Cir. 2001) (internal quotes omitted).

4        As this Court has already held, to establish a *per se* illegal tying arrangement, Plaintiffs need

5    to show but three elements:

6        1.    A tie between two separate products or services sold in relevant markets;

7        2.    Sufficient economic power in the tying products market to affect the tied market; and

8        3.    An effect on a not-insubstantial volume of commerce in the tied product market.

9    *Slattery*, 2005 WL 2204981, at *3; *Tucker*, 493 F. Supp. 2d at 1096; *see also Tele Atlas N.V. v.

10   Navteq Corp.*, 397 F. Supp. 2d 1184, 1191 (N.D. Cal. 2005) (citing *Slattery*, 2005 WL 2204981);

11   *Rick-Mik Enters.*, 2008 WL 2697793, at *5-*6 (recently reiterating the same three elements for *per

12   se* tying claim); *PeaceHealth*, 515 F.3d at 913 (same).  Some courts consider a fourth element of a

13   *per se* claim: that the defendant has an economic interest in the tied product.  *Tuolumne*, 236 F.3d at

14   1158.  If a *per se* analysis does not apply, to establish a Section 1 tying claim Plaintiffs would in

15   addition have to show "an unreasonable restraint on competition in the relevant market." *Tuolumne*,

16   236 F. 3d at 1157.

17       Because none of the elements of a Section 1 tying claim turns on the individual

18   circumstances of a particular product purchaser, courts both within and outside of the Ninth Circuit

19   have consistently certified tying claims for class-wide resolution.  *See, e.g.*, *Bafus v. Aspen Realty,

20   Inc.*, 236 F.R.D. 652 (D. Idaho 2006) (certifying tying claims); *see generally Image Tech. Servs.,

21   Inc. v. Eastman Kodak Co.*, No. C 87-1686 BAC, 1994 WL 508735 (N.D. Cal. Sept. 2, 1994)

22   (same); *In re Visa Check/Mastermoney Antitrust Litig.*, 192 F.R.D. 68 (E.D.N.Y. 2000), *aff'd*, 280

23   F.3d 124 (2d Cir. 2001) (same); *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236 (E.D. Mich.

24   1997) (same); *Collins v. Int'l Dairy Queen, Inc.*, 168 F.R.D. 668 (M.D. Ga. 1996) (same).

25       **B.    The Elements of Plaintiffs' Monopolization Claims**

26       To prove their Section 2 monopolization claims, Plaintiffs must show:

27       1.    That Apple possesses monopoly power in the relevant market;

28       2.    That Apple willfully acquired or maintained that power; and

1         3.      That Apple's conduct has caused antitrust injury.

2 *Slattery*, 2005 WL 2204981, at *4; *Tucker*, 493 F. Supp. 2d at 1099; *see generally Eastman Kodak*,

3 504 U.S. at 481; *Cost Mgmt. Servs., Inc. v. Washington Natural Gas Co.*, 99 F.3d 937, 949 (9th Cir.

4 1996); *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1218 (9th Cir. 1977).  To establish their

5 Section 2 *attempted* monopolization claim, Plaintiffs must show:

6         1.      A specific intent by Apple to monopolize the relevant market;

7         2.      Predatory or anticompetitive conduct by Apple designed to control prices or destroy

8 competition;

9         3.      A dangerous probability of success; and

10         4.      Causal antitrust injury.

11 *Slattery*, 2005 WL 2204981, at *4; *Tucker*, 493 F. Supp. 2d at 1102; *see generally Rebel Oil Co.,*

12 *Inc.  v. Atlantic Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995);  *Spectrum Sports v. McQuillan*,

13 506 U.S. 447, 456, 113 S.Ct. 884, 122 L. Ed. 2d 247 (1993).

14       Because, once again, none of these elements turns on the individual circumstances of any

15 particular product purchaser, courts likewise have long certified Section 2 monopolization and

16 attempted monopolization claims for class-wide resolution.  *See, e.g.*, *Behrend v. Comcast Corp.*,

17 No. 03-6604, 2007 WL 2972601, at *12-*14 (E.D. Pa. Oct. 10, 2007); *In re Lorazepam &*

18 *Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 29-30 (D.D.C. 2001); *Eastman Kodak*, 1994 WL

19 508735, at *4.

20 **III.    THE REQUIREMENTS OF RULE 23 ARE READILY SATISFIED IN**
             **THIS CASE**

21

22       "In determining the propriety of a class action, the question is not whether the plaintiff or

23 plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the

24 requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140,

25 40 L. Ed. 2d 732 (1974) (internal quotes omitted).  Arguments evaluating the weight of evidence or

26 the merits of a case are improper at the class certification stage.  *Dukes v. Wal-Mart, Inc.*, 509 F.3d

27 1168, 1177 (9th Cir. 2007).  Nor may a court weigh the merits of conflicting expert evidence.

28 *Dukes*, 509 F.3d. at 1179-80; *see In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 135 (C.D. Cal.

1  2007) (challenges to expert opinions constitute merits determinations not properly resolved at the

2  class certification stage). And the Court is, of course, "bound to take the substantive allegations of

3  the complaint as true." *Tableware*, 241 F.R.D. at 648 (quoting *Blackie v. Barrack*, 524 F.2d 891,

4  901 n.17 (9th Cir. 1975)).

5  **A.      Rule 23(a) Is Satisfied.**

6  **1.      Numerosity**

7  The numerosity requirement is met if "the class is so numerous that joinder of all members is

8  impracticable." Fed. R. Civ. P. 23(a)(1). "A finding of numerosity may be supported by common

9  sense assumptions, and it is especially appropriate in antitrust actions brought under Rule 23(b)(3)."

10 *Tableware*, 241 F.R.D. at 648 (quoting *In re Playmobil*, 35 F. Supp 2d at 239); *accord In re Rubber*

11 *Chemicals*, 232 F.R.D. at 350. "A potential class of 1,700 members is, *a fortiori*, sufficiently

12 numerous to preclude joinder." *Krehl v. Baskin-Robbins Ice Cream Co.*, 78 F.R.D. 108, 114 (C.D.

13 Cal. 1978). The fact that a class is geographically dispersed supports class certification. *DRAM*,

14 2006 WL 1530166, at *3.

15 Here, Apple itself reports that it sold over 51,000,000 iPods during the fiscal year 2007 alone.

16 Sweeney Decl. Ex. 2 (Apple Inc., Annual Report (Form 10-K), at 42 (Sept. 29, 2007)); *see generally*

17 Sweeney Decl., Ex. 1 (Noll Decl. at 46) (there are "estimated to be over 110 million [iPod] users").

18 Because the number of direct iPod purchasers in the United States is unquestionably in the millions,

19 numerosity is easily satisfied. Compare *Tableware*, 241 F.R.D. at 648-49 (numerosity satisfied with

20 lesser numbers); *Bafus*, 236 F.R.D. at 655 (same); *Little Caesar*, 172 F.R.D. at 242 (same); *Collins*,

21 168 F.R.D. at 673 (same); *Eastman Kodak*, 1994 WL 508735, at *1 (same).

22 **2.      Commonality**

23 Commonality is satisfied where ***"there are questions of law or fact common to the class."***

24 Fed. R. Civ. P. 23(a)(2). The commonality requirement is permissively construed, such that "[t]he

25 existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of

26 salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150

27 F.3d 1011, 1019 (9th Cir. 1998). In the antitrust context, "[a]n allegation of . . . tying [or]

28 monopolization . . . will establish a common question." *Newberg*, §18:5, at 16-20.

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF
CLASS COUNSEL - C-05-00037-JW(RS)                                                      - 6 -

1   Here, the legal issues common to all class members include virtually every element of the
2   federal antitrust claims alleged against Apple:  Are the markets for online digital recordings and
3   portable players separate?  What are Apple's respective market shares?  Does Apple enjoy market
4   power in these markets?   Does Apple have an unremitting policy of applying its encryption
5   ("FairPlay") restrictions?  Has Apple used those restrictions to obtain, maintain or attempt to obtain
6   monopoly power in the portable player market?   If Apple is liable, how are damages to be
7   calculated?  These and many other common issues focusing on the alleged common conduct of
8   Apple are squarely raised in this action, amply satisfying commonality.  Compare *Tableware*, 241
9   F.R.D. at 649 (commonality satisfied based on alleged common practice by defendant); *Bafus*, 236
10  F.R.D. at 656 (same); *Little Caesar*, 172 F.R.D. at 242 (same); *Collins*, 168 F.R.D. at 673-74 (same);
11  *Eastman Kodak*, 1994 WL 508735, at *1 (same).

12              **3.      Typicality**

13              The   third   Rule   23(a)   requirement,   typicality,   is   met   where   "the   claims . . . of   the
14  representative parties are typical of the claims . . . of the class."  Fed. R. Civ. P. 23(a)(3).  Under
15  Rule 23(a)(3), "representative claims are 'typical' if they are reasonably co-extensive with those of
16  absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020; *accord*
17  *Eastman Kodak*, 1994 WL 508735, at *2.  "The test of typicality is whether other members have the
18  same or similar injury, whether the action is based on conduct which is not unique to the named
19  plaintiffs, and whether other class members have been injured by the same course of conduct."
20  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  In the antitrust context, typicality
21  "will be established by plaintiffs and all class members alleging the same antitrust violation by the
22  defendants."  *Estate of Garrison v. Warner Bros., Inc.*, No. CV 95-8328 RMT, 1996 WL 407849, at
23  *2 (C.D. Cal. June 25, 1996); *accord Newberg*, §18.8, at 29.  The typicality requirement is to be
24  "liberally construed."  *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites,*
25  *Inc.*, 209 F.R.D. 159, 164 (C.D. Cal. 2002).

26              Here, Plaintiffs all purchased iPods directly from Apple, allege precisely the same antitrust
27  claims on behalf of themselves and every other member of the proposed class of iPod purchasers,
28  and seek relief for the same alleged injury.  Consolidated Complaint for Violations of Sherman

1   Antitrust Act, Clayton Act, Cartwright Act, California Unfair Competition Law, Consumer Legal

2   Remedies Act and California Common Law of Monopolization, filed April 14, 2007, ("CCAC"),

3   ¶¶26, 72-78.   Typicality is established.   Compare *Tableware*, 241 F.R.D. at 653 (typicality

4   requirement satisfied); *Bafus*, 236 F.R.D. at 656 (same); *Little Caesar*, 172 F.R.D. at 242-3 (same);

5   *Collins*, 168 F.R.D. at 674 (same); *Eastman Kodak*, 1994 WL 508735, at *2 (same).

6               **4.       Adequacy**

7               The fourth requirement of Rule 23(a) is that "the representative parties will fairly and

8   adequately protect the interests of the class."   Fed. R. Civ. P. 23(a)(4).   Adequacy under Rule

9   23(a)(4) turns on two basic questions: "(1) do the named plaintiffs and their counsel have any

10  conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

11  prosecute the action vigorously on behalf of the class?"   *Hanlon*, 150 F.3d at 1020; *accord Dukes*,

12  509 F.3d at 1185.   To disqualify class representatives or class counsel, perceived conflicts of interest

13  "must go to the heart of the litigation, relating to the subject matter of the suit."   *Newberg*, §18.14, at

14  40-41; *accord Blackie*, 524 F.2d at 909.

15              Here, the interests of the Plaintiffs and the rest of the proposed class are entirely aligned: as

16  direct purchasers of iPod players from Apple, all share the same interest in determining whether

17  Apple's use of FairPlay violated antitrust law, whether competition was thereby stifled, whether

18  Plaintiffs and class members were unlawfully "locked-in" to iPods as portable players and/or

19  whether they paid supracompetitive prices for those iPods.   *DRAM*, 2006 WL 1530166, at *6

20  (adequacy of representation met because "the named plaintiffs allege that all members of the

21  proposed class paid artificially inflated prices as a result of defendants' [antitrust violation] during

22  the relevant class period, that all suffered similar injury as a consequence of the conspiracy, and that

23  all seek the same relief.").   There are simply no conflicts precluding class certification.   Compare

24  *Tableware*, 241 F.R.D. at 649 (no conflict precluding certification of antitrust claims); *Bafus*, 236

25  F.R.D. at 657 (same); *Little Caesar*, 172 F.R.D. at 244 (same); *Collins*, 168 F.R.D. at 674-5 (same).

26              Nor is there any basis to doubt that Mr. Charoensak, Ms. Rosen, and Ms. Tucker are highly

27  motivated advocates for the proposed class.   They have retained legal counsel with considerable

28  experience in the prosecution of major class and antitrust litigation.   Sweeney Decl., Exs. 3-4 (Firm

1   Resumes of Coughlin Stoia Geller Rudman & Robbins LLP and The Katriel Law Firm,

2   respectively); *see also* Order Consolidating Related Cases; Appointing Co-Lead Counsel, dated

3   March 21, 2007 ("March 21, 2007 Order").  Furthermore, all three  proposed class representatives

4   have already given day-long depositions, have submitted their iPods for a forensic inspection by

5   Apple's counsel, and have produced voluminous (and needlessly intrusive) documentation to Apple

6   as part of the discovery process, including: copies of all music files stored on their personal

7   computers; copies of their iTunes Purchase history; iTunes account names and passwords; copies of

8   receipts documenting their iPod purchases from Apple; and lists of every Compact Disc they

9   currently own.  Sweeney Decl., ¶¶3-4.  Mr. Charoensak, Ms. Rosen, and Ms. Tucker are assuredly

10  committed proposed class representatives.  *See* March 21, 2007 Order.

11      **B.      Rule 23(b) Is Satisfied.**

12          **1.      Injunctive Relief under Rule 23(b)(2)**

13          Under Rule 23(b)(2), a class is appropriately certified where defendants have acted or refused

14  to act in a manner generally applicable to the class, rendering injunctive relief or declaratory relief

15  appropriate to the class as a whole.  *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223,

16  240 (C.D. Cal. 2003).  It is sufficient if class members complain of a company pattern or practice

17  that is generally applicable to the class as a whole, even if not all class members have been injured

18  by the challenged practice.  *Xiufang Situ v. Leavitt*, No. C 06-2841 TEH, 2007 WL 127993, at *10

19  (N.D. Cal. Jan. 12, 2007).  Antitrust claims may be certified under Rule 23(b)(2) when injunctive

20  relief is sought.  *Newberg*, §18:24, at 79 (and cases cited therein); *See, e.g.*, *In re Visa*

21  *Check/Mastermoney*, 192 F.R.D. at 87 (certifying Rule 23 (b)(2) class); *In re Catfish Antitrust Litig.*,

22  826 F. Supp. 1019, 1046 (N.D. Miss. 1993) (same); *In re Domestic Air. Transp. Antitrust Litig.*, 137

23  F.R.D. 677, 696 (N.D. Ga. 1991) (same).

24          Plaintiffs' first and foremost goal is to enjoin Apple from continuing to obstruct

25  interoperability between online audio and video recordings sold through the iTunes Store and

26  competing portable digital media players.  Without question, Apple has in this regard acted in a

27  consistent and unwavering manner toward all proposed class members:  Steve Jobs, Apple's own

28  CEO, confirmed that "music purchased from Apple's iTunes Store will only play on iPods."

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF
CLASS COUNSEL - C-05-00037-JW(RS)                                          - 9 -

1    Sweeney Decl., Ex. 5 (S. Jobs, *Thoughts on Music*, Feb. 6, 2007 *available at*

2    www.apple.com/hotnews/thoughtsonmusic/) ("[Apple] envelopes [sic] each song purchased from the

3    iTunes Store in special and secret software so that it cannot be played on unauthorized devices.").

4    Compare *Little Caesar*, 172 F.R.D. at 268.  If Apple's deliberate incompatibility is determined by

5    the factfinder to have been unlawful, then declaratory or injunctive relief precluding Apple's

6    alteration of the digital entertainment files and "unlocking" the recordings would certainly be

7    "appropriate . . . to the class as a whole."  *In re Visa Check/MasterMoney*, 192 F.R.D. at 88-89.

8    Plaintiffs here seek to enjoin Apple:  (a) from rendering online digital audio and video recordings

9    sold through the iTunes Store inoperable with portable digital media players other than the iPod; and

10   (b) to "unlock" the iTunes Store recordings previously purchased so that they may be played on

11   portable digital media players other than iPods (a feat which is known to be technically

12   accomplishable because Apple currently does this for some recordings).[3]

13         Plaintiffs' additional prayer for money damages does not preclude Rule 23(b)(2)

14   certification.  The Ninth Circuit has repeatedly held that "'class actions certified under Rule 23(b)(2)

15   are not limited to actions requesting only injunctive or declaratory relief, but may include cases that

16   also seek monetary damages.'"  *Linney v. Cellular Alaska P'ship.*, 151 F.3d 1234, 1240 (9th Cir.

17   1998) (quoting *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986)); *see also*

18   *Molski v. Gleich*, 318 F.3d 937, 949-50 (9th Cir. 2003) (facts and circumstances of each case

19   determine the plaintiffs' fundamental intent in bringing the suit).  If this Court deems it appropriate,

20   notice and the opportunity to opt-out can be given in a Rule 23(b)(2) certification.  *Molski*, 318 F.3d

21   at 951 n.16; *but see In re Visa Check/MasterMoney*, 192 F.R.D. at 88-89 (notice to injunctive class

22   not required by the Court).

23

24

25   _____

26   [3]      Sweeney Decl., Ex. 6 (Press Release, Apple, *Apple launches iTune Plus Higher Quality*

27   *DRM-Free Tracks Now Available on the iTunes Store Worldwide*, May 30, 2007 *available at*
     http://www.apple.com/pr/library/2007/05/30itunesplus.html).

28

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF
CLASS COUNSEL - C-05-00037-JW(RS)                                              - 10 -

1

### 2.    Monetary Relief under Rule 23(b)(3)

2      Under Rule 23(b)(3), the Court may certify a class if it determines:  (1) that the questions of

3  law or fact common to the members of the class predominate over any questions affecting only

4  individual members; and (2) that a class action is superior to other available methods for the fair and

5  efficient adjudication of the controversy.  The "predominance" and "superiority" factors are closely

6  related: when common issues predominate, class actions achieve Rule 23's objectives of economy

7  and efficiency by minimizing costs and avoiding the confusion that would result from inconsistent

8  outcomes.  *Tableware*, 241 F.R.D. at 651.

9

### a.    Predominance

10      "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

11  cohesive to warrant adjudication by representation."  *Amchem Products*, 521 U.S. at 623.  To

12  predominate, common questions "need not be dispositive of the litigation." *Tableware*, 241 F.R.D.

13  at 651.  In antitrust cases, issues of tying, monopolization and attempted monopolization have been

14  viewed as central issues which satisfy the predominance requirement.  *Newberg*, §18:26, at 86-89.

15  Indeed, as shown below and confirmed by Professor Noll, each element of Plaintiffs' Section 1 tying

16  and Section 2 monopolization claims can and will be proved in this case through evidence common

17  to every member of the proposed classes.

18

### (i)    Section 1 Tying Claims

19      An element-by-element analysis confirms that Plaintiffs' Section 1 tying claim is comparable

20  to the tying claims certified for class resolution in *Bafus* and *Eastman Kodak*, because each element

21  squarely raises issues that can and will be proved by common evidence.

22      ***Separate Tying and Tied Products***.  The tied products must not be simply integral

23  components of some larger product.  *Eastman Kodak*, 504 U.S. at 462.  The question of distinctness

24  between product markets is certainly one "readily amenable to common proof."  *George Lussier*

25  *Enters., Inc. v. Subaru of New England, Inc.*, No. CIV 99-109-B, 2001 WL 920060, at *8 (D.N.H.

26  Aug. 3, 2001); *accord In re Visa Check/Mastermoney*, 192 F.R.D. at 87 (and authorities cited

27  therein).  Plaintiffs can, if need be, show through common evidence that the two products offered by

28  Apple could be offered separately.  *See, e.g.*, *Digidyne Corp. v. Data Gen. Corp.*, 734 F.2d 1336,

1    1339 (9th Cir. 1984); *see also Eastman Kodak*, 504 U.S. at 462-63 (where items have been sold

2    separately, distinct product markets exist).

3         ***Sufficient Power in the Tying Product Market***.  The next element involves proof that the

4    defendant had "sufficient economic power in the tying product market to restrain appreciably

5    competition in the tied product market." *Moore*, 550 F.2d at 1214; *see generally United States Steel*

6    *Corp. v. Fortner Enters., Inc*., 429 U.S. 610, 620, 97 S. Ct. 861, 51 L. Ed. 2d 80 (1977) ("the

7    question is whether the seller has some advantage not shared by his competitors in the market for the

8    tying product").  "Possession by the seller of . . . monopoly power [in the tying product market] is

9    sufficient to establish *per se* illegality, . . . ." (*Digidyne*, 734 F.2d at 1339-40) and "[t]he existence of

10   [market] power ordinarily is inferred from the seller's possession of a predominate share of the

11   market." *Eastman Kodak*, 504 U.S. at 464; *Jefferson Parish Dist. No. 2 v. Hyde*, 466 U.S. 2117, 104

12   S. Ct. 1551, 80 L. Ed. 2d 2 (same).[4]

13        Here, Plaintiff will establish Apple's domination of the online audio and video recordings

14   markets through common (and likely undisputed) evidence of Apple's market share during the

15   pertinent time period.  In August 2004, Apple announced it had "more than [a] 70 percent market

16   share of the legal downloads for singles and albums."  Sweeney Decl., Ex. 7 (Press Release, Apple,

17   *iTunes Music Store Catalog Tops One Million Songs*, (Aug. 10, 2004) *available at*

18   www.apple.com/pr/library/2004/aug/10itms.html).  During virtually every quarter of the class

19   period, Apple has publicly stated its market share of the online digital recordings markets. *See, e.g.*,

20   Sweeney Decl., Exs. 8-11 (AAPL – Q4 2004 Earnings Conference Call (Oct. 13, 2004); AAPL – Q3

21   2005 Earnings Conference Call (July 13, 2005); AAPL – Q2 2006 Earnings Conference Call (Apr.

22   19, 2006); APPL – Q1 2007 Earnings Conference Call (Jan. 17, 2007), respectively).  And,

23   according to Jobs, through the end of 2006 alone, Apple sold some 2 billion songs encrypted with

24   ――――――――――――――――――――

25   [4]      On the other hand, it is important to note that " [t]he standard of 'sufficient economic power'
     does not, . . . require that the defendant have a monopoly or even a dominant position throughout the
26   market for the tying product.  Our tie-in cases have made unmistakably clear that the economic
     power over the tying product can be sufficient even though the power falls far short of dominance
27   and even though the power exists only with respect to some of the buyers in the market." *Fortner*,
     394 U.S. at 502-03; *accord Digidyne*, 734 F.2d at 1339-40.

28

1   FairPlay.  Sweeney Decl., Ex. 5 (*see supra*, Jobs, *Thoughts on Music*).  Apple's dominance in the

2   tying product market – if disputed at all – will plainly be proved through common evidence.  *See,*

3   *e.g.*, *In re Visa Check/MasterMoney*, 192 F.R.D. at 87 ("Class-wide determination of defendants'

4   market power is warranted."); *Milonas v. Amerada Hess Corp.*, No. 73 CIV 4263 (JMC), 1976 WL

5   1312, at *4 (S.D.N.Y. Aug. 19, 1976) (sufficiency of market power given alleged unremitting policy

6   was a common question for class-wide resolution); *see generally* Sweeney Decl., Ex. 1 (Noll Decl.,

7   at 10-12, 29-47).

8           ***Effect on Commerce in the Tied Product***.  Showing a "non-insubstantial effect on the

9   volume of commerce in the tied product" is another element of Plaintiffs' tying claim that is "readily

10   amenable" to common proof.  *George Lussier*, 2001 WL 920060, at *8 (citing *Little Caesar*, 172

11   F.R.D. at 266).  In particular, Plaintiffs need only show that the total net revenue derived from tied

12   product sales is "not *de minimis*."  *Moore*, 550 F.2d at 1216; *Digidyne*, 734 F.2d at 1341 & 1347.

13   Far from *de minimis*, Apple's revenue from the direct sales of iPods have easily exceeded $1 billion.

14   *See, e.g.*, Sweeney Decl., Ex. 2, Apple, Inc. Annual Report 2007 (Form 10-K), at 42; Sweeney Decl.,

15   Ex. 12 (Defendant Apple, Inc.'s Answer and Defenses to Plaintiffs' Consolidated Complaint, filed

16   June 6, 2007 ("Answer")), ¶25 (admitting that "Apple's publicly disclosed revenue and profit data

17   speak for themselves . . . .").  *Cf. Datagate*, 60 F.3d at 1425-26 (test met by $100,000 in annual

18   sales); *Moore*, 550 F.2d at 1216 (test met $60,800 in dollar volume).  To the extent Apple attempts

19   to dispute this rather obviously satisfied element, it will be resolved by common evidence.

20           ***Apple's Interest in the Tied Product***.  All proposed class members by definition purchased

21   their iPods directly from Apple, and Apple can hardly deny that it sells the iPods.[5]  Sweeney Decl.,

22   Ex. 12 (Answer, ¶9).  Again, should Apple somehow contest its interest in iPod sales, it would only

23   raise an additional question of fact common to the class as a whole.

24

25   _____

26   [5]      *See also* Sweeney Decl., Ex. 13 (Reply in Support of Motion to Dismiss Antitrust Claims,
     filed November 11, 2006) ("Apple MTD Reply") at 11 n.9 (admitting that Apple digital music files
27   and iPods are priced on Apple's website).

28

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF
CLASS COUNSEL - C-05-00037-JW(RS)                                                    - 13 -

1      ***Potential Affirmative Defenses***.  The business justification defenses asserted by Apple in its

2      Motion to Dismiss the *Tucker* complaint – *e.g.*, that Apple was "required" by music labels to use

3      FairPlay, that without FairPlay Apple's online music store "would not exist" – only serve to

4      ***reinforce*** predominance, by raising additional issues that are indisputably common in character to

5      the class.  Sweeney Decl., Ex. 14 (Defendant's Notice of Motion and Motion to Dismiss Antitrust

6      Claims, filed August 21, 2006) ("Apple MTD")) at 1.  Plaintiff in response will demonstrate by

7      further common evidence that these defenses are purely "pretextual." *Eastman Kodak*, 504 U.S. at

8      484; *see, e.g.*, Sweeney Decl., Ex. 15 (Warner Music Group F1Q07 Earnings Call Feb. 8, 2007

9      *available at* [http://seekingalpha.com/article/26496-warner-music-group-f1q07-qtr-end-12-31-06-](http://seekingalpha.com/article/26496-warner-music-group-f1q07-qtr-end-12-31-06-earnings-call-transcript)

10     [earnings-call-transcript](http://seekingalpha.com/article/26496-warner-music-group-f1q07-qtr-end-12-31-06-earnings-call-transcript)) (Warner Music Group Chairman and CEO advocating label support for

11     interoperability while preserving DRM); *see generally* Sweeney Decl., Ex. 1 (Noll Decl. at 15-16,

12     49-51).[6]  In its Answer Apple also asserts additional, undeniably common defenses.  For example,

13     Apple contends that its actions purportedly did not result in any adverse effects on competition, that

14     any such effects were supposedly outweighed by pro-competitive benefits, and that Apple allegedly

15     did not act with the purpose or intent to suppress or restrain competition.  *See* Sweeney Decl., Ex. 12

16     (Answer at 15).   Plaintiffs will in response demonstrate the availability of less restrictive

17     alternatives.  *Moore*, 550 F.2d at 1217; *Betaseed*, 681 F.2d at 1228; *see also* Sweeney Decl., Ex. 1

18     (Noll Decl., at 13-14, 49-51).  For present purposes, though, it suffices that none of the purported

19     business justifications offered by Apple would require consideration of the individual circumstances

20     of the particular iPod purchase.[7]

21        ***Rule of Reason Analysis***.  If for some reason a *per se* analysis is not applied, Plaintiffs will

22     through common evidence prove that Apple's tie-in policy unreasonably suppresses competition in

_____

24     6      Plaintiffs note, however, that Apple cannot insulate itself from liability by claiming that it
25     was forced into illegal conduct by another party.  *United States v. Loew's, Inc.*, 371 U.S. 38, 51-52
       (1962) (fact that guarantor of loan required defendant to obtain tie-in did not constitute a defense);
26     *Betaseed, Inc. v. U&I, Inc.*, 681 F.2d 1203, 1225 (9th Cir. 1982) (citing *Loew's*, 371 U.S. 38).

27     7      Yet another common issue, Apple also bears the burden of showing that the tie-in was
       reasonable for the entire time it was in effect.  *Betaseed*, 681 F.2d at 1215.

1  the tied product market for portable digital media players. *Tuolumne*, 236 F.3d at 1158.  Under the

2  rule of reason's burden-shifting scheme, Plaintiffs must first "'delineate a relevant market and show

3  that the defendant plays enough of a role in that market to impair competition significantly.'" *Id.* at

4  1159.  Plaintiffs would make that showing here through common evidence of Apple's dominance in

5  both the online recordings and portable digital media player markets.  *See, e.g.*,  Sweeney Decl., Exs.

6  8-11 (APPL – Q4 2004 Earnings Conference Call (Oct. 13, 2004); APPL – Q3 2005 Earnings

7  Conference Call (July 13, 2005); APPL – Q2 2006 Earnings Conference Call (Apr. 19, 2006);

8  APPL – Q1 2007 Earnings Conference Call (Jan. 17, 2007), respectively) Sweeney Decl., Ex. 16

9  (AAPL – Q4 2005 Earnings Conference Call (Oct. 11, 2005)).

10      ***Coercion***.  Defendants sometimes challenge predominance on the theory that "coercion" is

11  an element of a Section 1 tying claim that must be established as to each individual member of the

12  class.  *Newberg*, §18:30, at 112-13; *see generally Little Caesar*, 172 F.R.D. at 253-58 (explaining

13  courts' shorthand use of "coercion" terminology).  Such an argument is unavailing here for at least

14  three reasons.

15      First, "[t]he Ninth Circuit … does not require any showing of such actual coercion in tying

16  claims."  *Bafus*, 236 F.R.D. at 657.  As explained in *Moore*:

17      Although some cases in other circuits have required a showing of actual coercion, . .
18      . our reading of the Supreme Court's opinions supports the view that coercion may
        be implied from a showing that an appreciable number of buyers have accepted
        burdensome terms, such as a tie-in, and there exists sufficient economic power in the
19      tying product market . . . .

20  550 F. 2d at 1217; *accord Tucker*, 493 F. Supp. 2d at 1097 ("there is no requirement that individual

21  purchaser plaintiffs must allege coercion at the individual level, rather than at the market level").  To

22  the extent coercion need be shown at all, therefore, Plaintiffs need only show that "an appreciable

23  number of buyers" have been coerced – a market-level showing made on a class-wide basis.  *See,*

24  *e.g.*, *Bafus*, 236 F.R.D. at 657 (following Moore); *Eastman Kodak*, 1994 WL 508735, at *3 (same);

25  *see also Collins*, 168 F.R.D. at 675-76 (rejecting argument that coercion must be proved

26  individually, so as to preclude class certification).  Therefore, proof of market coercion – *i.e.*, that

27  "an appreciable number of buyers have accepted" the tie-in, and that Apple holds "sufficient

28  economic power in the tying product market" does not require individual "state-of-mind"

1  determinations from every class member so as to preclude class certification.  *Moore*, 550 F. 2d at

2  1217; *accord Bogosian v. Gulf Oil Corp.*, 561 F. 2d 434, 449-50 (3rd Cir. 1977) ("It has never been

3  an element of a plaintiff's case to disprove, nor even a permitted defense, that the tied product is

4  superior to others available on the market, or that even without the tie requirement plaintiff would

5  have purchased the tied product. . . .  The issue is whether the seller acted in a certain way, not what

6  the buyer's state of mind would have been absent the seller's action."); *Anderson Foreign Motors,*

7  *Inc. v. New England Toyota Distrib., Inc.*, 475 F. Supp. 973, 988 (D. Mass. 1979) ("The Supreme

8  Court's *per se* test is designed to eliminate detailed evidentiary inquiries of the type that would be

9  required to prove individual buyer coercion. . . .  It is the nature of the test that it focuses not on the

10  buyer's state of mind but rather on the seller's actions.").

11      Second,  Apple's announced "unremitting policy" of limiting portable play-back of the online

12  digital audio and video recordings to iPods obviates any need to show coercion.  *See Bogosian*, 561

13  F.2d at 450 ("once a plaintiff proves that a defendant has conditioned the sale of one product upon

14  the purchase of another there is no requirement that he prove that his purchase was coerced by the

15  seller's requirement"); *Hill v. A-T-O, Inc.*, 80 F.R.D. 68, 69 (E.D.N.Y. 1978) (in case of "unremitting

16  policy of tie-in," further evidence of coercion is unnecessary).  There is no question here that under

17  Apple's "unremitting policy" of applying FairPlay to the online recordings, buyers may not exercise

18  free choice in choosing a portable digital media player on which to play those recordings – a classic

19  indicia of a tie proscribed under the Sherman Act.  *Northern Pacific Ry.*, 356 U.S. at 6.  Indeed,

20  Apple has unabashedly announced and defended its unequivocal policy of applying FairPlay to the

21  online recordings it sells, such that "music purchased from Apple's iTunes store will only play on

22  iPods." *See, e.g.*, Sweeney Decl., Ex. 5 (*see supra*, Jobs, *Thoughts on Music*) ("[Apple] envelopes

23  each song purchased from the iTunes store in special and secret software so that it cannot be played

24  on unauthorized devices."); Sweeney Decl., Ex. 12 (Answer, ¶50) (admitting that Apple has not

25

26

27

28

1   licensed FairPlay to other portable player manufacturers).[8]  Common evidence of this sort shows that

2   Apple's position went far beyond mere persuasion, and in fact amounted to an "unremitting policy"

3   of tie-in between the iTunes Store's online digital audio and video recordings and the iPod.

4   Compare *Hill v. A-T-O, Inc.*, 535 F.2d 1349, 1355 (2d Cir. 1976) (noting that "defendants admit to a

5   policy of never offering the [tying product] separately from the [tied product]"); *see also Eastman*

6   *Kodak*, 504 U.S. at 463 (conditioning established through evidence of defendant's policy to sell parts

7   to third parties only if they agreed not to buy services from independent service organizations).  At a

8   minimum, the existence of Apple's "unremitting policy" is itself a common question, to be resolved

9   on a class-wide basis.  *See, e.g., Milonas*, 1976 WL 1312, at*4 (the existence vel non of defendants'

10  "unremitting policy" certified for class-wide resolution).

11      Finally, even if evidence of some general "modicum" of involuntariness or coercion were

12  still required here, *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 540 (9th Cir

13  1983), certification remains appropriate because that modicum could be established generally by

14  circumstantial evidence common to the putative class as a whole rather than on a purchaser-by-

15  purchaser basis, such as evidence that Apple's actions "locked-in" a large number of (even if not

16  necessarily all) Apple customers to the use of iPods.  Sweeney Decl., Ex. 1 (Noll Decl. at 14, 48-49);

17  *See, e.g., Digidyne*, 734 F.2d at 1342 (considering both direct and circumstantial evidence of

18  forcing); *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1161 (9th Cir. 2003)

19  (suggesting that evidence of tie-in requirement sent to customers at large would allow inference of

20  coercion); *Hardy v. City Optical, Inc.*, 39 F.3d 765, 770-71 (7th Cir. 1994) (coercion may be proved

21  on a classwide basis with evidence of a "blanket policy"), *Moore*, 550 F.2d at 1217 ("coercion may

22  be implied from a showing that an appreciable number of buyers have accepted burdensome

23  terms. . . . [In *Siegel*] we refused to accept appellant's individual coercion theory and we were not

24  troubled by the fact there was no evidence to show that each [class member] had been required to

25

26  ─────────────────
    [8]    *See also* Sweeney Decl., Ex. 14 (Apple MTD at 3 n.4); Sweeney Decl., Ex. 13 (Apple MTD
27  Reply at 15) (arguing that Apple should not be required to license Fairplay or otherwise take steps to
    allow the online recordings it sells to be played on non-iPod portable digital players).

28

1   purchase the equipment, mixes, and packaging"); *Collins*, 168 F.R.D. at 675-76 (certifying tying

2   claim where proof of coercion focused on the defendants' conduct common to the putative class).

3   Once again, to the extent Apple asserts any such purported defense, doing so would only raise more

4   common issues that adds to predominance. *Martino v. McDonald's System, Inc.*, 81 F.R.D. 81, 93

5   (N.D. Ill. 1979) ("Because the issues of coercion, market power, and fact of damage will be

6   classwide, we hold that common questions of law and fact predominate.").

7                    **(ii)        Section 2 Monopolization Claims**

8           Every element of Plaintiffs' Section 2 claim likewise raises common issues to be proved by

9   common evidence, so as to warrant class certification.  Compare *Live Concert*, 247 F.R.D. at 149.

10          ***Market Power***.  Although the requisite degree of market power may differ somewhat from

11  that applicable to a tying claim, *Digidyne*, 734 F.2d at 1345, Plaintiffs will similarly rely on common

12  evidence to prove Apple's market power in their Section 2 monopolization and attempted

13  monopolization claims.  *See, e.g.*, *In re Visa Check/MasterMoney*, 192 F.R.D. at 88 (each element of

14  attempt to monopolize claim focuses on conduct of the defendants and its effects in the relevant

15  markets, factors that will not vary from plaintiff to plaintiff).  In *Rebel Oil Co., Inc.*, the Ninth

16  Circuit reiterated that market power in a Section 2 claim may be demonstrated by either of two types

17  of proof: (1) direct evidence of injurious exercise of market power, such as evidence of restricted

18  output and supracompetitive prices, or (2) circumstantial evidence of dominance in the relevant and

19  significant barriers to entry and competitor expansion of output.  *Rebel Oil*, 51 F.3d at 1434.  Neither

20  of these alternative approaches turns on proof of the idiosyncratic circumstances of the individual

21  iPod purchaser.  Sweeney Decl., Ex. 1 (Noll Decl. at 12, 35); *See, e.g.*, *Rebel Oil*, 51 F.3d at 1432-43

22  (reviewing evidence submitted in support of and in opposition to motion for summary judgment on

23  attempt to monopolize claim); *Live Concert*, 247 F.R.D. at 147 (same; concluding that whatever the

24  respective merits of the parties' positions, the issue of market definition and market power were

25  predominate common issues supporting class certification).

26          Plaintiffs here can most easily demonstrate Apple's market power in the portable digital

27  media player market through evidence of Apple's market share, including Apple's own admissions

28  of its high market share.  *Eastman Kodak*, 504 U.S. at 464 ("The existence of such power ordinarily

1   is inferred from the seller's possession of a predominant share of the market."); *see, e.g.*, Sweeney

2   Decl., Ex. 17.  (APPL – Apple Computer, Inc. at JP Morgan Technology & Telecom Conference, at

3   3 (May 4, 2004)); Sweeney Decl., Exs. 7, 18 (AAPL-Q4 2004 Earnings Conference Call (Oct. 13,

4   2004); AAPL-Q2 2005 Earnings Conference Call (April 13, 2005), respectively).   Apple's

5   admissions do not of course implicate individual issues.  Moreover, Plaintiffs can also show market

6   power through common economic evidence of concentration in the market and the presence of

7   barriers to entry.  Sweeney Decl., Ex. 1 (Noll Decl. at 32-35).

8       ***Anticompetitive Conduct***.  Similarly, all of the evidence used to prove that Apple "willfully"

9   has obtained, maintained and/or attempted to monopolize the relevant markets (*i.e.*, evidence that

10  Apple obtained or maintained its monopoly through exclusionary, anticompetitive conduct) will

11  come from Apple or its competitors and would-be competitors, not class members. "Anticompetitive

12  conduct is behavior that tends to impair the opportunities of rivals and either does not further

13  competition on the merits or does so in an unnecessarily restrictive way."  *PeaceHealth*, 515 F.3d at

14  894 (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 n.32, 105 S. Ct.

15  2847, 86 L. Ed. 2d 467 (1985)).  For example, when in July 2004 RealNetworks began selling digital

16  music files that were compatible with the iPod, Apple publicly threatened legal action against its

17  would-be competitor, immediately told the public that it would be modify iPod software to once

18  again make it inoperable with Real Networks' music store, and then promptly did exactly that.  *See*

19  CCAC, ¶¶51-56.

20      ***Specific Intent to Monopolize***.  This element of the attempted monopolization claim can be

21  inferred from "'either specific intent coupled with monopoly power ***or*** from ''proof of specific intent

22  to . . . exclude competition . . . accompanied by predatory conduct directed to accomplishing the

23  unlawful purpose.'''  *Moore*, 550 F.2d at 1219.  Plaintiffs will present evidence that Apple took

24  exclusionary actions (like the *RealNetworks* incident just mentioned) to maintain and/or strengthen

25  its monopolies in the online digital entertainment file market and portable digital player market.  The

26  burden will then shift to Apple to demonstrate "valid business reasons" for its actions.  *Eastman*

27  *Kodak*, 504 U.S. at 483.  Plainly any and all such proof will focus on the conduct of Apple, and not

28  on the circumstances of any individual consumer.  Sweeney Decl., Ex. 1, (Noll Decl. at 49-51).

1    ***Dangerous Probability of Success***.  In the Ninth Circuit a dangerous probability of success

2    may be inferred from the existence of predatory or anticompetitive conduct.  *Foremost*, 703 F.2d at

3    544.  Once again, therefore, the evidence presented will be of Apple's own company-wide actions,

4    not the actions of any individual iPod purchaser.

5                    **(iii)        Antitrust Impact**

6            One tactic in opposing class certification in antitrust cases is to isolate and focus on the

7    question of antitrust impact, hoping to convince the court that such impact can only be proven on an

8    individual basis.  To demonstrate antitrust impact at trial, though, Plaintiffs will need only show

9    ***some*** injury suffered as a consequence of the alleged anti-competitive behavior.  *See Zenith Radio*

10   *Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9, 89 S. Ct. 1562, 23 L. Ed. 2d 129 (1969)

11   (noting the "burden of proving the fact of damage . . . is satisfied by . . . proof of ***some*** damage

12   flowing from the unlawful [conduct]; inquiry beyond this minimum point goes only to the amount

13   and not the fact of damage" (emphasis in original)).[9]  At the class certification stage, therefore,

14   Plaintiffs "need only advance a plausible methodology to demonstrate that antitrust injury can be

15   proven on a class-wide basis."  *DRAM*, 2006 WL 1530166, at *9.

16           Antitrust impact is typically established for class certification purposes through expert

17   testimony that generally accepted economic methodologies are available to demonstrate such impact

18   and to reasonably calculate such damages on a class-wide basis.  *Live Concert*, 247 F.R.D. at 144;

19   *DRAM*, 2006 WL 1530166, at *8; *Estate of Garrison*, 1996 WL 407849, at *4; *See, e.g.*, *Bafus*, 236

20   F.R.D. at 658 (expert declaration described what appeared to the court to be a viable method for

21   determining economic effect on a class basis).

22           Plaintiffs have done just that here.  Professor Noll explains in summary (Sweeney Decl.,

23   Ex. 1 (Noll Decl. at 14-15)) and in depth (Sweeney Decl., Ex. 1 at 47-49) the different ways Apple's

24   alleged anticompetitive actions have harmed competition in the relevant markets, including

25   _____

26   [9]        Indeed, an even lesser showing is needed under the Clayton Act (applicable here because two
     tangible products are involved): the plaintiff need only show that the challenged conduct "may tend"
27   to substantially lessen competition.  *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*,
     512 F.2d 1264, 1275 (9th Cir. 1975).

28

1   specifically not only supracompetitive pricing for iPods (specifically addressed below in the context

2   of ways to calculate antitrust damages), but also (a) "dead-weight loss" that occurs when prices

3   exceed the incremental cost of production,  (b) reduced intensity of competition among other firms

4   in the respective markets, and (c) the adverse effects of "lock-in" due to technological

5   incompatibility, which extends not only to reduced choice for consumers but also to reduced

6   incentive to innovate by competitors.  Professor Noll confirms that the economic evidence to

7   establish these harms, involving product features and market outcomes, is common to all class

8   members.  Sweeney Decl., Ex. 1, (Noll Decl., at 48-49).

9          One illustration of the type of common evidence that will be used to prove antitrust impact

10  on competition in the tied products market is the Declaration of Lee Morse, Director of Emerging

11  Technology for Creative Labs, Inc., a portable digital player competitor of Apple, who confirms

12  Creative's belief that Apple's encryption of online recordings purchased from the iTunes Store has

13  had a negative impact on Creative's sale of portable digital media players.  Sweeney Decl., Ex. 19

14  (Declaration of Lee Morse, filed Jan. 22, 2007).

15                              **(iv)        Antitrust Damages**

16         Once antitrust injury is established, the overall burden of proving damages is eased

17  significantly under both Section 1 and Section 2 of the Sherman Act.  *Moore v. Jas. H. Matthews &*

18  *Co.*, 682 F.2d 830, 836 (9th Cir. 1982); *See, e.g.*, *DRAM*, 2006 WL 1530166, at *10.  Individual

19  damages issues are thus generally no bar to certification of antitrust claims.  *Live Concert*, 2007 WL

20  4291967, at * 37-*39, *51, *In re Rubber Chemicals*, 232 F.R.D. at 354, *A-T-O*, 80 F.R.D. at 70; *see*

21  *generally Newberg*, §18:27.

22         Here again the quantification of damages only **reinforces** predominance because Plaintiffs

23  will calculate damages on a class-wide basis, based upon one or more of three well-established and

24  reliable damages methodologies.  Compare *Little Caesar*, 172 F.R.D. at 267; *DRAM*, 2006 WL

25  1530166, at *10; *In re Sugar Indus. Antitrust Litig.*, No. MDL 201, 1976 WL 1374, at *27 (N.D.

26  Cal. May 21, 1976).  Specifically, Professor Noll confirms that antitrust damages can be calculated

27  under the "before and after" method, the "yardstick" method or the "mark-up" method – all

28  recognized methodologies that, in Professor Noll's opinion, are suitable for use in this case based

1   upon the exemplars supplied by Apple and upon information available to and reasonably relied upon

2   by experts in the field of econometrics.  Sweeney Decl., Ex. 1 (Noll Decl. at 51-59); *accord Live*

3   *Concert*, 247 F.R.D. at 144 ("Plaintiffs have demonstrated that several generally accepted

4   methodologies can be used to prove class-wide impact through the use of common evidence.").

5        Courts have repeatedly acknowledged these methodologies as accepted means of calculating

6   class-wide damages in the antitrust context.  *See, e.g.*, *In re NASDAQ Market Makers Antitrust*

7   *Litig.*, 169 F.R.D 493, 521 (S.D.N.Y. 1996) (holding the "'yardstick'" method for calculating

8   damages, which "compares profits earned or prices paid by the plaintiff with the corresponding data

9   for a . . . market unaffected by the violation . . . is an accepted means of measuring damages in an

10   antitrust action."); *In re Indus. Silicon Antitrust Litig.*, No. 95-1131, 1998 WL 1031507, at *3 (W.D.

11   Pa. Oct. 13, 1998) (finding expert's before-and-after comparison proper model for showing antitrust

12   damages); *In re Corrugated Container Antitrust Litig.*, MDL No. 310, 1979 WL 1751, at *2 (S.D.

13   Tex. Dec. 21, 1979) (approving, over objection, damages amount in antitrust settlement because

14   expert's damages "estimate was based on a before-and-after model, using the four years within the

15   statute of limitations as 'before' and the years 1977 and 1978, after the grand jury investigation was

16   underway, as 'after.'").

17        Apple may attempt to attack Professor Noll's application of these accepted models for

18   calculating class-wide damages, but once again this is not the time or place to resolve any battle of

19   the experts; "It is not necessary that plaintiffs show that their expert's methods will work with

20   certainty at this time.  Rather, plaintiffs' burden is to present the court with a likely method for

21   determining class damages." *Tableware*, 241 F.R.D. at 652 (quoting *In re Domestic Air Transp.*,

22   137 F.R.D. at 693); *accord Dukes*, 509 F.3d at 1192-93; *Live Concert*, 247 F.R.D. at 110 ("a district

23   court is not permitted to discount the testimony of a plaintiff expert merely because the defendant

24   has challenged some aspect of the expert's opinion"); *In re Rubber Chemicals*, 232 F.R.D. at 353

25   (same).

26            **b.    Superiority**

27        Superiority is demonstrated where "classwide litigation of common issues will reduce

28   litigation costs and promote greater efficiency."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227,

1   1234 (9th Cir. 1996).  Apple cannot seriously question the superiority of the class mechanism in

2   resolving the antitrust claims asserted against it here.  *See, e.g.*, *Bafus*, 236 F.R.D. at 658 (tying

3   claim satisfied superiority requirement); *George Lussier*, 2001 WL 920060, at *6-*7 (same); *Little*

4   *Caesar*, 172 F.R.D. at 267 (same); *Collins*, 168 F.R.D. at 677 (same); *Eastman Kodak*, 1994 WL

5   508735, at *3.  Litigation of the tying and monopolization claims of each iPod purchaser on an

6   individual basis is plainly not the preferable alternative.  *Live Concert*, 247 F.R.D. at 148 (holding

7   class mechanism clearly superior way to resolve antitrust claims, even if individualized damages

8   analysis were assumed *arguendo* to be required); *DRAM*, 2006 WL 1530166, at *11 ("it would be

9   unnecessarily duplicative, and judicially inefficient, for the court to mandate individual trials as to

10  each class member"); *see generally Newberg*, §4:32 at 269 ("It is only when such difficulties make a

11  class action less fair and efficient than some other method, such as individual interventions or

12  consolidation of individual lawsuits, that a class action is improper.").

13        Indeed, class certification is nothing less than essential if the private antitrust enforcement

14  mechanism is to function at all.  As stated in *Tableware*: "The modest amount at stake for individual

15  plaintiffs . . . renders individual prosecution impractical; class treatment not only promotes judicial

16  economy, it represents plaintiffs' **only** chance for adjudication."  *Tableware*, 241 F.R.D.  at 652

17  (citing *Amchem Prods.*, 521 U.S. at 616).

18        **C.   There Exists Readily Definable Classes of Apple Customers**

19        A Rule 23 class must be defined with reasonable specificity.  *O'Connor v. Boeing North Am.,*

20  *Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).  A class definition is "definite enough" to satisfy Rule

21  23 if it "is administratively feasible for the court to ascertain whether an individual is a member."

22  *Tableware*, 241 F.R.D. at 650 (quoting *O'Connor*).  The class definition proposed by Plaintiffs

23  here – all persons who purchased specified products directly from Apple during a specified time

24  period – unquestionably constitutes an "ascertainable class" within the meaning of Rule 23.  *See,*

25  *e.g.*, *Live Concert*, 247 F.R.D. at 155 (certifying class, for example, of "All persons who purchased

26  tickets to any live rock concert in the Chicago Region directly from any of the Defendants or their

27  affiliates or predecessors or agents during the period from June 19, 1998 to the present.").  This

28  Court has certified far less precisely defined classes.  *See, e.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D.

1   649, 650-51 (C.D. Cal. 2000) (certifying class defined as persons who have suffered or will suffer

2   economic damage as a result of an oil spill and/or the ensuing clean-up effort).

3           **D.      Appointment of Class Counsel**

4           Rule 23 requires the Court to appoint counsel to represent the interests of the class.  Fed. R.

5   Civ. P. 23(g)(1).  *In re Rubber Chemicals*, 232 F.R.D. at 355.  For the reasons stated above in

6   connection with the adequacy requirements of Rule 23(a)(4), and as has hopefully been

7   demonstrated thus far in this litigation, the law firms retained by Plaintiffs to prosecute this class

8   action are "well equipped" to vigorously represent the proposed classes.  *See* Exs. 3, 4 (Coughlin

9   Stoia Geller Rudman & Robbins LLP and The Katriel Law Firm Resumes).  The Court should

10  accordingly appoint Coughlin Stoia Geller Rudman & Robbins LLP and The Katriel Law Firm as

11  co-counsel for the class.

12  **IV.    PLAINTIFFS' STATE LAW CLAIMS**

13          The analysis under California's antitrust law mirrors the analysis under federal law because

14  the Cartwright Act, Cal. Bus. & Prof.Code §16700 *et seq.*, was modeled after the Sherman Act.

15  *Tuolumne*, 236 F.3d at 1160; *Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1091 (9th

16  Cir. 2000); *Mailand v. Burckle*, 20 Cal. 3d 367, 375, 143 Cal. Rptr. 1 (1978).  Accordingly, the same

17  Rule 23 analysis applies to Plaintiffs' Cartwright Act claims.  *See, e.g.*, *In re Relafen Antitrust Litig.*,

18  221 F.R.D. 260, 283 (D. Mass. 2004) (certifying Cartwright Act claims).

19

20

21

22

23

24

25

26

27

28

1   **V.     CONCLUSION**

2       All of Rule 23's requirements for the certification of Plaintiffs' antitrust claims against Apple

3   have been satisfied.  Plaintiffs' Motion for class certification is therefore well-taken, and should be

4   granted.  For the reasons stated above, the Court should also appoint Coughlin Stoia Geller Rudman

5   & Robbins, LLP, and The Katriel Law Firm as Co-Lead Counsel for the Class.

6   DATED:  July 21, 2008                         Respectfully submitted,

7                                                 COUGHLIN STOIA GELLER
                                                    RUDMAN & ROBBINS LLP
8                                                 BONNY E. SWEENEY

9

10                                                _____s/ BONNY E. SWEENEY_____
                                                       BONNY E. SWEENEY

11
                                                  655 West Broadway, Suite 1900
12                                                San Diego, CA  92101
                                                  Telephone:  619/231-1058
13                                                619/231-7423 (fax)

14                                                THE KATRIEL LAW FIRM
                                                  ROY A. KATRIEL
15                                                1101 30th Street, N.W., Suite 500
                                                  Washington, DC  20007
16                                                Telephone:  202/625-4342
                                                  202/330-5593 (fax)

17
                                                  Co-Lead Counsel for Plaintiffs
18
                                                  BONNETT, FAIRBOURN, FRIEDMAN
19                                                   & BALINT, P.C.
                                                  ANDREW S. FRIEDMAN
20                                                FRANCIS J. BALINT, JR.
                                                  ELAINE A. RYAN
21                                                TODD D. CARPENTER
                                                  2901 N. Central Avenue, Suite 1000
22                                                Phoenix, AZ  85012
                                                  Telephone:  602/274-1100
23                                                602/274-1199 (fax)

24                                                BRAUN LAW GROUP, P.C.
                                                  MICHAEL D. BRAUN
25                                                12304 Santa Monica Blvd., Suite 109
                                                  Los Angeles, CA  90025
26                                                Telephone:  310/442-7755
                                                  310/442-7756 (fax)

27
                                                  MURRAY, FRANK & SAILER LLP
28                                                BRIAN P. MURRAY

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF
CLASS COUNSEL - C-05-00037-JW(RS)                                              - 25 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JACQUELINE SAILER
275 Madison Avenue, Suite 801
New York, NY 10016
Telephone: 212/682-1818
212/682-1892 (fax)

GLANCY BINKOW & GOLDBERG LLP
MICHAEL GOLDBERG
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: 310/201-9150
310/201-9160 (fax)

Additional Counsel for Plaintiffs

S:\CasesSD\Apple Tying\BRF00052711_Certification Mot.doc

1

<u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that on July 21, 2008, I electronically filed the foregoing with the Clerk of

3   the Court using the CM/ECF system which will send notification of such filing to the e-mail

4   addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

5   mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

6   participants indicated on the attached Manual Notice List.

7          I certify under penalty of perjury under the laws of the United States of America that the

8   foregoing is true and correct.  Executed on July 21, 2008.

9

10                                          s/ BONNY E. SWEENEY
                                           BONNY E. SWEENEY

11
                                           COUGHLIN STOIA GELLER
12                                               RUDMAN & ROBBINS LLP
                                           655 West Broadway, Suite 1900
13                                         San Diego, CA  92101-3301
                                           Telephone:  619/231-1058
14                                         619/231-7423 (fax)

15                                         E-mail:Bonnys@csgrr.com

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 5:05-cv-00037-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Michael David Braun**
  service@braunlawgroup.com

- **Andrew S. Friedman**
  rcreech@bffb.com,afriedman@bffb.com

- **Roy A. Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com,ewallace@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,ybennett@jonesday.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Adam Richard Sand , Esq**
  invalidaddress@invalidaddress.com

- **John J. Stoia , Jr**
  jstoia@csgrr.com

- **Tracy Strong**
  tstrong@jonesday.com,dharmon@jonesday.com

- **Bonny E. Sweeney**
  bonnys@csgrr.com,tturner@csgrr.com,E_file_sd@csgrr.com

- **Helen I. Zeldes**
  helenz@zeldeslaw.com,hzeldes@yahoo.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Todd David Carpenter**
Bonnett, Fairbourn, Friedman, & Balint
2901 N. Central Avenue
Suite 1000
Phoenix, AZ 85012

**Elaine A. Ryan**
Bonnett Fairbourn Friedman & Balint, P.C
2901 N. Central Avenue
Suite 1000
Phoenix, AZ 85012