# EXHIBIT 3

# COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP

**COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP** ("Coughlin Stoia") is a 190-lawyer firm with offices in San Diego, San Francisco, Los Angeles, New York, Boca Raton, Washington, D.C., Philadelphia and Atlanta (*www.csgrr.com*). Coughlin Stoia is actively engaged in complex litigation, emphasizing securities, consumer, insurance, healthcare, human rights, employment discrimination and antitrust class actions. Coughlin Stoia's unparalleled experience and capabilities in these fields are based upon the talents of its attorneys who have successfully prosecuted thousands of class-action lawsuits.

This successful track record stems from our experienced attorneys, including many who left partnerships at other firms or came to Coughlin Stoia from federal, state and local law enforcement and regulatory agencies, including dozens of former prosecutors and SEC attorneys. Coughlin Stoia also includes more than 25 former federal and state judicial clerks.

Coughlin Stoia currently represents more institutional investors, including public and multi-employer pension funds – domestic and international financial institutions – in securities and corporate litigation than any other firm in the United States.

Coughlin Stoia is committed to practicing law with the highest level of integrity and in an ethical and professional manner. We are a diverse firm with lawyers and staff from all walks of life. Our lawyers and other employees are hired and promoted based on the quality of their work and their ability to enhance our team and treat others with respect and dignity. Evaluations are never influenced by one's background, gender, race, religion or ethnicity.

We also strive to be good corporate citizens and to work with a sense of global responsibility. Contributing to our communities and our environment is important to us. We raised hundreds of thousands of dollars in aid for the victims of Hurricane Katrina and we often take cases on a *pro bono* basis. We are committed to the rights of workers and to the extent possible, we contract with union vendors. We care about civil rights, workers' rights and treatment, workplace safety and environmental protection. Indeed, while we have built a reputation as the finest securities and consumer class action law firm in the nation, our lawyers have also worked tirelessly in less high-profile, but no less important, cases involving human rights.

## PRACTICE AREAS

### Securities Fraud

As recent corporate scandals demonstrate clearly, it has become all too common for companies and their executives – and often with the help of their advisors, such as bankers, lawyers and accountants – to manipulate the market price of their securities by misleading the public about the company's financial condition or prospects for the future. This misleading information has the effect of artificially inflating the price of the company's securities above their true value. When the underlying truth is eventually revealed, the prices of these securities plummet, harming those innocent investors who relied upon the company's misrepresentations.

Coughlin Stoia is the leader in the fight to provide investors with relief from corporate securities fraud. We utilize a wide range of federal and state laws to provide investors with remedies, either by

bringing a class action on behalf of all affected investors or, where appropriate, by bringing individual cases.

The Firm's reputation for excellence has been repeatedly noted by courts and has resulted in the appointment of Coughlin Stoia attorneys to lead roles in hundreds of complex class-action securities and other cases. In the securities area alone, the Firm's attorneys have been responsible for a number of outstanding recoveries on behalf of investors. Currently, Coughlin Stoia attorneys are lead or named counsel in approximately 500 securities class action or large institutional-investor cases. Some current and past cases include:

- **In re Enron Corp. Sec. Litig.**, Case No. H-01-3624 (S.D. Tex.). Coughlin Stoia attorneys are sole lead counsel representing the interests of Enron investors in this class action alleging securities fraud violation against numerous defendants, including many of Wall Street's biggest banks and law firms. To date, Coughlin Stoia attorneys and lead plaintiff The Regents of the University of California have obtained settlements in excess of $7.3 billion for the benefit of investors, the largest aggregate settlement in securities litigation history.

- **In re WorldCom Sec. Litig. (Alaska Electrical Pension Fund v. CitiGroup, Inc.)**, Case No. 03-CV-8269 (DLC) (S.D.N.Y.). Coughlin Stoia attorneys represented more than 50 private and public institutions that opted out of the class-action case and sued WorldCom's bankers, officers and directors, and auditors in courts around the country for losses related to WorldCom bond offerings from 1998-2001. The Firm's clients included major public institutions from across the country such as CalPERS, CalSTRS, the state pension funds of Maine, Illinois, New Mexico and West Virginia, union pension funds, and private entities such as AIG and Northwestern Mutual. Coughlin Stoia attorneys recovered more than $650 million for its clients on the May 2000 and May 2001 bond offerings (the primary offerings at issue), substantially more than they would have recovered in the class.

- **In re Cardinal Health, Inc. Sec. Litig.**, Case No. C2-04-00575 (ALM) (S.D. Ohio). As sole lead counsel representing Cardinal Health shareholders, Coughlin Stoia obtained a recovery of $600 million that was preliminarily approved in July 2007. On behalf of the lead plaintiffs, Amalgamated Bank, the New Mexico State Investment Council, the California Ironworkers Field Trust Fund and PACE Industry Union-Management Pension Fund, Coughlin Stoia aggressively pursued class claims and won notable courtroom victories, including a favorable decision on defendants' motion to dismiss. *In re Cardinal Health, Inc. Sec. Litig.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006). At the time, the $600 million settlement was the tenth largest settlement in the history of securities fraud litigation and is the largest ever recovery in a securities fraud action in the Sixth Circuit.

- **AOL Time Warner Cases I & II**, JCCP Nos. 4322 & 4325 (Cal. Super. Ct., Los Angeles County). Coughlin Stoia represented The Regents of the University of California, six Ohio state pension funds, Rabo Bank (NL), the Scottish Widows Investment Partnership, about a dozen Australian public and private funds, insurance companies, and numerous additional institutional investors, domestic and international, in state and federal court opt-out litigation stemming from Time Warner's disastrous 2001 merger

with internet high flier America Online. Coughlin Stoia attorneys exposed a massive and sophisticated accounting fraud involving America Online's e-commerce and advertising revenue. After almost four years of litigation involving extensive discovery, Coughlin Stoia secured combined settlements for its opt-out clients totaling over $618 million just weeks before The Regents' case pending in California state court was scheduled to go to trial. The Regents' gross recovery of $244 million is the largest individual opt-out securities recovery in history.

- ***In re HealthSouth Corp. Sec. Litig.***, Case No. CV-03-BE-1500-S (N.D. Ala.). As court-appointed co-lead counsel, Coughlin Stoia attorneys obtained a landmark settlement of $445 million from HealthSouth and certain of its former directors and officers and certain other parties for the benefit of stockholder plaintiffs. A product of hard-fought litigation, the settlement represents one of the larger settlements in securities class action history and is considered among the top 15 settlements achieved after passage of the Private Securities Litigation Reform Act of 1995. For nearly a decade, HealthSouth, its investment bankers and its auditor perpetrated one of the largest and most pervasive frauds in the history of United States healthcare, prompting Congressional and law enforcement inquiry and resulting in guilty pleas of 16 former HealthSouth executives in related federal criminal prosecutions. Coughlin Stoia attorneys continue to prosecute complex civil actions vigorously against remaining defendants, including former HealthSouth CEO Richard Scrushy as well as UBS AG and Ernst & Young LLP for their participation in this massive scheme to defraud HealthSouth's investors. In January 2007, Coughlin Stoia attorneys defeated the remaining defendants' motions to dismiss, and the case has now proceeded to full discovery where Coughlin Stoia attorneys are aggressively marshaling the evidence required to win further large recoveries for the victims of this immense fraud.

- ***In re Qwest Commc'ns Int'l, Inc. Sec. Litig.***, Case No. 01-CV-1451-REB-CBS (D. Colo.). Coughlin Stoia attorneys are currently serving as lead counsel for the class of investors that purchased Qwest securities. In July 2001, the Firm filed the initial complaint in this action on behalf of its clients, long before any investigation into Qwest's financial statements was initiated by the SEC or Department of Justice. After five years of litigation, lead plaintiffs entered into a proposed partial settlement with Qwest and certain individual defendants that guarantees a $400 million recovery for the class and further provides for a mechanism that will allow the vast majority of class members to share in an additional $250 million recovered by the SEC. The district court approved the settlement in late 2006. Non-settling defendants such as Joseph P. Nacchio and Robert S. Woodruff have appealed the final approval of the settlement. Coughlin Stoia will continue to prosecute the class' claims against Joseph P. Nacchio and Robert S. Woodruff, the CEO and CFO respectively of Qwest during large portions of the class period.

- ***In re AT&T Corp. Sec. Litig.***, MDL No. 1399 (D.N.J.). Coughlin Stoia attorneys served as lead counsel for a class of investors that purchased AT&T common stock. The case charged defendants AT&T Corporation and its former Chairman and CEO, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, the largest IPO in American history. After two weeks of trial, and on the eve of scheduled testimony by

Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million. In granting approval of the settlement, the Court stated the following about the Coughlin Stoia attorneys handing the case:

> Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during [this] litigation substantiates this characterization. The Court notes that Lead Counsel displayed excellent lawyering skills through their consistent preparedness during court proceedings, arguments and the trial, and their well-written and thoroughly researched submissions to the Court. Undoubtedly, the attentive and persistent effort of Lead Counsel was integral in achieving the excellent result for the Class.

- ***Brody v. Hellman*** (U.S. West Dividend Litigation), Case No. 00-CV-4142 (Dist. Ct. for the City and Cty. of Denver, Colo.). Coughlin Stoia attorneys were court-appointed counsel for the class of former stockholders of U.S. West, Inc. who sought to recover a dividend declared by U.S. West before its merger with Qwest. The merger closed before the record and payment dates for the dividend, which Qwest did not pay following the merger. The case was aggressively litigated, and the plaintiffs survived a motion to dismiss, two motions for summary judgment, and successfully certified the class over vigorous opposition from defendants. In certifying the class, the Court commented, "Defendants do not contest that Plaintiffs' attorneys are extremely well qualified to represent the putative class. This litigation has been ongoing for years; in that time Plaintiffs' counsel has proven that they are more than adequate in ability, determination, and resources to represent the putative class." The case settled for $50 million on the day before trial was scheduled to commence. At the August 30, 2005 final approval hearing relating to the settlement, the Court noted that the case "was litigated by extremely talented lawyers on both sides" and that the settlement was "a great result." In describing the risk taken by Coughlin Stoia and its co-counsel, the Court noted, "There wasn't any other lawyer[] in the United States that took the gamble that these people did. Not one other firm anywhere said I'm willing to take that on. I'll go five years. I'll pay out the expenses. I'll put my time and effort on the line." In discussing the difficulties facing Coughlin Stoia in this case, the Court said, "There wasn't any issue that wasn't fought. It took a great deal of skill to get to the point of trial." In concluding, the Court remarked that the class was "fortunate they had some lawyers that had the guts to come forward and do it."

Coughlin Stoia's Securities Department includes dozens of former federal and state prosecutors and trial attorneys. The Firm's securities practice is also strengthened by the existence of a strong Appellate Department, whose collective work has established numerous legal precedents. The Securities Department also utilizes an extensive group of in-house economic and damage analysts, investigators and forensic accountants to aid in the prosecution of complex securities issues.

While obtaining monetary recoveries for our clients is our primary focus, Coughlin Stoia attorneys have also been at the forefront of securities fraud ***prevention***. The Firm's prevention efforts are focused on creating important changes in corporate governance, either as part of the global

settlements of derivative and class cases or through court orders. Recent cases in which such changes were made include:

- ***Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Hanover Compressor Co.***, Case No. H-02-0410 (S.D. Tex.). Groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; and creation and appointment of lead independent director with authority to set up board meetings.

- ***In re Sprint Corp. S'holder Litig.***, Case No. 00-CV-230077 (Cir. Ct. Jackson County, Mo.). In connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions which, among other things, established a truly independent board of directors and narrowly defines "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis.

- ***Teachers' Ret. Sys. of La. v. Occidental Petroleum Corp.***, Case No. BC185009 (Cal. Super. Ct., Los Angeles County). As part of the settlement, corporate governance changes were made to the composition of the company's board of directors, the company's nominating committee, compensation committee and audit committee.

- ***Barry v. E*Trade Group, Inc.***, Case No. CIV419804 (Cal. Super. Ct., San Mateo County). In connection with settlement of derivative suit, excessive compensation of the company's CEO was eliminated (reduced salary from $800,000 to zero; bonuses reduced and to be repaid if company restates earnings; reduction of stock option grant; and elimination of future stock option grants) and important governance enhancements were obtained, including the appointment of a new unaffiliated outside director as chair of board's compensation committee.

Through these efforts, Coughlin Stoia has been able to create substantial shareholder guarantees to prevent future securities fraud. The Firm works closely with noted corporate governance consultant Robert Monks and his firm, LENS Governance Advisors, to shape corporate governance remedies for the benefit of investors.

### Corporate Takeover Litigation

Coughlin Stoia is at the forefront of representing the rights of the public shareholders of companies whose management has agreed to a corporate buyout, merger or other corporate transaction. Directors and officers of public companies owe shareholders the highest fiduciary duties under the law. Because corporate takeover transactions are often riddled with conflicts of interest, the duties owed to shareholders are all too often breached, resulting in transactions that are either financially unfair to shareholders, procedurally unfair to shareholders, or both. Among the cases in which

Coughlin Stoia attorneys have successfully represented shareholders in corporate takeover litigation are:

- ***Charter Township of Clinton Police and Fire Ret. Sys. v. OSI Res. Partners, Inc.***, Case No. 06-010348 (Hillsborough County Cir. Ct., Fla.). On behalf of a large institutional investor, Coughlin Stoia's attorneys sued to block a deal under which two private equity firms teamed up with the founders and executives of the Outback Steakhouse ("OSI") chain to take the company private. As a result of the litigation, OSI was forced to make major modifications to the corporate merger agreement and to disclose a host of additional financial and other information about the negotiations to shareholders. This, in turn, led to a concern by the private equity buyers that the shareholders, armed with more information, would vote against the transaction. Thus, the consideration was increased by over $60 million. The OSI shareholders approved the transaction, which was improved both procedurally and financially by the litigation.

- ***In re HCA Inc. S'holder Litig.***, Case No. 06-1816 III (Davidson County Ch. Ct., Tenn.). Coughlin Stoia represented Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust, on behalf of itself and HCA's shareholders, in this action challenging the inadequate process by which defendants agreed to sell HCA (the $33 billion sale was the largest management-led buyout in history at the time it was announced). On the eve of a preliminary injunction hearing challenging the sale of HCA, defendants capitulated to Coughlin Stoia's client's demands and agreed to various provisions that helped ensure a fair merger process for HCA's public shareholders. Specifically, Coughlin Stoia was instrumental in achieving the following substantial benefits on behalf of the class: (i) a material expansion of appraisal rights for those HCA shareholders who opted for appraisal rather than accepting the $51 per share offered in the transaction; (ii) a $280 million (or almost 60%) reduction in the termination fee that that would have been payable to the buyout group in the event that a competing bid for HCA emerged, thus making competing bids more feasible; (iii) disclosure of additional material information to shareholders, thus aiding them in deciding whether to approve or reject the transaction, and whether to seek appraisal as an alternative thereto; and (iv) a provision creating "majority of the minority" protection for the company's public shareholders which would permit the litigation to proceed unless the transaction obtained the approval of a majority of those shareholders unaffiliated with the First family (HCA's controlling shareholders).

- ***Wetzel v. Karol*** (ElkCorp Derivative), Case No. CC-06-18562-B (Dallas County Ct. at Law, Tex.). Coughlin Stoia's attorneys challenged defendants' modifications to ElkCorp's shareholder rights plan (the "poison pill") as a deal-protection device to "lock up" the proposed buyout of the company by Carlyle and prevent the company shareholders from tendering their shares into the tender offer that had been made by Building Materials Corporation of America ("BMCA"). The Court granted Coughlin Stoia's request for a temporary restraining order which prohibited defendants from issuing any rights certificates pursuant to the poison pill and also prohibited the payment of a termination fee of $29 million by the company to Carlyle.

- ***In re Prime Hospitality, Inc. S'holders Litig.***, Case No. 652-N, 2005 Del. Ch. LEXIS 61 (Del. Ch. Ct. May 4, 2005). On behalf of a large institutional investor, Coughlin Stoia's attorneys successfully objected to an inadequate settlement in this action. After the Court refused to approve the settlement and granted the institutional investor's motion to intervene, Coughlin Stoia successfully renegotiated a $25 million settlement for Prime Hospitality's shareholders.

- ***In re Cablevision Sys. Corp. S'holders Litig.***, Case No. 06-016807 (N.Y. Super. Ct., County of Nassau). Coughlin Stoia represented a large institutional investor as one of the court-appointed lead counsel in a lawsuit seeking to block the attempted buyout of Cablevision by its majority shareholders. The litigation resulted in an increase of more than $2.2 billion in cash consideration being offered to Cablevision's public stockholders, and provided additional protections, including $300 million of personal guarantees from the controlling shareholders for any liabilities payable as a result of a breach of the merger agreement.

- ***Phillips v. Reckson Assoc. Realty Corp.***, Case No. 06-12871 (N.Y. Super. Ct., County of Nassau). Coughlin Stoia served as lead counsel in an action involving the takeover of Reckson Associates Corporation by SL Green Realty Corporation pursuant to which SL Green was to acquire Reckson and then sell a large portion of Reckson's real estate properties back to former members of Reckson's management team. Following briefing on a motion for a preliminary injunction, defendants agreed, among other things, that if the former members of Reckson's management sell their interests in certain of those properties at a profit within three years, Reckson's stockholders would receive an agreed-upon percentage of any such profit. In addition, in the event that Reckson's former management is given the right and approval to develop a certain parcel of land, they are required to pay Reckson's former shareholders an additional $20 million in cash. Moreover, as part of the settlement, Reckson's former shareholders received Reckson's interests in contingent profit-sharing participations in connection with the sale of certain Long Island industrial properties. Also, as a result of the litigation, defendants were required to make additional disclosures about the terms and conditions of the deal between SL Green and Reckson management. Those disclosures resulted in shareholders demanding and receiving a $25 million dividend.

## Options Backdating Litigation

As has been widely reported in the media, the stock options backdating scandal suddenly engulfed hundreds of publicly traded companies throughout the country. Coughlin Stoia is at the forefront of investigating and, where necessary, pursuing options backdating derivative and securities cases in this new and developing area. Coughlin Stoia's lawyers are presently prosecuting the enormous and high-profile *UnitedHealth Group* securities class action in Minnesota, where the California Public Employees' Retirement System is the court-appointed sole lead plaintiff. Coughlin Stoia's lawyers are also serving as lead counsel in several large derivative actions such as *The Home Depot, Inc.*, *Vitesse Semiconductor*, *Family Dollar Stores, Inc.* and *KLA-Tencor Corp.*

**Insurance**

Fraud in the insurance industry by executives, agents, brokers, lenders and others is one of the most costly crimes in America. Driving up everyone's insurance prices, some experts estimate the annual cost of this rising tide of white collar crime to be $120 billion nationally. Coughlin Stoia stands at the forefront in protecting the rights of consumers and state and federal entities against insurance fraud and unfair business practices in the insurance industry.

Coughlin Stoia attorneys were the first to expose the illegal and improper bid-rigging and kickback scandal between insurance companies and their brokers. The Firm is currently one of the lead firms representing businesses, individuals, school districts, counties and the State of California in numerous actions in state and federal courts nationwide.

Our attorneys prosecute claims relating to the fraudulent and improper sale and servicing of insurance policies to recoup losses for victimized policy owners. For example, Coughlin Stoia attorneys have represented and continue to represent policy owners against insurance companies who made misrepresentations at the point of sale concerning how the policy will perform, the amount of money the policy will cost, and whether premiums will "vanish." Claims also include allegations that purchasers were misled concerning the financing of a new policy, falling victim to a "replacement" or "churning" sales scheme where they were convinced to use loans, partial surrenders or withdrawals of cash values from an existing permanent life insurance policy to purchase a new policy.

Coughlin Stoia attorneys have long been at the forefront of race discrimination litigation against life insurance companies for their practice of intentionally charging African-Americans and other minorities more for life insurance than similarly situated Caucasians. Our attorneys have recovered over $400 million for African-Americans and other minority class members as redress for the civil rights abuses they were subjected to, including landmark recoveries in *McNeil v. Am. Gen. Life & Accident Ins. Co.*, *Thompson v. Metro. Life Ins. Co.* and *Williams v. United Ins. Co. of Am.*

Coughlin Stoia attorneys have also battled the automobile insurance companies that insist on placing low quality "imitation" parts on their customer's cars. The insurance group is also actively litigating against those insurers who overcharge their customers for their insurance coverage.

**Antitrust**

Coughlin Stoia's antitrust practice focuses on representing businesses and individuals who have been the victims of price-fixing, unlawful monopolization, tying and other anticompetitive conduct. The Firm has taken a leading role in many of the largest federal and state price-fixing, monopolization and tying cases throughout the United States.

- ***The Apple iPod iTunes Antitrust Litig.***, Case No. C-05-00037-JW (N.D. Cal.). Coughlin Stoia is one of two firms appointed lead counsel for the proposed iPod direct-purchaser class – a class of several million people. Plaintiffs assert that Apple illegally tied the purchase of digital music and video files from its iTunes Store to the purchase of an iPod by making it impossible to play music and video purchased on iTunes using other portable players, and unlawfully monopolized the market for portable digital music players. This conduct locked Apple's competitors out of the market and allowed

Apple to inflate the price at which iPods were sold. The trial court denied Apple's motion to dismiss and discovery continues.

- ***In re Digital Music Antitrust Litig.***, MDL No. 1780 (S.D.N.Y.). Coughlin Stoia attorneys are co-lead counsel in an action against the major music labels (Sony-BMG, EMI, Universal and Warner Music Group) in a case involving music that can be downloaded digitally from the Internet. In this case, plaintiffs allege that defendants restrained the development of digital downloads and agreed to fix the distribution price of digital downloads at supracompetitive prices. Plaintiffs also allege that as a result of defendants' restraint of the development of digital downloads, and the market and price for downloads, defendants were able to maintain the prices of their CDs at supracompetitive levels. Defendants' motion to dismiss is being briefed.

- ***In re Late Fee and Over-Limit Fee Litig.***, Case No. C-07-00634-SBA (N.D. Cal.). Coughlin Stoia attorneys are lead counsel in an action against the major credit card issuers (Citibank, Bank of America, JPMorgan/Chase, Wells Fargo and Washington Mutual), challenging the pricing of late fees and over-limit fees on substantive due process grounds. In addition, plaintiffs allege that defendants have agreed to set the prices of late fees at supracompetitive levels. Defendants' motion to dismiss is being briefed.

- ***In re NASDAQ Market-Makers Antitrust Litig.***, MDL No. 1023 (S.D.N.Y.). Coughlin Stoia attorneys served as co-lead counsel in this case, in which investors alleged that NASDAQ market-makers set and maintained artificially wide spreads pursuant to an industry-wide conspiracy. After three and one half years of intense litigation, the case settled for a total of $1.027 billion, the largest ever antitrust settlement. The Court commended counsel for its work, saying:

  > Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful, and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

  *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998).

  One of the most significant events in the case – Judge Sweet's decision to certify the class – resulted from efforts by Coughlin Stoia lawyers, including oral argument by Leonard B. Simon, Of Counsel to Coughlin Stoia.

- ***In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.***, MDL No. 1720 (E.D.N.Y.). Coughlin Stoia attorneys are co-lead counsel in the world's largest antitrust action (in terms of dollar value of commerce). In this case, a class of merchants allege Visa, MasterCard and their member banks, including Bank of America, Citibank, JPMorgan Chase, Capital One, Wells Fargo and HSBC among others, have conspired to fix the price of the interchange rate on credit cards and signature debit cards. In addition, plaintiffs allege that the defendants have set and enforced rules against merchants that restrain competition in the payment card industry,

including the no-surcharge rule and the no-minimum-purchase rule.  The motions to dismiss are *sub judice* and discovery continues.

Other cases include:

- ***Hall v. NCAA*** (Restricted Earnings Coach Antitrust Litigation), Case No. 94-2392-KHV (D. Kan.).  Coughlin Stoia attorneys served as lead counsel and lead trial counsel for one of three classes of coaches who alleged that the National Collegiate Athletic Association illegally fixed their compensation by instituting the "restricted earnings coach" rule.  On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $70 million.

- ***Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.*** (Carbon Fiber Antitrust Litigation), Case No. CV-99-7796 (C.D. Cal.).  Coughlin Stoia attorneys were co-lead counsel (with one other firm) in this consolidated class action, in which a class of purchasers alleged that the major producers of carbon fiber fixed its price from 1993 to 1999.  The case settled for $675 million.

- ***In re DRAM Antitrust Litig.***, MDL No. 1486 (N.D. Cal.).  Coughlin Stoia attorneys served on the executive committee in this multi-district class action, in which a class of purchasers of dynamic, random access memory chips, known as DRAM, alleged that the leading manufacturers of semiconductor products fixed the price of DRAM from the fall of 2001 through at least the end of June 2002.  The case settled for more than $300 million.

- ***In re Disposable Contact Lens Antitrust Litig.***, MDL No. 1030 (M.D. Fla.).  Coughlin Stoia attorneys served as co-lead counsel for a class of contact lens wearers alleging that the principal manufacturers of disposable contact lenses conspired with the leadership of the American Optometric Association and other eye care practitioners to boycott alternative channels of contact lens distribution, including pharmacies and mail order suppliers.  The case settled for $89 million five weeks into a jury trial.

- ***Microsoft I-V Cases***, J.C.C.P. No. 4106 (Cal. Super. Ct., San Francisco County).  Coughlin Stoia attorneys served on the executive committee in these consolidated cases, in which California indirect purchasers challenged Microsoft's illegal exercise of monopoly power in the operating system, word processing and spreadsheet markets.  In a settlement approved by the Court, class counsel obtained an unprecedented $1.1 billion worth of relief for the business and consumer class members who purchased the Microsoft products.

- ***In re Currency Conversion Antitrust Litig.***, MDL No. 1409 (S.D.N.Y.).  Coughlin Stoia attorneys have recovered $336 million for credit and debit cardholders in this multi-district litigation, in which Coughlin Stoia serves as co-lead counsel.  Plaintiffs allege that VISA and MasterCard, and certain leading member banks of Visa and MasterCard, conspired to fix and maintain the foreign currency conversion fee charged to United States cardholders, and failed to disclose adequately the fee in violation of federal law.  The trial court has preliminary approved a $336 million settlement.  The proposed $336 million settlement awaits final approval.

- ***In re Carbon Black Antitrust Litig.***, MDL No. 1543 (D. Mass.). Coughlin Stoia attorneys recovered $20 million for the class in this multi-district litigation price-fixing class action, in which Coughlin Stoia serves as co-lead counsel. Plaintiffs purchased carbon black from major producers that allegedly unlawfully conspired to fix the price of carbon black, which is used in the manufacture of tires, rubber and plastic products, inks and other products, from 1999 through the present. The proposed settlement $20 million awaits final approval.

**Consumer Fraud**

Coughlin Stoia's attorneys represent plaintiffs nationwide in a variety of important, complex consumer class actions. Coughlin Stoia attorneys have taken a leading role in many of the largest federal and state consumer fraud, human rights, environmental, public health and tobacco-related cases throughout the United States. Coughlin Stoia is also actively involved in numerous cases relating to the financial services industry, pursuing claims on behalf of individuals victimized by abusive mortgage lending practices, including violations of the Real Estate Settlement Procedures Act, market timing violations in connection with the sale of variable annuities and deceptive consumer credit lending practices in violation of the Truth-In-Lending Act.

Current consumer cases include:

- ***Florida Emergency Room Physicians HMO Litigation***. Coughlin Stoia attorneys represent emergency care physicians suing four HMOs over improper payments. The cases, pending in state court in Florida, have been litigated all the way up to the Florida Supreme Court, which upheld a lower appellate court's ruling in favor of the physicians.

- ***Home Loan Lenders Overcharging Consumers***. Coughlin Stoia attorneys represent customers of Wells Fargo, Washington Mutual and Countrywide, alleging that these banks have improperly overcharged home-loan customers hundreds of dollars for work that costs only a few dollars per loan.

- ***Cellphone Termination Fee Cases***. Coughlin Stoia attorneys are co-lead counsel in a lawsuit against the six major wireless telephone service providers in California. The plaintiffs allege that the early termination fee provisions in defendants' contracts are illegal penalties under California law, designed to unfairly tether consumers to long-term contracts and prevent customers from changing their wireless service providers. Classes have been certified against Nextel, Sprint and Verizon.

Prior consumer cases include:

- ***Tenet Healthcare Cases***. Coughlin Stoia attorneys were co-lead counsel in a class action alleging a fraudulent scheme of corporate misconduct, resulting in the overcharging of uninsured patients by the Tenet chain of hospitals. The Firm's attorneys represented uninsured patients of Tenet hospitals nationwide who were overcharged by Tenet's admittedly "aggressive pricing strategy" which resulted in price gouging of the uninsured. The case was settled with Tenet changing its practices and making refunds to patients.

- **Kehoe v. Fidelity Fed.**, Case No. 03-80593-CIV (S.D. Fla.). After years of litigation that included appeals to the United States Supreme Court, Coughlin Stoia attorneys successfully negotiated a $50 million all cash settlement in this cutting-edge case involving consumer privacy rights. The published decision in *Kehoe*, one of the first opinions construing the Federal Drivers Privacy Protection Act, was a victory for Coughlin Stoia's clients and has been cited over 50 times by other courts since its publication in 2005.

- **Schwartz v. Visa Int'l**, Case No. 822404-4 (Cal. Super. Ct., Alameda County). After years of litigation and a six month trial, Coughlin Stoia attorneys won one of the largest consumer-protection verdicts ever awarded in the United States. Coughlin Stoia attorneys represented California consumers in an action against Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders. The Court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest. In addition, the Court ordered full disclosure of the hidden fee.

- **In re Lifescan, Inc. Consumer Litig.**, Case No. CV-98-20321-JF (N.D. Cal.). Coughlin Stoia attorneys were responsible for achieving a $45 million all cash settlement with Johnson & Johnson and its wholly owned subsidiary, Lifescan, Inc., over claims that Lifescan deceptively marketed and sold a defective blood-glucose monitoring system for diabetics. The Lifescan settlement was noted by the District Court for the Northern District of California as providing "exceptional results" for members of the class.

**Human Rights, Labor Practices and Public Policy**

Coughlin Stoia attorneys have a long tradition of representing the victims of unfair labor practices and violations of human rights. These include:

- **Does I v. The Gap, Inc.**, Case No. 01 0031 (D. N. Mariana Islands). In this groundbreaking case, Coughlin Stoia attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top United States retailers such as The Gap, Target and J.C. Penney. In the first action of its kind, Coughlin Stoia attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: **Does I v. Advance Textile Corp.**, Case No. 99 0002 (D. N. Mariana Islands), which alleged overtime violations by the garment factories under the Fair Labor Standards Act and local labor law, and **UNITE v. The Gap, Inc.**, Case No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the United States retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive monitoring program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- ***Kasky v. Nike, Inc.***, 27 Cal. 4th 939 (2002). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The Court rejected defense contentions that any misconduct was protected by the First Amendment, finding the heightened constitutional protection afforded to noncommercial speech inappropriate in such a circumstance.

- ***World War II-Era Slave Labor***. Against steep odds, the Firm's lawyers took up the claims of people forced to work as slave labor for Japanese corporations during the Second World War. Their human rights case ran into trouble when the Ninth Circuit agreed with the Bush administration that any claims against Japanese corporations and their subsidiaries were preempted by the federal government's foreign-affairs power. *See Deutsch v. Turner,* 324 F.3d 692 (9th Cir. 2003). The case nonetheless demonstrates the lawyers' dedication to prosecuting human-rights violations against the challenge of formidable political opposition.

- ***The Cintas Litigation***. Brought against one of the nation's largest commercial laundries for violations of the Fair Labor Standards Act for misclassifying truck drivers as salesmen to avoid payment of overtime.

- ***Taco Bell workers***. Coughlin Stoia attorneys represented over 2,300 Taco Bell workers who were denied thousands of hours of overtime pay because, among other reasons, they were improperly classified as overtime-exempt employees.

Shareholder derivative litigation brought by Coughlin Stoia attorneys at times also involves stopping anti-union activities, including:

- ***Southern Pacific/Overnite***. A shareholder action stemming from several hundred million dollars in loss of value in the company due to systematic violations by Overnite of United States labor laws.

- ***Massey Energy***. A shareholder action against an anti-union employer for flagrant violations of environmental laws resulting in multi-million dollar penalties.

- ***Crown Petroleum***. A shareholder action against a Texas-based oil company for self-dealing and breach of fiduciary duty while also involved in a union lockout.

## Environment and Public Health

Coughlin Stoia attorneys have also represented plaintiffs in class actions related to environmental law. The Firm's attorneys represented, on a *pro bono* basis, the Sierra Club and the National Economic Development and Law Center as *amici curiae* in a federal suit designed to uphold the federal and state use of project labor agreements ("PLAs"). The suit represented a legal challenge to President Bush's Executive Order 13202, which prohibits the use of project labor agreements on construction projects receiving federal funds. Our *amici* brief in the matter outlined and stressed the significant environmental and socio-economic benefits associated with the use of PLAs on large-scale construction projects.

Attorneys with Coughlin Stoia have been involved in several other significant environmental cases, including:

- ***Public Citizen v. U.S. D.O.T.*** Coughlin Stoia attorneys represented a coalition of labor, environmental, industry and public health organizations including Public Citizen, The International Brotherhood of Teamsters, California AFL-CIO and California Trucking Industry in a challenge to a decision by the Bush Administration to lift a congressionally-imposed "moratorium" on cross-border trucking from Mexico on the basis that such trucks do not conform to emission controls under the Clean Air Act, and further, that the Administration did not first complete a comprehensive environmental impact analysis as required by the National Environmental Policy Act. The suit was dismissed by the Supreme Court, the Court holding that because the D.O.T. lacked discretion to prevent cross-border trucking, an environmental assessment was not required.

- ***Sierra Club v. AK Steel***. Brought on behalf of the Sierra Club for massive emissions of air and water pollution by a steel mill, including homes of workers living in the adjacent communities, in violation of the Federal Clean Air Act, Resource Conservation Recovery Act and the Clean Water Act.

- ***MTBE Litigation***. Brought on behalf of various water districts for befouling public drinking water with MTBE, a gasoline additive linked to cancer.

- ***Exxon Valdez***. Brought on behalf of fisherman and Alaska residents for billions of dollars in damages resulting from the greatest oil spill in United States history.

- ***Avilla Beach***. A citizens' suit against UNOCAL for leakage from the oil company pipeline so severe it literally destroyed the town of Avilla Beach, California.

Federal laws such as the Clean Water Act, the Clean Air Act, the Resource Conservation and Recovery Act and state laws such as California Proposition 65 exist to protect the environment and the public from abuses by corporate and government organizations. Companies can be found liable for negligence, trespass or intentional environmental damage, be forced to pay for reparations and to come into compliance with existing laws. Prominent cases litigated by Coughlin Stoia attorneys include representing more than 4,000 individuals suing for personal injury and property damage related to the Stringfellow Dump Site in Southern California, participation in the Exxon Valdez oil spill litigation and the toxic spill arising from a Southern Pacific train derailment near Dunsmuir, California.

**The Fight Against Big Tobacco**

Coughlin Stoia attorneys have led the fight against Big Tobacco since 1991. As an example, Coughlin Stoia attorneys filed the case that helped get rid of Joe Camel representing various public and private plaintiffs, including the State of Arkansas, the general public in California, the cities of San Francisco, Los Angeles and Birmingham, 14 counties in California and the working men and women of this country in the Union Pension and Welfare Fund cases that have been filed in 40 states. In 1992, Coughlin Stoia attorneys filed the first case in the country that alleged a conspiracy by the Big Tobacco companies.

**Intellectual Property**

Individual inventors, universities and research organizations provide the fundamental research behind many existing and emerging technologies. Every year, the majority of U.S. patents are issued to this group of inventors. Through this fundamental research, these inventors provide a significant competitive advantage to this country. Unfortunately, while responsible for most of the inventions that issue into U.S. patents every year, individual inventors, universities and research organizations receive very little of the licensing revenues for U.S. patents. Large companies reap 99% of all patent licensing revenues.

Coughlin Stoia enforces the rights of these inventors by filing and litigating patent infringement cases against infringing entities. Our attorneys have decades of patent litigation experience in a variety of technical applications. This experience, combined with the Firm's extensive resources, gives individual inventors the ability to enforce their patent rights against even the largest infringing companies.

Our attorneys have experience handling cases involving a broad range of technologies, including:

- biochemistry
- telecommunications
- medical devices
- medical diagnostics
- networking systems
- computer hardware devices and software
- mechanical devices
- video gaming technologies
- audio and video recording devices

**Pro Bono**

Coughlin Stoia attorneys have been recognized for their long history of *pro bono* work and demonstrated commitment to providing services for the poor and disenfranchised. In 1999, for example, the Firm's lawyers were honored as finalists for the San Diego Volunteer Lawyer Program's 1999 Pro Bono Law Firm of the Year Award, based on a disability-rights case, *Badua v. City of San Diego.* Linda Kilb, of the Disability Rights Education and Defense Fund, lauded the lawyers', "talent, effort, and commitment" in a case that the local ACLU described as one of the year's most important.

In 2003, the Firm's lawyers earned a nomination for the California State Bar President's *Pro Bono* Law Firm of the Year award. The State Bar President commended them for "dedication to the provision of *pro bono* legal services to the poor" and for "extending legal services to underserved communities." Carl Poirot of the San Diego Volunteer Lawyer Program praised the lawyers for

"extraordinary efforts" representing people "who clearly do not have the financial resources or wherewithal to retain legal counsel."

More recently, one of the Firm's lawyers undertook the representation of an impoverished Somali family seeking political asylum. A mother and her children belonged to an ethnic minority subject to systematic persecution and genocidal violence in Somalia. They sought desperately to escape that violence, and also to preserve the children from the genital mutilation forced on Somali girls. Christie Suriel took the case after an initial application for political asylum had been denied – and she vigorously represented the family, which was granted political asylum in May of 2006.

The Firm's lawyers worked as cooperating attorneys with the ACLU in *Sanchez v. County of San Diego,* a class action filed on behalf of welfare applicants subject to the County's "Project 100%" program, under which investigators from the San Diego D.A.'s office, Public Assistance Fraud Division, lacking any suspicion of fraud or wrongdoing, enter and search the home of every person who applies for welfare benefits. The D.A.'s Fraud Division agents would arrive unannounced at applicants' homes and ask to walk through them, inspecting the contents of bedroom closets, dresser drawers and bathroom medicine cabinets. They also initiated "collateral contacts" with neighbors and employers, identifying themselves as Public Assistance Fraud Investigators and asking questions about the applicant – never explaining they had no reason to suspect wrongdoing.

The Firm's lawyers obtained real relief. The County admitted that under controlling regulations it could not make food stamps hinge on the Project 100% "home visits." The district court ruled that the D.A.'s program of unconsented "collateral contacts" violated state regulations – putting an end to the practice of law-enforcement officers interviewing applicants' neighbors and employers without first obtaining the applicants' written consent. With respect to CalWORKS aid to needy families, however, the district court sustained the D.A.'s "home visits" and "walk throughs," rejecting arguments that it violates the Fourth Amendment for law-enforcement officers to inspect the contents of welfare applicants' bedroom closets and bathroom medicine cabinets absent any reason to suspect wrongdoing or ineligibility.

A divided panel of the Ninth Circuit affirmed that ruling over the vigorous dissent of Judge Raymond C. Fisher, who blasted the majority for "suggesting that welfare applicants may be treated the same as convicted criminals." *Sanchez v. County of San Diego,* 464 F.3d 916, 932 (9th Cir. 2006). A petition for *en banc* rehearing was denied with eight judges publicly dissenting from what Judge Harry Pregerson termed "an assault on our country's poor." *Sanchez v. County of San Diego,* 483 F.3d 965, 966 (9th Cir. 2007). The decision was noted and sharply criticized in the pages of the *Harvard Law Review* and *The New York Times,* and the Firm now is working with a former acting Solicitor General of the United States to obtain review by the United States Supreme Court.

Not all of the Firm's *pro bono* work has focused on rights of impoverished citizens. As noted above, the Firm's lawyers also have represented groups such as the Sierra Club and the National Economic Development and Law Center as *amici curiae* before the United States Supreme Court. And senior appellate partner Eric Alan Isaacson has filed *amicus curiae* briefs on behalf of religious organizations and clergy supporting civil rights, opposing government support for discrimination on the basis of personal religious viewpoint, and generally upholding the American traditions of religious freedom and church-state separation.

## JUDICIAL COMMENDATIONS

Coughlin Stoia attorneys have been commended by countless judges all over the country for the quality of their representation in class-action lawsuits.

In October 2007, a $600 million settlement for shareholders in the securities fraud class action against Ohio's biggest drug distributor, Cardinal Health, Inc., was approved – the largest settlement in the Sixth Circuit. Judge Marbley commented:

> The quality of representation in this case was superb. Lead Counsel, Coughlin Stoia Geller Rudman & Robbins LLP, are nationally recognized leaders in complex securities class actions. The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of this action. Lead Counsel defeated a volley of motions to dismiss, thwarting well-formed challenges from prominent and capable attorneys from six different law firms.

*In Re: Cardinal Health Inc. Sec. Litig.*, No. C2-04-575, 2007 U.S. Dist. LEXIS 95127, at *49 (S.D. Ohio Dec. 31, 2007).

When Judge Harmon appointed Coughlin Stoia attorneys as lead counsel for Enron securities purchasers, she commented, "In reviewing the extensive briefing submitted regarding the Lead Plaintiff/Lead Counsel selection, the Court has found that the submissions of [Coughlin Stoia attorneys] stand out in the breadth and depth of its research and insight." *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002).

Later, in a preliminary class certification order discussing the issues of Enron, Judge Harmon had this to say about the Firm:

> The firm is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate. Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities . . . . Since the beginning they have propelled the *Newby* litigation forward. They have established the website by which attorneys serve and communicate with each other, established the central depository for discovery materials, negotiated an agreed, organized, nonduplicative, and pared-down discovery schedule, and negotiated complex settlements with a number of defendants.

*In re Enron Corp. Sec. Litig.*, No. H-01-3624, 2006 U.S. Dist. LEXIS 43146, at *77 (S.D. Tex. June 5, 2006).

In *Stanley v. Safeskin Corp.*, Case No. 99 CV 454-BTM (S.D. Cal. May 25, 2004), where Coughlin Stoia attorneys obtained $55 million for the class of investors, Judge Moskowitz stated:

> I said this once before, and I'll say it again. I thought the way that your firm handled this case was outstanding. This was not an easy case. It was a complicated case, and every step of the way, I thought they did a very professional job.

In April 2005, in granting final approval of a $100 million settlement obtained after two weeks of trial in *In re AT&T Corp. Sec. Litig.*, MDL No. 1399 (D.N.J.), Judge Garret E. Brown, Jr. stated the following about the Coughlin Stoia attorneys prosecuting the case:

> Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during litigation substantiates this characterization. The Court notes that Lead Counsel displayed excellent lawyering skills through their consistent preparedness during court proceedings, arguments and the trial, and their well-written and thoroughly researched submissions to the Court. Undoubtedly, the attentive and persistent effort of Lead Counsel was integral in achieving the excellent result for the Class.

In a December 2006 hearing on the $50 million consumer privacy class action settlement in *Kehoe v. Fidelity Fed.*, Case No. 03-80593-CIV (S.D. Fla.), United States District Court Judge Daniel T.K. Hurley said the following:

> First, I thank counsel. As I said repeatedly on both sides we have been very, very fortunate. We have had fine lawyers on both sides. The issues in the case are significant issues. We are talking about issues dealing with consumer protection and privacy -- something that is increasingly important today in our society. [I] want you to know I thought long and hard about this. I am absolutely satisfied that the settlement is a fair and reasonable settlement. [I] thank the lawyers on both sides for the extraordinary effort that has been brought to bear here.

In July 2007, the Honorable Richard Owen of the Southern District of New York approved the $129 million settlement of the *In re Doral Fin. Corp. Sec. Litig.*, MDL No. 1706 (S.D.N.Y.) finding in his Order that:

> The services provided by Lead Counsel [Coughlin Stoia] were efficient and highly successful, resulting in an outstanding recovery for the Class without the substantial expense, risk and delay of continued litigation. Such efficiency and effectiveness supports the requested fee percentage.
>
> [] Cases brought under the federal securities laws are notably difficult and notoriously uncertain. . . . Despite the novelty and difficulty of the issues raised, Lead Plaintiffs' counsel secured an excellent result for the Class.
>
> . . . Based upon Lead Plaintiff's counsel's diligent efforts on behalf of the Class, as well as their skill and reputations, Lead Plaintiff's counsel were able to negotiate a very favorable result for the Class. . . . The ability of [Coughlin Stoia] to obtain such a favorable partial settlement for the Class in the face of such formidable opposition confirms the superior quality of their representation.

## NOTABLE CLIENTS

### Public Fund Clients

- Alaska Permanent Fund Corporation.

- Alaska State Pension Investment Board.

- California Public Employees' Retirement System.

- California State Teachers' Retirement System.

- Teachers' Retirement System of the State of Illinois.

- Illinois Municipal Retirement Fund.

- Illinois State Board of Investment.

- Los Angeles County Employees Retirement Association.

- Maine State Retirement System.

- The Maryland-National Capital Park & Planning Commission Employees' Retirement System.

- Milwaukee Employees' Retirement System.

- Minnesota State Board of Investment.

- New Hampshire Retirement System.

- New Mexico Public Funds (New Mexico Educational Retirement Board, New Mexico Public Employees Retirement Association, and New Mexico State Investment Council).

- Ohio Public Funds (Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, School Employees Retirement System of Ohio, Ohio Police and Fire Pension Fund, Ohio State Highway Patrol Retirement System, and Ohio Bureau of Workers' Compensation).

- The Regents of the University of California.

- State Universities Retirement System of Illinois.

- State of Wisconsin Investment Board.

- Tennessee Consolidated Retirement System.

- Washington State Investment Board.

- Wayne County Employees' Retirement System.

- West Virginia Investment Management Board.

## Multi-Employer Clients

- Alaska Electrical Pension Fund.

- Alaska Hotel & Restaurant Employees Pension Trust Fund.

- Alaska Ironworkers Pension Trust.

- Alaska Laborers Employers Retirement Fund.

- Carpenters Pension Fund of West Virginia.

- Carpenters Health & Welfare Fund of Philadelphia & Vicinity.

- Carpenters Pension Fund of Baltimore, Maryland.

- Carpenters Pension Fund of Illinois.

- Southwest Carpenters Pension Trust.

- Central States, Southeast and Southwest Areas Pension Fund.

- Southern Nevada Carpenters Annuity Fund.

- Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund.

- Heavy & General Laborers' Local 472 & 172 Pension & Annuity Funds.

- 1199 SEIU Greater New York Pension Fund.

- Massachusetts State Carpenters Pension and Annuity Funds.

- Massachusetts State Guaranteed Fund.

- New England Health Care Employees Pension Fund.

- PACE Industry Union-Management Pension Fund.

- SEIU Staff Fund.

- Southern California Lathing Industry Pension Fund.

- United Brotherhood of Carpenters Pension Fund.

## Additional Institutional Investors

- Bank of Ireland Asset Management.

- Northwestern Mutual Life Insurance Company.

- Standard Life Investments.

## PROMINENT CASES AND PRECEDENT-SETTING DECISIONS

### Prominent Cases

- ***In re Enron Corp. Sec. Litig.***, Case No. H-01-3624 (S.D. Tex.). In appointing Coughlin Stoia lawyers as sole lead counsel to represent the interests of Enron investors, the Court found that the Firm's zealous prosecution and level of "insight" set it apart from its peers. Ever since, Coughlin Stoia attorneys and lead plaintiff The Regents of the University of California have aggressively pursued numerous defendants, including many of Wall Street's biggest banks and law firms. Coughlin Stoia attorneys and The Regents have thus far obtained settlements in excess of $7.3 billion for the benefit of investors. Coughlin Stoia continues to press substantial and sizable claims against numerous defendants, including Enron's senior-most officers and several large international banks, with every intention of winning further large recoveries at trial for the victims of this corporate catastrophe.

- ***In re NASDAQ Market-Makers Antitrust Litig.***, MDL No. 1023 (S.D.N.Y.). Coughlin Stoia attorneys served as court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry wide conspiracy in one of the largest and most important antitrust cases in recent history. After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever. An excerpt from the Court's Opinion reads:

  > Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D. N.Y. 1998).

- ***In re Dynegy Inc. Sec. Litig.***, Case No. H-02-1571 (S.D. Tex.). As sole lead counsel representing The Regents of the University of California and the class of Dynegy investors, Coughlin Stoia attorneys obtained a combined settlement of $474 million from Dynegy Inc., Citigroup, Inc. and Arthur Andersen LLP for their involvement in a clandestine financing scheme known as Project Alpha. Given Dynegy's limited ability to pay, Coughlin Stoia attorneys structured a settlement (reached shortly before the commencement of trial) that maximized plaintiffs' recovery without bankrupting the company. Most notably, the settlement agreement provides that Dynegy will appoint two board members to be nominated by The Regents, which Coughlin Stoia and The Regents believe will result in benefits to all of Dynegy's stockholders.

- ***In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.***, MDL No. 834 (D. Ariz.). Coughlin Stoia attorneys served as the court-appointed co-lead counsel for a class of persons who purchased debentures and/or stock in American Continental Corp., the parent company of the now infamous Lincoln Savings & Loan. The suit charged Charles Keating, other insiders, three major accounting firms, three major law firms, Drexel Burnham, Michael Milken and others with racketeering and violations of securities laws. Recoveries totaled $240 million on $288 million in losses. A jury also rendered verdicts of more than $1 billion against Keating and others.

- **In re 3Com, Inc. Sec. Litig.**, Case No. C-97-21083-JW (N.D. Cal.). A hard-fought class action alleging violations of the federal securities laws in which Coughlin Stoia attorneys served as lead counsel for the class and obtained a recovery totaling $259 million.

- **Mangini v. R.J. Reynolds Tobacco Co.**, Case No. 939359 (Cal. Super. Ct., San Francisco County). In this case, R.J. Reynolds admitted, "the *Mangini* action, and the way that it was vigorously litigated, was an early, significant and unique driver of the overall legal and social controversy regarding underage smoking that led to the decision to phase out the Joe Camel Campaign."

- **Cordova v. Liggett Group, Inc.**, Case No. 651824 (Cal. Super. Ct., San Diego County), and **People v. Philip Morris, Inc.**, Case No. 980864 (Cal. Super. Ct., San Francisco County). Coughlin Stoia attorneys, as lead counsel in both these actions, played a key role in these cases which were settled with the Attorneys General global agreement with the tobacco industry, bringing $26 billion to the State of California as a whole and $12.5 billion to the cities and counties within California.

- **Does I v. The Gap, Inc.**, Case No. 01 0031 (D. N. Mariana Islands). In this ground-breaking case, Coughlin Stoia attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top United States retailers such as The Gap, Target and J.C. Penney. In the first action of its kind, Coughlin Stoia attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: **Does I v. Advance Textile Corp.**, Case No. 99 0002 (D. N. Mariana Islands) – which alleged overtime violations by the garment factories under the Fair Labor Standards Act, and **UNITE v. The Gap, Inc.**, Case No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the United States retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive Monitoring Program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- **In re Exxon Valdez**, Case No. A89 095 Civ. (D. Alaska), and **In re Exxon Valdez Oil Spill Litig.**, Case No. 3 AN 89 2533 (Alaska Super. Ct., 3d Jud. Dist.). Coughlin Stoia attorneys served on the Plaintiffs' Coordinating Committee and Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. A jury verdict of $5 billion was obtained and is currently on appeal.

- **In re Wash. Pub. Power Supply Sys. Sec. Litig.**, MDL No. 551 (D. Ariz.). A massive litigation in which Coughlin Stoia attorneys served as co-lead counsel for a class that obtained recoveries totaling $775 million after several months of trial.

- **Hall v. NCAA** (Restricted Earnings Coach Antitrust Litigation), Case No. 94-2392-KHV (D. Kan.). Coughlin Stoia attorneys were lead counsel and lead trial counsel for one of three classes of coaches in consolidated price fixing actions against the National Collegiate Athletic Association. On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $70 million.

- **Newman v. Stringfellow** (Stringfellow Dump Site Litigation), Case No. 165994 MF (Cal. Super. Ct., Riverside County). Coughlin Stoia attorneys represented more than 4,000 individuals suing

for personal injury and property damage arising from their claims that contact with the Stringfellow Dump Site may have caused them toxic poisoning. Recovery totaled approximately $109 million.

- *In re Prison Realty Sec. Litig.*, Case No. 3:99-0452 (M.D. Tenn.). Coughlin Stoia attorneys served as lead counsel for the class, obtaining a $105 million recovery.

- *In re Honeywell Int'l, Inc. Sec. Litig.*, Case No. 00-cv-03605 (DRD) (D.N.J.). Coughlin Stoia attorneys served as lead counsel for a class of investors that purchased Honeywell's common stock. The case charged defendants Honeywell and its top officers with violations of the federal securities laws, alleging defendants made false public statements concerning Honeywell's merger with Allied Signal, Inc., and also alleging that defendants falsified Honeywell's financial statements. After extensive discovery, Coughlin Stoia attorneys obtained a $100 million settlement for the class.

- *In re AT&T Corp. Sec. Litig.*, MDL No. 1399 (D.N.J.). Coughlin Stoia attorneys served as lead counsel for a class of investors that purchased AT&T common stock. The case charged defendants AT&T Corporation and its former Chairman and Chief Executive Officer, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, the largest IPO in American history. After two weeks of trial, and on the eve of scheduled testimony by Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million.

- *In re Reliance Acceptance Group, Inc. Sec. Litig.*, MDL No. 1304 (D. Del.). Coughlin Stoia attorneys served as co-lead counsel and obtained a recovery of $39 million.

- *Schwartz v. Visa Int'l.*, Case No. 822404-4 (Cal. Super. Ct., Alameda County). After years of litigation and a six month trial, Coughlin Stoia attorneys won one of the largest consumer protection verdicts ever awarded in the United States. Coughlin Stoia attorneys represented California consumers in an action against Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders. The Court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest. In addition, the Court ordered full disclosure of the hidden fee.

- *Thompson v. Metro. Life Ins. Co.*, Case No. 00-cv-5071 (HB) (S.D.N.Y.). Coughlin Stoia attorneys served as lead counsel and obtained $145 million for the class in a settlement involving racial discrimination claims in the sale of life insurance.

- *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, MDL No. 1061 (D.N.J.). In one of the first cases of its kind, Coughlin Stoia attorneys obtained a settlement of $4 billion for deceptive sales practices in connection with the sale of life insurance involving the "vanishing premium" sales scheme.

- *In re Cardinal Health, Inc. Sec. Litig.*, Case No. C2-04-00575(ALM) (S.D. Ohio). As sole lead counsel representing Cardinal Health shareholders, Coughlin Stoia obtained a recovery of $600 million that was preliminarily approved in July 2007. On behalf of the lead plaintiffs, Amalgamated Bank, the New Mexico State Investment Council, the California Ironworkers Field Trust Fund and PACE Industry Union-Management Pension Fund, Coughlin Stoia aggressively pursued claims of securities fraud and won notable court room victories, including a decision on defendants' motion to dismiss. *In re Cardinal Health Inc., Sec. Litig.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006). At the time, the

$600 million settlement was the tenth largest settlement in the history of securities fraud litigation and is the largest ever recovery in a securities fraud action in the Sixth Circuit.

## Precedent-Setting Decisions

### Investor and Shareholder Rights

- ***In re Daou Sys. Inc. Sec. Litig.***, 411 F.3d 1006 (9th Cir. 2005). The Ninth Circuit sustained investors' allegations of accounting fraud and ruled that loss causation was adequately alleged by pleading that the value of the stock they purchased declined when the issuer's true financial condition was revealed.

- ***Barrie v. Intervoice-Brite, Inc.***, 409 F.3d 653 (5th Cir. 2005). The Fifth Circuit held that where corporate officers made public statements together, an investor's allegations of the false statements meets the heightened pleading requirements for federal securities claims, and that the corporate officer who stood by silently while false statements were made – failing to correct them – may be liable along with the officer who actually made them.

- ***Ill. Mun. Ret. Fund v. Citigroup, Inc.***, 391 F.3d 844 (7th Cir. 2004). The Seventh Circuit upheld a district court's decision that the Illinois Municipal Retirement Fund was entitled to litigate its claims under the Securities Act of 1933 against WorldCom's underwriters before a state court rather than before the federal forum sought by the defendants.

- ***City of Monroe Employees Ret. Sys. v. Bridgestone Corp.***, 387 F.3d 468 (6th Cir. 2005). The Sixth Circuit held that a statement regarding objective data supposedly supporting a corporation's belief that its tires were safe was actionable, where jurors could have found a reasonable basis to believe the corporation was aware of undisclosed facts seriously undermining the statement's accuracy.

- ***Nursing Home Pension Fund, Local 144 v. Oracle Corp.***, 380 F.3d 1226 (9th Cir. 2004). The Ninth Circuit ruled that defendants' fraudulent intent could be inferred from allegations concerning their false representations, insider stock sales and improper accounting methods.

- ***Southland Sec. Corp. v. INSpire Ins. Solutions Inc.***, 365 F.3d 353 (5th Cir. 2004). The Fifth Circuit sustained allegations that an issuer's CEO made fraudulent statements in connection with a contract announcement.

- ***No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.***, 320 F.3d 920 (9th Cir. 2003). *America West* is a landmark Ninth Circuit decision holding that investors pleaded with particularity facts raising a strong inference of corporate defendants' fraudulent intent under heightened pleading standards of the Private Securities Litigation Reform Act of 1995.

- ***Pirraglia v. Novell, Inc.***, 339 F.3d 1182 (10th Cir. 2003). In *Pirraglia*, the Tenth Circuit upheld investors' accounting-fraud claims, concluding that their complaint presented with particularity facts raising a strong inference of the defendants' fraudulent intent, and that absence of insider trading by individual defendants did not mean they lacked a motive to commit fraud.

- *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002). In *Cavanaugh*, the Ninth Circuit disallowed judicial auctions to select lead plaintiffs in securities class actions, and protected lead plaintiffs' right to select the lead counsel they desire to represent them.

- *Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d 363 (5th Cir. 2001). In *Lone Star Ladies*, the Fifth Circuit upheld investors' claims that securities-offering documents were incomplete and misleading, reversing a district court Order that had applied inappropriate pleading standards to dismiss the case.

- *Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001). The Eleventh Circuit held that investors were entitled to amend their securities-fraud complaint to reflect further developments in the case, reversing a contrary district court Order.

- *In re WorldCom Sec. Litig. (Cal. Pub. Employees' Ret. Sys. v. Caboto-Gruppo Intesa, BCI)*, Case No. 05-6979-CV, 2007 U.S. App. LEXIS 17797 (2d Cir. July 26, 2007). The Second Circuit held that the filing of a class-action complaint tolls the limitations period for all members of the class, including those who choose to opt out of the class action and file their own individual actions without waiting to see whether the district court certifies a class – reversing the decision below and effectively overruling multiple district-court rulings that *American Pipe* tolling did not apply under these circumstances.

- *In re Merck & Co., Inc., Sec., Derivative & ERISA Litig.*, Case No. 06-2911, 2007 U.S. App. LEXIS 17000 (3d Cir. July 18, 2007). In a shareholder derivative suit appeal, the Third Circuit held that the general rule that discovery may not be used to supplement demand-futility allegations does to apply where the defendants enter a voluntary stipulation to produce materials relevant to demand futility without providing for any limitation as to their use.

- *In re Qwest Commc'ns Int'l*, 450 F.3d 1179 (10th Cir. 2006). In a case of first impression, the Tenth Circuit held that a corporation's deliberate release of purportedly privileged materials to governmental agencies was not a "selective waiver" of the privileges such that the corporation could refuse to produce the same materials to non-governmental plaintiffs in private securities fraud litigation.

- *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935 (10th Cir. 2005). The Tenth Circuit held that the multi-faceted notice of a $50 million settlement in a securities fraud class action had been the best notice practicable under the circumstances, and thus satisfied both constitutional due process and Rule 23 of the Federal Rules of Civil Procedure.

- *In re Guidant S'holders Derivative Litig.*, 841 N.E.2d 571 (Ind. 2006). Answering a certified question from a federal court, the Supreme Court of Indiana issued a unanimous decision holding that a pre-suit demand in a derivative action is unnecessary if the demand would be a futile gesture. The court adopted a "demand futility" standard and rejected the defendants' call for a "universal demand" standard that might have immediately ended the case.

- *Crandon Capital Partners v. Shelk*, 157 P.3d 176 (Or. 2007). The Supreme Court of Oregon ruled that a shareholder plaintiff in a derivative action may still seek attorney fees even if the defendants took actions to moot the underlying claims. Coughlin Stoia attorneys convinced Oregon's

highest court to take the case, and reverse, despite the contrary position articulated by both the trial court and the Oregon Court of Appeals.

- **Denver Area Meat Cutters and Employers Pension Plan v. Clayton**, 209 S.W.3d 584 (Tenn. Ct. App. 2006). The Tennessee Court of Appeals rejected an objector's challenge to a class action settlement arising out of Warren Buffet's 2003 acquisition of Tennessee-based Clayton Homes. In their effort to secure relief for Clayton Homes stockholders, Coughlin Stoia attorneys obtained a temporary injunction of the Buffet acquisition for six weeks in 2003 while the matter was litigated in the courts. The temporary halt to Buffet's acquisition received national press attention.

ADDITIONALLY, IN THE CONTEXT OF SHAREHOLDER DERIVATIVE ACTIONS, Coughlin Stoia attorneys have been at the forefront of protecting shareholders' investments by causing important changes in corporate governance as part of the global settlement of such cases. Three cases in which such changes were made include:

- **Teachers' Ret. Sys. of La. v. Occidental Petroleum Corp.**, Case No. BC185009 (Cal. Super. Ct., Los Angeles County). As part of the settlement, corporate governance changes were made to the composition of the company's board of directors, the company's nominating committee, compensation committee and audit committee.

- **In re Sprint Corp. S'holder Litig.**, Case No. 00-CV-230077 (Circuit Ct. Jackson County, Mo.). In connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions, which, among other things, established a truly independent board of directors and narrowly defined "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis.

- **Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Hanover Compressor Co.**, Case No. H-02-0410 (S.D. Tex.). Groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; and creation and appointment of lead independent director with authority to set up board meetings.

**Insurance**

- **Lebrilla v. Farmers Group, Inc.**, 119 Cal. App. 4th 1070 (2004). Reversing the trial court, the California Court of Appeal ordered class certification of a suit against Farmers, one of the largest automobile insurers in California and ruled that Farmers' standard automobile policy requires it to provide parts that are as good as those made by vehicle's manufacturer. The case involved Farmers' practice of using inferior imitation parts when repairing insureds' vehicles.

- **Dehoyos v. Allstate Corp.**, 345 F.3d 290 (5th Cir. 2003). The Fifth Circuit Court of Appeals held that claims under federal civil rights statutes involving the sale of racially discriminatory insurance policies based upon the use of credit scoring did not interfere with state insurance statutes or regulatory goals and were not preempted under the McCarran-Ferguson Act. Specifically, the

Appellate Court affirmed the district court's ruling that the McCarran-Ferguson Act does not preempt civil-rights claims under the Civil Rights Act of 1866 and the Fair Housing Act for racially discriminatory business practices in the sale of automobile and homeowners insurance. The United States Supreme Court denied defendants' petition for certiorari and plaintiffs can now proceed with their challenge of defendants' allegedly discriminatory credit scoring system used in pricing of automobile and homeowners insurance policies.

- ***In re Monumental Life Ins. Co.*** 365 F.3d 408 (5th Cir. 2004). The Fifth Circuit Court of Appeals reversed a district court's denial of class certification in a case filed by African-Americans seeking to remedy racially discriminatory insurance practices. The Fifth Circuit held that a monetary relief claim is viable in a Rule 23(b)(2) class if it flows directly from liability to the class as a whole and is capable of classwide "computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances."

- ***Moore v. Liberty Nat'l Life Ins. Co.***, 267 F.3d 1209 (11th Cir. 2001). The Eleventh Circuit affirmed the district court's denial of the defendant's motion for judgment on the pleadings, rejecting contentions that insurance policyholders' claims of racial discrimination were barred by Alabama's common law doctrine of repose. The Eleventh Circuit also rejected the insurer's argument that the McCarran-Ferguson Act mandated preemption of plaintiffs' federal civil rights claims under 42 U.S.C. §§1981 and 1982.

- ***Mass. Mut. Life Ins. Co. v. Super. Ct.***, 97 Cal. App. 4th 1282 (2002). The California Court of Appeal affirmed a trial court's Order certifying a class in an action by purchasers of so-called "vanishing premium" life-insurance policies who claimed violations of California's consumer-protection statutes. The Court held that common issues predominate where plaintiffs allege a uniform failure to disclose material information about policy dividend rates.

## Consumer Protection

- ***Branick v. Downey Sav. & Loan Ass'n***, 39 Cal. 4th 235 (2006). Coughlin Stoia attorneys were part of a team of lawyers that briefed this case at the Supreme Court of California. The Court issued a unanimous decision holding that new plaintiffs may be substituted, if necessary, to preserve actions pending when Proposition 64 was passed by California voters in 2004. Proposition 64 amended California's Unfair Competition Law and was aggressively cited by defense lawyers in an effort to dismiss cases after the initiative was adopted.

- ***Kasky v. Nike, Inc.***, 27 Cal. 4th 939 (2002). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The Court rejected defense contentions that such misconduct was protected by the First Amendment.

- ***McKell v. Washington Mut. Inc.***, 142 Cal. App. 4th 1457 (2006). The California Court of Appeal reversed the trial court, holding that plaintiff's theories attacking a variety of allegedly inflated mortgage related fees were actionable.

- ***Kruse v. Wells Fargo Home Mortgage, Inc.***, 383 F.3d 49 (2d Cir. 2004) and ***Santiago v. GMAC Mortgage Group, Inc.***, 417 F.3d 384 (3d Cir. 2005). In two groundbreaking federal appellate

decisions, the Second and Third Circuits each ruled that the Real Estate Settlement Practices Act prohibits marking up home loan-related fees and charges.

- **West Corp. v. Super. Ct.**, 116 Cal. App. 4th 1167 (2004). The California Court of Appeal upheld the trial court's finding that jurisdiction in California was appropriate over the out-of-state corporate defendant whose telemarketing was aimed at California residents. Exercise of jurisdiction was found to be in keeping with considerations of fair play and substantial justice.

- **Ritt v. Billy Blanks Enters.**, 870 N.E.2d 212 (Ohio Ct. App. 2007). In the Ohio analog to the *West* case, the Ohio Court of Appeals approved certification of a class of Ohio residents seeking relief under Ohio's consumer protection laws for the same telemarketing fraud.

- **Lavie v. Procter & Gamble Co.**, 105 Cal. App. 4th 496 (2003). The California Court of Appeal issued an extensive opinion elaborating, for the first time in California law, the meaning of the "reasonable consumer" standard. The Court announced a balanced approach that has enabled actions under California's leading consumer protection statutes when necessary to protect the public from acts of unfair business competition.

- **Spielholz v. Superior Court**, 86 Cal. App. 4th 1366 (2001). The California Court of Appeal held that false advertising claims against a wireless communications provider are not preempted by the Federal Communications Act of 1934.

- **Sanford v. MemberWorks, Inc.**, 483 F.3d 956 (9th Cir. 2007). In a telemarketing-fraud case, where the plaintiff consumer insisted she had never entered the contractual arrangement that defendants said bound her to arbitrate individual claims to the exclusion of pursuing class claims, Ninth Circuit reversed an order compelling arbitration – allowing the plaintiff to litigate on behalf of a class.

- **Benson v. Kwikset Corp.**, 152 Cal. App. 4th 1254 (2007). In the first published decision to apply California's "Made in the USA" statute, the California Court of Appeal ruled that the statute had been violated and that judgment should be re-entered against Kwikset provided the plaintiff can satisfy Proposition 64's amendments to the Unfair Competition Law.

- **Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n**, 148 P.3d 1179 (Haw. 2006). The Supreme Court of Hawaii ruled that claims of unfair competition were not subject to arbitration and that claims of tortious interference with prospective economic advantage were adequately alleged.

## Antitrust

- **Law v. NCAA**, 134 F.3d 1010 (10th Cir. 1998). The Tenth Circuit upheld summary judgment on liability for plaintiffs in college coaches' antitrust action against the National Collegiate Athletic Association on the issue of antitrust liability under §1 of the Sherman Antitrust Act, 15 U.S.C. §1 (plaintiffs subsequently prevailed on a damages trial). It also upheld the district court's Order permanently enjoining the NCAA from enforcing the "restricted earnings coach" rule, through which NCAA member institutions limited the salary of certain coaches to $12,000 during the academic year.

- **In re NASDAQ Market-Makers Antitrust Litig.**, 172 F.R.D. 119 (S.D.N.Y. 1997). In a case where plaintiffs alleged that approximately 30 NASDAQ market-makers engaged in a conspiracy to

restrain or eliminate price competition, the district court certified a class of millions of investors – including institutional investors to be represented by five public pension funds.

- ***In re Disposable Contact Lens Antitrust Litig.***, 170 F.R.D. 524 (M.D. Fla. 1996). Plaintiff contact lens purchasers alleged that defendant manufacturers conspired on a nationwide basis to eliminate competition and maintain artificially inflated prices for replacement contact lenses. The district court denied defendant manufacturers' motion to dismiss plaintiffs' Clayton Act claims and granted their motion for class certification, finding that plaintiffs' vertical–conspiracy evidence was general to the class and provided a colorable method of proving impact on the class at trial.

- ***In re Currency Conversion Fee Antitrust Litig.***, 265 F. Supp. 2d 385 (S.D.N.Y. 2003). In a case consolidating more than 20 putative class actions, plaintiff credit card holders alleged that two credit-card networks, Visa and MasterCard, and their member banks, conspired to fix the foreign-currency conversion fees they charged. The district court found that plaintiffs pleaded facts sufficient to permit the inference of an antitrust conspiracy, denying defendants' motion to dismiss the antitrust allegations.

## THE FIRM'S PARTNERS

**RAMZI ABADOU** graduated from Pitzer College in 1994 and received his Master of Arts degree from Columbia University in 1997. Between 1997 and 1999, Mr. Abadou served as an Adjunct Political Science and Labor History Professor at Foothill College in Los Altos Hills, California.

Mr. Abadou graduated from Boston College Law School in 2002 and clerked for the Major Frauds and Economic Crimes Section for the United States Attorney's Office in San Diego. Mr. Abadou prosecutes securities fraud class actions and handles all aspects of the Firm's lead plaintiff practice. In this role, Mr. Abadou has helped enable many of the Firm's institutional clients serve as lead plaintiffs in precedent-setting cases, such as: *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298 (S.D. Ohio 2005); *Frank v. Dana Corp.*, 236 F.R.D. 349 (N.D. Ohio 2006); *In re NorthWestern Corp. Sec. Litig.*, 299 F. Supp. 2d 997 (D.S.D. 2003); *In re UnitedHealth Group, Inc. Sec. Litig.*, No. 06-1691-JMR (FLN) (D. Minn. 2006); *In re Unumprovident Corp. Sec. Litig.*, No. 1:03-CV-049 (E.D. Tenn. 2003); *In re Krispy Kreme Doughnuts, Inc. Sec. Litig.*, No. 1:04CV00416 (M.D.N.C. 2004); *In re Alstom SA Sec. Litig.*, No. 03-CV-6595 (S.D.N.Y. 2003); *In re Abercrombie & Fitch Co. Sec. Litig.*, No. 2:05-CV-0819 (S.D. Ohio 2005); and *Borochoff v. GlaxoSmithKline PLC*, 246 F.R.D. 201 (S.D.N.Y. 2007).

Mr. Abadou was a featured panelist at the American Bar Association's 11th Annual National Institute on Class Actions in October 2007.    Mr. Abadou is admitted to the California Bar and is licensed to practice in all California state courts, as well as the U.S. District Courts for the Southern, Northern, and Central Districts of California.

**X. JAY ALVAREZ** graduated from the University of California, Berkeley, with a Bachelor of Arts degree in Political Science in 1984. He earned his Juris Doctor degree from the University of California, Berkeley, Boalt Hall, in 1987 and entered private practice in San Diego, California that same year.

Mr. Alvarez served as an Assistant United States Attorney for the Southern District of California from 1991-2003. As an Assistant United States Attorney, Mr. Alvarez obtained extensive trial experience, including the prosecution of bank fraud, money laundering, and complex narcotics conspiracy cases. During his tenure as an Assistant United States Attorney, Mr. Alvarez also briefed and argued numerous appeals before the Ninth Circuit Court of Appeals.

At Coughlin Stoia, Mr. Alvarez's practice areas include securities fraud litigation and other complex litigation.

**LAURA ANDRACCHIO** focuses primarily on litigation under the federal securities laws. She has litigated dozens of cases against public companies in federal and state courts throughout the country, and has contributed to hundreds of millions of dollars in recoveries for injured investors. Most recently, Ms. Andracchio led the litigation team in *Brody v. Hellman*, a case against Qwest and former directors of U.S. West seeking an unpaid dividend, recovering $50 million. In late 2004, she was a lead member of the trial team in *In re AT&T Corp. Sec. Litig.*, which settled for $100 million after two weeks of trial in district court in New Jersey. Prior to trial, Ms. Andracchio was responsible for managing and litigating the case, which was pending for four years. She was also the lead litigator in *In re P-Com, Inc. Sec. Litig.*, which resulted in a $16 million recovery for the plaintiff class.

Ms. Andracchio is a member of the State Bars of California and Pennsylvania, and the federal district courts for the Northern, Central, and Southern Districts of California and the Western District of Pennsylvania. She received

her Bachelor of Arts degree from Bucknell University in 1986 and her Juris Doctor degree with honors from Duquesne University School of Law in 1989. While at Duquesne, Ms. Andracchio was elected to the Order of Barristers and represented the Law School in the National Samuel J. Polsky Appellate Moot Court competition, in which she placed as a finalist, and in the regional Gourley Cup Trial Moot Court competition.

**A. RICK ATWOOD, JR**. prosecutes securities class actions, merger-related class actions, and shareholder derivative suits at both the trial and appellate levels.

Mr. Atwood was born in Nashville, Tennessee in 1965. In 1987, he received a Bachelor of Arts degree, with honors, in Political Science from the University of Tennessee at Knoxville. In 1988, he received a Bachelor of Arts degree, with great distinction, in Philosophy from the Katholieke Universiteit Leuven in Leuven, Belgium. He received his Juris Doctor degree in 1991 from Vanderbilt University Law School, where he served as Authorities Editor on the *Vanderbilt Journal of Transnational Law*. He was admitted to the California Bar in 1991 and is licensed to practice before the United States District Courts for the Southern, Central, and Northern Districts of California.

Mr. Atwood has successfully represented shareholders in federal and state courts in numerous jurisdictions, including Alabama, California, Colorado, Delaware, Georgia, Hawaii, Illinois, Iowa, Kentucky, Maryland, Missouri, Nevada, New York, New Jersey, North Carolina, Oregon, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, and Washington, D.C. Significant opinions include *Crandon Capital Partners v. Shelk*, 342 Ore. 555 (2007) (reversing dismissal of action); *Ind. State Dist. Council of Laborers and HOD Carriers Pension Fund v. Renal Care Group, Inc.*, No. 3:05-0451, 2005 U.S. Dist. LEXIS 24210 (M.D. Tenn. Aug. 18, 2005) (successfully obtaining remand of case improperly removed

to federal court under the Class Action Fairness Act); *Pipefitters Locals 522 & 633 Pension Trust Fund v. Salem Commc'ns Corp.*, No. CV 05-2730-RGK (MCx), 2005 U.S. Dist. LEXIS 14202 (C.D. Cal. June 28, 2005) (successfully obtaining remand of case improperly removed to federal court under the Securities Litigation Uniform Standards Act of 1998); *In re Prime Hospitality, Inc. S'holders Litig.*, No. 652-N, 2005 Del. Ch. LEXIS 61 (Del. Ch. May 4, 2005) (successfully objecting to unfair settlement and thereafter obtaining $25 million recovery for shareholders); *Pate v. Elloway*, No. 01-03-00187-CV, 2003 Tex. App. LEXIS 9681 (Tex. App. Houston 1st Dist. Nov. 13, 2003) (upholding grant of class certification and denial of motion to dismiss).

**RANDI D. BANDMAN** is a senior partner at Coughlin Stoia whose responsibilities include coordination of the Firm's Institutional Investor Department and managing the Manhattan and Los Angeles offices. Ms. Bandman received her Juris Doctor degree from the University of Southern California and her Bachelor of Arts degree in English from the University of California at Los Angeles.

Ms. Bandman has represented hundreds of institutional investors in several of the largest and most successful shareholder actions ever prosecuted, both as private and class actions, and involving such companies as WorldCom, AOL Time Warner, Vivendi, Unocal and Boeing.

Using her extensive experience, Ms. Bandman lectures and advises public and multi-employer pension funds, fund managers, banks, hedge funds and insurance companies, both domestically and internationally, on their options for seeking redress for losses due to fraud sustained in their portfolios. These clients include various States and Municipalities, as well as trades such as Teamsters, the Entertainment Industry, Sheet Metal, Construction, Air Conditioning, Food and Hospitality, Nursing and Plumbers.

Ms. Bandman has served as a lecturer to attorneys and insurance professionals for continuing education, as well as a panelist for the Practicing Law Institute.

**RANDALL J. BARON** was born in Albuquerque, New Mexico in 1964. Mr. Baron received his Bachelor of Arts degree from University of Colorado at Boulder in 1987 and his Juris Doctor degree, *cum laude*, from University of San Diego School of Law in 1990. He was a member of the *San Diego Law Review* from 1988-1989. Mr. Baron was admitted to the California Bar in 1990 and the Colorado Bar in 1993. Since 1997, Mr. Baron is licensed to practice in Colorado State Court as well as the United States District Court for the Southern, Northern and Central Districts of California, as well as the District of Colorado.

Formerly, Mr. Baron served as a Deputy District Attorney in Los Angeles County. From 1990-1994, he was a trial deputy in numerous offices throughout Los Angeles County, where he tried over 70 felony cases. Mr. Baron was part of the Special Investigation Division of the Los Angeles District Attorneys office, where he investigated and prosecuted public corruption cases. He concentrates his practice in securities litigation and actions for breach of fiduciary duty.

**JONATHAN E. BEHAR** was born in Los Angeles in 1968. In 1991, Mr. Behar received his Bachelor of Arts degree in English Literature from the University of California at Santa Barbara, with high honors, and his Juris Doctor degree from the University of San Diego School of Law in 1994. He is admitted to the State Bar of California (1994) and the Southern and Central Districts of California (1998 and 2000, respectively).

As a partner at Coughlin Stoia, Mr. Behar currently practices in the areas of securities, environmental and consumer litigation. Mr. Behar was actively involved in the prosecution of two of California's seminal tobacco cases,

*Mangini v. R.J. Reynolds Tobacco Company*, the "Joe Camel" case, as well as *Cordova v. Liggett Group, Inc., et al.*, which alleged a 40-year conspiracy by the United States tobacco manufacturers.

**TIMOTHY G. BLOOD** graduated *cum laude* and with honors in Economics from Hobart College in 1987 and the National Law Center of George Washington University in 1990. He was elected to Phi Beta Kappa, Omicron Delta Epsilon (Economics), and the Moot Court Board (first year honors).

Mr. Blood focuses on consumer fraud and unfair competition litigation with a concentration in actions brought by policyholders against life and property and casualty insurers for deceptive sales practices, racial discrimination and systematic failures in claims adjustment. Mr. Blood has tried a number of class actions, including the precedent-setting case, *Lebrilla v. Farmers Group, Inc.* Mr. Blood also has been involved in a number of cases that have resulted in significant settlements, including *Lebrilla, McNeil v. Am. Gen. Life & Accident Ins. Co.* ($234 million), *Lee v. USLife Corp.* ($148 million), *Garst v. Franklin Life Ins. Co.* ($90.1 million), *In re Gen. Am. Sales Practices Litig.* ($67 million), *Williams v. United Ins. Co. of Am.* ($51.4 million); and *Sternberg v. Apple Computer, Inc.* ($50 million).

Mr. Blood is responsible for several precedent-setting appellate decisions, including *McKell v. Washington Mutual*, 142 Cal. App. 4th 1457 (2006) and *Lebrilla v. Farmers Group, Inc.*, 119 Cal. App. 4th 1070 (2004). Mr. Blood was a finalist for 2007 Consumer Attorney of the Year for the state of California. He is a frequent lecturer on class action procedure and consumer fraud issues and is a member of the Board of Governors of the Consumer Attorneys of California.

Mr. Blood is admitted to practice in California and in the United States Court of Appeals for

the Fifth, Sixth, Eighth, Ninth and Eleventh Circuits, and the United States District Courts for the Southern, Central, Eastern and Northern Districts of California. He is also admitted to the United States District Court for the Eastern District of Arkansas. He is a member of the San Diego County and American Bar Associations, the State Bar of California, the American Association for Justice, the Consumer Attorneys of California, and the Consumer Attorneys of San Diego.

**ANNE L. BOX** graduated from the University of Tulsa with a Bachelor of Science degree in Economics in 1985 and received a Juris Doctor degree in 1988. While in law school, she was the Articles Editor for the *Energy Law Journal* and won the Scribes Award for her article *Mississippi's Ratable-Take Rule Preempted: Transcontinental Gas Pipeline Corp. v. State Oil and Gas Bd.*, 7 Energy L.J. 361 (1986). From 1988-1991, she was an Associate Attorney in the Energy Section of Jenkins & Gilchrist, P.C. in Dallas, Texas. In 1991, she became an Assistant District Attorney in Tarrant County, Texas where she tried over 80 felony cases to verdict. Ms. Box was elevated to Chief Prosecutor in 1998, and along with supervising felony attorneys, her responsibilities included running the day-to-day operations of a felony district court. Ms. Box was admitted to the State Bar of Texas in 1989 and the State Bar of California in 2003. Her practice at Coughlin Stoia focuses on securities fraud.

**DOUGLAS R. BRITTON** was born in Los Angeles, California, in 1968. Mr. Britton received his Bachelor of Business Administration degree from Washburn University in Topeka, Kansas in 1991 and his Juris Doctor degree, *cum laude*, from Pepperdine University Law School in 1996. Mr. Britton was admitted to the Nevada Bar in 1996 and to the California Bar in 1997 and is admitted to practice in all of the state courts in California, as well as the United States District Courts for the Northern, Southern, Eastern, and Central Districts of California. Mr. Britton has been litigating

securities class action lawsuits since his admission to the Bar in 1996.

**ANDREW J. BROWN** was born in Northern California in 1966. He received his Bachelor of Arts degree from the University of Chicago in 1988 and received his Juris Doctor degree from the University of California, Hastings College of Law in 1992. Upon passing the Bar, Mr. Brown worked as a trial lawyer for the San Diego County Public Defender's Office. In 1997, he opened his own firm in San Diego, representing consumers and insureds in lawsuits against major insurance companies. His current practice focuses on representing consumers and shareholders in class action litigation against companies nationwide.

As a partner of Coughlin Stoia, Mr. Brown continues to change the way corporate America does business. He prosecutes complex securities fraud and shareholder derivative actions, resulting in multi-million dollar recoveries to shareholders and precedent-setting changes in corporate practices. Examples include: *In re Unumprovident Corp. Sec. Litig.*, 396 F. Supp. 2d 858 (E.D. Tenn 2005); *Does I v. The Gap, Inc.*, Case No. 010031 (D. N. Mariana Islands); *Arlia v. Blankenship*, 234 F. Supp. 2d 606 (S.D. W.Va. 2002); and *In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581 (N.D. Ohio 2004).

Mr. Brown is admitted to the state Bar of California and admitted to practice before the United States District Courts for all Districts in California.

**JOY ANN BULL** received her Juris Doctor degree, *magna cum laude*, from the University of San Diego in 1988. She was a member of the University of San Diego National Trial Competition Team and the *San Diego Law Review*. Ms. Bull focuses on the litigation of complex securities and consumer class actions.

For nine years, Ms. Bull has concentrated her practice in negotiating and documenting

complex settlement agreements and obtaining the required court approval of the settlements and payment of attorneys' fees. These settlements include: *In re Dole S'holders Litig.*, Case No. BC281949 (Cal. Super. Ct., Los Angeles County) ($172 million recovery plus injunctive relief); *Lindmark v. Am. Express*, Case No. 00-8658-JFW(CWx) (C.D. Cal.) ($38 million cash payment plus injunctive relief); *In re Disposable Contact Lens Antitrust Litig.*, MDL No. 1030 (M.D. Fla.) ($89 million); *In re LifeScan, Inc. Consumer Litig.*, Case No. C-98-20321-JF(EAI) (N.D. Cal.) ($45 million cash recovery); *In re Bergen Brunswig Corp. Sec. Litig.*, Case No. SACV-99-1305-AHS(ANx) (C.D. Cal.) ($27.9 million cash recovery); *Hall v. NCAA*, Case No. 94-2392-KHV (D. Kan.) (more than $70 million cash recovery); *In re Glen Ivy Resorts, Inc.*, Case No. SD92-16083MG (Banker. Ct. C.D. Cal.) ($31 million cash recovery); and *In re Advanced Micro Devices Sec. Litig.*, Case No. C-93-20662-RPA(PVT) (N.D. Cal.) ($34 million cash recovery).

**SPENCER A. BURKHOLZ** received his Bachelor of Arts degree in Economics, *cum laude*, from Clark University in 1985, where he was elected to Phi Beta Kappa, and received his Juris Doctor degree from the University of Virginia School of Law in 1989. Mr. Burkholz specializes in securities class actions and has been one of the senior lawyers on some of the most high-profile cases in the nation in the past decade.

Mr. Burkholz was one of the lead attorneys representing over 60 public and private institutional investors that filed and settled individual actions in the *WorldCom* securities litigation. He is also one of the senior lawyers representing The Regents of the University of California on behalf of all investors in the *Enron* securities class action where investors have recovered over $7 billion. Mr. Burkholz was also responsible for significant settlements in the *Qwest* and *Cisco* securities class actions.

Mr. Burkholz is a member of the California Bar and has been admitted to practice in numerous federal courts throughout the country.

**MICHELLE CICCARELLI** represents shareholders, workers, and consumers in a broad range of complex class-action litigations for securities fraud, fraudulent business practices, human rights abuses, labor and employment violations, as well as derivative litigation for breaches of fiduciary duties by corporate officers and directors. She is the Editor of Coughlin Stoia's *Corporate Governance Bulletin* and *Taking Action - Fighting Corporate Corruption*, and the author of *Improving Corporate Governance Through Litigation Settlements*, Corporate Governance Review, 2003.

She participated in the successful prosecution of several important actions, including *Does I v. The Gap, Inc.* Case No. 01-0031 (D.N. Mariana Islands), in which she was one of the lead litigators, spending several months on Saipan working with clients, investigating claims, and obtaining discovery. The case was successfully concluded with a $20 million settlement, including a precedent-setting Monitoring Program to monitor labor and human rights practices in Saipan garment factories. She was also a member of the *WorldCom* litigation team, which recovered over $650 million for various institutional investors, and the *Enron* litigation team, which recovered a $7.3 billion partial recovery for the investor class – the largest securities opt-out and class-action securities recoveries in history.

She is a frequent lecturer on securities fraud, corporate governance, and other issues of import to institutional investors, including lecturing at Cornell University Law School (Joint JD/MBA Program 2003) and the University of Kentucky College of Law (Randall-Park Colloquium 2006).

Formerly, she practiced in Kentucky in the area of labor and employment law. She was the co-editor of the *Kentucky Employment Law Letter* (1998) and co-author of *Wage and Hour Update* (Lorman 1998). She was also a regular lecturer for the Kentucky Cabinet for Economic Development.

She was a law clerk to the Honorable Sara Walter Combs, Chief Judge, Kentucky Court of Appeals (1994-1995) after obtaining her Juris Doctor degree from the University of Kentucky in 1993. She is a member of the California and Kentucky Bars, and is admitted to practice before the United States District Courts for both jurisdictions as well as the Sixth Circuit Court of Appeals.

As a law student, she trained lawyers and law students to represent immigrants, *pro bono*, in deportation proceedings at the Federal Penitentiary in Lexington, Kentucky (1992-93) and participated in a summer program in Miami assisting Haitian refugees seeking asylum status (1992). She also served as an intern to former Congressman Joe Kennedy in his Charlestown, Massachusetts office (1992).

**CHRIS COLLINS** earned his Bachelor of Arts degree in History from Sonoma State University in 1988 and his Juris Doctor degree from Thomas Jefferson School of Law. His practice areas include antitrust and consumer protection. Mr. Collins first joined the firm in 1994 and was a part of the trial teams that successfully prosecuted the tobacco industry. Mr. Collins left the firm and served as a Deputy District Attorney for the Imperial County where he was in charge of the Domestic Violence Unit. Mr. Collins is currently counsel on the California Energy Manipulation antitrust litigation, the Memberworks upsell litigation, as well as a number of consumer actions alleging false and misleading advertising and unfair business practices against major corporations.

Mr. Collins is a member of the American Bar Association, the Federal Bar Association, the California Bar Association, and the Consumer Attorneys of California and San Diego.

**PATRICK J. COUGHLIN** is the Firm's Chief Trial Counsel and has been lead counsel in numerous large securities matters, including *Enron*, where the Firm recovered $7.2 billion for investors. Mr. Coughlin also helped end the Joe Camel ad campaign and secured $12.5 billion for the Cities and Counties of California in a settlement with the tobacco companies.

Formerly, Mr. Coughlin was an Assistant United States Attorney in the District of Columbia and the Southern District of California, trying dozens of felony cases and a number of complex white-collar fraud matters. During this time, Mr. Coughlin helped try one of the largest criminal RICO cases ever prosecuted by the United States, *United States v. Brown* Case No. 86-3056-SWR, as well as an infamous oil fraud scheme resulting in a complex murder-for-hire trial, *United States v. Boeckman* Case No. 87-0676-K.

**JOSEPH D. DALEY** received his undergraduate degree from Jacksonville University and his Juris Doctor degree from the University of San Diego School of Law. Mr. Daley is a member of the Firm's Appellate Practice Group, where his practice concentrates on federal appeals. Published precedents include: *In re Merck & Co., Inc.*, 493 F.3d 393 (3d Cir. 2007); *In re Qwest Commc'ns Int'l*, 450 F.3d 1179 (10th Cir. 2006); *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935 (10th Cir. 2005); *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353 (5th Cir. 2004).

Mr. Daley edited the award-winning *Federal Bar Association Newsletter* (San Diego chapter) in the Year 2000, and served as the Year 2000 Chair of San Diego's Co-operative Federal Appellate Committees ("COFACS"). Mr. Daley co-authored *What's Brewing in Dura v. Broudo? The Plaintiffs' Attorneys Review the*

*Supreme Court's Opinion and Its Import for Securities-Fraud Litigation*, 37 Loy. U. Chi. L.J. 1 (2005), and *The Nonretroactivity of the Private Securities Litigation Reform Act of 1995*, 25 Sec. Regulation L.J. 60 (1997), reprinted in 3 Sec. Reform Act Litig. Rep. 258 (1997) and 25 RICO L. Rep. 819 (1997).

While attending law school, Mr. Daley was a member of the USD Appellate Moot Court Board (1995-1996) and received several awards for written and oral advocacy, including: Order of the Barristers, Roger J. Traynor Constitutional Law Moot Court Competition (Best Advocate Award); Philip C. Jessup International Law Moot Court Competition (United States National Champions, First Place Regional Team); USD Alumni Torts Moot Court Competition (First Place Overall and Best Brief); the USD Jessup International Law Moot Court Competition (First Place Overall and Best Brief); and the American Jurisprudence Award in Professional Responsibility.

Mr. Daley was admitted to the California Bar in 1996. He is admitted to practice before the United States District Courts for the Northern, Southern, Eastern and Central Districts of California, as well as before the Supreme Court of the United States, and the United States Court of Appeals for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh and District of Columbia Circuits.

**PATRICK W. DANIELS** is a founding partner of the Firm and the global director of business development. He received his Bachelor of Arts degree from the University of California, Berkeley, *cum laude*, and his Juris Doctor degree from the University of San Diego School of Law.

Mr. Daniels advises hundreds of public and multi-employer pension funds, fund managers, insurance companies and banks around the world on issues related to corporate fraud in the U.S. securities markets and "best practices" in the corporate governance of publicly traded companies. He has represented dozens of institutional investors in some of the largest and most significant shareholder actions in the United States, including, UBS, Enron, WorldCom, AOL Time Warner and BP, to name just a few.

Mr. Daniels leads the Firm's cooperative efforts and joint ventures with outside independent advisors to provide advice and counsel to major investors in the United States markets. As part of these joint ventures, Mr. Daniels works very closely with political and financial leaders throughout the world to advise national and state government pension funds, central banks and fund managers in the United States, Australia, United Kingdom, Netherlands, and in other countries within the European Union. In 2008, the Editorial Board of the preeminent legal publisher in California named Mr. Daniels one of the 20 most influential lawyers in the State under 40 years of age.

In advancing international standards on human rights, Mr. Daniels was a lead counsel in an international coalition of attorneys and human rights groups that won a historic settlement with major United States clothing retailers and manufacturers, including The Gap, Ralph Lauren, Donna Karan and Calvin Klein, on behalf of a class of over 50,000 predominantly female Chinese garment workers on the island of Saipan in an action seeking to hold the Saipan garment industry responsible for creating a system of indentured servitude and forced labor in the island's garment factories. The coalition obtained an unprecedented agreement for supervision of working conditions in the Saipan factories by an independent NGO, as well as a substantial multi-million dollar compensation award for the workers.

Mr. Daniels is based in the Firm's headquarters in San Diego and is also a managing partner of the Firm's Manhattan office.

**STUART A. DAVIDSON** is admitted to practice law in the state courts of Florida, as well as the United States District Courts for the Southern, Middle, and Northern Districts of Florida and the Northern District of Texas, the Eighth, Tenth and Eleventh Circuit Courts of Appeals, and the United States Supreme Court.

Mr. Davidson earned his Bachelor of Arts degree in Political Science from the State University of New York at Geneseo. He then earned his Juris Doctor degree, *summa cum laude*, from Nova Southeastern University Shepard Broad Law Center, where he graduated in the top 3% of his class. At Nova Law, he was an Associate Editor of the Nova Law Review, and was the recipient of Book Awards (highest grade) in Trial Advocacy, Criminal Pretrial Practice, and International Law.

Before joining the Firm in 2004, Mr. Davidson was an associate with the law firm of Geller Rudman, PLLC in Boca Raton, Florida, where he also concentrated his practice on the prosecution of class actions. At Geller Rudman, Mr. Davidson handled numerous cases on behalf of shareholders of public corporations whose shares were to be acquired through leveraged buyouts, mergers, tender offers, and other "change of control" transactions, as well as derivative lawsuits filed against corporate boards, seeking to impose corporate governance reforms aimed at protecting shareholders and eliminating corporate waste and abuse. Mr. Davidson also represented consumers in numerous cases in which allegations of consumer fraud and deceptive trade practices were alleged.

Prior to joining Geller Rudman, Mr. Davidson was an associate at a private law firm in Boca Raton, Florida, where he gained substantial experience in all aspects of securities litigation, including, among other things, SEC and NASD enforcement proceedings, securities regulatory proceedings by state and self-regulatory organizations, federal criminal securities fraud prosecutions, federal securities appellate litigation, and NASD customer arbitration proceedings, as well as acting as counsel for court-appointed receivers in complex federal securities and franchise litigation proceedings. In addition, Mr. Davidson is an experienced trial lawyer, having been a former lead assistant public defender in the Felony Division of the Broward County, Florida Public Defender's Office. During his tenure at the Public Defender's Office, Mr. Davidson tried over 30 jury trials, conducted hundreds of depositions, handled numerous evidentiary hearings, engaged in extensive motion practice, and defended individuals charged with major crimes ranging from third-degree felonies to life and capital felonies.

A substantial portion of Mr. Davidson's time is currently devoted to the representation of investors in class actions involving mergers and acquisitions and in prosecuting derivative lawsuits on behalf of public corporations. Mr. Davidson is also actively involved in prosecuting a number of consumer fraud cases throughout the nation. Mr. Davidson recently served as class counsel in *Kehoe v. Fidelity Federal Bank & Trust*, a consumer class action alleging privacy violations filed in the Southern District of Florida, which was settled for $50 million. In addition, Mr. Davidson currently serves as court-appointed co-lead counsel in *In re Pet Food Products Liability Litigation*, a multidistrict consumer class action pending in the District of New Jersey, where Mr. Davidson represents thousands of aggrieved pet owners nationwide against some of the nation's largest pet food manufacturers, distributors and retailers.

**MICHAEL J. DOWD** graduated from Fordham University, *magna cum laude*, with a Bachelor of Arts degree in History and Latin in 1981. While at Fordham, he was elected to Phi Beta Kappa. He earned his Juris Doctor degree from the University of Michigan School of Law in 1984 and entered private practice in New York that same year. He was admitted to

practice in New York in 1985 and in California in 1988.

Mr. Dowd served as an Assistant United States Attorney in the Southern District of California from 1987-1991 and again from 1994-1998. As an Assistant United States Attorney, Mr. Dowd obtained extensive trial experience, including the prosecution of bank fraud, bribery, money laundering and narcotics cases. He is a recipient of the Director's Award for Superior Performance as an Assistant United States Attorney. Mr. Dowd has been responsible for prosecuting complex securities cases and obtaining recoveries for investors, including cases involving AOL Time Warner, WorldCom, Qwest, Vesta, U.S. West, Safeskin and Bergen Brunswig. Mr. Dowd was the lead lawyer for the Coughlin Stoia trial team in *In re AT&T Corp. Sec. Litig.*, which was tried in the District of New Jersey, and settled after two weeks of trial for $100 million. Mr. Dowd also participated in the Firm's tobacco cases.

**TRAVIS E. DOWNS III** received his Bachelor of Arts degree in History, *cum laude*, from Whitworth College in 1985, and received his Juris Doctor degree from University of Washington School of Law in 1990. Mr. Downs concentrates his practice in securities class actions and Shareholders' derivative actions.

Mr. Downs is responsible for the prosecution and recovery of significant settlements in the following cases: *In re Informix Corp. Sec. Litig.*, Case No. C-97-1289-CRB (N.D. Cal.) ($137.5 million recovery); *In re MP3.com, Inc. Sec. Litig.*, Case No. 00-CV-1873-K(NLS) (S.D. Cal.) ($36 million recovery); *In re Conner Peripherals, Inc. Sec. Litig.*, Case No. C-95-2244-MHP (N.D. Cal.) ($26 million recovery); *In re Silicon Graphics, Inc. II Sec. Litig.*, Case No. 97-4362-SI (N.D. Cal.) ($20.3 million recovery); *In re J.D. Edwards Sec. Litig.*, Case No. 99-N-1744 (D. Colo.) ($15 million recovery); *In re Sony Corp. Sec. Litig.*, Case No. CV-96-1326-JGD(JGx) (C.D. Cal.) ($12.5 million recovery); *In re Veterinary Ctrs. of Am., Inc. Sec. Litig.*, Case No.

97-4244-CBM(MCx) (C.D. Cal.) ($6.75 million recovery); *In re JDN Realty Corp. Derivative Litig.*, Case No. 00-CV-1853 (N.D. Ga.) (obtained extensive corporate governance enhancements); *In re Hollywood Entm't Corp. Sec. Litig.*, Case No. 95-1926-MA (D. Or.) ($15 million recovery); *In re Legato Sys., Inc. Derivative Litig.*, Case No. 413050 (Cal. Super. Ct., San Mateo County) (obtained extensive corporate governance enhancements); and *In re Flagstar Cos., Inc. Derivative Litig.*, Case No. 736748-7 (Cal. Super. Ct., Alameda County) (obtained extensive corporate governance enhancements).

Mr. Downs is a member of the Bar of the State of California and is also admitted to practice before the United States District Courts for the Central, Northern and Southern Districts of California. He is also a member of the American Bar Association and the San Diego County Bar Association. Mr. Downs lectures and participates in professional education programs.

**DANIEL DROSMAN** is a partner with Coughlin Stoia. He is a former federal prosecutor with extensive litigation experience before trial and appellate courts. His practice focuses on securities fraud litigation and other complex civil litigation. Mr. Drosman is admitted to practice in New York and California and before federal courts throughout those states.

Mr. Drosman is a native San Diegan who received his Bachelor of Arts degree in Political Science from Reed College in 1990, with honors, and was a member of Phi Beta Kappa. He received his Juris Doctor degree from Harvard Law School in 1993. Following graduation from law school, Mr. Drosman served for three years as an Assistant District Attorney for the Manhattan District Attorney's Office. While there, Mr. Drosman served in both the appellate section, where he briefed and argued over 25 cases to the New York appellate courts, and in the trial section, where he prosecuted a wide variety of street crime.

From 1996-1997, Mr. Drosman was an associate in the New York office of Weil Gotshal & Manges, where he concentrated his practice in civil litigation and white-collar criminal defense.

In 1997, Mr. Drosman returned to San Diego and became an Assistant United States Attorney in the Southern District of California. In the Southern District, Mr. Drosman tried cases before the United States District Court and briefed and argued numerous appeals before the Ninth Circuit Court of Appeals. He was a member of the border crimes unit, where he was assigned to investigate and prosecute violations of the federal narcotics and immigration laws and official corruption cases. During his tenure as an Assistant United States Attorney, Mr. Drosman received the Department of Justice Special Achievement Award in recognition of sustained superior performance of duty.

Mr. Drosman's practice involves representing defrauded investors in securities class actions, an area in which he has co-authored a law journal article.

**AMBER L. ECK** graduated from Pepperdine University *magna cum laude* with a Bachelor of Arts degree in 1990. Upon graduation, she worked for two years at a Los Angeles legal newspaper, the *Metropolitan News-Enterprise*. Ms. Eck then attended Boston University School of Law, where she received her Juris Doctor degree, *magna cum laude*, in 1995. At Boston University, Ms. Eck was a member of the Giles Sutherland Rich Intellectual Property Moot Court Team which received honors for Best Brief in the Northeast Region. In addition, she served as Case and Note Editor for the *Boston University International Law Journal* and Chapter Justice for Phi Alpha Delta.

Ms. Eck has prosecuted securities class actions and shareholder derivative suits for the past ten years. Ms. Eck received the Wiley W. Manuel Pro Bono Service Award in 1999 and the Distinguished Service Award in 2002 from the County of San Diego for *pro bono* service. Ms. Eck is a member of the California (1995) and Nevada (1996) Bars, and is admitted to practice before the United States District Courts for all districts in both jurisdictions. She served on the Board of Directors for the Barristers Club of San Diego (1996-1997) and is a member of the American Inns of Court, Enright Chapter.

**THOMAS E. EGLER** was born in Pittsburgh, Pennsylvania in 1967. Mr. Egler received his Bachelor of Arts degree from Northwestern University in 1989. Mr. Egler received his Juris Doctor degree in 1995 from Catholic University of America, Columbus School of Law, where he served as Associate Editor for *Catholic University Law Review* from 1994-1995. From 1995-1997, Mr. Egler was a law clerk to the Honorable Donald E. Ziegler, Chief Judge, United States District Court, Western District of Pennsylvania.

Mr. Egler was admitted to the California Bar in 1995 and the Pennsylvania Bar in 1996. He is admitted to practice before the United States District Courts for the Western District of Pennsylvania, the Northern, Southern and Central Districts of California and the United States Court of Appeals for the Third and Eleventh Circuits.

**PAUL J. GELLER** received his Bachelor of Science degree in Psychology from the University of Florida, where he was a member of the University Honors Program. Mr. Geller then earned his Juris Doctor degree, with Highest Honors, from Emory University School of Law. At Emory, Mr. Geller was an Editor of the *Law Review*, was inducted into the Order of the Coif legal honor society, and was awarded multiple American Jurisprudence Book Awards for earning the highest grade in the school in a dozen courses.

After spending several years representing blue chip companies in class action lawsuits at one of the largest corporate defense firms in the world, Mr. Geller became a founding partner and head of the Boca Raton offices of the national class action boutiques Cauley Geller Bowman & Rudman, LLP and Geller Rudman, PLLC. In July 2004, through a merger of the firms, Mr. Geller opened the Boca Raton, Florida office of Coughlin Stoia.

In May 2005, Mr. Geller was selected by *The National Law Journal* as one of the nation's top "40 Under 40" – an honor bestowed upon 40 of the country's top lawyers under the age of 40. The *NLJ* had previously compiled its "40 Under 40" list in July 2002; Mr. Geller is the only lawyer in the country that was selected for inclusion both in 2002 and again in 2005. In July 2006, as well as July 2003, Mr. Geller was featured in *Florida Trend* magazine as one of Florida's "Legal Elite." Mr. Geller has also been featured in the *South Florida Business Journal* as one of Florida's top lawyers, and was named one of the nation's top 500 lawyers by Lawdragon in August 2006. In June 2007, Mr. Geller was selected by *Law & Politics* as one of Florida's top lawyers.

Mr. Geller is rated AV by Martindale-Hubbell (the highest rating available) and has served as lead or co-lead counsel in a majority of the securities class actions that have been filed in the southeastern United States in the past several years, including cases against Teco Energy ($17 million settlement), Hamilton Bancorp ($8.5 million settlement), Prison Realty Trust (co-lead derivative counsel; total combined settlement of over $120 million); and Intermedia Corp. ($38 million settlement). Mr. Geller recently served as one of the court-appointed lead counsel in cases involving the alleged manipulation of the asset value of some of the nation's largest mutual funds, including *Hicks v. Morgan Stanley & Co.*; *Abrams v. Van Kampen Funds, Inc.*; and *In re Eaton Vance Sec. Litig.* ($51.5 million aggregate settlements).

Mr. Geller is also heavily involved in corporate governance litigation. For example, Mr. Geller recently represented a shareholder of Applica Inc. who was concerned with allegedly reckless acquisitions made by the company. Mr. Geller and his partners secured a settlement that required Applica to establish a new independent Acquisitions Committee charged with conducting due diligence and approving future acquisitions, even though such a committee is not required by SEC regulations. In another corporate governance lawsuit, Mr. Geller and his co-counsel challenged the independence of certain members of a Special Committee empanelled by Oracle Corp. to look into certain stock sales made by its Chairman and CEO, Larry Ellison. After Delaware Chancery Court Vice Chancellor Leo E. Strine issued an Order agreeing that the Special Committee was "fraught with conflicts," *The Wall Street Journal* called the decision "one of the most far-reaching ever on corporate governance."

Mr. Geller has also successfully represented consumers in class action litigation. He recently settled *Kehoe v. Fidelity Fed.,* a consumer class action alleging privacy violations filed in the Southern District of Florida, for $50 million. He was personal counsel to the lead plaintiff in *Stoddard v. Advanta*, a case that challenged the adequacies of interest rate disclosures by one of the nation's largest credit card companies ($11 million settlement), and was personal counsel to one of the lead plaintiffs in the American Family Publishers sweepstakes litigation, which alleged that the defendant misled consumers into thinking they would win a lottery if they purchased magazine subscriptions ($38 million settlement).

Mr. Geller is currently representing Emergency Room physicians in Florida who are suing four of the nation's largest HMOs for improper payment calculations. The four related cases have been through numerous appeals. After Mr. Geller's most recent appellate victory in the case, he was presented an award by the

America Law Media's *Daily Business Review* and named one of the 2006 "Florida's Most Effective Lawyers."

During the past few years, several of Mr. Geller's cases have received regional and national press coverage. Mr. Geller has appeared on CNN Headline News, CNN Moneyline with Lou Dobbs, ABC, NBC and FOX network news programs. Mr. Geller is regularly quoted in the financial press, including *The New York Times*, *The Wall Street Journal*, *The Washington Post* and *BusinessWeek*.

Mr. Geller has been or is a member of the Association of Trial Lawyers of America, the Practicing Law Institute, the American Bar Association, the Palm Beach County Bar Association (former Member of Bar Grievance Committee) and the South Palm Beach County Bar Association (former Co-Chair of Pro Bono Committee).

**DAVID J. GEORGE** earned his Bachelor of Arts degree in Political Science from the University of Rhode Island, *summa cum laude*. Mr. George then graduated at the top of his class at the University of Richmond School of Law. At the University of Richmond, Mr. George was a member of the *Law Review*, was the President of the McNeill Law Society/Order of the Coif, and earned numerous academic awards, including outstanding academic performance in each of his three years there and outstanding graduate.

Before joining the Firm, Mr. George, who is AV rated by Martindale-Hubbell (the highest rating available), was a partner in the Boca Raton office of Geller Rudman, PLLC. Mr. George, a zealous advocate of shareholder rights, has been lead and/or co-lead counsel with respect to various securities class action matters, including: *In Re Cryo Cell Int'l, Inc. Sec. Litig.* ($7 million settlement); *In Re TECO Energy, Inc. Sec. Litig.* ($17.35 million settlement); *In Re Newpark Res., Inc. Sec. Litig.*

($9.24 million settlement); *In Re Mannatech, Inc. Sec. Litig.* (N.D. Tex.); *In Re Jabil Circuit Sec. Litig.* (S.D. Fla.) and *In Re Shaw Group Sec. Litig.* (E.D. La.). Mr. George has also acted as lead counsel in numerous consumer class actions, including *Lewis v. Labor Ready, Inc.* ($11 million settlement), *Flaxman v. Geico* (S.D. Fla.) and *In Re Webloyalty, Inc. Mktg. and Sales Practices Litig.* (D. Mass.); among many others. Before joining Geller Rudman, Mr. George spent more than a decade as a commercial litigator with two of the largest corporate law firms in the United States. During that time, Mr. George aggressively prosecuted and defended a wide array of complex commercial litigation matters, including securities class action matters, non-compete litigation, fraud claims, and real estate-based litigation matters.

In 2007, Mr. George was named one of Florida's Most Effective Corporate/Securities Lawyers, and was the only plaintiffs' securities class action counsel recognized.

Mr. George is licensed to practice law in the state courts of Florida, as well as the United States District Courts for the Southern, Middle, and Northern Districts of Florida, and the First and Fifth Circuit Courts of Appeal. He is currently or has been a member of the American Bar Association, the Federal Bar Association, the Academy of Florida Trial Lawyers, the Palm Beach County Bar Association, and the Southern Palm Beach County Bar Association.

**JONAH H. GOLDSTEIN** is a partner with Coughlin Stoia. Formerly, Mr. Goldstein was an Assistant United States Attorney in the United States Attorney's Office for the Southern District of California, where he obtained extensive trial experience (including a seven-defendant 11-week trial), and briefed and argued appeals before the Ninth Circuit Court of Appeals. Mr. Goldstein has been responsible for prosecuting complex securities cases and obtaining recoveries for investors. Mr. Goldstein was a member of the Firm's trial team in *In re AT&T*

*Corp. Sec. Litig.*, No. 3:00-CV-5364, which was tried in the United States District Court for the District of New Jersey and settled after two weeks of trial for $100 million.

Mr. Goldstein graduated from Duke University with a Bachelor of Arts degree in Political Science in 1991. He received his Juris Doctor degree from the University of Denver College of Law in 1995, where he was the Notes & Comments Editor of the *University of Denver Law Review*. Following graduation from law school, Mr. Goldstein served as a law clerk for the Honorable William H. Erickson on the Colorado Supreme Court.

Mr. Goldstein is admitted to practice in Colorado (1995) and California (1997).

**BENNY C. GOODMAN III'S** practice includes securities fraud class actions and shareholder derivative litigation. Mr. Goodman is currently working on the *WorldCom, Inc. Securities Litigation*.

Mr. Goodman earned his undergraduate degree in 1994 from Arizona State University, majoring in Management Systems. After college he worked for several years at United Parcel Service and Roadway Express. Mr. Goodman earned his Juris Doctor degree from the University of San Diego in 2000. During his third year of legal studies, Mr. Goodman attended Georgetown University as a visiting student while he worked in the Compliance and Enforcement Division of the Federal Deposit Insurance Corporation.

Mr. Goodman is a member of the California State Bar and is admitted to practice in all United States District Courts in California, as well as the Sixth and Seventh Circuit Courts of Appeal.

**JOHN K. GRANT** was born in Provo, Utah in 1961. Mr. Grant received his Bachelor of Arts degree from Brigham Young University in 1988 and his Juris Doctor degree from the University

of Texas at Austin in 1990. Mr. Grant was admitted to the California Bar in 1994.

**KEVIN K. GREEN** is a partner in the Firm's Appellate Practice Group. He received his Bachelor of Arts degree in Political Economy, with honors and distinction, from the University of California at Berkeley in 1989. He took his Juris Doctor degree from Notre Dame Law School in 1995. After admission to the California Bar, he clerked for the Honorable Theodore R. Boehm, Associate Justice, Supreme Court of Indiana, where he developed his interest in appellate work. Mr. Green then returned to California to clerk for the Honorable Barry T. Moskowitz, United States District Court, Southern District of California. The latter position included two sittings by designation on the United States Court of Appeals for the Ninth Circuit.

In 1999, Mr. Green entered practice on behalf of defrauded consumers and investors, focusing from the outset on appeals. After briefing and arguing appellate matters for several years, he became a Certified Appellate Specialist, State Bar of California Board of Legal Specialization. He also advises the Firm's trial litigators on issues and strategy.

Reflecting the practice's national scope, Mr. Green has handled appeals and writs in jurisdictions across the country. The cases involve diverse subject matter and questions of first impression often resulting in published opinions. Illustrative appeals he has briefed and argued include: *Alaska Elec. Pension Fund v. Brown*, 941 A.2d 1011 (Del. 2007); *Ritt v. Billy Blanks Enter.*, 870 N.E.2d 212 (Ohio Ct. App. 2007); *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457 (2006); *In re Guidant S'holders Derivative Litig.*, 841 N.E.2d 571 (Ind. 2006); *Denver Area Meat Cutters & Employers Pension Plan v. Clayton*, 209 S.W.3d 584 (Tenn. Ct. App. 2006); *Hyams v. Halifax PLC*, 2005 WL 3441230 (N.J. App. Div., Dec. 16, 2005); *Lebrilla v. Farmers Group, Inc.*, 119 Cal. App. 4th 1070 (2004); *West Corp. v. Super. Ct.*, 116 Cal. App.

4th 1167 (2004); and *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003). In partnership with co-counsel, he assisted in briefing *Branick v. Downey Sav. & Loan Ass'n*, 39 Cal. 4th 235 (2006), and also prepared an *amicus curiae* brief on behalf of the National Association of Shareholder and Consumer Attorneys in *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979 (2004).

Beyond his appellate practice, Mr. Green is active in professional activities. Since 2006, he has sat on the State Bar of California Committee on Appellate Courts. He is currently the Chair of the Civil Rules Subcommittee of the San Diego County Bar Association's Appellate Court Committee. In connection with the Firm's consumer fraud practice, Mr. Green is a member of Consumer Attorneys of California and the State Bar Antitrust and Unfair Competition Law Section. He is also a member of the American Constitution Society, the Federal Bar Association, and the California Supreme Court Historical Society.

In the area of publication, Mr. Green is the author of *The Unfair Competition Law After Proposition 64: The California Supreme Court Speaks*, Journal of Competition (Vol. 15, No. 2, Fall/Winter 2006) (published by State Bar Antitrust and Unfair Competition Law Section). While a student, he wrote *A Vote Properly Cast? The Constitutionality of the National Voter Registration Act of 1993*, 22 Journal of Legislation 45 (1996) (published by Notre Dame Law School).

**TOR GRONBORG** was born in Portland, Oregon in 1969. Mr. Gronborg received his Bachelor of Arts degree in 1991 from the University of California at Santa Barbara and was a recipient of an AFL-CIO history scholarship. In 1992, Mr. Gronborg did graduate work in international relations and strategic studies at the University of Lancaster, United Kingdom on a Rotary International Fellowship. Mr. Gronborg received his Juris Doctor degree from Boalt

Hall at the University of California at Berkeley where he was a member of the Moot Court Board.

Since 1997, Mr. Gronborg has worked on securities fraud actions and has been lead or co-lead litigation counsel in cases that have recovered more than $800 million, including: *In re Cardinal Health, Inc. Sec. Litig.* ($600 million); *In re Prison Realty Sec. Litig.* ($104 million); *In re Tele-Commc'ns, Inc. Sec. Litig.* ($33 million); and *Rasner v. Sturm,* (FirstWorld Communications) ($26.5 million). Twice, Mr. Gronborg's pleadings have been upheld by the Ninth Circuit (*Broudo v. Dura Pharms., Inc.*, 339 F.3d 933 (9th Cir. 2003); *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006 (9th Cir. 2005)) and he has been responsible for a number of significant rulings, including: *In re Cardinal Health Inc., Sec. Litig.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006); *In re Direct Gen. Corp. Sec. Litig.*, Case No. 3:05-0077, 2006 U.S. Dist. LEXIS 56128 (M.D. Tenn. 2006); and *In re Dura Pharms., Inc. Sec. Litig.*, 452 F.Supp. 2d 1005 (S.D. Cal. 2006).

Mr. Gronborg was admitted to the California Bar in 1995 and in 1997 was licensed to practice in the courts of the Ninth Circuit and the Northern, Central, and Southern Districts of California. In addition to his securities litigation practice, Mr. Gronborg has lectured on the Federal Rules of Civil Procedure and electronic discovery.

**ELLEN A. GUSIKOFF STEWART** was born in New York, New York in 1964. She received her Bachelor of Arts degree in Economics from Muhlenberg College in 1986 and her Juris Doctor degree from Case Western Reserve University in 1989. Ms. Stewart was admitted to the California Bar in 1989 and is admitted to practice before all federal courts in California, the Sixth and Ninth Circuit Courts of Appeals, and the Western District of Michigan.

Ms. Stewart currently practices in the Firm's settlement department, negotiating and documenting the Firm's complex securities,