# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: STATIC RANDOM ACCESS (SRAM) ANTITRUST LITIGATION,

_____/

No. C 07-01819 CW

ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Direct Purchaser Plaintiff moves for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Defendants[1] oppose the motion. The matter was heard on September

---

[1] Defendants are Renesas Technology Corp., Renesas Technology America, Inc., Hitachi, Ltd., Hitachi America, Ltd., Toshiba America, Inc., Toshiba America Corp., Toshiba Corp., Toshiba America Electronic Components, Inc., Etron Technology, Inc., Etron Technology America, Inc., Integrated Silicon Solution, Inc., Cypress Semiconductor, Inc., Cypress Semiconductor Corp., Hynix Semiconductor America, Inc., Hynix Semiconductor, Inc., Micron Technology, Inc., Micron Semiconductor Products, Inc., Mitsubishi Electric Corp., Mitsubishi Electric & Electronics USA, Inc., NEC Electronics America, Inc., NEC Electronics Corporation, Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., Winbond Electronics Corp., Winbond Electronics (continued...)

19, 2008. Having considered oral argument and all of the papers filed by the parties, the Court grants Plaintiff's motion.

## BACKGROUND

The facts of this case were laid out in greater detail in the Court's order on the initial motion to dismiss. In brief, Direct Purchaser Plaintiff is a group of individuals and companies that purchased Static Random Access Memory (SRAM) directly from one or more Defendants. Defendants are various corporations that sold SRAM to customers throughout the United States. As both Plaintiff and Defendants acknowledge, there are at least two distinct types of SRAM: "SRAM for computers (typically called fast or high power) and SRAM for mobile phones and other hand-held devises that contain a central processor (typically called slow or low power." Noll Rep't. ¶ 55; see also Leonard Rep't ¶ 19-20.

Plaintiff alleges that between 1996 and 2005, Defendants violated Section 1 of the Sherman Act by conspiring to fix and maintain artificially high prices for SRAM. According to Plaintiff, Defendants carried out this conspiracy through in-person, telephone and email communications regarding pricing to customers and market conditions.

The proposed class is defined as follows:

> All persons and entities who, during the period November 1, 1996 through December 31, 2005,

---

[1](...continued)
Corp. America Inc., Alliance Semiconductor Corp., GSI Technology Inc., Crucial Technology, Inc., Sony Corp., Sony Corp. of America, Sony Electronic Inc., Fujitsu Ltd., Fujitsu America, Inc., Integrated Device Technology, Inc., Seiko Epson Corp., Epson America, Inc., Epson Electronics America Inc., Sharp Corp., Sharp Electronics Corp., STMicroelectronics N.V., STMicroelectronics, Inc., Matsushita Electric Industrial Co., Ltd., and Semiconductor Co.

United States District Court
For the Northern District of California

```
                purchased: (1) "fast" SRAM in the United States
                directly from Defendants or any subsidiaries or
                affiliates thereof; or, (2) "slow" SRAM in the
                United States directly from Defendants or any
                subsidiaries or affiliates thereof.  Excluded from
                the Class are Defendants, their parent companies,
                subsidiaries and affiliates, any co-conspirators,
                and all governmental entities.
```

Motion for Class Certification at 2-3.

## LEGAL STANDARD

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). Rule 23(a) provides that a case is appropriate for certification as a class action if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Rule 23(b) further provides that a case may be certified as a class action only if one of the following is true:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory

3

>       relief is appropriate respecting the class as a whole; or
>
>       (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>>      (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>>      (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>>      (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>>      (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

Plaintiffs seeking class certification bear the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that plaintiffs have borne their burden. General Tel. Co. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977). In making this determination, the court may not consider the merits of plaintiffs' claims. Burkhalter Travel Agency v. MacFarms Int'l, Inc., 141 F.R.D. 144, 152 (N.D. Cal. 1991). Rather, the court must take the substantive allegations of the complaint as true. Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975). Nevertheless, the court need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through class action. Burkhalter, 141 F.R.D. at 152. In addition, the court may consider supplemental evidentiary submissions of the parties. In re Methionine Antitrust

4

Litiq., 204 F.R.D. 161, 163 (N.D. Cal. 2001); see also Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983) (noting that "some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a)"; however, "it is improper to advance a decision on the merits at the class certification stage"). Ultimately, it is in the district court's discretion whether a class should be certified. Burkhalter, 141 F.R.D. at 152.

"Class actions play an important role in the private enforcement of antitrust actions. For this reason courts resolve doubts in these actions in favor of certifying the class." In re Rubber Chemicals Antitrust Litiq., 232 F.R.D. 346, 350 (N.D. Cal 2005).

### DISCUSSION

As a preliminary matter, Defendants do not dispute Plaintiff's assertion that this action satisfies the numerosity and commonality requirements of Rule 23(a)(1) and (2), and the Court finds that it does. See 1 Alba Cone & Herbert B. Newberg, Newberg on Class Actions § 3.3 (4th ed. 2002) (where "the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied"); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) ("All questions of fact and law need not be common to satisfy [Rule 23(a)(2)]. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.")

Defendants assert that class certification must fail because (1) Plaintiff cannot meet the typicality requirement of Rule

5

23(a)(3); (2) Plaintiffs cannot protect the interests of all class members as required by Rule 23(a)(4); and (3) Plaintiff cannot meet the requirements of Rule 23(b). The Court addresses and rejects each argument in turn.

I.  Typicality

The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. "The typicality requirement does not mandate that products purchased, methods of purchase, or even damages of the named plaintiffs must be the same as those of the absent class members." In re Vitamins Antitrust Litig., 209 F.R.D. 251, 261 (D.D.C. 2002).

Defendants assert that Plaintiff's claims are not typical because named Plaintiff Westell only purchased fast SRAM and did not purchase any slow SRAM. Defendants claim that fast and slow SRAM exist in two separate markets; therefore, Plaintiff's claims cannot be typical of the entire class. This argument has no merit.

6

Here, the overarching price fixing scheme is the linchpin of Plaintiff's complaint, "regardless of the product purchased, the market involved or the price ultimately paid." In re Flat Glass Antitrust Litig., 191 F.R.D. 472, 480 (W.D. Pa 1999). Both the fast and slow SRAM markets are alleged to be controlled by Defendants' price-fixing conspiracy. Therefore, Plaintiff's participation in one market and not the other does not negate typicality in this case. Moreover, Plaintiff's claims are based on the same legal theories that would be raised by absent class members of both fast and slow SRAM purchasers. Thus, Rule 23(a)(3)'s typicality requirement is met.

II.  Class Certification:  Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement consists of two inquiries: "(1) do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Staton v. Boeing Co., 327 F.3d 938, 958 (9th Cir. 2003). Defendants challenge only the first requirement of the rule.

The mere potential for a conflict of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical. See Cummings v. Connell, 316 F.3d 886, 896 (9th Cir. 2003) ("[T]his circuit does not favor denial of class certification on the basis of speculative conflicts."); Soc. Servs. Union, Local 535 v. County of Santa Clara, 609 F.2d 944, 948 (9th Cir. 1979) ("Mere speculation as to conflicts that may develop at

7

1  the remedy stage is insufficient to support denial of initial class
2  certification."); Blackie v. Barrack, 524 F.2d 891, 909 (9th Cir.
3  1975) (noting that class members might have differing interests at
4  later stages of litigation, but that "potential conflicts" do not
5  present a valid reason for refusing to certify a class).
6  Defendants argue that Plaintiff Westell, Inc. cannot fairly and
7  adequately protect the interests of the class because it is both a
8  direct and indirect purchaser of SRAM.  It should be noted that the
9  instant class action certification motion concerns direct
10 purchasers whereas a separate class action filed in this Court
11 concerns indirect purchasers.  Nevertheless, Defendants assert that
12 because a majority of Westell's purchases are indirect, it has a
13 greater interest in maximizing the putative Indirect Purchaser
14 class' recovery of what might be a limited amount of funds to
15 compensate all purchasers.  This claim is speculative at best.
16     Westell is not a named plaintiff in the Indirect Purchaser's
17 class action complaint, and thus does not control that action.  At
18 this point, Defendants have made no showing that there is a
19 likelihood of competing claims or that there is a conflict of
20 interest with other class members.
21 III. Class Certification:  Predominance
22     Plaintiff asserts that this action falls under the ambit of
23 Rule 23(b) because common issues will predominate over any
24 individualized issues and because a class action is the superior
25 method of adjudicating this matter.  "The Rule 23(b)(3)
26 predominance inquiry tests whether proposed classes are
27 sufficiently cohesive to warrant adjudication by representation."
28 Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).  "When

8

common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." Hanlon, 150 F.3d at 1022 (internal quotation marks omitted).

To determine whether the predominance requirement is satisfied, "courts must identify the issues involved in the case and determine which are subject to 'generalized proof,' and which must be the subject of individualized proof." In re Dynamic Random Access Memory (DRAM) Antitrust Litig., 2006 WL 1530166, at *6 (N.D. Cal.).

To obtain class certification in a Sherman Act § 1 claim, Plaintiff must establish the predominance of common issues related to three key elements: (1) whether there was a conspiracy to fix prices in violation of the antitrust laws; (2) whether Plaintiff sustained an antitrust injury, or the "impact" of Defendants' unlawful activity; and (3) the amount of damages sustained as a result of the antitrust violations.

A. Antitrust Violation Conspiracy

In price-fixing conspiracies, "courts have frequently found this standard satisfied" because "proof of an alleged conspiracy and defendants' acts in furtherance of such conspiracy require common proof of defendants' conduct." DRAM, at 7; See In re Bulk [Extruded] Graphit Prod. Antitrust Litig., 2006 WL 891362 at *9 (whether a conspiracy exists is a common question that predominates over other issues in the case and "has the effect of satisfying the first prerequisite of FRCP 23(b)(3).")

Plaintiff alleges that Defendants conspired to raise, fix,

9

maintain, and stabilize the price of SRAM through in-person, telephone and email communications. This claim requires proof common to all class members. Therefore, the Court finds that common issues predominate as to the element of antitrust violation.

B. Antitrust Injury

To proceed with a class action, Plaintiff must be able to establish, predominantly with generalized evidence, that all (or nearly all) members of the class suffered damage as a result of Defendants' alleged anti-competitive conduct. See DRAM at *7. However, as the court in DRAM stated:

> [D]uring the class certification stage, the court must simply determine whether plaintiffs have made a sufficient showing that the evidence they intend to present concerning antitrust impact will be made using generalized proof common to the class and that these common issues will predominate. The court cannot weigh in on the merits of plaintiffs' substantive arguments, and must avoid engaging in a battle of expert testimony. Plaintiffs need only advance a plausible methodology to demonstrate that antitrust injury can be proven on a class-wide basis.

Id. at *9 (citations and internal quotation marks omitted).

Here, through the expert report of Dr. Noll, Plantiff has advanced a plausible methodology that demonstrates that antitrust injury can be proved on a class-wide basis. Determining an injury, whether proven by a single plaintiff or numerous plantiffs, involve an analysis of the entire SRAM market. For instance, common factors that an individual plaintiff or numerous plaintiffs would need to address include: Defendants' market power (Noll Expert Report (Noll) ¶ 35-37, Table 1); elasticity of demand (Noll at ¶ 42); categories of direct purchasers (Noll ¶¶ 48-50, Exhibit 3); the effect of purchasing contracts (Noll ¶¶ 44-47, Exhibit 1); and actual prices charged.

10

Dr. Noll concluded that these common factors affect prices of all standard SRAM products: "The evidence that is needed to show that collusion was effective and thereby harmed consumers is common to all members of the class." Noll ¶ 81. Defendants counter that Dr. Noll's conclusions with respect to each of the common factors is suspect. Yet, at this stage in the litigation, "we must avoid engaging in a battle of the expert testimony." DRAM, at *9. Dr. Noll's report supports Plaintiff's contention that an "antitrust impact will be made using generalized proof common to the class and that these common issues will predominate." Id. All of these issues would need to be discussed to prove Defendants' ability to fix prices effectively, and all of these issues would be similarly presented in a case with one plaintiff or in a class action.

Defendants further challenge Dr. Noll's findings because they are, in part, based on correlation analyses. Dr. Noll used correlation analysis to test for common determinants of price and to track price data against actual sales. As Defendants point out, and Dr. Noll concedes, "the power of correlation analysis is low." Noll ¶ 77. Defendants, through their own expert Dr. Leonard, emphasize the weak statistical power of correlation tests. Leonard Expert Report ¶¶ 107-114. Yet, similar correlation analyses and market information have been upheld by numerous courts. In DRAM, the court granted class certification to plaintiffs asserting antitrust violations in the DRAM market. DRAM, at *11. The court concluded that an expert's report grounded in analyses and conclusions regarding DRAM market share estimates, contract reviews, and correlations derived from price and sales data supported plaintiffs' claims that the injury could be proved on a

11

class-wide basis. DRAM, at *8. See also In re Rubber Chem. Antitrust Litig., 232 F.R.D. 346, 353 (N.D. Cal. 2005) (upholding correlation analysis). Therefore, at this early stage in the litigation, the correlation analyses, combined with the analysis of the SRAM industry, suffice to establish a plausible methodology for proving an injury. Thus, the Court concludes that the predominance requirement has been satisfied with regard to the injury element of Plaintiff's claim.[2]

C. Damages

"Antitrust plaintiffs have a limited burden with respect to showing that individual damages issues do not predominate." In re Potash Antitrust Litig., 159 F.R.D. 682, 697 (D. Minn. 1995). Plaintiffs are not required to "supply a 'precise damage formula' at the certification stage of an antitrust action. Instead, in assessing whether to certify a class, the Court's inquiry is limited to whether or not the proposed methods are so insubstantial as to amount to no method at all." Id.

Plaintiff has proffered three methodologies for calculating damages on a class-wide basis: the first compares SRAM prices before and after the period of the price-fixing conspiracy (Noll ¶¶ 83-92); the second compares SRAM prices during the class period with prices for comparable products (Noll ¶¶ 93-95); and the third uses Defendants' cost data to estimate what competitive prices for

---

[2] Defendants also assert that analyzing the impact of customized SRAM would require an individualized analysis to prove an antitrust violation. Plaintiff concedes this point and asks the Court to exclude custom SRAM from the class. Plaintiff shall submit to Defendants a revised proposed class definition making this change, and then submit it to the Court by stipulation, or with a proposed alternate version from Defendants.

12

SRAM should have been (Noll ¶¶ 96-103). Plaintiff has proffered methods for calculating aggregate damages for overcharges paid by class members, based on average market prices. The validity of those methods "will be adjudicated at trial based upon economic theory, data sources, and statistical techniques that are entirely common to the class." In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 521 (S.D.N.Y. 1996).

Defendants have not shown that the methods are "so insubstantial as to amount to no method at all." Potash, 159 F.R.D. at 697. Therefore, the Court concludes that individual issues do not predominate with respect to Plaintiff's proof of the damages element of the antitrust conspiracy claim.

D.  Superiority

Rule 23(b)(3) also requires that class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." Amchem Prod., Inc. V. Windsor, 521 U.S. 591, 617 (1997). In antitrust cases such as this, the damages of individual direct purchasers are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress. A class action is the superior method of resolving this controversy.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion (Docket No. 437) for class certification. The Court also certifies

13

1  Westell, Inc. as Class Representative and appoints the Cotchett,
2  Pitre & McCarthy as lead counsel.[3]  Lead counsel for Plaintiff
3  shall prepare and submit within thirty days from the date of this
4  Order a proposed form of notice to be sent to members of the Class.
5  Defendants may file any comments to the notice within fifteen days
6  and Plaintiff may reply fifteen days after.  Defendants shall
7  prepare and submit to the Court and to counsel for Plaintiff within
8  thirty days from the date of this Order a list of names and
9  addresses of all Class Members who can be identified with diligent
10 effort.
11      IT IS SO ORDERED.

13 Dated: 9/29/08

                                    _____
                                    CLAUDIA WILKEN
                                    United States District Judge

---

[3] In another order, Westell, Inc. is substituted as the real party in interest for Westell Technologies, Inc.

14