1  COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  BONNY E. SWEENEY (176174)
   655 West Broadway, Suite 1900
3  San Diego, CA  92101
   Telephone:  619/231-1058
4  619/231-7423 (fax)
   bonnys@csgrr.com
5
   THE KATRIEL LAW FIRM
6  ROY A. KATRIEL (*pro hac vice*)
   1101 30th Street, N.W., Suite 500
7  Washington, DC  20007
   Telephone:  202/625-4342
8  202/330-5593 (fax)
   rak@katriellaw.com
9
   Co-Lead Counsel for Plaintiffs
10
   [Additional counsel appear on signature page.]
11
                    UNITED STATES DISTRICT COURT
12
                    NORTHERN DISTRICT OF CALIFORNIA
13
                         SAN JOSE DIVISION
14
   THE APPLE IPOD ITUNES ANTI-TRUST          )  Lead Case No. C-05-00037-JW(RS)
15 LITIGATION                                )
                                             )  CLASS ACTION
16 _____       )
                                             )
   This Document Relates To:                 )  REPLY MEMORANDUM IN SUPPORT OF
17                                           )  PLAINTIFFS' MOTION FOR CLASS
        ALL ACTIONS.                         )  CERTIFICATION AND APPOINTMENT OF
18 _____       )  CLASS COUNSEL
                                             )
19                                              JUDGE:    Hon. James Ware
                                                DATE:     December 15, 2008
20                                              TIME:     9:00 a.m.
                                                CTRM:     8-4th Floor
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   PLAINTIFFS SATISFY RULE 23 REQUIREMENTS...................................................1

    A.    Plaintiffs' Tying Claim Can Be Proven Using Common Proof.............................1

        1.    The Coercion Element Does Not Require Individualized .........................3

        2.    "Package Theory" of Damages, Even if Adopted by the Ninth
             Circuit, Would Not Preclude Class Certification.........................................8

        3.    Apple's Proposed "Damages Methodology" is Not Supported by
             Expert Testimony and is Not Required by Law.......................................10

    B.    Plaintiffs' Monopolization Claims Go Essentially Unopposed .........................11

    C.    Plaintiffs' 23 (b)(2) Injunctive Relief Claim Warrants Certification...................12

III.  THE CLASS IS PROPERLY DEFINED TO INCLUDE ALL DIRECT
      PURCHASERS, WHO ARE ADEQUATELY REPRESENTED BY THE
      PROPOSED CLASS REPRESENTATIVES ..................................................................13

IV.   CONCLUSION................................................................................................15

1

# TABLE OF AUTHORITIES

2
Page

3
## CASES

4

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ...........................................................15

5

*Chase Parkway Garage Inc. v. Subaru, Inc.*,
6
    94 F.R.D. 330 (D. Mass. 1982).........................................................6

7
*Colburn v. Roto-Rooter Corp.*,
    78 F.R.D. 679 (N.D. Cal. 1978).........................................................6

8

*Daniels v. Amerco*,
9
    No. 81 CIV 3801 (RLC), 1983 WL 1794
    (W.D.N.Y. Mar. 10, 1983)..................................................................6
10

*Davis v. S. Bell Tel. & Tel. Co.*,
11
    No. 89-2839-Civ-NESBITT, 1993 WL 593999
    (S.D. Fla. Dec. 23, 1993) .................................................................12
12

*Digidyne Corp. v. Data Gen. Corp.*,
13
    734 F.2d 1336 (9th Cir. 1984) ...........................................................4

14
*Eastman Kodak Co. v. Image Tech. Servs.*,
    504 U.S. 451, 112 S. Ct. 2072 (1992)................................................5
15

*Freeland v. AT&T Corp.*,
16
    238 F.R.D. 130 (S.D.N.Y. 2006) ....................................................6, 9

17
*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .........................................................14
18

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
19
    392 U.S. 481, 88 S. Ct. 2224 (1968)............................................13, 14

20
*Hill v. A-T-O, Inc.*,
    535 F.2d 1349 (2d Cir. 1976).............................................................7
21

*Image Tech. Servs. v. Eastman Kodak*,
22
    125 F.3d 1195 (9th Cir. 1997) .........................................................10

23
*In re Bulk [Extruded] Graphite Prods. Litig.*,
    No. 02-6030 (WHW), 2006 WL 891362
24
    (D.N.J. Apr. 4, 2006) ..........................................................13, 14, 15

25
*In re Data Gen. Corp. Antitrust Litig.*,
    490 F.Supp. 1089 (N.D. Cal. 1980).............................................4, 10
26

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
27
    No. M 02-1486 PJH, 2006 WL 1530166
    (N.D. Cal. June 5, 2006)..................................................8, 10, 13, 14

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS COUNSEL- C-05-00037-JW(RS)

- ii -

1

2                                                                                                    **Page**

3    *In re Live Concert Antitrust Litig.,*
           247 F.R.D. 98 (C.D. Cal. 2007)..................................................................8, 11, 12
4
     *In re Relafen Antitrust Litig.,*
5          360 F. Supp. 2d 166 (D. Mass. 2005) ..................................................................13, 14

6    *In re Static Random Access (SRAM) Antitrust Litig.,*
           No. C 07-01819 CW, 2008 WL 4447592
7          (N.D. Cal. Sept. 29, 2008) ........................................................................................10

8    *In re Visa Check/MasterMoney Antitrust Litig.,*
           280 F.3d 124 (2d Cir. 2001).......................................................................................11
9
     *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,*
10         466 U.S. 2, 104 S. Ct. 1551 (1984)............................................................................2, 4

11   *Kypta v. McDonald's Corp.,*
           671 F.2d 1282 (11th Cir. 1982) .................................................................................9
12
     *L.A. Mem'l Coliseum Comm'n v. NFL,*
13         791 F.2d 1356 (9th Cir. 1986) ...................................................................................8

14   *Lessig v. Tidewater Oil Co.,*
           327 F.2d 459 (9th Cir. 1964) .....................................................................................10
15
     *Linney v. Cellular Alaska P'ship.,*
16         151 F.3d 1234 (9th Cir. 1998) ...................................................................................12

17   *Little Caesar Enters., Inc. v. Smith,*
           895 F.Supp. 884 (E.D. Mich. 1995)............................................................................6
18
     *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.,*
19         246 F.R.D. 293 (D.D.C. 2007).................................................................................13

20   *Meijer v. Abbott Labs.,*
           No. C 07-5985 CW, 2008 WL 4065839
21         (N.D. Cal. Aug. 27, 2008).........................................................................................9

22   *Moore v. Jas. H. Matthews & Co.,*
           550 F.2d 1207 (9th Cir. 1977) ..............................................................................3, 4, 6
23
     *Northern Pacific Railway Company v. United States*
24         356 U.S. 1, 78 S. Ct. 514 (1958)................................................................................5

25   *Olmstead v. Amoco Oil Co.,*
           No. 76-247-Orl-Civ-Y, 1977 WL 1416
26         (M.D. Fla. June 16, 1977).........................................................................................6

27   *Probe v. State Teachers' Ret. Sys.,*
           780 F.2d 776 (9th Cir. 1986) .....................................................................................12

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND          - iii -
APPOINTMENT OF CLASS COUNSEL - C-05-00037-JW(RS)

1

2                                                                                         **Page**

3   *Siegel v. Chicken Delight, Inc.*,
         448 F.2d 43 (9th Cir. 1971) .................................................................................3, 8
4
    *Slattery v. Apple Comp., Inc.*,
5        No. C 05-00037 JW, 2005 WL 2204981
         (N.D. Cal. Sept. 9, 2005) ..........................................................................................3
6
    *Smith v. Denny's Rests., Inc.*,
7        62 F.R.D. 459 (N.D. Cal. 1974).................................................................................6

8   *Teva Pharms. USA, Inc. v. Abbott Labs.*,
         252 F.R.D. 213 (D. Del. 2008) ................................................................................14
9
    *Tucker v. Apple Comp., Inc.*,
10       493 F. Supp. 2d 1090 (N.D. Cal. 2006) ...........................................................3, 5, 6, 7

11  *Tuolumne v. Sonora Cmty. Hosp.*,
         236 F.3d 1148 (9th Cir. 2001) ..................................................................................2
12
    *U.S. v. Microsoft Corp.*,
13       253 F.3d 34 (D.C. Cir. 2001) ....................................................................................4

14  *Ungar v. Dunkin' Donuts, Inc.*,
         531 F.2d 1211 (3d Cir. 1976).....................................................................................6
15
    *Valley Drug Co. v. Geneva Pharms. Inc.*,
16       350 F.3d 1181 (11th Cir. 2003) .................................................................................9

17  *Waldo v. N. Am. Van Lines, Inc.*,
         102 F.R.D. 807 (W.D. Pa. 1984) ...............................................................................6
18
    *Ways & Means, Inc. v. IVAC Corp.*,
19       506 F.Supp. 697 (N.D. Cal. 1979) .........................................................................4, 7

20  *Wofford v. Safeway Stores, Inc.*,
         78 F.R.D. 460 (N.D. Cal. 1978)...............................................................................14
21

**STATUTES, RULES AND REGULATIONS**

22

    15. U.S.C.
23       §1.................................................................................................................1, 3, 8, 13
         §2.............................................................................................................1, 11, 12, 13
24
    Federal Rule of Civil Procedure
25       Rule 23 ........................................................................................................................1
         Rule 23(b)(2).................................................................................................12, 14, 15
26       Rule 23(b)(3).......................................................................................................13, 15

27

28

1

2                                                                                          **Page**

3   **SECONDARY AUTHORITIES**

4   R. Anthony Reese, *Law Technology & the Arts Symposium:  The Problems of*
5       *Judging Young Technologies:  A Comment on Sony, Tort Doctrines,*
        *and the Puzzle of Peer-to-Peer*, 55 ....................................................................................7

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

No matter how innovative or "award-winning" its products, Apple, Inc. ("Apple") is not immune from the antitrust laws or the rules governing class certification.  In their opening class certification brief and supporting expert report, Plaintiffs demonstrated that they can prove each element of their Section 1 and Section 2 Sherman Act antitrust claims through predominantly common proof.  In opposition, Apple fails to conduct any similar element-by-element analysis, and fails to challenge any of the conclusions in the 60-page report of Plaintiffs' expert, renowned Stanford economist Roger G. Noll.

Lacking its own economist and virtually ignoring Plaintiffs' Section 2 claims, Apple instead improperly argues the merits, devoting all but two paragraphs of its brief to attacking the legal viability of Plaintiffs' Section 1 tying claim.  In support of its improper merits arguments, Apple ignores this Court's prior rulings upholding Plaintiffs' tying and monopolization claims, distorts Professor Noll's report and testimony, and attempts to re-cast Plaintiffs' claims.  Apple even goes so far as to chastise Professor Noll for not completing a full-blown regression analysis, even though Apple insisted, over Plaintiffs' objection, on an order limiting discovery and agreed to the use of exemplars to illustrate the kind of data Apple has available for merits discovery.  Not only are Apple's arguments misguided and improper, they ultimately only reinforce the common character of the issues raised by Plaintiffs' Section 1 and Section 2 claims, thereby confirming the propriety of class certification.

## II.     PLAINTIFFS SATISFY RULE 23 REQUIREMENTS

### A.      Plaintiffs' Tying Claim Can Be Proven Using Common Proof

As explained in Plaintiffs' opening brief, and as Professor Noll opined in his expert report and deposition testimony, none of the elements of Plaintiffs' tying claim turns on the individual circumstances of a particular class member.  Rather, Plaintiffs will rely upon common evidence to prove all elements of their claim.

1    The first element – the requirement that the tying and tied products be separate – presents no

2    barrier to certification because Apple has *conceded* that the iPod and the iTunes digital audio and

3    video downloads are separate products.[1]  Def's. Mem. at 12.  *See Jefferson Parish Hosp. Dist. No. 2*

4    *v. Hyde*, 466 U.S. 2, 21, 104 S. Ct. 1551 (1984) ("a tying arrangement cannot exist unless two

5    separate product markets have been linked").  Thus, Plaintiffs will not rely on any individual

6    evidence to prove this element.

7    Nor does Apple dispute that common evidence will be used to define the relevant markets

8    and to determine whether Apple has sufficient economic power in the tying markets (legal

9    permanent digital audio and video downloads) to restrain competition in the tied market (portable

10   digital media players).  *See* Noll Decl. at 20-35 (describing the evidence an economist would use to

11   define relevant markets and determine the level of economic power, and concluding that

12   "[i]dentically the same information would be required to prove the relevant market if each member

13   of the class were to make separate antitrust claims" and that "proof of market power is common to

14   all class members" because "exactly the same data would be collected and analyzed for each class

15   member if each were to make the same antitrust claims separately");[2] Plfts' Mem. at 11-13, 18-19;

16   Def's. Mem. at 10-12.

17   Apple also fails to contest Plaintiffs' assertion that they will rely on common proof to show a

18   "not insubstantial effect" on commerce in the tied product market and, if a rule of reason analysis is

19   applied, that Apple's tie unreasonably suppresses competition in the tied product market.  *See* Noll

20   Decl. at 38-39 (evidence of extent of foreclosure in the tied product market "applies to conditions in

21   these markets, not characteristics of a consumer, and so is common to all class members); Plfts'

22   Mem. at 13-15; Def's. Mem. at 18-22; *Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1157-58

23   (9th Cir. 2001) (proof of "an effect on a not-insubstantial volume of commerce in tied product

24

25   [1]    All references to "Def's. Mem." are to the Memorandum in Opposition to Motion for Class
26   Certification, dated October 17, 2008.

27   [2]    All references to "Plfts' Mem." are to the Notice of Motion and Motion for Class
     Certification and Appointment of Class Counsel, filed July 21, 2008.

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS COUNSEL - C-05-00037-JW(RS)                                                    - 2 -

1    market" is required for *per se* violation and proof that the tie "suppresses competition" is required

2    under rule of reason analysis).

3            **1.    The Coercion Element Does Not Require Individualized**

4            The ***only*** argument Apple makes against certifying Plaintiffs' tying claim (or any other

5    claim) is one that this Court has already rejected, ***twice***.  Apple argues that the class cannot be

6    certified because a class member by class member analysis is required to determine whether the

7    "coercion" element of tying has been satisfied.  Def's. Mem. at 2-3, 5-18.  As this Court has already

8    held, however, coercion may be alleged and proven at the market, rather than the individual, level:

9            [T]here is ***no requirement that individual purchaser plaintiffs must allege coercion
         at the individual level***, rather than at the market level, to state a Section 1 tying
10           claim.  In the Ninth Circuit, "[t]he essence of an antitrust tying violation is not the
         seller's unilateral refusal to deal with a buyer who refuses to buy the tied product, but
11           the use by the seller of its 'leverage' to force a purchaser to do something that he
         would not do in a competitive market."[3]

12   *Tucker v. Apple Comp., Inc.*, 493 F. Supp. 2d 1090, 1097 (N.D. Cal. 2006); *see also Slattery v. Apple*

13   *Comp., Inc.*, No. C 05-00037 JW, 2005 WL 2204981, at *3 (N.D. Cal. Sept. 9, 2005).

14           Plaintiffs can prove through common evidence that coercion exists at the market level by

15   demonstrating that "an appreciable number of buyers have accepted" the tie-in, and that Apple holds

16   "sufficient economic power in the tying product market."[4]  *Moore v. Jas. H. Matthews & Co.*, 550

17   F.2d 1207, 1217 (9th Cir. 1977)[5]; Ex. 1, Deposition Transcript of Roger G. Noll, taken Sept. 19,

18   2008 ("Noll Depo.") at 66:1-5.  As the case law demonstrates and as Professor Noll explains, the fact

19

20   _____

21   [3]        Unless otherwise indicated, citations are omitted and emphasis is added.

22   [4]        Apple attempts to distinguish *Moore*, asserting that "the seller expressly required purchasers
     of cemetery plots to also purchase grave markers or burial services."  Def's Mem. at 16.  In fact, as
23   the Ninth Circuit made plain, some purchasers bought the tying product without also buying the tied
     product.  *Moore*, 550 F.2d at 1217 ("each purchaser of a cemetery plot ***was not absolutely required***
24   to buy a marker").  Relying on *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 52-53 (9th Cir. 1971)
     among other cases, the court repeated its holding that "a[] showing of an onerous effect on an
25   appreciable number of buyers coupled with a demonstration of a sufficient economic power in the
     tying market is sufficient to demonstrate coercion."  *Id.*

26   [5]        All references to "Ex." are to the Declaration of Bonny E. Sweeney in Support of Plaintiffs'
27   Reply Memorandum of Points and Authorities in Support of Motion for Class Certification and
     Appointment of Class Counsel, filed concurrently.

28

1  that some class members purchased their iPods for intended uses other than playing iTunes

2  downloads does not affect the illegality of the tie-in that created supracompetitive prices for all class

3  members.  Ex. 1, Noll Depo. at 19:21-24 ("[T]he identity of a particular consumer with respect to

4  whether their objective was getting access to digital downloads on a portable digital player is not

5  what's relevant.").  All that is necessary is that at the **market level** the demand for iPods increased

6  because of their unique ability to play digital downloads purchased from iTunes, resulting in a

7  significant increase in price.[6]  Ex. 1, Noll Depo. at 20:19-25, 195:9-13, 252:23-254:3; Noll Decl. at

8  28.

9        Tying law has never required that the plaintiff prove that the tied product can only be used

10  together with the tying product, despite Apple's merits contention to the contrary.  *See* Def's Mem.

11  at 12.   Indeed, many cases in which plaintiffs have successfully proven an unlawful tying

12  arrangement involve tying and tied products that are available separately and have separate uses.

13  *See, e.g.*, *U.S. v. Microsoft Corp.*, 253 F.3d 34, 45 (D.C. Cir. 2001) (tying claim permitted where

14  tying product, a computer operating system, was used for purposes other than internet access for

15  which the tied product, Internet Explorer, was created); *Moore*, 550 F.2d at 1217 (each purchaser of

16  cemetery plots was "not absolutely required" to buy a marker); *In re Data Gen. Corp. Antitrust*

17  *Litig.*, 490 F.Supp. 1089, 1110-11 (N.D. Cal. 1980) (fact that computer manufacturer technically

18  offered buyers the option to purchase its computer and memory separately did not preclude liability);

19  *Ways & Means, Inc. v. IVAC Corp.*, 506 F.Supp. 697, 701 (N.D. Cal. 1979) ("separate availability

20  will not preclude antitrust liability where a defendant has established its pricing policy in such a way

21  that the only viable economic option is to purchase the tying and tied products").

22        Nor does Ninth Circuit tying law require that all consumers purchase both the tied product

23  and tying product.[7]  Again, Apple reprises an argument that has already been soundly rejected by

24

25  [6]      All references to the "Noll Decl." are to the Declaration of Roger G. Noll, dated July 15,

26  2008 submitted as exhibit 1 to the Declaration of Bonny E. Sweeney in Support of Plaintiffs'
    opening brief.

27  [7]      Apple insists that individual proof is required to determine which consumers would purchase

28  an iPod in the "but-for" world, because absent the tie, Apple could still have significant market

1   this Court.  Relying on the Supreme Court's *Eastman Kodak* case, which upheld a tying claim even

2   though customers could purchase the tying and tied products separately, the Court held:

3   > Apple's argument . . . is unavailing.  It disregards Plaintiff's definition of the relevant
    > markets . . . .

4
                                    *        *        *

5
6   > [P]laintiff's antitrust claim is not barred simply because some customers purchase
    > iPods and never buy music from iTMS (*i.e.*, never seek to purchase legal digital
    > music files for their iPods) and others buy music from iTMS and never purchase
7   > iPods (*i.e.*, never seek to purchase a digital music player to play their files).

8   *Tucker*, 493 F. Supp. 2d at 1098 (citing *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451,

9   463, 112 S. Ct. 2072 (1992)).

10         The relevant markets are the markets for legal permanent digital audio and video downloads

11  and portable digital media players.[8]  Complt., ¶¶3-8, 21-24; Noll Decl. at 21-29.  Within Plaintiffs'

12  proposed tied product market, the **only** portable digital media player capable of directly playing

13  digital downloads purchased from iTunes is an iPod.  As the Supreme Court said in *Northern Pacific*

14  *Railway Company v. United States*, a tying arrangement is "an agreement by a party to sell one

15  product but only on the condition that the buyer also purchases a different (or tied) product, ***or at***

16  ***least agrees that he will not purchase that product from any other supplier*.**" *N. Pac. Ry. Co. v.*

17  *U.S.*, 356 U.S. 1, 5-6, 78 S. Ct. 514 (1958).  As a result of Apple's technological tie, iTunes

18  customers are precluded from purchasing, other than from Apple, portable digital media players on

19  which they can directly play back their iTunes downloads.  And, because Apple's technological tie is

20  ─────────────────────────────

21  power.  *See* Def's. Mem. at 15.  However, as Professor Noll stated and as the case law makes clear,
    "[t]he issue is not would they have market power.  The issue is not does all of their market power
22  derive from the tie.  The issue is is there a not insubstantial part of that market power that is derived
    from the tie." Ex. 1, Noll Depo. at 66:1-12; Noll Decl. at 38.  *See Jefferson Parish*, 466 U.S. at 6
23  (holding that the crucial inquiry for a *per se* violation is whether the tie foreclosed a "substantial
    volume of commerce" in the tied product market); *Digidyne Corp. v. Data Gen. Corp.*, 734 F.2d
24  1336, 1341 (9th Cir. 1984).Proof that the technological tie has a not insubstantial effect on the tied
    product market will require analysis of market conditions, market characteristics, product
25  performance, and costs to Apple, all of which involve proof common to all class members.  Noll
    Decl. at 37-47.

26  [8]      All references to "Complt." are to the Consolidated Complaint for Violations of Sherman
27  Antitrust Act, Clayton Act, Cartwright Act, California Unfair Competition Law, Consumer Legal
    Remedies Act, and California Common Law of Monopolization, filed April 19, 2007.

28

1    unremitting – only iPod owners may directly play iTunes audio and video downloads – coercion may

2    be proved on a class wide basis.

3    Tellingly, Apple relies almost exclusively on cases from circuits that, unlike the Ninth

4    Circuit, require proof of **actual** coercion.  *See* Def's. Mem. at 13 (citing cases from the First, Second,

5    and Eleventh Circuits).  As this Court has already held, the Ninth Circuit – unlike some other circuits

6    – does not require proof of actual coercion in tying cases.  Rather, Plaintiffs may prove coercion at

7    the market level.  *Tucker*, 493 F. Supp. 2d at 1096-97; *cf., e.g., Freeland v. AT&T Corp.*, 238 F.R.D.

8    130, 154 (S.D.N.Y. 2006) (Second Circuit requires proof of "actual" coercion).

9    Nor does Apple rely on any case involving a technological tie that applies to each and every

10   product unit sold.  Instead, plaintiffs in the cases cited by Apple challenged contractual ties that were

11   not uniformly imposed and enforced across the class.  *See Freeland*, 238 F.R.D. at 155 (no provision

12   in class members' cell phone service plans requiring purchase of handset); *Little Caesar Enters., Inc.*

13   *v. Smith*, 895 F.Supp. 884, 904 (E.D. Mich. 1995) (no express contractual tie existed in franchise

14   contract); *Colburn v. Roto-Rooter Corp.*, 78 F.R.D. 679, 681-82 (N.D. Cal. 1978) (no evidence tying

15   provision in plaintiff's contract was enforced throughout the class).[9]

16   In contrast to the proposed class members in Apple's cases, here it is undisputed that every

17   class member is subject to the same technological tie – the same technology exists in each iPod and

18   each Digital Rights Management ("DRM")-protected download purchased from iTunes.  *See* Pltfs'

19   Mem. at 16-17.  Because the technology is applicable to all product units, and thus increased the

20   price paid by each class member, no other proof of coercion is required.  *Moore*, 550 F.2d at 1217

21

---

22   [9]    *See also Smith v. Denny's Rests., Inc.*, 62 F.R.D. 459, 461 (N.D. Cal. 1974) (franchise
23   agreement did not expressly create tie-in policy); *Chase Parkway Garage Inc. v. Subaru, Inc.*, 94
      F.R.D. 330, 332 (D. Mass. 1982) (because no express tying provision existed, proof defendants
24   enforced such a policy would require individual proof); *Ungar v. Dunkin' Donuts, Inc.*, 531 F.2d
      1211, 1216 (3d Cir. 1976) (no existence of express contractual tie); *Daniels v. Amerco*, No. 81 CIV
25   3801 (RLC), 1983 WL 1794, at *1 (W.D.N.Y. Mar. 10, 1983) (alleged tie based on verbal orders or
      "indirect strategems" not contractual provisions); *Waldo v. N. Am. Van Lines, Inc.*, 102 F.R.D. 807,
26   814 (W.D. Pa. 1984) (no express contractual tie-in provision existed in franchise contract); *Olmstead
      v. Amoco Oil Co.*, No. 76-247-Orl-Civ-Y, 1977 WL 1416, at *3 (M.D. Fla. June 16, 1977) (absent
27   express tie-in in lease agreement, proof based on operation of the relevant program and pressure by
      defendant on class members was insufficient).

28

1    (showing of onerous effect on appreciable number of buyers coupled with economic power in the

2    tying market is sufficient); *Hill v. A-T-O, Inc.*, 535 F.2d 1349, 1355 (2d Cir. 1976) (an "unremitting

3    policy of tie-in" and sufficient market power constitutes requisite coercion); Noll Decl. at 37-39, 42-

4    43.

5        Improperly arguing the merits further still, Apple asserts that "burning and ripping" presents

6    a viable alternative to purchasing an iPod by allowing consumers the opportunity to strip away

7    Apple's FairPlay DRM from music downloads and play them on a competing player in an

8    unprotected format.[10]  Def's. Mem. at 8-10.  Whether "burning and ripping" is, in fact, lawful and

9    therefore even a viable alternative to playing iTunes music downloads directly on an iPod is a

10   common question that is hotly disputed and affects the whole class.  *See* R. Anthony Reese, *Law

11   Technology & the Arts Symposium: The Problems of Judging Young Technologies:  A Comment on

12   Sony, Tort Doctrines, and the Puzzle of Peer-to-Peer*, 55 Case W. L. Rev. 877, 892, n.52 (Summer

13   2005) ("Copyright owners have asserted that most personal copying by burning a duplicate CD or

14   ripping CD tracks to transferable and usually compressed-format files is infringing.").   Even

15   assuming "burning and ripping" is lawful, Apple must still demonstrate that the costs to consumers

16   of "burning and ripping" (including purchasing a CD burner, purchasing CDs, and expending time to

17   burn and rip) are so minor as to make this process equivalent to playing iTunes music downloads

18   directly on an iPod.  *See, e.g.*, Noll Decl. at 25; Ex. 1, Noll Depo. at 21:10-17, 195:1-5, 257:19-

19   258:6.  Regardless, this is a merits question that is irrelevant to class certification.  *Ways & Means,

20   Inc.*, 506 F.Supp. at 702-03 (deciding whether a separate product is a viable option to the tie-in is a

21   question of fact at the summary judgment stage).  *See Tucker*, 493 F. Supp. 2d at 1098.

22

23   _____

24   [10]    Apple disingenuously says that "plaintiffs and their economist have now conceded" that
     "burning and ripping" allows a consumer to play iTunes downloads on a digital player other than the
     iPod which has resulted in a change of claims.  Def's. Mem. at 9.  Plaintiffs have never denied that

25   "burning and ripping" exists and have definitely not changed their claims; instead, Plaintiffs have
     consistently argued that "burning and ripping" is not nearly the simple, easy viable alternative for

26   consumers Apple makes it out to be.  *See* Complt., ¶22; Ex. 1, Noll Depo. at 15:12-24; 66:13-23.
     Notably, Apple makes no comparable argument for video downloads, because video downloads

27   cannot be burned and ripped.

28

## 2.   "Package Theory" of Damages, Even if Adopted by the Ninth Circuit, Would Not Preclude Class Certification

Apple argues that Plaintiffs' proposed methodologies for proving damages are insufficient because they do not include assessment of the price paid by class members for iTunes downloads. Def's. Mem. at 18.   According to Apple's "package" theory, if a purchaser, as a result of the unlawful tie has received a price reduction on iTunes digital downloads that exceeds the amount of an overcharge on the iPod, then "the purchaser has not suffered any injury." *Id.*

The Ninth Circuit has never held that offsets for reductions in price on the tying product preclude class certification.   In *Siegel*, the only Ninth Circuit case cited by Apple, plaintiff-franchisees were required to purchase a fixed quantity of equipment and supplies exclusively from franchisor Chicken Delight, as a condition for using Chicken Delight's unique registered trade-mark. *Siegel*, 448 F.2d at 52-53.   The franchisee class was certified and proceeded to trial on a tying theory.   After the plaintiff class prevailed at trial, the Ninth Circuit ***affirmed*** the judgment that Chicken Delight's contractual requirements constituted a tying arrangement in violation of Section 1. *Id.* at 52.   The Ninth Circuit remanded the case solely on the question of the measure of damages, because class members were not charged for the use of the trademark.   *Id.* at 53.   The Ninth Circuit held that, absent the tie, defendant would have charged plaintiffs for the use of the trademark. Therefore, class members' damages should have been offset by the amount they would have paid for the trademark in a competitive market.   *Id.* at 52-53.

As *Siegel* and subsequent Ninth Circuit cases make clear, price reductions in the tying product neither relieve the defendant of liability, nor preclude certification of a class.   Rather, any such reductions affect only the measure of damages.   *See L.A. Mem'l Coliseum Comm'n v. NFL*, 791 F.2d 1356, 1370-71 (9th Cir. 1986) (explaining that *Siegel* is merely a case of offsetting damages). Proof of antitrust injury is not impacted by proof that Plaintiffs also received benefits from the anticompetitive conduct.   *Id.* at 1371.   Individual damages issues will not defeat certification.   *Id.*; *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 133-35 (C.D. Cal. 2007) (individual damages issues will not defeat class certification); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *10 (N.D. Cal. June 5, 2006) (same).

Moreover, as Professor Noll explained at his deposition, this is not a case in which the alleged tie would have been likely to cause a decrease in the price of the tying product, *i.e.*, iTunes downloads.[11]  Rather, a tie is likely to decrease the price for the tying product only under certain circumstances, for example, where there is a fixed relationship between the purchase quantity of the tying product and the purchase quantity of the tied product, or where the tying product is initially priced at a low introductory price and then increased.  Ex. 1, Noll Depo. at 141:3-145:1.  As Professor Noll testified, neither of those conditions is present here.  Ex. 1, Noll Depo. at 142:11-145:1; *see, e.g., Kypta v. McDonald's Corp.*, 671 F.2d 1282, 1285-86 (11th Cir. 1982) (alleged tie of license to restaurant lease in fixed proportion required proof that the tie increased the prices of the "entire package").

Thus, Professor Noll correctly did not account for any iTunes discount in his proposed damages methodologies.  Perhaps that is why Apple lacks any expert economist to challenge Professor Noll's methodology.  In any event, even assuming any offset for a "benefit" derived from Apple's anticompetitive conduct were appropriate, accounting for such offset can be performed formulaically for the entire class.  *See Meijer v. Abbott Labs.*, No. C 07-5985 CW, 2008 WL 4065839, at *9-*10 (N.D. Cal. Aug. 27, 2008) (certifying tying claims despite defendant's argument that plaintiffs' proposed damages methodology did not take into account possible discounts or chargebacks received by some plaintiffs).[12]

---

[11]    Once again engaging in disingenuous cutting and pasting, Apple claims that Professor Noll said that the tie might have reduced the price of iTunes digital downloads.  Def's Mem. at 18.  Apple left out the testimony in which Professor Noll explained that such a reduction was unlikely here, and why it was unlikely.  Ex. 1, Noll Depo. at 141:3-145:1.

[12]    Apple's cases are distinguishable.  In each, the defendants had presented evidence that significant portions of the class had benefited from the anticompetitive conduct.  In *Valley Drug Co. v. Geneva Pharms. Inc.*, 350 F.3d 1181 (11th Cir. 2003), the Eleventh Circuit concluded that regional wholesalers could not adequately represent national wholesalers who benefited from the supracompetitive price caused by defendants' market allocation agreement.  Unlike the regional distributors, the national wholesalers, whose claims comprised the bulk of damages, priced on a cost-plus basis, so would have benefited from selling larger quantities of the higher-priced drug.  Similarly, in *Freeland*, it was undisputed that defendants subsidized the purchase price of the tying product.  *Freeland*, 238 F.R.D. at 155 n.20.

3.    **Apple's Proposed "Damages Methodology" is Not Supported
by Expert Testimony and is Not Required by Law**

Ignoring more than four decades of case law, and unburdened by any expert testimony, Apple reaches back to 1964 to find a case supporting its theory of damages. Apple claims that the "typical" method for determining damages is to "examine the difference between the price of the competing player the consumer would have purchased and the price paid for the iPod," an inquiry that supposedly creates individual issues. Def's. Mem. at 19-20.

Notably, Apple could find no reputable economist to support its damages theory (or even criticize Plaintiffs' expert). Instead, Apple's proposed methodology for proving antitrust impact springs from its lawyer's say-so, with a single citation to an inapposite case.[13] As Plaintiffs' expert, Professor Noll, testified, Apple's theory is not a "typical" method for proving damages in a tying case or any other antitrust case. Instead, experts rely on the three methodologies Professor Noll described in his report for estimating a competitive benchmark price (before-and-after, yardstick and mark-up). Noll Decl. at 52-29; *In re Static Random Access (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592, at *6 (N.D. Cal. Sept. 29, 2008) (holding that Professor Noll's use of before/after yardstick, and make-up methodologies was sufficient to prove damages on a class-wide basis); *DRAM*, 2006 WL 1530166, at*10 (certifying class where Professor Noll presented before/after and yardstick methodologies of proving damages on class-wide basis); *Image Tech. Servs. v. Eastman Kodak*, 125 F.3d 1195, 1221-22 (9th Cir. 1997) (upholding damages for tying claim based on yardstick methodology).

Moreover, Apple's method misstates the basic theory of Plaintiffs' claims, which Plaintiffs' theory is that, as a result of thwarting competition through, *inter alia*, the tie, Apple was able to overcharge for all of its own iPods. Complt., ¶¶22, 72. Thus, all class members – even those that

---

[13]    Nothing in *Lessig v. Tidewater Oil Co.*, 327 F.2d 459, 471-72 (9th Cir. 1964), suggests that the Ninth Circuit viewed the methodology proposed by Apple as required or even desirable in tying cases. It just happened that the plaintiff in that case introduced evidence that the tied product cost more than competitive brands, and there was no evidence in the record to the contrary. *Id.* Thus, the court held that this was "'relevant data' from which the jury could have made 'a just and reasonable estimate of damage.'" *Id.* at 472.

1    would have purchased an iPod absent the tie – overpaid for their purchase.  *See In re Visa*

2    *Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136-37 (2d Cir. 2001) (explaining that plaintiffs'

3    theory of class-wide injury resulted from every single class member paying the overcharge and did

4    not require analysis of any of the individualized questions).   Additionally, Plaintiffs are not

5    "ignoring or forfeiting claims" of certain class members.  Def's. Mem. at 21.  If Plaintiffs are correct

6    – that an appreciable number of iTunes purchasers were coerced into buying iPods when they would

7    have preferred a competing product – then ***all*** class members suffered injury because the tie

8    increased Apple's market power in the tied product market and enabled it to increase prices of ***all***

9    iPods to supracompetitive levels.  Plaintiffs have presented plausible methodologies of proving such

10   impact as to all class members using common proof.[14]  *See* Noll Decl. at 47-49, 52-59.

11   **B.    Plaintiffs' Monopolization Claims Go Essentially Unopposed**

12   Apple has not presented ***any*** opposition to the certification of Plaintiffs' independent actual

13   and attempted monopolization counts.  *See* Complt., ¶¶85-114.  Unlike tying, a monopolization

14   claim does not require a showing of coercion, which is the primary focus of Apple's attack.  Rather,

15   to prove a Section 2 monopolization claim, the plaintiff need prove only that the defendant willfully

16   acquired or maintained monopoly power through exclusionary conduct rather than superior skill,

17   enterprise, or acumen, and has used that unlawfully attained monopoly power to injure the plaintiff

18   in his business or property.  *See Live Concert*, 247 F.R.D. at 122.  These elements are particularly

19   well-suited for classwide adjudication because issues like market definition, market power, and

20   whether defendant's conduct was exclusionary are matters that do not vary based on the individual

21   circumstances of Plaintiffs or members of the class.  *Id.* at 155; *Visa Check/Mastermoney*, 192

22   F.R.D. at 1345.

23   Here, Plaintiffs have offered plausible methods for determining the defined antitrust market

24   for portable digital media players on a class wide basis.   Complt., ¶ 3; Noll Decl. at 25-29.

25

---

26   [14]     Additionally, the fact that Plaintiffs' class includes all iPod models does not pose individual
27   issues (Def's. Mem. at 21) because the necessary information is maintained by Apple or by trade
     organizations and does not depend on individual consumers.  Noll Decl. at 31.

28

1    Determination of the relevant market will involve analysis of the cross-elasticity of demand or

2    indirect evidence of product substitutes, such as product functionality, consumer and industry

3    beliefs, and price correlation, all of which uniformly apply across the class.  Noll Decl. at 20, 25-27;

4    *Live Concert*, 247 F.R.D. at 122-24.  Likewise, whether the exclusionary conduct – preventing

5    purchases of iTunes audio and video downloads purchasers from playing those downloads directly

6    on a competing portable digital media player – violates Section 2 is a common issue.  Noll Decl. at

7    37-47.

8         Lastly, because direct purchaser prices for iPods are not individually negotiated, proof that

9    the direct sale price was supracompetitive would be common to the entire class.  Noll Decl. at 35-47.

10   One court has explained this straightforward principle by noting that, "[i]t is undisputed that ***all*** of

11   the class representatives purchased IWMS from Southern Bell prior to the present date.  Thus, ***all*** of

12   the class representatives paid monopolistic prices for IWMS at some time and therefore suffered

13   exactly the same type of injury as the absent class members."  *Davis v. S. Bell Tel. & Tel. Co.*, No.

14   89-2839-Civ-NESBITT, 1993 WL 593999, at *6 (S.D. Fla. Dec. 23, 1993) (emphasis in original).

15   That, of course, is the precise allegation made here.

16        Because all the elements of Plaintiffs' monopolization claims are subject to common proof,

17   and because Apple has not offered ***any*** substantive argument in opposition to the motion to certify

18   these freestanding counts, Plaintiffs' motion for class certification should also be granted with

19   respect to their Section 2 monopoly claims.

20   **C.    Plaintiffs' 23 (b)(2) Injunctive Relief Claim Warrants Certification**

21        Similarly, Plaintiffs have set forth a certifiable Rule 23(b)(2) injunctive relief claim, as

22   discussed in their opening brief.  Plfts' Mem. at 9-10.  Plaintiffs' request for both monetary and

23   injunctive relief does not defeat certification of a Rule 23(b)(2) class, as Apple suggests.  The Ninth

24   Circuit has held that "'class actions certified under Rule 23(b)(2) are not limited to actions

25   requesting only injunctive or declaratory relief, but may include cases that also seek monetary

26   damages.'"  *Linney v. Cellular Alaska P'ship.*, 151 F.3d 1234, 1241 (9th Cir. 1998) (quoting *Probe*

27   *v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986).

28

1   **III.    THE CLASS IS PROPERLY DEFINED TO INCLUDE ALL DIRECT**
    **PURCHASERS, WHO ARE ADEQUATELY REPRESENTED BY THE**
2   **PROPOSED CLASS REPRESENTATIVES**

3          Plaintiffs' proposed class quite appropriately includes all those who purchased iPods directly

4   from Apple during the proposed class period,[15] whether or not they intended to resell the iPods.  *See,*

5   *e.g.*, *DRAM*, 2006 WL 1530166; *In re Bulk [Extruded] Graphite Prods. Litig.*, No. 02-6030 (WHW),

6   2006 WL 891362 (D.N.J. Apr. 4, 2006).  The elements of the resellers' Section 1 and Section 2

7   **claims** are no different than the claims of all other class members.  *Id.*, 2006 WL 891362, at *86.

8          Apple nevertheless argues – without any specific case support – that class certification must

9   be denied because the proposed class includes major retailers who, because of their sales volume,

10  "do[] not need to rely on anyone else to pursue [their claims]."  Def's. Mem. at 3.  "Need" is not, of

11  course, the relevant test for inclusion within a plaintiff antitrust class; like any other member of a

12  Rule 23(b)(3) class, resellers can, regardless of size, make their own decision whether to join in the

13  class proceeding.  Distributors/wholesalers have happily participated in settlement classes with end-

14  user direct purchasers.  *See, e.g.*, *In re Relafen Antitrust Litig.*, 360 F. Supp. 2d 166 (D. Mass. 2005).

15         Nor is variation in quantity purchased or the price paid to Apple a reason to exclude resellers

16  from the proposed class.  Def's. Mem. at 22; *but see DRAM*, 2006 WL 1530166, at *4 (typicality

17  met even where plaintiffs purchased in different quantities or at different prices); *Graphite*, 2006 WL

18  891362, at *15; *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293, 301 (D.D.C.

19  2007).

20         Likewise irrelevant are differences in costs and profit margins among resellers, especially

21  given Apple's lack of any "pass-on" or "otherwise benefitted" defense against iPod purchasers who

22  happen to be resellers.  *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489, 88

23  S. Ct. 2224 (1968) (disallowing "pass on" defense; "[a]s long as the seller continues to charge the

24

---

25  [15]        Contrary to Apple's contention (Def's. Mem. at 11) ("[t]he class is so broad that it includes
26  customers who bought iPods in the first months after the iTunes store was launched, when Apple
    clearly had no market power under any conceivable theory"), the class period proposed by Plaintiffs
27  is in fact co-extensive with Professor Noll's determination of Apple's acquisition of market power.
    *See* Ex. 1, Noll Depo. at 152:13-24.

28

1    illegal price, he takes from the buyer more than the law allows."); *see, e.g.*, *Teva Pharms. USA, Inc.*

2    *v. Abbott Labs.*, 252 F.R.D. 213, 226-27 (D. Del. 2008) (rejecting as "irrelevant" adequacy challenge

3    premised on variation in resellers' size and pricing strategies; "[D]irect purchasers may recover the

4    amount of their overcharges irrespective of what happens after the overcharge is paid.") (citing

5    *Hanover Shoe*); *In re Relafen*, 360 F. Supp. 2d at 187-89 (*Hanover Shoe* precludes contention that

6    class certification should be denied because allegedly overcharged direct purchasers "otherwise

7    benefitted" from the challenged misconduct).

8         Here, Professor Noll's analysis, based upon the exemplar data supplied by Apple, amply

9    satisfies the need to demonstrate plausible economic methodologies with which to calculate antitrust

10   impact and damages on a common basis. *Cf. DRAM*, 2006 WL 1530166, at *8-*9 (accepting

11   Professor Noll's analysis sufficient for class certification purposes, despite controverting expert

12   testimony). Apple's emphasis on differences in calculating the amount of damages essentially

13   amounts to nothing more than its counsel's demand for refinements to Professor Noll's expert

14   damages analysis. Ex. 1, Noll Depo. at 239:15-241:17; *but see* Def's. Mem. at 23 (suggesting that

15   Noll "had not looked into" resellers situation). Indeed, Apple has not even mounted a "battle of the

16   experts" over Professor Noll's ability to conduct a comprehensive damages determination that would

17   account for any material differences between those class members who bought the iPod for resale

18   and those who did not. *Cf. Graphite*, 2006 WL 891362, at *10-*14 (unrebutted expert report

19   sufficient demonstration of common methodology at class certification stage).

20        Apple's contention that end-user class representatives are therefore somehow atypical and

21   cannot adequately represent resellers in a federal antitrust case is thus baseless. Def's. Mem. at 23-

22   24 (citing only *Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 475 (N.D. Cal. 1978) (certifying

23   employment discrimination claims under Rule 23(b)(2))); *but see DRAM*, 2006 WL 1530166, at *5-

24   *6 (rejecting similar attacks on typicality and adequacy); *Graphite*, 2006 WL 891362, at *6-*8

25   (same). As to typicality, Apple has identified no unique defense suggesting that the interests of the

26   proposed class representatives are not "reasonably co-extensive" with those of other direct

27   purchasers, whether they be end-users or not. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th

28   Cir. 1998) ("Under the rule's permissive standards, representative claims are 'typical' if they are

1 reasonably co-extensive with those of absent class members; they need not be substantially
2 identical."). Nor has Apple identified any conflict between resellers and end-users, let alone one that
3 goes to the "very heart" of the common representation so as to undermine adequacy. *Blackie v.*
4 *Barrack*, 524 F.2d 891, 909 (9th Cir. 1975) ("courts have generally declined to consider conflicts,
5 particularly as they regard damages, sufficient to defeat class action status at the outset unless the
6 conflict is apparent, imminent, and on an issue at the very heart of the suit"); *see, e.g.*, *Graphite*,
7 2006 WL 891362, at *6-*8 (rejecting similar attack on adequacy).

8        In any event, even if Apple's misguided suggestion that resellers are "not in the same
9 position as individual end-user purchasers" were valid (Def's. Mem. at 22), the remedy would be to
10 narrow the direct purchaser class by excluding, allowing opt-out by, or establishing a subclass for the
11 relatively few resellers, not to deny the class relief to the millions of individual end-users who
12 purchased their iPods directly from Apple.

**IV.    CONCLUSION**

14        For the reasons stated above and in Plaintiffs' opening brief, the requested class should be
15 certified pursuant to Fed. R. Civ. P. 23(b)(2) and (3).

16 DATED:  November 17, 2008                    COUGHLIN STOIA GELLER
                                                  RUDMAN & ROBBINS LLP
17                                                BONNY E. SWEENEY

18

19                                                       s/ BONNY E. SWEENEY
                                                   BONNY E. SWEENEY
20
                                                  655 West Broadway, Suite 1900
21                                                San Diego, CA  92101
                                                  Telephone:  619/231-1058
22                                                619/231-7423 (fax)

23                                                THE KATRIEL LAW FIRM
                                                  ROY A. KATRIEL
24                                                1101 30th Street, N.W., Suite 500
                                                  Washington, DC  20007
25                                                Telephone:  202/625-4342
                                                  202/330-5593 (fax)
26
                                                  Co-Lead Counsel for Plaintiffs
27
                                                  BONNETT, FAIRBOURN, FRIEDMAN
28                                                  & BALINT, P.C.

1    ANDREW S. FRIEDMAN
     FRANCIS J. BALINT, JR.
2    ELAINE A. RYAN
     TODD D. CARPENTER
3    2901 N. Central Avenue, Suite 1000
     Phoenix, AZ  85012
4    Telephone:  602/274-1100
     602/274-1199 (fax)
5
     BRAUN LAW GROUP, P.C.
6    MICHAEL D. BRAUN
     12304 Santa Monica Blvd., Suite 109
7    Los Angeles, CA  90025
     Telephone:  310/442-7755
8    310/442-7756 (fax)
9    MURRAY, FRANK & SAILER LLP
     BRIAN P. MURRAY
10   JACQUELINE SAILER
     275 Madison Avenue, Suite 801
11   New York, NY  10016
     Telephone:  212/682-1818
12   212/682-1892 (fax)
13   GLANCY BINKOW & GOLDBERG LLP
     MICHAEL GOLDBERG
14   1801 Avenue of the Stars, Suite 311
     Los Angeles, CA  90067
15   Telephone:  310/201-9150
     310/201-9160 (fax)
16
     Additional Counsel for Plaintiffs
17   S:\CasesSD\Apple Tying\BRF00055667_Class Cert.doc
18
19
20
21
22
23
24
25
26
27
28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS COUNSEL - C-05-00037-JW(RS)                                    - 16 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 17, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 17, 2008.

<u>s/ BONNY E. SWEENEY</u>
BONNY E. SWEENEY

COUGHLIN STOIA GELLER
        RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:Bonnys@csgrr.com

# Mailing Information for a Case 5:05-cv-00037-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Michael David Braun**
  service@braunlawgroup.com

- **Andrew S. Friedman**
  rcreech@bffb.com,afriedman@bffb.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com

- **Roy A. Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com,ewallace@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,ybennett@jonesday.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Adam Richard Sand , Esq**
  invalidaddress@invalidaddress.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **John J. Stoia , Jr**
  jstoia@csgrr.com

- **Tracy Strong**
  tstrong@jonesday.com,dharmon@jonesday.com

- **Bonny E. Sweeney**
  bonnys@csgrr.com,E_file_sd@csgrr.com,christinas@csgrr.com

- **Helen I. Zeldes**
  helenz@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Todd David Carpenter**
Bonnett, Fairbourn, Friedman, & Balint
2901 N. Central Avenue
Suite 1000
Phoenix, AZ 85012

**Elaine A. Ryan**
Bonnett Fairbourn Friedman & Balint, P.C
2901 N. Central Avenue
Suite 1000
Phoenix, AZ 85012