1                IN THE UNITED STATES DISTRICT COURT

2             FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                        SAN JOSE DIVISION

4

5                             )  C-05-0037-JW
                              )
6       "THE APPLE IPOD ITUNES  )  DECEMBER 16, 2008
        ANTI-TRUST LITIGATION."  )
7                             )  PAGES 1 - 54
                              )
8       _____  )

9

10

11             THE PROCEEDINGS WERE HELD BEFORE

12          THE HONORABLE UNITED STATES DISTRICT

13                     JUDGE JAMES WARE

14    A P P E A R A N C E S:

15

16    FOR THE PLAINTIFFS: COUGHLIN, STOIA, GELLER, RUDMAN &
                          ROBBINS
17                        BY:  BONNY E. SWEENEY
                          655 W. BROADWAY
18                        SAN DIEGO, CALIFORNIA 92101

19                        BRAUN LAW GROUP, P.C.
                          BY:  MICHAEL D. BRAUN
20                        12304 SANTA MONICA BOULEVARD
                          SUITE 109
21                        LOS ANGELES, CALIFORNIA 90025

22

           (APPEARANCES CONTINUED ON THE NEXT PAGE.)
23

24    OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
                              CERTIFICATE NUMBER 8074
25

                                              1

Dockets.Justia.c

```
1

2    A P P E A R A N C E S:   (CONT'D)

3

     FOR THE PLAINTIFFS:      BONNETT, FAIRBOURN,
4                             FRIEDMAN & BALINT
                              BY:  FRANCIS J. BALINT, JR.
5                             2901 N. CENTRAL AVENUE
                              SUITE 1000
6                             PHOENIX, ARIZONA 85012

7

     FOR THE DEFENDANTS:      JONES DAY
8                             BY:  ROBERT A. MITTELSTAEDT
                                   CARLYN CLAUSE
9                             555 CALIFORNIA STREET
                              26TH FLOOR
10                            SAN FRANCISCO, CALIFORNIA
                              94104

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                    2
```

SAN JOSE, CALIFORNIA                    DECEMBER 16, 2008

2

3                        P R O C E E D I N G S

4              (WHEREUPON, COURT CONVENED AND THE

5      FOLLOWING PROCEEDINGS WERE HELD:)

6              THE CLERK:  CALLING CASE NUMBER 05-0037,

7      THE APPLE IPOD ITUNES ANTITRUST LITIGATION.

8              ON FOR PLAINTIFFS' MOTION FOR CLASS

9      CERTIFICATION.

10              TWENTY MINUTES EACH SIDE.

11              COUNSEL, PLEASE COME FORWARD AND STATE YOUR

12      APPEARANCES.

13              MS. SWEENEY:  GOOD MORNING.  BONNY

14      SWEENEY FOR THE DIRECT PURCHASER PLAINTIFFS.

15              WITH ME IS PAULA ROACH ALSO OF MY OFFICE,

16      FRANK BALINT, AND MICHAEL BRAUN.

17              MR. MITTELSTAEDT:  GOOD MORNING, YOUR

18      HONOR.  BOB MITTELSTAEDT FOR APPLE AND WITH ME IS

19      CARLYN CLAUSE FOR APPLE.

20              THE COURT:  VERY WELL.  MS. SWEENEY, YOUR

21      MOTION.

22              MS. SWEENEY:  THANK YOU, YOUR HONOR.  THE

23      DIRECT PURCHASER PLAINTIFFS ROSEN, TUCKER, AND

24      CHAROENSAK SEEK CLARIFICATION OF A CLASS OF ALL

25      PEOPLE IN THE UNITED STATES WHO PURCHASED IPODS

1  DIRECTLY FROM APPLE BETWEEN APRIL 2003 AND THE

2  PRESENT.

3          IN THIS CASE, AS YOUR HONOR IS AWARE

4  BECAUSE THE COURT HAS RULED ALREADY ON TWO MOTIONS

5  TO DISMISS, PLAINTIFFS SEEK DAMAGES AND INJUNCTIVE

6  RELIEF FOR APPLE'S UNLAWFUL TYING CONDUCT AND ITS

7  UNLAWFUL MONOPOLIZATION.

8          PLAINTIFFS CLAIM THAT APPLE UNLAWFULLY

9  TIED THE IPOD TO THE DIGITAL DOWNLOADS THAT ARE

10  PURCHASED THROUGH THE ITUNES STORE BOTH VIDEO AND

11  MUSIC.

12          PLAINTIFFS ALSO CLAIM THAT APPLE

13  UNLAWFULLY MONOPOLIZED OR ATTEMPTED TO MONOPOLIZE

14  ALL THREE MARKETS; THAT IS, THE DIGITAL PORTABLE

15  PLAYER MARKET, THE DIGITAL VIDEO DOWNLOAD MARKET,

16  AND THE DIGITAL MUSIC DOWNLOAD MARKET.

17          IN OUR PAPERS, YOUR HONOR, PLAINTIFFS

18  SHOWED THAT ALL OF THE REQUIREMENTS OF RULE 23(A)

19  ARE SATISFIED AND IN ADDITION THAT A CLASS IS

20  PROPERLY CERTIFIED UNDER BOTH RULES 23(B)(2) FOR

21  INJUNCTIVE RELIEF AND 23(B)(3) FOR DAMAGES.

22          WE ALSO SUBMITTED AN EXPERT REPORT FROM

23  PROFESSOR NOLL OF STANFORD UNIVERSITY.  PROFESSOR

24  NOLL IS AN ECONOMIST WHO HAS BEEN VERY ACTIVE IN

25  THE FIELD FOR MORE THAN 40 YEARS.  HE'S PUBLISHED

4

MORE THAN 13 BOOKS, MORE THAN 300 ARTICLES, AND HE
SUBMITTED AN OPINION IN WHICH HE CONCLUDED THAT
USING THE KINDS OF TOOLS THAT THE ECONOMISTS USE,
PLAINTIFFS SHOULD BE ABLE TO PROVE USING COMMON
PROOF BOTH COMMON IMPACT THAT EACH MEMBER OF THE
PROPOSED CLASS SUFFERED ANTITRUST DAMAGES, AND ALSO
PROFESSOR NOLL PROPOUNDED THREE ALTERNATIVE DAMAGES
METHODOLOGIES THAT CAN BE USED TO SHOW DAMAGES TO
THE CLASS.

ALL THREE OF THESE METHODOLOGIES HAVE
BEEN ADOPTED BY COURTS IN NUMEROUS OTHER ANTITRUST
CASES, INCLUDING MOST RECENTLY JUDGE HAMILTON AND
JUDGE WILKINS BOTH OF THE NORTHERN DISTRICT
CERTIFIED THE DRAM CLASS AND THE SRAM CLASS IN
RELIANCE ON EXPERT NOLL'S EXPERT REPORT.

NOTABLY APPLE DID NOT SUBMIT ANY EXPERT
TESTIMONY TO CHALLENGE PROFESSOR NOLL'S
CONCLUSIONS.

THERE IS JUST ONE UNCHALLENGED EXPERT
REPORT IN THIS CASE, YOUR HONOR, AND IT IS
PLAINTIFFS' EXPERT PROFESSOR NOLL.

IN OUR OPENING BRIEF AND IN OUR REPLY
BRIEF, PLAINTIFFS DEMONSTRATED THAT EACH ELEMENT OF
THEIR CLAIMS, THEIR ANTITRUST CLAIMS, CAN BE PROVEN
WITH COMMON PROOF.

5

AS TO THE TYING CLAIM, THE ELEMENTS ARE
FAIRLY STRAIGHTFORWARD.  YOU HAVE TO PROVE THAT
THEY'RE SEPARATE PRODUCTS.

APPLE HAS CONCEDED THAT THEY'RE SEPARATE
PRODUCTS SO THERE'S NO QUESTION THAT THAT PROOF
WILL BE COMMON.

IN ADDITION, PLAINTIFFS HAVE TO SHOW THAT
APPLE HAS SOME MEASURE, NOT NECESSARILY MONOPOLY
POWER, BUT SOME MEASURE IN THE TYING MARKET.  THAT
IS THE TYING PRODUCT MARKET IS THE MARKET FOR
DIGITAL DOWNLOADS.

AND THAT, AS PROFESSOR NOLL OPINED IN HIS
MANY COURTS HAVE HELD, THE QUESTION OF THE
APPROPRIATE DEFINITION OF THE MARKET AND WHETHER
THE DEFENDANT HAS MARKET POWER, THOSE ISSUES ARE
BOTH SUSCEPTIBLE OF ESTABLISHING THROUGH COMMON
PROOF, NOT THROUGH INDIVIDUAL PROOF.

PLAINTIFFS ALSO HAVE TO SHOW THAT APPLE'S
CONDUCT HAD NOT INSUBSTANTIAL EFFECT ON COMMERCE IN
THE TIED PRODUCT MARKET.

NOW, THIS IS A VERY DE MINIMUS TEST AND
WE EXPECT THAT APPLE WILL CONCEDE THAT POINT.

THE ONLY APPLE ARGUMENT IN OPPOSITION TO
PLAINTIFFS' MOTION IS COERCION.  THIS IS THE ONLY
ARGUMENT THAT APPLE MAKES TO ARGUE THAT THE CLASS

6

SHOULD NOT BE CERTIFIED.

AND THE PROBLEM WITH APPLE'S COERCION
ARGUMENT, YOUR HONOR, IS THAT IT IS ONE THAT HAS
ALREADY BEEN REJECTED BY THIS COURT TWICE IN
DENYING APPLE'S TWO MOTIONS TO DISMISS.

IT HAS ALSO BEEN REJECTED BY THE NINTH
CIRCUIT.

APPLE ARGUES THAT EVEN THOUGH THE TIE,
THAT IS THE RESTRICTION ON ITUNES THAT PREVENTS
DIGITAL DOWNLOADS, BOTH VIDEO AND MUSIC, FROM
PLAYING DIRECTLY ON ANY PORTABLE PLAYER OTHER THAN
THE IPOD, EVEN THOUGH THAT RESTRICTION IS PRESENT
IN EACH AND EVERY DOWNLOAD, AND EACH AND EVERY
IPOD, THAT YOU HAVE TO TAKE INDIVIDUAL TESTIMONY TO
DETERMINE WHETHER ANY INDIVIDUAL MEMBER OF THE
CLASS WOULD HAVE PURCHASED THE TIED PRODUCT BUT FOR
THE TIE.

BUT THAT'S NOT WHAT THE LAW REQUIRES.

AS YOUR HONOR RECOGNIZED IN DENYING
APPLE'S TWO MOTIONS TO DISMISS, BOTH IN THE
SLATTERY CASE AND IN THE TUCKER CASE, IN THE NINTH
CIRCUIT THE COURT IS NOT REQUIRED TO OR THE
PLAINTIFF IS NOT REQUIRED TO DEMONSTRATE ACTUAL
COERCION.

RATHER, THE PLAINTIFF IS REQUIRED TO

DEMONSTRATE MARKET LEVEL COERCION AND THE NINTH
CIRCUIT HELD IN THE CASE OF MOORE VERSUS JASON
MATTHEWS THAT COERCION MAY BE IMPLIED FROM A
SHOWING THAT AN APPRECIABLE NUMBER OF BUYERS HAVE
ACCEPTED BURDENSOME TERMS.  AN APPRECIABLE NUMBER
OF BUYERS.

SO PLAINTIFF HAS TO SHOW THAT AN
APPRECIABLE NUMBER OF BUYERS OF THE TIED PRODUCT
WOULD NOT HAVE PURCHASED THAT PRODUCT BUT FOR THE
TIE.

PLAINTIFF DOESN'T HAVE TO SHOW THAT EACH
AND EVERY MEMBER OF THE CLASS WOULD HAVE MADE AN
IDENTICAL DECISION.

AS PROFESSOR NOLL OPINED IN HIS REPORT
AND TESTIFIED AT HIS DISPOSITION, WHAT MATTERS IS
THAT THERE IS A SUFFICIENT NUMBER THAT IT ENABLED
APPLE TO INCREASE ITS MARKET POWER AND THEREBY
INCREASE THE PRICE OF THE TIED PRODUCT THAT IS THE
IPOD.

NOW, IN THE MOORE CASE, WHICH I
MENTIONED, AND THIS IS 550 F.2D 1207, AND THAT CASE
INVOLVED AN ALLEGED TIE BETWEEN THE SALE OF
CEMETERY LOTS AND MEMORIAL MARKERS.

NOW, THE FACTS OF THAT CASE WERE THAT THE
DEFENDANT OWNED EIGHT OF THESE CEMETERIES.  ONLY

1   FIVE OF THOSE CEMETERIES ACTUALLY REQUIRED THAT A

2   PERSON WHO WANTED TO PURCHASE A CEMETERY LOT ALSO

3   PURCHASED A MARKER.

4           THE NINTH CIRCUIT HELD THAT THAT WAS

5   SUFFICIENT.  AND THE NINTH CIRCUIT SAID THAT

6   RELYING UPON THE LEADING SUPREME COURT TYING CASES,

7   THE COURT SAID THE NINTH CIRCUIT, OUR READING OF

8   THE SUPREME COURT'S OPINIONS SUPPORTS THE VIEW THAT

9   COERCION MAY BE IMPLIED FROM A SHOWING THAT AN

10  APPRECIABLE NUMBER OF BUYERS HAVE ACCEPTED

11  BURDENSOME TERMS SUCH AS THE TYING PRODUCT MARKET.

12          COERCION OCCURS WHEN THE BUYER MUST

13  ACCEPT THE TIED ITEM AND FOREGO POSSIBLY DESIRABLE

14  SUBSTITUTES.

15          WE ALSO CITED A NUMBER OF OTHER CASES

16  SUPPORTING THE POINT MADE BY THE NINTH CIRCUIT IN

17  MOORE.  FOR EXAMPLE, THE BAFUS CASE, WHICH WE CITE

18  IN OUR PAPERS, YOUR HONOR, CERTIFIED A CLASS ON THE

19  BASIS THAT THERE WAS AN APPRECIABLE NUMBER OF

20  BUYERS WHO WERE INFLUENCED BY THE TIE RATHER THAN

21  AN ABSOLUTE REQUIREMENT THAT EACH AND EVERY MEMBER

22  OF THE PROPOSED CLASS WAS BOUND BY THE TIE.

23          APPLE ALSO MAKES THE ARGUMENT THAT THE

24  TYING CLAIM CAN'T BE CERTIFIED BECAUSE OF WHAT IT

25  REFERS TO AS THE PACKAGE THEORY OF DAMAGES.

9

APPLE RELIES ON AN ELEVENTH CIRCUIT CASE
WHICH CITES THE NINTH CIRCUIT'S SIEGLE CASE FOR THE
PROPOSITION THAT, WELL, IN SOME CASES A TIE
ACTUALLY REDUCES -- HAS THE EFFECT IT MAY INCREASE
THE PRICE OF THE TIED PRODUCT, BUT IT HAS THE
EFFECT OF REDUCING THE PRICE OF THE TYING PRODUCT.

IN OTHER WORDS, APPLE SAYS HERE YOU HAVE
TO DETERMINE WHETHER THE ITUNES VIDEO AND DIGITAL
DOWNLOADS WAS DECREASED AS A RESULT OF THE TIE.

WELL, THAT ISN'T REALLY A CORRECT
STATEMENT OF THE LAW IN THE NINTH CIRCUIT.

THE SIEGLE CASE INVOLVED THE CLASS. THE
NINTH CIRCUIT DID NOT OVERTURN THE CLASS DECISION
NOR DID THE NINTH CIRCUIT OVERTURN THE LIABILITY
JUDGMENT IN FAVOR OF THE PLAINTIFFS. RATHER, THE
NINTH CIRCUIT SAID THAT YOU HAVE TO TAKE THIS INTO
ACCOUNT IN CALCULATING THE AMOUNT OF DAMAGES.

SO IT IS MERELY A DAMAGES QUESTION AND AS
BLACKIE AND MANY OTHER NINTH CIRCUIT AND MANY OTHER
NORTHERN CALIFORNIA CASES HAVE HELD, EVEN IF THERE
ARE DAMAGES ISSUES, THAT DOES NOT PRECLUDE
CERTIFICATION OF A CLASS.

NOW, MOREOVER, THE SIEGLE CASE WAS A
LITTLE UNUSUAL BECAUSE THERE THERE WAS NO PRICE FOR
THE ALLEGED TYING PRODUCT. THE SO-CALLED TYING

10

PRODUCT WAS THE USE OF THE TRADEMARK NAME CHICKEN
DELIGHT WHICH APPARENTLY HAD VALUE IN THE MARKET.

HERE, OF COURSE, PLAINTIFFS AND MEMBERS
OF THE CLASS PAID MONEY FOR THEIR ITUNES DIGITAL
VIDEO AND MUSIC DOWNLOADS.

WE ALSO HAVE A CLAIM FOR MONOPOLIZATION
BOTH FOR ATTEMPTED MONOPOLIZATION AND MONOPOLY
MAINTENANCE OR CREATION.

NOW, APPLE DOESN'T REALLY ADDRESS THIS
ARGUMENT AT ALL IN THEIR PAPERS. APPLE MERELY SAYS
THAT IT'S BASED ON OUR TYING THEORY, AND,
THEREFORE, IT FAILS FOR THE SAME REASONS.

WELL, IN FACT, PLAINTIFFS HAVE ALLEGED A
MONOPOLIZATION CLAIM THAT DON'T RELY SOLELY ON
THEIR TYING CLAIMS.

THERE ARE SEVERAL DIFFERENT ASPECTS OF
APPLE'S CONDUCT THAT PLAINTIFFS CONTEND ARE AND
WERE ANTICOMPETITIVE.

AND AS WE EXPLAINED IN OUR PAPERS, ALL OF
THE ELEMENTS OF THE PLAINTIFFS' MONOPOLIZATION AND
ATTEMPTED MONOPOLIZATION CLAIMS WILL BE PROVEN
RELYING ON EVIDENCE THAT IS COMMON TO THE CLASS
BECAUSE IT IS PRINCIPALLY, IF NOT ENTIRELY,
EVIDENCE THAT IS IN THE HANDS OF APPLE.

FIRST THE PLAINTIFF HAS TO SHOW THAT

APPLE HAS MARKET POWER IN THE PROPERLY DEFINED
MARKET.  AND AGAIN WE ALLEGE THREE MONOPOLY
MARKETS.

AND THEN THE PLAINTIFFS HAVE TO SHOW THAT
APPLE ACQUIRED OR MAINTAINED THAT MONOPOLY THROUGH
WILLFUL OR ANTICOMPETITIVE CONDUCT.

AND THE ANTICOMPETITIVE CONDUCT THAT IS
OUTLINED IN OUR PAPERS AND IN THE AMENDED COMPLAINT
IS, ONE, THE ENCRYPTION THAT WE COMPLAIN ABOUT,
NAMELY, THAT APPLE ENCRYPTS THE DIGITAL DOWNLOADS
WITH IT'S OWN PROPRIETARY DRM, THEREBY PREVENTING
DIRECT PLAYBACK ON ANY PORTABLE PLAYER OTHER THAN
THE IPOD.

IN ADDITION, APPLE HAS TAKEN STEPS
THROUGHOUT THE CLASS PERIOD TO PRECLUDE ENTRY BY
WOULD BE COMPETITORS.  WHEN A COMPETITOR FIGURED
OUT HOW TO PLAY ITUNES MUSIC ON ITS COMPETING
PORTABLE PLAYER, APPLE PROMPTLY ISSUED A SOFTWARE
FIX THAT PREVENTED THAT.

APPLE COULD HAVE LICENSED ITS PROPRIETARY
DRM ENCRYPTION TO OTHERS.  IT COULD HAVE PURCHASED
A LICENSE TO OTHERS FOR ANOTHER ENCRYPTION
METHODOLOGY.  IT COULD HAVE USED A NONPROPRIETARY
ENCRYPTION.  THERE ARE ALL SORTS OF WAYS IN WHICH
APPLE'S CONDUCT WAS DESIGNED TO -- INTENDED TO AND

HAD THE EFFECT OF PRECLUDING ENTRY INTO THE MARKET
AND MAINTAINING ITS OWN MONOPOLY IN ALL THREE
MARKETS.

THE COURT:  NOW, HAVE I PREVIOUSLY RULED
IN ANY WAY THAT THEIR USE OF THEIR OWN DRM IS
WILLFUL CONDUCT THAT WOULD SUPPORT A MONOPOLY
CLAIM?

MS. SWEENEY:  YOUR HONOR IN THE RULINGS
ON THE MOTION TO DISMISS RECOGNIZED THE PLAINTIFFS'
ALLEGED NUMEROUS WAYS IN WHICH APPLE COULD HAVE
AVOIDED THE TIE AND AVOIDED -- AND YOUR HONOR DID
NOT SPECIFICALLY RULE THAT USING ITS OWN DRM WAS
ANTICOMPETITIVE OR WILLFUL CONDUCT.

SO THAT ISSUE REMAINS TO BE RESOLVED ON A
MORE COMPLETE RECORD.

THE COURT:  THAT'S THE PART OF THE
MONOPOLY AND ATTEMPTED MONOPOLY CLAIM THAT I'M
NEEDING MORE HELP FROM THE PARTIES ON AND
UNDERSTANDING, BUT I HAVE COME TO THE TENTATIVE
CONCLUSION THAT I CAN PROCEED WITH CLASS
CERTIFICATION AND LEAVE THIS FOR LATER.  I SUPPOSE
YOU AGREE WITH THAT?

MS. SWEENEY:  YES, YOUR HONOR.

THE COURT:  ALL RIGHT.  I MIGHT GET A
DIFFERENT VIEW FROM YOUR OPPONENT, BUT IT SEEMS TO

13

ME THAT WHAT I AM BOTHERED BY BY THIS ARGUMENT THAT
IT'S WILLFUL CONDUCT IS BECAUSE IT SEEMS TO ME THAT
WHAT I UNDERSTAND ABOUT DRM SOFTWARE IS THAT IT'S
SOMETHING THAT IS DONE TO PROTECT THE COPYRIGHT
OWNER AND THAT ALL DOWNLOAD, SOFTWARE DOWNLOAD
DISTRIBUTORS HAVE TO INCORPORATE SOMETHING OF THAT
KIND IN THE SOFTWARE.

AND SO IT SEEMS TO ME THAT THE QUESTION
THAT I HAVE IN MY MIND IS WHETHER WILLFULNESS MUST
BE SOMETHING MORE THAN SIMPLY CHOOSING A PARTICULAR
DRM OVER ANOTHER.

AND WHAT I REMEMBER EARLY ON IN THE CASE
IS WHAT YOU'RE TELLING ME THAT SOMEHOW THERE WAS A
MODIFICATION OF THE DRM IN A WAY THAT WAS
ANTICOMPETITIVE, NOT THE PRESENCE OF A DRM.

AND SO I'M TRYING TO MAKE SURE THAT AS I
PROCEED I HIGHLIGHT THAT I NEED TO UNDERSTAND THAT
ISSUE BETTER.  THIS MAY NOT BE THE TIME TO DO IT,
BUT IT'S ONE OF THOSE ISSUES THAT I'M STRUGGLING
WITH.

MS. SWEENEY:  I APPRECIATE THAT, YOUR
HONOR.  AND PLAINTIFFS' VIEW IS THAT ON THIS RECORD
WE HAVEN'T YET HAD ANY MERITS DISCOVERY.  WE DON'T
HAVE A COMPLETE RECORD.  AND WE BELIEVE, OF COURSE,
THAT THE EVIDENCE WILL BEAR OUT OUR ALLEGATIONS IN

14

OUR COMPLAINT THAT THERE ARE SEVERAL DIFFERENT
TYPES OF CONDUCT THAT APPLE ENGAGED IN THAT
CONSTITUTE WILLFUL AND ANTI-COMPETITIVE CONDUCT.

DID YOUR HONOR WANT ME TO --

THE COURT:  NO, GO AHEAD.

MS. SWEENEY:  OKAY.

THE COURT:  I WAS JUST PAUSING AT THAT
POINT BECAUSE THAT IS AN AREA THAT I MARKED FOR
MYSELF TO GET A BETTER UNDERSTANDING OF AT SOME
APPROPRIATE POINT.

MS. SWEENEY:  THANK YOU, YOUR HONOR.  AS
I MENTIONED BEFORE, PLAINTIFFS' EXPERT PROFESSOR
NOLL HAS DESCRIBED THREE PROPOSED METHODOLOGIES FOR
CALCULATING DAMAGES.  ONE IS THE BEFORE AND AFTER;
THE SECOND IS THE YARDSTICK METHOD; AND THE THIRD
IS ONE THAT LOOKS AT APPLE'S PROFIT MARGINS, IT'S
MARKUPS.

ALL THREE OF THESE METHODS HAVE BEEN
RELIED UPON BY COURTS IN OTHER ANTITRUST CASES,
INCLUDING IN THE DRAM CASE WHICH WAS A PRICE FIXING
CASE; THE SRAM CASE, ANOTHER PRICE FIXING CASE.

THEY ALSO HAVE BEEN ADOPTED BY COURTS
THAT HAVE CERTIFIED CLASSES WHERE PLAINTIFFS ALLEGE
TYING CLAIMS.

FOR EXAMPLE, THE SECOND CIRCUIT IN THE

15

VISA CHECK MASTER MONEY LITIGATION CERTIFIED A
CLASS OF MERCHANTS -- EXCUSE ME -- WHO CHALLENGED
VISA AND MASTER CARD'S TYING OF THE MERCHANT'S
ACCEPTANCE OF SIGNATURE DEBIT TO THEIR ACCEPTANCE
OF CREDIT CARDS.

IN THAT CASE THE PLAINTIFFS' EXPERT
PROFFERED A METHODOLOGY THAT USED THE YARDSTICK
METHOD.  THE EXPERT COMPARED THE COST OF ACCEPTANCE
OF SIGNATURE DEBIT, WHICH IS WHERE YOU HAVE TO SIGN
TO USE THE CREDIT CARD AND PIN DEBIT AND THE COURT
HELD THAT WAS AN APPROPRIATE METHOD FOR DETERMINING
THE OVERCHARGE CAUSED BY THE TIE.

THE BAFUS CASE, WHICH WE CITE IN OUR
PAPERS, ALSO RELIES UPON A YARDSTICK METHOD AND
THAT ALSO IS A TYING CASE.

APPLE SAYS THAT THE APPROPRIATE
METHODOLOGY FOR DETERMINING DAMAGES IN A TYING CASE
IS A METHODOLOGY CITED IN THE LESSIG CASE.  THAT'S
A NINTH CIRCUIT CASE.

BUT AS WE POINT OUT IN OUR PAPERS, THE
LESSIG CASE HAS NO ANALYSIS AS TO WHAT KIND OF
DAMAGES METHODOLOGY IS APPROPRIATE IN A TYING CASE.

IT MERELY, EXCUSE ME, AFTER TRIAL --

THE COURT:  YOU CAN PAUSE AND GET SOME
WATER.

MS. SWEENEY: OH, THANK YOU, YOUR HONOR.

IN THE LESSIG CASE THE COURT HELD THAT THE INTRODUCTION BY THE PLAINTIFF OF CERTAIN EVIDENCE REGARDING THE COST OF SUBSTITUTE PRODUCTS WHICH WAS THE ONLY EVIDENCE IN THE RECORD AS TO DAMAGES WAS SUFFICIENT TO SUPPORT THE JURY'S VERDICT.

SO WE DON'T THINK THAT THE LESSIG CASE HAS ANY APPLICABILITY. AND I SEE THE LIGHT IS ON, YOUR HONOR, AND I WANT TO RESERVE SOME TIME FOR REBUTTAL SO I'LL CLOSE MY REMARKS NOW. THANK YOU VERY MUCH.

THE COURT: ALL RIGHT. COUNSEL.

MR. MITTELSTAEDT: GOOD MORNING, YOUR HONOR. IT WOULD BE UNPRECEDENTED AND CONTRARY TO PRECEDENT TO CERTIFY THE CLASSES OR THE CLASS REQUESTED BY THE PLAINTIFFS HERE.

IF ANY ONE HAD THE TYING OR MONOPOLIZATION CLAIM THAT THEY ALLEGE, THE ONLY WAY TO PROVE IT WOULD BE BY INDIVIDUAL PROOF. AND THAT'S TRUE BOTH FOR THE ALL IMPORTANT COERCION ELEMENTS AND IT'S ALSO TRUE FOR FACT OF INJURY OR IMPACT.

IN A TYING CASE THE PLAINTIFF COMES INTO COURT AND PROVES THAT IN ORDER TO BUY A HIGHLY

17

DESIRABLE PRODUCT HE WAS ALSO FORCED TO BUY A
PRODUCT THAT HE DIDN'T WANT, THE TIED AND THE TYING
PRODUCT.

SO IN TYING CASES, THE PRODUCT THAT HE'S
FORCED TO BUY IS ONE THAT HE DOESN'T WANT BY
DEFINITION.  HE'S COERCED, HE'S FORCED INTO BUYING
THE PRODUCT THAT HE DOESN'T WANT IN ORDER TO BUY
THE PRODUCT THAT HE DOES WANT.

HERE WHAT IS WRONG WITH THIS CASE RIGHT
FROM THE OUTSET IS THAT THEY'RE SAYING THAT THE
PRODUCT THAT ALL OF THEIR CLASS MEMBERS, ALL
CONSUMERS HAVE BEEN FORCED TO BUY IS AN IPOD, ONE
OF THE MOST POPULAR PRODUCTS IN THE COUNTRY.

SO THEIR BURDEN IS TO SHOW THAT SOMEBODY,
THAT EVERYBODY THAT WHOEVER IS IN THEIR CLASS WAS
FORCED TO BUY AN IPOD RATHER THAN BUYING AN IPOD
FOR ALL OF THE REASONS THAT PEOPLE BUY IPODS,
COMPLETELY UNRELATED TO THE AVAILABILITY OF MUSIC
FROM APPLE'S MUSIC STORE.

I'LL GET INTO THIS IN MORE DETAIL BUT
WHEN THEY TALK ABOUT THE MOORE CASE, THE NINTH
CIRCUIT CASE THAT SAYS THAT YOU CAN INFER COERCION
IF AN APPRECIABLE NUMBER OF PEOPLE AGREE TO AN
ONEROUS TERM, A BURDENSOME TERM.  THAT HAS NO
APPLICATION HERE, THAT EVIDENTIARY INFERENCE OR

IMPLICATION HAS NO BEARING HERE, NO APPLICATION
BECAUSE BUYING AN IPOD IS NOT A BURDENSOME TERM,
IT'S NOT ONEROUS, IT'S NOT SOMETHING THAT PEOPLE
WOULD DO ONLY IF THEY'RE FORCED TO DO IT.

SO THIS IDEA THAT THEY CAN JUST SORT OF
WAVE THEIR HANDS AND SAY EVERYBODY IS COERCED TO
BUY AN IPOD WITHOUT ANY PROOF, WITHOUT GOING PERSON
BY PERSON AND WITHOUT ASKING WHY DID YOU BUY YOUR
IPOD?  WAS IT BECAUSE YOU WERE FORCED BECAUSE YOU
HAD BOUGHT MUSIC FROM APPLE STORE, OR WAS IT FOR
ANY OTHER NUMBER OF REASONS?

SO, FIRST OF ALL, WHAT IS WRONG WITH THE
WHOLE CASE AND WHAT HAS, YOU KNOW, STRONG BEARING
ON WHETHER THEY CAN CERTIFY A CLASS IS THAT THE
PRODUCT THAT THEY HAVE SELECTED FOR THE TIED
PRODUCT IS A VERY POPULAR PRODUCT.

SECONDLY, IT'S SEPARATELY AVAILABLE AND
CAN BE USED SEPARATELY.  AND THAT'S TRUE BOTH OF
THE MUSIC AND OF THE IPOD.  EVERYBODY KNOWS AND WE
NOW HAVE IT IN THE RECORD IN THE DEPOSITIONS OF THE
PLAINTIFFS AND THEIR EXPERT, YOU CAN WALK INTO AN
APPLE STORE AND BUY AN IPOD.  NOBODY EVER ASKED YOU
ABOUT THE MUSIC.

NOBODY -- AND YOU CAN BUY MUSIC ON THE
MUSIC STORE AND NOBODY EVER SAYS WE'RE ONLY GOING

19

1    TO SELL YOU MUSIC IF YOU AGREE TO BUY AN IPOD.

2             THE OTHER WAY WE KNOW SOMETHING IS WRONG

3    WITH THIS CASE IS EACH OF THE PLAINTIFFS, ALL FIVE

4    OF THEM, TESTIFIED THAT THEY BOUGHT IPODS

5    VOLUNTARILY WITHOUT COERCION.

6             IN MOST CASES THEY HADN'T EVEN BOUGHT

7    MUSIC FROM THE MUSIC STORE YET.

8             SO WE KNOW THEY WEREN'T COERCED.  THEY

9    HAVE ADMITTED THEY WEREN'T COERCED.  THERE'S NEVER

10   BEEN A TYING CASE BY A CONSUMER WHERE THE CONSUMER

11   COMES IN AND SAYS THAT I WASN'T COERCED BUT YET I

12   WANT TO REPRESENT A CLASS AND SAY THAT THE CLASS

13   WAS COERCED.

14            IN ADDITION, THEY HAVE NOT IDENTIFIED A

15   SINGLE PERSON WHO THEY SAY WAS COERCED ON THE

16   THEORY THAT THEY HAVE THEORIZED HERE AND THEY

17   HAVEN'T COME UP WITH ANY METHOD OF IDENTIFYING

18   ANYBODY WHO THEY SAY WAS COERCED.

19            THE COURT:  LET'S DIVIDE THE

20   CONSIDERATION INTO WHETHER OR NOT THERE IS PROOF OF

21   INDIVIDUAL COERCION WITH WHETHER OR NOT THERE NEEDS

22   BE PROOF OF INDIVIDUAL COERCION AND -- BECAUSE

23   YOU'RE RAISING BOTH.

24            AND I BELIEVE THAT MY PRIOR LOOK AT THIS

25   LEAD ME TO BELIEVE THAT INDIVIDUAL COERCION IS

UNNECESSARY IF I CAN IDENTIFY COERCION AT A MARKET

LEVEL.

NOW, YOU MAY TAKE ISSUE WITH THAT, BUT IT

SEEMS TO ME THAT THAT IS WHAT YOU, THAT IS WHAT YOU

ARE FACED WITH IN TERMS OF THE COURT'S PRIOR RULING

AND ESSENTIALLY WHAT YOU'RE INVITING ME TO DO IS TO

GO BACK TO THAT, REEXAMINE IT, AND TURN IT AROUND

AND THEN GO TO INDIVIDUAL COERCION AS OPPOSED TO MY

NEEDING TO FIND INDIVIDUAL COERCION.

MR. MITTELSTAEDT:  LET ME ADDRESS THAT

HEAD ON.  THE COURT -- AND THIS IS ON THE MOTION TO

DISMISS.  SO YEARS AGO BEFORE WE HAD DEPOSITIONS,

BEFORE WE WERE COMING TO THE CLASS CERT STAGE WHERE

THE QUESTION IS HOW ARE THE PLAINTIFFS GOING TO

PROVE THEIR CASE AND CAN THEY PROVE IT ON A CLASS

BASIS?

YOUR HONOR RELIED ON THE MURPHY CASE FOR

THIS CONCEPT OF MARKET LEVEL COERCION.  WITH ALL

RESPECT, MURPHY DOES NOT SUPPORT THAT PROVISION,

THAT PROPOSAL.

MURPHY SAYS IT STARTS OFF RELYING ON

JEFFERSON PARISH, THE SUPREME COURT CASE, THAT SAYS

AN ESSENTIAL CHARACTERISTIC OF TYING IS FORCING THE

BUYER, AND I'M PARAPHRASING, FORCING THE BUYER INTO

THE PURCHASE OF A TIED PRODUCT THAT HE DIDN'T WANT.

1          AND THEN THE COURT SAYS, WE AGREE WITH

2    THE DISTRICT COURT THAT SUMMARY JUDGMENT FOR

3    DEFENDANTS WAS APPROPRIATE.  AS THAT COURT STATED,

4    THE UNCONTRADICTED EVIDENCE SHOWS THAT NO PLAINTIFF

5    WAS FORCED TO ACCEPT A TIED PRODUCT.

6          SO IN THE MURPHY CASE THE COURT AFFIRMED

7    SUMMARY JUDGMENT FOR THE DEFENDANT.  THE DEFENDANT

8    WON ON THE GROUND THAT THE PLAINTIFF HAD NOT SHOWN

9    THAT HE WAS FORCED TO ACCEPT THE TIED PRODUCT.

10          THE COURT DIDN'T SAY, WELL, THAT DOESN'T

11    MATTER AS LONG AS HE CAN PROVE MARKET LEVEL

12    COERCION.  IN THAT CASE THE COURT SAYS, YOU'RE OUT

13    OF COURT, PLAINTIFF, BECAUSE YOU HAVEN'T PROVED

14    COERCION.

15          THE PLAINTIFFS, YOUR HONOR, DO NOT TRY

16    AND SUPPORT THE PRIOR DECISION BASED ON THE MURPHY

17    CASE.  THEY RECOGNIZE AT LEAST IMPLICITLY THAT

18    MURPHY DOESN'T SUPPORT A CONCEPT OF MARKET LEVEL

19    COERCION.

20          WHAT THEY DO IS THAT THEY GO TO THE MOORE

21    CASE.  THERE IS A PRIOR DECISION IN THE MOORE CASE

22    AT 473 F.2D 328 THAT TALKS ABOUT THE EVIDENCE OF

23    COERCION IN THAT RECORD.

24          IN MOORE ITSELF, MOORE STARTS OFF BY

25    SAYING THAT COERCION IS REQUIRED.  IT SAYS TYINGS

INVOLVE A SELLER'S REFUSAL TO SELL ONE PRODUCT

UNLESS THE BUYER ALSO PURCHASES ANOTHER PRODUCT.

AND THEN IT SAYS, REVIEWS THE EVIDENCE OF

COERCION ON THAT RECORD, AND THEN IT SAYS,

"COERCION MAY BE IMPLIED FROM A SHOWING THAT AN

APPRECIABLE NUMBER OF BUYERS HAVE ACCEPTED

BURDENSOME TERMS."

AND THIS IS WHAT I WAS REFERRING TO

BEFORE.  IN ORDER TO GET THE BENEFIT OF AN

INFERENCE THAT THERE'S COERCION, THEY HAVE TO SHOW

THAT AN APPRECIABLE NUMBER OF BUYERS ACCEPTED

BURDENSOME TERMS.

BUT BUYING AN IPOD IS NOT A BURDENSOME

TERM.  ONE CANNOT INFER FROM THE MERE FACT THAT

SOMEBODY BUYS AN IPOD THAT THEY WERE COERCED INTO

DOING THAT AND THAT WAS TRUE WHETHER IT'S AN

INDIVIDUAL OR WHETHER YOU LOOK AT ALL INDIVIDUALS.

THE COURT:  WELL, YOU STATE THAT BUYING

AN IPOD IS NOT A BURDENSOME TERM BUT AM I TO SIMPLY

ACCEPT THAT AT THIS POINT?

MR. MITTELSTAEDT:  YOUR HONOR, IF I COULD

HAND UP A HANDOUT THAT WILL ADDRESS THAT ISSUE.

THIS FIRST CHART SUMMARIZES THE EVIDENCE

IN THE RECORD AND SOME OF IT IS CONFIDENTIAL SO I'M

NOT GOING TO SAY IT OUT LOUD.  BUT WHAT WE KNOW

FROM THE DATA IS THAT A MAJORITY OF IPOD USERS
EITHER RECEIVE THEIR IPOD AS A GIFT, SO THEY
WEREN'T COERCED, OR THE PERSON BUYING IT WASN'T
COERCED OR THEY NEVER BOUGHT MUSIC FROM APPLE'S
MUSIC STORE SO THEY COULDN'T HAVE BEEN COERCED BY
THAT.

AND AT PAGE 6 OF OUR BRIEF WE SET FORTH
THE DATA ON THAT, BUT IT'S A SIZEABLE PERCENTAGE OF
IPOD PURCHASERS JUST NEVER GO TO THE MUSIC STORE.
SO THEY COULDN'T HAVE BEEN COERCED UNDER THE
PLAINTIFFS' THEORY, OR THEY BOUGHT THE IPOD BEFORE
BUYING ANY MUSIC FROM THE MUSIC STORE, SO THEY
COULDN'T HAVE BEEN COERCED, OR THEY HAVE VERY SMALL
ELEMENTS OF ITUNES MUSIC ON THEIR IPOD.

SO UNDER THEIR LOCK-IN THEORY IT DOESN'T
WORK BECAUSE THE MAJORITY OF THE MUSIC ON AN IPOD
COMES FROM SOURCES OTHER THAN THE MUSIC STORE,
NOTABLY A PERSON'S CD COLLECTION.

SO WHAT WE KNOW IS THAT A LOT OF PEOPLE
BOUGHT IPODS EVEN BEFORE THE MUSIC STORE WAS
LAUNCHED.  YOU KNOW, IT DIDN'T COME ON THE SCENE
UNTIL 18 MONTHS AFTER IPODS HAD BEEN INTRODUCED AND
WERE SELLING.

WE KNOW THAT FIVE OUT OF THE FIVE
PLAINTIFFS ADMIT THEY WEREN'T COERCED.  THEY BOUGHT

24

IPODS IN THESE CIRCUMSTANCES.

AND AS I SAY, THERE'S NEVER BEEN A CONSUMER CLASS ACTION WHERE IT WAS ADMITTED BY THE NAMED PLAINTIFFS THAT THERE WASN'T ANY COERCION.

SO THEY DON'T GET THE BENEFIT OF AN INFERENCE THAT JUST BECAUSE YOU BUY AN IPOD YOU WERE COERCED TO DO IT, BECAUSE AS I SAY, A MAJORITY OF IPOD USERS COULDN'T POSSIBLY HAVE BEEN COERCED. AND THE PLAINTIFFS RECOGNIZE THAT.

AND SO WHAT THEY DO, AND THIS IS ON THE SECOND PAGE, THEIR EXPERT COMES UP WITH A LIST OF CHARACTERISTICS OF THE PERSON THAT THEY SAY IS COERCED.

AND HERE'S WHAT ACCORDING TO THEIR EXPERT THEY HAVE TO FIND. FIRST OF ALL, THE PERSON HAS TO BUY ENOUGH MUSIC FROM ITUNES THAT IT MATTERS;

THEN THEY HAVE TO WANT TO PLAY IT ON A PORTABLE PLAYER, A PORTABLE DIGITAL PLAYER;

AND THEN THEY WANT TO -- THEY HAVE TO PREFER AN IPOD COMPETITOR, RATHER THAN AN IPOD;

AND THEN THEY HAVE TO SHOW THAT THEY DON'T KNOW HOW TO BURN AND RIP THE MUSIC BECAUSE IT IS ADMITTED ON THIS RECORD THAT BY BURNING AND THEN RIPPING THE MUSIC, YOU CAN PLAY ITUNES MUSIC ON A COMPETING PLAYER.

1      IN AN ADDENDUM TO OUR OPPOSITION BRIEF,

2  YOUR HONOR, WE SET FORTH SOME SCREEN SHOTS THAT

3  SHOW HOW THAT PROCESS OF BURNING AND RIPPING WORKS.

4      AND THE PLAINTIFFS HAVE ADMITTED THAT A

5  CONSUMER CAN MAKE COPIES OF THE RECORDINGS YOU GET

6  FROM ITUNES MUSIC STORE AND READ THEM BACK INTO A

7  PERSONAL COMPUTER AS DRM FREE FILES.  THAT'S QUOTED

8  AT FOOTNOTE 8 OF OUR BRIEF.

9      AND THEN NOLL, THEIR EXPERT, SAYS THAT

10  THE MECHANISM TO PLAY ITUNES FILES ON COMPETING

11  PLAYERS IS TO DO AN ACTUAL OR A VIRTUAL BURN OF THE

12  CD AND THEN REPLAY IT.

13      AND THE PLAINTIFFS HAVE ADMITTED THAT

14  IT'S EASY TO DO THAT.  AND AT PAGE 9 OF OUR BRIEF,

15  WE SET FORTH THE DEPOSITION TESTIMONY WHERE THEY

16  ADMIT IT TAKES UNDER A MINUTE TO DO THAT.  THEY

17  KNOW HOW TO DO IT.  THEY DO IT FREQUENTLY.  AND THE

18  FIRST PLAINTIFF, MR. SLATTERY, ADMITTED THAT BY

19  BURNING AND RIPPING, HE CAN PLAY COMPETING -- HE

20  CAN PLAY ITUNES MUSIC ON COMPETING DEVICES.

21      AND I ASKED HIM, AND BURNING AND RIPPING

22  IS A PROCESS THAT YOU HAVE DONE NUMEROUS TIMES?

23  OH, YES, MANY.

24      AND SO ALL THEY HAVE TO DO IS PUT A BLANK

25  CD IN THEIR COMPUTER, HIT THE BURN DISK ICON IN

ITUNES AND IT BURNS THE MUSIC, COPIES THE MUSIC TO
A CD, AND THEN THEY JUST DRAG IT BACK TO THEIR
MUSIC LIBRARY AND THEY CAN PUT IT ON ANY COMPETING
PLAYER THAT THEY WANT TO.

AND AS I SAY, APPENDIX 2 TO OUR
OPPOSITION SETS FORTH THAT PROCESS.

SO WHAT THE PLAINTIFFS SAY IS THAT THEY
ACKNOWLEDGE THAT IF YOU BURN AND RIP AND KNOW HOW
TO DO IT, THEN YOU'RE NOT UNDER THEIR THEORY
COERCED.  YOU'RE NOT LOCKED IN.  YOU CAN PLAY
ITUNES MUSIC ON A COMPETING PLAYER.

SO THE OTHER ELEMENT FOR THEIR COERCED
CONSUMERS IS THAT THIS PREFERENCE FOR A COMPETING
PLAYER HAS TO BE NOT STRONG ENOUGH TO JUSTIFY THIS
SMALL AMOUNT OF TIME AND EFFORT IT TAKES TO DO THE
BURNING AND RIPPING BECAUSE IF YOU REALLY WANT A
COMPETING PLAYER, THEN YOU'RE GOING TO TAKE, YOU
KNOW, THE MINUTE OR LESS IT TAKES TO DO THIS EASY
STEP OF BURNING AND RIPPING.

AND ONLY IF THEY MEET ALL OF THOSE
REQUIREMENTS COULD THEY SAY THAT THEY'RE FORCED TO
BUY AN IPOD.

WELL, WHAT IS THE SIGNIFICANCE OF ALL OF
THAT?

FIRST OF ALL, THE PLAINTIFFS THEMSELVES

DON'T MEET THOSE CRITERIA. THEY HAVEN'T FOUND
ANYBODY WHO DOES. THEY HAVEN'T PROPOSED ANY CLASS
WIDE METHOD OF IDENTIFYING ANYBODY WHO FITS INTO
THAT CATEGORY.

THEY CERTAINLY HAVEN'T NARROWED THE CLASS
TO THESE TYPES OF PEOPLE AND THE REASON THEY
HAVEN'T DONE ANY OF THAT IS THAT THEY RECOGNIZE THE
ONLY WAY TO DETERMINE IF ANYBODY FITS INTO THIS SET
OF CRITERIA IS TO GO INDIVIDUAL BY INDIVIDUAL.

SO THEY COME BACK AND SAY, WELL, MOORE
SAYS THAT WE CAN JUST INFER THAT PEOPLE ARE
COERCED. WELL, NOT UNDER THEIR THEORY. YOU CAN'T
INFER, JUST BECAUSE SOMEBODY HAS AN IPOD, THAT THEY
MEET THESE CRITERIA. THE ONLY WAY TO DO THIS IS TO
GO INDIVIDUAL BY INDIVIDUAL. AND THAT'S WHY, YOUR
HONOR, WHEN YOU LOOK AT THE TYING CASES, IN
ANTITRUST CASES, YOU KNOW, PRICE FIXING CASES,
COURTS OFTEN CERTIFY CLASSES BUT THAT'S NOT TRUE IN
TYING CASES.

THE PARTIES CITED ABOUT 20 TYING CASES
WHERE A CLASS WAS REQUESTED IN THE VARIOUS BRIEFS.

IN 11 OF THOSE, THE COURTS DENIED
CLASSES. AND IN THE NINTH CIRCUIT IN THE DISTRICT
COURTS, THE PERCENTAGE IS ABOUT THE SAME. AND THE
KRELL CASE IN THE NINTH CIRCUIT IS A GOOD EXAMPLE.

IN THAT CASE THE COURT CERTIFIED SOME CLAIMS AND
REFUSED TO CERTIFY OTHER CLAIMS.

AND THE DIFFERENTIATING FACTOR IN THESE
TWO LINES OF CASES AND IN KRELL ITSELF IS THAT IF
THERE IS A UNIFORM CONTRACTUAL REQUIREMENT THAT
SAYS THAT I'M NOT GOING TO SELL YOU PRODUCT A
UNLESS YOU BUY PRODUCT B, AND I'M NOT GOING TO SELL
THE PRODUCT SEPARATELY, THEN THE COURTS FIND THAT
THERE'S A UNIFORM CLASS WIDE METHOD OF PROOF.

THE COURT:  NOW, I AGREE WITH A LOT OF
WHAT YOU'RE TELLING ME, BUT THERE IS SOME PARTS OF
WHAT I UNDERSTAND ABOUT THIS CIRCUMSTANCE THAT
YOU'RE NOT ADDRESSING AND IT HELPS YOUR ARGUMENT IF
YOU WOULD PAY ATTENTION TO THAT.

AND THAT IS THAT ANTITRUST LAW EVOLVED AS
THE SOCIETY HAS EVOLVED AND INDUSTRIES AND
TECHNOLOGIES AFFECTED BY IT BRING DIFFERENT
PROBLEMS TO BEAR.  HERE WE LIVE IN A WORLD TODAY
THAT IS VERY DIFFERENT THAN WHAT EXISTED THEN THE
DECISIONS THAT ARE BEING CITED TO ME AND ACROSS
VARIOUS MARKETS THE PARAMETERS THAT THE COURTS
SHOULD USE TO JUDGE COERCION CAN CHANGE.

WE EXIST IN A WORLD TODAY WHERE I NOTICE
THAT ONE BULLET POINT YOU HAVE NOT PUT ON YOUR
SLIDE IS THAT THERE ARE AN APPRECIABLE NUMBER OF

CONSUMERS WHO UNDERSTAND THE RELATIONSHIP BETWEEN

THE DIGITAL MUSIC MARKET AND DIGITAL MUSIC PLAYERS

AND CHOOSE TO PURCHASE PRODUCTS BASED UPON THAT

LEVEL OF UNDERSTANDING.

AND DO I UNDERSTAND YOU TO DENY THAT

THERE ARE A GROUP OF PURCHASERS WHO APPRECIATE THAT

APPLE HAS A LARGE MARKET IN DIGITAL MUSIC IN ITS

ITUNES STORE AND WHO WOULD WISH TO PURCHASE THAT

MUSIC UNENCUMBERED BY A REQUIREMENT THAT THEY

DOWNLOAD IT TO A DISK BEFORE THEY COULD THEN

DOWNLOAD IT TO A PLAYER AND WHO WOULD WISH TO

SIMPLY DOWNLOAD IT DIRECTLY TO A PLAYER BUT FIND

THAT THEY CAN'T DO THAT?

WE ARE A SOCIETY OF CONVENIENCE.  IF

GIVEN THE CHOICE BETWEEN A GAS STATION WHERE YOU

COULD BUY YOUR GAS WITHOUT HAVING TO GO INSIDE BY

SIMPLY SLIDING A CARD WITH A HIGHER PRICE THAN ONE

THAT HAS A CHEAPER PRICE IF YOU GO INSIDE TO

SOMEONE AND TALK TO THEM AND DEAL WITH THEM,

CONSUMERS ARE ONES WHO MIGHT TAKE THE FASTER COURSE

OUT OF HABIT.

AND SO THE MERCHANTS OF THE WORLD KNOWING

THAT PROCLIVITY CAN TAKE ADVANTAGE OF IT AND ONE OF

THE WAYS AS I UNDERSTAND APPLE HAS TAKEN ADVANTAGE

OF THAT IS TO SAY THAT IF WE MAKE A PLAYER WHICH

CAN ONLY DIRECTLY DOWNLOAD FROM THE INTERNET MUSIC
CALLED THE IPOD AND NO OTHER PLAYER CAN DO THAT,
AND WE SET UP OUR MUSIC IN A WAY THAT IT CAN ONLY
DOWNLOAD DIRECTLY TO AN IPOD, CONSUMERS WILL
PURCHASE THAT PRODUCT BECAUSE OF THEIR PROCLIVITY
FOR THAT FAST AND CONVENIENT WAY OF DOING IT.

DO YOU DISAGREE WITH ANYTHING THAT I HAVE
JUST SAID?

MR. MITTELSTAEDT: YES AND NO. THE
QUESTION IS THAT IT'S NOT APPLE TAKING ADVANTAGE OF
SOMETHING THAT IT'S CREATING ITSELF. THIS DOESN'T
GO DIRECTLY TO YOUR --

THE COURT: I DIDN'T SAY APPLE CREATED
IT. TOOK ADVANTAGE OF IT AS A PROCLIVITY IN HUMAN
NATURE.

MR. MITTELSTAEDT: LET ME ADDRESS THAT
AND IT'S CLEAR AND EVERYBODY AGREES THAT THE REASON
THAT MUSIC STORES USE DRM, ANTI-PIRATE SOFTWARE IS
BECAUSE THE RECORD LABELS REQUIRE IT.

THE COURT: AND I ACKNOWLEDGE THAT WHEN I
WAS SPEAKING WITH YOUR OPPONENT.

MR. MITTELSTAEDT: AND IT'S ALSO TRUE AND
THIS IS A NEW FACT THAT PLAINTIFFS' EXPERT HAS
ACKNOWLEDGED THAT THERE'S NOTHING WRONG WITH APPLE
USING ITS OWN PROPRIETARY SOFTWARE. HE SAID IT

WOULD BE STUPID TO PROHIBIT THAT, STUPID IS HIS
WORD, BECAUSE IT WAS THWART INNOVATION.  SO HE'S ON
BOARD WITH APPLE USING ITS OWN SOFTWARE RATHER THAN
MICROSOFT'S, FOR EXAMPLE.

      THE COURT:  AND I HOPE I HAVE NOT SAID
ANYTHING CONTRARY TO THAT.  I THINK APPLE HAS
DISTINGUISHED ITSELF AS A COMPANY BY THAT VERY
FREEDOM.

      MR. MITTELSTAEDT:  SO TO GET TO YOUR
HONOR'S QUESTION, LET'S ASSUME THAT THERE ARE
PEOPLE OUT THERE WHO BOUGHT IPODS BECAUSE THEY WORK
WELL WITH THE ITUNES MUSIC STORE AND WORK BETTER
AND DON'T TAKE THAT EXTRA MINUTE THAN A COMPETING
PLAYER.

      THE COURT:  YOU CALLED IT A MINUTE.  I'LL
LET YOU GO FOR NOW, BUT I'M AFRAID I DON'T AGREE
WITH YOU THAT IT'S A MINUTE.

      MR. MITTELSTAEDT:  WELL, IT'S A MINUTE OF
THE USER'S TIME.  YOU KNOW, THE COMPUTER TAKES
LONGER.  I CAN SHOW YOUR HONOR HOW TO DO IT IN A
MINUTE.

      THE COURT:  WELL, YOU SEE -- BUT THAT'S
NOT THE ISSUE BUT GO AHEAD.

      MR. MITTELSTAEDT:  THE ISSUE, I THINK,
YOUR HONOR, IS WHETHER THIS IS SOMETHING THAT CAN

1    BE PROVED ON A CLASS WIDE BASIS OR WHETHER IT

2    REQUIRES INDIVIDUAL PROOF.

3              THE COURT:  THAT I THINK IS THE ISSUE.

4    AND SO THE QUESTION THAT YOU'RE ASKING ME TO

5    RECONSIDER IS WHETHER OR NOT THE MARKET LEVEL

6    COERCION IS PERMISSIBLE IN THIS CASE, AND I'M

7    WILLING TO THINK ABOUT THAT MORE BECAUSE I DO THINK

8    THAT THAT IS AN IMPORTANT ISSUE TO ANSWER.

9              BUT IF I ANSWER THAT IT IS PERMISSIBLE,

10   DO YOU HAVE AN ARGUMENT THAT THERE IS NO MARKET

11   LEVEL COERCION?

12             MR. MITTELSTAEDT:  THE ARGUMENT AT THAT

13   POINT IS HOW ARE THEY GOING TO PROVE MARKET LEVEL

14   COERCION?  THEY NEED TO COME UP WITH A METHOD TO

15   PROVE THIS ON A CLASS WIDE BASIS AND THEY HAVEN'T

16   SUGGESTED ANY.

17             IT'S, YOU KNOW, WHETHER IT'S

18   INDIVIDUAL --

19             THE COURT:  I THINK BY DEFINITION, MARKET

20   LEVEL COERCION IS CLASS WIDE.

21             MR. MITTELSTAEDT:  WELL, BUT HOW DO THEY

22   PROVE COERCION?

23             IF I'M RIGHT THAT THE ELEMENTS OF THEIR

24   COERCED CONSUMER ARE AS SET FORTH HERE ON CHART

25   NUMBER 2, AND LET'S ADD TO IT WHAT I THINK IS

33

1    IMPLICIT AND WHAT WAS SUGGESTED BY YOUR HONOR THAT

2    YOU HAVE TO KNOW THAT IF YOU BURN AND RIP, THEN YOU

3    CAN PLAY THE MUSIC ON A COMPETING PLAYER, LET'S ADD

4    THAT.  THAT'S ANOTHER INDIVIDUAL ISSUE.

5              AND IN ORDER TO PROVE THAT I WAS COERCED

6    OR IN ORDER TO PROVE THAT, YOU KNOW, THE MARKET WAS

7    COERCED.  AND AGAIN, THE MARKET IS JUST A BUNCH OF

8    INDIVIDUALS.

9              AND THERE'S -- YOU KNOW, IF YOU CAN'T

10   PROVE THAT I WAS COERCED WITHOUT ASKING ME AND

11   EXPLORING MY CIRCUMSTANCES, YOU CAN'T GET AWAY FROM

12   THAT.  THE PLAINTIFFS CAN'T GET AROUND THAT BY JUST

13   SAYING, WELL, WE'RE NOT GOING TO LOOK AT

14   INDIVIDUALS.  WE'RE GOING TO LOOK AT EVERYBODY AS A

15   GROUP BECAUSE WHEN YOU LOOK AT EVERYBODY AS A

16   GROUP, YOU STILL HAVE TO FIND OUT, YOU KNOW, WHY

17   DID YOU BUY YOUR IPOD?  WERE YOU HAPPY TO BUY YOUR

18   IPOD?

19              I MEAN, SOME PEOPLE BUY AN IPOD BECAUSE

20   IT WORKS WELL WITH THE MUSIC STORE AND THEY'RE

21   DELIGHTED AND THEY WOULD NEVER BUY A COMPETING

22   PLAYER EVEN IF IT WAS AS EASY TO USE WITH THE MUSIC

23   STORE AS THE IPOD BECAUSE THE IPOD IS A REALLY

24   GREAT DEVICE.

25              SAME REASON ON CHART NUMBER 1.  PEOPLE

34

BUY AN IPOD WITHOUT REGARD TO THE MUSIC STORE.

SO YOU NEED TO ASK INDIVIDUAL BY INDIVIDUAL AND THAT'S WHY, YOU KNOW, I'M NOT SAYING TYING LAWS SHOULDN'T KEEP UP WITH THE TIMES BUT AN ESSENTIAL ELEMENT OF TYING LAW AND CLASS CERTIFICATION IS CAN YOU PROVE IT ON A CLASS WIDE BASIS AND THEY DON'T HAVE A METHOD FOR DOING THAT, ESPECIALLY IF YOU NEED INDIVIDUAL COERCION, BUT EVEN IF YOU CALL IT MARKET COERCION, IT'S STILL A GROUP OF INDIVIDUALS.

YOUR HONOR, LET ME JUST HIT TWO OTHER POINTS QUICKLY. IT'S NOT RIGHT THAT COERCION IS OUR ONLY ARGUMENT AS AN INDIVIDUAL ISSUE. AS COUNSEL RECOGNIZES THIS NET OVERCHARGE IS ALSO A REASON THAT THEY DON'T RECOGNIZE THAT THEY ADDRESSED IT. BUT WE SAY THE NEED TO PROVE PROOF OF INJURY OR THE FACT OF DAMAGE IN THE NINTH CIRCUIT THAT NEEDS TO BE PROVED IN A TYING CASE ON A PACKAGE BASIS. AND CHART NUMBER 7 SUMMARIZES THE LAW ON THAT.

AND THE BASIC IDEA, AS SET FORTH BY THE FREELAND CASE, THE AT & T CASE IN THE SOUTHERN DISTRICT OF NEW YORK, IF A TIE CAUSES A BUYER TO PAY MORE THAN THE MARKET PRICE FOR THE TIED PRODUCT, THE BUYER IS MOST LIKELY PAYING LESS THAN

THE PRICE THAT THE SELLER COULD OTHERWISE CHARGE
FOR THE TYING PRICE.

IN OTHER WORDS, THE PRICE ON THE FIRST
PRODUCT IS LOWER AND THAT'S BASIC ECONOMIC THEORY
FOR THE REASONS SET FORTH IN THE FREELAND CASE.

FREELAND DENIES CLASS CERTIFICATION
BECAUSE THE PLAINTIFF WAS UNABLE TO IDENTIFY A
METHOD TO DEMONSTRATE THAT THAT HAD NOT HAPPENED.

AND THE REASON THAT'S IMPORTANT IS A
CONSUMER IS NOT DAMAGES, IS NOT INJURED IF, IN
FACT, THERE'S BEEN A LOWERING OF THE PRICE ON THE
MUSIC WHICH IS OFFSET IN ANY INCREASE IN THE PRICE
OF THE IPOD.  THAT'S THE LAW OF THE NINTH CIRCUIT
IN THE SIEGLE CASE AND THE ELEVENTH CIRCUIT CASE WE
CITE THERE IN THE BOTTOM BULLET SHOWS THAT.  AND IT
INTERPRETS AND APPLIES THE NINTH CIRCUIT SIEGLE
RULE.

THE COURT:  WELL, I WANT TO LEARN A LOT
MORE ABOUT THAT.  IN OTHER WORDS, IF THE TIED -- IF
A TIE CAUSES A BUYER TO PAY MORE THAN THE MARKET
PRICE FOR THE TIED PRODUCT, THE BUYER IS MOST
LIKELY PAYING LESS THAN THE PRICE THE SELLER COULD
PROFITABLY CHARGE.

SO THAT IS -- IS THAT MORE OR LESS THAN
MARKET FOR THE TYING PRODUCT?

1           MR. MITTELSTAEDT:  LESS, LESS.

2           THE COURT:  LESS THAN MARKET?

3           MR. MITTELSTAEDT:  YES.  AND THE IDEA IS

4     THAT ON DAY ONE YOU'RE SELLING THE FIRST PRODUCT.

5           THE COURT:  BUT HOW DOES THAT FOLLOW

6     THERE'S NO DAMAGE?  WHAT IF YOU REDUCE IT BY A

7     NICKEL AND SOMETHING ELSE IS SOLD AT A PREMIUM, HOW

8     DOES THAT MEAN THAT THERE IS NO DAMAGE?

9           MR. MITTELSTAEDT:  YEAH, IT DEPENDS ON

10    THE SIZE OF THE OVERCHARGE AND THE SIZE OF THE --

11    THE SIZE OF THE OVERCHARGE AND THE SIZE OF THE

12    UNDERCHARGE IF YOU WILL.

13          THE COURT:  RIGHT.

14          MR. MITTELSTAEDT:  AND THE RELATIVE

15    NUMBER OF UNITS THAT YOU BUY OF EACH.

16          THE COURT:  YES.

17          MR. MITTELSTAEDT:  AND SO IN THE VISA

18    CASE THE PLAINTIFFS' EXPERT CAME IN AND SAID THAT

19    THERE'S NO UNDERCHARGE ON THE FIRST PRODUCT.  AND

20    SO THE COURT SAID, OKAY, WE DON'T HAVE A PROBLEM

21    WITH A NET OVERCHARGE.

22          AND HERE WHEN I ASKED PROFESSOR NOLL,

23    WHAT ABOUT THE PRICE OF MUSIC, WAS THAT LOWERED?

24    AND HE SAID HE HASN'T STUDIED IT, HE DOESN'T

25    PROPOSE TO STUDY IT AND HE'S NOT GOING TO OFFER AN

1    OPINION ON THAT.

2         SO THE BURDEN ON THE PLAINTIFFS IN THE

3    NINTH CIRCUIT AND THE ELEVENTH CIRCUIT IS TO SHOW

4    THAT THERE WAS A NET OVERCHARGE TAKING INTO

5    ACCOUNT, IN OUR CASE, THE AMOUNT OF MUSIC THAT AN

6    INDIVIDUAL CONSUMER BOUGHT, THE AMOUNT OF THE

7    UNDERCHARGE ON THAT, AND COMPARED WITH THE NUMBER

8    OF IPODS THAT THE PERSON BOUGHT AND THE OVERCHARGE

9    ON THAT.

10        THE COURT:  WHY SHOULD I DEAL WITH THIS

11   AT THE CLASS CERTIFICATION?

12        MR. MITTELSTAEDT:  WELL, FOR THE VERY

13   REASON, YOUR HONOR, THAT THE PLAINTIFFS DON'T DEAL

14   WITH IT.

15        THE REASON THEY DON'T DEAL WITH IT IS

16   THAT THE ONLY WAY TO ESTABLISH THIS FACT OF INJURY

17   IN A REGIME WHERE THE NET OVERCHARGE MUST BE SHOWN

18   ON A PACKAGE BASIS IS TO GO CONSUMER BY CONSUMER.

19        IT RAISES INDIVIDUAL QUESTIONS, WHICH IS

20   WHAT THE FREELAND CASE HELD AND THAT'S WHY FREELAND

21   DENIED CERT.  THE PLAINTIFFS RECOGNIZE THAT BECAUSE

22   THE RELATIVE AMOUNT OF PURCHASES MATTERS IN THIS

23   NET OVERCHARGE APPROACH, YOU HAVE TO GO INDIVIDUAL

24   BY INDIVIDUAL TO SEE WHETHER THEY BOUGHT ENOUGH

25   MUSIC TO MAKE UP FOR THE OVERCHARGE ON THE IPOD.

                                                    38

1    THAT'S AN INDIVIDUAL QUESTION.

2         THERE'S NO CLASS WIDE WAY TO DO IT OR AT

3    LEAST THEY HAVEN'T PROPOSED ANY.  AND THAT'S WHY AS

4    I SAY PROFESSOR NOLL JUST SAYS I'M NOT GOING TO

5    WORRY ABOUT THAT.

6         THE SECOND ARGUMENT ON FACT OF DAMAGES

7    LEADS TO THE SAME CONCLUSION.  THE PLAINTIFFS AGREE

8    THAT AT LEAST ONE WAY OF PROVING TYING DAMAGES IS

9    TO LOOK AT THE DIFFERENCE OF PRICE BETWEEN THE IPOD

10   YOU WERE FORCED TO BUY AND THE COMPETING PLAYER YOU

11   WANTED TO BUY.

12        THAT'S WHAT THE LESSIG CASE DOES, AND

13   THAT'S WHAT THE GRAY CASE ALSO CITED DOES AND

14   THAT'S A RELATIVELY STRAIGHTFORWARD METHOD OF

15   PROVING DAMAGES.

16        THEY DON'T DO THAT.  AND THE REASON THEY

17   DON'T DO THAT IS THAT, TOO, RAISES INDIVIDUAL

18   QUESTIONS.

19        AS SET FORTH IN OUR PREVIOUS ORDER TO

20   PROVE THAT, YOU HAVE TO GO INDIVIDUAL BY INDIVIDUAL

21   SAYING WHAT PLAYER DID YOU WANT TO USE AND DID YOU

22   WANT TO BUY AN IPOD AND WHAT WAS THE DIFFERENCE IN

23   PRICE AND THAT RAISES AN INDIVIDUAL QUESTION AND SO

24   THEY DON'T DO THAT.

25        THAT'S ANOTHER REASON WHY THE CLASS --

WHY THIS MOTION SHOULD NOT BE GRANTED.  IT SHOULD
BE DENIED BECAUSE THEY HAVE IN ESSENCE FORFEITED,
GIVEN UP, NOT PURSUED THAT RELATIVE STRAIGHTFORWARD
METHOD OF PROVING DAMAGES FOR AN INDIVIDUAL.

AND IF THERE'S ANYBODY OUT THERE IN THE
WORLD, AND AGAIN, THEY HAVEN'T IDENTIFIED ANYBODY
THAT MEETS ALL OF THESE CRITERIA.  THAT PERSON
WOULD WANT TO COME IN AND HAVE A RELATIVELY SIMPLE
CASE AND SAY, HERE'S MY MEASURE OF DAMAGES.  IT'S
THE DIFFERENCE BETWEEN THE REAL, THE SANSA, THE
WHATEVER I WANTED TO BUY AND THE IPOD.  AND THEY
DON'T DO THAT.

AND FINALLY, LET ME ADDRESS THEIR SECTION
2 CLAIM.  IN THE FREELAND CASE FOOTNOTE 16 THE
COURT SAYS THAT WHERE YOU HAVE TYING PRACTICES AND
THEY'RE MOST REGULARLY CHALLENGED AS TYING CLAIMS
WHEN THE CONDUCT AT ISSUE IS REALLY ALLEGED TO BE A
TYING CLAIM, IT'S FROM THE TYING CASE LAW THAT
GUIDANCE MUST BE SOUGHT IN AN ATTEMPT TO EVALUATE
THE INJURY CLAIMED BY THE PLAINTIFFS.

AND THEN THEY SAY THE PRINCIPLES GLEANED
FROM THOSE CASES ARE EQUALLY APPLICABLE TO THE
NON-TYING CLAIMS WHEN THE BASIC ALLEGATION GOES TO
TYING.

AND THAT'S WHAT IS GOING ON HERE.  THEY

40

1    CAN'T -- TO THE EXTENT THAT THEY HAVE PROBLEMS WITH

2    INDIVIDUAL PROOF FOR THEIR TYING CLAIM, THEY CAN'T

3    GET RID OF THAT SIMPLY BY SAYING, OKAY, WE'RE NOT

4    GOING TO CALL IT TYING OR COERCIVE.  WE'RE GOING TO

5    CALL IT EXCLUSIONARY.

6         BECAUSE WHEN THEY'RE -- IN ORDER TO HAVE

7    A SECTION 2 CLAIM FOR EXCLUSIONARY CONDUCT ON THE

8    FACTS THAT THEY'RE GOING ON HERE OR ON THE THEORY,

9    THEY HAVE TO SHOW THAT CONSUMERS WERE COERCED INTO

10   DOING SOMETHING THAT THEY OTHERWISE WOULDN'T DO AND

11   THEREBY EXCLUDED COMPETITION OR EXCLUDED

12   COMPETITORS.

13        SO HOWEVER THEY PHRASE THEIR CLAIM, IT

14   ALL GETS BACK TO WHETHER THERE WAS ANY COERCIVE

15   EFFECT ON CONSUMERS AND WHETHER THEY WANT TO CALL

16   IT COERCIVE TYING OR EXCLUSIONARY.

17        THE CASE THAT REALLY LAYS OUT I THINK THE

18   IMPORTANCE OF THIS COERCIVE EFFECT IS THE COLBURN

19   CASE.  IT WAS JUDGE CONTI'S CASE.  IT CAME AFTER

20   MOORE.

21        IN THAT CASE JUDGE CONTI DENIED A CLASS

22   SAYING THAT THE COERCIVE EFFECT, IF ANY, OF THE

23   ALLEGED TYING AGREEMENT COULD NOT BE MEASURED ON A

24   CLASS WIDE BASIS.  IT HAD TO GO INDIVIDUAL BY

25   INDIVIDUAL AND THIS IS AFTER MOORE AND HE SAID ON

                                                    41

1    THE FACTS OF THAT CASE, YOU NEED TO GO INDIVIDUAL

2    BY INDIVIDUAL AND SO WE'RE NOT GOING TO CERTIFY A

3    CLASS.

4         THAT CASE IN MY VIEW WOULD NOT HAVE COME

5    OUT ANY DIFFERENTLY IF THE PLAINTIFF WOULD HAVE

6    SAID, OKAY, LET'S NOT CALL IT COERCION.  LET'S JUST

7    CALL IT EXCLUSIONARY.

8         IT WOULD REQUIRE THE SAME KIND OF

9    ANALYSIS OF WHETHER ANY CONSUMER HAD BEEN COERCED

10   INTO BUYING AN IPOD THAT THEY DIDN'T WANT TO BUY.

11        FINALLY, YOUR HONOR, THE PLAINTIFFS ON

12   THIS BURNING AND RIPPING ISSUE IN THEIR REPLY BRIEF

13   RAISE THE QUESTION ABOUT WHETHER IT'S LAWFUL TO

14   BURN AND RIP.

15        AND THEY SAID, YOU KNOW, IF IT'S NOT

16   LAWFUL, THEN ALL OF THIS GOES AWAY AND THIS IS ONE

17   INDIVIDUAL ISSUE THAT WOULD BE WITHDRAWN.

18        AT PAGE 6 OF THIS HANDOUT I SUMMARIZE THE

19   LAW ON THAT AND, YOU KNOW, OUR VIEW IS THAT IT'S

20   LEGAL TO BURN AND RIP AND THAT THAT'S NOT A REASON

21   THE -- THAT'S NOT A WAY FOR THE PLAINTIFFS TO AVOID

22   THE IMPACT OF THE AVAILABILITY OF BURNING AND

23   RIPPING.

24        AND JUST TO EMPHASIZE ONE POINT, YOUR

25   HONOR, AS WE SET FORTH IN THE BRIEF, THE PLAINTIFFS

1    AND THEIR EXPERTS ADMIT THAT BURNING AND RIPPING IS
2    A VIABLE OPTION.
3         ONE CAN QUARREL ABOUT HOW LONG IT TAKES
4    TO DO THAT, HOW EASY IT IS TO DO THAT, BUT THAT
5    ONLY HIGHLIGHTS THAT IT'S AN INDIVIDUAL ISSUE.
6         THE PLAINTIFFS HAVEN'T COME UP WITH ANY
7    CLASS WIDE METHOD OF SAYING NOBODY OUT THERE KNOWS
8    HOW TO BURN AND RIP.  YOU KNOW, NOBODY EVER DOES
9    IT.  IT'S NOT AN OPTION.
10        AND THEY COULDN'T DO THAT GIVEN THE
11   ADMISSIONS OF THEIR OWN CLIENTS.
12        AND SO LET ME END WITH THIS THOUGHT AND
13   IT'S REALLY THE WAY I BEGAN THAT THIS REALLY IS AT
14   BOTTOM I THINK A CONTRIVED ANTITRUST CLAIM BECAUSE
15   IT'S BASED ON APPLE USING ANTI-PIRACY SOFTWARE
16   BECAUSE THE RECORD LABELS REQUIRE IT.
17        AND IT'S EQUALLY CONTRIVED OR EVEN MORE
18   CONTRIVED TO TRY TO TURN THIS INTO A CLASS ACTION
19   AND A CLASS ACTION NOT JUST FOR CONSUMERS BUT ALSO
20   FOR RESELLERS.  I'LL RELY ON WHAT WE SAY IN THE
21   PAPERS ABOUT WHY THE CLASS SHOULDN'T BE CERTIFIED
22   FOR THE RESELLERS LIKE WALMART AND TARGET AND BEST
23   BUY.  THEY'RE OBVIOUSLY A DIFFERENT CATEGORY OF
24   PURCHASER.
25        THESE PLAINTIFFS, YOUR HONOR MAY RECALL,

43

WHEN THEY FIRST MOVED FOR CLASS CERTIFICATION, IT
WAS MRS. -- WHO WAS IT? I FORGET WHO THE PLAINTIFF
WAS AT THAT TIME. MAYBE SLATTERY. ANYHOW, THEY
MOVED FOR CLASS CERTIFICATION. IT WAS TAKEN OFF
CALENDAR WHEN THE NEW COMPLAINT WAS FILED AND THEN
THE COMPLAINT WAS CONSOLIDATED.

BUT THE FIRST TIME AROUND WHEN THEY MOVED
FOR CLASS, THEY DIDN'T MENTION, THEY DIDN'T INCLUDE
THE RESELLERS AND I THINK THAT'S BECAUSE THEY'RE
OBVIOUSLY IN A DIFFERENT CATEGORY. THEY HAVE NOT
ASKED FOR ANY DISCOVERY ON THE RESELLERS. AGAIN,
THEY'RE IN A DIFFERENT CATEGORY. THEY'RE BUYING
HUGE VOLUMES AND THEIR PURCHASING DECISIONS ARE
DIFFERENT.

AND THESE PLAINTIFFS, YOU KNOW, ARE NOT
TYPICAL OF RESELLERS THAT BUY MILLIONS AND MILLIONS
OF IPODS.

OUR PAPER ALSO ADDRESSES THE REQUEST FOR
AN INJUNCTIVE RELIEF CLASS THAT CLEARLY IS
INAPPROPRIATE BECAUSE THE THRUST OF THIS CASE IS
FOR DAMAGES AND SO LET ME END AS I STARTED.

WHAT IS UNUSUAL ABOUT THIS CASE AND WHAT
WOULD MAKE IT UNPRECEDENTED TO CERTIFY A CLASS IS
THE IPOD IS A VERY POPULAR PRODUCT. ONE CANNOT
INFER THAT THE ONLY REASON ANYBODY WOULD BUY IT IS

BECAUSE THEY WERE COERCED TO DO SO.  SO THIS
EVIDENTIARY INFERENCE FROM MOORE SIMPLY DOESN'T
WORK.

THERE'S NEVER BEEN A CLASS ACTION
CERTIFIED WHERE THE ALLEGED TYING AND TIED PRODUCTS
WERE SEPARATELY AVAILABLE, NOT ONLY SEPARATELY
AVAILABLE BUT COULD BE USED SEPARATELY AND HERE
EVERYBODY AGREES THAT ITUNES MUSIC CAN BE PLAYED ON
A COMPUTER.  IT CAN BE PLAYED ON AN IPOD, AND IT
CAN BE PLAYED WITH AN EXTRA STEP ON ANY COMPETING
PLAYER.

THERE'S NEVER BEEN A CLASS CERTIFIED IN
THAT CIRCUMSTANCE BECAUSE IT OBVIOUSLY, I SAY
OBVIOUSLY, TO ME IT RAISES INDIVIDUAL ISSUES ABOUT
WHY SOMEBODY BOUGHT THEIR IPOD AND WHETHER THEY CAN
MEET THE CRITERIA THAT THE PLAINTIFFS HAVE SET
FORTH.

THERE'S NEVER BEEN A CLASS ACTION IN A
CONSUMER CASE WHERE ALL OF THE PLAINTIFFS ADMIT
THAT THEY BOUGHT THE ALLEGED UNWANTED PRODUCT
VOLUNTARILY.  THEY ADMIT THAT THEY WEREN'T COERCED.

AND, YOUR HONOR, WHEN THE COURT GOES BACK
TO LOOK AT THE MOORE CASE, ANOTHER DIFFERENCE TO
KEEP IN MIND IN MOORE IS MOORE WAS A CASE BROUGHT
BY A COMPETITOR.  AND SO THERE THE COURT WAS ASKING

THE QUESTION, HOW MUCH COERCION OF CONSUMERS DOES A
COMPETITOR NEED TO SHOW IN ORDER TO PROVE A CLAIM
FOR LOST PROFITS BECAUSE THEY WERE EXCLUDED FROM
THE MARKET?  THAT'S A MUCH DIFFERENT CIRCUMSTANCE
BECAUSE THERE THE ISSUE IS HOW MUCH OF THE MARKET
HAS TO BE FORECLOSED TO A COMPETITOR BY THIS TYING
IN ORDER FOR THE COMPETITOR TO HAVE A CLAIM FOR
LOST PROFITS.

AND SO IT'S ONE THING IN A CASE LIKE THAT
TO SAY, YOU KNOW, OF COURSE A QUESTIONER DOESN'T
HAVE TO SHOW THAT HE WAS COERCED AT ALL.  HE'S NOT
BUYING THE PRODUCT.  AND SO WHATEVER THE COURT SAYS
IN THAT CONTRACT DOESN'T APPLY AT LEAST DIRECTLY IN
THE CASE WHERE A CONSUMER COMES IN AND THE CONSUMER
IS SAYING I WANT TO RECOVER DAMAGES BUT I WASN'T
COERCED.

AT PAGE 14 OF OUR BRIEF WE QUOTE FROM
PROFESSOR AREDA, YOU KNOW, THE LEADING EXPERT ON
ANTITRUST LAW AND FROM HIS TREATISE AND WHAT HE
SAYS I THINK IS RELEVANT TO ALL OF THIS.  HE SAYS
THAT IF YOU WOULD HAVE PURCHASED THE TIED PRODUCT
ANYWAY, SO YOU WOULD HAVE BOUGHT AN IPOD REGARDLESS
OF THE RELATIONSHIP TO THE MUSIC STORE, YOU LACK
STANDING TO OBTAIN DAMAGES BECAUSE YOU HAVEN'T BEEN
DAMAGED BY TYING.  YOU HAVEN'T BEEN COERCED TO DO

46

ANYTHING.  YOU JUST BOUGHT THE PRODUCT, YOU WOULD

HAVE BOUGHT IT ANYWAY.

AND THEN HE SAYS, THE RESULT IS THAT

TYING ARRANGEMENT PURCHASER CONSUMER CLASS ACTIONS,

SEEKING DAMAGES CANNOT BE CERTIFIED IF THE CLASS

MIGHT INCLUDE SOME PURCHASERS WHO WOULD HAVE

PURCHASED THE TIED PRODUCT IN ANY EVENT BECAUSE

THAT PERSON HASN'T BEEN DAMAGED, HASN'T SUFFERED

ANTITRUST INJURY.  HE WOULD HAVE BOUGHT IT ANYWAY.

HERE, AS I HAVE SAID, THE PLAINTIFFS HAVE

NOT TRIED TO NARROW THEIR CLASS TO THE PEOPLE WHO

MEET THESE CHARACTERISTICS.

THE COURT:  I APPRECIATE YOUR ARGUMENT,

AND I DO NEED TO HAVE YOU BRING IT TO A CLOSE

MAINLY BECAUSE THERE ARE A COUPLE OF ISSUES THAT I

NEED TO DEAL WITH BEFORE I CAN MOVE INTO THESE MORE

ESOTERIC THEORIES THAT YOU HAVE HIGHLIGHTED FOR ME

WELL ENOUGH.  AND SO THANK YOU VERY MUCH.

MR. MITTELSTAEDT:  OKAY.  THANK YOU, YOUR

HONOR.

THE COURT:  COUNSEL, YOU RESERVED SOME OF

YOUR TIME FOR REBUTTAL.

I APOLOGIZE TO THOSE WHO ARE HERE FOR OUR

10:00 O'CLOCK HEARING, BUT I NEED TO GIVE COUNSEL

TIME FOR REBUTTAL AND WE'LL BE DONE IN ABOUT TEN

1    MINUTES.

2          MS. SWEENEY:  THANK YOU, YOUR HONOR, I

3    WILL BE BRIEF.  MR. MITTELSTAEDT'S ARGUMENT

4    FOCUSSED PRIMARILY ON THE MERITS ISSUES IN THIS

5    CASE AND I JUST WANTED TO REMIND THE COURT THAT NOT

6    ONLY IS THAT APPROPRIATE IN CLASS CERTIFICATION BUT

7    IN THIS CASE DISCOVERY HAS BEEN BIFURCATED.  WE

8    HAVE HAD NO MERITS DISCOVERY.

9          SO THE QUESTION WHETHER BURNING AND

10   RIPPING IS A VIABLE OPTION, OF COURSE WE DON'T

11   AGREE THAT IT IS A VIABLE OPTION.  THAT'S A MERITS

12   ISSUE THAT WILL BE ADDRESSED AFTER FULL DISCOVERY.

13         THE QUESTION ABOUT WHETHER THERE CAN BE

14   INTERPLAYABILITY WITHOUT VIOLATING DRM, THAT IS

15   ANOTHER MERITS QUESTION AND WE HIGHLIGHTED IN OUR

16   OPENING BRIEF THE STATEMENT OF SOME OF THE LABELS

17   THAT THEY WOULD LIKE TO SEE INTEROPERABILITY.

18         SO OBVIOUSLY THE LABELS HAVE A DIFFERENT

19   POINT OF VIEW THAN APPLE.  THAT IS APPLE'S VIEW IS,

20   WELL, WE HAVE TO DO IT THIS WAY BECAUSE OTHERWISE

21   WE WOULD BE VIOLATING COPYRIGHT LAWS.

22         SO THAT'S ANOTHER MERITS ISSUE THAT IS

23   RESERVED UNTIL AFTER PLAINTIFFS HAVE HAD AN

24   OPPORTUNITY TO CONDUCT DISCOVERY.

25         I WOULD ALSO LIKE TO CORRECT SOME OF THE

                                                      48

1    MISSTATEMENTS THAT MR. MITTELSTAEDT MADE.  HE MADE

2    CLAIMS ABOUT FIVE PLAINTIFFS IN THIS ACTION.  THERE

3    ARE THREE PLAINTIFFS, THREE NAMED PLAINTIFFS.

4         PLAINTIFF SLATTERY DISMISSED HIS CLAIM.

5    PLAINTIFF SOMERS IS A PLAINTIFF IN THE INDIRECT

6    PURCHASER ACTION, NOT THIS ACTION.

7         MR. MITTELSTAEDT SAID REPEATEDLY THAT

8    EACH OF THOSE PLAINTIFFS ADMITTED THAT HE OR SHE

9    WAS NOT COERCED INTO BUYING AN IPOD.  IN FACT, THE

10   DEPOSITION TESTIMONY READS A LITTLE DIFFERENTLY

11   THAN THAT.

12        PLAINTIFF TUCKER, WHO PURCHASED TWO

13   IPODS, SHE PURCHASED AN IPOD AFTER HER FIRST ONE

14   BROKE, WAS ASKED BY MR. MITTELSTAEDT, WHY DID YOU

15   BUY THAT?  AND SHE SAID BECAUSE MY FIRST ONE BROKE.

16        HE THEN ASKED, AND HOW DID YOU CHOOSE AN

17   IPOD RATHER THAN SAY AN IRIVER?  AND SHE ANSWERED,

18   BECAUSE ALL OF MY MUSIC WAS ALREADY IN ITUNES AND

19   THAT WOULD HAVE BEEN THE ONLY WAY TO KEEP MY MUSIC.

20        AND I MENTION THIS JUST TO SHOW THAT

21   THERE ARE DISCREPANCIES IN THE RECORD AND THERE ARE

22   SIMILAR TESTIMONY BY THE OTHER PLAINTIFFS BUT

23   NONETHELESS, AS YOUR HONOR HAS RECOGNIZED, THE

24   QUESTION IS NOT WHETHER WE CAN SHOW ON A CLASS

25   MEMBER BY CLASS MEMBER BASIS WHETHER THERE WAS

49

COERCION BUT WHETHER THERE WAS COERCION AT THE
MARKET LEVEL.

AND THE MURPHY CASE IS STILL GOOD LAW.
IT'S TRUE THAT IN THAT CASE THE PLAINTIFF DID NOT
PREVAIL BUT THE COURT STATED THE APPROPRIATE
STANDARD, WHICH WAS ALSO STATED IN THE MOORE CASE
WHICH WE TALKED ABOUT EARLIER.

PROFESSOR NOLL'S COMMENTS ALSO HAVE BEEN
A LITTLE BIT DISTORTED IN ARGUMENT. PROFESSOR NOLL
HAS IN HIS 60 PAGE REPORT, WHICH APPLE DOESN'T
ADDRESS AT ANY TIME IN ITS BRIEF OR IN ARGUMENT, IN
HIS REPORT HE DEVOTED A NUMBER OF PAGES TO
EXPLAINING HOW AN ECONOMIST WOULD GO ABOUT
DETERMINING WHETHER THERE WAS AN EFFECT ON THE
MARKET, THAT IS, WHETHER THERE WAS MARKET LEVEL
COERCION AND I BELIEVE THAT THE RELEVANT PAGES ARE
39 THROUGH 49. THAT'S IN EXHIBIT 1 TO MY
DECLARATION.

PROFESSOR NOLL EXPLAINED IN HIS
DEPOSITION THAT YOU DON'T HAVE TO SHOW THAT EACH
CLASS MEMBER WAS COERCED. AND THOSE BULLET POINTS
THAT MR. MITTELSTAEDT SENT UP TO THE COURT, THAT
WAS AN EXAMPLE THAT PROFESSOR NOLL GAVE OF HOW SOME
PEOPLE, SOME MEMBERS OF THE CLASS WERE COERCED.

AND THE QUESTION IS WHETHER ANY OF THOSE

CLASS MEMBERS WERE COERCED THAT IT HAD AN EFFECT ON

MARKET POWER POSSESSED BY APPLE?  IF IT APPRECIABLY

ENHANCED APPLE'S MARKET POWER, THEN APPLE WAS ABLE

TO INCREASE THE PRICE OF IPODS AND THEREBY INCREASE

THE PRICE CHARGED TO EACH AND EVERY MEMBER OF THE

CLASS.

AND THIS IS WHERE WE GO BACK TO WHAT WE

SAID IN OUR EARLIER OPENING PAPERS AND THAT IS THAT

APPLE HAS AN UNREMITTING POLICY.  IT HAS THE

TECHNOLOGICAL RESTRICTION.

IN EVERY ITUNES DOWNLOAD AND IN EVERY

IPOD THEREFORE IF ENOUGH CLASS MEMBERS WERE COERCED

TO EFFECT IT AT THE MARKET LEVEL, THEN EVERY CLASS

MEMBER PAID AN OVERCHARGE.

APPLE CITES A BUNCH OF TYING CASES AND

LOOKING, YOU JUST HAVE TO READ THE FACTS OF THOSE

CASES WHERE THE COURTS DENY THE CERTIFICATION TO

SEE THAT THEY'RE NOT APPLICABLE HERE.

AND THE COLBURN CASE, WHICH

MR. MITTELSTAEDT MENTIONED A FEW TIMES, THE

PLAINTIFF INTRODUCED EVIDENCE OF ONE CONTRACT, HIS

CONTRACT AND NO OTHER EVIDENCE THAT THERE WERE

SIMILARLY SITUATED PLAINTIFFS IN THE CLASS.

THERE WAS NO EVIDENCE THAT THERE WERE

OTHER SIMILAR CONTRACTS.

```
1            SO THOSE CASES ARE INAPPOSITE FOR A

2    NUMBER OF REASONS.

3            AND I WANT TO TAKE ISSUE WITH

4    MR. MITTELSTAEDT'S STATEMENT THAT THE PLAINTIFFS

5    AGREED THAT THE LESS SIGNIFICANT DAMAGES

6    METHODOLOGY IS APPROPRIATE IN THE TYING CASE.

7            IN FACT, AS PROFESSOR NOLL TESTIFIED AT

8    HIS DEPOSITION, IT'S JUST -- IT'S NOT THE CORRECT

9    WAY TO GO ABOUT PROVING DAMAGES BECAUSE YOU HAVE TO

10   LOOK AT THE "BUT FOR WORLD."  YOU HAVE TO CONCEDE

11   FROM AN ECONOMIST POINT OF VIEW WHAT THE MARKET

12   WOULD LOOK LIKE IN THE ABSENCE OF THE

13   ANTICOMPETITIVE MARKET.

14           AND SO IF WE WERE JUST, OF COURSE, TO SIT

15   DOWN TODAY AND LOOK AT A COMPETING PRODUCT, THAT'S

16   NOT THE REAL BUT FOR WORLD BECAUSE, IN FACT, THE

17   PRICE OF THAT COMPETING PRODUCT IS AFFECTED BY THE

18   TIE, BY THE MONOPOLISTIC CONDUCT BY APPLE.

19           SO IT'S NOT A REALISTIC PICTURE AND

20   PROFESSOR NOLL TESTIFIED WHY THAT WAS NOT AN

21   APPROPRIATE METHODOLOGY.

22           WITH RESPECT TO RESELLERS, WE EXPLAINED

23   IN OUR BRIEF, WE CITED NUMEROUS CASES FOR THE

24   PROPOSITION THAT IT'S PERFECTLY APPROPRIATE TO

25   INCLUDE RESELLERS IN THE PLAINTIFF CLASS.
```

PROFESSOR NOLL EXPLAINED THROUGHOUT HIS
60 PAGE REPORT HOW HE WOULD PROPOSE DEALING WITH
RESELLERS.  HE STATED BOTH AT HIS DEPOSITION AND IN
HIS REPORT THAT THEY MIGHT HAVE TO BE TREATED A
LITTLE DIFFERENT BUT HIS METHODOLOGY TAKES THAT
INTO ACCOUNT.

I'M GOING TO --

MS. SWEENEY:  CUT ME OFF.

THE COURT:  -- ASK YOU TO BRING YOUR
ARGUMENT TO A CLOSE.

MS. SWEENEY:  ALL RIGHT.  I APPRECIATE
YOUR INDULGENCE, YOUR HONOR.  THANK YOU VERY MUCH.

THE COURT:  ALL RIGHT.  WELL, I MAKE THE
SAME STATEMENT TO THE PLAINTIFF THAT I MADE TO THE
DEFENSE AND THAT IS I HAVE BENEFITTED FROM BOTH THE
BRIEFING AND THE ARGUMENT HERE ON THIS ISSUE.

THE TECHNOLOGICAL DEVELOPMENTS THAT HAVE
BROUGHT US THE KIND OF DEVICES AND THE OPPORTUNITY
TO USE THOSE DEVICES IN A DIFFERENT WORLD AND IN
THE PAST PRESENTS DIFFERENT PROBLEMS TO THE COURT
IN THE CONTEXT OF A CASE OF THIS KIND.  AND SO ON
THIS MOTION IT COULD BE THAT I'LL INVITE YOU BACK
TO ADDRESS SOME OF THESE MATTERS.

AGAIN, BECAUSE I REGARD THIS AS A PROCESS
AS OPPOSED TO AN EVENT, I DO WANT TO GO BACK AND

53

LOOK AT, AS I INDICATED, AGAIN, THE MARKET LEVEL
COERCION ISSUE BECAUSE IT IS ONE OF THE KEYS TO WHY
I WOULD BE ABLE TO CERTIFY THE CLASS IN THE WAY
THAT IT IS BEING PROPOSED TO THE COURT.

BUT I HOPE THAT THAT WON'T DELAY ME TOO
LONG IN GIVING YOU A DECISION ON THIS.

AND IF I NEED MORE FROM YOU, I WON'T
HESITATE TO ASK.

THANK YOU BOTH VERY MUCH.

MS. SWEENEY:  THANK YOU, YOUR HONOR.

MR. MITTELSTAEDT:  THANK YOU, YOUR HONOR.

(WHEREUPON, THE PROCEEDINGS IN THIS MATTER
WERE CONCLUDED.)