1  Robert A. Mittelstaedt  #60359
   ramittelstaedt@jonesday.com
2  Craig E. Stewart  #129530
   cestewart@jonesday.com
3  JONES DAY
   555 California Street, 26th Floor
4  San Francisco, CA  94104
   Telephone:     (415) 626-3939
5  Facsimile:     (415) 875-5700

6  Attorneys for Defendant
   APPLE INC.
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11

12  THE APPLE iPOD iTUNES ANTI-TRUST        Case No. **C 05-00037 JW**
    LITIGATION.                                      **C 06-04457 JW**
13
                                           **DEFENDANT'S MOTION FOR**
14                                         **JUDGMENT ON THE PLEADINGS**
                                           **AS TO PLAINTIFFS' TYING**
15                                         **CLAIMS**

16                                         **Date:**    March 23, 2009
                                           **Time:**    9:00 A.M.
17                                         **Place:**   Courtroom 8, 4th floor

18

19

20

21

22

23

24

25

26

27

28

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................... 1

RELIEF SOUGHT ...................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

INTRODUCTION ....................................................................................................... 1

PROCEDURAL BACKGROUND ............................................................................. 2

FACTS/ALLEGATIONS ........................................................................................... 2

ARGUMENT ............................................................................................................... 3

I.     SECTION 1 DOES NOT APPLY BECAUSE THE ALLEGED TIE DOES NOT
       INVOLVE ANY CONCERTED ACTION. ................................................... 4

II.    EVEN IF SECTION 1 APPLIES, PLAINTIFFS' TYING CLAIM IS INVALID
       AS A MATTER OF LAW. ............................................................................. 5

       A.     No Tie Exists Where The Products Are Separately Available And Have
              Separate Uses. ...................................................................................... 5

       B.     Applying Tying Law Here Would Violate Basic Antitrust Principles. ................. 7

       C.     Even If A Tie Could Be Found When Products Are Separately Available,
              Plaintiffs Do Not Allege That They Were Coerced. ............................................. 11

III.   FOR THE SAME REASONS, PLAINTIFFS' TYING ALLEGATIONS FAIL TO
       STATE A CLAIM UNDER STATE LAW. .................................................. 15

IV.    LEAVE TO AMEND WOULD BE FUTILE. ............................................... 16

CONCLUSION ........................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*Advance Bus. Sys. & Supply Co. v. SCM Corp.*
  415 F.2d 55 (4th Cir. 1969)..................................................................................... 7

*Amerinet, Inc. v. Xerox Corp.*
  972 F.2d 1483 (8th Cir. 1992)................................................................................. 7

*Belton v. Comcast Cable Holdings, LLC*
  151 Cal. App. 4th 1224 (2007) ............................................................................. 15

*Bondi v. Jewels by Edwar, Ltd.*
  267 Cal. App. 2d 672 (1968)................................................................................. 15

*Chase Parkway Garage Inc. v. Subaru, Inc.*
  94 F.R.D. 330 (D. Mass. 1982).............................................................................. 13

*Colburn v. Roto-Rooter Corp.*
  78 F.R.D. 679 (N.D. Cal. 1978)............................................................................. 13

*Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*
  749 F.2d 154 (3d Cir. 1984).................................................................................. 12

*Copperweld Corp. v. Indep. Tube Corp.*
  467 U.S. 752 (1984)................................................................................................ 4

*County of Tuolumne v. Sonora Cmty. Hosp.*
  236 F.3d 1148 (9th Cir. 2001)............................................................................... 15

*Crossland v. Canteen Corp.*
  711 F.2d 714 (5th Cir. 1983)................................................................................. 12

*Daniels v. Amerco*
  No. 81 CIV.3801, 1983 WL 1794 (W.D. N.Y. Mar. 10, 1983)............................... 13

*Datagate, Inc. v. Hewlett-Packard Co.*
  60 F.3d 1421 (9th Cir. 1995)................................................................................... 4

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*
  504 U.S. 451 (1992)........................................................................................... 5, 8

*Freeland v. AT & T Corp.*
  238 F.R.D. 130 (S.D.N.Y. 2006) .......................................................................... 12

*Grappone, Inc. v. Subaru of New England, Inc.*
  858 F.2d 792 (1st Cir. 1988)................................................................................. 10

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*
896 F.2d 1542 (9th Cir. 1989) ............................................................... 3

*Hill v. A-T-O, Inc.*
535 F.2d 1349 (2d Cir. 1976) ............................................................... 14

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*
547 U.S. 28 (2006) ............................................................................... 10

*International Salt Co. v. United States*
332 U.S. 392 (1947) ............................................................................... 8

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*
466 U.S. 2 (1984) ...................................................................... passim

*Little Caesar Enters., Inc. v. Smith*
895 F. Supp. 884 (E.D. Mich. 1995) ..................................................... 12

*Moore v. Jas. H. Matthews & Co.*
550 F.2d 1207 (9th Cir. 1977) ....................................................... 11, 14

*Moore v. Jas.H. Matthews & Co.*
473 F.2d 328 (9th Cir. 1973) ............................................................... 14

*Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'n, Inc.*
63 F.3d 1540 (10th Cir. 1995) ............................................................. 11

*Murphy v. Bus. Cards Tomorrow, Inc.*
854 F.2d 1202 (9th Cir. 1988) ............................................................. 13

*N. Pac. Ry. Co. v. United States*
356 U.S. 1 (1958) ...................................................................... 1, 5, 14

*Olmstead v. Amoco Oil Co.*
No. 76-247, 1977 WL 1416 (M.D. Fla. Jun. 16, 1977) ........................... 13

*Paladin Assocs., Inc. v. Montana Power Co.*
328 F.3d 1145 (9th Cir. 2003) ............................................................. 11

*Response of Carolina, Inc. v. Leasco Response, Inc.*
537 F.2d 1307 (5th Cir. 1976) ............................................................... 6

*Schor v. Abbott Lab.*
457 F.3d 608 (7th Cir. 2006) ............................................................. 5, 9

*Siegel v. Chicken Delight, Inc.*
  448 F.2d 45 (9th Cir. 1971)..................................................................................... 14

*Smith v. Denny's Rests., Inc.*
  62 F.R.D. 459 (N.D. Cal. 1974)............................................................................... 13

*Standard Oil of Cal. v. United States*
  337 U.S. 293 (1949).................................................................................................. 10

*State of Illinois ex rel. Burris v. Panhandle E. Pipe Line Co.*
  935 F.2d 1469 (7th Cir. 1991).................................................................................... 9

*Tic-X-Press, Inc. v. Omni Promotions Co. of Ga.*
  815 F.2d 1407 (11th Cir. 1987).................................................................................. 11

*Town of Concord. v. Boston Edison Co.*
  915 F.2d 17 (1st Cir. 1990)......................................................................................... 8

*Trans Sport, Inc. v. Starter Sportswear, Inc.*
  964 F.2d 186 (2d Cir. 1992)........................................................................................ 11

*Ungar v. Dunkin' Donuts of Am., Inc.*
  531 F.2d 1211 (3d Cir. 1976)...................................................................................... 12

*United States v. Microsoft*
  147 F.3d 935 (D.C. Cir. 1998)...................................................................................... 9

*Verizon Commc'n, Inc. v. Law Offices of Curtis V. Trinko, LLP*
  540 U.S. 398 (2004).............................................................................................. 8, 9

*Waldo v. N. Am. Van Lines, Inc.*
  102 F.R.D. 807 (W.D. Pa. 1984)................................................................................ 13

*Ways & Means, Inc., v. IVAC Corp.*
  506 F. Supp. 697 (N.D. Cal. 1979) ......................................................................... 5, 7

*White & White, Inc. v. Am. Hosp. Supply Corp.*
  723 F.2d 495 (6th Cir. 1983)....................................................................................... 12

*Will v. Comprehensive Accounting Corp.*
  776 F.2d 665 (7th Cir. 1985).................................................................................. 4, 12

## Statutes and Codes

Cal. Bus. & Prof. Code § 16720 ................................................................................. 15

Cal. Bus. & Prof. Code § 17200 et seq. .............................................................. 15, 16

Cal. Civ. Code § 1750 ........................................................................................................ 16

Other Authorities

3A P. Areeda, H. Hovenkamp & E. Elhauge, *Antitrust Law* (2d ed. 2004) ................................ 5, 9

9 P. Areeda, H. Hovenkamp & E. Elhauge, *Antitrust Law* (2d ed. 2004) ...................................... 10

10 P. Areeda, H. Hovenkamp & E. Elhauge, *Antitrust Law* (2d ed. 2004) .................................... 12

C. Leslie, *Unilaterally Imposed Tying Arrangements and Antitrust's
Concerted Action Requirement*
60 Ohio St. L. J. 1773 (1999) ........................................................................................... 4

I ABA Section of Antitrust Law, *Antitrust Law Developments* (6th ed. 2007) .............................. 9

Rules

Federal Rules of Civil Procedure
Rule 12(b)(6) .................................................................................................................. 2
Rule 12(c) ...................................................................................................................... 2

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 23, 2009, at 9 A.M., or as soon thereafter as the matter may be heard, defendant Apple Inc. will bring on for hearing this motion for judgment on the pleadings on Counts One and Four of the Consolidated Complaint and, to the extent they also assert a claim for unlawful tying, Counts Five and Six.

## RELIEF SOUGHT

Judgment on the pleadings in defendant's favor on Counts One and Four and on Counts Five and Six to the extent they assert a claim of unlawful tying.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The law of tying applies when there is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5-6 (1958) (footnote omitted). "[W]here the buyer is free to take either product by itself there is no tying problem." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 n.17 (1984) (quoting *N. Pac. Ry. Co.*, 356 U.S. at 6 n.4).

Here, Apple does not condition the sale of the alleged tying product on the purchase of the alleged tied product. Rather, Apple offers the two products separately. Consumers are free to obtain either iTunes Store content (the alleged tying product) or iPods (the alleged tied product) by themselves. Plaintiffs do not, and cannot, allege otherwise. That alone defeats the tying claim.

Plaintiffs' assertion that the alleged tied product enjoys, as the Court described it, "enhanced utility" over competing products in that it interoperates seamlessly with the alleged tying product does not constitute tying. No court has ever held that anything akin to "enhanced utility" is barred by tying law. To the contrary, the Ninth Circuit has held that tying law is not designed to force innovators to make their new products interoperable with competing products.

Here, plaintiffs' self-proclaimed goal is to use the law of tying to force interoperability, as the Court noted in certifying a class for injunctive relief. Dkt. 165, p. 9 ("Plaintiffs' first and foremost goal is to enjoin Apple from continuing to obstruct interoperability . . ."); Dkt. 196,

p. 11.  Expanding tying law in that fashion would discourage and penalize the very innovation that the antitrust laws are designed to encourage.  It is one thing to require a manufacturer to offer its products separately, as Apple already does.  But mandating a manufacturer to make its products interoperable with competitors' products far exceeds the scope of tying law, and would be contrary to the purposes of the antitrust laws.

Independently, plaintiffs' tying claim suffers from another fatal defect—plaintiffs were not "coerced" to buy an iPod within the meaning of tying law.  As we show below, the courts have uniformly held that individual coercion is an essential characteristic of a tying claim.  "Market level" coercion, however it may be defined, is insufficient.

## PROCEDURAL BACKGROUND

In its December 22, 2008 class certification decision, the Court stated:

> The Court has been persuaded, given the unique facts of this case, to give closer scrutiny to whether such market-level coercion, as alleged by Plaintiffs, is sufficient to bring their allegations within the ambit of a Section 1 tying claim.  In addition to whether market-level coercion can be the basis of a cognizable tying claim, the Court has been persuaded to consider whether, as a matter of law, coercion can be found where there is no requirement that the tying and tied products be purchased together.  In this case, products sold through the iTMS and iPods are sold separately by Defendant, without any requirement that they be purchased together.  Rather, Defendant's products are allegedly unnecessarily restricted on a technological basis, such that they have enhanced utility if both products are purchased.

Dkt. 197, p. 7.  The Court accordingly invited Apple to seek reconsideration of the "legal basis of Plaintiffs' tying claim."  *Id.*  The Court further directed that the motion should be filed under Rule 12(b)(6) or Rule 12(c).  Dkt. 198, p. 1 & n.1.  Having answered the complaint, Apple files this motion for judgment on the pleadings under Rule 12(c).

## FACTS/ALLEGATIONS

Plaintiffs do not, and cannot, allege that Apple refuses to offer iTunes Store music/video separately from iPods.  While plaintiffs assert that they obtained iPods and music from the iTunes Store (Cons. Complt. ¶ 26), none of them alleges that he, she or anyone else was required to buy one as a condition of purchasing the other.

Rather than denying that the products are separately available, plaintiffs' theory is that Apple's products enjoy "enhanced utility" (to use the Court's phrase) in that the iPod is the only portable digital device that can directly play iTunes Store music or video. Cons. Complt. ¶¶ 43-44. Plaintiffs do not, and cannot, allege that iPods work only with iTunes Store content, or that iTunes Store content works only on iPods. Indeed, they admit that iTunes Store content can be played on computers (Dkt. 77 (¶¶ 40, 43, 54)) and that iTunes Store music can be burned to a CD that can be played just as any music CD can be played, including on home or car stereos, boom boxes and portable CD players. *Id.* (¶¶ 42, 43).[1] Against those admissions, they are reduced to alleging that, for one of the multiple uses of iTunes Store content, an iPod is the only portable digital player that works directly with iTunes Store content. As we show below, this "enhanced utility" theory does not constitute unlawful tying.

## ARGUMENT

"Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Here, Apple is entitled to judgment as a matter of law on the tying claim for three independent reasons. First, section 1 of the Sherman Act applies only to concerted action, not to the unilateral conduct at issue here. This threshold ground, not previously presented or ruled on by the Court, provides an independent basis for rejecting the tying claim. Second, even if section 1 applied, no tie exists because Apple has not conditioned the sale of iTunes Store

---

[1] Although not key to this motion, iTunes Store music can also be played on competing portable digital players by burning the music to a CD. That is why plaintiffs allege only that an iPod is required if consumers wish to "play their [iTunes Store] music **directly** on a Digital Music Player." Cons. Complt. ¶ 43 (emphasis added). For their admissions that the music can be played "indirectly" on competing devices, *see* Dkt. 175, pp. 8-9. Moreover, it is undisputed that the record labels that own the music required Apple and the other online music stores to use anti-piracy digital rights management software, and that Apple chose to develop its own software rather than design its products using Microsoft's software. *See* Tucker Complaint, Dkt. 1, No. 06-04457 JW, ¶¶ 33-34; Cons. Complt. ¶¶ 40-41. More recently, the record labels have removed the DRM requirement, starting with EMI in 2007 and now extending to all the labels. As a result, iTunes Store music will be entirely DRM-free.

content on the purchase of iPods.  Rather, iPods and iTunes Store content are separately available to all consumers, and have separate, independent uses.  Third, as another independent ground for judgment in Apple's favor, plaintiffs do not allege that they were coerced to buy the alleged tied product, and their theory of "market level" coercion is insufficient as a matter of law.

## I.      SECTION 1 DOES NOT APPLY BECAUSE THE ALLEGED TIE DOES NOT INVOLVE ANY CONCERTED ACTION.

Plaintiffs' tying theory fails at the outset for lack of any concerted action.  Plaintiffs assert their tying claim under section 1 of the Sherman Act, 15 U.S.C. § 1.  But section 1 reaches only "unreasonable restraints of trade effected by a contract, combination . . . or conspiracy between separate entities." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) (internal quotation marks omitted) (quoting 15 U.S.C. § 1) (emphasis omitted).  It does not reach "[t]he conduct of a single firm," which "is governed by § 2 alone." *Id.* at 767.

Plaintiffs do not allege any concerted action.  The sole basis for their tying claim is Apple's own, unilateral decisions.

The theory on which courts have applied section 1 to certain tying claims is that the purchaser has been coerced into agreeing with the seller to buy the two products together as a package, thus forming a combination. *E.g., Datagate, Inc. v. Hewlett-Packard Co.*, 60 F.3d 1421, 1427 (9th Cir. 1995) ("[T]he 'contract' requirement is satisfied in tie-in cases by the coerced *sales contract* for the tied item.") (emphasis in original).  As the courts have recognized, this theory requires "exceeding subtlety," with the victim of the alleged tie cast as a co-conspirator for agreeing with the seller's demand that the victim buy both products. *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 669 (7th Cir. 1985).[2]

That theory, whatever its validity in other circumstances, makes no sense when the seller is not conditioning the purchase of one product on the purchase of another, and the only alleged

---

[2]  *See also* C. Leslie, *Unilaterally Imposed Tying Arrangements and Antitrust's Concerted Action Requirement*, 60 Ohio St. L. J. 1773 (1999) (arguing that applying section 1 on the basis of an agreement between the seller and the buyer is doctrinally unsound and inconsistent with the meaning of agreement under the antitrust laws).

basis for the tying claim is that the defendant's products possess "enhanced utility." In that circumstance, the conduct at issue is the defendant's unilateral decision. Thus, as explained by the leading antitrust treatise, "neither a § 1 'agreement,' nor a Clayton Act § 3 'condition or understanding' is involved, so any incremental liability that attaches to such claims does not apply." 3A P. Areeda, H. Hovenkamp & E. Elhauge, *Antitrust Law*, ¶ 776d, at p. 254 (2d ed. 2004).

## II. EVEN IF SECTION 1 APPLIES, PLAINTIFFS' TYING CLAIM IS INVALID AS A MATTER OF LAW.

### A. No Tie Exists Where The Products Are Separately Available And Have Separate Uses.

The separate availability of iTunes Store content and iPods defeats any claim that Apple has tied those products together. As noted, tying law prohibits agreements to "sell one product . . . only on the condition that the buyer also purchases a different (or tied) product." *N. Pac. Ry.,* 356 U.S. at 5-6 (footnote omitted); *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 540 (9th Cir. 1983) ("[T]he seller must condition the sale of the tying product on the buyer's purchase of the tied product."), *overruled sub silentio on other grounds by Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034 (9th Cir. 1987); *Schor v. Abbott Lab.*, 457 F.3d 608, 610 (7th Cir. 2006) ("Abbott sells ritonavir as part of Kaletra, but this is not a tie-in because ritonavir is available separately . . . ."); *Ways & Means, Inc., v. IVAC Corp.*, 506 F. Supp. 697, 700 (N.D. Cal. 1979) ("[T]here must in fact exist a tying scheme by which purchasers are required to buy one commodity or service in order to obtain a second, distinct commodity or service."). As these cases establish, where the products are separately available, tying law does not apply.

Nothing in *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 463 (1992), is to the contrary. There, Kodak would sell copier replacement parts to the tied customers only if they agreed to obtain service from Kodak. Those customers could not buy parts without buying service. That was the tie. It is true that Kodak sold parts to ***another*** category of customers (those that provided their own service rather than using independent service organizations) without any conditions—a fact on which the Supreme Court relied to reject Kodak's argument that parts and

service were not two separate products. But the customers in that second category did not have a tying claim. It was only the first category of customers—the copier owners that did not provide their own service—that were victims of the tie. And they were tying victims because Kodak refused to sell parts to them separately from service. That is not the situation here. Here, Apple indisputably makes its products separately available to **all** customers.

Likewise irrelevant are the so-called technological tying cases on which plaintiffs have relied. First, in those cases, the claim was that the tying product would not work at all for any purpose without the tied product. *Foremost Pro,* 703 F.2d at 542 (new Kodak camera required use of new Kodak film, paper and photo processing chemicals); *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1327 (5th Cir. 1976) (defendant's software program allegedly worked only on defendant's hardware). That is not the case here. The iPod works without iTunes Store content, and iTunes Store content may be played without an iPod—and plaintiffs make no allegation to the contrary.

Second, even where one product was required for the other to have any function, the Ninth Circuit found no unlawful tie. In *Foremost Pro*, the Ninth Circuit held a claim that the "effective use" of one product "necessitates purchase of some or all of the others" is insufficient to establish the type of coerced or forced purchase of two products that constitute unlawful tying. 703 F.2d at 543. "Any other conclusion would unjustifiably deter the development and introduction of those new technologies so essential to the continued progress of our economy." *Id.* "Quite obviously, a firm that pioneers new technology will often introduce the first of a new product type along with related, ancillary products that can only be utilized effectively with the newly developed technology." *Id.* at 542. But the Ninth Circuit held that "the introduction of technologically related products, even if incompatible with the products offered by competitors, is alone neither a predatory nor anticompetitive act." *Id.* at 544.[3]

---

[3] These observations by the Ninth Circuit address the issue raised by this Court at the class certification hearing as to how the traditional law of tying should be applied in this age of technological innovation. Dkt. 199, p. 29. As the Ninth Circuit made clear, the law of tying has a limited role, and it is not designed to force interoperability. Indeed, as discussed below (pp. 9-10), expanding the law of tying as plaintiffs suggest would thwart the very innovation on which

(continued)

Plaintiffs have also relied on cases in which the courts stated or held that pricing policies that force consumers to buy an unwanted product may constitute unlawful tying. *E.g., Ways & Means*, 506 F. Supp. at 701 (stating in *dictum* that tying may exist where, as a result of the package pricing, "the only viable economic option" is to purchase the tying product and the tied product together but granting summary judgment for defendant because 25% of purchases of the alleged tied product were made separately despite package pricing).[4] But those cases are limited to package pricing that rendered the products not separately available at all, for any purpose. Plaintiffs do not allege that Apple engages in any such practice. Indeed, plaintiffs do not allege any price difference between obtaining the products together or separately.

In its earlier order, this Court noted plaintiffs' allegation that, within the "relevant markets," the only legal downloaded music files that could be played directly on an iPod are iTunes Store files. Even if that were true, however, it would not constitute an unlawful tie. It would establish only that the two products are needed for that one particular purpose. It would not mean that iPods and iTunes Store songs do not have other valuable, separate uses, or that they are not separately available. In any event, as the Ninth Circuit held in *Foremost Pro*, no unlawful tie exists even when the two products cannot be used separately for any purpose. *See supra,* p. 6.

### B. Applying Tying Law Here Would Violate Basic Antitrust Principles.

In addition to being unsupported by any authority, plaintiffs' proposed expansion of tying law would be contrary to basic antitrust principles. Tying law is not designed to evaluate or punish business decisions that might create incentives for consumers to purchase two products together but that do not rise to the level of a refusal to sell the products separately. When a company refuses to sell two products separately, the tie is easily discerned and the justification, if any, for such a policy can typically be readily evaluated. By contrast, when the company already

---

our economy depends and which the antitrust laws are designed to promote.

[4] *See also Advance Bus. Sys. & Supply Co. v. SCM Corp.*, 415 F.2d 55, 62 (4th Cir. 1969) (finding a tie where the price of using defendant's copier with a rival's supplies was so high that the court concluded that the copier and supplies "cannot realistically be regarded as separately available"); *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1500 (8th Cir. 1992) (rejecting tying claim where products were separately available, and package pricing was not extreme).

offers the products separately, no such straightforward analysis is possible. As this case illustrates, consumers might decide to buy two separately offered products for any number of reasons—*e.g.,* the products may work better together than with other products, it may be more convenient to purchase them together, both products may be the best in their category, etc.

The law of tying does not provide any meaningful guidance for evaluating the antitrust significance of such factors. If relative inconvenience or utility were enough to create a tie, at what point would the inconvenience or enhanced utility rise to that level? If it takes two minutes to burn songs to a CD, is that too much inconvenience or utility? What if it takes five minutes? Similarly, if a tie could be found when the products can be used separately for some but not all purposes, at what point would a tie exist? For how many uses must they be required together before a tie will be found?

The Supreme Court has warned that courts should not impose antitrust duties that they "cannot explain or adequately and reasonably supervise." *Verizon Commc'n, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 415 (2004) (internal quotation marks omitted). That, however, is precisely what plaintiffs are inviting this Court to do by their unprecedented, innovation-threatening theory of tying. *See also Town of Concord. v. Boston Edison Co.*, 915 F.2d 17, 22 (1st Cir. 1990) (Breyer, J.) ("[A]ntitrust rules are court-administered rules. They must be clear enough for lawyers to explain them to clients. They must be administratively workable and therefore cannot always take account of every complex economic circumstance or qualification.").

The defect in plaintiffs' theory is also revealed by considering remedies. When a seller refuses to sell two products separately and that policy is found unlawful, the remedy is straightforward—the company must offer the two products separately. For example, in *International Salt Co. v. United States*, 332 U.S. 392 (1947), the defendant was ordered simply to offer its salt-using machines for sale without forcing customers to buy salt from it. Similarly, Kodak could have avoided liability (or remedied any violation) by offering copier parts to anyone without any condition that they agree to purchase service only from Kodak. *See Eastman Kodak Co.,* 504 U.S. at 463. Here, however, Apple already offers iPods and iTunes Store content

separately, so avoiding plaintiffs' theory of liability would require Apple to do something more. Indeed, Apple would be required not only to change the design of its products but also to license Microsoft's DRM or license its own DRM to competitors. No case has ever found tying in these circumstances, where formulating a remedy would require the Court to engage in product design or determine the terms and conditions of licenses.

Most importantly, plaintiffs' theory would penalize the very conduct that the antitrust laws were designed to encourage. The Supreme Court has made clear that the Sherman Act must be applied in a way that "safeguard[s] the incentive to innovate." *Verizon Commc'ns,* 540 U.S. at 407. "Innovation . . . is the single most important force for improving productivity and national economic welfare." 3A P. Areeda, H. Hovenkamp & E. Elhauge, *Antitrust Law,* ¶ 776, at p. 265 (2d ed. 2004). Thus, even when a company has monopoly power, it "is permitted and indeed encouraged to compete aggressively on the merits, and any success it may achieve solely through the process of invention and innovation is necessarily tolerated by the antitrust laws." *Foremost Pro*, 703 F.2d at 544-45.[5]

This policy in favor of innovation and aggressive competition would be impaired if tying law were applied to require companies to design their products or license technology so that their products are as interoperable with their competitors' products as with their own. Any such requirement would be contrary to the settled principle that companies, even those with monopoly power, do not have any general duty to assist their competitors. *Verizon Commc'ns*, 540 U.S. at 411 (as a general rule, "there is no duty [under the antitrust laws] to aid competitors").[6] These concerns apply with particular force in this case, where the iPod and the iTunes Store have been

---

[5] In accord are *United States v. Microsoft*, 147 F.3d 935, 948 (D.C. Cir. 1998) ("[A]ny dampening of technological innovation would be at cross-purposes with antitrust law."); I ABA Section of Antitrust Law, *Antitrust Law Developments*, 267 (6th ed. 2007) ("The antitrust laws embody a strong policy favoring innovative activity.").

[6] *See also Schor*, 457 F.3d at 610 ("Cooperation is a *problem* in antitrust, not one of its obligations.") (emphasis in original); *State of Illinois ex rel. Burris v. Panhandle E. Pipe Line Co.*, 935 F.2d 1469, 1484 (7th Cir. 1991) ("Monopolists needn't acquiesce to every demand placed upon them by competitors or customers; a monopolist's duties are negative—to refrain from anticompetitive conduct—rather than affirmative—to promote competition.").

widely acclaimed as among the most innovative, and the most popular, consumer products ever. This is conduct that should be encouraged, not penalized by misapplying the antitrust laws to condemn it.

The Ninth Circuit recognized these principles in *Foremost Pro* when, as noted above, it held in rejecting the plaintiff's tying claim that "the introduction of technologically related products, **even if incompatible with the products offered by competitors**, is alone neither a predatory or anticompetitive act." 703 F.2d at 545 (emphasis added). The Ninth Circuit explained that the "creation of technological incompatibilities . . . increases competition" in two ways: it provides consumers "with a choice among differing technologies" and it provides "competing manufacturers the incentive to enter the new product market by developing similar products of advanced technology." *Id.* at 542. Condemning such decisions "would unjustifiably deter the development and introduction of those new technologies so essential to the continued progress of our economy." *Id.* at 543. The Ninth Circuit reached this result even though Kodak adopted the challenged product design after having achieved market power and even though Kodak's camera would not function at all without Kodak's film. The Ninth Circuit's ruling applies *a fortiori* in this case, where Apple is not alleged to have had market power when it designed its products, and where its products have valuable separate uses.

Plaintiffs' overly-expansive view of tying is also contrary to the wide recognition among courts and commentators that tying arrangements are not generally anticompetitive and are frequently beneficial. In contrast to the earlier view that "[t]ying agreements serve hardly any purpose beyond the suppression of competition," *Standard Oil of California v. United States*, 337 U.S. 293, 305 (1949), "[t]oday it seems quite clear that most tie-ins benefit competition, even when the defendant has tying product power." 9 P. Areeda, H. Hovenkamp & E. Elhauge, *Antitrust Law,* ¶ 1720a, at 220 (2d ed. 2004); *see also Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 35 (2006) ("Over the years, . . . this Court's strong disapproval of tying arrangements has substantially diminished."); *Grappone, Inc. v. Subaru of New England, Inc.*, 858 F.2d 792, 794 (1st Cir. 1988) (Breyer, J.) ("[B]oth the majority and minority opinions in [the Supreme Court 's decision in *Jefferson Parish*] recognized that tying's anticompetitive mechanism is not

obvious."). Thus, no reason exists to expand tying law outside of its longstanding, traditional boundaries of a seller refusing to sell its products separately.

### C. Even If A Tie Could Be Found When Products Are Separately Available, Plaintiffs Do Not Allege That They Were Coerced.

For the reasons discussed above, the separate availability of iTunes Store content and iPods entirely defeats plaintiffs' tying claim. But if, contrary to the law, a tie could be found based on the "enhanced utility" for one particular use, these plaintiffs still would not have a tying claim because they do not allege that they were forced by that utility or anything else to buy an iPod. Alleging that others were forced to do so is insufficient.

The Supreme Court has made clear that coercion to buy the second product is an "essential characteristic" of a tying claim. *Jefferson Parish*, 466 U.S. at 12; *accord Ill. Tool*, 547 U.S. at 34-35 ("[T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms.") (internal quotation marks omitted).

Ninth Circuit law is in accord. "Essential to . . . a tying claim is proof that seller *coerced* a buyer to purchase the tied product." *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003) (emphasis original); *Foremost Pro*, 703 F.2d at 540 ("A significant element of an illegal tying arrangement is coercion by the seller, i.e., the seller must condition the sale of the tying product on the buyer's purchase of the tied product."); *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1216-17 (9th Cir. 1977) ("So long as the buyer is free to take either product by itself there is no tying problem. . . . Coercion occurs when the buyer must accept the tied item and forego possibly desirable substitutes.") (internal quotation marks omitted).[7]

---

[7] The other circuits agree. *Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'n, Inc.*, 63 F.3d 1540, 1548 (10th Cir. 1995) ("For an illegal tie-in to exist, purchases of the tying product must be conditioned upon purchases of a distinct tied product."); *Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d 186, 192 (2d Cir. 1992) ("[U]nless the buyer can prove that it was the unwilling purchaser of the allegedly tied products, actual coercion has not been established and a tying agreement cannot be found to exist."); *Tic-X-Press, Inc. v. Omni Promotions Co. of Ga.*, 815 F.2d 1407, 1415 (11th Cir. 1987) ("[P]laintiff must establish that the

(continued)

To try to establish the required coercion, plaintiffs assert that Apple's use of its own DRM prevented certain customers—those with a large number of iTunes Store libraries—from purchasing a competing portable player and that they were "locked in" to buying an iPod. Even if that "lock-in" theory were true, it would not be sufficient coercion, even as to those customers. *Foremost Pro*, 703 F.2d at 542 (no unlawful tie exists even if the "effective use" of one product "necessitates" purchase of the other product). But if that lock-in theory would constitute coercion as to the affected customers, it does not apply to plaintiffs because plaintiffs do not allege that they were coerced in that manner.

In ruling on Apple's earlier motion to dismiss, the Court stated that plaintiffs' inability to allege that they were coerced does not defeat their claim because "market-level coercion" is sufficient. No case, however, has ever ruled that a non-coerced customer may assert a tying claim on the ground that someone else might have been coerced. As stated in the leading antitrust treatise, a buyer who "purchased no amount of the tied product that [he] would not have purchased anyway" lacks standing to obtain damages. 10 P. Areeda, H. Hovenkamp & E. Elhauge, *Antitrust Law*, ¶ 1753c, at 276 n.12 (2d ed. 2004).

The notion of "market level" coercion is also directly contrary to the numerous cases holding that, in the absence of an express contractual tie that applies to all purchasers, class certification is improper because of the need for each individual customer to prove that he or she was coerced.[8] Similarly, of the cases granting class certification of a tying claim, none did so on

seller *forced* or *coerced* the buyer into purchasing the tied product.") (emphasis original); *Will*, 776 F.2d at 669 ("[T]he substantive theory of tying law depends on coercion to take two products as a package."); *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 162 (3d Cir. 1984) ("In short, a tying arrangement requires that a seller...coerce the buyer into also buying an unwanted 'tied' product."); *Crossland v. Canteen Corp.*, 711 F.2d 714, 723 (5th Cir. 1983) ("[A] tie must result from actual coercion...."); *White & White, Inc. v. Am. Hosp. Supply Corp.*, 723 F.2d 495, 506 (6th Cir. 1983) ("[A] tie-in requires proof that the second (or tied) item is forced upon the buyer as a 'condition' of the original sale...."); *Ungar v. Dunkin' Donuts of Am., Inc.*, 531 F.2d 1211, 1219 (3d Cir. 1976) ("[C]oercion is an element of a tying claim.").

[8]  *E.g.*, *Freeland v. AT & T Corp.*, 238 F.R.D. 130, 155 (S.D.N.Y. 2006) (denying class certification where "plaintiffs have not offered to prove the existence of a tie through a common contractual provision to which all class members are subject"); *Little Caesar Enters., Inc. v. Smith*, 895 F. Supp. 884, 904 (E.D. Mich. 1995) (denying class certification because the tie was not "apparent from the face of a contract, or from reasonable inferences based on the contract and
(continued)

the basis that coercion of **some** customers was sufficient to give **non-coerced** purchasers a right

to sue.  Instead, the class certification was granted solely on the ground that the defendant refused

to sell the products separately, with the result that **all** customers were necessarily coerced—it

literally was not possible to buy one product without the other.  *See* Dkt. 175, p. 14 n.17

(discussing cases).

In its earlier ruling, the Court cited *Murphy v. Bus. Cards Tomorrow, Inc.*, 854 F.2d 1202

(9th Cir. 1988).  If anything, however, *Murphy* demonstrates the need to allege and prove

individual coercion.  In that case, franchisees alleged that the defendant franchisor tied the sale of

its franchises to the purchase of its equipment.  But they admitted that they did not believe at the

time they obtained the franchises that they were required to buy equipment from the defendant.

The Ninth Circuit affirmed summary judgment for defendants, and did so because "the

uncontradicted evidence shows that no plaintiff was 'forced' to accept the tied product."  *Id.* at

1204.  In so holding, the court relied on the Supreme Court's statement in *Jefferson Parrish* that

the "essential characteristic" of unlawful tying is "forc[ing] the buyer into the purchase of a tied

product that the buyer either did not want, or might have preferred to purchase elsewhere on

different terms."  *Id.* (quoting *Jefferson Parish*, 466 U.S. at 12).  The court added that the

plaintiffs did not assert or prove that "any persons, let alone plaintiffs" were coerced.  *Id.*  But no

court has ever suggested that this phrase means that non-coerced consumers may assert a tying

related documents"); *Colburn v. Roto-Rooter Corp.*, 78 F.R.D. 679, 681-82 (N.D. Cal. 1978)
(denying class certification of tying claim where, although named plaintiffs' contract with
defendants had a tying provision, there was no evidence of similar contracts for other alleged
class members); *Smith v. Denny's Rests., Inc.*, 62 F.R.D. 459, 461 (N.D. Cal. 1974) (denying
class certification because franchise contract did not require purchase of supplies from
franchisor); *Chase Parkway Garage Inc. v. Subaru, Inc.*, 94 F.R.D. 330, 332 (D. Mass. 1982)
("[T]he tie-in is not contained in the agreement in express terms.  Individual proof of coercion,
therefore, will be necessary to establish the existence of a tie-in."); *Ungar*, 531 F.2d at 1226
(class certification not proper where "plaintiff franchisees place no reliance on express
contractual tie-ins"); *Daniels v. Amerco*, No. 81 CIV.3801, 1983 WL 1794, at *7-8 (W.D. N.Y.
Mar. 10, 1983) (certification inappropriate where proof of coercion of individual dealers would be
required for monopolization claim); *Waldo v. N. Am. Van Lines, Inc.*, 102 F.R.D. 807, 814 (W.D.
Pa. 1984) (denying class certification because proof of actual coercion on an individual basis is
necessary to prove the existence of a tie); *Olmstead v. Amoco Oil Co.*, No. 76-247-Orl-Civ-Y,
1977 WL 1416, at *3 (M.D. Fla. Jun. 16, 1977) (class action denied because leases did not require
tie on their face).

claim, particularly given the court's express holding that the evidence showed that "no plaintiff" was coerced.

Likewise unhelpful to plaintiffs is *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207 (9th Cir. 1977). In that case, a competitor sued the defendant cemeteries for requiring buyers of their cemetery lots to buy grave markers and installation services from them. The plaintiff alleged that the tying arrangements foreclosed it from selling its own markers and installing them for purchasers of defendants' lots. Reversing the district court's judgment for defendant, the Ninth Circuit began by recognizing that coercion must be shown. "So long as 'the buyer is free to take either product by itself there is no tying problem.'" *Id.* at 1216 (quoting *N. Pac. Ry. Co.,* 356 U.S. at 6). The court also noted that five of the eight defendant cemeteries explicitly tied the sale of lots to purchase of markers and that all eight cemeteries required lot buyers to use their installation services. *Id.* at 1212.[9] Unlike this case, *Moore* thus involved an actual tie and actual coercion—*i.e.*, conditioning sale of one product on the purchase of another.[10]

In *dictum, Moore* stated that coercion may be "implied from a showing that an appreciable number of buyers have accepted burdensome terms, such as a tie-in." 550 F.2d at 1217. That statement cannot mean that coercion can be inferred from the mere fact that consumers buy the two products at issue. Otherwise, buying bacon and eggs would be grounds for inferring coercion. Moreover, even if coercion could be implied as an evidentiary matter when an appreciable number of consumers buy a product they would not have bought absent coercion, it would not help plaintiffs here. Consumers obviously buy iPods for reasons that have nothing to

---

[9] Even as to the three defendant cemeteries that did not have an explicit rule prohibiting the outside purchase of grave markers, the plaintiff presented evidence that they had a policy of effectively doing so, implemented by such means as telling customers that they must buy from the cemetery, by refusing to approve outside markers, by charging exorbitant prices for accepting outside markers and by refusing to allow the plaintiff access to the cemetery. *See Moore v. Jas.H. Matthews & Co.*, 473 F.2d 328, 331 (9th Cir. 1973).

[10] The cases cited in *Moore* also involved an actual tie. In *Hill v. A-T-O, Inc.,* 535 F.2d 1349 (2d Cir. 1976), the seller never sold the tying product without requiring that customers also buy the tied product. In *Siegel v. Chicken Delight, Inc.*, 448 F.2d 45 (9th Cir. 1971), the tie consisted of a "contractual requirement" that franchisees purchase supplies from the franchisor "as a condition of obtaining a Chicken Delight trade-mark franchise." *Id.* at 46.

1  do with the availability of iTunes Store content, including the iPod's sleek intuitive design, its

2  "coolness" factor and its ease-of-use with CD collections. In short, no inference of coercion can

3  be drawn from the mere fact that consumers buy iPods.

4  Nor are plaintiffs assisted by *Moore*'s statement that a tie may be found even though

5  "each customer" was not "absolutely required" to buy both products together. *Id.* Where, as in

6  *Moore*, a **competitor** is suing on the ground that the defendant's tying practice excluded it from

7  the market, the competitor might be able establish injury without proving that every customer of

8  the defendant was coerced, or that the coercion was "absolute." But nothing in *Moore*—or any

9  other case—excuses a **consumer** plaintiff from alleging and proving that he was coerced to buy

10 the unwanted product. As shown above, that requirement has always been an "essential

11 characteristic" of a consumer tying claim. *Jefferson Parish*, 466 U.S. at 12.

12 **III.    FOR THE SAME REASONS, PLAINTIFFS' TYING ALLEGATIONS FAIL TO**

13 **STATE A CLAIM UNDER STATE LAW.**

14 Plaintiffs re-allege the same tying theory under California's Cartwright Act (Cal. Bus. &

15 Prof. Code § 16700 et seq.) (Count IV). Courts interpreting California's Cartwright Act look to

16 federal authority interpreting the Sherman Act. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236

17 F.3d 1148, 1160 (9th Cir. 2001) ("The analysis under California's antitrust law mirrors the

18 analysis under federal law because the Cartwright Act . . . was modeled after the Sherman Act.");

19 *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1234-35 (2007) (following

20 Sherman Act precedent in rejecting tying claim under Cartwright Act). Thus, plaintiffs' tying

21 claim under the Cartwright Act fails for the same reasons as their Sherman Act claim.

22 Moreover, plaintiffs cannot assert a monopolization or attempted monopolization claim

23 under the Cartwright Act because that statute does not contain a counterpart to section 2 of the

24 Sherman Act. It reaches only combinations—not single-firm, unilateral conduct. *See* Cal. Bus. &

25 Prof. Code § 16720 (prohibiting certain "trusts," which are defined as "a combination of capital,

26 skill or acts by two or more persons"); *Bondi v. Jewels by Edwar, Ltd.*, 267 Cal. App. 2d 672, 678

27 (1968) (§ 16720 "contemplates concert of action by separate individuals or entities maintaining

28

separate and independent interests"). Accordingly, dismissal of the tying allegations requires that the Cartwright Act claim be dismissed in its entirety.

Similarly, to the extent plaintiffs rely on their tying allegations as the basis for their claim of unlawful or unfair conduct under the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.) (Count V) or as the basis for a claim under the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750 et seq.) (Count VI), those claims should also be dismissed.

## IV. <u>LEAVE TO AMEND WOULD BE FUTILE</u>.

Plaintiffs' deposition testimony establishes that they cannot cure the fatal defects of their consolidated complaint by amendment. As summarized in Apple's opposition to class certification, plaintiffs admitted not only that iPods and iTunes Store content are separately available and have independent uses but also that they bought or received iPods for their own individual reasons unrelated to any coercion and unrelated to any iTunes Store content. *See* Dkt. 175, pp. 6-8. These admissions are consistent with other evidence showing that most iPod purchasers bought their iPod before obtaining any iTunes Store content (and thus could not conceivably have been coerced even under plaintiffs' theory) and that millions of iPod owners have never obtained any iTunes Store content at all. *Id.,* pp. 5-6. For these reasons, plaintiffs cannot cure the defects that are the subject of this motion.

## <u>CONCLUSION</u>

For these reasons, judgment on the pleadings on the tying claims should be granted.

Dated: February 13, 2009

Respectfully submitted,

Jones Day

By: /s/ Robert A. Mittelstaedt
    Robert A. Mittelstaedt

Counsel for Defendant
APPLE INC.

SFI-602666v5

Mot. for Jgmt. on Pldgs. as to Tying Claims
C-05-00037-JW