1    ZELDES & HAEGGQUIST, LLP
     HELEN I. ZELDES (220051)
2    ALREEN HAEGGQUIST (221858)
     655 West Broadway, Suite 1410
3    San Diego, CA 92101
     Telephone: 619/955-8218
4    Fax: 619/342-7878
     helenz@zhlaw.com
5    alreenh@zhlaw.com

6    MEHRI & SKALET, PLLC
     STEVEN A. SKALET (admitted *pro hac vice*)
7    CRAIG L. BRISKIN (admitted *pro hac vice*)
     1250 Connecticut Ave NW, Suite 300
8    Washington, DC 20036
     Telephone: 202/822-5100
9    Fax: 202/822-4997
     sskalet@findjustice.com
10   cbriskin@findjustice.com

11   Attorneys for Plaintiff Stacie Somers

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                          SAN JOSE DIVISION

15

16   THE APPLE IPOD ITUNES ANTI-TRUST    )   Case No. C 07-6507 JW
     LITIGATION,                         )
17                                       )   NOTICE OF MOTION AND MOTION FOR
     This Document Relates To:           )   CLASS CERTIFICATION AND
18                                       )   APPOINTMENT OF CO-LEAD CLASS
     *Somers v. Apple, Inc.*, Case No. C 07-6507 JW, )   COUNSEL; MEMORANDUM OF POINTS
19                                       )   AND AUTHORITIES IN SUPPORT OF
                                         )   MOTION
20   _____    )
                                             JUDGE:   The Honorable James Ware
21                                           DATE:    June 1, 2009
                                             TIME:    9:00 a.m.
22                                           CTRM:    8, 4th Floor

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................1

II. PLAINTIFF'S CLAIMS ........................................................................................3

III. PLAINTIFF READILY MEETS THE STANDARDS FOR CERTIFICATION .............4

    A. Rule 23(a) Is Satisfied.............................................................................5

        1. Numerosity......................................................................................5

        2. Commonality...................................................................................5

        3. Typicality .......................................................................................6

        4. Adequacy of Representation .........................................................6

    B. Plaintiff Satisfies the Requirements of Rule 23(b)(2)..............................6

    C. Plaintiff Satisfies the Requirements of Rule 23(b)(3)..............................8

        1. Common Questions of Law and Fact Predominate Over Individual
           Issues .............................................................................................8

           a. Plaintiff's Tying Claim ......................................................8

               (1) Coercion May Be Proven at the Market Level .................10

               (2) Coercion Can Be Found Where Two Products Are
                    Not Purchased Simultaneously ...........................................13

           b. Plaintiff's Monopolization and Attempted Monopolization
               Claims ...............................................................................15

           c. Plaintiff's California State Law Claims............................16

                (1) California Business and Professions Code §17200 ..........16

                (2) The Consumer Legal Remedies Act .................................17

           d. Antitrust Damages Can Be Proven on a Class-Wide Basis ..........17

        2. A Class Action Is the Superior Method to Resolve Plaintiff's
           Claims ..........................................................................................19

    D. Choice of Law Issues Do Not Defeat Predominance of the Cartwright Act
       Damages Claim.......................................................................................20

        1. California's Laws Do Not Conflict with Those of Other States................20

        2. No Other State Has an Interest in Applying Its Own Law ........................21

NOTICE OF MOTION & MOTION FOR CLASS CERT AND APPT OF CO-LEAD CLASS
COUNSEL; MEMO OF POINTS & AUTHORITIES IN SUPPORT OF MOTION - C 07-6507 JW

- i -

|   |   |   | Page |
|---|---|---|---|
|   | 3. | Other State Laws Will Not Be Impaired If California's Laws Were Applied to All Class Members | 22 |
| IV. | | THE COURT SHOULD APPOINT ZELDES & HAEGGQUIST, LLP AND MEHRI & SKALET, PLLC AS CLASS COUNSEL | 23 |
| V. | | CONCLUSION | 25 |

# TABLE OF AUTHORITIES

**CASES**

*Abed v. A. H. Robins Co.,*
    693 F.2d 847 (9th Cir. 1982) ........................................................................................8

*Advance Bus. Sys. & Supply Co. v. SCM Corp.,*
    415 F.2d 55 (4th Cir. 1969) .......................................................................................14

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co.,*
    190 F.3d 1051 (9th Cir. 1999) ..................................................................................15

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997)..............................................................................................3, 8

*Amerinet, Inc. v. Xerox Corp.,*
    972 F.2d 1483 (8th Cir. 1992) ..................................................................................13

*Anderson Foreign Motors, Inc. v. New England Toyota Distrib., Inc.,*
    475 F. Supp. 973 (D. Mass. 1979) ...........................................................................12

*Apple Inc. v. Psystar Corp.,*
    586 F. Supp. 2d 1190 (N.D. Cal. 2008) .....................................................................9

*Austin v. McNamara,*
    979 F.2d 728 (9th Cir. 1992) ....................................................................................15

*B.W.I. Custom Kitchen v. Owens-Illinois,*
    191 Cal. App. 3d 1341 (1987) ..............................................................................16, 18

*Bafus v. Aspen Realty,*
    236 F.R.D. 652 (D. Idaho 2006) ...........................................................................11, 15

*Bernhard v. Harrah's Club,*
    16 Cal. 3d 313 (1976) ..............................................................................................22

*Blackie v Barrack,*
    524 F.2d 891 (9th Cir 1975) .......................................................................................4

*Bogosian v. Gulf Oil Corp.,*
    561 F. 2d 434 (3d Cir. 1977).....................................................................................12

*Bruno v. Superior Court,*
    127 Cal. App. 3d 120 (1981) ....................................................................................17

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) .............................................................................................16

*Chun-Hoon v. McKee Foods Corp.,*
    No. C-05-620-VRW, 2006 WL 3093764 (N.D. Cal. Oct. 31, 2006)................................4

NOTICE OF MOTION & MOTION FOR CLASS CERT AND APPT OF CO-LEAD CLASS
COUNSEL; MEMO OF POINTS & AUTHORITIES IN SUPPORT OF MOTION - C 07-6507 JW

- iii -

|  |  | Page |
|---|---|---|

*Clothesrigger, Inc. v. GTE Corp.*,
    191 Cal. App. 3d 605 (1987) ..............................................................20, 21, 22

*Collins v. Int'l Dairy Queen, Inc.*,
    168 F.R.D. 668 (M.D. Ga. 1996) .........................................................11, 13, 15

*Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.*,
    411 F.3d 1030 (9th Cir. 2005) .....................................................................15

*Datagate Inc. v. Hewlitt Packard Co.*,
    60 F.3d 1421 (9th Cir. 1995) ........................................................................8

*Digidyne Corp. v. Data General Corp.*,
    734 F.2d 1336 (9th Cir. 1984) ......................................................................9

*Dukes v. Wal-Mart, Inc.*,
    474 F.3d 1214 (9th Cir. 2007) ......................................................................5

*Dunleavy v. Nadle*,
    213 F.3d 454 (9th Cir. 2000) ........................................................................4

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992) ....................................................................................8

*Falk v. Gen. Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) .......................................................17

*Fortner Enterprises v. U.S. Steel Corp.*,
    394 U.S. 495 .................................................................................................9

*Gregory v. Albertson's, Inc.*,
    104 Cal. App. 4th 845 (2002) .....................................................................16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................5, 6, 8, 20

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ........................................................................6

*Hardy v. City Optical, Inc.*,
    39 F.3d 765 (7th Cir. 1994) ........................................................................12

*Harmsen v. Smith*,
    693 F.2d 932 (9th Cir. 1982) ......................................................................20

*Havlicek v. Coast-To-Coast Analytical Servs. Inc.*,
    39 Cal. App. 4th 1844 (1995) .....................................................................22

*Hawaii v. Standard Oil Co. of California*,
    405 U.S. 251 (1972) ....................................................................................4

NOTICE OF MOTION & MOTION FOR CLASS CERT AND APPT OF CO-LEAD CLASS
COUNSEL; MEMO OF POINTS & AUTHORITIES IN SUPPORT OF MOTION - C 07-6507 JW

- iv -

| | Page |
|---|---|

*Hurtado v. Superior Court,*
    11 Cal. 3d 574 (1974) ............................................................................20

*Image Tech Servs., Inc. v. Eastman Kodak Co.,*
    Nos. C 07-1686, 94-0524, 94-1070, 1994 WL 508735
    (N.D. Cal. Sept. 2, 1994) ...............................................................11, 15

*In re Abbott Labs. Norvir Anti-Trust Litig.,*
    No. Civ. 04-1511 CW, 2007 U.S. Dist. LEXIS 44459
    (N.D. Cal. June 11, 2007) ..................................................................7

*In re Citric Acid Antitrust Litig.,*
    No. 95-1092, 1996 WL 655791 (N.D. Cal. Oct. 2, 1996) ....................18

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    No. M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006)............3, 18

*In re General Data Corp. Antitrust Litig.,*
    490 F. Supp. 1089 (N.D. Cal. 1980) .................................................13

*In re Lorazepam & Clorazepate Antitrust Litig.,*
    202 F.R.D 12 (D.D.C. 2001)...............................................................4

*In re MDC Holdings Sec Litig.,*
    754 F. Supp. 785 (S.D. Cal. 1990)....................................................20

*In re OSB Antitrust Litig.,*
    No. 06-826, 2007 U.S. Dist. LEXIS 56584 (E.D. Pa. Aug. 3, 2007) ..............7

*In re Pizza Time Theatre Sec. Litig.,*
    112 F.R.D. 15 (N.D. Cal. 1986)....................................................21, 22

*In re Playmobil Antitrust Litig.,*
    35 F. Supp. 2d 231 (E.D.N.Y. 1998) .................................................3

*In re Polypropylene Carpet Antitrust Litig.,*
    178 F.R.D. 603 (N.D. Ga. 1997).......................................................4

*In re Rubber Chemicals Antitrust Litig.,*
    232 F.R.D. 346 (N.D. Cal. 2005)...................................................4, 18

*In re S. Cent. States Bakery Prods. Antitrust Litig.,*
    86 F.R.D. 407 (M.D. La. 1980) ........................................................19

*In re Seagate Techs. Sec. Litig.,*
    115 F.R.D. 264 (N.D. Cal. 1987).......................................................22

*In re Tableware Antitrust Litig.,*
    241 F.R.D. 644 (N.D. Cal. 2007).......................................................3

| | Page |
|---|---|

*In re Visa Check/Mastermoney Antitrust Litig.,*
192 F.R.D. 68 (E.D.N.Y. 2000), *aff'd*, 280 F.3d 124 (2d Cir. 2001) ...........................15, 19

*In re Warfarin Sodium Antitrust Litig.,*
214 F.3d 395 (3d Cir. 2000)...............................................................................7

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde,*
466 U.S. 2 (1984)...........................................................................................9, 13

*Jefferson v. Ingersoll Int'l Inc.,*
195 F.3d 894 (7th Cir. 1999) ...........................................................................7

*Knevelbaard Dairies v. Kraft Foods, Inc.,*
232 F.3d 979 (9th Cir. 2000) ...........................................................................15

*Lerwill v. Inflight Motion Pictures, Inc.,*
582 F.2d 507 (9th Cir.1978) .............................................................................6

*Little Caesar Enters., Inc. v. Smith,*
172 F.R.D. 236 (E.D. Mich.1997) ...................................................................15

*Macmanus v. A.E. Realty Partners,*
195 Cal. App. 3d 1106 (1988) .........................................................................8

*Molski v. Gleich,*
318 F.3d 937 (9th Cir. 2003) ...........................................................................7

*Moore v. Jas. H. Matthews & Co.,*
550 F.2d 1207 (9th Cir. 1977) .................................................................9, 11, 12

*Murphy v. Business Cards Tomorrow, Inc.,*
854 F.2d 1202 (9th Cir. 1988) .........................................................................13

*N. Pac. R.R. v. United States,*
356 U.S. 1 (1958)..............................................................................................14

*Paladin Assocs., Inc. v. Montana Power Co.,*
328 F.3d 1145 (9th Cir. 2003) .........................................................................12

*People ex rel. Lockyer v. Fremont Life Ins. Co.,*
104 Cal. App. 4th 508 (2002) .........................................................................16

*Probe v. State Teachers' Retirement Sys.,*
780 F.2d 776 (9th Cir. 1986) ...........................................................................7

*Quelimane Co. v. Stewart Title Guar. Co.,*
19 Cal. App. 4th 26 (1998) ..............................................................................16

*Reiter v. Sonotone Corp.,*
442 U.S. 330 (1979)..........................................................................................4

NOTICE OF MOTION & MOTION FOR CLASS CERT AND APPT OF CO-LEAD CLASS
COUNSEL; MEMO OF POINTS & AUTHORITIES IN SUPPORT OF MOTION - C 07-6507 JW

- vi -

|  | Page |
|---|---|

*Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*,
No. C93 20613 RMW, 1995 WL 853037 (N.D. Cal. Sept. 7, 1995)..................................14

*SC Manufactured Homes, Inc. v. Liebert*,
162 Cal. App. 4th 68 (2008) .......................................................................................8, 9

*Slattery v. Apple Comp., Inc.*,
No. C 05-00037 JW, 2005 WL 2204981 (N.D. Cal. Sept. 9, 2005) ................................11

*Spectrum Sports v. McQuillan*,
506 U.S. 447 (1993)..........................................................................................................15

*Sullivan v. Chase Inv. Servs., Inc.*
79 F.R.D. 246 (N.D. Cal. 1978)..........................................................................................5

*Tucker v. Apple Comp., Inc.*,
493 F. Supp. 2d 1090 (N.D. Cal. 2006) .......................................................................1, 11

*Union Carbide Corp. v. Superior Court*,
36 Cal. 3d 13 (1984) .........................................................................................................17

*United States v. Microsoft Corp.*,
253 F.3d 34 (D.C. Cir. 2001) ...............................................................................3, 13, 17

*Valentino v. Carter-Wallace*,
97 F.3d 1227 (9th Cir. 1997) .............................................................................................19

*Washington Mut. Bank v. Superior Court*,
24 Cal. 4th 906 (2001) ..........................................................................................20, 21, 22

*Ways & Means v. IVAC Corp.*,
506 F. Supp 697 (N.D. Cal. 1979), *aff'd*, 638 F.2d 143 (9th Cir. 1981) ..........................13

*Wershba v. Apple Computer, Inc.*,
91 Cal. App. 4th 224 (2001) .............................................................................................21

*Wong v. Tenneco, Inc.*,
39 Cal. 3d 126 (1985) .......................................................................................................22

## STATUTES, RULES AND REGULATIONS

15 United States Code
§26................................................................................................................................2, 7

California Business and Professions Code
§16720............................................................................................................................2
§17200...........................................................................................................3, 5, 8, 16, 17
§17200.............................................................................................................................16
§1770(a)(19) .................................................................................................................17

NOTICE OF MOTION & MOTION FOR CLASS CERT AND APPT OF CO-LEAD CLASS
COUNSEL; MEMO OF POINTS & AUTHORITIES IN SUPPORT OF MOTION - C 07-6507 JW

- vii -

                                                                           **Page**

California Civil Code
        §1770....................................................................................................3, 5, 8, 16, 17

Federal Rules of Civil Procedure
        Rule 23(a)........................................................................................................4, 5, 6
        Rule 23(a)(1)...........................................................................................................5
        Rule 23(a)(2)...........................................................................................................5
        Rule 23(a)(3)...........................................................................................................6
        Rule 23(b)...............................................................................................................4
        Rule 23(b)(2)...................................................................................................5, 6, 7
        Rule 23(b)(3)................................................................................................. *passim*
        Rule 23(g)..............................................................................................................23

## SECONDARY AUTHORITIES

6 Herbert B. Newberg & Alba Conte,
        *Newberg on Class Actions* (4th ed. 2002)
        §3:10 ......................................................................................................................5
        §18:1 ......................................................................................................................3

*Manual for Complex Litigation* (1977)
        §1.43....................................................................................................................19

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on June 1, 2009, at 9:00 a.m., in Courtroom 8, 4th Floor of the above-entitled Court, located at 280 South 1st Street, San Jose, California, plaintiff Stacie Somers on ("plaintiff") behalf of herself and all others similarly situated will, and hereby does, respectfully move the Court for class certification, and the appointment of the law firms of Mehri & Skalet, PLLC and Zeldes & Haeggquist, LLP as Co-Lead Counsel for the Class.

## I.    INTRODUCTION

The Court is well-aware of the facts of this case. They are virtually identical to those of the related *Tucker* action, in which this Court has already certified an injunctive relief and damages class of direct purchasers of the iPod. Here, plaintiff Stacie Somers seeks to represent the corresponding class of indirect purchasers of Apple's iPods; that is, class members who purchased Apple's iPod from any retailer other than Apple. Plaintiff alleges that Apple violated federal and state antitrust laws by encoding iTunes files so they could only be played on the iPod, and not any competing portable digital media player. As the Court concluded in the direct purchaser case, these claims are well-suited for class certification.[1] Indeed, this Court held that the direct purchaser plaintiffs satisfied all of the requirements for class certification, and requested additional briefing on just one element of one claim (tying).[2] The sole remaining issue left to be decided by this Court is whether coercion can be proved on a class-wide (or market-level) basis under §1 of the Sherman Act. As this Court has already decided on two occasions, coercion can indeed be shown at the market level.

The elements of Apple's coercive tie are evident in Apple's public statements, and in the products themselves. Apple's market share is so high in the tying market that Apple's CEO Steve

---

[1]    Plaintiff Somers concurs with the briefing by the direct purchaser plaintiffs in the related case and incorporates their arguments for class certification by reference as if set forth herein.

[2]    *See* Order Granting Plaintiffs' Motion for Class Certification as to Counts Two, Three, Four, Five, Six and Seven Only and Appointing Class Counsel; *Sua Sponte* Order Reconsidering Defendant's Motion to Dismiss Count One and Requiring Further Briefing ("12/22 Order"), Docket No. 196 (filed Dec. 22, 2008).

Jobs proudly calls Apple's Online Music Store "the Microsoft of music stores."[3] Jobs states that the "only option to play music from Apple's Music Store is the iPod."[4] Not surprisingly, Apple's attorneys now try to distance Apple from such claims urging that consumers can *circumvent* Apple's deliberate efforts to lock its files through a process called "ripping and burning," – a possibly illegal activity that Apple itself apparently has never made known to its customers. Notwithstanding counsel's valiant efforts, it remains clear that Apple designed the iTunes store and downloads for direct use on the iPod, and nothing else. Direct use is an ***essential*** characteristic of the iPod. Hypothetical "ripping and burning" does not cure the anticompetitive conduct alleged herein but rather proves the point: consumers are locked-in to the iPod and have no option but the iPod to directly play their iTunes digital media files. This is not mere "inconvenience" or "enhanced utility" rather the inability to use the product as it was intended.

If Apple required iTunes purchasers to burn and rip every download before they could upload them to the iPod, with reduced sound quality, it is fair to say that Apple would be at a competitive disadvantage to music stores that allowed seamless transfer. Plaintiff here has set forth a methodology that will show that Apple's efforts to lock in its customers worked as it was intended: consumers bought iPods, and paid more for them, because of the DRM lock-in. As a result, class members are tied to the iPod, which they are forced to purchase at supracompetitive prices. Even those iPod purchasers who had not previously purchased iTunes music paid supracompetitive prices as a result of Apple's monopolistic activities.

In order to remedy Apple's behavior, plaintiff Somers seeks certification of the following class, pursuant to the Clayton Act (15 U.S.C. §26), the Cartwright Act (Cal. Bus. & Prof. Code

---

[3] Complaint for Violations of Sherman Antitrust Act, Cartwright Act, California Unfair Competition Law, Consumer Legal Remedies Act and Monopolization of Business Practices, ¶12 ("Complaint"), filed Dec. 31, 2007. All paragraph citations are to the Complaint, unless otherwise noted.

[4] *See, e.g.*, Steve Jobs, "Thoughts on Music," February 6, 2007, attached to the Declaration of Alreen Haeggquist in Support of Plaintiff's Motion for Class Certification and Appointment of Class Counsel ("Haeggquist Decl.") as Ex. 5.

§16720 *et seq.*), California's Unfair Competition Law (Cal. Bus. & Prof. Code §17200 *et seq.* ("UCL")), and the Consumer Legal Remedies Act (Cal. Civ. Code §1770 *et seq.* ("CLRA")):

> All persons and entities in the United States (excluding federal, state and local governmental entities, Apple, its directors, officers and members of their families) that from December 31, 2003 to the present ("Class Period") purchased an Apple iPod indirectly from Apple for their own use and not for resale.

The Supreme Court and numerous other courts have recognized that few cases are better candidates for class-wide resolution than antitrust actions.[5] As this Court held in the related direct purchaser action, Plaintiff's claims should similarly be certified here.

## II. PLAINTIFF'S CLAIMS

Plaintiff alleges that Apple has established an illegal tie between its Online Videos and Online Music, and the iPod. Apple enjoys monopoly power in the download markets, it deliberately abuses that power. *See United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001). A consumer who purchases music and video files from Apple's Online Music Store is forced to purchase Apple's iPod in order to play the music or videos on a portable digital music player. ¶14. Purchasers of Online Videos from Apple also are precluded from using rival video-enabled portable digital music players. ¶¶16, 67-72. This conduct causes substantial antitrust injury to consumers, because it allows Apple to charge supracompetitive prices for its iPod and reduces innovation by foreclosing competition. ¶¶54-58.

Plaintiff also alleges that Apple willfully acquired and exploits its monopoly power in the market for portable music players, by placing technological restrictions on its products that serve

---

[5]    *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."); *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 238 (E.D.N.Y. 1998) ("Antitrust claims are well suited for class actions."). And, in turn, class actions "play a particularly vital role in the private enforcement of antitrust [laws]." *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 648 (N.D. Cal. 2007); *accord In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *3 (N.D. Cal. June 5, 2006) ("*DRAM*") (same); *see generally* 6 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §18:1, at 3-6 (4th ed. 2002) ("*Newberg*").

only to exclude potential competitors. ¶¶13-16. Apple does this by "crippling" third-party supplied components in its iPod that otherwise would enable the iPod to play music and videos downloaded from Online Music stores that compete with Apple. ¶¶38-40. Apple further protects its monopolies by placing unneeded technological restrictions on the music and video files it sells at its Online Music Store, iTMS, making the files incompatible with rival portable digital music players. ¶41.

## III. PLAINTIFF READILY MEETS THE STANDARDS FOR CERTIFICATION

The Supreme Court has long recognized that antitrust class actions play an important role in the enforcement of the antitrust laws. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979); *Hawaii v. Standard Oil Co. of California*, 405 U.S. 251, 266 (1972). Because of this critical enforcement role, "courts resolve doubts in these actions in favor of certifying the class." *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005).

In addition, "[o]n a motion for class certification, the court 'is bound to take the substantive allegations of the complaint as true.'" *Chun-Hoon v. McKee Foods Corp.*, No. C-05-620-VRW, 2006 WL 3093764, at *1 (N.D. Cal. Oct. 31, 2006) (quoting *Blackie v Barrack,* 524 F.2d 891, 901 n.17 (9th Cir 1975)). The certification inquiry is not a merits inquisition. Neither the plaintiff nor the plaintiff's expert must prove or show that defendant's conduct violated the law. "[R]ather, they must demonstrate that their attempt to evidence impact will involve common issues that predominate." *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D 12, 29 (D.D.C. 2001). *See also In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 618 (N.D. Ga. 1997) (explaining that "at the class certification stage, plaintiffs must show that antitrust impact ***can be proven*** with common evidence on a class wide basis; plaintiffs need not show antitrust impact ***in fact occurred*** on a class-wide basis.") (emphasis in original).

To certify a class action, plaintiff must set forth prima facie facts that support the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Dunleavy v. Nadle*, 213 F.3d 454, 462 (9th Cir. 2000). The court must then consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b).

Plaintiff seeks certification of an injunctive relief class under Rule 23(b)(2) and a damages class under Rule 23(b)(3).

### A. Rule 23(a) Is Satisfied

The Court has already held that Rule 23(a)'s requirements of numerosity, commonality, typicality and fair and adequate representation were met by the Direct Purchasers. *See* 12/22 Order at 3-6. The same reasoning is applicable here, and little additional analysis is required.

#### 1. Numerosity

The numerosity requirement is satisfied if the class "is so numerous that joinder of all members is impracticable." Rule 23(a)(1). As this Court already held, "[a] class of one thousand members 'clearly satisfies the numerosity requirement.'" 12/22 Order at 3 (quoting *Sullivan v. Chase Inv. Servs., Inc.* 79 F.R.D. 246, 257 (N.D. Cal. 1978)). The numerosity of Apple's iPod sales is not a point in serious dispute. Apple has sold millions of iPods to indirect purchasers during the class period. *See* Affidavit of Gary L. French, Ph.D. ¶27 ("French Aff.") (citing Apple's interrogatory response), attached to the Haeggquist Declaration as Ex. 1. As this Court held in certifying the direct purchaser classes, "Given that the volume of relevant purchasers during the Class Period is undisputedly in the millions, the Court finds that plaintiffs have satisfied the numerosity requirement of Rule 23(a)." 12/22 Order at 5. The numerosity requirement is easily satisfied here as well.

#### 2. Commonality

Commonality requires "questions of law or fact common to the class." Rule 23(a)(2). The commonality requirement is generally construed liberally; the existence of only a few common legal and factual issues may satisfy the requirement. *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1225 (9th Cir. 2007) (citing *Newberg* §3:10 at 271; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)). As this court has already concluded, "there are numerous common questions of law and fact involving Defendant's allegedly anti-competitive conduct." 12/22 Order at 8. Plaintiff's tying, monopolization, attempted monopolization, UCL and CLRA claims are essentially identical to the claims that the Court has already certified with regard to the direct purchasers. The only issues that

differ are those specific to the certification of a class of indirect purchasers. These issues, too, are common. Thus, this requirement is satisfied.

### 3. Typicality

The typicality requirement requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Rule 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. The typicality requirement is satisfied when "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). In this case, plaintiff's and the proposed class members' claims all arise from Apple's alleged tying of iTunes music with the iPod and its monopolization of the market for portable media players. Plaintiff's claim is identical to that of absent class members, which is far more than Rule 23(a) requires.

### 4. Adequacy of Representation

To satisfy the requirement of adequacy of representation, "First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978).

Plaintiff's counsel has invested considerable time since the initiation of the litigation gathering evidence, formulating legal theories, reviewing documents, and working with an economic expert. Haeggquist Decl. ¶3. Plaintiff's counsel is experienced in antitrust and consumer law, and class action litigation, as set forth in the declaration and firm resumes submitted herewith. *See* Haeggquist Decl. Exs. 3-4 and §IV below. As an iPod purchaser, plaintiff has interests that are aligned with and are in no way antagonistic to those of absent class members. Plaintiff has served well as a representative for the proposed class. Thus, this requirement is satisfied.

### B. Plaintiff Satisfies the Requirements of Rule 23(b)(2)

Plaintiff also satisfies the requirements of Rule 23(b)(2), which is that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" As the Court did with respect to direct purchasers, it also should certify the proposed nationwide indirect purchaser class for injunctive relief under federal law.

Defendant has acted on grounds generally applicable to the class. Its alleged anticompetitive conduct is and has been market-wide, and it does not require reference to the actions of individual consumers. Injunctive relief is available to these consumers pursuant to §16 of the Clayton Act (15 U.S.C. §26). 12/22 Order at 10; *see also In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 400 (3d Cir. 2000). Defendant's anticompetitive conduct has enabled it to overcharge for iPods. While Apple has announced its intention to remove DRM from future iTunes downloads, it still will charge a fee to remove DRM from existing purchases, which is roughly equivalent to one third of the purchase price. Haeggquist Decl. Ex. 1, French Aff. ¶34. An injunction would force Apple to stop charging consumers for removal of DRM from iTunes downloads, which would remove the lock-in that DRM represents. This will result in lower prices for iPods, and allow purchasers of iTunes music to choose freely among products in the market for portable media players.

Therefore, the Court should certify a Rule 23(b)(2) class in addition to the Rule 23(b)(3) class as set forth below. *See Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999) ("It is possible to certify the injunctive aspects of the suit under Rule 23(b)(2) and the damages aspects under Rule 23(b)(3), achieving both consistent treatment of class-wide equitable relief and an opportunity for each affected person to exercise control over the damages aspects."); *Probe v. State Teachers' Retirement Sys.*, 780 F.2d 776, 780 n.3 (9th Cir. 1986). *See also In re Abbott Labs. Norvir Anti-Trust Litig.*, No. Civ. 04-1511 CW, 2007 U.S. Dist. LEXIS 44459, at *22-*23 (N.D. Cal. June 11, 2007) (same). Moreover, plaintiff's injunctive relief is based on a federal law, while her claim for damages is based only on state law. Thus, the federal antitrust claim is not one that "relates exclusively or predominantly to money damages." *See In re OSB Antitrust Litig.*, No. 06-826, 2007 U.S. Dist. LEXIS 56584, at *47-*48 (E.D. Pa. Aug. 3, 2007) (agreeing with plaintiffs "that I need not even consider this issue because the claims for damages and injunctive relief are entirely separate" noting that the claims "arise under different statutes (Clayton Act versus state statutes)"); *see also Molski v. Gleich*, 318 F.3d 937, 949-50 (9th Cir. 2003).

## C.    Plaintiff Satisfies the Requirements of Rule 23(b)(3)

The court may certify a class under Rule 23(b)(3), which requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy . . . ."  Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action."  *Hanlon*, 150 F.3d at 1022 (internal quotations omitted).  The Court must balance concerns regarding the litigation of issues common to the class a whole with questions affecting individual class members.  *Abed v. A. H. Robins Co.*, 693 F.2d 847, 856 (9th Cir. 1982).

### 1.    Common Questions of Law and Fact Predominate Over Individual Issues

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997).  As the Supreme Court has stated, "predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."  *Id.* at 625.  Here, plaintiff alleges antitrust claims for tying, monopolization, attempted monopolization, and violation of the UCL and CLRA.  As shown above and as demonstrated by Dr. French, each element of plaintiff's claims can and will be proved through common evidence applicable to every member of the proposed classes.

### a.    Plaintiff's Tying Claim

The practice of tying has long been forbidden as a *per se* illegal practice under Section 1 of the Sherman Act.  *See Datagate Inc. v. Hewlitt Packard Co.*, 60 F.3d 1421, 1423 (9th Cir. 1995); *see also Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 461-62 (1992) (affirming rule of *per se* liability).  The *per se* analysis also applies to tying claims under the Cartwright Act.  *See SC Manufactured Homes, Inc. v. Liebert*, 162 Cal. App. 4th 68, 86 (2008) (stating that a tie exists if "the buyer can[not] simply walk away and turn to another seller"); *Macmanus v. A.E. Realty Partners*, 195 Cal. App. 3d 1106, 1110 (1988).  The Supreme Court notes that "the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might

have preferred to purchase elsewhere on different terms." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984).

> The prerequisites of a *per se* tying arrangement under the Cartwright Act are
>
> [the existence] of a tying agreement, arrangement or condition [] whereby the sale of the tying product was linked to the sale of the tied product or service; (2) the party had sufficient economic power in the tying market to coerce the purchase of the tied product; (3) a substantial amount of sale was affected in the tied product; and (4) the complaining party sustained pecuniary loss as a consequence of the unlawful act.

*SC Manufactured Homes*, 162 Cal. App. 4th at 86 (internal citations and quotations omitted). The requirements for a *per se* tying claim under the §1 of the Sherman Act are virtually identical.[6] Most notably, none of the elements of plaintiff's tying claim turn on individual class members' circumstances but rather on common class-wide evidence.

Here, plaintiff alleges that Apple tied its iTunes Music Store (the tying product) to sales of the iPod (the tied product). ¶¶12, 55, 67-72. These products belong to separate product markets – the Online Music and Online Video markets, and the Digital Music Player market. ¶68. Thus, as Apple proudly admits, the consumer's only option to play music from Apple's Music Store is the iPod.[7] As a result, Apple can and does sell the iPod at prices far above those that would prevail in a competitive market. ¶¶14, 71. In addition, Apple made affirmative efforts to ensure that iTunes music was not interoperable with other portable music players, by disabling its operating chip through software commonly known as "crippleware." ¶38. Limiting consumer choices for music

---

[6]     *Digidyne Corp. v. Data General Corp.*, 734 F.2d 1336 (9th Cir. 1984), overruled on other grounds by *Illinois Tool Works v. Independent Ink, Inc.*, 547 U.S. 28 (2006), as recognized in *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190 (N.D. Cal. 2008) (citing *Fortner Enterprises v. U.S. Steel Corp.*, 394 U.S. 495, 499, *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1212 (9th Cir. 1977)).

[7]     *See, e.g.,* Steve Jobs, *Thoughts on Music*, February 6, 2007, http://www.apple.com/hotnews/thoughtsonmusic/ (Haeggquist Decl. Ex. 5).

and video downloads has further strengthened Apple's anticompetitive tie. Proof of this claim clearly goes to Apple's anticompetitive behavior at the market level, and does not reference any inquiry into the circumstances of individual purchasers. For this reason, the claim is amenable to resolution on a class-wide basis.

This Court rightfully held that all but one of the elements of the direct purchasers' tying claim were satisfied by class-wide or market level proof. Specifically, in its Class Certification Order, this Court held that establishing the relevant markets set forth in plaintiff's complaint and determining whether Apple possessed market power in each of those markets "do not depend in any way upon individualized proof." 12/22 Order at 6. This Court also held that "Apple's use of technological restrictions and the amount of commerce affected by these restrictions are both questions that do not require individual proof." *Id.* at 7. For the same reasons, the Court should so hold here.

The only remaining element of plaintiff's tying claim to be determined by this Court is whether the sale of the tying product (iTMS) was linked to the sale of the tied product (iPod). As to whether such a tie exists, this Court sought additional briefing on the issues of (1) whether market-level coercion is a sufficient basis to bring plaintiffs' allegations within the ambit of a §1 tying claim, and (2) "whether, as a matter of law, coercion can be found where there is no requirement that the tying and tied products be purchased together."[8]

### (1) Coercion May Be Proven at the Market Level

Market-level proof of coercion is sufficient and appropriate, because it is at the market level that tying operates. Indeed, while many or most consumers in a tied market may have been coerced, even those that are not are injured by the tie in the form of higher prices and reduced consumer choice and quality. In addition, while there may be some conceivable way in which a consumer could circumvent a market tie, it is the actual behavior of buyers and sellers in the marketplace that

---

[8]   12/22 Order at 4. While certifying Counts Two through Seven of the direct purchasers' claims, the Court invited the parties to provide additional briefing on Count One, the tying claim, as to these two points. On February 13, 2009, Apple filed its Motion for Judgment on the Pleadings as to Plaintiffs' Tying Claim ("MJP"), arguing that plaintiffs' tying claim is invalid.

is the concern of antitrust law, which is why econometric, market-level analysis is the appropriate way of discerning whether an illegal tie has been established to the detriment of competition.

As this Court has already held on two occasions, coercion may be alleged and proven at the market, rather than the individual, level:

> [T]here is no requirement that individual purchaser plaintiffs must allege coercion at the individual level, rather than at the market level, to state a Section 1 tying claim. In the Ninth Circuit, "[t]he essence of an antitrust tying violation is not the seller's unilateral refusal to deal with a buyer who refuses to buy the tied product, but the use by the seller of its 'leverage' to force a purchaser to do something that he would not do in a competitive market."

*Tucker v. Apple Comp., Inc.*, 493 F. Supp. 2d 1090, 1097 (N.D. Cal. 2006); *see also Slattery v. Apple Comp., Inc.*, No. C 05-00037 JW, 2005 WL 2204981, at *3 (N.D. Cal. Sept. 9, 2005). These rulings are correct: it is well-settled that the Ninth Circuit "does not require any showing of [] actual coercion in tying claims." *Bafus v. Aspen Realty*, 236 F.R.D. 652, 657 (D. Idaho 2006); *see also Moore*, 550 F. 2d at 1217 ("Although some cases in other circuits have required a showing of actual coercion . . . our reading of the Supreme Court's opinions supports the view that coercion may be implied from a showing that an appreciable number of buyers have accepted burdensome terms, such as a tie-in, and there exists sufficient economic power in the tying product market . . . .").

Thus, to the extent coercion need be shown at all, plaintiff only needs to show that "an appreciable number of buyers" have been coerced, which is a market-level showing made on a class-wide basis. *See, e.g., Bafus*, 236 F.R.D. at 657 (following *Moore*, 550 F.2d 1207); *Image Tech Servs., Inc. v. Eastman Kodak Co.*, Nos. C 07-1686, 94-0524, 94-1070, 1994 WL 508735, at *3 (N.D. Cal. Sept. 2, 1994) (same); *see also Collins v. Int'l Dairy Queen, Inc.*, 168 F.R.D. 668, 675-76 (M.D. Ga. 1996) (rejecting argument that coercion must be proved individually, so as to preclude class certification). Therefore, proof of market coercion – i.e., that "an appreciable number of buyers have accepted" the tie-in, and that Apple holds "sufficient economic power in the tying

product market" does not require individual "state-of-mind" testimony from every class member so as to preclude class certification.[9]

While such a showing need not be proven on the merits at the class certification stage, Apple's own testimony confirms that Apple coerces and locks buyers of iTunes products into purchasing its iPods by restricting their choice of portable digital music players to the iPod. Indeed, Apple has proudly announced that "music purchased from Apple's iTunes store will only play on iPods." *See, e.g.*, Haeggquist Decl. Ex. 5 (*see supra*, Jobs, *Thoughts on Music*) ("[Apple] envelopes each song purchased from the iTunes store in special and secret software so that it cannot be played on unauthorized devices."). "Today, Apple's own iPod compressed audio players are the **only** devices on the market capable of playing iTunes music, though the company has licensed FairPlay to Motorola, which plans to launch an iTunes compatible handset this year. ***This policy is consistent with Apple's stated goal of driving iPod compressed audio player sales with iTunes Music Store* . . . ."[10]** Apple iTunes owners are effectively coerced, on a class-wide basis, in to purchasing iPods because they cannot directly play their iTunes downloads on any other digital music player. Moreover, because of Apple's technological tie, which it is undisputed that every class member is subjected to, coercion can be shown on a class-wide or market level basis.

It is well-settled that inferring coercion on a class-wide basis is permissible. *See Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1161 (9th Cir. 2003) (suggesting that evidence of tie-in requirement sent to customers at large would allow inference of coercion); *Hardy v. City Optical, Inc.*, 39 F.3d 765, 770-71 (7th Cir. 1994) (coercion may be proved on a class-wide basis with evidence of a "blanket policy"), *Moore*, 550 F.2d at 1217 ("coercion may be implied from a

_____

[9] *Moore*, 550 F. 2d at 1217; *accord Bogosian v. Gulf Oil Corp.*, 561 F. 2d 434, 449-50 (3d Cir. 1977) ("The issue is whether the seller acted in a certain way, not what the buyer's state of mind would have been absent the seller's action."); *Anderson Foreign Motors, Inc. v. New England Toyota Distrib., Inc.*, 475 F. Supp. 973, 988 (D. Mass. 1979) ("The Supreme Court's per se test is designed to eliminate detailed evidentiary inquiries of the type that would be required to prove individual buyer coercion. . . . It is the nature of the test that it focuses not on the buyer's state of mind but rather on the seller's actions.").

[10] *See* Haeggquist Decl. Ex. 1, French Aff. ¶47 (emphasis added).

showing that an appreciable number of buyers have accepted burdensome terms. . . . [In *Siegel*] we refused to accept appellant's individual coercion theory and we were not troubled by the fact there was no evidence to show that each [class member] had been required to purchase the equipment, mixes, and packaging"); *Collins*, 168 F.R.D. at 675-76 (certifying tying claim where proof of coercion focused on the defendants' conduct common to the putative class).

### (2) Coercion Can Be Found Where Two Products Are Not Purchased Simultaneously

Plaintiff need not show that a consumer was required to buy the two products, the tied and tying product, together at the same time in order to prove a tie. An illegal tying claim may be established absent an explicit refusal by the defendant to sell the tying product unless the buyer also agrees to buy the tied product. *Ways & Means v. IVAC Corp.*, 506 F. Supp 697, 701 (N.D. Cal. 1979), *aff'd*, 638 F.2d 143 (9th Cir. 1981); *see also Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1500 (8th Cir. 1992). The Ninth Circuit and several other circuits have ruled that a consumer can show coercion when there is no other viable economic way but to purchase the tying and tied products. In *Ways & Means*, 506 F. Supp at 701, the court held that "separate availability will not preclude antitrust liability where a defendant has established its pricing policy in such a way that the only viable economic option is to purchase the tying and tied products in a single package." *See also In re General Data Corp. Antitrust Litig.*, 490 F. Supp. 1089, 1110-11 (N.D. Cal. 1980) (fact that computer manufacturer technically offered buyers the option to purchase its computer and memory separately did not preclude liability for tying because the products essentially were required to be purchased together). The case of *Murphy v. Business Cards Tomorrow, Inc.*, 854 F.2d 1202 (9th Cir. 1988), *overruled on other grounds,* 914 F.2d 1136 (9th Cir. 1990) (overruling portion of decision concerning Rule 11 sanctions), set forth the appropriate standard in the Ninth Circuit for what constitutes an illegal tying arrangement. "The essence of an antitrust tying violation is not the seller's unilateral refusal to deal with a buyer who refuses to buy the tied product . . . but the use by the seller of its 'leverage to force a purchaser to do something that he would not do in a competitive market.'" *Id.* at 1204 (quoting *Jefferson Parish*, 466 U.S. at 14 n.20; *U.S. v. Microsoft Corp.*, 253 F.3d 34, 45 (D.C. Cir. 2001) (tying claim permitted where tying product, a computer operating

system, was used for purposes other than internet access for which the tied product, Internet Explorer, was created). And in *Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*, No. C93 20613 RMW, 1995 WL 853037, at *13 (N.D. Cal. Sept. 7, 1995), the court utilized the "viable economic option" standard, i.e., whether the tying product is "truly available" without purchase of the tied products. Although in *Santa Cruz* the court found plaintiffs ultimately failed to adequately plead sufficient facts to maintain a tying cause of action, the standard is instructive in this case, nonetheless. "Tie-ins are non coercive, and therefore legal, only if the components are separately available to the customer on a basis as favorable as the tie-in arrangement." *Advance Bus. Sys. & Supply Co. v. SCM Corp.*, 415 F.2d 55, 62 (4th Cir. 1969).

Here, it is clear that neither the iPod nor the iTunes music sold by Apple's Music Store are separately available to consumers on a basis as favorable as through the current tied arrangement. In *N. Pac. R.R. v. United States*, 356 U.S. 1 (1958), the Supreme Court found an illegal tying arrangement even though the plaintiffs could purchase the tying and tied products **separately**. Defendant Northern Pacific leased land to the plaintiffs under the express condition that plaintiffs "ship over its [defendant's railroad] lines all commodities produced or manufactured on the land, provided that its rates . . . were equal to those of competing carriers." *Id.* at 3. Thus, the contract permitted plaintiffs to lease land from the defendant railway company and still utilize transportation services purchased from competitors, provided the competitors' services were priced lower. Plaintiffs were not required to demonstrate that they were coerced to lease the land and purchase defendant's transportation services. Rather, the Court found the defendant's "preferential routing" caused an unlawful restraint on trade because the defendant exploited its substantial economic power by virtue of its extensive land holdings "to induce large numbers of purchasers and lessees to give it preference, to the exclusion of its competitors, in carrying goods or produce from the land transferred to them." *Id.* at 7. The Supreme Court held that the defendant's "preferential routing" clause constituted an unlawful tying arrangement even though it technically allowed the lessee-plaintiffs the option of purchasing transportation services **separately** from the defendants' land lease. *Id.* at 8, 12. Here, Apple is effectively forcing consumers to buy the tied and tying products, even if not simultaneously.

None of the elements of plaintiff's tying claim turns on the individual circumstances of a particular product purchaser. Courts both within and outside of the Ninth Circuit have consistently certified similar tying claims for class-wide resolution.[11]

### b. Plaintiff's Monopolization and Attempted Monopolization Claims

Similarly, plaintiff's monopolization and attempted monopolization claims will be proven with reference to evidence that is completely common to the class. A monopolization claim requires (1) possession of monopoly power in the relevant market, (2) willful acquisition or maintenance of that power, and (3) antitrust injury. *See Austin v. McNamara*, 979 F.2d 728, 739 (9th Cir. 1992). The Ninth Circuit has explained that there are four requirements to show antitrust injury: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000) (quoting *Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999)). *See* ¶¶54-60 (plaintiff's allegations of antitrust injury).

To show attempted monopolization, a plaintiff must ultimately prove (1) a specific intent to monopolize; (2) predatory or anticompetitive conduct; and (3) a dangerous probability of success in achieving monopoly power.[12]

As this Court has already found, "common questions of law and fact predominate over individual questions as to plaintiff's monopolization and attempted monopolization causes of action." 12/22 Order at 5. "Questions surrounding the willfulness of Apple's behavior are undoubtedly common to the class, as are questions of antitrust injury, especially if the injury alleged is that Apple uniformly charged consumers supracompetitive prices based on its purported monopoly

---

[11] *See, e.g.*, *Bafus*, 236 F.R.D. 652 (certifying tying claims); *see generally Image Tech.*, 1994 WL 508735 (same); *In re Visa Check/Mastermoney Antitrust Litig.*, 192 F.R.D. 68 (E.D.N.Y. 2000), *aff'd*, 280 F.3d 124 (2d Cir. 2001) (same); *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236 (E.D. Mich.1997) (same); *Collins*, 168 F.R.D. 668 (same).

[12] *See Spectrum Sports v. McQuillan*, 506 U.S. 447, 459 (1993); *Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.*, 411 F.3d 1030, 1041-45 (9th Cir. 2005), *overruled on other grounds sub nom. Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312 (2007).

position." 12/22 Order at 5. Like the direct purchaser plaintiffs, here, Plaintiff also alleges that the antitrust injury caused by Apple's monopoly power is that Apple was able to charge supracompetitive prices for its iPods. And, Dr. French has set forth an economic methodology to demonstrate that proof of impact and damages is possible on a class-wide basis. *See* Haeggquist Decl. Ex. 1, French Aff. 17, 35-69.

Accordingly, plaintiff has met the predominance requirement of Rule 23(b)(3) for her monopolization and attempted monopolization claims.

### c. Plaintiff's California State Law Claims

Plaintiff's other state law claims also will be proven with common evidence on a class-wide basis.

### (1) California Business and Professions Code §17200

Business and Professions Code §17200, also known as the Unfair Competition Law ("the UCL"), defines "unfair competition" to "mean and include any unlawful, unfair or fraudulent business act or practice." *Id.* Because "section 17200 'is written in the disjunctive, it establishes three varieties of unfair competition – acts or practices [which] are unlawful, or unfair, or fraudulent.'" *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 851 (2002).

Plaintiff alleges that Apple engaged in unfair competition under each of the three prongs. ¶¶108-115. Plaintiff need only prove a violation of one these three prongs to prevail. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

Under the "unlawful" prong, the UCL "borrows" violations of other laws and treats them as independently actionable practices. *Cel-Tech*, 20 Cal. 4th at 180. "With respect to the unlawful prong, '[v]irtually any state, federal or local law can serve as the predicate for an action' under section 17200." *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002) (emphasis omitted). Violations of state and federal antitrust statutes and the CLRA constitute violations under the unlawful prong of the UCL. *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. App. 4th 26 (1998) (violations of the Cartwright Act); *B.W.I. Custom Kitchen v. Owens-Illinois*, 191 Cal. App. 3d 1341, 1348 n.6 (1987) ("Violations of the Cartwright Act are also unlawful business

practices under the unfair competition statutes."); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095-1096 (N.D. Cal. 2007) (violations of the CLRA).

Accordingly, the same common evidence that will be used to prove Apple violated state and federal laws against monopolization and tying will be used to prove Apple violated the UCL.

### (2) The Consumer Legal Remedies Act

The CLRA (Civ. Code §1770(a)(19)) provides:

> The following unfair methods of competition and unfair or deceptive
>
> acts or practices undertaken by any person in a transaction intended
>
> to result or which results in the sale or lease of goods or services to
>
> any consumer are unlawful:
>
>         *      *      *
>
> (19)    Inserting an unconscionable provision in the contract.

Plaintiff will demonstrate common impact for her claim under the CLRA using the same evidence that will prove her federal antitrust claims. It is based on the same alleged conduct that gives rise to the antitrust claims, and involves the same issues. As discussed above, these issues are susceptible to class-wide proof.

### d. Antitrust Damages Can Be Proven on a Class-Wide Basis

"Courts recognize a somewhat relaxed standard of proof once the antitrust violation and resulting injury have been proven. This is the logical result of an inability to ascertain exactly what 'plaintiff's position would have been in the absence of defendant's antitrust violation.'" *Microsoft*, 12/22 Order at 17 (citations omitted). California law provides that damages may be awarded based on a defendant's aggregate overcharge without proof that each class member was overcharged on the amount thereof. *Bruno v. Superior Court*, 127 Cal. App. 3d 120, 128-29 & n.4 (1981). California's amendment of the Cartwright Act to expressly authorize indirect purchaser actions is a legislative determination that it is possible to trace the overcharge to the ultimate victim and that plaintiffs should be allowed to present their proof. *Union Carbide Corp. v. Superior Court*, 36 Cal. 3d 13, 21-22 (1984). Since the statute was amended, our courts have routinely allowed indirect purchasers to

demonstrate the pass-through of defendant's overcharge to the ultimate consumer on a class-wide basis. *B.W.I.*, 191 Cal. App. 3d at 1352. ("[A] class should be able to show on a generalized basis that its members absorbed at least some portion of the alleged overcharges.")  "Plaintiffs do not need to supply a precise damage formula at the certification stage of an antitrust action . . . The Court need only determine that plaintiffs have proffered a method that is not so insubstantial or unreasonable as to amount to no method at all.  They have met their low burden here." *Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 354 (N.D. Cal. 2005).  Individual issues, even if they do exist, are not an obstacle to class certification.  Standard damage calculation techniques more than satisfy this requirement. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 02-1486, 2006 WL 1530166, at *9 (N.D. Cal. June 5, 2006).

Here, Dr. French explains the methodology he will use to determine damages to the indirect purchaser class.  Haeggquist Decl. Ex. 1, French Aff. ¶¶64-69.  Specifically, he sets out how to calculate the overcharge to direct purchasers, and then to measure the amount of the overcharge passed on to indirect purchasers. *Id.* ¶65.  Dr. French describes three methods of measuring the overcharge to direct purchasers:  Temporal benchmarks, the yardstick approach, and margin analysis. *Id.* ¶¶65-68.  He also describes a more direct method of measuring the overcharge to indirect purchasers, performing a regression analysis using retail iPod prices. *Id.* ¶69.

Dr. French's report more than satisfies plaintiff's burden of showing an available method of proving impact by evidence applicable on a class-wide basis.  His model employs class-wide proof, and does not depend on individualized proof to determine damages.  It is similar to other models that courts have accepted as showing that damages can be shown using common proof for purposes of class certification in antitrust cases involving allegations of overcharges.

In addition, Apple's use of price lists is strong evidence of common impact in this case. *See In re Citric Acid Antitrust Litig.*, No. 95-1092, 1996 WL 655791, at *7 (N.D. Cal. Oct. 2, 1996) ("high list prices proved the fact of impact, even if the degree of impact differed between products and purchasers").

### 2. A Class Action Is the Superior Method to Resolve Plaintiff's Claims

Plaintiff also satisfies the requirement that a class action be superior to other methods of adjudicating the controversy. *See Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235 (9th Cir. 1997) ("stating that the party seeking certification needs to make a "showing [as to] why the class mechanism is superior to alternative methods of adjudication"). A class action is superior where "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." *Id.* at 1234. Rule 23(b)(3) provides four factors to be considered in this assessment:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)    the likely difficulties in managing a class action.

Here, each class member's individual claim is relatively small in comparison to the expense of litigating an individual action. In addition, because class members' claims are virtually identical, no one member of the class has an interest in controlling the litigation. Plaintiff is aware of no other litigation concerning the instant controversy. Even in cases where there are more complex issues and complexity, denial of class certification on manageability grounds is disfavored.[13] For these very reasons this Court held in the related direct purchaser action that "a class action is the superior method to adjudicate plaintiffs' claims. 12/22 Order at 12-13. Plaintiff Somers respectfully urges the Court to find the same here.

---

[13]    *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) ("[F]ailure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule.") (internal quotation marks and citation omitted); *In re S. Cent. States Bakery Prods. Antitrust Litig.*, 86 F.R.D. 407, 423 (M.D. La. 1980) (quoting *Manual for Complex Litigation* §1.43 n.72 (1977) (failure to certify a class on manageability grounds is disfavored and "'should be the exception rather than the rule'")).

## D. Choice of Law Issues Do Not Defeat Predominance of the Cartwright Act Damages Claim

Plaintiff seeks certification of nationwide a damages class under California's Cartwright Act because, *inter alia*, Apple is headquartered in California, and Apple's wrongful conduct emanated from California. The presumption in the choice-of-law analysis is that California, as the forum state, will apply its own law. *Hurtado v. Superior Court*, 11 Cal. 3d 574, 581 (1974) ("'even in cases involving foreign elements, the court should be expected, as a matter of course, to apply the rule of decision found in the law of the forum'").

Under California's governmental interest analysis, California law applies unless: (1) California law conflicts with the law of another state; (2) the state whose law conflicts with California law has an interest in applying its own law; and (3) the foreign state's interest in applying its own law would be more impaired than California's interest in applying its own law if the law of such a state were not applied. *Washington Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 919-20 (2001); *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 614 (1987); *see also In re MDC Holdings Sec Litig.*, 754 F. Supp. 785, 803 (S.D. Cal. 1990) (citing *Harmsen v. Smith*, 693 F.2d 932, 946-47 (9th Cir. 1982)). The party arguing against application of the forum state's law bears the burden of proving each of these three elements. *Hurtado*, 11 Cal. 3d at 579.

### 1. California's Laws Do Not Conflict with Those of Other States

"'When one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, there is no real problem; clearly the law of the interested state should be applied.'" *Hurtado*, 11 Cal. 3d at 580. This means the trial court may properly find California law applicable without proceeding to the second step in the analysis if the foreign law proponent fails to identify any actual conflict or to establish the other state's interest in having its own law applied. *Washington Mut.*, 24 Cal. 4th at 919. Apple cannot show that California law conflicts with the law of another state. "[T]he idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims." *Hanlon*, 150 F.3d at 1022-23. Therefore, application of California's antitrust laws will not impair any other state's interests.

## 2. No Other State Has an Interest in Applying Its Own Law

Even if Apple could show material differences between the laws of California and the other states, the Court must determine what interest, if any, each state has in having its own law applied. *Washington Mut.*, 24 Cal. 4th at 920. A court should decline to apply California law "only if it is shown that another state has a greater interest in having its law applied." *In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15, 19 (N.D. Cal. 1986). Defendant cannot demonstrate that other states have an interest in applying their own laws. No state has an interest in preventing its citizens from invoking California law to remedy damage from activities that emanated from California. Moreover, courts have recognized California's interest in providing a remedy for wrongful conduct that originated and occurred within the state, both to California residents, and to nonresidents as well. Indeed, a California appellate court reached precisely this conclusion in another case involving Apple. In *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 241-44 (2001), the trial court certified a nationwide settlement class, holding that there were significant contacts with California to support certification of a nationwide class, and to justify subjecting defendant to California's consumer protection laws. *See id.* at 232-34. Objectors argued that the court erred in certifying a nationwide class, "[b]ecause class members in other states had different rights and remedies under their state laws." *Id.* at 237. Concluding, "California law controls in this case" (*id.* at 240), the *Wershba* court followed *Clothesrigger* where the court found sufficient contacts with California to allow application of its law to a nationwide class. *See Clothesrigger*, 191 Cal. App. 3d at 616 ("California's more favorable laws may properly apply to benefit nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery.").

California is the epicenter of defendant's anticompetitive activities. The core decision at issue here, namely the encoding of Apple's music and video files with DRM, was made at Apple's headquarters in California. *See Wershba*, 91 Cal. App. 4th at 242 ("the core decision at issue here, namely the change of policy . . . was made at Apple's headquarters in California."). This case is unlike other antitrust cases in which multiple defendants in different locations allegedly engaged in a conspiracy to fix prices. Here, a single defendant based in California is responsible for the whole of the anticompetitive acts alleged.

Certification of classes of indirect purchasers is common and is an important remedy that California and other states have made available to consumers. Unlike other indirect purchaser cases, involving raw materials that may be have been altered or processed as they pass from one entity to another, this case presents a very simple distribution chain: consumers bought a finished product from retailers that were not altered in any way. *See* Haeggquist Decl. Ex. 1, French Aff. ¶25. Moreover, plaintiff and millions of class members are located in California. As in *Clothesrigger*, there are significant contacts with California in this case to satisfy constitutional concerns and support certification of a nationwide class.

### 3. Other State Laws Will Not Be Impaired If California's Laws Were Applied to All Class Members.

Only if Apple is able to establish that (1) the laws of the various states are materially different, and (2) each state has its own governmental interest in having its law applied to the multi-state class claims, does the Court then employ the third step in the governmental interest analysis: selecting the law of the state whose interests would be more impaired if its law were not applied. "In making this comparative impairment analysis, the trial court must determine 'the relative commitment of the respective states to the laws involved' and consider 'the history and current status of the states' laws' and 'the function and purpose of those laws.'" *Washington Mut.*, 24 Cal. 4th at 920. California's interest in protecting consumers from wrongful conduct that occurred in California and was perpetrated by a company headquartered in California would be more impaired if not applied than the interest of any other state. Apple has put itself at the heart of California's interest in protecting consumers, namely to prevent California corporations from allowing consumer-harming practices such as these to emanate from California. It is clear that California cannot reasonably effectuate its policy if it does not extend to include class members residing in other states.[14] Even

---

[14] *Bernhard v. Harrah's Club*, 16 Cal. 3d 313, 322-23 (1976); *see also Wong v. Tenneco, Inc.*, 39 Cal. 3d 126, 143 (1985) ("Application of Mexican law in this case would completely impair California's interests in compensation, punishment and deterrence."); *Havlicek v. Coast-To-Coast Analytical Servs. Inc.*, 39 Cal. App. 4th 1844, 1853 (1995) (California's interest would be more impaired by the application of Delaware law where corporation operating out of California); *In re Seagate Techs. Sec. Litig.*, 115 F.R.D. 264, 272 (N.D. Cal. 1987) (state's interest in preventing fraud by its corporations justifies application of its law); *In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D.

assuming Apple could identify a genuine conflict between California and another state's laws, and that another state has an interest in applying its own law, Apple would be hard-pressed to show that another state's interests would be more impaired than California's interest in applying its own law especially due to California's commitment to protecting consumers. Apple cannot overcome the presumption that California law controls and may be applied to all Class members' claims.

## IV. THE COURT SHOULD APPOINT ZELDES & HAEGGQUIST, LLP AND MEHRI & SKALET, PLLC AS CLASS COUNSEL

Rule 23(g) directs the court to appoint class counsel at the same time that it certifies a class. Here, the two firms of Zeldes & Haeggquist, LLP and Mehri & Skalet, PLLC have been litigating this case on behalf of indirect purchasers since December 2007. They have extensive experience in antitrust and consumer class action litigation.

The lawyers of Zeldes & Haeggquist, LLP have a long history of successfully litigating antitrust and consumer fraud class actions. Most recently, Zeldes & Haeggquist, LLP won final approval of a nationwide class settlement against Apple, Inc., concerning an alleged defect in the power adapter for its portable computers. *Gordon v. Apple, Inc.*, Case No. 5:06-CV-5358 JW (N.D. Cal.). Under the settlement, more than two million class members are eligible to receive cash refunds in the amount of $25 to $79. Zeldes & Haeggquist, LLP is also currently representing plaintiffs in two nationwide consumer fraud class actions, one against Public Storage, Inc. for its alleged deceptive and misleading advertising practices, *Hilary v. Public Storage, Inc.*, Case No. BC382782 (Cal. Superior Ct., Los Angeles); and the other against Nvidia for allegedly knowingly placing defective graphic cards into the marketplace impacting thousands if not millions of computers, *NBOA v. Nvidia*, Case 5:08-cv-05179-JW (N.D. Cal.). The firm also represents plaintiffs in two California employment class actions.

Zeldes & Haeggquist, LLP's founding partners come from the nation's largest plaintiffs' class action firm. While at their prior firm, Zeldes & Haeggquist partners litigated numerous nationwide consumer and antitrust class actions including *In re Payment Card Interchange Fee &*

15, 18 (N.D. Cal. 1986) (stating that California "has a strong interest in the allegedly fraudulent conduct of its corporations . . . and in protecting its residents and others from such fraud").

*Merch. Disc. Antitrust Litig.* (E.D.N.Y.), *In re Carbon Black Antitrust Litig.* (D. Mass.), *In re Med. Waste Servs. Antitrust Litig.*, MDL No. 1546 (D. Utah), participated in the successful prosecution and settlement of numerous other antitrust and unfair competition cases, including the Rubber Chemicals indirect purchaser cases, which resulted in significant cy pres funds to non-profit groups advocating for competition; the *Bank Privacy Cases* (Cal. Superior Ct., San Francisco), which resulted in better bank privacy policies, funding to non-profit groups advocating for privacy rights, and benefits to credit cardholders; and *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.* (*Carbon Fiber Antitrust Litig.*), Case No. CV-99-7796 (C.D. Cal.), which resulted in a $675 million settlement for a class of purchasers that purchased allegedly price-fixed carbon fiber and race discrimination underwriting class actions against large insurance companies for their practice of intentionally charging African-Americans and other minorities more for life insurance than similarly situated Caucasians (cases that collectively recovered over $400 million for African-Americans and other minority class members as redress for the civil rights abuses they were subject to). *See* Haeggquist Decl. Ex. 3, Zeldes & Haeggquist, LLP Firm Resume for further details.

Mehri & Skalet, PLLC and its attorneys have an impressive history of accomplishment in class actions that serve the public interest. As further detailed in the Firm Resume (Haeggquist Decl. Ex. 4), Mehri & Skalet attorneys have achieved precedent-setting victories in litigation on behalf of women and people of color in the workplace, securing both substantial monetary relief, and systematic corporate reforms. The firm also has an impressive history of accomplishment in consumer class actions, recovering on behalf of uninsured patients against a health care company that engaged in discriminatory billing practices, securing full reimbursement of class members' brake repairs in a class action against Ford Motor Company, achieving cash reimbursement and discounts for purchasers of HP computers with a defective motherboard, and obtaining recovery of Verizon's overcharges to small business owners.

The firm also has substantial experience in antitrust, securities and ERISA class action litigation. The firm currently represents plaintiffs in two antitrust class action suits alleging anticompetitive tying of cable television services with cable boxes, *In re Set-Top Cable Television Box Antitrust Litigation,* MDL No. 1995, 08 CV 7616 (PKC) (S.D.N.Y.), and *Mays v. Comcast*

1  *Corp.*, 09 CV 670 (JHL) (N.D. Ill). Mehri & Skalet attorneys also represent plaintiffs in *In re Puerto*

2  *Rican Cabotage Antitrust Litig.*, MDL-1960 (D.P.R.), *In re Chocolate Confectionary Antitrust Litig.*,

3  MDL-1935 (M.D. Pa.), and *In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL-1869 (D.D.C.).

4  Craig Briskin, an attorney with the firm, has been litigating antitrust class actions since 2001.

5  **V.      CONCLUSION**

6        For the reasons stated herein, plaintiff asks the Court to grant her motion for class

7  certification, certify the proposed nationwide class pursuant to Federal Rule of Procedure 23(b)(2)

8  and (b)(3), and appoint the firms of Zeldes & Haeggquist, LLP and Mehri & Skalet, PLLC as Co-

9  Lead Class Counsel.

10  DATED:  February 23, 2009                    Respectfully submitted,

11                                               ZELDES & HAEGGQUIST, LLP
                                                 HELEN I. ZELDES
12                                               ALREEN HAEGGQUIST

13

14                                                _s/  Helen I. Zeldes_
                                                    HELEN I. ZELDES
15
                                                 655 West Broadway, Suite 1410
16                                               San Diego, CA  92101
                                                 Telephone:  619/955-8218
17                                               Fax:  619/342-7878
                                                 helenz@zhlaw.com
18                                               alreenh@zhlaw.com

19                                               MEHRI & SKALET, PLLC
20                                               STEVEN A. SKALET
                                                 CRAIG L. BRISKIN
21                                               1250 Connecticut Ave NW, Suite 300
                                                 Washington, DC  20036
22                                               Telephone:  202/822-5100
                                                 Fax:  202/822-4997
23                                               sskalet@findjustice.com
24                                               cbriskin@findjustice.com

25                                               Attorneys for Plaintiff Stacie Somers

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 23, 2009.

s/ Helen I. Zeldes
HELEN I. ZELDES

ZELDES & HAEGGQUIST, LLP
HELEN I. ZELDES
ALREEN HAEGGQUIST
655 West Broadway, Suite 1410
San Diego, CA 92101
Telephone: 619/955-8218
Fax: 619/342-7878

Email Addresses: helenz@zhlaw.com
                 alreenh@zhlaw.com

**MAILING INFORMATION FOR CASE C 07-06507**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Craig L. Briskin**
  cbriskin@findjustice.com, Pleadings@findjustice.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com, ybennett@jonesday.com

- **Tracy Strong**
  tstrong@jonesday.com, dharmon@jonesday.com

- **Elaine Wallace**
  rchavez@jonesday.com, ewallace@jonesday.com, clok@jonesday.com

- **Helen I. Zeldes**
  helenz@zhlaw.com

**Manual Notice List**

The following is the list of attorneys who are not on the list to receive e-mail notices for this case (who therefore require manual noticing).

**Steven A. Skalet**
Mehri & Skalet, PLLC
1250 Connecticut Avenue NW, Suite 300
Washington, DC 20036

# MAILING INFORMATION FOR A CASE 5:05-CV-00037-JW

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- Francis Joseph Balint, Jr
  fbalint@bffb.com

- Michael David Braun
  service@braunlawgroup.com

- Andrew S. Friedman
  rcreech@bffb.com,afriedman@bffb.com

- Roy A. Katriel
  rak@katriellaw.com,rk618@aol.com

- Thomas J. Kennedy
  tkennedy@murrayfrank.com

- Caroline Nason Mitchell
  cnmitchell@jonesday.com,mlandsborough@jonesday.com,
  ewallace@jonesday.com

- Robert Allan Mittelstaedt
  ramittelstaedt@jonesday.com,ybennett@jonesday.com

- Brian P Murray
  bmurray@rabinlaw.com

- Jacqueline Sailer
  jsailer@murrayfrank.com

- Adam Richard Sand , Esq
  invalidaddress@invalidaddress.com

- John J. Stoia , Jr
  jstoia@csgrr.com

- Tracy Strong
  tstrong@jonesday.com,dharmon@jonesday.com

- Bonny E. Sweeney
  bonnys@csgrr.com,tturner@csgrr.com,E_file_sd@csgrr.com

- Helen I. Zeldes
  helenz@zhlaw.com

**Manual Notice List**

The following is the list of attorneys who are not on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Todd David Carpenter
Bonnett, Fairbourn, Friedman, & Balint
2901 N. Central Avenue
Suite 1000
Phoenix, AZ 85012

Elaine A. Ryan
Bonnett Fairbourn Friedman & Balint, P.C
2901 N. Central Avenue
Suite 1000
Phoenix, AZ 85012