1  COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  BONNY E. SWEENEY (176174)
   655 West Broadway, Suite 1900
3  San Diego, CA 92101
   Telephone: 619/231-1058
4  619/231-7423 (fax)
   bonnys@csgrr.com
5
   THE KATRIEL LAW FIRM
6  ROY A. KATRIEL (*pro hac vice*)
   1101 30th Street, N.W., Suite 500
7  Washington, DC 20007
   Telephone: 202/625-4342
8  202/330-5593 (fax)
   rak@katriellaw.com
9
   Co-Lead Counsel for Plaintiffs
10
   [Additional counsel appear on signature page.]
11
                    UNITED STATES DISTRICT COURT
12
                   NORTHERN DISTRICT OF CALIFORNIA
13
                          SAN JOSE DIVISION
14

| | | |
|---|---|---|
15 | THE APPLE IPOD ITUNES ANTI-TRUST LITIGATION | ) | Lead Case No. C-05-00037-JW(RS) |
   | | ) | |
16 | | ) | <u>CLASS ACTION</u> |
   | | ) | |
17 | This Document Relates To: | ) | PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR |
   | | ) | JUDGMENT ON THE PLEADINGS AS TO |
18 | ALL ACTIONS. | ) | PLAINTIFFS' TYING CLAIMS |
   | | ) | |

19                                    JUDGE:    Hon. James Ware
                                      DATE:     March 23, 2009
20                                    TIME:     9:00 a.m.
                                      CTRM:     8-4th Floor
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     SUMMARY OF PLAINTIFFS' TYING CLAIMS...........................................2

III.    APPLICABLE LEGAL STANDARDS .............................................................2

IV.     LEGAL ARGUMENT..........................................................................................3

        A.      Issues Raised by the Court...............................................................3

                1.      There Is No Requirement Under Section 1 that the Tying and Tied Products Be Purchased Together .............................3

                2.      Plaintiffs Need Not Allege Coercion on an Individual Basis to State a Viable Section 1 Tying Claim..............................9

        B.      Issues Raised by Apple ...................................................................14

                1.      Plaintiffs Allege Actionable Federal Law Claims .....................14

                2.      Plaintiffs Allege Actionable State Law Claims ........................15

V.      CONCLUSION....................................................................................................16

# TABLE OF AUTHORITIES

**CASES**

*Adv. Bus. Sys. & Supply Co. v. SCM Corp.*,
    415 F.2d 55 (4th Cir. 1969) ................................................................7

*Amerinet, Inc. v. Xerox Corp.*,
    972 F.2d 1483 (8th Cir. 1992) .............................................................8

*Ariz. v. Maricopa County Med. Soc.*,
    457 U.S. 332, 102 S. Ct. 2466 (1982) ...............................................15

*B.H. Goodrich v. Betkoski*,
    99 F.3d 505 (2d Cir. 1996)...................................................................3

*Betaseed, Inc. v. U&I, Inc.*,
    681 F.2d 1203 (9th Cir. 1982) ...........................................................10

*Bogosian v. Gulf Oil Corp.*,
    561 F.2d 434 (3d Cir. 1977).................................................................7

*Cascade Health Solutions v. Peacehealth*,
    515 F.3d 883 (9th Cir. 2008).........................................................10, 13

*Chase Parkway Garage Inc. v. Subaru. Inc.*,
    94 F.R.D. 330 (D. Mass. 1982).........................................................13

*Colburn v. Roto-Rooter Corp.*,
    78 F.R.D. 679 (N.D. Cal. 1978)..........................................................13

*Compuware Corp. v. IBM*,
    259 F. Supp. 2d 597 (E.D. Mich. 2002)...............................................7

*Daniels v. Amerco*,
    No. 81 CIV 3801 (RLC),
    1983 WL 1794 (W.D.N.Y. Mar. 10, 1983)..........................................13

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451, 112 S. Ct. 2072 (1992)...................................... *passim*

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*,
    132 F.3d 526 (9th Cir. 1997) ..........................................................3, 13

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
    703 F.2d 534 (9th Cir. 1983) ......................................................5, 6, 9, 10

*Fortner Enters., Inc. v. United States Steel Corp.*,
    394 U.S. 495 89 S. Ct. 1252 (1969) .....................................................9

*Freeland v. AT & T Corp.*,
    238 F.R.D. 130 (S.D.N.Y. 2006) ........................................................13

|  | Page |
|---|---|
| *Hill v. A-T-O, Inc.*, | |
| 535 F.2d 1349 (2d Cir. 1976) | 12, 14 |
| *In re Data Gen. Corp. Antitrust Litig.*, | |
| 490 F. Supp. 1089 (N.D. Cal. 1980) | 4 |
| *In re Live Concert Antitrust Litig.*, | |
| 247 F.R.D. 98 (C.D. Cal. 2007) | 2 |
| *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, | |
| 466 U.S. 2, 104 S. Ct. 1551 (1984) | 8 |
| *Little Caesar Enters., Inc. v. Smith*, | |
| 895 F. Supp. 884 (E.D. Mich. 1995) | 13 |
| *Moore v. Jas H. Matthews & Co.*, | |
| 550 F.2d 1207 (9th Cir. 1977) | *passim* |
| *Murphy v. Bus. Cards Tomorrow, Inc.*, | |
| 854 F.2d 1202 (9th Cir. 1988) | 9, 13 |
| *N. Pac. Ry. Co. v. United States*, | |
| 356 U.S. 1, 78 S. Ct. 514 (1958) | *passim* |
| *Nobel Scientific Indus. v. Beckham Instruments*, | |
| 670 F. Supp. 1313 (D. Md. 1986) | 7, 14 |
| *Olmstead v. Amoco Oil Co.*, | |
| No. 76-247-Orl-Civ-Y, | |
| 1977 WL 1416 (M.D. Fla. June 16, 1977) | 13 |
| *Paladin Assocs. v. Montana Power Co.*, | |
| 328 F.3d 1145 (9th Cir. 2003) | 10 |
| *Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*, | |
| No. C93 20613 RMW, | |
| 1995 WL 853037 (N.D. Cal. Sept. 7, 1995) | 8 |
| *Schor v. Abbott Labs.*, | |
| 457 F.3d 608 (7th Cir. 2006) | 7 |
| *Sheridan v. Marathon Petroleum Co., LLC*, | |
| 530 F.3d 590 (7th Cir. 2008) | 4 |
| *Siegel v. Chicken Delight, Inc.*, | |
| 448 F.2d 45 (9th Cir. 1971) | 12 |
| *Slattery v. Apple Comp., Inc.*, | |
| No. C 05-00037 JW, | |
| 2005 WL 2204981 (N.D. Cal. Sept. 9, 2005) | 9 |

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
AS TO PLAINTIFFS' TYING CLAIMS - C-05-00037-JW(RS)

\- iii -

**Page**

*Smith v. Denny's Rests., Inc.*,
   62 F.R.D. 459 (N.D. Cal. 1974)..................................................................13

*Toulumne v. Sonora Cmty. Hosp.*,
   236 F.3d 1148 (9th Cir. 2001) ...........................................................14, 15

*Tucker v. Apple Comp., Inc.*,
   493 F. Supp. 2d 1090 (N.D. Cal. 2006) ........................................9, 13

*Ungar v. Dunkin' Donuts of Am., Inc.*,
   531 F.2d 1211 (3d Cir. 1976)......................................................................13

*United States v. Microsoft Corp.*,
   253 F.3d 34 (D.C. Cir. 2001) ................................................................4, 14

*Waldo v. N. Am. Van Lines, Inc.*,
   102 F.R.D. 807 (W.D. Pa. 1984) ..............................................................13

*Ways & Means, Inc. v. IVAC Corp.*,
   506 F. Supp. 697 (N.D. Cal. 1979),
   *aff'd* 638 F.2d 143 (9th Cir. 1981).......................................................8, 14

**STATUTES, RULES AND REGULATIONS**

15. U.S.C.
   §1............................................................................................. *passim*

Federal Rule of Civil Procedure
   Rule 12(b) ...................................................................................................1
   Rule 12(c)..........................................................................................1, 2, 13

California Business & Professional Code
   §16700 *et seq.* ..........................................................................................15
   §17200 *et seq.* ..........................................................................................15

California Civil Code
   §1750 *et seq.* ............................................................................................15

**SECONDARY AUTHORITIES**

10 Phillip E. Areeda, Herbert Hovenkamp & Einer Elhauge, *Antitrust Law:
   An Analysis of Antitrust Principles and Their Application*,
   ¶1752e (2d ed. 2004) ...................................................................................3

Press Release, *Changes Coming to the iTunes Store*
   available at www.apple.com/pr/library/2009/01/06itunes.html
   (Jan. 6, 2009)................................................................................................2

Plaintiffs Melanie Tucker, Somtai Charoensak, and Mariana Rosen (collectively, "Plaintiffs") respectfully submit this memorandum in opposition to Defendant Apple, Inc.'s ("Apple") Motion for Judgment on the Pleadings as to Plaintiffs' Tying Claims, filed February 13, 2009 ("Apple's Motion").

## I.    INTRODUCTION

On December 22, 2008, the Court certified Plaintiffs' monopolization, attempted monopolization, and state law claims.  Docket No. 196 at 1-2. The Court opted to defer, however, ruling on certification of Plaintiffs' Section 1 tying claims, and invited a Rule 12(b) or Rule 12(c) motion on two specific issues:

> (1)    Can coercion sufficient to support a Section 1 tying claim exist where there is no requirement that the tying product and tied product be purchased together?
>
> (2)    Must such coercion be proved on an individual basis, such that each individual consumer of the tied product must prove that he or she was forced to purchase the tied product?

Docket No. 196 at 6-7.

Apple in its Rule 12(c) motion impermissibly and futilely strays far beyond these two designated questions.  As to the two specified issues of concern, both were correctly decided by the Court when it denied Apple's earlier motions to dismiss.  Supreme Court and Ninth Circuit precedent squarely support the propositions that:  (1) separate availability of the tying and tied products is not fatal to a Section 1 claim and (2) proof of coercion on an individual basis is not required.  *See, e.g.*, *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 462, 112 S. Ct. 2072 (1992); *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5-6, 78 S. Ct. 514 (1958); *Moore v. Jas H. Matthews & Co.*, 550 F.2d 1207, 1217 (9th Cir. 1977).  No matter how innovative Apple's products, Apple's conduct remains constrained by Section 1 of the Sherman Act; though Apple's products may involve modern technology, Plaintiffs' claims are soundly premised on existing and controlling antitrust precedent.  Despite Apple's claim to the contrary, sustaining the Section 1 claims does not require any "expansion" of tying law.

## II.    SUMMARY OF PLAINTIFFS' TYING CLAIMS

Plaintiffs allege that Apple, through iTunes, holds market power in the sale of digital audio and video files (collectively, "iTunes files"), which it exploited by tying the sale of iTunes files and the sale of iPods, Apple's portable digital media players capable of playing such files.  Complaint, ¶21.[1]  Apple achieved this technological tie by encrypting the iTunes files with digital rights management ("DRM") technology called "FairPlay," so that the iTunes files could be portably played only on the portable digital media players manufactured by Apple (collectively, "iPod").  Complaint, ¶¶41-44.  Plaintiffs contend that Apple thereby necessarily constrained the iTunes customer's choice of portable digital media players.[2]  *Id.*  For the same reason, the only replacement for a broken iPod that can play an iTunes customer's existing library of iTunes files would be another iPod.  Complaint, ¶44.  Plaintiffs allege that Apple's conduct deterred competition in the portable player market and allowed it to charge supracompetitive prices to *all* purchasers of iPods, including those who never purchased any iTunes files.  Complaint, ¶¶22, 72, 73.

## III.    APPLICABLE LEGAL STANDARDS

Apple chose to file its motion under Rule 12(c), which provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  As with a motion to dismiss, the court must accept the allegations as true and must otherwise construe the complaint in the light most favorable to the plaintiff.  *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 150 (C.D. Cal. 2007).  "Judgment 'may only be granted when the pleadings show that it is beyond doubt that the plaintiff can prove no set of facts in support

---

[1]    *See* Consolidated Complaint for Violations of the Sherman Antitrust Act, Clayton Act, Cartwright Act, California Unfair Competition Law, Consumer Legal Remedies Act, and California Common Law of Monopolization, filed April 19, 2007 ("Complaint").

[2]    Despite the fact that Apple now offers FairPlay DRM free audio files for sale on iTunes, purchasers with existing libraries of iTunes audio files remain locked in.  The previously purchased audio files remain encrypted with Apple's FairPlay unless the purchaser pays an additional $0.30 per audio file to remove the existing DRM and "unlock" the file.  *See* Press Release, *Changes Coming to the iTunes Store* (Jan. 6, 2009), available at  www.apple.com/pr/library/2009/01/06itunes.html (explaining that Apple charges $0.30 per audio file or 30% of the album price to remove its FairPlay DRM from previously purchased files).

of his claims which would entitle him to relief.'" *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997) (quoting *B.H. Goodrich v. Betkoski*, 99 F.3d 505, 529 (2d Cir. 1996)).

## IV.    LEGAL ARGUMENT

### A.    Issues Raised by the Court

#### 1.    There Is No Requirement Under Section 1 that the Tying and Tied Products Be Purchased Together

A tying arrangement is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, ***or at least agrees that he will not purchase that product from any other supplier***."[3] *Northern Pacific*, 356 U.S. at 5-6; *see also Eastman Kodak Co.*, 504 U.S. at 462-63 (finding evidence of a tie where purchasers of Kodak parts were forced to agree not to purchase service from a Kodak competitor); 10 Phillip E. Areeda, Herbert Hovenkamp & Einer Elhauge, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶1752e (2d ed. 2004) ("[A] tying 'agreement' or 'condition' is present when the defendant has utilized customers' desire for its product A to constrain improperly their choice between its product B and that of its rivals.").

The Supreme Court in *Northern Pacific* made clear that there is no requirement that the tying and tied products be purchased together. There, the government alleged defendant had illegally tied the lease of land and the shipping of commodities by inserting a "preferential routing clause" in its lease agreements. *Id.* at 3-4. The "preferential routing clause" required the lessee to use Northern Pacific to ship certain commodities, so long as Northern Pacific's rates were not greater than those offered by competing carriers. *Id.* at 3.

Importantly, this "preferential routing clause" did not obligate the lessee to ship anything at all; nor, were Northern Pacific's shipping customers required to lease land. *See id.* at 7. Indeed, the lessee of land might never require shipping services, and vice versa. Moreover, it was entirely possible that lessees would use the shipping services of a railroad carrier other than defendant.

---

[3]        Unless otherwise noted, emphasis is added and citations are omitted.

1    Nonetheless, the Supreme Court held that the "preferential routing clause" was *per se* illegal because

2    it forced buyers to "forgo their free choice" of a competing commodities shipper. *Id.* at 6.

3        Following *Northern Pacific*, the Ninth Circuit and other courts have found tying

4    arrangements unlawful under Section 1 despite the lack of an explicit refusal by the defendant to sell

5    the tying product unless the buyer also agreed to buy the tied product. *See, e.g.*, *Moore*, 550 F.2d at

6    1217 (finding a tie where "each purchaser of a cemetery lot was not absolutely required to buy a

7    marker"); *In re Data Gen. Corp. Antitrust Litig.*, 490 F. Supp. 1089, 1110-11 (N.D. Cal. 1980)

8    (existence of the option to purchase the tying product separately did not defeat plaintiff's tying claim

9    because this "option is more theoretical than real").

10        As in *Northern Pacific*, Apple has restrained competition in the market for portable digital

11   media players by imposing a preferential restraint that forces iTunes customers to "forego their free

12   choice" of portable digital media players. Complaint, ¶¶41-44. Regardless of the cost or features of

13   competing portable digital media players, consumers who want to play their iTunes files directly on

14   a portable device must purchase an iPod. *Id.* Like the land lessees in *Northern Pacific*, they are

15   deprived of free choice even though, at least initially, they do not buy an iPod. Complaint, ¶¶41-44,

16   50. Apple's repeated refrain that the iPod works without iTunes files, and vice versa, completely

17   misses the point of Plaintiffs' tying claim: an iPod is the ***only*** portable digital media player that can

18   directly play iTunes files encrypted with FairPlay DRM.[4]

19        The same point was made by the Supreme Court in *Eastman Kodak*, in which independent

20   copy servicer providers alleged that Kodak's policy of selling Kodak copy machine parts (tying

21   product) only to customers who agreed not to purchase copy repair and maintenance services (tied

22   product) from anyone other than Kodak constituted an unlawful tie. 504 U.S. at 459. As a result of

---

24   [4]     Moreover, tying law has never required that the defendant make the tied product usable ***only***
     ***with*** the tying product. *See Sheridan v. Marathon Petroleum Co., LLC*, 530 F.3d 590, 592 (7th Cir.
25   2008) (explaining that the concerns underlying a tying claim arise "if the tied product is used mainly
     with the tying product"); *see also United States v. Microsoft Corp.*, 253 F.3d 34, 45 (D.C. Cir. 2001)
26   (tying liability recognized where defendant sold computer operating system for purposes other than
     internet access for which the tied product was created). Here, even Apple is forced to concede that
27   the overwhelming majority of iPod owners use the device to play iTunes files. *See* Docket No. 181
     at 5.

28

the tie, the independent copy servicer providers were not able to obtain parts and thus were not able to service Kodak copiers. *Id.* at 458. In deciding whether parts and service were separate products for purposes of a tying claim, the Supreme Court noted that "service and parts have been sold separately in the past and still are sold separately to self-service equipment owners." *Id.* at 462. The Supreme Court found that a Section 1 tie existed, despite the fact that self-service equipment owners could purchase parts without service, because all purchasers of parts, including the self-service equipment owners, were forced to agree not to buy service from anyone other than Kodak. *Id.* at 463.

In an attempt to distinguish *Eastman Kodak*, Apple completely distorts its facts, arguing that only the purchasers of both parts and service had a tying claim. Apple's Motion at 5-6. However, as discussed above, self-service equipment owners also had a tying claim because they were forced to agree not to purchase the tied product from anyone other than Kodak. Like in *Eastman Kodak* and *Northern Pacific*, a tie exists here because although purchasers can buy iTunes files separately, they are forced to agree not to purchase a portable digital media player other than an iPod for direct playback of their iTunes files.

Rather than meaningfully distinguish *Northern Pacific* and *Eastman Kodak*, Apple relies on *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 540 (9th Cir. 1983), a case which addressed only the question whether the complaint sufficiently pleaded a *per se* tying claim under Section 1. In *Foremost Pro*, the plaintiff alleged that Kodak illegally tied the sale of its new camera (tying product) to accompanying products (tied products) because the new camera technology required the use of new Kodak film, and that film could only be processed using Kodak's new chemicals and paper. *Id.* at 538. The Ninth Circuit declined to hold that "such technological ties" were *per se* unlawful under Section 1.[5] *Id.* at 542.

---

[5] The Ninth Circuit left undecided the question whether the plaintiff's allegation could state a tying claim under the "rule of reason" approach to antitrust law. *Id.* at 543. Unlike the plaintiff in *Foremost Pro*, however, Plaintiffs in this action have asserted their tying claim against Apple under both the *per se* theory of liability and under the antitrust rule of reason. Complaint, ¶56.

1    However, the court suggested that plaintiff's *per se* tying claim would have survived had

2    plaintiff alleged that the "dominant purpose motivating Kodak's design and introduction of the 110

3    system was to compel purchase of the entire system as a package, rather than to achieve the

4    legitimate goal of marketing new, technologically superior products designed to satisfy consumer

5    demand for smaller, pocket-sized cameras." *Id.* at 543; *see also* Areeda, *et al.*, *supra*, ¶1757a n.7

6    (citing *Foremost Pro* and stating that plaintiff may have adequately plead a tying claim under these

7    facts).

8        Unlike plaintiff in *Foremost Pro*, Plaintiffs here allege that Apple's dominant purpose in

9    tying its iPod and iTunes files was to compel customers to purchase both iTunes files and a portable

10   digital media player from Apple.  Complaint, ¶¶21, 22.  Plaintiffs allege that Apple's decision to use

11   its own proprietary DRM format was to leverage its market power in the market for audio and video

12   digital files to foreclose competition in the market for portable digital media players by ensuring that

13   purchasers of iTunes files would have to also purchase a portable digital media player from Apple.

14   Complaint, ¶¶41-44, 50.

15       Thus, as Professor Areeda acknowledges, *Foremost Pro* does not foreclose Plaintiffs' tying

16   claim as Apple would like the Court to believe.  Areeda, *et al.*, *supra*, ¶1757a n.7.  Instead, *Foremost*

17   *Pro* specifically contemplates such a claim where, as here, a defendant uses technology as a highly

18   effective "preferential routing" technique to compel purchase of both the tying and tied products

19   from defendant.  *See also Northern Pacific*, 356 U.S. at 5-6 (tying arrangement is one where plaintiff

20   agreed to limit choice if and when it needed the tied product).

21       The court in *Foremost Pro* also noted that plaintiff was unable to establish implied coercion

22   under *Moore* because plaintiff in *Foremost Pro* did not allege that purchasers were "forced to 'accept

23   the tied item and forego possibly desirable substitutes.'"  703 F.3d at 542 n.4.  Because, plaintiff

24   alleged that "no competing manufacturers produced chemicals and papers compatible with

25   Kodacolor II film, there could have been no substitutes that Foremost or other photofinishing

26   customers were foreclosed from purchasing."  *Id.*  By contrast, Plaintiffs here allege that when other

27   competing online vendors such as RealNetworks managed to sell files that could be played on

28   Apple's iPod, Apple promptly issued a software update that ensured that the only files compatible

with an iPod were those purchased from Apple. Complaint, ¶¶52-54. Plaintiffs allege further that Apple repeatedly issued software changes through iTunes to ensure that competition remained foreclosed. Complaint, ¶55.

Apple's assertion that "where products are separately available, tying law does not apply" (Apple's Motion at 5), is thus sorely misguided. *See, e.g.*, *Compuware Corp. v. IBM*, 259 F. Supp. 2d 597, 601 (E.D. Mich. 2002) (permitting plaintiffs to amend their tying claim to allege that despite separate availability, "reasonable customers are forced to purchase the package . . . because of the various tactics used by IBM"); *Nobel Scientific Indus. v. Beckham Instruments*, 670 F. Supp. 1313, 1324 (D. Md. 1986) (establishing that as long as the option provided by the seller to purchase products separately is "not feasible," "[t]here need not be an explicit condition that the buyer of the tying product buy the tied product"); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 450 (3d Cir. 1977) (recognizing that "an illegal tie-in may exist even when the seller has not expressly conditioned the sale of one product upon purchase of another, if the existence of a tie-in can otherwise be established from business conduct"); *Adv. Bus. Sys. & Supply Co. v. SCM Corp.*, 415 F.2d 55, 60 (4th Cir. 1969) (finding that lease agreement was not "reasonable alternative" to tie arrangement).[6]

Alternatively, a cognizable Section 1 tying claim is stated despite the separate availability of the allegedly tied products "where a defendant has established its pricing policy in such a way that the only viable economic option is to purchase the tying and tied product in a single package."

---

[6] Apple is incorrect in its assertion that separate availability is permitted only in "package pricing" cases, where the price of the package is less than purchase of the products separately. *See, e.g.*, *Eastman Kodak*, 504 U.S. at 463 (no allegation that price of parts and services together was less expensive than when purchased individually); *Moore*, 550 F.2d at 1217 (no allegation that cost of cemetery plot and marker were less expensive when purchased together); *Bogosian*, 561 F.2d at 450 (discussing perceived threat of termination by franchisor as evidence that plaintiff was forced to accept the tie). The other case Apple cites fares no better in supporting Apple's contention that separate availability defeats Plaintiffs' tying claim. In *Schor v. Abbott Labs.*, 457 F.3d 608, 610 (7th Cir. 2006), plaintiff alleged that defendant violated the antitrust laws by selling its patented ritonavir drug, Norvir, at a discounted price when it was purchased in combination with defendant's protease inhibitor drug. *Id.* Plaintiff contended that defendant illegally used its monopoly power in the ritonavir drug market to foreclose the market on protease inhibitors. *Id.* The court stated that this could not be a tie because Norvir, the tying product, was separately available for those who wished to use it in combination with a competing protease inhibitor. *Id.* By contrast, Plaintiffs here allege they could not purchase iTunes files for direct playback on competing portable digital media players because Apple restricts them from doing so. Complaint, ¶¶41-44, 50.

*Ways & Means, Inc. v. IVAC Corp.*, 506 F. Supp. 697, 701 (N.D. Cal. 1979), *aff'd* 638 F.2d 143 (9th Cir. 1981); *see also Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*, No. C93 20613 RMW, 1995 WL 853037, at *13 (N.D. Cal. Sept. 7, 1995) (discussing whether purchase of tied product from competitor was "unfeasible or was not seriously contemplated"); *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1500 (8th Cir. 1992) ("In cases where there is no explicit agreement which conditions the purchase of the tying product upon the purchase of the tied product, an illegal arrangement may still be shown if the defendant's policy makes the purchasing of the tying and tied products together 'the only viable economic option. . . .'").

Apple itself relies on *Ways & Means*, citing the decision for the proposition that "where the products are separately available, tying law does not apply." Apple's Motion at 5. But Apple leaves out a critical proviso. Apple quotes: "there must in fact exist a tie scheme by which purchasers are required to buy one commodity or service in order to obtain a second, distinct commodity or service." *Id.* (quoting *Ways & Means*, 506 F. Supp. at 700). However, Apple fails to read on. In fact, the court in *Ways & Means* went on to state: "This does not end the analysis, however, for plaintiffs are correct in their assertion that separate availability will not preclude antitrust liability where a defendant has established its pricing policy in such a way that the only viable economic option is to purchase the tying and tied products in a single package." 506 F. Supp. at 701. Thus, *Ways & Means* cannot possibly hold that tying law does not apply where the products are separately available.

Nothing in Plaintiffs' Section 1 tying claims, therefore, "violate[s] basic antitrust principals." *See* Apple's Motion at 7. Instead, Plaintiffs' claims stand on solid foundation of Supreme Court and Ninth Circuit Section 1 tying precedent. Indeed, "the essential characteristic of an invalid tying arrangement lies in the ***seller's exploitation*** of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or ***might have preferred to purchase elsewhere on different terms***." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12, 104 S. Ct. 1551 (1984); *see also* Areeda, *et al.*, *supra*, ¶1753c . As Professor Areeda concludes, "the language of 'coercion,' 'forcing,' and 'voluntariness' should be understood as inviting a specific factual inquiry about whether the defendant has illegitimately constrained buyer choices."

Areeda, *et al.*, *supra*, ¶1752e. Constrained choice in the tied market imposed by a seller with market power in the tying product market is precisely what Plaintiffs allege here. Apple exploited its market power in digital audio and video files to force consumers to buy Apple's iPods, regardless of their desire to purchase a portable digital media player from a competitor on different terms. Complaint, ¶22.

No matter how innovative its products, Apple is not permitted to perpetuate illegal tie-ins that restrict consumers' choices and impede the development of competing products. As discussed above, and as the Ninth Circuit recognized in *Foremost Pro*, innovation does not amount to immunity from antitrust laws. 703 F.2d at 542-43.

### 2. Plaintiffs Need Not Allege Coercion on an Individual Basis to State a Viable Section 1 Tying Claim

Completely ignoring controlling Ninth Circuit law, Apple attempts to convince the Court that it somehow stepped outside the box when it recognized that market level coercion is sufficient to sustain a Section 1 tying claim. *See Tucker v. Apple Comp., Inc.*, 493 F. Supp. 2d 1090, 1091 (N.D. Cal. 2006); *Slattery v. Apple Comp., Inc.*, No. C 05-00037 JW, 2005 WL 2204981, at *3 (N.D. Cal. Sept. 9, 2005). Ninth Circuit authority could not be more clear: Plaintiffs need not prove coercion on an individual basis.

It is true that "some modicum of involuntariness or coercion is . . . essential to the existence" of an illegal tie-in. *Foremost Pro*, 703 F.2d at 540. In *Fortner Enters., Inc. v. United States Steel Corp.*, 394 U.S. 495, 504, 89 S. Ct. 1252 (1969), the Supreme Court explained that "the proper focus of concern is whether the seller has the power to . . . impose other burdensome terms such as a tie-in, with respect to ***any appreciable number of buyers within the market***." *See also Murphy v. Bus. Cards Tomorrow, Inc.*, 854 F.2d 1202, 1204 (9th Cir. 1988) ("The essence of an antitrust tying violation is not the seller's unilateral refusal to deal with a buyer who refuses to buy the tied product, but the use by the seller of its 'leverage' to force a purchaser to do something that he would not do in a competitive market."); Areeda, *et al.*, *supra*, ¶1752c ("[w]hile earlier cases suggested that the practical effect must be to prevent the buyer from purchasing ***any*** of the tied product from others,

subsequent cases were clearly satisfied with the practical effect of preventing *some* purchases from

defendant's rivals that might have otherwise been made.") (emphasis in original).

This is precisely the holding espoused by the Ninth Circuit in *Moore*, when it wrote that,

although a "modicum" of coercion was required, "the Supreme Court's opinions support[] the view

that *coercion may be implied from a showing that an appreciable number of buyers have accepted*

*burdensome terms, such as a tie-in*, and there exists sufficient economic power in the tying market."

550 F.2d at 1217. In *Moore*, it made no difference that each purchaser of the tying product (the

cemetery lot) was not absolutely required to buy the tied product (a marker), because there was no

need to prove individual coercion in the purchase of the tied product. *Id.* The Ninth Circuit could

hardly have stated the point more bluntly: "A showing of an onerous effect on an appreciable

number of buyers coupled with a demonstration of sufficient economic power in the tying market is

sufficient to demonstrate coercion." *Id.*

The Ninth Circuit has not retreated from its holding in *Moore*. *See, e.g.*, *Cascade Health*

*Solutions v. Peacehealth*, 515 F.3d 883, 914 (9th Cir. 2008) (citing *Moore* for the proposition that

"coercion may be implied from a showing that an appreciable number of buyers have accepted

burdensome terms, such as a tie-in"); *Paladin Assocs. v. Montana Power Co.*, 328 F.3d 1145, 1161

(9th Cir. 2003) (same); *Foremost Pro*, 703 F.2d at 542 n.4 (citing *Moore* for the proposition that

coercion may be implied); *Betaseed, Inc. v. U&I, Inc.*, 681 F.2d 1203, 1221-22, 1222 n.35 (9th Cir.

1982) (addressing *Moore* and *Northern Pacific* at length).

Nevertheless, Apple argues that the Court's previous holdings are improper because

Plaintiffs themselves have not been individually coerced. Apple's Motion at 12. Apple states, "[n]o

case, however, has ever ruled that a non-coerced customer may assert a tying claim on the ground

that someone else might have been coerced." *Id.* Besides being factually incorrect, this contention

again completely misses the point. Plaintiffs may establish the necessary modicum of coercion

where some appreciable number of the class members have been coerced. *Cascade Health*, 515 F.3d

at 914 (holding that summary judgment for defendant on plaintiff's tying claim was improper where

there was sufficient evidence that defendant's practice "may have coerced *some* insurers" to accept

the tie). This is because under the concept of market level coercion, where a sufficient number of

buyers of the tying product have been forced to accept the tied item instead of a possibly desirable substitute, injury results for all buyers of the tied product. *See Moore*, 550 F.2d at 1212 ("the public is harmed by the adverse effect on the market for the tied product").

This is exactly what Plaintiffs allege here; ***all*** purchasers of iPods were injured because an appreciable number of iTunes customers accepted Apple's tie-in, resulting in supracompetitive prices for all iPods. Complaint, ¶¶22, 72, 73. As Plaintiffs' own testimony reveals, Plaintiffs themselves have been forced by Apple's technological tie-in policy to purchase an iPod over a possibly more desirable substitute.[7] *See* Bonny Decl., Ex. 1, Deposition of Melanie Tucker, taken October 26, 2007 at 12:20-13:5 (explaining that she purchased a second iPod after her first iPod broke because her existing iTunes files were not compatible with other MP3 players); Bonny Decl., Ex. 2, Deposition of Mariana Rosen, taken January 24, 2007 at 89:8-90:5 (explaining that she did not purchase something other than an iPod because she already had an existing iTunes library); *see also* Complaint, ¶43 ("[C]onsumers who have purchased Online Music from Apple will have no choice but to buy an iPod if they want to play their music directly on a Digital Music Player.").

Plaintiffs' argument for market level coercion is also supported by the unrebutted testimony of an actual competitor in the portable digital media player market. As the Declaration of Lee Morse, the Director for Emerging Technologies at Creative Labs, Inc., a competing manufacturer of portable digital music player's, makes clear: "songs purchased from the iTunes Store cannot be directly recorded onto or played back on Creative's line of portable digital music players, which Creative believes has a negative impact on its sale of digital music players." Docket No. 96, ¶8; *see also* Complaint, ¶75 (alleging competitors in the portable digital media player market were foreclosed by Apple's anticompetitive conduct). Thus, whether viewed from the perspective of consumers or competitors, Plaintiffs have alleged sufficient facts (and introduced sufficient evidence) to properly state a Section 1 claim based on a theory of market level coercion.

---

[7] *See* Declaration of Bonny E. Sweeney in Support of Plaintiffs' Opposition to Defendant's Motion for Judgment on the Pleadings as to Plaintiffs' Tying Claims, filed concurrently ("Bonny Decl.").

Apple's attempts to distinguish *Moore* are unavailing. Apple's Motion at 14-15. With little explanation, Apple asserts that unlike here, an "actual tie and actual coercion" existed in *Moore*. *Id.* at 14. But, it can hardly be said that the alleged tie in *Moore* was anymore of an "actual tie" than that alleged here. In *Moore* plaintiff alleged a tie between the purchase of cemetery lots (tying product) and memorial markers (tied product) and the purchase of cemetery lots (tying product) and installation service of the cemetery (tied product). 550 F.2d at 1212. However, not all purchasers of cemetery lots were required to purchase memorial markers. *Id.* Nonetheless, the *Moore* court held that plaintiff had established the existence of a tie. *Id.* at 1217. The same is true here. An actual tie exists because Apple has imposed the same technological restraints on all class members regardless of whether some purchasers of iTunes files have not purchased an iPod and vice versa.[8] Complaint, ¶¶41-44. Additionally, the Ninth Circuit in *Moore* explicitly held that "actual coercion" was not required and in fact found that plaintiff was able to satisfy the coercion requirement by proof that "an appreciable number of buyers" forewent desirable substitutes and accepted the tie. 550 F.2d at 1216-17. As stated above, Plaintiffs allege at least the same level of coercion here. Complaint, ¶¶22, 72, 73.

Moreover, Apple completely misunderstands *Moore's* significance and argues that *Moore* "cannot mean that coercion can be inferred from the mere fact that consumers buy the two products at issue." Apple's Motion at 14. Plaintiffs have not asked for any such inference. Plaintiffs instead cite *Moore* for its clear holding that coercion can be established at the market level by proof that "an appreciable number" of purchasers of the tying product accepted the terms of the tie-in and thus also purchased the tied product. *Moore*, 550 F.2d at 1217. Apple itself concedes that a significant

---

[8]  Similarly, Apple's citations to *Hill v. A-T-O, Inc.*, 535 F.2d 1349 (2d Cir. 1976) and *Siegel v. Chicken Delight, Inc.*, 448 F.2d 45 (9th Cir. 1971) do not demonstrate any more of a tie than what Plaintiffs allege here. In *Hill*, plaintiffs alleged a tie between the purchase of a vacuum cleaner and membership services. 535 F.2d at 1354. The *Hill* court found the existence of a tie despite the facts that not all purchasers of the vacuum were coerced. *Id.* at 1355. In *Siegel*, franchisees alleged a tie between franchise lease agreements and cooking equipment, food items, and packaging. 448 F.2d at 46. As recognized by the court in *Moore*, the fact that plaintiffs did not establish that each of the franchisees was required to purchased the cooking equipment, food items and packaging as a condition of the agreement was not fatal to their tying claims. 550 F.2d at 1217.

number of iPod purchasers use iTunes.  *See* Docket No. 181 at 6.  Nevertheless, whether, after discovery, Plaintiffs can prove that an "appreciable number" of iTunes purchasers also purchased an iPod is a matter that cannot be resolved on this Rule 12(c) motion.  *See Enron Oil Trading & Transp. Co.*, 132 F.3d at 529.  Here, Plaintiffs allege the existence of a technological tie and, in accordance with *Moore*, coercion on a market level.  They have also demonstrated through expert testimony submitted in support of class certification, how market level coercion can be established.  Docket No. 166-2 (Declaration of Roger G. Noll) at 38, 42.

The Court properly relied on Murphy as support for the suitability of market level coercion.  *Tucker*, 492 F. Supp. 2d at 1099.  In *Murphy*, plaintiff franchisees alleged that they were required by defendant franchisor to purchase equipment as a condition of the franchise lease.  854 F.2d at 1204.  The Ninth Circuit held that plaintiffs did not establish the necessary level of coercion because it was not alleged "that ***any*** person, let alone plaintiffs were persuaded by [defendant]" to accept the conditions of the tie.  *Id.*  While *Murphy* is factually distinguishable, the Ninth Circuit's reasoning is in accord with *Moore* where the court found coercion is satisfied where some but not all consumers accepted the tie.  *See Moore*, 550 F.2d at 1217; *Cascade Health*, 515 F.3d at 914.

Further, Apple argues that market level coercion in a class action is improper because "in the absence of an express contractual tie that applies to all purchasers, class certification is improper because of the need for each individual customer to prove that he or she was coerced."  Apple's Motion at 12.  All of the cases cited by Apple involve challenges to contractual ties that were not uniformly imposed and enforced across the class.[9]  But here, Plaintiffs' tying claim is based on a

---

[9]    *See Freeland v. AT & T Corp.*, 238 F.R.D. 130, 155 (S.D.N.Y. 2006) (no provision in class members' cell phone service plans requiring purchase of handset); *Little Caesar Enters., Inc. v. Smith*, 895 F. Supp. 884, 904 (E.D. Mich. 1995) (no express contractual tie existed in franchise contract); *Colburn v. Roto-Rooter Corp.*, 78 F.R.D. 679, 681-82 (N.D. Cal. 1978) (no evidence tying provision in plaintiff's contract was enforced throughout the class); *Smith v. Denny's Rests., Inc.*, 62 F.R.D. 459, 461 (N.D. Cal. 1974) (franchise agreement did not expressly create tie-in policy); *Chase Parkway Garage Inc. v. Subaru, Inc.*, 94 F.R.D. 330, 332 (D. Mass. 1982) (because no express tying provision existed, proof defendants enforced such a policy would require individual proof); *Ungar v. Dunkin' Donuts of Am., Inc.*, 531 F.2d 1211, 1216 (3d Cir. 1976) (no existence of express contractual tie); *Daniels v. Amerco*, No. 81 CIV 3801 (RLC), 1983 WL 1794, at *1 (W.D.N.Y. Mar. 10, 1983) (alleged tie based on verbal orders or "indirect strategems" not contractual provisions); *Waldo v. N. Am. Van Lines, Inc.*, 102 F.R.D. 807, 814 (W.D. Pa. 1984) (no express contractual tie-in

technological restriction ("FairPlay") that was allegedly imposed on all iTunes file purchasers, requiring them to purchase an iPod for direct playback on a portable digital media player. Complaint, ¶¶41-44, 50. No further allegation of coercion is required. *See Moore*, 550 F.2d at 1217; *Hill*, 535 F.2d at 1355 (an "unremitting policy of tie-in" and sufficient market power constitutes requisite coercion).

Alternatively, as explained above, even absent an express contractual provision, a plaintiff can prove a Section 1 tie by demonstrating that purchase of the tying and tied products together is the only "viable economic option." *See, e.g.*, *Ways & Means*, 506 F. Supp. at 701 (finding that although an express tying arrangement did not exist because the tying product was available outside the tie, a tie could be established by proof that purchase of the tying and tied products together was the "only viable economic option"). In fact in *Moore*, the Ninth Circuit implied coercion even though all purchasers were not contractually obligated to purchase the tied product. 550 F.2d at 1217 (only five out of eight cemeteries contractually required the sale of markers and cemetery lots).

## B.    Issues Raised by Apple

Although the Court explicitly identified the two narrow issues to be addressed in Apple's motion, Apple raises additional substantive challenges to Plaintiffs' federal and state tying claims. Even were the Court is willing to consider such arguments, they are substantively meritless.

### 1.    Plaintiffs Allege Actionable Federal Law Claims

Apple argues that Plaintiffs' tying claim is improper under Section 1 for lack of "concerted action." *See* Apple's Motion at 4. Section 1 liability for unilateral tying arrangements is, however, hardly a novel concept. *See, e.g.*, *Toulumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1157-58 (9th Cir. 2001) (affirming Section 1 tying claim where hospital tied the purchase of C-section services and obstetrical services); *Microsoft Corp.*, 253 F.3d at 84 (recognizing Section 1 liability for Microsoft's tie of Windows and Internet Explorer); *Nobel Scientific Indus., Inc.*, 670 F. Supp. at

_____

provision existed in franchise contract); *Olmstead v. Amoco Oil Co.*, No. 76-247-Orl-Civ-Y, 1977 WL 1416, at *3 (M.D. Fla. June 16, 1977) (absent express tie-in in lease agreement, proof based on operation of the relevant program and pressure by defendant on class members was insufficient).

1324 (holding that unilateral conduct may constitute a tying arrangement under Section 1). Such

arrangements can unquestionably constitute an unreasonable restraint on trade actionable under

Section 1. *Ariz. v. Maricopa County Med. Soc.*, 457 U.S. 332, 344 n.15, 102 S. Ct. 2466 (1982)

(recognizing that a tying arrangement may be an unreasonable restraint on trade under Section 1).

In particular, Section 1 encompasses unilateral tying arrangements where defendant agrees

"'to sell one product but only on the condition that the buyer also purchasers a different (or tied)

product, or at least agrees that he will not purchase that product from any other supplier.'" *Eastman*

*Kodak Co.*, 504 U.S. at 461 (quoting *Northern Pacific*, 356 U.S. at 5-6). That is precisely what is

alleged here; through deliberate technological impediments Apple effectively forced purchasers of

iTunes files to agree not to purchase a portable digital media player from a competing manufacturer.

Complaint, ¶¶41-44, 50. Accordingly, Plaintiffs' tying claim is appropriately pled under Section 1.

## 2. Plaintiffs Allege Actionable State Law Claims

Apple also contends that Plaintiffs' state law claims under the Cartwright Act (Cal. Bus. &

Prof. Code. §16700 *et seq*.), California Unfair Competition Law (Cal. Bus. & Prof. Code §17200 *et*

*seq*.), and California Civil Legal Remedies Act (Cal Civ. Code. §1750 *et seq*.) fail for the same

reasons as Plaintiffs' Section 1 tying claim. Plaintiffs incorporate the same allegations as alleged

under Section 1 and 2 of the Sherman Act as the basis for these claims. Complaint, ¶¶115, 119, 127.

Apple correctly notes that the analysis under California's antitrust law mirrors the analysis

under federal law because the Cartwright Act was modeled on the Sherman Act. *Tuolumne*, 236

F.3d at 1160. Thus, for the same reasons as stated above, Plaintiffs' Cartwright Act tying claim

survives because proof of individual coercion is not required and the separate availability of the

tying and tied products is not fatal. *See Moore*, 550 F.2d at 1217.

Additionally, Plaintiffs' §17200 and §1750 claims are premised on the alleged antitrust

violations and have been properly certified. Complaint, ¶121 ("Apple's actions are unlawful and

unfair because it has violated, *inter alia*, the Sherman Antitrust Act. . . ."); Complaint ¶131 ("Apple

is a monopolist [and] [t]he unnecessary technological restrictions it places on its products offer no

benefit to consumers while preventing them from us[ing] a competitor's Digital Music Player or

online store.").

# V. CONCLUSION

For each and all of the foregoing reasons, the Court should deny Apple's Motion.

DATED: March 2, 2009

Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
BONNY E. SWEENEY


_____s/ Bonny E. Sweeney_____
BONNY E. SWEENEY

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

THE KATRIEL LAW FIRM
ROY A. KATRIEL
1101 30th Street, N.W., Suite 500
Washington, DC 20007
Telephone: 202/625-4342
202/330-5593 (fax)

Co-Lead Counsel for Plaintiffs

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
FRANCIS J. BALINT, JR.
ELAINE A. RYAN
TODD D. CARPENTER
2901 N. Central Avenue, Suite 1000
Phoenix, AZ 85012
Telephone: 602/274-1100
602/274-1199 (fax)

BRAUN LAW GROUP, P.C.
MICHAEL D. BRAUN
12304 Santa Monica Blvd., Suite 109
Los Angeles, CA 90025
Telephone: 310/442-7755
310/442-7756 (fax)

MURRAY, FRANK & SAILER LLP
BRIAN P. MURRAY
JACQUELINE SAILER
275 Madison Avenue, Suite 801
New York, NY 10016
Telephone: 212/682-1818
212/682-1892 (fax)

GLANCY BINKOW & GOLDBERG LLP
MICHAEL GOLDBERG
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)

Additional Counsel for Plaintiffs

S:\CasesSD\Apple Tying\BRF00057838.doc

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 2, 2009.

                           s/ Bonny E. Sweeney
                           BONNY E. SWEENEY

                           COUGHLIN STOIA GELLER
                                RUDMAN & ROBBINS LLP
                           655 West Broadway, Suite 1900
                           San Diego, CA  92101-3301
                           Telephone:  619/231-1058
                           619/231-7423 (fax)

                           E-mail:bonnys@csgrr.com

# Mailing Information for a Case 5:05-cv-00037-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com

- **Andrew S. Friedman**
  rcreech@bffb.com,afriedman@bffb.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com

- **Roy A. Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com,ewallace@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,ybennett@jonesday.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Adam Richard Sand , Esq**
  invalidaddress@invalidaddress.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **John J. Stoia , Jr**
  jstoia@csgrr.com

- **Tracy Strong**
  tstrong@jonesday.com,dharmon@jonesday.com

- **Bonny E. Sweeney**
  bonnys@csgrr.com,E_file_sd@csgrr.com,christinas@csgrr.com

- **Helen I. Zeldes**
  helenz@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Todd David Carpenter**
Bonnett, Fairbourn, Friedman, & Balint
2901 N. Central Avenue
Suite 1000
Phoenix, AZ 85012

**Elaine A. Ryan**
Bonnett Fairbourn Friedman & Balint, P.C
2901 N. Central Avenue
Suite 1000
Phoenix, AZ 85012