1   Robert A. Mittelstaedt  #60359
    ramittelstaedt@jonesday.com
2   Craig E. Stewart  #129530
    cestewart@jonesday.com
3   JONES DAY
    555 California Street, 26th Floor
4   San Francisco, CA  94104
    (415) 626-3939     Telephone:
5   (415) 875-5700     Facsimile:

6   Attorneys for Defendant
    APPLE INC.
7

8                       UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11

12   THE APPLE iPOD iTUNES ANTI-TRUST            **Case No. C 05-00037 JW**
     LITIGATION**.**                                    **C 06-04457 JW**
13
                                                 **REPLY MEMORANDUM IN**
14                                               **SUPPORT OF DEFENDANT'S**
                                                 **MOTION FOR JUDGMENT ON THE**
15                                               **PLEADINGS AS TO PLAINTIFFS'**
                                                 **TYING CLAIMS**
16
17                                               **Date:**    March 23, 2009
                                                 **Time:**    9:00 A.M.
18                                               **Place:**   Courtroom 8, 4th floor

19

20

21

22

23

24

25

26

27

28

SFI-604793v3

Reply Mem. re Mot. for Jgmt on Pldgs
C-05-00037-JW

Dockets.Justia.com

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.    USING PROPRIETARY SOFTWARE IS NOT UNLAWFUL TYING. ........................... 2

     A.    No Case Has Found A Tie of Separately Available Products Based On An
          Enhanced Utility Theory. ............................................................................................ 2

     B.    Plaintiffs Have No Answer to Apple's Showing that Plaintiffs' Theory
          Conflicts with Basic Antitrust Policies. ...................................................................... 6

II.   PLAINTIFFS' CLAIM INDEPENDENTLY FAILS BECAUSE THEY WERE
     NOT COERCED. .............................................................................................................. 8

     A.    Plaintiffs Must Have Been Individually Coerced; Coercion of Others Is Not
          Enough. ........................................................................................................................ 8

     B.    Plaintiffs' Deposition Testimony Confirms They Were Not Coerced. ...................... 11

III.  SECTION 1 DOES NOT APPLY. .................................................................................... 12

IV.   THE STATE LAW CLAIMS ON TYING SHOULD ALSO BE DISMISSED. ................ 13

CONCLUSION .......................................................................................................................... 13

**TABLE OF AUTHORITIES**

**Page**

<u>Cases</u>

*Advance Bus. Sys. & Supply Co. v. SCM Corp.*
    415 F.2d 55 (4th Cir. 1969).................................................................................................. 6

*Amerinet, Inc. v. Xerox Corp.*
    972 F.2d 1483 (8th Cir. 1992) .............................................................................................. 6

*Betaseed, Inc. v. U & I Inc.*,
    681 F.2d 1203 (9th Cir. 1982)............................................................................................. 10

*Bogosian v. Gulf Oil Corp.*,
    561 F.2d 434 (3d Cir. 1977)................................................................................................. 6

*Cascade Health Solutions v. PeaceHealth*,
    515 F.3d 883 (9th Cir. 2008).............................................................................................. 5

*Compuware Corp. v. IBM*,
    259 F. Supp. 2d 597 (E.D. Mich. 2002)............................................................................. 6

*County of Tuolumne v. Sonora Cmty. Hosp.*,
    236 F.3d 1148 (9th Cir. 2001)............................................................................................ 12

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992)..................................................................................................... 3, 12

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
    703 F.2d 534 (9th Cir. 1983)......................................................................................... 4, 7

*Hill v. A-T-O, Inc.*,
    535 F.2d 1349 (2d Cir. 1976)............................................................................................. 9

*Moore v. Jas. H. Matthews & Co.*,
    550 F.2d 1207 (9th Cir. 1977)................................................................................ 8, 9, 10

*N. Pac. Ry. Co. v. United States*
    356 U.S. 1 (1958) ........................................................................................................ 2, 3, 12

*Nobel Scientific Indus., Inc. v. Beckman Instruments, Inc.*,
    670 F. Supp. 1313 (D. Md. 1986) ..................................................................................... 5, 12

*Ocean State Physicians Health Plan v. Blue Cross & Blue Shield*,
    883 F.2d 1101 (1st Cir. 1989)............................................................................................ 4

*Olympia Equip. Leasing Co. v. W. Union Tel. Co.*,
    797 F.2d 370 (7th Cir. 1986)............................................................................................. 4

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*,
  No. 07-512, 2009 WL 454286 (U.S. Feb. 25, 2009) ................................................ 6

*Paladin Assocs., Inc. v. Mont. Power Co.*,
  328 F.3d 1145 (9th Cir. 2003).............................................................................. 10

*Rick-Mik Enters., Inc. v. Equilon Enters., LLC*,
  532 F.3d 963 (9th Cir. 2008)................................................................................. 7

*Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*,
  No. C93-20613 RMW, 1995 WL 853037 (N.D. Cal. Sept. 7, 1995) ........................ 6

*Siegel v. Chicken Delight, Inc.*
  448 F.2d 43 (9th Cir. 1971).................................................................................. 9

*United States v. Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001) ........................................................................... 7, 12

*Ways & Means, Inc., v. IVAC Corp.*
  506 F. Supp. 697 (N.D. Cal. 1979) ........................................................................ 5

Other Authorities

10 P. Areeda, H. Hovenkamp & E. Elhauge, *Antitrust Law* (2d ed. 2004).................................... 10

3A P. Areeda, H. Hovenkamp & E. Elhauge, *Antitrust Law* (2d ed. 2004).............................. 4, 12

## INTRODUCTION

Plaintiffs fail to acknowledge the difference between (a) forbidding sellers from using contractual or pricing provisions to force consumers to buy products they do not want and (b) regulating a company's choice of software in an attempt to create universal interoperability. Tying law addresses the first issue. The second issue, however, is far beyond its reach. No case has ever applied tying law to force a seller to make its complementary products work as well with competing products as they work with each other. And fundamental antitrust principles counsel against any such extension.

Although plaintiffs invoke the wording of tying cases to describe their claim (asserting that they were "forced to agree" to buy iPods (Opp. 5)), they do not in fact allege any such agreement, and none exists. Instead, their true claim is that Apple's choice of software gives its products "enhanced utility" over competing products, to use the Court's phrase. Tellingly, plaintiffs neither object to that description nor attempt to argue that such utility constitutes tying.

Plaintiffs' retained economists use slightly different formulations than this Court's "enhanced utility" but with the same ultimate effect. As they put it, a tie exists because the iTunes Store music has a "differential ease-of-access" to iPods (Dkt. 176-8, p. 9) or because Apple's choice of software "elevat[es] the willingness of consumers" with iTunes Store libraries to buy iPods (*Somers*, Dkt. 42-2, ¶ 35). As these formulations make clear, none of this fits within tying law. Tying law is not concerned with whether a company's choice of software enhances the value of its complementary products and encourages consumers to buy them.

Plaintiffs have no answer to the policy reasons why tying law should not be expanded to regulate choice of software and interoperability issues. As the Supreme Court reiterated two weeks ago, the antitrust laws should not be extended to impose duties that cannot be adequately articulated and supervised, and where no "safe harbors" are ascertainable. *See infra,* p. 6. Here, plaintiffs offer no standards to determine at what point "enhanced utility," "differential-ease-of-access," or elevated "willingness of consumers" to buy iPods supposedly become illegal, and they offer no "safe harbor" for avoiding liability under their theory. Under their theory, a company cannot avoid liability simply by offering its products separately, as Apple already indisputably

SFI-604793v3

Reply Mem. re Mot. for Jgmt on Pldgs
C-05-00037-JW

- 1 -

1  does.  Rather, a company would have to design its products and choose its software to ensure

2  compatibility with competitors' products.  All of this underscores why tying law should not be

3  expanded as plaintiffs' theory would require.

4  **ARGUMENT**

5  **I.    USING PROPRIETARY SOFTWARE IS NOT UNLAWFUL TYING.**

6     **A.    No Case Has Found A Tie of Separately Available Products Based On An**

7        **Enhanced Utility Theory.**

8        Plaintiffs do not dispute that consumers are free to purchase iTunes Store content without

9  ever buying an iPod.  It is undisputed, therefore, that Apple is not "sell[ing] one product but only

10  on the condition that the buyer also purchases a different (or tied) product."  *N. Pac. Ry. Co. v.*

11  *United States*, 356 U.S. 1, 5-6 & n.4 (1958).  Thus, "there is no tying problem."  *Id.* at 7 n.4.

12  Plaintiffs can continue to argue that Apple's conduct violates section 2 of the Sherman Act,

13  although Apple vigorously disagrees that any such violation has been stated.  But regardless of

14  the outcome of their section 2 claim, tying law cannot be used to dictate what software a company

15  must use or to force interoperability.

16        Rather than addressing these dispositive points, plaintiffs argue about what tying law does

17  **not** require.  They assert that tying law does not require that the two products be "purchased

18  together."  Opp. 3.  If they mean "purchased at the same time," they are correct.  But that does not

19  help them.  Apple does not require that iTunes Store customers **ever** purchase an iPod—either at

20  the time of their iTunes Store purchase or at any other time.

21        Plaintiffs also assert that tying law does not require that the buyer actually buy the second

22  product so long as the buyer agrees not to buy the second product from any other supplier.

23  Opp. 3 (citing *N. Pac. Ry.*, 356 U.S. at 5-6).  But that argument does not assist plaintiffs either.

24  Apple does not require that iTunes Store customers agree not to purchase competing digital

25  players, and plaintiffs do not allege otherwise.

26        For these reasons, *Northern Pacific* does not help plaintiff.  The defendant railroad in that

27  case would sell its land only to buyers who agreed to use the railroad to ship commodities

28  produced on that land.  356 U.S. at 3.  True, the buyer was not required to purchase the shipping

SFI-604793v3

- 2 -

Reply Mem. re Mot. for Jgmt on Pldgs
C-05-00037-JW

1   services at the same time it purchased the land, and the buyer was not required to ship

2   commodities at all.  But a tie existed because the railroad insisted as a condition of selling the

3   land that the buyer contractually agree not to use competing suppliers.[1]  Here, Apple neither seeks

4   nor obtains any such agreement.  And nothing in *Northern Pacific* would have required the

5   defendant to redesign its product, use different software, or otherwise make its products

6   interoperable with competitors' products.  To avoid liability, the defendant railroad simply

7   needed to eliminate the shipping provision from its contracts.

8           Trying to make *Northern Pacific* appear analogous to this case, plaintiffs claim (Opp. 4)

9   that Apple imposed a "preferential restraint" that forces iTunes Store customers to buy iPods.

10  But, again,  plaintiffs fail to address the difference between a contractual requirement (the

11  "preferential routing clause" in Northern Pacific's contract) and a company's choice of software

12  that enhances the utility of complementary products.

13          *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992), is likewise

14  inapposite.  The Supreme Court found a tie there because "Kodak would sell parts to third parties

15  only if they agreed not to buy service from ISO's."  *Id.* at 463.  Apple imposes no such

16  requirement.  It sells iTunes Store content without any condition that the buyer purchase an iPod

17  or agree not to purchase a competing player.[2]  And *Kodak* had nothing to do with forced

18  interoperability.

19          Plaintiffs are thus again reduced to their "enhanced utility" argument—*i.e.*, that a tie exists

20  because online digital music stores use different DRM software and thus DRM-protected iTunes

21  Store content may be played "directly" on an iPod (and on computers and burned to CDs) but not

22  on other portable digital music players.  Plaintiffs assert (Opp. 2, 5) that this enhanced ability of

23

24  [1]   That the shipping requirement was triggered only when the railroad's shipping rates were
    equal to or lower than competitors' rates is irrelevant.  The tie existed because the buyer was
25  contractually bound to use the defendant's service under the specified conditions.

26  [2]   Plaintiffs are incorrect that the self-service owners in *Kodak* had a tying claim.  A customer
    who was not forced to buy the tied product (or to forego a purchase from a competing supplier)
27  would not have suffered any injury sufficient to support a tying claim.  By definition, self-service
    customers were not constrained; they were not forced to buy service from Kodak and did not
28  forego buying service from anyone else.  They provided their own service, by choice.

1  iPods "constrained" the choice of some consumers and "forced" some of them to buy an iPod.

2  But no case has ever found an unlawful tie in such circumstances. And sound policy reasons, for

3  which plaintiffs have no answer, demonstrate that tying law should not be extended to these

4  circumstances (*see infra,* pp. 6-8).

5         Far from supporting plaintiffs' "enhanced utility" theory, *Foremost Pro Color, Inc. v.*

6  *Eastman Kodak Co.*, 703 F.2d 534, 540 (9th Cir. 1983), refutes it. The alleged tie in that case

7  was not merely that the two products at issue had enhanced utility when used together. Rather,

8  the tying product there could not be used at all without the tied product. To use Kodak's new

9  camera, consumers had to use Kodak's film and processing materials.

10        Most important, though, the Ninth Circuit **rejected** that tying claim, holding that the claim

11 that " effective use" of one product "necessitates purchase of" other products does not constitute

12 the required coercion for tying purposes. *Id.* at 543.

13        Plaintiffs rely (Opp. 6) on the Ninth Circuit's comment that the plaintiff had not alleged

14 that Kodak's "dominant purpose" was to foreclose competitors. The Ninth Circuit did not hold,

15 however, that alleging such a purpose would have been enough even under the facts there, where

16 one product could not be used without the other. Any such holding would be contrary to the

17 settled antitrust principle that, even for decisions made by a monopolist, liability does not turn on

18 the defendant's alleged motivation. The Areeda antitrust treatise, cited repeatedly by plaintiffs, is

19 emphatic that holding companies liable for product design decisions based on their alleged intent

20 would be "the worst way of handling claims that innovation violates the antitrust laws." 3A

21 P. Areeda, H. Hovenkamp & E. Elhauge, *Antitrust Law*, ¶ 775c, p. 232 (2d ed. 2004). "An

22 antitrust rule permitting juries to sift through records pertaining to a firm's intent cannot help but

23 chill perfectly appropriate behavior that the antitrust laws are intended to encourage." *Id. See*

24 *also, e.g., Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 379 (7th Cir. 1986)

25 ("if conduct is not objectively anticompetitive the fact that it was motivated by hostility to

26 competitors . . . is irrelevant"); *Ocean State Physicians Health Plan v. Blue Cross & Blue Shield*,

27 883 F.2d 1101, 1113 (1st Cir. 1989) ("the desire to crush a competitor, standing alone, is

28 insufficient to make out a violation of the antitrust laws").

1    For that reason, plaintiffs' allegation that Apple used its own anti-piracy software "in an

2    effort to restrict consumer choice and restrain competition" (Cons. Cmplt., ¶ 21) is insufficient.

3    Tying law does not turn on whether Apple used its own software because it believed it was better

4    than Microsoft's or for some other reason. The prerequisite to a tying claim is that the defendant

5    has conditioned the sale of one product on the purchase of another. Because Apple has not done

6    that, tying law is inapplicable and no inquiry into whether Apple's selection of software was

7    "necessary" or "justified" is proper.[3]

8        Plaintiffs suggest (Opp. 6) that *Foremost Pro* can be distinguished because no substitutes

9    for the tied products were then available from competing manufacturers. But that is irrelevant to

10   the basic question of whether a tie exists. Even where competing suppliers exist, no tie exists if a

11   buyer is not required to refrain from purchasing from them as a condition of obtaining the tying

12   product. Nor is it relevant that *Foremost Pro* was addressing a *per se* claim rather than a rule of

13   reason claim. The absence of a coerced agreement is fatal to both.

14       Plaintiffs' other cases are likewise irrelevant. None of them held that separately available

15   products may be found to be tied simply because they have enhanced utility when used together.

16   Instead, each of them involved separate conduct beyond the design of the products, or any

17   resulting enhanced utility, that was alleged to have precluded buyers from purchasing one without

18   the other. As noted in Apple's opening memorandum (at 7), most of plaintiffs' cases involved

19   pricing policies that allegedly rendered the products not separately available at all—and in most

20   of those cases the tying claim was **rejected**.[4] Plaintiffs do not dispute that no such pricing

21   policies are at issue here.

---

22   [3]    As noted in Apple's opening memorandum (at 3 n.1) and not contested by plaintiffs, the

23   record companies required Apple and the other online digital music stores to use DRM. So
     plaintiffs' allegation that Apple's use of DRM was unnecessary (Cons. Complt ¶ 131) is simply a

24   challenge to Apple's decision to use its own DRM rather than Microsoft's.

25   [4]    *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 915 (9th Cir. 2008) (permitting
     tying claim based on evidence that separate purchases "made no economic sense"); *Ways &*

26   *Means, Inc., v. IVAC Corp.*, 506 F. Supp. 697, 700 (N.D. Cal. 1979) (granting summary judgment
     for defendant because 25% of purchases of the alleged tied product were made separately despite

27   package pricing); *Nobel Scientific Indus., Inc. v. Beckman Instruments, Inc.*, 670 F. Supp. 1313,

28   1325-26 (D. Md. 1986) (rejecting pricing theory on the ground that it is not enough that buying

(continued)

1      Plaintiffs' non-pricing cases are similarly unhelpful to them.  In *Compuware Corp. v.*

2  *IBM*, 259 F. Supp. 2d 597, 605-06 (E.D. Mich. 2002), the court rejected the tying allegations and,

3  without opining on what would be sufficient, simply granted leave for the plaintiff to try to allege

4  that the products were not separately available.  Here, plaintiffs concede that the products are

5  separately available.  *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 452 (3d Cir. 1977), permitted the

6  tying claim, but only on the basis that the defendants' lease provisions "preclud[ed]" as an

7  economic matter the plaintiff dealers from purchasing any gasoline at all from other suppliers.

8      **B.      Plaintiffs Have No Answer to Apple's Showing that Plaintiffs' Theory**

9              **Conflicts with Basic Antitrust Policies.**

10      Not only has plaintiffs' "enhanced utility" theory never been accepted by any court, it

11  cannot be squared with basic antitrust policies.  Apple's opening memorandum (at 7-11) showed

12  that extending tying law to regulate product design and the scope of interoperability would raise a

13  host of issues for which courts are ill-equipped.  After that brief was filed, the Supreme Court

14  decided *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, No. 07-512, 2009 WL 454286 (U.S. Feb.

15  25, 2009), in which the Court reviewed the "institutional concerns" that "counsel against"

16  expansion of the antitrust laws.  *Id.* at *10.  Chief among those concerns is that a court should not

17  impose duties to deal with competitors that "it cannot explain or adequately and reasonably

18  supervise."  *Id*.  Nor should a court create antitrust duties where companies that seek to avoid

19  liability "will have no safe harbor" for their practices.  *Id*.

20      Those are the same concerns articulated in Apple's opening memorandum (at 7-11), for

21  which plaintiffs have no answer whatever.  Plaintiffs do not suggest any feasible means by which

22  a court or a jury is to determine when enhanced utility rises to the level of a tie.  They do not

23  _____

24  the products together was less expensive than buying them separately); *Advance Bus. Sys. & Supply Co. v. SCM Corp.*, 415 F.2d 55, 62 (4th Cir. 1969) (finding a tie where the price of using a

25  rival's supplies was so high that the products "cannot realistically be regarded as separately available"); *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1500 (8th Cir. 1992) (rejecting tying

26  claim where products were separately available, and package pricing was not extreme); *Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*, No. C93-20613 RMW, 1995 WL 853037, at

27  *13 (N.D. Cal. Sept. 7, 1995) (granting summary judgment against tying claim because evidence

28  showed that separate purchases were made).

1  suggest how a company could avoid liability under their theory other than by giving up its rights

2  to use its own proprietary software or otherwise ensuring that its products were compatible with

3  competing products. They do not dispute that, under their theory, Apple could not have avoided

4  the alleged tie simply by offering the products separately. Apple has done that from the

5  beginning. Instead, to avoid the alleged tie, Apple would have had to license its software to

6  competitors, or license Microsoft's DRM. No court has ever found a tie based on a company's

7  decision to use its own software rather than that of a principal competitor.[5] The obvious problems

8  inherent in forcing Apple to become dependent on Microsoft illustrate the point. *See* Dkt. 175,

9  p. 5 & n.4.

10      Nor do plaintiffs have any answer to Apple's showing that their theory would chill the

11  very innovation that the antitrust laws were designed to foster. Under their enhanced utility

12  theory, the better that Apple's two products work together, the more they would supposedly

13  violate the antitrust laws. But the antitrust laws were intended to encourage the innovative

14  creation of new technologies, not deter them with the threat of treble damages. As the Ninth

15  Circuit recognized in *Foremost Pro*, applying tying law to compel companies to design their

16  products so that they work equally well with competitors' products would "unjustifiably deter the

17  development and introduction of those new technologies so essential to the continued progress of

18  our economy." 703 F.2d at 543.

19      The Ninth Circuit's concern about the misuse of tying law has even more force today.

20  Most of the cases on which plaintiffs rely were decided before the Supreme Court's more recent

21  recognition that tying arrangements are not inherently anticompetitive and that most ties benefit

22  competition. *See* Open. Mem. 10; *see also Rick-Mik Enters., Inc. v. Equilon Enters., LLC*, 532

23  F.3d 963, 971-72 & n.2, 974 n.3 (9th Cir. 2008) (observing that the "trend has changed" and

24

25  [5]  *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001), did not find a tie based on a
    refusal to license software or lack of interoperability. Instead, like plaintiffs' other cases, it

26  involved an express contractual tie: Microsoft refused to offer Windows and Internet Explorer
    separately. *See id.* at 84 ("Microsoft required licensees of Windows 95 and 98 also to license IE

27  as a bundle at a single price."). Remedying that contractual tie would not have required
    Microsoft to license any software.

28

SFI-604793v3

Reply Mem. re Mot. for Jgmt on Pldgs
C-05-00037-JW

1   earlier rulings premised on hostility to tying arrangement are no longer valid).  Plaintiffs' claim

2   runs directly counter to this trend.  Their claim would be invalid even under the more expansive

3   view of tying law that previously prevailed.  Yet they are now seeking to dramatically expand

4   tying law far beyond what any court has previously permitted.  Sound policy reasons, which

5   plaintiffs fail to address, require rejecting that expansion.

6   **II.    PLAINTIFFS' CLAIM INDEPENDENTLY FAILS BECAUSE THEY WERE NOT**

7   **COERCED.**

8   **A.    Plaintiffs Must Have Been Individually Coerced; Coercion of Others Is Not**

9   **Enough.**

10          As an independent ground for dismissal, Apple's memorandum also showed that, if

11  enhanced utility could ever be a tie (which it cannot), plaintiffs were not victims of any such tie

12  and lack standing to assert it.  In response, plaintiffs do not dispute that their complaint contains

13  no allegations that they were individually coerced to purchase iPods by any alleged inability to

14  play iTunes Store content on competing players.  Instead, they assert that they are excused from

15  alleging such coercion because *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1212 (9th Cir.

16  1977), supposedly holds that consumers can sue for tying even if they were not coerced.

17          Plaintiffs, however, have no answer to the key points showing that *Moore* made no such

18  holding:

19          • *Moore* was brought by a competitor, not a consumer.  The court thus had no occasion

20              to consider, and did not address, whether a consumer who was not coerced may assert

21              a tying claim.

22          • The defendant cemeteries in *Moore* contractually required that purchasers of cemetery

23              lots purchase installation services and markers from the defendants.  *Moore* thus

24              involved an actual tie and actual coercion.

25          • The *dictum* in *Moore* that coercion may be inferred in a competitor case from a

26              showing that an "appreciable number of buyers accepted burdensome terms" does not

27              apply here because no facts are alleged—or can be alleged—that buying an iPod as a

28              result of enhanced utility is acceptance of a burdensome term.

SFI-604793v3

- 8 -

1      Plaintiffs point (Opp. 10) to *Moore*'s language that a tie may be found even if not all

2   purchasers were "absolutely required" to purchase the tied product. But this assertion misses the

3   relevant point: even if a competitor may bring suit in such circumstances, *Moore* did not hold

4   that a non-coerced consumer may do so. And there is a world of difference in any event between

5   an express requirement that may not have been enforced as to every single customer (the situation

6   in *Moore*) and a claim that two separately available products have enhanced utility together. Nor

7   did *Moore* hold that all purchasers are injured when a "sufficient number" (Opp. 10-11) are

8   subjected to a tie. That issue was not presented in *Moore;* and the numerous cases rejecting class

9   certification when the alleged tie was not imposed uniformly on all purchasers are directly to the

10  contrary. *See* Open. Mem. 12-13.[6]

11      Plaintiffs also assert (Opp. 12) that Apple tied its products together as the defendants did

12  in *Moore*. But the alleged tie in *Moore* consisted of an express contractual requirement that the

13  tied product be bought from the defendant. *Moore* did not suggest that a tie may be found simply

14  on the basis that the defendant's products have enhanced utility.

15      Nor is it an answer to say that a "significant number of iPod purchasers use iTunes."

16  Plaintiffs themselves admit (Opp. 12) that coercion cannot be inferred simply on the basis that

17  consumers choose to purchase two products from the same seller. No allegation is or could be

18  made that consumers would not buy iPods and iTunes Store content unless forced to do so,

19  anymore than the same allegation could be made about bacon and eggs. *See* Open. Mem. 14.

20

21

---

22  [6]   For this same reason, the Creative Labs declaration (Opp. 11) does not overcome plaintiffs'
    lack of individual coercion. An alleged impact on a competitor does not entitle a customer who
23  bought the product without regard to any alleged coercion to bring suit.

24      Unlike *Moore*, *Hill v. A-T-O, Inc.,* 535 F.2d 1349 (2d Cir. 1976), and *Siegel v. Chicken
    Delight, Inc.*, 448 F.2d 43 (9th Cir. 1971), were brought by purchasers rather than competitors.
25  Unlike plaintiffs here, however, the plaintiffs in those cases established that they were
    individually required to buy the tied product as a condition of obtaining the tying product. In
26  *Hill*, the "defendants admit[ted] to a policy of never offering the FBP buying plan membership
    [the tying product] separately from the sale of the Compact cleaner." 535 F.2d at 1355.
27  Similarly, in *Siegel* the tie consisted of a "contractual requirement" to which all franchisees were
    subject. 448 F.2d at 46.
28

1    Thus, it does not help plaintiffs prove coercion to note that numerous iPod purchasers play iTunes

2    Store music.

3        Plaintiffs are similarly incorrect in asserting (Opp. 10) that subsequent Ninth Circuit cases

4    have permitted non-coerced consumers to bring a tying claim.  The cited cases hold the opposite.

5    *Paladin Assocs., Inc. v. Mont. Power Co.,* 328 F.3d 1145, 1159-62 (9th Cir. 2003), recognized

6    that "[e]ssential to . . . a tying claim is proof that the seller ***coerced*** a buyer to purchase the tied

7    product." *Id.* at 1159 (emphasis in original).  And it rejected the claim there because the

8    defendant did not require that the products be purchased together or make separate purchases

9    infeasible.  Moreover, far from interpreting *Moore* as permitting a claim in the absence of

10   coercion, *Paladin* described *Moore* as finding coercion because the "cemetery contract required

11   buyers of cemetery lots to buy gravesite care service and monuments from the seller with up to

12   350% mark-ups." *Id*. at 1160.  Similarly, *Cascade Health* held that "the coerced purchase of the

13   tied product is the key aspect of an illegal tie" (515 F.3d at 913), and it found sufficient evidence

14   of coercion based, not on any theory of enhanced utility, but on proof that no rational consumer

15   would purchase the tied product absent the tie.  *Id*. at 915.[7]  Consistent with these cases, the

16   leading antitrust treatise recognizes that purchasers who were not coerced lack standing to sue.

17   *See* Open. Mem. 12 (citing 10 P. Areeda, H. Hovenkamp & E. Elhauge, *Antitrust Law*, ¶ 1753c,

18   at 276 n.12 (2d ed. 2004)).  Plaintiffs ignore this authority.

19       In short, neither *Moore* nor any other case has held that a consumer may assert a tying

20   claim on the ground that, although he or she was not personally coerced, other consumers might

21   have been.  Thus, even if it were a valid tying claim to assert that some customers bought the

22   products because of their enhanced utility to work together, these plaintiffs were not the "victims"

23   of any such tie and lack standing to assert it.

24

25

---

26   [7]   *See also Betaseed, Inc. v. U & I Inc.*, 681 F.2d 1203, 1221 (9th Cir. 1982) (holding that
     coercion is "the crucial element" of a tying claim and concluding that coercion was present
27   because the evidence showed that the defendant never approved the use of any substitute for the
     tied product).
28

1    **B.    Plaintiffs' Deposition Testimony Confirms They Were Not Coerced.**

2        The argument by plaintiffs Rosen and Tucker that they were individually coerced shows

3    the futility of their theory.  First, both of them admit that they bought iPods **before** obtaining any

4    music from Apple.  Dkt. 176, Ex. 17, 46:8-10, 62:2-5; Dkt. 176, Ex. 19, 54:19-55:2.  Second,

5    even for the iPods that they later bought, neither of them contends that Apple forced them to buy

6    the iPods as a condition for obtaining music.  Rather, they claim in essence that, having obtained

7    music from Apple, it was more convenient for them to buy an iPod, *i.e.,* that the iPod enjoyed

8    enhanced utility over competitors.

9        Rosen's primary complaint was that she thought that, if she bought a competing player,

10   she would have to copy all of her music from her CDs again.  Dkt. 176, Ex. 17, 75:10-76:16,

11   156:19-157:7.  That has nothing to do with the iTunes Store, Apple's use of its own DRM or even

12   plaintiffs' tying theory.[8]  And, at bottom, her complaint is that she bought a subsequent iPod

13   because it was more convenient than re-loading her CD collection.

14       Rosen's situation illustrates the fallacy of plaintiffs' argument.  Almost anytime a

15   customer purchases a product and invests time and energy in setting it up, buying supplies for it

16   or learning how to operate it, switching to a competing product may be inconvenient and time-

17   consuming.  Tying law is not intended to address such convenience issues.  It is instead limited to

18   companies that refuse to sell one product unless the buyer agrees to purchase another.

19       Nor was Tucker coerced within the meaning of tying law.  She admits that she bought her

20   first iPod voluntarily.  Dkt. 176, Ex. 19, 8:22-9:1, 11:4-5, 58:2-4.  She did not have any iTunes

21   Music at the time, using her CD collection as the source of her music instead.  *Id*. at 47:25-48:11,

22   51:3-5, 52:21-23.  She had no complaint about the iPod or the iTunes Store until a discussion

23   with her former boyfriend in July 2006, at which point she became a plaintiff—and he became

24

25

26   [8]   Rosen's problem, unrelated to Apple's anti-piracy software, was that when she ripped her CD collection into her iTunes library, she used the AAC format.  Dkt. 176, Ex. 17, 29:9-30:15.  To play that music on some MP3 players, she needs to convert it to MP3 format.  She can do so simply by changing her import preference to "MP3 encoder" and, after selecting the music she wants to convert, clicking Advanced>Convert Selection to MP3.  *See* Dkt. 176, Ex. 9.

27

28

SFI-604793v3

Reply Mem. re Mot. for Jgmt on Pldgs
C-05-00037-JW

1  her counsel of record. *Id*. at 85:18-87:19, 90:11-21.[9]  Six months after suing, she bought another

2  iPod. She asserts that she purchased the second iPod because at that point she had purchased

3  some iTunes Store music. But her purchases amounted to less than 25 songs or about two CD's

4  worth of music. *Id.* at 43:8-45:18, 120:9-121:15. Choosing to buy an iPod rather than

5  burning/ripping two CDs or obtaining the music from another source is a matter of convenience,

6  not the type of coercion that the cases require.

7  **III.    SECTION 1 DOES NOT APPLY.**

8        Plaintiffs do not dispute that Sherman Act section 1—the statute under which they assert

9  their tying claim—applies only if an agreement exists. Trying to meet that requirement, plaintiffs

10  say (Opp. 5) that customers are "forced to agree to not purchase a portable digital media player

11  other than an iPod." But the allegations to which they point (Opp. 15, citing Cons. Cmplt. ¶¶ 41-

12  44, 50) describe only Apple's decision to adopt its own DRM, not any agreement between Apple

13  and any customer. The absence of any agreement is why the leading antitrust treatise states that

14  claims such as the one alleged here are not cognizable under section 1. 3A *Antitrust Law*, ¶ 776d,

15  p. 254 ("[N]either a § 1 'agreement,' nor a Clayton Act § 3 'condition or understanding' is

16  involved, so any incremental liability that attaches to such claims does not apply.").

17        The same conclusion flows from the cases cited by plaintiffs. Each involved an actual

18  coerced agreement between the seller and the buyer to purchase both products or to refrain from

19  purchasing the tied product from competitors.[10] None involved unilateral product design

20  decisions.

21

22  _____

    [9]   Tucker's counsel/former boyfriend instructed her not to answer whether he or she brought up

23  the "concern" or if she developed her "concern" as a result of talking with him. Ex. 19, 88:2-
90:24.

24
    [10]  *N. Pac. Ry.*, 356 U.S. at 5-6 (railroad contractually required purchasers of land to agree to

25  ship commodities over the railroad's lines); *Eastman Kodak*, 504 U.S. at 461 (Kodak required
purchasers of parts to agree not to purchase service from ISOs); *County of Tuolumne v. Sonora*

26  *Cmty. Hosp.*, 236 F.3d 1148, 1152 (9th Cir. 2001) (hospital required obstetrical patients to
purchase cesarean section services from specified doctors); *Microsoft*, 253 F.3d at 84 (Microsoft

27  required licensees of Windows to also license Internet Explorer); *Nobel Scientific*, 670 F. Supp. at

28  1324  (defendant allegedly coerced agreement to buy related software applications as a package).

Reply Mem. re Mot. for Jgmt on Pldgs
C-05-00037-JW

1    This is not a mere pleading issue.  It reflects the fundamental flaw in plaintiffs' tying

2    claim.  A tying arrangement is one in which the seller conditions the sale of one product on the

3    buyer's agreement to purchase a second product.  Where, as here, no such conditioned sale exists,

4    no agreement under section 1 exists and tying law does not apply.

5    **IV.    THE STATE LAW CLAIMS ON TYING SHOULD ALSO BE DISMISSED.**

6        Plaintiffs agree (Opp. 15) that, to the extent their state law claims assert or rely on the

7    tying allegations, the analysis under state law is the same as under federal law.  Thus, dismissal of

8    the tying claims under the Sherman Act mandates dismissal of the same claims under state law.

9                                  **CONCLUSION**

10        For these reasons, judgment on the pleadings on the tying claims should be granted.

11

12   Dated: March 9, 2009                    Respectfully submitted,

13                                           Jones Day

14                                           By: /s/ Robert A. Mittelstaedt
                                                 Robert A. Mittelstaedt

15                                           Counsel for Defendant
                                             APPLE INC.
16

17

18

19

20

21

22

23

24

25

26

27

28