United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| The Apple iPod iTunes Antitrust Litigation | NO. C 05-00037 JW<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS; ORDERING SUPPLEMENTAL BRIEFING** |

## I. INTRODUCTION

Plaintiffs[1] bring this class action against Defendant Apple Computer, Inc. ("Apple"), alleging violations of the Sherman Act, 15 U.S.C. §§ 1, *et seq.*, and related state law claims. Plaintiffs allege that Apple has committed unlawful acts in the sale of its iPod portable digital music player and online digital music files sold through its iTunes Music Store ("iTMS"), in violation of federal and state antitrust laws.

Presently before the Court is Defendant's Motion for Judgment on the Pleadings as to Plaintiffs' Tying Claims. (hereafter, "Motion," Docket Item No. 200.) The Court found it appropriate to take the matter under submission without oral argument. See Civ. L.R. 7-1(b). Based on the papers submitted to date, the Court GRANTS in part Defendant's Motion for Judgment on the Pleadings as to Plaintiffs' tying claims.

---

[1] Named Plaintiffs are Melanie Tucker, Mariana Rosen, and Somtai Troy Charoensak.

## II.  BACKGROUND

A detailed outline of the factual allegations and procedural history in this case may be found in the Court's December 20, 2006 Order Denying Defendant's Motion to Dismiss (hereafter, "December 20 Order," Docket Item No. 27)[2] and in the Court's December 22, 2008 Order Granting Plaintiffs' Motion for Class Certification as to Counts Two, Three, Four, Five, Six, and Seven Only and Appointing Class Counsel; *Sua Sponte* Order Reconsidering Defendant's Motion to Dismiss Count One and Requiring Further Briefing (hereafter, "December 22 Order," Docket Item No. 196). The Court reviews the relevant procedural history to the extent it implicates the present Motion.

In the Court's December 22, 2008 Order, the Court granted in part Plaintiffs' Motion for Class Certification. (Decmeber 22 Order at 1.) In doing so, the Court permitted Plaintiffs' Sherman Act § 2 claims and related state law claims to proceed as a class action. (See id.) The Court, however, declined to certify a class as to Plaintiffs' claim for unlawful tying under Sherman Act § 1. Instead, the Court made a *sua sponte* determination to reconsider its December 20, 2006 finding that Plaintiffs' Complaint had stated a tying claim under settled antitrust law. (See Decmeber 20 Order at 6-9; December 22 Order at 6-7.) Accordingly, the Court denied without prejudice Plaintiffs' Motion for Class Certification, with respect to the tying claim only, subject to renewal after reconsideration of whether Plaintiffs have, as a predicate matter, stated a cognizable tying claim. The Court invited Defendant to move pursuant to Federal Rules of Civil Procedure 12(b) or 12(c), and instructed Defendant to brief the following issues:

(1) Whether "market-level coercion" can be the basis of a cognizable tying claim under Section 1 of the Sherman Act; and

(2) Whether, as a matter of law, coercion can be found where there is no requirement that the tying and tied product be purchased together.

(December 22 Order at 7.)

---

[2] This Order may be found in the docket for Tucker v. Apple Computer, Inc., Case No. C 06-04457 JW, which was one of the original cases now included in this consolidated action.

2

Presently before the Court is Defendant's Motion for Judgment on the Pleadings.

## III. STANDARDS

Under Federal Rule of Civil Procedure 12(c), any party may move for judgment on the pleadings at any time after the pleadings are closed but within such time as not to delay the trial. Fed. R. Civ. P. 12(c). "For the purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990). Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Id. When brought by the defendant, a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is a "means to challenge the sufficiency of the complaint after an answer has been filed." New. Net, Inc. v. Lavasoft, 356 F. Supp. 2d 1090, 1115 (C.D. Cal. 2004). A motion for judgment on the pleadings is therefore similar to a motion to dismiss. Id. When the district court must go beyond the pleadings to resolve an issue on a motion for judgment on the pleadings, the proceeding is properly treated as a motion for summary judgment. Fed. R. Civ. P. 12(c); Bonilla v. Oakland Scavenger Co., 697 F.2d 1297, 1301 (9th Cir. 1982).

## IV. DISCUSSION

Defendant contends, *inter alia*, that (1) no unlawful tie can exist where products are separately available and have separate uses and (2) Plaintiffs in this case have not alleged coercion sufficient to support a tying claim. (Motion at 5, 11.) The Court considers each issue in turn.

**A.     Separate Availability of Tying and Tied Products**

Defendant contends that there can be no Section 1 tying liability in this case, as a matter of law, because the tying and tied products undisputedly have separate uses and are sold on a separate basis. (Motion at 5.) In support of this position, Defendant relies on the premise that tying law requires that a seller condition purchase of the tying product on the buyer's agreement to also

3

purchase the tied product.[3] In response, Plaintiffs contend that Section 1 liability does not require that the tying and tied products be purchased together. The Court first reviews applicable tying law, and then considers whether the tie alleged by Plaintiffs is cognizable under Section 1, as a matter of law.

### 1. Tying Claims Under Sherman Act § 1

In the Court's December 20, 2006 Order, the Court summarized the basic framework for Section 1 tying liability, as follows:

> Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal. . . ." 15 U.S.C. § 1. Tying in violation of Section 1 can either be a per se violation or a violation of the rule of reason. County of Tuolumne v. Sonora Community Hosp., 236 F.3d 1148, 1157-58 (9th Cir. 2001). To establish that a tying arrangement is per se illegal, a plaintiff must prove (1) a tie between two separate products or services sold in separate markets; (2) sufficient economic power in the tying product market to affect the tied market; and (3) an effect on a substantial volume of commerce in the tied product market. Id. Implicit in these elements is the need of the seller of the tying product "to force the buyer into the purchase of the tied product that the buyer did not want at all, or might have preferred to purchase elsewhere on different terms." Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 12 (1984); Paladin Assocs., Inc. v. Montana Power Co., 328 F.3d 1145, 1159 (9th Cir. 2003).

(December 20 Order at 6.)

In this case, the dispute concerns whether Plaintiffs have adequately alleged the first prong of the Jefferson Parish standard for tying liability. In particular, the parties contest whether Plaintiffs have alleged a "tie" within the meaning of established Sherman Act jurisprudence. To resolve this dispute, the Court considers what types of product sales relationships constitute "tying arrangements" under Sherman Act Section 1.

"[A] tying arrangement may be defined as an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." N. Pac. Ry. Co. v. United States,

---

[3] In this case, purchases from the iTMS are alleged to be the "tying" product and the iPod is alleged to be the "tied" product. (See Consolidated Complaint ¶¶ 79-84, hereafter, "Complaint," Docket Item No. 107.)

356 U.S. 1, 5-6 (1958). The "essence of an antitrust tying violation" is the use of a seller's market power-based "leverage to force a purchaser to do something that he would not do in a competitive market." Murphy v. Bus. Cards Tomorrow, Inc., 854 F.2d 1202, 1204 (9th Cir. 1988) (quoting Jefferson Parish, 466 U.S. at 14 n.20). "[W]here the buyer is free to take either [the tying or the tied] product by itself there is no tying problem. . . ." Northern Pacific, 356 U.S. at 6 n.4.

The paradigmatic unlawful tying relationship exists where a seller expressly conditions the sale of the tying product on the buyer's additional purchase of the tied product. For example, in Northern Pacific, the defendant sold and leased tracts of land that it owned throughout the United States. In the majority of the relevant sales contracts and lease agreements, the defendant inserted "preferential routing" clauses, "which compelled the grantee or lessee to ship over its lines all commodities produced or manufactured on the land provided that its rates . . . were equal to those of competing carriers." 356 U.S. at 3. After an antitrust challenge to the "preferential routing" practice by the United States, the Supreme Court affirmed a lower court judgment of tying liability against the defendant railway company.

In United States v. Loew's, 371 U.S. 38, 39-40 (1962), the Supreme Court upheld tying liability against motion picture distributors where the distributors "conditioned the license or sale of one or more feature films upon the acceptance by [television stations] of a package or block containing one or more unwanted or inferior films." Similarly, in Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 463 (1992), the Court permitted tying claims against Kodak to go forward where there was evidence that Kodak sold replacement parts for its copiers only where the purchasers agreed not to buy repair services from independent service providers.

Tying liability, however, has not been limited to situations in which sellers engaged in express conditioning with respect to the sale of the tying product. For example, "separate availability will not preclude antitrust liability where a defendant has established its pricing policy in such a way that the only viable economic option is to purchase the tying and tied products in a single package." Ways & Means, Inc. v. IVAC Corp., 506 F. Supp. 697, 701 (N.D. Cal. 1979); see also

Bogosian v. Gulf Oil Corp., 561 F.2d 434, 450 (3d Cir. 1977) ("an illegal tie-in may exist even when the seller has not expressly conditioned the sale of one product upon purchase of another, if the existence of a tie-in can otherwise be established from business conduct"); Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theaters, Inc., 388 F.2d 272, 283 (2d Cir. 1967); Advance Bus. Sys. & Supply Co. v. SCM Corp., 415 F.2d 55, 62 (4th Cir. 1969). Liability in such cases, however, is limited where separate purchase of the allegedly tying and tied products is a "reasonable alternative" to buying the seller's packaged product. Ways & Means, 506 F. Supp. at 702. In Ways & Means, the court granted summary judgment to the defendant where 25% of purchases of the allegedly tied product were made separately from purchase of the package of tying and tied products. Id.

Finally, several cases acknowledge the potential for liability based on a so-called "technological tie," where a technological relationship between a seller's products compels a buyer to purchase both products. Such compulsion results when one product is ineffective or is less effective without concomitant purchase of the second technologically interrelated product. The primary case addressing technological tying is Foremost Pro Color, Inc. v. Eastman Kodak Co., 703 F.2d 534 (9th Cir. 1983). See also Innovation Data Processing, Inc. v. Int'l Bus. Machines, Corp., 585 F. Supp. 1470, 1475-76 (D.N.J. 1984) (following Foremost Pro in granting summary judgment to the defendant on a Section 1 tying claim where, despite a technical interrelationship between products, customers were free to purchase either product alone). In Foremost Pro, the Ninth Circuit considered tying claims against Kodak, which were based on Kodak's introduction of a new type of film that was incapable of being processed with the types of processing materials that otherwise existed at the time. The result of this alleged technological interrelationship was that purchase of Kodak's processing materials was a necessary incident of purchasing Kodak's new film. Id. at 542. The purchaser plaintiff asserted a Section 1 claim, contending that the technological connection created an implied condition that "whenever [the plaintiff] purchased one Kodak product, it necessarily had to purchase additional Kodak commodities." Id. at 540.

6

In upholding the district court's granting of Kodak's motion to dismiss, the Ninth Circuit "decline[d] to place such technological ties in the category of economic restrictions deemed *per se* unlawful by Northern Pacific and its progeny." Id. at 542. The Court held that "the development and introduction of a system of technologically interrelated products is not sufficient alone to establish a *per se* unlawful tying arrangement even if the new products are incompatible with the products then offered by the competition and effective use of any one of the new products necessitates purchase of some or all of the others." Id. at 542-43. The basis for this conclusion was the Ninth Circuit's concern with impeding technological development by imposing overly onerous antitrust duties on innovative firms. In dictum, the Court did suggest, however, that a technological tie could still be found unlawful if the "dominant purpose motivating [the seller's] design and introduction" of the system of related products "was to compel purchase of the entire system as a package, rather than to achieve the legitimate goal of marketing new, technologically superior products. . . ." Id. at 543.

### 2. Application to the Alleged iTMS - iPod Tie

In this case, Plaintiffs allege in relevant part:

> Online music purchased from the iTMS is encoded by Apple with Digital Rights Management ("DRM") restrictions called "FairPlay." (Complaint ¶ 41.) Use of FairPlay requires iTMS consumes to use Apple's iPod to transfer the music directly to a Digital Music Player. (Id. ¶ 43.) The tied product is the iPod and the tying product is FairPlay-DRM Online Music purchased from the iTMS. Apple deliberately makes the music filed purchased from the iTMS incapable of being played by other Digital Music Players. Thus, consumers who have purchased Online Music from Apple will have no choice but to buy an iPod if they want to play their music directly on a Digital Media Player. (Id. ¶ 43.) After purchasing Digital Music from the iTMS, consumers are locked into making all future Digital Music Player purchases from Apple, because consumers with libraries of iTMS music could not utilize any of the songs they purchased from the iTMS with any non-iPod Digital Music Player. (Id. ¶ 44.) As a result of this activity, Apple has been able to charge supracompetitive prices to all purchasers of iPods. (Id. ¶ 73.)

Critically, for purposes of the Court's present tying inquiry, there is no allegation that iTunes music and iPods are not available on a separate basis. It appears that there is, in fact, no dispute that iTunes music and iPods are always separately available. Rather, the gravamen of the Complaint is that by creating the DRM-mediated link between iTunes music and iPods, Apple has forced "iTunes

7

1 customers to forego their free choice of portable digital media players." (Opposition at 4.)
2 According to Plaintiffs, "a tie exists here because although purchasers can buy iTunes files
3 separately, they are forced to agree not to purchase a portable digital media player other than an iPod
4 for direct playback of their iTunes files." (Id. at 5.)

5 Despite Plaintiffs' contentions that the technological interrelationship between iTunes music and iPods constitute an unlawful tie, the Court is not persuaded that this is the type of relationship that is condemned by federal antitrust law. First, the allegations in this case are far from the paradigmatic cases of express conditioning proscribed by the Supreme Court in cases like Northern Pacific and Lowe's. That is, there is no allegation that there was any form of express conditioning in connection with Apple's sale of either iTunes music or iPods. Second, there is no allegation of a package pricing policy that could constitute an unlawful tie, of the type recognized in Ways & Means. Even in Ways & Means, the court refused to find an unlawful tie, where, despite package pricing, there appeared to be a reasonable alternative that allowed consumers to purchase the tied product on a separate basis. See 506 F. Supp. at 702. As in that case, Plaintiffs' allegations suggest that there are reasonable alternatives in that consumers are free to take either product separately. Indeed, nothing in the allegations suggests that purchasing an iPod is a necessary incident of purchasing iTunes music, or vice versa. Furthermore, there is no allegation that iPods and iTunes music are ever even sold on a packaged basis.

Finally, the Court recognizes that the most relevant model for liability is that of the technological tie, as recognized by the Ninth Circuit in Foremost Pro. See 703 F.2d at 542. The Ninth Circuit in that case identified the technological tie as a species of tying arrangement, but expressly declined to find that allegations of technological ties, without more, could provide the basis for *per se* Section 1 liability. Although Ninth Circuit suggested that the existence of an anticompetitive purpose behind a technological tie might lead to a different outcome, the Court was not actually confronted with any such allegations. Ultimately, this Court is not aware of any case where *per se* tying liability was found on the basis of a technological tie.

8

In sum, the Court is not persuaded that the allegations in this case are sufficient to give rise to a cognizable claim for *per se* tying under Sherman Act § 1. The Court finds that, although Plaintiffs are alleging conduct that may have anticompetitive effects, existing antitrust doctrine does not allow such conduct to be remedied through a *per se* tying action.[4] That is, current antitrust jurisprudence does not, as a *per se* matter, prohibit conduct that merely limits consumers' "free choice" in their purchase of complimentary products.

Accordingly, the Court GRANTS Defendant's Motion for Judgment on the Pleadings as to Count 1 for *per se* unlawful tying.[5]

### 3. Rule of Reason

The Court recognizes, however, that Plaintiffs alternatively seek to proceed with a § 1 claim on the basis of a "rule of reason" theory of liability. (Complaint ¶ 56.)

"Conduct which does not meet the per se requirements may still constitute a violation of the Sherman Act Section 1 rule of reason." Betaseed, Inc. v. U&I, Inc., 681 F.2d 1203, 1228 (9th Cir. 1983). The rule of reason "focuses directly on the challenged restraint's impact on competitive conditions." Id. The inquiry under the rule of reason examines "whether the challenged agreement is one that promotes competition or one that suppresses competition." Id. In such a case, the plaintiff has the burden of demonstrating to the factfinder, upon review of the totality of the circumstances, that the intent of the restraint is anticompetitive and that the restraint has significant anticompetitive effects. Id. The reasonableness of a restrictive practice "is a paradigm fact question." Id.

In this case, neither party's briefs address whether, assuming Plaintiffs' *per se* tying claim is dismissed, Plaintiffs should be permitted to proceed on a rule of reason theory. Accordingly, to the

---

[4] The Court does not comment on whether this conduct, despite being unactionable under a tying framework, may still provide the basis for a finding of willfulness in Plaintiffs' Section 2 monopolization and attempted monopolization claims.

[5] The Court also GRANTS Defendant's Motion with respect to Plaintiffs' state law claims, to the extent those claims are based on unlawful tying under federal antitrust law.

extent Plaintiffs seek to proceed on the rule of reason theory, the Court invites Defendant to file another Rule 12(c) motion so that the parties will have an opportunity to fully brief the issue.

### B. Absence of Individual Coercion

In light of the Court's finding that the technological tie alleged in this case does not provide the basis for a cognizable tying claim under Section 1 of the Sherman Act, the Court declines to speculate on whether Plaintiffs have alleged coercion sufficient to support a tying claim.

### V. CONCLUSION

The Court GRANTS in part Defendant's Motion for Judgment on the Pleadings as to Plaintiffs' claim for unlawful tying under the Sherman Act and related state law claims. The Court invites Defendant to file another Rule 12(c) motion regrading whether Plaintiffs' antitrust claim under the rule of reason may still proceed.

The parties shall appear for a Case Management Conference on **June 1, 2009 at 10 a.m.** The parties shall meet and confer and file a Joint Case Management Statement on or before **May 22, 2009.** The Statement shall include, among other things, the parties' proposed schedule to advance this case.

Dated: May 15, 2009

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Adam Richard Sand invalidaddress@invalidaddress.com
Alreen Haeggquist alreenh@zhlaw.com
Andrew S. Friedman afriedman@bffb.com
Bonny E. Sweeney bonnys@csgrr.com
Brian P Murray bmurray@murrayfrank.com
Caroline Nason Mitchell cnmitchell@jonesday.com
Craig Ellsworth Stewart cestewart@jonesday.com
Francis Joseph Balint fbalint@bffb.com
Helen I. Zeldes helenz@zhlaw.com
Jacqueline Sailer jsailer@murrayfrank.com
John J. Stoia jstoia@csgrr.com
Michael D Braun service@braunlawgroup.com
Michael D. Braun service@braunlawgroup.com
Robert Allan Mittelstaedt ramittelstaedt@jonesday.com
Roy A. Katriel rak@katriellaw.com
Thomas J. Kennedy tkennedy@murrayfrank.com
Tracy Strong tstrong@jonesday.com

Dated: May 15, 2009            **Richard W. Wieking, Clerk**

                               **By:  /s/ JW Chambers**
                               **Elizabeth Garcia**
                               **Courtroom Deputy**