ZELDES & HAEGGQUIST, LLP
HELEN I. ZELDES (220051)
ALREEN HAEGGQUIST (221858)
625 Broadway, Suite 906
San Diego, CA 92101
Telephone: 619/342-8000
619/342-7878 (fax)
helenz@zhlaw.com
alreenh@zhlaw.com

MEHRI & SKALET, PLLC
STEVEN A. SKALET (admitted *pro hac vice*)
CRAIG L. BRISKIN (admitted *pro hac vice*)
1250 Connecticut Ave NW, Suite 300
Washington, DC 20036
Telephone: 202/822-5100
202/822-4997 (fax)
sskalet@findjustice.com
cbriskin@findjustice.com

Attorneys for Plaintiff Stacie Somers

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTI-TRUST LITIGATION, <br><br> This Document Relates To: <br><br> *Somers v. Apple, Inc.*, Case No. C 07-6507 JW, <br> _____ | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. C 07-6507 JW <br><br> REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL <br><br> JUDGE: The Honorable James Ware <br> DATE: June 1, 2009 <br> TIME: 9:00 a.m. <br> CTRM: 8, 4th Floor |

**[REDACTED VERSION]**

**TABLE OF CONTENTS**

Page

I.    Introduction .................................................................................................... 1

II.   Plaintiff Readily Meets the Standards for Certification Under Rule 23(b)(2) ...................... 2

III.  Plaintiff Readily Meets the Standards for Certification Under Rule 23(b)(3) ...................... 2

      A.    Plaintiff's Section 1 & Cartwright Claims Can Be Proven Using Common Proof ................................................................................................. 2

            1.    Common Evidence Under the Rule of Reason ................................ 3

            2.    Coercion Is Not Required Under The Rule of Reason Analysis ................ 3

      B.    Class-Wide Impact Can Be Presumed ........................................................ 4

      C.    Class-Wide Impact Can Also Be Established With Common Proof ........................ 4

      D.    Plaintiff Can Calculate Damages on a Class-Wide Basis ........................................ 5

      E.    Defendant's Attacks on Dr. French Disregard The Applicable Standards for Experts on Class Certification. ................................................................. 8

      F.    Plaintiff's Class Definition Creates No Individualized Issues ................................. 11

IV.   The Court Should Certify a Nationwide Class Under California Law ............................... 11

      A.    The Court Can Certify A Class of Indirect Purchasers in 19 States and the District of Columbia ............................................................................... 14

      B.    The Court Can Certify a California Damages Class ................................................. 15

V.    Conclusion ........................................................................................................... 15

CASES

*A&M Supply Co. v. Microsoft Corp.*,
  654 N.W. 2d 572 (Mich. App. 2002)................................................................ 6

*Abbott Labs Norvir Antitrust Litigation*,
  2007 WL 1689899 (N.D. Cal. Mar. 11, 2007) ............................................... 15

*Alabama v. Blue Bird Body Co., Inc.*,
  573 F.2d 309 (5th Cir. 1978) ......................................................................... 4

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*,
  247 F.R.D. 156 (C.D. Cal. 2007) .................................................................... 9

*B.W.I. Custom Kitchen v. Owens-Ill., Inc.*,
  191 Cal. App. 3d 1341 (1987) ............................................................ 4, 8, 10

*Bell Atl. Corp. v. AT&T Corp.*,
  339 F.3d 294 (5th Cir. 2003) ......................................................................... 6

*Betaseed, Inc. v. U & I, Inc.*,
  681 F.2d 1203 (9th Cir. 1983) .................................................................... 2, 3

*Bruno v. Superior Court*,
  127 Cal. App. 3d 120 (1981) ......................................................................... 5

*California v. Infineon Tech., AG*,
  531 F. Supp. 2d 1124 (N.D. Cal. 2007) ........................................................ 12

*Clothesrigger, Inc. v. GTE Corp.*,
  191 Cal. App. 3d 605 (1987) .................................................................. 13, 14

*Diamond Multimedia Systems, Inc. v. Superior Court*,
  19 Cal. 4th 1036 (1999) ............................................................................... 13

*Dimidowich v. Bell & Howell*,
  803 F.2d 1473 (9th Cir. 1986) ...................................................................... 3

*Employment Dev. Dept. v. Superior Court*,
  30 Cal. 3d 256 (1981)................................................................................... 6

*Execu-Tech Bus. Sys. v. Appleton Papers*,
  No. 96-9639 CACE 05, slip op. (Fla. Cir. Ct. Dec. 16, 1997)........................ 6

*Feldman v. Sacramento Bd. of Realtors, Inc.*,
  119 Cal.App.3d 739 (1981) ........................................................................... 3

*Fisherman's Wharf Bay Cruise Corp. v. Superior Court*,
  114 Cal.App.4th 309 (2003) .......................................................................... 3

# TABLE OF AUTHORITIES

**Page**

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
    703 F.2d 534 (9th Cir. 1983) ........................................................................... 3, 4

*Freeland v. AT&T Corp.*,
    238 F.R.D. 130 (S.D.N.Y. 2006) ........................................................................ 6

*Global Minerals & Metals Corp. v. Superior Court*,
    113 Cal. App. 4th 836 (2003) ............................................................................. 4

*Gordon v. Microsoft Corp.*,
    2003 WL 23105550 (Minn. Dist. Ct. Dec. 15, 2003) ........................................ 6

*Hanover Shoe v. United Shoe Mach. Corp.*,
    392 U.S. 481 (1968) ........................................................................................... 4

*Howe v. Microsoft Corp.*,
    656 N.W. 2d 285 (N.D. 2003) ........................................................................... 6

*Illinois Brick*,
    431 U.S. 720 (1977) ................................................................................ 13, 14, 15

*In re Cardizem CD Antitrust Litig.*,
    200 F.R.D. 326 (E.D. Mich. 2001) ................................................................. 5, 9

*In re Citric Acid Antitrust Litig.*,
    1996 WL 655791 (N.D. Cal. Oct. 2, 1996) ..................................................... 10

*In re Cipro Cases I and II*,
    121 Cal. App. 4th 402 (2004) ............................................................... 4, 5, 6, 15

*In re Graphics Processing Units Antitrust Litig.*,
    253 F.R.D. 478 (N.D. Cal. 2008) ................................................................... 7, 8

*In re Intel Corp Microprocessor Antitrust Litig.*,
    496 F. Supp. 2d 404 (D. Del. 2007) ................................................................ 12

*In re Methionine Antitrust Litig.*,
    204 F.R.D. 161 (N.D. Cal. 2001) .................................................................... 10

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ............................................................... 2, 5, 9

*In re Pizza Time Theatre Litig.*,
    112 F.R.D. 15 (N.D. Cal. 1986) ...................................................................... 13

*In re South Dakota Microsoft Antitrust Litig.*,
    657 N.W. 2d 668 (S.D. 2003) ........................................................................... 6

*In re Static Random Access Memory (SRAM) Antitrust Litigation*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008) ...................................................... 11, 12

*In re Sugar Industry Antitrust Litig.,*
    73 F.R.D. 322 (D.C. Pa. 1976) ................................................................ 4

*In re Terazosin Hydrochloride Antitrust Litig.,*
    220 F.R.D. 672 (S.D. Fla. 2004) ...................................................... 4, 5, 15

*In re Visa Check/MasterMoney Antitrust Litig.,*
    192 F.R.D. 68 (E.D.N.Y. 2000), *aff'd*, 280 F.3d 124 (2d Cir. 2001) .................. 2

*J.P. Morgan v. Superior Court,*
    113 Cal. App. 4th 195 (2003) .............................................................. 12

*Jefferson v. Ingersoll Int'l Inc.,*
    195 F.3d 894 (7th Cir. 1999) ............................................................... 2

*Kravetz v. Park La Brea Associates,*
    862 F.2d 875 (9th Cir. 1988) ............................................................... 4

*Martino v. McDonald's Sys. Inc.,*
    86 F.R.D. 145 (N.D. Ill. 1980) ............................................................. 4

*Melnick v. Microsoft Corp.,*
    2001 WL 1012261 (Me. Super. Aug. 24, 2001) ............................................. 6

*Norwest Mortgage, Inc. v. Superior Court,*
    72 Cal. App. 4th 214 ...................................................................... 12, 13

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ....................................................................... 12

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.,*
    100 Fed. Appx. 296 (5th Cir. 2004) ........................................................ 9

*Probe v. State Teachers' Ret. Sys.,*
    780 F.2d 776 (9th Cir. 1986) ............................................................... 2

*Robinson v. EMI Music Distribution,*
    1996 WL 495551 (Tenn. Cir. Ct. 1996) ................................................. 14, 15

*Rosack v. Volvo of America Corp.,*
    131 Cal. App. 3d 741 (1982), *cert. denied*, 460 U.S. 1012 (1983) ..................... 10

*Virgin Atl. Airways Ltd. v. British Airways PLC,*
    257 F.3d 256 (2d Cir. 2001) ............................................................... 9

*Wershba v. Apple Computer, Inc.,*
    91 Cal. App. 4th 224 (2001) ............................................................... 13

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
    395 U.S. 100 (1969) ....................................................................... 4

# TABLE OF AUTHORITIES

**Page**

## STATUTES, RULES AND REGULATIONS

California Business and Professions Code
        § 16270 ................................................................................................ 3
        §16750(a) .............................................................................................. 3

Federal Rules of Civil Procedure
        Rule 23 .................................................................................................. 6
        Rule 23(b)(2) ......................................................................................... 2
        Rule 23(b)(3) ......................................................................................... 2

## SECONDARY AUTHORITIES

Herbert Hovenkamp,
        The Indirect-Purchaser Rule and Cost-Plus Sales, 103 Harv. L. Rev. 1717,
        1725-27 (1990) ................................................................................... 14

3 Herbert Newberg & Alba Conte
        *Newberg on Class Actions* (4th ed.)
        § 4.14 ................................................................................................... 2
        § 10.2-10.7 .......................................................................................... 5
        § 18:53 ................................................................................................ 5

## I.     Introduction

Apple goes to great lengths to make a relatively simple case seem very complicated. This consolidated action concerns a product that does not leave its shrink-wrapped box on its way from Apple to consumers, regardless of whether a middleman is involved. Indirect purchasers' iPods are indistinguishable from those of direct purchasers. This case is very different from those concerning products that are integrated into other products as they move through the chain of distribution, such as computer chips and chemicals, which makes a pass-on calculation more complicated. In addition to being a very simple distribution chain, it is a very concentrated one, by Apple's own design: ███████ ███████████████████████████████████████████████████████████████████████████ █████████████████████████████████. Reply Affidavit of Gary L. French, Ph.D., Regarding Class Certification ("French Reply Aff.") at ¶18.[1]

For this reason, there are very few differences between the indirect purchaser class and the direct purchaser class that the Court already has certified. Plaintiff brings the same claims based on the same facts as were alleged there. Indeed, Apple concedes that Plaintiff has satisfied every element of Rule[2] 23 except for predominance. To that end, Plaintiff has proffered the unrebutted expert report of Dr. Gary French, setting out how Plaintiff will prove class-wide impact and damages. Most of Defendant's attempts to cut down Dr. French's report involve the same criticisms that this Court dismissed in the direct purchaser case. Indeed, Dr. French's analysis proceeds along lines similar to those of Dr. Noll, with an additional analysis of how Plaintiff will prove that overcharge damages were passed on by retailers to consumers. Dr. French has set out his market analysis, the methodology he will employ, the important factors to isolate and consider, and the wholesale and retail data he will use to make the calculations.

The only respect in which the claims of direct and indirect purchasers diverge is in the apportionment of damages. The real import of the instant motion is whether indirect purchaser consumers can recover the alleged overcharge just as direct purchaser consumers should. If not,

---

[1] *See also* French Reply Aff. Ex. 1 (table analyzing market concentration of iPod sales).

[2] All references to "Rule" are to the Federal Rules of Civil Procedure unless otherwise noted.

retailers who passed on the overcharge can obtain a windfall recovery, and will have even less incentive in future cases to challenge the anticompetitive practices of their suppliers. By granting this motion, the Court can help to make the true injured purchasers whole.

## II.     Plaintiff Readily Meets the Standards for Certification Under Rule 23(b)(2)

Apple claims that since it started to sell DRM-free music in March 2009, Plaintiff has no injunctive claim to certify under Rule 23(b)(2). Of course, in certifying the direct purchaser injunctive class, the Court observed plaintiffs' claim that Apple is still "obstructing interoperability" by not yet unlocking "media already purchased from the iTMS so that it may be played on non-iPod digital media players." Order Re Mtn. for Class Cert., dated Dec.22, 2008 at 11, *The Apple iPod iTunes Anti-Trust Litigation*, Case No. 05-00037 (N.D. Cal.) ("Direct Case"), Docket No. 196. This has not changed. And Apple has not removed DRM from media files. "Class actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages."[3]   Apple does not deny that it intends to continue these practices, which will continue to tie class members to the iPod.[4] Thus, injunctive relief is necessary and appropriate.

## III.     Plaintiff Readily Meets the Standards for Certification Under Rule 23(b)(3)

### A.     Plaintiff's Section 1 & Cartwright Claims Can Be Proven Using Common Proof

The Court recently ruled that Plaintiffs may "seek to proceed with a §1 claim on the basis of a 'rule of reason' theory of liability."[5]   Moreover, "Conduct which does not meet the *per se* requirements may still constitute a violation of the Sherman Act Section 1 rule of reason." *Id*. (citing *Betaseed, Inc. v. U & I, Inc*., 681 F.2d 1203, 1228 (9th Cir. 1983)). Indeed, a rule of reason analysis may be applied

---

[3] *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986). *See also* 3 Newberg on Class Actions § 4.14 (4th ed.)*; Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999) ("It is possible to certify the injunctive aspects of the suit under Rule 23(b)(2) and the damage aspects under Rule 23(b)(3), achieving both consistent treatment of class-wide equitable relief and an opportunity for each affected person to exercise control over the damage aspects."); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 515 (S.D.N.Y. 1996).

[4] *See In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68, 88 (E.D.N.Y. 2000) (certifying Rule 23(b)(2) class where injunctive relief requested is an important component of the overall relief plaintiffs seek), *aff'd*, 280 F.3d 124 (2d Cir. 2001).

[5] Order Granting in Part Defendant's Motion for Judgment on the Pleadings; Ordering Supplemental Briefing, dated May 15, 2009 ("May 15, 2009 Order"), in Direct Case, Docket No. 213.

under both Section 1 of the Sherman Act and under California's Cartwright Act.[6] If Plaintiff prevails under her Cartwright Act claim, she is entitled to damages.[7]

### 1. Common Evidence Under the Rule of Reason

While the elements of proof for a rule of reason tying claim are different from those of a *per se* tying claim, these elements all focus on the defendant, and will not vary among class members. "The rule of reason 'focuses directly on the challenged restraint's impact on competitive conditions.' ... The inquiry under the rule of reason examines 'whether the challenged agreement is one that promotes competition or one that suppresses competition.'" May 15, 2009 Order at 9 (citing *Betaseed,* 681 F.2d at 1228 (internal citation omitted)).

Under the rule of reason analysis, plaintiff "has the burden of demonstrating ... that the intent of the restraint is anticompetitive and that the restraint has significant anticompetitive effects. The reasonableness of a restrictive practice 'is a paradigm fact question.'" May 15, 2009 Order at 9. Whether Apple intended to restrain trade and whether the restraint is "reasonable" are also class-wide issues. As this Court stated in its class certification order in the direct purchaser case, "Apple's use of technological restrictions and ***the amount of commerce affected by these restrictions*** (emphasis added) are both questions that do not require individual proof." *Id.* at 7.

### 2. Coercion Is Not Required Under The Rule Of Reason Analysis

Plaintiff maintains (as this Court held on two occasions) that coercion can be proven at the market level. *See* Memorandum of Points and Authorities in Support of Motion for Class Certification ("Pltf's Brf.") at 10-13; Affidavit of Gary L. French, Ph.D. ("French Aff.") at (question of consumer lock-in is common question to all indirect purchasers answerable by common evidence). However, unlike a *per se* tying claim, coercion is not required under a rule of reason analysis. *Foremost Pro*

---

[6] *See, e.g., Fisherman's Wharf Bay Cruise Corp. v. Superior Court*, 114 Cal.App.4th 309, 334-35 (2003); *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1483 (9th Cir. 1986); *Feldman v. Sacramento Bd. of Realtors, Inc.*, 119 Cal.App.3d 739, 744 (1981). If Plaintiff prevails under her Cartwright Act claim, she is entitled to damages.[6] *See* Cal. Bus. & Prof. Code § 16270 *et seq.*

[7] Cal. Bus. & Prof. Code § 16270 *et seq.,* §16750(a). Apple is incorrect that Somers' claim for antitrust damages "rises or falls entirely on whether she has a viable tying claim." Defendant's Memorandum in Opposition to Motion for Class Certification ("Def's Brf.") at 9, n. 5. Like the direct purchasers, Plaintiff has brought claims for monopolization and unfair competition, which Defendant does not contest.

*Color, Inc. v. Eastman Kodak Co*., 703 F.2d 534, 541 (9th Cir. 1983).[8]

**B.    Class-Wide Impact Can Be Presumed**

Defendant confuses the issue between proof of impact and damages.  Impact "pertains to the existence of injury, as a predicate to liability; actual damages involve the quantum of injury, and relate to the appropriate measure of individual relief."  *Martino v. McDonald's Sys. Inc*., 86 F.R.D. 145, 147 (N.D. Ill. 1980).  California courts have long held that in indirect purchaser antitrust cases, impact will be presumed once the plaintiff demonstrates the existence of an antitrust violation.[9]

Injury to the class may also be presumed "in cases where consumers have purchased products in an anticompetitive market, even if some consumers did not actually have to pay the overcharge because of their individual circumstances."  *In re Cipro Cases I and II*, 121 Cal. App. 4th 402, 413 (2004).  Here, class members purchased Apple's iPods in an anticompetitive market and the Court can presume they were injured as a result**.**

**C.    Class-Wide Impact Can Also Be Established With Common Proof**

Even though impact can be presumed, Plaintiff has shown she can use common evidence to prove impact and damages resulting from Defendant's anti-competitive conduct.  "In an overcharge case, impact is shown through proof that: (1) Defendants charged more than they would have but-for their antitrust violation; and (2) class members made some purchases at the illegally inflated or stabilized price."[10]  In his report, Dr. French set forth, based on sound economic principles and his

---

[8]  While unpublished, another Ninth Circuit decision has also held that coercion does not apply to a rule of reason inquiry. See *Kravetz v. Park La Brea Associates*, 862 F.2d 875, *4 (9th Cir. 1988), citing *Foremost v. Eastman Kodak*, ("Foremost involved a per se complaint.  Although Foremost undercuts plaintiff's per se theory, its coercion analysis does not apply to a rule of reason inquiry[.]").

[9]  *See B.W.I. Custom Kitchen v. Owens-Ill., Inc*., 191 Cal. App. 3d 1341, 1351-53 (1987);  *Global Minerals & Metals Corp. v. Superior Court*, 113 Cal. App. 4th 836, 855 (2003) ("In some such cases, it is justified for courts to assume that consumers were injured when they purchased products in an anticompetitive market, even though the price and terms of sale for the price-fixed product were individually negotiated.  In the consumer context, at least a portion of the illegal overcharge by a manufacturer will presumably be passed on by the independent distributors to consumer class members in the form of higher prices."); *see also In re Sugar Industry Antitrust Litig*., 73 F.R.D. 322, 347 (D.C. Pa. 1976) ("it has been held that impact will be presumed once a plaintiff demonstrates the existence of an unlawful conspiracy that had the effect of stabilizing, maintaining or establishing product prices beyond competitive levels").

[10]  *In re Terazosin Hydrochloride Antitrust Litig*., 220 F.R.D. 672, 696 (S.D. Fla. 2004) (citing *Hanover Shoe v. United Shoe Mach. Corp*., 392 U.S. 481, 489 (1968) and *Alabama v. Blue Bird Body Co., Inc*.,

analysis of pricing data, how he would measure the overcharge to retailers resulting from Defendant's alleged conduct, and how he would calculate the overcharge that retailers passed on to consumers. French Aff. ¶ 35-63; French Reply Aff. ¶¶10-16. That is all that is required at this stage.

### D. Plaintiff Can Calculate Damages on a Class-Wide Basis

Plaintiff alleges that Defendant's use of DRM in iTunes music had the effect of forcing class members to purchase iPods, the effect of which was to raise the price of iPods to supracompetitive levels. As a result, Apple's anticompetitive behavior resulted in class-wide impact and damages. Dr. French has set out a methodology whereby he can isolate the price increase due to Defendant's anticompetitive behavior. *See* French Aff. ¶¶ 65-69.

The differences in class member damages, on a per-unit basis, should not vary significantly, but that is not an issue appropriate for disposition at this stage. "Antitrust plaintiffs have a limited burden with respect to showing that individual damages issues do not predominate." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 348 (E.D. Mich. 2001) (internal citations omitted). Federal courts routinely rely on class-wide, aggregate techniques to calculate damages for individual class members.[11] Similarly, California law provides that damages may be awarded based on a defendant's aggregate overcharge without specific proof of how much each class member was overcharged. *Cipro*, 121 Cal. App. 4th at 411-12 ("'The law requires only that some reasonable basis of computation be used, and the result reached can be a reasonable approximation.'"); *Bruno v. Superior Court*, 127 Cal. App. 3d 120, 128-29 & n.4 (1981). After aggregate damages are calculated, there are a number of

---

573 F.2d 309, 324 (5th Cir. 1978)). *See also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 (1969) (stating that in antitrust cases, damage issues "are rarely susceptible of the kind of concrete, detailed proof of injury which is available in other contexts...[I]n the absence of more precise proof, the factfinder may conclude as a matter of just and reasonable inference from the proof of defendants' wrongful acts and their tendency to injure...that defendants' wrongful acts had caused damage to the plaintiffs.").

[11] *See, e.g., Cardizem*, 200 F.R.D. at 345 (finding aggregate approach to measure class-wide damages appropriate); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. at 523 (same); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 699 (S.D. Fla. 2004) (same). *See also* 3 Newberg on Class Actions §10.2-10.7 (4th ed.) ("it is not unusual, and probably more likely in many types of cases, that aggregate evidence of the defendant's liability is more accurate and precise than would be so with individual proofs of loss."); 6 Newberg on Class Actions §18:53 (4th ed.) ("[a]ntitrust class actions are particularly well suited to proof of total class damages, because damages in an antitrust suit need not be proved with common law precision ... [and] ... antitrust violations typically involve relatively small injuries to an extremely large number of people").

valid methods to determine each class member's individual recovery, including "averages, statistical sampling, extrapolation, or other similar approximation."[12]

Just as Apple argues here, the defendants in *Cipro* contended that "the fact and amount of injury sustained by individual class members depends on many variable factors . . ." *Id.* at 413. The court disagreed, stating that "'a class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her **eligibility** for recovery or as to the amount of his or her damages.'" *Id.* (citing *Employment Dev. Dept. v. Superior Court*, 30 Cal. 3d 256, 266 (1981) (emphasis added)). The court in *Gordon v. Microsoft Corp.*, 2003 WL 23105550 at *3 (Minn. Dist. Ct. Dec. 15, 2003) explained this point:

> The damages question for trial is presumably not about whether a specific Microsoft price increase found its way through the distribution chain and resulted in an increase in the price paid by a specific class member. Rather, the question is how a series of Microsoft price increases, and/or a series of Microsoft failures to reduce prices, impacted the price each consumer paid. The question of what would have happened but for Microsoft's monopoly overcharge is a hypothetical, and a hypothetical question generally cannot be answered by historical data about what actually happened, but must often be answered by general principles about what generally tends to happen. Thus, average pass through rates appear reasonable and even necessary to prove damages here.

*Gordon's* view is also supported by other state Microsoft cases. *See, e.g., Microsoft I-V Cases*, J.C.C.P. No. 4106, Slip Op. (Cal. Super. Ct., San Francisco Cnty., August 29, 2000), at 18, attached as Exhibit 1 to the Declaration of Helen Zeldes in support of Plaintiff's Reply Memorandum in Support of Motion for Class Certification and Appointment of Class Counsel ("Zeldes Declration"); *In re South Dakota Microsoft Antitrust Litig.*, 657 N.W. 2d 668, 674 (S.D. 2003) ("'Plaintiffs need not calculate each class member's damages individually. Instead damages can be calculated in the aggregate for the class. A summing of all individual claims is not required.'").[13]

---

[12] *Cipro*, 121 Cal. App. 4th at 417-18. Defendant's citation to *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294 (5th Cir. 2003); *Freeland v. AT&T Corp.*, 238 F.R.D. 130 (S.D.N.Y. 2006); and *Execu-Tech Bus. Sys. v. Appleton Papers*, No. 96-9639 CACE 05, slip op. (Fla. Cir. Ct. Dec. 16, 1997) is misplaced. Unlike here, those cases involved varied class members with antagonistic interests, and numerous factors that plaintiffs did not account for in their showing of what damages, if any, class members would suffer.

[13] Defendant relies on decisions by the Michigan intermediate appellate court in *A&M Supply Co. v. Microsoft Corp.*, 654 N.W. 2d 572 (Mich. App. 2002) and the Maine trial court in *Melnick v. Microsoft Corp.*, 2001 WL 1012261 (Me. Super. Aug. 24, 2001), where class certification in cases involving monopolistic overcharges relating to Microsoft's computer software was denied. Def's Brf. at 11, n. 8. These cases represent a minority view. Courts in every other state certified class actions brought by

Citing *Pioneer Valley*, Defendant argues that using an aggregate approach is "meaningless" because "averages do not show which plaintiffs were injured and which were not; nor do they determine the proper amount of damages to which any plaintiff may be entitled." Def's Brf. at 12. Apple is comparing apples and oranges. It is disingenuous in confusing the antitrust **impact** inquiry in *Pioneer Valley* with the **damages** inquiry here. *Pioneer Valley* involved a proposed class of independent casket distributors ("ICDs") who sued a number of casket manufacturers, alleging that they conspired to foreclose the ICDs from purchasing caskets. *Pioneer Valley,* slip. op. at 1-2. As the Court stated, "In a concerted refusal to deal case in which plaintiffs seek lost profits, fact of damage is particularly difficult to prove." *Id.* at 19. The case involved a complicated chain of distribution, with a proposed class of diverse and competing businesses who claimed damages based on lost profits from caskets they could not and did not purchase. *Id.* at 3. These variables made it effectively impossible, given the available data, to even show class-wide impact, let alone damages. *See id.* at 11 (noting that some class representatives made no showing that they had ever intended to purchase the subject caskets). Here, the distribution chain is simple and concentrated, and consumers are seeking a unitary overcharge as damages. No survey of class members' profit margins, or the amount they paid in rent, is suggested or required to prove impact; the inquiry will solely focus on the behavior of defendant.

Defendant's reliance on *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478 (N.D. Cal. 2008), is also unavailing, and in fact only highlights the predominance of common issues in this case. That case concerned a variety of graphics chips and graphics cards ("GPUs"). The indirect purchaser plaintiffs included individuals who purchased defendants' GPUs from any intermediary, including companies that manufactured graphics cards using defendants' graphic chips, companies that manufactured computers using defendants' graphic chips and graphic cards, and the brick-and mortar and online retailers that sold graphics cards and computers to end users. *Id.* at 481. The court faulted

indirect purchasers against Microsoft for its antitrust violations involving such software. In addition, the decisions in both *A&M Supply* and *Melnick* have been heavily criticized by other courts. *See Howe v. Microsoft Corp.*, 656 N.W. 2d 285, 296-98 (N.D. 2003); *South Dakota Microsoft*, 657 N.W. 2d at 678-79, n. 13. Finally, both cases applied certification standards different from those applicable under Rule 23. *See A&M Supply*, 654 N.W. 2d at 577; *Melnick*, 2001 WL 1012261 at *14-15. And, in both cases, the courts found that plaintiffs' expert's evidence was found wanting because the experts failed to conduct any data analysis and offered merely general conclusions. *A&M Supply*, 654 N.W. 2d at 577; *Melnick*, 2001 WL 1012261 at *12-13.

the expert's analysis for only examining pass-through for graphics cards sold on a standalone basis and not for those bundled with computers. *Id.* at 506.

Apple should be the first to admit that the iPod is nothing like GPUs. This case involves one product, and only one defendant, who sells that one product to █████████████████████. French Reply Aff. ¶ 15. Retailers provide distribution for the product, but nothing more. The product is boxed and shrink-wrapped when it leaves Defendant's custody, and it remains that way until the customer opens it. "Where the product in question is ultimately sold to the consumer, and is largely unchanged in form from the price-fixing manufacturer to the indirect purchaser, assessing whether the manufacturer's overcharges are passed on is less difficult." *B.W.I.*, 191 Cal. App. 3d at 1352. The court certified the class in *B.W.I.* because "the effects of the price-fixing were not obscured by substantially altering or adding to the item received from the manufacturer." *Id.*

Continuing to take Dr. French's deposition testimony out of context, Defendant claims that "French attempted to defend his use of averages by saying that it is 'hard to imagine' that at least some portion of any overcharge was not passed through to every consumer." Def's Brf. at 13. Based solely on this statement, Defendant concludes that Dr. French "speculated ... that price would have been lower absent the challenged conduct because the price would be based on a lower "reference point." *Id.* Defendant chooses to ignore the substance of Dr. French's testimony. Dr. French has stated that he will examine price data at the retail store level both before, during and after the relevant period. He will match retail iPod price data on direct purchaser price data, by iPod model, and regress a log-linearized model of the indirect purchaser price on direct purchaser price. *See* French Aff. ¶¶ 65-69. This is not a mere "intuitive appeal," as Defendant suggests (Def's Brf. at 13), but rather, a granular analysis of damages.

### E. Defendant's Attacks on Dr. French Disregard The Applicable Standards for Experts on Class Certification.

Apparently unable to find an expert to dispute Dr. French, Apple resorts to misrepresenting his report, contending that Dr. French's analysis of class-wide proof of damages is just a description of possible methods that he will use to show common impact and damages and that an expert must do

more. Def's Brf. at 14.[14]  Of course, Dr. French does much more than this.  But his proposed

methodologies are exactly what are necessary and appropriate at the class certification stage.[15]  "[I]t is

not necessary that Plaintiffs demonstrate to a certainty that their proposed methods will succeed and it

would be improper for the Court to make a determination as to the likely success of Plaintiffs proposed

methods."  *Microsoft I-V Cases,* J.C.C.P. 4106 at 18 (citations omitted).

In his opening report, Dr. French explained three well-accepted methodologies that could be

used to calculate damages on a class-wide basis.  French Aff. ¶¶ 65-69 (temporal benchmark,

"yardstick" competitive benchmark or margin analysis).  Defendant argues that Dr. French's proposed

methodology to calculate damages is deficient because Dr. French 1) does not know if the data actually

exists to perform his analysis; 2) admits that Apple's suggested retail prices must be binding on resellers

in order to support his claim that the use of price lists is strong evidence of common impact; 3) has not

attempted to identify and define the necessary variables and construct a model that accounts for those

variables; 4) will not be able to separate out the effects of events that happened simultaneously and

continued for the same duration through his model; 5) concedes that his model will not work without a

minimum level of price changes either for the same model or among models during the relevant period;

and 6) will not be able to determine a point in time for his "before-during" analysis.  Def's Brf. at 15-16.

Dr. French's proposed econometric method explicitly involves transaction or point-of-sale data,

including direct purchaser iPod transaction data, and monthly retailer-level MP3 player price data by

iPod model (SKU).  French Aff. ¶¶ 70-71.  Contrary to Defendant's claim, the retail data do exist

---

[14] Defendant's cites to *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007); *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 100 Fed. Appx. 296, 200 (5th Cir. 2004); and *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 264 (2d Cir. 2001), are not on point.  In *Allied*, plaintiffs did not simply challenge "a single anticompetitive practice that directly impacts purchasers, situations where that assumption might be reasonable because the conduct affects purchasers in the same way." 247 F.R.D. at 168.  Instead, they alleged "three different types of anticompetitive conduct, each with different direct and indirect effects on individual purchasers and competitors."  *Id.* And, *Virgin Atl. Airways* was a decided on a motion for summary judgment, as opposed to a motion for class certification, where inquiry into the merits was required.  In *Piggly Wiggly*, unlike Dr. French, the expert did not offer a formula based on regression analysis, but just said one could be found and did not explain how relevant variables could be quantified or why they could be ignored.

[15] *See, e.g., Cardizem*, 200 F.R.D. at 349 ("At the class certification stage, it is not necessary to identify specific benchmarks or methodology to ascertain the amount of damages."); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. at 522 ("The Court need not decide at this juncture what approach is best suited to the particularities of this case.").

(down to the SKU level).  *See* French Reply Aff. ¶¶ 17, 24, 32.  Second, Defendant misleadingly claims that Dr. French's model relies on Apple's "minimum advertised prices."  Def's Brf. at 5.  *See also* Def's Brf. at 15.  Dr. French clearly states that this is not the case.  *See* French Reply Aff. ¶ 28.[16] He proposes econometric methods that *explicitly* rely on transaction or point-of-sale data -- not on the "minimum advertised prices" -- to establish common impact and damages for the proposed Class of indirect purchasers.[17]

Dr. French's regression models account for price dispersion.  "Economic theory predicts and explains price dispersion, even for homogeneous products.  Such price dispersion would exist whether or not Apple engaged in the misconduct alleged in Plaintiff's complaint."  French Reply Aff. ¶ 10. Indeed, if Defendant had its way, no antitrust case could ever succeed:  prices would either vary too little or too much.  Regardless, "significant" variation in price is not an issue, and certainly not susceptible to Apple's cherry-picking, anecdotal analysis at the class certification stage.[18]  Even in more varied markets, courts look past "surface distinctions" in "marketing mechanisms" in certifying indirect purchaser classes; "[i]dentical products, uniform prices, and unitary distribution patterns are not indispensable for class certification in this context."  *B.W.I.,* 191 Cal. App. 3d at 1350-51 (internal citations omitted).  Thus, Defendant's argument that some identifiable variation in pricing destroys predominance is unavailing.[19]

---

[16] The fact that Apple saw fit to publish and distribute these price lists, however, is certainly indicative of some attempt on its part to control prices.  Dr. French notes that these price lists are likely to prove influential in affecting sale prices of iPods.  French Reply Aff. ¶ 27.  For example, they can be influential in the marketplace if advertised prices shape consumer expectations of the price of a particular product.  *Id.*; *see also In re Citric Acid Antitrust Litig.,* 1996 WL 655791, at *7 (N.D. Cal. Oct. 2, 1996) ("high list prices proved the fact of impact, even if the degree of impact differed between products and purchasers").

[17] These data include, among others, the NPD Group's retail price data collected at the individual retailer level for specific models of MP3 players (at the SKU level).  French Reply Aff. ¶ 24.

[18] *See Rosack v. Volvo of America Corp.,* 131 Cal. App. 3d 741, 755 (1982), *cert. denied,* 460 U.S. 1012 (1983) (internal citations omitted) ("[C]ontentions of infinite diversity of product, marketing practices, and pricing have been made in numerous cases and rejected.").

[19] Apple also tries to compare iPods to amino acids used in animal feed.  In *In re Methionine Antitrust Litig.,* 204 F.R.D. 161, 164 (N.D. Cal. 2001), the indirect purchaser class included both resellers and end users, and the court faulted plaintiff for not accounting for the multiple levels of indirect purchaser distribution.  *Id.* at 164-66 ("Plaintiff must prove this overcharge injury for those who resold

Dr. French also did not "concede that his model will not work without a minimum level of price changes" as Defendant claims. Def's Brf. at 16-17. Instead, in response to Defendant's hypothetical question of whether it ever matters how much price variation exists, Dr. French stated that "...the only place where this would matter...where your question makes sense is if you're only using it for one model." *See* Ex. 33, 68:11-69:13. Here, Dr. French expressly proposes running the regression model across models. *Id.* Thus, this criticism is improper.

Last, Defendant also inaccurately claims that Dr. French will not be able to determine a date for use in his "before-during" analysis. As Dr. French stated at his deposition, "possible start dates for the impact period include April 2003, when iTMS became available for Mac users and October 2003, when iTMS became available for Windows users." French Reply Aff. ¶31. Moreover, Dr. French testified that "it is more relevant to determine at what point after iTMS was introduced was Apple able to achieve market power in the downloadable music market by establishing iTMS and seeing demand grow by a 'quantum leap.'" *Id.* Use of the regression analysis proposed by Dr. French will address this question. French Aff. at ¶¶ 65-69.

### F. Plaintiff's Class Definition Creates No Individualized Issues

The proposed class clearly includes indirect purchasers who have purchased an Apple iPod "for their own use and ***not*** for resale." Pltf's Brf. at 3 (emphasis added). Defendant simply overlooks this.[20] Moreover, whether or not a consumer received an iPod as a gift is irrelevant to class certification.

## IV. The Court Should Certify a Nationwide Class Under California Law

Several courts have recognized the extraterritoriality of the Cartwright Act. In *In re Static Random Access Memory (SRAM) Antitrust Litigation*, 580 F. Supp. 2d 896 (N.D. Cal. 2008), the Court stated that Plaintiffs could bring California claims on behalf of non-California residents:

Plaintiffs may not bring California claims on behalf of non-California residents whose claims do not arise out of conduct that took place in California. Plaintiffs argue that all

---

methionine in a dry or liquid form, as well as for those who resold methionine as part of a value-added product."). That is not the case here.

[20] Def's Brf. at 18 (questioning the inclusion of "consumers who purchased an iPod through eBay for their own use but then later sold their iPod through eBay, Amazon.com or any of the other options").

1
2
3

> Plaintiffs' claims are based on conduct that took place in California, but Plaintiffs have not alleged specific conduct that occurred in California. These claims are dismissed with leave to amend. If Plaintiffs can allege specific California conduct underlying out-of-state Plaintiffs' claims, they may continue to assert California state law claims on behalf of those Plaintiffs.

4   *Id.* at 905.  In addition, courts have recognized that entities outside California can sue for behavior

5   emanating from California.  In *California v. Infineon Tech., AG*, 531 F. Supp. 2d 1124, 1135 (N.D.

6   Cal. 2007), this Court noted that the Cartwright Act defined a "'person' who could sue under the Act to

7   include "corporations, firms, partnerships and associations existing under or authorized by the laws of

8   this State *or any other State . . .*' *See id.* at § 16702 (emphasis added).  Accordingly, standing to sue

9   under this provision of the Act is granted to all natural persons, corporations, firms, partnerships and

10  associations – regardless whether they are California residents or not." *See also In re Intel Corp*

11  *Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 410-11 (D. Del. 2007) (allowing discovery to

12  determine viability of Cartwright Act claims for out-of-state purchasers).  California courts have

13  clearly contemplated application of the Cartwright Act to a multi-state class, with the operative

14  questions being whether the defendant is headquartered in California, its activity emanated from

15  California, and "whether it is of benefit to the courts and plaintiffs of this state to do so."  *J.P. Morgan*

16  *v. Superior Court*, 113 Cal. App. 4th 195, 217, 221 (2003).

17          This Court should follow the decisions applying California law to non-California residents,

18  even to residents of states whose laws are not as protective of consumers.  *See also Norwest Mortgage,*

19  *Inc. v. Superior Court*, 72 Cal. App. 4th 214, 224-225 (1999) (stating that remedies under the

20  California unfair competition law "may be invoked by out-of-state parties when they are harmed by

21  wrongful conduct occurring in California," and stating that non-residents could assert claims under the

22  UCL, except for those for whom the alleged illegal activity did not occur in California).

23          In addition, the Court may constitutionally apply the laws of a single state to the claims of a

24  nationwide class if the state has a "'significant contact or significant aggregation of contacts'" to the

25  claims of the class members such that application of the forum state's law is "not arbitrary or unfair."

26  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985).  Where, as here, the defendant's

27  principal offices are in California and the claims asserted by every class member relates to practices

28

derived in and authorized from California, this element is satisfied.[21]

Apple's principal place of business is in California, Plaintiff and a substantial number of the Class members are located in California, and Apple's improper practices occurred in California. *See* French Aff. Exs. 6-8 (form wholesaler and reseller agreements generated by Apple in Cupertino, CA; California choice of law provision); Zeldes Decl., Ex. 2 (Apple agreement with record label); Zeldes Decl., Ex. 3 (Apple corporate profile showing corporate headquarters in CA). For these reasons, the Court should certify a nationwide Class applying California law.

To do otherwise would mean that direct purchasers would recover a windfall in damages that were actually sustained by indirect purchasers. Indeed, in a case where a nationwide direct purchaser class already has been certified, this is not a matter of Defendant facing greater liability, but a question of how the Court will apportion damages from the anticompetitive overcharge if it finds Defendant liable. This was the exact conclusion of the Antitrust Modernization Commission, in its 2007 Final Report: "Direct and indirect purchaser litigation would be more efficient and fairer if it took place in one federal court for all purposes, including trial, and did not result in duplicative liability, denial of recoveries to persons who suffered injury, and windfall recoveries to persons who did not suffer injury." AMC Report at 275, Zeldes Decl., Ex. 5. Pursuant to California law, this Court has the opportunity to make both indirect and direct purchasers of iPods whole.

The main rationale of *Illinois Brick* was to prevent the "risk of multiple liability for defendants," 431 U.S. 720, 730 (1977) and the "costs to the judicial system caused by the purported "massive complexity" of indirect purchaser actions. No such concerns are present in a consolidated action where the only matter at issue is whether to apply a pass-on overcharge coefficient to consumers in all states instead of a fraction of them. *See also In re Pizza Time Theatre Litig.*, 112 F.R.D. 15, 20-21 (N.D. Cal. 1986) (certifying nationwide class under California law; explaining that where states are not involved in action, they would certainly "rather have the injuries of [their] citizens litigated an compensated under another state's law than not litigated or compensated at all."); *Wershba*, 91 Cal.

---

[21] *See Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242 (2001); *Norwest*, 72 Cal. App. 4th at 227; *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 613 (1987); *Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal. 4th 1036, 1064 (1999).

App. 4th at 241-44 ("California's more favorable laws may properly apply to benefit nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery"); *Clothesrigger,* 191 Cal. App. 3d at 616 ("The [trial] court simply erred in stating California has no interest in providing nonresident plaintiffs greater protection than their home states provide"). Other states surely have no interest in awarding an overcharge that consumers sustained to the retailers who helped to impose it on them.[22] Similarly, Defendant has no identifiable interest in thwarting a proper allocation of damages from its alleged wrongdoing.

**A.    The Court Can Certify A Class of Indirect Purchasers in 19 States and the District of Columbia**

In the alternative, Plaintiff asks the Court to certify a class of purchasers in those states whose statutes provide recovery for indirect purchasers in private actions:  All persons or entities in the states of Arizona, California, the District of Columbia, Florida, Iowa, Maine, Massachusetts, Michigan, Minnesota, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia and Wisconsin (excluding federal, state and local governmental entities, Apple, its directors, officers and members of their families) that from December 31, 2003 to the present purchased an Apple iPod indirectly from Apple for their own use and not for resale.  *See* Appendix A (setting out the similar statutes that pose no conflict for application of California law). The government interest analysis discussed above weighs only more strongly in support of application of California law to indirect purchasers in these states.

For the same reasons that courts conclude that differences in state indirect purchaser provisions do not defeat predominance in certifying multistate classes the variations also do not defeat application of California law.  This is the approach suggested by the Court in the *GPU* case:  "Any Cartwright Act class would, at most, have to be limited to states with laws like California's law."[23]   As set out in

---

[22] *See* Herbert Hovenkamp, The Indirect-Purchaser Rule and Cost-Plus Sales, 103 Harv. L. Rev. 1717, 1725-27 (1990) ("there is good reason for thinking that in competitive markets in which the direct purchasers are dealers or retailers—in short, in most American distribution markets—a significant part of the monopoly overcharge is passed on.").

[23] 527 F. Supp. 2d at 1027-28. *See also Robinson v. EMI Music Distribution,* 1996 WL 495551, *4 (Tenn. Cir. Ct. 1996) ( "The law in each of these jurisdictions either (a) contains an explicit "*Illinois Brick*" repealer statute, allowing for an action to enforce the state antitrust law by indirect purchasers

Appendix A, these states all have provisions analogous to Sections 1 and 2 of the Sherman Act, their antitrust provisions are all construed in harmony with federal law and they all recognize indirect purchaser standing. As set out in Appendix B, almost all of these state claims have statutes of limitation of four years, like the Sherman Act. Of the four that do not, the period is longer for three, but this is not a significant difference, especially in this case: the anticompetitive behavior at issue began in late 2003 at the earliest, and this action was filed in late 2007.[24]

## B. The Court Can Certify a California Damages Class

The Court also can certify a California damages class: All persons or entities in the State of California (excluding federal, state and local governmental entities, Apple, its directors, officers and members of their families) that from December 31, 2003 to the present purchased an Apple iPod indirectly from Apple for their own use and not for resale. As this Court recently noted in *Abbott Labs Norvir Antitrust Litigation*, 2007 WL 1689899 (N.D. Cal. Mar. 11, 2007), "claims brought under the California Unfair Competition Law are commonly certified for class treatment."[25]

## V. Conclusion

For the reasons stated herein, Plaintiff asks the Court to grant her motion for class certification, certify the proposed nationwide class pursuant to Federal Rule of Procedure 23(b)(2) and (b)(3), and appoint the firms of Zeldes & Haeggquist, LLP and Mehri & Skalet, PLLC as Indirect Purchaser Class Counsel.

DATED: May 19, 2009                    Respectfully submitted,

                                       ZELDES & HAEGGQUIST, LLP
                                       HELEN I. ZELDES
                                       ALREEN HAEGGQUIST


                                        s/ Helen I. Zeldes
                                       HELEN I. ZELDES

or (b) has been interpreted to allow for such an indirect purchaser action. . . . Therefore, the laws of the various jurisdictions do not vary such that predominance is defeated.").

[24] If the Court denies certification of a multi-state class, Plaintiff respectfully requests leave to replead her complaint to include claims under state *Illinois Brick* repealer statutes.

[25] *Id.* at *9. *See also In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 682, 703 (certifying California class under Cartwright Act); *Cipro*, 121 Cal. App. 4th at 6 (same, noting that antitrust allegation creates "an inference of class wide impact of injury").

625 Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)
helenz@zhlaw.com
alreenh@zhlaw.com

MEHRI & SKALET, PLLC
STEVEN A. SKALET
CRAIG L. BRISKIN
1250 Connecticut Ave NW, Suite 300
Washington, DC  20036
Telephone:  202/822-5100
202/822-4997 (fax)
sskalet@findjustice.com
cbriskin@findjustice.com

Attorneys for Plaintiff Stacie Somers

CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 19, 2009.

                                          s/ Alreen Haeggquist
                                         ALREEN HAEGGQUIST

                                         ZELDES & HAEGGQUIST, LLP
                                         HELEN I. ZELDES
                                         ALREEN HAEGGQUIST
                                         625 Broadway, Suite 906
                                         San Diego, CA  92101
                                         Telephone:  619/342-8000
                                         Fax:  619/342-7878

                                         Email Addresses:    helenz@zhlaw.com
                                                             alreenh@zhlaw.com

# MAILING INFORMATION FOR CASE C 07-06507

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Craig L. Briskin**
  cbriskin@findjustice.com, Pleadings@findjustice.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com, ybennett@jonesday.com

- **Tracy Strong**
  tstrong@jonesday.com, dharmon@jonesday.com

- **Elaine Wallace**
  rchavez@jonesday.com, ewallace@jonesday.com, clok@jonesday.com

- **Helen I. Zeldes**
  helenz@zhlaw.com

**Manual Notice List**

The following is the list of attorneys who are not on the list to receive e-mail notices for this case (who therefore require manual noticing).

**Steven A. Skalet**
Mehri & Skalet, PLLC
1250 Connecticut Avenue NW, Suite 300
Washington, DC 20036

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- Francis Joseph Balint, Jr
  fbalint@bffb.com

- Michael David Braun
  service@braunlawgroup.com

- Andrew S. Friedman
  rcreech@bffb.com,afriedman@bffb.com

- Roy A. Katriel
  rak@katriellaw.com,rk618@aol.com

- Thomas J. Kennedy
  tkennedy@murrayfrank.com

- Caroline Nason Mitchell
  cnmitchell@jonesday.com,mlandsborough@jonesday.com,
  ewallace@jonesday.com

- Robert Allan Mittelstaedt
  ramittelstaedt@jonesday.com,ybennett@jonesday.com

- Brian P Murray
  bmurray@rabinlaw.com

- Jacqueline Sailer
  jsailer@murrayfrank.com

- Adam Richard Sand , Esq
  invalidaddress@invalidaddress.com

- John J. Stoia , Jr
  jstoia@csgrr.com

- Tracy Strong
  tstrong@jonesday.com,dharmon@jonesday.com

- Bonny E. Sweeney
  bonnys@csgrr.com,tturner@csgrr.com,E_file_sd@csgrr.com

- Helen I. Zeldes
  helenz@zhlaw.com

**Manual Notice List**

The following is the list of attorneys who are not on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Todd David Carpenter
Bonnett, Fairbourn, Friedman, & Balint
2901 N. Central Avenue
Suite 1000
Phoenix, AZ 85012

Elaine A. Ryan
Bonnett Fairbourn Friedman & Balint, P.C
2901 N. Central Avenue
Suite 1000
Phoenix, AZ 85012