1  COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
2  JOHN J. STOIA, JR. (141757)
   BONNY E. SWEENEY (176174)
3  THOMAS R. MERRICK (177987)
   655 West Broadway, Suite 1900
4  San Diego, CA  92101
   Telephone:  619/231-1058
5  619/231-7423 (fax)
   johns@csgrr.com
6  bonnys@csgrr.com
   tmerrick@csgrr.com
7
   THE KATRIEL LAW FIRM
8  ROY A. KATRIEL (*pro hac vice*)
   1101 30th Street, N.W., Suite 500
9  Washington, DC  20007
   Telephone:  202/625-4342
10 202/330-5593 (fax)
   rak@katriellaw.com
11
   Co-Lead Counsel for Plaintiffs
12
   [Additional counsel appear on signature page.]
13
                    UNITED STATES DISTRICT COURT
14
                   NORTHERN DISTRICT OF CALIFORNIA
15
                          SAN JOSE DIVISION
16
17  THE APPLE IPOD ITUNES ANTI-TRUST   )   Lead Case No. C-05-00037-JW(RS)
    LITIGATION                          )
                                        )   CLASS ACTION
18  ─────────────────────────────────  )
                                        )   PLAINTIFFS' OPPOSITION TO
19  This Document Relates To:           )   DEFENDANT'S MOTION FOR
                                        )   JUDGMENT ON THE PLEADINGS AS TO
20        ALL ACTIONS.                  )   PLAINTIFFS' RULE OF REASON TYING
    ─────────────────────────────────  )   CLAIM
21
                                            Judge:  Hon. James Ware
22                                          Date:    October 5, 2009
                                            Time:    9:00 a.m.
23                                          Ctrm:   8 – 4th Floor
24
25
26
27
28

1   Plaintiffs Somtai Troy Charoensak, Mariana Rosen, and Melanie Tucker (collectively

2   "Plaintiffs") respectfully submit this memorandum in opposition to Defendant Apple, Inc.'s

3   ("Apple" or "Defendant") Motion for Judgment on the Pleadings as to Plaintiffs' Rule of Reason

4   Tying Claim ("Def's Motion").

5   **I.    INTRODUCTION**

6   While Apple would like to rely on the Court's dismissal of Plaintiffs' *per se* tying claim, it

7   glosses over the critical distinctions between the standards and policies underlying *per se*

8   prohibitions of anticompetitive conduct and those evaluated under the rule of reason.  *Per se*

9   illegality is limited to those situations where the anticompetitive conduct is so obvious and

10   pernicious that the court is not required to undertake a specific analysis of the nature of the industry,

11   the markets and the pro- and anti competitive effects of the defendant's conduct.  The rule of reason,

12   by contrast, allows for, and in fact requires, this type of fact-specific analysis.  It is therefore

13   appropriately applicable to situations, such as this, where Plaintiffs allege a "technological tie," and a

14   more extensive analysis of the relevant markets and effects of the tie is necessary to determine

15   whether Defendant has acted anticompetitively to unreasonably restrain trade.  The fact-specific

16   analysis required by the rule of reason can only be conducted after sufficient discovery and is thus

17   particularly inappropriate for a motion for judgment on the pleadings.

18   Plaintiffs have adequately pleaded a technological tie between Apple's iPod and iTMS audio

19   and video files that is well-suited for the rule of reason analysis.  Plaintiffs have also sufficiently

20   pleaded both concerted action under settled Section 1 jurisprudence and the level of coercion

21   necessary to sustain a rule of reason tying claim.  Despite Apple's attempt to immunize itself from

22   the antitrust laws, Plaintiffs have demonstrated that antitrust enforcement is crucially important in

23   cases such as this, to ensure that dominant companies do not abuse their market power to squelch

24   competition and innovation and ultimately harm consumers.

25

26

27

28

1    ## II.    SUMMARY OF PLAINTIFFS' TYING CLAIMS

2           Plaintiffs allege that Apple, through its iTunes Music Store ("iTMS"), holds market power in

3    the sale of digital audio and video files (collectively, "iTMS files"), which it exploited by tying the

4    sale of iTMS files and the sale of iPods.  Complaint, ¶21.[1]  Apple achieved this technological tie by

5    encrypting the iTMS files with digital rights management ("DRM") technology called "FairPlay," so

6    that the iTMS files could be directly played only on the portable digital media players manufactured

7    by Apple (collectively, "iPod").  *Id.*, ¶¶41-44.  Plaintiffs contend that Apple thereby necessarily

8    constrained the iTMS customer's choice of portable digital media players.[2]  *Id.*  For the same reason,

9    the only replacement for a broken iPod that can play an existing library of iTMS files is another

10   iPod.  *Id.*, ¶44.  Apple acted to maintain the tie by issuing software updates designed specifically to

11   destroy any possibility that competing manufacturers could sell a portable digital media player that

12   was interoperable with iTMS files.  *Id.*, ¶¶51-55.  Plaintiffs allege that Apple's conduct deterred

13   competition in the portable player market and allowed it to charge supracompetitive prices to ***all***

14   purchasers of iPods, including those who never purchased any iTMS files.  *Id.*, ¶¶22, 72, 73.

15   ## III.   LEGAL STANDARD

16          Motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil

17   Procedure "are functionally identical" to motions to dismiss under Rule 12(b)(6) and the standard for

18   deciding them is the same.  *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

19   Judgment under Rule 12(c) "may only be granted when the pleadings show that it is 'beyond doubt

20   that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"

21

---

22   [1]      *See* Consolidated Complaint for Violations of the Sherman Antitrust Act, Clayton Act,

23   Cartwright Act, California Unfair Competition Law, Consumer Legal Remedies Act, and California
     Common Law of Monopolization, filed April 19, 2007 ("Complaint").

24   [2]      Despite the fact that Apple now offers FairPlay DRM free music files for sale on iTMS,

25   purchasers with existing libraries of iTMS music files remain locked in.  The previously purchased
     music files remain encrypted with Apple's FairPlay unless the purchaser pays an additional $0.30

26   per music file to remove the existing DRM and "unlock" the file.  *See* Press Release, *Changes
     Coming    to    the    iTunes    Store*    (Jan.    6,    2009),    available    at

27   www.apple.com/pr/library/2009/01/06itunes.html (explaining that Apple charges $0.30 per audio
     file or 30% of the album price to remove its FairPlay DRM from previously purchased files).

28

1   *Enron Oil Trading & Transp. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997) (quoting *B.F.*

2   *Goodrich v. Betkoski*, 99 F.3d 505, 529 (2d Cir. 1996)).  All allegations of material fact are taken as

3   true and construed in the light most favorable to the plaintiff.  *U.S. Philips Corp. v. Infodisc Tech.*

4   *USA, Inc.*, No. CV 04-10017 SVW (JTLx), 2005 WL 6141291, at *3 (C.D. Cal. June 28, 2005).

5   **IV.   PLAINTIFFS' TYING CLAIM CONSTITUTES A VIOLATION OF**
    **SECTION 1 UNDER THE RULE OF REASON ANALYSIS**

6
    **A.   Plaintiffs' Tying Allegations Are Appropriately Evaluated Under the**
7   **Rule of Reason**

8          Apple argues that the Court's order dismissing Plaintiffs' *per se* tying claim and the holding

9   of *Foremost Pro* require dismissal of Plaintiffs' rule of reason tying claim.  *See* Def's Motion at 4.

10  Both decisions were expressly limited to *per se* liability, and neither dealt with whether the type of

11  conduct alleged here could be addressed under a Section 1 rule of reason analysis.  Dkt. No. 213 at

12  9-10; *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 541 (9th Cir. 1983).

13         Tying arrangements that are not suitable for *per se* prohibition may still be addressed under a

14  rule of reason test.  *See Phonetele, Inc. v. Am. Tel. & Tel. Co.*, 664 F.2d 716, 738 (9th Cir. 1981)

15  ("Conduct that does not meet the requirements of [the] *per se* rule . . . may still constitute a violation

16  of the section 1 rule of reason.").  The *per se* analysis is applied only to a subset of antitrust claims.

17  The Supreme Court has cautioned that "'[it] is only after considerable experience with certain

18  business relationships that courts classify them as *per se* violations . . . .'"  *Broad. Music, Inc. v.*

19  *Columbia Broad. Sys., Inc.*, 441 U.S. 1, 9, 99 S. Ct. 1551 (1979); *see also White Motor Co. v. United*

20  *States*, 372 U.S. 253, 263, 83 S. Ct. 696 (1963) ("We need to know more than we do about the actual

21  impact of these arrangements on competition to decide whether they have such a 'pernicious effect

22  on competition and lack . . . any redeeming virtue' and therefore should be classified as *per se*

23  violations of the Sherman Act.") (internal citations omitted).  *Per se* treatment is appropriate in those

24  situations where the anticompetitive conduct is so obvious that analysis of market conditions is not

25  justified.  *See, e.g.*, *Arizona v. Maricopa Cty Med. Soc'y*, 457 U.S. 332, 350-51, 102 S. Ct. 2466

26  (1982) (elaborate market analysis not necessary in price fixing case); *Catalano, Inc. v. Target Sales,*

27  *Inc.*, 446 U.S. 643, 647, 100 S. Ct. 1925 (1980) (agreement among competitors to fix prices is *per se*

28  unlawful).

1    However, where judicial expertise in a particular industry is missing, or the nature of the

2    anticompetitive conduct is not of the kind that has historically been subject to *per se* condemnation,

3    the rule of reason analysis is proper because it allows "consider[ation] [of] facts peculiar to the

4    industry, the nature of the restraint and its effect to determine whether that restraint promotes or

5    restrains competition." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 726 F.2d

6    1381, 1387 (9th Cir. 1984); *see also In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 202 n.13

7    (2d Cir. 2006) (holding assessment of several factors is necessary including, "specific information

8    about the relevant business, its condition before and after the restraint was imposed, and the

9    restraint's history, nature and effect").

10   To state a claim for tying under the rule of reason, Plaintiffs must allege that the tying

11   arrangement was intended to harm competition and in fact caused injury to competition. *See Oltz v.*

12   *St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1445 (9th Cir. 1988); *Datagate, Inc. v. Hewlett-Packard*

13   *Co.*, 941 F.2d 864, 870 (9th Cir. 1991) ("must allege an injury to competition"). Once this is shown,

14   "the factfinder must analyze the anti-competitive effects along with any pro-competitive effects to

15   determine whether the [arrangement] is unreasonable on balance." *Bahn v. NME Hosps., Inc.*, 929

16   F.2d 1404, 1413 (9th Cir. 1991); *see also Maricopa Cty Med. Soc'y*, 457 U.S. at 343 ("[T]he rule of

17   reason requires the factfinder to decide whether under all the circumstances of the case the restrictive

18   practice imposes an unreasonable restraint on competition."). This requires inquiry into all the

19   relevant facts. *Oltz*, 861 F.2d at 1445. Such an inquiry is, however, not appropriate for a Rule 12

20   motion. *See Xerox Corp. v. Media Scis. Int'l, Inc.*, 511 F. Supp. 2d 372, 389 (S.D.N.Y. 2007).

21   Here, Plaintiffs' tying claim is appropriately pleaded under Section 1 rule of reason,

22   permitting the factfinder to more fully understand and evaluate the actual impact of the technological

23   tie on competition in the relevant markets by considering and balancing the tie's benefits against the

24   costs to consumer choice and competition. *United States v. Microsoft*, 253 F.3d 34, 94 (D.C. Cir.

25   2001); *see also Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 25 n.41, 104 S. Ct. 1551

26   (1984) (noting that the *per se* rule does not permit consideration of procompetitive justifications).

27   Plaintiffs allege that Apple's use of FairPlay and software updates to block interoperability created

28   technological impediments that were intended to restrict consumer choice and restrain competition.

1   Complaint, ¶¶21, 41-44.  Plaintiffs allege further that Apple's conduct in fact caused injury to

2   competition by deterring consumers from doing business with Apple's competitors and discouraging

3   entrance into the market for portable digital media players.  *Id.*, ¶¶72, 74-77.  These allegations, if

4   proven, are adequate to show a Section 1 violation under the rule of reason and are therefore

5   sufficient to defeat Apple's 12(c) motion.

6        Apple suggests that the rule of reason analysis is reserved for those tying cases where the

7   defendant lacks market power.  Def's Motion at 5-6.  However, as the Supreme Court has stated "the

8   purpose of tying law has been to identify and control those tie-ins that have a demonstrable

9   exclusionary impact in the tied product market, or that abet the ***harmful exercise of market power***

10  ***that the seller possesses*** in the tying product market."[3] *Jefferson Parish*, 466 U.S. at 35 (O'Connor,

11  J., concurring).  The rule of reason only condemns tying arrangements in these circumstances.  *See*

12  *id.*; *see also Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768, 104 S. Ct. 2731

13  (1984) ("[S]uch combinations are judged under a rule of reason, an inquiry into market power and

14  market structure designed to assess the combination's actual effect."); *William O. Gilley Enters., Inc.*

15  *v. Atlantic Richfield Co.*, 561 F.3d 1004, 1010 (9th Cir. 2009) ("To make [a] showing [of

16  anticompetitive effect] under the rule of reason analysis, a plaintiff must generally establish market

17  power.").

18       Indeed, even where a defendant has market power in the relevant market, the court may still

19  find that analysis under the rule of reason is more appropriate given the facts of the case.  For

20  example, in *Microsoft*, the court found that the company had market power in the tying product

21  market, operating systems.  *Microsoft*, 253 F.3d at 54.  The court still held that the rule of reason,

22  rather than *per se* analysis, was appropriate because the alleged technological tie represented a

23  "novel categor[y] of dealing[]." *Id.* at 84.  Similarly, here, despite the Court's prior finding that the

24  alleged technological tie cannot be remedied through a *per se* action, the Court should still find, as in

25

26  _____

27  [3]      Unless otherwise noted, citations are omitted and emphasis is added.

28

*Microsoft*, that Plaintiffs have alleged a set of facts that if proven would entitle them to relief under the rule of reason.

### B. Plaintiffs Have Alleged a Tie Between Apple's iPod and iTMS Audio and Video Files

Apple contends that in its order on Plaintiffs' *per se* claim, the Court held that Plaintiffs failed to meet the "threshold requirement" that the "seller refused to sell the products at issue separately." Def's Motion at 1. This is a complete misreading of the Court's prior order and an incorrect statement of the law.

First, the Court did not find that Plaintiffs failed to allege a tie. To the contrary, the Court expressly held that Plaintiffs alleged a "technological tie" like that recognized by the Ninth Circuit in *Foremost Pro*. Dkt. No. 213 at 8 ("[T]he Court recognizes that the most relevant model for liability is that of the technological tie, as recognized by the Ninth Circuit in *Foremost Pro*."). In *Foremost Pro* the court considered only whether plaintiff had stated a *per se* tying claim. *Foremost Pro*, 703 F.2d at 541. Plaintiff alleged that defendant Kodak illegally tied the sale of film and processing materials to the sale of its new camera. Because the new camera could only use the new film, which could not be processed without the new processing materials, it was necessary to purchase the entire package of camera, film and processing materials from Kodak. *Id*. at 542. The Ninth Circuit held that such a "technological interrelationship among complementary products" was essentially that of a "technological tie" but, standing alone, not sufficient to establish a *per se* tying arrangement *Id*. Stated another way, "[t]he Ninth Circuit . . . identified the technological tie as a species of tying arrangement, but expressly declined to find that allegations of technological ties, without more, could provide the basis for *per se* Section 1 liability." Dkt. No. 213 at 8.

As the Court recognized, a "technological tie" exists where "a technological relationship between a seller's products compels a buyer to purchase both products. Such compulsion results when one product is ***ineffective or is less effective*** without concomitant purchase of the second technologically interrelated product." *Id*. at 6. Here, Plaintiffs allege exactly this. Plaintiffs contend that Apple tied purchase of its iPods to purchase of iTMS files encrypted with FairPlay technology. Complaint, ¶¶42-44. Customers who purchased FairPlay-encrypted iTMS files were required to also

1   purchase an iPod from Apple for direct playback of the files on a portable digital media player
2   because Apple's proprietary encryption technology prevented direct playback of the files on
3   competing players.  *Id.*, ¶44.  Plaintiffs contend that although consumers could purchase iTMS files
4   without purchasing an iPod, they were still locked into purchasing an iPod if they wished to play the
5   files directly on a portable digital media player.  *Id.*, ¶¶43, 44.  Since a large part of the appeal in
6   purchasing digital downloads is that they can be easily transferred to a portable player, use of the
7   files "is ineffective or less effective" without the purchase of an iPod.  Dkt. No. 213 at 6; Complaint,
8   ¶8.

9       Like the camera, film and processing materials in *Foremost Pro*, the "technological
10  interrelationship" created by Apple between iTMS files and iPods resulted in a tie which required
11  consumers to purchase the entire package, iTMS files and an iPod, for direct playback of the iTMS
12  files on a portable player.  *See id.*, ¶¶42-44.  The Court here found Plaintiffs' allegations analogous
13  to *Foremost Pro* and held that while Plaintiffs alleged a technological tie, "existing antitrust doctrine
14  does not allow such conduct to be remedied through a *per se* tying action."  Dkt. No. 213 at 9.  Other
15  courts have recognized the existence of similar ties.  *See, e.g.*, *Microsoft*, 253 F.3d at 84-85; *see also*
16  10 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Laws*, ¶1757c at 320-23 (2d ed. 2006).

17      Notably, plaintiff in *Foremost Pro* did not allege that Kodak's conduct foreclosed
18  competition in the relevant market.  Instead, plaintiff merely contended that when the new Kodak
19  camera was introduced, no competing chemicals and film on the market at the time were compatible
20  with the camera.  *Foremost Pro*, 703 F.2d at 542 n.4.  By contrast, Plaintiffs here allege that Apple
21  deliberately used FairPlay to prevent competing manufacturers from creating portable digital media
22  players that are compatible with FairPlay-encrypted iTMS files.  Complaint, ¶¶45, 50.  Moreover,
23  Plaintiffs allege that Apple acted to maintain the tie by issuing software updates designed
24  specifically to destroy any possibility that competing manufacturers could sell a portable digital
25  media player that was interoperable with iTMS files.  *Id.*, ¶¶51-55.  This type of exclusionary
26  conduct violates antitrust law.  *See, e.g.*, *Xerox Corp.*, 511 F. Supp. 2d at 388 (finding plaintiff
27  alleged anticompetitive conduct where it was alleged that defendant's patented redesign prevented
28  competitors from selling compatible complimentary products); *In re IBM Peripheral EDP Devices*

1  *Antitrust Litig.*, 481 F. Supp. 965, 1002-03 (N.D. Cal. 1979) (explaining that a market-dominating

2  producer who kept "changing [its products] with such frequency that [competing complementary

3  products] would have been unable to attach and unable to economically adapt their [products] to the

4  ever-changing . . . designs" and used this "as a vehicle for tying" would be acting illegally).

5      Moreover, Plaintiffs are not required to allege that the purchase of the tied and tying products

6  occurred at the same time or on a "package" basis. *See* Def's Motion at 2. Indeed, a tying

7  arrangement exists where the seller agrees "to sell one product but only on the condition that the

8  buyer also purchases a different (or tied product), or at least ***agrees that he will not purchase that***

9  ***product from any other supplier***." *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 461,

10  112 S. Ct. 2072 (1992) (quoting *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5-6, 78 S. Ct. 514

11  (1958)). Here, Plaintiffs have alleged that Apple's use of FairPlay forced consumers who wished to

12  purchase FairPlay-encrypted iTunes files to implicitly agree not to purchase a portable digital media

13  player from "any other supplier." *Id.*; *see* Complaint, ¶¶43-45. While consumers were not required

14  to purchase both products at the same time, purchasers were forced to forgo the possibility of

15  purchasing a competing portable digital media player for use with their iTMS files. *Id.*, ¶44.

16      *Advanced Computer Services of Michigan, Inc. v. MAI Systems Corp.*, 845 F. Supp. 356

17  (E.D. Va. 1994), cited by Apple, is not to the contrary. *See* Def's Motion at 4-5. There, plaintiffs,

18  independent service organizations, alleged that defendant tied the purchase of its copyrighted

19  computer operating systems and diagnostic software to the purchase of maintenance and repair

20  services. *MAI Sys. Corp.*, 845 F. Supp. at 360. Plaintiffs claimed that defendant's enforcement of its

21  copyrights of the operating system and diagnostic software precluded competition in the

22  maintenance and repair market because plaintiffs were unable to adequately service the computers

23  without using the copyrighted programs. *Id.* The court found that no tie existed because: (1)

24  independent servicers could and did develop their own diagnostic software to service the computers;

25  (2) consumers were free to and did choose to have their computers serviced by these servicers; and

26  (3) defendant's selective licensing of its diagnostic software and operating systems was within its

27  discretion. *Id.* at 368-69. Thus, competition in the tied product market, maintenance and repair, was

28  not foreclosed and consumers were free to choose alternative maintenance and repair services. *See*

1   Areeda, *supra*, ¶1757a at 318 ("No tying problem arises when the defendant sufficiently prediscloses

2   its primary product design so that efficient rivals can offer a compatible complimentary product.").

3            By contrast here, Plaintiffs have alleged that competing manufacturers of the tied product,

4   portable digital media players, are unable to create and sell products that are compatible with iTMS

5   files because of the use of FairPlay and Apple's continued foreclosure of the market through

6   software updates.  Complaint, ¶¶44-45, 50-55.  Unlike in *Advanced Computer Services of Michigan,*

7   *Inc.* where consumers of the tying product had alternatives to the purchase of the tied product from

8   defendant, here, purchasers of iTMS files are genuinely limited in their choice of a portable digital

9   media player because no compatible products exist.  *See id.*

10           Still, Apple claims that Plaintiffs have not alleged the level of coercion necessary to

11  demonstrate a tie.  Def's Motion at 4.  Apple asserts that the decision in *Foremost Pro* "rested on

12  the Ninth Circuit's conclusion that plaintiff had not alleged the required coercion because the

13  defendant had not conditioned the sale of the tying product on the purchase of the tied product."  *Id.*

14  Apple contends this "analysis applies to a rule of reason claim."  *Id.*  This is simply not the law.

15           The coercion necessary to prove that a tie is unlawful *per se* is not the same as that required

16  to demonstrate a tie is unlawful under the rule of reason.  As the court in *Foremost Pro* explicitly

17  stated, "Foremost's complaint failed to plead the ***coercion essential to a per se unlawful tying***

18  ***arrangement***."  *Foremost Pro*, 703 F.2d at 542.  The rationale of a *per se* claim is that competition

19  in the tied product market is necessarily restrained, not because the tied product is better, but because

20  the defendant is able to leverage its power in the tying product market into that of the tied product by

21  forcing purchasers to purchase both the tying and tied products.  *See Betaseed, Inc. v. U & I Inc.*, 681

22  F.2d 1203, 1215 (9th Cir. 1982).  Thus, "'[s]ome modicum of involuntariness or coercion is . . .

23  essential to the existence of a *per se* illegal tie-in.  When these requirements are met, tying

24  arrangements are illegal in and of themselves without any requirement that the plaintiff make a

25  showing of unreasonable competitive effect."  *Foremost Pro*, 703 F.2d at 540 (internal citations

26  omitted).

27           Where coercion is not demonstrated in the usual way – the express condition that plaintiff

28  purchase the tied product with the tying product – it may still be appropriate to analyze the tie under

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
AS TO PLAINTIFFS' RULE OF REASON TYING CLAIM - C-05-00037-JW(RS)          - 9 -

1    the rule of reason standard with proof that the conduct had an anticompetitive effect.  *Id.* at 542; *see*

2    *also Webb v. Primo's Inc.*, 706 F. Supp. 863, 867 (N.D. Ga. 1988) (citing *Jefferson Parish*, 466 U.S.

3    at 15-16) ("Proof of coercion would make the tying arrangement illegal *per se* and eliminate the

4    necessity of establishing the actual anticompetitive effects in the tied market.").

5    ## C.    "Technological Ties" Are Not Exempt From the Antitrust Laws

6            Apple would like the Court to find that the alleged technological tie between the iPod and

7    iTMS files is exempt from antitrust liability on purported public policy grounds.  Def's Motion at 7.

8    Apple argues that antitrust law is not applicable because: (1) courts are not equipped to deal with

9    such claims; (2) Apple would not have a "safe harbor" to avoid liability since it already offers its

10   products separately; (3) Apple is not required to deal with its competitors; and (4) application of

11   antitrust law to this case would "chill . . . innovation."  *Id.* at 7-8.

12           There is no basis in case authority or sound antitrust policy to grant Apple the immunity it

13   seeks.  Although courts may give some deference to product innovation, that does not mean that

14   every technological tie is lawful.  *Microsoft*, 253 F.3d at 65.  Questions concerning technological

15   design can be complex, but they are certainly not beyond the competence of the court when applying

16   antitrust doctrine to determine what is lawful and what is not.  *See* Richard A. Posner, *Antitrust in*

17   *the New Economy*, 68 Antitrust L.J. 925, 925 (2001) ("[A]ntitrust doctrine is supple enough . . . to

18   take in stride the competitive issues presented by the new economy.").

19           The Court is also aided by the flexibility of the rule of reason analysis to determine whether

20   Apple's conduct does in fact unreasonably restrain competition in the tied product market.  *See Nat'l*

21   *Football League*, 726 F.2d at 1387 (rule of reason permits the court to consider facts peculiar to the

22   industry, the nature of the tie, and its effects); *see also In re Tamoxifen Citrate Antitrust Litig.*, 466

23   F.3d at 201 n.3 (rule of reason permits consideration of several factors).  While antitrust laws seek to

24   encourage innovation, "[j]udicial deference to product innovation . . . does not mean that a

25   monopolist's product design changes are *per se* lawful."  *See Microsoft*, 253 F.3d at 65; *see also*

26   *Xerox Corp.*, 511 F. Supp. 2d at 388 ("[S]everal courts have found that product redesign, when it

27   suppresses competition and is without other justification, can be violative of the antitrust laws.").

28   Accordingly, any concerns about "chilling innovation" can be addressed under a rule of reason

1    analysis and weighed against the anticompetitive effects of Apple's conduct. *See, e.g.*, *Microsoft*,

2    253 F.3d at 92 ("Rule of reason analysis, [] affords the first mover an opportunity to demonstrate that

3    an efficiency gain from its 'tie' adequately offsets any distortion of consumer choice.").

4           Applying the rule of reason analysis here would, in fact, advance the public policies that

5    undergird antitrust law.  The purpose of tying law is to identify and control those tie-ins that have a

6    demonstrable exclusionary impact in the tied product market by restricting consumer choice and

7    foreclosing competition on the merits. *See Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 404

8    n.26, 98 S. Ct. 1123 (1978) ("[T]he protection against injury to the buyer is only one purpose of the

9    rule against tying arrangements.  Equally important is the need to protect competing sellers from

10   competition unrelated to the merits of the product involved, and, concomitantly, to protect the

11   market from distortion.").[4]  Where, as alleged here, purchasers are restricted in their choice of a

12   portable digital media player for direct playback of their iTMS files and competition in the market

13   for portable digital media players has been significantly stifled, application of the antitrust laws is

14   perfectly appropriate.

15          Nor is Apple entitled to the "safe harbor" it seeks.  Def's Motion at 7.  *Cf.* Ex. 1[5] at 7-8

16   (explaining the Department of Justice's move away from "the adoption of a number of safe harbors"

17   and "extreme hesitancy in the face of potential abuses by monopoly firms").  In support, Apple relies

18   on *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, __ U.S. __, 129 S. Ct. 1109 (2009).  There,

19   plaintiffs asserted a "price-squeeze" claim that was outside "existing antitrust doctrine." *Id.* at 1120;

20

21   [4]     *See also Times-Picayune Publ'g Co. v. United States*, 345 U.S. 594, 605, 73 S. Ct. 872
     (1953) ("Any intrinsic superiority of the 'tied' product would convince freely choosing buyers to
22   select it over others, anyway.  Thus '(i)n the usual case only the prospect of reducing competition
     would persuade a seller to adopt such a contract and only his control of the supply of the tying
23   device, whether conferred by patent monopoly or otherwise obtained, could induce a buyer to enter
     one.'"); *Rick-Mik Enters., Inv. v. Equilon Enters. LLC*, 532 F.3d 963, 971 (9th Cir. 2008) (The injury
24   caused by an unlawful tying arrangement is "reduced competition in the market for the tied
     product."); *Ungar v. Dunkin' Donuts of Am., Inc.*, 531 F.2d 1211, 1226 (3d Cir. 1976) ("The purpose
25   of the antitrust laws is to stimulate economic competition, the essence of which is the presence of
     many competing sellers.").

26   [5]     All references to "Ex." are to the Exhibit attached to the Declaration of Thomas R. Merrick
27   in Support of Plaintiffs' Opposition to Defendant's Motion for Judgment on the Pleadings as to
     Plaintiffs' Rule of Reason Claims, filed concurrently.

28

1    *see also id*. at 1122 ("To the extent [defendant] violates [antitrust] doctrines, the plaintiffs have a

2    remedy under existing law. We do not need to endorse a new theory of liability to prevent such

3    harm.") Here, Plaintiffs' claim is well within existing Section 1 jurisprudence. *See generally*

4    *Microsoft*, 253 F.3d at 89-94. Apple's asserted interest in promoting innovation is sufficiently

5    advanced by application of existing rule of reason analysis, which, unlike the *per se* rule, permits

6    consideration of the tie's purported benefits and pro-competitive justifications. *See id.* at 94.[6]

7       Moreover, application of the antitrust laws to this case would not require Apple to "deal with

8    [its] competitors." *See* Def's Motion at 7-8 (citing *Verizon Commc'ns, Inc. v. Law Offices of Curtis*

9    *v. Trinko, LLP*, 540 U.S. 398, 407-08, 124 S. Ct. 872 (2004)). As the Court found in its Order

10    Denying Defendant's Motion to Dismiss,[7] Plaintiffs' tying claims, like their monopoly claims, are

11    not reducible to the contention that Apple should "do[] whatever was necessary to ensure that

12    competitors' products interoperate with Apple's products as well as Apple's products interoperate

13    with each other." Def's Motion at 8. *See Tucker v. Apple Computer, Inc.*, 493 F. Supp. 2d 1099,

14    1099 (N.D. Cal. 2006). Rather, Plaintiffs have alleged that Apple took several anticompetitive steps

15    to tie iTMS files and iPods: (1) using technological restrictions for the purpose of preventing music

16    purchased from iTMS from playing on competing portable digital media players; (2) using

17    technological restrictions for the purpose of preventing video files purchased on iTMS from playing

18    on competing portable digital media players; (3) issuing software updates that prevent any attempt

19    by a competitor to enable interoperability with a competing portable digital media player; and (4)

20    refusing to license FairPlay to competitors of portable digital media players. Complaint, ¶¶22, 41-

21    45, 55. Of these, only the fourth can be characterized as a refusal to deal. The remaining allegations

22    are affirmative steps to exclude competitors for which there is no conceivable pro-competitive

23

_____

24    [6]    As discussed in §IV.D., *infra*, technology companies do not get special treatment under

25    Section 1.

26    [7]    The MTD Order related to Apple's Motion to Dismiss plaintiff Tucker's complaint, filed July 21, 2006 in *Tucker v. Apple Co., Inc.*, No. c-06-4457 (N.D. Cal.). This was decided prior to consolidation. However, the allegations and claims in the Tucker complaint and the Consolidated Complaint are essentially identical.

27

28

1    justification.  Moreover, the right of a firm to not deal with competitors is not "unqualified."  *Aspen*

2    *Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 601, 105 S. Ct. 2847 (1985).

3         *Trinko*, relied on by Apple, is inapposite.  Def's Motion at 7-8.  There, plaintiff alleged

4    defendant acted anticompetitively to prevent rival local telephone service carriers from competing

5    effectively.  *Trinko*, 540 U.S. at 404-05.  Important to the Court's finding that defendant's refusal to

6    cooperate with rivals was not anticompetitive was that the telephone service industry was highly

7    regulated such that "the additional benefit to competition provided by antitrust enforcement [was]

8    small."  *Id.* at 412.  By contrast here, there is no "regulatory scheme which performs the antitrust

9    function."  *See id.*  Thus, the benefits of applying antitrust law to determine whether Apple's conduct

10   as alleged by Plaintiffs is indeed anticompetitive are considerable.

11        **D.    Section 1 Applies to Plaintiffs' Tying Claim**

12        Apple also reasserts its argument that Plaintiffs' tying claim is improper under Section 1

13   because it does not involve a "'contract combination . . . or conspiracy between separate entities.'"

14   Def's Motion at 3 (quoting *Copperweld Corp.*, 467 U.S. at 768).  Without any real support, Apple is

15   inviting this Court to overturn settled antitrust jurisprudence recognized by the Supreme Court, the

16   Ninth Circuit, and other courts.

17        It is well-settled that a tying claim can be based on a company's unilateral action in which a

18   customer acquiesces by purchasing the tied product.  The Supreme Court's classic definition of tying

19   presupposes that it may be unilaterally imposed by a single firm: "a tying arrangement may be

20   defined as an agreement ***by a party*** to sell one product but only on the condition that the buyer also

21   purchases a different (or tied) product, or at least agrees that he will not purchase that product from

22   any other supplier."  *Northern Pac. Ry. Co.*, 356 U.S. at 5-6.  "[T]he essential characteristic of an

23   invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force

24   the buyer into the purchase of a tied product that the buyer either did not want at all, or might have

25   preferred to purchase elsewhere on different terms."  *Jefferson Parish*, 466 U.S. at 12.[8]

26   _____

27   [8]    Subsequent case law is in accord.  *See, e.g.*, *Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d

28   1148, 1157-58 (9th Cir. 2001) (affirming Section 1 tying claim where hospital tied the purchase of

1    Plaintiffs allege that through deliberate technical impediments, Apple essentially forced

2    iTMS purchasers to agree not to purchase a portable digital media player from anyone other than

3    Apple.  Complaint, ¶¶41-44, 50.  Plaintiffs' tying claim is thus appropriately pleaded under settled

4    Section 1 standards.

5    Apple provides no real authority to the contrary.  First, the *Copperweld* language that Apple

6    relies on is inapposite.  Dkt. No. 229 at 7.  *Copperweld* was not a tying case.  There, the Court solely

7    addressed a separate Section 1 issue – whether a parent and subsidiary could conspire with each

8    other in restraint of trade.  *Copperweld Corp.*, 467 U.S. at 777.  The Supreme Court specifically

9    narrowed its analysis to that issue alone: "We limit our inquiry to the narrow issue squarely

10   presented: whether a parent and its wholly owned subsidiary are capable of conspiring in violation of

11   §1 of the Sherman Act."  *Id.* at 767.; *see also Systemcare*, 117 F.3d at 1145 (rejecting defendant's

12   *Copperweld* argument).  Apple cites no case law addressing tying claims – under either the *per se* or

13   rule of reason test – in support of its attempt to redefine Section 1 jurisprudence.

14   Apple likewise cites no case support for its bald assertion that technological companies

15   should get special treatment under Section 1.  In fact, courts and commentators agree that there is no

16   sound rationale for treating technological ties differently.  *See, e.g.*, *Microsoft.*, 253 F.3d at 84-97

17   (analyzing how a technological tying claim may be brought under a Section 1 rule of reason

18   analysis); Antitrust Modernization Commission, Report and Recommendations (April 2007) at 38

19   (Recommendations and Findings No. 1: "There is no need to revise the antitrust laws to apply

20   different rules to industries in which innovation, intellectual property, and technological change are

21   central features."); Richard A. Posner, *Antitrust Law* 256 (2d ed. 2001) ("antitrust doctrine is

22   sufficiently supple, and sufficiently informed by economic theory, to cope effectively with the

23

24   C-section services and obstetrical services); *Datagate, Inc. v. Hewlett-Packard Co.*, 60 F.3d 1421,
     1427 (9th Cir. 1995) (coerced sales contract satisfied concerted action requirement); *see also*
25   *Systemcare, Inc. v. Wang Laboratories Corp.*, 117 F. 3d 1137, 1142 (10th Cir. 1997) ("We hold that
     a contract between a buyer and seller satisfies the concerted action element of section 1 of the
26   Sherman Act where the seller coerces a buyer's acquiescence in a tying arrangement."); *Nobel*
     *Scientific Indus., Inc. v. Beckman Instruments*, 670 F. Supp. 1313, 1324 (D. Md. 1986) ("There need
27   not be an explicit condition that the buyer of the tying product buy the tied product.").

28

1   distinctive-seeming antitrust problems that the new economy presents.").  In fact, as the head of

2   antitrust enforcement for the Justice Department recently pointed out, "high-tech and internet-based

3   markets" are especially crucial for antitrust enforcement.  *See* Ex. 1 at 16 ("Increasingly, Americans

4   are relying on high-tech solutions in the home and the workplace and enjoying the fruits of

5   innovation in those markets that have been spurred on by competition between rival firms.  We thus

6   plan to devote attention to understanding the unique competition-related issues posed by these

7   markets.").[9]

8       Plaintiffs have adequately pleaded the level of concerted action required under Section 1.

9   Apple has provided no support for this Court to reject well-settled antitrust jurisprudence.

10      **E.      Plaintiffs Have Alleged Coercion Under Applicable Ninth Circuit Law**

11      Finally, Apple incorporates by reference its earlier argument that this Court erred in

12  following Ninth Circuit authority that Plaintiffs need not allege individual coercion in order to

13  maintain a Section 1 tying claim.  *See Tucker*, 493 F. Supp. 2d at 1097-99.[10]  Apple cites no changes

14  in Ninth Circuit law on individual coercion in either its briefing on the *per se* claim nor in the current

15  motion.  In fact, as Plaintiffs' earlier briefing points out, subsequent case law and the facts developed

16  in this case both support the Court's initial decision.  *See* Dkt. No. 209 at 9-14.

17      Applied to a rule of reason analysis, moreover, Apple's individual coercion argument carries

18  even less weight.[11]  Apple argues repeatedly that its lock on consumers' iTMS purchases so that they

19

---

20  [9]      Apple cites the Areeda treatise purportedly in support of its argument that technological ties
    should be immune from Section 1 liability generally.  Dkt. No. 228 at 3.  The authors do not address
21  how they square this conclusion with the settled case law interpreting concerted action discussed
    above, and in fact, the treatise goes on to analyze in detail how technological ties should be treated
22  by the courts under Section 1 under a rule of reason analysis.  Areeda, *supra*, ¶1757 at 317-23.  The
    quote clearly does not support Apple's argument that technological ties are immune from Section 1
23  liability.

24  [10]     Apple incorporates its earlier briefing.  Def's Motion at 9 (incorporating Dkt. No. 200 at 11-
    16 and Dkt. No. 211 at 8-12).  In the event the Court believes it is appropriate to revisit its holding
25  regarding market level coercion, Plaintiffs respectfully incorporate their opposition memorandum.
26  Dkt. No. 209 at 9-14.

27  [11]     *See also* discussion at 9, *supra*, explaining that the level of coercion necessary to demonstrate
    a *per se* claim is not that required to prove a claim under the rule of reason.

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
AS TO PLAINTIFFS' RULE OF REASON TYING CLAIM - C-05-00037-JW(RS)          - 15 -

1    can only be directly played on an iPod – tying iTMS purchasers into Apple's player – is actually an

2    "enhanced utility" to the consumer.  Dkt. No. 211 at 8-10.  Plaintiffs allege, in contrast, that this

3    "lock-in" is a "burdensome term" that demonstrates market level coercion and anticompetitive

4    effects.  *See Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1217 (9th Cir. 1977) ("the Supreme

5    Court's opinions support[] the view that coercion may be implied from a showing that an appreciable

6    number of buyers have accepted burdensome terms, such as a tie-in, and there exists sufficient

7    economic power in the tying product market.").[12]  While plaintiffs believe that their characterization

8    is the more reasonable one, at the very least, the issue presents a question of fact under the rule of

9    reason analysis and would therefore preclude, not support, judgment under Rule 12(c).  *See Newcal*

10   *Indus., Inc. v. IKON Office Solution*, 513 F.3d 1038, 1051 (9th Cir. 2008), *cert. denied*, 129 S. Ct.

11   2788 (2009) (question of fact precludes Rule 12 dismissal); *Tucker*, 493 F. Supp. at 1101 ("existence

12   of valid business reasons in antitrust cases is generally a question of fact not appropriate for

13   resolution at the motion to dismiss stage").

14   **V.    FOR THE SAME REASONS, PLAINTIFFS HAVE PLEADED STATE
            LAW TYING CLAIMS**

15

16            For the same reasons as stated above, Plaintiffs have also adequately pleaded a tying claim

17   under the Cartwright Act and violations of the California Unfair Competition Law ("UCL") and

18   Consumer Legal Remedies Act ("CLRA") based on Apple's illegal tie.  *Hamro v. Shell Oil Co.*, 674

19   F.2d 784, 786-87 (9th Cir. 1982) (federal decisions under the Sherman act are applicable to the

20   Cartwright Act).

21

22

23

24   _____

25   [12]        In its reply brief in support of its Rule 12(c) motion on the *per se* claim, Apple attempts to
     distinguish *Moore* by arguing that there is a distinction between the level of coercion that must be

26   shown for a tying claim brought by consumer rather than a competitor.  Dkt. No. 211 at 8-10.  Ninth
     Circuit authority is clear that there is no such distinction.  *Cascade Health Solutions v. Peacehealth*,

27   515 F.3d 883, 913 (9th Cir. 2008) ("Supreme Court discussions about the existence of a tie have not
     varied according to the status of the plaintiff.") (quoting Areeda, *supra*, ¶1752d at 264.

28

1

## VI.   CONCLUSION

2        For the reasons set forth above, Apple's Motion for Judgment on the Pleadings as to

3  Plaintiffs Rule of Reason Tying Claims should be denied in its entirety.

4  DATED:  August 27, 2009                    Respectfully submitted,

5                                             COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP
6                                            JOHN J. STOIA, JR.
                                             BONNY E. SWEENEY
7                                            THOMAS R. MERRICK

8

9                                                        s/ Thomas R. Merrick
                                             _____
10                                           THOMAS R. MERRICK

11                                           655 West Broadway, Suite 1900
                                             San Diego, CA  92101
12                                           Telephone:  619/231-1058
                                             619/231-7423 (fax)

13                                           THE KATRIEL LAW FIRM
                                             ROY A. KATRIEL
14                                           1101 30th Street, N.W., Suite 500
                                             Washington, DC  20007
15                                           Telephone:  202/625-4342
                                             202/330-5593 (fax)

16
                                             Co-Lead Counsel for Plaintiffs
17
                                             BONNETT, FAIRBOURN, FRIEDMAN
18                                              & BALINT, P.C.
                                             ANDREW S. FRIEDMAN
19                                           FRANCIS J. BALINT, JR.
                                             ELAINE A. RYAN
20                                           TODD D. CARPENTER
                                             2901 N. Central Avenue, Suite 1000
21                                           Phoenix, AZ  85012
                                             Telephone:  602/274-1100
22                                           602/274-1199 (fax)

23                                           BRAUN LAW GROUP, P.C.
                                             MICHAEL D. BRAUN
24                                           12304 Santa Monica Blvd., Suite 109
                                             Los Angeles, CA  90025
25                                           Telephone:  310/442-7755
                                             310/442-7756 (fax)

26
                                             MURRAY, FRANK & SAILER LLP
27                                           BRIAN P. MURRAY
                                             JACQUELINE SAILER
28                                           275 Madison Avenue, Suite 801

1  
2

New York, NY 10016  
Telephone: 212/682-1818  
212/682-1892 (fax)

3

GLANCY BINKOW & GOLDBERG LLP  
MICHAEL GOLDBERG

4

1801 Avenue of the Stars, Suite 311  
Los Angeles, CA 90067

5

Telephone: 310/201-9150  
310/201-9160 (fax)

6

Additional Counsel for Plaintiffs

7

S:\CasesSD\Apple Tying\BRF 00061149.doc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 27, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 27, 2009.

　s/ Thomas R. Merrick　　　　　　　　　　
THOMAS R. MERRICK

COUGHLIN STOIA GELLER
　　RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  tmerrick@csgrr.com

# Mailing Information for a Case 5:05-cv-00037-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com

- **Andrew S. Friedman**
  rcreech@bffb.com,afriedman@bffb.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com

- **Roy A. Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com,valdajani@jonesday.com

- **Thomas Robert Merrick**
  tmerrick@csgrr.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com,ewallace@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,ybennett@jonesday.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Adam Richard Sand , Esq**
  invalidaddress@invalidaddress.com

- **Michael Tedder Scott**

michaelscott@jonesday.com,gwayte@jonesday.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **John J. Stoia , Jr**
  jstoia@csgrr.com

- **Tracy Strong**
  tstrong@jonesday.com,dharmon@jonesday.com

- **Bonny E. Sweeney**
  bonnys@csgrr.com,E_file_sd@csgrr.com,christinas@csgrr.com

- **Helen I. Zeldes**
  helenz@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Todd David Carpenter**
Bonnett, Fairbourn, Friedman, & Balint
2901 N. Central Avenue
Suite 1000
Phoenix, AZ 85012

**Elaine A. Ryan**
Bonnett Fairbourn Friedman & Balint, P.C
2901 N. Central Avenue
Suite 1000
Phoenix, AZ 85012