Robert A. Mittelstaedt #60359
ramittelstaedt@jonesday.com
Craig E. Stewart #129530
cestewart@jonesday.com
Michael Scott #255282
michaelscott@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION. | **Case No. C 05-00037 JW**<br>**C 06-04457 JW**<br><br>**DEFENDANT'S MOTION FOR DECERTIFICATION OF RULE 23(B)(3) CLASS**<br><br>**Date:** October 5, 2009<br>**Time:** 9:00 A.M.<br>**Place:** Courtroom 8, 4th floor |

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ................................................................................... 1

RELIEF SOUGHT ..................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

INTRODUCTION ...................................................................................................................... 1

PROCEDURAL BACKGROUND ............................................................................................ 2

      A.      The Direct Purchasers' Motion for Class Certification ............................................ 2

      B.      The Court's Rejection of the *Per Se* Tying Claim. .................................................. 3

      C.      Denial of the Indirect Purchasers' Motion for Class Certification. ......................... 3

ARGUMENT .............................................................................................................................. 6

I.      THE COURT HAS THE AUTHORITY TO DECERTIFY THE DAMAGES CLASS OR ALTERNATIVELY TO RECONSIDER ITS PRIOR RULING. .................. 6

II.     THE DIRECT PLAINTIFFS SUFFER FROM THE SAME FUNDAMENTAL DEFECTS AS THE INDIRECT PLAINTIFF. ................................................................. 7

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

Cases

*Armstrong v. Davis*,
 275 F.3d 849 (9th Cir. 2001) ................................................................................................ 6

*Ballard v. Equifax Check Serv., Inc.*,
 186 F.R.D. 589 (E.D. Cal. 1999) ......................................................................................... 6

*Coopers & Lybrand v. Livesay*,
 437 U.S. 463 (1978) ............................................................................................................. 6

*O'Connor v. Boeing N. Am., Inc.*,
 197 F.R.D. 404 (C.D. Cal. 2000) ......................................................................................... 6

*Officers For Justice v. Civil Serv. Comm'n*,
 688 F.2d 615 (9th Cir. 1982) ............................................................................................... 6

*Siegel v. Chicken Delight, Inc.*,
 448 F.2d 43 (9th Cir. 1971) ................................................................................................. 9

*Slaven v. BP Am., Inc.*,
 190 F.R.D. 649 (C.D. Cal. 2000) ......................................................................................... 6

Rules

Federal Rules of Civil Procedure
 Rule 23(b)(3) ................................................................................................................ passim

Federal Rules of Civil Procedure
 Rule 23(c)(1) ........................................................................................................................ 6

Federal Rules of Civil Procedure
 Rule 23(c)(1)(C) ................................................................................................................... 6

Federal Rules of Civil Procedure
 Rule 60(b) ............................................................................................................................. 6

Local Rule 7-9 ............................................................................................................................. 1

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 5, 2009, at 9 A.M., or as soon thereafter as the matter may be heard, defendant Apple Inc. will bring on for hearing this motion for decertification of the Rule 23(b)(3) damages class.  Alternatively, pursuant to L.R. 7-9, Apple requests leave to move for reconsideration of the decision certifying that class.

**RELIEF SOUGHT**

Decertification of the Rule 23 (b)(3) damages class or leave to move to reconsider that decision.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

To obtain class treatment, the plaintiff must show a reliable method for proving common impact on the purported class.  In the *Somers* indirect purchaser action, this Court held that plaintiff failed to meet that burden.  The Court found that "Plaintiff has done nothing more than make a vague five-paragraph long collection of proposals for accomplishing what the Court sees as a daunting task."  Dkt. 80 (*Somers*), p. 12.  Plaintiff's expert, Dr. French, made only "unspecified proposals as to how he might be able to prove damages" while "conced[ing] that he has not yet developed a model or worked with any data in the context of this case."  *Id.* at 11-12.  Among other deficiencies, he offered no proof that he could take prices for the original iPod and use them to determine "but for" prices for the wide array of iPod models sold throughout the alleged six-year class period, including iPods that are so different from the original that he could not even identify them as music players, let alone as iPods.  *See infra,* pp. 5, 8.  By contrast, Apple's expert, Dr. Burtis, "gave specific testimony about how regression models work, and testified about the difficulties of constructing such a model to deal with the complex multi-variable situation underlying iPod pricing."  Dkt. 80 (*Somers*), p. 11.  Because plaintiff had not shown how she could overcome the "significant challenges" Dr. Burtis identified, the Court ruled that her requested damages class under Rule 23(b)(3) could not be certified.  *Id.* at 12.

The Court's analysis and its findings apply with equal force to the direct purchaser plaintiffs.  Just like Somers, they relied solely on an economist, Dr. Noll, to carry their burden of

- 1 -

Def's Motion For Decert. Of Damages Class
C 05-00037 JW; C 06-04457 JW

showing common impact and damages. Dr. Noll offers the same three possible models: before-after, competitive yardstick, and margin analysis. And just like Dr. French, Dr. Noll has not gone past the proposal stage, providing instead only the most generic description of these methods. He has not gathered any data, identified the necessary variables, or actually run any models. He admits that he has doubts that at least one of his models will work, in part because it requires data that he says he is not sure exists. And, like Dr. French, he too proposes to divine the prices of the iPod touch, shuffle and nano (among others) from the original 2001-2002 white iPod. As discussed in the accompanying report of Dr. Burtis ("Burtis Report"), his approach faces the same challenges as the same methods proposed by Dr. French and fails for the same reasons. This Court accordingly should decertify the Rule 23(b)(3) class in this case just as it denied certification in the indirect purchaser case.

## PROCEDURAL BACKGROUND

### A. The Direct Purchasers' Motion for Class Certification.

When the direct purchasers moved for class certification in November 2008, the thrust of their claim was that the iPod's enhanced utility for playing music from the iTunes Store was an unlawful tying arrangement under section 1 of the Sherman Act. Accordingly, the parties' class certification briefing focused largely on that claim. *See* Dkt. 165, pp. 11-18; Dkt. 181, pp. 3-22; Dkt. 188, pp. 1-11. In particular, Apple showed that the tying claim required proof of individual coercion that would predominate over any common issues.

Plaintiffs also claimed that the same alleged tying arrangement was a willful exclusionary act under section 2 of the Sherman Act. Apple argued that, because the gravamen of the section 2 claim was the same alleged tie, a class for the section 2 claim should be denied for the same reasons that a class for the section 1 claim should be denied—*i.e.*, the claim depended on an individualized showing of coercion. Dkt. 181, p. 24.

Of significance to the present motion, Apple also asserted, albeit briefly, that the regression analysis proposed by plaintiffs' economist to prove class-wide anticompetitive impact was impermissibly speculative. As Apple pointed out, plaintiffs' economist admitted that he did not know whether his proposed methodology for establishing whether iPods were overpriced

1  would work. And he had not offered any proposal on how to prove a net overcharge taking music
2  prices into account. *Id.* at 21-22.

3  In ruling on the motion, the Court denied certification of the tying claim without prejudice
4  pending the Court's reconsideration of the legal basis of that claim, including whether
5  individualized proof of coercion was required. Dkt. 196, p. 7. Finding that coercion would not
6  be a required element of the section 2 claim, however, the Court certified a Rule 23(b)(3) class for
7  that claim. *Id.* at 13. In doing so, the Court did not address the sufficiency of plaintiffs'
8  economist's proposed methodology.[1]

9  **B.  The Court's Rejection of the *Per Se* Tying Claim.**

10  On May 15, 2009, the Court granted Apple's motion for judgment on the pleadings,
11  finding that plaintiffs had failed to state a cognizable tying claim under the *per se* theory because
12  the two products at issue are separately available. Dkt. 213. The Court invited further briefing on
13  the rule of reason claim that plaintiffs intend to pursue. Apple's motion on that claim was filed
14  on August 3 (Dkt. 229) and is set for hearing on October 5.

15  **C.  Denial of the Indirect Purchasers' Motion for Class Certification.**

16  The indirect purchasers filed their motion for class certification in February 2009. Their
17  economist, Dr. French, submitted a report positing three "possible" methods to determine whether
18  iPods were overpriced: a temporal benchmark, or before-after, method; a competitive yardstick
19  method; and a margin analysis. He proposed to use these methods to calculate in two alternative
20  ways the overcharge allegedly paid by indirect purchasers. Under the first alternative, he would
21  use regression analyses to estimate the overcharge paid by the ***direct*** purchasers such as Wal-
22  mart, Amazon, or Target, and then determine how much of that overcharge was passed along in
23  the retail price those entities charged to ***indirect*** purchasers. Under the second alternative, which

---

[1]  Defendants further argued that resellers such as Wal-Mart, Best Buy and Target were "obviously not in the same position as individual end-user purchasers" like plaintiffs; that their interests diverged from plaintiffs' and that given their differing circumstances and interests, the named plaintiffs could not adequately represent the resellers. Dkt. 181, pp. 22-24. The Court's opinion did not expressly address this argument. Dkt. 196. The Court later noted that it had implicitly rejected that argument. Dkt. 198, p. 2.

he called a "more direct approach," he would apply his regression analyses directly to the retail prices charged to indirect purchasers to estimate the amount those prices were supposedly inflated without trying to separately determine what the overcharge was at the wholesale level and how much was passed on. For both of these alternatives, the principal method he proposed was a before-after regression, in which he would use the prices of the original iPods sold in 2001 and 2002 to determine what the prices should have been for all of the more than forty different iPods introduced over the ensuing six-year class period.

To evaluate the sufficiency of these proposed methodologies, the Court held a hearing at which economists for both sides testified. Testifying for Apple, Dr. Burtis described the significant obstacles to Dr. French's proposals. She noted the paucity of data from the alleged "before" period, in which Apple sold only its earliest generations of the original iPod (and only one generation of the iPod mini)—and none of the later, significantly more advanced iPods, such as the touch-screen, wi-fi iPod touch or the tiny iPod shuffle. Dkt. 74 (*Somers*), ¶¶ 32-37; June 30 Tr. (*Somers*), pp. 43-49.[2] She likewise pointed to the numerous complex factors that have affected iPod pricing over the more than six-year-long class period (and that would have to be controlled for in any regression), including the unique and changing features of the numerous different iPod models introduced over those six years, the impact on the demand for iPods from such unquantifiable factors as consumers' perception that they are "cool," and the nascent, dynamic nature of the industry. Dkt. 74 (*Somers*), ¶¶ 21-24; 33-34; June 30 Tr. (*Somers*), pp. 50-51.[3] She contrasted this circumstance from others in which regressions have been successfully employed, such as the regression she performed to estimate, based on five years of stable data from a "before" period, what crude oil prices would have been absent Hurricane Katrina. June 30

---

[2] The transcript of the June 30 evidentiary hearing is Exhibit B to the accompanying Expert Report of Dr. Michelle M. Burtis.

[3] Dr. Burtis illustrated these points at the hearing with charts showing the very limited price data available in the alleged before period, as compared to the prices charged for the wide array of numerous different models sold during the alleged class period. Those charts are attached as Exhibits E and F to the accompanying Burtis Report. Exhibit D to the Burtis Report is a graphic illustration of some of the many factors affecting demand that differed over time and varied among the iPod models.

- 4 -

Def's Motion For Decert. Of Damages Class
C 05-00037 JW; C 06-04457 JW

1   Tr. (*Somers*), pp. 38-51.  Dr. Burtis also pointed out that Dr. French addressed only iPod prices
2   and did not offer any method for showing that customers suffered a net overcharge on the alleged
3   tying and tied products as a package, as the Ninth Circuit requires.  Dkt. 74 (*Somers*), ¶ 40.

4         In contrast to this specific testimony from Dr. Burtis, Dr. French testified only "generally
5   about his history of using regression models" and offered only broad assertions that he could
6   "create a model that was sufficient to calculate individual damages."  Dkt. 80 (*Somers*), p. 11.  He
7   admitted that he had not created or run any actual models, asserting that that would be "for the
8   merit stage."  June 30 Tr. (*Somers*), p. 28 ("I have only proposed doing it.  I haven't done them
9   yet.").  Nor had he gathered or examined the data that would be necessary for his regression
10  models.  Dkt. 80 (*Somers*), p. 12.  And he confirmed the dramatic differences among the various
11  iPod models (and thus the difficulty of divining what the price of one should have been in 2008
12  based on what original iPods cost in 2002) when he was unable to recognize that an iPod shuffle
13  was even an iPod and mistook an iPod mini as "an attachment to the part of the iPod."  June 30
14  Tr. (*Somers*), pp. 26-27.

15        After considering this evidence, the Court concluded that "Plaintiff has failed to meet her
16  burden of establishing 'a reliable method for proving common impact on all purchasers of
17  [D]efendant's product throughout the chain of distribution.'"  Dkt. 80 (*Somers*), p. 12 (citation
18  omitted).  Importantly, although the Court noted the additional hurdle typically faced by indirect
19  purchaser plaintiffs of showing that the overcharge was passed along to them, the Court's ruling
20  ultimately did not turn on that issue here.  Instead, the Court found that Dr. French faltered on the
21  initial step of "demonstrate[ing] supracompetitive pricing for iPods," without even getting to the
22  question of showing that any such purported overcharges were passed along to consumers.  *Id.*[4]

---

[4] To use Dr. French's terminology, his study failed at the "overcharge" step of both of his two approaches.  As to the first, he offered no method for showing an overcharge at the wholesale level, without ever getting to the question of whether it was passed through.  Likewise, as to his second approach, he did not show that his methods could "directly" estimate an overcharge at the retail level.  Dr. Noll's proposal is the same as the first step of Dr. French's first wholesale/pass-through approach, and entirely the same as Dr. French's second "direct" approach.  The only difference in the direct approach is that Dr. Noll would use retail prices at Apple's store and Dr. French would use retail prices at Best Buy and other resellers.

- 5 -

Def's Motion For Decert. Of Damages Class
C 05-00037 JW; C 06-04457 JW

1  In other words, Dr. French failed to show how he could take the $399 price of the first iPod in
2  2001 and use it to determine if, but for the iPod's enhanced ability to play iTS content, the price
3  of an iPod shuffle in 2009 would have been even lower than its $79 price.  As we show below,
4  the Court's basis for finding Dr. French's approach insufficient applies with equal force to Dr.
5  Noll's testimony offered by the direct purchasers.

## ARGUMENT

### I. THE COURT HAS THE AUTHORITY TO DECERTIFY THE DAMAGES CLASS OR ALTERNATIVELY TO RECONSIDER ITS PRIOR RULING.

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C).  As the Ninth Circuit has recognized, "Federal Rule of Civil Procedure 23 provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." *Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2001).  "[B]efore entry of a final judgment on the merits, a district court's order respecting class status is not final or irrevocable, but rather, it is inherently tentative." *Officers For Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 633 (9th Cir. 1982); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978) (describing a court's class certification order as "inherently tentative").  In evaluating whether to decertify the class, the court applies the same standard used in deciding whether to certify the class in the first place.  *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000).

A motion to decertify a class is not governed by the standards that apply to motions for reconsideration and does not depend on a showing of new law, facts or procedural developments. *Ballard v. Equifax Check Serv., Inc.*, 186 F.R.D. 589, 593 n.6 (E.D. Cal. 1999) ("Because the court has the power to alter or amend the previous class certification order under Rule 23(c)(1), the court need not consider whether 'reconsideration' is also warranted under Fed.R.Civ.P. 60(b) or [local rules governing reconsideration]."); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 652 (C.D. Cal. 2000) ("Because Defendants' motion assists the Court in performing its role as gatekeeper, or manager, of the class action, the motion should not be denied on the ground that it impermissibly recounts old facts and law under Local Rule 7.16.").

- 6 -

Def's Motion For Decert. Of Damages Class
C 05-00037 JW; C 06-04457 JW

1  But if the reconsideration standard were governing here, it is met. This Court's ruling in
2  the indirect purchasers' case finding that their economist's testimony was insufficient provides
3  ample basis for evaluating more closely that same issue in this case involving the same
4  underlying factual allegations and, as relevant here, the same required proof.

5  **II.    THE DIRECT PLAINTIFFS SUFFER FROM THE SAME**
6  **FUNDAMENTAL DEFECTS AS THE INDIRECT PLAINTIFF.**

7  The Court's analysis finding insufficient Dr. French's proposed methods applies equally
8  to Dr. Noll's proposals. This Court should reject them for the same reasons and decertify the
9  Rule 23(b)(3) damages class in this case just as it denied certification of the damages class in the
10  indirect purchaser case.

11  The accompanying report of Dr. Burtis reviews Dr. Noll's report and demonstrates that it
12  fails in the same material respects as Dr. French's approach. To summarize:

13  - Like Dr. French, Dr. Noll has not done the work necessary to determine whether his
14    proposals will work. Neither economist has "developed any actual model or provided
15    sufficient information about his proposed models to demonstrate or even suggest that
16    they would work." Dkt. 80 (*Somers*), p. 10; Scott Decl., Ex. 2 (Noll Dep., pp. 96:24-
17    97:9); Noll Report, pp. 52-59; Burtis Report, ¶ 8. They both have "collected little if
18    any data." Dkt. 80 (*Somers*), p. 10; Scott Decl., Ex. 2 (Noll Dep., pp 96:24-97:9); Noll
19    Report, pp. 52-59; Burtis Report, ¶ 13. Both have "no written equations." Dkt. 80
20    (*Somers*), p. 10; Scott Decl., Ex. 2 (Noll Dep., pp. 96:24-97:9); Noll Report, pp. 52-
21    59; Burtis Report, ¶ 8.

22  - Though admittedly critical to their proposed models, neither economist has "identified
23    or quantified any specific variables" that would have to be accounted for. Dkt. 80
24    (*Somers*), p. 10; Scott Decl., Ex. 2 (Noll Dep., pp. 96:24-97:9); Noll Report, pp. 52-
25    59; Burtis Report, ¶ 8.

26  - Similarly, neither economist has determined that the relevant variables can be
27    adequately quantified at all. Dkt. 80 (*Somers*), pp. 11-12; Noll Report, pp. 52-59;
28    Burtis Report, ¶ 8. This includes such factors affecting the demand for iPods as their

- 7 -

Def's Motion For Decert. Of Damages Class
C 05-00037 JW; C 06-04457 JW

|   |   |
|---|---|
| 1 | award-winning design, the widespread consumer perception that they are "cool," their |
| 2 | ability to display video or photos, their software capabilities and other similar product |
| 3 | characteristics and market factors.  Indeed, both economists conceded that the |
| 4 | perception that the iPod is "cool" affects demand, but neither could identify any |
| 5 | specific method.  Scott Decl., Ex. 1 (French Dep., p. 125:1 – 125:7);  Ex. 2 (Noll Dep., |
| 6 | p. 86:6-86:16). |

- Both economists seek to "evaluate pricing for a host of evolving iPod models that emerged during the proposed class period" based on the original iPod models to which the later models bear virtually no resemblance. Dkt. 80 (*Somers*), p. 10; Noll Report, p. 55 ; Burtis Report, ¶¶ 18-20.  Both economists thus propose to divine from the $399 price of the original iPod in 2001 what the price should have been seven years later for the current iPod shuffle, which costs only $79, has no screen, is controlled with buttons on the earphone cord, weighs only 1/3 of an ounce and is roughly the size of a Post-It tag.  It is one-twentieth the size of the original iPod but has nearly the same capacity.  It is so dramatically different from the original iPod that Dr. French thought it might be a device for "connecting earphones to something." June 30 Tr. (*Somers*), pp. 26-27.  Both economists likewise propose to use the original iPod prices to come up with the "but for" price of the iPod touch, which was not introduced until September 2007, and has a 3.5 inch widescreen display, a "multi-touch interface" that allows users to "pinch" the screen to make images larger or smaller, and an accelerometer that automatically senses when its position changes and rotates the image to a landscape position.  Far more than simply a device to store and play music, the iPod touch allows users to download and play video games, watch videos and full–length feature movies, send and receive e-mail, store and view photographs, and access the internet with wi-fi capability.  Users can download from over 65,000 applications available from the Apple App Store.  The original iPod had none of these features.  Despite all of these features, the touch is eight millimeters thick, less than half the thickness of the original.

- 8 -

Def's Motion For Decert. Of Damages Class
C 05-00037 JW; C 06-04457 JW

1
2
3
4
5
6
7

- They both propose yardstick and margin approaches, but neither has done the economic analysis necessary to identify any products or markets that would be a proper benchmark for either analysis. Dr. French essentially abandoned these approaches, after devoting only a single sentence in his report to each. *See* Dkt. 74 (*Somers*), p. 15 n.14. Dr. Noll admitted that he had "doubts" about his yardstick approach, and admitted that it "requires data that I'm not sure exists." Scott Decl. Ex. 2 (Noll Dep., pp. 72:2-73:9).

8
9
10
11
12
13
14
15
16
17
18

- Neither of them "deal[s] with whether any iPod overcharge may have been offset by lower iTMS pricing." Dkt. 80 (*Somers*), p. 11; Scott Decl., Ex. 2 (Noll Dep., p. 141:3-19); Noll Report, pp. 52-59; Burtis Report, ¶ 36. Instead, they both focus solely on iPod pricing, disregarding that, under the Ninth Circuit's "net overcharge" rule, a plaintiff cannot establish impact or damages in a tying case unless the plaintiff shows that the alleged overcharge on the tied product exceeded the amount of any savings from a reduced price of the tying product. *See Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 52 (9th Cir. 1971). Indeed, the very consumers that plaintiffs contend are locked in—those with large iTS libraries—are the very consumers least likely to have suffered an overcharge. The price reductions on the iTS music implied by their tying theory would outweigh any alleged overpricing of the iPod.

19   In short, Dr. Burtis' "extensive explanation of how the types of regression models
20 proposed by Dr. French cannot be reliably applied to the complex product and pricing dynamic
21 underlying the claims in this case" applies with full force to the similar regression models
22 proposed by Dr. Noll. Dkt. 80 (*Somers*), p. 11.

23   It is of no consequence that Dr. French was addressing overcharges to indirect purchasers,
24 rather than direct purchaser overcharges. The inadequacies this Court found in Dr. French's
25 proposals did not relate to the difficulty of showing pass-through. Nor did it relate to any
26 circumstances unique to evaluating retail prices charged by resellers. Rather, as noted, this Court
27 found that Dr. French failed more fundamentally by not being able to show the existence of any
28 supracompetitive pricing at all, at any level. The inability to estimate prices for vastly different

iPod models based on earlier models, the lack of adequate price data for sales within the before period, the inability to determine when the impact period supposedly began, the failure to identify any specific variables or determine whether they can quantified—these are all defects that apply equally to determining overcharges, if any, at either the retail or the wholesale level.

Moreover, the direct purchasers face an additional complication of their own in this case. They must show not only an overcharge at Apple's online and retail stores but also an overcharge to an entirely different line of purchasers—the more than 1,000 resellers who were also "direct" purchasers from Apple. To do this, plaintiffs would need to prove the wholesale price the resellers paid, demonstrate that that price did not vary among resellers (or that any variations can be handled through a common methodology), and then show the competitive price that each reseller would have paid absent the alleged unlawful conduct. Dr. Noll admitted, however, that he had not looked into these issues; just as with sales to consumers, he has not gathered any data, identified the relevant variables or constructed any models. Scott Decl., Ex. 2 (Noll Dep., pp. 239:9-240:18). This complication, not present in the indirect case, makes plaintiffs' burden here even more daunting. It adds to the reasons why the damages class should be decertified.

## CONCLUSION

For the foregoing reasons, the Rule 23(b)(3) damages class should be decertified.

Dated: August 31, 2009.

Respectfully submitted,

Jones Day

By: /s/ Robert A. Mittelstaedt
　　　Robert A. Mittelstaedt

Counsel for Defendant
APPLE INC.

SFI-617902v1

Def's Motion For Decert. Of Damages Class
C 05-00037 JW; C 06-04457 JW

- 10 -