proprietary DRM for its music store increased the demand and therefore prices for iPods. It would follow from plaintiffs' theory that some consumers would have elected not to purchase iTS music for the same reason and, to that extent, the demand for and price of iTS music would have decreased due to the use of DRM. Accordingly, to determine whether any consumer paid a **net** overcharge would require an analysis of both the prices of iPod products and the price of iTS music. For example, depending on the amount of any iPod "overcharge" and the amount of any iTS music "undercharge," whether an individual paid a net overcharge would turn on the number of iPods and music files purchased by that individual. Individuals with sufficiently large purchases of music relative to iPods would not have paid a net overcharge, even under plaintiffs' theory and even if they could establish an iPod overcharge. None of Professor Noll's three methods, like Dr. French's three approaches, addresses this issue.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true to the best of my knowledge and belief. Executed on August 31, 2009 in Washington, D.C.

_____
Michelle M. Burtis, Ph.D.

SFI-617928v1