Robert A. Mittelstaedt  #60359
ramittelstaedt@jonesday.com
Craig E. Stewart  #129530
cestewart@jonesday.com
Michael Scott #255282
michaelscott@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     (415) 626-3939
Facsimile:     (415) 875-5700

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION**.** | **Case No. C 05-00037 JW**<br>**C 06-04457 JW**<br><br>**DEFENDANT'S MOTION FOR RECONSIDERATION OF RULE 23(B)(2) CLASS**<br><br>**Date:**     October 5, 2009<br>**Time:**     9:00 A.M.<br>**Place:**     Courtroom 8, 4th floor<br><br>**REDACTED** |

Def's Motion For Reconsideration
C 05-00037 JW; C 06-04457 JW

Dockets.Justia.com

1

# TABLE OF CONTENTS

2

Page

3

NOTICE OF MOTION AND MOTION ...................................................................... 1

4

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

5

INTRODUCTION ....................................................................................................... 1

6

THE COURT'S QUESTIONS.................................................................................... 2

7

PROCEDURAL BACKGROUND............................................................................. 5

8

ARGUMENT .............................................................................................................. 6

9

I.      THE PRINCIPAL INJUNCTIVE RELIEF SOUGHT IS MOOT. ..................... 7

10

II.     THE REMAINING RELIEF PLAINTIFFS REQUEST LIKEWISE DOES NOT

11      SUPPORT CLASS CERTIFICATION. ............................................................ 7

12          A.      Providing DRM-free upgrades is not the predominant purpose of this

13                  lawsuit. ................................................................................................... 8

14          B.      This request is more akin to damages than injunctive relief................... 9

15          C.      Even if considered injunctive relief, it is unavailable to the requested class

16                  of past iPod purchasers. .......................................................................... 9

17          D.      A class of future iPod purchasers has not been pled and would be

                    improperly unascertainable. ................................................................. 11

18          E.      The requested relief would be inequitable because it would impose a cost

19                  on Apple vastly disproportionate to any benefit to consumers. ........... 12

20      III.    PLAINTIFFS' VIDEO ALLEGATIONS DO NOT SUPPORT A RULE 23(B)(2)

21              CLASS. .......................................................................................................... 14

22      CONCLUSION ......................................................................................................... 16

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*Abeyta v. Town of Taos*,
499 F.2d 323 (10th Cir. 1974)................................................................................. 13

*Adamson v. Bowen*,
855 F.2d 668 (10th Cir. 1988)................................................................................. 12

*Ballard v. Equifax Check Serv., Inc.*,
186 F.R.D. 589 (E.D. Cal. 1999) ............................................................................. 6

*Bolin v. Sears, Roebuck & Co.*,
231 F.3d 970 (5th Cir. 2000).............................................................................. 8, 10

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
479 U.S. 104 (1986)................................................................................................ 10

*Chmieleski v. City Prods. Corp.*,
71 F.R.D. 118 (W.D. Mo. 1976) ....................................................................... 10, 11

*Freeland v. AT&T Corp.*,
238 F.R.D. 130 (S.D.N.Y. 2006) ............................................................................. 3

*In re Cordis Corp. Pacemaker Prod. Liab. Litig.*,
1992 WL 754061 (S.D. Ohio Dec 23, 1992) ........................................................... 9

*In re Mercedes-Benz Antitrust Litig.*,
213 F.R.D. 180 (D.N.J. 2003).................................................................................. 10

*Jaffee v. U.S.*,
592 F.2d 712 (3d Cir. 1979)...................................................................................... 9

*James v. City of Dallas, Tex.*,
254 F.3d 551 (5th Cir. 2001)..................................................................................... 9

*Janda v. T-Mobile, USA, Inc.*,
2008 WL 4847116 (N.D. Cal. Nov. 7, 2008).......................................................... 10

*Mazur v. eBay Inc.*,
257 F.R.D. 563 (N.D. Cal. 2009) ............................................................................ 12

*McBean v. City of New York*,
228 F.R.D. 487 (S.D.N.Y. 2005) ............................................................................ 12

*McGahee v. N. Propane Gas Co.*,
858 F.2d 1487 (11th Cir. 1988)............................................................................... 10

1

2

3

*Molski v. Gleich*,
  318 F.3d 937 (9th Cir. 2003).................................................................. 8

4

5

*Officers For Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982).................................................................. 6

6

7

*Paladin Assocs., Inc. v. Mont. Power Co.*,
  328 F.3d 1145 (9th Cir. 2003)................................................................ 14

8

*Robinson v. Metro-North Commuter R.R. Co.*,
  267 F.3d 147 (2d Cir. 2001)............................................................... 8, 13

9

10

*Sepulveda v. Wal-Mart Stores, Inc.*,
  237 F.R.D. 229 (C.D. Cal. 2006) ............................................................ 9

11

12

*Siegel v. Chicken Delight, Inc.*,
  448 F.2d 43 (9th Cir. 1971)................................................................... 3

13

14

*Simon v. Am. Tel. & Tel. Co.*,
  2001 WL 34135273 (C.D. Cal. Jan. 26, 2001) ...................................... 12

15

*Slaven v. BP Am., Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000) ............................................................ 6

16

17

*Wren v. RGIS Inventory Specialists*,
  256 F.R.D. 180 (N.D. Cal. 2009) ............................................................ 9

18

19

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001)................................................................ 8

<u>Other Authorities</u>

10 P. Areeda, E. Elhauge & H. Hovenkamp, *Antitrust Law*, ¶ 1769c, at 413 (2d ed. 2004) ........... 3

20

21

Fed. R. Civ. P. 23 advisory committee's note........................................................... 12

22

23

<u>Rules</u>

Federal Rules of Civil Procedure
  Rule 23 ........................................................................................................... 2

24

25

Federal Rules of Civil Procedure
  Rule 23(a)....................................................................................................... 12

26

27

Federal Rules of Civil Procedure
  Rule 23(b)(2)............................................................................................ passim

28

1

2

3  Federal Rules of Civil Procedure

4  Rule 23(b)(3).................................................................................................................... 2, 5

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 5, 2009, at 9 A.M., or as soon thereafter as the matter may be heard, defendant Apple Inc. will bring on for hearing this motion for reconsideration of the Court's certification of a Rule 23(b)(2) direct purchaser class.

**RELIEF SOUGHT**

Decertification of the Rule 23(b)(2) direct purchaser class.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

A class under Rule 23(b)(2) is not proper here. The principal injunctive relief plaintiffs sought—requiring Apple to sell DRM-free music at the iTunes Store (iTS)—is now moot. As plaintiffs acknowledged, Apple used DRM because the record labels required it as an anti-piracy measure. The labels, however, no longer require DRM. As a result, since April 2009 all iTS music has been DRM-free. No reason exists to think that the record labels will reinstitute any DRM requirement—and Apple has opposed the labels' requirement from the outset.

Plaintiffs' ancillary request—ordering Apple to give away DRM-free versions of all iTS music previously downloaded by iPod owners, ████████████████████████████ ██████████—is no basis to certify an injunctive relief class. This relief cannot possibly be considered the dominant purpose of this action—a central requirement under Rule 23(b)(2). The dominant relief plaintiffs seek is damages for the alleged overcharge on every iPod sold since April 2003, as underscored by plaintiffs' decision to seek a class of past iPod purchasers only.

But if plaintiffs could establish that this ancillary relief was the dominant purpose of their case, a Rule 23(b)(2) class would still be inappropriate for several independent reasons. First, the requested relief would be more akin to damages than to injunctive relief. It would, in essence, reimburse consumers for their cost of obtaining DRM-free music files. Moreover, even if considered injunctive relief, it would still be inappropriate because it is not tailored to past iPod purchasers who are the only individuals whom plaintiffs seek to represent. No showing has been made that any past iPod purchaser, much less substantially all of them, has any interest in obtaining free upgrades. And if plaintiffs seek to redefine their purported class as future iPod

1  purchasers or individuals who desire to obtain competing players, the class would not meet the

2  ascertainability requirement of Rule 23.

3       Finally, the enormous cost to Apple that would be imposed by this requested relief is

4  grossly disproportionate to any conceivable benefit to any iPod purchasers.  The theory for this

5  ancillary relief is that eliminating DRM from previously-downloaded songs will somehow reduce

6  iPod prices for future iPod customers.  As reflected in this Court's denial of the Rule 23(b)(3)

7  class in the indirect purchaser case, however, plaintiffs have not shown that they can demonstrate

8  that using DRM for iTS music affected even past iPod prices.  Their ancillary relief is based on

9  the even more implausible and attenuated theory that iPod prices in the future will be impacted in

10  some residual manner even though all music now offered on iTS is DRM-free.

11       For these reasons, this action is not suitable for a Rule 23(b)(2) class, and the request for

12  injunctive relief should be stricken.

13                          **THE COURT'S QUESTIONS**

14       This Court's July 17 order posed three questions.  Apple responds to them as follows.

15       1.  *Would a class of past iPod purchasers be entitled to a mandatory injunction in the*

16  *form of free access to DRM-free iTS music and video files?*

17       No, for the reasons summarized above and addressed below (pp. 6-16).  Although

18  plaintiffs presumably will argue that such mandatory "relief" might permit iPod owners to

19  transfer the files more readily to competing portable digital players, plaintiffs have not shown—

20  and there is no reason to believe—that any significant number of iPod owners want to purchase

21  competing players.  *See infra*, pp. 11, 13.  There is even less reason to believe that giving away

22  DRM-free music would have any downward effect on future iPod prices.  *Infra*, pp. 13-14.  At the

23  same time, the cost to Apple of replacing all previously-obtained iTS files with new DRM-free

24  files would be enormous—███████████████████████████████████████

25  ███████████████████████████.  Cue Decl. ¶¶ 4-6.

26       2.  *Is such relief available under theories of monopolization and attempted*

27  *monopolization?*

28       No.  The grounds for decertification apply regardless of the theory of liability.

Def's Motion For Reconsideration
C 05-00037 JW; C 06-04457 JW

3.      *Why did plaintiffs in both cases exclude iTS purchasers from their class definitions?*

Plaintiffs' decision to limit their purported class to iPod purchasers apparently flows from their decision not to allege any overcharge for iTS music—even though they claim that Apple monopolized the alleged market for on-line music sales and restricted the supply of music. Dkt. 107, ¶ 90. They assert instead only that iPods were overpriced.

The real question, therefore, is why plaintiffs elected not to allege an iTS music overcharge. Although plaintiffs will need to speak for themselves, most likely they realized that, under standard economic theory, tying one product to another tends to reduce the price of the tying product. *See Freeland v. AT&T Corp.,* 238 F.R.D. 130, 150 (S.D.N.Y. 2006) ("[I]f a tie causes a buyer to pay more than the market price for the tied product, the buyer is most likely paying less than the price that the seller could profitably charge for the tying product if sold separately.") (citation omitted); *see also* 10 P. Areeda, E. Elhauge & H. Hovenkamp, *Antitrust Law,* ¶ 1769c, at 413 (2d ed. 2004) ("[I]n most cases a premium price on the tied product must be accompanied by a reduction in the price of the tying product.").

This is important because, under the Ninth Circuit's "net overcharge" rule, a plaintiff cannot establish impact or damages from purchasing an allegedly tied product unless the plaintiff shows that the alleged overcharge on that product exceeded the amount of any savings from a reduced price of the tying product. *See Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 52 (9th Cir. 1971) (holding that impact and damages must be measured on a "package" basis—*i.e.*, by determining the net overcharge on the tied product after taking into account any reduction in the tying product price). Here, this proof necessarily varies from individual to individual. It depends on individualized issues of how many iTS music files were purchased by a particular consumer (and the amount of any undercharge) relative to the number of iPods purchased by that consumer (and the amount of the alleged overcharge).[1] Realizing that these individual issues would

---

[1]      For example, assuming a hypothetical iTS undercharge of 20 cents per song and an iPod overcharge of $10 per iPod, an individual who bought 200 iTS files would not have suffered net injury unless he bought more than four iPods. (200 x .2 = $40; 4 x $10 = $40).

1  jeopardize class certification, plaintiffs evidently hoped to finesse this obstacle by alleging

2  nothing about iTS prices.[2]

3        Plaintiffs' attempt to ignore this obstacle, however, does not make it disappear.  They

4  cannot recover a purported overcharge on iPod purchases without demonstrating that—taking into

5  account any reduction in the prices for iTS music—they paid a net overcharge compared to what

6  they would have paid without the alleged violation.  Neither of their experts even attempted to

7  explain how this could be done on a common basis.  Instead, they both focused only on iPod

8  pricing.  *Cf.*  Dkt. 80 (*Somers*), p. 11 (this Court observing that one of the defects Dr. Burtis

9  identified in Dr. French's study was his "inability to deal with whether any iPod overcharge may

10  have been offset by lower iTMS pricing").  Nor do plaintiffs deal with the inevitable conflicts that

11  would arise among class members with varying relative amounts of iTS and iPod purchases.

12  Depending on those variables, consumers would have different interests in whether to allege an

13  overcharge for music or iPods and the amount of the relative under- and overcharges.

14        Moreover, plaintiffs' theory is that the customers with the most iTS files are those who are

15  most likely to be locked in.  Thus, the customers most likely to have been "coerced" (under

16  plaintiffs' theory) into buying an iPod are the customers least likely to have suffered any net

17  overcharge because the more underpriced music they bought, the greater the offset from any

18  alleged iPod overcharge.  This adverse relationship makes plaintiffs' attempt to ignore the net

19  overcharge issue even more inexcusable.

20

21

22  [2]    Plaintiffs' tactic of ignoring the iTS price reductions implied by their theory underscores

23  the baseless and contrived nature of this case.  The first two complaints alleged a two-way tie, and
    an overcharge on both iTS music and iPods.  Dkt. 1 (No. 05-00037), ¶¶ 55, 62-75; Dkt. 37

24  (No. 05-00037), ¶ 57, 64-77.  When the Court questioned the propriety of alleging that both
    products were the tied and tying products (*see* Dkt. 35 (No. 05-00037), pp. 4-5), plaintiffs opted

25  for music as the tying product and the iPod as the overpriced product.  It is obvious, however, that
    this choice was not based on anything factual.  As demonstrated by plaintiffs' economist, they

26  have done nothing to determine whether iPods were overpriced.  Plaintiffs' choice instead
    appears to be based on a tactical decision as to which product—a 99 cent song or a $399 iPod—

27  might support the larger damages claim.  In any event, none of this justifies plaintiffs' ignoring
    the net overcharge issue.

28

1    Plaintiffs' inability to deal with the net overcharge issue with common, class-wide,

2    conflict-free proof—and plaintiffs' attempt to evade it by not alleging any price effect on iTS

3    content and not alleging a class of iTS purchasers—justify reconsidering and decertifying the

4    damages class.   Apple concurrently files a motion to decertify the 23(b)(3) class in part on that

5    basis.  For purposes of the present motion, however, plaintiffs' decision to limit their request to a

6    class of past iPod purchasers reveals the primacy of plaintiffs' damages claims, because past iPod

7    purchasers are not entitled, by that status alone, to future relief.  If the primary purpose of this

8    lawsuit were to obtain free upgrades to DRM-free music, plaintiffs would have pursued a class of

9    iTS purchasers.  Their request for a 23(b)(2) class of past iPod purchasers for injunctive relief is

10   therefore inappropriate.

11                          **PROCEDURAL BACKGROUND**

12   Plaintiffs have artificially structured their claims and motions for class certification in an

13   effort to conceal the inherently individualized issues and conflicts among purported class

14   members.  In the process, their claims for injunctive relief and for a Rule 23(b)(2) class have

15   become unsustainable, especially now that all music provided on iTS is DRM-free.

16   The thrust of plaintiffs' claims is that Apple encrypted iTS content with proprietary DRM,

17   with the result that the iPod is the only portable digital player with which iTS content is directly

18   compatible.  Plaintiffs say that this in turn means that individuals who have sufficiently large iTS

19   libraries that they want to continue listening to, and who prefer competing digital players and are

20   unwilling or unable to copy the music to CDs and load it on their computers ("burn and rip"),

21   may have been "coerced" to buy iPods.  As a result, plaintiffs allege that iPods were overpriced.

22   Dkt. 107, ¶¶ 72-74.  As noted, however, they do not allege that iTS music prices were too high.

23   Having chosen ultimately not to allege damages for iTS music purchasers either for their

24   tying or monopolization claims, plaintiffs did not move to certify a class of iTS purchasers under

25   Rule 23(b)(2) or (3).  Rather, they moved to certify only a class of iPod purchasers—a class that

26   includes persons who never purchased any iTS content and who use their iPods in numerous other

27

28

Def's Motion For Reconsideration
C 05-00037 JW; C 06-04457 JW

ways,[3] and persons who bought iPods without regard to the availability of iTS music, including those who boughts iPods as gifts for others without any likelihood of repeat purchases.  Yet the injunctive relief plaintiffs claim to be seeking for those iPod purchasers relates only to the iTunes Store.[4]

As a result of these incongruities, the Court deferred ruling on the indirect purchasers' request for an injunctive relief class and invited Apple to move to reconsider the grant of an injunctive relief class in the direct purchaser case or to strike their claim for injunctive relief. This motion follows.[5]

## **ARGUMENT**

The main injunctive relief sought by plaintiffs is moot and the fallback relief they now seek is insufficient to support certification.  As this Court suggested, a class of past iPod purchasers is not entitled to free upgrades of their existing iTS library—with no valid theory to provide the connection between the two products—in what effectively would amount to ▮▮▮ ▮▮▮ cost to Apple and no likely benefit to the vast majority of iPod owners.  Without any showing of any benefit to the asserted class, this relief—even if considered injunctive in nature— cannot be considered the dominant purpose of this case and would be inequitable.

---

[3]     *E.g.*, to play their CD collections or DRM-free music from other sources, to store and display their photos or home videos, as an external drive, or, for the iPod touch, to surf the internet, play video games, send and receive e-mail, download and use any of the 65,000 applications available from the App Store, or keep their calendar and contacts.

[4]     Initially, the Court defined the Rule 23(b)(2) class as iTS and iPod purchasers.  Apple moved to clarify that plaintiffs had moved to certify only a class of iPod purchasers.  Plaintiffs did not object to restricting the class to iPod purchasers.  The Court did so by order dated January 15, 2009.  Dkt. 198, p. 2.

[5]     This Court's invitation to file this motion is consistent with the Court's "broad discretion" to revisit its class certification at any time before final judgment.  *Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2001).  "[B]efore entry of a final judgment on the merits, a district court's order respecting class status is not final or irrevocable, but rather, it is inherently tentative." *Officers For Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 633 (9th Cir. 1982).  Unlike a party-initiated motion to reconsider, the Court's power to revisit an earlier ruling and decertify a previously certified class does not depend on a showing of new law, facts or procedural developments.  *Ballard v. Equifax Check Serv., Inc.*, 186 F.R.D. 589, 593 n.6 (E.D. Cal. 1999); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 652 (C.D. Cal. 2000).

Def's Motion For Reconsideration
C 05-00037 JW; C 06-04457 JW

1  **I.      THE PRINCIPAL INJUNCTIVE RELIEF SOUGHT IS MOOT.**

2          In moving for class certification a year ago, the direct purchasers asserted that injunctive

3  relief was proper to force Apple to stop selling iTS content that cannot be played on competing

4  players.  Dkt. 165, p. 9.  At that time, Apple was still required by all the labels except EMI to

5  encode their songs with DRM.  That is no longer the case.  The labels have now all agreed that

6  Apple may sell their music without DRM.  As a result, as of April 2009, all music offered at the

7  iTunes Store is DRM-free and can be played on nearly any portable digital music player.  Cue

8  Decl. ¶¶ 2-3.[6]  Plaintiffs' requested injunctive relief is accordingly now moot.

9  **II.     THE REMAINING RELIEF PLAINTIFFS REQUEST LIKEWISE DOES NOT**

10         **SUPPORT CLASS CERTIFICATION.**

11         With Apple no longer required to sell DRM-protected music files, plaintiffs are left only

12 to assert that injunctive relief is still proper to force Apple to "'unlock' the iTunes Store

13 recordings previously purchased."  Dkt. 165, p. 10.  The indirect purchasers similarly assert that

14 Apple should be "force[d to] stop charging consumers for removal of DRM from iTunes

15 downloads."  Dkt. 39 (*Somers*), p. 7.

16         These requests reveal a misunderstanding of the process.  It is not a matter of removing

17 DRM from files already downloaded or otherwise "unlocking" previously downloaded files.

18 Rather, it is a matter of purchasing and downloading the current versions of those files that are

19 now available on the DRM-free iTS.  Cue Decl. ¶¶ 3-5.  The price to the consumer is 30 cents per

20 file compared to the initial price of 99 cents.  *Id.* ███████████████████████████████

21 ████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████

23 █████████████████████████████████████████

24

25

26 [6]      Unrelated to DRM, digital music files must use some type of compression/decompression
   or "codec" format.  Apple uses the publicly available AAC format.  Microsoft uses its own WMA
27 codec.  Others use the MP3 codec.  Generally speaking, use of different file formats does not
   prevent interoperability, because many jukebox applications convert from one format to others.
28 Apple's iTunes, for example, converts music from the AAC to MP3 format.

1    Plaintiffs' request that Apple incur these expenses and distribute these DRM-free files

2    without charging customers is not a proper basis to certify a class under Rule 23(b)(2), for the

3    following reasons.

4    **A.      Providing DRM-free upgrades is not the predominant purpose of this**

5    **lawsuit.**

6    The disconnect between plaintiffs' requested injunctive relief and their alleged class of

7    past iPod purchasers shows that certification under Rule 23(b)(2) is improper.  A Rule 23(b)(2)

8    class may be maintained only where the claim for injunctive relief is the predominant form of

9    relief sought by the class.  *See Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1195 (9th

10   Cir. 2001).  Courts must look into "the nature of the precise relief sought and the circumstances of

11   the particular case" to determine if the interest of the class is genuinely injunctive.  *Id.* at 1196.

12   "In order to determine predominance, [the Ninth Circuit has] focused on the language of Rule

13   23(b)(2) and the intent of the plaintiffs in bringing the suit."  *Molski v. Gleich*, 318 F.3d 937, 950

14   (9th Cir. 2003).  At a minimum, the plaintiff must show that, even in the absence of a possible

15   monetary recovery, reasonable plaintiffs would bring suit to obtain the injunctive or declaratory

16   relief sought.  *See id.* at 950 n.15 (citing *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d

17   147, 164 (2d Cir. 2001)).

18   By bringing suit on behalf of past iPod purchasers, plaintiffs have made clear that their

19   primary intent was to obtain the only remedy to which that class as a whole might conceivably be

20   entitled if they could prove their claims (which Apple vigorously denies)—money damages for

21   the alleged overcharge on the iPod they purchased.  Absent that potential recovery, no reason

22   exists to believe that past purchasers of iPods would bring suit simply to require that Apple offer

23   DRM-free versions of music previously purchased.  At best, that relief would benefit only some

24   of them (and plaintiffs have not shown even that much (*see infra*, pp. 13-14)).  By definition,

25   relief that can benefit only part of an alleged class cannot be the primary relief sought by the class

26   as a whole.  Class certification in these circumstances is improper.  Plaintiffs are impermissibly

27   seeking to "shoehorn [a] damages action[] into the Rule 23(b)(2) framework."  *Bolin v. Sears,*

28   *Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000); *see Wren v. RGIS Inventory Specialists*, 256

F.R.D. 180, 210-11 (N.D. Cal. 2009) (ruling that plaintiffs had not shown that injunctive relief was the primary relief being sought for purposes of Rule 23(b)(2) where the class was largely composed of former employees who would not benefit from requested relief); *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 245-46 (C.D. Cal. 2006) (plaintiffs failed to show that Rule 23(b)(2) class was proper where named plaintiff and most of the class were former employees who "would derive no benefit from the injunction").

### B.   This request is more akin to damages than injunctive relief.

Although characterized by plaintiffs as injunctive relief, the request for free music is more accurately viewed as a prayer for damages. This is certainly the case for individuals who have already obtained DRM-free upgrades and paid 30 cents per file. For them, plaintiffs are in effect seeking reimbursement of the upgrade price. Similarly, individuals who intend to obtain such upgrades in the future would also be made whole by damages (under plaintiffs' theory of liability). And for individuals who have no interest in DRM-free upgrades or in buying iPod competitors, the requested relief would have no value and provide no benefit to them, and would be objectionable on that basis alone.

Viewed in these practical terms, plaintiffs' request is not for injunctive relief at all, and thus does not support certification under Rule 23(b)(2). "A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money." *Jaffee v. U.S.*, 592 F.2d 712, 715 (3d Cir. 1979).[7]

### C.   Even if considered injunctive relief, it is unavailable to the requested class of past iPod purchasers.

As noted, the main purpose of this lawsuit is money damages for individuals who allegedly paid an overcharge for iPods in the past. That is why plaintiffs moved to certify a class

---

[7]   *See James v. City of Dallas, Tex.*, 254 F.3d 551, 572 & n.25 (5th Cir. 2001) ("Plaintiffs' request for an injunction to order the City to provide substitute houses would be substantially equivalent to a judgment against the City for damages in the amount necessary to buy substitute houses."); *In re Cordis Corp. Pacemaker Prod. Liab. Litig.*, 1992 WL 754061, at *9 (S.D. Ohio Dec 23, 1992) (declining to certify a Rule 23(b)(2) class because plaintiff's "request for injunctive relief, requiring the funding of the removal of defective pacemakers, is an attempt to cast a claim for monetary damages as one for injunctive relief").

1   of past iPod purchasers.  If plaintiffs' theory of liability were viable and if they could prove their

2   case—neither of which is true—they would be made whole by money damages.  The law is clear

3   that a class of past purchasers is not entitled to injunctive relief where it is speculative whether

4   they will buy the product at issue in the future—or whether, if they do so, it would be a result of

5   the alleged violation—and thus whether they would benefit from any injunction.  *See In re*

6   *Mercedes-Benz Antitrust Litig.,* 213 F.R.D. 180, 186 (D.N.J. 2003) (denying certification under

7   Rule 23(b)(2) for class of past purchasers of automobiles because it was speculative whether they

8   would purchase in the future and thereby benefit from any injunction); *Bolin,* 231 F.3d at 978

9   (denying certification under Rule 23(b)(2) where "[m]ost of the class consists of individuals who

10  do not face further harm from Sears' actions . . . [and] have nothing to gain from an injunction");

11  *Janda v. T-Mobile, USA, Inc.*, 2008 WL 4847116, at *4 (N.D. Cal. Nov. 7, 2008) (ruling that past

12  purchasers lack standing to assert a claim for injunctive relief when they do not claim that they

13  would purchase in the future).

14          This rule derives from the requirement of Rule 23(b)(2) that injunctive relief be

15  appropriate for the class as a whole.  For this requirement to be met, the named plaintiffs and the

16  alleged class must comprise the group of persons who are threatened with the alleged harm and

17  who would therefore benefit from the injunctive relief.  In *Cargill, Inc. v. Monfort of Colorado,*

18  *Inc.*, 479 U.S. 104, 112-13 (1986), "the Supreme Court held that a private plaintiff seeking

19  injunctive relief under [section 16 of the Clayton Act] must show a threat of antitrust injury,

20  which means threat of an injury for which a plaintiff could eventually claim treble damages."

21  *McGahee v. N. Propane Gas Co.*, 858 F.2d 1487, 1501 (11th Cir. 1988).  A private litigant may

22  not attempt to enforce public rights under the antitrust laws unless he has also sustained or is

23  threatened with a personal injury.  Thus, "in order to obtain injunctive relief . . . he must

24  demonstrate threatened injury of a personal nature proximately resulting from the antitrust

25  violation."  *Chmieleski v. City Prods. Corp.*, 71 F.R.D. 118, 157 (W.D. Mo. 1976).

26          This requirement applies in a class action as well.  Because a class action is simply a

27  procedural device that aggregates otherwise valid claims, members of the class must likewise be

28  entitled to the requested injunctive relief.  "If it appears to the Court that plaintiffs' antitrust

1   claims if established would not establish such personal threatened injury to **all or substantially all**

2   of the class members thereby making appropriate under Section 16 of the Clayton Act injunctive

3   relief to the class as a whole, a class action under subsection (b)(2) is inappropriate." *Id.*

4   (emphasis added).

5        None of the named plaintiffs has shown that he or she is threatened with any personal

6   harm if Apple does not provide, free of charge, new DRM-free versions of previously purchased

7   music. The only harm they allege is with respect to their already completed purchases of an

8   iPod—and if their claims were valid, their alleged harm would be more than compensated by

9   monetary damages.

10       Even more fundamentally, plaintiffs have not shown that any significant portion of the

11  alleged class of past iPod purchasers is threatened with any future harm or would otherwise

12  benefit from free DRM-free versions of DRM-protected iTS music in their libraries—much less

13  that "substantially all" class members were so threatened. Plaintiffs' theory is presumably that an

14  injunction is needed to prevent their alleged class of past purchasers from being overcharged on

15  future iPod purchases. But purchasing an iPod in the past does not mean that the consumer will

16  purchase one in the future, let alone suffer any injury from such a future purchase. The customer

17  may have bought the iPod as a gift for someone else—and may not intend to buy the same gift in

18  the future. Or the customer may be happy with his or her current iPod and have no plans to buy

19  another any time soon. Or the customer may want to buy a different player and has not purchased

20  any iTS music that would influence that purchase even under plaintiffs' theory, or has only a

21  modest iTS library (or a library he or she has already burned to CDs) that likewise would not

22  influence such a purchase. None of these customers would benefit from the requested injunctive

23  relief and plaintiffs have not shown what portion, if any, of the class would benefit. In these

24  circumstances, class certification under Rule 23(b)(2) is improper.

25       **D.**    **A class of future iPod purchasers has not been pled and would be**

26            **improperly unascertainable.**

27       Even if there were some group threatened with harm from future iPod purchases, no such

28  group has been pled and no method exists to properly identify its members. "As a threshold

Def's Motion For Reconsideration
C 05-00037 JW; C 06-04457 JW

matter, and apart from the explicit requirements of Rule 23(a), the party seeking class

certification must demonstrate that an identifiable and ascertainable class exists." *Mazur v. eBay*

*Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009). For an injunctive relief class to be proper, both the

members of the class and the defendant must have a basis for knowing who is bound by the

judgment. *McBean v. City of New York*, 228 F.R.D. 487, 492 (S.D.N.Y. 2005). This requirement

is more easily met in cases involving current employees who face a risk of ongoing harm from

unlawful employment practices, or consumers who buy a product like gasoline or milk on a

regular, repeated basis. But it is not met here where there is no way to know at all, and certainly

not without individual-by-individual proof, which consumers will decide to buy an iPod in the

future (or which would switch to a rival player but for their past iTS purchases). Thus,

certification under Rule 23(b)(2) is not proper. *See Simon v. Am. Tel. & Tel. Co.,* 2001 WL

34175273, at \*3 (C.D. Cal. Jan. 26, 2001) (denying certification under Rule 23(b)(2) in part

because the alleged class of future purchasers of high-speed internet access services from the

defendant was not ascertainable).

## E.    The requested relief would be inequitable because it would impose a cost on Apple vastly disproportionate to any benefit to consumers.

As plaintiffs describe the relief they are seeking, it is a mandatory injunction requiring

Apple to obtain ████████ DRM-free versions of the ████████ songs purchased by iPod owners

over the last six years and provide those songs free-of-charge to the iPod owners. Rule 23(b)(2)

"is intended to reach situations where a party has taken action or refused to take action with

respect to a class, and *final relief of an injunctive nature . . . is appropriate*." Fed. R. Civ. P. 23

advisory committee's note (emphasis added). Although courts must not pre-judge the merits

when deciding whether to certify a class, "the merits may become intertwined with proper

consideration of other issues germane to whether the case should be certified as a class action; for

example, whether an injunction would be a more efficient and equally effective remedy" than

damages. *Adamson v. Bowen*, 855 F.2d 668, 676-77 & n.12 (10th Cir. 1988). Thus, courts may

properly consider whether the injunctive relief requested by a Rule 23(b)(2) class is inequitable or

otherwise inappropriate on its face. "Insignificant or sham requests for injunctive relief should

1    not provide cover for (b)(2) certification of claims that are brought essentially for monetary

2    recovery." *Robinson*, 267 F.3d at 164.

3        "Equitable relief should not be granted where the hardship to the defendant substantially

4    outweighs the benefit to the plaintiff." *See Abeyta v. Town of Taos*, 499 F.2d 323, 328 (10th Cir.

5    1974). Here, the cost to Apple of providing free DRM-free upgrades to every iPod purchaser

6    regardless of whether they are threatened by injury is enormous and disproportionate. ████████

7    ████████████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████████

10   ████████████    Cue Decl. ¶¶ 4-5. Apple has sold ████████ tracks to iPod owners in

11   the United States. Cue Decl. ¶ 6. Thus, to provide DRM-free upgrades for each song would cost

12   Apple ████████████████

13       To show any benefit to the class from this enormous expense under their theory, plaintiffs

14   would need to show that giving away DRM-free files to iTS customers with iPods would have

15   some measurable impact on the future price of iPods. They have not identified any viable means

16   for doing so. Even assuming they could first establish their claim that Apple's alleged conduct

17   violated the antitrust laws (which Apple vigorously denies), to even begin to show an effect on

18   future prices, they would need to prove that a large number of current iPod owners (1) intend to

19   purchase a portable music player in the near future, (2) are unhappy with iPods and want to

20   switch to a player made by another manufacturer, but (3) are not doing so only because they have

21   a large number of previously purchased DRM-protected songs from iTS that they still want to

22   listen to but (4) are unwilling to transfer the songs to the new player by the available method of

23   burning and ripping them. Plaintiffs do not suggest any method, much less a method susceptible

24   to common proof, by which purchasers meeting each of these criteria could be identified and their

25   number determined.

26       Even if such purchasers could be identified, plaintiffs have not offered any basis for

27   concluding that their existence will have any effect on future iPod prices. It is not enough to

28   show that a particular iPod feature marginally increases demand for iPods. Plaintiffs would also

1    have to show that Apple will charge a higher price in the future as a result.  In the indirect

2    purchaser case, this Court denied class certification of a damages class for past iPod purchases

3    because plaintiffs have not shown that encoding all iTS content with DRM had any effect on past

4    prices.  The notion that future prices might be affected by the absence of free DRM-free

5    upgrades, even though iTS has been entirely DRM-free for six months, is even more farfetched.[8]

6          In light of the number of downloaded iTS music files, the out-of-pocket cost to Apple of

7    providing the same files without DRM to all past iPod purchasers would be ██████████████

8    ██████████████████████████████████████.  The cost to Apple would be less

9    if the "relief" were provided only to individuals who actually claim to be "locked-in" under

10   plaintiff's theory.  But plaintiffs themselves do not fit in that category, and they have consistently

11   acknowledged their inability or lack of intention to identify such individuals, if any actually exist.

12         In short, no basis exists to conclude that giving away DRM-free files will have any

13   consequence other than imposing an enormous expense on Apple (with its accompanying

14   detrimental effect on Apple's investment in future product innovations) without producing any

15   legitimate benefit to the alleged class.  Thus, plaintiffs have failed to carry their burden of

16   showing, as required before any Rule 23(b)(2) class may be certified, that injunctive relief is

17   "appropriate respecting the class as a whole."

18   **III.    PLAINTIFFS' VIDEO ALLEGATIONS DO NOT SUPPORT A RULE 23(B)(2)**

19          **CLASS.**

20         The foregoing analysis applies with even greater force to any injunctive relief directed to

21   Apple's online video sales.  Plaintiffs' complaints refer to sales of video content from iTS, but do

---

23   [8]    Nor would an injunctive relief class be appropriate on the theory that, even absent any
24   effect on future iPod prices, the injunction would at least provide a personal benefit to any current
     iPod owners who want to get DRM-free upgrades so that they can switch to a different player.
25   Any such benefit would not inure to the class as whole and cannot be said to be the primary relief
     sought by the alleged class.  And any such personal interest in switching, divorced from any
26   effect on competition and prices, is not protected by the antitrust laws, which are limited to
     protecting competition, not individual competitors or consumers.  *Paladin Assocs., Inc. v. Mont.*
27   *Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003) ("Where the defendant's conduct harms the
     plaintiff without adversely affecting competition generally, there is no antitrust injury.").
28

Def's Motion For Reconsideration
C 05-00037 JW; C 06-04457 JW

1   not provide any significant supporting detail explaining how video sales support their claim.  And

2   their motions to certify a class barely mentioned the video claim.  In fact, Apple did not begin

3   selling iTS video files until October 12, 2005.[9]  As of March 2007, iTS customers had on average

4   purchased ███████████████████████████████████.  Rangel Decl. (filed 10/17/08),

5   Ex. 2 (p. 33).  Even under plaintiffs' theory, ██████████████ video sales could not

6   possibly have "coerced" any consumer into buying an iPod, let alone a sufficient number of

7   consumers that the price of iPods (including the early iPods and the later iPod mini and iPod

8   shuffle that have no video capability) could have been affected.  Nor can plaintiffs plausibly

9   claim that any injunction directed to video sales could have any effect on future prices of iPods.

10          But even if such an effect could be proved, a Rule 23(b)(2) class would still be improper

11   for the reasons discussed above.  It would be fanciful to suggest that, in absence of a possible

12   monetary recovery, plaintiffs would have brought this lawsuit solely to obtain an injunction

13   directed to video sales.  The lack of any detailed factual allegations in their complaint regarding

14   video sales, coupled with the implausibility that ██████████████ video sales

15   have affected or could effect iPod prices, belies any such assertion.

16          Moreover, even under plaintiffs' theory, the requested injunctive relief will at best benefit

17   only some class members, not the class as a whole as required by Rule 23(b)(2).

18          Finally, an injunction directed to video sales would be even more problematic and

19   inequitable than one directed to music.  As noted, there is no reason to believe that anyone has

20   been coerced by video purchases to buy an iPod or that video sales have had—or will have—any

21   effect on iPod prices.  And, unlike the music record labels, the video copyright owners have not

22   authorized on-line distributors to provide DRM-free versions of their video.  Thus, even if there

23   were some lock-in effect from video sales and even if it were affecting iPod prices (neither of

24   which is true or plausible), Apple could not properly be ordered to offer DRM-free videos.

25   Instead, the relief sought by plaintiffs would require Apple to license its DRM to competitors or

26

27   _____

       [9]      See "Apple Announces iTunes 6 With 2,000 Music Videos, Pixar Short Films & Hit TV
28   Shows," available at http://www.apple.com/pr/library/2005/oct/12itunes.html

Def's Motion For Reconsideration
C 05-00037 JW; C 06-04457 JW

1  to use Microsoft's DRM.  Not only would there be no basis for concluding that any such licensing

2  would have a measurable favorable effect on iPod prices, but doing so would be directly contrary

3  to the basic principles of the antitrust laws, as we have previously demonstrated.  *See* Dkt. 200,

4  pp. 7-11.

5  **CONCLUSION**

6    For these reasons, the injunctive relief class under Rule 23(b)(2) in the direct purchaser

7  action should be decertified.

8  Dated: August 31, 2009.     Respectfully submitted,

9            Jones Day

10            By:  /S/

11              Craig E. Stewart

12            Counsel for Defendant
             APPLE INC.

13  SFI-617899v2

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28