Robert A. Mittelstaedt  #60359
ramittelstaedt@jonesday.com
Craig E. Stewart  #129530
cestewart@jonesday.com
Michael Scott #255282
michaelscott@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:    (415) 626-3939
Facsimile:     (415) 875-5700

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION. | **Case No. C 05-00037 JW**<br>**C 06-04457 JW**<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY INJUNCTIVE RELIEF CLASS DEFINITION TO INCLUDE iTMS PURCHASERS**<br><br>**Date:**    October 5, 2009<br>**Time:**    9:00 A.M.<br>**Place:**    Courtroom 8, 4th floor |

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................. 1

PROCEDURAL BACKGROUND................................................................................................... 3

ARGUMENT ................................................................................................................................... 4

I. CALLING IT A MOTION TO "MODIFY" DOES NOT ELIMINATE PLAINTIFFS' BURDEN OF PROVING THAT THE REQUIREMENTS OF RULE 23 ARE MET. ................................................................................................... 4

II. THE PRINCIPAL INJUNCTIVE RELIEF SOUGHT IS MOOT. ..................................... 4

III. THE OTHER RELIEF REQUESTED FOR ITUNES STORE PURCHASERS WITHOUT IPODS LIKEWISE DOES NOT SUPPORT CLASS CERTIFICATION. ............................................................................................................. 5

    A. Plaintiffs are not members of, and do not adequately represent, the new proposed class. ................................................................................................ 5

    B. Plaintiffs fail to show that the proposed new class suffered antitrust injury. ......... 8

    C. Plaintiffs have failed to offer any classwide method to establish which iTS purchaser suffered or will suffer the injury they allege. ......................................... 9

    D. As shown by plaintiffs' opportunistic conduct of this litigation, this relief is not the predominant purpose of this lawsuit. ....................................................... 10

    E. This relief is more akin to damages than injunctive relief. ................................. 11

    F. This relief would be inequitable because it would impose a cost on Apple vastly disproportionate to any benefit to consumers............................................ 11

IV. PLAINTIFFS' VIDEO ALLEGATIONS DO NOT SUPPORT A RULE 23(B)(2) CLASS OF ITS PURCHASERS. ..................................................................................... 11

CONCLUSION .............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Page**

Cases

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
 479 U.S. 104 (1986) ................................................................................................................ 8

*Chmieleski v. City Prods. Corp.*,
 71 F.R.D. 118 (W.D. Mo. 1976) ........................................................................................... 8, 9

*Coleman v. Wilson*,
 912 F. Supp. 1282 (E.D. Cal. 1995) ........................................................................................ 7

*Gen. Telephone Co. of Sw. v. Falcon*,
 457 U.S. 147 (1982) ............................................................................................................ 4, 5

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
 522 F.3d 6 (1st Cir. 2008) ...................................................................................................... 5, 9

*Iron Arrow Honor Society v. Heckler*,
 464 U.S. 67 (1983) .................................................................................................................. 5

*McDonnell Douglas Corp. v. N.A.S.A.*,
 109 F. Supp. 2d 27 (D.D.C. 2000) .......................................................................................... 5

*McGahee v. N. Propane Gas Co.*,
 858 F.2d 1487 (11th Cir. 1988) .............................................................................................. 8

*Molski v. Gleich*,
 318 F.3d 937 (9th Cir. 2003) ................................................................................................. 11

*Pearl v. Allied Corp.*,
 102 F.R.D. 921 (E.D. Pa. 1984) .............................................................................................. 9

*Public Utilities Comm'n of State of Cal. v. F.E.R.C.*,
 100 F.3d 1451 (9th Cir. 1996) ................................................................................................ 5

*Siegel v. Chicken Delight, Inc.*,
 448 F.2d 43 (9th Cir. 1971) .................................................................................................... 2

*Sosna v. Iowa*,
 419 U.S. 393 (1975) ................................................................................................................ 5

*Zinser v. Accufix Research Inst., Inc.*,
 253 F.3d 1180 (9th Cir. 2001) .............................................................................................. 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

<u>Rules</u>

Federal Rules of Civil Procedure
    Rule 23 .................................................................................................................. 1, 3, 4, 5
    Rule 23(a)................................................................................................................... 1, 2, 4
    Rule 23(a)(4) ..................................................................................................................... 7
    Rule 23(b)(2)............................................................................................................ 1, 4, 9, 11
    Rule 23(c)(1) ..................................................................................................................... 4

**INTRODUCTION**

At the same time that Apple, at the Court's invitation, moved to decertify the Rule 23(b)(2) class of direct iPod purchasers, plaintiffs moved to certify a new injunctive relief class of individuals who obtained iTS music or video. Their motion is evidently an attempt to address the Court's concerns with the previously certified class. Far from eliminating those concerns, however, plaintiffs' motion only exacerbates them and shows why no injunctive relief class is appropriate here.

As a threshold matter, although styled as a motion to "modify" the class definition, plaintiffs' motion seeks certification of a brand new class. Thus, plaintiffs are required to demonstrate that all of the requirements of Rule 23(a) and (b)(2) are met. The prior certification of one class does not lessen their burden for certification of a different class—iTS customers who never bought an iPod in the eight years since the iPod was launched.[1]

As to that new "class," plaintiffs fail to carry their burden to establish that the requirements of Rule 23 have been met. Plaintiffs' motion is perfunctory—with no declarations from plaintiffs, an expert, or anyone. It fails for the reasons explained in Apple's pending motion to reconsider the Rule 23(b)(2) class of iPod owners, including that the principal relief sought is moot and the ancillary relief cannot be considered the predominant purpose of this lawsuit. And giving away DRM-free files to iTS customers would impose an enormous cost on Apple vastly disproportionate to any possible benefit to iTS customers who have no interest in buying portable digital players.

Plaintiffs' motion also fails to satisfy Rule 23 in fundamental ways unique to this proposed new class. To begin with, the proposed new class fails the typicality requirement of Rule 23(a) because plaintiffs are not members of it. None of the plaintiffs is an iPod-less iTS customer; each has purchased multiple iPods. As iPod purchasers, plaintiffs are claiming—for

---

[1] Although their proposed class definition refers to individuals who "purchased audio or video files from the iTMS since April 28, 2003" (Mot. 1-2), plaintiffs acknowledge that they are seeking to add only those iTS customers "who have not also purchased an iPod." Mot. 1. This is because iTS customers who purchased iPods are already included in the iPod purchaser class at issue in other motions in these cases.

Def.'s Opp. to Motion to Modify Class Def.
C 05-00037 JW; C 06-04457 JW

1  themselves and their iPod class—that they were injured by being forced to buy iPods and paying
2  an overcharge.  But they cannot make the same claim for iTS customers who did not buy iPods.
3  Indeed, the existence of iTS customers who did not buy iPods sharply conflicts with plaintiffs'
4  claim that consumers are forced to buy iPods.

5  Moreover, plaintiffs' assertion that iTS customers could not have bought a competing
6  player if they had wanted to does not justify class treatment for several additional related reasons.
7  First, plaintiffs have failed to show that the alleged "constraint" constitutes a cognizable injury,
8  let alone antitrust injury.  Indeed, plaintiffs concede that these individuals do not have any basis
9  for money damages.  Dkt. 236, p. 5 ("Plaintiffs do not assert any money damages claim based on
10 iTMS purchases.").  They spent 99 cents for a DRM-protected music file with usage restrictions.
11 They do not allege that they did not get what they paid for.  And to the extent that iTS music
12 prices were reduced as part of the alleged tying arrangement, these individuals would have
13 benefited in a monetary sense.  *See* Dkt. 245, pp. 3-4.

14 Second, plaintiffs have offered no class-wide method to identify which iTS customers
15 without iPods were supposedly constrained by the alleged violation or would be in the future.
16 Whether an iTS customer who has not bought an iPod for the last eight years will buy one in the
17 future and pay an alleged overcharge is even more speculative than is the case with respect to past
18 iPod purchasers.  No objective measure, provable with common evidence, identifies the particular
19 individuals who, under plaintiffs' theory, were or would be constrained by the alleged violation,
20 and any such class would not meet the ascertainability requirements of Rule 23(a).  And under the
21 net overcharge rule of *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 52 (9th Cir. 1971), even if
22 plaintiffs could identify any individuals who would buy an iPod in the future, they would not
23 have a claim absent a showing that any future overcharge on iPods would not be offset by any
24 undercharge on iTS music—and the only way to make that showing would be individual-by-
25 individual.  *See* Dkt. 245, pp. 3-4.

26 Third, plaintiffs are not adequate representatives of the new proposed class, as evidenced
27 by the fact that, less than a year ago, they agreed that iTS customers without iPods should be
28 excluded from the case. See Dkt. 198, p. 2.  Only now, in a transparent effort to salvage their

1   own claims after the Court questioned the viability of an iPod purchaser class, do they move to
2   certify iPod-less iTS customers.  Plaintiffs are correct that the Court expressed concern about the
3   implications of plaintiffs' class definition.  But the Court did not suggest that an iTS-without-iPod
4   class would cure the problem or otherwise comply with Rule 23.  As this brief shows, the new
5   proposed class does neither.[2]

## PROCEDURAL BACKGROUND

Contrary to the position they are now taking, plaintiffs previously conceded that iTS purchasers without iPods should not be part of any certified class.  In July 2008, when plaintiffs moved for class certification the second time, they limited their requested class to iPod purchasers, both for damages and injunctive relief.  *See* Dkt. 165, p. 3 ("Plaintiffs respectfully seek certification of the following class: 'All persons or entities in the United States . . . who since April 28, 2003 purchased an iPod directly from Apple.'").  This definition was consistent with a recognition that, under plaintiffs' theory, only those consumers who allegedly were forced to buy an iPod or otherwise paid an overcharge for an iPod were injured.  By definition, iTS customers who never bought an iPod were not injured and had no basis to sue under plaintiffs' theory.

In its certification order, the Court reverted to the broader class definition in the consolidated complaint, which included iTS purchasers.  Defendants sought clarification, pointing out that plaintiffs' motion limited the requested class to iPod purchasers.  *See* Dkt. 197, p. 5.  In response, plaintiffs did not dispute that the class should be limited to iPod purchasers.  *See id.* at 6.  By order filed January 14, 2009 (Dkt. 198, p. 2), the Court revised the class definition for injunctive relief, limiting the definition to direct iPod purchasers.  Again, plaintiffs did not object, presumably realizing that iTS customers without iPods had no claims under their theory that the antitrust injury was that iPods were overpriced.

---

[2] Plaintiffs use the acronym iTMS, which refers to iTunes Music Store, as the store was initially called.  When the store began providing videos, Apple dropped "Music" for the store's name.  That is why this brief refers to the store as the iTunes Store, or iTS.

Plaintiffs are now shifting ground in response to the Court's inviting Apple to move to decertify the injunctive relief class. Unable to justify granting relief regarding iTS content to iPod purchasers, they are now trying to broaden the class to include iTS customers without iPods. Plaintiffs' changing, conflicting positions on whether to seek to represent iTS consumers without iPods betrays the unprincipled, unsupportable nature of this lawsuit—which admittedly is a matter for another day.

## ARGUMENT

### I. CALLING IT A MOTION TO "MODIFY" DOES NOT ELIMINATE PLAINTIFFS' BURDEN OF PROVING THAT THE REQUIREMENTS OF RULE 23 ARE MET.

Contrary to plaintiffs' suggestion, a motion to "modify" a class definition is not a proper substitute for a motion to certify an additional class. *Gen. Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982), cited by plaintiffs (Mot. 2), simply cited Rule 23(c)(1) for the proposition that a court can modify a certification order. Neither that case nor the rule, however, suggests that a plaintiff can avoid the requirements of Rule 23 in this manner. However the motion is styled, plaintiffs must show that the new proposed class satisfies the requirements of Rule 23(a) and (b)(2), with no short-cuts. They have failed to do so, as shown below.

### II. THE PRINCIPAL INJUNCTIVE RELIEF SOUGHT IS MOOT.

Plaintiffs do not dispute that the record labels no longer require Apple to use DRM and that, since April 2009, all music sold on iTS has been DRM-free. Accordingly, plaintiffs do not seek an injunction to require Apple to stop using DRM for music. (Their claim with respect to video is addressed separately below.) Rather, plaintiffs assert (Mot. 5) that Apple "could at any time re-impose DRM on iTMS music files, or add other technological restrictions limiting interoperability." As explained in Apple's Motion for Reconsideration of Rule 23(b)(2) Class (Dkt. 245, p. 7), Apple's use of DRM was previously required by the record labels for Apple to sell music online. *See* Cue Declaration, ¶ 2, filed herewith. Apple publicly criticized this requirement and stated publicly that it intended to sell iTS music DRM-free when the labels agreed to let Apple do so. *Id*. True to that assurance, Apple began selling music from EMI

without DRM once EMI dropped its DRM requirement,[3] and Apple's music is all DRM-free now that the remaining record labels have dropped the DRM requirement, as is music purchased and downloaded from Wal-Mart, Amazon, and others. *Id.* ¶ 3.

Any request for injunctive relief as to future sales is therefore moot. Now that the record labels have demonstrated their "voluntary and unequivocal intention" to permit the sale of DRM-free music "irrespective of the outcome of this suit," there is nothing to enjoin. *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 72-73 (1983). Where a request for injunctive relief "is moot because of the conduct of a third party," the "voluntary cessation" argument—under which a defendant must prove it will not resume the conduct—does not apply. *McDonnell Douglas Corp. v. N.A.S.A.*, 109 F. Supp. 2d 27, 29 (D.D.C. 2000); *Public Utilities Comm'n of State of Cal. v. F.E.R.C.*, 100 F.3d 1451, 1460 (9th Cir. 1996); *cf. In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 14 (1st Cir. 2008) (plaintiff could not demonstrate standing given absence of anticompetitive threat due to changed extraneous circumstances). In any event, Apple has established that it has no intent or interest in selling music with DRM. *See* Cue Decl., ¶¶ 2-3. DRM was always a requirement solely of the record labels, which Apple consistently opposed. With the labels no longer requiring it, and Apple's major on-line competitors all selling without it, there is no basis for thinking Apple would or could ever adopt it on its own.

### III. THE OTHER RELIEF REQUESTED FOR ITUNES STORE PURCHASERS WITHOUT IPODS LIKEWISE DOES NOT SUPPORT CLASS CERTIFICATION.

#### A. Plaintiffs are not members of, and do not adequately represent, the new proposed class.

The proposed new class fails the typicality requirement of Rule 23, because plaintiffs are not members of that class. "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Falcon,* 457 U.S. at 156 (internal quotation marks omitted); *see also Sosna v. Iowa,* 419 U.S. 393, 403 (1975) ("A litigant must be a

---

[3] *See* http://www.apple.com/pr/library/2007/05/30itunesplus.html.

1  member of the class which he or she seeks to represent at the time the class action is certified by
2  the district court.").

3  Plaintiffs cannot carry their burden to show that they are typical of the new class they seek
4  to represent—iTS customers without iPods. As iPod purchasers, they are alleging a different
5  harm than they are now asserting for non-iPod purchasers. For themselves and other iPod
6  purchasers, they are alleging that they paid an overcharge on iPods. Whatever theory of harm
7  they may try to assert for non-iPod purchasers, it cannot be that theory. Thus, their claims are not
8  typical of the new proposed class.

9  Plaintiffs' typicality discussion (Mot. 4) is cursory and relies on sleight-of-hand. True, the
10 three plaintiffs allege that they purchased music and video from Apple. But they also allege that
11 they purchased iPods, which is why they are members of the previously certified class. The issue
12 here, as noted, is whether they are members of the new proposed class comprised of individuals
13 with iTS music or video who did not buy iPods. Clearly, as iPod purchasers, plaintiffs are not
14 members of that class and thus they cannot represent it.

15 Plaintiffs' only other assertion to support typicality is the conclusory, unsupported claim
16 that "all have been injured by the same alleged course of conduct." If "all" refers to all members
17 of the proposed new class, the assertion is patently wrong. The proposed class of iPod-less ITS
18 purchasers includes at least the following categories of individuals who do not meet plaintiffs'
19 description of "constrained" consumers:

20 - individuals who own non-iPod portable digital players for playing their CD collections
21   and music/videos from other online or brick-and-mortar stores, with only immaterial
22   iTS purchases or with predominantly DRM-free iTS purchases;
23 - individuals who have no interest in playing their iTS music/videos on devices other
24   than computers or by burning the music to CDs and playing it on CD players;
25 - individuals who have already burned and ripped their iTS music or otherwise have
26   removed the DRM;

27
28

- individuals whose libraries consist entirely, or in large part, of DRM-free music purchased from iTS after May 2007 when Apple began selling EMI music without DRM or more recently when the other labels withdrew their DRM requirements; and
- individuals who have already purchased DRM-free upgrades to play their iTS music on competing players without burning and ripping those files.

In short, none of these categories of iTS customers has been injured, even under plaintiffs' theory.

If plaintiffs' assertion that "all" have been injured by the same conduct refers only to the three plaintiffs, the assertion is meaningless because it ignores that they are not in the proposed new class. Alleging or proving injury to someone who is not in the purported class says nothing about whether purported class members were injured.

Nor are plaintiffs' interests properly aligned with the proposed new class, as demonstrated by their decision to exclude all iTS purchasers without iPods from their previous class definition, and their acquiescence to Apple's objection to the class as certified and to the current class when its certification was modified.[4] Plaintiffs can hardly assert that they now will adequately represent the interests of such previously excluded iTS customers, as required by Rule 23(a)(4), when they seek to do so only to salvage their injunctive class of iPod purchasers.[5] Indeed, the presence of iTS customers who have not bought iPods undermines plaintiffs' central theory that iTS customers are forced to buy iPods.

In short, plaintiffs who bought iPods are not typical of individuals who did not buy iPods. Someone allegedly coerced to buy an iPod is hardly typical of someone else who chose not to buy an iPod. As a result, the interests of iPod owners in prosecuting this case differ from those of

---

[4] Plaintiffs' "failure to object to the proposed class definition at the time of class certification arguably would, standing alone, suffice to support this court's conclusion that the objection is without merit." *Coleman v. Wilson*, 912 F. Supp. 1282, 1300 n.13 (E.D. Cal. 1995) (citation omitted).

[5] As Apple will show in its reply in support of its motion to decertify the injunctive relief class, expanding the scope of the class cannot possibly cure the defects with respect to a class more narrowly defined. Plaintiffs' problem is not that the certified class is under-inclusive; it is, *inter alia*, that the relief sought is moot, regardless how the class is defined.

1   non-iPod owners—as reflected by plaintiffs' decision not to seek damages for non-iPod owners
2   and not to include them in the class they moved to certify last year.

3           **B.**      **Plaintiffs fail to show that the proposed new class suffered antitrust injury.**

4           It is fundamental that an antitrust plaintiff and any purported class members must have
5   suffered antitrust injury from the alleged violation or be threatened with such injury. *See*
6   *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). In *Cargill, Inc. v.*
7   *Monfort of Colorado, Inc.*, 479 U.S. 104, 112-13 (1986), "the Supreme Court held that a private
8   plaintiff seeking injunctive relief under [section 16 of the Clayton Act] must show a threat of
9   antitrust injury, which means threat of an **injury for which a plaintiff could eventually claim**
10  **treble damages**." *McGahee v. N. Propane Gas Co.*, 858 F.2d 1487, 1501 (11th Cir. 1988)
11  (emphasis added). "If it appears to the Court that plaintiffs' antitrust claims if established would
12  not establish such personal threatened injury to ***all or substantially all*** of the class members
13  thereby making appropriate under Section 16 of the Clayton Act injunctive relief to the class as a
14  whole, a class action under subsection (b)(2) is inappropriate." *Chmieleski v. City Prods. Corp.*,
15  71 F.R.D. 118, 157 (W.D. Mo. 1976) (emphasis added).

16          As shown in the previous section, plaintiffs cannot show that iPod-less iTS customers
17  have been injured or would "benefit" from the requested relief. Rather than attempting to offer
18  any proof of that assertion, plaintiffs erroneously assert (Dkt. 238, pp. 4-5) that this Court has
19  already made such a finding. In fact, the Court made no such finding, and there is no basis for
20  any such assertion.

21          Plaintiffs further assert (Mot. 2) that the previously certified iPod purchaser class
22  encompasses "most of the customers adversely affected" by the alleged misconduct here. This is
23  apparently a reference to plaintiffs' theory that iPods were allegedly overpriced because enough
24  consumers were coerced to buy iPods against their will that Apple was able to raise the prices for
25  iPods above competitive levels. Trying to obscure the obvious fact that iTS purchasers who
26  never bought any iPod were not similarly damaged, plaintiffs resort to a high level of generality
27  in claiming that all iTS customers, whether or not they bought iPods, are "similarly constrained
28  their choice of portable players." Mot. 2. But saying that iTS customers were constrained in

buying a portable player if they had wanted to begs the question whether they wanted to. Unless those iTS purchasers want to buy a portable device, the purported constraint is no constraint at all and cannot possibly be considered a source of injury, let alone antitrust injury.

To obtain an injunction against future conduct, a plaintiff "must face a threat of injury that is both real and immediate, not conjectural or hypothetical." *In re New Motor Vehicles*, 522 F.3d at 14 (citations omitted). And to certify a class under Rule 23(b)(2), all or substantially all of the class members must face that threat. *Chmieleski*, 71 F.R.D. at 157; Rule 23(b)(2) (injunctive relief must be "appropriate respecting the class as a whole"). None of the plaintiffs meets that requirement, and there is even less reason to think that any material portion—let alone all or substantially all—of the purported new class meets it either. As noted, it stands to reason that if someone has not bought an iPod at any time during the last six years, they most likely are content to use their iTS music or video in some other way (*e.g.,* burning to CDs to play on home or car stereos; playing directly on their computers; etc.).

Plaintiffs' conclusory assertion that iTS customers without iPods suffered antitrust injury is further belied by their acknowledgement (Mot. 5) that this group is not entitled to any monetary damages, even for their monopolization claim. That is, plaintiffs allege no injury other than the unsupported assertion that some unspecified number of consumers may want to buy a portable player at some point in the future but will not do so due to protected iTS purchases. And they suggest no way to identify any such individuals other than a customer-by-customer individualized inquiry.[6]

### C. Plaintiffs have failed to offer any classwide method to establish which iTS purchaser suffered or will suffer the injury they allege.

Under plaintiffs' suggested theory of injury to the proposed new class, whether iPod-less iTS customers are threatened with any injury depends on whether they want to use their iTS

---

[6] If plaintiffs argue that iTS purchasers without iPods have a claim for damages but that plaintiffs chose not to assert it, this would be further evidence that plaintiffs are inadequate class representatives. *See Pearl v. Allied Corp.*, 102 F.R.D. 921, 923 (E.D. Pa. 1984) ("[P]laintiffs' efforts to certify a class by abandoning some of the claims of their fellow class members have rendered them inadequate class representatives.").

1   content on a non-iPod portable digital player and whether they are constrained from doing so in
2   any manner that violates the antitrust laws.  No basis exists to assume that all iPod-less iTS
3   customers want to use a non-iPod portable digital player and have refrained from buying one on
4   account of their iTS libraries.  And plaintiffs have failed to show any classwide method to prove
5   which proposed new class members, if any, fit that description.  This failure is particularly critical
6   because plaintiffs are seeking an injunction that would force Apple to engage in an expensive
7   give-away program of DRM-free music files.  Under plaintiffs' theory, the only individuals (if
8   any) who would benefit from this relief would be those who were constrained by the size of their
9   iTS libraries from buying a competing portable player.  Without a class-wide means to identify
10  such individuals, the requested relief could not be tailored to the individuals entitled under
11  plaintiffs' theory to receive that relief.

12  **D.   As shown by plaintiffs' opportunistic conduct of this litigation, this relief is
13       not the predominant purpose of this lawsuit.**

14  Plaintiffs repeat that their "first and foremost goal" is to end what they call "Apple's
15  restrictive technology practices."  What they mean is that Apple charges 30 cents per file (or 30%
16  of the album price) to obtain a new, DRM-free song file where the consumer previously obtained
17  a file with DRM, and that Apple continues to use DRM for video files.  Even under plaintiffs'
18  theory, the first activity cannot possibly raise any concern with respect to any iTS purchaser who
19  has no interest in obtaining DRM-free files.  As noted, such a customer may be perfectly satisfied
20  with playing the files on a computer, may have already burned them to a CD to use like any other
21  DRM-free CD, may have an insignificant number of files to transfer to an iPod-competitor, or
22  may have removed the DRM and transferred the files to an iPod competitor.  For plaintiffs to say
23  that providing DRM-free files to such individuals is somehow the "first and foremost goal"
24  reveals the liberties taken by plaintiffs in their efforts to respond to the Court's questions about
25  class certification.

26  To determine if injunctive relief is the predominant relief being claimed, the Court must
27  look into "the nature of the precise relief sought and the circumstances of the particular case."
28  *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1196 (9th Cir. 2001).  At a minimum, the

1  plaintiff must show that, even in the absence of a possible monetary recovery, reasonable
2  plaintiffs would bring suit to obtain the injunctive or declaratory relief sought. *See Molski v.*
3  *Gleich*, 318 F.3d 937, 950 n.15 (9th Cir. 2003). Plaintiffs have not and cannot make any such
4  claim here.

### E. This relief is more akin to damages than injunctive relief.

Plaintiffs' request for DRM-free upgrades is essentially a claim for damages, as explained in Apple's Motion for Reconsideration of Rule 23(b)(2) Class, Dkt. 245, p. 9. This is no less true for the proposed class of iTS purchasers without iPods, and certification of such a class should be denied for the same reason.

### F. This relief would be inequitable because it would impose a cost on Apple vastly disproportionate to any benefit to consumers.

The requested relief, DRM-free upgrades of each song sold on the iTunes Store in the U.S. since April, 2003, would be inequitable due to the minimal benefit to the proposed class, if any is ultimately shown by plaintiffs, and the enormous expense to Apple of providing the upgrades. Apple previously demonstrated this disproportion in its Motion for Reconsideration of Rule 23(b)(2) Class, Dkt. 245, pp. 12-14.

## IV. PLAINTIFFS' VIDEO ALLEGATIONS DO NOT SUPPORT A RULE 23(B)(2) CLASS OF ITS PURCHASERS.

Plaintiffs' requested injunctive relief regarding videos sold on iTS is similarly an insufficient basis for certifying a class, including plaintiffs' newly proposed class of iTS customers without iPods. As Apple has previously explained (Dkt. 245, pp. 14-16), no basis exists to believe that any customer has sufficient video purchases to have become locked into buying iPods, let alone that an injunction directed to video would have any effect on future iPod prices. And, even if such an effect could be shown, there is no reason to believe that any material portion of iTS purchasers would benefit from an injunction for the reasons discussed above.

## CONCLUSION

For these reasons, plaintiffs' request to certify a class of iTS purchasers without iPods should be denied.

Dated: September 14, 2009.

Respectfully submitted,

JONES DAY

By: /s/ Robert A. Mittelstaedt
    Robert A. Mittelstaedt

Counsel for Defendant APPLE INC.

SFI-618706v4