1   Robert A. Mittelstaedt  #60359
    ramittelstaedt@jonesday.com
2   Craig E. Stewart  #129530
    cestewart@jonesday.com
3   Michael Scott #255282
    michaelscott@jonesday.com
4   JONES DAY
    555 California Street, 26th Floor
5   San Francisco, CA  94104
    Telephone:     (415) 626-3939
6   Facsimile:     (415) 875-5700

7   Attorneys for Defendant
    APPLE INC.
8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                          SAN JOSE DIVISION

12

13   THE APPLE iPOD iTUNES ANTI-TRUST          **Case No. C 05-00037 JW**
     LITIGATION.                                        **C 06-04457 JW**
14
                                               **DEFENDANT'S REPLY**
15                                             **MEMORANDUM IN SUPPORT OF**
                                               **MOTION FOR JUDGMENT ON THE**
16                                             **PLEADINGS AS TO PLAINTIFFS'**
                                               **RULE OF REASON TYING CLAIM**
17
                                               **Date:**    October 5, 2009
18                                             **Time:**    9:00 A.M.
                                               **Place:**   Courtroom 8, 4th floor
19

20

21

22

23

24

25

26

27

28

                                               Reply Memo. ISO of Mot. for Jgmt. as to Rule
                                               of Reason Tying Claim, C-05-00037-JW

                                                                    DocketsJustia.com

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.    SECTION 1 DOES NOT APPLY BECAUSE THE ALLEGED TIE DOES NOT
      INVOLVE ANY CONCERTED ACTION. ........................................................... 2

II.   PLAINTIFFS' RULE OF REASON TYING CLAIM INDEPENDENTLY FAILS
      BECAUSE THEY HAVE NOT ALLEGED A TIE. ............................................... 4

      A.    The Absence of a Tying Arrangement is Fatal to Plaintiffs' Rule of Reason
            Claim. ........................................................................................................... 4

      B.    Plaintiffs Have No Answer to Apple's Showing that Plaintiffs' Theory
            Conflicts with Basic Antitrust Policies. ..................................................... 9

      C.    Plaintiffs' Failure to Allege Individual Coercion Also Defeats Their Rule
            of Reason Claim. ......................................................................................... 10

III.  PLAINTIFFS' STATE LAW TYING ALLEGATIONS SHOULD BE
      DISMISSED. ........................................................................................................ 11

CONCLUSION ................................................................................................................. 12

Reply Memo. ISO of Mot. for Jgmt. as to Rule
of Reason Tying Claim, C-05-00037-JW

- i -

1

## TABLE OF AUTHORITIES

2

**Page**

3

<u>Cases</u>

4

*Advanced Computer Servs. of Mich., Inc. v. MAI Sys. Corp.*,
5
   845 F. Supp. 356 (E.D. Va. 1994)...................................................................... 6

6

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*,
   441 U.S. 1 (1979) ......................................................................................... 4

7

*City of Lafayette, La. v. Louisiana Power & Light Co.*,
8
   435 U.S. 389 (1978) .................................................................................... 10

9

*County of Tuolumne v. Sonora Cmty. Hosp.*,
10
   236 F.3d 1148 (9th Cir. 2001) ..................................................................... 3

11

*Datagate, Inc. v. Hewlett-Packard Co.*,
   60 F.3d 1421 (9th Cir. 1995) ....................................................................... 3

12

*Eastman Kodak Co. v. Image Tech. Servs.*,
13
   504 U.S. 451 (1992) ..................................................................................... 1

14

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
   703 F.2d 534 (9th Cir. 1983) .............................................................. passim

15

*In re IBM Peripheral EDP Devices Antitrust Litigation*,
16
   481 F. Supp. 965 (N.D. Cal. 1979),
   *aff'd sub nom. Transamerica Computer Corp. v. IBM*,
17
   698 F.2d 1377 (9th Cir. 1983) ..................................................................... 8

18

*In re Tamoxifen Citrate Antitrust Litig.*,
19
   466 F.3d 187 (2d Cir. 2006) ...................................................................... 10

20

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
   466 U.S. 2 (1984) ................................................................................ 3, 4, 6

21

*Los Angeles Memorial Coliseum Com'n v. National Football League*,
22
   726 F.2d 1381 (9th Cir. 1984) ................................................................... 10

23

*N. Pac. Ry. Co. v. United States*,
24
   356 U.S. 1 (1958) .............................................................................. 1, 3, 6, 9

25

*Nobel Scientific Indus., Inc. v. Beckman Instruments, Inc.*,
   670 F. Supp. 1313 (D. Md. 1986) ............................................................... 3

26

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*,
27
   532 F.3d 963 (9th Cir. 2008) ..................................................................... 10

28

Reply Memo. ISO of Mot. for Jgmt. as to Rule
of Reason Tying Claim, C-05-00037-JW

1

2

## TABLE OF AUTHORITIES
### (continued)

Page

3

4

*Systemcare, Inc. v. Wang Labs. Corp.*,
    117 F.3d 1137 (10th Cir. 1997)..................................................................................... 3

5

*Times-Picayune Pub. Co. v. United States*,
    345 U.S. 594 (1953)....................................................................................................... 9

6

7

*Ungar v. Dunkin' Donuts of America*, Inc.,
    531 F.2d 1211 (3d Cir. 1976)....................................................................................... 10

8

9

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ............................................................................. 3, 4, 7, 9

10

*Verizon Commc'n, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)....................................................................................................... 8

11

12

*Webb v. Primo's Inc.*,
    706 F. Supp. 863 (N.D. Ga. 1988) ................................................................................ 6

13

14

*Xerox Corp. v. Media Scis. Int'l, Inc.*,
    511 F. Supp. 2d 372 (S.D.N.Y. 2007)..................................................................... 8, 10

### Other Authorities

15

16

10 P. Areeda, H. Hovenkamp & E. Elhauge, *Antitrust Law,* ¶ 1757a, at p. 317 (2d ed. 2004) ....... 2

17

3A P. Areeda, H. Hovenkamp & E. Elhauge, *Antitrust Law*, ¶ 776c, at p. 254 (2d ed. 2004) ........ 2

### Rules

18

19

Federal Rules of Civil Procedure
    Rule 12(c)..................................................................................................................... 11

20

21

22

23

24

25

26

27

28

Reply Memo. ISO of Mot. for Jgmt. as to Rule
of Reason Tying Claim, C-05-00037-JW

- iii -

1

### INTRODUCTION

2     Plaintiffs' opposition rests on the fallacy that the threshold requirement for a tying

3 claim—namely, that two products have been tied together—differs depending on whether the *per*

4 *se* or rule of reason test is applied.  That argument is contrary to logic and precedent, and is

5 unsupported by any case.

6     As plaintiffs admit (Opp. 8), the predicate for any tying claim, whether the claim is

7 analyzed under the *per se* or rule of reason tests, is that the seller agree "to sell one product but

8 only on the condition that the buyer also purchases a different (or tied product), or at least agrees

9 that he will not purchase that product from any other supplier." *Eastman Kodak Co. v. Image*

10 *Tech. Servs.*, 504 U.S. 451, 461 (1992) (quoting *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5-6

11 (1958)).  Here, this Court has ruled that this predicate is absent.  As the Court explained, the

12 alleged "tying and tied products are separately available."  Dkt. 80 (No. 07-06507), p. 5.  This

13 separate availability is fatal to any antitrust scrutiny, whether *per se* or rule of reason.  Without an

14 underlying tying arrangement, there is nothing to which either analysis may be applied.

15     Plaintiffs cite no contrary authority.  In each case they cite, there was an underlying

16 restraint to which the rule of reason could be applied.  Rule of reason treatment was proper in

17 those cases because the court denied *per se* treatment on a ground other than the absence of the

18 underlying restraint itself.  Here, however, the underlying restraint is missing.  Plaintiffs identify

19 no case in which rule of reason analysis was applied to a tying arrangement after the Court found

20 there was no tie.

21     Faced with this fatal defect in their position, plaintiffs resort to repeating their earlier

22 argument that this is a technological tie.  This, however, is precisely the argument the Ninth

23 Circuit rejected in *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534 (9th Cir.

24 1983)—and that this Court rejected in following *Foremost Pro* to dismiss plaintiffs' *per se* claim.

25 As the Ninth Circuit ruled, when two products are separately available and the only allegation is

26 that one is required for the "practical and effective" use of the other, the coercion essential to

27 establish a tie is missing.  *Id.* at 542.  Contrary to plaintiffs' assertion, the required coercion does

28 not differ depending on whether *per se* or rule of reason treatment is sought.  Coercion goes to

Reply Memo. ISO of Mot. for Jgmt. as to Rule
of Reason Tying Claim, C-05-00037-JW

1   whether the seller is refusing to sell the products separately, which determines whether a tie exists

2   at all, not whether *per se* or rule of reason treatment is proper.  Because Apple has never refused

3   to sell its products separately, tying law is simply inapplicable here and judgment on the tying

4   claim should be granted.

5                                            **ARGUMENT**

6   **I.      SECTION 1 DOES NOT APPLY BECAUSE THE ALLEGED TIE DOES NOT**

7           **INVOLVE ANY CONCERTED ACTION.**

8           Plaintiffs do not dispute that Sherman Act section 1—the statute under which they assert

9   their tying claim—requires a "contract, combination or conspiracy" between separate entities.

10  Nor do they dispute that the basis of their tying claim—the alleged incompatibility between iTS

11  files and competing portable players—resulted from Apple's own unilateral product design

12  decisions and not from any agreement with another entity.  These facts are fatal to any claim

13  under section 1.

14          Plaintiffs cite no authority holding that a company's unilateral product design decisions

15  fall within section 1.  To the contrary, as shown in our opening memorandum (and as plaintiffs do

16  not dispute), in each case alleging a so-called technological tie, the claim was either brought

17  under section 2 or the court rejected the section 1 claim on other grounds without reaching the

18  question whether concerted action was present.  Thus, far from being a matter of "settled antitrust

19  jurisprudence" (Opp. 13), plaintiffs' assertion that section 1 applies here is unsupported by any

20  decision.  And it is rejected by the leading antitrust treatise which states that, in the case of an

21  alleged technological tie, "neither a § 1 'agreement' nor a Clayton § 3 'condition or

22  understanding' is involved, so any incremental liability that attaches to tying claims does not

23  apply here."  3A P. Areeda, H. Hovenkamp & E. Elhauge, *Antitrust Law*, ¶ 776c, at p. 254 (2d ed.

24  2004).[1]

---

25

26  [1]      Citing another section of the treatise, plaintiffs assert (Opp. 15, n.9) that the treatise
    "analyze[s] in detail" how technological ties should be treated under section 1.  In fact, that

27  section of the treatise says nothing about applying section 1.  And the cases it cites are either
    section 2 cases or section 1 cases in which no tie was found.  10 P. Areeda, H. Hovenkamp & E.

28  Elhauge, *Antitrust Law,* ¶ 1757a, at p. 317 (2d ed. 2004).

1       Rather than citing any cases holding that section 1 governs alleged technological ties,

2  plaintiffs rely on cases in which the defendant coerced an actual agreement from a buyer to

3  purchase two products together (or not to buy from a competitor).  In *N. Pac. Ry.*, for example,

4  the defendant railroad entered into contracts with purchasers of land in which the purchasers

5  explicitly agreed to ship commodities only over the defendants' railroad lines.  356 U.S. at 5-6.

6  Similarly, in *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984), the tying

7  arrangement was a "contract between the hospital and its patients" that the patients would use

8  only the hospital's anesthesiology services.  *Id.* at 19 n.28.  These cases are inapposite here

9  because plaintiffs allege no such agreement.[2]

10       Plaintiffs' fallback position is that an agreement exists here because Apple supposedly

11  "forced iTMS purchasers to agree not to purchase a portable digital player from anyone other than

12  Apple."  Opp. 14.  The allegations to which they point, however (Cmplt. ¶¶ 41-44, 50) describe

13  only Apple's decision to adopt its own DRM, not any agreement between Apple and any

14  customer.

15       Contrary to plaintiffs' argument (Opp. 14), holding that section 1 does not apply here does

16  not give "special treatment" to technology companies.  Rather, it is simply applying to technology

17  companies the same antitrust rules that govern every other industry.  Section 1 applies only to

18  concerted action between separate entities, not to a single company's design of its own products,

19  whether those products are software or nuts and bolts.

---

[2]   *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1152 (9th Cir. 2001) (hospital required obstetrical patients to purchase cesarean section services from specified doctors); *Datagate, Inc. v. Hewlett-Packard Co.*, 60 F.3d 1421, 1427 (9th Cir. 1995) (Hewlett-Packard expressly required purchasers of software service to also purchase hardware service); *United States v. Microsoft Corp.*, 253 F.3d 34, 84 (D.C. Cir. 2001) (Microsoft contractually required licensees of Windows to also license Internet Explorer); *Systemcare, Inc. v. Wang Labs. Corp.*, 117 F.3d 1137, 1139 (10th Cir. 1997) ("[U]nder the WSS contract, a customer must subscribe to Wang's hardware support program in order to obtain Wang's software support services."); *Nobel Scientific Indus., Inc. v. Beckman Instruments, Inc.*, 670 F. Supp. 1313, 1324 (D. Md. 1986) (defendant allegedly coerced agreement to buy related software applications as a package—finding no tie because products were in fact separately available).

- 3 -

Reply Memo. ISO of Mot. for Jgmt. as to Rule of Reason Tying Claim, C-05-00037-JW

Plaintiffs' tying claim thus fails at the threshold.  Absent an actual agreement between separate entities, section 1 is inapplicable and the tying claim must be dismissed.

## II.   PLAINTIFFS' RULE OF REASON TYING CLAIM INDEPENDENTLY FAILS BECAUSE THEY HAVE NOT ALLEGED A TIE.

### A.   The Absence of a Tying Arrangement is Fatal to Plaintiffs' Rule of Reason Claim.

Plaintiffs' argument that their rule of reason treatment is proper here rests on a misunderstanding of why their *per se* claim failed.  They assert that *per se* analysis applies only to a "subset" of antitrust claims, and thus that "[t]ying arrangements that are not suitable for *per se* prohibition may still be addressed under a rule of reason test."  Opp. 3.  But this begs the question whether plaintiffs have alleged a tying arrangement in the first place.  The predicate for antitrust scrutiny of a tying arrangement—whether *per se* or rule of reason—is that a tying arrangement actually exist.  Without such a tie, there is nothing to which the rule of reason can be applied.

The cases plaintiffs cite as applying the rule of reason demonstrate the point.  In each case, *per se* treatment was denied for some reason other than the absence of the predicate conduct itself.  In *Jefferson Parish,* for example, the court rejected *per se* treatment because the defendant hospital lacked market power in the tying product market, not because it found that the hospital had not tied together its hospital and anesthesiology services. 466 U.S. at 26-29.  Similarly, in *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001), there was no dispute that Microsoft had contractually tied its Windows and Internet Explorer software products together.  *See id*. at 84 ("Microsoft required licensees of Windows 95 and 98 also to license IE as a bundle at a single price.").  Microsoft admitted as much. *Id.* at 85.  Thus, *per se* treatment was rejected not for lack of a tie, but because the court concluded it lacked sufficient familiarity with the software tying arrangement at issue there to apply *per se* treatment.[3]

_____

[3]   Similarly, in *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1 (1979), the defendants admittedly had fixed the price of the blanket music licenses they sold.  Thus, even though the Court concluded that *per se* treatment was inappropriate because the licenses could not exist at all without some price being set for them, the underlying price-fixing agreement remained to be evaluated under the rule of reason.

- 4 -

Reply Memo. ISO of Mot. for Jgmt. as to Rule of Reason Tying Claim, C-05-00037-JW

1    That is not the situation here.  The Ninth Circuit rejected *per se* treatment in *Foremost*

2    *Pro*—and this Court rejected it in this case—because it found no tying arrangement at all, not

3    because of any defect peculiar to *per se* treatment.  The Ninth Circuit ruled that no tie existed

4    because plaintiff had not alleged that "the purchase of the alleged tied products was required as a

5    condition of sale of the alleged tying products."  *Foremost Pro*, 703 F.2d at 542.  The only

6    allegation was that one product was a "prerequisite to practical and effective use of the" other

7    product.  *Id.*  As the Ninth Circuit concluded, an alleged "technological interrelationship among

8    complementary products" does not constitute the coercion required to state a tying claim.  *Id.*

9    This ruling is equally fatal to a rule of reason claim because coercion is required not

10   simply for *per se* tying claim, but to state any tying claim at all.  As shown in Apple's opening

11   memorandum (at 5-6), and as plaintiffs themselves admit (Opp. 5), the difference between *per se*

12   and rule of reason treatment in tying cases is not that coercion is required for one and not for the

13   other.  Rather, the *per se* rule requires proof that the defendant has market power over the tying

14   product, whereas the rule of reason requires no such proof.  Thus, had the Ninth Circuit denied

15   *per se* treatment in *Foremost Pro* because Kodak lacked market power, that would not have

16   disposed of a rule of reason claim against the same alleged tying arrangement.  But the Court's

17   ruling that plaintiffs had failed to allege coercion was fatal to any tying claim because, in the

18   absence of coercion, no tying arrangement exists at all.

19   Plaintiffs try to avoid this result by suggesting that the coercion required for a *per se* claim

20   differs from that required for a rule of reason claim.  However, they cite no authority supporting

21   this assertion.  They rely only on *Foremost Pro*'s holding that the plaintiff there had not alleged

22   "the coercion essential to a *per se* unlawful tying arrangement."  Opp. 9 (quoting *Foremost Pro*,

23   703 F.2d at 542).  Plaintiffs read into this reference to *per se* treatment that coercion has some

24   other meaning in rule of reason cases.  *Foremost Pro* spoke in terms of *per se* treatment only

25   because that was the theory asserted in the case.  There is no suggestion whatsoever that coercion

26   means one thing for *per se* purposes and another thing for rule of reason analysis.  And no other

27   court has held or even suggested that.

28

Reply Memo. ISO of Mot. for Jgmt. as to Rule
of Reason Tying Claim, C-05-00037-JW

1    Equally meritless is plaintiffs' related suggestion (Opp. 9) that rule of reason treatment

2    applies when "coercion is not demonstrated in the usual way"—*i.e.*, by an "express condition."

3    No case holds that choosing between *per se* or rule of reason analysis turns on how coercion is

4    proved.  Plaintiffs are confusing the test for deciding whether a tie exists in the first place with the

5    test for determining—*if* a tie is found—whether that tie should be evaluated under *per se* or rule

6    of reason analysis.  Coercion goes to whether a tie exists at all—*i.e.*, whether the defendant has

7    conditioned, by express contract provision or otherwise, the sale of one product on the purchase

8    of another.  Absent such conditioning, there is no tying arrangement to be evaluated because

9    "where the buyer is free to take either product by itself there is no tying problem." *Jefferson*

10   *Parish*, 466 U.S. at 12 n.17 (quoting *N. Pac. Ry. Co.*, 356 U.S. at 6 n.4).  The fatal flaw in

11   plaintiffs' claim is not that they have proved some coercion other than an express condition.

12   They have failed to prove any conditioned sale at all, which defeats their rule of reason claim just

13   as much as their *per se* claim.[4]

14   Nor is there any merit to plaintiffs' assertion that the Ninth Circuit held that Foremost had

15   stated a tying claim when the Court described Foremost's claim as "basically involv[ing] the so-

16   called technological tie."  703 F.2d at 542.  As this Court recognized, that was not a holding that

17   the alleged "so-called technological tie" constituted a tying arrangement within the meaning of

18   the antitrust laws.  Instead, the Ninth Circuit was simply describing the framework, or (or as this

19   Court described it) the "model for liability" (Dkt. 213, p. 8), into which plaintiffs were trying to

20   squeeze themselves.  The Ninth Circuit's actual holding was that the so-called technological tie

21

22   [4]    Plaintiffs try to distinguish *Advanced Computer Servs. of Mich., Inc. v. MAI Sys. Corp.*,
23   845 F. Supp. 356, 369 (E.D. Va. 1994), by asserting that the court found no tie because the
     defendant had not expressly or implicitly conditioned the sale of one product on another.  That,
24   however, is exactly the point.  The absence of conditioned sale was equally fatal to both the *per
     se* and the rule of reason claim in that case.  The same is true here because the alleged
25   technological relationship between iTS content and iPods is neither an explicit nor an implicit tie.

26   *Webb v. Primo's Inc.*, 706 F. Supp. 863 (N.D. Ga. 1988), does not help plaintiffs.  The
     court rejected the tying claim there because the plaintiff had not shown any coercion at all and
27   because, even if the plaintiff had shown coercion, the plaintiff failed to show either market power
     or any actual anticompetitive effect.  The court did not suggest that rule of reason treatment
28   would have been proper even absent coercion.

1     plaintiffs asserted was not an actionable tying arrangement at all because it lacked the required

2     element of coercion.

3         Plaintiffs' assertion (Opp. 6) that "[o]ther courts" have recognized the existence of

4     technological ties is also groundless.  They cite *Microsoft*, but that case involved an express

5     contractual tie.  *See supra*, p. 4.  It did not find a tie simply because two products were

6     technologically interrelated or worked better together than with competing products.  The only

7     other authority plaintiffs cite is the Areeda treatise.  But, as noted (*supra*, p. 2 & n.1), that treatise

8     makes clear that so-called technological ties do not involve any concerted action and that the

9     alleged conduct is subject to antitrust scrutiny, if at all, only under the monopolization standard of

10     section 2, not as a section 1 tying claim.

11         Plaintiffs' remaining efforts to distinguish *Foremost Pro* are similarly groundless.  They

12     assert (Opp. 7) that a technological tie can be found when one product is "less effective" without

13     the other.  But that is precisely the argument that *Foremost Pro* rejected.  As this Court

14     recognized, the claim in *Foremost Pro* was that Kodak's film "was incapable of being processed"

15     without Kodak's processing chemicals.  Dkt. 213, p. 6.  Thus, customers "necessarily" had to

16     purchase one with the other.  703 F.2d at 540.  Despite this, the Ninth Circuit held that no tying

17     arrangement existed.  Plaintiffs' claim here is even weaker because they do not—and cannot—

18     allege that iTS files are "incapable" of being used without iPods or that customers "necessarily"

19     must purchase one with the other.  *Foremost Pro*'s ruling thus applies *a fortiori*.

20         Likewise mistaken is plaintiffs' assertion that *Foremost Pro* is distinguishable because it

21     concluded that a technological relationship between two products does not foreclose competition.

22     The Ninth Circuit found that, rather than foreclosing competition, creating technologically related

23     products "increases competition by providing consumers with a choice of differing technologies,

24     advanced and standard, and by providing competing manufacturers the incentive to enter the new

25     product market by developing similar products of advanced technology."  *Foremost Pro*, 703

26     F.2d at 542.  This conclusion applies with equal force here.  Nothing prevents Apple's

27     competitors from competing with Apple's path-breaking products by seeking to develop their

28     own "similar products of advanced technology."  Protecting the incentives for such competition,

and the innovative products it creates, is a bedrock purpose of the antitrust laws.  *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407-08 (2004).

Plaintiffs also try to distinguish *Foremost Pro* by pointing to their allegations that Apple "deliberately used" its own proprietary DRM (FairPlay) and issued "software updates" to keep FairPlay proprietary when a competitor hacked into it.  Opp. 7 (citing Compl. ¶¶ 51-55).  But these allegations simply repeat plaintiffs' underlying claim that a tie exists because Apple's decision to use and maintain its own DRM has supposedly made an iPod necessary for "practical and effective use" of iTS content.  Just as the Ninth Circuit and this Court ruled that such allegations do not establish a tying arrangement for purposes of *per se* analysis, they also are insufficient for rule of reason purposes.  Plaintiffs assert (Opp. 7) that this "type of exclusionary conduct violates antitrust law."  But the cases they cite for this assertion only prove the point that no tying claim exists here.  None of the cases they cite was a tying case.  Instead, they involved only monopolization claims under section 2.  *See Xerox Corp. v. Media Scis. Int'l, Inc.,* 511 F. Supp. 2d 372, 390 (S.D.N.Y. 2007) (holding that "MS may proceed on its § 2 claims based on Xerox's alleged redesign and patenting and its loyalty rebates"); *In re IBM Peripheral EDP Devices Antitrust Litig.*, 481 F. Supp. 965, 971 (N.D. Cal. 1979) (plaintiff alleged that IBM "violated Section 2 of the Sherman Act which forbids the monopolization or attempted monopolization of any part of trade or commerce"), *aff'd sub nom. Transamerica Computer Co., Inc. v. IBM*, 698 F.2d 1377 (9th Cir. 1983).[5]

Finally, plaintiffs assert (Opp. 8) that tying law does not require that the two products be purchased "at the same time."  But that assertion does not help them because Apple does not

---

[5]     Apple vigorously denies that plaintiffs have a valid claim under section 2.  As will be shown in a subsequent motion addressed to that claim, a company such as Apple is not obligated when designing its products to make them as equally compatible with its competitors' products as with its own.  Plaintiffs' cases do not hold to the contrary, because they were addressed to the situation in which a firm with monopoly power redesigns its products that were originally compatible with competitors' complementary products to render those competitors' products incompatible.  *E.g., Xerox*, 511 F. Supp. 2d at 387-88 (Xerox allegedly changed an existing product to eliminate original compatibility); *IBM Peripheral*, 481 F. Supp. at 973 (same).  That is not what occurred here.  For present purposes, however, the dispositive point is that plaintiffs' allegations of product incompatibility fail to state a valid tying claim under section 1.

1   require that iTunes Store customers *ever* purchase an iPod—either at the time of their iTunes

2   Store purchase or at any other time.  Nor is it relevant that tying law does not require that the

3   buyer actually buy the second product so long as the buyer agrees not to buy the second product

4   from any other supplier.  Opp. 8 (citing *N. Pac. Ry.*, 356 U.S. at 5-6).  Apple does not require that

5   iTunes Store customers agree not to purchase competing digital players, and plaintiffs do not

6   allege otherwise.

7          **B.      Plaintiffs Have No Answer to Apple's Showing that Plaintiffs' Theory**

8                    **Conflicts with Basic Antitrust Policies.**

9          Apple's opening memorandum showed that expanding tying law to regulate product

10  design and interoperability would be unworkable and violate basic antitrust polices.  Plaintiffs

11  have no answer to this point.  They assert (Opp. 10) that rule of reason analysis gives the court the

12  "flexibility" to decide when a tie is anticompetitive.   But they do not suggest any feasible means

13  by which a company is to know when a technological interrelationship between its products rises

14  to the level of a tie.  They assert that courts are "competent" to make such determinations, but

15  they do not identify any test by which they are to do so.  Nor do they identify any means by

16  which a company could avoid liability under their theory other than by giving up its rights to use

17  its own proprietary software or otherwise ensuring that its products were compatible with

18  competing products.  They do not dispute that, under their theory, Apple could not have avoided

19  the alleged tie simply by offering the products separately.  Apple has done that from the

20  beginning.

21         Rather than respond to these points, plaintiffs only broadly assert that their "claim is well

22  within existing section 1 jurisprudence."  Opp. 12.  But they do not cite a single case in which

23  tying law has been applied to regulate the degree to which a company's products must

24  interoperate with its competitors' products.  Instead, they rely on cases that involved an express

25  contractual tie,[6] an agreement among competitors to perpetuate a patent monopoly[7] or to divide

26  _____

27  [6]      *Microsoft,* 253 F.3d at 84; *Times-Picayune Pub. Co. v.United States*, 345 U.S. 594, 597
    (1953) (contractual requirement that advertisers must purchase space in both morning and

28  evening editions); *City of Lafayette, La. v. Louisiana Power & Light Co.*, 435 U.S. 389, 403-04

                                                                                  (continued)

1  geographic markets,[8] and a monopolization case under section 2.[9]  None of these cases even

2  remotely supports applying tying law in this circumstance.

3  　　　　Contrary to plaintiffs' mischaracterization (Opp. 10), holding that tying law is

4  inapplicable here does not grant an "exemption" or "immunity."  Rather, it simply recognizes that

5  tying law does not apply in these circumstances.  It was developed to deal with the perceived evil

6  of a seller refusing to sell its products separately, not to regulate product interoperability.

7  　　　　Plaintiffs assert that their theory would not require Apple to deal with its competitors

8  because Apple supposedly took "several anticompetitive steps" beyond just not licensing its

9  software to others.  But the alleged additional steps to which plaintiffs point are nothing more

10  than Apple adopting its own proprietary DRM and issuing updates to it.  Given that the labels

11  required that Apple encode their music with DRM, the only way Apple could have avoided the

12  alleged anticompetitive effect supposedly created by these steps would have been to license its

13  proprietary DRM to competitors, or to license Microsoft's DRM.   No other method exists to

14  avoid the alleged incompatibility about which plaintiffs complain.  No court, however, has ever

15  found a tie based on a company's decision to not engage in such licensing with its competitors.

16  　　**C.**　　　**Plaintiffs' Failure to Allege Individual Coercion Also Defeats Their**

17  　　　　　　　**Rule of Reason Claim.**

18  　　　　 Apple's motion also demonstrated that, in addition to failing to allege a cognizable tie

19  between iTS content and iPods, these plaintiffs also do not have a tying claim under either *per se*

20  or rule of reason analysis because none of them alleges that he or she was coerced by any iTS

21

22  (1978) (contractual requirement that customers buying gas and water service must also purchase
electricity); *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 968 (9th Cir. 2008)

23  (defendant contractually required service station dealers to use defendant's credit card processing
services).  *Cf. Ungar v. Dunkin' Donuts of America*, Inc., 531 F.2d 1211 (3d Cir. 1976) (reversing

24  class certification because plaintiffs had not shown that a contractual tie existed; individual proof

25  would be required to show that the defendant refused to sell separately to individual purchasers).

26  [7]　　 *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187 (2d Cir. 2006).

27  [8]　　 *Los Angeles Memorial Coliseum Com'n v. National Football League*, 726 F.2d 1381 (9th
Cir. 1984).

28  [9]　　 *Xerox Corp.*, 511 F. Supp. 2d at 378.

Reply Memo. ISO of Mot. for Jgmt. as to Rule
of Reason Tying Claim, C-05-00037-JW

1  purchases into buying an iPod.  Because Apple had fully briefed this issue in its earlier Rule 12(c)

2  motion, Apple referred the Court to that earlier briefing.  Plaintiffs likewise rely on their prior

3  briefing on this issue.

4        The only additional point plaintiffs raise is to suggest that, even if their failure to allege

5  individual coercion defeats their *per se* claim, that failure carries "less weight" for their rule of

6  reason claim.  This is so, they assert, because rule of reason analysis is better suited to determine

7  whether the alleged incompatibility between iTS files and competing players is a "burdensome

8  term."  But the only alleged "burden" plaintiffs assert is that customers with a large number of

9  iTS purchases were locked into buying iPods rather than competing players.  None of these

10  plaintiffs, however, alleged that they bought their iPods because of any such lock-in.  Any such

11  alleged "burden" is therefore irrelevant to these plaintiffs.

12        Moreover, whether any alleged incompatibility "burdened" consumers by locking them in

13  has no relevance to whether *per se* or rule of reason treatment applies.  At best, any such burden

14  would go only to whether Apple had coerced customers by conditioning the sale of one product

15  on the other.  For the reasons discussed above (at 5-6), coercion goes to whether a tie exists at all,

16  not to whether the tie is subject to *per se* or rule of reason treatment.

17  **III.    PLAINTIFFS' STATE LAW TYING ALLEGATIONS SHOULD BE DISMISSED.**

18        Plaintiffs do not dispute that their state law tying claim is governed by the same standards

19  as their federal claim.   For the same reasons discussed above, the Court should accordingly

20  dismiss Count Four of plaintiffs' complaint, which asserts a tying claim under the Cartwright Act,

21  and likewise dismiss Counts Five and Six to the extent they also assert a claim for unlawful tying.

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For these reasons, judgment on the pleadings on the tying claims should be granted.

Dated:  September 14, 2009

Respectfully submitted,

Jones Day

By: /s/ Robert A. Mittelstaedt
    Robert A. Mittelstaedt

Counsel for Defendant
APPLE INC.

SFI-618686v1

- 12 -

Reply Memo. ISO of Mot. for Jgmt. as to Rule
of Reason Tying Claim, C-05-00037-JW