1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4

5                              )  C-05-00037-JW
                               )
6    "THE APPLE IPOD ITUNES    )  OCTOBER 5, 2009
     ANTITRUST LITIGATION".    )
7                              )
                               )
8                              )  PAGES 1 - 37
     _____  )
9

10

11

12          THE PROCEEDINGS WERE HELD BEFORE

13        THE HONORABLE UNITED STATES DISTRICT

14                  JUDGE JAMES WARE

15   A P P E A R A N C E S:

16

17   FOR THE PLAINTIFFS: COUGHLIN, STOIA, GELLER, RUDMAN
                          & ROBBINS
18                        BY:  BONNY SWEENEY
                               THOMAS R. MERRICK
19                        655 WEST BROADWAY
                          SUITE 1900
20                        SAN DIEGO, CALIFORNIA 92101

21

     FOR THE DEFENDANTS: JONES DAY
22                        BY:  ROBERT A. MITTELSTAEDT
                          555 CALIFORNIA STREET
23                        26TH FLOOR
                          SAN FRANCISCO, CALIFORNIA 94104

24

25   OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
                               CERTIFICATE NUMBER 8074

                                                          1

1    SAN JOSE, CALIFORNIA              OCTOBER 5, 2009

2                 P R O C E E D I N G S

3                 (WHEREUPON, COURT CONVENED AND THE

4    FOLLOWING PROCEEDINGS WERE HELD:)

5                 THE CLERK:  CALLING CASE NUMBER 05-0037,

6    THE APPLE IPOD ITUNES ANTITRUST LITIGATION.

7                 TWENTY MINUTES EACH SIDE.

8                 COUNSEL, PLEASE COME FORWARD AND STATE

9    YOUR APPEARANCES.

10                MS. SWEENEY:  GOOD MORNING, YOUR HONOR.

11   BONNY SWEENEY FOR THE PLAINTIFFS FROM COUGHLIN,

12   STOIA, GELLER, RUDMAN & ROBBINS AND WITH ME IS TOM

13   MERRICK FROM COUGHLIN, STOIA.

14                MR. MITTELSTAEDT:  GOOD MORNING OR

15   AFTERNOON.  BOB MITTELSTAEDT FOR THE DEFENDANT

16   APPLE.

17                THE COURT:  VERY WELL.  MR. MITTELSTAEDT,

18   THIS IS YOUR CLIENT'S MOTION?

19                MR. MITTELSTAEDT:  YES, YOUR HONOR.

20                THE CLAIM IN THIS CASE, YOUR HONOR, BOTH

21   FOR THE BENEFIT OF THE COURT AND THE FUTURE LAWYERS

22   IN THE AUDIENCE IS A CLAIM THAT APPLE'S IPOD HAS AN

23   ENHANCED UTILITY, AS YOUR HONOR DESCRIBED IT

24   EARLIER, IN WORKING WITH MUSIC AND VIDEOS SOLD FROM

25   APPLE'S ITUNES STORE.

                                                    2

1           THE PLAINTIFFS SAY THAT THAT ENHANCED

2     ABILITY TO PLAY ITUNES MUSIC CONSTITUTES A SECTION

3     1 TYING VIOLATION, SECTION 1 OF THE SHERMAN ACT,

4     AND ALSO CONSTITUTES MONOPOLIZATION OR ATTEMPTED

5     MONOPOLIZATION UNDER SECTION 2 OF THE SHERMAN ACT.

6           NOW, THE LAST TIME AROUND YOUR HONOR

7     RULED THAT THE TYING CLAIM UNDER SECTION 1 WHEN

8     ANALYZED UNDER THE PER SE TEST WAS INVALID AS A

9     MATTER OF LAW BECAUSE IPODS AND ITUNES MUSIC AND

10    VIDEO ARE SEPARATELY AVAILABLE.

11          AND BECAUSE THOSE TWO PRODUCTS ARE

12    SEPARATELY AVAILABLE, THE PLAINTIFFS FAILED TO

13    SATISFY THE THRESHOLD TEST FOR TYING CLAIMS, THAT

14    TEST BEING THAT THERE IS COERCION TO BUY ONE

15    PRODUCT WHEN YOU BUY THE OTHER OR SOME COURTS SAY

16    THAT THE SALE OF ONE PRODUCT IS CONDITIONED ON THE

17    PURCHASE OF THE OTHER.

18          THE ISSUE BEFORE THE COURT TODAY IS

19    WHETHER THAT SAME ANALYSIS APPLIES TO THE TYING

20    CLAIM WHEN JUDGED UNDER THE RULE OF REASON.

21          AND THIS IS THE MOTION THAT THE COURT

22    INVITED WHEN IT RULED ON THE PREVIOUS MOTION.

23          AS WE SET FORTH IN OUR MOTION, THE SAME

24    ANALYSIS DOES APPLY, AND I WANT TO JUST SUMMARIZE

25    BRIEFLY THE THREE REASONS FOR THAT.

                                                      3

1              THE BASIC ISSUE HERE, YOUR HONOR, IS

2      WHETHER THE THRESHOLD ELEMENT OF COERCION, OR A

3      CONDITIONED SALE, THAT THE SALE OF ONE PRODUCT IS

4      CONDITIONED ON THE PURCHASE OF ANOTHER, IS THAT

5      THRESHOLD REQUIREMENT, DOES IT VARY FROM A PER SE

6      TEST TO A RULE OF REASON TEST?

7              AND THE SHORT ANSWER IS THAT IT DOESN'T.

8      THE FIRST STEP IN ANY TYING CLAIM, WHATEVER TEST

9      IT'S ANALYZED UNDER, IS WHETHER THERE'S A

10     CONDITIONED SALE.

11             IF THERE'S NO CONDITIONED SALE, THAT IS,

12     IF THE PRODUCTS ARE SEPARATELY AVAILABLE, THAT IS

13     THE END OF THE INQUIRY.  THERE'S NO TYING CLAIM.

14             IT'S ONLY IF THERE'S A CONDITIONED SALE

15     THAT THEN THE LAWFULNESS OF THAT CONDITIONED SALE

16     IS DETERMINED BY ONE OR ANOTHER TEST.

17             AND THE COURTS HAVE FOUND THAT IF THERE'S

18     MARKET POWER AND THERE'S AN APPRECIABLE AMOUNT OF

19     COMMERCE THAT IS AFFECTED THEN IT'S PER SE

20     UNLAWFUL, UNDER THE PER SE TEST.

21             BUT IF THERE'S NO MARKET POWER, THEN THE

22     RULE IS UNDER THE REASON TEST AND THE COURT WEIGHS

23     THE COMPETITIVE AND ANTICOMPETITIVE PURPOSES OR THE

24     EFFECTS OF THE CONDITIONED SALE.

25             BUT THE KEY POINT IS THAT --

4

1        THE COURT:  IS THAT RIGHT?  THAT LAST

2    ONE -- I'VE BEEN FOLLOWING YOU UP UNTIL NOW.

3        MR. MITTELSTAEDT:  OKAY.

4        THE COURT:  AND SO IF THERE IS NO MARKET

5    POWER THEN YOU USE THE RULE OF REASON?

6        MR. MITTELSTAEDT:  THE COURTS'S

7    DECISIONS -- I'M NOT REFERRING TO THIS COURT'S

8    DECISIONS, BUT THE COURT'S DECISIONS GENERALLY ARE

9    UNCLEAR ON THE EXTENT OF MARKET POWER THAT IS

10   NEEDED EITHER FOR THE PER SE TEST OR THE RULE OF

11   REASON TEST.

12       AND INDEED IN THE HONEYWELL CASE THAT WE

13   CITED IN OUR MOTION, THE COURT FOUND THAT THE TWO

14   TESTS HAVE REALLY MERGED.

15       BECAUSE IN SOME OTHER AREAS OF ANTITRUST

16   LAWS THE PER SE TEST IS VERY STRINGENT, AND YOU

17   DON'T INQUIRE INTO ANYTHING.  YOU JUST INQUIRE AS

18   TO WHETHER THERE WAS AN AGREEMENT TO FIX PRICES,

19   FOR EXAMPLE.

20       AND WITH AN AGREEMENT TO FIX PRICES

21   THAT'S PER SE UNLAWFUL, REGARDLESS OF MARKET POWER

22   OR ANYTHING ELSE.

23       BUT AS THE PER SE TEST HAS DEVELOPED IN

24   THE TYING AREA, THE COURTS PERMIT THE DEFENDANTS TO

25   OFFER JUSTIFICATIONS, BUSINESS JUSTIFICATIONS, FOR

5

1    EXAMPLE, AND SO THE HONEYWELL CASE SAYS THAT THOSE

2    TWO TESTS HAVE ESSENTIALLY MERGED.

3            THAT'S A FURTHER REASON BY THE WAY FOR

4    GRANTING THIS MOTION THAT THERE'S VERY LITTLE

5    DIFFERENCE BETWEEN THE RULE OF REASON AND PER SE

6    TEST AS TO THE ELEMENTS ONCE YOU GET BEYOND A

7    CONDITIONED SALE.

8            BUT TO THE EXTENT THAT THERE'S A

9    DIFFERENCE IN THE PER SE AND RULE OF REASON TEST IN

10   DETERMINING THE LEGALITY OF A CONDITIONED SALE,

11   THEY BOTH DEPEND ON THIS THRESHOLD SHOWING OF A

12   CONDITIONED SALE.

13           THE COURT:  NOW, THE CASE THAT YOU CITED

14   THE LAST TIME AND THE ONE THAT I KEPT GOING BACK TO

15   HERE IS THIS FOREMOST AND KODAK CASE.

16           KODAK CAME OUT WITH THE 110 CAMERA.  THE

17   FILM, THE PAPER, THE CHEMICALS WERE DIFFERENT THAN

18   HAD BEEN PREVIOUSLY ON THE MARKET.  YOU DID NOT

19   HAVE TO BUY ALL OF THOSE SUPPLIES.  THERE WAS NO

20   COERCION.

21           BUT IN ORDER TO EFFECTIVELY USE THE

22   CAMERA YOU HAD TO BUY FILM, AND THE FILM ONLY FIT

23   THAT CAMERA.  AND IN ORDER TO SEE THE -- THIS WAS

24   WAY BEFORE DIGITAL PHOTOGRAPHY, OF COURSE.

25           BEFORE YOU COULD ACTUALLY SEE THE RESULT

6

1    OF YOUR TAKING PHOTOGRAPHS, YOU HAD TO GO THROUGH

2    THIS DEVELOPMENT PROCESS THAT ALSO WERE SUPPLIES

3    THAT YOU COULD ONLY GET FROM KODAK.

4           WHY ISN'T THAT LIKE THIS?

5           MR. MITTELSTAEDT:  WELL, IN THAT CASE --

6    I MEAN, I THINK THIS IS A CASE WHERE THERE IS EVEN

7    LESS COERCION BECAUSE I THINK AS A MATTER OF RECORD

8    THAT THE IPOD WILL WORK WITHOUT ITUNES MUSIC.  IT

9    WILL WORK TO PLAY YOUR CD COLLECTION, FOR EXAMPLE.

10   IT WILL WORK TO PLAY MUSIC THAT YOU HAVE BURNED AND

11   RIPPED.

12          LIKEWISE ITUNES MUSIC WILL PLAY ON

13   DEVICES OTHER THAN AN IPOD.  IT WILL PLAY ON A

14   COMPUTER, FOR EXAMPLE.  AND IF YOU BURN IT TO A CD

15   IT WILL PLAY ON A CAR RADIO.

16          SO UNLIKE THE FILM AND THE CAMERA IN THE

17   FOREMOST CASE -- AND IN THAT CASE, AS I RECALL IT,

18   YOUR HONOR, YOU HAD TO USE THE FILM IN THE CAMERA.

19   IT WOULDN'T WORK WITH SOME OTHER FILM.

20          SO WHAT THE COURT FOUND IN THAT CASE --

21   AND I'M READING FROM 542.  "IN THE ABSENCE OF AN

22   ALLEGATION THAT THE PURCHASE OF THE ALLEGED TIED

23   PRODUCTS WAS REQUIRED AS A CONDITION OF SALE OF THE

24   ALLEGED TYING PRODUCTS," SO IN THE ABSENCE OF AN

25   ALLEGATION THAT ONE WAS CONDITIONED ON THE OTHER,

7

1    "RATHER THAN AS A PREREQUISITE TO THE PRACTICAL AND

2    EFFECTIVE USE OF THE TYING PRODUCTS, FOREMOST

3    COMPLAINED IT FAILED TO PLEAD THE COERCION

4    ESSENTIAL TO A PER SE UNLAWFUL TYING ARRANGEMENT.

5            AND IF THAT'S TRUE IN THAT CASE WHERE YOU

6    NEEDED TO USE THE TWO AS A PRACTICAL AND EFFECTIVE

7    MEANS, HERE YOU DON'T NEED TO DO THAT.

8            THE COURT:  BUT THAT'S WHERE I START OUT.

9            IN OTHER WORDS, THAT CASE SAID, AND I

10   AGREE WITH YOU, THEY HELD THAT THERE WAS NO PER SE

11   VIOLATION BECAUSE THERE WAS NO COERCION BECAUSE YOU

12   DIDN'T HAVE TO BUY ALL OF THOSE THINGS.  THEY WERE

13   JUST COMPATIBLE.

14           THEY WERE TECHNOLOGICALLY TIED AS THE

15   LANGUAGE IN THE CASE SUGGESTS BUT THE COURT THERE

16   LEFT OPEN THE POSSIBILITY OF A RULE OF REASON

17   ANALYSIS.

18           AND SO THAT BECOMES THE ISSUE.  WHY WOULD

19   THE COURT LEAVE OPEN RULE OF REASON WITHOUT A

20   COERCIVE RELATIONSHIP UNLESS RULE OF REASON WAS

21   AVAILABLE BASED ON A NONCOERCIVE RELATIONSHIP?

22           NOW, IT COULD BE THAT THE COURT JUST LEFT

23   IT OPEN BECAUSE SOMETIMES I SAY I'M NOT GOING TO

24   ADDRESS IT AND IT'S NOT BECAUSE I THOUGHT ABOUT IT

25   AND I THINK IT HAS VIABILITY BUT IT'S JUST I

8

1    HAVEN'T ADDRESSED IT.

2            BUT OTHER TIMES THE COURTS SAY ALTHOUGH

3    -- BECAUSE THERE'S LANGUAGE IN THE CASES THAT IF

4    ALL OF THE ELEMENTS ARE NOT AVAILABLE FOR A PER SE

5    VIOLATION, YOU NEVERTHELESS CAN STATE A RULE OF

6    REASONS.

7            WELL, WHAT ELEMENTS ARE THERE?

8            AND SO THE CASES DON'T SAY -- AT LEAST I

9    HAVEN'T READ A CASE THAT SAYS THAT IF THERE IS NO

10   COERCIVE TIE, YOU CAN'T DO A RULE OF REASON

11   ANALYSIS AND THAT SEEMS TO ME WHAT I NEED TO FIND

12   IN ORDER TO GO YOUR WAY ON THIS MOTION.

13           MR. MITTELSTAEDT:  OKAY.  AND I THINK I

14   CAN PROVIDE THAT IN THIS WAY, YOUR HONOR:  FIRST OF

15   ALL, I AGREE THAT IF IN FOREMOST PRO THE COURT HAD

16   SAID THAT THERE IS NO COERCION, THE PLAINTIFFS

17   DON'T SATISFY COERCION FOR THE PER SE TEST AND NOW

18   WE'RE GOING TO GO ON TO SEE IF THEY SATISFY SOME

19   LESSER SHOWING OF COERCION FOR A RULE OF REASON,

20   THAT WOULD BE ONE THING.

21           BUT THE COURT DIDN'T DO THAT.  AND THE

22   REASON IT DIDN'T DO THAT IS THAT IT WAS NOT

23   SUGGESTING THAT THERE WAS A DIFFERENT STANDARD FOR

24   COERCION.  IT SAID, AND THIS IS AT 542 -- 541, SO A

25   PAGE BEFORE.  "FOREMOST HAS NOT CHALLENGED THE

9

1    ALLEGED TYING ARRANGEMENT UNDER THE RULE OF

2    REASON."

3                SO THE DISPOSITIVE QUESTION IS WAS IT A

4    PER SE VIOLATION?

5                SO THAT'S JUST LIKE ANY CASE WHERE YOUR

6    HONOR SAYS, I FIND THAT THE FACTS DON'T SATISFY

7    WHAT THE PLAINTIFFS HAVE ALLEGED.

8                THERE'S NO IMPLICATION OR SUGGESTION

9    THERE THAT IT WOULD BE DIFFERENT IF THEY HAD

10   ALLEGED SOMETHING ELSE.

11               THE COURT:  WELL, DO YOU -- LET ME

12   INTERRUPT.

13               DO YOU HAVE A CASE WHICH SAYS EXPLICITLY

14   THAT THE LACK OF A COERCIVE TIE AND WHERE THE

15   RESTRICTED CONDUCT IS TYING, OR THE LACK OF A

16   COERCIVE TIE DEPRIVES THE PLAINTIFF OF THE ABILITY

17   TO STATE A SECTION 1 CLAIM UNDER THE RULE OF

18   REASON?

19               MR. MITTELSTAEDT:  YES.

20               THE COURT:  GIVE ME THAT CASE.

21               MR. MITTELSTAEDT:  I HAVE TWO CASES.  ONE

22   MORE EXPLICIT THAN THE OTHER.

23               THE COURT:  I'LL TAKE TWO.

24               MR. MITTELSTAEDT:  THE FIRST ONE IS

25   NORTHERN PACIFIC, THE SUPREME COURT CASE.  AND

                                                      10

1       THAT'S THE CASE THAT IS CITED IN THE COURT'S --

2       YOUR HONOR'S PREVIOUS DECISION, AND IT SAYS "WHERE

3       THE BUYER IS FREE TO TAKE EITHER PRODUCT BY ITSELF,

4       THERE IS NO TYING PROBLEM."

5               THE COURT:  I KNOW THAT LANGUAGE, AND I

6       AGREE WITH THAT.

7               IN OTHER WORDS, THAT'S JUST THE GENERAL

8       STATEMENT THAT THERE'S NO TIE IF THE PRODUCTS ARE

9       NOT TIED, BUT THAT DOESN'T STATE, AS I INVITED

10      YOU GIVE ME A CASE THAT SAID IF THERE IS NO TIE,

11      THEN YOU CAN'T ANALYZE A SECTION 1 CLAIM UNDER THE

12      RULE OF REASON.

13              MR. MITTELSTAEDT:  I'LL GIVE YOU THE

14      SECOND CASE, BUT I'M GOING TO COME BACK TO THAT ONE

15      BECAUSE I THINK IT'S PRETTY GOOD.

16              THE COURT:  ALL RIGHT.

17              MR. MITTELSTAEDT:  THE SECOND ONE IS

18      ADVANCED COMPUTER, AND THAT'S CITED IN OUR BRIEF.

19      IT'S 845 F.SUPP 356.

20              AND THERE THE COURT SAYS, AND IT'S

21      SUMMARIZING ITS DISCUSSION, BECAUSE PLAINTIFFS

22      CANNOT SHOW THAT THE LICENSING OF THE SOFTWARE AT

23      ISSUE THERE WAS EXPRESSLY OR IMPLICITLY CONDITIONED

24      UPON THE PURCHASE OF THE COMPUTER EQUIPMENT

25      SERVICING AT ISSUE THERE, THEY FAILED TO RAISE A

                                                    11

1    GENUINE ISSUE OF MATERIAL FACT REGARDING THE

2    PRESENCE OF A TYING ARRANGEMENT.

3              ACCORDINGLY, PLAINTIFFS CANNOT MAINTAIN A

4    PER SE OR A RULE OF REASON TYING CLAIM.

5              THE COURT:  AH.  I DIDN'T SEE THAT CASE,

6    THAT LANGUAGE.

7              SO WHERE AM I GOING TO FIND THAT?  ON

8    WHAT PAGE?

9              MR. MITTELSTAEDT:  PAGE 369.

10             THE COURT:  ALL RIGHT.  NEXT.

11             MR. MITTELSTAEDT:  AND, YOUR HONOR, THOSE

12   ARE THE -- OR THAT IS THE EXPLICIT REFERENCE THAT

13   WE HAVE BEEN ABLE TO FIND.  BUT IT STANDS TO REASON

14   BECAUSE ALL OF THE CASES DESCRIBE THE COERCION

15   ELEMENT AS THE THRESHOLD ELEMENT IN THE SAME TERMS.

16             AND THERE JUST ISN'T A COURT THAT SAYS

17   THAT THE TEST IS DIFFERENT DEPENDING ON WHETHER YOU

18   APPLY RULE OF REASON OR PER SE.

19             THE COURT:  LET ME INTERRUPT.  IF THAT

20   CASE DOES BEAR YOU OUT, AT LEAST AND THAT'S A

21   DISTRICT COURT CASE, BUT THAT HELPS.

22             LET ME HEAR FROM YOUR OPPONENT.

23             JUST ONE MOMENT.

24             (PAUSE IN PROCEEDINGS.)

25             GO AHEAD, COUNSEL.

                                                    12

1          MS. SWEENEY:  FIRST I'D LIKE TO TALK A

2     LITTLE BIT ABOUT THE COERCION ELEMENT.  APPLE'S

3     COUNSEL HAS SAID THAT THE PLAINTIFF'S COUNSEL HAS

4     NOT PLEADED COERCION HERE.  AND AS YOUR HONOR WILL

5     RECALL FROM ALL OF THE BRIEFING AND ARGUMENT THAT

6     HAS PRECEDED THIS ONE, THE QUESTION IS WHETHER THE

7     KIND OF IMPLICIT COERCION THAT THE PLAINTIFFS HAVE

8     ALLEGED IS SUFFICIENT FOR A RULE OF REASON TYING

9     CLAIM, AND WE CONTEND IT IS.

10          AND WHEN I SAY "IMPLICIT," I'M REFERRING

11     TO THE FACT THAT A CONSUMER CAN BUY ITUNES MUSIC

12     AND UP UNTIL RECENTLY COULD NOT DIRECTLY PLAY BACK

13     THAT MUSIC ONTO ANY PORTABLE DEVICE OTHER THAN AN

14     IPOD DEVICE.

15          WHEREAS THE CONDITIONING IS NOT EXPRESSED

16     IN THE SENSE THAT APPLE DIDN'T PLACE CONTRACTUAL

17     RESTRICTIONS ON THE CONSUMER AT THE TIME OF

18     PURCHASE, IT IS NONETHELESS THE KIND OF IMPLICIT

19     COERCION THAT HAS BEEN RECOGNIZED BY OTHER CASES.

20          AND YOUR HONOR IS VERY FAMILIAR WITH THE

21     MOORE CASE FROM THE NINTH CIRCUIT WHICH HELD THAT

22     IMPLICIT COERCION CAN SATISFY THE REQUIREMENT FOR A

23     TYING CLAIM WHERE AN APPRECIABLE NUMBER OF BUYERS

24     HAVE BEEN FORCED TO ACCEPT A BURDENSOME CONTRACTUAL

25     RESTRICTION OR OTHER KIND OF RESTRICTION.

                                                        13

1           AND IN ADDITION, THE NORTHERN PACIFIC

2   CASE WHICH APPLE'S COUNSEL RELIED ON AND YOUR HONOR

3   CITED IN THE ORDER ALSO STANDS FOR THE PROPOSITION

4   THAT, THAT COERCION NEED NOT IN EVERY CASE BE

5   EXPRESSED IN ORDER TO SATISFY A TYING CLAIM.

6           THE NORTHERN PACIFIC CASE SAYS THAT A

7   TYING ARRANGEMENT MAY BE DENIED AS AN AGREEMENT BY

8   A PARTY TO SELL ONE PRODUCT BUT ONLY ON THE

9   CONDITION THAT THE BUYER ALSO PURCHASE A DIFFERENT

10  PRODUCT OR AT LEAST IT REQUIRES THAT HE, THAT HE

11  WILL NOT PURCHASE THAT PRODUCT, THAT IS THE SECOND

12  PRODUCT, FROM ANY OTHER SUPPLIER.

13          AND THAT'S THE KIND OF IMPLICIT COERCION

14  THAT PLAINTIFFS ARE ALLEGING IN THIS CASE.

15          BECAUSE ONCE A CONSUMER HAS PURCHASED

16  ITUNES MUSIC, AND IT CANNOT THEN PORTABLY PLAY

17  THOSE SONGS ON ANY OTHER DEVICE BESIDES AN IPOD,

18  THAT CONSUMER IS LOCKED IN.

19          THE COURT:  NOW, THIS IS A MOTION FOR

20  JUDGMENT ON THE PLEADINGS?

21          MS. SWEENEY:  RIGHT.

22          THE COURT:  AND I'VE TRIED TO ADHERE TO

23  THE RULE THAT I HAVE TO ACCEPT YOUR ALLEGATIONS AS

24  TRUE BECAUSE YOU'RE THE NONMOVING PARTY.  AND TO

25  THE EXTENT THAT I HAVE ALLEGATIONS ON THE OTHER

14

1    SIDE, I HAVE TO CONSIDER THAT THEY ARE UNDISPUTED.

2          BUT THERE ARE A BUNCH OF ALLEGATIONS

3    BETWEEN THE TWO SIDES THAT ARE NOT DISPUTED.

4          YOU DON'T DISPUTE THEN THAT THESE

5    PRODUCTS ARE SOLD SEPARATELY AND THAT IN THE TERMS

6    OF PURCHASE OF ONE, THERE'S NO REQUIREMENT THAT YOU

7    PURCHASE THE OTHER?

8          MS. SWEENEY:  THAT'S CORRECT, YOUR HONOR.

9          THE COURT:  AND IT IS UNDISPUTED THAT

10   IPODS WERE ON THE MARKET LONG BEFORE THERE EVER WAS

11   AN ITUNES?

12         MS. SWEENEY:  THEY WERE ON THE MARKET FOR

13   APPROXIMATELY 18 MONTHS BEFORE ITUNES.

14         THE COURT:  EIGHTEEN MONTHS?  I THOUGHT

15   IT WAS LONGER, BUT LET'S ASSUME IT WAS 18 MONTHS.

16   THAT'S STILL A CONSIDERABLE PERIOD OF TIME WHEN YOU

17   HAVE AN IPOD AND IT HAS A FUNCTION, IT HAS A USE

18   THAT IS INDEPENDENT OF BUYING ON-LINE MUSIC.

19         MS. SWEENEY:  THAT'S A GOOD POINT, YOUR

20   HONOR.  AND I WOULD LIKE TO DIRECT YOUR HONOR'S

21   ATTENTION TO UNITED STATES VERSUS MICROSOFT, THE

22   SECOND CIRCUIT DECISION WHICH IS THE ONLY COURT OF

23   APPEAL DECISION OR REALLY ANY DECISION THAT I'M

24   AWARE OF WHERE A COURT ACTUALLY WENT THROUGH A

25   DETAILED ANALYSIS OF A TYING CLAIM AND SAID THAT

15

1    THIS IS A TECHNOLOGICAL TIE, THIS IS ONE WHERE THE

2    RULE OF REASON AS OPPOSED TO THE PER SE RULE OUGHT

3    TO APPLY.

4           NOW, IN THAT CASE THE UNITED STATES

5    GOVERNMENT AND THE STATES ALLEGED THAT MICROSOFT --

6    THERE WERE A NUMBER OF CLAIMS IN THE CASE.  THERE

7    WAS A MONOPOLIZATION CLAIM, AND THERE WAS ALSO A

8    TYING CLAIM.

9           AND THE GOVERNMENT ALLEGED THAT

10   MICROSOFT -- THE TYING PRODUCT IN THAT CASE WAS

11   WINDOWS, THE WINDOWS OPERATING SYSTEM.

12          AND MICROSOFT TIED TO WINDOWS THE BROWSER

13   OR INTERNET EXPLORER WHICH MANY VIEWED AS AN

14   INFERIOR PRODUCT TO ITS COMPETITORS SUCH AS

15   NETSCAPE.

16          AND IN THAT CASE, YOUR HONOR, THE WINDOWS

17   OPERATING SYSTEM AND THE BROWSER WERE ALWAYS

18   AVAILABLE SEPARATELY.  THEY WERE USED FOR SEPARATE

19   PURPOSES.

20          MANY PEOPLE ONLY BOUGHT THE WINDOWS

21   OPERATING SYSTEM AND DIDN'T BUY THE BROWSER AND

22   VICE VERSA.  AND IN THAT CASE WHICH APPLE TRIED TO

23   DISTINGUISH ON THE GROUNDS THAT THERE WAS EXPRESSED

24   CONDITIONING.  THAT EXPRESSED CONDITIONING ONLY

25   APPLIED TO A PORTION OF THE MARKET.

16

1           SO WE HAD CONTRACTUAL RESTRICTIONS IN THE

2    CONTRACTS BETWEEN MICROSOFT AND ITS OEM'S.  AND

3    THOSE RESTRICTIONS PROHIBITED THE OEM'S FROM

4    ALLOWING THE USER TO SEE ANY POTENTIAL BROWSERS

5    OTHER THAN INTERNET EXPLORER AND IT ALSO --

6           THE COURT:  WELL, JUST ON THE TYING SIDE

7    OF THAT -- THERE'S A DIFFERENCE IN TECHNOLOGICAL

8    TIES WHERE TWO PRODUCTS ARE INTEGRATED AS ONE.

9           THAT CASE INVOLVED A CIRCUMSTANCE WHERE

10   WHEN YOU BOUGHT WINDOWS, YOU ALREADY HAD TO BUY THE

11   EXPLORER, THE BROWSER.  IT WAS ALSO INTEGRATED

12   WITHIN THE PRODUCT, WASN'T IT?

13          MS. SWEENEY:  WELL, THAT'S ONLY TRUE IF

14   YOU BOUGHT --

15          THE COURT:  IS THAT TRUE?

16          MS. SWEENEY:  NO, NOT FOR EVERY USE OF IE

17   OR FOR WINDOWS, YOUR HONOR.

18          THE COURT:  WASN'T THAT A CASE WHERE THE

19   ARGUMENT THERE WAS A REASON TO INTEGRATE THE

20   PRODUCTS AND THEY WERE PROPERLY SOLD AS ONE?

21          MS. SWEENEY:  AND THAT ARGUMENT WAS

22   REJECTED BY THE DISTRICT COURT AND THE COURT OF

23   APPEALS.

24          THE COURT:  AND I LIKE WHEN PEOPLE GO

25   "AND."  IS IT YES OR NO, IS THAT THE ALLEGATION?

                                                    17

1          MS. SWEENEY:  THAT WAS MICROSOFT'S

2     DEFENSE, ONE OF ITS DEFENSES.

3          THE COURT:  BUT THIS IS DIFFERENT IN THE

4     SENSE THAT YOU CAN GO TO A STORE AND BUY AN IPOD

5     AND NEVER SUBSCRIBE TO ITUNES; CORRECT?

6          MS. SWEENEY:  BUT THAT WAS ALSO TRUE IN

7     THE CASE OF WINDOWS, YOUR HONOR.

8          THE COURT:  IS THAT CORRECT?  YES OR NO?

9          MS. SWEENEY:  THAT IS CORRECT.

10          THE COURT:  AND YOU CAN GO TO ITUNES AND

11     DOWNLOAD MUSIC AND PLAY IT AND IT WILL PLAY

12     FUNCTIONALLY WELL WITHOUT EVER BUYING AN IPOD;

13     CORRECT?

14          MS. SWEENEY:  THAT'S CORRECT.

15          THE COURT:  SO ISN'T THE TECHNOLOGICAL

16     TIE INVOLVED HERE, IT IS TRUE THAT TO DIRECTLY

17     DOWNLOAD INTO A PORTABLE PLAYER, A PORTABLE DIGITAL

18     PLAYER, IT WILL ONLY PORT DIRECTLY INTO AN IPOD,

19     BUT YOU CAN THROUGH A SERIES OF STEPS PLAY IT ON A

20     PORTABLE PLAYING, YOU JUST CAN'T DO IT DIRECTLY;

21     CORRECT?

22          MS. SWEENEY:  JUST AS I AS A COMPUTER

23     USER COULD HAVE GONE OUT AND PURCHASED WINDOWS

24     OPERATING SYSTEM AND NEVER HAD ANY INTEREST IN

25     MICROSOFT'S BROWSER PRODUCT.  AND I DIDN'T HAVE TO

18

```
1    BUY IT.
2              THE COURT:  WELL, I'M JUST SAYING; IS
3    THAT CORRECT?  AND IF THAT IS CORRECT, THEN THE
4    QUESTION BECOMES IS IT A VIOLATION TO MAKE IT MORE
5    CONVENIENT OR TO GET AN OPTIMUM BENEFIT BETWEEN TWO
6    PRODUCTS TO TIE THEM SO THAT THEY ARE COMPATIBLE?
7    AND THAT'S WHY I'VE BEEN LOOKING AT THESE CASES
8    SUCH AS FOREMOST BECAUSE THERE AREN'T A LOT OF
9    TECHNOLOGICAL CASES OUT THERE WHERE TWO PRODUCTS
10   ARE MADE COMPATIBLE.
11             IS THERE A CASE WHERE THE COURT HAS HELD
12   THAT TWO PRODUCTS THAT ARE SOLD SEPARATELY BUT
13   WHICH ARE MADE TECHNOLOGICALLY COMPATIBLE HAVE BEEN
14   HELD TO BE A TIE?
15             MS. SWEENEY:  THE FOREMOST CASE I THINK
16   AS YOUR HONOR POINTED OUT PROVIDES THE CLOSEST
17   EXAMPLE.
18             AND IN THAT CASE THE COURT REJECTED THE
19   PLAINTIFF'S CLAIMS, AND I THINK THAT CASE IS VERY
20   ILLUSTRATIVE OF WHY PLAINTIFFS' CLAIMS IN THIS CASE
21   ARE SUFFICIENT.
22             NOW, IN THAT CASE KODAK MANUFACTURED THE
23   110 CAMERA AND IT CAME OUT WITH THE COMPLEMENTARY
24   PRODUCTS, THE FILM, ET CETERA, ET CETERA.
25             AND THE PLAINTIFF COMPLAINED THAT, GEE,
```

19

1    WE DIDN'T KNOW YOU WERE GOING TO COME OUT WITH THIS

2    PRODUCT.  WE HAVEN'T HAD TIME TO PRODUCE OUR OWN

3    VERSION OF COMPLEMENTARY PRODUCTS.

4              AND THE COURT SAID, WELL, YOU HAVEN'T

5    ALLEGED ENOUGH FOR A PER SE TIE.

6              BUT I QUESTION WHETHER THE PLAINTIFF IN

7    THAT CASE EVEN HAD ENOUGH FOR A RULE OF REASON TIE

8    AND HERE'S WHY:  AS THE COURT POINTED OUT, THE

9    FORECLOSURE IN THE TIED PROVIDE MARKET, AND

10   ESPECIALLY WHEN YOU'RE LOOKING AT A CASE OF RULE OF

11   REASON YOU HAVE TO LOOK AT ANTICOMPETITIVE EFFECTS.

12   YOU HAVE TO LOOK AT THE TIED MARKET.  WAS THERE

13   FORECLOSURE IN THE TIED MARKET?

14             AND THE WAY THAT KODAK ENGINEERED ITS NEW

15   PRODUCT WITH ITS COMPLEMENTARY PRODUCTS, THERE WAS

16   NO REAL FORECLOSURE IN THE TIED PRODUCT MARKET.

17   ALL YOU HAD WAS A TIME LAG.

18             AND THE COURT SAID, ANY SHORT RUN ABSENCE

19   OF COMPETITION IN THE MARKET FOR THE

20   TECHNOLOGICALLY TIED PRODUCT COULD JUST AS LIKELY

21   BE DUE TO THE UNWILLINGNESS OR INABILITY OF

22   COMPETITORS TO DEVOTE SUFFICIENT ECONOMIC RESOURCES

23   TO MATCH THE PACE OF TECHNOLOGICAL DEVELOPMENT SET

24   BY THE INDUSTRY'S LEADER.

25             NOW, HERE WE DON'T HAVE THAT SITUATION.

20

1    WE DON'T HAVE A SITUATION WHERE RIVAL MAKERS OF

2    PORTABLE PLAYERS CAN GO OUT AND MAKE A PRODUCT THAT

3    WILL PLAY ITUNES DIRECTLY.

4              AND, IN FACT, APPLE, AND THIS IS ALLEGED

5    IN NUMEROUS ALLEGATIONS IN OUR COMPLAINT, APPLE

6    DELIBERATELY DESIGNED ITS SYSTEM WITH THE

7    PROPRIETARY FAIR PLAY DRM SO THAT ITS RIVALS IN THE

8    PLAYER MARKET COULDN'T DO THAT.

9              AND ONCE THOSE RIVALS, THOSE COMPETITORS

10   OF APPLE IN THE PLAYER MARKET DID FIGURE OUT A WAY

11   THAT THEY COULD DIRECTLY PLAY ITUNES MUSIC ON ITS

12   PLAYERS, WHAT DID APPLE DO?  THEY IMMEDIATELY

13   ISSUED A SOFTWARE UPDATE AND KNOCKED THAT SYSTEM

14   OUT.  AND THEY DID IT AGAIN.

15             THE COURT:  AND I LEFT OPEN YOUR MONOPOLY

16   CLAIM BECAUSE I THINK THAT THAT MIGHT SPEAK TO THAT

17   CLAIM, BUT EVEN AS YOU DESCRIBE THE RULE OF REASON,

18   YOU EXPRESS IT IN TERMS OF AN APPRECIABLE --

19   AFFECTING APPRECIABLE COMPETITION IN THE TIED

20   PRODUCT MARKET.

21             SO YOU HAVE GOT TO HAVE A TIED PRODUCT

22   BEFORE YOU ANALYZE IT UNDER RULE OF REASON.

23             IF I FIND THAT THERE'S NO TIED PRODUCT,

24   THAT'S THE PROBLEM THAT I FACE.  I HAVE FOUND IN MY

25   PREVIOUS ORDER THAT THERE WAS NO TYING BECAUSE

21

1      THERE IS NO TIED -- THERE'S NO TYING PRODUCT,

2      THERE'S NO TIED PRODUCT.

3                CONSUMERS CAN BUY EACH INDEPENDENTLY AND

4      THERE'S NO COERCION.

5                AND UNLESS I BACK OFF FROM THAT AND I NOW

6      SAY I NOW RECOGNIZE THAT A TECHNOLOGICAL

7      COMPATIBILITY IS A TIE, THEN I CAN'T GET TO A RULE

8      OF REASON ANALYSIS.

9                SO I WOULD HAVE TO -- YOU WOULD HAVE TO

10     ASK ME TO SAY FIND A TIE BECAUSE THAT'S THE ONLY

11     RESTRICTION THAT YOU'RE ASSERTING IN THESE TWO

12     CLAIMS.  YOU CALL THEM TYING CLAIMS.

13                IF I SAID THERE IS NO TIE, HOW DO I GET

14     TO A RULE OF REASON ANALYSIS?

15                IS THERE SUCH A THING AS A RULE OF REASON

16     ANALYSIS AND A TYING CLAIM WITHOUT A TIE?

17                MS. SWEENEY:  I THINK WE HAVE ALLEGED A

18     TIE, YOUR HONOR.  AND HERE'S THE DISTINCTION I WANT

19     TO DRAW:  WE ALLEGE AN IMPLICIT TIE.

20                AN IMPLICIT TIE, WHICH WAS RECOGNIZED BY

21     THE NINTH CIRCUIT IN THE MOORE CASE AND REMEMBER

22     THAT WAS A CEMETERY CASE AND WHERE THE CEMETERY

23     OWNERS TIED PURCHASE OF A PLOT AND A MARKER BUT NOT

24     IN EVERY CASE.  THERE WERE I THINK SEVEN CEMETERIES

25     AND ONLY FIVE OF THEM HAD THE TIE.  AND FOR THE

22

1    NINTH CIRCUIT THAT WAS ENOUGH BECAUSE AN

2    APPRECIABLE NUMBER OF BUYERS WERE FORCED TO BUY THE

3    MARKET.

4              THE COURT:  THAT SAYS THAT THERE WAS

5    ENOUGH TYING TO SATISFY.  I HAVE SAID THAT THERE IS

6    NO TYING.

7              MS. SWEENEY:  WHAT ABOUT THE WAYS AND

8    MEANS CASE, YOUR HONOR, WHICH RECOGNIZES IF A

9    DOMINANT SUPPLIER OF A PRODUCT OF PRICING THOSE

10   PRODUCTS IN SUCH A WAY, OR PUTS CERTAIN KINDS OF

11   RESTRICTIONS ON THEM SO THAT ONE PRODUCT IS LESS

12   USEFUL WITHOUT THE OTHER, THAT ALSO IS AN IMPLICIT

13   TIE.

14             THE COURT:  WELL, THAT'S WHY I FOCUSSED

15   ON WHAT EVIDENCE THERE IS OR WHAT ALLEGATIONS THERE

16   ARE BUT YOU CAN'T -- THE IPOD HAS NO REAL FUNCTION

17   WITHOUT ITUNES, THAT THEY'RE FUNCTIONALLY HOBBLED.

18             IF A PERSON -- I WOULD AGREE WITH YOU, IF

19   A MANUFACTURER HAS TWO SEPARATE PRODUCTS AND

20   TECHNOLOGICALLY HOBBLES THEM ONE TO THE OTHER SO

21   THEY HAVE NO FUNCTION INDEPENDENT OF THE OTHER,

22   YOU'RE THEREFORE FORCED TO BUY BOTH, YOU MAY HAVE

23   GOTTEN CLOSE TO WHAT I WOULD CONSIDER TO BE A

24   TECHNOLOGICAL TIE.

25             BUT IF THE TWO PRODUCTS ARE SOLD IN

                                                    23

1    SEPARATE MARKETS AND THAT THEY FUNCTION

2    INDEPENDENTLY WITHOUT THE OTHER, ALTHOUGH BETTER

3    TOGETHER, THAT'S NOT THE KIND OF HOBBLING THAT

4    WOULD DEPRIVE EACH OF THE FULL FUNCTIONALITY.

5              MS. SWEENEY:  WELL, THE QUESTION OF

6    WHETHER A RULE OF REASON TYING CLAIM YOU TO HAVE BE

7    DEPRIVED OF COMPLETE AND FULL FUNCTIONALITY.

8              HERE WE'RE ALLEGING PARTIAL IMPAIRMENT OF

9    FUNCTIONALITY AND IT IS ENOUGH UNDER A RULE OF

10   REASON CLAIM, AND I WOULD LIKE TO GO BACK TO WHERE

11   YOUR HONOR STARTED THIS CONVERSATION WHICH IS WHAT

12   IS THE DIFFERENCE BETWEEN A RULE OF REASON CLAIM

13   AND A TYING CLAIM?

14             AND AS APPLE'S COUNSEL RECOGNIZED, THERE

15   IS A DEARTH OF LAW ON RULE OF REASON TYING CLAIM.

16   WE HAVE THE FOREMOST PRO DECISION WHICH SEEMS TO

17   SUGGEST THAT IF YOU HAVE A TECHNOLOGICAL TIE, THEN

18   YOU SHOULD LOOK UNDER THE LENS OF A RULE OF REASON

19   PER SE ANALYSIS.

20             YOU ALSO HAVE THE MICROSOFT CASE WHICH

21   HAS A VERY EXTENSIVE DISCUSSION OF WHY THE PER SE

22   DID NOT APPLY TO THAT TECHNOLOGICAL TIE AND WHAT A

23   COURT SHOULD LOOK AT IN -- BECAUSE THE COURT

24   REMANDED TO THE DISTRICT COURT.  OF COURSE THE CASE

25   SETTLED THEN SO THE COURT NEVER WENT THROUGH THE

                                                      24

1    ANALYSIS, BUT THE COURT GAVE EXPLICIT INSTRUCTIONS

2    AS TO WHAT THE DISTRICT COURT WOULD DO.

3              NOW, APPLE SAYS THE ONLY DIFFERENCE

4    BETWEEN A RULE OF REASON AND A PER SE TYING CLAIM

5    IS THAT THE USE THE RULE OF REASON CLAIM WHEN THE

6    DEFENDANT DOESN'T HAVE MARKET POWER, AND THAT'S

7    SIMPLY NOT TRUE.  THERE IS NO BASIS FOR THAT

8    STATEMENT IN THE CASE LAW OR IN THE AREEDA TREATISE

9    WHICH APPLE RELIES UPON.

10             IN THE MICROSOFT CASE, WHEN THE COURT OF

11   APPEALS SENT THE CASE BACK DOWN TO BE ANALYZED

12   UNDER A RULE OF REASON STANDARD, THE COURT HAD

13   ALREADY HELD THAT THERE WAS A MONOPOLIZATION CLAIM

14   UNDER SECTION 2 AND THAT IT AFFIRMED THE LOWER

15   COURT'S FINDING THAT APPLE HAD MONOPOLY POWER IN

16   THE TYING PRODUCT.

17             SO THERE, OF COURSE, IT WASN'T A QUESTION

18   OF APPLYING RULE OF REASON SIMPLY BECAUSE THE

19   DEFENDANT DOESN'T HAVE MARKET POWER.

20             AND THEN --

21             THE COURT:  WELL, YOUR RULE OF REASON --

22   ARE YOU STATING A RULE OF REASON CLAIM UNDER YOUR

23   MONOPOLY CLAIM AS WELL?

24             MS. SWEENEY:  YES, THE MONOPOLY CLAIM IS

25   A RULE OF REASON CLAIM, YOUR HONOR.

25

1              THE COURT:  SO I'M NOT, I'M NOT

2     DISAGREEING WITH YOU JUST AS TO THAT GENERAL

3     PROPOSITION.  BUT AS TO THE TYING CLAIM.

4              IT IS DIFFICULT TO ARTICULATE WHAT

5     RESTRAINT I'M APPLYING THE RULE OF REASON TO

6     WITHOUT THE TIE.

7              IN OTHER WORDS, IT'S NOT A RULE OF

8     REASON; IT'S THIS RESTRAINT IS UNREASONABLE.  SO

9     WHAT IS THE RESTRICTION?  WHAT YOU ALLEGE AS A

10    RESTRICTION IS A TIE.  AND SO IF I FIND THAT THERE

11    IS NO TIE, THEN THERE'S NO RESTRAINT TO WHICH I'M

12    APPLYING MY ANALYSIS.

13             MS. SWEENEY:  WELL, WE SAY THERE IS A

14    RESTRAINT BECAUSE OF THE IMPAIRED FUNCTIONALITY.

15             THE COURT:  NOW, THAT'S THE QUESTION.

16             MS. SWEENEY:  YES.

17             THE COURT:  IS IMPAIRED FUNCTIONALITY

18    SUFFICIENT AND SO IF YOU CITE TO ME A CASE THAT

19    SAYS THAT IMPAIRED FUNCTIONALITY IS SUFFICIENT TO

20    BASE A SECTION 1 CLAIM UNDER THE RULE OF REASON,

21    THEN I'M INTERESTED.

22             MS. SWEENEY:  WELL THEN AGAIN I WOULD GO

23    BACK TO FOREMOST PRO BECAUSE I THINK THAT'S THE

24    CLOSEST ANALOGY.

25             THE COURT:  WELL, IT'S CLOSE, BUT IT

                                                    26

1    DOESN'T DO THE ANALYSIS.  IT JUST SAYS THAT WE

2    DON'T HAVE TO REACH THAT ANALYSIS.  THAT DOESN'T

3    HELP ME TO KNOW WHAT THE ANALYSIS IS IF THE COURT

4    SAYS WE'RE NOT DOING THAT.

5             MS. SWEENEY:  AND THEN I WOULD POINT YOUR

6    HONOR TO THE AREEDA TREATISE BECAUSE AS EVERYONE

7    HAS RECOGNIZED THERE'S NOT A LOT OF CASES ON RULE

8    OF REASONING TYING BUT THE AREEDA TREATISE LAYS OUT

9    AN ARGUMENT WHY TECHNOLOGICAL TIES SHOULD BE

10   SUBJECT TO A RULE OF REASON ANALYSIS.

11            AND THE REASON THAT AREEDA GIVES IS VERY

12   SIMILAR TO THE ONE GIVEN BY THE COURT OF APPEALS IN

13   THE MICROSOFT DECISION.

14            IN THE MICROSOFT DECISION THE COURT SAID

15   THAT THIS TECHNOLOGICAL TIE IS UNLIKE ANY THAT THE

16   SUPREME COURT HAS EVER ADDRESSED AND PER SE RULES

17   OF LIABILITY ON ANTITRUST LAWS ARE RESERVED FOR

18   THAT COURTS HAVE SEEN TIME AND TIME AGAIN THAT THEY

19   KNOW THE PERNICIOUS AFFECTS OF THOSE, SUCH AS PRICE

20   FIXING, SUCH AS THE TYPICAL EXPRESSED CONDITIONAL

21   TYING AGREEMENT BUT A TECHNOLOGICAL TIE IS A

22   SLIGHTLY DIFFERENT SPECIES OF A TYING AGREEMENT.

23            AND I WOULD ALSO LIKE TO POINT OUT

24   BECAUSE I'M SURE APPLE'S COUNSEL WILL BRING THIS UP

25   THAT THE AREEDA TREATISE ALSO SUGGESTS THAT IN THE

27

1    CASE OF A TECHNOLOGICAL TIE YOU SOMETIMES DON'T

2    HAVE THE KIND OF CONCERTED ACTION THAT IS REQUIRED

3    FOR A SECTION 1 SHERMAN ACT CLAIM.

4          AND I WOULD JUST LIKE TO SAY THAT

5    INITIALLY AS AN INITIAL MATTER THAT THE AREEDA

6    TREATISE DOESN'T SAY THAT YOU NEVER HAVE THAT KIND

7    OF CONCERTED ACTION.

8          AND MORE IMPORTANTLY, ALL OF THE CASE

9    LAW, AND WE CITE A LOT OF THIS IN OUR BRIEF, ALL OF

10   THE CASE LAW IS UNANIMOUS THAT IN ORDER TO SATISFY

11   THE CONCERTED REQUIREMENT OF SECTION 1 FOR PURPOSES

12   OF THE TYING CLAIM, ALL THE PLAINTIFF NEEDS TO

13   ALLEGE IS THAT THE DEFENDANT SOLD A PRODUCT TO THE

14   PLAINTIFF AND IT'S THAT AGREEMENT, THAT AGREEMENT

15   TO PURCHASE THE PRODUCT THAT CONTAINED THIS

16   RESTRAINT THAT SATISFIES THE CONCERTED REQUIREMENT

17   OF SECTION 1.

18          WELL --

19          THE COURT:  WELL, YOU CAN APPRECIATE MY

20   CONCERN BECAUSE YOU'RE ASKING ME TO EXTEND THE LAW,

21   AND WE'RE ALL OPERATING WITH THAT IN MIND.

22          DID YOU WANT TO RESPOND TO COUNSEL'S

23   ARGUMENT ABOUT THIS ADVANCED COMPUTER SERVICES

24   CASE?  I HAVEN'T HAD A CHANCE TO STUDY IT AGAIN

25   MYSELF.

28

1              I DID READ IT AT SOME POINT, BUT HE CITED

2      IT FOR THE PROPOSITION THAT IF THERE IS NO TIE,

3      THEN YOU CAN'T USE RULE OF REASON ANALYSIS AND IT'S

4      A DISTRICT COURT CASE THAT COMES OUT OF THE EASTERN

5      DISTRICT OF VIRGINIA.

6              MS. SWEENEY:  SURE.  AND THAT CASE AGAIN,

7      LIKE THE FOREMOST PRO CASE IS DISTINGUISHABLE FROM

8      THIS ONE IN THAT THERE WAS NO FORECLOSURE IN THE

9      TIED PRODUCT MARKET BECAUSE THERE WAS NOTHING

10     PREVENTING THE RIVALS OF THE DEFENDANT FROM MAKING

11     AND DEVELOPING THEIR OWN SOFTWARE AND COMPETING

12     WITH THE DEFENDANT IN THE TIED PRODUCT MARKET.

13             HERE APPLE HAS DONE EVERYTHING IT CAN TO

14     KEEP ITS RIVALS FROM COMPETING WITH IT AND IN THE

15     MARKET WITH ITS PORTABLE DEVICES.  SO THAT'S HOW I

16     WOULD DISTINGUISH THAT CASE, YOUR HONOR.

17             THE COURT:  THANK YOU.

18             MS. SWEENEY:  ANY OTHER QUESTIONS?

19             THE COURT:  NO.  FINAL WORDS?

20             MR. MITTELSTAEDT:  JUST BRIEFLY, YOUR

21     HONOR.  WHEN COUNSEL TAKES ABOUT AN EXPLICIT OR

22     IMPLICIT TIE, WHAT THEY'RE TALKING ABOUT IS HOW

23     THEY WOULD GO ABOUT PROVING A CONDITIONED SALE.

24             BUT THE CASES DON'T TURN ON WHETHER THE

25     TIE IS PROVED EXPLICITLY OR IMPLICITLY.  THEY TURN

                                                         29

1    ON WHETHER THERE'S A TIE, WHETHER THERE'S A

2    CONDITIONED SALE AND WHERE THE PRODUCTS WERE

3    SEPARATELY AVAILABLE, THERE'S NOT A CONDITIONED

4    SALE.

5              THERE IS NO CASE THAT SAYS THAT IN A RULE

6    OF REASON CASE THE PLAINTIFF CAN GET BY WITH LESS

7    COERCION THAN IN A PER SE CASE.

8              PER SE CASES AND RULE OF REASON CASES

9    APPLY THE SAME STANDARD, THE SAME THRESHOLD

10   STANDARD FOR WHETHER THERE'S A TIE.

11             AND AREEDA TALKS ABOUT A TECHNOLOGICAL

12   TIE BUT -- AND THIS MAY BE A TECHNICAL POINT, BUT I

13   THINK IT'S WORTH MAKING.  WHEN HE TALKS ABOUT A

14   TECHNICAL TIE, HE'S TALKING ABOUT IT IN THE SAME

15   TERMS OF FOREMOST PRO WHERE YOU CAN'T USE ONE

16   PRODUCT WITHOUT THE OTHER, WHERE AS A PRACTICAL

17   MATTER YOU HAVE TO BUY THEM TOGETHER.

18             BUT AGAIN, AS WE HAVE BEEN OVER, THAT'S

19   NOT THE CASE HERE.  SO I DISAGREE THAT THIS RISES

20   TO THE LEVEL OF A TECHNOLOGICAL TIE.

21             BUT EVEN IF IT WERE CONSIDERED A

22   TECHNOLOGICAL TIE, WHAT AREEDA SAYS IS THAT

23   ORDINARILY THE CHALLENGED PRODUCT DESIGN, AND

24   THAT'S WHAT THIS CASE IS REALLY ABOUT, WHAT

25   SOFTWARE APPLE CHOSE TO USE IN ITS PRODUCT.

30

1          THE COURT:  WELL, YOU KNOW, THAT'S ONE OF

2   THE THINGS THAT I THOUGHT THAT I WOULD HELP US ALL

3   OUT IS AN ARTICULATION OF THIS STANDARD OF

4   TECHNOLOGICAL TIE.

5          WOULD YOU REGARD FOREMOST PRO AS AN

6   EXAMPLE A TECHNOLOGICAL TIE IN THE SENSE THAT YOU

7   COULD NOT USE ONE PRODUCT WITHOUT THE OTHER?

8   BECAUSE THEY IN THAT CASE TALK ABOUT COMPATIBILITY

9   AND SAY THAT IT'S NOT A TECHNOLOGICAL TIE, AND SO I

10  WAS ACTUALLY LISTENING HARD AS BOTH SIDES WERE

11  ARGUING TO SEE WHERE YOU WOULD PUT THAT CASE.

12         MR. MITTELSTAEDT:  WELL, I THINK WHAT

13  LABEL YOU PUT ON IT, WHETHER YOU CALL THAT A

14  TECHNOLOGICAL TIE OR NOT IS LESS IMPORTANT.  IT'S

15  JUST A LABEL.

16         IN THAT CASE, AS I READ IT, YOUR HONOR,

17  THE COURT WAS SAYING THAT YOU COULDN'T USE AS A

18  PRACTICAL AND AS AN EFFECTIVE MATTER, YOU NEEDED TO

19  USE THE TWO PRODUCTS TOGETHER, BUT THE COURT SAID

20  THAT WASN'T ENOUGH TO SHOW COERCION.

21         HERE WE HAVE GOT LESS THAN THAT BECAUSE

22  THE PRODUCTS ARE SEPARATELY AVAILABLE AND CAN BE

23  USED SEPARATELY.

24         SO I THINK THAT I, I -- AND I END AS I

25  STARTED, FOR THE SAME REASONS THAT YOUR HONOR FOUND

31

1    THAT THERE WAS NOT -- THEY DIDN'T SATISFY THE

2    THRESHOLD COERCION ELEMENT FOR A PER SE CLAIM, THE

3    SAME THING APPLIES TO THE TYING CLAIM.

4         THE, THE LAST THING I WANT TO SAY IS THAT

5    THERE WAS A SECOND AND ACTUALLY A THIRD GROUND IN

6    OUR MOTION AND ONE OF THEM I THINK IS A VERY

7    INTERESTING ISSUE AND THAT IS WHEN THEY'RE

8    CHALLENGING A PRODUCT DESIGN, WHETHER THAT

9    SATISFIES ANOTHER ELEMENT OF SECTION 1 CASES, WHICH

10   IS THAT THERE NEEDS TO BE AN AGREEMENT.

11        AND SOME OF THE TYING CASES, YOU KNOW,

12   JUST REALLY CASES WHERE ONE PRODUCT WON'T BE SOLD

13   WITHOUT THE OTHER, THE COURTS HAVE FOUND THAT

14   THERE'S AN AGREEMENT BECAUSE THE BUYER AGREES TO

15   BUY BOTH AND SO THAT SATISFIES THE CONSPIRACY, IF

16   YOU WILL, ELEMENT OF SECTION 1.

17        BUT AS AREEDA SAYS IN THE TECHNOLOGICAL

18   AREA WHERE THE PLAINTIFFS ARE BASICALLY CHALLENGING

19   A PRODUCT DESIGN, WHERE IS THE AGREEMENT?  AND IF

20   ANYTHING, AREEDA SAYS THAT THOSE OUGHT TO BE

21   CHALLENGED UNDER SECTION 2.

22        THE COURT:  I UNDERSTAND YOUR ARGUMENT.

23   THANK YOU.  MATTER SUBMITTED.

24        MR. MITTELSTAEDT:  THANK YOU, YOUR HONOR.

25        COULD I RAISE ONE BRIEF MATTER AND THAT'S

                                              32

1    SCHEDULING THE NEXT ROUND OF MOTIONS?

2          THE COURT:  YES.

3          MR. MITTELSTAEDT:  AS YOUR HONOR KNOWS WE

4    HAVE BEEN INVITED TO MOVE TO DECERTIFY THE

5    INJUNCTIVE RELIEF CLASS, AND WE HAVE DONE THAT AND

6    THAT HEARING IS SET FOR NOVEMBER 9TH.  AND THE

7    BRIEFING IS COMPLETED.

8          WE HAVE ALSO MOVED TO DECERTIFY THE

9    (B)(3) CLASS, THE DAMAGES CLASS IN THIS CASE, THE

10   DIRECT PURCHASER CASE.  AND WE HAVE GOT A QUESTION

11   ABOUT WHEN THAT IS GOING TO BE BRIEFED.

12         WE HAD SUGGESTED TO YOUR HONOR THAT THE

13   HEARING BE PUT OVER TO DECEMBER 14TH SO WE CAN GET

14   THE BRIEFS DONE AND DEPOSE EACH SIDES EXPERTS AND

15   SO FORTH.

16         YOUR HONOR INSTEAD OF ACCEPTING THE

17   STIPULATION FOR DECEMBER 14TH PUT THE HEARING ON

18   NOVEMBER 9TH WITH THE FINAL BRIEF, WHICH WOULD BE

19   APPLE'S REPLY BRIEF, DUE OCTOBER 19TH.

20         WE SAT DOWN TO TRY AND NEGOTIATE WHEN

21   THEIR OPPOSITION WOULD BE DUE AND HOW MUCH TIME WE

22   WOULD HAVE TO RESPOND TO IT, AND THEY'RE UNABLE TO

23   DO THEIR OPPOSITION, THEY SAY, BEFORE OCTOBER 12TH.

24         THEIR EXPERT ON WHO THEY INTEND TO RELY

25   IS UNAVAILABLE THE WEEK OF OCTOBER 12TH, WHICH

33

1    WOULD MEAN THAT OUR BRIEF WOULD HAVE TO BE FILED IN

2    A ONE WEEK'S TIME WITHOUT THE BENEFIT OF DEPOSING

3    THEIR EXPERT.

4              WE HAD ASKED YOUR HONOR TO REQUIRE THEM

5    TO FILE THEIR BRIEF LAST FRIDAY OR TODAY.

6    OBVIOUSLY THAT'S IMPRACTICAL AT THIS POINT.  AND SO

7    I WANTED TO SEE IF YOUR HONOR WAS OPEN TO EITHER

8    PUTTING THE HEARING ON DECEMBER 14TH SO WE COULD

9    HAVE ADEQUATE TIME OR SHORT OF THAT TO GIVE US

10   UNTIL OCTOBER 26TH TO FILE OUR BRIEF WHICH WOULD

11   STILL BE TWO WEEKS BEFORE THE HEARING ALBEIT ONE

12   WEEK LESS THAN WHAT YOUR HONOR'S SCHEDULE WOULD

13   HAVE PROVIDED.

14             THE COURT:  LET ME ASK BECAUSE MY STAFF

15   DOES THE SCHEDULING FOR ME.

16             IS THE 14TH A REGULAR LAW AND MOTION

17   CALENDAR?

18             (PAUSE IN PROCEEDINGS.)

19             THE COURT:  YOU'RE ASKING TO COMBINE A

20   COUPLE MOTIONS.  THE DECERTIFICATION MOTION I ASKED

21   FOR IS NOW SET FOR THE 9TH?

22             MR. MITTELSTAEDT:  YES.

23             THE COURT:  AND YOU WANT TO BRING THIS

24   ADDITIONAL MOTION AND YOU ALSO WANT TO BRING THIS

25   ON THE 9TH?

34

1          MR. MITTELSTAEDT:  THAT'S THE NET EFFECT.

2          THE COURT:  BUT IT'S HARD TO FIT

3   TOGETHER.  LET ME STUDY YOUR REQUESTS AND SEE

4   WHETHER OR NOT WE CAN ACCOMMODATE IT.

5          SO ARE YOU CONTENT TO HAVE THE ONE MOTION

6   ON THE 9TH, OR WOULD YOU LIKE A DELAY SO BOTH ARE

7   HEARD AT THE SAME TIME?

8          MR. MITTELSTAEDT:  I'M CONTENT TO HAVE

9   THEM HEARD ON SEPARATE DATES.

10          THE COURT:  ARE YOU?

11          MS. SWEENEY:  I'M CONTENT TO HAVE THEM

12   HEARD ON THE 9TH.  I DON'T OPPOSE WHAT

13   MR. MITTELSTAEDT SUGGESTED.

14          THE COURT:  SO LET'S LEAVE WHAT IS NOW ON

15   THE 9TH ON THE 9TH, AND I'LL COME BACK TO YOU IN AN

16   ADMINISTRATIVE ORDER SETTING A BRIEFING SCHEDULE ON

17   THE OTHER MOTION AND SEE IF I CAN ACCOMMODATE YOUR

18   REQUEST.

19          THE REASON THE 14TH IS A PROBLEM IS

20   THAT'S MY LAST HEARING DATE BEFORE THE HOLIDAYS,

21   AND MY STAFF IS GIVEN LEAVE TO GO AND DO OTHER

22   THINGS BETWEEN THE HOLIDAYS.  AND SO SOMETIMES I'M

23   HERE BY MYSELF AND SO I DON'T PUT A LOT OF THINGS

24   THE LAST DAY ON THAT AND SO I MIGHT EVEN MOVE YOU

25   FURTHER OUT.

35

1            MR. MITTELSTAEDT:  OKAY.  WHEN THE COURT

2    SEES THE ADMINISTRATIVE MOTION, THAT REALLY FOCUSES

3    ON IF IT'S GOING TO BE ON NOVEMBER 9TH, WHAT SHOULD

4    THE BRIEFING SCHEDULE BE.

5            THE COURT:  RIGHT.

6            MR. MITTELSTAEDT:  SO YOU WON'T SEE THE

7    REQUEST TO GO BACK TO THE 15TH.

8            THE COURT:  THAT'S YOUR PREFERENCE

9    THOUGH?

10           MR. MITTELSTAEDT:  YES, I THINK THAT'S

11   THE EASIER WAY.

12           MS. SWEENEY:  THANK YOU, YOUR HONOR.

13           MR. MITTELSTAEDT:  THANK YOU, YOUR

14   HONOR.

15           THE COURT:  IS THAT OUR LAST MOTION?

16           THE CLERK:  THAT CONCLUDES THE CALENDAR.

17           (WHEREUPON, THE PROCEEDINGS IN THIS MATTER

18   WERE CONCLUDED.)

19

20

21

22

23

24

25

                                                    36