1  COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
2  JOHN J. STOIA, JR. (141757)
 BONNY E. SWEENEY (176174)
3  THOMAS R. MERRICK (177987)
 655 West Broadway, Suite 1900
4  San Diego, CA  92101
 Telephone:  619/231-1058
5  619/231-7423 (fax)
 johns@csgrr.com
6  bonnys@csgrr.com
 tmerrick@csgrr.com
7
 THE KATRIEL LAW FIRM
8  ROY A. KATRIEL (*pro hac vice*)
 1101 30th Street, N.W., Suite 500
9  Washington, DC  20007
 Telephone:  202/625-4342
10  202/330-5593 (fax)
 rak@katriellaw.com
11
 Co-Lead Counsel for Plaintiffs
12
 [Additional counsel appear on signature page.]
13
     UNITED STATES DISTRICT COURT
14
     NORTHERN DISTRICT OF CALIFORNIA
15
      SAN JOSE DIVISION
16

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTI-TRUST LITIGATION ) | Lead Case No. C-05-00037-JW(RS) |
| ) | |
| ) | <u>CLASS ACTION</u> |
| ) | |
| This Document Relates To: ) | PLAINTIFFS' MEMORANDUM IN |
| ) | OPPOSITION TO DEFENDANT'S MOTION |
|   ALL ACTIONS. ) | FOR DECERTIFICATION OF RULE |
| ) | 23(b)(3) CLASS |

        Judge:   Hon. James Ware
        Date:    November 23, 2009
        Time:    9:00 a.m.
        CTRM:   8-4th Floor

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    PROCEDURAL BACKGROUND ................................................................... 2

    A.    The Court Certified the Class Based on Professor Noll's Report ......... 2

    B.    Apple Thwarted and Continues to Thwart Discovery ........................... 3

III.    MOTIONS TO DECERTIFY ARE IMPROPER WHERE NO NEW FACTS OR LAW EXIST ....................................................................................................... 5

IV.    PROFESSOR NOLL REVIEWED INFORMATION SUFFICIENT TO CONCLUDE THAT AT LEAST ONE OF HIS PROPOSED DAMAGES METHODOLOGIES WOULD WORK ....................................................... 6

V.    DR. BURTIS'S REPORT IS SO INSUBSTANTIAL, IT SHOULD BE GIVEN NO WEIGHT ................................................................................................... 7

VI.    APPLE FAILS TO IDENTIFY A SINGLE DEFECT IN PROFESSOR NOLL'S METHODOLOGIES THAT DEFEATS CLASS CERTIFICATION ................ 8

    A.    Any Comparison of Professor Noll and Dr. French's Analyses Is Meaningless ......................................................................................... 11

    B.    Professor Noll's Methodologies ......................................................... 12

        1.    Before-After Method ............................................................. 13

            a.    Professor Noll Sufficiently Explained How He Will Account for Product Differences and Other Necessary Variables .................................................................... 14

            b.    "Coolness" Does Not Prevent Construction of an Effective Damages Model ...................................................... 18

            c.    Apple's "Pricing Strategy" Does Not Preclude an Effective Damages Model ...................................................... 19

            d.    Dr. Burtis Does Not Explain Why the Before Period Is Too Short ................................................................................. 20

        2.    Professor Noll Has Demonstrated that the Mark-Up Method Can Be Used in This Case ......................................................... 20

        3.    Professor Noll Has Demonstrated that the Yardstick Method Can Be Used in This Case ......................................................... 22

VII.    THE COURT ALREADY CONSIDERED AND REJECTED APPLE'S ARGUMENT THAT A POSSIBLE UNDERCHARGE OF ITS FILES MUST BE CONSIDERED IN THE DAMAGES MODEL ............................................. 23

1

2                                                                                   **Page**

3    VIII.    CONCLUSION..................................................................................................................25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Freeland v. AT&T Corp.*,
    238 F.R.D. 130 (S.D.N.Y. 2006) ...................................................................15

5

*Gonzales v. Arrow Fin. Servs. LLC*,
    489 F. Supp. 2d 1140 (S.D. Cal. 2007) ..........................................................5

6

*Heffelfinger v. Elec. Data Sys. Corp.*,
    580 F. Supp. 2d 933 (C.D. Cal. 2008) ..........................................................23

7

*In re Carbon Black Antitrust Litig.*,
    No. Civ. A. 03-10191-DPW, MDL No. 1543 2005 WL 102966
    (D. Mass. Jan. 18, 2005) ...............................................................10, 14, 23

8

9

*In re Citric Acid Antitrust Litig.*, Nos. 95-1092, C-95-2963 FMS, 1996 WL 655791
    (N.D. Cal. Oct. 2, 1996) ...............................................................13, 14

10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    No. M 02-1486 PJH, 2006 WL 1530166
    (N.D. Cal. June 5, 2006) ........................................................... *passim*

11

12

13

*In re Foundry Resins Antitrust Litig.*,
    242 F.R.D. 393 (S.D. Ohio 2007) ...................................................................10

14

*In re Linerboard Antitrust Litig.*,
    203 F.R.D. 197 (E.D. Pa. 2001) ...................................................................10

15

16

*In re Live Concert Antitrust Litig.*,
    247 F.R.D. 98 (C.D. Cal. 2007) ...................................................................13, 15, 22

17

*In re Polyester Staple Antitrust Litig.*, MDL No. 3:03 CV 1516, 2007 WL 2111380
    (W.D.N.C. July 19, 2007) ...................................................................15

18

19

*In re Rubber Chems. Antitrust Litig.*,
    232 F.R.D. 346 (N.D. Cal. 2005) ...................................................................10, 13

20

21

*In re Static Random Access (SRAM) Antitrust Litig.*,
    No. C 07-01819 CW, 2008 WL 4447592
    (N.D. Cal. Sept. 29, 2008) ...................................................................10

22

23

*In re Vitamins Antitrust Litig.*,
    209 F.R.D. 251 (D.D.C. 2002)...................................................................14

24

*In re Wellbutrin SR Direct Purchaser Antitrust Litig.*,
    No. 04-5525, 2008 WL 1946848 (E.D. Pa. May 2, 2008)...................................................................23, 24

25

26

*J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*,
    451 U.S. 557, 101 S. Ct. 1923 (1981) ...................................................................11

27

28

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR
DECERTIFICATION OF RULE 23(b)(3) CLASS - C-05-00037-JW(RS)

- iii -

1

2                                                                                                          Page

3   *Los Angeles Mem'l Coliseum Comm'n v. NFL*,
        791 F.2d 1356 (9th Cir. 1986) ......................................................................................10
4
    *Meijer, Inc. v. Abbott Labs.*,
5       No. C 07-5985 CW, 2008 WL 4065839 (N.D. Cal. Aug. 27, 2008) ...................................10

6   *Royal Printing Co. v. Kimberly-Clark Corp.*,
        621 F.2d 323 (9th Cir. 1980) ........................................................................................24
7
    *Seigel v. Chicken Delight, Inc.*,
8       448 F.2d 43 (9th Cir. 1971) ..........................................................................................24

9   *Slaven v. BP Am., Inc.*,
        190 F.R.D. 649 (C.D. Cal. 2000) ....................................................................................5
10
    *Somers v. Apple, Inc.*,
11      No. 07-CV-06507 JW (N.D. Cal.) ......................................................................... *passim*

12  *Sun Microsystems Inc. v. Hynix Semiconductor, Inc.*,
        608 F. Supp. 2d 1166 (N.D. Cal. 2009) .................................................................15, 18
13
    **STATUTES, RULES AND REGULATIONS**
14
    Federal Rule of Civil Procedure
15      Rule 23(b)(3) ...............................................................................................1, 3, 25
16  **SECONDARY AUTHORITIES**

17  Daniel L. Rubinfeld, *Quantitative Methods in Antitrust*, 1 Issues in Competition Law
        And Policy 723 (ABA Section of Antitrust Law) (2008) ..................................................15
18
19

20

21

22

23

24

25

26

27

28

1    Plaintiffs Somtai Troy Charoensak, Mariana Rosen, and Melanie Tucker (collectively,

2  "plaintiffs") respectfully submit this memorandum in opposition to defendant's ("Apple") Motion

3  for Decertification of Rule 23(b)(3) Class ("Def's Motion").

4  **I.     INTRODUCTION**

5    After full briefing and oral argument, this Court certified a Rule 23(b)(3) Class on plaintiffs'

6  monopolization, attempted monopolization and related state law claims in December 2008.

7  Dkt. No. 196 ("Class Certification Order").  Apple now wants another bite at the apple.  Citing no

8  new law or facts, and relying largely on a retread report by an expert it had retained prior to the

9  original class certification briefing, but chose not to use, Apple moves to decertify the Class.

10    In its Class Certification Order, the Court identified numerous common issues of law and fact

11  that supported class certification, including market definition, market power, anticompetitive

12  conduct, harm to competition, Apple's willful acquisition and maintenance of monopoly power, and

13  anticompetitive injury.  Class Certification Order at 6-8.  Apple's motion challenges none of these

14  findings.

15    Apple moves to decertify the class based solely on the report of its expert, Dr. Michele M.

16  Burtis.  Dkt. No. 241.  Dr. Burtis belatedly challenges the sufficiency of the 60-page declaration

17  submitted by plaintiffs' expert, Stanford Professor *Emeritus* Roger G. Noll, in support of class

18  certification, and only with regard to his proposed methodologies to show classwide damages.  In

19  addition to his detailed initial report, Professor Noll has also submitted a 56-page reply declaration,[1]

20  filed concurrently herewith, that provides even more detail as to why he believes that his proposed

21  methodologies can be utilized to show classwide damages.

22    As set forth in more detail below and in Professor Noll's reply declaration, Dr. Burtis

23  attempts to re-write Professor Noll's thorough, detailed analysis in order to compare it to the analysis

24  of a completely different expert, Dr. Gary L. French, in the indirect purchaser case, *Somers v. Apple,*

---

[1]    *See* Reply Declaration of Roger G. Noll, filed concurrently ("Noll Reply Decl.").

1   *Inc.*, No. 07-CV-06507 JW (N.D. Cal.).  The two reports bear only minimal resemblance, and the

2   Court's concerns with Dr. French simply do not apply to Professor Noll's analysis.

3            Further, Apple seeks to use its own refusal to produce anything other than exemplar data

4   prior to the original class certification briefing, and delay in producing merits-based discovery now,

5   to support decertification.  Its "gotcha" litigation tactics are inappropriate and certainly do not meet

6   its burden to overturn the Court's original class certification decision.

7            Finally, when the reports of Dr. Burtis and Professor Noll are compared substantively,

8   Professor Noll's is far more sophisticated and reasoned. In forming his opinions, Professor Noll has

9   relied on data both from Apple and from publicly-available sources – scholarly articles, economic

10  treatises, analyst reports, etc. – in addition to his years of experience and intimate knowledge of the

11  industry and expertise in formulating damages models in antitrust cases.  In sharp contrast, Dr.

12  Burtis testified that she examined none of the sources specifically cited by Professor Noll.  She just

13  looked at the same things she looked at to prepare her report in rebutting Dr. French in *Somers*.  Her

14  opinions bear out this paucity of preparation.  Dr. Burtis, for example, is of the opinion that even if

15  plaintiffs make a clear showing that Apple has monopolized or attempted to monopolize the market,

16  she does not believe ***anyone*** – either on a class or individual basis – could prepare a damages model

17  to hold Apple accountable.

18           Apple's limited argument attacking Professor Noll's proposed damages methodologies

19  cannot satisfy its burden to overcome the many common issues of law and fact that the Court

20  identified in its original Class Certification Order.  Apple's motion should be denied.

21  **II.      PROCEDURAL BACKGROUND**

22           **A.      The Court Certified the Class Based on Professor Noll's Report**

23           On July 21, 2008, plaintiffs filed their motion seeking certification of a class of direct

24  purchasers of iPods, supported by the detailed 60-page expert declaration of Professor Noll.  Dkt.

25  Nos. 165, 166-1, (Declaration of Roger G. Noll, filed July 21, 2008).  Relying on exemplar cost and

26  revenue data produced by Apple, numerous analyst reports, public information on iPod

27  characteristics and pricing, his extensive experience in technology markets, and the pleadings and

28  depositions in this litigation, Professor Noll opined that three widely-accepted methods were

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR
DECERTIFICATION OF RULE 23(b)(3) CLASS - C-05-00037-JW(RS)                        - 2 -

available to calculate damages to the class, and that each of those methods relied on evidence common to the class: (1) before-after method; (2) yardstick method; and (3) mark-up method. Dkt. No. 166-1 at 52-59.

On September 8, 2008, Apple retained its economic expert, Dr. Michele M. Burtis. On September 19, 2008, Apple conducted a day long deposition of Professor Noll. *See* Declaration of Thomas R. Merrick in Support of Plaintiffs' Memorandum In Support of Opposition to Defendant's Motion for Decertification of Rule 23(b)(3) Class, filed concurrently ("Merrick Decl."), Ex. 1, Deposition of Roger G. Noll, taken September 19, 2008. During the deposition, Professor Noll responded to extensive questioning by Apple concerning his report and specifically about each methodology he proposed, including the possible uses of regression analysis. *See, e.g.*, *id.*, Ex. 1 at 68:13-75:24.

Apple filed its opposition to plaintiffs' motion for class certification three months after plaintiffs served their motion, on October 17, 2008. Although it retained Dr. Burtis over a month earlier, Apple submitted no expert report to rebut Professor Noll. Dkt. No. 181. After briefing and oral argument, on December 22, 2008, the Court certified a class of direct purchasers of iPods for monopolization and attempted monopolization of the portable digital audio player market.[2] Class Certification Order.

**B.     Apple Thwarted and Continues to Thwart Discovery**

Prior to class certification, at Apple's request and over plaintiffs' objections, the Court sharply limited the scope of discovery. Even as to this limited discovery, Apple objected to each of plaintiffs' discovery requests on the grounds that it was not relevant to class certification. *See* Dkt. No. 261, Declaration of Bonny E. Sweeney in Support of Plaintiffs' Opposition to Apple's Administrative Motion to Set Briefing Schedule for Decertification Motion, ¶¶2-3. Plaintiffs were forced to file a motion to compel seeking financial information, including profit and loss statements, revenue, cost and sales data. Dkt. No. 137.

---

[2]     The Court has requested further briefing on the scope of the injunctive relief class and a hearing on that issue will be held concurrently with this motion.

1    Apple took the position that plaintiffs were not entitled to production of this financial data

2    because, according to Apple, such information was not relevant to class certification.  Dkt. No. 261,

3    ¶¶5, 7.   Just prior to the hearing on the motion to compel, Apple proposed a compromise.

4    Ultimately, plaintiffs agreed that Apple could produce *exemplars* of the requested data, as opposed

5    to all of the data, so that Professor Noll could make a determination whether the data, when it was

6    eventually produced, would suffice.  Plaintiffs agreed because Apple's counsel, orally and in writing,

7    took the position that, at the class certification stage, plaintiffs are not required to have completed

8    their damages study, but rather are required to show that they can rely on common evidence to show

9    classwide impact.  *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-

10   1486 PJH, 2006 WL 1530166, at *8-*9 (N.D. Cal. June 5, 2006).[3]  As Apple's counsel said:

11           To be clear, I did not agree to, or anticipate, that we would produce the actual data
             beyond an exemplar of the type of data that are available.  I understood that your
12           expert wanted to know what type of data is available rather than acquiring all the
             data now because he does not intend to actually produce a damage study at this point.
13           *That's the compromise we reached, and I thought that met your pre-cert needs*.

14   Dkt. No. 261-3.

15           After the Court lifted the partial discovery stay following class certification, on May 22,

16   2009, plaintiffs served amended discovery requests seeking, *inter alia*, the complete data as to which

17   Apple had produced only exemplars, profit and loss information, information regarding the markets

18   for iPods and digital audio and video files, and various aspects of Apple's DRM and its impact on

19   interoperability of iPods and iTS with competitors' products.  Apple, in contrast, has conducted **no**

20   new discovery following certification.  The parties have met and conferred several times over the

21   past four and a half months regarding Apple's objections and the scope of plaintiffs' requests.  To

22   date, plaintiffs have received only quarterly iPod and iTS sales figures, some limited data on cost

23   factors for iPods and iTS and some documents related to Apple's dispute with Real Networks over

24

25

26   _____

27   [3]      Citations are omitted and emphasis is added, here and throughout, unless otherwise noted.

28

1   its Harmony product.  Plaintiffs continue to meet and confer in good faith, but believe another

2   motion to compel will be required.[4]

3   Despite the lack of any new evidence or law, and only eight months after the Court's Class

4   Certification Order, Apple now moves to decertify the Class.  Apparently seeking to capitalize on its

5   relative success using Dr. Burtis in the indirect purchaser *Somers* action, Apple belatedly submits the

6   report of Dr. Burtis here. Dkt. No. 241.  As set forth more fully below, Dr. Burtis's declaration is

7   based on rebutting a different expert (Dr. French) in a different case (*Somers*) based on a different

8   damages standard (indirect purchasers' pass-through damages).

9   **III.   MOTIONS TO DECERTIFY ARE IMPROPER WHERE NO NEW FACTS
         OR LAW EXIST**

10

11   As a threshold matter, Apple's motion does not meet the Ninth Circuit standards for

12   decertification.  In motions to decertify a class, the defendant must meet a "heavy burden" in

13   demonstrating that decertification is appropriate. *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp.

14   2d 1140, 1154 (S.D. Cal. 2007); *see also Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 651 (C.D. Cal.

15   2000) ("Defendants' burden in urging decertification is relatively heavy.").    To justify

16   decertification, Apple must raise some new controlling law or facts to support its argument that the

17   initial class determination was in error.[5]  Apple cannot do so.  Apple simply wants a "do-over."

18   Apple implicitly recognized the sufficiency of Professor Noll's proposed damages

19   methodology when it opposed plaintiffs' motion for class certification twelve months ago.  Apple

20   retained Dr. Burtis approximately two weeks prior to Professor Noll's deposition in 2008 (Merrick

21   Decl., Ex. 2 at 147:24-148:7, Deposition of Michelle M. Burtis, Ph.D., taken September 30, 2009) to

22   assist Apple's counsel in preparing for the deposition.  She read Professor Noll's declaration and

23   discussed his proposed methodologies with Apple's counsel.  *Id* , Ex. 2 at 77:22-78:4, 78:7-11,

---

24   [4]    Of course, plaintiffs' discovery does not focus solely on the information plaintiffs will

25   ultimately need to generate their damages report.  But Apple's repeated delays and refusals to produce are representative of its entire approach to discovery.

26   [5]    In their Opposition to Apple's Administrative Motion to Set Briefing Schedule for

27   Decertification Motion, plaintiffs discussed why Apple's motion was improper. Dkt. No. 260 at 2-3.  Rather than repeat them here, plaintiffs incorporate by reference the arguments made therein.

28

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR
DECERTIFICATION OF RULE 23(b)(3) CLASS - C-05-00037-JW(RS)                    - 5 -

1   79:10-15, 79:24-80:12.  After the deposition, she read the transcript and again spoke with Apple's

2   counsel.  *Id.*, Ex. 2 at 151:5-9.  Still, Apple made the tactical decision not to submit a report to rebut

3   Professor Noll.  *Id.*, Ex. 2 at 151:10-21.

4          Apple's sole basis for this motion is the Court's ruling on a motion for class certification

5   brought by indirect purchasers in *Somers* using an entirely different expert, Dr. Gary French.  *See*

6   Def's Motion at 7.  Apple points to no new facts or law to support its argument that the Court did not

7   properly consider and evaluate these issues in its original class certification decision.  The Court's

8   order denying certification in *Somers* did not raise any new facts or law relevant to ***this*** action, but

9   instead denied certification of the indirect purchaser class on the basis that ***Dr. French*** did not

10  proffer a reliable method of proving impact and damages on a classwide basis.  *Somers*  Dkt. No. 80

11  at 12.

12         In the earlier class certification briefing, argument and the Court's Order, neither the Court

13  nor Apple ever raised concerns regarding Professor Noll's methodologies.  Professor Noll has

14  reviewed all the data available to him, has significant knowledge and experience in technology

15  markets, and has provided substantial detail on his proposed methodologies.  *See* Dkt. No. 166-1 at

16  52-59.  By contrast, Dr. Burtis's expert report contains little more than excerpts from her report

17  submitted in *Somers* to rebut Dr. French, and is devoid of any analysis or data.  Apple makes no

18  independent assessment of Professor Noll's methodologies and raises no new facts or law.

19  **IV.    PROFESSOR NOLL REVIEWED INFORMATION SUFFICIENT TO
           CONCLUDE THAT AT LEAST ONE OF HIS PROPOSED DAMAGES
20         METHODOLOGIES WOULD WORK**

21         Apple's criticism that Professor Noll has "collected little if any data" (Def's Motion at 7), is

22  disingenuous given Apple's insistence that pre-certification discovery be limited, and its insistence

23  that revenue, cost, profit and loss and sales data are not relevant to class certification, eventually

24  producing only "exemplar" data for Professor Noll's use in determining whether the mark-up

25  method would work.  Besides being disingenuous, Apple's argument is incorrect, because Professor

26  Noll reviewed extensive pricing and product characteristics data that was publicly available.  Dkt.

27  No. 166-1 at 4-6 (citing scholarly papers, analyst reports, trade press reports, public information on

28  features and pricing of iPods, court submissions in this litigation, and four decades of experience in

1   studying the entertainment and information technology industries).[6]  All of this information, like the

2   revenue, cost and sales data, is common to the Class.   Combining this information and his

3   experience, Professor Noll concluded that three methods were potentially available to calculate

4   damages.  *Id.* at 5-6.

5          Moreover, Dr. Burtis has no basis for her assertion that Professor Noll "has not collected any

6   data or shown that data exist to implement these methods."  She never reviewed any of the exemplar

7   data, product feature or pricing data relied on by Professor Noll.  During her deposition, Dr. Burtis

8   stated that she only received and reviewed the data listed in Exhibit 2 to her report.  Merrick Decl.,

9   Ex. 2 at 13:23-14:2, 100:1-13.  This was the same list of documents she reviewed in *Somers*.

10  Notably missing from this list is the exemplar revenue, cost and sales data produced by Apple,

11  hundreds of analyst reports, Apple quarterly earnings calls from 2002 through 2007, scholarly

12  articles, and several other trade press reports that were all reviewed and considered by Professor

13  Noll.  Dkt. No. 166-1 at 5-6.  Accordingly, Dr. Burtis cannot make a genuine assessment of the

14  sufficiency of the bases of Professor Noll's opinions.

15  **V.   DR. BURTIS'S REPORT IS SO INSUBSTANTIAL, IT SHOULD BE
        GIVEN NO WEIGHT**

16

17         Dr. Burtis's critique of Professor Noll's Report should be given no weight.  Besides the vast

18  disparity in the experience and accomplishments of Dr. Burtis and Professor Noll (*see* Dkt. No. 241-

19  2, Ex. 1 (Dr. Burtis CV); *Cf.* to Noll Reply Decl., Ex. 1 (Professor Noll CV), Dr. Burtis conducted

    almost no independent analysis, as demonstrated by the following examples:

20

21         First, Dr. Burtis merely cribbed her critique of Dr. French, ignoring several critical

22  differences between the two experts' approaches.  She did not recognize, for example, that Professor

23  Noll's methodologies do not rely on averages (unlike Dr. French), that Dr. French did not propose

24  relying upon a yardstick or mark-up method (unlike Professor Noll), or that Professor Noll did

25  _____

    [6]     *DRAM*, 2006 WL 1530166, at *8 (accepting Noll's antitrust impact and proposed damages

26  analysis for class certification based on "his analysis and conclusions on actual market share
    estimates, review of contracts entered into between defendants and various DRAM purchasers,

27  industry and trade publications reflecting DRAM pricing information, and actual sales and price data
    thus far produced in discovery").

28

1    identify a beginning date for the period of anticompetitive conduct (unlike Dr. French).  At her
2    deposition, Dr. Burtis could not identify even a single difference between Dr. French and Professor
3    Noll, even though Dr. French was retained by indirect purchasers.  Merrick Decl., Ex. 2 at 84:6-
4    88:21.

5            Second, Burtis revealed at her deposition how little effort went into her report.  She did not
6    write it herself, could not estimate how much time she spent on it, did no data analysis herself, and
7    did not even inquire into the kinds of data Apple maintains about iPods.  *Id.*, Ex. 2 at 12:21-16:1,
8    24:2-13, 97:9-98:7.

9            Third, although she claimed to be aware that the certified direct purchaser class includes
10   resellers (unlike the indirect purchaser class), her report and testimony reflected a complete absence
11   of any thought about how the damages methodologies applied to them.  When asked whether she
12   thought the "net overcharge" adjustment had to be applied in the case of resellers that do not buy
13   iTunes files, she testified:  "It's an interesting question.  Clearly, Best Buy doesn't purchase music,
14   at least as far as I know.  But I don't know.  Maybe they do.  I don't know the answer to that.  I'm
15   not sure.  I would have to think about that."  *Id.*, Ex. 2 at 44:6-45:12.

16           Fourth, Dr. Burtis displayed a palpable discomfort when asked when she first concluded that
17   Professor Noll's methodologies could not work to calculate damages.  *Id.*, Ex. 2 at 76:22-81:17.
18   Apple and its expert obviously initially viewed Professor Noll's proposed damages methodologies as
19   unassailable, or they would have attacked them in their opposition last year.  Following this Court's
20   ruling in *Somers*, however, Apple and Dr. Burtis had a sudden (and unjustified) change of heart.

21   **VI.    APPLE FAILS TO IDENTIFY A SINGLE DEFECT IN PROFESSOR
             NOLL'S METHODOLOGIES THAT DEFEATS CLASS CERTIFICATION**
22
23           As Professor Noll's 56-page reply declaration demonstrates, Apple's and Dr. Burtis's
24   challenge is without support.  Professor Noll addresses in detail each of Dr. Burtis's criticisms of his
25   report.  He makes clear that Dr. Burtis fails in her attempt to simplify his analysis so that it fits
26   within Dr. French's report in the indirect purchaser case.  The two reports bear only the most
27   superficial of resemblance to each other.  Noll Reply Decl. at 11-17.  He also provides further detail
28   as to why the three methodologies he originally proposed – the before-after, mark-up and yardstick

1    methods – can be utilized, based on evidence common to the Class.  In short, Professor Noll rebuts

2    Dr. Burtis's criticisms and shows why he stands behind the conclusions he reached in his report,

3    which the Court found to be sufficient to support class certification.  *Id.* at 2 ("My overall conclusion

4    is that neither the Burtis Report nor any other material I have read causes me to change any of the

5    opinions that I expressed in the Noll Report.").

6         Apple and Dr. Burtis's critique of Professor Noll's declaration is narrowly limited to whether

7    he has proffered a reliable methodology for calculating damages.  Def's Motion at 1-2; Dkt. No. 241

8    at 3.  Neither Apple nor Dr. Burtis challenge Professor Noll's conclusions that economic analysis

9    relying on common evidence could be used to establish market definition, market power,

10   anticompetitive conduct and harm to competition.  Apple's decision not to challenge Professor Noll

11   on liability issues is especially important because damages and liability are closely related.  Noll

12   Reply Decl. at 9-10.  One can use the same methods to show both that Apple's exclusionary conduct

13   increased market power and thereby caused harm to competition, and that the degree of price

14   discrimination increased when Apple began acting anticompetitively.  *Id.* at 10.

15        In its Class Certification Order, the Court identified numerous common issues of law and fact

16   that supported class certification, including market definition, market power, anticompetitive

17   conduct, harm to competition, Apple's willful acquisition and maintenance of monopoly power, and

18   anticompetitive injury.  *See* (Class Certification Order); Noll Reply Decl. at 6-8.  Plaintiffs

19   incorporate by reference their argument and authority contained in their motion for class certification

20   (Dkt. No. 165), and reply memorandum in support of class certification (Dkt. No. 188).  Apple's

21   motion challenges none of these findings.  Nor do they challenge Professor Noll's opinion that all

22   damages models will use evidence common to the Class.  Rather, Apple and Dr. Burtis merely assert

23   that damages cannot be calculated, ***whether for an individual or the class***, because there is no

24   appropriate benchmark to which iPod prices can be compared.  Def's Motion at 7-9; Dkt. No. 241 at

25   3-4; Merrick Decl., Ex. 2 at 30:21-31:16, 35:6-36:1.

26        Professor Noll proposes three potential methodologies for calculating damages: (1) before-

27   after; (2) yardstick; and (3) mark-up.  Dkt. No. 166-1 at 54-59; Noll Reply Decl. at 27-56.  All three

28   are valid, widely-recognized economic methods accepted by courts in antitrust cases.  Noll Reply

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR
DECERTIFICATION OF RULE 23(b)(3) CLASS - C-05-00037-JW(RS)                    - 9 -

1    Decl. at 12-14.  *See DRAM*, 2006 WL 1530166, at *10 (finding Professor Noll's before-after,

2    yardstick, and mark-up methods were valid means of proving damages on class-wide basis); *In re*

3    *Static Random Access (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592, at *6-*7

4    (N.D. Cal. Sept. 29, 2008) (same).  At this stage, plaintiffs are not required to select which method

5    they will ultimately use "as long as they offer a methodology that is generally accepted."  *In re*

6    *Carbon Black Antitrust Litig.*, No. Civ. A. 03-10191-DPW, MDL No. 1543 2005 WL 102966, at *20

7    (D. Mass. Jan. 18, 2005) (quoting *In re Linerboard Antitrust Litig*, 203 F.R.D. 197, 217-18 (E.D. Pa.

8    2001)).  Nor would it be appropriate without the necessary data.  *See* Merrick Decl., Ex. 2 at 69:10-

9    70:9.  As Professor Noll explains in his reply declaration, determining precisely what methodology

10   and equations will be used before the data have been produced would be irresponsible.  Noll Reply

11   Decl. at 29.  Plaintiffs have more than satisfied their burden of coming forward with "seemingly

12   realistic" methodologies for calculating damages on a classwide basis.  *DRAM*, 2006 WL 1530166,

13   at *8; *see also In re Rubber Chems. Antitrust Litig*, 232 F.R.D. 346, 354 (N.D. Cal. 2005) (at class

14   certification stage "the court's inquiry is limited to whether or not the proposed methods are so

15   insubstantial as to amount to no method at all").[7]  Apple, which bears the burden of proof on this

16   motion, has made no showing otherwise.

17        In addition, plaintiffs in antitrust cases are not required to calculate damages with the level of

18   certainty required in some other areas.  *Los Angeles Mem'l Coliseum Comm'n v. NFL*, 791 F.2d

19   1356, 1360 (9th Cir. 1986).  This is because "[t]he vagaries of the marketplace usually deny us sure

20   knowledge of what plaintiff's situation would have been in the absence of the defendant's antitrust

21   _____

22   [7]      At best, the attack on Professor Noll's proposed methodologies are merits-based and not
     appropriate at the class certification stage.  *See SRAM*, 2008 WL 4447592, at *6 ("The validity of

23   [the proposed] methods 'will be adjudicated at trial based upon economic theory, data sources, and
     statistical techniques that are entirely common to the class.'"); *see also Meijer, Inc. v. Abbott Labs.*,

24   No. C 07-5985 CW, 2008 WL 4065839, at *10 (N.D. Cal. Aug. 27, 2008) (rejecting as a merits
     argument, defendants' contention that plaintiff's proposed damages methodologies were

25   inappropriate and required individualized evidence); *DRAM*, 2006 WL 1530166, at *10 (defendants'
     argument that the "'variability'" of the DRAM market invalidated Dr. Noll's proposed damages

26   models was a merits argument that "need not be decided at this stage of the litigation."); *In re*
     *Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 400 (S.D. Ohio 2007) (weaknesses in expert's

27   proposed methodologies irrelevant at the class certification stage where the proposed methodologies
     are reliable).

28

violation." *J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*, 451 U.S. 557, 566-67, 101 S. Ct. 1923 (1981).  The wrongdoer whose anticompetitive conduct has distorted the marketplace thus cannot "insist upon specific and certain proof of the injury which it has itself inflicted."  *Id.*  This standard is especially relevant here, because Apple makes the unsupported – and unsupportable – argument that no plaintiff, not even an individual plaintiff, can calculate damages in this case.  *See* Merrick Decl., Ex. 2 at 30:21-31:16.

A.      **Any Comparison of Professor Noll and Dr. French's Analyses Is Meaningless**

As Professor Noll explains, given the detailed analysis he submitted and the differences between a damages analysis for indirect and direct purchase classes, Dr. Burtis's comparisons of Professor Noll and Dr. French are specious at best.  Professor Noll and Dr. French's reports are the same in only two respects: the two discuss the same three methods for calculating damages and both propose the before-after method as a plausible method.  This is not surprising given courts' routine approval of these methods in antitrust cases to calculate a but-for price of a product.  Noll Reply Decl. at 11-14.  However, this is the extent of their similarity.

Professor Noll and Dr. French's analyses differ in critical ways.  First, because this is a direct purchaser action, Professor Noll's analysis is focused on the overcharge direct purchasers paid for iPods.  Dkt. No. 166-1 at 52; Noll Reply Decl. at 14.  By contrast, Dr. French's proposed methods for calculating damages necessarily included both the overcharge to direct purchasers and pass-through to indirect purchasers.  *See Somers* Dkt. No. 42-1, Affidavit of Gary L. French, ¶64.

Second, Professor Noll provides substantially more analysis on estimating overcharges to direct purchasers.  His discussion is twice as long as Dr. French's discussion of both overcharges and pass-through put together.  Dkt. No. 166-1 at 52-59; *Cf. Somers* Dkt. No. 42-1, ¶¶64-72.  His 56-page reply declaration provides even more thorough analysis.  The Court's concerns about the vagueness of Dr. French's analysis simply do not apply to Professor Noll's detailed reports.  *See Somers* Dkt. No. 80 at 12 (Dr. French "has done nothing more than make a vague five-paragraph long collection of proposals for accomplishing what the Court sees as a daunting task.").

1    Third, unlike Dr. French, Professor Noll actually proposes and discusses yardstick and mark-

2    up as possible methods of calculating damages and collected exemplar data to confirm that these

3    methods would work.  Dkt. No. 161-1 at 56-59; Noll Reply Decl. at 46-56.  As Apple points out, Dr.

4    French provides one-line explanations of the general approach of the yardstick and mark-up methods

5    (*see Somers* Dkt. No. 42-1, ¶65), but only proposes using the before-after method.  Def's Motion at

6    9; *Somers* Dkt. No. 42-1, ¶¶66-68.  This is why Dr. Burtis's critique of Dr. French in the indirect

7    case did not address these methods.  *Somers* Dkt. No. 74 at 8-15.  Thus, Dr. Burtis's claim that

8    "Professor Noll's proposed methods suffer from the same basic flaws this Court found in Dr.

9    French's three methods."  (Dkt. No. 241 at 3; *see also* Def's Motion at 9) is patently false.  Neither

10   Dr. Burtis nor the Court found any "flaws" in Dr. French's yardstick and mark-up methods because

11   Dr. French did not propose them.

12   Fourth, Professor Noll's proposed methodologies are based on actual transaction data and list

13   prices for each iPod model, not averages.  Noll Reply Decl. at 17; Dkt. No. 161-1 at 53.  By contrast,

14   Dr. French proposed aggregating individual transaction prices of retailers and distributors for months

15   and models of iPods to calculate the amount of pass-through to indirect purchasers.  *Somers* Dkt. No.

16   42-1, ¶67.  None of Professor Noll's methods are based on average prices.

17   Finally, and as discussed more fully below, unlike Dr. French, Professor Noll identifies cost

18   and demand variables, such as technological changes in iPods, and identifies the date when the

19   period of anticompetitive harm and damages began.  Dkt. No. 161-1 at 49, 55.

20   Accordingly, Dr. Burtis's attempt to lump Professor Noll into the same category as Dr.

21   French in an effort to discredit Professor Noll's opinions is entirely without merit.

22   **B.    Professor Noll's Methodologies**

23   In contending that his proposed methods will not work, Dr. Burtis and Apple state that

24   Professor Noll did not: (1) develop any actual models, propose any equations, or identify variables to

25   be used in calculating damages; (2) collect the necessary data; or (3) propose ways to overcome

26   obstacles to implementing his methods.  Def's Motion at 7-9; Dkt. No. 241 at 3-4.  Besides ignoring

27   the impact of Apple's refusal to produce data, and the fact that plaintiff is not required to produce a

28   completed damages study at the class certification stage, Apple's arguments are based on a flawed

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR
DECERTIFICATION OF RULE 23(b)(3) CLASS - C-05-00037-JW(RS)          - 12 -

1   analysis and a distortion of Noll's Report.  As demonstrated below, Apple's arguments fail as to all

2   three of Professor Noll's proposed damages methodologies.

3                    **1.        Before-After Method**

4           The before-after method of calculating damages compares the price of products in the

5   "during" period, the period when the anticompetitive conduct affected the price of the products, with

6   prices of products in the periods when the anticompetitive conduct had no effect.  Dkt. No. 161-1 at

7   55-56; Noll Reply Decl. at 27-28.  This is a recognized method of proving impact and damages in

8   antitrust cases.  *See, e.g.*, *DRAM*, 2006 WL 1530166, at *10; *Rubber Chems.*, 232 F.R.D. at 353; *In*

9   *re Citric Acid Antitrust Litig.*, Nos. 95-1092, C-95-2963 FMS, 1996 WL 655791, at *7 (N.D. Cal.

10  Oct. 2, 1996).[8]  Where the product at issue is available in different models or with different

11  characteristics, a regression analysis is commonly implemented.  Dkt. No. 161-1at 55; Noll Reply

12  Decl. at 27-28; *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 145 (C.D. Cal. 2007).

13          Here, Professor Noll proposes comparing the price of iPods in the during period with prices

14  of iPods when Apple's anticompetitive conduct had no effect.  Dkt. No. 161-1 at 55.  This will

15  include a regression analysis to account for technological advances in product features of iPods over

16  time as well as other cost and demand factors.  *Id.*; Noll Reply Decl. at 29-30.

17          Dr. Burtis contends Professor Noll's before-after method of proving damages is flawed for

18  three reasons: (1) Professor Noll fails to take into account that there were some models of iPods sold

19  in the before period that were not sold in the during period and vice versa; (2) Professor Noll omits

20  certain supply and demand variables that are explanatory of the price of iPods;[9] and (3) there is

21  insufficient pricing data in the before period to conduct the analysis.  Def's Motion at 7-8; Dkt. No.

22  241 at 5-10; Merrick Decl., Ex. 2 at 30:21-31:16.

23

24  ———————————————

25  [8]        Dr. Burtis herself acknowledges that such analyses are routinely conducted.  *See* Merrick
26  Decl., Ex. 2 at 62:20-65:11, 153:14-154:8, 187:2-24.

27  [9]        Professor Noll assumes that by "supply" Dr. Burtis is referring to cost variables.  Noll Reply
    Decl. at 37.

28

a.     **Professor Noll Sufficiently Explained How He Will Account for Product Differences and Other Necessary Variables**

The fact that multiple models of iPods exist does not make the before-after model unworkable. Indeed, courts routinely find the before-after method appropriate even where there are hundreds of different product variations within a particular market. *See, e.g.*, *DRAM*, 2006 WL 1530166, at *10 (in a case with hundreds of product variations, the court rejected defendants' argument at the class certification stage that Professor Noll's application of the before-after method was unworkable because of the "'variability' present in the DRAM market"); *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 268 (D.D.C. 2002) (upholding method of establishing damage in the "but-for" world despite fact that varied products existed); *Citric Acid*, 1996 WL 655791, at *6-*7 ("Diversity of products and pricing does not necessarily mean that plaintiffs cannot show class-wide impact . . . .").

The *DRAM* case is particularly instructive. There, the market at issue was much more complex than here. It consisted of many more varieties of DRAM than there are Apple models. *DRAM*, 2006 WL 1530166, at *1. There, as here, defendants challenged Professor Noll's testimony in support of class certification. *Id.* at *8. "They contend that the complexity of the DRAM market, and the diversity of DRAM products and prices present therein, makes common proof of impact impossible." *Id.* Despite this very complex market, the court in *DRAM* held that Professor Noll's three methodologies for showing impact and damages – the same three methodologies he proposes employing here – were sufficient to support class certification. *Id.* at *9; *see also Carbon Black*, 2005 WL 102966, at *19-*20 (class certified where before-after method used to calculate damages for varying products with varying prices).

Here, a before-after model will be used to determine the price of a single product – an iPod – in a significantly less complicated market. *See* Merrick Decl., Ex. 1 at 70:25-71:12. There are only 43 models of the iPod, all produced by Apple. Although "different models of iPod have different functionality and have different prices. . . , [t]he differences among them and the changes in prices through time . . . should in part be determined by their attributes." *Id.*, Ex. 1 at 246:21-247:4; Dkt. No. 161-1 at 55-56; Noll Reply Decl. at 19-20. This can be determined with the use of objective

1    criteria obtained either from Apple's internal records or public sources, all of which are common to

2    the Class.  Dkt. No. 161-1 at 49; Noll Reply Decl. at 19-20, 37; Merrick Decl., Ex. 1 at 70:25-71:12.

3         Professor Noll proposes using a hedonic regression "[b]ased on the qualitative attributes of

4    the product, and the prices of other products, and other factors that would increase demand."

5    Merrick Decl., Ex. 1 at 81:23-82:4; Noll Reply Decl. at 39-40.  "Hedonic regressions are widely

6    used in economics to analyze differentiated products, especially with frequent product innovation,

7    including markets for consumer electronics."  Noll Reply Decl. at 39 and n.86 (citing examples).[10]

8         Professor Noll would start by analyzing all plausible factors that might be significant in

9    explaining price.  Dkt. No. 161-1 at 55; Noll Reply Decl. at 28-30; Merrick Decl., Ex. 1 at 79:19-

10   81:16, 246:15-247:21.  Professor Noll has identified product features such as video and photo

11   capabilities, internet access, memory, size, weight, battery life, color, as well as features available on

12   other products and their prices, the availability of digital downloads, and the life cycle of the iPod, as

13   possible cost and demand variables that may be determinative of price.  Dkt. No. 161-1 at 55; Noll

14   Reply Decl. at 29; Merrick Decl., Ex. 1 at 82:13-83:4, 83:12-85:13, 97:10-102:2, 101:15-102:2,

15   112:23-113:8, 128:20-130:1; Merrick Decl., Ex. 2 at 135:8-12.

16        Dr. Burtis contends that because the iPod models sold in the before period have different

17   features than the models in the during period, it is impossible to conduct a before-after analysis.

18   Dkt. No. 241 at 7-8; Merrick Decl., Ex. 2 at 30:21-31:9, 31:17-32:15.  This simplistic complaint

19   completely ignores the purpose of a regression analysis.  *See* Noll Reply Decl. at 35, 36.  A

20

21   [10]    *See also Sun Microsystems Inc. v. Hynix Semiconductor, Inc.*, 608 F. Supp. 2d 1166, 1207-08
     (N.D. Cal. 2009) (using multiple regression analyses in a before-after model to control for supply

22   and demand determinates of the price of DRAM); Merrick Decl., Ex. 3, Daniel L. Rubinfeld,
     *Quantitative Methods in Antitrust*, 1 Issues in Competition Law And Policy 723, 724 (ABA Section

23   of Antitrust Law) (2008) ("A typical reduced-form model might explain the variation in the price of
     a product as a function of a series of variables relating to cost, demand, and market structure."); *Live*

24   *Concert*, 247 F.R.D. 98 (using regression analysis to estimate the but-for price of concert tickets
     while controlling for artist quality and other factors affecting price); *In re Polyester Staple Antitrust*

25   *Litig.*, MDL No. 3:03 CV 1516, 2007 WL 2111380, at *29 (W.D.N.C. July 19, 2007) ("'In
     estimating the "but-for" price, the regression analysis attempts to control for ordinary market factors

26   so that the effect of the conspiracy, if any, on price can be isolated . . . .'"); *Freeland v. AT&T Corp.*,
     238 F.R.D. 130, 149 n.15 (S.D.N.Y. 2006) (citing Bureau of Labor Statistics, U.S. Dep't of Labor,

27   *BLS     Handbook     of     Methods*,     Ch.    14    at    5    (available    at
     http://stats.bls.gov/opub/hom/pdf/homch14.pdf)).

28

1  regression analysis, like the one proposed by Professor Noll, controls for cost and demand variables

2  that are determinative of price and change over time, including product features.  Dkt. No. 161-1 at

3  55; Noll Reply Decl. at 13-14, 18, 28-30; Merrick Decl., Ex. 1 at 70:13-24, 80:12-83:5; *Cf.* Merrick

4  Decl., Ex. 2 at 10:13-11:2, 33:5-9, 60:15-23 (agreeing that it is possible to take into account changes

5  in products features).

6          Importantly, as Professor Noll explained, omitted variables are only significant if they are

7  positively correlated to the period of exclusivity.  Noll Reply Decl. at 33; Merrick Decl., Ex. 1 at

8  81:6-16, 111:15-112:11; Merrick Decl., Ex. 3 at 726.  It is incorrect to say, as Dr. Burtis does, all

9  factors that are correlated to iPod prices must be included.  Dkt. No. 241 at 6.  As Professor Noll

10  explained, "[i]t's not that [the variables] have a correlation to price.  It's that they – in order for the

11  specification error of leaving those variables out to produce an inconsistent or biased estimate of the

12  effect of exclusivity, it has to be the case that the exclusivity period is correlated with this alternative

13  source."  Merrick Decl., Ex. 1 at 112:5-11; Noll Reply Decl. at 33.

14          In fact, if the omitted factors are negatively correlated to the conduct, then the impact of the

15  anticompetitive conduct is underestimated.  Merrick Decl., Ex. 1 at 81:6-16; Noll Reply Decl. at 34.

16  For example, omission of the "coolness" factor and/or Apple's "pricing strategy," are only possibly

17  important if they are correlated to the period of anticompetitive conduct.  Dr. Burtis provides no

18  evidence that this is the case or that Professor Noll would leave these factors out of a regression

19  analysis if they were determinative of price.[11]

20          Dr. Burtis also claims that Professor Noll has failed to prove that data exists to measure the

21  variables needed to run a regression analysis.  Dkt. No. 241 at 7.  The appropriate variables can be

22  identified, and the effect therefrom measured, by analysis of Apple's own documents, including

23  Apple's product specifications.  As Professor Noll notes, it is not plausible that "Apple does not

24  know or cannot produce in discovery the specifications for its own products."  Noll Reply Decl. at

25  37.  And "[e]ven if a tsunami has destroyed Apple's records, all is not lost," because plaintiffs can

---

[11]      As Professor Noll explains, even variables that are not "observable" can be accounted for in a regression using the "instrumental approach."  Noll Reply Decl. at 33-34 (explaining this approach).

1   examine the 43 iPod models, consult industry trade sources that provide "teardown reports" of

2   electronics products components or consult product reviews with extensive information about

3   technical features.  *Id.*  Professor Noll has already reviewed public information on pricing and iPod

4   product attributes to confirm that such a regression could work.  Dkt. No. 161-1 at 53; Noll Reply

5   Decl. at 37.

6          By contrast, Dr. Burtis has conducted no analysis of her own to support her contention that

7   such a regression is impossible.  Merrick Decl., Ex. 2 at 12:21-13:4, 15:9-16:1, 26:2-5.  Dr. Burtis's

8   theory that the before-after analysis will not work here because "you have characteristics of products

9   that exist in only one of the two periods" (*id.*, Ex. 2 at 61-62) is, as Professor Noll explains, "simply

10  incorrect as a matter of economic methodology."  Noll Reply Decl. at 38.  In fact, Dr. Burtis's

11  argument makes sense only if the measure of anticompetitive conduct is nearly perfectly correlated

12  with the measure of product features.  *Id.*  This would only happen if an important product

13  characteristic was present when Apple's exclusionary conduct began and remained unchanged over

14  time.  *Id.* at 39.  As Professor Noll explained, he has examined iPod product features and is not

15  aware of any such characteristic.  *Id.*  ("In examining the features of the iPod that have been

16  introduced since April 2003, I am not aware of any that were introduced around that date and have

17  remained unchanged since that time.  If there is not near-perfect overlap between the measure of an

18  important feature and the measure of the exclusionary conduct, Dr. Burtis's claim is incorrect.").[12]

19         Professor Noll has not yet written an equation specifying all the variables to be used in a

20  regression analysis because not all necessary data has been produced.  Noll Reply Decl. at 18;

21  Merrick Decl., Ex. 1 at 96:24-97:9.  Once full data is collected, those variables that are "statistically

22

---

23  [12]    Dr. Burtis references her article on the effects of Hurricane Katrina on oil refineries as an
    example of a before-after test that calculated prices in the but-for world.  Dkt. No. 241 at 2.  Dr.
24  Burtis states that she was able to perform the test because she had sufficient data to forecast prices
    after Katrina.  *Id.*  When converted into a hypothetical antitrust damages example, this before-after
25  regression would not fit the standard for a valid damages model as described by Dr. Burtis.  Noll
    Reply Decl. at 40-43.  Rather, suffering from the alleged defects Dr. Burtis has found in the Dr.
26  French and Professor Noll reports, the Katrina regression uses average prices, assumes all refineries
    have the same output mix, assumes that relative quantities of refinery outputs are fixed over time and
27  among refineries, assumes that demand after the hurricane is the same as before the hurricane, and
    uses seasons, as "a crude instrument," for omitted variables related to weather.  *Id.* at 43.

28

1    significant and quantitatively important in explaining price" will be identified.  Noll Reply Decl. at

2    28-32.  Even Dr. Burtis agrees with this basic approach.  Merrick Decl., Ex. 2 at 69:10-70:9.

3           Finally, to the extent Dr. Burtis and Apple attack the variables Professor Noll will account for

4    in his regression analysis, this is a merits argument not appropriate for the class certification stage.

5    *See Sun Microsystems*, 608 F. Supp. 2d at 1208-09 ("[T]o the extent that defendants challenge the

6    accuracy or propriety of these variables, it is an issue that goes to the weight, rather than the

7    admissibility, of [the expert]'s testimony.").

8                        **b.     "Coolness" Does Not Prevent Construction of an
                                  Effective Damages Model**
9

10          Dr. Burtis claims that identification and quantification of the determinative factors in this

11   case is "unusually difficult" (Merrick Decl., Ex. 2 at 102:21-103:12, 115:13-116:2; *Cf. id.*, Ex. 2 at

12   23:2-25:9), but she has not collected any data or conducted any analysis to support this conclusion.

     *Id.*, Ex. 2 at 12:21-13:12, 170:18-171:11, 183:20-184:6.  Dr. Burtis's failure to do so is telling,
13
     because as Apple's expert, she had access to any Apple data she requested.  *Id.*, Ex. 2 at 13:17-15:8.
14
     Nor is she able to identify any plausible factors beyond those discussed by Professor Noll except for
15
     the iPod's "coolness."[13]  *See* Dkt. No. 241 at 7; Merrick Decl., Ex. 2 at 103:13-19; 106:21-107:24.
16

17          Dr. Burtis opines that "coolness" is "an important determinant of prices" and omission of this

18   variable "would bias an estimate of the alleged overcharge."  Dkt. No. 241 at 7; Merrick Decl., Ex. 2

19   at 183:20-184:2.  Yet, Dr. Burtis has not done even the most cursory analysis to support this

     conclusion.  *Id.,* Ex. 2 at 104:1-9; 184:3-6.  As Professor Noll explains, "[g]iven that Apple products
20
     are commonly referenced as cool and that Apple's CEO has been interviewed about the source of
21
     coolness, the obvious next step is to learn through discovery the role of coolness in Apple's
22
     marketing and product planning."  Noll Reply Decl. at 24.  Dr. Burtis did none of this.
23

24          Indeed, Professor Noll concluded from his own research that "there is no reason to treat

     coolness seriously in a damage analysis," because "there is absolutely no reason to believe that the
25

26   ―――――――――――――――――

     [13]    Notably, Dr. Burtis admitted she had never used "coolness" in any other economic context.
27   Merrick Decl., Ex. 2 at 103:20-25.  This is a word commonly used by Apple throughout this
     litigation in an effort to raise individual issues where none exist.  *See, e.g.*, Dkt. No. 200 at 15.
28

1    coolness of iPods has increased" since their introduction in 2001.  Noll Reply Decl. at 24.  For this

2    reason, there is "no danger that the effects of the alleged anticompetitive conduct are likely to be

3    confounded with an increase in the attachment of consumers to the product."  *Id.*  Moreover, unlike

4    Dr. Burtis, who merely asserted that she does not "know of any way to measure [coolness]" (Merrick

5    Decl., Ex. 2 at 198:7-15), Professor Noll articulated a method of measuring coolness, if needed, by

6    identifying market and academic research on coolness and what it means in the iPod market.  Noll

7    Reply Decl. at 20-25.  During his deposition, he explained that while "coolness" could not be

8    measured directly, it could be inferred "indirectly from the results."  Merrick Decl., Ex. 1 at 87:6-15.

9    This would be done by measuring objective attributes that people find "cool" and thus, encourage

10   them to purchase an iPod.  *Id.*  His theory was confirmed by his market and academic research which

11   found that coolness is derived from the attributes of a product and not from unmeasurable success in

12   the marketplace.  Noll Reply Decl. at 21-23.  Such objective attributes can be measured and included

13   in a regression analysis.[14]  Merrick Decl., Ex. 1 at 86:6-89:10; *see also* Merrick Decl., Ex. 3 at 730

14   (describing the importance of accounting for "marketing variables" with branded products that may

15   affect demand).

16           In short, Dr. Burtis's contention that "coolness" renders a before-after methodology

17   unworkable has no basis.

18                   **c.      Apple's "Pricing Strategy" Does Not Preclude an
                                Effective Damages Model**

19           With respect to Apple's "pricing strategy," Dr. Burtis contends Apple's pricing of iPods

20   "may be more complex" because there are relatively few price changes of iPods over time.  Merrick

21   Decl., Ex. 2 at 106:21-107:9.  Still, Dr. Burtis provides no data to support this contention and indeed

22   has not collected any data from Apple or done any analysis of data herself.[15]  Dkt. No. 241 at 7;

23   Merrick Decl., Ex. 2 at 14:21-24, 109:23-110:2, 112:10-113:10, 175:5-22.  As Dr. Burtis admits, if

24

25   [14]      Indeed, the fact that people buy iPods for various reasons is not unique to iPods and thus
26   does not pose a unique problem to this case.  *See* Merrick Decl., Ex. 2 at 106:16-20.

27   [15]      If Apple uses this type of "pricing strategy," it is not unique to Apple but is present with most
     consumer electronics.  Merrick Decl., Ex. 1 at 130:2-10.

28

1   Apple's pricing strategy is a determinative factor of price, it would be identifiable by objective

2   information common to the class (Merrick Decl., Ex. 2 at 112:10-113:10, 172:14-19) and could be

3   accounted for in a regression analysis. *See* Dkt. No. 241 at 7 ("A model that includes demand and

4   supply variables will show that those variables do not influence Apple's prices, but without some

5   explanatory variable to capture Apple's strategy, the model will fail to explain prices at all."). Thus,

6   without full discovery a regression model could not be competently specified. Noll Reply Decl. at

7   29-31.

8             **d.     Dr. Burtis Does Not Explain Why the Before Period Is**
                       **Too Short**
9
10          Again without support, Dr. Burtis makes the blanket conclusion that "[t]he period before the

11  alleged violation was too short . . . ." Dkt. No. 241 at 7-8. Although not entirely clear, Dr. Burtis

     seems to contend that the period is too short because there is "limited price data available." *Id.* at 8;
12
     Merrick Decl., Ex. 2 at 89:21-90:11, 152:3-19. However, Dr. Burtis has not collected any pricing
13
     data and has done no analysis to determine if the available data is sufficient. *Id.*, Ex. 2 at 14:21-15:8,
14
     109:23-110:2. Nor was she able, at her deposition, to identify any antitrust case in which a before-
15
     after methodology was used and the "before" period was longer than 18 months.
16
            Professor Noll has demonstrated how changes in product features over time do not preclude
17
     using the before-after method to calculate damages. To the extent Dr. Burtis is arguing that
18
     Professor Noll does not identify when Apple's anticompetitive conduct began, he reiterates that the
19
     class period began when Apple launched iTS and why this is a reasonable starting period for the
20
     class. Noll Reply Decl. at 45. Further, in his reply declaration, Professor Noll addresses how
21
     Apple's change in DRM policy in 2009 may impact the length of the after period. *Id.* at 44-46.
22
            None of Apple's and Dr. Burtis's criticisms of the before-after method support decertification
23
     of the Class. In fact, Professor Noll is confident that a before-after model can be implemented in this
24
     case. Merrick Decl., Ex. 1 at 70:25-72:1.
25
             **2.     Professor Noll Has Demonstrated that the Mark-Up Method**
26                    **Can Be Used in This Case**

27          Professor Noll is also confident that the mark-up method can be successfully utilized. *Id.*,

28  Ex. 1 at 73:10-19, 75:2-13. Dr. Burtis makes the conclusory and incorrect statement that the mark-

---

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR
DECERTIFICATION OF RULE 23(b)(3) CLASS - C-05-00037-JW(RS)                    - 20 -

1    up and yardstick methods are "effectively the same."  Dkt. No. 241 at 4, 12-13.  In his reply

2    declaration, Professor Noll discusses in detail how and why the two approaches differ (Noll Reply

3    Decl. at 46-49) and how his two proposed versions of the mark-up method can be used to calculate

4    damages on a classwide basis.  *Id.* at 46-51; *see also* Dkt. No. 161-1 at 58-59.

5            Unlike the yardstick method, Professor Noll's proposed mark-up method does not require

6    identification of a single competitive benchmark.  Noll Reply Decl. at 50.  In fact, it is more reliable

7    to use a group of several leading products in other markets where firms have similar inputs, employ

8    a similar production technology, and have similar sales.  *Id.*  This type of analysis was illustrated in

9    an actual published study on iPod profitability, which Professor Noll cited in his Report and which

10   Dr. Burtis fails to address.  *Id.* at 51; Dkt. No. 161-1 at 31 n.26 (citing Dedrick, *et al*, *Who Profits*

11   *from Innovation in Global Value Chains? A Study of the iPod and Notebook PCs*, Personal

12   Computing Industry Center, Univ. of Cal., Irvine, May 2008).[16]

13           The second mark-up method Professor Noll proposes is the game-theoretic model of price

14   formulation in an oligopolistic differentiated product market.  Noll Reply Decl. at 51-55; Dkt. No.

15   161-1 at 59.  Dr. Burtis asserts that Professor Noll did not identify any similar consumer electronic

16   markets.  Dkt. No. 241 at 13-14.  However, throughout his report, Professor Noll identified several

17   potential comparative markets, such as smart phones and PDAs.  Noll Reply Decl. at 52; Dkt. No.

18   161-1 at 56-57.  Further in his reply declaration, Professor Noll goes into further detail as to why the

19   dominant game-theoretic models, Nash-Cournot and Bertrand, can be used to develop a model to

20   calculate damages for differentiated products.  Noll Reply Decl. at 54-55.  Although Professor Noll

21   has not yet developed the exact model because the necessary discovery has not been completed, he

22   has reviewed exemplar data from Apple which supports his conclusion that the mark-up method can

23   be used.

24

25

26   _____

     [16]      Dr. Burtis also seems to misapprehend the mark-up method as a means of "estimating the
27   competitive price of iPods."  Dkt. No. 241 at 13.  In fact, the method seeks to calculate the iPod's
     profitability (mark-up), not price.  Noll Reply Decl. at 50.
28

1    In summary, comparing Professor Noll's detailed analysis of his proposed mark-up method

2    with Dr. Burtis's cursory criticisms clearly shows that Apple has no grounds to argue that the

3    Court's initial class certification decision was in error.

4            **3.      Professor Noll Has Demonstrated that the Yardstick Method**
                       **Can Be Used in This Case**
5
6           As an alternative methodology, Professor Noll proposes using the yardstick method.  Dkt.

7    No. 161-1 at 56; Noll Reply Decl. at 46-48.  The yardstick method estimates the competitive

8    benchmark by comparing the prices of iPods to the prices of other products that are subject to similar

9    market forces except for the anticompetitive conduct.  Noll Reply Decl. at 47-48.  This is routinely

10   upheld by courts in the Ninth Circuit.  *See Live Concert*, 247 F.R.D. at 145.

11          Professor Noll identified several products that could be used as possible benchmarks,

12   including personal digital assistants, portable CD/DVD players, and competing portable digital

13   media players.  Dkt. No. 161-1 at 57; Dkt. No. 241 at 11; Merrick Decl., Ex. 1 at 72:2-16; Merrick

14   Decl., Ex. 2 at 92:23-93:11.

15          Dr. Burtis contends that Professor Noll is not confident in this method (Dkt. No. 241 at 10),

16   but Dr. Burtis herself has not conducted any economic analysis as to whether a benchmark product

17   could be identified.  Merrick Decl., Ex. 2 at 92:2-95:6, 124:5-17, 125:18-127:9, 154:11-156:17.

18   Contrary to published research, Dr. Burtis states that because the benchmark products must be so

19   technically and functionally similar and sold under the same market conditions, they must be

20   essentially the same.  Dkt. No. 241 at 10-11; *Cf.* Noll Reply Decl. at 46-47.  This misses the point of

21   the yardstick method.  The yardstick method is intended to identify products in other markets that are

22   similar, not identical.  Dkt. No. 161-1 at 56; Noll Reply Decl. at 46-47.  Because the comparable

23   products should typically be in another market, this necessarily means that the products will not be

24   identical.  Her conclusion appears to reflect Dr. Burtis's broader opinion that price regressions

25   cannot be implemented in markets with differentiated products.  In fact, Dr. Burtis suggests that this

26   method is not usable in any case.  Merrick Decl., Ex. 2 at 179:25-180:14.

27          Moreover, it is completely irrelevant that Dr. French "abandoned" the yardstick approach.

28   Def's Motion at 9.  Indeed, Dr. French never proposed this as a possible method.  *See* discussion

1    *supra* at §VI.B.3.  Professor Noll does.  While Professor Noll suggests that this method poses more

2    challenges than the before-after and mark-up methods, he remains confident that the yardstick is still

3    a possible method.  Merrick Decl., Ex. 1 at 72:2-73:9.  His concerns relate to the costs and

4    availability of data from third party sources, not whether the method can be implemented.  Noll

5    Reply Decl. at 48.

6            The yardstick method is only one of three generally accepted methods proposed by Professor

7    Noll.  Professor Noll is not required to select a method at this stage, so long as he proposes a

8    generally accepted method.  *See Carbon Black*, 2005 WL 102966, at *20 ("There is no requirement

9    that the plaintiffs choose one method now, as long as they offer a methodology that is generally

10   accepted.").  Plaintiffs have satisfied their minimum burden.

11   **VII.    THE COURT ALREADY CONSIDERED AND REJECTED APPLE'S**
             **ARGUMENT THAT A POSSIBLE UNDERCHARGE OF ITS FILES**
12           **MUST BE CONSIDERED IN THE DAMAGES MODEL**

13           Citing the same case law, and now relying on Dr. Burtis for a second shot, Apple once again

14   contends that Professor Noll's proposed damage methodologies fail because he does not consider a

15   possible undercharge some Class members may have received on their iTS purchases.  Def's Motion

16   at 9; *see also* Dkt. No. 175 at 18-19 (Apple presenting same arguing in opposition to class

17   certification); Dkt. No. 188 (plaintiffs responded to argument in reply brief in support of class

18   certification).  "Mere repetition of arguments that the court declined to accept in deciding plaintiffs'

19   motion for certification are not adequate to support a decertification request."  *Heffelfinger v. Elec.*

20   *Data Sys. Corp.*, 580 F. Supp. 2d 933, 968 n.119 (C.D. Cal. 2008).  Because this argument was fully

21   briefed and argued at the hearing before the Court on plaintiffs' motion for class certification

22   (Merrick Decl., Ex. 4, December 16, 2008 transcript at 9-11, 33-39), it does not form an adequate

23   basis for decertification.

24           As plaintiffs previously demonstrated, defendant's "net overcharge" theory has not been

25   adopted by the Ninth Circuit, even in a tying case.  Because the Court did not certify plaintiffs' tying

26   claims, that argument has even less relevance on this motion.  *See, e.g.*, *In re Wellbutrin SR Direct*

27   *Purchaser Antitrust Litig.*, No. 04-5525, 2008 WL 1946848, at *8 (E.D. Pa. May 2, 2008) (any

28   economic benefits received by some victims of an illegal overcharge were "legally irrelevant

1   because the overcharge itself – not any economic effect of the overcharge – is the proper measure of

2   recovery. . . ; if an overcharge occurred, **all** class members are entitled to recover, whether or not

3   some plaintiffs experienced a net benefit while others experienced a net loss.") *Id.* at *6 (emphasis

4   in original); *see also Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 327 (9th Cir. 1980)

5   (permitting plaintiff to sue for "the full overcharge" even if a windfall would occur, so long as "the

6   antitrust laws are vindicated and the defendant does not suffer multiple liability").

7            Similarly, here, it is irrelevant whether some Class members benefited from their purchase of

8   iTS files; the controlling question is whether Class members suffered an overcharge for their iPod

9   purchases.  Thus, Professor Noll's damages methodologies appropriately consider the amount of

10  overcharge plaintiffs and Class members suffered, if any.

11           Dr. Burtis cites no data or any source in law and/or economics to support her conclusion, nor

12  has she conducted any analysis to determine if this is even an issue here. *See* Dkt. No. 241 at 15-16.

13  Instead, she blindly asserts that because plaintiffs have alleged a tie between the iPod and iTS files

14  "the demand for and price of files iTS would have decreased." *Id.*; Merrick Decl. Ex. 2 at 40:14-

15  41:24.  There is no support that such an effect exists.  Noll Reply Decl. at 26-27.  As Professor Noll

16  explained, this case is not one where market conditions have lowered the cost of the tying product

17  because there is no fixed relationship between purchases of iPods and purchases of iTS files.  *See*

18  Merrick Decl., Ex. 1 at 141:15-143:12.  Moreover, there is no indication that Apple was free to set

19  iTS prices based on demand.  Noll Reply Decl. at 26-27.  Thus, regardless of the fact that plaintiffs

20  have asserted a tying claim, a damages model need not take into account the price of iTS files.[17]

21           Finally, Dr. Burtis's and Apple cannot explain how their "net overcharge" argument would

22  apply to the reseller members of the certified class, who have not purchased any iTMS files.

23  Merrick Decl., Ex. 2 at 44:6-45:12.

24

25

---

26  [17]     Apple's "net" overcharge argument only pertains to tying claims.  *See Seigel v. Chicken
    Delight, Inc.*, 448 F.2d 43, 52-53 (9th Cir. 1971).  Plaintiffs' rule of reason tying claim is presently
27  before the Court and if dismissed, Apple's argument would be entirely irrelevant.

28

## VIII.   CONCLUSION

For these reasons, Apple's request to decertify the Rule 23(b)(3) class should be denied.

DATED:  October 19, 2009                    Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JOHN J. STOIA, JR.
BONNY E. SWEENEY
THOMAS R. MERRICK


                              s/ Bonny E. Sweeney
                              BONNY E. SWEENEY

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

THE KATRIEL LAW FIRM
ROY A. KATRIEL
1101 30th Street, N.W., Suite 500
Washington, DC  20007
Telephone:  202/625-4342
202/330-5593 (fax)

Co-Lead Counsel for Plaintiffs

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
FRANCIS J. BALINT, JR.
ELAINE A. RYAN
TODD D. CARPENTER
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone:  602/274-1100
602/274-1199 (fax)

BRAUN LAW GROUP, P.C.
MICHAEL D. BRAUN
12304 Santa Monica Blvd., Suite 109
Los Angeles, CA  90025
Telephone:  310/442-7755
310/442-7756 (fax)

MURRAY, FRANK & SAILER LLP
BRIAN P. MURRAY
JACQUELINE SAILER
275 Madison Avenue, Suite 801
New York, NY  10016
Telephone:  212/682-1818

1          212/682-1892 (fax)

2          GLANCY BINKOW & GOLDBERG LLP
           MICHAEL GOLDBERG
3          1801 Avenue of the Stars, Suite 311
           Los Angeles, CA  90067
4          Telephone:  310/201-9150
           310/201-9160 (fax)
5
           Additional Counsel for Plaintiffs
6
   S:\CasesSD\Apple Tying\BRF00062446_Opp to Mot.doc
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR
DECERTIFICATION OF RULE 23(b)(3) CLASS - C-05-00037-JW(RS)          - 26 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 19, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 19, 2009.

 s/ Bonny E. Sweeney
BONNY E. SWEENEY

COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: bonnys@csgrr.com

# Mailing Information for a Case 5:05-cv-00037-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com

- **Andrew S. Friedman**
  rcreech@bffb.com,afriedman@bffb.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com

- **Roy A. Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com,valdajani@jonesday.com

- **Thomas Robert Merrick**
  tmerrick@csgrr.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com,ewallace@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,ybennett@jonesday.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **Elaine A. Ryan**
  eryan@bffb.com,pjohnson@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Adam Richard Sand , Esq**

invalidaddress@invalidaddress.com

- **Michael Tedder Scott**
  michaelscott@jonesday.com,gwayte@jonesday.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **John J. Stoia , Jr**
  jstoia@csgrr.com

- **Tracy Strong**
  invalidaddress@invalidaddress.com

- **Bonny E. Sweeney**
  bonnys@csgrr.com,proach@csgrr.com,E_file_sd@csgrr.com,christinas@csgrr.com

- **Helen I. Zeldes**
  helenz@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Todd David Carpenter
Bonnett, Fairbourn, Friedman, & Balint
2901 N. Central Avenue
Suite 1000
Phoenix, AZ 85012
```