# EXHIBIT 4

```
 1              IN THE UNITED STATES DISTRICT COURT

 2           FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                     SAN JOSE DIVISION

 4

 5                                  )  C-05-0037-JW
                                    )
 6    "THE APPLE IPOD ITUNES        )  DECEMBER 16, 2008
      ANTI-TRUST LITIGATION."       )
 7                                  )  PAGES 1 - 54
      _____ )
 8                                          COPY

 9

10

11          THE PROCEEDINGS WERE HELD BEFORE

12       THE HONORABLE UNITED STATES DISTRICT

13                 JUDGE JAMES WARE

14    A P P E A R A N C E S:

15

16    FOR THE PLAINTIFFS:  COUGHLIN, STOIA, GELLER, RUDMAN &
                           ROBBINS
17                         BY:  BONNY E. SWEENEY
                           655 W. BROADWAY
18                         SAN DIEGO, CALIFORNIA 92101

19                         BRAUN LAW GROUP, P.C.
                           BY:  MICHAEL D. BRAUN
20                         12304 SANTA MONICA BOULEVARD
                           SUITE 109
21                         LOS ANGELES, CALIFORNIA 90025

22
          (APPEARANCES CONTINUED ON THE NEXT PAGE.)
23

24    OFFICIAL COURT REPORTER:  IRENE RODRIGUEZ, CSR, CRR
                                CERTIFICATE NUMBER 8074
25

                                                          1
```

```
 1    FIVE OF THOSE CEMETERIES ACTUALLY REQUIRED THAT A
 2    PERSON WHO WANTED TO PURCHASE A CEMETERY LOT ALSO
 3    PURCHASED A MARKER.
 4              THE NINTH CIRCUIT HELD THAT THAT WAS
 5    SUFFICIENT.  AND THE NINTH CIRCUIT SAID THAT
 6    RELYING UPON THE LEADING SUPREME COURT TYING CASES,
 7    THE COURT SAID THE NINTH CIRCUIT, OUR READING OF
 8    THE SUPREME COURT'S OPINIONS SUPPORTS THE VIEW THAT
 9    COERCION MAY BE IMPLIED FROM A SHOWING THAT AN
10    APPRECIABLE NUMBER OF BUYERS HAVE ACCEPTED
11    BURDENSOME TERMS SUCH AS THE TYING PRODUCT MARKET.
12              COERCION OCCURS WHEN THE BUYER MUST
13    ACCEPT THE TIED ITEM AND FOREGO POSSIBLY DESIRABLE
14    SUBSTITUTES.
15              WE ALSO CITED A NUMBER OF OTHER CASES
16    SUPPORTING THE POINT MADE BY THE NINTH CIRCUIT IN
17    MOORE.  FOR EXAMPLE, THE BAFUS CASE, WHICH WE CITE
18    IN OUR PAPERS, YOUR HONOR, CERTIFIED A CLASS ON THE
19    BASIS THAT THERE WAS AN APPRECIABLE NUMBER OF
20    BUYERS WHO WERE INFLUENCED BY THE TIE RATHER THAN
21    AN ABSOLUTE REQUIREMENT THAT EACH AND EVERY MEMBER
22    OF THE PROPOSED CLASS WAS BOUND BY THE TIE.
23              APPLE ALSO MAKES THE ARGUMENT THAT THE
24    TYING CLAIM CAN'T BE CERTIFIED BECAUSE OF WHAT IT
25    REFERS TO AS THE PACKAGE THEORY OF DAMAGES.
```

1          APPLE RELIES ON AN ELEVENTH CIRCUIT CASE
2  WHICH CITES THE NINTH CIRCUIT'S SIEGLE CASE FOR THE
3  PROPOSITION THAT, WELL, IN SOME CASES A TIE
4  ACTUALLY REDUCES -- HAS THE EFFECT IT MAY INCREASE
5  THE PRICE OF THE TIED PRODUCT, BUT IT HAS THE
6  EFFECT OF REDUCING THE PRICE OF THE TYING PRODUCT.
7          IN OTHER WORDS, APPLE SAYS HERE YOU HAVE
8  TO DETERMINE WHETHER THE ITUNES VIDEO AND DIGITAL
9  DOWNLOADS WAS DECREASED AS A RESULT OF THE TIE.
10         WELL, THAT ISN'T REALLY A CORRECT
11 STATEMENT OF THE LAW IN THE NINTH CIRCUIT.
12         THE SIEGLE CASE INVOLVED THE CLASS.  THE
13 NINTH CIRCUIT DID NOT OVERTURN THE CLASS DECISION
14 NOR DID THE NINTH CIRCUIT OVERTURN THE LIABILITY
15 JUDGMENT IN FAVOR OF THE PLAINTIFFS.  RATHER, THE
16 NINTH CIRCUIT SAID THAT YOU HAVE TO TAKE THIS INTO
17 ACCOUNT IN CALCULATING THE AMOUNT OF DAMAGES.
18         SO IT IS MERELY A DAMAGES QUESTION AND AS
19 BLACKIE AND MANY OTHER NINTH CIRCUIT AND MANY OTHER
20 NORTHERN CALIFORNIA CASES HAVE HELD, EVEN IF THERE
21 ARE DAMAGES ISSUES, THAT DOES NOT PRECLUDE
22 CERTIFICATION OF A CLASS.
23         NOW, MOREOVER, THE SIEGLE CASE WAS A
24 LITTLE UNUSUAL BECAUSE THERE THERE WAS NO PRICE FOR
25 THE ALLEGED TYING PRODUCT.  THE SO-CALLED TYING

10

1  PRODUCT WAS THE USE OF THE TRADEMARK NAME CHICKEN
2  DELIGHT WHICH APPARENTLY HAD VALUE IN THE MARKET.
3            HERE, OF COURSE, PLAINTIFFS AND MEMBERS
4  OF THE CLASS PAID MONEY FOR THEIR ITUNES DIGITAL
5  VIDEO AND MUSIC DOWNLOADS.
6            WE ALSO HAVE A CLAIM FOR MONOPOLIZATION
7  BOTH FOR ATTEMPTED MONOPOLIZATION AND MONOPOLY
8  MAINTENANCE OR CREATION.
9            NOW, APPLE DOESN'T REALLY ADDRESS THIS
10 ARGUMENT AT ALL IN THEIR PAPERS.  APPLE MERELY SAYS
11 THAT IT'S BASED ON OUR TYING THEORY, AND,
12 THEREFORE, IT FAILS FOR THE SAME REASONS.
13           WELL, IN FACT, PLAINTIFFS HAVE ALLEGED A
14 MONOPOLIZATION CLAIM THAT DON'T RELY SOLELY ON
15 THEIR TYING CLAIMS.
16           THERE ARE SEVERAL DIFFERENT ASPECTS OF
17 APPLE'S CONDUCT THAT PLAINTIFFS CONTEND ARE AND
18 WERE ANTICOMPETITIVE.
19           AND AS WE EXPLAINED IN OUR PAPERS, ALL OF
20 THE ELEMENTS OF THE PLAINTIFFS' MONOPOLIZATION AND
21 ATTEMPTED MONOPOLIZATION CLAIMS WILL BE PROVEN
22 RELYING ON EVIDENCE THAT IS COMMON TO THE CLASS
23 BECAUSE IT IS PRINCIPALLY, IF NOT ENTIRELY,
24 EVIDENCE THAT IS IN THE HANDS OF APPLE.
25           FIRST THE PLAINTIFF HAS TO SHOW THAT

```
 1    BE PROVED ON A CLASS WIDE BASIS OR WHETHER IT
 2    REQUIRES INDIVIDUAL PROOF.
 3            THE COURT:  THAT I THINK IS THE ISSUE.
 4    AND SO THE QUESTION THAT YOU'RE ASKING ME TO
 5    RECONSIDER IS WHETHER OR NOT THE MARKET LEVEL
 6    COERCION IS PERMISSIBLE IN THIS CASE, AND I'M
 7    WILLING TO THINK ABOUT THAT MORE BECAUSE I DO THINK
 8    THAT THAT IS AN IMPORTANT ISSUE TO ANSWER.
 9            BUT IF I ANSWER THAT IT IS PERMISSIBLE,
10    DO YOU HAVE AN ARGUMENT THAT THERE IS NO MARKET
11    LEVEL COERCION?
12            MR. MITTELSTAEDT:  THE ARGUMENT AT THAT
13    POINT IS HOW ARE THEY GOING TO PROVE MARKET LEVEL
14    COERCION?  THEY NEED TO COME UP WITH A METHOD TO
15    PROVE THIS ON A CLASS WIDE BASIS AND THEY HAVEN'T
16    SUGGESTED ANY.
17            IT'S, YOU KNOW, WHETHER IT'S
18    INDIVIDUAL --
19            THE COURT:  I THINK BY DEFINITION, MARKET
20    LEVEL COERCION IS CLASS WIDE.
21            MR. MITTELSTAEDT:  WELL, BUT HOW DO THEY
22    PROVE COERCION?
23            IF I'M RIGHT THAT THE ELEMENTS OF THEIR
24    COERCED CONSUMER ARE AS SET FORTH HERE ON CHART
25    NUMBER 2, AND LET'S ADD TO IT WHAT I THINK IS
```

33

1  IMPLICIT AND WHAT WAS SUGGESTED BY YOUR HONOR THAT
2  YOU HAVE TO KNOW THAT IF YOU BURN AND RIP, THEN YOU
3  CAN PLAY THE MUSIC ON A COMPETING PLAYER, LET'S ADD
4  THAT.  THAT'S ANOTHER INDIVIDUAL ISSUE.
5            AND IN ORDER TO PROVE THAT I WAS COERCED
6  OR IN ORDER TO PROVE THAT, YOU KNOW, THE MARKET WAS
7  COERCED.  AND AGAIN, THE MARKET IS JUST A BUNCH OF
8  INDIVIDUALS.
9            AND THERE'S -- YOU KNOW, IF YOU CAN'T
10 PROVE THAT I WAS COERCED WITHOUT ASKING ME AND
11 EXPLORING MY CIRCUMSTANCES, YOU CAN'T GET AWAY FROM
12 THAT.  THE PLAINTIFFS CAN'T GET AROUND THAT BY JUST
13 SAYING, WELL, WE'RE NOT GOING TO LOOK AT
14 INDIVIDUALS.  WE'RE GOING TO LOOK AT EVERYBODY AS A
15 GROUP BECAUSE WHEN YOU LOOK AT EVERYBODY AS A
16 GROUP, YOU STILL HAVE TO FIND OUT, YOU KNOW, WHY
17 DID YOU BUY YOUR IPOD?  WERE YOU HAPPY TO BUY YOUR
18 IPOD?
19           I MEAN, SOME PEOPLE BUY AN IPOD BECAUSE
20 IT WORKS WELL WITH THE MUSIC STORE AND THEY'RE
21 DELIGHTED AND THEY WOULD NEVER BUY A COMPETING
22 PLAYER EVEN IF IT WAS AS EASY TO USE WITH THE MUSIC
23 STORE AS THE IPOD BECAUSE THE IPOD IS A REALLY
24 GREAT DEVICE.
25           SAME REASON ON CHART NUMBER 1.  PEOPLE

34

| | |
|---|---|
| 1 | BUY AN IPOD WITHOUT REGARD TO THE MUSIC STORE. |
| 2 | SO YOU NEED TO ASK INDIVIDUAL BY |
| 3 | INDIVIDUAL AND THAT'S WHY, YOU KNOW, I'M NOT SAYING |
| 4 | TYING LAWS SHOULDN'T KEEP UP WITH THE TIMES BUT AN |
| 5 | ESSENTIAL ELEMENT OF TYING LAW AND CLASS |
| 6 | CERTIFICATION IS CAN YOU PROVE IT ON A CLASS WIDE |
| 7 | BASIS AND THEY DON'T HAVE A METHOD FOR DOING THAT, |
| 8 | ESPECIALLY IF YOU NEED INDIVIDUAL COERCION, BUT |
| 9 | EVEN IF YOU CALL IT MARKET COERCION, IT'S STILL A |
| 10 | GROUP OF INDIVIDUALS. |
| 11 | YOUR HONOR, LET ME JUST HIT TWO OTHER |
| 12 | POINTS QUICKLY.  IT'S NOT RIGHT THAT COERCION IS |
| 13 | OUR ONLY ARGUMENT AS AN INDIVIDUAL ISSUE.  AS |
| 14 | COUNSEL RECOGNIZES THIS NET OVERCHARGE IS ALSO A |
| 15 | REASON THAT THEY DON'T RECOGNIZE THAT THEY |
| 16 | ADDRESSED IT.  BUT WE SAY THE NEED TO PROVE PROOF |
| 17 | OF INJURY OR THE FACT OF DAMAGE IN THE NINTH |
| 18 | CIRCUIT THAT NEEDS TO BE PROVED IN A TYING CASE ON |
| 19 | A PACKAGE BASIS.  AND CHART NUMBER 7 SUMMARIZES THE |
| 20 | LAW ON THAT. |
| 21 | AND THE BASIC IDEA, AS SET FORTH BY THE |
| 22 | <u>FREELAND</u> CASE, THE <u>AT & T</u> CASE IN THE SOUTHERN |
| 23 | DISTRICT OF NEW YORK, IF A TIE CAUSES A BUYER TO |
| 24 | PAY MORE THAN THE MARKET PRICE FOR THE TIED |
| 25 | PRODUCT, THE BUYER IS MOST LIKELY PAYING LESS THAN |

```
 1    THE PRICE THAT THE SELLER COULD OTHERWISE CHARGE
 2    FOR THE TYING PRICE.
 3            IN OTHER WORDS, THE PRICE ON THE FIRST
 4    PRODUCT IS LOWER AND THAT'S BASIC ECONOMIC THEORY
 5    FOR THE REASONS SET FORTH IN THE FREELAND CASE.
 6            FREELAND DENIES CLASS CERTIFICATION
 7    BECAUSE THE PLAINTIFF WAS UNABLE TO IDENTIFY A
 8    METHOD TO DEMONSTRATE THAT THAT HAD NOT HAPPENED.
 9            AND THE REASON THAT'S IMPORTANT IS A
10    CONSUMER IS NOT DAMAGES, IS NOT INJURED IF, IN
11    FACT, THERE'S BEEN A LOWERING OF THE PRICE ON THE
12    MUSIC WHICH IS OFFSET IN ANY INCREASE IN THE PRICE
13    OF THE IPOD.  THAT'S THE LAW OF THE NINTH CIRCUIT
14    IN THE SIEGLE CASE AND THE ELEVENTH CIRCUIT CASE WE
15    CITE THERE IN THE BOTTOM BULLET SHOWS THAT.  AND IT
16    INTERPRETS AND APPLIES THE NINTH CIRCUIT SIEGLE
17    RULE.
18            THE COURT:  WELL, I WANT TO LEARN A LOT
19    MORE ABOUT THAT.  IN OTHER WORDS, IF THE TIED -- IF
20    A TIE CAUSES A BUYER TO PAY MORE THAN THE MARKET
21    PRICE FOR THE TIED PRODUCT, THE BUYER IS MOST
22    LIKELY PAYING LESS THAN THE PRICE THE SELLER COULD
23    PROFITABLY CHARGE.
24            SO THAT IS -- IS THAT MORE OR LESS THAN
25    MARKET FOR THE TYING PRODUCT?
```

36

```
 1              MR. MITTELSTAEDT:  LESS, LESS.
 2              THE COURT:  LESS THAN MARKET?
 3              MR. MITTELSTAEDT:  YES.  AND THE IDEA IS
 4   THAT ON DAY ONE YOU'RE SELLING THE FIRST PRODUCT.
 5              THE COURT:  BUT HOW DOES THAT FOLLOW
 6   THERE'S NO DAMAGE?  WHAT IF YOU REDUCE IT BY A
 7   NICKEL AND SOMETHING ELSE IS SOLD AT A PREMIUM, HOW
 8   DOES THAT MEAN THAT THERE IS NO DAMAGE?
 9              MR. MITTELSTAEDT:  YEAH, IT DEPENDS ON
10   THE SIZE OF THE OVERCHARGE AND THE SIZE OF THE --
11   THE SIZE OF THE OVERCHARGE AND THE SIZE OF THE
12   UNDERCHARGE IF YOU WILL.
13              THE COURT:  RIGHT.
14              MR. MITTELSTAEDT:  AND THE RELATIVE
15   NUMBER OF UNITS THAT YOU BUY OF EACH.
16              THE COURT:  YES.
17              MR. MITTELSTAEDT:  AND SO IN THE VISA
18   CASE THE PLAINTIFFS' EXPERT CAME IN AND SAID THAT
19   THERE'S NO UNDERCHARGE ON THE FIRST PRODUCT.  AND
20   SO THE COURT SAID, OKAY, WE DON'T HAVE A PROBLEM
21   WITH A NET OVERCHARGE.
22              AND HERE WHEN I ASKED PROFESSOR NOLL,
23   WHAT ABOUT THE PRICE OF MUSIC, WAS THAT LOWERED?
24   AND HE SAID HE HASN'T STUDIED IT, HE DOESN'T
25   PROPOSE TO STUDY IT AND HE'S NOT GOING TO OFFER AN
```

37

```
 1   OPINION ON THAT.
 2            SO THE BURDEN ON THE PLAINTIFFS IN THE
 3   NINTH CIRCUIT AND THE ELEVENTH CIRCUIT IS TO SHOW
 4   THAT THERE WAS A NET OVERCHARGE TAKING INTO
 5   ACCOUNT, IN OUR CASE, THE AMOUNT OF MUSIC THAT AN
 6   INDIVIDUAL CONSUMER BOUGHT, THE AMOUNT OF THE
 7   UNDERCHARGE ON THAT, AND COMPARED WITH THE NUMBER
 8   OF IPODS THAT THE PERSON BOUGHT AND THE OVERCHARGE
 9   ON THAT.
10            THE COURT: WHY SHOULD I DEAL WITH THIS
11   AT THE CLASS CERTIFICATION?
12            MR. MITTELSTAEDT: WELL, FOR THE VERY
13   REASON, YOUR HONOR, THAT THE PLAINTIFFS DON'T DEAL
14   WITH IT.
15            THE REASON THEY DON'T DEAL WITH IT IS
16   THAT THE ONLY WAY TO ESTABLISH THIS FACT OF INJURY
17   IN A REGIME WHERE THE NET OVERCHARGE MUST BE SHOWN
18   ON A PACKAGE BASIS IS TO GO CONSUMER BY CONSUMER.
19            IT RAISES INDIVIDUAL QUESTIONS, WHICH IS
20   WHAT THE FREELAND CASE HELD AND THAT'S WHY FREELAND
21   DENIED CERT. THE PLAINTIFFS RECOGNIZE THAT BECAUSE
22   THE RELATIVE AMOUNT OF PURCHASES MATTERS IN THIS
23   NET OVERCHARGE APPROACH, YOU HAVE TO GO INDIVIDUAL
24   BY INDIVIDUAL TO SEE WHETHER THEY BOUGHT ENOUGH
25   MUSIC TO MAKE UP FOR THE OVERCHARGE ON THE IPOD.
```

38

1  THAT'S AN INDIVIDUAL QUESTION.
2         THERE'S NO CLASS WIDE WAY TO DO IT OR AT
3  LEAST THEY HAVEN'T PROPOSED ANY.  AND THAT'S WHY AS
4  I SAY PROFESSOR NOLL JUST SAYS I'M NOT GOING TO
5  WORRY ABOUT THAT.
6         THE SECOND ARGUMENT ON FACT OF DAMAGES
7  LEADS TO THE SAME CONCLUSION.  THE PLAINTIFFS AGREE
8  THAT AT LEAST ONE WAY OF PROVING TYING DAMAGES IS
9  TO LOOK AT THE DIFFERENCE OF PRICE BETWEEN THE IPOD
10 YOU WERE FORCED TO BUY AND THE COMPETING PLAYER YOU
11 WANTED TO BUY.
12        THAT'S WHAT THE LESSIG CASE DOES, AND
13 THAT'S WHAT THE GRAY CASE ALSO CITED DOES AND
14 THAT'S A RELATIVELY STRAIGHTFORWARD METHOD OF
15 PROVING DAMAGES.
16        THEY DON'T DO THAT.  AND THE REASON THEY
17 DON'T DO THAT IS THAT, TOO, RAISES INDIVIDUAL
18 QUESTIONS.
19        AS SET FORTH IN OUR PREVIOUS ORDER TO
20 PROVE THAT, YOU HAVE TO GO INDIVIDUAL BY INDIVIDUAL
21 SAYING WHAT PLAYER DID YOU WANT TO USE AND DID YOU
22 WANT TO BUY AN IPOD AND WHAT WAS THE DIFFERENCE IN
23 PRICE AND THAT RAISES AN INDIVIDUAL QUESTION AND SO
24 THEY DON'T DO THAT.
25        THAT'S ANOTHER REASON WHY THE CLASS --