United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| The Apple iPod iTunes Antitrust Litigation | NO. C 05-00037 JW |
| | **ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO THE FIRST CAUSE OF ACTION FOR VIOLATIONS OF SECTION 1 OF THE SHERMAN ACT AND THE FIFTH CAUSE OF ACTION FOR VIOLATIONS OF THE CARTWRIGHT ACT** |

## I.  INTRODUCTION

In this class action, Plaintiffs[1] allege that iTunes and iPods are two products that are sold separately by Apple Inc. ("Defendant"), but that Apple nevertheless violates the prohibitions of Section 1 of the Sherman Act against unlawful tying by forcing purchasers of iTunes to buy iPods because the products are technologically tied to one another.  The issue before the Court is whether these allegations state a cognizable claim under the rule of reason theory of antitrust.  In this Order, the Court finds that Plaintiffs do not state a claim for violation of Section 1 and accordingly, the Court grants judgment on the pleadings in favor of Apple.

## II.  BACKGROUND

Plaintiffs are prosecuting this class action against Apple alleging that the technological compatibility created by Apple between digital music files sold by its iTunes Music Store ("iTMS")

---

[1]  Named Plaintiffs are Melanie Tucker, Mariana Rosen, and Somtai Troy Charoensak.

and iPod digital music players constitutes an unlawful tying arrangement in violation of Section 1 of the Sherman Act, and violates related state laws.[2] Originally, Plaintiffs based their Section 1 claims on two alternative theories: *per se* unlawful tying and the rule of reason.[3] In its May 15, 2009 Order,[4] based on undisputed allegations that iTunes files and iPods are sold separately, the Court granted judgment on the pleadings in favor of Apple and dismissed *per se* tying as a permissible basis for Plaintiffs' Section 1 claims. Specifically, the Court found that there must be a tie between two separate products or services sold in separate markets.[5] Since the parties had not addressed whether Plaintiffs should be permitted to proceed on a rule of reason theory, the Court invited Defendant to file another Rule 12(c) motion to provide the parties with an opportunity to fully brief the issue.

Presently before the Court is Defendant's Motion for Judgment on the Pleadings as to Plaintiffs' Rule of Reason Tying Claim. (hereafter, "Motion," Docket Item No. 229.) The Court conducted a hearing on October 5, 2009 and the matter was taken under submission for a decision.

### III. DISCUSSION

**A.  Examining the Allegations of the First Amended Complaint and the Answer**

The standards by which the Court evaluates a Rule 12(c) motion were articulated in its May 15 Order. (See Order at 3.) The Court applies those same standards in evaluate the present Motion.

Generally, in ruling on a motion for judgment on the pleadings, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have

---

[2] A detailed statement of the factual allegations and procedural history in this case may be found in the Court's December 20, 2006 Order Denying Defendant's Motion to Dismiss (Docket Item No. 27) and in the Court's December 22, 2008 Order Granting Plaintiffs' Motion for Class Certification as to Counts Two, Three, Four, Five, Six, and Seven Only and Appointing Class Counsel; *Sua Sponte* Order Reconsidering Defendant's Motion to Dismiss Count One and Requiring Further Briefing (Docket Item No. 196).

[3] (Second Amended Complaint ¶ 70, hereafter, "SAC," Docket Item No. 77.)

[4] (hereafter, "Order," Docket Item No. 213.)

[5] (Order at 4 (citing Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 12 (1984)).)

2

been denied are assumed to be false. Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

Here, with respect to the relationship between iTunes and iPods, there are no conflicts between the allegations of the First Amended Complaint and the Answer.

Plaintiffs allege:

> Online music purchased from the iTMS is encoded by Apple with Digital Rights Management ("DRM") restrictions called "FairPlay." (SAC ¶ 41.)
> Use of FairPlay requires iTMS consumers to use Apple's iPod to transfer the music directly to a Digital Music Player. (SAC ¶ 43.)
> The tied product is the iPod and the tying product is FairPlay-DRM Online Music purchased from the iTMS. Apple deliberately makes the music files purchased from the iTMS incapable of being played by other Digital Music Players. Thus, consumers who have purchased Online Music from Apple will have no choice but to buy an iPod if they want to play their music directly on a Digital Media Player. (SAC ¶ 43.)
> After purchasing Digital Music from the iTMS, consumers are locked into making all future Digital Music Player purchases from Apple, because consumers with libraries of iTMS music could not utilize any of the songs they purchased from the iTMS with any non-iPod Digital Music Player. (SAC ¶ 44.)
> As a result of this activity, Apple has been able to charge supra-competitive prices to all purchasers of iPods. (SAC ¶ 76.)

Defendant alleges:

> On April 28, 2003, Apple launched the iTunes Music Store that can be accessed by a computer and that allows users to browse listings of digital recordings.[6]
> Consumers may purchase individual songs from the iTunes Music Store. (Id.)
> Customers can play music purchased from iTunes Music Store on a computer or CD player or on an iPod. (Id.)

Based on the pleadings, it is conceded that iTunes music and iPods are always sold separately and without any requirement that purchasers of one product also purchase the other. It is further conceded in the pleadings that either product may be used by consumers without the necessity of purchasing the other. The gravamen of the Complaint is that Apple has created a DRM-mediated link between iTunes music and iPods which allows iPod owners to play back their iTunes music purchases with fewer intermediate steps than required for consumers who own a digital music player manufactured by one of Apple's competitors, and that Apple refuses to license the DRM

---

[6] (Defendant Apple Inc.'s Answer and Defenses to Plaintiffs' Consolidated Complaint ¶¶ 3-15, hereafter, "Answer," Docket Item No. 110.)

3

technology to its competitors. Plaintiffs allege that the technological interrelationship between iTunes music files and iPods constitutes unlawful tying under the rule of reason because it is tantamount to forcing consumers to forego their free choice of portable digital media players.

### B. The Rule of Reason

Section 1 of the Sherman Act prohibits "every contract, combination . . ., or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. Courts have established two standards for scrutinizing commercial practices under Section 1: *per se* rules of illegality and the rule of reason. *Per se* analysis applies to practices that have such pernicious effect on competition that they are presumed to be unreasonable and therefore illegal without elaborate inquiry into the precise harm the practices have caused. Northern Pac. R. Co. v. United States, 356 U.S. 1, 5 (1958). Under a rule of reason analysis, the factfinder weighs all of the circumstances surrounding a restrictive practice in making a determination whether the practice should be prohibited as imposing an unreasonable restraint on competition. Chicago Bd. of Trade v. United States, 246 U.S. 231, 238 (1918).

In general, a "tie" is an arrangement in which a seller conditions the sale of one product on the purchaser's agreement to purchase a separate product. Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451 (1992). If a seller is proved to have market power in a tying product and the tying arrangement affects a substantial volume of commerce in the market for a tied product, the tying arrangement is analyzed under the *per se* rule because courts regard such tying as serving little purpose other than the restriction of competition. U.S. Steel Corp. v. Fortner Enters., 394 U.S. 495, 503 (1969).

Here, the Court has ruled that the technological interrelationship between iTunes music and iPods in the absence of any condition that purchasers of one product also purchase the other does not state a Section 1 tying claim under the *per se* rule and has granted judgment on the pleadings on that ground.[7] Having been denied a right to proceed on the basis of a *per se* analysis, Plaintiffs are left with allegations that Apple's conduct violates Section 1 under the rule of reason theory.

---

[7] The Court also granted Defendant's Motion with respect to Plaintiffs' state law claims, to the extent those claims were based on unlawful tying under federal antitrust law.

4

It is well established that "[a] tying arrangement which is not unlawful *per se* 'may be invalidated under the 'rule of reason' if the party challenging the tie demonstrates that it is 'an unreasonable restraint on competition in the relevant market.'" County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1157 (9th Cir. 2001) (quoting Beard v. Parkview Hosp., 912 F.2d 138, 140 (6th Cir. 1990)). In a *per se* claim, "a showing that the defendant had market power in the tying market leads to a presumption that it is using that power to expand into the tied market." Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 519 (3d Cir. 1998); see also Jefferson Parish, 466 U.S. at 26 (finding that an analysis of actual market conditions may only be avoided upon a showing that the arrangement "involves the use of market power to force [consumers] to buy services they would not otherwise purchase"); Foremost Pro Color, Inc. v. Eastman Kodak Co., 703 F.2d 534, 540-41 (9th Cir. 1983) (finding that the *per se* tying rule excuses the necessity of demonstrating unreasonable competitive effect because the party imposing the arrangement is benefitting from "the leverage exerted as a result of its economic power in the market for the tying product").

Where a plaintiff cannot demonstrate adequate market power to invalidate a restraint under the *per se* tying rule, they may still succeed in stating a claim under the rule of reason by alleging sufficient facts to demonstrate that the tying arrangement "unreasonably restrained competition." Jefferson Parish, 466 U.S. at 29. To state a claim under the rule of reason, a plaintiff cannot rely on a presumption of unreasonable anticompetitive effect, but instead must "provide a basis for finding that the [tying arrangement], as it actually operates in the market, has unreasonably restrained competition." Id.

In Jefferson Parish, the Supreme Court examined the validity of a tie between surgical and anesthesiological services at a hospital. 466 U.S. at 4-5. In that case, the hospital ("East Jefferson") entered into an exclusive contract with a firm of anesthesiologists which required that every patient undergoing surgery at East Jefferson use the services of a member of that firm. Id. After trial, the district court denied relief to a board-certified anesthesiologist who was barred from admission to the medical staff at East Jefferson because of the exclusive contract. Id. at 5. The Supreme Court

5

1  affirmed the district court's decision. Id. To determine whether East Jefferson exerted sufficient
2  market power to establish *per se* tying liability, the Court looked at the hospital preferences of local
3  residents and found that seventy percent of those in the area used a hospital other than East
4  Jefferson. Id. at 26. The Court found that "[t]he fact that a substantial majority of the parish's
5  residents elect not to enter East Jefferson means that the geographic data does not establish the kind
6  of dominant market position that obviates the need for further inquiry into actual competitive
7  conditions." Id. at 27. Since East Jefferson did not have sufficient market power to establish *per se*
8  liability, the Court turned to the rule of reason and found insufficient evidence that the arrangement
9  at issue unreasonably restrained competition among anesthesiologists in that particular market. Id.
10 at 29-30.

11 In Town Sound and Custom Tops, Inc., the Third Circuit examined the validity of a tie
12 between cars and car stereo equipment. 959 F.2d 468, 471-73 (3d Cir. 1992). In that case, a group
13 of independent car stereo dealers filed an antitrust action against Chrysler claiming that Chrysler
14 unlawfully restrained commerce by conditioning the sale of their cars on the purchase of Chrysler-
15 supplied sound systems. Id. at 471. The district court granted summary judgment to Chrysler on
16 plaintiffs' *per se* and rule of reason claims. Id. at 474. The Third Circuit affirmed. Id. at 496.
17 When defining the relevant market broadly to include Chrysler cars and cars that are reasonably
18 interchangeable with Chrysler cars, the Third Circuit determined that Chrysler did not wield enough
19 market power to establish *per se* tying liability. Id. at 480-81. The Court found, however, that such
20 a showing of market power was not necessary to succeed on a tying claim under the rule of reason.
21 Id. at 482-85. Ultimately, the plaintiffs' rule of reason claim failed for a reason not directly related
22 to market power: the plaintiffs could not show that Chrysler's conduct caused competitive injury in
23 the car stereo market. Id. at 495.

24 What is less clear from a review of the cases is whether a plaintiff may state a tying claim
25 under the rule of reason where, as here, its *per se* claim has failed on the basis of the absence of a
26 coercive tying relationship. In their Motion, Defendant contends that without a coercive tie, there
27 can be no valid claim under either a *per se* analysis or a rule of reason analysis. (Motion at 4-6.)

28

6

Plaintiffs respond that a rule of reason claim is available even when all of the elements of *per se* tying cannot be established and that they should be allowed to proceed on that theory because the technological relationship between iTunes and iPod was intended to harm competition and in fact caused injury to competition.[8] In other words, Plaintiffs contend that even though the Court has found that the technological interrelationship does not constitute tying under the *per se* rule, the technological relationship is sufficient to constitute an unlawful restraint under the rule of reason.

**C.** **Technological Relationship Between Products Under the Rule of Reason**

There have been a number of cases that have considered allegations of antitrust violations based on a technological relationship between products. Meaningful application of these so-called "technological tie" cases requires an examination of what type of technological relationship was involved. The Court examines a couple of cases for illustration.

**1.** **Products that are technologically integrated and sold as one product**

Products are characterized as "technologically tied" in cases involving integrated products, namely, where a plaintiff alleges that unlawful tying takes place because two separate products have been integrated and sold as one. For example, in United States v. Microsoft, the D.C. Circuit scrutinized Microsoft's practice of bundling its web browser, Internet Explorer ("IE"), with its Windows operating system ("OS"). 253 F.3d 34 (D.C. Cir. 2001). The facts underlying the tying claim consisted of four allegations:

> (1) Microsoft required licensees of [the OS] to also license IE as a bundle at a single price; (2) Microsoft refused to allow [original equipment manufacturers] to uninstall or remove IE from the Windows desktop; (3) Microsoft designed [the OS] in a way that withheld from consumers the ability to remove IE by use of the Add/Remove Programs utility; and (4) Microsoft designed [the OS] to override the user's choice of default web browser in certain circumstances.

Id. at 85-86 (internal citations omitted). After a bench trial, the district court found Microsoft liable for, *inter alia*, the government's tying claim. Id. at 48. The D.C. Circuit reversed as to the government's tying claim under the *per se* rule, but remanded to the district court for further

---

[8] (See Plaintiffs' Opposition to Defendant's Motion for Judgment on the Pleadings as to Plaintiffs' Rule of Reason Tying Claim at 5, hereafter, "Opposition," Docket Item No. 230.)

7

1  proceedings under a rule of reason analysis. Id. at 89-97. The D.C. Circuit held that where the tying
2  arrangement alleged involves the integration of additional software functionality into a platform for
3  third-party applications, finding a *per se* violation "creates undue risks of error and of deterring
4  welfare-enhancing innovation." Id. at 90. Instead, the court found that the appropriate mode of
5  analysis was the rule of reason, and remanded the case so that the district court could make the
6  appropriate "inquiry into the actual effect of Microsoft's conduct on competition in the tied good
7  market." Id. at 95 (internal quotation omitted); see also Caldera, Inc. v. Microsoft Corp., 72 F.
8  Supp. 2d 1295 (D. Utah 1991).

9  It is clear that these integrated technology cases involve a technological relationship that can
10 fit within the tying paradigm because they involve allegations that, by virtue of technological
11 integration, purchasers are coerced into purchasing two allegedly separate products.

**2. Products that are technologically interdependent and sold as separate products**

The phrase "technological tie" has also been used in cases in which technologically interdependent products are being sold separately by the seller. See Foremost, 703 F.2d at 540-41. In Foremost, the Ninth Circuit stated:

> Although liberally sprinkled with the word 'required,' Foremost's tying allegation basically involves the so-called technological tie. In other words, because the new film could not be processed with the old chemicals, and because the needed new photographic paper similarly could not be processed with the old chemicals, it was necessary to purchase an entire package of film, chemicals and paper.

703 F.2d at 542.

In this latter group of technologically interdependent cases, there is no coercive tie between two separate products. Although the technological relationship enhances the utility of each product, purchasers are free from any requirement imposed by the seller to purchase one product in order to obtain the other. Consistently, in cases involving only a technological interrelationship, courts have adhered to the proposition that if the buyer is free to take either product by itself, there is no tying:

> Foremost's tying claim alleged only the introduction of technologically related components incompatible with existing products offered by the competition. It did not allege that the dominant purpose motivating Kodak's design and introduction of the 110 system was to compel purchase of the entire system as a package, rather than to achieve the legitimate goal of marketing new, technologically superior products

8

   designed to satisfy consumer demand for small, pocket-sized cameras. Therefore, the complaint failed to state a claim for relief predicated on unlawful tying.

Foremost, 703 F. 2d at 543.

### D.   Technological Interrelationship Between iTunes and iPods

In light of the analysis above, the Court finds that Plaintiffs cannot state a claim under the rule of reason by demonstrating that a technological tie unreasonably restrains competition in the relevant market. Without a threshold showing of a "contract, combination in the form of trust or otherwise, or conspiracy" that is actionable under Section 1 of the Sherman Act, Plaintiffs' antitrust claims under the rule of reason theory is not viable. Here, the only restrain alleged by Plaintiffs is the technological interrelationship between iTunes and iPods.

As the Court pointed out in its previous Order, there is "no dispute that iTunes music and iPods are always separately available." (Order at 7.) Furthermore, "there is no allegation that there was any form of express conditioning in connection with Apple's sale of either iTunes music or iPods," nor is there any "allegation of a package pricing policy that could constitute an unlawful tie." (Order at 8.) While Defendant did develop two products that worked optimally with one another, consumers remained free at all times to purchase one or the other without purchasing both. Although Plaintiffs allege that functionality was impaired when not using the two products together, it is undisputed that songs purchased from iTMS can be played without ever having to purchase an iPod.

In stark contrast, consumers in the Microsoft case were forced to purchase the Microsoft OS and the IE together as a bundle. 253 F.3d at 85-86. Microsoft's direct conditioning of the purchase of one product on that of another presents a much clearer example of the type of anticompetitive conduct that the antitrust laws proscribe than the technological tie at issue here. The consumer's ability to play music purchased from iTunes is not conditioned on the purchase of an iPod. The increased convenience of using the two products together due to technological compatibility does not constitute anticompetitive conduct under either *per se* or rule of reason analysis. See Foremost,

9

703 F.2d at 544 ("[T]he introduction of technologically-related products, even if incompatible with the products offered by competitors, is alone neither a predatory nor anticompetitive act.")

In sum, the Court holds that in order to state a Section 1 tying claim, whether under the *per se* rule or the rule of reason, a plaintiff must first meet the threshold requirement of alleging a coercive tying relationship. Plaintiffs' allegations of a technological interrelationship between iTunes and iPods fail to meet that requirement. Accordingly, the Court GRANTS Defendant's Motion for Judgment on the Pleadings as to Plaintiffs' Rule of Reason Tying Claim under 15 U.S.C. §1 and all related state law claims.

## IV. CONCLUSION

The Court GRANTS Defendant's Motion for Judgment on the Pleadings as to Plaintiffs' Rule of Reason Tying Claim under 15 U.S.C. §1 and all related state law claims. Thus, the Court DISMISSES Plaintiffs' First Cause of Action for violation of the Section 1 of the Sherman Act, 15 U.S.C. § 1, and Fifth Cause of Action for violation of the California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 *et seq*.

Dated: October 30, 2009

JAMES WARE
United States District Judge

**United States District Court**
For the Northern District of California

1  **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alreen Haeggquist alreenh@zhlaw.com
Andrew S. Friedman afriedman@bffb.com
Bonny E. Sweeney bonnys@csgrr.com
Brian P Murray bmurray@murrayfrank.com
Caroline Nason Mitchell cnmitchell@jonesday.com
Craig Ellsworth Stewart cestewart@jonesday.com
David Craig Kiernan dkiernan@jonesday.com
Elaine A. Ryan eryan@bffb.com
Francis Joseph Balint fbalint@bffb.com
Helen I. Zeldes helenz@zhlaw.com
Jacqueline Sailer jsailer@murrayfrank.com
John J. Stoia jstoia@csgrr.com
Michael D Braun service@braunlawgroup.com
Michael D. Braun service@braunlawgroup.com
Michael Tedder Scott michaelscott@jonesday.com
Robert Allan Mittelstaedt ramittelstaedt@jonesday.com
Roy A. Katriel rak@katriellaw.com
Thomas J. Kennedy tkennedy@murrayfrank.com
Thomas Robert Merrick tmerrick@csgrr.com
Tracy Strong invalidaddress@invalidaddress.com

**Dated:  October 30, 2009**                          **Richard W. Wieking, Clerk**

                                                       **By:     /s/ JW Chambers              **
                                                              **Elizabeth Garcia**
                                                              **Courtroom Deputy**