1  Robert A. Mittelstaedt  #60359
   ramittelstaedt@jonesday.com
2  Craig E. Stewart  #129530
   cestewart@jonesday.com
3  Michael Scott #255282
   michaelscott@jonesday.com
4  JONES DAY
   555 California Street, 26th Floor
5  San Francisco, CA  94104
   Telephone:    (415) 626-3939
6  Facsimile:    (415) 875-5700

7  Attorneys for Defendant
   APPLE INC.
8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                   SAN JOSE DIVISION

12

13  THE APPLE iPOD iTUNES ANTI-TRUST       Case No. C 05-00037 JW
    LITIGATION.                                     C 06-04457 JW
14
                                           **DEFENDANT'S REPLY IN SUPPORT
15                                         OF MOTION FOR
                                           RECONSIDERATION OF RULE
16                                         23(B)(2) CLASS**

17                                         **Date:**    November 23, 2009
                                           **Time:**    9:00 A.M.
18                                         **Place:**   Courtroom 8, 4th floor

19
                                           **REDACTED**
20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................... 1

I.   THE PRINCIPAL INJUNCTIVE RELIEF SOUGHT IS MOOT. ................................... 2

II.  THE REMAINING RELIEF PLAINTIFFS REQUEST DOES NOT SUPPORT CLASS CERTIFICATION. ............................................................................................ 3

     A.   An injunction requiring Apple to provide DRM-free upgrades is not the predominant purpose of this lawsuit. ................................................................... 3

     B.   This request is more akin to damages than injunctive relief. ................................ 6

     C.   Even if considered injunctive relief, it is unavailable to the requested class of past iPod purchasers. ........................................................................................... 7

     D.   A class of future iPod purchasers has not been pled and would be improperly unascertainable. ................................................................................... 9

     E.   The requested relief would be inequitable because it would impose a cost on Apple vastly disproportionate to any benefit to consumers. ............................ 9

III. TRYING TO ADD A CLASS OF ITUNES STORE CUSTOMERS DOES NOT CURE THESE DEFECTS. ............................................................................................. 11

IV.  PLAINTIFFS' ALLEGATIONS ABOUT SOFTWARE UPDATES DO NOT SUPPORT A RULE 23(B)(2) CLASS. ......................................................................... 12

V.   PLAINTIFFS' VIDEO ALLEGATIONS DO NOT SUPPORT A RULE 23(B)(2) CLASS. ........................................................................................................................... 13

CONCLUSION ........................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*Abeyta v. Town of Taos*,
  499 F.2d 323 (10th Cir. 1974) .................................................................................. 10

*Bautista-Perez v. Holder*,
  2009 WL 2031759 (N.D. Cal. July 9, 2009) ............................................................... 5

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
  479 U.S. 104 (1986) .................................................................................................... 6

*Chmieleski v. City Prods. Corp.*,
  71 F.R.D. 118 (W.D. Mo. 1976) ................................................................................. 4

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) .................................................................................................. 10

*General Cinema Corp. v. Buena Vista Distrib. Co., Inc.*,
  532 F. Supp. 1244 (C.D. Cal. 1982) ........................................................................... 2

*In re Mercedes-Benz Antitrust Litig.*,
  213 F.R.D. 180 (D.N.J. 2003) ..................................................................................... 8

*In re NASDAQ Market-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ................................................................................ 5

*James v. City of Dallas, Tex.*,
  254 F.3d 551 (5th Cir. 2001) ....................................................................................... 6

*McGahee v. N. Propane Gas Co.*,
  858 F.2d 1487 (11th Cir. 1988) ............................................................................. 6, 11

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ..................................................................................... 3

*Rodriguez v. Hayes*,
  578 F.3d 1032 (9th Cir. 2009) ..................................................................................... 5

*Simon v. Am. Tel. & Tel. Corp.*,
  2001 WL 34135273 (C.D. Cal. Jan. 26, 2001) ........................................................... 9

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998) ..................................................................................... 5

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ..................................................................................... 4

<u>Rules</u>

Federal Rules of Civil Procedure
    Rule 23(b)(2) ............................................................................................................ passim

**INTRODUCTION**

Plaintiffs' opposition brief shows why the Rule 23(b)(2) class should be decertified. Plaintiffs concede that the record labels have withdrawn their requirement that Apple use DRM anti-piracy software and that Apple's store has been DRM-free for over six months. Plaintiffs assert only that Apple should nonetheless be enjoined from using software that it is not using because Apple might start using it again. But plaintiffs ignore Apple's declaration stating unequivocally that it has no such intention. None of plaintiffs' cited cases supports injunctive relief where the challenged conduct was adopted only because of a requirement imposed by a third-party, and the third-party has dropped that requirement. And plaintiffs' argument that their injunctive relief claim could never be considered moot unless Apple concedes violating the antitrust laws defies common sense and finds no support in any case.

Nor have plaintiffs shown that a class is justified by their fallback request for an injunction requiring Apple to "remove" DRM from music files previously downloaded by iPod owners. Apple has already demonstrated that DRM cannot magically be removed from files already downloaded by a consumer. Rather, the consumer must obtain a new file from Apple— which is a transaction for which Apple must pay the record labels. In reality, plaintiffs are asking the Court to order that Apple provide, free-of-charge, a new DRM-free version of every song downloaded by any iPod owner, despite the enormous cost it would impose on Apple and despite the absence of any showing that iPod owners would benefit.

Plaintiffs refuse to own up to the nature of their request because to do so would show that it is no basis for an injunctive relief class. As in the *James* case—a case that plaintiffs ignore because they have no answer—their request for substitute music files free-of-charge is the equivalent of damages, not injunctive relief. Moreover, plaintiffs fail to show that the certified class of past iPod purchasers would benefit from this relief. Thus, not only would that relief be inequitable, but it could not possibly be the primary reason for bringing this lawsuit. Rather than answer this dispositive point, plaintiffs implicitly concede it by asserting that certification is proper for a "newly defined" class of "iPod purchasers **and** iTMS purchasers." Opp. at 5 (emphasis added). For the reasons Apple has already shown in opposing plaintiffs' motion to

1 amend their class definition (Dkt. 255), this expanded class is no more proper than the existing
2 class.

3 **I.    THE PRINCIPAL INJUNCTIVE RELIEF SOUGHT IS MOOT.**

4     Plaintiffs argue (p. 4) that their main injunctive relief request—requiring Apple to sell
5 DRM-free music on the iTS—remains alive unless Apple can show "no reasonable expectation"
6 that it will not use DRM on music files in the future. That argument is wrong on two counts.

7     First, as discussed in Apple's opposition to plaintiffs' motion to amend the class, the
8 standard plaintiffs assert does not apply when cessation of the challenged conduct is the result of
9 the conduct of a third party. *See* Dkt. 255, pp. 4-5. Here, although plaintiffs try to give it a
10 different spin, it is uncontested that Apple and its competitors were required by the record labels
11 to use DRM and that the record labels have now dropped that requirement. Trying to dull the
12 impact of this changed circumstance, plaintiffs claim in their companion brief (Dkt. 238, pp. 1-2)
13 that Apple was "slow" to offer DRM-free music and then only did so in "limited" numbers
14 initially. Those criticisms and the others offered by plaintiffs are contrary to the facts. Apple
15 stopped using DRM as soon as its contracts with the labels permitted it to do so. It was initially
16 "limited" to EMI music because EMI was the only label to drop its DRM requirement at that
17 time. Apple did not "indicat[e]" how long it will offer EMI DRM–free music because Apple has
18 no reason to think that EMI will re-instate any DRM requirement. That it took two years to reach
19 similar agreements with the other record labels is no basis to question the permanency of the
20 change.

21     Second, the Cue declaration submitted on September 14, 2009, makes clear that Apple did
22 not want to sell music with DRM in the first place, and does not intend to sell music with DRM in
23 the future. *See* Dkt. 256, ¶¶ 2-3. Accordingly, no basis exists for this requested injunctive relief.
24 Simply put, there is no need to enjoin Apple from resuming a practice that was imposed on it,
25 against its wishes, by the record labels, and that is no longer in effect.

26     Plaintiffs argue (pp. 4-5) that their injunctive relief claim is moot only if Apple admits that
27 it violated the antitrust laws. But the case they cite, *General Cinema Corp. v. Buena Vista*
28 *Distrib. Co., Inc.*, 532 F. Supp. 1244 (C.D. Cal. 1982), holds no such thing. It holds only that the

1  threat that a company will engage in a prohibited practice in the future is not defused where the
2  company vows to fight the newly-adopted government policy prohibiting that practice. *Id.* at
3  1275 n.13. The facts here are the opposite. Apple never desired to sell music with DRM, and has
4  welcomed the record labels' decision to permit the sale of DRM-free music.

5  Plaintiffs' suggestion that Apple nonetheless should be enjoined unless it stops defending
6  against an antitrust claim for treble damages that it considers frivolous would create a perverse,
7  illogical situation. The more frivolous a claim and the more vigorous the defense, the greater the
8  right to continue to seek injunctive relief after the challenged practice is discontinued. That result
9  would make no sense.

10  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), does not support
11  plaintiffs' position. The conduct at issue there did not arise from a requirement imposed and later
12  dropped by a third party. Instead, it was an entirely unilateral decision by the defendant. *Id.* at
13  1176 n.16. Here, however, it is the record labels' decision that moots plaintiffs' primary claim
14  for injunctive relief.

15  **II.    THE REMAINING RELIEF PLAINTIFFS REQUEST DOES NOT SUPPORT**
16  **CLASS CERTIFICATION.**

17  Contrary to plaintiffs' assertion (p. 2), Apple did not claim that the "only" injunctive relief
18  sought by plaintiffs was to stop Apple from selling iTS content with DRM. Far from ignoring
19  this ancillary request, Apple demonstrated that it is not a proper basis for certifying a class of
20  iPod purchasers because (1) it is not the dominant purpose of this lawsuit; (2) it is more akin to
21  damages than injunctive relief; (3) it is unavailable to a class of past iPod purchasers; (4) a class
22  of intended future iPod purchasers is not ascertainable; and (5) it would be inequitable to impose
23  such an enormous cost on Apple disproportionate to any benefit to consumers.

24  **A.    An injunction requiring Apple to provide DRM-free upgrades is not**
25  **the predominant purpose of this lawsuit.**

26  The issue, contrary to plaintiffs' formulation (pp. 5-6), is not whether courts ever certify
27  injunctive relief classes where monetary damages are also sought. The issue, as plaintiffs
28  eventually concede, is that a Rule 23(b)(2) class may be maintained only where the claim for

1  injunctive relief is the predominant form of relief sought by the class and would be sought even
2  absent a claim for damages. *See Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1195 (9th
3  Cir. 2001).[1]

4  Plaintiffs do not show that they meet this standard. They have no answer to Apple's
5  showing that, by bringing suit on behalf of a class of **past** iPod purchasers, plaintiffs made clear
6  that their primary intent was to obtain money damages, which is the only relief to which those
7  past purchasers as a whole might conceivably be entitled—assuming they could prove their claim.
8  Even under plaintiffs' theory, providing DRM-free files does not benefit a class of past
9  purchasers but, at best, only an unidentified and unknowable group of future purchasers, a group
10 plaintiffs do not seek to represent and that is not an ascertainable class that could properly be
11 certified in any event. *Infra,* p. 9.

12 Plaintiffs do not address this point, other than to assert in conclusory fashion (*e.g.,* pp. 9,
13 10) that class members are "entitled" to injunctive relief. As discussed below (p. 7), however
14 customers are not entitled to injunctive relief unless they are personally threatened with injury
15 that the injunctive relief would prevent. A class as a whole is not entitled to such relief unless
16 "all or substantially all of the class members" are threatened with such injury. *Chmieleski v. City*
17 *Prods. Corp.*, 71 F.R.D. 118, 157 (W.D. Mo. 1976).

18 Moreover, being "entitled" to injunctive relief (even if it were true) is insufficient because
19 it does not mean such relief was the primary reason for bringing suit. Here, where plaintiffs have
20 not shown that past iPod purchasers as a class would benefit from DRM-free versions of
21 previously downloaded music, such relief cannot be the primary reason that the class sued.

22 Equally meritless is plaintiffs' assertion that they are representing a class of "purchaser[s]
23 of an iPod **or** iTMS files." Opp., p. 7; s*ee also* Opp., p. 11 ("injunctive relief Class made up of
24 both iPod purchasers and iTMS purchasers"). The certified injunctive relief class is iPod

---

[1] Plaintiffs assert (p. 6 n.7) that *Zinser* is different because the plaintiffs' request there for injunctive relief was incidental to their request for damages and other forms of monetary relief. *Zinser*, 253 F.3d at 1196. But the same is equally true here. Plaintiffs' complaint requests treble damages, restitution, and disgorgement. Dkt. 107, p. 23. As in *Zinser*, the request for injunctive relief is over-shadowed by demands for monetary relief.

1 purchasers, whether or not they purchased any iTS music. It does not include iTS customers who
2 did not buy iPods. But even if iTS customers who did not buy iPods were part of the class, that
3 would still not mean that the class as a whole would benefit from the requested injunctive relief
4 so that seeking that relief could be the primary reason for suing. Just like past iPod purchasers, a
5 class of past iTS purchasers will not benefit in any relevant way from receiving DRM-free
6 versions of music they already own. In addition to not helping them, that plaintiffs think it
7 necessary to redefine the class to justify a Rule 23(b)(2) class speaks volumes. Implicitly,
8 plaintiffs are conceding that a class of past iPod purchasers is inappropriate.

9 Plaintiff's reliance on *Bautista-Perez v. Holder*, 2009 WL 2031759 (N.D. Cal. July 9,
10 2009), and *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996), is
11 misplaced. In *Bautista-Perez*, the court found that injunctive relief was the primary relief sought
12 because the class members were required to re-register repetitively and thus would directly
13 benefit from invalidating the challenged registration fees. 2009 WL 2031759, at *10-11. That is
14 not the case here where many iPod purchasers would not obtain any benefit from DRM-free
15 upgrades. *See* Mot. (Dkt. 245), p. 11. In *In re NASDAQ*, the court concluded that declaratory and
16 injunctive relief was necessary to prevent future harm to investors. 169 F.R.D. at 517. Unlike the
17 relief sought in that case, DRM-free upgrades will neither prevent alleged harm nor provide any
18 other benefit to many class members.

19 Nor do *Rodriguez v. Hayes*, 578 F.3d 1032 (9th Cir. 2009), and *Walters v. Reno*, 145 F.3d
20 1032 (9th Cir. 1998), assist plaintiffs. In those cases, the plaintiffs sought only injunctive and
21 declaratory relief, without any claim for monetary relief. Thus, there was no issue over whether
22 injunctive relief was the primary relief sought. Moreover, in both cases, the class was defined as
23 persons who were directly impacted by the challenged practice—the alleged denial of bond
24 hearings in *Rodriguez* and the failure to provide adequate notice of procedural rights in *Walters*.
25 As *Walters* recognized, the civil rights claims asserted in those cases are "precisely the sorts of
26 claims that Rule 23(b)(2) was designed to facilitate," because they can be decided without
27 reference to each class member's individual circumstances. *Walters*, 145 F.3d at 1047. In the
28 antitrust context, however, private plaintiffs seeking injunctive relief "must show . . . threat of an

1  injury for which a plaintiff could eventually claim treble damages." *McGahee v. N. Propane Gas Co.*, 858 F.2d 1487, 1501 (11th Cir. 1988) (citing *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 112-13 (1986)).  Plaintiffs have not made that showing because they have not demonstrated that a class of past iPod purchasers is threatened with such injury or how it would benefit from the relief sought under the antitrust laws.

### B. This request is more akin to damages than injunctive relief.

Plaintiffs do not directly address the point that their requested injunctive relief is really a damages remedy.  They write (p. 11, n.10) that they are not seeking reimbursement of any money already paid to obtain DRM-free upgrades.  But they do not dispute that individuals who intend to obtain such upgrades in the future would be made whole by damages (under plaintiffs' theory of liability).  This belies the "injunctive" nature of plaintiffs' request for DRM-free upgrades to replace music files that they purchased when the record labels required DRM.  As held in *James v. City of Dallas, Tex.*, 254 F.3d 551, 572 & n.25 (5th Cir. 2001):  "Plaintiffs' request for an injunction to order the City to provide substitute houses would be substantially equivalent to a judgment against the City for damages in the amount necessary to buy substitute houses."  The same logic applies to plaintiffs' request for substitute music files.  With no answer, plaintiffs ignore *James* and the two other cases cited by Apple which hold that a damages claim masquerading as an injunctive relief claim is no basis for certifying a class under Rule 23(b)(2).  *See* Mot. (Dkt. 245), p. 9 and n.7.

The nature of this requested relief—providing substitute music files without DRM—makes this case different from all of those cited by plaintiffs.  This is not a case where an injunction is necessary to stop the defendant from engaging in the challenged conduct.  Here, Apple has stopped using DRM on music sold at the iTS.  Rather, the requested relief is aimed at remedying the alleged past violation, much like the remedy at issue in *James*.  Incorrectly framing the relief as removing DRM from previously purchased files does not alter the fact that plaintiffs are in substance seeking money damages measured by the prices charged by Apple for obtaining new DRM-free music files.

Concealing the true nature of the requested relief, plaintiffs persist in misstating the technical process required for delivering DRM-free versions of previously downloaded music files. As set forth in Apple's motion (p. 7) and ignored by plaintiffs, it is not a matter of "unlocking" those files or removing the DRM. Rather, it is a new transaction in which Apple delivers a new file to the consumer—and pays a royalty to the record companies for the new transaction. In this critical respect, plaintiffs' formulations (p. 11) about Apple's "ongoing use of FairPlay" and the like are misleading. Accurately stated, plaintiffs are seeking to mandate that Apple provide new music files for no charge. As stated in *James*, this is the equivalent of money damages. And it is no basis to certify an injunctive relief class.

### C. Even if considered injunctive relief, it is unavailable to the requested class of past iPod purchasers.

As plaintiffs recognize (p. 11), they must demonstrate that the class faces "a significant threat" of antitrust injury in the future. They seek to carry this burden by asserting (p. 12) that purchasers of iPods and DRM-protected iTS files are "locked into" use of an iPod "indefinitely." That assertion is patently untrue given the other uses of iTS files. But even if true it would not constitute a significant threat of future antitrust harm. To the extent the asserted injury is an overcharge on their current iPod, their claim for damages would remedy the asserted injury. Having been compensated for any iPod overcharge, they would not be entitled to any further damages—or to any injunctive relief—with respect to that iPod, no matter how long they use it. To the extent the asserted injury is an overcharge on a subsequent iPod they might buy, it is obviously a matter of speculation whether they will in fact buy another iPod. Purchasing an iPod in the past does not mean the consumer will purchase one in the future. And even for iPod owners who buy another iPod in the future, no basis exists to say that they will do so as a result of the alleged "lock in" as opposed to the array of reasons that lead consumers to obtain iPods, including their coolness, elegant and sleek design, ease of use, photo or video capability, ability to access the internet, or ability to play tens of thousands of applications available from the App Store.

1     Plaintiffs argue (p. 12) that whether an iPod owner will buy another iPod is not speculative "because they own FairPlay encrypted music files which cannot be played unless they own an iPod." By definition, however, class members already own an iPod and thus have no need to buy another one to play their music. Moreover, Plaintiffs' assertion is false. Consumers may listen to their iTS music on their computer or on their home or car stereo. Or the consumer may have purchased the iPod to give to someone else as a gift. See Rangel Decl. Exs. 1, 2 (up to 40% of iPods are received as gifts). And, even if they bought the iPod for themselves, many iPod purchasers have never purchased iTS music (Dkt. 175, pp. 5-6) so plaintiffs' assertion cannot possibly apply to them. In short, whether or not an iPod owner has any iTS music, it is speculative whether the individual will buy another iPod at all, let alone for the reason plaintiffs theorize.

    For the same reason, plaintiffs' attempt to distinguish *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180 (D.N.J. 2003), fails. There, the court denied an injunctive relief class on the ground that money damages were the primary relief sought, and it was speculative whether Mercedes owners would buy another one in the future. *Id.* at 186. Plaintiffs argue that their claim for future relief is less speculative because their music files are still encrypted with FairPlay. Just as in *Mercedes-Benz*, however, whether any customer will suffer any future harm from such encryption depends (even under plaintiffs' theory) on whether the customer buys another iPod—and plaintiffs have not shown that they fall into that category, let alone that all or substantially all of the class does.

    Plaintiffs argue (p. 12) that whether every class member would benefit from free-upgrades is "irrelevant so long as all Class members seek identical relief from a single practice." As shown above (p. 5), that misses the point that DRM-free upgrades would not benefit much of the class, and thus reasonable plaintiffs would not sue for such relief in the absence of monetary damages.

    Plaintiffs also miss the point in arguing (p. 9) that, at some high level of generality, Apple's conduct—use of DRM—was "uniform" across the class. As Rule 23(b)(2) makes clear, they must still show that injunctive relief is "appropriate respecting the class as a whole." Where

1  plaintiffs fail to show that the challenged conduct impacts most if not all of the proposed class,
2  injunctive relief is inappropriate.[2]

3        **D.**     **A class of future iPod purchasers has not been pled and would be**
4             **improperly unascertainable.**

5  As shown in Apple's motion (pp. 11-12), even if some group were threatened with harm
6  from future iPod purchases, no such group has been pled and no method exists to properly
7  identify its members. Thus, plaintiffs' class motion fails because they cannot demonstrate that an
8  identifiable and ascertainable class exists. Again, plaintiffs have no answer so they ignore this
9  argument and the cases on which it is based. Plaintiffs do not dispute that no method exists to
10 know which consumers will decide to buy an iPod in the future, much less which ones will do so
11 for the reason alleged by plaintiffs. Thus, certification under Rule 23(b)(2) is not proper. *See*
12 *Simon v. Am. Tel. & Tel. Corp.,* 2001 WL 34135273, at *3 (C.D. Cal. Jan. 26, 2001) (denying
13 certification under Rule 23(b)(2) in part because the alleged class of future purchasers of high-
14 speed internet access services from the defendant was not ascertainable).

15        **E.**     **The requested relief would be inequitable because it would impose a**
16             **cost on Apple vastly disproportionate to any benefit to consumers.**

17  Plaintiffs are in effect seeking a mandatory injunction requiring Apple (1) to obtain from
18 the record companies DRM-free versions of the ▓▓▓▓ songs purchased by iPod owners over
19 the last six years, which costs Apple ▓▓▓▓▓▓ and (2) to provide those songs free-of-
20 charge to the iPod owners. As shown in Apple's motion, the cost to Apple would be enormous,
21 and plaintiffs have made no showing that any class member would benefit, much less
22 substantially all of the class. This is a further independent reason for denying class treatment.
23 "Equitable relief should not be granted where the hardship to the defendant substantially

---

[2] Plaintiffs' argument that they need not be the "most effective" representatives (p. 13) is diversionary. The issue is whether they have shown that they—and, more fundamentally, the individuals they seek to represent—are threatened with any personal harm if Apple does not provide, free of charge, new DRM-free versions of previously purchased music. That is the showing that plaintiffs have not and cannot make.

1  outweighs the benefit to the plaintiff." *Abeyta v. Town of Taos*, 499 F.2d 323, 328 (10th Cir.
2  1974).

3  In response, plaintiffs deny that they are seeking free upgrades to DRM-free versions. As
4  they put it (p. 13): "Plaintiffs do not seek 'free' upgrades —they seek removal of FairPlay from
5  their . . . previously purchased music files." But as previously shown, Apple cannot remove
6  FairPlay from a file on plaintiffs' computers. So, although they refuse to face up to it, free
7  substitute files without DRM, *i.e.* free upgrades to DRM-free versions, are exactly what plaintiffs
8  are seeking.[3]

9  Contrary to plaintiffs' argument, neither *Abeyta* nor any other case holds that taking
10 account of the relative hardships depends on a finding of "good faith." The court must consider
11 the balance of harm in every case. *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006)
12 ("According to well-established principles of equity, a plaintiff seeking a permanent injunction
13 must ... demonstrate ... that, considering the balance of hardships between the plaintiff and
14 defendant, a remedy in equity is warranted . . ."). Moreover, it would be difficult to imagine an
15 antitrust case where the defendant acted in better faith than Apple has here. In pioneering an
16 online digital music store, Apple had no choice but to comply with the record labels' requirement
17 to use DRM to prevent piracy. And no court has ever faulted a company for developing and
18 using its own software (or any other product) rather than using a competitor's. Indeed, not even
19 plaintiffs' own economist thinks much of an antitrust rule requiring Apple or anyone else to use
20 Microsoft's software: prohibiting that conduct "would be stupid" because it would freeze
21 technology and "prohibit innovation." Dkt. 176, Ex. 21, 170:4-22.

22 Other than trying to inject a good faith requirement that Apple would meet anyway,
23 plaintiffs fail to address Apple's showing that the cost to Apple would vastly outstrip any benefit

---

[3] Equally inaccurate is plaintiffs' characterization of the issue (p. 13) as whether Apple should be "required to cease acting anticompetitively." The alleged anticompetitive act was complying with the record labels' requirement by using proprietary DRM instead of using Microsoft's DRM or licensing FairPlay to competitors. Putting aside that Apple's conduct did not violate the antitrust laws, that conduct has ceased. Thus, even under plaintiffs' theory, there is no basis to order Apple "to cease acting anticompetitively."

1  to iPod owners. Plaintiffs have made no showing that any iPod owner has been forced to buy an
2  iPod as a result of the size of that person's iTS library, much less that any substantial portion of
3  iPod owners fits that description. Most importantly, plaintiffs have affirmatively eschewed any
4  intention or method to identify any such individuals. In these circumstances, plaintiffs are left to
5  argue that every iPod owner with iTS music should receive DRM-free versions of all of their iTS
6  music, free of charge. That would be ▮▮▮▮▮▮▮▮ cost to Apple, with no discernible value to
7  any particular recipient.

8      Finally, without citation to precedent, plaintiffs argue (p. 14) that Apple legally errs in
9  asserting that plaintiffs must demonstrate that the requested injunctive relief would have an effect
10 on future iPod prices. If they mean that they do not need to show impact, that argument is
11 foreclosed by the settled principle that injunctive relief may be granted only to prevent an injury
12 for which the plaintiff could recover damages. *See McGahee*, 858 F.2d at 1501. If, on the other
13 hand, plaintiffs are asserting that they have demonstrated a class-wide method to show an impact
14 on future iPod prices, the reference to their expert's report fails to carry their burden. As noted in
15 Apple's motion (p. 14) and ignored by plaintiffs, the Court's finding that the indirect plaintiffs
16 failed to establish a class wide method of proving an effect on past iPod prices applies with even
17 greater force to any attempt to prove an effect on future iPod prices.

18     Plaintiffs are equivocal and evasive on this topic for a reason. This case, as they have pled
19 it on behalf of iPod purchasers, is not amenable to a claim for injunctive relief. The alleged
20 harm—an overcharge on the iPods they have purchased—can be fully compensated by money
21 damages if their claims were valid. Their added request that Apple provide free upgrades is not
22 an appropriate basis to certify an injunctive relief class.

23 **III.  TRYING TO ADD A CLASS OF ITUNES STORE CUSTOMERS DOES NOT
24       CURE THESE DEFECTS.**

25     The focus of this motion is on the certified class of iPod purchasers. To avoid responding
26 to Apple's arguments as to that class, plaintiffs repeatedly refer to a class of iPod purchasers **and**
27 iTS customers. *E.g.,* Opp., pp. 5, 6, 7, 9, 11, 12, and 15. They do not even attempt to defend an
28 injunctive relief class composed solely of iPod purchasers, instead arguing (p. 5) that they "have

1  adequately demonstrated that the Class of iPod purchasers and iTMS purchaser [sic] (as newly
2  defined) are entitled to injunctive relief." Thus, plaintiffs effectively concede that the class of
3  iPod purchasers should be decertified if the Court denies their pending Motion to Modify
4  Injunctive Relief Class Definition. Dkt. 236.

The flaws of an iPod class cannot be cured by expanding the class. As set forth in Apple's opposition to plaintiffs' motion that seeks in substance to certify a class of iTS customers without iPods, that proposed class suffers from some of the same defects as the iPod class, *e.g.*, the principal injunctive relief sought is moot. Dkt. 255, pp. 4, 10-11. It also suffers from defects of its own, including that plaintiffs are not members, or adequate representatives, of that class because they have purchased both iPods and iTS music. *Id.* at 5-8. Nor have plaintiffs shown that iPod-less iTS purchasers have suffered or are threatened with any antitrust injury or that any such injury could be shown on a class-wide basis. *Id.*, pp. 8-10. Rather than salvaging their injunctive relief class, plaintiffs' new proposed class definition merely compounds the deficiencies undermining certification of a class.

## IV. PLAINTIFFS' ALLEGATIONS ABOUT SOFTWARE UPDATES DO NOT SUPPORT A RULE 23(B)(2) CLASS.

At several points in their opposition (*e.g.*, pp. 7, 10, 11, 12, 13), plaintiffs refer to their allegation that Apple has issued software updates that "foreclose competition" for portable digital players and online audio and video files. Software updates, however, provide no basis for injunctive relief. First, the updates issue is moot because Apple no longer uses FairPlay for music files and thus there are no updates to enjoin. Second, only one of the three past software updates allegedly pertained to interoperability—the subject of this case—and that update occurred more than five years ago. That was the update that occurred after the Real Networks hack referred to at paragraphs 51-54 of the consolidated complaint.[4] Plaintiffs' attempt to justify an injunctive relief

---

[4] The other two software updates referred to in the complaint (¶ 55) have nothing to do with interoperability. They pertain to changes in usage rules, such as the number of computers authorized for storing iTS content or the number of times a playlist can be burned. None of this has anything to do with playing iTS music on competing digital players.

1 class based on past and irrelevant software updates underscores the absence of any legitimate
2 basis for their position.

## V. PLAINTIFFS' VIDEO ALLEGATIONS DO NOT SUPPORT A RULE 23(B)(2) CLASS.

Plaintiffs default in responding to Apple's arguments regarding iTS video content. They do not even attempt to answer how an injunction pertaining to video sales could possibly be the predominant relief sought by the class. *See* Mot., pp. 14-16. Their assertion that injunctive relief is appropriate if they prove their claim because Apple continues to use DRM for video is too simplistic. It ignores that even under plaintiffs' theory, video sales could not possibly have "coerced" any consumer into buying an iPod, let alone a sufficient number of consumers that the price of iPods (including the early iPods and the later iPod mini and iPod shuffle that have no video capability) could have been affected. Nor can plaintiffs plausibly claim that any injunction directed to video sales could have any effect on future prices of iPods. Plaintiffs have no answer to the showing that, unlike the music record labels, the video copyright owners have not authorized on-line distributors to provide DRM-free versions of their video. This means that, even if there were some lock-in effect from video sales and even if it were affecting iPod prices (neither of which is true or plausible), Apple could not properly be ordered to offer DRM-free videos. Instead, the relief sought by plaintiffs would require Apple to license its DRM to competitors or to use Microsoft's DRM. Not only would there be no basis for concluding that any such licensing would have a measurable favorable effect on iPod prices, but doing so would be directly contrary to the basic principles of the antitrust laws, as previously demonstrated. *See* Dkt. 200, pp. 7-11.

**CONCLUSION**

For these reasons, the injunctive relief class under Rule 23(b)(2) in the direct purchaser action should be decertified.

Dated: November 9, 2009.

Respectfully submitted,

JONES DAY

By:  /s/ Robert A. Mittelstaedt
       Robert A. Mittelstaedt

Counsel for Defendant
APPLE INC.

SFI-622804v2