1              IN THE UNITED STATES DISTRICT COURT

2           FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4

5                              )  C-05-00037-JW
                               )
6      "THE APPLE IPOD ITUNES  )  NOVEMBER 23, 2009
       ANTITRUST LITIGATION."  )
7                              )
                               )
8                              )  PAGES 1 - 58
       _____ )
9

10

11          THE PROCEEDINGS WERE HELD BEFORE

12        THE HONORABLE UNITED STATES DISTRICT

13                 JUDGE JAMES WARE

14   A P P E A R A N C E S:

15   FOR THE PLAINTIFFS: COUGHLIN, STOIA, GELLER, RUDMAN
                         & ROBBINS
16                       BY:  BONNY SWEENEY
                              THOMAS R. MERRICK
17                       655 WEST BROADWAY
                         SUITE 1900
18                       SAN DIEGO, CALIFORNIA 92101

19                       ZELDES & HAEGGQUIST
                         BY:  HELEN ZELDES
20                       625 BROADWAY, SUITE 906
                         SAN DIEGO, CALIFORNIA 92102
21
     FOR THE DEFENDANTS: JONES DAY
22                       BY:  ROBERT A. MITTELSTAEDT
                              MICHAEL SCOTT
23                       555 CALIFORNIA STREET
                         26TH FLOOR
24                       SAN FRANCISCO, CALIFORNIA 94104

25   OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
                              CERTIFICATE NUMBER 8074

                                                              1

```
1

2    SAN JOSE, CALIFORNIA              NOVEMBER 23, 2009

3                   P R O C E E D I N G S

4              (WHEREUPON, COURT CONVENED AND THE

5    FOLLOWING PROCEEDINGS WERE HELD:)

6              THE CLERK:  CALLING CASE NUMBER 05-00037,

7    THE APPLE IPOD ITUNES ANTITRUST LITIGATION.

8              ON FOR VARIOUS MOTIONS.  FIFTEEN MINUTES

9    EACH SIDE FOR ALL MOTIONS.

10             THE COURT:  I'M SURE THAT'S NOT GOING TO

11   BE SUFFICIENT BUT --

12             MS. ZELDES:  THAT'S OUR FIRST MOTION.

13             THE COURT:  YOUR FIRST MOTION IS FOR MORE

14   TIME?

15             FIRST INTRODUCE YOURSELVES TO ME.

16             MS. SWEENEY:  GOOD MORNING, YOUR HONOR.

17   BONNIE SWEENEY FOR THE DIRECT PURCHASER PLAINTIFFS.

18             MR. MERRICK:  GOOD MORNING, YOUR HONOR.

19   THOMAS MERRICK ALSO FOR THE DIRECT PURCHASER

20   PLAINTIFFS.

21             MS. ZELDES:  GOOD MORNING, YOUR HONOR.

22   HELEN ZELDES ON BEHALF OF STACY SOMERS THE INDIRECT

23   PURCHASER PLAINTIFFS.

24             MS. ROACH:  GOOD MORNING, YOUR HONOR.

25   PAULA ROACH ON BEHALF OF DIRECT PURCHASER
```

2

1    PLAINTIFFS.

2              MR. MITTELSTAEDT:  AND FOR APPLE, YOUR

3    HONOR, BOB MITTELSTAEDT AND MICHAEL SCOTT.

4              THE COURT:  WELL, AS MS. GARCIA DIRECTLY

5    SUMMARIZED IT, WE HAVE VARIOUS MOTIONS.

6              WE HAVE A MOTION BY THE DIRECT PURCHASER

7    PLAINTIFFS TO MODIFY THE DEFINITION OF THE CLASS TO

8    INCLUDE ITUNE PURCHASERS.

9              WE HAVE A MOTION, IT DOESN'T SAY BY WHOM,

10   BUT A MOTION FOR RECONSIDERATION OF THE 23(B)(2)

11   CLASS, I BELIEVE THAT'S APPLE'S MOTION; A MOTION

12   FOR DECERTIFICATION OF THE RULE 23(B)(3) CLASS,

13   THAT MUST BE APPLE'S MOTION AS WELL; AND THEN I

14   HAVE A SUPPLEMENTAL MOTION FOR CLASS CERTIFICATION

15   OF THE RULE 23(B)(2) CLASS.

16             I ACTUALLY WANTED TO HEAR FROM THE

17   PLAINTIFFS FIRST BECAUSE I APPROACHED THIS WHOLE

18   PROBLEM AS ONE OF TRYING TO UNDERSTAND WHAT IS THE

19   PLAINTIFF'S THEORY AND CLAIM.

20             AND I ACTUALLY WONDERED WHETHER OR NOT

21   THE MOTION TO MODIFY THE CLASS WAS AT THE INSTANCE

22   OF THE PLAINTIFFS THEMSELVES OR WHETHER OR NOT THEY

23   TOOK THE COURT'S QUESTION AS BEING THE ONLY REASON

24   FOR THE MODIFICATION.

25             I KNOW THAT THERE ARE ISSUES OF MOOTNESS

                                                        3

1    AND OTHERS THAT ARE RAISED WITH RESPECT TO WHETHER

2    OR NOT THE COURT SHOULD CHANGE THE DEFINITION, BUT

3    I DID WANT TO HEAR THE MOTIVATIONAL STATEMENT.

4              MR. MERRICK:  AGAIN, THOMAS MERRICK FOR

5    THE DIRECT PURCHASER PLAINTIFFS, YOUR HONOR.

6              YES, I WOULD SAY THAT THE COURT'S JULY

7    17TH, ORDER ASKING FOR ADDITIONAL BRIEFING WAS ONE

8    OF OUR PRIMARY MOTIVATING FACTORS.

9              WHAT IT DID IS, I THINK, SHOWED UP

10   RIGHTFULLY SO, WHICH THE COURT IS CORRECT IN

11   SEEING, THAT THERE WAS A GAP IN THE INJUNCTIVE

12   RELIEF CLASS THAT COULD ONLY BE CURED IF WE ALSO

13   INCLUDED ITUNES PURCHASERS.

14             SO I WOULD HOPE THAT ANSWERS YOUR INITIAL

15   QUESTION, BUT THAT WAS OUR MOTIVATING FORCE.

16             THE COURT:  WELL, THIS IS ON THE MONOPOLY

17   CLAIM?

18             MR. MERRICK:  CORRECT.

19             THE COURT:  STATE FOR ME AS CLEARLY AS

20   YOU CAN WHAT IS THE CLAIM THAT WOULD THEN ENCOMPASS

21   THE ITUNE PURCHASERS AS PART OF THAT CLASS.

22             MR. MERRICK:  WELL, THE MONOPOLIZATION

23   CLASS, OR CLAIM RATHER, UNLIKE THE TYING CLAIM, IS

24   BASED ON SOME SIMILAR ASPECTS TO THE TYING CLAIM

25   BUT NOT ALL.

4

1             THE MONOPOLIZATION AND ATTEMPTED

2     MONOPOLIZATION CLAIMS ARE BASED ON APPLE'S

3     MAINTENANCE AND ACQUISITION OF MONOPOLY POWER IN

4     THE MUSIC PLAYER MARKET, THE ON-LINE MUSIC MARKET,

5     AND THE ON-LINE VIDEO MARKET PER THE COMPLAINT.

6             THAT BEING THE CASE, THE (B)(2) CLASS

7     SEEKING INJUNCTIVE RELIEF WOULD BE TRYING TO -- IS

8     AIMED AT REMEDYING ALL OF THAT CONDUCT, THE

9     MONOPOLIZATION CONDUCT ON ALL THREE OF THOSE

10    FRONTS.

11            THE COURT:  I MISSED THE THIRD.  THE

12    MONOPOLY IN THE PLAYER MARKET, THE MUSIC MARKET AND

13    THE?

14            MR. MERRICK:  VIDEO MARKET.

15            THE COURT:  AND THE VIDEO MARKET.

16            MR. MERRICK:  THE ON-LINE.

17            THE COURT:  AND THIS WAS ACCOMPANIED

18    WITHOUT ANY CHANGES IN THE PLEADINGS.  SO I'M TO

19    RELY ON THE CURRENT PLEADINGS FOR THAT PURPOSE?

20            MR. MERRICK:  CORRECT, YOUR HONOR.  AND

21    THIS IS THE CLASS THAT WE'RE MOVING ON NOW, THAT

22    WE'RE MOVING TO HAVE THE DEFINITION CHANGED TO, IS

23    THE SAME CLASS AS WHAT WAS PLED IN THE COMPLAINT

24    ORIGINALLY.

25            THE COURT:  YES.  ALL RIGHT.

5

1          NOW, GOING TO THE MONOPOLY CLAIM, STATE

2     AS CLEARLY AS YOU CAN WHAT THAT CLAIM IS.

3          MR. MERRICK:  WELL, APPLE'S OVERALL USE

4     OF INTEROPERABILITY, IF I CAN PUT IT AS SUCCINCTLY

5     AS THAT; THEIR MARKET POWER WITHIN THE MUSIC PLAYER

6     MARKET FOR IPODS; THEIR MARKET POWER WITHIN THE

7     ITUNES MUSIC STORE MARKET WORKING TOGETHER CREATED

8     A MAINTENANCE OF MONOPOLY POWER IN THOSE MARKETS

9     WHICH THEN LED TO A HARM TO COMPETITION, THE LACK

10    OF INTEROPERABILITY, INJURY TO THE CONSUMERS,

11    HIGHER PRICES, SUPPLY AND SELECTION OF COMPETING

12    PRODUCTS WAS DAMPENED DUE TO THE MONOPOLY.  THE

13    NUMBER AND EFFECTIVENESS OF COMPETITORS WOULD BE

14    DIMINISHED, AND THAT'S SORT OF A NUTSHELL OF OUR

15    ALLEGATIONS IN THE COMPLAINT.

16         THE COURT:  THE CLARITY OF THAT IS YET TO

17    GET TO ME, AND I'M TRYING TO ASK YOU THESE

18    QUESTIONS BECAUSE IT DOES SEEM TO ME THAT IF I'M

19    GOING TO MODIFY ANYTHING, I NEED TO UNDERSTAND

20    BETTER WHAT IT IS THAT WOULD BE CAPTURED BY IT.

21         I ACTUALLY NEED TO STUDY THIS BETTER

22    BEFORE I'M IN A POSITION TO GRANT THIS

23    MODIFICATION.

24         WHAT I WORRY ABOUT IS THAT THE

25    INTEROPERABILITY IS THE EVIL THAT IS BEING ALLEGED.

                                                    6

1          IN OTHER WORDS, THAT IT'S NOT DRM, WHICH

2     IS SOMETHING THAT PERHAPS IS IMPOSED BY THE OWNER

3     OF THE COPYRIGHT, BUT IT IS WHATEVER IS CALLED

4     INTEROPERABILITY.

5          MR. MERRICK:  I CAN ADDRESS THAT I THINK,

6     YOUR HONOR.

7          THE COURT:  ALL RIGHT.

8          MR. MERRICK:  A COUPLE HEARINGS AGO THE

9     COURT STATED SOMETHING THAT I THOUGHT PUT IT VERY

10    SUCCINCTLY, WHICH IS THAT THERE IS DRM AND THEN

11    THERE IS APPLE'S DRM.

12         APPLE'S DRM MADE IT SO THAT ONLY THE

13    DOWNLOADS WOULD ONLY WORK WITH AN APPLE AND THAT

14    ONLY APPLE IPODS COULD SYNC WITH ITUNES.

15         THE RECORD LABELS DID WANT DRM.  THAT

16    PART WE DO AGREE WITH.

17         HOWEVER, THE RECORD LABELS ALSO WERE IN

18    FAVOR OF INTEROPERABILITY WHICH WOULD HAVE BEEN --

19    WHICH IS THE REASON WHY -- WHICH IS OUR REAL MAJOR

20    COMPLAINT.

21         WE UNDERSTAND THAT THERE NEEDS TO BE SOME

22    COPYRIGHT PROTECTION, BUT THE WAY THAT APPLE WENT

23    ABOUT DOING THAT THROUGH ITS OWN PROPRIETARY DRM --

24    A GREATER EXAMPLE IS AN E-MAIL THAT WE FILED UNDER

25    SEAL THAT IS ATTACHED TO A DECLARATION IN THE REPLY

7

1    BRIEF ON -- THAT THE MOTION FOR REDEFINING THE

2    CLASS WHERE APPLE INTERNALLY IS TALKING ABOUT ONE

3    OF THE RECORD LABEL'S REACTION TO REAL NETWORKS

4    CHANCE OR -- I'M SORRY -- EFFORTS TO MAKE THEIR

5    MUSIC STORE IN A SENSE BE ABLE TO WORK WITH AN

6    IPOD.

7            AND WHAT HAPPENED IS THAT THEY WENT TO

8    THE RECORD LABELS AND SAID WHAT DO YOU THINK?  AND

9    IN THE E-MAIL THE RECORD LABELS SAID WE DON'T HAVE

10   A PROBLEM AND OUR CONCERN WOULD BE

11   INTEROPERABILITY.  WE WOULD LIKE TO SEE APPLE

12   LICENSE TO REAL AND SO IT WOULD GIVE US MORE

13   OPPORTUNITY TO SELL OUR PRODUCT.

14           AGAIN, WE'RE GETTING INTO EVIDENCE BASED

15   ISSUES AND FACT BASED ISSUES, AND I THINK THAT'S

16   KIND OF AN EXAMPLE OF THE KIND OF ACTIVITY THAT

17   WE'RE ALLEGING.

18           THE COURT:  SO THAT THE CLASS NEEDS TO

19   INCLUDE THE PURCHASERS OF MUSIC?

20           AND IS THAT ALL PURCHASERS OF MUSIC?

21           MR. MERRICK:  FROM ITUNES, YES.  THE

22   REASON IT NEEDS TO INCLUDE PURCHASERS OF MUSIC IS

23   THAT AFTER THERE'S -- APPLE DID STOP USING DRM IN

24   ITS ITUNES DOWNLOADS IN JANUARY OF 2009, BUT THE

25   800 POUND GORILLA, THE ELEPHANT IN THE ROOM AS IT

                                                        8

1    WERE WOULD STILL BE 5 BILLION LOCKED SONGS THAT ARE

2    STILL IN EXISTENCE.  AND THAT'S AFTER THE DRM IS NO

3    LONGER BEING USED.  THAT'S WHAT THE FOCUS OF THE

4    (B)(2) CLASS WOULD BE AND ALSO THE VIDEO, THE VIDEO

5    STILL HAS DRM IN IT AS WELL.

6            THE COURT:  WHEN IT STOPPED DRM, IT

7    STOPPED ITS DRM OR IS IT ALL DRM'S?

8            MR. MERRICK:  ALL.

9            THE COURT:  ALL HAS BEEN STOPPED.  SO IF

10   YOU BUY THE MUSIC, YOU'RE THEN ABLE TO DUPLICATE IT

11   MULTIPLE TIMES, YOU CAN TRANSFER IT MULTIPLE TIMES.

12   THE COPYRIGHT OWNER HAS LOST ANY CONTROL OVER ITS

13   DISTRIBUTION.

14           MR. MERRICK:  HOW MUCH CONTROL THEY LOST

15   I'M NOT SURE BUT THEY DON'T HAVE THE DRM ON IT NOW,

16   BUT, AGAIN, YOU STILL HAVE FIVE BILLION LOCKED

17   SONGS.

18           THE COURT:  AND SO THE FOCUS WOULD BE ON

19   THE PURCHASERS OF ITUNES WHO REMAIN HAVING DRM,

20   APPLE DRM PROTECTED MUSIC?

21           MR. MERRICK:  CORRECT.

22           THE COURT:  AND ONLY THOSE?

23           MR. MERRICK:  WELL, THE CLASS WOULD

24   CONSIST AS PLED, WOULD CONSIST OF BOTH IPOD BUYERS

25   AND THE ITUNES BECAUSE, AGAIN, THE MONOPOLIZATION

9

1    IS LARGER THAN JUST THE LOCKED SONGS LEFT IN IT.

2    IT HAS TO DO WITH THE LACK OF INTEROPERABILITY.

3             THE COURT:  AND WHAT IS THE HARM TO

4    COMPETITION WITH RESPECT TO THE IPOD PURCHASERS?

5    THEY'RE ABLE TO DOWNLOAD THE APPLE DRM PROTECTED

6    MUSIC?

7             MR. MERRICK:  THEY ARE, BUT THE IDEA

8    THERE IS THAT HAVING THE DRM ON IT AT THE TIME

9    IMPACTED WHETHER THEY COULD USE COMPETING SOURCES

10   AND WHETHER COMPETING SOURCES COULD USE THEIR,

11   COULD USE ITUNES.  SO IT'S BOTH.

12            THE COURT:  WELL, WHY WOULD THE

13   PURCHASERS -- I SEE, SO THE PURCHASER OF THE IPOD,

14   IT'S NOT SO MUCH WHAT IS ENCODED INTO THE MUSIC, IT

15   IS WHAT IS ENCODED INTO THE PLAYER SO THAT IT IS

16   NOT ABLE TO PLAY OTHER MUSIC.

17            MR. MERRICK:  THAT'S PART OF IT, TOO,

18   YOU'RE RIGHT.

19            THE COURT:  PART OF IT, TOO?  THAT'S THE

20   WHOLE POINT OF THE DRM -- PART OF THE CLASS WITH

21   RESPECT TO THE PLAYER; RIGHT?

22            MR. MERRICK:  RIGHT.

23            THE COURT:  THAT THE PLAYER ITSELF WON'T

24   DECODE OTHER MUSIC.

25            MR. MERRICK:  AND IF THEY HAVE DOWNLOADED

10

1   ANY MUSIC INTO THEIR IPOD, THAT MEANS THAT IT'S

2   TIED INTO ONLY AN IPOD AND THEY COULDN'T BUY A

3   COMPETING PLAYER.

4           THE COURT:  VERY WELL.  LET ME TAKE THAT

5   AS THE EXPLANATION OF THE WHY.  NOW LET'S GO TO THE

6   WHY NOT?

7           MR. MITTELSTAEDT:  FIRST OF ALL, YOUR

8   HONOR, ON THE SECTION 2 CLAIM AND WHAT IT IS,

9   ACCORDING TO THE COMPLAINT THEY ARE SIMPLY

10  REALIZING AND INCORPORATING BY REFERENCE ALL OF THE

11  PREVIOUS ALLEGATIONS, THE ALLEGATIONS THAT DEALT

12  WITH TYING.

13          AS I READ THE COMPLAINT, YOUR HONOR,

14  THEIR SECTION 2 CLAIM IS THE SAME THING AS THEIR

15  TYING CLAIM.

16          THE COURT:  I AGREE WITH YOU.  AS I

17  UNDERSTAND IT, ALTHOUGH THE TECHNOLOGICAL TIE

18  DOESN'T WORK, AS FAR AS THE COURT IS CONCERNED, AS

19  A STRICT TYING CLAIM, THEY ARE REALLEGING IT AS A

20  SECTION 2 CLAIM.

21          MR. MITTELSTAEDT:  YES.  AND AT THE

22  APPROPRIATE TIME, AND I THINK IT DOES BEAR ON WHAT

23  WE'RE TALKING ABOUT THIS MORNING, OUR POSITION IS

24  GOING TO BE THAT UNDER FOREMOST PRO, THE NINTH

25  CIRCUIT CASE YOUR HONOR HAS RELIED ON, BECAUSE THE

11

1    TYING CLAIM, THE CONDUCT UNDERLYING THE TYING CLAIM

2    IS NOT ANTICOMPETITIVE IT, IN THE WORDS OF THE

3    NINTH CIRCUIT IN FOREMOST PRO, QUOTE, "IS OF NO

4    ASSISTANCE TO THE PLAINTIFF'S EFFORTS TO STATE A

5    CLAIM FOR RELIEF FOR MONOPOLIZATION AND ATTEMPTED

6    MONOPOLIZATION, BOTH OF WHICH REQUIRE AT LEAST SOME

7    ALLEGATION OF ANTICOMPETITIVE CONDUCT."

8            THE --

9            THE COURT:  WELL, WAS FOREMOST PRO A

10   SECTION 2 CASE?

11           MR. MITTELSTAEDT:  IT WAS BOTH A TYING

12   CASE AND A SECTION 2 CASE AFTER FINDING THAT THE

13   INTRODUCTION OF TECHNOLOGICALLY RELATED PROJECTS

14   ALONE WAS NOT AN ANTICOMPETITIVE ACT, EVEN IF, AS

15   THE NINTH CIRCUIT SAID, THE PRODUCTS WERE

16   INCOMPATIBLE WITH PRODUCTS OFFERED BY COMPETITORS.

17           AFTER THE COURT FOUND THAT AND THROUGHOUT

18   THE SECTION 1 TYING CLAIM, THE COURT WENT ON TO

19   FIND THAT THAT SAME CONDUCT WAS OF NO ASSISTANCE TO

20   THE PLAINTIFF IN TRYING TO ESTABLISH A SECTION 2

21   CLAIM.

22           SO I THINK THAT THAT BEARS ON WHETHER THE

23   PLAINTIFF SHOULD GET A CLASS CERTIFIED HERE.

24           THE OTHER ASPECT OF THEIR CLAIM, YOUR

25   HONOR, AT BOTTOM, AS YOUR HONOR HAS RECOGNIZED

12

1    BEFORE, IS THEY ARE SAYING THAT APPLE SHOULD HAVE

2    USED MICROSOFT'S DRM OR IT SHOULD HAVE LICENSED

3    FAIR PLAY TO COMPETITORS.

4           OUR POSITION IS THAT THERE IS SIMPLY NO

5    ANTITRUST DUTY ON AN INNOVATIVE COMPANY TO DO

6    EITHER OF THOSE THINGS.

7           THE IDEA THAT MICROSOFT COULD COME INTO

8    THIS COURT, FOR EXAMPLE, AND SUE APPLE FOR NOT

9    USING MICROSOFT SOFTWARE, AND THAT MICROSOFT, IF

10   THEY CAN'T DO THAT, CONSUMERS SHOULD NOT BE ABLE TO

11   DO THAT STANDING IN THE SHOES OF MICROSOFT.

12          THE COURT:  WELL, LET ME SEE IF I CAN

13   STATE THE CLAIM AS I HAVE ARTICULATED IT TO MYSELF,

14   AND THIS IS JUST A SUMMARY.  IT'S NOT NECESSARILY

15   WHAT THE PLAINTIFF WOULD AGREE TO BE THEIR CLAIM.

16          AS I HAVE ARTICULATED IT TO MYSELF, THE

17   PLAINTIFFS ARE CLAIMING THAT APPLE HAS MONOPOLY

18   POWER IN MUSIC AND THAT USING ITS MONOPOLY POWER IN

19   MUSIC, IT LEVERAGES THAT MARKET PLAYER TO EXTRACT A

20   PREMIUM WITH RESPECT TO PLAYERS BY TECHNOLOGICAL

21   TYING BETWEEN THE MUSIC AND THE PLAYER SUCH THAT IF

22   YOU WANT TO ENJOY THIS 60, 70 PERCENT -- I'VE SEEN

23   DIFFERENT NUMBERS WITH RESPECT TO THE POWERS IN

24   MUSIC -- IF YOU WANT TO ENJOY THE BENEFIT OF THAT

25   MUSIC, YOU HAVE TO BUY A PLAYER.

13

1          AND SO IT LEVERAGES ITS MARKET POWER IN

2     MUSIC TO EXTRACT A PREMIUM FROM THE MARKET IN

3     PLAYERS.

4          NOW, I HAVEN'T QUITE SORTED OUT YET, AS

5     I'M STRUGGLING WITH THIS CASE, WHAT THAT DOES IN

6     TERMS OF WHO SHOULD BE IN THE CLASS, BUT THAT --

7     AND THEN I HAVE ALSO SEEN IN THE PLAINTIFF'S

8     COMPLAINT THAT APPLE HAS AN 80 PERCENT MARKET SHARE

9     IN PLAYERS, BUT IT SEEMS TO ME THAT THIS CASE

10    STARTED OUT WITH BOTH TECHNOLOGIES, THE MUSIC AND

11    THE PLAYERS IN THE BALANCE.  AND WE'RE TRYING TO

12    WORK OUR WAY THROUGH EXACTLY WHAT IS THE THEORY AND

13    WHAT SHOULD BE THE CLASS GIVEN THAT THEORY AND THE

14    RELIEF THAT IS BEING SOUGHT.

15         MR. MITTELSTAEDT:  UNDERSTOOD.  AND I'M

16    FOCUSSING ON THE FIRST PART, YOU KNOW, WHAT IS

17    THEIR CLAIM AND THEN I'LL GET QUICKLY TO THE SECOND

18    PART WHAT DOES THAT IMPLY FOR THE CLASS ISSUE.

19         BUT ON THE WAY THAT YOUR HONOR STATED

20    THEIR CLAIM, I AGREE, I THINK, THAT THAT'S THE WAY

21    THEY STATE IT.  BUT THERE ARE TWO THINGS WRONG WITH

22    THAT.

23         FIRST OF ALL, AS YOUR HONOR HAS FOUND,

24    IT'S NOT A MATTER -- IT'S NOT ACCURATE THAT ITUNES

25    MUSIC CANNOT PLAY ON AN IPOD, ON AN IPOD

                                                        14

1    COMPETITOR.

2              AS YOUR HONOR FOUND IN THE LAST ORDER,

3    IT'S JUST A MATTER OF USING ANOTHER STEP OR TWO IN

4    ORDER TO PLAY THAT MUSIC ON COMPETING PLAYERS.

5              SO THE ABSOLUTE NATURE OF THAT THE

6    PLAINTIFF'S STATEMENT OF THEIR CASE IS JUST

7    CONTRARY TO THE FACTS.

8              THE OTHER POINT, THOUGH, AND THIS IS MORE

9    IMPORTANT, IS WHAT THE PLAINTIFFS ARE DOING IS

10   DESCRIBING THEIR CLAIM IN A FAIRLY GENERIC HIGH

11   LEVEL WAY.

12             BUT WHEN YOU UNRAVEL THAT, WHAT THE CLAIM

13   AMOUNTS TO IS THAT APPLE WAS REQUIRED TO USE SOME

14   TYPE OF ANTI-PIRACY DRM.  APPLE HAD A CHOICE OF

15   USING MICROSOFT'S, AT LEAST THEORETICALLY, OR

16   DEVELOPING ITS OWN.  AND IT CHOSE TO USE ITS OWN.

17             AND THE PLAINTIFFS HAVE NOT COME UP WITH

18   ANY COHERENT THEORY ABOUT WHY THAT IS AGAINST THE

19   ANTITRUST LAWS.

20             THE COURT:  WELL, AS I UNDERSTAND THE

21   THEORY -- AND I AM ONLY DOING IT THIS WAY AS

22   OPPOSED TO HAVE THE PLAINTIFF DOING IS TO KEEP YOU

23   TALKING.

24             IS THAT THE REASON THEY DEVELOPED THEIR

25   OWN IS TO SELL PLAYERS AT A PREMIUM.  IN OTHER

15

1    WORDS, IT SAW A MARKET THAT IT COULD DEVELOP.

2            IT COULD HAVE DEVELOPED ITS OWN IN A

3    FASHION THAT WOULD NOT HAVE RESTRICTED THE MUSIC TO

4    OTHER PLAYERS, BUT IT CHOSE TO RESTRICT THE MUSIC

5    TO ITS PLAYER AS PART OF ITS DEVELOPMENT EFFORT.

6            THE ANTICOMPETITIVE MOTIVATION WAS NOT TO

7    PROTECT THE COPYRIGHT OWNER BUT IT WAS TO MAKE --

8    TO HARM COMPETITION AND PLAYERS THAT COULD PLAY THE

9    MUSIC.

10           MR. MITTELSTAEDT:  BUT, YOUR HONOR, WHEN

11   A COMPANY IS DECIDING ON DESIGNING A PRODUCT OR

12   LAUNCHING A NEW PRODUCT, IT'S MOTIVATION TO TRY AND

13   SELL MORE COMPLEMENTARY PRODUCTS, TO TRY AND GET AN

14   ADVANTAGE OVER COMPETITORS.  THAT MOTIVATION IS NOT

15   ENOUGH TO STATE A SECTION 2 VIOLATION.

16           I MEAN, THE ISSUE IS DOES A COMPANY

17   DEVELOPING A NEW PRODUCT HAVE ANY ANTITRUST DUTY TO

18   MAKE THAT PRODUCT INTEROPERABLE WITH COMPETITOR'S

19   PRODUCTS.

20           AND THE ANTITRUST CASES ARE LEGION THAT

21   SAY THAT A COMPANY DOES NOT HAVE TO DO ANYTHING TO

22   HELP COMPETITION.

23           SO -- AND I THINK THAT THAT PRINCIPLE IS

24   ENCAPSULATED WELL IN SAYING THIS, YOUR HONOR, THE

25   PLAINTIFFS, ONE OF THEIR THEORIES IS THAT APPLE

16

1    SHOULD HAVE USED MICROSOFT'S DRM INSTEAD OF

2    DEVELOPING ITS OWN.

3         THAT WOULD HAVE BEEN ONE AT LEAST

4    THEORETICAL WAY TO HAVE MORE INTEROPERABILITY.  BUT

5    THERE'S JUST NOTHING IN THE ANTITRUST LAWS THAT

6    SAYS THAT APPLE WAS REQUIRED TO DO THAT.

7         SO, YOU KNOW, THAT, I MEAN, THAT IS, I

8    THINK, HORNBOOK ANTITRUST LAW.  NO DUTY TO HELP

9    COMPETITORS.  NO DUTY TO DESIGN YOUR PRODUCTS IN A

10   WAY THAT MAKE THEM INOPERABLE.

11        YOU THINK ABOUT THE RAMIFICATIONS OF

12   THEIR THEORY.  APPLE COULD NOT HAVE LEGALLY UNDER

13   THEIR THEORY BROUGHT THE IPOD TO MARKET OR THE

14   ITUNES MUSIC STORE TO MARKET UNLESS IT INVESTED

15   ENOUGH MONEY TO MAKE THOSE THINGS INTEROPERABLE

16   WITH COMPETITOR'S PRODUCTS.

17        THAT WOULD THWART INNOVATION, AND THAT'S

18   WHAT THE NINTH CIRCUIT SAID IN FOREMOST PRO.  YOU

19   SIMPLY DON'T HAVE TO MAKE YOUR PRODUCTS

20   INTEROPERABLE WITH OTHERS.  THAT WOULD STOP THE

21   INNOVATION, AND THAT'S WHY THERE'S NO ANTITRUST

22   DUTY TO DO THAT.

23        THE COURT:  I KNOW THIS IS EVIDENTIARY IN

24   NATURE, BUT MY MIND IS DRAWN TO A CIRCUMSTANCE THAT

25   I HAVE HEARD AT SOME POINT ALONG THE WAY IN THIS

17

1    LITIGATION WHERE THAT EVEN THOUGH IT HAD DEVELOPED

2    ITS OWN VERSION OF DRM, WHEN A COMPETITIVE PRODUCT

3    THAT CAME ALONG THAT COULD USE IT, APPLE DID

4    SOMETHING TO CHANGE ITS VERSION OF DRM TO MAINTAIN

5    THE RELATIONSHIP BETWEEN THE MUSIC AND THE DIRECT

6    DOWNLOAD TO THE IPOD.  I AGREE WITH YOU THERE ARE

7    INDIRECT WAYS TO DO IT.

8              AND SO SHOULDN'T THE COURT AT LEAST ALLOW

9    THIS TO PROCEED TO THE POINT WHERE I CAN LEARN MORE

10   ABOUT THAT THROUGH DISCOVERY?  I DON'T KNOW IF

11   CHANGING THE CLASS DEFINITION IS THE WAY -- THE

12   ROUTE TO THAT BUT WHY SHOULDN'T I PAY ATTENTION TO

13   THAT?

14             MR. MITTELSTAEDT:  THE ALLEGATION IS THAT

15   A YEAR AND A HALF AFTER THE ITUNES MUSIC STORE WAS

16   LAUNCHED, SO NOW WE'RE UP TO OCTOBER OF 2004, REAL

17   NETWORKS DEVELOPED SOME TYPE OF DRM THAT MIMICKED

18   FAIR PLAY.

19             AND SO WHEN REAL NETWORKS SOLD MUSIC ON

20   THEIR MUSIC STORE, IT WAS INTERPRETED BY THE IPOD

21   AS APPLE'S FAIR PLAY DRM PROTECTED MUSIC.

22             THE WAY THEY DID THAT, AND THIS IS

23   ALLEGED IN THE COMPLAINT, IS REAL NETWORKS WAS ABLE

24   TO, IN THE WORDS OF THE COMPLAINT, DISCERN PART OF

25   APPLE'S SOFTWARE CODE, PART OF THEIR CODE FOR THE

                                                    18

1    DRM.

2              APPLE IS UNDER A STRICT CONTRACT WITH THE

3    LABELS, WAS AT THE TIME, TO MAINTAIN THE SECURITY

4    OF ITS DRM FOR OBVIOUS REASONS.

5              AND SO THIS WAS AN INSTANCE WHERE THE

6    COMPETITOR HAD BEEN ABLE TO, WHETHER BY HACKING,

7    REVERSE ENGINEERING, OR OTHERWISE, FIGURE OUT PART

8    OF THE SOFTWARE CODE.

9              APPLE, LIKE ALL SOFTWARE MANUFACTURERS,

10   PERIODICALLY UPDATES ITS SOFTWARE FOR A VARIETY OF

11   REASONS, FIXING BUGS, STAYING A STEP OR TWO AHEAD

12   OF HACKERS OR WHATEVER.

13             AND AS THE EVIDENCE WILL SHOW THAT APPLE

14   WAS PLANNING A SOFTWARE UPGRADE AND WENT AHEAD AND

15   INSTITUTED THAT.  THE EFFECT OF THAT SOFTWARE

16   UPDATE WAS TO BLOCK THIS HACK.

17             REAL COULD COME BACK AND TRY TO REHACK

18   AROUND THE SOFTWARE UPDATE.

19             WE ARE PROVIDING DISCOVERY TO THE

20   PLAINTIFFS ON THAT INCIDENT.  THE PLAINTIFFS HAVE

21   ASKED FOR A 30(B)(6) DEPOSITION, AND WE'RE WORKING

22   OUT THE DETAILS WITH THEM.

23             AND I'M CONFIDENT THAT AFTER THAT

24   DEPOSITION IS TAKEN AND WHEN WE FINISH COMPLETING

25   PRODUCING DOCUMENTS ON THAT, THAT ISSUE SHOULD GO

19

1    AWAY JUST LIKE THE ISSUE OF CHIP DISABLING AS I
2    THINK HAS GONE AWAY.
3            THERE'S ANOTHER ALLEGATION IN THE
4    COMPLAINT THAT APPLE DISABLES THE PROCESSOR CHIP IN
5    THE IPOD SO THAT IT WON'T PLAY MICROSOFT'S DRM.
6    THAT'S SIMPLY UNTRUE.
7            THE PLAINTIFF'S EXPERTS HAVE SAID THAT
8    THEY KNOW NOTHING ABOUT THAT, AND I THINK THAT WILL
9    GO AWAY.
10            IF IT DOESN'T GO AWAY VOLUNTARILY, WE'LL
11    DISPROVE THAT AS WELL.
12            FOR PURPOSES OF THE CLASS DISCUSSION
13    THOUGH, YOUR HONOR, IF THE PLAINTIFFS EVENTUALLY
14    END UP FOCUSSING ON THIS REAL NETWORK HACK IN LATE
15    2004, THAT HAS IMPLICATIONS, I THINK VERY SERIOUS
16    IMPLICATIONS ON WHETHER THEY GET A CLASS AND WHAT
17    KIND OF SCOPE OF THE CLASS WOULD BE IF ANY.
18            BECAUSE THE ISSUE OF WHO, IF ANYONE WAS
19    HARMED BY APPLE ISSUING A REGULARLY PERIODIC
20    SOFTWARE UPDATE IS SOMETHING THAT HASN'T BEEN
21    ADDRESSED BY THE PLAINTIFFS AND IT IS COMPLICATED
22    AND IT WOULDN'T GO BACK, YOU KNOW, TO THE START OF
23    THE MUSIC STORE.
24            THE COURT:  YOU DO NOT HAVE CURRENTLY
25    BEFORE THE COURT A MOTION TO DISMISS THE SECTION 2

20

1    CLAIM FOR FAILURE TO STATE A CLAIM; CORRECT?

2            MR. MITTELSTAEDT:  NO.  WE TRIED TO DO

3    THIS IN A FAIRLY SYSTEMATIC WAY AND I THINK NOW

4    THAT THE TYING CLAIMS ARE GONE, I THINK THAT'S THE

5    NEXT STEP.

6            THE COURT:  THAT WOULD PUT THE ISSUE

7    BEFORE THE COURT IN A DIFFERENT LIGHT.  I'M NOT

8    DISPOSED TO GRANT YOUR MOTION TO MODIFY -- I'M NOT

9    DISPOSED TO DENY THE MOTION TO MODIFY THE CLASS ON

10   MOOTNESS GROUNDS.

11           AS COUNSEL POINTS OUT EVEN THOUGH THERE

12   HAS BEEN A CHANGE IN THE TECHNOLOGY, THERE ARE

13   STILL A GROUP OF PEOPLE WHO ARE STILL AFFECTED BY

14   THE OLD TECHNOLOGY, AND AS I UNDERSTAND IT THERE IS

15   MONEY ASSOCIATED WITH THE CURRENT CHANGE.

16           IS THERE ANYTHING ELSE TO SAY OTHER THAN

17   WHAT I HEAR AS A POTENTIAL 12(B)(6) REASON NOT TO

18   MODIFY THE CLASS?

19           MR. MITTELSTAEDT:  YES.  WHEN THE

20   PLAINTIFFS MOVED TO CERTIFY THE CLASS, THIS

21   INJUNCTIVE RELIEF CLASS, THEIR POINT, THEIR MAIN

22   POINT WAS THAT APPLE WAS CONTINUING TO USE THIS DRM

23   AT THE MUSIC STORE AND YOUR HONOR CERTIFIED THE

24   (B)(2) CLASS FOR THE DIRECT PURCHASERS ON THAT

25   BASIS.

                                                    21

1            AND THEN IN JULY OF THIS YEAR WHEN IT WAS

2      BROUGHT TO YOUR HONOR'S ATTENTION THAT APPLE HAD

3      STOPPED DOING THAT AND APPLE HAD STOPPED DOING THAT

4      BECAUSE THE RECORD LABELS WITHDREW THAT

5      REQUIREMENT.  APPLE NEVER WANTED TO USE DRM IN THE

6      FIRST PLACE.  THAT'S IN THE RECORD.

7            APPLE USED DRM ONLY BECAUSE THE LABELS

8      REQUIRED IT AND WHEN THE LABELS WITHDREW THAT

9      REQUIREMENT, APPLE WAS VERY QUICK TO STOP USING DRM

10     IN ITS MUSIC STORE.

11            SO THAT RELIEF, THE RELIEF IT WAS SEEKING

12     WAS LITERALLY MOOT AND THAT'S WHY YOU INVITED APPLE

13     TO DECERTIFY THE (B)(2) CLASS.

14            NOW, IN RESPONSE TO THAT ONE, THEY

15     QUESTION WHETHER APPLE REALLY IS INTENT ON NOT

16     USING DRM IN THE FUTURE.

17            WE HAVE SUBMITTED A DECLARATION FROM

18     EDDIE CUE, WHO IS THE HEAD OF THE MUSIC STORE, WHO

19     HAS SAID -- AND THIS IS DOCUMENT 256, MR. CUE,

20     WHICH IS C-U-E -- HAS SAID, "WELL BEFORE THE LABELS

21     AGREED TO DO SO APPLE PUBLICALLY EXPRESSED ITS

22     DESIRE TO SELL DRM FREE MUSIC.

23            "NOW THAT THE LABELS HAVE AGREED THAT

24     APPLE MAY SELL MUSIC THEY PROVIDE TO APPLE WITHOUT

25     USE OF DRM, APPLE SELLS ONLY DRM FREE MUSIC.

22

1            "APPLE IS NOT AWARE THAT THE RECORD

2    LABELS HAVE ANY PLAN TO REINSTITUTE A DRM

3    REQUIREMENT AND APPLE HAS NO INTENTION OF OPERATING

4    A MUSIC STORE THAT SELLS DRM MUSIC IN THE FUTURE."

5            THAT'S MR. CUE'S DECLARATION.  THAT MOOTS

6    THIS ISSUE.  IT MAKES NO SENSE FOR THE PLAINTIFFS

7    TO, TO BRING THIS CASE AND PURSUE A CLASS TO ESTOP

8    APPLE FROM DOING SOMETHING THAT IT NEVER WANTED TO

9    DO IN THE FIRST PLACE AND THAT IT STOPPED DOING AS

10   SOON AS ITS CONTRACTS WITH THE RECORD LABELS WOULD

11   PERMIT.

12           THE COURT:  LET ME -- THIS IS PERHAPS

13   BEYOND THE MOTION, BUT DO I UNDERSTAND THAT

14   ALTHOUGH THE MUSIC IS DRM FREE, IS IT

15   INTEROPERABILITY LIMITED FREE?

16           IN OTHER WORDS, CAN YOU NOW DOWNLOAD

17   MUSIC FROM THE STORE AND PLAY IT DIRECTLY ON TO A

18   PLAYER OTHER THAN AN IPOD?

19           MR. MITTELSTAEDT:  YES.

20           THE COURT:  SO THAT THAT INTEROPERABILITY

21   LIMITATION HAS ALSO BEEN REMOVED?

22           MR. MITTELSTAEDT:  YES.  IN RESPONSE TO

23   THAT, I THINK THAT THE PLAINTIFFS HAVE TO ADMIT

24   THAT THAT MAIN RELIEF THAT THEY WERE SEEKING AND

25   THE RELIEF ON WHICH YOUR HONOR CERTIFIED THE (B)(2)

                                                      23

1    CLASS IN THE FIRST PLACE IS MOOT.

2            SO THEIR FALLBACK POSITION IS, WELL,

3    THERE'S ALL THAT MUSIC OUT THERE THAT PEOPLE BOUGHT

4    BEFORE THAT STILL HAS DRM ON IT.

5            SO IT'S ON THAT BASIS THAT THEY WANT TO

6    CERTIFY THIS CLASS AND THEY WANT TO BROADEN THE

7    CLASS.

8            THE COURT:  WHAT IS WRONG WITH THAT?

9            MR. MITTELSTAEDT:  SEVERAL THINGS.  THE

10   MAIN ONES ARE THIS:  AS YOUR HONOR NOTED, TO HAVE

11   AN IPOD CLASS WHERE THE INJUNCTIVE RELIEF RELATES

12   TO WHAT IS GOING ON WITH THE MUSIC LOOKS LIKE IT'S

13   A DISCONNECT.

14           AND THE PLAINTIFFS HAVE NEVER ANSWERED, I

15   DON'T THINK SATISFACTORILY, YOUR HONOR'S QUESTION

16   ABOUT HOW YOU CONNECT THAT KIND OF RELIEF REMOVING

17   THE DRM WITH THE IPOD CLASS.

18           WHAT THEY DID INSTEAD WAS SAY, WELL,

19   WE'LL BROADEN THE CLASS.  WE'LL ADD NEW PEOPLE.

20   WE'LL ADD ITUNES MUSIC PURCHASERS WHO DON'T HAVE

21   IPODS.

22           THAT DOESN'T SOLVE THE PROBLEM THAT THEY

23   HAVE WITH RESPECT TO THE IPOD PURCHASERS AND IT

24   JUST CREATES MORE PROBLEMS FOR THE MUSIC

25   PURCHASERS.

24

1                    AND LET ME EXPLAIN WHY.

2                    WHAT THEY HAVE TO SHOW IS THAT -- WELL,

3        LET ME START WITH, WITH THE PRACTICAL ISSUE.

4                    THEY SAY THAT IT'S A COSTLESS AND

5        EFFORTLESS FOR APPLE TO REMOVE DRM FROM ALL OF

6        THESE SONGS THAT HAVE BEEN PREVIOUSLY DOWNLOADED.

7                    WE HAVE SUBMITTED ANOTHER DECLARATION

8        FROM MR. CUE, THIS ONE AUGUST 31, 2009 WHERE HE

9        DESCRIBES THE TECHNICAL REASON WHY THAT IS NOT

10       TRUE.

11                   AND WHAT HE EXPLAINS IS THAT, AND I'M

12       GOING TO QUOTE THIS, "WHEN A CUSTOMER BUYS DRM FREE

13       VERSIONS OF PREVIOUSLY PURCHASED MUSIC, APPLE DOES

14       NOT SIMPLY," QUOTE, "'REMOVE' THE DRM FROM THE

15       PREVIOUSLY PURCHASED FILES."

16                   MR. CUE GOES ON TO EXPLAIN THAT WHAT

17       APPLE DOES INSTEAD IS PROVIDE A NEW FILE OF HIGHER

18       AUDIO QUALITY WHICH IS THEN DOWNLOADED BY THE

19       CUSTOMER.

20                   AND THE RECORD LABELS UNDER THE CONTRACT

21       WITH APPLE TREAT EACH OF THESE NEW DOWNLOADS AS A

22       NEW TRANSACTION.

23                   AND SO TO PROVIDE CUSTOMERS WITH DRM FREE

24       VERSIONS OF MUSIC THEY PREVIOUSLY BOUGHT, APPLE IS

25       REQUIRED TO PAY THE LABELS A CERTAIN AMOUNT PER

                                                            25

1    DOWNLOAD, AND THAT AMOUNT IS IN THE RECORD UNDER

2    SEAL, AND APPLE ALSO INCURS CREDIT CARD FEES AND

3    LICENSING UPGRADES AND SO FORTH.

4            SO FOR STARTERS, THIS IDEA THAT APPLE CAN

5    MAGICALLY REMOVE DRM IS NOT TRUE.  IT'S A SEPARATE

6    TRANSACTION THAT COSTS APPLE MONEY, AND THAT'S WHY

7    APPLE CHARGES CUSTOMERS.

8            THE COURT:  AND IF YOU'RE ABLE TO GET

9    OVER THE PLAINTIFF'S COMPLAINT ABOUT IMPOSING IT IN

10   THE FIRST PLACE, THEN THAT WOULD BE LEGITIMATE.  IF

11   YOU'RE NOT, THEN THAT IS -- THAT'S A REMEDY.

12           MR. MITTELSTAEDT:  WELL, LET'S GET TO

13   THAT POINT.  IS IT A REMEDY AND FOR WHOM?

14           THERE ARE MANY ITUNES MUSIC PURCHASERS

15   WHO AS FAR AS THIS RECORD SHOWS, YOUR HONOR, AND AS

16   FAR AS COMMON SENSE TAKES US, ARE PERFECTLY

17   CONTENT.

18           THEY BOUGHT THEIR MUSIC.  THEY KNEW ABOUT

19   THE LIMITATIONS, AND THEY PAID 99 CENTS FOR THE

20   SONG.

21           AND NOW THEY'RE PLAYING THAT MUSIC ON

22   THEIR HOME COMPUTERS, YOU KNOW, THROUGH HEADPHONES,

23   OR THEY HAVE BURNED THAT MUSIC TO CD'S AND THEY'RE

24   USING CD'S JUST LIKE THEY WOULD USE CD'S BOUGHT AT

25   A STORE, MEANING THAT THEY PLAY THEM ON A CAR

26

1   STEREO OR THEIR HOME STEREO.

2           OR THEY, AFTER BURNING, THEY RIPPED IT

3   BACK TO THEIR COMPUTER AND NOW THEY'RE PLAYING IT

4   ON IPOD COMPETITORS BECAUSE THE PROCESS OF BURNING

5   DESTROYS THE DRM.

6           OR ITUNES PURCHASERS, IF THEY HAVE BOUGHT

7   MUSIC SINCE EARLY 2007 AND THEY BOUGHT EMI, ONE OF

8   THE LABEL'S MUSIC, THAT WAS ALL DRM FREE FROM EARLY

9   2007.

10          SO THERE ARE A LOT OF MUSIC PURCHASERS

11  OUT THERE WHO ARE NOT HARMED IN THE SLIGHTEST BY

12  PLAINTIFF'S THEORY OF LACK OF INTEROPERABILITY.

13          THE CLASS THAT THEY WANT YOUR HONOR TO

14  ADD, ITUNES MUSIC PURCHASERS, THEY HAVE GOT TO SHOW

15  A COUPLE OF THINGS.  ONE, THEY HAVE TO SHOW THAT

16  IT'S THE PRIMARY RELIEF THAT THEY'RE SEEKING FOR

17  THESE PEOPLE.

18          IN ORDER TO CERTIFY A (B)(2) CLASS THE

19  PLAINTIFFS HAVE TO SHOW THE INJUNCTIVE RELIEF IS

20  THE PREDOMINANT RELIEF THAT THEY'RE SEEKING.

21          BUT IF PROVIDING DRM FREE MUSIC TO THESE

22  PEOPLE WOULD NOT GIVE THEM ANY BENEFIT, IT'S PEOPLE

23  WHO ARE PERFECTLY HAPPY, MAYBE PEOPLE WHO DON'T

24  EVEN KNOW THERE IS DRM ON THEIR MUSIC.

25          IF THOSE PEOPLE WOULDN'T BE BENEFITTED BY

27

1    GIVING THEM THIS FREE UPGRADE, IT'S IMPOSSIBLE FOR

2    THE PLAINTIFFS TO SAY THAT THIS RELIEF THAT THEY'RE

3    SEEKING ON BEHALF OF ALL OF THESE PEOPLE IS THE

4    PRIMARY -- THE PREDOMINANT REASON FOR THIS CASE.

5            IT WOULD BE GIVING RELIEF TO PEOPLE WHO

6    DON'T NEED IT, WHO WOULDN'T BENEFIT FROM IT, WHO

7    WOULDN'T DO ANYTHING WITH IT IF THEY GOT IT.

8            AT THE SAME TIME, YOUR HONOR, IT WOULD

9    IMPOSE AN ENORMOUS COST ON APPLE.  THE RECORD SHOWS

10   THE AMOUNT THAT APPLE PAYS TO THE LABELS PER

11   UPGRADE PER NEW FILE AND YOU MULTIPLY THAT TIMES

12   THE FOUR BILLION SONGS THAT APPLE HAS SOLD AND IT'S

13   AN ENORMOUS AMOUNT OF MONEY, AN ENORMOUS AMOUNT OF

14   MONEY THAT WOULD NOT BENEFIT, MOST, IF ANY OF THE

15   PEOPLE THAT THEY ALLEGE AS THE CLASS.

16           SO THAT APPLIES BOTH TO THE IPOD

17   PURCHASERS AND IT APPLIES TO THIS, THIS NEW GROUP.

18   IT JUST WOULDN'T BENEFIT THE IPOD CLASS IN A

19   DIFFERENT WAY.  THE IPOD CLASS ALREADY HAS THEIR

20   IPODS BY DEFINITION.

21           AND SO NOW GOING TO THOSE IPOD PURCHASERS

22   AND SAYING, HERE, WE'RE GOING TO GIVE YOU DRM FREE

23   MUSIC FOR FREE, THERE'S NO SHOWING IN THE RECORD

24   THAT THAT WOULD BENEFIT A SUBSTANTIAL PORTION OF

25   THE CLASS OR BENEFIT ANYBODY.

28

1          THE COURT:  YOU'RE -- I DO REALIZE THAT

2    GIVEN THE COMPLEXITY OF THIS THE TIME THAT I HAVE

3    ALLOWED IS NOT GOING TO BE SUFFICIENT TO HANDLE

4    EVERYTHING.

5          SO LET ME TURN TO YOUR OPPONENT.

6          IT DOES SEEM TO ME THAT ONE POSSIBILITY

7    THAT SHOULD BE BEFORE THE COURT AND IT'S THE ONE

8    THAT I RAISED AND THAT IS TAKE NO ACTION WITH

9    RESPECT TO MODIFYING THE CLASSES UNTIL THE COURT

10   HAS DEFINITIVELY RULED WITH RESPECT TO WHETHER OR

11   NOT GIVEN THE COURT'S RULINGS ON THIS TYING CLAIM

12   THERE IS A VIABLE SECTION 2 CLAIM THAT CAN BE

13   STATED.  AND THAT I HAVE NOT GIVEN SEPARATE

14   CONSIDERATION TO BECAUSE THAT WILL AFFECT THE

15   QUESTIONS BEFORE THE COURT.

16         NOW, I DON'T EXPECT YOU TO BE IN A

17   POSITION TO RESPOND TO THE MERITS OF THAT, BUT WHY

18   DOESN'T THAT MAKE SENSE?

19         MR. MERRICK:  WELL, I CAN RESPOND TO THE

20   MERITS A LITTLE BIT.  ONE IS THAT IT IS NOT UNUSUAL

21   FOR A COURT TO FIND THAT THERE IS NO TYING CLAIM

22   AND YET FIND THAT THERE IS A MONOPOLIZATION CLAIM

23   BASED ON SOME OF THE SAME FACTUAL ARGUMENTS THAT

24   PLAINTIFFS HAVE SAID WOULD SUPPORT A TYING CLAIM.

25         A GOOD EXAMPLE OF THAT MOST RECENTLY IS,

29

1    AND IT'S IN THE PAPERS, THE <u>TELLIS ATLAS</u> CASE WHICH

2    IS 2008 WESTLAW 44911230 NORTHERN DISTRICT FROM

3    NOVEMBER OF LAST YEAR.

4            AND THERE THE DEFENDANTS SUCCESSFULLY

5    MOVED FOR SUMMARY JUDGMENT ON THE TYING CLAIM, AND

6    IT WAS GRANTED.

7            THE PLAINTIFFS -- THEN THEY SAID THAT THE

8    PLAINTIFFS WERE PRECLUDED FROM BRINGING EVIDENCE

9    THAT WOULD HAVE SUPPORTED THE TYING CLAIM IN

10   SUPPORT OF THEIR MONOPOLIZATION CLAIM.

11           THE COURT SAID, NO, THAT ISN'T THE WAY

12   THAT IT WORKS.  QUOTE, THIS IS FROM STAR PAGE 2,

13   "TELLIS ATLAS'S FAILURE TO PROVE THAT NAVTEQ,"

14   WHICH IS N-A-V-T-E-Q, "ALLEGED TYING CONDUCT WAS

15   UNLAWFUL, DOES NOT AUTOMATICALLY REQUIRE THAT SUCH

16   CONDUCT BE REMOVED FROM THE SCOPE OF THE SECTION 2

17   INQUIRY."

18           I DON'T THINK THE COURT HAS RULED

19   DEFINITIVELY THAT APPLE HAS BEEN GUILTY OF NO

20   ANTICOMPETITIVE CONDUCT.  THAT ISSUE WASN'T BEFORE

21   THE COURT.

22           THE COURT'S RULING ON THE TYING CLAIM WAS

23   BASED ON THE NATURE OF A SECTION 1 CLAIM WHICH IS

24   NOT THE SAME AS A SECTION 2 CLAIM.

25           THE COURT:  WHAT I HEAR YOU SAYING IS

30

1    THAT ULTIMATELY I WOULD FIND IN YOUR FAVOR ON IT.

2    THE QUESTION THAT I ASKED IS WHY SHOULDN'T I DO

3    THAT FIRST BEFORE MODIFYING THE CLASS DEFINITION

4    BECAUSE IT WOULD PROVIDE ME WITH AN OPPORTUNITY TO

5    HAVE THE PLAINTIFF ARTICULATE ITS REMAINING CLAIM

6    DEVOID OF THE TYING CLAIM BECAUSE MOST OF WHAT

7    HAPPENS IN THIS COMPLAINT IS IT IS ALLEGED IN GREAT

8    DETAIL AS A TYING CLAIM AND THEN ALL OF THAT IS

9    INCORPORATED BY REFERENCE INTO A VERY SHORT

10   STATEMENT OF THE SECTION 2 CLAIM.

11            SO IT'S -- IT REALLY CHALLENGES THE

12   COURT, AS I HAVE STARTED OUT TO START TO UNDERSTAND

13   A LITTLE BIT ABOUT THE PLAINTIFF'S CASE, AND I

14   HAVEN'T WORKED MY WAY THROUGH IT YET.

15            MR. MERRICK:  I DO BELIEVE, YOUR HONOR --

16   I'M SORRY.

17            THE COURT:  THIS MOTION DOES ASK ME TO

18   ARTICULATE THE CLASS IN A WAY THAT, FIRST OF ALL, I

19   WOULD HAVE TO MAKE SURE THAT THE TIME LIMITATIONS

20   INVOLVED IN ALL OF THESE CHANGES ARE RESPECTED, IF

21   INDEED THESE CHANGES ARE.

22            DO YOU AGREE THAT THE DRM -- FREEDOM FROM

23   DRM, THE APPLE DRM HAS ALSO ELIMINATED THE

24   INTEROPERABILITY CLAIM?

25            MR. MERRICK:  AS FAR AS I AM AWARE.  I'M

31

1    NOT FAMILIAR ENOUGH WITH THE TECHNOLOGY BEHIND IT

2    TO GIVE A DEFINITIVE ANSWER, BUT I DO BELIEVE THAT

3    THEY ARE ALL INTEROPERABLE, YES.

4              THE COURT:  ALL RIGHT.  AND PART OF THE

5    CERTIFICATION AND DEFINITION OF A NEW CLASS HAS TO

6    BE WHAT RELIEF IS -- DO YOU STILL HAVE A (B)(3)

7    CLASS HERE AS WELL AS A (B)(2) CLASS?

8              MR. MERRICK:  YES.

9              THE COURT:  UNDERSTANDING THAT

10   RELATIONSHIP IS IMPORTANT.  I KNOW I HAVEN'T GOTTEN

11   TO THE INDIRECT PURCHASERS WHO ALSO HAVE A CLAIM,

12   AND I DO WANT TO RESERVE SOME TIME TO HEAR FROM

13   THEM AS WELL.

14             BUT TALK ME OUT OF WAITING.

15             MR. MERRICK:  WELL, I DON'T THINK THERE'S

16   ANY REASON TO.

17             AS THE COURT IN DECEMBER IN GRANTING THE

18   (B)(2) CLASS IN THE FIRST PLACE NOTED, AND IT'S

19   DOCUMENT 196, "PLAINTIFFS SEEK TO ENJOIN DEFENDANT

20   FROM MAINTAINING ITS RESTRICTIVE TECHNOLOGY

21   PRACTICES IN THE FUTURE," WHICH I GUESS YOU COULD

22   SAY MAYBE HAS RESOLVED, ASSUMING THAT WE CAN TAKE

23   MR. CUE AT HIS WORD.  BUT WE DON'T HAVE ANY

24   DISCOVERY ON ANY OF THAT INFORMATION, BUT -- "AND

25   SEEK TO COMPEL DEFENDANT TO," QUOTE-UNQUOTE,

32

1    "UNLOCK MEDIA ALREADY PURCHASED FROM ITMS SO IT MAY

2    BE PLAYED ON NON-IPOD DIGITAL MEDIA PLAYERS."

3              THAT HAS NOT OCCURRED ON A BACKWARDS

4    LOOKING BASIS, AND WE'RE TALKING ABOUT, AGAIN, IT'S

5    NOT AN INCONSIDERABLE BURDEN.  WE'RE TALKING ABOUT

6    FIVE BILLION SONGS.  APPLE IS THE 800 POUND GORILLA

7    IN THE SONG DOWNLOAD MARKET.

8              THE COURT:  BUT YOU AGREE HERE THAT THE

9    BURDEN WOULD ONLY BE IMPOSED ON APPLE WITH RESPECT

10   TO THOSE CONSUMERS WHO WOULD HAVE A NON-IPOD PLAYER

11   AND WOULD WISH TO RECONFIGURE THE MUSIC SO IT COULD

12   PLAY ON THOSE?

13             MR. MERRICK:  I WOULDN'T AGREE WITH THAT.

14             I -- WE -- OBVIOUSLY IT'S A FACT BASED

15   ANALYSIS AS TO INJURY, BUT THE POINT WE'RE MAKING

16   IS THAT THE FACT THAT THERE ARE FIVE BILLION LOCKED

17   SONGS STILL OUT THERE IS IN AND OF ITSELF IS A FORM

18   OF INJURY.

19             THE COURT:  WHY, WHY IF IT'S -- WHY IS IT

20   A FORM OF INJURY IF YOU HAVE AN IPOD?

21             MR. MERRICK:  WELL, SOMEBODY IS GOING TO

22   EVENTUALLY HAVE TO MAKE A DECISION AS TO BUYING A

23   NEW MUSIC PLAYER.  THESE THINGS DO NOT LAST

24   FOREVER.  TECHNOLOGY IMPROVES WITH CHANGES.

25             AT SOME POINT SOMEBODY IS GOING TO HAVE

33

1    TO DEAL WITH MAKING A DECISION.  IF THAT DECISION

2    IS IN ANY WAY WHATSOEVER INFLUENCED BY THE FACT

3    THAT THEY HAVE BLOCKED SONGS ON THEIR IPOD THAT IS

4    STILL AN ANTICOMPETITIVE -- OR AN ANTITRUST INJURY.

5            AS FAR AS THE COST TO APPLE, THE ISSUE

6    HERE FOR CLASS CERTIFICATION PURPOSES FOR THE

7    (B)(2) CLASS IS WHETHER OR NOT THAT TRANSLATES ITS

8    CLAIM INTO DAMAGES.  AND IT DOESN'T.

9            THE FACT THAT APPLE MAY HAVE TO PAY A

10   LICENSING FEE TO A THIRD PARTY DOESN'T MAKE THE

11   COST OF THEM COMPLYING WITH AN INJUNCTIVE -- WITH

12   THE EQUITABLE RELIEF DAMAGES TO THE CLASS.  THERE'S

13   A DISCONNECT FUNDAMENTALLY THERE.

14           AND AS FAR AS HOW MUCH MONEY IT WOULD

15   COST APPLE, IT WOULD BE VERY EXPENSIVE.  IT'S VERY

16   EXPENSIVE BECAUSE APPLE AGAIN IS THE 800 POUND

17   GORILLA.

18           THERE'S THE DUKES VERSUS WALMART CASE

19   THAT IS CITED IN THE MATERIALS THAT WHERE THEY

20   TALKED ABOUT WHAT AN ENORMOUS AMOUNT OF MONEY IT

21   WAS GOING TO COST WALMART.

22           WELL, THAT'S ENTIRELY BASED BECAUSE

23   WALMART IS THE 800 POUND GORILLA RETAILER.  AND IT

24   WOULD COST APPLE BECAUSE APPLE IS THE 800 POUND

25   GORILLA IN THE MUSIC DOWNLOAD SALES.

                                                34

1           THE COURT:  YOU KNOW, THE ONE PROBLEM I

2    HAVE AS I KEEP GOING BACK AND FORTH IN MY MIND AS

3    TO WHETHER OR NOT THIS IS A CONSUMER LEGAL REMEDIES

4    CASE OR ANTITRUST CASE I HAVE TO PAY ATTENTION TO

5    WHAT IS IT THAT IS GOING ON HERE.  THE HARM HAS TO

6    BE TO COMPETITION, THOSE WHO WOULD BE IN THE

7    BUSINESS OF MAKING PLAYERS AND MUSIC I GUESS.

8           AND THE CONSUMERS, I GUESS, WOULD BENEFIT

9    FROM THIS REMEDY, BUT I'D HAVE TO COME UP WITH A

10   REMEDY THAT SPEAKS TO THE WORLD OF COMPETITION AS

11   OPPOSED TO THE WORLD OF ULTIMATE CONSUMERS, DON'T

12   I?

13           MR. MERRICK:  YES, AND THAT'S WHAT WE'RE

14   SAYING.  THAT'S WHY UNLOCKING THE FILES IS STILL

15   IMPORTANT TO THE COMPETITIVE MARKET BECAUSE OF THE

16   FIVE BILLION SONG BACKLOG OF ANTICOMPETITIVE

17   BEHAVIOR.

18           THE COURT:  THANK YOU.

19           BEFORE I GO BACK OVER HERE I WANTED TO

20   GIVE THE INDIRECT PURCHASER COUNSEL AN OPPORTUNITY

21   TO SPEAK, AND I'LL LET YOU RESPOND TO THAT.

22           MS. ZELDES:  THANK YOU, YOUR HONOR.

23   HELEN ZELDES AGAIN FOR THE SOMERS CLASS.

24           RESPONDING TO THE COURT'S REQUEST FOR

25   CLARIFICATION OF HOW THE CASES OVERLAP AND HOW OUR

35

1    CLAIMS ARE TIED TO THE RELIEF REQUESTED, THE

2    INDIRECT PURCHASERS AND THE DIRECT PURCHASERS

3    INJUNCTIVE RELIEF CLASSES OVERLAP ALMOST

4    COMPLETELY.

5             YOU ASKED US TO CLARIFY THAT, AND WE BOTH

6    SEEK TO HAVE THE RESTRICTIONS REMOVED FROM THE ITMS

7    FILES.

8             HOWEVER, THE INDIRECT PURCHASERS CLASS IS

9    BROADER.  WE SEEK TO REPRESENT FOLKS WHO HAVE ALSO

10   PAID, ALREADY PAID TO CONVERT THEIR MUSIC TO DRM

11   FREE FILES.  THEY HAVE ALREADY PAID THIS 30 PERCENT

12   CONVERSION FEE AND SO THAT'S HOW OUR CLASSES ARE

13   DIFFERENT.

14            THE COURT:  AND THE DIRECT PURCHASER

15   CLASS WOULD NOT INCLUDE THOSE?

16            MS. ZELDES:  THEY HAVE NOT INCLUDED THOSE

17   PEOPLE, THAT'S CORRECT, YOUR HONOR.

18            THEY INCLUDE PEOPLE WHO ALREADY HAVE A

19   LIBRARY, AND THEY'RE ASKING LIKE WE ARE, APPLE TO

20   CONVERT THOSE FILES FOR FREE AT NO COST TO THE

21   CONSUMER, BUT THERE'S A GROUP OF PEOPLE, A

22   SUBSTANTIAL GROUP OF FOLKS WHO HAVE ALREADY PAID

23   THIS HEFTY 30 PERCENT CONVERSION CHARGE AND WE'RE

24   SAYING UNDER OUR (B)(2) CLASS WE WOULD BE ENTITLED

25   TO DISGORGEMENT OF THAT 30 PERCENT FEE.

36

1          THE COURT:  WELL, YOU SEE, I'M CONFUSED

2    BECAUSE I DID NOT UNDERSTAND THE INDIRECT

3    PURCHASERS TO HAVE ANYTHING TO DO WITH ITUNES AS

4    MUCH AS INDIRECT PURCHASERS OF THE PLAYER, THE

5    IPOD.

6          BECAUSE THERE IS NO SUCH THING AS

7    INDIRECT PURCHASERS OF ITUNES.

8          MS. ZELDES:  YOU'RE CORRECT, YOUR HONOR.

9          THE COURT:  SO WHY WOULDN'T I FIND THAT

10   IF I'M GOING TO ADD ITUNES PURCHASERS TO THE CLASS,

11   THAT THAT WOULD -- THERE WOULD BE A DUPLICATION

12   BETWEEN THE INDIRECT PURCHASER CLASS AND THE DIRECT

13   PURCHASER'S CLASS?

14         MS. ZELDES:  THAT IS CORRECT, THE CLASSES

15   OVERLAP TO THE EXTENT THAT WE'RE BOTH SEEKING THE

16   FIRST TWO PRONGS OF THE INJUNCTIVE RELIEF WHICH IS

17   TO REMOVE THE DRM GOING FORWARD ON CONSUMER'S FILES

18   AND TO CONVERT THE FILES THAT THE FOLKS ALREADY

19   HAVE, BUT THERE'S A GROUP OF FOLKS THAT ARE NOT

20   REPRESENTED.

21         AND YOU'RE RIGHT, FOR INJUNCTIVE RELIEF

22   THERE IS NO DIFFERENCE.  EVERYBODY BUYS THE MUSIC

23   DIRECTLY FROM APPLE.

24         SO WE'RE NOT INDIRECT PURCHASERS FOR THE

25   PURPOSES OF THAT PART OF THE INDIRECT -- THE

37

1    INJUNCTIVE RELIEF CLASS.

2              BUT THERE'S NOBODY SEEKING THAT RELIEF.

3    SO THE FOLKS WHO HAVE ALREADY PAID THAT 30 PERCENT,

4    WHICH IS A SUBSTANTIAL CONVERSION FEE.  THAT'S NOT

5    AN INSUBSTANTIAL RESTRAINT.  THERE'S NO RELIEF

6    BEING SOUGHT.  SO THAT IS A CLASS THAT IS DIFFERENT

7    FROM THE, QUOTE-UNQUOTE, "DIRECT PURCHASERS."

8              AND APPLE'S MAIN BEEF WITH THAT IS THAT

9    YOU CAN'T ASK FOR DISGORGEMENT TO GET A (B)(2)

10   CLASS.  THEY'RE EITHER SAYING THE MONETARY RELIEF

11   PREDOMINATES OR YOU CAN'T GET IT.  AND THAT'S NOT

12   THE STANDARD.

13             THE STANDARD IS IF IT'S INCIDENTAL TO THE

14   INJUNCTIVE RELIEF, YOU CAN HAVE MONETARY DAMAGES AS

15   PART OF A (B)(2) CLASS AND THE NINTH CIRCUIT IS

16   CLEAR ON THAT THAT EVEN IN CASES WHERE THE

17   PLAINTIFFS HAVE SOUGHT THINGS LIKE BACKPAY IN AN

18   EMPLOYMENT DISCRIMINATION CASE, THE COURT HAS

19   AWARDED OR CERTIFIED A (B)(2) CLASS.

20             SIMILARLY PARTICULARLY IN PROBE VERSUS

21   STATE TEACHERS' RETIREMENT SYSTEM, THERE WAS A

22   GENDER BASED MORTALITY TABLES BEING USED AND THE

23   PLAINTIFFS SOUGHT MONETARY DAMAGES THERE AND THE

24   NINTH CIRCUIT AGAIN CERTIFIED A (B)(2) CLASS

25   BECAUSE THEY FOUND THAT THE INJUNCTIVE RELIEF WAS

38

1    THE PRIMARY RELIEF SOUGHT.

2              AND HERE THE MONETARY RELIEF IS CLEARLY A

3    SUBSET OF THE OVERALL INJUNCTIVE RELIEF THAT BOTH

4    PARTIES ARE SEEKING AND BOTH PARTIES ARE SEEKING.

5              THE COURT:  SO YOUR CLASS WOULD BE A

6    (B)(3) CLASS FOR THE MONETARY RELIEF OF THE PAST

7    BECAUSE IT WOULD START TO OVERLAP WITH THE (B)(2)

8    CLASS OF THE DIRECT PURCHASERS WITH RESPECT TO THE

9    FUTURE?

10             MS. ZELDES:  IT COULD BE EITHER A (B)(2)

11   OR (B)(3).

12             IT COULD BE A SEPARATE DAMAGES CLASS IF

13   YOUR HONOR WANTED TO CERTIFY THAT, OR IT COULD ALSO

14   BE A PART OF A (B)(2) CLASS.

15             THE INJUNCTIVE RELIEF IS REMOVING THE DRM

16   FROM ALL OF THE FILES.  THIS IS A SMALL SUBSET OF

17   ALL OF THE FIVE BILLION FILES OUT THERE.  THIS IS

18   SOMEBODY WHO ALREADY PAID APPLE TO CONVERT THEM.

19   SO IT IS A SUBSET.

20             IT IS INCIDENTAL TO -- FLOWS FROM THE

21   INJUNCTIVE RELIEF.  AS SUCH YOU COULD CERTIFY IT

22   UNDER (B)(2), IN THE ALTERNATIVE, YES, YOU COULD

23   CERTIFY.

24             THE COURT:  WHAT IS THIS SYNCING ISSUE?

25             MS. ZELDES:  WELL, YOU KNOW, THEY WERE

                                                      39

1    TALKING ABOUT THERE'S NO INTEROPERABILITY ISSUES

2    ANYMORE.  THERE WAS AN ISSUE THIS LAST YEAR THAT

3    APPLE ACTUALLY TOOK NO AFFIRMATIVE ACTION FROM PALM

4    3, FOR EXAMPLE, FROM SYNCING WITH THE ITUNES I WANT

5    TO SAY LIBRARY, AND SO THAT'S WHAT THAT ISSUE IS.

6            THAT'S NOT A PRIMARY PART OF THE

7    INJUNCTIVE RELIEF WE'RE SEEKING, BUT IT GOES TO THE

8    ANTICOMPETITIVE PRODUCT THAT APPLE IS TAKING

9    AFFIRMATIVE STEPS TO STOP OTHER PLAYERS THAT COULD

10   OTHERWISE SYNC UP WITH THEIR PLAYER.

11           THE COURT:  THANK YOU.

12           FINAL WORDS.

13           MR. MITTELSTAEDT:  YOUR HONOR, IN

14   DOCUMENT 86 IN THE SOMERS CASE WE RESPOND TO THEIR

15   ARGUMENT TO SAY IT IN A WORD.

16           WHEN THEY'RE ASKING FOR REIMBURSEMENT OF

17   THE 30 CENTS THAT CONSUMERS PAID TO GET DRM FREE

18   MUSIC, COPIES OF THE MUSIC THAT THEY HAD PREVIOUSLY

19   DOWNLOADED, THAT IS NOT INCIDENTAL RELIEF THAT

20   FLOWS FROM THE INJUNCTIVE RELIEF THAT THEY'RE

21   SEEKING.  THAT IS THE RELIEF THAT THEY'RE SEEKING.

22           AND AS YOUR HONOR POINTED OUT, THAT'S

23   DAMAGES.  IT'S NOT INJUNCTIVE RELIEF.  CALLING IT

24   DISGORGEMENT DOESN'T CHANGE IT FROM DAMAGES TO

25   INJUNCTIVE RELIEF.

                                                    40

1           THE INDIRECT PLAINTIFFS HAD BEEN DENIED

2      (B)(3) CLASS.  THEY DIDN'T MAKE THIS ARGUMENT.

3      IT'S NOT A GOOD ARGUMENT, BUT IF THEY WANT TO MAKE

4      THAT ARGUMENT, THEY SHOULD MAKE IT SO WE CAN

5      RESPOND TO IT.

6           THE THING THAT SHE MENTIONED AT THE END

7      HAS NOTHING TO DO WITH DRM.  IT IS UNRELATED TO

8      THIS CASE.  IT'S NOT ALLEGED IN THE COMPLAINT.

9      THEY HAVEN'T SOUGHT TO AMEND THE COMPLAINT TO

10     ALLEGE IT, AND IT HAS NOTHING TO DO WITH DRM.

11          THEY STILL HAVE NOT SAID, YOUR HONOR, AND

12     THIS IS THE KEY POINT, HOW EITHER THE EXISTING IPOD

13     CLASS OR A NEW CLASS OF PEOPLE WHO DON'T HAVE IPODS

14     WOULD BENEFIT FROM GETTING FREE DRM FREE MUSIC.

15          THEY KEEP SAYING, WELL, IT WOULD UNLOCK,

16     IT WOULD UNLOCK, IT WOULD UNLOCK, BUT THEY DON'T

17     SAY HOW THAT WOULD BENEFIT THE VAST MAJORITY OF

18     PEOPLE WHO, AS I SAY, ARE PERFECTLY CONTENT HAVING

19     APPLE MUSIC THAT THEY BOUGHT FOR 99 CENTS KNOWING

20     HOW IT COULD BE USED AND PEOPLE WHO WERE PERFECTLY

21     HAPPY USING THAT.

22          THEY STILL HAVEN'T IDENTIFIED ANY BENEFIT

23     EXCEPT FOR ONE THING, THEY SAY, HOW ABOUT IF

24     SOMEBODY WHO HAS AN IPOD WHO MIGHT WANT TO BUY AN

25     IPOD IN THE FUTURE?

                                                      41

1              WELL, NUMBER ONE, THE CLASS THEY WANT TO

2     REPRESENT IS MUCH BROADER THAN THAT.  THEY HAVE NOT

3     LIMITED IT.

4              THE COURT:  I THOUGHT IT WAS THOSE WHO

5     HAD ITUNES WHO WISHED TO BUY A DIFFERENT PLAYER IN

6     THE FUTURE EVEN IF THEY HAD AN IPOD NOW.

7              MR. MITTELSTAEDT:  YES, BUT AS TO THOSE

8     PEOPLE, THAT -- IF THERE IS ANYBODY LIKE THAT, IT'S

9     ONLY A VERY SMALL PORTION OF THEIR PROPOSED CLASSES

10    WHICH CONSIST OF ALL IPOD OWNERS AND ALL ITUNES

11    MUSIC OWNERS.

12             AND SO POINT NUMBER ONE IS IT'S REALLY

13    OVERBROAD.  THE CLASS THAT THEY'RE ASKING IS REALLY

14    OVERBROAD COMPARED TO THE VERY SMALL BENEFIT THAT

15    THEY HAVE THEORETICALLY IDENTIFIED.

16             NUMBER TWO, IF THEY SAY, OKAY, WELL, JUST

17    GIVE FREE UPGRADES TO THE PEOPLE WHO WANT TO

18    REPLACE THEIR IPOD WITH A COMPETITOR, HOW ARE THEY

19    EVER GOING TO IDENTIFY THOSE PEOPLE?  THAT'S A VERY

20    SUBJECTIVE INDIVIDUALISTIC KIND OF ANALYSIS.

21             AND IT DOES NOT WARRANT EITHER CERTIFYING

22    A CLASS, LET ALONE GIVING FREE UPGRADES TO

23    EVERYBODY WHO HAS AN IPOD WHO EVER BOUGHT ANY

24    MUSIC.

25             AND THAT'S IMPORTANT FOR TWO REASONS, ONE

                                                      42

1    IS BASED ON THE CASES WE HAVE CITED.  THEY HAVE TO

2    SHOW THAT THE INJUNCTIVE RELIEF THAT THEY'RE

3    SEEKING WOULD SUBSTANTIALLY BENEFIT OR WOULD

4    BENEFIT SUBSTANTIALLY ALL OF THE CLASS AND THEY

5    HAVEN'T BEEN ABLE TO SHOW THAT AND COMMON SENSE

6    TELLS YOU THAT'S NOT THE CASE.

7            BUT THE OTHER THING IS THAT THEY HAVE TO

8    SHOW THAT THIS FALLBACK RELIEF THEY'RE SEEKING NOW

9    IS THE PRIMARY REASON FOR BRINGING THIS LAWSUIT.

10           AND, YOU KNOW, TO ME IT DEFIES

11   BELIEVABILITY FOR THEM TO SAY EARLIER THAT THE MAIN

12   REASON INVOLVED GETTING APPLE TO STOP USING DRM IN

13   ITS STORE ON AN ONGOING BASIS AND NOW THE PRIMARY

14   REASON IS, IS JUST TO GET THE DRM REMOVED, IN THE

15   FACE OF THEIR CLAIM FOR TREBLED DAMAGES.

16           I MEAN, THE TREBLED DAMAGES ARE THE MAIN

17   REASON FOR BRINGING THIS CASE, AND THIS FALLBACK

18   RELIEF THAT WOULD BENEFIT, YOU KNOW, ONLY A SMALL

19   PORTION OF THE PROPOSED CLASS, IF IT WOULD BENEFIT

20   ANYBODY, JUST CANNOT BE CONSIDERED THE MAIN RELIEF.

21           TWO OTHER POINTS QUICKLY.  AT PAGE 9 OF

22   OUR MOTION TO RECONSIDER THE (B)(2) CLASS WE CITE A

23   NUMBER OF CASES THAT STAND FOR THE PROPOSITION THAT

24   WHERE MOST OF THE CLASS WOULD NOT BENEFIT FROM AN

25   INJUNCTION, A (B)(2) CLASS IS INAPPROPRIATE.

                                                      43

1    THAT'S THE SEPULVEDA CASE.

2              AND THEN WE CITE JAMES AND OTHER CASES IN

3    FOOTNOTE 7 THAT STANDS FOR THE PROPOSITION THAT

4    WHEN THE CLAIM BY THE PLAINTIFF IS FOR SUBSTITUTE

5    PRODUCTS OR SUBSTITUTE HOUSING, THAT'S A CLAIM FOR

6    DAMAGES.  IT'S NOT A CLAIM FOR INJUNCTIVE RELIEF.

7              AND I THINK JAMES, YOUR HONOR, PAGE 9,

8    FOOTNOTE 7 OF OUR MOTION TO RECONSIDER THE (B)(2)

9    CLASS IS DIRECTLY ON POINT AND SHOWS WHAT THEY'RE

10   TRYING TO DO IS TO COME UP WITH SOME INJUNCTIVE --

11   SOMETHING THEY COULD PASS OFF AS INJUNCTIVE RELIEF

12   BUT IT'S NOT.  IT'S DAMAGES.

13             FINAL POINT.  THE DIRECT PLAINTIFFS SAY

14   THAT THEY ARE NOT ASSERTING ANY MONETARY DAMAGES,

15   NO MONETARY DAMAGE CLAIMS BASED ON ITUNES MUSIC

16   STORE PURCHASERS, AND THEY CITE THEIR COMPLAINT

17   WHICH SAYS THAT THE DAMAGE CLASS IS LIMITED TO IPOD

18   PURCHASERS.

19             SO THEY CONCEDE, I THINK, THAT IT'S NOT

20   ENOUGH FOR SOMEBODY TO HAVE BOUGHT ITUNES MUSIC.

21   THEY HAVE NOT SUFFERED AN ANTITRUST INJURY.  THEY

22   HAVE NOT SUFFERED DAMAGES.  IF THEY HAD, THESE

23   PLAINTIFFS WOULD HAVE BEEN SUING FOR THAT.

24             ONE YEAR AGO THE PLAINTIFFS AGREED TO

25   EXCLUDE ITUNES MUSIC PURCHASERS WHO DIDN'T HAVE

                                                      44

1    IPODS FROM THE CLASS.  THEY ABANDONED THAT PART OF

2    THE GROUP.

3         NOW, WHEN YOUR HONOR ASKED THE QUESTION,

4    WHY DID YOU LIMIT IT TO IPOD PURCHASERS, INSTEAD OF

5    ANSWERING THAT QUESTION, THEY TRY AND EVADE THE

6    QUESTION BY EXPANDING THE CLASS, EXPANDING THE

7    CLASS TO INCLUDE PEOPLE FOR WHOM THEY ARE NOT

8    SEEKING MONEY DAMAGES.

9         THE COURT:  NOW SLOW DOWN.  WHAT IS THIS

10   CONCESSION THAT YOU'RE TELLING ME ABOUT?  WHEN DID

11   IT HAPPEN AND HOW DID IT HAPPEN?

12        MR. MITTELSTAEDT:  WHEN YOUR HONOR

13   CERTIFIED THE DIRECT (B)(3) CLASS.

14        THE COURT:  AND HOW WAS THEIR CONCESSION

15   MANIFESTED?  WAS THERE A STIPULATION OR WAS IT JUST

16   MY DEFINITION?

17        MR. MITTELSTAEDT:  IF YOUR HONOR RECALLS,

18   THEIR ORIGINAL COMPLAINT ALLEGED A CLASS OF ITUNES

19   PURCHASERS AND IPOD PURCHASERS.

20        WHEN THEY MOVED TO CERTIFY, THEY LIMITED

21   THE MOTION TO ONLY TO IPOD PURCHASERS.

22        WHEN YOUR HONOR CERTIFIED THE CLASS, YOU

23   WENT BACK AND CERTIFIED THE CLASS AS PLED IN THE

24   COMPLAINT.

25        WE MOVED FOR RECONSIDERATION OR FOR

45

1    CLARIFICATION.  THE PLAINTIFFS DID NOT OPPOSE THAT.

2    THEY DID NOT DISPUTE THAT THE CLASS SHOULD BE

3    LIMITED AS THEY HAD MOVED, WHICH WAS ONLY IPOD

4    PURCHASERS AND EXCLUDED THE ITUNES PURCHASERS WHICH

5    THEY HAD ALLEGED IN THE COMPLAINT.  AND SO YOUR

6    HONOR MODIFIED THE (B)(3) CLASS DEFINITION TO

7    INCLUDE ONLY IPOD PURCHASERS AND TO EXCLUDE ITUNES

8    PURCHASERS WHO DIDN'T HAVE IPODS.

9         AND THEN WHEN YOUR HONOR LAST JULY ASKED

10   THE QUESTION, WHY DID YOU DIRECT PURCHASERS LIMIT

11   YOUR CLASS TO IPOD PURCHASERS, EVEN THOUGH THE

12   INJUNCTIVE RELIEF YOU'RE SEEKING HAS TO DO WITH

13   MUSIC, INSTEAD OF ANSWERING THAT QUESTION, THEY

14   REVERTED TO WHAT THEY HAD ALLEGED IN THE COMPLAINT

15   AND TRIED TO REACTIVATE THIS CLASS OF PEOPLE THAT

16   THEY HAD ABANDONED.

17        I THINK THAT, TOO, BEARS ON THE QUESTION

18   OF WHETHER THIS RELIEF THAT THEY'RE SEEKING FOR

19   THIS NEW CLASS IS THE PRIMARY REASON FOR THIS CASE.

20        THE COURT:  I'LL LOOK AT THAT HISTORY.  I

21   GUESS THAT'S WHY THE MOTION, BUT I DON'T HEAR YOU

22   SAYING THAT THAT OPERATES AS SOME KIND OF A

23   JUDICIAL ESTOPPEL.  IT'S SIMPLY A CHANGE IN

24   POSITION.  THE QUESTION IS WHETHER I SHOULD PERMIT

25   IT.

                                                  46

1          MR. MITTELSTAEDT:  I THINK IT GOES TO

2   WHETHER IT'S THE PRIMARY PURPOSE FOR BRING THIS.

3          THEY HAD A GOOD REASON FOR NOT SEEKING

4   THE CLASS ORIGINALLY.

5          WHEN THEY'RE NOT SEEKING DAMAGES BASED ON

6   ITUNES MUSIC PURCHASES, AND THEY HAVE EXPLICITLY

7   SAID IN THE BRIEFING ON THIS MOTION, DOCUMENT 236,

8   PAGE 5, THAT THEY ARE NOT ASSERTING MONETARY

9   DAMAGES BASED ON MUSIC STORE PURCHASES, AND THAT'S

10  BECAUSE THERE'S NO ANTITRUST INJURY.

11         IT'S THE QUESTION YOUR HONOR ASKED, WHAT

12  IS THE HARM TO SOMEBODY WHO BUYS A MUSIC FILE WITH

13  DRM FOR 99 CENTS AND USES THAT IN THE WAYS THAT IT

14  CAN BE USED?

15         YOU KNOW, WHAT IS THE HARM THERE?  AND IF

16  THERE'S NO HARM, HOW IS THAT GROUP ENTITLED TO

17  INJUNCTIVE RELIEF?

18         AND FOR THEM TO SAY, WELL, APPLE OUGHT TO

19  REMOVE THE DRM FROM ALL OF THESE SONGS.  WELL,

20  PRESUMABLY THE PEOPLE KNEW THEY WERE BUYING SONGS

21  WITH DRM AND THAT'S WHY IT COST 99 CENTS.

22         THE COURT:  I UNDERSTAND YOUR POSITION.

23  DID YOU STAND BECAUSE YOU HAD A FINAL WORD?

24         MR. MERRICK:  I DID MAINLY BECAUSE I WANT

25  TO GO THROUGH -- I INVITE THE COURT TO READ THE

47

1    JAMES CASE.

2             THE COURT:  I'M GOING TO GO BACK AND READ

3    THAT AND FOREMOST PRO AND THERE WERE A LOT OF CASES

4    THAT I STARTED THE FIRST TIME AROUND BUT MAINLY FOR

5    THE TYING ISSUES BUT COUNSEL'S ARGUMENT INVITES ME

6    TO GO BACK AND SEE WHAT THOSE CASES SAY ABOUT THE

7    SECTION 2 CLAIMS.

8             MR. MERRICK:  BUT ON THE (B)(2) CLASS IN

9    JAMES -- OKAY.  THE CASE INVOLVED A CLASS ACTION OF

10   AMERICANS WHO HAD HOUSES THAT WERE DEMOLISHED BY

11   THE CITY AND THE CITY HAD -- THERE WERE LIENS

12   AGAINST THE PROPERTY THAT WERE DEMOLISHED FOR THE

13   COST OF THE DEMOLITION.

14            THE SUBSTITUTE HOUSING ASPECT THAT APPLE

15   LIKES TO KEY IN ON WERE ONE OF MANY DIFFERENT KINDS

16   OF EQUITABLE RELIEF.  THERE WERE SEVERAL OTHER

17   FORMS OF EQUITABLE RELIEF THAT THE COURT DID FIND

18   SUPPORTED A (B)(2) CLASS, INCLUDING CANCELLING THE

19   DEBT OF THE DEMOLITION COSTS, RELEASING THE LIENS

20   AND INSURING THEIR TITLE AND WHICH I WOULD SUGGEST

21   IS A LITTLE CLOSER TO WHAT WE HAVE HERE WHICH IS

22   THAT WE'RE ASKING FOR APPLE TO IN A SENSE REMOVE

23   THE LIEN AND GIVE THE PEOPLE CLEAR TITLE TO THE

24   MUSIC THAT THEY BOUGHT IN THE FIRST PLACE.

25            BUT WITH THAT I'LL LET MS. ZELDES HAVE

                                              48

1    THE LAST WORD.

2            MS. ZELDES:  I THINK IT'S A BIT

3    DISINGENUOUS, WITH ALL DUE RESPECT, TO SAY THAT WE

4    JUST CAME UP WITH THIS INJUNCTIVE RELIEF NOW.

5            WE HAVE ALWAYS PLED THAT PLAINTIFFS IN

6    BOTH CASES ARE LOCKED INTO THESE LIBRARIES.  THIS

7    COURT FOUND LAST DECEMBER THAT INJUNCTIVE RELIEF

8    PREDOMINANT IN A DIRECT PURCHASER CASE.

9            OUR SUBCLASS OF FOLKS WHO ARE SEEKING THE

10   DISGORGEMENT OF CONVERSION FEES IS CLEARLY A SUBSET

11   OF THE OVERALL INJUNCTIVE RELIEF WE'RE SEEKING.  IT

12   MAY OVERLAP WITH THE DIRECT PURCHASERS, BUT IT IS A

13   SUBSET AND NOT THE PREDOMINANT RELIEF SOUGHT.

14           AND THAT FOLKS ARE PAYING THIS TREMENDOUS

15   PREMIUM TO UNLOCK THEIR MUSIC SHOWS WHAT A

16   RESTRAINT THAT IS.  THAT IS A TREMENDOUS RESTRAINT.

17   IF IT WAS INSIGNIFICANT, HOW COULD APPLE GET A 30

18   PERCENT MARGIN ON THAT?

19           THE COURT:  WELL, I WON'T GO INTO WHAT

20   PART OF THAT APPLE KEEPS.  THAT HAS TO DO WITH

21   WHETHER IT INCURS EXPENSES ASSOCIATED WITH

22   TRANSFERRING.

23           MS. ZELDES:  AND THERE IS NO DISCOVERY ON

24   THAT AT THIS POINT, YOUR HONOR.  IT IS AN ISSUE

25   THAT HAS NOT.

49

1              THE COURT:  CAN I BRING THIS TO A CLOSE?

2              MR. MITTELSTAEDT:  YOUR HONOR, COULD I

3    ADD ONE HOUSEKEEPING POINT?  THERE ARE THREE

4    MOTIONS ON TODAY.

5              THE COURT:  YES.

6              MR. MITTELSTAEDT:  WE HAVE SPENT MOST OF

7    THE TIME ON WHETHER --

8              THE COURT:  I HAD FOUR ACTUALLY BUT GO

9    AHEAD.

10             MR. MITTELSTAEDT:  WE SPENT A LOT OF TIME

11   ON WHETHER THE (B)(2) CLASS SHOULD BE EXPANDED TO

12   INCLUDE ITUNES STORE PURCHASERS.

13             WE HAVE SPENT LESS TIME ON WHETHER, AS

14   THE COURT INVITED, THAT (B)(2) CLASS FOR INJUNCTIVE

15   RELIEF SHOULD BE DECERTIFIED.  THAT'S BEEN FULLY

16   BRIEFED.

17             OUR BASIC ARGUMENT IS, AS I SAID, WITH

18   RESPECT TO THE ITUNES MUSIC STORE ALLEGED NEW

19   CLASS.  THE MAIN RELIEF THEY SOUGHT IS MOOTED AS

20   DEMONSTRATED BY MR. CUE'S DECLARATION.  AND THIS

21   FALLBACK RELIEF IS NOT THE PRIMARY PURPOSE AND IT

22   WOULDN'T BENEFIT MOST, IF ANY, OF THE CLASS.

23             SO WE HAVE BRIEFED THAT ISSUE AND I -- I

24   MEAN, WHAT WE HAVE SUGGESTED TO THE COURT IS THAT

25   BECAUSE THE PRIMARY INJUNCTIVE RELIEF THEY SOUGHT

                                                  50

1   CHANGING THE MUSIC STORE SO IT DOESN'T, YOU KNOW,

2   HAVE DRM ON THE MUSIC ON AN GOING BASIS, BECAUSE

3   THAT IS MOOT, THAT (B)(2) CLASS SHOULD BE

4   DECERTIFIED AS SET FORTH IN THE MOTION THAT YOUR

5   HONOR INVITED IN JULY.

6        THE COURT:  WELL, IN THE NAME OF

7   HOUSEKEEPING, IT SOUNDS LIKE WE'RE STILL AT THE

8   SAME PLACE BUT WHAT I'M PERSUADED TO DO, I'LL GIVE

9   IT CONSIDERATION, IS TO INVITE A MOTION WHICH

10  CONFIRMS THAT IN LIGHT OF THE DISMISSAL OF THE

11  TYING CLAIM THERE IS A VIABLE MONOPOLY CLAIM AND TO

12  HAVE THE TWO SIDES FOCUS ME ON WHAT IT IS, IS THE

13  ESSENCE OF THAT CLAIM INDEPENDENT OF THE TYING.

14       I KNOW IT'S A TECHNOLOGICAL RELATIONSHIP

15  AS I HAVE CHARACTERIZED IT, AND I WANT TO

16  UNDERSTAND THAT BETTER.  ALL OF THESE CHANGES IN

17  THE TECHNOLOGY DO SEEM TO ME TO OFFER THE NEED FOR

18  SOME KIND OF CUTOFF, AND I WANT TO UNDERSTAND THAT

19  BETTER.

20       SO I'LL INVITE THOSE MOTIONS.  THE FACT

21  THAT I DON'T TAKE ANY ACTION ON THESE CURRENT

22  MOTIONS IS NOT AN INDICATION THAT I DON'T CONSIDER

23  IT APPROPRIATE FOR THE PLAINTIFF TO REDEFINE THE

24  CLASS TO INCLUDE ITUNES PURCHASERS.  IT'S JUST THAT

25  I'M A LITTLE CONFUSED AT THIS POINT AS TO WHAT

51

1    RELIEF IS BEING SOUGHT AND WHETHER THAT'S

2    INDEPENDENT OF A PURCHASER OF A MACHINE.

3              AND THAT IS A SOURCE OF SOME CONFUSION

4    THAT I CAN GET CLARIFIED IN THE CONTEXT OF AN

5    INVITED MOTION TO DISMISS FOR FAILURE TO STATE A

6    CLAIM ON THE SECTION 2 FOR MONOPOLY.

7              MS. SWEENEY:  YOUR HONOR, IF I COULD,

8    BONNIE SWEENEY FOR THE DIRECT PURCHASERS.  I HEARD

9    MR. MITTELSTAEDT SAY HE WANTED TO ADDRESS SOME

10   HOUSEKEEPING ISSUES SO I WANTED TO CHIME IN HERE.

11             IN YOUR DISCUSSION JUST NOW, YOUR HONOR,

12   AND YOUR INVITATION TO DEFENDANT TO FILE YET

13   ANOTHER MOTION TO DISMISS I WANTED TO RAISE

14   SOMETHING THAT DURING THE TIME PERIOD THAT THIS

15   CASE HAS BEEN LITIGATED BEFORE MR. MERRICK JOINED

16   THE CASE APPLE FILED TWO MOTIONS TO DISMISS.

17             AND IF YOUR HONOR RECALLS BOTH OF THOSE

18   MOTIONS WERE DENIED.  AND I THINK IF YOU GO BACK

19   AND LOOK AT YOUR HONOR'S OPINIONS, THERE WAS AN

20   OPINION ISSUED IN THE SLATTERY CASE AS WELL AS AN

21   OPINION ISSUED IN THE TUCKER CASE AND THOSE

22   OPINIONS LAY OUT VERY CLEARLY THAT PLAINTIFFS

23   ALLEGE A VERY SEPARATE STAND-ALONE MONOPOLIZATION

24   CLAIM.  THOSE ALLEGATIONS ARE NOT DEPENDENT UPON

25   THE TYING CLAIM THAT YOUR HONOR HAS DISMISSED.

                                                    52

1           AND THE COURT'S DECISION ON THE

2    MONOPOLIZATION CLAIMS AND ATTEMPTED -- DON'T FORGET

3    WE HAVE AN ATTEMPTED MONOPOLIZATION CLAIM AS WELL,

4    ON THOSE CLAIMS MADE VERY CLEAR THAT UNDER THE LAW,

5    AND THERE WAS GREAT DISCUSSION IN THE BRIEFS, IN

6    ORAL ARGUMENT, IN YOUR HONOR'S OPINIONS AS TO THE

7    EFFECT OF THE UNITED STATES SUPREME COURT'S TRINKO

8    DECISION, A SECTION 2 MONOPOLIZATION CASE, NOTHING

9    TO DO WITH TYING.

10           SO I THINK THAT THE PROPER -- THE

11   JUNCTURE WE'RE AT HERE, YOUR HONOR.  THE FIRST CASE

12   WAS FILED IN 2005.  THE TUCKER CASE WAS FILED IN

13   2006.

14           WE'RE NOW IN 2009, AND MR. MITTELSTAEDT

15   SEEKS TO KEEP RELITIGATING OVER AND OVER AND OVER

16   AGAIN MOTIONS TO DISMISS, MOTIONS FOR CLASS, ET

17   CETERA.

18           I THINK THE APPROPRIATE WAY TO RESOLVE

19   THIS IS REALLY TO ALLOW PLAINTIFFS TO COMPLETE

20   DISCOVERY, SET A SCHEDULE AND THEN MR. MITTELSTAEDT

21   CAN BRING HIS MOTION FOR SUMMARY JUDGMENT.

22           AS YOU KNOW, YOU HAVE PROBABLY SEEN IN

23   THE PAPERS WE HAVE HAD DIFFICULTIES IN GETTING WHAT

24   WE NEED FROM APPLE IN DISCOVERY, AND I KNOW THAT'S

25   NOT YOUR HONOR'S PROBLEM.  WE HAVE A MAGISTRATE

53

1    ASSIGNED TO THIS CASE.

2             BUT ONCE WE RESOLVE THOSE PROBLEMS AND

3    GET THROUGH DISCOVERY APPLE IS CERTAINLY ENTITLED

4    TO MAKE A MOTION FOR SUMMARY JUDGMENT, AND I THINK

5    THAT WOULD BE THE MOST FAIR AND EFFICIENT WAY TO

6    PROCEED GIVEN ALL OF THE DELAYS THAT COUNSEL HAS

7    ENCOUNTERED SINCE FILING THIS CASE.

8             THE COURT:  WELL, THAT'S FAIR.  I'LL TAKE

9    THAT INTO CONSIDERATION.  THAT WOULD DELAY IT.

10            THE REASON I'M INVITING IT AS A 12(B)(6)

11   MOTION IS THAT IT WOULD HELP ME, FIRST OF ALL, TO

12   ON THESE MOTIONS WITH RESPECT TO THE DEFINITION OF

13   THE CLASS, BECAUSE RIGHT NOW THE COMPLAINT IS BASED

14   ON TYING.  AND IT WOULD HELP ME TO SEE THE CASE ON

15   MONOPOLIZATION AND SEE WHAT IS THE APPROPRIATE

16   CLASS.

17            BUT I THINK YOU'RE RIGHT, I WOULD

18   UNCOUPLE THE QUESTION OF DISCOVERY.  THIS IS NOT A

19   SECURITIES LITIGATION REFORM ACT CASE WHERE YOU

20   CAN'T GO AHEAD WITH DISCOVERY WHILE THESE THINGS

21   ARE GOING ON AND AS FAR AS I'M CONCERNED DISCOVERY

22   IS OPEN AND IF YOU NEED HELP FROM THE COURT GETTING

23   THE INFORMATION THAT YOU NEED, RESORT TO THAT

24   PROCESS.

25            MR. MITTELSTAEDT:  WE HAVE PRODUCED A LOT

                                                      54

1    OF DOCUMENTS.  WE HAVE A LOT OF LAWYERS WORKING AND

2    REVIEWING DOCUMENTS.

3                THE COURT:  WHEN WOULD YOU BE IN A

4    POSITION TO BRING THIS ARGUMENT THAT YOU'VE MADE

5    SEVERAL TIMES -- AND THE ONLY REASON I'M ASKING FOR

6    CONSIDERATION IS THAT THINGS HAVE CHANGED IN TERMS

7    OF MY OWN UNDERSTANDING OF THE CASE AND IT JUST

8    HELPS ME IF I'M GOING TO DENY IT, YOU BENEFIT

9    BECAUSE IF I DENY IT, IT'S DONE IN LIGHT OF THE

10   CLAIMS DISMISSED.

11               IF I'M GOING TO GRANT IT, YOU WOULD

12   BENEFIT.  SO IT SEEMS TO ME THAT IT WOULD BENEFIT

13   BOTH SIDES TO HAVE A GOOD CLEAR DETERMINATION AS TO

14   WHAT THE CLAIM IS AND TO SAY THAT THAT CLAIM IS

15   COGNIZABLE UNDER THE ANTITRUST LAWS.

16               HOW LONG?

17               MR. MITTELSTAEDT:  I WOULD THINK, YOUR

18   HONOR, A MATTER OF WEEKS.

19               THE COURT:  WEEKS.

20               MS. SWEENEY:  CAN I RESPOND TO THAT, YOUR

21   HONOR?  SO ARE YOU SAYING THAT YOU WOULD FILE A

22   MOTION TO DISMISS IN TWO WEEKS OR A MOTION FOR

23   SUMMARY JUDGMENT?  I MISUNDERSTOOD.

24               THE COURT:  HE'S SUGGESTING TO FOLLOW THE

25   COURT'S DETERMINATION OF THE 12(B)(6).

                                                    55

1          MS. SWEENEY:  THANK YOU.

2          THE COURT:  I WON'T BE AVAILABLE IN A

3     MATTER OF WEEKS.

4          MS. GARCIA, SUGGEST A DATE FOR A

5     SPECIALLY SET MOTION THAT IS CONSISTENT WITH OUR

6     LAW AND MOTION CALENDAR.

7          (PAUSE IN PROCEEDINGS.)

8          THE COURT:  SO WE WOULD HAVE TO INTERRUPT

9     OUR SCHEDULE AND PUT YOU IN SOME TIME IN LATE

10    JANUARY OR EARLY FEBRUARY.  AT THIS POINT WE CAN'T

11    HEAR YOU -- SO THE 25TH, 1ST, 8TH OR THE 22ND.

12         MR. MITTELSTAEDT:  WHY DON'T WE TAKE THE

13    8TH.

14         THE COURT:  FEBRUARY 8TH.

15         MS. SWEENEY:  YOUR HONOR, APOLOGIZE.  I

16    DON'T HAVE MY CALENDAR WITH ME.  I THINK THAT DATE

17    IS OKAY.

18         THE COURT:  SAY AGAIN.

19         MS. SWEENEY:  I THINK THAT DATE IS OKAY.

20    I APOLOGIZE.  I DIDN'T BRING MY CALENDAR.

21         THE COURT:  WELL, THAT WOULD BE YOUR

22    TARGET DATE FOR SETTING UP YOUR BRIEFING SCHEDULE

23    AND IF YOU HAVE PROBLEMS ON THAT PARTICULAR DATE,

24    LET US KNOW AND WE CAN MOVE YOU TO ANOTHER DAY

25    DURING THE WEEK.

                                                    56

1            MR. MITTELSTAEDT:  I KNOW THE ANSWER TO

2    THIS QUESTION BUT THERE WAS ANOTHER IMPORTANT

3    MOTION SET FOR TODAY AND THAT WAS OUR MOTION TO

4    DECERTIFY THE (B)(3) CLASS BASED ON YOUR HONOR'S

5    RULING IN THE INDIRECT PURCHASER CASE.

6            THE COURT:  AND WHAT DO YOU THINK THE

7    ANSWER IS?

8            MR. MITTELSTAEDT:  YOU POSSIBLY HAVE A

9    COURTROOM FULL OF LAWYERS AND YOU DON'T WANT TO

10   HEAR ANY ARGUMENT ON THAT.

11           THE COURT:  I DON'T WANT TO HEAR ANY

12   ARGUMENT ON THAT.

13           MR. MITTELSTAEDT:  THANK YOU VERY MUCH.

14           THE COURT:  THANK YOU VERY MUCH.  MATTER

15   IS UNDER SUBMISSION.

16           MS. SWEENEY:  THANK YOU, YOUR HONOR.

17           (WHEREUPON, THE PROCEEDINGS IN THIS MATTER

18   WERE CONCLUDED.)

19

20

21

22

23

24

25

                                                    57