IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| The Apple iPod iTunes Antitrust Litigation _____/ | NO. C 05-00037 JW<br>NO. C 07-06507 JW |
| Stacie Somers,<br>    Plaintiff,<br>  v.<br>Apple, Inc.,<br>    Defendant.<br>_____/ | **ORDER DECERTIFYING CLASSES WITHOUT PREJUDICE TO BEING RENEWED; INVITING FURTHER MOTIONS** |

### I. INTRODUCTION

Plaintiffs[1] bring this class action against Defendant Apple Computer, Inc. ("Apple"), alleging violations of the Sherman Act, 15 U.S.C. §§ 1, *et seq.*, and related state law claims. Plaintiffs allege that Apple has committed unlawful acts in the sale of its iPod portable digital music player and online digital music files sold through its iTunes Store ("iTS"), in violation of federal and state antitrust laws.

Presently before the Court are: (1) the Direct Purchaser Action Plaintiffs' Motion to Modify Injunctive Relief Class Definition to Include iTS Purchasers,[2] (2) the Indirect Purchaser Action Plaintiff's Motion for Class Certification of a Rule 23(b)(2) Class and Appointment of Class

---

[1] Named Plaintiffs are Melanie Tucker, Mariana Rosen, and Somtai Troy Charoensak.

[2] (hereafter, "Direct Purchaser Motion to Modify," No. C 05-00037 JW, Docket Item No. 236.) For ease of identification, this Order will use the term "Direct Purchaser Action" to refer to the lead case in <u>The Apple iPod iTunes Antitrust Litigation</u>, No. C 05-00037 JW.

Counsel,[3] (3) Defendant's Motion for Reconsideration of Rule 23(b)(2) Class in the Direct Purchaser Action,[4] and (4) Defendant's Motion for Decertification of the Rule 23(b)(3) Class in the Direct Purchaser Action.[5]

The Court conducted a hearing on November 23, 2009. Prior to the hearing, the Court found that the technological interoperability between iPods and media sold through Apple's iTS did not constitute tying made unlawful under the Sherman Act. Accordingly, the Court ordered the tying claim dismissed from the Consolidated Complaint. Since the monopoly claims require that Plaintiffs allege anticompetitive conduct, at the hearing on the present Motions, the parties disputed whether Plaintiffs could continue to rely on allegations of technological interoperability as a basis for their monopoly claims and consequently on the definitions of certifiable classes. As it presently stands, the monopoly claims interweave allegations that there were technological ties between Apple products when they were first introduced to the market (which, without more, is not anticompetitive conduct) and allegations that Apple made technological modifications to its products for the express purpose of maintaining monopoly power (which could support a monopoly claim). Thus, the Court finds that further orders with respect to the definition of the classes are premature until Plaintiffs clarify what actions they allege Apple took to maintain monopoly power beyond initial technological relationships between its products. For the reasons set forth below, the Court, *sua sponte*, decertifies the Rule 23(b)(2) and 23(b)(3) classes[6] in the Direct Purchaser Action and

---

[3] (hereafter, "Indirect Purchaser Motion for Class Certification," No. C 07-06507 JW, Docket Item No. 83.) For ease of identification, this Order will use the term "Indirect Purchaser Action" to refer to Stacie Somers v. Apple, Inc., No. C 07-06507 JW.

[4] (hereafter, "Motion for Reconsideration," Docket Item No. 244.)

[5] (hereafter, "Motion for Decertification," Docket Item No. 240.)

[6] As the Court will explain *supra*, this decertification is not dependent on the grounds raised by Defendant in its Motion to decertify, namely, that Plaintiffs' expert, Dr. Roger G. Noll's, report provides an inadequate method for proving common impact on the class to meet the predominance requirement of Rule 23(b)(3). The Court rejects Defendant's contention and decertifies the Rule 23(b)(3) without prejudice and only in order to ensure that a proper class would be defined in light of this Order.

2

DENIES all other Motions as premature, without prejudice to being renewed after further proceedings pursuant to this Order. Plaintiffs are invited to submit an Amended Consolidated Complaint that does not depend upon allegations of tying as the anticompetitive conduct upon which they base their monopoly claims. If Plaintiffs decline to do so, Defendant is invited to move for judgment on the pleadings as to the monopoly claims on the ground that they cannot survive the dismissal of the tying claims.

## II. BACKGROUND

A detailed outline of the factual allegations and procedural history in this case may be found in the Court's December 20, 2006 Order Denying Defendant's Motion to Dismiss (Docket Item No. 27)[7] and in the Court's December 22, 2008 Order Granting Plaintiffs' Motion for Class Certification as to Counts Two, Three, Four, Five, Six, and Seven Only and Appointing Class Counsel; *Sua Sponte* Order Reconsidering Defendant's Motion to Dismiss Count One and Requiring Further Briefing. (hereafter, "December 22 Order," Docket Item No. 196.) The Court reviews the relevant alleged facts and procedural history to the extent they implicate the present Motions.

### A. Factual Allegations

In a Consolidated Complaint, Plaintiffs allege[8] as follows:

In order to prevent consumers from making illegal unauthorized copies of digital files, online music stores use protected digital file formats.[9] While most online music stores use a protected digital file format called WMA, Apple uses a format called AAC. (Id. ¶¶ 40-41.) Apple encodes its AAC format files with DRM restrictions that Apple calls "FairPlay."

---

[7] This Order may be found in the docket for Tucker v. Apple Computer, Inc., 493 F. Supp. 2d 1090 (N.D. Cal. 2006), Case No. C 06-04457 JW, which was one of the original cases now included in this consolidated action.

[8] During the course of pretrial proceedings, the Court has been made aware of changes in Apple's practices that have taken place while this action has been pending. Since Plaintiffs have not filed a supplemental complaint, the Court describes the events as alleged by Plaintiffs as of the date of the Consolidated Complaint.

[9] (Consolidated Complaint for Violations of Sherman Antitrust Act, Clayton Act, Cartwright Act, California Unfair Competition Law, Consumer Legal Remedies Act, and California Common Law of Monopolization ¶ 39, hereafter, "CC," Docket Item No. 107.)

(Id. ¶ 41.) Apple has not licensed or given access to its FairPlay-DRM format to any other manufacturer of digital music players. (Id. ¶ 50.) Apple has an approximately 85% share of the online digital music market and a 90% share of the online video market. (Id. ¶¶ 5, 7.)

Apple also manufactures and sells digital music players variously called "iPods." (CC ¶ 9.) Apple deliberately designed the iPod software so that iPods would only play files encoded in a single protected digital format, the Fairplay-modified AAC format. (Id. ¶ 46.) As a result of Apple's actions, consumers who purchase media files from the iTS can only play those files directly[10] on an iPod. (Id. ¶ 22.) Conversely, Apple deliberately makes iPods unable to play music directly sold at rival online music stores, which means that iPod owners can only buy online music from the iTS to play on their iPods. (Id. ¶ 23.) Apple has an approximately 80% share of the digital music player market. (Id. ¶ 10.)

On July 26, 2004, RealNetworks, an Apple competitor in the online digital music market, publicly announced that music files sold through its online store would be playable on the iPod. (CC ¶ 52.) In December 2004, Apple updated its iPod software to prevent songs downloaded from RealNetworks music store (or any other online music store) from being played on iPods. (Id. ¶ 54.) In at least two additional instances, Apple changed iPod and iTunes software to add new restrictions to music that customers previously purchased from Apple. (Id. ¶ 55.)

On the basis of the allegations outlined above, Plaintiffs allege six causes of action. Their first two causes of action are for violation of the Sherman Act, 15 U.S.C. § 2: (1) the unlawful acquisition or maintenance of monopoly power in the digital music player, online music, and online video markets; and (2) attempted monopolization of the digital music player, online music, and online video markets. Their remaining state law causes of action are: (1) violation of the Cartwright Act, Cal. Bus. & Prof. Code §§ 16270, *et seq.*; (2) violation of California Unfair Competition Law,

---

[10] The Court has been led to understand that Plaintiffs used the word "directly" to acknowledge that consumers could "indirectly" play music purchased from the iTS on other music devices. Similarly, iPods could "indirectly" play music purchased online from other vendors.

4

Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (3) violation of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.; and (4) common law monopolization business practices.

### B. Direct Purchaser Action

On January 3, 2005, the original Complaint in this litigation was filed, which stated: "Plaintiff brings this action on behalf of himself and on behalf of all other similarly situated consumers who, during the period April 28, 2003 to the present ("the Class Period") purchased an iPod device directly from Apple, and online digital music files from Apple's iTunes store." (Complaint ¶ 56, Docket Item No. 1.) On July 21, 2008, Plaintiffs in the Direct Purchaser Action filed a Motion for Class Certification and Appointment of Class Counsel. (See Docket Item No. 165.) On December 22, 2008, the Court certified an injunctive relief class in the Direct Purchaser Action defined as follows: "All persons or entities in the United States . . . who: (a) purchased an iPod from Apple or (b) purchased audio or video files from the iTMS since April 28, 2003."

Subsequent to the Court's December 22 Order, Defendant sought clarification of the definition of the class, pointing out to the Court that the Motion for Class Certification had not included purchasers of audio or video files from the iTS in its definition of the class. (See Docket Item No. 197.) In response to Defendant's request for clarification, on January 14, 2009, the Court issued an Order Clarifying and Correcting Class Certification Order which modified the definition of the injunctive relief class to include only direct purchasers of iPods. (See Docket Item No. 198.)

Now, Plaintiffs in the Direct Purchaser Action seek to modify the class once again to include purchasers of audio or video files from the iTS. Concurrently, Defendant moves the Court to reconsider its certification of the injunctive relief class.

### C. Indirect Purchaser Class

On February 23, 2009, Plaintiff in the Indirect Purchaser Class filed a Motion for Class Certification and Appointment of Co-Lead Class Counsel. (hereafter, "Indirect Purchaser Motion for Class Certification," Docket Item No. 39.) The Indirect Purchaser Plaintiff sought to certify a class with the following definition: "All persons and entities in the United States . . . that from

5

December 31, 2003 to the present ("Class Period") purchased an Apple iPod indirectly from Apple for their own use and not for resale." (Indirect Purchaser Motion for Class Certification at 3.)

On July 17, 2009, the Court issued an Order Denying in Part Plaintiff's Motion for Class Certification. (hereafter, "July 17 Order," Docket Item No. 80.) In its July 17 Order, the Court denied certification of a damages class under Rule 23(b)(3), but declined to rule on an injunctive relief class under Rule 23(b)(2) until the parties provided further briefing on the operative theories of liability, the class definition, and the form of relief sought. (July 17 Order at 12-13.)

Now, the Indirect Purchaser Action Plaintiff again moves the Court to certify an injunctive relief class, this time seeking to add to the definition of the class provided in its original Motion "all purchasers of audio or video files from the iTMS since December 31, 2003." (Indirect Purchaser Motion for Class Certification at 1.)

**D.  Tying Claims**

Subsequent to class certification, the Court granted Judgment on the Pleadings in favor of Apple dismissing Plaintiffs' tying claims on the ground that the allegations of technological interoperability between iPods and music and videos purchased from iTS did not state a violation of Section 1 of the Sherman Act under either a *per se*[11] theory or under the rule of reason.[12]

### III.  DISCUSSION

Apple opposes modification of the injunctive relief class and moves for decertification of the damages class on a number of grounds. A principal ground for Apple's opposition to expanding the class is its contention that Plaintiffs' Section 2 monopoly claims are no longer viable because in dismissing the tying claims, the Court has rejected Plaintiffs' only basis for their monopoly and attempted monopoly claims. Although more appropriately raised by a formal motion for judgment

---

[11] (See Order Granting in Part Defendant's Motion for Judgment on the Pleadings; Ordering Supplemental Briefing, Docket Item No. 213.)

[12] (See Order Granting Defendant's Motion for Judgment on the Pleadings as to the First Cause of Action for Violations of Section 1 of the Sherman Act and the Fifth Cause of Action for Violations of the Cartwright Act, Docket Item No. 274.)

6

on the pleadings, the Court considers, *sua sponte*, whether Plaintiffs state a basis for a monopoly claim independent from the tying claims.

To state a claim for monopolization, a plaintiff must allege that (1) the defendant possesses monopoly power in the relevant market, (2) the defendant has willfully acquired or maintained that power, and (3) the defendant's conduct has caused antitrust injury. Cost Mgmt. Servs. v. Washington Natural Gas, 99 F.3d 937, 949 (9th Cir. 1996); Foremost Pro Color, Inc. v. Eastman Kodak Co., 703 F.2d 534, 543 (9th Cir. 1983).

Here, to satisfy the requirement for alleged willful conduct, Plaintiffs must allege facts showing that Apple engaged in anticompetitive conduct, with the specific intent to control prices or destroy competition, beyond the technological interoperability of iPods and media sold through the iTS. See Foremost Pro, 703 F.2d 534. The Court proceeds to examine the Consolidated Complaint to explore, in light of the Court's dismissal of Plaintiffs' tying claims, whether there are other factual allegations to support Plaintiffs' monopolization claims.[13]

### A. Apple's Alleged Anticompetitive Conduct

In 2006, when the Court first examined the merits of Plaintiffs' monopoly and attempted monopoly claims in light of Defendant's Rule 12(b)(6) challenge, the Court identified several actions alleged by Plaintiffs to be Apple's anticompetitive conduct. In its December 20, 2006 Order,

---

[13] It is well established that a preliminary inquiry into the merits of the plaintiffs' claims at the class certification stage is inappropriate. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974). The court may only scrutinize the plaintiffs' legal causes of action to determine whether they are suitable for resolution on a class-wide basis. See, e.g., Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983). This inquiry requires the court to accept the substantive allegations contained in the plaintiffs' complaint as true and analyze only whether the asserted claims or defenses are susceptible to resolution on a class-wide basis. See McCarthy v. Kleindienst, 741 F.2d 1406, 1419 n.8 (D.C. Cir. 1984).

Accordingly, in reexamining Plaintiffs' monopoly claims in light of these Motions, the Court is not, *sua sponte*, challenging their merits, but rather setting forth what factual allegations are susceptible to resolution on a class-wide basis.

the Court recited the six different actions Plaintiffs alleged that Apple took to maintain its monopoly. These allegations have been carried forward to the Consolidated Complaint.[14]

### 1. Actively modifying the iPod's "core processor," the Portal Player System-On-A-Chip, not to support WMA

Plaintiffs allege that Apple outsources most of the production of the iPod to third party manufacturers in Asia. One third party part used in the iPod is its "core processor," the Portal Player System-On-A-Chip. The System-On-A-Chip by default supports the WMA format. Apple, however, deliberately designed the iPod's software so that it would only play a single protected digital format, Apple's FairPlay-modified AAC format. (CC ¶ 46.)

### 2. Actively modifying the iPod Shuffle's SigmaTel chip not to support WMA

Plaintiffs allege that in place of the Portal Player System-On-A-Chip, Apple uses the SigmaTel STMP3550 in its low end iPod shuffles. Like the Portal Player System-On-A-Chip, the SigmaTel STMP3550 was designed to decode and play WMA files and does indeed play them on every Digital Music Player that contains the STMP3550 chip except the iPod. As in its higher end models, Apple's crippleware operating system software prevents the iPod shuffle from playing WMA files. (CC ¶ 48.)

### 3. Refusing to pay a nominal licensing fee for WMA

Plaintiffs allege that Apple could license its FairPlay-DRM format to other manufacturers of Digital Music Players, so that music purchased from the Music Store could be transferred directly to Digital Music Players other than the iPod. (CC ¶ 45.) The cost to Apple of licensing the WMA format would likely not exceed $800,000 per year or less than two cents per iPod sold in 2006. (Id. ¶ 49.) Apple has not licensed or given access to its FairPlay-DRM format to any other Digital Music Player manufacturer, thereby ensuring two results–both of which are anticompetitive. First, through the foregoing, Apple has ensured that the iPod is the only Digital Music Player that can directly play songs purchased from the Music Store. Second, through the foregoing, Apple has

---

[14] (December 20, 2006 Order at 10.) The anticompetitive acts that the Court cited were alleged in Plaintiffs' original Complaint. (See Class Action Complaint ¶¶ 16, 35-41, Docket Item No. 1.)

8

managed to ensure that owners of iPods wishing to purchase music files online to be directly played on their iPod can only do so by purchasing these files at the Music Store. (Id. ¶ 50.)

### 4. Using technological restrictions to prevent consumers who purchased music from rival stores from playing their music on their iPods

Plaintiffs allege that Apple gains access to the iPods of consumers when the consumers download music and videos from the iTS and when consumers login to download updates to software residing in their iPods. (CC ¶¶ 51-55.) Plaintiffs allege that in December 2004, Apple used that access for an anticompetitive purpose, namely to install codes in the iPods that prevented the owners from being capable of directly downloading music into their iPods that was being sold by an Apple competitor, RealNetworks.[15] Plaintiffs further allege that Apple used this online access to impose "restrictions to music that customers previously purchased from Apple."[16] (Id. ¶ 55.)

### 5. Selling music only using Apple's FairPlay DRM, which is incompatible with any digital music players other than iPod

Plaintiffs allege digital music purchased from the iTS is technologically tied to the iPod. (CC ¶¶ 39-44.)

The Sherman act does not outlaw monopoly power gained from the popularity of interoperable products even if incompatible with the products of competitors. See Foremost Pro Color, 703 F.2d at 543.

However, as the Court has previously held, Plaintiffs must allege willful conduct beyond interoperability and incompatibility. Accordingly, the Court invites Plaintiffs to show cause why these allegations should not be stricken.

### 6. Using technological restrictions to prevent users from playing video files purchased from Apple on rival video-enabled music players

This appears to duplicate the conduct criticized in paragraph (5).

---

[15] It is not clear to the Court whether the allegation that "Apple updated its iPod software," (CC ¶ 54), alleges that Apple made a "software change," (id. ¶ 55), to iPods as they were being updated or to those sold after December 2004. This is a matter left to pretrial discovery.

[16] Plaintiffs do not describe what other actions Apple took after December 2004 to further restrict consumers' rights to listen to the music they purchased from the iTS.

9

### B. **Distinction Between the Above Alleged Conduct and the Dismissed Tying Claims**

At issue is whether additional clarification of the distinction between the six alleged anticompetitive acts and the dismissed tying claims is necessary before any further orders with respect to the definition of the class can be issued.

A Section 2 claim can be based on willful conduct undertaken to acquire monopoly power or, if monopoly power is lawfully acquired, a Section 2 claim can be based on willful conduct undertaken to maintain monopoly power. See Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, 540 U.S. 398, 407 (2004) (a monopolization or attempt to monopolize claim requires "in addition to the possession of monopoly power in the relevant market, 'the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident'").

Here, Plaintiffs allege that Apple has monopoly power and acted to "maintain" its monopoly. However, on the face of the Consolidated Complaint, Plaintiffs mix their allegations that Apple introduced products to the market with technological restrictions with allegations that Apple changed its products to thwart competition. For purposes of certifying a class, the class definition will depend upon what anticompetitive acts are alleged and when they allegedly took place. The Court is not able to discern whether Plaintiffs are basing their monopoly claims solely on technological decisions made as products were introduced to the market or whether Plaintiffs are alleging that Apple gained monopoly power and afterward made anticompetitive technological decisions to maintain its monopoly.

### C. **Summary**

In sum, the Court finds that Plaintiffs' allegations of technology changes alleged to have been made to maintain a monopoly are so inextricably interwoven with allegations about technology decisions that are alleged to have been made before the products were first introduced to the market, that the Court is not able to give clear definitions of the affected classes. Indeed, Plaintiffs' earlier motion to remove from the class a group that it now seeks to add demonstrated their own ambivalence on the proper class definition.

10

Accordingly, to give consideration to class definitions based on clearly stated monopoly claims delineating what anticompetitive conduct Apple is alleged to have engaged in and when it allegedly took place, the Court vacates its Order certifying Rule 23(b)(2) and 23(b)(3) classes.[17]

### 1. The Direct Purchaser Action

In light of the discussion above, Plaintiffs are invited to submit an Amended Consolidated Complaint that does not depend upon allegations of tying as the anticompetitive conduct upon which they base their monopoly claims. If Plaintiffs decline to do so, Defendant is invited to move for judgment on the pleadings as to the monopoly claims on the ground that they cannot survive the dismissal of the tying claims. The Court also invites Plaintiffs in the Direct Purchaser Action to, in their amendment, combine their injunctive remedies with that of the Indirect Purchaser Action since it appears to the Court that those remedies, to the extent they are viable, should be merged because they derive from the same alleged anticompetitive conduct by Apple.

### 2. The Indirect Purchaser Action

Nothing in this Order is intended to allow the Indirect Purchaser Plaintiff to renew her Motion to certify a Rule 23(b)(3) class since the Court has found that Plaintiff has failed to meet her burden of establishing "a reliable method for proving common impact on all purchasers of [D]efendant's products throughout the chain of distribution." In re Graphics Processing Units Antitrust Litig., 253 F.R.D. 478, 507 (N.D. Cal. 2008).

Moreover, it is undisputed that there is no "indirect purchaser" of iTS digital music or video files. Accordingly, the Court orders the Indirect Purchaser Plaintiff to show cause, if any, why her case should not be dismissed since the basis for a separate action, namely, indirect purchasers of iPods, is no longer viable in light of the Court's denial of certification of the damages class. Thus,

---

[17] Federal Rule of Civil Procedure 23 provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings. Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1176 (9th Cir. 2007). If later evidence disproves the plaintiffs' contentions, the court can modify or decertify the class. See Gen. Tel. Co. of S.W. v. Falcon, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation."). A district court's decision to decertify a class is committed to its sound discretion. See Knight v. Kenai Peninsula Borough Sch. Dist., 131 F.3d 807, 816 (9th Cir. 1997).

11

once the Direct Purchaser Plaintiffs amend their pleadings to add remedies also sought by the Indirect Purchaser Plaintiff, it appears to the Court that the Indirect Purchaser Action is no longer necessary.

## IV. CONCLUSION

The Court decertifies the Rule 23(b)(2) and 23(b)(3) classes and DENIES all other Motions as premature. On or before **January 25, 2010**, Plaintiffs in the Direct Purchaser Action shall file their Amended Consolidated Complaint consistent with the terms of this Order. If no amended pleading is filed, on or before **February 1, 2010**, Defendant shall file a motion for judgment on the pleadings as to Plaintiffs' monopoly claims. Defendant shall file its motion in accordance with the Civil Local Rule of Court. In addition, on or before **February 1, 2010**, the Indirect Purchaser Plaintiff shall file her Response to the Court's Order to Show Cause re: Dismissal of her remaining claims as duplicative of the Direct Purchaser Action.

In any event, the parties shall appear for a Case Management Conference on **February 22, 2010 at 10 a.m.** On or before **February 12, 2010**, the parties shall file a Joint Case Management Statement. The Statement shall include, among other things, the parties' proposed schedule for any further discovery in light of this Order and any further dispositive motions.

Dated: December 21, 2009

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alreen Haeggquist alreenh@zhlaw.com
Craig Ellsworth Stewart cestewart@jonesday.com
Craig L. Briskin cbriskin@findjustice.com
David Craig Kiernan dkiernan@jonesday.com
Elaine Wallace ewallace@jonesday.com
Helen I. Zeldes helenz@zhlaw.com
Michael Tedder Scott michaelscott@jonesday.com
Robert Allan Mittelstaedt ramittelstaedt@jonesday.com
Steven A. Skalet sskalet@findjustice.com
Alreen Haeggquist alreenh@zhlaw.com
Andrew S. Friedman afriedman@bffb.com
Bonny E. Sweeney bonnys@csgrr.com
Brian P Murray bmurray@murrayfrank.com
Caroline Nason Mitchell cnmitchell@jonesday.com
Elaine A. Ryan eryan@bffb.com
Francis Joseph Balint fbalint@bffb.com
Helen I. Zeldes helenz@zhlaw.com
Jacqueline Sailer jsailer@murrayfrank.com
John J. Stoia jstoia@csgrr.com
Michael D Braun service@braunlawgroup.com
Roy A. Katriel rak@katriellaw.com
Thomas J. Kennedy tkennedy@murrayfrank.com
Thomas Robert Merrick tmerrick@csgrr.com
Todd David Carpenter tcarpenter@bffb.com

**Dated: December 21, 2009**     **Richard W. Wieking, Clerk**

**By:   /s/ JW Chambers**
      **Elizabeth Garcia**
      **Courtroom Deputy**