COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JOHN J. STOIA, JR. (141757)
BONNY E. SWEENEY (176174)
THOMAS R. MERRICK (177987)
PAULA M. ROACH (254142)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
johns@csgrr.com
bonnys@csgrr.com
tmerrick@csgrr.com
proach@csgrr.com

THE KATRIEL LAW FIRM
ROY A. KATRIEL (*pro hac vice*)
1101 30th Street, N.W., Suite 500
Washington, DC 20007
Telephone: 202/625-4342
202/330-5593 (fax)
rak@katriellaw.com

Co-Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTI-TRUST LITIGATION | Lead Case No. C-05-00037-JW(RS) |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSE FROM DEFENDANT APPLE, INC. |
| ALL ACTIONS. | |
| | Judge: Magistrate Richard Seeborg<br>Date: February 10, 2010<br>Time: 9:30 a.m.<br>Ctrm: 4 – 5th Floor |

**REDACTED**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   PROCEDURAL HISTORY RELATED TO DISCOVERY ....................................3

III.  PLAINTIFFS' MEET AND CONFER EFFORTS...................................................4

    A.    Plaintiffs' Rule 30(b)(6) Deposition and Document Requests ...............................4

    B.    Plaintiffs' Amended Document Requests and Amended Interrogatories ...............8

IV.   APPLICABLE LEGAL STANDARDS .................................................................11

V.    APPLE SHOULD BE ORDERED TO PRODUCE THE REQUESTED
      DISCOVERY WITHOUT FURTHER DELAY .....................................................12

    A.    Apple's Production of Documents Related to Software Updates Is
            Inadequate and Should Be Supplemented Without Delay......................................12

    B.    Apple Should Be Compelled to Provide Supplemental Production of
            Customer Complaints.............................................................................................14

    C.    Apple Should Be Compelled to Provide Responses to Interrogatories 1-3,
            and 5 Concerning Identification of Licenses and Licensing Costs.......................16

    D.    Apple Should Be Compelled to Produce Documents Responsive to the
            Amended Document Requests Without Further Delay ..........................................19

VI.   CONCLUSION.......................................................................................................21

1

# TABLE OF AUTHORITIES

2

Page

3

**CASES**

4

*A. Farber & Partners, Inc. v. Garber,*
   234 F.R.D. 186 (C.D. Cal. 2006) ...........................................................................11, 15

5

*Bible v. Rio Props., Inc.,*
   246 F.R.D. 614 (C.D. Cal. 2007) ...................................................................................11

6

7

*Blankenship v. Hearst Corp.,*
   519 F.2d 418 (9th Cir. 1975) .........................................................................................11

8

*Fitzgerald v. Cassil,*
   216 F.R.D. 632 (N.D. Cal. 2003) ...................................................................................11

9

10

*Garneau v. Seattle,*
   147 F.3d 802 (9th Cir. 1998) .........................................................................................11

11

*In re Napster, Inc. Copyright Litigation,*
   No. MDL-00-1369 (N.D. Cal.) ..............................................................................3, 4, 8

12

13

*Oppenheimer Fund, Inc. v. Sanders,*
   437 U.S. 340, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978).................................................13

14

*Rialto v. United States Dep't of Def.,*
   492 F. Supp. 2d 1193 (C.D. Cal. 2007) .........................................................................11

15

16

*Sanbrook v. Office Depot,*
   No. C-07-5938 RMW (PH) 2009 WL 840019
   (N.D. Cal. Mar. 30, 2009)..............................................................................................16

17

18

*Sequoia Prop. Equip. Ltd. P'Ship v. United States,*
   203 F.R.D. 447 (E.D. Cal. 2001) ...................................................................................11

19

*Sullivan v. Prudential Ins. Co. of Am.,*
   233 F.R.D. 573 (C.D. Cal. 2005) ...................................................................................11

20

21

**STATUTES, RULES AND REGULATIONS**

22

Federal Rule of Civil Procedure
   Rule 26(b)(1)...........................................................................................................11, 13

23

   Rule 37(a)(3)(A)-(B)......................................................................................................11
   Rule 37(a)........................................................................................................................1

24

   Rule 30(b)(6)..........................................................................................................2, 4, 12

25

Local Rule
   Rule 37-1(a) .....................................................................................................................1

26

**SECONDARY AUTHORITIES**

27

7 Moore's Federal Practice & Procedure,
   §34.12[1] (Mathew Bender 3d ed. 2006).......................................................................11

28

1  TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2  PLEASE TAKE NOTICE that on February 10, 2009, at 9:30 a.m., or as soon thereafter as the

3  matter may be heard, in Courtroom 4, Fifth Floor, of the above-captioned Court, located at 280

4  South First Street., San Jose, California, before the Magistrate Judge Richard Seeborg, Plaintiffs

5  Melanie Tucker, Mariana Rosen and Somtai Troy Charoensak (collectively, "Plaintiffs") will move

6  this Court pursuant to Federal Rules of Civil Procedure, Rule 37(a), for an order compelling further

7  response from defendant Apple Inc. ("Apple").  The relevance of the documents sought is described

8  below.

9  In accordance with Local Rule 37-1(a), and as set out in the contemporaneously filed

10  Declaration of Paula M. Roach in Support of Plaintiffs' Motion to Compel Further Response from

11  Apple, Inc., Plaintiffs have made good faith efforts to confer with Apple in an attempt to resolve this

12  dispute without the need for Court intervention.  However, the parties have reached an impasse on

13  the issues subject to this matter.  In addition to the foregoing declaration, this motion is supported by

14  the Memorandum of Points and Authorities, the pleadings on file in this action, and on such other

15  and further matters, evidence and arguments as may be presented to the Court before or at the

16  hearing on the motion.

17  **MEMORANDUM OF POINTS AND AUTHORITIES**

18  Plaintiffs respectfully submit this memorandum in support of their Motion to Compel Further

19  Responses from Apple.

20  **I.    INTRODUCTION**

21  This matter consists of two consolidated class actions filed against Apple by direct

22  purchasers of iPods, arising out of Apple's alleged monopolization and/or attempted monopolization

23  of the markets for portable digital media players, digital audio files, and digital video files.[1]

24  Plaintiffs allege that Apple created and used its proprietary digital rights management ("DRM")

25

26  [1]    The consolidated actions are *Charoensak v. Apple Computer, Inc.*, No. C 05-00037 JW, and

27  *Tucker v. Apple Computer, Inc.*, No. C 06-04457 JW.  A related case, brought by indirect purchasers, *Somers v. Apple, Inc.*, No. C 07-6507 HRL, is also pending before Judge Ware.

28

1  software, FairPlay, so that audio and video files sold at Apple's iTunes Store ("iTS") could only be

2  directly played on Apple's iPod portable digital media player and iPods could only play digital audio

3  and video files purchased through iTS. Consolidated Complaint ("Complaint"), ¶¶21-24, 42, 44-45.

4  Apple used software updates to shut competitors out of the portable digital media player and digital

5  audio and video file markets. *Id.*, ¶¶50-55. For example, in 2004, after RealNetworks began selling

6  digital audio files capable of being played directly on an iPod, Apple issued a software update that

7  blocked that ability. *Id.*, ¶¶51-54. Interoperability with Apple's iPod and iTS files was critical for

8  competitors given Apple's overwhelming market share in the relevant markets. *Id.*, ¶¶5, 7, 10.

9       Plaintiffs have spent the last three years battling Apple over the appropriate scope of

10  discovery and have yet to receive any meaningful merits production. Plaintiffs' discovery requests

11  seek basic and necessary information directly related to their allegations. Nevertheless, Apple has

12  successfully stalled in providing significant document production responsive to Plaintiffs' Rule

13  30(b)(6) requests related to software updates and continues to delay in providing any meaningful

14  basis for withholding documents and interrogatory responses to Plaintiffs' amended first set of

15  requests for production ("Amended Document Requests"), amended first set of interrogatories

16  ("Amended Interrogatories") and amended first set of requests for admission ("Amended RFAS").

17  In total, Plaintiffs have received, at most, 465 documents responsive to their 30(b)(6) requests,

18  despite being served almost nine months ago, and extremely minimal production responsive to the

19  Amended Document Requests, served seven months ago.

20       Plaintiffs now seek: (1) a more complete and prompt response to their 30(b)(6) document

21  requests; (2) supplemental production of Apple's relevant customer complaints; (3) information

22  concerning Apple's licenses used in iPods and iTS files; and (4) prompt production pursuant to the

23  agreed to search terms and custodians for the Amended Document Requests.

24

25

26

27

28

## II.    PROCEDURAL HISTORY RELATED TO DISCOVERY

Prior to consolidation, in early 2006, Plaintiffs Somtai Charoensak and Mariana Rosen propounded their First Set of Requests for Production of Documents and First Set of Interrogatories.[2] Roach Decl., ¶2.  Apple provided only minimal discovery in response to these requests, including terms of sale agreements for consumers of iTS, heavily redacted iTS profits and loss statements and iPod sales spreadsheets. *Id.*

Similarly, on January 18, 2007, Plaintiff Tucker propounded her first set of requests for production of documents, first set of requests for admissions, and first set of interrogatories. *See* Exs. 1, 2, 3. Apple objected to these requests, contending that Plaintiff Tucker should be limited to class certification discovery. Exs. 4, 5, 6.

The two actions were consolidated on March 21, 2007. Dkt. No. 106. On July 20, 2007, upon request by Apple and over Plaintiffs' objections, Judge Ware limited discovery to: (1) class certification issues; (2) Apple's organizational structure and document retention policies; (3) Plaintiffs' iPods and computer drives; and (4) the production of documents that would impose only a *de minimus* burden on either party, including those already produced by Apple in the European actions, government investigations involving similar claims, and documents and deposition transcripts produced by Apple in *In re Napster, Inc. Copyright Litigation*, No. MDL-00-1369 (N.D. Cal.). Dkt. No. 128 ("Discovery Order").

In accordance with the Court's Discovery Order, Plaintiffs narrowed their requests and continued to meet and confer with Apple.  Apple continued to claim that most of the requested information was not relevant to class certification and thus produced only a very limited universe of documents.  Roach Decl., ¶5; Exs. 32-33.  Prior to certification of the class, Apple's document production consisted of customer complaints through the middle of 2007, documents previously

---

[2]    All references and "Ex." and "Exs." are to the exhibits attached to the Declaration of Paula M. Roach in Support of Plaintiffs' Motion to Compel Further Response from Defendant Apple, Inc. ("Roach Decl."), filed concurrently.

1    produced in *Napster*, organizational charts, documents previously produced in the European actions,

2    and three pages of exemplars of financial documents.  *Id.*

3        On December 22, 2008, Judge Ware certified a damages and injunctive relief class of iPod

4    purchasers based on their monopoly claims.  Dkt. No. 196.  Judge Ware denied certification of the

5    tying claims pending additional briefing by the parties.  *Id.* at 13.  After full briefing on two separate

6    motions for judgment on the pleadings brought by Apple, the Court dismissed Plaintiffs' tying

7    claims.  Dkt. Nos. 213 and 274.

8        Focusing on the merits of their monopoly claims and Plaintiffs' contention that Apple

9    continued to shut out competitors with the use of software updates, on April 9, 2009, Plaintiffs

10   served a Rule 30(b)(6) deposition notice with document requests concerning Apple's software

11   updates.  Ex. 7.  Plaintiffs served their Amended Document Requests, Amended Interrogatories and

12   Amended RFAs on May 22, 2009.  Exs. 8, 9, 10.  This discovery consisted of a combination of the

13   requests originally served by Plaintiffs Charoensak and Rosen and Plaintiff Tucker in 2006 and

14   2007, prior to consolidation.

15       On December 21, 2009, the Court *sua sponte* decertified the classes and instructed Plaintiffs

16   to file an amended complaint reasserting their monopoly claims in a way that does not depend upon

17   allegations of tying as the anticompetitive conduct.   Dkt. No. 303 at 2-3.  Discovery, however,

18   remains open.

19   **III.    PLAINTIFFS' MEET AND CONFER EFFORTS**

20       **A.    Plaintiffs' Rule 30(b)(6) Deposition and Document Requests**

21       Plaintiffs' Rule 30(b)(6) deposition notice topics and document requests were drafted to

22   focus on Apple's use of software updates to shut out competitors in the relevant markets.  Among

23   other things, Plaintiffs seek documents identifying the software updates directed at competitors,

24   documents identifying people responsible for designing and implementing such updates, and

25   communications concerning the updates.  Ex. 7.

26       On May 6, 2009, less than a week before Apple's responses and objections were due, Apple

27   proposed producing a summary list of software updates to assist Plaintiffs in narrowing their

28   requests.  Roach Decl., ¶7.  Plaintiffs agreed to this proposal and on May 27, 2009, Apple produced

1  a 20-page list consisting of 327 software updates. Ex. 11. As Apple's counsel, Robert Mittelstaedt,

2  stated, this list was "provided with the understanding that [Plaintiffs] will select the updates for

3  which [they] seek further discovery including 30(b)(6) testimony, as part of the process of trying to

4  reach agreement on narrowing the scope of [Plaintiffs'] discovery requests." *Id.*

5        This list, however, was entirely useless. As Plaintiffs explained to Apple on June 18, 2009,

6  "[t]he information provided lacks necessary detail on the purpose of the updates and does not appear

7  to be inclusive of all of the relevant updates." Ex. 35 at 1-2. For example, several software updates

8  contained descriptions not self-evident of their purpose or content. *Id.* Accordingly, Plaintiffs

9  proposed that Apple produce documents in response to four of the original requests: (1) all

10 documents and communications that discuss or otherwise memorialize the effects of any software

11 update on a competitor; (2) all documents and communications that relate to Apple's response to

12 RealNetwork's introduction of Harmony in 2004; (3) all communications between Apple and the

13 labels concerning software updates; and (4) all documents which depict the organizational

14 relationship of all Apple employees or consultants who propose, originate, develop, manage, create,

15 or otherwise contribute to the generation of each software update. *Id.* at 3-4.

16       In response to this proposal, on July 2, 2009, Apple's counsel, David Kiernan, stated that he

17 was meeting with his client to see what type of responsive information was available. Roach Decl.,

18 ¶11. On July 8, 2009, Mr. Kiernan stated that unless he could locate an Apple employee who was

19 able to identify the relevant software updates, the parties would have to agree upon search terms and

20 custodians to locate documents responsive to Plaintiffs' requests. Roach Decl., ¶12. Mr. Kiernan

21 agreed to make an initial proposal of search terms and custodians and stated that he would get back

22 to Plaintiffs concerning the relevant software updates on July 13, 2009. Roach Decl., ¶13. On July

23 9, Mr. Kiernan emailed Plaintiffs' counsel stating that he would call on July 14 with an update. *Id.*

24       After no update was provided on July 14, Mr. Kiernan emailed Plaintiffs' counsel on July 20,

25 2009 stating that he would call on July 21 with an update. Ex. 12. Mr. Kiernan never called with an

26 update. Roach Decl., ¶14. On July 31, 2009 the parties met and conferred once again concerning

27 the 30(b)(6) requests. *Id.*, ¶16. Mr. Kiernan stated that Apple would begin producing documents

28 concerning: (1) software updates that affected competitors' attempts to achieve interoperability and

1  (2) "hacks."  *Id.*; Ex. 13.  Apple also agreed to produce documents "sufficient to identify the

2  software updates referred to in categories (1) and (2)."  Roach Decl., ¶16; Ex. 14.

3      In the interest of getting an initial set of merits documents, Plaintiffs agreed to this

4  production but reserved their right to seek additional documents once production began.  Roach

5  Decl., ¶16.  Mr. Kiernan promised to propose search terms and custodians and stated that Apple

6  expected rolling production to begin by the end of August 2009.  *Id.*

7      On August 12, Apple proposed a list of "key custodians most likely to have electronically

8  stored information that Apple has agreed to produce in response to plaintiffs' document requests

9  attached to their 30(b)(6) notice."  Ex. 14.  Mr. Kiernan also stated that Apple would run the

10  proposed search terms "against ESI created, modified, sent, or received on or after April 1, 2002

11  through the date of collections of the custodians' data, which occurred in 2007."  *Id.*  This was the

12  first time Plaintiffs were informed that potentially relevant documents had already been pulled.

13  Plaintiffs immediately met and conferred with Apple to confirm that documents beyond 2007 would

14  also be searched and produced.  Roach Decl., ¶19.  On August 20, 2009, Apple's counsel informed

15  Plaintiffs' that Apple would be producing responsive documents at the end of August or early

16  September.  Roach Decl., ¶20.

17      Seven days later, Mr. Kiernan revised his previously proposed search terms claiming that the

18  original terms "brought back approximately 50-75 boxes of documents" and the more narrowed

19  terms "brought back a much more manageable number of approximately 15-20 boxes of

20  documents."  Ex. 15.  Plaintiffs immediately expressed concern over Apple's arbitrary limit of the

21  search terms stating that "[t]he volume of documents . . . that came back in response to the initial

22  search does not in and of itself indicate that the documents are irrelevant."  Ex. 16.  Plaintiffs also

23  proposed additional search terms based on public information concerning software updates that

24  affected competitors.  *Id.*

25      Yet again, on September 9, Apple delayed production stating that it would not meet its

26  promised date for production of documents.  Roach Decl., ¶24.  This time Apple stated that because

27  of heavy briefing in the case and "a snafu with the document review tool" it would not begin rolling

28  production for the 30(b)(6) requests until the end of September.  *Id.*; Ex. 17.

1    It was not until Plaintiffs wrote Apple on September 22 and threatened to seek court

2   intervention, that Apple began producing responsive documents.  Ex. 17.  On October 15, 2009, over

3   six months after first being served with the 30(b)(6) requests, Apple served its first installment of

4   documents – a total of 35 unique documents.  Roach Decl., ¶28.  On October 22, 2009, Apple

5   produced a second installment consisting of 132 unique documents.  Roach Decl., ¶30.  A third

6   installment of documents, responsive to both the 30(b)(6) requests and amended requests was

7   produced on November 5, 2009 consisting of 80 unique documents.  Roach Decl., ¶32.

8    On November 25, Plaintiffs wrote Apple to inquire into the next date of production, confirm

9   whether Apple was producing documents beyond 2007, and to verify the process Apple is using to

10  search for documents in light of the fact that documents were produced that did not contain any

11  custodian names.  Ex. 18.  On December 2, 2009, Plaintiffs' counsel emailed Apple to follow up on

12  the November 25 letter.  Ex. 19.  Apple responded by email on December 2, stating that it was

13  "hoping (not promising) to produce documents on Friday or Monday, and plan[ed] to respond to

14  [Plaintiffs'] letter at that time."  *Id*.  On December 7, Apple produced a fourth production installment

15  that consisted of approximately 125 unique documents.  Roach Decl., ¶35.

16   On December 14, 2009, Apple finally responded to Plaintiffs' November 25 letter that

17  requested information on the status of production.  Ex. 20.  Apple stated, "Apple is still in the

18  process of collecting, processing, and reviewing documents.  Apple is running the search terms

19  agreed to by the parties against the data collected from the agreed upon custodians.  As David

20  [Kiernan] indicated before, Apple collected documents in 2007 and is in the process of updating

21  those collections."  *Id*.  Despite being four months since Apple provided its original list of search

22  terms and custodians relevant to the 30(b)(6) document requests, Apple could provide no new

23  information on the status of its production.

24   On December 18, 2009, Apple produced another 93 unique documents.  Roach Decl., ¶35.

25  To date, Plaintiffs have received at most, 465 unique documents responsive to the 30(b)(6) requests.

26  Roach Decl., ¶37.

27

28

1

**B.    Plaintiffs' Amended Document Requests and Amended Interrogatories**

2

3    While meeting and conferring on their 30(b)(6) requests, Plaintiffs served Amended

4    Document Requests. These requests sought supplemental production for certain requests that Apple

5    responded to prior to class certification and renewed the requests that Apple objected to based on the

6    Discovery Order. After several extensions, Apple served its responses and objections to plaintiffs'

7    Amended Document Requests for production on July 20, 2009, Amended Interrogatories on July 21,

8    2009, and Amended RFAS on July 24, 2009. Exs. 21, 22, 23. Apple uniformly objected to every

9    document request but for most requests stated that it would produce documents. Ex. 21. Apple also

10   objected to Interrogatories 1-3 but stated that it would provide responses after meeting and

11   conferring with Plaintiffs. Ex. 22.

12   Through Amended Request for Production No. 24 Plaintiffs seek "[a]ll complaints and other

13   correspondence from individuals Apple has received regarding the lack of interoperability of iTunes

14   audio and video files with non-Apple digital media players, the iPod and non-Apple audio and video

15   file formats concerning FairPlay DRM and any summaries or analysis of such complaints." Ex. 8 at

16   11. Prior to class certification, Apple produced customer complaints responsive to this request,

17   totaling over 83,000 pages. Roach Decl., ¶5. Apple objected to producing any additional customer

18   complaints stating that "[t]he burden of collecting, reviewing, and producing additional responsive

19   documents, if any, far outweighs the benefits, if any, to plaintiffs of further production." Ex. 21 at

20   20. Apple has never provided any substantiation for its burden claims.

21   Apple also objected to Interrogatories 1-3 and Interrogatory 5. Interrogatory No. 1 asks

22   Apple for the amount of licensing and/or royalty fees Apple paid to companies so that iTunes music

23   software and iPod's could play the MP3 audio file format. Ex. 22 at 5. Interrogatory No. 2 seeks the

24   amount of licensing and/or royalty fees Apple paid to manufacture and sell iPods. *Id.* at 6.

25   Interrogatory No. 3 asks Apple to state the amount in licensing and royalty fees it paid to encode,

26   sell and distribute digital audio and video files on iTS. *Id.* Apple objected to these interrogatories,

27   contending that ██████████████████████████████████████████████

28

1

2          ██████ Ex. 22 at 6-7.

3          On August 10, 2009, Plaintiffs responded by letter, clarified the scope of the requests and

4   sought additional information regarding Apple's objections, including facts in support of its claim

5   that the requests were unduly burdensome.    Ex. 24 at 3.    The parties met and conferred

6   telephonically on August 20, 2009. Ex. 25. At that time, Apple stated that it would propose a list of

7   custodians and search terms specific to the Amended Document Requests by August 27, 2009. *Id.*

8   On August 27, Apple's counsel emailed Plaintiffs' counsel stating that Apple would propose

9   custodians and keywords by September 2 or 3. Ex. 26.

10         On September 1, Plaintiffs' counsel followed up on several outstanding issues with regard to

11  the Amended Document Requests requests including the date of discovery cutoff, Apple's response

12  to Interrogatory No. 5, its supplemental production of customer complaints, and its anticipated

13  proposal of search terms and custodians. Ex. 16. On September 9, Apple's counsel called Plaintiffs'

14  counsel and stated that he would propose search terms by September 15 instead of the originally

15  promised date of September 2 or 3. Roach Decl., ¶24.

16         Again, without receiving any list of proposed search terms or custodians from Apple or a

17  response to their September 1 letter, on September 22, Plaintiffs' counsel again requested an

18  immediate response. Ex. 17. On September 25, Apple's counsel finally responded, stating that it

19  was Plaintiffs not Apple that were the cause of delay in production. Ex. 27. Nonetheless, Apple

20  produced updated organization charts, promised to produce responses to several outstanding

21  document requests, and provided a list of custodians and search terms for the Amended Document

22  Requests. *Id.* The parties again met and conferred telephonically on October 2 regarding several

23  requests. Roach Decl., ¶26. Apple stated that it was still analyzing whether to produce supplemental

24  customer complaints and what type of information could be produced in response to Interrogatories

25  1-3. *Id.*

26         Again on October 13, Plaintiffs expressed frustration with Apple's delayed production,

27  stating, "[y]ou have seemed agreeable and reasonable in our conversations, but we have not seen

28  actual results from the efforts you assure me are going on behind the scenes. I fear we are being

1  stonewalled." Ex. 28 at 2.  Apple responded on October 21 stating, "[w]ith respect to document

2  production, we will produce another installment today or Thursday and will continue to produce on a

3  rolling basis." Ex. 29.  And, once again stated that it was "in the process of supplementing responses

4  to Interrogatories 1-3." *Id.*

5      Plaintiffs received an installment of documents the next day that Apple indicated were

6  primarily responsive to plaintiffs' 30(b)(6) requests. Roach Decl., ¶30.  This production consisted of

7  132 unique documents. *Id.*

8      On October 28, Plaintiffs followed up with Apple by letter and again requested an immediate

9  response to Interrogatories 1-3.  Ex. 30 at 2.  This time, Plaintiffs demanded production of

10  responsive information in the manner in which it is kept by Apple with a description by Apple of the

11  limits of the information. *Id.*  For example, if Apple pays a one time fee for unlimited worldwide

12  use for a year of a certain license it should produce that information and indicate as such. *Id.* at 2-3.

13  Plaintiffs also requested an update on whether Apple would be producing supplemental customer

14  complaints. *Id.* at 2.

15      Apple produced a second installment of documents responsive to the Amended Document

16  Requests on November 5. Roach Decl., ¶32.  While 80 unique documents were produced, the vast

17  majority were responsive to the 30(b)(6) requests. *Id.*  On November 11, Apple responded to

18  Plaintiffs' October 28 letter stating that it had "fifteen lawyers reviewing documents for

19  responsiveness and privilege and have started producing documents on a rolling basis." Ex. 31 at 2.

20  Apple also claimed that "[t]he keywords are still overbroad and need to be narrowed." *Id.*  However,

21  it was primarily Apple that chose the search terms. Apple also once again informed Plaintiffs that it

22  was "still investigating the cost of producing additional customer complaints" and that it

23  "continue[s] to work on obtaining the information for interrogatories 1-3." *Id.*

24      In an effort to resolve the issues without court intervention, Plaintiffs wrote Apple again on

25  November 25 seeking an update on production and inquiring into the process by which documents

26  were being culled, searched and produced. Ex. 18.  On December 7 and 18, a fourth and fifth

27  installment of documents were produced. Roach Decl., ¶35.  However, these documents were again

28

1   only responsive to the 30(b)(6) requests. *Id.* Months later, Apple continues to state that it "is still in

2   the process of collecting, processing, and reviewing documents." Ex. 20.

3        To date, in response to the Amended Document Requests, Apple has produced 20 pages of

4   updated organization charts, five pages of revenue and sales charts previously produced in redacted

5   form, six pages of sales spreadsheets, and an extremely minimal number of documents concerning

6   Apple's assessment of the relevant markets and licensing of FairPlay. Roach Decl., ¶37. No

7   documents responsive to the Amended Document Requests have been produced since November 5.

8   **IV.    APPLICABLE LEGAL STANDARDS**

9        Parties are entitled to discovery regarding any non-privileged matter that is relevant to a

10  claim or defense in the action. Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 37(a)(3)(A)-(B).

11  The scope of discovery is to be construed liberally, and relevance for purposes of discovery is

12  defined "very broadly." *Garneau v. Seattle*, 147 F.3d 802, 812 (9th Cir. 1998); *Fitzgerald v. Cassil*,

13  216 F.R.D. 632, 634 (N.D. Cal. 2003); 7 Moore's Federal Practice & Procedure, §34.12[1] (Mathew

14  Bender 3d ed. 2006). Discovery is appropriate "if there is any possibility that the information sought

15  may be relevant to a claim or defense of any party." *Rialto v. United States Dep't of Def.*, 492

16  F. Supp. 2d 1193, 1202 (C.D. Cal. 2007).

17       A party seeking to withhold discovery has a "heavy burden" of showing why discovery

18  should not be permitted. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975);

19  *Sequoia Prop. Equip. Ltd. P'Ship v. United States*, 203 F.R.D. 447, 451 (E.D. Cal. 2001). When

20  determining whether a discovery request is unduly burdensome, the court must balance the interests

21  of allowing discovery against the burden of the parties. *Sullivan v. Prudential Ins. Co. of Am.*, 233

22  F.R.D. 573, 575 (C.D. Cal. 2005). Conclusory objections that the requests are burdensome are

23  insufficient to meet the resisting party's burden. *Bible v. Rio Props., Inc.*, 246 F.R.D. 614, 619 (C.D.

24  Cal. 2007); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006).

25       As discussed below, Apple cannot meet its "heavy burden" of justifying its refusal and thus

26  should be compelled to produce responsive documents and answer the relevant interrogatories.

27

28

## V. APPLE SHOULD BE ORDERED TO PRODUCE THE REQUESTED DISCOVERY WITHOUT FURTHER DELAY

Plaintiffs have met and conferred extensively with Apple for almost eight months regarding the outstanding discovery requests and have been met, time and time again, with delay. Despite Plaintiffs' repeated efforts to compromise and narrow their requests, Apple has failed to respond to four important interrogatories and has produced an extremely limited universe of documents – 20 pages of supplemented corporate organization charts, five pages of unredacted information previously produced in redacted form prior to class certification, six pages of spreadsheets identifying the number of iPods and iTS files sold, and 465 documents almost entirely responsive only to the 30(b)(6) requests. This, even though Apple has represented that it pulled responsive documents in 2007 and has 15 attorneys reviewing documents for responsiveness and privilege. Dkt. No. 287, ¶7; Exs. 14, 31. Apple has stalled long enough and should be compelled to make a meaningful production.

### A. Apple's Production of Documents Related to Software Updates Is Inadequate and Should Be Supplemented Without Delay

Plaintiffs' Rule 30(b)(6) deposition notice and document requests focus on Apple's use of software updates. Through this motion, Plaintiffs seek three narrow categories of documents relevant to topics previously agreed to by the parties at the end of July 2009, after several meet and confers: (1) software updates that affected competitors' attempts to achieve interoperability; (2) "hacks"; and (3) documents identifying all software updates that concern the ability of an iPod to play non-iTunes files and/or iTunes files to be played on a non-iPod. Despite the parties exhaustive meet and confer efforts, to date, Apple has produced at most 465 documents responsive to Plaintiffs' 30(b)(6) requests concerning software updates. Roach Decl., ¶37. These documents are limited only to emails and email attachments. *Id.* As almost nine months have passed since Apple was served with Plaintiffs' requests, Apple should be compelled immediately to provide a substantial production reflecting all three categories of documents.

Apple cannot seriously dispute the relevance of the requested 30(b)(6) documents. Plaintiffs allege that Apple used software updates to suppress competition in the relevant markets including Apple's use of software updates in 2004 to prevent digital audio files sold through RealNetworks'

1   online store from being played on iPods.  Complaint, ¶¶50-55.  Accordingly, documents identifying

2   software updates that affected competitors, communications concerning these updates, and

3   identification of the people primarily responsible for these software updates go to the very heart of

4   Plaintiffs' monopolization and attempted monopolization claims as they will provide evidence of

5   Apple's anticompetitive conduct. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.

6   Ct. 2380, 57 L. Ed. 2d 253 (1978) (the scope of permissible evidence is extremely broad).

7           As indicated by the documents produced by Apple to date, the requested information will

8   likely reveal that Apple used software updates to maintain exclusive interoperability between iPods

9   and iTS files and iTS files and iPods.  Additionally, the requested documents will likely provide

10  evidence contrary to several of Apple's contentions such as, that the software updates were benign

11  software updates and that Apple acted at the record labels' behest in issuing the relevant software

12  updates. *See, e.g.*, Dkt. No. 177, at 4.  Clearly, the requested documents are directly relevant to both

13  Plaintiffs' claims and Apple's defenses. *See* Fed. R. Civ. P. 26(b)(1).

14          Furthermore, Apple has no legitimate basis for claiming that such production is unduly

15  burdensome.  Plaintiffs have agreed to limit their requests to three narrow topics and have gone to

16  great lengths to compromise on the scope of the requested documents.  The three requested

17  categories of documents – (1) documents concerning software updates that affected competitors'

18  attempts to achieve interoperability; (2) documents concerning "hacks"; and (3) documents

19  identifying and concerning all software updates that concern the ability of an iPod to play non-

20  iTunes files and/or iTunes files to be played on a non-iPod – are sufficiently tailored to address the

21  claims and defenses at issue.  Indeed, Apple does not contest that documents responsive to these

22  requests are irrelevant.  Instead, Apple has stalled production, thus affecting the development of

23  Plaintiffs' case.

24          Apple has never provided an adequate basis for its delay.  In a September 25, 2009 letter

25  responding to Plaintiffs' immediate request for production, Apple disingenuously stated that "[t]he

26  timing of our production is due to the scope of Plaintiffs' discovery requests." Ex. 27.  However, the

27  parties had already reached an agreement on the categories of documents two months earlier and

28  Apple represented to Plaintiffs that a universe of responsive documents was previously culled in

2007 and was being reviewed. Ex. 14. Still, Plaintiffs did not receive their first production, which consisted of a mere 35 unique documents, until October 15, 2009, over six months after serving their requests. Roach Decl., ¶28.

Moreover, it was Apple, not Plaintiffs, that proposed the initial list of search terms and custodians used to locate responsive documents. Ex. 14. Still, Apple continues to delay production while at the same time claiming that 15 attorneys are reviewing documents. Dkt. No. 287, ¶7. Apple has not indicated when production on these topics will be complete so that Plaintiffs can move forward with the noticed 30(b)(6) deposition.

Finally, Apple has not provided any basis for limiting its production to emails and email attachments. Certainly, documents other than just emails are discoverable.

Accordingly, Apple should be compelled to produce without further delay: (1) documents concerning software updates that affected competitors' attempts to achieve interoperability; (2) documents concerning "hacks"; and (3) documents identifying and concerning all software updates that concern the ability of an iPod to play non-iTunes files and/or iTunes files to be played on a non-iPod.

**B.    Apple Should Be Compelled to Provide Supplemental Production of Customer Complaints**

Through Amended Document Request No. 24 Plaintiffs seek: "All complaints and other correspondence from individuals Apple has received regarding the lack of interoperability of iTunes audio and video files with non-Apple digital media players, the iPod and non-Apple audio and video file formats concerning FairPlay DRM and any summaries or analysis of such complaints." Ex. 8 at 11.

In response to this request Apple stated:

> Apple asserts the Vague and ambiguous, Privilege, Confidential Information, Burden, and E-Discovery objections. Apple objects to the term "concerning" as vague, ambiguous, overbroad, and unduly burdensome.

> Subject to and without waiving these objections and the General Objections, Apple will produce non-privilege documents that contain substantial discussion of or analyze Apple's response to RealNetworks Harmony Technology, if any, located after searching custodian files mostly likely to contain a substantial number of relevant documents.

1  Ex. 21 at 20.

2      In subsequent meet and confer discussions, Plaintiffs explained the relevance of the

3  production and requested that Apple substantiate the burden it claimed justified its refusal to produce

4  such obviously relevant documents. Ex. 24. However, Apple never provided any substantiation for

5  its burden claim. To date, Apple continues to state that it is "investigating" the burden involved.

6  Exs. 27, 31. Most recently, on November 11, 2009, almost six months after Plaintiffs' requests were

7  served, Apple continued to claim that it was "still investigating the costs of producing additional

8  customer complaints." Ex. 31 at 2. This was only after Plaintiffs inquired, yet again, into the burden

9  involved in producing such documents. Ex. 30.

10      Blanket claims of burden without support of fact are insufficient. *See A. Farber*, 234 F.R.D.

11  at 188 ("general or boilerplate objections such as 'overly burdensome and harassing' are improper-

12  especially when a party fails to submit any evidentiary declarations supporting such objections").

13  Here, Apple has not provided any facts to support its burden claim and instead merely pushes off the

14  issue with claims that it is "still investigating." Accordingly, this objection is without merit.

15      Moreover, the burden involved in producing these customer complaints is certainly

16  outweighed by their relevance. Plaintiffs specifically seek complaints from customers concerning

17  the lack of interoperability of iTS files and non-iPods and iPods and non-iTS files. These complaints

18  go to the heart of Plaintiffs' monopoly claims. Complaint, ¶¶21-24, 42, 44-45. Indeed, the customer

19  complaints produced to date reveal that numerous consumers – over 83,000 pages worth –

20  complained to Apple concerning a lack of continued interoperability. Roach Decl., ¶5.

21      Apple's previous production of customer complaints however, ends in mid-2007. *Id.* There

22  are several relevant events not fully captured in these complaints or captured at all. For example,

23  record label EMI began selling digital audio files through iTS in April 2007 that did not contain

24  DRM.[3] Additionally, in the beginning of 2009, iTS began selling all digital music files without

25

26

---

27  [3]      Apple Press Release, "Apple Unveils Higher Quality DRM-Free Music on the iTunes Store," (last viewed December 21, 2009), available at http://www.apple.com/pr/library/2007/04/02itunes.html.

28

PLTFS' MTN TO COMPEL FURTHER RESPONSE FROM DEF APPLE, INC. - C-05-00037-JW(RS)      - 15 -

FairPlay.[4]   The effect of these events on customers' ability to use their iPods and iTS files interoperably with competing products is not reflected in Apple's previous production of complaints. This is important because despite Apple's eventual elimination of FairPlay, purchasers were left with billions of previously-purchased iTS files containing FairPlay.[5]   Additionally, the number of complaints is also relevant as it rebuts Apple's contention that class members are "perfectly happy" with their FairPlay-locked iTS files.  Ex. 34 at 27:3.

These complaints also reveal that Apple was aware throughout the class period that purchasers of iPods wanted to play non-iTS files and purchasers of iTS files wanted to play them directly on non-iPods. *See Sanbrook v. Office Depot*, No. C-07-5938 RMW (PH) 2009 WL 840019, at *2 (N.D. Cal. Mar. 30, 2009) (customer complaints relevant to show knowledge at particular points in time).

Because customer complaints throughout the entire class period are highly relevant to Plaintiffs' claims and Apple is unable to demonstrate any burden, Apple should be compelled to provide immediate supplemental production.

### C.    Apple Should Be Compelled to Provide Responses to Interrogatories 1-3, and 5 Concerning Identification of Licenses and Licensing Costs

Through several of their Amended Interrogatories Plaintiffs seek information concerning the cost for royalties paid by Apple for particular licenses.  Interrogatory No. 1 states: "How much do and/or did you pay in licensing fees to Thomson, Fraunhofer-Gesellschaft, and other companies, in royalty and/or licensing fees so that iTunes music software and iPod's could play the MP3 audio file format?  Give the total figure for each year since 2001."  Ex. 9 at 6.  Apple responded:



---

[4]    Apple Press Release, "Changes Coming to the iTunes Store," (last viewed December 21, 2009), available at http://www.apple.com/pr/library/2009/01/06itunes.html.

[5]    *See id.* (requiring purchasers of previously purchased iTS files containing FairPlay to pay an additional 30 cents per song or 30 percent of the album price to remove FairPlay).

1

2

3

4



5

Ex. 22 at 5-6.

6

7      Similarly, Interrogatory No. 2 states: "In a similar manner, list the total amount of licensing

8  fees and royalties by year Apple must pay to manufacture and sell the iPod." Ex. 9 at 6. Apple

9  responded:

10

11

12

13

14

15

16  Ex. 22 at 6. Interrogatory No. 3 states: "State the total amount in licensing and royalty fees by year

17  Apple must pay to encode, sell and distribute digital audio files and digital video files on the iTunes

18  Store." Ex. 9 at 6. Apple responded:

19

20

21

22

23

24

25

26  Ex. 22 at 6-7.

27      Although Apple does not contest the relevancy of these requests and despite Plaintiffs'

28  several attempts to meet and confer with Apple concerning these requests, Apple continues to delay

production of any responsive information. In an August 10 letter to Apple, Plaintiffs sought specific information on the manner in which Apple keeps responsive information. Ex. 24 at 5. Plaintiffs stated, "With respect to Apple's contention that it only maintains information responsive to these Interrogatories on a worldwide basis, Plaintiffs request more detail on the manner in which the information is kept." *Id.* During an August 20 telephonic meet and confer, Apple stated that it was willing to supplement responses for these interrogatories once it could determine how the information was kept. Ex. 25. Apple's counsel stated by way of example that royalties Apple pays for the MP3 format could be produced on a United States basis, but manufacturing licenses for iPods are kept mostly on a worldwide basis. Roach Decl., ¶20.

Despite these representations in August, Apple has made no effort to provide any supplementation of its responses. Nor has Apple made any effort to provide Plaintiffs with additional information on the manner in which the responsive information is kept. Since August 20, 2009, Plaintiffs have made at least four separate requests for this information. *See* Roach Decl., ¶26; Exs. 17, 28, 30. On October 28, 2009, Plaintiffs sought immediate production of responsive information even if kept on a non-U.S. basis. Ex. 30 at 2. Plaintiffs stated, "Apple must produce the information in the manner that it is kept but can provide a description of the limitation of the data (*e.g.* paid X for Y license for one year unlimited)." *Id.* at 2-3. Apple seemingly refused. In its November 11 response, Apple stated once again, "[w]e continue to work on obtaining the information for interrogatories 1-3." Ex. 31 at 2.

Accordingly, Apple should be compelled to provide an immediate response to Interrogatories 1-3.

Similarly, Apple should be compelled to provide a response to Interrogatory 5. This Interrogatory states: "List all licenses and royalties, including the amount of the fee or royalty and what the fee or royalty is for, that you paid any company during calendar year 2005 and the same figure for the most recent 12 month period in which you have the data available, (*e.g.*, the 12 months ending September 30, 2006)." Ex. 9 at 6-7. Apple objected to this Interrogatory stating:

█████████████████████████████████████████████

Ex. 22 at 8. In their August 10 meet and confer letter, Plaintiffs clarified that this request is limited to consumer electronics sold by Apple and is relevant to, *inter alia*, certain economics models which assess antitrust impact and damages by looking at a defendant's costs and margins in more competitive markets. Ex. 24 at 5.

Information responsive to Interrogatory 5 is indeed relevant to the mark-up method proposed by Plaintiffs' expert to calculate damages and impact. Dkt. No. 166, Exhibit 1 at 58-59. The mark-up method determines whether the product at issue, the iPod, has a substantially greater mark-up than a group of competitive benchmark products. *Id.* at 58. Some competitive benchmarks commonly used are defendant's own mark-ups in more competitive markets or typical mark-ups in the same industry. *Id.* Accordingly, discovery related to Apple's costs and mark-ups in other more competitive consumer electronic markets, including licensing costs, is relevant and should be produced.

### D. Apple Should Be Compelled to Produce Documents Responsive to the Amended Document Requests Without Further Delay

Apple has successfully dragged its feet in the production of documents responsive to Plaintiffs' Amended Document Requests. Despite its representations that a universe of responsive documents were previously pulled in 2007 and that 15 attorneys are reviewing these documents, Apple has yet to make any meaningful production in response to these requests. In the almost seven months since being served with Plaintiffs' requests, Apple has produced less than 100 documents in response. As Apple has provided no justification for its delay in a meaningful production, it can only be assumed that Apple is ignoring its duty to produce.

On August 12, 2009, Apple first represented to Plaintiffs that it had previously pulled documents from certain custodians' records in 2007 when Plaintiffs' first served their document

requests.[6] Ex. 14.  Apple stated that the proposed search terms would be used to search through the pulled documents and documents after 2007 would be pulled according to the custodians and search terms.  *Id.*  Despite already having done at least some of this work back in 2007 and making repeated promises to Plaintiffs, Apple failed to provide Plaintiffs with search terms or custodians until the end of September and only after Plaintiffs threatened to seek court intervention. Exs. 17, 27.

In its most recent correspondence with Plaintiffs' counsel, Apple again stated that it had indeed "collected documents in 2007" but was "in the process of updating those collections." Ex. 20.  It remains unclear to Plaintiffs why search terms and custodians were proposed for these requests if responsive documents were culled in 2007.   Additionally, the process by which documents were pulled in 2007 is unknown and has never been sufficiently explained by Apple. Plaintiffs have inquired into Apple's production process and have not been provided with a straight answer.  Apple merely reiterates that it did pull documents in 2007 and is updating that production. Roach Decl., ¶36.  Yet, to date, Plaintiffs have only received less than 100 documents.

Apple has failed to give Plaintiffs any clear indication why production is delayed.  Apple proposed the search terms and custodians it is now using presumably based on knowledge of the documents at issue, thus any claim of burden rests solely on Apple.  Plaintiffs remain at a severe disadvantage to negotiate the terms and custodians given the extremely limited number of documents produced to date.  Without Court intervention compelling Apple to make a meaningful production, Plaintiffs are unable to move forward to refine the terms or with the litigation in general.

As Apple admits by its 2007 pull of documents, Apple has been aware of Plaintiffs' requests for over two years.  It should now be compelled to produce responsive documents without further delay.

---

[6]     Although not entirely clear from Apple's representations, it appears that the 2007 document pull was in response to the requests served by Plaintiff Melanie Tucker on January 18, 2007. Ex. 14.

1  **VI.  CONCLUSION**

2      For the foregoing reasons, Plaintiffs' motion to compel should be granted.

3  DATED:  January 5, 2010                    Respectfully submitted,

4                                             COUGHLIN STOIA GELLER
                                                RUDMAN & ROBBINS LLP
5                                             JOHN J. STOIA, JR.
                                             BONNY E. SWEENEY
6                                             THOMAS R. MERRICK
                                             PAULA M. ROACH

7

8                                             _____s/ Bonny E. Sweeney_____
9                                                   BONNY E. SWEENEY

10                                            655 West Broadway, Suite 1900
                                             San Diego, CA  92101
11                                            Telephone:  619/231-1058
                                             619/231-7423 (fax)

12
                                             THE KATRIEL LAW FIRM
13                                            ROY A. KATRIEL
                                             1101 30th Street, N.W., Suite 500
14                                            Washington, DC  20007
                                             Telephone:  202/625-4342
15                                            202/330-5593 (fax)

16                                            Co-Lead Counsel for Plaintiffs

17                                            BONNETT, FAIRBOURN, FRIEDMAN
                                                & BALINT, P.C.
18                                            ANDREW S. FRIEDMAN
                                             FRANCIS J. BALINT, JR.
19                                            ELAINE A. RYAN
                                             TODD D. CARPENTER
20                                            2901 N. Central Avenue, Suite 1000
                                             Phoenix, AZ  85012
21                                            Telephone:  602/274-1100
                                             602/274-1199 (fax)

22
                                             BRAUN LAW GROUP, P.C.
23                                            MICHAEL D. BRAUN
                                             12304 Santa Monica Blvd., Suite 109
24                                            Los Angeles, CA  90025
                                             Telephone:  310/442-7755
25                                            310/442-7756 (fax)

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MURRAY, FRANK & SAILER LLP
BRIAN P. MURRAY
JACQUELINE SAILER
275 Madison Avenue, Suite 801
New York, NY 10016
Telephone: 212/682-1818
212/682-1892 (fax)

GLANCY BINKOW & GOLDBERG LLP
MICHAEL GOLDBERG
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: 310/201-9150
310/201-9160 (fax)

Additional Counsel for Plaintiffs

S:\CasesSD\Apple Tying\secy\MOT 00063699_redacted.doc

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on January 5, 2010, I electronically filed the foregoing with the Clerk of

3

the Court using the CM/ECF system which will send notification of such filing to the e-mail

4

addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

5

mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

6

participants indicated on the attached Manual Notice List.

7

I certify under penalty of perjury under the laws of the United States of America that the

8

foregoing is true and correct. Executed on January 5, 2010.

9

s/ Bonny E. Sweeney
BONNY E. SWEENEY

10

11

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900

12

San Diego, CA 92101-3301
Telephone: 619/231-1058

13

619/231-7423 (fax)
E-mail:bonnys@csgrr.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 5:05-cv-00037-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Todd David Carpenter**
  tcarpenter@bffb.com

- **Andrew S. Friedman**
  rcreech@bffb.com,afriedman@bffb.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com

- **Roy A. Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com,valdajani@jonesday.com

- **Thomas Robert Merrick**
  tmerrick@csgrr.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com,ewallace@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,ybennett@jonesday.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **Paula Michelle Roach**
  proach@csgrr.com

- **Elaine A. Ryan**

eryan@bffb.com,pjohnson@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Adam Richard Sand , Esq**
  invalidaddress@invalidaddress.com

- **Michael Tedder Scott**
  michaelscott@jonesday.com,gwayte@jonesday.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **John J. Stoia , Jr**
  jstoia@csgrr.com

- **Tracy Strong**
  invalidaddress@invalidaddress.com

- **Bonny E. Sweeney**
  bonnys@csgrr.com,proach@csgrr.com,E_file_sd@csgrr.com,christinas@csgrr.com

- **Helen I. Zeldes**
  helenz@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)