# EXHIBIT 18



COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

SAN DIEGO · SAN FRANCISCO
NEW YORK · BOCA RATON
WASHINGTON, DC · ATLANTA
LOS ANGELES · PHILADELPHIA

Paula M. Roach
proach@csgrr.com

November 25, 2009

<u>VIA E-MAIL AND U.S. MAIL</u>

David C. Kiernan
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104

Re:   *The Apple iPod iTunes Anti-Trust Litigation,*
      No. C-05-00037-JW (N.D. Cal.)

Dear David:

I write in response to your November 11, 2009 letter and to follow up on document production received from Apple to date.

In your November 11 letter you asked Plaintiffs to identify why Katie Cotton, Alex Luke and Robert Kondrk should be included as custodians for the 30(b)(6) production.

Plaintiffs also seek clarification on Apple's document search process.  Plaintiffs understood that Apple was searching the files of certain custodians (initially identified by Apple and supplemented by Plaintiffs) using the agreed upon search terms.  However, highly relevant emails have been produced that do not include any of the identified custodians.  If the burden of searching for documents without identified custodians is minimal, Plaintiffs believe that this is the most appropriate manner in which to proceed given the relevance of these documents.  Please clarify the process by which Apple is proceeding.

Additionally, in Plaintiffs' October 28, 2009 letter, we sought clarification on whether Apple was searching for documents post-2007.  You previously stated that documents culled in 2007 would be searched in addition to documents created after the 2007 cull date.  To date,



COUGHLIN
STOIA
GELLER
**&** RUDMAN
ROBBINS LLP

David C. Kiernan
November 25, 2009
Page 2

we have not received any emails past 2006. As you know, Plaintiffs seek documents up to the present, unless otherwise indicated. Please clarify this issue.

Moreover, the production in response to both Plaintiffs' 30(b)(6) requests and amended document requests appears to only include emails and email attachments. Please confirm whether other documents, including hard copy documents, are being produced. Also, please confirm whether other forms of internal written communications, such as instant messaging systems, are being searched.

Please feel free to contact me if you have any questions.

Very truly yours,

*Paula Roach*

PAULA M. ROACH

PMR:tlc
cc:    Bonny Sweeney (via e-mail)
       Thomas R. Merrick (via e-mail)
       Robert A. Mittelstaedt (via e-mail)

S:\CasesSD\Apple Tying\Corres\PR_Kiernan 112509.doc

# EXHIBIT 19

**Paula Roach**

| | |
|---|---|
| **From:** | Michael Scott [michaelscott@jonesday.com] |
| **Sent:** | Wednesday, December 02, 2009 6:21 PM |
| **To:** | Paula Roach |
| **Cc:** | David Kiernan |
| **Subject:** | Fw: Apple iPod iTunes |

Hi Paula,

We are hoping (not promising) to produce documents on Friday or Monday, and plan to respond to your letter at that time.

I hope you had a good holiday.
Mike

Michael Scott
Jones Day
555 California St., 26th floor
San Francisco, CA  94104
(415) 875-5874 (phone)
(415) 963-6855 (fax)

----- Forwarded by Michael Scott/JonesDay on 12/02/2009 06:17 PM -----

| | |
|---|---|
| From: | David Kiernan/JonesDay |
| To: | Michael Scott/JonesDay@JonesDay |
| Date: | 12/02/2009 05:45 PM |
| Subject: | Fw: Apple iPod iTunes |

David C. Kiernan
Jones Day
555 California Street, 26th Floor
San Francisco, California 94104
Phone (415) 875-5745
Fax (415) 875-5700

----- Forwarded by David Kiernan/JonesDay on 12/02/2009 05:45 PM -----

| | |
|---|---|
| From: | "Paula Roach" <proach@csgrr.com> |
| To: | <dkiernan@jonesday.com> |
| Date: | 12/02/2009 04:34 PM |
| Subject: | Apple iPod iTunes |

12/30/2009

David,

I am following up on the letter I sent to you dated 11/25 concerning Apple's document production. I know we just had a holiday weekend but I want to make sure this gets back on your radar if it is not already.  Please let me know when I can expect a response.  Also, when can we expect the next round of document production from Apple?  The last production was on 11/5/09.

Thank you.

Paula M. Roach
COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
655 W. Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058 phone
(619) 231-7423 fax
www.csgrr.com

NOTICE: This email message is for the sole use of the intended
recipient(s) and may contain information that is confidential and
protected from disclosure by the attorney-client privilege, as
attorney work product, or by other applicable privileges.  Any
unauthorized review, use, disclosure or distribution is prohibited.
If you are not the intended recipient, please contact the sender
by reply email and destroy all copies of the original message.

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by
attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without
copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

12/30/2009

# EXHIBIT 20

# JONES DAY

555 CALIFORNIA STREET, 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: 415-626-3939 • FACSIMILE: 415-875-5700

Direct Number: (415) 875-5745
dkiernan@jonesday.com

JP006236:dk                          December 14, 2009
825624-605002

VIA EMAIL

Paula Roach
Couglin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101-8498

    Re:    *The Apple iPod iTunes Antitrust Litigation*, No C-05-00037 JW (N.D. Cal)

Dear Paula:

        This letter responds to your November 25, 2009 letter.

        We are still considering your request for documents from Robert Kondrk and Alex Luke.

        Apple does not agree at this time to incur the burdensome cost of collecting, processing, reviewing, and producing documents from Katie Cotton given the tenuous relationship between her role as Apple's press contact and plaintiffs' claims. Apple proposes deferring this issue until it completes producing documents from the custodians to which the parties have agreed. If at that time plaintiffs still believe they need Ms. Cotton's documents, we can discuss then.

        With respect to Apple's document search process, Apple is still in the process of collecting, processing, and reviewing documents. Apple is running the search terms agreed to by the parties against data collected from the agreed upon custodians. As David indicated before, Apple collected documents in 2007 and is in the process of updating those collections. Apple is collecting instant messages and hard copy documents to the extent custodians have instant messages or hard copy documents relevant to the claims and defenses in this case.

        Please feel free to call me with any questions.

                                        Sincerely,

                                        Michael Scott

cc:    Robert Mittelstaedt
       David Kiernan

SFI-625243v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MUMBAI • MUNICH • NEW DELHI • NEW YORK
PARIS • PITTSBURGH • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

# EXHIBIT 21

1   Robert A. Mittelstaedt #060359
    David C. Kiernan #215335
2   Michael T. Scott #255282
    JONES DAY
3   555 California Street, 26th Floor

1   Robert A. Mittelstaedt #060359
    David C. Kiernan #215335
2   Michael T. Scott #255282
    JONES DAY
3   555 California Street, 26th Floor
    San Francisco, CA  94104
4   Telephone:  (415) 626-3939
    Facsimile:  (415) 875-5700
5   ramittelstaedt@jonesday.com
    dkiernan@jonesday.com
6

7                               RECEIVED JUL 2 3 2009
    Attorneys for Defendant
8   APPLE INC.

9

                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11

12

13   **THE APPLE iPOD iTUNES ANTI-TRUST**      **Case No. C 05-0037 JW(RS)**
    **LITIGATION**
14                             **CLASS ACTION:**

15
    This Document Relates to:                **DEFENDANT APPLE INC.'S**
16                             **RESPONSE TO PLAINTIFFS'**
                              **AMENDED FIRST SET OF**
17         ALL ACTIONS.               **REQUESTS FOR PRODUCTION OF**
                              **DOCUMENTS**
18

19

20

21

22

23

24

25

26

27

28

Pursuant to Federal Rule of Civil Procedure 34, Apple Inc. ("Apple") hereby responds and objects to Plaintiffs' Amended First Set of Requests for Production of Documents ("Document Requests") served May 22, 2009. Pursuant to the agreement reached by the parties, this response is timely. The parties are continuing to negotiate the appropriate scope of the Document Requests, and Apple is hopeful that an acceptable compromise will be reached. Depending on the course of continuing negotiations, Apple reserves the right to revise or supplement these responses.

**GENERAL OBJECTIONS**

Apple asserts the following general objections. Each individual response is subject to, and is limited in accordance with, the following General Objections.

1.      Apple will conduct a diligent search of its files that is reasonable under the circumstances, and it will produce non-privileged documents in its possession, custody and control, if any, in accordance with its Responses to each individually numbered Request.

2.      Apple reserves the right to object on any ground, including authenticity and admissibility, to the use of these responses or any documents produced pursuant to these responses for any purpose in this action, including at trial.

3.      No admission of any kind is to be implied or inferred from these responses. The fact that any Document Request has been responded to is not an admission or concession of the existence of any facts set forth or assumed by such Document Request or that the response constitutes evidence of any fact set forth or assumed. Moreover, any agreement to produce documents responsive to a particular Document Request does not imply that responsive documents exist.

4.      Apple objects to the "Definitions," "Instructions," and each Document Request to the extent that they seek to impose obligations beyond those imposed by the Federal Rules of Civil Procedure, Local Rules of this Court or any order entered by the Court in this action.

5.      Apple objects to each Document Request to the extent that it calls for the production of documents or information protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine or any other applicable privilege or doctrine. No such documents or information will be produced, and any

1    inadvertent production shall not be deemed a waiver of any privilege or protection.  For purposes

2    of responding to plaintiffs' Document Requests, Apple will refer to this objection as the

3    "Privilege Objection."

4          6.     Apple objects to this discovery to the extent it purports to require Apple to disclose

5    trade secrets, proprietary information, other confidential commercial information or sensitive

6    information.  This objection will hereafter be referred to as the "Confidential Information

7    Objection."

8          7.     Apple objects to this discovery to the extent that the terms used are so amorphous

9    and overbroad that they either make the request if literally read so overbroad and burdensome as

10   to be unreasonable and beyond the bounds of relevance and/or make it difficult for Apple to

11   ascertain, with specificity sufficient to allow defendant to conduct a search, what materials

12   plaintiff is seeking.  This objection will hereafter be referred to as the "Vague and Ambiguous

13   Objection."

14         8.     Apple objects to this discovery to the extent the scope of the requests is overbroad

15   and burdensome.  This occurs when the discovery seeks information that is not reasonably

16   calculated to lead to the discovery of admissible evidence or where the burden of producing the

17   requested material far outweighs its relevance to the claims or defenses or the benefit to plaintiffs.

18   Apple further objects to each Document Request to the extent that it requests "all" documents

19   ever created, sent to, received or used by Apple regardless of their materiality and relevance, as

20   such requests are overbroad and unduly burdensome.  Apple will produce non-privileged

21   documents located after searching custodian files mostly likely to contain a substantial number of

22   relevant documents.  This objection will hereafter be referred to as the "Burden Objection."

23         9.     Apple objects to the burden associated with producing "all" documents when in

24   many instances documents "sufficient to show" representative, responsive information will

25   mitigate any undue burden and costs a request would otherwise impose on Apple.  Apple is

26   prepared to meet-and-confer to agree on the aspects of these requests that can be satisfied by a

27   "sufficient to show" production.  Apple will refer to this objection as the "'Sufficient to Show'

28   Objection."  Apple's production will be on a "Sufficient to Show" basis wherever this objection is

1 made, unless the parties agree otherwise.

2     10.    Apple objects to this discovery to the extent it imposes on Apple an obligation to

3 search for and produce materials unrelated to the geographic scope at issue in this case. For

4 example, Apple will not produce information or documents discussing any geographic regions

5 outside the United States. This objection will hereafter be referred to as the "Geographic

6 Location Objection."

7     11.    Apple objects to the extent that this discovery violates the applicable procedural

8 statutes or rules to the extent that it is compound, conjunctive or disjunctive, resulting in

9 plaintiff's disguising the true amount of discovery they are taking and makes the call of the

10 request for production misleading or impossible to ascertain. This objection will hereafter be

11 referred to as the "Compound Objection."

12     12.    By responding to a Document Request with a defined term, Apple is not by

13 implication agreeing with any such definition.

14     13.    Apple objects to the definition of "Apple" as overbroad and ambiguous.

15 Defendants will interpret "Apple" to be a reference to Apple Inc. and its relevant U.S. activities.

16     14.    Apple objects to the definition of "Communications" as overbroad and

17 burdensome, especially to the extent it seeks to incorporate communications in which neither

18 Apple nor its agents participated and that are available to plaintiffs through other means.

19     15.    Apple objects to the definition of "Concerning" as overbroad and burdensome.

20 Apple will interpret "concerning" to have its ordinary, common sense meaning.

21     16.    Apple objects to the definition of "Digital audio file" as overbroad, unduly

22 burdensome, and oppressive. Apple further objects to the definition to the extent it seeks

23 documents that are not relevant to the claims or defenses in this action or not reasonably

24 calculated to lead to the discovery of admissible evidence. Apple will interpret "Digital audio

25 file" to mean digital music files.

26     17.    Apple objects to the definition of "Documents" and "Electronic Data" as

27 overbroad and burdensome. Subject to its objections, Apple will interpret "Documents" and

28 "Electronic Data" to have the same meaning as the reference to "documents" and "electronically

1  stored information," respectively, set forth in Federal Rule of Civil Procedure 34.

2       18.    Apple objects to each Document Request to the extent "Documents" is defined to

3  include electronically stored information or "Electronic Data" without a reasonable limitation as

4  to scope of custodians, location of data, date, file type, and search terms.  Apple will meet and

5  confer with plaintiffs regarding a cost-effective method of identifying and producing

6  electronically stored information, including without limitation the use of search terms and

7  deduplication and reasonable limitations as to custodians, location of data, date, and file type.

8  Apple will produce electronically stored information pursuant to the terms of the Stipulation and

9  Order Governing Electronic Discovery Formats entered in this action.  Consistent with Federal

10  Rule of Civil Procedure 34(b)(2)(E)(iii), the electronically stored information will only be

11  produced in one form.  Apple will refer to this as the "E-Discovery Objection."

12       19.    Apple objects to the definition of "Financial statements" as overbroad, unduly

13  burdensome, vague, and ambiguous.  Apple will interpret "Financial statements" to include

14  audited or unaudited balance sheets, income statements, and cash flow statements.

15       20.    Apple objects to the definition of "iPod" to the extent that it includes iPhone as

16  overbroad and unduly burdensome, as any relevancy is clearly outweighed by the undue burden

17  involved in identifying, reviewing, and producing the detailed discovery requested.  Apple will

18  interpret "iPod" to exclude the iPhone.

19       21.    Apple objects to the definition of "Labels" as overbroad, burdensome, vague, and

20  ambiguous to the extent it purports to include entities that may not be known or readily

21  identifiable by Apple.

22       22.    Apple objects to the definition of "Online music store" as overbroad, burdensome,

23  vague, and ambiguous to the extent it purports to include stores that may not be known or readily

24  identifiable by Apple.

25       23.    Apple objects to the definition of "Portable digital media player" as overbroad,

26  burdensome, vague, and ambiguous to the extent it purports to include players that may not be

27  known or readily identifiable by Apple.

28       24.    Apple objects to the definitions that are not incorporated into the Document

1 │ Requests as vague and ambiguous.  Apple is not relying upon them in its responses.

2 │ 25.     Apple objects to the third and fifth instructions to the extent they purport to impose

3 │ on Apple a greater obligation than Federal Rule of Civil Procedure 34.  Apple will comply with

4 │ Rule 34.  In response to these Document Requests, Apple will produce copies of documents in its

5 │ possession, custody or control.  In addition, Apple will produce electronically stored information

6 │ pursuant to the terms of the Stipulation and Order Governing Electronic Discovery Formats

7 │ entered in this action.

8 │ 26.     Apple objects to the sixth and eighth instructions to the extent they purport to

9 │ impose on Apple a greater obligation than the Federal Rules of Civil Procedure.  Apple will

10 │ comply with Rule 26(b)(5).  Apple will not include on the privilege log documents prepared by

11 │ in-house counsel or outside counsel for Apple during the course of this litigation and asserts

12 │ privilege and work product as to all such documents that have not been communicated to anyone

13 │ outside of Apple or Jones Day or that were created as part of attorney work product.

14 │ 27.     Apple objects to the seventh and ninth instructions to the extent they purport to

15 │ impose on Apple a greater obligation than Federal Rule of Civil Procedure 34.  Apple will

16 │ comply with Rule 34.

17 │ 28.     Apple objects to the eighth instruction to the extent it purports to impose on Apple

18 │ a greater obligation than Federal Rule of Civil Procedure 34.  Subject to the objections set forth

19 │ regarding the privilege log, Apple will comply with Rule 34.

20 │ 29.     Apple objects to the tenth instruction to the extent it purports to impose on Apple a

21 │ greater obligation than Federal Rule of Civil Procedure Rule 26(e).  Apple will comply with Rule

22 │ 26(e).

23 │ 30.     Apple objects to the instruction that responsive documents be made available for

24 │ inspection at the office of Coughlin Stoia Geller Rudman & Robbins LLP, 655 West Broadway,

25 │ Suite 1900, San Diego, California 92101.  Apple will make documents available for inspection at

26 │ Jones Day's offices in San Francisco, California after the scope of these requests is established by

27 │ agreement of the parties or order of the Court so that Apple does not need to make duplicative

28 │ searches.  Apple is willing to meet-and-confer about the logistics for transport of responsive

1  documents to Coughlin Stoia, at plaintiffs' expense.

2  **RELEVANT TIME PERIOD**

3  Apple objects to the "Relevant Time Period" defined by plaintiffs as overbroad, unduly

4  burdensome, and oppressive, and seeking information that is not relevant to the claims or

5  defenses in this action or not reasonably calculated to lead to the discovery of admissible

6  evidence. Apple will treat the relevant time period as April 28, 2003 through March 31, 2009.

7  Apple will produce responsive documents created or dated on or after April 1, 2002 to account for

8  activity relating to the launch of the iTunes Music Store.

9  **SPECIFIC RESPONSES TO DOCUMENT REQUESTS**

10  **DOCUMENT REQUEST NO. 1:**

11  All documents concerning or discussing the market for Apple's iPods in the United States.

12  **RESPONSE TO DOCUMENT REQUEST NO. 1:**

13  Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

14  Sufficient to Show, and E-Discovery objections. Apple objects to the term "concerning" as vague,

15  ambiguous, overbroad, and unduly burdensome. Apple further objects to the term "market" as

16  undefined, vague, ambiguous, overbroad, and unduly burdensome. Apple further objects to the

17  term "market" to the extent that it is intended to refer to a legal or expert opinion or conclusion

18  relating to the relevant antitrust product market. Such a request is premature, as the scope of the

19  relevant market will be the subject of expert discovery.

20  Subject to and without waiving these objections and the General Objections, Apple will

21  produce non-privileged documents that contain substantial discussion of competition for iPods in

22  the United States, if any, located after searching custodian files mostly likely to contain a

23  substantial number of relevant documents.

24  **DOCUMENT REQUEST NO. 2:**

25  All documents concerning or discussing the market for digital video files purchased from

26  Apple's iTunes store in the United States.

27  **RESPONSE TO DOCUMENT REQUEST NO. 2:**

28  Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

1    Sufficient to Show, and E-Discovery objections.  Apple objects to the term "concerning" as vague,

2    ambiguous, overbroad, and unduly burdensome.  Apple objects to the term "market" as undefined,

3    vague, ambiguous, overbroad, and unduly burdensome.  Apple further objects to the term

4    "market" to the extent that it is intended to refer to a legal or expert opinion or conclusion relating

5    to the relevant antitrust product market.  Such a request is premature, as the scope of the relevant

6    market will be the subject of expert discovery.

7          Subject to and without waiving these objections and the General Objections, Apple will

8    produce non-privileged documents that contain substantial discussion of competition for digital

9    video files purchased from Apple's iTunes Store in the United States, if any, located after

10   searching custodian files mostly likely to contain a substantial number of relevant documents.

11   **DOCUMENT REQUEST NO. 3:**

12         All documents concerning or discussing the market for digital audio files purchased from

13   Apple's iTunes store in the United States.

14   **RESPONSE TO DOCUMENT REQUEST NO. 3:**

15         Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

16   Sufficient to Show, and E-Discovery objections.  Apple objects the to term "concerning" as vague,

17   ambiguous, overbroad, and unduly burdensome.  Apple objects to the term "market" as undefined,

18   vague, ambiguous, overbroad, and unduly burdensome.  Apple further objects to the term

19   "market" to the extent that it is intended to refer to a legal or expert opinion or conclusion relating

20   to the relevant antitrust product market.  Such a request is premature, as the scope of the relevant

21   market will be the subject of expert discovery.

22         Subject to and without waiving these objections and the General Objections, Apple will

23   produce non-privileged documents that contain substantial discussion of competition for digital

24   music files purchased from Apple's iTunes Store in the United States, if any, located after

25   searching custodian files mostly likely to contain a substantial number of relevant documents.

26   **DOCUMENT REQUEST NO. 4:**

27         All documents discussing the Digital Millennium Copyright Act.

28   **RESPONSE TO DOCUMENT REQUEST NO. 4:**

SF1-613507v1                                    - 8 -                   DEFENDANTS' RESPONSE TO
                                                                       PLAINTIFFS' Am RFPs C 05-0037 JW(RS)

1   Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

2   and E-Discovery objections. Apple further objects that documents discussing the Digital

3   Millennium Copyright Act are not relevant to the claims or defenses in this action and thus are

4   beyond the scope of permissible discovery.

5   **DOCUMENT REQUEST NO. 5:**

6   All documents concerning, analyzing or discussing Apple's use of a DRM other than

7   FairPlay.

8   **RESPONSE TO DOCUMENT REQUEST NO. 5:**

9   Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

10   Geographic Location Objection, and E-Discovery objections. Apple objects to the term

11   "concerning" as vague, ambiguous, overbroad, and unduly burdensome. Apple further objects to

12   this request to the extent that it requests documents relating to Apple's use of DRM that is not

13   relevant to the claims or defenses in this action as such documents are beyond the scope of

14   permissible discovery.

15   Subject to and without waiving these objections and the General Objections, Apple will

16   produce non-privileged documents that analyze Apple's use of a DRM other than FairPlay for

17   digital music or video files on iPods or sold on Apple's iTunes Store in the United States, if any,

18   located after searching custodian files mostly likely to contain a substantial number of relevant

19   documents.

20   **DOCUMENT REQUEST NO. 6:**

21   All communications between you and Microsoft concerning or discussing licensing or

22   royalty agreements and/or payments concerning media formats, including audio, image, and

23   video file formats, and all communications with Microsoft concerning digital music players

24   and/or DRM.

25   **RESPONSE TO DOCUMENT REQUEST NO. 6:**

26   Apple asserts the Vague and Ambiguous, Confidential Information, Burden, Geographic

27   Location, and E-Discovery objections. Apple objects to the term "concerning" as vague,

28   ambiguous, overbroad, and unduly burdensome. Apple further objects to this request to the

1    extent that it requests communications with Microsoft that are not relevant to the claims or

2    defenses in this action as such communications are beyond the scope of permissible discovery

3        Subject to and without waiving these objections and the General Objections, Apple will

4    produce communications between Apple and Microsoft that discuss digital music players, digital

5    music stores or DRM for digital music or video files, if any, located after searching custodian

6    files mostly likely to contain a substantial number of relevant documents.

7    **DOCUMENT REQUEST NO. 7:**

8        All communications between you and RealNetworks, Inc.; Archos S.A.; the companies

9    over the class period that have controlled Rio (including D&H Holdings U.S., Inc.); and Creative

10   Technologies Ltd., concerning the interoperability of music purchased from online music stores

11   other than iTunes store with the iPod and/or the interoperability of portable digital media players

12   other than iPods and audio and video files purchased from iTunes Store and documents

13   concerning, analyzing, or discussing these communications.

14   **RESPONSE TO DOCUMENT REQUEST NO. 7:**

15       Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

16   Geographic Location, and E-Discovery objections. Apple objects to the term "the companies

17   over the class period that have controlled Rio" as overbroad, burdensome, vague, and ambiguous,

18   as it purports to include entities that may not be known or readily identifiable by Apple. Apple

19   further objects to the term "concerning" as vague, ambiguous, overbroad, and unduly burdensome.

20       Subject to and without waiving these objections and the General Objections, Apple will

21   produce communications with RealNetworks, Inc., Archos S.A., D&H Holdings U.S., Inc., or

22   Creative Technologies Ltd. that discuss the interoperability of music purchased from online music

23   stores with the iPod or the interoperability of portable digital media players other than iPods and

24   digital music or video files purchased from Apple's iTunes Store and documents analyzing these

25   communications. if any, located after searching custodian files mostly likely to contain a

26   substantial number of relevant documents.

27   **DOCUMENT REQUEST NO. 8:**

28       All documents and communications concerning Apple's request to license or agreement to

1  license DRM software, including the agreements themselves, and any request by any company to

2  license Apple's FairPlay DRM.

3  **RESPONSE TO DOCUMENT REQUEST NO. 8:**

4      Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

5  Geographic Location, and E-Discovery objections.  Apple objects to the term "concerning" as

6  vague, ambiguous, overbroad, and burdensome.

7      Subject to and without waiving these objection and the General Objections, Apple will

8  produce non-privileged (i) documents or communications that discuss Apple's request to license

9  DRM or agreement to license DRM software, (ii) agreements to license DRM, and (iii) requests

10  by a company to license FairPlay, if any, located after searching custodian files mostly likely to

11  contain a substantial number of relevant documents.

12  **DOCUMENT REQUEST NO. 9:**

13      All documents concerning exporting, copying, burning, transferring, converting or

14  "ripping" of digital audio files from one audio format to another.  For example, the conversion of

15  AAC files to MP3 files.

16  **RESPONSE TO DOCUMENT REQUEST NO. 9:**

17      Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

18  and E-Discovery objections.  Apple objects to the term "concerning" as vague, ambiguous,

19  overbroad, and unduly burdensome.  Apple further objects to the terms "copying" or

20  "transferring" as vague and ambiguous and will interpret such terms to mean converting, burning

21  or ripping.  Apple objects to this request to the extent that it is duplicative of Document Request

22  No. 24 and incorporates by reference the objections set forth in response to that request.

23      Subject to and without waiving these objections and the General Objections, Apple will

24  produce non-privileged documents that discuss exporting, burning, converting or ripping digital

25  music files from one format to another format, if any, located after searching custodian files

26  mostly likely to contain a substantial number of relevant documents.

27  **DOCUMENT REQUEST NO. 10:**

28      Full copies of the spreadsheets for which excerpts were produced to Somtai Troy

1  Charoensak and marked APPLE CHAR 00059 TO APPLE CHAR 00066 and all documents used

2  in the production of these documents, including but not limited to all profit and loss statements

3  for all iPod models.

4  **RESPONSE TO DOCUMENT REQUEST NO. 10:**

5      Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

6  Geographic Location Objection, and E-Discovery objections. Apple objects to the request to

7  produce "all documents used in the production of these documents" as vague, ambiguous,

8  overbroad, and unduly burdensome.

9      Subject to and without waiving these objections and the General Objections, Apple will

10  produce unredacted copies of the spreadsheets for which excerpts were produced to Somtai Troy

11  Charoensak and marked APPLE CHAR 00059 TO APPLE CHAR 00066.

12  **DOCUMENT REQUEST NO. 11:**

13      All documents and answers Apple produced, and all transcripts of depositions taken in

14  litigation or investigations involving iPod, iTunes and/or iTunes store brought by the

15  governments of France, Germany, Norway, Sweden, Finland, Denmark, the United Kingdom, the

16  European Union/European Commission, and the French consumer rights organization Union

17  Federale des Consommateurs Que Choisir.

18  **RESPONSE TO DOCUMENT REQUEST NO. 11:**

19      Apple asserts the Vague and Ambiguous, Confidential Information, and Burden

20  objections. Moreover, Apple objects on the ground that Apple has already produced documents

21  responsive to this request subject to the objections set forth in Apple's Supplemental Response to

22  Request For Production No. 11 served August 17, 2007. Apple incorporates by reference its

23  Supplemental Response to Request For Production No. 11 served August 17, 2007, and refers

24  Plaintiffs to letters dated August 17, 2007 and January 19, 2008, and to documents with bates

25  numbers AIIA 000012 - AIIA 000345 and AIIA 028761 - AIIA 029018.

26  **DOCUMENT REQUEST NO. 12:**

27      All documents that identify, describe or refer to any actual, prior or potential competitor

28  of Apple's iPod and digital audio and video files sold by iTunes store.

**RESPONSE TO DOCUMENT REQUEST NO. 12:**

Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Sufficient To Show, Burden, Geographic Location, and E-Discovery objections. Apple objects to the terms "describe" and "refer" as vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving these objections and the General Objections, Apple will produce non-privileged documents sufficient to identify competitors of Apple's iPod or iTunes Store in the United States as competitors, if any, located after searching custodian files mostly likely to contain a substantial number of relevant documents.

**DOCUMENT REQUEST NO. 13:**

All documents analyzing, describing, estimating or projecting the past, present, future or projected market share of:

        (a)    iPod;

        (b)    online music files; and

        (c)    online video files.

**RESPONSE TO DOCUMENT REQUEST NO. 13:**

Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden, Geographic Location, and E-Discovery objections. Apple objects to the term "describing" as vague, ambiguous, overbroad, and unduly burdensome. Apple objects to the term "market share" as undefined, vague, ambiguous, overbroad, and unduly burdensome. Apple further objects to the term "market share" to the extent that it is intended to refer to a legal or expert opinion or conclusion relating to the relevant antitrust product market. Such a request is premature, as the scope of the relevant market will be the subject of expert discovery.

Subject to and without waiving these objections and the General Objections, Apple will produce non-privileged documents that analyze, estimate or project sales of iPods and online digital music and video files from Apple's iTunes Store in the United States compared to sales of other products in the United States, if any, located after searching custodian files mostly likely to contain a substantial number of relevant documents.

**DOCUMENT REQUEST NO. 14:**

All documents analyzing, describing, estimating or projecting your sales in the United States of:

        (a)    iPod;

        (b)    online music files; and

        (c)    online video files.

**RESPONSE TO DOCUMENT REQUEST NO. 14:**

Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden, and E-Discovery objections. Apple objects to the term "describing" as vague, ambiguous, overbroad, and unduly burdensome.

Subject to and without waiving these objections and the General Objections, Apple will produce non-privileged documents that analyze, estimate or project sales of iPods and online digital music and video files from Apple's iTunes Store in the United States, if any, located after searching custodian files mostly likely to contain a substantial number of relevant documents.

**DOCUMENT REQUEST NO. 15:**

All documents concerning the actual or potential impact on your iPod and/or iTunes audio and video market shares, sales or profits in the United States resulting from the introduction, modification, changes to the terms of use for, changes to the pricing, employment or maintenance of FairPlay DRM.

**RESPONSE TO DOCUMENT REQUEST NO. 15:**

Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden, and E-Discovery objections. Apple objects to the term "concerning" as vague, ambiguous, overbroad, and unduly burdensome. Apple objects to the term "market share" as undefined, vague, ambiguous, overbroad, and unduly burdensome. Apple further objects to the term "market share" to the extent that it is intended to refer to a legal or expert opinion or conclusion relating to the relevant antitrust product market. Such a request is premature, as the scope of the relevant market will be the subject of expert discovery.

Subject to and without waiving these objections and the General Objections, Apple will

DEFENDANTS' RESPONSE TO
PLAINTIFFS' Am. RFPs  C 05-0037 JW(RS)

1   produce non-privileged documents that analyze the impact of FairPlay DRM on (1) the sales of

2   iPods or digital music and video files from Apple's iTunes Store in the United States, (2) profits,

3   or (3) the sales of iPods and digital music and video files from Apple's iTunes Store in the United

4   States compared to sales of competitors of iPods and other products in the United States, if any,

5   located after searching custodian files mostly likely to contain a substantial number of relevant

6   documents.

7   **DOCUMENT REQUEST NO. 16:**

8        All documents concerning the actual or potential impact on your market share, sales or

9   profits in the United States resulting from any restriction or limitation on the compatibility of

10  audio files or video files protected by Apple's FairPlay DRM with any portable digital media

11  player other than iPod.

12  **RESPONSE TO DOCUMENT REQUEST NO. 16:**

13       Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

14  and E-Discovery objections.  Apple objects to the term "concerning" as vague, ambiguous,

15  overbroad, and unduly burdensome.  Apple objects to the term "market share" as undefined,

16  vague, ambiguous, overbroad, and unduly burdensome.  Apple further objects to the term "market

17  share" to the extent that it is intended to refer to a legal or expert opinion or conclusion relating to

18  the relevant antitrust product market.  Such a request is premature, as the scope of the relevant

19  market will be the subject of expert discovery.

20       Subject to and without waiving these objections and the General Objections, Apple will

21  produce non-privileged documents that analyze the impact of FairPlay DRM on (1) the sales of

22  iPods or digital music and video files from Apple's iTunes Store in the United States, (2) profits,

23  or (3) the sales of iPods and digital music and video files from Apple's iTunes Store in the United

24  States compared to sales of competitors of iPods and other products in the United States, if any,

25  located after searching custodian files mostly likely to contain a substantial number of relevant

26  documents.

27  **DOCUMENT REQUEST NO. 17:**

28       All documents reflecting or constituting any internal communications concerning the

1   licensing or sharing of FairPlay DRM.

2   **RESPONSE TO DOCUMENT REQUEST NO. 17:**

3       Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

4   and E-Discovery objections. Apple objects to the terms "reflecting," "concerning," and "sharing"

5   as vague, ambiguous, overbroad, and unduly burdensome.

6       Subject to and without waiving these objections and the General Objections, Apple will

7   produce non-privileged communications between or among Apple personnel that analyze

8   licensing of FairPlay DRM, if any, located after searching custodian files mostly likely to contain

9   a substantial number of relevant documents.

10  **DOCUMENT REQUEST NO. 18:**

11      All documents reflecting or constituting any internal communications concerning the

12  compatibility (or lack thereof) of files protected by Apple's FairPlay DRM with other file formats

13  or any portable digital media player other than iPod.

14  **RESPONSE TO DOCUMENT REQUEST NO. 18:**

15      Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

16  and E-Discovery objections. Apple objects to the terms "reflecting" and "concerning" as vague,

17  ambiguous, overbroad, and unduly burdensome.

18      Subject to and without waiving these objections and the General Objections, Apple will

19  produce non-privileged communications between or among Apple personnel that analyze the

20  compatibility of digital music or video files protected by Apple's FairPlay DRM with any

21  portable digital media player other than iPod, if any, located after searching custodian files mostly

22  likely to contain a substantial number of relevant documents.

23  **DOCUMENT REQUEST NO. 19:**

24      All documents reflecting or constituting any internal communications concerning the

25  actual, anticipated or potential actions of any actual or potential competitor of the iPod or iTunes

26  store.

27  **RESPONSE TO DOCUMENT REQUEST NO. 19:**

28      Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

1    Geographic Location, and E-Discovery objections. Apple objects to the terms "reflecting" and

2    "concerning" as vague, ambiguous, overbroad, and unduly burdensome. Apple further objects to

3    producing all communications relating to actions of competitors to the extent it requests

4    communications that are not relevant to the claims or defenses in this action and thus are beyond

5    the scope of permissible discovery.

6        Subject to and without waiving these objections and the General Objections, Apple will

7    produce non-privileged communications between or among Apple personnel that analyze a

8    United States competitor's actual, anticipated or potential actions relating to DRM in response to

9    the iPod or Apple's iTunes Store, if any, located after searching custodian files mostly likely to

10    contain a substantial number of relevant documents.

11 **DOCUMENT REQUEST NO. 20:**

12        All documents analyzing, describing, estimating or projecting the impact on your market

13    share or sales in the United States resulting from the licensing of Apple's FairPlay DRM to third

14    parties.

15 **RESPONSE TO DOCUMENT REQUEST NO. 20:**

16        Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

17    and E-Discovery objections. Apple objects to the term "describing" as vague, ambiguous,

18    overbroad, and unduly burdensome. Apple objects to the term "market share" as undefined,

19    vague, ambiguous, overbroad, and unduly burdensome. Apple further objects to the term "market

20    share" to the extent that it is intended to refer to a legal or expert opinion or conclusion relating to

21    the relevant antitrust product market. Such a request is premature, as the scope of the relevant

22    market will be the subject of expert discovery.

23        Subject to and without waiving these objections and the General Objections, Apple will

24    produce non-privileged documents that analyze, estimate or project the impact of licensing

25    FairPlay DRM to third parties on (1) the sales of iPods or digital music and video files from

26    Apple's iTunes Store in the United States or (2) the sales of iPods and digital music and video

27    files from Apple's iTunes Store in the United States compared to sales of competitors of iPods

28    and other products in the United States, if any, located after searching custodian files mostly

1  likely to contain a substantial number of relevant documents.

2  **DOCUMENT REQUEST NO. 21:**

3      All documents analyzing, describing, estimating or projecting the impact on your market

4  share or sales in the United States resulting from any measures that would make iPods

5  interoperable with digital audio files protected by means other than Apple's FairPlay DRM.

6  **RESPONSE TO DOCUMENT REQUEST NO. 21:**

7      Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

8  and E-Discovery objections. Apple objects to the term "describing" and "measures" as vague,

9  ambiguous, overbroad, and unduly burdensome. Apple objects to the term "market share" as

10  undefined, vague, ambiguous, overbroad, and unduly burdensome. Apple further objects to the

11  term "market share" to the extent that it is intended to refer to a legal or expert opinion or

12  conclusion relating to the relevant antitrust product market. Such a request is premature, as the

13  scope of the relevant market will be the subject of expert discovery.

14      Subject to and without waiving these objections and the General Objections, Apple will

15  produce non-privileged documents that analyze, estimate or project the impact of iPod

16  interoperability with digital audio files protected by means other than FairPlay DRM on (1) the

17  sales of iPods or (2) the sales of iPods compared to sales of competitors of iPods in the United

18  States, if any, located after searching custodian files mostly likely to contain a substantial number

19  of relevant documents.

20  **DOCUMENT REQUEST NO. 22:**

21      All documents analyzing, describing, estimating or projecting the impact on your market

22  share or sales in the United States resulting from any measures that would make digital audio files

23  purchased from iTunes Store interoperable with any portable digital media player other than iPod.

24  **RESPONSE TO DOCUMENT REQUEST NO. 22:**

25      Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

26  and E-Discovery objections. Apple objects to the term "describing" and "measures" as vague,

27  ambiguous, overbroad, and unduly burdensome. Apple objects to the term "market share" as

28  undefined, vague, ambiguous, overbroad, and unduly burdensome. Apple further objects to the

1  term "market share" to the extent that it is intended to refer to a legal or expert opinion or

2  conclusion relating to the relevant antitrust product market. Such a request is premature, as the

3  scope of the relevant market will be the subject of expert discovery.

4        Subject to and without waiving these objections and the General Objections, Apple will

5  produce non-privileged documents that analyze, estimate or project the impact of using a DRM

6  other than FairPlay DRM on (1) the sales of digital music files from Apple's iTunes Store in the

7  United States or (2) the sales of digital music files from Apple's iTunes Store in the United States

8  compared to sales of other products in the United States, if any, located after searching custodian

9  files mostly likely to contain a substantial number of relevant documents.

10 **DOCUMENT REQUEST NO. 23:**

11       Documents sufficient to allow the calculation for each quarter since the introduction of the

12 iPod for each model of iPod that Apple has sold in the United States, the number of iPods that

13 have been purchased, Apple's total revenue from sales of each iPod model, and Apple's cost of

14 manufacturing and cost of sales for each model of iPod.

15 **RESPONSE TO DOCUMENT REQUEST NO. 23:**

16       Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

17 and E-Discovery objections. Apple objects to the term "cost of sales" as undefined, vague,

18 ambiguous, overbroad, and unduly burdensome. Apple further objects to this request to the

19 extent that it seeks information produced in response to Plaintiffs' Interrogatories.

20       Subject to and without waiving these objections and the General Objections, Apple will

21 produce non-privileged documents sufficient to allow the calculation for each quarter since

22 January 1, 2003 for each model of iPod (i) the number of iPods sold, (ii) Apple's total revenue

23 from those sales, and (iii) Apple's "cost of manufacturing" for each model of iPod sold, if any,

24 located after searching custodian files mostly likely to contain a substantial number of relevant

25 documents.

26 **DOCUMENT REQUEST NO. 24:**

27       All complaints and other correspondence from individuals Apple has received regarding

28 the lack of interoperability of iTunes audio and video files with non-Apple digital media players.

1  the iPod and non-Apple audio and video file formats concerning FairPlay DRM and any

2  summaries or analysis of such complaints.

3  **RESPONSE TO DOCUMENT REQUEST NO. 24:**

4      Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

5  and E-Discovery objections.  Apple objects to the term "regarding" and "concerning" as vague,

6  ambiguous, overbroad, and unduly burdensome.  Apple further objects that, after meeting and

7  conferring with Plaintiffs' counsel, Apple produced over 86,000 pages of documents responsive

8  to this request.  The burden of collecting, reviewing, and producing additional responsive

9  documents, if any, far outweighs the benefit, if any, to plaintiffs of further production.

10  **DOCUMENT REQUEST NO. 25:**

11      All documents concerning RealNetworks Harmony Technology, which according to

12  RealNetworks "enables consumers to securely transfer purchased music to every popular secure

13  music device" and "frees consumers from the limitation of being locked into a specific portable

14  device when they buy digital music."

15  **RESPONSE TO DOCUMENT REQUEST NO. 25:**

16      Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

17  and E-Discovery objections.  Apple objects to the term "concerning" as vague, ambiguous,

18  overbroad, and unduly burdensome.

19      Subject to and without waiving these objections and the General Objections, Apple will

20  produce non-privileged documents that contain substantial discussion of or analyze Apple's

21  response to RealNetworks Harmony Technology, if any, located after searching custodian files

22  mostly likely to contain a substantial number of relevant documents.

23  **DOCUMENT REQUEST NO. 26:**

24      All personnel charts, related personnel listing, indices or directories, organizational charts

25  and documents retention policies produced, compiled or dated after January 1, 2000.

26  RESPONSE TO DOCUMENT REQUEST NO. 26:

27      Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

28  and E-Discovery objections.  Moreover, Apple objects to the request on the ground that the

1   parties agreed previously to limit this request to certain organization charts and document

2   retention policies (*see, e.g.*, B. Sweeney 5/24/2007 letter to B. Mittlestaedt).  Subject to those

3   agreements and Apple's objections set forth in Apple's Supplemental Response to Request For

4   Production No. 20 served August 17, 2007, Apple produced documents responsive to this request.

5   Apple incorporates by references its Supplemental Response to Request For Production No. 22

6   served August 17, 2007 and refers Plaintiffs to those productions with bates numbers AIIA

7   0000012 – AIIA 0000086.

8   **DOCUMENT REQUEST NO. 27:**

9       All versions of the iTunes Store Terms of Service Agreements that were in effect during

10  any portion of the time period from April 28, 2003 to the present, as well as all versions of any

11  documents setting forth policies, practices, licenses and/or agreements applicable to the use of the

12  iTunes store by consumers in the United States during the period April 28, 2003 to the present.

13  **RESPONSE TO DOCUMENT REQUEST NO. 27:**

14      Apple asserts the Vague and Ambiguous, Privilege, Confidential Information, Burden,

15  Geographic Location, and E-Discovery objections.  Apple objects to this request on the ground

16  that it has already produced to Plaintiffs' counsel documents responsive to this request.  Apple

17  refers Plaintiffs to CHAR 000001 – CHAR 000058 and Apple SOM0007607 – Apple

18  SOM0007756.

19  **DOCUMENT REQUEST NO. 28:**

20      Documents sufficient to show the number of digital audio files sold by iTunes store in the

21  United States during the period April 28, 2003 to the present.

22  **RESPONSE TO DOCUMENT REQUEST NO. 28:**

23      Apple asserts the Confidential Information and Burden objections.  Apple objects on the

24  ground that it has already produced information responsive to this request.  Apple further objects

25  to this request to the extent that it seeks information that has been provided in response to other

26  discovery, including interrogatories.

27      Subject to and without waiving these objections and the General Objections, Apple will

28  produce non-privileged documents sufficient show the number of digital music files sold by

1  Apple's iTunes Store in the United States during the period April 28, 2003 to the present, if any,

2  located after searching custodian files mostly likely to contain a substantial number of relevant

3  documents.

4  **DOCUMENT REQUEST NO. 29:**

5       For each different model of iPod sold by Apple, documents sufficient to show the number

6  of iPod units sold directly by Apple in the United States during the period April 28, 2003 to the

7  present.

8  **RESPONSE TO DOCUMENT REQUEST NO. 29:**

9       Apple asserts the Vague and Ambiguous, Confidential Information, and Burden

10  objections.  Apple objects on the ground that it has already produced information responsive to

11  this request.  Apple objects to the phrase "sold directly" as undefined, vague, and ambiguous.

12  Apple further objects to this request to the extent that it seeks information that has been provided

13  in response to other discovery, including interrogatories.

14       Subject to and without waiving these objections and the General Objections, for each

15  model of iPod sold by Apple, Apple will produce non-privileged documents sufficient to show

16  the number of iPods sold by Apple's retail and online stores in the United States from April 28,

17  2003 to the present, if any, located after searching custodian files mostly likely to contain a

18  substantial number of relevant documents.

19  **DOCUMENT REQUEST NO. 30:**

20       Documents sufficient to show the number of consumers in the United States who have

21  purchased one or more digital audio or video files from iTunes store and downloaded the file(s)

22  onto an iPod during the period April 28, 2003 to the present.

23  //

24  //

25  //

26  //

27  //

28  //

1   **RESPONSE TO DOCUMENT REQUEST NO. 30:**

2          Apple asserts the Confidential Information and Burden objections.

3          Subject to and without waiving these objections and the General Objections, Apple

4   responds that it is unaware of any such documents.

5

6

    Dated: July 20, 2009                          JONES DAY
7

8                                          By: _Michael T. Scott_____

9                                              Michael T. Scott

10                                         Attorneys for Defendant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 22

1   Robert A. Mittelstaedt #060359
    David C. Kiernan #215335
2   Michael Scott #255282
    JONES DAY
3   555 California Street, 26th Floor
    San Francisco, CA 94104
4   Telephone:   (415) 626-3939
    Facsimile:   (415) 875-5700
5   ramittelstaedt@jonesday.com
    dkiernan@jonesday.com
6   michaelscott@jonesday.com

7

8   Attorneys for Defendant
    APPLE INC.
9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12

13  **THE APPLE iPOD iTUNES ANTI-TRUST**     **Case No. C 05-0037 JW(RS)**
    **LITIGATION**
14                                           **CLASS ACTION:**
15  ─────────────────────────────
16  This Document Relates to:                **DEFENDANT APPLE INC.'S FIRST**
                                             **AMENDED OBJECTIONS AND**
17      ALL ACTIONS.                         **ANSWERS TO PLAINTIFFS'**
                                             **AMENDED FIRST SET OF**
18                                           **INTERROGATORIES**
19  ─────────────────────────────           **CONFIDENTIAL**

20

21

22

23

24

25

26

27

28

    **CONFIDENTIAL**                         Apple's 1st Am. Answers To Pls' Am. Rogs  C
                                             05-0037 JW(RS)

[Filed Under Seal]

# EXHIBIT 23

1    Robert A. Mittelstaedt #060359
     David C. Kiernan #215335
2    Michael T. Scott #255282
     JONES DAY
3    555 California Street, 26th Floor
     San Francisco, CA  94104
4    Telephone:    (415) 626-3939
     Facsimile:    (415) 875-5700
5    ramittelstaedt@jonesday.com
     dkiernan@jonesday.com
6    michaelscott@jonesday.com

7

8    Attorneys for Defendant
     APPLE INC.
9

10                      UNITED STATES DISTRICT COURT

11                     NORTHERN DISTRICT OF CALIFORNIA

12

13   **THE APPLE iPOD iTUNES ANTI-TRUST**       **Case No. C 05-0037 JW(RS)**
     **LITIGATION**
14                                              **CLASS ACTION:**

15   _____

16   This Document Relates to:                  **DEFENDANT APPLE INC.'S**
                                                **OBJECTIONS AND RESPONSES TO**
17           ALL ACTIONS.                       **PLAINTIFFS' AMENDED FIRST SET**
                                                **OF REQUESTS FOR ADMISSION**
18
                                                **CONFIDENTIAL – ATTORNEYS**
19                                              **EYES ONLY**

20

21

22

23

24

25

26

27

28

[Filed Under Seal]

# EXHIBIT 24



**COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS** LLP

SAN DIEGO · SAN FRANCISCO
NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
LOS ANGELES · PHILADELPHIA

Thomas R. Merrick
TMerrick@csgrr.com

August 10, 2009

**VIA E-MAIL**

David C. Kiernan
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104

    Re:    *The Apple iPod iTunes Anti-Trust Litigation*
           No. C-05-00037-JW (N.D. Cal.)

Dear David:

       This letter will serve as an initial meet and confer on Defendant Apple, Inc.'s Objections and Answers to Plaintiffs' Amended First Set of Interrogatories ("Interrogatory Responses"); Defendant Apple, Inc.'s Response to Plaintiffs' Amended First Set of Request for Production of Documents ("RFP Responses"); and Defendant Apple, Inc.'s Objections and Responses to Plaintiffs' Amended First Set of Requests for Admission ("RFA Responses") (collectively Responses"). Below, I address Apple's general objections, objections to the Relevant Time Period, and specific objections to individual requests.

**<u>Attorneys Eyes Only Designation</u>**

       As a threshold matter, Apple designates its Interrogatory Responses and RFA Responses in their entirety at the highest level of confidentiality under the June 13, 2007 Stipulation and Protective Order Regarding Confidential Information ("June 13 Order"), "CONFIDENTIAL – ATTORNEYS EYES ONLY." The June 13 Order expressly limits what qualifies for this highest-level protection:

       If any party or nonparty believes that disclosure of Discovery Materials would affect its competitive position or security interests in an adverse manner, that party or nonparty may designate the Discovery Materials as "CONFIDENTIAL – ATTORNEYS EYES ONLY." The designation of "CONFIDENTIAL – ATTORNEYS EYES ONLY" shall be limited to Discovery Materials that the disclosing party believes in good faith contain extremely sensitive CONFIDENTIAL information whose disclosure to another party or nonparty would create a substantial risk of serious injury that could not be avoided by less restrictive means. Any such designation shall be made in good faith.

655 West Broadway, Suite 1900 · San Diego, California 92101-8498 · 619.231.1058 · Fax 619.231.7423 · www.csgrr.com



COUGHLIN
STOIA
GELLER
RUDMAN
ROBBINS LLP
David C. Kiernan
August 10, 2009
Page 2

June 13 Order, ¶5. Clearly, all of the information in these responses could not reasonably be considered extremely sensitive to Apple's competitive position or security interests. Please advise as to which Responses Apple believes in good faith would qualify for Attorneys Eyes Only treatment in light of this standard and amend the Responses accordingly.

**General Objections**

Apple provides several general objections to the Responses purportedly intended to apply to all individual requests. Such blanket objections are improper. *See* Fed. R. Civ. P. 33(b)(4) (expressly stating that "grounds for objecting to an interrogatory must be stated with specificity"); Rule 34(b)(2)(B) ("For each item or category, the response must . . . state an objection to the request, including the reasons."); Rule 36(a)(5) ("The grounds for objecting to a request must be stated."). To the extent Apple fails to assert any of the general objections specifically to individual requests, Plaintiffs consider those objections waived. *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."); *see also Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (objections may be waived when the interrogatory to which the objection is made is not identified with specificity).

Additionally, Apple improperly makes a general objection on the basis of attorney-client privilege, attorney work-product doctrine, joint defense privilege, common interest doctrine, and "any other applicable privilege or doctrine," which it refers to jointly as its "Privilege Objection." Interrogatory Responses at 2; RFP Responses at 2-3; RFA Responses at 2. "[A] proper assertion of privilege must be more specific than a generalized, boilerplate objection." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1147 (9th Cir. 2005). Privilege objections that do not specify how any of the requests are protected by a particular privilege are improper. *See Everflow Tech. Corp. v. Millennium Elecs. Inc.*, No. 07-05795 JF (HRL), 2009 WL 672985, at *2 (N.D.Cal. Mar. 13, 2009) (overruling "blanket" objections that the information was protected by attorney-client privilege, work-product doctrine, right to privacy, and trade secret privilege). To the extent that Apple is withholding information or documents based on any of these asserted privileges, please specifically indicate the basis for each such objection.

Similarly, Apple generally asserts that the requests "require Apple to disclose trade secrets, proprietary information, other confidential commercial information or sensitive information" ("Confidential Information Objection"). Interrogatory Responses at 2; RFP Responses at 3; RFA Responses at 2. Such blanket objections based on confidentiality, trade secret and privacy are improper. *See Everflow Tech. Corp.*, 2009 WL 672985, at *2. Nonetheless, any concerns Apple has regarding confidential information are addressed by the June 13 Order. Accordingly, to the extent Apple is withholding information or documents on this basis, please produce the information subject to the June 13 Order as necessary. *See Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, No. 2:05-cv-01532-RLH-GWF, 2007 WL 778153, at *4 (D. Nev. Mar. 12, 2007) (overruling defendants' objections based on confidentiality and proprietary information where a protective order had been entered).

© ⊶202 ⊶115



COUGHLIN
   STOIA
   GELLER
   RUDMAN
   ROBBINS LLP

David C. Kiernan
August 10, 2009
Page 3

Additionally, Apple objects that the Interrogatories, RFPs, and RFAs are overbroad and burdensome but provides no basis for such an objection. Interrogatory Responses at 2-3; RFP Responses at 3; RFA Responses at 2-3. Apple's "Burden Objection" merely provides general language about the possible situations which may give rise to such an objection, but does not state any facts in support of the burden placed on Apple in responding to these requests. Objections without any detail as to how production is burdensome are improper. *See El-Shaddai v. Wheeler*, No. CIV S-06-1898 FCD EFB P, 2009 WL 301824, at *2 (E.D. Cal. Feb. 5, 2009) ("federal courts reject claims of burdensomeness which are not supported by a specific, detailed showing, usually by affidavit, of why weighing the need for discovery against the burden it will impose permits the conclusion that the court should not allow it").

Moreover, Apple generally objects to the extent the Interrogatories and RFPs require Apple to search for and produce information concerning geographic regions outside of the United States ("Geographic Location Objection"). Interrogatory Responses at 3; RFP Responses at 4. To the extent Apple does not maintain information specific to the United States, Plaintiffs are willing to meet and confer further regarding Apple's ability to separate out relevant information and the possible burden involved. However, Apple has a duty under the federal rules to produce all relevant information which is ***available*** to it. *See* Fed. R. Civ. P. 33(b)(1)(B) (emphasis added).

Plaintiffs also wish to clarify the nature of Apple's "Sufficient to Show Objection" to the RFPs. RFP Responses at 3. Plaintiffs are unaware of any legal basis for this objection and are unclear as to what exactly Apple has in mind when it states that its "production will be on a 'Sufficient to Show' basis." Plaintiffs are willing to meet and confer on the scope of their requests, but do not agree that Apple may unilaterally decide what it believes is "sufficient" for Plaintiffs to prove their case.

Apple also makes general objections to certain definitions. Apple contends the definition of "digital audio file" is objectionable to the extent that it includes files other than music files. In their Consolidated Complaint ("CC"), Plaintiffs alleged a market referred to as the "Online Music market." CC, ¶3. However, the important features of this market are that it includes digital files containing audio only that are delivered to consumers via internet download and can be played on a portable digital media player. *See id.*, ¶¶3, 14-17. This market includes other digital audio files which may or may not contain music.

Market definitions are questions of fact that are reserved for the jury and are developed over the course of discovery. *See Oltz v. St. Peter's Cmty.Hosp.*, 861 F.2d 1440, 1446 (9th Cir. 1988); *Cargill Inc. v. Budine*, No. CV-F-07-349-LJO-SMS, 2007 WL 2506451, at *8 (E.D. Cal. Aug. 30, 2007) ("Questions pertaining to market definitions are best answered after the benefit of discovery."). Plaintiffs may seek discovery to properly define the relevant market. Indeed, Plaintiffs sought certification of claims related to the market for digital audio files. *See* Plaintiffs' Notice of Motion and Motion for Class Certification and Appointment of Class Counsel ("Class Cert. Motion") at 9-10. Thus, Plaintiffs are entitled to information relevant to all digital audio files.



Similarly, Apple objects to the definition of "iPod" to the extent it includes the iPhone. However, Plaintiffs' claims relate to ***all*** "portable battery-powered devices that can store and play large numbers of digital music computer files." CC, ¶8; *see also* Class Cert. Motion at 1 (defining iPods as "portable digital media players manufactured by Apple"). Thus, information related to the iPhone is relevant to the extent that the iPhone acts as a "portable digital media player." *Id.*

Additionally, Apple objects to the definition of "Labels," "Microsoft," "Online music store," and "Portable digital media player" to the extent they include entities or products not known or readily identifiable by Apple. These terms are not intended to include entities or products not known to Apple. For example, the term "Labels" is intended to include the major record labels with which Apple has a contract to resell digital files. Apple must produce all information and documents available to it whether or not the definitions themselves would include entities or products not known to Apple. *See* Fed. R. Civ. P. 33(b)(1)(B).

Apple also objects to the RFPs stating that it will "conduct a diligent search of its files that is reasonable under the circumstances." RFP Responses at 2. Apple has a duty to conduct a diligent search for documents responsive to Plaintiffs' requests. *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, No. C 06-3359 JF (RS), 2008 WL 3916093, at *2 (N.D. Cal. Aug. 25, 2008). As we have stated in our meet and confer calls regarding the 30(b)(6) document requests, Plaintiffs are willing to meet and confer on appropriate custodians and search terms to limit the burden on Apple in conducting its search, but this does not change Apple's duty under the federal rules. Plaintiffs also agree that Apple need not produce every single document responsive to the requests so long as Apple meets and confers with Plaintiffs in good faith on the documents being produced.

Finally, Apple states that it will only produce electronically stored information in one form. However, as stated in the Stipulation and Order Governing Electronic Discovery Formats, dated June 29, 2007 ("ESI Order"), the parties have agreed to produce all documents in both TIFF and Text File formats. ESI Order at 1. Accordingly, please produce all documents in compliance with the ESI Order.

**Relevant Time Period**

Plaintiffs requested all information and documents responsive to the requests from January 1, 2000 to the present ("Relevant Time Period"). Apple objects to this time period and limited its responses, unless otherwise stated, for the period April 28, 2003 to March 31, 2009. Interrogatory Responses at 5; RFP Responses at 7. Apple does not provide an explanation for these dates but presumably begins with April 28, 2003 because that is the launch of the iTunes Store. Plaintiffs request confirmation of this.

In response to the RFPs, Apple also indicated that it would produce responsive documents dated or created on or after April 1, 2002 "to account for activity relating to the launch of the iTunes Music Store." RFP Responses at 7. Information concerning all alleged

COUGHLIN
  STOIA
    GELLER
      RUDMAN
      & ROBBINS LLP
David C. Kiernan
August 10, 2009
Page 5

markets prior to the April 28, 2003 launch date of the iTunes Store is relevant to Plaintiffs' antitrust claims as expert analysis on antitrust impact and damages will require information about these markets prior to April 28, 2003. Plaintiffs stand by January 1, 2000 as the beginning of the Relevant Time Period but are willing to meet and confer with Apple as to specific requests to the extent any undue burden is imposed. Additionally, please explain the reasoning behind Apple's March 31, 2009 cut off date.

**Specific Objections to Interrogatories, RFPs, & RFAs**

Apple makes several blanket objections to each of the individual Interrogatories, RFPs, and RFAs without indicating how each objection applies. Such "'string objections' are unacceptable, improper, and without merit." *Everflow Tech. Corp.*, 2009 WL 672985, at *2. Thus, for each objection Apple wishes to assert as to an individual Interrogatory, RFP, or RFA, Plaintiffs request an explanation of its application or otherwise consider the objection waived.

Interrogatory Nos 1, 2 & 3:

These Interrogatories all seek information related to licensing or royalty fees Apple pays third parties related to iPod and digital audio files sold on the iTunes Store. Apple asserts its "Vague and Ambiguous," "Confidential Information," "Burden," "Geographic Location" and "Compound" objections. These boilerplate objections are discussed above.

Specifically, these Interrogatories are not compound as the terms license fees and royalties were intended to have the same meaning.

Additionally, Plaintiffs request additional information as to how these Interrogatories are vague and ambiguous and create an undue burden on Apple.

Interrogatory No. 5:

This Interrogatory seeks all royalties that Apple paid during the year 2005 and the year for which information is most recently available.

This interrogatory seeks information related to other consumer electronics sold by Apple. Certain economic models which assess antitrust impact and damages look at defendant's costs and margins in competitive markets. Additionally, as stated above, any concerns Apple should have regarding confidentiality are addressed by the June 13 Order. Apple's other objections are addressed above.

Interrogatory No. 6:

202  •  115



COUGHLIN
   STOIA
     GELLER
      RUDMAN
      ROBBINS LLP
David C. Kiernan
August 10, 2009
Page 6

Interrogatory No. 6 asks Apple to list the products and their market share referenced by Steve Jobs' quote: "In addition, iPod continued to earn a US market share of over 75 percent." Apple objects to the use of the term market and market share. In the context of this interrogatory, these terms are intended to have the same meaning as used in the quoted text. Additionally, Apple objects that this interrogatory is compound. "'[I]nterrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question."' *Safeco Ins. Co. of Am. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (citing *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997)). As *Kendall* explains, the test for whether a subpart can be subsumed is whether "the subsequent question [can] stand alone." *Kendall*, 174 F.R.D. at 685. Here, the subpart, which seeks the market share of each product included in the referenced "market", is subsumed into the question of product name – market share on the relevant products cannot logically stand alone from the name of the product. Thus, Interrogatory No. 6 appropriately counts as one interrogatory.

Apple also indicates that "NPD US MP3 Player Market: Monthly Trend Summary 13 months ending June 2006" will be produced. Please provide a time frame for the production.

Interrogatory No. 7:

This Interrogatory seeks the total number of digital audio files sold through the iTunes Store in the United States since April 28, 2003.                . As discussed above, Plaintiffs' claims relate to all digital audio files. Please supplement your response accordingly.

Interrogatory No. 8:

This Interrogatory asks for the number of iPod units that were sold directly by Apple in the United States since April 28, 2003 to date.              The Class certified by the Court includes retailers that purchased from Apple as well. Please supplement your response accordingly.

RFP Nos. 1-3, 5-9, 12-23, 25, 28, & 29:

Apple states that it will produce documents responsive to these requests "located after searching custodian files most likely to contain a substantial number of relevant documents." *See, e.g.*, RFP Responses at 7. You indicated during our previous meet and confer conferences that you would produce an initial proposal of custodians and search terms by early in the week of August 10, 2009 for the outstanding Rule 30(b)(6) requests. Plaintiffs propose that this list of custodians and search terms also include custodians and search terms relevant to these requests. This will streamline the searches and prevent further delay.



COUGHLIN
 STOIA
 GELLER
 RUDMAN
 ROBBINS LLP
David C. Kiernan
August 10, 2009
Page 7

### RFP Nos. 1-3:

These requests seek documents relevant to the markets in which Apple's iPod and iTunes files are sold. Apple objects to the use of the term "market" as being premature to the extent it seeks to refer to a legal or expert opinion or conclusions relating to the relevant antitrust product market. RFP Responses at 7. As Plaintiffs discussed above, "market" in the antitrust context is a question of fact developed through discovery. *See Oltz*, 861 F.2d at 1446; *Cargill Inc.*, 2007 WL 2506451, at *8. Thus, while Plaintiffs do not intend to make a legal conclusion of the relevant markets at this time, they do rightfully seek discovery concerning the markets, which Apple considers these products to be sold. This would include, but is not limited to, internal documents discussing Apple's percentage of sales compared to competing products, discussion of existing and potential consumers of the relevant products, and discussion of products that Apple considers to be in direct competition with the iPod and files sold on the iTunes store.

### RFP Nos. 3, 5, 6, 28:

Apple limits its production in response to these requests to only digital music files. As discussed above, Plaintiffs are entitled to discovery regarding all digital audio files sold through the iTunes Store.

### RFP No. 4:

This request seek documents discussing the Digital Millennium Copyright Act. Specifically, Plaintiffs seek production of documents concerning burning and ripping in the context of the Digital Millennium Copyright Act. Apple contends that burning and ripping enables consumers to purchase whatever portable digital media player they would prefer for direct playback of their digital audio files purchased from the iTunes Store. Thus, documents regarding this contention are relevant and must be produced.

### RFP No. 11:

This request seeks supplemental production of the documents produced during the investigations conducted in France, Germany, Norway, Sweden, Finland, Denmark, the United Kingdom, the European Union/European Commission, and by the Union Federale des Consommateurs Que Choisir. Apple's response suggests that it will not be producing additional documents responsive to this request. Plaintiffs are aware of additional correspondence in the Norway proceedings in 2008. Please produce these and any other documents not previously produced.

### RFP No. 13:

RFP No. 13 seeks production of documents concerning projected market share of iPod, online music files, and online video files. Apple objects to the term "market share" to the extent it refers to a legal or expert opinion or conclusion relating to the relevant antitrust



David C. Kiernan
August 10, 2009
Page 8

product market. RFP Responses at 13. Plaintiffs do not intend on making any conclusions as to the relevant antitrust product market at this time and merely seek documents that discuss Apple's percentage of total sales with respect to digital audio and video files and iPods.

<u>RFP Nos. 15, 16, 20, 21, 22</u>:

Apple similarly objects to the use of the term "market share" in these requests. Plaintiffs do not intend on making any conclusions as to the relevant antitrust product market at this time and intend "market share" to mean Apple's percentage of total sales with respect to digital audio files, digital video files and iPods.

<u>RFP No. 24</u>:

Through this request, Plaintiffs seek updated customer complaints concerning interoperability. Apple states that because it has previously produced numerous complaints, it will not provide further supplementation. However, the last production of complaints was made on May 6, 2008 and only contained complaints through August 2007. In compromise, Plaintiffs seek production of a random sample of responsive complaints from August 2007 to the present.

<u>RFP No. 26</u>:

This request, further limited by Plaintiffs' May 24, 2007 letter, seek organizational charts for each one-year period beginning in January 1, 2000, including only charts and listings dealing with the design, sale, and marketing of iPods, iTunes and iTunes Store software products, and iTunes retail store. Apple references Plaintiffs to the already produced organizational charts. Apple previously produced numerous charts concerning iPods but only produced one organizational chart for iTunes dated 1/23/06. Apple AIIA00000085-86. Please confirm whether there are additional organizational charts concerning iTunes or the iTunes Store. Additionally, the iTunes organizational chart is unreadable. Please produce an additional copy of this chart.

<u>RFP No. 29</u>:

This RFP asks for documents sufficient to show the number of iPod units that were sold directly by Apple in the United States since April 28, 2003 to date. Apple limits its response to iPods sold by Apple's retail and online stores. Plaintiffs' certified class also includes retailers who purchased iPods directly from Apple, thus, information concerning the number of iPods sold directly by Apple to retailers is also relevant. Please supplement your response accordingly.

<u>RFA No. 3</u>:

RFA No. 3 asks Apple to admit or deny that some or all of the labels requested that Apple make the iPod compatible with online music stores other than the iTunes Store.



David C. Kiernan
August 10, 2009
Page 9

RFA Responses at 6.

Please explain this qualification sufficiently for Plaintiffs to determine the adequacy of Apple's response.

RFA No. 4:

Similarly, RFA No. 4 asks Apple to admit or deny that some or all of the labels requested that Apple make digital audio files purchased on the iTunes Store compatible with portable digital media players other than iPod.

RFA Responses at 7.

Plaintiffs would like to meet and confer as soon as possible concerning Apple's objections and propose the week of August 17, 2009. Please let us know as soon as possible if this time frame does not work for you. We look forward to hearing from you shortly.

Very truly yours,

THOMAS R. MERRICK

TRM:hsb

S:\CasesSD\Apple Tying\Corres\TRM_Kiernan 080509.doc

® 202   115

# EXHIBIT 25



SAN DIEGO • SAN FRANCISCO
NEW YORK • BOCA RATON
WASHINGTON, DC • ATLANTA
LOS ANGELES • PHILADELPHIA

Thomas R. Merrick
TMerrick@csgrr.com

August 24, 2009

<u>VIA E-MAIL</u>

David C. Kiernan
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104

Re:   *The Apple iPod iTunes Anti-Trust Litigation*
       No. C-05-00037-JW (N.D. Cal.)

Dear David:

I write to memorialize our August 20, 2009 telephonic meet and confer regarding Plaintiffs' Amended First Set of Requests for Production ("RFPs"), Amended First Set of Interrogatories ("Interrogatories"), and Amended First Set of Requests for Admission ("RFAs") (collectively, the "Amended Requests").

With regard to your general objections to the Amended Requests the parties agreed on the following:

- "audio files" – Apple has essentially three categories of audio files: music, ringtones, and books. Plaintiffs agreed that ringtones are irrelevant and Apple has agree to produce information related to books.

- "iPod" – Apple's position is that iPhones are not relevant to Plaintiffs' claims as they are phones and not iPods; Plaintiffs maintain that iPhones are relevant to the extent they act as a portable digital media player. *See* Consolidated Complaint ¶8 (defining relevant market broadly). Plaintiffs will specify the requests for which they seek information related to the iPhone.

- "Relevant time period" - Apple is willing to produce documents dating back to January 1, 2000, but if burden becomes an issue, the parties will meet and confer further to come to an agreement. Plaintiffs will make a proposal on a discovery cutoff date.



COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS

David C. Kiernan
August 24, 2009
Page 2

- Privilege Objections – Nothing to date is being withheld because of privilege, however, in the future you will identify anything being withheld on such grounds.

- Confidentiality objection – Apple will produce documents and information pursuant to the Protective Order and will not withhold anything on this basis.

- "Attorneys Eyes Only" designation - Apple is going to revise its RFA and ROG responses to eliminate the blanket "attorneys eyes only" designation.

With respect to the individual requests, the parties agreed on the following:

- Interrogatory Nos. 1, 2, 3: Apple is willing to produce documents for these requests; once you determine how these records are kept, the parties will meet and confer on the information to be produced.

- Interrogatory No. 5: Plaintiffs will attempt to narrow this request.

- Interrogatory No. 7: Apple will include information concerning audio books.

- Interrogatory No. 8 and Request for Production No. 29: Apple will produce the number of iPods sold directly to retailers in the U.S. during the relevant period.

- RFP Nos. 1, 2, 3, 5, 6, 11, 13, 15, 16, 20-22, 26, 28, 29: Apple will produce documents responsive to these requests and will include information on books.

- RFP No. 4: Apple is not producing documents related to the Digital Millennium Copyright Act. Plaintiffs disagree with this position and may seek Court intervention to resolve this issue.

- RFP No. 24: Plaintiffs will propose a narrower scope of types of examples of complaints to be produced.

- RFA Nos. 3, 4: Apple will respond by letter to further explain its objections.

Additionally, it is understood that you will provide Plaintiffs with a proposed list of custodians and search terms for the Amended Requests by August 27, 2009. These terms will be used to search through the documents pulled from certain custodians in 2007, as well as to search for responsive documents for certain requests after the 2007 pull date. The parties will meet and confer further on the production of the updated documents.



COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

David C. Kiernan
August 24, 2009
Page 3

     Moreover, Apple will begin producing documents responsive to Plaintiffs' 30(b)(6) document requests concerning software updates on a rolling basis by the end of August or the first week of September. Plaintiffs will send their revised version of the 30(b)(6) custodians and search terms by the end of this week or early next week.

     Please do not hesitate to contact me with any questions.

           Very truly yours,

           THOMAS R. MERRICK

TRM:sll

cc:   Bonny E. Sweeney
      Robert A. Mittelstaedt
      Paula Roach

S:\CasesSD\Apple Tying\Corres\TRM_Kiernan 82409.doc

# EXHIBIT 26

## Paula Roach

| | |
|---|---|
| **From:** | David Kiernan [dkiernan@JonesDay.com] |
| **Sent:** | Thursday, August 27, 2009 12:07 PM |
| **To:** | Tom Merrick; Paula Roach |
| **Subject:** | AIIA |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

I'll send the proposed custodians and keywords to you by next Wednesday or Thursday for the other document requests.


David C. Kiernan
Jones Day
555 California Street, 26th Floor
San Francisco, California 94104
Phone (415) 875-5745
Fax (415) 875-5700

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

# EXHIBIT 27

# JONES DAY

555 CALIFORNIA STREET · 26TH FLOOR · SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE: 415·626·3939 · FACSIMILE: 415·875·5700

Direct Number: (415) 875-5745
dkiernan@jonesday.com

JP006236:dk                    September 25, 2009
825624-605002

VIA E-MAIL & U.S. MAIL            RECEIVED SEP 2 9 2009

Thomas R. Merrick
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301

Re:    The Apple iPod iTunes Anti-Trust Litigation No. C-05-00037-JW (N.D. Cal.)

Dear Tom:

This letter responds to several open discovery issues.

**Apple Has Not Delayed In Providing Information:**

I am disappointed by the tone of your letter and the accusations you made. Frankly, it looks like you drafted the letter to serve as an exhibit to plaintiffs' opposition to Apple's motion for a briefing schedule that would allow Apple an opportunity to take the deposition of plaintiffs' expert. I thought that we have had a productive meet and confer process over plaintiffs' overbroad discovery. Unfortunately, your letter is a step backwards.

Your accusation that we have been deliberately stalling to produce discovery in this case is simply untrue, as you are fully aware. I have had numerous discussions with you and Paula (together and separately) regarding the scope of Plaintiffs' broad discovery requests, Apple's responses, and the status of production.

The timing of our production is due to the scope of Plaintiffs' discovery requests. Plaintiffs served discovery that was overbroad, impossibly burdensome, and sought information that was not relevant to the claims and defenses in this case. For example, Plaintiffs' 30(b)(6) document requests sought all documents related to every single software update to iPod or iTunes regardless of whether those updates had any bearing on Plaintiffs claims. After providing Plaintiffs with a sample of some of the updates that may be relevant and engaging in further discussions, the parties agreed to a much more limited and reasonable scope of discovery. We then investigated and, on August 12, 2009, provided you a list of the custodians who most likely would possess the documents that Plaintiffs seek along with suggested search terms to identify potentially responsive documents. I invited Plaintiffs to add to the list, and did not receive Plaintiffs' additions until September 3, 2009. Apple has also reviewed documents of an additional custodian, Bud Tribble, despite his absence from Plaintiffs' proposed custodians.

SFI-619541v1

JONES DAY

Thomas R. Merrick
September 25, 2009
Page 2

Plaintiffs' Requests For Production suffered the same infirmity, requiring several discussions to limit their scope. Notably, we had to wait several weeks to receive a response from plaintiffs regarding the scope of their discovery. Even after our discussions, the requests remain very broad. Since then, we have been investigating which custodians are likely to possess responsive documents for each of Plaintiffs' requests and to determine which terms will likely identify responsive documents. Given the broad scope of Plaintiffs' requests, the burden and time involved was not "extremely minimal" as you mischaracterize it. Moreover, as I explained to you during one of our calls, it took longer than anticipated to identify the custodians for each of Plaintiffs' requests. At least during the call, you said that you understood and voiced no complaints about the timing.

Plaintiffs' Interrogatories also were overbroad. For example, Interrogatory No. 5 requests Apple to list all license fees and royalties that Apple pays to any company regardless of the purpose of the license or royalty, which would include payments made to manufacture and sell Mac computers. And others requested information that Apple does not maintain in its ordinary course of business. For example, Interrogatory Nos. 1-3 request license fees and royalties that Apple pays in connection with the iPod and iTunes Store. As Apple explained, it does not maintain such information on a U.S. basis. We have been investigating exactly what information we can provide so that Plaintiffs can decide whether it wants it. This has taken some time because Apple does not maintain the information that Plaintiffs seek.

Plaintiffs' accusation that we have "successfully" dragged our feet on producing documents is wrong. We have nine attorneys who are reviewing documents for responsiveness and privilege. And given the highly confidential information sought by Plaintiffs (e.g., information regarding software updates), these reviewers must carefully review documents to determine the level of confidentiality under the Protective Order in this case.

Moreover, the 30(b)(6) search terms were highly overinclusive. To date, only 10% of the documents that included the search terms are responsive to Plaintiffs requests. In late August, I tried to narrow the scope of the search terms to make them more reasonable. But you rejected my proposal and then added more terms that were equally overinclusive—e.g., (break* and iPod), (crack* and iPod).

I trust that the above addresses your concerns. Moving forward, I hope that we can dispense with the accusatory remarks and have a more courteous relationship. In my experience, discussing discovery issues over the phone is more productive than litigating by letter. I will now address the outstanding discovery issues.

SFI-619541v1

JONES DAY

Thomas R. Merrick
September 25, 2009
Page 3

### Discovery Cutoff

Apple agrees to a discovery cutoff of September 1, 2009 for RFPs 12, 19, 23, 28, 29 and 30 and Interrogatories 2-4 and 7-8. If Plaintiffs later determine that they need updated information for these specific discovery requests, Apple will meet and confer regarding whether to provide updated information. The discovery cutoff for the remaining requests is March 31, 2009.

#### Discovery Related To iPhones

In your September 1, 2009 letter, you stated that "Apple contends that iPhones are not relevant to Plaintiffs' claims." I did not say that during our meet and confer, and Apple has not made that contention. Instead, I explained that Apple objected to including iPhones in the definition of iPods on the ground that an iPhone is not an iPod and that, to date, iPhones have never been a part of Plaintiffs' case. Indeed, the word "iPhones" does not appear in Plaintiffs' Consolidated Complaint, and there are no allegations that refer specifically to iPhones.

Moreover, I pointed out that to include iPhones in the definition of iPod would mean that Plaintiffs are seeking the same broad discovery for iPhones that they seek for iPods and that Apple objected to such discovery as overbroad and burdensome. I then said that, if Plaintiffs want discovery regarding iPhones as opposed to iPods, they need to ask for it separately so that we could analyze the requests.

Based on your September 1, 2009 letter, we now understand that Plaintiffs' position is that iPhones are relevant to the claims in this case, because Plaintiffs' alleged relevant product market includes iPhones. Moreover, your letter states that Plaintiffs seek "information related to the iPod function and not the phone function of the iPhone." Given the wording and breadth of the discovery requests, however, it is unclear exactly what Plaintiffs seek. Please identify the specific RFPs and Interrogatories for which you seek information related to iPhones and explain exactly what information you want so that we can fully analyze your requests. We want to avoid confusion and any misunderstanding regarding the scope of discovery regarding iPhones, if any.

#### Interrogatory Nos. 1, 2, 3, 7 and 8:

Apple is still investigating what information, if any, it can provide on a U.S. basis in response to Interrogatory Nos. 1-3. Today, Apple served amended responses to Interrogatory Nos. 7 and 8 and addressed Plaintiffs' concerns regarding the confidentiality designation.

#### RFA Nos. 3 and 4:

Plaintiffs request clarification with regard to the phrase "in circumstances other than those noted above" in Apple's response to Plaintiffs' RFA No. 3.

JONES DAY

Thomas R. Merrick
September 25, 2009
Page 4

With respect to RFA No. 4, we have reviewed your comments and see no basis to amend.

### RFP No. 10:

We will produce the documents responsive to RFP No. 10 either later today or Monday, September 28, 2009.

#### Customer Complaints (RFP No. 24):

Apple is considering Plaintiffs' request to produce customer complaints for 2008 and 2009.

#### Organization Charts

Enclosed please find organization charts responsive to 30(b)(6) Request No. 8 and RFP No. 26, bates numbered Apple_AIIA00090330-Apple_AIIA00090358.

#### 30(b)(6) Search Terms and Custodians:

I have attached the search terms and custodians agreed to by the parties, with the aforementioned addition of custodian Bud Tribble. Apple reserves the right to further limit the search terms given the overinclusiveness of some of the terms.

As you will see, I added the two custodians you proposed and accepted all of your proposed search terms except for (1) "iPhone and (iTunes or iTS or iTMS or "music store") and (hack* or breach* or break* or imitat* or mimic*)" and (2) "Palm Pre and iTunes. With respect to (1), we are still meeting and conferring over the scope of discovery related to iPhones. With respect to (2), please explain why you believe that "Palm Pre and iTunes" will identify documents related to software updates that address conduct by competitors or "hackers" to permit direct payback of protected iTunes files on a non-iPod and/or permit direct playback of non-iTunes files on an iPod.

#### RFP Search Terms and Custodians:

The enclosed document lists the key custodians most likely to have electronically stored information that Apple has agreed to produce in response to certain of Plaintiffs' Amended First Set of Requests for Production, namely requests 1-3, 5-9, 13, 15-22, and 25. By providing this list of custodians, Apple is not representing that responsive documents actually exist for each custodian. As with the requests served with the 30(b)(6) notice, Apple will collect, process, and produce ESI from files and/or folders identified by the key custodians as containing potentially

SFI-619541v1

JONES DAY

Thomas R. Merrick
September 25, 2009
Page 5

responsive material.  Apple will run the search terms listed in the enclosed document against the collected ESI.  Apple will review for responsiveness and privilege the documents that are identified by such terms and will produce responsive, non-privileged documents subject to the Protective Order in this case.

With respect to the remaining document requests, Apple will produce the specific documents it agreed to produce as set forth in its objections and responses to Plaintiffs' requests.

Very truly yours,

David C. Kiernan

Enclosures

cc:   Robert A. Mittelstaedt
      Michael Scott

SFI-619541v1

## Custodian List For 30(b)(6) Document Requests

1. Jeff Robbin, VP, Engineering, Applications Group

2. Dave Heller, Director, iTunes Client Engineer

3. Tom Dowdy, iTunes Engineer

4. Augustin Farrugia, Senior Director, DRM

5. Eddie Cue, VP iTunes

6. Kevin Saul, Associate General Counsel

7. Tony Fadell, Senior VP of iPod Division

8. Phil Schiller, Senior VP, Worldwide Product Marketing

9. Greg Jozwiak, VP, iPod Product Marketing

10. Steve Jobs, CEO

11. Jon Rubenstein, Senior VP, iPod Division

12. Guy Barn-Nahum, Director, iPod Software

13. Tribble, Bud (VP, Software Technology)

<u>**Search Terms For 30(b)(6) Document Requests**</u>

1. hack* and (Fairplay or "Fair Play" or DRM or encryption or security or iPod or iTunes or iTS or iTMS or "music store")

2. strip* and (Fairplay or "Fair Play" or DRM or encryption or security)

3. break* and (Fairplay or "Fair Play" or DRM or encryption or security or iTunes or iTS or iTMS or "music store")

4. crack* and (Fairplay or "Fair Play" or DRM or encryption or security or iPod or iTunes or iTMS or iTS or "music store")

5. remov* and (Fairplay or "Fair Play" or DRM or encryption or security)

6. breach* and (Fairplay or "Fair Play" or DRM or encryption or security or iPod or iTS or iTunes or iTMS or "music store")

7. circumvent* and (Fairplay or "Fair Play" or DRM or encryption or security)

8. mimic* and (Fairplay or "Fair Play" or DRM or encryption or iPod)

9. imitat* and (Fairplay or "Fair Play" or DRM or encryption or iPod)

10. "reverse engineer" and (Fairplay or "Fair Play" or DRM or encryption or security)

11. RealNetworks or "Real Networks" and (Fairplay or "Fair Play" or DRM or encryption or security or iPod)

12. Harmony (Date restriction: January 1, 2004 – December 31, 2005)

13. RealNetworks or "Real Networks" and (iTS or iTMS or iTunes or "music store" or "software update")

14. Navio and (hack* or breach* or imitat* or mimic* or "reverse engineer" or circumvent* or crack*) and (FairPlay or "Fair Play" or DRM)

15. "software update" and (iTunes or iTS or iTMS or "music store") and (hack* or circumvent* or "reverse engineer" or strip*)

16. "jon johansen" or "john johansen" or "DVD jon" or "DVD john"

SFI-616238v5

## Amended First Set of Requests for Production

### Market/Market Share

1.  Documents that discuss, analyze, estimate or project market for or market share of iPods or iTS (Nos. 1-3, 13)

    (a)   Custodians

          (i)     Bell, Chris (Director, Product and Music Marketing, iTunes)

          (ii)    Brown, John (Manager, Market Research & Analysis)

          (iii)   Chang, Zeene (Product Marketing Manager)

          (iv)    Cue, Eddy (VP Internet Services)

          (v)     Dillon, Ben (VP Marketing, iTunes--Movies)

          (vi)    Donnelly, Mark (VP, Finance)

          (vii)   Fadell, Tony (Senior VP, iPod Division)

          (viii)  Gupta, Sapna (Senior Market Research Analyst)

          (ix)    Jobs, Steve (CEO)

          (x)     Jozwiak, Greg (VP, iPod & iPhone Product Marketing)

          (xi)    Kvamme, Grace (iTunes Product Manager)

          (xii)   Moerer, Keith (Director iTunes TV/Customer Marketing)

          (xiii)  Ng, Stan (iPod Marketing)

          (xiv)   Rangel, Art (Director, Marketing Research & Analysis)

          (xv)    Rubenstein, Jon (Senior VP, iPod Division)

          (xvi)   Schiller, Phil (Senior VP, Worldwide Product Marketing)

    (b)   Search terms

          (i)     "market share" and (iPod* or iTunes or iTS or iTMS)

          (ii)    NPD

          (iii)   Soundscan or "Sound Scan"

## Sales

2.   Documents that analyze, estimate or project sales of iPods or audio and video files from iTunes (No. 14)

Note: Apple will produce documents sufficient to show sales projections of iPods or audio and video files from iTunes during the relevant time frame.

    (a)   Custodians

        (i)   Bell, Chris (Director, Product and Music Marketing, iTunes)

        (ii)   Brown, John (Manager, Market Research & Analysis)

        (iii)   Chang, Zeene (Product Marketing Manager)

        (iv)   Cue, Eddy (VP, Internet Services)

        (v)   Dillon, Ben (VP Marketing, iTunes--Movies)

        (vi)   Donnelly, Mark (VP, Finance)

        (vii)   Fadell, Tony (Senior VP, iPod Division)

        (viii)   Gupta, Sapna (Senior Market Research Analyst)

        (ix)   Jobs, Steve (CEO)

        (x)   Jozwiak, Greg (VP, iPod Product Marketing)

        (xi)   Kvamme, Grace (iTunes Product Manager)

        (xii)   Moerer, Keith (Director iTunes TV/Customer Marketing)

        (xiii)   Ng, Stan (iPod Marketing)

        (xiv)   Rangel, Art (Director, Marketing Research & Analysis)

        (xv)   Rubenstein, Jon (Senior VP, iPod Division)

        (xvi)   Schiller, Phil (Senior VP, Worldwide Product Marketing)

    (b)   Search Terms

        (i)   Sales NEAR/6 (iPod* or iTunes or iTS or ITMS)

**Competitors**

1.  Internal communications that analyze a competitor's actual, anticipated or potential actions related to DRM in response to the iPod or Apple's iTunes Store (No. 19)

    (a)    Custodians

        (i)    Bar-Nahum, Guy (Director, iPod Software)

        (ii)    Bell, Chris (Director, Product and Music Marketing, iTunes)

        (iii)    Cue, Eddy (VP, Internet Services)

        (iv)    Dillon, Ben (VP Marketing, iTunes--Movies)

        (v)    Dowdy, Tom (Senior Software Engineer, iTunes)

        (vi)    Fadell, Tony (Senior VP, iPod Division)

        (vii)    Farrugia, Augustin (Senior Director, DRM)

        (viii)    Heller, Dave (Director, iTunes Client Engineer)

        (ix)    Jobs, Steve (CEO)

        (x)    Jozwiak, Greg (VP, iPod Product Marketing)

        (xi)    Moerer, Keith (Director iTunes TV/Customer Marketing)

        (xii)    Ng, Stan (iPod Marketing)

        (xiii)    Robbin, Jeff (VP, Engineering, Applications Group)

        (xiv)    Rubenstein, Jon (Senior VP, iPod Division)

        (xv)    Saul, Kevin (Associate General Counsel)

        (xvi)    Schaaff, Tim (Director of Engineering Management, QuickTime)

        (xvii)    Schiller, Phil (Senior VP, Worldwide Product Marketing)

        (xviii)  Tribble, Bud (VP, Software Technology)

    (b)    Search terms

        (i)    hack* and (Fairplay or "Fair Play" or DRM or encryption or security or iPod or iTunes or iTS or ITMS or "music store")

        (ii)    strip* and (Fairplay or "Fair Play" or DRM or encryption or security)

(iii)   break* and (Fairplay or "Fair Play" or DRM or encryption or security or iTunes or iTS or iTMS or "music store")

(iv)   crack* and (Fairplay or "Fair Play" or DRM or encryption or security or iPod or iTunes or iTMS or iTS or "music store")

(v)   remov* and (Fairplay or "Fair Play" or DRM or encryption or security)

(vi)   breach* and (Fairplay or "Fair Play" or DRM or encryption or security or iPod or iTS or iTunes or iTMS or "music store")

(vii)   circumvent* and (Fairplay or "Fair Play" or DRM or encryption or security)

(viii)   mimic* and (Fairplay or "Fair Play" or DRM or encryption or iPod)

(ix)   imitat* and (Fairplay or "Fair Play" or DRM or encryption or iPod)

(x)   "reverse engineer" and (Fairplay or "Fair Play" or DRM or encryption or security)

(xi)   RealNetworks or "Real Networks" and (Fairplay or "Fair Play" or DRM or encryption or security or iPod)

(xii)   Harmony (Date restriction: January 1, 2004 – December 31, 2005)

(xiii)   RealNetworks or "Real Networks" and (iTS or iTMS or iTunes or "music store" or "software update")

(xiv)   Navio and (hack* or breach* or imitat* or mimic* or "reverse engineer" or circumvent* or crack*) and (FairPlay or "Fair Play" or DRM)

(xv)   interoperable and (FairPlay or "Fair Play" or DRM or iPod or iTunes)

(xvi)   interoperability and (FairPlay or "Fair Play" or DRM or iPod or iTunes)

(xvii)   compatible and (FairPlay or "Fair Play" or DRM or iPod or iTunes)

(xviii)   compatibility and (FairPlay or "Fair Play" or DRM or iPod or iTunes)

2.   Communications with Microsoft regarding digital music players, music stores or DRM (No. 6)

(a)   Custodians

(i)   Fithian, Leslie (Senior Director, Software Products Law Group)

(ii)   Schaaff, Tim (Director of Engineering Management, QuickTime)

- 4 -

        (iii)    Schiller, Phil (Senior VP, Worldwide Product Marketing)

    (b)    Search Terms

        (i)    Microsoft and (DRM or FairPlay or "play for sure" or "plays for sure" or "playsforsure" or playsforsure or WMA)

3.    Communications (and any documents analyzing such communications) with RealNetworks, Inc., Archos S.A., D&H Holdings U.S., Inc., or Creative Technologies Ltd. regarding (a) interoperability of iPod with non-iTS files or (b) interoperability of iTS files with non-iPods (No. 7)

    (a)    Still investigating

4.    Documents that discuss or analyze Apple's response to RealNetworks' Harmony Technology (No. 25)

    (a)    Covered by 30(b)(6) Request For Production

**FairPlay**

1.    Internal communications that analyze the compatibility of iTS files protected by FairPlay with any portable digital media player other than iPod (No. 18)

    (a)    Custodians

        (i)    Bar-Nahum, Guy (Director, iPod Software)

        (ii)    Bell, Chris (Director, Product and Music Marketing, iTunes)

        (iii)    Cue, Eddy (VP, Internet Services)

        (iv)    Dillon, Ben (VP Marketing, iTunes--Movies)

        (v)    Dowdy, Tom (Senior Software Engineer, iTunes)

        (vi)    Farrugia, Augustin (Senior Director, DRM)

        (vii)    Heller, Dave (Director, iTunes Client Engineer)

        (viii)    Jobs, Steve (CEO)

        (ix)    Kvamme, Grace (iTunes Product Manager)

        (x)    Moerer, Keith (Director iTunes TV/Customer Marketing)

        (xi)    Rangel, Art (Director, Marketing Research & Analysis)

        (xii)    Robbin, Jeff (VP, Engineering, Applications Group)

- 5 -

       (xiii)   Saul, Kevin (Associate General Counsel)

       (xiv)   Schiller, Phil (Senior VP, Worldwide Product Marketing)

       (xv)   Tribble, Bud (VP, Software Technology)

(b)   Search Terms

     (i)   Interoperable and (DRM or Fairplay or "Fair Play" or iTunes)

     (ii)   Interoperability and (DRM or Fairplay or "Fair Play" or iTunes)

     (iii)   Compatible and (DRM or Fairplay or "Fair Play" or iTunes)

     (iv)   Compatibility and (DRM or Fairplay or "Fair Play" or iTunes)

2.   Documents analyzing impact of FairPlay on sales or market share of iPods or iTS files or profits (Nos. 15-16)

(a)   Custodians

     (i)   Bell, Chris (Director, Product and Music Marketing, iTunes)

     (ii)   Brown, John (Manager, Market Research & Analysis)

     (iii)   Chang, Zeene (Product Marketing Manager)

     (iv)   Cue, Eddy (VP, Internet Services)

     (v)   Dillon, Ben (VP Marketing, iTunes--Movies)

     (vi)   Donnelly, Mark (VP, Finance)

     (vii)   Fadell, Tony (Senior VP of iPod Division)

     (viii)   Gupta, Sapna (Senior Market Research Analyst)

     (ix)   Jobs, Steve (CEO)

     (x)   Jozwiak, Greg (VP, iPod Product Marketing)

     (xi)   Kvamme, Grace (iTunes Product Manager)

     (xii)   Moerer, Keith (Director iTunes TV/Customer Marketing)

     (xiii)   Ng, Stan (iPod Marketing)

     (xiv)   Rangel, Art (Director, Marketing Research & Analysis)

     (xv)   Rubenstein, Jon (Senior VP, iPod Division)

- 6 -

(xvi)   Schiller, Phil (Senior VP, Worldwide Product Marketing)

(b)   Terms

(i)   (FairPlay or "Fair Play") NEAR/15 (sales or profits or "market share")

3.   Internal communications analyzing licensing FairPlay or requests by a company to license FairPlay (No. 17, No. 8)

(a)   Custodians

(i)   Bar-Nahum, Guy (Director, iPod Software)

(ii)   Cue, Eddy (VP, Internet Services)

(iii)   Fadell, Tony (Senior VP of iPod Division)

(iv)   Heller, Dave (Director, iTunes Client Engineer)

(v)   Jobs, Steve (CEO)

(vi)   Jozwiak, Greg (VP, iPod Product Marketing)

(vii)   Ng, Stan (iPod Marketing)

(viii)   Robbin, Jeff (VP, Engineering, Applications Group)

(ix)   Rubenstein, Jon (Senior VP, iPod Division)

(x)   Saul, Kevin (Associate General Counsel)

(xi)   Schiller, Phil (Senior VP, Worldwide Product Marketing)

(xii)   Tribble, Bud (VP, Software Technology)

(b)   Search Terms

(i)   Licens* NEAR/6 FairPlay

4.   Documents that analyze the impact of licensing FairPlay on market share or sales of iPods or iTS files (No. 20)

(a)   Custodians

(i)   Bell, Chris (Director, Product and Music Marketing, iTunes)

(ii)   Brown, John (Manager, Market Research & Analysis)

(iii)   Chang, Zeene (Product Marketing Manager)

    (iv)    Cue; Eddy (VP. Internet Services)

    (v)    Dillon. Ben (VP Marketing. iTunes--Movies)

    (vi)    Donnelly, Mark (VP, Finance)

    (vii)    Fadell, Tony (Senior VP of iPod Division)

    (viii)    Gupta, Sapna (Senior Market Research Analyst)

    (ix)    Jobs, Steve (CEO)

    (x)    Jozwiak, Greg (VP, iPod Product Marketing)

    (xi)    Kvamme, Grace (iTunes Product Manager)

    (xii)    Moerer, Keith (Director iTunes TV/Customer Marketing)

    (xiii)    Ng, Stan (iPod Marketing)

    (xiv)    Rangel, Art (Director, Marketing Research & Analysis)

    (xv)    Schiller, Phil (Senior VP, Worldwide Product Marketing)

    (xvi)    Tribble, Bud (VP, Software Technology)

(b)    Search Terms

    (i)    (Licens* NEAR/6 FairPlay) NEAR/15 "market share"

    (ii)    ((Licens* NEAR/6 FairPlay) NEAR/15 sales) and (iPod* or iTunes or iTS or ITMS)

## DRM Other Than FairPlay

1.    Documents that discuss or analyze use of DRM other than Fairplay (No. 5)

    (a)    Custodians

        (i)    Bar-Nahum, Guy (Director, iPod Software)

        (ii)    Cue, Eddy (VP, Internet Services)

        (iii)    Dowdy, Tom (Senior Software Engineer, iTunes)

        (iv)    Fadell, Tony (Senior VP of iPod Division)

        (v)    Heller, Dave (Director, iTunes Client Engineer)

        (vi)    Jobs, Steve (CEO)

SFI-616532v6

      (vii)    Jozwiak, Greg (VP, iPod Product Marketing)

      (viii)   Ng, Stan (iPod Marketing)

      (ix)    Robbin, Jeff (VP, Engineering, Applications Group)

      (x)     Rubenstein, Jon (Senior VP, iPod Division)

      (xi)    Saul, Kevin (Associate General Counsel)

      (xii)   Schiller, Phil (Senior VP, Worldwide Product Marketing)

      (xiii)  Tribble, Bud (VP, Software Technology)

  (b)   Search Terms

      (i)     DRM and (iPod or iTunes)

2.    Documents that discuss, request, agree to license DRM other than FairPlay (No. 8)

  (a)   Custodians

      (i)     Barn-Nahum, Guy, Director, iPod Software

      (ii)    Cue, Eddy (VP, Internet Services)

      (iii)   Dowdy, Tom (Senior Software Engineer, iTunes)

      (iv)   Fadell, Tony (Senior VP of iPod Division)

      (v)     Heller, Dave (Director, iTunes Client Engineer)

      (vi)    Jobs, Steve (CEO)

      (vii)   Jozwiak, Greg (VP, iPod Product Marketing)

      (viii)   Ng, Stan (iPod Marketing)

      (ix)    Robbin, Jeff (VP, Engineering, Applications Group)

      (x)     Rubenstein, Jon (Senior VP, iPod Division)

      (xi)    Saul, Kevin (Associate General Counsel)

      (xii)   Schiller, Phil (Senior VP, Worldwide Product Marketing)

      (xiii)  Tribble, Bud (VP, Software Technology)

  (b)   Search Terms

   (i)  DRM and licens* and (iPod or iTunes)

3. Documents that analyze impact of using a DRM other than FairPlay on sales or market share of iPods or digital audio files (Nos. 21-22)

  (a) Custodians

    (i)  Bell, Chris (Director, Product and Music Marketing, iTunes)

    (ii)  Brown, John (Manager, Market Research & Analysis)

    (iii)  Chang, Zeene (Product Marketing Manager)

    (iv)  Cue, Eddy (VP, Internet Services)

    (v)  Dillon, Ben (VP Marketing, iTunes--Movies)

    (vi)  Donnelly, Mark (VP, Finance)

    (vii)  Fadell, Tony (Senior VP of iPod Division)

    (viii)  Gupta, Sapna (Senior Market Research Analyst)

    (ix)  Jobs, Steve (CEO)

    (x)  Jozwiak, Greg (VP, iPod Product Marketing)

    (xi)  Kvamme, Grace (iTunes Product Manager)

    (xii)  Moerer, Keith (Director iTunes TV/Customer Marketing)

    (xiii)  Ng, Stan (Director, iPod Marketing)

    (xiv)  Rangel, Art (Director, Marketing Research & Analysis)

    (xv)  Rubenstein, Jon (Senior VP, iPod Division)

    (xvi)  Schiller, Phil (Senior VP, Worldwide Product Marketing)

    (xvii)  Tribble, Bud (VP, Software Technology)

  (b) Terms

    (i)  DRM NEAR/15 (sales or profits or "market share")

**Converting File Formats**

1.   Documents that discuss exporting, burning, converting or ripping digital music files from one format to another format (No. 9)

Apple is still considering the custodians and possible search terms for this request.

# EXHIBIT 28



COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

SAN DIEGO · SAN FRANCISCO
NEW YORK · BOCA RATON
WASHINGTON, DC · ATLANTA
LOS ANGELES · PHILADELPHIA

Thomas R. Merrick
TMerrick@csgrr.com

October 13, 2009

VIA E-MAIL

David C. Kiernan
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104

  Re: *The Apple iPod iTunes Anti-Trust Litigation*,
    No. C-05-00037-JW (N.D. Cal.)

Dear David:

  During our last meet and confer call, you requested that I review Plaintiffs' amended discovery requests and specify which would include data for the iPhone and why. As I explained at the time and in earlier calls and correspondence, the term "iPod" as used in discovery, includes all of Apple's portable digital media players. This would include all models of the iPod and the iPhone. All were enabled to play FairPlay-encrypted iTS files. As an example, we discussed the concept of "market share." You suggested that any documents related to the iPhone's market share would be limited to its share of the smartphone market. However, as I pointed out, any analysis of the portable digital media player market by Apple, would undoubtedly include the iPhone. I recognize that Apple's theory of the case is that differentiation between the products' features is so great that they are incomparable, however, this is ultimately a merits argument that we need discovery to evaluate. I have reviewed the discovery and request that information relating to the iPhone would be included in response to Document Requests 1, 6, 12-15, 19-21, 23 and 29 and Interrogatories 2-4 and 8.

  I also need to follow up on the timing of Apple's document production and supplemental interrogatory responses. As we discussed, we are frankly frustrated with the lack of substantive discovery produced by Apple to date. We have had numerous meet and confer calls since July, and have been trying to get discovery on the software updates since late May. Each time we have talked, it seemed as if we were making progress, and each time you have promised that Apple's rolling production would be beginning shortly.

  Last time, you specifically told me that documents related to Harmony would be produced by the middle of last week. On Wednesday, October 7, Mike Scott called and told me that the production was delayed because Bob Mittelstaedt had to personally review the



COUGHLIN
STOIA
GELLER
RUDMAN
ROBBINS LLP

David C. Kiernan
October 13, 2009
Page 2

production and he was traveling through Friday, October 9. Given the number of attorneys that you have indicated are working on this production, it seems unnecessary that the senior counsel on the case is required to review each production. However, Mike promised production by yesterday. As of today, we have still not seen these documents.

Also during our last call, you told me that you were meeting with Apple on Monday, October 5, and that you would have additional information on Apple's discovery responses and production after that meeting.

Particularly in light of Apple's motion to decertify the 23(b)(3) class based in part on the argument that our expert lacked the data to provide a damages analysis (because Apple refused to produce it), we are concerned that there appears to be no movement on Apple's part to actually produce the documents and other information Plaintiffs have requested. You have seemed agreeable and reasonable in our conversations, but we have not seen actual results from the efforts you assure me are going on behind the scenes. I fear we are being stonewalled. Therefore, unless we begin to see some actual production, we will have no choice but to move to compel.

Please contact me at your earliest convenience to discuss the status of the production.

Very truly yours,

THOMAS R. MERRICK

TRM:hsb

cc:     Bonny Sweeney
        Robert Mittelstaedt
        Paula Roach
        Michael Scott

S:\CasesSD\Apple Tying\Corres\TRM_Kiernan 101309.doc

# EXHIBIT 29

# JONES DAY

555 CALIFORNIA STREET • 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE: 415-626-3939 • FACSIMILE: 415-875-5700

Direct Number: (415) 875-5745
dkiernan@jonesday.com

JP006236:dk                    October 21, 2009
825624-605002

<u>VIA E-MAIL</u>

Thomas R. Merrick
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301

Re:    The Apple iPod iTunes Anti-Trust Litigation No. C-05-00037-JW (N.D. Cal.)

Dear Tom:

This letter responds to your October 19 letter and other discovery items. Once again you mischaracterize the discovery process and make baseless accusations against me. I would prefer to discuss these issues in a professional, respectful way rather than in the tone and manner reflected in your letters and email. It is not productive. I asked you to identify what information you seek for Dr. Noll and the specific document requests they are responsive to. Your letter does neither.

### Document Production

With respect to production, we will produce another installment today or Thursday and will continue to produce on a rolling basis.

During our meet and confer call, I explained that RFP No. 9 is overbroad and requests documents that have nothing to do with this case. You explained that you did not understand the technology well enough and that you would get back to me after you talked to others. Please advise.

We are still considering your request for iPhone-related documents.

### Interrogatories

We are in the process of supplementing responses to Interrogatories 1-3. As I have explained on several occasions, Apple does not maintain the information that plaintiffs request.

Very truly yours,

David C. Kiernan

SFI-621558v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

# EXHIBIT 30



**COUGHLIN STOIA GELLER RUDMAN & ROBBINS** LLP

SAN DIEGO · SAN FRANCISCO
NEW YORK · BOCA RATON
WASHINGTON, DC · ATLANTA
LOS ANGELES · PHILADELPHIA

Thomas R. Merrick
TMerrick@csgrr.com

October 28, 2009

VIA E-MAIL & U.S. MAIL

David C. Kiernan
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104

Re:   *The Apple iPod iTunes Anti-Trust Litigation,*
No. C-05-00037-JW (N.D. Cal.)

Dear David:

I write to follow up on a few of the outstanding discovery matters with regard to Plaintiffs' Rule 30(b)(6) deposition notice and document requests related to software updates, and Plaintiffs' amended first set of requests for production of documents and interrogatories. Plaintiffs would still like to discuss these issues telephonically but provide this letter as an outline of the current outstanding issues.

**30(b)(6) Document Requests**

Back in May of this year, Apple produced a list of iTunes software updates an effort to assist Plaintiffs in narrowing the scope of their 30(b)(6) document. *See* 5.27.09 Mittelstaedt Letter to Sweeney. Plaintiffs were to "select the updates for which [they] seek further discovery including 30(b)(6) testimony, as part of the process of trying to reach agreement on narrowing the scope of [Plaintiffs'] discovery requests." *Id.* The produced list did not provide sufficient information to assist Plaintiffs, and thus, Plaintiffs requested additional information concerning the updates list and proposed that Apple produce documents responsive to Request Nos. 3, 5, 7, and 8. *See* 6.17.09 Sweeney Letter to Mittelstaedt. Plaintiffs also narrowed the scope of these requests. *See id.*

During our July 2, 2009 telephonic meet and confer, you stated that you were working with Apple to better understand the manner in which Apple stores information and were going to identify the software updates intended to address conduct which permitted the direct playback of non-iTS digital audio files on an iPod and/or the direct playback of iTS digital audio files on a non-iPod. While we have received rolling production of responsive documents, we have not received identification of the relevant software updates. Plaintiffs still believe identification of these updates would greatly assist in narrowing the scope of the requested discovery. Please provide accordingly.



COUGHLIN
STOIA
GELLER
RUDMAN
ROBBINS LLP

David C. Kiernan
October 28, 2009
Page 2

Plaintiffs also propose that Apple search the files of the following additional custodians for the 30(b)(6) production: Sima Tamaddon, Chris Bell, Patrice Gautier, Robert Kondrk, Alex Luke, Katie Cotton, and Tim Schaaff.

Plaintiffs want confirmation that this did not affect the searches conducted by Apple.  Plaintiffs also propose searching the additional terms attached.  *See* Attachment A. Plaintiffs are willing to meet and confer further with regard to these terms and any outstanding issues with the previous terms.

Additionally, Plaintiffs have not received a privilege log for the most recent 30(b)(6) rolling production received on October 22, 2009.  Please provide as soon as possible.  Plaintiffs also seek clarification the requests to which the October 22 production was responsive.  The cover letter merely stated that the documents were "primarily responsive to plaintiffs' 30(b)(6) requests."  *See* 10.22.09 Scott Letter to Merrick.  Please clarify what other requests, if any, these documents are responsive to.

Moreover, during our previous conversations you stated that Apple culled responsive documents in 2007 and that these were being searched.  It is unclear from the production to date whether additional documents from 2008 and 2009 were searched.  Please clarify.

**Amended Discovery Requests**

There are several outstanding issues with regard to the amended discovery requests. First and most importantly, we would like an update of Apple's progress in document production for the amended requests and want a date certain when rolling production on these requests is expected to begin.

Second, on our October 2, 2009 telephonic meet and confer you stated that you were analyzing the cost of producing customer complaints and would get back to us after your October 9, 2009 meeting with Apple.  Please provide an update on whether Apple will be producing updated customer complaints.

Third, with respect to RFP No. 9, the codecs provided in the example ("For example, the conversion of AAC files to MP3 files.") are not critical.  This request is intended to seek documents regarding the use of "burning and ripping" to remove FairPlay from iTS files.  For example, if there was any discussion with record labels concerning customers' ability to burn and rip iTS files to remove FairPlay, that would be responsive to Plaintiffs' request.

Fourth, during our October 2, 2009 call

If this is the case, Apple must produce the information in the manner that it is kept but can provide a description of the limitation of the data (e.g. paid X for Y license for


COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

David C. Kiernan
October 28, 2009
Page 3

one year unlimited worldwide use). Information concerning licenses used in iPods and iTS files sold in the United States is relevant and reasonably calculated to lead to the discovery of admissible evidence whether or not those licenses are purchased only for use in iPods and iTS files sold in the United States. Please produce accordingly.

Fifth, in response to RFP Nos. 23 and 29, Apple produced a spreadsheet bates stamped Apple_AIIA00090373 – AIIA00090378 which indicates the total number of iPods sold in the United States, and the revenue and standard costs for iPods for each quarter from Q1 FY 2002 to Q2 FY 2009. While this information is responsive to RFP No. 23 it is not responsive to RFP No. 29. RFP No. 29 requests documents sufficient to show the number of iPods "sold directly by Apple in the United States" from April 28, 2003 to the present. Apple objected to the phrase "sold directly." The term "directly" has been used continuously in this litigation to mean sold by Apple either to consumers through their online or retail stores or to resellers or wholesalers. Indeed, this is the certified Class. Thus, Plaintiffs seek documents sufficient to distinguish between the number of iPods sold by Apple through retail stores and the number of iPods sold by Apple to retailers and wholesalers. Please provide this information.

Finally, on the October 2 call you raised several issues concerning the proposed custodians and search terms for the amended document requests. You stated that for requests related to competitors you were going to meet with Apple on October 5 to determine which Apple employees would have relevant documents. You said you get back to me by the middle of the following week but I have not heard anything to date. Please provide this list. We also discussed Apple's licensing of FairPlay to Motorola and HP and you said you would get back to me on how best to search for relevant documents. Please provide an update.

We would like to discuss the above issues as soon as possible. Please let me know when you are available to discuss the week of October 26 and if you have any questions. I look forward to hearing from you.

Very truly yours,

THOMAS R. MERRICK

TRM:hsb

cc:  Bonny Sweeney (via email)
     Paula Roach (via email)
     Robert A. Mittelstaedt (via email)
     Michael T. Scott (via email)

S:\CasesSD\Apple Tying\Corres\TRM_Kiernan 102809.doc

202   115

**Attachment A**

**Additional 30(b)(6) Search Terms – Software Updates**
**October 29, 2009**

Broke* w/5 DRM or FairPlay or Fair Play

Hymn

Jhymn

Pymusique

Pymusic

Pytunes

Qtfairuse

Playfair

Fairkeys

Unlock* w/5 DRM or FairPlay or Fair Play or iTunes or iTS or iTMS

# EXHIBIT 31

# JONES DAY

555 CALIFORNIA STREET · 26TH FLOOR · SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE: 415-626-3939 · FACSIMILE: 415-875-5700

Direct Number: (415) 875-5745
dkiernan@jonesday.com

JP006236:dk                                November 11, 2009
825624-605002

<u>VIA E-MAIL</u>

Thomas R. Merrick
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301

Re:     <u>The Apple iPod iTunes Anti-Trust Litigation No. C-05-00037-JW (N.D. Cal.)</u>

Dear Tom:

This letter responds to your letter to me dated October 28, 2009 regarding outstanding discovery matters.

### 30(b)(6) Document Requests

1.     Apple is still investigating whether there are documents sufficient to identify software updates expressly intended to address conduct by competitors or hackers to permit direct playback of protected iTS files on a non-iPod or protected non-iTunes files on an iPod.

2.     Apple has run the additional searches proposed in Attachment A to your letter and is currently reviewing those documents for responsiveness and privilege.  Apple also agrees to add Sina Tamaddon, Patrice Gautier, Chris Bell, and Tim Schaff to the 30(b)(6) list of custodians.  Please provide further explanation why for searching the files of Katie Cotton, Alex Luke, and Robert Kondrk.

3.     The spelling of Mr. Jozwiak's name had no impact on searching.

4.     Apple will continue, as it has done, to produce privilege logs on a rolling basis.

5.     Apple objects to your request that it go through the production and identify the requests to which the produced documents are responsive.  Your request is unduly burdensome and oppressive.  Notably, we are not reviewing and producing documents by document request.  Instead, we are reviewing and producing documents in response to the agreed upon keyword searches in the possession of agreed upon custodians.  And we have produced the metadata, which tells you the custodian of the document.  Moreover, many documents are responsive to more than one request.  We are open to evaluating a particular document or category of documents for which you have a question.

6.     Apple has updated the collections for most of the custodians on the 30(b)(6) list and is in the process of obtaining updates for the remaining custodians.

SFI-622726v1

ATLANTA · BEIJING · BRUSSELS · CHICAGO · CLEVELAND · COLUMBUS · DALLAS · DUBAI · FRANKFURT · HONG KONG · HOUSTON
IRVINE · LONDON · LOS ANGELES · MADRID · MEXICO CITY · MILAN · MOSCOW · MUNICH · NEW DELHI · NEW YORK · PARIS · PITTSBURGH
SAN DIEGO · SAN FRANCISCO · SHANGHAI · SILICON VALLEY · SINGAPORE · SYDNEY · TAIPEI · TOKYO · WASHINGTON

**JONES DAY**

Thomas R. Merrick
November 11, 2009
Page 2

**Update on Amended Discovery Requests**

    1.     We have fifteen lawyers reviewing documents for responsiveness and privilege and have started producing documents on a rolling basis. The keywords are still overbroad and need to be narrowed. For example, the term "iTS" picks up every document with word "its." We are working on a proposal.

    2.     Apple is still investigating the cost of producing additional customer complaints.

    3.     Apple acknowledges plaintiffs' limitation to the scope of RFP No. 9.

    4.     We continue to work on obtaining the information for interrogatories 1-3.

    5.     The spreadsheet labeled Apple_AIIA00090373 – Apple_AIIA00090378 is in fact responsive to RFP No. 29, as it reflects "the number of iPods 'sold directly by Apple in the United States,'" including sales to both consumers who purchased iPods through Apple's online or retail stores and sales to retailers and wholesalers. Thus, both RFP Nos. 28 and 29 have been satisfied in full.

    6.     Apple has confirmed that the custodians on the current list are those most likely to have had communications with RealNetworks, Inc., Archos S.A., D&H Holdings U.S., Inc., or Creative Technologies Ltd. regarding (a) interoperability of iPod with non-iTS files or (b) interoperability of iTS files with non-iPods.

    7.     Finally, Apple did not license FairPlay to Motorola or HP.

As always, please feel free to call if you have any questions.

Very truly yours,

*David Kiernan/cw*

David C. Kiernan

# EXHIBIT 32

# JONES DAY

555 CALIFORNIA STREET • 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE: 415-626-3939 • FACSIMILE: 415-875-5700

Direct Number: (415) 875-5765
tstrong@jonesday.com

August 28, 2007

VIA EMAIL

Greg Weston, Esq.
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 9210-3301

Re:   *Apple iPod iTunes Antitrust Litigation*, Case No. 05-00037-JW

Dear Greg:

The following responds to your August 21, 2007 letter regarding Apple's supplemental responses and document production.

I discovered after speaking with you that Apple only has unofficial translations of drafts of the produced European documents. These translations of the drafts were created for Apple by its attorneys for discussion purposes, and include comments by the attorneys. The draft translations are thus protected by the attorney-client privilege and work product doctrine.

Regarding the *Napster* production, Apple has confidentiality obligations under its digital music agreements with the record labels preventing disclosure of the agreements and related documents and information without the labels' consent. We are attempting to obtain consent to produce this material. In the meantime, we will produce the documents that do not implicate these confidentiality obligations.

For Request No. 10, we did not supplement or revise our objections to that request, but continue to assert the previously stated objections. In particular, we continue to object that discovery of profit and loss data is not related to class certification issues and is thus not permitted under Judge Ware's July 20, 2007 order. We disagree that the July 20 order allows any "de minimus" discovery even if not class-related. The Court's description of "de minimus" in footnote one of the order includes only documents previously produced in other litigation and does not support your interpretation. In any event, Request No. 10 requires more than the mere removal of redaction tape. Instead, it seeks all profit and loss statements for iTunes for a three-year period and for all iPod models for a six-year period, and all documents "used in the production of these Documents." Bonny Sweeney also stated in a letter dated June 8, 2007 that this request seeks embedded electronic metadata (such as "other pages, hidden fields, formulae and workbooks") for documents previously produced in hard copy. Review and production of all of these documents and data creates more than a "de minimus" burden.

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS
PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Greg Weston
August 28, 2007
Page 2

        Document hold orders created in anticipation of or during litigation are protected by the
attorney-client privilege and work product doctrine.

        Finally, we continue to object to producing 30(b)(6) witnesses on the topics listed in the
first notice. On the organizational structure topics (1-6), it is unduly burdensome to prepare and
produce for deposition several officers, directors or managers whose testimony will consist of
stating the names and job duties for potentially hundreds of Apple employees in at least 22
different aspects of Apple's business. Ms. Sweeney's June 8 letter suggested that plaintiffs were
willing to defer deposition on the topics in the first deposition notice if Apple produced
documents responsive to Request No. 22. Apple has produced organizational charts for relevant
groups within the company. Likewise, on the topics of corporate rules, policies and practices
concerning document retention (7-8), Apple has already produced its corporate records retention
policy. If plaintiffs require further information, it would be much more efficiently obtained
informally through the meet and confer process or through interrogatories. We are willing to
discuss further what additional information you are seeking and reasonable methods of obtaining
it.

                                        Very truly yours,

                                        Tracy M. Strong

cc:     Todd Carpenter
        Bonny Sweeney
        Andrew Friedman
        Roy Katriel

# EXHIBIT 33

# JONES DAY

555 CALIFORNIA STREET • 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104-1800
TELEPHONE: 415-626-3939 • FACSIMILE: 415-875-5700

Direct Number: (415) 875-5765
tstrong@jonesday.com

September 26, 2007

VIA EMAIL

Greg Weston, Esq.
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 9210-3301

REC'D SEP 2 7 2007

Re:   *Apple iPod iTunes Antitrust Litigation*, Case No. 05-00037-JW

Dear Greg:

The following responds to your September 14, 2007 letter regarding discovery issues.

Enclosed is a privilege log of all documents withheld to date. Also enclosed (larger than nine megabytes) is a further set of documents in response to Request No. 22 (Bates numbered Apple AIIA 00002426-2876) and documents from the Napster production that are not covered by the confidentiality provisions with the record labels (Bates numbered Apple AIIA 00002877-3213). Please note that the Napster production documents are designated Confidential Attorneys' Eyes Only. Our production of the documents in response to Request No. 22 is taking longer than expected but we will continue to provide responsive documents on a rolling basis.

Regarding the confidentiality obligations with the record labels, Apple's contract with each label contains a provision that requires Apple to obtain the label's written consent before disclosing the terms of the agreement or any information obtained during the negotiation of the agreement or as a result of the relationship conducted pursuant to the agreement. Because there are third party privacy rights involved, the protective order in this case is not sufficient to allow production. Apple is working to obtain each label's consent. We do not anticipate any withholding of consent but it is taking time to obtain consents.

On Request No. 10, as we previously stated, the production of profit and loss statements is not related to class certification issues and is thus not required under Judge Ware's July 20, 2007 order. We disagree that any merits-based discovery is allowed simply because plaintiffs contend it is "de minimus." That would circumvent the limit on discovery to class-related issues.

We would like to reach some accommodation on the 30(b)(6) issue and have a proposal for you to consider. If plaintiffs' purpose is to obtain information to help identify potential deponents, taking a 30(b)(6) deposition on the topics in your notice is certainly not an appropriate way to gain that information. Plus, many of the topics have no relevancy, such as the manner by which a member of the Board of Directors attained that position. Indeed, if the

SFI-570271v2

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS
PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

Greg Weston
September 26, 2007
Page 2

identity of Board members (which is another topic in the notice) had any relevancy to this case and if your purpose were anything other than harassment, you could easily get that information off of Apple's website. Judge Ware's order limited discovery to "preliminary issues of Defendant's organizational structure." The order does not prescribe the method of discovery, and at this stage "preliminary" information is more appropriately obtained through informal discovery or formal interrogatories before delving into an expensive deposition process with multiple deponents on topics of limited relevance. Moreover, the deposition notice goes beyond simple organizational structure to seek job descriptions and identification of every employee that may have touched any aspect of the iPod or iTunes business for seven years. With that as background, our proposal is that you set forth as precisely as you can what type of organizational information you want, and we will consider providing it to you by informal letter or formal interrogatory response. Again, if as you say your purpose is to identify potential deponents, this will be the most expeditious way to do so. Your letter says you would want some follow-up or clarification. Again, just let us know what information you want, and we will consider providing it.

Finally, we have provided you with Apple's document retention policies. For this litigation, Apple is currently retaining all forms of hard copy documents and all forms of electronic information such as e-mails, instant messaging (such as iChat) transcripts and voicemail messages, to the extent they fall within the substantive topics in the document hold orders. We will consider providing you with a list of those substantive topics subject to your proposed stipulation that such disclosure does not constitute a waiver of any privilege or work product protection.

Very truly yours,

Tracy M. Strong

cc:   Todd Carpenter
      Bonny Sweeney
      Andrew Friedman
      Roy Katriel

SFI-570271v2

# EXHIBIT 34

1              IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                     SAN JOSE DIVISION

4

5                              )   C-05-00037-JW
                               )
6      "THE APPLE IPOD ITUNES  )   NOVEMBER 23, 2009
       ANTITRUST LITIGATION."  )
7                              )
                               )
8                              )   PAGES 1 - 58
                               )
9      ------------------------

10

11           THE PROCEEDINGS WERE HELD BEFORE

12        THE HONORABLE UNITED STATES DISTRICT

13                  JUDGE JAMES WARE

14   A P P E A R A N C E S:

15   FOR THE PLAINTIFFS: COUGHLIN, STOIA, GELLER, RUDMAN
                         & ROBBINS
16                       BY:  BONNY SWEENEY
                              THOMAS R. MERRICK
17                       655 WEST BROADWAY
                         SUITE 1900
18                       SAN DIEGO, CALIFORNIA 92101

19                       ZELDES & HAEGGQUIST
                         BY:  HELEN ZELDES
20                       625 BROADWAY, SUITE 906
                         SAN DIEGO, CALIFORNIA 92102
21
22   FOR THE DEFENDANTS: JONES DAY
                         BY:  ROBERT A. MITTELSTAEDT
22                            MICHAEL SCOTT
23                       555 CALIFORNIA STREET
                         26TH FLOOR
24                       SAN FRANCISCO, CALIFORNIA 94104

25   OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
                              CERTIFICATE NUMBER 8074

                                                        1

1    STEREO OR THEIR HOME STEREO.

2              OR THEY, AFTER BURNING, THEY RIPPED IT

3    BACK TO THEIR COMPUTER AND NOW THEY'RE PLAYING IT

4    ON IPOD COMPETITORS BECAUSE THE PROCESS OF BURNING

5    DESTROYS THE DRM.

6              OR ITUNES PURCHASERS, IF THEY HAVE BOUGHT

7    MUSIC SINCE EARLY 2007 AND THEY BOUGHT EMI, ONE OF

8    THE LABEL'S MUSIC, THAT WAS ALL DRM FREE FROM EARLY

9    2007.

10             SO THERE ARE A LOT OF MUSIC PURCHASERS

11   OUT THERE WHO ARE NOT HARMED IN THE SLIGHTEST BY

12   PLAINTIFF'S THEORY OF LACK OF INTEROPERABILITY.

13             THE CLASS THAT THEY WANT YOUR HONOR TO

14   ADD, ITUNES MUSIC PURCHASERS, THEY HAVE GOT TO SHOW

15   A COUPLE OF THINGS.  ONE, THEY HAVE TO SHOW THAT

16   IT'S THE PRIMARY RELIEF THAT THEY'RE SEEKING FOR

17   THESE PEOPLE.

18             IN ORDER TO CERTIFY A (B)(2) CLASS THE

19   PLAINTIFFS HAVE TO SHOW THE INJUNCTIVE RELIEF IS

20   THE PREDOMINANT RELIEF THAT THEY'RE SEEKING.

21             BUT IF PROVIDING DRM FREE MUSIC TO THESE

22   PEOPLE WOULD NOT GIVE THEM ANY BENEFIT, IT'S PEOPLE

23   WHO ARE PERFECTLY HAPPY, MAYBE PEOPLE WHO DON'T

24   EVEN KNOW THERE IS DRM ON THEIR MUSIC.

25             IF THOSE PEOPLE WOULDN'T BE BENEFITTED BY

27

# EXHIBIT 35



SAN DIEGO • SAN FRANCISCO
NEW YORK • BOCA RATON
WASHINGTON, DC • ATLANTA
LOS ANGELES • PHILADELPHIA

Thomas R. Merrick
TMerrick@csgrr.com

June 18, 2009

<u>VIA ELECTRONIC MAIL ONY</u>

Robert A. Mittelstaedt
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104

     Re:    *The Apple iPod iTunes Anti-Trust Litigation*
            No. C-05-00037-JW (N.D. Cal.)

Dear Bob:

     I write regarding the scope of Plaintiffs' 30(b)(6) deposition topics and related document requests. Below, I first address the list of software updates produced by Apple on May 27, 2009, as a compromise to full document production. Second, I discuss Plaintiffs' proposal regarding document production intended to supplement discovery on the narrowed software updates list.

### SOFTWARE UPDATES LIST

     During our May 6, 2009 telephonic meet and confer on the scope of Plaintiffs' 30(b)(6) topics and document requests related to software updates, Apple expressed that the topics were too broad, went beyond the scope of Plaintiffs' claims and would be overly burdensome for Apple to respond. In compromise, Apple agreed to produce "a summary of the various software updates" so that Plaintiffs could determine which software updates to seek additional detail, either by document production or testimony. *See* 5/6/09 Mittelstaedt Email. Apple also recognized that Plaintiffs are "particularly interested in late 2004 updates" which are relevant to the RealNetworks incident alleged in the Complaint. *See id.* Plaintiffs also agreed to delay the noticed date of deposition and the time for responding to the notice and requests. Plaintiffs reserved their rights to seek compliance with the entire notice and requests and Apple reserved its right to object or move for protective order.

     Under this compromise, Plaintiffs understood that Apple would produce documents depicting the nature of the software updates such that Plaintiffs could determine which software updates they would need more information on. Plaintiffs do not believe the information produced is sufficient to achieve this end. The information provided lacks



COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

Robert A. Mittelstaedt
June 18, 2009
Page 2

necessary detail on the purpose of the updates and does not appear to be inclusive of all of the relevant updates. Additionally, the list appears to be "cut and pasted" into a document from multiple sources and even includes random editorial comments. Without more information, Plaintiffs are unable to sufficiently narrow the list of software updates for purposes of deposition.

Thus, Plaintiffs have selected software updates from the produced list that may or may not be the future subject of deposition and request more information on the purpose and content of the narrowed list of updates. *See Attached Chart.* To the extent Plaintiffs request information on only one dated entry for a particular iTunes update, that date is identified. Where no date is identified, Plaintiffs request information on the entire set of updates for that particular iTunes version. As an initial step and to further minimize the burden of this request, Plaintiffs request a sample of the type of information that is available concerning the purpose and content of the identified software updates. Plaintiffs are hopeful that after review of this information they will be able to further narrow the list of software updates for which additional discovery or deposition will be sought. This proposal, however, in no way waives Plaintiffs' right to seek discovery concerning additional or all software updates.

Plaintiffs also request general information about the list of updates produced by Apple so that Plaintiffs may put the information in appropriate context. Accordingly, Plaintiffs request: (1) the source of the information; (2) whether information on software updates is kept in this form in the regular course of business; and (3) the source of the commentary for particular updates. *See, e.g.,* 3.0a4; 4.1d1 (5/28/03); 6.0.2d15/6.0.2.15.

## PLAINTIFFS' PROPOSED COMPROMISE ON DISCOVERY PRODUCTION

As an initial matter, Plaintiffs have concerns regarding Apple's "Privilege Objection" and "Sufficient to Show Objection." With respect to the "Privilege Objection," Plaintiffs are concerned that, as phrased, the objection could be read to allow Apple to withhold critical information well beyond what is normally protected. It is our understanding that Apple has consistently anticipated litigation against any third party that attempted to find a way for non-iTunes digital audio files to be played directly on an iPod and/or for iTunes digital audio files to be played directly on a non-iPod. Read broadly, the "Privilege Objection" would allow Apple to withhold information regarding software updates to block these efforts because they were "taken during or in anticipation of litigation." For example, the RealNetworks dispute detailed in the Consolidated Complaint could have lead to litigation and Apple has in the past aggressively pursued protection of its perceived interests through the use of cease and desist letters. Please confirm that it is not Apple's intention to rely on its "Privilege Objection" to withhold such obviously relevant and responsive information.

With respect to Apple's "Sufficient to Show Objection," Plaintiffs are unaware of the legal basis for this objection and are unclear as to what exactly Apple has in mind when it



COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

Robert A. Mittelstaedt
June 18, 2009
Page 3

states that its "production will be on a 'Sufficient to Show' basis." Plaintiffs are willing to meet and confer on the scope of their requests, but do not agree to Apple unilaterally deciding what it believes is "sufficient" for Plaintiffs to prove their case.

Additionally, Plaintiffs propose the following compromise on the below document requests. Plaintiffs believe this will provide information necessary to supplement the requested software update information and will place the minimum burden on Apple possible. Accordingly, Plaintiffs propose that Apple, in addition to the above, respond to Document Request Nos. 3, 5, 7, and 8 with the following limiters. Plaintiffs, however, continue to reserve their right to seek full production of all information responsive to their requests.

**Request No. 3**

Request No. 3 seeks production of all documents and communications that discuss or otherwise memorialize the effects of any software update on a competitor. Plaintiffs propose to limit this request to seek production of all documents and communications that discuss or otherwise memorialize software updates intended to address conduct which permitted the direct playback of non-iTunes digital audio files on an iPod and/or the direct playback of iTunes digital audio files on a non-iPod.

Plaintiffs understand, based on public information, that Apple has issued software updates intended to address, at least in part, competitors' attempts, whether legal or illegal, to enable the direct playback of non-iTunes digital audio files on an iPod and/or the direct playback of iTunes digital audio files on a non-iPod. Plaintiffs are particularly interested in documents or communications that discuss these updates. To the extent Apple asserts its "Privilege Objection," please provide a privilege log which will enable Plaintiffs to evaluate Apple's privilege claims.

**Request No. 5**

Request No. 5 seeks production of all documents and communications which propose, describe, explain, address, analyze or otherwise relate to Apple's response to RealNetwork's introduction of Real's Harmony in 2004. Plaintiffs seek documents responsive to this entire request. In 2004, Apple publicly stated: "We strongly caution Real and their customers that when we update our iPod software from time to time it is highly likely that Real's Harmony technology will cease to work with current and future iPods." Plaintiffs seek discovery on these updates. To the extent these updates are included in the produced list of updates referenced above, please identify them specifically. Additionally, if Apple asserts its "Privilege Objection," please provide a privilege log which will enable Plaintiffs to evaluate Apple's privilege claims.



COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

Robert A. Mittelstaedt
June 18, 2009
Page 4

**Request No. 7**

This request seeks production of all communications between Apple and the labels concerning software updates. The term "labels" is intended to mean the major record labels which Apple has contracted with to purchase and resell music to consumers and which contracts have been previously produced to Plaintiffs.

Plaintiffs seek production of the communications made pursuant to the contracts and any other communications between Apple and the record labels concerning software updates that sought to address "hacks" or breaches which permitted or attempted to permit the direct playback of non-iTunes digital audio files on an iPod and/or the direct playback of iTunes digital audio files on a non-iPod, whether the communications were made pursuant to contract or not.

**Request No. 8**

Request No. 8 seeks production of all documents which depict the organizational relationship of all Apple employees or consultants who propose, originate, develop, manage, create, or otherwise contribute to the generation of each software update. Plaintiffs seek documents responsive to this request which concern software updates related to the direct playback of digital audio files on portable digital media players. To the extent Apple asserts its "Privilege Objection," please provide a privilege log which will enable Plaintiffs to evaluate Apple's privilege claims.

We remain hopeful that the parties can come to an agreement on the pending discovery without intervention of the court. Please do not hesitate to call me or Paula Roach if you have any questions.

Very truly yours,

*Thomas Merrick /pm*

THOMAS R. MERRICK

TRM:sll
Attachment

cc:     Bonny E. Sweeney
        Paula M. Roach
        Frank J. Balint
        David C. Kiernan

S:\CasesSD\Apple Tying\Corres\TRM_Middlestat 61709.doc

[Filed Under Seal]