# EXHIBIT 1

1-18

1  LERACH COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  JOHN J. STOIA, JR. (141757)
   BONNY E. SWEENEY (176174)
3  CHRISTOPHER M. BURKE (214799)
   655 West Broadway, Suite 1900
4  San Diego, CA 92101
   Telephone: 619/231-1058
5  619/231-7423 (fax)
   jstoia@lerachlaw.com
6  bsweeney@lerachlaw.com
   cburke@lerachlaw.com
7
   BONNETT, FAIRBOURN, FRIEDMAN
8    & BALINT, P.C.
   ANDREW S. FRIEDMAN
9  ELAINE A. RYAN
   TODD D. CARPENTER
10 2901 N. Central Avenue, Suite 1000
   Phoenix, AZ 85012
11 Telephone: 602/274-1100
   602/274-1199 (fax)
12 afriedman@bffb.com
   eryan@bffb.com
13 tcarpenter@bffb.com

14 Attorneys for Plaintiff

15                UNITED STATES DISTRICT COURT

16               NORTHERN DISTRICT OF CALIFORNIA

17                      SAN JOSE DIVISION

18 MELANIE TUCKER, On Behalf of Herself  )  No. C-06-04457-JW
   and All Others Similarly Situated,     )
19                                         )  CLASS ACTION
                     Plaintiff,            )
20                                         )  PLAINTIFF MELANIE TUCKER'S FIRST
         vs.                               )  SET OF REQUESTS FOR PRODUCTION
21                                         )  OF DOCUMENTS TO DEFENDANT
   APPLE COMPUTER, INC., a California      )  APPLE, INC.
22 corporation,                            )
                                           )
23                   Defendant.            )
                                           )
24

25 PROPOUNDING PARTY:       Plaintiff Melanie Tucker

26 RESPONDING PARTY:        Defendant Apple, Inc.

27 SET NUMBER:              One

28

TO:    DEFENDANTS AND COUNSEL OF RECORD

Pursuant to Fed. R. Civ. P. 34, Plaintiff Melanie Tucker requests defendant Apple, Inc. f/k/a Apple Computer, Inc. ("Apple" or "defendant"), to produce and permit her counsel to inspect and copy the documents described herein which are in Apple's possession, custody or control, at the law offices of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, 100 Pine Street, Suite 2600, San Francisco, CA 94111.

**I.  DEFINITIONS**

1.    "Apple" means defendant Apple, Inc. and any of its predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of its present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on its behalf.

2.    The "Big Four" refers to the largest four music recording companies. The companies are Sony BMG, Warner Music Group, EMI, and Universal Music Group and any of their predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

3.    "Communication(s)"refers to any exchange of information by any means of transmission, sending or receipt of information of any kind by or through any means including, but not limited to, speech, writings, Documents, language (machine, foreign or otherwise) of any kind, computer electronics or Electronic Data, electronic mail ("e-mail"), instant messages, voicemail, sound, radio or video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche, photographic film of all types or other media of any kind. The term "communication" also includes, without limitation, all inquiries, discussions, conversations, correspondence, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, or press, publicity or trade releases.

4.    "Concerning" shall mean constituting, analyzing, discussing, evaluating, estimating, measuring, evidencing, reflecting, incorporating, effecting, including, or otherwise pertaining or

1  relating, either directly or indirectly, or being in any way logically or factually connected with the

2  subject matter of the inquiry or Request. Requests for Documents Concerning any subject matter

3  include Documents Concerning communication regarding that subject matter.

4       5.     "Cost of Manufacturing" refers to the manufacturing standard cost figure that Apple

5  refers to in Note 11 of the Notes to Consolidated Financial Statements, located on page 110 of

6  Apple's Annual Report (10-K), filed with the Securities and Exchange Commission on or about

7  December 29, 2006.

8       6.     "Current Cost of Manufacturing" means refers to the cost of manufacturing using

9  estimates from the quarter ending July 1, 2006, or a more recent quarter if available.

10      7.     "Digital Music File" means a computer file containing audio data, regardless of

11 format, including without limitation, AAC, FLAC, MP3, Real Audio, WAV and WMA, that can be

12 played on a computer or other device that utilizes computer software (*e.g.*, a Digital Music Player).

13      8.     "Digital Music Player" means any device that can be easily transported, weighs less

14 than 12 ounces, is capable of playing a digital music file, can store more than 150 music files

15 assuming an average file size of 3.0 megabytes but does not employ external media such as compact

16 discs, cartridges, cassettes or compact flash cards.

17      9.     The term "Document(s)" is intended to be interpreted in the broadest possible sense

18 and includes, but is not limited to, all Electronic Data and all Communications which are stored or

19 retrievable or recorded in any manner and also includes, without limitation, any writing or other

20 record of information or images, including, but not limited to, print, handwriting, photographs, film,

21 recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge

22 slips, letters, electronic mail ("e-mail"), compact discs, CDROM discs, magnetic tape, videotape,

23 magnetic or optical disks, floppy disks, PowerPoint or other presentation software systems, metadata

24 belonging to any electronic Document, telegrams, mailgrams, correspondence, notes and minutes of

25 meetings, conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports,

26 projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits,

27 interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps,

28 manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars,

PLAINTIFF MELANIE TUCKER'S FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT APPLE, INC. - C-06-04457-JW                          - 2 -

1   appointment books, circulars, charts, transcripts, news releases, trade releases, advertisements, press

2   books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards,

3   computer printouts and data, telecopier or facsimile transmissions and printouts, letters of credit,

4   stock certificates and securities. The term "Document" also includes preliminary drafts or revisions

5   or copies of any such Document if the copy is in any way different from the original, now in your

6   possession, custody or control, or in the possession, custody or control of your advisors, agents,

7   employees, servants, representatives, trustees, counsel or other persons acting or purporting to act on

8   your behalf.

9       10.    "DRM" refers to digital rights management software and technology, *e.g.*, Apple's

10  FairPlay.

11      11.    "Electronic Data" refers to any original and any non-identical copies (whether non-

12  identical because of notes made on copies or attached comments, annotations, marks, transmission

13  notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital or

14  other programs (whether private, commercial, or work-in-progress), programming notes or

15  instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use

16  of any software program, including word processing Documents, spreadsheets, database files, charts,

17  graphs and outlines, electronic mail ("e-mail"), personal digital assistant ("PDA") messages, instant

18  messenger messages, operating systems, source code of all types, programming languages, linkers

19  and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code

20  keys, pull down tables, logs, file layouts and any and all miscellaneous files or file fragments,

21  regardless of the media on which they reside and regardless of whether said Electronic Data consists

22  of an active file, deleted file or file fragment. "Electronic Data" also includes any and all items

23  stored on computer memory or memories, hard disks, floppy disks, zip drives, CDROM discs,

24  Bernoulli Boxes and their equivalents, magnetic tapes of all types and kinds, microfiche, punched

25  cards, punched tape, computer chips (including, but not limited to, EPROM, PROM, ROM or RAM

26  of any kind) on or in any other vehicle for digital data storage or transmittal, files, folder tabs, or

27  containers and labels appended to or associated with any physical storage device associated with

28  each original and each copy.

1    12.    The term "Financial Statements" includes, but is not limited to, interim, final, pro

2  forma, actual, projected, complete, or partial, annual, quarterly, monthly, weekly or otherwise,

3  audited or unaudited, budgets, budget plans, balance sheets, schedules of direct costs, schedules of

4  miscellaneous income, schedules of general services, fiscal serviceman administrative services,

5  statements of earnings and earnings per share, income statements, cash flow statements, statement of

6  revenues and statements of expenses, all notes or other commentary concerning any of the foregoing

7  and all underlying work papers and all drafts used in connection with the preparation of any of the

8  foregoing.

9    13.    "iTMS" or "iTunes Music Store" or "Apple's Online Music Store" means Apple's

10  iTunes Store, previously called iTunes Music Store.

11    14.    "iPod" refers to the Digital Music Players manufactured by Apple, including iPod,

12  iPod photo, iPod mini, iPod nano and iPod shuffle.

13    15.    "Online Music Store" relates to any place on the Internet from which Digital Music

14  Files may be purchased and downloaded.

15    16.    The term "Telephone Records" includes, without limitation, telephone directories,

16  rolodexes, messages, telephone logs, recordings of telephone conversations and telephone bills (local

17  and long distance).

18    17.    "You" or "Your" refers to Apple.

19  **II. INSTRUCTIONS**

20    1.    Words used in the plural include the singular, and words used in the singular include

21  the plural.

22    2.    The words "and" and "or" shall be used interchangeably and interpreted in the most

23  inclusive manner possible.

24    3.    All Documents shall be produced in the order they are kept in the ordinary course of

25  business, and shall be produced in their original folders, binders, covers or containers, or facsimile

26 

27  thereof.

28

1     4.     These requests relate to all Documents which are in your possession, custody or

2 control.

3     5.     You shall produce the original of each Document described below or if the original is

4 not in your custody, then a copy thereof, and in any event, all non-identical copies which differ from

5 the original or from the other copies produced for any reason, including, but not limited to, the

6

7 making of notes thereon.

8     6.     If production of Documents is withheld on the ground of privilege, as to each such

9 withheld Document provide the following information no later than the first date on which

10 Documents are produced:

11     (a)     which privilege is claimed;

12     (b)     a precise statement of the facts upon which said claim of privilege is based;

13     (c)     the following information describing each purportedly privileged document:

14

15         (i)     its nature (*e.g.*, agreement, letter, memorandum, tape);

16         (ii)     the date it was prepared;

17         (iii)     the date it bears;

18         (iv)     the date it was sent;

19         (v)     the date it was received;

20         (vi)     the name, employer and job title of the person preparing it;

21         (vii)     the name, employer and job title of the person sending it;

22

23         (viii)     the name, employer and job title of each person to whom it was sent

24             or was to have been sent, including all addressees and all recipients of

25             copies;

26         (ix)     a statement as to whom each identified person represented or

27             purported to represent at all relevant times; and

28

     (x)    a description of the place where each copy of that Document is kept, including the title or description of the file in which said Document may be found and the location of such file.

7.    Documents shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the natural person in whose possession they were found and the business address of each Document's custodian(s).

8.    Whenever a Document is not produced in full or is produced in redacted form, so indicate on the Document and state with particularity the reason or reasons it is not being produced in full and describe with particularity those portions of the Document which are not being produced.

9.    If a Document responsive to these requests was at any time in your possession, custody or control but is no longer available for production, as to each such Document state the following information:

    (a)    whether the Document is missing or lost;

    (b)    whether the Document has been destroyed;

    (c)    whether the Document has been transferred or delivered to another person and, if so, at whose request;

    (d)    whether the Document has been otherwise disposed of; and

    (e)    the circumstances surrounding the destruction of the Document and the date of its destruction.

10.    These document requests are deemed continuing in nature and any Documents or information secured after the service of your responses, which would have been included in the responses had they been known or available at the time of the response, must be supplied in supplemental responses as required by the Federal Rules of Civil Procedure.

PLAINTIFF MELANIE TUCKER'S FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT APPLE, INC. - C-06-04457-JW     - 6 -

1    11.   No Document request shall be construed to include individual transactional

2  Documents, unless otherwise specified.

3  **III.    RELEVANT TIME PERIOD**

4    1.   Unless otherwise indicated, these requests relate to the period between January 1,

5  2000 and the present (the "Relevant Time Period").  Your responses should reflect information for

6  that entire period.  Where your responses relate to only a portion of that period, indicate the date or

7  dates to which your response relates.

8  **IV.    REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

9  REQUEST NO. 1:

10    All Documents Concerning or mentioning the market for Apple's iPods.

11  REQUEST NO. 2:

12    All Documents Concerning or mentioning the market for video files purchased from Apple's

13  iTunes Store.

14  REQUEST NO. 3:

15    All Documents Concerning or mentioning the market for audio files purchased from Apple's

16  iTunes Store.

17  REQUEST NO. 4:

18    All Documents Concerning or mentioning the Digital Millennium Copyright Act.

19  REQUEST NO. 5:

20    All Documents Concerning or mentioning DRM or other digital media files or copy

21  protection methods other then FairPlay.

22  REQUEST NO. 6:

23    All Communications between you and Microsoft Corporation Concerning or mentioning

24  licensing or royalty agreements and/or payments Concerning media formats, including audio, image,

25  and video file formats, and all Communications with Microsoft Corporation concerning Digital

26  Music Players and/or DRM.

27

28

1  REQUEST NO. 7:

2      All Communications between you and RealNetworks, Inc.; Archos S.A.; the companies over

3  the class period that have controlled Rio (including D&M Holdings U.S., Inc); and Creative

4  Technologies Ltd., and memos Concerning, analyzing, discussing or answering these

5  Communications.

6  REQUEST NO. 8:

7      All Documents and correspondence Concerning agreements to license DRM software,

8  methods, or other DRM related intellectual property, including the agreements themselves and

9  Concerning any request by any company to license Apple's FairPlay DRM.

10  REQUEST NO. 9:

11      All Documents Concerning exporting, copying, burning, transferring, converting or "ripping"

12  of audio files from one audio format to another.  For example, the conversion of AAC Files to MP3

13  files.

14  REQUEST NO. 10:

15      Full copies of the spreadsheets for which excerpts were produced to Somtai Troy Charoensak

16  and marked APPLE CHAR 00059 through APPLE CHAR 00066 and all Documents used in the

17  production of these Documents, including but not limited to all Profit and Loss Statements for all

18  iPod models.

19  REQUEST NO. 11:

20      All Documents and answers Apple produced, and all transcripts of depositions taken in

21  litigation or investigations involving the iPod, iTunes and/or iTunes Store brought by the

22  governments of France, Germany, Norway, Sweden, Finland, Denmark, the United Kingdom, the

23  European Union/European Commission, the French consumer rights organization UFC Que Choisir

24  and as a Third Party to the *In re Napster, Inc. Copyright Litigation*, No. C MDL-00-1369-MHP

25  (N.D. Cal.).

26  REQUEST NO. 12:

27      All Documents that identify, describe or refer to any actual, prior or potential competitor of

28  Apple's iPod and audio and video files sold by iTMS.

PLAINTIFF MELANIE TUCKER'S FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT APPLE, INC. - C-06-04457-JW                                    - 8 -

1   REQUEST NO. 13:

2       All Documents analyzing, describing, estimating or projecting the past, present, future or

3   projected market share of:

4           (i) iPod;

5           (ii) online music files;

6           (iii) online video files; and

7           (iv) music software, including but not limited to iTunes and GarageBand.

8   REQUEST NO. 14:

9       All Documents analyzing, describing, estimating or projecting your sales of:

10          (i) the iPod;

11          (ii) online music files; or

12          (iii) the online video files.

13  REQUEST NO. 15:

14      All Documents Concerning the actual or potential impact on your iPod and/or iTunes music

15  and video market shares, sales or profits resulting from the introduction, modification, changes to

16  the terms of use for, changes to the pricing, employment or maintenance of FairPlay DRM.

17  REQUEST NO. 16:

18      All Documents Concerning the actual or potential impact on your iPod and/or iTunes music

19  and video market shares, sales or profits resulting from any restriction or limitation on the

20  compatibility of files protected by Apple's FairPlay DRM with other file formats or any Digital

21  Music Player other than iPod.

22  REQUEST NO. 17:

23      All Documents reflecting or constituting any internal communications concerning:

24          (i) the licensing or sharing of FairPlay DRM;

25          (ii) the compatibility (or lack thereof) of files protected by Apple's FairPlay DRM with other

26          file formats or any Portable Digital Music Player other than iPod; and

27          (iii) the actual, anticipated or potential entry into the market(s) of any actual or potential

28  competitor of the iPod, the iTMS or iTunes Software.

1   REQUEST NO. 18:

2       All Documents analyzing, describing, estimating or projecting the impact on your iPod

3   and/or iTunes music and video market shares or sales resulting from:

4           (i) the licensing of Apple's FairPlay DRM to third parties;

5           (ii) any measures that would make iPods interoperable with music files protected by means

6           other than Apple's FairPlay DRM; or

7           (iii) any measures that would make music purchased from the iTMS interoperable with any

8   Digital Music Player other than iPod.

9   REQUEST NO. 19:

10      All Documents necessary to allow the calculation for each quarter since the introduction of

11  the iPod for each model that iPod has Apple sold, the number of iPods that have been purchased,

12  Apple's total revenue from the sale of each iPod model and Apple's Cost of Manufacturing and cost

13  of sale for each iPod model.

14  REQUEST NO. 20:

15      All complaints and other correspondence from individuals Apple has received regarding the

16  lack of interoperability of iTunes audio and video files with non-Apple Digital Music Players, the

17  iPod with non-Apple music and video file formats Concerning FairPlay DRM and any summaries or

18  analysis of such complaints.

19  REQUEST NO. 21:

20      All Documents Concerning RealNetworks Harmony Technology, which according to

21  RealNetworks press release entitled "RealNetworks Introduces Harmony Enabling Consumers to

22  Buy Digital Music that Plays on All Popular Devices" dated July 26, 2004: "[E]nable[s] consumers

23  to securely transfer purchased music to every popular secure music device" and "frees consumers

24  from the limitation of being locked into a specific portable device when they buy digital music."

25

26

27

28

1  REQUEST NO. 22:

2      All personnel charts, related personnel listings, indices or directories, organizational charts

3  and document retention policies produced, compiled, or dated after January 1, 2000.

4  DATED:  January 18, 2006                    LERACH COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
5                                              JOHN J. STOIA, JR.
                                               BONNY E. SWEENEY
6                                              CHRISTOPHER M. BURKE

7

8                                              _____
                                               BONNY E. SWEENEY

9                                              655 West Broadway, Suite 1900
10                                             San Diego, CA  92101
                                               Telephone:  619/231-1058
11                                             619/231-7423 (fax)

12                                             BONNETT, FAIRBOURN, FRIEDMAN
                                                 & BALINT, P.C.
13                                             ANDREW S. FRIEDMAN
                                               ELAINE A. RYAN
14                                             TODD D. CARPENTER
                                               2901 N. Central Avenue, Suite 1000
15                                             Phoenix, AZ  85012
                                               Telephone:  602/274-1100
16                                             602/274-1199 (fax)

17                                             Attorneys for Plaintiff

18  S:\CasesSD\Apple Tying\REQ00038281-RFP.doc

19

20

21

22

23

24

25

26

27

28

PLAINTIFF MELANIE TUCKER'S FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT APPLE, INC. - C-06-04457-JW                    - 11 -

<u>DECLARATION OF SERVICE BY MAIL</u>

I, the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.     That on January 18, 2007, declarant served the PLAINTIFF MELANIE TUCKER'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT APPLE, INC. by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.     That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of January, 2007, at San Diego, California.

_Teresa A. Turner_
TERESA A. TURNER

# EXHIBIT 2

1  LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
2  JOHN J. STOIA, JR. (141757)
   BONNY E. SWEENEY (176174)
3  CHRISTOPHER M. BURKE (214799)
   655 West Broadway, Suite 1900
4  San Diego, CA 92101
   Telephone: 619/231-1058
5  619/231-7423 (fax)
   jstoia@lerachlaw.com
6  bsweeney@lerachlaw.com
   cburke@lerachlaw.com
7
   BONNETT, FAIRBOURN, FRIEDMAN
8     & BALINT, P.C.
   ANDREW S. FRIEDMAN
9  ELAINE A. RYAN
   TODD D. CARPENTER
10 2901 N. Central Avenue, Suite 1000
   Phoenix, AZ 85012
11 Telephone: 602/274-1100
   602/274-1199 (fax)
12 afriedman@bffb.com
   eryan@bffb.com
13 tcarpenter@bffb.com

14 Attorneys for Plaintiff

15                 UNITED STATES DISTRICT COURT

16               NORTHERN DISTRICT OF CALIFORNIA

17                      SAN JOSE DIVISION

18 MELANIE TUCKER, On Behalf of Herself    )  No. C-06-04457-JW
   and All Others Similarly Situated,       )
19                                          )  CLASS ACTION
                           Plaintiff,       )
20                                          )  PLAINTIFF MELANIE TUCKER'S FIRST
          vs.                               )  SET OF REQUESTS FOR ADMISSION TO
21                                          )  DEFENDANT APPLE, INC.
   APPLE COMPUTER, INC., a California       )
22 corporation,                             )
                                            )
23                        Defendant.        )
                                            )
24

25 PROPOUNDING PARTY:        Plaintiff Melanie Tucker

26 RESPONDING PARTY:         Defendant Apple, Inc.

27 SET NUMBER:               One

28

1  TO:   DEFENDANT AND COUNSEL OF RECORD

2       Pursuant to Fed. R. Civ. P. 36, plaintiff requests that defendant Apple, Inc. respond to the

3  following Requests for Admission within 30 days after service thereof.

4  **I.  DEFINITIONS**

5       1.    "Apple" means defendant Apple, Inc., and any of its predecessors, successors,

6  parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and

7  domestic), any of its present or former officers, directors, administrators, agents, employees,

8  investigators, accountants, attorneys and all other persons acting or purporting to act on its behalf.

9       2.    The "Big Four" refers to the largest four music recording companies.  The companies

10  are Sony BMG, Warner Music Group, EMI, and Universal Music Group and any of their

11  predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or

12  business lines (foreign and domestic), any of their present or former officers, directors,

13  administrators, agents, employees, investigators, accountants, attorneys and all other persons acting

14  or purporting to act on their behalf.

15       3.    "Communication(s)" refers to any exchange of information by any means of

16  transmission, sending or receipt of information of any kind by or through any means including, but

17  not limited to, speech, writings, documents, language (machine, foreign or otherwise) of any kind,

18  computer electronics or electronic data, electronic mail ("e-mail"), instant messages, voicemail,

19  sound, radio or video signals, telecommunication, telephone, teletype, facsimile, telegram,

20  microfilm, microfiche, photographic film of all types or other media of any kind.  The term

21  "Communication" also includes, without limitation, all inquiries, discussions, conversations,

22  correspondence, negotiations, agreements, understandings, meetings, notices, requests, responses,

23  demands, complaints, or press, publicity or trade releases.

24       4.    "Concerning" shall mean constituting, analyzing, discussing, evaluating, estimating,

25  measuring evidencing, reflecting, incorporating, effecting, including, or otherwise pertaining or

26  relating, either directly or indirectly, or being in any way logically or factually connected with the

27  subject matter of the inquiry or Request for Admission.

28

5.    "Cost of Manufacturing" refers to the manufacturing standard cost figure that Apple refers to in Note 11 of the Notes to Consolidated Financial Statements, located on page 110 of Apple's Annual Report (10-K), filed with the Securities and Exchange Commission on or about December 29, 2006.

6.    "Current Cost of Manufacturing" means refers to the cost of manufacturing using estimates from the quarter ending July 1, 2006, or a more recent quarter if available.

7.    "Digital Music File" means a computer file containing audio data, regardless of format, including without limitation, AAC, FLAC, MP3, Real Audio, WAV and WMA, that can be played on a computer or other device that utilizes computer software (e.g., a Digital Music Player).

8.    "Digital Music Player" means any device that can be easily transported, weighs less than 12 ounces, is capable of playing a digital music file, can store more than 150 music files assuming an average file size of 3.0 megabytes but does not employ external media such as compact discs, cartridges, cassettes or compact flash cards.

9.    The term "Document(s)" is intended to be interpreted in the broadest possible sense and includes, but is not limited to, all Electronic Data and all Communications which are stored or retrievable or recorded in any manner and also includes, without limitation, any writing or other record of information or images, including, but not limited to, print, handwriting, photographs, film, recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge slips, letters, electronic mail ("e-mail"), compact discs, CDROM discs, magnetic tape, videotape, magnetic or optical disks, floppy disks, PowerPoint or other presentation software systems, metadata belonging to any electronic Document, telegrams, mailgrams, correspondence, notes and minutes of meetings, conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars, appointment books, circulars, charts, transcripts, news releases, trade releases, advertisements, press books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards, computer printouts and data, telecopier or facsimile transmissions and printouts, letters of credit,

1   stock certificates and securities. The term "Document" also includes preliminary drafts or revisions

2   or copies of any such Document if the copy is in any way different from the original, now in your

3   possession, custody or control, or in the possession, custody or control of your advisors, agents,

4   employees, servants, representatives, trustees, counsel or other persons acting or purporting to act on

5   your behalf.

6       10.    "DRM" refers to digital rights management software and technology, *e.g.*, Apple's

7   Fair Play.

8       11.    "Electronic Data" refers to any original and any non-identical copies (whether non-

9   identical because of notes made on copies or attached comments, annotations, marks, transmission

10  notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital or

11  other programs (whether private, commercial, or work-in-progress), programming notes or

12  instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use

13  of any software program, including word processing documents, spreadsheets, database files, charts,

14  graphs and outlines, electronic mail ("e-mail"), personal digital assistant ("PDA") messages, instant

15  messenger messages, operating systems, source code of all types, programming languages, linkers

16  and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code

17  keys, pull down tables, logs, file layouts and any and all miscellaneous files or file fragments,

18  regardless of the media on which they reside and regardless of whether said Electronic Data consists

19  of an active file, deleted file or file fragment. "Electronic Data" also includes any and all items

20  stored on computer memory or memories, hard disks, floppy disks, zip drives, CDROM discs,

21  Bernoulli Boxes and their equivalents, magnetic tapes of all types and kinds, microfiche, punched

22  cards, punched tape, computer chips (including, but not limited to, EPROM, PROM, ROM or RAM

23  of any kind) on or in any other vehicle for digital data storage or transmittal, files, folder tabs, or

24  containers and labels appended to or associated with any physical storage device associated with

25  each original and each copy.

26      12.    The term "Financial Statements" includes, but is not limited to, interim, final, pro

27  forma, actual, projected, complete, or partial, annual, quarterly, monthly, weekly or otherwise,

28  audited or unaudited, budgets, budget plans, balance sheets, schedules of direct costs, schedules of

1  miscellaneous income, schedules of general services, fiscal serviceman administrative services,

2  statements of earnings and earnings per share, income statements, cash flow statements, statement of

3  revenues and statements of expenses, all notes or other commentary concerning any of the foregoing

4  and all underlying work papers and all drafts used in connection with the preparation of any of the

5  foregoing.

6      13.    "iTMS" or "iTunes Music Store" or "Apple's Online Music Store" means Apple's

7  iTunes Store, previously called iTunes Music Store.

8      14.    "iPod" refers to the Digital Music Players manufactured by Apple, including iPod,

9  iPod Photo, iPod mini, iPod nano and iPod Shuffle.

10     15.    "Online Music Store" relates to any place on the Internet from which Digital Music

11  Files may be purchased and downloaded.

12     16.    The term "Telephone Records" includes, without limitation, telephone directories,

13  rolodexes, messages, telephone logs, recordings of telephone conversations and telephone bills (local

14  and long distance).

15     17.    "You" or "Your" refers to Apple.

16  **II.    INSTRUCTIONS**

17     1.    You are required to respond to each and every Request for Admission.

18     2.    In accordance with the Federal Rules of Civil Procedure, for each Request for

19  Admission, if your answer is anything other than an unqualified admission:

20         The answer shall specifically deny the matter or set forth in detail the reasons why
           [You] cannot truthfully admit or deny the matter. A denial shall fairly meet the
21         substance of the requested admission, and when good faith requires that [You]
           qualify an answer or deny only part of the matter of which an admission is requested,
22         [You] shall specify so much of it as is true and qualify or deny the remainder. [You]
           may not give lack of information or knowledge as a reason for failure to admit or
23         deny unless [You] state that you [have] made reasonable inquiry and that the
           information known or readily obtainable . . . is insufficient to enable [You] to admit
24         or deny.

25  Fed. R. Civ. P. 36(a).

26     3.    This request shall be deemed continuing in nature, so as to require further and

27  supplemental responses if you locate or obtain additional information which may impact the

28

PLAINTIFF MELANIE TUCKER'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT
APPLE, INC. - C-06-04457-JW                                                    - 4 -

1  responses hereto between the time of the initial responses and the time of any hearing or trial in the

2  above-captioned matter.

3  **III.    RELEVANT TIME**

4        1.      Unless otherwise indicated, these requests relate to the period between January 1,

5  2000 and the present (the "Relevant Time Period"). Your responses should reflect information for

6  that entire period. Where your responses relate to only a portion of that period, indicate the date or

7  dates to which your response relates.

8  **IV.    REQUESTS FOR ADMISSION**

9  REQUEST FOR ADMISSION NO. 1:

10        Do you admit that your Current Cost of Manufacturing the 8 gigabyte iPod nano and the 2

11  gigabyte iPod nano differ by $20.00 or less?

12  REQUEST FOR ADMISSION NO. 2:

13        Do you admit that your Current Cost of Manufacturing the 30 gigabyte iPod and the 80

14  gigabyte iPod differ by $50.00 or less?

15  REQUEST FOR ADMISSION NO. 3:

16        Do you admit any of the Big Four music recording companies have requested that Apple

17  make the iPod compatible with music stores other than iTMS?

18  REQUEST FOR ADMISSION NO. 4:

19        Do you admit that representatives of any of the Big Four music recording companies have

20  requested that Apple make music files purchased on the iTMS compatible with competing Digital

21  Music Players other than Apple's iPod?

22

23

24

25

26

27

28

1  REQUEST FOR ADMISSION NO. 5:

2      Do you admit that Apple imposes minimum advertised price or minimum sale price

3  restrictions or incentives to sell at any suggested retail price on authorized resellers of the iPod?

4  DATED:  January 18, 2007                    LERACH COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
5                                              JOHN J. STOIA, JR.
                                               BONNY E. SWEENEY
6                                              CHRISTOPHER M. BURKE

7

8                                              _____
                                               BONNY E. SWEENEY

9
                                               655 West Broadway, Suite 1900
10                                             San Diego, CA  92101
                                               Telephone:  619/231-1058
11                                             619/231-7423 (fax)

12                                             BONNETT, FAIRBOURN, FRIEDMAN
                                                 & BALINT, P.C.
13                                             ANDREW S. FRIEDMAN
                                               ELAINE A. RYAN
14                                             TODD D. CARPENTER
                                               2901 N. Central Avenue, Suite 1000
15                                             Phoenix, AZ  85012
                                               Telephone:  602/274-1100
16                                             602/274-1199 (fax)

17                                             Attorneys for Plaintiff

18  S:\CasesSD\Apple Tying\req00037845.doc

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1.    That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.    That on January 18, 2007, declarant served the PLAINTIFF MELANIE TUCKER'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT APPLE, INC. by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.    That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of January, 2007, at San Diego, California.

*Teresa A. Turner*

TERESA A. TURNER

# EXHIBIT 3

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JOHN J. STOIA, JR. (141757)
BONNY E. SWEENEY (176174)
CHRISTOPHER M. BURKE (214799)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
jstoia@lerachlaw.com
bsweeney@lerachlaw.com
cburke@lerachlaw.com

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
ELAINE A. RYAN
TODD D. CARPENTER
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone:  602/274-1100
602/274-1199 (fax)
afriedman@bffb.com
eryan@bffb.com
tcarpenter@bffb.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MELANIE TUCKER, On Behalf of Herself and All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>        vs.<br><br>APPLE COMPUTER, INC., a California corporation,<br><br>                    Defendant. | No. C-06-04457-JW<br><br>CLASS ACTION<br><br>PLAINTIFF MELANIE TUCKER'S FIRST SET OF INTERROGATORIES TO DEFENDANT APPLE, INC. |

**PROPOUNDING PARTY**:        Plaintiff Melanie Tucker

**RESPONDING PARTY**:        Defendant Apple, Inc.

**SET NUMBER**:        One

TO:  DEFENDANT AND COUNSEL OF RECORD

Pursuant to Fed. R. Civ. P. 26(e), the interrogatories shall be considered continuing, and should answers to the same be changed before trial of this action, you are requested to furnish such different answers in writing and under oath, or it will be assumed that the answers originally given continue as your answers to said interrogatories.  Please read and comply with the definitions and instructions described below.

## I.  DEFINITIONS

1.     "Apple" means defendant Apple, Inc. and any of its predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of its present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on its behalf.

2.     The "Big Four" refers to the largest four music recording companies.  The companies are Sony BMG, Warner Music Group, EMI, and Universal Music Group and any of their predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

3.     "Communication(s)" refers to any exchange of information by any means of transmission, sending or receipt of information of any kind by or through any means including, but not limited to, speech, writings, documents, language (machine, foreign or otherwise) of any kind, computer electronics or electronic data, electronic mail ("e-mail"), instant messages, voicemail, sound, radio or video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche, photographic film of all types or other media of any kind.  The term "communication" also includes, without limitation, all inquiries, discussions, conversations, correspondence, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, or press, publicity or trade releases.

4.     "Concerning" shall mean constituting, analyzing, discussing, evaluating, estimating, measuring, evidencing, reflecting, incorporating, effecting, including, or otherwise pertaining or

PLAINTIFF MELANIE TUCKER'S FIRST SET OF INTERROGATORIES TO DEFENDANT APPLE, INC. - C-06-04457-JW                                                                                                    - 1 -

1 relating, either directly or indirectly, or being in any way logically or factually connected with the

2 subject matter of the inquiry or Interrogatory.

3       5.      "Cost of Manufacturing" refers to the manufacturing standard cost figure that Apple

4 refers to in Note 11 to the Notes to Consolidated Financial Statements, located on page 110 of

5 Apple's Annual Report (10-K), filed with the Securities and Exchange Commission on or about

6 December 29, 2006.

7       6.      "Current Cost of Manufacturing" refers to the Cost of Manufacturing using estimates

8 from the quarter ending July 1, 2006, or a more recent quarter if available.

9       7.      "Digital Music File" means a computer file containing audio data, regardless of

10 format, including without limitation, AAC, FLAC, MP3, Real Audio, WAV and WMA, that can be

11 played on a computer or other device that utilizes computer software (*e.g.*, a Digital Music Player).

12      8.      "Digital Music Player" means any device that can be easily transported, weighs less

13 than 12 ounces, is capable of playing a digital music file, can store more than 150 music files

14 assuming an average file size of 3.0 megabytes but does not employ external media such as compact

15 discs, cartridges, cassettes or compact flash cards.

16      9.      The term "Document(s)" is intended to be interpreted in the broadest possible sense

17 and includes, but is not limited to, all electronic data and all communications which are stored or

18 retrievable or recorded in any manner and also includes, without limitation, any writing or other

19 record of information or images, including, but not limited to, print, handwriting, photographs, film,

20 recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge

21 slips, letters, electronic mail ("e-mail"), compact discs, CDROM discs, magnetic tape, videotape,

22 magnetic or optical disks, floppy disks, PowerPoint or other presentation software systems, metadata

23 belonging to any electronic Document, telegrams, mailgrams, correspondence, notes and minutes of

24 meetings, conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports,

25 projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits,

26 interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps,

27 manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars,

28 appointment books, circulars, charts, transcripts, news releases, trade releases, advertisements, press

1  books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards,

2  computer printouts and data, telecopier or facsimile transmissions and printouts, letters of credit,

3  stock certificates and securities. The term "document" also includes preliminary drafts or revisions

4  or copies of any such document if the copy is in any way different from the original, now in your

5  possession, custody or control, or in the possession, custody or control of your advisors, agents,

6  employees, servants, representatives, trustees, counsel or other persons acting or purporting to act on

7  your behalf.

8      10.    "DRM" refers to digital rights management software and technology, *e.g.*, Apple's

9  FairPlay.

10     11.    "Electronic Data" refers to any original and any non-identical copies (whether non-

11  identical because of notes made on copies or attached comments, annotations, marks, transmission

12  notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital or

13  other programs (whether private, commercial, or work-in-progress), programming notes or

14  instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use

15  of any software program, including word processing documents, spreadsheets, database files, charts,

16  graphs and outlines, electronic mail ("e-mail"), personal digital assistant ("PDA") messages, instant

17  messenger messages, operating systems, source code of all types, programming languages, linkers

18  and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code

19  keys, pull down tables, logs, file layouts and any and all miscellaneous files or file fragments,

20  regardless of the media on which they reside and regardless of whether said Electronic Data consists

21  of an active file, deleted file or file fragment. "Electronic Data" also includes any and all items

22  stored on computer memory or memories, hard disks, floppy disks, zip drives, CDROM discs,

23  Bernoulli Boxes and their equivalents, magnetic tapes of all types and kinds, microfiche, punched

24  cards, punched tape, computer chips (including, but not limited to, EPROM, PROM, ROM or RAM

25  of any kind) on or in any other vehicle for digital data storage or transmittal, files, folder tabs, or

26  containers and labels appended to or associated with any physical storage device associated with

27  each original and each copy.

28

1     12.     The term "Financial Statements" includes, but is not limited to, interim, final, pro

2 forma, actual, projected, complete, or partial, annual, quarterly, monthly, weekly or otherwise,

3 audited or unaudited, budgets, budget plans, balance sheets, schedules of direct costs, schedules of

4 miscellaneous income, schedules of general services, fiscal serviceman administrative services,

5 statements of earnings and earnings per share, income statements, cash flow statements, statement of

6 revenues and statements of expenses, all notes or other commentary concerning any of the foregoing

7 and all underlying work papers and all drafts used in connection with the preparation of any of the

8 foregoing.

9     13.     "iPod" refers to the Digital Music Players manufactured by Apple, including iPod,

10 iPod photo, iPod mini, iPod nano and iPod shuffle.

11     14.     "iTMS" or "iTunes Music Store" or "Apple's Online Music Store" means Apple's

12 iTunes Store, f/k/a iTunes Music Store.

13     15.     "Online Music Store" relates to any place on the Internet from which Digital Music

14 Files may be purchased and downloaded.

15     16.     The term "Telephone Records" includes, without limitation, telephone directories,

16 rolodexes, messages, telephone logs, recordings of telephone conversations and telephone bills (local

17 and long distance).

18     17.     "You" or "your" refers to Apple.

19 **II.     INSTRUCTIONS**

20     1.     If an interrogatory is objected to on the ground of a claim of privilege, please state the

21 nature of the claimed privilege and the basis therefore, and please answer the interrogatory to the

22 fullest extent possible without waiving said claim of privilege.

23     2.     The singular form of a noun or pronoun shall be considered to include within its

24 meaning the plural form of the noun or pronoun so used, and vice versa. The masculine form of a

25 noun or pronoun shall be considered to include within its meaning the feminine form of the noun or

26 pronoun so used, and vice versa. The use of any tense of a verb shall be considered to include within

27 its meaning all other tenses of the verb so used.

28

PLAINTIFF MELANIE TUCKER'S FIRST SET OF INTERROGATORIES TO DEFENDANT APPLE,
INC. - C-06-04457-JW                                                                  - 4 -

III.    **RELEVANT TIME PERIOD**

Unless otherwise indicated, these interrogatories relate to the period between January 1, 2000 and the present (the "Relevant Time Period"). Your responses should reflect information for that entire period. Where your responses relate to only a portion of that period, indicate the date or dates to which your response relates.

IV.    **INTERROGATORIES**

INTERROGATORY NO. 1:

How much to do you pay in licensing fees to Thomson, Fraunhofer-Gesellschaft, and other companies, in royalty and/or licensing fees for iTunes and iPod's ability to play the MP3 audio file format? Give the total figure for each year since 2001.

INTERROGATORY NO. 2:

In a similar manner, list the total amount of licensing fees and royalties by year Apple must pay to manufacture and sell the iPod, and to encode, sell and distribute music and video files on iTunes and iTMS.

INTERROGATORY NO. 3:

What is your Current Cost of Manufacturing each model of iPod that is currently sold on Apple's website available at http://www.apple.com/?

INTERROGATORY NO. 4:

List all licenses and royalties, including the amount of the fee or royalty and what the fee or royalty is for, that you paid any company during calendar year 2005 and the same figure for the most recent 12 month period in which you have the data available, (*e.g.*, the 12 months ending September 30, 2006).

INTERROGATORY NO. 5:

On July 19, 2006, Apple issued a press release entitled "Apple Reports Third Quarter Results/Posts Second Highest Quarterly Revenue and Earnings in Company's History." Apple CEO Steve Jobs is quoted as saying: "In addition, iPod continued to earn a US market share of over 75 percent." List all products that are included in the market in which "iPod continued to earn a US

1  market share of over 75 percent" and state the market share for each of these products for the current

2  and each of the past 16 quarters.

3  DATED:  January 18, 2007

LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
JOHN J. STOIA, JR.
BONNY E. SWEENEY
CHRISTOPHER M. BURKE

_____
BONNY E. SWEENEY

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT, P.C.
ANDREW S. FRIEDMAN
ELAINE A. RYAN
TODD D. CARPENTER
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone:  602/274-1100
602/274-1199 (fax)

Attorneys for Plaintiff

S:\CasesSD\Apple Tying\rog00037848.doc

PLAINTIFF MELANIE TUCKER'S FIRST SET OF INTERROGATORIES TO DEFENDANT APPLE,
INC. - C-06-04457-JW                                                                                     - 6 -

# EXHIBIT 4

2\|?? `

1   Robert A. Mittelstaedt (State Bar No. 60359)
    ramittelstaedt@jonesday.com
2   Adam R. Sand (State Bar No. 217712)
    arsand@jonesday.com
3   Tracy M. Strong (State Bar No. 221540)
    tstrong@jonesday.com
4   JONES DAY
    555 California Street, 26th Floor
5   San Francisco, CA 94104
    Telephone:    (415) 626-3939
6   Facsimile:    (415) 875-5700

7   Attorneys for Defendant
    APPLE INC. f/k/a Apple Computer, Inc.

8

9                  UNITED STATES DISTRICT COURT

10      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

11

12  **MELANIE TUCKER, on behalf of herself**          **Case No. C06 4457 JW**
    **and all others similarly situated,**
13                                                      **DEFENDANT'S OBJECTIONS TO**
                                                        **PLAINTIFF MELANIE TUCKER'S**
                **Plaintiff,**                          **FIRST SET OF REQUESTS FOR**
14                                                      **PRODUCTION TO DEFENDANT**
         v.                                             **APPLE INC.**
15
    **APPLE COMPUTER, INC., a California**
16  **Corporation,**

17              **Defendant.**

18

19  PROPOUNDING PARTY:   Plaintiff Melanie Tucker

20  RESPONDING PARTY:    Defendant Apple Inc.

21  SET NUMBER:          One

22

23

24

25

26

27

28

1    Defendant Apple Inc. ("Apple") submits these objections to the First Set of Requests for

2    Production served by plaintiff Melanie Tucker.

3                            **RESERVATION OF RIGHTS**

4          It is unclear that any response is due at this time given plaintiff's cover letter

5    accompanying these requests stating that plaintiff would meet and confer with Apple regarding

6    her discovery requests after the Court determines the discovery scope issue.  Plaintiff has

7    acknowledged that the Court ordered in *Charoensak* that discovery is limited to class certification

8    issues.  *See* November 21, 2006 Order Following Further Case Management Conference in

9    *Charoensak et al. v. Apple Computer, Inc.*, No. 05-00037; Joint Case Management Statement and

10   [Proposed] Order, filed January 17, 2007 at 5:1-4.  On January 31, 2007, Plaintiff agreed to send

11   Apple a letter identifying any requests that she contended related to class issues along with the

12   reasons for her contention.  No such letter has been forthcoming.  At the same time, plaintiff has

13   failed to respond to Apple's request for an extension for its response to the pending discovery or

14   to acknowledge that no response was due.  Thus, in an abundance of caution, Apple submits these

15   responses, but reserves its right to amend as appropriate in the future.

16                               **OBJECTIONS**

17         **Argumentative:**  Apple objects to this discovery as argumentative to the extent it purports

18   to represent as fact matters that are disputed in the underlying litigation or mischaracterizes the

19   law.  By responding, Apple in no way admits the accuracy of plaintiff's characterization of either

20   the facts or the applicable law.  This objection will hereafter be referred to as the "Argumentative

21   Objection."

22         **Burden:**  Apple objects to the breadth and burden of this discovery in relationship to its

23   relevance.  Apple objects to the extent this discovery seeks "all" responsive information

24   regardless of its materiality and relevance.  Apple further objects to the extent producing pursuant

25   to a "sufficient to show standard," or in an alternative form, is more reasonable under the

26   circumstances.  Apple will not produce documents or information in response to this request that

27   exceeds the discovery that plaintiff is entitled to under the applicable statutes or rules.  This

28   objection will hereafter be referred to as the "Burden Objection."

DEFENDANT'S OBJECTIONS TO PLAINTIFF
MELANIE TUCKER'S FIRST SET OF REQUESTS FOR
PRODUCTION TO DEFENDANT APPLE INC

1   **Compound:**   Apple objects to the extent that this discovery violates the applicable

2   procedural statutes or rules to the extent that it is compound, conjunctive or disjunctive, resulting

3   in plaintiffs disguising the true amount of discovery they are taking and makes the call of the

4   question (or questions) impossible to ascertain.  Apple will treat each subpart as a separately

5   propounded request.  This objection will hereafter be referred to as the "Compound Objection."

6   **Confidential Information:**   Apple objects to the discovery to the extent it purports to

7   require Apple to disclose trade secrets, proprietary or other confidential commercial information,

8   attorney-client privileged information, attorney work product or any other sensitive information.

9   This objection will hereafter be referred to as the "Confidential Information Objection."

10  **Geographic Location:**   Apple objects to the discovery to the extent it imposes on Apple

11  an obligation to search for and produce materials unrelated to the geographic scope at issue in this

12  case.  For example, Apple will not produce information or documents discussing any geographic

13  regions outside the United States.  This objection will hereafter be referred to as the "Geographic

14  Location Objection."

15  **Reasonable and Diligent Search Objection:**   Apple objects to the discovery to the

16  extent it is overbroad and purports to require Apple to search broadly for responsive materials

17  from persons who will not have responsive information.  Apple will conduct a reasonable and

18  diligent search for information in their possession, custody and control.  This objection will be

19  referred to hereafter as the "Reasonable and Diligent Search Objection."

20  **Scope and Relevancy:**   Apple objects to this discovery to the extent the scope of the

21  requests for which plaintiff seeks responsive material is overbroad, burdensome and oppressive.

22  This occurs when the discovery seeks information that is not reasonably calculated to lead to the

23  discovery of admissible evidence or where the burden of producing the requested material far

24  outweighs the benefit to plaintiff of its production.  Apple further objects to the extent the

25  discovery requests do not relate to class certification issues, based on this Court's November 21,

26  2006 Order Following Further Case Management Conference in *Charoensak et al. v. Apple*

27  *Computer, Inc.*, No. 05-00037, which applies to this related case.  By providing information or

28  documents responsive to these discovery requests, Apple is not waiving its right to rely on that

1  Order or agreeing that this discovery relates to class certification issues. This objection will

2  hereafter be referred to as the "Scope and Relevancy Objection."

3       **Time Period:** Apple objects to this discovery to the extent that the time period for which

4  plaintiffs ask Apple to respond is overbroad and burdensome. When Apple agrees to respond, but

5  asserts this objection, Apple will respond for the time period from April 28, 2003 to the present,

6  unless it is clear from the substance of a request that a shorter period will suffice (e.g., if a request

7  relates to events that did not happen until 2005, Apple will search for documents or information

8  beginning in 2005, not 2004). This objection will hereafter be referred to as the "Time Period

9  Objection."

10      **Vague and Ambiguous:** Apple objects to this discovery to the extent that the terms used

11  are so amorphous and overbroad that they either make the breadth of the request if literally read

12  so overbroad and burdensome as to be unreasonable and beyond the bounds of relevance and/or

13  they make it difficult for Apple to ascertain, with specificity sufficient to allow defendant to

14  conduct a search, what materials plaintiff is seeking. This objection will hereafter be referred to

15  as the "Vague and Ambiguous Objection."

16              **RESPONSES TO REQUESTS FOR PRODUCTION**

17  **REQUEST FOR PRODUCTION NO. 1:**

18      All Documents Concerning or mentioning the market for Apple iPods.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

20      Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic

21  Location, Time Period, Confidential Information, Vague and Ambiguous and Burden objections.

22  **REQUEST FOR PRODUCTION NO. 2:**

23      All Documents Concerning or mentioning the market for video files purchased from

24  Apple's iTunes Store.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

26      Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic

27  Location, Time Period, Confidential Information, Vague and Ambiguous and Burden objections.

28

DEFENDANT'S OBJECTIONS TO PLAINTIFF
MELANIE TUCKER'S FIRST SET OF REQUESTS FOR
PRODUCTION TO DEFENDANT APPLE INC.

1   **REQUEST FOR PRODUCTION NO. 3:**

2       All Documents Concerning or mentioning the market for audio files purchased from

3   Apple's iTunes Store.

4   **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

5       Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic

6   Location, Time Period, Confidential Information, Vague and Ambiguous and Burden objections.

7   **REQUEST FOR PRODUCTION NO. 4:**

8       All Documents concerning or mentioning the Digital Millennium Copyright Act.

9   **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

10      Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic

11  Location, Time Period, Confidential Information, Vague and Ambiguous, Reasonable and

12  Diligent Search and Burden objections.

13  **REQUEST FOR PRODUCTION NO. 5:**

14      All documents Concerning or mentioning DRM or other digital media files or copy

15  protection methods other then FairPlay.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

17      Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic

18  Location, Time Period, Confidential Information, Vague and Ambiguous, Reasonable and

19  Diligent Search and Burden objections.

20  **REQUEST FOR PRODUCTION NO. 6:**

21      All Communications between you and Microsoft Corporation Concerning or mentioning

22  licensing or royalty agreements and/or payments Concerning media formats, including audio,

23  image, and video file formats, and all Communications with Microsoft Corporation concerning

24  Digital Music Players and/or DRM.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

26      Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic

27  Location, Time Period, Confidential Information, Vague and Ambiguous, Compound,

28  Reasonable and Diligent Search and Burden objections.

**REQUEST FOR PRODUCTION NO. 7:**

All Communications between you and RealNetworks, Inc; Archos S.A.; the companies over the class period that have controlled Rio (including D&M Holdings U.S., Inc); and Creative Technologies Ltd., and memos Concerning analyzing, discussing or answering these communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic Location, Time Period, Compound, Confidential Information, Reasonable and Diligent Search and Burden objections.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and correspondence Concerning agreements to license DRM software methods, or other DRM related intellectual property, including the agreements themselves and Concerning any request by any company to license Apple's FairPlay DRM.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic Location, Time Period, Vague and Ambiguous, Confidential Information, Compound, Reasonable and Diligent Search and Burden objections.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents Concerning exporting, copying, burning, transferring, converting or "ripping" of audio files from one audio format to another.  For example, the conversion of AAC Files to MP3 files.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic Location, Time Period, Vague and Ambiguous, Confidential Information, Compound, Reasonable and Diligent Search and Burden objections.

**REQUEST FOR PRODUCTION NO. 10:**

Full copies of the spreadsheets for which excerpts were produced to Somtai Troy Charoensak and marked APPLE CHAR 00059 through APPLE CHAR 00066 and all Documents

1   used in the production of these Documents, including but not limited to all Profit and Loss

2   Statements for all iPod models.

3   **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

4       Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Confidential

5   Information and Burden objections.  Apple further objects to the extent any documents are

6   protected by the attorney-client privilege.

7   **REQUEST FOR PRODUCTION NO. 11:**

8       All Documents and answers Apple produced, and all transcripts of depositions taken in

9   litigation or investigations involving the iPod, iTunes and/or iTunes Store brought by the

10  governments of France, Germany, Norway, Sweden, Finland, Denmark, the United Kingdom, the

11  European Union/European Commission, the French consumer rights organization UFC Que

12  Choisir and as a Third Party to the *In re Napster, inc. Copyright Litigation*, No. C MDL-00-1369-

13  MHP (N.D. Cal.).

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

15      Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic

16  Location, Time Period, Vague and Ambiguous, Compound, Confidential Information,

17  Reasonable and Diligent Search and Burden objections.

18  **REQUEST FOR PRODUCTION NO. 12:**

19      All Documents that identify, describe or refer to any actual, prior or potential competitor

20  of Apple iPod and audio and video files sold by iTMS.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

22      Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic

23  Location, Time Period, Compound, Confidential Information, Reasonable and Diligent Search

24  and Burden objections.

25  **REQUEST FOR PRODUCTION NO. 13:**

26      All Documents analyzing, describing, estimating or projecting the past, present, future or

27  projected market share of:

28          i)    iPod;

DEFENDANT'S OBJECTIONS TO PLAINTIFF
MELANIE TUCKER'S FIRST SET OF REQUESTS FOR
PRODUCTION TO DEFENDANT APPLE INC

1    ii)    online music files;

2    iii)    online video files; and

3    iv)    music software, including but not limited to iTunes and Garage Band.

4    **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

5    Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic

6    Location, Time Period, Compound, Confidential Information, Reasonable and Diligent Search

7    and Burden objections.

8    **REQUEST FOR PRODUCTION NO. 14:**

9    All Documents analyzing, describing, estimating or projecting your sales of:

10    i)    the iPod;

11    ii)    online music files; or

12    iii)    the online video files.

13    **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

14    Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic

15    Location, Time Period, Vague and Ambiguous, Confidential Information, Compound,

16    Reasonable and Diligent Search and Burden objections.

17    **REQUEST FOR PRODUCTION NO. 15:**

18    All Documents concerning the actual or potential impact on your iPod and/or iTunes

19    music and video market shares, sales or profits resulting from the introduction, modification,

20    changes to the terms of use for, changes to the pricing, employment or maintenance of FairPlay

21    DRM.

22    **RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

23    Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic

24    Location, Time Period, Compound, Confidential Information, Reasonable and Diligent Search

25    and Burden objections.

26    **REQUEST FOR PRODUCTION NO. 16:**

27    All Documents Concerning the actual or potential impact on your iPod and/or iTunes

28    music and video market shares, sales or profits resulting from any restriction or limitation on the

1  compatibility of files protected by Apple's FairPlay DRM with other file formats or any Digital

2  Music Player other than iPod.

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

4      Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic

5  Location, Time Period, Vague and Ambiguous, Compound, Confidential Information,

6  Reasonable and Diligent Search and Burden objections.

7  **REQUEST FOR PRODUCTION NO. 17:**

8      All Documents reflecting or constituting any internal communications concerning:

9      i)      the licensing or sharing of FairPlay DRM;

10     ii)     the compatibility (or lack thereof) of files protected by Apple's FairPlay DRM

11             with other file formats or any Portable Digital Music Player other than iPod; and

12     iii)    The actual, anticipated or potential entry into the market(s) of any actual or

13             potential competitor of the iPod, the iTMS or iTunes Software.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

15     Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic

16  Location, Time Period, Vague and Ambiguous, Compound, Confidential Information,

17  Reasonable and Diligent Search and Burden objections.

18  **REQUEST FOR PRODUCTION NO. 18:**

19     All Documents analyzing, describing, estimating or projecting the impact on your iPod

20  and/or iTunes music and video market shares or sales resulting from:

21     i)      the licensing of Apple's FairPlay DRM to third parties;

22     ii)     any measures that would make iPods interoperable with music files protected by

23             means other than Apple's FairPlay DRM; or

24     iii)    any measures that would make music purchased from the iTMS interoperable with

25             any Digital Music Player other than iPod.

26

27

28

1    RESPONSE TO REQUEST FOR PRODUCTION NO. 18:

2         Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic

3    Location, Time Period, Vague and Ambiguous, Confidential Information, Compound,

4    Reasonable and Diligent Search and Burden objections.

5    **REQUEST FOR PRODUCTION NO. 19:**

6         All Documents necessary to allow the calculation for each quarter since the introduction

7    of the iPod for each model that iPod has Apple sold, the number of iPods that have been

8    purchased, Apple's total revenue from the sale of each iPod model and Apple's Cost of

9    Manufacturing and cost of sale for each iPod model.

10   **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

11        Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic

12   Location, Time Period, Vague and Ambiguous, Compound, Confidential Information,

13   Reasonable and Diligent Search and Burden objections.

14   **REQUEST FOR PRODUCTION NO. 20:**

15        All complaints and other correspondence from individuals Apple has received regarding

16   the lack of interoperability of iTunes audio and video files with non-Apple Digital Music Players,

17   the iPod and non-Apple music and video file formats Concerning FairPlay DRM and any

18   summaries or analysis of such complaints.

19   **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

20        Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic

21   Location, Time Period, Vague and Ambiguous, Compound, Confidential Information,

22   Reasonable and Diligent Search and Burden objections.

23   **REQUEST FOR PRODUCTION NO. 21:**

24        All Documents Concerning RealNetworks Harmony Technology, which according to

25   RealNetworks press release entitled "RealNetworks Introduces Harmony Enabling Consumers to

26   Buy Digital Music that Plays on All Popular Devices" dated July 26, 2004: "[E]nable[s]

27   consumers to securely transfer purchased music to every popular secure music device" and "frees

28

DEFENDANT'S OBJECTIONS TO PLAINTIFF
MELANIE TUCKER'S FIRST SET OF REQUESTS FOR
PRODUCTION TO DEFENDANT APPLE INC

consumers from the limitation of being locked into a specific portable device when they buy digital music."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Subject to its Reservation of Rights. Apple asserts the Argumentative. Scope and Relevancy, Geographic Location, Time Period, Vague and Ambiguous, Confidential Information, Compound, Reasonable and Diligent Search and Burden objections.

**REQUEST FOR PRODUCTION NO. 22:**

All personnel charts, related personnel listing, indices or directories, organizational charts and document retention policies produced, compiled, or dated after January 1, 2000.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Geographic Location, Time Period, Vague and Ambiguous, Compound, Confidential Information, Reasonable and Diligent Search and Burden objections.

Dated: February 23, 2007

Jones Day

By:
Tracy M. Strong

Counsel for Defendant
APPLE INC. f/k/a Apple Computer, Inc.

SFI-561294v1

DEFENDANT'S OBJECTIONS TO PLAINTIFF
MELANIE TUCKER'S FIRST SET OF REQUESTS FOR
PRODUCTION TO DEFENDANT APPLE INC.

- 11 -

# EXHIBIT 5

1  Robert A. Mittelstaedt (State Bar No. 60359)
   ramittelstaedt@jonesday.com
2  Adam R. Sand (State Bar No. 217712)
   arsand@jonesday.com
3  Tracy M. Strong (State Bar No. 221540)
   tstrong@jonesday.com
4  JONES DAY
   555 California Street, 26th Floor
5  San Francisco, CA  94104
   Telephone:    (415) 626-3939
6  Facsimile:    (415) 875-5700

7  Attorneys for Defendant
   APPLE INC. f/k/a Apple Computer, Inc.
8

9                 UNITED STATES DISTRICT COURT

10     NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

11

12  **MELANIE TUCKER, on behalf of herself**        Case No. C06 4457 JW
    **and all others similarly situated,**
13                                                  **DEFENDANT'S OBJECTIONS TO**
              **Plaintiff,**                        **PLAINTIFF MELANIE TUCKER'S**
14                                                  **FIRST SET OF REQUESTS FOR**
         v.                                         **ADMISSION TO DEFENDANT**
15                                                  **APPLE INC.**
    **APPLE COMPUTER, INC., a California**
16  **Corporation,**

17            **Defendant.**

18

19  PROPOUNDING PARTY:   Plaintiff Melanie Tucker

20  RESPONDING PARTY:    Defendant Apple Inc.

21  SET NUMBER:          One

22

23

24

25

26

27

28

1    Defendant Apple Inc. ("Apple") submits these objections to the First Set of Requests for

2    Admission served by plaintiff Melanie Tucker.

3                                **RESERVATION OF RIGHTS**

4        It is unclear that any response is due at this time given plaintiff's cover letter

5    accompanying these requests stating that plaintiff would meet and confer with Apple regarding

6    her discovery requests after the Court determines the discovery scope issue.  Plaintiff has

7    acknowledged that the Court ordered in *Charoensak* that discovery is limited to class certification

8    issues.  *See* November 21, 2006 Order Following Further Case Management Conference in

9    *Charoensak et al. v. Apple Computer, Inc.*, No. 05-00037; Joint Case Management Statement and

10   [Proposed] Order, filed January 17, 2007 at 5:1-4.  On January 31, 2007, Plaintiff agreed to send

11   Apple a letter identifying any requests that she contended related to class issues along with the

12   reasons for her contention.  No such letter has been forthcoming.  At the same time, plaintiff has

13   failed to respond to Apple's request for an extension for its response to the pending discovery or

14   to acknowledge that no response was due.  Thus, in an abundance of caution, Apple submits these

15   responses, but reserves its right to amend as appropriate in the future.

16                                    **OBJECTIONS**

17       **Argumentative:**  Apple objects to this discovery as argumentative to the extent it purports

18   to represent as fact matters that are disputed in the underlying litigation or mischaracterizes the

19   law.  By responding, Apple in no way admits the accuracy of plaintiff's characterization of either

20   the facts or the applicable law.  This objection will hereafter be referred to as the "Argumentative

21   Objection."

22       **Burden:**  Apple objects to the breadth and burden of this discovery in relationship to its

23   relevance.  Apple objects to the extent this discovery seeks "all" responsive information

24   regardless of its materiality and relevance.  Apple further objects to the extent producing pursuant

25   to a "sufficient to show standard," or in an alternative form, is more reasonable under the

26   circumstances.  Apple will not produce documents or information in response to this request that

27   exceeds the discovery that plaintiff is entitled to under the applicable statutes or rules.  This

28   objection will hereafter be referred to as the "Burden Objection."

DEFENDANT'S RESPONSE TO PLAINTIFF MELANIE
TUCKER'S FIRST SET OF REQUESTS FOR
ADMISSION TO DEFENDANT APPLE INC.

- 2 -

1    **Compound:**   Apple objects to the extent that this discovery violates the applicable

2    procedural statutes or rules to the extent that it is compound, conjunctive or disjunctive, resulting

3    in plaintiffs disguising the true amount of discovery they are taking and makes the call of the

4    question (or questions) impossible to ascertain.  Apple will treat each subpart as a separately

5    propounded request.  This objection will hereafter be referred to as the "Compound Objection."

6    **Confidential Information:**   Apple objects to the discovery to the extent it purports to

7    require Apple to disclose trade secrets, proprietary or other confidential commercial information,

8    attorney-client privileged information, attorney work product or any other sensitive information.

9    This objection will hereafter be referred to as the "Confidential Information Objection."

10    **Geographic Location:**  Apple objects to the discovery to the extent it imposes on Apple

11    an obligation to search for and produce materials unrelated to the geographic scope at issue in this

12    case. For example, Apple will not produce information or documents discussing any geographic

13    regions outside the United States.  This objection will hereafter be referred to as the "Geographic

14    Location Objection."

15    **Reasonable and Diligent Search Objection:**  Apple objects to the discovery to the

16    extent it is overbroad and purports to require Apple to search broadly for responsive materials

17    from persons who will not have responsive information.  Apple will conduct a reasonable and

18    diligent search for information in their possession, custody and control.  This objection will be

19    referred to hereafter as the "Reasonable and Diligent Search Objection."

20    **Scope and Relevancy:**  Apple objects to this discovery to the extent the scope of the

21    requests for which plaintiff seeks responsive material is overbroad, burdensome and oppressive.

22    This occurs when the discovery seeks information that is not reasonably calculated to lead to the

23    discovery of admissible evidence or where the burden of producing the requested material far

24    outweighs the benefit to plaintiff of its production.  Apple further objects to the extent the

25    discovery requests do not relate to class certification issues, based on this Court's November 21,

26    2006 Order Following Further Case Management Conference in *Charoensak et al. v. Apple*

27    *Computer, Inc.*, No. 05-00037, which applies to this related case.  By providing information or

28    documents responsive to these discovery requests, Apple is not waiving its right to rely on that

1   Order or agreeing that this discovery relates to class certification issues.  This objection will

2   hereafter be referred to as the "Scope and Relevancy Objection."

3       **Time Period:**  Apple objects to this discovery to the extent that the time period for which

4   plaintiffs ask Apple to respond is overbroad and burdensome.  When Apple agrees to respond, but

5   asserts this objection, Apple will respond for the time period from April 28, 2003 to the present,

6   unless it is clear from the substance of a request that a shorter period will suffice (e.g., if a request

7   relates to events that did not happen until 2005, Apple will search for documents or information

8   beginning in 2005, not 2004).  This objection will hereafter be referred to as the "Time Period

9   Objection."

10      **Vague and Ambiguous:**  Apple objects to this discovery to the extent that the terms used

11  are so amorphous and overbroad that they either make the breadth of the request if literally read

12  so overbroad and burdensome as to be unreasonable and beyond the bounds of relevance and/or

13  they make it difficult for Apple to ascertain, with specificity sufficient to allow defendant to

14  conduct a search, what materials plaintiff is seeking.  This objection will hereafter be referred to

15  as the "Vague and Ambiguous Objection."

16                          **RESPONSES TO REQUESTS FOR ADMISSION**

17  **REQUEST FOR ADMISSION NO. 1:**

18      Do you admit that your Current Cost of Manufacturing the 8 gigabyte iPod nano and the 2

19  gigabyte iPod nano differ by $20.00 or less?

20  **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

21      Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Vague and

22  Ambiguous, Burden, Confidential Information and Geographic Location objections.

23  **REQUEST FOR ADMISSION NO. 2:**

24      Do you admit that your Current Cost of Manufacturing the 30 gigabyte iPod and the 80

25  gigabyte iPod differ by $50.00 or less?

26  **RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

27      Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Vague and

28  Ambiguous, Burden, Confidential Information and Geographic Location objections.

1  **REQUEST FOR ADMISSION NO. 3:**

2      Do you admit any of the Big Four music recording companies have requested that Apple

3  make the iPod compatible with music stores other than iTMS?

4  **RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

5      Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Vague and

6  Ambiguous, Burden, Compound, Confidential Information, Time Period and Geographic

7  Location objections.

8  **REQUEST FOR ADMISSION NO. 4:**

9      Do you admit that representatives of any of the Big Four music recording companies have

10 requested that Apple make music files purchased on the iTMS compatible with competing Digital

11 Music Players other than Apple's iPod?

12 **RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

13     Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Vague and

14 Ambiguous, Burden, Compound, Confidential Information, Time Period and Geographic

15 Location objections.

16 **REQUEST FOR ADMISSION NO. 5:**

17     Do you admit that Apple imposes minimum advertised price or minimum sale price

18 restrictions or incentives to sell at any suggested retail price on authorized resellers of the iPod?

19 **RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

20     Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Vague and

21 Ambiguous, Burden, Compound, Confidential Information, Time Period and Geographic

22 Location objections.

23 Dated: February 23, 2007          Jones Day

24

25                                 By
                                      Tracy M. Strong

26
                                   Counsel for Defendant
27                                 APPLE INC. f/k/a Apple Computer, Inc.

28

# EXHIBIT 6

1  Robert A. Mittelstaedt (State Bar No. 60359)
   ramittelstaedt@jonesday.com
2  Adam R. Sand (State Bar No. 217712)
   arsand@jonesday.com
3  Tracy M. Strong (State Bar No. 221540)
   tstrong@jonesday.com
4  JONES DAY
   555 California Street, 26th Floor
5  San Francisco, CA 94104
   Telephone:    (415) 626-3939
6  Facsimile:    (415) 875-5700

7  Attorneys for Defendant
   APPLE INC. f/k/a Apple Computer, Inc.          REC'D MAR 1 2007

8

9                    UNITED STATES DISTRICT COURT

10      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

11

12  MELANIE TUCKER, on behalf of herself      Case No. C06 4457 JW
    and all others similarly situated,
13                                            DEFENDANT'S OBJECTIONS TO
             Plaintiff,                       PLAINTIFF MELANIE TUCKER'S
14                                            FIRST SET OF INTERROGATORIES
         v.                                   TO DEFENDANT APPLE INC.
15
    APPLE COMPUTER, INC., a California
16  Corporation,

17           Defendant.

18

19  PROPOUNDING PARTY:   Plaintiff Melanie Tucker

20  RESPONDING PARTY:    Defendant Apple Inc.

21  SET NUMBER:          One

22

23

24

25

26

27

28

1    Defendant Apple Inc. ("Apple") submits these objections to the First Set of Special

2    Interrogatories served by plaintiff Melanie Tucker.

3    **RESERVATION OF RIGHTS**

4    It is unclear that any response is due at this time given plaintiff's cover letter

5    accompanying these requests stating that plaintiff would meet and confer with Apple regarding

6    her discovery requests after the Court determines the discovery scope issue. Plaintiff has

7    acknowledged that the Court ordered in *Charoensak* that discovery is limited to class certification

8    issues. *See* November 21, 2006 Order Following Further Case Management Conference in

9    *Charoensak et al. v. Apple Computer, Inc.*, No. 05-00037; Joint Case Management Statement and

10   [Proposed] Order, filed January 17, 2007 at 5:1-4. On January 31, 2007, Plaintiff agreed to send

11   Apple a letter identifying any requests that she contended related to class issues along with the

12   reasons for her contention. No such letter has been forthcoming. At the same time, plaintiff has

13   failed to respond to Apple's request for an extension for its response to the pending discovery or

14   to acknowledge that no response was due. Thus, in an abundance of caution, Apple submits these

15   responses, but reserves its right to amend as appropriate in the future.

16   **OBJECTIONS**

17   **Argumentative:** Apple objects to this discovery as argumentative to the extent it purports

18   to represent as fact matters that are disputed in the underlying litigation or mischaracterizes the

19   law. By responding, Apple in no way admits the accuracy of plaintiff's characterization of either

20   the facts or the applicable law. This objection will hereafter be referred to as the "Argumentative

21   Objection."

22   **Burden:** Apple objects to the breadth and burden of this discovery in relationship to its

23   relevance. Apple objects to the extent this discovery seeks "all" responsive information

24   regardless of its materiality and relevance. Apple further objects to the extent producing pursuant

25   to a "sufficient to show standard," or in an alternative form, is more reasonable under the

26   circumstances. Apple will not produce documents or information in response to this request that

27   exceeds the discovery that plaintiff is entitled to under the applicable statutes or rules. This

28   objection will hereafter be referred to as the "Burden Objection."

1    **Compound:**   Apple objects to the extent that this discovery violates the applicable

2    procedural statutes or rules to the extent that it is compound, conjunctive or disjunctive, resulting

3    in plaintiffs disguising the true amount of discovery they are taking and makes the call of the

4    question (or questions) impossible to ascertain.  Apple will treat each subpart as a separately

5    propounded request.  This objection will hereafter be referred to as the "Compound Objection."

6    **Confidential Information:**   Apple objects to the discovery to the extent it purports to

7    require Apple to disclose trade secrets, proprietary or other confidential commercial information,

8    attorney-client privileged information, attorney work product or any other sensitive information.

9    This objection will hereafter be referred to as the "Confidential Information Objection."

10    **Geographic Location:**  Apple objects to the discovery to the extent it imposes on Apple

11    an obligation to search for and produce materials unrelated to the geographic scope at issue in this

12    case.  For example, Apple will not produce information or documents discussing any geographic

13    regions outside the United States.  This objection will hereafter be referred to as the "Geographic

14    Location Objection."

15    **Reasonable and Diligent Search Objection:**  Apple objects to the discovery to the

16    extent it is overbroad and purports to require Apple to search broadly for responsive materials

17    from persons who will not have responsive information.  Apple will conduct a reasonable and

18    diligent search for information in their possession, custody and control.  This objection will be

19    referred to hereafter as the "Reasonable and Diligent Search Objection."

20    **Scope and Relevancy:**  Apple objects to this discovery to the extent the scope of the

21    requests for which plaintiff seeks responsive material is overbroad, burdensome and oppressive.

22    This occurs when the discovery seeks information that is not reasonably calculated to lead to the

23    discovery of admissible evidence or where the burden of producing the requested material far

24    outweighs the benefit to plaintiff of its production.  Apple further objects to the extent the

25    discovery requests do not relate to class certification issues, based on this Court's November 21,

26    2006 Order Following Further Case Management Conference in *Charoensak et al. v. Apple*

27    *Computer, Inc.*, No. 05-00037, which applies to this related case.  By providing information or

28    documents responsive to these discovery requests, Apple is not waiving its right to rely on that

1  Order or agreeing that this discovery relates to class certification issues. This objection will

2  hereafter be referred to as the "Scope and Relevancy Objection."

3      **Time Period:** Apple objects to this discovery to the extent that the time period for which

4  plaintiffs ask Apple to respond is overbroad and burdensome. When Apple agrees to respond, but

5  asserts this objection, Apple will respond for the time period from April 28, 2003 to the present,

6  unless it is clear from the substance of a request that a shorter period will suffice (e.g., if a request

7  relates to events that did not happen until 2005, Apple will search for documents or information

8  beginning in 2005, not 2004). This objection will hereafter be referred to as the "Time Period

9  Objection."

10      **Vague and Ambiguous:** Apple objects to this discovery to the extent that the terms used

11  are so amorphous and overbroad that they either make the breadth of the request if literally read

12  so overbroad and burdensome as to be unreasonable and beyond the bounds of relevance and/or

13  they make it difficult for Apple to ascertain, with specificity sufficient to allow defendant to

14  conduct a search, what materials plaintiff is seeking. This objection will hereafter be referred to

15  as the "Vague and Ambiguous Objection."

16                  **RESPONSES TO INTERROGATORIES**

17  **INTERROGATORY NO. 1:**

18      How much do you pay in licensing fees to Thomson, Fraunhofer-Gesellschaft, and other

19  companies, in royalty and/or licensing fees for iTunes and iPod's ability to play the MP3 audio

20  file format? Give the total figure for each year since 2001.

21  **RESPONSE TO INTERROGATORY NO. 1:**

22      Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Vague and

23  Ambiguous, Burden, Compound, Confidential Information, Geographic Location and Time

24  Period objections.

25  **INTERROGATORY NO. 2:**

26      In a similar manner, list the total amount of licensing fees and royalties by year Apple

27  must pay to manufacture and sell the iPod, and to encode, sell and distribute music and video files

28  on iTunes and iTMS.

DEFENDANT'S OBJECTIONS TO PLAINTIFF
MELANIE TUCKER'S FIRST SET OF
INTERROGATORIES TO DEFENDANT APPLE INC

- 4 -

**RESPONSE TO INTERROGATORY NO. 2:**

Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Vague and Ambiguous, Burden, Compound, Confidential Information, Geographic Location and Time Period objections.

**INTERROGATORY NO. 3:**

What is your Current Cost of Manufacturing each model of iPod that is currently sold on Apple's website available at http://www.apple.com/?

**RESPONSE TO INTERROGATORY NO. 3:**

Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Burden, Confidential Information, Compound and Geographic Location objections.

**INTERROGATORY NO. 4:**

List all licenses and royalties, including the amount of the fee or royalty and what the fee or royalty is for, that you paid any company during calendar year 2005 and the same figure for the most recent 12 month period in which you have the data available (*e.g.*, the 12 months ending September 30, 2006).

**RESPONSE TO INTERROGATORY NO. 4:**

Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Time Period, Vague and Ambiguous, Burden, Confidential Information, Compound, Reasonable and Diligent Search and Geographic Location objections.

**INTERROGATORY NO. 5:**

On July 19, 2006, Apple issued a press release entitled "Apple Reports Third Quarter Results/Posts Second Highest quarterly Revenue and Earnings in Company's History." Apple CEO Steve Jobs is quoted as saying: "In addition, iPod continues to earn a US market share of over 75 percent." List all products that are included in the market in which "iPod continues to earn a US market share of over 75 percent" and state the market share for each of these products for the current and each of the past 16 quarters.

**RESPONSE TO INTERROGATORY NO. 5:**

Subject to its Reservation of Rights, Apple asserts the Scope and Relevancy, Vague and Ambiguous, Burden, Compound, Confidential Information, Reasonable and Diligent Search, Geographic Location and Time Period objections.

Dated: February 23, 2007

Jones Day

By: _____
Tracy M. Strong

Counsel for Defendant
APPLE INC. f/k/a Apple Computer, Inc.

SFI-561223v1

# EXHIBIT 7

4-9p

1  COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  BONNY E. SWEENEY (176174)
   655 West Broadway, Suite 1900
3  San Diego, CA  92101
   Telephone:  619/231-1058
4  619/231-7423 (fax)
   bonnys@csgrr.com
5
   THE KATRIEL LAW FIRM
6  ROY A. KATRIEL (*pro hac vice*)
   1101 30th Street, N.W., Suite 500
7  Washington, DC  20007
   Telephone:  202/625-4342
8  202/330-5593 (fax)
   rak@katriellaw.com
9
   Co-Lead Counsel for Plaintiffs
10
   [Additional counsel appear on signature page.]
11
                 UNITED STATES DISTRICT COURT
12
              NORTHERN DISTRICT OF CALIFORNIA
13
                        SAN JOSE DIVISION
14

15 | THE APPLE IPOD ITUNES ANTI-TRUST LITIGATION | ) | Lead Case No. C-05-00037-JW(RS) |
|---|---|---|
| 16 | ) | |
| | ——————————————— | ) | CLASS ACTION |
| 17 | This Document Relates To: | ) | |
| | | ) | PLAINTIFFS' RULE 30(B)(6) NOTICE OF VIDEOTAPED DEPOSITION AND |
| 18 | ALL ACTIONS. | ) | RULE 34 REQUEST FOR DOCUMENTS TO DEFENDANT APPLE, INC. REGARDING |
| | ——————————————— | ) | SOFTWARE UPDATES |

19

20

21

22

23

24

25

26

27

28

1    PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs, through their

2  attorneys, will take the deposition of the corporate designee(s) of defendant Apple, Inc. ("Apple" or

3  "Defendant") on May 27, 2009, at 10:00 a.m. at the offices of Coughlin Stoia Geller Rudman &

4  Robbins LLP, 100 Pine Street, 26th Floor, San Francisco, California 94111, or at another location

5  mutually agreed upon by the parties. The deposition will be before a person authorized by law to

6  administer oaths and will continue from one day to the next, excluding Sundays and holidays, until

7  the examination is completed.

8    Defendant is hereby notified of its duty to designate and produce for deposition one or more

9  (if necessary) of its officers, directors, managing agents, employees, or other persons who consent to

10  testify on its behalf as to all matters known or reasonably available to defendant concerning the

11  matters set forth below in Section IV. Each such designee produced to so testify has an affirmative

12  duty to have first reviewed all documents, reports and other matters known or reasonably known or

13  available to defendant, along with familiarizing themselves with all potential witnesses known or

14  reasonably available (not just current employees) to provide informed, binding answers at the

15  deposition.

16    Plaintiffs request that Defendant provide notice of the names of the individuals to be

17  produced for deposition at least 10 days prior to commencement of the deposition, setting forth the

18  matters on which each person will testify.

19    The deposition will be recorded using the stenographic method, through the instant visual

20  display of testimony, and the deposition will be recorded by audio and videotape technology. The

21  deposition will be taken in accordance with and for all purposes permissible under the Federal Rules

22  of Civil Procedure.

23    PLEASE TAKE FURTHER NOTICE that pursuant to Fed. R. Civ. P. 34, Plaintiffs request

24  that Defendant produce copies or permit Plaintiffs to inspect and copy originals of the documents set

25  forth below in Section V that are in the possession, custody or control of Defendant or its officers,

26  agents, employees, attorneys or any and all persons acting on its behalf within 30 days of service of

27  the requests for production. Plaintiffs request that the documents be made available for inspection at

28

PLAINTIFFS' RULE 30(B)(6) NOTICE OF VIDEOTAPED DEPO AND RULE 34
REQUEST FOR DOCUMENTS TO DEF APPLE, INC. RE SOFTWARE UPDATES -
C-05-00037-JW(RS)                                                    - 1 -

1  the office of Coughlin Stoia Geller Rudman & Robbins LLP, 655 West Broadway, Suite 1900, San

2  Diego, California 92101, unless such other date or place is mutually agreed upon by counsel for the

3  parties.

4  **I.    DEFINITIONS**

5      1.    "You" or "Your" refers to Apple.

6      2.    "Apple" means defendant Apple, Inc. and any of its predecessors, successors, parents,

7  subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic),

8  any of its present or former officers, directors, administrators, agents, employees, investigators,

9  accountants, attorneys and all other persons acting or purporting to act on its behalf.

10      3.    "Communication(s)" refers to any exchange of information by any means of

11  transmission, sending or receipt of information of any kind by or through any means including, but

12  not limited to, speech, writings, documents, language (machine, foreign or otherwise) of any kind,

13  computer electronics or electronic data, electronic mail ("e-mail"), instant messages, voicemail,

14  sound, radio or video signals, telecommunication, telephone, teletype, facsimile, telegram,

15  microfilm, microfiche, photographic film of all types or other media of any kind.  The term

16  "communication" also includes, without limitation, all inquiries, discussions, conversations,

17  correspondence, negotiations, agreements, understandings, meetings, notices, requests, responses,

18  demands, complaints, or press, publicity or trade releases.

19      4.    "Concerning" shall mean constituting, analyzing, discussing, evaluating, estimating,

20  measuring, evidencing, reflecting, incorporating, effecting, including, or otherwise pertaining or

21  relating, either directly or indirectly, or being in any way logically or factually connected with the

22  subject matter of the inquiry or Request.

23      5.    "Digital Audio File" means a computer file containing audio data, regardless of

24  format, including without limitation, AAC, FLAC, MP3, Real Audio, WAV and WMA, that can be

25  played on a computer or other device that utilizes computer software (*e.g.*, a Digital Music Player).

26      6.    "Digital Video File" means a computer file containing video data, regardless of

27  format, that can be played on a computer or Portable Digital Media Player .

28

PLAINTIFFS' RULE 30(B)(6) NOTICE OF VIDEOTAPED DEPO AND RULE 34
REQUEST FOR DOCUMENTS TO DEF APPLE, INC. RE SOFTWARE UPDATES -
C-05-00037-JW(RS)                                                                    - 2 -

1    7.    "Document(s)" is intended to be interpreted in the broadest possible sense and

2    includes, but is not limited to, all electronic data and all communications which are stored or

3    retrievable or recorded in any manner and also includes, without limitation, any writing or other

4    record of information or images, including, but not limited to, print, handwriting, photographs, film,

5    recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge

6    slips, letters, e-mail, compact discs, CD-ROMs, magnetic tape, videotape, magnetic or optical disks,

7    floppy disks, PowerPoint or other presentation software systems, metadata belonging to any

8    electronic document, telegrams, mailgrams, correspondence, notes and minutes of meetings,

9    conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports, projects,

10   tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal

11   briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks,

12   contracts, agreements, diaries, telephone records, desk calendars, appointment books, circulars,

13   charts, transcripts, news releases, trade releases, advertisements, press books, teletype messages,

14   licenses, financial statements, stenographers' notebooks, punchcards, computer printouts and data,

15   telecopier or facsimile transmissions and printouts, letters of credit, stock certificates and securities.

16   The term "document" also includes preliminary drafts or revisions or copies of any such document if

17   the copy is in any way different from the original, now in your possession, custody or control, or in

18   the possession, custody or control of your advisors, agents, employees, servants, representatives,

19   trustees, counsel or other persons acting or purporting to act on your behalf.

20   8.    "DRM" refers to digital rights management software and technology, including

21   Apple's FairPlay.

22   9.    "iPod" refers to all portable digital media players manufactured by Apple, including

23   but not limited to, all generations of iPod, iPod Touch, iPod Photo, iPod Mini, iPod Nano and iPod

24   Shuffle, which were released during the Relevant Time Period.

25   10.    "iPod Software" means the software application on an iPod used to download and

26   playback digital audio and video files obtained from online music stores.

27

28

11.    "iTunes Software" means the computer software application used to playback digital audio and video files on a Mac OS or Windows operating system.

12.    "iTunes Store" means Apple's online store through which Apple sells digital audio and video files to consumers.

13.    "Labels" means BMG Music, EMI Recorded Music Holdings, Inc., Sony Music, UMB Recordings, Inc., and Warner Music Inc. and any of their predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

14.    "Meeting" means the contemporaneous presence of any natural persons, whether in person or by teleconferencing, video conferencing, via the internet or a company intranet, or otherwise, whether or not such presence was by chance or pre-arrangement, and whether or not the meeting was formal or informal or occurred in connection with some other activity.

15.    "Online Music Store" relates to any place on the internet from which digital audio or video files may be purchased and downloaded.

16.    "Portable Digital Media Player" means any device that can be easily transported, weighs less than 12 ounces, is capable of playing a digital audio file and/or digital video file, and can store more than 150 music files assuming an average file size of 3.0 megabytes, but does not employ external media such as compact discs, cartridges, cassettes or compact flash cards.

17.    "Security Issue" is intended to have the same meaning as is used by Apple on its "Apple         security         updates"         webpage,         found         at http://support.apple.com/kb/HT1222?viewlocale=en_US.

18.    "Software Update" means any change, upgrade, release and/or patch provided by Apple for iTunes software or iPod software.

## II.    INSTRUCTIONS

1.    Whenever a reference to a business appears, the reference shall mean the business entity, its affiliated companies, partnerships, divisions, subdivisions, directors, employees, agents, clients or other representatives of affiliated third parties.

2.    Privilege/Redaction Log.  If any documents are within the scope of any request for production but are not being produced or are being produced with portions redacted, pursuant to any claim of privilege or confidentiality:

(a)    state the nature of the privilege claimed (*i.e.*, attorney-client, work-product, etc.);

(b)    state the name of the defendant claiming the privilege and the name of the attorney, if any, with respect to whom the privilege is claimed;

(c)    state the facts upon which you rely as the basis for claiming any privilege as to the specific information or document; and

(d)    state the name of such document; identify the type of document (*i.e.*, letter, memo, etc.); set forth the subject matter thereof; identify the person who prepared it and each person (if any) who signed it; identify each person to whom it was directed, circulated or shown; and identify each person now in possession of the document.  If any document is produced in redacted form, the word "redacted" is to be placed in the redacted section of the document.

3.    The documents to be produced pursuant to these requests specifically embrace, in addition to documents within your possession, custody or control, documents within the possession, custody or control of any of your agents, representatives, or attorneys.  Such documents also embrace originals, and identical copies (whether different from the original because of notes made thereon or otherwise) of the documents described in the requests.

4.    Destruction Log.  In the event that any document called for by the requests has been destroyed or discarded, that document is to be identified by stating:

(a)    the nature of the document;

(b)    any addressor or addressee;

         (c)    any indicated or blind copies;

         (d)    the document's date, subject matter, number of pages, and attachments or appendices;

         (e)    all persons to whom the document was distributed, shown or explained;

         (f)    its date of destruction or discard, manner of destruction or discard; and

         (g)    the persons authorizing or carrying out such destruction or discard.

    5.    The following requests are continuing in nature and in the event you become aware of or acquire additional information relating or referring thereto, such additional information is to be promptly produced.

## III.   RELEVANT TIME PERIOD

All subject matters and requests herein refer to the Relevant Time Period from April 1, 2003 to the present, unless otherwise specifically indicated, and shall include all documents and information that relate to such period even though prepared or published outside of the Relevant Time Period.

## IV.   SUBJECT MATTERS

Pursuant to Fed. R. Civ. P. 30(b)(6), Apple shall designate and produce for deposition one or more officer(s), director(s), managing agent(s), or other person(s) to testify on its behalf, regarding the following matters:

    1.    The genesis, form, content, terms, and substance of each software update.

    2.    Apple's policies, procedures, and/or guidelines concerning the genesis, form, content, and substance of software updates.

    3.    The processes used by Apple to create and distribute software updates.

    4.    The manner and extent to which each software update was described or otherwise communicated to those asked to accept it.

    5.    The intended and unintended effects of each software update.

    6.    Apple's intended purpose of each software update.

1    7.    The organizational structure and/or relationship of Apple and its consultants or other

2 persons who proposed, originated, developed, managed, created, memorialized or otherwise

3 contributed to the generation of each software update.

4    8.    Apple's policies, procedures, and protocols concerning the development and

5 distribution of software updates intended to address security issues with iTunes and iPod software.

6    9.    All communications regarding security issues with iTunes and iPod software for

7 which a software update was issued.

8    10.    Apple's investigation into security issues concerning iTunes and iPod software.

9    11.    All software updates created and implemented as a result of a security issue.

10    12.    The nature and extent of Apple's response to Real Network's introduction of Real

11 Harmony in 2004.

12    13.    The nature and extent of any labels concerning each software update.

13 **V.    DOCUMENT REQUESTS**

14    1.    All documents and communications that discuss, describe, explain, address, consider,

15 analyze, summarize or otherwise memorialize the form, content, substance, or nature of each

16 software update.

17    2.    All documents and communications that discuss, describe, explain, address, analyze,

18 summarize or otherwise memorialize the effects of each software update.

19    3.    All documents and communications that discuss or otherwise memorialize the effects

20 of any software update on a competitor.

21    4.    All notes, minutes or other memorialization of any meeting attended by Apple at

22 which reference was made to the nature, purpose or effect of any software update.

23    5.    All documents and communications which propose, describe, explain, address,

24 analyze, or otherwise relate to Apple's response to Real Network's introduction of Real Harmony in

25 2004.

26    6.    All documents and communications which propose, describe, explain, address,

27 analyze, or otherwise relate to Apple's response to security issues with iTunes and iPod Software.

28

1      7.    All communications between Apple and the labels concerning software updates.

2      8.    All documents which depict or otherwise memorialize the organizational relationship

3   of all Apple employees or consultants who propose, originate, develop, manage, create, or otherwise

4   contribute to the generation of each update.

5   DATED: April 9, 2009              COUGHLIN STOIA GELLER
                            RUDMAN & ROBBINS LLP
6                               BONNY E. SWEENEY

7

8                               BONNY E. SWEENEY

9

10                              655 West Broadway, Suite 1900
                            San Diego, CA 92101
11                              Telephone: 619/231-1058
                            619/231-7423 (fax)

12                              THE KATRIEL LAW FIRM
                            ROY A. KATRIEL
13                              1101 30th Street, N.W., Suite 500
                            Washington, DC 20007
14                              Telephone: 202/625-4342
                            202/330-5593 (fax)
15

16                              Co-Lead Counsel for Plaintiffs

17                              BONNETT, FAIRBOURN, FRIEDMAN
                              & BALINT, P.C.
18                              ANDREW S. FRIEDMAN
                            FRANCIS J. BALINT, JR.
19                              ELAINE A. RYAN
                            TODD D. CARPENTER
20                              2901 N. Central Avenue, Suite 1000
                            Phoenix, AZ 85012
21                              Telephone: 602/274-1100
                            602/274-1199 (fax)

22                              BRAUN LAW GROUP, P.C.
                            MICHAEL D. BRAUN
23                              12304 Santa Monica Blvd., Suite 109
                            Los Angeles, CA 90025
24                              Telephone: 310/442-7755
                            310/442-7756 (fax)
25

26                              MURRAY, FRANK & SAILER LLP
                            BRIAN P. MURRAY
                            JACQUELINE SAILER
27                              275 Madison Avenue, Suite 801
                            New York, NY 10016
28                              Telephone: 212/682-1818

PLAINTIFFS' RULE 30(B)(6) NOTICE OF VIDEOTAPED DEPO AND RULE 34
REQUEST FOR DOCUMENTS TO DEF APPLE, INC. RE SOFTWARE UPDATES -
C-05-00037-JW(RS)                         - 8 -

1                        212/682-1892 (fax)

2                        GLANCY BINKOW & GOLDBERG LLP
                           MICHAEL GOLDBERG
3                        1801 Avenue of the Stars, Suite 311
                        Los Angeles, CA 90067
4                        Telephone: 310/201-9150
                        310/201-9160 (fax)
5

6                        Additional Counsel for Plaintiffs

S:\CasesSD\Apple Tying\NOT00056692.doc

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' RULE 30(B)(6) NOTICE OF VIDEOTAPED DEPO AND RULE 34
REQUEST FOR DOCUMENTS TO DEF APPLE, INC. RE SOFTWARE UPDATES -
C-05-00037-JW(RS)                                          - 9 -

DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1.       That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.       That on April 9, 2009, declarant served the PLAINTIFFS' RULE 30(B)(6) NOTICE OF VIDEOTAPED DEPOSITION AND RULE 34 REQUEST FOR DOCUMENTS TO DEFENDANT APPLE, INC. REGARDING SOFTWARE UPDATES by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.       That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 9th day of April, 2009, at San Diego, California.

_____
SHONDA L. LANDRY

# EXHIBIT 8

1  COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  BONNY E. SWEENEY (176174)
   655 West Broadway, Suite 1900
3  San Diego, CA 92101
   Telephone: 619/231-1058
4  619/231-7423 (fax)
   bonnys@csgrr.com
5
   THE KATRIEL LAW FIRM
6  ROY A. KATRIEL (*pro hac vice*)
   1101 30th Street, N.W., Suite 500
7  Washington, DC 20007
   Telephone: 202/625-4342
8  202/330-5593 (fax)
   rak@katriellaw.com
9
   Co-Lead Counsel for Plaintiffs
10
   [Additional counsel appear on signature page.]
11
                    UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13
                        SAN JOSE DIVISION
14
   THE APPLE IPOD ITUNES ANTI-TRUST      )  Lead Case No. C-05-00037-JW(RS)
15 LITIGATION                            )
                                         )  CLASS ACTION
16 _____       )
                                         )  PLAINTIFFS' AMENDED FIRST SET OF
17 This Document Relates To:             )  REQUESTS FOR PRODUCTION OF
                                         )  DOCUMENTS TO DEFENDANT APPLE,
18     ALL ACTIONS.                      )  INC.
   _____       )
19
20
21
22
23
24
25
26
27
28

1    Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs Melanie Tucker,

2   Somtai Charoensak, and Mariana Rosen request defendant Apple, Inc. ("Apple" or "Defendant"),

3   produce and permit their counsel to inspect and copy those documents specified herein which are in

4   Apple's possession, custody or control, at the law offices of Coughlin Stoia Geller Rudman &

5   Robbins LLP, 655 West Broadway, Suite 1900, San Diego, CA 92107, within 30 days of service

6   thereof.

7   **I.     DEFINITIONS**

8        1.     "You" or "your" refers to Apple.

9        2.     "Apple" means defendant Apple, Inc. and any of its predecessors, successors, parents,

10  subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic),

11  any of its present or former officers, directors, administrators, agents, employees, investigators,

12  accountants, attorneys and all other persons acting or purporting to act on its behalf.

13       3.     "Communication(s)" refers to any exchange of information by any means of

14  transmission, sending or receipt of information of any kind by or through any means including, but

15  not limited to, speech, writings, documents, language (machine, foreign or otherwise) of any kind,

16  computer electronics or electronic data, e-mail, instant messages, voicemail, sound, radio or video

17  signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche,

18  photographic film of all types or other media of any kind. The term "communication" also includes,

19  without limitation, all inquiries, discussions, conversations, correspondence, negotiations,

20  agreements, understandings, meetings, notices, requests, responses, demands, complaints, or press,

21  publicity or trade releases.

22       4.     "Concerning" shall mean constituting, analyzing, discussing, evaluating, estimating,

23  measuring, evidencing, reflecting, incorporating, effecting, including, or otherwise pertaining or

24  relating, either directly or indirectly, or being in any way logically or factually connected with the

25  subject matter of the inquiry or request. Requests for "documents concerning" any subject matter

26  include documents concerning communication regarding that subject matter.

27       5.     Cost of Manufacturing refers to the "manufacturing standard cost" figure that Apple

28  refers to in Note 11 to the Notes to Consolidated Financial Statements, located on page 110 of

1  Apple's Annual Report (Form 10-K), filed with the Securities and Exchange Commission on or

2  about December 29, 2006.

3      6.    "Digital audio file" means a computer file containing audio data, regardless of format,

4  including without limitation, AAC, FLAC, MP3, Real Audio, WAV and WMA, and which can be

5  played on a computer or portable digital media player.

6      7.    "Digital video file" means a computer file containing video data, regardless of format,

7  that can be played on a computer or portable digital media player.

8      8.    "DRM" refers to digital rights management software and technology, including

9  Apple's FairPlay.

10     9.    "Document(s)" is intended to be interpreted in the broadest possible sense and

11 includes, but is not limited to, all electronic data and all communications which are stored or

12 retrievable or recorded in any manner and also includes, without limitation, any writing or other

13 record of information or images, including, but not limited to, print, handwriting, photographs, film,

14 recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge

15 slips, letters, e-mail, compact discs, CD-ROMs, magnetic tape, videotape, magnetic or optical disks,

16 floppy disks, PowerPoint or other presentation software systems, metadata belonging to any

17 electronic document, telegrams, mailgrams, correspondence, notes and minutes of meetings,

18 conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports, projects,

19 tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal

20 briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks,

21 contracts, agreements, diaries, telephone records, desk calendars, appointment books, circulars,

22 charts, transcripts, news releases, trade releases, advertisements, press books, teletype messages,

23 licenses, financial statements, stenographers' notebooks, punchcards, computer printouts and data,

24 telecopier or facsimile transmissions and printouts, letters of credit, stock certificates and securities.

25 The term "document" also includes preliminary drafts or revisions or copies of any such document if

26 the copy is in any way different from the original, now in your possession, custody or control, or in

27 the possession, custody or control of your advisors, agents, employees, servants, representatives,

28 trustees, counsel or other persons acting or purporting to act on your behalf.

10.    "Electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, e-mail, personal digital assistant ("PDA") messages, instant messenger messages, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment.  "Electronic data" also includes any and all items stored on computer memory or memories, hard disks, floppy disks, zip drives, CD-ROMs, Bernoulli Boxes and their equivalents, magnetic tapes of all types and kinds, microfiche, punched cards, punched tape, computer chips (including, but not limited to, EPROM, PROM, ROM or RAM of any kind) on or in any other vehicle for digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

11.    "Financial statements" includes, but is not limited to, interim, final, pro forma, actual, projected, complete, or partial, annual, quarterly, monthly, weekly or otherwise, audited or unaudited, budgets, budget plans, balance sheets, schedules of direct costs, schedules of miscellaneous income, schedules of general services, fiscal serviceman administrative services, statements of earnings and earnings per share, income statements, cash flow statements, statement of revenues and statements of expenses, all notes or other commentary concerning any of the foregoing and all underlying work papers and all drafts used in connection with the preparation of any of the foregoing.

12.    "iPod" refers to all portable digital media players manufactured by Apple, including but not limited to. all generations of iPod, iPod Touch, iPod Photo. iPod Mini, iPod Nano, iPod Shuffle, and iPhone which were released during the Relevant Time Period.

13.    "iTunes store" means Apple's online store through which Apple sells digital audio and video files to consumers.

14.    "Labels" means BMG Music, EMI Recoded Music Holdings, Inc., Sony Music, UMG Recordings Inc., and Warner Music Inc. and any of their predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

15.    "Microsoft" means Microsoft Corporation and any of its predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of its present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on its behalf.

16.    "Online music store" relates to any place on the internet from which digital audio files or digital video files may be purchased and downloaded.

17.    "Portable digital media player" means any device that can be easily transported, weighs less than 12 ounces, is capable of playing a digital audio file, can store more than 150 audio files assuming an average file size of 3.0 MB, but does not employ external media such as compact discs, cartridges, cassettes, or compact flash cards.

18.    "Telephone records" includes, without limitation, telephone directories, rolodexes, messages, telephone logs, recordings of telephone conversations and telephone bills (local and long distance).

## II.    INSTRUCTIONS

1.    Words used in the plural include the singular, and words used in the singular include the plural.

2.    The words "and" and "or" shall be used interchangeably and interpreted in the most inclusive manner possible.

3.    All documents shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof.

4.    These requests relate to all documents which are in your possession, custody or control.

5.    You shall produce the original of each document described below or if the original is not in your custody, then a copy thereof, and in any event, all non-identical copies which differ from the original or from the other copies produced for any reason, including, but not limited to, the making of notes thereon.

6.    If production of documents is withheld on the ground of privilege, as to each such withheld document provide the following information no later than the first date on which documents are produced:

      (a)    which privilege is claimed;

      (b)    a precise statement of the facts upon which said claim of privilege is based;

      (c)    the following information describing each purportedly privileged document:

            (i)    its nature (*e.g.*, agreement, letter, memorandum, tape, etc.);

            (ii)    the date it was prepared;

            (iii)    the date it bears;

            (iv)    the date it was sent;

            (v)    the date it was received;

            (vi)    the identity of the person preparing it;

            (vii)    the identity of the person sending it;

            (viii)    the identity of each person to whom it was sent or was to have been sent, including all addressees and all recipients of copies;

            (ix)    a statement as to whom each identified person represented or purported to represent at all relevant times; and

1    (x)    a description of the place where each copy of that document is kept,

2    including the title or description of the file in which said document may be found and the location of

3    such file.

4    7.    Documents shall be produced in such fashion as to identify the department, branch or

5    office in whose possession they were located and, where applicable, the natural person in whose

6    possession they were found and the business address of each document's custodian(s).

7    8.    Whenever a document is not produced in full or is produced in redacted form, so

8    indicate on the document and state with particularity the reason or reasons it is not being produced in

9    full and describe with particularity those portions of the document which are not being produced.

10   9.    If a document responsive to these requests was at any time in your possession,

11   custody or control but is no longer available for production, as to each such document state the

12   following information:

13   (a)    whether the document is missing or lost;

14   (b)    whether the document has been destroyed;

15   (c)    whether the document has been transferred or delivered to another person and,

16   if so, at whose request;

17   (d)    whether the document has been otherwise disposed of; and

18   (e)    the circumstances surrounding the disposition of the document and the date of

19   its disposition.

20   10.    These document requests are deemed continuing and any documents or information

21   secured after the service of your responses, which would have been included in the responses had

22   they been known or available at the time of the response, must be supplied in supplemental

23   responses as required by the Federal Rules of Civil Procedure.

24   11.    No document request shall be construed to include individual transactional

25   documents, unless otherwise specified.

26   III.    RELEVANT TIME PERIOD

27   Unless otherwise indicated, these requests relate to the period between January 1, 2000 and

28   the present (the "Relevant Time Period"). Your responses should reflect information for the entire

PLTFS' AMENDED 1ST SET OF RFP TO DEFENDANT APPLE, INC. - C-05-00037-JW(RS)    - 6 -

1  Relevant Time Period. Where your responses relate to only a portion of the Relevant Time Period,

2  indicate the date or dates to which your response relates.

3  **IV.    REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

4  REQUEST FOR PRODUCTION NO. 1:

5       All documents concerning or discussing the market for Apple's iPods in the United States.

6  REQUEST FOR PRODUCTION NO. 2:

7       All documents concerning or discussing the market for digital video files purchased from

8  Apple's iTunes store in the United States.

9  REQUEST FOR PRODUCTION NO. 3:

10      All documents concerning or discussing the market for digital audio files purchased from

11  Apple's iTunes store in the United States.

12  REQUEST FOR PRODUCTION NO. 4:

13      All documents discussing the Digital Millennium Copyright Act.

14  REQUEST FOR PRODUCTION NO. 5:

15      All documents concerning, analyzing or discussing Apple's use of a DRM other than

16  FairPlay.

17  REQUEST FOR PRODUCTION NO. 6:

18      All communications between you and Microsoft concerning or discussing licensing or

19  royalty agreements and/or payments concerning media formats, including audio, image, and video

20  file formats, and all communications with Microsoft concerning digital music players and/or DRM.

21

22

23

24

25

26

27

28

1   REQUEST FOR PRODUCTION NO. 7:

2        All communications between you and RealNetworks, Inc.; Archos S.A.; the companies over

3   the class period that have controlled Rio (including D&M Holdings U.S., Inc); and Creative

4   Technologies Ltd., concerning the interoperability of music purchased from online music stores

5   other than iTunes store with the iPod and/or the interoperability of portable digital media players

6   other than iPods and audio and video files purchased from iTunes Store and documents concerning,

7   analyzing, or discussing these communications.

8   REQUEST FOR PRODUCTION NO. 8:

9        All documents and communications concerning Apple's request to license or agreement to

10  license DRM software, including the agreements themselves, and any request by any company to

11  license Apple's FairPlay DRM.

12  REQUEST FOR PRODUCTION NO. 9:

13       All documents concerning exporting, copying, burning, transferring, converting or "ripping"

14  of digital audio files from one audio format to another.  For example, the conversion of AAC files to

15  MP3 files.

16  REQUEST FOR PRODUCTION NO. 10:

17       Full copies of the spreadsheets for which excerpts were produced to Somtai Troy Charoensak

18  and marked APPLE CHAR 00059 TO APPLE CHAR 00066 and all documents used in the

19  production of these documents, including but not limited to all profit and loss statements for all iPod

20  models.

21  REQUEST FOR PRODUCTION NO. 11:

22       All documents and answers Apple produced, and all transcripts of depositions taken in

23  litigation or investigations involving the iPod, iTunes and/or iTunes store brought by the

24  governments of France, Germany, Norway, Sweden, Finland, Denmark, the United Kingdom, the

25  European Union/European Commission, and the French consumer rights organization Union

26  Federale des Consommateurs Que Choisir.

27  REQUEST FOR PRODUCTION NO. 12:

28

1    All documents that identify, describe or refer to any actual, prior or potential competitor of

2    Apple's iPod and digital audio and video files sold by iTunes store.

3    REQUEST FOR PRODUCTION NO. 13:

4    All documents analyzing, describing, estimating or projecting the past, present, future or

5    projected market share in the United States of:

6        (a)    iPod;

7        (b)    online music files; and

8        (c)    online video files.

9    REQUEST FOR PRODUCTION NO. 14:

10    All documents analyzing, describing, estimating or projecting your sales in the United States

11    of:

12        (a)    the iPod;

13        (b)    online music files; and

14        (c)    online video files.

15    REQUEST FOR PRODUCTION NO. 15:

16    All documents concerning the actual or potential impact on your iPod and/or iTunes audio

17    and video market shares, sales or profits in the United States resulting from the introduction,

18    modification, changes to the terms of use for, changes to the pricing, employment or maintenance of

19    FairPlay DRM.

20    REQUEST FOR PRODUCTION NO. 16:

21    All documents concerning the actual or potential impact on your market share, sales or

22    profits in the United States resulting from any restriction or limitation on the compatibility of audio

23    files or video files protected by Apple's FairPlay DRM with any portable digital media player other

24    than iPod.

25

26

27

28

1    REQUEST FOR PRODUCTION NO. 17:

2        All documents reflecting or constituting any internal communications concerning the

3    licensing or sharing of FairPlay DRM.

4    REQUEST FOR PRODUCTION NO. 18:

5        All documents reflecting or constituting any internal communications concerning the

6    compatibility (or lack thereof) of files protected by Apple's FairPlay DRM with other file formats or

7    any portable digital media player other than iPod.

8    REQUEST FOR PRODUCTION NO. 19:

9        All documents reflecting or constituting any internal communications concerning the actual,

10   anticipated or potential actions of any actual or potential competitor of the iPod or iTunes store.

11   REQUEST FOR PRODUCTION NO. 20:

12       All documents analyzing, describing, estimating or projecting the impact on your market

13   share or sales in the United States resulting from the licensing of Apple's FairPlay DRM to third

14   parties.

15   REQUEST FOR PRODUCTION NO. 21:

16       All documents analyzing, describing, estimating or projecting the impact on your market

17   share or sales in the United States resulting from any measures that would make iPods interoperable

18   with digital audio files protected by means other than Apple's FairPlay DRM.

19   REQUEST FOR PRODUCTION NO. 22:

20       All documents analyzing, describing, estimating or projecting the impact on your market

21   share or sales in the United States resulting from any measures that would make digital audio files

22   purchased from the iTunes Store interoperable with any portable digital media player other than

23   iPod.

24   REQUEST FOR PRODUCTION NO. 23:

25       Documents sufficient to allow the calculation for each quarter since the introduction of the

26   iPod for each model of iPod that Apple has sold in the United States, the number of iPods that have

27   been purchased, Apple's total revenue from sales of each iPod model and Apple's cost of

28   manufacturing and cost of sales for each model of iPod.

1  REQUEST FOR PRODUCTION NO. 24:

2      All complaints and other correspondence from individuals Apple has received regarding the

3  lack of interoperability of iTunes audio and video files with non-Apple digital media players, the

4  iPod and non-Apple audio and video file formats concerning FairPlay DRM and any summaries or

5  analysis of such complaints.

6  REQUEST FOR PRODUCTION NO. 25:

7      All documents concerning RealNetworks Harmony Technology, which according to

8  RealNetworks "enables consumers to securely transfer purchased music to every popular secure

9  music device" and "frees consumers from the limitation of being locked into a specific portable

10  device when they buy digital music."

11  REQUEST FOR PRODUCTION NO. 26:

12      All personnel charts, related personnel listing, indices or directories, organizational charts

13  and documents retention policies produced, compiled or dated after January 1, 2000.

14  REQUEST FOR PRODUCTION NO. 27:

15      All versions of the iTunes Store Terms of Service Agreements that were in effect during any

16  portion of the time period from April 28, 2003 to the present, as well as all versions of any

17  documents setting forth policies, practices, licenses and/or agreements applicable to the use of the

18  iTunes store by consumers in the United States during the period April 28, 2003 to the present.

19  REQUEST FOR PRODUCTION NO. 28:

20      Documents sufficient to show the number of digital audio files sold by iTunes store in the

21  United States during the period April 28, 2003 to the present.

22  REQUEST FOR PRODUCTION NO. 29:

23      For each different model of iPod sold by Apple, documents sufficient to show the number of

24  iPod units sold directly by Apple in the United States during the period April 28, 2003 to the present.

25

26

27

28

1  REQUEST FOR PRODUCTION NO. 30:

2       Documents sufficient to show the number of consumers in the United States who have

3  purchased one or more digital audio or video files from iTunes store and downloaded the file(s) onto

4  an iPod during the period April 28, 2003 to the present.

5  DATED: May 22, 2009                    COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP
6                                         BONNY E. SWEENEY

7

8                                         _Bonny Sweeney/pm_
                                          BONNY E. SWEENEY

9
                                          655 West Broadway, Suite 1900
10                                        San Diego, CA 92101
                                          Telephone: 619/231-1058
11                                        619/231-7423 (fax)

12                                        THE KATRIEL LAW FIRM
                                          ROY A. KATRIEL
13                                        1101 30th Street, N.W., Suite 500
                                          Washington, DC 20007
14                                        Telephone: 202/625-4342
                                          202/330-5593 (fax)

15
                                          Co-Lead Counsel for Plaintiffs
16
                                          BONNETT, FAIRBOURN, FRIEDMAN
17                                           & BALINT, P.C.
                                          ANDREW S. FRIEDMAN
18                                        FRANCIS J. BALINT, JR.
                                          ELAINE A. RYAN
19                                        TODD D. CARPENTER
                                          2901 N. Central Avenue, Suite 1000
20                                        Phoenix, AZ 85012
                                          Telephone: 602/274-1100
21                                        602/274-1199 (fax)

22                                        BRAUN LAW GROUP, P.C.
                                          MICHAEL D. BRAUN
23                                        12304 Santa Monica Blvd., Suite 109
                                          Los Angeles, CA 90025
24                                        Telephone: 310/442-7755
                                          310/442-7756 (fax)

25                                        MURRAY, FRANK & SAILER LLP
                                          BRIAN P. MURRAY
26                                        JACQUELINE SAILER
                                          275 Madison Avenue, Suite 801
27                                        New York, NY 10016
                                          Telephone: 212/682-1818
28

PLTFS' AMENDED 1ST SET OF RFP TO DEFENDANT APPLE, INC. - C-05-00037-JW(RS)          - 12 -

1               212/682-1892 (fax)

2               GLANCY BINKOW & GOLDBERG LLP
                 MICHAEL GOLDBERG

3               1801 Avenue of the Stars, Suite 311
                 Los Angeles, CA  90067

4               Telephone:  310/201-9150
                 310/201-9160 (fax)

5

6               Additional Counsel for Plaintiffs

S:\CasesSD\Apple Tying\RFP00059243.doc

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    <u>DECLARATION OF SERVICE BY MAIL</u>

2        I, the undersigned, declare:

3        1.    That declarant is and was, at all times herein mentioned, a citizen of the United States

4    and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested

5    party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San

6    Diego, California 92101.

7        2.    That on May 22, 2009, declarant served the PLAINTIFFS' AMENDED FIRST SET

8    OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT APPLE, INC. by

9    depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed

10   envelope with postage thereon fully prepaid and addressed to the parties listed on the attached

11   Service List.

12       3.    That there is a regular communication by mail between the place of mailing and the

13   places so addressed.

14       I declare under penalty of perjury that the foregoing is true and correct. Executed this 22nd

15   day of May, 2009, at San Diego, California.

16

17                                    SHONDA L. LANDRY

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 9

5.22

1  COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  BONNY E. SWEENEY (176174)
   655 West Broadway, Suite 1900
3  San Diego, CA 92101
   Telephone: 619/231-1058
4  619/231-7423 (fax)

5  THE KATRIEL LAW FIRM
   ROY A. KATRIEL (*pro hac vice*)
6  1101 30th Street, N.W., Suite 500
   Washington, DC 20007
7  Telephone: 202/625-4342
   202/330-5593 (fax)
8  rak@katriellaw.com

9  Co-Lead Counsel for Plaintiffs

10 [Additional counsel appear on signature page.]

11              UNITED STATES DISTRICT COURT

12           NORTHERN DISTRICT OF CALIFORNIA

13                  SAN JOSE DIVISION

14 | THE APPLE IPOD ITUNES ANTI-TRUST | ) | Lead Case No. C-05-00037-JW(RS) |
   | LITIGATION | ) | |
15 | | ) | CLASS ACTION |
   | | ) | |
16 | This Document Relates To: | ) | PLAINTIFFS' AMENDED FIRST SET OF |
   | | ) | INTERROGATORIES TO DEFENDANT |
17 | ALL ACTIONS. | ) | APPLE, INC. |
   | | ) | |
18

19

20

21

22

23

24

25

26

27

28

1    Pursuant to Fed. R. Civ. P. 33, Plaintiffs Somtai Charoensak, Mariana Rosen, and Melanie

2  Tucker, individually and on behalf of all others similarly situated, by and through counsel, hereby

3  request that defendant Apple, Inc. ("Apple" or "defendant") respond to the following interrogatories

4  within 30 days of the date hereof.

5  **I.      DEFINITIONS**

6       1.    "You" or "your" refers to Apple.

7       2.    "Apple" means defendant Apple, Inc. and any of its predecessors, successors, parents,

8  subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic),

9  any of its present or former officers, directors, administrators, agents, employees, investigators,

10  accountants, attorneys and all other persons acting or purporting to act on its behalf.

11       3.    "Communication(s)" refers to any exchange of information by any means of

12  transmission, sending or receipt of information of any kind by or through any means including, but

13  not limited to, speech, writings, documents, language (machine, foreign or otherwise) of any kind,

14  computer electronics or electronic data, e-mail, instant messages, voicemail, sound, radio or video

15  signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche,

16  photographic film of all types or other media of any kind.  The term "communication" also includes,

17  without limitation, all inquiries, discussions, conversations, correspondence, negotiations,

18  agreements, understandings, meetings, notices, requests, responses, demands, complaints, or press,

19  publicity or trade releases.

20       4.    "Concerning" shall mean constituting, analyzing, discussing, evaluating, estimating,

21  measuring evidencing, reflecting, incorporating, effecting, including, or otherwise pertaining or

22  relating, either directly or indirectly, or being in any way logically or factually connected with the

23  subject matter of the inquiry or request.  Requests for "documents concerning" any subject matter

24  include documents concerning communication regarding that subject matter.

25       5.    Cost of Manufacturing refers to the "manufacturing standard cost" figure that Apple

26  refers to in Note 11 to the Notes to Consolidated Financial Statements, located on page 110 of

27  Apple's Annual Report (Form 10-K), filed with the Securities and Exchange Commission on or

28  about December 29, 2006.

6.      "Digital audio file" means a computer file containing audio data, regardless of format, including without limitation, AAC, FLAC, MP3, Real Audio, WAV and WMA, and which can be played on a computer or portable digital media player.

7.      "Digital video file" means a computer file containing video data, regardless of format, that can be played on a computer or portable digital media player.

8.      "DRM" refers to digital rights management software and technology, including Apple's FairPlay.

9.      "Document(s)" is intended to be interpreted in the broadest possible sense and includes, but is not limited to, all electronic data and all communications which are stored or retrievable or recorded in any manner and also includes, without limitation, any writing or other record of information or images, including, but not limited to, print, handwriting, photographs, film, recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge slips, letters, e-mail, compact discs, CD-ROMs, magnetic tape, videotape, magnetic or optical disks, floppy disks, PowerPoint or other presentation software systems, metadata belonging to any electronic document, telegrams, mailgrams, correspondence, notes and minutes of meetings, conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars, appointment books, circulars, charts, transcripts, news releases, trade releases, advertisements, press books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards, computer printouts and data, telecopier or facsimile transmissions and printouts, letters of credit, stock certificates and securities. The term "document" also includes preliminary drafts or revisions or copies of any such document if the copy is in any way different from the original, now in your possession, custody or control, or in the possession, custody or control of your advisors, agents, employees, servants, representatives, trustees, counsel or other persons acting or purporting to act on your behalf.

10.     "Electronic data" refers to any original and any non-identical copies whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission

1  notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital or

2  other programs (whether private, commercial, or work-in-progress), programming notes or

3  instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use

4  of any software program, including word processing documents, spreadsheets, database files, charts,

5  graphs and outlines, e-mail, personal digital assistant ("PDA") messages, instant messenger

6  messages, operating systems, source code of all types, programming languages, linkers and

7  compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys,

8  pull down tables, logs, file layouts and any and all miscellaneous files or file fragments, regardless of

9  the media on which they reside and regardless of whether said electronic data consists of an active

10  file, deleted file or file fragment. "Electronic data" also includes any and all items stored on

11  computer memory or memories, hard disks, floppy disks, zip drives, CD-ROMs, Bernoulli Boxes

12  and their equivalents, magnetic tapes of all types and kinds, microfiche, punched cards, punched

13  tape, computer chips (including, but not limited to, EPROM, PROM, ROM or RAM of any kind) on

14  or in any other vehicle for digital data storage or transmittal, files, folder tabs, or containers and

15  labels appended to or associated with any physical storage device associated with each original and

16  each copy.

17  　　　11.　"Financial statements" includes, but is not limited to, interim, final, pro forma, actual,

18  projected, complete, or partial, annual, quarterly, monthly, weekly or otherwise, audited or

19  unaudited, budgets, budget plans, balance sheets, schedules of direct costs, schedules of

20  miscellaneous income, schedules of general services, fiscal serviceman administrative services,

21  statements of earnings and earnings per share, income statements, cash flow statements, statement of

22  revenues and statements of expenses, all notes or other commentary concerning any of the foregoing

23  and all underlying work papers and all drafts used in connection with the preparation of any of the

24  foregoing.

25  　　　12.　"iPod" refers to all portable digital media players manufactured by Apple, including

26  but not limited to, all generations of iPod, iPod Touch, iPod Photo, iPod Mini, iPod Nano, iPod

27  Shuffle, and iPhone, which were released during the Relevant Time Period.

28

13.    "iTunes store" means Apple's online store through which Apple sells digital audio and digital video files to consumers.

14.    "Labels" means BMG Music, EMI Recoded Music Holdings, Inc., Sony Music, UMG Recordings Inc., and Warner Music Inc. and any of their predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

15.    "Online music store" relates to any place on the internet from which digital audio files or video files may be purchased and downloaded.

16.    "Portable digital media player" means any device that can be easily transported, weighs less than 12 ounces, is capable of playing a digital audio file, can store more than 150 audio files assuming an average file size of 3.0 MB, but does not employ external media such as compact discs, cartridges, cassettes, or compact flash cards.

17.    "Telephone records" includes, without limitation, telephone directories, rolodexes, messages, telephone logs, recordings of telephone conversations and telephone bills (local and long distance).

## II.    INSTRUCTIONS

1.    Pursuant to the Fed. R. Civ. P. 26(e), these interrogatories are continuing in nature, so that if, after answering, you acquire additional responsive knowledge or information, Plaintiffs direct that you serve supplemental answers upon them within seven days after acquiring such additional knowledge or information.

2.    Where identification of a document is required, the following shall be separately stated as to each document:

(a)    its date, its exact title, and the nature and substance of the document with sufficient particularity to enable it to be identified and located within any document production;

(b)    the name of the author, his or her business affiliation (presently and at the time the document was prepared), and his or her last known address;

1        (c)     the name, business affiliation (both presently and at the time the document

2  was prepared) and the last known address of the addressee;

3        (d)     the name, business affiliation (both presently and at the time the document

4  was prepared) and the last known address of every person to whom a copy of the document was to

5  be sent, other than the addressee described above;

6        (e)     the names and addresses of all persons who now possess either the original or

7  any copy thereof;

8        (f)     the identification and location of the files where the original and each copy is

9  normally or presently kept; and

10       (g)     if such document is no longer in existence, state:

11          (i)     the circumstances surrounding its elimination;

12          (ii)     the date and reasons for such elimination; and

13          (iii)     the identity of the person(s) who ordered and/or supervised the

14  elimination.

15     3.     If an interrogatory is objected to on the ground of a claim of privilege pursuant to

16  Fed. R. Civ. P. 26(b)(5), you must provide a statement of the claim of privilege and all facts relied

17  upon in support of that claim, including the parties involved, any dates involved, the relevant subject

18  matter of the privileged material, any documents supporting the privileged information, including the

19  dates, authors, recipients, title and subject matter, and present location of any documents involved.

20  In the case of an attorney-work product assertion, you must also identify the litigation for which the

21  work-product was prepared.

22     4.     Whenever a reference to a business entity appears, the reference shall mean the

23  business entity, its affiliated entities, partnerships, divisions, subdivisions, directors, officers,

24  employees, agents, clients, or other representatives of affiliated third parties.

25     5.     If you answer any interrogatory by reference to business records pursuant to Fed. R.

26  Civ. P. 33(d), identify such records by bates number and the name of your employee certifying the

27  documents as business records for purposes of answering the interrogatory.

28

6.    The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa. The masculine form of a noun or pronoun shall be considered to include within its meaning the feminine form of the noun or pronoun so used, and vice versa. The use of any tense of a verb shall be considered to include within its meaning all other tenses of the verb so used.

## III.    RELEVANT TIME PERIOD

Unless otherwise indicated, these interrogatories relate to the period between January 1, 2000 and the present (the "Relevant Time Period"). Your responses should reflect information for the Relevant Time Period. Where your responses relate to only a portion of the Relevant Time Period, indicate the date or dates to which your response relates.

## IV.    INTERROGATORIES

INTERROGATORY NO. 1:

How much do and/or did you pay in licensing fees to Thomson, Fraunhofer-Gesellschaft, and other companies, in royalty and/or licensing fees so that iTunes music software and iPod's could play the MP3 audio file format? Give the total figure for each year since 2001.

INTERROGATORY NO. 2:

In a similar manner, list the total amount of licensing fees and royalties by year Apple must pay to manufacture and sell the iPod.

INTERROGATORY NO. 3:

State the total amount in licensing and royalty fees by year Apple must pay to encode, sell and distribute digital audio files and digital video files on the iTunes Store.

INTERROGATORY NO. 4:

What is your current cost of manufacturing each model of iPod which is currently sold on Apple's website available at http://www.apple.com/?

INTERROGATORY NO. 5:

List all licenses and royalties, including the amount of the fee or royalty and what the fee or royalty is for, that you paid any company during calendar year 2005 and the same figure for the n...

1 | recent 12 month period in which you have the data available, (*e.g.*, the 12 months ending September

2 | 30, 2006).

3 | INTERROGATORY NO. 6:

4 | On July 19, 2006, Apple issued a press release entitled *Apple Reports Third Quarter*

5 | *Results/Posts Second Highest Quarterly Revenue and Earnings in Company's History*. Apple CEO

6 | Steve Jobs is quoted as saying: "In addition, iPod continued to earn a US market share of over 75

7 | percent." List all products that are included in the market in which "iPod continued to earn a US

8 | market share of over 75 percent" and state the market share for each of these products for each

9 | quarter within the Relevant Time Period.

10 | INTERROGATORY NO. 7:

11 | How many digital audio files have been sold through the iTunes Store in the United States

12 | since April 28, 2003 to date?

13 | INTERROGATORY NO. 8:

14 | How many iPod units have been directly sold by Apple in the United States since April 28,

15 | 2003 to date?

16 | DATED: May 22, 2009

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
BONNY E. SWEENEY

*Bonny Sweeney* /B

BONNY E. SWEENEY

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

THE KATRIEL LAW FIRM
ROY A. KATRIEL
1101 30th Street, N.W., Suite 500
Washington, DC 20007
Telephone: 202/625-4342
202/330-5593 (fax)

Co-Lead Counsel for Plaintiffs

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.

1  ANDREW S. FRIEDMAN
   FRANCIS J. BALINT, JR.
2  ELAINE A. RYAN
   TODD D. CARPENTER
3  2901 N. Central Avenue, Suite 1000
   Phoenix, AZ 85012
4  Telephone: 602/274-1100
   602/274-1199 (fax)
5
   BRAUN LAW GROUP, P.C.
6  MICHAEL D. BRAUN
   12304 Santa Monica Blvd., Suite 109
7  Los Angeles, CA 90025
   Telephone: 310/442-7755
8  310/442-7756 (fax)

9  MURRAY, FRANK & SAILER LLP
   BRIAN P. MURRAY
10 JACQUELINE SAILER
   275 Madison Avenue, Suite 801
11 New York, NY 10016
   Telephone: 212/682-1818
12 212/682-1892 (fax)

13 GLANCY BINKOW & GOLDBERG LLP
   MICHAEL GOLDBERG
14 1801 Avenue of the Stars, Suite 311
   Los Angeles, CA 90067
15 Telephone: 310/201-9150
   310/201-9160 (fax)
16
   Additional Counsel for Plaintiffs
17

S.\Cases\SD\Apple Tying\ROGS00059560.doc

18

19

20

21

22

23

24

25

26

27

28

1  <u>DECLARATION OF SERVICE BY MAIL</u>

2  I, the undersigned, declare:

3  1.  That declarant is and was, at all times herein mentioned, a citizen of the United States

4  and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested

5  party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San

6  Diego, California 92101.

7  2.  That on May 22, 2009, declarant served the PLAINTIFFS' AMENDED FIRST SET

8  OF INTERROGATORIES TO DEFENDANT APPLE, INC. by depositing a true copy thereof in a

9  United States mailbox at San Diego, California in a sealed envelope with postage thereon fully

10  prepaid and addressed to the parties listed on the attached Service List.

11  3.  That there is a regular communication by mail between the place of mailing and the

12  places so addressed.

13  I declare under penalty of perjury that the foregoing is true and correct. Executed this 22nd

14  day of May, 2009, at San Diego, California.

15

16  _____
        SHONDA L. LANDRY

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 10

5-22

1  COUGHLIN STOIA GELLER
       RUDMAN & ROBBINS LLP
2  BONNY E. SWEENEY (176174)
   655 West Broadway, Suite 1900
3  San Diego, CA 92101
   Telephone: 619/231-1058
4  619/231-7423 (fax)
   bonnys@csgrr.com
5
   THE KATRIEL LAW FIRM
6  ROY A. KATRIEL (*pro hac vice*)
   1101 30th Street, N.W., Suite 500
7  Washington, DC 20007
   Telephone: 202/625-4342
8  202/330-5593 (fax)
   rak@katriellaw.com
9
   Co-Lead Counsel for Plaintiffs
10
   [Additional counsel appear on signature page.]
11
                    UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13
                         SAN JOSE DIVISION
14
   THE APPLE IPOD ITUNES ANTI-TRUST    )  Lead Case No. C-05-00037-JW(RS)
15 LITIGATION                          )
                                       )  CLASS ACTION
16 _____ )
                                       )  PLAINTIFFS' AMENDED FIRST SET OF
17 This Document Relates To:           )  REQUESTS FOR ADMISSION TO
                                       )  DEFENDANT APPLE, INC.
18     ALL ACTIONS.                    )
   _____ )
19
20
21
22
23
24
25
26
27
28

1      Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiffs Somtai Charoensak,

2   Mariana Rosen, and Melanie Tucker request defendant Apple, Inc. ("Apple" or "Defendant")

3   respond to the following requests for admission within 30 days after service thereof.

4   **I.    DEFINITIONS**

5      1.    "You" or "Your" refers to Apple.

6      2.    "Apple" means defendant Apple, Inc., and any of its predecessors, successors,

7   parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and

8   domestic), any of its present or former officers, directors, administrators, agents, employees,

9   investigators, accountants, attorneys and all other persons acting or purporting to act on its behalf.

10     3.    "Communication(s)" refers to any exchange of information by any means of

11  transmission, sending or receipt of information of any kind by or through any means including, but

12  not limited to, speech, writings, documents, language (machine, foreign or otherwise) of any kind,

13  computer electronics or electronic data, e-mail, instant messages, voicemail, sound, radio or video

14  signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche,

15  photographic film of all types or other media of any kind. The term "Communication" also includes,

16  without limitation, all inquiries, discussions, conversations, correspondence, negotiations,

17  agreements, understandings, meetings, notices, requests, responses, demands, complaints, or press,

18  publicity or trade releases.

19     4.    "Concerning" shall mean constituting, analyzing, discussing, evaluating, estimating,

20  measuring, evidencing, reflecting, incorporating, effecting, including, or otherwise pertaining or

21  relating, either directly or indirectly, or being in any way logically or factually connected with the

22  subject matter of the inquiry or request.

23     5.    "Cost of Manufacturing" refers to the "manufacturing standard cost" figure that

24  Apple refers to in Note 11 of the Notes to Consolidated Financial Statements, located on page 110 of

25  Apple's Annual Report (Form 10-K), filed with the Securities and Exchange Commission on or

26  about December 29, 2006.

27

28

6.     "Digital Audio File" means a computer file containing audio data, regardless of format, including without limitation, AAC, FLAC, MP3, Real Audio, WAV and WMA, and which can be played on a computer or portable digital media player.

7.     "Digital video file" means a computer file containing video data, regardless of format, that can be played on a computer or portable digital media player.

8.     "Document(s)" is intended to be interpreted in the broadest possible sense and includes, but is not limited to, all electronic data and all communications which are stored or retrievable or recorded in any manner and also includes, without limitation, any writing or other record of information or images, including, but not limited to, print, handwriting, photographs, film, recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge slips, letters, e-mail, compact discs, CD-ROMs, magnetic tape, videotape, magnetic or optical disks, floppy disks, PowerPoint or other presentation software systems, metadata belonging to any electronic document, telegrams, mailgrams, correspondence, notes and minutes of meetings, conversations or telephone calls, resolutions, interoffice memoranda, work papers, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars, appointment books, circulars, charts, transcripts, news releases, trade releases, advertisements, press books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards, computer printouts and data, telecopier or facsimile transmissions and printouts, letters of credit, stock certificates and securities. The term "Document" also includes preliminary drafts or revisions or copies of any such document if the copy is in any way different from the original, now in your possession, custody or control, or in the possession, custody or control of your advisors, agents, employees, servants, representatives, trustees, counsel or other persons acting or purporting to act on your behalf.

9.     "DRM" refers to digital rights management software and technology, including Apple's FairPlay.

10.    "Electronic data" refers to any original and any non-identical copies whether not identical because of notes made on copies or attached comments, annotations, marks, transmission

1  notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital or

2  other programs (whether private, commercial, or work-in-progress), programming notes or

3  instructions, activity listings of e-mail receipts or transmittals, output resulting from the use of any

4  software program, including word processing documents, spreadsheets, database files, charts, graphs

5  and outlines, e-mail, personal digital assistant ("PDA") messages, instant messenger messages,

6  operating systems, source code of all types, programming languages, linkers and compilers,

7  peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down

8  tables, logs, file layouts and any and all miscellaneous files or file fragments, regardless of the media

9  on which they reside and regardless of whether said electronic data consists of an active file, deleted

10  file or file fragment. "Electronic data" also includes any and all items stored on computer memory

11  or memories, hard disks, floppy disks, zip drives, CD-ROMs, Bernoulli Boxes and their equivalents,

12  magnetic tapes of all types and kinds, microfiche, punched cards, punched tape, computer chips

13  (including, but not limited to, EPROM, PROM, ROM or RAM of any kind) on or in any other

14  vehicle for digital data storage or transmittal, files, folder tabs, or containers and labels appended to

15  or associated with any physical storage device associated with each original and each copy.

16      11.     "Financial statements" includes, but is not limited to, interim, final, pro forma, actual,

17  projected, complete or partial, annual, quarterly, monthly, weekly or otherwise, audited or unaudited,

18  budgets, budget plans, balance sheets, schedules of direct costs, schedules of miscellaneous income,

19  schedules of general services, fiscal serviceman administrative services, statements of earnings and

20  earnings per share, income statements, cash flow statements, statement of revenues and statements of

21  expenses, all notes or other commentary concerning any of the foregoing and all underlying work

22  papers and all drafts used in connection with the preparation of any of the foregoing.

23      12.     "iTunes store" means Apple's online store through which Apple sells digital audio

24  files and digital video files to consumers.

25      13.     "iPod" refers to the Digital Music Players manufactured by Apple, including but not

26  limited to, all generations of iPod, iPod Touch, iPod Photo, iPod Mini, iPod Nano, iPod Shuffle, and

27  iPhone which were released during the Relevant Time Period.

28

14.    "Labels" means BMG Music, EMI Recorded Music Holdings, Inc., Sony Music, UMG Recordings, Inc., and Warner Music Inc. and any of their predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

15.    "Online music store" relates to any place on the internet from which digital audio files or digital video files may be purchased and downloaded.

16.    "Portable digital media player" means any device that can be easily transported, weighs less than 12 ounces, is capable of playing a digital audio file, can store more than 150 digital audio files assuming an average file size of 3.0 MB but does not employ external media such as compact discs, cartridges, cassettes or compact flash cards.

II.    **INSTRUCTIONS**

1.    You are required to respond to each and every request for admission.

2.    In accordance with the Fed. R. Civ. P. 36(a)(4), for each request for sdmission, if your answer is anything other than an unqualified admission:

> [T]he answer must specifically deny it or state in detail why [you] cannot truthfully admit or deny it. A denial shall fairly respond to the substance of the matter; and when good faith requires that [you] qualify an answer or deny only part of a matter, the answer must specify the part admitted and qualify or deny the rest. [You] may assert lack of knowledge or information as a reason for failing to admit or deny only if [you] state[] that [you have] made reasonable inquiry and that the information [you] know[] or can readily obtain is insufficient to enable [you] to admit or deny.

Fed. R. Civ. P. 36(a)(4).

3.    This request shall be deemed continuing in nature, so as to require further and supplemental responses if you locate or obtain additional information which may impact the responses hereto between the time of the initial responses and the time of any hearing or trial in the above-captioned matter.

III.    **RELEVANT TIME**

Unless otherwise indicated, these requests refer to the period from January 1, 2000 to the present ("Relevant Time Period") and shall reflect all information for that entire period even

1 | though prepared or published outside the Relevant Time Period. Where your responses relate to

2 | only a portion of the Relevant Time Period, indicate the date or dates to which your response relates.

3 | **IV.    REQUESTS FOR ADMISSION**

4 | REQUEST FOR ADMISSION NO. 1:

5 |     Admit that your cost of manufacturing the 8 GB iPod Nano and the 2 GB iPod Nano differ

6 | by $20.00 or less.

7 | REQUEST FOR ADMISSION NO. 2:

8 |     Admit that your cost of manufacturing the 30 GB iPod and the 80 GB iPod differ by $50.00

9 | or less.

10 | REQUEST FOR ADMISSION NO. 3:

11 |     Admit that some or all of the labels requested that Apple make the iPod compatible with

12 | online music stores other than iTunes store.

13 | REQUEST FOR ADMISSION NO. 4:

14 |     Admit that some or all of the labels requested that Apple make digital audio files purchased

15 | on the iTunes store compatible with competing portable digital media players other than Apple's

16 | iPod.

17 | REQUEST FOR ADMISSION NO. 5:

18 |     Admit that Apple imposes minimum advertised price or minimum sale price restrictions on

19 | authorized resellers of the iPod.

20 | REQUEST FOR ADMISSION NO. 6:

21 |     Admit that Apple creates incentives for authorized resellers of the iPod to sell at a suggested

22 | retail price.

23 | DATED: May 22, 2009                COUGHLIN STOIA GELLER
                                       RUDMAN & ROBBINS LLP
24 |                                    BONNY E. SWEENEY

25 |

26 |                                    BONNY E. SWEENEY

27 |

28 |                                    655 West Broadway, Suite 1900
                                       San Diego, CA 92101

1    Telephone: 619/231-1058
     619/231-7423 (fax)
2
     THE KATRIEL LAW FIRM
3    ROY A. KATRIEL
     1101 30th Street, N.W., Suite 500
4    Washington, DC 20007
     Telephone: 202/625-4342
5    202/330-5593 (fax)

6    Co-Lead Counsel for Plaintiffs

7    BONNETT, FAIRBOURN, FRIEDMAN
        & BALINT, P.C.
8    ANDREW S. FRIEDMAN
     FRANCIS J. BALINT, JR.
9    ELAINE A. RYAN
     TODD D. CARPENTER
10   2901 N. Central Avenue, Suite 1000
     Phoenix, AZ 85012
11   Telephone: 602/274-1100
     602/274-1199 (fax)
12
     BRAUN LAW GROUP, P.C.
13   MICHAEL D. BRAUN
     12304 Santa Monica Blvd., Suite 109
14   Los Angeles, CA 90025
     Telephone: 310/442-7755
15   310/442-7756 (fax)

16   MURRAY, FRANK & SAILER LLP
     BRIAN P. MURRAY
17   JACQUELINE SAILER
     275 Madison Avenue, Suite 801
18   New York, NY 10016
     Telephone: 212/682-1818
19   212/682-1892 (fax)

20   GLANCY BINKOW & GOLDBERG LLP
     MICHAEL GOLDBERG
21   1801 Avenue of the Stars, Suite 311
     Los Angeles, CA 90067
22   Telephone: 310/201-9150
     310/201-9160 (fax)
23
     Additional Counsel for Plaintiffs
24
S:\Cases\SD-Apple-Tying\RFA000059228.doc
25

26

27

28

PLTFS' AMENDED 1ST SET OF RFA TO DEFENDANT APPLE, INC. - C-05-0003?-JW (RS)

<u>DECLARATION OF SERVICE BY MAIL</u>

I, the undersigned, declare:

1.    That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.    That on May 22, 2009, declarant served the PLAINTIFFS' AMENDED FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT APPLE, INC. by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.    That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22nd day of May, 2009, at San Diego, California.

SHONDA L. LANDRY

# EXHIBIT 11

# JONES DAY

RECD MAY 2 9 2009

555 CALIFORNIA STREET · 26TH FLOOR · SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE 415-626-3939 · FACSIMILE 415-875-5700

Direct Number: (415) 875-5710
ramittelstaedt@jonesday.com

JP005615:yb                           May 27, 2009

**Via E-mail and Federal Express**:
Bonny Sweeney, Esq.
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301

                    Re:    The Apple iPod iTunes Antitrust Litigation

Dear Bonny:

           Enclosed is a list of software updates for iTunes

           This list, bates labeled Apple_AIIA00088845 to Apple_AIIA00088865, has been designated "CONFIDENTIAL—ATTORNEYS EYES ONLY" pursuant to the stipulated protective order entered in this case on June 13, 2007.

           As discussed, in providing this list, we are not suggesting that all of the selected updates are relevant to this case. Quite the contrary. Instead, the list is provided with the understanding that you will select the updates for which you seek further discovery including 30(b)(6) testimony, as part of the process of trying to reach agreement on narrowing the scope of your discovery requests.

           To avoid asking for and granting extensions while we are negotiating, may we agree that Apple has an extension to file a written response to the document requests and to the deposition notice until 14 days after you notify me that a response is due?

                              Sincerely,

                              Robert A. Mittelstaedt /av n

                              Robert A. Mittelstaedt

Enclosures

SFI-611024v1

ATLANTA · BEIJING · BRUSSELS · CHICAGO · CLEVELAND · COLUMBUS · DALLAS · DUBAI · FRANKFURT · HONG KONG · HOUSTON
IRVINE · LONDON · LOS ANGELES · MADRID · MEXICO CITY · MILAN · MOSCOW · MUNICH · NEW DELHI · NEW YORK · PARIS · PITTSBURGH
SAN DIEGO · SAN FRANCISCO · SHANGHAI · SILICON VALLEY · SINGAPORE · SYDNEY · TAIPEI · TOKYO · WASHINGTON

[Filed Under Seal]

# EXHIBIT 12

**Paula Roach**

| | |
|---|---|
| **From:** | Tom Merrick |
| **Sent:** | Monday, July 20, 2009 3:34 PM |
| `o:` | 'dkiernan@jonesday.com' |
| **Cc:** | Paula Roach |
| **Subject:** | Re: Responses to written discovery |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

David, you can have the extensions you've requested. However, I'm out of town all week on another matter, so if you could call Paula with the update, that would work better than trying to catch me. She's available in the morning. Tom

----- Original Message -----
From: David Kiernan <dkiernan@JonesDay.Com>
To: Tom Merrick
Sent: Mon Jul 20 15:13:14 2009
Subject: Re: Responses to written discovery

Tom: Can we have an extension until the end of the week on the RFAs? Given vacation schedules, it has taken longer to confirm answers. We will serve responses to RFPs today and are waiting for verification for Rogs. In the event we don't receive the verification today, can we serve tomorrow? I'll call you tomorrow regarding 30(b)(6) documents. I'm on vacation, so it has been a bit hectic coordinating to give you a call. Thanks much
------------------
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
------------------

----- Original Message -----
From: "Tom Merrick" [tmerrick@csgrr.com]
Sent: 07/16/2009 09:49 AM MST
To: David Kiernan
Cc: "Paula Roach" <proach@csgrr.com>
Subject: RE: Responses to written discovery


Yes.


NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited.
If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

-----Original Message-----
From: David Kiernan [mailto:dkiernan@JonesDay.Com]
Sent: Thursday, July 16, 2009 9:49 AM
To: Tom Merrick
Cc: Paula Roach
Subject: Responses to written discovery


Tom: Can we have an extension until Monday to serve responses to plaintiffs' written discovery? We are waiting for several pieces of

1

information necessary to respond to the interrogatories and RFAs.
--------------------
This e-mail (including any attachments) may contain information that is
private, confidential, or protected by attorney-client or other
privilege.
If you received this e-mail in error, please delete it from your system
 ithout copying it and notify sender by reply e-mail, so that our
records can be corrected.
--------------------

# EXHIBIT 13

**Paula Roach**

| | |
|---|---|
| **From:** | David Kiernan [dkiernan@JonesDay.com] |
| **Sent:** | Monday, August 03, 2009 10:00 AM |
| **To:** | Paula Roach |
| **Cc:** | Tom Merrick |
| **Subject:** | Re: AIIA 30b6 production |

Agreed.

David C. Kiernan
Jones Day
555 California Street, 26th Floor
San Francisco, California 94104
Phone (415) 875-5745
Fax (415) 875-5700

| | |
|---|---|
| "Paula Roach" <proach@csgrr.com> | To <dkiernan@jonesday.com> |
| | cc "Tom Merrick" <tmerrick@csgrr.com> |
| 08/03/2009 09:10 AM | Subject AIIA 30b6 production |

David:

As a follow up to our call on 7/31, I want to confirm that certain documents are included in the documents to be produced.  During our call we agreed that Apple would be producing documents concerning: (1) software updates that address conduct by competitors to permit direct payback of iTunes files on a non-iPod and/or permit direct playback of non-iTunes files on an iPod; and (2) software updates that addressed "hacks".  Plaintiffs reserved their right to seek compliance with additional requests after production of the above categories begins.

We had previously discussed production in response to Request 7.  Through this request plaintiffs seek all communications between Apple and the record labels concerning "hacks".  Please confirm that to the extent responsive documents exist they will be produced in the above production.

We look forward to receiving a proposed custodian list and search terms from you by the end of this week or early next week.

thanks

Paula M. Roach
Coughlin Stoia Geller Rudman & Robbins, LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Phone: (619) 231-1058

11/17/2009

Fax: (619) 231-7423
www.csgrr.com

NOTICE: This email message is for the sole use of the intended
recipient(s) and may contain information that is confidential and
protected from disclosure by the attorney-client privilege, as
attorney work product, or by other applicable privileges.  Any
unauthorized review, use, disclosure or distribution is prohibited.
If you are not the intended recipient, please contact the sender
by reply email and destroy all copies of the original message.

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by
attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without
copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

11/17/2009

EXHIBIT 14

**Paula Roach**

| | |
|---|---|
| **From:** | David Kiernan [dkiernan@JonesDay.com] |
| **Sent:** | Wednesday, August 12, 2009 2:55 PM |
| **To:** | Tom Merrick |
| **Cc:** | Paula Roach |
| **Subject:** | RE: 30(b)(6) and various items |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |
| **Attachments:** | SFI_616238_4_30(b)(6) Custodians and Keywords.DOC |

The attached document lists the key custodians most likely to have electronically stored information that Apple has agreed to produce in response to plaintiffs' document requests attached to their 30(b)(6) notice: specifically, ESI that relates to (1) software updates that address conduct by competitors to permit direct payback of protected iTunes files on a non-iPod and/or permit direct playback of non-iTunes files on an iPod; (2) software updates that addressed "hacks" that permitted such playback; and (3) communications between Apple and the record labels that discuss such updates, if any.

In addition, as we have discussed, to expedite the discovery process, minimize the burden associated with searching for, collecting, and producing ESI, and minimize the burden on you associated with hosting and reviewing ESI that you do not really want or need, Apple will collect, process, and produce ESI from files and/or folders identified by the key custodians as containing potentially responsive material. By providing this list of custodians, Apple is not representing that responsive documents actually exist for each custodian.

To further minimize the burdens on the parties, Apple will run the search terms listed in the attached document against ESI created, modified, sent, or received on or after April 1, 2002 through the date of collections of the custodians' data, which occurred in 2007. Apple will review for responsiveness and privilege the documents that are identified by such terms and will produce responsive, non-privileged documents subject to the Protective Order in this case. Before suggesting additional terms, let's discuss so that you can avoid duplicating efforts that I may have already made.

In addition, Apple will also produce documents, to the extent they exist, sufficient to identify the software updates referred to in categories (1) and (2). Finally, in response to Request No. 8, Apple will produce organizational charts not previously produced, if any, that reflect Apple employees who were responsible for the updates referred to in (1) and (2) above

David C. Kiernan
Jones Day
555 California Street, 26th Floor
San Francisco, California 94104
Phone (415) 875-5745
Fax (415) 875-5700

"Tom Merrick" <tmerrick@csgrr.com>

08/12/2009 08:50 AM

To "David Kiernan" <dkiernan@JonesDay.com>

cc "Paula Roach" <proach@csgrr.com>

Subject RE: 30(b)(6) and various items


1.    I agree we would rather keep the ball rolling on the custodians and search terms.  Look forward to the list.

2.    Any time next Thursday is fine

3.    The return date was last Friday, but his counsel contacted me for an extension.  Said he should finish looking for responsive docs a week or so afterward.  I'll have to check on whether we have a formal agreement on third-party production, but we'll certainly provide copies and discuss any logistical issues on the process, if we don't.

Tom


Thomas R. Merrick, Esq.
Coughlin Stoia Geller Rudman & Robbins, LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Phone: (619) 231-1058
Fax: (619) 231-7423
TMerrick@csgrr.com
www.csgrr.com


NOTICE: This email message is for the sole use of the intended
recipient(s) and may contain information that is confidential and
protected from disclosure by the attorney-client privilege, as
attorney work product, or by other applicable privileges.  Any
unauthorized review, use, disclosure or distribution is prohibited.
If you are not the intended recipient, please contact the sender
by reply email and destroy all copies of the original message.

---

**From:** David Kiernan [mailto:dkiernan@JonesDay.com]
**Sent:** Wednesday, August 12, 2009 7:19 AM
**To:** Tom Merrick; Paula Roach
**Subject:** 30(b)(6) and various items


1.    I'll send proposed custodians and search terms this morning for the 30(b)(6).  Your letter suggested negotiating these with the other RFPs.  But I think we should keep the ball rolling on the 30(b)(6).

2.    I am available next week to meet and confer over the other written discovery responses.  Bob is out of the office and thus has not yet read the meet and confer letter.  So let's pick a time on Thursday or Friday of next week.

3.    What is the status of the subpoena served on Johansen? Did he produce documents? If not, when is the date of production? We'll of course want a copy of what he produces. On a related note, is there an agreement between the parties on how third-party productions are handled?

David

David C. Kiernan
Jones Day
555 California Street, 26th Floor
San Francisco, California 94104
Phone (415) 875-5745
Fax (415) 875-5700

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

## Custodian List For 30(b)(6) Document Requests

1.    Jeff Robbin, VP, Engineering, Applications Group

2.    Dave Heller, Director, iTunes Client Engineer

3.    Tom Dowdy, iTunes Engineer

4.    Augustin Farrugia, Senior Director, DRM

5.    Eddie Cue, VP iTunes

6.    Kevin Saul, Associate General Counsel

7.    Tony Fadell, Senior VP of iPod Division

8.    Phil Schiller, Senior VP, Worldwide Product Marketing

9.    Greg Jozwiak, VP, iPod Product Marketing

10.   Steve Jobs, CEO

## <u>Search Terms For 30(b)(6) Document Requests</u>

1.    hack* and (Fairplay or DRM or encryption or security or iPod or iTunes or iTS or ITMS)

2.    strip* and (Fairplay or DRM or encryption or security)

3.    break* and (Fairplay or DRM or encryption or security)

4.    crack* and (Fairplay or DRM or encryption or security)

5.    remov* and (Fairplay or DRM or encryption or security)

6.    breach* and (Fairplay or DRM or encryption or security)

7.    circumvent* and (Fairplay or DRM or encryption or security)

8.    mimic* and (Fairplay or DRM or encryption)

9.    imitat* and (Fairplay or DRM or encryption)

10.    "reverse engineer" and (Fairplay or DRM or encryption or security)

11.    RealNetworks and (Fairplay or DRM or encryption or security or iPod)

12.    Harmony (Date restriction: January 1, 2004 – December 31, 2005)

- 2 -

# EXHIBIT 15

## Paula Roach

| | |
|---|---|
| **From:** | David Kiernan [dkiernan@JonesDay.com] |
| **Sent:** | Thursday, August 27, 2009 11:59 AM |
| **To:** | Tom Merrick; Paula Roach |
| **Subject:** | Fw: 30(b)(6) and various items |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |
| **Attachments:** | SFI_616238_4_30(b)(6) Custodians and Keywords.DOC |

Tom & Paula:        I revised the search terms for the software updates, as the initial list used "and," which was overinclusive and brought back approximately 50-75 boxes of documents. The below replaces "and" with NEAR/6, which is how the terms would be used for what we are trying to identify--e.g., "stripping Fairplay" or "removing DRM"). These terms brought back a much more manageable number of approximately 15-20 boxes of documents, which is still a high volume of documents to review for just this issue.

1.    hack* NEAR/6 (Fairplay or DRM or encryption or security or iPod or iTunes or iTS or ITMS)
2.    strip* NEAR/6 (Fairplay or DRM or encryption or security)
3.    break* NEAR/6 (Fairplay or DRM or encryption or security)
4.    crack* NEAR/6 (Fairplay or DRM or encryption or security)
5.    remov* NEAR/6 (Fairplay or DRM or encryption or security)
6.    breach* NEAR/6 (Fairplay or DRM or encryption or security)
7.    circumvent* NEAR/6 (Fairplay or DRM or encryption or security)
8.    mimic* NEAR/6 (Fairplay or DRM or encryption)
9.    imitat* NEAR/6 (Fairplay or DRM or encryption)
10.    "reverse engineer" NEAR/6 (Fairplay or DRM or encryption or security)
11.    Realnetworks and (Fairplay or DRM or encryption or security or iPod)
12.    Harmony (Date restriction: January 1, 2004 – December 31, 2005)

David C. Kiernan
Jones Day
555 California Street, 26th Floor
San Francisco, California 94104
Phone (415) 875-5745
Fax (415) 875-5700

----- Forwarded by David Kiernan/JonesDay on 08/27/2009 11:30 AM -----

| | |
|---|---|
| **David Kiernan/JonesDay** | To  "Tom Merrick" <tmerrick@csgrr.com> |
| Extension 3-5745 | cc  "Paula Roach" <proach@csgrr.com> |
| 08/12/2009 02:54 PM | Subject  RE: 30(b)(6) and various itemsLink |

The attached document lists the key custodians most likely to have electronically stored

information that Apple has agreed to produce in response to plaintiffs' document requests attached to their 30(b)(6) notice: specifically, ESI that relates to (1) software updates that address conduct by competitors to permit direct payback of protected iTunes files on a non-iPod and/or permit direct playback of non-iTunes files on an iPod; (2) software updates that addressed "hacks" that permitted such playback; and (3) communications between Apple and the record labels that discuss such updates, if any.

In addition, as we have discussed, to expedite the discovery process, minimize the burden associated with searching for, collecting, and producing ESI, and minimize the burden on you associated with hosting and reviewing ESI that you do not really want or need, Apple will collect, process, and produce ESI from files and/or folders identified by the key custodians as containing potentially responsive material. By providing this list of custodians, Apple is not representing that responsive documents actually exist for each custodian.

To further minimize the burdens on the parties, Apple will run the search terms listed in the attached document against ESI created, modified, sent, or received on or after April 1, 2002 through the date of collections of the custodians' data, which occurred in 2007. Apple will review for responsiveness and privilege the documents that are identified by such terms and will produce responsive, non-privileged documents subject to the Protective Order in this case. Before suggesting additional terms, let's discuss so that you can avoid duplicating efforts that I may have already made.

In addition, Apple will also produce documents, to the extent they exist, sufficient to identify the software updates referred to in categories (1) and (2). Finally, in response to Request No. 8, Apple will produce organizational charts not previously produced, if any, that reflect Apple employees who were responsible for the updates referred to in (1) and (2) above

David C. Kiernan
Jones Day
555 California Street, 26th Floor
San Francisco, California 94104
Phone (415) 875-5745
Fax (415) 875-5700

"Tom Merrick" <tmerrick@csgrr.com>

08/12/2009 08:50 AM

TO "David Kiernan" <dkiernan@JonesDay.com>

CC "Paula Roach" <proach@csgrr.com>

Subject RE: 30(b)(6) and various items

1.  I agree we would rather keep the ball rolling on the custodians and search terms. Look forward to the list.

2.  Any time next Thursday is fine

3.  The return date was last Friday, but his counsel contacted me for an extension. Said he should finish looking for responsive docs a week or so afterward. I'll have to check on whether we have a formal agreement on third-party production, but we'll certainly provide copies and discuss any logistical issues on the process, if we don't.

11/17/2009

Tom


Thomas R. Merrick, Esq.
Coughlin Stoia Geller Rudman & Robbins, LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Phone: (619) 231-1058
Fax: (619) 231-7423
TMerrick@csgrr.com
www.csgrr.com




NOTICE: This email message is for the sole use of the intended
recipient(s) and may contain information that is confidential and
protected from disclosure by the attorney-client privilege, as
attorney work product, or by other applicable privileges.  Any
unauthorized review, use, disclosure or distribution is prohibited.
If you are not the intended recipient, please contact the sender
by reply email and destroy all copies of the original message.


---

**From:** David Kiernan [mailto: dkiernan@JonesDay.com]
**Sent:** Wednesday, August 12, 2009 7:19 AM
**To:** Tom Merrick; Paula Roach
**Subject:** 30(b)(6) and various items


1.      I'll send proposed custodians and search terms this morning for the 30(b)(6).  Your letter suggested negotiating these with the other RFPs.  But I think we should keep the ball rolling on the 30(b)(6).

2.      I am available next week to meet and confer over the other written discovery responses.  Bob is out of the office and thus has not yet read the meet and confer letter.  So let's pick a time on Thursday or Friday of next week.

3.      What is the status of the subpoena served on Johansen?  Did he produce documents?  If not, when is the date of production?  We'll of course want a copy of what he produces.  On a related note, is there an agreement between the parties on how third-party productions are handled?


David


David C. Kiernan
Jones Day
555 California Street, 26th Floor
San Francisco, California 94104
Phone (415) 875-5745
Fax (415) 875-5700

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by
attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without
copying it and notify sender by reply e-mail, so that our records can be corrected.
==========


11/17/2009

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by
attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without
copying it and notify sender by reply e-mail, so that our records can be corrected.
==========


==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by
attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without
copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

# EXHIBIT 16



COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

SAN DIEGO · SAN FRANCISCO
NEW YORK · BOCA RATON
WASHINGTON, DC · ATLANTA
LOS ANGELES · PHILADELPHIA

Thomas R. Merrick
TMerrick@csgrr.com

September 1, 2009

<u>VIA E-MAIL</u>

David C. Kiernan
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104

Re:  *The Apple iPod iTunes Anti-Trust Litigation*
     No. C-05-00037-JW (N.D. Cal.)

Dear David:

I write to address outstanding issues concerning Plaintiffs' amended first set of discovery requests and propose additional search terms and custodians for the 30(b)(6) document production related to software updates.

### <u>Discovery Cutoff</u>

Apple has proposed a cutoff date of March 31, 2009 for relevant discovery production. Plaintiffs agree that for certain requests an ending date is appropriate. To the extent Plaintiffs seek production beyond the March 31, 2009 date, Plaintiffs will specify this for each request going forward. For the amended requests, Plaintiffs request discovery to the present for each of the following requests: RFPs 12, 19, 23, 28, 29, 30; and Interrogatories 2, 3, 4, 7, 8.

### <u>Discovery Related to iPhones</u>

Plaintiffs have defined "iPod" as "all portable digital media players manufactured by Apple, including but not limited to, all generations of iPod, iPod Touch, iPod Photo, iPod Mini, iPod Nano, iPod Shuffle, and iPhone which were released during the Relevant Time Period." *See, e.g.*, Plaintiffs' Amended First Set of Requests for Production of Documents to Defendant Apple, Inc. at 4. Apple contends that iPhones are not relevant to Plaintiffs' claims. Plaintiffs have included iPhone in their definition of iPod because one of the iPhone's main functions is to store large numbers of digital audio and video files. *See* Consolidated Complaint, ¶8 ("The 'Digital Music Player market' is defined as the market for portable battery-powered devices that can store and play large numbers of digital music computer files.").


COUGHLIN
STOIA
GELLER
RUDMAN
ROBBINS LLP

David C. Kiernan
September 1, 2009
Page 2

Indeed, Apple markets the iPhone as being "three devices in one": (1) phone, (2) *ipod*, and (3) internet device. *See* "Why you'll love iPhone" http://www.apple.com/iphone/why-iphone/. This is similar to the functions of an iPod Touch, which is also included in the definition of iPod and not objected to by Apple, except for that it also has a phone function. *See* http://www.apple.com/ipodtouch/features/. Plaintiffs only seek information related to the iPod function and not the phone function of the iPhone. For example, RFP No. 1 seeks all documents concerning the market for Apple's iPods in the United States. With respect to the iPhone, Plaintiffs seek, *inter alia*, documents that discuss products that Apple considers to be in direct competition with the iPhone's iPod function.

### Licensing Fees (Interrogatory No. 5):

This request seeks the identification of licenses and the fees Apple paid for the licenses related to other consumer electronics. Plaintiffs are still considering a way to possibly limit this request and will get to Apple.

### Customer Complaints (RFP No. 24):

After reviewing the customer complaints previously produced by Apple, Plaintiffs are standing by their request which seeks updated production of similar complaints. While Plaintiffs appreciate the volume of documents already produced for previous years in response to this request, that is not by itself sufficient to justify withholding production. To the extent Apple stands by its objection that this production is unduly burdensome, Apple must provide additional support for this position. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (party resisting relevant discovery has burden of showing why it should not go forward); *Fosselman v. Gibbs*, No. C 06-0375 PJH(PR), 2008 WL 745122, at 1 (N.D. Cal. Mar. 18, 2008) (resisting party must provide specific facts as to why request is unduly burdensome). Both the content and volume of these complaints is relevant to support and substantiate Plaintiffs' claims that purchasers of iTMS files had to purchase an iPod for direct playback and purchasers of iPods could only purchase iTMS files for use on their iPod.

Plaintiffs have received complaints through 2007 and thus, request customer complaints from 2008 and 2009 to date.

### Digital Millennium Copyright Act ("DCMA") (RFP No. 4):

Plaintiffs are willing to not seek discovery on this request at this time. However, because the DCMA has been raised by Apple in the past concerning the legality of burning and ripping, Plaintiffs reserve their right to seek compliance with this request in the future.



David C. Kiernan
September 1, 2009
Page 3

### 30(b)(6) Search Terms and Custodians:

Attached are additional proposed custodians and search terms for the 30(b)(6) document production. We are willing to discuss these terms and custodians further and reserve our right to add additional terms and custodians once document production begins. Additionally, in your August 26, 2009 email, you indicated that you are limiting your originally proposed searches. For example, instead of "imitat* and FairPlay" you will now conduct a search based on "imitat* w/6 of FairPlay." Without looking at the documents it is unclear why limiting these terms to within six words of each other is the most appropriate way to search for relevant documents. The volume of documents of that came back in response to the initial search does not in and of itself indicate that the documents are irrelevant. Accordingly, Plaintiffs propose running these searches with a limiter of 40 words. That way any documents that contain discussion which includes these words within the same paragraph would be hit.

We look forward to your Rule 30(b)(6) document production related to software updates beginning in the next week. Additionally, we anticipate your proposed search terms and custodians for the amended discovery requests by September 3, 2009. We would like to meet and confer on the above issues to the extent necessary as soon as possible. Please let us know if you are available on September 10 or 11, 2009 to discuss.

Very truly yours,

THOMAS R. MERRICK

TRM:hsb

cc:    Bonny E. Sweeney
       Robert A. Mittelstaedt
       Paula Roach

S:\CasesSD\Apple Tying\Corres\TRM_Kiernan 090109.doc

## Custodian List For 30(b)(6) Document Requests

1.    Jeff Robbin, VP, Engineering, Applications Group

2.    Dave Heller, Director, iTunes Client Engineer

3.    Tom Dowdy, iTunes Engineer

4.    Augustin Farrugia, Senior Director, DRM

5.    Eddie Cue, VP iTunes

6.    Kevin Saul, Associate General Counsel

7.    Tony Fadell, Senior VP of iPod Division

8.    Phil Schiller, Senior VP, Worldwide Product Marketing

9.    Greg Jozwiak, VP, iPod Product Marketing

10.   Steve Jobs, CEO

11.   Jon Rubenstein, Senior VP, iPod Division

12.   Guy Barn-Nahum, Director, iPod Software

## Search Terms For 30(b)(6) Document Requests

1.  hack* and (Fairplay or "Fair Play" or DRM or encryption or security or iPod or iTunes or iTS or ITMS or "music store")

2.  strip* and (Fairplay or "Fair Play" or DRM or encryption or security)

3.  break* and (Fairplay or "Fair Play" or DRM or encryption or security or iTunes or iTS or iTMS or "music store")

4.  crack* and (Fairplay or "Fair Play" or DRM or encryption or security or iPod or iTunes or iTMS or iTS or "music store")

5.  remov* and (Fairplay or "Fair Play" or DRM or encryption or security)

6.  breach* and (Fairplay or "Fair Play" or DRM or encryption or security or iPod or iTS or iTunes or iTMS or "music store")

7.  circumvent* and (Fairplay or "Fair Play" or DRM or encryption or security)

8.  mimic* and (Fairplay or "Fair Play" or DRM or encryption or iPod)

9.  imitat* and (Fairplay or "Fair Play" or DRM or encryption or iPod)

10. "reverse engineer" and (Fairplay or "Fair Play" or DRM or encryption or security)

11. RealNetworks or "Real Networks" and (Fairplay or "Fair Play" or DRM or encryption or security or iPod)

12. Harmony (Date restriction: January 1, 2004 – December 31, 2005)

13. RealNetworks or "Real Networks" and (iTS or iTMS or iTunes or "music store" or "software update")

14. Navio and (hack* or breach* or imitat* or mimic* or "reverse engineer" or circumvent* or crack* or FairPlay or "Fair Play" or DRM)

15. "software update" and iTunes or iTS or iTMS or "music store" and (hack* or circumvent* or "reverse engineer" or strip*)

16. "jon johansen" or "john johansen" or "DVD jon" or "DVD john"

17. iPhone and iTunes or iTS or iTMS or "music store" and (hack* or breach* or break* or imitat* or mimic*)

18. "palm pre" and iTunes

- 2 -

# EXHIBIT 17



**COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS** LLP

SAN DIEGO · SAN FRANCISCO
NEW YORK · BOCA RATON
WASHINGTON, DC · ATLANTA
LOS ANGELES · PHILADELPHIA

Thomas R. Merrick
TMerrick@csgrr.com

September 22, 2009

<u>VIA E-MAIL</u>

David C. Kiernan
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104

Re:    *The Apple iPod iTunes Anti-Trust Litigation*,
       No. C-05-00037-JW (N.D. Cal.)

Dear David:

I write to follow up on Plaintiffs' Amended First Set of Requests for Admission ("RFAs"), First Set of Requests for Production of Documents ("RFPs"), and First Set of Interrogatories ("Interrogatories") that were served on May 22, 2009. Apple responded to the RFPs on July 20, 2009, to the Interrogatories on July 21, 2009, and to the RFAs on July 24, 2009.

During the parties August 20, 2009 telephonic meet and confer, Apple stated that it would provide supplemental responses to Interrogatory Nos. 1, 2, 3, 7, and 8, and would respond by letter to RFA Nos. 3 and 4. *See* 8/24/09 Letter to David Kiernan from Tom Merrick at 2. These requests have been outstanding for four months and Plaintiffs have yet to receive complete responses. Please provide your supplemental responses by September 25, 2009.

Additionally, in its responses Apple stated that it would produce documents responsive to RFP Nos. 1-3, 5-10, 12-23, 25, 28, and 29 after "searching custodian files mostly likely to contain a substantial amount of relevant documents." *See, e.g.*, Response to RFP 29 at 22. During the August 20 meet and confer, Apple agreed to produce documents responsive to RFP 11. *See* 8/24/09 Letter to David Kiernan from Tom Merrick at 2. You also agreed that you would provide Plaintiffs with a list of proposed custodians and search terms by August 27, 2009. However, in an email dated August 27, 2009 you stated that these would not be provided until September 2 or 3. Apple has had over four weeks to make such a proposal and continues to drag its feet. It is Plaintiffs' understanding that most of these documents were pulled in 2007 for particular custodians using certain search terms. Thus, the burden and time involved in developing such a list is extremely minimal. Please provide Apple's proposal on search terms and custodians by September 25, 2009.

655 West Broadway, Suite 1900 · San Diego, California 92101-3301 · 619.231.1058 · Fax 619.231.7423 · www.csgrr.com



COUGHLIN
STOIA
GELLER
**&** RUDMAN
ROBBINS LLP

David C. Kiernan
September 22, 2009
Page 2

Moreover, in its responses Apple stated that it would produce unredacted copies of APPLE CHAR 00059 to APPLE CHAR 00066 responsive to RFP No. 10 without delay. Please produce these documents by September 25, 2009.

Based on your call on September 9, 2009, it is our understanding that Apple is experiencing "a snafu with the document review tool," and will not be able to begin its rolling production of documents responsive to Plaintiffs' Rule 30(b)(6) related document requests until the end of September. I asked you to memorialize this in writing and you have yet to do so. Although Plaintiffs have been understanding of issues outside of your control in the discovery process, Apple has successfully stalled for more than five months in producing documents responsive to these requests. Plaintiffs again request that you provide in writing the basis for your most recent delay in production by September 25, 2009 so that we have a complete record of the discovery process.

We look forward to your supplemental Interrogatory and RFA responses, proposal of custodians and search terms, and production of documents responsive to RFP No. 10 on September 25, 2009. Plaintiffs may have to seek court intervention if Apple continues to stall on its duty to produce. Please call me if you should have any questions.

Very truly yours,

THOMAS R. MERRICK

TRM:hsb

cc:    Bonny E. Sweeney
       Robert A. Mittelstaedt
       Paula Roach

S:\CasesSD\Apple Tying\Corres\TRM_Kiernan 092209.doc