1 Robert A. Mittelstaedt (State Bar No. 60359)
ramittelstaedt@jonesday.com
2 Craig E. Stewart (State Bar No. 129530)
cestewart@jonesday.com
3 David C. Kiernan (State Bar No. 215335)
dkiernan@jonesday.com
4 Michael T. Scott (State Bar No. 255282)
michaelscott@jonesday.com
5 JONES DAY
555 California Street, 26th Floor
6 San Francisco, CA 94104
Telephone: (415) 626-3939
7 Facsimile: (415) 875-5700

8 Attorneys for Defendant
APPLE INC.
9

10 UNITED STATES DISTRICT COURT

11 NORTHERN DISTRICT OF CALIFORNIA

12 SAN JOSE DIVISION

13

14 **THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION** | Case No. C-05-00037-JW (HRL)
C-06-04457 JW (HRL)
15 | C-07-06507 JW (HRL)
**This Document Relates To All Matters**
16 | **JOINT CASE MANAGEMENT STATEMENT**

17
Date: February 22, 2010
18 Time: 9:00 a.m.
Courtroom 8, 4th Floor

19

20

21      In accord with the Court's December 21, 2009 Order, the parties jointly submit this Case

22 Management Statement.

23 **I.    PLEADINGS AND DISPOSITIVE MOTIONS**

24 **A.    Direct Purchaser Action**

25      Plaintiffs filed an amended complaint on January 25, 2010 and a corrected amended

26 complaint on January 26, 2010. The parties have stipulated that Apple's responsive pleading is

27 due on February 22, 2010. Apple intends to file a dispositive motion by that date with a hearing

28 date on April 26, 2010. The parties have agreed that plaintiffs' opposition papers will be due

1   March 22, 2010, and that Apple's reply will be due April 12, 2010. Plaintiffs intend to ask the
2   Court if an earlier hearing date is available. If so, the parties will meet and confer to adjust the
3   schedule for the opposition and reply papers.

4   **B.      Indirect Purchaser Action**

5   On December 21, 2009, the Court ordered the Indirect Purchaser Plaintiff to show cause
6   why her complaint should not be dismissed as duplicative of the Direct Purchaser Plaintiffs'
7   consolidated complaint. On February 1, the Indirect Purchaser Plaintiff filed a response to the
8   order to show cause setting forth her view of how the direct and indirect cases are not duplicative
9   and asking for permission to file an amended complaint. On February 11, 2010 the Indirect
10  Purchaser Plaintiff asked Apple if it would stipulate to her filing an amended complaint. Apple is
11  still considering plaintiff's request at this time. As stated in her response to the order to show
12  cause, the Indirect Purchaser Plaintiff filed a Motion for Leave to Amend on February 12, 2010.
13  If permission is granted, Apple intends to file a dispositive motion addressed to the amended
14  complaint, and the parties will meet and confer on a briefing schedule.

15  **II.     DISCOVERY**

16  **A.      Direct Purchaser Action**

17          **Plaintiffs' position:**

18  Plaintiffs have been proceeding with discovery on their monopoly claims as directed by
19  the Court at the November 23, 2009 hearing and do not believe a discovery stay is appropriate
20  given the claims alleged in Plaintiffs' recently filed Amended Consolidated Complaint
21  ("Amended Complaint"), the length of time this litigation has been pending, and the progress
22  made to date with respect to discovery.

23  At the November 23, 2009 hearing on several motions regarding the certified Rule
24  23(b)(3) and (b)(2) classes, the Court considered whether redefining the classes with regard to the
25  monopoly claims would be appropriate and squarely addressed the issue of discovery. The Court
26  stated:
> The reason I'm inviting it as a 12(b)(6) motion is that it would help me . . . to see
27  the case on monopolization and see what is the appropriate class.

28

> But I think you're right, I would uncouple the question of discovery. This is not a Securities litigation reform act case where you can't go ahead with discovery while these things are going on and as far as I'm concerned discovery is open and if you need help from the Court getting the information that you need, resort to that process.

November 23, 2009 Hearing Transcript, at 54. Plaintiffs heeded this direction and proceeded with discovery despite resistance from Apple.

On December 29, 2009, Plaintiffs served their second set of requests for production of documents and interrogatories. These requests were intentionally drafted to address Plaintiffs' monopolies claims as alleged in the Amended Complaint. Specifically, Plaintiffs seek communications concerning FairPlay and interoperability, negotiations and contracts with the record labels, Hewlett Packard and Motorola, and documents related to market definition and damages. Similarly, Plaintiffs' interrogatories seek information related to market definition, market power, and Apple's claimed defenses.

Apple responded to these requests on February 1, 2010 and objected entirely. Apple has even refused to meet and confer with respect to these requests until after this Case Management Conference. Plaintiffs believe Apple's position is untenable in light of the direction of the Court at the November 23, 2009 hearing and the scope of Plaintiffs' claims in the Amended Complaint.

The Amended Complaint does not substantively change the scope of Plaintiffs' monopoly claims. At the Court's request, Plaintiffs re-alleged these claims and eliminated the tying claims that were previously dismissed. Indeed, by vacating its previous certification order, the Court did not dismiss Plaintiffs' claims, as Apple suggests, but rather gave "consideration to class definitions based on clearly stated monopoly claims delineating what anticompetitive conduct Apple is alleged to have engaged in and when it took place." December 21, 2009 Order, at 11. Plaintiffs' Amended Complaint and their discovery requests focus on just that. While Plaintiffs' monopoly claims focus on Apple's anticompetitive use of software updates, Apple's use of FairPlay is not irrelevant. As Plaintiffs allege, Apple used FairPlay to gain monopolies of the relevant markets and then illegally maintained those monopolies in the face of competition by issuing FairPlay-related software updates. The same issues of market definition and market

1 power exist as did with the previous complaint.[1]  Accordingly, Apple should be directed to
2 respond substantively and meet and confer as necessary.

3 Additionally, on January 5, 2010, Plaintiffs moved to compel further responses from
4 Apple to discovery requests previously served in April and May of 2009.  Plaintiffs' motion seeks
5 to compel further responses to: (a) document requests related to Plaintiffs' Rule 30(b)(6)
6 deposition notice concerning Apple's use of software updates; (b) specific interrogatories
7 concerning certain licensing costs to Apple; and (c) Plaintiffs' first set of document requests
8 concerning, *inter alia*, market power, Apple's use of FairPlay and other DRMs, licensing of
9 FairPlay, and competition in the relevant markets.

10 On January 15, 2009, Apple sought a continuance from Magistrate Judge Howard R.
11 Lloyd of Plaintiffs' motion to compel and argued that the motion was premature in light of the
12 Court's December 21 Order and this Case Management Conference.  Apple contended that it was
13 "premature to be determining the scope and timing of further discovery while the threshold
14 sufficiency of plaintiffs' allegations is still at issue." Dkt. No. 310 at 3.  Over Plaintiffs'
15 objections, Judge Lloyd reset the briefing schedule and hearing on the motion until after this
16 conference.

17 No further delay is necessary.  The requests to which Plaintiffs' seek to compel were
18 drafted and served while Apple's motion for judgment on the pleadings as to Plaintiffs' tying
19 claims was pending and thus intentionally excluded discovery related to those claims.  Instead,
20 the requests specifically address Plaintiffs' monopoly claims.  Apple's opposition to Plaintiffs'
21 motion to compel is due on March 2 and thus, Apple will have the opportunity then to argue that
22 the outstanding requests are irrelevant if it wishes to do so.

23 Staying Plaintiffs' pending motion to compel and all other discovery will not serve any
24 purpose other than delay.  This action has been pending for over five years and the outstanding
25 discovery is plainly relevant to the existing monopoly claims.  The parties have spent tireless
26 hours meeting and conferring with respect to the outstanding requests over the last ten months

---

[1] To the extent Plaintiffs have dropped claims related to the video market, they no longer seek discovery related to this issue.

1  and have made only scant progress on production of relevant documents. A discovery stay will
2  only serve to prejudice Plaintiffs by delaying the progress and will possibly create duplicative
3  meet and confer efforts.

4     Moreover, it is premature to determine what discovery Plaintiffs will need to fairly
5  respond to Apple's dispositive motion. Even if Apple cooperates in providing the necessary
6  discovery on the Rule 30(b)(6) topics, Apple has yet to file their motion and thus it is unclear
7  what other discovery Plaintiffs may need. Plaintiffs should not be forced to make this
8  determination prior to receiving Apple's basis for dismissal of their claims. Thus, a limit on
9  discovery prior to the filing of Apple's motion is inappropriate.

10     Accordingly, Plaintiffs request that discovery remain open.

11     **Apple's position:**

12     Plaintiffs' assertion that their amended complaint "does not substantively change the
13 scope" of their monopoly claim, or affect the scope of discovery, is incorrect. In the wake of this
14 Court's December 21st Order, plaintiffs should have narrowed their discovery requests. Instead,
15 on December 29th, they served additional, exceedingly broad requests for production of
16 documents and interrogatories. For reasons briefly stated, Apple's position is that discovery
17 should be limited to the discovery noted below pending resolution of Apple's motion. This will
18 be more than adequate for plaintiffs to respond to the motion.

19     The only conduct challenged in the amended complaint is Apple's updates to its FairPlay
20 DRM technology. Dkt. 322, ¶¶ 91, 97 ("[t]hrough the anticompetitive use of software updates
21 described herein"); *see also id.* at ¶¶ 101, 108 (same conduct is attempt to monopolize). Plaintiffs
22 are referring to updates to FairPlay designed to restore its integrity after it was breached by
23 hackers. Hackers distributed programs on the Internet for stripping content protection from music
24 offered at Apple's Online Store, thus circumventing the record labels' content usage restrictions.
25 Apple's contracts with the record labels required Apple to use DRM technology to prevent
26 unauthorized copying and distribution of the music to others. The contracts also required Apple
27 to restore the integrity of the DRM if hacked. In accord with the contracts, Apple updated
28

FairPlay to stop the hacks and restore the content protection. Apple's dispositive motion will show that the antitrust laws do not prohibit such conduct.

Apple has agreed to produce documents relating to the updates to FairPlay at issue in the amended complaint, and a Rule 30(b)(6) witness on that topic.[2] Any other discovery should be stayed until Apple's dispositive motion is decided. If the motion is granted, no further discovery would be appropriate. In that event, Apple will be spared significant expense of searching for and producing unnecessary documents, and the Court will need not decide the discovery disputes that have already arisen. Plaintiffs' assertion that no purpose would be served by deferring discovery ignores these real benefits of doing so. If, on the other hand, the dispositive motion is denied in whole or in part, discovery can be tailored to whatever issues remain.

Moreover, if plaintiffs believe that further discovery is needed to respond to the motion after they review it, they can proceed under Rule 56(f). Plaintiffs' stated expectation that they will need discovery on the definition of relevant markets, for example, is misplaced. Apple does not intend to rely on plaintiffs' mischaracterization of the relevant markets as a basis for the motion that it is filing on February 22nd.

Deferring other discovery is particularly justified given (1) what has changed in the case since the November 23, 2009 hearing cited by plaintiffs and (2) the breadth of the discovery sought by plaintiffs.

On the first point, after the Court dismissed the tying claims that were the core of the complaint, the Court *sua sponte* raised the question whether plaintiffs have "state[d] a basis for a monopoly claim independent from the tying claims." Dkt. 303 (12/21/09 Order), p. 7. Observing that it had ruled that the initial technological relationships between Apple's products are not anticompetitive, the Court directed plaintiffs to amend their complaint to "clarify what actions they allege Apple took to maintain monopoly power beyond" those relationships. *Id.* at 2. The Court further instructed that the amended complaint must "not depend upon allegations of tying

---

[2] Specifically, Apple has agreed to produce documents that relate to (i) updates to FairPlay that addressed conduct by competitors or hackers, if any, that permitted direct playback of protected iTS files on a non-iPod or permitted direct playback of non-iTS files on an iPod and (ii) Apple's response, if any, to RealNetwork's introduction and release of Harmony in 2004.

as the anticompetitive conduct [supporting the] monopoly claims." *Id.* at 11. In response, plaintiffs filed their amended complaint, focusing on software updates.

On the second point, even though their amended complaint narrows their claim, plaintiffs are seeking extremely broad discovery that goes well beyond the updates at issue. They are insisting on production of all the documents requested before their case was narrowed. And on December 29th, they served thirty additional, exceedingly broad and burdensome document requests. All together, plaintiffs are seeking documents relating to definitions of relevant product and geographic markets for iPods and iTS files; sales, costs, profits and market share of iPods and iTS; royalty and licensing fees in connection with manufacturing and selling iPods and distributing audio files through iTS; communications with competitors; customer complaints; licensing DRM technology; costs to develop and maintain FairPlay; transactional data for iPod sales to wholesalers and resellers, including quantity sold, date of sale, iPod model number, and price from October 2001 to present; features or functionality of an iPod, including comparisons to competing music players; iPod pricing strategy; quarterly costs to develop, maintain and advertise iTS; quarterly revenue, costs, and component costs for each iPod model; quarterly number of songs available on iTS; prices of iPods to direct purchaser end users; negotiations or communications regarding any contracts with Hewlett-Packard for the sale of iPods and the use of iTunes on Hewlett-Packard computers; the transfer of digital audio files directly from iTunes to Motorola phones, including documents reflecting negotiations or communications regarding same; surveys, reports, or other marketing analyses that concern iPods or iTS; surveys, reports or other marketing analyses that concern iPod owners and their use of iTS, other music stores or players other than iPod; marketing studies of iPod or iTS competitors; and testimony by Apple before the Copyright Royalty Board on music royalties.

On December 29th, plaintiffs also served interrogatories that seek, among other things, information relating to the geographic markets for iPods and factors used to define and segregate them; each product considered to compete with iPod or iTS; quarterly market share for iPods and online music; and the identity of all facts, documents and people with knowledge that support

1 Apple's denials of certain allegations in the consolidated complaint and affirmative defenses.
2 None of this discovery is needed to respond to Apple's forthcoming dispositive motion.

3 For these reasons, the discovery sought by plaintiffs' motion to compel and its new
4 discovery requests should be stayed pending decision on Apple's dispositive motion. If the
5 dispositive motion is granted, further discovery will be unnecessary. If denied, plaintiffs can re-
6 serve discovery targeted at the issues remaining in the case.

7 **B.** **Indirect Purchaser Action**

8 **Plaintiff's Position**

9 Plaintiff agrees to a temporary stay of discovery pending the outcome of her motion for
10 leave to amend. Should the court grant plaintiff's motion, plaintiff strongly disagrees that
11 discovery should be stayed pending Apple's dispositive motion. The discovery rules are clear:
12 plaintiff is entitled to engage in the discovery process after the rule 26(f) conference. FRCP
13 26(d)(1). Apple proposes to tie plaintiff's hands while seeking to dismiss plaintiff's case. Such
14 an imbalance would be patently unfair and unnecessary because Apple has not and cannot make
15 the requisite showing of "good cause" to stay discovery. Frcp 26(c)(4); *see Wenger v. Monroe*,
16 282 f.3d 1068, 1077 (9th cir. 2002) (a district court may stay discovery only when "it is
17 convinced that the plaintiff will be unable to state a claim for relief."); *Qwest Commc'n Corp. v.*
18 *Herakles*, LLC, No. 07-cv-00393-MCE-KJM, 2007 WL 2288299, *2 (E.D. Cal. Aug. 8, 2007)
19 (motions to stay discovery "are disfavored because discovery stays may interfere with judicial
20 efficiency and cause unnecessary litigation in the future."). Apple can raise any objections or
21 challenges to plaintiff's future discovery requests propounded in its responses or to the
22 magistrate. A blanket stay through any prospective motion to dismiss would be overbroad and
23 prejudicial.

24 **Apple's Position**

25 Apple submits that all discovery served by plaintiff should be deferred until after the
26 Court determines the sufficiency of her amended complaint if the Court permits plaintiff to file
27 one. Without the amended complaint, it is premature to determine what discovery, if any, is
28 appropriate. Moreover, as shown above, good cause exists to limit discovery pending resolution

of Apple's motion. If plaintiff believes that further discovery is needed to respond to the motion after she reviews it, she can proceed under Rule 56(f).

### III. CLASS CERTIFICATION

#### A. Direct Purchaser Action

On December 21, 2010, the Court decertified the Rule 23(b)(2) and 23(b)(3) classes in the Direct Purchaser Action and denied all other motions as premature, without prejudice to renewal after further proceedings pursuant to the Court's Order.[3] The parties agree that plaintiffs will not file a renewed motion for class certification until after the Court decides Apple's dispositive motion.

#### B. Indirect Purchaser Action

The Indirect Purchaser plaintiff intends to amend her complaint to include a 23(b)(2) and (b)(3) class of (i) of iTunes customers and (ii) indirect purchasers of iPods based on allegations unrelated to her prior tying claims or her "pass through" damages class. Apple will oppose any request to certify a class for the reasons set forth in Apple's previous briefs opposing class certification and the additional reasons flowing from the changed nature of any amended complaint. The parties agree that plaintiff will not file a renewed motion for class certification until after the Court decides plaintiff's Motion for Leave to Amend and Apple's dispositive motion.

---

[3] Before the Court were (1) the Direct Purchaser plaintiffs' motion to add iTS purchasers, (2) the Indirect Purchaser plaintiff's motion for a Rule 23(b)(2) class, (3) defendant's motion to reconsider the Rule 23(b)(2) class in the Direct Purchaser Action, and (4) defendant's motion to decertify the Rule 23(b)(3) class in the Direct Purchaser Action.

Dated: February 12, 2010                Jones Day

                                        By: /s/
                                        ───────────────────────
                                             Robert A. Mittelstaedt

                                        Counsel for Defendant
                                        APPLE INC.

Dated: February 12, 2010                Coughlin Stoia Geller Rudman & Robbins LLP


                                        By: /s/
                                        ───────────────────────
                                             Paula Roach

                                        Counsel for Direct Purchaser Plaintiffs

Dated: February 12, 2010                Zeldes & Haeggquist, LLP


                                        By: /s/
                                        ───────────────────────
                                             Helen I. Zeldes

                                        Counsel for Plaintiff Stacie Somers