Dockets.Justia.com

# EXHIBIT 6

# SENATE BILL

### No. 1814

### Introduced by Senator Dunn

### February 22, 2002

An act to amend Section 16720 of, and to add Section 16729 to, the Business and Professions Code, relating to business regulation.

LEGISLATIVE COUNSEL'S DIGEST

SB 1814, as introduced, Dunn.   Business regulation.

Existing law, the Cartwright Act, makes every trust, subject to specified exemptions, unlawful, against public policy, and void. A trust is defined for purposes of this act as a combination of capital, skill, or acts by 2 or more persons, defined as corporations, firms, partnerships, and associations, for certain designated purposes. Under existing law, these purposes include creating or carrying out restrictions in trade or commerce or preventing competition in manufacturing, marketing, transportation, sale or purchase of merchandise, produce, or any commodity. A violation of the act is punishable as a crime.

This bill would specify that the combination of persons for the purposes of the act's definition of trust includes those who are related to one another by common ownership. The bill would also make it unlawful under the act for any person to monopolize, attempt to monopolize, or to combine or conspire with any person to monopolize, any part of trade or commerce. Because the bill would add to the activities prohibited by the act, the violation of which would be punishable as a crime, it would impose a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

99

**SB 1814**                    — 2 —

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority.  Appropriation: no.  Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

1  SECTION 1.   Section 16720 of the Business and Professions
2  Code is amended to read:
3     16720.   A trust is a combination of capital, skill, or acts by two
4  or more persons, *including those who are related to one another*
5  *by common ownership,* for any of the following purposes:
6     (a) To create or carry out restrictions in trade or commerce.
7     (b) To limit or reduce the production, or increase the price of
8  merchandise or of any commodity.
9     (c) To prevent competition in manufacturing, making,
10 transportation, sale, or purchase of merchandise, produce, or any
11 commodity.
12    (d) To fix at any standard or figure, whereby its price to the
13 public or consumer shall be in any manner controlled or
14 established, any article or commodity of merchandise, produce, or
15 commerce intended for sale, barter, use, or consumption in this
16 State.
17    (e) To make or enter into or execute or carry out any contracts,
18 obligations, or agreements of any kind or description, by which
19 they do all or any or any combination of the following:
20    (1) Bind themselves not to sell, dispose of, or transport any
21 article or any commodity or any article of trade, use, merchandise,
22 commerce, or consumption below a common standard figure, or
23 fixed value.
24    (2) Agree in any manner to keep the price of ~~such~~ *an* article,
25 commodity, or transportation at a fixed or graduated figure.
26    (3) Establish or settle the price of any article, commodity, or
27 transportation between them or themselves and others, so as
28 directly or indirectly to preclude a free and unrestricted
29 competition among themselves, or any purchasers or consumers in
30 the sale or transportation of ~~any such~~ *an* article or commodity.
31    (4) Agree to pool, combine, or directly or indirectly unite any
32 interests that they may have connected with the sale or

99

**119**

— 3 —                     SB 1814

1  transportation of ~~any such~~ *an* article or commodity, that its price
2  might in any manner be affected.
3      SEC. 2.   Section 16729 is added to the Business and
4  Professions Code, to read:
5      16729.   It shall be unlawful for any person to monopolize, or
6  attempt to monopolize, or to combine or conspire with any person
7  or persons to monopolize, any part of trade or commerce.
8      SEC. 3.   Section 1 of this act is a clarification of existing law.
9      SEC. 4.   No reimbursement is required by this act pursuant to
10 Section 6 of Article XIII B of the California Constitution because
11 the only costs that may be incurred by a local agency or school
12 district will be incurred because this act creates a new crime or
13 infraction, eliminates a crime or infraction, or changes the penalty
14 for a crime or infraction, within the meaning of Section 17556 of
15 the Government Code, or changes the definition of a crime within
16 the meaning of Section 6 of Article XIII B of the California
17 Constitution.

O

99

AMENDED IN SENATE MAY 8, 2002

## SENATE BILL                    No. 1814

**Introduced by Senator Dunn**

February 22, 2002

An act to amend Section 16720 of, and to add Section 16729 to, the Business and Professions Code, relating to business regulation.

LEGISLATIVE COUNSEL'S DIGEST

SB 1814, as amended, Dunn.    Business regulation.

Existing law, the Cartwright Act, makes every trust, subject to specified exemptions, unlawful, against public policy, and void. A trust is defined for purposes of this act as a combination of capital, skill, or acts by 2 or more persons, defined as corporations, firms, partnerships, and associations, for certain designated purposes. Under existing law, these purposes include creating or carrying out restrictions in trade or commerce or preventing competition in manufacturing, marketing, transportation, sale or purchase of merchandise, produce, or any commodity. A violation of the act is punishable as a crime.

This bill would specify that ~~the combination of persons for the purposes of the act's definition of trust includes those~~ *liability under the Cartwright Act is not precluded because the trust combination is between 2 or more persons* who are related to one another by common ownership. The bill would also make it unlawful under the act for any person to monopolize, attempt to monopolize, or to combine or conspire with any person to monopolize, any part of trade or commerce. Because the bill would add to the activities prohibited by the act, the violation of which would be punishable as a crime, it would impose a state-mandated local program.

98

121

**SB 1814** — 2 —

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

1  SECTION 1.  Section 16720 of the Business and Professions
2  Code is amended to read:
3  16720.  *(a)* A trust is a combination of capital, skill, or acts by
4  two or more persons, ~~including those who are related to one~~
5  ~~another by common ownership,~~ for any of the following purposes:
6  ~~(a)~~
7  *(1)* To create or carry out restrictions in trade or commerce.
8  ~~(b)~~
9  *(2)* To limit or reduce the production, or increase the price of
10 merchandise or of any commodity.
11 ~~(c)~~
12 *(3)* To prevent competition in manufacturing, making,
13 transportation, sale, or purchase of merchandise, produce, or any
14 commodity.
15 ~~(d)~~
16 *(4)* To fix at any standard or figure, whereby its price to the
17 public or consumer shall be in any manner controlled or
18 established, any article or commodity of merchandise, produce, or
19 commerce intended for sale, barter, use, or consumption in this
20 state.
21 ~~(e)~~
22 *(5)* To make or enter into or execute or carry out any contracts,
23 obligations, or agreements of any kind or description, by which
24 they do all or any or any combination of the following:
25 ~~(1)~~
26 *(A)* Bind themselves not to sell, dispose of, or transport any
27 article or any commodity or any article of trade, use, merchandise,
28 commerce, or consumption below a common standard figure, or
29 fixed value.

98

122

1    (2)
2    *(B) Agree in any manner to keep the price of an article,*
3    *commodity, or transportation at a fixed or graduated figure.*
4    (3)
5    *(C) Establish or settle the price of any article, commodity, or*
6    *transportation between them or themselves and others, so as*
7    *directly or indirectly to preclude a free and unrestricted*
8    *competition among themselves, or any purchasers or consumers in*
9    *the sale or transportation of an article or commodity.*
10   (4)
11   *(D) Agree to pool, combine, or directly or indirectly unite any*
12   *interests that they may have connected with the sale or*
13   *transportation of an article or commodity, that its price might in*
14   *any manner be affected.*
15   *(b) Liability under this chapter is not precluded solely because*
16   *the combination described in subdivision (a) is between two or*
17   *more persons who are related to one another by common*
18   *ownership.*
19   SEC. 2.   Section 16729 is added to the Business and
20   Professions Code, to read:
21   16729.   It shall be unlawful for any person to monopolize, or
22   attempt to monopolize, or to combine or conspire with any person
23   or persons to monopolize, any part of trade or commerce.
24   SEC. 3.   Section 1 of this act is a clarification of existing law.
25   SEC. 4.   No reimbursement is required by this act pursuant to
26   Section 6 of Article XIII B of the California Constitution because
27   the only costs that may be incurred by a local agency or school
28   district will be incurred because this act creates a new crime or
29   infraction, eliminates a crime or infraction, or changes the penalty
30   for a crime or infraction, within the meaning of Section 17556 of
31   the Government Code, or changes the definition of a crime within
32   the meaning of Section 6 of Article XIII B of the California
33   Constitution.

O

98

AMENDED IN ASSEMBLY JUNE 20, 2002

AMENDED IN SENATE MAY 8, 2002

## SENATE BILL                                    No. 1814

### Introduced by Senator Dunn

February 22, 2002

An act to amend Section 16720 of, and to add Section 16729 to, the Business and Professions Code, relating to business regulation.

LEGISLATIVE COUNSEL'S DIGEST

SB 1814, as amended, Dunn.    Business regulation.

Existing law, the Cartwright Act, makes every trust, subject to specified exemptions, unlawful, against public policy, and void. A trust is defined for purposes of this act as a combination of capital, skill, or acts by 2 or more persons, defined as corporations, firms, partnerships, and associations, for certain designated purposes. Under existing law, these purposes include creating or carrying out restrictions in trade or commerce or preventing competition in manufacturing, marketing, transportation, sale or purchase of merchandise, produce, or any commodity. A violation of the act is punishable as a crime.

This bill would specify that liability under the Cartwright Act is not precluded because the trust combination is between 2 or more persons who are related to one another by common ownership. The bill would also make it unlawful under the act for any person to monopolize, attempt to monopolize, or to combine or conspire with any person to monopolize, any part of trade or commerce. Because the bill would add to the activities prohibited by the act, the violation of which would be punishable as a crime, it would impose a state-mandated local program.

97

**124**

**SB 1814** — 2 —

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

1 SECTION 1. Section 16720 of the Business and Professions
2 Code is amended to read:
3 16720. (a) A trust is a combination of capital, skill, or acts by
4 two or more persons for any of the following purposes:
5 (1) To create or carry out restrictions in trade or commerce.
6 (2) To limit or reduce the production, or increase the price of
7 merchandise or of any commodity.
8 (3) To prevent competition in manufacturing, making,
9 transportation, sale, or purchase of merchandise, produce, or any
10 commodity.
11 (4) To fix at any standard or figure, whereby its price to the
12 public or consumer shall be in any manner controlled or
13 established, any article or commodity of merchandise, produce, or
14 commerce intended for sale, barter, use, or consumption in this
15 state.
16 (5) To make or enter into or execute or carry out any contracts,
17 obligations, or agreements of any kind or description, by which
18 they do all or any or any combination of the following:
19 (A) Bind themselves not to sell, dispose of, or transport any
20 article or any commodity or any article of trade, use, merchandise,
21 commerce, or consumption below a common standard figure, or
22 fixed value.
23 (B) Agree in any manner to keep the price of an article,
24 commodity, or transportation at a fixed or graduated figure.
25 (C) Establish or settle the price of any article, commodity, or
26 transportation between them or themselves and others, so as
27 directly or indirectly to preclude a free and unrestricted
28 competition among themselves, or any purchasers or consumers in
29 the sale or transportation of an article or commodity.

97

125

— 3 —                 **SB 1814**

1    (D) Agree to pool, combine, or directly or indirectly unite any
2    interests that they may have connected with the sale or
3    transportation of an article or commodity, that its price might in
4    any manner be affected.
5    (b) Liability under this chapter is not precluded solely because
6    the combination described in subdivision (a) is between two or
7    more persons who are related to one another by common
8    ownership.
9    *(c) Nothing in this section shall be construed to invalidate the*
10   *type of business relationship described in Freeman v. San Diego*
11   *Association of Realtors ((1999) 77 Cal. App. 4th 171).*
12   SEC. 2.   Section 16729 is added to the Business and
13   Professions Code, to read:
14   16729.   It shall be unlawful for any person to monopolize, or
15   attempt to monopolize, or to combine or conspire with any person
16   or persons to monopolize, any part of trade or commerce.
17   SEC. 3.   Section 1 of this act is a clarification of existing law.
18   SEC. 4.   No reimbursement is required by this act pursuant to
19   Section 6 of Article XIII B of the California Constitution because
20   the only costs that may be incurred by a local agency or school
21   district will be incurred because this act creates a new crime or
22   infraction, eliminates a crime or infraction, or changes the penalty
23   for a crime or infraction, within the meaning of Section 17556 of
24   the Government Code, or changes the definition of a crime within
25   the meaning of Section 6 of Article XIII B of the California
26   Constitution.

O

97

# EXHIBIT 7

**SENATE BILL**                          No. 1274

---

### Introduced by Senator Dunn

### February 9, 2006

---

An act to amend Section 437c of the Code of Civil Procedure, relating to civil actions.

LEGISLATIVE COUNSEL'S DIGEST

SB 1274, as introduced, Dunn. Civil actions: summary judgment
Existing law sets forth the conditions and requirements for filing a motion for summary judgment, as specified. Existing law requires that notice of a motion for summary judgment and supporting papers shall be served on all other parties to the action at least 75 days before the time appointed for hearing. Existing law permits a party to move for summary adjudication of one or more causes of action, affirmation defenses, claims for damages, or issues of duty.

This bill would make technical, nonsubstantive changes in these provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1  SECTION 1.  Section 437c of the Code of Civil Procedure is
2  amended to read:
3  437c.  (a) ~~Any~~ *A* party may move for summary judgment in
4  ~~any~~ *an* action or proceeding if it is contended that the action has
5  no merit or that there is no defense to the action or proceeding.
6  The motion may be made at any time after 60 days have elapsed
7  since the general appearance in the action or proceeding of each
8  party against whom the motion is directed or at any earlier time
9  after the general appearance that the court, with or without notice

99

**127**

SB 1274                    — 2 —

1    and upon good cause shown, may direct. Notice of the motion
2    and supporting papers shall be served on all other parties to the
3    action at least 75 days before the time appointed for hearing.
4    However, if the notice is served by mail, the required 75-day
5    period of notice shall be increased by five days if the place of
6    address is within the State of California, 10 days if the place of
7    address is outside the State of California but within the United
8    States, and 20 days if the place of address is outside the United
9    States, and if the notice is served by facsimile transmission,
10   Express Mail, or another method of delivery providing for
11   overnight delivery, the required 75-day period of notice shall be
12   increased by two court days. The motion shall be heard no later
13   than 30 days before the date of trial, unless the court for good
14   cause orders otherwise. The filing of the motion shall not extend
15   the time within which a party must otherwise file a responsive
16   pleading.
17       (b) (1) The motion shall be supported by affidavits,
18   declarations, admissions, answers to interrogatories, depositions,
19   and matters of which judicial notice shall or may be taken. The
20   supporting papers shall include a separate statement setting forth
21   plainly and concisely all material facts which *that* the moving
22   party contends are undisputed. Each of the material facts stated
23   shall be followed by a reference to the supporting evidence. The
24   failure to comply with this requirement of a separate statement
25   may in the court's discretion constitute a sufficient ground for
26   denial of the motion.
27       (2) Any *An* opposition to the motion shall be served and filed
28   not less than 14 days preceding the noticed or continued date of
29   hearing, unless the court for good cause orders otherwise. The
30   opposition, where appropriate, shall consist of affidavits,
31   declarations, admissions, answers to interrogatories, depositions,
32   and matters of which judicial notice shall or may be taken.
33       (3) The opposition papers shall include a separate statement
34   that responds to each of the material facts contended by the
35   moving party to be undisputed, indicating whether the opposing
36   party agrees or disagrees that those facts are undisputed. The
37   statement also shall set forth plainly and concisely any other
38   material facts that the opposing party contends are disputed. Each
39   material fact contended by the opposing party to be disputed
40   shall be followed by a reference to the supporting evidence.

99

128

1  Failure to comply with this requirement of a separate statement
2  may constitute a sufficient ground, in the court's discretion, for
3  granting the motion.
4  (4) ~~Any~~ A reply to the opposition shall be served and filed by
5  the moving party not less than five days preceding the noticed or
6  continued date of hearing, unless the court for good cause orders
7  otherwise.
8  (5) Evidentiary objections not made at the hearing shall be
9  deemed waived.
10  (6) Except for subdivision (c) of Section 1005 relating to the
11  method of service of opposition and reply papers, Sections 1005
12  and 1013, extending the time within which a right may be
13  exercised or an act may be done, do not apply to this section.
14  (7) ~~Any~~ An incorporation by reference of matter in the court's
15  file shall set forth with specificity the exact matter to which
16  reference is being made and shall not incorporate the entire file.
17  (c) The motion for summary judgment shall be granted if all
18  the papers submitted show that there is no triable issue as to ~~any~~
19  a material fact and that the moving party is entitled to a judgment
20  as a matter of law. In determining whether the papers show that
21  there is no triable issue as to ~~any~~ a material fact the court shall
22  consider all of the evidence set forth in the papers, except that to
23  which objections have been made and sustained by the court, and
24  all inferences reasonably deducible from the evidence, except
25  summary judgment may not be granted by the court based on
26  inferences reasonably deducible from the evidence, if
27  contradicted by other inferences or evidence, ~~which~~ *that* raise a
28  triable issue as to ~~any~~ a material fact.
29  (d) Supporting and opposing affidavits or declarations shall be
30  made by ~~any~~ a person on personal knowledge, shall set forth
31  admissible evidence, and shall show affirmatively that the affiant
32  is competent to testify to the matters stated in the affidavits or
33  declarations. ~~Any objections~~ *An objection* based on the failure to
34  comply with the requirements of this subdivision shall be made
35  at the hearing or shall be deemed waived.
36  (e) If a party is otherwise entitled to a summary judgment
37  pursuant to this section, summary judgment may not be denied
38  on grounds of credibility or for want of cross-examination of
39  witnesses furnishing affidavits or declarations in support of the
40  summary judgment, except that summary judgment may be

99

**129**

SB 1274                    — 4 —

1   denied in the discretion of the court, ~~where~~ *if* the only proof of a
2   material fact offered in support of the summary judgment is an
3   affidavit or declaration made by an individual who was the sole
4   witness to that fact; or ~~where~~ *if* a material fact is an individual's
5   state of mind, or lack thereof, and that fact is sought to be
6   established solely by the individual's affirmation thereof.
7     (f) (1) A party may move for summary adjudication as to one
8   or more causes of action within an action, one or more
9   affirmative defenses, one or more claims for damages, or one or
10  more issues of duty, if that party contends that the cause of action
11  has no merit or that there is no affirmative defense thereto, or that
12  there is no merit to an affirmative defense as to any cause of
13  action, or both, or that there is no merit to a claim for damages,
14  as specified in Section 3294 of the Civil Code, or that one or
15  more defendants either owed or did not owe a duty to the
16  plaintiff or plaintiffs. A motion for summary adjudication shall
17  be granted only if it completely disposes of a cause of action, an
18  affirmative defense, a claim for damages, or an issue of duty.
19     (2) A motion for summary adjudication may be made by itself
20  or as an alternative to a motion for summary judgment and shall
21  proceed in all procedural respects as a motion for summary
22  judgment. However, a party may not move for summary
23  judgment based on issues asserted in a prior motion for summary
24  adjudication and denied by the court, unless that party establishes
25  to the satisfaction of the court, newly discovered facts or
26  circumstances or a change of law supporting the issues reasserted
27  in the summary judgment motion.
28     (g) Upon the denial of a motion for summary judgment, on the
29  ground that there is a triable issue as to one or more material
30  facts, the court shall, by written or oral order, specify one or
31  more material facts raised by the motion ~~as to which~~ *that* the
32  court has determined there exists a triable controversy. This
33  determination shall specifically refer to the evidence proffered in
34  support of and in opposition to the motion ~~which~~ *that* indicates
35  ~~that~~ a triable controversy exists. Upon the grant of a motion for
36  summary judgment, on the ground that there is no triable issue of
37  material fact, the court shall, by written or oral order, specify the
38  reasons for its determination. The order shall specifically refer to
39  the evidence proffered in support of, and if applicable in
40  opposition to, the motion ~~which~~ *that* indicates that no triable

99

**130**

1  issue exists. The court shall also state its reasons for any other
2  determination. The court shall record its determination by court
3  reporter or written order.
4      (h) If it appears from the affidavits submitted in opposition to
5  a motion for summary judgment or summary adjudication or both
6  that facts essential to justify opposition may exist but cannot, for
7  reasons stated, then be presented, the court shall deny the motion,
8  or order a continuance to permit affidavits to be obtained or
9  discovery to be had or may make any other order as may be just.
10  The application to continue the motion to obtain necessary
11  discovery may also be made by ex parte motion at any time on or
12  before the date the opposition response to the motion is due.
13      (i) If, after granting a continuance to allow specified additional
14  discovery, the court determines that the party seeking summary
15  judgment has unreasonably failed to allow the discovery to be
16  conducted, the court shall grant a continuance to permit the
17  discovery to go forward or deny the motion for summary
18  judgment or summary adjudication. This section does not affect
19  or limit the ability of ~~any~~ *a* party to compel discovery under the
20  Civil Discovery Act (Title 4 (commencing with Section
21  2016.010) of Part 4).
22      (j) If the court determines at any time that ~~any of the affidavits~~
23  ~~are~~ *an affidavit is* presented in bad faith or solely for purposes of
24  delay, the court shall order the party presenting the ~~affidavits~~
25  *affidavit* to pay the other party the amount of the reasonable
26  expenses ~~which~~ *that* the filing of the ~~affidavits~~ *affidavit* caused
27  the other party to incur. Sanctions may not be imposed pursuant
28  to this subdivision, except on notice contained in a party's
29  papers, or on the court's own noticed motion, and after an
30  opportunity to be heard.
31      (k) ~~Except when~~ *Unless* a separate judgment may properly be
32  awarded in the action, no final judgment may be entered on a
33  motion for summary judgment prior to the termination of the
34  action, but the final judgment shall, in addition to any matters
35  determined in the action, award judgment as established by the
36  summary proceeding herein provided for.
37      (*l*) In actions ~~which~~ *that* arise out of an injury to the person or
38  to property, if a motion for summary judgment was granted on
39  the basis that the defendant was without fault, no other defendant
40  during trial, over plaintiff's objection, may attempt to attribute

99

SB 1274                    — 6 —

1   fault to or comment on the absence or involvement of the
2   defendant who was granted the motion.
3       (m) (1) A summary judgment entered under this section is an
4   appealable judgment as in other cases. Upon entry of ~~any~~ *an*
5   order pursuant to this section, except the entry of summary
6   judgment, a party may, within 20 days after service upon him or
7   her of a written notice of entry of the order, petition an
8   appropriate reviewing court for a peremptory writ. If the notice is
9   served by mail, the initial period within which to file the petition
10  shall be increased by five days if the place of address is within
11  the State of California, 10 days if the place of address is outside
12  the State of California but within the United States, and 20 days
13  if the place of address is outside the United States. If the notice is
14  served by facsimile transmission, Express Mail, or another
15  method of delivery providing for overnight delivery, the initial
16  period within which to file the petition shall be increased by two
17  court days. The superior court may, for good cause, and prior to
18  the expiration of the initial period, extend the time for one
19  additional period not to exceed 10 days.
20      (2) Before a reviewing court affirms an order granting
21  summary judgment or summary adjudication on a ground not
22  relied upon by the trial court, the reviewing court shall afford the
23  parties an opportunity to present their views on the issue by
24  submitting supplemental briefs. The supplemental briefing may
25  include an argument that additional evidence relating to that
26  ground exists, but that the party has not had an adequate
27  opportunity to present the evidence or to conduct discovery on
28  the issue. The court may reverse or remand based upon the
29  supplemental briefing to allow the parties to present additional
30  evidence or to conduct discovery on the issue. If the court fails to
31  allow supplemental briefing, a rehearing shall be ordered upon
32  timely petition of ~~any~~ *a* party.
33      (n) (1) If a motion for summary adjudication is granted, at the
34  trial of the action, the cause or causes of action within the action,
35  affirmative defense or defenses, claim for damages, or issue or
36  issues of duty as to the motion ~~which~~ *that* has been granted shall
37  be deemed to be established and the action shall proceed as to the
38  cause or causes of action, affirmative defense or defenses, claim
39  for damages, or issue or issues of duty remaining.

99

**132**

1   (2) In the trial of the action, the fact that a motion for summary
2   adjudication is granted as to one or more causes of action,
3   affirmative defenses, claims for damages, or issues of duty within
4   the action shall not operate to bar ~~any~~ a cause of action,
5   affirmative defense, claim for damages, or issue of duty as to
6   which summary adjudication was either not sought or denied.
7   (3) In the trial of an action, neither a party, nor a witness, nor
8   the court shall comment upon the grant or denial of a motion for
9   summary adjudication to a jury.
10  (o) A cause of action has no merit if either of the following
11  exists:
12  (1) One or more of the elements of the cause of action cannot
13  be separately established, even if that element is separately
14  pleaded.
15  (2) A defendant establishes an affirmative defense to that
16  cause of action.
17  (p) For purposes of motions for summary judgment and
18  summary adjudication:
19  (1) A plaintiff or cross-complainant has met his or her burden
20  of showing that there is no defense to a cause of action if that
21  party has proved each element of the cause of action entitling the
22  party to judgment on that cause of action. Once the plaintiff or
23  cross-complainant has met that burden, the burden shifts to the
24  defendant or cross-defendant to show that a triable issue of one
25  or more material facts exists as to that cause of action or a
26  defense thereto. The defendant or cross-defendant may not rely
27  upon the mere allegations or denials of its pleadings to show that
28  a triable issue of material fact exists but, instead, shall set forth
29  the specific facts showing that a triable issue of material fact
30  exists as to that cause of action or a defense thereto.
31  (2) A defendant or cross-defendant has met his or her burden
32  of showing that a cause of action has no merit if that party has
33  shown that one or more elements of the cause of action, even if
34  not separately pleaded, cannot be established, or that there is a
35  complete defense to that cause of action. Once the defendant or
36  cross-defendant has met that burden, the burden shifts to the
37  plaintiff or cross-complainant to show that a triable issue of one
38  or more material facts exists as to that cause of action or a
39  defense thereto. The plaintiff or cross-complainant may not rely
40  upon the mere allegations or denials of its pleadings to show that

99

133

**SB 1274** — 8 —

1  a triable issue of material fact exists but, instead, shall set forth
2  the specific facts showing that a triable issue of material fact
3  exists as to that cause of action or a defense thereto.
4     (q) This section does not extend the period for trial provided
5  by Section 1170.5.
6     (r) Subdivisions (a) and (b) do not apply to actions brought
7  pursuant to Chapter 4 (commencing with Section 1159) of Title 3
8  of Part 3.
9     (s) For the purposes of this section, a change in law does not
10 include a later enacted statute without retroactive application.

O

99

AMENDED IN SENATE APRIL 4, 2006

**SENATE BILL**                              **No. 1274**

---

### Introduced by Senator Dunn

February 9, 2006

---

~~An act to amend Section 437c of the Code of Civil Procedure, relating to civil actions.~~ *An act to amend Section 16757 of, and to add Section 16720.1 to, the Business and Professions Code, relating to business practices.*

LEGISLATIVE COUNSEL'S DIGEST

SB 1274, as amended, Dunn. ~~Civil actions: Cartwright Act: monopolies~~ *monopolies* summary judgment.

Existing law ~~sets forth the conditions and requirements for filing a motion for summary judgment, as specified. Existing law requires that notice of a motion for summary judgment and supporting papers shall be served on all other parties to the action at least 75 days before the time appointed for hearing. Existing law permits a party to move for summary adjudication of one or more causes of action, affirmation defenses, claims for damages, or issues of duty,~~ *the Cartwright Act, prohibits combinations in restraint of trade, with various remedies in that regard.*

This bill would ~~make technical, nonsubstantive changes in these provisions~~ *provide that it is unlawful for any person to monopolize, attempt to monopolize, or to combine or conspire with any person to monopolize any part of trade or business, and that this activity is a trust for purposes of the Cartwright Act. The bill would provide that "monopolize" includes "monopsonize." The bill would also specify the standards of proof required in a motion for summary judgment or*

98

135

SB 1274                    — 2 —

*summary adjudication filed by a defendant in an action under the
Cartwright Act.*
   Vote:  majority.   Appropriation:  no.  Fiscal committee:  no.
State-mandated local program:  no.

   *The people of the State of California do enact as follows:*

1   SECTION 1.  *Section 16720.1 is added to the Business and*
2  *Professions Code, to read:*
3     16720.1.   (a) *It is unlawful for one or more persons to*
4  *monopolize, attempt to monopolize, or to combine or conspire*
5  *with another person or persons to monopolize a part of trade or*
6  *commerce, and this activity is a trust for purposes of this article.*
7     (b) *As used in this section, "monopolize" includes*
8  *"monopsonize."*
9     SEC. 2.  *Section 16757 of the Business and Professions Code*
10 *is amended to read:*
11    16757.  (a) In prosecutions under this chapter, it is sufficient
12 to prove that a trust or combination exists, and that the defendant
13 belonged to it, or acted for or in connection with it, without
14 proving all the members belonging to it, or proving or producing
15 any article of agreement, or any written instrument on which it
16 may have been based, or that it was evidenced by any written
17 instrument at all.
18    (b) *In a motion for summary judgment or summary*
19 *adjudication filed by a defendant in an action under this chapter,*
20 *the following shall apply:*
21    (1) *A plaintiff, in opposing the motion, may do either or both*
22 *of the following:*
23    (A) *Reasonably rely on circumstantial evidence and inferences*
24 *drawn from circumstantial evidence.*
25    (B) *Reasonably rely on inferences from conduct that is as*
26 *consistent with permissible competition as with restraint of trade*
27 *or commerce unless a defendant demonstrates by a*
28 *preponderance of evidence that allowing those inferences would*
29 *have a detrimental effect on competition consistent with the goals*
30 *of this chapter and federal antitrust laws.*
31    (2) *A plaintiff shall not be required to submit proof that tends*
32 *to exclude the possibility of procompetitive conduct.*

98

**136**

—3—                    SB 1274

1     (3) The motion for summary judgment or summary
2  adjudication may not be granted solely on the basis of denials by
3  an officer, director, or employee of the defendant.
4     (b)
5     (c) The character of the trust or combination alleged may be
6  established by proof of its general reputation as such.
7
8
9  | All matter omitted in this version of the bill
10 | appears in the bill as introduced in
11 | Senate, February 9, 2006 (JR11)
12

O

98

137

AMENDED IN SENATE MAY 26, 2006

AMENDED IN SENATE APRIL 4, 2006

## SENATE BILL                                No. 1274

---

### Introduced by Senator Dunn

February 9, 2006

---

An act to ~~amend Section 16757 of, and to~~ add Section 16720.1 to, the Business and Professions Code, relating to business practices.

#### LEGISLATIVE COUNSEL'S DIGEST

SB 1274, as amended, Dunn. Cartwright Act: monopolies ~~summary judgment~~.

Existing law, the Cartwright Act, prohibits combinations in restraint of trade, with various remedies in that regard.

This bill would provide that it is unlawful for any person to monopolize, attempt to monopolize, or to combine or conspire with any person to monopolize any part of trade or business, and that this activity is a trust for purposes of the Cartwright Act. The bill would provide that "monopolize" includes ~~"monopsonize." The bill would also specify the standards of proof required in a motion for summary judgment or summary adjudication filed by a defendant in an action under the Cartwright Act~~ *monopsonize*.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

---

*The people of the State of California do enact as follows:*

1   SECTION 1. Section 16720.1 is added to the Business and
2  Professions Code, to read:

97

138

SB 1274                      — 2 —

1    16720.1.  (a) It is unlawful for one or more persons to
2   monopolize, attempt to monopolize, or to combine or conspire
3   with another person or persons to monopolize a part of trade or
4   commerce, and this activity is a trust for purposes of this article.
5    (b) As used in this section, "monopolize" includes
6   ~~"monopsonize."~~ *monopsonize.*
7    ~~SEC. 2.  Section 16757 of the Business and Professions Code~~
8   ~~is amended to read:~~
9    ~~16757.  (a) In prosecutions under this chapter, it is sufficient~~
10  ~~to prove that a trust or combination exists, and that the defendant~~
11  ~~belonged to it, or acted for or in connection with it, without~~
12  ~~proving all the members belonging to it, or proving or producing~~
13  ~~any article of agreement, or any written instrument on which it~~
14  ~~may have been based, or that it was evidenced by any written~~
15  ~~instrument at all.~~
16   ~~(b) In a motion for summary judgment or summary~~
17  ~~adjudication filed by a defendant in an action under this chapter,~~
18  ~~the following shall apply:~~
19   ~~(1) A plaintiff, in opposing the motion, may do either or both~~
20  ~~of the following:~~
21   ~~(A) Reasonably rely on circumstantial evidence and inferences~~
22  ~~drawn from circumstantial evidence.~~
23   ~~(B) Reasonably rely on inferences from conduct that is as~~
24  ~~consistent with permissible competition as with restraint of trade~~
25  ~~or commerce unless a defendant demonstrates by a~~
26  ~~preponderance of evidence that allowing those inferences would~~
27  ~~have a detrimental effect on competition consistent with the goals~~
28  ~~of this chapter and federal antitrust laws.~~
29   ~~(2) A plaintiff shall not be required to submit proof that tends~~
30  ~~to exclude the possibility of procompetitive conduct.~~
31   ~~(3) The motion for summary judgment or summary~~
32  ~~adjudication may not be granted solely on the basis of denials by~~
33  ~~an officer, director, or employee of the defendant.~~
34   ~~(c) The character of the trust or combination alleged may be~~
35  ~~established by proof of its general reputation as such.~~

O

97

139

FOCUS - 4 of 4 DOCUMENTS

CALIFORNIA COMMITTEE ANALYSIS
STATENET

STATE NET

Copyright 2006 by State Net(R), All Rights Reserved

sjud Bill No. SB 1274

**Date of Hearing:** May 09, 2006

**COMMITTEE:** sjud

**BODY:**

BILL ANALYSIS

SENATE JUDICIARY COMMITTEE

Senator Joseph L. Dunn, Chair

2005-2006 Regular Session

SB 1274
Senator Dunn
As Amended April 4, 2006
Hearing Date: May 9, 2006
Business and Professions Code
ADM/GF: cjt

SUBJECT

Cartwright Antitrust Act: Monopolies; Summary Judgment Standards

DESCRIPTION

This bill would make any act of monopolization a violation of the
California antitrust statute. The bill would also provide that monopolization
includes monopsonization for purposes of California antitrust law.

This bill would specify the standards of proof required in a motion for
summary judgment or adjudication filed by a defendant under California
antitrust law, and conform them to California's summary judgment statute.

BACKGROUND

**140**

  

### 1. General antitrust law background

The California Cartwright Act and the federal Sherman Antitrust Act both seek to enhance consumer welfare and economic efficiency, and to protect free markets by creating civil and criminal liability for anticompetitive conduct or conduct that restricts trade or commerce, such as conspiracies to fix prices, divide market share [exclusive dealing arrangements], tie products together [tie-in arrangements], or group boycotts. California courts have uniformly stated that a principal goal of antitrust laws is consumer welfare through the protection and promotion of competition in the marketplace. The statutory language of both acts is intentionally general, and specific implementation of both acts has generally been left to the courts, where a large body of case law interpreting each act has developed. In general, California courts have stated that federal decisions serve as an "aid" to interpreting the Cartwright Act, and are considered "persuasive," but not "controlling."

### 2. Monopolization and the Cartwright Act

Section 2 of the federal Sherman Antitrust Act makes it unlawful to monopolize any part of trade or commerce. California's antitrust statutes lack an analogous provision specifically prohibiting monopolization or attempted monopolization. This bill intends to harmonize California antitrust law with federal antitrust law with respect to the lack of such a specific prohibition on monopolistic conduct.

The bill further intends to include monopsonization within the monopolization prohibition. Monopsonization is essentially the mirror image of and analogous to monopolization. Broadly speaking, a monopolist is a single seller of goods or services who has no competitor; whereas a monopsonist is a single buyer of goods from many sellers, generally suppliers, who dominates the suppliers. Monopsony is sometimes referred to as "buyer's monopoly." [See Comment 2 for further discussion of the monopoly/monopsony issue.]

### 3. Summary judgment and California antitrust law relating to conspiracies

According to a number of legal experts in antitrust law, the California Supreme Court substantially altered the evidentiary rules for summary judgment in Cartwright Act cases in Aguilar v. Atlantic Richfield Co., et al. (2001) 25 Cal.4th 826, which adopted federal summary judgment rules and certain aspects of substantive collusion standards derived from federal antitrust law. Under Aguilar, once a defendant has presented some evidence showing a pro-competitive explanation for challenged conduct, a plaintiff opposing summary judgment "must present evidence that tends to exclude, although it need not actually exclude, the possibility that the alleged conspirators acted independently rather than collusively." A plaintiff cannot defeat summary judgment with ambiguous evidence or "inferences showing or implying conduct that is as consistent with permissible competition by independent actors as with unlawful conspiracy by colluding [actors]." [25 Cal.4th at 852. ] An inference "is reasonable, if and only if, it implies unlawful conspiracy more

 LexisNexis   LexisNexis   LexisNexis

likely than permissible competition." [Id. at 856-57. ]

The experts assert that the problem is compounded because under California law, all circumstantial evidence is "ambiguous" by definition [See, Evidence Code Section 410 ("direct evidence" means evidence that directly proves a fact, without an inference or presumption, and which in itself, if true, conclusively establishes that fact;" therefore all other evidence is circumstantial)] and Code of Civil Procedure Section 437c(c) requires the court to consider "all inferences reasonably deducible from the evidence."

This bill intends to specify the evidentiary rules for Cartwright actions at the summary judgment stage, and to partially overrule and clarify Aguilar. While this bill would modify summary judgment standards as applied to Cartwright Act claims, it would neither alter California's summary judgment statute (Code of Civil Procedure Section 437c) in any way, nor change substantive evidentiary requirements required to prove an antitrust conspiracy at trial. The bill intends to allow the jury, the trier of fact, to weigh competing inferences from ambiguous evidence in antitrust cases, rather than allow a judge to dismiss a case at the summary judgment stage on a bare record of ambiguous evidence presented at the summary judgment stage of an antitrust proceeding.

CHANGES TO EXISTING LAW

1. Existing federal law, the Sherman Act, makes it unlawful for any person to monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of trade or commerce among the states, or with foreign nations, and specifies certain penalties. [15 U.S.C. Section 2. ]

Existing federal law, the Clayton Act, authorizes federal court civil actions for specified damages and relief, including treble damages, for violations of federal antitrust laws. [15 U.S.C. Section 15. ]

Existing federal case law provides that, under the Sherman Act, only direct purchasers may seek damages in federal court. [Illinois Brick Co. v. Illinois (1977) 431 U.S. 720. ]

Existing state law, the Cartwright Act, makes every trust, with limited exceptions, unlawful. A trust is defined as a combination of capital, skill, or acts by two or more individuals or entities that seek to create or carry out restrictions in trade or commerce, or otherwise prevent competition by various means in the marketplace. [Business and Professions Code (B&P Code) Sections 16720, et seq.]

Existing state law authorizes any person injured by reason of the state's antitrust laws to bring a civil action for specified damages and relief, including treble damages, regardless of whether such injured person dealt directly or indirectly with the defendant. [B&P Code Sections 16750-16761. ]

  

Existing case law provides that state antitrust laws, including those allowing indirect purchasers to recover damages and relief, are not preempted by federal law. [California v. ARC America Corp. (1989) 490 U.S. 93; Union Carbide Corp. v. Superior Court (1984) 36 Cal.3d 15. ]

This bill would provide that it is unlawful for one or more persons to monopolize, attempt to monopolize, or to combine or conspire with another person or persons to monopolize a part of trade or commerce. This would harmonize California antitrust law with Section 2 of the federal Sherman Act.

This bill would provide that the above activities would be a trust for purposes of the Cartwright Act, and thus a violation of its provisions would be subject to the same civil action and remedy provisions currently set forth in California law. This bill would provide that, as used in the Cartwright Act, monopolize would include monopsonize. 2. Existing law sets forth the standards and procedures for an action to be resolved through summary judgment or summary adjudication if the action is without merit or if there is no defense to the action. The motion for summary judgment must be supported by affidavits, declarations, admissions, answers to interrogatories, depositions, and judicially noticed matters. [Civil Procedure Code (CCP) Section 437c(a)(b).]

Existing law provides that a motion for summary judgment shall only be granted if all the evidence submitted shows there is no triable issue of any material fact, including circumstantial evidence and all inferences reasonably deducted from circumstantial evidence. [CCP Section 437c(c).]

Existing law provides that a defendant has met his or her burden of showing that a cause of action has no merit if the defendant has shown that one or more elements of a cause of action cannot be established, or there is a complete defense to the cause of action. Once the defendant meets that burden, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto. [CCP Section 437c(p)(2).]

Existing case law, Aguilar v. Atlantic Richfield, supra, held, among other things, the following with respect to summary judgment motions in antitrust actions:

In antitrust conspiracy cases, a plaintiff who opposes summary judgment "must present evidence that tends to exclude, although it need not actually exclude, the possibility that the alleged conspirators acted independently rather than collusively." A plaintiff cannot successfully resist summary judgment with "ambiguous evidence or inferences showing or implying conduct that is as consistent with permissible competition by independent actors as with unlawful conspiracy by colluding ones." An inference "is reasonable if, and only if, it implies unlawful conspiracy more likely than permissible competition." [Aguilar v. Atlantic Richfield (2001) 25 Cal.4th 826. ]

Existing law provides that, in prosecutions under the Cartwright Act, it





is sufficient to prove that a trust or combination exists, and that the
defendant belonged to it, or acted for or in connection with it, without
proving all the members belonging to it, or proving or producing any article
of agreement, or any written instrument on which it may have been based, or
that it was evidenced by any written instrument at all. [B&P Code Section
16757(a).]

This bill would amend Section 16757 to provide that, in a motion for
summary judgment or summary adjudication brought by a defendant in an action
under the Cartwright Act, the following would apply: A plaintiff opposing a
motion for summary judgment or summary adjudication, may do either or both of
the following: (1) reasonably rely on circumstantial evidence and inferences
drawn from circumstantial evidence; and (2) reasonably rely on inferences from
conduct that is as consistent with permissible competition as with restraint
of trade or commerce unless a defendant demonstrates by a preponderance of
evidence that allowing those inferences would have a detrimental effect on
competition consistent with the goals of state and federal antitrust laws. A
plaintiff shall not be required to submit proof that tends to exclude the
possibility of procompetitive conduct. A motion for summary judgment or
summary adjudication under California's antitrust laws may not be granted
solely on the basis of denials by an officer, director, or employee of the
defendant bringing the motion.

COMMENT

1. Need for the bill's two provisions

a. Monopolization provisions

The author and supporters assert that, while the California antitrust
statutes currently outlaw combinations or conspiracies in restraint of trade
or commerce, it does not expressly outlaw monopolization by a single firm. The
author further states that, while federal antitrust law outlaws
monopolization, unlike California antitrust law, federal law provides remedies
and damages only for direct purchaser victims. Thus, under federal law, if the
injury was passed through wholesalers or others, ultimate victims often lack
any remedy and are unable to recover damages for anticompetitive conduct.

Additionally, the Attorney General's Office (AG) has asserted:

Monopolization is a form of anticompetitive conduct that has become
increasingly common in recent times, in markets as diverse as natural gas and
pharmaceuticals. Due to complex distribution systems, victims of price
increases or output restraints often do not make their purchases directly from
the wrongdoers, and are therefore precluded from recovery under federal law.
These victims include the State of California and its agencies, which along
with small businesses and California consumers, are the most affected by
California law's failure to expressly recognize monopolization and its effect
on both direct and indirect purchasers.

  

The author further notes that recent news articles have brought to the
forefront some of the problems with antitrust law related to monopolies and
monopsonies that this bill is intended to address and rectify in California.
In January 2004, the Wall Street Journal published a lengthy article on the
increasing number of lawsuits where companies are accused of "squeezing"
suppliers. The suits discussed in the article range from those brought by
blueberry growers in Maine, and timber owners in South Carolina, to beef and
pork producers across the U.S. "Buyer muscle has become more visible in recent
years as markets become more concentrated through mergers and joint ventures.
In meatpacking, four companies control 80% of the market. In four out of 10
U.S. cities, a single health insurer has at least a 50% market share.
Concentration is also rising in markets from aluminum refining to baby food."
And, the author notes that the news is filled daily with reports of the
current gasoline crisis in which California, and states across the nation,
have seen prices rise exponentially to $ 3 per gallon and beyond, while oil
companies continue to report record profits. The news reports that President
Bush has ordered the Justice Department to work with all the states to
investigate possible gasoline price gouging; Governor Schwarzenegger has
directed the Energy Commission to investigate possible price gouging; and
Attorney General Lockyer has subpoenaed documents from all of the state's oil
refineries and directed his staff to explore "all potential law enforcement
options" in investigating California's oil and gasoline markets and their
behavior. The author asserts that the current gasoline crisis, just like the
earlier energy crisis, is just one manifestation of the problem of market
concentration and monopoly.

The author thus seeks to expressly authorize civil actions for single firm
anticompetitive conduct, including monopolization and monopsonization, which
would provide law enforcement and market participants an important tool to
address the use by a single dominant company of its market power to drive out
competition, to gain leverage in new markets, and to manipulate output by
suppliers in order to increase consumer prices.

b. Summary judgment provisions

The author and supporters assert:

The Aguilar decision provides incorrect and insufficient guidance to
courts for when and how to apply its "inference limiting" rule regarding
ambiguous evidence, particularly in concentrated "oligopoly" markets - markets
controlled by a small number of firms -- in which conduct is interdependent
and there is limited competition. Under Aguilar, at summary judgment,
circumstantial evidence is mischaracterized and thus confused with ambiguous
evidence about conduct that is as consistent with permissible competition by
independent actors as with unlawful conspiracy by colluding actors; the end
result is that the tie goes to the defendant. [See Comment 3. ] The danger of
Aguilar lies in trial judges in California extending Aguilar's "tie goes to
the defendant" rule where this special protection is unwarranted, thereby
protecting conduct that does not advance competition, but is instead collusive
or merely a symptom of the lack of true competition in a concentrated market.

  

As the United States Supreme Court has instructed, where the alleged conduct is "facially anticompetitive and causes exactly the harm the antitrust laws aim to prevent," no special care needs to be taken in assigning inferences to circumstantial evidence. [See Eastman Kodak, supra.] The Aguilar approach has been repudiated by the federal courts in a number of decisions. [See, e.g., Eastman Kodak, supra; In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation (9th Cir. 1990) 906 F.2d 432; In re High Fructose Corn Syrup (7th Cir. 2002); and In re Flat Glass Antitrust Litigation (3rd Cir. 2004) 385 F.3d 350. ]

Further, Cartwright Act defendants using the Aguilar summary judgment tiebreaker rule to defend an oligopoly charge may seek to explain away conduct that traditionally would have prevented summary judgment -- price communications, persistently supracompetitive prices and profits - meaning price or profit increments caused by anticompetitive conditions or behavior--, and agreements that reduce production and even allocate market shares. [See Comment 3. ] This bill seeks to restore traditional evidentiary standards at the summary judgment/summary adjudication stage where there is no compelling public policy reason for granting a preference to a defendant, such as a facially unambiguous pro-competitive justification for the conduct at issue, and to clarify that there is no special rule that "ties go to the defendant" in Cartwright Act cases.

Thus, evidence that is ambiguous, and is as consistent with unlawful conspiracy as with permissible competition, would still be insufficient to permit a trier of fact to find a conspiracy under the Cartwright Act. But, it would be the trier of fact, not a judge weighing competing inferences (which is not permitted under California summary judgment law), making this decision based upon all the evidence presented at trial.

2. Monopoly/monopsony provisions

a. Monopolies and California law

California courts have long recognized that monopolies are against the public interest. [Burdell v. Grandi (1907) 152 Cal. 376. ] However, there is debate in the legal community as to whether the Cartwright Act reaches monopolization by a single entity; that is the unlawful acquisition or maintenance of monopoly power, as opposed to growth or development through superior product, business acumen, or historical accident. [United States v. Grinnell Corp. (1966) 384 U.S. 563. ] At the same time, California law recognizes that concerted activity, such as restrictive contracts, used to acquire or maintain monopoly power is unlawful under the Cartwright Act. [See, e.g., Dimidowich v. Bell &Howell (9th Cir. 1986) 803 F.2d 1474, mod. on other grounds, (9th Cir. 1987) 810 F.2d 1517 ("combinations to monopolize would appear to fall within the general prohibitions of the Cartwright Act.").]

However, one decision specifically exempts corporate mergers from the Cartwright Act, and thus restricts the Attorney General's ability to challenge anticompetitive mergers in California courts. [State of California ex rel. Van

  

de Kamp v. Texaco. Inc. (1988) 46 Cal.3d 1147, but see ftn 17 reserving monopoly issue ("We need not decide the Attorney General's claim that the Cartwright Act reaches monopolistic practices by individual firms, because the Attorney General's complaint does not allege a monopoly.")] Otherwise, there has been relatively little litigation regarding the application of California antitrust law to monopolies. b. Monopolization

This bill would make monopolization a prohibited act under California antitrust statute. Federal law, the Sherman Antitrust Act, prohibits monopolization, as do the statutes of at least 35 other states. In these jurisdictions, the unlawful acquisition, maintenance, or anticompetitive exercise of monopoly power is illegal, but the acquisition of monopoly power through superior product, business acumen, or historical accident is not.

Supporters, including the AG, write that remedies for unlawful monopolization are limited under current law. Victims of unlawful monopolization, including small business owners and consumers, can seek relief only in federal court, which may be some distance from their places of business or residences, and may involve significant cost. Moreover market participants and consumers who are indirectly the victim of an illegal monopoly cannot recover damages under federal law.

The author and supporters contend that, because California antitrust law specifically recognizes that indirect purchasers may be injured by illegal overcharges passed on to them through the chain of distribution, and federal law limits recovery only to direct purchasers, it is critical that California enact this measure outlawing monopolization under state law. Injured California businesses and residents would then be able to bring suit against alleged monopolists regardless of whether they did direct business with the alleged monopolist.

c. Monopolization includes monopsonization

This bill would provide that monopolization includes monopsonization. The rationale for this provision is that a monopsony is analogous to and is the mirror image of a monopoly. As Roger Blair and Jeffrey Harrison state in their book:

Monopsony is the demand side analog of monopoly. Just as a monopolist is a single seller, the monopsonist is a single buyer. In the same sense that a monopolist has market power in selling its output, the monopsonist has buying power in purchasing some of its requirements supplies. The economic objections to monopoly and monopsony are similar: the exercise of market power reduces social welfare. [Blair and Harrison, Monopsony: Antitrust Law and Economics, Princeton University Press (1993).]

Further, Professor Warren Grimes and others provide a detailed analysis of the dangers and issues associated with a large retail buyer's power over its suppliers in a recent Antitrust Law Journal Symposium on Buyer Power, which the author contends supports the inclusion of monopsonization in the bill's

  

monopolization provisions. [Antitrust Law Journal (2005) Symposium: Buyer Power and Antitrust; 72 Antitrust Law Journal, Vol. 2, 327-744. ] Professor Grimes concludes in his submission:

Incorporating the recent economic learning on buyer power, particularly as it relates to the multi-brand retailer (such as Wal-Mart), should make antitrust decisions more relevant, more consistent, and more transparent. Application of this learning should make a difference, for example, in agency investigations of mergers among retail firms and in addressing exclusionary conduct by retailers. The altered outcomes that might occur would not represent a fundamental change in antitrust policy, but instead a wiser and more accurate application of principles that have resonated over a century of Sherman Act jurisprudence. [72 Antitrust L.J. 563, 587. ]

3. Summary judgment provisions of the bill

a. General legal background of summary judgment in state antitrust cases

The general elements of an antitrust conspiracy are: (1) a contract, combination or conspiracy; (2) restraint of trade; and (3) an effect on commerce. [See, e.g., Biljac Associates v. First Interstate Bank (1990) 218 Cal.App.3d 1410; American Ad Management, Inc. v. GTE Corp. (9th Cir. 1996) 92 F.3d 781, 784. ] The first element requires an agreement, which may be either express or tacit. Evidence showing that the parties had a "conscious commitment to a common scheme designed to achieve an unlawful objective" satisfies the element. [Monsanto Co. v. Spray-Rite Serv. Corp. (1984) 465 U.S. 752, 764. ] It may be established by circumstantial evidence. [Id. at 765-66. ]

Courts have traditionally recognized the difficulty in proving the existence of an illegal agreement, because conspirators quite naturally hide this fact, or use legally innocuous transactional forms to disguise what they are doing. "A knowing wink can mean more than words." [Esco Corp. v. United States (9th Cir. 1965) 340 F.2d 1000, 1007. ] Indeed, direct evidence of such a violation is rare. [See, e.g., Alfred M. Lewis, Inc. v. Warehousemen etc. Local No. 542 (1958) 163 Cal.App.2d 771, 778-79; In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litigation (9th Cir. 1990) 906 F.2d 432, 439, cert. denied (1991) U.S. 959 (reasoning that "direct evidence [of an antitrust conspiracy] will rarely be available."). ] For this reason, prior to the Aguilar decision, summary judgment in complex antitrust cases was rarely granted under Code of Civil Procedure Section 437(c). For a purely circumstantial case, the evidence presented by a plaintiff ultimately must "tend to exclude the possibility" of independent conduct. [Monsanto, 465 U.S. at 764. ] Parallel conduct (such as gasoline prices rising or falling in concert) alone is not enough to establish a conspiracy. [See, e.g., Petroleum Prods. Antitrust Litig., 906 F.2d at 445. ] "[P]arallel changes in prices and exchanges of price information by competitors may be motivated by legitimate business concerns." [City of Long Beach v. Standard Oil Company of California (9th cir. 1989) 872 F.2d 1401, 1406, amended, 886 F.2d 246. ] Rather, evidence of other factors besides parallel pricing is necessary to establish an

 LexisNexis     LexisNexis     LexisNexis

antitrust violation by circumstantial evidence. [Id.]

State and federal cases have traditionally recognized a number of what are called "plus factors" such as, but not limited to: (1) shared motive; (2) opportunity; (3) communications with competitors about capacity, output or pricing; and (4) the most persuasive factor, conduct against individual economic self-interest. [See respectively: (1) Dimidowich v. Bell & Howell (9th Cir. 1986), 803 F.2d 1473, 1480, mod. on other grounds, (9th cir. 1987) 810 F.2d 1517; (2) City of Long Beach (9th Cir. 1989) 872 F.2d 1401, 1406-07; (3) Cayman Exploration Corp. v. United Gas Pipe Line Co. (10th Cir. 1989) 873 F.2d 1357, 1361; and (4) City of Tuscaloosa v. Harcros Chemicals, Inc. (11th Cir. 1998) 158 F.3d 548, 572. ]

Evidence of parallel prices and even one genuine inferential plus factor was usually sufficient to defeat summary judgment. [See, e.g., Petroleum Products Antitrust Litigation, supra.] Such "plus factor" conduct also could involve, depending upon the factual backdrop, a refusal to deal, a refusal to price compete, or a failure to develop new products or markets. But there are other potential plus factors that might be probative given the particular circumstances of a given case. These include the private or even public exchange of information, the use of practices tending to "facilitate" concerted action, proof of conspiracy in the same industry elsewhere, much higher profits in the suspect market than in parallel markets elsewhere, and prior inconsistent or false explanations of market behavior or performance. [See generally, 6 Phillip Areeda, Antitrust Law, (1986) Sections 1434, 214. ]

b. The Aguilar case

In 2001, the author and supporters assert that the California Supreme Court dramatically altered both the state's summary judgment standard and the evidentiary burden necessary to survive summary judgment under the Cartwright Act. [Aguilar v. Atlantic Richfield Company et al. (2001) 25 Cal. 4th 826. ] The Aguilar court held that California's summary judgment law (Code of Civil Procedure Section 437c) no longer requires a defendant moving for summary judgment to conclusively negate an element of the plaintiff's cause of action, but only to establish that plaintiff itself does not offer sufficient evidence of that element to create an issue of material fact. [25 Cal.4th at 854. ] In doing so, the court "largely, but not completely" adopted the federal summary judgment standard established by a trilogy of U.S. Supreme Court decisions. [Matsushita Elec. Industrial Co. v. Zenith Radio Corp. (1986) 475 U.S. 574; Anderson v. Liberty Lobby, Inc. (1986) 477 U.S. 242; and Celotex Corp. v. Catrett (1986) 477 U.S. 317. ]

The author and supporters assert that the Aguilar court adopted a conspiracy standard similar to, but much broader than, that established by the U.S. Supreme Court in Matsushita, supra, and did so in a factually dissimilar "plain vanilla" price-fixing case, and in the context of a gasoline oligopoly with interdependent conduct. In Matsushita, the U.S. Supreme Court held, in a 5-4 decision, that summary judgment was appropriate where a plaintiff with an implausible economic theory relies upon "ambiguous" conduct that is as

  
LexisNexis      LexisNexis      LexisNexis

consistent with competition as collusion. The rationale for the Matsushita court's decision was that to allow ambiguous evidence as a basis for a conspiracy finding where plaintiff's economic theory was implausible on its face could "chill the very conduct the antitrust laws are designed to protect." [Matsushita, 475 U.S. at 594. ] This rationale made sense to the majority given the factual context: The Matsushita case involved allegations of predatory pricing by a cabal of Japanese electronics companies allegedly bent on destroying U.S. competition. The Matsushita majority reasoned that it simply did not make economic sense for these firms to have agreed to price below-cost for so many years, each against individual self-interest. Hence, the implausibility of the argument. And, the conduct at issue - vigorous price competition - had a facially pro-competitive effect, i.e., low prices.

Aguilar turned on allegations that the major petroleum companies had conspired to restrict output of CARB gasoline, a unique blend of gasoline formulated to satisfy California's stringent environmental requirements. The plaintiffs alleged that defendants had exchanged confidential refinery capacity and output plans with competitors, employed the same consultants to coordinate these decisions, and used gasoline exchange agreements as a means to limit output and restrict supply. [Aguilar, 25 Cal.4th at 838-39. ] The Aguilar court rejected the plaintiffs' inferences of collusion because each defendant had advanced a plausible "pro-competitive" explanation for the conduct, and the court concluded that plaintiffs' evidence was "ambiguous" and "as consistent with permissible competition...as with unlawful conspiracy." [25 Cal.4th at 862. ] The Aguilar court also rejected inferences that the conduct must have been collusive because it was coordinated and "interdependent." It noted that, in oligopoly industries "interdependence is altogether consistent with independence." [Id.] The fact that the petroleum companies possessed the motive, opportunity, and means to enter an unlawful conspiracy - all traditional "plus factors" -- was held to be insufficient to imply collusion, but only interdependence, and thus summary judgment was warranted.

c. Aguilar is not well founded either in Matsushita or California summary judgment law

A number of legal experts provide that, while Aguilar speaks generally to ambiguous evidence, the federal cases from which it is derived restricted inferences from ambiguous evidence only where the proponent's economic theory was implausible and only to ambiguous circumstantial evidence about conduct having unambiguous and significant pro-competitive effects, although not all pro-competitive effects are considered. [See e.g. Eastman Kodak Co. v. Image Technical Serv., Inc. (1992) 504 U.S. 451. ] The experts provide that. although purportedly grounded in the federal law of Matsushita, in fact the Aguilar formulation of the Matsushita rule was rejected by the U. S. Supreme Court in Kodak: "Matsushita did not introduce a special burden on plaintiffs facing summary judgment in antitrust cases. The court did not hold that, if the moving party enunciates any economic theory supporting its behavior, regardless of its accuracy in reflecting the actual market, it is entitled to summary judgment. Matsushita demands only that the non-moving party's



inferences be reasonable in order to reach the jury, a requirement that was not invented, but merely articulated, in that decision. " [Eastman Kodak, supra, 504 U.S. at 468, emphasis added.] Because cutting prices to increase business is "the very essence of competition," the Matsushita court was concerned that mistaken inferences would be "especially costly" and would "chill the very conduct the antitrust laws are designed to protect." [Id.; see also Monsanto Co. v. Spray-Rite Service Corp. (1984) 465 U.S. 752, 763 (permitting inference of concerted action would "deter or penalize perfectly legitimate conduct"); In re High Fructose Corn Syrup Antitrust Litigation (7th Cir. 2002) 295 F.3d 65 (Posner); In re Flat Glass Antitrust Litigation (3rd Cir. 2004) 385 F.3d 350 (Chertoff).] According to Matsushita itself, inference limitation is permissible only in limited circumstances, i.e., where the plaintiff's theory of the case is facially implausible and where allowing the inference would chill otherwise pro-competitive conduct. "It follows from these settled principles that if the factual context renders respondents' claim implausible -- if the claim is one that simply makes no economic sense -- respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary. [Matsushita, 475 U.S. at 587. ]

    The Ninth Circuit explained that the correct application of Matsushita was not to all circumstantial evidence, but only to ambiguous circumstantial evidence about conduct having unambiguous and significant pro-competitive effects, although not all pro-competitive effects are considered. "[Matsushita did not suggest] that a district court may grant summary judgment to antitrust defendants whenever the court concludes that inferences of conspiracy and inferences of innocent conduct are equally plausible. Allowing the district court to make the decision would lead to dramatic judicial encroachment on the province of the jury. [In re Coordinated Pretrial Proceedings in Petroleum Products (9th Cir. 1990) 906 F.2d 432, 438-39, emphasis added.] Indeed, the latter "must be balanced against the desire that illegal conspiracies be identified and punished." [Id. at 439. ]

    The author and supporters further assert that Aguilar applies the inference limitation rule to all circumstantial evidence, regardless of whether the implausibility element is met and regardless of whether the evidence is ambiguous circumstantial evidence about conduct itself having unambiguous and significant pro-competitive effects. This overly broad application created a special summary judgment standard for antitrust cases that was not indicated by any legislative intent. Indeed, the Aguilar rule may be contrary to the expressed intent of the Legislature that "Long standing California law favors trial on the merits. Summary judgment is a drastic procedure and should only be granted when an action is without merit and both sides have a fair opportunity to address the merits of an action or when an action lacks a triable issue of fact." [SB 688 (Burton, Chapter 448, Statutes of 2002).] Further, to the extent that Aguilar limits the use of circumstantial evidence and its inferences by the non-moving party, it is inconsistent with Code of Civil Procedure Section 437c [California's summary judgment statute] and its jurisprudence.

  

The author and supporters note that the Aguilar decision has cast a deep chill upon Cartwright Act investigations and prosecutions, particularly those directed at the highly concentrated, and highly profitable gasoline refining and marketing industry. After Aguilar, to survive summary judgment in a Cartwright Act case, a plaintiff relying upon circumstantial evidence must demonstrate evidence tending to disprove the possibility of independent action - essentially the same "more likely than not" burden that the plaintiff must bear at trial. The judge, not a jury, weighs inferences from the evidence. Aguilar largely eviscerates the traditional antitrust precedents of circumstantial "plus factors," and turns the burden of production on its head. That is, if a defendant can articulate any pro-competitive explanation for particular conduct, via bare affidavit, the burden shifts to the plaintiff to prove by a preponderance of the evidence that collusion is the more likely explanation.

d. The Cartwright Act should not provide a summary judgment "safe harbor" for anticompetitive conduct in an oligopoly

The author states this bill is intended to limit the Aguilar holding and specifically to address the problem of companies in highly concentrated, mature industries (such as gasoline refining and marketing) hiding behind the "oligopoly defense," i.e., claiming that in an oligopoly, it is in each firm's independent self interest to do things that traditionally have been considered inferential evidence of collusion, such as the exchange of price and output information, and activities that have the effect of fixing supply and prices. The author and supporters assert that the oligopoly defense rests on bad policy, dubious logic and suspect economic theory. And, unfortunately, taken together with Aguilar, it may provide defendants a safe harbor for harmful conduct that otherwise they might avoid or not be able to take advantage of.

Further, the author and supporters state that oligopoly does not merit special legal protection because an oligopoly is not benign, is not a functioning market, and facilitates the same economic harm to consumers as collusion or monopoly - high prices, and the lack of real competition. Even a non-collusive oligopoly raises prices above competitive levels and causes the same economic harm as collusion, cartel or monopoly. [See Blomkest Fertilizer, Inc., v. Potash Corp. of Saskatchewan, Inc. (8th Cir. 2000) 203 F.2d 1028, 1042 (dissent) ("oligopoly pricing harms the consumer in the same way monopoly does").] Interdependent pricing is excused from Sherman Act liability "not because such pricing is desirable (it is not), but because it is close to impossible to devise a judicially enforceable remedy for 'interdependent' pricing." [Clamp-All Corp. v. Cast Iron Soil Pipe Inst. (1st Cir. 1988) 851 F.2d 478, 484; see also Donald F. Turner, The Definition of Agreement under the Sherman Act: Conscious Parallelism and Refusals to Deal (1962) 75 Harv.L.Rev. 655, 665-68.]

Moreover, oligopoly does not explain what it purports to explain. Many economists believe that absent at least tacit collusion, competitors in an oligopoly are not likely to succeed in effectively maintaining supra-competitive prices. In the absence of collusion, oligopolists:

  

must rely on uncertain and ambiguous signals to achieve concerted action. The signals are subject to misinterpretation and are a blunt and imprecise means of ensuring smooth cooperation, especially in the context of changing or unprecedented market circumstances. This anticompetitive minuet is most difficult to compose and to perform, even for a disciplined oligopoly. [Brooke Group Ltd. V. Brown & Williamson Tobacco Corp. (1993) 509 U.S. 209, 227-28. ]

The author thus asserts that the Aguilar standard risks providing cover -- a safe harbor -- to oligopolists seeking to communicate illegal assent, without being caught. This bill seeks to address this problem of the oligopoly defense.

e. Further discussion of oligopolies and the problems they present

According to antitrust legal experts, each firm in an oligopoly has the incentive for his competitors to charge high prices, but to charge somewhat less himself, so he can gain business at their expense. [George J. Stigler, A Theory of Oligopoly, 72 J.Pol.Econ. 44, 46 (1964); Herbert Hovenkamp, Federal Antitrust Policy: The Law of Competition and its Practice, 140-41 (1994).] Thus, for example, while the market demand curve for California gasoline is relatively inelastic [not easily interchangeable], the demand curve facing an individual gasoline company is considerably more elastic, because the company can take business away from competitors. As a result, supracompetitive prices can survive in an oligopoly only if competitors have a means to learn of price-cutting, and to match or punish it. [See JTC Petroleum Co. v. Piasa Motor Fuels, Inc. (7th Cir. 1999) 190 F.2d 775, 777 (oligopoly market where cheating can be detected is "ripe" for collusion); D. Carlton & J. Perloff, Modern Industrial Organization (3rd ed. 2000) at 139. ] In a highly profitable gasoline market like California's, there is a tremendous incentive to lower prices just a shade in order to gain additional sales; this is highly destabilizing to the oligopoly. In trying to "stabilize" this market, firms are strongly tempted to resort to overt communication and illegal agreements in order to confirm pricing moves, or to limit or allocate supply, or to punish competitors who violate the rules.

Finally, antitrust law experts state that, given this inherent uncertainty, oligopoly theory is "indeterminate," predicting prices anywhere from "collusion levels" to "competitive levels," even in industries with inelastic demand. They note it is wrong to conclude that "oligopoly" provides all the answers needed to explain high prices and profits. And, by enshrining the oligopoly defense in summary judgment law, Aguilar risks tying the hands of judges and state regulators whose job it is to protect the market.

4. Opposition arguments

a. Opponents argue that the monopolization part of this bill would put California out of step with federal antitrust law and would provoke meritless suits against firms by persons who were not themselves injured, and who would lack standing to sue under federal law.

  

The author and supporters respond:

This bill will put California in step with federal law. The monopolization provision in the bill would add an element missing from California that has long been part of federal law -- monopoly, monopsony and attempted monopoly or monopsony. The California liability provisions would be interpreted and applied in the same way as existing federal law. This will help the Attorney General crack down on large corporations that hurt competition by so dominating a market that they can keep prices high and stifle competition. This bill will help the vast majority of California businesses who abide by the antitrust laws, and lack sufficient market power to harm competition even if they wanted to do so. This bill will protect those businesses from the predations of a few, very large companies that dominate a particular area of commerce. State law does allow indirect purchasers to maintain Cartwright Act actions, subject to generally applicable federal standing requirements, and federal case law expressly permits states to allow their citizens to pursue these suits.

b. Opponents argue that the summary judgment provisions of the bill would chill legitimate pro-competitive conduct.

The author and supporters respond:

The Aguilar court was properly concerned with allowing plaintiffs to press suits that would "chill" pro-competitive conduct. But the author and supporters disagree that this bill will harm pro-competitive conduct. Defendants would have an opportunity to demonstrate that a plaintiff's collusion theory is facially absurd, or would penalize truly pro-competitive conduct, and obtain summary judgment. The bill would provide that, if a defendant demonstrates by a preponderance of the evidence that allowing a plaintiff opposing summary judgment to rely on the specified inferences would have a detrimental effect on competition, the defendant would prevail.

c. Opponents argue that this bill "would remove the ability to get rid of frivolous anti-trust lawsuits," thus depriving businesses of a "fair chance to get early dismissal of a meritless anti-trust lawsuit" and unfairly benefiting plaintiffs' lawyers at the expense of business. The author and supporters respond:

This bill is based on the premise that our trial courts can weed out truly frivolous conspiracy theories without an Aguilar "tiebreaker" rule. California courts did this for decades without benefit of an Aguilar inference-limiting rule. Moreover, California law already has statutory safeguards in place to address meritless or frivolous lawsuits. This bill will not provoke a rash of weak or meritless lawsuits. Plaintiffs' lawyers generally finance antitrust litigation themselves; who in their right mind would take a truly weak circumstantial case to trial against a major corporate defendant? The answer to so-called meritless suits is a vigorous defense on the merits.

**154**

  

Support: Office of the Attorney General; CA Service Station and Automotive Repair Association; American Antitrust Institute

Opposition: Assoc. of CA Insurance Companies; CA Chamber of Commerce; Civil Justice Assoc. of CA; AeA; CA Assoc. of Realtors; TechNet; Coalition letter (American Electronics Assoc., American International Group, Assoc. of CA Insurance Companies, Baxter Healthcare, Blue Cross of CA, Cal Bankers, CA Chamber of Commerce, CA Financial Services Assoc., CA Hospital Assoc., CA Retailers Assoc., Cisco, Civil Justice Assoc. of CA, eBay, Inc., Farmers Insurance, Intel, Johnson & Johnson, Motion Picture Assoc. of America, Novartis Pharmaceuticals, Oracle, Pfizer, Inc., Pharmaceutical Research & Manufacturers of America, Western States Petroleum Assoc.)

HISTORY

Source: Author

Related Pending Legislation: SB 1794 (Dunn and Kehoe) would make an oil refinery corporation, as defined, a public utility, subject to control by the Legislature, for purposes of the Public Utilities Act, which requires that utility service be provided in an adequate and reasonable manner and that charges for utility service be just and reasonable. (The bill passed out of the Senate Energy, Utilities and Communications Committee (Ayes 6, Noes 2) and is set for hearing in Senate Appropriations.)

Prior Legislation: SB 1814 (Dunn of 2002) would have, among other things, made the act of monopolization a violation of California antitrust law. (The bill passed out of this committee, but failed passage in the Assembly Business and Professions Committee.)

AB 671 (Connerly of 1989) would have, among other things, made monopolization unlawful. (The bill failed passage in the Senate.)

**SUBJECT:** ANTITRUST & TRADE LAW (94%); LITIGATION (92%); SUMMARY JUDGMENT (92%); SETTLEMENTS & DECISIONS (90%); LEGISLATION (90%); RESTRAINT OF TRADE (90%); DECISIONS & RULINGS (90%); LEGISLATIVE BODIES (90%); EVIDENCE (89%); CONSPIRACY (88%); LAW COURTS & TRIBUNALS (78%); MONOPOLIZATION (77%); BOYCOTTS (73%);


LexisNexis   LexisNexis   LexisNexis

FOCUS - 3 of 4 DOCUMENTS

CALIFORNIA COMMITTEE ANALYSIS
STATENET



STATE NET

Copyright 2006 by State Net(R), All Rights Reserved

sf Bill No. SB 1274

**Date of Hearing:** May 16, 2006

**COMMITTEE:** sf

**BODY:**

BILL ANALYSIS

SENATE RULES COMMITTEE                    SB 1274
Office of Senate Floor Analyses
1020 N Street, Suite 524
(916) 651-1520      Fax: (916) 327-4478

THIRD READING

Bill No: SB 1274
Author: Dunn (D)
Amended: 4/4/06
Vote: 21

SENATE JUDICIARY COMMITTEE: 3-2, 5/9/06

AYES: Dunn, Escutia, Kuehl

NOES: Morrow, Ackerman

SUBJECT: Cartwright Antitrust Act: monopolies: summary judgment standards

SOURCE: Author

DIGEST: This bill makes any act of monopolization a violation of the
California antitrust statute. This bill also provides that monopolization
includes monopsonization for purposes of California antitrust law. This bill
specifies the standards of proof required in a motion for summary judgment or
adjudication filed by a defendant under California antitrust law, and conforms
them to California's summary judgment statute.

**156**





ANALYSIS: Existing federal law, the Sherman Act, makes it unlawful for any person to monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of trade or commerce among the states, or with foreign nations, and specifies certain penalties.

Existing federal law, the Clayton Act, authorizes federal court civil actions for specified damages and relief, including treble damages, for violations of federal antitrust laws.

Existing federal case law provides that, under the Sherman Act, only direct purchasers may seek damages in federal court.

Existing state law, the Cartwright Act, makes every trust, with limited exceptions, unlawful. A trust is defined as a combination of capital, skill, or acts by two or more individuals or entities that seek to create or carry out restrictions in trade or commerce, or otherwise prevent competition by various means in the marketplace.

Existing state law authorizes any person injured by reason of the state's antitrust laws to bring a civil action for specified damages and relief, including treble damages, regardless of whether such injured person dealt directly or indirectly with the defendant.

Existing case law provides that state antitrust laws, including those allowing indirect purchasers to recover damages and relief, are not preempted by federal law.

This bill provides that it is unlawful for one or more persons to monopolize, attempt to monopolize, or to combine or conspire with another person or persons to monopolize a part of trade or commerce. This would harmonize California antitrust law with Section 2 of the federal Sherman Act.

This bill provides that the above activities would be a trust for purposes of the Cartwright Act, and thus a violation of its provisions would be subject to the same civil action and remedy provisions currently set forth in California law.

This bill provides that, as used in the Cartwright Act, monopolize includes monopsonize.

Existing law sets forth the standards and procedures for an action to be resolved through summary judgment or summary adjudication if the action is without merit or if there is no defense to the action. The motion for summary judgment must be supported by affidavits, declarations, admissions, answers to interrogatories, depositions, and judicially noticed matters.

Existing law provides that a motion for summary judgment shall only be granted if all the evidence submitted shows there is no triable issue of any material fact, including circumstantial evidence and all inferences reasonably deducted from circumstantial evidence.

**157**

  

Existing law provides that a defendant has met his or her burden of showing that a cause of action has no merit if the defendant has shown that one or more elements of a cause of action cannot be established, or there is a complete defense to the cause of action.  Once the defendant meets that burden, the plaintiff to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto.

Existing case law, Aguilar v. Atlantic Richfield, supra, held, among other things, the following with respect to summary judgment motions in antitrust actions:

In antitrust conspiracy cases, a plaintiff who opposes summary judgment "must present evidence that tends to exclude, although it need not actually exclude, the possibility that the alleged conspirators acted independently rather than collusively."  A plaintiff cannot successfully resist summary judgment with "[a]mbiguous evidence or inferences showing or implying conduct that is as consistent with permissible competition by independent actors as with unlawful conspiracy by colluding ones."  An inference "is reasonable if, and only if, it implies unlawful conspiracy more likely than permissible competition."

Existing law provides that, in prosecutions under the Cartwright Act, it is sufficient to prove that a trust or combination exists, and that the defendant belonged to it, or acted for or in connection with it, without proving all the members belonging to it, or proving or producing any article of agreement, or any written instrument on which it may have been based, or that it was evidenced by any written instrument at all.  [Section 16757(a) of the Business and Professions Code]

This bill amends Section 16757 to provide that, in a motion for summary judgment or summary adjudication brought by a defendant in an action under the Cartwright Act, the following apply:

- A plaintiff opposing a motion for summary judgment or summary adjudication, may do either or both of the following: (1) reasonably rely on circumstantial evidence and inferences drawn from circumstantial evidence, and (2) reasonably rely on inferences from conduct that is as consistent with permissible competition as with restraint of trade or commerce unless a defendant demonstrates by a preponderance of evidence that allowing those inferences would have a detrimental effect on competition consistent with the goals of state and federal antitrust laws.

- A plaintiff shall not be required to submit proof that tends to exclude the possibility of procompetitive conduct.

- A motion for summary judgment or summary adjudication under California's antitrust laws may not be granted solely on the basis of denials by an officer, director, or employee of the defendant bringing the motion.

**158**





Related legislation.  SB 1794 (Dunn and Kehoe) makes an oil refinery corporation, as defined, a public utility, subject to control by the Legislature, for purposes of the Public Utilities Act, which requires that utility service be provided in an adequate and reasonable manner and that charges for utility service be just and reasonable.  (The bill passed out of the Senate Energy, Utilities and Communications Committee, with a 6-2 vote) and is pending in the Senate Appropriations Committee.)

Prior legislation.  SB 1814 (Dunn, 2002), among other things, made the act of monopolization a violation of California antitrust law.  (The bill failed passage in the Assembly Business and Professions Committee.)

FISCAL EFFECT: Appropriation: No Fiscal Com.: No Local: No

SUPPORT: (Verified 5/11/06)

American Antitrust Institute
California Service Station and Automotive Repair Association
Office of the Attorney General

OPPOSITION: (Verified 5/11/06)

American Electronics Association
Association of California Insurance Companies
California Chamber of Commerce
California Association of Realtors
Civil Justice Association of California
Milpitas Chamber of Commerce
Orange Chamber of Commerce and Visitors Bureau
TechNet

Coalition letter: (American Electronics Association, American International Group, Association of California Insurance Companies, Baxter Healthcare, Blue Cross of California, Cal Bankers, California Chamber of Commerce, California Financial Services Association, California Hospital Association, California Retailers Association, Cisco, Civil Justice Association of California, eBay, Inc., Farmers Insurance, Intel, Johnson & Johnson, Motion Picture Association of America, Novartis Pharmaceuticals, Oracle, Pfizer, Inc., Pharmaceutical Research & Manufacturers of America, Western States Petroleum Association)

ARGUMENTS IN SUPPORT: The author's office and supporters assert that, while the California antitrust statutes currently outlaw combinations or conspiracies in restraint of trade or commerce, it does not expressly outlaw monopolization by a single firm. The author's office further states that, while federal antitrust law outlaws monopolization, unlike California antitrust law, federal law provides remedies and damages only for direct purchaser victims. Thus, under federal law, if the injury was passed through

 LexisNexis  LexisNexis  LexisNexis

wholesalers or others, ultimate victims often lack any remedy and are unable
to recover damages for anticompetitive conduct.

Additionally, the Office of the Attorney General has asserted:

"Monopolization is a form of anticompetitive conduct that has become
increasingly common in recent times, in markets as diverse as natural gas and
pharmaceuticals. Due to complex distribution systems, victims of price
increases or output restraints often do not make their purchases directly from
the wrongdoers, and are therefore precluded from recovery under federal law.
These victims include the State of California and its agencies, which along
with small businesses and [California] consumers, are the most affected [by
California law's failure to expressly recognize monopolization and its effect
on both direct and indirect purchasers]."

ARGUMENTS IN OPPOSITION: Opponents argue that the monopolization part of this
bill puts California out of step with federal antitrust law and provokes
meritless suits against firms by persons who were not themselves injured, and
who would lack standing to sue under federal law.

Opponents argue that the summary judgment provisions of the bill would
chill legitimate pro-competitive conduct.

Opponents argue that this bill "[would] remove the ability to get rid of
frivolous anti-trust lawsuits," thus depriving businesses of a "fair chance to
get early dismissal of a meritless anti-trust lawsuit" and unfairly benefiting
plaintiffs' lawyers at the expense of business.

The American Electronic Association (AeA) states:

"AeA opposes [SB 1274] because, in our view, it would harm the anti-trust
public policies the Cartwright Act was enacted to serve.

"SB 1274 would in part overturn a five year old unanimous California
Supreme Court decision written by the late Justice Stanley Mosk;
namely, Aguilar v. Atlantic Richfield Co.(2001) 25 Cal.4th 826) ('Aguilar').

"More specifically, the bill in part seeks to change the way motions for
summary judgment in Cartwright Act claims are considered by California courts.

"Justice Mosk's decision for the unanimous court painstakingly explains
why protecting competition from anti-trust requires a departure in anti-trust
cases from summary judgment business-as-usual."

SUBJECT: ANTITRUST & TRADE LAW (94%); SUMMARY
JUDGMENT (92%); LITIGATION (91%); SETTLEMENTS & DECISIONS (90%); DECISIONS &
RULINGS (90%); LEGISLATIVE BODIES (90%); CLAYTON ANTITRUST ACT (90%); DAMAGES (89%); US
STATE GOVERNMENT (89%); SUITS & CLAIMS (88%); LAW COURTS & TRIBUNALS (75%);





FOCUS - 2 of 4 DOCUMENTS

CALIFORNIA COMMITTEE ANALYSIS
STATENET



STATE NET

Copyright 2006 by State Net(R), All Rights Reserved

sf Bill No. SB 1274

**Date of Hearing:** May 23, 2006

**COMMITTEE:** sf

**BODY:**

BILL ANALYSIS

SENATE RULES COMMITTEE                    SB 1274
Office of Senate Floor Analyses
1020 N Street, Suite 524
(916) 651-1520       Fax: (916) 327-4478

THIRD READING

Bill No: SB 1274
Author: Dunn (D)
Amended: 4/4/06
Vote: 21

SENATE JUDICIARY COMMITTEE: 3-2, 5/9/06

AYES: Dunn, Escutia, Kuehl

NOES: Morrow, Ackerman

SUBJECT: Cartwright Antitrust Act: monopolies: summary judgment standards

SOURCE: Author

DIGEST: This bill makes any act of monopolization a violation of the
California antitrust statute. This bill also provides that monopolization
includes monopsonization for purposes of California antitrust law. This bill
specifies the standards of proof required in a motion for summary judgment or
adjudication filed by a defendant under California antitrust law, and conforms
them to California's summary judgment statute.

**161**





ANALYSIS: Existing federal law, the Sherman Act, makes it unlawful for any person to monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of trade or commerce among the states, or with foreign nations, and specifies certain penalties.

Existing federal law, the Clayton Act, authorizes federal court civil actions for specified damages and relief, including treble damages, for violations of federal antitrust laws.

Existing federal case law provides that, under the Sherman Act, only direct purchasers may seek damages in federal court.

Existing state law, the Cartwright Act, makes every trust, with limited exceptions, unlawful. A trust is defined as a combination of capital, skill, or acts by two or more individuals or entities that seek to create or carry out restrictions in trade or commerce, or otherwise prevent competition by various means in the marketplace.

Existing state law authorizes any person injured by reason of the state's antitrust laws to bring a civil action for specified damages and relief, including treble damages, regardless of whether such injured person dealt directly or indirectly with the defendant.

Existing case law provides that state antitrust laws, including those allowing indirect purchasers to recover damages and relief, are not preempted by federal law.

This bill provides that it is unlawful for one or more persons to monopolize, attempt to monopolize, or to combine or conspire with another person or persons to monopolize a part of trade or commerce. This would harmonize California antitrust law with Section 2 of the federal Sherman Act.

This bill provides that the above activities would be a trust for purposes of the Cartwright Act, and thus a violation of its provisions would be subject to the same civil action and remedy provisions currently set forth in California law.

This bill provides that, as used in the Cartwright Act, monopolize includes monopsonize.

Existing law sets forth the standards and procedures for an action to be resolved through summary judgment or summary adjudication if the action is without merit or if there is no defense to the action. The motion for summary judgment must be supported by affidavits, declarations, admissions, answers to interrogatories, depositions, and judicially noticed matters.

Existing law provides that a motion for summary judgment shall only be granted if all the evidence submitted shows there is no triable issue of any material fact, including circumstantial evidence and all inferences reasonably deducted from circumstantial evidence.

  
LexisNexis     LexisNexis     LexisNexis

Existing law provides that a defendant has met his or her burden of showing that a cause of action has no merit if the defendant has shown that one or more elements of a cause of action cannot be established, or there is a complete defense to the cause of action. Once the defendant meets that burden, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto.

Existing case law, Aguilar v. Atlantic Richfield, supra, held, among other things, the following with respect to summary judgment motions in antitrust actions:

In antitrust conspiracy cases, a plaintiff who opposes summary judgment "must present evidence that tends to exclude, although it need not actually exclude, the possibility that the alleged conspirators acted independently rather than collusively." A plaintiff cannot successfully resist summary judgment with "[a]mbiguous evidence or inferences showing or implying conduct that is as consistent with permissible competition by independent actors as with unlawful conspiracy by colluding ones." An inference "is reasonable if, and only if, it implies unlawful conspiracy more likely than permissible competition."

Existing law provides that, in prosecutions under the Cartwright Act, it is sufficient to prove that a trust or combination exists, and that the defendant belonged to it, or acted for or in connection with it, without proving all the members belonging to it, or proving or producing any article of agreement, or any written instrument on which it may have been based, or that it was evidenced by any written instrument at all. [Section 16757(a) of the Business and Professions Code]

This bill amends Section 16757 to provide that, in a motion for summary judgment or summary adjudication brought by a defendant in an action under the Cartwright Act, the following apply:

- A plaintiff opposing a motion for summary judgment or summary adjudication, may do either or both of the following: (1) reasonably rely on circumstantial evidence and inferences drawn from circumstantial evidence, and (2) reasonably rely on inferences from conduct that is as consistent with permissible competition as with restraint of trade or commerce unless a defendant demonstrates by a preponderance of evidence that allowing those inferences would have a detrimental effect on competition consistent with the goals of state and federal antitrust laws.

- A plaintiff shall not be required to submit proof that tends to exclude the possibility of procompetitive conduct.

- A motion for summary judgment or summary adjudication under California's antitrust laws may not be granted solely on the basis of denials by an officer, director, or employee of the defendant bringing the motion.

**163**





Page 8

Related legislation. SB 1794 (Dunn and Kehoe) makes an oil refinery corporation, as defined, a public utility, subject to control by the Legislature, for purposes of the Public Utilities Act, which requires that utility service be provided in an adequate and reasonable manner and that charges for utility service be just and reasonable. (The bill passed out of the Senate Energy, Utilities and Communications Committee, with a 6-2 vote) and is pending in the Senate Appropriations Committee.)

Prior legislation. SB 1814 (Dunn, 2002), among other things, made the act of monopolization a violation of California antitrust law. (The bill failed passage in the Assembly Business and Professions Committee.)

FISCAL EFFECT: Appropriation: No Fiscal Com.: No Local: No

SUPPORT: (Verified 5/22/06)

American Antitrust Institute
California Service Station and Automotive Repair Association
Office of the Attorney General

OPPOSITION: (Verified 5/22/06)

AeA (formerly the American Electronics Association)
Association of California Insurance Companies
California Chamber of Commerce
California Association of Realtors
Civil Justice Association of California
Milpitas Chamber of Commerce
Orange Chamber of Commerce and Visitors Bureau
QUALCOMM
TechNet

Coalition letter: (AeA, American International Group, Association of California Insurance Companies, Baxter Healthcare, Blue Cross of California, Cal Bankers, California Chamber of Commerce, California Financial Services Association, California Hospital Association, California Retailers Association, Cisco, Civil Justice Association of California, eBay, Inc., Farmers Insurance, Intel, Johnson & Johnson, Motion Picture Association of America, Novartis Pharmaceuticals, Oracle, Pfizer, Inc., Pharmaceutical Research & Manufacturers of America, Western States Petroleum Association)

ARGUMENTS IN SUPPORT: The author's office and supporters assert that, while the California antitrust statutes currently outlaw combinations or conspiracies in restraint of trade or commerce, it does not expressly outlaw monopolization by a single firm. The author's office further states that, while federal antitrust law outlaws monopolization, unlike California antitrust law, federal law provides remedies and damages only for direct purchaser victims. Thus, under federal law, if the injury was passed through wholesalers or others, ultimate victims often lack any remedy and are unable

  

to recover damages for anticompetitive conduct.

Additionally, the Office of the Attorney General has asserted:

"Monopolization is a form of anticompetitive conduct that has become increasingly common in recent times, in markets as diverse as natural gas and pharmaceuticals. Due to complex distribution systems, victims of price increases or output restraints often do not make their purchases directly from the wrongdoers, and are therefore precluded from recovery under federal law. These victims include the State of California and its agencies, which along with small businesses and [California] consumers, are the most affected [by California law's failure to expressly recognize monopolization and its effect on both direct and indirect purchasers]."

ARGUMENTS IN OPPOSITION: Opponents argue that the monopolization part of this bill puts California out of step with federal antitrust law and provokes meritless suits against firms by persons who were not themselves injured, and who would lack standing to sue under federal law.

Opponents argue that the summary judgment provisions of the bill would chill legitimate pro-competitive conduct.

Opponents argue that this bill "[would] remove the ability to get rid of frivolous anti-trust lawsuits," thus depriving businesses of a "fair chance to get early dismissal of a meritless anti-trust lawsuit" and unfairly benefiting plaintiffs' lawyers at the expense of business.

AeA states:

"AeA opposes [SB 1274] because, in our view, it would harm the anti-trust public policies the Cartwright Act was enacted to serve.

"SB 1274 would in part overturn a five year old unanimous California Supreme Court decision written by the late Justice Stanley Mosk; namely, Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826) ('Aguilar').

"More specifically, the bill in part seeks to change the way motions for summary judgment in Cartwright Act claims are considered by California courts.

"Justice Mosk's decision for the unanimous court painstakingly explains why protecting competition from anti-trust requires a departure in anti-trust cases from summary judgment business-as-usual."

SUBJECT: ANTITRUST & TRADE LAW (94%); SUMMARY JUDGMENT (92%); LITIGATION (91%); SETTLEMENTS & DECISIONS (90%); DECISIONS & RULINGS (90%); LEGISLATIVE BODIES (90%); CLAYTON ANTITRUST ACT (90%); DAMAGES (89%); US STATE GOVERNMENT (89%); SUITS & CLAIMS (88%); LAW COURTS & TRIBUNALS (75%);

  

FOCUS - 1 of 4 DOCUMENTS

CALIFORNIA COMMITTEE ANALYSIS
STATENET



STATE NET

Copyright 2006 by State Net(R), All Rights Reserved

sf Bill No. SB 1274

**Date of Hearing:** May 31, 2006

**COMMITTEE:** sf

**BODY:**

BILL ANALYSIS

SENATE RULES COMMITTEE                SB 1274
Office of Senate Floor Analyses
1020 N Street, Suite 524
(916) 651-1520      Fax: (916) 327-4478

THIRD READING

Bill No: SB 1274
Author: Dunn (D)
Amended: 5/26/06
Vote: 21

SENATE JUDICIARY COMMITTEE: 3-2, 5/9/06

AYES: Dunn, Escutia, Kuehl

NOES: Morrow, Ackerman

SUBJECT: Cartwright Antitrust Act: monopolies: summary judgment standards

SOURCE: Author

DIGEST: This bill makes any act of monopolization a violation of the
California antitrust statute. This bill also provides that monopolization
includes monopsonization for purposes of California antitrust law.

Senate Floor Amendments of 5/26/06 delete Section 2 of the bill, which
addressed the standards of proof required in a motion for summary judgment or
summary adjudication filed by a defendant in an antitrust action.

   LexisNexis    LexisNexis    LexisNexis

ANALYSIS: Existing federal law, the Sherman Act, makes it unlawful for any person to monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of trade or commerce among the states, or with foreign nations, and specifies certain penalties.

Existing federal law, the Clayton Act, authorizes federal court civil actions for specified damages and relief, including treble damages, for violations of federal antitrust laws.

Existing federal case law provides that, under the Sherman Act, only direct purchasers may seek damages in federal court.

Existing state law, the Cartwright Act, makes every trust, with limited exceptions, unlawful. A trust is defined as a combination of capital, skill, or acts by two or more individuals or entities that seek to create or carry out restrictions in trade or commerce, or otherwise prevent competition by various means in the marketplace.

Existing state law authorizes any person injured by reason of the state's antitrust laws to bring a civil action for specified damages and relief, including treble damages, regardless of whether such injured person dealt directly or indirectly with the defendant.

Existing case law provides that state antitrust laws, including those allowing indirect purchasers to recover damages and relief, are not preempted by federal law.

This bill provides that it is unlawful for one or more persons to monopolize, attempt to monopolize, or to combine or conspire with another person(s) to monopolize a part of trade or commerce. This would harmonize California antitrust law with Section 2 of the federal Sherman Act.

This bill provides that the above activities would be a trust.

This bill provides that "monopolize" includes "monopsonize."

Related legislation. SB 1794 (Dunn and Kehoe) makes an oil refinery corporation, as defined, a public utility, subject to control by the Legislature, for purposes of the Public Utilities Act, which requires that utility service be provided in an adequate and reasonable manner and that charges for utility service be just and reasonable. (The bill passed out of the Senate Energy, Utilities and Communications Committee, with a 6-2 vote) and is pending in the Senate Appropriations Committee.)

Prior legislation. SB 1814 (Dunn, 2002), among other things, made the act of monopolization a violation of California antitrust law. (The bill failed passage in the Assembly Business and Professions Committee.)

FISCAL EFFECT: Appropriation: No Fiscal Com.: No Local: No

  

SUPPORT: (Verified 5/30/06)

American Antitrust Institute
California Service Station and Automotive Repair
Association
Los Angeles County District Attorney's Office
Office of the Attorney General

OPPOSITION: (Verified 5/22/06) (Unable to reverify, no opposition letters to this version on file)

AeA (formerly the American Electronics Association
Association of California Insurance Companies
California Association of Realtors
California Chamber of Commerce
Civil Justice Association of California
Milpitas Chamber of Commerce
Orange Chamber of Commerce and Visitors Bureau
QUALCOMM
TechNet

ARGUMENTS IN SUPPORT: The author's office and supporters assert that, while the California antitrust statutes currently outlaw combinations or conspiracies in restraint of trade or commerce, it does not expressly outlaw monopolization by a single firm. The author's office further states that, while federal antitrust law outlaws monopolization, unlike California antitrust law, federal law provides remedies and damages only for direct purchaser victims. Thus, under federal law, if the injury was passed through wholesalers or others, ultimate victims often lack any remedy and are unable to recover damages for anticompetitive conduct.

Additionally, the Office of the Attorney General has asserted:

"Monopolization is a form of anticompetitive conduct that has become increasingly common in recent times, in markets as diverse as natural gas and pharmaceuticals. Due to complex distribution systems, victims of price increases or output restraints often do not make their purchases directly from the wrongdoers, and are therefore precluded from recovery under federal law. These victims include the State of California and its agencies, which along with small businesses and [California] consumers, are the most affected [by California law's failure to expressly recognize monopolization and its effect on both direct and indirect purchasers]."

SUBJECT: ANTITRUST & TRADE LAW (94%); SUMMARY JUDGMENT (91%); LITIGATION (90%); LEGISLATIVE BODIES (90%); CLAYTON ANTITRUST ACT (90%); DAMAGES (89%); US STATE GOVERNMENT (89%); LEGISLATION (89%); UTILITIES INDUSTRY (83%); LEGISLATORS (79%); SETTLEMENTS & DECISIONS (76%); DECISIONS &

  

RULINGS (76%); LAW COURTS & TRIBUNALS (75%); SUITS & CLAIMS (74%);

