

1   Robert A. Mittelstaedt (State Bar No. 60359)
    ramittelstaedt@jonesday.com
2   Craig E. Stewart (State Bar No. 129530)
    cestewart@jonesday.com
3   David C. Kiernan (State Bar No. 215335)
    dkiernan@jonesday.com
4   Michael Scott (State Bar No. 255282)
    michaelscott@jonesday.com
5   JONES DAY
    555 California Street, 26th Floor
6   San Francisco, CA  94104
    Telephone:     (415) 626-3939
7   Facsimile:     (415) 875-5700

8   Attorneys for Defendant
    APPLE INC.
9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                   SAN JOSE DIVISION

13

14  THE APPLE iPOD iTUNES ANTI-TRUST          Case No. C-05-00037-JW (HRL)
    LITIGATION                                          C-06-04457 JW (HRL)
15
                                              APPLE'S OPPOSITION TO
16                                            MOTION TO COMPEL

17                                            Magistrate Judge Howard R. Lloyd

18                                            Date:  March 23, 2010
                                              Time: 9:00 a.m.
19                                            Courtroom 2, 5th Floor

20          The parties have resolved the disputes that are the subject of plaintiffs' motion with the

21  exception of one remaining dispute:  plaintiffs' request that Apple search all customer inquiries

22  from June 1, 2007 through March 31, 2009, and produce any inquiries that relate to the alleged

23  lack of interoperability between Apple's digital music offered on the iTunes Music Store (now

24  called the iTunes Store ("iTS")) and devices that play digital music and between the iPod and

25  non-iTS digital music.  Apple has already produced customer inquiries from 2003 to June 2007.

26  Plaintiffs now argue that they need these types of documents for the following two years to

27  establish that Apple's updates to its anti-piracy software to stop illegal hacks had the effect of

28

                                                    Opposition to Motion To Compel
                                                    C-05-0037-JW (HRL); C-06-04457 JW (HRL)

1    preventing complete interoperability between Apple's music and iPods and competitors' music

2    and players.  But the 2003 to 2007 documents already produced cover the entire period when the

3    software updates identified in the amended complaint were issued.  Moreover, the lack of

4    complete interoperability is not in dispute in this case.  As Judge Ware ruled: "[t]he increased

5    convenience of using the two products together due to technological compatibility does not

6    constitute anticompetitive conduct under either *per se* or rule of reason analysis."  Dkt. 274, pp.

7    9-10.  Plaintiffs simply do not need more documents on this issue, and there is no basis for

8    imposing on Apple the additional costs of reviewing each inquiry to determine whether it is

9    responsive to plaintiffs' request and subsequently producing responsive documents to the extent

10   such documents exist.  Accordingly, plaintiffs' motion should be denied.

11                                    **BACKGROUND**

12        **A.    The Limited Scope Of This Case.**

13        For the first four years of this case, plaintiffs' central claim was that it was an antitrust

14   violation for Apple to develop and use its own FairPlay anti-piracy software (digital rights

15   management or DRM) rather than use Microsoft's software and products.  Dkt. 107 ¶¶ 39-50.[1]

16   Plaintiffs' theory was that, to promote complete interoperability among portable music players

17   and online music stores, Apple should have licensed Microsoft's DRM and designed Apple's

18   products around Microsoft's software.  Based on that theory, plaintiffs alleged tying and

19   monopolization under the Sherman Act, and related state law claims.

20        Last year, Judge Ware rejected that argument.  Dkt. 213; Dkt. 274.  In dismissing

21   plaintiffs' tying claims, Judge Ware held that "[t]he increased convenience of using the two

22   products together due to technological compatibility does not constitute anticompetitive conduct

23   under either *per se* or rule of reason analysis."  Dkt. 274, pp. 9-10.  The Court's December 21st

24   Order made plain that this ruling also applies to plaintiffs' monopolization claims, reasoning that

25   the alleged technological tie between Apple products was, "without more, . . . not

26   anticompetitive" and thus does not constitute exclusionary conduct for a monopoly claim.  Dkt.

27   _____

[1] The record labels required Apple and other online stores to use anti-piracy software to
28   enforce certain content usage rules as a condition of making music available to consumers.  Dkt.
     322, ¶ 42; Dkt. 325, p. 3.

303, p. 2.  Accordingly, plaintiffs were directed to file an amended complaint to clarify "what actions they allege Apple took to maintain monopoly power beyond initial technological relationships between its products."  *Id.*

Plaintiffs filed their amended complaint on January 26.  In their amended complaint, plaintiffs no longer claim that Apple's decisions to use FairPlay and not license Microsoft's DRM were unlawful.  They also dropped other claims, including claims that Apple disabled the iPod's processor chips so that it could not play certain digital music file formats.  Plaintiffs' sole remaining claim is that Apple's updates to FairPlay to maintain and improve its security were purportedly anticompetitive.  Dkt. 322, ¶¶ 5 ("Apple's use of software updates . . . constitutes a violation of United States and California antitrust law."); *id.* ¶¶ 52-67 ("Apple's Anticompetitive Use Of Software Updates"); *id.* ¶¶ 91, 97 ("[t]hrough the anticompetitive use of software updates described herein"); *see also id.* ¶¶ 101, 108 (same conduct is basis of their claim of attempted monopolization).

On February 22, 2010, Apple moved to dismiss or for summary judgment.  Dkt. 325, p. 3.  As that motion demonstrates, the amended complaint fails as a matter of law for the same reason the initial complaint failed.  Just as it was lawful for Apple to use its own DRM to comply with the labels' demand for anti-piracy software, it was also lawful for Apple to update and improve that software.  *Id.* at 6-10, 19-23.  Alternatively, under Rule 56, the undisputed facts show that the challenged software updates are lawful, because they were issued to stop illegal hacks that violated the Digital Millennium Copyright Act (DMCA) and because Apple was obligated to stop such hacks and maintain the security of FairPlay pursuant to its contracts with the labels.  *Id.* at 10-23.  The hearing on Apple's motion is set for April 26, 2010.

**B.**     **Apple's Review And Production Of Documents.**

Merits discovery did not open until June 2009.  Dkt. 225.  From the outset, Apple has attempted to engage in a cooperative process with plaintiffs.  It has met and conferred numerous times over the scope of plaintiffs' discovery, Apple's responses, and the status of production, and believed that it had resolved all discovery disputes aside from plaintiffs' request for additional customer inquiries.  Declaration of David C. Kiernan (Kiernan Decl., ¶ 2.).  Plaintiffs' assertion

1    that Apple has deliberately delayed producing documents is untrue.  Kiernan Decl., ¶ 3.  The

2    timing of production has been a result of the broad scope of the requests, which seek highly

3    confidential information; the ongoing meet and confer process to limit that scope; and the

4    necessary time to obtain information and review it for responsiveness, confidentiality, and

5    privilege.  *Id.*

6          Plaintiffs' sweeping discovery requests were not tailored to the claims in the original

7    complaint, much less the significantly narrowed amended complaint.  *Id.* ¶ 4.  For example,

8    plaintiffs served several document requests attached to a 30(b)(6) deposition notice that asked for

9    all documents and communications related to every single software update to iPod or iTunes

10   regardless whether those updates had any bearing on plaintiffs' claims or Apple's defenses.  *Id.* ¶

11   5; Roach Decl., Ex. 7.  The parties met and conferred several times to narrow the scope of

12   plaintiffs' discovery.  Kiernan Decl., ¶¶ 4-6; Roach Decl., Exs. 10-20; 24-31, 35.[2]

13         To minimize the burden of production and to get plaintiffs what they wanted as quickly as

14   possible, Apple proposed running keywords against documents identified by certain agreed-upon

15   custodians to identify potentially relevant material.  Kiernan Decl., ¶ 6.  Any documents that

16   contained a keyword would then be reviewed for responsiveness, confidentiality, and privilege,

17   and nonprivileged, responsive documents would be produced.  *Id.*  Plaintiffs agreed to this

18   proposal.  *Id.*  The negotiation over the custodians and keywords has been an ongoing process.

19   *Id.*; *see, e.g.,* Roach Decl., Exs. 30-31.  Ultimately, the parties agreed that, for the 30(b)(6)

20   document requests, certain keywords ("30(b)(6) keywords") would be run against data collected

21   from 17 custodians.  Kiernan Decl., ¶ 6.  For the Rule 34 document requests, a different set of

22   keywords ("Rule 34 keywords") tailored to those requests would be run against the seventeen

23   30(b)(6) custodians plus ten additional custodians.  *Id.*; *see also* Roach Decl., Ex. 25.

24

25         [2]  For example, Apple agreed to produce (i) documents that relate to updates to FairPlay,
     if any, that addressed conduct by competitors or hackers that permitted direct playback of
26   protected iTS files on a non-iPod or permitted direct playback of non-iTS files on an iPod; (ii)
     documents, to the extent they exist, sufficient to identify such software updates; (iii) documents
27   that relate to Apple's response, if any, to RealNetworks' introduction and release of Harmony in
     2004; and (iv) communications with the record labels regarding the foregoing updates and
28   Apple's response to RealNetworks' Harmony.  Kiernan Decl., ¶ 5; Roach Decl., Ex. 14.

Opposition to Motion To Compel
C-05-0037-JW (HRL); C-06-04457 JW (HRL)

1    Since September 2009, Apple has focused on producing documents requested in

2    connection with the 30(b)(6) deposition notice so that the parties can schedule that deposition.

3    Plaintiffs do not want to schedule the deposition until they receive all documents relating to the

4    30(b)(6) notice.  To date, Apple has reviewed over one million pages of documents that were

5    identified by the 30(b)(6) search terms and produced the majority of the responsive documents.

6    The remaining responsive, non-privileged documents are in the final stages of review before

7    production.  Apple anticipates producing these documents on or before March 15th.  Kiernan

8    Decl., ¶ 7.

9    Plaintiffs try to make much of the fact that Apple collected some documents in 2007,

10   claiming that Apple should have been able to immediately produce those documents.  However,

11   plaintiffs did not serve the 30(b)(6) requests or amended requests for production until April and

12   May 2009, respectively, and merits discovery did not open until June 2009.  The parties did not

13   reach agreement on search terms and custodians until the fall of 2009.  Although Apple collected

14   potentially relevant documents in 2007, it still had to run the 30(b)(6) and Rule 34 keywords

15   against those documents and review them for responsiveness, confidentiality, and privilege.

16   Moreover, at the insistence of plaintiffs, Apple also had to collect documents that were generated

17   after the 2007 initial collection, which added significant time to the process.  *Id.* ¶ 8.

18   **C.      Plaintiffs' Motion To Compel.**

19   In light of the December 21st Order, which directed plaintiffs to file a narrowed amended

20   complaint and anticipated a dispositive motion addressed to any remaining claims (Dkt. 303),

21   plaintiffs should have refined their discovery requests and begun a dialogue with Apple over the

22   scope of discovery.  Instead, on December 29th, plaintiffs served additional, exceedingly broad

23   document requests and interrogatories.  *Id.* ¶ 15, Exs. 1-2.[3]  A week later, despite Apple's

24   [3] For example, plaintiffs seek, among other things, documents relating to definitions of
relevant product and geographic markets for iPods and iTS files; licensing DRM technology;
25   costs to develop and maintain FairPlay; transactional data for iPod sales to wholesalers and
resellers, including quantity sold, date of sale, iPod model number, and price from October 2001
26   to present; features or functionality of an iPod, including comparisons to competing music
players; iPod pricing strategy; quarterly costs to develop, maintain and advertise iTS; quarterly
27   revenue, costs, and component costs for each iPod model; quarterly number of songs available on
iTS; prices of iPods to direct purchaser end users; negotiations or communications regarding any
28   contracts with Hewlett-Packard for the sale of iPods and the use of iTunes on Hewlett-Packard
computers; the transfer of digital audio files directly from iTunes to Motorola phones, including

Opposition to Motion To Compel
C-05-0037-JW (HRL); C-06-04457 JW (HRL)

1    ongoing cooperation and good faith efforts to search for and produce documents, plaintiffs filed

2    their motion to compel without meeting and conferring with Apple. *Id.* ¶ 9.

3        It was not until February 19th, that plaintiffs finally attempted to contact Apple to discuss

4    their motion. Ultimately, the parties were able to reach agreement on all of the items that are the

5    subject of plaintiffs' motion except for production of additional customer inquiries. *Id.* ¶ 10.

6    **ARGUMENT**

7        Courts may deny a motion to compel where "the burden or expense of the proposed

8    discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii); *Hall v. Keller*, 256 Fed.

9    Appx. 960, 960-61 (9th Cir. 2007) (holding that district court had not abused its discretion by

10   denying plaintiff's motion to compel due to undue burden on defendant). Courts may also limit

11   or deny discovery that "is unreasonably cumulative or duplicative, [and] can be obtained from

12   some other source that is more convenient, less burdensome, [and] less expensive." Fed. R. Civ.

13   Proc. 26(b)(2)(C)(i). As detailed in the accompanying declarations, there are approximately

14   220,000 customer inquiries (approximately 800,000 pages) that would need to be reviewed to

15   determine if they relate to plaintiffs' request. Kellermann Decl., ¶¶ 3-4; Kiernan Decl., ¶¶ 12-13.

16   That review would require an estimated 6,000 hours of review time at a cost exceeding $350,000.

17   Kiernan Decl., ¶ 13. Apple tried to reach a compromise by offering to review a sample of the

18   220,000 inquiries. Plaintiffs rejected that offer. *Id.* ¶14. The cost to review the inquiries is not

19   justified given plaintiffs' purported need.

20       Plaintiffs argue that they need customer inquiries from June 1, 2007 through March 31,

21   2009 in addition to the previously produced inquires from April 2003 through June 2007 to show

22   _____

(continued…)

23   documents reflecting negotiations or communications regarding same; surveys, reports, or other
     marketing analyses that concern iPods or iTS; surveys, reports or other marketing analyses that
24   concern iPod owners and their use of iTS, other music stores or players other than Apple;
     marketing studies of iPod or iTS competitors; and testimony by Apple before the Copyright
25   Royalty Board on music royalties. Kiernan Decl., Ex. 1.

26       Plaintiffs also served interrogatories that seek, among other things, information relating to
     the geographic markets for iPods and factors used to define and segregate them; each product
27   considered to compete with iPod or iTS; quarterly market share for iPods and online music; and
     the identity of all facts, documents and people with knowledge that support Apple's denials of
28   certain allegations in the consolidated complaint and affirmative defenses. *Id.*, Ex. 2.

Opposition to Motion To Compel
C-05-0037-JW (HRL); C-06-04457 JW (HRL)

1   that updates to FairPlay had the effect of preventing complete interoperability—i.e., preventing

2   music from iTS from playing directly on non-iPods and preventing non-iTS music from playing

3   directly on iPods.  Kiernan Decl., ¶ 11.  Plaintiffs are referring to updates to FairPlay designed to

4   restore its integrity after hackers breached it.  Dkt. 325, pp. 3-5, 10-12.  However, the lack of

5   complete interoperability, both before the hacks and after the updates, is not in dispute.  *Id.* at 8-

6   10.  It was the function of different online digital music stores using different DRMs.

7       Moreover, as noted, the previously produced customer inquiries from April 1, 2003

8   through June 1, 2007 cover the entire period when the specific updates referred to in plaintiffs'

9   amended complaint were issued.  Dkt. 322, ¶¶ 52-67 (identifying updates issued between 2004

10  and September 2006).  Apple is also in the process of producing documents that relate to updates

11  to FairPlay, if any, that addressed conduct by competitors or hackers that permitted direct

12  playback of protected iTS files on a non-iPod or that permitted the iPod to play music protected

13  by another entity's DRM.  Kiernan Decl., ¶ 4.  And the parties are scheduling a 30(b)(6)

14  deposition regarding these very issues.  *Id.*  Anything more is unreasonably cumulative and

15  duplicative, and thus any conceivable benefit of production does not justify imposing additional

16  expense on Apple.

17      Plaintiffs' brief makes two other arguments regarding why they purportedly need the

18  customer inquiries.  During the meet and confer process, however, plaintiffs dropped these

19  arguments in light of their amended complaint, and for good reason.  Kiernan Decl., ¶ 11, n.2.

20  Beyond the generalized, unsubstantiated argument that they "go to the heart of" their case,

21  plaintiffs' brief claims (pp. 15-16) that the additional customer inquiries are needed to show that

22  iTS customers are unhappy with their previously-purchased iTS files protected by FairPlay.

23  Since writing their brief, however, plaintiffs dropped their claims for a class of iTS customers

24  seeking an injunction requiring Apple to give DRM-free upgrades for all iTS music previously

25  sold with FairPlay.  Dkt. 238.[4]   Accordingly, plaintiffs no longer pursue this purported

26  justification for their discovery request.

---

27  [4] Plaintiffs' brief also argues that they need the inquiries to rebut Apple's contention that
    iTS purchasers were happy with their purchases.  The hearing transcript makes plain that Apple
28  was addressing plaintiffs' request to represent iTunes purchasers, seeking an injunction to compel
    Apple to provide DRM-free music.  As discussed above, plaintiffs no longer seek that relief.

1    Their fallback argument is equally unavailing.  Plaintiffs' brief argues (p. 16) that the

2  inquiries are needed to show that Apple "was aware throughout the class period that purchasers of

3  iPods wanted to play non-iTS files and purchasers of iTS files wanted to play them directly on

4  non-iPods."  But they fail to explain why Apple's knowledge is relevant to their monopolization

5  claim.  The only case they cite, *Sanbrook v. Office Depot*, did not involve antitrust claims, much

6  less monopolization claims.  The *Sanbrook* court permitted discovery of customer inquiries

7  because proof of defendant's knowledge was an element of plaintiffs' fraud and negligent

8  misrepresentation claims.  *See Named Plaintiff's Motion to Compel, Sanbrook v. Office Depot*,

9  No. C-07-5938 RMW (PH), 2009 WL 1948959 (N.D. Cal. February 5, 2009).  And the court's

10  holding was "limited to the facts and the particular circumstances" of the motion before it.

11  *Sanbrook v. Office Depot*, No. C-07-5938 RMW (PH), 2009 WL 840019 at *1, n. 1 (N.D. Cal.

12  March 30, 2009).  Here, even if Apple's knowledge were relevant, plaintiffs already have

13  inquiries that Apple previously produced on which they can rely.

14    In short, plaintiffs have not shown that any benefit of production justifies imposing

15  significant additional costs on Apple, particularly given that the previously produced customer

16  inquiries from April 1, 2003 through June 1, 2007 cover the entire period when the specific

17  updates referred to in plaintiffs' amended complaint were issued.  Dkt. 322, ¶¶ 52-67 (identifying

18  updates issued between 2004 and September 2006).

19                                   **CONCLUSION**

20    For the foregoing reasons, plaintiffs' motion to compel should be denied.

21
22  Dated: March 2, 2010                          Jones Day

23
24                                                By: /s/
                                                  Robert A. Mittelstaedt

25                                                Counsel for Defendant
26                                                APPLE INC.

27  SFI-630645v10

28

Opposition to Motion To Compel
C-05-0037-JW (HRL); C-06-04457 JW (HRL)