1  COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  JOHN J. STOIA, JR. (141757)
   BONNY E. SWEENEY (176174)
3  THOMAS R. MERRICK (177987)
   PAULA M. ROACH (254142)
4  655 West Broadway, Suite 1900
   San Diego, CA  92101
5  Telephone:  619/231-1058
   619/231-7423 (fax)
6  johns@csgrr.com
   bonnys@csgrr.com
7  tmerrick@csgrr.com
   proach@csgrr.com
8
   THE KATRIEL LAW FIRM
9  ROY A. KATRIEL (*pro hac vice*)
   1101 30th Street, N.W., Suite 500
10 Washington, DC  20007
   Telephone:  202/625-4342
11 202/330-5593 (fax)
   rak@katriellaw.com
12
   Co-Lead Counsel for Plaintiffs
13
   [Additional counsel appear on signature page.]
14
                    UNITED STATES DISTRICT COURT
15
                    NORTHERN DISTRICT OF CALIFORNIA
16
                         SAN JOSE DIVISION
17

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTI-TRUST LITIGATION | Lead Case No. C-05-00037-JW(HRL) |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' MEMORANDUM IN OPPOSITION TO APPLE'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT |
| ALL ACTIONS. | |
| | Judge:    Hon. James Ware |
| | Date:     April 26, 2010 |
| | Time:     9:00 am |
| | Location: 8, 4th Floor |

                         **REDACTED**

511281_1

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | | INTRODUCTION | 1 |
| II. | | STATEMENT OF FACTS | 2 |
| | A. | Court's Prior Rulings | 2 |
| | B. | Plaintiffs' Amended Complaint Addresses the Court's Previous Concerns | 3 |
| III. | | APPLE'S MOTION TO DISMISS SHOULD BE DENIED | 4 |
| | A. | Motion to Dismiss Standards | 4 |
| | B. | Plaintiffs Have Sufficiently Alleged the Elements of Monopolization | 4 |
| | C. | Plaintiffs Sufficiently Allege Apple Willfully Maintained Its Monopoly Power Through the Use of Software Updates | 5 |
| IV. | | APPLE'S ALTERNATIVE MOTION FOR SUMMARY JUDGMENT SHOULD ALSO BE DENIED | 8 |
| | A. | Summary Judgment Standards | 8 |
| | B. | A Genuine Issue of Material Fact Exists as to Whether Apple Used Software Updates to Willfully Maintain Its Monopoly Power | 9 |
| | | 1. Apple Took Affirmative Steps to Prevent RealNetworks and Others from Competing | 9 |
| | | a. Apple's Software Updates Directed at RealNetworks Were Anticompetitive | 9 |
| | | b. A Genuine Dispute Exists that Apple Acted Anticompetitively Towards RealNetworks Even if Apple's Conduct Is Solely Analyzed as a Refusal to Deal | 13 |
| | | 2. Software Programs Intended to Create Interoperability | 16 |
| V. | | FOR THE SAME REASONS, PLAINTIFFS' STATE LAW CLAIMS SURVIVE | 19 |
| | A. | Cartwright Act | 19 |
| | B. | Unfair Competition Law | 20 |
| | C. | California Consumers Legal Remedies Act | 20 |
| | D. | Common Law Monopolization | 21 |
| | E. | Should the Court Find that Plaintiffs' Federal Law Claims Do Not Raise Issues of Material Fact, Plaintiffs Request the Court Decline to Exercise Jurisdiction Over the State Law Claims | 21 |

1

2                                                                          **Page**

3    VI.    SHOULD THE COURT REQUIRE ADDITIONAL FACTS, PLAINTIFFS
            REQUEST FURTHER DISCOVERY UNDER FED. R. CIV. P. 56(f) ...........................21
4
     VII.   CONCLUSION.........................................................................................................25
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page

3

**CASES**

4

*Abbott Labs. v. Teva Pharms. USA, Inc.,*
432 F. Supp. 2d 408 (D. Del. 2006)..................................................................10

5

*Allied Orthopedic Alliance Inc. v. Tyco Health Care Group LP,*
592 F.3d 991 (9th Cir. 2010) ..................................................... *passim*

6

7

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)...............................................................8, 22

8

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,*
472 U.S. 585 (1985)................................................................14, 15

9

10

*Barovich Assocs., Inc. v. Aura Sys., Inc.,*
No. 96-55778, 1998 WL 10747
(9th Cir. Jan. 9, 1998) ..............................................................22

11

12

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
603 F.2d 263 (2d Cir. 1979)........................................................6

13

*Bondi v. Jewels by Edwar, Ltd.*
267 Cal. App. 2d 672 (1968) .......................................................19

14

15

*Cal. Computer Prods., Inc v. Int'l Bus. Mach. Corp.,*
613 F.2d 727 (9th Cir. 1979) ......................................................10

16

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)..................................................................8

17

18

*Cervantes v. United States,*
330 F.3d 1186 (9th Cir. 1995) .....................................................4

19

*Chamberlain Group, Inc. v. Skylink Techs, Inc.,*
381 F.3d 1178 (Fed. Cir. 2004).....................................................16

20

*Chavez v. Whirlpool Corp.,*
93 Cal. App. 4th 363 (2001) .......................................................20

21

22

*Clark v. Cap. Credit & Collection Srvs., Inc.,*
460 F.3d 1162 (9th Cir. 2006) .....................................................22

23

*Clement v. Kaiser Found. Health Plan, Inc.,*
No. CV04-704 WJR (MCx)
2004 WL 3049753 (C.D. Cal. Dec. 17, 2004) ......................................22

24

25

*Cost Mgmt. Servs. v. Wash. Natural Gas,*
99 F.3d 937 (9th Cir. 1996) .......................................................4

26

27

*Crowe v. San Diego,*
593 F.3d 841 (9th Cir. 2010) ......................................................8

28

PLTFS' MEMO IN OPPO TO APPLE'S MTD OR ALTERNATIVELY, FOR SUMMARY JUDGMENT-    - iii -
C-05-00037-JW(HRL)

**Page**

*Eastman Kodak Co. v. Image Tech. Srvs., Inc.,*
 504 U.S. 451 (1992)...............................................................................................7

*Foremost Pro Color Inc. v. Eastman Kodak Co.,*
 703 F.2d 534 (9th Cir. 1983) ........................................................5, 6, 10, 15

*Hall v. Santa Barbara,*
 833 F.2d 1270 (9th Cir. 1986) ...........................................................................4

*Harrell v. 20th Century Ins. Co.,*
 934 F.2d 203 (1991)...........................................................................................21

*Image Tech. Servs., Inc. v. Eastman Kodak Co.,*
 903 F.2d 612 (9th Cir. 1990) ...........................................................................19

*Image Tech. Srvs., Inc. v. Eastman Kodak Co.,*
 125 F.3d 1195 (9th Cir. 1997) ....................................................................6, 7, 15

*In re Cipro Cases I & II,*
 121 Cal. App. 4th 402 (Cal. Ct. App. 2004) ...................................................21

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
 387 F.3d 522 (6th Cir. 2004) ...........................................................................17

*Lowell v. Mother's Cake Cookie's Co.*
 79 Cal. App. 3d 13, 23 (1978) .........................................................................20

*Lukens v. Whitemarsh Valley Country Club,*
 No. Civ.A. 02-1279, 2003 WL 22597529
 (E.D. Pa. Nov. 5, 2003)......................................................................................8

*MetroNet Servs. Corp. v. Qwest Corp.,*
 383 F.3d 1124 (9th Cir. 2004) .........................................................................15

*Moore v. Jas. H. Mathews & Co.,*
 473 F.2d 328 (9th Cir. 1972) .............................................................................5

*Natural Gas Anti-Trust Cases I, II, III, & IV,* Nos. 4221, 4224, 4226, 4228
 2002 WL 31570296 (Cal. Sup. Ct. Oct. 16, 2002) .........................................21

*Saxer v. Philip Morris, Inc.,*
 54 Cal. App. 3d 7 (Cal. Ct. App. 1975) .........................................................19

*Stearns Airport Equip. Co. v. FMC Corp.,*
 170 F.3d 518 (5th Cir. 1999) ...........................................................................22

*Tele Atlas N.V. v. Navteq Corp.,*
 No. C-05-01673 RS, 2008 WL 4911230
 (N.D. Cal. Nov. 13, 2008).................................................................................7

PLTFS' MEMO IN OPPO TO APPLE'S MTD OR ALTERNATIVELY, FOR SUMMARY JUDGMENT-     - iv -
C-05-00037-JW(HRL)

                                                                              **Page**

*Tucker v. Apple Computer, Inc.,*
    493 F. Supp. 2d 1090 (N.D. Cal. 2007) .............................................15

*United States v. Grinnell Corp.,*
    384 U.S. 563 (1966)....................................................................5

*United States v. Microsoft Corp.,*
    253 F.3d 34 (D.C. Cir. 2001) .................................................7, 10, 12

*United States v. Redwood City,*
    640 F.2d 963 (9th Cir. 1981) ........................................................4

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP,*
    540 U.S. 398 (2004)...............................................................7, 14, 15

*Vinci v. Waste Mgmt., Inc.,*
    36 Cal. App. 4th 1811 (1995) .......................................................20

*William O. Gilley Enters., Inc. v. Atlantic Richfield Co.,*
    588 F.3d 659 (9th Cir. 2009) ........................................................4

**STATUTES, RULES AND REGULATIONS**

17 U.S.C.
    §1201(a)(2)(A)
    §1201(b)(1)(A)..........................................................................16
    §1201(f)(1).............................................................................17
    §1201(f)(4).............................................................................17

Federal Rules of Appellate Procedure
    Rule 36-3...............................................................................22

Federal Rule of Civil Procedure
    Rule 12(c)..............................................................................2
    Rule 12(b)(6).........................................................................5, 8
    Rule 23(b)(2)..........................................................................2, 3
    Rule 23(b)(3)..........................................................................2, 3
    Rule 30(b)(6)..........................................................................23
    Rule 56(c)(2)...........................................................................8
    Rule 56(f) ......................................................................... *passim*
    Rule 56(e)(2)...........................................................................8

California Business & Professions Code
    §16700 ................................................................................19
    §17200 ................................................................................19

**Page**

California Civil Code
    §1750 .................................................................................................................19
    §1760.................................................................................................................20
    §1770.................................................................................................................20

**SECONDARY AUTHORITIES**

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
    §1357 (3d ed. 2004) ...........................................................................................4

PLTFS' MEMO IN OPPO TO APPLE'S MTD OR ALTERNATIVELY, FOR SUMMARY JUDGMENT-       - vi -
C-05-00037-JW(HRL)

1    Plaintiffs Somtai Charoensak, Mariana Rosen, and Melanie Tucker (collectively "Plaintiffs")

2   submit this memorandum of law in opposition to Apple, Inc.'s Motion to Dismiss or, Alternatively,

3   For Summary Judgment ("Apple's Motion").

4   **I.    INTRODUCTION**

5    Apple misconstrues Plaintiffs' allegations in an attempt to dismiss the action and

6   alternatively brings a premature and unsupported motion for summary judgment.  Apple's only

7   argument in support of its motion to dismiss is that Plaintiffs' Section 2 monopoly claims are no

8   different than the Section 1 claims previously dismissed.  According to Apple, Plaintiffs' current

9   complaint only contests the lack of interoperability between Apple's products and its competitors.

10   However, Plaintiffs clearly allege Apple abused its monopoly power by issuing unnecessary, non-

11   improving software updates that provided no benefit to consumers but were solely intended to

12   exclude competition from the markets and more fully entrench Apple's monopolies.  Ninth Circuit

13   precedent plainly supports upholding these allegations as violations of Section 2.  Accordingly,

14   Apple's motion to dismiss must be denied.

15    Apple's alternative motion for summary judgment similarly fails because it is unsupported by

16   law and facts.  The evidence adduced so far contradicts Apple's claims that the software updates it

17   used to exclude competition in the relevant markets were required by the record labels or necessary

18   to ensure the security of Apple's products.  Instead, the evidence shows that Apple issued those

19   updates on its own accord, for the purpose of excluding competition, and not because it was

20   compelled to do so by the record labels or security concerns.  Moreover, Apple completely overlooks

21   Ninth Circuit and Supreme Court precedent supporting Plaintiffs' claims.  For the reasons set forth

22   below, Apple's alternative motion for summary judgment should be denied.

23    Moreover, an adequate factual record has yet to be developed through discovery.  Indeed, as

24   odd as it sounds, Apple has filed a motion that requires Plaintiffs to show evidence of genuine issues

25   of material fact concerning Apple's use of software updates, yet Apple has failed to complete its

26   discovery response on this issue.  Apple cannot have its cake and eat it too.  Apple cannot refuse to

27   produce material evidence directly related to the issues in its motion and also hope to succeed on the

28   motion.  While Plaintiffs believe the current record supports a denial of Apple's alternative motion

1    for summary judgment in its entirety, should the Court be inclined to rule in favor of Apple on this

2    motion, Plaintiffs' seek additional discovery under Rule 56(f) of the Federal Rules of Civil

3    Procedure.

4    **II.    STATEMENT OF FACTS**

5       **A.    Court's Prior Rulings**

6          On December 22, 2008, the Court certified Plaintiffs' monopolization, attempted

7    monopolization, and related state law claims. Dkt. No. 196 at 1-2. The Court however, declined

8    certification of Plaintiffs' Section 1 tying claim. Dkt. No. 213 at 2. Instead, the Court invited a

9    dispositive motion by Apple with regard to Plaintiffs' tying claim on two discrete issues:

10          (1)    Can coercion sufficient to support a Section 1 tying claim exist where there is
            no requirement that the tying product and tied product be purchased together?

11

12          (2)    Must such coercion be proved on an individual basis, such that each
            individual consumer of the tied product must prove that he or she was forced to
            purchase the tied product?

13   Dkt. No. 196 at 7.

14          On May 15, 2009, the Court granted in part Defendant's Motion for Judgment on the

15   Pleadings, dismissed Plaintiffs' *per se* tying claim under the Sherman Act and related state law

16   claims, and invited Defendant to file an additional Rule 12(c) motion regarding the viability of

17   Plaintiffs' tying claim under a rule of reason analysis. Dkt. No. 213 at 10. On October 30, 2009, the

18   Court dismissed Plaintiffs' remaining tying claims and held that technological interoperability

19   between iPods and Apple's iTS files was not by itself anticompetitive and thus, did not constitute

20   tying. Dkt. No. 274 at 10.

21          The Court also requested additional briefing concerning the definition of the certified Class.

22   On December 21, 2009, the Court *sua sponte* decertified the Rule 23(b)(2) and Rule 23(b)(3) classes

23   in order to provide Plaintiffs the opportunity to reallege their monopolization claims to more

24   specifically define the putative classes. Dkt. No. 303 at 2-3.

25          The Court made clear that decertification was not dependent on the grounds raised by Apple

26   in its motions, but rather "only to ensure that a proper class would be defined in light of [its] Order."

27   *Id.* at 2 n.6. In so doing, the Court requested that Plaintiffs draw a distinction between the

28

1  anticompetitive acts identified in Plaintiffs' consolidated complaint ("CC") and the dismissed tying

2  allegations. Dkt. No. 303 at 10. Specifically, the Court sought clarification as to whether Plaintiffs

3  were basing their monopoly claims solely on technological decisions made by Apple before the

4  products were introduced to the market or whether Plaintiffs allege that Apple gained or maintained

5  monopoly power through subsequent additional anticompetitive conduct. *Id.* Accordingly, Plaintiffs

6  addressed the Court's concerns and amended their allegations to demonstrate that Apple acted

7  anticompetitively to maintain its monopoly power after the iPod and iTS files were introduced.

8  **B.   Plaintiffs' Amended Complaint Addresses the Court's Previous Concerns**

9  Plaintiffs have addressed this Court's primary concern regarding the interweaving of

10  allegations related to "technology decisions…made before the products were first introduced" with

11  those allegations related exclusively to "technology changes…made to maintain a monopoly." Dkt.

12  No. 303 at 10. Plaintiffs' Amended Consolidated Complaint ("Amended Complaint") clearly states

13  that Apple used its proprietary DRM "FairPlay" to ***achieve*** monopolies in the Portable Digital Media

14  Player Market and the Audio Download Market.[1] ¶¶38-51. Thereafter, Plaintiffs sufficiently allege

15  that Apple issued software updates to thwart compatibility with competitors' products, thereby

16  shutting out the competition and further ***entrenching the monopolies it had achieved*** through the

17  use of FairPlay. ¶¶3-4, 52-67.

18  The Amended Complaint describes several courses of conduct and anticompetitive actions

19  taken by Apple to maintain the monopolies it had achieved, including:

20  • In October of 2004, Apple updated its iPod and iTunes software to prevent songs
21     downloaded from RealNetworks' music store from being played on iPods. Apple
       implemented these updates even though RealNetworks sold its Audio Downloads
22     with DRM protection that ensured the files could not be improperly copied but also
       allowed for increased compatibility with other Portable Digital Media Players,
23     including the iPod. ¶¶53-61.

24  • Beginning in 2005, Apple issued software updates to prevent iTS files that were
25     made interoperable through the use of the JHymn software program from being
       played on other competing Portable Digital Media Players. Specifically, the October,
26     2005 issuance of "iTunes 6.0" and the September 2006 issuance of "iTunes 7.0"

27  [1]   All references to "¶" and "¶¶" are to the Amended Complaint, unless otherwise noted.

28

PLTFS' MEMO IN OPPO TO APPLE'S MTD OR ALTERNATIVELY, FOR SUMMARY JUDGMENT -
C-05-00037-JW(HRL)                                                                    - 3 -

which were specifically designed to render JHymn and other similar programs ineffective. ¶¶63-67.

- These software updates, which were intended to and had the effect of thwarting interoperability, did not provide any new benefit to consumers. Instead, these updates harmed consumers by foreclosing competition. Even Apple concedes that the updates did not further their alleged purpose, which purportedly was to prevent piracy. ¶¶60, 67.

Additionally, Plaintiffs' Amended Complaint aptly demonstrates the anticompetitive intent of Apple's actions, and the resulting harm to competition and innovation. ¶¶81-88. Plaintiffs allege that Apple's anticompetitive conduct deterred iPod owners from doing business with any of its competitors and allowed Apple to charge supracompetitive prices. ¶¶82, 83.

## III.   APPLE'S MOTION TO DISMISS SHOULD BE DENIED

### A.   Motion to Dismiss Standards

"It is axiomatic that 'the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.'" *Hall v. Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986). Thus, "it is only the extraordinary case in which dismissal is proper." *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1357 (3d ed. 2004). When considering a motion to dismiss, a court must accept as true the complaint's allegations and reasonable inferences to be drawn from them. *Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 1995). A court may not dismiss an antitrust complaint for failure to state a claim if plaintiff has stated a claim that is "'plausible' in light of basic economic principles." *William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009). Here, Apple fails to demonstrate that Plaintiffs' claims are not plausible under the antitrust laws.

### B.   Plaintiffs Have Sufficiently Alleged the Elements of Monopolization

Plaintiffs sufficiently allege all three elements of their monopolization claim: (1) defendant possesses monopoly power in the relevant markets; (2) defendant has willfully acquired or maintained that power; and (3) defendant's conduct has caused antitrust injury. *See Cost Mgmt. Servs. v. Wash. Natural Gas*, 99 F.3d 937, 949 (9th Cir. 1996).

Apple concedes that Plaintiffs have alleged the first and third elements. *See* Apple's Motion at 8. Importantly, Apple does not dispute the sufficiency of Plaintiffs' claims that Apple possessed monopoly power in the relevant markets, or that Apple used that monopoly power to cause antitrust injury by charging supracompetitive prices and excluding competition. ¶¶17, 18, 27, 28, 81-88. Apple only contends that Plaintiffs have not sufficiently alleged that Apple willfully maintained that monopoly power. *See United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *Moore v. Jas. H. Mathews & Co.*, 473 F.2d 328, 332 (9th Cir. 1972). As discussed below, Plaintiffs have sufficiently alleged such conduct and thus, Apple's Rule 12(b)(6) motion should be denied.

**C.     Plaintiffs Sufficiently Allege Apple Willfully Maintained Its Monopoly Power Through the Use of Software Updates**

Apple's only argument for dismissal under Rule 12(b)(6) is that Plaintiffs' claims in their Amended Complaint are the same as those previously dismissed. Apple couches Plaintiffs' Amended Complaint as contesting the lack of interoperability between Apple's products and its competitors' products. Apple's Motion at 8. This is not what Plaintiffs allege. Plaintiffs contend that Apple used FairPlay to obtain its monopoly power in the relevant markets, and then unlawfully maintained that power by issuing unnecessary software updates that did not improve the product in any way but rather served solely to further entrench Apple's monopoly power and exclude competition. ¶¶ 52-63. It is not "[t]he increased convenience of using the two products together" (Apple's Motion at 8-9) that Plaintiffs complain of, but rather, Apple's abuse of its monopoly power and subsequent anticompetitive conduct that prevented competition on the merits and restricted consumer choice. ¶¶82-88.

*Foremost Pro* does not offer Apple support. As Apple correctly points out (but ignores), *Foremost Pro* addressed "the ***introduction*** of technologically related products," not subsequent anticompetitive changes to those products as alleged here. *Foremost Pro Color Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 544 (9th Cir. 1983).[2] In *Foremost Pro*, the court found that defendant's introduction of a new camera, film and processing system that was inoperable with film and

---

[2]     Unless otherwise noted, emphasis is added and citations are omitted.

PLTFS' MEMO IN OPPO TO APPLE'S MTD OR ALTERNATIVELY, FOR SUMMARY JUDGMENT -
C-05-00037-JW(HRL)                                                                                    - 5 -

1    processing materials sold by competitors was not anticompetitive in and of itself. *Id.* at 544-45.

2    Because plaintiff challenged the mere introduction of the products, the court never had the

3    opportunity to consider the legality of subsequent, non-improving product changes intended to

4    exclude competition once monopoly power was achieved. *Id.* at 542 n.4 (noting that when defendant

5    introduced the camera system there were no interoperable competing products on the market because

6    the new technology was unknown to competitors).

7        Here, Plaintiffs do not allege that Apple's mere introduction of the technologically related

8    iPod and iTS files was anticompetitive in and of itself. Rather, Plaintiffs contend that Apple used the

9    technological relationship created by FairPlay to obtain overwhelming monopoly power in the

10   relevant markets and then took additional steps to further entrench its monopolies through the use of

11   unnecessary, non-improving software updates intended to exclude competition and further restrict

12   consumer choice.  ¶¶38-67.  Apple did not compete on the merits.  Instead, Apple abused its

13   monopoly power and intentionally excluded competition when it was achieved.  ¶¶82-88.

14       Plaintiffs' claims are thus directly analogous to the Section 2 violations recognized by the

15   Ninth Circuit in *Image Tech. Srvs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1217 (9th Cir. 1997),

16   and, more recently, in *Allied Orthopedic Alliance Inc. v. Tyco Health Care Group LP*, 592 F.3d 991

17   (9th Cir. 2010).  In *Eastman Kodak,* the Ninth Circuit affirmed the jury's finding that Kodak violated

18   Section 2 by taking steps to exclude independent service organizations ("ISOs") from competition in

19   the market for servicing Kodak copying machines.  "Section 2 of the Sherman Act prohibits a

20   monopolist's unilateral action . . . if that conduct harms the competitive process in the absence of a

21   legitimate business justification." *Eastman Kodak*, 125 F.3d at 1209.  Just as Apple does here,

22   Kodak argued that it was entitled to exclude competitors from the service market in order to protect

23   its intellectual property rights. *Id.* at 1214-20.  However, the jury rejected Kodak's purported

24   business justification as pretextual. *Id.* at 1218-19.  Similarly, as Plaintiffs allege in their Amended

25   Complaint, and as the evidence adduced so far demonstrates (see below), Apple's software updates –

26   which did not improve the product – were motivated by a desire to exclude competition, not to

27   protect intellectual property rights or prevent piracy.  ¶¶60, 67.  Apple's alleged procompetitive

28   justification is pretextual and cannot support a motion to dismiss. *See Berkey Photo, Inc. v. Eastman*

1  *Kodak Co.*, 603 F.2d 263, 286 n.30 (2d Cir. 1979) (product introductions are not immune from

2  antitrust scrutiny); *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398,

3  408 (2004) ("Under certain circumstances, a refusal to cooperate with rivals can constitute

4  anticompetitive conduct and violate Section 2.").

5       The Ninth Circuit recently affirmed these principles in *Tyco*. There, the court distinguished

6  between a monopolist's design change that "improves a product by providing a new benefit to

7  consumers" from one that serves no purpose "other than protecting [the defendant's] monopoly."

8  *Tyco*, 592 F.3d at 998-99. While the former does not violate Section 2 unless the product innovation

9  is accompanied by additional anticompetitive conduct, the latter "may constitute an unlawful means

10  of maintaining a monopoly under Section 2." *Id.* at 998 (citing *United States v. Microsoft Corp.*, 253

11  F.3d 34, 65-67 (D.C. Cir. 2001)). Plaintiffs allege just that – Apple's software updates served no

12  purpose other than to protect Apple's monopolies by excluding competition, and therefore violate

13  Section 2. ¶¶38-67.

14       Finally, even assuming Apple's initial introduction of FairPlay was legal, its subsequent use

15  of software updates intended to exclude competition on the merits is not *a fortiori* permitted under

16  the antitrust laws as Apple would like this Court to find. Apple's Motion at 10. Under Section 2,

17  "'behavior that might otherwise not be of concern to the antitrust laws – or that might even be

18  viewed as procompetitive – can take on exclusionary connotations when practiced by a

19  monopolist.'" *Eastman Kodak*, 125 F.3d at 1217 (quoting *Eastman Kodak Co. v. Image Tech. Srvs.,*

20  *Inc.*, 504 U.S. 451, 488 (1992)); *see also Tele Atlas N.V. v. Navteq Corp.*, No. C-05-01673 RS, 2008

21  WL 4911230, at *2 (N.D. Cal. Nov. 13, 2008) ("What matters is whether the 'synergistic effect' of

22  the alleged conduct is to harm competition, and thus perpetuate a monopoly."). Moreover, Apple is

23  not immune from antitrust scrutiny because FairPlay was proprietary or was used in part to protect

24  intellectual property interests. *Eastman Kodak*, 125 F.3d at 1219 ("Neither the aims of intellectual

25  property law, nor the antitrust laws justify allowing a monopolist to rely upon pretextual business

26  justification to mask anticompetitive conduct.").

27       For these reasons, Apple's motion to dismiss should be denied.

28

## IV.   APPLE'S ALTERNATIVE MOTION FOR SUMMARY JUDGMENT SHOULD ALSO BE DENIED

Recognizing the weakness of its Rule 12(b)(6) argument, Apple prematurely moves for summary judgment on all of Plaintiffs' claims. This motion should also be denied.

### A.   Summary Judgment Standards

A court cannot grant summary judgment unless the moving party shows there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). To properly oppose a motion for summary judgment, the non-moving party must simply "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Because of the dispositive nature of the summary judgment remedy, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Crowe v. San Diego*, 593 F.3d 841, 862 (9th Cir. 2010) (same). "If reasonable minds could differ as to the import of the evidence," summary judgment must be denied. *Anderson*, 477 U.S. at 250-51.

The Court's "function is not [itself] to weigh evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "The standard for summary judgment is not whether a plaintiff would win should a case proceed to trial, but whether the Defendant has proved that no issues of material dispute exist." *Lukens v. Whitemarsh Valley Country Club*, No. Civ.A. 02-1279, 2003 WL 22597529, at *3 (E.D. Pa. Nov. 5, 2003). Thus, while Plaintiffs may ultimately bear the burden of proving every element of their monopolization claims at trial, they do not have to prove monopolization at summary judgment. Instead, Plaintiffs need only show there is a genuine issue of material fact concerning whether Apple unlawfully monopolized the relevant markets.

Here, Apple failed to demonstrate that no material dispute exists with regard to whether Apple willfully maintained its monopoly power of the relevant markets and thus, its alternative motion for summary judgment should be denied.

B.   **A Genuine Issue of Material Fact Exists as to Whether Apple Used Software Updates to Willfully Maintain Its Monopoly Power**

1.   **Apple Took Affirmative Steps to Prevent RealNetworks and Others from Competing**

Apple argues that its software updates intended to disable RealNetworks were not anticompetitive because they were an improved product design permitted under Section 2. Apple further contends that it was not required to "accommodate" RealNetworks when it updated its software. Apple's Motion at 12-13. As discussed below, both arguments fail under Ninth Circuit and Supreme Court legal precedent and Plaintiffs have established that a material dispute exists.

a.   **Apple's Software Updates Directed at RealNetworks Were Anticompetitive**

Apple argues that the software updates that disabled RealNetworks' Harmony were really an improved design of FairPlay and thus under Ninth Circuit case law, did not violate Section 2. Apple's Motion at 13. This legal theory fails because Ninth Circuit law is clear that modified product designs are only afforded deference when they provide an added benefit to consumers or are otherwise supported by procompetitive justifications. *See Tyco*, 592 F.3d at 998-99. Plaintiffs here have presented material evidence sufficient to demonstrate that a material dispute exists concerning whether Apple's software updates provided any added benefit to consumers or were otherwise justified.

In *Tyco*, the Ninth Circuit held that "a design change that ***improves a product by providing a new benefit to consumers*** does not violate Section 2 absent some associated anticompetitive conduct." *Tyco*, 592 F.3d at 998-99. There, plaintiffs alleged that defendant's introduction of redesigned pulse oximetry monitor and compatible sensors violated Section 2 because only defendant's new sensors were compatible with defendant's new monitors. *Id.* at 994. Defendant redesigned its old monitor and sensor products so that the digital memory chip would be located in the monitor as opposed to the sensors. *Id.* This new design allowed defendant to add features to the sensors, such as the ability to store patient information and inform physicians of possible causes of signal interruption, and also reduced the cost to customers. *Id.* Although defendant discontinued the

1   old design, prior purchasers of the old design were still able to use these products because generic

2   compatible sensors and monitors were available from competitors. *Id.* at 1001.

3        The Ninth Circuit found that because defendant's new products "provided some new benefit

4   to consumers and thus constituted an improvement" ***and*** defendant did not otherwise act

5   anticompetitively by forcing customers to purchase the new products, defendant did not violate

6   Section 2. *Id.* at 1000-02; *see also Cal. Computer Prods., Inc v. Int'l Bus. Mach. Corp.*, 613 F.2d

7   727, 744 (9th Cir. 1979) (holding that IBM did not violate Section 2 because it "had the right to

8   redesign its products to make them more attractive to buyers whether by reason of lower

9   manufacturing cost and price or improved performance"); *Foremost Pro*, 703 F.2d at 545 (finding

10  defendant's introduction of a redesigned camera and film system did not violate Section 2 because it

11  was a new and improved design); *cf. Microsoft*, 253 F.3d at 65-67 (integration of browser excluded

12  competition but did not improve product and so violated Section 2); *Abbott Labs. v. Teva Pharms.*

13  *USA, Inc.*, 432 F. Supp. 2d 408, 423 (D. Del. 2006) (upholding Section 2 claims alleging defendant's

14  introduction of new drug and discontinuation of old drug was motivated by anticompetitive

15  intentions and did not provide any added medical benefit to consumers).[3]

16       By contrast here, Apple does not contend – because it cannot – that the relevant software

17  updates provided any "new benefit to consumers." This is because Apple would be forced to argue

18  that updating the FairPlay technology to make it more rigorous benefited purchasers of both iTS files

19  and iPods. ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████████

22  ████████████████████; *id.* at 12 ("Apple was entitled to agree to the labels' demand . . . ."). Even

23  more telling is that Apple now sells all of its iTS files without any DRM and has marketed this as a

24  product improvement. *See* Declaration of Thomas R. Merrick in Support of Plaintiffs' Opposition to

25

─────────────────────────

26  [3]      Plaintiffs do not contend that the Court should engage in a weighing of the anti-competitive

27  effects of Apple's software update with its benefits. *See* Apple's Motion at 15. This is because, as
    discussed above, Apple's software update could hardly be considered an "improved product design."

28

PLTFS' MEMO IN OPPO TO APPLE'S MTD OR ALTERNATIVELY, FOR SUMMARY JUDGMENT -
C-05-00037-JW(HRL)                                                              - 10 -

1   Apple's Motion to Dismiss or, Alternatively, for Summary Judgment, filed concurrently ("Merrick

2   Decl."), Ex. 1.

3          Instead of arguing that the software updates provided a new benefit to consumers, Apple

4   merely contends, without support, that █████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████████████████████

6   Apple's Motion at 13.   Apple's contention is contradicted by the evidence. █████████████

7   ████████████████████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████████████████████████

15  ██████████████████████████████████████████   Any decision to

16  issue a software update directed at music purchased through an online store other than iTS for

17  download on an iPod was Apple's alone.

18         In fact, █████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████████████████████████

21  ████████████████████   Moreover, Apple does not provide any evidence that the non-major record labels

22  ever required Apple to issue any software updates.   Declaration of Paula M. Roach Pursuant to Rule

23  56(f) of the Federal Rules of Civil Procedure in Support of Plaintiffs' Opposition to Apple's Motion

24  to Dismiss or, Alternatively, for Summary Judgment ("Roach Decl."), ¶19.   Contrary evidence

25  suggests that these record labels also encouraged interoperability and competition in the markets and

26  were not interested in any DRM system.   Merrick Decl., Ex. 6.

27         Apple falls back on the argument that had it not issued the software updates to shut out

28  Harmony, FairPlay would have been less secure and vulnerable to future hackers. Apple's Motion at

1  14. This argument similarly fails. Apple provides no evidence that Harmony made FairPlay "less

2  secure" ████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████

7  ███████████████████

8       Apple's asserted justifications for the software updates that disabled RealNetworks'

9  Harmony simply do not provide any legitimate procompetitive justification for Apple's conduct. As

10 the Ninth Circuit recognized in *Tyco*, "changes in product design ***are not immune*** from antitrust

11 scrutiny and in certain cases may constitute an unlawful means of maintaining a monopoly under

12 Section 2." *Tyco*, 592 F.3d at 998. The *Tyco* court noted that in *United States v. Microsoft*, 253 F.3d

13 34 (D.C. Cir. 2001), plaintiffs were able to prove that Microsoft's integration of Internet Explorer

14 into the Windows 98 operating system was anticompetitive under Section 2 because "Microsoft

15 provided no 'procompetitive justification' [and] failed to show 'that its conduct serve[d] a purpose

16 other than protecting its operating system monopoly . . . .'" *Tyco*, 592 F.3d at 998.

17       In *Microsoft*, plaintiffs alleged that Microsoft violated Section 2 when it integrated Internet

18 Explorer into Windows 98 by, *inter alia*, excluding Internet Explorer from the Add/Remove

19 Programs so that Internet Explorer could not be readily deleted and commingling the browser and

20 operating system code so that if Internet Explorer were removed it would affect the operating

21 system's functions. *Id.* 253 F.3d at 65. To justify this conduct, Microsoft claimed that integration of

22 the browser and operating system provided "substantial benefits to customers and developers." *Id.* at

23 66. The court found that these "general claims regarding the benefits of integrating the browser and

24 operating system" were unsubstantiated and failed to explain how exclusion of Internet Explorer

25 from the Add/Remove menu or commingling the code achieved "any integrative benefit." *Id.* at 66-

26 67. Accordingly, because Plaintiffs demonstrated that Microsoft's conduct had harmed competition

27 and Microsoft failed to demonstrate that its conduct served "a purpose other than protecting its

28 operating system monopoly," the Court found Microsoft violated Section 2. *Id.* at 67.

1    Similarly, here, Apple does not and cannot provide a "procompetitive justification" for its use

2    of the software updates that prevented the download of files purchased from RealNetworks onto an

3    iPod and has failed to demonstrate that the software updates served a purpose other than to exclude

4    competition and protect Apple's monopolies of the relevant markets.  Apple was not required by any

5    record label to issue the software updates that disabled RealNetworks' Harmony and fails to provide

6    any evidence that had it not disabled Harmony, its own products would be less secure.  For these

7    reasons, Apple has failed to demonstrate that no material fact exists as to whether it willfully

8    maintained its monopoly power by issuing these software updates.

9                    **b.       A Genuine Dispute Exists that Apple Acted
                               Anticompetitively Towards RealNetworks Even if
10                             Apple's Conduct Is Solely Analyzed as a Refusal to Deal**

11    Alternatively, Apple contends that it would have been required to deal with RealNetworks in

12    order to prevent its updates from disabling Harmony.  Apple asserts that in order for Harmony to

13    continue to permit downloads of music purchased from RealNetworks onto an iPod, Apple and

14    RealNetworks would have had to exchange highly sensitive information regarding their technologies

15    which would have made FairPlay less secure.  Apple's Motion at 16.  Apple contends that the

16    antitrust laws do not require such cooperation.

17    Apple, however, has provided no evidence to demonstrate that such cooperation would be

18    required or that cooperation between the companies would make FairPlay less secure.  Without the

19    opportunity to complete discovery on these issues, the record is insufficient for the Court to grant a

20    summary judgment motion.  Roach Decl., ¶¶20, 26.  However, Apple's own relationships with

21    competitors suggests that such cooperation is possible and would not have placed Apple's

22    technology at risk. █████████████████████████████████████████

23    ████████████████████████████████████████████████████████

24    ████████████████████████████████████████████████████████

25    ████████████████████████████████████████████████████████

26    ████████████████████████████████████████████████████████

27    ████████████████████████████████████████████████████████

28    ████████████████████████████████████████████████████████

1 ███████████████████████████████████████████

2 ███████████████████████████████████████████

3 ███████████████████████████████████████████

4 ████████████

5      Apple also entered into an agreement with Motorola in September 2005 that permitted

6 Motorola to sell certain cellular phones with iTunes so that purchasers could directly download and

7 play music purchased from iTS on their cell phone. Merrick Decl., Ex. 8.  This presumably required

8 cooperation between the companies including exchange of sensitive technological information.  As

9 Apple stated in its press release, "We've worked closely with Motorola to deliver the world's best

10 music experience on a mobile phone."  *Id.*  Apple has never contended that either cooperation

11 agreement with Motorola or HP has resulted in Apple's products being less secure.

12      In addition to failing to demonstrate the lack of a genuine dispute as to whether cooperation

13 with RealNetworks would be required or that cooperation would have been detrimental to the

14 security of Apple's products, Apple also misstates the holding in *Trinko* to argue that it is never

15 required to cooperate with competitors.  Apple's Motion at 16.  To the contrary, the *Trinko* Court

16 reaffirmed that requiring cooperation among rivals is sometimes necessary to promote the goals of

17 antitrust laws, and that some refusals to deal violate Section 2:

18           However, "[t]he high value that we have placed on the right to refuse to deal
          with other firms does not mean that the right is unqualified."  Under certain
19        circumstances, a refusal to cooperate with rivals can constitute anticompetitive
          conduct and violate [Section] 2.
20

21 *Trinko*, 540 U.S. at 408 (quoting *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585,

22 601 (1985)).  In its earlier decision in *Aspen Skiing*, the Court held that "[t]he absence of an

23 unqualified duty to cooperate does not mean that every time a firm declines to participate in a

24 particular cooperative venture, that decision may not have evidentiary significance, or that it may not

25 give rise to liability in certain circumstances." *Aspen Skiing*, 472 U.S. at 601; *Trinko*, 540 U.S. at

26 408.  Rather, if a refusal to deal "impair[s] competition in an unnecessarily restrictive way" and the

27 defendant is "'attempting to exclude rivals on some basis other than efficiency,' it is fair to

28

PLTFS' MEMO IN OPPO TO APPLE'S MTD OR ALTERNATIVELY, FOR SUMMARY JUDGMENT -
C-05-00037-JW(HRL)                                                                      - 14 -

1  characterize its behavior as predatory" and "appropriate to examine the effect of the challenged

2  pattern of conduct on consumers." *Aspen Skiing*, 472 U.S. at 605.

3      Similarly, refusals to deal in the intellectual property context are not granted *carte blanche*

4  status. *See Eastman Kodak*, 125 F.3d at 1219-20 (finding defendant's refusal to deal defense based

5  on patent protection was rebutted by pretextual evidence). Where, as here, defendant refuses to

6  license its proprietary information, not because it wishes to protect that interest, but for other

7  anticompetitive reasons, the antitrust laws apply. *Id.*; ¶¶48, 49. Apple has not provided sufficient

8  evidence to support its contention that such protection was necessary, and Plaintiffs have yet to

9  obtain any discovery on the issue. Roach Decl., ¶¶4, 20, 21. Accordingly, even if the Court

10  indulges Apple's contention concerning its refusal to license FairPlay, Plaintiffs should still be

11  afforded the opportunity to provide rebuttal evidence. *See Eastman Kodak*, 125 F.2d at 1219.

12      Additionally, as previously recognized by this Court (*Tucker v. Apple Computer, Inc.*, 493 F.

13  Supp. 2d 1090, 1100 (N.D. Cal. 2007)), a refusal to deal under *Trinko* is not limited to cases where

14  "a company has voluntarily entered into – and then unilaterally terminated – a prior course of

15  dealing with competitors." *See* Apple's Motion at 18. While the *Trinko* court "found significance"

16  in the defendant's decision to cease participation in a prior cooperative venture in *Aspen Skiing*, it

17  did not confine refusal to deal to cases only where a prior course of dealing exists. Rather, the Court

18  focused on the defendant's prior conduct to "[shed] light upon the motivation of its refusal to deal–

19  upon whether its regulatory lapses were prompted not by competitive zeal but by anticompetitive

20  malice." *Trinko*, 540 U.S. at 409. Accordingly, a refusal to deal is anticompetitive under the

21  Sherman Act if defendant has forsaken "short-term profits to achieve an anticompetitive end," (*id.*),

22  or "impaired competition in an unnecessarily restrictive way" or acted to "'exclude rivals on some

23  basis other than efficiency.'" *Aspen Skiing*, 472 U.S. at 605.

24      Courts after *Trinko* have used these criteria to analyze such claims. For example, in

25  *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1133 (9th Cir. 2004), cited by Apple (Apple's

26  Motion at 19), the court granted summary judgment for the defendant because it had not "set its

27  retail price at an unprofitable level in the short run merely to exclude competition in the long run."

28

PLTFS' MEMO IN OPPO TO APPLE'S MTD OR ALTERNATIVELY, FOR SUMMARY JUDGMENT -
C-05-00037-JW(HRL)                                                              - 15 -

1    Here, Plaintiffs have alleged that Apple deliberately issued software updates in order to

2 prevent music purchased from competitors' online music stores from being played on an iPod and to

3 prevent iTS music from being played on competing portable players.  Apple's prior dealings with

4 Motorola and HP reveal that Apple was willing to engage with competitors so that music purchased

5 from Apple could be played on Apple's iPods or products that were not in competition with Apple

6 because this reinforced Apple's monopolies in the online music and portable player markets.

7 However, Apple was not interested in engaging with RealNetworks for the sale of *non-iTS* files on

8 iPods because this would open Apple's monopoly of the online music market and in turn the

9 portable player market.

10    The inference is that Apple deliberately forewent iPod sales to prospective customers who

11 had purchased digital music from other stores so that it could charge supracompetitive prices and

12 deter iPod purchasers from even considering doing business with its music competitors.  Apple

13 would rather keep all profits to itself in the long run than get short term profits from RealNetworks'

14 customers who wish to put their music on an iPod, and risk the possibility that permitting iPod

15 purchasers to do business with other online stores may result in those purchasers not doing business

16 with Apple.  Merrick Decl., Ex. 4.

17                    **2.**    **Software Programs Intended to Create Interoperability**

18    Relying on the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §§1201(a)(2)(A)

19 and (b)(1)(A), Apple contends, with virtually no analysis, that some companies' attempts to create

20 interoperability were illegal, and therefore Apple's software updates were not exclusionary acts and

21 that Apple had a "legitimate justification for them."  Apple's Motion at 10.  Apple contends that the

22 QTFairUse, JHymn, and PlayFair software programs "and similar hacks" violated the DMCA and

23 thus, Apple "was simply exercising rights" to protect the copyright holders.  Apple, however,

24 overstates the scope of the DMCA and any possible protection that it provides to Apple's monopoly.

25    First, the DMCA itself "does not limit the scope of the antitrust laws, either explicitly or

26 implicitly." *Chamberlain Group, Inc. v. Skylink Techs, Inc.*, 381 F.3d 1178, 1201 (Fed. Cir. 2004).

27 What the DMCA is designed to protect is not Apple's, or any other company's, monopoly gained

28 through a digital rights management or similar "lock-out" program, but rather the underlying

1   copyright-protected artistic expression. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

2   387 F.3d 522, 536 (6th Cir. 2004) (a "lock-out" code, *i.e.*, one the "requires that a particular code

3   sequence be included in the component device to permit its use," is generally precluded from

4   copyright protection); *see also id.* at 553 ("Giving authors monopolies over manufactured goods as

5   well as over their creative expressions will clearly not 'promote the Progress of Science and the

6   Useful Arts,' but rather would stifle progress by stamping out competition from manufacturers who

7   may be able to design better or less expensive [products].") (Merritt, C.J. concurring).  Apple does

8   not argue, as it cannot, that *its* FairPlay DRM is protected by the DMCA.

9       While, as Apple notes, Plaintiffs acknowledge the record labels' legitimate copyright

10  interests, that is not the end of the DMCA analysis:

11          The statute also contains three "reverse engineering" defenses. A person may
            circumvent an access control measure "for the sole purpose of identifying and
12          analyzing those elements of the program that are necessary to achieve
            interoperability of an independently created computer program with other programs,
13          and that have not previously been readily available to [that person]." 17 U.S.C. §
            1201(f)(1). A person "may develop and employ technological means" that are
14          "necessary" to enable interoperability. *Id.* § 1201(f)(2). And these technological
            means may be made available to others "solely for the purpose of enabling
15          interoperability of an independently created computer program with other programs."
            *Id.* § 1201(f)(3). . . .
16
    *Id.* at 545-46.  The statute defines "interoperability" as "the ability of computer programs to
17
    exchange information, and of such programs mutually to use the information which has been
18
    exchanged." 17 U.S.C. §1201(f)(4).
19
        "Congress added the interoperability provision in part to ensure that the DMCA would not
20
    diminish the benefit to consumers of interoperable devices 'in the consumer electronics
21
    environment.'" *Lexmark*, 387 F.3d at 549 (citing 144 Cong. Rec. E2136 (daily ed. Oct. 13, 1998)
22
    (remarks of Rep. Bliley)).  This case is about "interoperability."[4]
23

24  _____

25  [4]     Apple's quote from the former head of the U.S. Dept. of Justice Antitrust Division
    supporting its interpretation on interoperability (Apple's Motion at 12), besides being of no
26  precedential value, is further undermined by much more recent statements by the current head,
    Christine A. Varney.  Merrick Decl., Ex. 10. The DOJ has repudiated and formally withdrawn the
27  former Section 2 Report which stated that "conduct is only considered anticompetitive where it
    results in harm to competition that is disproportionate to consumer benefits and to the economic
28  benefits to the defendant." *Id.* at 8.  This led to an "overly lenient approach to enforcement." *Id.*

1    Beyond conclusory statements, Apple's Summary Judgment motion does not even attempt to

2  analyze any of the so-called "hacks," how they may or may not have violated the DMCA, or fallen

3  within its agreements with the labels. ████████████████████████████████████████

4  ████████████████████████████████████████████  Further, without an

5  opportunity to conduct discovery on these issues and on the potential "interoperability" defenses, the

6  record is insufficient for the Court to consider a summary judgment motion. Roach Decl., ¶¶4, 26.

7    Finally, it is especially notable that Apple does not contend that RealNetworks' use of

8  Harmony violated the DMCA. *See* Apple's Motion at 10-12. As the Complaint points out,

9  Harmony "was met with approval from the major record labels" and "allowed for compatibility with

10  over 100 Portable Digital Media Players." ¶56; Merrick Decl., Ex. 11. Even if Apple's contentions

11  about other products turn out to be correct, there is no dispute that Harmony did not violate the

12  DMCA.

13    Apple also persists in asking the Court to conclusively accept its factual defense that the

14  music labels, not Apple, were the reason that Apple encrypted its iTS music files to render them

15  inoperable with any make of portable player other than Apple's iPod.[5] Apple's Motion at 11.

16  Specifically, Apple claims that "the labels also required that Apple promptly repair any beaches (sic)

17  of that security." *Id.*[6] However, as previously argued, DRM and interoperability are **not** mutually

18  exclusive concepts. *See* Dkt No. 277 at 6-7; Dkt. No. 165 at 14. The music labels in fact **supported**

19  both DRM **and** interoperability. ████████████████████████████████

20  ████████████████████████████████████████████████████████

21  ████████████████████████████  ; *see also* Dkt. No. 166, Ex. 15, Warner Music Group

22  _____

23  "The Report and its conclusions should not be used as guidance by courts, antitrust practitioners, and
   the business community." *Id.* Mr. Barnett's comments, relied on by Apple, are based on such
24  "conclusions."

25  [5]   Apple's citation to the economic expert of a different plaintiff in a different case (the indirect
   purchaser action filed by Somers) is irrelevant here. *See* Apple's Motion at 12.
26

27  [6] ████████████████████████████████████████████████████████

28

1   F1Q07 Earnings Call Feb. 8, 2007 available at http://seekingalpha.com/article/26496-warner-music-

2   group-f1q07-qtr-end-12-31-06-earnings-call-transcript (Warner Music Group Chairman and CEO

3   advocating label support for interoperability while preserving DRM).

4          Ultimately, it will be for the fact-finder to decide whether Apple used the labels' copyright

5   concerns as a pretext to limit the buyer's choice in portable digital media player through FairPlay

6   with the real goal of precluding interoperability and protecting its own monopoly. *See Image Tech.*

7   *Servs., Inc. v. Eastman Kodak Co.*, 903 F.2d 612, 620 (9th Cir. 1990) (legitimacy of business

8   justifications proffered for anticompetitive conduct presented triable issues of fact).

9   **V.     FOR THE SAME REASONS, PLAINTIFFS' STATE LAW CLAIMS
        SURVIVE**

10

11          For the same reasons as stated above, Plaintiffs' state law claims under the Cartwright Act

12   (Cal. Bus & Prof. Code §16700 *et seq.*), California Unfair Competition Law ("UCL") (Cal. Bus. &

13   Prof. Code §17200 *et seq.*), California Civil Legal Remedies Act ("CLRA") (Cal. Civ. Code §1750

14   *et seq.*), and Common Law Monopolization Business Practices should survive. Plaintiffs' state law

15   claims are based on the same allegations supporting their monopolization and attempted

16   monopolization claims under the Sherman Act and consequently similarly raise genuine issues of

17   material fact. Moreover, should the Court find that Plaintiffs' federal law claims to do not raise

18   issues of material fact, Plaintiffs state law claims are premised on additional allegations that raise

19   genuine issues of material fact and must still survive.

20   **A.     Cartwright Act**

21          Apple contends the Cartwright Act does not include any counterpart to Section 2 of the

22   Sherman Act and therefore Plaintiffs' Cartwright Act claim fails. Apple's Motion at 20. The

23   Cartwright Act is patterned upon the federal Sherman Antitrust Act and both derive their basic

24   provisions from the common law policy against restraint of trade; however, the Cartwright Act is not

25   limited by, or coextensive with, the Sherman Act. *Saxer v. Philip Morris, Inc.*, 54 Cal. App. 3d 7, 19

26   (Cal. Ct. App. 1975). Furthermore, the California Supreme Court has yet to resolve whether the

27   Cartwright Act reaches monopolistic practices by individual firms. *See Bondi v. Jewels by Edwar,*

28   *Ltd.*, 267 Cal. App. 2d 672, 677-78 (1968). "Because the Cartwright Act has objectives identical to

1  the federal antitrust acts, the California courts looks to cases construing the federal antitrust laws for

2  guidance in interpreting the Cartwright Act." *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811,

3  1814 n.1 (1995). As demonstrated above, Apple's conduct is unlawful under federal antitrust laws

4  and similarly Apple's unreasonable restraint of trade or commerce throughout California and the rest

5  of the United States violates the Cartwright Act. *See Lowell v. Mother's Cake Cookie Co.*, 79 Cal.

6  App. 3d 13, 23 (1978) ("[t]hough not specifically listed, monopoly is a prohibited restraint of trade"

7  under the Cartwright Act).

8      **B.      Unfair Competition Law**

9          For the same reasons as stated herein, Apple's actions are "unlawful" under the UCL because

10  they violate the Sherman Antitrust Act, the Cartwright Act, the Consumer Legal Remedies Act and

11  because Apple has monopolized the markets for Audio Downloads and Portable Digital Media

12  Players in violation of California common law.

13          Additionally, California courts have recognized that an unfair business act or practice need

14  not violate an antirust law to be actionable under the UCL. *Chavez v. Whirlpool Corp.*, 93 Cal. App.

15  4th 363, 375 (2001). Where the conduct unreasonably restrains competition and harms consumers,

16  the conduct is deemed unfair. *Id.* Apple undertook specific aggressive actions to entrench its

17  monopolies and subsequently overcharged consumers for the costs of iPods (or, at a minimum,

18  denied the opportunity to purchase a competitive product at a lower price). This unreasonable

19  restraint on competition and harm to consumers is sufficient unfair conduct within the meaning of

20  the UCL.

21      **C.      California Consumers Legal Remedies Act**

22          According to the CLRA, inserting an unconscionable provision in a contract which results in

23  the sale or lease of goods or services to any consumer is unlawful. Cal. Civil Code §1770. Apple's

24  usage rules and upgrade requirements are unconscionable contract provisions that violate the CLRA.

25  Merrick Decl., Ex. 12. Furthermore, Apple's persistent efforts to shut out competitors while

26  providing no additional benefits to consumers through the issuance of unnecessary and non-

27  improving software updates are violations of the CLRA. This conduct by Apple is the exact type of

28  conduct the CLRA was designed to thwart. California Civil Code §1760 expressly provides that the

1    CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to

2    protect consumers against unfair and deceptive business practices and to provide efficient and

3    economical procedures to secure such protection."

4        **D.    Common Law Monopolization**

5        As discussed above, Apple has monopoly power in the Portable Digital Player Market and in

6    the Audio Download Market.  For the same reasons Apple's conduct violates Section 2 of the

7    Sherman Act, Apple's conduct is in violation of California common law prohibiting monopolization.

8        Apple wrongly states that "California law does not recognize a common law monopolization

9    claim."  Apple's Motion at 22.  While there is no direct precedent from the California Supreme

10   Court on the question whether California recognizes a common law claim for damages based upon

11   monopolization, California courts of appeal and federal courts have recognized such a case of action.

12   *See, e.g.*, *In re Cipro Cases I & II*, 121 Cal. App. 4th 402 (Cal. Ct. App. 2004); *Natural Gas Anti-*

13   *Trust Cases I, II, III, & IV*, Nos. 4221, 4224, 4226, 4228, 2002 WL 31570296 (Cal. Sup. Ct. Oct. 16,

14   2002).

15       **E.    Should the Court Find that Plaintiffs' Federal Law Claims Do Not
             Raise Issues of Material Fact, Plaintiffs Request the Court Decline to**
16       **Exercise Jurisdiction Over the State Law Claims**

17       Should the Court find that Plaintiffs' federal law claims to do not raise issues of material fact

18   and dismiss Plaintiffs' federal claims, Plaintiffs ask the Court to decline to exercise jurisdiction over

19   the remaining state law claims so that Plaintiffs may address those state law claims in state court.  It

20   is within a district court's discretion and generally preferable for a district court to remand state law

21   claims to state court.  *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (1991).

22   **VI.    SHOULD THE COURT REQUIRE ADDITIONAL FACTS, PLAINTIFFS
         REQUEST FURTHER DISCOVERY UNDER FED. R. CIV. P. 56(f)**
23
         Plaintiffs believe that the evidence submitted is more than sufficient for this Court to deny
24
     Apple's motion in its entirety.  Nevertheless, should the Court be inclined to rule on any part of
25
     Apple's motion for summary judgment, Plaintiffs respectfully request the right to take certain
26
     discovery to further oppose Apple's motion.
27

28

1    Discovery under Rule 56(f) is meant "to allow parties to avoid the 'premature grant of

2  summary judgment; and court have applied the rule 'with a spirit of liberality.'" *Clement v. Kaiser*

3  *Found. Health Plan, Inc.*, No. CV04-704 WJR (MCx), 2004 WL 3049753, at *2 (C.D. Cal. Dec. 17,

4  2004); *see also Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534 (5th Cir. 1999) (noting

5  that Rule 56(f) requests for discovery "are generally favored, and should be liberally granted"). This

6  is especially true where, as here, the moving party has not provided discovery on issues to which it

7  seeks summary judgment. *See Anderson*, 477 U.S. at 250 n.5 (noting that the nonmoving party's

8  obligation to respond to a motion for summary judgment "is qualified by Rule 56(f)'s provision that

9  summary judgment be refused where the nonmoving party has not had the opportunity to discover

10  information that is essential to his opposition"). Thus, if this Court requires additional evidence

11  from Plaintiffs to raise a genuine issue of material fact, it should deny Apple's premature motion and

12  allow Plaintiffs an opportunity to conduct discovery.

13    The Ninth Circuit has held that it is improper to deny a Rule 56(f) application where a party

14  has not had an adequate opportunity to conduct discovery to oppose a motion for summary

15  judgment. *See Barovich Assocs., Inc. v. Aura Sys., Inc.*, No. 96-55778, 1998 WL 10747 (9th Cir.

16  Jan. 9, 1998).[7] In *Barovich*, the district court granted defendants' motion for summary judgment

17  before plaintiffs had an adequate opportunity to conduct discovery and without addressing plaintiffs'

18  Rule 56(f) application for discovery. Reversing the district court, the Ninth Circuit noted that "'Rule

19  56(f) motions should be granted "***almost as a matter of course***" unless "the nonmoving party has not

20  diligently pursued discovery of evidence."'" *Id.* at *1. Further, "'[s]ummary judgment is especially

21  inappropriate where the material sought is also the subject of outstanding discovery requests.'" *Id.*;

22  *see also* Roach Decl., ¶¶9-15. Plaintiffs need only demonstrate that the requested discovery could

23  "provide[] 'potentially favorable information.'" *Clark v. Cap. Credit & Collection Srvs., Inc.*, 460

24  F.3d 1162, 1178 (9th Cir. 2006). Accordingly, Plaintiffs are entitled to discovery under Rule 56(f) if

25  the Court deems a genuine issue of material fact has not been raised.

26

27  [7]    Plaintiffs cite to *Barovich* pursuant to Ninth Circuit Rule 36-3.

28

1    Plaintiffs currently lack an adequate factual record on which to base a fair and effective

2    response to Apple's summary judgment motion. Indeed, Plaintiffs believe evidence exists that will

3    shed light on the contested issues related to Apple's willful conduct. Specifically, Plaintiffs have

4    commenced but not completed discovery on the following issues: (1) Apple's negotiations and

5    contracts with all record labels; (2) Apple's intention to not license FairPlay; (3) the nature of

6    Apple's agreements with HP and Motorola concerning the use of iTunes on non-Apple products; (4)

7    the technical aspects of Apple's software updates that disabled Harmony; (5) the technical aspects of

8    Harmony; (6) software updates that affected competitors' attempts to achieve interoperability; (7)

9    "hacks"; and (8) whether the alleged software programs intended to create interoperability violated

10   the DMCA. Roach Decl., ¶¶4, 10.

11   Plaintiffs have diligently sought discovery related to these issues and should be permitted to

12   continue their discovery efforts should the Court be inclined to grant Apple's motion. *See id.*, ¶¶9-

13   15. As set forth in the accompanying declaration, Plaintiffs have obtained document production

14   from Apple concerning its use of software updates pursuant to a Rule 30(b)(6) deposition notice

15   *served in April 2009*. *Id.*, ¶¶10, 11. The final production was produced by Apple *the day* Plaintiffs'

16   opposition was to be filed and thus, Plaintiffs need time to review the documents, assess whether

17   additional documents are needed and prepare for and take the related deposition concerning software

18   updates. *Id.*, ¶11. Complete review of these documents and completion of the related deposition

19   will likely reveal additional sources of information that will likewise need to be evaluated. *Id.*, ¶17.

20   Additionally, Plaintiffs have several outstanding document and interrogatory requests that

21   relate directly to the issues raised in Apple's instant motion. *Id.*, ¶¶12-15. These requests concern

22   Apple's response to RealNetworks; Apple's negotiations and contracts with all record labels that

23   provided content on iTS; Apple's communications with the record labels concerning Apple's use of

24   FairPlay, interoperability, and licensing of FairPlay; Apple's relationships with HP and Motorola

25   concerning the use of iTunes on non-Apple products; Apple's costs of issuing the software updates;

26   and drafts of Steve Job's "Thoughts on Music." *Id.*, ¶¶13, 15, 18-24. Plaintiffs have met and

27   conferred with Apple concerning these requests and have identified those that relate directly to

28   Apple's motion. *Id.*, ¶15. Review of these documents will also no doubt reveal additional sources

1    of information to be evaluated.  Upon completion of the relevant discovery production, Plaintiffs

2    also intend to take the deposition of Jeffrey Robbin concerning the issues raised in his declaration

3    filed in support of Apple's Motion. *Id.*, ¶27.

4        Plaintiffs have also served subpoenas on the major record labels concerning *inter alia* their

5    negotiations and contracts with Apple and their reactions to RealNetworks and continue to meet and

6    confer concerning these requests. *Id.*, ¶13.  Plaintiffs should therefore be afforded the opportunity to

7    obtain this discovery and develop a complete record for the Court.

8        Indeed, in the course of reviewing documents produced by Apple to date, Plaintiffs have

9    already uncovered documents that rebut Apple's claims made in this motion and indicate that more

10    evidence exists. *Id.*, ¶18. ███████████████████████

11    ████████████████████████████████████████████

12    ████████████████████████████████████████████

13    ████████████

14        Additionally, Plaintiffs have yet to obtain any discovery related to Apple's contracts and

15    negotiations with the non-major record labels. *Id.*, ¶19.  Public information obtained by Plaintiffs

16    suggests that at least some of the record labels that sold music through iTS did not require DRM

17    protection and thus, it was Apple's decision to apply such restrictions. *See* Merrick Decl., Ex. 6.

18    Further discovery on Apple's communications with the record labels is precisely the type of

19    information Plaintiffs would like to obtain in order to more fully respond to Apple's Motion.

20        For these reasons, should the Court be inclined to rule in favor of Apple on its alternative

21    motion for summary judgment, Plaintiffs should be permitted to seek additional evidence under

22    Rule 56(f).

23

24

25

26

27

28

1  **VII.   CONCLUSION**

2       For the foregoing reasons, Plaintiffs respectfully request that the Court deny Apple's Motion

3  outright.  Alternatively, if the Court would like additional evidence on the issues related to Apple's

4  alternative motion for summary judgment, Plaintiffs request that the Court deny Apple's premature

5  Motion and allow Plaintiffs the opportunity to conduct discovery on the contested issues.

6  DATED:  March 22, 2010                 Respectfully submitted,

7                                          COUGHLIN STOIA GELLER
                                             RUDMAN & ROBBINS LLP
8                                          JOHN J. STOIA, JR.
                                           BONNY E. SWEENEY
9                                          THOMAS R. MERRICK
                                           PAULA M. ROACH

10

11                                                  s/ Bonny E. Sweeney
12                                          BONNY E. SWEENEY

13                                          655 West Broadway, Suite 1900
                                            San Diego, CA  92101
14                                          Telephone:  619/231-1058
                                            619/231-7423 (fax)

15                                          THE KATRIEL LAW FIRM
16                                          ROY A. KATRIEL
                                            1101 30th Street, N.W., Suite 500
17                                          Washington, DC  20007
                                            Telephone:  202/625-4342
18                                          202/330-5593 (fax)

19                                          Co-Lead Counsel for Plaintiffs

20                                          BONNETT, FAIRBOURN, FRIEDMAN
                                             & BALINT, P.C.
21                                          ANDREW S. FRIEDMAN
                                            FRANCIS J. BALINT, JR.
22                                          ELAINE A. RYAN
                                            TODD D. CARPENTER
23                                          2901 N. Central Avenue, Suite 1000
                                            Phoenix, AZ  85012
24                                          Telephone:  602/274-1100
                                            602/274-1199 (fax)

25                                          BRAUN LAW GROUP, P.C.
26                                          MICHAEL D. BRAUN
                                            12304 Santa Monica Blvd., Suite 109
27                                          Los Angeles, CA  90025
                                            Telephone:  310/442-7755
28                                          310/442-7756 (fax)

1

2          MURRAY, FRANK & SAILER LLP
           BRIAN P. MURRAY
3          JACQUELINE SAILER
           275 Madison Avenue, Suite 801
4          New York, NY 10016
           Telephone: 212/682-1818
5          212/682-1892 (fax)

6          GLANCY BINKOW & GOLDBERG LLP
           MICHAEL GOLDBERG
7          1801 Avenue of the Stars, Suite 311
           Los Angeles, CA 90067
8          Telephone: 310/201-9150
           310/201-9160 (fax)

9          Additional Counsel for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTFS' MEMO IN OPPO TO APPLE'S MTD OR ALTERNATIVELY, FOR SUMMARY JUDGMENT -
C-05-00037-JW(HRL)

CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 22, 2010.

                              s/ Bonny E. Sweeney
                             BONNY E. SWEENEY

                             COUGHLIN STOIA GELLER
                                RUDMAN & ROBBINS LLP
                             655 West Broadway, Suite 1900
                             San Diego, CA  92101-3301
                             Telephone:  619/231-1058
                             619/231-7423 (fax)
                             E-mail:bonnys@csgrr.com

# Mailing Information for a Case 5:05-cv-00037-JW

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Todd David Carpenter**
  tcarpenter@bffb.com

- **Andrew S. Friedman**
  rcreech@bffb.com,afriedman@bffb.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com

- **Roy A. Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com

- **Thomas Robert Merrick**
  tmerrick@csgrr.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com,ewallace@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,ybennett@jonesday.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **Paula Michelle Roach**
  proach@csgrr.com

- **Elaine A. Ryan**

eryan@bffb.com,pjohnson@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Michael Tedder Scott**
  michaelscott@jonesday.com,amhoward@jonesday.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **John J. Stoia , Jr**
  jstoia@csgrr.com

- **Bonny E. Sweeney**
  bonnys@csgrr.com,proach@csgrr.com,E_file_sd@csgrr.com,christinas@csgrr.com

- **Helen I. Zeldes**
  helenz@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)