Robert A. Mittelstaedt  #60359
ramittelstaedt@jonesday.com
Craig E. Stewart  #129530
cestewart@jonesday.com
David C. Kiernan #215335
dkiernan@jonesday.com
Michael Scott #255282
michaelscott@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     (415) 626-3939
Facsimile:      (415) 875-5700

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **THE APPLE iPod iTUNES ANTI-TRUST LITIGATION** | Case No. **C 05-00037 JW (HRL)**<br>**C 06-04457 JW (HRL)**<br><br>**DECLARATION OF DAVID C. KIERNAN IN SUPPORT OF APPLE'S REPLY IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**<br><br>Date: May 10, 2010<br>Time: 9:00 a.m.<br>Courtroom 8, 4th Floor<br><br>**REDACTED** |

I, David C. Kiernan, declare as follows:

1.   I am one of the counsel of record for defendant Apple Inc. ("Apple") in this action. I supervise the document review and production process.  I make this declaration in response to the declaration of plaintiffs' counsel, Paula Roach.  Dkt. 347.  I have personal knowledge of the

1   facts set forth herein and, if called as a witness, I could and would testify competently thereto.

2       2.    Apple has produced the agreements between Apple and the major record labels and documents responsive to the document requests attached to a 30(b)(6) deposition notice ("30(b)(6) Requests") that asked for documents related to software updates and to Apple's response to RealNetworks' Harmony. With respect to plaintiffs' 30(b)(6) Requests, the parties agreed that Apple would produce (i) documents that relate to updates to FairPlay, if any, that addressed conduct by competitors or hackers that permitted direct playback of protected iTS files on a non-iPod or permitted direct playback of non-iTS files on an iPod; (ii) documents, to the extent they exist, sufficient to identify such software updates; (iii) documents that relate to Apple's response, if any, to RealNetworks introduction and release of Harmony in 2004; and (iv) communications with the record labels regarding the foregoing updates and Apple's response to RealNetworks Harmony. The parties further agreed that Apple did not have to produce engineering documents, the technical details of FairPlay or the updates to FairPlay, including source code. Apple has complied with this agreement, producing some 1,000 documents (3,700 pages) responsive to those categories.

3.  Of the several categories of information described in Ms. Roach's declaration, many have already been produced. As to the remaining categories, plaintiffs do not identify any specific facts that they contend will preclude summary judgment.

4.  <u>Apple's negotiations and contracts with all record labels (Roach Decl., ¶¶ 18-19).</u>

(a)  Apple has produced the agreements between Apple and the major record labels, Universal, Sony, BMG, UMI, and Warner and nearly all of the amendments to those agreements. Although plaintiffs say (Roach Decl., ¶ 18) that they also need the contract negotiations, they do not identify any specific fact they hope to discover from those negotiations that would preclude summary judgment. Plaintiffs admit (Dkt. 322, ¶ 42) that the major labels required Apple to use DRM and do not dispute that the agreements required Apple to update that DRM to remedy security breaches. Reply pp. 4-6. Because these key points are undisputed, additional discovery is unnecessary.

(b)  Plaintiffs say (Roach Decl., ¶ 18) that emails produced in discovery

- 2 -

Redacted Kiernan Decl. ISO Defendant's Reply
C 05 00037 JW (HRL), C-06-04457 JW (HRL)

1  suggest that the labels did not require Apple to disable Harmony.  As shown in Apple's reply, that

2  issue is irrelevant ██████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████████  *See* Reply,

4  p. 5-6.

5         (c)     Without explanation, plaintiffs contend (Roach Decl., ¶ 18) that they need

6  a response to Interrogatory No. 16, which requests Apple to state the facts that support its

7  contention that "any content provider required" that Apple use FairPlay on files offered on the

8  iTunes Store.  On March 16, 2010, I explained to plaintiffs' counsel that they already have this

9  information: the Robbin declaration and the label agreements show that the major labels required

10 Apple to use content protection as a condition of offering the music on iTunes Store.  And as

11 noted, plaintiffs admitted this in their amended complaint.  (Dkt. 322, ¶ 42).

12        (d)     Plaintiffs say (Roach Decl., ¶ 19) that they need the agreements between

13 Apple and the non-major labels to see if those agreements contained similar provisions.  Apple's

14 reply shows that that issue is irrelevant.  *See* Reply, p. 4-7.

15     5.    <u>Apple's agreements with HP and Motorola and documents relating to the transfer</u>

16 <u>of music from iTunes Store to Motorola mobile phones (Roach Decl., ¶ 20).</u>

17     Plaintiffs contend that they are entitled to documents reflecting Apple's relationships with

18 HP and Motorola to show that cooperation with RealNetworks would not "have been impossible"

19 and would not have "made Apple's products less secure."  As shown in Apple's reply, those

20 relationships are irrelevant to Apple's motion and plaintiffs' opposition.  Reply, pp. 8-10.

21     6.    <u>Drafts of "Thoughts On Music" (Roach Decl., ¶ 21).</u>

22     Plaintiffs say that these drafts are "relevant to Apple's motion" because "Thoughts on

23 Music" discusses the labels' requirement that Apple use DRM and issue software updates "as

24 well as the impossibility of licensing FairPlay or otherwise working with competitors."  Apple

25 has produced the drafts of "Thoughts On Music" located after a diligent search.  Moreover, as

26 noted, the labels' contracts themselves set forth the applicable DRM requirements.  And neither

27 plaintiffs nor their counsel assert that any fact relating to the problems in licensing FairPlay

28 would defeat summary judgment.

7. <u>Costs of issuing software updates (Roach Decl., ¶ 22).</u>

Although plaintiffs assert that this information is relevant to issues in the case, they do not assert that it is "essential" to deciding Apple's motion or explain why the costs of issuing software updates would defeat summary judgment. The grounds for the motion and plaintiffs' opposition do not depend on the cost of issuing updates.

8. <u>Apple's response to RealNetworks (Roach Decl., ¶ 23).</u>

Plaintiffs contend that plaintiffs need a response to Interrogatory No. 14, which requests facts supporting Apple's denial of paragraph 54 of the superseded consolidated complaint that alleges "Apple updated its iPod software to prevent songs downloaded from RealNetworks music store (or any other Online Music store) from being played on iPods." As I explained to plaintiffs' counsel on March 16, 2010, the facts supporting Apple's denial are set forth in the Robbin declaration signed under oath, and the supporting documents include the label agreements and the documents produced in response to the 30(b)(6) Requests.

9. <u>Apple's denial of the allegation that Apple's software updates deterred development of competing products (Roach Decl., ¶ 23).</u>

Plaintiffs contend that plaintiffs need a response to Interrogatory No. 15, which requests facts supporting Apple's denial of paragraph 76 of the superseded consolidated complaint alleging that Apple's software updates "deterred the development of competing products, damaging consumers by depriving them of a choice of products with different and possibly superior sets of features."[1] Plaintiffs offer no explanation why this information is essential to responding to Apple's motion. Whether the updates did or did not deter the development of competing products is not relevant to whether Apple's updates were justified under *Trinko* or *Tyco*. Reply, pp. 2-10. Indeed, plaintiffs' opposition does not argue anything to the contrary.

10. <u>Information relating to burning and ripping (Roach Decl., ¶ 24).</u>

Plaintiffs say that they need information relating to the effect of burning and ripping on sound quantity and whether burning and ripping was permitted under Apple's Terms of Service

---

[1] Paragraph 76 refers to "Apple's anticompetitive conduct." Plaintiffs' amended complaint alleges only that Apple's software updates to FairPlay were anticompetitive.

- 4 -

Redacted Kiernan Decl. ISO Defendant's Reply
C 05 00037 JW (HRL), C-06-04457 JW (HRL)

1 because Apple described the level of interoperability as including "a few additional steps." But
2 the effects of burning and ripping or whether it was permitted under Apple's Terms of Service is
3 not at issue in Apple's motion. The key point, which is undisputed, is that the level of
4 interoperability was the same after the updates as it had been at launch of iTS. *See* Reply, p. 3.
5 Plaintiffs allege that, once the DRM was hacked, Apple had no right to restore it. The effect of
6 burning and ripping is not relevant to that claim—indeed, it is not mentioned in plaintiffs'
7 opposition to Apple's motion.

8     11. <u>Discovery from record labels (Roach Decl., ¶ 25).</u>

9 Plaintiffs contend that they "should be permitted to obtain discovery from the record
10 labels through the subpoenas served on December 11, 2009." They offer no explanation,
11 however, what information from the labels is essential to responding to Apple's motion. As
12 discussed above and in Apple's motion and reply, the material facts are undisputed. Moreover,
13 plaintiffs have had five years to seek whatever information they think they needed from the
14 labels.

15     12. <u>Technical aspects of the updates that disabled Harmony and technical aspects of
16 Harmony (Roach Decl., ¶ 26).</u>

17     (a) Plaintiffs say that they need the information to determine "what aspects of
18 the relevant software updates addressed RealNetworks and when they were designed." [REDACTED]
19 [REDACTED]
20 [REDACTED]
21 [REDACTED]
22 [REDACTED]
23 [REDACTED]
24 [REDACTED] Moreover, in response to the 30(b)(6) Requests,
25 Apple has already produced documents that relate to the challenged updates. Plaintiffs offer no
26 explanation and point to no evidence that would suggest that the technical aspects of the
27 challenged updates would contradict this evidence.
28     (b) Plaintiffs say that they need it to determine whether "Harmony made

1  FairPlay less secure." They have not explained how the technical aspects of updates to FairPlay
2  or the technical aspects of Harmony would support or contradict this point. Apple's motion does
3  not depend on Harmony's effects on FairPlay.

4      (c)    Plaintiffs say that they need it to determine whether Apple would need to
5  cooperate with RealNetworks. But they do not identify any specific facts that they hope to
6  discover from the technical aspects of the updates that would defeat summary judgment.

7      (d)    Plaintiffs say that they need it to determine whether the alleged software
8  programs that circumvented FairPlay violated the DMCA. But they do not explain how the
9  technical aspects of the FairPlay updates or of Harmony would assist in determining that issue.
10 Moreover, as discussed in Apple's motion and reply, plaintiffs do not dispute that the "software
11 programs" circumvented FairPlay to get around the content usage rules. Additional discovery
12 supporting that point is unnecessary. Finally, as shown in Apple's motion and reply, Apple is
13 entitled to summary judgment regardless whether the "software programs" violated the DMCA.

14     (e)    Plaintiffs have not diligently pursued the discovery. Significantly, there is
15 no pending request by plaintiffs for the technical aspects of any updates to FairPlay. Plaintiffs
16 have had a year to seek this information and have not done so. Indeed, as noted above, plaintiffs
17 agreed that Apple did not have to produce this information. *See supra*, ¶ 2. Plaintiffs offer no
18 explanation why they waited until now to seek this information. This is not a new issue. Their
19 consolidated complaint (¶ 53) quotes Apple's 2004 press release regarding Harmony, which
20 stated that "when [Apple] update[s] [its] iPod software from time to time it is highly likely that
21 Real's Harmony technology will cease to work with current and future iPods."
22 
23 Dkt. 346,
24 Ex. 4; *see also* Mot., p. 11, n.12, citing Dkt. 278, Ex. 1. And in November, counsel for Apple
25 explained to the Court that Harmony was disabled by an already-planned update. *See* Ex. 1
26 (November 23, 2009 hearing transcript, p. 18-20). Nevertheless, plaintiffs have never asked
27 Apple for this information.

28     (f)    With respect to the technical aspects of Harmony, Apple has produced all

- 6 -

Redacted Kiernan Decl. ISO Defendant's Reply
C 05 00037 JW (HRL), C-06-04457 JW (HRL)

non-privileged documents related to Harmony that were identified using the search terms agreed to by the parties. Nine months ago, plaintiffs subpoenaed RealNetworks, requesting information relating to Harmony. According to plaintiffs' counsel, RealNetworks explained that it has no documents relating to Harmony.

13.     <u>Decision Not To License FairPlay (Roach Decl., ¶ 4).</u>

Plaintiffs say that they need discovery on Apple's intention not to license FairPlay. They provide no argument why such discovery is essential to deciding Apple's motion or what facts would defeat summary judgment. The only conduct challenged in the amended complaint is Apple's updates to its FairPlay DRM technology. Plaintiffs do not challenge any decision by Apple not to license FairPlay.

14.     <u>Documents Relating To Whether The Hacks Violated The DMCA (Roach Decl., ¶ 4).</u>

Without explanation, plaintiffs say that they need discovery whether the "software programs" that stripped FairPlay violated the DMCA. Plaintiffs have not pursued discovery on this issue. Moreover, as discussed in Apple's motion and reply, plaintiffs do not dispute that the "software programs" circumvented FairPlay to get around the content usage rules. Additional discovery supporting that point is unnecessary. Finally, as shown in Apple's motion and reply, Apple is entitled to summary judgment regardless whether the "software programs" violated the DMCA.

15.     Plaintiffs also contend (Roach Decl., ¶ 17) that they need more time to review documents produced in response to their 30(b)(6) Requests and to take Apple's 30(b)(6) deposition regarding the updates that were issued to stop hacks. They have had sufficient time to do so.

(a)     Before Apple filed its motion on February 22, 2010, Apple produced approximately 681 documents (2,310 pages), which included the vast majority of documents relating to the update to FairPlay included in iTunes 4.7 and Apple's response to Harmony, if any. That update and Apple's response to Harmony, if any, is the focus of plaintiffs' opposition. Over the next 30 days, Apple produced approximately 351 documents (1,438 pages), which contained

- 7 -

Redacted Kiernan Decl. ISO Defendant's Reply
C 05 00037 JW (HRL), C-06-04457 JW (HRL)

1 | more of the same, including duplicates and documents reflecting that the challenged updates were
2 | issued to stop hacks that circumvented FairPlay, and communications from the labels inquiring
3 | about what steps Apple was taking to address the hacks.

4 |    (b) Despite having these documents, plaintiffs postponed the 30(b)(6)
5 | deposition until May 6, 2010.[2] Neither plaintiffs' opposition brief nor supporting declaration
6 | identify any information that shows, much less suggests, that the deposition testimony will
7 | contradict the information in the documents or the Robbin declaration.

8 |   16. Attached as Exhibit 1 is a true and correct copy of a transcript excerpt from the
9 | November 23, 2009 hearing in this matter.

10 |   17. Attached as Exhibit 2 is a true and correct copy of "Apple Unveils Photo iPod" by
11 | Peter Cohen, printed from http://www.pcworld.com/printable/article/id,118339/printable.html on
12 | April 12, 2009.

13 |   18. Portions of this declaration and Apple's Reply contain highly sensitive and
14 | confidential information previously contained in Apple's Motion to Dismiss and the Robbin
15 | Declaration in support thereof. That information was previously sealed by this Court. See Dkt.
16 | 340. As stated in Apple's accompanying Administrative Motion to Seal, Apple's Reply and this
17 | declaration should also be sealed.

18 |   I declare under penalty of perjury that the foregoing is true and correct. Executed on the
19 | 12th day of April, 2010 at San Francisco, California.

20 |
21 |             /s/ David C. Kiernan
22 |             David C. Kiernan

23 | SFI-638065v4

---

[2] In the fall of 2009, I asked plaintiffs' counsel, Mr. Merrick, for available dates for Apple's 30(b)(6) deposition regarding the challenged updates. He responded that plaintiffs did not want to take it until they received all documents responsive to the 30(b)(6) Requests. On February 26, 2010, I proposed April 8, 2010 for the deposition. After a week of not receiving a response, on March 3rd, I offered three more dates in April. On March 19th, plaintiffs' counsel, Tom Merrick, explained that he had a scheduling conflict and that he was trying to determine whether someone else on plaintiffs' litigation team could take it. A week later, Mr. Merrick requested alternative dates. Ultimately, plaintiffs agreed to take the deposition on May 6th.