# EXHIBIT A
Redacted

Case 4:05-cv-00037-YGR    Document 367-1    Filed 04/26/10    Page 1 of 5



**COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS** LLP

SAN DIEGO • SAN FRANCISCO
NEW YORK • BOCA RATON
WASHINGTON, DC • ATLANTA
LOS ANGELES • PHILADELPHIA

Thomas R. Merrick
TMerrick@csgrr.com

June 18, 2009

<u>VIA ELECTRONIC MAIL ONY</u>

Robert A. Mittelstaedt
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104

    Re:   *The Apple iPod iTunes Anti-Trust Litigation*
           No. C-05-00037-JW (N.D. Cal.)

Dear Bob:

    I write regarding the scope of Plaintiffs' 30(b)(6) deposition topics and related document requests. Below, I first address the list of software updates produced by Apple on May 27, 2009, as a compromise to full document production. Second, I discuss Plaintiffs' proposal regarding document production intended to supplement discovery on the narrowed software updates list.

## SOFTWARE UPDATES LIST

    During our May 6, 2009 telephonic meet and confer on the scope of Plaintiffs' 30(b)(6) topics and document requests related to software updates, Apple expressed that the topics were too broad, went beyond the scope of Plaintiffs' claims and would be overly burdensome for Apple to respond. In compromise, Apple agreed to produce "a summary of the various software updates" so that Plaintiffs could determine which software updates to seek additional detail, either by document production or testimony. *See* 5/6/09 Mittelstaedt Email. Apple also recognized that Plaintiffs are "particularly interested in late 2004 updates" which are relevant to the RealNetworks incident alleged in the Complaint. *See id.* Plaintiffs also agreed to delay the noticed date of deposition and the time for responding to the notice and requests. Plaintiffs reserved their rights to seek compliance with the entire notice and requests and Apple reserved its right to object or move for protective order.

    Under this compromise, Plaintiffs understood that Apple would produce documents depicting the nature of the software updates such that Plaintiffs could determine which software updates they would need more information on. Plaintiffs do not believe the information produced is sufficient to achieve this end. The information provided lacks



Robert A. Mittelstaedt
June 18, 2009
Page 2

necessary detail on the purpose of the updates and does not appear to be inclusive of all of the relevant updates. Additionally, the list appears to be "cut and pasted" into a document from multiple sources and even includes random editorial comments. Without more information, Plaintiffs are unable to sufficiently narrow the list of software updates for purposes of deposition.

Thus, Plaintiffs have selected software updates from the produced list that may or may not be the future subject of deposition and request more information on the purpose and content of the narrowed list of updates. *See* Attached Chart. To the extent Plaintiffs request information on only one dated entry for a particular iTunes update, that date is identified. Where no date is identified, Plaintiffs request information on the entire set of updates for that particular iTunes version. As an initial step and to further minimize the burden of this request, Plaintiffs request a sample of the type of information that is available concerning the purpose and content of the identified software updates. Plaintiffs are hopeful that after review of this information they will be able to further narrow the list of software updates for which additional discovery or deposition will be sought. This proposal, however, in no way waives Plaintiffs' right to seek discovery concerning additional or all software updates.

Plaintiffs also request general information about the list of updates produced by Apple so that Plaintiffs may put the information in appropriate context. Accordingly, Plaintiffs request: (1) the source of the information; (2) whether information on software updates is kept in this form in the regular course of business; and (3) the source of the commentary for particular updates. *See, e.g.,* 3.0a4; 4.1d1 (5/28/03); 6.0.2d15/6.0.2.15.

## PLAINTIFFS' PROPOSED COMPROMISE ON DISCOVERY PRODUCTION

As an initial matter, Plaintiffs have concerns regarding Apple's "Privilege Objection" and "Sufficient to Show Objection." With respect to the "Privilege Objection," Plaintiffs are concerned that, as phrased, the objection could be read to allow Apple to withhold critical information well beyond what is normally protected. It is our understanding that Apple has consistently anticipated litigation against any third party that attempted to find a way for non-iTunes digital audio files to be played directly on an iPod and/or for iTunes digital audio files to be played directly on a non-iPod. Read broadly, the "Privilege Objection" would allow Apple to withhold information regarding software updates to block these efforts because they were "taken during or in anticipation of litigation." For example, the RealNetworks dispute detailed in the Consolidated Complaint could have lead to litigation and Apple has in the past aggressively pursued protection of its perceived interests through the use of cease and desist letters. Please confirm that it is not Apple's intention to rely on its "Privilege Objection" to withhold such obviously relevant and responsive information.

With respect to Apple's "Sufficient to Show Objection," Plaintiffs are unaware of the legal basis for this objection and are unclear as to what exactly Apple has in mind when it



**COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP**

Robert A. Mittelstaedt
June 18, 2009
Page 3

states that its "production will be on a 'Sufficient to Show' basis." Plaintiffs are willing to meet and confer on the scope of their requests, but do not agree to Apple unilaterally deciding what it believes is "sufficient" for Plaintiffs to prove their case.

Additionally, Plaintiffs propose the following compromise on the below document requests. Plaintiffs believe this will provide information necessary to supplement the requested software update information and will place the minimum burden on Apple possible. Accordingly, Plaintiffs propose that Apple, in addition to the above, respond to Document Request Nos. 3, 5, 7, and 8 with the following limiters. Plaintiffs, however, continue to reserve their right to seek full production of all information responsive to their requests.

**Request No. 3**

Request No. 3 seeks production of all documents and communications that discuss or otherwise memorialize the effects of any software update on a competitor. Plaintiffs propose to limit this request to seek production of all documents and communications that discuss or otherwise memorialize software updates intended to address conduct which permitted the direct playback of non-iTunes digital audio files on an iPod and/or the direct playback of iTunes digital audio files on a non-iPod.

Plaintiffs understand, based on public information, that Apple has issued software updates intended to address, at least in part, competitors' attempts, whether legal or illegal, to enable the direct playback of non-iTunes digital audio files on an iPod and/or the direct playback of iTunes digital audio files on a non-iPod. Plaintiffs are particularly interested in documents or communications that discuss these updates. To the extent Apple asserts its "Privilege Objection," please provide a privilege log which will enable Plaintiffs to evaluate Apple's privilege claims.

**Request No. 5**

Request No. 5 seeks production of all documents and communications which propose, describe, explain, address, analyze or otherwise relate to Apple's response to RealNetwork's introduction of Real's Harmony in 2004. Plaintiffs seek documents responsive to this entire request. In 2004, Apple publically stated: "We strongly caution Real and their customers that when we update our iPod software from time to time it is highly likely that Real's Harmony technology will cease to work with current and future iPods." Plaintiffs seek discovery on these updates. To the extent these updates are included in the produced list of updates referenced above, please identify them specifically. Additionally, if Apple asserts its "Privilege Objection," please provide a privilege log which will enable Plaintiffs to evaluate Apple's privilege claims.



Robert A. Mittelstaedt
June 18, 2009
Page 4

**Request No. 7**

This request seeks production of all communications between Apple and the labels concerning software updates. The term "labels" is intended to mean the major record labels which Apple has contracted with to purchase and resell music to consumers and which contracts have been previously produced to Plaintiffs. Redacted
Plaintiffs seek production of the communications made pursuant to the contracts and any other communications between Apple and the record labels concerning software updates that sought to address "hacks" or breaches which permitted or attempted to permit the direct playback of non-iTunes digital audio files on an iPod and/or the direct playback of iTunes digital audio files on a non-iPod, whether the communications were made pursuant to contract or not.

**Request No. 8**

Request No. 8 seeks production of all documents which depict the organizational relationship of all Apple employees or consultants who propose, originate, develop, manage, create, or otherwise contribute to the generation of each software update. Plaintiffs seek documents responsive to this request which concern software updates related to the direct playback of digital audio files on portable digital media players. To the extent Apple asserts its "Privilege Objection," please provide a privilege log which will enable Plaintiffs to evaluate Apple's privilege claims.

We remain hopeful that the parties can come to an agreement on the pending discovery without intervention of the court. Please do not hesitate to call me or Paula Roach if you have any questions.

Very truly yours,

*Thomas Merrick /pm*

THOMAS R. MERRICK

TRM:sll
Attachment

cc:   Bonny E. Sweeney
      Paula M. Roach
      Frank J. Balint
      David C. Kiernan

S:\CasesSD\Apple Tying\Corres\TRM_Middlestat 61709.doc