1

2

3

4

5

6 IN THE UNITED STATES DISTRICT COURT

7 FOR THE NORTHERN DISTRICT OF CALIFORNIA

8 SAN JOSE DIVISION

9 The Apple iPod iTunes Anti-Trust Litigation

NO. C 05-00037 JW
NO. C 07-06507 JW

10 _____/

11 Stavie Somers,

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; DENYING AS PREMATURE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING INDIRECT PURCHASER PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT**

12                    Plaintiff,

13        v.

14 Apple, Inc.

15                    Defendant.

16 _____/

17        Presently before the Court is Apple's Motion to Dismiss or Alternatively, for Summary

18 Judgment as to the Direct Purchaser Action[1] and the Court's Order to Show Cause re: Dismissal as

19 to the Indirect Purchaser Action.[2]

20        The Court conducted a hearing on May 10, 2010.  Based on the papers submitted to date and

21 oral argument, the Court GRANTS in part and DENIES in part Apple's Motion to Dismiss, and

22 DENIES as premature Apple's Motion for Summary Judgment.  The Court VACATES its Order to

23 Show Cause re: Dismissal as to the Indirect Purchaser Action and GRANTS the Indirect Purchaser

24 Plaintiff leave to file an Amended Complaint.

25 _____

26        [1] (hereafter, "Motion" (filed under seal, Docket Item Nos. 338, 341; redacted version filed as
Docket Item No. 325.)

27

28        [2] (See Docket Item No. 303.)  As in previous orders in this case, the "Indirect Purchaser
Action" refers to the related case of Somers v. Apple, No. 07-6507 JW.

United States District Court

For the Northern District of California

## A.   Background

A detailed outline of the factual allegations and procedural history in this case may be found in the Court's December 22, 2008 class certification order.[3]  The Court reviews the relevant alleged facts and procedural history to the extent they implicate the present Motions.

On October 30, 2009, the Court issued an Order Granting Defendant's Motion for Judgment on the Pleadings as to the First Cause of Action for Violations of Section 1 of the Sherman Act and the Fifth Cause of Action for Violations of the Cartwright Act.  (hereafter, "October 30 Order," Docket Item No. 274.)  In its October 30 Order, the Court found that Plaintiffs failed to state a tying claim pursuant to Section 1 of the Sherman Act, under either a *per se* or rule of reason analysis, on the ground that Plaintiffs' allegations of a technological interrelationship between iTunes and iPods did not amount to a coercive tie.  (October 30 Order at 10.)

On December 21, 2009, in addressing the parties' various motions for class certification and class decertification, the Court found that it could not determine whether Plaintiffs' monopolization claims under Section 2 of the Sherman Act were susceptible to resolution on a class-wide basis because Plaintiffs' allegations of technology changes that could support such claims were inextricably woven with allegations about technology decisions made before the products were first introduced to the market.[4]  In order to give consideration to class definitions based on clearly stated monopolization claims delineating what anticompetitive conduct Apple is alleged to have engaged in and when it allegedly took place, the Court vacated its prior Order certifying Rule 23(b)(2) and 23(b)(3) classes and invited Plaintiffs to submit an Amended Consolidated Complaint that did not depend upon allegations of tying as the anticompetitive conduct upon which they base their

---

[3]  (Order Granting Plaintiffs' Motion for Class Certification as to Counts Two, Three, Four, Five, Six, and Seven Only and Appointing Class Counsel; *Sua Sponte* Order Reconsidering Defendant's Motion to Dismiss Count One and Requiring Further Briefing, hereafter, "December 22 Order," Docket Item No. 196; see also Order Denying Defendant's Motion to Dismiss, Docket Item No. 27.)

[4]  (Order Decertifying Classes Without Prejudice to Being Renewed; Inviting Further Motions at 10, hereafter, "December 21 Order," Docket Item No. 303.)

2

1    monopolization claims.  (Id. at 11.)  On January 26, 2010, Plaintiffs filed an Amended Consolidated

2    Complaint.[5]

3    **B.    Standards**

4        **1.    Motion to Dismiss**

5        Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against

6    a defendant for failure to state a claim upon which relief may be granted against that defendant.

7    Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient

8    facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699

9    (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984).  For

10   purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the

11   complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v.

12   City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be resolved

13   in favor of the pleading.  Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

14       However, mere conclusions couched in factual allegations are not sufficient to state a cause

15   of action.  Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845

16   F.2d 802, 810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim for relief

17   that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is

18   plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

19   reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129

20   S. Ct. 1937, 1949 (2009).  Thus, "for a complaint to survive a motion to dismiss, the non-conclusory

21   'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a

22   claim entitling the plaintiff to relief."  Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

23   Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by

24   amendment.  Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

25   _____

26       [5] (Amended Consolidated Complaint for Violations of Sherman Antitrust Act, Clayton Act,
     Cartwright Act, California Unfair Competition Law, Consumers Legal Remedies Act, and California
27   Common Law of Monopolization, hereafter, "ACC," Docket Item No. 322.)

28

United States District Court
For the Northern District of California

**2.     Motion for Summary Judgment**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion . . . ." Id. at 323. "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The non-moving party "may not reply merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g., Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

**United States District Court**
For the Northern District of California

1    **C.**      **Discussion**

2         **1.**      **Motion to Dismiss**

3              **a.**      **Section 2 of the Sherman Act**

4    Defendant moves to dismiss Plaintiffs' Section 2 claim on the ground that it was not an

5    anticompetitive act for Defendant to maintain and improve the functionality of its software even

6    though that action destroyed the interoperability of a competing music player with iTunes. (Motion

7    at 8-10.)

8         To state a claim for monopolization, a plaintiff must allege that (1) the defendant possesses

9    monopoly power in the relevant market, (2) the defendant has willfully acquired or maintained that

10   power, and (3) the defendant's conduct has caused antitrust injury. Cost Mgmt. Servs. v.

11   Washington Natural Gas, 99 F.3d 937, 949 (9th Cir. 1996); Foremost Pro Color, Inc. v. Eastman

12   Kodak Co., 703 F.2d 534, 543 (9th Cir. 1983).

13        Here, Defendant does not contest the sufficiency of Plaintiffs' Amended Consolidated

14   Complaint as to the first and third elements, thus the Court's analysis will focus on the second

15   element. As the Court stated in its December 21 Order, to satisfy the requirement for alleged willful

16   conduct, Plaintiffs must allege facts showing that Apple engaged in anticompetitive conduct, with

17   the specific intent to control prices or destroy competition, beyond the technological interoperability

18   of iPods and media sold through the iTS. See Foremost Pro Color, Inc v. Eastman Kodak Co., 703

19   F.2d 534 (9th Cir. 1983).

20        In support of their Section 2 cause of action, Plaintiffs allege, in pertinent part:

21             In order to maintain its monopoly power in the market for Audio Downloads and the
               market for Digital Media Players, Apple has used software updates to shut out competitors
22             and cut off their access to the marketplace. (ACC ¶ 52.) Apple's anticompetitive tactics
               were intended to, and had the effect of, preventing and/or delaying entry of competitive
23             products that threatened Apple's monopolies in the relevant product markets. (Id.)
               On July 26, 2004, RealNetworks, a rival seller of Audio Downloads, announced that
24             songs sold through its online store could be played on the iPod in addition to other
               competing Portable Digital Music Players. (ACC ¶ 53.) The technology that RealNetworks
25             used to convert its Helix DRM into the necessary DRM so that Audio Downloads sold
               through RealNetworks' online store could be played on Apple's iPod was called Harmony.
26             (Id.) RealNetworks began selling its Audio Downloads for as low as 49 cents per track,
               while Apple continued to charge 99 cents per track. (Id. ¶ 53.) Beginning in October 2004,

27

28                                               5

Apple updated its iPod and iTunes software to prevent songs downloaded from RealNetworks' music store from being played on iPods. (Id. ¶ 60.)

Apple also issued several software updates intended to prevent Audio Downloads purchased from the iTunes Store ("iTS") from being played on competing Portable Digital Media Players. (ACC ¶ 63.) In or about the beginning of 2005, a software program known as JHymn was developed so that Audio Downloads purchased from iTS could be played on any AAC-compatible music player, including Apple's iPod or any non-Apple device. (Id. ¶ 64.) Apple immediately began issuing software updates to prevent iTS files that were made interoperable with other Portable Digital Media Players using JHymn software from being played. (Id. ¶ 65.) In October 2005, iTunes 6.0 was released and included changes specifically intended to stop JHymn and other similar software programs. (Id.) Again in September 2006, Apple released iTunes 7.0 intended to prevent JHymn and other programs from being used to create interoperability between Audio Downloads purchased from iTS and non-Apple Portable Digital Media Players. (Id. ¶ 66.) Throughout the Class Period, Apple issued software updates intended to prevent the use of other similar programs including QTFairUse and PlayFair. (Id.)

Apple continually redesigned its software even though it admitted that doing so served no genuine antipiracy purpose. (ACC ¶ 67.) The record companies that contractually required DRM did not require all of the anticompetitive software updates issued by Apple. (Id.)

The Court finds that Plaintiffs has alleged facts, which if proven true, would suffice to hold Defendant liable under Section 2 of the Sherman Act. Specifically, Plaintiffs allege that Defendant used software updates to maintain its monopolies in both the digital media and portable digital media player markets by preventing competing online music stores from offering customers digital files that could be played on the iPod, and by preventing competing music players from being able to play digital files purchased from the iTS. Plaintiffs' Amended Consolidated Complaint does not premise its Section 2 cause of action on the technological interoperability of the iPod and iTunes products. Instead, Plaintiffs rely on allegations of conduct directed at preventing interoperability with competing products rather than merely maximizing interoperability between its own products. Thus, Plaintiffs' allegations, if proven true, would satisfy the second element of a claim for monopolization under Section 2 of the Sherman Act.

Defendant contends that the Court should dismiss Plaintiffs' monopolization claim on the same ground that it dismissed Plaintiffs' *per se* and rule of reason tying claims–namely, that "[t]he increased convenience of using the [iPod and iTS music] together due to technological compatibility does not constitute anticompetitive conduct." (October 30 Order at 9-10.) In support of its contention, Defendant relies on <u>Foremost Pro</u>, in which the Ninth Circuit found that "[b]ecause the

6

conduct [the plaintiff] alleged in support of its section 1 tying claim is not anticompetitive, it is of no assistance to [the plaintiff's] efforts to state a claim for relief for monopolization or attempted monopolization, both of which require at least some allegation of anticompetitive conduct."  703 F.3d at 543.  However, Defendant overlooks Plaintiffs' allegations of anticompetitive conduct that go beyond the introduction of technologically-interrelated products, which the Ninth Circuit found could not support a tying or monopolization claim in <u>Foremost Pro</u>.  As previously discussed, Plaintiffs' allegations that Defendant used software updates to cut off Harmony's compatibility with iPods do not directly relate to the interoperability of the iPod and iTunes products.  In fact, Defendant itself does not contend that the purpose of the software updates was to maximize interoperability between its products, but instead contends that the updates were aimed at stopping hacks and complying with agreements with record labels.  (Motion at 4.)  Since Plaintiffs allege a factual basis for their monopolization claim distinct from the factual basis for their tying claims, the reasoning that led the Court to dismiss Plaintiffs' tying claims does not apply to their monopolization claims.

Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' Section 2 claim.

### b.    State Law Claims

In addition to Plaintiffs' Section 2 claim, Defendant moves to dismiss Plaintiffs' state law claims under the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, *et seq.*, the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770, and the common law of monopolization business practices. (Motion at 19-22.)

### i.    Cartwright Act

Defendant moves to dismiss Plaintiffs' Cartwright Act claim on the ground that Plaintiffs only allege single-firm, unilateral conduct.  (Motion at 20.)

The Cartwright Act "prohibits the combination of resources of two or more independent interests for the purpose of restraining commerce and preventing market competition in the variety of ways listed in the statute."  <u>Lowell v. Mother's Cake & Cookie Co.</u>, 79 Cal. App. 3d 13, 23 (Cal.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Ct. App. 1978).  Although the statute does not expressly list monopolization or attempted monopolization as prohibited conduct, the Ninth Circuit has recognized that combinations between two or more independent entities to monopolize fall within the general prohibitions of that statute. Dimidowich v. Bell & Howell, 803 F.2d 1473, 1478 (9th Cir. 1986).  However, a claim that fails to allege any combination is not cognizable under the Cartwright Act.  Id.

Here, Plaintiffs allege only that the unilateral conduct of Defendant Apple was anticompetitive.  Since a claim under the Cartwright Act must involve a combination, Plaintiffs' claim fails as a matter of law.  The authority that Plaintiffs rely on in their Opposition supports this outcome.  See Bondi v. Jewels by Edwar, Ltd., 267 Cal. App. 2d 672, 678 (Cal. Ct. App. 1968).  In Bondi, the court acknowledged that the Cartwright Act "contemplates concert of action by separate individuals or entities maintaining separate and independent interests," and on that basis affirmed the dismissal of a Cartwright Act claim that alleged "only wrongful conduct on the part of a single entity acting through its officers and agents."  Id.

Accordingly, the Court GRANTS Defendant's Motion to Dismiss as to Plaintiffs' claim under the Cartwright Act with prejudice.

### ii.   UCL

Defendant moves to dismiss Plaintiffs' UCL claim on the ground that it is premised on Plaintiffs' Section 2 claim.  (Motion at 20.)  In light of the Court's finding that Plaintiffs have adequately stated a Section 2 claim, Plaintiffs have also adequately stated a UCL claim under the "unlawfulness" prong.

Accordingly, the Court DENIES Defendant's Motion to Dismiss as to Plaintiffs' UCL claim.

### iii.   CLRA

Defendant moves to dismiss Plaintiffs' CLRA claim on the ground that the narrow scope of the CLRA does not encompass the type of conduct alleged in Plaintiffs' Complaint.  (Motion at 21.) Plaintiffs respond that Defendant's usage rules and upgrade requirements are unconscionable contract provisions that violate the CLRA and that Defendant's efforts to shut out competitors while

1  providing no additional benefits to consumers through the use of unnecessary and non-improving

2  software updates are violations of the CLRA.  (Opposition at 20.)

3       The CLRA makes it an unlawful practice for "any person in a transaction intended to result

4  or which results in the sale or lease of goods or services to any customer" to "[i]nsert[] an

5  unconscionable provision in the contract."  Cal. Civ. Code § 1770.  Under California law,

> [a] court may deem a contract provision unconscionable, and therefore unenforceable, only if
> it is both procedurally and substantively unconscionable.  "The procedural element of
> unconscionability focuses on two factors: oppression and surprise.  'Oppression' arises from
> an inequality of bargaining power which results in no real negotiation and 'an absence of
> meaningful choice.'  'Surprise' involves the extent to which the supposedly agreed-upon
> terms of the bargain are hidden in a prolix printed form drafted by the party seeking to
> enforce the disputed terms."  The substantive element of unconscionability focuses on the
> actual terms of the agreement and evaluates whether they create "overly harsh" or "one-
> sided" results as to "shock the conscience."

11  Belton v. Comcast Cable Holdings, LLC, 151 Cal. App. 4th 1224, 1245 (Cal. Ct. App. 2007)

12  (internal citations omitted).

13       Here, Plaintiffs allege that Defendant "unconscionably exploits [its] unequal bargaining

14  power by imposing prices, contractual terms, and one sided technological restrictions into contracts

15  with consumers in the Audio Download Market and Portable Digital Media Markets."  (ACC ¶ 127.)

16  The Court finds that Plaintiffs' allegation is too vague and conclusory to adequately state a claim

17  under the CLRA.  Furthermore, even if Defendant exploited its unequal bargaining power in

18  negotiating with customers, Plaintiffs do not allege any facts indicating that Defendant's customers

19  were robbed of any "meaningful choice," that the terms of Defendant's contracts were in any way

20  hidden from customers, or that the terms of the agreement were so harsh or one-sided so as to shock

21  the conscience.  Moreover, Plaintiffs do not cite any statutory provision or legal authority to support

22  their contention that shutting out competitors through the use of software updates violates the

23  CLRA.

24       Accordingly, the Court GRANTS Defendant's Motion to Dismiss as to Plaintiffs' CLRA

25  claim with prejudice.

26

27

28

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#### iv.    Common Law Monopolization

Defendant moves to dismiss Plaintiffs' common law monopolization claim on the ground that no such cause of action is recognized under California law.  (Motion at 22.)

Although the California Supreme Court has not addressed the issue directly, federal courts that have recently considered whether California law recognizes a common law monopolization claims have found that it does not.  See, e.g., Lorenzo v. Qualcomm, Inc., 603 F. Supp. 2d 1291, 1305-06 (S.D. Cal. 2009); In re: Intel Microprocessor Antitrust Litig., 496 F. Supp. 2d 404, 420 (D. Del. 2007) (holding that a "[c]laim for damages based upon the common law tort of monopolization is not cognizable under California law").

Plaintiffs rely on two California cases in support of their contention that California recognizes a common law monopolization cause of action.  One of those cases, In re Cipro Cases I and II, was decided on a motion for class certification, and thus did not directly address the merits of the plaintiff's common law monopolization claim.  121 Cal. App. 4th 402 (Cal. Ct. App. 2004).  The other, In re Natural Gas Anti-Trust Cases, Cases I, II, III, & IV, is an unpublished trial court decision, and thus has no precedential value in this case.  2002 WL 31570296, at *3 (Cal. Superior Ct. October 16, 2002).

Since California law does not recognize a common law claim for damages based upon monopolization, Plaintiffs' common law monopolization claim fails as a matter of law.  Accordingly, the Court GRANTS Defendant's Motion to Dismiss as to Plaintiffs' common law monopolization claim with prejudice.

### 2.    Motion for Summary Judgment

In the alternative to the Motion to Dismiss, Defendant contends that it is entitled to summary judgment as to Plaintiffs' Section 2 claim on the grounds that: (1) the software updates were not willful exclusionary conduct, and Apple had valid business reasons to issue them; (2) the updates were product improvements and thus cannot give rise to Section 2 liability; and (3) Apple has no

United States District Court

For the Northern District of California

1    antitrust duty to deal with RealNetworks.[6]  Plaintiffs respond that there is a genuine issue of material

2    fact as to whether Defendant used software updates to willfully maintain its monopoly power, and

3    they alternatively contend that further discovery is warranted pursuant to Federal Rule of Civil

4    Procedure 56(f) before the Court can finally resolve the Section 2 claim.[7]  The Court considers these

5    issues in turn.

6                      **a.      Business Justification**

7          Defendant contends that it cannot be held liable under Section 2 for redesigning its FairPlay

8    digital rights management ("DRM") software because it was acting to protect its content from hacks

9    and to comply with contractual obligations to record labels.  (Motion at 10-12.)

10          Once a plaintiff demonstrates that a defendant took exclusionary action to maintain a

11   monopoly, liability turns on whether "valid business reasons" can explain the defendant's actions.

12   Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 483 (1992); see also United

13   States v. Microsoft, 253 F.3d 34, 59 (D.C. Cir. 2001) ("[I]f a plaintiff successfully establishes a

14   prima facie case under § 2 by demonstrating anticompetitive effect, then the monopolist may proffer

15   a 'procompetitive justification' for its conduct.").  In Eastman Kodak, the Supreme Court rejected

16   the defendant's claimed business justifications for its exclusionary actions on the ground that the

17   plaintiffs had "presented evidence from which a reasonable trier of fact could conclude that [the

18   defendant's justifications were] pretextual."  253 F.3d at 484.  Thus, the validity of a claimed

19   business justification is a question of fact.

20          Here, in support of its justification for updating its DRM software in a manner that prevented

21   continuing compatibility with competing products, Defendant presents the Declaration of its Vice

22

23

24   _____

25        [6] (Apple's Reply in Support of Motion to Dismiss or, Alternatively, for Summary Judgment
     at 4, hereafter, "Reply" (filed under seal).)

26

27        [7] (Plaintiffs' Opposition to Apple's Motion to Dismiss or, Alternatively, for Summary
     Judgment at 9, 21-24, hereafter, "Opposition" (filed under seal.).)

28                                               11

President of iTunes and Apple TV Engineering, Jeffrey Robbin.[8]  In his Declaration, Robbin

describes the agreements that Defendant entered into with various major record labels that permitted

Defendant to distribute music through the iTS, but in exchange required it to enact certain security

measures to limit copying and transfer of the music files and to repair any breaches of those

protections.  (Robbin Decl. ¶ 2.)  Robbin further describes various attempts by hackers to strip the

content protection from music files sold through iTS, and how Defendant responded to the hacks by

issuing software updates to restore the original level of content protection.  (<u>Id.</u> ¶¶ 4-8.)  Defendant

also provides a copy of an agreement between Defendant and a major record label which on its face

requires Defendant to take action to remedy any breaches of the security of music files.  (<u>Id.</u>, Ex. A

at ¶ 9(b)).

    In response, Plaintiffs contend that the descriptions of the hacks provided in Robbins'

Declaration are cursory and do not provide sufficient information regarding how they may have

violated the Digital Millennium Copyright Act ("DMCA") or fallen within the scope of Defendant's

contractual obligations to major record labels.  (Opposition at 18.)  Furthermore, Plaintiffs contend

that they have not had an adequate opportunity to conduct discovery on issues related to the threat

from hackers or Defendant's response to that threat, and thus the record is currently insufficient to

consider a summary judgment motion.  (<u>Id.</u>)

    The Court finds that the Declaration of one of Defendant's own employees is an insufficient

basis upon which to find that there is no triable issue of fact as to Defendant's claimed business

justification in the face of Plaintiffs' request for further discovery under Federal Rule of Civil

Procedure 56(f).  The Robbin Declaration provides little detail as to the nature of the hacks and how

they worked, or the manner in which Defendant's software updates addressed the threat posed by the

hacks.  Furthermore, the temporal proximity between RealNetworks' announcement of its iPod-

compatible Harmony technology in July 2004 and the release of iTunes 4.7, which ended that

_____

    [8]  (Declaration of Jeffrey Robbin in Support of Defendant's Motion to Dismiss or in the
Alternative Motion for Summary Judgment, hereafter, "Robbin Decl." (filed under seal).)  Since the
Declaration is filed under seal, the Court will only describe its contents in general terms.

compatibility, in October 2004 raises questions about the real purpose of Defendant's software redesign that Plaintiffs should at least have an opportunity to explore through additional discovery. The issue then becomes whether Rule 56(f) provides a basis for providing Plaintiffs with such an opportunity to present the Court with a more complete record before finally resolving Plaintiffs' Section 2 claim.

### b.   Rule 56(f)

Plaintiffs ask the Court to postpone a final ruling on Defendant's Motion for Summary Judgment to allow them to complete discovery.  (Opposition at 21-24.)

Federal Rule of Civil Procedure 56(f) provides:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

The Ninth Circuit has set out the requirements of Rule 56(f) as follows:

> To prevail under this rule, parties opposing a motion for summary judgment must make (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists.  The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment.

Blough v. Holland Realty, Inc., 574 F.3d 1084, 1091 n.5 (9th Cir. 2009) (internal citations and quotations omitted).

Courts deny Rule 56(f) requests where the movant has failed to diligently pursue previous opportunities for discovery.  Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1026-27 (9th Cir. 2006).  In general, summary judgment should not be granted while pertinent discovery requests are outstanding or while an opposing party timely seeks discovery of potentially favorable information.  Garrett v. City and County of San Francisco, 818 F.2d 1515, 1519 (9th Cir. 1987).

United States District Court
For the Northern District of California

13

United States District Court

For the Northern District of California

In support of its Rule 56(f) application, Plaintiffs provide the Declaration of their Co-Lead Counsel, Paula Roach.[9]  In her Declaration, Roach states that Plaintiffs need additional discovery in the following areas: (1) Apple's negotiations and contracts with all record labels, (2) Apple's intention not to license FairPlay, (3) the nature of Apple's agreements with HP and Motorola concerning the use of iTunes on non-Apple products, (4) the technical aspects of Apple's software updates that disabled Harmony, (5) the technical aspects of Harmony, (6) software updates that affected competitors' attempts to achieve interoperability, (7) "hacks," and (8) whether the alleged software programs intended to create interoperability violated the DMCA.  (Roach Decl. ¶¶ 4, 10.) Roach further declares that Plaintiffs have diligently sought discovery on these matters and they have obtained document production from Defendant concerning its use of software updates pursuant to a Rule 30(b)(6) deposition notice served in April 2009.  (Id. ¶¶ 9-15.)  However, Roach states that Defendant's final document production occurred on the same day that the Opposition to Defendant's Motion for Summary Judgment was due, and thus Plaintiffs need additional time to review the documents and depose the Rule 30(b)(6) witness regarding software updates.  (Id. ¶ 11.)  Plaintiffs also have several outstanding document and interrogatory requests that are relevant to Defendant's present motion.  (Id. ¶¶ 12-15, 18-24.)

Upon review of the Roach Declaration, the Court finds that Plaintiffs have satisfied the requirements of Rule 56(f).  Plaintiffs made their Rule 56(f) application in their Opposition to Defendant's Motion for Summary Judgment, so it is timely.  Although Plaintiffs state their need to pursue discovery in several broad areas, they also identify a number of specific documents and interrogatory responses that they have requested from Defendants, including documents that have already been produced that they have not as yet had adequate time to review, as well as depositions of two specific witnesses, the Rule 30(b)(6) witness and Jeffrey Robbin, that they plan to take. Since Defendant's Motion for Summary Judgment hinges in large measure on its contention that its

---

[9]  (Declaration of Paula M. Roach Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure in Support of Plaintiffs' Opposition to Apple's Motion to Dismiss or, Alternatively, for Summary Judgment, hereafter, "Roach Decl." (filed under seal).)  Since the Roach Declaration is filed under seal, the Court will only address its contents in general terms.

14

software updates were valid efforts to maintain the security of digital files, as required under its contracts with various record labels, Plaintiffs' discovery requests relating to hacks and Defendant's responses to those hacks are reasonably likely to produce relevant evidence.  Finally, Defendant has already produced substantial documents in response to Plaintiffs' requests and has agreed to produce a 30(b)(6) witness for deposition, thus there is some basis for believing that the information Plaintiffs seek actually exists.[10]

Accordingly, the Court GRANTS Plaintiffs' request for additional discovery pursuant to Rule 56(f) and DENIES as premature Defendant's Motion for Summary Judgment.

### 3.    Indirect Purchaser Action

In its December 21 Order, the Court ordered the Indirect Purchaser Plaintiff to show cause, if any, why her case should not be dismissed since the basis for a separate action, namely, indirect purchasers of iPods, is no longer viable in light of the Court's denial of certification of the damages class.  (December 21 Order at 11.)  The Court further stated that once the Direct Purchaser Plaintiffs amend their pleadings to add remedies also sought by the Indirect Purchaser Plaintiff, the Indirect Purchaser Action would become redundant and unnecessary.  (Id. at 11-12.)  On February 1, 2010, the Indirect Purchaser Plaintiff filed her response to the Court's Order to Show Cause.  (hereafter, "OSC Response," Docket Item No. 91.)

Upon review of the Direct Purchaser Plaintiffs' Amended Consolidated Complaint, the Court finds that the class the Indirect Purchaser Plaintiff seeks to represent and the remedies she seeks on behalf of that class are distinct from those in the Direct Purchaser Action.  In the Amended Consolidated Complaint, the Direct Purchaser Plaintiffs allege that they seek to represent a class of "persons or entities in the United States . . . who purchased an iPod directly from Apple" during the Class Period.  (ACC ¶ 31.)  The Direct Purchaser Plaintiffs do not seek to represent purchasers of digital files from the iTS.  The Indirect Purchaser Plaintiffs, however, seek to represent a class of

---

[10]  In light of the Court's finding that additional discovery is appropriate as to Plaintiffs' Section 2 claim, the Court declines to address the merits of the additional substantive grounds for summary judgment raised in Defendant's Motion.

15

United States District Court

For the Northern District of California

1   indirect purchasers of iPods and consumers who have purchased digital files from the iTS.[11]  (OSC

2   Response at 3.)

3          As to the remedies sought respectively in the two actions, the Direct Purchaser Plaintiffs

4   allege in their Amended Consolidated Complaint that they seek certification of a class pursuant to

5   Fed. R. Civ. P. 23(b)(3) with respect to claims for damages and other monetary relief.  (ACC at 23.)

6   The Indirect Purchaser Plaintiff, on the other hand, only seeks injunctive relief.  (OSC Response at

7   3.)

8          Although the Court invited Plaintiffs in the Direct Purchaser Action to, in their amendment,

9   combine their injunctive remedies with that of the Indirect Purchaser Action since it appeared to the

10  Court that those remedies, to the extent they are viable, should be merged because they derive from

11  the same alleged anticompetitive conduct by Apple, it appears that the Direct Purchaser Plaintiffs

12  have declined the Court's invitation.  (See December 21 Order at 11.)  Since the Direct Purchaser

13  Plaintiffs and the Indirect Purchaser Plaintiffs seek to represent two distinct classes of Apple

14  consumers and do not seek any of the same remedies, the Court finds that the Indirect Purchaser

15  Action is not redundant or unnecessary at this time.

16         Accordingly, the Court GRANTS the Indirect Purchaser Plaintiff leave to file an Amended

17  Complaint that does not depend upon allegations of tying as the anticompetitive conduct upon which

18  they base their monopolization claims.[12]

---

19

20  [11]  While there is presumably a subset of individuals who are both direct purchasers of iPods
    and purchasers of digital files from the iTS, the Court finds that this partial overlap between the two
21  putative classes does not create the possibility of double-recovery because of the different remedies
    sought in the two Actions.
22

23  [12]  On June 2, 2010, the Indirect Purchaser Plaintiff filed a request to submit supplemental
    materials to the Court in support of her request for leave to amend to add additional allegations of
24  anticompetitive conduct not based on tying.  (Supplementary Materials Submitted Pursuant to Civil
    Local Rule 7-3, hereafter, "Supp. Materials Request," Docket Item No. 97.)  Specifically, the
25  Indirect Purchaser Plaintiff seeks to bring to the Court's attention a newspaper article that was
    published after the May 10 hearing discussing a recently opened Justice Department investigation
26  into certain allegedly anticompetitive practices of Defendant.  (Supp. Materials Request, Ex. 1.)
    Defendant opposes submission of the supplemental materials.  (Apple, Inc.'s Opposition to Request
27  to Submit "Supplementary Materials," Docket Item No. 98.)  In light of this Order granting leave to
    the Indirect Purchaser Plaintiff to file an Amended Complaint for the reasons discussed above, the

28                                              16

However, the Indirect Purchaser Plaintiff's Complaint shall clearly identify the purported class as well as the injunctive remedies requested and their relationship to the claims and the purported class. Further, in the Amended Complaint, the Indirect Purchaser Plaintiff shall clearly distinguish how the purported class' interests or harm are distinct from those of the Direct Purchaser Plaintiffs.

**D.     Conclusion**

The Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss as follows:

(1)      Defendant's Motion as to Plaintiffs' Section 2 claim is DENIED;

(2)      Defendant's Motion as to Plaintiffs' Cartwright Act claim is GRANTED with prejudice;

(3)      Defendant's Motion as to Plaintiffs' UCL Claim is DENIED;

(4)      Defendant's Motion as to Plaintiffs' CLRA claim is GRANTED with prejudice;

(5)      Defendant's Motion as to Plaintiffs' common law monopolization claim is GRANTED with prejudice.

The Court DENIES Defendant's Motion for Summary Judgment as premature pursuant to Federal Rule of Civil Procedure 56(f) and GRANTS Plaintiffs' Motion for Rule 56(f) discovery. On **July 19, 2010 at 10 a.m.**, the parties shall appear for a Case Management Conference. On or before **July 9, 2010**, the parties shall file a Joint Case Management Conference Statement. The Statement shall provide a good faith discovery plan with a proposed date for the close of all discovery. The parties shall also propose a schedule for Plaintiffs' anticipated Renewed Motion for Class Certification.

The Court GRANTS the Indirect Purchaser Plaintiff leave to file an Amended Complaint. On or before **July 9, 2010**, the Indirect Purchaser Plaintiff shall file her Amended Complaint consistent with the terms of this Order. The Indirect Purchaser Plaintiff shall also appear at the July

_____

Court finds it unnecessary to consider any supplemental materials in support of granting such leave. Accordingly, the Court DENIES as moot the Indirect Purchaser Plaintiff's request to submit supplemental materials.

United States District Court

For the Northern District of California

1  19 Conference.  The Indirect Purchaser Plaintiff shall join in the Direct Purchaser parties' Joint

2  Statement and propose a schedule as to how her case should proceed.

3        In their Joint Statement, the parties shall also address why the Direct and Indirect actions

4  should not now be consolidated.

5

6  Dated:  June 29, 2010

7                                                    JAMES WARE
                                                     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California

18

**United States District Court**
For the Northern District of California

1

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2  Alreen Haeggquist alreenh@zhlaw.com
   Andrew S. Friedman afriedman@bffb.com
3  Bonny E. Sweeney bonnys@rgrdlaw.com
   Brian P Murray bmurray@murrayfrank.com
4  Caroline Nason Mitchell cnmitchell@jonesday.com
   Craig Ellsworth Stewart cestewart@jonesday.com
5  David Craig Kiernan dkiernan@jonesday.com
   Elaine A. Ryan eryan@bffb.com
6  Francis Joseph Balint fbalint@bffb.com
   Helen I. Zeldes helenz@zhlaw.com
7  Jacqueline Sailer jsailer@murrayfrank.com
   John J. Stoia jstoia@rgrdlaw.com
8  Michael D Braun service@braunlawgroup.com
   Michael D. Braun service@braunlawgroup.com
9  Michael Tedder Scott michaelscott@jonesday.com
   Paula Michelle Roach proach@rgrdlaw.com
10 Robert Allan Mittelstaedt ramittelstaedt@jonesday.com
   Roy A. Katriel rak@katriellaw.com
11 Thomas J. Kennedy tkennedy@murrayfrank.com
   Thomas Robert Merrick tmerrick@rgrdlaw.com
12 Todd David Carpenter tcarpenter@bffb.com

13

14

15  **Dated:  June 29, 2010**                **Richard W. Wieking, Clerk**

16                                           **By:_____/s/ JW Chambers_____**
                                                 **Elizabeth Garcia**
17                                               **Courtroom Deputy**

18

19

20

21

22

23

24

25

26

27

28