1  Robert A. Mittelstaedt  #60359
   ramittelstaedt@jonesday.com
2  Craig E. Stewart  #129530
   cestewart@jonesday.com
3  David C. Kiernan #215335
   dkiernan@jonesday.com
4  Michael T. Scott #255282
   michaelscott@jonesday.com
5  JONES DAY
   555 California Street, 26th Floor
6  San Francisco, CA  94104
   Telephone:     (415) 626-3939
7  Facsimile:     (415) 875-5700

8

   Attorneys for Defendant
9  APPLE INC.

10                    UNITED STATES DISTRICT COURT

11        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

12

13
   **THE APPLE iPOD iTUNES ANTI-TRUST**     **Case No. C 05 00037 JW**
14 **LITIGATION**
                                            **CLASS ACTION**
15
                                            **DEFENDANT APPLE INC.'S FIRST**
16                                          **AMENDED ANSWER AND**
                                            **DEFENSES TO PLAINTIFFS'**
17                                          **AMENDED CONSOLIDATED**
                                            **COMPLAINT**
18

19

20

21

22

23

24

25

26

27

28

**ANSWER AND AFFIRMATIVE DEFENSES**

Now comes defendant Apple Inc. ("Apple"), by its undersigned counsel, and in answer to the Amended Complaint, and with the understanding that the allegations relate to activities within the United States, states as follows:

1.    Answering the allegations in Paragraph 1, Apple admits that plaintiffs purport to bring this action on behalf of themselves and others.  Apple denies that plaintiffs have established or can establish the prerequisites to certification or maintenance of the alleged classes pursuant to Rule 23 of the Federal Rules of Civil Procedure.

2.    The allegations in Paragraph 2 are not susceptible to being answered because of their ambiguity and because they state conclusions of law to which no answer is necessary.  To the extent that an answer is deemed necessary, Apple denies the allegations.

3.    The allegations in Paragraph 3 are not susceptible to being answered because of their ambiguity and because they state conclusions of law to which no answer is necessary.  To the extent that an answer is deemed necessary, Apple denies the allegations, except that Apple admits that Apple previously sold music on the iTunes Store (formerly known as the iTunes Music Store) that was protected by Apple's proprietary digital rights management ("DRM") technology named FairPlay.

4.    The allegations in Paragraph 4 are not susceptible to being answered because of their ambiguity and because they state conclusions of law to which no answer is necessary.  To the extent that an answer is deemed necessary, Apple denies the allegations.

5.    The allegations in Paragraph 5 are not susceptible to being answered because of their ambiguity and because they state conclusions of law to which no answer is necessary.  To the extent that an answer is deemed necessary, Apple denies the allegations.

6.    Answering the allegations of the first two sentences of Paragraph 6, Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them, except that Apple admits that Somtai Troy Charoensak has purchased an iPod and audio downloads from Apple.  Apple denies the remaining allegations in Paragraph 6.

7.      Answering the allegations of the first two sentences of Paragraph 7, Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them, except that Apple admits that Mariana Rosen has purchased an iPod and audio downloads from Apple.  Apple denies the remaining allegations in Paragraph 7.

8.      Answering the allegations of the first two sentences of Paragraph 8, Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them, except that Apple admits that Melanie Tucker has purchased an iPod and audio downloads from Apple.  Apple denies the remaining allegations in Paragraph 8.

9.      Answering the allegations in Paragraph 9, Apple admits the allegations in the first sentence.  The remaining allegations in Paragraph 9 are not susceptible to being answered because of their ambiguity.  To the extent that an answer is deemed necessary, Apple's  publicly disclosed revenue and profit data speak for themselves, and no further disclosure is appropriate for this answer.  On that basis, Apple denies the remaining allegations.

10.     Answering the allegations in Paragraph 10, Apple admits that plaintiffs purport to invoke jurisdiction of this Court under 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331 and 1337.

11.     Answering the allegations of Paragraph 11, Apple admits that it is headquartered in Cupertino, California and that it transacts business in this judicial district, but Apple denies that it has engaged in any conduct giving rise to this Amended Complaint in this, or any other, judicial district.  Apple denies the remaining allegations in Paragraph 11.

12.     The allegations in Paragraph 12 are not susceptible to being answered because of their ambiguity and because they state conclusions of law to which no answer is necessary.  To the extent that an answer is deemed necessary, Apple denies the allegations.

13.     The allegations in Paragraph 13 state conclusions of law to which no answer is necessary.  To the extent an answer is deemed necessary, Apple denies the allegations.

14.     Answering the allegations in Paragraph 14, Apple believes that many aspects of its iTunes Store offerings make it attractive to consumers.  The allegations in the first two sentences of Paragraph 14 are not susceptible to being answered because of their ambiguity and because they state conclusions of law to which no answer is necessary.  To the extent that an answer is

FIRST AMENDED ANSWER &
AFFIRMATIVE DEFENSES
Case No. C05 00037 JW

deemed necessary, Apple denies the allegations in the first sentence of Paragraph 14. Apple is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14 and therefore denies them, except that Apple admits that consumers may buy individual songs from its iTunes Store and that the iTunes Store currently offers over 13 million songs.

15. Answering the allegations in Paragraph 15, Apple believes that many aspects of its iTunes Store offerings make it attractive to consumers. Apple is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 15 and therefore denies them.

16. The allegations in Paragraph 16 are not susceptible to being answered because of their ambiguity. To the extent that an answer is deemed necessary, Apple denies the allegations, except that Apple admits that it operates the iTunes Store (f/k/a the iTunes Music Store), that the iTunes Store can be accessed through the iTunes application, and that users may purchase and download digital music and digital video files from the iTunes Store.

17. The allegations in Paragraph 17 state conclusions of law to which no answer is necessary. To the extent that an answer is deemed necessary, Apple denies the allegations, except that Apple admits that Apple's iTunes Store offers digital music files.

18. Answering the allegations in Paragraph 18, Apple denies the first sentence and that it has engaged in any illegal anticompetitive behavior. Apple is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18, and therefore denies them.

19. Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19, which relate principally to allegations regarding consumers and merchants, and therefore denies them.

20. The allegations in Paragraph 20 are not susceptible to being answered because of their ambiguity. To the extent that an answer is deemed necessary, Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them, except that Apple admits that consumers may purchase individuals songs from the iTunes

FIRST AMENDED ANSWER &
AFFIRMATIVE DEFENSES
Case No. C05-00037 JW

Store and that the Recording Industry Association of America's website stated that manufacturers shipped 705.4 million CD album units and 2.8 million CD single units in 2005.

21. The allegations in Paragraph 21 are not susceptible to being answered because of their ambiguity. To the extent that an answer is deemed necessary, Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them, except that Apple admits that consumers may purchase individual songs from the iTunes Store and that they can create customized playlists.

22. Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 and therefore denies them, except that Apple admits that its online music service provides an outlet for independent artists and music labels.

23. Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and therefore denies them.

24. Apple denies the allegations in Paragraph 24.

25. Answering the allegations in Paragraph 25, Apple believes that many aspects of its iPod products make them attractive to consumers. The allegations in the first sentence of Paragraph 25 are not susceptible to being answered because of their ambiguity and because they state conclusions of law to which no answer is necessary. To the extent that an answer is deemed necessary, Apple denies the allegations in the first sentence of Paragraph 25. Apple is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25 which relate principally to allegations regarding consumers, and therefore denies them.

26. Answering the allegations in Paragraph 26, Apple admits that it sold various generations of the iPod Classic, iPod shuffle, iPod nano, iPod mini, and iPod touch. The remaining allegations are not susceptible to being answered because of their ambiguity and because they state conclusions of law to which no answer is necessary. To the extent that an answer is deemed necessary, Apple denies the remaining allegations.

27. The allegations in Paragraph 27 state conclusions of law to which no answer is necessary. To the extent that an answer is deemed necessary, Apple denies the allegations.

FIRST AMENDED ANSWER &
AFFIRMATIVE DEFENSES
Case No. C05 00037 JW

28.    Answering the allegations in Paragraph 28, Apple denies the first sentence and that it has engaged in any illegal anticompetitive behavior.  Apple is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 28, and therefore denies them.

29.    The allegations in Paragraph 29 state conclusions of law to which no answer is necessary.  To the extent that an answer is necessary, Apple denies the allegations.

30.    Answering the allegations in Paragraph 30, Apple admits that plaintiffs purport to bring this action on behalf of themselves and others.  Apple denies that plaintiffs have established or can establish the prerequisites to certification and/or maintenance of the alleged classes pursuant to Rule 23 of the Federal Rules of Civil Procedure.

31.    Answering the allegations in Paragraph 31, Apple denies that plaintiffs have established or can establish the prerequisites to certification or maintenance of the alleged class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

32.    Apple denies the allegations in Paragraph 32.

33.    Apple denies the allegations in Paragraph 33.

34.    Apple denies the allegations in Paragraph 34.

35.    Apple denies the allegations in Paragraph 35.

36.    Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36, and therefore denies them.

37.    The allegations in Paragraph 37 state conclusions of law to which no answer is necessary.  To the extent that an answer is deemed necessary Apple denies the allegations.

38.    Answering the allegations in Paragraph 38, Apple admits that it introduced the iTunes Software application on January 9, 2001 and that iTunes may be used, among other things, to play and organize digital media files on a user's computer, import content from audio CDs, and transfer content onto blank audio CDs or portable digital devices.  Apple denies the remaining allegations in Paragraph 38.

39.    Answering the allegations in Paragraph 39, Apple denies the first sentence, except that Apple admits that it announced the iPod on October 23, 2001.  The remaining allegations in

FIRST AMENDED ANSWER &
AFFIRMATIVE DEFENSES
Case No. C05 00037 JW

1  Paragraph 39 are not susceptible to being answered because of their ambiguity.  To the extent that

2  an answer is deemed necessary, Apple denies the allegations.

3        40.     Answering the allegations of Paragraph 40, Apple admits that Apple introduced

4  the iTunes Music Store (now the iTunes Store) on April 28, 2003, which at that time offered over

5  200,000 songs at $0.99 per song, and now offers over 13,000,000 songs.  The iTunes Store can be

6  accessed only through the iTunes Software application.  Apple also introduced the third

7  generation iPod and released a new version of the iTunes Software application on April 28, 2003.

8  Apple denies the remaining allegations.

9        41.     The allegations in Paragraph 41 are not susceptible to being answered because of

10  their ambiguity.  To the extent that an answer is deemed necessary, Apple denies the allegations.

11        42.     Answering the allegations of Paragraph 42, Apple admits that the major record

12  labels (Sony, BMG, EMI, Warner, and Universal) required that Apple use an encryption-based

13  "security solution" approved by the labels to enforce content usage rules that limited copying and

14  transfer of the music files distributed through Apple's iTunes Store.  To comply with this

15  requirement, Apple developed its FairPlay digital rights management (DRM) technology.  The

16  remaining allegations in Paragraph 42 are not susceptible to being answered because of their

17  ambiguity.  To the extent that an answer is deemed necessary, Apple denies the allegations.

18        43.     The allegations in Paragraph 43 are not susceptible to being answered because of

19  their ambiguity.  To the extent that an answer is deemed necessary, Apple denies the allegations

20  in Paragraph 43, except that Apple admits that Apple has not licensed FairPlay.

21        44.     Apple denies the allegations in Paragraph 44.

22        45.     The allegations in Paragraph 45 are not susceptible to being answered because of

23  their ambiguity and because they state conclusions of law to which no answer is necessary.  To

24  the extent that an answer is deemed necessary, Apple denies the allegations.

25        46.     The allegations in Paragraph 46 are not susceptible to being answered because of

26  their ambiguity and because they state conclusions of law to which no answer is necessary.  To

27  the extent that an answer is deemed necessary, Apple denies the allegations.

28

FIRST AMENDED ANSWER &
AFFIRMATIVE DEFENSES
Case No. C05 00037 JW

47.    The allegations in Paragraph 47 are not susceptible to being answered because of their ambiguity and because they state conclusions of law to which no answer is necessary.  To the extent that an answer is deemed necessary, Apple denies the allegations, except that Apple admits that the quoted language was attributed to Josh Bernoff in a January 31, 2007 *Business Week* article.

48.    The allegations in Paragraph 48 are not susceptible to being answered because of their ambiguity.  To the extent that an answer is deemed necessary, Apple denies the allegations.

49.    The allegations in Paragraph 49 are not susceptible to being answered because of their ambiguity.  To the extent that an answer is deemed necessary, Apple denies the allegations in Paragraph 49, except that Apple admits that it has not licensed FairPlay.

50.    The allegations in Paragraph 50 are not susceptible to being answered because of their ambiguity and because they state conclusions of law to which no answer is necessary.  To the extent that an answer is deemed necessary, Apple denies the allegations.

51.    The allegations in Paragraph 51 are not susceptible to being answered because of their ambiguity and because they state conclusions of law to which no answer is necessary.  To the extent that an answer is deemed necessary, Apple denies the allegations in Paragraph 51 except that Apple states that its publicly disclosed revenue and profit data speak for themselves.

52.    Apple denies the allegations in Paragraph 52.

53.    The allegations in the first two sentences in Paragraph 53 are not susceptible to being answered because of their ambiguity and because they state conclusions of law to which no answer is necessary.  To the extent that an answer is deemed necessary, Apple denies the allegations in the first two sentences in Paragraph 53, except that Apple admits that, on or about July 26, 2004, RealNetworks announced its Harmony technology, claiming that Harmony would allow users to buy music from RealNetworks' online store and play it on an iPod.    Apple is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 53 and therefore denies them.

54.    The allegations in Paragraph 54 are not susceptible to being answered because of their ambiguity and because they state conclusions of law to which no answer is necessary.  To

the extent that an answer is deemed necessary, Apple denies the allegations in Paragraph 54 based on information and belief, except that Apple admits that RealNetworks sold audio downloads for as low as 49 cents per track for a limited time.

55.    The allegations in Paragraph 55 are not susceptible to being answered because of their ambiguity and because they state conclusions of law to which no answer is necessary.  To the extent that an answer is deemed necessary, Apple denies the allegations.

56.    The allegations in Paragraph 56 are not susceptible to being answered because of their ambiguity.  To the extent that an answer is deemed necessary, Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 and therefore denies them.

57.    The allegations in Paragraph 57 are not susceptible to being answered because of their ambiguity.  To the extent that an answer is deemed necessary, Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 and therefore denies them.

58.    The allegations in Paragraph 58 are not susceptible to being answered because of their ambiguity and because they state conclusions of law to which no answer is necessary.  To the extent that an answer is deemed necessary, Apple denies the allegations, except that Apple admits that the quoted language was attributed to Forrester Research.

59.    Apple denies the allegations in Paragraph 59, except that Apple admits that it made a public statement on July 29, 2004 that included the words quoted in Paragraph 59.

60.    The allegations in Paragraph 60 are not susceptible to being answered because of their ambiguity.  To the extent that an answer is necessary, Apple denies the allegations in Paragraph 60.

61.    The allegations in Paragraph 61 are not susceptible to being answered because of their ambiguity and because they state conclusions of law to which no answer is necessary.  To the extent that an answer is deemed necessary, Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 61,

FIRST AMENDED ANSWER &
AFFIRMATIVE DEFENSES
Case No. C05 00037 JW

1   and therefore denies them, except that Apple admits that the quoted language appears in an

2   August 2005 RealNetworks SEC filing.

3         62.    The allegations in Paragraph 62 are not susceptible to being answered because of

4   their ambiguity and because they state conclusions of law to which no answer is necessary.  To

5   the extent that an answer is deemed necessary, Apple denies the allegations.

6         63.    The allegations in Paragraph 63 are not susceptible to being answered because of

7   their ambiguity.  To the extent that an answer is necessary, Apple denies the allegations in

8   Paragraph 63.

9         64.    The allegations in Paragraph 64 are not susceptible to being answered because of

10  their ambiguity.  To the extent that an answer is deemed necessary, Apple denies the allegations,

11  except that Apple admits that, in 2005, JHymn was released, which stripped the content

12  protection from songs purchased from the iTunes Store, allowing users to copy songs and give

13  those copies to others without restriction.

14        65.    The allegations in Paragraph 65 are not susceptible to being answered because of

15  their ambiguity.  To the extent that an answer is deemed necessary, Apple denies the allegations,

16  except that Apple admits that it released updates to its FairPlay technology to, among other

17  things, stop JHymn and other hacks that circumvented the content protection required by the

18  labels on music purchased from the iTunes Store and further admits that, in October 2005, Apple

19  released iTunes 6.0, which included, among other things, updates to FairPlay technology

20  designed to stop such hacks.

21        66.    The allegations in Paragraph 66 are not susceptible to being answered because of

22  their ambiguity.  To the extent that an answer is deemed necessary, Apple denies the allegations,

23  except that Apple admits that, in September 2006, it released iTunes 7.0, which among other

24  things included updates to FairPlay technology designed to stop hacks that circumvented the

25  content protection required by the labels on music purchased from the iTunes Store.

26        67.    The allegations in Paragraph 67 are not susceptible to being answered because of

27  their ambiguity.  To the extent that an answer is necessary, Apple denies the allegations in

28  Paragraph 67, except that Apple admits that Steve Jobs' "Thoughts on Music" web posting

FIRST AMENDED ANSWER &
AFFIRMATIVE DEFENSES
Case No. C05 00037 JW

1  contained the quoted language in answer to the question "Why would the big four music

2  companies agree to let Apple and others distribute their music without using DRM systems to

3  protect it?  The simplest answer is because DRMs haven't worked, and may never work, to halt

4  music piracy.  Though the big four music companies require that all their music sold online be

5  protected with DRMs, these same music companies continue to sell billions of CDs a year which

6  contain completely unprotected music.  That's right!  No DRM system was ever developed for

7  the CD, so all the music distributed on CDs can be easily uploaded to the Internet, then (illegally)

8  downloaded and played on any computer or player."

9      68.    The allegations in Paragraph 68 are not susceptible to being answered because of

10 their ambiguity.  To the extent that an answer is deemed necessary, Apple denies the allegations,

11 except that Apple admits that, starting on April 2, 2007, Apple distributed EMI's music without

12 DRM and that the quoted text was attributed to Eric Nicoli, CEO of EMI Group.

13     69.    The allegations in Paragraph 69 are not susceptible to being answered because of

14 their ambiguity.  To the extent that an answer is deemed necessary, Apple is without knowledge

15 or information sufficient to form a belief as to the truth of the allegations in Paragraph 69 and

16 therefore denies them.

17     70.    The allegations in Paragraph 70 are not susceptible to being answered because of

18 their ambiguity.  To the extent that an answer is deemed necessary, Apple denies the allegations,

19 except that Apple admits that, on January 6, 2009, Apple announced that it would begin selling

20 music from the major labels and thousands of independent labels in Apple's higher quality,

21 DRM-free iTunes Plus format, that customers could upgrade their previously purchased music to

22 the iTunes Plus format for 30 cents per song or 30 percent of the album price, and that since April

23 2009, all iTunes Store music has been in iTunes Plus format.

24     71.    The allegations in Paragraph 71 are not susceptible to being answered because of

25 their ambiguity and because they state conclusions of law to which no answer is necessary.  To

26 the extent that an answer is deemed necessary, Apple denies the allegations.

27

28

72.    The allegations in Paragraph 72 are not susceptible to being answered because of their ambiguity.  To the extent that an answer is necessary, Apple denies the allegations in Paragraph 72.

73.    Answering the allegations in the first sentence of Paragraph 73, Apple denies the allegations except that Apple admits that the French Parliament approved a law affording legal protection to DRM (Digital Rights Management).  Answering the allegations in the second and third sentences of Paragraph 73, Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.  Answering the allegations in the fourth sentence of Paragraph 73, Apple admits that it made a comment about "state sponsored piracy" in relation to one of the earlier versions of the law.  Apple denies the remaining allegations in Paragraph 73.

74.    The allegations in Paragraph 74 are not susceptible to being answered because of their ambiguity.  To the extent that an answer is necessary, Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 and therefore denies them.

75.    The allegations in Paragraph 75 are not susceptible to being answered because of their ambiguity and because they state conclusions of law to which no answer is necessary.  To the extent that an answer is deemed necessary, Apple denies the allegations, except that Apple admits that the Office of the Norwegian Consumer Ombudsman sent a letter to Apple asking questions about the use of DRM.

76.    Answering the allegations in Paragraph 76, Apple admits that the quoted language was attributed to Dutch Consumer Ombudsman Ewald van Kouwen in news articles.  Apple denies the remaining allegations.

77.    Answering the allegations in Paragraph 77, Apple admits that the quoted language was attributed to European Union Consumer Affairs Commissioner Kuneva in news articles.  Apple denies the remaining allegations.

FIRST AMENDED ANSWER &
AFFIRMATIVE DEFENSES
Case No. C05 00037 JW

1    78.    Apple denies the allegations in the first two sentences of Paragraph 78.  Answering

2  the allegations in the third sentence of Paragraph 78, Apple lacks knowledge or information

3  sufficient to form a belief as to the truth of the allegations and therefore denies them.

4    79.    Answering the allegations in Paragraph 79, Apple lacks knowledge or information

5  sufficient to form a belief as to the truth of the allegations and therefore denies them.

6    80.    Answering the allegations in Paragraph 80, Apple lacks knowledge or information

7  sufficient to form a belief as to the truth of the allegations and therefore denies them.

8    81.    The allegations in Paragraph 81 are not susceptible to being answered because of

9  their ambiguity and because they state conclusions of law to which no answer is necessary.  To

10  the extent that an answer is deemed necessary, Apple denies the allegations.

11    82.    The allegations in Paragraph 82 are not susceptible to being answered because of

12  their ambiguity and because they state conclusions of law to which no answer is necessary.  To

13  the extent that an answer is deemed necessary, Apple denies the allegations.

14    83.    The allegations in Paragraph 83 are not susceptible to being answered because of

15  their ambiguity and because they state conclusions of law to which no answer is necessary.  To

16  the extent that an answer is deemed necessary, Apple denies the allegations.

17    84.    The allegations in Paragraph 84 are not susceptible to being answered because of

18  their ambiguity and because they state conclusions of law to which no answer is necessary.  To

19  the extent that an answer is deemed necessary, Apple denies the allegations.

20    85.    The allegations in Paragraph 85 are not susceptible to being answered because of

21  their ambiguity.  To the extent that an answer is deemed necessary, Apple denies the allegations

22  in Paragraph 85.

23    86.    The allegations in Paragraph 86 are not susceptible to being answered because of

24  their ambiguity.  To the extent that an answer is deemed necessary, Apple denies the allegations

25  in Paragraph 86.

26    87.    The allegations in Paragraph 87 are not susceptible to being answered because

27  they state conclusions of law to which no answer is necessary.  As to the allegations of the NAND

28  spot market, Apple lacks knowledge or information sufficient to form a belief as to the truth of

the allegations and therefore denies them.  To the extent that an answer is deemed necessary to any additional portions of the paragraph, Apple denies the allegations.  The current retail prices at which Apple sells its products are stated on the Apple website located at www.apple.com.

88.    Apple denies the allegations in Paragraph 88.

## COUNT I

89.    Paragraph 89, which purports to incorporate by reference all of the allegations of the Complaint, requires neither admission nor denial.

90.    Apple denies the allegations in Paragraph 90.

91.    Apple denies the allegations in Paragraph 91.

92.    Apple denies the allegations in Paragraph 92.

93.    Apple denies the allegations in Paragraph 93.

94.    Apple denies the allegations in Paragraph 94.

95.    Paragraph 95, which purports to incorporate by reference all of the allegations of the Complaint, requires neither admission nor denial.

96.    Apple denies the allegations in Paragraph 96.

97.    Apple denies the allegations in Paragraph 97.

98.    Apple denies the allegations in Paragraph 98.

99.    Apple denies the allegations in Paragraph 99.

## COUNT II

100.    Paragraph 100, which purports to incorporate by reference all of the allegations of the Complaint, requires neither admission nor denial.

101.    Apple denies the allegations in Paragraph 101.

102.    Apple denies the allegations in Paragraph 102.

103.    Apple denies the allegations in Paragraph 103.

104.    Apple denies the allegations in Paragraph 104.

105.    Apple denies the allegations in Paragraph 105.

106.    Paragraph 106, which purports to incorporate by reference all of the allegations of the Complaint, requires neither admission nor denial.

FIRST AMENDED ANSWER &
AFFIRMATIVE DEFENSES
Case No. C05 00037 JW

1  107.    Apple denies the allegations in Paragraph 107.

2  108.    Apple denies the allegations in Paragraph 108.

3  109.    Apple denies the allegations in Paragraph 109.

4  110.    Apple denies the allegations in Paragraph 110.

5  111.    Apple denies the allegations in Paragraph 111.

6  **COUNT III**

7  112.    In its June 29, 2010 Order, the Court dismissed the claims in Count III, and for

8  that reason Paragraph 112 requires neither dismissal nor denial.

9  113.    In its June 29, 2010 Order, the Court dismissed the claims in Count III, and for

10  that reason Paragraph 113 requires neither dismissal nor denial.

11  114.    In its June 29, 2010 Order, the Court dismissed the claims in Count III, and for

12  that reason Paragraph 114 requires neither dismissal nor denial.

13  **COUNT IV**

14  115.    Paragraph 115, which purports to incorporate by reference all of the allegations of

15  the Complaint, requires neither admission nor denial.

16  116.    Apple denies the allegations in Paragraph 116.

17  117.    Apple denies the allegations in Paragraph 117.

18  118.    Apple denies the allegations in Paragraph 118.

19  119.    Apple denies the allegations in Paragraph 119.

20  120.    Apple denies the allegations in Paragraph 120.

21  **COUNT V**

22  121.    In its June 29, 2010 Order, the Court dismissed the claims in Count V, and for that

23  reason Paragraph 121 requires neither dismissal nor denial.

24  122.    In its June 29, 2010 Order, the Court dismissed the claims in Count V, and for that

25  reason Paragraph 122 requires neither dismissal nor denial.

26  123.    In its June 29, 2010 Order, the Court dismissed the claims in Count V, and for that

27  reason Paragraph 123 requires neither dismissal nor denial.

28

FIRST AMENDED ANSWER &
AFFIRMATIVE DEFENSES
Case No. C05 00037 JW

124.    In its June 29, 2010 Order, the Court dismissed the claims in Count V, and for that reason Paragraph 124 requires neither dismissal nor denial.

125.    In its June 29, 2010 Order, the Court dismissed the claims in Count V, and for that reason Paragraph 125 requires neither dismissal nor denial.

126.    In its June 29, 2010 Order, the Court dismissed the claims in Count V, and for that reason Paragraph 126 requires neither dismissal nor denial.

127.    In its June 29, 2010 Order, the Court dismissed the claims in Count V, and for that reason Paragraph 127 requires neither dismissal nor denial.

## COUNT VI

128.    In its June 29, 2010 Order, the Court dismissed the claims in Count VI, and for that reason Paragraph 128 requires neither dismissal nor denial.

129.    In its June 29, 2010 Order, the Court dismissed the claims in Count VI, and for that reason Paragraph 129 requires neither dismissal nor denial.

## PRESERVATION OF CLAIMS FOR APPEAL

130.    Paragraph 130, which purports to incorporate by reference all of the allegations of the April 19, 2007 Consolidated Complaint, requires neither admission nor denial.

## AFFIRMATIVE DEFENSES

Apple sets forth below its affirmative defenses.  Each defense is asserted as to all claims against Apple.  By setting forth these affirmative defenses, Apple does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to the plaintiffs.  Moreover, nothing stated herein is intended or shall be construed as an admission that any particular issue or subject matter is relevant to the plaintiffs' allegations.

Apple reserves the right to amend or supplement its affirmative defenses and raise counterclaims as additional facts concerning its defenses become known to it.

As separate and distinct affirmative defenses, Apple alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

The Complaint, in whole or in part, fails to state a claim upon which relief may be granted.  Apple incorporates by reference its Motion to Dismiss or, Alternatively, for Summary

1    Judgment (Dkt. 325) and Reply in Support Thereof (Dkt. 354).  The updates and other conduct

2    that plaintiffs challenge do not violate federal or California antitrust laws for a number of reasons.

3    For example, the Court (Dkt. 377) has already dismissed Count III (Cartwright Act, Cal. Bus. &

4    Prof. Code §§16270, et seq.), Count V (Consumers Legal Remedies Act, Cal. Civil Code §§1750,

5    et seq.), Count VI (California Common Law Monopolization).  In addition, the Complaint does

6    not state a claim under Section 2 of the Sherman Act.  The Court has ruled that Apple's adoption

7    and use of its own anti-piracy technology does not violate the antitrust laws.  Dkt. 274, pp. 9-10;

8    *see also* Dkt. 213.  Just as it was lawful for Apple to adopt its own technology, it was also lawful

9    for Apple to update, repair, and improve that technology.  And because Apple's conduct was

10   lawful under the Sherman Act, it does not give rise to a claim under California Unfair

11   Competition Law, Bus. & Prof. Code §§17200, et seq.

12                              **SECOND AFFIRMATIVE DEFENSE**

13           The activities of Apple alleged in the Complaint do not give rise to antitrust liability

14   because they did not result in adverse effects on competition or, if there were any such effects

15   (which Apple denies), they were outweighed by the pro-competitive benefits of the activities.

16   Apple incorporates by reference its Motion to Dismiss or, Alternatively, for Summary Judgment

17   (Dkt. 325) and Reply in Support Thereof (Dkt. 354).  Apple also realleges and incorporates by

18   reference each of its allegations, denials, and defenses set forth above.

19           The software updates and any other conduct that plaintiffs challenge were pro-consumer

20   and pro-competitive.  This Court has ruled that Apple had a right to choose to use its own anti-

21   piracy technology when it introduced the iTunes Store in April 2003.  Dkt. 274, pp. 9-10 ("The

22   increased convenience of using the two products together due to technological compatibility does

23   not constitute anticompetitive conduct under either *per se* or rule of reason analysis."); *see also*

24   Dkt. 303, p. 2 (directing plaintiffs to file an amended complaint to identify "what actions they

25   allege Apple took to maintain monopoly power beyond initial technological relationships between

26   its products.").  Forcing Apple to use Microsoft's or any other company's technology would have

27   stymied innovation and prevented consumers from enjoying the benefits of Apple's technology.

28   As the Ninth Circuit ruled in *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 544

1  (9th Cir. 1983), "the introduction of technologically related products, even if incompatible with

2  the products offered by competitors," is not an "anticompetitive act."  The "creation of

3  technological incompatibilities" actually "increases competition" in two ways: it provides

4  consumers "with a choice among differing technologies," and it provides "competing

5  manufacturers the incentive to enter the new product market by developing similar products of

6  advanced technology."  *Id.* at 542.  Condemning such decisions "would unjustifiably deter the

7  development and introduction of those new technologies so essential to the continued progress of

8  our economy."  *Id.* at 543.  As plaintiffs' economist has acknowledged, prohibiting a company

9  from developing its own software "would be stupid" because it would freeze technology and

10  "prohibit innovation."  Dkt. 176, Ex. 21 at 169-170.

11         Apple provided consumers with an innovative, legal way to access digital music online,

12  and a device that seamlessly played that and other music.  Both the iPod and iTunes Store were

13  widely recognized as superior products.  CNET named the iPod the best product in ten years.

14  Tom Merrit, *Top 10 products*, available at http://www.cnet.com/1990-11136_1-6312246-1.html.

15  Fortune Magazine named the iTunes Music Store its 2003 "Product of the Year."  Peter Lewis,

16  Product of the Year Apple iTunes Music Store, Fortune Magazine, December 22, 2003, available

17  at http://money.cnn.com/magazines/fortune/fortune_archive/2003/12/22/356108/.  As admitted by

18  plaintiffs' economist, the iTunes Store was "procompetitive" and a "huge benefit" to consumers.

19  Dkt. 176, Ex. 21 at 105:8-20.  It provided "enormous advantages" for consumers, expanding the

20  number of available songs and allowing consumers to purchase individual songs rather than

21  albums.  Dkt. 322, ¶¶ 14-15, 40.

22         The fact that large numbers of consumers preferred Apple's products over competitors'

23  products was the result of Apple's innovation and competition.  Plaintiffs' attempt to translate

24  success in the marketplace into anticompetitive conduct reflects a serious misunderstanding of the

25  antitrust laws.  Apple continued to improve and expand its products, as evidenced by the

26  successive introduction of the iPod Classic, iPod mini, iPod shuffle, iPod nano, and iPod touch.

27  Successive models had increased capacities and added features, including video playback,

28

FIRST AMENDED ANSWER &
AFFIRMATIVE DEFENSES
Case No. C05 00037 JW

1  camera, a multi-touch interface, the ability to play video games and wirelessly access the internet,

2  and the ability to select from the hundreds of thousands of applications on Apple's App Store.

3       Contrary to plaintiffs allegations, Apple's conduct did not deter competition.  In fact,

4  throughout the class period, numerous companies introduced a wide range of portable products

5  that could play digital audio files with a variety of features, including Microsoft, Creative,

6  SanDisk, Dell, Cowon, Sony, Archos, Toshiba, iRiver, Coby, Philips, Samsung, and others.

7  Similarly, numerous companies offered music (including digital music downloads), including

8  Amazon, Wal-Mart, Napster, RealNetworks, Microsoft, BestBuy, Target, and Borders.

9       As discussed in more detail below (incorporated by reference), the specific updates

10  challenged in the Complaint blocked illegal hacks that threatened the security of Apple's anti-

11  piracy technology.  This conduct aided consumers because, without the updates, Apple's ability

12  to continue offering music from the major record labels would have been in jeopardy.

13                          **THIRD AFFIRMATIVE DEFENSE**

14       Defendant Apple has at all times and in all relevant manners acted reasonably, as

15  necessary to serve legitimate business purposes, in furtherance of trade, in good faith, and with

16  the purpose and effect of promoting, encouraging, or increasing competition.  Apple has not acted

17  with the purpose or intent to suppress or restrain competition.  Apple incorporates by reference its

18  Motion to Dismiss or, Alternatively, for Summary Judgment (Dkt. 325) and Reply in Support

19  Thereof (Dkt. 354).  Apple also realleges and incorporates by reference each of its allegations,

20  denials, and defenses set forth above.

21       The updates challenged by plaintiffs stopped illegal hacks that circumvented Apple's anti-

22  piracy technology, restored the level of content protection required by the labels, and attempted to

23  stay ahead of other potential hacks.  Apple also issued updates to improve its products and

24  maintain or improve the customer experience.

25       Before the April, 2003 launch of the iTunes Store, Apple and the major record labels

26  (Sony, BMG, EMI, Warner, and Universal) entered into agreements to permit Apple to distribute

27  music through iTunes Store.  To protect their copyrights, the labels required that Apple use an

28  encryption-based security to enforce content usage rules that limited copying and transfer of the

FIRST AMENDED ANSWER &
AFFIRMATIVE DEFENSES
Case No. C05-00037-JW

1  music files.  The agreements provide that, if the security solution is compromised, Apple must

2  promptly restore the security solution or the labels can withdraw their music catalogs from the

3  iTunes Store.  To comply with these contractual requirements, Apple developed and maintained

4  its FairPlay digital rights management (DRM) technology.

5  Almost from inception, hackers attacked FairPlay seeking to circumvent it and evade the

6  Labels' usage restrictions.  The hackers published programs on the Internet that allowed users to

7  strip or otherwise circumvent the content protection.  By circumventing FairPlay, these hackers

8  violated the federal Digital Millennium Copyright Act.  *See, e.g.*, 17 U.S.C. § 1201(a)(2)(A) &

9  1201(b)(1)(A) (prohibiting any technology designed "to circumvent[] a technological measure

10  that effectively controls access" to a copyrighted work or otherwise protects rights of copyrights

11  owners).

12  Apple released updates to stop such illegal hacks.  Had it not done so, its ability to

13  continue offering music to consumers would be jeopardized, depriving consumers of what

14  plaintiffs concede is the "huge benefit" of obtaining music on the iTunes Store.  As noted above,

15  Apple's conduct not only benefited consumers, but also promoted competition.  Indeed,

16  throughout the class period, numerous companies introduced a variety of portable media players

17  and offered music including digital music downloads.

18  **FOURTH AFFIRMATIVE DEFENSE**

19  The claims of the plaintiffs and/or others alleged to be members of the putative class are

20  barred, in whole or in part, by the applicable statutes of limitations.  In their amended

21  consolidated complaint filed on January 26, 2010, plaintiffs for the first time challenge Apple's

22  updates to its DRM technology that stopped hackers from circumventing the level of content

23  protection required by the labels.  Plaintiffs are barred from challenging such updates that Apple

24  released before January 26, 2006. 15 U.S.C. §15b; Cal. Bus. & Prof. Code §17208.

25  WHEREFORE, defendant Apple respectfully requests that this Court:

26  1.    Enter judgment against the plaintiffs and in favor of Apple;

27  2.    Dismiss the Complaint in its entirety, with prejudice;

28  3.    Decline to award the requested relief;

FIRST AMENDED ANSWER &
AFFIRMATIVE DEFENSES
Case No. C05 00037 JW

1    4.    Award Apple its costs and reasonable attorneys' fees incurred in this action; and

2    5.    Grant such other and further relief as the Court may deem just and proper.

3

4    Dated: September 24, 2010                    Respectfully submitted,

5                                                 Jones Day

6

7                                                 By: /s/ David Kiernan
                                                        David Kiernan

8                                                 Counsel for Defendant
9                                                 APPLE INC.

10

11   SFI-650319v5

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED ANSWER &
AFFIRMATIVE DEFENSES
Case No. C05 00037 JW