Robert A. Mittelstaedt #60359
ramittelstaedt@jonesday.com
Craig E. Stewart #129530
cestewart@jonesday.com
David C. Kiernan #215335
dkiernan@jonesday.com
Michael T. Scott #255282
michaelscott@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700

Attorneys for Defendant APPLE INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| **THE APPLE iPOD iTUNES ANTITRUST LITIGATION** | Case No. C 05-00037-JW (HRL)<br><br>[CLASS ACTION]<br><br>**APPLE INC.'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER PREVENTING THE DEPOSITION OF STEVE JOBS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   January 18, 2011<br>Time:   10:00 a.m.<br>Place:   Courtroom 2, 5th Floor<br>**Honorable Howard Lloyd** |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that Defendant Apple Inc. ("Apple") will and hereby does move this Court for a protective order preventing the deposition of Apple's CEO, Steve Jobs. Plaintiffs cannot show that Mr. Jobs has unique, non-repetitive, firsthand knowledge of information relevant to this antitrust action that is unavailable from other, less burdensome sources. Permitting Plaintiffs to depose Mr. Jobs in these circumstances would unduly burden Mr. Jobs and Apple. The motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of David C. Kiernan ("Kiernan Decl."), exhibits thereto, and such other matters as may be considered at the hearing. The hearing is set for Tuesday, January 18, 2011, at 10:00 a.m. before the Honorable Howard Lloyd, Courtroom 2, Fifth Floor, in the United States District Court for the Northern District of California, San Jose Division, 280 South 1st Street, San Jose, CA 95113, or as soon thereafter as the parties may be heard.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

To avoid the potential for harassment and undue burden, courts will not permit a deposition of an opposing party's CEO absent specific evidence that the executive has unique personal knowledge of facts unavailable from other sources.  Under well-established law governing "apex" depositions, the deposition of Apple's CEO, Steve Jobs, cannot be taken unless Plaintiffs first establish that (1) Mr. Jobs has unique, non-repetitive, firsthand knowledge of the facts at issue in this case and (2) Plaintiffs have exhausted without success other less intrusive discovery methods, such as interrogatories and depositions of other employees.  *See Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *Websidestory, Inc. v. Netratings, Inc.*, 2007 WL 1120567, at *2 (S.D. Cal. Apr. 6, 2007); *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *5 (N.D. Cal. Jan. 25, 2007).  Plaintiffs have failed to meet this burden.

Apple has repeatedly asked Plaintiffs to identify the information they believe Mr. Jobs possesses that cannot be obtained from other, less burdensome sources.  In response, Plaintiffs have made only vague references to Mr. Jobs being a "hands-on CEO" and "intimately involved" in issues related to Apple's alleged efforts to monopolize audio download and portable music player markets.  Such generic statements fall far short of satisfying Plaintiffs' obligation to demonstrate that the information they seek is relevant and is available only from Mr. Jobs.

This is particularly true because Plaintiffs' sole remaining theory of liability is quite narrow.  Although Plaintiffs initially asserted broad theories of antitrust liability, their claims have been substantially narrowed by this Court's orders.  Plaintiffs' remaining claims rely on the allegation that Apple attempted to maintain a monopoly in the audio download and portable music player markets by issuing updates to FairPlay, Apple's proprietary digital rights management ("DRM") software.  FairPlay prevents unauthorized access to and copying of music content in violation of the rights of the record labels that hold the copyrights on that music.  Plaintiffs nevertheless claim that updates to FairPlay served no legitimate business purpose.

Any relevant information regarding Apple's FairPlay updates, however, has already been provided or can be obtained through deponents and sources other than Mr. Jobs.  Apple has

produced Apple's documents addressing its updates to FairPlay. Moreover, Apple designated three witnesses in response to Plaintiffs' Federal Rule of Civil Procedure 30(b)(6) deposition notice requesting testimony on topics related to the updates. As of the filing of this motion, two of the witness have been deposed, and both fully addressed all of the issues and questions presented by Plaintiffs' counsel. The third deposition is not scheduled until December 15, but Plaintiffs insisted that Apple move for a protective order before that deposition and before Plaintiffs could determine whether that witness can adequately address any remaining issues related to the updates. Plaintiffs have not shown – and cannot show – that Mr. Jobs possesses any discoverable information not available from these witnesses.

Any deposition of Mr. Jobs would be repetitive, at best, and for that reason is not permitted. *See Celerity*, 2007 WL 205067, at *5 (refusing to permit apex deposition unless the depositions of lower-level employees failed to provide the discovery sought). Apple's request for a protective order should be granted.

## II.  STATEMENT OF FACTS

### A.  Apple and Steve Jobs.

Apple is a leading provider of personal computers, mobile communication and media devices, and portable digital music players, and sells a variety of related software, services, peripherals, networking solutions, and third-party digital applications and content. Kiernan Decl. ¶ 2, Ex. 1 at 1. Apple's products and services include Mac computers, iPhone, iPad, iPod, Apple TV, Xserve, a portfolio of consumer and professional software applications, the Mac OS X and iOS, third-party digital content and applications through the iTunes Store, and a variety of accessory, service and support offerings. *Id*. Apple's innovative products are sold in more than 100 countries, and Apple employs more than 45,000 people worldwide. *Id*. at 10.

Mr. Jobs co-founded Apple in 1976 and is now its CEO and a director. After leaving Apple in 1986, Mr. Jobs returned in 1997 to lead Apple's historic recovery. As CEO, Mr. Jobs is responsible for the management and oversight of Apple's complex global operations. Mr. Jobs also co-founded Pixar Animation Studios, which created several of the most successful feature-length animated films of all time, including *Toy Story*, *Monsters, Inc.*, and *The Incredibles*.

Kiernan Decl. ¶ 3, Ex. 2.  He served as Pixar's CEO from 1986 until 2006, when Pixar merged with The Walt Disney Company.  Mr. Jobs is now a member of Disney's board of directors and serves on a six-person steering committee that oversees Pixar.  Kiernan Decl. ¶ 4, Ex. 3.

### B. The Limited Scope of Plaintiffs' Remaining Claims.

The original Complaint was filed on January 3, 2005, with a Consolidated Amended Complaint filed on May 19, 2007.  For the first four years of this action, Plaintiffs' claims were focused on a "tying" theory that Apple violated Section 1 of the Sherman Act by using its DRM software, FairPlay, to prevent piracy of music downloaded from Apple's iTunes Store or downloaded to Apple iPods.  Plaintiffs claimed that FairPlay illegally "tied" content purchased from the iTunes Store to iPods and locked consumers into purchasing iPods rather than other portable media devices.  The Court rejected this theory last year and dismissed Plaintiffs' Section 1 claim.  The Court held that "[t]he increased convenience of using the two products together due to technological compatibility does not constitute anticompetitive conduct under either *per se* or rule of reason analysis."  (Order Granting Defendant's Motion for Judgment on the Pleadings, October 30, 2009, Docket No. 274 ("Order Granting Judgment on the Pleadings") at 9-10.)

The original Complaint further alleged that the same "tying" conduct also violated Section 2 of the Sherman Act.  The Court, however, ruled that its dismissal of the tying claim applied equally to Plaintiffs' Section 2 monopolization claim.  The Court ruled that the alleged technological tie between Apple products "when they were first introduced to the market" was, "without more, . . . not anticompetitive" and thus does not constitute exclusionary conduct for a monopoly claim.  (Order Decertifying Classes, December 21, 2009, Docket No. 303, at 2.)  The Court accordingly directed Plaintiffs to file an amended complaint to clarify "what actions they allege Apple took to maintain monopoly power beyond initial technological relationships between its products."  *Id.*  These rulings establish that it was lawful for Apple to choose its own DRM software, even if the result was to create "technologically-related products" that are allegedly "incompatible with the products offered by competitors."  (*See* Order Granting Judgment on the Pleadings at 10.)

1   As a result, Plaintiffs now challenge only Apple's updates to FairPlay, alleging that they
2   were not for legitimate business reasons such as preventing music piracy, but were designed to
3   "entrench its monopolies through the use of unnecessary, non-improving software updates
4   intended to exclude competition and further restrict consumer choice." (Plaintiffs' Memorandum
5   in Opposition to Apple's Motion to Dismiss, March 22, 2010, Docket No. 345, at 6; *see also*
6   Amended Consolidated Complaint, January 26, 2010, Docket No. 322, at 8-10.)

7   Under controlling Ninth Circuit precedent, a threshold liability issue is whether the
8   software updates were product improvements. *Allied Orthopedic Appliances, Inc. v. Tyco Health*
9   *Care Grp. LP*, 592 F.3d 991 (9th Cir. 2010). If so, the Section 2 claim is without merit. Under
10  *Tyco*, the Court does not engage in balancing the "benefits or worth of a product improvement . . .
11  against its anticompetitive effects." *Id.* at 1000. So long as the change improves the product, the
12  change is "necessarily tolerated by the antitrust laws." *Id. Tyco* also shows that allegations of
13  anti-competitive intent do not change the result. The *Tyco* plaintiffs pointed to evidence that
14  Tyco "hoped its new technology would constitute a barrier to entry" by its competitors. *Tyco*,
15  592 F.3d at 1001. But the Ninth Circuit held that "[s]tatements of an innovator's intent to harm a
16  competitor through genuine product improvement are insufficient by themselves to create a jury
17  question under Section 2" because "even legitimate product improvement can have the effect of
18  harming or even destroying competitors." *Id.*

19  **C.   Plaintiffs' Request to Depose Apple's CEO Steve Jobs.**

20  Although this case has been pending for more than five years, on November 3, 2010,
21  Plaintiffs raised for the first time the issue of deposing Mr. Jobs. Kiernan Decl. ¶ 5, Ex. 4. Since
22  that time, the parties have had a series of meet-and-confer discussions regarding Plaintiffs'
23  requested deposition of Mr. Jobs. Apple explained that given the limited issues remaining in the
24  case, Mr. Jobs's deposition is unnecessary and relevant discovery is available through less
25  burdensome means. Kiernan Decl. ¶ 6, Ex. 6. Apple asked Plaintiffs to explain the reasons
26  justifying Mr. Jobs's deposition. *Id.*

27  Plaintiffs provided only a vague, conclusory response, stating that Mr. Jobs is a "hands-on
28  CEO" and "was intimately involved in issues related to Apple's efforts to monopolize the online

music and portable music player markets." Kiernan Decl. ¶ 7, Ex. 7. Plaintiffs also claimed that they want to depose Mr. Jobs regarding certain emails and other documents, which Plaintiffs refused to identify but which they claimed relate to Apple's market share and licensing of FairPlay. *Id*. Misstating the standard for allowing an apex deposition, Plaintiffs suggested that a protective order will be granted only when the witness has "no first-hand knowledge" of the facts at issue. *Id*. To the contrary, an apex deposition is permitted only if the executive has unique, firsthand knowledge of relevant information that is not available through other, less burdensome means, such as depositions of other employees or interrogatories.

Apple explained that Plaintiffs have already obtained documents, and would soon depose those Apple witnesses with firsthand knowledge, regarding the limited issues remaining in the case. Kiernan Decl. ¶¶ 8-10, Exs. 6, 8. In fact, to date Apple has produced over one million pages of documents, including documents describing FairPlay updates. Apple also produced source code for FairPlay and the updates thereto. The documents describe, in both highly technical detail and general terms, FairPlay's architecture and technology used by Apple's engineers. Kiernan Decl. ¶ 8. In response to Plaintiffs' Rule 30(b)(6) deposition notices, Apple has also identified the Apple employees with firsthand knowledge of the facts relating to Apple's FairPlay updates who can address Plaintiffs' allegations that the updates were "unnecessary," "non-improving," and "intended to exclude competition." Kiernan Decl. ¶ 10, Ex. 8:

- Jeffrey Robbin: Mr. Robbin is Apple's Vice President of iTunes who has firsthand knowledge regarding development of the iPod, iTunes client, the iTunes Store, updates to iTunes, updates to FairPlay included in iTunes 4.7 that are the focus of the amended complaint, and communications with the various record labels regarding security breaches and updates to FairPlay. Mr. Robbin was designated to provide testimony relating to communications with content providers regarding Apple's updates to FairPlay.

- Augustin Farrugia: Mr. Farrugia is Apple's Senior Director of DRM Technologies with responsibilities for FairPlay engineering, design, and development. Mr. Farrugia was designated to provide testimony relating to updates made to FairPlay in the iTunes versions following version 6.0.

- Dave Heller. Mr. Heller is Apple's Director of iTunes Client Engineering and was responsible for FairPlay engineering and development prior to the hiring of Augustin Farrugia. He has firsthand knowledge regarding updates to iTunes and updates to FairPlay included in iTunes 4.7 that are the focus of the amended complaint. Mr. Heller was designated to provide testimony relating to the relationship between iPod

1  firmware and iTunes software and updates made to FairPlay in iTunes versions 6.0 and earlier.

*Id*.

The parties' meet-and-confer efforts were unsuccessful. Plaintiffs scheduled the depositions of the Apple employees identified as having firsthand knowledge of the facts at issue for December 3, 8 and 15. But without waiting to exhaust those witnesses' knowledge of the relevant issues, Plaintiffs continued to insist on Mr. Jobs's deposition. Kiernan Decl. ¶ 11.

### D. Apple's 30(b)(6) Designees Have Complete, Firsthand Knowledge of All the Relevant Information Plaintiffs Allegedly Seek from Mr. Jobs.

Apple agreed to make its witnesses with firsthand knowledge regarding FairPlay's updates available for full-day depositions, and even agreed to allow Plaintiffs to take up to nine hours of testimony per witness to give Plaintiffs adequate time with each witness. Kiernan Decl. ¶ 10, Ex. 8. The depositions of Messrs. Robbin and Farrugia have now concluded. These witnesses were prepared and responded fully to Plaintiffs' questions. Plaintiffs opted not to take the full nine hours with either of these witnesses. Plaintiffs have not, nor can they, identify any information they solicited from Apple's 30(b)(6) designees but could not obtain because such information is uniquely known to Mr. Jobs. Kiernan Decl. ¶ 12.

The deposition of Apple's third 30(b)(6) designee, Mr. Heller, is scheduled for December 15. Apple proposed to Plaintiffs that this protective order motion be filed, if at all, after Mr. Heller's deposition. As Apple explained, Plaintiffs would then be in a better position to evaluate whether they still believed they need Mr. Jobs's deposition, or whether, as Apple believes, any testimony that Mr. Jobs could provide would be duplicative of the testimony of Apple's other employees. Kiernan Decl. ¶ 13, Ex. 9. Plaintiffs rejected that schedule and insisted that Apple file this motion for protective order by December 9. Kiernan Decl. ¶ 14, Ex. 10.

### III. ARGUMENT

#### A. Depositions of a Corporation's Top Executive Are Disfavored.

Courts have long recognized the potential for harassment and burden in depositions of the senior-most executives of large corporations. "Virtually every court that has addressed deposition

notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." *See Celerity*, 2007 WL 205067, at *3; *see also Serrano v. Cintas Corp.*, 2010 WL 2490775, at *2 (E.D. Mich. June 10, 2010). The court in *Serrano* explained that "the unique and important position of chief executive officers" justifies the protection courts must offer these executives pursuant to the "apex" doctrine:

> [T]he well recognized doctrine [provides] that courts will protect individuals at the apex of a corporate hierarchy from deposition when such individuals lack personal knowledge regarding the litigation, or when the requested information could be garnered from equally or more knowledgeable subordinates. The doctrine recognizes the unique and important position of chief executive officers, and the potential for harassment and abuse inherent in subjecting them to discovery burdens in the absence of a showing that the individual possesses relevant evidence which is not readily obtainable from other sources.

*Id.* (citations omitted). The rationale for precluding apex depositions set forth in *Serrano* is particularly applicable where, as here, the defendant is one of the largest companies in the world, offers diverse products and services, and operates in some of the most fiercely competitive markets. Moreover, Mr. Jobs's status as one of the world's most recognizable business leaders increases the potential that harassing discovery will be directed at him.

Courts have the authority to prevent unnecessary depositions of chief executives. Federal Rule of Civil Procedure 26(c) provides that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Rule 26(b)(2) specifically requires the court "to limit discovery if it determines that the discovery sought is obtainable from other sources, that is, those that are more convenient and less burdensome." Fed. R. Civ. P. 26(b)(2); *see also Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985).

Pursuant to this authority, courts have defined well-established criteria for determining when a senior executive can be deposed. A party cannot depose an executive at the apex of the corporation unless the party seeking the deposition establishes (1) the individual has unique, non-repetitive, firsthand knowledge of the facts at issue in the case, and (2) the party seeking the deposition has exhausted without success other less intrusive discovery methods, such as

1  interrogatories and depositions of lower-level employees. *See, e.g.*, *Salter*, 593 F.2d at 651;
2  *Websidestory, Inc.*, 2007 WL 1120567, at *2; *Cardenas v. Prudential Ins. Co. of Am.*, 2003 WL
3  21293757, at *1 (D. Minn. May 16, 2003) ("[C]ourts frequently restrict efforts to depose senior
4  executives where the party seeking the deposition can obtain the same information through a less
5  intrusive means, or where the party has not established that the executive has some unique
6  knowledge pertinent to the issues in the case.").

7      A party seeking the deposition of a chief executive cannot defeat a motion for protective
8  order merely by establishing that the executive possesses relevant information, if such
9  information is also known and available through other means. *See Celerity*, 2007 WL 205067, at
10  *4-5 (granting protective order even though executives had personal knowledge of relevant facts
11  because such knowledge was not unique to those executives); *Gutescu v. Carey Int'l, Inc.*, 2003
12  WL 25589029, at *1-2 (S.D. Fla. June 23, 2003) (barring deposition of CEO notwithstanding that
13  the CEO was listed on a press release relevant to the issues in the case, finding that the plaintiff
14  could take a Rule 30(b)(6) deposition to try to obtain the discovery through other means); *Porter
15  v. Eli Lilly & Co.*, 2007 WL 1630697, at *3 (N.D. Ga. 2007) (the party seeking the deposition
16  must show that "the executive would have personal knowledge of the events in question and a
17  plaintiff has no other means of obtaining the information").

18      Under this well-established law, the requested deposition of Mr. Jobs is improper.

19      **B.**    **Plaintiffs Cannot Establish That Mr. Jobs Has Unique Knowledge of Facts Relevant to the Issues Remaining in This Case.**
20

21      Apple repeatedly asked Plaintiffs to identify the topics of which Mr. Jobs has unique,
22  firsthand knowledge sufficient to justify this apex deposition. In a written response, Plaintiffs
23  offered only three conclusory and insufficient reasons for their purported need for the deposition:
24  Mr. Jobs (1) is a "hands-on" CEO; (2) was intimately involved in issues related to Apple's
25  alleged efforts to monopolize the audio download and portable music player markets; and
26  (3) wrote certain unidentified emails and other documents regarding market share and issues
27  related to licensing of FairPlay. Kiernan Decl. ¶ 7, Ex. 7. None of these reasons warrants
28  permitting Mr. Jobs's deposition to proceed.

1    First, Apple agrees with Plaintiffs' characterization that Mr. Jobs is a "hands-on CEO" who is actively involved in the management of Apple. The question, however, is not whether the executive is an active manager but whether the executive possesses discoverable information not available from other sources. Thus, the rule against apex depositions is not limited to absentee CEOs. Indeed, the more active a CEO the more likely that a deposition will interfere with the day-to-day operations of the company.

Second, Plaintiffs' thin assertion that Mr. Jobs was "intimately involved" in the issues relating to Plaintiffs' monopolization claim has no support or explanation. And even if that assertion were true, Plaintiffs do not claim that such "intimate knowledge" is unique to Mr. Jobs.

Finally, Apple has already produced documents relating to its market share and the issues relating to the licensing of FairPlay and has provided deponents to testify on those issues. Plaintiffs have not identified any information regarding market share or licensing that can be obtained from Mr. Jobs but not elsewhere. Moreover, as Apple pointed out in meet-and-confer discussions, Apple's licensing practices with respect to FairPlay are not at issue in this case because the issues have been limited to Apple's software updates. Kiernan Decl. ¶ 6, Ex. 6.

A deposition of Mr. Jobs would not result in any unique, firsthand knowledge of any issues that remain relevant to this action.

### C.   The Information Plaintiffs Seek From Mr. Jobs Is Available From Apple's Other Witnesses.

An apex deposition of a chief executive will be permitted only if lower-level employees are unable to provide relevant information and the requesting party can establish that such information is known firsthand by the chief executive. *See Stone v. Morton Int'l Inc.*, 170 F.R.D. 498, 504 (D. Utah 1997) (granting a protective order until plaintiff had taken a Rule 30(b)(6) deposition and established that the apex witness was the logical source for the evidence). Plaintiffs, nonetheless, insisted on Mr. Jobs's deposition even before discovering what information Apple's other employees would provide.

Apple identified three employees with information relevant to Apple's FairPlay updates and designated them as persons knowledgeable to testify pursuant to Rule 30(b)(6). Plaintiffs

have now concluded two of those depositions without any indication that Apple's witnesses were not fully prepared or that their testimony was insufficient. Kiernan Decl. ¶ 12. These employees have adequately responded to Plaintiffs' questions, and any examination of Mr. Jobs would be redundant at best and is not permitted. And Plaintiffs may not argue that they failed to ask questions of these employees and, as a result, are entitled to explore those issues with Mr. Jobs. Failure to ask relevant questions during lower-level depositions does not provide a basis to assume the CEO may possess the answers to the questions not asked. *See Reif v. CNA*, 248 F.R.D. 448, 453-54 (E.D. Pa. 2008) ("The depositions, thus far, have failed to demonstrate the deponents lack the information, especially when the pertinent questions have not been asked.").

The deposition of Apple's third 30(b)(6) designee is scheduled for December 15, but Plaintiffs insisted that Apple move for a protective order before that deposition and before knowing whether that witness can adequately address the issues related to the updates. Kiernan Decl. ¶¶ 13-14, Ex. 10. Apple is confident that, like Apple's two other designees, this witness will adequately address the issues Plaintiffs would seek to explore regarding Apple's software updates and that Plaintiffs will be unable to identify any information possessed only by Mr. Jobs. Plaintiffs' insistence that Mr. Jobs's deposition go forward without knowing whether the evidence they seek can be obtained from depositions of other employees is precisely what the apex deposition rule seeks to avoid. *See Stelor Prods., Inc. v. Google, Inc.*, 2008 WL 4218107, at *4 (S.D. Fla. Sept. 15, 2008) (denying motion to compel depositions of Google founders Sergey Brin and Larry Page where opposing party had not first taken Rule 30(b)(6) depositions on identical topics, stating that "if questions remain unanswered after [30(b)(6) designee's] deposition, then plaintiff would be permitted to depose both Brin and Page on the limited issues yet unanswered.")

## IV.   **CONCLUSION**

Plaintiffs cannot meet the high standard for an apex deposition of Apple's CEO. Plaintiffs cannot show that Mr. Jobs has unique, non-repetitive, firsthand knowledge of the facts at issue in the case, and the information Plaintiffs seek is readily available from other sources. Accordingly, Apple respectfully requests that the Court grant a protective order preventing the deposition of Mr. Jobs.

Dated: December 9, 2010

By: /s/
David C. Kiernan

JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104

Attorneys for Defendant APPLE INC.

SFI-656655v1