ROBBINS GELLER RUDMAN
  &amp; DOWD LLP
JOHN J. STOIA, JR. (141757)
BONNY E. SWEENEY (176174)
THOMAS R. MERRICK (177987)
ALEXANDRA S. BERNAY (211068)
PAULA M. ROACH (254142)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
johns@rgrdlaw.com
bonnys@rgrdlaw.com
tmerrick@rgrdlaw.com
xanb@rgrdlaw.com
proach@rgrdlaw.com

THE KATRIEL LAW FIRM
ROY A. KATRIEL (*pro hac vice*)
1101 30th Street, N.W., Suite 500
Washington, DC 20007
Telephone: 202/625-4342
202/330-5593 (fax)
rak@katriellaw.com

Co-Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTI-TRUST LITIGATION | Lead Case No. C-05-00037-JW(HRL) |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION FOR PROTECTIVE ORDER PREVENTING THE DEPOSITION OF STEVE JOBS |
| ALL ACTIONS. | |

JUDGE:     Hon. Howard R. Lloyd
DATE:      January 18, 2011
TIME:      10:00 a.m.
CTRM:    2 – Fifth Floor

**[REDACTED]**

590622_1

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ..................................................................................................1

II. BACKGROUND ..................................................................................................2

III. ARGUMENT .......................................................................................................5

    A.  ████████████████████████████████ ...................................5

        1.  ████████████████████████████ .................................6

        2.  ███████████████████████ ...........................................7

    B.  Depositions of High-Level Executives Are Routinely Granted Where the Executives Have Unique, Personal Knowledge..............................................9

    C.  Plaintiffs' Deposition Notice Was Timely.............................................................12

IV. CONCLUSION....................................................................................................13

590622_1

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION FOR PROTECTIVE ORDER PREVENTING    - i -
THE DEPOSITION OF STEVE JOBS - C-05-00037-JW(HRL)

1

## TABLE OF AUTHORITIES

2
                                                                                    **Page**

3  **CASES**

4  *Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP,*
5      592 F.3d 991 (9th Cir. 2010) ...........................................................................4

6  *Beckman Indus., Inc. v. Int'l Ins. Co.,*
       966 F.2d 470 (9th Cir. 1992) ...........................................................................1
7

   *Blankenship v. Hearst Co.,*
8      519 F.2d 418 (9th Cir. 1975) ........................................................................9, 10

9  *Cardenas v. Prudential Ins. Co. of Am.,*
       No. 99-1421 (JRT/FLN), 2003 U.S. Dist. LEXIS 9510
10     (D. Minn. May 16, 2003), ..............................................................................11

11 *Celerity, Inc. v. Ultra Clean Holding, Inc.,*
       No. C 05-4374 MMC (JL), 2007 U.S. Dist. LEXIS 8295
12     (N.D. Cal. Jan. 25, 2007), ...............................................................................9

13
   *Detoy v. City & County of San Francisco,*
14     196 F.R.D. 362 (N.D. Cal. 2000)....................................................................10

15 *DR Sys. v. Eastman Kodak Co.,*
       No. 08cv699-H (BLM), 2009 U.S. Dist. LEXIS 83755
16     (S.D. Cal. Sept. 14, 2009) ..............................................................................10

17 *First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust,*
       No. C 03-02013 RMW (RS), 2007 U.S. Dist. LEXIS 88625
18     (N.D. Cal. Nov. 19, 2007)............................................................................5, 10

19 *First United Methodist Church of San Jose v. Atl. Mut. Ins. Co.,*
       No. C-95-2243 DLJ, 1995 U.S. Dist. LEXIS 22469
20     (N.D. Cal. Sept. 19, 1995) ..............................................................................10

21 *Google Inc.v. Am. Blind & Wallpaper Factory, Inc.,*
22     No. C 03-5340 JF(RS), 2006 U.S. Dist. LEXIS 67284
       (N.D. Cal. Sept. 6, 2006) ...................................................................................1
23

24 *Gutescu v. Carey Int'l, Inc.,*
       No. 01-4026-CIV-MARTINEZ/SIMONTON, 2003 U.S. Dist. LEXIS 27502
25     (S.D. Fla. June 24, 2003) ...............................................................................12

26 *Image Tech. Servs., Inc. v. Eastman Kodak Co.,*
27     125 F.3d 1195 (9th Cir. 1997) ......................................................................5, 8

28

Page

*Kennedy v. Jackson Nat'l Life Ins. Co.,*
  No. C 07-0371 CW (MEJ), 2010 U.S. Dist. LEXIS 47866
  (N.D. Cal. Apr. 22, 2010) ...................................................................................................1

*Lexington Ins. Co. v. Sentry Select Ins. Co.,*
  No. 1:08-cv-1539 LJO GSA, 2009 U.S. Dist. LEXIS 122184
  (E.D. Cal. Dec. 17, 2009)..............................................................................................1, 2, 3

*Mulvey v. Chrysler Corp.,*
  106 F.R.D. 364 (D.R.I. 1985) ..........................................................................................13

*Naftchi v. New York Univ. Med. Ctr.,*
  172 F.R.D. 130 (S.D.N.Y. 1997) .....................................................................................11

*Porter v. Eli Lilly and Co.,*
  No. 1:06-cv-1297-JOF, 2007 WL 1630697
  (N.D. Ga. June 1, 2007) ...................................................................................................12

*Salter v. Upjohn Co.,*
  593 F.2d 649 (5th Cir. 1979) .............................................................................................1

*Serrano v. Cintas Corp.,*
  No. 04-40132, 2010 U.S. Dist. LEXIS 57624
  (E.D. Mich. June 10, 2010)...............................................................................................11

*Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.,*
  203 F.R.D. 98 (S.D.N.Y. 2001) ........................................................................................11

*WebSideStory, Inc. v. NetRatings, Inc.,*
  No. 06cv0408 WQH (AJB), 2007 U.S. Dist. LEXIS 20481
  (S.D. Cal. Mar. 22, 2007)...................................................................................................9

*Zamora v. D'Arrigo Bros. Co. of Cal.,*
  No. C 04-00047 JW (HRL), 2007 WL 806518
  (N.D. Cal. Mar. 15, 2007) ..................................................................................................2

**STATUTES, RULES AND REGULATIONS**

Federal Rule of Civil Procedure
  Rule 26(c)...........................................................................................................................1
  Rule 56(f)..........................................................................................................................12

590622_1

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION FOR PROTECTIVE ORDER PREVENTING
THE DEPOSITION OF STEVE JOBS - C-05-00037-JW(HRL)                                    - iii -

# I.    INTRODUCTION

This Court should reject Apple's attempt to shield CEO Steve Jobs from providing deposition testimony.  Mr. Jobs has first-hand knowledge of matters directly at issue in this monopolization case that cannot be gleaned from any other source.  ██████████████

████████████████████████████████████████████████████████████

████████████████████████████

Apple does not come close to meeting its heavy burden of showing "good cause" for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure.[1]  A high-level corporate officer may be shielded from deposition only where "'the officer has no first hand knowledge of the facts of the case or where the officer's testimony would be repetitive.'" *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-5340 JF(RS), 2006 U.S. Dist. LEXIS 67284, at *10 n.3 (N.D. Cal. Sept. 6, 2006) (allowing deposition of Google founder where testimony revealed founder may have been involved in policy change at issue).  Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy Rule 26(c). *Kennedy v. Jackson Nat'l Life Ins. Co.*, No. C 07-0371 CW (MEJ), 2010 U.S. Dist. LEXIS 47866, at *3 (N.D. Cal. Apr. 22, 2010); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). "A court should not prohibit a relevant deposition 'absent extraordinary circumstances' because such a prohibition would 'likely be in error.'" *Lexington Ins. Co. v. Sentry Select Ins. Co.*, No. 1:08-cv-1539 LJO GSA, 2009 U.S. Dist. LEXIS 122184, at *8 (E.D. Cal. Dec. 17, 2009) (quoting *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)).  Here, Plaintiffs can readily demonstrate that Mr. Jobs possesses unique knowledge of critical issues and that such testimony will not be repetitive.

Apple has utterly failed to support its motion with specific examples of how a deposition of Mr. Jobs would constitute undue hardship, or provide any support for its contention that Mr. Jobs has no unique knowledge of relevant issues.  Contrary to established precedent, Apple has also failed to provide an affidavit from Mr. Jobs showing he has no unique first-hand knowledge of matters

---

[1]    Unless otherwise noted, citations are omitted and emphasis is added.

590622_1

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION FOR PROTECTIVE ORDER PREVENTING THE DEPOSITION OF STEVE JOBS - C-05-00037-JW(HRL)                                                          - 1 -

1    relevant to the issues in the case.  This failure strongly counsels against granting Apple's motion.

2    *See Zamora v. D'Arrigo Bros. Co. of Cal.*, No. C 04-00047 JW (HRL), 2007 WL 806518, at *6

3    (N.D. Cal. Mar. 15, 2007) (protective order denied where defendant failed to submit an affidavit

4    swearing that the individual to be deposed did not have the information sought); *Lexington*, 2009

5    U.S. Dist. LEXIS 122184 (protective order denied where no affidavit submitted and potential

6    deponents possessed relevant personal knowledge).

7    For the reasons set forth below, this Court should deny Apple Inc.'s Motion for a Protective

8    Order Preventing the Deposition of Steve Jobs (Dkt. No. 396) and permit Plaintiffs to depose Mr.

9    Jobs.

10   **II.     BACKGROUND**

11   Plaintiffs are iPod purchasers who allege that Apple unlawfully maintained its dual

12   monopolies in the markets for portable digital media players and digital audio downloads by using

13   pretextual software and firmware updates that were intended to, and had the effect of, excluding

14   competitors from the markets.  Dkt. No. 322 (Amended Consolidated Complaint for Violations of

15   Sherman Antitrust Act, Clayton Act, Cartwright Act, California Unfair Competition Law,

16   Consumers Legal Remedies Act, and California Common Law of Monopolization).  As a result,

17   Apple has been able to maintain its monopolies longer than would otherwise have been possible, and

18   has been able to charge supracompetitive prices for iPods. *Id.*, ¶¶81-84, 88. Plaintiffs allege that

19   when Apple launched its online digital audio downloads store (now called the iTunes Store) in 2003,

20   it decided to use a proprietary Digital Rights Management ("DRM") system called FairPlay – rather

21   than other, widely-used open systems – in order to lock iTunes Store customers into using the iPod.

22   *Id.*, ¶¶38-52. As a result, until recently, digital audio downloads purchased from other internet sites

23   (such as Amazon.com or Walmart.com) could not play directly on an iPod. *Id.*, ¶¶68-72.  Similarly,

24   songs purchased from the iTunes Store could not play directly on any portable digital media player

25   other than the iPod. *Id.*

26

27

28

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION FOR PROTECTIVE ORDER PREVENTING
THE DEPOSITION OF STEVE JOBS - C-05-00037-JW(HRL)

1         Until the major recording labels that license content to Apple decided to abandon DRM in

2    order to open up the digital audio download market and reduce Apple's dominance, Apple jealously

3    guarded its closed-loop system.[2]  *Id.*, ¶¶48-51; *see also* Ex. 1 (Apple_AIIA00090405).  Apple

4    rejected requests to license FairPlay and vehemently and publicly shut down legitimate and legal

5    efforts by would-be rivals to make their products interoperable with Apple's.  Dkt. No. 322, ¶¶48-51.

6         On July 26, 2004, RealNetworks, Apple's competitor in the sale of digital audio downloads,

7    announced that songs legally sold through its online store could be played directly on the iPod, in

8    addition to other competing portable digital music media.  *Id.*, ¶53; *see also* Ex. 2

9    (Apple_AIIA00090441-443).  RealNetworks used technology, referred to as Harmony, to convert its

10   Helix DRM into DRM that was compatible with Apple's iPod.  Dkt. No. 322, ¶¶53.  RealNetworks'

11   announcement was significant because it represented the first real threat to Apple's monopoly in the

12   digital audio download market.  At the time of the RealNetworks announcement, Apple controlled

13   ███  of the portable digital media player market.  Ex. 3 (Apple_AIIA00099408).  Thus, in order to

14   compete in the digital audio download market, any would-be competitor had to make its music

15   directly playable on the iPod.  That was precisely what RealNetworks accomplished, legally and

16   with the full endorsement of the recording labels that license content to Apple.  Ex. 1

17   (Apple_AIIA00090405).

18        RealNetworks immediately began selling its audio downloads for as low as 49 cents per-

19   track, far cheaper than Apple's 99 cent per-track price.  Dkt. No. 322, ¶¶54-55.  ███████

20   ████████████████████████████████████████████████████

21   ████████████████████████  Ex. 3 (Apple_AIIA00099408).

22        Apple's response to Harmony was swift and punishing.  In a disparaging public statement

23   ████████████████████████████████  Apple denounced its

24   competitor as hacker-like and warned RealNetwork and its customers (as well as any other would-be

25

26     [2]    All references to "Ex." and Exs." are to the Declaration of Alexandra S. Bernay in Support of

27   Plaintiffs' Opposition to Apple Inc.'s Motion for a Protective Order Preventing the Deposition of
Steve Jobs, ("Bernay Decl."), filed concurrently herewith.

28

1   competitors) that songs purchased from RealNetworks would likely stop playing on iPods in the

2   future because Apple intended to update its software and firmware. Dkt. No. 322, ¶59; *see also*

3   Ex. 1 (Apple_AIIA00090405-07); Ex. 4 (Apple_AIIA00093875-76); Ex. 5 (*Apple Accuses*

4   *RealNetworks of Hacking*).

5       True to its word, beginning with the release of iTunes version 4.7 in October 2004, Apple's

6   updates to the iPod and iTunes software and firmware prevented songs downloaded from

7   RealNetworks' music store from being played on iPods. Dkt. No. 322, ¶60. As a result, Apple was

8   able to maintain its dual monopolies in the portable digital media player and digital audio download

9   markets, and thereby maintain its supracompetitive pricing of the iPod, until at least March 31, 2009.

10  *Id.*, ¶¶62, 67-72.

11      Apple argues that it broke Harmony's interoperability with the iPod not because of any

12  anticompetitive intent, but rather because its contractual obligations with the recording labels

13  required it to issue firmware and software updates periodically to thwart music piracy. Breaking

14  Harmony, according to Apple, was merely a side effect of these necessary updates. Dkt. No. 325,

15  329 (Apple's Motion to Dismiss or, Alternatively, for Summary Judgment).

16      However, discovery to date demonstrates that Apple issued unnecessary and non-improving

17  iTunes and iPod software and firmware updates for the purpose of excluding RealNetworks and

18  other potential rivals, and that Apple's asserted justifications for these updates are pretextual. As the

19  principal case Apple relies on makes clear, a monopolist that modifies its product in a manner that

20  excludes competitors is afforded deference under Section 2 of the Sherman Act *only* if that product

21  design change provides an added benefit to consumers or is otherwise supported by procompetitive

22  justifications. *Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*, 592 F.3d 991, 998-

23  99 (9th Cir. 2010) ("changes in product design *are not immune* from antitrust scrutiny and in certain

24  cases may constitute an unlawful means of maintaining a monopoly under Section 2"). ████████

25  ████████████████████████████████████████████████

26  ████████████████████████████████████████████████

27  ████████████████████████████████████████████████

28  ████████████████████████  *See* Ex. 1 (Apple_AIIA00090405).

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION FOR PROTECTIVE ORDER PREVENTING
THE DEPOSITION OF STEVE JOBS - C-05-00037-JW(HRL)                                        - 4 -

1         Plaintiffs can prevail on their Section 2 claims against Apple if they can prove – as supported

2    by discovery to date – that Apple's asserted procompetitive justifications for the updates that

3    disabled Harmony are pretextual.  *See Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d

4    1195, 1212 (9th Cir. 1997) ("A plaintiff may rebut an asserted business justification by

5    demonstrating either that the justification does not legitimately promote competition or that the

6    justification is pretextual.").  As Judge Ware found in his order denying Apple's motion for

7    summary judgment on Plaintiffs' Section 2 claims, "the temporal proximity between RealNetwork's

8    announcement of its iPod-compatible Harmony technology in July 2004 and the release of iTunes

9    4.7, which ended that compatibility, in October 2004 *raises questions about the real purpose of*

10   *Defendant's software redesign* that Plaintiffs should at least have an opportunity to explore through

11   additional discovery."  Dkt. No. 377 at 12-13.  Plaintiffs are therefore entitled to probe key

12   witnesses' understanding of, and asserted justifications for, issuing the updates that disabled

13   Harmony.  *Image Tech.*, 125 F.3d at 1219 ("Evidence regarding the state of mind of [defendant's]

14   employees may show pretext, when such evidence suggests that the proffered business justification

15   played no part in the decision to act.").

16   **III.    ARGUMENT**

17       **A.**    ████████████████████████████████████████████

18

19       Apple's documents and witnesses demonstrate that Mr. Jobs was centrally involved in the

20   principal issues in this case.[3] ████████████████████████████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ████████████████████████

24   

25   [3]    While other witnesses may also testify about some of the emails and statements that will be
     the subject of Mr. Jobs' examination, "[t]he mere fact . . . that other witnesses may be able to testify

26   as to what occurred at a particular time or place does not mean that a high-level corporate officer's
     testimony would be 'repetitive.' Indeed, it is not uncommon for different witnesses to an event to

27   have differing recollections of what occurred." *First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust*, No.
     C 03-02013 RMW (RS), 2007 U.S. Dist. LEXIS 88625, at *6 (N.D. Cal. Nov. 19, 2007).

28

1     **1.**   ████████████████████████████████

2     As recent deposition testimony and documents only recently produced by Apple reveal,[4] █

3     ████████████████████████████████████████████████

4     ████████████████████████████████████████████████

5     ████████████████████████████████████████████████

6     ████████████████████   Ex. 6 (Robbin Tr. at 115:14-22); Ex. 7 (Cue Tr. at 19:14-19).

7     ████████████████████████████████████████████████

8     ████████████████████████████████████████████████

9     ████████████████████████████████████████████████

10    ██████████████████████████   Ex. 8 (Apple_AIIA00320482), Ex. 9

11    (Apple_AIIA00093477).

12    ████████████████████████████████████████████████

13    ████████████████████████████████████████████████

14    ████████████████████████████████████████████████

15    ████████████████   Ex. 10 (Apple_AIIA00098491). ██████████

16    ████████████████████████████████████████████████

17    ████████████████████████████████████████████████

18    ████████████████████████████████████████████████

19    ████████████████████████████████████████████████

20    ████████████████████████████████████████████████

21    ████████████████████████████████████████████████

22

23

24    _____

25    [4]      Apple faults Plaintiffs for not identifying by Bates number the documents about which it seeks to question Mr. Jobs (*see* Dkt. No. 396 at 4-5), but Plaintiffs have more than met their burden.

26    During meet and confer negotiations, which stretched on for more than a month, Plaintiffs provided a number of examples of the general topics on which they intend to examine Mr. Jobs, and reminded

27    Apple's attorneys that Apple had produced several key documents written by or sent to Mr. Jobs. Bernay Decl., ¶¶4, 6, 10, 12.

28

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION FOR PROTECTIVE ORDER PREVENTING
THE DEPOSITION OF STEVE JOBS - C-05-00037-JW(HRL)                                    - 6 -





Ex. 11 (Apple_AIIA00098511).

Ex. 8 (Apple_AIIA00320482).

Ex. 9 (Apple_AIIA00093477).

2.

*See, e.g.,*

Ex. 2 (Apple_AIIA00090441); Ex. 7 (Cue Tr. at 125:1-24).

590622_1

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION FOR PROTECTIVE ORDER PREVENTING
THE DEPOSITION OF STEVE JOBS - C-05-00037-JW(HRL)                                                          - 7 -



1

2

3

4

5

6

7  Ex. 4 (Apple_AIIA00093875).

8

9      We are stunned that Real has adopted the tactics and ethics of a hacker to break into
       the iPod, and we are investigating the implications of their actions under the DMCA
10     and other laws.  We strongly caution Real and their customers that when we update
       our iPod software from time to time it is highly likely that Real's Harmony
11     technology will cease to work with current and future iPods.

12  Ex. 5 (*Apple Accuses RealNetworks of Hacking*).

13

14

15

16      Ex. 4 (Apple_AIIA00093875)

17

18

19

20                                              Ex. 6 (Robbin Tr. at 115:14-22); Ex.

21  7 (Cue Tr. at 19:14-22, 20:4-21:1, 37:21-39:22, 49:13-51:15).

22

23                              Mr. Jobs' knowledge and state of mind

24                    information that can be gained from no other source – is therefore

25  critical. *See Image Tech.*, 125 F.3d at 1219 ("Evidence regarding the state of mind of [defendant's]

26  employees may show pretext, when such evidence suggests that the proffered business justification

27  played no part in the decision to act."). *See also* Ex. 3 (Apple_AIIA00099408)

28

590622_1

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION FOR PROTECTIVE ORDER PREVENTING
THE DEPOSITION OF STEVE JOBS - C-05-00037-JW(HRL)                                              - 8 -

1 ██████████████████████████████████████████████████████

2 ██████████████████

### B. Depositions of High-Level Executives Are Routinely Granted Where the Executives Have Unique, Personal Knowledge

Apple claims depositions of a corporation's top executive are rarely allowed. This is not true. While cognizant of the potential for "abuse or harassment" of top executives, the overwhelming weight of authority holds that where, as here, an executive has personal knowledge regarding the litigation not readily obtainable from other sources, a protective order will not issue. "[W]hen a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *WebSideStory, Inc. v. NetRatings, Inc.*, No. 06cv0408 WQH (AJB), 2007 U.S. Dist. LEXIS 20481, at *7 (S.D. Cal. Mar. 22, 2007).[5]

The Ninth Circuit's seminal decision in *Blankenship v. Hearst Co.*, 519 F.2d 418 (9th Cir. 1975), is directly on point. In that case, the Ninth Circuit held that the district court erred when it denied plaintiffs' bid to depose George Hearst, publisher of the Los Angeles Herald Tribune. According to the defendants, Mr. Hearst would not have information relevant to plaintiff's antitrust claims that plaintiff could not learn from other sources. *Id.* at 429. The Ninth Circuit rejected that argument. As the Court recognized, "[u]nder the liberal discovery principles of the Federal Rules defendants were required to carry a ***heavy burden*** of showing why discovery was denied." *Id.* The defendants' assertion that Mr. Hearst had no information unavailable elsewhere, countered by plaintiff's suggestions regarding evidence he might know, was insufficient to satisfy that burden. *Id.* The Ninth Circuit ordered that the deposition proceed.

---

[5]    *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374 MMC (JL), 2007 U.S. Dist. LEXIS 8295 (N.D. Cal. Jan. 25, 2007), relied on by Apple, is unavailing. In that case, the court granted the motion for a protective order pending other methods of discovery and held that the defendant could renew the motion should those other means of discovery prove inadequate. *Id.* at *15. Critically, in that case, there was no evidence of documents written by the executives dealing with matters central to the litigation. Instead there were allegations only that the executive "participated" in an acquisition of another company and that the executive had been at the company for some length of time and would therefore have knowledge regarding sales of products. This is a far cry from the detailed and specific evidence of Mr. Jobs unique and relevant first-hand knowledge set forth in this brief.

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION FOR PROTECTIVE ORDER PREVENTING THE DEPOSITION OF STEVE JOBS - C-05-00037-JW(HRL)

1    Following *Blankenship*, district courts within this District have regularly denied motions to

2  prevent the depositions of high-ranking officers with relevant knowledge.  Indeed, Mr. Jobs was

3  deposed in another Section 2 case in this District, despite Apple's unsuccessful motion for a

4  protective order.  In *PT Technologies v. Apple Computer*, No. 98-cv-01804 (N.D. Cal.), United

5  States Magistrate Judge Maria-Elena James denied Apple's motion for a protective order even

6  though Mr. Jobs submitted a declaration attesting that he was not "the most knowledgeable" about

7  the licensing program at issue. Ex. 12 (*PT Technologies*, Order Denying Defendant Apple's Motion

8  for a Protective Order, dated December 7, 2000) at 2.  The Court found "Defendant Apple has not

9  established that Steve Jobs does not have unique and highly relevant information to the claims at

10  bar."  *Id.*  The *PT Technologies* court further found the burden on Mr. Jobs did not outweigh the

11  need for his deposition and that written questions would not provide Plaintiffs with the opportunity

12  to assess Mr. Jobs testimony as a percipient witness.  *Id.*

13    In *PT Technologies*, plaintiffs had far less evidence tying Mr. Jobs to the challenged conduct

14  than Plaintiffs do here, relying on testimony about Mr. Jobs' role in the licensing program at issue.

15  *Id.* ████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████  Ex. 6

18  (Robbin Tr. at 115:4-116:7; 176:7-177:15); Ex. 7 (Cue Tr. at 19:14-22, 49:13-51:15).

19    District courts regularly deny motions to protect corporate heads from depositions where

20  those individuals have personal knowledge of issues relevant to the case.  *DR Sys. v. Eastman Kodak*

21  *Co.*, No. 08cv699-H (BLM), 2009 U.S. Dist. LEXIS 83755, at *8 (S.D. Cal. Sept. 14, 2009)

22  (protective order denied where corporate executive had some personal knowledge of topics relevant

23  to claims and defenses at issue); *First Nat'l Mortg. Co.*, 2007 U.S. Dist. LEXIS 88625, at *7 (where

24  executive may have "at least some relevant personal knowledge," the protective order was denied);

25  *First United Methodist Church of San Jose v. Atl. Mut. Ins. Co.*, No. C-95-2243 DLJ, 1995 U.S.

26  Dist. LEXIS 22469, at *6 (N.D. Cal. Sept. 19, 1995) (granting motion to compel deposition of

27  company president, holding, "where a corporate officer has first hand-knowledge of important,

28  relevant, and material facts in the case the deposition should be allowed"); *Detoy v. City & County of*

1  *San Francisco*, 196 F.R.D. 362 (N.D. Cal. 2000) (San Francisco Chief of Police ordered to sit for

2  deposition, since he had personal knowledge of facts relevant to the case).

3         Courts in other circuits reach the same conclusion when the person to be deposed has

4  personal knowledge relevant to the lawsuit. *See* Ex. 13 (*In re Payment Card Interchange Fee and*

5  *Merchant Discount Antitrust Litigation*, No. 1:05-md-1720-JG-JO, Order Denying Motion for

6  Protective Order (E.D.N.Y. Sept. 16, 2008) (denying protective order precluding the deposition of JP

7  Morgan Chase & Co. Chairman and CEO James L. Dimon)); *Six W. Retail Acquisition, Inc. v. Sony*

8  *Theatre Mgmt. Corp.*, 203 F.R.D. 98, 104 (S.D.N.Y. 2001) (CEO deposed in antitrust case where he

9  participated in meetings and there was ample evidence of the CEO's "hands-on involvement in

10  various aspects" of the conduct at issue in the case); *Naftchi v. New York Univ. Med. Ctr.*, 172

11  F.R.D. 130 (S.D.N.Y. 1997) (ordering president of NYU medical center to appear for deposition

12  since he had personal knowledge).

13         Apple's cases are unpersuasive and actually support Plaintiffs' position. In *Serrano v. Cintas*

14  *Corp.*, No. 04-40132, 2010 U.S. Dist. LEXIS 57624 (E.D. Mich. June 10, 2010), the CEO submitted

15  a sworn declaration stating that he had no knowledge regarding many of the issues in the litigation.

16  *Id.* at *9. Of course, no such declaration could be submitted by Mr. Jobs here because the record

17  plainly demonstrates he has first-hand knowledge regarding matters central to Plaintiffs' case.

18  Moreover, in that out-of-circuit case, the only purported knowledge the CEO possessed was based

19  on excerpts from a speech at an annual meeting. *Id.* at *10. ████████████████████

20  ██████████████████████████████████████████████

21  ██████████████████████████████████████████████

22  ██████████████████████████████████████████████

23  ████████████████████████[6]

25  [6]   *Cardenas v. Prudential Ins. Co. of Am.*, No. 99-1421 (JRT/FLN), 2003 U.S. Dist. LEXIS

26  9510 (D. Minn. May 16, 2003), also relied on by Apple, fares no better. That case from the Eighth Circuit merely stands for the proposition that where it has not been shown that the senior executive

27  has any unique knowledge or where the "same information" can be obtained through less intrusive means, a deposition of a senior executive may be restricted. Here, Plaintiffs have demonstrated Mr.

28  Jobs possesses relevant unique information and that this information is not available via other means.

1     **C.**     **Plaintiffs' Deposition Notice Was Timely**

2         This Court should reject Apple's suggestion that Plaintiffs unduly delayed in their request to

3 depose CEO Jobs, as any delay is due solely to Apple's delinquencies. Even though this case has

4 been pending since 2005, Apple has only recently began producing documents relevant to the merits

5 of Plaintiffs' claims.[7] In the last four weeks, Apple has produced ***more than 1 million pages*** of

6 documents in response to Plaintiffs' long-standing discovery requests, most dating back to May

7 2009. Bernay Decl., ¶14. ██████████████████████████████████████

8 ████████████████████████████████████████████

9         Plaintiffs informed Apple on November 3, 2010 that it intended to depose Mr. Jobs, and met

10 and conferred with Apple in telephone conferences on November 5 and November 9, and in

11 correspondence on November 12 and 16. Bernay Decl., ¶¶2-6. Plaintiffs originally noticed the

12 deposition for November 30, 2010, but agreed to take that date off calendar to permit further meet

13 and confer discussions on the issue. Ex. 14 (Plaintiffs' Notice of Deposition of Steve Jobs, dated

14 November 9, 2010). Plaintiffs re-noticed the deposition for the last day of discovery to ensure

15 defendant Apple would have enough time to prepare Mr. Jobs and to clear his schedule. Ex. 15

16 (Plaintiffs' Amended Notice of Deposition of Steve Jobs, dated November 24, 2010). Plaintiffs also

17 wanted to ensure that other depositions of lower-level executives would occur prior to Mr. Jobs'

18 deposition in an effort to guard against unnecessarily repetitive testimony from Mr. Jobs.

19 ――――――――――――――――――――――――――

20 *Gutescu v. Carey Int'l, Inc.*, No. 01-4026-CIV-MARTINEZ/SIMONTON, 2003 U.S. Dist. LEXIS 27502 (S.D. Fla. June 24, 2003), is similarly unavailing. That case from Florida stands for the

21 proposition that where the corporate executive has no unique, superior or first-hand knowledge, a motion to compel may be denied. In *Gutescu* there was no indication that the executive had any

22 knowledge regarding plaintiff's claim, let alone unique, superior or first-hand knowledge. *See also Porter v. Eli Lilly and Co.*, No. 1:06-cv-1297-JOF, 2007 WL 1630697 (N.D. Ga. June 1, 2007)

23 (declining to order deposition where plaintiffs made no effort to explain the executive's personal knowledge or inability to get the information via other means).

24 [7]     Initially, Apple was obligated by the Court's Order only to respond to discovery requests

25 pertaining to class certification. Dkt. No. 128 (Order Re Plaintiffs' Motion for Administrative Relief). Even after that bifurcation order was lifted, Apple continued to delay, insisting that it was

26 not obligated to respond to discovery until its pending motion to dismiss or for summary judgment was decided. *See* Dkt. No. 347 (Declaration of Paula M. Roach Pursuant to Rule 56(f) of the Federal

27 Rules of Civil Procedure in Support of Plaintiffs' Opposition to Apple's Motion to Dismiss or Alternatively, for Summary Judgment), ¶¶9-15.

28

1      During meet and confer negotiations, Plaintiffs explained that Mr. Jobs has unique personal

2 knowledge regarding issues at the heart of Plaintiffs' case and explained that he drafted a number of

3 documents produced by Apple that are relevant to the claims in the case.  Bernay Decl., ¶¶4, 6,

4 10, 12.

5    █████████████████████████████████████████

6 ████████████████████████████████████████████████

7 ██████████████████████████████████████████████████

8 ████████████████████████ Ex. 6 (Robbin Tr. at 115:4-116:7, 176:7-177:15); Ex. 7 (Cue

9 Tr. at 19:14-22, 20:4-21:1, 37:21-39:22, 49:13-51:15, 125:1-24).

10 **IV.   CONCLUSION**

11      As Apple's own authority recognizes, Mr. Jobs' "prestigious position is an unimpressive

12 paper barrier shielding him from the judicial process."  *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364,

13 366 (D.R.I. 1985).  Because Mr. Jobs possesses relevant first-hand information about issues critical

14 to this case that is unavailable from other sources, defendant's motion for a protective order must be

15 denied.

16 DATED:  December 20, 2010          Respectfully submitted,

17                     ROBBINS GELLER RUDMAN
                        & DOWD LLP

18                     JOHN J. STOIA, JR.
                    BONNY E. SWEENEY

19                     THOMAS R. MERRICK
                    ALEXANDRA S. BERNAY

20                     PAULA M. ROACH

21

22                            s/ Bonny E. Sweeney
                        BONNY E. SWEENEY

23                     655 West Broadway, Suite 1900

24                     San Diego, CA  92101
                    Telephone: 619/231-1058

25                     619/231-7423 (fax)

26

27

28

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION FOR PROTECTIVE ORDER PREVENTING
THE DEPOSITION OF STEVE JOBS - C-05-00037-JW(HRL)        - 13 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE KATRIEL LAW FIRM
ROY A. KATRIEL
1101 30th Street, N.W., Suite 500
Washington, DC  20007
Telephone:  202/625-4342
202/330-5593 (fax)

Co-Lead Counsel for Plaintiffs

BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT, P.C.
ANDREW S. FRIEDMAN
FRANCIS J. BALINT, JR.
ELAINE A. RYAN
TODD D. CARPENTER
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone:  602/274-1100
602/274-1199 (fax)

BRAUN LAW GROUP, P.C.
MICHAEL D. BRAUN
10680 West Pico Blvd., Suite 280
Los Angeles, CA  90064
Telephone:  310/836-6000
310/836-6010 (fax)

MURRAY, FRANK & SAILER LLP
BRIAN P. MURRAY
JACQUELINE SAILER
275 Madison Avenue, Suite 801
New York, NY  10016
Telephone:  212/682-1818
212/682-1892 (fax)

GLANCY BINKOW & GOLDBERG LLP
MICHAEL GOLDBERG
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)

Additional Counsel for Plaintiffs

PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION FOR PROTECTIVE ORDER PREVENTING
THE DEPOSITION OF STEVE JOBS - C-05-00037-JW(HRL)                                        - 14 -

1

<u>CERTIFICATE OF SERVICE</u>

2     I hereby certify that on December 20, 2010, I authorized the electronic filing of the foregoing

3 with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

4 the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5 caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6 CM/ECF participants indicated on the attached Manual Notice List.

7     I certify under penalty of perjury under the laws of the United States of America that the

8 foregoing is true and correct.  Executed on December 20, 2010.

9
         s/ Bonny E. Sweeney
         BONNY E. SWEENEY

10

11     ROBBINS GELLER RUDMAN
         & DOWD LLP

12     655 West Broadway, Suite 1900
         San Diego, CA  92101-3301
         Telephone:  619/231-1058

13     619/231-7423 (fax)

14     E-mail:        bonnys@rgrdlaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

590622_1

# Mailing Information for a Case 5:05-cv-00037-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com.

- **Todd David Carpenter**
  tcarpenter@bffb.com,pjohnson@bffb.com,rcreech@bffb.com

- **Andrew S. Friedman**
  khonecker@bffb.com,rcreech@bffb.com,afriedman@bffb.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com

- **Roy Arie Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com

- **Thomas Robert Merrick**
  tmerrick@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com,ewallace@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,ybennett@jonesday.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **Paula Michelle Roach**
  proach@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Elaine A. Ryan**
  eryan@bffb.com,pjohnson@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Michael Tedder Scott**
  michaelscott@jonesday.com,amhoward@jonesday.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **John J. Stoia , Jr**
  jstoia@rgrdlaw.com

- **Bonny E. Sweeney**
  bonnys@rgrdlaw.com,christinas@rgrdlaw.com,E_file_sd@rgrdlaw.com,proach@rgrdlaw.com

- **Helen I. Zeldes**
  helenz@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)