| | |
|---|---|
| 1 | Robert A. Mittelstaedt #60359 |
| | ramittelstaedt@jonesday.com |
| 2 | Craig E. Stewart #129530 |
| | cestewart@jonesday.com |
| 3 | David C. Kiernan #215335 |
| 4 | dkiernan@jonesday.com |
| | Michael T. Scott #255282 |
| 5 | michaelscott@jonesday.com |
| 6 | JONES DAY |
| | 555 California Street, 26th Floor |
| 7 | San Francisco, CA 94104 |
| | Telephone: (415) 626-3939 |
| 8 | Facsimile: (415) 875-5700 |
| 9 | Attorneys for Defendant APPLE INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE APPLE iPOD iTUNES ANTITRUST LITIGATION | Case No. C 05-00037-JW (HRL) |
| | [CLASS ACTION] |
| | **APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER PREVENTING THE DEPOSITION OF STEVE JOBS** |
| | Date: January 18, 2011 |
| | Time: 10:00 a.m. |
| | Place: Courtroom 2, 5th Floor |
| | **Honorable Howard Lloyd** |
| | [FILED UNDER SEAL] |

## I. INTRODUCTION

Plaintiffs concede that they are not entitled to depose Apple's CEO Steve Jobs if the information they seek is available from other sources. (Plaintiffs' Opposition, Docket No. 404, ("Opp.") 1:3-10; 9:5-7.) Plaintiffs have now concluded their depositions of all Apple witnesses, including those who had been designated to testify on Apple's behalf pursuant to Rule 30(b)(6), yet their Opposition does not cite to a single instance in which a witness identified Mr. Jobs as having unique or superior knowledge about any relevant issue. Plaintiffs, thus, are not entitled to depose Mr. Jobs. *See Stelor Prods., Inc. v. Google, Inc.*, 2008 WL 4218107, at *4 (S.D. Fla. Sept. 15, 2008) (denying motion to compel depositions of Google founders Sergey Brin and Larry Page, stating that "if questions remain unanswered after [30(b)(6) designee's] deposition, then plaintiff would be permitted to depose both Brin and Page on the limited issues yet unanswered.").

Unable to show that the testimony of Apple's other witnesses was inadequate, Plaintiffs sifted through the more than one million pages of documents Apple produced in discovery and could point to only a small handful of documents—two articles by PC World and the Associated Press, five emails, and an essay entitled "Thoughts on Music" by Mr. Jobs[1]—as putative support for their theory that Mr. Jobs "was *likely* the architect of the exclusionary policies that are at issue." (Opp. 1:4-6 (emphasis added).) A review of these documents reveals that Plaintiffs have mischaracterized Mr. Jobs's involvement in any relevant conduct. Plaintiffs' inability to identify any meaningful evidence after six years of litigation rebuts their sweeping characterizations of Mr. Jobs as "central" to this case.

Plaintiffs are not entitled to depose Mr. Jobs for the additional reason that they have failed to establish the relevance of the limited evidence they identify as "likely" involving Mr. Jobs. This Court has ruled that the sole remaining issue in this action is whether Apple attempted to maintain a monopoly in the alleged audio download and portable music player markets by issuing updates to its proprietary digital rights management software, FairPlay, that supposedly served no legitimate business purpose. Plaintiffs nevertheless claim they need to depose Mr. Jobs regarding

---

[1] *See* Declaration of Alexandra Bernay, Docket No. 405, ("Bernay Decl.") Exs. 1–5, 8–11.

APPLE'S REPLY ISO MOTION FOR PROTECTIVE
ORDER RE DEP. OF STEVE JOBS
CASE NO. C 05-00037-JW (HRL)

1  Apple's initial negotiations with the record labels before any updates were contemplated and
2  Apple's decision not to license FairPlay. Neither of these topics has any bearing on the limited
3  claims left in this case.
4     Apple's motion for a protective order should be granted.
5  **II.   ARGUMENT**
6     A.   **Plaintiffs Concede that "Apex" Depositions Are Not Warranted Where the Information Sought Is Available from Other, Less Burdensome Sources.**
7
8     Plaintiffs now concede that they are entitled to depose Mr. Jobs only if the information
9  they seek is relevant and unavailable from other, less burdensome sources. (Opp. 1:3-10; 9:5-7.)
10 Despite this concession, Plaintiffs continue to argue that Mr. Jobs's alleged "involvement" or
11 "participation" in certain events is sufficient to justify his deposition. [REDACTED]
12 [REDACTED]
13 [REDACTED]
14    Courts regularly grant protective orders barring apex depositions based on an executive's
15 mere "involvement" or "participation" in events where less burdensome means are available to
16 obtain relevant information. In *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979), plaintiff
17 sought the deposition of Upjohn's president, Dr. William Hubbard. Dr. Hubbard possessed
18 relevant knowledge of the facts at issue and had even given testimony before the United States
19 Senate concerning the testing, marketing and use of the drug on which the plaintiff's claim was
20 based. Nonetheless, the Fifth Circuit affirmed the district court's order vacating Dr. Hubbard's
21 deposition date. The court required plaintiffs to make a showing that Dr. Hubbard had *superior*
22 knowledge of relevant facts—stating that only if other employees "did not have more personal
23 knowledge of the facts" would plaintiffs be entitled to depose Dr. Hubbard. *Id.* at 651.
24    Similarly, in *Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir. 1995), the court granted a
25 protective order barring the deposition of IBM chairman John Akers even though he allegedly
26 "authored an IBM policy designed to discriminate against older employees." *Id.* at 483. The
27 court held that the trial court was well within its discretion in granting the protective order
28 because the plaintiff had not demonstrated "that the information she seeks to obtain from Akers

could not be gathered from other IBM personnel, for whom a deposition might have been less burdensome." *Id.*; *see also Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985) (rejecting plaintiffs' request to depose Lee Iacocca based on public statements he made relevant to Chrysler's liability, and instead requiring plaintiffs to submit written interrogatories in the first instance); *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *5 (N.D. Cal. Jan. 25, 2007) (refusing to permit deposition to go forward based on plaintiffs' claims that executives "participated" in relevant events where knowledge was not unique to those executives).

The authority on which Plaintiffs rely is consistent with the rule that mere participation in the events at issue does not warrant an apex deposition and that plaintiffs must make a showing that the executive possesses unique, firsthand knowledge of relevant facts. In *Blankenship v. Hearst Co.*, 519 F.2d 418 (9th Cir. 1975), the Ninth Circuit held that the deposition of George Hearst, publisher of the Los Angeles Herald-Examiner, should have been permitted to go forward because plaintiffs had identified relevant information that Mr. Hearst appeared to have "that others did not." *Id.* at 429. Similarly, Judge Maria-Elena James denied Apple's motion for a protective order in *PT Technologies v. Apple Computer*, No. 98-cv-01804 (N.D. Cal. Dec. 7, 2000), another case cited by Plaintiffs, only after highlighting that the testimony of other Apple witnesses revealed that Mr. Jobs possessed a "unique role" in the events at the core of that case. (Bernay Decl., Ex. 12 at 2:26.) Both cases, thus, confirm that Plaintiffs bear the burden of establishing that Mr. Jobs possesses relevant information not known by others—a burden Plaintiffs have not met.

### B. Plaintiffs Fail to Show that Mr. Jobs Has Unique Knowledge of Relevant Facts.

Plaintiffs identify two topics on which they seek to depose Mr. Jobs: ▮▮▮▮▮▮▮▮▮▮▮▮[2] (Opp. 5:19-23.) The evidence cited by Plaintiffs, however, reveals that to the extent these topics cover information relevant to the issues in this case, Mr. Jobs does

---

[2] Harmony was technology developed by RealNetworks that attempted to mimic a version of Apple's FairPlay DRM so that content downloaded from RealNetworks' online music store could be played on Apple's iPods.

1  not possess unique knowledge of such information.  Moreover, Plaintiffs have failed to show that
2  they could not obtain such information by means other than deposing Mr. Jobs.

[redacted]

### a.  Early Negotiations with the Record Labels.

[redacted] (Opp. 6:5-7 (citing Bernay Decl., Exs. 6, 7).)  But mere participation by Mr. Jobs is not enough.  If mere participation were sufficient to warrant an "apex" deposition, courts would have no need to engage in the further analysis of whether the executive's knowledge is "unique," "non-repetitive," and unavailable from other sources.  *See Salter*, 593 F.2d at 651; *Websidestory, Inc. v. Netratings, Inc.*, 2007 WL 1120567, at *2 (S.D. Cal. Apr. 6, 2007).

[redacted] (Bernay Decl., Ex. 6 at 115:14-22; *see also* Ex. 7 at 19:14-19.[3])  Mr. Robbin, Apple's Vice President of iTunes, and Mr. Cue, Apple's Vice President of Internet Services, were deeply involved in the negotiations with the record labels.  (Declaration of David C. Kiernan in Support of Apple's Reply ("Kiernan Reply Decl."), ¶ 2, Ex. 1 at 9, 32-40 and ¶ 3, Ex. 2 at 8, 17-21, 32-38.)  Plaintiffs deposed Messrs. Robbin and

---

[3] [redacted] (Opp. 6:5-7), [redacted]

Cue. (Bernay Decl., Exs. 6, 7.) Plaintiffs do not contend that either witness was unable to answer any questions regarding the negotiations with the record labels, nor do Plaintiffs identify any information not available from Messrs. Robbin or Cue—much less any information that can only be obtained from Mr. Jobs. "[I]f lower level employees have at least the same knowledge, if not more, of the matters at issue than the 'apex' employee, such a deposition may not be permitted." *See HCP Laguna Creek CA, LP v. Sunrise Sr. Living Mgmt., Inc.*, 2010 WL 890874, at *4 (M.D. Tenn. Mar. 8, 2010); *cf. Kimberly-Clark Corp. v. Cont'l Cas. Co.*, No. 3:05-CV-475, 2006 WL 3436064 (N.D. Tex. Nov. 29, 2006) (denying a motion to quash and for a protective order and allowing the deposition of defendant's board chairman and CEO only *after* Rule 30(b)(6) deposition and interrogatory responses did not provide complete information). Moreover, Plaintiffs chose not to serve a 30(b)(6) deposition notice regarding the contract negotiations with the record labels, which would have been a less burdensome means to obtain any additional information. (Kiernan Reply Decl. ¶ 6.)[4] Notably, Plaintiffs subpoenaed the record labels, (*id.*), but their Opposition cites to no evidence obtained from the record labels to suggest that Mr. Jobs possesses any unique information regarding the negotiations between Apple and those labels.

In any event, Apple's early negotiations with the record labels are not relevant to any remaining claims. Plaintiffs have conceded that the record labels required Apple to use DRM software to enforce anti-piracy usage rules:

> COURT: Well, it does occur that you're acknowledging . . . that there are contracts which required Apple to have security measures, limit copying and to repair breaches of those protections.
>
> [PLAINTIFFS' COUNSEL] MS. SWEENY: That's absolutely right, Your Honor.

(Tr. of Oral Argument on Apple's Motion for Summary Judgment, Docket No. 376, 18:9-15; *see also* Amended Consolidated Complaint, January 26, 2010, Docket No. 322, ("Amended Complaint") ¶ 67.) This is consistent with Mr. Robbin's testimony that the labels required Apple to use DRM software. (Kiernan Reply Decl. ¶ 2, Ex. 1 at 37:9-23.) Additionally, this Court has

---

[4] Plaintiffs identified only one 30(b)(6) topic that related to record labels, namely "Communications with the content providers regarding Apple's updates to FairPlay." (Kiernan Reply Decl. ¶ 7.)

1  already held that Apple's initial decision to use its own DRM software is not illegal. (Order
2  Decertifying Classes, December 21, 2009, Docket No. 303, at 2.) As a result, Plaintiffs' sole
3  remaining claim is that Apple's *updates* to FairPlay, made *after* the initial negotiations with the
4  record labels, were anticompetitive and not for legitimate business reasons. (Plaintiffs'
5  Memorandum in Opposition to Apple's Motion to Dismiss, March 22, 2010, Docket No. 345, at
6  6; *see also* Amended Complaint ¶¶ 52-67.)

7  In short, the initial negotiations with the record labels prior to Apple's launch of the
8  iTunes Store are not relevant to the remaining claims. But even if they were, Plaintiffs have
9  failed to show that the testimony of Messrs. Robbin or Cue was inadequate.

10         b.    **The Record Labels' Decisions to Go "DRM-Free."**

[redacted]

16  (Opp. 6:8-11 (citing Bernay Decl., Exs. 8, 9).) Plaintiffs, however, fail to meet
17  their burden of establishing that this email or essay is relevant to any claim or defense remaining
18  in this case. *See* Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351
19  (1978) (holding that the party seeking discovery bears the burden of establishing its relevance).

[redacted]

23  (Opp. 7:3-5.) As noted, Apple was contractually required by the
24  record labels to use DRM anti-piracy software. Plaintiffs concede that.

[redacted]

[REDACTED]

(Kiernan Reply Decl. ¶ 3, Ex. 2 at 33:4-37:19; 43:24-44:20; 47:2-48:23; 53:19-55:6; 71:5-76:2.) Mr. Cue's testimony was exhaustive, and there is no basis for Plaintiffs to also require a deposition of Mr. Jobs.

### c. Apple's Decision Not to License FairPlay.

[REDACTED]

(Opp. 6:13-7:2 (citing Bernay Decl., Exs. 10, 11).) Notably, although Plaintiffs now argue that the alleged decision not to license FairPlay is relevant to their claim, they opted not to serve a 30(b)(6) deposition notice on this topic. (Kiernan Reply Decl. ¶ 7.) Having failed to pursue less burdensome means to obtain such information, Plaintiffs are not entitled to seek to depose Mr. Jobs on that topic. *See Reif v. CNA*, 248 F.R.D. 448, 453–54 (E.D. Pa. 2008) ("The depositions, thus far, have failed to demonstrate the deponents lack the information, especially when the pertinent questions have not been asked.").

Although Plaintiffs did not serve a 30(b)(6) deposition notice regarding Apple's decision not to license FairPlay, Plaintiffs nonetheless examined Apple's witness, Eddy Cue, about that decision. (Bernay Decl., Ex. 7 at 49:4-50:19.) Plaintiffs do not identify any evidence they could obtain from Mr. Jobs that has not already been, or could not have been, provided by Mr. Cue.

Moreover, Apple's decision not to license FairPlay is not relevant to Plaintiffs' remaining claim, i.e., that Apple's updates to FairPlay were anticompetitive. As previously discussed, the Court has ruled that it was lawful for Apple to use its proprietary DRM and to chose not to license it to others. On that basis alone, Apple's reasons for not licensing are not at issue, and Plaintiffs cannot demonstrate that the decision not to license FairPlay is relevant to their claim that Apple's updates to FairPlay were anticompetitive. Even assuming Mr. Jobs possesses unique knowledge on this issue—which he does not—Plaintiffs are not entitled to his deposition.

[REDACTED]

The second topic identified by Plaintiffs similarly fails to support the alleged need for Mr. Jobs's deposition. [REDACTED] (Opp. 7:14-9:2 (citing Bernay Decl., Exs. 2–5).) The evidence cited, however, does not support the conclusion that Mr. Jobs has any unique or relevant knowledge on this topic, much less that he was "centrally involved."

      a. **The Associated Press Article Regarding RealNetworks' Launch of Harmony.**

Plaintiffs rely on an Associated Press article to assert that RealNetworks' CEO contacted Steve Jobs in 2004 to inquire about a license and Mr. Jobs rebuffed him. (Opp. 7:21-25; Bernay Decl., Ex. 2 at Apple_AIIA00090443.) As discussed above, Apple's decision whether to license FairPlay is not relevant.

Also as discussed above, Apple's other witnesses have already testified about Apple's decision not to license FairPlay. (*See, e.g.*, Bernay Decl., Ex. 7 at 49:4-50:19.) [REDACTED] (Opp. 7:24-25.) [REDACTED] (Bernay Decl., Ex. 7 at 125:10-17.) Moreover, Mr. Cue, was already examined about the very exhibit—Bernay Decl., Ex. 2—on which Plaintiffs would seek to examine Mr. Jobs. (Kiernan Reply Decl. ¶ 3, Ex. 2 at 150:1-156:8 and ¶ 4, Ex. 3.) Plaintiffs do not claim Mr. Cue could not answer their questions about this exhibit. Any testimony from Mr. Jobs would be repetitive and should not be permitted.

      b. **Apple's Response to RealNetworks' Launch of Harmony.**

Plaintiffs next argue that two emails and a PC World article regarding RealNetworks' launch of Harmony support their theory that [REDACTED] (Opp. 7:14-15; Bernay Decl., Exs. 3-5.) As other Apple witnesses have testified, in mid-2004, RealNetworks announced the launch of its Harmony

product, which hacked into Apple's FairPlay. (Kiernan Reply Decl. ¶ 2, Ex. 1 at 83:12-84:16 and ¶ 3, Ex. 2 at 112:1-114:14.) ▓▓▓ (Bernay Decl., Exs. 4, 5.) Apple's statement asserted that RealNetworks was acting like a hacker and that its hack would probably not work in the future. Plaintiffs chose not to depose the person who prepared the initial draft of the statement. Nor did Plaintiffs ask to depose the other public relations employees who participated in drafting the statement. (Bernay Decl., Exs. 1, 2.) Plaintiffs' request to start at the top by deposing Mr. Jobs is wholly improper. Plaintiffs did depose Eddy Cue, another Apple employee who participated in preparing the response, (Kiernan Reply Decl. ¶ 3, Ex. 2 at 151:20-152:8), and Plaintiffs do not contend that Mr. Cue was unable to answer any question relating to the statement.



▓▓▓ (Bernay Decl., Ex. 3). ▓▓▓ (Opp. 8:27-9:2), ▓▓▓

(Kiernan Reply Decl. ¶ 3, Ex. 2 at 169:20-171:3 and ¶ 5, Ex. 4.)

Plaintiffs have made no showing that they were unable to obtain information from Mr. Cue or other witnesses.

C.  **Apple Is Not Required to Submit a Declaration from Mr. Jobs.**

Unable to meet the high standard for an apex deposition on the merits, Plaintiffs argue that Apple's motion should be denied because Mr. Jobs did not submit a declaration disavowing knowledge of relevant facts. (Opp. 1:22-2:6.) However, as even the cases cited by Plaintiffs demonstrate, courts routinely preclude apex depositions without requiring an "apex declaration." *See, e.g., Salter*, 593 F.2d 649; *Cardenas v. Prudential Ins. Co. of Am.*, 2003 WL 21293757 (D.

Minn. May 16, 2003).

In any event, during the course of the parties' meet-and-confer discussions, Apple requested that Plaintiffs identify the basis for their claim that Mr. Jobs possesses unique, firsthand knowledge unavailable from other, less burdensome sources. Plaintiffs refused, instead offering only their conclusory claims that Mr. Jobs is a "hands-on CEO" and "was intimately involved in issues related to Apple's efforts to monopolize the online music and portable music player markets." (Declaration of David C. Kiernan, Docket No. 397, ¶ 7, Ex. 7.) Plaintiffs similarly refused to identify any documents that they contended reflected Mr. Jobs's unique, firsthand knowledge of relevant information. (*Id.*)[5] Having refused to identify the basis for their assertion that Mr. Jobs possesses unique, firsthand knowledge, Plaintiffs cannot now fault Apple for failing to submit a declaration disavowing such knowledge.

### III. CONCLUSION

Plaintiffs cannot meet the high standard for an apex deposition of Apple's CEO. Plaintiffs have not shown that Mr. Jobs has unique, non-repetitive, firsthand knowledge of the facts at issue in the case. Nor have Plaintiffs shown that the information they seek has not been obtained, or could not have been obtained, from other sources. Accordingly, Apple respectfully requests that the Court grant a protective order preventing the deposition of Mr. Jobs.

Dated: January 4, 2011    By: /s/ David C. Kiernan
                              David C. Kiernan

                          JONES DAY
                          555 California Street, 26th Floor
                          San Francisco, CA 94104

                          Attorneys for Defendant APPLE INC.

---

[5] Plaintiffs attempt to defend their vague responses to Apple's requests in the course of the meet-and-confer discussions by claiming they "reminded Apple's attorneys that Apple had produced several key documents written by or sent to Mr. Jobs." (Opp. 6 n.4.) Plaintiffs' Opposition, however, is the first time Plaintiffs specifically identified *any* documents they believed supported their request for Mr. Jobs's deposition (Kiernan Reply Decl. ¶ 8), and, as shown here, none of these documents can be considered "key" to any claims at issue in this case.