# EXHIBIT 1

Bonny E. Sweeney
BonnyS@rgrdlaw.com

December 30, 2010

VIA ELECTRONIC MAIL

Robert A. Mittelstaedt
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104

    Re:    *The Apple iPod iTunes Anti-Trust Litigation*
               No. C-05-00037-JW (N.D. Cal.)

Dear Bob:

    I am responding to your email of yesterday regarding plaintiffs' request that Apple not object to plaintiffs' initial expert report in support of class certification on the ground that plaintiffs' expert has not adequately analyzed the massive amounts of data produced by Apple at the very close of (and after the close of) discovery. Although plaintiffs have no obligation to preview for you their expert report (especially where, as here, defendant has a very good idea of what will be in the report, given that plaintiffs' expert has already submitted two expert reports in support of class certification, and you have deposed plaintiffs' expert twice), in the interests of furthering the meet-and-confer process, I will try to answer some of your questions.

**Plaintiffs' Burden Under Rule 23**

    As a preliminary matter, plaintiffs are not required, in order to meet their burden under Rule 23, to conduct any regression analysis or prepare any damages study at this stage of the litigation. Rather, plaintiffs are only required to "put forth a methodology that 'there is a way to prove a class-wide measure of [impact] through generalized proof.'" *Pecover v. Elec. Arts, Inc.*, No. 3:08-cv-02820-VRW, Order on Class Certification (N.D. Cal. Dec. 21, 2010) (Walker, J.) (quoting *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 583, 604 (N.D. Cal. 2010) (quoting *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 100 (D. Conn. 2009)). As you know from Professor Noll's two prior reports and your two day-long depositions, plaintiffs' expert will use one of three well-accepted methodologies to calculate damages: the before-and-after, yardstick, or mark-up methodology. Judge Ware has already, in this case, held that Professor Noll's proposed before-after, yardstick, and mark-up methods were valid means of proving damages on a class-wide basis. Order certifying Class, filed December 22, 2008, at 7-8; Order Decertifying Classes, filed December 21, 2009, at 2 n.6. Other courts in this district have agreed. *In re Static Random Access (SRAM) Antitrust Litig.*,

Robert A. Mittelstaedt
December 30, 2010
Page 2

No. C 07-01819 CW, 2008 WL 4447592, at *6-*7 (N.D. Cal. Sept. 29, 2008) (certifying class based on Professor Noll's proposed use of either a before-after, yardstick or mark-up methodology for calculating damages); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *10 (N.D. Cal. June 5, 2006) (same). Thus, despite your suggestion that plaintiffs should "run a regression and prepare a damage study" in order to meet their burden under Rule 23, plaintiffs need only "offer a methodology that is generally accepted." *In re Carbon Black Antitrust Litig.*, No. Civ. A. 03-10191-DPW, MDL No. 1543, 2005 WL 102966, at *20 (D. Mass. Jan. 18, 2005) (quoting *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 217-18 (E.D. Pa. 2001) *aff'd*, 305 F.3d 145 (3d Cir. 2002)).

**Plaintiffs' Expert's Regression Analysis**

Despite plaintiffs' limited burden on their Rule 23 motion, plaintiffs had hoped that by the time they filed their initial report in support of class certification, their experts would have had sufficient time to analyze Apple data that they could formulate and estimate a regression equation to test the feasibility of the before-and-after methodology. *See, e.g.*, Reply Declaration of Roger C. Noll at 17 (explaining that it is not "reasonable or even possible to show the equation that will be used to calculate damages and to prove that estimating that equation is feasible before discovery of transaction records, costs and documents pertaining to price policies is complete"). Such an equation would examine the relationship between Apple's wholesale iPod prices and Apple's DRM policies (which changed over time), while accounting for differences in the technical specifications of iPod models (*e.g.*, dimension, capacity, speed of operation), differences in the manufacturing or component costs for each model, differences among buyers (*e.g.*, whether a large buyer earned a volume discount), etc.

**Wholesale Transactions Data Apple Recently Produced Must Be Cleaned and Integrated with Additional Data Before Experts Can Run Regression**

However, Apple's late production of critical data has made it impossible for plaintiffs' experts to conduct that analysis. Although Apple has finally, at the very close of discovery, produced some of the data plaintiffs have requested, there are many holes in the data already produced, some data have not been produced at all, some data were produced in a non-usable format, and Apple has not yet answered critical questions that must be answered before plaintiffs' experts can begin analyzing the data. For example:

Robert A. Mittelstaedt
December 30, 2010
Page 3

On December 14, 2010 , Apple finally produced transaction data for its resellers, which plaintiffs had requested on December 29, 2009 . This database is massive, containing more than two million observations. In order to use this database, plaintiffs' experts must first clean the data and make sure they understand what all of the fields mean. After an initial inspection, plaintiffs' experts have already discovered a number of issues. First, it appears that roughly 80% of the observations are missing address information and customer names. In addition, the date field is missing for more than 900 of the observations. There are also apparent anomalies that need to be explained: For some transactions, the quantity (units) field is positive but the amount ($ sales) is zero. In others, the quantity (units) field is negative and the amount ($ sales) is zero. The quantity and amount numbers do not match precisely the sales data Apple previously produced in response to request Nos. 23, 29 and 52. In addition, one iPod (the iPod Shuffle Q98 Better) has an average price of $846.67 during one year.

Moreover, even after the wholesale transaction database is "cleaned" and plaintiffs' experts have resolved their questions, much work still remains. In order to conduct a regression analysis, plaintiffs' experts must have one unified database that combines the transaction information with the technical specifications (including major components) and manufacturing cost for each iPod model in each time period. Under the best of circumstances, with a database this large, this process of integrating the other data for each iPod sold into the transactions database (which requires formatting, data checking, verification, and removal of errors) can take several weeks. Because Apple has produced the technical specification information piecemeal (again, much of it at the very close of discovery) this necessary step will be even more time-consuming.

**Regression Equation Cannot Be Written Without Data**

Your suggestion that plaintiffs' experts might "have a regression analysis ready to go, subject to plugging in the appropriate figures from our actual documents" misunderstands regression analysis. As Professor Noll explained in his Reply Declaration, plaintiffs' experts cannot write down an equation in advance of reviewing Apple's data "because doing so before the data are available is uninformative. Until one has access to data, one does not know what variables are going to prove to be statistically significant in a regression analysis." *Id.* at 18.

**Cost and Margin Data**

As you know, the three damages methodologies that plaintiffs' experts may use to calculate damages make use of cost data for each model during the entire data period, and two of the methodologies – mark-up and comparable products – also require margin data.

On the last day of discovery, Apple finally produced detailed cost and margin data requested by plaintiffs in 2009 (the iPod BOM costs data and Gross Margin data). I understand that Apple is

Robert A. Mittelstaedt
December 30, 2010
Page 4

continuing to produce these data. Again, these are very large data files that cannot be integrated with the other data and used by our experts until after the data have been cleaned and questions resolved.

**Plaintiffs' Questions Regarding Data**

We have begun posing questions to Apple based on our experts' initial inspection of the data produced, but so far have not received responses to all our questions. *See* the attached correspondence between Paula Roach and David Kiernan.

Further, despite your agreement that we could postpone the deposition of Mr. Donnelly, Apple's 30(b)(6) witness on pricing practices, transaction data, cost data, and FairPlay costs, Apple demanded (allegedly because of Mr. Donnelly's schedule) that plaintiffs take that deposition on December 20, before Apple completed producing all relevant documents. Some documents and data were produced just before Mr. Donnelly was deposed (preventing plaintiffs and their experts from reviewing them sufficiently in advance to make use of them at the deposition); others were produced on the day Mr. Donnelly was deposed; others were produced in the days following Mr. Donnelly's deposition, and some data are still forthcoming. *See* the attached correspondence between Paula Roach and David Kiernan.

**Proposed Resolution**

As we have discussed, because Apple produced its documents and data too late for plaintiffs' experts to use in a report due on January 17, 2011, plaintiffs request that Apple agree that it will not object to plaintiffs' expert's initial report in support of class certification on the ground that it has not adequately analyzed Apple's data. That includes criticizing plaintiffs' expert for not running a regression analysis, conducting a damages study, or writing a regression equation. When I first raised this on December 17, you said that you understood the issue and that, though Apple likely would not agree to my specific proposal, you would propose some other alternative. On the basis of your assurances, I agreed NOT to file the emergency motion that I had already drafted, and was prepared to file on December 17. Despite your promise to seek to resolve this issue, you have not made any alternative proposal.

**Possible Relief**

You asked what relief we will seek from the Court. Plaintiffs have not made a final determination on this issue. However, it is likely that we will ask the Court to enter an order precluding Apple from objecting to plaintiffs' expert report in support of class certification on the ground that plaintiffs' expert has not adequately analyzed Apple data.

Robert A. Mittelstaedt
December 30, 2010
Page 5

      Our office is closed tomorrow for the New Year holiday. However, I will be available at any time tomorrow (though morning is better) on my cell phone at 619-571-2230.

                                Very truly yours,

                                /s/Bonny E. Sweeney

                                BONNY E. SWEENEY

BES:sll
Attachments