ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN J. STOIA, JR. (141757)
BONNY E. SWEENEY (176174)
THOMAS R. MERRICK (177987)
ALEXANDRA S. BERNAY (211068)
PAULA M. ROACH (254142)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
johns@rgrdlaw.com
bonnys@rgrdlaw.com
tmerrick@rgrdlaw.com
xanb@rgrdlaw.com
proach@rgrdlaw.com

THE KATRIEL LAW FIRM
ROY A. KATRIEL (*pro hac vice*)
1101 30th Street, N.W., Suite 500
Washington, DC  20007
Telephone:  202/625-4342
202/330-5593 (fax)
rak@katriellaw.com

Co-Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTI-TRUST LITIGATION | ) ) ) |
| | ) |
| This Document Relates To: | ) ) ) |
| ALL ACTIONS. | ) ) ) ) |

Lead Case No. C-05-00037-JW(HRL)

CLASS ACTION

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF LEAD CLASS COUNSEL

JUDGE:     Hon. James Ware
DATE:      April 18, 2011
TIME:      9:00 a.m.
CTRM:      8, 4th Floor

**[REDACTED]**

593800_1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................1

II.     PROCEDURAL BACKGROUND.......................................................3

    A.    Earlier Class Certification.........................................................3

    B.    Plaintiffs' Narrowed Section 2 Claims .....................................5

    C.    Factual Background ..................................................................7

III.    THE REQUIREMENTS OF RULE 23 ARE FULLY SATISFIED ................11

    A.    Rule 23(a) Is Satisfied...........................................................12

        1.    Numerosity.................................................................12

        2.    Commonality..............................................................12

        3.    Typicality ...................................................................14

        4.    Adequacy ...................................................................15

    B.    Rule 23(b)(3) Is Satisfied......................................................16

        1.    Predominance..............................................................16

        2.    Superiority..................................................................22

    C.    There Exists a Readily Definable Class of Apple Customers................23

    D.    Appointment of Class Counsel ...............................................23

IV.    CONCLUSION.................................................................................24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. v. Windsor,*
  521 U.S. 591, 117 S. Ct. 2231 (1997)........................................................................1, 16, 23

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,*
  472 U.S. 585, 105 S. Ct. 2847 (1985)..........................................................................18

*Behrend v. Comcast Corp.,*
  No. 03-6604, 2007 WL 2972601 (E.D. Pa. Oct. 10, 2007) .....................................13

*Blackie v. Barrack,*
  524 F.2d 891 (9th Cir. 1975) ..............................................................................11, 15

*Cascade Health Solutions v. PeaceHealth,*
  515 F.3d 883 (9th Cir. 2008) ......................................................................................18

*Chavez v. Whirlpool Corp.,*
  93 Cal. App. 4th 363 (2001) ........................................................................................17

*Cost Mgmt. Servs. v. Wash. Natural Gas Co.,*
  99 F.3d 937 (9th Cir. 1996) ........................................................................................13

*Cummings v. Connell,*
  316 F.3d 886 (9th Cir. 2003) ......................................................................................15

*Davis v. Pac. Bell,*
  204 F. Supp. 2d 1236 (N.D. Cal. 2002) ................................................................2, 13

*Eastman Kodak Co. v. Image Tech. Servs.,*
  504 U.S. 451, 112 S. Ct. 2072 (1992)....................................................................17, 19

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156, 94 S. Ct. 2140 (1974)............................................................................11

*Estate of Garrison v. Warner Bros., Inc.,*
  No. CV 95-8328 RMT, 1996 WL 407849
  (C.D. Cal. June 25, 1996) ......................................................................................14, 19

*Foremost Pro Color, Inc. v. Eastman Kodak Co.,*
  703 F.2d 534 (9th Cir. 1983) ......................................................................................19

*Gintis v. Bouchard Transp. Co.,*
  596 F.3d 64 (1st Cir. 2010) ........................................................................................22

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND     - ii -
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)

**Page**

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................13, 14

*Hawaii v. Standard Oil Co. of Cal.*,
   405 U.S. 251, 92 S. Ct. 885 (1972)........................................................................2

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720, 97 S. Ct. 2061 (1977)......................................................................19

*In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*,
   No. 02-6030 (WHW), 2006 WL 891362
   (D.N.J. April 4, 2006) ........................................................................................18

*In re Cardizem CD Antitrust Litig.*,
   200 F.R.D. 297 (E.D. Mich. 2001) ......................................................................21

*In re Corrugated Container Antitrust Litig.*,
   No. MDL 310, 1979 WL 1751
   (S.D. Tex. Dec. 21, 1979) ...................................................................................21

*In re Domestic Air Transp. Antitrust Litig.*,
   137 F.R.D. 677 (N.D. Ga. 1991)..........................................................................22

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. M 02-1486 PJH, 2006 WL 1530166
   (N.D. Cal. June 5, 2006) ............................................................................. *passim*

*In re Indus. Silicon Antitrust Litig.*,
   No. 95-1131, 1998 WL 1031507 (W.D. Pa. Oct. 13, 1998) ...................................21

*In re Live Concert Antitrust Litig.*,
   247 F.R.D. 98 (C.D. Cal. 2007)................................................................... *passim*

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   202 F.R.D. 12 (D.D.C. 2001)...............................................................................13

*In re NASDAQ Market-Makers Antitrust Litig.*,
   169 F.R.D 493 (S.D.N.Y. 1996) ..........................................................................21

*In re Online DVD Rental Antitrust Litig.*,
   No. M 09-2029 PJH, 2010 WL 5396064
   (N.D. Cal. Dec. 23, 2010) ........................................................................... *passim*

*In re Playmobil Antitrust Litig.*,
   35 F. Supp. 2d 231 (E.D.N.Y. 1998) ................................................................1, 12

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)

Page

*In re Potash Antitrust Litig.,*
    159 F.R.D. 682 (D. Minn. 1995)....................................................................21

*In re Rubber Chems. Antitrust Litig.,*
    232 F.R.D. 346 (N.D. Cal. 2005) ............................................................ *passim*

*In re Static Random Access (SRAM) Antitrust Litig.,*
    No. C-07-01819 CW, 2008 WL 4447592
    (N.D. Cal. Sept. 29, 2008) ..........................................................................22

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
    264 F.R.D. 603 (N.D. Cal. 2009).............................................................. *passim*

*In re Tableware Antitrust Litig.,*
    241 F.R.D. 644 (N.D. Cal. 2007)............................................................. *passim*

*In re Visa Check/MasterMoney Antitrust Litig.,*
    192 F.R.D. 68 (E.D.N.Y. 2000), *aff'd*, 280 F.3d 124 (2d Cir. 2001) ......................16

*Krehl v. Baskin-Robbins Ice Cream Co.,*
    78 F.R.D. 108 (C.D. Cal. 1978).....................................................................12

*Moore v. Jas. H. Matthews & Co.,*
    550 F.2d 1207 (9th Cir. 1977) .................................................................13, 18

*Moore v. Jas. H. Matthews & Co.,*
    682 F.2d 830 (9th Cir. 1982) ..................................................................20, 21

*O'Connor v. Boeing N. Am., Inc.,*
    184 F.R.D. 311 (C.D. Cal. 1998)....................................................................23

*Rebel Oil Co. v. Atl. Richfield Co.,*
    51 F.3d 1421 (9th Cir. 1995) ..................................................................13, 17

*Slaven v. BP Am., Inc.,*
    190 F.R.D. 649 (C.D. Cal. 2000)....................................................................23

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) .......................................................................15

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.,*
    209 F.R.D. 159 (C.D. Cal. 2002)....................................................................14

*Tucker v. Apple Computer Inc.,*
    No. 66-cv-04457-JW (N.D. Cal.).......................................................................3

593800_1

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND      - iv -
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)

**Page**

*United Steel, Paper &Forestry, Rubber Mfg. Energy v. ConocoPhillips Co.,*
    593 F.3d 802 (9th Cir. 2010) ...........................................................................................11

*Valentino v. Carter-Wallace, Inc.,*
    97 F.3d 1227 (9th Cir. 1996) .........................................................................................22

*Zenith Radio Corp. v. Hazeltine Research,*
    395 U.S. 100, 89 S. Ct. 1562 (1969).............................................................................19

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §2.............................................................................................................................. *passim*
    §15.....................................................................................................................................2

28 U.S.C.
    §1337.................................................................................................................................2

Federal Rules of Civil Procedure
    Rule 23 ..................................................................................................................... *passim*
    Rule 23(a).................................................................................................4, 12, 14, 15
    Rule 23(a)(1)...................................................................................................................12
    Rule 23(a)(2)...................................................................................................................12
    Rule 23(a)(3)...................................................................................................................14
    Rule 23(a)(4)..............................................................................................................15, 23
    Rule 23(b)(3)..............................................................................................5, 12, 16, 19
    Rule 23(g)(1)...................................................................................................................23
    Rule 26(e).........................................................................................................................7
    Rule 56(f).........................................................................................................................6

**SECONDARY AUTHORITIES**

2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions,*
    §4:32 (4th ed. 2002).......................................................................................................23

6 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions,*
    §18:1 (4th ed. 2002) ................................................................................................. *passim*

Joshua P. Davis & Eric L. Cramer, *Antitrust, Class Certification, and the Politics of*
    *Procedure*, 17 Geo. Mason L. Rev. 969, 983-84 (2010) .............................................1, 16, 19

1  TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2         PLEASE TAKE NOTICE that on April 18, 2011, at 9:00 a.m., before the Honorable James

3  Ware, in Courtroom 8, 4th Floor of the above-entitled Court, located at 280 South First Street, San

4  Jose, California, Plaintiffs Melanie Tucker, Mariana Rosen, and Somtai Troy Charoensak

5  (collectively "Plaintiffs"), will move the Court for class certification and the appointment of Robbins

6  Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Class Counsel.

7                              **RELIEF SOUGHT**

8         Plaintiffs respectfully seek certification of the following class for purposes of their federal

9  Sherman Act Section 2 claims and their derivative California Unfair Competition Law ("UCL")

10  claim:

11         All persons or entities in the United States (excluding federal, state and local
           governmental entities, Apple, its directors, officers and members of their families)
12         who purchased an iPod directly from Apple between October 1, 2004 and March 31,
           2009 ("Class Period").
13
                       **MEMORANDUM OF POINTS AND AUTHORITIES**
14
    **I.     INTRODUCTION**
15
           Plaintiffs request class certification of their claims that Defendant Apple, Inc. ("Apple")
16
    unlawfully maintained and/or attempted to maintain its monopolies of the digital audio file market
17
    and the portable digital media player market through anticompetitive conduct taken under the false
18
    pretext that its actions were required by its contracts with the record labels and benefited consumers.
19
    The Court has already ruled that Plaintiffs have adequately alleged viable federal antitrust claims
20
    under Section 2 of the Sherman Act and a viable state law claim under the UCL. *See* Dkt. No. 377.
21
    Plaintiffs seek damages for the supracompetitive price paid for iPods as a consequence of Apple's
22
    alleged anticompetitive conduct.
23
           As the Supreme Court, other courts, and commentators have recognized, few cases are better
24
    candidates for class-wide resolution than antitrust actions. *Amchem Prods. v. Windsor*, 521 U.S.
25
    591, 625, 117 S. Ct. 2231, 2250 (1997) ("Predominance is a test readily met in certain cases
26
    alleging . . . violations of the antitrust laws."); *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231,
27
    238 (E.D.N.Y. 1998) ("Antitrust claims are well suited for class actions."); *see generally* Joshua P.
28

593800_1

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                    - 1 -

1   Davis & Eric L. Cramer, *Antitrust, Class Certification, and the Politics of Procedure*, 17 Geo.

2   Mason L. Rev. 969, 983-84 (2010) ("*Davis*") ("because the predominant issues in antitrust cases

3   tend to be common to the class, for at least two decades courts have routinely certified classes in

4   antitrust cases in which direct purchasers seek damages – perhaps more regularly than in any other

5   field of substantive law").

6       And class actions, in turn, "play an important role in the private enforcement of antitrust

7   laws." *In re Online DVD Rental Antitrust Litig.*, No. M 09-2029 PJH, 2010 WL 5396064, at *3

8   (N.D. Cal. Dec. 23, 2010); *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 648 (N.D. Cal. 2007);

9   *accord In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006

10  WL 1530166, at *3 (N.D. Cal. June 5, 2006) ("*DRAM*"); *see generally* 6 Alba Conte & Herbert B.

11  Newberg, *Newberg on Class Actions*, §18:1 (4th ed. 2002) ("*Newberg*").   In the words of the

12  Supreme Court:[1]

13          Every violation of the antitrust laws is a blow to the free-enterprise system
        envisaged by Congress.  This system depends on strong competition for its health
14      and vigor, and strong competition depends, in turn, on compliance with antitrust
        legislation.   In enacting these laws, Congress had many means at its disposal to
15      penalize violators.  It could have, for example, required violators to compensate
        federal, state, and local governments for the estimated damage to their respective
16      economies caused by the violations.  But, this remedy was not selected.  Instead,
        Congress chose to permit all persons to sue to recover three times their actual
17      damages every time they were injured in their business or property by an antitrust
        violation.  By offering potential litigants the prospect of a recovery in three times the
18      amount of their damages, Congress encouraged these persons to serve as "private
        attorneys general."
19
20                          *       *       *

21          Congress has given private citizens rights of action for injunctive relief and
        damages for antitrust violations without regard to the amount in controversy.  28
22      U.S.C. §1337; 15 U.S.C. §15.  Rule 23 of the Federal Rules of Civil Procedure
        provides for class actions that may enhance the efficacy of private actions by
22      permitting citizens to combine their limited resources to achieve a more powerful
        litigation posture.
23

24  *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262-66, 92 S. Ct. 885, 891-93 (1972).  Given the

25  salutary role of the class mechanism in private antitrust actions, any doubt under Rule 23 is to be

26  _____

27  [1]     Unless otherwise noted, citations are omitted and emphasis is added.

28

593800_1

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                    - 2 -

1    resolved in favor of certification. *Online DVD*, 2010 WL 5396064, at *3; *see also Tableware*, 241

2    F.R.D. at 648; *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005).

3         Plaintiffs' Section 2 claims against Apple Inc. ("Apple") are particularly suited for class

4    treatment because ***every*** element of those claims can and will be established by evidence and expert

5    economic analysis common to all members of the proposed class of iPod purchasers.   The

6    predominance of common issues is confirmed in the declaration of esteemed Stanford economist,

7    Professor *Emeritus* Roger G. Noll who, based on his expertise and the data produced by Apple,

8    identifies the established methodologies that can be used to prove the requisite elements on a class-

9    wide basis. *See* Declaration of Roger G. Noll, filed concurrently ("Noll Decl.").   As shown below,

10   Professor Noll's expert analysis is already more complete than his earlier declaration upon which the

11   Court previously certified Plaintiffs' monopolization and attempted monopolization claims, and will

12   only be further bolstered as Plaintiffs continue to digest the voluminous materials produced by Apple

13   on the very eve of the discovery deadline.

14   **II.      PROCEDURAL BACKGROUND**

15        **A.      Earlier Class Certification**

16        In their original consolidated complaint, Plaintiffs alleged both tying and monopolization

17   claims against Apple under Sections 1 and 2 of the Sherman Act.[2] Dkt. No. 107.  Plaintiffs moved to

18   certify damages and injunctive relief classes in 2008, supported by an initial declaration from

19   Professor Noll.  Dkt. Nos. 165, 166-1.  On December 22, 2008, the Court certified classes for

20   Plaintiffs' Section 2 claims, holding that common evidence would be used to prove these claims.

21   Dkt. No. 196 (Order Granting Plaintiffs' Motion for Class Certification As To Counts Two, Three,

22   Four, Five, Six and Seven Only And Appointing Class Counsel; *Sua Sponte* Order Reconsidering

23

24   _____

25   [2]      Plaintiff William Slattery filed a complaint against Apple in 2005 (Dkt. No. 1) and was later
     dismissed as a Plaintiff.  Plaintiffs Somtai Troy Charoensak and Mariana Rosen substituted as new
26   lead Plaintiffs and filed a complaint against Apple in 2006. *See* Dkt. Nos. 73, 77.  Plaintiff Melanie
     Tucker filed a complaint in 2006.  *See Tucker v. Apple Computer Inc.*, No. 66-cv-04457-JW
27   (N.D. Cal.), *Tucker* Dkt No. 1.  On August 23, 2006 the *Tucker* action was related to the instant case
     (Dkt. No. 76) and an Amended Consolidated Complaint was filed on April 19, 2007.  Dkt. No. 107.

28

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                              - 3 -

1    Defendant's Motion to Dismiss Count One And Requiring Further Briefing).[3]   Specifically

2    addressing the market definition and market power elements of Plaintiffs' Section 2 claims, this

3    Court found:

> Both of these threshold issues [relevant market and market power] are complex
> factual inquiries that do not depend in any way upon individualized proof. For
> example, whether an "online music market" exists, and whether Apple has power in
> that market, are broad questions that exist independently of each individual Plaintiff.
> If each Plaintiff were forced to proceed individually on their antitrust claims, each
> would have to prove market and market power as the foundational elements of their
> cases. As such, questions of market definition, market share, and market power are
> common to all members of the proposed class.

*Id.* at 6-7. The Court further held that the other elements of Plaintiffs' monopolization and attempted

monopolization claims were likewise subject to common proof:

> Questions surrounding the willfulness of Apple's behavior are undoubtedly common
> to the class, as are questions of antitrust injury, especially if the injury alleged is that
> Apple uniformly charged consumers supracompetitive prices based on its purported
> monopoly position. Similar issues surrounding the intentionality of Apple's actions
> and antitrust injury will be integral to Plaintiffs' success on their attempted
> monopolization claim.

14   *Id.* at 8.

15       The Court specifically rejected Apple's argument that certification was inappropriate because

16   individualized proof of injury was required, finding the predominance requirement satisfied by the

17   "numerous common questions of law and fact involving [Apple]'s allegedly anticompetitive

18   conduct." *Id.* at 12.[4]   Finally, the Court held that a class action was "the superior method to

19   adjudicate Plaintiffs' claims." *Id.* at 12. In a later order the Court clarified that it had considered but

20   rejected Apple's argument that resellers should be excluded from the certified damages class. Dkt.

21   No. 198 at 2 ("the Court implicitly included resellers in the certified class").

---

23   [3]     Because of subsequent rulings and developments in the marketplace, discussed below,
Plaintiffs' operative complaint does not include a claim for injunctive relief.

25   [4]     The Court also rejected Apple's argument that individualized proof of injury prevented the
named Plaintiffs' claims from being typical of those of the class: "Each of the antitrust causes of
26   action asserted in this case are based on domestic iPod purchases directly from Apple, and relate to
the same allegedly anticompetitive conduct associated with the iPod and the ITMS. Given that the
27   named Plaintiffs allege antitrust injury based on exactly this type of iPod purchase, their claims are
sufficiently co-extensive with those of absent class members to satisfy the typicality requirement of
Rule 23(a)." *Id.* at 8-9.

28

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                              - 4 -

1    The Court declined to certify Plaintiffs' tying claims, however, deferring that issue until the

2    parties could brief the question as to whether the market-level coercion alleged by Plaintiffs was

3    sufficient to support their tying claims under Section 1. *Id.* at 7-8. The Court ultimately dismissed

4    Plaintiffs' tying claims, holding that Plaintiffs' allegations of technological interoperability between

5    iPods and music purchased from iTMS (now known as the iTunes Store) did not constitute unlawful

6    tying under Section 1 under either a per se or a rule of reason theory. Dkt. No. 213; Dkt. No. 274.

7    As a result of its ruling dismissing Plaintiffs' tying claims, the Court *sua sponte* vacated its

8    order certifying the monopolization claims. The Court held that it was unable to provide clear

9    definitions of the affected classes because Plaintiffs' monopoly maintenance claims remained

10   "inextricably interwoven" with allegations supporting the dismissed claims. Dkt. No. 303 at 10.

11   The Court invited Plaintiffs to further amend their complaint to clarify that the monopoly claims are

12   not dependent upon the allegations of tying. *Id.* at 3. Notably, the Court made clear in its

13   decertification order (Dkt. No. 303) that it was ***not*** decertifying the classes on the grounds raised by

14   Apple in its motion to decertify:

15       [T]his decertification is not dependent on the grounds raised by Defendant in its
         Motion to decertify, namely, that Plaintiffs' expert, Dr. Roger G. Noll's, report
16       provides an inadequate method for proving common impact on the class to meet the
         predominance requirement of Rule 23(b)(3). The Court rejects Defendant's
17       contention and decertifies the Rule 23(b)(3) without prejudice and only in order to
         ensure that a proper class would be defined in light of this Order.
18
     *Id.* at 2 n.6.
19
     **B.    Plaintiffs' Narrowed Section 2 Claims**
20
         In accordance with the Court's directive, on January 26, 2010, Plaintiffs filed an Amended
21
     Consolidated Complaint ("ACC") alleging violations of Section 2 of the Sherman Act and
22
     California's UCL statute that are ***not*** premised on the technological tie between the iPod and digital
23
     audio files purchased through the iTunes Store. Dkt. No. 322, ¶¶2-4. The ACC instead focuses on
24
     Apple's affirmative and pretextual use of software updates beginning in 2004 to maintain or attempt
25
     to maintain its monopolies in the digital audio file and digital media player markets. *Id.*, ¶¶52-67.
26

27

28

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                              - 5 -

1    The Court, on June 29, 2010, sustained the ACC over Apple's motion to dismiss and

2    alternative motion for summary judgment, rejecting Apple's assertion that the willfulness element of

3    a Section 2 claim was inadequately plead. *See* Dkt. No. 377 at 5-6.[5] The Court wrote:

4         The Court finds that Plaintiffs have alleged facts, which if proven true, would
          suffice to hold Defendant liable under Section 2 of the Sherman Act. Specifically,
5         Plaintiffs allege that Defendant used software updates to maintain its monopolies in
          both the digital media and portable digital media player markets by preventing
6         competing online music stores from offering customers digital files that could be
          played on the iPod, and by preventing competing music players from being able to
7         play digital files purchased from the iTS. . . . Thus, Plaintiffs' allegations, if proven
          true, would satisfy the second element of a claim for monopolization under Section 2
8         of the Sherman Act.

9    *Id.* at 6.[6]

10   Notably, Apple sought summary dismissal of the Section 2 claims using a declaration in

11   which Apple employee Jeffrey Robbin represented that Apple's conduct was motivated by its

12   obligation to protect the digital rights management ("DRM") interests of the music labels. *Id.* at 7,

13   9-11 (noting Apple's contention that the updates were aimed at stopping hacks and complying with

14   agreements with the labels). The Court rejected Apple's bid for summary resolution as insufficiently

15   supported and premature, finding that Plaintiffs were entitled to conduct discovery in order to

16   challenge the validity of Apple's business justification defense:

17        The Court finds that the Declaration of one of Defendant's own employees is
          an insufficient basis upon which to find that there is no triable issue of fact as to
18        Defendant's claimed business justification in the face of Plaintiffs' request for further
          discovery under Federal Rule of Civil Procedure 56(f). The Robbin Declaration
19        provides little detail as to the nature of the hacks and how they worked, or the
          manner in which Defendant's software updates addressed the threat posed by the
20        hacks. Furthermore, the temporal proximity between RealNetworks' announcement
          of its iPod-compatible Harmony technology in July 2004 and the release of iTunes
21        4.7, which ended that compatibility, in October 2004 raises questions about the real
          purpose of Defendant's software redesign that Plaintiffs should at least have an
22        opportunity to explore through additional discovery.

23   *Id.* at 12-13.

24   _____

25   [5]   Apple did not challenge the first or third elements of Plaintiffs' Section 2 allegations,
     namely, that Apple possesses monopoly power in a relevant market and that its conduct has caused
26   antitrust injury, in either its motion to dismiss or alternative motion for summary judgment. *Id.* at 5.

27   [6]   The Court dismissed Plaintiffs' Cartwright Act, California Legal Remedies Act ("CLRA")
     and Common Law monopoly claims but upheld their UCL claims. *Id.* at 7-9.

28

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                              - 6 -

1    In short, the Court has squarely framed the fundamental, common substantive issue to be

2    litigated under the ACC: the validity of Apple's purported "business justification" defense.

3    **C.    Factual Background**

4    Formal and informal discovery accomplished to date, despite Apple's significant delays,[7]

5    amply demonstrates that Plaintiffs claims are proper for class treatment.  Common issues regarding

6    Apple's anticompetitive conduct swamp any purported issues affecting only individual members of

7    the proposed class.

8    Plaintiffs allege that Apple obtained monopoly power in the market for digital audio files

9    almost immediately after the launch of the iTunes Store in 2003 because Apple was the first legal

10   download service to offer a comprehensive library of music.  Apple was then able to leverage that

11   power into monopoly power in the portable digital media player market because the iPod was the

12   only portable digital media player that could directly play music purchased through the iTunes Store.

13   Dkt. No. 322, ¶¶40-51, 62; *see also* Noll Decl. at 44-45, 48.

14   Evidence defining the digital audio file market and the portable digital media player market

15   and demonstrating Apple's monopoly power in these markets is susceptible to common proof and

16   will predominate over any individual issues.  Noll Decl. at 29-51; *see also* §IIIB.1. ████████

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████

19   ████[8]  Ex. 1 at 24:6-9; Noll Decl. at 48.  Common evidence also demonstrates ████████

20   ████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████

22   _____

23   [7]    Plaintiffs have been greatly hampered by Apple's "data dump" during the month leading up
     to the discovery deadline and the two weeks following that deadline, during which time it produced
24   more than a million pages of documents and data that Plaintiffs had requested in 2009.  *See*
     Declaration of Paula M. Roach in support of renewed motion for class certification, filed
25   concurrently ("Roach Decl."), ¶¶8-9.  Plaintiffs accordingly reserve the right to supplement their
     expert report in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

26   [8]    Unless otherwise noted, all references to "Ex" and "Exs." are to the declaration of Bonny E.
27   Sweeney in support of Plaintiffs' renewed motion for class certification, filed concurrently
     ("Sweeney Decl.").

28

593800_1

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                              - 7 -

1   ███████████ Noll Decl. at 48; Ex. 1 at 184:15-18; Exs. 2-4.  Similarly, Plaintiffs will use common

2   evidence███████████████████████████████████████████

3   ████████████████████████████████████████████████████

4   ███████ Noll Decl. at 46-51; Ex. 5 at 30:21-31:5; *see also* Dkt. No. 196 at 6-7.  This evidence is

5   common to all class members.

6       Plaintiffs will also rely on common evidence to prove that Apple willfully maintained its

7   monopolies in the relevant markets.████████████████████████████

8   ████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████

16  ██████████████████████████████████

17      As a result of Apple's decision to use FairPlay, digital audio files purchased from other

18  internet sites (such as Amazon.com or Walmart.com) could not play directly on an iPod.  Dkt. No.

19  322, ¶¶68-72.  Similarly, songs purchased from the iTunes Store could not play directly on any

20  portable digital media player other than the iPod.  *Id.* ████████████████████

21  ████████████████████████████████████████████████████

22  ████████████████████████████████████████████

23  █████████

24

25  _____

26  [9] ████████████████████████████████████████████████

27  ██████████████████████████████████

28

593800_1

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                    - 8 -



PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                    - 9 -



Proof that Apple used unnecessary and non-improving iTunes software and iPod firmware updates to exclude RealNetworks and other potential rivals from the market is common to the class

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)      - 10 -

1  because it will focus on Apple's conduct.  Similarly, evidence that Apple's asserted business

2  justification is mere pretext is also common to the class:[13]  Plaintiffs will rely on common evidence

3  to prove that the disabling updates provided no benefit to consumers because the recording labels did

4  not, despite Apple's claims to the contrary, threaten to withhold music unless Apple shut down

5  Harmony.  ███████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████

8  ███████  As a result of Apple's conduct, consumers were further restricted in the choice of music

9  that was compatible with the iPod.[14]

10  ## III.  THE REQUIREMENTS OF RULE 23 ARE FULLY SATISFIED

11  "In determining the propriety of a class action, the question is not whether the plaintiff or

12  plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the

13  requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140,

14  2153 (1974); *see also Online DVD*, 2010 WL 5396064, at *2.  Arguments evaluating the weight of

15  evidence or the merits of a case are improper at the class certification stage.  *United Steel, Paper*

16  *&Forestry, Rubber Mfg. Energy v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (reversing

17  a denial of a claim certification motion the court held that district courts "'may not go so far. . . as to

18  judge the validity of these claims'").  The Court is instead "'bound to take the substantive allegations

19  of the complaint as true.'"  *Tableware*, 241 F.R.D. at 648 (quoting *Blackie v. Barrack*, 524 F.2d 891,



13 ████████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████████

593800_1

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                              - 11 -

1   901 n.17 (9th Cir. 1975)).  Nor may a court weigh the merits of conflicting expert evidence.  *See In*

2   *re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 135 (C.D. Cal. 2007) (challenges to expert opinions

3   constitute merits determinations not properly resolved at the class certification stage).

4        As shown below, certification of Plaintiffs' Section 2 claims and UCL claim, as well as

5   Apple's affirmative defenses, is even more clearly warranted now than it was when the Court

6   certified those claims earlier in this litigation.

7        **A.    Rule 23(a) Is Satisfied**

8            **1.    Numerosity**

9        The numerosity requirement is met if "the class is so numerous that joinder of all members is

10  impracticable." Fed. R. Civ. P. 23(a)(1).  "'A finding of numerosity may be supported by common

11  sense assumptions, and it is especially appropriate in antitrust actions brought under Rule 23(b)(3).'"

12  *Tableware*, 241 F.R.D. at 648 (quoting *Playmobil*, 35 F. Supp. 2d at 239); *see also Online DVD*,

13  2010 WL 5396064, at *3 ("plaintiffs need not state the 'exact' number of potential class members");

14  *Rubber Chems.*, 232 F.R.D. at 350.  "A potential class of 1,700 members is, *a fortiori*, sufficiently

15  numerous to preclude joinder."  *Krehl v. Baskin-Robbins Ice Cream Co.*, 78 F.R.D. 108, 114 (C.D.

16  Cal. 1978).  The fact that a class is geographically dispersed supports class certification.  *DRAM*,

17  2006 WL 1530166, at *3.

18  ███████████████████████████████████████████████████████

19  ███████████████████████████████████████████████████████

20  ████████████████████████████████████   Because the number of putative class

21  members in the United States is unquestionably in the millions, numerosity is easily satisfied.  *See*

22  *Online DVD*, 2010 WL 5396064, at *3; *Live Concert*, 247 F.R.D. at 116 (numerosity satisfied by

23  "thousands" of class members); *Tableware*, 241 F.R.D. at 648-49 (same); *DRAM*, 2006 WL

24  1530166, at *3 (same).

25            **2.    Commonality**

26        Commonality is satisfied where "there are questions of law or fact common to the class."

27  Fed. R. Civ. P. 23(a)(2).  The commonality requirement is permissively construed, such that "[t]he

28  existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of

1  salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150

2  F.3d 1011, 1019 (9th Cir. 1998).   In the antitrust context, "[a]n allegation of . . .

3  monopolization . . . will establish a common question." *Newberg*, §18:5.

4         To prove their Section 2 monopolization claims, Plaintiffs must show: (1) that Apple

5  possessed monopoly power in the relevant market; (2) that Apple willfully acquired or maintained

6  that power; and (3) that Apple's conduct has caused antitrust injury. *See* Dkt. No. 377 at 5; *see also*

7  *Cost Mgmt. Servs. v. Wash. Natural Gas Co.*, 99 F.3d 937, 949 (9th Cir. 1996); *Moore v. Jas. H.*

8  *Matthews & Co.*, 550 F.2d 1207, 1218 (9th Cir. 1977).   Similarly, to establish their Section 2

9  attempted monopolization claim, Plaintiffs must show:  (1) a specific intent by Apple to monopolize

10  the relevant market; (2) predatory or anticompetitive conduct by Apple designed to control prices or

11  destroy competition; (3) a dangerous probability of success; and (4) causal antitrust injury. *Rebel*

12  *Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995); *Davis v. Pac. Bell*, 204 F. Supp. 2d

13  1236, 1241 (N.D. Cal. 2002).

14         Because none of these elements of either Section 2 violation turns on the individual

15  circumstances of any one product purchaser, courts have consistently certified Section 2

16  monopolization and attempted monopolization claims for class-wide resolution of those claims. *See,*

17  *e.g.*, *Live Concert*, 247 F.R.D. at 131; *Behrend v. Comcast Corp.*,  No. 03-6604, 2007 WL 2972601,

18  at *12-*14 (E.D. Pa. Oct. 10, 2007); *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12,

19  29-30 (D.D.C. 2001).

20         Here, the legal issues common to all class members likewise include virtually every element

21  of the federal antitrust claims alleged against Apple:  What is the proper scope of the relevant

22  markets?  What are Apple's respective market shares?  Does Apple enjoy market power in these

23  markets?  Has Apple used software updates to maintain or attempt to maintain monopoly power in

24  these markets?  Are Apple's asserted business justification mere pretext?  If Apple is liable, how are

25  damages to be calculated?  These and many other common issues focusing on the common conduct

26  of Apple are squarely raised in this action, amply demonstrating commonality. *Compare In re Static*

27  *Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 609 (N.D. Cal. 2009) ("*SRAM*")

28  (commonality satisfied based on common issues such as market definition, monopoly power,

1  anticompetitive conduct and casual antitrust injury); *Live Concert*, 247 F.R.D. at 117 (same);

2  *Tableware*, 241 F.R.D. at 649 (same).

### 3. Typicality

4      The third Rule 23(a) requirement, typicality, is met where "the claims . . . of the

5  representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3).  This

6  requirement is "permissive," and to be "liberally construed." *Thomas & Thomas Rodmakers, Inc. v.*

7  *Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 164 (C.D. Cal. 2002).   A class

8  representative's "claims are 'typical' if they are reasonably co-extensive with those of absent class

9  members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *SRAM*, 264 F.R.D. at

10  609.  In the antitrust context, typicality "will be established by plaintiffs and all class members

11  alleging the same antitrust violations by the defendants." *Estate of Garrison v. Warner Bros., Inc.*,

12  No. CV 95-8328 RMT, 1996 WL 407849, at *2 (C.D. Cal. June 25, 1996); *accord Newberg*, §18.8.[15]

13  Plaintiffs' claims need not "be identical to the claims of class members." *Online DVD*, 2010 WL

14  5396064, at *4.  "Rather, typicality results if the representative plaintiffs' claims 'arise[] from the

15  same event, practice or course of conduct that gives rise to the claims of the absent class members

16  and if their claims are based on the same legal or remedial theory." *Id.*

17      Here, Plaintiffs allege precisely the same antitrust claims on behalf of themselves and every

18  other person that purchased an iPod directly from Apple during the Class Period, and seek relief for

19  payment of supracompetitive prices based on the same legal theories.   Dkt. No. 322, ¶¶6-8.

20  Typicality is thus satisfied.  *Cf. SRAM*, 264 F.R.D. at 609 (typicality requirement met by direct

21  purchaser plaintiffs); *Live Concert*, 247 F.R.D. at 117-18 (same); *Tableware*, 241 F.R.D. at 649

22  (same).

---

25  [15]      The typicality requirement "does not mandate that products purchased, methods of purchase,
26  or even damages of the named plaintiffs must be the same as those of the absent of the class
members." *SRAM*, 264 F.R.D. at 609; *see also DRAM*, 2006 WL 1530166, at *4 (typicality satisfied
27  "even though the plaintiff followed different purchasing procedures, purchased in different quantities
or at different prices, or purchased a different mix of products than did the members of the class").

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                                    - 14 -

1        **4.      Adequacy**

2        The fourth requirement of Rule 23(a) is that "the representative parties will fairly and

3    adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Adequacy under Rule

4    23(a)(4) turns on two basic questions: (1) whether named plaintiffs and their counsel have any

5    conflicts of interest with class members; and (2) whether named plaintiffs and their counsel will

6    prosecute the action vigorously on behalf of the class.  *Id.*; *see also Staton v. Boeing Co.*, 327 F.3d

7    938, 957 (9th Cir. 2003); *Live Concert*, 247 F.R.D. at 118.  To disqualify class representatives or

8    class counsel, perceived conflicts of interest "must go to the heart of the litigation, relating to the

9    subject matter of the suit."  *Newberg*, §18:14; *accord Blackie*, 524 F.2d at 909; *see also Cummings v.*

10   *Connell*, 316 F.3d 886, 896 (9th Cir. 2003) ("[T]his circuit does not favor denial of class certification

11   on the basis of speculative conflicts.").

12       Here, the interests of Plaintiffs and the rest of the proposed classes are entirely aligned: as

13   direct purchasers of iPods from Apple, all share the same interest in determining whether Apple's

14   use of software updates to exclude competitors violated antitrust law, whether competition was

15   thereby stifled, and whether Plaintiffs and class members consequently paid Apple supracompetitive

16   prices for their iPods.  *DRAM*, 2006 WL 1530166, at *6 (adequacy of representation met because

17   "the named plaintiffs allege that all members of the proposed class paid artificially inflated prices as

18   a result of defendants' [antitrust violation] during the relevant class period, that all suffered similar

19   injury as a consequence of the conspiracy, and that all seek the same relief").  There are no conflicts

20   precluding class certification.  *Compare SRAM*, 264 F.R.D. at 609-10 (no conflict precluding

21   certification of antitrust claims); *Live Concert*, 247 F.R.D. at 119-20 (same); *Tableware*, 241 F.R.D.

22   at 649 (same).

23       Nor is there any basis to doubt that Mr. Charoensak, Ms. Rosen, and Ms. Tucker are

24   motivated advocates for the proposed class.  They have retained legal counsel with considerable

25   experience in the prosecution of major class and antitrust litigation, including Robbins Geller, the

26   firm which the Court previously designated as co-lead class counsel for this litigation.  Ex. 30; *see*

27   *also* Dkt. No. 106 (Order Consolidating Related Cases; Appointing Co-Lead Counsel); *Online DVD*,

28   2010 WL 5396064, at *4 ("representation will be found to be adequate when the attorneys

1    representing the class are qualified and competent").   Furthermore, all three   proposed class

2    representatives have already given day-long depositions, have submitted their iPods for a forensic

3    inspection by Apple's counsel, and have produced voluminous (and needlessly intrusive)

4    documentation to Apple as part of the discovery process, including: copies of all music files stored

5    on their personal computers; copies of their iTunes Purchase history; iTunes account names and

6    passwords; copies of receipts documenting their iPod purchases from Apple; and lists of every

7    compact disc they currently own. Sweeney Decl., ¶¶2, 3.

8          **B.      Rule 23(b)(3) Is Satisfied**

9          Under Rule 23(b)(3), the Court may certify a class if it determines:  (1) that the questions of

10   law or fact common to the members of the class predominate over any questions affecting only

11   individual members; and (2) that a class action is superior to other available methods for the fair and

12   efficient adjudication of the controversy.  The "predominance" and "superiority" factors are closely

13   related: when common issues predominate, class actions achieve Rule 23's objectives of economy

14   and efficiency by minimizing costs and avoiding the confusion that would result from inconsistent

15   outcomes. *Tableware*, 241 F.R.D. at 651.

16         **1.      Predominance**

17         "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

18   cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.  "A

19   straightforward approach to predominance is to focus on what plaintiffs will need to prove at trial

20   and then to ask whether they can attempt to offer that proof through predominantly common

21   evidence." *Davis*, 17 Geo. Mason L. Rev. at 971.  In antitrust cases, issues of monopolization and

22   attempted monopolization are central common issues which readily satisfy the predominance

23   requirement.  *SRAM*, 264 F.R.D. at 611 ("'[C]ommon liability issues such as . . . monopolization

24   have, almost invariably, been held to predominate over individual issues.'"); *Newberg*, §18:26

25   (same); *see, e.g.*, *In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68, 88 (E.D.N.Y.

26   2000), *aff'd*, 280 F.3d 124 (2d Cir. 2001) (each element of an attempt to monopolize claim focuses

27   on conduct of the defendants and its effects in the relevant markets, factors that will not vary from

28   plaintiff to plaintiff).

593800_1

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                                   - 16 -

1     Here, as shown below and confirmed by Professor Noll, each element of Plaintiffs' Section 2

2   monopolization claims can and will be proved in this case through evidence common to every

3   member of the proposed classes.[16]

4       ***Monopoly Power***.  Plaintiffs will rely on common evidence to define the relevant markets

5   and to prove that Apple has market power in these markets.  In *Rebel Oil*, the Ninth Circuit reiterated

6   that market power in a Section 2 claim may be demonstrated in either of two ways: (1) direct

7   evidence of injurious exercise of market power, such as evidence of restricted output and

8   supracompetitive prices, or (2) circumstantial evidence of dominance in the relevant and significant

9   barriers to entry and competitor expansion of output.  *Rebel Oil*, 51 F.3d at 1434.  Neither of these

10  alternative approaches turns on proof of the idiosyncratic circumstances of the individual iPod

11  purchaser.  Noll Decl. at 19-23; 29-51; *see, e.g.*, *Rebel Oil*, 51 F.3d at 1432-43 (reviewing evidence

12  submitted in support of and in opposition to motion for summary judgment on attempt to

13  monopolize claim).

14      Plaintiffs here can most easily demonstrate Apple's market power in the relevant markets

15  ███████████████████████████████████████████████████████████████

16  ███████████, together with proof of barriers to entry.  *Eastman Kodak Co. v. Image Tech. Servs.*,

17  504 U.S. 451, 464, 112 S. Ct. 2072, 2081 (1992) ("The existence of such power ordinarily is inferred

18  from the seller's possession of a predominant share of the market."); ████████████████

19  ████████████████.  As Professor Noll has opined, all of the economic evidence regarding

20  market definition, market share and barriers to entry is common to the class.  Noll Decl. at 29-51.

21  Should Apple choose to debate market definition or dispute its market power, Apple will only

22  reinforce the predominance of common issues.  *See, e.g.*, *Live Concert*, 247 F.R.D. at 123-

23  31(concluding that whatever the respective merits of the parties' positions, the issue of market

24  definition and market power were predominate common issues supporting class certification).

25  _____

26  [16]     Similarly, because Plaintiffs' UCL claim relies on Plaintiffs' proof of its Section 2 claims,
    this claim will be proven through common proof.  *See* Dkt. No. 377 at 8; *see also Chavez v.*
27  *Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001).

28

1    ***Anticompetitive Conduct***.  "Anticompetitive conduct is behavior that tends to impair the

2    opportunities of rivals and either does not further competition on the merits or does so in an

3    unnecessarily restrictive way." *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 894 (9th

4    Cir. 2008) (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 n.32, 105 S.

5    Ct. 2847 (1985)).  Where, as here, the alleged anticompetitive conduct focuses "'on the defendants'

6    conduct and not on the conduct of the individual class members,'" predominance is satisfied. *Online*

7    *DVD*, 2010 WL 5396064, at *6 n.3 (quoting *In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*,

8    No. 02-6030 (WHW), 2006 WL 891362, at *9 (D.N.J. April 4, 2006)); *see also Live Concert*, 247

9    F.R.D. at 131-32.  As summarized above, Plaintiffs' Section 2 claims turn on Apple's own actions in

10   response to RealNetworks' introduction of the Harmony technology that was fully interoperable

11   ***without*** diminishing DRM protections and Apple's software changes to exclude other competitors.

12   *See* §II(C), above.  As Professor Noll explains, economic analysis can address whether this conduct

13   "reduced competition in the market for portable digital media players" and whether it "was

14   anticompetitive or an example of superior efficiency."  Noll Decl. at 58, 61.

15   ██████████████████████████████████████████████████████████████████████

16   ██████████████████████████████████████████████████████████████████████

17   ██████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████

19   ***Specific Intent to Monopolize***.  This element of the attempted monopolization claim can be

20   inferred from "'either specific intent coupled with monopoly power ***or*** from "proof of specific intent

21   to . . . exclude competition . . . accompanied by predatory conduct directed to accomplishing the

22   unlawful purpose.'"'  *Moore*, 550 F.2d at 1219.

23   ██████████████████████████████████████████████████████████████████████

24   ██████████████████████████████████████████████████████████████████████

25   ██████████████████████████████████████████████████████████████████████

26   ██████████████████████████████████████████████████████████████████████

27   ██████████████████████████████████████████████████████████████████████

28   ████████████████████████████████████  The burden shifts to Apple to demonstrate

593800_1

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                                    - 18 -

1   "'valid business reasons'" for its actions. *Eastman Kodak*, 504 U.S. at 483. Plainly, any and all

2   such proof of "business justification" will likewise focus on the conduct of Apple, statements and

3   conduct by the recording labels, a technical analysis of Apple's software updates, and evidence

4   regarding competitors, not the circumstances of any individual consumer. Noll Decl. at 66-68.

5       ***Dangerous Probability of Success***. In the Ninth Circuit a dangerous probability of success

6   required for an attempted monopolization claim may be inferred from the existence itself of

7   predatory or anticompetitive conduct. *Foremost Pro Color, Inc. v. Eastman Kodak Co.*. 703 F.2d

8   534, 544 (9th Cir. 1983). Once again, therefore, the evidence presented will concern Apple's own

9   company-wide actions, not the actions of any individual iPod purchaser.

10      ***Antitrust Impact.*** In a direct purchaser antitrust action, the mere payment of artificially high

11  prices is sufficient to establish injury in fact. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 729, 97 S.

12  Ct. 2061 (1977) ("[T]he overcharged direct purchaser . . . is the party 'injured in his business or

13  property' within the meaning of [the Clayton Act]."). Nevertheless, one tactic in opposing class

14  certification in antitrust cases is to isolate and focus on the question of antitrust impact. in the hopes

15  of persuading the court that such impact can only be proven on an individual basis. *Davis*, 17 Geo.

16  Mason L. Rev. at 985-86. To demonstrate antitrust impact at trial, however, Plaintiffs need only

17  show *some* injury suffered as a consequence of the alleged anti-competitive behavior. *See Zenith*

18  *Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 114 n.9, 89 S. Ct. 1562, 1572 n.9 (1969) (noting

19  the "burden of proving the fact of damage . . . is satisfied by . . . proof of *some* damage flowing from

20  the unlawful [conduct]; inquiry beyond this minimum point goes only to the amount and not the fact

21  of damage") (emphasis in original).

22      Antitrust impact is typically established for class certification purposes through expert

23  testimony confirming that generally accepted economic methodologies are available to demonstrate

24  impact and to reasonably calculate damages on a class-wide basis. *SRAM*, 264 F.R.D. at 612; *Live*

25  *Concert*, 247 F.R.D. at 136; *DRAM*, 2006 WL 1530166, at *8; *Estate of Garrison*, 1996 WL 407849,

26  at *4. Apple concedes this is the applicable standard. *See, e.g.*, Dkt. No. 240 at 1 (Defendant's

27  Motion for Decertification of Rule 23(B)(3) Class) ("To obtain class treatment, the plaintiff must

28  show a reliable method for proving common impact on the purported class."). At the class

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                                    - 19 -

1   certification stage, then, Plaintiffs "need only advance a plausible methodology to demonstrate that

2   antitrust injury can be proven on a class-wide basis." *DRAM*, 2006 WL 1530166, at *9; *see also*

3   *Online DVD*, 2010 WL 5396064, at *9-*10; *Live Concert*, 247 F.R.D. at 146-47.

4         Plaintiffs have done just that.  Professor Noll, in his Declaration, explains the different ways

5   Apple's alleged anticompetitive actions have harmed competition in the relevant markets, not only

6   through supracompetitive pricing for iPods (specifically addressed below in the context of ways to

7   calculate antitrust damages), but also:  (a) "dead-weight loss" that occurs when prices exceed the

8   incremental cost of production; (b) reduced intensity of competition among other firms in the

9   respective markets; and (c) the adverse effects of "lock-in" due to technological incompatibility,

10  which extends not only to reduced choice for consumers but also to reduced incentive to innovate by

11  competitors.  Noll Decl. at 63-66.  Professor Noll confirms that the economic evidence to establish

12  these harms, involving product features and market outcomes, is common to all class members.  *Id.*

13  at 65.  *Cf. Live Concert*, 247 F.R.D. at 144 ("Plaintiffs have demonstrated that several generally

14  accepted methodologies can be used to prove class-wide impact through the use of common

15  evidence.").

16        Although the Court has already rejected Apple's attack on the sufficiency of Professor Noll's

17  earlier report for purposes of class certification, (Dkt. No. 377 at 2 n.6) Professor Noll has revised

18  his report to the extent possible given Apple's calculated discovery delay.  *See* Noll Decl. at 14-19;

19  Roach Decl., ¶¶8-10.  Professor Noll has confirmed that class-wide impact can be demonstrated

20  through the use of common evidence.  For example, as he explains in his Declaration, each of the

21  three damages methods that he proposes using in this case "produces a formula for damages that is

22  based on data about prices, product characteristics, costs, and conditions in the market.  Each method

23  would be based on data and analysis for all iPods sold to all direct purchasers, and so would be

24  predominantly common to class members."  Noll Decl. at 28; *see generally* Noll Decl. at 68-84.

25        ***Antitrust Damages.***  Once antitrust injury is established, the overall burden of proving

26  damages is eased significantly under the Sherman Act.  *Moore v. Jas. H. Matthews & Co.*, 682 F.2d

27  830, 836 (9th Cir. 1982); *see also Online DVD*, 2010 WL 5396064, at *11 ("plaintiffs have 'a

28  limited burden with respect to showing that individual damages issues' do not predominate"); *Live*

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                                    - 20 -

1   *Concert*, 247 F.R.D. at 144-45 (citing *Moore*, 682 F.2d 830, among other authorities); *DRAM*, 2006

2   WL 1530166, at *10.  Furthermore, "the use of an aggregate approach to measure class-wide

3   damage is appropriate." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 324 (E.D. Mich. 2001).

4   Individual damages issues are thus generally no bar to certification of antitrust claims.  *Online DVD*,

5   2010 WL 5396064, at *11; *Live Concert*, 247 F.R.D. at 137 (collecting cases); *In re Rubber Chems.*,

6   232 F.R.D. at 354; *see generally Newberg*, §18:27.  "Plaintiffs need not supply a 'precise damage

7   formula,' but must simply offer a proposed method for determining damages that is not 'so

8   insubstantial as to amount to no method at all.'" *Online DVD*, 2010 WL 5396064, at *11 (quoting *In

9   re Potash Antitrust Litig.*, 159 F.R.D. 682, 697 (D. Minn. 1995)).

10        Here again the quantification of damages only ***reinforces*** predominance because Plaintiffs

11   will calculate those damages on a class-wide basis, based upon one or more of the three best

12   established and most reliable aggregate damages methodologies.  *Compare SRAM*, 247 F.R.D. at

13   144-47; *DRAM*, 2006 WL 1530166, at *10.  Specifically, Professor Noll confirms that antitrust

14   damages can be calculated under the "before-and-after" method, the "yardstick" method or the

15   "mark-up" method – all recognized methodologies that are, in Professor Noll's opinion, suitable for

16   use in this case, based upon documents and data produced by Apple and reasonably relied upon by

17   experts in the field.  Noll Decl. at 68-84.

18        Courts have repeatedly acknowledged these methodologies as accepted means of calculating

19   class-wide damages in the antitrust context.  *See, e.g., DRAM*, 2006 WL 1530166, at *10.[17]

20   Decisions in this district subsequent to *DRAM* continue to recognize the validity of these methods

21   and have certified classes accordingly.  *See, e.g., Tableware*, 241 F.R.D. at 652 (the materials

22   ───────────────

23   [17]    *See also In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D 493, 521 (S.D.N.Y. 1996)
     (holding the "'yardstick'" method for calculating damages, which "'compares profits earned or

24   prices paid by the plaintiff with the corresponding data for a . . . market unaffected by the violation'"
     is "an accepted means of measuring damages in an antitrust action"); *In re Indus. Silicon Antitrust

25   Litig.*, No. 95-1131, 1998 WL 1031507, at *3 (W.D. Pa. Oct. 13, 1998) (finding expert's before-and-
     after comparison proper model for showing antitrust damages); *In re Corrugated Container Antitrust

26   Litig.*, No. MDL 310, 1979 WL 1751, at *2 (S.D. Tex. Dec. 21, 1979) (approving, over objection,
     damages amount in antitrust settlement because expert's damages "estimate was based on a before-

27   and-after model, using the four years within the statute of limitations as 'before' and the years 1977
     and 1978, after the grand jury investigation was underway, as 'after'").

28

593800_1

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                    - 21 -

1  supporting the before-and-after method "suffice to show that means exist for proving impact on a

2  class-wide basis"); *SRAM*, 264 F.R.D. at 615  (finding "before and after" and "cost data" methods

3  sufficient for certification of indirect purchase class); *In re Static Random Access (SRAM) Antitrust*

4  *Litig.*, No. C-07-01819 CW, 2008 WL 4447592, at *6-*7 (N.D. Cal. Sept. 29, 2008) (same methods

5  suffice for certification of direct purchaser class).

6  　　　　Apple may attempt to attack Professor Noll's application of these accepted models for

7  quantifying class-wide damages, but this is neither the time nor place to resolve any such battle of

8  the experts: "'It is not necessary that plaintiffs show that their expert's methods will work with

9  certainty at this time.  Rather, plaintiffs' burden is to present the court with a likely method for

10  determining class damages.'"  *Tableware*, 241 F.R.D. at 652 (quoting *In re Domestic Air Transp.*

11  *Antitrust Litig.*, 137 F.R.D. 677, 693 (N.D. Ga. 1991)); *accord Live Concert*, 247 F.R.D. at 110 ("a

12  district court is not permitted to discount the testimony of a plaintiff expert merely because the

13  defendant has challenged some aspect of the expert's opinion"); *Rubber Chems.*, 232 F.R.D. at 353

14  (same).  At this stage, Plaintiffs need to only offer "realistic methodologies."  *DRAM*, 2006 WL

15  1530166, at *10.  As Justice Souter recently wrote:

16  　　　　Plaintiffs have offered affidavits of their expert economist in support of a class-wide
　　　　methodology for appraising damages depending on severity and duration of
17  　　　　contamination. [Defendant's] effort to discredit this approach apparently portends a
　　　　fight over admissibility and weight that would be identical in at least a high
18  　　　　proportion of cases if tried individually.

19  *Gintis v. Bouchard Transp. Co.*, 596 F.3d 64, 67 (1st Cir. 2010) (vacating denial of class

20  certification).

21  　　　　**2.　　　Superiority**

22  　　　　Superiority is demonstrated where "classwide litigation of common issues will reduce

23  litigation costs and promote greater efficiency."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227,

24  1234 (9th Cir. 1996).  Apple cannot seriously question the superiority of the class mechanism in

25  resolving the antitrust claims asserted against it here; the resolution of the monopolization claims of

26  each iPod purchaser on an individual basis is plainly not the preferable alternative. *Live Concert*,

27  247 F.R.D. at 148 (holding class mechanism clearly superior way to resolve antitrust claims, even if

28  individualized damages analysis were assumed *arguendo* to be required); *DRAM*, 2006 WL

1   1530166, at *11 ("it would be unnecessarily duplicative, and judicially inefficient, for the court to

2   mandate individual trials as to each class member"); *see generally* 2 Alba Conte & Herbert B.

3   Newberg, *Newberg on Class Actions*, §4:32 (4th ed. 2002) ("It is only when such difficulties make a

4   class action less fair and efficient than some other method, such as individual interventions or

5   consolidation of individual lawsuits, that a class action is improper.").

6        Indeed, class certification is nothing less than essential if the private antitrust enforcement

7   mechanism is to function at all.  As stated in *Tableware*: "The modest amount at stake for individual

8   plaintiffs . . . renders individual prosecution impractical; class treatment not only promotes judicial

9   economy, it represents plaintiffs' **only** chance for adjudication."  *Tableware*, 241 F.R.D. at 652

10  (citing *Amchem Prods.*, 521 U.S. at 616).

11       **C.     There Exists a Readily Definable Class of Apple Customers**

12       A Rule 23 class must be defined with reasonable specificity.  *O'Connor v. Boeing N. Am.,*

13  *Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).  A class definition is "'definite enough'" to satisfy Rule

14  23 if it "'is administratively feasible for the court to ascertain whether an individual is a member.'"

15  *Tableware*, 241 F.R.D. at 650 (quoting *O'Connor*, 184 F.R.D. at 319).  The class definition proposed

16  by Plaintiffs here – all persons who purchased specified products directly from Apple during a

17  specified time period – unquestionably constitute "ascertainable" classes within the meaning of Rule

18  23.  *See, e.g., Live Concert*, 247 F.R.D. at 105 (certifying class of:  "'All persons who purchased

19  tickets to any live rock concert in the Chicago Region directly from any of the Defendants or their

20  affiliates or predecessors or agents during the period from June 19, 1998 to the present'").  This

21  Court has certified far less precisely defined classes.  *See, e.g., Slaven v. BP Am., Inc.*, 190 F.R.D.

22  649, 650-51 (C.D. Cal. 2000) (certifying class defined as persons who have suffered or will suffer

23  economic damage as a result of an oil spill and/or the ensuing clean-up effort).

24       **D.     Appointment of Class Counsel**

25       Rule 23(g)(1) requires the Court to appoint counsel to represent the interests of the class.

26  *Rubber Chems.*, 232 F.R.D. at 355.  For the reasons stated above in connection with the adequacy

27  requirements of Rule 23(a)(4), and as has hopefully been demonstrated thus far in this litigation, the

28  counsel retained by Plaintiffs to prosecute this class action are "well equipped" to vigorously

1   represent the proposed classes.  *See* Ex. 30.  Accordingly, the Court should again appoint Robbins

2   Geller as counsel for the class.[18]

3   **IV.      CONCLUSION**

4          All of Rule 23's requirements for the certification of Plaintiffs' monopolization, attempted

5   monopolization and UCL claims against Apple have once again been satisfied.  Plaintiffs' renewed

6   motion for class certification should be granted: the Court should appoint Melanie Tucker, Mariana

7   Rosen, and Somtai Troy Charoensak as Class Representatives and Robbins Geller as Lead Class

8   Counsel.

9   DATED:  January 18, 2011                      Respectfully submitted,

10                                                ROBBINS GELLER RUDMAN
                                                     & DOWD LLP
11                                                JOHN J. STOIA, JR.
                                                  BONNY E. SWEENEY
12                                                THOMAS R. MERRICK
                                                  ALEXANDRA S. BERNAY
13                                                PAULA M. ROACH

14

15                                                        s/ Bonny E. Sweeney
                                                  _____
16                                                    BONNY E. SWEENEY

17                                                655 West Broadway, Suite 1900
                                                  San Diego, CA  92101
18                                                Telephone:  619/231-1058
                                                  619/231-7423 (fax)

19                                                THE KATRIEL LAW FIRM
                                                  ROY A. KATRIEL
20                                                1101 30th Street, N.W., Suite 500
                                                  Washington, DC  20007
21                                                Telephone:  202/625-4342
                                                  202/330-5593 (fax)
22
                                                  Co-Lead Counsel for Plaintiffs
23

24

25   _____

26   [18]      Although the Court appointed Robbins Geller as interim co-lead class counsel together with
     The Katriel Law Firm, Robbins Geller now moves separately for Lead Class Counsel and has given
27   notice to The Katriel Law Firm.

28

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                        - 24 -

1
2
3
4
5
6

BONNETT, FAIRBOURN, FRIEDMAN
 & BALINT, P.C.
ANDREW S. FRIEDMAN
FRANCIS J. BALINT, JR.
ELAINE A. RYAN
TODD D. CARPENTER
2901 N. Central Avenue, Suite 1000
Phoenix, AZ 85012
Telephone: 602/274-1100
602/274-1199 (fax)

7
8
9
10

BRAUN LAW GROUP, P.C.
MICHAEL D. BRAUN
10680 West Pico Blvd., Suite 280
Los Angeles, CA 90064
Telephone: 310/836-6000
310/836-6010 (fax)

11
12
13
14

MURRAY, FRANK & SAILER LLP
BRIAN P. MURRAY
JACQUELINE SAILER
275 Madison Avenue, Suite 801
New York, NY 10016
Telephone: 212/682-1818
212/682-1892 (fax)

15
16
17

GLANCY BINKOW & GOLDBERG LLP
MICHAEL GOLDBERG
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: 310/201-9150
310/201-9160 (fax)

18

Additional Counsel for Plaintiffs

19
20
21
22
23
24
25
26
27
28

593800_1

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                    - 25 -

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on January 18, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

      I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 18, 2011.

                          s/ Bonny E. Sweeney
                          BONNY E. SWEENEY

                          ROBBINS GELLER RUDMAN
                              & DOWD LLP
                          655 West Broadway, Suite 1900
                          San Diego, CA  92101-3301
                          Telephone: 619/231-1058
                          619/231-7423 (fax)

                          E-mail:        bonnys@rgrdlaw.com

# Mailing Information for a Case 5:05-cv-00037-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Todd David Carpenter**
  tcarpenter@bffb.com,pjohnson@bffb.com,rcreech@bffb.com

- **Andrew S. Friedman**
  khonecker@bffb.com,rcreech@bffb.com,afriedman@bffb.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com

- **Roy Arie Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com

- **Thomas Robert Merrick**
  tmerrick@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com,ewallace@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,ybennett@jonesday.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Paula Michelle Roach**
  proach@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Elaine A. Ryan**
  eryan@bffb.com,pjohnson@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Michael Tedder Scott**
  michaelscott@jonesday.com,amhoward@jonesday.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **John J. Stoia , Jr**
  jstoia@rgrdlaw.com

- **Bonny E. Sweeney**
  bonnys@rgrdlaw.com,christinas@rgrdlaw.com,E_file_sd@rgrdlaw.com,proach@rgrdlaw.com

- **Helen I. Zeldes**
  helenz@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)