1  Robert A. Mittelstaedt #60359
ramittelstaedt@jonesday.com
2  Craig E. Stewart #129530
cestewart@jonesday.com
3  David C. Kiernan #215335
dkiernan@jonesday.com
4  Michael T. Scott #255282
michaelscott@jonesday.com
5  JONES DAY
555 California Street, 26th Floor
6  San Francisco, CA 94104
Telephone: (415) 626-3939
7  Facsimile: (415) 875-5700
8

9  Attorneys for Defendant APPLE INC.

10            **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12            **SAN JOSE DIVISION**

13

14  **THE APPLE iPOD iTUNES ANTI-**        Lead Case No.  C 05-00037-JW (HRL)
   **TRUST LITIGATION**
15                                          [CLASS ACTION]

16  _____         **DECLARATION OF DAVID C. KIERNAN**
                                            **IN SUPPORT OF APPLE INC.'S**
17  This Document Relates To:               **OPPOSITION TO RENEWED MOTION**
                                            **FOR CLASS CERTIFICATION**
18  ALL ACTIONS
                                            Date:        April 18, 2011
19                                          Time:        9:00 a.m.
                                            Place:       Courtroom 8, 4th Floor
20

21

22

23

24

25

26

27

28

1    I, David C. Kiernan, declare as follows:

2        1.    I am a partner of Jones Day, counsel of record for Defendant Apple Inc.  I am an

3   active, licensed member of the State Bar of California.  I make this declaration in support of

4   Apple Inc.'s Opposition to Renewed Motion for Class Certification.  I submit this declaration

5   based on personal knowledge.

6        2.    Plaintiffs' suggestion (footnote 7) that Apple deliberately delayed producing or

7   "dumped" documents at the last minute is untrue.  Since merits discovery opened in June 2009,

8   Apple engaged in a cooperative process with Plaintiffs.  Counsel for the parties met and conferred

9   throughout the discovery period over the scope of Plaintiffs' requests, Apple's responses, and the

10  status of production.  The timing of Apple's production was a result of the broad scope of the

11  requests; the ongoing meet and confer process to limit that scope; the necessary time to obtain

12  information, process, and review it for responsiveness, confidentiality, and privilege; and the

13  staging of discovery as agreed to by the parties.  Moreover, Apple had to collect from employees

14  on multiple occasions over the life of the case, which added significant time to the process.

15       3.    Plaintiffs served four sets of sweeping discovery requests, including requests for

16  nearly every document that had anything to do with updates to Apple's DRM; interoperability of

17  Apple's products with competitors' products; technical specifications of iPods; information

18  regarding prices, sales, costs, forecasts, and market share of each iPod model and the iTunes Store

19  over a nine-year period; transactional data for each iPod sold to resellers, including quantity sold,

20  date of sale, iPod model number, and price from October 2001 to present; features or

21  functionality of each iPod, including comparisons to competing music players; iPod pricing

22  strategy; quarterly costs to develop, maintain and advertise iTS; quarterly revenue, costs, and

23  component costs for each iPod model; quarterly number of songs available on iTS; prices of

24  iPods to direct purchaser end users; negotiations or communications regarding any contracts with

25  Hewlett-Packard for the sale of iPods and the use of iTunes on Hewlett-Packard computers; the

26  transfer of digital audio files directly from iTunes to Motorola phones, including documents

27  reflecting negotiations or communications regarding same; surveys, reports, or other marketing

28  analyses that concern iPods or iTS; surveys, reports or other marketing analyses that concern iPod

1  owners and their use of iTS, other music stores or players other than iPod; and marketing studies

2  of iPod or iTS competitors.  These document requests did not come all at once.  Instead, Plaintiffs

3  served two sets in mid-2009 when merits discovery opened, a third set in December 2009, and a

4  fourth set in October 2010.

5       4.     With each set of document requests, the parties negotiated the scope of the

6  requests, the custodians whose documents would be searched, and keywords that would be used

7  to identify potentially responsive documents.  The negotiation over the custodians and keywords

8  was an evolving process that took time.  Indeed, the custodians and keywords were modified

9  several times as Plaintiffs' theory of liability changed and new document requests were served.

10       5.     The parties did not reach agreement on the initial set of search terms and

11  custodians until the fall of 2009.  Although Apple collected potentially relevant documents in

12  2007, Plaintiffs insisted that Apple collect documents that were generated after the 2007 initial

13  collection.

14       6.     Between the fall of 2009 and the hearing on Apple's initial motion for summary

15  judgment on May 10, 2010, Apple focused its efforts on producing documents requested in

16  connection with a Rule 30(b)(6) deposition notice, which requested all documents related to

17  updates to Apple's DRM technology.  In response to these document requests, Apple ran agreed-

18  upon search terms against data collected from 17 custodians and reviewed over one million pages

19  of documents that were identified by the terms.  I had several conversations with Paula Roach,

20  counsel for Plaintiffs, about the staging of the production of documents.  The plan was to

21  complete production of documents responsive to the Rule 30(b)(6) requests and then turn to

22  Plaintiffs' other document requests, which would require running different search terms and

23  collecting documents from additional custodians and sources.

24       7.     In addition to producing documents in response to the Rule 30(b)(6) requests, in

25  October 2009, Apple produced documents responsive to Plaintiffs' amended Rule 34 Document

26  Request Nos. 10, 23, 28, and 29, subject to Apple's objections and as limited by agreement of the

27  parties.  These included unredacted versions of certain profit and loss statements for the iTunes

28  Store, documents sufficient to allow the calculation for each quarter since January 1, 2003 the

DECL. OF DAVID C. KIERNAN ISO APPLE'S
OPP. TO RENEWED MOT. FOR CLASS
CASE NO. C 05-00037-JW (HRL)

number of iPods sold, total revenue from such sales, and the cost of manufacturing of the iPods sold; and documents sufficient to show the number of digital audio files sold by iTunes Store from April 28, 2003 to the present. With respect to the sale and cost data produced for iPods, Apple separated out retail sales from sales to resellers. As described in more detail below, Apple supplemented this data with more detailed information regarding sales and costs in December 2010.

8.     On May 10, 2010, after the hearing on Apple's motion for summary judgment, I talked to Tom Merrick and Paula Roach, counsel for Plaintiffs, about the status of discovery. We agreed that, in light of Apple's pending motion that could render any additional discovery moot and to save the parties the significant expense of discovery, the parties would resume discovery efforts after the Court ruled on that motion. On June 29, 2010, the Court granted in part and denied in part Apple's motion to dismiss and denying as premature Apple's motion for summary judgment. On July 22, 2010, the Court set December 20, 2010 as the close of all fact discovery.

9.     Between July 23, 2010 and mid-September 2010, I had numerous calls with Paula Roach, sometimes several calls a week, about the scope of Plaintiffs' discovery requests, the custodians from whom documents would be collected, and the keywords that would be used to identify potentially responsive documents. We reached agreement on most of the keywords and custodians by mid-August 2010.

10.     In August 2010, Apple ran the new keywords against data that it had already collected and started collecting documents from additional sources. Collecting and processing documents so that they could be reviewed by attorneys was a time-consuming process. On October 6, 2010, Plaintiffs served additional document requests requiring more negotiations over the scope of discovery.

11.     As we got closer to the close of discovery, in October 2010, I established weekly status calls with Ms. Roach to discuss discovery to ensure that the parties were on the same page with respect to the timing of the document production. Among other things, we agreed that Apple would focus its efforts on producing documents for custodians that Plaintiffs intended to depose and then to produce the remaining documents.

DECL. OF DAVID C. KIERNAN ISO APPLE'S
OPP. TO RENEWED MOT. FOR CLASS
CASE NO. C 05-00037-JW (HRL)

12. As evident from the above, the parties were in regular, frequent contact about the status of discovery and worked together to try to finish production of a large number of documents in a short amount of time. Six months (July – December 2010) was a short period of time to collect, process, and review documents of the scope sought by Plaintiffs. Ultimately, Apple produced documents on a rolling basis from nearly 30 custodians, which took a significant amount of time to review for responsiveness, privilege, and confidentiality. Plaintiffs' emphasis of the number of pages produced in December 2010 is misleading. The documents produced in December 2010 contained reports, many of which contained 500+ pages and some over 1,000 pages.

13. In mid-September 2010 and early October 2010, Ms. Roach and I discussed what specific data would be collected for Plaintiffs' economist Dr. Noll. Among other things, we discussed collecting the documents later in discovery so that the data would be current. According to Ms. Roach, Dr. Noll wanted price, sales, and costs data for iPods and the iTS through the present to establish an "after" period—*i.e.*, beyond the class period which ended March 31, 2009. During one of our status calls in late November, Ms. Roach inquired as to the timing of the production of data requested by Dr. Noll. She did not complain about the timing of the production or assert that Dr. Noll needed it sooner. Nor had Plaintiffs complained about the timing before that call. Moreover, during the many discovery calls, I asked Plaintiffs' counsel what documents they wanted Apple to prioritize in terms of production. Not once did they ask me to put data requested by Dr. Noll at the front of the list. Had Plaintiffs asked, we could have done so. My understanding is that they did not because, as mentioned above, they wanted the most current financial data related to iPods and the iTunes Store.

14. On or before December 20, 2010, Apple produced substantially all of the data requested by Dr. Noll. For example, Apple produced, among other things, sales, revenue, and cost data for iPods from October 2001 through the present; reseller contracts; information regarding pricing for iPods sold to resellers; revenue and costs of the iTunes Store; forecasts of iPod and iTunes Store sales; and information relating to market share of iPods and the iTunes Store. Apple produced several files after December 20, 2010 to fill in gaps in the production

DECL. OF DAVID C. KIERNAN ISO APPLE'S
OPP. TO RENEWED MOT. FOR CLASS
CASE NO. C 05-00037-JW (HRL)

(*e.g.*, where it was determined that data for a particular quarter was missing or data that had to be restored from archives) and in response to additional data requests by Plaintiffs.  Since December 20, 2010, Apple has answered over 100 written questions from Plaintiffs regarding the data, many questions of which could have been answered by looking closely at the data (*e.g.*, determining whether numbers are in thousands or millions).

15.     Dr. Noll complains that the reseller transactional data produced on December 14, 2010, was unusable because it was missing certain customer information.  On January 5, we sent a replacement file that included the missing customer information.

16.     Dr. Noll's report also suggests that he did not receive pricing data for iPods.  Apple's retail price information has been publicly available to Plaintiffs and Dr. Noll throughout the entire litigation.  *See, e.g.*, http://www.apple.com/pr/library.[1]  Moreover, on December 16, 2010, Apple produced a pricing file that reflects actual prices of iPods, including all price changes.  Exhibit 1 is a true and correct copy of the iPod LCPM file produced to Plaintiffs on December 16, 2010.

17.     Attached as Exhibit 2 to this declaration is a true and accurate copy of portions of the transcript of the deposition of Apple, Inc., with testimony provided by Mark Donnelly, pursuant to Federal Rule of Civil Procedure 30(b)(6).

18.     Attached as Exhibit 3 to this declaration is a true and accurate copy of portions of the transcript of the deposition of Roger Noll, taken on September 19, 2008.

19.     Attached as Exhibit 4 to this declaration is a true and accurate copy of portions of the transcript of the deposition of Roger Noll, taken on October 27, 2009.

20.     Attached as Exhibit 5 to this declaration is a true and accurate copy of exhibit 62 to the deposition of Eddy Cue, bearing the bates numbers Apple_AIIA0090867 to Apple_AIIA00090869.

---

[1] The current library at the link above includes press releases back to 2005.  To locate prices for earlier years, insert the year after "library."  For example, to obtain prices for 2002, use URL http://www.apple.com/pr/library/2002/.

DECL. OF DAVID C. KIERNAN ISO APPLE'S
OPP. TO RENEWED MOT. FOR CLASS
CASE NO. C 05-00037-JW (HRL)

1    I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true

2  and correct.  This declaration was executed on February 28, 2011, in San Francisco, California.

3

4                                                    /s/ David C. Kiernan
                                                      David C. Kiernan

5  SFI-662533v2

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 6 -