ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN J. STOIA, JR. (141757)
BONNY E. SWEENEY (176174)
THOMAS R. MERRICK (177987)
ALEXANDRA S. BERNAY (211068)
CARMEN A. MEDICI (248417)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
johns@rgrdlaw.com
bonnys@rgrdlaw.com
tmerrick@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com

THE KATRIEL LAW FIRM
ROY A. KATRIEL (*pro hac vice*)
1101 30th Street, N.W., Suite 500
Washington, DC 20007
Telephone: 202/625-4342
202/330-5593 (fax)
rak@katriellaw.com

Co-Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTI-TRUST LITIGATION | Lead Case No. C-05-00037-JW(HRL) |
| | CLASS ACTION |
| This Document Relates To: | REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION |
| ALL ACTIONS. | |

JUDGE:   Hon. James Ware
DATE:    April 18, 2011
TIME:    9:00 a.m.
CTRM:   8 – 4th Floor

**REDACTED**

615788_1

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................1

II.     APPLE IGNORES NINTH CIRCUIT CLASS CERTIFICATION STANDARDS ..........2

        A.      Standards for Class Certification in the Ninth Circuit .............................3

        B.      Professor Noll's Reports are Sufficient to Support Class Certification.................3

III.    APPLE'S SUBSTANTIVE ATTACKS ON PROFESSOR NOLL'S
        METHODOLOGY GO TO THE MERITS AND ARE INSUFFICIENT TO
        PRECLUDE CLASS CERTIFICATION ................................................................5

IV.     PLAINTIFFS CAN REPRESENT ALL DIRECT PURCHASERS ................................10

V.      CONCLUSION................................................................................................15

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -      - i -
C-05-00037-JW(HRL)

**TABLE OF AUTHORITIES**

Page

CASES

*Alabama v. Blue Bird Body Co., Inc.*
573 F. 2d 309 (5th Cir. 1978) ................................................................6, 7

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*,
247 F.R.D. 156 (C.D. Cal. 2007) ..........................................................3, 4, 5

*Am. Seed Co., Inc. v. Monsanto Co.*,
238 F.R.D. 394 (D. Del. 2006) ...................................................................4

*Bell Atl. Corp. v. AT&T Corp.*,
339 F.3d 294 (5th Cir. 2003) .....................................................................7

*Blades v. Monsanto Co.*,
400 F.3d 562 (8th Cir. 2005) ..................................................................6, 7

*Butt v. Allegheny Pepsi-Cola Bottling Co.*,
116 F.R.D 486 (E.D. Va. 1987) ..................................................................4

*Castano v. Am. Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) .......................................................................2

*Cummings v. Connell*,
316 F.3d 886 (9th Cir.2003) ....................................................................13

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156, 94 S. Ct. 2140 (1974) ...........................................................3

*Federal Prescription Serv. Inc. v. Am. Pharm. Ass'n*,
663 F.2d 253 (D.C. Cir. 1981) ....................................................................7

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
392 U.S. 481, 88 S. Ct. 2224 (1968)..............................................11, 12, 13, 14

*Hawaii v. Standard Oil Co.*,
405 U.S. 251, 92 S. Ct. 885 (1972)..............................................................3

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
No. M 02-1486 PJH, 2006 WL 1530166
(N.D. Cal. June 5, 2006) (Hamilton, J.) .......................................................4

*In re Flat Glass Antitrust Litig.*,
191 F.R.D. 472 (W.D. Pa. 1999) ...............................................................13

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -      - ii -
C-05-00037-JW(HRL)

1

2                                                                                    **Page**

3   *In re Hydrogen Peroxide Antitrust Litig.*,
        552 F.3d 305 (3d Cir. 2008)...................................................................................2, 3
4

5   *In re New Motor Vehicles Canadian Export Antitrust Litig.*,
        522 F.3d 6 (1st Cir. 2008)...........................................................................................7

6
    *In re Online DVD Antitrust Litig.*,
7       No. M 09-2029 PJH, 2010 WL 5396064
        (N. D. Cal. Dec. 23, 2010) (Hamilton, J.)................................................................4, 13
8

9   *In re Relafen Antitrust Litig.*,
        360 F. Supp. 2d 166 (D. Mass. 2005)..........................................................................11

10
    *In re Static Random Access (SRAM) Antitrust Litig.*,
11      No. C 07-01819 CW, 2008 WL 4447592
        (N.D. Cal. Sept. 29, 2008) (Wilken, J.) ..............................................................3, 4, 13
12

13  *In re TFT-LCD (Flat Panel) Antitrust Litig.*,
        267 F.R.D. 291 (N.D. Cal. 2010) (Illston, J.) ....................................................3, 4, 13
14
    *In re Wellbutrin SR Direct Purchaser Antitrust Litig.*,
15      No. 04-5525, 2008 WL 1946848 (E.D. Pa. May 2, 2008)..........................................13

16  *Lerwill v. Inflight Motion Pictures*,
        582 F.2d 507 (9th Cir.1978) ........................................................................................13
17
    *Meijer, Inc. v. Abbott Labs.*,
18      251 F.R.D. 431 (N.D. Cal. 2008)......................................................................12, 13, 14

19  *Northeastern Tel. Co. v. Am. Tel. & Tel. Co.*,
        651 F.2d 76 (2d Cir. 1981)..............................................................................................1
20
    *Piggly Wiggly Clarksville v. Interstate Brands Corp.*,
21      100 Fed. Appx. 296 (5th Cir. 2004)................................................................................4

22  *Reiter v. Sonotone Corp.*,
        442 U.S. 330, 99 S. Ct. 2326 (1979).............................................................................3
23

24  *Teva Pharms. USA, Inc. v. Abbott Labs.*,
        252 F.R.D. 213 (D. Del. 2008) ....................................................................................11
25

26  *United States v. Microsoft Corp.*,
        253 F.3d 34 (D.C. Cir. 2001)..........................................................................................1

27

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -    - iii -
                C-05-00037-JW(HRL)

Page

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers
    Int'l Union, AFL-CIO, LLC v. ConocoPhillips Co.,*
    593 F.3d 802 (9th Cir. 2010) ................................................................................3

*Valley Drug Co. v. Geneva Pharms Inc.,*
    350 F.3d 1181 (11th Cir. 2003) ...................................................................13, 14

*West v. Prudential Sec. Inc.,*
    282 F. 3d 935 (7th Cir. 2002) ................................................................................2

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §2 .............................................................................................................................1

Federal Rules of Civil Procedure
    Rule 23 ...........................................................................................................1, 3, 6
    Rule 23(a).............................................................................................................13
    Rule 23(a)(2).........................................................................................................5
    Rule 23(b)(3).............................................................................................5, 6, 15

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -
C-05-00037-JW(HRL)

## I.    INTRODUCTION

In its opening paragraph, Apple attempts to spin Plaintiffs' monopoly maintenance claim as "a new theory" asserting that Plaintiffs have "changed their theory of liability."[1] Def's Mem. at 1. While not relevant to the issue of class certification, Plaintiffs are compelled to respond to this outright fabrication. Monopoly maintenance has always been a part of Plaintiffs' claims. *See* Dkt No. 107, ¶¶85-92 (Consolidated Complaint for Violations of Sherman Antitrust Act, Clayton Act, Cartwright Act, California Unfair Competition Law, Consumer Legal Remedies Act and California Common Law of Monopolization). Plaintiffs have also consistently alleged that Apple maintained its monopoly specifically by rendering Harmony incompatible with iPods. *Id.*, ¶¶ 51-55. Monopoly maintenance is neither a new theory, nor is it substantively different than monopoly acquisition.[2] Noll Reply Decl. at 4-5 (citing the *United States v. Microsoft Corp.*, 253 F.3d 34, 56 (D.C. Cir. 2001) and *Northeastern Tel. Co. v. Am. Tel. & Tel. Co.*, 651 F.2d 76, 85 (2d Cir. 1981) cases as examples of legally acquired monopolies that were illegally maintained through anticompetitive means).

Despite Apple's attempts to muddy the issues, the only issue before the Court in this motion is whether Plaintiffs have shown that the class meets the elements of Rule 23 of the Federal Rules of Civil Procedure and should be certified. Apple has conceded numerosity. The elements of Plaintiffs' Section 2 claim for monopoly maintenance all involve common, not individual legal issues. *See* Plaintiffs' Notice of Motion and Renewed Motion for Class Certification and Appointment of Lead Class Counsel ("Pls' Mem.") at 13. Moreover, Plaintiffs have submitted in support of this motion, two declarations of Professor Roger G. Noll in which Professor Noll opines

---

[1]     Apple also asserts that Plaintiffs "acknowledge" and "admit" that Apple's monopoly was legally obtained and its DRM was "entirely lawful." *See* Apple's Opposition to Renewed Motion for Class Certification ("Def's Mem.") at 1. Plaintiffs did not admit or concede the legality of Apple's monopoly. In fact, that issue was hotly contested and Plaintiffs' amended consolidated complaint specifically preserves the issue for appeal. Dkt. No. 322, ¶130 (Amended Consolidated Complaint for Violations of Sherman Antitrust Act, Clayton Act, Cartwright Act, California Unfair Competition Law, Consumer Legal Remedies Act and California Common Law of Monopolization).

[2]     "Noll Reply Decl." refers to the Reply Declaration of Roger G. Noll filed concurrently. "Noll Decl." refers to the Declaration of Roger G. Noll, dated January 18, 2011.

1   that the economic aspects of Plaintiffs' liability and damages claims can be proven through proof

2   that is common to all class members. In his Reply Declaration, Professor Noll conducts a

3   preliminary regression analysis, which demonstrates that impact and damages can be proven by

4   relying on common proof. As the arguments of both Plaintiffs and Apple demonstrate, these legal

5   and factual issues clearly predominate over individual issues.

6         Apple's only argument challenging Plaintiffs' typicality and adequacy focuses on whether

7   they can represent reseller direct purchasers. Since all direct purchasers claim injury due to the same

8   actions by Apple, Plaintiffs' claims are typical of the entire class. As Apple admits, ███████

9   ████████████████████████████████████████████████████████████ .

10  Def's Mem. at 22. If, as Plaintiffs allege and Professor Noll's preliminary regression analysis

11  indicates, Apple's actions to prevent competitive interoperability between RealNetworks' Harmony

12  and iPods had the effect of raising iPod prices, all direct purchasers paid more for iPods than they

13  would have otherwise paid. Apple does not challenge Plaintiffs' counsel's adequacy.

14        Finally, given the size and complexity of the case, and the large percentage of small direct

15  purchasers, including resellers, a class action is clearly the superior method for litigating these

16  common issues.

17        In summary, this Court was correct in certifying Plaintiffs' claims before, and should re-

18  certify the class now.

19  **II.    APPLE IGNORES NINTH CIRCUIT CLASS CERTIFICATION
         STANDARDS**

20
         Apple willfully ignores settled Ninth Circuit authority on the standards for class certification

21  and the weight given to expert opinions at the class-certification stage. Instead, it conducts a

22  nationwide search for the most favorable standards it can find.[3] Def's Mem. at 7-8 (citing *In re*

23  *Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008); *Castano v. Am. Tobacco Co.*, 84

24  F.3d 734 (5th Cir. 1996); *West v. Prudential Sec. Inc.*, 282 F. 3d 935 (7th Cir. 2002)). This reliance

25  on out-of-district authority runs throughout Apple's opposition brief. However, even a cursory

26

27  [3]      Unless otherwise noted, citations are omitted and emphasis is added.

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -
C-05-00037-JW(HRL)                                                              - 2 -

1   examination of recent case law in the Northern District of California shows that the standards for

2   class certification in this Circuit are exactly as Plaintiffs represent in their opening brief.  Moreover,

3   even if the standards were more like the *Hydrogen Peroxide* analysis Apple argues for, Professor

4   Noll's declarations in support of class certification easily meet that test.

5       **A.**    **Standards for Class Certification in the Ninth Circuit**

6       "The Supreme Court has long recognized that class actions play an important role in antitrust

7   enforcement."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 299 (N.D. Cal. 2010)

8   (Illston, J.) (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344, 99 S. Ct. 2326 (1979) and *Hawaii v.*

9   *Standard Oil Co.*, 405 U.S. 251, 262, 266, 92 S. Ct. 885 (1972)).  "'Accordingly, when courts are in

10  doubt as to whether certification is warranted, courts tend to favor class certification.'"  *Id.* (quoting

11  *In re Static Random Access (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592, at *2

12  (N.D. Cal. Sept. 29, 2008) (Wilken, J.)).

13      "'In determining the propriety of a class action, the question is not whether the plaintiff or

14  plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the

15  requirements of Rule 23 are met and 'nothing in either the language or history of Rule 23 . . . gives a

16  court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine

17  whether it may be maintained as a class action.'"  *United Steel, Paper & Forestry, Rubber, Mfg.*

18  *Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, LLC v. ConocoPhillips Co.*, 593 F.3d

19  802, 808 (9th Cir. 2010) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-79, 94 S. Ct.

20  2140 (1974)).  "Although certification inquiries such as commonality, typicality, and predominance

21  might properly call for some substantive inquiry, the court may not go so far . . . as to judge the

22  validity of these claims."  *Id.* (internal quotation omitted).

23      **B.**    **Professor Noll's Reports are Sufficient to Support Class Certification**

24      Apple relies on *Allied Orthopedic* to argue that Plaintiffs must essentially have a full-blown

25  damages analysis prepared and proved in order to certify a class.  Def's Mem. at 20 (citing *Allied*

26  *Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007)).

27  *Allied Orthopedic* actually holds only that it would be insufficient to "merely promise to develop in

28  the future some unspecified workable damage formula."  *Id.* at 176.  Recent cases since *Allied*

1    *Orthopedic* have consistently reiterated this standard for an expert damages analysis to support class

2    certification. Most recently, in *In re Online DVD Antitrust Litig.*, No. M 09-2029 PJH, 2010 WL

3    5396064, at *11 (N. D. Cal. Dec. 23, 2010) (Hamilton, J.), the court described the "limited burden"

4    plaintiffs face at the class certification stage. "Plaintiffs need not supply a 'precise damage formula,'

5    but must simply offer a proposed method for determining damages that is not 'so insubstantial as to

6    amount to no method at all.'" *Id.*; *see also Flat Panel*, 267. F.R.D. at 314 (same); *SRAM*, 2008 WL

7    4447592, at *6 (applying same "not insubstantial" standard in finding Professor Noll's damages

8    methodology sufficient for class certification); *In re Dynamic Random Access Memory (DRAM)*

9    *Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *10 (N.D. Cal. June 5, 2006) (Hamilton,

10    J.) (same). Professor Noll's declarations certainly meet this standard.

11        Professor Noll goes far beyond a "mere[] promise" and instead "describe[s]" a "concrete

12    workable formula." *Allied Orthopedic*, 247 F.R.D. at 176. In addition to Professor Noll's thorough

13    declaration in support of Plaintiffs' motion, Professor Noll's Reply Declaration, contains a

14    preliminary regression analysis of Apple's wholesale prices which could not have been prepared at

15    the time Plaintiffs filed their opening brief because Apple withheld the necessary data. "This

16    analysis shows conclusively that (1) virtually all of the variation in prices of iPods across models and

17    over time can be explained in a linear regression analysis and (2) the before-after method of

18    calculating the effect of Apple's conduct can be implemented." Noll Reply Decl. at 1-2.

19        Further, *Allied Orthopedic* is easily distinguishable. The expert in *Allied Orthopedic* failed to

20    consider actual pricing data regarding class members, which varied widely. *Allied Orthopedic*, 247

21    F.R.D. at 176.[4] Here, by contrast, ████████████████████ Rather, as Apple's expert

22

23    _____

    [4]     The other out-of-circuit cases Apple cites are similarly distinguishable. *Piggly Wiggly*
24    *Clarksville v. Interstate Brands Corp.*, 100 Fed. Appx. 296, 298 (5th Cir. 2004) ("individualized
    determination would be required because many class members negotiated a price rather than being
25    charged strictly on price lists"); *Am. Seed Co., Inc. v. Monsanto Co.*, 238 F.R.D. 394, 400-01 (D.
    Del. 2006) (genetically modified seed market is "highly individualized," prices "var[y]
26    considerably" and plaintiff's expert did not even conduct "at least a preliminary study of the
    market"); *Butt v. Allegheny Pepsi-Cola Bottling Co.*, 116 F.R.D 486, 492 (E.D. Va. 1987) (damages
27    calculation possible only "through a detailed and individualized examination of hundreds of
    thousands of transactions").

28

1   concedes, ██████████████████████████████████████████████████████

2   ███████████████.[5]  Medici Decl., Ex. 1 (Burtis Depo. at 74:21-23). ██████████

3   ███████████████████████████████████████████████████████████████████

4   ██████████████ *See* Noll Reply Decl. at 28 ████████████████████████

5   ███████████████████████████████████████████████████████████████████

6   ███████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████    Also, in

8   contrast to *Allied Orthopedic*, Professor Noll is using data of actual prices paid by end-users and

9   resellers available from Apple's own sales records.

10  **III.   APPLE'S SUBSTANTIVE ATTACKS ON PROFESSOR NOLL'S**
        **METHODOLOGY GO TO THE MERITS AND ARE INSUFFICIENT TO**
11      **PRECLUDE CLASS CERTIFICATION**

12          As it has consistently, Apple ignores the appropriate legal standard used to assess

13  commonality and predominance. As the Court succinctly summarized in its December 22, 2008

14  Order:

15          Rule 23(a)(2) requires that class certification be predicated on "questions of
        law or fact common to the class." This requirement "has been construed
16      permissively. All questions of fact and law need not be in common to satisfy the
        rule. The existence of shared legal issues with divergent factual predicates is
17      sufficient, as is a common core of salient facts coupled with disparate legal remedies
        with the class." *Hanlon*, 150 F. 3d at 1019.

18
    Dkt. No. 196 at 5-6 (Order Granting Plaintiffs' Motion for Class Certification as to Counts Two,
19
    Three, Four, Five, Six and Seven Only and Appointing Class Counsel; *Sua Sponte*, Order
20
    Reconsidering Defendant's Motion to Dismiss Count One and Requiring Further Briefing).
21
            Certification under Rule 23(b)(3) requires that "questions of law or fact
22      common to the members of the class predominate over any questions affecting only
        individual members, and that a class action is superior to other methods for fairly and
23      efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "When common
        questions present a significant aspect of the case and they can be resolved for all
24      members of the class in a single adjudication, there is clear justification for handling
        the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d
25      at 1022.

26  _____

27  [5]      *See* Declaration of Carmen A. Medici in Support of Plaintiffs' Reply Memorandum in
    Support of Plaintiffs' Renewed Motion for Class Certification ("Medici Decl."), filed concurrently.

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -
C-05-00037-JW(HRL)                                                        - 5 -

1    *Id.* at 12.

2         Here, Plaintiffs have alleged a core of common facts and legal issues, and Professor Noll has

3    shown that both antitrust injury and damages can be proven through a common method.  In short,

4    Professor Noll's empirical analyses can show, and will show at trial, that Apple's actions to block

5    competition by disabling competing product compatibility caused iPod prices to be higher than they

6    would have been had Apple not acted improperly to maintain its monopoly.  This common issue

7    predominates with regard to both antitrust injury and damages. *See id.* at 12 ("[T]he Court has found

8    there are numerous common questions of law and fact involving Defendant's allegedly

9    anticompetitive conduct.  Accordingly, the Court finds that Plaintiffs have met the predominance

10   requirement of Rule 23(b)(3).").

11        Much of Apple's opposition is devoted to trying to win a "battle of the experts" on the *merits*

12   of Plaintiffs' claims; a battle that is inappropriate at class certification (though one Apple has lost).

13   Apple's invitation to the Court to decide Plaintiffs' case on the merits at class certification goes far

14   beyond a rigorous analysis as to whether the requirements of Rule 23 have been met.

15        Apple, again relying on authority from other circuits, claims that Professor Noll must

16   "prove[] with certainty" that the class suffered actual injury. Def's Mem. at 8-9.  In addition to

17   misstating the relevant standard, Apple's out-of-district cases are factually inapposite. In *Alabama v.*

18   *Blue Bird Body Co., Inc.* 573 F. 2d 309 (5th Cir. 1978), the court determined that the nature of the

19   product (school buses) and the nature of the market in each individual location was so differentiated

20   that impact and damages could only be determined on an individual basis. *Id.* at 328.  The court

21   could envision no way to make these determinations without "particularized proof" and by

22   "examining the relevant school bus market where each individual plaintiff is located." *Id.* Similarly,

23   in *Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005), the court found that the market for

24   genetically modified seed was too differentiated by product and geographic market to assess impact

25

26

27

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -
C-05-00037-JW(HRL)                                                                    - 6 -

1    based on common proof. *Id.* at 574.[6] Here, by contrast, there is no dispute that the iPod market at

2    issue is a nationwide, nondifferentiated market with prices set by Apple.

3          Next, Apple launches into a lengthy factual attack on Professor Noll's methodology. Def's

4    Mem. at 9-19. Initially, Apple faults Professor Noll for not examining individual class members'

5    usage of Harmony and iTS. *Id.* at 9-11. However, Apple's focus on lock-in and Harmony usage by

6    individual consumers misses the point. Noll Reply Decl. at 11. Plaintiffs' claims and Professor

7    Noll's analysis center on the overarching market impact of Apple's exclusionary conduct on the

8    price of iPods. Plaintiffs' theory does not require a damages analysis that tracks the lock-in effect at

9    an individual consumer level to determine how each consumer was damaged. Rather, damages flow

10   from the price of an iPod being more expensive than it would have been had Apple not illegally

11   maintained its monopoly. Professor Noll refutes Apple's argument in the strongest possible terms,

12   calling it "economic nonsense," and "a fallacy of composition," and describes in detail why it is an

13   error in both logic and economics. *Id.* at 11-12. As Apple's expert concedes, every direct purchaser

14   who purchased the same model of iPod during the same time period would have paid a higher price

15   for an iPod (be they consumers or resellers) as a result of Apple's anticompetitive conduct,

16   regardless of the extent of that buyer's lock-in. Medici Decl., Ex. 1 (Burtis Depo. at 74:21-23; 77:1-

17   87:6).

18         The remaining issues Apple raises with regard to Professor Noll's declaration are addressed

19   in his Reply Declaration. Though Professor Noll has already put forth an opinion detailing the

20   information and methodology necessary to conduct a regression analysis (*see* Noll Decl. at 68-84), in

21   his Reply Declaration, he provides new detail discussing the various elements that must be addressed

22

23   [6]   *Federal Prescription Serv. Inc. v. Am. Pharm. Ass'n*, 663 F.2d 253 (D.C. Cir. 1981), is
     completely factually dissimilar. There, the antitrust violation alleged was a "group boycott" of a

24   mail order pharmacy which the court rejected on the facts. In *In re New Motor Vehicles Canadian
     Export Antitrust Litig.*, 522 F.3d 6 (1st Cir. 2008), to show injury, plaintiffs had to show that prices

25   paid for new cars by individual consumers were higher due to the anticompetitive conduct. In that
     context "hard bargainers" will presumably always do better than "poor negotiators," and the
     plaintiffs' expert report, based on impact to MSRP and dealer invoice prices, had not fashioned a

26   method to control for individual bargaining. *Id.* at 29. Here, iPod prices are not individually

27   negotiated. *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294 (5th Cir. 2003), simply parrots *Blue Bird
     Body*, and in fact does not reach the issue of antitrust injury at all. *Id.* at 303.

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -
     C-05-00037-JW(HRL)                                                                        - 7 -

1    in his regression, how exactly a regression analysis properly addresses those elements, and finally,

2    he runs a working regression analysis implementing the before-after method of calculating Apple's

3    overcharge applicable to all class members (which is provisional pending the receipt of the more

4    particularized data Apple has refused to produce to date).  Specifically, Professor Noll:

5       • Demonstrates that Dr. Burtis's Report contains no basis for its conclusions in either
          facts or economics (Noll Reply Decl. at 3-4);

6
        • Demonstrates, using examples, that Dr. Burtis has an unsteady grasp on antitrust and
7         competition economics and that she made a number of elementary mistakes in her
          analysis (*Id.* at 3-6);

8
        • Identifies the periods before iTMS, before Apple broke interoperability, after Apple
9         broke interoperability and when Harmony functioned and incorporates those time
          periods into his analysis, describing the effect the Harmony period had on the price
10        of iPods, a task Apple and Dr. Burtis contend could not be completed (though they
          did not try) (*Id.* at 6-13);

11
        • Demonstrates the adequacy of the pre-iTMS period as a benchmark (*Id.* at 14-22);
12
        • Defines what harm to competition is in antitrust terms, why Dr. Burtis failed to
13        properly identify it, and establishes that Apple's conduct harmed competition (*Id.* at
          22-24); and

14
        • Describes how resellers and direct purchasers have a common interest in Apple
15        charging lower prices (*Id.* at 26-28).

16         In addition to meeting Apple's objections, Professor Noll has prepared preliminary empirical

17   analyses.

18         Two regressions were estimated.  The first is a standard hedonic model that explains
           the price of a transaction on the basis of characteristics of the iPod model that was
19         sold and other aspects of the transaction.  The second regression supplements the
           standard hedonic regression by adding a unit cost variable and indicator variables for
20         various time periods in which the extent of competition in the market for iPods may
           have differed, including the periods of alleged anticompetitive conduct.
21
     *Id.* at 34-35; *see also id.* at 28-39 and Exs. 2 and 3 attached thereto (describing the regression
22
     analyses and reporting their results).
23
           While these preliminary analyses are not a final damages report – indeed no such report is
24
     needed to support class certification – they do add conclusive support to Plaintiffs' position that
25
     injury and damages can be proven through common evidence.
26
           Apple's reliance on Dr. Burtis's opinions demonstrates how weak its arguments are against
27
     class certification.  As is detailed in Plaintiffs' motion to exclude Dr. Burtis's report, filed herewith,
28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -
C-05-00037-JW(HRL)                                                              - 8 -

1   Dr. Burtis conducted no analysis at all, let alone any analysis directed at class issues. The sum total

2   of her opinion is that Professor Noll's proposed methodology for class treatment fails because it

3   "will not work." Burtis Report at 11, 14, 15.[7] She offers no evidence or reasoning in support of this

4   "analysis," which is really just a statement of her conclusion, and simply parrots Apple's counsel's

5   legal argument.

6           Further, Dr. Burtis's work in the case is pathetically cursory. ███████████████████

7   ████████████████████████████████████████████████████████████████████████████

8   ██████████████████████████████████████████████  Medici Decl., Ex. 1

9   (Burtis Depo. at 9:13-10:11). ████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████████████████

11  ██████████████████████████  Id., Ex. 1 (Burtis Depo. at 32:23-33:16). Unburdened

12  by the facts and data, Dr. Burtis simply makes conclusory statements, sometimes at odds with those

13  facts. For example, Dr. Burtis claimed that Professor Noll █████████████████████████

14  ████████████████████████  Burtis Report at 15-17. █████████████████████████

15  ██████████████████████████████████████████████████  Noll Reply Decl. at 24-

16  26. This relative ignorance of Apple's own internal documents had the real-world effect of skewing

17  Dr. Burtis's analysis. See Noll Reply Decl. at 3-4. Further, as Professor Noll points out in his Reply

18  Declaration, Dr. Burtis makes conclusory economic assertions that have no foundation in scholarly

19  publications. Id. at 4. So, even if the Court were to accept Apple's invitation to weigh the experts'

20  opinions, Professor Noll would clearly win the "battle."

21          Apple argues that Plaintiffs and their expert had sufficient data in sufficient time to complete

22  a full-blown damages analysis by the scheduled deadline for the filing of their class certification

23  motion. Def's Mem. at 19-21; Kiernan Decl., ¶16.[8] This contention is disingenuous. As discussed

24  more fully in both Professor Noll's Reply Declaration (Noll Reply Decl. at 28-34) and the

---

25

26  [7]    See Expert Report of Dr. Michelle M. Burtis ("Burtis Report"), dated February 28, 2011.

27  [8]    See Declaration of David C. Kiernan in Support of Apple Inc.'s Opposition to Renewed Motion for Class Certification ("Kiernan Decl.").

28

1   declaration of Alexandra S. Bernay[9] filed herewith, Plaintiffs have diligently sought (and in fact are

2   still diligently seeking) the data necessary to complete Professor Noll's analysis. As described more

3   fully in the Bernay Declaration, Plaintiffs have sought, for years, completed transactional data from

4   Apple. Bernay Decl., ¶¶8, 17-28. It was not until early January 2011 that Plaintiffs were informed

5   data for the period October 2001 through August 2002 was only available in archives. Bernay Decl.,

6   ¶19. Then, despite repeated, unheeded requests, Apple refused to provide a detailed explanation of

7   costs and burden to retrieve the data that Apple knows Professor Noll believes is critical to his ability

8   to conduct a complete regression analysis. Bernay Decl., ¶¶17-28.

9   **IV.    PLAINTIFFS CAN REPRESENT ALL DIRECT PURCHASERS**

10           Finally, Apple argues that the named Plaintiffs should not be permitted to represent reseller

11   direct purchasers. Def's Mem. at 21-25. Despite Apple's contention to the contrary, this same

12   argument was considered and rejected by the Court in its 2008 class certification order. *Compare*

13   Def's Mem. at 22 (asserting that the Court granted the 2008 motion "without explicitly addressing

14   the resellers") *with* Dkt. No. 198 at 2 (Order Vacating Case Management Conference; Clarifying and

15   Correcting Class Certification Order; Setting Briefing Schedule) ("[T]he Court considered

16   Defendant's contentions that resellers should be excluded from the class definition" and "included

17   resellers in the certified class"). None of the grounds Apple asserts this time are valid either.

18           Initially, Apple argues that by not specifically using the word "resellers" in their class

19   certification motion, Plaintiffs somehow waived their right to represent the class of direct purchasers

20   as defined. Def's Mem. at 21-22. Apple cites no real authority for this proposition, and the facts do

21   not support waiver. Plaintiffs' motion defines the class as including "[a]ll persons or entities in the

22   United States . . . who purchased an iPod directly from Apple." Pls' Mem. at 1. This would clearly

23   include resellers. This is also the same as the class defined in the amended consolidated complaint.

24   Dkt. No. 322, ¶31. Professor Noll's declaration also addresses in detail both kinds of direct

25   purchasers. *See e.g.*, Noll Decl. at 14-17 (discussing data issues with regard to resellers); *id.* at 69-70

26

27   [9]    *See* Declaration of Alexandra S. Bernay in Support of Reply Memorandum in Support of
     Plaintiffs' Renewed Motion for Class Certification ("Bernay Decl."), filed concurrently.

28

1  (addressing damages methodology for resellers). Plaintiffs have diligently sought discovery as to

2  resellers. Bernay Decl., ¶¶8, 17-28.   Apple's expert testified █████████████████████████

3  ████████████████   Burtis Report at 2-3; Medici Decl., Ex. 1 (Burtis Depo. at 46:18-25). Thus, there

4  is simply no support for Apple's waiver argument, and Apple can claim no prejudice.

5       Second, Apple argues that resellers are not "similarly situated" to end-users. Def's Mem. at

6  21-23. ███████████████████████████████████████████████████████████████████████████

7  ██████████████████████████████ *Id.* at 22 ███████████████████████████████████████

8  ███████████████████████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████████████████████ *See*

10 *also* Noll Reply Decl. at 27 █████████████████████████████████████████████████████

11 ███████████████████████████████████████████████████████████████████████████████████

12 ████████████████████████████████

13       Apple also argues that resellers could actually have benefited from higher retail prices. Def's

14 Mem. at 22. Besides making no economic sense, this argument is completely irrelevant.[10] Under

15 settled federal antitrust law, a "pass-on" or "otherwise benefited" defense is barred. *See Hanover*

16 *Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489, 88 S. Ct. 2224 (1968) (disallowing "pass

17 on" defense; "[a]s long as the seller continues to charge the illegal price, he takes from the buyer

18 more than the law allows"); *see, e.g., Teva Pharms. USA, Inc. v. Abbott Labs.*, 252 F.R.D. 213, 226-

19 227 (D. Del. 2008) (Rejecting as "irrelevant" adequacy challenge premised on variation in resellers'

20 size and pricing strategies: "Direct purchasers may recover the amount of their overcharges

21 irrespective of what happens after the overcharge is paid.") (citing *Hanover Shoe*, 392 U.S. at 489);

22 *In re Relafen Antitrust Litig.*, 360 F. Supp. 2d 166, 187-89 (D. Mass. 2005) (*Hanover Shoe* precludes

23 contention that class certification should be denied because allegedly overcharged direct purchasers

24 "otherwise benefitted" from the challenged misconduct). "[T]he true import of the *Hanover Shoe*

25 rule [is] that a direct purchaser may recover the full amount of the overcharge, even if he is

26 _____

27 [10]   *See* Noll Reply Decl. at 27 ("The argument in the *Apple Opposition* does not make sense
   economically, and tellingly the *Burtis Report* contains no support for it.").

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -
C-05-00037-JW(HRL)                                                                    - 11 -

1 | otherwise benefitted, because the antitrust 'injury occurs and is complete when the defendant sells at
2 | the illegally high price.'" *Meijer, Inc. v. Abbott Labs.*, 251 F.R.D. 431, 435 (N.D. Cal. 2008). In
3 | addition to being contrary to *Hanover Shoe*, the "otherwise benefited" argument "does not make
4 | sense economically, and tellingly the Burtis Report contains no support for it." Noll Reply Decl. at
5 | 27; *see id.* at 26-28 (describing why higher retail prices do not benefit resellers).

6 |     Neither is class certification precluded because Professor Noll's damages analysis must
7 | account for resellers' discounts. Professor Noll's declarations address the issue head on and
8 | concludes that "[i]n both cases, damages still are calculated from a common formula that takes into
9 | account the magnitude of price discrimination among buyers." Noll Decl. at 69-70; *see also* Noll
10 | Reply Decl. at 28 ("[T]he interests of distributors, resellers and consumers are fully aligned in
11 | seeking to eliminate anticompetitive overcharges by Apple."). The theory of the harm is exactly the
12 | same for both. *Id.* at 26-28. Both end-users and resellers paid more than they otherwise would have
13 | for iPods. *Id.*

14 |     Dr. Burtis's testimony also supports Plaintiffs' ability to represent all direct purchasers.
15 | Retail purchasers of iPods are ideally suited for class treatment because, as Dr. Burtis testified, ███
16 | ███████████████████████████████████████████ Medici Decl., Ex. 1
17 | (Burtis Depo. at 74:21-23) █████████████████████████████████████
18 | █████████████████████████████████████████████████████████████
19 | █████████████████████████████████████████████████████ *See*
20 | *generally id.*, Ex. 1 (Burtis Depo. at 77:1-87:6) █████████████████████
21 | █████████████████████████████████████████████████████████████
22 | █████████████████████████████████████████████████████████████

23 |     Apple also argues that the Plaintiffs are not typical of or adequate to represent resellers. Def's
24 | Mem. at 21-24. The focus of the typicality analysis, however, is on the defendant's conduct. As the
25 | Court previously noted,

26 |     Like the commonality requirement, the typicality requirement is permissive:
27 | "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. The test is whether "other members have the same or similar injury, whether
28 | the action is based on conduct which is not unique to the named plaintiffs, and

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -
C-05-00037-JW(HRL)                                                     - 12 -

whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508.

> Each of the antitrust causes of action asserted in this case are based on domestic iPod purchases directly from Apple, and relate to the same allegedly anticompetitive conduct . . . . Given that the named Plaintiffs allege antitrust injury based on exactly this type of iPod purchase, their claims are sufficiently co-extensive with those of absent class members to satisfy the typicality requirement of Rule 23(a).

Dkt. No. 196 at 8-9. *See also Flat Panel*, 267 F.R.D. at 300-01 ("Furthermore, the various products purchased and the different amount of damage sustained by individual plaintiffs do not negate a finding of typicality, provide the cause of those injuries arises from a common wrong.") (quoting *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 480 (W.D. Pa. 1999)). Plaintiffs' allegations all stem from Apple's actions in blocking interoperability in order to maintain its monopoly.

Similarly, Apple fails to point out any actual conflicts between the named Plaintiffs and other direct purchasers that would render them inadequate class representatives.

> Generally, representation will be found to be adequate when the attorneys representing the class are qualified and competent, and the class representatives are not disqualified by interests antagonistic to the remainder of the class. *Lerwill v. Inflight Motion Pictures*, 582 F.2d 507, 512 (9th Cir.1978); *see also Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir.2003) ('[t]he mere potential for a conflict of interest is not sufficient to defeat class certification') ([T]his conflict does not favor denial of class certification on the basis of speculative conflicts').

*In re Online DVD Rental*, 2010 WL 5396064 at *4; *see also SRAM*, 2008 WL 4447592 at * 4 ("The mere potential for a conflict of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical.").[11]

Once again, Apple eschews the Ninth Circuit and focuses on out-of-circuit authority. Apple's reliance on *Valley Drug Co. v. Geneva Pharms Inc.*, 350 F.3d 1181 (11th Cir. 2003) is particularly misplaced. As even Apple is forced to admit (albeit hidden in a footnote) (Def's Mem. at 24 n.5) *Valley Drug* has been rejected in this district and others as contrary to *Hanover Shoe*. *Meijer*, 251 F.R.D. at 435. *See also In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, No. 04-5525, 2008 WL 1946848, at *6 (E.D. Pa. May 2, 2008) ("[B]ecause all class members have the right

---

[11]    Apple does not argue that Plaintiffs' counsel are not sufficiently qualified or competent or that they have conflicts with the class.

1    to pursue overcharge damages, they have the same incentive to do so, and there is no conflict among

2    class members allegedly harmed by the same antitrust violation. Accordingly, the Court declines to

3    follow *Valley Drug* and will adhere instead to the principles announced in *Hanover Shoe* and *Illinois*

4    *Brick*.").

5         Finally, Apple argues that large-scale resellers could bring their own claims thus making a

6    class action not the superior method for resolving the claims at issue. Def's Mem. at 25. This

7    argument fails because most resellers in the proposed class do ***not*** have purchases large enough to

8    justify an individual claim.[12] This argument is also irrelevant. Any reseller that does not wish to be

9    represented or believes that its interests are not represented can opt out. *See Meijer*, 251 F.R.D. at

10    436 ("[T]here is a much simpler and more effective way of determining class members' preferences:

11    notify them of the action and give them the opportunity to opt out of the class or to enter an

12    appearance.").

13         The Court's earlier reasoning still holds true:

14           The Court also finds that a class action is the superior method to adjudicate
Plaintiffs' claims. This is a case that involves potentially millions of class members,

15    each of whom may have suffered damages as a result of Defendant's standardized
conduct. Given that an individual Plaintiff's recovery in this case would likely be no

16    more than several hundred dollars, which is the cost of an iPod, there would be little
incentive for an individual iPod purchaser to take on a factually complex antitrust

17    case such as this one. *See Hunt*, 241 F.R.D. at 515 (where the size of individual
damage claims is small "there is little incentive to sue individually"). Based on

18    Plaintiffs' theory, however, damages would likely be limited to whatever
supracompetitive premium Defendant had charged for iPods relative to a competitive

19    market price. The lack of financial incentives to pursue this antitrust litigation on an
individualized basis supports use of a class action as the superior method to resolve

20    this dispute.

21           As a general matter, this case involves a single Defendant, which is alleged to
have committed a variety of antitrust violations, resulting in injury to a vast number

22    of consumers. In light of the extent of common issues confronting Plaintiffs and the
overall desire for consistent judgments, taken together with the individually small

23    amounts of damages at issue in this case, judicial economy warrants consolidating all
of Plaintiffs' claims into a single class action.

24

25    12 

26

27

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -
C-05-00037-JW(HRL)       - 14 -

1    Accordingly, the Court finds that class certification is proper under Rule 23(b)(3).

2  Dkt. No. 196 at 12-13.

3  **V.    CONCLUSION**

4    Plaintiffs have met all of the elements for class certification under Ninth Circuit

5  jurisprudence. Numerosity has not been challenged. Professor Noll's declarations show numerous

6  issues common to all class members and that these issues predominate over individual issues.

7  Named Plaintiffs' claims arise out of the same course of conduct by Apple, and thus are typical of all

8  direct purchaser class members. Apple has identified no conflicts Plaintiffs or their counsel have

9  with the class. Plaintiffs and their counsel have vigorously represented the interests of the class and

10  will continue to do so. A class action is certainly superior to individual actions in terms of efficiency

11  and use of judicial resources. Certification of a direct purchaser class is appropriate.

12  DATED: March 28, 2011                    Respectfully submitted,

13                                           ROBBINS GELLER RUDMAN
                                               & DOWD LLP
14                                           JOHN J. STOIA, JR.
                                             BONNY E. SWEENEY
15                                           THOMAS R. MERRICK
                                             ALEXANDRA S. BERNAY
16                                           CARMEN A. MEDICI

17

18                                                  s/ Bonny E. Sweeney
                                                  BONNY E. SWEENEY
19
                                             655 West Broadway, Suite 1900
20                                           San Diego, CA  92101
                                             Telephone:  619/231-1058
21                                           619/231-7423 (fax)

22                                           THE KATRIEL LAW FIRM
                                             ROY A. KATRIEL
23                                           1101 30th Street, N.W., Suite 500
                                             Washington, DC  20007
24                                           Telephone:  202/625-4342
                                             202/330-5593 (fax)
25
                                             Co-Lead Counsel for Plaintiffs
26
                                             BONNETT, FAIRBOURN, FRIEDMAN
27                                             & BALINT, P.C.
                                             ANDREW S. FRIEDMAN
28                                           FRANCIS J. BALINT, JR.

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION -
C-05-00037-JW(HRL)                                                          - 15 -

ELAINE A. RYAN
TODD D. CARPENTER
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone:  602/274-1100
602/274-1199 (fax)

BRAUN LAW GROUP, P.C.
MICHAEL D. BRAUN
10680 West Pico Blvd., Suite 280
Los Angeles, CA  90064
Telephone:  310/836-6000
310/836-6010 (fax)

MURRAY, FRANK & SAILER LLP
BRIAN P. MURRAY
JACQUELINE SAILER
275 Madison Avenue, Suite 801
New York, NY  10016
Telephone:  212/682-1818
212/682-1892 (fax)

GLANCY BINKOW & GOLDBERG LLP
MICHAEL GOLDBERG
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)

Additional Counsel for Plaintiffs

1    <u>CERTIFICATE OF SERVICE</u>

2         I hereby certify that on March 28, 2011, I authorized the electronic filing of the foregoing

3    with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

4    the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5    caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6    CM/ECF participants indicated on the attached Manual Notice List.

7         I certify under penalty of perjury under the laws of the United States of America that the

8    foregoing is true and correct.  Executed on March 28, 2011.

9                                                            s/ Bonny E. Sweeney
                                                            BONNY E. SWEENEY

10
                                                            ROBBINS GELLER RUDMAN
11                                                               & DOWD LLP
                                                            655 West Broadway, Suite 1900
12                                                          San Diego, CA  92101-3301
                                                            Telephone:  619/231-1058
13                                                          619/231-7423 (fax)

14                                                          E-mail:      bonnys@rgrdlaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

615788_1

# Mailing Information for a Case 5:05-cv-00037-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Todd David Carpenter**
  tcarpenter@bffb.com,pjohnson@bffb.com,rcreech@bffb.com

- **Andrew S. Friedman**
  khonecker@bffb.com,rcreech@bffb.com,afriedman@bffb.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com

- **Roy Arie Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com

- **Carmen Anthony Medici**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com

- **Thomas Robert Merrick**
  tmerrick@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com,ewallace@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,ybennett@jonesday.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Elaine A. Ryan**
  eryan@bffb.com,pjohnson@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Michael Tedder Scott**
  michaelscott@jonesday.com,amhoward@jonesday.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **John J. Stoia , Jr**
  jstoia@rgrdlaw.com

- **Bonny E. Sweeney**
  bonnys@rgrdlaw.com,christinas@rgrdlaw.com,E_file_sd@rgrdlaw.com

- **Helen I. Zeldes**
  helenz@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)