1   ROBBINS GELLER RUDMAN
      & DOWD LLP
2   JOHN J. STOIA, JR. (141757)
    BONNY E. SWEENEY (176174)
3   THOMAS R. MERRICK (177987)
    ALEXANDRA S. BERNAY (211068)
4   CARMEN A. MEDICI (248417)
    655 West Broadway, Suite 1900
5   San Diego, CA 92101
    Telephone: 619/231-1058
6   619/231-7423 (fax)
    johns@rgrdlaw.com
7   bonnys@rgrdlaw.com
    tmerrick@rgrdlaw.com
8   xanb@rgrdlaw.com
    cmedici@rgrdlaw.com
9
    THE KATRIEL LAW FIRM
10  ROY A. KATRIEL (*pro hac vice*)
    1101 30th Street, N.W., Suite 500
11  Washington, DC 20007
    Telephone: 202/625-4342
12  202/330-5593 (fax)
    rak@katriellaw.com
13
    Co-Lead Counsel for Plaintiffs
14

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17                   SAN JOSE DIVISION

18
    THE APPLE IPOD ITUNES ANTI-TRUST    )    Lead Case No. C-05-00037-JW(HRL)
19  LITIGATION                          )
                                        )    CLASS ACTION
20  _____ )
                                        )    DECLARATION OF ALEXANDRA S.
21  This Document Relates To:           )    BERNAY IN SUPPORT OF REPLY
                                        )    MEMORANDUM IN SUPPORT OF
22      ALL ACTIONS.                    )    PLAINTIFFS' RENEWED MOTION FOR
    _____ )    CLASS CERTIFICATION
23
                                             JUDGE:   Hon. James Ware
24                                           DATE:    April 18, 2011
                                             TIME:    10:00 a.m.
25                                           CTRM:    8, 4th Floor

26                       **REDACTED**

27

28

615786_1

1      I, ALEXANDRA S. BERNAY, hereby declare as follows:

2      1.      I am an attorney duly licensed to practice before all of the courts of the State of

3  California. I am associated with the law firm of Robbins Geller Rudman & Dowd LLP, Co-Lead

4  Class Counsel of record for Plaintiffs Melanie Tucker, Mariana Rosen and Somtai Troy Charoensak

5  (collectively "Plaintiffs") in this action. I have personal knowledge of the matters stated herein, and,

6  if called upon, I could and would competently testify thereto.

7      2.      I submit this Declaration in Support of Plaintiffs' Reply Memorandum in Support of

8  Plaintiffs' Renewed Motion for Class Certification.

9      3.      I have reviewed the extensive record of correspondence, including emails between

10 counsel, regarding matters related to Plaintiffs' efforts to receive various documents and data sets

11 from Apple from at least December 2009 to the present. I have also been personally involved in all

12 discovery matters since October 2010. In addition to my review of the record, I have had telephone

13 calls and email correspondence with Paula Roach, a former associate at my firm, who handled many

14 of the day-to-day aspects, in connection with other attorneys at the firm, regarding discovery matters

15 in the litigation from 2009 until February 4, 2011, the date that Ms. Roach left the firm. I also spoke

16 with other attorneys working on the case who were familiar with discovery issues.

17     4.      In the Declaration of David C. Kiernan in Support of Apple Inc.'s Opposition to

18 Renewed Motion for Class Certification ("Kiernan Declaration"), filed on February 28, 2011, there

19 are a number of statements that have been attributed to Ms. Roach. In order to determine whether

20 these statements were in fact something Ms. Roach said or did, I spoke to Ms. Roach and reviewed

21 her entire file of email and written correspondence with Mr. Kiernan and others from 2009 to

22 February 4, 2011. I also exchanged emails with Ms. Roach regarding the subject matter of the

23 Kiernan Declaration.

24     5.      Mr. Kiernan declares that Plaintiffs' suggestion that "Apple deliberately delayed

25 producing or 'dumped' documents at the last minute is untrue." Kiernan Declaration, ¶2. Based on

26 an extensive review of the record of negotiations regarding document and data production, and my

27 personal experience in the negotiations, Mr. Kiernan's statement is false. In fact, a number of

28 statements in the Kiernan Declaration are completely unsupported by the record. The record instead

615786_1    DEC OF ALEXANDRA S. BERNAY ISO REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS'
RENEWED MOTION FOR CLASS CERTIFICATION - C-05-00037-JW(HRL)                    - 1 -

1   reveals a history of delay and failure to produce needed documents until after certain depositions

2   were completed, expert reports were due and after the end of discovery.

3          6.      Mr. Kiernan states that he had several conversations with Ms. Roach about the

4   staging of document production in the period between the fall of 2009 and May 10, 2010 (the date of

5   the hearing on Apple's initial summary judgment motion).  Kiernan Declaration, ¶6.  As the

6   correspondence reveals, there was never an agreement to stage discovery, although Apple tried to

7   suggest that it should be able to postpone production until the motion to dismiss was decided.  In a

8   February 26, 2010 email chain, counsel for Apple states: "Apple reiterated its position that

9   discovery should be stayed pending a ruling on Apple's dispositive motion . . . . Plaintiffs are

10  unwilling to do so.  Instead, Plaintiffs position is that Apple must provide answers to all discovery."

11         7.      Although Mr. Kiernan states in his declaration that Apple produced documents

12  responsive to Rule 30(b)(6) requests in the fall of 2009, ███████████████████████████

13  ███████████████████████████.  Kiernan Declaration, ¶7.  These documents were not

14  complete data sets and allowed for only cursory analysis to be conducted.  ███████████████

15  ███████████████████████████████

16         8.      In October 2009, Plaintiffs complained to Apple that numerous categories of

17  documents had not been produced, despite the fact that Plaintiffs were told "repeatedly that there is a

18  huge volume of documents" being prepared for "an imminent rolling production."  Critically,

19  Plaintiffs explained on October 13, 2009 that data needed by Plaintiffs' expert had still not been

20  produced. On October 19, 2009, Plaintiffs again explained their "consistent position that Apple has

21  not provided complete data that would enable Plaintiffs to complete a damages study using one or

22  more of the methodologies proposed by Professor Noll."  Plaintiffs reminded Apple that the same

23  information regarding revenue, costs and sales data had been the subject of a motion to compel

24  earlier in the litigation.  Despite Plaintiffs' continued efforts to have Apple produce the needed

25  discovery, ██████████████████████████████████████████████████

26  ██████████████████████████.  At no time did Plaintiffs tell Apple that

27  the data was somehow not required or unwanted.

28

615786_1

DEC OF ALEXANDRA S. BERNAY ISO REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS'
RENEWED MOTION FOR CLASS CERTIFICATION - C-05-00037-JW(HRL)          - 2 -

9.    Additionally, in March of 2010, while Apple stated that it was "focusing discovery efforts" in responding to requests related to certain 30(b)(6) depositions that had been planned, Plaintiffs had asked that Apple locate and produce documents responsive to requests in a more recent set (31-35, 38-40, 46, 54 and 65 as well as certain interrogatories). Apple stated that it disagreed with Plaintiffs' position, but agreed to "prioritize this discovery." ████████████████

████████████████████████████████████

████████████████████████████

10.    On July 15, 2010 counsel for Plaintiffs wrote to Apple explaining that significant pending discovery in addition to the documents for the 30(b)(6) had yet to be produced and that there was no discovery stay in place.

11.    █████████████████████████████████████

████████

12.    The Kiernan Declaration unfairly paints Ms. Roach as the sole party involved in discovery negotiations on behalf of Plaintiffs. This is not the case. Most calls regarding discovery were attended by both Ms. Roach and Mr. Merrick from late 2009 until October 2010. Beginning in late October 2010, I was involved in every call or was provided an update by Ms. Roach until the time she left the firm. Apple is improperly using the fact that Ms. Roach is no longer with the firm to portray discovery issues in an inaccurate light.

13.    Mr. Kiernan claims that he established weekly status calls with Ms. Roach to discuss discovery issues in October 2010. Kiernan Declaration, ¶11. This is not accurate. In fact, it was I who suggested having a weekly call to make sure that discovery issues were being dealt with as they came up during the last two months of discovery. From late October through the present, I took part in, or was immediately briefed by Ms. Roach, regarding every call of substance, despite the intimation in the Kiernan Declaration that only Mr. Kiernan and Ms. Roach were involved in negotiations. While Apple did plan on providing custodial documents as a priority because of scheduled depositions, at no time did Plaintiffs ever indicate that production of data could wait or go on the back burner.

14.    Paragraph 12 of the Kiernan Declaration is also misleading. The parties agreed in September 2009 to search terms and custodians. Apple provided some documents on a rolling basis for some custodians, but the vast majority of custodial documents were received in November and December 2010. ███████████████████████████████████████████

████████████████████████████. Mr. Kiernan states that "[s]ix months (July – December 2010) was a short period of time to collect, process and review documents of the scope sought by Plaintiffs," but Defendant Apple was to be producing custodial documents from at least September 2009, when the search terms and custodians were agreed upon. Kiernan Declaration, ¶12.    In November 2009, Apple had informed Plaintiffs that it had "fifteen lawyers reviewing documents for responsiveness and privilege."

15.    Even after Apple began producing the bulk of the needed custodial documents in the fall of 2010, Plaintiffs did not receive important custodial documents for each witness deposed until after the deposition occurred. In fact, Plaintiffs received thousands of documents to or from or from the custodial files of each of the deponents after the deposition had already concluded.

16.    Mr. Kiernan claims – wrongly – that Plaintiffs are misleading in their citation of ██ ███████████████████████████████████████████ This is not true. Not only are the page counts accurate, in many cases the page count is likely vastly undercounted for two reasons: First,  on December 11, 2010 Apple announced that in order to reduce the volume of printed spreadsheets attached to emails it would produce just a slip sheet with a file name of the document for spreadsheets over 100 pages. Second, the page count does not take into account the massive, although incomplete, volume of data that was produced in Excel spreadsheet files and thus is not included in a page count. ████████████████████

███████████████████████████████████████████

███████████████████████████████████████████.

This is despite Apple's commitment to begin production after custodians and search terms were agreed upon in the fall of 2009. ███████████████████████████

███████████████████████████████████████████

███████████████

1    17.    Mr. Kiernan's recitation of issues related to the materials needed by Professor Noll is

2  also inaccurate. First, as explained above, ████████████████████████████████████

3  ████████████████████████████████████████████████████ Mr.

4  Kiernan's claim that Ms. Roach did not "complain about the timing of the production" is

5  unsupported and contrary to the clear record. Kiernan Declaration, ¶13. The data needed by

6  Plaintiffs' experts was the specific subject of correspondence between Mr. Merrick and Mr. Kiernan

7  in October 2009, was specifically addressed in a letter from Ms. Roach to Mr. Kiernan in September

8  2010 and was raised on every, or nearly every call between counsel in November 2010 and

9  December 2010. It has also been the subject of more than 10 emails from Plaintiffs to Apple's

10  counsel from February 2011 through the present.

11    18.    On December 14, 2010, Plaintiffs finally received what ████████████████

12  ████████████████ On December 17, 2010, after Plaintiffs' experts looked at the data, Plaintiffs

13  informed counsel for Apple that there were significant problems with the database. Also during the

14  period December 14 through December 30, 2010, Plaintiffs received an enormous amount of other

15  data from Apple. Because this data was received at or after the close of discovery, the parties agreed

16  that Apple would answer written questions regarding the data after the discovery cut-off date. It was

17  not until January 6, 2011, days before Plaintiffs' class certification motion and expert report were

18  due, ████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████ Also, there were additional questions regarding the data that Plaintiffs did not get

21  answers to for many weeks. ████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████

24    19.    Apple answered a number of the questions posed by Plaintiffs, but as to many of the

25  written questions Apple either ignored or continuously stated that questions were "under

26  investigation." ████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████



20. On February 10, 2011, I followed up with Apple's counsel ███████████ ████████ In that correspondence, I stated, ███████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████

21. On February 14, 2011 counsel for Plaintiffs and Apple had a conference call regarding ████████████████████████████████ among other issues. At that time Apple's counsel stated that ████████████████ ████████████████ but provided no details regarding the burden of producing the data, despite Plaintiffs' request to do so. According to my recollection, as well as contemporaneous notes from the meeting, Mr. Kiernan stated that Apple would seek to split costs with Plaintiffs. I understand that counsel for Apple has a differing recollection. Plaintiffs asked Mr. Kiernan to provide an actual estimate of the costs of capturing the data as well as a description of the burden of producing the data. Notes from Apple's counsel sent the same day state, ███████████████ ██████████

22. Counsel for Plaintiffs were diligent and wrote to Apple on February 17, 2011, February 20, 2011, February 25, 2011 and March 3, 2011 requesting an update regarding the status of the outstanding data issues. Apple did not respond to any of these requests.

23. On March 7, 2011 Plaintiffs wrote to Apple following up on the data questions ███████████████████████████████████████████████████ ██████ that had been provided nearly a month earlier. Plaintiffs explained that answers to these questions were highly important for Plaintiffs' expert's analysis, due at the end of the month. Plaintiffs explained that if Apple did not provide full responses by March 10, 2011, Plaintiffs planned to file a motion to compel the following day.

24. On March 10, 2011 Apple responded to Plaintiffs' requests with some answers to questions and a separate database that had been previously requested. ████████████ ███████████████████████████████████████████████████████████ Apple did not support this claim of burden with any details or description, despite Plaintiffs' requested estimate of all costs and burden. A series of emails followed between counsel. On March 11, 2011, I wrote to Mr. Kiernan and explained that ██████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████ I explained that this was the same response Plaintiffs received a month earlier. ████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████

25. The parties had further back-and-forth communication and Apple's counsel indicated that perhaps the data requested by Plaintiffs existed ████████████████████. Based in large part on this statement, Plaintiffs held off filing their motion to compel, which was ready to be filed on Friday, March 11, 2011. █████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████

26. I again wrote to follow up with Apple's counsel on March 16, 2011, March 18, 2011, March 21, 2011 and March 22, 2011. ████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████

27. On Thursday, March 24, 2011, I again wrote to Apple's counsel reminding counsel ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████ I responded to Apple's questions within a half hour and stated that

1 │ Plaintiffs had been working with Apple for many months trying to get the data from Apple and

2 │ explained Plaintiffs' position that many of the issues regarding data would have been resolved much

3 │ sooner if Apple had not waited until on and after the close of discovery to provide data to Plaintiffs.

4 │ Plaintiffs again told Apple that motion practice may be necessary. ███████████████████

5 │ ████████████████████████████████████████████████████████████

6 │ ████████████████ Counsel for Apple further stated that he would "have an answer Monday

7 │ whether data exists."

8 │       28.     I again wrote to Apple's counsel on Monday, March 28, 2011, ████████████

9 │ ████████████████████████████████████████████████████████████

10 │      I declare under penalty of perjury under the laws of the United States of America that the

11 │ foregoing is true and correct. Executed this 28th day of March, 2011, at San Diego, California.

12 │                                    s/ Alexandra S. Bernay

                                      ALEXANDRA S. BERNAY

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>CERTIFICATE OF SERVICE</u>

2       I hereby certify that on March 28, 2011, I authorized the electronic filing of the foregoing

3  with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

4  the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5  caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6  CM/ECF participants indicated on the attached Manual Notice List.

7       I certify under penalty of perjury under the laws of the United States of America that the

8  foregoing is true and correct.  Executed on March 28, 2011.

9                                 s/ Alexandra S. Bernay
                                  ALEXANDRA S. BERNAY

10

11                         ROBBINS GELLER RUDMAN
                             & DOWD LLP

12                         655 West Broadway, Suite 1900
                         San Diego, CA  92101-3301
                         Telephone: 619/231-1058

13                         619/231-7423 (fax)

14                         E-mail:       xanb@rgrdlaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 5:05-cv-00037-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Todd David Carpenter**
  tcarpenter@bffb.com,pjohnson@bffb.com,rcreech@bffb.com

- **Andrew S. Friedman**
  khonecker@bffb.com,rcreech@bffb.com,afriedman@bffb.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com

- **Roy Arie Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com

- **Carmen Anthony Medici**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com

- **Thomas Robert Merrick**
  tmerrick@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com,ewallace@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,ybennett@jonesday.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Elaine A. Ryan**
  eryan@bffb.com,pjohnson@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Michael Tedder Scott**
  michaelscott@jonesday.com,amhoward@jonesday.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **John J. Stoia , Jr**
  jstoia@rgrdlaw.com

- **Bonny E. Sweeney**
  bonnys@rgrdlaw.com,christinas@rgrdlaw.com,E_file_sd@rgrdlaw.com

- **Helen I. Zeldes**
  helenz@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)