ROBBINS GELLER RUDMAN
&  DOWD LLP
JOHN J. STOIA, JR. (141757)
BONNY E. SWEENEY (176174)
THOMAS R. MERRICK (177987)
ALEXANDRA S. BERNAY (211068)
CARMEN A. MEDICI (248417)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
johns@rgrdlaw.com
bonnys@rgrdlaw.com
tmerrick@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com

THE KATRIEL LAW FIRM
ROY A. KATRIEL (*pro hac vice*)
1101 30th Street, N.W., Suite 500
Washington, DC  20007
Telephone:  202/625-4342
202/330-5593 (fax)
rak@katriellaw.com

Co-Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTI-TRUST LITIGATION | ) ) ) |
| | ) |
| This Document Relates To: | ) ) |
| ALL ACTIONS. | ) ) ) |

Lead Case No. C-05-00037-JW(HRL)

CLASS ACTION

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DATA

JUDGE:    Hon. Howard R. Lloyd
DATE:     May 3, 2011
TIME:     10:00 a.m.
CTRM:     2, 5th Floor

**REDACTED**

615784_1

1    PLEASE TAKE NOTICE that on May 3, 2011 at 10:00 a.m., or as soon thereafter as the

2    matter may be heard, in Courtroom 2, 5th Floor, of the above-captioned Court, located at 280 South

3    First Street, San Jose, California, before the Honorable Howard R. Lloyd, Plaintiffs Melanie Tucker,

4    Mariana Rosen and Somtai Troy Charoensak (collectively, "Plaintiffs") will and hereby do, through

5    undersigned counsel, move this Court pursuant to Federal Rules of Civil Procedure, Rule 37(a), for

6    an order compelling Apple Inc.'s ("Apple") production of a limited set of documents relevant to

7    matters needed by Plaintiffs' experts to conduct their analysis. The relevance of the documents

8    sought is described below.

9    In accordance with Local Rule 37-1(b), and as set out in the contemporaneously-filed

10    Declaration of Alexandra S. Bernay in Support of Plaintiffs' Notice of Motion and Motion to

11    Compel Production Data, filed concurrently ("Bernay Decl."), Plaintiffs have made good faith

12    efforts to confer with Apple in an attempt to resolve this dispute without the need for Court

13    intervention. However, the parties have reached an impasse on the issues subject to this Motion.

14    In addition to the foregoing declaration, this Motion is supported by the memorandum of

15    points and authorities, the pleadings on file in this action and on such other and further matters,

16    evidence and arguments as may be presented to the Court before or at the hearing on the Motion.

17    **I.    MEMORANDUM OF POINTS AND AUTHORITIES**

18    **A.    History of Document Production Relevant to this Motion**

19    During the final two months of the fact-discovery period in this action ▮▮▮▮▮▮▮▮▮

20    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Bernay Decl., ¶2. Part of that production

21    contained some of the data necessary for Plaintiffs' experts to be able to conduct their analysis

22    regarding damages and antitrust impact in this action. *Id.*

23    Because a great deal of the materials received by Apple were produced just before the

24    discovery cut-off, the parties agreed that Apple would work with Plaintiffs to resolve questions and

25    issues regarding the data as they came up. *Id.*, ¶3. From the end of December 2010 to the present,

26    Plaintiffs have regularly contacted Apple with questions regarding the meaning of certain items in

27    the data and requests concerning the absence of needed material in the data as well as other matters

28    as they have come up. *Id.*, ¶4. Apple provided some written responses and also produced some

1  corrected data. *Id.* In early February, Plaintiffs sought to wrap up the remaining issues surrounding

2  the data and sent Apple's counsel a list of the critical items that remained to be either produced or

3  explained. *Id.*, ¶5. On February 10, 2011, Plaintiffs provided Apple with what it understood to be

4  the universe of outstanding questions. Plaintiffs followed up a number of times, but it was not until

5  Plaintiffs set a firm deadline by which a motion to compel would be filed that Apple produced some

6  of the materials Plaintiffs requested. *Id.*, ¶7-10. However, ███████████████████████

7  ████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████

9  ████████████████████████

10        Critically, the primary document request responsive to the data at issue here has already been

11  the subject of a motion to compel in this litigation. *See* Plaintiff Melanie Tucker's First Set of

12  Requests for Production of Documents to Defendant Apple Inc., Request No. 19. (Request No. 19:

13  "All Documents necessary to allow the calculation for each quarter since the introduction of the iPod

14  for each model that iPod has Apple [*sic*] sold, the number of iPods that have been purchased,

15  Apple's total revenue from the sale of each iPod model and Apple's Cost of Manufacturing and cost

16  of sale for each iPod model."); Dkt. No. 133 (Plaintiff's Notice of Motion and Motion to Compel

17  Defendant Apple, Inc.'s Production of Documents Relating to Class Certification). At that time

18  Apple argued that Plaintiffs were not entitled to the discovery being sought based in large part on the

19  then-current procedural posture of the case. *See* Dtk. No. 142 at 2, 3, 5 (Apple's Opposition to

20  Motion to Compel Documents "Relating to Class Certification") (arguing that "discovery

21  limitations" were still in force). None of the supposed limitations on discovery exist at this stage of

22  the litigation and Apple's failure to turn over the complete set of data going back to October 2001 is

23  improper.

24        **B.    The Data Plaintiffs Require**

25        In its opposition to Plaintiffs' Renewed Motion for Class Certification, Apple contends that

26  Plaintiffs have failed to conduct a full-blown analysis of antitrust impact and damages, a damages

27  analysis which Apple wrongly claims is necessary in order to demonstrate that the case is suitable

28  for class treatment. *See, e.g.*, Dkt. No. 512 at 2, 4-6 (Apple's Opposition to Renewed Motion for

1   Class Certification).  At the same time, however, Apple has failed to provide the very materials

2   needed to eventually conduct such an analysis.[1]  Apple cannot have it both ways.  It cannot withhold

3   the materials Plaintiffs require and at the same time fault Plaintiffs for not conducting a full-blown

4   analysis of antitrust impact and damages at class certification.  While such an analysis is not required

5   at the class certification stage, Plaintiffs will be required to conduct analysis of the liability and

6   damages issues in this case prior to trial.

7           In his Declaration, submitted in conjunction with Plaintiffs' Renewed Motion for Class

8   Certification, Plaintiffs' expert, Professor Roger G. Noll, explained that a significant amount of data

9   produced by Apple was neither transparent nor complete.  *See* Dkt. No. 488 (Declaration of Roger

10  G. Noll ("Noll Decl.")).  Professor Noll explained, and Apple later confirmed, that Apple appeared

11  to have the kind of comprehensive, disaggregated data that can support a sophisticated econometric

12  analysis of sales and profits of iPods for a sufficiently long time period to address the liability issues

13  and to estimate damages in the case, but that there were certain issues regarding the data.[2]

14          One "notable" problem Professor Noll reported was ████████████████████████

15  ████████████████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████████████.

17  _____

[1]     As Plaintiffs explained in their Renewed Motion for Class Certification, antitrust impact is
typically established for class certification purposes through expert testimony confirming that
generally accepted economic methodologies are available to demonstrate impact and to reasonably
calculate damages on a class-wide basis.  *In re Static Random Access Memory Antitrust Litig.*, 264
F.R.D. 603, 612 (N.D. Cal. 2009); *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 136 (C.D. Cal.
2007); *In re Dynamic Randon Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006
WL 1530166, at *8 (N.D. Cal. June 5, 2006); *Estate of Garrison v. Warner Bros., Inc.*, No. CV 95-
8328 RMT, 1996 WL 407849, at *4 (C.D. Cal. June 25, 1996).  Apple concedes this is the
applicable standard.  *See, e.g.*, Dkt. No. 240 at 1 (Defendant's Motion for Decertification of Rule
23(B)(3) Class) ("To obtain class treatment, the plaintiff must show a reliable method for proving
common impact on the purported class.").  At the class certification stage, then, Plaintiffs "need only
advance a plausible methodology to demonstrate that antitrust injury can be proven on a class-wide
basis."  *DRAM*, 2006 WL 1530166, at *9; *see also In re Online DVD Rental Antitrust Litig.*, No.
M 09-2029 PJH, 2010 WL 5396064, at *9-*10 (N.D. Cal. Dec. 23, 2010); *Live Concert*, 247 F.R.D.
at 146-47.

[2]     It was not until March 10, 2011, that Apple provided responses to other critical data issues
and only after Plaintiffs informed Apple that they would move to compel on the remaining data
issues. Bernay Decl., ¶¶7-10.

18
19
20
21
22
23
24
25
26
27
28

1  Plaintiffs have been requesting this data since at least December 2009.[3]  Specifically, in their

2  February 10, 2011 letter seeking to wrap up issues related to data, Plaintiffs ███████████

3  ██████████████████████████████████████████████████████████████████████████

4  ██████████████████████████████████████████████████████████████████████████

5  ███. Bernay Decl., ¶5.

6         Apple has failed provide a meaningful estimate of costs or other specific information

7  regarding the availability of this data despite having committed to doing so in mid-February and

8  despite numerous attempts by Plaintiffs to follow up on these and other data issues.  *Id.*, ¶¶4-7.

9  Instead, late on Thursday, March 10, 2011, the day Plaintiffs set as the deadline to respond to the

10 outstanding data issues, Apple's counsel asked to set up a call to discuss ███████████████

11 █████████████████████████ and also again claimed that it would be unduly

12 burdensome to produce the data without providing any details to support this statement.  *Id.*, ¶9.

13 Plaintiffs' counsel made clear that the law did not support generalized claims of burden and that

14 Apple would need to provide a detailed basis for this claim.

15        By this Motion, Plaintiffs seek an Order compelling Apple to ████████████████

16 █████████████████████████████.  Apple has provided only a summary claim that

17 production of these materials would be "unduly burdensome," but has failed to provide any specific

18 information backing up this claim of burden that would allow Plaintiffs to assess the supposed

19 difficulties in producing the data despite multiple requests by Plaintiffs.  *Id.*, ¶7.  ███████████

20 ████████████████████████████████████████████████████████████ and Apple

21 has not explained, other than a general claim of burden and an unsupported assertion that it may cost

22 hundreds of thousands of dollars to retrieve, why this data cannot be produced.  *Id.*, ¶¶9-11.

23        Plaintiffs have been specifically requesting █████████████████████████████

24 ██████████████████████████████████████████████████████████████████████████

25

———————————————

26 [3] ██████████████████████████████████████████████████████████████████████████

27 claims, that "based on prior experience, the costs could run into the several hundreds of thousands of
   dollars and perhaps much higher."  Bernay Decl., ¶11.

28

1  Plaintiffs' Second Request for Production of Documents.  In September 2010, Plaintiffs explained in

2  correspondence to Apple the reasons the data was important for Plaintiffs' expert.  In mid-December

3  2010, just before the discovery cut-off, ████████████████████████████████████████

4  ████████████  *Id.*, ¶4.  There were numerous problems with the data which made it difficult to work

5  with and Apple produced corrected data on January 6, 2011.  *Id.*, ¶4.  ██████████████████

6  ████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████

8  ██████████████████████  *Id.*, ¶4.  In February, ██████████████████████████

9  ████████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████  *Id.*, ¶9.[4]

11 Moreover, despite Plaintiffs' request on February 14, 2011 for an estimate of actual costs to retrieve

12 the data, it was not until March 10, 2011 that Apple gave any idea of costs, telling Plaintiffs, with no

13 specifics or details that "[b]ased on previous experience, the costs could run into the several

14 hundreds of thousands of dollars and perhaps much higher."  *Id.*, ¶11.

15         Defendants have not, and cannot, claim that this data is irrelevant or otherwise improperly

16 requested.  Moreover, Plaintiffs' expert, Professor Noll has specifically stated that in order to

17 undertake the most reliable version of a "before-after" analysis of the effect of launching iTMS, the

18 ████████████████████████████████████████[5]  Noll Decl. at 15.

19

20

21

─────────────────────────

22 [4]    The parties also discussed the reseller transactional database prior to the March 15, 2011

23 hearing on Apple's motion for a protective order regarding Steve Jobs.  During that discussion,
   Apple's counsel again stated the costs of restoring the data would be several hundred thousand

24 dollars.  Counsel also indicated during that discussion that similar materials may reside in non-
   archived locations and committed to reporting back to Plaintiffs on this issue.

25 [5]    In its response to Plaintiffs February 10, 2011 data requests, ████████████████████████

26 ██████████.  Bernay Decl., ¶¶7, 9.  Plaintiffs are not precisely sure what data Apple is referring to

27 because Apple provides no details, ████████████████████████████████████████

28

1    C.    **Applicable Legal Standards**

2    Parties are entitled to discovery regarding any non-privileged matter that is relevant to a

3    claim or defense in the action. Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 37(a)(3)(A)-(B).

4    The scope of discovery is to be construed liberally, and relevance for purposes of discovery is

5    defined "very broadly." *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998); *Fitzgerald v.*

6    *Cassil*, 216 F.R.D. 632, 634 (N.D. Cal. 2003); 7 James Wm. Moore et al., *Moore's Federal Practice*

7    *& Procedure*, §34.12[1], at 34-34 (3d ed. 2006). Discovery is appropriate "if there is any possibility

8    that the information sought may be relevant to a claim or defense of any party." *City of Rialto v.*

9    *United States DOD*, 492 F. Supp. 2d 1193, 1202 (C.D. Cal. 2007).

10    A party seeking to withhold discovery has a "heavy burden" of showing why discovery

11    should not be permitted. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975);

12    *Sequoia Prop. Equip. Ltd. P'Ship v. United States*, 203 F.R.D. 447, 451 (E.D. Cal. 2001). When

13    determining whether a discovery request is unduly burdensome, the court must balance the interests

14    of allowing discovery against the burden of the parties. *Sullivan v. Prudential Ins. Co. of Am.*, 233

15    F.R.D. 573, 575 (C.D. Cal. 2005). Conclusory objections that the requests are burdensome are

16    insufficient to meet the resisting party's burden. *Bible v. Rio Props., Inc.*, 246 F.R.D. 614, 619 (C.D.

17    Cal. 2007); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006). Apple

18    cannot meet its "heavy burden" of justifying its refusal to produce the data at issue and thus should

19    be compelled to produce the data. In fact, Apple has provided Plaintiffs no justification as to why it

20    has failed to produce the data in question, let alone show that it would be unduly burdensome to do

21    so. *See W. Res., Inc, v. Union Pac. R.R. Co.*, No. 00-2043-CM, 2002 WL 1822432, at *4 (D. Kan.

22    July 23, 2002) (holding party resisting discovery has the obligation to detail and explain the nature of

23    the burden in terms of time, money and procedure required to produce the requested documents).

24    It is commonplace for courts to grant motions to compel discovery of sales or financial data

25    when relevant to the issues presented. *See In re Tableware Antitrust Litig.*, No C-04-3514 VRW,

26    2006 U.S. Dist. LEXIS 50838, at *4-*6 (N.D. Cal. May 25, 2006) (motion to compel production of

27    transactional and sales data granted where relevant to Professor Noll's ability to apply the before-

28    after method of determining effects of anticompetitive conduct); *In re NASDAQ Market-Makers*

1   *Antitrust Litig.*, 929 F. Supp. 723, 726 (S.D.N.Y. 1996) (motions to compel granted in antitrust

2   action; discovery allowed to pursue documents including those setting forth revenues costs, profits,

3   or losses derived from trading NASDAQ securities); *In re Folding Carton Antitrust Litig.*, 76 F.R.D.

4   420, 427 (N.D. Ill. 1977) (motion to compel financial information by plaintiffs in price-fixing

5   antitrust action granted where such information "may help plaintiffs determine whether or not

6   defendants enjoyed unreasonably high or excessive profits"); *Citicorp v. Interbank Card Ass'n*, 87

7   F.R.D. 43, 47 (S.D.N.Y. 1980) (discovery of sales and profit data against third parties Amexco and

8   Barclay's allowed in antitrust action; relevancy for discovery purposes is interpreted broadly and

9   "'[i]t would therefore be nearly impossible for the parties in this case to analyze and define the

10  relevant market without information that only Amexco can provide'") (citation omitted).

11         Here, as Professor Noll explained in his Declaration, some uncertainties about the data

12  "remain unresolved" as of the time of his report "making reliable application of statistical methods

13  infeasible." Noll Decl. at 14. However, Professor Noll determined that the "data production to date

14  shows that Apple does keep the kind of comprehensive, disaggregated data that can support a

15  sophisticated econometric analysis of sales and profits of iPods for a sufficiently long time period to

16  address the liability issues and to estimate damages in this litigation." *Id.* at 18. Professor Noll

17  noted that the ████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████

22  ███████████████████████████████████ Reply Declaration of Roger G. Noll,

23  filed March 28, 2011 at 28. Plaintiffs have demonstrated this data is relevant to issues related to

24  their expert's ability to assess damages and liability in this action and Apple has failed to show the

25  data sought is not relevant, nor has Apple demonstrated that the burden of producing this data is

26  undue.

27         In her report, Apple expert, Dr. Michelle Burtis, faults Professor Noll's proposed methods to

28  determine and measure impact. ███████████████████████████████████



1 ████████████████████████████████████████████

2 ████████████████████████████████████████ Dkt. No.

3 511 (Expert Report of Dr. Michelle M. Burtis ("Burtis Report"), ¶32). ████████

4 ██████████████████████████████████ As Dr. Burtis concedes, Professor Noll

5 has recognized the potential problem with distinguishing price impact due to legal and potentially

6 illegal conduct. Burtis Report, ¶33. ███████████████████████████████

7 ████████████████████████████████████████████

8 ████████████████████████████████████████████

9 ████████████████

10 **II.     CONCLUSION**

11         For the reasons stated above, Plaintiffs respectfully request this Court issue an Order

12 compelling Apple to produce the ███████████████████████

13 DATED: March 28, 2011                  Respectfully submitted,

14                                         ROBBINS GELLER RUDMAN
                                            & DOWD LLP
15                                         JOHN J. STOIA, JR.
                                          BONNY E. SWEENEY
16                                         THOMAS R. MERRICK
                                          ALEXANDRA S. BERNAY
17                                         CARMEN A. MEDICI

18

19                                                 s/ Alexandra S. Bernay
                                          ALEXANDRA S. BERNAY

20                                         655 West Broadway, Suite 1900
21                                         San Diego, CA 92101
                                          Telephone: 619/231-1058
22                                         619/231-7423 (fax)

23                                         THE KATRIEL LAW FIRM
                                          ROY A. KATRIEL
24                                         1101 30th Street, N.W., Suite 500
                                          Washington, DC 20007
25                                         Telephone: 202/625-4342
                                          202/330-5593 (fax)

26                                         Co-Lead Counsel for Plaintiffs

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
FRANCIS J. BALINT, JR.
ELAINE A. RYAN
TODD D. CARPENTER
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone:  602/274-1100
602/274-1199 (fax)

BRAUN LAW GROUP, P.C.
MICHAEL D. BRAUN
10680 West Pico Blvd., Suite 280
Los Angeles, CA  90064
Telephone:  310/836-6000
310/836-6010 (fax)

MURRAY, FRANK & SAILER LLP
BRIAN P. MURRAY
JACQUELINE SAILER
275 Madison Avenue, Suite 801
New York, NY  10016
Telephone:  212/682-1818
212/682-1892 (fax)

GLANCY BINKOW & GOLDBERG LLP
MICHAEL GOLDBERG
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)

Additional Counsel for Plaintiffs

PLTFS' NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DATA - C-05-00037-
JW(HRL)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 28, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 28, 2011.

                                    s/ Alexandra S. Bernay
                                    ALEXANDRA S. BERNAY

                                    ROBBINS GELLER RUDMAN
                                         & DOWD LLP
                                    655 West Broadway, Suite 1900
                                    San Diego, CA 92101-3301
                                    Telephone: 619/231-1058
                                    619/231-7423 (fax)

                                    E-mail:     xanb@rgrdlaw.com

# Mailing Information for a Case 5:05-cv-00037-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Todd David Carpenter**
  tcarpenter@bffb.com,pjohnson@bffb.com,rcreech@bffb.com

- **Andrew S. Friedman**
  khonecker@bffb.com,rcreech@bffb.com,afriedman@bffb.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com

- **Roy Arie Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com

- **Carmen Anthony Medici**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com

- **Thomas Robert Merrick**
  tmerrick@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com,ewallace@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,ybennett@jonesday.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Elaine A. Ryan**
  eryan@bffb.com,pjohnson@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Michael Tedder Scott**
  michaelscott@jonesday.com,amhoward@jonesday.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **John J. Stoia , Jr**
  jstoia@rgrdlaw.com

- **Bonny E. Sweeney**
  bonnys@rgrdlaw.com,christinas@rgrdlaw.com,E_file_sd@rgrdlaw.com

- **Helen I. Zeldes**
  helenz@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)