IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| The Apple iPod iTunes Antitrust Litigation | NO. C 05-00037 JW |
| | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING AS PREMATURE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

## I. INTRODUCTION

Plaintiffs[1] bring this class action against Defendant Apple Computer, Inc. ("Apple"), alleging violations of the Sherman Act, 15 U.S.C. § 2, and related state law claims. Plaintiffs allege that Apple has committed unlawful acts in issuing software updates for its iPod, in violation of federal and state antitrust laws.

Presently before the Court are Defendant's Motion for Summary Judgment[2] and Plaintiffs' Motion for Class Certification.[3] The Court conducted a hearing on April 18, 2011. Based on the papers submitted to date and oral argument, the Court GRANTS in part and DENIES in part

---

[1] Named Plaintiffs are Somtai Troy Charoensak, Mariana Rosen and Melanie Tucker.

[2] (hereafter, "SJ Motion," Docket Item No. 473 (filed under seal).)

[3] (Plaintiffs' Notice of Motion and Renewed Motion for Class Certification and Appointment of Lead Counsel, hereafter, "Class Certification Motion," Docket Item No. 477 (filed under seal).)

Defendant's Motion for Summary Judgment and DENIES as premature Plaintiffs' Motion for Class Certification.

## II. BACKGROUND

**A.  Undisputed Facts**[4]

In 2003, Apple launched its iTunes music store ("iTS").[5]  When Apple negotiated with record labels about the terms under which Apple could sell digital music files online through the iTS, most of the labels required that the digital music files be protected to guard against privacy. (Id. at 5; Id. at 3.)  Apple implemented the required security solution through a proprietary system called "FairPlay."  (Id. at 5-6; Id. at 3.)  The FairPlay system was used by Apple to encrypt the songs offered on the iTS.  (Id. at 6; Id. at 4.)

In July 2004, RealNetworks announced its Harmony technology.  (SJ Motion at 8; SJ Opp'n at 6.)  Using Harmony, RealNetworks was able to make music purchased from its online music store playable on Apple's iPods.  (Id.; Id.)  In October 2004, Apple released an update of its iTunes software called iTunes 4.7.  (Id.; Id. at 9.)  iTunes 4.7 featured a redesigned version of FairPlay. (Id.; Id.)  The version of FairPlay used in iTunes 4.7 employed a new encryption method, which ended the interoperability of the July 2004 version of Harmony with the iPod.  (Id. at 9; Id.)

In September 2006, Apple released an update of its iTunes software called iTunes 7.0.  (SJ Motion at 9; SJ Opp'n at 10.)  iTunes 7.0 included a redesign of FairPlay.  (Id. at 10; Id.)  This redesign prevented third-party applications like RealPlayer (the "jukebox" used by RealNetworks) from placing music onto the iPod, which was accomplished by making it impossible for any source other than iTunes itself to write on the iPod's database.  (Id.; Id.)

---

[4]  As a preliminary matter, although the Court had granted the parties' various Motions to seal the briefs and other documents in support of these Motions, the Court now finds its references to these materials in this Order to be appropriate, as the referenced materials are not sealable under Civ. L.R. 79-5.

[5]  (SJ Motion at 6; Plaintiffs' Memorandum in Opposition to Apple's Motion for Summary Judgment at 4, hereafter, "SJ Opp'n," Docket Item No. 477 (filed under seal).)

United States District Court
For the Northern District of California

### B. Procedural History

A detailed account of the earlier procedural history in this case may be found in the Court's December 20, 2006 Order Denying Defendant's Motion to Dismiss[6] and in the Court's December 22, 2008 Order Granting Plaintiffs' Motion for Class Certification.[7] The Court reviews the procedural history relevant to the present Motions.

This case is a consolidated putative class action. The original cases were Charoensak v. Apple Computer, Inc., No. C 05-00037 JW, and Tucker v. Apple Computer, Inc., No. C 06-04457 JW.[8] On March 21, 2007, the Court ordered these cases consolidated, and renamed the consolidated case The Apple iPod iTunes Antitrust Litigation.[9] (Docket Item No. 106.) The Court designated The Katriel Law Firm, P.L.L.C. and Coughlin Stoia Geller Rudman & Robbins as Co-Lead Counsel, and designated Somtai Troy Charoensak, Mariana Rosen and Melanie Tucker as Lead Plaintiffs. (Id. at 1.) On April 19, 2007, Plaintiffs filed a Consolidated Complaint for Violations of Sherman Antitrust Act, Clayton Act, Cartwright Act, California Unfair Competition Law, Consumer Legal Remedies Act, and California Common Law of Monopolization. (Docket Item No. 107.)

On December 22, 2008, the Court granted Plaintiffs' Motion for Class Certification as to all but one of Plaintiffs' counts. (December 22 Order at 13-14.) As to the remaining count, which

---

[6] (hereafter, "December 20 Order.") This Order may be found as Docket Item No. 27 in the docket for Tucker v. Apple Computer, Inc., No. C 06-04457 JW, which was one of the original cases now included in this consolidated action. It may also be found as Tucker v. Apple Computer, Inc., 493 F. Supp. 2d 1090 (N.D. Cal. 2006).

[7] (Order Granting Plaintiffs' Motion for Class Certification as to Counts Two, Three, Four, Five, Six, and Seven Only and Appointing Class Counsel; *Sua Sponte* Order Reconsidering Defendant's Motion to Dismiss Count One and Requiring Further Briefing, hereafter, "December 22 Order," Docket Item No. 196.)

[8] There is a related case, the "Indirect Purchaser" action, Somers v. Apple Computer, Inc., No. C 07-06507. Somers is a putative class action, which asserts the same causes of action against Apple based on the same alleged anticompetitive conduct. The Plaintiffs in Somers, however, are iPod purchasers who did not purchase iPods directly from Apple. (See Docket Item No. 1 in 07-06507.)

[9] Prior to consolidation, the Court denied Apple's Motion to Dismiss the antitrust claims in Tucker case. (See December 20 Order at 16.) No other dispositive motions were filed in Tucker or in Charoensak prior to consolidation.

stated a claim for Unlawful Tying in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, the Court denied certification without prejudice pending further proceedings in the case. (Id. at 13.) On December 21, 2009, the Court *sua sponte* decertified the classes it had previously certified.[10] In its December 21 Order, the Court explained that the technological interoperability between iPods and media sold through Apple's iTS did not constitute unlawful tying under the Sherman Act. (Id. at 2.) The Court stated that Plaintiffs' monopoly claims "interweave[d] allegations that there were technological ties between Apple products when they were first introduced to the market," which by itself does not constitute anticompetitive conduct, and "allegations that Apple made technological modifications to its products for the express purpose of maintaining monopoly power," which could support a monopoly claim. (Id.) The Court invited Plaintiffs to submit an Amended Consolidated Complaint "that does not depend upon allegations of tying as the anticompetitive conduct upon which they base their monopoly claims." (Id. at 3.)

On January 26, 2010, Plaintiffs filed an Amended Consolidated Complaint[11] alleging six causes of action: (1) Monopolization under Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2; (2) Attempted Monopolization under Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2; (3) Violation of the Cartwright Act, Cal. Bus. & Prof. Code §§ 16270, *et seq*.; (4) Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (5) Violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.; (6) and Common Law Monopolization Business Practices.[12] (See ACC.)

---

[10] (See Order Decertifying Classes Without Prejudice to Being Renewed; Inviting Further Motions at 2, hereafter, "December 21 Order," Docket Item No. 303.)

[11] (Amended Consolidated Complaint for Violations of Sherman Antitrust Act, Clayton Act, Cartwright Act, California Unfair Competition Law, Consumers Legal Remedies Act, and California Common Law of Monopolization, hereafter, "ACC," Docket Item No. 322.)

[12] On June 29, 2010, the Court dismissed Plaintiffs' Cartwright Act, CLRA and Common Law Monopolization claims with prejudice. (See Order Granting in Part and Denying in Part Defendant's Motion to Dismiss; Denying as Premature Defendant's Motion for Summary Judgment; Granting Indirect Purchaser Leave to File an Amended Complaint at 17, Docket Item No. 377.)

4

Presently before the Court are Defendant's Motion for Summary Judgment and Plaintiffs' Motion for Class Certification.

### III. STANDARDS

**A.     Summary Judgment**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion . . . ." Id. at 323. "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The non-moving party "may not reply merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g., Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

**B.     Class Certification**

The decision to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23. See Fed. R. Civ. P. 23; Doninger v. Pacific Northwest Bell, Inc., 564 F.3d 1304, 1309 (9th Cir. 1977). The party seeking class certification bears the burden of establishing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met. Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1176 (9th Cir. 2007) (citing Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1186 (9th Cir. 2001), amended, 273 F.3d 1266 (9th Cir. 2001)). A district court may certify a class only if, after "rigorous analysis," it determines that the party seeking certification has met its burden. General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 158-61 (1982).

In reviewing a motion for class certification, the court generally is bound to take the substantive allegations of the complaint as true. In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig., 691 F.2d 1335, 1342 (9th Cir. 1982) (citing Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975)). However, the court may look beyond the pleadings to determine whether the requirements of Rule 23 have been met. Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992) (citation omitted). In fact, "courts are not only at liberty to but must consider evidence which goes to the requirements of Rule 23 [at the class certification stage] even [if] the evidence may also relate to the underlying merits of the case." Dukes, 509 F.3d at 1178 n.2 (internal quotations and citation omitted).

## IV.  DISCUSSION

**A.     Summary Judgment**

Defendant moves for summary judgment as to all of Plaintiffs' claims on the grounds that: (1) Section 2 of the Sherman Act permits Defendant to improve its products regardless of the impact on competitors; and (2) because Plaintiffs' claim under Section 2 of the Sherman Act fails, its state law UCL claim necessarily fails as well. (SJ Motion at 12-24.)

**1. Section 2 of the Sherman Act**

Section 2 of the Sherman Act prohibits monopolization or attempted monopolization. 15 U.S.C. § 2. "There are three essential elements to a successful claim of Section 2 monopolization: (a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal 'antitrust' injury." Allied Orthopedic Appliances, Inc., v. Tyco Health Care Group LP, 592 F.3d 991, 998 (9th Cir. 2010).

In this case, Defendant does not contest the sufficiency of Plaintiffs' Amended Consolidated Complaint as to the first and third elements. Thus, the Court's analysis will focus on the second element, namely, whether Defendant "willfully acquired or maintained" monopoly power.

If a design change is a product improvement, that design change "by itself does not violate Section 2, even if it is performed by a monopolist and harms competitors as a result." Tyco Health Care Group, 592 F.3d at 998-1000. "If a monopolist's design change is an improvement," then courts may not "balanc[e] the benefits or worth of [the] product improvement against its anticompetitive effects." Id. at 1000. "There is no violation of Section 2 unless [a] plaintiff proves that some conduct of the monopolist associated with its introduction of a new and improved product design 'constitutes an anticompetitive abuse or leverage of monopoly power, or a predatory or exclusionary means of attempting to monopolize the relevant market.'" Id. (quoting Foremost Pro Color, Inc. v. Eastman Kodak Co., 703 F.2d 534, 545-46 (9th Cir. 1983)).

Here, two of Defendant's design changes to its software are at issue: (1) its introduction of iTunes 4.7 in 2004; and (2) its introduction of iTunes 7.0 in 2006. The Court considers each design change in turn.

**a. iTunes 4.7**

At issue is whether Defendant's introduction of iTunes 4.7 constituted a genuine improvement. Defendant contends that iTunes 4.7 was introduced in response to hackers who had circumvented Defendant's previous anti-piracy software, and that the redesigned version of FairPlay in iTunes 4.7 made files more difficult for hackers to crack, which constituted a genuine improvement. (SJ Motion at 4-8.) Plaintiffs respond that the software updates in iTunes 4.7 were in

7

fact designed to make it impossible for RealNetworks' Harmony technology to play RealNetworks songs on an iPod, and that Defendant's real aim was to end RealNetworks' interoperability with the iPod, rather than to prevent hacks. (SJ Opp'n at 6-9.)

Defendant presents evidence that iTunes 4.7 was designed to prevent hacks as follows:

(1) The earlier versions of Defendant's anti-piracy software had been successfully hacked.[13]
(2) In late 2003 and early 2004, attacks by hackers on Defendant's software increased in frequency, leading the record labels whose music was sold on iTS to demand that Defendant take steps to prevent the hacking.[14]
(3) In accord with its contractual obligations with the record labels, Defendant improved its FairPlay security system by fundamentally changing the way its encryption technology worked, thereby making the system more difficult for hackers to crack.[15]

Plaintiffs do not contend that earlier versions of Defendant's software had not been hacked. Further, Plaintiffs concede that record labels required Defendant to have "content protection to guard against piracy." (SJ Opp'n at 3.) Finally, Plaintiffs' expert presents testimony that iTunes 4.7 "introduced a radically different" encryption technology which was "much more resistant to attack" than previous versions of the software.[16] Based on this evidence, the Court finds that it is not disputed that iTunes 4.7 constituted a genuine improvement.

Because iTunes 4.7 was a genuine improvement, the Court may not balance the benefits or worth of iTunes 4.7 against its anticompetitive effects. Tyco Health Care Group, 592 F.3d at 1000. Therefore, Defendant's introduction of iTunes 4.7 could only be a violation of Section 2 if Plaintiffs can prove that some conduct of Defendant associated with its introduction of iTunes 4.7 constituted "an anticompetitive abuse or leverage of monopoly power, or a predatory or exclusionary means of

---

[13] (Declaration of Jeffrey Robbin in Support of Defendant's Renewed Motion for Summary Judgment ¶¶ 21-23, hereafter, "Robbin Decl.," Docket Item No. 468 (filed under seal).)

[14] (Robbin Decl. ¶¶ 23-29; Id., Exs. 10-13.)

[15] (Robbin Decl. ¶¶ 35-40; Declaration of Dr. John P.J. Kelly in Support of Defendant's Renewed Motion for Summary Judgment ¶¶ 17-31, hereafter, "Kelly Decl.," Docket Item No. 536 (filed under seal).)

[16] (Declaration of David F. Martin in Support of Plaintiffs' Opposition to Apple's Motion for Summary Judgment ¶¶ 31-39, hereafter, "Martin Decl.," Docket Item No. 540 (filed under seal).)

attempting to monopolize the relevant market." Id. Plaintiffs offer the following evidence to show that Defendant engaged in such conduct:

(1) Defendant began its redesign of FairPlay, which would be released in iTunes 4.7, in May 2004, a month after Defendant refused to license FairPlay to its competitor RealNetworks.[17]

(2) A number of record labels approved of RealNetworks' technology, and several labels entered into agreements with RealNetworks to have RealNetworks sell their music in its online store.[18]

(3) Defendant released a public statement stating that it was "investigating the [legal] implications" of RealNetworks' actions, and cautioning customers that "when [Defendant] update[s its] iPod software from time to time it is highly likely that [the] Harmony technology will cease to work with current and future iPods."[19]

(4) After it launched Harmony, RealNetworks saw an "immediate and dramatic increase" in its share of the audio digital file market, while Defendant's share of that market "fell below 70%" for the first time since the launch of iTS.[20]

The Court considers those pieces of evidence relevant to proving that Defendant engaged in conduct constituting an anticompetitive abuse or leverage of monopoly power, or a predatory or exclusionary means of attempting to monopolize the relevant market.[21]

### I. RealNetworks's Proposal to License FairPlay

At issue is whether Defendant's refusal to license FairPlay to RealNetworks was anticompetitive conduct.

In general, under antitrust law "there is no duty to aid competitors." Verizon Comm., Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398, 411 (2004). An exception to this rule may arise if there is a "unilateral termination of a voluntary (*and thus presumably profitable*) course of

---

[17] (SJ Opp'n at 5; Declaration of Bonny E. Sweeney in Support of Plaintiffs' Memorandum in Opposition to Apple's Motion for Summary Judgment, Ex. 21, hereafter, "Sweeney Decl.," Docket Item No. 515 (filed under seal).)

[18] (SJ Opp'n at 6-7; Sweeney Decl., Exs. 1-4.)

[19] (SJ Opp'n at 7; Sweeney Decl., Ex. 29.)

[20] (SJ Opp'n at 7; Sweeney Decl., Exs. 11, 55.)

[21] Because the second and fourth pieces of evidence produced by Plaintiffs–namely, that record labels entered into agreements with RealNetworks and that Defendant lost market share–do not relate to any *conduct* of Defendant, they are irrelevant to the Court's analysis. See Tyco Health Care Group, 592 F.3d at 1000 (stating that a plaintiff must prove that "some *conduct* of the monopolist" was an abuse or leverage of monopoly power or a means of attempting to monopolize the relevant market) (emphasis added).

9

dealing" between two parties. Id. at 409 (emphasis in original). Liability under Section 2 on the basis of a duty to aid a competitor "can arise when a defendant voluntarily alters a course of dealing and 'anticompetitive malice' motivates the defendant's conduct." Safeway, Inc. v. Abbott Lab., Nos. C 07-05470 CW, C 07-5985 CW, C 07-6120 CW, C 07-5702 CW, 2010 WL 147988, at *6 (N.D. Cal. Jan. 12, 2010).

Here, Plaintiffs present no evidence that Defendant had a prior course of dealing with RealNetworks. Instead, Plaintiffs contend that under Ninth Circuit law, Defendant's unilateral refusal to license its intellectual property to RealNetworks was an antitrust violation even in the absence of a prior course of dealing. (SJ Opp'n at 18-20.) However, Plaintiffs' reliance on Image Technical Services, Inc. v. Eastman Kodak Co.[22] in support of their contention is misplaced. In Image Technical Services, the Court was addressing "a situation in which a monopolist made a conscious choice to change an established pattern of distribution to the detriment of competitors." Id. at 1211. Thus, its holding does not apply where, as here, there is no evidence of a prior course of dealing.

Plaintiffs' reliance on this Court's December 20 Order is also misguided. In its December 20, 2006 Order, the Court read Trinko as not confining a refusal-to-deal claim to "cases in which a prior course of dealing exists." (See December 20 Order at 13.) However, the Ninth Circuit has since clarified that a refusal-to-deal claim, under Trinko, requires the "unilateral termination of a voluntary and profitable course of dealing" between competitors. See LiveUniverse, Inc. v. MySpace, Inc., 304 Fed. Appx. 554, 556 (9th Cir. 2008) (observing that the Ninth Circuit now recognizes "the narrow scope of the refusal to deal exception").

Accordingly, the Court finds that Defendant's refusal to license FairPlay to RealNetworks was not anticompetitive conduct that would give rise to Section 2 liability.

---

[22] 125 F.3d 1195 (9th Cir. 1997).

10

### ii. Defendant's Public Statement

At issue is whether Defendant's public statement was anticompetitive conduct.

To rise to the level of an antitrust violation, a competitor's disparaging statement "must overcome a presumption that the effect on competition" of the statement "was de minimis." Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc., 108 F.3d 1147, 1152 (9th Cir. 1997). A plaintiff may overcome this de minimis presumption by proving that the representations were: "(1) clearly false; (2) clearly material; (3) clearly likely to induce reasonable reliance; (4) made to buyers without knowledge of the subject matter; (5) continued for prolonged periods; and (6) not readily susceptible of neutralization or other offset by rivals." Id. A plaintiff "must satisfy *all* six elements to overcome [the] de minimis presumption." Id. (emphasis in original).

Here, Plaintiffs present no evidence to overcome the de minimis presumption. In particular, Plaintiffs' evidence indicates that Defendant's public statement was a single event, and was not "continued for prolonged periods." Accordingly, the Court finds that Defendant's public statement was not anticompetitive conduct that would give rise to Section 2 liability.

In sum, the Court finds that the undisputed evidence shows that iTunes 4.7 was a genuine improvement. Further, Plaintiffs present no evidence that Defendant engaged in conduct associated with its introduction of iTunes 4.7 that would give rise to Section 2 liability. Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiffs' Section 2 claim as to Defendant's introduction of iTunes 4.7.

### b. iTunes 7.0

At issue is whether Defendant's introduction of iTunes 7.0 constituted a genuine improvement. Defendant contends that iTunes 7.0 included improvements to FairPlay that prevented third-party applications from corrupting the iPod by "injecting" content onto its internal

11

database.[23] (SJ Motion at 9-10.) Plaintiffs respond that iTunes 7.0 did not prevent corruption of the iPod, but instead made the software worse by magnifying small errors into enormous errors which treated the database as being devoid of data. (SJ Opp'n at 10-12.)

Here, Defendant presents evidence that iTunes 7.0 was designed to prevent iPod corruption as follows:

(1) Third-party applications like RealPlayer could corrupt the iPod by modifying the iPod's internal database and adding foreign files to it.[24]
(2) To guard against the risk of corruption, the new code included in iTunes 7.0 ensured that only iTunes could write to the iPod's internal database.[25]

In response, Plaintiffs provide the following evidence, based on the testimony of Plaintiffs' expert, David Martin:[26]

(1) Adding foreign files to the iPod's internal database would not corrupt the iPod, because one of the intended functions of the iPod is to act as an external disk, and for RealNetworks to treat the iPod as an external disk would introduce no more risk of corruption than would already exist when an iPod user treats the iPod as an external disk.[27]
(2) The new code included in iTunes 7.0 did not guard against the risk of corruption, but actually made the software worse, because it transformed small errors in the database that did not meaningfully interfere with the user experience into enormous errors that treated the database as devoid of all data.[28]

In light of the parties' conflicting evidence, the Court finds that it is unable to determine, as a matter of law, that iTunes 7.0 was introduced to guard against the risk of corruption and was

---

[23] (SJ Motion at 9-10; Apple's Reply in Support of its Motion for Summary Judgment at 9-12, hereafter, "SJ Reply," Docket Item No. 546 (filed under seal).)

[24] (SJ Reply at 9-10; Kelly Decl. ¶¶ 37-38; Declaration of Augustin Farrugia in Support of Defendant's Renewed Motion for Summary Judgment ¶¶ 20, 24, hereafter, "Farrugia Decl.," Docket Item No. 472 (filed under seal).)

[25] (SJ Reply at 10-11; Farrugia Decl. ¶¶ 20-24, 29-32; Declaration of Michael T. Scott in Support of Apple's Reply in Support of its Motion for Summary Judgment, Ex. 2 at 163-70, Docket Item No. 564 (filed under seal).)

[26] Martin is a professor of computer science whose research is in the areas of computer security and privacy. (See Martin Decl. ¶¶ 1-8; Id., Ex. A.)

[27] (SJ Opp'n at 11; Martin Decl. ¶¶ 56-63.)

[28] (SJ Opp'n at 11-12; Martin Decl. ¶¶ 70-76.)

12

therefore a genuine product improvement. Thus, the Court finds that Defendant is not entitled to summary judgment on Plaintiffs' Section 2 claim as to iTunes 7.0.

Accordingly, the Court DENIES Defendant's Motion for Summary Judgment on Plaintiffs' Section 2 claim as to iTunes 7.0.

**2. The UCL**

Defendant contends that Plaintiffs' UCL claim only survives if Plaintiffs' Sherman Act claim survives, and that without a valid Sherman Act claim there is no "unlawful" conduct to support Plaintiffs' UCL claim. (SJ Motion at 24.) Plaintiffs respond that because California courts have recognized that an unfair business act or practice need not violate antitrust law to be actionable under the UCL, Plaintiffs' UCL claim survives whether or not its Sherman Act claim survives. (SJ Opp'n at 24-25.)

Under California law, if the "same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason," then the "determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers." Apple, Inc. v. Psystar Corp., 586 F. Supp. 2d 1190, 1204 (N.D. Cal. 2008) (quoting Chavez v. Whirlpool Corp., 93 Cal. App. 4th 963, 975 (Cal. Ct. App. 2001)).

Here, in its June 29 Order, the Court stated that Plaintiffs could state a UCL claim under the "unlawfulness" prong of the UCL if Plaintiffs adequately stated a Section 2 claim. (June 29 Order at 8.) As discussed previously, the Court has found that Defendant is entitled to summary judgment on its Section 2 claim as to iTunes 4.7, but not as to iTunes 7.0. Thus, Defendant is also entitled to summary judgment on its UCL claim as to iTunes 4.7, but not as to iTunes 7.0. See Psystar, 586 F. Supp. 2d at 1204.

Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiffs' UCL claim as to iTunes 4.7. The Court DENIES Defendant's Motion for Summary Judgment on Plaintiffs' UCL claim as to iTunes 7.0.

### B. Class Certification

Plaintiffs seek to certify a damages class under Rule 23(b)(3), seeking damages for the supracompetitive price paid for iPods as a result of Defendant's alleged anticompetitive conduct. (Class Certification Motion at 1, 16.) Defendant contends that: (1) Plaintiffs fail to demonstrate a class-wide method of proving impact and damages; and (2) Plaintiffs have also failed to carry their burden to show that resellers may properly be included in the Class.[29]

As discussed previously, the Court earlier certified classes in this case under both Rule 23(b)(2) and Rule 23(b)(3). (See December 22 Order.) The Court later *sua sponte* decertified those classes without prejudice. (See December 21 Order.) However, the Court only decertified the classes in order to reexamine Plaintiffs' Sherman Act claims. (December 21 Order at 2-3, 10-11.) Because the Court finds that there is a genuine issue of fact as to whether Plaintiffs can state a claim under the Sherman Act for iTunes 7.0, the Court's earlier findings that Plaintiffs' proposed class satisfies the requirements of Rule 23(a) and 23(b)(3) still stand. (See December 22 Order at 4-13.)

However, at this time, the Court finds that it lacks information necessary to certify the class. Accordingly, the Court DENIES as premature Plaintiffs' Motion for Class Certification, and sets a hearing to address the issues of how the class should be defined and the length of the class period, in light of the Court's disposition of the Motion for Summary Judgment.

### V. CONCLUSION

The Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment as follows:

 (1) The Court GRANTS Defendant's Motion for Summary Judgment on all of Plaintiffs' claims as to iTunes 4.7; and

---

[29] (Apple's Opposition to Renewed Motion for Class Certification at 8-21, hereafter, "Class Certification Opp'n," Docket Item No. 512 (filed under seal).)

      (2)      The Court DENIES Defendant's Motion for Summary Judgment on all of Plaintiffs' claims as to iTunes 7.0.[30]

The Court DENIES as premature Plaintiffs' Motion for Class Certification and orders as follows:

      (1)      The Court sets **June 27, 2011 at 9 a.m.**, as a further hearing on Plaintiffs' Motion for Class Certification;

      (2)      On or before **June 6, 2011**, the parties shall file simultaneous Supplemental Briefs addressing the issues of how the class should be defined and the length of the class period in light of the Court's ruling on Defendant's Motion for Summary Judgment.

Dated: May 19, 2011

JAMES WARE
United States District Chief Judge

---

[30] In light of the Court's disposition of Defendant's Motion for Summary Judgment, the Court DENIES as moot Plaintiffs' Notice of Motion and Motion to File Under Seal Plaintiffs' Submission of Supplemental Evidence from the Deposition of Steve Jobs in Support of Plaintiffs' Opposition to Summary Judgment and Exhibits 1-3, 5 to the Declaration of Alexandra S. Bernay Pursuant to Local Rule 79-5(b)-(c), Docket Item No. 598, and Plaintiffs' Motion for Leave to File Supplemental Evidence from the Deposition of Steve Jobs in Support of Plaintiffs' Opposition to Apple's Motion for Summary Judgment, Docket Item No. 599.

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alexandra Senya Bernay xanb@rgrdlaw.com
Alreen Haeggquist alreenh@zhlaw.com
Andrew S. Friedman afriedman@bffb.com
Bonny E. Sweeney bonnys@rgrdlaw.com
Brian P Murray bmurray@murrayfrank.com
Carmen Anthony Medici cmedici@rgrdlaw.com
Caroline Nason Mitchell cnmitchell@jonesday.com
Craig Ellsworth Stewart cestewart@jonesday.com
David Craig Kiernan dkiernan@jonesday.com
Elaine A. Ryan eryan@bffb.com
Francis Joseph Balint fbalint@bffb.com
George A. Riley griley@omm.com
Helen I. Zeldes helenz@zhlaw.com
Jacqueline Sailer jsailer@murrayfrank.com
John J. Stoia jstoia@rgrdlaw.com
Michael D Braun service@braunlawgroup.com
Michael D. Braun service@braunlawgroup.com
Michael Tedder Scott michaelscott@jonesday.com
Robert Allan Mittelstaedt ramittelstaedt@jonesday.com
Roy Arie Katriel rak@katriellaw.com
Thomas J. Kennedy tkennedy@murrayfrank.com
Thomas Robert Merrick tmerrick@rgrdlaw.com
Todd David Carpenter tcarpenter@bffb.com

**Dated: May 19, 2011**          **Richard W. Wieking, Clerk**

                                                **By:   /s/ JW Chambers**
                                                     **Sue Imbriani**
                                                     **Courtroom Deputy**

**United States District Court**
For the Northern District of California