Robert A. Mittelstaedt #60359
ramittelstaedt@jonesday.com
Craig E. Stewart #129530
cestewart@jonesday.com
David C. Kiernan #215335
dkiernan@jonesday.com
Michael T. Scott #255282
michaelscott@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:   (415) 626-3939
Facsimile:    (415) 875-5700

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION. | Case No. C 05-00037 JW (HRL)<br><br>[CLASS ACTION]<br><br>**DECLARATION OF MICHAEL SCOTT IN SUPPORT OF APPLE INC.'S SUPPLEMENTAL BRIEF RE CLASS CERTIFICATION** |

1.   I am an associate in the law firm of Jones Day, located at 555 California Street, 26th Floor, San Francisco, CA 94104. I submit this declaration in support of Apple's Supplemental Brief re Class Certification. The facts stated in this declaration are true and based upon my own personal knowledge, and if called to testify to them, I would competently do so.

2.   Attached as Exhibit 1 is a true and correct copy of excerpts of the deposition of Roger Noll, taken on April 7, 2011, in San Francisco, CA.

/

/

/

- 1 -

Decl. ISO Apple Inc.'s Supplemental Brief
C 05 00037 JW (HRL)

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 6th day of June, 2011 in San Francisco, California.

                                                  /s/Michael T. Scott
                                                  Michael T. Scott

SFI-699501v1

Decl. ISO Apple Inc.'s Supplemental Brief
C 05 00037 JW (HRL)

# EXHIBIT 1

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3                     SAN JOSE DIVISION
 4                          ---oOo---
 5   THE APPLE iPOD iTUNES
     ANTITRUST LITIGATION
 6
 7                              No.   C-05-00037-JW(RS)
 8
                        /
 9   _____
10
11
12         VIDEOTAPED DEPOSITION OF ROGER G. NOLL
13                         VOLUME I
14                     (Pages 1 to 215)
15
16          Taken before ERIN F. ROBINSON
17                     CSR NO. 12199
18                     April 7, 2011
19
20
21
22
23
24
25
```

6

1  please swear in the witness.
2                    ROGER G. NOLL,
3              sworn as a witness,
4              testified as follows:
5  EXAMINATION BY MR. MITTELSTAEDT:
6       Q.  State your name and business address, please.
7       A.  Roger Noll, and my -- I'm a professor emeritus
8  at Stanford.  I still have an office there, which means
9  I'm retired and not technically an employee, but it's
10 still my office.
11      Q.  Do you have another business office?
12      A.  No.
13      Q.  What did you do to prepare for today's
14 deposition?
15      A.  Just read my most recent report.
16      Q.  Anything else?
17      A.  No.
18      Q.  Did you meet with counsel?
19      A.  Just five minutes before we started.
20      Q.  And what did they say to you?
21      A.  We talked about the BCS system.
22      Q.  The what?
23      A.  The BCS system, whether it was -- the noise is
24 a little bit weird here.  The BCS system and whether
25 it's an antitrust.

146

1    A.   The regression as specified does not calculate
2 average iPod prices.  It does calculate the average
3 effect of a specific variable on average iPod prices
4 taking into account all the other sources of
5 differences.  But it's not true that it is just an
6 average.  All regressions are an average to some
7 degree, but the partial effect of a time period is an
8 average over those iPods that were sold in that time
9 period.
10   Q.   Why didn't you use two different Harmony
11 periods reflecting when Harmony became operative again
12 in April of 2005?
13   A.   Well, I did have two periods of Harmony.
14 Harmony disabled is not that they're all disabled.
15   Q.   Is not what?
16   A.   It's not that they're all disabled.  This is in
17 my report at length.  The time of disabling of Harmony
18 is not the time of removal of Harmony as potential
19 influence on prices.
20   Q.   I'm not asking that.  Were you aware that after
21 Harmony was disabled in 2004, it became active again?
22        MS. SWEENEY:  I'm going to object.  You
23 interrupted witness who was trying to answer your
24 question, and you wouldn't let him continue his
25 response.  Please don't interrupt him.

Aiken Welch Court Reporters    R. Noll, Vol. 1    04/07/2011

BY MR. MITTELSTAEDT:

Q. Go ahead.

A. So we have we have the act of disablement, and we're sort of looking at the effect of all the periods there. There still is use of Harmony during that entire period. I don't have enough information about Harmony in April of -- to know if there was any significant effect on anything.

Before I would put that as a separate variable in the regression, I would want to do things like I did here, which is did that period have any effect on real network's sales in the audio download market? If it didn't, then it didn't matter from the standpoint of the effects on the market for portable digital media players. And I don't have that information. I don't know what it is.

Q. Have you asked for that information?

A. No, I've looked for it. I just don't find it. I haven't found it.

Q. What do you understand happened with respect to Harmony in April of 2005?

A. I'm not sure what happened because there are conflicting versions of what had happened, and I'm not sure what happened. There's two parts to the story, which is did they really succeed in overcoming the

1  software upgrades, and then No. 2 would be did
2  consumers actually take advantage of it.  And I suspect
3  the answer to the first is yes, and I suspect the
4  answer to the second is no because the consumers had
5  already experienced the prior disabling.
6      So that's my expectation.  But I don't have
7  enough information to say anything more than that, and
8  that's another issue that is relevant to how you would
9  eventually specify this equation.
10     Q.  Let's say Harmony came back into use in April
11 of 2005 and remained in use until sometime the
12 following year.  How would you want to account for that
13 in doing a regression to show impact or damages?
14     A.  Well, you could add another period.  But it's
15 not obvious -- it doesn't work here, either.  Because
16 remember it wasn't until March that you couldn't access
17 ITMS with the old version as well.  So there isn't
18 really a disjointedness.  For those people who wanted
19 to use Harmony, they could continue to use it through
20 March anyway.  And so, you know, a period of a couple
21 of weeks, a few weeks isn't going to -- not much is
22 going to happen then.
23     So there's more similarity than difference
24 between October through March and April from then on
25 because of the fact that those who really wanted to use

```
                                                          215

1    STATE OF CALIFORNIA    )
2                           )
3    COUNTY OF ALAMEDA      )
4
5         I, ERIN F. ROBINSON, do hereby certify:
6         That ROGER G. NOLL, in the foregoing deposition
7    named, was present and by me sworn as a witness in the
8    above-entitled action at the time and place therein
9    specified;
10        That said deposition was taken before me at said
11   time and place, and was taken down in shorthand by me,
12   a Certified Shorthand Reporter of the State of
13   California, and was thereafter transcribed into
14   typewriting, and that the foregoing transcript
15   constitutes a full, true and correct report of said
16   deposition and of the proceedings that took place;
17        That before completion of the proceedings,
18   review of the transcript was requested.
19        IN WITNESS WHEREOF, I have hereunder subscribed my
20   hand this 12th day of April 2011.
21
22
23        _____
          ERIN F. ROBINSON, CSR NO. 12199
24        State of California
25
```