ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN J. STOIA, JR. (141757)
BONNY E. SWEENEY (176174)
THOMAS R. MERRICK (177987)
ALEXANDRA S. BERNAY (211068)
CARMEN A. MEDICI (248417)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
johns@rgrdlaw.com
bonnys@rgrdlaw.com
tmerrick@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com

THE KATRIEL LAW FIRM
ROY A. KATRIEL (*pro hac vice*)
1101 30th Street, N.W., Suite 500
Washington, DC  20007
Telephone:  202/625-4342
202/330-5593 (fax)
rak@katriellaw.com

Co-Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTI-TRUST LITIGATION | Lead Case No. C-05-00037-JW(HRL) |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' RESPONSE TO THE COURT'S JUNE 22, 2011 ORDER REQUIRING FURTHER SUPPLEMENTAL BRIEFING |
| ALL ACTIONS. | |

JUDGE:    Chief Judge James Ware
DATE:     June 27, 2011
TIME:     9:00 a.m.
CTRM:     5 – 17th Floor

**REDACTED VERSION**

633498_1

## I.   INTRODUCTION

In the Court's June 22, 2011 Order, the Court requested simultaneous supplemental briefs addressing: (1) the specific definition of the products at issue during the Class Period; (2) the geographic scope of the Class; and (3) the effect of the Supreme Court's decision in *Dukes*[1] on Plaintiffs' Motion for Class Certification.[2]   Plaintiffs here provide the Court the level of specificity requested regarding the Class definition and explain that the Supreme Court's decision in *Dukes* does not present any issues which would affect certification in this antitrust matter.[3]   The Court previously found "Plaintiffs' proposed class satisfies the requirements of Rule 23(a) and 23(b)(3)."[4] Plaintiffs' detailed description of the specific iPod models at issue, coupled with an explanation of the geographic scope of the class, accurately identifies an ascertainable class.   As explained below, the Supreme Court's recent decision in *Dukes* does not affect the Court's previous order regarding certification and is no impediment to certification going forward.   A class action here is the fairest and most efficient means of litigating this antitrust case.

## II.   THE PRODUCTS COVERED BY PLAINTIFFS' CLASS DEFINITION

In order to ensure that the definition is "precise, objective, and presently ascertainable," Plaintiffs provide the Court as Exhibit A, a proposed Class definition that details the specific models of Apple products that would be included in a certified Class.   *See Manual for Complex Litigation (Fourth)* ("Manual") §21.222 (2004); Ex. A.[5]   These models include all of the Apple iPod models that were released and/or shipped for sale on and after September 12, 2006, the start date of the

---

[1]     *Wal-Mart, Inc. v. Dukes*, No. 10-277 ("*Dukes*" or "Slip Op.") (June 20, 2011).

[2]     Order requiring further supplemental briefing (Dkt. No. 639) ("June 22, 2011 Order)" at 2.

[3]     Rather than filing an additional response to Apple's Request for Leave and Supplemental Brief re *Wal-Mart Stores Inc. v. Dukes* (Dkt. No. 638) ("Apple Motion"), Plaintiffs respond to both the Court's June 22, 2011 Order and Apple's Motion in this filing.

[4]     Order regarding summary judgment (Dkt. No. 627) ("May 19, 2011 Order") at 14 (citing initial class certification order (Dkt. No. 196) (December 22, 2008) at 4-13).

[5]     All references to "Ex." and "Exs." are to the Declaration of Bonny E. Sweeney in Support of Plaintiffs' Response to the Court's June 22, 2011 Order Requiring Further Supplemental Briefing, filed concurrently.

1   proposed Class Period.  Using materials from Apple's website as well as reseller price lists and the

2   reseller transaction data produced in discovery, Plaintiffs have identified 29 iPod models that should

3   be included in the Class definition.

4        This level of specificity will permit identification of individual class members, aid in class

5   notice procedures and provide all parties with a workable roadmap for trial in this action.  Plaintiffs

6   believe "the class definition captures all members necessary for efficient and fair resolution of

7   common questions of fact and law in a single proceeding."  Manual, §21.222.

8   **III.    THE GEOGRAPHIC SCOPE OF THE CLASS**

9        Apple sells its products, including the 29 iPod models listed in Plaintiffs' Exhibit A, through

10  a variety of means in the United States and worldwide.  Ex. A.  Apple sells its products in its retail

11  stores and online to customers in the United States and around the world.[6]  Apple also sells its

12  products directly to resellers in the United States.[7]

13       In this action, Plaintiffs seek to certify a Class consisting only of those persons and entities in

14  the United States who purchased any of the 29 iPod models listed in Exhibit A from September 12,

15  2006 through March 31, 2009 by way of Apple's U.S. retail stores, Apple's U.S. online portal or

16  through Apple's U.S. reseller channel.  Ex. A.  ███████████████████

17  ████████████████████████████████████████████

18  ████████████████████████████████████████████

19  ████████████████████████████████████████████

20  ██████████

21       Plaintiffs' damages model is based on the overcharge all purchasers paid for iPods.  Apple's

22  exclusionary conduct allowed the company to charge supracompetitive prices on all iPods sold

23  during the relevant period.  As Plaintiffs demonstrated in their Reply in Support of Class

24  _____

25  [6]    Apple has retail stores in 11 countries, including the United States.  *See* http://www.apple.com/
     retail/storelist/.  Additionally, Apple sells its products online.  http://store.apple.com/us.  Apple's

26  online site has a button on its website for international sales, which links to more than 30 countries
     *See* http://store.apple.com/Catalog/US/Images/intlstoreroutingpage.html.

27  [7]    *See* http://www.apple.com/buy/.

28

PLAINTIFFS' RESPONSE TO THE COURT'S JUNE 22, 2011 ORDER REQUIRING
FURTHER SUPPLEMENTAL BRIEFING - C-05-00037-JW(HRL)                               - 2 -

Certification, ███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

*See* Reply Declaration of Roger G. Noll (Dkt. No. 567) ("Noll Reply Decl.") at 28 ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ the Class is

readily ascertainable and damages easily calculable.

## IV. THE SUPREME COURT'S DECISION IN *DUKES* DOES NOT AFFECT THE PROPRIETY OF CERTIFICATION HERE

### A. The *Dukes* Decision

The Supreme Court's decision in *Dukes* is the Court's most recent pronouncement on the standards applicable to class certification. That opinion, however, does not affect the propriety of class certification here.

The putative class representatives in *Dukes* alleged workplace gender discrimination under Title VII of the Civil Rights Act of 1964. The case involved no antitrust claims. This distinction is significant, because, as the United States Supreme Court has also explained, "predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231 (1997). The Supreme Court in *Dukes* did not address predominance under Rule 23(b)(3). The *Dukes* court below certified a nationwide class of 1.5 million persons for injunctive relief and backpay under Rule 23(b)(2). As the majority noted, "[t]he applicability of these provisions [Rule 23(b)(1) and 23(b)(3)] to the plaintiff class is not before us." Slip Op. at 5 n.2; *see also id.* at 1 (Ginsberg, J. joined by Breyer, J., Sotomayor, J., and Kagan, J., dissenting and concurring) ("[w]hether the class the plaintiffs describe meets the specific requirements of Rule 23(b)(3) is not before the Court").

As an initial step in considering whether it was proper to certify a class under Rule 23(b)(2), the Supreme Court examined whether "questions of law or fact common to the class" existed under

633498_1

PLAINTIFFS' RESPONSE TO THE COURT'S JUNE 22, 2011 ORDER REQUIRING
FURTHER SUPPLEMENTAL BRIEFING - C-05-00037-JW(HRL)                    - 3 -

1   Rule 23(a)(2). Slip Op. at 9.  In discussing the commonality requirement, the Supreme Court said

2   that a plaintiff "must be prepared to prove that there are *in fact* sufficiently numerous parties,

3   common questions of law or fact, etc." Slip Op. at 10 (emphasis in original).  A court must satisfy

4   itself after a "rigorous analysis" that the prerequisites of Rule 23(a) have been satisfied. *Id.* (citing

5   *Gen'l Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364 (1982)).  The Supreme Court

6   did not require that a plaintiff prove its case on the merits at the class certification stage; it merely

7   required that the common questions identified pursuant to Rule 23(a)(2) be susceptible to common

8   answers. Slip Op. at 8-9.  Furthermore, the Supreme Court made it clear that for purposes of Rule

9   23(a)(2), "'[e]ven a single [common] question'" will suffice. *Id.* at 19.

10          The plaintiffs in *Dukes* attempted to demonstrate the common issue of company-wide gender

11   discrimination through circumstantial evidence consisting of: (a) anecdotes from 120 of Wal-Mart's

12   female employees; (b) testimony from a sociologist about Wal-Mart's corporate culture; and

13   (c) testimony from a statistician (working in conjunction with a labor economist) about pay and

14   promotion disparities in certain of Wal-Mart's 3,400 stores. Slip Op. at 13-16. The Supreme Court

15   rejected this approach and, based on *Falcon*, found that the plaintiffs must show either that Wal-Mart

16   used a biased testing procedure for employee advancement or operated under a general policy of

17   discrimination. *Id.* at 12-13.

18          The *Dukes* case and the instant case share very little, if anything, in common.[8]  Here, as the

19   record demonstrates and the Court has acknowledged (and Apple does not contest), there are a

20   number of "common contention[s]," because Apple's conduct has been uniform toward all Plaintiffs

21   and the effect of Apple's conduct – the overcharge – was felt by each plaintiff. Everyone in the

22   Class who purchased one of the specific iPod models listed in the Class definition shares a number

23   of issues in common,[9] including:

---

25   [8]      Apple does not even bother to argue that Plaintiffs do not meet commonality, which is
26   primarily what the *Dukes* opinion concerns.

27   [9]      *See also* December 22, 2008 Order at 6-8 (where the Court lists common questions in finding
     Plaintiffs satisfied the commonality prong of Rule 23).

1    • the existence of the digital music player market;

2    • Apple's admitted market power in that market;

3    • Apple's uniform pricing scheme; and

4    • the measurement of Apple's overcharge.

5    In short, the *Dukes* decision does nothing to alter the Court's earlier findings that "Plaintiffs'

6    proposed class satisfies the requirements of Rule 23(a) and 23(b)(3)."[10]

7    **B.    *Dukes* Does Not Apply to Professor Noll's Opinions on Class Certification**

8    Despite *Dukes* being inapplicable on its facts, Apple uses the Supreme Court's opinion as an

9    opportunity to argue (again) that a full-blown merits expert report must be submitted at the class-

10    certification stage. *Dukes* does not support this conclusion. Rather than discuss how the *Dukes*

11    opinion affects this case, Apple again attacks Professor Noll's report, repeating what it has said at

12    least seven times.[11]

13    As this Court has recognized, sometimes class certification issues are inextricably

14    intertwined with merits issues. December 22, 2008 Order at 6. The *Dukes* opinion is instructive in

15    illustrating when a Court should look to the merits on class certification. In *Dukes*, plaintiffs alleged

16    that they suffered from a "pattern or practice of discrimination." Slip Op. at 11. Because *Dukes* is

17    an employment case, "the crux of the inquiry" in that case was the reason for a particular

18    employment decision. *Id.* The Supreme Court found that in order to show commonality, all of the

19    plaintiffs have to share something in common – namely what the common employment decision was

20    or what caused that employment decision to be made. Slip Op. at 11-13.

21

22    10    May 19, 2011 Order at 14.

23    11    In addition to Apple's Motion, Apple has raised this same issue, with the same stance, in its
24    opposition to class certification (Dkt. No. 529) at 19-20 (because Professor Noll did not complete
damages analysis, a class cannot be certified); objections to plaintiffs' evidence filed in support of
reply (Dkt. No. 572) at 1-2 (Professor Noll's regression analysis lacks indicia or reliability.); motion
25    for leave to file supplemental objections (Dkt. No. 579) at 2 (Professor Noll's model is not a "valid
damages model."); supplemental objections to declaration of Roger G. Noll (Dkt. No. 582) at 2-3
26    ("His regression is not a workable, valid damages model."); opposition to motion to exclude
opinions of Dr. Michelle M. Burtis (Dkt. No. 597) at 9-10 (Professor Noll has not performed a final
27    damages analysis.); and throughout its improperly-filed second Burtis Report (Dkt. No. 596).

28

1       In order to show that putative class plaintiffs shared something in common, they introduced

2   an expert report that purportedly showed that Wal-Mart operated under a "general policy of

3   discrimination." Slip Op. at 13. In order to determine whether commonality was satisfied in an

4   employment law case, the district court would have to look at the merits of the expert report, so it

5   could see if it showed a pattern of discrimination. It did not. According to the Court, the report did

6   not "'determine with any specificity how regularly stereotypes play a meaningful role in

7   employment decisions at Wal-Mart. At his deposition . . . Dr. Bielby concluded that he could not

8   calculate whether 0.5 or 95 percent of the employment decisions at Wal-Mart might be determined

9   by stereotyped thinking.'" *Id.* (citing the lower court). This expert report was "worlds away from

10  'significant proof' that Wal-Mart 'operated under a general policy of discrimination'" and failed to

11  satisfy the commonality prong of Rule 23. Slip Op. at 14.[12]

12      Here the situation is starkly different, rendering *Dukes* inapplicable. Here, Professor Noll's

13  report clearly showed that Apple's exclusionary conduct had a common impact on members of the

14  class, that common issues predominate, and that damages can be proved through a common

15  methodology. Apple cannot contend that Professor Noll's report is a "world [] away from

16  significant proof." Nor does Apple argue that even if everything Professor Noll said was true, that

17  his report would not support Plaintiffs' claims.

18      In sum, unlike in *Dukes*, Plaintiffs allege Apple's anticompetitive conduct affected all buyers

19  of specific iPod models in precisely the same way, and have submitted extensive proof, through the

20  expert report of a renowned economist whose credentials are unchallenged, that Apple's conduct had

21  a common impact on members of the class. Thus, under any "rigorous analysis," Plaintiffs have

22  established that common issues exist. Slip Op. at 10. Under *Dukes*, that showing alone would be

23  sufficient to satisfy the commonality requirement of Rule 23(a). Plaintiffs have also established

---

[12]   Similarly, the Supreme Court found the other experts' reports unpersuasive simply because of the content. Slip Op. at 15-18. The Court found that *even if everything the expert said was true,* "it would be insufficient to establish that respondents' theory can be proved on a classwide basis" Slip Op. at 16.

1   common issues as to the impact of, and damages caused by, Apple's anticompetitive conduct

2   through Professor Noll's report.

3        Professor Noll developed a working model which showed that damages exist, that Apple's

4   conduct impacted all members of the class, and that damages could be reliably measured using

5   information common to each member of the Class.[13]  Apple suggests that Plaintiffs must provide

6   trial-level proof of the exact amount of damages caused by Apple's exclusionary conduct related to

7   iTunes 7.0 by way of their expert's report.  This is not the standard that *Dukes* requires.  Instead,

8   what is required is that Plaintiffs establish that they can prove their claims with evidence common to

9   the class.[14]  This is the "essential question on which [plaintiffs'] theory of commonality depends"

10  and one that is easily demonstrated by Professor Noll's regression model.  Slip Op. at 14.

11       The *Dukes* opinion provides strong support for the certification of Plaintiffs' class in this

12  case.  Not only do Plaintiffs provide a working regression analysis, but their expert report suffers

13  from none of the problems that the experts in *Dukes* did.

14       **C.   Apple's Motion**

15       In Apple's Motion, Apple makes three arguments ostensibly showing how *Dukes* changed

16  the class-action litigation environment.  As discussed below, the snippets Apple plucks from *Dukes*

17  certainly do not signify a change in the litigation landscape, nor do they warrant a departure from

18  this Court's prior decisions.

19

20  _____

21  [13]    *See* Noll Reply Decl. at 39 ("The high degree of explanation of these regressions and the plausibility of the coefficients, notwithstanding the remaining problems with the underlying data,

22  demonstrate that the standard approaches to calculating damages on a class-wide basis that were outlined in my previous expert reports are feasible in this case."); *see also* Ex. D (Noll Depo.) at

23  113:4-11 ("Remember these are all issues about what's the best way to estimate a damage equation if you have complete information and enough time to estimate it.  My purpose here is to demonstrate

24  that a common formula for explaining prices is feasible."); Ex. D (Noll Depo.) at 94:1-5 ("Remember, this is about answering an assertion that Dr. Burtis made and [Apple] made in

25  [Apple's] opposition brief in which [Apple] said these regressions can't be done.  And this is proof they can be done.")

26  [14]    Contrary to Apple's assertions, Professor Noll has demonstrated that his model uses

27  methodologies and data common to the class to create a reliable damages estimate, without regard to whether the Class Period starts with the release of iTunes 4.7 or iTunes 7.0.

28

1    First, Apple argues that Plaintiffs' position is that there is a presumption in favor of class

2    certification. Apple Motion at 1. While misstating Plaintiffs' position, this statement has little to do

3    with satisfying the elements of Rule 23 or the *Dukes* case. Plaintiffs agree with the language that

4    Apple cites from *Dukes*: "[A]ctual, not presumed, conformance with Rule 23(a) remains . . .

5    indispensable." Slip Op. at 10. Contrary to Apple's implication, Plaintiffs trust this Court has

6    always required that all of the elements of Rule 23 are satisfied in order to certify the class.

7    Apple's second argument is similarly flawed. Apple argues that "district courts must inquire

8    into the merits of the plaintiff's claims when necessary to determine whether the requirements of

9    Rule 23 are met." Apple Motion at 1. This Court has already met that standard. In its December 22,

10   2008 Order granting class certification, the Court stated:

11       In fact "courts are not only at liberty to but must consider evidence which goes to the
         requirements of Rule 23 [at the class certification stage] even [if] the evidence may
12       also relate to the underlying merits of the case."

13   December 22, 2008 Order at 6.

14   *Dukes* does not alter the standard this Court must employ (and did employ, in this case) in

15   ensuring that the requirements of Rule 23 are met. Nor does *Dukes* in any way call into question the

16   rigorous analysis already performed by the Court in the prior class certification decision.[15]

17   Apple's third argument is that *Dukes* changes the standard for what is required of an expert at

18   the class-certification stage. Apple Motion at 1-2. As discussed above, Professor Noll's working

19   regression model easily satisfies even the most exacting standards.

20   **V.    CONCLUSION**

21   Plaintiffs have provided a detailed and workable Class definition explaining the exact

22   products at issue and geographic scope of the proposed Class. Plaintiffs have further demonstrated

23

24

25

26

---

27   [15]   As the Court previously held, "[a] district court may certify a class only if, after "rigorous analysis," it determines that the party seeking certification has met its burden." December 22, 2008

28   Order at 4 (quoting *Falcon*, 457 U.S. at 158-61).

1  | that *Dukes* does not affect the ability of this Court to certify a class.  Class certification is proper in

2  | this action.

3  | DATED:  June 23, 2011                         Respectfully submitted,

4  |                                              ROBBINS GELLER RUDMAN
   |                                                & DOWD LLP
5  |                                              JOHN J. STOIA, JR.
   |                                              BONNY E. SWEENEY
6  |                                              THOMAS R. MERRICK
   |                                              ALEXANDRA S. BERNAY
7  |                                              CARMEN A. MEDICI

8  |

9  |                                                    s/ Bonny E. Sweeney
   |                                              _____
   |                                              BONNY E. SWEENEY

10 |
   |                                              655 West Broadway, Suite 1900
11 |                                              San Diego, CA  92101
   |                                              Telephone:  619/231-1058
12 |                                              619/231-7423 (fax)

13 |                                              THE KATRIEL LAW FIRM
   |                                              ROY A. KATRIEL
14 |                                              1101 30th Street, N.W., Suite 500
   |                                              Washington, DC  20007
15 |                                              Telephone:  202/625-4342
   |                                              202/330-5593 (fax)

16 |
   |                                              Co-Lead Counsel for Plaintiffs
17 |
   |                                              BONNETT, FAIRBOURN, FRIEDMAN
18 |                                                & BALINT, P.C.
   |                                              ANDREW S. FRIEDMAN
19 |                                              FRANCIS J. BALINT, JR.
   |                                              ELAINE A. RYAN
20 |                                              TODD D. CARPENTER
   |                                              2901 N. Central Avenue, Suite 1000
21 |                                              Phoenix, AZ  85012
   |                                              Telephone:  602/274-1100
22 |                                              602/274-1199 (fax)

23 |                                              BRAUN LAW GROUP, P.C.
   |                                              MICHAEL D. BRAUN
24 |                                              10680 West Pico Blvd., Suite 280
   |                                              Los Angeles, CA  90064
25 |                                              Telephone:  310/836-6000
   |                                              310/836-6010 (fax)

26 |
   |                                              MURRAY, FRANK & SAILER LLP
27 |                                              BRIAN P. MURRAY
   |                                              JACQUELINE SAILER
28 |                                              275 Madison Avenue, Suite 801

PLAINTIFFS' RESPONSE TO THE COURT'S JUNE 22, 2011 ORDER REQUIRING
FURTHER SUPPLEMENTAL BRIEFING - C-05-00037-JW(HRL)                          - 9 -

New York, NY  10016
Telephone:  212/682-1818
212/682-1892 (fax)

GLANCY BINKOW & GOLDBERG LLP
MICHAEL GOLDBERG
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)

Additional Counsel for Plaintiffs

1                                <u>CERTIFICATE OF SERVICE</u>

2         I hereby certify that on June 23, 2011, I authorized the electronic filing of the foregoing with

3 the Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4 e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5 caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6 CM/ECF participants indicated on the attached Manual Notice List.

7         I certify under penalty of perjury under the laws of the United States of America that the

8 foregoing is true and correct.  Executed on June 23, 2011.

9

10                                      <u>s/ Bonny E. Sweeney</u>
                                   BONNY E. SWEENEY

11                                    ROBBINS GELLER RUDMAN
                                           & DOWD LLP

12                                    655 West Broadway, Suite 1900
                                   San Diego, CA  92101-3301

13                                    Telephone: 619/231-1058
                                   619/231-7423 (fax)

14

15                                    E-mail:   bonnys@rgrdlaw.com

16

17

18

19

20

21

22

23

24

25

26

27

28

633498_1

# Mailing Information for a Case 5:05-cv-00037-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Todd David Carpenter**
  tcarpenter@bffb.com,pjohnson@bffb.com,rcreech@bffb.com

- **Andrew S. Friedman**
  khonecker@bffb.com,rcreech@bffb.com,afriedman@bffb.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com,winkyc@zhlaw.com

- **Roy Arie Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com

- **Carmen Anthony Medici**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com

- **Thomas Robert Merrick**
  tmerrick@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com,ewallace@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,mlandsborough@jonesday.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Elaine A. Ryan**

eryan@bffb.com,nserden@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Michael Tedder Scott**
  michaelscott@jonesday.com,amhoward@jonesday.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **John J. Stoia , Jr**
  jstoia@rgrdlaw.com

- **Bonny E. Sweeney**
  bonnys@rgrdlaw.com,christinas@rgrdlaw.com,E_file_sd@rgrdlaw.com

- **Helen I. Zeldes**
  helenz@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)