Robert A. Mittelstaedt #60359
ramittelstaedt@jonesday.com
Craig E. Stewart #129530
cestewart@jonesday.com
David C. Kiernan #215335
dkiernan@jonesday.com
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     (415) 626-3939
Facsimile:      (415) 875-5700

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION  _____  This Document Relates To:  ALL ACTIONS | Lead Case No. C 05-00037 JW (HRL)  [CLASS ACTION]  **APPLE'S FURTHER SUPPLEMENTAL BRIEF RE CLASS CERTIFICATION**  Date:     June 27, 2011  Time:    9:00 a.m.  Place:    Courtroom 5, 17th Floor |

Apple submits this brief in response to the Court's June 22, 2011 order requesting supplemental briefs on three issues related to the pending motion for class certification.

*1.     Products Included in Class.*

As summarized in the section on the *Dukes* case, *infra* at 3-7, the requirements of Rule 23 have not and cannot be met in this case. But if any class were to be certified, it should be limited—under Plaintiffs' theory of the case—to iPod models that Plaintiffs prove were sold at elevated prices due to iTunes 7.0. The operative complaint contains no specific allegation that

iTunes 7.0, which was issued in September 2006, resulted in any price increase for **any** iPod model. Nor have Plaintiffs offered any evidence, lay or expert, to establish that iTunes 7.0 caused the price of any iPod model to increase. *See* Doc. 633, pp. 1-6; Doc. 638, pp. 2-3. Indeed, as previously noted, Plaintiffs' economic expert has not examined whether iTunes 7.0 had any impact on prices of any iPod model and admitted that he suspected that Plaintiffs' theory of a price increase would not work for iTunes 7.0. *See* Doc. 633, pp. 4-5. Making any overcharge theory even more untenable is the fact that, with or without the update, every iPod model could play DRM-free music regardless of source. By the fall of 2007, even RealNetworks was selling DRM-free music which could play on any iPod model. So were competitors like Wal-Mart and Amazon.com. These facts make it even more impossible for Plaintiffs to prove that the price of any iPod model was elevated by an inability to directly play music from one of many sources of music. Thus, there is no basis to include any iPod model in the class, much less all iPods sold in or after September 2006 as Plaintiffs propose.

As a factual matter, no iPod model introduced before September 2006 included the update challenged by Plaintiffs even if the model was sold after September 2006. *See* Doc. 473, p. 10 (Apple's Renewed Motion For Summary Judgment); Doc. 472, ¶¶ 31-32 (Farrugia Decl. Filed Under Seal) and Doc. 506, ¶ 2 (Errata to Farrugia Decl.). So even under Plaintiffs' theory, any class must be limited to iPod models with the challenged updates. The first model with that update was the second generation iPod nano, which first shipped in September 2006. Doc. 472, ¶ 31 and Doc. 506 ,¶ 2 (Errata to Farrugia Decl.).

### 2. *Geographic Scope of Class*.

The operative complaint seeks a class of "[a]ll persons or entities in the United States (excluding federal, state and local governmental entities, Apple, its directors, officers and members of their families) who purchased an iPod directly from Apple" during the class period. Doc. 321, ¶ 31. Apple understands this definition as limiting the requested class to persons who now reside in the United States and who purchased their iPod in this country. As the Court stated in its December 22, 2008 certification order, the claims are based on "domestic iPod purchases." Doc. 196, p. 8.

- 2 -

Apple's Further Supp. Br. Class Cert.
C 05-00037-JW (HRL)

Any attempt to seek a broader class would be untimely and improper for numerous other reasons including the inapplicability of the Sherman Act and the difficulty of accomplishing notice and ensuring the binding effect of any judgment adverse to Plaintiffs. If Plaintiffs request a broader class for their Sherman Act claim, Apple would request an opportunity to respond to Plaintiffs' arguments. As is, Apple assumes that Plaintiffs' request for a class under the Sherman Act is for domestic U.S. direct purchases by persons or entities residing now and at the time of purchase in the U.S.

Plaintiffs' class certification motion did not present any argument that the California Unfair Competition Law should apply to purchases outside the State of California. Any belated argument would be untimely and improper on other grounds including *inter alia* that, under a choice of law analysis, purchases in other states should be governed by the laws of those states. *See In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1028 (N.D. Cal. 2007) (declining to certify a nationwide class for a claim under the California UCL and antitrust statute). If Plaintiffs present argument on this topic, Apple requests an opportunity to respond to it.

### 3. <u>*Wal-Mart Stores Inc. v. Dukes*</u>

The claim on which Plaintiffs now seek certification is considerably different from the claims before the Court at the time of its 2008 certification decision (and even when this issue was briefed a few months ago before this Court's summary judgment decision). That fact taken together with the *Dukes* decision requires a fresh—and rigorous—review of whether Plaintiffs have "affirmatively demonstrate[d] [their] compliance with the Rule." *Slip Opinion,* p. 10. That demonstration must be tied to their current claim, not the claims that have been dismissed.

The premise of Plaintiffs' current claim is that iTunes 7.0 disadvantaged consumers who wanted to play DRM-protected music from RealNetworks' online digital music store directly on new iPod models equipped with that update. Consumers could still play RealNetworks' music directly on every iPod purchased before the date of iTunes 7.0 and on the iPod models launched before that date even if purchased later. Consumers could also play RealNetworks' music on new

- 3 -

Apple's Further Supp. Br. Class Cert.
C 05-00037-JW (HRL)

iPod models by simply "burning" the music to a CD and "ripping" it to the iTunes jukebox application on their computer.

Most fundamentally, none of the three Plaintiffs alleges or testified that he or she ever had any interest in obtaining music from RealNetworks, much less that they actually did so or that it impacted their decision on whether to buy an iPod.

Thus, Plaintiffs have not established commonality, typicality or that common issues predominate.

*Dukes* reiterated that the commonality and typicality requirements of Rule 23(a) "serve as guideposts for determining . . . whether the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 8, n. 5, quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157-158, n. 13 (1982). In 2008, when Plaintiffs were making the broad claim that use of DRM in Apple's online music store was unlawful, this Court found that the commonality and typicality requirements were met. That finding, however, should be revisited now that, in substance, Plaintiffs are alleging only that some hypothetical individuals who wanted to play RealNetworks' music on certain iPods after September 2006 would need to undertake the extra step of burning and ripping—with no claim that any Plaintiff ever obtained RealNetworks' music, that any of them ever wanted to play that music, directly or indirectly, on an iPod, or that their iPod purchasing decision had anything to do with whether they could directly play RealNetworks' music.

Given the change in Plaintiffs' claim, it would be appropriate to revisit the commonality/typicality finding even if *Dukes* had not imposed a heightened standard. But revisiting that issue is particularly appropriate now because, as the *Dukes'* dissent put it, the commonality requirement "is no longer 'easily satisfied'" and the criteria of Rule 23(b)(3) for certifying a damages class, including that common issues "predominate" over individual issues, is even "more demanding." *Dissent Slip Op.* at 8.

Plaintiffs do not satisfy their burden simply by **saying** that the impact of iTunes 7.0 on other consumers (*i.e.*, those who wanted to buy music from RealNetworks for direct use on an

iPod) might have caused iPod prices to increase. As *Dukes* made clear, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Slip Op.* at 10. He must do so even if it is an issue that he "will surely have to prove *again* at trial . . ." *Id.* at 11, n. 6 (the Court's emphasis).

*Dukes* required Title VII plaintiffs to present "convincing proof of a companywide discriminatory pay and promotion policy" in part because without such proof the trial would devolve into individual issues. *Id.* at 19. Likewise, *Dukes* approved of the requirement in securities fraud cases that "plaintiffs seeking 23(b)(3) certification must prove that their shares were traded on an efficient market." *Id.* at 11, n. 6. Without that proof, the case would devolve into individualized proof of reliance by individual investors. *Id.* By the same reasoning, Plaintiffs here should be required to prove their theory that iTunes 7.0 elevated iPod prices. Without that proof, this case would devolve into individualized proof of the other types of alleged harm that Plaintiffs' expert posits but does not claim can be determined on a class-wide basis.[1]

To explain, in addition to their overcharge claim, Plaintiffs say the supposed harm also included higher prices for competing digital players, switching costs, and reduced innovation. Doc. 479, pp. 64-65. None of these theories of harm is susceptible to proof on a class-wide basis (assuming *arguendo* that any could support a Section 2 claim at all). *See* Doc. 511, ¶ 44 (Burtis Decl). For example, the alleged harm of buying a competing player at a higher price would require proof not only that iTunes 7.0 somehow caused an increase in competing player prices but also that an individual class member actually bought a competing player. Any claimed harm from an alleged inability to buy a competing player would also depend on individualized proof that an individual wanted to replace his iPod with a competing player but decided not to on account of the size of the library he bought from iTunes after 7.0 and his unwillingness or inability to burn and rip that music. A customer who had no interest in purchasing a different player or who cannot show that the update somehow prevented him from doing so would have no

---

[1] Requiring proof at this stage is particularly appropriate given the implausibility of Plaintiffs' class-wide impact and damage theory, i.e., that the partial removal of one of multiple sources of music playable directly on iPods could somehow cause the price of iPods to increase.

- 5 -

Apple's Further Supp. Br. Class Cert.
C 05-00037-JW (HRL)

1  claim even under Plaintiffs' theory (assuming it was valid in the first place). These circumstances
2  can be determined only on an individual-by-individual basis.

3  Likewise, apart from the irony of accusing an innovation leader of reducing choice and
4  diminishing innovation, attempting to prove those alleged harms would depend on numerous
5  individual factors, including whether any particular customer was unhappy with the existing
6  products, would have benefited from whatever features might have been available, would have
7  been willing to pay for those features, and so on. Just as proof of a tying claim would have raised
8  predominately individual issues (*see* Doc. 177, pp. 12-22), proof of these alternative impact and
9  damages theories would do the same thing and defeat class certification for similar reasons.

10  In short, because Plaintiffs have not demonstrated that their expert can prove that all class
11  members suffered an overcharge, this case if certified as a class would inevitably result in an
12  endless sequence of individual mini-trials seeking relief on alternative theories of harm that could
13  be established, if at all, only on an individual basis. Class certification in these circumstances is
14  improper.

15  This reason for denying class certification, which was set forth in Apple's opposition brief
16  in February 2011 (Doc. 512, pp. 18-19), is even stronger now in light of *Dukes*. Just as Title VII
17  and security fraud plaintiffs are required to present convincing proof that they can overcome the
18  need to rely on individualized proof, Plaintiffs here should be required to demonstrate that they
19  can overcome individualized issues of impact and damages which are key to their remaining case.
20  As this record now stands, they have failed to do so. Dr. Noll has performed no analysis of the
21  alleged impact, if any, of iTunes 7.0 on iPod prices. And even as to the regression he previously
22  ran, Dr. Noll admitted that it is not a workable, valid damages model: "I do not regard this as a
23  damage model." Declaration of David C. Kiernan In Support hereof, Ex. 1 (Noll Dep. at 90).[2]
24  He admitted that he could not draw any "causal inferences from that regression" (*id.* at 90),
25  including any inference on the pivotal question for which Plaintiffs offer his testimony—i.e.,

---

[2] For convenience, the Kiernan declaration filed herewith contains relevant excerpts from the Noll deposition, including excerpts previously filed with other declarations.

- 6 -

Apple's Further Supp. Br. Class Cert.
C 05-00037-JW (HRL)

whether Apple's software updates caused any change in the price of iPods. As he summarized, "I cannot rule out anything based on the regression I have because I'm not relying on it for anything." *Id*. at 130-131. As to whether he could say based on all of his work in this case "when, if ever, the disabling of Harmony had an impact on iPod prices:" "I have not attempted even to answer that question." *Id.* at 202. And he admitted that if there was any such price impact, it might be "so slight that it wouldn't show up in a regression." *Id.* at 209.

As shown in Apple's supplemental brief filed yesterday, this testimony does not carry Plaintiffs' burden anymore than the expert testimony that *Dukes* found should be disregarded. Doc. 638.

In sum, *Dukes* buttresses the conclusion that Plaintiffs have failed to carry their burden of showing, with respect to their new claim relating solely to iTunes 7.0, compliance with the commonality and typicality requirements of Rule 23(a)(2) and the predominance or superiority requirements of Rule 23(b)(3).

Dated: June 23, 2011                     JONES DAY

                                         By:/s/ Robert A. Mittelstaedt
                                            Robert A. Mittelstaedt

                                         Counsel for Defendant APPLE INC.

SFI-701306v1

whether Apple's software updates caused any change in the price of iPods. As he summarized, "I cannot rule out anything based on the regression I have because I'm not relying on it for anything." *Id*. at 130-131. As to whether he could say based on all of his work in this case "when, if ever, the disabling of Harmony had an impact on iPod prices:" "I have not attempted even to answer that question." *Id.* at 202. And he admitted that if there was any such price impact, it might be "so slight that it wouldn't show up in a regression." *Id.* at 209.

As shown in Apple's supplemental brief filed yesterday, this testimony does not carry Plaintiffs' burden anymore than the expert testimony that *Dukes* found should be disregarded. Doc. 638.

In sum, *Dukes* buttresses the conclusion that Plaintiffs have failed to carry their burden of showing, with respect to their new claim relating solely to iTunes 7.0, compliance with the commonality and typicality requirements of Rule 23(a)(2) and the predominance or superiority requirements of Rule 23(b)(3).

Dated: June 23, 2011                     JONES DAY

                                         By:/s/ Robert A. Mittelstaedt
                                            Robert A. Mittelstaedt

                                         Counsel for Defendant APPLE INC.

SFI-701306v1