No. 11-_____

_____

**In The United States Court Of Appeals**

**For The Ninth Circuit**

_____

**IN RE APPLE iPOD iTUNES ANTITRUST LITIGATION**

_____

On Petition for Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, No. 05-00037 JW

_____

**PETITION FOR PERMISSION TO APPEAL
ORDER GRANTING CLASS CERTIFICATION
Federal Rule Of Civil Procedure 23(f)**

_____

Robert A. Mittelstaedt (60359)
Craig E. Stewart (129530)
David C. Kiernan (215335)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone: (415) 626-3939
Facsimile:  (415) 875-5700

Attorneys for Defendant-Petitioner
APPLE INC.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Apple Inc. (Apple) has no parent corporation and no publicly held corporation owns 10% of more of its stock.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

CORPORATE DISCLOSURE STATEMENT ..........................................................i

INTRODUCTION ................................................................................................1

BACKGROUND ..................................................................................................3

    A.   Plaintiffs' Original and Amended Theories. ...............................................4

    B.   Renewed Motion for Class Certification and Plaintiffs' Initial
        Expert Submissions. ..................................................................................5

    C.   Plaintiffs' Revised Expert Submissions. ....................................................7

    D.   Order Granting Class Certification..............................................................9

STANDARD OF REVIEW ..................................................................................10

RELIEF SOUGHT ..............................................................................................10

REASONS FOR GRANTING THE PETITION....................................................11

I.     THE PETITION SHOULD BE GRANTED TO CLARIFY THE
      PROPER STANDARDS FOR EVALUATING EXPERT
      TESTIMONY AND PROVING RULE 23 ELEMENTS, AND TO
      CORRECT THE MANIFESTLY INCORRECT CERTIFICATION
      ORDER. ....................................................................................................11

II.    THIS COURT SHOULD ALSO RESOLVE THE PROPRIETY OF
      INDIVIDUAL END-USER CONSUMERS REPRESENTING LARGE
      RETAILER ENTITIES SUCH AS WAL-MART AND TARGET. ...............17

CONCLUSION ...................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Allied Orthopedic Appliances, Inc. v. Tyco Health Care Group*,
    247 F.R.D. 156 (C.D. Cal. 2007) .........................................................................19

*Allied Orthopedic Appliances, Inc. v. Tyco Health Care Group*,
    592 F.3d 991 (9th Cir. 2010) ...............................................................................8

*Behrend v. Comcast Corp.*,
    655 F.3d 182 (3d Cir. 2011) ..............................................................................14

*Bell Atl. Corp. v. AT&T Corp.*,
    339 F.3d 294 (5th Cir. 2003) .............................................................................12

*Caridad v. Metro-North Commuter R.R.*,
    191 F.3d 283 (2d Cir. 1999) ..............................................................................14

*Chamberlan v. Ford Motor Co.*,
    402 F.3d 952 (9th Cir. 2005) ......................................................................... 2, 10

*Connecticut Ret. Plans v. Amgen*,
    660 F.3d 1170 (9th Cir. 2011) .................................................................. 1, 11, 12

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ...............................................................................15

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) .............................................................................16

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
    703 F.2d 534 (9th Cir. 1983) ..............................................................................5

*Gariety v. Grant Thornton, LLP*,
    368 F.3d 356 (4th Cir. 2004) .............................................................................16

*Hanover Shoe v. United Shoe Machinery Corp.*,
    392 U.S. 481 (1968) ........................................................................................20

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    2006 WL 1530166 (N.D. Cal. June 5, 2006) ................................................. 9, 14

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008) ................................................................14

*In re Initial Public Offerings Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006) ..................................................................15

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008) ...................................................................16

*In re Online DVD Rental Antitrust Litig.*,
    2010 WL 5396064 (N.D. Cal. Dec. 23, 2010) ......................................9

*In re Potash Antitrust Litig.*,
    159 F.R.D. 682 (D. Minn. 1995) .........................................................13

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ................................................................14

*Kline v. Coldwell, Banker & Co.*,
    508 F.2d 226 (9th Cir. 1974) ...............................................................12

*Meijer v. Abbott Labs*,
    251 F.R.D. 431 (N.D. Cal. 2008) ........................................................20

*Sher v. Raytheon Co.*,
    419 Fed.Appx. 887 (11th Cir. 2011) ...................................................15

*United Steel Workers v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ...............................................................16

*Valley Drug Co. v. Geneva Pharms., Inc.*,
    350 F.3d 1181 (11th Cir. 2003)..................................................... 19, 20

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ..................................................... 1, 11, 12, 17

*West v. Prudential Secs., Inc.*,
    282 F.3d 935 (7th Cir. 2002)...............................................................15

## Other Authorities

7A C. Wright & A. Miller, *Federal Practice and Procedure*
    § 1768 (3d. ed. 2010)...........................................................................19

II P. Areeda, H. Hovenkamp & R. Blair, *Antitrust Law*,
 ¶ 331d (2d ed. 2000) ............................................................................................13

## INTRODUCTION

By this Rule 23(f) petition, Apple asks this Court to decide the oft-recurring question of the appropriate standard for showing at the class certification stage whether antitrust impact and damages are provable on a class-wide basis. Relatedly, where antitrust plaintiffs rely on disputed expert testimony to make that showing, what does it mean for courts to engage in "rigorous analysis" as required by Rule 23? These questions are unsettled in this Circuit after *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). They are of critical importance because, if plaintiffs are not held to a sufficiently high standard, classes will be certified in cases that will devolve into unmanageable mini-trials. Last month, this Court reserved decision on the standard of proof issue in the securities fraud context. *See Connecticut Ret. Plans v. Amgen*, 660 F.3d 1170, 1175 (9th Cir. 2011). This antitrust case presents these issues, and underscores the need for clear guidance from this Court.

The court below certified a nationwide class of direct purchasers and resellers of 75 million iPods. Relying on a pre-*Dukes'* district court opinion, the court held that plaintiffs' burden was simply to propose a class-wide method of proving antitrust injury and damages that was not "so insubstantial as to amount to no method at all." Citing another pre-*Dukes* district court opinion, the court also held that, in determining whether plaintiffs had met that minimal burden, it could not "weigh in on the merits of plaintiffs' substantive arguments, and must avoid engaging in a battle of expert testimony." As a result, although the court acknowledged the need for "rigorous analysis," the court did not address the

admission by plaintiffs' expert that his regression model for showing impact and damages was unreliable. Nor did the court address the testimony by Apple's expert that, in light of the nature of the alleged antitrust violation and Apple's pricing strategy, plaintiffs "will never be able to establish anticompetitive impact or the amount of damages on a class-wide basis."

The district court's lenient standard is contrary to *Dukes*. *Dukes* requires "convincing proof" to support class certification and admonishes parties seeking class certification to "affirmatively demonstrate [their] compliance" with Rule 23 on all issues—even those that must be proved again at trial. 131 S. Ct. at 2556, 2551. In antitrust cases, class certification often turns on whether a common method exists to establish that the alleged violation caused injury. If no such method exists, the trial will turn into a series of disputes over whether individual class members have been injured. The result will be particularly unwieldy where, as here, the complaint alleges various types of antitrust injury, each of which (if viable) would vary from individual to individual.

Thus, clarifying the standards for evaluating expert testimony and determining whether antitrust impact and damages are provable with common evidence will not only advance the fair and efficient adjudication of this case, but will aid in the many future cases that inevitably raise the same issues. This discretionary appeal is the proper vehicle to decide these important issues that otherwise may evade appellate review. *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005).

The other key issue raised by the order below is whether an individual consumer who buys a product for personal use can represent not just other similarly-situated consumers, but also differently-situated resellers like Wal-Mart and Costco that buy and resell large quantities of the product. In ruling that they could, the court below addressed only the sub-issue of whether the fact that resellers, unlike consumers, benefit from higher retail prices affected its class certification decision. The court did not address the basic issues of whether consumers are adequate representatives of resellers or whether a consumer class action is the superior method for large resellers.

## **BACKGROUND**

The named plaintiffs are three individuals who challenge an Apple software update in 2006 that required iPod users to use Apple's free iTunes software application (rather than third party applications) to "sync" or load their iPods with music from their computers. Plaintiffs allege that the software update constituted unlawful monopolization and harmed them in various ways, including higher iPod prices. Plaintiffs conceded that economic theory provided no basis to conclude that the challenged conduct necessarily had any impact on iPod prices. Plaintiffs further conceded that, even though the case has been pending since 2005 and fact discovery has been closed for nearly a year, their expert had been unable, despite three attempts, to construct a reliable regression analysis that could establish impact on a common basis. Indeed, plaintiffs' expert admitted at his deposition that he could not rely on his regression analyses for anything, and certainly not to

conclude that the challenged conduct affected iPod prices, much less caused them to increase.

Nonetheless, the district court certified a class of iPod consumers and resellers, holding, as noted, that plaintiffs' burden was only to offer a method of proving impact that was more than "no method at all" and that the court "must not engage in a battle of expert testimony."

This is the essence of the case as it now stands although, as summarized below, the case has been through various twists and turns.

A.    **Plaintiffs' Original and Amended Theories.**

As filed in 2005, this case alleged that Apple's use of proprietary anti-piracy software ("digital rights management" or DRM) on music sold by its on-line iTunes Store ("iTS") constituted tying and monopolization in violation of the Sherman Act. Plaintiffs acknowledged that the record labels required Apple and other on-line music sellers to use DRM, but they claimed that Apple should have used Microsoft's DRM instead of its own or should have licensed its DRM to competitors, so that all on-line music would be directly compatible with iPods and other portable music devices.

In December 2008, the district court certified a class on this original claim. Doc. 196. Soon thereafter, however, the court ruled that the antitrust laws do not require that Apple use another company's DRM or license its DRM to other companies. Doc. 274, p. 10 ("'[T]he introduction of technologically-related products, even if incompatible with the products offered by competitors, is alone neither a predatory nor anticompetitive act.'") (quoting *Foremost Pro Color, Inc. v.*

*Eastman Kodak Co.*, 703 F.2d 534, 544 (9th Cir. 1983)).  In light of this ruling, the court decertified the class.  Doc. 303.

Plaintiffs then amended their complaint to challenge Apple's later software updates (one in 2004, one in 2006), which allegedly prevented iPods from playing music sold by competing on-line music stores.  Doc. 321.  This, they assert, raised demand for iPods and increased their price.  In addition to the alleged iPod price increase, plaintiffs advanced several other theories of supposed harm to consumers: (1) a "dead-weight . . . loss of welfare" from a reduction in output, (2) higher prices for competing digital players, (3) extra costs for consumers with iTS music who wished to purchase a competing player, and (4) reduced technological innovation.  Doc. 479, pp. 64-65, Doc. 321, ¶¶ 85-86, 91, 103.

The parties engaged in extensive fact discovery, which was completed in January 2011.  At that point, defendants moved for summary judgment and plaintiffs moved for class certification.

**B.**    **Renewed Motion for Class Certification and Plaintiffs' Initial Expert Submissions.**

To support their certification motion, plaintiffs submitted a declaration from an economist, Dr. Roger Noll.  Noll asserted that three methods—the "before-after," "yardstick," and "mark-up" methods—are "available" to prove one of the multiple alleged harms, an iPod overcharge.  Doc. 479, pp. 72-84.  He described these methods, however, only in generic fashion and admitted that he had not attempted to employ any of them in this case.  He further admitted that there are "complicating factors" to using his proposed methods, without identifying how he would attempt to overcome those factors.  *Id.* at 73.

Noll did not assert that his proposed methods could be used to show the other injuries plaintiffs alleged. *Id.* at 64-65. Nor did plaintiffs otherwise attempt to show that these alleged harms could be proved on a common basis. It is clear that none of them could be. *See* Doc. 511, ¶ 44. That left plaintiffs' motion to stand or fall on Noll's assertion that a viable common method exists for proving that class members were overcharged for their iPods. Without such class-wide proof, plaintiffs and class members would be relegated to trying to show that they had been individually damaged in the other alleged ways.

Apple submitted a declaration from Dr. Michelle Burtis, which set out the reasons why Noll's proposed methods would not work. Doc. 511. Among other things, Burtis demonstrated that Noll had not identified any viable benchmark against which any overcharge attributable to Apple's software updates could be measured. She also demonstrated that Noll had not shown that he could control for the numerous variables that affected iPod pricing or that he could obtain the data necessary to carry out his proposed methods.

Plaintiffs submitted a reply declaration in which Noll presented a regression model for the first time. Doc. 551. That model used only a purported "before-after" analysis. Noll presented no model for his other two proposed methods. Plaintiffs described this as a "working regression analysis" that "demonstrates that impact and damages can be proven by relying on common proof." Doc. 550, pp. 2, 8. At his deposition, however, Noll admitted that his regression model did not work, was not reliable and that he could not draw any "causal inferences from that regression," including whether the software update caused any change in iPod

prices.  Doc. 582, p. 2.  Indeed, he admitted that "I'm not relying on it for anything."  *Id.*[1]

Noll also admitted at deposition that economic theory provided no basis to conclude that the challenged software updates necessarily affected iPod prices. Doc. 692, p. 2 n.1.  As he explained, the 2004 update allegedly reduced the sources of music that could be played on iPods, so that if it affected iPod prices at all it would have tended at least in the short run to decrease demand and thus prices.  He added that, to the extent that iPod owners bought more music from Apple, it could eventually increase iPod demand and prices.  But he admitted that only an empirical study could show whether there was any effect and, if so, what it was. Doc. 551, pp. 8-9.  As to the 2006 update, Noll's view was that it probably had no impact on iPod prices for reasons that he explained.  Doc. 633, pp. 4-5.

### C.    Plaintiffs' Revised Expert Submissions.

In May 2011, the district court granted summary judgment against plaintiffs' challenge to the 2004 software update.  Doc. 627.[2]  That ruling reduced plaintiffs'

---

[1] He was forced to this concession after admitting that he did not know whether his model contained specification errors—*i.e.*, errors in constructing the model that could bias the results.  He conceded that his model is "not proof that this is the right specification."  *Id.*  When asked whether there is a "factor that's been excluded from this regression that leads to the wrong answer," he admitted "I don't know that.  That's why I wouldn't offer this as a damages model."  *Id.* at 1.  He furthered admitted that his model does not account for such things as Apple's pricing strategy.  *Id.* ("Q.  Does your current regression in your reply report account for the fact that Apple changed its retail prices and wholesale prices, list prices infrequently?  A.  No, that's why it's not a damage model.").

[2] The court held that, because the 2004 software update indisputably blocked hackers' attacks on Apple's DRM, it was a genuine product improvement under

(continued)

claim to the 2006 software update—the one that Noll doubted had any impact on
iPod prices.  Nonetheless, Noll submitted a new report asserting that he could show
class-wide impact from the 2006 update using the same regression model that he
previously admitted he could not rely upon "for anything."  Doc. 660.  He did not,
however, attempt to address the basic problems that he had previously stated made
that model unreliable.  Other than fixing a few data errors, he simply added a
"dummy" variable for the challenged 2006 software update.  Noll later submitted a
second regression model addressed to the retail prices Apple charged to its end-
user purchasers (Noll's previous model was addressed to Apple's prices to resellers
such Target and Best Buy).  Doc. 679.  Again, that model was the same one that he
had previously used, without any attempt to address the problems that he had
identified as making it unreliable.

Confirming that he had not rectified those problems, Noll admitted when
deposed that, based on his regression analysis, he was not willing to reach a
conclusion on "whether the conduct had any impact on iPod pricing."  Doc. 692,
¶ 6.  He said that he has not "formed an opinion as to whether that conduct caused
the retail iPod prices charged by Apple to be any different than they would have
been without that conduct."  *Id.*  Rather than defending his models as reliable, Noll
asserted that he was not required to do so at this juncture and would correct the

---

*Allied Orthopedic Appliances, Inc. v. Tyco Health Care Group*, 592 F.3d  991 (9th
Cir. 2010).  Doc. 627, pp. 7-8.  But the court found that the evidence was
conflicting as to whether the 2006 software update was a genuine product
improvement.  *Id.*, pp. 11-13.

defects later.  But he did not present any such adjusted models demonstrating that it would be possible to remedy the flaws in his approach.

In response to Noll's new reports, Apple submitted another expert declaration by Burtis, describing in detail the defects in Noll's model and the reasons why it was not reliable.  Importantly, she concluded that "[a]fter a careful review of Professor Noll's most recent declaration, I am even more firmly of the opinion that Plaintiffs will never be able to establish anticompetitive impact or the amount of damages on a class-wide basis."  Doc. 692, ¶ 3.  The remainder of her declaration explained the basis for that conclusion.  *Id.*, ¶¶ 4-51.

### D.     Order Granting Class Certification.

On November 22, 2011, the district court granted plaintiffs' renewed motion for class certification.  Although the court stated that a "rigorous analysis" was needed (Doc. 694, p. 5), it held that plaintiffs' burden was "simply [to] offer a proposed method for determining damages that is not 'so insubstantial as to amount to no method at all.'"  Doc. 694, p. 6 (quoting *In re Online DVD Rental Antitrust Litig.,* 2010 WL 5396064, at *11 (N.D. Cal. Dec. 23, 2010).  The court added that it "cannot weigh in on the merits of plaintiffs' substantive arguments, and must avoid engaging in a battle of expert testimony."  *Id.* (quoting *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, at *9 (N.D. Cal. June 5, 2006)).

Applying this standard, the court stated that plaintiffs had met their burden by proposing "three specific methodologies which, upon review, are sufficient to establish their method for determining damages at this stage."  Doc. 694, pp. 6-7.

This was a reference to the three generic methods plaintiffs originally suggested in 2008 even though, after the case was narrowed, Noll relied only on one of the three methodologies.  Although the court stated that plaintiffs have "demonstrated it can be done," citing Noll's supplemental declaration, the court did not discuss Noll's deposition admissions that his regressions were unreliable or Burtis' extensive showing that, not only were Noll's regressions fatally flawed in numerous critical respects, but that Noll would never be able to show class-wide impact.  The court made no finding that Burtis' criticisms were incorrect or that Noll had adequately rebutted them.[3]

## STANDARD OF REVIEW

Review under Rule 23(f) is proper when a district court's class certification decision is manifestly erroneous or presents unsettled and fundamental questions of law related to class actions.  *Chamberlan*, 402 F.3d at 959.

## RELIEF SOUGHT

Apple requests that this petition be granted and the class certification order be reversed.

---

[3] The court stated that it had "previously found" that plaintiffs' proposed methods were adequate.  Doc. 694, p. 6.  But the court's original class certification order did not advert to Noll's testimony.  Doc. 196.  And the court's later order denying decertification of that original class stated simply, without explanation, that Apple's challenges to Noll's testimony were "reject[ed]."  Doc. 303, p. 2, n.6.

## REASONS FOR GRANTING THE PETITION

I.    **THE PETITION SHOULD BE GRANTED TO CLARIFY THE PROPER STANDARDS FOR EVALUATING EXPERT TESTIMONY AND PROVING RULE 23 ELEMENTS, AND TO CORRECT THE MANIFESTLY INCORRECT CERTIFICATION ORDER.**

The overarching principle established in *Dukes* is that a party seeking class certification must prove, not merely allege, the existence of elements of its claim that, if unproven, will prevent the case from being tried on a class-wide basis. *Dukes* required Title VII plaintiffs to present, at the class certification stage, "convincing proof of a companywide discriminatory pay and promotion policy" because without such proof the trial would devolve into individual issues. 131 S. Ct. at 2556-57. This was true even though plaintiffs "will surely have to prove [the same thing] *again* at trial." *Id.* at 2552 n.6 (the Court's emphasis). Using the same principle, *Dukes* approved of the requirement in securities fraud cases that "plaintiffs seeking 23(b)(3) certification must prove that their shares were traded on an efficient market." *Id.* Without that proof, the case would devolve into individualized proof of reliance by individual investors. *Id.*

In *Amgen*, this Court agreed that the "efficient market" method of avoiding individual reliance proof must be proved at the class certification stage. Because the defendant did not contest that element, the Court expressly reserved deciding "the applicable standard of proof for proving those elements at the class certification stage." 660 F.3d at 1175. The only element the defendant challenged was the materiality of its statements. As to that element, the Court held that the plaintiffs need not prove it at class certification because failure to prove it at trial would not

cause the trial to devolve into individual issues; rather plaintiffs and the class would simply lose the case—their case would be "dead on arrival." *Id.*

*Dukes* also addressed the use of expert testimony at the class certification stage, holding that district courts must conduct a "rigorous analysis" of such testimony to show common issues. 131 S. Ct. at 2551. Applying that rigorous analysis, the Court "disregard[ed]" the testimony of the plaintiffs' sociology expert, finding it insufficient because the expert admitted that he could not "determine with any specificity" the degree to which bias played a role in Wal-Mart's employment decisions. *Id.* at 2553-54. The Court also rejected the plaintiffs' reliance on statistical regression analyses that addressed pay and promotion disparities only at the national and regional levels, and thus did not show whether disparities existed at individual stores, let alone that they were the product of unlawful discrimination. *Id.* at 2555.

This case presents the question of how these principles apply in the antitrust context. In antitrust cases, the propriety of class certification often turns on whether plaintiffs have shown a common, class-wide means of establishing injury. "Proof of injury is an essential substantive element" of an antitrust claim. *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 233 (9th Cir. 1974). Accordingly, where injury "cannot be established for every class member through proof common to the class, the need to establish antitrust liability for individual class members defeats Rule 23(b)(3) predominance." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003). As the leading antitrust treatise recognizes:

> [T]he fact that some class members have not been damaged at all generally defeats certification, because the fact of injury, or "impact" must be established by common proof.

II P. Areeda, H. Hovenkamp & R. Blair, *Antitrust Law*, ¶ 331d, at 282 (2d ed. 2000).

As here, antitrust class action plaintiffs often try to avoid individual injury issues by alleging that the conduct at issue resulted in an increased price charged to all purchasers. To support that assertion, they typically submit (as here) expert testimony proposing to do a regression analysis that purports to control for all the other factors that might have affected price, with any unexplained price effect being attributed to the challenged conduct. The validity and reliability of that proposed method goes to the core of Rule 23's requirements. Without a workable method to show a common overcharge incurred by all class members, the case devolves into a series of individual claims over other types of alleged harm, such as plaintiffs' claims here of inability to buy competing products or to obtain desired features.

Before *Dukes*, many courts in this circuit and elsewhere concluded that, because of the preliminary stage at which class certification motions are typically decided, district courts are required to accept such expert testimony, even in the face of contradictory evidence. Some (like the court below) concluded that they must accept the expert's proposed methods unless they "are so insubstantial as to amount to no method at all." *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 697 (D. Minn. 1995). Others said the testimony must be accepted unless it is "fatally flawed." *E.g., In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135

(2d Cir. 2001).  Many of these decisions stated that courts were barred from
"engaging in a battle of expert testimony," *DRAM*, 2006 WL 1530166, at *9, and
proclaimed that "statistical dueling" between experts is "not relevant to the
certification determination."  *Caridad v. Metro-North Commuter R.R.*, 191 F.3d
283, 292 (2d Cir. 1999).

The district court here followed these decisions.  Rather than rigorously
analyzing Noll's proposed methods as *Dukes* requires, the court concluded that it
was obligated to find those methods sufficient so long as they were more than
nothing at all.  And rather than analyzing and making findings regarding the
validity of Burtis' expert testimony challenging Noll's conclusion, the court
concluded it was barred from resolving a battle of the experts.

Cases in other circuits have expressly repudiated the lenient approach the
district court used here.  For example, the Third Circuit recently ruled that
plaintiffs must "demonstrate[] by a preponderance of the evidence that they will be
able to measure damages on a class-wide basis using common proof"  and that
district courts must "examine critically expert testimony on both sides . . . .
Indeed, '[w]eighing conflicting expert testimony at the certification stage is not
only permissible; it may be integral to the rigorous analysis Rule 23 demands.'"
*Behrend v. Comcast Corp.*, 655 F.3d 182, 204, 190 (3d Cir. 2011) (citation
omitted).[4]

---

[4] *See also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 324 (3d Cir.
2008) ("Resolving expert disputes in order to determine whether a class
certification requirement has been met is always a task for the court—no matter

(continued)

The Second Circuit has similarly ruled that "an expert's testimony may [not] establish a component of a Rule 23 requirement simply by being not fatally flawed." *In re Initial Public Offerings Sec. Litig.,* 471 F.3d 24, 42 (2d Cir. 2006). The court rejected the notion that "a district judge may not weigh conflicting evidence and determine the existence of a Rule 23 requirement." *Id.* Rather, "[a] district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." *Id.*[5]

Other circuits are in accord. *E.g., West v. Prudential Secs., Inc.*, 282 F.3d 935, 938 (7th Cir. 2002) (a plaintiff may not "obtain class certification just by hiring a competent expert"); *Sher v. Raytheon Co.*, 419 Fed.Appx. 887, 888 (11th Cir. 2011) (holding that "the district court erred as matter of law by not sufficiently evaluating and weighing conflicting expert testimony presented by the parties at the class certification stage;" vacating order certifying class).

Other circuits have likewise made clear that, at least in a case involving disputed and conflicting testimony, the required "rigorous analysis" obligates the district court to explain the basis for its conclusion that the testimony is sufficient.

---

whether a dispute might appear to implicate the 'credibility' of one or more experts[.]").

[5] *See also Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 106-07 (2d Cir. 2007) (directing the district court to "determine which expert is correct" where the parties' experts disagreed as to whether injury was susceptible to common proof).

*E.g., In re New Motor Vehicles Canadian Export Antitrust Litig*., 522 F.3d 6, 29 (1st Cir. 2008) (district courts should give a "thorough explanation of *how* the pivotal evidence behind plaintiff's theory can be established") (emphasis in original); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir. 2004) (vacating certification order with respect to predominance finding where "the district court did not explain why it could find the predominance requirement satisfied").[6]

 This Court should grant this petition to make clear that these standards apply in this circuit.  In *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 983-84 (9th Cir. 2011), another employment discrimination case, this Court held that crediting the plaintiffs' expert testimony on commonality simply because it was admissible is not a sufficiently "rigorous analysis" of the competing expert testimony.  657 F.3d at 983-84.  *Ellis*, however, did not provide district courts with concrete guidance as to what such an analysis entails or how should it be applied to expert testimony offered to prove antitrust injury.  Applying the correct standard is particularly important in a case like this where there are obvious reasons to reject the plaintiffs' proposed methodology, including the plaintiffs' expert's admission that his model is incomplete, potentially biased, and unreliable.  Absent guidance from this Court,

---

[6] In *United Steel Workers v. ConocoPhillips Co.*, 593 F.3d 802, 807-09 (9th Cir. 2010), this Court ruled that it was improper for the district court, after ruling that plaintiffs' meal break claim could be established by common proof, to nonetheless deny certification because there was "no assurance" plaintiffs would ultimately prevail on the merits.  The issue here, by contrast, is whether plaintiffs' claim can be established by common proof at all.

district courts in this circuit will, as here, continue to certify classes where no proper basis for doing so has been shown.

This case presents an ideal vehicle for resolving these issues. The facts here—an expert economist proffering a regression model as a supposed "available" method to show class-wide injury—is a common one. Indeed, it is the typical scenario in the broad run of antitrust cases. A ruling in this case would thus have broad applicability to antitrust cases generally.

Further, the district court's application of the wrong standard was pivotal to the outcome here—and requires that the district court's order be reversed. In *Dukes*, the Court said it could "disregard" the expert's testimony because he could not say what percentage of employment decisions might be discriminatory, let alone offer "significant proof' that Wal-Mart 'operated under a general policy of discrimination." 131 S. Ct. at 2554. Even more so here, Noll's testimony that he is "not relying" on his regression analysis "for anything" fails to carry Plaintiffs' burden of showing that a workable class-wide method exists to determine impact and damages. Contrary to Noll's argument, the task at class certification is not to show that an expert can create an ***unreliable*** method; it is to show that a method exists for actually proving class-wide impact.

## II.     THIS COURT SHOULD ALSO RESOLVE THE PROPRIETY OF INDIVIDUAL END-USER CONSUMERS REPRESENTING LARGE RETAILER ENTITIES SUCH AS WAL-MART AND TARGET.

The named plaintiffs each purchased one or more iPods for personal use from an Apple retail store. Instead of limiting their certification motion to consumers like themselves, plaintiffs sought to include large reseller entities, such

as Best Buy, Target, Wal-Mart and Costco, each of which purchased at wholesale prices different from the retail prices plaintiffs paid.

The district court's ruling that these resellers may be included in a class with individual end-user plaintiffs independently merits review. The sole basis offered by the district for including the resellers was that they supposedly have the same incentive to prove and collect an overcharge. But even if that were correct (*see infra*), it is not an adequate basis for including them in the class. Because the resellers paid different prices from the end-users in separate transactions, litigating their claims will necessarily involve separate proof from the end-users, as evidenced by Noll's proposed separate regression for resellers and his admission that the transaction data is different and requires different treatment. *See* Doc. 679. As end-users, the named plaintiffs have no personal interest (and no relevant personal knowledge) in litigating these issues. Similarly, because resellers generally have ongoing business relationships with Apple and purchase iPods for economic profit, their litigation and settlement incentives may differ from end-users.

Resellers are also differently situated with respect to plaintiffs' other theories of harm. Whether any reseller was harmed by such things as higher prices for competing products, inability to purchase competing products or lack of technological innovation would not only vary from reseller to reseller, but would turn on an entirely different set of facts from those relevant to any consumer claim.

Even aside from these fundamental differences, the district court's ruling that the resellers possess the same economic interest as end users was itself in

conflict with decisions from other courts.  Plaintiffs say that, as consumers, they want lower retail prices for iPods.  Resellers, however, benefit from higher retail prices for iPods.[7]  Thus, the resellers' interests are aligned with Apple, not with consumers.

A putative class representative "cannot adequately protect the class if the representative's interests are antagonistic to or in conflict with the objectives of those being represented."  7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1768 (3d. ed. 2010).  "A fundamental conflict exists where some … members [of a class] claim to have been harmed by the same conduct that benefited other members of the class."  *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).  For that reason, the Eleventh Circuit held that plaintiffs could not adequately represent the interests of resellers that "appear to benefit from the effects of the conduct alleged to be wrongful by the named plaintiffs because their net economic situation is better off" as a result of the conduct.  *Id*. at 1191.  *See also Allied Orthopedic Appliances, Inc. v. Tyco Health Care Group*, 247 F.R.D. 156, 177 (C.D. Cal. 2007) ( "[T]o [the court's] knowledge, no circuit approves of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class.").

---

[7] To illustrate, a reseller that purchases iPods at, hypothetically, a 10% discount from Apple's retail prices will pay $90 for an iPod with a $100 retail price.  If the reseller charges the same retail price as Apple, the reseller will earn $10 on that iPod.  If the retail price drops to $90, however, the same reseller would earn only $9 on that same iPod.

The district court relied for its contrary ruling on *Meijer v. Abbott Labs*, 251 F.R.D. 431, 433 (N.D. Cal. 2008), which concluded that the Eleventh Circuit's decision was contrary to the holding in *Hanover Shoe v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968), that direct purchasers may sue even if they passed the alleged overcharge along to their purchasers. As the Eleventh Circuit explained, however, *Hanover Shoe* addressed only the question of a direct purchasers' standing to sue. It did not address the "distinctly separate question . . . whether class certification is appropriate where a fundamental conflict exists among the named and unnamed members of a class." 350 F.3d at 1192.

Like the questions regarding the governing standard of proof and use of expert testimony, this question of the propriety of end-user purchasers representing large commercial resellers in antitrust cases is a common one. It arises whenever the defendant sells both at the wholesale and retail levels. The Court should grant this petition to clarify the law and provide guidance to the district courts on this important issue.

## <u>CONCLUSION</u>

For the foregoing reasons, this petition to appeal should be granted.

Dated:  December 6, 2011                    Respectfully submitted,

                                            JONES DAY

                                            By:/s/ Robert A. Mittelstaedt

                                            Attorneys for Defendant-Petitioner
                                            APPLE INC.