1 | Robert A. Mittelstaedt  #60359
  | ramittelstaedt@jonesday.com
2 | Craig E. Stewart  #129530
  | cestewart@jonesday.com
3 | David C. Kiernan  #215335
  | dkiernan@jonesday.com
4 | JONES DAY
  | 555 California Street, 26th Floor
5 | San Francisco, CA  94104
  | Telephone:   (415) 626-3939
6 | Facsimile:    (415) 875-5700

7 | Attorneys for Defendant
  | APPLE INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| THE APPLE iPOD iTUNES ANTITRUST LITIGATION | Lead Case No. C 05-00037 YGR<br>[CLASS ACTION] |
| This Document Relates To:<br><br>ALL ACTIONS | **DEFENDANT'S SEPARATE STATEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND TO EXCLUDE EXPERT TESTIMONY OF ROGER G. NOLL**<br><br>Date:       February 18, 2014<br>Time:       2:00 pm<br>Courtroom: 5 |

[Public Version - Redacted]

| Claim/Issue No. | Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|---|
| All claims: No antitrust impact | Fact 1: ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ <br><br> Evidence: Expert Report of Robert H. Topel (August 19, 2013) ¶ 27, n. 40 (Amiri Decl. Ex. 4). | |
| All claims: No antitrust impact | Fact 2: Consumers would not be expected to be using Harmony in large numbers in 2005 or 2006 because Harmony had already been lawfully disabled by iTunes 4.7 previously. <br><br> Evidence: Deposition of Roger G. Noll (May 16, 2013) at 147:20-148:5 (Amiri Decl. Ex. 10). | |
| All claims: No antitrust impact | Fact 3: Plaintiffs have no evidence regarding what portion of RealNetworks' sales was to iPod owners or potential iPod purchasers. <br><br> Evidence: Deposition of Roger G. Noll (May 16, 2013) at 116:18-23 (Amiri Decl. Ex. 10). | |
| All claims: No antitrust impact | Fact 4: In determining whether ■■■ had any impact, the relevant sales of Harmony music are to consumers who were iPod owners or potential iPod purchasers. <br><br> Evidence: Deposition of Roger G. Noll (May 16, 2013) at 81:6-12 (Amiri Decl. Ex. 10). | |
| All claims: No antitrust impact | Fact 5: Plaintiffs have no evidence of the number of people who became locked in or locked out as a result of the ■■■ <br><br> Evidence: Deposition of Roger G. Noll (May 16, 2013) at 107:16-24 (Amiri Decl. Ex. 10). | |
| All claims: No antitrust impact | Fact 6: The named plaintiffs do not allege that they were locked in or locked out as a result of the ■■■ <br><br> Evidence: Amended Consolidated Complaint (ECF No. 322). | |

| | | |
|---|---|---|
| All claims: No antitrust impact | Fact 7: ███████████<br><br>Evidence: Deposition of Roger G. Noll (Dec. 18, 2013) at 78:20-82:4 (Amiri Decl. Ex. 11). | |
| All claims: No antitrust impact | Fact 8: ███████████<br><br>Evidence: Expert Report of Kevin Murphy (August 19, 2013) at ¶ 78 (Amiri Decl. Ex. 3); Expert Report of Robert Topel (August 19, 2013) at ¶ 127 (Amiri Decl. Ex. 4); Deposition of Mark Donnelly (Dec. 20, 2010) at 72:2-12 (Amiri Decl. Ex. 18). | |
| All claims: No antitrust impact | Fact 9: ███████████<br><br>Evidence: Deposition of Roger G. Noll (April 7, 2011) at 213:2-10; . Deposition of Mark Donnelly (Dec. 20, 2010) at 72:2-12 (Amiri Decl. Ex. 18). | |
| All claims: No antitrust impact | Fact 10: Under plaintiffs' theory, the number of consumers who were locked in to purchasing iPods would have progressively increased during the damage period as consumers purchased more music from iTS.<br><br>Evidence: Deposition of Roger Noll (Dec. 18, 2013) at 51:16-52:11, 109:10-21 (Amiri Decl., Ex. 11); Rebuttal Declaration of Roger Noll at p. 7 (Amiri Decl., Ex. 8). | |

| | | |
|---|---|---|
| All claims: No antitrust impact | Fact 11: The impact on demand from lock-in of iPod purchasers would not occur until they purchased a replacement player which occurred on average 18-24 months after their initial purchase.<br><br>Evidence: Deposition of Roger Noll (December 18, 2013) at 49:9-23 (Amiri Decl., Ex. 11); Rebuttal Declaration of Roger Noll at p. 27 (Amiri Decl., Ex. 8). | |
| All claims: No antitrust impact | Fact 12: The lock-in effect on consumers who purchased a new iPod for the first time after September 2006 would not be an important factor affecting iPod prices for most of the damage period.<br><br>Evidence: Rebuttal Declaration of Roger Noll at p. 27 (Amiri Decl., Ex. 8). | |
| All claims: No antitrust impact | Fact 13: By turning the iTunes 4.7 variable off, Dr. Noll's regression treated iTunes 4.7 as having no effect on prices after the ███ was released.<br><br>Evidence: Expert Report of Robert Topel (August 19, 2013) at ¶¶ 94-95 (Amiri Decl. Ex. 4). | |
| All claims: No antitrust impact | Fact 14: By turning the iTunes 4.7 variable off, Dr. Noll's regression treated the but-for world as one in which iTunes 4.7 did not exist.<br><br>Evidence: Expert Report of Robert Topel (August 19, 2013) at ¶¶ 94-95 (Amiri Decl. Ex. 4). | |
| All claims: No antitrust impact | Fact 15: Under plaintiffs' theory, the increase in prices caused by iTunes 4.7 would persist even after the ███ was issued because the initial shutdown of Harmony in 2004 could have caused consumers to permanently abandon Harmony.<br><br>Evidence: Deposition of Roger G. Noll (May 16, 2013) at 68:2-70:16 (Amiri Decl. Ex. 10). | |

| | | |
|---|---|---|
| All claims: No antitrust impact | Fact 16: By turning off the iTunes 4.7 variable when he turned on the iTunes 7.0 variable, Dr. Noll causes the iTunes 7.0 variable to capture the continuing effect from iTunes 4.7.<br><br>Evidence: Expert Report or Kevin Murphy (August 19, 2013) at ¶ 102 (Amiri Decl. Ex. 3); Expert Report of Robert Topel (August 19, 2013) at ¶¶ 92-93 (Amiri Decl. Ex. 4). | |
| All claims: No antitrust impact | Fact 17: Dr. Noll admitted that "the effect on prices [from iTunes 7.0] is not necessarily limited to just the products that were sold that had 7.0 in them."<br><br>Evidence: Deposition of Roger G. Noll (May 16, 2013) at 46:2-4 (Amiri Decl. Ex. 10); Deposition of Roger G. Noll (Dec. 18, 2013) at 64:16-65:21 (Amiri Decl. Ex. 11). | |
| All claims: No antitrust impact | Fact 18: According to Dr. Noll, disabling Harmony in 2006 was a "market-defining event."<br><br>Evidence: Deposition of Roger G. Noll (May 16, 2013) at 48:24-49:17 (Amiri Decl. Ex. 10). | |
| All claims: No antitrust impact | Fact 19: Dr. Noll's regression includes a single "iTunes 7.0" variable that he asserts measures the alleged unlawful overcharge in iPod prices.<br><br>Evidence: Expert Report of Kevin Murphy (August 19, 2013) at p. 81 (Amiri Decl. Ex. 3); Expert Report of Robert Topel (August 19, 2013) at ¶ 80 (Amiri Decl. Ex. 4). | |
| All claims: No antitrust impact | Fact 20: Plaintiffs challenge only the ▓▓▓ aspect of iTunes 7.0.<br><br>Evidence: Expert Report of Kevin Murphy (August 19, 2013) at ¶ 113 (Amiri Decl. Ex. 3); Expert Report of Robert Topel (August 19, 2013) at ¶ 110 (Amiri Decl. Ex. 4). | |

| | | |
|---|---|---|
| All claims: No antitrust impact | Fact 21: Dr. Noll's regression must control for any unchallenged aspects of iTunes 7.0 that may be correlated with the ▉ to ensure that the coefficient on iTunes 7.0 captures only the price impact of the challenged conduct.<br><br>Evidence: Expert Report of Kevin Murphy (August 19, 2013) at ¶¶ 80, 108 (Amiri Decl. Ex. 3); Expert Report of Robert Topel (August 19, 2013) at ¶ 48 (Amiri Decl. Ex. 4). | |
| All claims: No antitrust impact | Fact 22: Because iTunes 7.0 included "unique attributes" that Dr. Noll's model ignores, the model cannot accurately determine whether any price-elevating impact of iTunes 7.0 was due to the ▉ or the other features of iTunes 7.0.<br><br>Evidence: Expert Report of Kevin Murphy (August 19, 2013) at ¶ 113 (Amiri Decl. Ex. 3). | |
| All claims: No antitrust impact | Fact 23: Dr. Noll recognizes that product features are important determinants of price, and thus his regression includes variables for a few such characteristics (e.g. storage capacity, photo and video capability, and size).<br><br>Evidence: Deposition of Roger G. Noll (May 16, 2013) at 30:22-32:31 (Amiri Decl. Ex. 10). | |
| All claims: No antitrust impact | Fact 24: Dr. Noll's model omits numerous other characteristics that are likely to affect price, including battery life, display size, weight, screen resolution, and type of connector.<br><br>Evidence: Expert Report of Kevin Murphy (August 19, 2013) at ¶ 110 (Amiri Decl. Ex. 3); Expert Report of Robert Topel (August 19, 2013) at ¶ 111 & Ex. 10 thereto (Amiri Decl. Ex. 4). | |

| | | |
|---|---|---|
| All claims: No antitrust impact | Fact 25: By failing to control for the relevant product characteristics, Dr. Noll's regression erroneously attributes iPod price changes to the ▮▮▮ that are actually the result of the omitted variables.<br><br>Evidence: Expert Report of Kevin Murphy (August 19, 2013) at ¶¶ 79-80 (Amiri Decl. Ex. 3); Expert Report of Robert Topel (August 19, 2013) at ¶ 110 (Amiri Decl. Ex. 4). | |
| All claims: No antitrust impact | Fact 26: An assumption fundamental to all regression analysis is that the errors or residuals (the portion of the price that cannot be explained by the explanatory variables) are uncorrelated or independent of one another.<br><br>Evidence: Rebuttal Declaration of Roger G. Noll (November 25, 2013) at 36-38 (Amiri Decl., Ex. 8); Deposition Transcript of Roger G. Noll (December 18, 2013) at 23:9-24:7 (Amiri Decl. Ex. 11); Expert Report of Robert Topel (August 19, 2013) at pp. 32-33 (Amiri Decl. Ex. 4). | |
| All claims: No antitrust impact | Fact 27: If the errors within a group are correlated (not independent) they are said to be clustered and must be corrected before calculating standard errors.<br><br>Evidence: Expert Report of Robert Topel (August 19, 2013) at pp. 34-35 (Amiri Decl. Ex. 4). | |
| All claims: No antitrust impact | Fact 28: If clustering issues are not corrected, the standard errors will be miscalculated and will under- or over-estimate the model's precision.<br><br>Evidence: Deposition of Roger G. Noll (Dec. 18, 2013) at 25:15-20 (Amiri Decl. Ex. 11); Expert Report of Robert Topel (August 19, 2013) at pp. 34-37 (Amiri Decl. Ex. 4); Expert Report of Kevin Murphy (August 19, 2013) at pp. 50-51 (Amiri Decl. Ex. 3). | |

| | | |
|---|---|---|
| All claims: No antitrust impact | Fact 29: Dr. Noll admits that there are standard procedures to test whether the errors in a regression are correlated.<br><br>Evidence: Deposition of Roger Noll (Dec. 18, 2013) at 24:9-14 (Amiri Decl., Ex. 11). | |
| All claims: No antitrust impact | Fact 30: Dr. Noll did not employ any of the standard procedures for testing whether the errors in his regression are correlated such that the independence assumption is violated.<br><br>Evidence; Supp. Report of Kevin M. Murphy & Robert H. Topel at pp. 5-6 (Amiri Decl., Ex. 14); Deposition of Roger Noll (Dec. 18, 2013) at 27:9-32:8, 45:23-46:9 (Amiri Decl., Ex. 11). | |
| All claims: No antitrust impact | Fact 31: Had Dr. Noll run the tests to determine if the errors in his regression were correlated, he would have discovered that errors within certain groups or clusters are highly correlated, revealing that this independence assumption is false.<br><br>Evidence; Supp. Report of Kevin M. Murphy & Robert H. Topel at pp. 5-6 (Amiri Decl., Ex. 14) | |
| All claims: No antitrust impact | Fact 32: Dr. Noll admits that economists typically determine relevant markets by estimating cross-elasticity of demand, but he did not estimate cross-elasticity of demand.<br><br>Evidence: Declaration of Roger Noll on Liability and Damages (April 3, 2013) at pp. 23-24 (Amiri Decl., Ex. 6). | |
| All claims: No antitrust impact | Fact 33: Dr. Noll did not employ the "hypothetical monopolist" test endorsed by the Department of Justice.<br><br>Evidence: Declaration of Roger Noll on Liability and Damages (April 3, 2013) at pp. 23-24 (Amiri Decl., Ex. 6). | |

| | | |
|---|---|---|
| All claims: No antitrust impact | Fact 34: Dr. Noll asserts that economists rely on surveys of buyers or statements of executives in the industry to establish a product market, but Dr. Noll does not present any such evidence.<br><br>Evidence: Declaration of Roger Noll on Liability and Damages (April 3, 2013) at pp. 23-24 (Amiri Decl., Ex. 6). | |
| All claims: No antitrust impact | Fact 35: Dr. Noll does not profess to have any industry or other experience that would make him an expert on what consumers consider to be substitutes for digital music and music players.<br><br>Evidence: Declaration of Roger Noll on Liability and Damages (April 3, 2013) at pp. 23-24 (Amiri Decl., Ex. 6). | |
| All claims: No antitrust impact | Fact 36: Dr. Noll refers only to CD players and cell phones without discussing any other potentially competing devices (such as notebook computers and home stereos) for playing digital music. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓<br><br>Evidence: Declaration of Roger Noll on Liability and Damages (April 3, 2013) at pp. 32-42 (Amiri Decl., Ex. 6); Deposition of Arthur Rangel (December 17, 2010) at 48:4-10 (Amiri Decl., Ex. 13). | |
| All claims: No antitrust impact | Fact 37: Dr. Noll does not address whether customers might substitute free downloads from peer-to-peer file sharing sites for iTS music, disregarding evidence that the availability of free downloads was a major challenge to the success of paid music stores like iTS.<br><br>Evidence: Declaration of Roger Noll on Liability and Damages (April 3, 2013) at pp. 32-42 (Amiri Decl., Ex. 6); Expert Report of Kevin Murphy (August 19, 2013) at ¶ 125 (Amiri Decl. Ex. 3). | |

| | | |
|---|---|---|
| All claims: No antitrust impact | Fact 38: Dr. Noll assumes that cell phones must be able to download music over wireless carriers' networks to be substitutes for iPods.<br><br>Evidence: Declaration of Roger Noll on Liability and Damages (April 3, 2013) at pp. 29-31 (Amiri Decl., Ex. 6). | |
| All claims: No antitrust impact | Fact 39: iPods never had the capability to download music over wireless carriers' networks during the class period. Only the iPod touch could wirelessly download music, but only over a Wi-Fi connection, not a wireless carrier network.<br><br>Evidence: Expert Report of Kevin Murphy (August 19, 2013) at ¶ 30 (Amiri Decl. Ex. 3). | |
| All claims: No antitrust impact | Fact 40: Dr. Noll excludes on-demand and non-interactive streaming music from the market because those services were not fully available on mobile devices during the class period.<br><br>Evidence: Declaration of Roger Noll on Liability and Damages (April 3, 2013) at pp. 33-39 (Amiri Decl., Ex. 6). | |
| All claims: No antitrust impact | Fact 40: Support for mobile devices is not relevant to consumers who purchased music to play on other devices, and Dr. Noll presents no analysis as to the volume of iTS sales for use on such other devices.<br><br>Evidence: Expert Report of Kevin Murphy (August 19, 2013) at ¶ 126 (Amiri Decl. Ex. 3). | |
| All claims: No antitrust impact | Fact 41: ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■<br><br>Evidence: Expert Report of Kevin Murphy (August 19, 2013) at ¶ 126 (Amiri Decl. Ex. 3). | |

I attest that the evidence cited herein fairly and accurately supports the facts as asserted.

Dated: December 20, 2013

JONES DAY

By: /s/ Robert A. Mittelstaedt
    Robert A. Mittelstaedt

Counsel for Defendant APPLE INC.