# Exhibit 9

[PUBLIC VERSION - REDACTED]

```
 1            UNITED STATES DISTRICT COURT

 2           NORTHERN DISTRICT OF CALIFORNIA

 3                 SAN JOSE DIVISION

 4                    ---oOo---

 5   THE APPLE iPOD iTUNES
     ANTITRUST LITIGATION
 6

 7                          No.  C-05-00037-JW(RS)

 8
     _____/
 9

10

11

12       VIDEOTAPED DEPOSITION OF ROGER G. NOLL

13                     VOLUME I

14                 (Pages 1 to 215)

15

16         Taken before ERIN F. ROBINSON

17                 CSR NO. 12199

18                 April 7, 2011

19

20

21

22

23

24

25
```

1  BY MR. MITTELSTAEDT:
2      Q.  Go ahead.
3      A.  So we have we have the act of disablement, and
4  we're sort of looking at the effect of all the periods
5  there.  There still is use of Harmony during that
6  entire period.  I don't have enough information about
7  Harmony in April of -- to know if there was any
8  significant effect on anything.
9          Before I would put that as a separate variable
10 in the regression, I would want to do things like I did
11 here, which is did that period have any effect on real
12 network's sales in the audio download market?  If it
13 didn't, then it didn't matter from the standpoint of
14 the effects on the market for portable digital media
15 players.  And I don't have that information.  I don't
16 know what it is.
17     Q.  Have you asked for that information?
18     A.  No, I've looked for it.  I just don't find it.
19 I haven't found it.
20     Q.  What do you understand happened with respect to
21 Harmony in April of 2005?
22     A.  I'm not sure what happened because there are
23 conflicting versions of what had happened, and I'm not
24 sure what happened.  There's two parts to the story,
25 which is did they really succeed in overcoming the

1  software upgrades, and then No. 2 would be did
2  consumers actually take advantage of it.  And I suspect
3  the answer to the first is yes, and I suspect the
4  answer to the second is no because the consumers had
5  already experienced the prior disabling.
6       So that's my expectation.  But I don't have
7  enough information to say anything more than that, and
8  that's another issue that is relevant to how you would
9  eventually specify this equation.
10      Q.  Let's say Harmony came back into use in April
11 of 2005 and remained in use until sometime the
12 following year.  How would you want to account for that
13 in doing a regression to show impact or damages?
14      A.  Well, you could add another period.  But it's
15 not obvious -- it doesn't work here, either.  Because
16 remember it wasn't until March that you couldn't access
17 ITMS with the old version as well.  So there isn't
18 really a disjointedness.  For those people who wanted
19 to use Harmony, they could continue to use it through
20 March anyway.  And so, you know, a period of a couple
21 of weeks, a few weeks isn't going to -- not much is
22 going to happen then.
23      So there's more similarity than difference
24 between October through March and April from then on
25 because of the fact that those who really wanted to use

213

1  get around FairPlay.

2

3

4

5

6

7

8

9

10

11         MR. MITTELSTAEDT:  Okay.  Why don't we stop

12  there for the day.

13         THE WITNESS:  Okay.

14         THE VIDEOGRAPHER:  This concludes Volume 1 of

15  Dr. Roger Noll.  We are off the record at 3:38.

16         (Whereupon, the deposition was adjourned at

17         3:38 p.m.)

18

19                                  _____
                                    SIGNATURE OF WITNESS
20

21

22

23

24

25

```
 1    STATE OF CALIFORNIA       )
 2                              )
 3    COUNTY OF ALAMEDA         )
 4
 5         I, ERIN F. ROBINSON, do hereby certify:
 6         That ROGER G. NOLL, in the foregoing deposition
 7    named, was present and by me sworn as a witness in the
 8    above-entitled action at the time and place therein
 9    specified;
10         That said deposition was taken before me at said
11    time and place, and was taken down in shorthand by me,
12    a Certified Shorthand Reporter of the State of
13    California, and was thereafter transcribed into
14    typewriting, and that the foregoing transcript
15    constitutes a full, true and correct report of said
16    deposition and of the proceedings that took place;
17         That before completion of the proceedings,
18    review of the transcript was requested.
19         IN WITNESS WHEREOF, I have hereunder subscribed my
20    hand this 12th day of April 2011.
21
22
23              Erin F. Robinson
                ERIN F. ROBINSON, CSR NO. 12199
24              State of California
25
```