1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| THE APPLE IPOD ITUNES ANTI-TRUST LITIGATION | ) ) ) | Lead Case No. C-05-00037-YGR |
|---|---|---|
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) | [PROPOSED] ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TO EXCLUDE EXPERT TESTIMONY OF ROGER G. NOLL |
| ALL ACTIONS. | ) ) ) | |

906826_1

Presently before the Court is Apple's Motion for Summary Judgment and to Exclude the Expert Testimony of Roger G. Noll. The Court hereby DENIES Apple's Motion.

## I.  BACKGROUND

Plaintiffs represent a certified class of individuals and businesses that purchased iPods (Apple's portable digital media player) directly from Apple between September 12, 2006 and March 31, 2009. Plaintiffs allege that Apple maintained and enhanced its monopoly power in the market for portable digital media players by implementing software and firmware updates – called the 7.0 updates – that disabled RealNetworks' Harmony, a product that allowed iPod users to download and play audio files from RealNetworks' on-line music store. Before Harmony, Apple's proprietary digital rights management system ("DRM"), called FairPlay, blocked iPod owners from downloading music from on-line stores other than Apple's iTunes Store ("iTS"). With Harmony, iPod users could build music libraries with music from online sources that were *not* tied to the iPod, thus reducing the costs of switching to another portable digital music player.

Plaintiffs' principal economic expert, Roger G. Noll, calculated damages and demonstrated the anticompetitive impact of Apple's conduct using a before-and-after multiple-variable regression analysis. Comparing prices of iPods before and after the competitive events (when Harmony was operational, when Apple disabled Harmony, and when Apple and its competitors began selling DRM-free audio files), and using a hedonic model of iPod prices that accounts for different iPod models and their different features, Noll quantified the competitive effects of 7.0. The regressions estimated an overcharge of 2.38% on iPods sold to resellers, and 7.45% on iPods sold to retail customers, for total damages of $351,631,153. Ex. 1, Noll Damages Report at 71-72; Ex. 2, Noll Rebuttal Report at 50-51.

Plaintiffs' expert, Professor Roger G. Noll, has conducted an economic analysis of Apple's conduct. He has concluded, among other things, that:

- Apple's blocking of Harmony through 7.0 increased "lock-in" for iPods owners by increasing switching costs and network effects.

- Apple possessed market power during the class period in the market for portable digital media players and the market for permanent downloads of digital audio files.

1  • Apple's blocking of Harmony through 7.0 enhanced and maintained its monopoly power in portable digital media players.

2  • As a result, Apple was able "to charge higher prices for iPods than otherwise would have been the case."

Ex. 1, Noll Damages Report at 4-5, 14-22, 42-57, 59-61.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may not be granted unless the moving party shows both: (1) that there is no genuine issue as to any material fact; and (2) that it is entitled to judgment in its favor as a matter of law. *See* Fed. R. Civ. P. 56(a). "On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant." *Oracle Corp. v. Druglogic, Inc.*, No. C-11-00910 JCS, 2013 U.S. Dist. LEXIS 164675, at *13 (N.D. Cal. Oct. 16, 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "Where material factual disputes exist, the court must allow a jury to resolve them." *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 871 (9th Cir. 2010) (citing *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992)), *cert. denied*, __ U.S. __ , 132 S. Ct. 115, 181 L. Ed. 2d 40 (2011). "'In antitrust cases, these general standards are applied even more stringently and summary judgment granted more sparingly.'" *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 U.S. Dist. LEXIS 132172, at *41-*42 (N.D. Cal. Dec. 10, 2010) (citing *Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n*, 620 F.2d 1360, 1364 (9th Cir. 1980)). Where, as here, the motion rests so heavily on conflicting expert opinion, summary judgment is even more inapt. *See Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, No. 05-08444 DDP, 2013 U.S. Dist. LEXIS 100804, at *27 (C.D. Cal. July 18, 2013); *Parker-Hannifin Corp. v. Wix Filtration Corp.*, No. CV 06-0098 LJO DLB, 2008 U.S. Dist. LEXIS 29388, at *14 (E.D. Cal. Apr. 9, 2008) ("such contradictory expert reports alone raise a material issue rendering summary judgment inappropriate"); *Synthes USA, LLC v. Spinal Kinetics, Inc.*, No. C-09-01201 RMW, 2011 U.S. Dist. LEXIS 93093, at *57 (N.D. Cal. Aug. 19, 2011) ("Where, as here, conflicting expert testimony

raises genuine issues of material fact that are appropriate for consideration by a jury, summary judgment is inappropriate.").

### A. Plaintiffs' Theory of Impact Does Not Depend on the Level of Harmony Sales to iPod Owners

First, Apple argues that Plaintiffs cannot prove impact because "Harmony was insignificant in 2006," and because Plaintiffs have not identified which RealNetworks' sales were to iPod owners (or potential iPod owners) or the exact number of people who became locked in or locked out as a result of 7.0. Def's Mem. at 9. The Court finds this argument is contrary to well-established economic theory. *See* Ex. 2, Noll Rebuttal at 14; *see also* Ex. 1, Noll Damages Report at 14-22.

### B. Apple Set Prices Based on Competitors' Products

Apple also asserts that Plaintiffs' theory is implausible because Apple adhered "unwaveringly" to a practice of setting "aesthetically appealing" prices. Def's Mem. at 10-11. But as Plaintiffs explain, while many of Apple's list prices ended in a 9, Apple did not rely solely on "aesthetic" pricing. Even to the extent Apple's prices were dictated by "aesthetics," that does not undermine Plaintiffs' damages theory. Apple argues that Professor Noll's regression results would have required Apple to "depart" from its usual practice and charge $184.17 for a $199 nano. Def's Mem. at 11. Apple could have easily charged $189 or some other "aesthetically pleasing" price and still reaped improper overcharge benefits. "[A]n antitrust plaintiff need not prove damages with mathematical certainty, but rather, he need only introduce sufficient evidence of damages to allow a jury to estimate the amount of damages." *In re Indus. Silicon Antitrust Litig.*, No. 95-2104, 1998 U.S. Dist. LEXIS 20464, at *13 (W.D. Pa. Oct. 13, 1998). Once causation of damages is determined in an antitrust case,

> The jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly. In such circumstances "juries are allowed to act upon probable and inferential, as well as direct and positive proof." Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim. It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain.

*Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264, 66 S. Ct. 574, 90 L. Ed. 652 (1946).

### C. Noll's Regression Demonstrates Impact and Quantifies Damages

Despite Apple's claim that the shutdown of Harmony could not possibly have affected Apple's pricing, the Court finds Professor Noll's regression results demonstrate that it had a real and significant impact. After conducting an extensive analysis of all of Apple's iPod pricing data, iPod product information, Apple's pricing practices and other relevant economic variables, Professor Noll developed a multi-variable regression model that shows that shutting down Harmony through 7.0 enabled Apple to charge 2.38% more and 7.45% more, respectively, to resellers and retail customers, than it could have charged in the but-for world. Ex. 2, Noll Rebuttal at 48-51 & Exhibits 4-6; Ex. 1, Noll Damages Report at 68-69.

## III. PROFESSOR NOLL'S OPINIONS ARE ADMISSIBLE UNDER RULE 702 AND *DAUBERT*

Apple has not challenged the qualifications of Professor Noll. Instead, Apple argues that Professor Noll's regression model does not "fit" the facts or theories of the case. Def's Mem. at 12-14. The Court notes that many of Apple's arguments go to the weight, not the admissibility, of Professor Noll's testimony. *See, e.g.*, *In re Titanium Dioxide Antitrust Litig.*, No. RDB-10-00318, 2013 U.S. Dist. LEXIS 62394, at *55-*58 (D. Md. May 1, 2013) ("[T]he Supreme Court in [*Bazemore v. Friday*] found that inadequacies in a multiple regression analysis normally 'affect the analysis' probativeness, not its admissibility.') [478 U.S. 385, 400, 106 S. Ct. 3000, 92 L. Ed. 2 315, (1986).] In addition, the Court of Appeals for the Ninth Circuit in *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002) reasoned that '[i]n most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility.'"). Professor Noll has used standard and widely accepted economic methods, therefore Apple's motion to exclude his testimony is rejected.

### A. Professor Noll Relied on Standard Economic Methods to Define the Relevant Markets

Apple's argument that Professor Noll did not use "reliable economic principles and methods" to support his relevant market opinions is contradicted by Professor Noll's report. Def's Mem. at 22. Courts recognize that indirect evidence that products are close substitutes, derived from qualitative evidence such as internal documents, pricing data, testimony from employees and consumers, and

1 other anecdotal evidence, is sufficient to demonstrate the relevant market. *See, e.g.*, *Brown Shoe Co.*
2 *v. United States*, 370 U.S. 294, 325, 82 S. Ct. 1502, 8 L. Ed. 2d 510 (1962) (a distinct relevant
3 market such can be shown by indicia as industry recognition, unique products or pricing, and
4 specialized vendors (among others)

5      Professor Noll analyzed a vast quantity of information in reaching his opinions on market
6 definition. *See* Ex. 1, Noll Damages Report at 2-3. Plaintiffs detail a number of sources and
7 materials Professor Noll relied upon in making his determination regarding market definition. This is
8 the type of information that experts and courts routinely rely on to determine relevant product
9 markets. The Court finds that summary judgment at to market definition is inappropriate on this
10 record.

11 **IV.   CONCLUSION**

12      For the foregoing reasons Apple's motion for summary judgment and motion to exclude the
13 testimony of Professor Noll is denied.

14      IT IS SO ORDERED.

15 DATED: _____   _____
16                                                   THE HON. YVONNE GONZALES ROGERS
                                                  UNITED STATES DISTRICT JUDGE

17
18
19
20
21
22
23
24
25
26
27
28