1   ROBBINS GELLER RUDMAN
      & DOWD LLP
2   BONNY E. SWEENEY (176174)
    THOMAS R. MERRICK (177987)
3   ALEXANDRA S. BERNAY (211068)
    CARMEN A. MEDICI (248417)
4   JENNIFER N. CARINGAL (286197)
    655 West Broadway, Suite 1900
5   San Diego, CA  92101
    Telephone:  619/231-1058
6   619/231-7423 (fax)
    bonnys@rgrdlaw.com
7   tomm@rgrdlaw.com
    xanb@rgrdlaw.com
8   cmedici@rgrdlaw.com
    jcaringal@rgrdlaw.com
9
    Class Counsel for Plaintiffs
10
    [Additional counsel appear on signature page.]
11
                        UNITED STATES DISTRICT COURT
12
                        NORTHERN DISTRICT OF CALIFORNIA
13
                        OAKLAND DIVISION
14
    THE APPLE IPOD ITUNES ANTI-TRUST          )   Lead Case No. C-05-00037-YGR
15  LITIGATION                                )
                                              )   CLASS ACTION
16  _____  )
                                              )   PLAINTIFFS' REPLY MEMORANDUM IN
17  This Document Relates To:                 )   SUPPORT OF *DAUBERT* MOTION TO
                                              )   EXCLUDE CERTAIN OPINION
18      ALL ACTIONS.                          )   TESTIMONY OF KEVIN M. MURPHY
    _____  )   AND ROBERT H. TOPEL
19
                                                  DATE:      TBD
20                                                TIME:      TBD
                                                  CTRM:      5, 2nd Floor
21                                                JUDGE:     Hon. Yvonne Gonzalez Rogers
22
    **UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED IN ENTIRETY**
23

24                        [APPLE'S PROPOSED REDACTIONS]
25

26

27

28

912519_1

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ...........................................................................................1

II.     CLUSTERING DOES NOT FIT THE FACTS OF THE CASE........................................2

        A.     There Is No Clustering Problem Among iPod Transactions .................................2

        B.     Apple's Pricing Practices Do Not Give Rise to Correlation of the
               Residuals ..............................................................................................3

        C.     Apple's "Test" for Correlation of the Residuals Is Flawed ....................................4

        D.     Apple's "Omitted Variables" Argument Does Not Support Clustering .................5

        E.     Through the Construction of Arbitrary Clusters, Apple's Experts
               Artificially Introduce Correlation into the Error Residuals .....................................7

        F.     Clustering Where Unnecessary Is Harmful ..............................................9

        G.     The Number of Observations Per Cluster Distorts the Standard Error.................10

III.    APPLE'S ATTACKS ON PROFESSOR WOOLDRIDGE ARE UNFOUNDED ...........11

        A.     Professor Wooldridge's Opinions Are Supported by Generally Accepted
               Econometrics and Wooldridge's Own Peer-Reviewed Publications and
               Research and Were Not Manufactured for This Litigation .....................................11

        B.     Plaintiffs Timely Disclosed Wooldridge ..............................................12

IV.     CONCLUSION........................................................................................14

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR          - i -

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*,
   No. C 07-1359, 2009 U.S. Dist. LEXIS 32380

5

   (N.D. Cal. Apr. 2, 2009) ................................................................13

6

*Cabreara v. Cordis Corp.*,
   134 F.3d 1418 (9th Cir. 1998) ......................................................11

7

8

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)............................. *passim*

9

*FTC v. Wellness Support Network, Inc.*,
   No. 10-cv-04879-JCS, 2013 U.S. Dist. LEXIS 144140

10

   (N.D. Cal. Oct. 4, 2013)..........................................................1, 2

11

12

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   MDL No. 1446, 2007 U.S. Dist. LEXIS 98619

13

   (S.D. Tex. Feb. 1, 2007)..........................................................14

14

*In re Paoli R.R. Yard PCB Litig.*,
   35 F.3d 717 (3d Cir. 1994)........................................................13

15

16

*Jeffries v. Centre Life Ins. Co.*,
   No. 1:02-cv-351, 2004 U.S. Dist. LEXIS 30769

17

   (S.D. Ohio Jan. 28, 2004) ........................................................12

18

*Lust by & Through Lust v. Merrell Dow Pharms., Inc.*,
   89 F.3d 594 (9th Cir. 1996) ......................................................11

19

20

*Moore v. Napolitano*,
   926 F. Supp. 2d 8 (D. D.C. 2013)..................................................12

21

*Nightlight Sys. v. Nitelites Franchise Sys.*,
   No. 1:04-CV-2112, 2007 U.S. Dist. LEXIS 95538

22

   (N.D. Ga. May 11, 2007) ........................................................13

23

*Reed v. Smith & Nephew, Inc.*,
   527 F. Supp. 2d 1336 (W.D. Okla. 2007).........................................12

24

25

*Wendt v. Host Int'l*,
   125 F.3d 806 (9th Cir. 1997) ....................................................13

26

27

28

1

2
                                                                                    **Page**

3
**STATUTES, RULES AND REGULATIONS**

4
Federal Rules of Civil Procedure
    Rule 26(a)(2).................................................................................................................12
    Rule 37(c)(1).................................................................................................................13

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR          - iii

## I.    INTRODUCTION

In their *Daubert* Motion to Exclude Certain Opinion Testimony of Kevin M. Murphy and Robert H. Topel ("Plaintiffs' *Daubert* Motion" or "Pltfs' Mem."), Plaintiffs demonstrated that Apple's experts' clustering opinions should be excluded because they are not "sufficiently tied to the facts of the case that will assist the jury in resolving a factual dispute." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 591, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).  Relying on the expert opinions of Professors Noll and Wooldridge,[1]  Plaintiffs showed that the "clustering adjustment" that Murphy and Topel apply to Professor Noll's regressions is both inappropriate and harmful. Clustering grossly exaggerates the standard errors, leading to the incorrect conclusion that Professor Noll's regression results are not statistically significant.[2] Pltfs' Mem. at 12; Sweeney *Daubert* Decl., Ex. 1 (Wooldridge Decl.) at 5; Sweeney Reply *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 1 26, 32-33.

In response, Apple merely repeats its experts' discredited theories and attacks Professor Wooldridge by distorting the record.  But Apple cannot escape the fact that its experts' litigation-driven clustering opinions have no place in this case.  As explained by Professors Noll and Wooldridge in their supplemental reports and confirmed through theoretical calculations, statistical tests and simulations, Murphy and Topel's clustering adjustment is arbitrary, improperly distorts the standard errors, and should be excluded.  *See FTC v. Wellness Support Network, Inc.*, No. 10-cv-

---

[1]    Despite Apple's contention to the contrary, Plaintiffs do not rely solely on Professor Wooldridge.  They also rely on Professor Noll's opinions (*see, e.g.*, Pltfs' Mem. at 2 n.3 (citing Noll Rebuttal at 8); *id.* at 4 n.7 (citing Noll Rebuttal at 5-6); *id.* at 9 (citing Noll Rebuttal at 10); *id.* (citing Noll Rebuttal at 9, 36-39); *id.* at 12 (citing Noll Rebuttal at 43-44, 47)) and undisputed factual evidence about the data sets used in the regressions.  *See* Pltfs' Mem.  at 8 n.11 (quoting Topel: "The data came out pretty neat the way Professor Noll had it, so we're going to go with that.").

[2]    All references to ("Sweeney *Daubert* Decl.") are to the Declaration of Bonny E. Sweeney in Support of Plaintiffs' *Daubert* Motion to Exclude Certain Opinion Testimony of Kevin M. Murphy and Robert H. Topel, dated December 20, 2013; all references to ("Kiernan *Daubert* Decl.") are to the  Declaration of David C. Kiernan in Support of Apple's Opposition to Plaintiffs' Daubert Motion, dated January 13, 2014; all references to ("Sweeney Reply *Daubert* Decl.") are to the Declaration of Bonny E. Sweeney in Support of Plaintiffs' Reply Memorandum in Support of *Daubert* Motion to Exclude Certain Opinion Testimony of Kevin M. Murphy and Robert H. Topel, filed concurrently herewith; and all references to  ("Sweeney MSJ Opp. Decl.") are to the Declaration of Bonny E. Sweeney in Support of Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and to Exclude Expert Testimony of Roger G. Noll, dated January 13, 2014.

912519_1

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR                  - 1 -

1   04879-JCS, 2013 U.S. Dist. LEXIS 144140, at *32 (N.D. Cal. Oct. 4, 2013) (excluding expert

2   testimony for lack of "fit").

3   **II.    CLUSTERING DOES NOT FIT THE FACTS OF THE CASE**

4           Despite Apple's protestations, ample "real-world facts" and "real-world evidence" support

5   Plaintiffs' claim that Apple's disabling of Harmony through its 7.0 updates enhanced and maintained

6   Apple's monopoly power and enabled Apple to sell iPods at supracompetitive prices. *See* Dkt. No.

7   751-3 (Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary

8   Judgment and to Exclude Expert Testimony of Roger G. Noll) at 8-9. ██████████████████

9   ████████████████████████████████████████████████

10  ████████████████████████████████████████████████

11  ███████████████████████  ██  █████████

12          Recognizing that Professor Noll's credentials and regression methodologies have been

13  widely accepted, Apple aims its principal attack at the statistical significance of Professor Noll's

14  results, claiming that he should have clustered the standard errors.  According to Apple, after

15  "correcting" for clustering, the statistical significance of Noll's regressions disappears, and damages

16  – conveniently – are reduced to zero.  But this argument has no basis in economics or the facts of

17  this case.

18          **A.      There Is No Clustering Problem Among iPod Transactions**

19          As an initial matter, Apple's claim that the data observations used in Professor Noll's

20  regressions are not independent lacks merit.  As Apple's own expert concedes, if the transactional

21  data "were truly independent, then you wouldn't have to cluster."  Sweeny MSJ Opp. Decl., Ex. 52

22  (1/8/14 Topel Dep.) at 242:5-7.  That is exactly the situation here.  Each transaction involved a

23  different buyer making an independent decision about whether to make a purchase and, if so, how

24  many units to buy.  As a result, each is properly regarded as an independent event.  Sweeney

25  *Daubert* Decl., Ex. 4 (Noll Rebuttal) at 9, 36; *id.*, Ex. 1 (Wooldridge Decl.) at 8 ("If one properly

26  views a transaction as a unit of observation, as is done by Professor Noll, the data need not be treated

27  as a cluster sample.  In particular, the clustering procedure suggested by Professors Murphy and

28  Topel . . . is inappropriate.")

1    Equally important, clustering is not appropriate here because Professor Noll analyzed the

2  ***entire*** population of Apple's transactional data, not just a sample.  Sweeney MSJ Opp. Decl., Ex. 3

3  (Noll Supp. Rebuttal) at 3.  Clustering problems arise when dealing with data drawn from clustered

4  samples, not when dealing with a randomly-drawn sample or the whole population.[3]  *Id.*; Sweeney

5  *Daubert* Decl., Ex. 4 (Noll Rebuttal) at 10; Sweeney MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at

6  3-7; Sweeney *Daubert* Decl., Ex. 1 (Wooldridge Decl.) at 10; Sweeney Reply *Daubert* Decl., Ex 1

7  (Wooldridge Supp. Decl.) at 11-27, 32-33.

8    **B.    Apple's Pricing Practices Do Not Give Rise to Correlation of the
       Residuals**



25  _____

26  [3]    As described in Thompson (2012), a cluster sample is one in which a simple random sample
of primary units is taken from the population of primary units.  Sweeney Reply *Daubert* Decl., Ex. 1
27  (Wooldridge Supp. Decl.) at 11.  Without cluster samples there can be no clustering problems.

28  [4]    *See* Def.'s Mem. at 9 n.12.

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR        - 3 -

1

### C.    Apple's "Test" for Correlation of the Residuals Is Flawed

2    Lacking any economic or factual support for its clustering adjustment, Apple claims Murphy

3  and Topel have demonstrated, using "standard tests," that the residuals are "highly correlated" at the

4  family and quarter level.  Def.'s Mem. at 10.  But as Professor Noll concluded in his Supplemental

5  Report, those "tests" are "unreliable because the groups into which [Murphy and Topel] divide the

6  observations are artificially created."  Sweeney MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at 5.

7  To demonstrate this artifice, Professor Noll used Murphy and Topel's testing method, but divided

8  the data by different time periods (family/month and family/week instead of family/quarter).  The

9  results were "qualitatively identical," demonstrating that the correlations that Murphy and Topel

10  allegedly identified are "not due to the standard problem of cluster samples . . . but are the expected

11  result of dividing the residual errors into a large number of arbitrarily selected groups."  Sweeney

12  MSJ Opp. Decl., Ex. 3 (Noll Supp. Report) at 6 & Exhibits 1a-b & 2a-b.[5]

13    Professor Wooldridge's simulations confirm that Apple's experts' "exercise is entirely

14  predictable, and tells us nothing about whether clustering is needed."  Sweeney Reply *Daubert*

15  Decl., Ex. 1 (Wooldridge Supp. Decl.) at 25.  Indeed, their test demonstrates why clustering is

16  inappropriate in this case and leads to artificial inflation of the standard errors:

17  
18  
19    Not only do Professors Murphy and Topel provide no useful evidence in favor of clustering, their exercise actually supports the simulation evidence above that clustering badly overestimates the true precision in the estimates. Ironically, by extension, the Murphy-Topel analysis actually explains why their cluster-robust standard errors in the iPod transactions are much too large.

20  
21  
22    . . . Given that the theoretical derivation in Section 4 and the simulation evidence presented here completely support my earlier intuition, I am more strongly convinced than ever that the "tests" used by Professors Murphy and Topel show nothing of value when it comes to deciding whether standard errors need to be clustered.

23  *Id.* at 26.

24

25

26  _____
[5]    In its Opposition, Apple tries to minimize its previous reliance on clustering by family and

27  quarter, stating that "even if the standard errors are clustered only by family and not by time period, Noll's results still are not statistically significant."  Def.'s Mem. at 18.  But the same problems apply

28  to clustering by family.  *See infra* at 8.

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR    - 4 -

### D.    Apple's "Omitted Variables" Argument Does Not Support Clustering

As Plaintiffs' experts have explained, Apple's "omitted variables" argument does not support clustering.  First, clustering is not required if the observation data are a random sample or an entire population of data (as here), rather than a clustered sample.[6]  Sweeney Reply *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 1, 11-27, 32-33; Sweeney *Daubert* Decl., Ex. 1 (Wooldridge Decl.) at 10; Sweeny *Daubert* Decl., Ex. 4 (Noll Rebuttal) at 10; Sweeney MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at 3-7.  In his Supplemental Declaration, Professor Wooldridge cites several examples of influential empirical studies that used large random samples but did not correct for clustering, despite clear evidence of omitted variables.  Sweeney Reply *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 12-13.  In those cases, "no clustering is needed to obtain the appropriate standard errors.  The usual heteroskedasticity-robust standard errors [which Noll used] are appropriate." *Id.*

Indeed, Murphy's own research has used large random samples with obvious omitted variables, and yet Murphy made no clustering correction.  *Id.* at 13-14.  For example, in Juhn, Murphy, and Pierce (1993), Murphy utilized 27 years worth of data from the Current Population Survey ("CPS") to study wage inequality, but did not cluster standard errors.  *Id.*  As Wooldridge puts it:  "It seems pretty clear that unobserved factors affecting wage can vary by state and year.  Yet there is no discussion of how omitted factors that vary by state and time cause the underlying errors in their models to be correlated." *Id.*

This same Murphy study also refutes Apple's (unsupported) argument that Noll's standard errors are "unbelievably small" and the corresponding t-statistics[7] unbelievably large.  Def.'s Mem. at 8.  In his 1993 study, Murphy reports t-statistics well above 300 with only approximately 50,000 observations.  Here, with more than 600 times that number of observations, Noll reports a t-statistic on the key variable of approximately 448.  This is well

---

[6]    Wooldridge explained that in his First Declaration that the same calculations that can be drawn about clustering random samples also apply to a whole population.  Sweeney *Daubert* Decl., Ex. 1 (Wooldridge Decl.) at 5, 10-12; *see also* Sweeney Reply *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 9-15.

[7]    A t-statistic is a ratio of the departure of an estimated parameter from its notional value and its standard error.  It is typically used in hypothesis testing.

1    within acceptable limits, as Professor Murphy's own work attests.  Sweeney Reply *Daubert*

2    Decl., Ex. 1 (Wooldridge Supp. Decl.) at 14.

3        Second, the "omitted variables" that Apple asserts should have been included in Noll's

4    regressions cause multicollinearity.  Given that Professor Noll's regressions include a large number

5    of product characteristics that affect iPod prices, multicollinearity should be tested for and avoided –

6    even if the omitted variables purportedly add to the explanatory power of the regression.  Sweeney

7    MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at 8-9.  Multicollinearity causes a reduction in the

8    precision of the estimated coefficients in the regression, making them less reliable.  Sweeney

9    *Daubert* Decl., Ex. 4 (Noll Rebuttal) at 31; Sweeney MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at

10   7.

11       Here, neither of Apple's experts conducted any of the standard tests for multicollinearity or

12   provided support for their opinion.  Sweeny MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at 7-10;

13   *id.*, Ex. 53 (1/8/14 Murphy Dep.) at 294:25-298:14.  Had they done so, they would have discovered

14   that all but one of the omitted attributes generated a multicollinearity problem.  Sweeney MSJ Opp.

15   Decl., Ex. 3 (Noll Supp. Rebuttal) at 10.  Professor Noll utilized three separate tests (the adjusted R-

16   squared, condition number, and VIF) and each one unequivocally demonstrated multicollinearity

17   problems when adding the omitted variables to the regressions.  *Id.* at 10-11.

18       Nor did Murphy and Topel provide any logical reason – based on economic theory or

19   econometrics – that would justify adding any of the omitted variables to the regression.[8]  *Id.* at 9-10;

20   *see, e.g.*, *id.*, Ex. 53 (1/8/14 Murphy Dep.) at 285:17-22 ("I would say it's basically based on

21   economics and the actual evidence on pricing.  I – I don't recall a specific document that talks about

22   the pricing of those.  But it's something economics would lead us to believe should be included.").

23   Topel's rationalization for adding the omitted variables is even more rudimentary: "my recollection

24   is that these were variables that were in the data that Professor Noll had, and he chose to omit them.

25

26   _____

     [8]      Contrary to Apple's misrepresentations, Noll did not admit that his regression should include
27   variables where the "'prices plausibly could be affected by it.'"  Def.'s Mem. at 10 (citing Noll
     Supp. Rebuttal at 9).  Instead, Noll stated that if an indicator variable is turned on, it means that that
28   particular variable should have affected the price of an iPod – not that is has to be turned on.  Dkt.
     No. 685 (Second Supplemental Declaration of Roger G. Noll on Class Certification) at 9.

1   So we simply said let's not omit them. Let's see what happens. They surely seem to be variable

2   characteristics." Sweeney MSJ Opp. Decl., Ex. 52 (1/8/14 Topel Dep.) at 216:17-22; *see also id.*,

3   Ex. 53 (1/8/14 Murphy Dep.) at 288:4-11 (haphazardly guessing that a "vast bulk of" the iPods

4   would be affected by one particular omitted variable). As Murphy admits, "if you thought there was

5   no economic reason to include those kinds of variables in a regression, then I don't think you'd want

6   to put them in." Sweeney MSJ Opp. Decl., Ex. 53 (1/8/14 Murphy Dep.) at 289:16-19. Because

7   neither Murphy nor Topel could provide any economic or econometric reason for including the

8   omitted variables, these variables rightly should be excluded from Professor Noll's regressions.

9        **E.    Through the Construction of Arbitrary Clusters, Apple's Experts
                  Artificially Introduce Correlation into the Error Residuals**

10

11       Through the use of ex post clustering,[9] Murphy and Topel effectively collapse the

12  transactions data for each class/generation/family of an iPod into a calendar quarter and thus into a

13  single observation, which works to reduce the number of transaction observations and the number of

14  degrees of freedom in the regression. Sweeney *Daubert* Decl., Ex. 4 (Noll Rebuttal) at 47. Murphy

15  and Topel's clustering analysis is unreliable because the groups into which they divide their

16  observations are artificially created.[10] Sweeney MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at 5.

17  Murphy and Topel first divide the observations into families, using the premise that Apple's pricing

18  committee used common features within a family to set "uniform" prices. *Id.* As discussed above,

19  this assertion is contradicted by Apple's own admissions and the transactions data.

20       Next, Murphy and Topel further group these families of iPods by quarter, but provide no

21  logical basis for doing so. Sweeney *Daubert* Decl., Ex. 4 (Noll Rebuttal) at 44; Sweeney Reply

22  ---

    [9]      Both Professor Noll and Professor Wooldridge refer to the idea of "ex post clustering." This
23  phrase is in reference to clustering where a random sample is drawn from a large population with the
    observations subsequently grouped on the basis of an observed variable. Sweeney Reply *Daubert*
    Decl., Ex. 1 (Wooldridge Supp. Decl.) at 11-12.

24  [10]     Apple mischaracterizes Noll's testimony. Noll did not state that the "independence
    assumption applies when using the entire population of transactions and that residuals could be
25  correlated within groups." Def.'s Mem. at 13. Noll argued that where the R-square is extremely
    high (indicating a high explanatory power in the regression), you would not need to test the
26  residuals, particularly if you already have group identifiers. Here, it is unnecessary to perform a test
    of the independence assumption because "there are no groups with outlying residual errors in the R-
27  squared spot. And by definition, the mean residual errors by group are going to be zero." Sweeney
    MSJ Opp. Decl., Ex. 50 (12/18/13 Noll Dep.) at 46:6-9.

28

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR      - 7 -

1  *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 4-5.  Grouping the residual errors into families by

2  quarter only makes sense if there is an unobserved variable that affects iPod families differently in

3  different quarters.  Sweeney MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at 5.  Murphy and Topel

4  could have just as easily grouped the residuals by day, week, or year – the arbitrary nature of their

5  clustering by quarter is entirely ad hoc.  When pressed, neither Murphy nor Topel could provide any

6  rationale for grouping the residuals by quarter.  Murphy admitted that there is no evidence that Apple

7  evaluates its iPod pricing on a quarterly basis and that grouping by quarter was done as a

8  "compromise," conceding that aggregating at other levels would also be "reasonable."  Sweeney

9  MSJ Opp. Decl., Ex. 53 (1/8/14 Murphy Dep.) at 264:11-265:15 ("I don't think [Apple does]

10  anything that lines up precisely on quarter boundaries.").  Likewise, Topel acknowledged that Apple

11  "hold[s] prices constant across a couple of quarters."  *Id.*, Ex. 52 (1/8/14 Topel Dep.) at 206:13-

12  207:23.

13      The arbitrariness of Murphy and Topel's clustering adjustment is underscored by the fact that

14  neither did any additional testing to determine the effect of aggregating the data for different time

15  periods.  *Id.*, Ex. 53 (1/8/14 Murphy Dep.) at 265:17-266:5; *id.*, Ex. 52 (1/8/14 Topel Dep.) at 209:1-

16  15.  If they had done so, they would have seen that the same results occur whether the data are

17  clustered by family/quarter, family/month, or family/week.  Sweeney MSJ Opp. Decl., Ex. 3 (Noll

18  Supp. Rebuttal) at 6 & Exs. 1a-b, 2a-b.  These results demonstrate that Murphy and Topel had no

19  basis for clustering the residuals into quarters; the supposed correlations of the residual errors are the

20  expected result of dividing the residual errors into a large number of arbitrarily selected groups.

21  Sweeney MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at 6; Sweeney Reply *Daubert* Decl., Ex. 1

22  (Wooldridge Supp. Decl.) at 25-26 (Apple's exercise is "predictable" and "tells us nothing about

23  whether clustering is needed.")

24      Recognizing that clustering by quarter is inappropriate, Apple attempts to salvage Murphy

25  and Topel's analysis by arguing that clustering the standard errors at the family level alone

26  demonstrates that Noll's results are still not statistically significant.  Def.'s Mem. at 18.  But

27  clustering at the family level (without regard to time period) is still ex post clustering, so the

28  correlation of residuals that is observed has been introduced artificially (irrespective of the particular

912519_1

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR    - 8 -

1    ex post cluster chosen), and does not stem from a true cluster sampling problem that needs to be

2    "properly corrected."  Sweeney Reply *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 17-18.

3        **F.    Clustering Where Unnecessary Is Harmful**

4        Both Murphy and Topel concede that making a clustering adjustment when it is not required

5    can bias the standard errors.  Sweeney MSJ Opp. Decl., Ex. 52 (1/8/14 Topel Dep.) at 244:4-19; *id.*,

6    Ex. 53 (1/8/14 Murphy Dep.) at 279:3-7.  In fact, as confirmed by Professor Wooldridge in his

7    Supplemental Declaration, clustering standard errors where, as here, the entire data population is

8    being used, can result in "severe upward biases" of the standard errors.  Sweeney Reply *Daubert*

9    Decl., Ex. 1 (Wooldridge Supp. Decl.) at 19-20, 26; *see also* Sweeney *Daubert* Decl., Ex. 4 (Noll

10   Rebuttal) at 6.  This is far from harmless.

11       In his Supplemental Declaration, Professor Wooldridge uses a theoretical calculation and

12   several simulations to demonstrate that clustering after random sampling (or, as in this case, after

13   observing an entire population) biases the standard errors upward.  The theoretical calculation

14   "confirms the intuition" expressed in Professor Wooldridge's first declaration:  "If one starts with a

15   random sample, computes residuals, and then averages those residuals with arbitrarily created

16   clusters, the residuals will have means that are systematically different from zero.  Therefore,

17   clustering artificially inflates the standard errors, perhaps by a substantial amount."  *Id.* at 18.

18   Professor Wooldridge concludes that "clustering after collecting a random sample is far from

19   harmless.  The upward bias can be severe, and the situation gets worse as the sample size

20   grows . . . ."  *Id.* at 19.

21       Professor Wooldridge's simulations also demonstrate that clustering standard errors in a

22   population artificially inflates the standard errors:

23           These simulation results cast serious doubt on the practice of clustering when
     the entire population is available. When we take a 10% random sample we know that
24   the proper standard error is, roughly, .049. Across the 1,000 simulations the largest of
     the standard errors is about .051. In other words, the largest standard error we obtain
25   using 1,000 different 10% random samples is never close to the clustered standard
     error using the entire population, .206. Thus, if we insist on clustering the population
26   standard errors, we have the perverse conclusion that virtually any 10% random
     sample produces a much more precise estimate than using the entire population. By
27   contrast, if we use the usual standard error then this paradox disappears: the standard
     error from the population, .016, is much smaller than any of the 1,000 standard errors
28   obtained from a 10% sample. (The smallest is about .049.)

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR    - 9 -

1    Sweeney Reply *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 24.

2    **G.    The Number of Observations Per Cluster Distorts the Standard Error**

3    As confirmed by Professor Wooldridge's simulations, when the number of observations in a

4    cluster increases relative to the number of clusters, the standard error becomes distorted.  Sweeney

5    Reply *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 20.  Running a basic simulation, Professor

6    Wooldridge found that the usual standard errors work well when the total number of observations

7    were at 50.  *Id.*  However, when the number of observations increased to 5,000 – with an average of

8    1,000 observations per cluster – the mean cluster standard is approximately .709, which is close to

9    the predicted value of .707.  *Id.*  Calculating the ratio of the average cluster standard error to the

10    usual standard error is .709/.033 = 21.5  *Id.*  This indicates that the clustered standard error is

11    expected to be about 21.5 times too large – confirming both Professor Noll and Professor

12    Wooldridge's theory that clustering is very harmful and produces standard errors that are too

13    conservative.  *Id.*

14    Further, Apple's attack on Noll's reliance on Angrist and Pischke's book is misguided.

15    Apple argues that the relevant chapter demonstrates the opposite of Noll's opinion – that clustering

16    should be performed when the number of observations per group and the amount of within-group

17    correlation increases because the standard error becomes "increasingly misleading."  Def.'s Mem. at

18    16.  However, this chapter of Angrist and Pischke's book is based on problems when one is already

19    dealing with cluster samples – not when one working is working with an entire population.  Sweeney

20    MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at 4.  When discussing the performance of standard

21    errors in relation to the number of clusters, the authors state that "[i]f 42 is enough for the standard

22    cluster adjustment to be reliable, and if less is too few, then what should you do when the cluster

23    count is low? *First best is to get more clusters by collecting more data*."  *Id.*  This statement only

24    makes sense if the original number of clusters is less than the population of clusters, thereby

25    denoting the ability to obtain more clusters if necessary.  *Id.*

26

27

28

III.   **APPLE'S ATTACKS ON PROFESSOR WOOLDRIDGE ARE UNFOUNDED**

A.   **Professor Wooldridge's Opinions Are Supported by Generally Accepted Econometrics and Wooldridge's Own Peer-Reviewed Publications and Research and Were Not Manufactured for This Litigation**

All of Apple's attacks on Professor Wooldridge fail to withstand scrutiny. First, Wooldridge did not "custom-manufacture" his opinion for the purposes of this litigation.[11] Def.'s Mem. at 14-15. Professor Wooldridge is on published record criticizing clustering in a context closely related to random sampling: stratified sampling with large sample sizes within strata. Sweeney Reply *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 27. With stratified sampling, one first partitions the population, just as with cluster sampling. *Id.* But, rather than sample clusters, one obtains random samples within each stratum. *Id.* In Wooldridge (2003, 2010, Section 20.3.4.), Professor Wooldridge explains that treating stratified samples as cluster samples is likely to be too conservative, which is the same issue here: the usual standard errors are correct and clustered standard errors are too conservative. *Id.*

Apple also argues that Professor Wooldridge's opinion that clustering with random samples is unnecessary and perhaps harmful has no support in economic literature. Besides being incorrect (Wooldridge's own peer-reviewed publications provide such authority), this criticism actually demonstrates that it is Murphy and Topel's clustering opinions that lack support. As Professor Wooldridge explains, econometrics literature does not warn against clustering a random sample because "it is well known how to compute standard errors with random samples, and it does not involve clustering." *Id.* at 28, *see generally id.* at 28-29.

---

[11] The authority Apple relies upon to exclude Professor Wooldridge's declaration are inapposite. In *Cabreara v. Cordis Corp.*, 134 F.3d 1418 (9th Cir. 1998), the expert in question could not support his conclusions with any of his own research or any other known research – unlike here, where Professor Wooldridge relied upon both econometric theory and simulations to support his opinion. Similarly, in *Lust by & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 597 (9th Cir. 1996), the origination of the expert's opinion could only be traced to a point after he began working as a professional plaintiff's witness. Here, Professor Wooldridge began developing his theory on clustering years before he was retained in this litigation and has stated that he has seen this issue come up in other contexts. Kiernan *Daubert* Decl., Ex. 11 (1/6/14 Wooldridge Dep.) at 91:10-16.

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR   - 11 -

1      Apple also criticizes Professor Wooldridge for clustering in previous work when using the

2  entire population. Def.'s Mem. at 14. However, Professor Wooldridge's past work with clustering a

3  population data set are limited to particular circumstances not present here. Sweeney Reply *Daubert*

4  Decl., Ex. 1 (Wooldridge Supp. Decl.) at 30-31. The first circumstance occurs with panel data,

5  where one wants to group the data to control for unobserved effects that can cause bias in the

6  estimates. Clustering is even appropriate when dealing with a random sample of cross-section/time

7  period units here because of the need to control for unobserved factors that are constant over time.

8  *Id.* The second scenario where Professor Wooldridge clustered a population involved cross sectional

9  data, where there were many groups and relatively small group sizes. *Id.* Both of these examples of

10  clustering a population are narrow exceptions that have no parallels to the litigation at hand. *Id.*

11      Finally, it must be noted that if random sampling required the calculation of cluster-robust

12  standard errors, then numerous papers in empirical economics would have to be redone. Sweeney

13  Reply *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 12. Many influential studies, like Angrist

14  and Krueger (1991), Angrist and Evans (1998), and Angrist, Chernozhukov, and Fernandez-Val

15  (2006, Econometricia), use large random samples from the United States Census without using

16  clustering for standard errors. Sweeney Reply *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 11-

17  12.

18      **B.    Plaintiffs Timely Disclosed Wooldridge**

19      This Court should reject Apple's argument that Wooldridge's declaration is untimely.[12]

20  First, Plaintiffs complied with the scheduling order when it timely served Professor Noll's reports in

21  April and November of 2013. Rule 26(a)(2) only requires the disclosure of "the identity of any

22  witness it may use at trial to present evidence." Fed. R. Civ. P. 26(a)(2).

23

---

24  [12]    All three of the out-of-circuit authorities Apple relies upon in support of its argument to
exclude Professor Wooldridge share a common theme, limiting their applicability. In *Reed v. Smith*
25  *& Nephew, Inc.*, 527 F. Supp. 2d 1336, 1348 (W.D. Okla. 2007), *Moore v. Napolitano*, 926
F. Supp. 2d 8, 25 n.12 (D. D.C. 2013), and *Jeffries v. Centre Life Ins. Co.*, No. 1:02-cv-351, 2004
26  U.S. Dist. LEXIS 30769, at *1 (S.D. Ohio Jan. 28, 2004), the court ultimately excluded the untimely
expert opinions because the objecting party never had a chance to depose the expert witness, unlike
27  here. Plaintiffs made Professor Wooldridge fully available for an entire day of deposition, of which
Apple took advantage. Def.'s Mem. at 12.
28

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR    - 12 -

1       Professor Wooldridge is offering testimony on a narrow topic – clustering – in connection

2 with Plaintiffs' *Daubert* motion.  He is not Plaintiffs' merits expert, and Plaintiffs had no obligation

3 to disclose him in April of 2013.  Because Plaintiffs had no obligation to disclose Professor

4 Wooldridge prior to the merits expert disclosure deadlines, his expert report was not untimely.  *See,*

5 *e.g.*, *Nightlight Sys. v. Nitelites Franchise Sys.*, No. 1:04-CV-2112, 2007 U.S. Dist. LEXIS 95538, at

6 *24-*26 (N.D. Ga. May 11, 2007) (permitting the use of an undisclosed expert strictly at the

7 *Daubert* hearing and not at trial, noting that there was enough time for expert reports and depositions

8 prior to the expert hearing); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 739 (3d Cir.

9 1994) (affirming district court's decision to allow an undisclosed expert to testify at *Daubert*

10 hearing).

11       Second, under Rule 37(c)(1), even assuming the disclosure was untimely (which it was not),

12 a party may use a late-disclosed witness if the failure to disclose was "substantially justified or is

13 harmless."  Fed. R. Civ. P. 37(c)(1).  Because Plaintiffs made Professor Wooldridge available for a

14 full day of deposition on January 6, 2014 (which availability Apple took complete advantage of –

15 using even less than the allotted amount of time agreed upon to complete the deposition), there was

16 no prejudice.  Professor Wooldridge also fully responded to Apple's document subpoena.  Further,

17 Apple claims that the arguments proffered by Professor Wooldridge are largely similar to those put

18 forth by Professor Noll, thereby refuting Apple's suggestion that it did not have enough to time to

19 address Professor Wooldridge's theories or opinions.  Def.'s Mem. at 12.  Courts regularly permit

20 expert testimony under similar circumstances.[13]  *See, e.g.*, *Wendt v. Host Int'l*, 125 F.3d 806, 814

21 (9th Cir. 1997) (vacating district court's preclusion of expert testimony because parties had time "to

22 begin the expert disclosure procedure anew"); *Baxter Healthcare Corp. v. Fresenius Med. Care*

23 *Holding, Inc.*, No. C 07-1359, 2009 U.S. Dist. LEXIS 32380, at *8 (N.D. Cal. Apr. 2,

24 2009) (denying motion to preclude evidence and witnesses introduced after fact discovery

25

---

26 [13]    That Apple's former expert (used for class certification only) raised clustering is irrelevant.
Plaintiffs successfully refuted those arguments, as demonstrated by the fact that Judge Ware ruled
27 that Plaintiffs had adequately demonstrated class-wide impact and damages based on Professor
Noll's methodologies, while in turn rejecting Dr. Burtis' opinion (which included her clustering
28 opinions).  Dkt. No. 694 (Order Granting Plaintiffs' Motion for Class Certification) at 6-7.

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR   - 13 -

1  concluded, noting that the opposing party was able to depose the witness); *In re Enron Corp. Sec.,*

2  *Derivative & ERISA Litig.*, MDL No. 1446, 2007 U.S. Dist. LEXIS 98619, at *133-*134 (S.D. Tex.

3  Feb. 1, 2007) (untimely expert report permitted where the expert's theory and data were already

4  available to the opposing party and thus there was no unfair surprise; court noted that there was

5  plenty of time to schedule depositions without disrupting the trial schedule).

6  **IV.    CONCLUSION**

7  Clustering the error residuals in this case is both inappropriate and harmful, as confirmed

8  through Professor Noll's Supplemental Rebuttal Report and Professor Wooldridge's Supplemental

9  Declaration.  Apple's assertions to the contrary falter when analyzed against the facts of the case,

10  economic and econometric theory, and statistical analysis and simulations that Murphy and Topel's

11  clustering opinion fails to fit the facts of this case and should be excluded from the summary

12  judgment record and at trial.

13  DATED:  January 31, 2014                    Respectfully submitted,

14                                              ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
15                                              BONNY E. SWEENEY
                                                THOMAS R. MERRICK
16                                              ALEXANDRA S. BERNAY
                                                CARMEN A. MEDICI
17                                              JENNIFER N. CARINGAL

18

19                                                  s/ Bonny E. Sweeney
                                                  BONNY E. SWEENEY
20
                                                655 West Broadway, Suite 1900
21                                              San Diego, CA  92101
                                                Telephone:  619/231-1058
22                                              619/231-7423 (fax)

23                                              Class Counsel for Plaintiffs

24                                              THE KATRIEL LAW FIRM
                                                ROY A. KATRIEL
25                                              1101 30th Street, N.W., Suite 500
                                                Washington, DC  20007
26                                              Telephone:  202/625-4342
                                                202/330-5593 (fax)

27

28

BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
ANDREW S. FRIEDMAN
FRANCIS J. BALINT, JR.
ELAINE A. RYAN
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone:  602/274-1100
602/274-1199 (fax)

BRAUN LAW GROUP, P.C.
MICHAEL D. BRAUN
10680 West Pico Blvd., Suite 280
Los Angeles, CA 90064
Telephone:  310/836-6000
310/836-6010 (fax)

GLANCY BINKOW & GOLDBERG LLP
BRIAN P. MURRAY
122 East 42nd Street, Suite 2920
New York, NY 10168
Telephone:  212/382-2221
212/382-3944 (fax)

GLANCY BINKOW & GOLDBERG LLP
MICHAEL GOLDBERG
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  310/201-9150
310/201-9160 (fax)

Additional Counsel for Plaintiffs

912519_1

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR      - 15 -

## DECLARATION OF SERVICE BY MAIL AND E-MAIL

I, the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.     That on January 31, 2014, declarant served the attached PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed below.

3.     That there is a regular communication by mail between the place of mailing and the place so addressed.

4.     Also on January 31, 2014, I served the attached PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL on the parties in the within action by e-mail addressed as follows:

**COUNSEL FOR DEFENDANTS:**

| NAME | FIRM | EMAIL |
|---|---|---|
| Robert A. Mittelstaedt | Jones Day | ramittelstaedt@jonesday.com |
| Craig E. Stewart | Jones Day | cestewart@jonesday.com |
| David C. Kiernan | Jones Day | dkiernan@jonesday.com |
| Amir Q. Amiri | Jones Day | aamiri@jonesday.com |

I declare under penalty of perjury that the foregoing is true and correct.  Executed on January 31, 2014, at San Diego, California.

_____
s/ Shonda L. Landry
SHONDA L. LANDRY

912519_1

APPLE TYING
Service List - 1/31/2014    (06 0171)
Page 1 of  1

**Counsel for Defendant(s)**

Robert A. Mittelstaedt
David Craig Kiernan
Amir Q. Amiri
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104
  415/626-3939
  415/875-5700 (Fax)


**Counsel for Plaintiff(s)**

Andrew S. Friedman
Francis J. Balint
Elaine A. Ryan
Bonnett, Fairbourn, Friedman & Balint, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
  602/274-1100
  602/274-1199 (Fax)

Michael D. Braun
Marc L. Godino
Braun Law Group, P.C.
10680 West Pico Blvd., Suite 280
Los Angeles, CA  90064
  310/836-6000
  310/836-6010 (Fax)

Brian P. Murray
Glancy Binkow & Goldberg LLP
122 East 42nd Street, Suite 2920
New York, NY  10005
  212/682-5340
  310/201-9160 (Fax)

Michael Goldberg
Glancy Binkow & Goldberg LLP
1925 Century Park East
Suite 2100
Los Angeles, CA  90067
  310/201-9150
  310/201-9160 (Fax)

Bonny E. Sweeney
Alexandra S. Bernay
Thomas R. Merrick
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
  619/231-1058
  619/231-7423 (Fax)

Roy A. Katriel
The Katriel Law Firm
1101 30th Street, N.W., Suite 500
Washington, DC  20007
  202/625-4342
  866/373-4023 (Fax)