William A. Isaacson (wisaacson@bsfllp.com)
(Admitted *Pro Hac Vice*)
Karen L. Dunn (kdunn@bsfllp.com)
(Admitted *Pro Hac Vice*)
Martha L. Goodman (mgoodman@bsfllp.com)
(Admitted *Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

John F. Cove, Jr. #212213
(jcove@bsfllp.com)
Meredith R. Dearborn #268312
(mdearborn@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460

David C. Kiernan #215335
(dkiernan@jonesday.com)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:   (415) 626-3939
Facsimile:    (415) 875-5700

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION<br><br>_____<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No.  C 05-00037 YGR<br>[CLASS ACTION]<br><br>**APPLE'S NOTICE OF MOTION AND MOTIONS IN LIMINE NOS. 1–3, 7, & 8, AND MOTIONS TO STRIKE EXPERT TESTIMONY; MEMORANDUM OF POINTS AND AUTHORITES**<br><br>Date:      October 29, 2014<br>Time:     9:30 AM<br>Place:    Courtroom 1, 4th Floor<br>Judge:   Honorable Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION; RELIEF SOUGHT ..........................................................1

RELIEF SOUGHT ....................................................................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................4

MOTION *IN LIMINE* NO. 1 TO EXCLUDE AND TO STRIKE EVIDENCE OR
ARGUMENT THAT APPLE COULD HAVE OR SHOULD HAVE AIDED THIRD-PARTY
PRODUCTS' INTEROPERABILITY WITH iPODS ....................................................................4

MOTION *IN LIMINE* NO. 2 TO EXCLUDE AND TO STRIKE REFERENCES TO
PURPORTED LESS RESTRICTIVE ALTERNATIVES ............................................................7

MOTION *IN LIMINE* NO. 3 TO EXCLUDE AND TO STRIKE EVIDENCE OR
ARGUMENT CONTRARY TO THE COURT'S 2011 SUMMARY JUDGMENT ORDER ..10

MOTION *IN LIMINE* NO. 7 TO STRIKE EXPERT TESTIMONY REGARDING
INFERENCES OF INTENT ......................................................................................................14

MOTION *IN LIMINE* NO. 8 TO EXCLUDE AND TO STRIKE EVIDENCE OF ALLEGED
OVERCHARGES ON SALES OF DIGITAL DOWNLOADS FROM iTUNES .......................17

1

**<u>TABLE OF AUTHORITIES</u>**

2

**Cases**

3

*ACT, Inc. v. Sylvan Learning Systems, Inc.*,
    No. C96-334 MJM, 2000 WL 34031484 (N.D. Iowa May 8, 2000) ...........................................11

4

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
    592 F.3d 991 (9th Cir. 2010)..............................................................................................7, 8, 9

5

*Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. L.P.*,
    Nos. CV 05-06419 MRP (AJWx) *et al.*, 2008 WL 7346921 (C.D. Cal. July 9, 2008) .............7, 9

6

*AstraZeneca LP v. Tap Pharm. Products, Inc.*,
    444 F. Supp. 2d 278 (D. Del. 2006) ........................................................................................16

7

*Avila v. Willits Envtl. Remediation Trust*,
    633 F.3d 828 (9th Cir. 2011)..................................................................................................14

8

9

*Barrett v. Atl. Richfield Co.*,
    95 F.3d 375 (5th Cir. 1996)....................................................................................................14

10

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir. 1979) .....................................................................................................5

11

*Bhan v. NME Hospitals, Inc.*,
    929 F.2d 1404 (9th Cir. 1991)..................................................................................................7

12

*Cal. Computer Prods., Inc. v. Int'l Bus. Machs. Corp.*,
    613 F.2d 727 (9th Cir. 1979)....................................................................................................5

13

14

*Culbertson v. Freightliner Corp.*,
    50 F. Supp. 2d 998 (D. Nev. 1999) ...........................................................................................6

15

*Diviero v. Uniroyal Goodrich Tire Co.*,
    919 F. Supp. 1353 (D. Ariz. 1996)..........................................................................................14

16

17

*Fletcher v. Vandyne*,
    No. 2:07-CV-325, 2009 WL 3789925 (S.D. Ohio Feb. 24, 2009) ............................................15

18

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
    703 F.2d 534 (9th Cir. 1983).....................................................................................................5

19

*Gise LLC v. Olympia Terrace Corp.*,
    No. 00cv1325-L(JMA), 2003 WL 25674800 (S.D. Cal. Oct. 3, 2003) ....................................10

20

21

*Guillory v. Tilton*,
    No. CV-07-0775-ROS (PC), 2012 WL 2358591 (E.D. Cal. June 20, 2012)..............................11

22

*Hewlett-Packard Co. v. Mustek Sys., Inc.*,
    No. 99-CV-351-RHW, 2001 WL 36166855 (S.D. Cal. June 11, 2001) ....................................13

23

*Image Technical Serv. Inc. v. Eastman Kodak Co.*,
    903 F.2d 612 (9th Cir. 1990)................................................................................................7, 8

24

25

*In re Rezulin Products Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)......................................................................................15

26

*Interactive Health LLC v. King Kong USA, Inc.*,
    No. CV 06-1902-VBF(PLAx), 2008 WL 8793640 (C.D. Cal. July 24, 2008)..........................10

27

28

ii

*LucasArts Entert. Co. v. Humongous Entert. Co.*,
  870 F. Supp. 285 (N.D. Cal. 1993) ...........................................................................18

*MetroNet Servs. Corp. v. Qwest Corp.*,
  383 F.3d 1124 (9th Cir. 2004).....................................................................................5

*Novell, Inc. v. Microsoft Corp.*,
  731 F.3d 1064 (10th Cir. 2013)..............................................................................4, 5

Redman v. John D. Brush & Co.,
  111 F.3d 1174 (4th Cir. 1997) ..................................................................................14

*Se–Kure Controls, Inc. v. Diam USA, Inc.*,
  No. 06 C 4857, 2009 WL 77463 (N.D. Ill. Jan. 9, 2009)..........................................15

*Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*,
  927 F. Supp. 2d 1069 (D. Or. 2013) .........................................................................14

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013)....................................................................................18

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  Nos. C 04-02123 WHA, *et al.*, 2008 WL 2323856 (N.D. Cal. May 22, 2008) ...........16

*United States v. Lummi Indian Tribe*,
  235 F.3d 443 (9th Cir. 2000).....................................................................................10

*United States v. Mancebo-Santiago*,
  875 F. Supp. 1030 (S.D.N.Y. 1995).............................................................................6

*United States v. Schafer*,
  No. CR. S-05-238 FCD, 2007 WL 2121734 (E.D. Cal. July 24, 2007) .......................6

*United States v. Skillman*,
  922 F.2d 1370 (9th Cir. 1990)....................................................................................11

*United States v. Westinghouse Electric Corp.*,
  648 F.2d 642 (9th Cir. 1981) .....................................................................................18

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004)......................................................................................................5

Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.,
  254 F.3d 706 (8th Cir. 2001).....................................................................................14

**Other Authorities**

III Areeda & Hovenkamp, Antitrust Law ¶658(f)(2) (3d. ed. 2008) .................................9

**Rules**

Fed. R. Evid. 104(a) ........................................................................................................17

Fed. R. Evid. 105 ............................................................................................................13

Fed. R. Evid. 401 .........................................................................................................6, 17

Fed. R. Evid. 401(b) .........................................................................................................6

Fed. R. Evid. 402 .......................................................................................................10, 17

Fed. R. Evid. 403 ....................................................................................................passim

iii

Fed. R. Evid. 702 ..................................................................................................................7, 8, 14

Fed. R. Evid. 703 ..................................................................................................................5, 14

iv

## NOTICE OF MOTION AND MOTION; RELIEF SOUGHT

PLEASE TAKE NOTICE THAT on October 29, 2014 at 9:30 a.m., or as soon thereafter as the matter maybe heard, in the United States District Court, Northern District of California, located at 1301 Clay St., Oakland, CA, Courtroom 1, 4th Floor, before the Honorable Yvonne Gonzalez Rogers, Defendant Apple Inc. ("Apple") will move *in limine* to exclude and to strike from the trial in this matter the items listed below and described more fully in the attached proposed order and memorandum of points and authorities. This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the accompanying declaration of Martha L. Goodman ("Goodman Decl."), and such other matters as may be presented to the Court at the time of the hearing. At the Court's status conference on October 3, 2014, the Court requested that Apple file on October 7, 2014 its motions *in limine* relating to substantive legal issues that, if granted, would result in an order striking particular paragraphs from Plaintiffs' experts' reports. Specifically, the Court asked for a comprehensive citation of paragraphs or page numbers of expert reports affected by these motions, explaining that the Court would strike that material out of the Court's hard-copy binder. Goodman Decl. at ¶ 6. Thus, Apple is filing the motions *in limine* below today, because if granted they would preclude not only argument or fact evidence but also preclude significant portions of Plaintiffs' experts' proposed testimony.[1]

---

[1] Apple provided its Motions *in Limine* Nos. 1–6 to Plaintiffs on September 30, 2014, expecting to meet and confer with Plaintiffs on October 6, and then file them on October 14 pursuant to the Court's Standing Order on Pretrial Instructions In Civil Cases. Goodman Decl. at ¶ 3. In light of the Court's request at the October 3 hearing, however, Apple is filing Motions 1–3 now. Motions *in Limine* Nos. 4–6 do not substantially implicate anticipated expert testimony and thus will be filed on October 14. *Id*. at ¶ 8. Apple provided drafts of Motions *in Limine* Nos. 7 and 8 during the parties' meet-and-confer session on October 6, 2014. *Id*. at ¶ 7. Plaintiffs objected to these motions as untimely and beyond their interpretation of the Court's October 3 order. *Id*. Apple has no objection to extending Plaintiffs' time to respond to Motions *in Limine* Nos. 7 and 8, or to Motions 1–3. *Id*. Apple is filing these motions because it is more efficient to raise these issues now rather than make objections to clearly objectionable testimony during the trial.

APPLE'S MIL/MTS NOS. 1–3, 7, & 8                              No.  C 05-00037 YGR

**RELIEF SOUGHT**

**Motion No. 1:**  Apple moves to exclude all evidence, testimony, argument or references by Plaintiffs intending to show that Apple could have or should have taken steps to aid third parties in developing products that are interoperable with iPods.  In addition to excluding argument and fact evidence, Apple requests that the Court strike ¶¶ 43–48, 62, 69–70 73, 111, 112(6), 112(7), and 112(10) from the April 8, 2013 Expert Report of David Martin (Docket Entry ("DE") 751-6) ("2013 Martin Report"), and material from pages 64–68 in the April 3, 2013 Declaration of Roger Noll (DE 740-14) ("April 3, 2013 Noll Declaration").[2]

**Motion No. 2:**  Apple moves to exclude all evidence, testimony, argument or references by Plaintiffs to purported less restrictive alternatives to Apple's product decisions.  In addition to excluding argument and fact evidence, Apple requests that the Court strike ¶¶ 106–111 from the 2013 Martin Report, and material from page 63 in the April 3, 2013 Noll Declaration.

**Motion No. 3:**  Apple moves to exclude all evidence, testimony, argument or references by Plaintiffs contrary to the Court's May 19, 2011 Order Granting In Part And Denying In Part Defendant's Motion For Summary Judgment; Denying As Premature Plaintiffs' Motion For Class Certification ("2011 SJ Order") (DE 627) and its December 21, 2009 Order Decertifying Classes Without Prejudice to Being Renewed; Inviting Further Motions ("2009 Decertification Order") (DE 303).  In addition to excluding argument and fact evidence, Apple requests that the Court strike ¶¶ 42–70 from the 2013 Martin Report; and material from pages 64–68 in the April 3, 2013 Noll Declaration, and from pages 3–4 and 13–14 in the November 25, 2013 Rebuttal Declaration of Roger Noll (DE 740-14) ("Nov. 25, 2013 Noll Rebuttal Declaration").

**Motion No. 7:**  Apple moves to exclude expert testimony regarding inferences of Apple's and RealNetworks's intent, and also to strike ¶¶ 30, 47, 80–82, 94, 100, 102, 103, 104, 105, 112(11), and 112(14) from the 2013 Martin Report.

---

[2] Noll did not submit expert reports with numbered paragraphs, making reference to the objectionable material somewhat difficult.  For the Court's convenience, Apple will submit to chambers, and to opposing counsel, a binder of the expert reports affected by its motions *in limine* and to strike, with demarcations to indicate precisely which sentences or other material should be struck.

1    **Motion No. 8:**  Apple seeks to exclude all evidence, testimony or argument relating to

2   alleged overcharges on the purchase of enhanced DRM-free replacement audio files from the

3   iTunes Store on the grounds that it is irrelevant and misleading because, among other reasons

4   addressed below, these are not the overcharges that are sought as relief in this case.  Apple also

5   moves to strike material from page 62 in the April 3, 2013 Noll Declaration.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE'S MIL/MTS NOS. 1–3, 7, & 8                          No.  C 05-00037 YGR

**MEMORANDUM OF POINTS AND AUTHORITIES**

**MOTION *IN LIMINE* NO. 1 TO EXCLUDE AND TO STRIKE EVIDENCE OR**

**ARGUMENT THAT APPLE COULD HAVE OR SHOULD HAVE AIDED THIRD-**

**PARTY PRODUCTS' INTEROPERABILITY WITH iPODS**

Apple asks the Court to exclude all evidence, testimony, argument or references by Plaintiffs intending to show that Apple could have or should have taken steps to aid third parties in developing products that are interoperable with iPods.  Apple also requests that the Court strike ¶¶ 43–48, 62, 69–70 73, 111, 112(6), 112(7), and 112(10) from the 2013 Martin Report, and material from pages 64–68 in the April 3, 2013 Noll Declaration.

It has often been recognized that the law imposes no duty to aid, *e.g.*, facilitate interoperability with, competitors.  *E.g., Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074 (10th Cir. 2013), *cert. denied* 134 S. Ct. 1947 (2014) ("Even a monopolist generally has no duty to share (or continue to share) its intellectual or physical property with a rival.").[3]

Plaintiffs seek to admit testimony contrary to this settled law as part of their case.  For example, Plaintiffs' technical expert, David Martin, speculates that Apple could have shared technical information about how FairPlay operates with RealNetworks while still protecting the FairPlay system from corruption.  Specifically, he states that "disclosing sufficient technical information to RealNetworks in order to update Harmony for iTunes 4.7 should have been possible with *little* or *no* threat to the security of FairPlay-encrypted songs sold through the iTunes Store."  2013 Martin Report at ¶¶ 43–44 (emphasis in original); *see also id.* at ¶¶ 45–48 (same).  This theme—that Apple could have provided documentation to RealNetworks and otherwise worked with RealNetworks to ensure its continued compatibility with the iPod—pervades Martin's report.  *Id.* at ¶¶ 62, 69–70, 73, 111, 112(6), 112(7) , 112(10).  Plaintiffs' economic expert, Roger Noll, makes similar errors, charging Apple with creating consumer lock-in because it did not license FairPlay or otherwise encourage compatibility with its competitors'

---

[3] Apple does not concede that it is a monopolist and intends to vigorously dispute Plaintiffs' claim of monopoly power at trial.

4

1    products, and opining that consumers prefer interoperable products.  April 3, 2013 Noll Decl. at

2    10, 12, 64–68.

3         All of this evidence is irrelevant and contrary to law.  Section 2 of the Sherman Act

4    imposed no duty on Apple to share technical information about FairPlay with RealNetworks.

5    *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004)

6    (affirming antitrust law's traditional proposition that imposes "no duty to aid competitors"); *see*

7    *also MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1131 (9th Cir. 2004) ("as a general

8    matter there is no duty to aid competitors") (quotation marks omitted).  As a matter of law, there

9    is also nothing anticompetitive about technological changes that create incompatibility with other

10   devices.  *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 544 (9th Cir. 1983),

11   *overruled on other grounds by Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034 (9th Cir. 1987) ("the

12   introduction of technologically related products, even if incompatible with the products offered by

13   competitors, is alone neither a predatory nor anticompetitive act").  And Apple had no duty to

14   assist third parties seeking to undo that integration by sharing information with them.  *California*

15   *Computer Prods., Inc. v. Int'l Bus. Machs. Corp.*, 613 F.2d 727, 744 (9th Cir. 1979) ("IBM,

16   assuming it was a monopolist . . . . was under no duty to help [rivals] survive or expand.  IBM

17   need not have provided its rivals with disk products to examine and copy . . . ."); *Berkey Photo,*

18   *Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 285 (2d Cir. 1979) (monopolists have no duty to share

19   information to facilitate interoperability); *see also Novell*, 731 F.3d at 1074.

20        Incompatibility is, as a matter of law, not illegal or anticompetitive.  More than that, the

21   Ninth Circuit has held that technological incompatibility ***increases*** competition:

22        The creation of technological incompatibilities, without more, does not foreclose
             competition; rather, *it increases competition* by providing consumers with a
23           choice among differing technologies, advanced and standard, and by providing
             competing manufacturers the incentive to enter the new product market by
24           developing similar products of advanced technology.

25

26   *Foremost Pro*, 703 F.2d at 542 (emphasis added); *see also* Order Granting In Part Mot. for J. on

27   the Pleadings at 9-10 (Oct. 30, 2009) (DE No. 274).

28        Evidence or testimony by Dr. Martin or any other witness, or argument by Plaintiffs'

                                                      5

1  counsel, that Apple could have or should have assisted third parties by facilitating interoperability

2  with iPods is therefore inadmissible under Federal Rule of Evidence 401 because it is not a fact

3  "of consequence in determining the action." FED. R. EVID. 401(b); *United States v. Schafer*, No.

4  CR. S-05-238 FCD, 2007 WL 2121734, at *1 (E.D. Cal. July 24, 2007) (excluding evidence of a

5  defense that was not legally cognizable).

6      As set forth below in Motion No. 3, because this Court already has ruled at summary

7  judgment that Plaintiffs have no evidence that an exception to the general rule that there is no

8  antitrust duty to deal with rivals applies in this case, all evidence and argument to the contrary,

9  including evidence or argument that Apple could have or should have taken steps—such as

10  sharing documentation—with third parties, are also barred by the law of the case doctrine.

11      Even if this evidence were relevant, which it is not, it should be excluded under Rule 403

12  because "its probative value is substantially outweighed by a danger of . . . confusing the issues

13  [or] misleading the jury." FED. R. EVID. 403.  The probative value of this evidence is nil.  Dr.

14  Martin is speculating, and offers no basis in the record for this speculation.  *See, e.g.,* 2013 Martin

15  Report at ¶ 69 ("Apple *could* have provided technical specifications to RealNetworks for the

16  purpose of interoperability without guaranteeing that the specifications would be set in stone for

17  all time") (emphasis added); *id.* at ¶ 112(6) ("technical documentation *could have been* provided

18  to RealNetworks") (emphases added).  Courts exclude speculative testimony under Rule 403.  *See*

19  *Culbertson v. Freightliner Corp.*, 50 F. Supp. 2d 998, 1000 (D. Nev. 1999) (excluding speculative

20  opinion testimony "on how one might cure a defect that [the witness] assumed, but never showed,

21  existed" under Rule 403).

22      Moreover, such evidence would confuse the issues for the jury and mislead it into

23  believing that Apple's decisions not to aid RealNetworks in creating a product interoperable with

24  iPods can form the basis for liability under Section 2.  As a matter of law, it cannot, and such

25  evidence should be excluded.  *See United States v. Mancebo-Santiago*, 875 F. Supp. 1030, 1035

26  n.3 (S.D.N.Y. 1995) (excluding "legally irrelevant" evidence under Rule 403 because of the

27  danger that it would "mislead[] the jury").

28

APPLE'S MIL/MTS NOS. 1–3, 7, & 8                    No.  C 05-00037 YGR

1

**MOTION *IN LIMINE* NO. 2 TO EXCLUDE AND TO STRIKE REFERENCES TO**

2

**PURPORTED LESS RESTRICTIVE ALTERNATIVES**

3        Apple moves to exclude all evidence, testimony, argument or references by Plaintiffs

4   designed to show that Apple could have chosen a "less restrictive alternative" to iTunes 7.0 and

5   related technologies.  Apple also requests that the Court strike ¶¶ 106–111 from the 2013 Martin

6   Report, and material from page 63 in the April 3, 2013 Noll Declaration.

7        In their declarations, both Dr. Martin and Dr. Noll advocate purported "less restrictive

8   alternatives" that Apple could have taken that, in their view, would have been preferable to the

9   product decisions Apple did take.  But these opinions ignore the principle that, in evaluating a

10  firm's unilateral conduct, especially with regard to product design decisions, "there is no least

11  restrictive alternative requirement in the context of a Section 2 claim."  *Image Technical Serv. Inc.*

12  *v. Eastman Kodak Co.*, 903 F.2d 612, 620 (9th Cir. 1990), *aff'd sub nom. Eastman Kodak Co. v.*

13  *Image Technical Servs., Inc.*, 504 U.S. 451 (1992); *Allied Orthopedic Appliances Inc. v. Tyco*

14  *Health Care Grp. LP*, 592 F.3d 991, 998-1000 (9th Cir. 2010) ("*Tyco*").[4]  Because there is no

15  requirement that a competitor use a less restrictive alternative in creating a product, and a court

16  may not second-guess a firm's design decisions, this testimony is inadmissible under Rules 402,

17  403, and 702 as irrelevant, distracting and confusing, unhelpful to the jury, and unduly prejudicial

18  to Apple.

19        ***First***, Plaintiffs' proffer of evidence of purported "less restrictive alternatives" violates

20  these basic legal principles.  For example, in discussing business justifications, Dr. Noll writes that

21  an act with anticompetitive consequences is reasonable only "if it provides benefits to consumers

22  that cannot be obtained by any reasonable alternative, less anticompetitive means."  April 3, 2013

23

24

25        [4] In evaluating contractual restraints under the Sherman Act, courts may look to whether
there were less restrictive alternatives to the allegedly anticompetitive contractual restraints.  *See,*
26  *e.g., Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1413 (9th Cir. 1991) (explaining how less
restrictive alternatives are analyzed in contractual restraint case).  But this analysis of contractual
27  restraints has no application to analysis of a manufacturer's unilateral decisions with regard to
product designs or refusals to deal or interoperate with competitors.

28

APPLE'S MIL/MTS NOS. 1–3, 7, & 8                    No.  C 05-00037 YGR

1  Noll Declaration at 63.  Permitting Dr. Noll to testify in a manner contrary to established law

2  violates Rule 702.

3          The same is true of Plaintiffs' technical expert Dr. Martin.  Dr. Martin's report devotes an

4  entire section to explaining the "Potential Alternatives to Detecting and Blocking Third-Party

5  Software Using Database and Keybag Verification Code" that he asserts would have been less

6  restrictive than the design that it did implement.  2013 Martin Report at § VII, ¶¶ 107–111; *id.* at ¶

7  106 (claiming that two models of iPods "could have been built with database verification disabled"

8  and identifies "one approach" to do so).  In short, Plaintiffs would have the jury compare and

9  balance technical alternatives (e.g., Dr. Martin's proposal that Apple could have "code[d] for

10  robustness rather than rapid failure due to detection of third-party software") in order to determine

11  whether Apple could have designed its product in a way that would have had less effect on a

12  competitor.  This is the exact sort of comparison of alternatives that the Ninth Circuit held should

13  not be applied in Section 2 cases.  *Image Technical*, 903 F.2d at 620; *Tyco*, 592 F.3d at 1000.

14          ***Second***, this evidence from Dr. Noll and Dr. Martin is an invitation for the jury to engage

15  in exactly the sort of balancing of the benefits and detriments of design decisions that the Ninth

16  Circuit forbade in *Tyco*.  There, the plaintiffs claimed that the district court erred because it "did

17  not balance the benefits of Tyco's alleged product improvement against its anticompetitive

18  effects."  *Tyco*, 592 F.3d at 998.  The Ninth Circuit squarely rejected this argument:

19              There is no room in this analysis for balancing the benefits or worth of a
20       product improvement against its anticompetitive effects.  If a monopolist's design
         change is an improvement, it is "necessarily tolerated by the antitrust laws,"
21       unless the monopolist abuses or leverages its monopoly power in some other way
         when introducing the product.  To hold otherwise "would be contrary to the very
22       purpose of the antitrust laws, which is, after all, to foster and ensure competition
         on the merits."  "Antitrust scholars have long recognized the undesirability of
23       having courts oversee product design, and any dampening of technological
         innovation would be at cross-purposes with antitrust law."

24              To weigh the benefits of an improved product design against the resulting
         injuries to competitors is not just unwise, it is unadministrable.  There are no
25       criteria that courts can use to calculate the "right" amount of innovation, which
         would maximize social gains and minimize competitive injury.  A seemingly
26       minor technological improvement today can lead to much greater advances in the
         future.  The balancing test proposed by plaintiffs would therefore require courts to
27       weigh  as-yet-unknown  benefits  against  current  competitive  injuries.   Our
         precedents and the precedents we have relied upon strongly counsel against such
28       a test.

1    *Id.* at 1000 (citations omitted).

2         Permitting this evidence to go to the jury raises the exact danger of confusion that courts

3    have warned against and would result in just the sort of "unadministrable" exercise that the Ninth

4    Circuit forbade in *Tyco.*  592 F.3d at 1000; *see also Allied Orthopedic Appliances, Inc. v. Tyco*

5    *Health Care Grp. L.P.,* Nos. CV 05-06419 MRP (AJWx) *et al.*, 2008 WL 7346921, at *16 (C.D.

6    Cal. July 9, 2008), *aff'd*, 592 F.3d 991 (9th Cir. 2010) ("The Court cannot and will not assess how

7    difficult it would be for [defendant] . . . to ensure backwards-compatibility with [the competitive

8    product] and thus provide a design that is less restrictive of generic competition").  And, if courts

9    have properly refused to undertake these analyses of less restrictive alternatives, then "[s]urely

10   juries should not determine whether the defendant's product innovation could have moved along

11   some alternative 'less restrictive' path that would have injured the plaintiff less."  III Areeda &

12   Hovenkamp, Antitrust Law ¶ 658(f)(2) (3d. ed. 2008).[5]  This is particularly so where the topics at

13   issue are highly technical design choices made in the course of software engineering for purposes

14   of encryption and other levels of security.

15        **Finally**, this evidence is irrelevant because it presumes that Apple had a duty to make its

16   products interoperable with those of its competitors, a premise that, as explained in Motion No. 1

17   and as this Court has consistently held, is false.

18        For the foregoing reasons, Apple respectfully requests that the Court exclude any

19   argument, evidence, testimony, or reference to less restrictive alternatives at trial under Rules 402

20   and 403.

21

22

23

24

25   ───────────────

[5] Areeda and Hovenkamp explain some of complications of assessing lesser restrictive

26   alternatives, particularly in unilateral actions, such as this case:  The "principal problem in dealing
     with proffered less restrictive alternatives is that business procedures are worked out by trial and

27   error and experience."  Thus, finders of fact may not be "in a good position to determine whether a
     less restrictive alternative is in fact viable under the circumstances, particularly when its fact

28   finders are not experienced in business."  Areeda & Hovenkamp, Antitrust Law ¶ 658(f)(2).

APPLE'S MIL/MTS NOS. 1–3, 7, & 8                    No.  C 05-00037 YGR

**MOTION *IN LIMINE* NO. 3 TO EXCLUDE AND TO STRIKE EVIDENCE OR**

**ARGUMENT CONTRARY TO THE COURT'S 2011 SUMMARY JUDGMENT ORDER**

Apple asks the Court to exclude all evidence, testimony, argument, or references by counsel contrary to the Court's 2011 SJ Order (DE 627) and its 2009 Decertification Order (DE 303).  Apple also requests that the Court strike ¶¶ 42–70 from the 2013 Martin Report; material from pages 64–68 in the April 3, 2013 Noll Declaration; and from pages 3–4 and 13–14 in the Nov. 25, 2013 Noll Rebuttal Declaration.

In 2011, this Court ruled that Apple's development and distribution of the iTunes 4.7 software update was lawful as a genuine product improvement.  2011 SJ Order at 7–10.  This Court also ruled that the only remaining issue in the case is the legality of a single software update, iTunes 7.0.  *Id.* at 11–13.  In 2009, consistent with controlling precedent, this Court ruled that integration of iTunes, iPods, and the iTunes Store ("iTS") was lawful.  2009 Decertification Order at 9; *see also* Order Granting in Part Mot. for J. on the Pleadings at 8-9 (May 15, 2009) (DE 213); Order Granting In Part Mot. for J. on the Pleadings at 9-10 (Oct. 30, 2009) (DE No. 274).  Evidence and argument in conflict with the rulings of this Court should be excluded because they are irrelevant and contrary to the law of this case, and would be unduly prejudicial to Apple, confusing to the jury, and a waste of time if introduced.  FED. R. EVID. 402, 403.

Because the lawfulness of iTunes 4.7 is the law of the case, any evidence or argument intending to show that iTunes 4.7 was unlawful or anticompetitive, or that it can form the basis of finding damages, must be excluded.  *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (under the law of the case doctrine, a court is "precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case").  Courts routinely exclude evidence based on the law of the case.  *See Gise LLC v. Olympia Terrace Corp.*, No. 00cv1325-L(JMA), 2003 WL 25674800, at *9–10 (S.D. Cal. Oct. 3, 2003) (excluding evidence based on the law of the case doctrine); *Interactive Health LLC v. King Kong USA, Inc.*, No. CV 06-1902-VBF(PLAx), 2008 WL 8793640, at *6 (C.D. Cal. July 24, 2008) (same).  Courts also exclude evidence rendered irrelevant by an issue decided on summary judgment.  For example, in *ACT, Inc. v. Sylvan Learning Systems, Inc.*, the district court granted a motion *in limine* seeking to

exclude evidence tending to prove the plaintiff's Section 2 claim where the court had already ruled the defendant had a legitimate business reason for engaging in the challenged conduct.  No. C96-334 MJM, 2000 WL 34031484, at *6 (N.D. Iowa May 8, 2000), *aff'd*, 296 F.3d 657 (8th Cir. 2002).  The court reasoned that the plaintiff "cannot recover damages derived from legal conduct," and excluded any evidence of damages derived from that legal conduct.  *Id.*  Precisely the same reasoning applies here.

Similarly, the lawfulness of Apple's integration of iTunes, iPods, and the iTunes Store is the law of the case and evidence and argument intending to establish that this integration is unlawful or anticompetitive must be excluded.  Relying on controlling precedent, this Court ruled that the integration of these products was lawful.  2009 Decertification Order at 9 ("The Sherman Act does not outlaw monopoly power gained from the popularity of interoperable products even if incompatible with the products of competitors"); *see also* 2011 SJ Order at 4 ("'technological ties between Apple products when they were first introduced into the market' … by itself does not constitute anticompetitive conduct") (citing the 2009 Decertification Order at 2); *see also* Order Granting in Part Mot. for J. on the Pleadings at 8-9 (May 15, 2009) (DE 213); Order Granting In Part Mot. for J. on the Pleadings at 9-10 (Oct. 30, 2009) (DE No. 274).  Evidence and argument intending to show that Apple's integration of its products is illegal or anticompetitive is properly excluded for the same reasons that evidence and argument intended to show that iTunes 4.7 was illegal or anticompetitive should be excluded.

Moreover, even if Plaintiffs could somehow put forward a theory of relevance for legal arguments that have been rejected by this Court, such argument and evidence should be excluded because its probative value is substantially outweighed by the dangers of unfair prejudice, confusing the issues, and misleading the jury.  FED. R. EVID. 403.  Rule 403 requires exclusion of evidence like this that "may cause a jury to base its decision on something other than the established propositions in the case."  *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990) (quotation  marks omitted); *Guillory v. Tilton*, No. CV-07-0775-ROS (PC), 2012 WL 2358591, at *2 (E.D. Cal. June 20, 2012) (excluding evidence regarding claims dismissed on summary judgment).

1    Despite this Court's rulings, Plaintiffs have persistently shown that they will attempt to

2    introduce contrary evidence and argument at trial—particularly concerning Apple's integrated

3    platform. *See, e.g.*, Summ. J. Hr'g Tr. 65:17–19 (Aug. 13, 2014) (DE 787) (Ms. Sweeney: "This

4    case is about Apple locking out all rivals by virtue of its lack of interoperability"); Pls.' Mem. of

5    Law in Opp. to Def.'s 2013 Mot. for Summ. J. at 3 (DE 751-3) ("Apple's closed system locked

6    iTS customers into using the iPod for direct playback of their digital playback of their digital

7    audio files . . . . This closed system allowed Apple to rapidly leverage its market power in the

8    digital audio file market into the market for portable digital media players"); Pls.' Mem. of Law

9    in Opp. to Def.'s 2011 Mot. for Summ. J. at 5 (DE No. 514) ("Apple maintained its closed system

10   by rejecting several requests to license FairPlay, even though Apple executives recognized that

11   such licensing would provide benefits to Apple"); *id*. at 7–8 ("instead of welcoming the

12   interoperability created by RealNetworks, Apple unfairly disparaged its competitor and made

13   clear to any other would-be rival that Apple would take all necessary steps to prevent any inroads

14   into its dual monopolies"); April 3, 2013 Noll Declaration at 64–68 ("The experiences with

15   consumer electronics over the last decade do not support the conclusion that integrated systems

16   are better"); Nov. 25, 2013 Noll Rebuttal Declaration at 3–4, 13–14 (claiming that Apple's expert

17   "does not explain why disabling the use of competing products is necessary or beneficial to

18   consumers," and that "[t]he relevant issue is . . . whether forcing consumers to buy either all or no

19   complementary products from Apple is a reasonable restriction on competition"); 2013 Martin

20   Report at ¶¶ 42–70 (discussing the effect on Harmony of iTunes 4.7; claiming that Apple should

21   have shared technical documentation with RealNetworks in order to prevent some of the

22   identified risks to the system that RealNetworks posed).

23   Apple does not seek to exclude all evidence regarding iTunes 4.7 or Apple's integrated

24   platform. This evidence is necessary for context and as a basis for understanding decisions made

25   by Apple regarding iTunes 7.0. Rather, Apple seeks to exclude evidence and argument only

26

27

28

APPLE'S MIL/MTS NOS. 1–3, 7, & 8                    No.  C 05-00037 YGR

1    where it is intended to show—explicitly or implicitly—that iTunes 4.7 and/or Apple's integration

2    of iTunes, iPods, and the iTS were anticompetitive or illegal, contrary to this Court's rulings.[6]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    _____

      [6] In its proposed jury instructions, Apple will respectfully request an opening and closing
24    instruction to the jury that the Court has already found that Apple's conduct with regard to the
      development and integration of iTunes, iPods, and the iTS, as well as iTunes version 4.7, was not
25    unlawful or anticompetitive, and that the jury may not consider evidence of Apple's conduct with
      regard to any of those technologies (other than iTunes 7.0) as a basis for any finding of liability or
26    damages against Apple.  An instruction is appropriate in this instance.  *See, e.g.*, *Hewlett-Packard
      Co. v. Mustek Sys., Inc.*, No. 99-CV-351-RHW, 2001 WL 36166855, at *4 (S.D. Cal. June 11,
27    2001) (providing jury instruction based on summary judgment ruling); Fed. R. Evid. 105 ("If the
      court admits evidence that is admissible [for a particular purpose] . . . the court, on timely request,
28    must restrict the evidence to its proper scope and instruct the jury accordingly.").

_____

13

1
2

**MOTION *IN LIMINE* NO. 7 TO STRIKE EXPERT TESTIMONY REGARDING**

**INFERENCES OF INTENT**

3   Apple moves *in limine* pursuant to Federal Rules of Evidence 403, 702, and 703 to strike

4   ¶¶ 30, 47, 80–82, 94, 100, 102, 103, 104, 105, 112(11), and 112(14) from the 2013 Martin Report.

5   In those paragraphs, Dr. Martin, a technical expert, purports to offer an opinion of

6   RealNetworks's and Apple's intent.  Apple does not object to Dr. Martin's discussion of the

7   meaning of technical terms in Apple documents.  However, Dr. Martin's attempt to draw

8   conclusions from those documents about what RealNetworks or Apple meant, wanted, or feared is

9   far outside the scope of his (or any other expert's) expertise.

10   Expert opinion is inadmissible if it is "outside the areas of [the expert's] expertise." *Avila*

11   *v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 839 (9th Cir. 2011).[7]  Mind-reading is not a

12   discipline at all, and "courts routinely exclude as impermissible expert testimony as to intent,

13   motive, or state of mind." *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ*., 927

14   F. Supp. 2d 1069, 1077-78 (D. Or. 2013) (collecting cases; excluding testimony about "the intent,

15   motive, or state of mind of the EOU decisionmakers, the unexpressed reasons for their decisions,

16   or what they may have been thinking").

17   Even though an expert may be able to understand a product and testify about how it works,

18   any opinion regarding a firm's motivation in designing or offering that product—regardless of

19   whether it is a conclusion the expert feels he is entitled to draw based on his specialized

20   knowledge—must be excluded.  Such evidence is unreliable speculation, outside the expert's

21   expertise, and would invade the province of the jury, whose job it is to determine matters of intent.

22

23

24

25

26

27

28

[7] *See also Barrett v. Atl. Richfield Co*., 95 F.3d 375, 382 (5th Cir. 1996) (finding expert not qualified to testify about correlation of chemical effects on rats and on humans); *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.,* 254 F.3d 706, 715 (8th Cir. 2001) (finding a hydrologist specializing in flood risk management not qualified to testify to safe warehousing practices in an action in which a warehouse was flooded); *Redman v. John D. Brush & Co.,* 111 F.3d 1174, 1179 (4th Cir. 1997) (finding a metallurgic engineer, who was qualified to testify about the properties of metal, not qualified to testify about industry standards for a safe). Moreover, if an expert's qualifications are based on scientific knowledge, then "the expertise must be coextensive with the particular scientific discipline." *Diviero v. Uniroyal Goodrich Tire Co.*, 919 F. Supp. 1353, 1357 (D. Ariz. 1996) (analogizing that "expertise in the technology of fruit is not sufficient when analyzing the science of apples") *aff'd*, 114 F.3d 851 (9th Cir. 1997).

1   *Se–Kure Controls, Inc. v. Diam USA, Inc*., No. 06 C 4857, 2009 WL 77463, at *2 (N.D. Ill. Jan. 9,

2   2009) (an expert is "not a mind-reader.  He may not testify that he knows [patentee's] intent to

3   hide certain information nor may he testify that he knows [patentee] lied about certain

4   information."); *In re Rezulin Products Liab. Litig*., 309 F. Supp. 2d 531, 546-47 (S.D.N.Y. 2004)

5   (excluding expert testimony regarding the motive, intent, and state of mind of the defendant and

6   third parties, because, among other things, "[i]nferences about the intent or motive of parties or

7   others lie outside the bounds of expert testimony," have "no basis in any relevant body of

8   knowledge or expertise," and would invade the province of the jury).

9          Dr. Martin is a computer scientist.  He can testify about his review of source code and

10   opine regarding how the programs at issue in this lawsuit function.  He may not purport to divine

11   from that review the subjective intent of either Apple or RealNetworks in making the software

12   updates at issue here.  Yet that is exactly what Dr. Martin wants to do.

13          ***First***, Dr. Martin improperly speculates about Apple's state of mind.  Based on his review

14   of a cherry-picked population of Apple documents and testimony, he claims to divine the

15   "purpose" and the "point" of Apple's software changes.  2013 Martin Report at ¶¶ 80–82, 103,

16   112(11), 112(14).  The "purposes" he invents are flatly contrary to the record testimony, a fact he

17   admits.  *Id.* at ¶ 82.  Dr. Martin goes so far as to claim that his own belief about what Apple's

18   intent must have been should trump Apple's employee's sworn testimony about what he in fact

19   intended.  *Id.*  This kind of improper speculation as to an Apple's engineer's state of mind in

20   designing software changes is beyond the scope of his expertise, unhelpful to the jury, and

21   speculative.  *Fletcher v. Vandyne*, No. 2:07-CV-325, 2009 WL 3789925, at *3 (S.D. Ohio Feb. 24,

22   2009) ("the Court will not permit the expert to speculate as to defendants' states of mind").

23          ***Second***, Dr. Martin also purports to offer thinly disguised observations about Apple's

24   software that amount to a *de facto* opinion as to Apple's intent.  For example, Dr. Martin claims

25   that "the only apparent function of the keybag verification code is to prevent content from being

26   placed on an iPod," 2013 Martin Report at ¶ 100; that the only "feature" Apple added was for

27   increased incompatibility, *id.* at ¶ 102; and that Apple must have received increased service calls

28

APPLE'S MIL/MTS NOS. 1–3, 7, & 8                    No.  C 05-00037 YGR

1  as a result of its changes, *id.* at ¶¶ 104–105.  This testimony is also unduly prejudicial under Rule

2  403 because it amounts to an impermissible opinion regarding Apple's intent.

3        ***Third***, Dr. Martin speculates that RealNetworks's Harmony was not "intended or able to

4  strip FairPlay encryption from any songs purchased through the iTunes Store."  2013 Martin

5  Report at ¶ 30.  He likewise claims that destroying the database, keybag, or song files "would

6  never be the intent or function of a program designed to play music on an iPod," such as

7  RealPlayer.  *Id.* at ¶ 47.  RealPlayer is not, and has never been, a party to this case.  Neither

8  RealNetworks nor any of its employees was ever deposed or subject to discovery.  It produced no

9  documents, source code, or witness for deposition, and Dr. Martin did not conduct any

10  experiments in which he used Harmony to transfer any RealNetworks Music Store songs onto an

11  iPod.  Any testimony about RealNetworks's "intent" or what the software was "intended" to do is

12  rank speculation, is outside the scope of Dr. Martin's expertise, and invades the province of the

13  jury.  *Therasense, Inc. v. Becton, Dickinson & Co.*, Nos. C 04-02123 WHA *et al.*, 2008 WL

14  2323856, at *1 (N.D. Cal. May 22, 2008) ("One of the worst abuses in civil litigation is the

15  attempted spoon-feeding of client-prepared and lawyer-orchestrated 'facts' to a hired expert who

16  then 'relies' on the information to express an opinion"); *AstraZeneca LP v. Tap Pharm. Products*,

17  Inc., 444 F. Supp. 2d 278, 293 (D. Del. 2006) ("Expert witnesses are not permitted to testify

18  regarding the defendant's intent, motive, or state of mind, or evidence by which such state of mind

19  may be inferred"; excluding testimony regarding the defendant's "recogni[tion]" of infringement,

20  or whether it may "feel" that a license is necessary or "concluded" whether it infringed) (quotation

21  marks omitted).

22        For all of these reasons, Apple respectfully requests that the Court strike ¶¶ 30, 47, 80–82,

23  94, 100, 102, 103, 104, 105, 112(11), and 112(14) from the 2013 Martin Report and enter an order

24  precluding expert testimony on Apple's or RealNetworks's intent.

25

26

27

28

APPLE'S MIL/MTS NOS. 1–3, 7, & 8                    No.  C 05-00037 YGR

1    **MOTION *IN LIMINE* NO. 8 TO EXCLUDE AND TO STRIKE EVIDENCE OF ALLEGED**

2    **OVERCHARGES ON SALES OF DIGITAL DOWNLOADS FROM iTUNES**

3        In Plaintiffs' draft Pretrial Conference Statement, Plaintiffs proposed an allegedly

4    "undisputed" fact regarding iTunes Plus, an enhanced-audio-quality, DRM-free format, claiming

5    that Apple's customers "spent more than $20 million" in iTunes Plus upgrades, Plaintiffs'

6    apparent purpose is to suggest that payments for enhanced DRM-free upgrades somehow

7    constitute anticompetitive harm.  Goodman Decl. at ¶¶ 4-5.  Pursuant to Federal Rules of

8    Evidence 104(a), 401, 402, and 403, Apple seeks to exclude all evidence, testimony or argument

9    relating to alleged overcharges on the purchase of DRM-free replacement audio files from the

10   iTunes Store on the grounds that it is irrelevant to this case, highly misleading, and would be

11   unfairly prejudicial to Apple.

12       At various times between 2007 and 2009, Apple and the major record labels negotiated

13   contracts that, in addition to allowing Apple to offer DRM-free music through the iTunes Store,

14   enabled the iTunes Store to offer DRM-free audio upgrades to consumers who had previously

15   purchased DRM-protected songs.  The contracts allocated the lion's share of these revenues to the

16   rights holders, with a small portion to be kept by Apple.  These upgrades consisted of enhanced

17   audio files featuring 256 kbps encoding (the originals were 128kbps), which provided enhanced

18   audio quality, and cost $0.30 a song.  Amiri Decl. ISO of Motion for Summary Judgment, Ex. 12

19   (Apple Press Release, *Apple Announces iTunes 8 with Amazing New Features*, Sept. 12, 2006)

20   (DE 739-12).  In his April 3, 2014 declaration, Dr. Noll opined that the total paid by consumers

21   for these upgrades constituted harm to consumers, impliedly caused by Apple's alleged

22   anticompetitive conduct.  April 3, 2013 Noll Declaration at 62.  This testimony should be stricken

23   and excluded.

24       ***First***, this evidence is irrelevant.  This theory of harm is not related to the class that

25   Plaintiffs sought to have certified nor to the actual damages claimed.  Plaintiffs moved to certify a

26   class comprised of direct purchasers of iPod allegedly damaged by iPod overcharges, and their

27   damages claim is based on those alleged overcharges.  Order Granting Pls' Motion For Class

28   Certification at 5 (Nov. 22, 2011) (DE 694); Pls' Renewed Motion for Class Certification at 7

(Jan. 18, 2011) (DE 475).  They have never sought damages for iTS purchases, nor even alleged

that iTS prices were artificially inflated.[8]  Moreover, few, if any, of the reseller class members

purchased any songs from iTS at any point, much less the $0.30 upgrades, nor did the majority of

individual class members purchase these upgrades.[9]  Thus, interjecting evidence of this alleged

harm, even if it were legally cognizable, would serve no purpose but to confuse the jury.

   *Second*, suggesting that requiring consumers to pay extra for DRM-free music over what

they paid for DRM-protected music is cognizable legal harm of any sort, much less antitrust

injury, is a radical notion that undercuts the very essence of intellectual property protection.  *See*

*LucasArts Entm't Co. v. Humongous Entm't Co.*, 870 F. Supp. 285, 290 (N.D. Cal. 1993) ("The

right to license a patent or copyright (and to dictate the terms of such a license) is the

'untrammeled right' of the intellectual property owner. . . . Accordingly, a court must tread

gingerly before permitting an antitrust plaintiff to modify the scope of the statutory copyright

grant that Congress has seen fit to impose.") (quoting *United States v. Westinghouse Electric*

*Corp.*, 648 F.2d 642, 647 (9th Cir. 1981)).  Even Plaintiffs have not seriously disputed that the

rights holders are permitted to license their music on the terms and conditions that they decide,

including technological restrictions like DRM.  Pls.' Am. Compl. ¶ 42 ("From the inception of

Apple's iTS, the major record labels, Sony, Universal, EMI, Warner and BMG, all required

Audio Downloads to be sold in protected format.")

   *Finally*, this evidence is deeply misleading because it argues that higher prices may not be

charged for a new product—DRM free music.  Moreover, the DRM free music offered better

audio quality (256 kbps).  Thus, these arguments about charging a higher price for a better product

would be prejudicial and confusing if introduced for the purpose of supporting an antitrust claim

related to iPod prices.

---

[8] The Ninth Circuit has already affirmed the dismissal of the antitrust claims brought by a purported class of iTS purchasers for alleged overcharges on iTS purchases.  *Somers v. Apple Inc.*, 729 F.3d 953 (9th Cir. 2013).

[9] Dr. Noll says 1.1 million iPods accounts purchased upgrades, out of 48,060,749 claimed iPods sales in the class.  April 3, 2013 Noll Declaration at 62, 83.  Of these 1.1 million accounts, he does not say how many are class members.

18

1    Allowing evidence and argument that charging more for additional rights is a source of

2    legal harm would be prejudicial under any circumstances, but especially because some potential

3    jurors may have the not-uncommon attitude that all digital music should freely available and that

4    restraints on that concept are anti-consumer.  In addition, these alleged damages are not part of the

5    class claim and would require that precious trial time be spent on an irrelevant issue.  Thus, this

6    testimony should be stricken and excluded.

7

8    Dated: October 7, 2014                          BOIES, SCHILLER & FLEXNER LLP

9

10                                                   By: _/s/ William A. Isaacson_____
                                                         William A. Isaacson

11                                                   Counsel for Defendant APPLE INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE'S MIL/MTS NOS. 1–3, 7, & 8                          No.  C 05-00037 YGR