Robert A. Mittelstaedt (State Bar No. 60359)
ramittelstaedt@JonesDay.com
Craig E. Stewart (State Bar No. 129530)
cestewart@JonesDay.com
David C. Kiernan (State Bar No. 129530)
dkiernan@JonesDay.com
Amir Q. Amiri (State Bar No. 271224)
aamiri@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:  +1.415.626.3939
Facsimile:  +1.415.875.5700

Attorneys for Defendant
APPLE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE APPLE iPOD iTUNES ANTITRUST LITIGATION<br><br>_____<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No. C 05-00037 YGR<br>[CLASS ACTION]<br><br>**APPLE'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE SUPPLEMENTAL EXPERT REPORT OF KEVIN M. MURPHY AND ROBERT H. TOPEL, DATED DECEMBER 20, 2013**<br><br>Date:        February 18, 2014<br>Time:        2:00 PM<br>Courtroom:   5 |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................ 1
BACKGROUND .............................................................................................................................. 2
ARGUMENT .................................................................................................................................... 7
    A.   Plaintiffs' Motion Violates Local Rule 7-3 ........................................................................ 7
    B.   Apple Has Complied With Rule 26 and This Court's Scheduling Order ........................ 8
    C.   Plaintiffs' Argument For Rule 37 Sanctions Is Misplaced ............................................. 10
CONCLUSION .............................................................................................................................. 12

# TABLE OF AUTHORITIES

Page

### CASES

*Apple Inc. v. Samsung Elecs. Co.*,
   No. 11-cv-01846-LHK, 2011 BL 304343, *3 (N.D. Cal. Dec. 2, 2011) .................................. 8

*AZ Holding, L.L.C. v. Frederick*,
   No. CV-08-0276-PHX-LOA, 2009 U.S. Dist. LEXIS 74515 (D. Ariz. Aug. 10, 2009) ........ 11

*Glass Dimensions, Inc. v. State Street Bank & Tr. Co.*,
   290 F.R.D. 11 (D. Mass. 2013) ...................................................................................... 10, 11

*In re Graphics Processing Units Antitrust Litigation*,
   253 F.R.D. 478 (N.D. Cal. 2008) ............................................................................................ 9

*O'Connor v. Boeing N. Am., Inc.*,
   No. CV 97-1554 DT, 2005 U.S. Dist. LEXIS 46233 (C.D. Cal. Sept. 12, 2005) ................... 12

*Oak Point Partners, Inc. v. Lessing*,
   No. 11-03328 LHK, 2012 U.S. Dist. LEXIS 133407 (N.D. Cal. Sept. 18, 2012) ................... 8

*Park West Radiology v. CareCore Nat'l LLC*,
   675 F. Supp. 2d 314 (S.D.N.Y. 2009) ......................................................................... 8, 10, 11

*Silgan Containers v. Nat'l Union Fire Ins.*,
   No. C 09-05971-RS, 2011 U.S. Dist. LEXIS 35010 (N.D. Cal. March 23, 2011) ................... 8

*Storage Tech. Corp. v. Cisco Sys.*,
   No. C 00-1176 SI, 2001 U.S. Dist. LEXIS 25876 (N.D. Cal. Nov. 27, 2001) ....................... 11

*Wendt v. Host Int'l Inc.*,
   125 F.3d 806 (9thCir. 1997) .............................................................................................. 11, 12

### OTHER AUTHORITIES

Fed. R. Civ. P. 26 .............................................................................................................. passim

Fed. R. Civ. P. 26(a) ................................................................................................................ 10

Fed. R. Civ. P. 26(a)(2)(D)(ii) ................................................................................................... 9

Fed. R. Civ. P. 26(a)(2)(E) ........................................................................................................ 8

Fed. R. Civ. P. 26(a)(3) ............................................................................................................. 2

Fed. R. Civ. P. 26(e) ..................................................................................................... 1, 2, 8, 10

Fed. R. Civ. P. 26(e)(1)(A) ................................................................................................. 8, 10

**TABLE OF AUTHORITIES**
**(continued)**

Page

Fed. R. Civ. P. 37 .................................................................................................................. 1, 10, 11

Fed. R. Civ. P. 37(c)(1) ............................................................................................................ 10, 11

Fed. R. Civ. P. 56 ............................................................................................................................ 1

Northern District of California Civil Local Rule 3-4(c)(2) ............................................................. 7

Northern District of California Civil Local Rule 7-3 ...................................................................... 7

Northern District of California Civil Local Rule 7-3(a) ............................................................. 1, 7

**INTRODUCTION**

Plaintiffs' Rule 37 motion to strike the Murphy/Topel Supplemental Report submitted with Apple's Rule 56 motion should be denied for violating Local Rule 7-3(a), which requires procedural and evidentiary objections to be included in the Rule 56 opposition, not in a separate motion to strike. Plaintiffs' disregard of that rule improperly multiplies and complicates these proceedings. Plaintiffs' motion is also substantively wrong.

As detailed below, Apple's initial expert disclosures, among other things, recalculated the statistical significance and alleged damages estimated by Noll's original regressions after accounting for several flaws. In his rebuttal report, instead of defending those models, Noll introduced new regressions that differed in two significant ways. First, the new regressions fixed four defects, which resulted in alleged damages dropping by some $400 million to $98 million. It did not remedy, however, three other defects pointed out by Apple's experts. Second, the new regressions altered the treatment of the iTunes 4.7 and iTunes 7.0 variables in a way that contradicts Noll's sworn testimony regarding how those variables should be treated. The effect of the new treatment was to increase damages from $98 million to $343 million. Due to these changes and because the analysis and computations by Apple's experts were directed at Noll's original regressions and outputs, it was appropriate under Rule 26(e) for them to update their analysis and computations in response to the new models.

Contrary to plaintiffs' unsupported claim, plaintiffs have suffered no cognizable prejudice. They have deposed Apple's experts on the Supplemental Report. And with the submission of a final supplemental rebuttal by Noll, they have had the last word. Apple does not object to the submission of that final report, which gives plaintiffs the alternative relief their motion seeks. Finally, it would be extremely unfair for plaintiffs' expert to testify about the new regression models in his rebuttal report without permitting Apple's experts to update their analysis and calculations based on the new regressions.

For all these reasons, plaintiffs' motion should be denied.

# BACKGROUND

This Court's scheduling order required plaintiffs to submit their Rule 26 expert disclosures by April 1, 2013, Apple to serve its disclosures by July 19, 2013, and plaintiffs to serve any rebuttal disclosures by November 25, 2013. The scheduling order did not set a deadline for supplemental disclosures under Rule 26(e), which means that such disclosures must be made in a "timely manner" but no later than "the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. Proc. 26(e).

**Plaintiffs' Principal and Supplemental Disclosures.** On April 3, 2013, plaintiffs served Noll's report, which presented two regression models that purportedly estimated impact and damages caused by the software update challenged in this case.[1] Two months later, Noll submitted a supplemental report under Rule 26(e) that fixed one of the flaws pointed out at his intervening deposition, dropping his estimated damages by $300 million from approximately $800 million to $511 million. Noll Corrections Rpt, pp. 1-2.[2]

**Apple's Principal Disclosures.** On July 19, 2013, Apple served expert reports of its economists, Murphy and Topel.[3] They demonstrated numerous errors in Noll's regression models that rendered the models unreliable and misleading. Correcting sequentially for each error caused purported damages to fall substantially and, when all the corrections were made, the regressions showed no impact or damages. Topel Rpt. Ex. 13c, Ex. D4c3; Murphy Rpt. ¶ 122 and Ex. 15c. Murphy and Topel presented the results in several exhibits, including the following:

---

[1] "Noll Report," filed as Exhibit 6 to Apple's Motion for Summary Judgment (ECF No. 740) and Exhibit 1 to Plaintiffs' Opposition thereto (ECF No. 751).

[2] Filed as Exhibit 7 to Apple's Motion for Summary Judgment (ECF No. 740).

[3] Filed, as amended, as Exhibit 3 (Murphy Rpt.) & Exhibit 4 (Topel Rpt.) to Apple's Motion for Summary Judgment (ECF No. 740).

## Exhibit 13c (Amended)
## Effects of Correcting Professor Noll's Calculation of Damages

| Class | Resellers Sales | | | | | Direct Sales | | | | | Total Estimated Damages ($M) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Coefficient on iTunes 7.0 | Standard Error | Percentage Overcharge | Sales Allegedly Affected ($M) | Estimated Damages ($M) | Coefficient on iTunes 7.0 | Standard Error | Percentage Overcharge | Sales Allegedly Affected ($M) | Estimated Damages ($M) | |
| **Professor Noll's Reported Damage Calculations (see list of errors in note below)** | | | | | | | | | | | |
| All | 0.032 | 0.00009 | 3.21% | $8,794.9 | $282.4 | 0.061 | 0.00015 | 6.32% | $3,623.6 | $228.8 | $511.2 |
| **+ Incremental Effect of iTunes 7.0 (and Correcting Professor Noll's Percentage Damages Formula and Standard Errors)** | | | | | | | | | | | |
| All | 0.016 | 0.02457 | 1.54% | $8,794.9 | $135.3 | 0.010 | 0.02341 | 1.01% | $3,623.6 | $36.6 | $171.9 |
| **+ Using t instead of log(t)** | | | | | | | | | | | |
| All | 0.010 | 0.02408 | 0.97% | $8,794.9 | $84.9 | 0.007 | 0.02332 | 0.66% | $3,623.6 | $24.1 | $109.0 |
| **+ Controlling for Additional Characteristics** | | | | | | | | | | | |
| All | -0.043 | 0.02307 | -4.41% | $8,794.9 | ($387.8) | -0.038 | 0.02598 | -3.91% | $3,623.6 | ($141.5) | ($529.3) |
| **+ iTunes 7.0 Interacted with Class** | | | | | | | | | | | |
| Classic | -0.067 | 0.01758 | -6.94% | $2,377.5 | ($165.0) | -0.048 | 0.01955 | -4.92% | $959.1 | ($47.2) | ($212.2) |
| Nano | -0.012 | 0.02591 | -1.28% | $4,142.9 | ($52.9) | 0.001 | 0.03015 | 0.02% | $1,423.5 | $0.3 | ($52.6) |
| Shuffle | -0.115 | 0.06708 | -12.47% | $618.2 | ($77.1) | -0.116 | 0.05955 | -12.53% | $273.2 | ($34.2) | ($111.3) |
| | | | | | ($295.0) | | | | | ($81.1) | ($376.1) |

Note: Professor Noll's calculation of damages contains the following errors:
- Coefficients on iTunes 7 were calculated relative to the wrong but-for world.
- Standard errors were estimated incorrectly due to ignored clustering of residuals.
- Percentage Overcharges were calculated using an incorrect formula.

The first row reflects Noll's reported damage calculations; the second row uses the correct but-for world (i.e., leaves iTunes 4.7 indicator variable on), corrects the damages formula, and uses clustering to calculate standard errors; the third row corrects the measure of time; the fourth row adds omitted product attributes; and the fifth row interacts iTunes 7.0 variable with each iPod model. As reflected by the negative estimates in the fourth row ("+ Controlling for Additional Characteristics"), correcting for all errors results in no impact or damages.

**Plaintiffs' Rebuttal Disclosure.** On November 25, 2013, plaintiffs served a 52-page "rebuttal" report by Noll.[4] Rather than defending his original regression models and damages estimates, he submitted new regressions and 180 pages of new exhibits. He made two types of changes. First, as plaintiffs point out (Mot. at p. 3), Noll modified his original models to account

---

[4] "Noll Rebuttal," filed as Exhibit 8 to Apple's Motion for Summary Judgment (ECF No. 740 and Exhibit 2 to Plaintiffs' Opposition thereto (ECF No. 751).

for four flaws pointed out by Murphy and Topel.[5]  Noll Rebuttal, pp. 5-6.  He did not remedy, however, three other flaws identified by Murphy and Topel:  (i) failing to cluster, (ii) using the wrong but-for world, and (iii) failing to control for significant factors that would impact iPod prices.  *Id.* at pp. 6-8.  Second, Noll changed the treatment of the iTunes 4.7 and 7.0 indicator variables.  *Id.* at pp. 5-6, 25-26.  These two variables are the centerpiece of his regression, purporting to measure the impact of updates that blocked Harmony from working on iPods.[6]  The net effect of all these changes was to drop damages from $511.2 million to $343.6 million.[7]

Noll also changed his justification for forcing the regression models to show an immediate and constant impact on price starting on the same day the challenged update was released.  *Id.* at pp. 6-7, 26-27; Noll Dep. Tr. (Dec. 18, 2013) at 50:2-52:11.[8]  In his original report, he opined that impact was caused by customers being "locked in" to purchasing iPods due to their stock of iTunes Store music.  In response to Apple's reports that pointed out that impact (if any) from "lock-in" would necessarily occur *after* the introduction of the challenged update as customers purchased more iTunes music, he abandoned the argument that "lock-in" would cause an immediate impact and replaced it with a new theory that prices would have increased immediately because certain customers supposedly were "locked out" from using an iPod due to the amount of RealNetworks music they owned.  Noll Rebuttal at pp. 26-27.

**Apple's Supplemental Disclosure.**  The changes to Noll's original regressions required Apple's experts to update their analysis and calculations that were directed at Noll's original regressions, including calculations of statistical significance damage estimates.  On December 20,

---

[5] Specifically, Noll's new regression (i) calculated standard errors using quantity weights instead of frequency weights, which caused the number of reseller observations to drop from approximately 113 million to approximately 2.1 million, (ii) used the correct measure of time, (iii) used the correct date for DRM-free iTunes Store music, and (iv) added a variable for when Harmony became operational again in April 2005.

[6] In his initial regression, for all iPods, he turned off the iTunes 4.7 indicator and turned on the iTunes 7.0 indicator as of September 2006, when iTunes 7.0 was released.  In his new regression, however, he treats different types of iPods differently.  He turns off the iTunes 4.7 indicator and turns on the iTunes 7.0 indicator for only those iPods that included the challenged update, e.g., for the iPod nano second generation, but not for any shuffle model.  Noll Rebuttal, pp. 5-6, 25-26.

[7] Compare Noll's damages estimates in Exs. 7 & 8 to Apple's Motion for Summary Judgment (ECF No. 740).

[8] Filed as Exhibit 50 to Plaintiffs Opposition to Summary Judgment (ECF No. 751).

1  2013, two days after deposing Noll on his rebuttal report, Apple timely served a supplemental
2  joint report by Murphy and Topel that did just that.[9]  As Noll recognizes, the Supplemental
3  Report contains "no new arguments" or "new data analysis."  Noll Supp. Rebuttal p. 1.[10]  Instead,
4  it applies the same arguments and data analysis set forth in their initial reports to Noll's new
5  regressions and updates the calculations of statistical significance and estimated damages.
6       Specifically, applying the same analysis as their initial reports, Murphy and Topel first
7  show that clustering is necessary to account for high correlation of residuals in the new
8  regressions and—as depicted in the next chart—recalculated statistical significance and estimated
9  damages using Noll's new models including his new treatment of iTunes 4.7 and iTunes 7.0.
10 Supplemental Report ¶¶ 5, 8-11; JT-1c1 & JT-1c2; App. D3c1 & D3c2.

**Exhibit JT-1c2**

**Effects of Correcting Professor Noll's Calculation of Damages**

| Class | Resellers Sales | | | | | Direct Sales | | | | | Total Estimated Damages ($M) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Coefficient on iTunes 7.0 | Standard Error | Percentage Overcharge | Sales Allegedly Affected ($M) | Estimated Damages ($M) | Coefficient on iTunes 7.0 | Standard Error | Percentage Overcharge | Sales Allegedly Affected ($M) | Estimated Damages ($M) | |
| *Professor Noll's Reported Damage Calculations (see list of errors in note below)* | | | | | | | | | | | |
| All | 0.023 | 0.00062 | 2.38% | $6,268.7 | $148.9 | 0.072 | 0.00016 | 7.45% | $2,613.4 | $194.7 | $343.6 |
| *Correcting Professor Noll's Use of Actual Price Instead of But-For Price as Base to Apply the Alleged Percentage Overcharge* | | | | | | | | | | | |
| All | 0.023 | 0.00062 | 2.32% | $6,268.7 | $145.5 | 0.072 | 0.00016 | 6.93% | $2,613.4 | $181.2 | $326.7 |
| *+ Incremental Effect of iTunes 7.0* | | | | | | | | | | | |
| All | 0.022 | 0.02319 | 2.20% | $6,268.7 | $137.9 | 0.033 | 0.02504 | 3.20% | $2,613.4 | $83.7 | $221.6 |
| *+ Controlling for Additional Characteristics* | | | | | | | | | | | |
| All | -0.012 | 0.03049 | -1.19% | $6,268.7 | ($74.6) | -0.008 | 0.03360 | -0.78% | $2,613.4 | ($20.4) | ($95.0) |
| *+ iTunes 7.0 Interacted with Class* | | | | | | | | | | | |
| Classic | -0.123 | 0.05042 | -13.06% | $997.5 | ($130.3) | -0.158 | 0.04223 | -17.16% | $375.2 | ($64.4) | ($194.7) |
| Nano | -0.004 | 0.02975 | -0.40% | $3,952.6 | ($15.8) | 0.012 | 0.03281 | 1.21% | $1,370.3 | $16.6 | $0.8 |
| | | | | | ($146.0) | | | | | ($47.8) | ($193.9) |

Note: Professor Noll's calculation of damages contains the following errors:
- Coefficients on iTunes 7 were calculated relative to the wrong but-for world.
- Standard errors were estimated incorrectly due to ignored clustering of residuals.
- Percentage Overcharges were calculated using an incorrect formula.

---

[9] "Supplemental Report," filed as Exhibit 14 to Apple's Motion for Summary Judgment (ECF No. 740).

[10] Filed as Exhibit 3 to Plaintiffs' Opposition to Apple's Motion for Summary Judgment (ECF No. 751).

1    Second, Murphy and Topel addressed Noll's new treatment of iTunes 4.7 and iTunes 7.0 indicator variables and reran the new regressions using Noll's original treatment of iTunes 4.7 and iTunes 7.0 indicator variables (*i.e.*, turning on the iTunes 7.0 indicator variable and turning off the iTunes 4.7 for all models on September 9, 2006). Supplemental Report ¶ 7 & Exs. JT-2c1, JT-2c2 thereto. The results are displayed in Exhibits JT-2c1 and JT-2c2:

## Exhibit JT-2c2
### Effects of Correcting Professor Noll's Calculation of Damages
### (Turning On iTunes 7.0 For All Models)

| Class | Resellers Sales | | | | | Direct Sales | | | | | Total Estimated Damages ($M) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Coefficient on iTunes 7.0 | Standard Error | Percentage Overcharge | Sales Allegedly Affected ($M) | Estimated Damages ($M) | Coefficient on iTunes 7.0 | Standard Error | Percentage Overcharge | Sales Allegedly Affected ($M) | Estimated Damages ($M) | |
| *Professor Noll's Reported Damage Calculations (see list of errors in note below)* | | | | | | | | | | | |
| All | -0.005 | 0.00064 | -0.47% | $8,156.0 | ($38.1) | 0.028 | 0.00016 | 2.85% | $3,439.9 | $98.0 | $59.9 |
| *Correcting Professor Noll's Use of Actual Price Instead of But-For Price as Base to Apply the Alleged Percentage Overcharge* | | | | | | | | | | | |
| All | -0.005 | 0.00064 | -0.47% | $8,156.0 | ($38.3) | 0.028 | 0.00016 | 2.77% | $3,439.9 | $95.3 | $57.0 |
| *+ Incremental Effect of iTunes 7.0* | | | | | | | | | | | |
| All | -0.004 | 0.02525 | -0.41% | $8,156.0 | ($33.3) | -0.006 | 0.02355 | -0.65% | $3,439.9 | ($22.4) | ($55.7) |
| *+ Controlling for Additional Characteristics* | | | | | | | | | | | |
| All | -0.045 | 0.02506 | -4.60% | $8,156.0 | ($375.2) | -0.038 | 0.02718 | -3.86% | $3,439.9 | ($132.7) | ($507.8) |
| *+ iTunes 7.0 Interacted with Class* | | | | | | | | | | | |
| Classic | -0.068 | 0.01752 | -6.99% | $2,303.9 | ($161.0) | -0.048 | 0.01956 | -4.95% | $939.5 | ($46.5) | ($207.5) |
| Nano | -0.068 | 0.01752 | -6.99% | $3,959.7 | ($276.7) | -0.048 | 0.01956 | -4.95% | $1,373.6 | ($68.0) | ($344.7) |
| Shuffle | -0.015 | 0.02870 | -1.47% | $573.7 | ($8.4) | 0.002 | 0.03223 | 0.17% | $258.9 | $0.4 | ($8.0) |
| | | | | | ($446.1) | | | | | ($114.1) | ($560.3) |

Note: Professor Noll's calculation of damages contains the following errors:
- Coefficients on iTunes 7 were calculated relative to the wrong but-for world.
- Standard errors were estimated incorrectly due to ignored clustering of residuals.
- Percentage Overchages were calculated using an incorrect formula.

As the first row shows, without making any other adjustments other than restoring how he originally treated iTunes 4.7 and 7.0, Noll's new regressions estimate no damages for resellers and estimate $98 million in damages for direct purchasers. Supplemental Report ¶ 7 & Exs. JT-2c1, JT-2c2 thereto.[11] This also shows that, contrary to Noll' assertion, the four changes he made

---

[11] And as reflected by the negative estimates in the third row, with the proper but-for world (*i.e.*, not turning off the iTunes 4.7 indicator variable), there is no impact or damages for resellers direct consumers.

to his original models did not have "only a small effect on the amount of damages." What he calls a "small effect" was in fact a drop of alleged damages from $511 million from his original models to $98 million as shown in the first row above. Noll then changed his treatment of the iTunes 4.7 and iTunes 7.0 variables to offset that $400 million reduction in damages from those changes to get to his current estimate of $343 million shown in Exhibit JT-1c2 above.[12]

Finally, Murphy and Topel also explained why Noll's new "lock-out" theory of immediate impact fails. That theory assumes without any factual support that sufficient numbers of consumers were locked out to impact the elasticity of demand of iPods and that Apple considered that impact when setting prices for iPods. Supplemental Report ¶¶ 23-26.

**Plaintiffs' Supplemental Rebuttal Disclosure:** On January 13, 2014, after deposing Murphy and Topel on their Supplemental Report, plaintiffs served a Noll supplemental rebuttal report responding to the Supplemental Report.

## ARGUMENT

Plaintiffs' motion to strike the Murphy and Topel Supplemental Report should be denied for the following reasons:

**A.    Plaintiffs' Motion Violates Local Rule 7-3.**

Under the Local Rules, oppositions to dispositive motions must be no more than 25 pages and include all procedural and evidentiary objections, including objections to expert opinions. LR 3-4(c)(2); LR 7-3(a). Plaintiffs, however, filed a 25 page opposition to Apple's Motion for Summary Judgment and a separate 5-page "motion to strike" the Supplemental Report. Because

---

[12] As Murphy and Topel show, Noll had no legitimate basis for his new treatment of iTunes 7.0 and it is contrary to his sworn testimony on how it should be treated. Supplemental Report ¶¶ 12-15. Not turning on the iTunes 7.0 variable for a model forces the model to assume the challenged update had no possible effect on that model. But that is at odds with Noll's theory, and his sworn testimony that "[t]he effect on prices [from iTunes 7.0] is not necessarily limited to just the products that were sold that had 7.0 in them," Noll Dep. Tr. (May 16, 2013) 46:2-4 (filed as Exhibit 10 to Apple's Motion for Summary Judgment (ECF No. 740)), and that turning on the iTunes 7.0 variable for all models is "the right way to do it" so that the regression could measure any impact of iTunes 7.0 on the price. *Id.*, at 49:14. According to Noll, because the disabling of Harmony in 2006 was a "market-defining event," he would expect all models to be impacted even those without the challenged feature. *Id.*, at 48:24-49:17.

1   plaintiffs' motion violates the local rules, the motion should be denied. *Apple Inc. v. Samsung
2   Elecs. Co.*, No. 11-cv-01846-LHK, 2011 BL 304343, *3 (N.D. Cal. Dec. 2, 2011).[13]

### B. Apple Has Complied With Rule 26 and This Court's Scheduling Order.

Apple's supplemental disclosures complied fully with this Court's order and Rule 26. Under Rule 26(a)(2)(E) and 26(e), each party "must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A); *Park West Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 326 (S.D.N.Y. 2009). Because the scheduling order did not set a date for supplementing disclosures, any supplementation must be completed in a timely manner but no later than the time for the parties to file their pretrial disclosures. Fed. R. Civ. Proc. 26(e); *see, e.g., Silgan Containers v. Nat'l Union Fire Ins.*, No. C 09-05971-RS, 2011 U.S. Dist. LEXIS 35010, *26 (N.D. Cal. March 23, 2011) (scheduling order silent regarding deadlines, thus Rule 26 governed timing); *see also Park West*, 675 F. Supp. 2d at 326 (case cited by plaintiffs applying Rule 26(e) where scheduling order was silent regarding supplementation). Here, two days after taking Noll's deposition, Apple served its supplemental disclosure limited to updating the analysis and computations made necessary by Noll's new regressions.

As outlined above, plaintiffs served a rebuttal report that included new regression models that differed significantly from the original models. Plaintiffs try (Mot. at p. 2) to make it sound like the only changes that were made were due to "new" information regarding which iPods contained the challenged update. As plaintiffs ultimately acknowledge, however, Noll made two sets of changes. First, he modified his previous models to remedy four defects pointed out by Apple's experts. Relying on Noll's assertion, plaintiffs discount these four changes as having "only a small effect on the amount of damages," suggesting that there was nothing significant for Apple's experts to respond to. In fact, the effect of just these changes caused alleged damages from drop by some ***$400 million to $98 million***. But even putting that aside, he did not remedy the three other defects identified by Apple's experts, which when accounted for reduce damages

---

[13] *In accord Oak Point Partners, Inc. v. Lessing*, No. 11-03328 LHK, 2012 U.S. Dist. LEXIS 133407, *3 n.2 (N.D. Cal. Sept. 18, 2012).

to zero.  These changes alone required Apple's experts to update their analysis and computations that had been directed at Noll's original regressions.

Second, to try to offset the $400 million reduction in damages from those changes, Noll altered his treatment of the iTunes 4.7 and iTunes 7.0 variables in a way that contradicts his sworn testimony regarding how those variables should be treated.  As shown above, the effect of his change was to increase damages from $98 million to his current estimate of $343 million.  As with the other changes to his models, his new treatment of iTunes 4.7 and 7.0 variables required Apple's experts to update their analyses and calculations.

To try to justify Noll's second set of changes (the treatment of iTunes 4.7 and 7.0 variables), plaintiffs claim (Mot. at n. 2) that they were based on new information that was not provided by Apple until July 2, 2013.  *See also* Noll Rebuttal, p. 11.  In fact, plaintiffs had this information at least three months earlier, as evidenced by the April 8, 2013 report of their software technical expert, David Martin, which stated which models had the challenged updates.  *See* Exhibit 4 to ECF No. 751 at ¶¶ 83-84.  And at his May 16, 2013 deposition, Noll conceded that he knew that the challenged update was not included on iPod shuffles.  Exhibit 1 to Kiernan Decl. (filed herewith) at 9:9-24; *see also* Ex. 51 to ECF No. 751 at 85:17-20.  Yet plaintiffs did not supplement before Apple's report was due in July 2013, waiting instead over four months to slip the new regressions in their rebuttal disclosure in an effort to deprive Apple of the chance to respond.[14]

Plaintiffs also claim that Noll's new regressions were proper rebuttal because they directly "contradict or rebut" Murphy's and Topel's initial reports.  Although of the narrative in Noll's

---

[14] If any party has "flouted" the rules, it is plaintiffs by failing to supplement their initial expert disclosures earlier.  Rule 26 and the Scheduling Order contemplated that plaintiffs would produce their final damages model in their opening report and that their rebuttal report would be used to defend that model against attacks by defendants' experts.  Rule 26(a)(2)(D)(ii) (defines rebuttal reports to include material "intended solely to contradict or rebut evidence on the same subject matter identified by another party. . .").  It was not contemplated that plaintiffs would introduce a new damages model over seven months later in their rebuttal report.  *See, e.g., In re Graphics Processing Units Antitrust Litigation*, 253 F.R.D. 478, 501 (N.D. Cal. 2008) (striking new regression models introduced for the first time in a reply report).  As Judge Alsup put it, "[s]lipping … new [regressions] into a rebuttal report [is] a clear-cut form of sandbagging [that is] simply unfair" for the obvious reason that the other side had no opportunity to respond to them.  *Id*.

1  rebuttal does attempt to contradict or rebut, the new regressions do no such thing. As detailed
2  above, Murphy's and Topel's initial reports were directed at Noll's *original* regression models,
3  and showed that they were unreliable and incapable of showing impact or damages. They also
4  included computations of statistical significance and estimated damages correcting for various
5  flaws in the original regressions. Rather than defending his original models and attacking the
6  computations in Murphy's and Topel's initial reports, however, Noll abandoned them and
7  introduced new regressions with significantly different specifications. *See Glass Dimensions,*
8  *Inc. v. State Street Bank & Tr. Co.*, 290 F.R.D. 11, 18 (D. Mass. 2013) (case cited by plaintiffs,
9  holding that report was not true rebuttal because it included opinions that did not contradict or
10 rebut opinions in defendants' report).

11      But even if Noll's new regressions could be viewed as rebuttal, Apple's supplemental
12 disclosure would still be proper under Rule 26(e). No amount of finessing or diversion by
13 plaintiffs can change two key facts relevant to this motion: first, the regression models in Noll's
14 rebuttal are significantly different from the models in his original report—some of the changes
15 respond to Murphy and Topel's initial reports, but the changes to the iTunes 4.7 and 7.0 variables
16 do not; and second, the computations and recalculations in the initial reports responded to Noll's
17 original models and needed to be updated to respond to his revised models. Under these
18 circumstances, it was appropriate under Rule 26 for Apple's experts to update their analysis and
19 computations in response to the new regressions. *See Park West*, 675 F. Supp. 2d at 326 (denying
20 motion to strike because supplemental report that "updated [ ] calculations . . . with newly
21 available information, complie[d] with [Rule 26(e)(1)(A)].").

22      In short, under plaintiffs' approach, they would be permitted to make fundamental
23 changes to their impact and damages models as part of a rebuttal report, without Apple having
24 any opportunity to respond or rerun its calculations based on the new regressions. Nothing in the
25 Federal Rules of Civil Procedure or in the Court's scheduling order permits that unfairness.

26      **C.      Plaintiffs' Argument For Rule 37 Sanctions Is Misplaced.**

27      Rule 37(c)(1) does not apply here. It authorizes sanctions where a party "fails to provide
28 information . . . as required by Rule 26(a) or (e) . . . unless the failure was substantially justified

1  or is harmless." But plaintiffs do not and cannot claim that Apple should have provided earlier
2  any information set forth in the Murphy/Topel supplemental report. Apple could not be expected
3  to anticipate that Noll would abandon his original regression models and substitute other models
4  in his "rebuttal" report.

5  In any event, Apple's supplement was timely served, two days after Noll's deposition on
6  his rebuttal report, and was "substantially justified" because Apple had no opportunity to respond
7  to the new regressions before that time. Plaintiffs have already deposed Murphy and Topel at
8  length about their Supplemental Report. They have also submitted a new report by Noll
9  responding to the Supplemental Report. Thus, they have not been prejudiced in any cognizable
10 way, and to the extent that plaintiffs argue that Apple should have anticipated the rebuttal report,
11 any alleged "failure" to do so was "harmless" under Rule 37(c)(1). *Park West*, 675 F. Supp. 2d at
12 326 (finding sanctions unwarranted where defendants redeposed expert and were permitted to
13 submit a surrebuttal). Plaintiffs suggest, without any evidentiary support, that Noll's final report
14 may have improved with more time. But they had approximately the same amount of time to
15 evaluate the 15-page Supplement Report as Apple and its economists had to evaluate Noll's 52-
16 page rebuttal report. And they fail to point to any respect in which Noll's report would have been
17 better.

18 The Rule 37 cases cited by plaintiffs do not help them. In most of those cases, the court
19 refused to strike the untimely reports as an unduly harsh sanction. *Wendt v. Host Int'l Inc.*, 125
20 F.3d 806, 814 (9th Cir. 1997) (finding exclusion to drastic because opposing party had sufficient
21 time to depose and rebut contested expert report); *Glass Dimensions,* 290 F.R.D. at 18 (refusing
22 to strike report and instead allowing defendants 30 days to serve a supplemental report); *AZ
23 Holding, L.L.C. v. Frederick*, No. CV-08-0276-PHX-LOA, 2009 U.S. Dist. LEXIS 74515 (D.
24 Ariz. Aug. 10, 2009) (refusing to exclude late-disclosed expert as "unduly harsh and
25 unwarranted"). And the two cases in which the court actually struck the reports do not aid
26 plaintiffs. In *Storage Tech. Corp. v. Cisco Sys.*, No. C 00-1176 SI, 2001 U.S. Dist. LEXIS 25876,
27 at *10-11 (N.D. Cal. Nov. 27, 2001), the court struck an expert report because it was filed in
28 support of a reply brief, thus depriving the moving party any opportunity to respond to it. And in

1  *O'Connor v. Boeing N. Am., Inc.*, No. CV 97-1554 DT, 2005 U.S. Dist. LEXIS 46233 (C.D. Cal. Sept. 12, 2005), the court found the supplemental report improper because it contained new opinions that "widen[ed] the trial issues at the eleventh hour" and were based on information known at the time the "initial Rule 26 disclosures." What drove those decisions is that one party had waited to the "eleventh hour" to disclose opinions and severely prejudiced the other party by preventing any opportunity to respond. This is not the case here, at least not with respect to Apple's disclosures.

Even if the *Wendt* factors were the appropriate test here, plaintiffs' motion should still be denied. All of the expert opinions are now before the Court to consider in ruling on Apple's Motion for Summary Judgment. Striking the supplemental report will not hasten the end of this case or alleviate this Court's calendar. Plaintiffs suffer no prejudice because they do not need time to depose the experts or complete a new rebuttal report—they have already done both. On the other hand, the risk of prejudice to Apple, the public policy favoring disposition on the merit and the availability of a less drastic approach (*e.g.,* permitting Noll's second rebuttal report to which Apple has no objection) all weigh against plaintiffs' exclusion request—as does the fact that the need for a supplemental report was occasioned by the new regressions and changes in theory contained in Noll's rebuttal report.

## CONCLUSION

For these reasons, plaintiffs' Motion to Strike the Supplemental Report of Kevin Murphy and Roger Topel should be denied.

Dated: January 27, 2014                     Respectfully submitted,

                                                               Jones Day


                                                               By:/s/David C. Kiernan
                                                                   David C. Kiernan

                                                               Counsel for Defendant
                                                               APPLE INC.