ROBBINS GELLER RUDMAN
  & DOWD LLP
BONNY E. SWEENEY (176174)
THOMAS R. MERRICK (177987)
ALEXANDRA S. BERNAY (211068)
CARMEN A. MEDICI (248417)
JENNIFER N. CARINGAL (286197)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
bonnys@rgrdlaw.com
tmerrick@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com
jcaringal@rgrdlaw.com

Class Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTI-TRUST LITIGATION | Lead Case No. C-05-00037-YGR |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' NOTICE OF MOTION AND *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL |
| ALL ACTIONS. | |
| | DATE: February 18, 2014 |
| | TIME: 2:00 p.m. |
| | CTRM: 5, 2nd Floor |
| | JUDGE: Hon. Yvonne Gonzalez Rogers |

976034_1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...............................................................................................1

II.    BACKGROUND .................................................................................................2

III.   THE GOVERNING STANDARDS FOR ADMISSIBILITY OF EXPERT
       TESTIMONY UNDER RULE 702 AND *DAUBERT* ........................................5

IV.    APPLE'S EXPERTS' CLUSTERING OPINIONS MUST BE EXCLUDED
       BECAUSE THEY DO NOT FIT THE FACTS OF THE CASE .........................6

       A.    Noll's Regression Models.........................................................................6

       B.    Clustering Adjustment Inappropriate Here ..............................................9

             1.    Noll Uses Entire Population of Transactions, Not a Sample ......9

             2.    Apple's Prices Are Not Uniform ...............................................10

             3.    Murphy and Topel Erroneously Assume that Sales to Different
                   Buyers Are Not Independent Simply Because the Seller (Apple) Is
                   the Same......................................................................................11

             4.    Even Assuming Clustering Were Relevant Here, Other Errors
                   Render Apple's Experts' Opinions Unreliable and Inadmissible ...........12

       C.    Effect of Applying Clustering Adjustment Here Is to Distort Results ..................12

       D.    Murphy's Opinions Found Unreliable and Inadmissible by Other Courts ............13

V.     CONCLUSION.................................................................................................14

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Am. Booksellers Ass'n v. Barnes & Noble, Inc.*,
5
   135 F. Supp. 2d 1031 (N.D. Cal. 2001) ..................................................................6

6

*Cook v. Rockwell Int'l Corp.*,
   580 F. Supp. 2d 1071 (D. Colo. 2006)...................................................................8

7

*Daubert v. Merrell Dow Pharms., Inc.*,
8
   43 F.3d 1311 (9th Cir.1995) ............................................................................5, 6

9

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)............................. *passim*

10

*FTC v. Wellness Support Network, Inc.*,
11
   No. 10-cv-04879-JCS, 2013 U.S. Dist. LEXIS 144140
   (N.D. Cal. Oct. 4, 2013)..........................................................................................6

12

*In re High-Tech Employee Antitrust Litig.*,
13
   289 F.R.D 555 (N.D. Cal. 2013)...........................................................................13

14

*Kumho Tire Co., Ltd. v. Carmichael*,
15
   526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).........................................5

16

*Mukhtar v. Cal. State Univ.*,
17
   No. 01-15565, 2002 U.S. App. LEXIS 27934
   (9th Cir. Aug. 7, 2002)............................................................................................5

18

*Uniloc USA, Inc. v. Microsoft Corp.*,
19
   632 F.3d 1292 (Fed. Cir. 2011)..............................................................................6

20

*United States v. Apple, Inc.*,
21
   Nos. 12 Civ. 2826 (DLC), 12 CIV 3394 (DLC),
   2013 U.S. Dist. LEXIS 96424 (S.D.N.Y. Oct. 4, 2013) ......................................13

22

*United States v. Hankey*,
23
   203 F.3d 1160 (9th Cir. 2000) ................................................................................6

24

*United States v. Sayre*,
   434 Fed. Appx. 622 (9th Cir.) *cert. denied*,
25
   *Sayre v. United States*, __ U.S. __,
   132 S. Ct. 353, 181 L. Ed. 2d 223 (2011) ..............................................................6

26

27

28

1

2                                                                          **Page**

3
**STATUTES, RULES AND REGULATIONS**
4

5 Federal Rules of Civil Procedure
      Rule 23(f)...............................................................................................................3

6 Federal Rules of Evidence
      Rule 702..............................................................................................................5, 6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND DAUBERT MOTION TO EXCLUDE CERTAIN OPINION
TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR                - iii

1    TO:  ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2    PLEASE TAKE NOTICE that on February 18, 2014, at 2:00 p.m., before the Honorable

3    Yvonne Gonzalez Rogers, in Courtroom 5, 2nd Floor of the above-entitled Court, located at 1301

4    Clay Street Oakland, California 94612, Plaintiffs Melanie Tucker, Mariana Rosen, and Somtai Troy

5    Charoensak (collectively, "Plaintiffs"), will move the Court for an Order to exclude certain opinion

6    testimony of Kevin M. Murphy and Robert H. Topel.

7    Plaintiffs respectfully seek an Order precluding Apple's experts, Kevin M. Murphy and

8    Robert H. Topel, from offering, at trial or in connection with Apple's summary judgment motion,

9    any testimony concerning their "clustering" opinions, and precluding Apple from relying on any

10    testimony, report, or declaration concerning these opinions.

11    **I.    INTRODUCTION**

12    Apple has proffered two new expert witnesses, Kevin M. Murphy and Robert H. Topel, to

13    attack the econometric model that Plaintiffs' economist, Stanford Professor Emeritus Roger G. Noll,

14    uses to demonstrate anticompetitive injury and calculate class-wide damages.  For the most part,

15    Murphy's and Topel's attacks are mere volleys in the "battle of the experts," and – even assuming

16    they were accurate – would affect only the weight the fact-finder should give to Noll's testimony.[1]

17    But one of their opinions is so far afield it does not meet the minimum standards for admissibility

18    under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d

19    469 (1993) ("*Daubert I*").  Specifically, both Murphy and Topel argue that Noll's regression is

20    unreliable because it assumes that the sales transactions ("observations") Noll uses in his regression

21    are independent when, according to Murphy and Topel, those observations occur in "clusters" of

22    correlated observations.  Thus, according to Murphy and Topel, Noll should have adjusted his model

23    to control for this alleged "clustering" phenomenon.

24

25

26    [1]    *See* Ex. 4, Rebuttal Report of Roger G. Noll, dated November 25, 2013 ("Noll Rebuttal").
27    All references to "Ex." are to the exhibits attached to the Declaration of Bonny E. Sweeney in
      Support of Plaintiffs' *Daubert* Motion to Exclude Certain Opinion Testimony of Kevin M. Murphy
28    and Robert H. Topel, filed concurrently.

PLAINTIFFS' NOTICE OF MOTION AND DAUBERT MOTION TO EXCLUDE CERTAIN OPINION
TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR        - 1 -

1    As explained in Noll's rebuttal report, however, and as confirmed by one of the leading

2    experts on clustering problems in econometrics, Professor Jeffrey M. Wooldridge,[2] a clustering

3    adjustment is wholly inappropriate here.[3]

4    **II.    BACKGROUND**

5    Plaintiffs represent a certified class of individuals and businesses that purchased iPods

6    (Apple's portable digital media player) directly from Apple between September 12, 2006 and March

7    31, 2009.  Plaintiffs allege that Apple maintained and enhanced its monopoly power in the market

8    for portable digital media players by implementing software and firmware updates – the 7.0 updates

9    – that disabled RealNetworks' Harmony, a product that allowed iPod users to download and play

10   audio files from RealNetworks' on-line music store.  Before Harmony was released, Apple's

11   proprietary digital rights management system ("DRM"), called FairPlay, blocked iPod owners from

12   downloading music from on-line stores other than Apple's iTunes Music Store.  Disabling Harmony

13   increased iPod users' switching costs, enabling Apple to charge higher prices for iPods.  The

14   deliberate redesign of the FairPlay DRM that disabled Harmony did not improve the software's

15   ability to withstand so-called hacks that stripped DRM encryption from songs from the iTunes Music

16   Store.  And, critically, the software updates that disabled Harmony provided no benefit to

17   consumers. In fact, they harmed consumers by making entire libraries of songs disappear.  In sum,

18   Apple used the pretext of fighting hackers to shut down a technology that would have dramatically

19   enhanced competition and benefitted consumers by letting them play songs legally purchased from

20

21   [2]    *See* Ex. 1, Declaration of Jeffrey M. Wooldridge in Support of Plaintiffs' Objections to and Motion to Exclude Expert Testimony, dated December 20, 2013 ("Wooldridge Decl.").

22   [3]    Apple's experts reports suffer from a number of other flaws not specifically the subject of
23   Plaintiffs' current motion, but those flaws further demonstrate why the relief requested here is
     proper.  For example, Murphy sets forth reasons why he believes that closed systems like Apple's
24   are superior to systems with complementary products purchased by different vendors with no
     economic analysis at all to support such a questionable hypothesis.  Professors Murphy and Topel
25   also claim that Professor Noll's regression is unreliable because it does not include every technical
     characteristic that differentiates models of iPods.  The addition of variables that fail to provide
26   explanatory power causes the equation to suffer from "extreme multicollinearity (*i.e.*, a high
     correlation between separate independent variables in the equation). High multicollinearity causes a
27   reduction in the efficiency of the estimates of the coefficients in the regression equation, making
     both the point estimates and the standard errors of the regression coefficients unreliable." Ex. 4,
28   Noll Rebuttal at 8.

PLAINTIFFS' NOTICE OF MOTION AND DAUBERT MOTION TO EXCLUDE CERTAIN OPINION
TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR          - 2 -

1   Apple's competitors on their iPods.  Dkt No. 537 at 1 (Plaintiffs' Memorandum in Opposition to

2   Apple's Motion for Summary Judgment).

3          On May 19, 2011, the Court denied in part and granted in part Apple's motion for summary

4   judgment.  The Court granted Apple's motion regarding Harmony-disabling updates that Apple

5   implemented in 2004, but denied its motion regarding Apple's 2006 updates (the 7.0 updates).  Dkt.

6   No. 627.  The Court subsequently certified a damages class consisting of "[a]ll persons or entities in

7   the United States (excluding federal, State, and local government entities, Apple, its directors,

8   officers, and members of their families) who purchased [a specified model of] iPod directly from

9   Apple between September 12, 2006 and March 31, 2009."  Dkt. No. 694 at 9.

10         Plaintiffs' economics expert on liability and damages, Professor Noll, was also Plaintiffs'

11  expert on class certification.  Before he submitted his liability and damages report, Noll submitted

12  six expert reports or declarations, and was deposed four times by Apple's lawyers.  The Ninth

13  Circuit Court of Appeal denied Apple's Rule 23(f) petition challenging the class certification order

14  on December 6, 2011.  Dkt. Nos. 697, 701.  Class notice was completed in 2012 in accordance with

15  the notice plan approved by the Court.  Dkt. No. 704.

16         In April and May of 2013, Plaintiffs served the original and a corrected version of Noll's

17  liability and damages report.[4]  Subsequently, shortly before serving its own expert reports, Apple

18  produced an employee declaration correcting previous information identifying the iPod models on

19  which the 7.0 updates were implemented.[5]  Apple served the expert reports of two brand-new

20

---

21  [4]      Ex. 2 , Declaration of Roger G. Noll on Liability and Damages, dated April 3, 2013 ("Noll
   Liability and Damages Report"); Ex. 3, Corrections to Declaration of Roger G. Noll on Liability and
22  Damages, dated May 31, 2013 ("Noll Corrections").  The Noll Corrections report accounts for an
   error that calculated damages through the end of the data period instead of the end of the class
23  period, and removed four unaffected transactions.

24  [5]      The witness on whose sworn testimony Noll had previously relied submitted a Supplemental
   Declaration to "correct and clarify the timing of the release of the [7.0 updates] and clarify on which
25  iPod models the codes were enabled."  Ex. 7, Supplemental Declaration of Augustin Farrugia, dated
   July 2, 2013, ¶1.  In his Corrections report, Professor Noll explained that he had been alerted to a
26  potential issue concerning affected models, but that the information was not yet definitive.  He stated
   that "[w]hen definitive information is received concerning the iPod models for which Harmony was
27  disabled, re-estimation of the regression models and recalculation of damages may be necessary."
   Ex. 3, Noll Corrections at 2 n.1.
28

976034_1
PLAINTIFFS' NOTICE OF MOTION AND DAUBERT MOTION TO EXCLUDE CERTAIN OPINION
TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR          - 3 -

experts,[6] Professors Murphy and Topel, on July 19, 2013 and then amended reports on August 19, 2013.  They were deposed on November 8 and 12, 2013.

On November 25, 2013, Noll submitted his rebuttal liability and damages report.  In that report, Noll re-affirmed his prior opinions on liability and damages, rejecting and responding to the criticisms of Apple's experts.  Ex. 4, Noll Rebuttal at 3-11.  He also re-estimated his damages regressions to take into account Apple's corrected information identifying the iPod models affected by the 7.0 updates, and adopted – without agreeing that they were necessary – several changes in the regression equations prompted by criticisms from Murphy and Topel.[7]

Professor Noll rejected Murphy's and Topel's main opinions in their entirety.  *Id.* at 6-7.  He concluded that their clustering argument is "without merit," and that its "sole effect is vastly to reduce the number of transactions observations that are used to estimate the regression equation, thereby reducing the explanatory power of the regression analysis [and] destroying the reliability and precision of the regression results."  *Id.* at 11.  On December 18, 2013, as a courtesy to Apple, Plaintiffs again produced Noll for deposition, his ***sixth*** in the case.[8]

Plaintiffs also submit the Declaration of Jeffrey M. Wooldridge in support of their motion.  Wooldridge, a University Distinguished Professor of Economics at Michigan State University, is one of the nation's foremost experts on clustering problems in econometric analysis.  He is an expert on problems associated with nonrandom sampling, including cluster sampling, and has published and taught about these issues for many years.  He has published two popular textbooks in econometrics,

---

[6]     In the extensive class certification proceedings, Apple relied solely on the expert opinions of Michelle M. Burtis.  *See, e.g.*, Dkt. Nos. 241, 286, 511, 665, 691.  For this phase of the case, however, Apple has replaced Dr. Burtis and now relies solely on Murphy and Topel.

[7]     Specifically, he used quantity weights, rather than frequency weights to estimate the regression equations; used the scalar variable time instead of the logarithm of time in the regressions; used the date that Apple began using a DRM-free format for music instead of the date on which the change was complete; and changed the indicator variable for Harmony to distinguish between the first version (available from July 2004 until April 2005 and disabled by iTunes 4.7) and the second version, which was introduced in April 2005 and was disabled by the 7.0 updates.  Ex. 4, Noll Rebuttal at 5-6.

[8]     Plaintiffs repeatedly informed Apple that it was not entitled to another deposition of Professor Noll under the scheduling order (*see* Dkt. No. 735), but agreed as a courtesy to permit a short deposition to allow questioning on material deemed "new" by Apple.  *See* Ex. 8, Deposition Transcript of Professor Roger G. Noll, taken December 18, 2013 ("Noll Dep.") at 7:10-18.

1    and teaches microeconometric methods to graduate students. Ex. 1, Wooldridge Decl. at 1-2 and

2    Appendix A.

3    　　　Professor Wooldridge has concluded, after analysis of the Noll, Murphy and Topel reports,

4    that Apple's clustering attack on the Noll regressions is unsupportable. He states:

5    　　　(i) Clustering is inappropriate where, as here, the regressions use the entire
     　　　population of transactions. There can be no cluster sampling problem because there
6    　　　is no sampling.

7    　　　(ii) Professor Noll's use of heteroskedasticity-robust standard errors is appropriate.
     　　　By contrast, Professors Murphy and Topel, who suggest clustering at the family
8    　　　product/quarter level, are guilty of ex post clustering. Their standard error
     　　　calculations are much too imprecise.

9    　　　(iii) Computing "cluster-robust" standard errors where, as here, clustering is not
10   　　　appropriate, is not harmless. Clustering can produce standard errors that are vastly
     　　　inflated compared with the true precision of the estimates.

11   Ex. 1, Wooldridge Decl. at 13.

12

13   **III.    THE GOVERNING STANDARDS FOR ADMISSIBILITY OF EXPERT
     　　　　　TESTIMONY UNDER RULE 702 AND *DAUBERT***

14   　　　Rule 702 imposes a "gatekeeping" function upon district courts that requires them to exclude

15   expert opinions based upon unreliable methods. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137,

16   147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); *Daubert I*, 509 U.S. at 589. Trial courts must

17   "make certain that an expert, whether basing testimony upon professional studies or personal

18   experience, employs in the courtroom the same level of intellectual rigor that characterizes the

19   practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. In addition to reliability,

20   this standard requires that the expert testimony "logically advances a material aspect of the

21   proposing party's case." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir.1995)

22   ("*Daubert II*"). In particular, the expert opinion must be "sufficiently tied to the facts of the case that

23   it will assist the jury in resolving a factual dispute." *Daubert I*, 509 U.S. at 591. "This condition

24   goes primarily to relevance." *Id.*

25   　　　"Encompassed in the determination of whether expert testimony is relevant is whether it is

26   helpful to the jury, which is the 'central concern' of Rule 702." *Mukhtar v. Cal. State Univ.*, No. 01-

27

28

1  15565, 2002 U.S. App. LEXIS 27934, at *23 n.7 (9th Cir. Aug. 7, 2002).[9]  The helpfulness

2  requirement has also been deemed the "fit" requirement and ensures a "valid scientific connection to

3  the pertinent inquiry as a precondition to admissibility."  *Daubert I*, 509 U.S. at 592.  Apple bears

4  the burden of establishing that Murphy's and Topel's testimony "fits" with the facts and legal

5  theories in the case, such that the testimony is "relevant to the task at hand."  *Id.* at 591, 597;

6  *Daubert II*, 43 F.3d at 1315; *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) ("fit" is

7  one of the factors to be considered by the trial court in determining admissibility of expert

8  testimony); *see also FTC v. Wellness Support Network, Inc.*, No. 10-cv-04879-JCS, 2013 U.S. Dist.

9  LEXIS 144140, at *32 (N.D. Cal. Oct. 4, 2013) (excluding expert testimony for lack of "fit");

10  *Daubert I*, 509 U.S. at 592 n.10 (proponent of expert testimony bears burden of establishing its

11  admissibility by a preponderance of the evidence) ; *United States v. Sayre*, 434 Fed. Appx. 622, 624

12  (9th Cir.) *cert. denied*, *Sayre v. United States*, __ U.S. __ , 132 S. Ct. 353, 181 L. Ed. 2d 223

13  (2011) (finding that the "district court correctly applied Federal Rule of Evidence 702 in excluding

14  testimony it judged would not be both reliable and relevant").  Murphy and Topel's clustering

15  opinion lacks the "fit" to the facts of this case to satisfy this standard.

16      "The bottom line . . . is that one major determinant of whether an expert should be excluded

17  under *Daubert* is whether he has justified the application of a general theory to the facts of the case."

18  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1316 (Fed. Cir. 2011) (excluding damage

19  expert's opinion because his use of a generally accepted methodology was not tethered to the

20  particular facts and issues to be determined in case); *see also Am. Booksellers Ass'n v. Barnes &*

21  *Noble, Inc.*, 135 F. Supp. 2d 1031, 1041-42 (N.D. Cal. 2001) (excluding expert opinion that in

22  calculating damages ignored "real-world evidence").

23  **IV.    APPLE'S EXPERTS' CLUSTERING OPINIONS MUST BE EXCLUDED
        BECAUSE THEY DO NOT FIT THE FACTS OF THE CASE**

24      **A.    Noll's Regression Models**

25  In his liability and damages reports, Noll concluded that:

26

27

28  _____
    [9]      Unless otherwise noted citations are omitted, and emphasis is added.

976034_1

PLAINTIFFS' NOTICE OF MOTION AND DAUBERT MOTION TO EXCLUDE CERTAIN OPINION
TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR            - 6 -

- • Apple's 7.0 updates, by disabling Harmony, "raised the cost of switching from iPods to competing portable digital media players by eliminating the ability of consumers to collect a library of downloads that could be played on all players";

- • Apple enjoyed market power in the market for portable digital media players and permanent downloads of digital audio files during the class period;

- • Apple "enhanced and maintained its monopoly power" in portable digital media players through its 7.0 updates;

- • Apple was able "to charge higher prices for iPods" as a result of implementing the 7.0 updates; and

- • Apple's conduct enabled it to impose an overcharge on affected iPods of 2.38 % and 7.45 %, respectively, for iPods sold to reseller customers and iPods sold to retail consumers.

Ex. 2, Noll Liability and Damages Report at 4-5; Ex. 4, Noll Rebuttal at 50-51.

Professor Noll calculated damages and demonstrated anticompetitive impact using a before-and-after multiple-variable regression analysis. He compared the prices of iPods before and after the competitive events, *i.e.*, when Harmony was operational, when Apple disabled Harmony, and when Apple and its competitors began selling DRM-free audio files. Ex. 2, Noll Liability and Damages Report at 71-72. Noll started with a hedonic model of iPod prices that accounts for the many different iPod models and their different features, such as product class (classic, mini, nano, shuffle, touch), memory capacity, photo capability, video capability, whether the model is a special edition, and included a time variable (to represent technical change not captured in other variables). *Id.* at 71-72. The coefficients on the indicator variables quantify the competitive effects of Apple's 7.0 updates. *Id.* at 73. Noll's regressions estimated an overcharge of 2.38% on iPods sold to resellers, and 7.45% on iPods sold to retail customers. Ex. 4, Noll Rebuttal at 50-51. When multiplied by transaction prices for each model, damages total $148,947,126 for resellers, and $194,655,141 for direct purchasers, for a total of $351,631,153. *Id.* at 12.

Notably, Professor Noll did not rely on *samples* of the iPod sales transaction data; instead, he used the *entire population* of iPod sales transactions during the class period, except for outliers and transactions with incomplete data.[10] For the reseller regression, Noll used a data set consisting of

---

[10] Noll excluded price observations so implausibly low (even zero or negative) or high (several times the list price) that they could not possibly be accurate ("the outlier data"). Ex. 2, Noll Liability and Damages Report at 76.

976034_1

PLAINTIFFS' NOTICE OF MOTION AND DAUBERT MOTION TO EXCLUDE CERTAIN OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR        - 7 -

1    2,138,994 transactions; for the direct sales regression, he used 36,945,084 records.  Ex. 2, Noll

2    Liability and Damages Report at 77-78, 81-82, 88.

3    Apple's experts do not challenge the make-up of the population of observations used in the

4    Noll regressions.  Ex. 9 , Deposition Transcript of Robert Topel, Ph.D., taken November 8, 2013

5    ("Topel Dep.") at 95:21-22 ("We took the data, as he had analyzed, as a given, and we showed the

6    flaws in his analysis."); Ex. 10 , Deposition Transcript of Kevin Murphy, Ph.D., taken November 12,

7    2013 ("Murphy Dep.") at 46:2-6 (Murphy used same data set as Noll).[11]  Nor do they contend that

8    adjusting for their putative clustering concern would alter the coefficients ("the point estimates")

9    derived from the regressions.  Ex. 9, Topel Dep. at 157:6-25.

10    Instead, Murphy and Topel contend that Noll has overstated the ***statistical precision*** of his

11    analysis because in calculating the standard errors he did not "correct" for a purported "clustering"

12    problem.  Ex. 6, Expert Report of Robert H. Topel (Amended) ("Topel Rpt."), ¶¶72-74; Ex. 5,

13    Expert Report of Kevin M. Murphy (Amended), August 19, 2013 ("Murphy Rpt."), ¶¶94-95.

14    According to Murphy and Topel, the failure to control for clustering diminishes the reported

15    statistical significance of Professor Noll's regression results as to both resellers and direct

16    purchasers.  *Id.*[12]

17    Topel cites as authority two pages from Angrist and Pischke's *Mostly Harmless*

18    *Econometrics* (Ex. 11) at 293-94, and two pages from the ABA's *Proving Antitrust Damages: Legal*

19    *and Economic Issues* (Ex. 12) at 145-46.  Ex. 6, Topel Rpt., ¶¶75-76.  Murphy cites one page from

20    Colin Cameron & Douglas L. Miller's *Robust Inference with Clustered Data* (Ex. 13) at 2.  Ex. 5,

21    Murphy Rpt., ¶96 n.138.  While the cited references address in general terms the effect data clusters

22

---

23    [11]    In fact, when Murphy and Topel's staff reconstructed the data and compared it to Professor
      Noll, "they said the data came out pretty much the way Professor Noll had it, so we're going to go
24    with that."  Ex. 9, Topel Dep. at 97:7-10.

25    [12]    Even accepting *arguendo* Apple's misguided clustering argument as to the precision of
      Professor Noll's regression analysis, the fact-finder could nonetheless find Professor Noll's analysis
26    persuasive.  *See Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1105 (D. Colo. 2006) (holding
      that neither "the Tenth Circuit ([nor] any other court) has adopted a rule barring admission of any
27    epidemiological study that was not statistically significant at the 95-percent confidence level."); *see
      also* Ex. 10, Murphy Dep. at 51:9-52:9 (acknowledging that results need not be statistically
28    significant to be reliable under *Daubert*).

976034_1

PLAINTIFFS' NOTICE OF MOTION AND DAUBERT MOTION TO EXCLUDE CERTAIN OPINION
TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR          - 8 -

1    can have on the estimation of standard errors, they do ***not*** support Murphy's and Topel's argument

2    that these concerns have any relevance here.

3    **B.    Clustering Adjustment Inappropriate Here**

4    As Professors Noll and Wooldridge explain, Murphy and Topel's clustering adjustment is

5    inappropriate because none of the clustering problems raised by Murphy and Topel are present in

6    Noll's regression analysis.

7    **1.    Noll Uses Entire Population of Transactions, Not a Sample**

8    First, because Noll used the entire population of sales transaction observations, the clustering

9    analysis is irrelevant. As Professor Noll explains:

10    Clustering problems arise because of the way that a sample of observations is drawn
      from a larger population. A cluster sample consists of a data-gathering technique that
11    divides all observations into groups, selects a sample of these groups from which
      observations will be drawn, and then, for each sampled group, takes a sample of
12    observations within the sampled groups. The issues that give rise to a cluster problem
      are: (1) observations from a sample of groups may not be representative of
13    observations in all groups, and (2) membership in a group may be correlated with
      other factors that could influence the dependent variable in the regression but that are
14    not included as independent variables in the regression.

15    Clustering does not apply to Apple's transactions data because these data are
      not a sample, let alone a clustered sample. Apple's transactions data include the
16    entire population of all sales by Apple, not a sample of Apple's sales for some
      models of iPods.

17
18    Ex. 4, Noll Rebuttal at 10.

19    Professor Wooldridge agrees that "there can be no cluster sampling problem because there is

20    no sampling." Ex. 1, Wooldridge Decl. at 10. As he puts it: "If we observe the entire population of

      shipments, how can one meaningfully introduce sampling uncertainty into the estimates? After all,

21    if we can compute a price for every transaction in the population, we can compute the differences in

22    average prices among various product family/time period groups without error." *Id*.

23    As Wooldridge explains in his Declaration, clustering problems arise when individual units

24    are grouped into clusters at the outset. For example, if a researcher who wants to study the effects of

25    class size on test scores draws a sample of elementary schools from the state's population, and then

26    collects data about individual students in that sample, this *a priori* grouping creates substantive

27    problems for computing standard errors. That is, the researcher would need to account for the fact

28

PLAINTIFFS' NOTICE OF MOTION AND DAUBERT MOTION TO EXCLUDE CERTAIN OPINION
TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR        - 9 -

1    that student outcomes within a school are likely to be influenced by common, school-level factors.

2    Ex. 1, Wooldridge Decl. at 3.

3         But a "common misunderstanding" – and one which Murphy and Topel apparently share – is

4    that ex post grouping of a randomly drawn sample creates similar clustering problems.  *Id*. at 3.  If

5    the above example is changed so that a random sample of students within a state is drawn, and then

6    data is collected – including each student's school identifier – there is no clustering problem.  *Id*. at

7    3-4.  Because Murphy and Topel's clustering exercise "fits into the framework of ex post clustering,

8    [it] is therefore an inappropriate and unreliable application of clustering."  *Id*. at 4.

9                        **2.      Apple's Prices Are Not Uniform**

10        Murphy and Topel's clustering adjustment should also be rejected because it is based on the

11   false factual premise that virtually all resellers and direct consumers paid the same price for their

12   iPods.  Ex. 6, Topel Rpt., ¶74 ("Apple set its iPod prices so that virtually all the iPods of a given

13   model with given characteristics sold at roughly the same time would have the same price, no matter

14   who they buyer is."); *id*. ("Apple's price for a given model and generation was virtually identical for

15   everyone."); *accord* Ex. 5, Murphy Rpt., ¶95 ("Because Apple has a uniform pricing policy,

16   knowledge of the unit price of just one of Best Buy's Nanos tells us the price of literally millions of

17   other Nanos acquired by other resellers or consumers around that time."); *id*. ("virtually all

18   [resellers] large and small, paid the same (or nearly the same) price as Best Buy").  As Topel puts it:

19   "So if I know what Best Buy paid for a particular iPod model in January 2005, I can be quite

20   confident that in other transactions with Best Buy and with other buyers who purchased around that

21   date, the price would be exactly or nearly the same."  Ex. 6, Topel Rpt., ¶74.

22        This central factual premise of Murphy and Topel's criticism is, however, "wildly incorrect."

23   Ex. 4, Noll Rebuttal at 33.  As the price and quantity data histograms in Appendix B to Noll's

24   Rebuttal Report demonstrate, there was "substantial within-quarter variation" in reseller data prices

25   during the class period.  *Id*.  Even the direct sales data shows that many transactions were not at list

26   price.  *Id*.[13]

27   _____

28   [13]      The data used in the regressions also understate true variation because Apple did not provide
     information necessary to match all discounts to a specific transaction.  Ex. 4, Noll Rebuttal at 33.

1    Furthermore, it is inappropriate to use the amount of variation in the data as a guide to

2   whether a data set constitutes a cluster sample. "Clustering is a property of how the data are

3   collected and has nothing to do with how much variation there is in the underlying population

4   variable or variables." Ex. 1, Wooldridge Decl. at 6.

5        **3.    Murphy and Topel Erroneously Assume that Sales to Different
             Buyers Are Not Independent Simply Because the Seller (Apple)
6             Is the Same**

7    Forced to concede that there is variation in Apple's pricing,[14] Murphy and Topel are left with

8   the argument that the observations in Professor Noll's regression are not independent simply because

9   Apple was the seller in all transactions. *See, e.g.*, Ex. 5, Murphy Rpt., ¶95 ("knowledge of the unit

10   price on just one of Best Buy's Nanos tells us the price of literally millions of other Nanos acquired

11   by other resellers or consumers around that time"). "When the pricing committee decides how to

12   price a product, that's going to have a common effect across the different customers. It doesn't

13   mean everybody's going to pay exactly the same price, but it means it's going to influence the prices

14   paid by, you know, basically all of the customers. And the existence of that common effect is what

15   creates the statistical problem of correlated residuals that needs to be corrected to do appropriate

16   statistical inference." Ex. 10, Murphy Dep. at 135:7-136:4.

17    But this argument is nonsensical. As Professor Noll explains, "[e]ven for sales at the same

18   posted price, the observations are independent because each transaction involves a different buyer

19   making an independent decision about whether to make a purchase." Ex. 4, Noll Rebuttal at 36; *see*

20   *generally id.* at 36-39. The mere fact that it is Apple that sets the sales price of each iPod is

21   irrelevant to the question of whether the observations are independent. *Id.* at 9, 37-39.

22

23

---

24   [14]    Although the Murphy and Topel reports cherry-pick three anecdotes in which different
    reseller customers paid the same price, both experts grudgingly acknowledged at their depositions

25   (as they had to) that the prices ultimately paid by resellers did in fact vary. Ex. 9, Topel Dep. at 54:8
    – 55:7; *id.* at 55:6-7 ("I'm not testifying that every price is the same."); *id.* at 106:19-23 ("Q. For a

26   given family within a quarter, when you're talking about reseller prices, would you agree that there
    is some variation in the prices that Apple charged to resellers during the class period? A. I believe I

27   would agree with that."). Topel did not attempt to establish any numerical threshold for his assertion
    that "virtually all" of the iPods of given family sold at roughly the same time had the same price. *Id.*

28   at 49:19-50:4; *id.* at 51:5-17.

976034_1

PLAINTIFFS' NOTICE OF MOTION AND DAUBERT MOTION TO EXCLUDE CERTAIN OPINION
TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR        - 11 -

**4.      Even Assuming Clustering Were Relevant Here, Other Errors Render Apple's Experts' Opinions Unreliable and Inadmissible**

Even assuming clustering were relevant here, the clustering adjustment Murphy and Topel use is not appropriate.  First, in this case the ratio of observations per cluster to number of clusters is very high.  Under these conditions (even assuming clustering were appropriate, which it is not), adjusting for 'cluster-robust' standard errors can be very misleading as estimates of statistical precision." Ex. 1 , Wooldridge Decl. at 5-6, 7-10.  Indeed, because the "number of observations per cluster swamps the number of clusters, rendering the cluster standard errors are useless." *Id*. at 9.

Second, Murphy and Topel's decision arbitrarily to cluster the data by calendar quarter makes no sense.  As Professor Noll states, these clusters "bear no relationship to the clustering problem in econometrics," because there is no reason to believe that two clusters in adjacent quarters are substantially affected by different common group-level effects.  Ex. 4, Noll Rebuttal at 43.  For any particular iPod sold in two adjacent quarters, for example, the seller is the same, the product is the same, the pricing formula is the same, and in most cases the identity of buyers is the same (Best Buy, for example, purchases iPods in every quarter), *id.*, Noll Rebuttal at 44; Ex. 1, Wooldridge Decl. at 8 ("cluster[ing] the data at the product family/quarter level is inappropriate").

**C.      Effect of Applying Clustering Adjustment Here Is to Distort Results**

Murphy and Topel's clustering adjustment in the absence of any need for one is not harmless.  To the contrary, as Noll and Wooldridge have explained, applying the clustering adjustment in this case "causes more harm than good" in the quality of the regression estimates.  Ex. 4, Noll Rebuttal at 47.  The reason for this is that if there is no clustering problem to "correct," the standard method for adjusting for clustering – and the one used by Murphy and Topel – causes an upward bias in the estimates of the standard errors of the regression, and greatly reduces the number of transactions observations.  The result is a regression "that cannot reliably explain anything." *Id*. at 46-47.  Professor Wooldridge agrees:  "It is important to know that computing so-called "cluster-robust" standard errors is not harmless when the data have come from a random sample [or] the sample is the population. . . . Clustering can produce standard errors that are vastly inflated compared with the true precision of the estimates." Ex. 1, Wooldridge Decl. at 5.

976034_1

PLAINTIFFS' NOTICE OF MOTION AND DAUBERT MOTION TO EXCLUDE CERTAIN OPINION
TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR            - 12 -

### D.    Murphy's Opinions Found Unreliable and Inadmissible by Other Courts

This is not the first time Murphy's expert work on behalf of Apple has failed to withstand scrutiny. In *In re High-Tech Employee Antitrust Litig.*, 289 F.R.D 555 (N.D. Cal. 2013), plaintiffs alleged that their former employers – including Apple – conspired to fix and suppress employee compensation and restrict employee mobility. *Id.* at 559. The defendants offered Murphy's expert report to oppose the plaintiffs' class certification motion. As here, Murphy criticized plaintiffs' expert's regression model, which used aggregate data from all of the defendants' employees. Murphy attempted to discredit plaintiffs' analysis by disaggregating the regression, which led to to dramatically different results. *Id.* at 579. However, the court rejected Professor Murphy's disaggregated model because his analysis may have "'minimize[d] artificially' the effects of anti-solicitation agreements by spreading those effects across a wider range of variables." *Id.* at 580. Due to the flaws in Professor Murphy's analysis, the "Court [was] not persuaded that Dr. Murphy's results are more credible than" plaintiff's expert and further determined that it was "not clear that these models would be reliable." *Id.* As a result, the court found that plaintiff's expert had provided a plausible methodology for demonstrating harm and estimating class-wide damages that Professor Murphy failed to adequately challenge. *Id.* at 582.

Similarly, in *United States v. Apple, Inc.*, Nos. 12 Civ. 2826 (DLC), 12 CIV 3394 (DLC), 2013 U.S. Dist. LEXIS 96424 (S.D.N.Y. Oct. 4, 2013), the court held, after a bench trial, that Apple conspired with five of the six biggest publishers in the U.S. to raise the price of e-books in violation of the Sherman Act. The court excluded Murphy's testimony, holding that it was "premised on a faulty legal assumption and . . . irrelevant in this case. To the extent that Professor Murphy simply presents his own views regarding Apple's motives and intentions, that testimony is also inadmissible as an improper invasion of the fact finder's role." Ex. 14, *United States v. Apple* Hearing Transcript at 3.

976034_1

PLAINTIFFS' NOTICE OF MOTION AND DAUBERT MOTION TO EXCLUDE CERTAIN OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR          - 13

1    **V.    CONCLUSION**

2           As shown above and in the Noll Rebuttal Report, and as confirmed by Professor Wooldridge,

3    Apple's invocation of clustering is an absolute red herring.   Clustering is irrelevant to Noll's

4    regression analysis, and Apple's argument is based on admittedly unsupportable factual premises.

5    Because Murphy and Topel's clustering opinions do not "fit" the facts, they fail to pass muster under

6    *Daubert*, and must be excluded from the summary judgment record and at trial.

7    DATED:  December 20, 2013                    Respectfully submitted,

8                                                                        ROBBINS GELLER RUDMAN
                                                                          & DOWD LLP
9                                                                        BONNY E. SWEENEY
                                                                        THOMAS R. MERRICK
10                                                                      ALEXANDRA S. BERNAY
                                                                        CARMEN A. MEDICI
11                                                                      JENNIFER N. CARINGAL

12

13                                                                          s/ Bonny E. Sweeney
                                                                        BONNY E. SWEENEY

14
                                                                        655 West Broadway, Suite 1900
15                                                                      San Diego, CA  92101
                                                                        Telephone:  619/231-1058
16                                                                      619/231-7423 (fax)

17                                                                      Class Counsel for Plaintiffs

18                                                                      THE KATRIEL LAW FIRM
                                                                        ROY A. KATRIEL
19                                                                      1101 30th Street, N.W., Suite 500
                                                                        Washington, DC  20007
20                                                                      Telephone:  202/625-4342
                                                                        202/330-5593 (fax)

21
                                                                        BONNETT, FAIRBOURN, FRIEDMAN
22                                                                        & BALINT, P.C.
                                                                        ANDREW S. FRIEDMAN
23                                                                      FRANCIS J. BALINT, JR.
                                                                        ELAINE A. RYAN
24                                                                      2325 E. Camelback Road, Suite 300
                                                                        Phoenix, AZ  85016
25                                                                      Telephone:  602/274-1100
                                                                        602/274-1199 (fax)

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND DAUBERT MOTION TO EXCLUDE CERTAIN OPINION
TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR                         - 14 -

1

2
BRAUN LAW GROUP, P.C.
MICHAEL D. BRAUN
3
10680 West Pico Blvd., Suite 280
Los Angeles, CA 90064
Telephone: 310/836-6000
4
310/836-6010 (fax)

5
GLANCY BINKOW & GOLDBERG LLP
BRIAN P. MURRAY
6
122 East 42nd Street, Suite 2920
New York, NY 10168
7
Telephone: 212/382-2221
212/382-3944 (fax)
8
GLANCY BINKOW & GOLDBERG LLP
9
MICHAEL GOLDBERG
1925 Century Park East, Suite 2100
10
Los Angeles, CA 90067
Telephone: 310/201-9150
11
310/201-9160 (fax)

12
Additional Counsel for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

976034_1

PLAINTIFFS' NOTICE OF MOTION AND DAUBERT MOTION TO EXCLUDE CERTAIN OPINION
TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR           - 15 -