1 ROBBINS GELLER RUDMAN
   & DOWD LLP
2 BONNY E. SWEENEY (176174)
   THOMAS R. MERRICK (177987)
3 ALEXANDRA S. BERNAY (211068)
   CARMEN A. MEDICI (248417)
4 JENNIFER N. CARINGAL (286197)
   655 West Broadway, Suite 1900
5 San Diego, CA 92101
   Telephone: 619/231-1058
6 619/231-7423 (fax)
   bonnys@rgrdlaw.com
7 tomm@rgrdlaw.com
   xanb@rgrdlaw.com
8 cmedici@rgrdlaw.com
   jcaringal@rgrdlaw.com
9
   Class Counsel for Plaintiffs
10
   [Additional counsel appear on signature page.]
11
                    UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13
                         OAKLAND DIVISION
14
   THE APPLE IPOD ITUNES ANTI-TRUST    )   Lead Case No. C-05-00037-YGR
15 LITIGATION                          )
                                       )   CLASS ACTION
16 ─────────────────────────────────── )
                                       )   PLAINTIFFS' REPLY MEMORANDUM IN
17 This Document Relates To:           )   SUPPORT OF *DAUBERT* MOTION TO
                                       )   EXCLUDE CERTAIN OPINION
18      ALL ACTIONS.                   )   TESTIMONY OF KEVIN M. MURPHY
   ─────────────────────────────────── )   AND ROBERT H. TOPEL
19
                                           DATE:     TBD
20                                         TIME:     TBD
                                           CTRM:     5, 2nd Floor
21                                         JUDGE:    Hon. Yvonne Gonzalez Rogers
22

23

24

25

26

27

28

976112_1

# TABLE OF CONTENTS

Page

I.  INTRODUCTION .................................................................................................1

II. CLUSTERING DOES NOT FIT THE FACTS OF THE CASE.........................2

    A.  There Is No Clustering Problem Among iPod Transactions ....................2

    B.  Apple's Pricing Practices Do Not Give Rise to Correlation of the Residuals ...............................................................................................3

    C.  Apple's "Test" for Correlation of the Residuals Is Flawed .....................4

    D.  Apple's "Omitted Variables" Argument Does Not Support Clustering ................5

    E.  Through the Construction of Arbitrary Clusters, Apple's Experts Artificially Introduce Correlation into the Error Residuals .....................7

    F.  Clustering Where Unnecessary Is Harmful ...........................................9

    G.  The Number of Observations Per Cluster Distorts the Standard Error...........10

III. APPLE'S ATTACKS ON PROFESSOR WOOLDRIDGE ARE UNFOUNDED...........11

    A.  Professor Wooldridge's Opinions Are Supported by Generally Accepted Econometrics and Wooldridge's Own Peer-Reviewed Publications and Research and Were Not Manufactured for This Litigation ....................11

    B.  Plaintiffs Timely Disclosed Wooldridge ..............................................12

IV. CONCLUSION..................................................................................................14

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR                - i -

1

## TABLE OF AUTHORITIES

2

Page

3

**CASES**

4

*Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*,

5

No. C 07-1359, 2009 U.S. Dist. LEXIS 32380
(N.D. Cal. Apr. 2, 2009) ................................................................13

6

*Cabreara v. Cordis Corp.*,

7

134 F.3d 1418 (9th Cir. 1998) .........................................................11

8

*Daubert v. Merrell Dow Pharms.*,

509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)............................. *passim*

9

*FTC v. Wellness Support Network, Inc.*,

10

No. 10-cv-04879-JCS, 2013 U.S. Dist. LEXIS 144140
(N.D. Cal. Oct. 4, 2013).............................................................1, 2

11

12

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,

MDL No. 1446, 2007 U.S. Dist. LEXIS 98619

13

(S.D. Tex. Feb. 1, 2007)................................................................14

14

*In re Paoli R.R. Yard PCB Litig.*,

35 F.3d 717 (3d Cir. 1994)..............................................................13

15

16

*Jeffries v. Centre Life Ins. Co.*,

No. 1:02-cv-351, 2004 U.S. Dist. LEXIS 30769

17

(S.D. Ohio Jan. 28, 2004) ..............................................................12

18

*Lust by & Through Lust v. Merrell Dow Pharms., Inc.*,

89 F.3d 594 (9th Cir. 1996) ............................................................11

19

20

*Moore v. Napolitano*,

926 F. Supp. 2d 8 (D. D.C. 2013) .......................................................12

21

*Nightlight Sys. v. Nitelites Franchise Sys.*,

22

No. 1:04-CV-2112, 2007 U.S. Dist. LEXIS 95538
(N.D. Ga. May 11, 2007) ...............................................................13

23

*Reed v. Smith & Nephew, Inc.*,

24

527 F. Supp. 2d 1336 (W.D. Okla. 2007) ................................................12

25

*Wendt v. Host Int'l*,

125 F.3d 806 (9th Cir. 1997) ...........................................................13

26

27

28

1

2                                                                                                                   **Page**

3    **STATUTES, RULES AND REGULATIONS**

4
     Federal Rules of Civil Procedure
5    Rule 26(a)(2)...................................................................................................12
6    Rule 37(c)(1)....................................................................................................13

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR

# I.    INTRODUCTION

In their *Daubert* Motion to Exclude Certain Opinion Testimony of Kevin M. Murphy and Robert H. Topel ("Plaintiffs' *Daubert* Motion" or "Pltfs' Mem."), Plaintiffs demonstrated that Apple's experts' clustering opinions should be excluded because they are not "sufficiently tied to the facts of the case that will assist the jury in resolving a factual dispute." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 591, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Relying on the expert opinions of Professors Noll and Wooldridge,[1] Plaintiffs showed that the "clustering adjustment" that Murphy and Topel apply to Professor Noll's regressions is both inappropriate and harmful. Clustering grossly exaggerates the standard errors, leading to the incorrect conclusion that Professor Noll's regression results are not statistically significant.[2] Pltfs' Mem. at 12; Sweeney *Daubert* Decl., Ex. 1 (Wooldridge Decl.) at 5; Sweeney Reply *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 1 26, 32-33.

In response, Apple merely repeats its experts' discredited theories and attacks Professor Wooldridge by distorting the record. But Apple cannot escape the fact that its experts' litigation-driven clustering opinions have no place in this case. As explained by Professors Noll and Wooldridge in their supplemental reports and confirmed through theoretical calculations, statistical tests and simulations, Murphy and Topel's clustering adjustment is arbitrary, improperly distorts the standard errors, and should be excluded. *See FTC v. Wellness Support Network, Inc.*, No. 10-cv-

---

[1]    Despite Apple's contention to the contrary, Plaintiffs do not rely solely on Professor Wooldridge. They also rely on Professor Noll's opinions (*see, e.g.*, Pltfs' Mem. at 2 n.3 (citing Noll Rebuttal at 8); *id.* at 4 n.7 (citing Noll Rebuttal at 5-6); *id.* at 9 (citing Noll Rebuttal at 10); *id.* (citing Noll Rebuttal at 9, 36-39); *id.* at 12 (citing Noll Rebuttal at 43-44, 47)) and undisputed factual evidence about the data sets used in the regressions. *See* Pltfs' Mem. at 8 n.11 (quoting Topel: "The data came out pretty neat the way Professor Noll had it, so we're going to go with that.").

[2]    All references to ("Sweeney *Daubert* Decl.") are to the Declaration of Bonny E. Sweeney in Support of Plaintiffs' *Daubert* Motion to Exclude Certain Opinion Testimony of Kevin M. Murphy and Robert H. Topel, dated December 20, 2013; all references to  ("Kiernan *Daubert* Decl.") are to the  Declaration of David C. Kiernan in Support of Apple's Opposition to Plaintiffs' *Daubert* Motion, dated January 13, 2014; all references to ("Sweeney Reply *Daubert* Decl.") are to the Declaration of Bonny E. Sweeney in Support of Plaintiffs' Reply Memorandum in Support of *Daubert* Motion to Exclude Certain Opinion Testimony of Kevin M. Murphy and Robert H. Topel, filed concurrently herewith; and all references to  ("Sweeney MSJ Opp. Decl.") are to the Declaration of Bonny E. Sweeney in Support of Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and to Exclude Expert Testimony of Roger G. Noll, dated January 13, 2014.

1  04879-JCS, 2013 U.S. Dist. LEXIS 144140, at *32 (N.D. Cal. Oct. 4, 2013) (excluding expert

2  testimony for lack of "fit").

3  **II.    CLUSTERING DOES NOT FIT THE FACTS OF THE CASE**

4        Despite Apple's protestations, ample "real-world facts" and "real-world evidence" support

5  Plaintiffs' claim that Apple's disabling of Harmony through its 7.0 updates enhanced and maintained

6  Apple's monopoly power and enabled Apple to sell iPods at supracompetitive prices. *See* Dkt. No.

7  751-3 (Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary

8  Judgment and to Exclude Expert Testimony of Roger G. Noll) at 8-9. Professor Noll's multiple-

9  variable regression analysis, which demonstrates anticompetitive impact and estimates single

10  damages of more than $350 million, is based on well-accepted methods that are frequently used to

11  demonstrate impact and damages in antitrust cases. *Id.* at 8, 14-25.

12        Recognizing that Professor Noll's credentials and regression methodologies have been

13  widely accepted, Apple aims its principal attack at the statistical significance of Professor Noll's

14  results, claiming that he should have clustered the standard errors. According to Apple, after

15  "correcting" for clustering, the statistical significance of Noll's regressions disappears, and damages

16  – conveniently – are reduced to zero. But this argument has no basis in economics or the facts of

17  this case.

18        **A.    There Is No Clustering Problem Among iPod Transactions**

19        As an initial matter, Apple's claim that the data observations used in Professor Noll's

20  regressions are not independent lacks merit. As Apple's own expert concedes, if the transactional

21  data "were truly independent, then you wouldn't have to cluster." Sweeny MSJ Opp. Decl., Ex. 52

22  (1/8/14 Topel Dep.) at 242:5-7. That is exactly the situation here. Each transaction involved a

23  different buyer making an independent decision about whether to make a purchase and, if so, how

24  many units to buy. As a result, each is properly regarded as an independent event. Sweeney

25  *Daubert* Decl., Ex. 4 (Noll Rebuttal) at 9, 36; *id.*, Ex. 1 (Wooldridge Decl.) at 8 ("If one properly

26  views a transaction as a unit of observation, as is done by Professor Noll, the data need not be treated

27  as a cluster sample. In particular, the clustering procedure suggested by Professors Murphy and

28  Topel . . . is inappropriate.")

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR        - 2 -

1    Equally important, clustering is not appropriate here because Professor Noll analyzed the

2    *entire* population of Apple's transactional data, not just a sample.  Sweeney MSJ Opp. Decl., Ex. 3

3    (Noll Supp. Rebuttal) at 3.  Clustering problems arise when dealing with data drawn from clustered

4    samples, not when dealing with a randomly-drawn sample or the whole population.[3]  *Id.*; Sweeney

5    *Daubert* Decl., Ex. 4 (Noll Rebuttal) at 10; Sweeney MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at

6    3-7; Sweeney *Daubert* Decl., Ex. 1 (Wooldridge Decl.) at 10; Sweeney Reply *Daubert* Decl., Ex 1

7    (Wooldridge Supp. Decl.) at 11-27, 32-33.

8    **B.    Apple's Pricing Practices Do Not Give Rise to Correlation of the
         Residuals**

9

10    Although Apple now attempts to distance itself from its previous "uniform pricing"

11    argument, it is clear that Murphy and Topel's clustering opinions are based on the false premises that

12    Apple charges one price to all customers and that the residuals must be correlated simply because

13    Apple was the seller in all transactions.[4]  *See, e.g.*, Def.'s Mem. at 8-9 ("Correlation should be

14    expected given the way in which iPod prices were determined. . . .Apple charged roughly the same

15    price for an iPod family.");  *see, e.g.*, Sweeny MSJ Opp. Decl., Ex. 53 (1/8/14 Murphy Dep.) at

16    272:20-24 (The clustering structure "was something that you know would have to be done because

17    of the way the market works and because you have multiple transactions being done at prices that are

18    set by a common pricing apparatus, for lack of a better term.").  As Plaintiffs demonstrated in their

19    opening memorandum, however, neither of those premises withstands scrutiny.  *See* Pltfs' Mem. at

20    10-11.  Apple's pricing is not uniform.  Sweeney *Daubert* Decl., Ex. 4 (Noll Rebuttal) at 33 &

21    Appendix B; Def.'s Mem. at 9 (conceding that customers do not pay uniform prices).  And even for

22    iPod sales at the same posted price, "the observations are independent because each transaction

23    involves a different buyer making an independent decision about whether to make a purchase."

24    Sweeney *Daubert* Decl., Ex. 4 (Noll Rebuttal) at 36; *see generally id.* at 36-39.

25

26    [3]    As described in Thompson (2012), a cluster sample is one in which a simple random sample
         of primary units is taken from the population of primary units.  Sweeney Reply *Daubert* Decl., Ex. 1
27    (Wooldridge Supp. Decl.) at 11.  Without cluster samples there can be no clustering problems.

       [4]    *See* Def.'s Mem. at 9 n.12.
28

1          C.      **Apple's "Test" for Correlation of the Residuals Is Flawed**

2          Lacking any economic or factual support for its clustering adjustment, Apple claims Murphy

3   and Topel have demonstrated, using "standard tests," that the residuals are "highly correlated" at the

4   family and quarter level.  Def.'s Mem. at 10.  But as Professor Noll concluded in his Supplemental

5   Report, those "tests" are "unreliable because the groups into which [Murphy and Topel] divide the

6   observations are artificially created."  Sweeney MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at 5.

7   To demonstrate this artifice, Professor Noll used Murphy and Topel's testing method, but divided

8   the data by different time periods (family/month and family/week instead of family/quarter).  The

9   results were "qualitatively identical," demonstrating that the correlations that Murphy and Topel

10  allegedly identified are "not due to the standard problem of cluster samples . . . but are the expected

11  result of dividing the residual errors into a large number of arbitrarily selected groups."  Sweeney

12  MSJ Opp. Decl., Ex. 3 (Noll Supp. Report) at 6 & Exhibits 1a-b & 2a-b.[5]

13         Professor Wooldridge's simulations confirm that Apple's experts' "exercise is entirely

14  predictable, and tells us nothing about whether clustering is needed."  Sweeney Reply *Daubert*

15  Decl., Ex. 1 (Wooldridge Supp. Decl.) at 25.  Indeed, their test demonstrates why clustering is

16  inappropriate in this case and leads to artificial inflation of the standard errors:

17              Not only do Professors Murphy and Topel provide no useful evidence in
            favor of clustering, their exercise actually supports the simulation evidence above
18          that clustering badly overestimates the true precision in the estimates. Ironically, by
            extension, the Murphy-Topel analysis actually explains why their cluster-robust
19          standard errors in the iPod transactions are much too large.

20              . . . Given that the theoretical derivation in Section 4 and the simulation
            evidence presented here completely support my earlier intuition, I am more strongly
21          convinced than ever that the "tests" used by Professors Murphy and Topel show
            nothing of value when it comes to deciding whether standard errors need to be
22          clustered.

23  *Id.* at 26.

24

25

26  _____
    [5]       In its Opposition, Apple tries to minimize its previous reliance on clustering by family and
27  quarter, stating that "even if the standard errors are clustered only by family and not by time period,
    Noll's results still are not statistically significant."  Def.'s Mem. at 18.  But the same problems apply
28  to clustering by family.  *See infra* at 8.

1    **D.    Apple's "Omitted Variables" Argument Does Not Support Clustering**

2    As Plaintiffs' experts have explained, Apple's "omitted variables" argument does not support

3    clustering.  First, clustering is not required if the observation data are a random sample or an entire

4    population of data (as here), rather than a clustered sample.[6]  Sweeney Reply *Daubert* Decl., Ex. 1

5    (Wooldridge Supp. Decl.) at 1, 11-27, 32-33; Sweeney *Daubert* Decl., Ex. 1 (Wooldridge Decl.) at

6    10; Sweeny *Daubert* Decl., Ex. 4 (Noll Rebuttal) at 10; Sweeney MSJ Opp. Decl., Ex. 3 (Noll Supp.

7    Rebuttal) at 3-7.  In his Supplemental Declaration, Professor Wooldridge cites several examples of

8    influential empirical studies that used large random samples but did not correct for clustering,

9    despite clear evidence of omitted variables.  Sweeney Reply *Daubert* Decl., Ex. 1 (Wooldridge

10   Supp. Decl.) at 12-13.  In those cases, "no clustering is needed to obtain the appropriate standard

11   errors.  The usual heteroskedasticity-robust standard errors [which Noll used] are appropriate."  *Id.*

12   Indeed, Murphy's own research has used large random samples with obvious omitted

13   variables, and yet Murphy made no clustering correction.  *Id.* at 13-14.  For example, in Juhn,

14   Murphy, and Pierce (1993), Murphy utilized 27 years worth of data from the Current Population

15   Survey ("CPS") to study wage inequality, but did not cluster standard errors.  *Id.*  As Wooldridge

16   puts it:  "It seems pretty clear that unobserved factors affecting wage can vary by state and year.  Yet

17   there is no discussion of how omitted factors that vary by state and time cause the underlying errors

18   in their models to be correlated."  *Id.*

19   This same Murphy study also refutes Apple's (unsupported) argument that Noll's

20   standard errors are "unbelievably small" and the corresponding t-statistics[7] unbelievably large.

21   Def.'s Mem. at 8.  In his 1993 study, Murphy reports t-statistics well above 300 with only

22   approximately 50,000 observations.  Here, with more than 600 times that number of

23   observations, Noll reports a t-statistic on the key variable of approximately 448.  This is well

24

25   [6]    Wooldridge explained that in his First Declaration that the same calculations that can be
      drawn about clustering random samples also apply to a whole population.  Sweeney *Daubert* Decl.,
26   Ex. 1 (Wooldridge Decl.) at 5, 10-12; *see also* Sweeney Reply *Daubert* Decl., Ex. 1 (Wooldridge
      Supp. Decl.) at 9-15.

27   [7]    A t-statistic is a ratio of the departure of an estimated parameter from its notional value and
28   its standard error.  It is typically used in hypothesis testing.

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR        - 5 -

1    within acceptable limits, as Professor Murphy's own work attests.  Sweeney Reply *Daubert*

2    Decl., Ex. 1 (Wooldridge Supp. Decl.) at 14.

3          Second, the "omitted variables" that Apple asserts should have been included in Noll's

4    regressions cause multicollinearity.  Given that Professor Noll's regressions include a large number

5    of product characteristics that affect iPod prices, multicollinearity should be tested for and avoided –

6    even if the omitted variables purportedly add to the explanatory power of the regression.  Sweeney

7    MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at 8-9.  Multicollinearity causes a reduction in the

8    precision of the estimated coefficients in the regression, making them less reliable.  Sweeney

9    *Daubert* Decl., Ex. 4 (Noll Rebuttal) at 31; Sweeney MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at

10   7.

11         Here, neither of Apple's experts conducted any of the standard tests for multicollinearity or

12   provided support for their opinion.  Sweeny MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at 7-10;

13   *id.*, Ex. 53 (1/8/14 Murphy Dep.) at 294:25-298:14.  Had they done so, they would have discovered

14   that all but one of the omitted attributes generated a multicollinearity problem.  Sweeney MSJ Opp.

15   Decl., Ex. 3 (Noll Supp. Rebuttal) at 10.  Professor Noll utilized three separate tests (the adjusted R-

16   squared, condition number, and VIF) and each one unequivocally demonstrated multicollinearity

17   problems when adding the omitted variables to the regressions.  *Id.* at 10-11.

18         Nor did Murphy and Topel provide any logical reason – based on economic theory or

19   econometrics – that would justify adding any of the omitted variables to the regression.[8]  *Id.* at 9-10;

20   *see, e.g.*, *id.*, Ex. 53 (1/8/14 Murphy Dep.) at 285:17-22 ("I would say it's basically based on

21   economics and the actual evidence on pricing.  I – I don't recall a specific document that talks about

22   the pricing of those.  But it's something economics would lead us to believe should be included.").

23   Topel's rationalization for adding the omitted variables is even more rudimentary: "my recollection

24   is that these were variables that were in the data that Professor Noll had, and he chose to omit them.

25

---

[8]    Contrary to Apple's misrepresentations, Noll did not admit that his regression should include variables where the "'prices plausibly could be affected by it.'"  Def.'s Mem. at 10 (citing Noll Supp. Rebuttal at 9).  Instead, Noll stated that if an indicator variable is turned on, it means that that particular variable should have affected the price of an iPod – not that is has to be turned on.  Dkt. No. 685 (Second Supplemental Declaration of Roger G. Noll on Class Certification) at 9.

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR        - 6 -

1    So we simply said let's not omit them.  Let's see what happens.  They surely seem to be variable

2    characteristics."  Sweeney MSJ Opp. Decl., Ex. 52 (1/8/14 Topel Dep.) at 216:17-22; *see also id.*,

3    Ex. 53 (1/8/14 Murphy Dep.) at 288:4-11 (haphazardly guessing that a "vast bulk of" the iPods

4    would be affected by one particular omitted variable).  As Murphy admits, "if you thought there was

5    no economic reason to include those kinds of variables in a regression, then I don't think you'd want

6    to put them in."  Sweeney MSJ Opp. Decl., Ex. 53 (1/8/14 Murphy Dep.) at 289:16-19.  Because

7    neither Murphy nor Topel could provide any economic or econometric reason for including the

8    omitted variables, these variables rightly should be excluded from Professor Noll's regressions.

9         **E.    Through the Construction of Arbitrary Clusters, Apple's Experts
      Artificially Introduce Correlation into the Error Residuals**

10           Through the use of ex post clustering,[9] Murphy and Topel effectively collapse the

11   transactions data for each class/generation/family of an iPod into a calendar quarter and thus into a

12   single observation, which works to reduce the number of transaction observations and the number of

13   degrees of freedom in the regression.  Sweeney *Daubert* Decl., Ex. 4 (Noll Rebuttal) at 47.  Murphy

14   and Topel's clustering analysis is unreliable because the groups into which they divide their

15   observations are artificially created.[10]  Sweeney MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at 5.

16   Murphy and Topel first divide the observations into families, using the premise that Apple's pricing

17   committee used common features within a family to set "uniform" prices.  *Id.*  As discussed above,

18   this assertion is contradicted by Apple's own admissions and the transactions data.

19           Next, Murphy and Topel further group these families of iPods by quarter, but provide no

20   logical basis for doing so.  Sweeney *Daubert* Decl., Ex. 4 (Noll Rebuttal) at 44; Sweeney Reply

---

[9]    Both Professor Noll and Professor Wooldridge refer to the idea of "ex post clustering."  This
phrase is in reference to clustering where a random sample is drawn from a large population with the
observations subsequently grouped on the basis of an observed variable.  Sweeney Reply *Daubert*
Decl., Ex. 1 (Wooldridge Supp. Decl.) at 11-12.

[10]   Apple mischaracterizes Noll's testimony.  Noll did not state that the "independence
assumption applies when using the entire population of transactions and that residuals could be
correlated within groups."  Def.'s Mem. at 13.  Noll argued that where the R-square is extremely
high (indicating a high explanatory power in the regression), you would not need to test the
residuals, particularly if you already have group identifiers.  Here, it is unnecessary to perform a test
of the independence assumption because "there are no groups with outlying residual errors in the R-
squared spot.  And by definition, the mean residual errors by group are going to be zero."  Sweeney
MSJ Opp. Decl., Ex. 50 (12/18/13 Noll Dep.) at 46:6-9.

1    *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 4-5.  Grouping the residual errors into families by

2    quarter only makes sense if there is an unobserved variable that affects iPod families differently in

3    different quarters.  Sweeney MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at 5.  Murphy and Topel

4    could have just as easily grouped the residuals by day, week, or year – the arbitrary nature of their

5    clustering by quarter is entirely ad hoc.  When pressed, neither Murphy nor Topel could provide any

6    rationale for grouping the residuals by quarter.  Murphy admitted that there is no evidence that Apple

7    evaluates its iPod pricing on a quarterly basis and that grouping by quarter was done as a

8    "compromise," conceding that aggregating at other levels would also be "reasonable."  Sweeney

9    MSJ Opp. Decl., Ex. 53 (1/8/14 Murphy Dep.) at 264:11-265:15 ("I don't think [Apple does]

10   anything that lines up precisely on quarter boundaries.").  Likewise, Topel acknowledged that Apple

11   "hold[s] prices constant across a couple of quarters."  *Id.*, Ex. 52 (1/8/14 Topel Dep.) at 206:13-

12   207:23.

13        The arbitrariness of Murphy and Topel's clustering adjustment is underscored by the fact that

14   neither did any additional testing to determine the effect of aggregating the data for different time

15   periods.  *Id.*, Ex. 53 (1/8/14 Murphy Dep.) at 265:17-266:5; *id.*, Ex. 52 (1/8/14 Topel Dep.) at 209:1-

16   15.  If they had done so, they would have seen that the same results occur whether the data are

17   clustered by family/quarter, family/month, or family/week.  Sweeney MSJ Opp. Decl., Ex. 3 (Noll

18   Supp. Rebuttal) at 6 & Exs. 1a-b, 2a-b.  These results demonstrate that Murphy and Topel had no

19   basis for clustering the residuals into quarters; the supposed correlations of the residual errors are the

20   expected result of dividing the residual errors into a large number of arbitrarily selected groups.

21   Sweeney MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at 6; Sweeney Reply *Daubert* Decl., Ex. 1

22   (Wooldridge Supp. Decl.) at 25-26 (Apple's exercise is "predictable" and "tells us nothing about

23   whether clustering is needed.")

24        Recognizing that clustering by quarter is inappropriate, Apple attempts to salvage Murphy

25   and Topel's analysis by arguing that clustering the standard errors at the family level alone

26   demonstrates that Noll's results are still not statistically significant.  Def.'s Mem. at 18.  But

27   clustering at the family level (without regard to time period) is still ex post clustering, so the

28   correlation of residuals that is observed has been introduced artificially (irrespective of the particular

976112_1

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR          - 8 -

1  ex post cluster chosen), and does not stem from a true cluster sampling problem that needs to be

2  "properly corrected." Sweeney Reply *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 17-18.

3  **F.     Clustering Where Unnecessary Is Harmful**

4      Both Murphy and Topel concede that making a clustering adjustment when it is not required

5  can bias the standard errors. Sweeney MSJ Opp. Decl., Ex. 52 (1/8/14 Topel Dep.) at 244:4-19; *id.*,

6  Ex. 53 (1/8/14 Murphy Dep.) at 279:3-7. In fact, as confirmed by Professor Wooldridge in his

7  Supplemental Declaration, clustering standard errors where, as here, the entire data population is

8  being used, can result in "severe upward biases" of the standard errors. Sweeney Reply *Daubert*

9  Decl., Ex. 1 (Wooldridge Supp. Decl.) at 19-20, 26; *see also* Sweeney *Daubert* Decl., Ex. 4 (Noll

10  Rebuttal) at 6. This is far from harmless.

11      In his Supplemental Declaration, Professor Wooldridge uses a theoretical calculation and

12  several simulations to demonstrate that clustering after random sampling (or, as in this case, after

13  observing an entire population) biases the standard errors upward. The theoretical calculation

14  "confirms the intuition" expressed in Professor Wooldridge's first declaration: "If one starts with a

15  random sample, computes residuals, and then averages those residuals with arbitrarily created

16  clusters, the residuals will have means that are systematically different from zero. Therefore,

17  clustering artificially inflates the standard errors, perhaps by a substantial amount." *Id.* at 18.

18  Professor Wooldridge concludes that "clustering after collecting a random sample is far from

19  harmless. The upward bias can be severe, and the situation gets worse as the sample size

20  grows . . . ." *Id.* at 19.

21      Professor Wooldridge's simulations also demonstrate that clustering standard errors in a

22  population artificially inflates the standard errors:

23          These simulation results cast serious doubt on the practice of clustering when
            the entire population is available. When we take a 10% random sample we know that
24          the proper standard error is, roughly, .049. Across the 1,000 simulations the largest of
            the standard errors is about .051. In other words, the largest standard error we obtain
25          using 1,000 different 10% random samples is never close to the clustered standard
            error using the entire population, .206. Thus, if we insist on clustering the population
26          standard errors, we have the perverse conclusion that virtually any 10% random
            sample produces a much more precise estimate than using the entire population. By
27          contrast, if we use the usual standard error then this paradox disappears: the standard
            error from the population, .016, is much smaller than any of the 1,000 standard errors
28          obtained from a 10% sample. (The smallest is about .049.)

1  Sweeney Reply *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 24.

2  **G.   The Number of Observations Per Cluster Distorts the Standard Error**

3  As confirmed by Professor Wooldridge's simulations, when the number of observations in a

4  cluster increases relative to the number of clusters, the standard error becomes distorted.  Sweeney

5  Reply *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 20.  Running a basic simulation, Professor

6  Wooldridge found that the usual standard errors work well when the total number of observations

7  were at 50.  *Id.*  However, when the number of observations increased to 5,000 – with an average of

8  1,000 observations per cluster – the mean cluster standard is approximately .709, which is close to

9  the predicted value of .707.  *Id.*  Calculating the ratio of the average cluster standard error to the

10  usual standard error is .709/.033 = 21.5  *Id.*  This indicates that the clustered standard error is

11  expected to be about 21.5 times too large – confirming both Professor Noll and Professor

12  Wooldridge's theory that clustering is very harmful and produces standard errors that are too

13  conservative.  *Id.*

14  Further, Apple's attack on Noll's reliance on Angrist and Pischke's book is misguided.

15  Apple argues that the relevant chapter demonstrates the opposite of Noll's opinion – that clustering

16  should be performed when the number of observations per group and the amount of within-group

17  correlation increases because the standard error becomes "increasingly misleading."  Def.'s Mem. at

18  16.  However, this chapter of Angrist and Pischke's book is based on problems when one is already

19  dealing with cluster samples – not when one working is working with an entire population.  Sweeney

20  MSJ Opp. Decl., Ex. 3 (Noll Supp. Rebuttal) at 4.  When discussing the performance of standard

21  errors in relation to the number of clusters, the authors state that "[i]f 42 is enough for the standard

22  cluster adjustment to be reliable, and if less is too few, then what should you do when the cluster

23  count is low?  *First best is to get more clusters by collecting more data*."  *Id.*  This statement only

24  makes sense if the original number of clusters is less than the population of clusters, thereby

25  denoting the ability to obtain more clusters if necessary.  *Id.*

26

27

28

III.   **APPLE'S ATTACKS ON PROFESSOR WOOLDRIDGE ARE UNFOUNDED**

A.   **Professor Wooldridge's Opinions Are Supported by Generally Accepted Econometrics and Wooldridge's Own Peer-Reviewed Publications and Research and Were Not Manufactured for This Litigation**

All of Apple's attacks on Professor Wooldridge fail to withstand scrutiny. First, Wooldridge did not "custom-manufacture" his opinion for the purposes of this litigation.[11] Def.'s Mem. at 14-15. Professor Wooldridge is on published record criticizing clustering in a context closely related to random sampling: stratified sampling with large sample sizes within strata. Sweeney Reply *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 27. With stratified sampling, one first partitions the population, just as with cluster sampling. *Id.* But, rather than sample clusters, one obtains random samples within each stratum. *Id.* In Wooldridge (2003, 2010, Section 20.3.4.), Professor Wooldridge explains that treating stratified samples as cluster samples is likely to be too conservative, which is the same issue here: the usual standard errors are correct and clustered standard errors are too conservative. *Id.*

Apple also argues that Professor Wooldridge's opinion that clustering with random samples is unnecessary and perhaps harmful has no support in economic literature. Besides being incorrect (Wooldridge's own peer-reviewed publications provide such authority), this criticism actually demonstrates that it is Murphy and Topel's clustering opinions that lack support. As Professor Wooldridge explains, econometrics literature does not warn against clustering a random sample because "it is well known how to compute standard errors with random samples, and it does not involve clustering." *Id.* at 28, *see generally id.* at 28-29.

---

[11]    The authority Apple relies upon to exclude Professor Wooldridge's declaration are inapposite. In *Cabreara v. Cordis Corp.*, 134 F.3d 1418 (9th Cir. 1998), the expert in question could not support his conclusions with any of his own research or any other known research – unlike here, where Professor Wooldridge relied upon both econometric theory and simulations to support his opinion. Similarly, in *Lust by & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 597 (9th Cir. 1996), the origination of the expert's opinion could only be traced to a point after he began working as a professional plaintiff's witness. Here, Professor Wooldridge began developing his theory on clustering years before he was retained in this litigation and has stated that he has seen this issue come up in other contexts. Kiernan *Daubert* Decl., Ex. 11 (1/6/14 Wooldridge Dep.) at 91:10-16.

976112_1

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR          - 11 -

1    Apple also criticizes Professor Wooldridge for clustering in previous work when using the

2    entire population.  Def.'s Mem. at 14.  However, Professor Wooldridge's past work with clustering a

3    population data set are limited to particular circumstances not present here.  Sweeney Reply *Daubert*

4    Decl., Ex. 1 (Wooldridge Supp. Decl.) at 30-31.  The first circumstance occurs with panel data,

5    where one wants to group the data to control for unobserved effects that can cause bias in the

6    estimates.  Clustering is even appropriate when dealing with a random sample of cross-section/time

7    period units here because of the need to control for unobserved factors that are constant over time.

8    *Id.*  The second scenario where Professor Wooldridge clustered a population involved cross sectional

9    data, where there were many groups and relatively small group sizes.  *Id.*  Both of these examples of

10   clustering a population are narrow exceptions that have no parallels to the litigation at hand.  *Id.*

11   Finally, it must be noted that if random sampling required the calculation of cluster-robust

12   standard errors, then numerous papers in empirical economics would have to be redone.  Sweeney

13   Reply *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 12.  Many influential studies, like Angrist

14   and Krueger (1991), Angrist and Evans (1998), and Angrist, Chernozhukov, and Fernandez-Val

15   (2006, Econometricia), use large random samples from the United States Census without using

16   clustering for standard errors.  Sweeney Reply *Daubert* Decl., Ex. 1 (Wooldridge Supp. Decl.) at 11-

17   12.

18   **B.    Plaintiffs Timely Disclosed Wooldridge**

19   This Court should reject Apple's argument that Wooldridge's declaration is untimely.[12]

20   First, Plaintiffs complied with the scheduling order when it timely served Professor Noll's reports in

21   April and November of 2013.  Rule 26(a)(2) only requires the disclosure of "the identity of any

22   witness it may use at trial to present evidence."  Fed. R. Civ. P. 26(a)(2).

23

24   [12]    All three of the out-of-circuit authorities Apple relies upon in support of its argument to
25   exclude Professor Wooldridge share a common theme, limiting their applicability.  In *Reed v. Smith
     & Nephew, Inc.*, 527 F. Supp. 2d 1336, 1348 (W.D. Okla. 2007), *Moore v. Napolitano*, 926
26   F. Supp. 2d 8, 25 n.12 (D. D.C. 2013), and *Jeffries v. Centre Life Ins. Co.*, No. 1:02-cv-351, 2004
     U.S. Dist. LEXIS 30769, at *1 (S.D. Ohio Jan. 28, 2004), the court ultimately excluded the untimely
27   expert opinions because the objecting party never had a chance to depose the expert witness, unlike
     here.  Plaintiffs made Professor Wooldridge fully available for an entire day of deposition, of which
28   Apple took advantage.  Def.'s Mem. at 12.

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR          - 12

1    Professor Wooldridge is offering testimony on a narrow topic – clustering – in connection

2    with Plaintiffs' *Daubert* motion.  He is not Plaintiffs' merits expert, and Plaintiffs had no obligation

3    to disclose him in April of 2013.  Because Plaintiffs had no obligation to disclose Professor

4    Wooldridge prior to the merits expert disclosure deadlines, his expert report was not untimely.  *See,*

5    *e.g.*, *Nightlight Sys. v. Nitelites Franchise Sys.*, No. 1:04-CV-2112, 2007 U.S. Dist. LEXIS 95538, at

6    *24-*26 (N.D. Ga. May 11, 2007) (permitting the use of an undisclosed expert strictly at the

7    *Daubert* hearing and not at trial, noting that there was enough time for expert reports and depositions

8    prior to the expert hearing); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 739 (3d Cir.

9    1994) (affirming district court's decision to allow an undisclosed expert to testify at *Daubert*

10    hearing).

11    Second, under Rule 37(c)(1), even assuming the disclosure was untimely (which it was not),

12    a party may use a late-disclosed witness if the failure to disclose was "substantially justified or is

13    harmless."  Fed. R. Civ. P. 37(c)(1).  Because Plaintiffs made Professor Wooldridge available for a

14    full day of deposition on January 6, 2014 (which availability Apple took complete advantage of –

15    using even less than the allotted amount of time agreed upon to complete the deposition), there was

16    no prejudice.  Professor Wooldridge also fully responded to Apple's document subpoena.  Further,

17    Apple claims that the arguments proffered by Professor Wooldridge are largely similar to those put

18    forth by Professor Noll, thereby refuting Apple's suggestion that it did not have enough to time to

19    address Professor Wooldridge's theories or opinions.  Def.'s Mem. at 12.  Courts regularly permit

20    expert testimony under similar circumstances.[13]  *See, e.g.*, *Wendt v. Host Int'l*, 125 F.3d 806, 814

21    (9th Cir. 1997) (vacating district court's preclusion of expert testimony because parties had time "to

22    begin the expert disclosure procedure anew"); *Baxter Healthcare Corp. v. Fresenius Med. Care*

23    *Holding, Inc.*, No. C 07-1359, 2009 U.S. Dist. LEXIS 32380, at *8 (N.D. Cal. Apr. 2,

24    2009) (denying motion to preclude evidence and witnesses introduced after fact discovery

25

---

26    [13]    That Apple's former expert (used for class certification only) raised clustering is irrelevant.
Plaintiffs successfully refuted those arguments, as demonstrated by the fact that Judge Ware ruled
27    that Plaintiffs had adequately demonstrated class-wide impact and damages based on Professor
Noll's methodologies, while in turn rejecting Dr. Burtis' opinion (which included her clustering
28    opinions).  Dkt. No. 694 (Order Granting Plaintiffs' Motion for Class Certification) at 6-7.

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR    - 13 -

1   concluded, noting that the opposing party was able to depose the witness); *In re Enron Corp. Sec.,*

2   *Derivative & ERISA Litig.*, MDL No. 1446, 2007 U.S. Dist. LEXIS 98619, at *133-*134 (S.D. Tex.

3   Feb. 1, 2007) (untimely expert report permitted where the expert's theory and data were already

4   available to the opposing party and thus there was no unfair surprise; court noted that there was

5   plenty of time to schedule depositions without disrupting the trial schedule).

6   **IV.   CONCLUSION**

7   Clustering the error residuals in this case is both inappropriate and harmful, as confirmed

8   through Professor Noll's Supplemental Rebuttal Report and Professor Wooldridge's Supplemental

9   Declaration.  Apple's assertions to the contrary falter when analyzed against the facts of the case,

10  economic and econometric theory, and statistical analysis and simulations that Murphy and Topel's

11  clustering opinion fails to fit the facts of this case and should be excluded from the summary

12  judgment record and at trial.

13  DATED:  January 31, 2014                                Respectfully submitted,

14                                                          ROBBINS GELLER RUDMAN
                                                              & DOWD LLP
15                                                          BONNY E. SWEENEY
                                                            THOMAS R. MERRICK
16                                                          ALEXANDRA S. BERNAY
                                                            CARMEN A. MEDICI
17                                                          JENNIFER N. CARINGAL

18

19                                                                s/ Bonny E. Sweeney
                                                                 BONNY E. SWEENEY
20
                                                            655 West Broadway, Suite 1900
21                                                          San Diego, CA  92101
                                                            Telephone:  619/231-1058
22                                                          619/231-7423 (fax)

23                                                          Class Counsel for Plaintiffs

24                                                          THE KATRIEL LAW FIRM
                                                            ROY A. KATRIEL
25                                                          1101 30th Street, N.W., Suite 500
                                                            Washington, DC  20007
26                                                          Telephone:  202/625-4342
                                                            202/330-5593 (fax)

27

28

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR        - 14 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
FRANCIS J. BALINT, JR.
ELAINE A. RYAN
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
602/274-1199 (fax)

BRAUN LAW GROUP, P.C.
MICHAEL D. BRAUN
10680 West Pico Blvd., Suite 280
Los Angeles, CA  90064
Telephone:  310/836-6000
310/836-6010 (fax)

GLANCY BINKOW & GOLDBERG LLP
BRIAN P. MURRAY
122 East 42nd Street, Suite 2920
New York, NY  10168
Telephone:  212/382-2221
212/382-3944 (fax)

GLANCY BINKOW & GOLDBERG LLP
MICHAEL GOLDBERG
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)

Additional Counsel for Plaintiffs

PLAINTIFFS' REPLY MEMO IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE CERTAIN
OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL - C-05-00037-YGR          - 15 -