# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

—————————————————————
        |

APPLE IPOD ITUNES    |    Lead Case No. C-05-00037-YGR
ANTITRUST LITIGATION   |

—————————————————————|


**SUPPLEMENTAL DECLARATION OF JEFFREY M. WOOLDRIDGE IN SUPPORT OF PLAINTIFFS' *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINION TESTIMONY OF KEVIN M. MURPHY AND ROBERT H. TOPEL**

**1. Introduction**

  My name is Jeffrey M. Wooldridge. I am a University Distinguished Professor of Economics at Michigan State University (MSU), where I have taught since 1991. This is my second declaration submitted in the Apple iPod iTunes Antitrust Litigation. My background and qualifications are reported in my first declaration.

**2. Assignment and Summary**

  In my first declaration I provided support for the calculation of standard errors in Professor Roger Noll's hedonic price regressions, which he uses to compute damages in the case. In this declaration I:

  (1) Provide additional support for Professor Noll's calculation of standard errors. In particular, I still conclude that clustering results in standard errors with a severe upward bias and therefore should be avoided. Professor Noll's calculations are much more reliable.

  (2) Provide detailed responses to the criticisms contained in the Apple Opposition document, which includes a recommendation that my first declaration should be stricken. On page 18 of the document, the reason for given for striking my first declaration is that my

CONFIDENTIAL – ATTORNEYS EYES ONLY

"theories" have no support. These "theories" are listed as "(i) clustering is never important when using the entire population, (ii) what he calls 'ex post clustering' is in appropriate, and (iii) clustering is inappropriate where the ratio between number of clusters and number of observations is large." In Section 6 I respond to these criticisms. For now, I note that in my deposition I gave examples where clustering using a population would be appropriate (and concluded that the situation did not apply in Professor Noll's regressions), and so assertion (i) is false. I will clarify assertion (ii) and provide evidence of the inappropriateness of clustering after obtaining random samples. I never made assertion (iii). In fact, when applied to true cluster samples, the clustered standard errors become more reliable as the number of clusters increases for a fixed cluster size. I state this clearly in Chapter 21 of Wooldridge (2010).

As in my first declaration, I restrict my comments to the issue of computation of standard errors, and whether clustering is necessary. I do not evaluate the choice of variables included in Professor Noll's regressions.

In preparing this declaration, I read the Apple Opposition document, the transcript of my deposition dated January 6, 2014, Professor Kevin Murphy's deposition dated January 8, 2014, and several additional references on sampling and the computation of standard errors. These references are provided at the end of the document.

## 3. Important Considerations when Computing Standard Errors

In any study where data are used to compute estimates – whether the purpose is to test an economic theory, evaluate a policy, or determine damages – to be useful the estimates should be accompanied by a measure of their uncertainty. Traditionally, uncertainty in parameter estimates is measured by sampling error: a sample is taken from a population and one must account for the fact that the sample is not the entire population. Much research in the theory of statistics and

2

CONFIDENTIAL – ATTORNEYS EYES ONLY

econometrics centers on properly computing standard errors under different sampling schemes. The leading case is when a population is sampled via random sampling – for example, Angrist and Pischke (2009) and Wooldridge (2010, 2013) use this framework extensively – but appropriate formulas have been obtained for a wide variety of situations, including stratified sampling and cluster sampling. Popular books on sampling, such as Thompson's (2012) third edition, begin with the case of random sampling and then move to more complicated sampling schemes.

As I discussed in my first declaration, it is important for standard errors to be "almost" unbiased whenever possible[1]. A common misperception is that it is generally okay if standard errors are conservative – that is, on average, they are above the true sampling variability of the estimates. Standard errors that have a systematic upward bias can lead to statistical tests with low power for detecting nonzero coefficients, and lead to confidence intervals that are much too wide given the true uncertainty in the estimates. This point is important because, as I described in my first declaration, and as I show more carefully in Section 3, clustering in the context of random sampling is generally conservative – in some cases, very conservative.

Of course, if one can only compute conservative errors then one has no choice but to use them. But this is not the case with the iPod transactions data. I will again demonstrate in Section 3 that the usual standard errors are essentially unbiased and are therefore preferred to the conservative clustered standard errors.

---

[1] For technical reasons, standard errors are never unbiased for the sampling standard deviation of an estimator. Therefore, we often rely on the notion of consistency, which involves convergence of the standard errors to the sampling standard deviations as the sample size gets large. In large sample sizes, appropriate standard errors typically have little bias.

3

CONFIDENTIAL – ATTORNEYS EYES ONLY

3.1. Estimation Uncertainty when Using the Entire Population

One aspect of the Noll regressions that is agreed upon by both the defendant and plaintiffs is that Professor Noll has access to (essentially) the entire population of iPod transactions over the relevant time period. For the purposes of estimation, having the entire population is a good thing. As Professor Murphy states in his deposition of January 8, 2014, "Well, if you have the whole population, you could always take a sample if you wanted. So I, you know, I don't think there is generally a downside to having the whole population" (page 317, lines 2-5). I agree with this statement.

Unfortunately, having access to the entire population can lead to conceptual problems when it comes to computing standard errors. One view is that access to the entire population means there is no estimation error: if I want to know the population mean of a variable and I have access to the entire population, then I estimate the population mean without error. Nevertheless, especially in the context of regression analysis, it is unusual to claim that the parameter estimates are free of estimation error – including in Professor Noll's regressions. So the question is: how can one sensibly introduce uncertainty into estimates obtained from a population?

There are at least two approaches[2]. One is based on the notion of a "super-population," where the population we observe – all iPod transactions in the United States over a given period – is just one possible outcome, or "realization," from a larger super-population (SP), usually assumed to be infinite. In practice, when applied to cases where the entire population is observed, the SP approach is the same as the "data generating process" (DGP) approach that is

---

[2] A third possibility is to assume that the variables in the regression models are measured with error. Unfortunately, this does not necessarily resolve the issue of how to properly conduct inference because it requires modeling the measurement error. Plus, it is not clear how important measurement error is in the iPods transactions data.

CONFIDENTIAL – ATTORNEYS EYES ONLY

mentioned in the Murphy and Topel report and by Professor Murphy in his 1/8/14 deposition (page 323). [The book by Davidson and MacKinnon (2004) is cited as a source.] The SP and DGP approaches are essentially the same because they both require specifying a model for the joint distribution of all variables across all population units[3]. The SP/DGP approach is implicit in the Murphy and Topel claim that the standard errors must be clustered at some level in order to produce valid inference. Unfortunately, Murphy and Topel never write down a data generating process, or, equivalently, a super-population model, which would allow us to determine the proper level of clustering. Doing so would subject their proposed DGPs to specification tests (which can be carried out once a DGP has been specified). Murphy and Topel never give a reason for why they chose the level of clustering that they did – family/quarter – and this is consistent with their avoidance of specifying a DGP.

The key ingredient in the SP/DGP approach – having to specify a probability model that generates the population outcomes we observe – is also a key ingredient in what sampling statisticians call the "model-based approach" to sampling –for example, Thompson (2012, Section 2.7). In the model-based approach to sampling, one again views the population values as outcomes of a probability model. In other words, the model-based approach is essentially a super-population/DGP approach.

In the context of the model-based approach to sampling, Thompson (2012, page 131) summarizes a shortcoming of specifying a super-population model: "In fact, a pervasive problem with the model-based approach to sampling is that for many real populations, attempts to specify models have been far from adequate."

---

[3] In the context of regression analysis, one need not always specify a joint distribution. But at a minimum one needs to describe the variables in the model and state clearly the properties of the error in the model.

CONFIDENTIAL – ATTORNEYS EYES ONLY

While in some circumstances the SP/DGP approach can be useful for deriving standard errors when the entire population is observed, it is problematical for estimating damages. For estimating damages, we are interested in what we know about the actual transactions of iPod products over the period. It is unclear why we should be interested in the parameters in an underlying super-population model, or DGP, rather than the parameters describing the population that we have observed.

For the current application, a more sensible approach to injecting uncertainty in estimation when the entire population is observed was described in Section 5 of my first declaration. Imbens and Wooldridge (2009) contains a survey of the potential outcomes approach to estimating cause effects. In my first declaration, I showed, in a simple case, how a counterfactual or potential outcomes approach (POA) can be used to induce statistical error in the estimation of causal effects – which is what Professor Noll's regression analysis is ultimately about. The problem of obtaining a standard error for the population causal effect is formally the same as obtaining a standard error for the *sample* average treatment effect, as described in Imbens (2004). The population becomes the sample, and uncertainty is induced because we observe only one of the two potential outcomes. All uncertainty in estimation comes through the assignment of units into the treatment and control groups, which in the case of iPod transactions is the availability of iTunes. It is worth noting that Athey and Imbens (2006), among others, explicitly use a potential outcomes approach when the data have a time structure, as with the iPod transactions data used by Professor Noll.

The formula that I reported in my first declaration [equation (4) without the final term] is identical to the formula derived many decades ago by Neyman (1923). In the simplest case, the idea is to the treatment assignment as the only source of uncertainty.

6

CONFIDENTIAL – ATTORNEYS EYES ONLY

Rather than reproduce the details of my first declaration, I explain why I think the POA approach is superior to the super-population approach. Briefly, the potential outcomes approach accepts the observed set of transactions as comprising the relevant population, rather than being generated by a super-population model. In my view, the nature of the counterfactual thinking in the POA is preferred to the super-population approach: the population values we observe for price are one of two possible outcomes, depending on whether the transaction was recorded pre- or post-intervention, where the "intervention" in this case is the iTunes 7.0 update that blocked the Harmony software. As I argued in my first declaration, under this scenario the usual heteroskedasticity-robust standard error for the causal effect is always conservative and essentially unbiased in the case of a constant causal effect across all transactions.

Ultimately, the choice of how to inject uncertainty when the entire population is observed either requires us to postulate a super-population model or use potential outcomes. For damages estimation, I prefer the potential outcomes approach as being more relevant. Plus, as I show in Section 3.3, the potential outcomes approach meshes nicely with traditional sampling theory and produces a coherent approach to computing standard errors.

In order to describe how one can obtain a logically consistent framework for computing standard errors when either the population or a sample is observed, it is helpful to review the computation of standard errors under random sampling.

### 3.2. Computing Standard Errors under Random Sampling

The literature on computing standard errors in the context of regression analysis is well established under random sampling. When sampling from a finite population, books on sampling – for example Thompson (2012) – distinguish between two situations: sampling with replacement and sampling without replacement. Technically, sampling with replacement is easier

CONFIDENTIAL – ATTORNEYS EYES ONLY

to study for general estimation problems because the resulting draws can be treated as outcomes of independent and identically distributed (iid) random variables[4].

What is typically called "simple random sampling" also starts with a finite population but, rather than sampling units with replacement, units are sampled without replacement. This scenario is more realistic for survey sampling, where units are sampled at most once. As discussed by Thompson (2012, Section 2.6), random sampling with and without replacement both have the feature that each unit in the population has the same probability of being selected into a sample. The difference is that when units are drawn without replacement the conditional probability of drawing, say, unit $i$ when you know $j$ has been chosen is different from the unconditional probability of drawing $i$. As discussed in Casella and Berger (2002, p. 2010), the amount of dependence created among the random outcomes when sampling with replacement is small when the sample size is small relative to the population size. This is why Casella and Berger, and many others (for example, in my own books) use the sampling model that generates independent outcomes.

As is well known from the sampling literature, if one computes standard errors acting as if the "with replacement" scheme is appropriate, but sampling is actually done without replacement, a finite-sample adjustment should be made to the standard errors. For estimating the mean from a population of size $M$ using a simple random sample of size $N$, the sampling variance of the sample average is

$$Var(\bar{Y}) = \frac{\sigma^2}{N}\left(1 - \frac{N}{M}\right) \tag{1}$$

---

[4] As noted by Casella and Berger (2002, page 209), the view of random sampling that treats the outcomes as iid random variables is also relevant when sampling from an infinite population. The notion of an "infinite" population is typically an abstraction but, as pointed out by Casella and Berger, it is often a useful abstraction that is harmless with large populations and relatively small samples.

8

CONFIDENTIAL – ATTORNEYS EYES ONLY

where $\sigma^2$ is the population variance. If sampling is with replacement the term $\left(1 - \frac{N}{M}\right)$ is dropped. The standard error is obtained by plugging in the sample variance and taking the square root. Thus, the usual standard error for the iid case is multiplied by $\sqrt{\left(1 - \frac{N}{M}\right)}$, which is always less than one but close to one when the sample size is small relative to the population. The same correction factor works for regression analysis [for example, Thompson (2012, Chapter 8)].

    For the iPod transactions data, the previous summary demonstrates that, if we take the population to be the transactions data, and consider uncertainty only due to sampling, then the standard errors are correctly computed by the usual formula, possibly with a finite-population correction if *N/M* is large.

### 3.3. Combining Sampling Theory and the Potential Outcomes Approach

    The formulas in equation (1) above, and from the potential outcomes approach [Wooldridge (declaration 1, equation (4))] can be combined to produce a valid variance formula that can be used for computing a standard error with random samples from the population or using the entire population. In the simplest setting, there is a control group and a treatment group, indicated by a binary variable, $X_i$. Equation (1) gives the correct formulas for sampling with replacement from each of the two groups, where we now have two population variances, two sample sizes, and two population sizes. Equation (4) from Wooldridge (declaration 1) gives the correct variance due to the randomization of treatment assignment (but where now I have used *M* to denote the population size). Adding the expressions together and using simple algebra gives the variance of the difference-in means estimator conditional on the sample sizes:

$$Var(\hat{\tau} | N_0, N_1) = \frac{\sigma_1^2}{N_1} + \frac{\sigma_0^2}{N_0} - \frac{\sigma_{0,1}^2}{M}, \qquad (2)$$

CONFIDENTIAL – ATTORNEYS EYES ONLY

where $N_0$ is the number of control units, $N_1$ is the number of treated units, $\sigma_1^2$ is the population variance of the potential outcomes in the treated state, $\sigma_0^2$ is the population variance of the potential outcomes in the control state, and $\sigma_{0,1}^2$ is the population variance of the treatment effects. The first two terms can be estimated using the usual unbiased estimators, the sample variances from each group. The third term cannot generally be estimated, and so the usual formula that excludes this term is conservative.

Equation (2) is a very useful unifying formula because it is valid whether we use a random sample or the entire population. Because the population size, $M$, is fixed, (2) shows that the sampling variance falls as the two sample sizes increase, and it is smallest when we use the entire population of control and treated units. Importantly, equation (2) does not entail clustering. Therefore, if clustering produces systematically biased estimators of (2), or at least the first two terms in (2), then it is not harmless. The conservative nature of the usual standard errors due to not being able to estimate the last term in (2) is not something we can fix. But we can choose not to cluster if it gives systematically biased results.

The simple difference in means estimator can always be obtained from a simple regression of the outcome, $Y$, and the binary indicator, $X$. When other regressors are added, as in Professor Noll's regressions, a similar conclusion holds: the usual heteroskedasticity-robust variance matrix is conservative. This is shown in current research with Alberto Abadie (Harvard), Susan Athey (Stanford), and Guido Imbens (Stanford). We combine the insights from the sampling literature and the potential outcomes literature to generalize the formula in (2) to the regression case. In other words, we combine two literatures with long histories in statistics.[5] Regrettably, the research is still in its preliminary stages and a working paper that can be

---

[5] I have not mentioned to any of my co-authors that I am involved in the current case.

CONFIDENTIAL – ATTORNEYS EYES ONLY

distributed is at least a few weeks away. In September 2013, Imbens presented the findings at the labor/public finance workshop at MIT and, more recently, at a conference in Amsterdam[6].

3.4. Cluster Sampling

In my first declaration and in Wooldridge (2010) I described the nature of cluster sampling. We begin with a population of units that are, ex ante (before the fact), arranged into groups or clusters. As described in Thompson (2012, Chapter 12), these groups are called "primary units" and the units within a group are called "secondary units." Thompson describes a cluster sample as one where a simple random sample of primary units is taken from the population of primary units.

A typical example is that students are grouped by school. Then, clusters are randomly drawn from the population. This means that the students in a given school are sampled together and any within sample correlation should be accounted for in inference.

As I emphasized in my first declaration, drawing a random sample of students from, say, the entire state, and obtaining some students who attend the same school, does not constitute a cluster sample. The outcomes are properly treated as independent (or almost independent if sampling is with replacement). The difference between random samples, which do not require cluster-robust inference, and cluster samples, which do, is very clear in the structure of Thompson's book. Thompson never suggests that random samples need to be clustered. In order to obtain a cluster sample, one must specify the primary units ex ante and then sample those primary units.

In my first declaration I referred to the idea of "ex post clustering" as applied to random samples. This phrase is simply used to describe a kind of clustering that one sometimes sees in

---

[6] http://economics.mit.edu/files/8967; http://www.tinbergen.nl/seminar/title-announced-74/

CONFIDENTIAL – ATTORNEYS EYES ONLY

applied research. The idea is that a random sample is drawn from a large population but then the observations are grouped on the basis of an observed variable – such as school attended or occupation. While this kind of sample is the same in *appearance* to a true cluster sample, cluster-robust inference is not needed because the data have been obtained via random sample. In fact, as I will demonstrate both formally and via simulations in the next section, the clustering a random sample can produce overly conservative standard errors.

If random sampling required the calculation of cluster-robust standard errors then numerous papers in empirical economics would have to be redone. As far as I know, no economist has made such an assertion. Many influential studies, for example Angrist and Krueger (1991), Angrist and Evans (1998), and Angrist, Chernozhukov, and Fernandez-Val (2006) use large random samples from the United States Census[7]. Consider the Angrist and Evans (1998) paper, which attempts to estimate the causal effect of having a third child on married women's labor supply. The authors control for a handful of factors – including schooling, age, and other sources of income – and include dummy variables to represent state of residence.

In the 1990 census data, Angrist and Evans have more than 400,000 observations. This means that, on average, each county in the United States is represented by more than 100 women. It is almost certain the average residuals in a labor supply equation would differ systematically by county – just as average residuals in the Noll regressions are found by Murphy and Topel to differ by family and quarter. And yet we know that no clustering is needed to obtain the appropriate standard errors. The usual heteroskedasticity-robust standard errors are

---

[7] Both papers use the so-called 5 percent public use micro samples, or PUMS.

CONFIDENTIAL – ATTORNEYS EYES ONLY

appropriate. Moreover, those are the standard errors reported by Angrist and Evans, and the authors never even mention the clustering issue[8].

Logically, we know there cannot be a clustering issue in the Angrist and Evans analysis for the reasons I laid out in my first declaration and which I will review here. For one, how would we know at which level to cluster? Should we cluster by zip code? What about by county? What if do not observe zip code, are we somehow making a mistake by not clustering the standard errors? The answer is no. We can only determine a proper level of clustering when we know the data were obtained via a cluster sample and we are provided with the identifier determining the primary sampling units (PSUs). For example, if we obtained a cluster sample with zip codes as the PSUs then we would cluster by zip code. But we would not cluster by, say, county or state. Angrist and Evans do not cluster at any level, which is the appropriate approach. As far as I know, no one has challenged the Angrist papers listed above on the grounds that the authors did not "cluster the standard errors."

Professor Murphy's own research has used large random samples where concern about omitted factors causing cluster correlation is never raised – indeed, the idea of clustering standard errors is not mentioned. For example, Juhn, Murphy, and Pierce (1993) use 27 years of the Current Population Survey to study wage inequality. The CPS represents all of the states in the U.S. It seems pretty clear that unobserved factors affecting wage can vary by state and year. Yet there is no discussion of how omitted factors that vary by state and time cause the underlying errors in their models to be correlated. In Table 1 of their paper, Juhn, Murphy, and Pierce report several measures of wage inequality with associated standard errors. With about 50,000 observations, some of the resulting $t$ statistics are well above 300, but no caution is given that the

---

[8] Angrist has used clustering in several of his other papers, but those are papers where the data sets are true cluster samples, such as schools containing students.

CONFIDENTIAL – ATTORNEYS EYES ONLY

standard errors might be "too small" because they do not account for clustering. Yet in critiquing the Noll regressions, Murphy claims that omitting factors causes cluster correlation among the "errors," and we are supposed to worry that Noll's $t$ statistics are unbelievably large. Yet Noll has more than 600 times the observations in the direct sales regression and reports a $t$ statistic on the key indicator variable of about 448, which is not much bigger than some of the Juhn, Murphy, and Pierce $t$ statistics. If Professor Noll's $t$ statistics are unbelievably large then so are those reported in Juhn, Murphy, and Pierce.

I have discussed the inappropriateness of clustering a random sample at some length here – just as I did in my initial declaration – because Professor Murphy (deposition, 1/8/14) seems to think that clustering after random sampling is sometimes warranted. When asked about clustering if a 10% random sample were taken from the Noll data, Professor Murphy replies, "I mean, it is about whether – you have a model, and there are error terms in that model, and it's about whether those error terms in that model are correlated, whether you have a population, whether you have a sample" (page 322). But as the previous discussion makes clear, the notion of a data generating process – DGP – is irrelevant for determining when a sample should be clustered. If a random sample has been obtained from a given population then no clustering be necessary.

The only caveat to the previous statement concerns new variables that are created at a cluster level after the random sample has been collected. In my deposition (page 27) I gave the example of collecting a random sample of students, grouping them by school or neighborhood, and then using students in the same school or neighborhood to create explanatory variables for a model. For example, if I create, for each student, the average income of all other children in the

14

CONFIDENTIAL – ATTORNEYS EYES ONLY

same school, and then I use this peer measure in a regression model, I generally create a cluster sampling problem.

Using the so-called fixed effects or within estimator (Wooldridge, 2010, Chapter 10) deviates individual-level variables from within-group means. If one starts with a random sample, groups the observations by cluster, and then uses the within transformation, then cluster correlation can become an issue – at least when the cluster sizes are small. The results of Stock and Watson (2008) apply in this case. Stock and Watson show that, with small cluster sizes, the usual heteroskedasticity-robust standard errors are invalid, whereas the cluster-robust standard errors are consistent as the number of clusters grows. Stock and Watson also show that, as the cluster sizes grow, the usual heteroskedasticity-robust standard errors for the fixed effects estimator are consistent, in which case clustering becomes less important.

Importantly, Professor Noll does not use data on other transactions to compute explanatory variables in his hedonic regressions. He uses only data collected for each transaction. In fact, it is hard to imagine why one would include "peer effects"-type variables in a hedonic regression using transactions data, and that is why in my deposition I struggled to come up with a scenario where one would do that with transactions data.

As I mentioned in my deposition (1/6/14), the idea of a DGP cannot replace the notion of sampling when it comes to evaluating the proper way of computing standard errors. In fact, it confuses the issue when it comes to random sampling. I was asked about whether omitting a relevant variable from the regression would lead to the need to cluster. I must emphasize that it does not. That Murphy and Topel imply this in their joint report  shows that it is a common misperception. In Wooldridge (2010, Chapter 4), I discuss how the ordinary least squares estimator generally consistently estimates the parameters of the best linear approximation to the

15

CONFIDENTIAL – ATTORNEYS EYES ONLY

dependent variable, *y*. This means that I might have omitted variables that affect *y* because I do not observe them. Or, I might have missed some functional form, such as squares or interactions. None of that matters for inference: once I specify the set of explanatory variables, if I have a random sample from the population the usual heteroskedasticity-robust standard errors are the correct ones. If this were not true then one could essentially never perform inference under random sampling because there are always omitted variables.

## 4. Clustering Standard Errors after Random Sampling: Theory and Simulation Evidence

The previous section established that, if we randomly sample from a population, one does not need to cluster the standard errors. We have established that clustering with random sampling is not needed. But is it harmless? Professor Murphy seems to think so. On page 315 of his deposition he cites Hansen (2007), Angrist and Pischke (2009), and Cameron and Trivedi (2005) for support for his assertion that clustering a random sample is harmless because the model with zero correlation in the errors is a special case of the model with cluster correlation. This thinking represents a misunderstanding about random sampling versus cluster sampling. The authors cited by Murphy all are analyzing cluster sampling[9].

In my first declaration and deposition I provided several examples to illustrate why clustering after random sampling would generally produce an illusion of a clustering problem and likely overstate the sampling error of the estimates. Because those examples were not seriously questioned in my deposition I will not review them here. During my deposition I mentioned that, after I had submitted my declaration, I worked out a simple formula that

---

[9] Professor Murphy is perhaps thinking of the following situation. One begins by specifying primary sampling units that will be used in the cluster sampling, and then draws a random sample of those PSUs. Within a PSU one can specify a model of the correlation among the outcomes, which is often done by modeling an error correlation. In this context, the model that allows correlation within the primary sampling units contains the model without correlation as a special case. But that is contingent on specifying the PSUs and then sampling the PSUs. It is not true that random sampling of individual units is somehow a "special case" of cluster sampling – except in the trivial case where they are the same. Once the PSUs have been defined to include more than one unit from the population, the sampling schemes are different, and neither is a "special case" of the other (except in the trivial case where each PSU contains exactly one unit).

CONFIDENTIAL – ATTORNEYS EYES ONLY

demonstrates the upward biased of clustering a random sample. I also conducted some simulations that verify the theoretical calculation. I present some results below.

4.1. A Simple Calculation

Although the analysis can be made in the context of general regression, it is helpful to focus on the problem of estimating the mean from a population – call it $\mu$. Assume that from the population we can collect a random sample. The variance calculation is slightly easier if we assume sampling with replacement. Given a sample of size $N$ on the outcome variable $Y$, the usual estimator of $\mu$ is the sample average, $\bar{Y}$. The well-known formula for the sampling variance of $\bar{Y}$ is

$$Var(\bar{Y}) = \frac{\sigma^2}{N}, \qquad\qquad (3)$$

where $\sigma^2$ is the population variance.

Now suppose instead of using the above equation to estimate the sampling variance, we do the following instead. We define $G$ exhaustive and mutually exclusive clusters on the basis of some information we collect in our random sample. For example, it could be occupation, county, or product class. For a random draw $i$ define the error term $U_i = Y_i - \mu$, which is just the difference between $Y_i$ and the population mean. Let $\hat{\omega}^2$ denote the clustered variance estimator. Then we compute the clustered variance. Appendix A shows that the following expression holds in large samples (and is almost exact in small samples):

$$E(\hat{\omega}^2) = \left(\frac{G}{G-1}\right)\frac{\sigma^2}{N} + \left(\frac{G}{G-1}\right)\left(\frac{N-1}{N}\right)\gamma^2 \qquad\qquad (4)$$

where

$$\gamma^2 = \sum_{g=1}^{G} \rho_g^2\, \tau_g^2, \qquad\qquad (5)$$

$\rho_g$ is the share of the population in group $g$, and $\tau_g$ is the average of the error in group $g$:

CONFIDENTIAL – ATTORNEYS EYES ONLY

$$\tau_g = E(U|C = g) \tag{6}$$

where $C$ denotes the cluster identifier. The expression for $E(\hat{\omega}^2)$ is very informative. Assume that the number of clusters and the sample size are both large enough so that the ratios involving $G$ and $N$ are close to one. Then the expression in (4) becomes

$$\frac{\sigma^2}{N} + \gamma^2, \tag{7}$$

which is seen to be the correct variance formula plus an additional term, $\gamma^2$. The additional term is always nonnegative, and it is strictly positive unless the average value of $Y$ is the same in all segments of the population defined by the clusters. The more variation there is in $E(U|C = g)$, the higher the upward bias in the clustered variance. The only case where there is no upward bias in the clustered variance is when there is no heterogeneity in the average value of $Y$, which is unlikely given how one might typically define clusters.

   The simple formula in (7) confirms the intuition in the examples in my first declaration. If one starts with a random sample, computes residuals, and then averages those residuals with arbitrarily created clusters, the residuals will have means that are systematically different from zero. Therefore, clustering artificially inflates the standard errors, perhaps by a substantial amount.

   Expression (7) allows us to predict what will happen to the clustered standard errors as the sample size, $N$, increases with the number of clusters, $G$, fixed. The correct variance formula in equation (3) shrinks to zero as $N$ gets large, and this can produce a very small standard error [which is essentially the square root of (3)] in large sample sizes. By contrast, the term $\gamma^2$ in (7) does not depend on the sample size. It is fixed once the cluster shares and cluster means are determined by the arbitrary designation of clusters. So, what we expect is that even for moderate $N$, the first term in (7), which is the correct one, will get swamped by the second term. With large

CONFIDENTIAL – ATTORNEYS EYES ONLY

$N$ the second term will dominate, and the clustered standard errors will, on average, remain constant as we get more and more data. By contrast, the correct variance formula shrinks to zero rapidly as the sample size grows.

The important implication is that clustering after collecting a random sample is far from harmless. The upward bias can be severe, and the situation gets worse as the sample size grows: the correct formula shrinks to zero, as makes sense when more information is added, while the incorrect formula converges to the term $\gamma^2$ – a term that exists only due to the incorrect decision to cluster.

A simple simulation shows that the formula in equation (7) works well even for a small number of clusters. I use $G = 5$ partitions in the population, each having share 1/5. I generate $Y$ to have a mean $\mu = 2$ in the entire population. Within the five groups, the error (deviation of $Y$ from the overall mean) was generated to have a Normal distribution with common variance equal to 25, with the means equal to $-2, -1, 0, 1$, and 2. It then can be shown that the population variance of $Y$ is 27. The bias term in equation (7) is $\gamma^2 = .4$. Plugging into the exact formula (4) gives an average cluster variance equal to

$$1.25\left[\frac{27}{N} + .4\left(\frac{N-1}{N}\right)\right]. \tag{8}$$

With even moderate $N$ the expression in (8) is close to .5, and so the clustered standard error should roughly be $\sqrt{.5} = .707$, on average, with large samples. By contrast, the correct sampling error for the sample average is $\sqrt{27/N}$, which is only about .164 when $N = 1,000$. With $N = 10,000$ the correct standard error is about .052, which is many time smaller than $.707$. As the sample size $N$ grows the disparity between the incorrect clustered standard error and the correct standard error increases rapidly.

CONFIDENTIAL – ATTORNEYS EYES ONLY

The Appendix contains the Stata code used in the simulations. Exhibit 1 gives the simulation results using 1,000 different replications (random samples). The rows represent different numbers of total observations, so the average cluster sizes range from a minimum of 10 to a maximum of 5,000. The large cluster sizes are relevant to the issue of clustering the iPod transactions data because the average cluster size used in the Murphy and Topel is about 5,000 for the resell regressions and about 65,000 for the direct sales regressions.

The first column in the table shows the average across all 1,000 simulations of the sample average, demonstrating that the estimator is unbiased (because all values are very close to two). The second column is the sample standard deviation of $\overline{Y}$ across all 1,000 samples. It is this quantity that we are supposed to be estimating using our standard errors[10]. The third column is the average standard error computed using the usual (correct) formula in (3), as computed by Stata. The fourth column is the average of the clustered standard errors, as computed by Stata.

The table illustrates several important points. First, the usual standard errors work well even when the total number of observations is $N = 50$ (cluster size = 10). Once we reach $N = 500$ the clustered standard errors are much larger on average, and the average matches up well with that predicted by the theory. By the time $N = 5,000$ – so on average 1,000 observations per cluster – the mean clustered standard error is about .710, very close to the predicted value .707. The ratio of the average cluster standard error to the usual standard error is about .710/.033 = 21.5. In other words, the clustered standard error can be expected to be about 21.5 times too large. Clearly, as predicted by the theory, clustering is very harmful in that it gives standard errors that are much too conservative.

---

[10] We can know this quantity because we are simulating the data. With a given data set, we can only compute the two standard errors.

CONFIDENTIAL – ATTORNEYS EYES ONLY

Simulations are necessarily based on specific designs, but the simple design described above contains the most important features: there is heterogeneity in the distribution of errors across clusters and the sizes of the clusters range from small to large. Moreover, this heterogeneity in the distribution of the errors across clusters is precisely what Professors Murphy and Topel point to as the justification for clustering. And yet the theory and simulation show that the heterogeneity does not make clustering valid. Rather, as Exhibit 1 makes clear, heterogeneity in the population makes clustering in random samples quite harmful for measuring the precision of estimates.

### 4.2. Simulation Findings for a Fixed Population and More Clusters

We can learn more about the problems of clustering when using a random sample by creating a fixed population and then drawing random samples, without replacement, from the population. This setting is especially relevant for the iPod transactions data, as the entire population of transactions data is available, and, if we chose to, we could draw random samples without replacement.

The simulations reported below use a simple regression model relating an outcome, $Y$, to a binary indicator (representing "treatment"), $X$. As in Exhibit 1, the errors are generated to have a cluster structure in the population. In particular, there are $G = 50$ clusters, a value I chose because it is commonly used in simulations [for example, Hansen (2007)]. Plus, 50 clusters, or something close to it [such as the 42 cited by Angrist and Pischke (2009)], is often cited as a sufficient number so that cluster-robust standard errors can be justified as being sufficiently accurate.

The slope coefficient is also allowed to change across cluster, but its value in the population is roughly five. The cluster effects were generated to be binary outcomes multiplied

CONFIDENTIAL – ATTORNEYS EYES ONLY

by a constant so that the means change across cluster. The cluster sizes differ but each was generated so that, on average, each represents 1/50 of the population. The Stata program used to generate the population data is given in Appendix B-2.

I start by using the population, which consists of 100,000 units (which could represent transactions), to run the regression of $Y$ on $X$ and to compute various standard errors. The key statistics are given in the first column of Exhibit 2.

The value of the slope coefficient in the population is about 4.99. The heteroskedasticity-robust standard error is about .016, which gives a $t$ statistic above 300. When we cluster the standard error using the 50 clusters we obtain about .206, which is more than 12 times larger than the usual standard error. When the 50 clusters are combined into 10 – grouping the first five into a new cluster, the second five into a new cluster, and so on – the cluster-robust standard error is about .477, which is almost 30 times higher than the usual standard error. Therefore, even before we turn to the simulations, we see that for this population, the level of clustering matters for computing standard errors. Certainly no justification can be given for clustering at the higher level because the cluster effects in the population were created at the lower level. And yet, if one insisted on being conservative, one would use the (useless) standard error clustered at the higher level. Incidentally, this finding is perfectly consistent with the exercise in the recent Noll supplemental rebuttal report. When Professor Noll clusters at the family/week level, the key coefficient is statistically significant, although, predictably, its standard error is higher than when no clustering is used. But the family/week clustered standard error is below the family/quarter clustered standard error reported by Professors Murphy and Topel.

Column (2) in Exhibit 2 shows simulation findings when we draw 10% random samples – so each uses a sample size of 10,000 – with replacement, from the given population. The

CONFIDENTIAL – ATTORNEYS EYES ONLY

sampling is done using the "sample" command in Stata. The estimates of the slope coefficients and the associated standard errors are obtained using 1,000 simulated data sets. The Stata program used in the simulations is given in Appendix B-3.

The results from the simulation are striking. Across the 1,000 random samples, the average slope coefficient is equal to the population value to two decimal places, reflecting, as we expect, the unbiasedness of the OLS estimator. The sampling standard deviation of the slope coefficient is about .0486. This row is in bold in the exhibit to emphasize that this is our target measure of precision when computing standard errors. The third row shows that the heteroskedasticity-robust standard error – the one used by Professor Noll in his regressions – is, on average, about .0498, showing that it performs very well. On average, it is slightly conservative, probably due to the fact that we are sampling with replacement[11].

The average across the random samples of the clustered standard errors using the 50 clusters is very similar to what we found in the population: .211 in the sampling experiment and .206 in the population. The closeness of these numbers demonstrates the same phenomenon found in the theoretical calculations and in the earlier simulations: the clustered standard errors depend only on the number of clusters and not the sample size. Even though we are using only a 10% random sample, the clustered standard error is the same as when we use the entire population. And yet we know that, because we have generated random samples, the correct standard error is the un-clustered one, which is less than one-fifth of the cluster-robust standard error.

---

[11] As a simple rule-of-them, because we are using a 10 percent random sample, we can multiply the population heteroskedasticity-robust standard error, .0157, by $\sqrt{10}$ to predict what we should get in the sample. That gives us .0496, which is very close to the simulation average, .0498.

CONFIDENTIAL – ATTORNEYS EYES ONLY

The findings for clustering using 10 clusters also lines up with the theory. The average across the 1,000 simulations, .479, is very close to the population value, .477. And we know this is almost 10 times too large.

These simulation results cast serious doubt on the practice of clustering when the entire population is available. When we take a 10% random sample we know that the proper standard error is, roughly, .049. Across the 1,000 simulations the largest of the standard errors is about .051. In other words, the largest standard error we obtain using 1,000 different 10% random samples is never close to the clustered standard error using the entire population, .206. Thus, if we insist on clustering the population standard errors, we have the perverse conclusion that virtually any 10% random sample produces a much more precise estimate than using the entire population. By contrast, if we use the usual standard error then this paradox disappears: the standard error from the population, .016, is much smaller than any of the 1,000 standard errors obtained from a 10% sample. (The smallest is about .049.)

There is another important aspect of these simulations worth emphasizing. With each random sample we can compute the average within-cluster correlation of the OLS residuals. As seen in the last row of Exhibit 2, the average across the 1,000 random samples is about .757, which is rather large and suggests substantial heterogeneity. And yet we know from basic sampling theory and from the simulations in Exhibit 2 that the proper standard errors are obtained by ignoring the cluster correlation. In a nutshell, this simple experiment demonstrates that the Murphy and Topel analysis of residuals within their specific clusters is useless for determining whether clustering is needed. In this simulation we know that clustering is actually quite harmful in that it produces very conservative standard errors.

CONFIDENTIAL – ATTORNEYS EYES ONLY

In his supplemental declaration dated January 13, 2014, Professor Noll mimics the calculations on OLS residuals that Professors Murphy and Topel use to supposedly justify clustering. Professors Murphy and Topel cluster at the family/quarter level.  Professor Noll shows what happens if one clusters at either the family/month or the family/week level. Following Murphy and Topel, Noll randomly separates the OLS residuals into two subgroups of equal size within a cluster. The graphs of the average residuals of the two groups across the clusters are given in Exhibits 1 and 2 of supplemental Noll report. The average residuals across the subgroups are well approximated by a straight line with slope equal to one. The point of Professor Noll's exercise is to show that this happens in the transactions data for many different clustering schemes.

The simulations I just presented show that the outcome of the Murphy and Topel exercise is entirely predictable, and tells us nothing about whether clustering is needed. To see why, note that in the population I generated the average residuals across the 50 clusters range from $-3.68$ to 3.65. (The average across the entire population is zero.) In a 10% sample there are, on average, 200 residuals per cluster. Thus, if within each cluster I randomly divide the residuals into two groups I have an average of 100 residuals with which to compute the subgroup averages. It is completely obvious that each of the two averages will be close to the overall average within the cluster, subject to a relatively small amount of sampling error.  Thus, the subgroup averages will be close to each other. Naturally, when I plot the two within-cluster averages against each other across the 50 clusters they will be close to falling on a line that has a slope equal to one. And this tells us nothing about whether clustering is needed because the sample was drawn randomly from the population, and, as shown in Exhibit 2, clustering the standard errors is in fact wrong.

CONFIDENTIAL – ATTORNEYS EYES ONLY

Not only do Professors Murphy and Topel provide no useful evidence in favor of clustering, their exercise actually supports the simulation evidence above that clustering badly overestimates the true precision in the estimates. Ironically, by extension, the Murphy-Topel analysis actually explains why their cluster-robust standard errors in the iPod transactions are much too large.

I made these same points in my deposition (pages 31and 33) by using examples having to do with hourly wages and clustering by occupation or education levels, and transactions prices with clustering done by iPod class. Given that the theoretical derivation in Section 4 and the simulation evidence presented here completely support my earlier intuition, I am more strongly convinced than ever that the "tests" used by Professors Murphy and Topel show nothing of value when it comes to deciding whether standard errors need to be clustered.

## 5. Conclusions from the Previous Analyses

Several points can be concluded from the previous analyses, which include both theoretical calculations and simulation evidence:

(i) Clustering can be very harmful in the context of random sampling, producing standard errors with severe upward bias. Moreover, clustering in the population can lead to the perverse conclusion that much more precision can be gained by using even a small random sample. By contrast, the potential outcomes approach, when used along with random sampling, produces a coherent, logically consistent framework in which to compute standard errors: sampling variances decrease as we observe larger and larger samples while allowing for sources of estimation uncertainty when using the entire population.

(ii) The "tests" used by Professors Murphy and Topel are meaningless for determining whether clustering is needed. With unobserved heterogeneity in the population, the within-

CONFIDENTIAL – ATTORNEYS EYES ONLY

cluster residuals from an OLS regression can have means that differ systematically across many different ways of defining clusters, even under random sampling. But under random sampling we know that the correct way to compute standard errors does not involve clustering at any level.

## 6. Responses to Criticisms of the Wooldridge Report in the Apple Motion

The Apple Opposition Report dated January 13, 2014 includes several criticisms of my first declaration and answers in my deposition, and recommends that the declaration be stricken. Here I respond to each of the criticisms. Unless stated otherwise, the page numbers refer to those in the Apple report.

(i) Criticism: In light of my previous work on cluster sampling, my first declaration and deposition were custom-manufactured to suit the plaintiff's needs (pages 14, 15).

Response: As I stated in my deposition, I am on published record criticizing clustering in a context closely related to the random sampling context: stratified sampling with large sample sizes within strata. With stratified sampling, one first partitions the population, just as with cluster sampling. But one does not sample the clusters. Instead, one obtains random samples within each stratum. I argue in Wooldridge (2003, 2010, Section 20.3.4) that treating stratified samples as cluster samples is likely to be much too conservative. In particular, I compare standard approaches based on group averages, where valid inference is available via the usual standard errors taught in basic statistics courses, to the Donald and Lang (2007) approach, which effectively treats stratified samples as cluster samples. When the within-strata sample sizes reflect the overall population shares, stratified sampling is, for practical purposes, the same as random sampling. I should have been clearer and more forceful in my deposition on this point (W, pages 92-93). I focused on stratified sampling because it is easy to see how a researcher can confuse a stratified sample with a cluster sample. What I did not know when I revised my MIT

CONFIDENTIAL – ATTORNEYS EYES ONLY

Press book is that researchers might actually confuse a random sample with a cluster sample, which is only possible by using "ex post" clustering.

(ii) Criticism: I provide no authority that states clustering in random samples is uncessary and perhaps even harmful.

Response: This point is partly address in (i). My American Economic Review paper and textbook do provide such an authority. What is missing is evidence of how harmful it can be, and that is why I include in this declaration a simple calculation and some simulation evidence. Finding other authorities is understandably difficult because it requires someone to anticipate an issue that would not occur to researchers who understand sampling. The book on sampling by Thompson (2012) does not address the issue because it is well known how to compute standard errors with random samples, and it does not involve clustering. After treating random samples, Thompson (2012) clearly describes the problem of cluster sampling in a later chapter. He does not explicitly warn against clustering a random sample, but that might be simply because he thinks he does not have to. Further, work on clustering that is highly cited in econometrics, Angrist and Pischke (2009), Cameron and Trivedi (2005), Cameron, Gelbach, and Miller (2008) and my own work begin with the assumption that we have a cluster sample. As far as I can tell, in currently published work I am the only one to warn against clustering when observations have been independently sampled.

I can give an analogy to an issue that arose in my deposition. I was asked at deposition about whether I could point to an authority for my claim that the amount of variation in the variables has no bearing on the clustering issue. I noted that I could not, except to point out that I had never seen the issue arise in published empirical work. (I was too cavalier in claiming that I could point to "thousands, if not tens of thousands" or papers, but I do not think "thousands" is

28

CONFIDENTIAL – ATTORNEYS EYES ONLY

an exaggeration). Above, I cited several important papers by Josh Angrist and his co-authors that use large samples from the census, which are essentially random samples. Never does the clustering issue arise, even though there are many ways that the data could be clustered (by state, by year, by state-year, by education levels, and so on). The authors do not explicitly make a statement such as, "We do not compute clustered standard errors because we have a random sample from the population." And I am not sure why we would expect them to. Incidentally, one of the key analyses in the Angrist and Evans (1998) uses labor force participation variable, which can take only two values, zero and one. So there is little variation in this dependent variable. And yet Angrist and Evans never mention that this might have some bearing on the decision to cluster. Why would such a notion ever occur to them when there is no theoretical literature saying that it might be a problem?

(iii) Criticism: In some previous work, including Wooldridge (2010, Chapter 20), I have clustered when using the entire population, which appears to contradicts what I stated in my first declaration, "Clustering is inappropriate where, as here, the regressions use the entire population of transactions" (Wooldridge Declaration, page 13).

Response: For clarity, I should have emphasized in this summary comment that the comment applied to the case at hand: Professor Noll's regressions using the Apple transactions data. As I stated twice in my deposition (pages 27, 54), there are exceptions where clustering might be needed when observing the entire population. I did not include that caveat in my declaration because the exceptions are irrelevant for Professor Noll's analysis. As I described in Section 3.4 above, a case for clustering using the entire population can be made if one creates cluster-level variables after defining the clusters. This situation does not apply to Professor Noll's regressions but it is relevant for my earlier examples on clustering.

29

It is useful to think of two cases where I have, in my past work, applied clustering to (arguably) the entire population. The first is with cross sectional data, as in the example in Table 20.1 of Wooldridge (2010, p. 869). In this example, the number of school districts is large (537) with relatively few schools per district, about 3.4 on average. The reason for clustering at the district level is the reason I gave in Section 3.4: both the random and fixed effects estimators employ within district averages of the variables, and including these generally causes a clustering problem. In fact, this situation is covered by the results of Stock and Watson (2008), who study the heteroskedasticity-robust standard errors in the context of panel data when the errors are uncorrelated; sufficient is independent errors. Stock and Watson show that with small cluster sizes, the heteroskedasticity-robust standard errors generally have a downward bias.

An important point is that if I had randomly sampled schools from the state and used random or fixed effects estimation at the district-level then I *still* would cluster the standard errors – for exactly the reasons uncovered by Stock and Watson. In other words, the fact that I effectively included district-level averages in the school-level equation means I should cluster, regardless of whether I am using a sample or a population. Regrettably, in my book I did not discuss these nuances in describing the need for clustering, and that needs to be done in the next revision. But clustering is needed in this case. This is not the case in Professor Noll's regressions, however, as he does not do a fixed effects analysis with small group sizes.

The second situation where I have arguably clustered using the entire population is with panel data, where the units within a cluster are time periods. In my deposition (pages 148-154), I was asked about my joint paper Solon, Haider, and Wooldridge (2013). This paper is about weighting and not clustering, and in the paper we use a cluster-sample structure to illustrate how commonly used weights may be incorrect. We were not careful in stating that the argument

CONFIDENTIAL – ATTORNEYS EYES ONLY

applied to cluster samples. Plus, in the paper we do replicate results using state-level panel data, where one could argue that the entire population is observed, and we compute cluster-robust standard errors. I did not explain well in my deposition the reason for clustering, but it is the same as the first case stated above: fixed effects estimation procedures use group level averages and this can cause cluster correlation, particularly when unobservables are correlated across time. Again, if we listed all of the states by all of the time periods, and selected a random sample, we would generally have to cluster if we use fixed effects estimation – which is done primarily to control for omitted variables. As in the previous case, the answers for obtaining a random sample and using the entire population are the same. This is unlike the iPod transactions data, where no grouping into clusters with small sizes is done.

(iv) Criticism: My claims about the relative sizes of the number of clusters and cluster sizes in order to justify cluster-robust standard errors are contradicted by the literature.

Response: The theoretical literature has considered two cases. The first is the standard case, where we obtain a random sample of clusters from a population of clusters. The usual large-sample theory, described in various places, such as Angrist and Pishke (2009) and Wooldridge (2003; 2010, Chapter 20), requires the number of clusters to increase with fixed cluster sizes. As a general rule, one expects better results with more clusters. Nevertheless, it is true that the effect of increasing the size of the clusters is generally ambiguous when applied to actual cluster samples. Hansen (2007) shows cases with panel data – as opposed to a traditional cluster sample – where the standard errors actually slightly improve with the size of the cluster. This is possible because adding more time periods to a cluster provides new information when the time-series correlation dies out as the time distance increases. I should have been clear in my declaration and deposition that I was thinking about pure cluster samples, where the correlation

CONFIDENTIAL – ATTORNEYS EYES ONLY

within clusters is constant. Cameron, Gelbach, and Miller (2008) show simulations, using cluster samples with a fixed cluster size of 30. They simulate clustered data with values ranging from $G$ = 3 to $G$ = 30, and the performance of the clustered standard errors deteriorates uniformly as $G$ shrinks from 30 to 3.

An important point about the biases in clustered standard errors that have been reported in the literature is that all of these studies generate the data as cluster samples. The simulations in Sections 3 and 4 show that when applied to random samples, the bias is positive and can be large. Evidently, if there is any downward bias due to using $G$ = 5 in Exhibit 1 then it is swamped by the upward bias predicted by equation (7).

## 7. Conclusions

(i) Clustering is not harmless when data have been obtained by random sampling. It is also not harmless in the potentials outcome approach when the entire population is observed.

(ii) The literatures on survey sampling and potential outcomes (randomization inference) harmonize nicely and create a logically coherent setting for computing standard errors when using the population or using a random sample from a population. The usual standard errors have the appealing property that, as the sample size grows to the population, the sampling variances decline uniformly, but they never equal zero even when the entire population is sampled. By contrast, as I showed using a simple calculation and simulations, clustering the standard errors in the population can lead to the illogical finding that the standard errors using the entire population are much larger than those from even a 10% random sample.

(iii) Professors Murphy and Topel justify clustering by appealing to the notion of a "data generating process," but they never specify a DGP so they cannot determine the proper level of clustering. Nor do Murphy and Topel show how their clustering procedure rationalizes the

32

CONFIDENTIAL – ATTORNEYS EYES ONLY

calculation of standard errors for the entire population and for random samples. In Exhibit 2 I showed that clustering using 10 clusters, when there is no justification for doing so, leads to much larger standard errors than using 50 clusters. This pattern precisely fits with what was found in actual transactions data in the supplemental rebuttal report by Professor Noll.

(iii) Professor Murphy and Topel's finding that OLS residuals are correlated within the clusters they choose can be entirely explained in the context of random sampling. I demonstrated using examples and simulations that one will *almost always* find such correlation even when the created clusters are heterogeneous and the data are from a random sample. Thus, their entire basis for clustering – that within each cluster, two different samples of residuals have very similar means – is easily explained and provides no basis for clustering. In fact, quite the opposite: the clustered standard errors are *worse* under random sampling as the population heterogeneity increases.

(iv) Given the three previous points, it is clear that Murphy and Topel's decision to cluster the standard errors using arbitrarily defined clusters – at the family/quarter level – cannot be justified.

I declare that the foregoing is true to the best of my knowledge and belief.

_____

Jeffrey M. Wooldridge

Executed at Mason, Michigan, January 31, 2014

33

CONFIDENTIAL – ATTORNEYS EYES ONLY

# References

Angrist, J.D.and A.B. Krueger (1991), "Does Compulsory School Attendance Affect Schooling and Earnings?" *Quarterly Journal of Economics* 106, 979-1014.

Angrist, J.D.and W.N. Evans (1998), "Children and Their Parents' Labor Supply: Evidence from Exogenous Variation in Family Size," *American Economic Review* 88, 450-477.

Angrist, J., V. Chernozhukov, and I. Fernandez-Val (2006), "Quantile Regression under Misspecification, with an Application to the U.S. Wage Structure," *Econometrica* 74, 539-563.

Angrist, J.D. and J.-S. Pischke (2009), *Mostly Harmless Econometrics*. Princeton, NJ : Princeton University Press.

Athey, S., and G.W. Imbens (2006), "Identification and Inference in Nonlinear Difference-In-Differences Models," *Econometrica* 74, 431-497.

Cameron, A.C. and P. K. Trivedi (2005), *Microeconometrics: Theory and Application*. Cambridge: Cambridge University Press.

Cameron, A.C., J.B. Gelbach, and D.L. Miller (2008), "Bootstrap-Based Improvements for Inference with Clustered Errors," *The Review of Economics and Statistics* 90, 414-427.

Casella, G. and R.L. Berger (2002), *Statistical Inference*, second edition. Pacific Grove, CA: Duxbury.

Davidson, R. and J.G. MacKinnon (2004), *Econometric Theory and Methods*. New York: Oxford University Press.

Donald, S.G. and K. Lang (2007), "Inference with Difference-in-Differences and Other Panel Data," *Review of Economics and Statistics* 89, 221-233.

Hansen, C.B. (2007), "Asymptotic Properties of a Robust Variance Matrix Estimator for Panel Data when T is Large," Journal of Econometrics 141, 597-620.

Imbens, G., (2004), "Nonparametric Estimation of Average Treatment Effects Under Exogeneity: A Review," *Review of Economics and Statistics* 86, 1-29.

Imbens, G.W. and J.M. Wooldridge (2009), "Recent Developments in the Econometrics of Program Evaluation." *Journal of Economic Literature* 47, 5–86.

Juhn, C., K.M. Murphy, and B. Pierce (1993), "Wage Inequality and the Rise in Returns to Skill," *Journal of Political Economy* 101, 410-442.

CONFIDENTIAL – ATTORNEYS EYES ONLY

Neyman, J. (1923), "On the Application of Probability Theory to Agricultural Experiments. Essay on Principles. Section 9," translated in Statistical Science (with discussion) 5, 465-480, 1990.

Solon, G., S.J. Haider, and J.M. Wooldridge (forthcoming), "What Are We Weighting For?" *Journal of Human Resources*.

Stock, J.H., and M.W. Watson (2008), " Heteroskedasticity-Robust Standard Errors for Fixed Effects Panel Data Regression," Econometrica 76 155-174.

Thompson, S.K. (2012), *Sampling*. Hoboken, NJ: Wiley.

Wooldridge, J.M. (2003), "Cluster-Sample Methods in Applied Econometrics," *American Economic Review* 93, 133-138.

Wooldridge, J.M. (2010), *Econometric Analysis of Cross Section and Panel Data*, second edition. Cambridge, MA:  MIT Press.

CONFIDENTIAL – ATTORNEYS EYES ONLY

# Exhibit 1

**Simulations Showing the Upward Bias in the Clustered Standard Errors**

| | (1) | (2) | (3) | (4) |
|---|---|---|---|---|
| Cluster Size | Average of $\overline{Y}$ | Average SD of $\overline{Y}$ | Average of the usual SE | Average of the cluster-robust SE |
| 10 | 1.99 | .737 | .733 | .952 |
| 100 | 2.01 | .236 | .233 | .732 |
| 1,000 | 2.00 | .073 | .073 | .710 |
| 5,000 | 2.00 | .032 | .033 | .709 |

CONFIDENTIAL – ATTORNEYS EYES ONLY

# Exhibit 2

**Population versus Simulated Sample Quantities for Simple Regression**

|  | **(1)** | **(2)** |
|---|---|---|
|  | **Population** | **Average of 1,000 Draws of 10% Simple Random Samples** |
| Slope Coefficient | 4.989 | 4.987 |
| **Sampling Standard Deviation of Slope Coefficient** | N/A | **.0486** |
| Heteroskedasticity -Robust Standard Error | .0157 | .0498 |
| Cluster-Robust Standard Error, 50 Clusters | .2058 | .2113 |
| Cluster-Robust Standard Error, 10 Clusters | .4765 | .4791 |
| Within-Cluster Correlation, 50 Clusters | .7557 | .7568 |

CONFIDENTIAL – ATTORNEYS EYES ONLY

**Appendix A**: **Clustering After Random Sampling**

We can derive a simple formula for the expected value of the clustered standard error when collecting random samples from a population. All of the important points are obtained by studying the problem of estimating a population average using the sample average. Also, the notation is somewhat easier if we use sampling with replacement, as is done in most theoretical calculations with random samples.

Let $\{Y_i : i = 1, 2, \ldots, N\}$ be independent and identically distributed drawn from the population with mean $\mu = E(Y)$. The population is partitioned into $G$ clusters. Along with $Y_i$ we draw the cluster assocated with observation $i$. Call this $C_i$, which is an integer between 1 and $G$. Then the cluster-robust estimator – as computed by Stata – is obtained by including the covariance of each observation within the same cluster. This expression can be written as

$$\hat{\omega}^2 = \left(\frac{G}{G-1}\right) N^{-2} \left(\sum_{i=1}^{N} \hat{U}_i^2 + \sum_{i=1}^{N}\sum_{h \neq i}^{N} 1[C_i = C_h]\hat{U}_i\hat{U}_h\right)$$

$$= \left(\frac{G}{G-1}\right) N^{-2} \left(\sum_{i=1}^{N} \hat{U}_i^2 + \sum_{i=1}^{N}\sum_{h \neq i}^{N}\sum_{g=1}^{G} S_{ig}S_{hg}\hat{U}_i\hat{U}_h\right),$$

where the residuals are just the deviations from the sample average. $\hat{U}_i = Y_i - \bar{Y}$. The variables $S_{ig}$ are binary variables indicating which cluster observation $i$ falls into. We are interested in cases with large samples, and so, because $\bar{Y}$ is consistent for $\mu = E(Y)$ and its variance shrinks to zero at rate $1/N$, we can replace replace $\hat{U}_i$ with the errors $U_i = Y_i - \mu$. Then the clustered variance estimator becomes

$$\left(\frac{G}{G-1}\right) N^{-2} \left(\sum_{i=1}^{N} U_i^2 + \sum_{i=1}^{N}\sum_{h \neq i}^{N}\sum_{g=1}^{G} S_{ig}S_{hg}U_iU_h\right)$$

We can compute the expected value of this expression:

38-1

CONFIDENTIAL - ATTORNEYS EYES ONLY

$$\left(\frac{G}{G-1}\right)\left(\frac{\sigma_U^2}{N} + N^{-2}\sum_{i=1}^{N}\sum_{h\neq i}^{N}\sum_{g=1}^{G}E(S_{ig}S_{hg}U_iU_h)\right),$$

where $\sigma_U^2 = Var(U) = Var(Y)$. Now by random sampling, $S_{ig}U_i$ is independent of $S_{hg}U_h$, and so

$$E(S_{ig}S_{hg}U_iU_h) = E(S_{ig}U_i)E(S_{hg}U_h) = [E(S_{ig}U_i)]^2$$

because of the identical distribution assumption. By a well-known result for expectations,

$$E(S_{ig}U_i) = P(S_{ig} = 1)E(U_i|S_{ig} = 1) = \rho_g E(U_i|S_{ig} = 1),$$

where $\rho_g = P(S_{ig} = 1) = P(C_i = g)$ is the population share in cluster $g$. It follows that

$$E(S_{ig}S_{hg}U_iU_h) = \rho_g^2\tau_g^2$$

where $\tau_g \equiv E(U_i|S_{ig} = 1)$. Plugging into the triple summation gives

$$N^{-2}\sum_{i=1}^{N}\sum_{h\neq i}^{N}\sum_{g=1}^{G}E(S_{ig}S_{hg}U_iU_h) = N^{-2}\sum_{i=1}^{N}\sum_{h\neq i}^{N}\sum_{g=1}^{G}\rho_g^2\tau_g^2$$

$$\equiv N^{-2}N(N-1)\gamma^2 = \left(\frac{N-1}{N}\right)\gamma^2.$$

where

$$\gamma^2 \equiv \sum_{g=1}^{G}\rho_g^2\tau_g^2 \geq 0.$$

So, ignoring the estimation error in $\bar{Y}$, which should be minor when $N$ is large, the expected value of the cluster-robust variance estimator is

$$\left(\frac{G}{G-1}\right)\left[\frac{\sigma_U^2}{N} + \left(\frac{N-1}{N}\right)\gamma^2\right].$$

This expression becomes

CONFIDENTIAL - ATTORNEYS EYES ONLY

$$\left(\frac{G}{G-1}\right)\left(\frac{\sigma_U^2}{N}\right)$$

when $\tau_g = 0$ for all $g$, which means $E(Y|C = g) = E(Y)$, $g = 1, \ldots, G$. In other words, the mean of $Y$ does not change by cluster. However, when some $\tau_g \neq 0$, which is almost certainly the case when the clustering is one on the basis of factors that can affect $Y$, the term

$$\left(\frac{N-1}{N}\right)\gamma^2$$

is strictly positive. And, it is the dominant term when $N$ is large, as $\sigma_U^2/N$ becomes negligible while $(\frac{N-1}{N})\gamma^2$ settles to $\gamma^2$. With small $G$, the factor $G/(G-1)$ can be nontrivial, too.

The cluster-robust standard error does not shrink to zero as $N$ increases with a fixed number of clusters $G$. Its expected value is essentially constant as $N$ increases with $G$ fixed. This is clear from the simulations, too.

A useful special case is when the clusters have equal shares, so $\rho_g = 1/G$ for all $g$. then

$$\gamma^2 = G^{-1}\sum_{g=1}^{G} G^{-1}\tau_g^2 = G^{-1}\sum_{g=1}^{G} \rho_g\tau_g^2$$

Let $\eta^2 = \sum_{g=1}^{G} \rho_g\tau_g^2$ and assume $G$ and $N$ are large enough to ignore $G/(G-1)$ and $(N-1)/N$. Then the ratio of expected sampling variances is

$$\frac{\frac{\sigma_U^2}{N} + \frac{\eta^2}{G}}{\frac{\sigma_U^2}{N}} = 1 + \frac{\eta^2}{\sigma_U^2} \cdot \frac{N}{G},$$

where $N/G$ is the average number of observations per cluster. Thus, as $N/G$ increases, the upward bias in the clustered standard errors increases.

**Simulations**

In the simulations reported in Exhibit 1, I chose $G = 5$, $N$ varying from 50 to 25,000, and I

CONFIDENTIAL - ATTORNEYS EYES ONLY

took $E(Y) = 2$. Specifically, $Y$ is generated as

$$Y = 2 + S_1 Z_1 + S_2 Z_2 + \ldots + S_G Z_G = 2 + U$$

with

$$P(S_g = 1) = 1/5, \ g = 1, \ldots, G$$
$$Z_1 \sim \mathbb{N}(-2, 25)$$
$$Z_2 \sim \mathbb{N}(-1, 25)$$
$$Z_3 \sim \mathbb{N}(0, 25)$$
$$Z_4 \sim \mathbb{N}(1, 25)$$
$$Z_5 \sim \mathbb{N}(2, 25)$$

and $Z_1, \ldots, Z_5$ mutually independent draws and also independent of $(S_1, \ldots, S_5)$. Then $E(U) = 0$ and

$$E(U^2) = V(Y) = \frac{(29 + 26 + 25 + 26 + 29)}{5} = 27$$
$$\gamma^2 = \frac{4 + 1 + 0 + 1 + 4}{25} = .4$$

Therefore, ignoring the sampling error in $\bar{Y}$, the expected value of the cluster-robust variance is

$$1.25 \left[ \frac{27}{N} + .4 \left( \frac{N-1}{N} \right) \right]$$

With large $N$, this is roughly $.5$, and so the average of the standard error (ignoring Jensen's inequality) is about $\sqrt{.5} \approx .707$.

CONFIDENTIAL - ATTORNEYS EYES ONLY

# Appendix B-1

# Stata Program for the Simulations Reported in Exhibit 1

```
clear
capture program drop cluster

log using simulation_5_5000_nocluster, text replace

program cluster, rclass
        version 13
        drop _all
        set obs 25000
        gen u = runiform()
        gen g = 1 if 0 <= u & u < .2
        replace g = 2 if .2 <= u & u < .4
        replace g = 3 if .4 <= u & u < .6
        replace g = 4 if .6 <= u & u < .8
        replace g = 5 if .8 <= u
        gen g1 = g == 1
        gen g2 = g == 2
        gen g3 = g == 3
        gen g4 = g == 4
        gen g5 = g == 5
        gen z1 = rnormal(-2,5)
        gen z2 = rnormal(-1,5)
        gen z3 = rnormal(0,5)
        gen z4 = rnormal(1,5)
        gen z5 = rnormal(2,5)
        gen y = 2 + g1*z1 + g2*z2 + g3*z3 + g4*z4 + g5*z5
        * E(y) = 2, Var(y) = 27
        reg y
        return scalar muhat = _b[_cons]
        return scalar se_indep = _se[_cons]
        reg y, cluster(g)
        return scalar se_cluster = _se[_cons]
        xtset g
        xtreg y, re theta
        return scalar cluster_corr = e(rho)
end

set seed 1234
simulate r(muhat) r(se_indep) r(se_cluster) r(cluster_corr), reps(1000) nodots: cluster

sum

log close
```

CONFIDENTIAL – ATTORNEYS EYES ONLY

# Appendix B-2

# Stata Program for the Population Data Used in Exhibit 2

```
clear
set more off

global m = 50
global n = 100000

capture program drop cluster

program cluster, rclass
        version 13
        drop _all

        set obs $n
        gen u = runiform()

        local i = 1
        gen g = 0
        while `i' <= $m {
                qui replace g = `i' if (`i' - 1)/$m <= u & u < `i'/$m
                local i = `i' + 1

}

        local i = 1
        while `i' <= $m {
                gen g`i' = g == `i'
                local i = `i' + 1

}

        local i = 1
        gen c = 0
        while `i' <= $m {
                qui replace c = c + ((`i' - (($m+1)/2))/10)*g`i'
                local i = `i' + 1

}

        gen e = rnormal(0,4)
        gen x = rnormal(0,1) > 0
        gen y = 2 + (3 + c)*x + c + e

        gen h = 0
        replace h = 1 if g <= 5
        replace h = 2 if 5 < g & g <= 10
        replace h = 3 if 10 < g & g <= 15
        replace h = 4 if 15 < g & g <= 20
        replace h = 5 if 20 < g & g <= 25
        replace h = 6 if 25 < g & g <= 30
        replace h = 7 if 30 < g & g <= 35
```

40

CONFIDENTIAL – ATTORNEYS EYES ONLY

```
        replace h = 8 if 35 < g & g <= 40
        replace h = 9 if 40 < g & g <= 45
        replace h = 10 if 45 < g

end

set seed 12345

cluster
```

CONFIDENTIAL – ATTORNEYS EYES ONLY

## Appendix B-3

## Stata Program for the Simulations Reported in Exhibit 2

```
clear
global iter = 1000

log using simulation_reg_finite_pop_50_2000, text replace

use data_cluster_reg_50_2000

* First use the entire population:

reg y x, robust
reg y x, cluster(g)
xtset g
xtreg y x, re

reg y x, cluster(h)

* Now simulation subsamples:

capture program drop betahat

program betahat, rclass
        version 13
        clear

        use data_cluster_reg_50_2000
        sample 10
        reg y x, robust
        return scalar beta = _b[x]
        return scalar se_beta_indep = _se[x]
                reg y x, cluster(g)
                return scalar se_beta_cluster_g = _se[x]
                                reg y x, cluster(h)
                return scalar se_beta_cluster_h = _se[x]

                xtset g
                xtreg y x, re
                return scalar cluster_corr_g = e(rho)


end

set seed 123

simulate r(beta) r(se_beta_indep) r(se_beta_cluster_g) r(se_beta_cluster_h) ///
        r(cluster_corr_g), reps($iter): betahat
sum

log close
```

42

CONFIDENTIAL – ATTORNEYS EYES ONLY

# Appendix C

## Documents Considered by Professor Jeffrey M. Wooldridge

Declaration of Roger G. Noll on Liability and Damages, dated April 3, 2013 (including Exhibits 1-16 and Appendices A-C).

Corrections to Declaration of Roger G. Noll on Liability and Damages, dated May 31, 2013 (including Exhibits 14, 15.1, 15.2, 16.1, 16.2).

Rebuttal Declaration of Roger G. Noll on Liability and Damages, November 25, 2013 (including Exhibits 1-6 and Appendices A-B).

Amended Expert Report of Robert H. Topel, dated August 19, 2013 2013 (including Exhibits 1-16 and Appendices A-D).

Corrections to Expert Report of Robert H. Topel Submitted July 19, 2013.

Amended Expert Report of Kevin M. Murphy, dated August 19, 2013 (including Exhibits 1-17 and Appendices A-D).

Corrections to Expert report of Kevin M. Murphy Submitted July 19, 2013.

Apple's Opposition to Plaintiffs' Daubert Motion to Exclude Certain Opinion Testimony of Kevin M. Murphy and Robert H. Topel, dated January 13, 2014.

Declaration of David C. Kiernan in Support of Apple's Opposition to Plaintiffs' Daubert Motion to Exclude Certain Opinion Testimony of Kevin M. Murphy and Robert H. Topel, dated January 13, 2014 (including Exhibits 1-12).

Deposition Transcript of Jeffery M. Wooldridge, Ph.D., taken January 6, 2014.

Deposition Transcript of Kevin M. Murphy, Ph.D., taken November 12, 2013.

Deposition Transcript of Kevin M. Murphy, Ph.D., taken January 8, 2014.

43

CONFIDENTIAL – ATTORNEYS EYES ONLY