# ROBBINS GELLER
# RUDMAN & DOWD LLP

| | | | | |
|---|---|---|---|---|
| Atlanta | Chicago | Melville | Philadelphia | San Francisco |
| Boca Raton | Manhattan | Nashville | San Diego | Washington, DC |

Bonny E. Sweeney
bonnys@rgrdlaw.com

February 3, 2014

<u>VIA ECF</u>

The Honorable Judge Yvonne Gonzalez Rogers
United States District Court
   Northern District of California
Oakland Courthouse
1301 Clay Street, Courtroom 5 - 2nd Floor
Oakland, CA 94612

     Re:    *The Apple iPod iTunes Anti-Trust Litigation,*
            Lead Case No. C-05-00037-YGR

Dear Judge Gonzalez Rogers:

     Pursuant to Dkt. No. 760 and the Court's Standing Order in Civil Cases, plaintiffs submit this pre-filing conference statement responding to Apple Inc.'s summary judgment motion.

## I.    BACKGROUND

     Plaintiffs allege that Apple maintained and enhanced its monopoly power in the market for portable digital media players by implementing software and firmware updates – called the 7.0 updates – that disabled RealNetworks' Harmony, a product that allowed iPod users to download and play audio files from RealNetworks' on-line music store.  Before Harmony, Apple's proprietary digital rights management system ("DRM"), called FairPlay, blocked iPod owners from downloading music from on-line stores other than Apple's iTunes Store ("iTS").  With Harmony, iPod users could build music libraries with music from online sources that were not tied to the iPod, thus reducing the costs of switching to another portable digital music player.

     Plaintiffs' economic expert, Professor Roger G. Noll, has concluded:

-    Apple's blocking of Harmony through 7.0 increased "lock-in" for iPods owners by increasing switching costs and network effects.

-    Apple possessed market power during the class period in the market for portable digital media players and the market for permanent downloads of digital audio files.

-    Apple's blocking of Harmony through 7.0 enhanced and maintained its monopoly power in portable digital media players.

# Robbins Geller
## Rudman & Dowd LLP

The Honorable Judge Yvonne Gonzalez Rogers
February 3, 2014
Page 2

- As a result, Apple was able "to charge higher prices for iPods than otherwise would have been the case."

Dkt. No. 751-3 (Pltfs' MSJ Opp.) at 8.

Professor Noll calculated damages and demonstrated the anticompetitive impact of Apple's conduct using a before-and-after multiple-variable regression analysis. Comparing prices of iPods before and after the competitive events, Noll estimated that Apple's conduct resulted in an overcharge of 2.38% on iPods sold to resellers, and 7.45% on iPods sold to retail customers, for total damages of $351,631,153. Dkt. No. 751-3 at 2.

## II.     SUMMARY JUDGMENT STANDARD

A motion for summary judgment may not be granted unless the moving party shows both: (1) that there is no genuine issue as to any material fact; and (2) that it is entitled to judgment in its favor as a matter of law. *See* Fed. R. Civ. P. 56(a). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "Where material factual disputes exist, the court must allow a jury to resolve them." *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 871 (9th Cir. 2010). The Ninth Circuit has also held that summary judgment should be used "'sparingly'" in antitrust cases because of the many factual issues typical for these actions. *American Ad Mgmt. v. GTE Corp.*, 92 F.3d 781, 788 (9th Cir. 1996) (citations omitted).

### A.     Plaintiffs' Theory of Impact Does Not Depend on the Level of Harmony Sales to iPod Owners

First, Apple argues that Plaintiffs cannot prove impact because "Harmony was insignificant in 2006," and because Plaintiffs have not identified which RealNetworks' sales were to iPod owners (or potential iPod owners) or the exact number of people who became locked in or locked out as a result of 7.0. Besides being incorrect, this argument is contrary to economic theory. As Professor Noll explains: "[N]othing in the economic theory of demand indicates . . . that some threshold level of users of Harmony among iPod owners is necessary for Harmony to have had an effect on iPod prices. Instead, the effect of a technology that allows consumers to buy complementary products from different vendors is to make the price of these components more elastic . . . ." Dkt. No. 751-20 (Sweeney MSJ Opp. Decl.), Ex. 2 (Noll Rebuttal) at 14; *see also id.*, Ex. 1 (Noll Damages Report) at 14-22. It also is not true that Harmony was "insignificant," with approximately 2.4 million subscribers. *Id.*, Ex. 57 (Nov. 7, 2006 Oppenheimer Quarterly Update on RealNetworks, Inc.) at 2. Apple's documents demonstrate that the interoperability and flexibility offered by

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Judge Yvonne Gonzalez Rogers
February 3, 2014
Page 3

RealNetworks' Harmony was highly valued by its customers. *See, e.g.*, *id.*, Ex. 35 (compendium of selected customer complaints).

### B.     Apple Set Prices Based on Competitors' Products

Apple also asserts that Plaintiffs' theory is implausible because Apple set "aesthetically appealing" prices. Dkt. No. 740-4 (Def's MSJ) at 10-11, 13. But Apple's pricing practices depended on competitive factors, not "aesthetic" pricing. Even to the extent Apple's prices were dictated by "aesthetics," that does not undermine Plaintiffs' damages theory. Apple argues that Professor Noll's regression results would have required Apple to "depart" from its usual practice and charge $184.17 for a $199 nano. *Id.* at 11. But Apple could have easily charged $189 or some other "aesthetically pleasing" price and still reaped improper overcharge benefits. *See, e.g.*, *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264, 66 S. Ct. 574, 90 L. Ed. 652 (1946) (precision quantification of damages not required in antitrust cases).

### III.     PROFESSOR NOLL'S OPINIONS ARE ADMISSIBLE UNDER RULE 702 AND *DAUBERT*

Apple's challenges to Noll's regression model primarily go to the weight, not the admissibility, of Professor Noll's testimony. *See, e.g.*, *Bazemore v. Friday*, 478 U.S. 385, 400, 106 S. Ct. 3000, 92 L. Ed. 2 315 (1986). Moreover, Apple's criticisms are misguided. First, Apple's contention that Noll uses the "wrong but-for world" ignores the fact that the 7.0 technology (a competitive event reflected in the regressions) replaced the older, 4.7 technology. Dkt. No. 751-3 at 16-18. Apple's experts' proposal that the indicator variable for 4.7 should remain "on" until the end of the data period cannot properly measure the impact of 7.0. *Id.* at 17-18. In addition, Apple's argument that Noll's regressions do not account for all of the relevant variables is incorrect and ignores demonstrated multicollinearity concerns.

Further, as demonstrated by Plaintiffs' *Daubert* Motion to Exclude Certain Opinion Testimony of Kevin M. Murphy and Robert H. Topel (Dkt. No. 737-4), Apple's "clustering" attacks on Noll's regressions are completely without merit. As explained by Noll and Wooldridge, "there can be no cluster sampling problem because there is no sampling." Dkt. No. 751-20, Ex. 54 (Wooldridge Decl.) at 10. Adopting Apple's clustering methodology grossly inflates the standard errors. *Id.*

Very truly yours,

BONNY E. SWEENEY

976116_1