1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  BONNY E. SWEENEY (176174)
   ALEXANDRA S. BERNAY (211068)
3  PATRICK J. COUGHLIN (111070)
   CARMEN A. MEDICI (248417)
4  JENNIFER N. CARINGAL (286197)
   655 West Broadway, Suite 1900
5  San Diego, CA  92101
   Telephone:  619/231-1058
6  619/231-7423 (fax)
   bonnys@rgrdlaw.com
7  xanb@rgrdlaw.com
   patc@rgrdlaw.com
8  cmedici@rgrdlaw.com
   jcaringal@rgrdlaw.com
9
   Class Counsel for Plaintiffs
10
   [Additional counsel appear on signature page.]
11
                    UNITED STATES DISTRICT COURT
12
                   NORTHERN DISTRICT OF CALIFORNIA
13
                          OAKLAND DIVISION
14
   THE APPLE IPOD ITUNES ANTITRUST      )   Lead Case No. C-05-00037-YGR
15  LITIGATION                          )
                                         )   CLASS ACTION
16  ─────────────────────────────────   )
                                         )   PLAINTIFFS' NOTICE OF MOTION AND
17  This Document Relates To:           )   MOTIONS *IN LIMINE* NOS. 1-6, 8-9
                                         )
18      ALL ACTIONS.                    )
   ─────────────────────────────────   )   Date:       October 29, 2014
19                                          Time:       9:30 a.m.
                                            Courtroom:  1, 4th Floor
20                                          Judge:      Hon. Yvonne Gonzalez Rogers

21                                          Trial Date: November 17, 2014
                                            Time:       8:30 a.m.
22

23

24

25

26

27

28

976864_1

**TABLE OF CONTENTS**

**Page**

I.  PLAINTIFFS' MOTION *IN LIMINE* NO. 1 – REFERENCES TO HACKING ...............2

II.  PLAINTIFFS' MOTION *IN LIMINE* NO. 2 – CUMULATIVE EXPERT
TESTIMONY .....................................................................................................................6

III.  PLAINTIFFS' MOTION *IN LIMINE* NO. 3 – UNCHALLENGED ASPECTS .............10

IV.  PLAINTIFFS' MOTION *IN LIMINE* NO. 4 – DECLARATIONS OF
UNAVAILABLE DECLARANTS ...............................................................................13

V.  PLAINTIFFS' MOTION *IN LIMINE* NO. 5 –  CLASS CERTIFICATION ...................16

VI.  PLAINTIFFS' MOTION *IN LIMINE* NO. 6 – NO SUIT BY REALNETWORKS,
INC. ................................................................................................................................19

VII.  PLAINTIFFS' MOTION *IN LIMINE* NO. 8 – TREBLE DAMAGES AND
ATTORNEYS' FEES AND COSTS .............................................................................21

VIII.  PLAINTIFFS' MOTION *IN LIMINE* NO. 9 – DISMISSED CLAIMS............................22

1

# TABLE OF AUTHORITIES

2

Page

3    **CASES**

4    *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp.*,
5        592 F.3d 991 (9th Cir. 2010) ...................................................17

6    *Allstate Fin. Corp. v. Utility Trailer*,
         No. 92 C 3477, 1995 U.S. Dist. LEXIS 7917
7        (N.D. Ill. June 8, 1995) ...................................................20

8    *Bell v. Bryant*,
         No. 08-0456-CV-W-DGK, 2012 U.S. Dist. LEXIS 186952
9        (W.D. Mo. July 24, 2012) ...................................................23

10   *Bishop v. Children's Ctr. for Developmental Enrichment*,
         No. 2:08-CV-766, 2011 U.S. Dist. LEXIS 147832
11       (S.D. Ohio Dec 22, 2011) ...................................................19

12
     *Brooks v. Cook*,
13       938 F.2d 1048 (9th Cir. 1991) ...................................................21

14   *Bryce v. Trace, Inc.*,
         No. CIV-06-775-D, 2008 U.S. Dist. LEXIS 27310
15       (W.D. Okla. Mar. 31, 2008)...................................................23

16   *Buckman v. Bombardier Corp.*,
17       893 F. Supp. 547 (E.D.N.C. 1995)...................................................19

18   *County of Maricopa v. Maberry*,
         555 F.2d 207 (9th Cir. 1977) ...................................................4
19
     *Cummings v. Connell*,
20       402 F.3d 936 (9th Cir. 2005) ...................................................17

21   *Fontana v. City of Fed. Way*,
         No. C11-998 RAJ, 2014 U.S. Dist. LEXIS 6799
22       (W.D. Wash. Jan. 17, 2014)...................................................22

23   *G. v. Hawaii. Dep't of Human Servs.*,
24       703 F. Supp. 2d 1112 (D. Haw. 2010) ...................................................5

25   *Gomez v. Daig Corp.*,
         Civ. A. No. 00-0754, 2004 WL 5503782
26       (E.D. La. Feb. 5, 2004) ...................................................22

27

28

1

2                                                                                          **Page**

3

4    *Gomez v. Tyson Foods, Inc.*,
        No. 8:08CV21, 2013 WL 991494
5        (D. Neb. Mar. 13, 2013).............................................................................................17

6    *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
        392 U.S. 481 (1968)...................................................................................................16
7
     *HBE Leasing Corp v. Frank*,
8        22 F.3d 41 (2d Cir. 1994) .........................................................................................21

9    *Heriges v. Wilson Cty.*,
        No. 3:09-cv-0362, 2010 U.S. Dist. LEXIS 111327
10       (M.D. Tenn. Oct. 19, 2010) ......................................................................................23

11   *Herzog v. United States*,
        226 F.2d 561 (9th Cir. 1955) ......................................................................................5
12
     *Heuzo v. Los Angeles Cmty. Coll. Dist.*,
13       No. CV 04-9772 MMM, 2007 U.S. Dist. LEXIS 100116
        (C.D. Cal. Feb. 27, 2007)............................................................................................5
14
     *Howmedica Osteonics Corp. v. Zimmer, Inc.*,
15       No. 2:11-CV-1857 (DMC) (JAD), 2013 U.S. Dist. LEXIS 132889
        (D.N.J. Sept. 16, 2013) .............................................................................................22
16
     *Illinois Brick Co. v. Illinois*,
17       431 U.S. 720 (1977)...................................................................................................19

18   *In re Air Crash Disaster*,
        86 F.3d 498 (6th Cir. 1996) ........................................................................................9
19
     *In re ConAgra Foods, Inc.*,
20       No. CV 11-05379 MMM, 2014 U.S. Dist. LEXIS 116103
        (C.D. Cal. Aug. 1, 2014)..............................................................................................5
21
     *In re Industrial Gas Antitrust Litig.*,
22       681 F.2d 514 (7th Cir. 1982) .....................................................................................19

23   *In re Southeastern Milk Antitrust Litig.*,
        Master File No. 2:08-MD-1000, 2011 U.S. Dist. LEXIS 76552
24       (E.D. Tenn. July 14, 2001).......................................................................................4, 5

25   *In re Tableware Antitrust Litig.*,
        No. C-04-3514 VRW, 2007 U.S. Dist. LEXIS 21243
26       (N.D. Cal. Mar. 2007)................................................................................................21

27

28

1

2                                                                                          **Page**

3

4   *Jean-Laurent v. Hennessy,*
        840 F. Supp. 2d 529 (E.D.N.Y. 2011) ..................................................................4

5   *Lopez v. Tyson Foods, Inc.,*
        No. 8:06CV459, 2011 U.S. Dist. LEXIS 50638
6       (D. Neb. May 11, 2011).........................................................................................17

7   *Meijer, Inc. v. Abbott Labs.,*
        251 F.R.D. 431 (N.D. Cal. 2008)...........................................................................16
8

9   *Moore v. Bannon,*
        No. 10-12801, 2012 U.S. Dist. LEXIS 81740
10      (E.D. Mich. June 13, 2012)....................................................................................23

11  *Nationwide Transp. Fin. v. Cass Info. Sys.,*
        523 F.3d 1051 (9th Cir. 2008) .................................................................................5
12

13  *O'Brien v. County of Kauai,*
        No. CIV. 12-605 BMK, 2014 U.S. Dist. LEXIS 64907
14      (D. Haw. May 12, 2014) ...........................................................................................5

15  *Rogers v. Raymark Indus., Inc.,*
        922 F.2d 1426 (9th Cir. 1991) ...........................................................................6, 11
16

17  *Schenek v. FSI Futures Inc.,*
        No. 94 Civ. 6345(CSH), 1998 U.S. Dist. LEXIS 11562
18      (S.D.N.Y. July 28, 1998) ........................................................................................17

19  *Schwartz v. Ryan,*
        455 F. App'x 736 (9th Cir. 2011) .............................................................................5
20

21  *Sklar v. Clough,*
        No. 1:06-CV-0627-JOF, 2007 U.S. Dist. LEXIS 49248
22      (N.D. Ga. Jul. 6, 2007)............................................................................................15

23  *Somers v. Apple, Inc.,*
        No. C 07-06507 JW, 2011 U.S. Dist. LEXIS 77165
24      (N.D. Cal. Jun 27, 2011).........................................................................................23

25  *Sullivan v. Nat'l Football League,*
        34 F.3d 1091 (1st Cir. 1994).................................................................................11
26

27  *Sunstar, Inc. v. Alberto-Culver Co.,*
        No. 01-C-0736, 2004 U.S. Dist. LEXIS 16855
28      (N.D. Ill. Aug. 20, 2004)...........................................................................................9

1
2                                                                                    **Page**
3

4    *Tompkins v. Eckerd*,
        Civ. A. No. 8:09-02369-JMC, 2012 WL 1110069
5        (D.S.C. Apr. 3, 2012).............................................................................................22
6    *United States v. Casoni*,
        950 F.2d 893 (3d Cir. 1991)....................................................................................11
7
8    *United States v. Hall*,
        165 F.3d 1095 (7th Cir. 1999) ...............................................................................14
9    *United States v. Hicks*,
        103 F.3d 837 (9th Cir. 1996) ....................................................................................6
10
11   *United States v. Sanchez-Lima*,
        161 F.3d 545 (9th Cir. 1998) ..................................................................................14
12
     *United States v. White Horse*,
13      316 F.3d 769 (8th Cir. 2003) ....................................................................................5
14   *Wheeler v. Lynn*,
        No. 4:10-CV-00966-DGK, 2012 WL 2994270
15       (W.D. Mo. July 20, 2012)..............................................................................22, 23
16   *Williams v. Hooker*,
        No. 4:02CV01250 ERW, 2008 U.S. Dist. LEXIS 40313
17       (E.D. Mo. May 19, 2008)........................................................................................22
18   **STATUTES, RULES AND REGULATIONS**
19
     15 U.S.C.
20      §1.............................................................................................................................22
21      §2...................................................................................................................*passim*
22   Federal Rules of Evidence
        Rule 401 .............................................................................................1, 4, 19, 24
23      Rule 403 .....................................................................................................*passim*
        Rule 608(b) ..................................................................................................1, 2, 5
24      Rule 613(b) .......................................................................................................1, 5
        Rule 807 ........................................................................................................1, 15
25      Rule 807(a)(4) .....................................................................................................15
        Rule 807(b) ..........................................................................................................15
26
27
28

    PLAINTIFFS' NOTICE OF MOTION AND MOTIONS *IN LIMINE* NOS. 1-6, 8-9 - C-05-00037-YGR        - v -

1

2                                                                            **Page**

3

Federal Rules of Civil Procedure

4          Rule 23(a)................................................................................................17

5          Rule 23(f)............................................................................................16, 17
          Rule 45(c)..............................................................................................1, 13

Rule 23(a) ... 17
Rule 23(f) ... 16, 17
Rule 45(c) ... 1, 13

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on October 29, 2014 at 9:30 a.m., in Courtroom 1, 4th Floor, before the Honorable Yvonne Gonzalez Rogers, of the above-entitled Court, located at 1301 Clay Street, Oakland, California 94612, Plaintiffs Melanie Wilson (formerly Tucker) and Mariana Rosen (collectively, "Plaintiffs") will and hereby do, through undersigned counsel, move the Court for an Order granting relief sought in its Motions *in Limine* Nos. 1-6, 8-9:  Plaintiffs' Motion *in Limine* No. 1 – References to Hacking; Plaintiffs' Motion *in Limine* No. 2 – Cumulative Expert Testimony; Plaintiffs' Motion *in Limine* No. 3 – Unchallenged Aspects; Plaintiffs' Motion *in Limine* No. 4 – Declarations of Unavailable Declarants; Plaintiffs' Motion *in Limine* No. 5 – Class Certification; Plaintiffs' Motion *in Limine* No. 6 – No Suit by RealNetworks; Plaintiffs' Motion *in Limine* No. 8 – Treble Damages and Attorneys' Fees and Costs; and Plaintiffs' Motion *in Limine* No. 9 – Dismissed Claims.

Plaintiffs bring these motions pursuant to Federal Rules of Evidence 401, 403, 608(b), 613(b), 807, Federal Rules of Civil Procedure 45(c), relevant case law, and such other argument and evidence that the Court may consider at the hearing on these motions.

These motions are made following a conference of counsel pursuant to Rule 4 of the Court's Pretrial Instructions, which took place on October 6, 2014.

## I.     PLAINTIFFS' MOTION *IN LIMINE* NO. 1 – REFERENCES TO HACKING

Pursuant to Rules 403 and 608(b) of the Federal Rules of Evidence ("F.R.E."), Plaintiffs respectfully request an order *in limine* precluding Apple from making at trial any argument or commentary, or otherwise presenting or eliciting any evidence or testimony, suggesting that RealNetworks, Inc. ("RealNetworks") engaged in "hacking" or otherwise acted unlawfully or improperly in creating its "Harmony" software.

Plaintiffs allege that Apple Inc.'s ("Apple") re-design of its iPod and iTunes software in 2006 to include the keybag verification code ("KVC") and database verification code ("DVC") (collectively referred to as "iTunes 7.0" or "7.0") violated Section 2 of the Sherman Act (15 U.S.C. §2), by blocking the iPod's compatibility with songs purchased from non-Apple online stores. Plaintiffs contend that Apple used 7.0 to prevent the erosion of its monopoly power in the market for Portable Digital Media Players following RealNetworks' April 2005 release of a new version of its digital rights management ("DRM")-translation software, Harmony.  Harmony enabled consumers to play from websites that offer permanent downloads of audio recordings ("Permanent Audio Downloads") legally purchased from the RealPlayer Music Store and other Apple competitors directly on their iPods without removing the anti-piracy encryption that was required at that time by the major music labels.  Judge Ware ruled in May 2011 that whether Apple legally used 7.0 to exclude RealNetworks and other potential competitors is a question of fact to be resolved by the jury.  ECF No. 627.

The legality of RealNetworks' development of Harmony is not a contested issue in this case. As Apple's counsel previously explained:  "Our position, and we've said it over and over, is that the hacks are not competitors and the software updates at issue in this case were the ones directed to the hacks.  And one of those software updates that were directed at the hacks had the ***side effect*** of blocking Harmony."[1]  Ps' MIL Ex. 1, July 19, 2010 Hrg. Tr. at 9:14-20.[2]

---

[1]     References to "Ps' MIL Ex." are to the Declaration of Bonny E. Sweeney in Support of Plaintiffs' Motions *in Limine* Nos. 1-6, 8-9, submitted herewith.  Unless otherwise noted, citations are omitted and emphasis is added, here and throughout.

1    Yet Apple's counsel persistently blurs the issue, frequently asserting or implying that

2    RealNetworks was itself a "hacker."  *See, e.g.*, ECF No. 544, Mar. 15, 2011 Hrg. Tr. at 9:13-16 ("So

3    in order for RealNetworks to get its songs to work on an iPod, they had to break into the safe, get the

4    keys out and unlock. And that's a hack, and that's a violation of Apple's rights."); ECF No. 302,

5    Nov. 23, 2009 Hrg. Tr. at 19:5-18 ("And so this was an instance where the competitor had been able

6    to, whether by hacking, reverse engineering, or otherwise, figure out part of the software code.

7    [RealNetworks] could come back and try to rehack around the software update.").  Another recent

8    illustration of this tactic occurred at the February 7, 2014 case management conference, where

9    Apple's counsel argued:

10       The effect of both [iTunes 4.7 and 7.0] was to disable music from
         RealNetworks that used this Harmony software.  And what Harmony did, what
11       RealNetworks did with its Harmony software is, as they said in the complaint,
         somehow RealNetworks, in their words, discerned the source code in Apple's DRM
12       and made Harmony so it mimicked it.  And Apple did respond by saying, you know,
         that's how hackers do it.  If you want to develop your own DRM, you have your own
13       music store, do it yourself.  Don't hack into ours or discern our code.

14   ECF No. 775, Feb. 7, 2014 Hrg. Tr. at 11:18-12:1.

15    Statements by defense counsel characterizing RealNetworks as a "hacker" (or using similar

16   pejorative epithets) necessarily trigger immediate, indelible and unfairly prejudicial reactions in the

17   minds of the audience.  References to "hacking" connote illegal and morally reprehensible conduct,

18   given such recent, highly publicized events as the "hack" of the U.S. Department of Defense by the

19   Chinese Army, and the "hacking" of American consumer information by organized crime in Russia

20   and elsewhere.  As recently as August 28, 2014, *The Wall Street Journal* ran a story about the FBI

21   probing possible Russian mob hacking at J.P. Morgan Chase & Co.[3]

22

23

24   [2]  *Accord* ECF No. 376, May 10, 2010 Hrg. Tr. at 12:5-10 ("Once Apple redesigned FairPlay, it
     blocked the hacks and to make it more difficult for hackers to attack it in the future, other software
25   programs like Harmony that were based on or mimicked, the then existing version of FairPlay
     naturally didn't work."); ECF No. 622, Apr. 18, 2011 Hrg. Tr. at 9:14-17 ("So an effect of 7.0
26   requiring the use of iTunes . . . was that consumers couldn't use RealPlayer any longer.").

27   [3]  Ps' MIL Ex. 2, FBI Probes Possible Hacking Incident at J.P. Morgan, *The Wall Street Journal*
28   (Aug. 28, 2014).

1    As a public relations strategy, Apple:  (a) chose to characterize RealNetworks as a "hacker"

2  in connection with the first iteration of Harmony in 2004;[4] and (b) discussed internally the possibility

3  of doing so again as to the second iteration of Harmony.[5]  Plaintiffs do not seek to preclude evidence

4  of these historical facts.  But Plaintiffs should not be forced to devote any of their limited trial time

5  or resources defending the legality of Harmony at trial, for several reasons.

6    *First*, suggestions of alleged hacking by RealNetworks are irrelevant to the legality of

7  Apple's actions, and unfairly prejudicial because they create a risk of confusing the jury into

8  inferring that purportedly unlawful conduct by RealNetworks provided a procompetitive justification

9  for Apple's anticompetitive conduct.  *See, e.g.*, *In re Southeastern Milk Antitrust Litig.*, Master File

10  No. 2:08-MD-1000, 2011 U.S. Dist. LEXIS 76552, at *25 (E.D. Tenn. July 14, 2001) (excluding

11  statements at trial that a merger was illegal because plaintiffs did not challenge the legality of the

12  merger itself); *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 549 (E.D.N.Y. 2011) (where

13  lawfulness of prosecution lacked probative value with respect to any of the claims to be tried, any

14  reference at trial to an "unlawful" prosecution was improper under Rule 401).  While Apple may

15  address the fact of Harmony's development and its response to it, Apple should not be permitted to

16  disparage Harmony as unlawful.  *Southeastern Milk*, 2011 U.S. Dist. LEXIS 76552, at *25.

17    *Second*, preclusion is appropriate because there will be no admissible evidence at trial

18  supporting any inference that RealNetworks' development of Harmony was anything other than

19  lawful procompetitive conduct.  *See County of Maricopa v. Maberry*, 555 F.2d 207, 217 n.14 (9th

20  Cir. 1977) (counsel shall not state or allude to any matter "not supported by admissible evidence")

21  (quoting ABA Code of Professional Responsibility (DR-7-106)).  Apple has disclosed no evidence

22  or expert opinion supporting (let alone establishing) any assertion that RealNetworks engaged in any

23  unlawful conduct in connection with the development of Harmony's first or second version.  *See*

24

25  [4]    For example, Steve Jobs drafted a press release even before the first iteration of Harmony was
    released stating, "RealNetworks is a hacker.  We are going to shut it down."  ECF No. 787, Aug. 13,
26  2014 Hrg. Tr. at 67:25-68:3; *see generally* ECF No. 537, (Plaintiffs' Memorandum in Opposition to
    Apple's Motion for Summary Judgment) at 7-9 (and evidence cited therein).

27  [5]    *See* Ps' MIL Ex. 3, Apple_AIIA01217427-28 (describing RealNetwork's actions as a
28  "technological form of hijacking").

1   ECF No. 538, Jeffrey Robbin Decl., ¶¶50-54; ECF No. 536, John Kelly Decl., ¶¶32-35; *see, e.g.*,

2   *Southeastern Milk*, 2011 U.S. Dist. LEXIS 76552, at \*11-\*13 (holding that no expert may offer an

3   opinion at trial which has not been disclosed in his or her expert disclosure, any rebuttal report or in

4   deposition); *O'Brien v. County of Kauai*, No. CIV. 12-605 BMK, 2014 U.S. Dist. LEXIS 64907, at

5   \*7 (D. Haw. May 12, 2014) (granting unopposed motion in limine to exclude undisclosed expert

6   opinions).   Nor could Apple's witnesses – lay or expert – opine on the legality of RealNetworks'

7   development of Harmony. *Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1058-60 (9th

8   Cir. 2008) (neither lay witnesses nor experts are permitted to offer legal opinions); *see, e.g.*, *In re*

9   *ConAgra Foods, Inc.*, No. CV 11-05379 MMM (AGRx), 2014 U.S. Dist. LEXIS 116103, at \*39-

10  \*40 (C.D. Cal. Aug. 1, 2014) (expert cannot give opinion as to a legal conclusion); *G. v. Hawaii.*

11  *Dep't of Human Servs.*, 703 F. Supp. 2d 1112, 1128 (D. Haw. 2010) (same); *Heuzo v. Los Angeles*

12  *Cmty. Coll. Dist.*, No. CV 04-9772 MMM (JWJx), 2007 U.S. Dist. LEXIS 100116, at \*46 (C.D. Cal.

13  Feb. 27, 2007) ("'Credibility aside, a lay witness's legal opinions are simply irrelevant.'")

14      ***Third***, any insinuation or evidence at trial that RealNetworks was an unlawful "hacker"

15  would constitute impermissible collateral impeachment or impeachment by prior conduct of

16  RealNetworks in violation of F.R.E. 608(b) and 613(b).   Courts routinely exclude evidentiary

17  sideshows on collateral issues, which only tend to confuse the jury and needlessly protract the trial

18  proceedings.   *See, e.g.*, *Schwartz v. Ryan*, 455 F. App'x 736 (9th Cir. 2011) (affirming exclusion of

19  evidence as collateral under state law equivalent of Rule 608(b)); *see generally Herzog v. United*

20  *States*, 226 F.2d 561, 565 (9th Cir. 1955) ("The purpose of evidence is to prove or disprove some

21  issue in the cause on trial.   If proffered evidence does not tend to do either of these things, it has no

22  place in the trial and is either immaterial or collateral to the inquiry."); *United States v. White Horse*,

23  316 F.3d 769, 776 (8th Cir. 2003) ("[T]he trial court retains wide discretion to exclude evidence that

24  would result in a 'collateral minitrial' because both sides characterize the event at issue differently.")

25      Given the lack of relevance, the unfair prejudice, the lack of supportive evidence and the

26  collateral nature of the matter, any allusion to RealNetworks as a "hacker" or as having engaged in

27  "hacking" can only lead to unfair prejudice and jury confusion.   Plaintiffs' motion *in limine* is,

28  therefore, well-taken and should be granted.

II.     **PLAINTIFFS' MOTION *IN LIMINE* NO. 2 – CUMULATIVE EXPERT TESTIMONY**

Pursuant to Rule 403 of the Federal Rules of Evidence ("F.R.E."), Plaintiffs respectfully request an order *in limine* to exclude the cumulative testimony of Apple Inc.'s ("Apple") economic expert witnesses, Kevin M. Murphy ("Murphy") and Robert H. Topel ("Topel"). These two experts submitted separate expert reports and a joint supplemental report in which they provided nearly identical critiques of Plaintiffs' economic expert, Professor Roger G. Noll ("Noll"). Further, Plaintiffs request that the Court preclude cumulative testimony concerning Apple's "walled garden" approach previously discussed by both John P.J. Kelly ("Kelly") and Murphy. Because F.R.E. 403 prohibits parties from "needlessly presenting cumulative evidence," Apple should be precluded from offering duplicative testimony at trial and to hold otherwise would be unfairly prejudicial and would waste the jury's and the Court's time.

"The district court is not ***required*** to admit expert testimony every time a party is able to make the threshold *Daubert* showing." *United States v. Hicks*, 103 F.3d 837, 847 (9th Cir. 1996) (emphasis in original). The Court has discretion to exclude expert testimony "if its probative value is substantially outweighed by a danger of" "unfair prejudice," "undue delay, wasting time, or needlessly presenting cumulative evidence." F.R.E. 403. "The district court has considerable latitude in performing the Rule 403 balancing test." *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1430 (9th Cir. 1991).

Apple has designated both Murphy and Topel as experts about matters arising from Professor Noll's theories and opinions. However, to permit both experts to testify would present the jury with needlessly cumulative testimony, wasting both the jury's and the Court's time, and would be unduly prejudicial. A comparison of Murphy and Topel's individual reports confirms that they proffer nearly identical arguments:

| Criticism | Expert Report of Kevin M. Murphy, dated August 19, 2013 (Amended) | Expert Report of Robert H. Topel, dated August 19, 2013 (Amended) |
|---|---|---|
| Need to Know How Many iPod Owners Purchased RealPlayer Music Store | "Professor Noll fails to examine whether iPod owners actually used RealPlayer with Harmony and/or purchased music from the [RealPlayer Music Store].  He simply assumes they did.  Thus, he fails to provide evidence of the critical factual basis for the existence of the harm he hypothesizes. His purported regression analysis cannot substitute for such evidence."<br><br>ECF No. 813-4 at 4, 34-37. | "A necessary predicate for his theory of damages is that enough iPod owners were purchasing [RealPlayer Music Store] music, and would have continued to do so, to have an impact on iPod prices.  Professor Noll merely assumes that this was the case – i.e., that iPod owners were in fact purchasing [RealPlayer Music Store] music and would have continued to do so in sufficient quantities to impact iPod demand."<br><br>ECF No. 813-5 at 6, 55. |
| Must Be Distinguished | "Professor Noll's regression analysis cannot identify the impact (if any) of the KVC as distinct from other contemporaneous factors that may have influenced iPod prices. Among other things, his model cannot separate the alleged impact of the KVC from the other changes that occurred at precisely the same time and, by the logic of his own model, would have affected Apple's pricing."<br><br>ECF No. 813-4 at 4-5, 54-59. | "His model does not and cannot separate the impact of the challenged KVC feature from other factors that impact iPod prices and occurred at the same time the KVC feature was introduced. Despite his claim to control for relevant product attributes and market forces, he omits many valuable attributes of iPods, iTunes, and [iTunes Music Store] that affect the prices of iPods."<br><br>ECF No. 813-5 at 6, 48-49. |
| Impact Would Not Be Immediate | "Professor Noll's regression analysis is inconsistent with the timing implications of Plaintiffs' theory of harm.  He admits that iPod prices might be higher in the 'long run,' but his regression is based on an assumption that the alleged overcharge began on the day on which iTunes 7.0 was released.  As a matter of both economic theory and the evidence in this case, that is not possible."<br><br>ECF No. 813-4 at 5, 40-41. | "His regression purports to show that the challenged conduct had an immediate and uniform impact on prices of all iPods sold from September 12, 2006 onward.  This is contrary to his and Plaintiffs' theory in which the degree of 'lock-in' would be proportional to the increase in iPod owners' accumulated stocks of FairPlay-protected music caused by the challenged update."<br><br>ECF No. 813-5 at 4, 49-50. |

| Criticism | Expert Report of Kevin M. Murphy, dated August 19, 2013 (Amended) | Expert Report of Robert H. Topel, dated August 19, 2013 (Amended) |
|---|---|---|
| Errors Are Clustered, Reducing Statistical Significance | "Professor Noll vastly overstates the precision of his model and its results….Properly analyzed, even his (otherwise incorrect) estimates of impact and damage are not statistically significant. In other words, even using Professor Noll's flawed regression one cannot conclude that the 'impact' of iTunes 7 (to say nothing of the challenged KVC) was materially different from zero."<br><br>ECF No. 813-4 at 5, 47-49. | "Professor Noll has vastly exaggerated the statistical precision of his model….Correcting his error using standard econometric techniques that account for non-independence, I demonstrate that his estimates of alleged 'overcharges' are indistinguishable from zero."<br><br>ECF No. 813-5 at 3-4, 21-37. |
| Incorrect "But-For" World | "Professor Noll's model misrepresents the "but-for" world that would have existed in the absence of the challenged conduct….This error alone doubles the magnitude of his otherwise flawed estimate of the 'impact' on resellers, and it raises his claimed impact on direct purchasers by a factor of six."<br><br>ECF No. 813-4 at 5, 52-53. | "Notwithstanding other flaws in Professor Noll's model, his overcharge estimates are based on an incorrect characterization of the 'but-for world' that would have existed in the absence of the challenged update….This error alone doubles Professor Noll's estimated of "overcharge" among resellers, and it increases his estimated 'overcharge' among direct purchasers by a factor of six."<br><br>ECF No. 813-5 at 4-5, 37-43. |

Although Murphy and Topel may have submitted their initial expert reports individually, the content is duplicative.  This comes as of no surprise, as Murphy admitted:

I think we collaborated on the project as a whole. I think from the beginning, we both talked about the economics of the issues at hand. We thought about the marketplace, thought about the economics of the product offerings.  And we also evaluated Professor Noll's analysis and talked that over. Examined his regression analyses and the flaws and issues with that.  So I'd say yeah, I mean – I would say it was more in the analytical part. I think when we got time to work on the reports, there was some, obviously, coordination, because we were both really trying to get the answers to some of the same questions.  So we conferred with one another about what our thoughts were. I think there was a great deal of agreement.  I can't – I can't recall a place where there was any substantive disagreement in how we saw things.

Ps' MIL Ex. 4, 11/12/13 Murphy Dep. at 31:2-25; *see also* Ps' MIL Ex. 5, 11/8/13 Topel Dep. at 16:2-8.

Parallels between Murphy and Topel's expert analysis is further demonstrated by the fact that both experts used several *identical* exhibits in their individual reports.  Ps' MIL Ex. 4, 11/12/13

1    Murphy Dep. at 34:22-25.  Murphy's report includes 11 of the 17 exhibits that are also attached to

2    Topel's report.  Moreover, when Murphy and Topel filed their supplemental report in response to

3    Professor Noll's submission of the Rebuttal Declaration of Roger G. Noll on Liability and Damages

4    on November 25, 2013, Murphy and Topel opted to submit a ***joint*** report on December 20, 2013.

5    Topel admitted that collaboration with Murphy on a joint report was necessary "[b]ecause the issues

6    seemed to be things that applied to both of our prior reports."  Ps' MIL Ex. 6, 1/8/14 Topel Dep. at

7    199:18-25.

8           Plaintiffs also move to exclude cumulative testimony from Murphy and Kelly concerning

9    Apple's use of a "walled garden," which is where one provider controls all aspects of the software,

10   hardware, and content in an ecosystem.  ECF No. 819-5, Amiri Decl., Ex. 5 (Expert Report of

11   Dr. John P.J. Kelly, dated July 19, 2013).  Both Kelly and Murphy discussed the contours of Apple's

12   walled garden, including increased hardware and software stability, user experience, and the

13   interchangeability of platform elements.  *See, e.g.*, *id.* at 107-11; ECF No. 813-4 at 30-32 (Expert

14   Report of Kevin M. Murphy, dated August 19, 2013 (Amended)).

15          Multiple expert witnesses "raise[] the unfair possibility that jurors will resolve competing

16   expert testimony by 'counting heads' rather than evaluating the quality and credibility of the

17   testimony."  *Sunstar, Inc. v. Alberto-Culver Co.*, No. 01-C-0736, 2004 U.S. Dist. LEXIS 16855, at

18   *75 (N.D. Ill. Aug. 20, 2004).  Any purported probative value is diminished by the redundant

19   testimony proffered by defendant's experts.  *See In re Air Crash Disaster*, 86 F.3d 498, 527 (6th Cir.

20   1996) ("[A] court is free to exclude ***any*** expert testimony, including the testimony of an announced

21   expert, if the testimony is cumulative or redundant[;] nothing 'suggests that [the expert] would have

22   added to these interpretations a new angle or argument, as opposed to the refrain 'me

23   too.'") (emphasis in original).  Because Murphy and Topel's testimony is nearly identical, Plaintiffs

24   respectfully request that this Court preclude either Murphy or Topel from testifying at trial.

25          Plaintiffs further request that Apple be limited to offering only one expert to testify at trial

26   regarding Apple's walled garden.

27

28

III.    **PLAINTIFFS' MOTION *IN LIMINE* NO. 3 – UNCHALLENGED ASPECTS**

Pursuant to Rule 403 of the Federal Rules of Evidence ("F.R.E."), Plaintiffs move *in limine* for an order precluding Apple Inc. ("Apple") from making at trial any statement or argument, or otherwise presenting or eliciting any evidence or testimony, advancing supposed procompetitive justifications for actions taken by Apple that are not at issue in this trial.

The trial in this action will address and resolve a single, well-defined legal claim:  whether Apple unlawfully maintained its monopoly in the market for Portable Digital Media Players by blocking competitors through its re-design of iPod and iTunes firmware to include the keybag verification code ("KVC") and database verification code ("DVC").

In short, although iTunes 7.0 added several features  (such as video and movie-playing capabilities), Plaintiffs challenge as anticompetitive only the added KVC and DVC functions, which not only provided no additional features or enhancements for consumers but in fact made the consumer experience significantly worse.  Rather than benefiting consumers, KVC and DVC *prevented* consumers from using the iPod to play from websites that offer permanent downloads of audio recordings ("Permanent Audio Downloads") legally purchased from RealNetworks, Inc. ("RealNetworks") and others.[6]  There is, therefore, no basis for Apple to introduce evidence or arguments advancing procompetitive justifications for ***unchallenged*** features of its iTunes software. Based on Apple's prior arguments, Plaintiffs anticipate that Apple may improperly attempt to confuse the jury by introducing evidence or injecting argument on the following unchallenged software features:

1.    **Unchallenged Features of iTunes 7.0 and iTunes 7.4**.  Testimony about the unchallenged features of iTunes 7.0 (such as video playing capabilities) or iTunes 7.4 (such as the ability to create custom ringtones) is not only irrelevant, but also risks confusing the jury.  Because the verification codes installed in 7.0 are separate from the unchallenged features, it would be unfairly prejudicial for Apple to suggest that the jury can consider those unchallenged features in

---

[6]    In the case of the DVC, this failure to play music was even more pronounced as it not only failed to allow digital rights management ("DRM")-protected music purchased from competitors to play, but also made non-DRM protected files unplayable.

1    evaluating any alleged procompetitive justification for KVC and DVC.  *See Sullivan v. Nat'l*

2    *Football League*, 34 F.3d 1091, 1112 (1st Cir. 1994) (noting that while "courts should generally give

3    a measure of latitude to antitrust defendants in their efforts to explain the procompetitive

4    justifications for their policies and practices, . . . courts should also maintain some vigilance by

5    excluding justifications that are so unrelated to the challenged practice that they amount to a

6    collateral attempt to salvage a practice that is decidedly in restraint of trade"); *see also Rogers v.*

7    *Raymark Indus., Inc.*, 922 F.2d 1426, 1430-32 (9th Cir. 1996) (affirming district court's decision to

8    exclude evidence that lacked "lacked sufficient probative value to overcome its potential for

9    confusion" after noting the "district court has considerable latitude in performing the Rule 403

10   balancing test"); *United States v. Casoni*, 950 F.2d 893, 919 (3d Cir. 1991) ("Rule 403 authorizes a

11   district court in its broad discretion to exclude collateral matters that are likely to confuse the

12   issues.").

13       2.    **Unchallenged Features of iTunes 4.7**.  Likewise, in light of Judge Ware's ruling on

14   summary judgment, Plaintiffs will not at trial challenge any aspect of iTunes 4.7 as anticompetitive,

15   although Plaintiffs are preserving all of their appellate rights.  ECF No. 627.  Again, allowing Apple

16   to present argument and testimony relating to alleged procompetitive justifications for 4.7 risks

17   confusing the jury by suggesting that justifications for iTunes 4.7 are also justifications for the KVC

18   or DVC blocking functions of 7.0, despite this Court's ruling expressly distinguishing between the

19   two when it denied Apple's motion for summary judgment on the 7.0 issue.  ECF No. 627 at 2.

20       3.    **Unchallenged DRM Software**.  The same rationale for exclusion applies to

21   purported business justifications for Apple's proprietary DRM software, "FairPlay."  Given Judge

22   Ware's prior ruling, Plaintiffs cannot and will not challenge Apple's DRM as anticompetitive.  ECF

23   No. 787, Aug. 13, 2014 Hrg. Tr. at 11:4-24.  Nor is DRM relevant to the sole remaining issue to be

24   tried, for RealNetworks did not remove DRM.  *Id.* at 13:15-16.  The disputed issue for trial is

25   Apple's use of KVC and DVC, not its use of DRM.

26       4.    **Unchallenged Features of the iTunes Music Store and iPod**.  Finally, for the same

27   reasons, Apple should be precluded from offering or introducing evidence or argument concerning

28   any procompetitive benefits of the iTunes Music Store or the iPod.  Plaintiffs' Section 2 claim is not

1  that Apple **obtained** its monopoly power unlawfully in either the Portable Digital Media Player

2  market or the Permanent Audio Downloads market, but rather that it unlawfully **maintained** its

3  monopoly power through its use of the KVC and DVC functions in iTunes 7.0 to stop inroads into

4  its market share by RealNetworks and other potential competitors.  Procompetitive justifications for

5  the iTunes Music Store or the iPod serve no evidentiary purpose in evaluating the legality of the

6  KVC and DVC functions, and would only needlessly and improperly confuse and distract the jury.

7       For the foregoing reasons, Plaintiffs' motion *in limine* is well-taken, and should be granted.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   IV.   **PLAINTIFFS' MOTION *IN LIMINE* NO. 4 – DECLARATIONS OF UNAVAILABLE DECLARANTS**

2

3         Plaintiffs respectfully request an *in limine* order admitting into evidence the sworn

4   declarations of four unavailable music label executives and one technology director[7] of a Portable

5   Digital Media Player company who provided information about digital rights management ("DRM")

6   and interoperability in this case.  Under Rule 45(c) of the Federal Rules of Civil Procedure, these

7   individuals are unavailable for trial as they are located outside the subpoena power of the Court.[8]

8         These declarations are relevant because three of the declarants attest that his or her label was

9   interested "in having its music sold in the widest manner possible, through as many channels as

10  possible." *See* ECF No. 815-5, Sweeney Decl., Ex. 5 (Declaration of Howie Singer, dated Dec. 22,

11  2010 ("Singer Decl.")); ECF No. 815-5, Sweeney Decl., Ex. 7 (Declaration of Amanda Marks, dated

12  Dec. 28, 2010 ("Marks Decl.")), ¶4; *see also* ECF No. 815-5, Sweeney Decl., Ex. 8 (Declaration of

13  Mark Piibe, dated Dec. 22, 2010 ("Piibe Decl.")) (same).  The declarations also show that Apple Inc.

14  ("Apple") refused the labels' request that Apple make iTunes Store music compatible with Portable

15  Digital Media Players other than the iPod.  ECF No. 815-5, Sweeney Decl., Ex. 5 (Singer Decl.);

16  ECF No. 815-5, Sweeney Decl., Ex. 6 (Declaration of Lawrence Kanusher, dated Dec. 22, 2010

17  ("Kanusher Decl.")); ECF No. 815-5, Sweeney Decl., Ex. 7 (Marks Decl.).  Further, one declarant

18  attests to how a Portable Digital Media Player company was negatively impacted by Apple's DRM-

19  encoded songs that blocked interoperability.  ECF No. 815-5, Sweeney Decl., Ex. 19 (Declaration of

20  [7]   The declarants are:  (1) Howie Singer, Senior Vice President, Strategic Technology and Chief Technology Officer for Warner Music Inc.; (2) Lawrence Kanusher, Senior Vice President, Business & Legal Affairs for the Global Digital Business Group of Sony Music Entertainment; (3) Amanda

21  Marks, Executive Vice President and General Manager of Universal Music Distribution, and formerly Senior Vice President, Universal Music Group – eLabs; (4) Mark Piibe, Executive Vice

22  President, Global Business Development of EMI Music; (5) Lee Morse, Director of Emerging Technology for Creative Labs, Inc.

23

24  [8]   Mr. Singer, Mr. Kanusher and Mr. Piibe currently work and reside in the New York City area and Ms. Marks currently works in Santa Monica, and Mr. Morse currently resides in Washington –

25  all outside of the 100-mile subpoena jurisdiction of the Court.  Plaintiffs were unable previously to depose these individuals because Apple waited until the last few weeks of discovery to produce 90

26  percent of its total document production to Plaintiffs.  Also, counsel for the third party music labels strenuously objected to having the witnesses sit for depositions. Based on the narrow period of time

27  between receipt of relevant documents and the close of fact discovery, as well as the concerns of the non-parties, it was agreed that declarations would be provided in lieu of deposition testimony and

28  document production.  Ps' MIL Ex. 7, Bernay Decl., ¶6.

1  Lee Morse, dated January 19, 2007 ("Morse Decl.")).  As such, the declarations are relevant to

2  Plaintiffs' claim that Apple's keybag verification code ("KVC") and database verification code

3  ("DVC") functions did not further any interest in protecting the integrity of DRM at the request of

4  the music labels, and in fact did not serve any purpose other than maintaining its own monopolies.

5          Plaintiffs seek to admit the declarations pursuant to the residual exception to the hearsay

6  contained in Federal Rules of Evidence ("F.R.E.") 807.  *See id.*  To qualify under the residual

7  exception, the subject statements must: (1) be supported by circumstantial guarantees of

8  trustworthiness; (2) be offered as evidence of a material fact; (3) be more probative on the point for

9  which it is offered than any other evidence the proponent can reasonably obtain; and (4) fulfill the

10 purposes of the evidence rules and the interests of justice.  *See United States v. Sanchez-Lima*, 161

11 F.3d 545, 547 (9th Cir. 1998).  For the following reasons, Plaintiffs satisfy each of these

12 requirements.

13         The declarations are supported by circumstantial guarantees of trustworthiness.  Four of the

14 declarations were executed by high-ranking executives from the world's leading music companies

15 and one of the declarations was executed by a director of a worldwide leader in digital entertainment

16 products.  Apple has had numerous opportunities to challenge the veracity of these statements,

17 including throughout summary judgment proceedings, but has chosen not to.  *See* ECF No. 537,

18 (Plaintiffs' Memorandum in Opposition to Apple's Motion for Summary Judgment, dated Feb. 28,

19 2011); ECF No. 815-1, (Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for

20 Summary Judgment and to Exclude Expert Testimony of Roger G. Noll, dated Jan. 13, 2014).

21 Further, the declarants' statements are corroborated by other admissible evidence showing that the

22 music labels favored interoperability and did not ask Apple to block the interoperability created by

23 Harmony.  *See, e.g.*, *United States v. Hall*, 165 F.3d 1095, 1110-11 (7th Cir. 1999); Ps' MIL Ex. 8,

24 Apple_AIIA00320482-84 (record labels realized that dropping DRM was the only way around

25 Apple's blocks on interoperability).

26         As noted, *supra*, Plaintiffs intend to offer the declarations as circumstantial evidence of

27 material facts, namely, that Apple's claim that the KVC and DVC functions were in any way

28 required by the labels is pretextual.

1      Finally, given the declarants' unavailability, the declarations are more probative than any

2 other evidence available to Plaintiffs.  The music industry executive declarants have substantial

3 experience in the online music industry, and each is familiar with his or her company's use of DRM

4 technology to protect digital content.  *See* ECF No. 815-5, Sweeney Decl., Ex. 5 (Singer Decl.); ECF

5 No. 815-5, Sweeney Decl., Ex. 6 (Kanusher Decl); ECF No. 815-5, Sweeney Decl., Ex. 7 (Marks

6 Decl.); ECF No. 815-5, Sweeney Decl., Ex. 8 (Piibe Decl.).  And the Morse Decl. is from the

7 Director of Emerging Technology for Creative Labs, Inc., who is familiar with the company's

8 interoperability issues.  ECF No. 815-7, Sweeney Decl., Ex. 19 (Morse Decl.).  As the declarants are

9 unavailable, the only potential for prejudice is to Plaintiffs' case should the statements not be

10 admitted.  *See, e.g.*, *Sklar v. Clough*, No. 1:06-CV-0627-JOF, 2007 U.S. Dist. LEXIS 49248, at

11 *20 (N.D. Ga. Jul. 6, 2007) (noting F.R.E. 403's strong presumption in favor of admissibility).  The

12 interests of justice, therefore, militate in favor of admission of the declarations for use at trial.  *See*

13 F.R.E. 807(a)(4).[9]

14      For the foregoing reasons, Plaintiffs respectfully request that their motion *in limine* be

15 granted and the Court allow into evidence the Declarations of Mr. Singer, Mr. Kanusher, Ms. Marks,

16 Mr. Piibe, and Mr. Morse.

17

18

19

20

21

22

23

24

25

26

---

27    [9]    The final requirement of F.R.E. 807 is that the proponent of the statement must notify the adverse party, sufficiently in advance of trial, of his intention to offer the statement. F.R.E. 807(b).
28 Plaintiffs satisfied subpart (b) when they exchanged motions *in limine* on September 30, 2014.

1    **V.    PLAINTIFFS' MOTION *IN LIMINE* NO. 5 –  CLASS CERTIFICATION**

2    Plaintiffs respectfully request an order *in limine* precluding Apple Inc. ("Apple") from

3    making at trial any statement or argument, or otherwise presenting or eliciting any evidence or

4    testimony, that directly or indirectly contradicts the Court's certification of the Plaintiff class in this

5    action.

6    Recognizing the common issues raised by Plaintiffs' Section 2 claim, Judge Ware on

7    November 22, 2011 certified a class of direct purchasers of certain iPods models.  ECF No. 694,

8    ("Class Cert. Order").  The Court explicitly rejected Apple's contention that the Class should not

9    include direct purchasers who were resellers rather than end-users:

10    As a matter of antitrust law, "when a seller overcharges a buyer . . . the fact that the
      buyer raises the price for its own product, thereby passing on the overcharge to its
11    customers and avoiding a loss in profit, has no bearing on the issue of whether the
      buyer has suffered an injury and thus has the right to recover damages from the
12    seller." *Meijer, Inc. v. Abbott Labs.*, 251 F.R.D. 431, 433 (N.D. Cal. 2008) (citing
      *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489-92 (1968)).
13    Thus, because "all class members have the right to pursue overcharge damages, they
      have the same incentive to do so, and there is no conflict among class members
14    allegedly harmed by the same antitrust violation." *Id.* at 435 (citation omitted).

15    ECF No. 694, Class Cert. Order at 7-8.  Apple also made this argument – unsuccessfully – in its

16    Rule 23(f) petition.  Ps' MIL Ex. 9, Apple 23(f) Petition at 17-20; Ps' MIL Ex. 10, Appeal Order

17    (denying Apple 23(f) petition).

18    Apple's counsel has in subsequent hearings consistently contested the Court's ruling on class

19    certification.  For example, Apple's counsel continues to assert that the Plaintiffs are not suitable

20    Class Representatives to press direct purchaser claims on behalf of direct purchaser resellers (such as

21    BestBuy) – a typicality and adequacy attack it made and lost at successive class certification

22    hearings.  ECF No. 775, Feb. 7, 2014 Hrg. Tr. at 30:3-16; *but see* ECF No. 694, Class Cert. Order at

23    7-8 (rejecting Apple's argument for the second time).  Apple's counsel also continues to assert that

24    Plaintiffs' purchases of iPods "had nothing to do with 7.0 or Harmony," and that Plaintiffs cannot

25    assert the class claims unless they "switched . . . back to iTunes" by 7.0 and were forced to "buy an

26    iPod against their will."  ECF No. 775, Feb. 7, 2014 Hrg. Tr. at 26:22-27:4.

27    When a plaintiff class is certified, the claims of the representative plaintiffs are tried on

28    behalf of the class as a whole.  Indeed, "[o]ne of the goals of class action litigation is to save the

1    resources of both the courts and the parties 'by permitting an issue potentially affecting every [class

2    member] to be litigated in an economical fashion under Rule 23.'" *Cummings v. Connell*, 402 F.3d

3    936, 944 (9th Cir. 2005). This is accomplished in part by allowing the class representative to

4    function as a "stand-in for the ***entire class***" and to assume duties on behalf of the class. *Id.* Here,

5    the Plaintiffs/Class Representatives will prove the elements of their claims on behalf of the class: (a)

6    Apple's possession of monopoly power in the relevant market; (b) Apple's willful maintenance of

7    that power; and (c) causal 'antitrust' injury. *Allied Orthopedic Appliances Inc. v. Tyco Health Care

8    Grp.*, 592 F.3d 991, 998 (9th Cir. 2010). Any argument, statement or testimony suggesting that

9    Plaintiffs are not adequate representatives is an improper collateral attack on the Court's class

10    certification order.

11        The propriety of class certification is a discretionary determination by the Court alone, and

12    plainly is not among the issues for the jury when it undertakes to resolve the disputed common

13    factual issues raised by Plaintiffs' Section 2 claim. *Gomez v. Tyson Foods, Inc.*, No. 8:08CV21,

14    2013 WL 991494, at *2 (D. Neb. Mar. 13, 2013) (granting motion *in limine* to preclude argument or

15    evidence concerning class certification, finding that defendant "should not be allowed to raise issues

16    regarding Rule 23 certification that have been determined as a matter of law"); *Lopez v. Tyson

17    Foods, Inc.*, No. 8:06CV459, 2011 U.S. Dist. LEXIS 50638, at *16 (D. Neb. May 11, 2011)

18    (granting motion *in limine* to preclude argument or evidence concerning class certification); *see also

19    Schenek v. FSI Futures Inc.*, No. 94 Civ. 6345(CSH), 1998 U.S. Dist. LEXIS 11562, at *11

20    n.6 (S.D.N.Y. July 28, 1998) ("the question whether to certify a class is one of law, resting in the

21    district court's discretion"). Accordingly, statements, argument or testimony by Apple questioning

22    the propriety of class certification before the jury would be improper, irrelevant to the issues to be

23    resolved by the fact finder, and a surefire source of jury confusion. This includes in particular

24    Plaintiffs' satisfaction of the typicality and adequacy elements under Fed. R. Civ. P. 23(a).

25        Any contention by Apple that it is entitled to a jury determination of class certification

26    prerequisites flies in the face of the position it advanced in support of its petition seeking permission

27    under Fed. R. Civ. P. 23(f) to appeal the class certification order. There, Apple argued that "district

28    courts ***must resolve disputed factual issues pertinent to Rule 23's requirements at the class

1   ***certification stage***, and that courts must examine not only the plaintiffs' expert's testimony but the

2   evidence refuting that testimony as well."  Ps' MIL Ex. 11, Reply Brief in Support of Apple 23(f)

3   Petition at 4.  In short, any and all issues bearing on the propriety of class certification were fully

4   briefed, argued and determined during the protracted class certification stage of this litigation, and

5   those issues are not properly revisited again before the jury at trial.

6        For the foregoing reasons, Plaintiffs' motion *in limine* is well-taken, and Apple should be

7   precluded from making at trial any statement or argument, or otherwise presenting or eliciting any

8   evidence or testimony, that directly or indirectly contradicts the Court's certification of the plaintiff

9   class in this action.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VI.    **PLAINTIFFS' MOTION *IN LIMINE* NO. 6 – NO SUIT BY REALNETWORKS, INC.**

Plaintiffs respectfully request an order *in limine* pursuant to Rule 403 of the Federal Rules of Evidence ("F.R.E.") precluding Apple Inc. ("Apple") from making at trial any statement or argument, or otherwise presenting or eliciting any evidence or testimony, concerning the failure of its acknowledged competitor, RealNetworks, Inc. ("RealNetworks"), to sue Apple over its alleged anticompetitive behavior.

At the Case Management Conference, the Court asked whether RealNetworks was a party to this action.  ECF No. 775, Feb. 7, 2014 Hrg. Tr. at 5:14-22.  Apple may in this case attempt to exploit the same curiosity in the minds of the jurors, by suggesting to them, directly or indirectly, that if Apple's conduct were truly anticompetitive, RealNetworks would be present in Court as a plaintiff.  The presence or absence of a lawsuit by RealNetworks is irrelevant to Apple's Section 2 liability to direct purchasers like Plaintiffs and the Class, who have separate standing to recover for their antitrust injuries regardless of whether Apple's competitors have chosen to do so.  *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745-46 (1977) (direct purchasers stand in "a preferred position as private attorneys general" to enforce the antitrust laws); *In re Industrial Gas Antitrust Litig.*, 681 F.2d 514, 520 (7th Cir. 1982) ("An appropriate balance is achieved by granting standing only to those who, as consumers or competitors, suffer immediate injuries with respect to their business or property, while excluding persons whose injuries were more indirectly caused by the antitrust conduct. It is this select class of plaintiffs that can impose the deterrent sting of treble damages at the smallest cost of enforcement.").  Suggesting otherwise would also generate an unnecessary and unfair risk of confusion to the jury.

Even as a general matter, evidence or argument premised on a potential claimant's failure to sue is inadmissible under F.R.E. 401 and 403.  *See, e.g.*, *Bishop v. Children's Ctr. for Developmental Enrichment*, No. 2:08-CV-766, 2011 U.S. Dist. LEXIS 147832, at *2 (S.D. Ohio Dec 22, 2011) (granting motion *in limine*).  The same reasoning precludes a defendant from commenting on a plaintiffs' decision not to sue other potential defendants.  *See, e.g.*, *Buckman v. Bombardier Corp.*, 893 F. Supp. 547, 557 (E.D.N.C. 1995) (precluding as irrelevant mention of other parties that the

1    plaintiff could have sued); *Allstate Fin. Corp. v. Utility Trailer*, No. 92 C 3477, 1995 U.S. Dist.

2    LEXIS 7917, at *9 (N.D. Ill. June 8, 1995) (precluding evidence about the decision not to sue a

3    potential defendant because this issue was of "very marginal relevance, as Plaintiff may have had

4    numerous reasons not to sue" and would "needlessly confuse the jury by creating a sideshow at

5    trial").

6          The same reasoning applies here as well:  whether or why RealNetworks decided not to sue

7    Apple has no bearing on whether Plaintiffs and the other Class members – who have independent

8    standing to sue – paid supracompetitve prices for their iPods during the class period.  For the

9    foregoing reasons, Plaintiffs' motion *in limine* to preclude Apple from referencing any lack of suit

10   by RealNetworks is well-taken, and should be granted.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## VII.    PLAINTIFFS' MOTION *IN LIMINE* NO. 8 – TREBLE DAMAGES AND ATTORNEYS' FEES AND COSTS

3

Plaintiffs respectfully request an order *in limine* excluding references to, and evidence of, the

4

ability of Plaintiffs to seek treble damages and attorneys' fees and costs.  These subjects bear no

5

relevance upon the issues at trial and to hold otherwise would prejudicially affect plaintiffs. Such

6

evidence should not be within the purview of the jury and should be excluded from trial.

7

In the Ninth Circuit, "[t]he majority rule is that it is error for a court to instruct a jury that it

8

will subsequently treble any damages the jury awards."  *Brooks v. Cook*, 938 F.2d 1048, 1052 (9th

9

Cir. 1991).  References to treble damages are inappropriate because of the "justifiable fear of anti-

10

trust plaintiffs . . . that the juries will adjust the damage award downward or find no liability,

11

therefore thwarting Congress's purpose, because of some notions of a windfall to the plaintiff."  *Id.*

12

Moreover, "it is not for the jury to determine the amount of a ***judgment***.  Its function is to compute

13

the amount of ***damages***. . . .  The fact that the awarded amount will be tripled has no relevance in

14

determining the amount a plaintiff was injured by the anti-trust violation."  *Id.*

15

As with references to treble damages, "[i]n a case where the plaintiff is entitled to

16

compensatory damages, informing the jury of the plaintiff's potential right to receive attorneys' fees

17

might lead the jury to offset the fees by reducing the damage award."  *Id.* at 1051.  Because of this

18

prejudicial effect, courts regularly grant similar motions to exclude references to, or evidence of,

19

attorneys' fees and costs.  *See, e.g.*, *In re Tableware Antitrust Litig.*, No. C-04-3514 VRW, 2007

20

U.S. Dist. LEXIS 21243, at *9 (N.D. Cal. Mar. 2007) ("In antitrust actions, 'courts have uniformly

21

concluded that mentioning treble damages and attorney[] fees to the jury is improper."); Ps' MIL Ex.

22

13, *SRAM*, Order on Motions In Limine and for Pre-Trial Preparation at 6; Ps' MIL Ex. 12, *Flat

23

Panel*, Final Pretrial Scheduling Order at 4.[10]

24

For the reasons stated herein, Plaintiffs respectfully request that this Court exclude reference

25

to, or evidence of, the ability of Plaintiffs to seek treble damages and attorneys' fees and costs.

26

---

27

[10]    *See also HBE Leasing Corp v. Frank*, 22 F.3d 41, 46 (2d Cir. 1994) (collecting "cornucopia" of case law, and stating that "[i]n that context [of antitrust violations] as well, courts have uniformly concluded that mentioning treble damages and attorneys['] fees to the jury is improper").

28

1  **VIII.   PLAINTIFFS' MOTION *IN LIMINE* NO. 9 – DISMISSED CLAIMS**

2          Plaintiffs respectfully request an order *in limine* precluding Apple Inc. ("Apple") from

3  making at trial any statement or argument, or otherwise presenting or eliciting any evidence or

4  testimony, relating to any antitrust claims, including the Court's rulings on those claims, other than

5  the Section 2 claim being presented to the jury.

6          In addition to their claims under Section 2 of the Sherman Act (15 U.S.C. §2), Plaintiffs

7  previously asserted:  (1) a Section 1 (15 U.S.C. §1) tying claim; (2) a Section 2 claim relating to

8  Apple's iTunes 2004 product design (4.7); and (3) certain state law claims.  Judge Ware dismissed

9  Plaintiffs' Section 1 tying claim, and some of the state law claims and later granted Apple summary

10  judgment on Plaintiffs' Section 2 claim relating to iTunes 4.7.  ECF No. 627.  However, in doing so,

11  Judge Ware found disputed issues of fact precluded him from reaching the same conclusion as a

12  matter of law as to iTunes 7.0. *Id.*[11]

13          Any reference by Apple to Plaintiffs' prior claims (or to the Court's disposition of those

14  claims) is irrelevant and can serve no purpose at trial other than to confuse and unfairly prejudice the

15  jury.  Courts routinely grant motions *in limine* under Federal Rules of Evidence ("F.R.E.") 401 and

16  403 precluding reference to earlier dismissed claims, typically without opposition or discussion.[12]

17          For example, in *Wheeler v. Lynn*, No. 4:10-CV-00966-DGK, 2012 WL 2994270 (W.D. Mo.

18  July 20, 2012), the defendants moved *in limine* to preclude reference to the court's prior rulings,

19  concerned that the plaintiff might inform the jury of the court's denial of the defendants' summary

20  _____

21  [11]    As part of iTunes 7.0, Apple included certain other technological functions, such as the ability to play videos on certain versions of the iPod.  Because Plaintiffs do not challenge those aspects of

22  iTunes 7.0 as anticompetitive, Plaintiffs have separately moved *in limine* to preclude statements to the jury defending the procompetitive nature of those unchallenged aspects.  *See* "Plaintiffs' Motion

23  *In Limine* No. 3: Unchallenged Aspects."  The same goes for purported procompetitive justifications for Apple's 4.7 upgrade, the legality of which Plaintiffs cannot and will not challenge at trial in light

24  of Judge Ware's summary judgment ruling.  *Id.*

25  [12]    *See, e.g.*, *Fontana v. City of Fed. Way*, No. C11-998 RAJ, 2014 U.S. Dist. LEXIS 6799, at *2 (W.D. Wash. Jan. 17, 2014) (granting motion to exclude references to previously dismissed claims);

26  *Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 2:11-CV-1857 (DMC) (JAD), 2013 U.S. Dist. LEXIS 132889, at *11-*12 (D.N.J. Sept. 16, 2013) (same); *Tompkins v. Eckerd*, Civ. A. No. 8:09-

27  02369-JMC, 2012 WL 1110069, at *3 (D.S.C. Apr. 3, 2012) (same); *Williams v. Hooker*, No. 4:02CV01250 ERW, 2008 U.S. Dist. LEXIS 40313, at *8 (E.D. Mo. May 19, 2008) (same); *Gomez*

28  *v. Daig Corp.*, Civ. A. No. 00-0754, 2004 WL 5503782, at *1 (E.D. La. Feb. 5, 2004) (same).

1    judgment ruling.  *Id.* at *1.  The court granted the motion with "sauce for the goose, sauce for the

2    gander" equanimity:  "The Court notes its previous rulings are legal determinations which are

3    irrelevant to the issues the jury will be asked to decide. Consequently, the parties shall not make any

4    reference to the Court's previous rulings or orders."  *Id.* at *2.  The defendants similarly moved *in*

5    *limine* to exclude reference to the plaintiffs' claims previously dismissed by the court, which the

6    court similarly granted:  "Again, the fact that Plaintiff brought claims that have since been dismissed

7    is irrelevant to the issues the jury will be asked to decide.  Accordingly, the parties shall make no

8    reference to any previously dismissed claims."  *Id.*; *accord Bell v. Bryant*, No. 08-0456-CV-W-

9    DGK, 2012 U.S. Dist. LEXIS 186952, at *2 (W.D. Mo. July 24, 2012).

10        Likewise, in *Heriges v. Wilson Cty.*, No. 3:09-cv-0362, 2010 U.S. Dist. LEXIS 111327, at

11   *36 n.7 (M.D. Tenn. Oct. 19, 2010), the court refused to permit evidence of dismissed prior claims.

12   In rejecting defendants' contention that such claims weighed on plaintiff's credibility, the court

13   noted that "[i]t is well settled that a plaintiff, acting in good faith, is permitted to plead, at the outset,

14   multiple and even alternative claims and to allow the discovery process to sort out which claims, if

15   any, have merit."  *Id.*  Because the dismissed claims were not asserted in bad faith, the court found

16   that evidence of such claims should be excluded as it had no impact on plaintiff's credibility and

17   would have "distracted the jury from the task at hand."  *Id.*[13]

18        The same rationale expressed in *Wheeler* and *Heriges* applies here to Plaintiffs' earlier

19   resolved Section 1 and 2 claims that will ***not*** be tried before the jury this November; those claims

20   and rulings are utterly irrelevant to the issues that jury will be asked to decide.[14]

21

---

22   [13]   *Accord Bryce v. Trace, Inc.*, No. CIV-06-775-D, 2008 U.S. Dist. LEXIS 27310, at *6 (W.D.
     Okla. Mar. 31, 2008) (granting motion to exclude references to claims resolved by summary
23   judgment or voluntarily dismissed, noting that "shielding such matters from the jury is common
     practice"); *Moore v. Bannon*, No. 10-12801, 2012 U.S. Dist. LEXIS 81740, at *22 (E.D. Mich. June
24   13, 2012) (concluding that dismissal of some claims and a defendant on summary judgment "is a
     normal occurrence that can be shielded from the jury" and that filing multiple or alternative claims
25   that were dismissed as a matter of law "is a manifestation of proper pleading procedures" (citing
     *Heriges* and *Bryce*)).
26

27   [14]   The rationale for exclusion also applies with no less force to the assertion and disposition of the
     indirect purchaser claims in the once-related case of *Somers v. Apple, Inc.*, No. C 07-06507 JW,
28   2011 U.S. Dist. LEXIS 77165 (N.D. Cal. Jun 27, 2011).

1    Given the lack of relevance and the needless risk of confusing the jury, Plaintiffs' motion is

2    well-taken under F.R.E. 401 and 403.  Apple should be precluded from making at trial any statement

3    or argument, or otherwise presenting or eliciting any evidence or testimony or argument, relating to

4    the assertion and disposition of claims not at issue in this trial.

5    DATED:  October 14, 2014                    Respectfully submitted,

6                                                ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
7                                                BONNY E. SWEENEY
                                                 ALEXANDRA S. BERNAY
8                                                PATRICK J. COUGHLIN
                                                 CARMEN A. MEDICI
9                                                JENNIFER N. CARINGAL

10

11                                                      s/ Bonny E. Sweeney
                                                 BONNY E. SWEENEY
12
                                                 655 West Broadway, Suite 1900
13                                               San Diego, CA  92101
                                                 Telephone:  619/231-1058
14                                               619/231-7423 (fax)

15                                               Class Counsel for Plaintiffs

16                                               BONNETT, FAIRBOURN, FRIEDMAN
                                                   & BALINT, P.C.
17                                               ANDREW S. FRIEDMAN
                                                 FRANCIS J. BALINT, JR.
18                                               ELAINE A. RYAN
                                                 2325 E. Camelback Road, Suite 300
19                                               Phoenix, AZ  85016
                                                 Telephone:  602/274-1100
20                                               602/274-1199 (fax)

21                                               THE KATRIEL LAW FIRM
                                                 ROY A. KATRIEL
22                                               1101 30th Street, N.W., Suite 500
                                                 Washington, DC  20007
23                                               Telephone:  202/625-4342
                                                 202/330-5593 (fax)

24
                                                 BRAUN LAW GROUP, P.C.
25                                               MICHAEL D. BRAUN
                                                 10680 West Pico Blvd., Suite 280
26                                               Los Angeles, CA  90064
                                                 Telephone:  310/836-6000
27                                               310/836-6010 (fax)

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GLANCY BINKOW & GOLDBERG LLP
BRIAN P. MURRAY
122 East 42nd Street, Suite 2920
New York, NY  10168
Telephone:  212/382-2221
212/382-3944 (fax)

GLANCY BINKOW & GOLDBERG LLP
MICHAEL GOLDBERG
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)

Additional Counsel for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 14, 2014.

<u>s/ Bonny E. Sweeney</u>
BONNY E. SWEENEY

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:     bonnys@rgrdlaw.com

976864_1

## Mailing Information for a Case 4:05-cv-00037-YGR The Apple iPod iTunes Anti-Trust Litigation

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amir Q Amiri**
  aamiri@jonesday.com,ttualaulelei@jonesday.com

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com,LMix@rgrdlaw.com,TJohnson@rgrdlaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Jennifer N. Caringal**
  JCaringal@rgrdlaw.com

- **Todd David Carpenter**
  Todd@Carpenterlawyers.com

- **Patrick J. Coughlin**
  PatC@rgrdlaw.com,SusanM@rgrdlaw.com,e_file_sd@rgrdlaw.com,SJodlowski@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **John F. Cove , Jr**
  jcove@bsfllp.com,kmurphy@bsfllp.com,dnasca@bsfllp.com,sphan@bsfllp.com

- **Meredith Richardson Dearborn**
  mdearborn@bsfllp.com,cseki@bsfllp.com

- **Karen Leah Dunn**
  kdunn@bsfllp.com

- **Andrew S. Friedman**
  khonecker@bffb.com,rcreech@bffb.com,afriedman@bffb.com

- **Martha Lea Goodman**
  mgoodman@bsfllp.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com,winkyc@zhlaw.com

- **William A. Isaacson**
  wisaacson@bsfllp.com,jmilici@bsfllp.com

- **Roy Arie Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com

- **Carmen Anthony Medici**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,mlandsborough@jonesday.com,pwalter@jonesday.com

- **Brian P. Murray**
  bmurray@glancylaw.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Elaine A. Ryan**
  eryan@bffb.com,nserden@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Michael Tedder Scott**
  mike.scott@dlapiper.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **Bonny E. Sweeney**
  bonnys@rgrdlaw.com,slandry@rgrdlaw.com,E_file_sd@rgrdlaw.com,ckopko@rgrdlaw.com

- **Helen I. Zeldes**
  helenz@zhlaw.com,winkyc@zhlaw.com,aarono@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)