ROBBINS GELLER RUDMAN
 & DOWD LLP
BONNY E. SWEENEY (176174)
ALEXANDRA S. BERNAY (211068)
PATRICK J. COUGHLIN (111070)
CARMEN A. MEDICI (248417)
JENNIFER N. CARINGAL (286197)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
bonnys@rgrdlaw.com
xanb@rgrdlaw.com
patc@rgrdlaw.com
cmedici@rgrdlaw.com
jcaringal@rgrdlaw.com

Class Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTITRUST LITIGATION )<br>)<br>)<br>This Document Relates To: )<br>)<br>ALL ACTIONS. )<br>) | Lead Case No. C-05-00037-YGR<br><br>CLASS ACTION<br><br>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT APPLE'S MOTIONS *IN LIMINE* NOS. 1-3 AND TO EXCLUDE AND STRIKE EVIDENCE<br><br>Date:           October 29, 2014<br>Time:          9:30 a.m.<br>Courtroom: 1, 4th Floor<br>Judge:        Hon. Yvonne Gonzalez Rogers<br><br>Trial Date:  November 17, 2014<br>Time:         8:30 a.m. |

976883_1

# TABLE OF CONTENTS

**Page**

I.    PLAINTIFFS' OPPOSITION TO APPLE'S MOTION *IN LIMINE* NO. 1 ........................1

II.   PLAINTIFFS' OPPOSITION TO APPLE'S MOTION *IN LIMINE* NO. 2 ........................5

      A.    Dr. Martin's Opinions Are Probative of Pretext.........................................................5

      B.    Plaintiffs' Experts' Opinions Are Probative of Willful Misconduct .......................7

III.  PLAINTIFFS' OPPOSITION TO APPLE'S MOTION *IN LIMINE* NO. 3 ........................9

      A.    Plaintiffs Are Not Seeking to Re-Litigate 4.7............................................................9

      B.    Evidence Regarding Lack of Interoperability Is Highly Relevant.........................11

976883_1

PLTFFS' MEMO OF POINTS & AUTHORITIES IOT DEFENDANT APPLE'S MOTIONS IN LIMINE NOS. 1-3 AND TO EXCLUDE AND STRIKE EVIDENCE - C-05-00037-YGR   - i -

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
　592 F.3d 991 (9th Cir. 2010) ................................................................................2, 6, 7, 8

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
　472 U.S. 585 (1985)..............................................................................................1, 2, 6

*Cascade Health Solutions v. PeaceHealth*,
　515 F.3d 883 (9th Cir. 2008) ......................................................................................1

*Culbertson v. Freightliner Corp.*,
　50 F. Supp. 2d 998 (D. Nev. 1999).............................................................................4

*Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*,
　642 F.3d 728 (9th Cir. 2011) ......................................................................................7

*Eastman Kodak Co. v. Image Technical Servs., Inc.*,
　504 U.S. 451 (1992)............................................................................................1, 7, 11

*Guillory v. Tilton*,
　No. CV-07-0775-ROS (PC), 2012 U.S. Dist. LEXIS 86383
　(E.D. Cal. June 20, 2012).........................................................................................12

*Image Technical Servs., Inc. v. Eastman Kodak Co.*,
　125 F.3d 1195 (9th Cir. 1997) ....................................................................................5

*Image Technical Serv., Inc. v. Eastman Kodak Co.*,
　903 F.2d 612 (9th Cir 1990), *aff'd*, 504 U.S. 451(1992) .........................................7, 8

*In re Apple iPod iTunes Antitrust Litig.*,
　796 F. Supp. 2d 1137 (N.D. Cal. 2011) ......................................................................2

*In re High-Tech Emp. Antitrust Litig.*,
　No. 11-cv-02509-LHK, 2014 U.S. Dist. LEXIS 47181
　(N.D. Cal. Apr. 4, 2014) .............................................................................................4

*Kranson v. Fed. Express Corp.*,
　No. 11-CV-05826-YGR, 2013 U.S. Dist. LEXIS 154473
　(N.D. Cal. Oct 28, 2013)............................................................................................7

*Morgan v. Hilti*,
　108 F.3d 1319 (10th Cir. 1997) ..................................................................................7

976883_1

PLTFS' MEMO OF PS & AS IOT APPLE'S MILS NOS. 1-3 & TO EXCLUDE & STRIKE EVIDENCE OR ARGUMENT THAT APPLE COULD HAVE OR SHOULD HAVE AIDED THIRD-PARTY PRODUCTS - C-05-00037-YGR                - ii -

**Page**

*Novell, Inc. v. Microsoft Corp.*,
    No. 2:04-CV-01045-JFM, 2012 U.S. Dist. LEXIS 98710
    (D. Utah Jul 16, 2012),
    *aff'd on other grounds*, 731 F.3d 1064 (10th Cir. 2013) ........................................................5, 6

*United States v. Griffith*,
    334 U.S. 100 (1948)..............................................................................................................1

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ..............................................................................................1, 8

*United States v. Skillman*,
    922 F.2d 1370 (9th Cir. 1990) .................................................................................................12

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §2................................................................................................................................. *passim*

Federal Rules of Evidence
    Rule 401 ..................................................................................................................................10
    Rule 402 ..................................................................................................................................10
    Rule 403 ...............................................................................................................................4, 10

976883_1

PLTFFS' MEMO OF POINTS & AUTHORITIES IOT DEFENDANT APPLE'S MOTIONS IN LIMINE
NOS. 1-3 AND TO EXCLUDE AND STRIKE EVIDENCE - C-05-00037-YGR             - iii -

### I. PLAINTIFFS' OPPOSITION TO APPLE'S MOTION *IN LIMINE* NO. 1

Apple's Motion *in limine* No. 1 to exclude and strike ("MIL/MTS No. 1") is an untimely *Daubert* motion seeking to exclude selected expert testimony of Plaintiffs' technology expert Dr. David Martin and Plaintiffs' economics expert Professor Roger Noll under the legal principle that a monopolist "generally" has no **duty** to share its intellectual property with a rival. ECF No. 804 No. 1 at 4-5. That general principle pervaded Apple's first motion for summary judgment, which the Court denied as to the challenged features of Update 7.0. *See* ECF No. 627. This case has accordingly moved well past the general principle invoked by Apple, and is now focused instead on whether Apple's **affirmative actions** of blocking interoperability by adding the keybag verification code ("KVC") and database verification code ("DVC") functions constituted "willful misconduct" under Section 2 of the Sherman Act. ECF No. 627 at 11-12.

Section 2's willfulness element comprises actions taken "'to foreclose competition, to gain competitive advantage, or to destroy a competitor.'" *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 482-83 (1992) (quoting *United States v. Griffith*, 334 U.S. 100, 107 (1948)); *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001). "If a firm has been 'attempting to exclude rivals on some basis other than efficiency,' it is fair to characterize its behavior as predatory." *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 (1985);[1] *accord*, *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008) ("Anticompetitive conduct is behavior that tends to impair the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way.") (citing *Aspen Skiing*, 472 U.S. at 605 n.32). Evidence that a monopolist's conduct has caused anticompetitive effect moves the inquiry to the existence and validity of any "'valid business reasons'" that might justify the conduct. *Eastman Kodak*, 504 U.S. at 483; *Aspen Skiing*, 472 U.S. at 608-10.

Here the challenged opinions of Dr. Martin and Professor ("Prof.") Noll are offered not to show that Apple had a legal duty to assist third-parties in making their products interoperable with the iPod, but rather to show (a) that KVC and DVC are not "genuine product improvements," and (b)

---

[1] Citations and footnotes are omitted and emphasis is added unless otherwise noted.

that Apple's proffered business justification for adding KVC and DVC is not valid, but rather *post hoc* and purely pretextual. *In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1146 (N.D. Cal. 2011) ("At issue is whether Defendant's introduction of iTunes 7.0 constituted a genuine improvement."); *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998-99 (9th Cir. 2010) (changes in product design that provide no new benefit to consumers may constitute an unlawful means of maintaining a monopoly); *Aspen Skiing Co.*, 472 U.S. at 602 (evidence of intent is relevant to whether a conduct is anticompetitive).

For example, Apple claims that KVC and DVC were added to prevent purported playback problems on the iPod caused by the "injection" of foreign music files. ECF No. 627 at 12. Dr. Martin explains that the purported "fix" afforded by KVC and DVC was inconsistent with – and yielded results far worse than – the purported problem; in other words, if Apple genuinely wished to address the problems it now claims prompted it to add KVC and DVC, it could have done so through a number of far more feasible, effective and efficient means. *See* ECF No. 815-5 (4/8/13 Expert Report of David Martin) at Page 42, ¶¶107-111. Dr. Martin also specifically responds to the contentions of Apple's witnesses that Apple's sharing technical information with RealNetworks "would have made FairPlay substantially less secure" because of the possibility of attacks against RealNetworks and RealPlayer/Harmony in addition to the possibility of attacks against Apple and its products. *Id*. at Page 17-21, ¶¶43-48 (explaining why shared technological information posed no threat to security of FairPlay encrypted songs). The same is true for Apple's contention that shared technical data "constituted a risk to the proper functioning of the iPod." *Id.* at Pages 26, 43, ¶¶62; 69-70; 112(6), (7) & (10). Dr. Martin's challenged opinions thus directly address both Plaintiffs' pretext contention and Apple's own infeasibility arguments. Nowhere in the portions of his report cited by Apple does Dr. Martin opine or otherwise suggest that Apple had a duty to aid its competitors.

Prof. Noll's testimony similarly addresses, from an economic perspective, Apple's far-fetched affirmative defense that the steps Apple took to reduce *existing* interoperability could somehow be deemed a procompetitive business justification. *See* ECF No. 813-3 (4/3/13 Declaration of Professor Roger G. Noll ("Noll Decl.")) at Pages 99-104; *see, e.g.*, *id.* at Page 104

("When consumers are given the choice, most prefer products that do not lock them in to a single vendor for multiple products."). Like Dr. Martin, Prof. Noll nowhere opines or otherwise suggests that Apple had a duty to create interoperability; instead, he responds to Apple's contention that maintaining existing compatibility was infeasible. Indeed, as Prof. Noll points out, RealNetworks managed to produce the Harmony DRM-translator software and keep it operating for months without Apple's cooperation:

> Apple's claim that *maintaining* compatibility would require cooperation with its competitors requires a technical analysis of the software upgrades that Apple used to prevent iPods from playing audio recordings that were acquired from Internet vendors that competed with iTS. The problem with this claim is that RealNetworks managed to produce Harmony and to keep it operating during two periods, one lasting more than a year, *without* cooperation from Apple.

ECF No. 813-3, Noll Decl. at Page 101.

In his other testimony challenged by Apple (ECF No. 804 at 4-5), Prof. Noll provides the background for his "lock in" theory addressed by the Court in its September 26, 2014 Order (ECF No. 788) denying Apple's motion for summary judgment on antitrust impact and damages. *See* ECF No. 813-3, Noll Decl. at Page 46 ("Because Apple chose not to license FairPlay and not to permit downloads from other Internet sites to play on an iPod, Apple's customers also were locked in to both iTS for downloads and iPods for players."); *id.* at Page 48 ("Likewise, iTunes cannot convert WMA or RealAudio DRM-protected files into a format that can be played by an iPod. During the class period audio files in each of the latter two formats could be played on several brands of portable digital media players. Thus, iTunes played an essential role in maintaining technical incompatibility between the defendant's products and competing products in the relevant markets."). Once again, Prof. Noll is addressing the consequences of Apple's action, not opining that Apple had any sort of duty to deal with its rivals.

Because neither Plaintiffs nor their experts contend Apple had a duty to aid or assist third-party competitors, the entire line of case law invoked by Apple is inapposite. ECF No. 804 1 at 5. Likewise sorely misguided is Apple's "law of the case" argument, because Judge Ware in denying summary judgment as to the challenged Update 7.0 features obviously did not rule that the addition of KVC and DVC increased competition as a matter of law. ECF No. 627 at 12-13 ("In light of the

parties' conflicting evidence, the Court finds that it is unable to determine, as a matter of law, that iTunes 7.0 was introduced to guard against the risk of corruption and was therefore a genuine product improvement. Thus, the Court finds that Defendant is not entitled to summary judgment on Plaintiffs' Section 2 claim as to iTunes 7.0.").

Equally unavailing is Apple's argument that Martin Report, ¶69 and ¶112(6) constitute "speculation" that runs the risk of misleading the jury under Fed. R. Evid. 403. ECF No. 804 at 6. Expert testimony of feasible alternatives is not inadmissible speculation. *See, e.g.*, *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509-LHK, 2014 U.S. Dist. LEXIS 47181, at *86-*87 (N.D. Cal. Apr. 4, 2014) (expert's opinion that included analysis on alternatives available to high-tech employees and high-tech employers in the market was not excludable). Apple's citation to *Culbertson v. Freightliner Corp.*, 50 F. Supp. 2d 998, 1000 (D. Nev. 1999) is particularly inapt; there the court excluded expert testimony as to the cause of an alleged defect as unreliable under *Daubert*, where the expert offered no more than his opinion on how one might cure a defect that he assumed, but never showed, to exist. *Culbertson* has no significance here, other than perhaps to underscore that Apple's MIL/MTS No. 1 is at best an untimely *Daubert* challenge.

In sum, Apple's motion is a disguised attempt to prevent Plaintiffs from rebutting Apple's business justification defense through evidence that Apple's reasons for implementing KVC and DVC were pretextual and that Apple's product design change was not a genuine improvement. The Court should therefore deny Apple's motion.[2]

---

[2] Should the Court grant Apple's motion to strike references that Apple "could have or should have taken steps to aid third parties in developing products that are interoperable with iPods," it should in fairness also bar Apple from introducing this evidence as well as strike Apple's experts' opinions on the same issue: that is, Ex. 1, Declaration of John P. Kelly in Support of Defendant's Renewed Motion for Summary Judgment, ¶¶34-40; Ex. 2, Expert Report of John P. Kelly, ¶¶75-166; and Ex. 3, Expert Report of Kevin Murphy, ¶¶34-61. Plaintiffs have identified these portions with red text boxes in the Exhibits attached to the Declaration of Bonny E. Sweeney, filed concurrently. All references to "Ex." are to the exhibits attached thereto.

## II. PLAINTIFFS' OPPOSITION TO APPLE'S MOTION *IN LIMINE* NO. 2

Defendant Apple's Motion *in Limine* No. 2 (ECF No. 804 at 7-9) ("MIL/MTS No. 2") to strike certain opinions of Plaintiffs' technology expert Dr. Martin and Plaintiffs' economics expert Prof. Roger Noll is based entirely on the mistaken premise that those opinions are offered in support of an argument that Plaintiffs do not make: that Apple had an affirmative duty to make its products interoperable as a "less restrictive alternative" to the challenged functions of Update 7.0. *See* Plaintiffs' Opposition to Apple MIL/MTS No. 1. For that reason, and the additional reasons that follow, Apple's MIL/MTS No. 2 should be denied in its entirety.

### A. Dr. Martin's Opinions Are Probative of Pretext

Plaintiffs contend that through Update 7.0 Apple in September 2006 installed a software function KVC that effectively prevented legally purchased DRM-protected digital music files from playing on new generations of its iPod portable digital players unless that DRM music was purchased from Apple. At the same time, Apple installed another, so-called "dormant" function DVC that, when activated, effectively wiped all legally purchased digital music files off the iPod unless those files were purchased from Apple or managed using Apple's iTunes jukebox application, whether or not the music files were DRM-protected.

Apple argues that its installation of the KVC and DVC booby-traps was supposedly prompted by customer complaints of difficulties or bugs encountered when playing music legally acquired from other sources (such as from RealNetworks) on their iPods. ECF No. 627 at 11-12 ("'Defendant contends that iTunes 7.0 included improvements to FairPlay that prevented third-party applications from corrupting the iPod by "injecting" content onto its internal database.'"). Apple accordingly asserts as an affirmative defense that its need to fix such playback bugs constitutes a "legitimate business reason" for its addition of KVC and DVC.

Plaintiffs contend that Apple's claimed justifications are purely pretextual. *Image Technical Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1219 (9th Cir. 1997) ("Neither the aims of intellectual property law, nor the antitrust laws justify allowing a monopolist to rely upon a pretextual business justification to mask anticompetitive conduct."); *see, e.g.*, *Novell, Inc. v. Microsoft Corp.*, No. 2:04-CV-01045-JFM, 2012 U.S. Dist. LEXIS 98710, at *31 (D. Utah Jul 16,

2012) (finding evidence of single contradictory email sufficient to support jury finding of pretext under Section 2), *aff'd on other grounds*, 731 F.3d 1064 (10th Cir. 2013). Plaintiffs intend to show that Apple's design change provided no new benefit to consumers, and did not constitute a genuine product improvement. *Allied Orthopedic*, 592 F.3d at 998-99 (changes in product design that provide no new benefit to consumers may constitute an unlawful means of maintaining a monopoly); ECF No. 627 at 11 ("At issue is whether Defendant's introduction of iTunes 7.0 constituted a genuine improvement."). *See also Aspen Skiing*, 472 U.S. at 602.

Plaintiffs will prove pretext and lack of consumer benefit by showing, among other things, that the "fix" provided by KVC and DVC – *i.e.*, effectively eliminating iPod playback of legally purchased non-iTunes music altogether – was fundamentally ***inconsistent*** with the purported problem, and indeed lead to a result ***far worse than*** the purported playback bugs it supposedly addressed. In other words, if it were genuinely concerned about remedying the purported playback bugs, Apple would have taken steps that actually fixed the purported problem. Demonstrating this inconsistency is exactly the purpose of Dr. Martin's challenged testimony describing, as a computer expert, the ways that the problems supposedly encountered by iPod users before September 2006 could have been remedied if Apple had genuine concern for a seamless user experience. *See* ECF No. 815-5 at Page 42, §VII.[3]

Helpful guidance in the matter of proving pretext in the antitrust context can be found in federal discrimination jurisprudence. *Novell*, 2012 U.S. Dist. LEXIS 98710, at *31 ("Fact-finders are frequently called upon to answer this question of pretext, particularly in the field of employment discrimination law."). "Pretext can be shown by such "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and hence infer that the

---

[3]   Dr. Martin makes clear that in §VII at Page 107, he is responding specifically to the fact that "Apple points to possible bugs in third-party applications as a justification for" adding KVC and DVC. ECF No. 815-5 at Page 107, ¶107. He explains that good practice compels Apple to design for robustness (rather than failure) in fixing the purported playback bugs, which is exactly what Apple has by contrast done elsewhere in its source code. *Id*. at Page 107, ¶¶108-109. If Apple genuinely intended to address the bugs, it could also publish sufficient technical information to allow other legal music sellers to take their own steps to avoid the bugs purportedly driving Apple's action. *Id*. at Page 107, ¶111.

1 employer did not act for the asserted non-discriminatory reasons.'"" *Morgan v. Hilti*, 108 F.3d
2 1319, 1323 (10th Cir. 1997); *accord, Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d
3 728, 746 (9th Cir. 2011) (citing same standard); *see, e.g.*, *Kranson v. Fed. Express Corp.*, No. 11-
4 CV-05826-YGR, 2013 U.S. Dist. LEXIS 154473, at *3 (N.D. Cal. Oct 28, 2013) (applying same
5 standard to proof of pretext in age discrimination case, and noting that jury is not required to believe
6 defendant's witnesses at trial as to defendant's intent).

7 Apple cites no case suggesting Plaintiffs cannot use evidence of inconsistency between the
8 purported problem and purported fix to discredit Apple's justification and prove pretext. To the
9 contrary, the very cases cited by Apple distinguish between proof of pretext and proof of less
10 restrictive alternatives. In *Image Technical Serv., Inc. v. Eastman Kodak Co.*, 903 F.2d 612 (9th Cir
11 1990), *aff'd*, 504 U.S. 451 (1992), for example, Kodak's first proffered business justification in
12 defense of plaintiffs' Section 2 claim was that its actions were necessary "[t]o guard against
13 inadequate service, which reflects negatively on Kodak because customers cannot differentiate
14 between bad service and bad equipment" – obviously a justification comparable to Apple's current
15 contention that KVC and DVC were needed to prevent playback bugs that would supposedly reflect
16 poorly on Apple. The Ninth Circuit held that even ***absent*** a "least restrictive alternative"
17 requirement in the context of a Section 2 claim, the plaintiff still had the opportunity to prove that
18 defendant's proffered business justifications were pretextual rather than genuine. *Image Technical*,
19 903 F.2d at 620. In *Allied Orthopedic*, 592 F.3d at 1001, again absent a "least restrictive alternative"
20 requirement, the Ninth Circuit nevertheless acknowledged that "[e]vidence of an innovator's initial
21 intent may be helpful to the extent that it shows that the innovator knew all along that the new design
22 was no better than the old design, and thus introduced the design solely to eliminate competition."
23 Because neither *Kodak* nor *Allied Orthopedic* restricts the scope of evidence a plaintiff may present
24 to demonstrate the pretextual nature of a defendant's purported business justification for its
25 challenged actions, neither supports exclusion of Dr. Martin's challenged testimony.

26 **B.     Plaintiffs' Experts' Opinions Are Probative of Willful Misconduct**

27 Furthermore, Apple ignores not only well-settled Section 2 jurisprudence, but the precise
28 holding and facts of *Allied Orthopedic* when it asserts that a court may never "second-guess a firm's

design decisions" in determining whether a firm engaged in anticompetitive conduct.  ECF No. 804 at 7.  Apple seeks to preclude plaintiffs from offering evidence of the lack of value of Apple's KVC and DVC design change, suggesting that any such evidence runs afoul of the Ninth Circuit's admonition that "'there is no least restrictive alternative requirement in the context of a Section 2 claim.'" *Id.* (quoting *Image Technical*, 903 F.2d at 620).  But while that decision precludes the weighing of "the benefits of an improved design against the resulting injuries to competitors," it does not prohibit the finder of fact from examining whether the design change provides any benefit to the consumer.  592 F.3d at 1000.

Indeed, as the Ninth Circuit explained, "changes in product design are not immune from antitrust scrutiny and in certain cases may constitute an unlawful means of maintaining a monopoly under Section 2." 592 F.3d at 998.  One of those "unlawful means" is a design change that serves no "'purpose other than protecting [the monopolist's] monopoly.'" *Id.* (citing approvingly to *Microsoft*, 253 F.3d 34).  In *Allied Orthopedic*, the court carefully examined the evidence as to whether Tyco's product design change "provided some new benefit to consumers and thus constituted an improvement", and found that it did, because the design change (a) was sufficiently innovative to justify a patent, (b) reduced costs and increased flexibility for consumers, (c) added new functions, and (d) improved performance   592 F.3d at 1000-1002.  Thus, evidence that Apple could have achieved its asserted procompetitive purpose through a design change less harmful to consumers is not only highly relevant and probative to the critical dispute in the case – it is precisely the type of evidence considered by the Ninth Circuit in *Allied Orthopedic*.[4]

---

[4] Should the Court for any reason grant Apple's motion to strike references to "less restrictive alternatives" testimony, it should in fairness likewise strike Apple's experts' opinions on the same issue: that is, Ex. 2, ¶¶58-66.

## III. PLAINTIFFS' OPPOSITION TO APPLE'S MOTION *IN LIMINE* NO. 3

As with its other motions *in limine* to exclude and to strike, Apple's MIL/MTS No. 3 is essentially a late *Daubert* motion that seeks exclusion of selected bits of testimony from Plaintiffs' experts Prof. Noll and Dr. Martin. Apple does so based on the false premise that Plaintiffs are seeking to re-litigate issues previously resolved by the Court, when in fact the challenged testimony is not only directly relevant to the issues remaining to be tried, but is directly responsive to issues raised by Apple. In MIL/MTS No. 3, Apple seeks to exclude "evidence, testimony, argument, or references" by counsel "contrary to" the Court's 2011 SJ Order (ECF No. 627) and its 2009 Decertification Order (ECF No. 303) that "explicitly or implicitly" suggest that iTunes 4.7 or the "integrated platform"[5] were anticompetitive or illegal. Apple does not explain how the evidence it seeks to strike is related to the legality of 4.7 or the "integrated platform." Because Apple poorly defines how that evidence might be "explicitly or implicitly" referred to as anticompetitive, the relief Apple seeks here – limiting Plaintiffs' (but not Apple's) ability to introduce virtually any evidence about 4.7 and Apple's "integrated platform" (*see* ECF No. 804 at 12-13) and requesting an opening and closing jury instruction on the same topics – is grossly overbroad. Apple's proposed remedy is unmanageable, provides no guidance to the parties on what would be appropriate to say at trial, and would do nothing to streamline the case or make the issues easier for the jury to understand.[6]

### A. Plaintiffs Are Not Seeking to Re-Litigate 4.7

Apple contends Plaintiffs will seek at trial to re-litigate matters previously decided in this action. That is not the case. Plaintiffs are mindful that the Court determined that iTunes 4.7 was a "genuine improvement" and that Plaintiffs did not provide evidence to show that Apple "engaged in conduct associated with its introduction of iTunes 4.7 that would give rise to Section 2 liability."

---

[5] Until now, Apple has referred to the "integrated platform" as the "walled garden." *See, e.g.*, Ex. 2 (7/19/13 Kelly Report), ¶¶155-166; Ex. 3 (2013 Murphy Report)), ¶¶26, 38, 40, 44.

[6] As but one example of how unwieldy Apple's proposed relief is, Apple seeks to exclude certain paragraphs from Dr. Martin's April 2013 Report (ECF No. 815-5) regarding a failed experiment by Dr. Kelly, and presumably seeks to prevent Dr. Martin from testifying about those paragraphs. *See* ECF No. 804 at 10; ECF No. 815-5 at Pages 27-30, ¶¶64-68. But it does not address that Dr. Kelly attempted to respond to this criticism in his July 19, 2013 Report (Ex. 2 at 62 n.83) and does not seek to strike the part of Dr. Martin's rebuttal report which dispelled Dr. Kelly's criticisms. ECF No. 819-8, 10/30/13 Martin Report at Page 10, ¶¶16-17. If Apple's relief is granted, what exactly can Plaintiffs ask Dr. Martin and Dr. Kelly about these portions of their reports?

1  ECF No. 627 at 11.  However, as Apple admits, evidence regarding 4.7 is "necessary for context and
2  as a basis for understanding decisions made by Apple regarding iTunes 7.0."  ECF No. 804 at 12.
3  Apple's actions during the development of 4.7 plainly inform and color later developments at the
4  heart of this case and are thus relevant and admissible under Fed. R. Evid. 401 and 402.[7]  Apple
5  seeks to hamstring Plaintiffs, while preserving its ability to present any evidence it wishes regarding
6  4.7 and fails to explain in its repurposed *Daubert* motion (which it notably never made as to Dr.
7  Martin in the first instance) that the challenged paragraphs are directly ***responsive*** to issues that
8  Apple itself raised at summary judgment and intends to raise at trial.[8]  For example, at ECF No. 815-
9  5 at Pages 17-18, ¶¶42-44 of his Report Dr. Martin responds and opines on the supposed security
10 issues outlined in the January 18, 2011 and February 11, 2010 Robbin Declarations (ECF Nos. 538
11 and 330).[9]  Dr. Martin's testimony undermines a central pillar of Apple's defense at trial: its
12 pretexual argument that it supposedly installed KVC and DVC to address customer complaints.
13 Other paragraphs Apple seeks to strike from Dr. Martin's Report (ECF No. 815-5 at Pages 26-30,
14 ¶¶61-69) demonstrate that a "test" Dr. Kelly ran was inapt and that DVC was targeted at competitors
15 and was not a product improvement in any way.  Apple argues that such evidence is unduly
16 prejudicial under Fed. R. Evid. 403, citing to past filings and hearings in the case, only one of which
17

---

[7]  Apple suggests that Plaintiffs may attempt to use 4.7 as a basis for finding damages.  ECF No. 804 at 10-11.  This ignores the class definition and Plaintiffs' damages opinion, which makes clear that plaintiffs' seek no damages before September 12, 2006, the release date of 7.0.  *See* ECF No. 815-4 (Prof. Noll on Liability and Damages at 2).  Thus, Apple's citation to *Sylvan* (one "cannot recover damages derived from legal conduct"), it is irrelevant.

[8]  If Apple's arguments are accepted, the Court should in fairness also bar Apple from introducing the same type of evidence as well as strike Apple's experts' opinions on the same issue: that is, Dr. Kelly's reports (specifically Ex. 1, 2011 Kelly Decl., ¶¶36-40; Ex. 2, 2013 Kelly Report, ¶¶17-31; Ex. 4, Topel Report, ¶¶23-28).  Plaintiffs have objected to the Robbin Declarations which appear on Apple's exhibit list.  Plaintiffs expect its objections to the declaration will be upheld.

[9]  *See also* ECF No. 815-5 at Pages 19-30, ¶¶46-70.  Dr. Martin specifically addresses issues relating to claims made in Apple's expert Dr. Kelly's January 18, 2011 Declaration (Ex. 1), and his July 19, 2013 Report (Ex. 2).  At ECF No. 815-5 at Pages 19-21, ¶¶46-48, Dr. Martin addresses Apple's actions to break Harmony, in response to paragraphs in the 2011 Kelly Decl. (Ex. 2, ¶¶36-37).  At ECF No. 815-5 at Pages 21-25, ¶¶49-60, Dr. Martin details how customer complaints that Dr. Kelly claimed were related third-party jukeboxes (Ex. 2, Kelly, ¶38) do not support Dr. Kelly's generalizations, and describe how Apple provided no evidence that there were any actual complaints regarding third-party programs causing errors.  *See* ECF No. 815-5 at Pages 21-25, Martin Report, ¶¶49-60.

1 was related to 4.7.  That statement, taken from Plaintiffs' summary judgment brief, is that Apple "unfairly disparaged its competitor and made clear to any other would-be rival that Apple would take all necessary steps to prevent any inroads into its dual monopolies."  ECF No. 815-1 at 6-8.  But that the statement refers to the facts surrounding 4.7, and is not inconsistent with the Court's SJ Order.  Specifically, Apple issued a public statement claiming that it was "stunned" by RealNetworks' announcement of Harmony and claimed that RealNetworks demonstrated the "tactics and ethics of a hacker."   This is relevant evidence whose probative value far outweighs any slight prejudicial impact.  Apple does not and cannot explain how this fact "is contrary to" the Court's 2011 SJ Order or its 2009 Decertification Order.  ECF Nos. 627 & 303.

### B.   Evidence Regarding Lack of Interoperability Is Highly Relevant

Apple also moves to strike any evidence or argument intending to establish that the integration of iTunes, iPods and the iTunes Store is in any way unlawful or anticompetitive, which fails on two grounds.  *See* ECF No. 804 at 11[10].  First, Apple's suggestion that the Court held that the integration of the iTunes, iPods and iTunes Store "was lawful" under any circumstances is flat-out wrong.   Judge Ware held that Apple's integrated approach "***by itself*** does not constitute anticompetitive conduct."  ECF No. 627 at 4.  As Judge Ware recognized in the several orders relied upon by Apple, and as numerous courts have held, there are circumstances under which a walled garden approach can violate federal antitrust laws.  *See, e.g.*, *Eastman Kodak*, 504 U.S. 451.  Plaintiffs are entitled to prove their Section 2 claim by demonstrating that Apple's 7.0 "resulted in an increased 'lock-in' effect for iPod owners who purchased songs online."  *See* ECF No. 788 at 3.  By its motion, Apple seeks to eviscerate Plaintiffs' ability to offer any evidence in support of its claims.  Second, Apple does not have a manageable proposed order, but instead simply asks the Court to restrain Plaintiffs (but again, not Apple) not to talk about Apple's "walled garden."

Once again, Apple seeks to limit Plaintiffs while still recognizing that evidence relating to the integrated platform is highly relevant.  ECF No. 804 at 12 (evidence of "Apple's integrated

---

[10]   Again, should Apple's arguments be accepted, the Court should in fairness also bar Apple from introducing the same type of evidence as well as strike Apple's experts' opinions on the same issue: that is, (specifically Ex. 1, 2011 Kelly Decl., ¶¶32-40; Ex. 2, 2013 Kelly Report, ¶¶89-166; Ex. 3, Murphy Report, ¶¶37-61; Ex. 4, Topel Report, ¶¶13, 20-21).

1 platform…is necessary for context and as a basis for understanding decisions made by Apple regarding iTunes 7.0").[11] For instance, in the testimony Apple wants stricken from Prof. Noll's report (at 64-68), he discusses issues relevant to the KVC and DVC functions Apple added in 7.0: the record labels wanted interoperability, Apple would not have to aid competitors to allow competition in the marketplace, and "Consumers normally do not need vendors to protect them against considering and then rejecting a marketing message that seamless integration is valuable."

Finally, Apple's request for an opening and closing instruction to the jury that the Court has "already found" some of Apple's conduct to be lawful is blatant overreaching. ECF No. 804 at 13 n.6. As Plaintiffs point out in their motion *in limine*, it would be wholly inappropriate to influence the jury's deliberations regarding 7.0 through evidence or argument that the Court has "already found" Apple's other conduct not to be unlawful or anticompetitive. Instructing the jury to that effect would only exacerbate the prejudice, potentially leading jurors to believe that the Court's ruling on 4.7 had some bearing on the lawfulness of 7.0 – notwithstanding Judge Ware's explicit distinction between the two. And it is in any event inaccurate to suggest that the Court has already fully adjudicated all issues related to integration of Apple's products.

DATED: October 14, 2014

Respectfully submitted,
ROBBINS GELLER RUDMAN
  & DOWD LLP
BONNY E. SWEENEY
ALEXANDRA S. BERNAY
PATRICK J. COUGHLIN
CARMEN A. MEDICI
JENNIFER N. CARINGAL

s/ Bonny E. Sweeney
BONNY E. SWEENEY

---

[11] As one might expect with a motion as extreme as Apple's, the cases it cites are far afield from the topic and easily distinguishable. Apple's reliance on *United States v. Skillman*, 922 F.2d 1370 (9th Cir. 1990) is misplaced. In that criminal case the Ninth Circuit found it was not an abuse of discretion to allow in evidence that the defendant was a skinhead and noted that the standard is one of unfair prejudice. *Id*. at 1374. Here, Apple has made no showing that evidence regarding interoperability in any way is prejudicial, let alone the type which "'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish.'" *Id*. Apple also relies on *Guillory v. Tilton*, No. CV-07-0775-ROS (PC), 2012 U.S. Dist. LEXIS 86383 (E.D. Cal. June 20, 2012), another off base case. In that prisoner suit, the court found irrelevant claims that the prisoner was denied meals and hygiene items, a matter already decided on summary judgment. *Id*. at *6. Here, evidence regarding interoperability is relevant and highly probative of facts central to Plaintiffs' claims.

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Class Counsel for Plaintiffs

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
FRANCIS J. BALINT, JR.
ELAINE A. RYAN
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
602/274-1199 (fax)

THE KATRIEL LAW FIRM
ROY A. KATRIEL
1101 30th Street, N.W., Suite 500
Washington, DC  20007
Telephone:  202/625-4342
202/330-5593 (fax)

BRAUN LAW GROUP, P.C.
MICHAEL D. BRAUN
10680 West Pico Blvd., Suite 280
Los Angeles, CA  90064
Telephone:  310/836-6000
310/836-6010 (fax)

GLANCY BINKOW & GOLDBERG LLP
BRIAN P. MURRAY
122 East 42nd Street, Suite 2920
New York, NY  10168
Telephone:  212/382-2221
212/382-3944 (fax)

GLANCY BINKOW & GOLDBERG LLP
MICHAEL GOLDBERG
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)

Additional Counsel for Plaintiffs

976883_1

PLTFS' MEMO OF PS & AS IOT APPLE'S MILS NOS. 1-3 & TO EXCLUDE & STRIKE EVIDENCE OR ARGUMENT THAT APPLE COULD HAVE OR SHOULD HAVE AIDED THIRD-PARTY PRODUCTS - C-05-00037-YGR
- 13 -

CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 14, 2014.

s/ Bonny E. Sweeney
BONNY E. SWEENEY

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:        bonnys@rgrdlaw.com

976883_1

# Mailing Information for a Case 4:05-cv-00037-YGR The Apple iPod iTunes Anti-Trust Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amir Q Amiri**
  aamiri@jonesday.com,ttualaulelei@jonesday.com

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com,LMix@rgrdlaw.com,TJohnson@rgrdlaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Jennifer N. Caringal**
  JCaringal@rgrdlaw.com

- **Todd David Carpenter**
  Todd@Carpenterlawyers.com

- **Patrick J. Coughlin**
  PatC@rgrdlaw.com,SusanM@rgrdlaw.com,e_file_sd@rgrdlaw.com,SJodlowski@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **John F. Cove , Jr**
  jcove@bsfllp.com,kmurphy@bsfllp.com,dnasca@bsfllp.com,sphan@bsfllp.com

- **Meredith Richardson Dearborn**
  mdearborn@bsfllp.com,cseki@bsfllp.com

- **Karen Leah Dunn**
  kdunn@bsfllp.com

- **Andrew S. Friedman**
  khonecker@bffb.com,rcreech@bffb.com,afriedman@bffb.com

- **Martha Lea Goodman**
  mgoodman@bsfllp.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com,winkyc@zhlaw.com

- **William A. Isaacson**
  wisaacson@bsfllp.com,jmilici@bsfllp.com

- **Roy Arie Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com

- **Carmen Anthony Medici**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,mlandsborough@jonesday.com,pwalter@jonesday.com

- **Brian P. Murray**
  bmurray@glancylaw.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Elaine A. Ryan**
  eryan@bffb.com,nserden@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Michael Tedder Scott**
  mike.scott@dlapiper.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **Bonny E. Sweeney**
  bonnys@rgrdlaw.com,slandry@rgrdlaw.com,E_file_sd@rgrdlaw.com,ckopko@rgrdlaw.com

- **Helen I. Zeldes**
  helenz@zhlaw.com,winkyc@zhlaw.com,aarono@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`