ROBBINS GELLER RUDMAN
  & DOWD LLP
BONNY E. SWEENEY (176174)
ALEXANDRA S. BERNAY (211068)
PATRICK J. COUGHLIN (111070)
CARMEN A. MEDICI (248417)
JENNIFER N. CARINGAL (286197)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
bonnys@rgrdlaw.com
xanb@rgrdlaw.com
patc@rgrdlaw.com
cmedici@rgrdlaw.com
jcaringal@rgrdlaw.com

Class Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTITRUST LITIGATION | Lead Case No. C-05-00037-YGR |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT APPLE'S MOTIONS *IN LIMINE* NOS. 1-3 AND TO EXCLUDE AND STRIKE EVIDENCE |
| ALL ACTIONS. | |

Date:        October 29, 2014
Time:        9:30 a.m.
Courtroom:   1, 4th Floor
Judge:       Hon. Yvonne Gonzalez Rogers

Trial Date:  November 17, 2014
Time:        8:30 a.m.

# TABLE OF CONTENTS

**Page**

I.    PLAINTIFFS' OPPOSITION TO APPLE'S MOTION *IN LIMINE* NO. 1 .......................1

II.   PLAINTIFFS' OPPOSITION TO APPLE'S MOTION *IN LIMINE* NO. 2 .......................5

      A.    Dr. Martin's Opinions Are Probative of Pretext .........................................5

      B.    Plaintiffs' Experts' Opinions Are Probative of Willful Misconduct ..................7

III.  PLAINTIFFS' OPPOSITION TO APPLE'S MOTION *IN LIMINE* NO. 3 .......................9

      A.    Plaintiffs Are Not Seeking to Re-Litigate 4.7.........................................9

      B.    Evidence Regarding Lack of Interoperability Is Highly Relevant........................11

976883_1

PLTFFFS' MEMO OF POINTS & AUTHORITIES IOT DEFENDANT APPLE'S MOTIONS IN LIMINE
NOS. 1-3 AND TO EXCLUDE AND STRIKE EVIDENCE - C-05-00037-YGR                    - i -

1

## TABLE OF AUTHORITIES

2

Page

3

CASES

4

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
5    592 F.3d 991 (9th Cir. 2010) ...................................................................2, 6, 7, 8

6    *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
    472 U.S. 585 (1985)....................................................................................1, 2, 6

7    *Cascade Health Solutions v. PeaceHealth*,
8    515 F.3d 883 (9th Cir. 2008) .................................................................................1

9    *Culbertson v. Freightliner Corp.*,
    50 F. Supp. 2d 998 (D. Nev. 1999)........................................................................4
10

11    *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*,
    642 F.3d 728 (9th Cir. 2011) ................................................................................7

12    *Eastman Kodak Co. v. Image Technical Servs., Inc.*,
13    504 U.S. 451 (1992).......................................................................................1, 7, 11

14    *Guillory v. Tilton*,
    No. CV-07-0775-ROS (PC), 2012 U.S. Dist. LEXIS 86383
15    (E.D. Cal. June 20, 2012)......................................................................................12

16    *Image Technical Servs., Inc. v. Eastman Kodak Co.*,
17    125 F.3d 1195 (9th Cir. 1997) ...............................................................................5

18    *Image Technical Serv., Inc. v. Eastman Kodak Co.*,
    903 F.2d 612 (9th Cir 1990), *aff'd*, 504 U.S. 451(1992)....................................7, 8
19

20    *In re Apple iPod iTunes Antitrust Litig.*,
    796 F. Supp. 2d 1137 (N.D. Cal. 2011) ................................................................2

21    *In re High-Tech Emp. Antitrust Litig.*,
22    No. 11-cv-02509-LHK, 2014 U.S. Dist. LEXIS 47181
    (N.D. Cal. Apr. 4, 2014) .......................................................................................4

23    *Kranson v. Fed. Express Corp.*,
24    No. 11-CV-05826-YGR, 2013 U.S. Dist. LEXIS 154473
    (N.D. Cal. Oct 28, 2013)........................................................................................7
25

26    *Morgan v. Hilti*,
    108 F.3d 1319 (10th Cir. 1997) .............................................................................7

27

28

**Page**

*Novell, Inc. v. Microsoft Corp.*,
   No. 2:04-CV-01045-JFM, 2012 U.S. Dist. LEXIS 98710
   (D. Utah Jul 16, 2012),
   *aff'd on other grounds*, 731 F.3d 1064 (10th Cir. 2013) ......................................................5, 6

*United States v. Griffith*,
   334 U.S. 100 (1948)..............................................................................................................1

*United States v. Microsoft Corp.*,
   253 F.3d 34 (D.C. Cir. 2001) ...........................................................................................1, 8

*United States v. Skillman*,
   922 F.2d 1370 (9th Cir. 1990) ...............................................................................................12

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §2...................................................................................................................... *passim*

Federal Rules of Evidence
   Rule 401 ....................................................................................................................10
   Rule 402 ....................................................................................................................10
   Rule 403 ..............................................................................................................4, 10

976883_1

PLTFFS' MEMO OF POINTS & AUTHORITIES IOT DEFENDANT APPLE'S MOTIONS IN LIMINE
NOS. 1-3 AND TO EXCLUDE AND STRIKE EVIDENCE - C-05-00037-YGR                    - iii -

1    **I.    PLAINTIFFS' OPPOSITION TO APPLE'S MOTION *IN LIMINE* NO. 1**

2           Apple's Motion *in limine* No. 1 to exclude and strike ("MIL/MTS No. 1") is an untimely

3    *Daubert* motion seeking to exclude selected expert testimony of Plaintiffs' technology expert Dr.

4    David Martin and Plaintiffs' economics expert Professor Roger Noll under the legal principle that a

5    monopolist "generally" has no **duty** to share its intellectual property with a rival.  ECF No. 804 No. 1

6    at 4-5.  That general principle pervaded Apple's first motion for summary judgment, which the Court

7    denied as to the challenged features of Update 7.0.  *See* ECF No. 627.  This case has accordingly

8    moved well past the general principle invoked by Apple, and is now focused instead on whether

9    Apple's **affirmative actions** of blocking interoperability by adding the keybag verification code

10   ("KVC") and database verification code ("DVC") functions constituted "willful misconduct" under

11   Section 2 of the Sherman Act.  ECF No. 627 at 11-12.

12          Section 2's willfulness element comprises actions taken "'to foreclose competition, to gain

13   competitive advantage, or to destroy a competitor.'"  *Eastman Kodak Co. v. Image Technical Servs.,*

14   *Inc.*, 504 U.S. 451, 482-83 (1992) (quoting *United States v. Griffith*, 334 U.S. 100, 107 (1948));

15   *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001).  "If a firm has been 'attempting

16   to exclude rivals on some basis other than efficiency,' it is fair to characterize its behavior as

17   predatory."  *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 (1985);[1] *accord,*

18   *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008) ("Anticompetitive

19   conduct is behavior that tends to impair the opportunities of rivals and either does not further

20   competition on the merits or does so in an unnecessarily restrictive way.") (citing *Aspen Skiing*, 472

21   U.S. at 605 n.32).  Evidence that a monopolist's conduct has caused anticompetitive effect moves the

22   inquiry to the existence and validity of any "'valid business reasons'" that might justify the conduct.

23   *Eastman Kodak*, 504 U.S. at 483; *Aspen Skiing*, 472 U.S. at 608-10.

24          Here the challenged opinions of Dr. Martin and Professor ("Prof.") Noll are offered not to

25   show that Apple had a legal duty to assist third-parties in making their products interoperable with

26   the iPod, but rather to show (a) that KVC and DVC are not "genuine product improvements," and (b)

27

28   ---
     [1]    Citations and footnotes are omitted and emphasis is added unless otherwise noted.

1   that Apple's proffered business justification for adding KVC and DVC is not valid, but rather *post*

2   *hoc* and purely pretextual. *In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1146

3   (N.D. Cal. 2011) ("At issue is whether Defendant's introduction of iTunes 7.0 constituted a genuine

4   improvement."); *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991,

5   998-99 (9th Cir. 2010) (changes in product design that provide no new benefit to consumers may

6   constitute an unlawful means of maintaining a monopoly); *Aspen Skiing Co.*, 472 U.S. at 602

7   (evidence of intent is relevant to whether a conduct is anticompetitive).

8      For example, Apple claims that KVC and DVC were added to prevent purported playback

9   problems on the iPod caused by the "injection" of foreign music files. ECF No. 627 at 12. Dr.

10   Martin explains that the purported "fix" afforded by KVC and DVC was inconsistent with – and

11   yielded results far worse than – the purported problem; in other words, if Apple genuinely wished to

12   address the problems it now claims prompted it to add KVC and DVC, it could have done so through

13   a number of far more feasible, effective and efficient means. *See* ECF No. 815-5 (4/8/13 Expert

14   Report of David Martin) at Page 42, ¶¶107-111. Dr. Martin also specifically responds to the

15   contentions of Apple's witnesses that Apple's sharing technical information with RealNetworks

16   "would have made FairPlay substantially less secure" because of the possibility of attacks against

17   RealNetworks and RealPlayer/Harmony in addition to the possibility of attacks against Apple and its

18   products. *Id.* at Page 17-21, ¶¶43-48 (explaining why shared technological information posed no

19   threat to security of FairPlay encrypted songs). The same is true for Apple's contention that shared

20   technical data "constituted a risk to the proper functioning of the iPod." *Id.* at Pages 26, 43, ¶¶62;

21   69-70; 112(6), (7) & (10). Dr. Martin's challenged opinions thus directly address both Plaintiffs'

22   pretext contention and Apple's own infeasibility arguments. Nowhere in the portions of his report

23   cited by Apple does Dr. Martin opine or otherwise suggest that Apple had a duty to aid its

24   competitors.

25      Prof. Noll's testimony similarly addresses, from an economic perspective, Apple's far-

26   fetched affirmative defense that the steps Apple took to reduce ***existing*** interoperability could

27   somehow be deemed a procompetitive business justification. *See* ECF No. 813-3 (4/3/13

28   Declaration of Professor Roger G. Noll ("Noll Decl.")) at Pages 99-104; *see, e.g., id.* at Page 104

1   ("When consumers are given the choice, most prefer products that do not lock them in to a single

2   vendor for multiple products."). Like Dr. Martin, Prof. Noll nowhere opines or otherwise suggests

3   that Apple had a duty to create interoperability; instead, he responds to Apple's contention that

4   maintaining existing compatibility was infeasible. Indeed, as Prof. Noll points out, RealNetworks

5   managed to produce the Harmony DRM-translator software and keep it operating for months without

6   Apple's cooperation:

> Apple's claim that **maintaining** compatibility would require cooperation with its
> competitors requires a technical analysis of the software upgrades that Apple used to
> prevent iPods from playing audio recordings that were acquired from Internet
> vendors that competed with iTS. The problem with this claim is that RealNetworks
> managed to produce Harmony and to keep it operating during two periods, one
> lasting more than a year, **without** cooperation from Apple.

10  ECF No. 813-3, Noll Decl. at Page 101.

11      In his other testimony challenged by Apple (ECF No. 804 at 4-5), Prof. Noll provides the

12  background for his "lock in" theory addressed by the Court in its September 26, 2014 Order (ECF

13  No. 788) denying Apple's motion for summary judgment on antitrust impact and damages. *See* ECF

14  No. 813-3, Noll Decl. at Page 46 ("Because Apple chose not to license FairPlay and not to permit

15  downloads from other Internet sites to play on an iPod, Apple's customers also were locked in to

16  both iTS for downloads and iPods for players."); *id.* at Page 48 ("Likewise, iTunes cannot convert

17  WMA or RealAudio DRM-protected files into a format that can be played by an iPod. During the

18  class period audio files in each of the latter two formats could be played on several brands of

19  portable digital media players. Thus, iTunes played an essential role in maintaining technical

20  incompatibility between the defendant's products and competing products in the relevant markets.").

21  Once again, Prof. Noll is addressing the consequences of Apple's action, not opining that Apple had

22  any sort of duty to deal with its rivals.

23      Because neither Plaintiffs nor their experts contend Apple had a duty to aid or assist third-

24  party competitors, the entire line of case law invoked by Apple is inapposite. ECF No. 804 1 at 5.

25  Likewise sorely misguided is Apple's "law of the case" argument, because Judge Ware in denying

26  summary judgment as to the challenged Update 7.0 features obviously did not rule that the addition

27  of KVC and DVC increased competition as a matter of law. ECF No. 627 at 12-13 ("In light of the

28

1    parties' conflicting evidence, the Court finds that it is unable to determine, as a matter of law, that

2    iTunes 7.0 was introduced to guard against the risk of corruption and was therefore a genuine

3    product improvement.  Thus, the Court finds that Defendant is not entitled to summary judgment on

4    Plaintiffs' Section 2 claim as to iTunes 7.0.").

5         Equally unavailing is Apple's argument that Martin Report, ¶69 and ¶112(6) constitute

6    "speculation" that runs the risk of misleading the jury under Fed. R. Evid. 403.  ECF No. 804 at 6.

7    Expert testimony of feasible alternatives is not inadmissible speculation.  *See, e.g.*, *In re High-Tech*

8    *Emp. Antitrust Litig.*, No. 11-cv-02509-LHK, 2014 U.S. Dist. LEXIS 47181, at *86-*87 (N.D. Cal.

9    Apr. 4, 2014) (expert's opinion that included analysis on alternatives available to high-tech

10   employees and high-tech employers in the market was not excludable).  Apple's citation to

11   *Culbertson v. Freightliner Corp.*, 50 F. Supp. 2d 998, 1000 (D. Nev. 1999) is particularly inapt;

12   there the court excluded expert testimony as to the cause of an alleged defect as unreliable under

13   *Daubert,* where the expert offered no more than his opinion on how one might cure a defect that he

14   assumed, but never showed, to exist.  *Culbertson* has no significance here, other than perhaps to

15   underscore that Apple's MIL/MTS No. 1 is at best an untimely *Daubert* challenge.

16        In sum, Apple's motion is a disguised attempt to prevent Plaintiffs from rebutting Apple's

17   business justification defense through evidence that Apple's reasons for implementing KVC and

18   DVC were pretextual and that Apple's product design change was not a genuine improvement.  The

19   Court should therefore deny Apple's motion.[2]

20

21

22

23

24   _____
     [2]   Should the Court grant Apple's motion to strike references that Apple "could have or should
25   have taken steps to aid third parties in developing products that are interoperable with iPods," it
     should in fairness also bar Apple from introducing this evidence as well as strike Apple's experts'
26   opinions on the same issue:  that is, Ex. 1, Declaration of John P. Kelly in Support of Defendant's
     Renewed Motion for Summary Judgment, ¶¶34-40; Ex. 2, Expert Report of John P. Kelly, ¶¶75-166;
27   and Ex. 3, Expert Report of Kevin Murphy, ¶¶34-61.  Plaintiffs have identified these portions with
     red text boxes in the Exhibits attached to the Declaration of Bonny E. Sweeney, filed concurrently.
28   All references to "Ex." are to the exhibits attached thereto.

## II.     PLAINTIFFS' OPPOSITION TO APPLE'S MOTION *IN LIMINE* NO. 2

Defendant Apple's Motion *in Limine* No. 2 (ECF No. 804 at 7-9) ("MIL/MTS No. 2") to strike certain opinions of Plaintiffs' technology expert Dr. Martin and Plaintiffs' economics expert Prof. Roger Noll is based entirely on the mistaken premise that those opinions are offered in support of an argument that Plaintiffs do not make:  that Apple had an affirmative duty to make its products interoperable as a "less restrictive alternative" to the challenged functions of Update 7.0.  *See* Plaintiffs' Opposition to Apple MIL/MTS No. 1.  For that reason, and the additional reasons that follow, Apple's MIL/MTS No. 2 should be denied in its entirety.

### A.     Dr. Martin's Opinions Are Probative of Pretext

Plaintiffs contend that through Update 7.0 Apple in September 2006 installed a software function KVC that effectively prevented legally purchased DRM-protected digital music files from playing on new generations of its iPod portable digital players unless that DRM music was purchased from Apple.  At the same time, Apple installed another, so-called "dormant" function DVC that, when activated, effectively wiped all legally purchased digital music files off the iPod unless those files were purchased from Apple or managed using Apple's iTunes jukebox application, whether or not the music files were DRM-protected.

Apple argues that its installation of the KVC and DVC booby-traps was supposedly prompted by customer complaints of difficulties or bugs encountered when playing music legally acquired from other sources (such as from RealNetworks) on their iPods.  ECF No. 627 at 11-12 ("'Defendant contends that iTunes 7.0 included improvements to FairPlay that prevented third-party applications from corrupting the iPod by "injecting" content onto its internal database.'").  Apple accordingly asserts as an affirmative defense that its need to fix such playback bugs constitutes a "legitimate business reason" for its addition of KVC and DVC.

Plaintiffs contend that Apple's claimed justifications are purely pretextual.  *Image Technical Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1219 (9th Cir. 1997) ("Neither the aims of intellectual property law, nor the antitrust laws justify allowing a monopolist to rely upon a pretextual business justification to mask anticompetitive conduct."); *see, e.g.*, *Novell, Inc. v. Microsoft Corp.*, No. 2:04-CV-01045-JFM, 2012 U.S. Dist. LEXIS 98710, at *31 (D. Utah Jul 16,

PLTFS' MEMO OF PS & AS IOT APPLE'S MILS NOS. 1-3 & TO EXCLUDE & STRIKE EVIDENCE OR ARGUMENT THAT APPLE COULD HAVE OR SHOULD HAVE AIDED THIRD-PARTY PRODUCTS - C-05-00037-YGR

- 5 -

1    2012) (finding evidence of single contradictory email sufficient to support jury finding of pretext

2    under Section 2), *aff'd on other grounds*, 731 F.3d 1064 (10th Cir. 2013).  Plaintiffs intend to show

3    that Apple's design change provided no new benefit to consumers, and did not constitute a genuine

4    product improvement.  *Allied Orthopedic*, 592 F.3d at 998-99 (changes in product design that

5    provide no new benefit to consumers may constitute an unlawful means of maintaining a monopoly);

6    ECF No. 627 at 11 ("At issue is whether Defendant's introduction of iTunes 7.0 constituted a

7    genuine improvement.").  *See also Aspen Skiing*, 472 U.S. at 602.

8        Plaintiffs will prove pretext and lack of consumer benefit by showing, among other things,

9    that the "fix" provided by KVC and DVC – *i.e.*, effectively eliminating iPod playback of legally

10   purchased non-iTunes music altogether – was fundamentally ***inconsistent*** with the purported

11   problem, and indeed lead to a result ***far worse than*** the purported playback bugs it supposedly

12   addressed.  In other words, if it were genuinely concerned about remedying the purported playback

13   bugs, Apple would have taken steps that actually fixed the purported problem.  Demonstrating this

14   inconsistency is exactly the purpose of Dr. Martin's challenged testimony describing, as a computer

15   expert, the ways that the problems supposedly encountered by iPod users before September 2006

16   could have been remedied if Apple had genuine concern for a seamless user experience.  *See* ECF

17   No. 815-5 at Page 42, §VII.[3]

18       Helpful guidance in the matter of proving pretext in the antitrust context can be found in

19   federal discrimination jurisprudence.  *Novell*, 2012 U.S. Dist. LEXIS 98710, at *31 ("Fact-finders

20   are frequently called upon to answer this question of pretext, particularly in the field of employment

21   discrimination law.").  "Pretext can be shown by such '"weaknesses, implausibilities, inconsistencies,

22   incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a

23   reasonable fact-finder could rationally find them unworthy of credence and hence infer that the

24   ─────────────────────

     [3]    Dr. Martin makes clear that in §VII at Page 107, he is responding specifically to the fact that
25   "Apple points to possible bugs in third-party applications as a justification for" adding KVC and
     DVC.  ECF No. 815-5 at Page 107, ¶107.  He explains that good practice compels Apple to design
26   for robustness (rather than failure) in fixing the purported playback bugs, which is exactly what
     Apple has by contrast done elsewhere in its source code.  *Id.* at Page 107, ¶¶108-109.  If Apple
27   genuinely intended to address the bugs, it could also publish sufficient technical information to allow
     other legal music sellers to take their own steps to avoid the bugs purportedly driving Apple's action.
28   *Id.* at Page 107, ¶111.

PLTFS' MEMO OF PS & AS IOT APPLE'S MILS NOS. 1-3 & TO EXCLUDE & STRIKE EVIDENCE OR ARGUMENT
     THAT APPLE COULD HAVE OR SHOULD HAVE AIDED THIRD-PARTY PRODUCTS - C-05-00037-YGR                - 6 -

1  employer did not act for the asserted non-discriminatory reasons.'"'" *Morgan v. Hilti*, 108 F.3d

2  1319, 1323 (10th Cir. 1997); *accord, Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d

3  728, 746 (9th Cir. 2011) (citing same standard); *see, e.g.*, *Kranson v. Fed. Express Corp.*, No. 11-

4  CV-05826-YGR, 2013 U.S. Dist. LEXIS 154473, at *3 (N.D. Cal. Oct 28, 2013) (applying same

5  standard to proof of pretext in age discrimination case, and noting that jury is not required to believe

6  defendant's witnesses at trial as to defendant's intent).

7  　　　Apple cites no case suggesting Plaintiffs cannot use evidence of inconsistency between the

8  purported problem and purported fix to discredit Apple's justification and prove pretext.  To the

9  contrary, the very cases cited by Apple distinguish between proof of pretext and proof of less

10  restrictive alternatives.  In *Image Technical Serv., Inc. v. Eastman Kodak Co.*, 903 F.2d 612 (9th Cir

11  1990), *aff'd*, 504 U.S. 451(1992), for example, Kodak's first proffered business justification in

12  defense of plaintiffs' Section 2 claim was that its actions were necessary "[t]o guard against

13  inadequate service, which reflects negatively on Kodak because customers cannot differentiate

14  between bad service and bad equipment" – obviously a justification comparable to Apple's current

15  contention that KVC and DVC were needed to prevent playback bugs that would supposedly reflect

16  poorly on Apple.  The Ninth Circuit held that even ***absent*** a "least restrictive alternative"

17  requirement in the context of a Section 2 claim, the plaintiff still had the opportunity to prove that

18  defendant's proffered business justifications were pretextual rather than genuine.  *Image Technical*,

19  903 F.2d at 620.  In *Allied Orthopedic*, 592 F.3d at 1001, again absent a "least restrictive alternative"

20  requirement, the Ninth Circuit nevertheless acknowledged that "[e]vidence of an innovator's initial

21  intent may be helpful to the extent that it shows that the innovator knew all along that the new design

22  was no better than the old design, and thus introduced the design solely to eliminate competition."

23  Because neither *Kodak* nor *Allied Orthopedic* restricts the scope of evidence a plaintiff may present

24  to demonstrate the pretextual nature of a defendant's purported business justification for its

25  challenged actions, neither supports exclusion of Dr. Martin's challenged testimony.

26  　　**B.    Plaintiffs' Experts' Opinions Are Probative of Willful Misconduct**

27  　　　Furthermore, Apple ignores not only well-settled Section 2 jurisprudence, but the precise

28  holding and facts of *Allied Orthopedic* when it asserts that a court may never "second-guess a firm's

1    design decisions" in determining whether a firm engaged in anticompetitive conduct.  ECF No. 804

2    at 7.  Apple seeks to preclude plaintiffs from offering evidence of the lack of value of Apple's KVC

3    and DVC design change, suggesting that any such evidence runs afoul of the Ninth Circuit's

4    admonition that "'there is no least restrictive alternative requirement in the context of a Section 2

5    claim.'"  *Id.* (quoting *Image Technical*, 903 F.2d at 620).  But while that decision precludes the

6    weighing of "the benefits of an improved design against the resulting injuries to competitors," it does

7    not prohibit the finder of fact from examining whether the design change provides any benefit to the

8    consumer.  592 F.3d at 1000.

9         Indeed, as the Ninth Circuit explained, "changes in product design are not immune from

10   antitrust scrutiny and in certain cases may constitute an unlawful means of maintaining a monopoly

11   under Section 2."  592 F.3d at 998.  One of those "unlawful means" is a design change that serves no

12   "'purpose other than protecting [the monopolist's] monopoly.'"  *Id.* (citing approvingly to *Microsoft*,

13   253 F.3d 34).  In *Allied Orthopedic*, the court carefully examined the evidence as to whether Tyco's

14   product design change "provided some new benefit to consumers and thus constituted an

15   improvement", and found that it did, because the design change (a) was sufficiently innovative to

16   justify a patent, (b) reduced costs and increased flexibility for consumers, (c) added new functions,

17   and (d) improved performance  592 F.3d at 1000-1002.  Thus, evidence that Apple could have

18   achieved its asserted procompetitive purpose through a design change less harmful to consumers is

19   not only highly relevant and probative to the critical dispute in the case – it is precisely the type of

20   evidence considered by the Ninth Circuit in *Allied Orthopedic*.[4]

21

22

23

24

25

26

---

[4]    Should the Court for any reason grant Apple's motion to strike references to "less restrictive alternatives" testimony, it should in fairness likewise strike Apple's experts' opinions on the same issue: that is, Ex. 2, ¶¶58-66.

## III.     PLAINTIFFS' OPPOSITION TO APPLE'S MOTION *IN LIMINE* NO. 3

As with its other motions *in limine* to exclude and to strike, Apple's MIL/MTS No. 3 is essentially a late *Daubert* motion that seeks exclusion of selected bits of testimony from Plaintiffs' experts Prof. Noll and Dr. Martin.  Apple does so based on the false premise that Plaintiffs are seeking to re-litigate issues previously resolved by the Court, when in fact the challenged testimony is not only directly relevant to the issues remaining to be tried, but is directly responsive to issues raised by Apple.  In MIL/MTS No. 3, Apple seeks to exclude "evidence, testimony, argument, or references" by counsel "contrary to" the Court's 2011 SJ Order (ECF No. 627) and its 2009 Decertification Order (ECF No. 303) that "explicitly or implicitly"  suggest that iTunes 4.7 or the "integrated platform" [5] were anticompetitive or illegal.  Apple does not explain how the evidence it seeks to strike is related to the legality of 4.7 or the "integrated platform."  Because Apple poorly defines how that evidence might be "explicitly or implicitly" referred to as anticompetitive, the relief Apple seeks here – limiting Plaintiffs' (but not Apple's) ability to introduce virtually any evidence about 4.7 and Apple's "integrated platform" (*see* ECF No. 804 at 12-13) and requesting an opening and closing jury instruction on the same topics – is grossly overbroad.  Apple's proposed remedy is unmanageable, provides no guidance to the parties on what would be appropriate to say at trial, and would do nothing to streamline the case or make the issues easier for the jury to understand.[6]

### A.     Plaintiffs Are Not Seeking to Re-Litigate 4.7

Apple contends Plaintiffs will seek at trial to re-litigate matters previously decided in this action.  That is not the case.  Plaintiffs are mindful that the Court determined that iTunes 4.7 was a "genuine improvement" and that Plaintiffs did not provide evidence to show that Apple "engaged in conduct associated with its introduction of iTunes 4.7 that would give rise to Section 2 liability."

---

[5]     Until now, Apple has referred to the "integrated platform" as the "walled garden." *See, e.g.*, Ex. 2 (7/19/13 Kelly Report), ¶¶155-166; Ex. 3 (2013 Murphy Report)), ¶¶26, 38, 40, 44.

[6]     As but one example of how unwieldy Apple's proposed relief is, Apple seeks to exclude certain paragraphs from Dr. Martin's April 2013 Report (ECF No. 815-5) regarding a failed experiment by Dr. Kelly, and presumably seeks to prevent Dr. Martin from testifying about those paragraphs. *See* ECF No. 804 at 10; ECF No. 815-5 at Pages 27-30, ¶¶64-68.  But it does not address that Dr. Kelly attempted to respond to this criticism in his July 19, 2013 Report (Ex. 2 at 62 n.83) and does not seek to strike that part of Dr. Martin's rebuttal report which dispelled Dr. Kelly's criticisms.  ECF No. 819-8, 10/30/13 Martin Report at Page 10, ¶¶16-17.  If Apple's relief is granted, what exactly can Plaintiffs ask Dr. Martin and Dr. Kelly about these portions of their reports?

1    ECF No. 627 at 11.  However, as Apple admits, evidence regarding 4.7 is "necessary for context and

2    as a basis for understanding decisions made by Apple regarding iTunes 7.0."  ECF No. 804 at 12.

3    Apple's actions during the development of 4.7 plainly inform and color later developments at the

4    heart of this case and are thus relevant and admissible under Fed. R. Evid. 401 and 402.[7]  Apple

5    seeks to hamstring Plaintiffs, while preserving its ability to present any evidence it wishes regarding

6    4.7 and fails to explain in its repurposed *Daubert* motion (which it notably never made as to Dr.

7    Martin in the first instance) that the challenged paragraphs are directly **responsive** to issues that

8    Apple itself raised at summary judgment and intends to raise at trial.[8]  For example, at ECF No. 815-

9    5 at Pages 17-18, ¶¶42-44 of his Report Dr. Martin responds and opines on the supposed security

10   issues outlined in the January 18, 2011 and February 11, 2010 Robbin Declarations (ECF Nos. 538

11   and 330).[9]  Dr. Martin's testimony undermines a central pillar of Apple's defense at trial: its

12   pretexual argument that it supposedly installed KVC and DVC to address customer complaints.

13   Other paragraphs Apple seeks to strike from Dr. Martin's Report (ECF No. 815-5 at Pages 26-30,

14   ¶¶61-69) demonstrate that a "test" Dr. Kelly ran was inapt and that DVC was targeted at competitors

15   and was not a product improvement in any way.  Apple argues that such evidence is unduly

16   prejudicial under Fed. R. Evid. 403, citing to past filings and hearings in the case, only one of which

17

---

18   [7]    Apple suggests that Plaintiffs may attempt to use 4.7 as a basis for finding damages.  ECF No.
     804 at 10-11.  This ignores the class definition and Plaintiffs' damages opinion, which makes clear
19   that plaintiffs' seek no damages before September 12, 2006, the release date of 7.0.  *See* ECF No.
     815-4 (Prof. Noll on Liability and Damages at 2).  Thus, Apple's citation to *Sylvan* (one "cannot
20   recover damages derived from legal conduct"), it is irrelevant.
     [8]    If Apple's arguments are accepted, the Court should in fairness also bar Apple from introducing
21   the same type of evidence as well as strike Apple's experts' opinions on the same issue: that is, Dr.
     Kelly's reports (specifically Ex. 1, 2011 Kelly Decl., ¶¶36-40; Ex. 2, 2013 Kelly Report, ¶¶17-31;
22   Ex. 4, Topel Report, ¶¶23-28).  Plaintiffs have objected to the Robbin Declarations which appear on
     Apple's exhibit list.  Plaintiffs expect its objections to the declaration will be upheld.
23
     [9]    *See also* ECF No. 815-5 at Pages 19-30, ¶¶46-70.  Dr. Martin specifically addresses issues
24   relating to claims made in Apple's expert Dr. Kelly's January 18, 2011 Declaration (Ex. 1), and his
     July 19, 2013 Report (Ex. 2).  At ECF No. 815-5 at Pages 19-21, ¶¶46-48, Dr. Martin addresses
25   Apple's actions to break Harmony, in response to paragraphs in the 2011 Kelly Decl. (Ex. 2, ¶¶36-
     37).  At ECF No. 815-5 at Pages 21-25, ¶¶49-60, Dr. Martin details how customer complaints that
26   Dr. Kelly claimed were related third-party jukeboxes (Ex. 2, Kelly, ¶38) do not support Dr. Kelly's
     generalizations, and describe how Apple provided no evidence that there were any actual complaints
27   regarding third-party programs causing errors.  *See* ECF No. 815-5 at Pages 21-25, Martin Report,
     ¶¶49-60.
28

1   was related to 4.7.  That statement, taken from Plaintiffs' summary judgment brief, is that Apple

2   "unfairly disparaged its competitor and made clear to any other would-be rival that Apple would take

3   all necessary steps to prevent any inroads into its dual monopolies."  ECF No. 815-1 at 6-8.  But that

4   the statement refers to the facts surrounding 4.7, and is not  inconsistent with the Court's SJ Order.

5   Specifically, Apple issued a public statement claiming that it was "stunned" by RealNetworks'

6   announcement of Harmony and claimed that RealNetworks demonstrated the "tactics and ethics of a

7   hacker."  This is relevant evidence whose probative value far outweighs any slight prejudicial

8   impact.  Apple does not and cannot explain how this fact "is contrary to" the Court's 2011 SJ Order

9   or its 2009 Decertification Order.  ECF Nos. 627 & 303.

10          **B.      Evidence Regarding Lack of Interoperability Is Highly Relevant**

11          Apple also moves to strike any evidence or argument intending to establish that the

12   integration of iTunes, iPods and the iTunes Store is in any way unlawful or anticompetitive, which

13   fails on two grounds.  *See* ECF No. 804 at 11[10].  First, Apple's suggestion that the Court held that the

14   integration of the iTunes, iPods and iTunes Store "was lawful" under any circumstances is flat-out

15   wrong.   Judge Ware held that Apple's integrated approach "***by itself*** does not constitute

16   anticompetitive conduct."  ECF No. 627 at 4.  As Judge Ware recognized in the several orders relied

17   upon by Apple, and as numerous courts have held, there are circumstances under which a walled

18   garden approach can violate federal antitrust laws.  *See, e.g.*, *Eastman Kodak*, 504 U.S. 451.

19   Plaintiffs are entitled to prove their Section 2 claim by demonstrating that Apple's 7.0 "resulted in an

20   increased 'lock-in' effect for iPod owners who purchased songs online."  *See* ECF No. 788 at 3.  By

21   its motion, Apple seeks to eviscerate Plaintiffs' ability to offer any evidence in support of its claims.

22   Second, Apple does not have a manageable proposed order, but instead simply asks the Court to

23   restrain Plaintiffs (but again, not Apple) not to talk about Apple's "walled garden."

24          Once again, Apple seeks to limit Plaintiffs while still recognizing that evidence relating to the

25   integrated platform is highly relevant.  ECF No. 804 at 12 (evidence of "Apple's integrated

26

27   [10]     Again, should Apple's arguments be accepted, the Court should in fairness also bar Apple from
     introducing the same type of evidence as well as strike Apple's experts' opinions on the same issue:
28   that is, (specifically Ex. 1, 2011 Kelly Decl., ¶¶32-40; Ex. 2, 2013 Kelly Report, ¶¶89-166; Ex. 3,
     Murphy Report, ¶¶37-61; Ex. 4, Topel Report, ¶¶13, 20-21).

1    platform…is necessary for context and as a basis for understanding decisions made by Apple

2    regarding iTunes 7.0").[11]  For instance, in the testimony Apple wants stricken from Prof. Noll's

3    report (at 64-68), he discusses issues relevant to the KVC and DVC functions Apple added in 7.0:

4    the record labels wanted interoperability, Apple would not have to aid competitors to allow

5    competition in the marketplace, and "Consumers normally do not need vendors to protect them

6    against considering and then rejecting a marketing message that seamless integration is valuable."

7          Finally, Apple's request for an opening and closing instruction to the jury that the Court has

8    "already found" some of Apple's conduct to be lawful is blatant overreaching.  ECF No. 804  at 13

9    n.6.  As Plaintiffs point out in their motion *in limine*, it would be wholly inappropriate to influence

10   the jury's deliberations regarding 7.0 through evidence or argument that the Court has "already

11   found" Apple's other conduct not to be unlawful or anticompetitive.  Instructing the jury to that

12   effect would only exacerbate the prejudice, potentially leading jurors to believe that the Court's

13   ruling on 4.7 had some bearing on the lawfulness of 7.0 – notwithstanding Judge Ware's explicit

14   distinction between the two.  And it is in any event inaccurate to suggest that the Court has already

15   fully adjudicated all issues related to integration of Apple's products.

16   DATED:  October 14, 2014                    Respectfully submitted,
                                                 ROBBINS GELLER RUDMAN
17                                                 & DOWD LLP
                                                 BONNY E. SWEENEY
18                                               ALEXANDRA S. BERNAY
                                                 PATRICK J. COUGHLIN
19                                               CARMEN A. MEDICI
                                                 JENNIFER N. CARINGAL
20
                                                       s/ Bonny E. Sweeney
21                                                   BONNY E. SWEENEY

---

22   [11]   As one might expect with a motion as extreme as Apple's, the cases it cites are far afield from
     the topic and easily distinguishable.  Apple's reliance on *United States v. Skillman*, 922 F.2d 1370
23   (9th Cir. 1990) is misplaced.  In that criminal case the Ninth Circuit found it was not an abuse of
     discretion to allow in evidence that the defendant was a skinhead and noted that the standard is one
24   of unfair prejudice.  *Id.* at 1374.  Here, Apple has made no showing that evidence regarding
     interoperability in any way is prejudicial, let alone the type which "'appeals to the jury's sympathies,
25   arouses its sense of horror, provokes its instinct to punish.'"  *Id.*  Apple also relies on *Guillory v.
     Tilton*, No. CV-07-0775-ROS (PC), 2012 U.S. Dist. LEXIS 86383 (E.D. Cal. June 20, 2012),
26   another off base case.  In that prisoner suit, the court found irrelevant claims that the prisoner was
     denied meals and hygiene items, a matter already decided on summary judgment.  *Id.* at *6.  Here,
27   evidence regarding interoperability is relevant and highly probative of facts central to Plaintiffs'
     claims.
28

1

2    655 West Broadway, Suite 1900
    San Diego, CA 92101

3    Telephone: 619/231-1058
    619/231-7423 (fax)

4

    Class Counsel for Plaintiffs

5

    BONNETT, FAIRBOURN, FRIEDMAN
6       & BALINT, P.C.
    ANDREW S. FRIEDMAN

7    FRANCIS J. BALINT, JR.
    ELAINE A. RYAN

8    2325 E. Camelback Road, Suite 300
    Phoenix, AZ 85016

9    Telephone: 602/274-1100
    602/274-1199 (fax)

10

11    THE KATRIEL LAW FIRM
    ROY A. KATRIEL

12    1101 30th Street, N.W., Suite 500
    Washington, DC 20007

13    Telephone: 202/625-4342
    202/330-5593 (fax)

14    BRAUN LAW GROUP, P.C.
    MICHAEL D. BRAUN

15    10680 West Pico Blvd., Suite 280
    Los Angeles, CA 90064

16    Telephone: 310/836-6000
    310/836-6010 (fax)

17

    GLANCY BINKOW & GOLDBERG LLP
18    BRIAN P. MURRAY

19    122 East 42nd Street, Suite 2920
    New York, NY 10168

20    Telephone: 212/382-2221
    212/382-3944 (fax)

21

    GLANCY BINKOW & GOLDBERG LLP
22    MICHAEL GOLDBERG
    1925 Century Park East, Suite 2100

23    Los Angeles, CA 90067
    Telephone: 310/201-9150

24    310/201-9160 (fax)

25    Additional Counsel for Plaintiffs

26

27

28

1

<u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that on October 14, 2014, I authorized the electronic filing of the foregoing

3  with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

4  the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5  caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6  CM/ECF participants indicated on the attached Manual Notice List.

7          I certify under penalty of perjury under the laws of the United States of America that the

8  foregoing is true and correct.  Executed on October 14, 2014.

9                                         s/ Bonny E. Sweeney
                                          BONNY E. SWEENEY

10

11                                        ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                          655 West Broadway, Suite 1900
12                                        San Diego, CA  92101-8498
                                          Telephone:  619/231-1058
13                                        619/231-7423 (fax)

14                                        E-mail:       bonnys@rgrdlaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 4:05-cv-00037-YGR The Apple iPod iTunes Anti-Trust Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amir Q Amiri**
  aamiri@jonesday.com,ttualaulelei@jonesday.com

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com,LMix@rgrdlaw.com,TJohnson@rgrdlaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Jennifer N. Caringal**
  JCaringal@rgrdlaw.com

- **Todd David Carpenter**
  Todd@Carpenterlawyers.com

- **Patrick J. Coughlin**
  PatC@rgrdlaw.com,SusanM@rgrdlaw.com,e_file_sd@rgrdlaw.com,SJodlowski@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **John F. Cove , Jr**
  jcove@bsfllp.com,kmurphy@bsfllp.com,dnasca@bsfllp.com,sphan@bsfllp.com

- **Meredith Richardson Dearborn**
  mdearborn@bsfllp.com,cseki@bsfllp.com

- **Karen Leah Dunn**
  kdunn@bsfllp.com

- **Andrew S. Friedman**
  khonecker@bffb.com,rcreech@bffb.com,afriedman@bffb.com

- **Martha Lea Goodman**
  mgoodman@bsfllp.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com,winkyc@zhlaw.com

- **William A. Isaacson**
  wisaacson@bsfllp.com,jmilici@bsfllp.com

- **Roy Arie Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com

- **Carmen Anthony Medici**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,mlandsborough@jonesday.com,pwalter@jonesday.com

- **Brian P. Murray**
  bmurray@glancylaw.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Elaine A. Ryan**
  eryan@bffb.com,nserden@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Michael Tedder Scott**
  mike.scott@dlapiper.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **Bonny E. Sweeney**
  bonnys@rgrdlaw.com,slandry@rgrdlaw.com,E_file_sd@rgrdlaw.com,ckopko@rgrdlaw.com

- **Helen I. Zeldes**
  helenz@zhlaw.com,winkyc@zhlaw.com,aarono@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)