*ORIGINAL*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

| | | |
|---|---|---|
| THE APPLE IPOD ITUNES | ) | NO. C 05-00037 YGR |
| ANTITRUST LITIGATION | ) | |
| | ) | PAGES 1 - 53 |
| | ) | |
| | ) | STATUS CONFERENCE |
| | ) | |
| | ) | |
| | ) | OAKLAND, CALIFORNIA |
| _____ | ) | FRIDAY, OCTOBER 3, 2014 |

<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

APPEARANCES:

FOR PLAINTIFFS:          ROBBINS GELLER RUDMAN & DOWD LLP
                         655 WEST BROADWAY, SUITE 1900
                         SAN DIEGO, CALIFORNIA  92101
                    BY:  BONNY E. SWEENEY,
                         ALEXANDRA S. BERNAY,
                         JENNIFER N. CARINGAL,
                         CARMEN A. MEDICI, ATTORNEYS AT LAW

                         BONNETT FAIRBOURN FRIEDMAN & BALINT PC
                         4023 CAIN BRIDGE ROAD
                         FAIRFAX, VIRGINIA 22030
                    BY:  FRANCIS J. BALINT, JR.
                         ATTORNEY AT LAW

            (APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:        RAYNEE H. MERCADO, CSR NO. 8258

     PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

**A P P E A R A N C E S (CONT'D.)**

```
FOR DEFENDANT:          BOIES, SCHILLER & FLEXNER LLP
                        5301 WISCONSIN AVENUE NW
                        WASHINGTON, D.C.  20015
                  BY:   WILLIAM A. ISAACSON,
                        KAREN L. DUNN,
                        MARTHA L. GOODMAN, ATTORNEYS AT LAW


                        BOIES, SCHILLER & FLEXNER LLP
                        1999 HARRISON STREET, SUITE 900
                        OAKLAND, CALIFORNIA  94612
                  BY:   MEREDITH R. DEARBORN, ATTORNEY AT LAW

                        JONES DAY
                        555 CALIFORNIA STREET, 26TH FLOOR
                        SAN FRANCISCO, CALIFORNIA  94104-1500
                  BY:   AMIR Q. AMIRI,
                        DAVID C. KIERNAN, ATTORNEYS AT LAW


                        --oOo--
```

```
 1    FRIDAY, OCTOBER 3, 2014                          8:58 A.M.

 2                       P R O C E E D I N G S

 3              THE CLERK:  CALLING CIVIL ACTION 05-0037, THE APPLE

 4    IPOD ANTITRUST LITIGATION.

 5       COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

 6              THE COURT:  OKAY.  SO WHAT I WANT -- ARE YOU GOING TO

 7    BE TRIAL COUNSEL, LEAD?

 8              MS. SWEENEY:  YES, YOUR HONOR.

 9              THE COURT:  WHO'S LEAD TRIAL?  ARE YOU?

10              MS. SWEENEY:  YES, YOUR HONOR.

11              THE COURT:  OKAY.

12              MS. SWEENEY:  BONNY SWEENEY, ROBBINS GELLER RUDMAN &

13    DOWD FOR THE PLAINTIFFS.

14              THE COURT:  AND WHO'S GOING TO TRY THE CASE WITH YOU?

15              MR. BALINT:  GOOD MORNING.  FRANK BALINT, BONNETT

16    FAIRBOURN ALSO FOR THE PLAINTIFF.

17              THE COURT:  FRANK BALINT, YOU SAID?

18              MR. BALINT:  YES, YOUR HONOR.

19              THE COURT:  OKAY.  NEXT?

20              MS. BERNAY:  GOOD MORNING, YOUR HONOR, ALEXANDRA

21    BERNAY FROM ROBBINS GELLER RUDMAN & DOWD.

22              THE COURT:  OKAY.

23              MS. BERNAY:  THANK YOU.

24              MR. MEDICI:  MORNING, YOUR HONOR.  CARMEN MEDICI ALSO

25    FROM ROBBINS GELLER RUDMAN & DOWD.
```

```
 1              THE COURT:  ALL RIGHT.

 2              MS. CARINGAL:  GOOD MORNING.  JENNIFER CARINGAL, ALSO

 3   FROM ROBBINS GELLER RUDMAN & DOWD.

 4              THE COURT:  OKAY.

 5         MS. SWEENEY, HOW MANY JURY TRIALS HAVE YOU TRIED?

 6              MS. SWEENEY:  ONE JURY TRIAL, YOUR HONOR.

 7              THE COURT:  MR. BALINT?

 8              MR. BALINT:  NONE, YOUR HONOR.

 9              THE COURT:  MS. BERNAY?

10              MS. BERNAY:  NO JURY TRIALS, YOUR HONOR.

11              THE COURT:  OKAY.  YOU DON'T HAVE TO COME FROM -- TO

12   THE MIC.  HOW ABOUT THE TWO OF YOU?  ANY?

13              MR. MEDICI:  ALSO NONE.

14              MS. CARINGAL:  NONE.

15              THE COURT:  ALL RIGHT.  ON THE DEFENSE, THEN, WHO DO

16   I HAVE AS LEAD TRIAL COUNSEL?

17              MR. ISAACSON:  BILL ISAACSON, BOIES SCHILLER &

18   FLEXNER, YOUR HONOR.

19              THE COURT:  YOU'RE REALLY FAR DOWN MY LIST.

20         ARE YOU ON MY LIST?

21              MR. ISAACSON:  I'M OF RECENT ADDITION TO YOUR LIST.

22              THE COURT:  A RECENT ADDITION.  HOW RECENTLY?

23              MR. ISAACSON:  LAST MONDAY.

24              THE COURT:  OKAY.  MR. ISAACSON.  HOW MANY TRIALS

25   HAVE YOU?
```

```
 1              MR. ISAACSON:  I BELIEVE IT'S -- JURY TRIALS, I THINK

 2       IT'S FIVE.

 3              THE COURT:  OKAY.

 4          AND WHO'S YOUR SECOND CHAIR?

 5              MR. ISAACSON:  KAREN DUNN WILL INTRODUCE HERSELF.

 6              MS. DUNN:  GOOD MORNING, YOUR HONOR.  KAREN DUNN,

 7       ALSO OF BOIES SCHILLER & FLEXNER.

 8              THE COURT:  AND HOW MANY HAVE YOU TRIED?

 9              MS. DUNN:  ALSO FIVE.

10              THE COURT:  KAREN DUNN, YOU SAID, RIGHT?

11              MS. DUNN:  YES.

12              THE COURT:  OKAY.  NO. 3?

13              MS. DEARBORN:  GOOD MORNING, YOUR HONOR.  MEREDITH

14       DEARBORN FROM BOIES SCHILLER & FLEXNER.

15              THE COURT:  HOW ABOUT YOU?

16              MS. DEARBORN:  ONE JURY TRIAL AND ONE WITH AN

17       ADVISORY JURY.

18              THE COURT:  OKAY.

19          FOURTH?

20              MS. GOODMAN:  GOOD MORNING, YOUR HONOR.  MARTHA

21       GOODMAN BOIES SCHILLER & FLEXNER.  NO JURY TRIALS.

22              THE COURT:  ALL RIGHT.  NEXT?

23              MR. KIERNAN:  GOOD MORNING, YOUR HONOR.  DAVID

24       KIERNAN WITH JONES DAY ON BEHALF OF APPLE.  ONE JURY TRIAL,

25       THREE TO FIVE BENCH TRIALS.
```

 1        **THE COURT:**  OKAY.

 2      YOU MUST BE AMIR AMIRI.

 3        **MR. AMIRI:**  YES, YOUR HONOR.  AMIR AMIRI FROM JONES

 4    DAY.  NO JURY TRIALS.

 5        **THE COURT:**  ALL RIGHT.  THAT IS HELPFUL INFORMATION.

 6      WE HAVE, AS I INDICATED, A LOT TO DO.  AND I HAVE --

 7    ESPECIALLY GIVEN THE LACK OF JURY TRIAL EXPERIENCE, I WILL GO

 8    OVER -- I'LL SPEND MORE TIME GOING OVER SOME OF THE BASIC

 9    ISSUES WITH RESPECT TO JURY TRIALS.  BY NOW, YOU SHOULD

10    ALREADY BE OR SHOULD HAVE ALREADY COMPLIED WITH A NUMBER OF

11    ISSUES WITH RESPECT TO MY STANDING ORDER PREPARING FOR JURY

12    TRIALS.

13      I'LL HAVE LEAD COUNSEL FOR BOTH COME FORWARD.

14      YOU SHOULD, IF YOU DO NOT HAVE IT IN FRONT OF YOU -- IN

15    CASE YOU HAVE IT WITH YOU, I AM GOING TO GO THROUGH THOSE

16    PRETRIAL JURY -- THOSE PRETRIAL INSTRUCTIONS SO THAT WE CAN

17    MAKE MOST EFFICIENT USE OF YOUR TIME.  THOSE ARE GENERIC

18    INSTRUCTIONS.  I FREQUENTLY DO NOT HAVE -- I FREQUENTLY DON'T

19    HAVE THE SAME KIND OF MOTION PRACTICE, AND I NEED PEOPLE TO DO

20    EXACTLY WHAT I'VE PUT ON THERE.

21      I THINK I CAN IN YOUR CASE SHORT-CIRCUIT SOME OF IT TO

22    MAKE IT MORE EFFICIENT.

23      WHAT YOU WILL QUICKLY LEARN ABOUT ME IS THAT I AM

24    ORGANIZED.  I DEMAND THAT YOU ARE ORGANIZED.  I DO NOT WASTE

25    JURORS' TIME.  I AM INCREDIBLY AND HIGHLY RESPECTFUL OF THEIR

```
 1    TIME.  AND IF YOU COULD BE A FLY ON THE WALL AFTER A JURY
 2    TRIAL -- ONE OF MY JURY TRIALS HAPPENS -- YOU WOULD LEARN
 3    THAT.  SO -- I'VE TRIED MANY JURY CASES.  AND AFTER EVERY JURY
 4    CASE, I AM -- I GO -- ON THE FEDERAL SIDE, NOT ON THE STATE
 5    SIDE -- BUT I HAVE GONE, I'VE SPOKEN WITH THE JURORS, AND THEY
 6    REALLY APPRECIATE THE FACT THAT I DON'T WASTE THEIR TIME.
 7    THEY UNDERSTAND AND THEY GET THE SENSE THAT WE WORK VERY HARD
 8    BEFORE THE DAY STARTS AND AFTER THE DAY ENDS TO USE THEIR TIME
 9    EFFECTIVELY.  THAT MERELY REINFORCES MY PRACTICE THAT I DEMAND
10    THAT WE DO THAT.
11        SO I DON'T CONDUCT SIDEBARS.  YOU WILL NOT GET THOSE.  WE
12    HAVE FOUR AND A HALF HOURS OF TRIAL EVERY DAY.  YOU WILL HAVE
13    TIME LIMITS.  WHY?  BECAUSE LAWYERS ARE NOT VERY GOOD AT
14    GAUGING TIME.  THEY -- IT -- IT NEVER CEASES TO AMAZE ME, EVEN
15    WITH TIME LIMITS, THAT LAWYERS WANT TO SAY THE SAME THING OVER
16    AND OVER AND OVER AGAIN.  AND THE JURORS ASK WHY ARE THEY
17    DOING THAT?  THEY'RE WASTING OUR TIME.
18        SO YOU WILL HAVE TIME LIMITS, AND THE WAY THE TIME LIMITS
19    WILL WORK -- AND WE'LL GET INTO THIS MORE LATER -- BUT FOUR
20    AND A HALF HOURS A DAY, IF IT IS YOUR -- IF IT'S YOUR
21    CASE-IN-CHIEF, YOU WILL START WITH FOUR AND A HALF HOURS LESS
22    CROSS EXAM.
23        SO I -- I KEEP A EXCEL SPREADSHEET UP HERE.  I KEEP TRACK.
24    YOU SHOULD DOUBLE-CHECK MY MATH.  BUT IF THE CROSS-EXAMINATION
25    TOOK 30 MINUTES, THEN THE CASE-IN-CHIEF, WHOEVER IT IS --
```

```
 1   LET'S SAY IT'S THE PLAINTIFF -- YOU'RE ASSESSED FOUR HOURS.

 2        THAT MEANS ARGUING TOO OFTEN, NOT HAVING YOUR WITNESS

 3   RIGHT OUTSIDE THE DOOR READY TO COME IN, THAT ALL COUNTS

 4   AGAINST YOU.  NOT BEING PREPARED, NOT KNOWING WHERE YOUR

 5   EXHIBITS ARE, ALL THAT COUNTS AGAINST YOU.  SO YOU ARE GOING

 6   TO HAVE TO HAVE EVERYTHING AT YOUR FINGERTIPS IF YOU WANT TO

 7   MAKE THE EFFECTIVE USE OF YOUR TIME.

 8        IT ALSO MEANS THAT WE WILL DO A LOT OF WORK TO MAKE

 9   SURE -- AND I DO A LOT OF WORK IN ADVANCE WITH YOU TO MAKE

10   SURE THAT THERE'S NO NEED FOR YOU TO HAVE EXTENDED ARGUMENTS

11   ON EVIDENTIARY ISSUES BECAUSE WE'VE RESOLVED THEM ALL IN

12   ADVANCE.

13        MY VIEW IS THAT, AS MUCH AS PEOPLE LIKE PERRY MASON OR

14   MAYBE LAW AND ORDER, A FEW GOOD MEN, MY COUSIN VINNIE -- AS

15   MUCH AS WE LIKE THOSE SHOWS WHERE THOSE SURPRISE GOTCHA

16   CROSS-EXAMINATION MOMENTS EXIST AND MAYBE THERE'S SOME WITH

17   CROSS-EXAMINATION, BUT AT THIS POINT, JURY TRIALS AREN'T A

18   SURPRISE.  MILLIONS OF DOLLARS OR HUNDREDS OF THOUSANDS OF

19   DOLLARS, I'M SURE, HAVE BEEN SPENT ON THIS CASE; SIGNIFICANT

20   AMOUNTS OF DISCOVERY; SIGNIFICANT NUMBERS OF DEPOSITIONS.  YOU

21   KNOW WHAT'S ON THE OTHER SIDE.

22        THIS ISN'T A -- IT'S AN ANTITRUST CASE.  SO WE AREN'T

23   GOING TO SPEND TIME ARGUING ABOUT EVIDENCE DURING TRIAL.  I AM

24   GOING TO LET YOU PRESENT YOUR CASE TO THE JURY, AND THE JURY'S

25   GOING TO DECIDE THE FACTS.  THAT'S THE POINT.  THEY GET TO
```

1    DECIDE THE FACTS.  NEWS FLASH:  YOU DON'T AGREE ON THE FACTS.

2    YOU DON'T AGREE.  SURPRISE, SURPRISE.  THAT'S WHY WE'RE HAVING

3    A TRIAL.

4        SO WHEN YOU GO -- AND YOU WILL HAVE TO GO AND MEET AND

5    CONFER OVER THE ADMISSIBILITY OF EXHIBITS -- IT IS NOT

6    SUFFICIENT TO SAY, "WELL, THAT'S PREJUDICIAL BECAUSE IT HURTS

7    MY CASE."  NO JOKE.

8        USUALLY, ALL THE EVIDENCE THAT THE OTHER SIDE WANTS TO PUT

9    IN IS PREJUDICIAL TO YOU.  THAT'S NOT THE STANDARD.  THE

10   STANDARD IS, IS IT UNDULY PREJUDICIAL.  AND, AGAIN, I'M

11   TALKING ABOUT AN ANTITRUST CASE HERE.  THIS IS NOT A MURDER

12   TRIAL WHERE WE HAVE THE PROSECUTION ATTEMPTING TO GET 25

13   GRUESOME PICTURES OF THE BODY INTO EVIDENCE.

14       THE LAST PATENT TRIAL WHICH I TRIED LAST MONTH, THOSE

15   FOLKS BROUGHT ME IN THE FIRST INSTANCE 136 PAGES OF DISPUTED

16   DEPOSITION DESIGNATIONS.  GUESS WHAT?  I SENT THEM -- I DENIED

17   THE WHOLE THING.  I SENT THE TRIAL COUNSEL INTO THE CONFERENCE

18   ROOM TO GO WORK IT OUT.  THREE TIMES, I HAD TO DO THIS.  BUT

19   BY THE TIME IT FINALLY GOT TO ME, WE WERE LOOKING AT ABOUT TEN

20   PAGES.  AND IT'S REALLY ALL I HAD TO RESOLVE.

21       I DON'T HAVE TO RESOLVE ALL THOSE OTHER THINGS.  I AM NOT

22   GOING TO DO IT.  I AM NOT GOING TO WASTE MY TIME.  YOU ARE

23   GOING TO BE REASONABLE ON BOTH SIDES.  AND WE'RE GOING TO

24   PRESENT THIS CASE TO THE JURY.  YOU'RE EACH GOING TO GET TO

25   TRY YOUR OWN CASE.  I WILL RESOLVE YOUR DIFFERENCES BUT ONLY

1    THOSE THINGS THAT ARE TRULY IMPORTANT.  YOU'RE GOING TO HAVE

2    TO COMPROMISE.

3        OKAY.  SO ACCORDING TO MY PRETRIAL INSTRUCTIONS, YOUR

4    STATEMENT IS DUE ON OCTOBER 14TH.  SUBSECTION A2A OF THAT

5    ORDER INDICATES THAT YOU NEED TO IDENTIFY THE SUBSTANCE OF THE

6    ACTION AND THE RELIEF PRAYED FOR.

7        OBVIOUSLY, I'VE DONE SUMMARY JUDGMENT IN THIS CASE.  I

8    DON'T NEED ANY EXTENDED -- ANY EXTENDED COMMENT.  I THINK WHAT

9    WOULD BE HELPFUL FOR YOU AND FOR ME IS FOR EACH OF YOU TO

10   IDENTIFY EACH CAUSE OF ACTION AND EACH AFFIRMATIVE DEFENSE

11   THAT IS GOING TO THE JURY AT THIS JUNCTION BECAUSE YOU'RE

12   GOING TO HAVE TO DO JURY INSTRUCTIONS SO YOU MIGHT AS WELL PUT

13   IT OUT THERE.

14       YOU SHOULD ALSO SPECIFICALLY ALLEGE OR SPECIFICALLY

15   INDICATE THE DAMAGES THAT YOU ARE SEEKING.  NOW -- AND THAT'S

16   ALL YOU HAVE TO DO, SO DON'T -- DON'T SPEND A LOT OF TIME ON

17   THAT SECTION.

18       SUBSECTION B REQUIRES THE FACTUAL BASIS FOR -- FOR THE

19   ACTION.  AGAIN, USUALLY, ESPECIALLY IF IT'S A BENCH TRIAL, ITS

20   IMPORTANT TO HAVE THOSE.  HAVE YOU CONSIDERED -- ARE THERE

21   STIPULATIONS THAT YOU CAN WORK ON SO THAT YOU CAN MAKE THE

22   MOST EFFECTIVE USE OF YOUR TRIAL TIME?  HAVE YOU STARTED

23   TALKING ABOUT THOSE ISSUES?

24           MR. ISAACSON:  YOUR HONOR, UNDER THE SCHEDULE, WE

25   EXCHANGED THE DRAFT PRETRIAL STATEMENTS INCLUDING STIPULATIONS

1    ON THE 30TH, AND WE ARE SCHEDULE TO MEET AND CONFER ON THE 6TH

2    AND 7TH ON THE -- THE ISSUES RAISED BY THE PRETRIAL STATEMENT.

3        **THE COURT:**  OKAY.  AND SO I TAKE IT THERE ARE

4    STIPULATIONS IN THERE.

5        **MR. ISAACSON:**  YES.

6        **MS. SWEENEY:**  AND -- YES, AND I WOULD JUST ADD, YOUR

7    HONOR, IS THAT THERE ARE -- ARE A LOT OF UNDISPUTED FACTS ON

8    BOTH SIDES THAT WE SHOULD BE ABLE TO REACH AGREEMENT ON.

9        **THE COURT:**  OKAY.

10    WITH RESPECT TO -- THEN TO THOSE UNDISPUTED FACTS, WHAT

11    YOU NEED -- ONE OF THE THINGS THAT YOU NEED TO THINK ABOUT IS

12    HOW YOU WANT ME TO PRESENT THEM.

13        SO MORE SPECIFICALLY, ARE THESE SOMETHING THAT YOU WANT ME

14    TO READ TO THE JURY?  OR IS IT SOMETHING THAT YOU JUST NEED IN

15    THE RECORD TO MAKE YOUR ARGUMENTS AND THAT THE DOCUMENT ITSELF

16    CAN BE MARKED AS AN EXHIBIT WHICH IS THEN ADMITTED INTO

17    EVIDENCE AND THERE FOR THE JURY TO CONSIDER WHEN IT GOES INTO

18    THEIR DELIBERATIONS?

19        DIFFERENT CASES HAVE DIFFERENT NEEDS.  I CAN TELL YOU THAT

20    JURORS GET REALLY TIRED OF PEOPLE READING TO THEM.  AND I AM

21    HAPPY TO SIT HERE AND READ IT TO THEM IF I -- IF I NEED TO.

22    AND I HAVE IN CERTAIN CASES WHERE IT'S IMPORTANT FOR THEM TO

23    HAVE THOSE FACTUAL UNDERSTANDINGS ABOUT THE CASE PRIOR TO

24    HEARING EVIDENCE.

25        BUT IF THEY'RE JUST THINGS YOU NEED IN THE RECORD AND

```
 1   PERHAPS YOU EVEN WANT TO SEPARATE THEM, THEN YOU PUT THEM IN
 2   THE RECORD.  WE -- WE ADMIT THEM OR I ADMIT THEM AS AN EXHIBIT
 3   AND -- AND WE MOVE ON.  SO THINK ABOUT THAT, OKAY, WHEN YOU
 4   MEET AND CONFER NEXT WEEK.
 5       ARE THERE GOING TO BE -- IN TERMS OF DISPUTED LEGAL
 6   ISSUES, IS THERE GOING TO BE -- BECAUSE I TAKE IT BY THIS TIME
 7   YOU SHOULD HAVE ALREADY EXCHANGED YOUR MOTIONS IN LIMINE.
 8           MR. ISAACSON:  YES, YOUR HONOR.
 9           MS. SWEENEY:  YES, YOUR HONOR.
10           THE COURT:  ALL RIGHT.  ARE THERE GOING TO BE LEGAL
11   ISSUES THAT -- THAT I NEED TO DEAL WITH?
12           MS. SWEENEY:  I THINK, YOUR HONOR, WITH RESPECT TO
13   JURY INSTRUCTIONS, THERE WILL BE SOME LEGAL ISSUES.
14           THE COURT:  OKAY.  BUT JUST WITH RESPECT TO JURY
15   INSTRUCTIONS OR ARE THERE OTHERS?
16           MR. ISAACSON:  I BELIEVE YOU WILL HAVE LEGAL ISSUES
17   TO DECIDE ON THE MOTIONS IN LIMINE.
18           THE COURT:  SUCH AS WHAT?
19           MR. ISAACSON:  FOR EXAM- -- THERE ARE ISSUES WITH
20   RESPECT TO ANTITRUST LAW AS TO WHAT CAN BE PUT BEFORE THE JURY
21   AND WHAT COULD BE PART OF THE PLAINTIFFS' CASE.
22       FOR EXAMPLE, THE PLAINTIFFS' EXPERTS MAKE ARGUMENTS THAT
23   APPLE COULD HAVE DESIGNED ITS SYSTEM DIFFERENTLY.  UNDER THE
24   ANTITRUST LAW, LESS-RESTRICTIVE ALTERNATIVES ARE NOT PART OF A
25   SECTION 2 CLAIM, OR RELEVANT.  IT'S AN IMPORTANT ARGUMENT BY
```

1    THE EXPERT.

2        THERE ARE ARGUMENTS --

3            **THE COURT:**  SO WHY DIDN'T YOU --

4        ALL RIGHT.  KEEP GOING.

5            **MR. ISAACSON:**  THESE ARE NOT -- THESE ARE NOT MOTION

6    FOR SUMMARY JUDGMENT ISSUES.  THESE ARE ISSUES AS TO WHAT

7    EVIDENCE COMES IN IN ORDER TO MAKE THE PLAINTIFFS' CASE.

8            **THE COURT:**  YOU WOULD USUALLY SEE THIS AS A MOTION TO

9    STRIKE.  AND I DON'T THINK I HAD A MOTION TO STRIKE A SPECIFIC

10   OPINION FROM ANY OF THE EXPERTS.  I HAD *DAUBERT* BUT NOT --

11   THERE WASN'T ANY MOTION PRACTICE WHICH WOULD HAVE STRICKEN

12   PORTIONS OF THOSE EXPERT REPORTS.

13           **MR. ISAACSON:**  WELL, BECAUSE THERE WAS A SCHEDULE FOR

14   MOTIONS IN LIMINE AS PART OF THE SCHEDULE.  AND WE HAVE NO --

15   THERE'S NO RULE THAT SAYS WE HAVE TO STRIKE A PART OF THE

16   REPORT SO THAT YOU CAN'T SEE IT.  THESE ARE ISSUES AS TO WHAT

17   THE JURY IS GOING TO SEE OR HEAR.  AND IT'S AN ENTIRELY

18   DIFFERENT SET OF ISSUES IN TERMS OF WHAT THE COURT SEES AND

19   HEARS, BECAUSE IF THE COURT SEES AND HEARS SOMETHING THAT'S

20   ABSOLUTELY IRRELEVANT, WE CAN -- WE CAN SAY IN PAPERS OR IN

21   SUMMARY JUDGMENT PROCEEDINGS, THAT'S IRRELEVANT.

22       THAT'S NOT THE CASE WITH THE JURY.

23           **THE COURT:**  OKAY.  SO HOW MUCH OF THE REPORT, THEN,

24   ARE YOU SEEKING TO STRIKE AND WHOSE REPORT?

25           **MR. ISAACSON:**  THERE ARE PORTIONS OF TECHNICAL

1    EXPERT, DR. MARTIN, OF PLAINTIFFS.  AND PORTIONS OF THE

2    REPORTS OF DR. NOLL, WHICH REFER TO LEAST-RESTRICTIVE

3    ALTERNATIVES, AND THERE ARE OTHER ISSUES AS TO WHETHER WE HAD

4    ANY OBLIGATION TO PROVIDE INTEROPERABILITY.  AND THESE ARE --

5    THESE HAVE BEEN PROVIDED IN DRAFT MOTION IN LIMINES ON THE

6    30TH TO THE PLAINTIFFS.

7           THE COURT:  WELL, I SUSPECT YOU'RE NOT GOING TO GET

8    AGREEMENT ON SOMETHING LIKE THAT.

9           MS. SWEENEY:  THAT'S CORRECT, YOUR HONOR.

10          THE COURT:  SO THAT'S -- I WANT THE MOTIONS SOONER

11   RATHER THAN LATER.

12          MR. ISAACSON:  OKAY.

13          THE COURT:  IF I'M GOING TO STAY ON TRACK, I NEED TO

14   HAVE THESE ISSUES RESOLVED.

15      NOW, DOES YOUR MOTION IDENTIFY THE SPECIFIC -- EXCUSE

16   ME -- THE SPECIFIC PARAGRAPH NUMBERS OF EACH REPORT AT ISSUE?

17          MR. ISAACSON:  WE CERTAINLY PROVIDE EXAMPLES BY

18   PARAGRAPH NUMBER OR PAGE NUMBER OF WHERE THE EXPERTS SAY

19   THESE -- THESE ARGUMENTS.

20      WE CAN GO BACK AND CHECK TO SEE WHETHER IT'S

21   COMPREHENSIVE, IF WE COVERED EVERY TIME THEY'VE SAID IT.  BUT

22   WE WE'VE DEFINITELY GIVEN EXAMPLES OF WHEN IT'S BEEN SAID.

23          THE COURT:  ALL RIGHT.  WELL, I'M GOING TO NEED IT TO

24   BE COMPREHENSIVE, AND THIS IS WHY.

25          MR. ISAACSON:  OKAY.

1            **THE COURT:**   AND, AGAIN, THIS IS ALL LOOKING FIVE

2     STEPS DOWN.  ONCE WE GET INTO TRIAL.  THIS IS WHAT HAPPENS.

3     I'VE GRANTED, FOR INSTANCE, THEORETICALLY, A MOTION TO STRIKE

4     I TAKE THOSE REPORTS, AND I STRIKE THEM.  I LITERALLY STRIKE

5     THEM FROM MY -- MY COPY WHICH I ALWAYS HAVE WITH ME.

6         THEN WE HAVE TESTIMONY.  AND SOMEONE TRIES TO TESTIFY.

7     "OBJECTION, YOUR HONOR, IT'S PREVIOUSLY SUBJECT TO THE COURT'S

8     ORDER."  OKAY?

9         AND I'LL ASK THE -- AND I'M -- AND I'M LOOKING AT YOU

10    BECAUSE IT RELATES TO YOUR -- AT LEAST THIS MOTION RELATES TO

11    YOUR EXPERTS.

12        I WILL THEN ASK YOU, IDENTIFY THE PARAGRAPH NUMBERS OF THE

13    REPORT THAT THE EXPERT'S PROFFERED TESTIMONY IS BASED ON.  YOU

14    WILL HAVE TO IDENTIFY SPECIFICALLY WHAT PARAGRAPH THAT COMES

15    FROM.

16        IF I LOOK AT MY REPORT AND IT IS STRICKEN, THE OBJECTION

17    IS SUSTAINED.  IF IT IS NOT, THEN IT'S OVERRULED.  IF YOU'RE

18    NOT COMPREHENSIVE, THAT'S ON YOU.

19            **MR. ISAACSON:**  UNDERSTOOD, YOUR HONOR.  WE CAN UPDATE

20    OUR MOTION VERY QUICKLY TO -- TO DO THAT.

21            **THE COURT:**  AND THAT'S FINE.  I'LL GIVE YOU THE TIME

22    TO DO THAT.  I'M JUST EXPLAINING TO THE BOTH OF YOU HOW THIS

23    PLAYS OUT IN A JURY TRIAL.  ALL RIGHT?  BECAUSE IT HAPPENS.

24        ACTUALLY, I'M HOPING IT IS LESS ARDUOUS THAN THE LAST ONE

25    WHERE IT WAS HAPPENING IN -- OVER THE ARCHITECTURE OF

```
 1   SEMICONDUCTOR CHIPS.  THINK I GET ECONOMICS A LITTLE BIT

 2   BETTER THAN THAT, BUT ANYWAY, THAT'S HOW IT WILL PLAY OUT.

 3       SO I NEED COMPREHENSIVE LISTS.  OKAY?

 4       ALL RIGHT.  WHEN CAN YOU GET THE MOTION ON FILE?

 5                     (OFF-THE-RECORD DISCUSSION.)

 6           THE COURT:  CAN YOU DO IT MONDAY?  YOU ALREADY HAVE

 7   IT WRITTEN.

 8           MR. ISAACSON:  IF WE COULD HAVE TILL TUESDAY, I WOULD

 9   APPRECIATE THAT.

10           THE COURT:  OKAY.  TUESDAY THE 7TH.  THE ARGUMENTS I

11   TAKE IT ARE THE SAME.  YOU'RE JUST GOING TO --

12           MR. ISAACSON:  YES.

13           THE COURT:  ALL RIGHT.  SO YOU CAN ALREADY START

14   WORKING ON YOUR OPPOSITION.  I'LL GIVE YOU A WEEK TO OPPOSE.

15           MS. SWEENEY:  OKAY.

16           THE COURT:  THE 14TH.

17           MS. SWEENEY:  THANK YOU, YOUR HONOR.

18           THE COURT:  OKAY.  OTHER -- OTHER BIG ISSUES THAT YOU

19   MAY NOT BE ABLE TO RESOLVE.  YOU SHOULD ALL KNOW THAT I HAVE

20   IN THIS ORDER, WHICH YOU WILL GET A PRETRIAL ORDER AFTER

21   TODAY, THE BASICS.

22       WITNESSES EXCLUDED UNTIL TESTIMONY IS COMPLETED.  NO

23   REFERENCE TO SETTLEMENT DISCUSSIONS, MEDIATION OR INSURANCE,

24   NO REFERENCE TO WEALTH OR PUNITIVES TO THE EXTENT IT APPLIES.

25       SO THOSE ARE JUST SOME OF THE BASICS.
```

```
 1        BUT NOW THAT YOU'VE EXCHANGED THE MOTIONS, OTHER KIND OF

 2   BIG LEGAL ISSUES AS OPPOSED TO, YOU KNOW, SPECIFIC CONCERNS

 3   ABOUT SPECIFIC DOCUMENTS OR SPECIFIC TESTIMONY?

 4            MS. SWEENEY:  NO, YOUR HONOR.

 5            MR. ISAACSON:  I THINK THAT'S IT.

 6            THE COURT:  OKAY.

 7        LET'S TALK A LITTLE BIT MORE ABOUT EXPERTS SINCE WE'RE ON

 8   THAT TOPIC.  IN GENERAL --

 9            MS. SWEENEY:  YOUR HONOR, CAN I INTERRUPT?  I'M

10   SORRY.  SOME OF OUR MOTIONS IN LIMINE RAISE THE SAME SORTS OF

11   ISSUES THAT MR. ISAACSON RAISED AND SO WE WOULD REQUEST ON THE

12   SAME SCHEDULE TO --

13            THE COURT:  SO WHAT ARE THOSE?

14            MS. SWEENEY:  -- CONVERT THOSE TO MOTIONS TO STRIKE.

15            THE COURT:  WHAT ARE THOSE?

16            MS. SWEENEY:  THEY ARE ISSUES PERTAINING TO WHETHER

17   THEIR EXPERT CAN OPINE ABOUT ISSUES THAT ARE NO LONGER IN THE

18   CASE OR -- OR CAN'T, SO IT'S SORT OF THE REVERSE OF WHAT

19   MR. ISAACSON IS MOVING ABOUT.

20            THE COURT:  OKAY.  YOU NEED TO BE MORE EXPLICIT THAN

21   THAT.

22            MS. SWEENEY:  HANG ON.  I --

23            THE COURT:  MR. BALINT, IF YOU WANT TO ADDRESS THOSE

24   ONES, THAT'S FINE.

25            MS. SWEENEY:  OH, YOUR HONOR, MR. BALINT REMINDED
```

1    ME -- I'M SORRY -- THAT WE HAVE ONE MOTION IN LIMINE THAT GOES

2    TO WHETHER THE DEFENDANT SHOULD BE ABLE TO PUT ON TESTIMONY BY

3    TWO EXPERTS THAT'S OVERLAPPING.

4        SO IF YOUR HONOR CONSIDERS THAT IN THE NATURE OF A MOTION

5    TO STRIKE, WE CAN REPHRASE THAT AND PUT IT IN -- IN THAT FORM

6    ALTHOUGH IN OUR MOTION IN LIMINE, WE ALREADY CITE THE SPECIFIC

7    PARAGRAPHS AND EXHIBITS THAT OVERLAP.

8            **THE COURT:**  OKAY.  WELL, I'LL LET THE TWO OF YOU SEE

9    IF YOU CAN -- WELL, SO -- SO YOU WANT TO STRIKE IT ON THE

10   BASIS THAT IT'S DUPLICATIVE?

11           **MS. SWEENEY:**  YES, YOUR HONOR.

12           **THE COURT:**  IS THERE AN INTENT TO TRY TO GET

13   DUPLICATIVE TESTIMONY?

14           **MR. ISAACSON:**  NO, YOUR HONOR.

15           **THE COURT:**  ALL RIGHT.  SEE IF YOU CAN WORK THAT ONE

16   OUT.  IF NOT, I'LL PUT YOU ON A SHORTENED SCHEDULE.

17       OKAY.  EXPERTS.  IN GENERAL, THE CURRICULUM VITAE OF

18   EXPERTS IS HEARSAY.  IT IS NOT ADMISSIBLE.  THEIR REPORTS ARE

19   HEARSAY.  THEY ARE NOT ADMISSIBLE.  WITH RESPECT TO THE

20   FORMER, I DON'T CARE ONE WAY OR THE OTHER, FRANKLY.  IF BOTH

21   OF YOU WANT THESE LONG DOCUMENTS DOCUMENTING THEIR HISTORY IN

22   EVIDENCE AND YOU CAN BOTH AGREE ON IT, THAT'S FINE.

23       LIKE I SAID IN THE ORDER, WE'VE GOT EXPERTS FROM ALL OVER

24   YOU KNOW, SOME OF THE BEST UNIVERSITIES, SO I DON'T REALLY

25   CARE.  I CAN ALSO TELL YOU I DON'T THINK A JURY EVER PICKS

 1    THOSE THINGS UP AND LOOKS AT THEM, SO I ALSO THINK THEY'RE

 2    IRRELEVANT, ULTIMATELY, TO THEIR DECISION-MAKING PROCESS.

 3        WHILE YOU HAVE THE PERSON ON THE STAND, PART OF THE

 4    PRESENTATION OF EVIDENCE TO THE JURY IS TO EXPLAIN TO THE JURY

 5    WHAT THEIR CREDENTIALS ARE.  THAT'S YOUR OPPORTUNITY.  BUT IT

 6    NEVER -- IT'S OFTEN -- I FIND THAT PEOPLE DON'T -- DON'T DO A

 7    LOT OF JURY TRIALS ALWAYS SEEM TO THINK THAT THEY CAN GET

 8    THESE DOCUMENTS IN, AND THEY DON'T.

 9        SAME THING WITH REPORTS.  THEY DO NOT COME IN.

10        ALL THAT SAID, THE JURY DOES NEED SOMETHING TO LOOK AT IN

11    TERMS OF WHETHER IT BE CHARTS, WHETHER IT BE DEMONSTRATIVES,

12    AND THEY'RE -- IT IS HELPFUL FOR THEM TO HAVE A LIMITED NUMBER

13    OF DOCUMENTS PREPARED BY THE EXPERTS THAT IS CONSISTENT WITH

14    THEIR REPORTS THAT MIGHT DEMONSTRATE COMPLEX VOLUMINOUS

15    MATERIAL.

16        I DON'T KNOW IF YOU HAVE THOUGHT ABOUT OR ATTEMPTED TO

17    START CREATING THESE KINDS OF DOCUMENTS, BUT I THINK THAT

18    THERE PROBABLY IS SOME NEED FOR IT.  AND IT IS ALSO TYPICALLY

19    THE SUBJECT OF MUCH DISPUTE.

20        AGAIN, YOU DON'T AGREE.  I UNDERSTAND THAT.  THAT'S NOT

21    REALLY THE QUESTION.  BUT TO THE EXTENT THAT YOU ARE -- WELL,

22    LET ME ASK, 'CAUSE I HAVE -- I HAVEN'T SEEN YOUR DOCUMENT

23    PRODUCTIONS.  ARE THERE PORTIONS OF DOCUMENTS THAT HAVE BEEN

24    PRODUCED, WHETHER IT BE A FEW CHARTS OR WHATEVER THAT YOU ARE

25    SEEKING TO ADMIT AND THAT YOU HAVE IDENTIFIED OR PLAN ON

```
 1        IDENTIFYING FOR PURPOSES OF MARKING SOMETHING AND HAVING

 2        ADMITTED AS EXHIBITS?

 3             MS. SWEENEY:  YES, YOUR HONOR.  WE'RE GOING TO MAKE

 4        EVERY ATTEMPT TO MAKE SURE THAT THOSE DOCUMENTS ARE -- ARE

 5        SHORT AND -- AND SUMMARIES RATHER THAN THE LONG DOCUMENT.

 6        WE'LL USE EXCERPTS WHERE WE CAN.

 7             THE COURT:  AND HAVE YOU -- BUT YOU HAVEN'T DONE ANY

 8        EXCHANGE YET; IS THAT RIGHT?

 9             MR. ISAACSON:  WE HAVE A SCHEDULE FOR EXCHANGING

10        SUMMARY EXHIBITS, WHICH WE WOULD SEEK TO BE ADMITTED.  AND IN

11        ADDITION, WE -- TALKING ABOUT NOTICE PROCEDURES TO ONE ANOTHER

12        FOR DEMONSTRATIVES THAT THE JURY WOULD RECEIVE BUT NOT BE

13        ADMITTED SO THAT YOU WON'T HAVE TO HAVE OBJECTIONS AT THE LAST

14        MINUTE TO THESE SORTS OF THINGS, AND WE CAN WORK THESE OUT IN

15        ADVANCE.

16             THE COURT:  OKAY.  AND HAVE YOU AGREED ON A SCHEDULE

17        YET?

18             MS. SWEENEY:  YES, WE HAVE, YOUR HONOR.

19             THE COURT:  WHAT IS THAT SCHEDULE?

20             MS. SWEENEY:  WE -- WE EXCHANGED OUR EXHIBIT LISTS

21        AND EXHIBITS LAST WEEK.  AND I BELIEVE THAT WE'RE EXCHANGING

22        THE -- THE SUMMARIES AND CHARTS IN TWO DAYS.

23             MS. BERNAY:  ON THE 13TH, YOUR HONOR.

24             MS. SWEENEY:  ON THE 13TH, YOUR HONOR.

25             MR. ISAACSON:  13TH, YES.
```

 1            **THE COURT:**  THAT'S A LOT OF WORK ON SUNDAY YOU'RE

 2    EXCHANGING.  THAT'S OKAY.

 3        SO YOU'RE EXCHANGING THOSE ON OCTOBER 13TH.

 4            **MR. ISAACSON:**  THE SUMMARY EXHIBITS.

 5            **THE COURT:**  ALL RIGHT.  I'M GOING TO PUT THIS IN AN

 6    ORDER.  TELL ME WHAT YOUR SCHEDULE SAYS.

 7            **MR. ISAACSON:**  ALL RIGHT.  HERE'S WHAT I HAVE, YOUR

 8    HONOR, IF YOU -- IF THAT'S OKAY.

 9            **MS. SWEENEY:**  GO AHEAD.

10            **MR. ISAACSON:**  WE ARE EXCHANGING DEPOSITION AND

11    DISCOVERY EXCERPTS TODAY.  WE ARE -- AND I DON'T KNOW HOW MUCH

12    OF THIS YOU WANT IN THE ORDER, BUT I'LL TELL YOU OUR SCHEDULE.

13    ON OCTOBER 6TH AND 7TH, WE ARE HAVING AN IN-PERSON

14    MEET-AND-CONFER ON PRETRIAL ISSUES, INCLUDING ALL THE ISSUES

15    FROM THE PRETRIAL STATEMENT AND THE EXHIBITS THAT HAVE --

16    LISTS THAT HAVE BEEN EXCHANGED.

17        ON OCTOBER 13TH, WE ARE EXCHANGING JURY INSTRUCTIONS AND

18    SUMMARY EXHIBITS.  ON OCTOBER 14TH, AS YOU'VE ALREADY

19    PROVIDED, WE WOULD FILE PRETRIAL STATEMENT AND I GUESS ANY

20    REMAINING MOTIONS IN LIMINE THAT ARE TO SPECIFIC EVIDENTIARY

21    ISSUES.

22        THE 7TH, WE FILE OPPOSITIONS TO MOTION IN LIMINES, AND

23    WE'VE SCHEDULED AN IN-PERSON MEET-AND-CONFER THAT DAY ON JURY

24    INSTRUCTIONS AND SUMMARY EXHIBITS.

25        ON OCTOBER 21ST, WE ARE TO LODGE THE TRIAL READINESS

1  FILINGS, THE BINDERS, AND PROPOSED ORDERS.  YOU'VE SCHEDULED A

2  PRETRIAL CONFERENCE ON OCTOBER 28TH.

3      ON OCTOBER 31ST, WE'LL FILE A REQUEST -- A PROPOSED ORDER

4  REGARDING USE OF INTERNET ELECTRONIC EQUIPMENT AND OTHER LARGE

5  EQUIPMENT.  AND FROM LOOKING AT THIS COURTROOM, IT DOESN'T

6  SEEM ANYTHING TO BE PREINSTALLED, SO WE'LL TALK TO --

7          **THE COURT:**  NO, YOU'RE STILL --

8          **MR. ISAACSON:**  -- ABOUT THAT.

9          **THE COURT:**  -- A LITTLE BIT EARLY.  I'M ON THE LIST.

10 I'M NEXT ON THE LIST FOR THIS DISTRICT BUT NOT HERE YET.

11         **MR. ISAACSON:**  OKAY.

12     AND AFTER -- AFTER THAT, WE ARE -- WE ARE TO THE JURY

13 BEING IMPANELED.

14         **THE COURT:**  OKAY.

15     NOW, YOU SAID JURY INSTRUCTIONS AND SUMMARY EXHIBITS.

16 WHAT ABOUT DEMONSTRATIVES?

17         **MR. ISAACSON:**  WHAT WE'VE TALKED ABOUT IS GIVING --

18 AND I DON'T KNOW IF WE'VE RESOLVED HOW MANY HOURS.

19         **MS. SWEENEY:**  I THINK WE'VE TALKED ABOUT EXCHANGING

20 AND GIVING EACH OTHER 48 HOURS.

21         **THE COURT:**  ON DEMONSTRATIVES.

22         **MR. ISAACSON:**  YES.

23         **MS. SWEENEY:**  YES, YOUR HONOR.

24         **THE COURT:**  OKAY.  ALL RIGHT.  GIVE ME A SENSE OF HOW

25 MANY WITNESSES YOU'RE ANTICIPATING.

 1          **MS. SWEENEY:**  YOUR HONOR, WE'RE EXPECTING TO CALL

 2     BETWEEN FIVE AND EIGHT WITNESSES.

 3          **THE COURT:**  OKAY.  WHO?

 4          **MS. SWEENEY:**  WE'RE GOING TO CALL OUR ECONOMICS

 5     EXPERT, PROFESSOR NOLL; OUR TECHNOLOGY EXPERT, DR. MARTIN.  WE

 6     WILL CALL ONE OR TWO OF THE PLAINTIFFS, MARIANA ROSEN AND

 7     MELANIE TUCKER.  WE WILL CALL AT LEAST ONE OF APPLE'S

 8     EMPLOYEES.  WE WILL CALL MORE OF APPLE'S EMPLOYEES DEPENDING

 9     ON WHAT SORTS OF STIPULATIONS WE REACH WITH RESPECT TO FACTS

10     AND ADMISSIBILITY OF DOCUMENTS.

11          AND THEN WE MAY CALL PROFESSOR WOOLDRIDGE AS -- ALSO AN

12     ECONOMIST -- AN ECONOMETRICIAN AS A REBUTTAL WITNESS.  AND WE

13     WILL HAVE LIMITED DEPOSITION TESTIMONY THAT WE WILL OFFER.

14                    (OFF-THE-RECORD DISCUSSION.)

15          OH, WE MAY ALSO, YOUR HONOR, CALL ONE OR TWO ABSENT CLASS

16     MEMBERS TO TESTIFY.

17          **THE COURT:**  MR. ISAACSON?

18          **MR. ISAACSON:**  SO OUR EXPERTS, WE WILL CERTAINLY BE

19     CALLING, AND YOU'RE FAMILIAR WITH THEM.  THAT'S DR. KELLYS

20     (SIC), MURPHY, AND TOPEL.

21          IN THE TERMS OF THE NUMBER OF APPLE WITNESSES, ONE OF IT

22     WILL DEPEND ON WHICH APPLE WITNESS THEY'RE CALLING.  AND IT

23     WOULD ALSO PROBABLY BE HELPFUL TO TALK ABOUT THE PROCEDURE FOR

24     THAT.

25          BUT I WILL TELL YOU THAT WE ARE MEETING THIS MONTH TO

1    DECIDE WHICH APPLE WITNESSES WE ARE GOING TO PRESENT IN A

2    NON-REDUNDANT FASHION, SO THE -- I DON'T KNOW IF WE WILL

3    CHOOSE A SMALLER NUMBER WHO WILL BE MORE COMPREHENSIVE OR A

4    LARGER NUMBER WHO WILL EXPLAIN DIFFERENT PIECES OF OUR CASE.

5    SO I DO NOT HAVE A FIRM ANSWER FOR YOU ON THE NUMBER OF APPLE

6    WITNESSES.

7         **THE COURT:**  NOW, I'VE NOT LOOKED -- OR SEEN, BECAUSE

8    IT HASN'T BEEN RAISED, THE TECHNICAL EXPERTS REPORTS, SO

9    DR. MARTIN'S REPORT, I DON'T THINK I'VE SEEN.  WHAT -- WHAT IS

10   IT THAT HE HAS OPINED ON SPECIFICALLY?  AND ARE THERE ANY

11   ISSUES WITH RESPECT TO THE TECHNICAL REPORTS?

12        **MS. SWEENEY:**  WELL, YOUR HONOR, YOU'RE RIGHT.  YOU

13   HAVEN'T SEEN THOSE REPORTS BECAUSE THOSE WERE PART OF THE

14   EARLIER SUMMARY JUDGMENT MOTION.  AND DR. MARTIN WILL TESTIFY

15   ABOUT THE KVC AND DVC CHANGES AND WHETHER THOSE CHANGES WERE A

16   PRODUCT IMPROVEMENT.  HE'LL TESTIFY ABOUT THE TECHNOLOGY THAT

17   WENT INTO THEM AND THE RESULTS OF USING THEM.  SOME OF HIS

18   TESTIMONY THAT HE GAVE PREVIOUSLY THAT'S IN HIS EXPERT REPORT

19   PERTAINED TO ELEMENTS OF THE CASE THAT WERE DISMISSED IN JUDGE

20   WARE'S SUMMARY JUDGMENT ORDER.

21       DR. MARTIN WILL GIVE TESTIMONY ON THOSE TOPICS ONLY TO THE

22   EXTENT IT'S NECESSARY TO BRING BACKGROUND FOR TALKING ABOUT

23   KVC AND DVC IN 7.0 AND 7.4.

24        **MR. ISAACSON:**  AND YOU WOULD SEE DR. MARTIN'S REPORT

25   AS PART OF THE MOTION IN LIMINE THAT WE WILL FILE NEXT WEEK

1    BECAUSE IT'S SPECIFICALLY HIS REPORT THAT DISCUSSES ISSUES

2    ABOUT HOW APPLE SHOULD HAVE OFFERED INTEROPERABILITY, WE

3    SHOULD HAVE SHARED TECHNICAL INFORMATION, AND WE SHOULD HAVE

4    DESIGNED THINGS DIFFERENTLY THAT WE THINK ARE CONTRA TO

5    ANTITRUST LAW, WHATEVER HIS TECHNICAL OPINIONS MAY BE.

6            **THE COURT:**  OKAY.  BUT THERE ISN'T GOING TO BE AN

7    OBJECTION AROUND THE PRODUCT IMPROVEMENT TECHNOLOGY WHICH IS

8    FUNDAMENTALLY THE ISSUE HERE.

9            **MR. ISAACSON:**  WELL, SOME OF THOSE ISSUES -- SOME OF

10   HIS OPINIONS LEADING TO THAT PRODUCT IMPROVEMENT OPINION ARE

11   PART OF THIS ANTITRUST DEBATE THAT WE'RE GOING TO HAVE AS TO

12   WHETHER YOU CAN TAKE INTO CONSIDERATION AS TO WHETHER

13   SOMETHING'S A PRODUCT IMPROVEMENT, WHETHER IF WE COULD HAVE

14   DONE THINGS BETTER BY DESIGNING THIS DIFFERENTLY, OR WE COULD

15   HAVE AVOIDED THIS PROBLEM BY SHARING TECHNICAL INFORMATION.

16      BUT YOU'LL SEE THAT WHEN WE BRIEF IT.

17           **THE COURT:**  OKAY.

18      AND THEN DO YOU -- WHO'S YOUR -- WHO'S YOUR COUNTER TO

19   MARTIN?

20           **MR. ISAACSON:**  THAT WOULD BE DR. KELLY.

21           **THE COURT:**  ARE YOU -- HAVE YOU DESIGNATED ANY

22   INTERNAL EXPERTS?  THIS, AGAIN, IS A PROBLEM AREA THAT I

23   FREQUENTLY SEE WHERE PARTIES DO NOT SEEM TO UNDERSTAND THAT

24   EXPERTS ARE EXPERTS AND YOU CAN'T BRING IN A PERCIPIENT

25   WITNESS -- AN EXPERT UNDER THE GUISE OF A PERCIPIENT WITNESS.

```
1        SO HAVE THEY BEEN DESIGNATED, ARE THERE GOING TO BE

2    IN-HOUSE ISSUES THAT I NEED TO DEAL WITH?

3        MR. ISAACSON:  WELL, WE DEFINITELY HAVE WITNESSES WHO

4    ARE TECHNICAL PEOPLE BECAUSE OF THE NATURE OF THE CASE I THINK

5    WHO WILL BE TESTIFYING ON A -- ON -- BASED ON WHAT THEY SAW

6    AND KNOW AND UNDERSTOOD BUT WILL BE SPEAKING ABOUT TECHNICAL

7    ISSUES 'CAUSE THAT'S WHAT THEY DO ALL DAY.

8        BUT I'M NOT AWARE OF ANYONE HAVING BEEN DESIGNATED AS AN

9    EXPERT WITNESS UNDER THE -- UNDER THE FEDERAL RULES.

10        THE COURT:  WELL, YOU'RE GOING TO NEED TO BE CAREFUL

11    BECAUSE THERE IS A LINE THERE.  AND FREQUENTLY WITNESSES CROSS

12    IT.  SO IT IS A PROBLEM THAT PEOPLE DON'T THINK ABOUT IN

13    ADVANCE.  SO I DON'T KNOW IF IT'S GOING TO BE A PROBLEM HERE,

14    BUT IT IS AS PROBLEM GENERALLY.

15        HAVE YOU MET OR HAVE YOU ON YOUR LIST THE ISSUE OF WHETHER

16    OR NOT YOU'RE AGREEABLE TO HAVING YOUR EXPERTS LISTEN TO THE

17    TESTIMONY OF THE RESPECTIVE EXPERT ON THE OTHER SIDE?  USUALLY

18    I EXCLUDE WITNESSES FROM THE COURTROOM.

19        MS. SWEENEY:  I THINK THAT'S ONE OF THE TOPICS WE

20    WERE GOING TO BE MEETING AND CONFERRING ABOUT NEXT WEEK.

21        MR. ISAACSON:  YES.

22        THE COURT:  OKAY.

23        MR. ISAACSON:  WE WILL ALSO, IN TERMS OF EXPERTS, PUT

24    ON THE TABLE FOR DISCUSSION WHETHER IT WOULD MOST HELP THE

25    JURY IF WE HAD A PROCESS FOR HAVING EXPERTS PAIRED SO THAT
```

1    THE -- THEIR TECHNICAL EXPERT WAS FOLLOWED BY OUR TECHNICAL

2    EXPERT, ET CETERA.

3         **MS. SWEENEY:**  AND WE -- WE SAW SOME OF THIS IN -- IN

4    APPLE'S PRETRIAL STATEMENT, YOUR HONOR, AND JUST TO PRESERVE

5    THE ARGUMENT, WE'RE GOING TO OBJECT BECAUSE WE DON'T WANT TO

6    INTERRUPT THE FLOW OF PUTTING OUR CASE-IN-CHIEF IN.

7         **THE COURT:**  I THINK IT'S A GOOD IDEA, BUT MY

8    PERSPECTIVE IS THAT OF THE JURY'S PERSPECTIVE.  BUT I DON'T

9    DEMAND IT.  I WILL RESERVE ON WHETHER OR NOT ON MY OWN

10   PERSPECTIVE WITH HAVING EXPERTS IN THE COURTROOM.  MY LAST

11   EXPERIENCE WITH THIS WAS NOT PRODUCTIVE.  SO --

12        **MR. ISAACSON:**  IT MIGHT BE HELPFUL TO US IF WE HAD

13   YOUR INSIGHTS AS TO HOW IT WAS NOT HELPFUL.

14        **THE COURT:**  WELL, THE PROBLEM WAS THAT IT CREATED NEW

15   PROBLEMS.  SO AFTER THE EXPERT SAT IN AND LISTENED TO THE

16   EXPERT'S TESTIMONY, THERE APPEARED TO -- TO BE NEW APPROACHES

17   TO HOW TO DEAL WITH THAT EXPERT'S TESTIMONY WHICH HAD NOT

18   BEEN -- HAD BEEN MASSAGED IN A WAY THAT WAS NOT -- DID NOT

19   QUITE COMPORT WITH THAT EXPERT'S PRIOR REPORT SO

20   DEMONSTRATIVES LOOKED KIND OF DIFFERENT.  THEY WERE MORE

21   ADVERSARIAL IN A SENSE.  THAT IS, THEY WERE SPECIFICALLY TIED

22   TO THE PRIOR TESTIMONY AS OPPOSED TO ALLOWING THE -- THE

23   ATTORNEYS TO ARGUE.

24        SO THERE'S A LEVEL PLAYING FIELD WHEN EVERYBODY HAS THE

25   REPORTS AND EVERYBODY KNOWS WHAT -- WHAT WENT ON BEFORE THE

1    TRIAL STARTED.  WHAT I FOUND BY ALLOWING THAT EXPERT TO SIT IN

2    AND LISTEN IS THAT THAT THEN CHANGED.  THE PLAYING FIELD

3    CHANGED.  AND -- AND IT WAS -- IT CREATED MORE PROBLEMS THAN I

4    THOUGHT IT WAS WORTH, SO --

5        I WOULD HAVE TO BE PERSUADED.  I AM RELUCTANT AT THIS

6    POINT GIVEN THAT EXPERIENCE.  IT WAS ONLY ONE EXPERIENCE, SO

7    PERHAPS I COULD HAVE A POSITIVE EXPERIENCE.  BUT FORTUNATE OR

8    UNFORTUNATE FOR YOU, YOU'RE COMING OFF THAT RATHER DIFFICULT

9    EXPERIENCE.

10       OKAY.  JUST A NOTE ON YOUR MOTIONS IN LIMINE.  REMEMBER

11   THE WAY THESE ARE SUPPOSED TO BE DONE.  AND IT'S LAID OUT IN

12   MY ORDER.  TO MAKE IT EASIEST FOR ME -- AND IF YOU'D GIVE ME

13   TWO COPIES, I'D APPRECIATE IT -- YOU'LL HAVE THE MOTION -- SO

14   YOU CAN EXCHANGE THEM, BUT THEN CREATE CHAMBERS BINDERS.

15       AND THE WAY I DO THIS IS I READ THEM KIND OF BACK TO BACK.

16   SO IT'S HELPFUL TO HAVE THE MOTION AND THEN THE OPPOSITION,

17   THE MOTION AND THE OPPOSITION BUT ONE PROPOSED ORDER FOR EACH

18   SIDE.  SO IF YOU HAVE FIVE MOTIONS ON EACH SIDE, I WOULD GET

19   ONE PROPOSED ORDER ADDRESSING JUST KIND OF THE ISSUE, AND

20   WHETHER IT'S GRANTED, DENIED, MOD- -- OR AS MODIFIED.  OKAY?

21            **MS. SWEENEY:**  UM-HMM.

22            **THE COURT:**  ALL RIGHT.  WHAT ARE WE LOOKING AT IN

23   TERMS OF EXHIBITS?  HOW VOLUMINOUS ARE THEY?  WE KILLED A LOT

24   OF TREES IN MY LAST TRIAL.  I WOULD ACTUALLY LIKE TO AVOID

25   THAT.  THE JURORS WERE ACTUALLY -- SOME OF THEM WERE ACTUALLY

```
 1   OFFENDED.  THE ENTIRE BACK OF THIS COURTROOM HAD -- HAD

 2   BOOKSHELVES WITH BINDERS.  AND THEY WERE, FRANKLY, RARELY

 3   TOUCHED.

 4       SO WHAT KIND OF -- WHAT'S THE NATURE OF THE EVIDENTIARY

 5   EXHIBITS COMING IN?

 6           MS. SWEENEY:  WELL, WE -- THE EXHIBIT LISTS THAT

 7   WE'VE EXCHANGED AND THE EXHIBITS ARE QUITE VOLUMINOUS AT THIS

 8   POINT IN TIME.  I THINK BOTH SIDES HAVE AROUND 700 EXHIBITS ON

 9   THEIR LISTS, BUT AS WE WORK THROUGH THE MEET-AND-CONFER, I'M

10   SURE THAT NUMBER WILL GET SMALLER.

11           MR. ISAACSON:  EVEN WITHOUT THE MEET-AND-CONFER, IT

12   WILL GET SMALLER.  BUT IT IS ABOUT FIVE BINDERS EACH, WHICH IS

13   TOO MANY.  BUT WE ARE WORKING --

14           THE COURT:  FIVE BINDERS?

15           MR. ISAACSON:  YES.

16           THE COURT:  SO A TOTAL OF TEN.

17           MS. SWEENEY:  YES.

18           MR. ISAACSON:  YES, YOUR HONOR.

19           THE COURT:  OH, THAT'S SO MUCH BETTER.

20           MR. ISAACSON:  YEAH, IT'S NOT THAT WALL YOU SAW.

21           THE COURT:  NO.  LITERALLY, I HAD -- THE ENTIRE BACK

22   OF THE COURTROOM WAS FILLED.

23           MR. ISAACSON:  RIGHT.

24           THE COURT:  SO THAT I CAN MANAGE WITH.  SO I TAKE IT

25   THAT MANY OF THESE ARE NOT -- THEY'RE SHORT DOCUMENTS.
```

1           **MR. ISAACSON:**  THERE ARE.

2           **MS. SWEENEY:**  MANY OF THEM ARE VERY SHORT, YOUR

3   HONOR.

4           **THE COURT:**  OKAY.

5       ONE OF THE THINGS THAT -- THAT I SAW THAT HUNG PEOPLE UP

6   LAST TIME DURING THEIR MEET-AND-CONFER -- AND SO, AGAIN, I

7   WILL OFFER A SUGGESTION, IS THAT ON THE ONE HAND, YOU AS

8   LITIGATORS WANT TO MAKE SURE THAT YOU HAVE EVERYTHING THERE

9   JUST IN CASE.  BUT THE REALITY IS THAT YOU PROBABLY WOULD NOT

10  OFFER ALL OF THAT INTO EVIDENCE.  WHAT I WOULD SUGGEST THAT

11  YOU DO IS IDENTIFY EITHER WITH AN ASTERISK OR SOME SYMBOL WHAT

12  IT IS YOU ACTUALLY THINK YOU NEED FOR PURPOSES OF THE TRIAL,

13  FOCUS YOUR MEET-AND-CONFER ON TRYING TO STIPULATE TO THOSE

14  DOCUMENTS, AND THEN THE OTHERS, JUST LET THE OTHER SIDE KNOW,

15  "LOOK, YOU DON'T THINK I'M GOING TO USE THIS, BUT I WANT TO

16  HAVE IT THERE JUST IN CASE."

17      AND I THINK THAT THAT WOULD BE HELPFUL BECAUSE OTHERWISE,

18  AGAIN, WHAT I SEE ARE PAGES AND PAGES OF OBJECTIONS.  SO IF

19  THERE IS -- AND I KNOW THERE IS, THERE'S DATA, THAT KIND OF

20  THING.  CERTAINLY IT SEEMS TO ME THAT -- AND WE CAN

21  ACCOMMODATE IT HERE.  THE EXHIBIT COULD BE A DISC THAT HAS ALL

22  OF THOSE DOCUMENTS, SPREADSHEETS, DATA, WHATEVER IT IS.

23      WE WILL -- IF THAT KIND OF EVIDENCE EXISTS, WHICH I EXPECT

24  IT WILL, WE WILL PROVIDE THE JURY WITH A LAPTOP THAT HAS BEEN

25  SECURED, NO ACCESS TO ANY INTERNET, STRIPPED OF EVERYTHING

 1   EXCEPT THE ABILITY TO LOOK AT DOCUMENTS AND DATA.  SO THAT, I

 2   WILL -- THAT COMPUTER, I WILL RESERVE FOR PURPOSES OF THE

 3   TRIAL AND THAT WILL BE AVAILABLE TO YOU FOR PURPOSES OF THE

 4   EXHIBITS.  SO KEEP THOSE THINGS IN MIND.

 5       WHAT DO YOU ANTICIPATE IN TERMS OF PRESENTATION OF

 6   DOCUMENTS TO WITNESSES?  AND BY THAT, I MEAN, ARE YOU

 7   ANTICIPATING HANDING THEM HARD COPIES OR DOING THINGS

 8   ELECTRONICALLY?

 9           MS. SWEENEY:  WE WILL, I -- I THINK WE -- THIS --

10   AGAIN, WE HAVEN'T MET AND CONFERRED ABOUT IT, BUT I THINK WHAT

11   WE WOULD PREFER TO DO IS -- IS SHOW THE JURORS EXHIBITS

12   HIGHLIGHTED ON THE SCREEN AND THEN SEND SOME EXHIBITS ONCE

13   ADMITTED BACK WITH THE JURORS IN A NOTEBOOK.

14           THE COURT:  I'M TALKING ABOUT WITNESSES.  THAT IS --

15   SO HERE -- LET ME GIVE YOU THE OPTIONS.

16       YOU CAN DO -- I'M ASSUMING THAT -- THAT THE -- AND I WOULD

17   ENCOURAGE YOU TO -- TO PUT ELECTRONICS INTO THE COURTROOM AND

18   TO SPLIT THE COST OR FIGURE OUT A WAY TO DO IT.  WHAT WE DID

19   IN THE LAST TRIAL IS -- AND THE COURTROOM DEPUTY CAN TALK TO

20   WHOEVER YOUR TECHNICAL PEOPLE ARE MORE -- EVERY TWO TO THREE

21   JURORS HAD A SCREEN THAT THEY COULD SEE.  I HAD A SCREEN, THE

22   WITNESS HAD A SCREEN.  WE HAD A BIG -- A VERY LARGE SCREEN

23   OVER HERE THAT COULD BE SEEN BY EVERYONE, AND WE HAD ANOTHER

24   VERY LARGE SCREEN IN THAT CORNER WHICH COULD BE SEEN BY THE

25   GALLEY.

1    THE OUTFIT THAT THEY HIRED, EACH SIDE HAD THE CONTROL OVER

2    THE EXHIBITS, AND WHEN IT WAS THEIR CASE-IN-CHIEF, THAT'S --

3    OR WHEN THEY WERE DOING THE EXAMINATION, WHOEVER WAS DOING THE

4    EXAMINATION CONTROLLED THE COMPUTER.

5    IF THAT'S THE SITUATION, THEN YOU DON'T NECESSARILY HAVE

6    TO HAVE A HARD COPY FOR THE WITNESS.  I OBVIOUSLY DO NEED A

7    HARD COPY FOR THE CLERK.  I HAVE TO HAVE A PHYSICAL EXHIBIT

8    THAT IS THE TRIAL EXHIBIT.  AND THAT IS THE EXHIBIT THAT WILL

9    GO INTO THE JURY ROOM.

10   PART OF THE ISSUE WITH ALL THOSE BINDERS IS THAT EVERY

11   TIME I HAD A WITNESS UP HERE, THAT WITNESS GOT THREE OR FOUR

12   BINDERS, WHICH HAD COPIES OF EVERY EXHIBIT BEING USED BY THE

13   EXAMINER AND EVERY EXHIBIT BEING USED BY THE CROSS-EXAMINER,

14   HENCE THE AMOUNT OF PAPER.

15   NOW, I WILL NEED ONE HARD COPY BECAUSE I MARK ON MY

16   EXHIBITS.  AND SOMETIMES I'M CALLED UPON TO RESOLVE DISPUTES

17   AND IF I DON'T HAVE AN EXHIBIT, THEN IT'S HARD TO RESOLVE THE

18   DISPUTE.

19   BUT, AGAIN, IN TERMS OF EFFICIENCIES, WHEN I -- WHEN I

20   DON'T HAVE ELECTRONICS IN THE COURTROOM, THEN IT IS HELPFUL TO

21   HAVE THE WITNESS HAVE BINDERS.

22   **MR. ISAACSON:**  RIGHT.

23   **THE COURT:**  BECAUSE THEN YOU AREN'T WASTING YOUR TIME

24   GOING BACK, GETTING THE EXHIBIT, WALKING UP, SHOWING THE --

25   THE WITNESS, ET CETERA.  SO IF YOU DON'T HAVE ELECTRONICS,

```
 1    THEN -- THEN THAT WOULD MAKE IT MORE EFFICIENT.

 2         ONE OTHER CONSIDERATION, THOUGH, AND THAT IS, ESPECIALLY

 3    ON CROSS-EXAMINATION AND PERHAPS YOU ONLY DO IT THEN ON

 4    CROSS -- FREQUENTLY HAVE SITUATIONS WHERE THE CROSS-EXAMINER

 5    SAYS, WELL, MADAM WITNESS, DOESN'T IT SAY HERE ON LINE 2 THAT

 6    YOU WALKED TO STARBUCKS THAT DAY." AND OBVIOUSLY IT DOES AND

 7    THE ONLY THING YOU WANT TO SHOW THEM ON THE SCREEN IS THAT ONE

 8    LINE. THEY DON'T WANT TO ANSWER THAT QUESTION. THEY KNOW

 9    THEY'RE WALKING INTO A TRAP, SO THEY WANT TO SEE THE WHOLE

10    DOCUMENT. SO ON CROSS, IT'S USUALLY MORE IMPORTANT TO HAVE

11    THE FULL DOCUMENT AVAILABLE TO THEM FOR THEIR REVIEW 'CAUSE

12    YOU'RE -- HAVEN'T PRACTICED OR REHEARSED THEIR EXAMINATION

13    WITH THEM.

14         AGAIN, THIS IS ALL AN ISSUE OF TIME. IF YOU WANT TO WASTE

15    TIME WALKING UP, GIVING THEM THE DOCUMENT, WHICH I WILL

16    REQUIRE THAT YOU DO, THEN IT'S PROBABLY TO YOUR BENEFIT TO

17    HAVE WITNESS BINDERS IN THOSE CIRCUMSTANCES. SO YOU'RE GOING

18    TO DO IT. I'M GOING TO LET YOU DO IT YOUR WAY. THOSE ARE

19    JUST SOME TIPS IN TERMS OF MANAGING YOUR TIME. OKAY?

20         ALL RIGHT. SO WHEN YOU MEET AND CONFER, WE'LL MEET AGAIN,

21    OBVIOUSLY, AND YOU CAN TELL ME WHAT YOU'VE DECIDED TO DO.

22         JUROR ISSUES. I WILL -- DO THE -- LET ME JUST STEP BACK.

23    DO THE DEFENDANTS EXPECT TO HAVE DEPOSITION EXCERPTS?

24              MR. ISAACSON: A LIMITED SET, THOUGH I GUESS I WANT

25    TO CLARIFY SOMETHING. THE -- I'D UNDERSTOOD COUNSEL TO SAY
```

```
 1    ONE OR TWO PLAINTIFFS, BUT WE WERE ALSO TALKING ABOUT ABSENT
 2    CLASS MEMBERS.
 3            MS. SWEENEY:  YES.
 4            MR. ISAACSON:  AND I DON'T KNOW IF THOSE HAVE BEEN
 5    PREVIOUSLY DISCLOSED TO US.
 6            THE COURT:  ALL RIGHT.  WELL, YOU'LL HAVE TO WORK
 7    THROUGH THAT.
 8            MR. ISAACSON:  OKAY.
 9            THE COURT:  THE ORDER THAT YOU WILL RECEIVE FROM ME
10    BACK ON THESE DISCOVERY EXCERPTS IS AS FOLLOWS -- AND JUST,
11    AGAIN, THINK ABOUT IT IN TERMS -- ESPECIALLY IN TERMS OF
12    VIDEO.  ARE -- ARE THERE VIDEO -- THE DISCOVERY -- DEPOSITION?
13    IS IT BY VIDEO?
14            MS. SWEENEY:  YES, YOUR HONOR.
15            THE COURT:  AND YOURS AS WELL?
16            MR. ISAACSON:  YES, YOUR HONOR.
17            THE COURT:  OKAY.  SO WHAT WILL HAPPEN WITH RESPECT
18    TO VIDEO DEPOSITIONS AND THE PRESENTATION OF THAT, YOU WILL BE
19    REQUIRED TO FILE A DOCUMENT THAT INCLUDES THE TRANSCRIPT FOR
20    THE PORTION OF THE DEPOSITION THAT IS DISPLAYED TO THE JURY.
21    THE COURT REPORTER WILL BE RELIEVED OF HER OBLIGATIONS TO
22    TRANSCRIBE DURING THAT PORTION OF THE TRIAL BECAUSE IT'S NOT
23    LIVE TESTIMONY, AND YOU HAVE A TRANSCRIPT.
24        THIS IS ANOTHER PLACE WHERE I FREQUENTLY GET DISPUTES, SO
25    LET ME GIVE YOU SOME GUIDANCE.  YOU'RE LOOKING AT ME,
```

1    MR. ISAACSON.  IT WAS DC LAWYERS WHO CAUSED THE PROBLEMS.

2          **MR. ISAACSON:**  I DON'T DOUBT IT.  I JUST THINK IT'S

3    INTERESTING.

4          **THE COURT:**  ALL RIGHT.  THIS IS THE DISPUTE THAT I

5    GET.

6       YOUR HONOR, THEY DESIGNATED LINES 5 THROUGH 10, AND WE

7    WANT 11 AND 12.  REALLY?  I'M SUPPOSED TO SPEND MY TIME

8    DECIDING OVER LINES 11 AND 12?  YOU ARE ON A CLOCK.  OKAY?  IF

9    IT'S LINES 11 AND 12 I WOULD LIKELY SAY YES, AND THAT

10   TESTIMONY COMES IN.  IT'S A COUPLE OF SECONDS MORE.  YOU KNOW,

11   GROW UP.  IT WORKS BOTH WAYS.

12      IF YOU WANT TO SPEND -- YOU WANT TO DESIGNATE FIVE

13   MINUTES -- COUNTER-DESIGNATE FIVE MINUTES OF THAT SAME

14   WITNESS, WELL, YOU MAY HAVE TO WAIT AND PUT THAT WITNESS ON IN

15   YOUR OWN CASE-IN-CHIEF, OR PERHAPS -- AND, AGAIN, SOMETIMES

16   IT'S BETTER FOR THE JURY TO HAVE THE ENTIRE DEPOSITION OF ONE

17   PERSON AT THE SAME TIME ON THE VIDEO.  YOU AGREE.  YOU GET

18   FIVE MINUTES ALLOCATED TO YOU, I GET THREE MINUTES ALLOCATED

19   ME.  ALL RIGHT.  SO -- SO THAT YOU HAVE AN AGREEMENT IN TERMS

20   OF THE TIME.

21      I -- I REALLY HOPE YOU DO NOT BRING ME MANY, MANY DISPUTES

22   OVER THESE LITTLE THINGS COMING OUT OF THESE VIDEO'D

23   DEPOSITIONS.  IF I NEED TO RESOLVE THE OBJECTIONS THAT WERE

24   MADE IN THE TRANSCRIPT, HAPPY TO DO THAT IN ADVANCE.  THERE'S

25   NO NEED TO SHOW THAT TO THE JURY.  IT'S KIND OF NOT

```
1    PRODUCTIVE.

2        ARE THERE GOING TO BE INTERROGATORIES, RESPONSES, ANYTHING

3    LIKE THAT, WHICH ARE PART OF THE EVIDENCE?  IF SO, AGAIN,

4    LITIGATORS, REPLETE WITH OBJECTIONS AND NEVER KNOW -- NEVER

5    UNDERSTAND HOW THAT ACTUALLY WORKS IN A TRIAL.

6        SO ARE THERE --

7            MS. SWEENEY:  FROM THE PLAINTIFFS YOUR HONOR, JUST, I

8    THINK, ONE OR TWO.

9            MR. ISAACSON:  THERE'S --

10           MS. SWEENEY:  NOT VERY MANY.

11           MR. ISAACSON:  -- A VERY LIMITED GROUP FROM OUR SIDE,

12   AND WE'VE EXCHANGED THOSE AS PART OF OUR -- ACTUALLY, WE'RE

13   EXCHANGING THEM TODAY.

14           THE COURT:  OKAY.

15       AGAIN, WHAT YOU STILL NEED TO MEET AND CONFER ON IS

16   WHETHER THOSE DOCUMENTS WILL BE ANNOTATED WITH JUST THE

17   QUESTION AND THE ANSWER ABSENT THE OBJECTIONS, WHETHER YOU

18   NEED THEM TO BE READ BY ME TO THE JURY, BUT YOU NEED THE THINK

19   ABOUT THOSE -- THOSE THINGS.

20       WITH RESPECT TO DEPOSITION TRANSCRIPTS THAT ARE NOT

21   VIDEOTAPED, SAME RULES APPLY.  SO THE COURT REPORTER WILL BE

22   RELIEVED OF HER DUTY.  THE JURY WILL BE -- IN BOTH INSTANCES,

23   THE JURY WILL BE INSTRUCTED ABOUT HOW THEY SHOULD CONSIDER

24   THAT EVIDENCE, BUT YOU WILL BE REQUIRED TO FILE THOSE

25   TRANSCRIPTS SO THAT THEY BECOME PART OF THE RECORD OF THE
```

1    COURT.  AND I THINK LAST TIME, WE ATTACHED THEM TO THE

2    OFFICIAL TRANSCRIPT; IS THAT RIGHT?

3              (OFF-THE-RECORD DISCUSSION.)

4         **MR. ISAACSON:**  RIGHT.  SO WE CAN HAVE A PROCESS WHERE

5    WE SUBMIT THEM LIKE EXHIBITS AND FOR -- OFFICIALLY TO THE

6    CLERK AND THE COURT REPORTER.

7         **THE COURT:**  OKAY.

8         I REQUIRE THAT YOU GIVE EACH OTHER 24 HOURS' WRITTEN

9    NOTICE -- 24 HOURS, NOT ONE DAY, 24 HOURS' WRITTEN NOTICE

10   REGARDING THE WITNESSES THAT YOU ARE CALLING.  I REQUIRE IT IN

11   WRITING BECAUSE I'VE HAD INSTANCES WHERE THE FOLLOWING

12   CONVERSATION -- OR THE FOLLOWING ARGUMENT WAS MADE.  JUDGE, WE

13   WALKED OUT OF THE COURTROOM AND I TOLD THEM, REMEMBER, WE WERE

14   TALKING ABOUT EXHIBIT 7.  YEAH, I REMEMBER EXHIBIT 7.  YOU

15   DIDN'T TELL ME THAT, THAT YOU WERE CALLING EXPERT A.

16        THE REALITY IS IN TRIAL, YOU ARE VERY BUSY.  YOU HAVE MANY

17   BALLS UP IN THE AIR.  AND PEOPLE GENUINELY FORGET, PEOPLE ON

18   ONE SIDE OR THE OTHER.  I HAVE NO REASON TO DOUBT THE HONESTY

19   OF ANY LAWYER IN THIS COURTROOM, AT LEAST NOT RIGHT NOW, AND I

20   HOPE I NEVER HAVE TO.

21        BUT IN ORDER TO AVOID ANY DISPUTES, I REQUIRE THAT IT BE

22   IN WRITING.  OKAY?

23        IF YOU WANT TO GIVE EACH OTHER MORE TIME, THEN YOU CAN,

24   BUT I REQUIRE 24 HOURS.

25        DURING TRIAL, THERE WILL BE NO SPEAKING OBJECTIONS.  I

1    KNOW LAWYERS ARE VERY APT AT MAKING SPEAKING OBJECTIONS.  I

2    READ THEM IN DEPOSITION TRANSCRIPTS ALL THE TIME.  THEY'RE NOT

3    ALLOWED.  IF I NEED ARGUMENT, I'LL ASK YOU FOR IT.

4         IF I REALLY DISAGREE WITH YOU AND YOU REALLY RESPECTFULLY

5    DISAGREE WITH ME, YOU'LL BE GIVEN AN OPPORTUNITY TO MAKE YOUR

6    RECORD FOR THE COURT OF APPEAL BUT LATER, NOT DURING TRIAL.

7              **MR. ISAACSON:**  AND SO WHEN YOU SAY "NO SPEAKING

8    OBJECTIONS," "OBJECTION, HEARSAY" OR JUST "OBJECTION"?

9              **THE COURT:**  NO, "OBJECTION, HEARSAY" IS FINE.

10             **MR. ISAACSON:**  OKAY.

11             **THE COURT:**  NOT "OBJECTION, HEARSAY.  SHE'S ABOUT TO

12   ASK THE SOMETHING THAT IS VERY DAMAGING."  THAT DOESN'T -- NO.

13        AND BY THE WAY, I -- I WILL AND HAVE CHASTISED LAWYERS IN

14   FRONT OF THE JURY FOR DOING JUST THAT KIND OF COACHING.  AND

15   MY JURIES LIKE ME SO I WILL SUGGEST YOU NOT TRY THAT.  I BRING

16   THEM NICE GOODIES.

17        OKAY.  I DO ALLOW JURORS TO MAKE -- TO ANSWER QUESTIONS --

18   OR TO ASK QUESTIONS.  I THINK IT'S IMPORTANT.  IT KEEPS THEM

19   ENGAGED.

20        IF YOU ARE GOING TO REQUEST DAILY TRANSCRIPTS, YOU MUST DO

21   SO -- YEAH, AS SOON AS POSSIBLE, REALLY.  WE HAVE FOUR ACTIVE

22   JUDGES IN THIS COURTHOUSE RIGHT NOW.  AND LAST MONTH, WE WERE

23   ALL IN TRIAL.  SO WE NEED TO KNOW IF YOU'RE GOING TO ASK FOR

24   DAILY TRANSCRIPTS.

25        TODAY IS THE 3RD.  I'M GOING TO ACTUALLY GIVE YOU UNTIL

```
 1    THE 14TH TO MAKE THAT DECISION, OF THIS MONTH, SO JUST DECIDE

 2    IF YOU'RE GOING TO WANT THEM OR NOT.

 3            MR. ISAACSON:  I KNOW WE'RE GOING TO WANT THEM.

 4            THE COURT:  OKAY.

 5            MS. SWEENEY:  I KNOW WE WILL, TOO, YOUR HONOR.

 6            THE COURT:  THERE YOU HAVE IT.

 7        YOU WILL BE REQUIRED ALSO TO PROVIDE THE COURT WITH

 8    PICTURES OF YOUR WITNESSES WHO TESTIFY ON THE DAY OF.  I DON'T

 9    WANT THE PICTURE FROM TEN YEARS AGO WHEN THEY WERE YOUNGER.  I

10    WANT THE PICTURE TAKEN THE DAY THAT THEY TESTIFY SO THE JURY

11    HAS THAT PICTURE IN FRONT OF THEM.  WE'LL NEED TEN COPIES AND

12    DOESN'T HAVE TO BE DONE THE SAME DAY, BUT THE NEXT DAY.  THE

13    JURORS' BINDERS WILL HAVE A TAB FOR THEM SO IT HELPS THEM

14    REMEMBER WHO THE PEOPLE ARE.

15        OKAY.  JURY SELECTION.  LET ME EXPLAIN TO YOU HOW JURY

16    SELECTION WORKS.  IN THIS TRIAL, I WILL -- I WILL SEAT NINE

17    JURORS, NO ALTERNATES.  PEREMPTORY CHALLENGES WILL BE SET AT

18    FOUR.  AND THIS IS HOW IT WORKS.

19        WE'LL CALL IN A JURY.  THEY WILL BE PRESCREENED.  I WILL

20    GIVE YOU A COPY OF THE QUESTIONNAIRE THAT I SEND TO THEM, BUT

21    IT BASICALLY HAS THE BASICS.  BECAUSE OF TIMING OF THIS TRIAL

22    AND THE INTERVENING HOLIDAY, WE WILL MAKE SURE TO PRESCREEN

23    THEM SO I DON'T LOSE JURORS.  AND WE USUALLY DON'T SEND OUT

24    QUESTIONNAIRES IN ADVANCE, BUT YOU WILL GET THOSE BASIC

25    QUESTIONNAIRES EARLY.
```

```
1    YOU ARE GOING TO BE ORDERED OR -- AS PART OF THIS ORDER
2   YOU'LL SEE, YOU MUST COMPLY WITH MODEL RULE OF PROFESSIONAL
3   CODE 3.5B REGARDING ANY INVESTIGATION DONE OF ANY JUROR IN
4   ADVANCE OF VOIR DIRE.  THEY WILL NOT BE TOLD THE NAME OF THE
5   TRIAL AND THOSE QUESTIONNAIRES WILL NOT GIVE ANY INDICATION TO
6   THEM WHAT TRIAL IS HAPPENING.  IT'S JUST THEIR BASIC
7   BACKGROUND INFORMATION.
8        ON THE DAY OF JURY SELECTION, THEY WILL COME IN AND THEY
9   WILL FILL OUT A QUESTIONNAIRE, NOT TO EXCEED TWO PAGES.  SO
10  AGAIN, THE -- I DON'T THINK THAT THIS IS OVERLY COMPLICATED.
11  YOU CAN MEET AND CONFER AND EITHER COME UP WITH TWO PAGES ON
12  YOUR OWN OR SEND ME COMPETING QUESTIONNAIRES.  I WILL REVIEW
13  THEM, EDIT AS NECESSARY FROM MY PERSPECTIVE, AND THAT'S WHAT
14  THE JURORS WILL BE GIVEN ON THE DAY THAT THEY COME IN.
15       YOU WILL THEN BE GIVEN -- YOU'LL EACH BE GIVEN TWO COPIES
16  OF EACH OF THE FILLED-OUT QUESTIONNAIRES.  YOU'VE GOT LOTS OF
17  LAWYERS.  THEY CAN RUN ACROSS TO KINKO'S AND MAKE MORE COPIES
18  FOR YOURSELVES IF YOU WANT, BUT WHEN THEY COME IN, WE WILL
19  HAVE TWO LISTS, A RANDOM LIST AND AN ALPHABETICAL LIST.  YOU
20  WILL RECEIVE THE COMPLETE ALPHABETICAL LIST.  AND THE FIRST
21  TWO PAGES OF THE RANDOM LIST.
22       I ADD A COUPLE OF CHAIRS OVER HERE ON THE SIDE, BUT
23  BASICALLY I CAN SIT ABOUT 18.  I WILL CALL UP THE FIRST 18
24  FROM THE RANDOM LIST, BUT I WILL RESORT THEM INTO ALPHABETICAL
25  ORDER SO THAT THEY DO NOT KNOW WHERE THEY FALL ON THE RANDOM
```

1    LIST.

2        I WILL THEN CONDUCT MOST OF THE VOIR DIRE.  AND THEN I

3    WILL GIVE YOU EACH 20 MINUTES TO DO FOLLOW UP; AFTER WHICH,

4    ALL OF THE JURORS WILL LEAVE THE COURTROOM AND YOU WILL BE

5    REQUIRED TO START EXERCISING YOUR PEREMPTORY CHALLENGES.  ALL

6    18 ARE AVAILABLE FOR YOU TO STRIKE.  IF YOU USE THEM ALL -- OR

7    ONCE YOU USE THEM ALL, THE TOP NINE OFF OF THAT RANDOM LIST

8    CONSTITUTES THE JURY.

9        USUALLY WHAT HAPPENS IN WHAT I WOULD CALL PHASE ONE IS

10   THAT I STILL HAVE ONE OR TWO SPOTS LEFT.  YOU MAY HAVE ONE OR

11   NO PEREMPTORIES LEFT.  IN WHICH CASE, I WILL THEN CALL UP ONE

12   OR TWO AT A TIME.  YOU DO NOT KNOW OBVIOUSLY WHO'S COMING UP

13   BECAUSE YOU ONLY HAVE THE FIRST TWO PAGES OF RANDOM.  I WILL

14   CALL THEM UP OFF OF THE RANDOM.  USUALLY THIS PROCESS -- I CAN

15   USUALLY HAVE MY JURY BY ABOUT 1:00 O'CLOCK.

16       NOW, IT WILL NOT BE A DISQUALIFYING FACTOR THAT THEY HAVE

17   AN APPLE PRODUCT.  EVERYBODY HAS APPLE PRODUCTS.  NOT

18   EVERYBODY, BUT LOTS OF PEOPLE HAVE THEM.  IF THAT WAS A

19   DISQUALIFYING FACTOR, THEN WE'D NEVER BE ABLE TO GET JURORS.

20       IT WILL NOT BE A DISQUALIFYING FACTOR IF THEY HAVE AN

21   IPOD.  I DON'T KNOW IF ANYONE HAS THEM ANYMORE, BUT THAT'S NOT

22   DISQUALIFYING.

23       NOW, IF THEY ABSOLUTELY HATE EVERYTHING ABOUT EVERY APPLE

24   PRODUCT THAT HAS EVER BEEN PRODUCED, THAT MIGHT BE A

25   DISQUALIFYING FACTOR.  BUT YOU SHOULD JUST KNOW THAT THAT'S --

1    JUST BECAUSE SOMEONE DOES OR DOES NOT HAVE ONE OF THESE

2    PRODUCTS IS NOT GOING TO BE A DISQUALIFYING FACTOR.  OKAY?

3    THERE HAS TO BE MORE THAN THAT.

4         QUESTIONS ABOUT THAT PROCESS?

5              **MS. SWEENEY:**  NO, YOUR HONOR.

6              **MR. ISAACSON:**  NO, YOUR HONOR.

7              **THE COURT:**  OKAY.  EACH SIDE WILL BE AFFORDED 20

8    HOURS.  THAT INCLUDES OPENINGS AND CLOSINGS.  AS I

9    INDICATED -- I THINK I'VE INDICATED TO YOU IN THE PAST, WE

10   WILL GO DARK ON THE 26TH; OTHERWISE I'LL LOSE TOO MANY JURORS.

11   MANY PEOPLE TRAVEL FOR THE HOLIDAY ON THAT WEDNESDAY, AND I'M

12   NOT PREPARED TO LOSE MY JURORS BECAUSE OF THAT.  SO IT WILL BE

13   DARK THE 26TH, 27TH, AND 28TH.

14        QUESTIONS THUS FAR?

15             **MR. ISAACSON:**  ONE QUESTION ABOUT THE ELECTRONICS AND

16   THE USE OF VIDEO DEPOSITIONS FOR -- IS THE COURT COMFORTABLE

17   THAT WE USE THOSE AND FOLLOW THE SAME PROCEDURE FOR SHOWING

18   CLIPS IN CROSS-EXAMINATION ASSUMING THE ELECTRONICS PEOPLE ARE

19   HANDLING THAT EXPEDITIOUSLY AND EFFICIENTLY AND ARE AREN'T

20   SLOWING THE PROCESS DOWN?

21             **THE COURT:**  YOU MEAN WHEN THE PERSON SAYS -- WELL,

22   HERE --

23             **MR. ISAACSON:**  FOR EXAMPLE --

24             **THE COURT:**  YES, WITH A CAVEAT.  AND THAT CAVEAT IS

25   ESPECIALLY BECAUSE TRIAL EXPERIENCE HERE IS SOMEWHAT LIMITED,

1    IF YOU WANT TO IMPEACH BASED UPON DEPOSITION TESTIMONY, WHAT

2    YOU MUST FIRST DO IS DIRECT THE COURT TO THE PAGE AND LINE

3    NUMBER OF THE PROFFERED IMPEACHMENT.  I WILL THEN CHECK IT.

4    AND ONCE I CHECK IT, IF I THINK IT'S PROPER IMPEACHMENT, I'LL

5    ALLOW YOU TO PROCEED.

6        SO A PRACTICE TIP.

7            (OFF-THE-RECORD DISCUSSION.)

8        **THE COURT:**  THE TESTIMONY IS SWORN TESTIMONY.  THE

9    JURY IS INSTRUCTED THAT THEY MUST VIEW THAT TESTIMONY AS -- AS

10   IF IT WAS GIVEN IN A COURT OF LAW.  YOU DON'T HAVE TO ASK

11   THEM, "DID YOU SAY WHAT I JUST READ?"  YOU CAN JUST READ THE

12   QUESTION, READ THE ANSWER, AND MOVE ON.  IT'S -- IT'S SWORN

13   TESTIMONY.

14       AND I SEE INEXPERIENCED TRIAL LAWYERS ALWAYS GET CONFUSED

15   AND/OR FLUMMOXED WHEN THE WITNESS THEN GIVES THEM SOME OTHER

16   ANSWER OR SOMETHING.  YOU DON'T HAVE TO ASK THEM WHETHER -- --

17   AND, FRANKLY, THE OTHER THING I'VE SEEN, THEY ASK, WELL, DID I

18   READ THAT CORRECTLY?  AND THE GUY, "I DON'T KNOW I DON'T HAVE

19   IT IN FRONT OF ME."

20       THEY DON'T HAVE THE TRANSCRIPT IN FRONT OF THEM.  ONCE I

21   AUTHORIZE YOU TO IMPEACH WITH WHAT YOU'VE DESIGNATED, YOU CAN

22   READ THE QUESTION, YOU CAN READ THE ANSWER, AND MOVE ON.

23       NOW, YOU MAY WANT TO SAY, AS MANY DO, DO YOU REMEMBER

24   BEING IN MY OFFICE AND GIVING TESTIMONY ON THIS DAY?  YOU

25   KNOW, YOU CAN DO YOUR LEAD-UP, BUT THE ACTUAL QUESTION AND

```
1     ANSWER IS SUFFICIENT ON ITS OWN.  OKAY?

2        THAT ANSWER YOUR QUESTION?

3            MR. ISAACSON:  YES, YOUR HONOR.

4            THE COURT:  OKAY.  ANY OTHER QUESTIONS ON THAT --

5            MR. ISAACSON:  NO.

6            MS. SWEENEY:  NO, YOUR HONOR.

7            THE COURT:  ON ANY -- ANYTHING I'VE SAID SO FAR.

8            MR. MEDICI:  DID YOU FIND --

9            THE COURT:  COME ON FORWARD.

10           MR. MEDICI:  DID YOU FIND THE ELECTRONICS SET UP BY

11    THE PEOPLE THAT YOU USED FOR THE PRIOR TRIAL -- I WAS HERE AND

12    I SAW IT.  DID YOU FIND THAT TO BE HELPFUL FOR THE JURY?

13           THE COURT:  IT WAS INCREDIBLY HELPFUL.  I THINK IT

14    WORKED VERY WELL.

15       FRANCES, DID YOU HAVE ANY COMPLAINTS ON THE SET-UP?  DID

16    YOU HAVE ANY COMPLAINTS FROM THE JURORS?

17           THE CLERK:  NO.  NO.

18           THE COURT:  NO, I THOUGHT IT WORKED WELL.

19       OKAY.  BIFURCATION.  I INDICATED IN MY SCHEDULING ORDER

20    FOR TODAY THAT I WANTED TO DISCUSS THAT ISSUE.

21       COMMENTS?

22           MS. SWEENEY:  I CAN GO FIRST, YOUR HONOR.  IN YOUR

23    HONOR'S ORDER, YOU ASKED WHETHER YOU THOUGHT -- WHETHER THE

24    CASE SHOULD BE BIFURCATED BETWEEN DAMAGES AND LIABILITY.  AND

25    FROM PLAINTIFFS' PERSPECTIVE, IT WOULDN'T STREAMLINE THE
```

1    TRIAL.  PROFESSOR NOLL WILL BE TESTIFYING AS TO FACT OF

2    DAMAGES OR IMPACT, WHICH IS AN ELEMENT OF PLAINTIFFS' CLAIM.

3    HE'LL ALSO BE TESTIFYING ABOUT THE CALCULATION OF TOTAL

4    DAMAGES.

5        SO FROM OUR POINT OF VIEW, YOUR HONOR, WE DON'T SEE THAT

6    IT WOULD STREAMLINE THE TRIAL, AND IT WOULD MAKE IT -- WE

7    WOULD, IN ESSENCE, HAVE TO HAVE PROFESSOR NOLL TESTIFY TWICE.

8    AND SO WE DON'T THINK IT WOULD SPEED THINGS UP VERY MUCH.

9        **MR. ISAACSON:**  WE DO UNDERSTAND THAT PROFESSOR NOLL

10   IS USING THE SAME REGRESSION FOR QUANTUM OF DAMAGES FOR

11   INJURY.  WE'RE NOT CLEAR WHETHER HE'S ALSO USING THAT TO

12   EXPRESS AN OPINION ABOUT LIABILITY.  BUT WE'RE NOT -- SO WE

13   ACCEPT THAT IF YOU BIFURCATE IN SOME MANNER, YOU WILL HEAR

14   ABOUT DR. NOLL'S REGRESSION TWICE, WHICH IS I THINK WHAT

15   COUNSEL IS SAYING.

16       **THE COURT:**  ALL RIGHT.  SO IT DOESN'T SOUND LIKE

17   ANYBODY THINKS THAT'S NECESSARILY A VERY GOOD IDEA.  IS THAT

18   WHAT I UNDERSTAND?

19       **MR. ISAACSON:**  WE HAVEN'T COME UP WITH PRACTICAL WAY

20   TO SEGREGATE THE ISSUES, BUT WE WERE WAITING TO HEAR IF

21   PLAINTIFFS OR THE COURT HAD A SUGGESTION.  WE HADN'T THOUGHT

22   OF --

23       **THE COURT:**  WELL, I DIDN'T -- I DIDN'T EXPECT THE

24   PLAINTIFFS -- PLAINTIFFS NEVER WANT TO BIFURCATE DAMAGES FROM

25   LIABILITY.  SO IF YOU HAVEN'T THOUGHT OF A PRACTICAL WAY TO DO

```
 1    IT, THEN I DON'T THINK THAT THERE PROBABLY IS ONE.

 2        I CERTAINLY HADN'T THOUGHT OF ONE MYSELF.  BUT IN LIGHT OF

 3    SOME OF THE RESERVATIONS I HAVE WITH PROFESSOR NOLL'S

 4    ANALYSIS, EVEN THOUGH I WASN'T WILLING TO EXCLUDE IT, IT DID

 5    OCCUR TO ME THAT I MIGHT WANT TO BIFURCATE.

 6            MR. ISAACSON:  WE HAVE THOSE RESERVATIONS, AS YOU

 7    KNOW, YOUR HONOR, BUT I THINK IT'S THE ALL-PURPOSE REGRESSION

 8    THAT'S BEING USED FOR ALL PURPOSES.

 9            THE COURT:  OKAY:  I THINK WE ARE GOING TO MOVE AT

10    THIS JUNCTURE FROM THE TRIAL TO THE MOTIONS TO SEAL UNLESS YOU

11    ALL HAVE ANY OTHER QUESTIONS.

12            MR. ISAACSON:  I'M GOING TO STEP DOWN IN FAVOR OF

13    MR. KIERNAN, WHO'S MORE FAMILIAR WITH THE PREVIOUS FILINGS AND

14    THOSE EXHIBITS.

15            MS. SWEENEY:  AND, YOUR HONOR, MR. MEDICI IS GOING TO

16    ARGUE ON BEHALF OF PLAINTIFFS.

17            THE COURT:  WELL, LET ME JUST SAY FIRST, GENTLEMEN,

18    THAT YOUR MOTIONS ARE PROCEDURALLY DEFECTIVE.  I DON'T KNOW

19    WHAT IS HAPPENING IN THE LAW FIRMS, WHO IS IN CHARGE, BUT

20    IT -- WE IMPLEMENTED THIS NEW PROCESS, WHICH ALLOWS YOU TO

21    AUTOMATICALLY SEAL TO STREAMLINE AND ASSIST THE COURT.

22        I CAN'T TELL YOU HOW MANY TIMES I MYSELF WENT ON TO ECF

23    AND CLICKED ON A DOCUMENT WHICH WAS OSTENSIBLY -- WHICH WAS

24    SEALED AND HAD ITS COUNTERPART OF THE REDACTED VERSION AND THE

25    SEALED DOCUMENT HAD NO COLOR CODING.
```

```
 1        EITHER, ONE, PEOPLE AREN'T PAYING ATTENTION TO DETAILS;
 2   OR, TWO, YOU EXPECT ME TO TAKE YOUR REDACTED VERSION AND TAKE
 3   THE SEALED VERSION AND DO A SIDE-BY-SIDE COMPARISON, WHICH I'M
 4   NOT GOING TO DO.  IT'S NOT ACCEPTABLE.
 5        SO AT LEAST ON THE PROCEDURAL POINT, YOU NEED TO START
 6   PAYING CLOSER ATTENTION TO MAKING SURE THAT THESE THINGS ARE
 7   FILED IN THE RIGHT WAY.  UNDERSTOOD?
 8             MR. MEDICI:  YES, YOUR HONOR.
 9             MR. KIERNAN:  YES, YOUR HONOR.
10             THE COURT:  ALL RIGHT.  WHAT'S IMPORTANT HERE?  I AM
11   NOT SEALING THE AMOUNT OF DAMAGES.  I AM NOT SEALING THE
12   ACRONYM FOR -- THE KVC ACRONYM.  I AM NOT SEALING LARGE
13   PORTIONS OF WHAT YOU ARE ASKING ME TO SEAL.  I'M NOT -- I'M
14   NOT SEALING AN ANALYSIS THAT'S NOT EVEN -- THAT'S A -- THEIR
15   EXPERT'S ANALYSIS BASED UPON HIS REGRESSION.  HOW CAN THAT BE
16   A TRADE SECRET OF APPLE?  HOW CAN THAT BE CONFIDENTIAL
17   INFORMATION, IS BEYOND ME.
18             MR. KIERNAN:  YOUR HONOR, WE HAVE -- AND I'VE MET
19   WITH PLAINTIFFS THIS MORNING AND OFFERED TO REFILE
20   EVERYTHING -- EVERYTHING WITH AN EXCEPTION -- I'LL COME TO
21   THAT -- WILL BE NOT SEALED.  AND THE PARTICULAR DOCUMENTS --
22   WE HAVE SIX AT ISSUE THAT DEAL WITH EITHER FAIRPLAY SOURCE
23   CODE -- THAT INCLUDE FAIRPLAY SOURCE CODE OR HAVE TECHNICAL
24   DESCRIPTIONS --
25                  (OFF-THE-RECORD DISCUSSION.)
```

 1          **MR. KIERNAN:**  -- THAT ARE HIGHLY CONFIDENTIAL.

 2          **THE COURT:**  AND IT'S NOT JUST ME.  EVERYBODY IN THE

 3    BACK WANTS TO HEAR YOU AS WELL.

 4          **MR. KIERNAN:**  SO WHAT WE HAD PROPOSED TO THE

 5    PLAINTIFFS IS WE WOULD GO THROUGH THOSE FIVE EXHIBITS THAT

 6    REFLECT THE TECHNICAL DESCRIPTIONS OF FAIRPLAY AND HOW IT

 7    OPERATES, REDACT THE PORTIONS THAT ARE NOT -- THAT ARE NOT

 8    HIGHLY TECHNICAL OR HIGHLY CONFIDENTIAL.

 9          AND THEN THE OTHER EXHIBIT THAT I WANT TO TAKE A LOOK AT

10    ARE THE CUSTOMER CONTACTS THAT THE PLAINTIFFS ATTACHED TO ONE

11    OF THEIR DECLARATIONS TO ENSURE THAT IT DOES NOT INCLUDE

12    PRIVATE INFORMATION OF THE CUSTOMERS THAT WERE SENDING IN

13    INQUIRIES INTO APPLE.  I THINK WE CAUGHT THEM ALL, BUT I WANT

14    TO HAVE THE OPPORTUNITY TO GO THROUGH THAT COMPILATION ONE

15    MORE TIME TO ENSURE THAT PERSONAL IDENTIFYING INFORMATION IS

16    NOT INCLUDED IN THOSE DOCUMENTS.

17          MY UNDERSTANDING FROM TALKING TO PLAINTIFFS' COUNSEL THIS

18    MORNING IS THEY'RE AMENABLE TO THE PROPOSAL.  I EXPLAINED I'D

19    SEND THEM THE REDACTIONS ON TUESDAY -- BY TUESDAY.  WE CAN

20    TAKE A LOOK -- IF THEY HAVE ANY OBJECTION TO -- TO THEM, I'M

21    CONFIDENT WE SHOULD BE ABLE TO RESOLVE THEM.  IF THERE'S -- IF

22    WE CAN'T RESOLVE IT FOR ANY REASON, WE'LL BRING IT TO YOUR

23    ATTENTION BY FRIDAY.  BUT THE PLAN IS TO HAVE ALL THIS STUFF

24    FILED BY FRIDAY.

25          IS THAT --

1          **MR. MEDICI:** YEAH, TO REFILE EVERYTHING.

2          **THE COURT:** SO SOURCE CODE, I DON'T HAVE ANY PROBLEM

3   SEALING. THOSE ARE THE KINDS OF THINGS THAT I THINK ARE

4   APPROPRIATE TO SEAL.

5      I DON'T EXACTLY KNOW WHAT YOU MEAN BY THE CUSTOMER ISSUE.

6   I THINK I SAW IN HERE, YOU KNOW, THERE WAS AN ATTEMPT TO MAKE

7   A -- TO SEAL A REFERENCE TO BEST BUY. THAT WOULD BE DENIED.

8   EVERYBODY BUYS THESE PRODUCTS AT BEST BUY.

9          **MR. KIERNAN:** THIS IS INDIVIDUAL CUSTOMERS WITH THEIR

10  NAME, EMAIL, SOCIAL SECURITY NUMBER, THINGS THAT WE HAVE TO

11  SEAL.

12         **THE COURT:** ALL OF THAT -- ALL OF THOSE THINGS SEEMS

13  LIKE THEY WOULD BE APPROPRIATE TO SEAL. SO IF THERE'S

14  ANYTHING YOU WANT ME TO LOOK AT NOW THAT'S ON THERE TO GIVE

15  YOU A SENSE BEFORE YOU WORK THROUGH THIS, I'M HAPPY TO DO

16  THAT. I'VE GOT ECF UP RIGHT NOW.

17         **MR. MEDICI:** I THINK IT'S SO LIMITED THAT WE SHOULD

18  BE ABLE TO COME TO AGREEMENT WITHOUT HAVING TO INVOLVE YOU.

19         **THE COURT:** OKAY. WELL, GUESS WHAT? YOU DON'T GET

20  TO SEAL. THAT IS, IF IT'S A JOINT REQUEST, THAT'S FINE. BUT

21  IT IS THE COURT'S JOB TO SEAL SO YOU HAVE TO INVOLVE ME

22  BECAUSE IT'S NOT GOING TO HAPPEN WITHOUT MY ORDER.

23         **MR. KIERNAN:** UNDERSTOOD, YOUR HONOR.

24         **THE COURT:** SO IT IS -- YOU KNOW, AS JUDGES, WE THINK

25  VERY SERIOUSLY ABOUT THE FACT THAT THIS IS A PUBLIC FORUM, SO

1   YOU DON'T GET TO SEAL UNLESS WE AUTHORIZE IT.  ALL RIGHT?

2       IT SOUNDS LIKE THE APPROACH NOW THAT YOU'RE TAKING IS THE

3   APPROPRIATE APPROACH TO TAKE.  A WEEK IS FINE WITH ME.  I

4   DON'T HAVE A PROBLEM WITH THAT.

5           **MR. KIERNAN:**  THANK YOU, YOUR HONOR.

6           **THE COURT:**  THANK YOU.

7           **MR. MEDICI:**  THANK YOU.

8           **THE COURT:**  WHICH REMINDED ME OF SOMETHING ELSE.

9   LADIES AND GENTLEMEN, YOU ALSO DON'T GET TO ADMIT EXHIBITS.

10  CAN'T TELL YOU HOW OFTEN LAWYERS WILL SAY, YOUR HONOR, I'D

11  LIKE TO ADMIT EXHIBIT 1.  WELL, GUESS WHAT?  YOU DON'T GET TO

12  DO THAT.  IT'S ONE OF THE PRIVILEGES I HAVE IN A TRIAL.  I GET

13  TO ADMIT; YOU GET TO OFFER.  OKAY?

14      WELL, THAT WAS ON MY AGENDA.

15      ANYTHING ELSE ON YOUR AGENDA?  MS. SWEENEY?  MR. ISAACSON?

16          **MS. SWEENEY:**  NO, YOUR HONOR.

17          **MR. ISAACSON:**  NO, YOUR HONOR.

18          **THE COURT:**  I HAVE TO SAY, I THINK IT'S GREAT WE HAVE

19  SO MANY FEMALE LITIGATORS IN THE COURTROOM RIGHT NOW.  NEVER

20  SEEN THIS MANY ON THIS SIZE TRIAL.  I'VE GOT FOUR ON ONE SIDE

21  THREE ON THE OTHER.

22      MR. ISAACSON, YOU HOPE YOU LET SOME OF THEM TALK DURING

23  THE TRIAL.

24          **MR. ISAACSON:**  YOU'RE GOING TO HEAR A LOT FROM --

25  FROM THIS TABLE.

```
 1            THE COURT:  ALL RIGHT.  THE OTHER -- JUST THE OTHER

 2   LOGISTICAL THING, I DO BELIEVE IN THIS COURTHOUSE, IF YOU TALK

 3   TO OUR COURT ADMINISTRATOR, THEY WILL RESERVE A ROOM FOR YOU

 4   DOWN THE HALL.

 5            THE CLERK:  AND YOU SHOULD DO IT RIGHT AWAY, LIKE

 6   TODAY WOULD BE GOOD.

 7            THE COURT:  OKAY?

 8            THE CLERK:  YEAH.

 9            THE COURT:  I THINK IT'S -- LET'S SCHEDULE YOU TO

10   COME BACK ONCE I HAVE SOME OF THESE DOCUMENTS FROM YOU.

11                 (PAUSE IN THE PROCEEDINGS.)

12            THE COURT:  WELL, I GUESS THE ONLY OPTION IS -- DO

13   YOU WANT TO COME IN ON THE 14TH?  THAT WOULD BE -- I CANNOT

14   SEE YOU -- I THINK I NEED TO MOVE THE DATE OF 28TH TO THE

15   29TH.

16      SO YOU HAVE THINGS DUE ON THE 14TH.  I CAN SEE YOU THAT

17   DAY IF YOU WANT TO COME IN BEFORE WE MEET AT THE END OF THE

18   MONTH.  IT SOUNDS TO ME LIKE EVERYTHING IS MOVING ALONG

19   WITHOUT ISSUES.  EVERYBODY'S GETTING ALONG.  IT'S NOT GOING TO

20   BE LIKE THE LAST TRIAL I HAD.

21            MS. SWEENEY:  I THINK WE WOULD BE OKAY WAITING UNTIL

22   THE 29TH, YOUR HONOR.

23            THE COURT:  MR. ISAACSON?

24            MR. ISAACSON:  I THINK IT'S JUST A MATTER OF HOW YOU

25   WANT TO HANDLE THE MOTIONS IN LIMINE THAT WILL BE ON FILE
```

1   BEFORE THEN, WHETHER YOU WANT ARGUMENT ON THOSE.

2          **THE COURT:**  WELL, THE OPPOSITIONS AREN'T DUE UNTIL

3   THE 14TH.

4          **MR. ISAACSON:**  YES.

5          **THE COURT:**  SO I WILL NOT HAVE READ THEM.

6          **MR. ISAACSON:**  I WAS RESPONDING TO YOUR QUESTION

7   ABOUT DO THE END OF THE MONTH.

8          **THE COURT:**  I'M OUT, SO IT'S EITHER THE 14TH ON OTHER

9   ISSUES.  THE NEXT TIME AFTER THE 14TH I HAVE TO MEET WITH YOU

10  AVAILABLE IS THE PRETRIAL CONFERENCE THAT WAS PREVIOUSLY

11  SCHEDULED.

12         **MR. ISAACSON:**  OKAY.  IF YOU WANT TO HEAR ARGUMENT AT

13  THE PRETRIAL CONFERENCE, WE CAN DO IT THEN.

14         **THE COURT:**  ALL RIGHT.  SO WHY DON'T YOU PLAN ON

15  THAT.  IF YOU, FOR SOME REASON, HIT -- HIT A WALL OR YOU'RE

16  HAVING ISSUES, CONTACT THE COURTROOM DEPUTY.  I CAN PUT YOU ON

17  MY CALENDAR FOR 14TH IN THE MORNING.  I'LL LEAVE IT TO YOU.

18  WHAT I DON'T WANT TO DO IS HAVE YOUR PROGRESS SOMEHOW

19  FALTERING BECAUSE -- WHEN I COULD IN TEN MINUTES SOLVE

20  PROBLEMS FOR YOU, IF I CAN -- IF I CAN DO THAT.

21     WHAT I NEED TO DO AT THIS POINT IS I'M GOING TO HAVE TO

22  PRECLEAR THE JURORS.  SO I WANT TO MAKE SURE THAT WE'RE ON

23  TARGET TO HAVE EVERYTHING READY TO GO.  SO DON'T WAIT IF YOU

24  GET -- IF THERE'S A PROBLEM.

25         **MR. ISAACSON:**  BEFORE THE 28TH -- ARE YOU MOVING IT

1 | TO --

2 | **THE COURT:** SO WHAT I'D LIKE TO DO IS MOVE YOUR

3 | PRETRIAL CONFERENCE FROM OCTOBER 28TH TO OCTOBER 29TH.  SAME

4 | TIME, 9:30.

5 | **MR. ISAACSON:** ALL RIGHT.  AND YOU WILL ALSO HAVE

6 | THE -- ANY COMPETING JURY INSTRUCTIONS BEFORE YOU BY THAT

7 | TIME, AND YOU CAN RESOLVE -- IF -- TO THE EXTENT YOU WANT TO

8 | RESOLVE SOME OF THOSE ISSUES BEFORE THE TRIAL, PARTICULARLY --

9 | **THE COURT:** I'LL BE OUT OF THE COUNTRY.

10 | **MR. ISAACSON:** OKAY.

11 | **THE COURT:** I WON'T BE RESOLVING THEM IF I DON'T HAVE

12 | TO UNTIL I GET BACK.

13 | **MS. SWEENEY:** OKAY.  THANK YOU, YOUR HONOR.

14 | **THE COURT:** OKAY.  ALL RIGHT.  SO THEN WE ARE

15 | ADJOURNED UNTIL THE 29TH UNLESS YOU NEED TO SEE ME IN ADVANCE.

16 | THANK YOU VERY MUCH.

17 | **MR. ISAACSON:** THANK YOU, YOUR HONOR.

18 | (PROCEEDINGS WERE CONCLUDED AT 10:25 A.M.)

19 | --O0O--

20 |

21 |

22 |

23 |

24 |

25 |

**CERTIFICATE OF REPORTER**

      I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER. I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

TUESDAY, OCTOBER 7, 2014

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*