ROBBINS GELLER RUDMAN
 & DOWD LLP
BONNY E. SWEENEY (176174)
ALEXANDRA S. BERNAY (211068)
CARMEN A. MEDICI (248417)
JENNIFER N. CARINGAL (286197)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
bonnys@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com
jcaringal@rgrdlaw.com
        – and –
PATRICK J. COUGHLIN (111070)
STEVEN M. JODLOWSKI (239074)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
patc@rgrdlaw.com
sjodlowski@rgrdlaw.com

Class Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTITRUST LITIGATION | Lead Case No. C-05-00037-YGR |
| | CLASS ACTION |
| This Document Relates To: | DECLARATION OF BONNY E. SWEENEY IN SUPPORT OF PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO APPLE'S MOTIONS IN LIMINE NOS. 5 AND 6 |
| ALL ACTIONS. | |

DATE:        October 29, 2014
TIME:        9:30 a.m.
CTRM:       1 – 4th Floor
JUDGE:      Hon. Yvonne Gonzalez Rogers

TRIAL:        November 17, 2014
TIME: 8:30 a.m.

977880_1

1    I, BONNY E. SWEENEY, declare:

2    1.    I am an attorney duly licensed to practice before all of the courts of the State of

3    California. I am a member of the law firm of Robbins Geller Rudman & Dowd LLP, Class Counsel

4    for the Class and for Plaintiffs Melanie Wilson (formerly Tucker) and Marianna Rosen (collectively,

5    "Plaintiffs") in this action. I have personal knowledge of the matters stated herein, and, if called

6    upon, I could and would completely testify thereto.

7    2.    I submit this declaration in support of Plaintiffs' Memorandum of Points and

8    Authorities in Opposition to Apple's Motions *in Limine* Nos. 5 and 6.

9    3.    Attached hereto are true and correct copies of the following documents:

10   | **Exhibit** | **Document Description** |
|---|---|
| Exhibit 1: | Relevant excerpts from the May 23, 2013 Hearing Transcript in *United States v. Apple, Inc.*, No. 12 Civ. 2826 (DLC) (S.D.N.Y.); |
| Exhibit 2: | Relevant excerpts from the Declaration of Roger G. Noll, dated January 18, 2011; |
| Exhibit 3: | Relevant excerpts from the Second Report of the External Compliance Monitor, dated October 14, 2014 in *United States v. Apple*, No. 12 Civ. 2826 (DLC) (S.D.N.Y.); and |
| Exhibit 4: | Relevant excerpts from Ordering Denying Plaintiffs' Motion for Preliminary Approval of Settlement with Adobe, Apple, Google, and Intel, in *In re High–Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK (N.D. Cal.). |

19   I declare under penalty of perjury under the laws of the United States of America that the

20   foregoing is true and correct. Executed this 17th day of October , 2014, at San Diego, California.

22                                    s/ Bonny E. Sweeney
                                      BONNY E. SWEENEY

977880_1

DEC OF BONNY E. SWEENEY ISO PLAINTIFFS' MEMORANDUM OF PS & AS IN
OPPOSITION TO APPLE'S MOTIONS *IN LIMINE* NOS. 5 AND 6 - C-05-00037-YGR                - 1 -

EXHIBIT 1

D5NHUSA1

<pre>
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4                Plaintiff,

 5          v.                          12 Civ. 2826 (DLC)

 6   APPLE, INC., et al.,

 7                Defendants.

 8   ------------------------------x

 9
                                       May 23, 2013
10                                     2:30 p.m.
     Before:
11
                     HON. DENISE L. COTE,
12
                                       District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25
</pre>

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:12-cv-02826-DLC Document 265-1 Filed 05/31/17 Page 5 of 24    31
Case 4:05-cv-00037-YGR Document 835-1 Filed 10/17/14 Page 5 of 24

D5NHUSA1

1    anti-competitive harm in the alleged relevant market.

2         In my view, Dr. Burtis has not shown that her opinion

3    regarding the extent to which the data does or does not show

4    anti-competitive effect is sufficiently rooted in economic

5    theory to be admissible.  Let me give you some examples by

6    directing your attention to certain paragraphs.

7         Part of the problem we have here is that your motions

8    in limine were made based on the experts' reports and not their

9    affidavits.  So sometimes I didn't find any reference, even in

10   the reply affidavit, the reply memos on the briefing, to the

11   specific passages that were being challenged.

12        I have to say it is instinctual for me to read an

13   affidavit and be making objections in my own mind whether you

14   make them or not where I feel it is appropriate.  So this

15   didn't really prevent me from looking with some care at the

16   affidavits, but let me give you some examples.

17        Paragraph 3, the sentence:  "I have concluded that the

18   economic evidence is inconsistent with plaintiff's allegations

19   of anti-competitive harm in the alleged relevant market."

20        Paragraph 18, the entire paragraph.

21        Paragraph 19:  "I have concluded that the data do not

22   support plaintiff's allegation."

23        Paragraph 20:  "If the analysis was performed based on

24   the one-year time period that Professor Gilbert uses to measure

25   the long-run effect of the switch to agency on eBook retail

Case 4:05-cv-00037-YGR Document 835-1 Filed 10/17/14 Page 6 of 24
Case 1:12-cv-02826-DLC Document 265-1 Filed 05/01/14 Page 32 of 66    32

D5NHUSA1

1    prices by publisher defendants, my conclusion would be

2    unchanged."

3            Paragraph 28:  "I do not believe that this fact

4    supports the allegation event of competitive harm in the

5    alleged relevant market."

6            These are just examples.  I personally think that the

7    affidavit can be received substantially and that it needs a few

8    redactions and exclusions to make it appropriate testimony.

9            Let's turn to Dr. Murphy.

10           The plaintiffs have moved to preclude Dr. Kevin Murphy

11   from offering three of his six principal opinions on the

12   grounds that they are premised on a faulty legal standard and

13   do little more than summarize record evidence to argue, *inter*

14   *alia*, Apple's intent in other matters outside his field of

15   expertise, which is economics.  The three challenged opinions

16   are:  (1) an economic evaluation of whether the evidence tends

17   to exclude the possibility that Apple behaved independently and

18   not as part of a conspiracy should consider the economic

19   incentives Apple faced;

20           (2) Apple's negotiation process with publisher

21   defendants to launch the iBookstore was consistent with its

22   historical practices, consistent with its economic incentives

23   absent conspiracy and reasonably necessary to achieve its

24   business objectives;

25           (3) the challenged provisions in Apple's agreements

Case 4:05-cv-00037-YGR   Document 825-1   Filed 10/17/14   Page 7 of 24   33
Case 1:12-cv-02826-DLC   Document 265-1   Filed 05/30/17   Page 33 of 66
D5NHUSA1

1     with publishers were in Apple's self-interest, absent any

2     participation in or knowledge of an alleged conspiracy among

3     the publishers.

4              Dr. Murphy's trial declaration is focused almost

5     exclusively on Apple's conduct and motivations.  Much, as would

6     be the case with an attorney's summation, it points to record

7     evidence to make an argument that Apple acted in a way that was

8     fully consistent with its independent economic interest.  His

9     analysis of Apple's self-interest serves his larger public

10    policy argument that it is bad economic policy to prevent firms

11    from acting unilaterally to offer suppliers a new business

12    model when their challenged conduct is commercially reasonable

13    and is the kind of conduct that typically leads to new entry

14    and consumer benefits.  But Apple, of course, is not accused in

15    this case of unilateral action.  So that discussion by

16    Dr. Murphy is quite irrelevant.

17             In the context of this motion, the parties also

18    wrangle over the correct legal standard to be applied at trial

19    when adjudicating Apple's liability.  Apple contends that the

20    proper inquiry under the Monsanto decision is whether Apple

21    acted in its independent economic self-interest, at least in

22    the absence of direct evidence of participation in a

23    conspiracy.  The plaintiffs assert that when an accused

24    conspirator is in a vertical relationship with its

25    coconspirators, the vertical player's independent economic

Case 4:05-cv-00037-YGR   Document 835-1   Filed 10/17/14   Page 8 of 24
Case 1:12-cv-02826-DLC   Document 265-1   Filed 05/31/17   Page 34 of 66     34
D5NHUSA1

1    self-interest carries no weight because the allegation of

2    conspiracy is not based on that player's parallel conduct.  The

3    plaintiffs acknowledge their obligation to present evidence,

4    whether direct or circumstantial, that proves that Apple and

5    its coconspirators made a conscious commitment to a scheme

6    designed to raise eBook prices.

7            If the plaintiffs succeed in proving that Apple

8    reached an agreement with the publishers to act together to

9    raise eBook prices and took steps to further that scheme, then

10   the fact that that scheme and those steps were in Apple's own

11   independent economic interest is no defense.

12           On the other hand, if the circumstantial evidence that

13   Apple intentionally entered into a price-fixing conspiracy is

14   ambiguous, all evidence, including the extent to which an

15   action would have been in its economic interest absent a

16   conspiracy, should be considered.

17           As a consequence, at the very least Dr. Murphy's

18   testimony on the first issue identified by the plaintiffs is

19   premised on a faulty legal assumption and is irrelevant in this

20   case.  To the extent that Dr. Murphy simply presents his own

21   views regarding Apple's motives and intentions, that testimony

22   is also inadmissible as an improper invasion of the fact

23   finder's role.

24           I direct your attention in particular to paragraph 11

25   in his testimony.  I have two examples for you.  One is the

D5NHUSA1

1  sentence that reads, at least in part as follows:  "As a matter

2  of economics, the critical question is whether Apple's conduct

3  is consistent with its own independent business interests

4  absent participation in a conspiracy."

5       No.  We can spend time if it is helpful today talking

6  about Monsanto.

7       Let's turn to paragraph 13.  Right in the middle of

8  that paragraph, he disagrees with something Professor Gilbert

9  says and then he says:  "But this has nothing to do with

10  Apple's reason for offering those agency agreements."

11       I am going to make findings of fact as to Apple's

12  motivation here and no expert is able to do that.

13       Now, this is not a problem unique to this expert's

14  testimony, but I think it would have been more helpful if

15  experts generally have said I am assuming the following and

16  describe the facts or conclusions that they are assuming and

17  then brought their expertise to bear on an analysis of economic

18  reality or processes in the field to the extent that they

19  thought that would be helpful to the fact finder.

20       There is a lot in this opinion that is really

21  appropriate summation argument.  If you can find core economic

22  analysis and evaluation that would be helpful to the fact

23  finder, great.  And again, only part of this declaration is

24  challenged by this motion in limine.

25       Let's turn to Dr. Gilbert.  Apple moves to preclude

# EXHIBIT 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

_____
                                    |
APPLE IPOD ITUNES ANTI-TRUST        |
                                    |     Lead Case No. C-05-00037-JW
LITIGATION                          |
_____|

**Declaration of Roger G. Noll**
**[FILED UNDER SEAL]**

My name is Roger G. Noll, and I reside in Palo Alto, California.  My education includes a B. S. with honors in mathematics from the California Institute of Technology and a Ph. D. in economics from Harvard University.  I am Professor *Emeritus* of Economics at Stanford University*,* Senior Fellow in the Stanford Institute for Economic Policy Research (SIEPR), and Co-Director of the SIEPR Program in Regulatory Policy.

My primary area of scholarship is the field of industrial organization, which includes the economics of antitrust, regulation, technology policy, and specific industries. I have taught these subjects at both the undergraduate and graduate level.  I am the author, co-author or editor of thirteen books, and the author or co-author of over 300 articles.  Much of my research for the past forty years has focused on the entertainment industry, and more recently on antitrust and intellectual property issues associated with the digital revolution.  My complete *curriculum vita* is attached as Appendix A.

I have served as a consultant to the Antitrust Division of the U.S. Department of Justice, the U. S. Federal Trade Commission, the Federal Communications Commission, and the Senate Subcommittee on Antitrust and Monopoly.  I also have participated on committees of the National Research Council that investigated antitrust and intellectual

property issues associated with the rise of digital information technology and the delivery of entertainment products over the Internet, including the Board on Science, Technology and Economic Policy and the Committee on Intellectual Property Rights and the Emerging Information Infrastructure.  As a member of the latter Committee, I was co-author of *The Digital Dilemma*, a study of the implications of developments in information technology for the traditional publishing and entertainment industries.  I also was a member of the California Council on Science and Technology, for which I organized and edited a study of disparities in access to computers and the Internet that was published by CCST as *Bridging the Digital Divide*.

I have served as an economic expert in previous litigation, some of which involved economic issues associated with digital entertainment technologies and the Internet.  During the past five years I have testified at trial in the following cases:

*Metropolitan Intercollegiate Basketball Association vs. National Collegiate Athletic Association* (U.S. District Court, New York, New York);

*Gordon, et al., vs. Microsoft* (Superior Court, Hennepin County, Minneapolis, Minnesota);

*Seven Network v. News Limited* (Federal Court, District of New South Wales, Sydney, Australia);

*In Re Tableware Antitrust Litigation* (U. S. District Court, San Francisco, California);

*In the Matter of Adjustment of Rates and Terms for Pre-existing Subscription and Satellite Digital Audio Radio Service* (Copyright Royalty Board, Washington, D. C.);

*Bernard Parish, et al., vs. National Football League Players Association* (U.S.

District Court, San Francisco, California);

*Application for the Determination of Reasonable License Fees by MobiTV Related to U.S. vs. ASCAP* (U.S. District Court, New York, New York);  and

*Reggie White vs. National Football League* (U.S. District Court, Minneapolis, Minnesota).

I also testified at an arbitration hearing in a process created by the Federal Communications Commission to resolve disputes over retransmission agreements between Fox television network and multi-channel video distribution systems:

*Echostar Communications vs. News Corporation*.

In addition, I have submitted expert reports and/or been deposed in the following other cases that are still pending or have reached conclusion within the last five years:

*Coordination Proceedings Special Title, Microsoft Cases I - V* (California Superior Court, San Francisco);

*Gemstar Patent Litigation* (U. S. District Court, Denver, Colorado);

*In Re Napster Copyright Litigation* (U. S. District Court, San Francisco, California);

*National Association of Optometrists and Opticians, et al., vs. Lockyer, et al.,* (U.S. District Court, Sacramento, California);

*Fran Am Partnership vs. Sports Car Clubs of America* (U. S. District Court, Denver, Colorado);

*Intertainer vs. Time-Warner, et al.* (U.S. District Court, Los Angeles, California);

*Joe Comes, et al., v. Microsoft* (District Court for Polk County, Des Moines, Iowa);

3

EXHIBIT 3

NON-CONFIDENTIAL VERSION

**Second Report of the External Compliance Monitor**

**United States v. Apple, Inc., et al., No. 1:12-CV-2826, and**

**The State of Texas, et al. v. Penguin Group (USA) Inc., et al., No. 1:12-CV-3394**

**Michael R. Bromwich**
**External Compliance Monitor**
**October 14, 2014**

NON-CONFIDENTIAL VERSION

B.      The Monitorship Begins:  October-November 2013

On October 22, 2013, after initial communications between Apple and the Monitor, members of the monitoring team met with representatives of Apple ("October 22 Meeting") at the New York offices of Gibson, Dunn & Crutcher LLP ("Gibson Dunn").  At the meeting, the Monitor described his approach to the monitoring assignment in this case, including that the Monitor's actions are limited by the terms of the Final Judgment and his hope for a collaborative relationship with Apple.  Apple's representatives stated that the company was committed to ensuring that it had an effective and robust antitrust compliance program.

During the October 22 Meeting, we explained that we planned to use the initial 90-day period under the Final Judgment, during which Apple was to revise its policies, procedures and training,[37] to gain important background information that would be necessary to undertake a meaningful assessment. Specifically, in order to assess whether Apple's revised antitrust compliance policies, procedures, and training materials were reasonable and effective for the company, we explained that we needed to understand Apple's reporting oversight structure for antitrust compliance; Apple's existing antitrust policies, procedures, and training; the ongoing processes to revise and update Apple's policies and procedures; and the roles of the Audit and Finance Committee and Risk Oversight Committee in compliance matters.  We asked Apple to provide us with documents relevant to those issues.[38]

The Monitor asked to schedule a series of brief preliminary meetings or interviews with various Apple personnel that would be helpful to understanding Apple's businesses and structure.  Because the Court had specifically expressed concern with Apple's compliance at the highest levels of the company, the Monitor requested preliminary meetings or interviews during the week of November 18, 2013 with members of Apple's Board of Directors (or "Board"), senior management, and senior personnel responsible for the iBooks Store, iTunes, and the App Store.

Apple expressed concern about the interview requests because, according to its representatives, the proposed interviewees were busy and there remained "a lot of anger" regarding the ebooks Litigation. The Monitor explained that he believed early interviews with high-level personnel were essential but said he was flexible regarding the timing and length of these preliminary interviews.

---

[37] Section VI.C of the Final Judgment requires the Monitor to evaluate Apple's antitrust compliance policies, procedures and training as they exist 90 days after the Monitor's appointment, or on January 14, 2014.

[38] As described below, we reiterated this October 22 request on numerous occasions.

NON-CONFIDENTIAL VERSION

Apple responded that any plan that included interviews of senior Apple personnel was problematic.

The Monitor also informed Apple at the October 22 Meeting that the monitoring team would like to observe live antitrust compliance training sessions because such observations would be important to our evaluation of the comprehensiveness and effectiveness of the new training programs Apple was preparing to implement. Apple also expressed concern about that request.

On October 31, 2013, Gibson Dunn sent a letter to the Monitor outlining Apple's objections to the timing and scope of our proposed activities. The letter asserted that we should not interview senior Apple employees or Board members until after January 14, 2014, 90 days after the monitorship began. Concerned that an immediate course correction was necessary, we responded by letter the next day and enclosed a separate letter addressed to Tim Cook, Apple's Chief Executive Officer, and D. Bruce Sewell, Apple's General Counsel. In the November 1 letter to Mssrs. Cook and Sewell, the Monitor introduced himself, outlined his responsibilities under the Final Judgment, and repeated the principles to which the monitoring team would adhere in our monitoring activities. He expressed the hope for a constructive relationship and explained that the relationship with Apple should not be adversarial. The Monitor expressed concern that we had not yet received any of the documents Apple had promised and that the company had not meaningfully responded to our request for brief preliminary interviews with certain Apple personnel.

Mr. Sewell responded to the November 1 letter on November 4, 2013. He promised that he would provide us with a "comprehensive update on [Apple's] progress" and would "facilitate whatever meetings [were] appropriate for [the Monitor] to fully and completely discharge [his] responsibilities." He also explained that the newly hired ACO would "dedicate the next two months to developing new training materials and redesigning [Apple's] compliance program," and that she needed to work "uninterrupted" during that period. Finally, he emphasized that Apple's disputes with our team should "in no way diminish the fact that executives at the highest levels of management . . . are extremely attentive to the issue of compliance with the Final Judgment and are taking active steps to meet the remediation time line expressed by Judge Cote."

Over the next week, the Monitor had numerous communications with Apple's outside counsel, which culminated with Apple offering interviews of two Apple employees – Tom Moyer, the company's Chief Compliance Officer; and Gene Levoff, Senior Director and Associate General Counsel – during the week of November 18. Apple did not make available the other individuals the Monitor had asked to interview.

EXHIBIT 4

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |  |
|---|---|---|
| IN RE: HIGH-TECH EMPLOYEE ANTITRUST LITIGATION | ) ) ) ) ) ) ) | Case No.: 11-CV-02509-LHK ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH ADOBE, APPLE, GOOGLE, AND INTEL |
| THIS DOCUMENT RELATES TO: **ALL ACTIONS** | ) ) ) ) ) |  |

Before the Court is a Motion for Preliminary Approval of Class Action Settlement with Defendants Adobe Systems Inc. ("Adobe"), Apple Inc. ("Apple"), Google Inc. ("Google"), and Intel Corp. ("Intel") (hereafter, "Remaining Defendants") brought by three class representatives, Mark Fichtner, Siddharth Hariharan, and Daniel Stover (hereafter, "Plaintiffs"). *See* ECF No. 920. The Settlement provides for $324.5 million in recovery for the class in exchange for release of antitrust claims. A fourth class representative, Michael Devine ("Devine"), has filed an Opposition contending that the settlement amount is inadequate. *See* ECF No. 934. Plaintiffs have filed a Reply. *See* ECF No. 938. Plaintiffs, Remaining Defendants, and Devine appeared at a hearing on June 19, 2014. *See* ECF No. 940. In addition, a number of Class members have submitted letters in

Case No.: 11-CV-02509-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH
ADOBE, APPLE, GOOGLE, AND INTEL

**United States District Court**
For the Northern District of California

1  the Court notes that relevant evidence regarding the Settled Defendants would be admissible at a

2  trial against Remaining Defendants because Plaintiffs allege an overarching conspiracy that

3  included all Defendants. Accordingly, evidence regarding the role of Lucasfilm and Pixar in the

4  creation of and the intended effect of the overarching conspiracy would be admissible.

5      Nonetheless, the Court notes that Plaintiffs are correct that there are particularly clear

6  statements from Lucasfilm and Pixar executives regarding the nature and goals of the alleged

7  conspiracy. Specifically, Edward Catmull (Pixar President) conceded in his deposition that anti-

8  solicitation agreements were in place because solicitation "messes up the pay structure." ECF No.

9  431-9 at 81. Similarly, George Lucas (former Lucasfilm Chairman of the Board and CEO) stated,

10  "we cannot get into a bidding war with other companies because we don't have the margins for that

11  sort of thing." ECF No. 749-23 at 9.

12      However, there is equally compelling evidence that comes from the documents of the

13  Remaining Defendants. This is particularly true for Google and Apple, the executives of which

14  extensively discussed and enforced the anti-solicitation agreements. Specifically, as discussed in

15  extensive detail in this Court's previous orders, Steve Jobs (Co-Founder, Former Chairman, and

16  Former CEO of Apple, Former CEO of Pixar), Eric Schmidt (Google Executive Chairman,

17  Member of the Board of Directors, and former CEO), and Bill Campbell (Chairman of Intuit Board

18  of Directors, Co-Lead Director of Apple, and advisor to Google) were key players in creating and

19  enforcing the anti-solicitation agreements. The Court now turns to the evidence against the

20  Remaining Defendants that the finder of fact is likely to find compelling.

21              **1.     Evidence Related to Apple**

22      There is substantial and compelling evidence that Steve Jobs (Co-Founder, Former

23  Chairman, and Former CEO of Apple, Former CEO of Pixar) was a, if not the, central figure in the

24  alleged conspiracy. Several witnesses, in their depositions, testified to Mr. Jobs' role in the anti-

25  solicitation agreements. For example, Eric Schmidt (Google Executive Chairman, Member of the

26  Board of Directors, and former CEO) stated that Mr. Jobs "believed that you should not be hiring

27  each others', you know, technical people" and that "it was inappropriate in [Mr. Jobs'] view for us

28

Case No.: 11-CV-02509-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH
ADOBE, APPLE, GOOGLE, AND INTEL

to be calling in and hiring people." ECF No. 819-12 at 77. Edward Catmull (Pixar President) stated that Mr. Jobs "was very adamant about protecting his employee force." ECF No. 431-9 at 97. Sergey Brin (Google Co-Founder) testified that "I think Mr. Jobs' view was that people shouldn't piss him off. And I think that things that pissed him off were—would be hiring, you know— whatever." ECF No. 639-1 at 112. There would thus be ample evidence Mr. Jobs was involved in expanding the original anti-solicitation agreement between Lucasfilm and Pixar to the other Defendants in this case. After the agreements were extended, Mr. Jobs played a central role in enforcing these agreements. Four particular sets of evidence are likely to be compelling to the fact-finder.

*First*, after hearing that Google was trying to recruit employees from Apple's Safari team, Mr. Jobs threatened Mr. Brin, stating, as Mr. Brin recounted, "if you hire a single one of these people that means war." ECF No. 833-15.[10] In an email to Google's Executive Management Team as well as Bill Campbell (Chairman of Intuit Board of Directors, Co-Lead Director of Apple, and advisor to Google), Mr. Brin advised: "lets [sic] not make any new offers or contact new people at Apple until we have had a chance to discuss. *Id.* Mr. Campbell then wrote to Mr. Jobs: "Eric [Schmidt] told me that he got directly involved and firmly stopped all efforts to recruit anyone from Apple." ECF No. 746-5. As Mr. Brin testified in his deposition, "Eric made a—you know, a—you know, at least some kind of—had a conversation with Bill to relate to Steve to calm him down." ECF No. 639-1 at 61. As Mr. Schmidt put it, "Steve was unhappy, and Steve's unhappiness absolutely influenced the change we made in recruiting practice." ECF No. 819-12 at 21. Danielle Lambert (Apple's head of Human Resources) reciprocated to maintain Apple's end of the anti-solicitation agreements, instructing Apple recruiters: "Please add Google to your 'hands-off' list. We recently agreed not to recruit from one another so if you hear of any recruiting they are doing against us, please be sure to let me know." ECF No. 746-15.

---

[10] On the same day, Mr. Campbell sent an email to Mr. Brin and to Larry Page (Google Co-Founder) stating, "Steve just called me again and is pissed that we are still recruiting his browser guy." ECF No. 428-13. Mr. Page responded "[h]e called a few minutes ago and demanded to talk to me." *Id.*

1

CERTIFICATE OF SERVICE

2    I hereby certify that on October 17, 2014, I authorized the electronic filing of the foregoing

3 with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

4 the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5 caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6 CM/ECF participants indicated on the attached Manual Notice List.

7    I certify under penalty of perjury under the laws of the United States of America that the

8 foregoing is true and correct.  Executed on October 17, 2014.

9                                              s/ Bonny E. Sweeney
                                              BONNY E. SWEENEY

10

11                                            ROBBINS GELLER RUDMAN
                                                  & DOWD LLP

12                                            655 West Broadway, Suite 1900
                                              San Diego, CA  92101-8498

13                                            Telephone:  619/231-1058
                                              619/231-7423 (fax)

14                                            E-mail:      bonnys@rgrdlaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

977880_1

# Mailing Information for a Case 4:05-cv-00037-YGR The Apple iPod iTunes Anti-Trust Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amir Q Amiri**
  aamiri@jonesday.com,ttualaulelei@jonesday.com

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com,LMix@rgrdlaw.com,TJohnson@rgrdlaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Jennifer N. Caringal**
  JCaringal@rgrdlaw.com

- **Todd David Carpenter**
  Todd@Carpenterlawyers.com

- **Patrick J. Coughlin**
  PatC@rgrdlaw.com,SusanM@rgrdlaw.com,e_file_sd@rgrdlaw.com,SJodlowski@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **John F. Cove , Jr**
  jcove@bsfllp.com,jchavez@bsfllp.com,kmurphy@bsfllp.com,dnasca@bsfllp.com,sphan@bsfllp.com

- **Meredith Richardson Dearborn**
  mdearborn@bsfllp.com,cseki@bsfllp.com

- **Karen Leah Dunn**
  kdunn@bsfllp.com

- **Andrew S. Friedman**
  khonecker@bffb.com,rcreech@bffb.com,afriedman@bffb.com

- **Martha Lea Goodman**
  mgoodman@bsfllp.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com,winkyc@zhlaw.com

- **William A. Isaacson**
  wisaacson@bsfllp.com,jmilici@bsfllp.com

- **Steven M. Jodlowski**
  sjodlowski@rgrdlaw.com

- **Roy Arie Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com

- **Carmen Anthony Medici**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,mlandsborough@jonesday.com,pwalter@jonesday.com

- **Brian P. Murray**
  bmurray@glancylaw.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Elaine A. Ryan**
  eryan@bffb.com,nserden@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Michael Tedder Scott**
  mike.scott@dlapiper.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **Bonny E. Sweeney**
  bonnys@rgrdlaw.com,slandry@rgrdlaw.com,E_file_sd@rgrdlaw.com,ckopko@rgrdlaw.com

- **Helen I. Zeldes**
  helenz@zhlaw.com,winkyc@zhlaw.com,aarono@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)