1  William A. Isaacson (wisaacson@bsfllp.com)
   (Admitted *Pro Hac Vice*)
2  Karen L. Dunn (kdunn@bsfllp.com)
   (Admitted *Pro Hac Vice*)
3  Martha L. Goodman (mgoodman@bsfllp.com)
   (Admitted *Pro Hac Vice*)
4  BOIES, SCHILLER & FLEXNER LLP
   5301 Wisconsin Ave, NW
5  Washington, DC 20015
   Telephone:  (202) 237-2727
6  Facsimile:  (202) 237-6131

7  John F. Cove, Jr. #212213
   (jcove@bsfllp.com)
8  Meredith R. Dearborn #268312
   (mdearborn@bsfllp.com)
9  BOIES, SCHILLER & FLEXNER LLP
   1999 Harrison Street, Suite 900
10 Oakland, CA 94612
   Telephone:  (510) 874-1000
11 Facsimile:  (510) 874-1460

12 David C. Kiernan #215335
   (dkiernan@jonesday.com)
13 JONES DAY
   555 California Street, 26th Floor
14 San Francisco, CA  94104
   Telephone:  (415) 626-3939
15 Facsimile:  (415) 875-5700

16 *Attorneys for Defendant Apple Inc.*

17              UNITED STATES DISTRICT COURT

18              NORTHERN DISTRICT OF CALIFORNIA

19                    OAKLAND DIVISION

20 THE APPLE iPOD iTUNES ANTI-          Lead Case No.  C 05-00037 YGR
   TRUST LITIGATION                     [CLASS ACTION]
21
   _____     **APPLE'S OPPOSITIONS TO**
22                                       **PLAINTIFFS' MOTIONS *IN LIMINE* NOS.**
   This Document Relates To:            **1-6, 9**
23
   ALL ACTIONS                          Date:    October 29, 2014
24                                       Time:    9:30 AM
                                         Place:   Courtroom 1, 4th Floor
25                                       Judge:   Honorable Yvonne Gonzalez Rogers
26
27
28

1

**TABLE OF CONTENTS**

2

3    OPPOSITION TO MIL NO. 1:  "HACKING" ............................................................... 1

4    OPPOSITION TO MIL NO. 2:  CUMULATIVE EXPERT TESTIMONY .................................. 5

5    OPPOSITION TO MIL NO. 3:  "UNCHALLENGED" ASPECTS OF iTUNES 7.0 & 7.4 ....... 8

6    OPPOSITION TO MIL NO. 4: DECLARATIONS OF "UNAVAILABLE"
          DECLARANTS ................................................................................................ 12
7
     OPPOSITION TO MIL NO. 5:  CLASS CERTIFICATION ...................................... 16
8
     OPPOSITION TO MIL NO. 6:  EVIDENCE REALNETWORKS DID NOT SUE APPLE ..... 19
9
     STATEMENT IN RESPONSE TO MIL NO. 8: TREBLE DAMAGES .................................. 21
10
     OPPOSITION TO MIL NO. 9:  DISMISSED CLAIMS............................................................ 22
11
     CONCLUSION ....................................................................................................... 26
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

3    **CASES**

4    *Alberto-Culver Co. v. Andrea Dumon, Inc.*,
          466 F.2d 705 (7th Cir. 1972)..................................................................................................3

5

6    *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
          592 F.3d 991 (9th Cir. 2010)................................................................................................10

7    *Andazola v. Logan's Roadhouse, Inc.*,
          No. CV-10-S-316-NW, 2013 WL 1834308 (N.D. Ala. Apr. 29, 2013) ..............................23

8

9    *Apple, Inc. v. Samsung Elecs. Co.*,
          No. 11-CV-01846-LHK, 2012 WL 2571332 (N.D. Cal. June 30, 2012) ...............................5

10   *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
          No. 04 CIV 10014 PKL, 2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009) ............................24

11

12   *Beller v. United States*,
          No. 02-1368 WPJ/LFJ (ACE), 2003 WL 25694923 (D.N.M. Dec. 16, 2003) ......................6

13   *Bennett v. San Francisco Bay Area Rapid Transit*,
          No. C 09-0515 MHP, 2010 WL 3749415 (N.D. Cal. Sept. 23, 2010)..................................13

14

15   *Blackburn v. Northrup Grumman Newport News*,
          No. MDL 875, 2011 WL 6016092 (E.D. Pa. Aug. 31, 2011)................................................12

16   *Briggs v. Anderson*,
          796 F.2d 1009 (8th Cir. 1986).............................................................................................17

17

18   *Brown v. Daniels*,
          290 F. App'x 467 (3d Cir. 2008) .........................................................................................11

19   *Canning v. Poole*,
          No. CIV.A. 10-16-JBC, 2012 WL 6600305 (E.D. Ky. Dec. 18, 2012)...............................24

20

21   *City of Vernon v. S. Cal. Edison Co.*,
          955 F.2d 1361 (9th Cir. 1992)..............................................................................................23

22   *CIVIX-DDI, LLC v. Hotels.com, L.P.*,
          No. 05 C 6869, 2012 WL 6591684 (N.D. Ill. Dec. 18, 2012) .............................................25

23

24   *Comcast Corp. v. Behrend*,
          133 S. Ct. 1426 (2013) .................................................................................................17, 23

25   *Concord Boat Corp. v. Brunswick Corp.*,
          207 F.3d 1039 (8th Cir. 2000)..............................................................................................10

26

27   *Cummings v. Connell*,
          316 F.3d 886 (9th Cir. 2003).........................................................................................16, 17

28   *Dilts v. Penske Logistics, LLC*,

ii

No. 08-cv-318-CAB (BLM), 2014 WL 305039 (S.D. Cal. Jan. 21, 2014)...........................17

*Draper v. Rosario,*
   No. CIV. S-10-32 KJM EFB, 2014 WL 1664917 (E.D. Cal. Apr. 25, 2014)...............12, 13

*E. F. Hutton & Co. v. Penham,*
   547 F. Supp. 1286 (S.D.N.Y. 1982) ......................................................................................15

*F.T.C. v. Figgie Int'l, Inc.,*
   994 F.2d 595 (9th Cir. 1993)..................................................................................................13

*F.T.C. v. Washington Data Res.,*
   No. 8:09-CV-2309-T-23TBM, 2011 WL 2669661 (M.D. Fla. July 7, 2011)......................14

*Gen. Tel. Co. of the Sw. v. Falcon,*
   457 U.S. 147 (1982) ...............................................................................................................16

*Gerlinger v. Amazon.Com, Inc.,*
   311 F. Supp. 2d 838 (N.D. Cal. 2004) ....................................................................................9

*Harris v. City of Circleville,*
   No. 2:04-cv-1051, 2010 WL 816974 (S.D. Ohio 2010) ..........................................................6

*Heriges v. Wilson Cnty.,*
   No. 3:09-cv-0362, 2010 WL 4116719 (M.D. Tenn. Oct. 19, 2010)......................................24

*Hewlett-Packard Co. v. Mustek Sys., Inc.,*
   No. 99-CV-351-RHW, 2001 WL 36166855 (S.D. Cal. June 11, 2001) ................................25

*In re Apple iPod iTunes Antitrust Litig.,*
   796 F. Supp. 2d 1137 (N.D. Cal. 2011) ..................................................................................9

*In re Canadian Import Antitrust Litig.,*
   470 F.3d 785 (8th Cir. 2006)....................................................................................................3

*In re Hydrogen Peroxide Antitrust Litig.,*
   552 F.3d 305 (3d Cir. 2008)...................................................................................................16

*In re Initial Pub. Offerings Sec. Litig.,*
   471 F.3d 24 (2d Cir. 2006)......................................................................................................16

*In re Methyl Tertiary Butyl Ether Prods. Liability Litig.,*
   No. 1:00-1898, 2008 WL 1971538 (S.D.N.Y. May 7, 2008) ..................................................6

*In re Southeastern Milk Antitrust Litigation,*
   No. 2:08-MD-1000, 2011 U.S. Dist. LEXIS 76552 (E.D. Tenn. July 14, 2001)...................3

*Intimate Bookshop v. Barnes & Noble, Inc.,*
   No. 98 CIV.5564 (WHP), 2003 WL 22251312 (S.D.N.Y. Sept. 30, 2003) ........................23

*Jacobson v. Cathcart,*
   No. 10-13046, 2014 WL 266404 (E.D. Mich. Jan. 24, 2014) ...............................................24

*Jean-Laurent v. Hennessy,*
   840 F. Supp. 2d 529 (E.D.N.Y. 2011) .....................................................................................3

iii

*LiveUniverse, Inc. v. MySpace, Inc.,*
  304 F. App'x 554 (9th Cir. 2008) ........................................................................ 8

*Madani v. Equilon Enters., LLC,*
  No. CV 04-10370 JVS JTLX, 2009 WL 3789133 (C.D. Cal. July 2, 2009) ....................... 22

*Mankins v. United States,*
  No. EDCV-12-1819 CAS OPX, 2013 WL 5183865 (C.D. Cal. Sept. 9, 2013) ................... 6

*Merchant Transaction Sys. Inc. v. Nelcela, Inc.,*
  No. 10-16008, 439 F. App'x 620 (9th Cir. 2011) ................................................... 24

*Modesto Irrigation Dist. v. Pac. Gas & Elec. Co.,*
  309 F. Supp. 2d 1156 (N.D. Cal. 2004) ......................................................... 2, 3

*Moore v. Bannon,*
  No. 10-12801, 2012 WL 2154274 (E.D. Mich. June 13, 2012) .................................... 23

*Morris v. Long,*
  No. 1:08-CV-01422-AWI, 2012 WL 1498889 (E.D. Cal. Apr. 27, 2012) ................... 22, 23

*Mugno v. Societe Internationale De Telecommunications Aeronautiques, Ltd.,*
  No. 05-CV-2037, 2007 WL 316573 (E.D.N.Y. Jan. 30, 2007) ................................... 13

*Osborne v. Bed Bath & Beyond, Inc.,*
  No. 7:12-CV-99, 2012 WL 4795709 (W.D. Va. Oct. 9, 2012) ................................... 20

*Payne v. Travenol Labs., Inc.,*
  673 F.2d 798 (5th Cir. 1982) ....................................................................... 17

*Payne v. Univ. of S. Mississippi,*
  No. 1:12-CV-41-KS-MTP, 2014 WL 1404732 (S.D. Miss. Apr. 10, 2014) ..................... 14

*PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.,*
  No. C 10-00544 JW, 2011 WL 5417090 (N.D. Cal. Oct. 27, 2011) ...................... 13, 14

*Qatar Nat'l Navigation & Transp. Co. v. Citibank, N.A.,*
  No. 89 CIV. 464 (CSH), 1996 WL 601540 (S.D.N.Y. Oct. 18, 1996) ........................... 14

*Real v. Cont'l Grp., Inc.,*
  627 F. Supp. 434 (N.D. Cal. 1986) ............................................................... 21

*RealNetworks, Inc. v. DVD Copy Control Ass'n,*
  641 F. Supp. 2d 913 (N.D. Cal. 2009) ............................................................. 4

*Rebel Oil Co. v. Atl. Richfield Co.,*
  51 F.3d 1421 (9th Cir. 1995) ....................................................................... 8

*Red Strokes Entm't. v. Sanderson,*
  977 F. Supp. 2d 837 (M.D. Tenn. 2013) .......................................................... 8

*Rodriguez v. W. Publ. Corp.,*
  563 F.3d 948 (9th Cir. 2009) ..................................................................... 16

*Shields v. Eli Lilly & Co.,*

iv

No. CIV. A. 87-2166(RCL), 1991 WL 134614 (D.D.C. July 12, 1991) .............................14

*Simulnet East Assocs. v. Ramada Hotel Operating Co.*,
    Nos. 95–16339, 95–16340, 1997 WL 429153 (9th Cir. July 31, 1997) ..............................15

*Soc. Servs. Union, Local 535 v. Santa Clara Cnty.*,
    609 F.2d 944 (9th Cir. 1979)................................................................................17

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013)................................................................................24

*Spencer v. Peters*,
    No. C11-5424 BHS, 2014 WL 2208940 (W.D. Wash. May 28, 2014) ........................22, 25

*Tele Atlas N.V. v. NAVTEQ Corp.*,
    No. C-05-01673 RMW, 2008 WL 4809441 (N.D. Cal. Oct. 28, 2008)........................13, 15

*Thakore v. Universal Mach. Co. of Pottstown, Inc.*,
    670 F. Supp. 2d 705 (N.D. Ill. 2009) ........................................................................23

*Treaster v. Healthsouth Corp.*,
    No. 05-2061 JWL/GLR, 2006 WL 1580980 (D. Kan. June 5, 2006)....................................7

*U.S. v. Bonds*,
    608 F.3d 495 (9th Cir. 2010)................................................................................15

*United States v. Lowery*,
    135 F.3d 957 (5th Cir. 1998)..................................................................................8

*United States v. Medina*,
    No. 12CR37 WQH, 2013 WL 1190829 (S.D. Cal. Mar. 22, 2013).....................................24

*United States v. Riggs*,
    739 F. Supp. 414 (N.D. Ill. 1990) ............................................................................2

*Wiles v. Dept. of Educ.*, No. 04-00442-ACK-BMK,
    2008 WL 6808425 (D. Hawaii Sept. 22, 2008) ......................................................5

*Williamson Oil Co. v. Philip Morris USA*,
    346 F.3d 1287 (11th Cir. 2003)................................................................................23

**STATUTES**

28 U.S.C. § 1746 .......................................................................................................13

**OTHER AUTHORITIES**

FED. R. CIV. P. 23(c)(1)(C)....................................................................................16

FED. R. CIV. P. 26(a)(2)(B)(i)..................................................................................5

FED. R. EVID. 105 .......................................................................................................25

FED. R. EVID. 23 ................................................................................................16, 17

1

FED. R. EVID. 403 ............................................................................................5, 8

FED. R. EVID. 608 ...............................................................................................4

FED. R. EVID. 608(b) ..........................................................................................4

FED. R. EVID. 613 ...............................................................................................4

FED. R. EVID. 613(b) ..........................................................................................4

FED. R. EVID. 804 .............................................................................................15

FED. R. EVID. 804(a)(5) ....................................................................................15

FED. R. EVID. 807 .........................................................................12, 13, 14, 15

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE'S OPP. TO PLTFS' MIL NOS. 1-6, 9                No.  C 05-00037 YGR

1

## OPPOSITION TO MIL NO. 1:  "HACKING"

2       Plaintiffs seek an order precluding Apple from showing that RealNetworks "engaged in

3   'hacking' or otherwise acted unlawfully or improperly in creating its 'Harmony' software."

4   Plaintiffs' Mot. *in Limine*, at 2 (Oct. 14, 2014) (Dkt. 820) ("Pls.' MIL").  This motion should be

5   denied.  Apple witnesses are entitled to explain their understanding and motivations, including use

6   of the word "hacker" or "hacking" in documents that Plaintiffs themselves have put on their

7   exhibit list, and to demonstrate how RealNetworks violated Apple's rights.

8       ***First***, Plaintiffs admit that RealNetworks "had independently analyzed the firmware within

9   the iPod" and "discern[ed]" Apple's "code." Am. Cons. Compl. ("ACC") ¶ 53 (Dkt. 322).  As

10  Apple witnesses will explain, by cracking FairPlay code, RealNetworks devised a way to make

11  music purchased from its website mimic Apple's encryption scheme and make it falsely appear to

12  the iPod that the RealNetworks music was actually iTunes Store music protected by FairPlay.

13  Apple's Mtn. for Summ. J., at 8 (Jan. 18, 2011) (Dkt. 473); Decl. of Jeff Robbin (Dkt. 468); Decl.

14  of Dr. John Kelly (Dkt. 536).  Apple has consistently taken the position, since 2004, that

15  RealNetworks hacked into FairPlay and its conduct may have been unlawful.  *See, e.g.*,

16  Declaration of Meredith R. Dearborn ("Dearborn Decl."), Ex. A (Robbin Dep. 86:8–87:25) ("it

17  looked to us like [RealNetworks] was a hack to the FairPlay").  Apple stated internally and

18  publicly that RealNetworks is a "hacker," that it had adopted "the tactics and ethics of a hacker,"

19  that Apple was investigating the legality of its conduct, and that RealNetworks's actions were a

20  "technological form of hijacking."  Plaintiffs not only admit this, but have attempted to portray

21  Apple's public statements to that effect as anticompetitive.  Pls.' MILs at 3 & n.4 (citing Steve

22  Jobs statement, in 2004, that that "RealNetworks is a hacker,"), and other evidence; *id.* n. 5

23  ("hijacking");*see also* Sweeney Decl. (Dkt. 820-1), Exs. 3, 28, 29; Plaintiffs' Opp. to Apple's Mtn.

24  for Summ. J. at 7, 17–18 (Feb. 28, 2011) (Dkt. 514) (arguing that such statements were

25  anticompetitive).

26      In essence, Plaintiffs' position is that they should be allowed to show that Apple called

27  RealNetworks a hacker but Apple should not be allowed to explain why or defend its position.

28  This is untenable.  Plaintiffs cannot prevent Apple witnesses from explaining these documents and

1

1   their motivation for writing them.  Precluding Apple from explaining its own consistent position

2   would be highly prejudicial to Apple and confuse the jury as to why Apple referred to

3   RealNetworks as a hacker in "historical" evidence but did not explain why at trial.

4          *Second*, Plaintiffs argue that "any allusion to RealNetworks as a 'hacker' or as having

5   engaged in 'hacking' can only lead to unfair prejudice and jury confusion" because such terms are

6   pejorative and only "connote illegal and morally reprehensible conduct," citing only irrelevant

7   current events such as "possible Russian mob hacking at J.P. Morgan Chase & Co."  Pls.' MILs at

8   2, 5.  But courts already have held that referring to someone as a "hacker" is not prejudicial.

9   *United States v. Riggs*, 739 F. Supp. 414, 424 (N.D. Ill. 1990) (declining to strike the word

10  "hacker" from a criminal indictment as unduly prejudicial):

> The term "hackers" has also been understood to encompass both those
> who obtain unauthorized access to computer systems and those who
> simply enjoy using computers and experimenting with their capabilities as
> "innocent" hobbyists. . . .  The court finds that the use of the term
> "hackers" in the indictment does not unduly prejudice Neidorf; it is simply
> a succinct method of describing the alleged activities of the persons with
> whom Neidorf was associated . . . . The term is both relevant and material,
> and, contrary to Neidorf's claim that it will cause confusion, the term is
> likely to be somewhat helpful to the jury in understanding the charges in
> this case.

17  *Id.*. at 423-24 (citing dictionaries, congressional reports, and other sources).[1]

18         *Third*, Plaintiffs wrongly assert that evidence of RealNetworks's hack into the iPod is

19  irrelevant.  Pls.' MILs at 4.  It is not.  Addressing the hacking of Apple's technologies is one of the

20  legitimate business justifications for Apple enhancing its security architecture.  "Courts have long

21  recognized that an action under the antitrust laws will ***not*** lie where the business conducted by the

22  plaintiff, and alleged to have been restrained by the defendant, was itself unlawful."  *Modesto*

23  *Irrigation Dist. v. Pac. Gas & Elec. Co.*, 309 F. Supp. 2d 1156, 1169–70 (N.D. Cal. 2004)

24  (emphasis added) (internal quotation marks and citations omitted).  In other words, where the

---

[1] Apple's witnesses testified that "hacking" is a word that can have varying connotations ***in
response to questioning from Plaintiffs' counsel***.  Dearborn Decl. Ex. A (Robbin Dep. 43:14–
44:17 (agreeing that the word "hack" can "mean many things to many people"); Ex. B (Farrugia
Dep. 137:21–138:4 (defining hack as "people being able to access the keys," and agreeing that
there are a number of definitions that could be used with respect to the term "hack").  "Hack"
and its variations, thus, does not automatically equate to illegal activity.

2

1    purportedly restrained conduct—here, that of RealNetworks's—"was unlawful by its own terms,

2    [Apple's] response—however anti-competitive or seemingly monopolistic—could not inflict a

3    cognizable antitrust injury." *Id.* at 1170; *In re Canadian Import Antitrust Litig.*, 470 F.3d 785,

4    790-92 (8th Cir. 2006) (no antitrust liability for allegedly conspiring to prevent unlawful import of

5    drugs).  The same is true where a defendant had a good faith belief that the conduct was unlawful

6    or that it infringed intellectual property rights.  *See Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466

7    F.2d 705, 711 (7th Cir. 1972) (a "good faith effort to enforce one's copyright . . . is not the kind of

8    exclusionary conduct condemned by . . . the Sherman Act").

9         Neither *In re Southeastern Milk Antitrust Litigation*, No. 2:08-MD-1000, 2011 U.S. Dist.

10    LEXIS 76552, at *25 (E.D. Tenn. July 14, 2001) nor *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d

11    529 (E.D.N.Y. 2011) upon which Plaintiffs rely is a Section 2 case; neither evaluated whether a

12    firm had a legitimate business justification in stopping unlawful conduct.  Apple must be allowed

13    to present evidence that one of the legitimate business justifications for enhancing its security

14    architecture was the likelihood that RealNetworks and others circumvented FairPlay in violation of

15    the Digital Millennium Copyright Act, violated Apple's copyrights, and breached its User

16    Agreements.[2]

17         **Fourth**, Plaintiffs also wrongly assert that there will be no admissible evidence to support

18    an inference that RealNetworks's development of Harmony was unlawful.  Pls.' MILs at 4-5.

19    Allowing Plaintiffs' to assert that RealNetworks's conduct was "lawful procompetitive conduct"

20    while simultaneously precluding Apple from presenting evidence or argument against it would

21    prejudice Apple by not permitting it to present its defenses.

22         The evidence supporting Apple's defense on this point is already part of the record.

23    Dr. Kelly states that in order to play non-iTS music on the iPod, according to RealNetworks's own

24    public statements, Harmony must have "mimic[ked] the way FairPlay protected music" by

25

26    [2] Plaintiffs suggest that the legality of RealNetworks's development of Harmony is not a
     contested issue because counsel stated at a 2010 hearing that one of Apple's software updates
     had the "side effect" of blocking Harmony.  Pls.' MILs at 2; *id.* at 2-3 n.2.  Plaintiffs' selective
27    quotation ignores that Apple has consistently maintained that it was within its rights to update its
     software to prevent the iPod from being corrupted by third parties ***including RealNetworks*** and
28    others, like Winamp.  Apple's Mtn. for Summ. J., at 13, 18 (Jan. 18, 2011) (Dkt. 473).

1    "*removing* from the music file the current DRM protection, which is not supported by the music

2    player, and then adding to the music file a different DRM protection, which is supported by the

3    music player."  Expert Report of Dr. John. P.J. Kelly, at ¶¶ 69-70 (July 19, 2013) (Dkt. 819-2)

4    ("Kelly Report") (emphasis in original).  Dr. Kelly also explained that the converse is true—in

5    order to play iTS music on other devices, Harmony must have stripped FairPlay.  *Id.* at ¶ 70.  Both

6    actions are unlawful circumvention of technological measures under the DMCA.  *E.g.,*

7    *RealNetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 934 (N.D. Cal. 2009) (the

8    DMCA "provides broad statutory protection against circumvention of technological measures that

9    protect the interests of copyright owners.  This includes any form of unauthorized use—not just

10    'breaking'—of a technology . . . to gain access to copyrighted works"); *see also id.* at 936

11    (dismissing RealNetworks's assertion that it was not a "classic 'hacker'" as "meaningless when

12    unfettered from the statutory language" of the DMCA).

13            **Finally**, Plaintiffs are mistaken that "insinuation or evidence at trial that RealNetworks was

14    an unlawful 'hacker' would constitute impermissible collateral impeachment or impeachment by

15    prior conduct of RealNetworks in violation of F.R.E. 608(b) and 613(b)."  Pls.' MILs at 5.  Rules

16    608 and 613 are inapplicable because there are no RealNetworks witnesses to impeach.[3]  Plaintiffs

17    did not depose any witnesses from RealNetworks.  Plaintiffs cannot now use their tactical

18    decisions to hide RealNetworks' conduct from the jury and preclude Apple from presenting

19    evidence supporting one of Apple's legitimate business justifications.

20

21

22

23

24

25

26

27    [3] Even if RealNetworks witnesses did testify, evidence that RealNetworks hacked Apple's
      technologies could be used for impeachment purposes because it is not evidence of *prior* bad
28    acts but evidence of the conduct that Plaintiffs claim Apple restrained.

<u>**OPPOSITION TO MIL NO. 2:  CUMULATIVE EXPERT TESTIMONY**</u>

Prior to any testimony being offered, Plaintiffs move the Court (1) to preclude the testimony of one of Apple's two economic experts and (2) to prohibit two of Apple's experts from different disciplines from discussing the same topic on the grounds that when the testimony is given at trial it *might* be needlessly cumulative.  As Apple previously confirmed twice to Plaintiffs and stated at the last conference, Apple has no intention of putting on cumulative expert testimony, particularly within the Court's strict time limits at trial.  The fact that the expert reports in this case have cumulative materials has no bearing on whether testimony at trial is cumulative.  Plaintiffs' motion is premature and should be denied.

Trial is the best place to assess whether testimony is needlessly cumulative under Rule 403. *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 2571332, at *11 (N.D. Cal. June 30, 2012) (denying motion *in limine* to exclude expert testimony because despite the fact that some evidence might be "needlessly cumulative, this issue is better resolved at trial"); *Wiles v. Dept. of Educ.*, No. 04-00442-ACK-BMK, 2008 WL 6808425, at *1 (D. Hawaii Sept. 22, 2008) ("if at trial it appears that Plaintiffs are attempting to elicit needlessly cumulative evidence from the two doctors, Defendant may raise an objection at that time").  Further, the Court's instruction that each side limit its trial presentation to twenty hours is excellent incentive for the parties not to waste time with cumulative testimony.  Pre-trial Order No. 1, at 4 (Oct. 3, 2014) (Dkt. 801).

*First*, Plaintiffs move to exclude either Professor Murphy or Professor Topel from testifying at trial because there is some overlap in their reports.  That similar topics may appear in both *reports* does mean that there will be cumulative *testimony* at trial, let alone that this testimony would be "needlessly" cumulative such that it "substantially" outweighs any probative value, which is what plaintiffs are required to show in order to exclude such testimony.  FED. R. EVID. 403.  Expert reports are understandably more comprehensive than the testimony an expert gives at trial because the Federal Rules require expert reports to have "a complete statement of all opinions they express and the basis and reasons for them."  FED. R. CIV. P. 26(a)(2)(B)(i).  Throughout the litigation process, however, parties will pare down which witnesses to call and what opinions from the reports an expert will testify to at trial.  *See Wiles*, 2008 WL 6808425, at *1  (rejecting motion

5

to exclude one of two psychologist experts because "Plaintiffs' objectives may be reached—without confusion and cumulative delay—by limiting the testimony of these experts only to those areas in which they provided opinions focused on different areas and elements in support of Plaintiffs' case.").[4]  If, at trial, Plaintiffs believe testimony is needlessly cumulative, they can object to it at that point; Plaintiffs' motion to preclude this testimony now is premature.

Further, Plaintiffs' remedy of complete exclusion of either Professor Murphy or Topel's testimony is extreme.  Plaintiffs identify five topics in which they allege the reports overlap, but each expert's report contains far more than these five topics.  Excluding one or the other's testimony in its entirety due to some overlap in the expert reports would be drastic and unwarranted.  *See In re Methyl Tertiary Butyl Ether Prods. Liability Litig.*, No. 1:00-1898, 2008 WL 1971538, at *13 (S.D.N.Y. May 7, 2008) ("While their reports overlap somewhat on the subject of new plant development, this single area of overlap is not sufficient to preclude all of Huggins' testimony").

**Second**, Plaintiffs move to exclude Dr. Kelly and Professor Murphy from offering cumulative testimony on Apple's use of a "walled garden."  Dr. Kelly, however, is an engineer and will provide testimony as Apple's technical expert while Professor Murphy is Apple's economic expert.  Experts from different disciplines can testify about the same topic without offering cumulative testimony because each approaches the topic from a different area of expertise.  *Harris v. City of Circleville*, No. 2:04-cv-1051, 2010 WL 816974, at *14 (S.D. Ohio 2010) (denying motion *in limine* to exclude one of two experts from testifying about the use of force as needlessly cumulative because "Dr. Alpert is a national consultant who will testify about the use-of-force continuum used by police departments across the United States.  Mr. Dimoff, on the other hand, will testify about the use-of-force training Defendants received"); *Treaster v. Healthsouth Corp.*,

---

[4] Beyond the fact that Apple does not intend to call Professors Murphy and Topel to offer duplicative testimony, it is not clear that testimony from two experts on the same topics would be needlessly cumulative.  *See Beller v. United States*, No. 02-1368 WPJ/LFJ (ACE), 2003 WL 25694923, at *1 (D.N.M. Dec. 16, 2003) ("I am not convinced that the identification of two experts who may testify in the same areas is necessarily cumulative."); *Mankins v. United States*, No. EDCV-12-1819 CAS OPX, 2013 WL 5183865, at *3 (C.D. Cal. Sept. 9, 2013) (finding that testimony from two medical experts would not be "needlessly cumulative").

APPLE'S OPP. TO PLTFS' MIL NOS. 1-6, 9                    No.  C 05-00037 YGR

No. 05-2061 JWL/GLR, 2006 WL 1580980, at *2 (D. Kan. June 5, 2006) (denying motion *in limine* to exclude one of two experts from testifying on the same subject because "each of these experts has a different area of expertise").  Dr. Kelly will explain the benefits of an integrated, "walled garden" system from the point of view of a computer scientist on issues including stability, security, and software development, while Professor Murphy will explain the competitive benefits of an integrated system from an economic point of view on issues such as competition, incentives, and ability to offer a better product to consumers.  Kelly Report, at ¶ 161 (July 19, 2013) (Dkt. 819-2) (explaining benefits of walled garden from a development perspective because it "enhances the stability of hardware and software versions" and "developers, engineers and others involved face a more manageable task of tailoring the software to the specific hardware and other software with which it will interoperate"); Expert Report of Kevin M. Murphy, at ¶ 37 (Aug. 19, 2013) (Dkt. 809-4) ("Murphy Report") (explaining benefits of integrated systems on a competitive marketplace: "Proprietary models compete with 'open models' . . . .  Consumers are well-served when alternative models compete.")  Thus, neither witness's testimony should be excluded.

## OPPOSITION TO MIL NO. 3:  "UNCHALLENGED" ASPECTS OF iTUNES 7.0 & 7.4

In an overbroad motion *in limine*, Plaintiffs ask the Court to preclude Apple from presenting evidence regarding: (1) features of iTunes 7.0 or iTunes 7.4 that they admit were not anticompetitive; (2) procompetitive justifications for iTunes 4.7; (3) business justifications for Apple's DRM software; and (4) procompetitive benefits of the iTunes Store and iPod.  If granted, it would prevent Apple from challenging Plaintiffs' theory of causation and antitrust injury by explaining that other, lawful features of iTunes 7.0 and 7.4 (a) would have had precisely the same effect as the integrity checks on which they intend to focus and (b) caused the increase in demand that their expert erroneously attributes to allegedly unlawful conduct.  It would undermine Apple's ability to show that iTunes 7.0 and 7.4 were product improvements.  It would hamstring Apple from offering a business justification for its actions.  It would prevent Apple from explaining the development of the technology at issue.  It would even prevent Apple from rebutting evidence that Plaintiffs intend to offer.  This motion is a tactical effort to exclude critically relevant evidence and present an incomplete, misleading story to the jury.  Apple respectfully requests that the Court deny it.

Plaintiffs' only basis for this motion is Rule 403.  Pls.' MILs at 10.  It is axiomatic that highly relevant evidence should not be excluded under Rule 403.  *Red Strokes Entm't. v. Sanderson*, 977 F. Supp. 2d 837, 845-46 (M.D. Tenn. 2013) (denying motion *in limine* to exclude "highly relevant" evidence); *see also United States v. Lowery*, 135 F.3d 957, 959 (5th Cir. 1998) (reversing judgment where the grant of an overly broad motion *in limine* prevented the defendant "from properly presenting his theory of defense to the extent necessary for a fair trial").  The evidence that Plaintiffs seek to preclude is directly relevant to key issues in at least four ways.

**Causation and antitrust injury.**  Plaintiffs cannot prove that the two "challenged" aspects of iTunes 7.0 and 7.4 on which they now narrowly focus—which they call the KVC and DVC, and which Apple contemporaneously called integrity checks—caused any of the harm they claim.  Causation of antitrust injury is an "is an element of all antitrust suits," *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557 (9th Cir. 2008) (quoting *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421,1433, 1445 (9th Cir. 1995)), and challenging causation is central to one of Apple's

8

1   defenses.  *See also Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 844 (N.D. Cal. 2004)

2   ("Injury that flows from aspects of a defendant's conduct that are beneficial or neutral to

3   competition is not 'antitrust injury'") (citations omitted).  Aspects of the iPod, iTunes 7.0, iTunes

4   7.4, and iTunes 4.7 that Plaintiffs now seek to exclude are relevant to causation in two ways.

5           *First*, Plaintiffs allege that the integrity checks ended Harmony's brief and unauthorized

6   period of forced interoperability.  Plaintiffs conveniently ignore—and their expert will say nothing

7   about—the *other* aspects of the redesign of Apple's security architecture in iTunes 7.0 and 7.4 that

8   *also* would have blocked Harmony, including the universal keybag, encrypting each key

9   separately, encrypting the keybag as a whole, and more.  Apple witnesses will explain that those

10  aspects of 7.0 and 7.4 (like the integrity checks) were legitimate improvements done to improve

11  the security and integrity of Apple's platform, comply with its contractual obligations, and ensure

12  a seamless user experience.  Because they cannot claim that these aspects were anticompetitive,

13  Plaintiffs cannot prove that the integrity checks caused any harm whatsoever.

14          *Second*, Plaintiffs' economic expert, Dr. Roger Noll, improperly conflates lawful and

15  allegedly unlawful aspects of iTunes 7.0 and 7.4 in his regression.  Dr. Noll's regression isolates a

16  small number of variables, then assumes that any changes in the price of iPods related to iTunes

17  7.0 that are not accounted for in his limited set of variables are the result of the alleged lock-in

18  caused by the security features at issue.  His analysis ignores the possibility that any of the many

19  other improved features of iTunes 7.0 would have enhanced consumer demand for iPods and

20  impacted the iPod's price.  Murphy Report, at ¶ 113 (Aug. 19, 2013) (Dkt. 809-4); Expert Report

21  of Robert H. Topel, at ¶ 110 (Aug. 19, 2013) (Dkt. 809-4).  The Court has already ruled that these

22  deficiencies should be assessed by a jury—a position that Plaintiffs themselves argued.  Order

23  Denying Motion for Summ. J. & Daubert Mots., at 11 (Sept. 26, 2014) (Dkt. 788).

24          **The "product" at issue is iTunes 7.0 and 7.4, not the integrity checks.**  In determining

25  whether Apple's design change was a "product improvement," this Court has already held that the

26  "product" at issue is iTunes 7.0 and 7.4, not the isolated elements on which Plaintiffs choose to

27  focus.  *Id.* at 3; *In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1147 (N.D. Cal.

28  2011).  Thus, the question will be whether iTunes 7.0 and 7.4, not the integrity checks, was a

9

legitimate design change.  Plaintiffs cite no case concerning the antitrust implications of a design change or product improvement in which a court excluded evidence or limited the permissible analysis regarding the product at issue, and Apple is aware of none.  Indeed, a review of controlling case law demonstrates precisely the opposite:  The jury should be entitled to understand the features of the challenged product as a whole.  In *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 994, 1001–04 (9th Cir. 2010), for example, the court asked whether OxiMax, the "patented pulse oximetry system," was a product improvement, not the particular features that made OxiMax incompatible.  Here, Apple's witnesses will explain how iTunes 7.0 and 7.4 as a whole were improvements, and demonstrate that the FairPlay architecture change in 7.0 and 7.4, including the integrity checks, resulted in a platform that was more secure from third-party hackers and more resistant to corruption.

**Procompetitive justifications.**  In defending a Section 2 case, Apple must be permitted to present evidence of the business justification for its actions—the "most important" factor in the jury's analysis.  *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1062 (8th Cir. 2000). Apple should not be precluded from explaining that third parties' threats to FairPlay, including those that removed DRM from songs and those that threatened the user experience in other ways, motivated its decisions to upgrade FairPlay in iTunes 7.0 and 7.4.  Apple must be able to fully explain to the jury, at the very least, (1) why its songs had to be protected by FairPlay, (2) the threats its system faced from third-party interference with that system, and (3) why it chose to implement all of the iTunes 7.0 and 7.4 upgrades, including those Plaintiffs focus on and those that would have had the equivalent effect of blocking Harmony.

Plaintiffs claim that they "will not challenge Apple's DRM as anticompetitive," and will not challenge the integration of iTunes and the iPod as an initial offering in the market.  Pls.' MILs at 11.[5]  But even if Plaintiffs acknowledge, as they must, that Apple's choice to ***offer*** a non-interoperable product was competitive in the first instance, the jury must understand why that

---

[5] Plaintiffs' claim that DRM is not relevant because "RealNetworks did not remove DRM."  Pls.' MILs at 11 (Dkt. 820).  That is false.  Whether RealNetworks removed DRM is a disputed fact. *See* Apple's Opp. to Pls.' Mots. *in Limine* Nos. 1, 6.

APPLE'S OPP. TO PLTFS' MIL NOS. 1-6, 9                                    No.  C 05-00037 YGR

1   system existed in the first place, and why Apple was therefore justified in the only challenged

2   action in this case—keeping the platform on the market *exactly as it always was* (absent times

3   when third parties tried to change it).  That requires explaining the history of negotiations with the

4   record labels, the many hacks that threatened the iPod user experience and/or the copyright

5   holders' rights, and Apple's course of conduct leading up to 7.0.  It is impossible for Apple to

6   explain its legitimate business justifications for these upgrades, including the integrity check

7   features, without explaining the importance and benefits of its integrated system that these

8   upgrades were designed to protect.  *See Brown v. Daniels*, 290 F. App'x 467, 474 (3d Cir. 2008)

9   (affirming "the District Court's denial of Appellants' motion *in limine*, as it is clear that the

10   materials Appellants sought to suppress were relevant and necessary to Appellee's defense").

11          **<u>Rebuttal to Plaintiffs' proffered evidence.</u>**  Plaintiffs' motion would also prejudice

12   Apple's ability to rebut Plaintiffs' evidence about iTunes 4.7 and the "integrated platform."  For

13   example, Plaintiffs' experts all intend to testify about 4.7; Plaintiffs designated portions of the

14   deposition of Steve Jobs that *only* had to do with iTunes 4.7; and they put many documents on

15   their exhibit list that pertain *only* to iTunes 4.7.  *See* Expert Report of David M. Martin Jr., at §

16   V.C-D (Apr. 8, 2013) (Dkt. 819-2) Declaration of Roger G. Noll on Liability and Damages, at 12-

17   14 (Apr. 3, 2013) (Dkt. 809-5) ("Noll Decl."); Decl. of Bonny Sweeney (Feb. 28, 2011) (Dkt 515-

18   22, 515-24) (Pls.' TX0118 & TX0122).  Apple must be able to put on evidence of iTunes 4.7 if

19   Plaintiffs are going to do so.  And their expert apparently wishes to testify that the "relevant issue

20   is not whether Apple is correct in its beliefs about the superiority of all-things Apple, but whether

21   forcing consumers to buy either all or no complementary products from Apple is a reasonable

22   restriction on competition."  Rebuttal Declaration of Roger G. Noll on Liability and Damages, at ¶

23   13 (Nov. 25, 2013) (Dkt. 809-5).  At the very least, if Plaintiffs are going to claim that Apple's

24   competitive offering—a fully integrated system that promised seamless user experience and ease

25   of use—did not benefit consumers, Apple should be permitted to explain why that is wrong.

26

27

28

1    **OPPOSITION TO MIL NO. 4: DECLARATIONS OF "UNAVAILABLE" DECLARANTS**

2        Plaintiffs seek an order admitting into evidence pursuant to Rule 807's residual hearsay

3    exception *ex parte* declarations of four "music label executives and one technology director of a

4    portable digital media player company" who were never deposed or otherwise subject to cross

5    examination.  Pls.' MILs at 13-15.  This motion is as bold as it is baseless, and the Court should

6    deny it.

7        Over the nine years of this litigation, the Plaintiffs, represented by a sophisticated, well-

8    financed and experienced law firm, made a strategic decision not to pursue depositions of third

9    parties, such as the record labels and RealNetworks.  The excuses they make – that the third parties

10   objected and document production was purportedly slow – are everyday occurrences in litigation

11   and are properly addressed during discovery.[6]  They do not provide any legally cognizable reason

12   to eviscerate the hearsay rules and permit the jury to consider *ex parte* statements that are not

13   subject to cross examination and are in some instances unsworn.

14       Plaintiffs do not cite any authority supporting the radical idea that *ex parte* declarations

15   prepared by one side without any cross examination can be admitted in a jury trial under Rule 807

16   (or any other rule).  There is none.  "[T]he Ninth Circuit has cautioned that evidence should be

17   admitted under this rule only in exceptional circumstances."  *Draper v. Rosario*, No. CIV. S-10-32

18   KJM EFB, 2014 WL 1664917, at *6 (E.D. Cal. Apr. 25, 2014); *see also Blackburn v. Northrup*

19   *Grumman Newport News*, No. MDL 875, 2011 WL 6016092, at *1 n.1 (E.D. Pa. Aug. 31, 2011)

20   ("the catch-all exception to the rule against hearsay is to be used only rarely, and in exceptional

21   circumstances, and is meant to apply only when certain *exceptional* guarantees of trustworthiness

22   exist and when high degrees of probativeness and necessity are present") (quotation marks

23   omitted) (emphasis added); *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, No.

24   _____

25   [6] The Court has twice rejected Plaintiffs' complaints regarding Apple's document production.
     Order Denying Deadline For Taking Depositions (Jan. 4, 2011) (Dkt. 416); Order Denying Pls'
26   Mot. Regarding Class Certification and Depositions (Jan. 14, 2011) (Dkt. 460).  Further, in
     seeking to extend the deposition deadline, Plaintiffs did not identify the need to depose third
27   party witnesses; they expressly only sought leave to depose Apple witnesses.  Stipulation
     Extending Deadline For Taking Depositions (Dec. 17, 2010) (Dkt. 401) (referring only to
28   Apple's witnesses); Pls.' Mot. Re: Schedule for Class Certification and Depositions at 6-7
     (Jan. 7, 2011) (Dkt. 432) (same).

1   C 10-00544 JW, 2011 WL 5417090, at *10 (N.D. Cal. Oct. 27, 2011) (same). Rule 807 "cannot be

2   used to admit 'run-of-the-mill' hearsay." *Tele Atlas N.V. v. NAVTEQ Corp.*, No. C-05-01673

3   RMW, 2008 WL 4809441, at *4 (N.D. Cal. Oct. 28, 2008); *see also F.T.C. v. Figgie Int'l, Inc.*,

4   994 F.2d 595, 608 (9th Cir. 1993) (requiring "detailed findings" when admitting hearsay under the

5   residual exception).

6        The *ex parte* declarations are not trustworthy and do not further the purposes of the federal

7   rules or the interests of justice. *See Draper*, 2014 WL 1664917, at *3-4 (listing Rule 807's

8   requirements: "The most important consideration is whether the hearsay has circumstantial

9   guarantees of trustworthiness equivalent to those present in the traditional exceptions to the

10  hearsay rule.") (quotation marks omitted). Two of them (Kanusher's of Sony Music Entertainment

11  and Piibe's of EMI Music) were not sworn under penalty of perjury and are inadmissible on that

12  ground alone. *Mugno v. Societe Internationale De Telecommunications Aeronautiques, Ltd.*, No.

13  05-CV-2037, 2007 WL 316573, at *9 (E.D.N.Y. Jan. 30, 2007) ("To ensure the trustworthiness of

14  a declaration, federal law requires a declarant subscribe his statement subject to the risk of criminal

15  penalty").[7] And three (Kanusher's, Piibe's, and Singer's of Warner Music Inc.) are admittedly not

16  based on personal knowledge, and no one can be sure of the bases for the others without cross

17  examination. *Id.* at *9 ("One's belief alone is not enough upon which to make a declaration, nor is

18  knowledge alone sufficient; the Federal Rules require *personal* knowledge") (emphasis in

19  original).

20       Plaintiffs' assertion that Apple did not "challenge the veracity of these statements" when

21  Plaintiffs submitted them in opposition to summary judgment motions is both irrelevant to

22  admissibility at trial and false. Pls.' MILs at 14. Apple objected to the declarations as irrelevant,

23

24

25

26

----

27  [7] *Bennett v. San Francisco Bay Area Rapid Transit*, No. C 09-0515 MHP, 2010 WL 3749415, at

28  *3 (N.D. Cal. Sept. 23, 2010) (declaration not signed under penalty of perjury is inadmissible);
    *see also* 28 U.S.C. § 1746 (declaration must be signed under penalty of perjury).

APPLE'S OPP. TO PLTFS' MIL NOS. 1-6, 9                              No.  C 05-00037 YGR

1    inadmissible hearsay, and lacking foundation when Plaintiffs first submitted them.[8]  Reply In

2    Support Of Mot. For Summ. J. at 2 n.1 (Mar. 28, 2011) (Dkt. 563).

3          Courts also consistently exclude declarations at trial that have not been subject to any cross

4    examination as inherently untrustworthy.  *E.g.*, *F.T.C v. Washington Data Res.*, No. 8:09-CV-

5    2309-T-23TBM, 2011 WL 2669661, at *5 (M.D. Fla. July 7, 2011) ("The [FTC] shows no

6    exceptional circumstance warranting the admission of an un-cross-examined declaration into

7    evidence as a substitute for live testimony (either in a deposition or at trial)"); *Qatar Nat'l*

8    *Navigation & Transp. Co. v. Citibank, N.A.*, No. 89 CIV. 464 (CSH), 1996 WL 601540, at *1

9    (S.D.N.Y. Oct. 18, 1996) ("That declaration could not in any event be admitted at trial on

10   plaintiff's case in chief, since it was not subject to cross-examination.").  And for good reason:

11              That this element [trustworthiness] should be of paramount importance
12              underscores our system of jurisprudence's recognition that since most out-
                of-court statements are not made under oath and are not subject to cross-
                examination, such statements lack inherent trustworthiness; absent an
13              opportunity to cross-examine, the adverse party is unable to test the
                hearsay declarant's perception, memory, articulateness, or sincerity.
14

15   *Shields v. Eli Lilly & Co.*, No. CIV. A. 87-2166(RCL), 1991 WL 134614, at *2 n.6 (D.D.C.

16   July 12, 1991).

17   _____

18   [8] Plaintiffs cite an internal Apple email and a Wall Street Journal article as corroboration for the
     declaration.  Pls.' MILs at 14.  But neither document indicates whether the author had any
19   personal knowledge of the declarant's views, each contains more than one level of hearsay itself,
     and neither establishes the exceptional degree of trustworthiness in the *ex parte* statements that
20   would be required to even consider allowing such evidence to reach the jury.  *Payne v. Univ. of
     S. Miss.*, No. 1:12-CV-41-KS-MTP, 2014 WL 1404732, at *6 (S.D. Miss. Apr. 10, 2014) ("The
21   residual exception is to be used only rarely, in truly exceptional cases.  The proponent of the
     statement bears a heavy burden to come forward with indicia of both trustworthiness and
22   probative force.  In order to find a statement trustworthy, a court must find that the declarant of
     the . . . statement was particularly likely to be telling the truth when the statement was made.
23   The equivalent circumstantial guarantees of trustworthiness requirement is the lodestar of the
     residual hearsay exception analysis.  The determination of trustworthiness is drawn from the
24   totality of the circumstances surrounding the making of the statement, but it cannot stem from
     other corroborating evidence.") (quotation marks and citations omitted; alteration in original).  In
25   any event, Rule 807 does not permit relaxation of the hearsay rule simply because a separate
     email or newspaper article may say the same thing.  Finally, even assuming, *arguendo*, that these
26   documents corroborate some of the *ex parte* statements, they do not corroborate all of them, nor
     do they address the questions that would be asked on cross examination to get the whole story,
27   not just one side.  *See PixArt Imaging*, 2011 WL 5417090, at *10 ("to allow statements under
     Rule 807 on the basis that they were made repeatedly and allegedly without any motive to lie
28   would convert the residual exception into a sweepingly broad exception to the bar on hearsay
     testimony").

1          Notably, Plaintiffs ignore that Rule 804, not Rule 807, governs the admissibility of

2     unavailable declarants' statements, presumably because it is well-established that where "no

3     attempt has been made to depose a witness, that witness cannot be said to be unavailable" for

4     purposes of Rule 804.  *Simulnet E. Assocs. v. Ramada Hotel Operating Co.*, Nos. 95–16339, 95–

5     16340, 1997 WL 429153, at *6 (9th Cir. July 31, 1997); *see also E. F. Hutton & Co. v. Penham*,

6     547 F. Supp. 1286, 1294 (S.D.N.Y. 1982).  That applies equally where there has been no attempt

7     to procure the declarant's attendance at trial.  *See United States v. Bonds*, 608 F.3d 495, 501 (9th

8     Cir. 2010) (affirming district court's finding that a witness's refusal to testify was not an

9     exceptional circumstance "because the effect was to make him an unavailable declarant, and FRE

10    804 already defines an 'unavailable' declarant and lists exceptions to inadmissibility that the

11    government does not contend are applicable in this case"); FED. R. EVID. 804(a)(5) adv. comm.

12    notes (rule designed to require an attempt be made to depose a witness, as well as to seek his

13    attendance, as a precondition to being deemed unavailable).

14          Finally, because, as discussed above, the declarants are not in fact unavailable and

15    Plaintiffs chose not to depose them or seek their attendance at trial, their declarations also cannot

16    be more probative than other available evidence Plaintiffs could have obtained through reasonable

17    efforts.  *Tele Atlas N.V.*, 2008 WL 4809441, at *5 (rejecting that proffered hearsay under Rule 807

18    is more probative than other evidence where plaintiff "has the legal tools to obtain the evidence it

19    believes it needs" but chose to "forgo those tools").

20

21

22

23

24

25

26

27

28

1

## OPPOSITION TO MIL NO. 5:  CLASS CERTIFICATION

2    Plaintiffs move to preclude Apple from making any argument or eliciting any testimony

3    that directly or indirectly contradicts the Court's certification of the class.  Apple does not intend to

4    ask the jury to decertify the class or otherwise weigh in on the propriety of class certification.  But

5    Apple does intend to challenge the Plaintiffs' case in a number of respects that are relevant to both

6    merits and class, including, but not limited to, Plaintiffs' claim of and methodology for proving

7    classwide impact and damages, as well the biases and alleged injuries of the named Plaintiffs.  It

8    would severely hamper Apple's ability to defend itself on the merits to restrict, for example,

9    Apple's cross examination of Dr. Noll on his regression or Apple's presentation of contrary

10    evidence because such evidence would undermine a conclusion of classwide impact or damages,

11    yet that is exactly what Plaintiffs' motion would have the Court do.

12    Further, if the record shows that class certification is not appropriate, Apple has the right to

13    move to decertify the class.  "Class certification is not immutable" *Cummings v. Connell*, 316 F.3d

14    886, 896 (9th Cir. 2003).  "Even after a certification order is entered, the judge remains free to

15    modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of the Sw. v.*

16    *Falcon*, 457 U.S. 147, 160 (1982).  Rule 23 expressly provides:  "An order that grants or denies

17    class certification may be altered or amended before final judgment."  FED. R. CIV. P. 23(c)(1)(C);

18    *Rodriguez v. W. Publ. Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a

19    class at any time").  In addition, it is well established that any pre-trial finding made pursuant to

20    Rule 23 is not binding in the trial or other subsequent proceedings.  *In re Initial Pub. Offerings*

21    *Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305,

22    318 n.19 (3d Cir. 2008).  In short, the Court is permitted to continually assess the adequacy of

23    class certification throughout trial.

24    In this case, at the certification stage, the Court did not weigh the merits of Plaintiffs'

25    claims or make a ruling on whether there had been a showing of antitrust impact on all or virtually

26    class members.  Order Granting Class Certification, at 6 (Nov. 22, 2011) (Dkt. 694).  The Court

27    instead assessed whether "plaintiffs have made a sufficient showing that the evidence *they intend*

28    *to present* concerning antitrust impact will be made using generalized proof common to the class

16

and that these common issues will predominate" and that plaintiffs have a "proposed method for

determining damages that is not so insubstantial as to amount to no method at all." *Id.* (citations

and quotations omitted) (emphasis added).  Under this standard, the Court found for the purposes

of Rule 23 that "Plaintiffs have adequately demonstrated class-wide methods of proving impact

and damages." *Id.* at 7.  Further, the Court assessed the sufficiency of these methodologies

without the guidance from the Supreme Court's decision in *Comcast*, which reinforced the extent

of "rigorous analysis" that a court must apply in any Rule 23 inquiry, particularly as it relates to

impact and damages.  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).  At trial, for the

first time, the evidence will show whether Plaintiffs' methodologies are capable of doing what they

assert.

Courts have decertified classes at trial where the evidence showed that the class no longer

met the Rule 23 requirements.  For example, in *Dilts v. Penske Logistics, LLC*, No. 08-cv-318-

CAB (BLM), 2014 WL 305039, at *3 (S.D. Cal. Jan. 21, 2014), the district court decertified a

class after plaintiffs' case in chief because plaintiffs had not "demonstrated their personal

experiences are representative of the absent class members."  "Plaintiffs' class action was certified

on the basis that Plaintiffs would establish at trial by common evidence that the absent class

members worked without compensation.  That evidence did not materialize."  *Id.; see also Briggs

v. Anderson*, 796 F.2d 1009, 1017-19 (8th Cir. 1986) (decertifying two subclasses after trial and

prior to decision on merits, where there were no adequate class representatives).

At trial, Apple should be permitted to inquire into issues like bias, injury, and standing that

relate to the jury's analysis of the merits, but may also be relevant to the remaining named

Plaintiffs' ability to serve as class representatives.  "[C]lass representative status could be

withdrawn or modified if at *any time* the representatives could no longer protect the interests of the

class."  *Cummings*, 316 F.3d at 896; (emphasis added); *Soc. Servs. Union, Local 535 v. Santa

Clara Cnty.*, 609 F.2d 944, 948-49 (9th Cir. 1979) (same); *Payne v. Travenol Labs., Inc.*, 673 F.2d

798, 811 (5th Cir. 1982) ("The district court may decertify a class after trial if plaintiff's trial

performance showed him or her to be an inadequate class representative").

In addition to being unwarranted, Plaintiffs' motion would also be unadministrable since

17

questions Apple could ask regarding the merits of Plaintiffs' claims could be excluded as "indirectly" contradicting the class certification order. For example, even simple questions such as what iPod a Plaintiff purchased and when that purchase took place could be said to be indirectly contradicting the Court's certification order by challenging typicality and adequacy of representation.

APPLE'S OPP. TO PLTFS' MIL NOS. 1-6, 9                          No.  C 05-00037 YGR

1      <u>**OPPOSITION TO MIL NO. 6:  EVIDENCE REALNETWORKS DID NOT SUE APPLE**</u>

2          Apple opposes Plaintiffs' sixth motion *in limine* seeking to preclude Apple from referring

3      to RealNetworks's failure to sue Apple on the grounds that it would confuse the issues for the jury.

4      Pls.' MILs at 19.  Because RealNetworks features so prominently in this case—but is

5      conspicuously absent from it—Apple must be able to make the simple facts known to the jury that

6      RealNetworks never sued Apple and never participated in this litigation.  Contrary to Plaintiffs'

7      motion, the risk of juror confusion is far greater if Apple is prevented from presenting this

8      evidence.

9          This evidence is necessary to answer the very important question that will inevitably enter

10     the minds of the jurors, the one that the Court asked: "Is RealNetworks a plaintiff?"  Case

11     Management Conf. Tr. at 5:14 (Feb. 7, 2014) (Dkt. 775).  After counsel for Plaintiffs explained

12     that "RealNetworks is a competitor in the music side of the business," the Court's question

13     remained and the Court asked again, "But are they a plaintiff?"  *Id*. at 5:14-16, 20.  In citing this

14     colloquy, Plaintiffs agree that the jury will ask this question.  But even if the parties explain that

15     RealNetworks is a competitor of Apple's, the jury will face the same confusion and wonder

16     whether RealNetworks is a member of the class, a participant in this case, or ever sued Apple.

17         Moreover, RealNetworks's significant role in this case emphasizes the risk of jury

18     confusion.  Plaintiffs' case is predicated upon the effect of Apple's actions on RealNetworks.

19     Thus, its absence from this suit is highly relevant to the jury's finding of harm to competition.

20     Barring Apple from pointing out this basic fact could cause confusion in the jurors' minds about

21     whose harm they will remedy if they find in favor of Plaintiffs.[9]

22     _____

23     [9] Plaintiffs themselves recognize the importance of RealNetworks's absence from this litigation.
       They include on their preliminary exhibit list an affidavit of reasonable diligence attempting to
24     serve Robert Glaser, the CEO of RealNetworks, with a deposition subpoena.  *See* Dearborn
       Decl., Ex C (Pls.' TX 0713).  The affiant swore that Mr. Glaser refused service, noting "the
25     subject was home, but answered from behind the door and is clearly familiar with service of
       process."  *Id.*  After both the affiant and Mr. Glaser called the police, "the police told [the affiant]
26     that Robert's attorneys had made him aware of impending service and instructed him not to
       accept service."  *Id.*  Plaintiffs had over nine years to obtain discovery from RealNetworks to
27     support their claim.  The single attempt they made—attempting to serve the CEO at home—
       failed because Mr. Glaser's attorneys advised him not to accept service.  Simply put,
28     RealNetworks wants nothing to do with this case.
           It is clear that the only reason that Plaintiffs put this exhibit on their list is to suggest that

                                                    19

1    Furthermore, Apple should be permitted to elicit evidence and make reference to the fact

2    that RealNetworks has not participated in this case, particularly given that its presence would be

3    helpful to explain important issues that only RealNetworks could, such as how precisely the

4    Harmony technology works and how RealNetworks developed it, the extent of any alleged harm to

5    RealNetworks from Apple's iTunes 4.7, 7.0, and 7.4 updates, and the extent of any alleged harm to

6    RealNetworks's *customers* from Apple's iTunes 4.7, 7.0, and 7.4 updates.  Plaintiffs rely solely on

7    Dr. Noll's regression to show harm to competition and damages.  Apple should be permitted to

8    point out that Plaintiffs have no proof from real-world RealNetworks customers that demonstrates

9    harm or damages; further, Plaintiffs' lack of proof is due in part to RealNetworks conspicuous

10    absence from this suit.

11    If Plaintiffs are concerned about juror confusion, the Court could consider an appropriate

12    limiting instruction that RealNetworks is not a participant in this suit and never sued Apple, and

13    that the jury should not consider RealNetworks's absence in reaching a decision.  The court in

14    *Osborne v. Bed Bath & Beyond, Inc.*, No. 7:12-CV-99, 2012 WL 4795709, at *2 (W.D. Va. Oct. 9,

15    2012) recognized the prudence of this approach.  It noted that "the jury will be confused by the

16    empty chairs at trial" in light of the absence of two parties who could have participated in the

17    litigation.  "This issue," the court explained, "can be remedied by an instruction from the court."

18    *Id*.  In this circumstance, an instruction that RealNetworks never sued Apple would be all the more

19    appropriate because without it, the jury may conclude that RealNetworks is not participating in the

20    trial due to a nonexistent settlement.

21

22

23    _____

they made a serious effort to obtain evidence from RealNetworks.  This is completely misleading

24    because the Federal Rules of Civil Procedure provide clear procedures for obtaining evidence
and deposition testimony from third-party corporations that do not require serving the CEO at his

25    home.  Thus, if Plaintiffs attempt to offer this evidence for this purpose, Apple will request that
the Court issue an appropriate curative instruction, for example:  "You have heard evidence that

26    an individual attempted to serve Robert Glaser, the CEO of RealNetworks, Inc., at his home on
December 14, 2010 with a subpoena to testify at a deposition.  Plaintiffs also had the right during

27    this litigation to send a deposition notice to RealNetworks, Inc., the corporation itself, and to
serve such notice at RealNetworks's corporate headquarters.  Plaintiffs also had the right to

28    continue trying to serve Robert Glaser with the subpoena."

APPLE'S OPP. TO PLTFS' MIL NOS. 1-6, 9                    No.  C 05-00037 YGR

1

## STATEMENT IN RESPONSE TO MIL NO. 8: TREBLE DAMAGES

2          As Apple has told Plaintiffs, Apple does not object to its motion *in limine* to preclude

3    evidence regarding treble damages or attorneys' fees, but has proposed a standard jury instruction

4    on treble damages in the parties' draft jury instruction exchange.  Courts in the Ninth Circuit have

5    recognized that an instruction to the jury not to consider the possibility of trebling of damages or

6    awarding attorneys' fees and costs may be warranted depending on the case.  *See* Decl. of Bonny

7    E. Sweeney In Support Of Plaintiffs' Mots. *In Limine* Nos. 1-9, Ex. 13 at 6, § 4 (Order On Motions

8    *In Limine* And For Pre-Trial Preparation, *In re SRAM Antitrust Litig.*, No. 4:07-md-01819-CW

9    (N.D. Cal. filed Dec. 16, 2010) ("The Court may instruct the jury not to consider trebling of

10   damages.")) (Dkt. 820-1); *Real v. Cont'l Grp., Inc.*, 627 F. Supp. 434, 450 (N.D. Cal. 1986)

11   ("Treble damage instructions have been approved [ ] where necessary to avoid confusing the

12   jury").  A motion *in limine* is not the place to dispute jury instructions, so Apple will propose a

13   specific instruction in its package of joint jury instructions.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE'S OPP. TO PLTFS' MIL NOS. 1-6, 9                          No.  C 05-00037 YGR

1

## OPPOSITION TO MIL NO. 9:  DISMISSED CLAIMS

2          Plaintiffs seek an order broadly precluding Apple "from making at trial any statement or

3    argument, or otherwise presenting or eliciting any evidence or testimony, relating to" (1)

4    "Plaintiffs' prior claims" and (2) "the Court's rulings on those claims."  Pls.' MILs at 22.  While

5    Apple will not refer to the fact of Plaintiffs' failed Section 1 tying claim and state law claims, or

6    the fact the Court dismissed them, evidence "relating to" those claims, including evidence about

7    FairPlay, iTunes 4.7, and Apple's integrated iPod+iTunes+iTS ecosystem is integral to the

8    presentation of Apple's case and the explanation to the jury of how and why iTunes 7.0 and 7.4

9    were developed.  To avoid jury confusion, Apple has proposed to instruct the jury as to the law of

10   the case, including both that Apple's development of an integrated system that was not

11   interoperable with certain competing products was lawful and not anticompetitive, regardless of

12   the integrated system's effect on competitive products, and that Apple's development and

13   distribution of iTunes 4.7 was lawful and not anticompetitive, even though iTunes 4.7 rendered

14   third-party software incompatible with the iPod.  This is not the same as referring to the fact that

15   Plaintiffs brought dismissed claims or the fact those claims were dismissed.

16          **Evidence relating to Plaintiffs' prior claims**:  Plaintiffs do not cite a single case in

17   support of the broad ruling they urge upon this Court, namely "that evidence is irrelevant simply

18   because it refers to claims or parties that were dismissed."  *Morris v. Long*, No. 1:08-CV-01422-

19   AWI, 2012 WL 1498889, at *8 (E.D. Cal. Apr. 27, 2012) (denying motion to exclude evidence of

20   dismissed claims or parties).  Cases cited by Plaintiffs stand for the unremarkable proposition that

21   irrelevant evidence should be excluded.  As courts have explained, however, "where there is

22   *common evidence* establishing a claim that has been dismissed and a claim remaining in the case,

23   such evidence *will not be precluded*.  What is precluded is reference to the dismissed claims

24   themselves, the fact of dismissal, and the allegations of the parties asserting the dismissed claims

25   as asserted by those parties."  *Madani v. Equilon Enters., LLC*, No. CV 04-10370 JVS JTLX, 2009

26   WL 3789133, at *2 (C.D. Cal. July 2, 2009) (emphasis added).[10]

27   _____

28   [10] *See, e.g.*, *Spencer v. Peters*, No. C11-5424 BHS, 2014 WL 2208940, at *7 (W.D. Wash. May
     28, 2014) ("The admission of evidence regarding the dismissed claims was relevant and not

22

1      Here, there is "common evidence" between Plaintiffs' dismissed claims regarding Apple's

2  integrated platform and iTunes 4.7 and Plaintiffs' remaining claims regarding iTunes 7.0 and 7.4.

3  Plaintiffs cannot dispute this, given that they concede in their opposition to Apple's motions *in*

4  *limine* that evidence regarding Apple's integrated platform is "highly relevant," Pls.' Opp. to

5  Def.'s Mot. *In Limine* and Mot. To Strike at 11 (Oct. 14, 2014) (Dkt. 824-3), and that "Apple's

6  actions during the development of 4.7 plainly inform and color later developments at the heart of

7  this case and are thus relevant and admissible," *id.* at 10.  Discussion of iTunes 4.7 is also required

8  because Dr. Noll uses it in his regression in ways that conflate lawful from purportedly unlawful

9  conduct.  Murphy Report, at ¶¶ 103-04 (Aug. 19, 2013) (Dkt. 809-4); *see City of Vernon v. S. Cal.*

10  *Edison Co.*, 955 F.2d 1361, 1371-72 (9th Cir. 1992) (exclusion of expert testimony appropriate

11  where damages study fails to distinguish between legal and illegal conduct).[11]

12      **The Court's rulings on Plaintiffs' prior claims**:  Similarly, Plaintiffs cite no case

13  suggesting that the jury should not be instructed on the law of the case.  Rather, they cite cases

14  where parties were concerned, for example, that their decision to drop claims and parties or losses

15  at the pleading or summary judgment stages would be introduced as evidence against them.

16  *Moore v. Bannon*, No. 10-12801, 2012 WL 2154274, at *7 (E.D. Mich. June 13, 2012) (defendant

17  sought to use the fact that the Court dismissed certain parties and claims "to question Plaintiff's

18  credibility" and "establish Plaintiff's bias against law enforcement"); *Heriges v. Wilson Cnty.*, No.

19

20  unfairly prejudicial"); *Thakore v. Universal Mach. Co. of Pottstown, Inc.*, 670 F. Supp. 2d 705,
716 (N.D. Ill. 2009) ("if the evidence is also relevant to a claim or issue that remains in the case,

21  the evidence is admissible for that limited purpose"); *Andazola v. Logan's Roadhouse, Inc.*, No.
CV-10-S-316-NW, 2013 WL 1834308, at *8 (N.D. Ala. Apr. 29, 2013) ("this court will grant

22  [defendant's] motion *in limine* to exclude evidence that is relevant only to plaintiff's dismissed
claims").

23

24  [11] *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1323 (11th Cir. 2003) (expert "did
not differentiate between legal and illegal pricing behavior, and instead simply grouped both of

25  these phenomena under the umbrella of illegal, collusive price fixing.  This testimony could not
have aided a finder of fact to determine whether appellees' behavior was or was not legal, and

26  the district court properly excluded it"); *Intimate Bookshop v. Barnes & Noble, Inc.*, No. 98
CIV.5564 (WHP), 2003 WL 22251312, at *7 (S.D.N.Y. Sept. 30, 2003) ("damages models do

27  not attempt to distinguish between the effect of legal as opposed to prohibited competition under
the Act . . . .  Intimate's failure to attempt to account for intervening market factors and the

28  defendants' legal, competitive conduct necessitates a finding that Intimate has failed to show it is
entitled to damages"); *see also Comcast Corp.*, 133 S. Ct. at 1433.

APPLE'S OPP. TO PLTFS' MIL NOS. 1-6, 9                                    No.  C 05-00037 YGR

1    3:09-cv-0362, 2010 WL 4116719, at *11 n.7 (M.D. Tenn. Oct. 19, 2010) (defendant sought to use

2    plaintiff's dismissal of sexual harassment claim and others to attack plaintiff's credibility).  Apple

3    intends no such thing.  Apple requests only that the jury be instructed that its development of an

4    integrated system that was not interoperable with certain competing products and technologies was

5    lawful and not anticompetitive, regardless of its effect on competitive products, and that Apple's

6    development and distribution of iTunes 4.7 was lawful and not anticompetitive, even though 4.7

7    rendered third-party software incompatible with the iPod.  Such instructions are common; courts

8    routinely instruct on the law of the case.  *E.g.*, *Jacobson v. Cathcart*, No. 10-13046, 2014 WL

9    266404, at *5 (E.D. Mich. Jan. 24, 2014) (ordering parties to submit "jury instructions on the law

10   of the case"); *Canning v. Poole*, No. CIV.A. 10-16-JBC, 2012 WL 6600305, at *4 (E.D. Ky. Dec.

11   18, 2012) (same); *United States v. Medina*, No. 12CR37 WQH, 2013 WL 1190829, at *5 (S.D.

12   Cal. Mar. 22, 2013) (Court "will fully instruct the jury on the law of the case").[12]

13          Judge Ware held as a matter of law that "the technological interrelationship between iTunes

14   and iPods" is neither illegal nor anticompetitive, Order Granting Def.'s Mot. For J. on the

15   Pleadings at 9 (Oct. 30, 2009) (Dkt. 274), regardless of whether it "limits consumers' 'free choice'

16   in their purchase of complimentary products," Order Granting in Part Def.'s Mot. For J. on the

17   Pleadings at 9 (May 15, 2009) (Dkt. 213).  *See also* Order Granting Def.'s Mot. for J. on the

18   Pleading at 9 (Oct. 30, 2009) (Dkt. 274) (holding that "consumers remained free at all times to

19   purchase one or the other [iTunes music or iPods] without purchasing both" . . . "The consumer's

20   ability to play music purchased from iTunes is not conditioned on the purchase of an iPod.").[13]

21   _____

22   [12] Courts may also instruct the jury on the procedural posture of the case, including the rulings
     and findings in earlier proceedings.  *E.g.*, *Merchant Transaction Sys. Inc. v. Nelcela, Inc.*, No.
23   10-16008, 439 F. App'x 620, 623 (9th Cir. 2011) (affirming the district court's instruction to the
     jury regarding "the Phase I verdict and proceedings"); *Aristocrat Leisure Ltd. v. Deutsche Bank
24   Trust Co. Americas*, No. 04 CIV 10014 PKL, 2009 WL 3111766, at *9 (S.D.N.Y. Sept. 28,
     2009) ("declin[ing] to preclude the parties from stating, as part of explaining the procedural
25   posture of this case, that the Court previously awarded the Bondholders general damages").

26   [13] The Ninth Circuit agrees with these legal conclusions.  *Somers v. Apple, Inc.*, 729 F.3d 953,
     966-67 (9th Cir. 2013) (affirming dismissal of the indirect purchaser claims and holding that
27   "limitation of consumer choice, in itself, does not amount to 'antitrust injury;'" and that a
     consumer's "inability to freely play her DRM-encoded music is not comparable to the loss of
28   'free choices between market alternatives,'" and thus "is not an 'antitrust injury' that affects
     competition").

                                                    24

1   Judge Ware later made clear that these conclusions applied equally to Plaintiffs' Section 2 claims:

2   because "[t]he Sherman Act does not outlaw monopoly power gained from the popularity of

3   interoperable products even if incompatible with the products of competitors," "Plaintiffs must

4   allege willful conduct *beyond interoperability and incompatibility*."  Order Decertifying Classes at

5   9 (Dec. 21, 2009) (Dkt. 303) (emphasis added).  Judge Ware also held as a matter of law that

6   "iTunes 4.7 was a genuine [product] improvement."  Order Granting In Part And Denying In Part

7   Def.'s Mtn. For Summ. J. at 8, 11 (May 19, 2011) (Dkt. 627); *see also id.* at 9-11 (holding as a

8   matter of law that Apple's public statement that it was investigating the legality RealNetworks's

9   actions and that software updates may cause Harmony to stop working with iPods, and Apple's

10  "refusal to license FairPlay to RealNetworks, was not anticompetitive conduct that would give rise

11  to Section 2 liability").

12          These rulings are the law of the case, and an instruction is the only way to ensure that the

13  jury considers only iTunes 7.0 and 7.4 as a basis for its verdict.  *Spencer*, 2014 WL 2208940, at *7

14  ("the limiting instructions [that certain evidence did not in and of itself constitute illegal conduct]

15  properly provided the jury with the direction they needed to ensure that the evidence on dismissed

16  claims was not considered for improper purposes");[14] *see also CIVIX-DDI, LLC v. Hotels.com,*

17  *L.P.*, No. 05 C 6869, 2012 WL 6591684, at *2 (N.D. Ill. Dec. 18, 2012) (granting motion *in limine*

18  and "precluding [the plaintiff] from offering evidence or argument contradicting or revisiting any

19  of the legal findings contained in the Court's grant of partial summary judgment on grounds of

20  license").

21

22

23

24

25

---

26  [14] *Hewlett-Packard Co. v. Mustek Sys., Inc.*, No. 99-CV-351-RHW, 2001 WL 36166855, at *4
    (S.D. Cal. June 11, 2001) (providing jury instruction based on summary judgment ruling); FED.

27  R. EVID. 105 ("If the court admits evidence that is admissible [for a particular purpose] . . . the
    court, on timely request, must restrict the evidence to its proper scope and instruct the jury

28  accordingly").

APPLE'S OPP. TO PLTFS' MIL NOS. 1-6, 9                          No.  C 05-00037 YGR

1

## **CONCLUSION**

2          For all the foregoing reasons, the Court should deny Plaintiffs' Motions *In Limine* Nos. 1-6

3    and 9.

4    Dated: October 17, 2014                              BOIES, SCHILLER & FLEXNER LLP

5                                                         By:  */s/John F. Cove, Jr.*
6                                                              John F. Cove, Jr.

7                                                         Counsel for Defendant APPLE INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26