```
08:59:01  1          UNITED STATES DISTRICT COURT
          2         NORTHERN DISTRICT OF CALIFORNIA
          3                   ---o0o---
          4
          5
          6
             MELANIE TUCKER, On Behalf of    )
          7  Herself and All Others Similarly )
             Situated,                        )
          8                                   )
                       Plaintiff,   ) Case No. C 06
          9                         ) 4457 HRL
                vs.                 )
         10                         )
             APPLE COMPUTER, INC., a )
         11  California Corporation, )
                                     )
         12        Defendant.        )
                                     )
         13
         14
         15
         16           ---o0o---
         17       FRIDAY, OCTOBER 26, 2007
         18
             VIDEOTAPE DEPOSITION OF MELANIE TUCKER
         19
                      ---o0o---
         20
         21
         22
         23
         24
             REPORTED BY: BALINDA DUNLAP, CSR 10710, RPR, CRR, RMR
         25
                            Page 2
```

```
  1                A P P E A R A N C E S
  2                     ---o0o---
  3
  4
     FOR THE PLAINTIFF:
  5
     BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
  6  2901 North Central Avenue, Suite 1000
     Phoenix, Arizona  85012
  7  BY: TODD CARPENTER, ESQ.
  8  COUGHLIN, STOIA, GELLER, RUDMAN & ROBBINS LLP
     655 West Broadway, Suite 1900
  9  San Diego, California  92101
     BY: BONNY SWEENEY, ESQ.
 10     GREG WESTON, ESQ.
 11  MURRAY, FRANK & SAILER LLP
     275 Madison Avenue
 12  New York, New York  10016
     BY: BRIDGETT HAMILL, ESQ.
 13
     FOR THE DEFENDANT:
 14
     JONES DAY
 15  555 California Street, 26th Floor
     San Francisco, California  94104
 16  BY: BOB MITTELSTAEDT, ESQ.
         LARA KOLLIOS, ESQ.
 17
 18
 19
 20
 21
 22
 23
 24
 25
                         Page 3
```

```
  1              E X A M I N A T I O N
  2                   ---o0o---
  3  EXAMINATION BY MR. MITTELSTAEDT          5
     EXAMINATION BY MR. CARPENTER           146
  4  FURTHER EXAMINATION BY MR. MITTELSTAEDT 147
  5
                      E X H I B I T S
  6                     ---o0o---
  7
     1   CDs owned but not burned and CDs owned and  153
  8       burned list
  9  2   Purchase history list                       153
 10  3   Plaintiff's allegations                     153
 11
 12
 13
 14
 15
 16
 17
 18
 19
 20
 21
 22
 23
 24
 25
                         Page 4
```

```
           1       SAN FRANCISCO, CALIFORNIA, OCTOBER 26, 2007
           2                      ---o0o---
           3       BE IT REMEMBERED that on Friday, the 26th day of
           4  October, 2007, commencing at the hour of 9:11 a.m. thereof,
           5  at 555 California Street, 26th Floor, San Francisco,
           6  California, before me, Balinda Dunlap, a Certified Shorthand
           7  Reporter in and for the County of San Francisco, State of
09:10:34   8  California, personally appeared:
09:10:34   9       THE VIDEOGRAPHER:  Good morning.  My name is Michael
09:10:52  10  Barber.  I am a videographer associated with Barkley Court
09:10:56  11  Reporters, located at 222 Front Street, Suite 600, San
09:11:00  12  Francisco, California 94111.  The date is October 26th, 2007.
09:11:06  13  The time is 9:11 a.m.
09:11:08  14       This deposition is taking place at Jones Day, 555
09:11:14  15  California Street, San Francisco, California 94104 in the
09:11:18  16  matter of the Apple iPod iTunes antitrust litigation
09:11:22  17  appearing in the U.S. District Court for the Northern
09:11:26  18  District of California, San Jose Division, Case Numbers
09:11:32  19  C050037 JW and C0604457 JW.
09:11:39  20       This is the videotape deposition of Melanie Tucker
09:11:43  21  being taken on behalf of the defense.
09:11:45  22       Counsel, would you please identify yourselves for the
09:11:47  23  record and state whom you represent.
09:11:49  24       MR. MITTELSTAEDT:  I'm Bob Mittelstaedt for the
09:11:51  25  defendant.
                              Page 5
```

| | | | | |
|---|---|---|---|---|
| 09:11:52 | 1 | MS. KOLLIOS: Lara Kollios for the defendant. | | |
| 09:11:54 | 2 | MS. HAMILL: Bridget Hamill, Murray, Frank & Sailer | | |
| 09:11:58 | 3 | for plaintiff Mary Ann Arusen. | | |
| 09:12:01 | 4 | MR. WESTON: Greg Weston from Coughlin Stoia | | |
| 09:12:05 | 5 | representing the class. | | |
| 09:12:06 | 6 | MS. SWEENEY: Bonny Sweeney. | | |
| 09:12:09 | 7 | MR. CARPENTER: Todd Carpenter from Bonnett, | | |
| 09:12:13 | 8 | Fairbourn, Friedman & Balint representing the plaintiffs. | | |
| 09:12:14 | 9 | THE VIDEOGRAPHER: Thank you. Would the court | | |
| 09:12:16 | 10 | reporter please swear in the witness. | | |
| 09:12:24 | 11 | MELANIE TUCKER | | |
| | 12 | called as a witness by the Defense, having been sworn to tell | | |
| | 13 | the truth, the whole truth, and nothing but the truth, was | | |
| | 14 | examined and testified as follows: | | |
| 09:12:26 | 15 | ---o0o--- | | |
| 09:12:26 | 16 | EXAMINATION BY MR. MITTELSTAEDT | | |
| 09:12:27 | 17 | Q. If you would state your full name and address for the | | |
| 09:12:29 | 18 | record, please. | | |
| 09:12:29 | 19 | A. Melanie Christine Tucker, 4431 Cleveland Avenue, No. | | |
| 09:12:36 | 20 | 2, San Diego, California 92116. | | |
| 09:12:40 | 21 | Q. Have you ever had your deposition taken before? | | |
| 09:12:43 | 22 | A. No, I have not. | | |
| 09:12:44 | 23 | Q. What have you done to prepare for the deposition? | | |
| 09:12:48 | 24 | A. I met with my counsel briefly. | | |
| 09:12:50 | 25 | Q. For how long? | | |

Page 6

| | | |
|---|---|---|
| 09:12:51 | 1 | A. Approximately an hour and a half. |
| 09:12:53 | 2 | Q. Which counsel? |
| 09:12:54 | 3 | A. Todd Carpenter, Bonny Sweeney and Greg Weston. |
| 09:13:01 | 4 | Q. Do you understand the deposition process? |
| 09:13:03 | 5 | A. Yes. |
| 09:13:04 | 6 | Q. Okay. Let me just go over some ground rules. Even |
| 09:13:07 | 7 | though we are in a conference room here in a fairly informal |
| 09:13:10 | 8 | setting, you understand that the testimony you give has the |
| 09:13:13 | 9 | same effect as testimony in a courtroom? |
| 09:13:19 | 10 | A. Yes. |
| 09:13:19 | 11 | Q. If you don't understand a question, will you please |
| 09:13:21 | 12 | tell me so? |
| 09:13:22 | 13 | A. Yes. |
| 09:13:22 | 14 | Q. If you do understand the question, will you give me |
| 09:13:25 | 15 | your best answer that you possibly can? |
| 09:13:29 | 16 | A. Yes. |
| 09:13:30 | 17 | Q. If you don't know the answer, I don't want you to |
| 09:13:34 | 18 | guess, okay? |
| 09:13:35 | 19 | A. Okay. |
| 09:13:35 | 20 | Q. But if you know part of the answer, I want you to |
| 09:13:38 | 21 | tell me the part that you do know. |
| 09:13:41 | 22 | A. Okay. |
| 09:13:44 | 23 | Q. Do you have any questions before we get going? |
| 09:13:46 | 24 | A. No. |
| 09:13:47 | 25 | Q. Okay. When did you buy your first iPod? |

Page 7

| | | |
|---|---|---|
| 09:13:52 | 1 | A. I believe it was in April 2004. |
| 09:13:59 | 2 | Q. Are you sure about the year? |
| 09:14:00 | 3 | A. Fairly sure about the year. |
| 09:14:04 | 4 | Q. Okay. Why did you buy that iPod? |
| 09:14:08 | 5 | A. Because I wanted to be able to consolidate my music |
| 09:14:11 | 6 | and carry it with me. |
| 09:14:13 | 7 | Q. And what music did you have at that point? |
| 09:14:18 | 8 | A. I had a couple hundred CDs. |
| 09:14:27 | 9 | Q. And what else? |
| 09:14:29 | 10 | A. That was it. |
| 09:14:31 | 11 | Q. Just so we get off on the right footing here, your |
| 09:14:35 | 12 | complaint says that on or about April 2005 you purchased a 20 |
| 09:14:44 | 13 | gig iPod. Does that refresh your recollection that your |
| 09:14:48 | 14 | iPod -- your first iPod was April of 2005? |
| 09:14:56 | 15 | A. Yes. |
| 09:14:57 | 16 | Q. Where did you buy that iPod? |
| 09:14:58 | 17 | A. I bought it on line through the Apple store. |
| 09:15:04 | 18 | Q. How much did you pay for it? |
| 09:15:05 | 19 | A. I don't recall. |
| 09:15:07 | 20 | Q. Approximately? |
| 09:15:11 | 21 | A. Approximately 250 to 300. |
| 09:15:14 | 22 | Q. And how did you choose an iPod? |
| 09:15:17 | 23 | MR. CARPENTER: Objection. Vague and ambiguous. |
| 09:15:20 | 24 | Go ahead. |
| 09:15:22 | 25 | THE WITNESS: I had friends that had iPods and had |

Page 8

| | | |
|---|---|---|
| 09:15:27 | 1 | seen advertisements. |
| 09:15:28 | 2 | Q. BY MR. MITTELSTAEDT: Do you remember the names of |
| 09:15:31 | 3 | any of the friends in particular? |
| 09:15:34 | 4 | A. Yes. |
| 09:15:35 | 5 | Q. Who? |
| 09:15:37 | 6 | A. Travis Duke, Sean Thompson. |
| 09:15:46 | 7 | Q. And do you recall anything either of them told you |
| 09:15:49 | 8 | about their iPods? |
| 09:15:50 | 9 | A. Just that they liked them. |
| 09:15:52 | 10 | Q. Did they say what they liked about them? |
| 09:15:54 | 11 | A. That all their music was in one place and easy to |
| 09:15:57 | 12 | access. |
| 09:15:58 | 13 | Q. Anything else? |
| 09:15:58 | 14 | A. That's it. |
| 09:16:01 | 15 | Q. Did you shop around for other brands, other types of |
| 09:16:05 | 16 | digital music players? |
| 09:16:11 | 17 | A. I briefly looked at one other. |
| 09:16:13 | 18 | Q. What was the other one that you looked at? |
| 09:16:15 | 19 | A. I believe it was called an iRiver. |
| 09:16:18 | 20 | Q. iRiver? |
| 09:16:19 | 21 | A. I believe so. Not sure. |
| 09:16:20 | 22 | Q. Where did you look at an iRiver, or whatever it was |
| 09:16:26 | 23 | called? |
| 09:16:26 | 24 | A. I was browsing online. |
| 09:16:26 | 25 | Q. Do you remember what website? |

Page 9

2 (Pages 6 to 9)

MELANIE TUCKER

```
11:22:26  1   point?
11:22:26  2   A.  Yes.
11:22:27  3   Q.  When did he become your lawyer?
11:22:29  4   A.  Early July 2006.
11:22:31  5   Q.  What was the occasion?
11:22:33  6       MR. CARPENTER:  Objection.  Vague and ambiguous.
11:22:34  7   This might tread in the attorney-client privilege as well.
11:22:38  8   Q.  BY MR. MITTELSTAEDT:  Where were you when you said
11:22:39  9   that he became your lawyer, physically?
11:22:45 10   A.  I was at my workplace.
11:22:50 11   Q.  Which workplace?
11:22:51 12   A.  Stingaree.
11:22:52 13   Q.  What time of day was it?
11:22:54 14   A.  It was in the evening.
11:22:55 15   Q.  And Mr. Carpenter came in?
11:23:00 16   A.  Yes.
11:23:01 17   Q.  Have you ever seen him before?
11:23:03 18   A.  Yes.
11:23:04 19   Q.  When was the first time?
11:23:12 20   A.  That I had seen him there?
11:23:14 21   Q.  Seen him any place.
11:23:16 22   A.  In 2002.
11:23:17 23   Q.  And how did you meet him?
11:23:19 24   A.  I met him at my workplace.
11:23:20 25   Q.  Did he work at your workplace?
                         Page 86
```

```
11:23:22  1   A.  No.
11:23:25  2   Q.  What workplace did you meet him at?
11:23:28  3   A.  Moondoggies.
11:23:36  4   Q.  How did you meet him there?
11:23:37  5   A.  I was waiting on him.
11:23:39  6   Q.  And how many times did you see him from 2002 until
11:23:45  7   early July 2006?
11:23:48  8   A.  I don't know.
11:23:49  9   Q.  More than a dozen?
11:23:52 10   A.  Yes.
11:23:52 11   Q.  More than 50?
11:24:00 12   A.  I don't know.
11:24:00 13   Q.  Was he your lawyer at any point during that time
11:24:08 14   period from 2002 until early July 2006?
11:24:12 15   A.  No.
11:24:12 16   Q.  How would you describe your relationship with him
11:24:15 17   during that period?
11:24:15 18   A.  We dated briefly in the spring of 2002 until the
11:24:17 19   summer of 2002.
11:24:25 20   Q.  And what was your relationship in July 2002?
11:24:30 21   A.  We were friends, acquaintances.
11:24:32 22   Q.  And how often would you see each other during that
11:24:35 23   time period?
11:24:36 24   A.  Not very often.
11:24:47 25   Q.  Did you ever see if Mr. Carpenter had an iPod?
                         Page 87
```

```
11:24:50  1   A.  No, I don't remember.
11:24:56  2   Q.  And in early July 2006 when you saw him at your place
11:25:00  3   of business -- who brought up the issue of an iPod?
11:25:14  4       MR. CARPENTER:  I am going to object.  I think this
11:25:17  5   is also attorney-client privilege.
11:25:24  6       MR. MITTELSTAEDT:  Are you instructing her not to
11:25:26  7   answer?
11:25:26  8       MR. CARPENTER:  Yes.
11:25:32  9   Q.  BY MR. MITTELSTAEDT:  When you first saw
11:25:34 10   Mr. Carpenter in early July 2006 at your place of business,
11:25:39 11   did you ask him to be your lawyer before you said anything to
11:25:43 12   him?
11:25:44 13   A.  Before I said anything to him?
11:25:46 14   Q.  Well, let's do it this way:  What was the first thing
11:25:50 15   you said to Mr. Carpenter when you saw him that evening early
11:25:55 16   July 2006 when the subject of Apple and iPod came up?
11:26:00 17       MR. CARPENTER:  Well, I am going to object again and
11:26:03 18   insert the attorney-client privilege with respect to the
11:26:06 19   conversation about the iPod.
11:26:09 20   Q.  BY MR. MITTELSTAEDT:  Well, when you saw him, were
11:26:13 21   you waiting on him?
11:26:16 22   A.  No.
11:26:16 23   Q.  So did you have an appointment for him to meet you at
11:26:19 24   your place of business?
11:26:21 25   A.  No.
                         Page 88
```

```
11:26:22  1   Q.  Did he come in to eat or drink, as far as you were
11:26:26  2   concerned?
11:26:26  3   A.  Yes.
11:26:27  4   Q.  And did -- who spoke first?
11:26:31  5   A.  I don't remember.
11:26:36  6   Q.  Do you remember anything about the conversation?
11:26:42  7   A.  Not verbatim, no.
11:26:45  8   Q.  How long did the conversation last?
11:26:47  9   A.  I don't know.
11:26:49 10   Q.  Five minutes?
11:26:53 11       MR. CARPENTER:  Don't speculate.
11:26:54 12       THE WITNESS:  I don't know.
11:26:55 13   Q.  BY MR. MITTELSTAEDT:  Do you remember if it was more
11:26:57 14   or less than five minutes?
11:26:58 15   A.  More.
11:27:00 16   Q.  Was it more or less than 15 minutes?
11:27:07 17   A.  Probably around 15 minutes.  I don't know.
11:27:12 18   Q.  And was it in that conversation that you first
11:27:17 19   learned that you couldn't play -- as you say at least, you
11:27:21 20   couldn't play any digital music on your iPod other than what
11:27:25 21   you purchased from Apple?
11:27:26 22   A.  I don't remember.
11:27:39 23   Q.  What do you remember about that conversation?  You
11:27:41 24   say you don't remember it verbatim, but what do you remember?
11:27:45 25       MR. CARPENTER:  We are going to have to object as
                         Page 89
```

22 (Pages 86 to 89)

MELANIE TUCKER

| | | |
|---|---|---|
| 11:43:07 | 1 | anyone other than your lawyers? |
| 11:43:09 | 2 | A. No. |
| 11:43:11 | 3 | Q. What size of incentive fee do you have in mind? |
| 11:43:15 | 4 | A. I don't have anything in mind. |
| 11:43:24 | 5 | Q. Do you have in mind whether it is a dollar or |
| 11:43:27 | 6 | $10,000? |
| 11:43:30 | 7 | MR. CARPENTER: Just to be clear, for her personally? |
| 11:43:33 | 8 | Q. BY MR. MITTELSTAEDT: An incentive fee for you? |
| 11:43:36 | 9 | MR. CARPENTER: As a result of acting as a class |
| 11:43:39 | 10 | member, as a named class member in litigation? |
| 11:43:42 | 11 | Q. BY MR. MITTELSTAEDT: An incentive fee paid to you |
| 11:43:45 | 12 | for being willing to bring this case? |
| 11:43:47 | 13 | A. I don't know a dollar amount. |
| 11:43:51 | 14 | Q. Do you have in mind whether it's something closer to |
| 11:43:55 | 15 | a dollar or $5,000 or $10,000? |
| 11:44:00 | 16 | A. I would guess it would be more than a dollar. |
| 11:44:04 | 17 | Q. Can you do any better than that? |
| 11:44:07 | 18 | A. I really don't know a percentage of some. I really |
| 11:44:10 | 19 | don't know. |
| 11:44:12 | 20 | Q. Have you ever heard the size of the incentive fees |
| 11:44:14 | 21 | that other named class representatives have received in the |
| 11:44:17 | 22 | past? |
| 11:44:25 | 23 | A. No. I'm sure it's thousands. |
| 11:44:31 | 24 | Q. Do you have in mind that it might be a percentage of |
| 11:44:34 | 25 | some number rather than a flat dollar amount? |

Page 98

| | | |
|---|---|---|
| 11:44:41 | 1 | A. Yes. |
| 11:44:42 | 2 | Q. A percentage of what? |
| 11:44:45 | 3 | A. Damages awarded. |
| 11:44:53 | 4 | Q. So your belief is the incentive fee payable to you |
| 11:44:56 | 5 | could be a percentage of damages awarded to the class; is |
| 11:45:01 | 6 | that right? |
| 11:45:01 | 7 | A. Yes. |
| 11:45:01 | 8 | Q. And is that one of the reasons that you agreed to be |
| 11:45:05 | 9 | a named plaintiff here? |
| 11:45:06 | 10 | A. No. |
| 11:45:07 | 11 | Q. Was the incentive fee at all a consideration in your |
| 11:45:10 | 12 | mind in agreeing to be a plaintiff? |
| 11:45:12 | 13 | A. No. |
| 11:45:13 | 14 | Q. Have you ever been a plaintiff in another case? |
| 11:45:15 | 15 | A. No. |
| 11:45:15 | 16 | Q. Have you ever been asked to be a plaintiff in another |
| 11:45:18 | 17 | case? |
| 11:45:19 | 18 | A. No. |
| 11:45:21 | 19 | Q. Do you know anyone who's ever been a plaintiff in a |
| 11:45:25 | 20 | case? |
| 11:45:27 | 21 | A. I don't know. |
| 11:45:29 | 22 | Q. Do you know who's been a class representative in a |
| 11:45:32 | 23 | case? |
| 11:45:36 | 24 | A. No. |
| 11:45:37 | 25 | Q. Do you have any understanding of what the obligations |

Page 99

| | | |
|---|---|---|
| 11:45:40 | 1 | are of someone who is appointed a representative of a class? |
| 11:45:44 | 2 | A. Yes. |
| 11:45:45 | 3 | Q. What's your understanding? |
| 11:45:46 | 4 | A. To keep the interest of the class in mind, to stay |
| 11:45:50 | 5 | informed and to provide information. |
| 11:45:52 | 6 | Q. Do you have any understanding of the potential costs |
| 11:45:56 | 7 | of being a class representative? |
| 11:46:03 | 8 | MR. CARPENTER: Objection. Vague and ambiguous as to |
| 11:46:05 | 9 | "costs." Might call for a legal conclusion. |
| 11:46:17 | 10 | THE WITNESS: Sorry. Repeat the question. |
| 11:46:19 | 11 | Q. BY MR. MITTELSTAEDT: Yeah, any understanding of the |
| 11:46:20 | 12 | potential costs of being a class representative? |
| 11:46:23 | 13 | A. Yes. |
| 11:46:23 | 14 | Q. What's your understanding? |
| 11:46:26 | 15 | A. That there wouldn't be any cost. |
| 11:46:29 | 16 | Q. That it will be free to you? |
| 11:46:31 | 17 | A. Yes. |
| 11:46:31 | 18 | Q. There's only an upside here, as you look at it? |
| 11:46:36 | 19 | MR. CARPENTER: Objection. Misstates her testimony. |
| 11:46:39 | 20 | THE WITNESS: I don't know. I guess. I don't know. |
| 11:46:43 | 21 | Q. BY MR. MITTELSTAEDT: Do you think you have been |
| 11:46:49 | 22 | damaged? |
| 11:46:49 | 23 | A. Yes. |
| 11:46:50 | 24 | Q. By what dollar amount? |
| 11:46:53 | 25 | A. I don't know how to put a dollar amount on that. I |

Page 100

| | | |
|---|---|---|
| 11:46:57 | 1 | don't know. |
| 11:46:58 | 2 | Q. How would you describe the damage to you? |
| 11:47:07 | 3 | A. Not being able to purchase music files from an |
| 11:47:14 | 4 | alternative site and play it on my iPod as I decide and |
| 11:47:22 | 5 | having to pay a set amount. |
| 11:47:30 | 6 | Q. Do you think you've overpaid for the music that |
| 11:47:33 | 7 | you've bought from Apple? |
| 11:47:38 | 8 | A. I think that there are places that I could have |
| 11:47:40 | 9 | obtained it for a less expensive price. |
| 11:47:43 | 10 | Q. Where? |
| 11:47:46 | 11 | A. Any other online store, another online store. |
| 11:47:50 | 12 | Q. Okay. Am I correct from your testimony this morning |
| 11:47:53 | 13 | earlier that you've never looked at another online store; is |
| 11:47:58 | 14 | that correct? |
| 11:47:58 | 15 | A. I personally have not. |
| 11:48:03 | 16 | Q. Has anyone told you what the price would be at |
| 11:48:06 | 17 | another online store? |
| 11:48:07 | 18 | A. Yes. |
| 11:48:07 | 19 | Q. Who's told you? |
| 11:48:08 | 20 | A. I don't know. I have heard people talk about it. |
| 11:48:11 | 21 | Q. Who? |
| 11:48:12 | 22 | A. Friends, people. |
| 11:48:13 | 23 | Q. Okay. Can you identify any of them? |
| 11:48:16 | 24 | A. No. |
| 11:48:16 | 25 | Q. Can you specify what any of those people have told |

Page 101

25 (Pages 98 to 101)

MELANIE TUCKER