*[Counsel listed on signature page]*

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION | Lead Case No.  C 05-00037 YGR [CLASS ACTION] |
| ——————————————— | **JOINT PROPOSED JURY INSTRUCTIONS** |
| This Document Relates To: ALL ACTIONS | Date:    October 29, 2014 Time:    9:30 a.m. Place:   Courtroom 1, 4th Floor Judge:   Hon. Yvonne Gonzalez Rogers |

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

# TABLE OF CONTENTS

**Page**

STATUS OF PROPOSED JURY INSTRUCTIONS ................................................................ 1

PRELIMINARY INSTRUCTIONS .......................................................................................... 3

No. 1:  Duty Of The Jury ................................................................................................ 4

Apple's Proposed Instruction No. 2:  Parties And Class Action Procedure ...................... 5

Plaintiffs' Proposed Instruction No. 2:  Class Actions .................................................... 6

Parties' Statements Regarding Disputed Instruction No. 2 .............................................. 7

Apple's Proposed Instruction No. 3:  Corporate Equality ............................................... 8

Parties' Statements Regarding Disputed Instruction No. 3 .............................................. 9

No. 4:  Statement Of The Case ...................................................................................... 10

Apple's Proposed Instruction No. 5:  Burden Of Proof – Preponderance Of The
        Evidence .......................................................................................................... 11

Plaintiffs' Proposed Instruction No. 5:  Burden Of Proof ............................................. 12

Parties' Statements Regarding Disputed Instruction No. 5 ............................................ 13

Plaintiffs' Proposed No. 6:  Civil And Criminal Cases Distinguished ............................ 16

Parties' Statements Regarding Disputed Instruction No. 6 ............................................ 17

No. 7:  What Is Evidence .............................................................................................. 18

No. 8:  What Is Not Evidence ....................................................................................... 19

No. 9:  Evidence For Limited Purpose .......................................................................... 20

No. 10:  Direct And Circumstantial Evidence ............................................................... 21

No. 11:  Ruling On Objections ..................................................................................... 22

No. 12:  Credibility Of The Witnesses .......................................................................... 23

No. 13:  Conduct Of The Jury ...................................................................................... 24

No. 14:  Taking Notes .................................................................................................. 26

No. 15:  Questions To Witnesses By Jurors .................................................................. 27

No. 16:  Outline Of Trial ............................................................................................. 28

Apple's Proposed Instruction No. 17:  Law Of The Case ............................................. 29

Parties' Statements Regarding Disputed Instruction No. 17 .......................................... 31

INSTRUCTIONS DURING TRIAL ..................................................................................... 34

No. 18:  Stipulations Of Fact ....................................................................................... 35

No. 19:  Deposition In Lieu Of Live Testimony ........................................................... 36

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

No. 20:  Use Of Interrogatories Of A Party ....................................................... 37

No. 21:  Expert Opinion ................................................................................... 38

No. 22:  Charts And Summaries Not Received In Evidence ........................... 39

No. 23:  Charts And Summaries In Evidence .................................................. 40

Apple's Proposed Instruction No. 24:  Testimony Of Steve Jobs ................... 41

Parties' Statements Regarding Disputed Instruction No. 24 .......................... 42

FINAL JURY INSTRUCTIONS ............................................................................ 43

No. 25:  Duty Of Jury ....................................................................................... 44

Apple's Proposed Instruction No. 26A:  The Sherman Act ............................ 45

Plaintiffs' Proposed Instruction No. 26A:  Purpose Of Antitrust Laws ........... 46

Apple's Proposed Instruction No. 26B:  Summary Of Contentions................. 47

Parties' Statements Regarding Disputed Instruction No. 26 .......................... 48

No. 27:  Sherman Act Section 2: Monopolization............................................. 49

Apple's Proposed Instruction No. 28A:  Relevant Product Market ................. 50

Apple's Proposed Instruction No. 28B:  Relevant Market – Necessity Of Proof ............. 51

Plaintiffs' Proposed Instruction No. 28:  Relevant Market ............................. 52

Parties' Statements Regarding Disputed Instruction No. 28 .......................... 53

Apple's Proposed Instruction No. 29:  Existence Of Monopoly Power........................... 54

Plaintiffs' Proposed Instruction No. 29:  Existence Of Monopoly Power ..................... 57

Parties' Statements Regarding Disputed Instruction No. 29 .......................... 61

Apple's Proposed Instruction No. 30:  Willful Acquisition Or Maintenance Of
        Monopoly Power ..................................................................................... 63

Plaintiffs' Proposed No. 30:  Monopolization – Willful Maintenance Of
        Monopoly Power Through Anticompetitive Conduct ....................................... 65

Parties' Statements Regarding Disputed Instruction No. 30 .......................... 68

Apple's Proposed Instruction No. 31:  Legitimate Business Purposes And Product
        Improvements ....................................................................................... 70

Plaintiffs' Proposed Instruction No. 31:  Monopolization – Anticompetitive
        Behavior Through Design Change With No Consumer Benefit ....................... 73

Parties' Statements Regarding Disputed Instruction No. 31 .......................... 75

Apple's Proposed Instruction No. 32:  Plaintiffs' Leveraging Contention
        [*Conditional*] ....................................................................................... 78

Plaintiffs' Proposed Instruction No. 32:  Monopolization – Anticompetitive
        Behavior Through Leveraging.................................................................. 81

Parties' Statements Regarding Disputed Instruction No. 32 .......................... 83

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

No. 33:  Monopolization – Interstate Commerce ............................................. 85

No. 34:  Sherman Act Section 2: Attempt To Monopolize ............................... 86

No. 35:  Anticompetitive Conduct (Attempt To Monopolize) ......................... 87

Apple's Proposed Instruction No. 36:  Specific Intent (Attempt To Monopolize) .......... 88

Plaintiffs' Proposed Instruction No. 36:  Specific Intent To Monopolize A
        Relevant Market ................................................................................. 90

Parties' Statements Regarding Disputed Instruction No. 36 ............................ 91

Apple's Proposed Instruction No. 37:  Dangerous Probability Of Success
        (Attempt To Monopolize) ................................................................... 92

Plaintiffs' Proposed Instruction No. 37:  Dangerous Probability Of Success ................. 94

Parties' Statements Regarding Disputed Instruction No. 37 ............................ 95

Apple's Proposed Instruction No. 38:  Digital Millennium Copyright Act, 17
        U.S.C. § 1201(a)(1)(A) ...................................................................... 96

Plaintiffs' Statement Regarding Apple's Proposed Instruction No. 38 ............ 98

Apple's Proposed Instruction No. 39:  Copyright Infringement, 17 U.S.C. §
        501(a)-(b) ........................................................................................ 101

Plaintiffs' Statement Regarding Apple's Proposed Instruction No. 39 .......... 103

Apple's Proposed Instruction No. 40:  Breach Of Contract – iTunes Terms Of Use ..... 104

Plaintiffs' Statement Regarding Apple's Proposed Instruction No. 40 .......... 106

Apple's Proposed Instruction No. 41:  Breach Of Covenant Of Good Faith And
        Fair Dealing – iTunes Terms Of Use ................................................ 107

Plaintiffs' Statement Regarding Apple's Proposed Instruction No. 41 .......... 109

Apple's Proposed Instruction No. 42:  Intentional Interference With Contractual
        Relations – iTunes Terms Of Use ...................................................... 110

Plaintiffs' Statement Regarding Apple's Proposed Instruction No. 42 .......... 112

Apple's Proposed Instruction No. 43:  Injury And Causation......................... 113

Plaintiffs' Proposed Instruction No. 43A:  Requirement Of Injury .............. 115

Plaintiffs' Proposed Instruction No. 43B:  Injury And Causation................. 116

Parties' Statements Regarding Disputed Instruction No. 43 .......................... 118

Apple's Proposed Instruction No. 44A:  Antitrust Damages – Introduction And
        Purpose ............................................................................................. 120

Apple's Proposed Instruction No. 44B:  Speculation Not Permitted ............. 121

Apple's Proposed Instruction No. 44C:  Causation And Disaggregation ...... 122

Plaintiffs' Proposed Instruction No. 44:  Damages ....................................... 124

Parties' Statements Regarding Disputed Instruction No. 44 .......................... 125

JOINT PROPOSED JURY INSTRUCTIONS                        No. C 05-00037 YGR

Apple's Proposed Instruction No. 45:  Expert Testimony................................................. 127

Plaintiffs'   Statement Regarding Apple's Proposed Instruction No. 45......................... 128

Apple's Proposed Instruction No. 46:  Mitigation ........................................................ 129

Parties' Statements Regarding Disputed Instruction No. 46 ......................................... 130

Apple's Proposed Instruction No. 47:  Trebling Of Damages ....................................... 132

Parties' Statements Regarding Disputed Instruction No. 47 ......................................... 133

No. 48:  Consideration Of Evidence – Conduct Of The Jury........................................ 134

No. 49:  Duty To Deliberate ......................................................................................... 135

No. 50:  Communications With The Court..................................................................... 136

No. 51:  Return Of Verdict .......................................................................................... 137

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

iv

## STATUS OF PROPOSED JURY INSTRUCTIONS

The following chart lists the parties' seventeen proposed preliminary jury instructions and their status as either (A)greed or (D)isagreed:

| Ins. No. | Agree? | Competing Ins. No. | Ins. No. | Agree? | Competing Ins. No. |
|---|---|---|---|---|---|
| 1 | A | | 10 | A | |
| 2 | D | Apple's Prop. No. 2; Plaintiffs' Prop. No. 2 | 11 | A | |
| 3 | D | | 12 | A | |
| 4 | A | | 13 | A | |
| 5 | D | Apple's Prop. No. 5; Plaintiffs' Prop. No. 5 | 14 | A | |
| 6 | D | | 15 | A | |
| 7 | A | | 16 | A | |
| 8 | A | | 17 | D | |
| 9 | A | | | | |

The following chart lists the parties' seven proposed instructions to be during trial and their status as either (A)greed or (D)isagreed:

| Ins. No. | Agree? | Competing Ins. No. | Ins. No. | Agree? | Competing Ins. No. |
|---|---|---|---|---|---|
| 18 | A | | 22 | A | |
| 19 | A | | 23 | A | |
| 20 | A | | 24 | D | |
| 21 | A | | | | |

/ / /

/ / /

/ / /

The following chart lists the parties' twenty-seven proposed final jury instructions and their status as either (A)greed or (D)isagreed:

| Ins. No. | Agree? | Competing Ins. No. | Ins. No. | Agree? | Competing Ins. No. |
|---|---|---|---|---|---|
| 25 | A | | 39 | D | |
| 26 | D | Apple's Prop. Nos. 26A and 26B; Plaintiffs' Prop. No. 26A | 40 | D | |
| 27 | A | | 41 | D | |
| 28 | D | Apple's Prop. Nos. 28A and 28B; Plaintiffs' Prop. No. 28 | 42 | D | |
| 29 | D | Apple's Prop. No. 29; Plaintiffs' Prop. No. 29 | 43 | D | Apple's Prop. No. 43; Plaintiffs' Prop. No. 43A and 43B |
| 30 | D | Apple's Prop. No. 30; Plaintiffs' Prop. No. 30 | 44 | D | Apple's Prop. No. 44A, 44B, and 44C; Plaintiffs' Prop. No. 44 |
| 31 | D | Apple's Prop. No. 31; Plaintiffs' Prop. No. 31 | 45 | D | |
| 32 | D | Apple's Prop. No. 32; Plaintiffs' Prop. No. 32 | 46 | D | |
| 33 | A | | 47 | D | |
| 34 | A | | 48 | A | |
| 35 | A | | 49 | A | |
| 36 | D | Apple's Prop. No. 36; Plaintiffs' Prop. No. 36 | 50 | A | |
| 37 | D | Apple's Prop. No. 37; Plaintiffs' Prop. No. 37 | 51 | A | |
| 38 | D | | | | |

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

1
2
3
4
5
6
7
8

**<u>PRELIMINARY INSTRUCTIONS</u>**

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

## NO. 1:  DUTY OF THE JURY

Ladies and gentlemen: You are now the jury in this case.  It is the Court's duty to instruct you on the law.

You must not infer from these instructions or from anything the Court may say or do as indicating that the Court has an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as the Court gives it to you.  You must follow the law as the Court gives it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following the Court's instructions, you must follow all of them and not single out some and ignore others; they are all important.

### AUTHORITY

Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 1.1B.

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1   <u>**APPLE'S PROPOSED INSTRUCTION NO. 2:  PARTIES AND CLASS ACTION**</u>

2   <u>**PROCEDURE**</u>

3       A party who brings a lawsuit is called a Plaintiff.  A party who is sued in a lawsuit is called

4   a Defendant.  The Defendant in this case is Apple, Inc. ("Apple").

5       This case is a class action.  In a class action, many people and corporations who have

6   similar claims against the same defendant can bring all of their claims in one case rather than

7   bringing separate cases.  The class members in this case are individuals and business who

8   purchased certain models of iPods directly from Apple between September 12, 2006, and

9   March 31, 2009.  When I refer to "Plaintiffs," the Court is referring to all class members,

10   including the individual plaintiffs who are named in this lawsuit and are present in the courtroom.

11   Those individuals sometimes may be referred to as the "named plaintiffs" or "class

12   representatives."

13

14                                    **AUTHORITY**

15   FED. R. CIV. P. 23.

16

17

18

19

20

21

22

23

24

25

26

27

28   **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 2:  CLASS ACTIONS**

Your personal views towards class actions should not preclude you from doing your duty in this regard.

The fact that all of these named Plaintiffs and other members of the Class are not present in the courtroom should not be construed by you in any way as indicating a lack of interest on the part of those named Plaintiffs or Class members in this case.  It is the purpose of the class action procedure to avoid having to bring large numbers of parties to court. When the Court refers to "Plaintiffs" in these instructions, the Court will be referring to both the named Plaintiffs and other members of the Class.

**AUTHORITY**

Fed. R. Civ. P. 23; *In re Apple iPod iTunes Antitrust Litig.*, No.  C 05-00037 JW, 2011 U.S. Dist. LEXIS 134836 (N.D. Cal. Nov. 22, 2011) (order granting motion for class certification).

**Date Submitted:  October 22, 2014**

**PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 2**

**Apple**:

Apple respectfully submits that its version of this instruction is more neutral and beneficial to the jury because it introduces the parties and provides uncontroversial and basic information about class actions.  Plaintiffs' instruction, on the other hand, is heavily slanted, prejudicial, and more likely to confuse the jury, as it does not even attempt to explain what a class action is. Plaintiffs' instruction is also duplicative and unnecessary because the Court's routine instruction (Model Instruction No. 1.1B) already instructs the jury that they "must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy."  To the extent Plaintiffs wish to question potential jurors about their personal views, they may do so in voir dire.

**Plaintiffs**:

Rule 23 permits a representative plaintiff to prosecute claims on behalf of absent class members. If this instruction is not given, the jury may not understand that they will hear only the testimony of one or more of the representative plaintiffs and may draw an adverse or negative inference against absent class members.

Apple's proposed instruction actually increases the likelihood of a juror drawing this conclusion, because it suggests that plaintiffs and class members will be present in the courtroom. Accordingly, the Court should adopt plaintiffs' proposed instruction on class actions in lieu of Apple's proposal.

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

### APPLE'S PROPOSED INSTRUCTION NO. 3:  CORPORATE EQUALITY

Apple and some of the class members are corporations.  A corporation is entitled to the same fair trial as a private individual.  All persons, corporations, partnerships, and other organizations stand equal before the law, and stand equal in this Court.

Therefore, it does not matter that some of the parties are corporations or that some corporations are larger or smaller than others.  You should consider and decide this case as a dispute between those of equal standing.  Each party is entitled to the same fair consideration of the evidence, and a decision from you based on the law as the Court explains it to you.

### AUTHORITY

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI, Docket No. 6036 at 3 (June 28, 2012) (Jury Instructions); Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 4.1 (modified).

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1    **PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 3**

2    **Apple:**

3        Apple's proposed instruction is taken directly from the jury instructions given by Judge

4    Illston in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI, Docket No. 6036 at

5    3 ("Identification of Parties and Corporate Equality") (June 28, 2012).  The Ninth Circuit Manual

6    of Model Civil Jury Instructions also contains a preliminary instruction on corporate equality.

7    Further, this instruction applies to Plaintiffs as some of the class members are corporations.

8    **Plaintiffs:**

9        Apple's proposed instruction – which is not one of the model instructions required by the

10   Court in its Pre-Trial Order No. 1 – is unnecessary.  ECF No. 801.  In this case, there is no danger

11   that a juror will favor one side or the other based upon corporate status, because corporations stand

12   on both sides of this lawsuit  Apple's proposal is also redundant in light of other instructions

13   regarding the duty of the jury.  *See* Instruction No. 1 (jurors "must not be influenced by any

14   personal likes or dislikes, opinions, prejudices, or sympathy") and No. 25 (same).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

## NO. 4:  STATEMENT OF THE CASE

This is an antitrust class action in which Plaintiffs allege that Defendant Apple Inc. engaged in monopolization and attempted monopolization by making certain software and firmware changes in violation of Section 2 of the Sherman Act, 15 U.S.C. §2, and California's Unfair Competition Law.  Plaintiffs' California law claim is one for the Court to decide, not the jury.

Plaintiffs contend that Apple maintained and enhanced its monopoly power in the market for portable digital media players by issuing and activating certain software and firmware changes in iTunes 7.0 and 7.4 (which Plaintiffs refer to as the Keybag Verification Code or KVC and the Database Verification Code or DVC) that terminated the iPod's ability to play audio files legally obtained from sources other than Apple.  Plaintiffs contend these changes harmed competition and resulted in overcharges in the amounts paid for iPods by purchasers of certain iPods between 2006 and 2009.  Plaintiffs contend the challenged software changes were not a genuine product improvement, nor did Apple have legitimate business reasons for the changes.

Apple denies these claims.  This case involves Apple's integrated digital content platform comprised of Apple's iPods, iTunes Store, and iTunes software, a software program that Apple designed to record, manage, and play music on iPods.  Apple maintains that it competed with an integrated system to provide quality products.  Apple also says that it would hurt competition and innovation to require compatibility with unauthorized and unsupported third-party systems or software.  Apple maintains that iTunes 7.0 and 7.4 and related technologies were product and security improvements and that Apple had legitimate business reasons for developing and distributing these updates.  Apple denies that it had monopoly power in any market alleged by the Plaintiffs, and denies that its conduct was anticompetitive or illegal.  Apple also maintains that Plaintiffs were not harmed by any of the conduct that Plaintiffs allege is anticompetitive.


**AUTHORITY**

Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 1.2 (modified).

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B O I E S ,  S C H I L L E R  &  F L E X N E R  L L P
O A K L A N D ,  C A L I F O R N I A

## APPLE'S PROPOSED INSTRUCTION NO. 5:  BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

The Plaintiffs have the burden of proving their claims by a preponderance of the evidence. When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it.


### AUTHORITY

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI, Docket No. 6036 at 2 (June 28, 2012) (Jury Instructions) (verbatim); Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 1.3.

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1    **PLAINTIFFS' PROPOSED INSTRUCTION NO. 5:  BURDEN OF PROOF**

2        When a party has the burden of proof on any claim or affirmative defense by a

3    preponderance of the evidence, it means you must be persuaded by the evidence that the claim or

4    affirmative defense is more probably true than not true.

5        You should base your decision on all of the evidence, regardless of which party presented

6    it.

7

8                                    **AUTHORITY**

9    Ninth Circuit Manual of Model Civil Jury Instructions §1.3 (2007) (verbatim).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

1     <u>**PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 5**</u>

2     <u>**Apple**</u>**:**

3          Plaintiffs object to Apple's proposed instruction because they believe Apple has the burden

4     of proving that it had legitimate business justifications for its purportedly unlawful and

5     anticompetitive conduct and the burden of proving that iTunes version 4.7 was a legitimate

6     product improvement.  Plaintiffs are mistaken.  It is well settled in the Ninth Circuit that Plaintiffs

7     in a Sherman Act, Section 2 case have the burden to prove that the conduct they allege to have

8     been unlawful and anticompetitive lacked any legitimate business justification.  *E.g.*, *Image*

9     *Technical Servs., Inc. v. Eastman Kodak Co.*, 903 F.2d 612, 620 n.9 (9th Cir. 1990) ("The plaintiff

10    also bears the burden of proving lack of legitimate business justifications in a Section 2 claim.");

11    *Calculators Hawaii, Inc. v. Brandt, Inc.*, 724 F.2d 1332, 1339 (9th Cir. 1983) ("It was Calculator's

12    [plaintiff] burden to prove that Brandt's [defendant] acts were predatory and not predominantly

13    motivated by legitimate business purposes.") (internal quotations omitted).  Thus, for example, in

14    *Novell, Inc. v. Microsoft Corp.*, a Section 2 case, the district court instructed the jury that the

15    "burden is on the plaintiff in a civil action, such as this, to prove every essential element of each of

16    her/his claims by a preponderance of the evidence," No. 2:04-cv-01045-JFM (D. Utah Dec. 19,

17    2011) (Dkt. 388) (Jury Instructions) at 3, and that, because Novell  had to "prove by a

18    preponderance of the evidence that Microsoft unlawfully maintained its monopoly power" in the

19    relevant market—which Plaintiffs here do to dispute they must prove as to Apple's conduct—

20    Novell had to prove that the alleged anticompetitive conduct was not conduct that had a legitimate

21    business purpose, *id.* at 8-9; *see also id.* at 9 ("You should consider all the characteristics of the

22    relevant market and evaluate Microsoft's conduct as a whole.").  The ABA Model Jury

23    Instructions in Civil Antitrust Cases (2005 ed.), C-26-30 (Monopolization – General, *Willful*

24    *Acquisition or Maintenance of Monopoly Power*) and C-88-89 (Attempt to Monopolize,

25    *Anticompetitive Conduct*) likewise do not place the burden of proof on the defendant with regard

26    to Section 2 claims.

27          Plaintiffs similarly have the burden to show that the product redesign they allege was

28    purportedly illegal and anticompetitive was not a legitimate product improvement.  *Foremost Pro*

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

13

1   *Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 545 (9th Cir. 1983), *overruled on other grounds*

2   *by Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034 (9th Cir. 1987) ("In order to state a claim for relief

3   under Section 2, product introduction must be alleged to involve some associated conduct which

4   constitutes an anticompetitive abuse or leverage of monopoly power, or a predatory or

5   exclusionary means of attempting to monopolize the relevant market, rather than aggressive

6   competition on the merits."); *Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*,

7   592 F.3d 991, 1000 (9th Cir. 2010) ("If a monopolist's design change is an improvement, it is

8   'necessarily tolerated by the antitrust laws'").  That is because even a monopolist is not under any

9   duty to help competitors "survive or expand" nor to "have constricted its product development so

10  as to facilitate the sales of rival products."  *Cal. Comp. Prods. Inc. v. Int'l Bus. Machs. Corp.*, 613

11  F.2d 727, 744 (9th Cir. 1979); *Foremost Pro*, 703 F.2d at 545 (same).  In contrast to the balancing

12  test applied in evaluating contractual restraints under the rule of reason in a Sherman Act, Section

13  1 case, in evaluating the product redesign, "[t]here is no room in this analysis for balancing the

14  benefits or worth of a product improvement against its anticompetitive effects."  *Tyco*, 592 F.3d at

15  1000.

16      **Plaintiffs:**

17          The Court should reject Apple's proposed instruction in favor of plaintiffs' proposal.

18          Apple omits any reference to its burden of proof for its defenses.  Plaintiffs do not dispute

19  that they bear the burden of proving the elements of their monopolization and attempted

20  monopolization claims, but Apple's proposed instruction incorrectly suggests to the jury that (i)

21  Apple is not pursuing any affirmative defenses, which it is, and (ii) that plaintiffs bear the burden

22  of disproving Apple's affirmative defenses, which is incorrect.  Apple is pursuing several

23  affirmative defenses upon which it has the burden of proof.  Although these affirmative defenses

24  are irrelevant and have been waived by Apple (*see* Plaintiffs' Argument, Apple's Proposed

25  Instruction Nos. 44-48), if Apple is permitted to present them to the jury then the jury must be

26  instructed that Apple bears the burden of proof.

27          Apple's proposed instruction also masks the appropriate burden of proof on Apple's

28  defense that its conduct was procompetitive.  It is Apple's burden to establish that the KVC and

14

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1   DVC product changes were genuine product improvements that provided "new benefits to

2   consumers," and were adopted for procompetitive, legitimate business reasons. *Allied Orthopedic*

3   *Appliances Inc. v. Tyco Health Care Group*, 592 F.3d 991, 998 (9th Cir. 2009);*William Inglis &*

4   *Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1041 (9th Cir. 1981).  Further, although

5   Apple claims that it had "legitimate business reasons" for its conduct, its proposed instruction fails

6   to inform the jury that any asserted justification is rebuttable by plaintiffs.  *See Image Tech. Servs.*

7   *v. Eastman Kodak*, 125 F.3d 1195, 1212 (9th Cir. 1997) ("A plaintiff may rebut an asserted

8   business justification by demonstrating either that the justification does not legitimately promote

9   competition or that the justification is pretextual."); *see also id.* at 1219 (even claims of

10  intellectual property justifications may be pretext).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1

## PLAINTIFFS' PROPOSED NO. 6:  CIVIL AND CRIMINAL CASES DISTINGUISHED

2

There are two kinds of cases that come to court, criminal cases and civil cases.  Criminal

3

cases are when the government charges a person or company with a crime.  Some of you may

4

have sat on juries in criminal cases before, and others of you may have watched movies or

5

television shows like "Law and Order" where criminal cases brought by the government are

6

shown.  This is not a criminal case. This is a civil case.  There are significant differences between

7

criminal cases and civil cases. One significant difference is that in criminal cases, the burden of

8

proof on the government is to prove its case "beyond a reasonable doubt."  That standard – proof

9

beyond a reasonable doubt – does not apply here.  In this civil case, you should put that standard

10

of proof out of your minds.

11

12

## AUTHORITY

13

Adapted from: Pattern Criminal Jury Instructions for the Seventh Circuit §1.03 (2012); Eighth

14

Circuit Civil Jury Instructions §3.04 (2013); Kevin O'Malley, Jay E. Grenig & William C. Lee,

15

Federal Jury Practice and Instructions §104.01 (2011).

16

17

18

19

20

21

22

23

24

25

26

27

28

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

1    **PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 6**

2    **Apple:**

3        Plaintiffs' proposed instruction it is not part of the Ninth Circuit Manual of Model Jury

4    Instructions in Civil Cases and is unnecessary and duplicative of Model Instruction § 1.3 on the

5    burden of proof.  It is also potentially confusing.  This instruction is not found in the sources

6    Plaintiffs cite—Section 104:01 of the Federal Jury Practice and Instructions makes clear that

7    distinguishing between burdens of proof is optional, and the Seventh Circuit's criminal

8    instructions are irrelevant.  Further, the Eight Circuit Civil Jury Instructions provide in its

9    instructions that Section 3.04 is "intended to accommodate the various formulations" of the

10   burden of proof "used in different jurisdictions" in that Circuit.  The instruction does not apply

11   here.

12   **Plaintiffs:**

13       This instruction should be given because jurors are likely to be more familiar with the

14   burden of proof in criminal cases from television shows and movies than the civil standard, and

15   could mistakenly apply the criminal standard of proof to this civil case unless they are told that the

16   civil preponderance of the evidence standard is significantly different from the criminal "beyond a

17   reasonable doubt" standard.

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS                                      No. C 05-00037 YGR

1

## NO. 7:  WHAT IS EVIDENCE

2      The evidence you are to consider in deciding what the facts are consists of:

3      1.      the sworn testimony of any witness;

4      2.      the exhibits which are received into evidence; and

5      3.      any facts to which the lawyers have agreed.

6

7                                **AUTHORITY**

8      Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 1.6.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28     **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

## NO. 8:  WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  The Court will list them for you:

(1)     Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the Court's ruling on it.

(3)     Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when the Court gives a limiting instruction, you must follow it.

(4)     Anything you may have seen or heard when the Court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.


### AUTHORITY

Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 1.7.


**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

1          **NO. 9:  EVIDENCE FOR LIMITED PURPOSE**

2          Some evidence may be admitted for a limited purpose only.

3          When the Court instructs you that an item of evidence has been admitted for a limited

4     purpose, you must consider it only for that limited purpose and for no other.

5

6                              **AUTHORITY**

7     Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 1.8.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

## NO. 10:  DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

## AUTHORITY

Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 1.9.

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                      No. C 05-00037 YGR

1

## NO. 11:  RULING ON OBJECTIONS

2          There are rules of evidence that control what can be received into evidence.  When a

3   lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that

4   it is not permitted by the rules of evidence, that lawyer may object.  If the Court overrules the

5   objection, the question may be answered or the exhibit received.  If the Court sustains the

6   objection, the question cannot be answered, and the exhibit cannot be received.  Whenever the

7   Court sustains an objection to a question, you must ignore the question and must not guess what

8   the answer might have been.

9          Sometimes the Court may order that evidence be stricken from the record and that you

10  disregard or ignore the evidence.  That means that when you are deciding the case, you must not

11  consider the evidence that the Court told you to disregard.

12

13                                    **AUTHORITY**

14  Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 1.10.

15

16

17

18

19

20

21

22

23

24

25

26

27

28  **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

## NO. 12:  CREDIBILITY OF THE WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case and any bias or prejudice;

(5)     whether other evidence contradicted the witness's testimony;

(6)     the reasonableness of the witness's testimony in light of all the evidence; and

(7)     any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

### AUTHORITY

Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 1.11.

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

## **NO. 13:  CONDUCT OF THE JURY**

The Court will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on the Court's instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless the Court tells you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room, blog, Web site or other feature.  This applies to communicating with your fellow jurors until the Court gives you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; do not conduct any research of any party, or lawyer or court personnel; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings[, *and a mistrial could result that would require the*

*entire trial process to start over*].  If any juror is exposed to any outside information, please notify the Court immediately.

## AUTHORITY

Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 1.12.

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1

## NO. 14:  TAKING NOTES

2    If you wish, you may take notes to help you remember the evidence.  If you do take notes,

3 please keep them to yourself until you and your fellow jurors go to the jury room to decide the

4 case.  Do not let note-taking distract you.  When you leave, your notes should be left in the

5 [*courtroom*] [*jury room*] [*envelope in the jury room*].  No one will read your notes.  They will be

6 destroyed at the conclusion of the case.

7    Whether or not you take notes, you should rely on your own memory of the evidence.

8 Notes are only to assist your memory.  You should not be overly influenced by your notes or those

9 of your fellow jurors.

10

11    **AUTHORITY**

12 Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 1.14.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                   No. C 05-00037 YGR

## NO. 15:  QUESTIONS TO WITNESSES BY JURORS

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness.  You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness.  If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before the Court excuses each witness, the Court will offer you the opportunity to write out a question on a form provided by the court.  Do not sign the question.  The Court will review the question with the attorneys to determine if it is legally proper.  There are some proposed questions that the Court will not permit, or will not ask in the wording submitted by the juror.  This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case.  If the Court does not ask a proposed question, or if the Court rephrases it, do not speculate as to the reasons.  Do not give undue weight to questions you or other jurors propose.  You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, the Court is not requesting or suggesting that you do so.  It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

### AUTHORITY

Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 1.15.

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

### <u>NO. 16:  OUTLINE OF TRIAL</u>

Trials proceed in the following way:  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The Plaintiffs will then present evidence, and counsel for Apple may cross-examine.  Then Apple may present evidence, and counsel for the Plaintiffs may cross-examine.

After the evidence has been presented, the Court will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

### **AUTHORITY**

Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 1.19.

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

1

## APPLE'S PROPOSED INSTRUCTION NO. 17:  LAW OF THE CASE

2      During the trial you will hear evidence and argument about Apple's development of an

3   integrated system comprised of iTunes, iPods, and the iTunes Store.  Apple's development of an

4   integrated system to be inoperable with certain competing products and technologies was lawful

5   and not anticompetitive, regardless of the integrated system's effect on competitors' products.1

6   The development and distribution of interoperable products that are incompatible with

7   competitors' products can increase competition by enhancing product variety and consumer

8   choice.  You may not consider evidence of the incompatibility of Apple's products with the

9   products of its competitors to be anticompetitive or illegal, or to support any finding of liability or

10   damages against Apple.2

11      During the trial you will also hear evidence and argument about Apple's development and

12   distribution of iTunes version 4.7 and related technology.   Apple's development and distribution

13   of iTunes 4.7 and related technologies was lawful and not anticompetitive, even though iTunes 4.7

14   rendered third-party software incompatible with iPods.3  You may not consider iTunes 4.7 to be

15

16

17   _____

18      1 See Order Granting Def.'s Mot. For J. on the Pleadings at 9 (Oct. 30, 2009) (Dkt. 274)
   (held as a matter of law that "the technological interrelationship between iTunes and iPods" is
19   neither illegal nor anticompetitive"); see also Order Granting in Part Def.'s Mot. For J. on the
   Pleadings at 9 (May 15, 2009) (Dkt. 213) ("current antitrust jurisprudence does not, as a per se
20   matter, prohibit conduct that merely limits consumers' 'free choice' in their purchase of
   complimentary products").
21      2 See Order Decertifying Classes at 9 (Dec. 21, 2009) (Dkt. 303) (held as a matter of law
   that "Plaintiffs must allege willful conduct beyond interoperability and incompatibility" with
22   regard to their Section 2 claims, because the "Sherman Act does not outlaw monopoly power
   gained from the popularity of interoperable products even if incompatible with the products of
23   competitors").
      3 See Order Granting In Part And Denying In Part Def.'s Mot. For Summ. J. at 8, 11 (May
24   19, 2011) (Dkt. 627) (held as a matter of law that "iTunes 4.7 was a genuine [product]
   improvement," regardless of the fact "that iTunes 4.7 'introduced a radically different' encryption
25   technology which was 'much more resistant to attack' than previous versions of the software");
   see also Somers v. Apple, Inc., 729 F.3d 953, 966-67 (9th Cir. 2013) (affirming dismissal of the
26   indirect purchaser claims based on "Apple's use of software updates" and holding that "limitation
   of consumer choice, in itself, does not amount to 'antitrust injury;'" and that a consumer's
27   "inability to freely play her DRM-encoded music is not comparable to the loss of 'free choices
   between market alternatives,'" and thus "is not an 'antitrust injury' that affects competition").

28

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1   anticompetitive or illegal, or consider it to support any finding of liability or damages against

2   Apple.  Only the legality of iTunes 7.0 and iTunes 7.4 are at issue in this case.4

3        Although you may not consider the incompatibility of Apple's products with the products

4   of its competitors or iTunes 4.7 to be anticompetitive or illegal, you are not required to ignore such

5   evidence.  To the contrary, you may consider such evidence in understanding the purpose and

6   context of Apple's conduct with respect to iTunes 7.0 and 7.4 that Plaintiffs allege to be illegal

7   and anticompetitive.

8

9                                    **AUTHORITY**

10  *E.g.*, *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 542, (9th Cir. 1983) ("The

11  creation of technological incompatibilities, without more, does not foreclose competition; rather, it

12  increases competition by providing consumers with a choice among differing technologies,

13  advanced and standard, and by providing competing manufacturers the incentive to enter the new

14  product market by developing similar products of advanced technology"; holding that "the

15  introduction of technologically related products, even if incompatible with the products offered by

16  competitors" is not anticompetitive and "is of no assistance" to establishing Section 2 liability);

17  *Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 623 (S.D.N.Y.

18  2013) (holding "Amazon's decision to use device-restrictive DRM and to restrict the e-books that

19  can be read on Kindle devices and apps to e-books purchased from Amazon" to be lawful under

20  Section 2).

21

22  **Date Submitted:  October 22, 2014**

23

24  _____

25       [4] *See* Order Granting In Part And Denying In Part Def.'s Mot. For Summ. J. at 12-13 (May
26  19, 2011) (Dkt. 627) (denying summary judgment "on Plaintiffs' Section 2 claim as to iTunes 7.0"
    because, "[i]n light of the parties' conflicting evidence, the Court finds that it is unable to
27  determine, as a matter of law, that iTunes 7.0 was introduced to guard against the risk of
    corruption and was therefore a genuine product improvement").

28

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

1     **PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 17**

2     **Apple:**

3          Apple's proposed instruction on the law of the case is the subject of two pending motions

4     *in limine*—Apple's Motion *In Limine* No. 3 to exclude and to strike evidence or argument contrary

5     to the Court's 2011 Summary Judgment Order (Dkt. 804 at 10-13) and Plaintiffs' Motion *In*

6     *Limine* No. 9: "Dismissed Claims" (Dkt. 820 at 22-24).  As Apple explains in opposition to

7     Plaintiffs' Motion *In Limine* No. 9 (*see* Dkt. 836 at  22-25), Plaintiffs agree that the jury will hear

8     evidence and testimony about Apple's integrated platform, Pls.' Opp. to Def.'s Mot. *In Limine* and

9     Mot. To Strike at 11 (Oct. 14, 2014) (Dkt. 824-3) (arguing such evidence is "highly relevant"),

10    and that "Apple's actions during the development of 4.7 plainly inform and color later

11    developments at the heart of this case and are thus relevant and admissible," *id.* at 10.  Discussion

12    at trial of iTunes 4.7 also is required because Plaintiffs' expert, Dr. Noll, uses it in his regression

13    in ways that conflate lawful and purportedly unlawful conduct.  Accordingly, Apple respectfully

14    submits that the jury must be instructed on the Court's prior rulings making clear that Apple's

15    development of  an integrated platform to be inoperable with certain competitors' products and

16    Apple's development and distribution of iTunes 4.7, even though it rendered third-party software

17    (including RealNetworks's) incompatible with iPods, is neither illegal nor anticompetitive and

18    cannot use such evidence to support a finding of liability on Plaintiffs' remaining Section 2

19    claims.  *See* Apple's Opp. to Pls.' MIL No. 9 at 23-25 (Dkt. 836) (courts regularly instruct on law

20    of the case).  Apple has included footnotes in this instruction solely for the Court's convenience to

21    indicate the prior rulings supporting each of the statements of the law of the case included in this

22    instruction.

23         **Plaintiffs:**

24         Apple's proposed instruction is improper for several reasons.

25         First, Apple's proposed instruction improperly refers to rulings by this Court.  Clearly,

26    prior judicial determinations and the reasons therefore are not to be disclosed to the jury.

27         Second, the instruction misrepresents the law and prior rulings by this Court.  For example,

28    Apple recommends telling the jury that the Court "has already found that Apple's development of

B O I E S ,  S C H I L L E R  &  F L E X N E R   L L P

O A K L A N D ,  C A L I F O R N I A

31

an integrated system that was not interoperable with certain competing products was lawful and not anti-competitive," and that the "development and distribution of interoperable products that are incompatible with competitors' products can increase competition." This instruction improperly suggests that the Court held that the integration of iTunes, iPods and the iTunes Store "was lawful" under any circumstances. Judge Ware held that Apple's integrated approach "*by itself* does not constitute anticompetitive conduct." ECF No. 627 (2011 SJ Order) at 4 (emphasis added). As Judge Ware recognized in the several orders relied upon by Apple, and as numerous courts have held, there are circumstances under which designed incompatibility can violate federal antitrust laws. *See, e.g., Eastman Kodak Company v. Image Technical Services, Inc.*, 504 U.S. 451 (1991) (affirming denial of summary judgment).

In this case, Judge Ware held that the challenged product design changes could violate Section 2. ECF No. 627 at 11-13 ("In light of the parties' conflicting evidence, the Court finds that it is unable to determine, as a matter of law, that iTunes 7.0 was introduced to guard against the risk of corruption and was therefore a genuine product improvement."). Plaintiffs intend to show that Apple's design change provided no new benefit to consumers, and did not constitute a genuine product improvement. *Allied Orthopedic*, 592 F.3d at 998-99 (changes in product design that provide no new benefit to consumers may constitute an unlawful means of maintaining a monopoly); *In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1146 (N.D. Cal. 2011) ("At issue is whether Defendant's introduction of iTunes 7.0 constituted a genuine improvement."). Apple's instruction fails to recognize, as the Ninth Circuit did in *Tyco*, that "changes in product design are not immune from antitrust scrutiny and in certain cases may constitute an unlawful means of maintaining a monopoly under Section 2." *Tyco*, 592 F.3d at 998.

In addition, Apple's proposed instruction fails to mention that plaintiffs may prove their claim by showing that Apple's conduct served no purpose "other than protecting its . . . monopoly." *Allied Orthopedic*, 592 F.3d at 998 (quoting *United States v. Microsoft*, 253 F.3d 34, 66-67 (D.C. Cir. 2001)); *see also Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008) ("Anticompetitive conduct is behavior that tends to impair the opportunities of

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1    rivals and either does not further competition on the merits or does so in an unnecessarily

2    restrictive way.") (citing *Aspen Skiing*, 472 U.S. at 605 n.32).

JOINT PROPOSED JURY INSTRUCTIONS                                      No. C 05-00037 YGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTIONS DURING TRIAL**

JOINT PROPOSED JURY INSTRUCTIONS                          No. C 05-00037 YGR

1

## NO. 18:  STIPULATIONS OF FACT

2          The parties have agreed to certain facts [*to be placed in evidence as Exhibit __*] [*that will*

3  *be read to you*].  You should therefore treat these facts as having been proved.

4

5                                    **AUTHORITY**

6  Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 2.2.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

1

## <u>NO. 19:  DEPOSITION IN LIEU OF LIVE TESTIMONY</u>

2          A deposition is the sworn testimony of a witness taken before trial.  The witness is placed

3  under oath to tell the truth and lawyers for each party may ask questions.  The questions and

4  answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person

5  may be used at the trial.

6          The deposition of [*witness*] was taken on [*date*].  You should consider deposition

7  testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way

8  as if the witness had been present to testify.

9

10                              **AUTHORITY**

11  Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 2.4.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

1

**NO. 20:  USE OF INTERROGATORIES OF A PARTY**

2      Evidence [*will now be*] [*was*] presented to you in the form of answers of one of the parties

3   to written interrogatories submitted by the other side.  These answers [*have been*] [*were*] given in

4   writing and under oath, before the actual trial, in response to questions that were submitted in

5   writing under established court procedures.  You should consider the answers, insofar as possible,

6   in the same way as if they were made from the witness stand.

7

8                                    **AUTHORITY**

9   Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 2.10.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

### NO. 21:  EXPERT OPINION

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

### AUTHORITY

Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 2.11.

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

## NO. 22:  CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts, summaries, and slides not received in evidence [*may be*] [*have been*] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

## AUTHORITY

Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 2.12.

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

1

## NO. 23:  CHARTS AND SUMMARIES IN EVIDENCE

2

Certain charts and summaries [*may be*] [*have been*] received into evidence to illustrate

3

information brought out in the trial.  Charts and summaries are only as good as the underlying

4

evidence that supports them.  You should, therefore, give them only such weight as you think the

5

underlying evidence deserves.

6

7

## AUTHORITY

8

Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 2.13.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                          No. C 05-00037 YGR

1     **APPLE'S PROPOSED INSTRUCTION NO. 24:  TESTIMONY OF STEVE JOBS**

2         You are about to see videotaped testimony of Steve Jobs, the former CEO of Apple.

3     Mr. Jobs was deposed on April 12, 2011.  At the time, Mr. Jobs was on medical leave from Apple.

4     Mr. Jobs died of complications relating to pancreatic cancer six months later, on October 5, 2011.

28    **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                          No. C 05-00037 YGR

1   **PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 24**

2   **Apple:**

3   Apple respectfully submits that this instruction is necessary because Plaintiffs have

4   designated testimony from the deposition of Steve Jobs, which was taken when Mr. Jobs was on

5   medical leave from Apple for a serious illness.  He died six months later.  Mr. Jobs testified

6   correctly, in response to a question from Plaintiffs about his title, that he was the CEO of Apple,

7   but Plaintiffs did not ask him whether he was currently actively serving in that role and in fact he

8   was on medical leave.  Thus, the deposition testimony, if played, is incomplete under Federal Rule

9   of Evidence 106; it may leave the jury with an incorrect understanding of Mr. Jobs's

10  responsibilities at Apple at the time he was deposed.  This proposed instruction is also necessary

11  because most of Plaintiffs' designations are to Mr. Jobs's testimony that he did not remember

12  certain documents or events, and Plaintiffs are likely to use those statements to cast a negative

13  light on Mr. Jobs that would be prejudicial and unfair under the circumstances.  Mr. Jobs was

14  deposed in 2011, at a time he was very ill, about events that occurred in 2004.  This instruction is

15  necessary to put the circumstances of Mr. Jobs's testimony in context to prevent unfair prejudice.

16  **Plaintiffs:**

17  Apple presents no authority for this instruction because there is none.  This instruction is

18  improper for many reasons.  First, Apple's proposed instruction is a transparent attempt to elicit

19  sympathy for Apple (and Mr. Jobs) and prejudice the jury against plaintiffs.  Second, this is not

20  the appropriate subject of a jury instruction, as it does not attempt to educate the jurors on the law

21  applicable to the facts of the case.  *See Gowski v. Peake*, 682 F.3d 1299, 1315 (11th Cir. 2012)

22  ("The purpose of jury instructions is to give the jury a clear and concise statement of the law

23  applicable to the facts of the case."); *Bucyrus-Erie Co. v. Gen. Prods. Corp.*, 643 F.2d 413, 418

24  (6th Cir. 1981) ("The purpose of jury instructions is to inform the jury on the law and to provide

25  proper guidance and assistance in reaching its verdict.").

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1
2
3
4
5
6
7
8                **<u>FINAL JURY INSTRUCTIONS</u>**
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOINT PROPOSED JURY INSTRUCTIONS          No. C 05-00037 YGR

1

## NO. 25:  DUTY OF JURY

2      Members of the Jury:  Now that you have heard all of the evidence [*and the arguments of*

3  *the attorneys*], it is the Court's duty to instruct you as to the law of the case.

4      [*Each of you has received a copy of these instructions that you may take with you to the*

5  *jury room to consult during your deliberations.*]

6      *or*

7      [*A copy of these instructions will be sent with you to the jury room when you deliberate.*]

8      You must not infer from these instructions or from anything the Court has said or done

9  during this trial as indicating that the Court has an opinion regarding the evidence or what your

10  verdict should be.

11      It is your duty to find the facts from all the evidence in the case.  To those facts you will

12  apply the law as the Court gives it to you.  You must follow the law as the Court gives it to you

13  whether you agree with it or not.  And you must not be influenced by any personal likes or

14  dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on

15  the evidence before you.  You will recall that you took an oath to do so.

16      In following the Court's instructions, you must follow all of them and not single out some

17  and ignore others; they are all important.

18

19                    **AUTHORITY**

20  Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 1.1C.

21

22

23

24

25

26

27

28  **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

1

**APPLE'S PROPOSED INSTRUCTION NO. 26A:  THE SHERMAN ACT**

2      This case involves a federal antitrust law called the Sherman Act.  The purpose of the

3  Sherman Act is to preserve free and unfettered competition in the marketplace.  The Sherman Act

4  rests on the central premise that competition produces the best allocation of our economic

5  resources, the lowest prices, the highest quality, and the greatest material progress.

6      Plaintiffs bring two claims under Section 2 of the Sherman Act:  unlawful monopolization

7  and unlawful attempted monopolization.  First, the Court will summarize the parties' contentions.

8  Second, the Court will instruct you on the elements of an unlawful monopolization claim.  Third,

9  the Court will instruct you on the elements of an unlawful attempted monopolization claim.

10  Fourth, the Court will instruct you on how to decide if, assuming you find that Apple has violated

11  Section 2 of the Sherman Act as alleged by Plaintiffs, whether Plaintiffs were injured by Apple's

12  conduct.  Finally, the Court will instruct you on how to decide if Plaintiffs are entitled to recover

13  any damages from Apple, and how to calculate those damages.

14

15                    **AUTHORITY**

16  ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) A-2; *Novell, Inc. v. Microsoft*

17  *Corp.*, Case No. 2:04-cv-01045-JVM, Docket No. 388 at 7-8 (D. Utah December 19, 2011) (Jury

18  Instructions), *aff'd Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064 (10th Cir. 2013); *cert. denied*,

19  134 S. Ct. 1947 (2014).

20

21

22

23

24

25

26

27

28  **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                          No. C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1

2

## **PLAINTIFFS' PROPOSED INSTRUCTION NO. 26A:  PURPOSE OF ANTITRUST LAWS**

3      The Court will now discuss Plaintiffs' claims.  Plaintiffs contend that Apple violated

4  Section 2 of the Sherman Act, a federal antitrust law, by willfully maintaining a monopoly or

5  attempting to maintain a monopoly.  The purpose of the Sherman Act is to preserve free and

6  unfettered competition in the marketplace.  The antitrust laws rest on the central premise that

7  competition produces the best allocation of our economic resources, the lowest prices, the highest

8  quality, and the greatest material progress.

9

10                                    **Authority**

11 ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases, Instruction at A-

12 2 (2005) (modified); *Smithkline Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-5702-CW, ECF No.

13 485, filed Mar. 24, 2011 (N.D. Cal.) (Wilken, J.) (Jury Instructions at p. 8).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1    **APPLE'S PROPOSED INSTRUCTION NO. 26B:  SUMMARY OF CONTENTIONS**

2         The Court will now summarize for you each side's contentions in this case.  The Court will

3    then tell you what each side must prove to win on each of its contentions.

4         Plaintiffs in this case seek money damages from Apple for [*Plaintiffs to insert*].

5         Apple denies these claims.  Apple denies that it had monopoly power in the alleged

6    Portable Digital Media Player Market because it did not have the power to control prices or

7    exclude competition. Apple contends that competition in the sale of portable digital media players

8    was vigorous at all times during the class period.  Apple also denies that its conduct was

9    anticompetitive or illegal.  Apple maintains that developing and distributing integrated products

10   that are incompatible with competing products is lawful competition, and that Apple had no duty

11   to assist competitors seeking to undo that integration.  Apple also maintains that iTunes 7.0 and

12   iTunes 7.4 were product improvements and that Apple had legitimate business reasons for

13   developing and distributing iTunes 7.0 and iTunes 7.4.  Further, Apple maintains that none of the

14   alleged conduct caused any injury to the Plaintiffs.

15

16                               **AUTHORITY**

17   *Novell, Inc. v. Microsoft Corp.*, No. 2:04-cv-01045-JVM, Docket No. 388 at 7-8 (D. Utah Dec. 19,

18   2011) (Jury Instructions), *aff'd Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064 (10th Cir. 2013);

19   *cert. denied*, 134 S. Ct. 1947 (2014).

20

21

22

23

24

25

26

27

28   **Date Submitted:  October 22, 2014**

47

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1    **PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 26**

2        **Apple:**

3        **T**he implicit identification in Plaintiffs' instruction of Plaintiffs and Plaintiffs' claims with

4    the purpose of the antitrust laws, and with the Court, in a one-sided statement of Plaintiffs' claims

5    against Apple is confusing and prejudicial.  Apple respectfully submits that the jury should be

6    reminded of the parties' contentions by the Court in a balanced and free-standing instruction that

7    does not identify either party with the purpose of the federal antitrust laws or the Court.  Apple

8    provides such a proposed instruction above in Apple's Proposed Instructions Nos. 26A and 26B.

9    Apple maintains that the conduct challenged by the Plaintiffs in this case was entirely consistent

10   with the purposes of the antitrust laws, and for the Court to suggest that those purposes be

11   evaluated solely within the context of Plaintiffs' liability theory is unduly prejudicial.

12       **Plaintiffs:**

13       *Apple's Proposed No. 26A.*  This proposed instruction is drawn verbatim from the ABA

14   Model Instructions, except that plaintiffs propose the addition of a short introductory sentence

15   describing plaintiffs' claims, as the court did in *Smithkline*, in order to provide context.

16       Apple, on the other hand, has proposed two overlapping instructions where one would

17   suffice.

18       *Apple's Proposed No. 26B.*  Apple's proposed post-trial instruction summarizing the

19   parties' contentions is unnecessary and redundant.  By the time this instruction would be read to

20   the jury, the jury will already have a clear understanding of the parties' positions and will have

21   already been provided numerous summaries of the parties' contentions.  At the beginning of the

22   case, the Court will read to the jury a Statement of the Case which summarizes the claims of each

23   party (and tracks Apple's proposed instruction).  It will also be given a brief summary of the

24   parties' claims.  *See* Proposed Instruction No. 4 (Claims).  Then, for two weeks, the jury will

25   personally observe opening statements and many hours of evidentiary presentation by the parties.

26   And finally, of course, during closing arguments, which will be delivered immediately prior to the

27   delivery of the jury instructions, the parties will lay out their respective contentions and ask the

28   jury to deliver a verdict in their favor.

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

## NO. 27:  SHERMAN ACT SECTION 2:  MONOPOLIZATION

Plaintiffs allege that they were injured by Apple's unlawful monopolization between September 2006 and March 2009 of what Plaintiffs have referred to as the "Portable Digital Media Player Market."  To prevail on this claim, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

**First,** that the Portable Digital Media Player Market the Plaintiffs allege was a valid antitrust market;

**Second,** that Apple possessed monopoly power in that market between September 2006 and March 2009;

**Third,** that Apple "willfully" maintained monopoly power that market by engaging in anticompetitive conduct;

**Fourth,** that Apple's conduct occurred in or affected interstate commerce; and

**Fifth,** that Plaintiffs were injured in their business or property because of Apple's anticompetitive conduct.

If you find that Plaintiffs have failed to prove any of these elements by a preponderance of the evidence, then you must find for Apple on this claim.  If you find that Plaintiffs have proved each of these elements by a preponderance of the evidence, then you must find for Plaintiffs on this claim.


### AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) C-2.

**Date Submitted:  October 22, 2014**

1  **APPLE'S PROPOSED INSTRUCTION NO. 28A:  RELEVANT PRODUCT MARKET**

2      The basic idea of a relevant product market is that the products within it are reasonable

3  substitutes for each other from the buyer's point of view; that is, the products compete with each

4  other.  In other words, the relevant product market includes the products that a consumer believes

5  are reasonably interchangeable or reasonable substitutes for each other.  This is a practical test

6  with reference to actual behavior of buyers and marketing efforts of sellers.  Products need not be

7  identical or precisely interchangeable as long as they are reasonable substitutes.

8      In this case, Plaintiffs contend that the relevant product market is the "Portable Digital

9  Media Player Market," which Plaintiffs define as "the market for portable consumer electronic

10  battery-powered devices that can store and play large numbers of digital media files."  By contrast,

11  Apple maintains that Plaintiffs have failed to prove the relevant product market because Plaintiffs'

12  definitions of the alleged market is too narrow and fails to include reasonably interchangeable

13  substitute products.  Apple contends that the relevant market includes at least smart phones and

14  other handheld devices capable of playing music.

15

16                          **AUTHORITY**

17  ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) C-7-9 (calling for a statement of

18  the parties' contentions with respect to market definition in this instruction).

19

20

21

22

23

24

25

26

27

28  **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1

2

**APPLE'S PROPOSED INSTRUCTION NO. 28B:  RELEVANT MARKET – NECESSITY OF PROOF**

3

4

5

6

   If, after considering all the evidence, you find that the Plaintiffs have proven by a preponderance of the evidence the relevant product market they have alleged existing between September 2006 and March 2009, then you must find that Plaintiffs have met the relevant product market requirement and you must consider the remaining elements of this claim.

7

8

9

   If you find that the Plaintiffs have failed to prove by a preponderance of the evidence the relevant product market between September 2006 and March 2009, then you must find for Apple and against the Plaintiffs on their monopolization and attempted monopolization claims.

10

11

**AUTHORITY**

12

ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) C-15 (modified).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 28:  RELEVANT MARKET**

2

To prove their monopolization claim, one of the elements plaintiffs must prove by a

3

preponderance of the evidence is that Apple had monopoly power in a relevant antitrust market.

4

Plaintiffs define this market as the market for Portable Digital Media Players.  Apple contends that

5

plaintiffs have failed to define a relevant antitrust market.  Defining the relevant market is

6

essential to determining whether Apple had monopoly power because whether Apple had

7

monopoly power depends on the contours of the market.

8

There are two aspects you must consider in determining whether plaintiffs have met their

9

burden of proving the relevant antitrust market or markets.  The first is the relevant product

10

market; the second is the relevant geographic market.  The parties agree that for the purposes of

11

this case, the relevant geographic market is the United States.

12

The basic idea of a relevant product market is that the products within it are reasonable

13

substitutes for each other.  This is a practical test with reference to actual behavior of buyers and

14

marketing efforts of sellers.  Products need not be identical or precisely interchangeable as long as

15

they are reasonable substitutes for each other.

16

17

**AUTHORITY**

18

Adapted from ABA Model Jury Instructions in Civil Antitrust Cases Monopolization - General

19

Instruction 3 and 4 at C-6-C-7 (2005); *Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 11-cv-

20

01846-LHK, ECF No. 1893, filed Aug. 21, 2012 (N.D. Cal.) (Koh, J.) (Jury Instruction No. 78 at

21

p. 102).

22

23

24

25

26

27

28

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1    **PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 28**

2    **Apple:**

3        Apple objects to Plaintiffs' proposed instruction that "whether Apple had monopoly power

4    depends on the contours of the market."  The proposed instruction invites the jury to improperly

5    conflate the distinctly different issues of market definition and the existence of monopoly power.

6    Apple also objects to the lack of a recitation of parties' contentions with respect to the definition

7    of the relevant market.  Apple respectfully submits an explanation of the parties' contentions will

8    assist the jury in applying these instructions, and is suggested in the ABA Model Instructions.

9    **Plaintiffs:**

10       Plaintiffs' proposed instruction is based on the relevant market instruction issued by the

11   court in *Apple, Inc. v. Samsung*, which instruction was proposed by Apple (when it was the

12   plaintiff in a Section 2 claim). This is a streamlined version of the ABA Model Jury Instructions

13   on relevant market.  The ABA Model Jury Instructions concerning relevant market are repetitive,

14   unnecessarily long and confusing.  Plaintiffs' proposal incorporates the legal principles reflected

15   in the ABA Model Rules but omits repetition and confusing language.

16       Apple's Proposed Instruction No. 28A, along with No 28B, are additional examples of

17   Apple's excessive, unnecessary and redundant instructions that will serve to complicate the

18   instructions and confuse the jury. Contrary to this Court's directive that "instructions shall be

19   brief," *see* Pretrial Instructions in Civil Cases at 5, in this instance, as in many others, Apple has

20   proposed multiple separate instructions on legal principles that can be described in a single,

21   concise instruction.  Apple's approach here contrasts markedly with its approach when it was the

22   plaintiff.  In *Apple Inc. v. Samsung*, Apple proposed short, concise instructions and repeatedly

23   criticized Samsung's proposals as "unnecessarily long."  For example, for the relevant market

24   instruction (largely adopted by the court), Apple submitted a single instruction and criticized

25   Samsung's proposal as "unnecessarily long" and burdensome on the jury.  *See* Plaintiffs' Ex. A,

26   *Apple Inc. v. Samsung Electronics* (Disputed) Joint Proposed Jury Instructions at 328.

27       In addition, Apple's repeated description of plaintiffs' burden of proof is unnecessary and

28   prejudicial, as it is already contained within previous instructions and in the verdict form.

JOINT PROPOSED JURY INSTRUCTIONS              No. C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1   **APPLE'S PROPOSED INSTRUCTION NO. 29:  EXISTENCE OF MONOPOLY POWER**

2       If you find that Plaintiffs have proven the relevant market, then you should determine

3   whether Apple had monopoly power in a relevant market between September 2006 and March

4   2009.  Monopoly power is the power to control prices and exclude competition in a relevant

5   antitrust market.  In determining whether Apple had monopoly power in a relevant market, you

6   may consider whether there is direct evidence that Apple had monopoly power.

7                                    **Direct Proof**

8       In order to provide direct proof of monopoly power, Plaintiffs have the burden of proving

9   that Apple had the ability to raise or maintain the prices that it charges for goods or services in the

10  relevant market above competitive levels.  Plaintiffs must prove that Apple had the power to do so

11  by itself – that is without the assistance of, and despite competition from, any existing or potential

12  competitors.

13      Plaintiffs must also prove that Apple had the power to maintain prices above a competitive

14  level for a significant period of time.  If Apple had attempted to maintain prices above competitive

15  levels, but would have lost so much business to other competitors that the price increase would

16  become unprofitable and would have to be withdrawn, Apple did not have monopoly power.

17      Similarly, Plaintiffs must prove that Apple had the ability to exclude competition. For

18  example, if Apple had attempted to maintain prices above competitive levels, but new competitors

19  could have entered the relevant market or existing competitors could have expanded their sales

20  and take so much business that the price increase would become unprofitable and would have to

21  be withdrawn, then Apple did not have monopoly power.

22      The ability to earn high profit margins or high rates of return does not necessarily mean

23  that Apple had monopoly power.  Other competitive factors may enable a company without

24  monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as

25  the ability to offer superior products or services, or superior advertising or marketing.  However,

26  an ability to sell at higher prices or earn higher profit margins than other companies for similar

27  goods or services over a long period may be evidence of monopoly power.  By contrast, evidence

28  that Apple would have lost a substantial amount of sales if it raised prices substantially, or that

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1   Apple's profit margins were low compared to its competitors, erratic, and/or decreasing, might be

2   evidence that Apple did not have monopoly power.

**Indirect Proof**

4   You may also consider indirect evidence on the issues of monopoly power.

5   *Market Share*

6   One factor you may consider is Apple's market share.  Based on the evidence that you

7   have heard about Apple's market share, you should determine Apple's market share as a

8   percentage of total industry sales.

9   A market share above 50 percent may be sufficient to support an inference Apple had

10  monopoly power, but in considering whether Apple had monopoly power, it is also important to

11  consider other aspects of the relevant market, such as market share trends, the existence of barriers

12  to entry and expansion, the entry and exit by other companies, and the number and size of

13  competitors.  Along with Apple's market share, these factors should inform you as to whether

14  Apple had monopoly power.  The likelihood that a company has monopoly power is stronger the

15  higher that company's share is above 50 percent.

16  A market share below 50 percent is ordinarily not sufficient to support a conclusion that a

17  defendant has monopoly power.  However, if you find that the other evidence demonstrates that

18  Apple did, in fact, have monopoly power despite having a market share below 50 percent, you

19  may conclude that Apple had monopoly power.

20  *Barriers to Entry*

21  You may also consider whether there are barriers to entry or expansion into the relevant

22  market. Barriers to entry or expansion make it difficult for new competitors to enter the relevant

23  market in a meaningful and timely way or to expand their capacity to meet the market's needs.

24  Barriers to entry might include intellectual property rights such as patents, specialized marketing

25  practices, and the reputation of the companies already participating in the market, or the brand

26  name recognition of their products.

27  Evidence of low or no entry barriers may be evidence that Apple did not have monopoly

28  power, regardless of Apple's market share, because new competitors could enter or expand easily

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

1   if Apple attempted to raise prices for a substantial period of time.  By contrast, evidence of high

2   barriers to entry along with high market share may support an inference that Apple had monopoly

3   power.

4   _Entry and Exit by Other Companies_

5   The history of entry and exit in the relevant market may be helpful to consider.  Entry of

6   new competitors or expansion of existing competitors may be evidence that Apple lacked

7   monopoly power.  On the other hand, departures from the market, or the failure of firms to enter

8   the market, particularly if prices and profit margins are relatively high, may support an inference

9   that Apple had monopoly power.

10   _Number and Size of Competitors_

11   You may consider whether Apple's competitors were capable of effectively competing.  In

12   other words, you should consider whether the financial strength, market shares and number of

13   competitors acted as a check on Apple's ability to price its products.  If Apple's competitors were

14   vigorous or had large or increasing market shares, this may be evidence that Apple lacked

15   monopoly power.  On the other hand, if you determine that Apple's competitors were weak or had

16   small or declining market shares, this may support an inference that Apple had monopoly power.

17   _Conclusion_

18   If you find that the alleged Portable Digital Media Player Market is the relevant antitrust

19   market, and that Apple had monopoly power in that alleged market, then you must consider the

20   remaining elements of Plaintiffs' monopolization claim.  If you find that Apple did not have

21   monopoly power in the alleged Portable Digital Media Player Market, then you must find for

22   Apple and against the Plaintiffs on this claim.

23

24   **AUTHORITY**

25   ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) C-16-25 (modified).

26

27

28   **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 29: EXISTENCE OF MONOPOLY POWER

If you find that plaintiffs have proven a relevant antitrust market, then you should determine whether Apple had monopoly power in that market. Monopoly power is the power to control prices and exclude or handicap competition in a relevant antitrust market. In determining whether Apple had monopoly power in a relevant market, you may consider whether there is direct evidence that Apple had monopoly power.

**Direct Proof**

In order to provide direct proof of monopoly power, plaintiffs have the burden of proving that Apple had the ability to raise or maintain the prices that it charged for iPods above competitive levels. Plaintiffs must prove that Apple had the power to do so by itself- that is, without the assistance of, and despite competition from, any existing or potential competitors.

Plaintiffs must also prove that Apple had the power to maintain prices above a competitive level for a significant period of time. If Apple attempted to maintain prices above competitive levels, but lost so much business to other competitors that the price increase became unprofitable and had to be withdrawn, then Apple did not have monopoly power.

Similarly, plaintiffs must prove that Apple had the ability to exclude or handicap competition. For example, if Apple attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and take so much business that the price increase would become unprofitable and would have to be withdrawn, then Apple did not have monopoly power.

The ability to earn high profit margins or a high rate of return does not necessarily mean that Apple had monopoly power. Other factors may enable a company without monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as the ability to offer superior products or services, the ability to maintain an efficient business operation, or superior advertising or marketing. However, an ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power. By contrast, evidence that defendant would lose a substantial

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1  amount of sales if it raised prices substantially, or that a defendant's profit margins were low

2  compared to its competitors, erratic and/or decreasing, might be evidence that the defendant does

3  not have monopoly power.

**Indirect Proof**

5      If you do not find there is direct evidence of monopoly power, there are a number of

6  factors you may consider as indirect evidence of monopoly power.

***Market Share***

8      The first factor that you should consider is Apple's market share.  Based on the evidence

9  that you have heard about Apple's market share, you should determine Apple's market share as a

10 percentage of total industry sales.

11     A market share above 50 percent may be sufficient to support an inference that Apple had

12 monopoly power, but in considering whether Apple had monopoly power it is also important to

13 consider other aspects of the relevant market, such as market share trends, the existence of barriers

14 to entry, the entry and exit by other companies, and the number and size of competitors.  Along

15 with Apple's market share, these factors should inform you as to whether Apple had monopoly

16 power.  The likelihood that a company has monopoly power is stronger the higher that company's

17 share is above 50 percent.

***Market Share Trends***

19     The trend in Apple's market share is something you may consider.  An increasing market

20 share may strengthen an inference that a company has monopoly power, particularly where that

21 company has a high market share, while a decreasing share might show that a company does not

22 have monopoly power.

***Barriers to Entry***

24     You may also consider whether there were barriers to entry into the relevant market.

25 Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful

26 and timely way.  Barriers to entry might include high fixed costs in research and development,

27 technical incompatibility, intellectual property rights (such as patents or trade secrets), and the

28

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

reputation of the companies already participating in the market (or the brand recognition of their products).

Evidence of low or no entry barriers may be evidence that Apple did not have monopoly power, regardless of its market share, because new competitors could enter easily if Apple attempted to raise prices for a substantial period of time.  By contrast, evidence of high barriers to entry along with high market share may support an inference that Apple had monopoly power.

### Entry and Exit By Other Companies

The history of entry and exit in the relevant market may be helpful to consider. Entry of new competitors or expansion of existing competitors may be evidence that Apple lacked monopoly power.  On the other hand, departures from the market, or the failure of firms to enter the market, particularly if prices and profit margins are relatively high, may support an inference that Apple had monopoly power.

### Number and Size of Competitors

You may consider whether Apple's competitors were capable of effectively competing. In other words, you should consider whether the financial strength, market shares and number of competitors acted as a check on Apple's ability to price its products.  If Apple's competitors were vigorous or had large or increasing market shares, this may be evidence that Apple lacked monopoly power.  On the other hand, if you determine that Apple's competitors were weak or had small or declining market shares, this may support an inference that Apple had monopoly power.

### Conclusion

If you find that Apple had monopoly power in the relevant market during the time period in which the violation allegedly occurred, then you must consider the remaining elements of this claim.  If you find that Apple did not have monopoly power, then you must find for Apple and against the plaintiffs on this claim.


### AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases Monopolization - General Instructions 8 and 9 at C-16-C-24 (2005) (modified slightly and combined into one instruction); *Apple, Inc. v.*

JOINT PROPOSED JURY INSTRUCTIONS                                No. C 05-00037 YGR

1   *Samsung Electronics Co., Ltd.*, No. 11-cv-01846-LHK, ECF No. 1893, filed Aug. 21, 2012 (N.D.

2   Cal.) (Koh, J.); *Smithkline Beecham Corp. v. Abbott Labs.*, No. 4:07cv5702-CW , ECF No. 485,

3   filed Mar. 24, 2011 (N.D. Cal.) (Wilken, J.); *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,

4   472 U.S. 585, 597 (1985); *In re Abbott Labs. Norvir Anti-Trust Litig.*, 442 F. Supp. 2d 800, 806

5   (N.D. Cal. 2006).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1

**PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 29**

2

**Apple:**

3

Apple objects to Plaintiffs' proposed instruction on the definition of monopoly power.

4    Monopoly power is the power to "exclude competitors," not to "handicap" them.  *E.g., United*

5    *States v. E. I. Du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956) ("Monopoly power is the

6    power to control prices or exclude competition"); *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d

7    1421, 1441 (9th Cir. 1995) (same)  Plaintiffs' citation to *Aspen Skiing Co. v. Aspen Highlands*

8    *Skiing Corp.*, 472 U.S. 585, 598 (1985) as support for this instruction is inapposite, as the Court's

9    opinion shows that the jury in that case in fact applied the standard supported by the case law and

10   advocated by Apple.  *See Aspen Skiing*, 472 U.S at 596 n.20 ("The jury found … that during the

11   years 1977-1981, Ski Co. possessed monopoly power, defined as the power to control prices in the

12   relevant market or to exclude competitors").

13

Apple's proposed instruction also instructs the jury to consider whether barriers to

14   expansion, as well as entry, exist.  Just as barriers to entry, or lack thereof, are relevant to whether

15   new entrants can constrain the exercise of market power, barriers to expansion, or lack thereof, are

16   relevant to whether existing competitors can expand their output to constrain the exercise of

17   market power.

18

Apple objects to Plaintiffs' proposed instruction that "technical incompatibility" is a

19   barrier to entry.  Technical incompatibility is not a barrier to entry because the development and

20   distribution of integrated products incompatible with those of rivals' increases, rather than

21   decreases, competition.  *See Foremost Pro*, 703 F.2d at 542 ("The creation of technological

22   incompatibilities, without more, does not foreclose competition; rather, it increases competition by

23   providing consumers with a choice among differing technologies, advanced and standard, and by

24   providing competing manufacturers the incentive to enter the new product market by developing

25   similar products of advanced technology"); *Bookhouse of Stuyvesant Plaza,.*, 985 F. Supp. 2d at

26   623 (holding "Amazon's decision to use device-restrictive DRM and to restrict the e-books that

27   can be read on Kindle devices and apps to e-books purchased from Amazon" to be lawful under

28   Section 2).

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

**Plaintiffs:**

The parties' competing proposals are nearly identical and track the language of the ABA Model Instructions for Civil Antitrust Claims.

However, Apple's instruction excludes the phrase "or handicap competition" when discussing the element of anticompetitive conduct. Apple refused to agree to this language despite the fact that this exact language comes from a jury instruction approved by the Supreme Court in *Aspen Skiing*, 472 U.S. at 597. There, the District Court instructed the jury that anticompetitive conduct meant conduct "which unnecessarily excludes ***or handicaps*** competitors." *Id. See also Smithkline Beecham Corp. v. Abbott Labs*, No. 4:07-cv-5702-CW (ECF No. 485) at 11 (instructing jurors that "[i]f this evidence establishes that Abbott had the power to control prices and exclude or handicap competition in the relevant antitrust market, then you may conclude that Abbott had monopoly power"). Because plaintiffs' proposed instruction more accurately reflects the law, it should be adopted.

The only other differences between the parties' proposed instruction is Apple's inclusion of additional language regarding expansion by competitors, the repetition of the instruction that the jury must first find that plaintiffs have proven a relevant market, and plaintiffs' transitional sentence between the sections on direct proof and indirect proof. Apple has provided no legal authority for the additional language regarding expansion by competitors, so that language should be stricken. As to the repeated instruction regarding relevant market, Apple's language is both unnecessary and prejudicial, because the jury will already have been instructed that they must find that plaintiffs have proven a relevant antitrust market, and it is in the proposed verdict form. Finally, plaintiffs' proposed transitional sentence makes the instruction easier to understand.

JOINT PROPOSED JURY INSTRUCTIONS                                   No. C 05-00037 YGR

**APPLE'S PROPOSED INSTRUCTION NO. 30:  WILLFUL ACQUISITION OR**

**MAINTENANCE OF MONOPOLY POWER**

The next element Plaintiffs must prove is that Apple willfully acquired or maintained monopoly power in the alleged Portable Digital Media Player Market through anticompetitive acts or practices.

Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market.  Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition.  You should distinguish the acquisition or maintenance of monopoly power through anticompetitive acts from the acquisition or maintenance of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, which is not unlawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws.  A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine.  This is because all companies have a desire to increase their profits and increase their market share.  These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals – or the achievement of these goals – unlawful, as long as a company does not use anticompetitive means to achieve these goals.  The acts or practices that unlawfully result in the acquisition or maintenance of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success.  They must represent conduct that has made it very difficult or impossible for competitors to compete and that was taken for no legitimate business reason.  You may not find that Apple willfully acquired or maintained monopoly power if it has acquired or maintained that power solely through the exercise of superior foresight and skill in product development or marketing; or because of economic or technological efficiency, including

JOINT PROPOSED JURY INSTRUCTIONS                                        No. C 05-00037 YGR

efficiency resulting from scientific research; or by obtaining a lawful patent; or because changes in cost or taste have driven out other suppliers.

### AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) C-26-30 (modified); *Novell, Inc. v. Microsoft Corp.*, No. 2:04-cv-01045-JVM, Docket No. 388 at 8-9 (D. Utah Dec. 19, 2011) (Jury Instructions) (omitting hypotheticals in closely analogous case involving product incompatibility), *aff'd Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064 (10th Cir. 2013); *cert. denied*, 134 S. Ct. 1947 (2014).

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1  **PLAINTIFFS' PROPOSED NO. 30:  MONOPOLIZATION – WILLFUL MAINTENANCE**

2  **OF MONOPOLY POWER THROUGH ANTICOMPETITIVE CONDUCT**

3      The next element plaintiffs must prove is that Apple willfully maintained monopoly power

4  through anticompetitive acts or practices.  Anticompetitive acts are acts, other than competition on

5  the merits, that have the effect of preventing or excluding competition or frustrating the efforts of

6  other companies to compete for customers within the relevant market.  Harm to competition is to

7  be distinguished from harm to a single competitor or group of competitors, which does not

8  necessarily constitute harm to competition.  In addition, you should distinguish the maintenance of

9  monopoly power through anticompetitive acts from the maintenance of monopoly power by

10  supplying better products or services, possessing superior business skills, or because of luck,

11  which is not unlawful.

12      Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust

13  laws.  A monopolist may compete aggressively without violating the antitrust laws, and a

14  monopolist may charge monopoly prices without violating the antitrust laws.  A monopolist's

15  conduct only becomes unlawful where it involves anticompetitive acts.

16      The difference between anticompetitive conduct and conduct that has a legitimate business

17  purpose can be difficult to determine.  This is because all companies have a desire to increase their

18  profits and increase their market share.  These goals are an essential part of a competitive

19  marketplace, and the antitrust laws do not make these goals – or the achievement of these goals –

20  unlawful, as long as a company does not use anticompetitive means to achieve these goals.

21      In determining whether Apple's conduct was anticompetitive or whether it was legitimate

22  business conduct, you should determine whether the conduct is consistent with competition on the

23  merits, whether the conduct provides benefits to consumers, and whether the conduct would make

24  business sense apart from any effect it has on excluding competition or harming competitors.

25      For example, suppose there are five firms that make printers for home computers and that

26  these printers comprise a relevant product market.  Suppose also that Firm A developed a more

27  efficient manufacturing process that allowed it to sell profitably at a lower price than its

28  competitors.  If Firm A grew its market share and achieved monopoly power by selling profitably

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

at a lower price, it would not be unlawful for Firm A to achieve monopoly power in this way. Developing more efficient processes and developing the ability to sell profitably at lower prices is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct even if it has a negative effect on competitors.

Similarly, in the same example, suppose Firm B developed and patented a revolutionary new printer and consumers so preferred Firm B's printer that Firm B achieved monopoly power. It would not be unlawful for Firm B to achieve monopoly power in this way. Firm B "built a better mousetrap," which is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct.

By contrast, in the same example, suppose not only that Firm C makes printers, but also that Firm C is the world's only manufacturer of computers and that there are barriers to entry in the computer market such that no other firm will be able to enter that market. Suppose also that Firm C altered its computers in such a way that only Firm C's printers would work with its computers, and that the alteration does not improve the design of Firm C's computers or provide any benefits to competition or consumers – the only effect of the alteration is to exclude competing printer makers from the marketplace. If Firm C thereby prevented its printer competitors from competing and achieved monopoly power, it would be unlawful for Firm C to achieve monopoly power in the printer market in this way.

As these examples show, the acts or practices that result in the maintenance of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or impossible for competitors to compete and that was taken for no legitimate business reason. You may not find that a company willfully maintained monopoly power if it has maintained that power solely through the exercise of superior foresight and skill; or because of natural advantages such as unique geographic access to raw materials or markets; or because of economic or technological efficiency, including efficiency resulting from scientific research; or by obtaining a lawful patent; or because changes in cost or taste have driven out all but one supplier.

JOINT PROPOSED JURY INSTRUCTIONS                        No. C 05-00037 YGR

1    If you find that plaintiffs have proven by a preponderance of the evidence that Apple

2   willfully maintained monopoly power through anticompetitive acts, then you must consider

3   whether the plaintiffs have proven the remaining elements of this claim.  If, however, you find that

4   the plaintiff did not prove this element by a preponderance of the evidence, then you must find for

5   Apple and against the plaintiffs on this claim.

6

7                                    **AUTHORITY**

8   ABA Model Jury Instructions in Civil Antitrust Cases Monopolization - General Instruction 10 at

9   C-26-C-30 (2005) (modified).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1    **PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 30**

2    **Apple**:

3         The alleged anticompetitive conduct in this case is quite specific and has been narrowed by

4    the Court into clear principles that are the law of the case.  Apple therefore respectfully submits

5    that the jury should be given specific guidance on those principles, in the context of the disputed

6    issues, and that the vague formulations in Plaintiffs' proposed instructions are not going to be

7    helpful to the jury and will invite the vague balancing approach that the Ninth Circuit has rejected

8    in the product design arena.  The jury should be instructed that evidence of a product

9    improvement, regardless of its effect on competitors or Apple's intent to harm competitors,

10   entitles Apple to judgment.  *Allied Orthopedic*, 592 F.3d at 999-1000 (holding that a "product

11   improvement by itself does not violate Section 2, even if it is performed by a monopolist and

12   harms competitors as a result"); *id.* at 1001 ("Plaintiffs focus on statements showing that

13   [Defendant] hoped its new technology would constitute a barrier to entry for [competitors].

14   However, even legitimate product improvement can have the effect of harming or even destroying

15   competitors.  Statements of an innovator's intent to harm a competitor through genuine product

16   improvement are insufficient by themselves to create a jury question under Section 2").  The jury

17   should be instructed that evidence of a legitimate business justification entitles Apple to judgment,

18   and that Plaintiffs bear the burden on proof on this issue.  *See Image Technical Serv. Inc. v.*

19   *Eastman Kodak Co.*, 903 F.2d 612, 620 n.9 (9th Cir. 1990) ("The plaintiff also bears the burden of

20   proving lack of legitimate business justifications in a Section 2 claim"); *aff'd sub nom. Eastman*

21   *Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992).  Similarly, the jury should be

22   instructed on the law and the law of the case that incompatibility is lawful competition that may

23   not form the predicate of a Section 2 violation.  *Foremost Pro Color*, 703 F.2d at 542 (9th Cir.

24   1983) ("The creation of technological incompatibilities, without more, does not foreclose

25   competition; rather, it increases competition by providing consumers with a choice among

26   differing technologies, advanced and standard, and by providing competing manufacturers the

27   incentive to enter the new product market by developing similar products of advanced

28   technology"); *id.* at 544-45 (the introduction by a monopolist of a product incompatible with those

68

1   of its rivals' by itself does not violate Section 2; a monopolist selling such incompatible products

2   has "no duty to assist [competing sellers of complementary products] to survive or expand")

3   (quotation marks and citations omitted); Order Decertifying Classes at 9 (Dec. 21, 2009) (Dkt.

4   303) ("Plaintiffs must allege willful conduct beyond interoperability and incompatibility" to

5   support Section 2 liability).

6          Apple objects to the inclusion of the hypotheticals in Plaintiffs' proposed instructions.

7   These hypotheticals are, in the context of this case, both confusing and inconsistent with the law

8   and the law of the case.  *Foremost Pro Color*, 703 F.2d at 544-45 (the introduction by a

9   monopolist of a product incompatible with those of its rivals' by itself does not violate Section 2; a

10  monopolist selling such incompatible products has "no duty to assist [competing sellers of

11  complementary products] to survive or expand") (quotation marks and citations omitted); Order

12  Decertifying Classes at 9 (Dec. 21, 2009) (Dkt. 303) ("Plaintiffs must allege willful conduct

13  beyond interoperability and incompatibility" to support Section 2 liability).  In a recent and closely

14  analogous case involving product incompatibility, the hypotheticals proposed by Plaintiffs were

15  properly omitted from the jury instructions.  *See Novell, Inc. v. Microsoft Corp.*, No. 2:04-cv-

16  01045-JVM, Docket No. 388 at 8-9 (D. Utah December 19, 2011) (Jury Instructions); *aff'd Novell,*

17  *Inc. v. Microsoft Corp.*, 731 F.3d 1064 (10th Cir. 2013); *cert. denied*, 134 S. Ct. 1947 (2014).

18  **Plaintiffs:**

19         Plaintiffs' and Apple's proposed instructions on willful maintenance of monopoly power

20  through anticompetitive conduct are both based on the ABA Model Instructions.  They are nearly

21  identical, with one important exception.  Plaintiffs' proposal adopts the Model Instruction

22  verbatim.  Apple, in contrast, deletes an example that helpfully and clearly describes three

23  different scenarios in a similar factual setting.  Given the difficulty in understanding the legal

24  concepts of "willful" and "anticompetitive," inclusion of this example will aid the jury.  *See*, *e.g.*,

25  Einer Elhauge, *Defining Better Monopolization Standards*, 56 Stan. L. Rev. 253, 255 (2003);

26  *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001) ("Whether any particular act of

27  a monopolist is exclusionary, rather than merely a form of vigorus competition, can be difficult to

28  discern: the means of illicit exclusion, like the means of legitimate competition, are myriad.").

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1    **APPLE'S PROPOSED INSTRUCTION NO. 31:  LEGITIMATE BUSINESS PURPOSES**

2    **AND PRODUCT IMPROVEMENTS**

3        Plaintiffs' theory of anticompetitive conduct in this case is that Apple acted

4    anticompetitively with the development and release of the software updates known as iTunes 7.0

5    and 7.4, and the complementary "firmware" updates that were included in certain new iPod

6    models that were sold with or after the release of iTunes 7.0.  Apple contends that the iTunes and

7    iPod updates were product improvements and that it had legitimate business reasons for these

8    updates.

9        Under the Sherman Act, offering a genuine product improvement cannot be considered an

10   anticompetitive act, regardless of its effect on a competitor.  Similarly, if a firm has a legitimate

11   business reason for the design of its product, that design cannot be considered an anticompetitive

12   act, regardless of its effect on a competitor.  Antitrust law does not impose a duty on a monopolist

13   to cooperate with a competitor or to share its intellectual property with a competitor, even if the

14   innovations or intellectual property might be useful to the competitor in developing its products.

15   Thus, Apple had no duty to deal with RealNetworks or other third parties.  Also, evidence that the

16   defendant could have chosen a different design or approach in achieving its business goal that

17   would have had less of an effect on competitors does not mean that the conduct is anticompetitive.

18   However, a design change that serves no purpose other than protecting a monopoly may constitute

19   anticompetitive conduct.

20       As the Court explained to you at the beginning of this trial, Apple's integrated design of

21   iTunes, iPods, and the iTunes Store was legal and not anticompetitive, even though the design did

22   not permit certain competitors to interoperate with it.  The development and distribution of

23   products that are incompatible with competitors' products can increase competition by enhancing

24   product variety and consumer choice.  Also, Apple's development and distribution of iTunes 4.7

25   and related technology was lawful and not anticompetitive.  You may not consider iTunes 4.7 to

26   be anticompetitive or illegal, or to support any finding of liability or damages against Apple.

27   Although you may not consider the incompatibility of Apple's products with the products of its

28   competitors or iTunes 4.7 to be anticompetitive or illegal, you are not required to ignore such

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

evidence.  To the contrary, you may consider such evidence in understanding the purpose and context of the conduct Plaintiffs allege to be unlawful.

Therefore, in deciding whether Apple engaged in illegal and anticompetitive acts in this case, you must consider only whether Apple's development and distribution of iTunes 7.0 and iTunes 7.4 and iPods containing related technology were illegal and anticompetitive acts.  If you find that those updates were legitimate product improvements, then you must find no anticompetitive conduct.  Similarly, if you find that Apple had legitimate business reasons for issuing the iTunes 7.0 and iTunes 7.4 updates and related technology, then you must find no anticompetitive conduct, even if Apple had other reasons as well.

If you find that Plaintiffs have proved by a preponderance of the evidence that Apple willfully acquired or maintained monopoly power through anticompetitive acts, then you must consider whether Plaintiffs have proved the remaining elements of their monopolization claim.  If, however, you find that Plaintiffs did not prove this element by a preponderance of the evidence, then you must find for Apple and against Plaintiffs on their monopolization claim.

## AUTHORITY

*See, e.g.*, *Allied Orthopedic Appliances, Inc. v. Tyco Health Care Group LP*, 592 F.3d 991, 999-1000 (9th Cir. 2010) (holding that a "product improvement by itself does not violate Section 2, even if it is performed by a monopolist and harms competitors as a result"); *Foremost Pro Color*, 703 F.2d at 542 (9th Cir. 1983) ("The creation of technological incompatibilities, without more, does not foreclose competition; rather, it increases competition by providing consumers with a choice among differing technologies, advanced and standard, and by providing competing manufacturers the incentive to enter the new product market by developing similar products of advanced technology"); *id.* at 544-45 (the introduction by a monopolist of a product incompatible with those of its rivals, by itself does not violate Section 2; a monopolist selling such incompatible products has "no duty to assist [competing sellers of complementary products] to survive or expand") (quotation marks and citations omitted); Order Decertifying Classes at 9 (Dec. 21, 2009) (Dkt. 303) ("Plaintiffs must allege willful conduct beyond interoperability and incompatibility" to

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1   support Section 2 liability); Order Granting In Part and Denying In Part Def.'s Mot. for Summ. J.

2   at 9-10 (May 19, 2011) (Dkt. 627) (Apple had no duty to deal with RealNetworks); *id.* at 12-13

3   (denying summary judgment to Apple on Plaintiffs' claims relating to iTunes 7.0 due to a factual

4   dispute as to whether "iTunes 7.0 was introduced to guard against the risk of corruption and was

5   therefore a genuine product improvement").

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                No. C 05-00037 YGR

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 31:  MONOPOLIZATION – ANTICOMPETITIVE BEHAVIOR THROUGH DESIGN CHANGE WITH NO CONSUMER BENEFIT

Plaintiffs contend that Apple willfully maintained monopoly power based on anticompetitive conduct when it updated the iPod and iTunes to make the iPod incompatible with web sites that offered permanent downloads of audio recordings ("Permanent Audio Downloads"). Plaintiffs claim that Apple's keybag verification code, or "KVC" which it installed in software and firmware beginning in September 2006, and its database verification code, or "DVC" which it activated in software and firmware beginning in September 2007, excluded competitors from the market but provided no benefit to consumers.  Apple denies that these product design changes were anticompetitive.

As a general rule, it is not a violation of the antitrust laws for a firm to change the design of a product that is dominant in a relevant market, even if the effect of the change is to exclude competitors from the market.  However, a design change that serves no purpose other than protecting a monopoly may constitute anticompetitive conduct.

In deciding whether Apple's product design changes were anticompetitive, you may consider whether the changes improved Apple's products by providing a new benefit to consumers.  If you find that Apple's product design changes provided no new benefit to consumers, or did not genuinely improve the product, then you may find that Apple's conduct was anticompetitive.

### AUTHORITY

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998-99 (9th Cir. 2010) (product design changes that provide no new benefit to consumers may constitute unlawful means of maintaining monopoly); *In re IBM Peripheral EDP Devices Antitrust Litig.*, 481 F. Supp. 965, 1005-08 (N.D. Cal. 1979) (monopolist computer maker engaged in unlawful conduct where it altered its computers in a way that "degraded system performance, making its product less attractive to users" and where "[t]he only purpose served and the only effect of the

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1   degradation was the preclusion of competition"), *aff'd sub nom.*, *Transamerica Computer Co. v.*

2   *IBM Corp.*, 698 F.2d 1377 (9th Cir. 1983); *cf. Cal. Comp. Prods., Inc. v. IBM Corp.*, 613 F.2d

3   727, 744 (9th Cir. 1979) (no anticompetitive conduct where uncontroverted evidence established

4   that design change was a cost-saving measure that made monopolist's products "more attractive to

5   buyers"); *In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1141-14 (N.D. Cal.

6   2011) ("At issue is whether Defendant's introduction of iTunes 7.0 constituted a genuine product

7   improvement."); ABA Model Jury Instructions in Civil Antitrust Cases at C-32-C-80 (providing

8   examples of specific conduct alleged to be anticompetitive).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   **Date Submitted:  October 22, 2014**

74

1    **PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 31**

2    **Apple:**

3         Apple objects to Plaintiffs' proposed instruction to the jury that "If you find that Apple's

4    product design changes provided no new benefit to consumers, or did not genuinely improve the

5    product, then you may find that Apple's conduct was anticompetitive."   This is not the law.

6    Plaintiffs cite no case that stands for the proposition that the plaintiff may carry its burden of

7    production in a Section 2 case by showing the mere absence of a product improvement without

8    any harm to consumers or competition.  *Allied Orthopedic* stands for the proposition that a product

9    improvement is *per se* lawful, without regard to intent, effects, justification, or less restrictive

10   alternative, unless accompanied by some other actionable anticompetitive conduct.  *Allied*

11   *Orthopedic*, 592 F.3d at 999-1001.  *Allied Orthopedic* does not stand for the proposition that the

12   mere introduction of a product that fails to benefit, but also does not harm, consumers or

13   competition is therefore exclusionary.  To instruct otherwise would invite the jury to conflate

14   exclusion of competitors (which is ubiquitous and not unlawful) with harm to competition.

15   Plaintiffs must prove something more than the mere absence of a product improvement, or else

16   Apple is entitled to judgment.  *See Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko,*

17   *LLP*, 540 U.S. 398, 407 (2004) ("To safeguard the incentive to innovate, the possession of

18   monopoly power will not be found unlawful unless it is accompanied by an element of

19   anticompetitive *conduct*") (emphasis in original).  The case cited by the Plaintiffs, *In re IBM*

20   *Peripheral EDP Devices Antitrust Litig.*, 481 F. Supp. 965, 1005-08 (N.D. Cal. 1979), illustrates

21   the point, as in that case there was evidence of a profit sacrifice and a decrease in product quality,

22   rather than a mere absence of product improvement.

23        The use of "consumer benefit" in Plaintiffs' proposed instructions is misleading in the

24   context of this case.  One of the legitimate business reasons for the challenged iTunes updates was

25   enhancing the security of the DRM protection that Apple had contracted to provide the copyright

26   holders.  For example, fulfilling a contractual obligation to a third party may well not provide an

27   immediate consumer benefit but is undeniably a legitimate business reason.  Similarly, an updated

28   product that improved security for the copyright holders would be considered a legitimate product

JOINT PROPOSED JURY INSTRUCTIONS                                  No. C 05-00037 YGR

B O I E S ,  S C H I L L E R  &  F L E X N E R  L L P
O A K L A N D ,  C A L I F O R N I A

improvement even if the sole benefit was to the record labels and artists, not consumers. Plaintiffs are free to contest these issues as a factual matter but they are not entitled to an instruction that limits the scope of legitimate business justifications to "consumer benefits."

Apple objects to Plaintiffs proposed instruction that "a design change that serves no purpose other than protecting a monopoly may constitute anticompetitive conduct." This instruction fails to distinguish lawful, aggressive competition from exclusionary conduct. The acquisition or maintenance of or monopoly power is not itself unlawful, and Plaintiffs' proposed instruction invites the jury to assign liability to the innovative conduct that the law encourages and protects. *Trinko*, 540 U.S. at 407.

**Plaintiffs:**

In this and the next instruction, plaintiffs adopted the structure of the ABA Model Instructions and several courts within this District, in that they describe the specific conduct that plaintiffs allege to be anticompetitive and provide instruction on the applicable law. The language of plaintiffs' proposed instruction is drawn directly from governing law on product design changes as Section 2 violations, namely, the *Allied Orthopedic* decision, as well as decisions by the Court in this case. It carefully explains, in accordance with that law, that product design changes are generally not unlawful, even if the result is to exclude competitors.

Apple's proposed instruction, in contrast, abandons all pretense at evenhandedness, and grossly misstates the law of the case and the law of this Circuit. For example, Apple, repeats its false argument that Judge Ware held that Apple's "integrated design" was lawful in all circumstances. ECF No. 627 (2011 SJ Order) at 4 (emphasis added) (Apple's integrated approach by itself does not constitute anticompetitive conduct."). In addition, Apple incorrectly argues that a product design change that constitutes a genuine improvement can never be anticompetitive, directly contradicting *Allied Orthopedic*. 592 F.3d at 998-1001 (product design change that improves product may constitute anticompetitive conduct if it is associated with some other anticompetitive conduct). Worse, the proposed instruction repeatedly describes the challenged conduct in a slanted manner, and improperly seeks to instruct the jury on the Court's previous decisions.

JOINT PROPOSED JURY INSTRUCTIONS                                   No. C 05-00037 YGR

B O I E S , S C H I L L E R & F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1    Apple omits a portion of the instruction explaining to jurors that, if the only effect of

2    Apple's conduct was to exclude competitors from competing, the conduct is anticompetitive and

3    considered unlawful.  *See Allied Orthopedic*, 592 F.3d at 998, *quoting United States v. Microsoft*,

4    703 F.2d at 545-99 (conduct that serves no purpose "other than protecting . . . monopoly" is

5    anticompetitive); *In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1146 (N.D. Cal.

6    2011) ("At issue is whether Defendant's introduction of iTunes 7.0 constituted a genuine

7    improvement.").  Apple's instruction also fails to provide any guidance regarding plaintiffs'

8    leveraging claim.

9    In addition to its lengthy and one-sided description of its defense, Apple fails to mention

10   that it bears the burden of proof on these issues.  *William Inglis & Sons Baking Co.*, 668 F.2d at

11   1041; *Image Tech. Servs. v. Eastman Kodak*, 125 F.3d at 1212.  Apple essentially seeks summary

12   judgment through this instruction, urging the Court to instruct the jury that "you may not consider

13   the incompatibility of Apple's products with the products of its competitors . . . to be

14   anticompetitive or illegal…."

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS                                              No. C 05-00037 YGR

B O I E S , S C H I L L E R & F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

## APPLE'S PROPOSED INSTRUCTION NO. 32:  PLAINTIFFS' LEVERAGING CONTENTION [*CONDITIONAL*][5]

As stated before, one of the elements Plaintiffs must prove is that Apple engaged in exclusionary conduct.  Plaintiffs claim that the conduct element is satisfied in this case by Apple's use of anticompetitive conduct and its monopoly power in an alleged market for Permanent Audio Downloads to acquire or maintain monopoly power in the alleged market for Portable Digital Media Players.

A firm that sells different products does not automatically violate the antitrust laws whenever it obtains a competitive advantage because of the fact that it has multiple products or product lines or because it uses its position in one market to gain an advantage in another market; this is true even if the firm enjoys a monopoly in one or more of the product markets in which it does business.  To find that Apple used its monopoly power in the alleged market for Permanent Audio Downloads to acquire or maintain its monopoly in the alleged market for Portable Digital Media Players, you must find that Apple used both its monopoly power and anticompetitive conduct to acquire or maintain monopoly power in the alleged market for Portable Digital Media Players, and not simply the benefit of operating a multi-product business.  In other words, if the same kind of advantage could have been obtained by any firm selling in both markets, then Apple has not unlawfully used its monopoly power.

To establish that Apple engaged in anticompetitive conduct by leveraging its position from one market to another market, plaintiffs must prove the following:

**First,** that the market for Permanent Audio Downloads was a relevant market under the instructions you have received concerning relevant market;

**Second,** that Apple had monopoly power in that market;

---

[5] Apple respectfully submits that an instruction on monopoly leveraging is both unnecessary and confusing because monopoly leveraging requires anticompetitive conduct, not mere "leveraging" (*see Trinko*, 450 U.S. at 415 & n.4), and the anticompetitive conduct element is specifically explained in earlier instructions.  If the Court determines that a monopoly leveraging instruction is appropriate, then Apple proposes this instruction, rather than Plaintiffs' instructions, which, among other things, muddles the anticompetitive conduct element essential to Plaintiffs' claims.

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1    **Third,** that the market for Portable Digital Media Players was a separate relevant
2    product market;

3    **Fourth,** that Apple, through anticompetitive conduct, used its monopoly position in
     the market for Permanent Audio Downloads to maintain its monopoly of the
4    Portable Digital Media Players; and

5    **Fifth**, that Apple in fact monopolized or had a dangerous probability of
     monopolizing that market.
6

7    The parties dispute whether the market for Permanent Audio Downloads is a relevant

8    antitrust market.  Plaintiffs define this market as "the market for digital music, copies of which can

9    be legally purchased by the consumer by way of internet download."  By contrast, Apple

10   maintains that Plaintiffs have failed to prove this relevant product market because Plaintiffs'

11   definition of this market is too narrow and fail to include reasonably interchangeable substitutes

12   that consumers use to download music onto portable media players.  Apple contends that

13   consumers obtained recorded audio for portable music players from CDs, a variety of internet sites

14   and services, including websites associated with individual artists and record labels, in addition to

15   Apple's iTunes and iTunes Store, and that the majority of content on portable players during the

16   relevant time period was imported from CDs.

17   As the Court has explained, the allegation of anticompetitive conduct in this case is limited

18   to Apple's release of iTunes versions 7.0 and 7.4 and related firmware or certain iPod models.

19   Therefore, you must evaluate whether this conduct is anticompetitive according to the instructions

20   that the Court just gave you on this topic.  You may not find that Apple violated Section 2 of the

21   Sherman Act without engaging in an act of anticompetitive conduct.  You may not find that Apple

22   engaged in anticompetitive conduct merely by using monopoly power in the Permanent Audio

23   Downloads to acquire or maintain a monopoly in the Portable Digital Media Player market.  As

24   the Court instructed you earlier, you must find for Apple on this claim if you find that the software

25   and firmware updates Plaintiffs challenge were legitimate product improvements, or that Apple

26   had legitimate business justifications for that conduct.  If you find that Apple engaged in

27   anticompetitive conduct to use its alleged monopoly in Permanent Audio Downloads to acquire or

28

JOINT PROPOSED JURY INSTRUCTIONS                                      No. C 05-00037 YGR

1  maintain a monopoly in the Portable Digital Media Player market, you may find that Apple

2  engaged in anticompetitive conduct.

3       If you find that plaintiffs have failed to prove any of these elements, then you must find for

4  Apple and against plaintiffs on plaintiffs' monopoly leveraging claim.  If you find that plaintiffs

5  have proved each element, then you must find for plaintiffs on this monopoly leveraging claim.

6

7                              **AUTHORITY**

8  ABA Model Jury Instructions in Civil Antitrust Cases Monopolization – Refusal to Deal and

9  Leveraging Instruction 4 at C-41; *Verizon Commc'ns., Inc. v. Law Offices of Curtis V. Trinko,*

10  *LLP*, 540 U.S. 398, 415 n.4 (2004) (a viable leveraging claim "presupposes anticompetitive

11  conduct"); *Allied Orthopedic*, 592 F.3d at 999-1000 (holding that a "product improvement by

12  itself does not violate Section 2, even if it is performed by a monopolist and harms competitors as

13  a result"); *Image Technical Serv.*, F.2d at 620 ("there is no least restrictive alternative requirement

14  in the context of a Section 2 claim"); *Foremost Pro Color*, 703 F.2d at 544-45 (the introduction by

15  a monopolist of a product incompatible with those of its rivals', by itself does not violate Section

16  2; a monopolist selling such incompatible products has "no duty to assist [competing sellers of

17  complementary products] to survive or expand") (internal quotation marks and citations omitted);

18  Order Decertifying Classes at 9 (Dec. 21, 2009) (Dkt. 303) ("Plaintiffs must allege willful conduct

19  beyond interoperability and incompatibility" to support Section 2 liability).

20

21

22

23

24

25

26

27

28  **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 32:  MONOPOLIZATION –**

**ANTICOMPETITIVE BEHAVIOR THROUGH LEVERAGING**

If you find that Apple's use of the KVC and DVC provided some benefit to consumers, you may still find that Apple's conduct was anticompetitive.

Plaintiffs claim that the conduct element is satisfied in this case by Apple's use of its anticompetitive conduct and its monopoly power in one product market to maintain monopoly power in a second product market.

A firm that sells different products does not automatically violate the antitrust laws whenever it obtains a competitive advantage because of the fact that it has multiple products or product lines; this is true even if the firm enjoys a monopoly in one or more of the product markets in which it does business.  To find that Apple used its monopoly power in the market for Permanent Audio Downloads to maintain its monopoly in the market for Portable Digital Media Players, you must find that Apple used its monopoly power and anticompetitive conduct to enable it to maintain that monopoly, and that the monopoly is not simply the benefit of operating a multi-product business.  In other words, if the same kind of advantage could have been obtained by any firm selling in both markets, then Apple has not unlawfully used its monopoly power.

To establish that Apple engaged in anticompetitive conduct by leveraging its position from one market to another market, plaintiffs must prove the following:

First, that the market for Permanent Audio Downloads was a relevant market under the instructions you have received concerning relevant market;

Second, that Apple had monopoly power in that market;

Third, that the market for Portable Digital Media Players was a separate relevant product market;

Fourth, that Apple, through anticompetitive conduct, used its monopoly position in the market for Permanent Audio Downloads to maintain its monopoly of the Portable Digital Media Players; and

Fifth, that Apple in fact monopolized or had a dangerous probability of monopolizing that market.

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

If you find that plaintiffs have failed to prove any of these elements, then you must find for Apple and against plaintiffs on plaintiffs' leveraging claim.  If you find that plaintiffs have proved each element, then you must find for plaintiffs on this leveraging claim.

**AUTHORITY**

ABA Model Jury Instructions in Civil Antitrust Cases Monopolization – Refusal to Deal and Leveraging Instruction 4 at C-41 (modified); *Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*, 592 F.3d 991, 998-99 (9th Cir. 2010); *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 545-46 (9th Cir. 1983); *Berkey Photo Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 287 n.39 (2d Cir. 1979).

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1      **PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 32**

2      **Apple:**

3          Apple respectfully submits that an instruction on monopoly leveraging is both unnecessary

4      and confusing because monopoly leveraging requires anticompetitive conduct, not mere

5      "leveraging" (*see Trinko*, 450 U.S. at 415 & n.4), and the anticompetitive conduct element is

6      specifically explained in earlier instructions.  If the Court determines that a monopoly leveraging

7      instruction is appropriate, then Apple proposes this instruction, rather than Plaintiffs' instructions,

8      which, among other things, muddles the anticompetitive conduct element essential to Plaintiffs'

9      claims.

10         Plaintiffs' proposed instruction is confusing and inconsistent with controlling precedent

11     and the law of the case.  The jury should be instructed that the mere use of monopoly power in one

12     market to acquire or maintain monopoly power in a second market is not in itself unlawful.

13     *Trinko,* 540 U.S. at 415 (2004) (a viable leveraging claim "presupposes anticompetitive conduct"

14     in addition to the use of monopoly power to acquire or maintain power in a second market). The

15     jury should be instructed that the required element of anticompetitive conduct in this case cannot

16     be the development and distribution by Apple of products incompatible with rivals' products.

17     *Foremost Pro Color*, 703 F.2d at 544-45 (the introduction by a monopolist of a product

18     incompatible with those of its rivals' by itself does not violate Section 2; a monopolist selling such

19     incompatible products has "no duty to assist [competing sellers of complementary products] to

20     survive or expand") (quotation marks and citations omitted); Order Decertifying Classes at 9 (Dec.

21     21, 2009) (Dkt. 303) ("Plaintiffs must allege willful conduct beyond interoperability and

22     incompatibility" to support Section 2 liability).

23         After *Trinko*, it is clear that there can be no claim of monopoly leveraging without

24     anticompetitive conduct.  And the scope of alleged anticompetitive conduct is well defined in this

25     case.  Plaintiffs' proposed instruction invites the jury to ignore the Court's specific prior holdings

26     and instructions on what does and does not constitute anticompetitive conduct and find liability

27     based solely on the incompatibility between iTunes versions 7.0 and 7.4 and third party software.

28

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

83

1    The last sentence of Plaintiffs' proposed instruction also incorrect states that the jury

2    "must" find for Plaintiffs without addressing other essential elements of Plaintiffs' claims such as

3    injury and damages.

4    **<u>Plaintiffs</u>:**

5    A leveraging instruction is appropriate and necessary in this case.  As the Ninth Circuit

6    made clear in *Allied Orthopedic*, even if a product design change results in a genuine product

7    improvement, a plaintiff may still prevail on a monopoly maintenance claim if that design change

8    is associated with some other anticompetitive conduct, such as  "an anticompetitive abuse or

9    leverage of monopoly power."  *Allied Orthopaedic*, 592 F.3d at 1000.  Plaintiffs' Instruction No.

10   32 should be adopted over Apple's Instruction No. 32 because plaintiffs' proposal is based more

11   closely on the ABA Model Instruction.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1

## NO. 33:  MONOPOLIZATION – INTERSTATE COMMERCE

2

      The Sherman Act applies only to conduct that is within the flow of interstate commerce or

3

affects interstate commerce.  In this case, the parties have stipulated that Apple's conduct is within

4

the flow of interstate commerce and therefore this element is not disputed.

5

6

### AUTHORITY

7

ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) A-13

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                        No. C 05-00037 YGR

## NO. 34:  SHERMAN ACT SECTION 2: ATTEMPT TO MONOPOLIZE

Plaintiffs allege that they were injured by Apple's unlawful attempt to monopolize.  To prevail on their claim of attempted monopolization, Plaintiffs must prove each of the following elements for the time period between September 2006 and March 2009, by a preponderance of the evidence:

**First,** that Apple engaged in anticompetitive conduct;

**Second,** that Apple had a specific intent to achieve monopoly power in the alleged Portable Digital Media Player Market;

**Third,** that there was a dangerous probability that Apple would achieve its goal of monopoly power in the alleged Portable Digital Media Player Market;

**Fourth,** that Apple's conduct occurred in or affected interstate commerce; and

**Fifth,** that Plaintiffs were injured in their business or property by Apple's anticompetitive conduct.

You will notice that certain elements of an attempted monopolization claim are also elements of a monopolization claim.  As a result, where appropriate, in instructing you on the elements of this claim, the Court will refer back to instructions on the monopolization claim.

If you find that the evidence is insufficient to prove any one or more of these elements, then you must find for Apple and against Plaintiffs on Plaintiffs' claim of attempted monopolization. If you find that the evidence is sufficient to prove all five elements, then you must find for Plaintiffs and against Apple on Plaintiffs' claim of attempted monopolization.

## AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) C-84.

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                   No. C 05-00037 YGR

1

## NO. 35:  ANTICOMPETITIVE CONDUCT (ATTEMPT TO MONOPOLIZE)

2       To establish their claim of attempted monopolization, Plaintiffs must show that Apple

3   engaged in anticompetitive conduct, coupled with intent to monopolize and a dangerous

4   probability that Apple would succeed.  The definition of anticompetitive conduct is the same for

5   monopolization and attempted monopolization, so in determining whether Apple engaged in

6   anticompetitive conduct for the purposes of Plaintiffs' attempted monopolization claim, you

7   should apply the instructions the Court just gave you on anticompetitive conduct with regard to the

8   monopolization claim.

9       If you find that Plaintiffs have proved by a preponderance of the evidence that Apple

10  engaged in anticompetitive conduct, then you must consider whether Plaintiffs have proved the

11  remaining elements of their attempted monopolization claim.  If, however, you find that Plaintiffs

12  did not prove this element by a preponderance of the evidence, then you must find for Apple and

13  against Plaintiffs on their attempted monopolization claim.

14

15                              **AUTHORITY**

16  ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) C-88.

17

18

19

20

21

22

23

24

25

26

27

28  **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1

## APPLE'S PROPOSED INSTRUCTION NO. 36:  SPECIFIC INTENT (ATTEMPT TO

2

## MONOPOLIZE)

3        The second element that Plaintiffs must prove is that Apple had a specific intent to

4   monopolize a relevant market.  To do so, Plaintiffs must first prove the alleged Portable Digital

5   Media Player Market was a relevant market for antitrust purposes for the time period between

6   September 2006 and March 2009.  If Plaintiffs prove that the Portable Digital Media Player

7   Market was a relevant market, and that Apple had a specific intent to monopolize that market, you

8   must find that Plaintiffs have proved this element of their attempted monopolization claim and you

9   should consider the other elements of the claim.  If you find that Plaintiffs fail to prove either of

10  these points, then you must find for Apple on Plaintiffs' attempted monopolization claim.

11       If you find that Plaintiffs have proven that the Portable Digital Media Player Market is the

12  relevant antitrust market, you must then decide whether Apple had the specific intent to

13  monopolize that market.  In other words, you must decide if the evidence shows that Apple acted

14  with the conscious aim of acquiring the power to control prices and to exclude or destroy

15  competition in that market.

16       There are several ways in which Plaintiffs may prove that Apple had the specific intent to

17  monopolize.  There may be evidence of direct statements of Apple's intent to obtain a monopoly

18  in the relevant market.  Such proof of specific intent may be established by documents prepared by

19  responsible officers or employees of Apple at or about the time of the conduct in question or by

20  testimony concerning statements made by responsible officers or employees of defendant.  You

21  must be careful, however, to distinguish between Apple's intent to compete aggressively (which is

22  lawful), which may be accompanied by aggressive language, and a true intent to acquire monopoly

23  power by using anticompetitive means.

24       Even if you decide that the evidence does not prove directly that Apple actually intended to

25  obtain a monopoly, specific intent may be inferred from what Apple did.  For example, if the

26  evidence shows that the natural and probable consequence of Apple's conduct in the relevant

27  market was to give Apple control over prices and to exclude or destroy competition, and that this

28

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

1    was plainly foreseeable by Apple, then you may (but are not required to) infer that Apple

2    specifically intended to acquire monopoly power.

3

4                                    **AUTHORITY**

5    ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) C-90 (modified).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                         No. C 05-00037 YGR

1  **PLAINTIFFS' PROPOSED INSTRUCTION NO. 36:  SPECIFIC INTENT TO**

2  **MONOPOLIZE A RELEVANT MARKET**

3        The first element of an attempted monopolization claim that plaintiffs must prove by a

4  preponderance of the evidence is that Apple had a specific intent to monopolize the market in

5  which plaintiffs allege that the iPod competes, that is, the market for Portable Digital Media

6  Players.  This is the same market as the market relevant to plaintiffs claim of actual

7  monopolization, about which the Court instructed you earlier.  You must determine whether

8  plaintiffs have proven that Apple acted with the conscious aim of obtaining the power to control

9  prices and to exclude or handicap competition in this alleged market.

10       There are two ways plaintiffs may prove that Apple had the specific intent to monopolize.

11  First, plaintiffs may present evidence of direct statements of Apple's intent to obtain a monopoly

12  in the relevant market. Such proof of specific intent may be established by documents prepared by

13  responsible officers or employees of Apple at or about the time of the conduct in question or by

14  testimony concerning statements made by responsible officers or employees of Apple.  You must

15  be careful, however, to distinguish between Apple's intent to compete aggressively (which is

16  lawful), which may be accompanied by aggressive language, and a true intent to acquire monopoly

17  power by using anticompetitive means.

18       Second, even if you decide that the evidence does not prove directly that Apple specifically

19  intended to obtain a monopoly, specific intent may be inferred from what Apple did.  For example,

20  if the evidence shows that the natural and probable consequence of Apple's conduct in the relevant

21  market was to give Apple control over prices and to exclude or handicap competition, and that this

22  was plainly foreseeable by Apple, then you may (but are not required to) infer that Apple

23  specifically intended to acquire monopoly power.

24                                    **AUTHORITY**

25  ABA Model Jury Instructions in Civil Antitrust at C-90-C-91; *Smithkline Beecham Corp. v.*

26  *Abbott Labs.*, No. 07cv5702, ECF No. 485, filed Mar. 24, 2011 (N.D. Cal.) (Wilken, J.)

27  (modified).

28  **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1  **PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 36**

2  **Apple**:

3  Apple objects to Plaintiffs' proposed instruction for the same reason it earlier objected to

4  Plaintiffs' instruction on the definition of monopoly power as including the ability to "handicap"

5  rivals; monopoly power requires the power to "exclude" not just "handicap."

6  **Plaintiffs**:

7  Although Apple's instruction largely tracks the ABA Model Instruction, it fails to include

8  the phrase "or handicapping competition" when discussing the element of anticompetitive

9  conduct. Apple refused to agree to this language despite the fact that it comes from a jury

10  instruction approved by the Supreme Court in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,

11  472 U.S. 585, 597 (1985). There, the District Court instructed the jury that anticompetitive

12  conduct meant conduct "which unnecessarily excludes ***or handicaps*** competitors." *Id*. at 597

13  (emphasis added). This change is proper in light of plaintiffs' contention that Apple unnecessarily

14  handicapped its competitors. Because plaintiffs' proposed instruction more accurately reflects the

15  law, it should be adopted.

16

17

18

19

20

21

22

23

24

25

26

27

28  **Date Submitted: October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                        No. C 05-00037 YGR

1

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

## APPLE'S PROPOSED INSTRUCTION NO. 37:  DANGEROUS PROBABILITY OF SUCCESS (ATTEMPT TO MONOPOLIZE)

If you find that Apple had the specific intent to achieve a monopoly and engaged in significant anticompetitive conduct, you also must determine if the evidence shows the next element of attempt to monopolize: namely, that there was a dangerous probability that Apple would succeed in achieving monopoly power if it continued to engage in the same or similar conduct.

As the Court has already instructed you, monopoly power is the power to control prices and exclude competition in a relevant antitrust market.  More precisely, a firm is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time.

In determining whether there was a dangerous probability that Apple would acquire monopoly power, you should consider such factors as:

**First**, Apple's market share between September 2006 and March 2009;

**Second**, the trend in Apple's market share at that time;

**Third**, whether the barriers to entry or expansion into the market made it difficult for competitors to enter the market or expand their sales in the market;

**Fourth**, the likely effect of any anticompetitive conduct on Apple's share of the market; and

**Fifth**, the effect of factors other than any anticompetitive conduct on Apple's market share.

Again, the purpose of looking at these and other factors is to determine whether there was a dangerous probability that Apple would ultimately acquire monopoly power through the use of anticompetitive conduct.  A dangerous probability of success need not mean that success was nearly certain, but it does mean that there was a substantial and real likelihood that Apple would ultimately acquire monopoly power.

92

JOINT PROPOSED JURY INSTRUCTIONS                                        No. C 05-00037 YGR

**AUTHORITY**

ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) C-95 (modified).

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

1    **PLAINTIFFS' PROPOSED INSTRUCTION NO. 37:  DANGEROUS PROBABILITY OF**

2    **SUCCESS**

3         The second element of an attempted monopolization claim that plaintiffs must prove by a

4    preponderance of the evidence is that there was a dangerous probability that Apple would succeed

5    in acquiring monopoly power in the market in which the iPod competes if Apple continued to

6    engage in anticompetitive conduct.  As the Court instructed you earlier, monopoly power is the

7    power to control prices and exclude or handicap competition in a relevant antitrust market.  In

8    determining whether there was a dangerous probability that Apple would acquire the ability to

9    control prices in the relevant market, you should consider the factors included in Instructions

10   _____ which the Court gave earlier.  A dangerous probability of success need not mean

11   that success was nearly certain, but it does mean that there was a substantial and real likelihood

12   that Apple would ultimately acquire monopoly power.

13

14                                    **AUTHORITY**

15   ABA Model Jury Instructions in Civil Antitrust at C-95-C-96; *Smithkline Beecham Corp. v.*

16   *Abbott Labs.*, No. 4:07-cv-5702-CW, ECF No. 485, filed Mar. 24, 2011 (N.D. Cal.) (Wilken, J.)

17   (modified).

18

19

20

21

22

23

24

25

26

27

28   **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                         No. C 05-00037 YGR

1

**PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 37**

2

**Apple:**

3

Apple objects to Plaintiffs' proposed instruction as providing insufficient guidance to the

4

jury as to the identification of a dangerous probability of success.

5

**Plaintiffs:**

6

Plaintiffs' version of this instruction includes a concise statement of plaintiffs' claims and

7

correctly recites the standard for determining whether there was a dangerous probability that

8

Apple would acquire the ability to control prices in the relevant market.  Plaintiffs' proposal is

9

simply a condensed, easy to understand version of the ABA Model Rules.

10

In contrast, Apple's version is a lengthy instruction that adds language nowhere found in

11

the ABA Model Rules.  The ABA Model Rules identify four factors for the jury to consider in

12

determining whether there was a dangerous probability that Apple would acquire the ability to

13

control prices in the relevant market.  Presumably because it believes that the jury will find against

14

it on this element, Apple created and then added a fifth factor - "the effect of factors other than any

15

anticompetitive conduct on Apple's market share." Not only does Apple fail to provide any

16

authority for this addition, the language used by Apple is too vague and ambiguous to provide

17

guidance to the jury.

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS                                      No. C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

**APPLE'S PROPOSED INSTRUCTION NO. 38:  DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. § 1201(a)(1)(A)**

A defendant is not liable for a violation of the antitrust laws if the conduct alleged to have been restrained—here, RealNetworks's "translation" of the digital rights management ("DRM") tool on audio files purchased and downloaded from RealNetworks's Music Store to one that iPods would falsely interpret as Apple's proprietary DRM tool—was itself unlawful.

Section 1201(a)(1)(A) of the Digital Millennium Copyright Act prohibits circumventing a technological measure that effectively controlled access to a protected work.  The elements of a Section 1201(a)(1)(A) violation are:

1.   Apple used a technological measure that effectively controlled access to a copyright protected work; and

2.   RealNetworks circumvented Apple's technological measure.

A technological measure "effectively controls access to a work" if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work.

To "circumvent a technological measure" means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner.  A company has circumvented a technological measure if the company does so directly or indirectly by inducing, causing, encouraging, or materially contributing to the circumvention of a technological measure by end users.

If you find that RealNetworks violated the DCMA, then you must find for Apple and against the Plaintiffs on their monopolization and attempted monopolization claims under the Sherman Act.


**AUTHORITY**

17 U.S.C. § 1201(a)(1)(A); (a)(3); *In re Canadian Import Antitrust Litig.*, 470 F.3d 785, 790-92 (8th Cir. 2006) (elimination of illegal competition does not cause antitrust injury); *Modesto*

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1    *Irrigation Dist. v. Pac. Gas & Elec. Co.*, 309 F.Supp.2d 1156, 1169-70 (N.D. Cal. 2004) ("Courts

2    have long recognized that an action under the antitrust laws will not lie where the business

3    conducted by the plaintiff, and alleged to have been restrained by the defendant, was itself

4    unlawful.") (quotation marks omitted).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

1

**PLAINTIFFS' STATEMENT REGARDING APPLE'S PROPOSED INSTRUCTION**

2

**NO. 38**

3       This instruction is the first of a series of patently inappropriate instructions which threaten

4   to convert this antitrust trial into an extended referendum on the legality of the release of Harmony

5   by RealNetworks, a non-party to this lawsuit.  *See* Apple's Proposed Instruction Nos. 38-42.

6       Plaintiffs object to this instruction.  Apple's proposed instruction refers to an affirmative

7   defense not asserted in its answer.  Moreover, in its response to plaintiffs' discovery requests

8   regarding the DMCA, Apple took the position that "documents discussing the Digital Millennium

9   Copyright Act ***are not relevant to the claims and defenses in this action***."  Having refused to

10  produce any evidence relating to the Digital Millennium Copyright Act ("DMCA") during

11  discovery, Apple cannot now pursue a defense at trial based on the DMCA.  Apple has waived this

12  defense and is not entitled to an instruction on this issue.  Fed. R. Civ. P. 8(c); *LINC Fin. Corp. v.*

13  *Onwuteaka*, 129 F.3d 917, 921 (7th Cir. 1997) (affirmative defense of lack of standing must be

14  raised in defendant's answer or it is waived).

15      Even assuming Apple had not already waived this defense, Apple's proposed instruction

16  has no applicability or relevance here.  Apple asks the Court to instruct the jury that it is not liable

17  for plaintiffs' antitrust claims if RealNetworks violated the DMCA.  However, the DMCA "does

18  not limit the scope of the antitrust laws, either explicitly or implicitly."  *Chamberlain Grp., Inc. v.*

19  *Skylink Techs., Inc.*, 381 F.3d 1178, 1201 (Fed. Cir. 2004).  The DMCA is not designed to protect

20  Apple's, or any other company's, monopoly gained through a digital rights management or similar

21  "lock-out" program, but rather only protects the underlying copyright-protected artistic expression.

22  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 536 (6th Cir. 2004) (a

23  "lock-out" code, i.e., one the "requires that a particular code sequence be included in the

24  component device to permit its use," is generally precluded from copyright protection); *see also*

25  *id*. at 553 ("Giving authors monopolies over manufactured goods as well as over their creative

26  expressions will clearly not 'promote the Progress of Science and the Useful Arts,' but rather

27  would stifle progress by stamping out competition from manufacturers who may be able to design

28  better or less expensive [products].") (Merritt, C.J. concurring).

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

Not surprisingly, Apple's proposed instruction does not track or otherwise derive from any instruction in the ABA Model Instructions on Civil Antitrust Claims (or any other authority offering model jury instructions for antitrust claims). Rather, it is simply an instruction of Apple's own creation.

Apple cites two cases in support of its instruction: *In re Canadian Import Antitrust Litig.*, 470 F.3d 785 (8th Cir. 2006) and *Modesto Irrigation Dist. v. Pac. Gas & Elec. Co.*, 309 F. Supp. 2d 1156 (N.D. Cal. 2004), *aff'd.* 158 Fed. Appx. 807 (9th Cir. 2005). However, neither case applies here. In both cases, the court dismissed plaintiff's claims because the ***plaintiff itself*** did not have standing.

In *Modesto*, the Modesto Irrigation District alleged that PG&E violated the Sherman Act when it attempted to prevent the Irrigation District from offering electric services in Pittsburg, California. 309 F. Supp. 2d at 1158. The court dismissed plaintiff's complaint on the ground that plaintiff failed to comply with California law requiring prior approval from a state agency before attempting to provide electric service. *Id*. at 1162. Thus, it explained, plaintiff could not show an antitrust injury because Modesto Irrigation possessed neither the legal right nor the necessary permission to expand its services into Pittsburg. *Id*. The court in the *Canadian Import Antitrust Litigation* similarly found that the plaintiff itself lacked standing. In that case, which did not involve monopolization claims, plaintiffs alleged that several drug companies had conspired to suppress the prices of Canadian prescription drugs imported for personal use. 470 F.3d at 787. Defendants moved to dismiss plaintiffs' complaint, arguing that the higher prices of which plaintiffs complained were the result of the government's prohibition on the importation of drugs, not the conduct of the drug manufacturers. *Id*. at 791. The court agreed and dismissed the claims on the ground that plaintiffs could not show antitrust injury. *Id*. ("The absence of competition from Canadian sources in the domestic prescription drug market, therefore, is caused by the federal statutory and regulatory scheme adopted by the United States government, not by the conduct of the defendants."). In neither case did the court suggest, as Apple does here, that a non-party's lack of standing under the antitrust laws somehow precludes a separate party from recovering under the same law.

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1    Here, however, there is no suggestion that plaintiffs and class members lack standing.  Nor

2    could there be. Plaintiffs and class members not only have standing to sue separate from non-party

3    RealNetworks, they are preferred "efficient enforcers" of the antitrust laws.  *Illinois Brick Co. v.*

4    *Illinois*, 431 U.S. 720, 745-46 (1977) (direct purchasers stand in "a preferred position as private

5    attorneys general" to enforce the antitrust laws); *In re Industrial Gas Antitrust Litig.*, 681 F.2d

6    514, 520 (7th Cir. 1982) ("An appropriate balance is achieved by granting standing only to those

7    who, as consumers or competitors, suffer immediate injuries with respect to their business or

8    property, while excluding persons whose injuries were more indirectly caused by the antitrust

9    conduct.  It is this select class of plaintiffs that can impose the deterrent sting of treble damages at

10   the smallest cost of enforcement.").  Thus, even if Apple was able to somehow establish at trial

11   that RealNetworks violated the DMCA (or otherwise did not have standing to pursue its claims

12   against Apple), it would not preclude a recovery by the plaintiffs and class members.

13   Finally, if Apple is permitted to raise this long-waived defense just before trial, Apple must

14   be compelled to produce all the related documents that it withheld on the basis of attorney-client

15   privilege, as it has now waived that privilege under the advice of counsel doctrine.  *See*, *e.g.*, *In re*

16   *Fresh & Process Potatoes Antitrust Litig.*, 4:10-MD-02186-BLW, 2014 U.S. Dist. LEXIS 50828,

17   at *20-*37 (D. Idaho Apr. 11, 2014) (granting plaintiffs' motion to compel documents from

18   specific defendants relating to their defense of good faith intention to comply with the law).

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS                           No. C 05-00037 YGR

B O I E S , S C H I L L E R & F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1

2

**APPLE'S PROPOSED INSTRUCTION NO. 39:  COPYRIGHT INFRINGEMENT, 17**

**U.S.C. § 501(a)-(b)**

3   A defendant is not liable for a violation of the antitrust laws if the conduct alleged to have

4   been restrained—here, RealNetworks's "translation" of the digital rights management ("DRM")

5   tool on audio files purchased and downloaded from RealNetworks's Music Store to one that iPods

6   would falsely interpret as Apple's proprietary DRM tool—was itself unlawful.

7   Anyone who copies original elements of a copyrighted work during the term of the

8   copyright without the owner's permission infringes the copyright.  A copyright is the exclusive

9   right to copy.  This right to copy includes the exclusive rights to:

10     1.   reproduce the copyrighted work;

11     2.  prepare derivative works based on the copyrighted work by adapting or transforming it;

12     3.  distribute copies of either the copyrighted work or any unauthorized derivative work;
        and

13

14     4.  display publicly a copy of either the copyrighted work or any unauthorized derivative
        work.

15

16   It is the owner of a copyright who may exercise these exclusive rights to copy.  The term

17   "owner" includes the author of the work, or one who has been assigned the ownership of exclusive

18   rights in the work.  In general, copyright law protects against production and adaptation,

19   distribution or public display of the owner's copyrighted work or substantially similar copies of

20   the owner's copyrighted work without the owner's permission.  Even though one may acquire a

21   copy of the copyrighted work, the copyright owner retains rights and control of that copy,

22   including uses that may result in additional copies or alterations of the copyrighted work.

23   The elements of a copyright violation are:

24     5.  Apple is the owner of a valid copyright; and

25     6.  RealNetworks copied original elements from the copyrighted work.

26   It is undisputed that Apple is the owner of a valid copyright in its software.  Therefore, if

27   you find that RealNetworks copied original elements from Apple's software, then you must find

28

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1  for Apple and against the Plaintiffs on their monopolization and attempted monopolization claims

2  under Section 2 of the Sherman Act.

3

4  **AUTHORITY**

5  17 U.S.C. §§ 106, 501(a)-(b); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, 545 U.S. 913, 936-

6  37 (2005); *In re Canadian Import Antitrust Litig.*, 470 F.3d 785, 790-92 (8th Cir. 2006)

7  (elimination of illegal competition does not cause antitrust injury); *Modesto Irrigation Dist. v.*

8  *Pac. Gas & Elec. Co.*, 309 F.Supp.2d 1156, 1169-70 (N.D. Cal. 2004) ("Courts have long

9  recognized that an action under the antitrust laws will not lie where the business conducted by the

10 plaintiff, and alleged to have been restrained by the defendant, was itself unlawful.") (quotation

11 marks omitted).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1

**PLAINTIFFS' STATEMENT REGARDING APPLE'S PROPOSED INSTRUCTION**

2

**NO. 39**

3      Plaintiffs incorporate their objections in response to Apple's Proposed Instruction No. 38.

4  Apple waived this defense by failing to assert it in its answer.  Moreover, as explained above, it is

5  no defense to Plaintiffs' claims that RealNetworks, a non-party, may have committed copyright

6  infringement.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

**APPLE'S PROPOSED INSTRUCTION NO. 40:  BREACH OF CONTRACT – iTUNES TERMS OF USE**

A defendant is not liable for a violation of the antitrust laws if the conduct alleged to have been restrained—here, RealNetworks's "translation" of the digital rights management ("DRM") tool on audio files purchased and downloaded from RealNetworks's Music Store to one that iPods would falsely interpret as Apple's proprietary DRM tool—was itself unlawful.

The elements of a breach of contract are:

1.   RealNetworks entered into a contract with Apple;

2.   That Apple did all, or substantially all, of the significant things that the contract required it to do;

3.   That RealNetworks failed to do something that the contract required it to do, or did something that the contract prohibited it to do; and

4.   That Apple was harmed by RealNetworks's conduct.

It is undisputed that any person or entity, including RealNetworks, that downloaded iTunes entered into a contract with Apple, namely the iTunes Terms of Use.  It also is undisputed that Apple did all, or substantially all, of the significant things that the iTunes Terms of Use required it to do.  Finally, it also is undisputed that the iTunes Terms of Use required that "You [the person or entity downloading iTunes and agreeing to abide by the iTunes Terms of Use] agree not to attempt to, or assist another person to, circumvent, reverse-engineer, decompile, disassemble, or otherwise tamper with any of the security components related to such Usage Rules for any reason whatsoever"; that "You will not access the Service by any means other than through software that is provided by Apple for accessing the Service"; and that "You agree not to modify the software in any manner or form, or to use modified versions of the software for any purposes including obtaining unauthorized access to the service."

If you find that RealNetworks failed to do something that the iTunes Terms of Use required it to do, or that RealNetworks did something that the iTunes Terms of Use prohibited it to do, and that Apple was harmed thereby, then you must find for Apple and against the Plaintiffs on their monopolization and attempted monopolization claims under Section 2 of the Sherman Act.

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

1

**AUTHORITY**

2 Cal. Civ. Code § 1549; *H.A. Marshall Investments v. JPMorgan Chase Bank, N.A.*, No. 12-CV-

3 05807 YGR, 2013 WL 146513, at *3 (N.D. Cal. Jan. 10, 2013); *In re Canadian Import Antitrust*

4 *Litig.*, 470 F.3d 785, 790-92 (8th Cir. 2006) (elimination of illegal competition does not cause

5 antitrust injury); *Modesto Irrigation Dist. v. Pac. Gas & Elec. Co.*, 309 F.Supp.2d 1156, 1169-70

6 (N.D. Cal. 2004) ("Courts have long recognized that an action under the antitrust laws will not lie

7 where the business conducted by the plaintiff, and alleged to have been restrained by the

8 defendant, was itself unlawful.") (quotation marks omitted).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 **Date Submitted: October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

1  **PLAINTIFFS' STATEMENT REGARDING APPLE'S PROPOSED INSTRUCTION**

2  **NO. 40**

3      Plaintiffs incorporate their objections in response to Apple's Proposed Instruction No. 38.

4  Apple waived this defense by failing to assert it in its answer.  Moreover, as explained above, it is

5  no defense to Plaintiffs' claims that RealNetworks, a non-party, may have breached the iTunes

6  terms of use.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS                                          No. C 05-00037 YGR

**APPLE'S PROPOSED INSTRUCTION NO. 41:  BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING – iTUNES TERMS OF USE**

A defendant is not liable for a violation of the antitrust laws if the conduct alleged to have been restrained—here, RealNetworks's "translation" of the digital rights management ("DRM") tool on audio files purchased and downloaded from RealNetworks's Music Store to one that iPods would falsely interpret as Apple's proprietary DRM tool—was itself unlawful.

The elements of a breach of the covenant of good faith and fair dealing are:

1.   That RealNetworks and Apple entered into a contract;

2.   That Apple did all, or substantially all, of the significant things that the contract required it to do; and

3.   That RealNetworks unfairly interfered with Apple's right to receive the benefits of the contract; and

4.   That Apple was harmed by RealNetworks's conduct.

It is undisputed that any person or entity, including RealNetworks, that downloaded iTunes entered into a contract with Apple, namely the iTunes Terms of Use.  It also is undisputed that Apple did all, or substantially all, of the significant things that the iTunes Terms of Use required it to do.  Finally, it is undisputed that the iTunes Terms of Use required that "You [the person or entity downloading iTunes and agreeing to abide by the iTunes Terms of Use] agree not to attempt to, or assist another person to, circumvent, reverse-engineer, decompile, disassemble, or otherwise tamper with any of the security components related to such Usage Rules for any reason whatsoever"; that "You will not access the Service by any means other than through software that is provided by Apple for accessing the Service"; and that "You agree not to modify the software in any manner or form, or to use modified versions of the software for any purposes including obtaining unauthorized access to the service."

If you find that RealNetworks unfairly interfered with Apple's right to receive the benefits of the iTunes Terms of Use, and that Apple was harmed by RealNetwork's conduct, then you must find for Apple and against the Plaintiffs on their monopolization and attempted monopolization claims under Section 2 of the Sherman Act.

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

**AUTHORITY**

*Vasquez v. Bank of Am. , N.A.*, No. 13-CV-02902-JST, 2013 WL 6001924, at *14 (N.D. Cal. Nov. 12, 2013); *In re Canadian Import Antitrust Litig.*, 470 F.3d 785, 790-92 (8th Cir. 2006) (elimination of illegal competition does not cause antitrust injury); *Modesto Irrigation Dist. v. Pac. Gas & Elec. Co.*, 309 F.Supp.2d 1156, 1169-70 (N.D. Cal. 2004) ("Courts have long recognized that an action under the antitrust laws will not lie where the business conducted by the plaintiff, and alleged to have been restrained by the defendant, was itself unlawful.") (quotation marks omitted).

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

1

## **PLAINTIFFS' STATEMENT REGARDING APPLE'S PROPOSED INSTRUCTION**

2

## **NO. 41**

3        Plaintiffs incorporate their objections in response to Apple's Proposed Instruction No. 38.

4   Apple waived this defense by failing to assert it in its answer.  Moreover, as explained above, it is

5   no defense to Plaintiffs' claims that RealNetworks, a non-party, may have breached the covenant

6   of good faith and fair dealing.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS                                   No. C 05-00037 YGR

**APPLE'S PROPOSED INSTRUCTION NO. 42:  INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS – iTUNES TERMS OF USE**

A defendant is not liable for a violation of the antitrust laws if the conduct alleged to have been restrained—here, RealNetworks's "translation" of the digital rights management ("DRM") tool on audio files purchased and downloaded from RealNetworks's Music Store to one that iPods would falsely interpret as Apple's proprietary DRM tool—was itself unlawful.

The elements of intentional interference with contractual relations are:

1.  That there were contracts between Apple and persons that downloaded iTunes, namely the iTunes Terms of Use;

2.  That RealNetworks knew of the contracts;

3.  That RealNetworks intended to breach or disrupt the performance of the contracts or knew that breach or disruption of performance of the contracts was certain or substantially certain to occur;

4.  That RealNetworks disrupted the performance of the contracts; and

5.  That Apple was harmed.

It is undisputed that any person or entity that downloaded iTunes entered into a contract with Apple, namely the iTunes Terms of Use.  It also is undisputed that RealNetworks knew of the contracts between Apple and persons that downloaded iTunes, namely the iTunes Terms of Use, which required that "You [the person or entity downloading iTunes and agreeing to abide by the iTunes Terms of Use] agree not to attempt to, or assist another person to, circumvent, reverse-engineer, decompile, disassemble, or otherwise tamper with any of the security components related to such Usage Rules for any reason whatsoever"; that "You will not access the Service by any means other than through software that is provided by Apple for accessing the Service"; and that "You agree not to modify the software in any manner of form, or to use modified versions of the software for any purposes including obtaining unauthorized access to the service."

If you find that RealNetworks intended to breach or disrupt the performance of contracts between Apple and downloaders of iTunes, or knew that breach or disruption of performance of those contracts was certain or substantially certain to occur, that breach or disruption of

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

1   performance of those contracts occurred, and that Apple was harmed thereby, then you must find

2   for Apple and against the Plaintiffs on their monopolization and attempted monopolization claims

3   under Section 2 of the Sherman Act.

4

5                                          **AUTHORITY**

6   *United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.,* No. 12-56809, --- F.3d ----, 2014 WL

7   3973414, at *2 (9th Cir. Aug. 15, 2014); *DocMagic, Inc. v. Ellie Mae, Inc.,* 745 F. Supp. 2d 1119,

8   1143 (N.D. Cal. 2010); *In re Canadian Import Antitrust Litig.,* 470 F.3d 785, 790-92 (8th Cir.

9   2006) (elimination of illegal competition does not cause antitrust injury); *Modesto Irrigation Dist.*

10  *v. Pac. Gas & Elec. Co.,* 309 F.Supp.2d 1156, 1169-70 (N.D. Cal. 2004) ("Courts have long

11  recognized that an action under the antitrust laws will not lie where the business conducted by the

12  plaintiff, and alleged to have been restrained by the defendant, was itself unlawful.") (quotation

13  marks omitted).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1

**PLAINTIFFS' STATEMENT REGARDING APPLE'S PROPOSED INSTRUCTION**

2

**NO. 42**

3        Plaintiffs incorporate their objections in response to Apple's Proposed Instruction No. 38.

4  Apple waived this defense by failing to assert it in its answer.  Moreover, as explained above, it is

5  no defense to Plaintiffs' claims that RealNetworks, a non-party, may have interfered with the

6  contracts between Apple and iTunes users.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

**APPLE'S PROPOSED INSTRUCTION NO. 43:  INJURY AND CAUSATION**

If you find that Apple has violated Section 2 of the Sherman Act as alleged by Plaintiffs, then you must decide if Plaintiffs are entitled to recover damages from Apple.

Plaintiffs are entitled to recover damages for an injury to their business or property if they can establish three elements of injury and causation:

**First,** that Plaintiffs were in fact injured as a result of Apple's alleged violation of the antitrust laws;

**Second,** that Apple's alleged illegal conduct was the material cause of Plaintiffs' injuries; and

**Third,** that Plaintiffs' injuries are injuries of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage."  For Plaintiffs to establish that they are entitled to recover damages, they must prove that they were injured as a result of Apple's alleged violation of the antitrust laws.  Proving the fact of damage does not require Plaintiffs to prove the dollar value of their injury.  It requires only that Plaintiffs prove that they were in fact injured by Apple's alleged antitrust violation.  If you find that Plaintiffs have established that they were in fact injured, you may then consider the amount of Plaintiffs' damages.  It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that Plaintiffs have established that they were in fact injured.

Plaintiffs must also offer evidence that establishes as a matter of fact and with a fair degree of certainty that Apple's alleged illegal conduct was the material cause of Plaintiffs' injury.  This means that Plaintiffs must have proved that some damage occurred to them as a result of Apple's alleged antitrust violation, and not some other cause.  Any alleged injury that is caused by legal conduct, as opposed to anticompetitive conduct, cannot be considered.  It is enough if Plaintiffs have proved that the alleged antitrust violation was the material cause of their injury.  However, if you find that Plaintiffs' injury was caused primarily by something other than the alleged antitrust violation, then you must find that Plaintiffs have failed to prove that they are entitled to recover damages from Apple.

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

1    Finally, Plaintiffs must establish that their injuries are the type of injuries that the antitrust

2  laws were intended to prevent.  This is sometimes referred to as "antitrust injury."  If Plaintiffs'

3  injuries were caused by a reduction in competition or acts that would lead to a reduction in

4  competition, then Plaintiffs' injuries are antitrust injuries.  On the other hand, if Plaintiffs' injuries

5  were caused by heightened competition, the competitive process itself, or by acts that would

6  benefit consumers, then Plaintiffs' injuries are not antitrust injuries and Plaintiffs may not recover

7  damages.

8    However, if Plaintiffs can establish that they were in fact injured by Apple's conduct, that

9  Apple's conduct was the material cause of Plaintiffs' injury, and that Plaintiffs' injury was the

10  type that the antitrust laws were intended to prevent, then Plaintiffs are entitled to recover damages

11  for the injury to their business or property.

12

13                                 **AUTHORITY**

14  ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) F-2-5 (modified); *Comcast Corp.*

15  *v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (liability may be imposed only for harm resulting from

16  anticompetitive conduct, not from other causes; damages models must "measure damages

17  resulting from the particular antitrust injury on which petitioners' liability in this action is

18  premised").

19

20

21

22

23

24

25

26

27

28  **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1    **PLAINTIFFS' PROPOSED INSTRUCTION NO. 43A: REQUIREMENT OF INJURY**

2            The fourth element of an attempted monopolization claim that plaintiffs must prove by a

3    preponderance of the evidence is that class members suffered injury to their business or property.

4    This is the same type of injury as the injury required for the actual monopolization claim.

5

6                                          **AUTHORITY**

7    *Smithkline Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-5702-CW, ECF No. 485, filed Mar. 24,

8    2011 (N.D. Cal.) (Wilken, J.) (modified).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   **Date Submitted: October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                          No. C 05-00037 YGR

1    **PLAINTIFFS' PROPOSED INSTRUCTION NO. 43B:  INJURY AND CAUSATION**

2        If you find that Apple has violated Section 2 of the Sherman Act, then you must decide if

3    members of the class are entitled to recover damages from Apple.

4        Class members are entitled to recover damages if plaintiffs can establish three elements of

5    injury and causation:

6        First, plaintiffs must prove that class members were in fact injured as a result of the alleged

7    violation of the antitrust laws;

8        Second, plaintiffs must prove that the alleged illegal conduct was a material cause of class

9    members' injuries.  This means that plaintiffs must prove that some damage occurred as a result of

10   the alleged antitrust violation, and not some other cause.  Plaintiffs are not required to prove that

11   the alleged antitrust violation was the sole cause of class members' injury; nor do plaintiffs need

12   to eliminate all other possible causes of injury.

13       Third, plaintiffs must prove that class members' injuries are injuries of the type that the

14   antitrust laws were intended to prevent.  If class members' injuries were caused by a reduction in

15   competition, acts that would lead to a reduction in competition, or acts that would otherwise harm

16   consumers, then these injuries are antitrust injuries.  On the other hand, if the injuries were caused

17   by heightened competition, the competitive process itself, or acts that would benefit consumers,

18   then they are not antitrust injuries and class members' may not recover damages for those injuries

19   under the antitrust laws.

20       Plaintiffs are permitted to rely solely on expert testimony to prove injury and causation.

21       If plaintiffs can establish these three elements of injury and causation, then class members

22   are entitled to recover damages for the injury to their business or property.

23

24                              **AUTHORITY**

25   ABA Model Jury Instructions in Civil Antitrust Cases Causation and Damages Instruction 1 at F-2

26   to F-5 (2005) (modified); Clayton Act, §4, 15 U.S.C. §15; *Apple, Inc. v. Samsung Electronics Co.,*

27   *Ltd.*, No. 11-cv-01846-LHK, ECF No. 1893, filed Aug. 21, 2012 (N.D. Cal.) (Koh, J.); *In re Apple*

28   *iPod iTunes Antitrust Litig.*, No. C-05-00037-YGR, 2014 U.S. Dist. LEXIS 136437, at *33-*35

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1  (N.D. Cal. Sept. 26, 2014); *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966 (C.D. Cal.

2  2012); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136 (D.N.J. 2002), *aff'd*, 84 F. App'x 257 (3d

3  Cir. 2004).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1  **PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 43**

2  **Apple:**

3  Apple objects to Plaintiffs' proposed Instruction No. 43A ("Requirement of Injury") as

4  needlessly duplicative of the parties' instruction on the elements of attempted monopolization.

5  Apple objects to Plaintiffs' proposed Instruction No. 43B as giving insufficient guidance to

6  the jury on the concept of antitrust injury and the need to separate lawful from unlawful causes of

7  injury.

8  **Plaintiffs:**

9  The Court should adopt plaintiffs' proposed instructions on injury and causation, as they

10  state the relevant legal principles in a clear and concise manner.

11  Plaintiffs' proposed instructions track the ABA Model Instructions, but differ in three

12  respects.  First, the instructions condense the lengthy and repetitive explanations found in the

13  ABA model and places each element-specific explanation next to the element, for clarity.  Second,

14  the instruction omits the ABA's instruction separating out fact of damages from the amount of

15  damages, as that distinction is clearly drawn in the jury verdict form.

16  This proposal is identical to the one proposed by Apple (as a plaintiff) in *Apple v. Samsung*

17  and adopted in the court by that case. Ex. A, Apple's (Proposed) Final Jury Instruction No. 91, at

18  347; *Apple v. Samsung* (Jury Instruction No. 84, at 109.

19  Plaintiffs' proposal also differs from the ABA Model Instruction in that it includes a

20  sentence advising the jury that plaintiffs are permitted to rely solely on expert testimony in

21  showing injury and causation.  This is a well settled principle of law that has been incorporated

22  into the jury instructions in many similar cases and should be included in the jury instructions

23  here.  *See Callahan v. A.E.V., Inc.*, 182 F.3d 237, 257 (3d Cir. 1999) (expert report of antitrust

24  plaintiff was "sufficient evidence of causation to defeat a motion for summary judgment"); *Nat'l*

25  *Bancard Corp. v. Visa, U.S.A., Inc.*, 112 F.R.D. 62, 68 (S.D. Fla. 1986) ("Expert testimony is

26  probably indispensable, or, at least, important to the determination of the issues in any complex

27  antitrust action."); *see also Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302,

28  318 (1st Cir. 2002) (reversing summary judgment for the defendant on a false advertising claim in

118

1    part because the plaintiff was entitled to rely on the "testimony of expert witnesses to demonstrate

2    causation").  Indeed, this Court relied upon plaintiffs' expert in finding that there was a triable

3    issue of fact as to whether iTunes 7.0 was a genuine product improvement.  *In re Apple iPod*

4    *iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1146-47 (N.D. Cal. 2011).  It also recently found

5    that the testimony of plaintiffs' expert economist, Dr. Roger Noll, was admissible for, *inter alia*,

6    the purpose of showing injury and causation.  *Apple*, 2014 U.S. Dist. LEXIS 136437, at *33-*35.

7    　　Apple's proposal, in contrast to its proposal when it was a plaintiff, is unnecessarily

8    lengthy, repetitive, and confusing.  It adds language to the ABA Model Rule that is partly

9    repetitive and partly incorrect as a matter of law.  *See, e.g., Zenith Radio Corp. v. Hazeltine*

10   *Research, Inc.*, 395 U.S. 100, 114 n.9 (1969) (plaintiff need only prove that "some damage"

11   caused by antitrust violation).  Its citation to the class certification decision in *Comcast  Corp. v.*

12   *Behrend*, __ U.S. __, 133 S.Ct. 1426 (2013) is inapposite.  *See, e.g.*, *In re Urethanes Antitrust*

13   *Litig.*, No. 13-3215, __ F.3d __ (10th Cir. Sept. 29, 2014) (distinguishing post-trial procedural

14   posture from Comcast, in which the Court affirmed denial of certification where the district court

15   had rejected three out of four theories of impact).

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1    **APPLE'S PROPOSED INSTRUCTION NO. 44A:  ANTITRUST DAMAGES –**

2    **INTRODUCTION AND PURPOSE**

3         If you find that Apple violated the antitrust laws and that this violation caused injury to

4    Plaintiffs, then you must determine the amount of damages, if any, Plaintiffs are entitled to

5    recover.  If you reach a verdict for Apple on the issue of liability, you should not consider the

6    issue of damages, and you may disregard the damages instructions that the Court is about to give.

7    The law provides that Plaintiffs should be fairly compensated for all damages to their business or

8    property that was a direct result or likely consequence of the conduct that you have found to be

9    unlawful.

10        The purpose of awarding damages in an antitrust action is to put injured Plaintiffs as near

11   as possible to the position in which they would have been if the alleged antitrust violation had not

12   occurred.  The law does not permit you to award damages to punish a wrongdoer – what we

13   sometimes refer to as punitive damages – or to deter Apple from particular conduct in the future,

14   or to provide a windfall to someone who has been the victim of an antitrust violation.  You are

15   also not permitted to award to the Plaintiffs an amount for attorneys' fees or the costs of

16   maintaining this lawsuit.  Antitrust damages are compensatory only.  In other words, they are

17   designed to compensate Plaintiffs for the particular injuries they suffered as a result of the alleged

18   violation of the law.

19

20                              **AUTHORITY**

21   ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) F-12 (verbatim).

22

23

24

25

26

27

28   **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                          No. C 05-00037 YGR

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

**APPLE'S PROPOSED INSTRUCTION NO. 44B:  SPECULATION NOT PERMITTED**

Damages may not be based on guesswork or speculation.  If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages.  If the amount of damages attributable to an antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, then you may not award damages.

You are permitted to make reasonable estimates in calculating damages.  It may be difficult for you to determine the precise amount of damage suffered by the Plaintiffs.  If Plaintiffs establish with reasonable probability the existence of an injury proximately caused by Apple's antitrust violation, you are permitted to make a just and reasonable estimate of the damages.  So long as there is a reasonable basis in the evidence for a damages award, Plaintiffs should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty.  The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates.  Plaintiffs must prove the reasonableness of each of the assumptions upon which the damages calculation is based.  If you find that Plaintiffs have failed to carry their burden of providing a reasonable basis for determining damages, then your verdict must be for Apple.  If you find that Plaintiffs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

**AUTHORITY**

ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) F-15-16 (verbatim).

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

1
2

## APPLE'S PROPOSED INSTRUCTION NO. 44C:  CAUSATION AND DISAGGREGATION

3       If you find that Apple violated the antitrust laws and that Plaintiffs were injured by that

4   violation, Plaintiffs are entitled to recover for such injury that was the direct and proximate result

5   of the unlawful acts of Apple.  Plaintiffs are not entitled to recover for injury that resulted from

6   other causes, including higher prices for Apple's products due to increased demand or increased

7   product quality, or the effect of iTunes 4.7.

8       Plaintiffs claim that the class members, that is, consumers who purchased iPods directly

9   from Apple and companies that purchased iPods directly from Apple and then resold them

10  (companies that have been referred to as "resellers" by the parties) suffered injury because they

11  paid increased prices for the following iPod models between September 12, 2006 and March 31,

12  2009, as a result of Defendant's alleged antitrust violation:

13          iPod Classic (6th generation)
            iPod Classic (7th generation)
14          iPod nano (2nd generation)
            iPod nano (3nd generation)
15          iPod nano (4nd generation)
            iPod touch (1st generation)
16          iPod touch (2nd generation)

17

18      In the normal course of business activity, prices might rise for a variety of factors that have

19  nothing to do with the antitrust laws.  For example, prices may rise because producers' costs rose,

20  demand for a product increased, changing technology or product features made a product more

21  valuable to consumers, or the marketplace otherwise changed to allow producers to raise prices

    independent of any antitrust violation.
22

23      Plaintiffs bear the burden of showing that consumers' and resellers' injuries were caused

24  by Apple's alleged antitrust violation – as opposed to any other factors.  If you find that the

25  alleged injuries were caused by factors other than Apple's alleged antitrust violation, then you

    must return a verdict for Apple.  If you find that the alleged injuries were caused in part by
26
    Apple's alleged antitrust violation and in part by other factors, then you may award damages only
27
    for that portion of the alleged injuries that were caused by Apple's alleged antitrust violation.
28

122

1   Plaintiffs bear the burden of proving damages with reasonable certainty, including apportioning

2   damages between lawful and unlawful causes, and between consumers and resellers.  If you find

3   that there is no reasonable basis to apportion Plaintiffs' alleged injury between lawful and

4   unlawful causes, or that apportionment can only be accomplished through speculation or

5   guesswork, then you may not award any damages at all.  If you find that Plaintiffs have proven

6   with reasonable certainty the amount of damage to consumers and resellers caused by Apple's

7   alleged antitrust violation, then you must return a verdict for the Plaintiffs.

8

9                                  **AUTHORITY**

10   ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) F-18-20 (modified); *Comcast*

11   *Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (damages models must "measure damages

12   resulting from the particular antitrust injury on which petitioners' liability in this action is

13   premised").

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1     **PLAINTIFFS' PROPOSED INSTRUCTION NO. 44:  DAMAGES**

2          If you find that plaintiffs prevailed on either of their claims, then you must determine the

3     amount of damages.  Damages means the amount of money that will reasonably and fairly

4     compensate class members for any injury they may have suffered.

5          So long as there is a reasonable basis in the evidence for a damages award, class members

6     should not be denied a right to be fairly compensated just because damages cannot be determined

7     with absolute mathematical certainty.  The amount of damages must, however, be based on

8     reasonable, non-speculative assumptions and estimates.  Plaintiffs are permitted to rely solely on

9     expert testimony to prove the amount of damages.

10         Plaintiffs seek an award of damages based on overcharges they claim class members paid

11    on iPods they purchased.  An overcharge is the difference between the price that a class member

12    paid and the price that the class member would have paid absent the unlawful conduct.

13         Under the applicable federal law, class members are the only persons allowed to sue and

14    recover for any overcharge imposed by Apple because of anticompetitive conduct.  The Court

15    instructs you not to consider whether these class members benefited by the allegedly illegal

16    conduct, in determining the extent of their overcharge damages.  They are entitled to recover the

17    full amount they were overcharged.

18

19                              **AUTHORITY**

20    ABA Model Jury Instructions in Civil Antitrust Cases Damages Instruction 2, 3, & 5 at F-12, F-

21    14, F-15, F-16 & F-22-F23 (2005) (modified); *Smithkline Beecham Corp. v. Abbott Labs.*, No.

22    4:07-cv-5702-CW, ECF No. 485, filed Mar. 24, 2011 (N.D. Cal.) (Wilken, J.); *In re Apple iPod*

23    *iTunes Antitrust Litig.*, No. C-05-00037-YGR, 2014 U.S. Dist. LEXIS 136437, at *33-*35 (N.D.

24    Cal. Sept. 26, 2014); *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966 (C.D. Cal. 2012);

25    *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136 (D.N.J. 2002).

26

27

28    **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

**PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 44**

**Apple:**

Apple objects to Plaintiffs' proposed instruction as providing insufficient guidance to the jury on the purpose of antitrust damages, the requirement of disaggregating damages for resellers and consumers, and on limiting damages to those damages that are the result of unlawful and anticompetitive conduct.  In addition, the first sentence of the last paragraph is both irrelevant and incorrect because federal law does permit indirect purchasers to bring claims under state law for alleged overcharges.  The rest of that paragraph also improperly uses "the Court" in connection with argumentative formulations.

**Plaintiffs:**

Rather than propose a single instruction on the element of damages, as plaintiffs have, Apple has separated its proposal into separate instructions that are designed to confuse and mislead the jury.  *See* Apple's Proposed Instruction Nos. 43, 44A-C.  By proposing multiple instructions on the same topic, Apple is suggesting that plaintiffs' burden is higher than it actually is.

Apple's Proposed Instruction No. 44A is unnecessary and redundant.  It instructs the jury that it should not consider the issue of damages if it finds for Apple on liability.  However, the jury will have already been instructed that plaintiffs cannot recover unless they satisfy all of the elements of their monopolization and attempted monopolization claims, which include the element of damages.  Moreover, the jury will be advised in the verdict form (which will be given to them shortly after the instructions are read) that they should not consider the issue of damages if they find for Apple on liability.

On the issue of damages, the Court should adopt Plaintiffs' Proposed Instruction No. 44, which covers all of the essential points necessary for the jury to determine if plaintiffs and class members sustained damages.  Plaintiffs' simple and straightforward instruction is consistent with the instruction adopted by Judge Wilken in *Smithkline Beecham Corp. v. Abbott Labs.*, No. 4:07-cv-5702-CW, ECF No. 485, filed Mar. 24, 2011 (N.D. Cal.) (Wilken, J.), a similar case involving Section 2 claims.

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

1    *Plaintiffs' Objection to Apple's Proposed Instruction No. 44B.*  Plaintiffs incorporate their

2    objections in response to Apple's Proposed Instruction No. 44A.

3    *Plaintiffs' Objection to Apple's Proposed Instruction No. 44C.*  This is Apple's third

4    proposed instruction on the topic of damages, and it, too, is unnecessary and redundant.

5    In its proposal, Apple suggests that the jury adopt an instruction which states that (i)

6    plaintiffs can only recover for direct and proximate injuries, (ii) proposes that if the jury finds that

7    plaintiffs have suffered no damages, that it must return verdict for Apple, and (iii) that plaintiffs

8    can only recover for losses attributable to unlawful conduct.  However, the jury will have already

9    been given these instructions.  *See* Apple's Proposed Instruction No. 43; Plaintiffs' Proposed

10   Instruction No. 43.  There is no need to describe these principles to the jury for a fourth time.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

**APPLE'S PROPOSED INSTRUCTION NO. 45:  EXPERT TESTIMONY**

You have heard testimony from Plaintiffs' expert, Dr. Roger Noll, and from Apple's experts, Dr. Kevin Murphy and Dr. Robert Topel, regarding the amount of damages to which Plaintiffs claim they are entitled and the proper amount of damages.  If you find that any of the pertinent underlying assumptions made by one of these experts in preparing a damage report are not reasonable or are not proven by a preponderance of the evidence, or if you find that one of these expert's conclusions depend on a comparison of things which have not been proven to be comparable, then you should consider this in determining the weight – if any – you will give to these assumptions and the effect they have on Plaintiffs' damages claim.

**AUTHORITY**

ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) F-46 (verbatim).

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1

**PLAINTIFFS'  STATEMENT REGARDING APPLE'S PROPOSED INSTRUCTION**

2

**NO. 45**

3         This instruction is redundant and unnecessary.  Apple's Proposed Instruction No. 21,

4    which the parties have agreed should be provided to the jury, already instructs the jury on the topic

5    of expert testimony.  In that instruction, the jury will be informed that expert testimony is like any

6    other testimony and, as such, the jury may accept it, reject it, or give as much weight as they think

7    is necessary in light of the expert's reasoning.

8         Also, Apple's proposed instruction mentions both of Apple's experts, but only one of

9    plaintiffs' experts (Prof. Roger Noll).  If this instruction is provided to the jury, it should also

10   reference plaintiffs other experts, David Martin and Jeffrey Woolridge, so that the instruction is

11   balanced.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1

## APPLE'S PROPOSED INSTRUCTION NO. 46:  MITIGATION

2      Plaintiffs may not recover damages for any portion of its injuries that it could have avoided

3  through the exercise of reasonable care and prudence.  Plaintiffs are not entitled to increase any

4  damages through inaction.  The law requires an injured party to take all reasonable steps it can to

5  avoid further injury and thereby reduce its loss.  If Plaintiffs failed to take reasonable steps

6  available to it, and the failure to take those steps results in greater harm to plaintiff than it would

7  have suffered had it taken those steps, then Plaintiffs may not recover any damages for that part of

8  the injury it could have avoided.

9      Apple has the burden of proof on this issue.  Apple must prove by a preponderance of the

10 evidence that Plaintiffs acted unreasonably in failing to take specific steps to minimize or limit

11 their losses, that the failure to take those specific steps resulted in their losses being greater than

12 they would have been had they taken such steps, and the amount by which Plaintiffs' loss would

13 have been reduced had Plaintiffs taken those steps.

14      In determining whether Plaintiffs failed to take reasonable measures to limit their damages,

15 you must remember that the law does not require Plaintiffs to have taken every conceivable step

16 that might have reduced their damages.  The evidence must show that Plaintiffs failed to take

17 commercially reasonable measures that were open to them.  Commercially reasonable measures

18 mean those measures that a prudent person in Plaintiffs' position would likely have adopted, given

19 the circumstances as they appeared at that time.  Plaintiffs should be given wide latitude in

20 deciding how to handle the situation, so long as what Plaintiffs did was not unreasonable in light

21 of the existing circumstances.

22

23                    **AUTHORITY**

24 ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) F-47 (verbatim).

25

26

27

28 **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR

1      **PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 46**

2      **Apple:**

3      Antitrust plaintiffs, like other claims, have a duty to mitigate their alleged damages.  ABA

4 Model Jury Instructions in Civil Antitrust Cases (2005 ed.) F-48 (Notes to model instruction on

5 mitigation:  "The obligation to mitigate damages in an antitrust case is clear.").

6      **Plaintiffs:**

7      Plaintiffs object to Apple's request that the jury be instructed on the affirmative defense of

8 mitigation, which is inapplicable here.

9      Apple's "defense" of mitigation is akin to the defense of mitigation in a price-fixing

10 overcharge case, and courts in such cases have regularly held that a plaintiff cannot mitigate or

11 otherwise offset damages.  *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M-07-1827

12 SI, 2012 U.S. Dist. LEXIS 172805, at *54-*55 (N.D. Cal. Nov. 30, 2012) (declining to hold that

13 defendants may assert mitigation as a defense to Dell's horizontal price-fixing claim); *In re Airline*

14 *Ticket Comm'n Antitrust Litig.*, 918 F. Supp. 283, 286 (D. Minn. 1996) ("[i]n a horizontal price-

15 fixing case, . . . mitigation and offset generally do not affect the ultimate measure of damages.").

16 As in the price-fixing overcharge cases, it would have been impossible for plaintiffs and class

17 members to offset their damages in this case.  If plaintiffs wanted to purchase an iPod, they had no

18 choice but to purchase the iPod at the price set by Apple (and thus pay the overcharges due to

19 Apple's anticompetitive conduct).  *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745-46 (1977)

20 (under the *Hanover Shoe* rule, "direct purchasers . . . are permitted to recover the ***full amount*** of

21 the overcharge") (emphasis added).

22      To the extent that Apple asserts that the class member-resellers recouped all or some of the

23 overcharge by passing-on those overcharges to their customers, the Supreme Court has held that

24 antitrust defendants are prohibited from relying on pass-in as a defense. *Hanover Shoe v. United*

25 *Shoe Mach. Corp.*, 392 U.S. 481, 494 (1968); *Braintree Labs., Inc. v. McKesson Corp.*, No. 11-

26 80233 MISC JSW (JSC), 2011 U.S. Dist. LEXIS 121499, at *8-*9 (N.D. Cal. Oct. 20, 2011)

27 ("[t]he Supreme Court has made it clear that in an antitrust suit, a plaintiff's alleged benefit  from

28

JOINT PROPOSED JURY INSTRUCTIONS         No. C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1    a defendant's anti-competitive behavior because the plaintiff 'passed on' any overcharge is not

2    relevant to whether the plaintiff suffered a cognizable antitrust injury.") (citation omitted).

3          Apple does not provide any authority where a court recognized a mitigation defense in a

4    Section 2 monopolization case, especially a monopolization case where the damages being

5    pursued are overcharges to a direct purchaser.  In the absence of any such authority, the Court

6    should decline Apple's proposed instruction.

**APPLE'S PROPOSED INSTRUCTION NO. 47:  TREBLING OF DAMAGES**

You may have heard or read that in antitrust cases such as this, damages are trebled, or multiplied by three.  You are not to try to do this yourself.  This is the job of the Court.  In calculating damages, if any, you are only to try to determine actual or single damages.

**AUTHORITY**

ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.) F-52 (verbatim).

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                        No. C 05-00037 YGR

1  **PARTIES' STATEMENTS REGARDING DISPUTED INSTRUCTION NO. 47**

2  **Apple:**

3  Apple respectfully submits that in light of public interest in antitrust cases, especially in

4  this District, there is a significant possibility that jurors may have heard about but not understand

5  the role of treble damages, and therefore it is better to instruct the jurors clearly that they have no

6  role with regard to trebling damages. *See, e.g.*, Order On Motions *In Limine* And For Pre-Trial

7  Preparation at 6 § 4, *In re SRAM Antitrust Litig.*, No. 4:07-md-01819-CW (N.D. Cal. filed Dec.

8  16, 2010) ("The Court may instruct the jury not to consider trebling of damages.") (Dkt. 820-1);

9  *Real v. Cont'l Grp., Inc.*, 627 F. Supp. 434, 450 (N.D. Cal. 1986) (explaining that "[t]reble

10  damage instructions have been approved, however, where necessary to avoid confusing the jury").

11  **Plaintiffs:**

12  Plaintiffs object to this proposed instruction. At the conclusion of trial, the jury will

13  determine whether Apple is liable for violations of the Sherman Act. If the jury is told that the

14  amount of compensatory damages awarded will be trebled, then the jury may "compensate" for

15  that trebling in their determination of damages, thereby unfairly prejudicing plaintiffs' and class

16  members' recovery. For this reason, the Ninth Circuit and other courts have uniformly found that

17  it is not appropriate to inform the jury of the trebling provisions. *Noble v. McClatchy Newspapers*,

18  533 F.2d 1081, 1091 (9th Cir. 1975) (an instruction informing the jury of the trebling provision "is

19  an invitation to the jury to negate Congress' determination that actual damages should be trebled

20  in order to deter antitrust violations and encourage private enforcement of the antitrust laws"),

21  *vacated on other grounds*, 433 U.S. 904 (1977); *HBE Leasing Corp. v. Frank*, 22 F.3d 41, 45 (2d

22  Cir. 1994) ("Reference to treble damages and attorneys fees is irrelevant to the jury questions of

23  liability and damages and may tend to confuse or prejudice a jury into reducing its eventual award,

24  thus frustrating Congress's goal of deterring improper conduct by assessing treble damages and

25  attorneys fees.").

26

27

28

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

1

## **NO. 48:  CONSIDERATION OF EVIDENCE – CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, the Court reminds you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any Internet chat room, blog, website or other feature. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the Court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings[, *and a mistrial could result that would require the entire trial process to start over*].  If any juror is exposed to any outside information, please notify the Court immediately.

## **AUTHORITY**

Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 3.1A.

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                        No. C 05-00037 YGR

1

## NO. 49:  DUTY TO DELIBERATE

2   When you begin your deliberations, you should elect one member of the jury as your

3 presiding juror.  That person will preside over the deliberations and speak for you here in court.

4   You will then discuss the case with your fellow jurors to reach agreement if you can do so.

5 Your verdict must be unanimous.

6   Each of you must decide the case for yourself, but you should do so only after you have

7 considered all of the evidence, discussed it fully with the other jurors, and listened to the views of

8 your fellow jurors.

9   Do not hesitate to change your opinion if the discussion persuades you that you should.

10 Do not come to a decision simply because other jurors think it is right.

11   It is important that you attempt to reach a unanimous verdict but, of course, only if each of

12 you can do so after having made your own conscientious decision.  Do not change an honest belief

13 about the weight and effect of the evidence simply to reach a verdict.

14

15

### AUTHORITY

16 Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 3.1.

17

18

19

20

21

22

23

24

25

26

27

28 **Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS        No. C 05-00037 YGR

## NO. 50:  COMMUNICATIONS WITH THE COURT

If it becomes necessary during your deliberations to communicate with the Court, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with the Court except by a signed writing; the Court will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, the Court will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the Court—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the Court.

### AUTHORITY

Ninth Circuit Manual of Model Civil Jury Instructions (2007 ed.) 3.2.

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                                      No. C 05-00037 YGR

**NO. 51:  RETURN OF VERDICT**

A verdict form has been prepared for you.  [*Any explanation of the verdict form may be given at this time.*]  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the Court that you are ready to return to the courtroom.

**AUTHORITY**

Ninth Circuit Manual of Model Civil Jury Instruction (2007 ed.) 3.3.

**Date Submitted:  October 22, 2014**

JOINT PROPOSED JURY INSTRUCTIONS                              No. C 05-00037 YGR

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1   DATED:  October 22, 2014

ROBBINS GELLER RUDMAN & DOWD LLP
2                                                           BONNY E. SWEENEY
ALEXANDRA S. BERNAY
3                                                           CARMEN A. MEDICI
JENNIFER N. CARINGAL

4

5                                                           */s/ Bonny E. Sweeney*
6                                                           BONNY E. SWEENEY
655 West Broadway, Suite 1900
7                                                           San Diego, CA  92101
Telephone:  (619) 231-1058
8                                                           Facsimile:  (619) 231-7423

9                                                           ROBBINS GELLER RUDMAN & DOWD LLP
10                                                          PATRICK J. COUGHLIN
STEVEN M. JODLOWSKI
11                                                          Post Montgomery Center
One Montgomery Street, Suite 1800
12                                                          San Francisco, CA  94104
Telephone:  (415) 288-4545
13                                                          Facsimile:  (415) 288-4534

14                                                          *Class Counsel For Plaintiffs*

15                                                          BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, P.C.
16                                                          ANDREW S. FRIEDMAN
FRANCIS J. BALINT, JR.
17                                                          ELAINE A. RYAN
2325 E. Camelback Road, Suite 300
18                                                          Phoenix, AZ  85016
Telephone:  (602) 274-1100
19                                                          Facsimile:  (602) 274-1199

20

21                                                          THE KATRIEL LAW FIRM
ROY A. KATRIEL
22                                                          1101 30th Street, N.W., Suite 500
Washington, DC  20007
23                                                          Telephone:  (202) 625-4342
Facsimile:  (202) 330-5593
24

25                                                          BRAUN LAW GROUP, P.C.
MICHAEL D. BRAUN
26                                                          10680 West Pico Blvd., Suite 280
Los Angeles, CA  90064
27                                                          Telephone:  (310) 836-6000
Facsimile:  (310) 836-6010
28

JOINT PROPOSED JURY INSTRUCTIONS                                   No. C 05-00037 YGR

GLANCY BINKOW & GOLDBERG LLP
BRIAN P. MURRAY
122 East 42nd Street, Suite 2920
New York, NY  10168
Telephone:  (212) 382-2221
Facsimile:  (212) 382-3944

GLANCY BINKOW & GOLDBERG LLP
MICHAEL GOLDBERG
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160

*Additional Counsel for Plaintiffs*

DATED:  October 22, 2014

BOIES, SCHILLER & FLEXNER LLP
WILLIAM A. ISAACSON
KAREN L. DUNN
MARTHA L. GOODMAN


*/s/ William A. Isaacson*

WILLIAM A. ISAACSON
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile:  (202) 237-6131

BOIES, SCHILLER & FLEXNER LLP
JOHN F. COVE, JR.
MEREDITH R. DEARBORN
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile:  (510) 874-1460

JONES DAY
DAVID C. KIERNAN
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:  (415) 626-3939
Facsimile:  (415) 875-5700

*Attorneys for Defendant Apple Inc.*

JOINT PROPOSED JURY INSTRUCTIONS                    No. C 05-00037 YGR

## ATTESTATION OF FILER

I hereby attest that I have obtained concurrence regarding the filing of this document from the signatories to this document.

*/s/ William A. Isaacson*
William A. Isaacson

JOINT PROPOSED JURY INSTRUCTIONS                                    No. C 05-00037 YGR