# EXHIBIT A

1    [COUNSEL LISTED ON SIGNATURE PAGES]

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11   APPLE INC., a California corporation,        Case No. 11-cv-01846-LHK

12              Plaintiff,                         **(DISPUTED) JOINT PROPOSED**
                                                   **JURY INSTRUCTIONS**
13        v.
                                                   Date:    July 24, 2012
14   SAMSUNG ELECTRONICS CO., LTD., a             Time:    1:30 pm
     Korean corporation; SAMSUNG                   Place:   Courtroom 1, 5th Floor
15   ELECTRONICS AMERICA, INC., a New             Judge:   Hon. Lucy H. Koh
     York corporation; and SAMSUNG
16   TELECOMMUNICATIONS AMERICA,
     LLC, a Delaware limited liability company,
17
                Defendants.
18

19

20

21

22

23

24

25

26

27

28

Dockets.Justia.com

**TABLE OF CONTENTS**
(continued)

Page

PROPOSED FINAL JURY INSTRUCTION NO. 82.1 REQUIREMENTS OF
THE ETSI IPR POLICY—AVAILABILITY OF LICENSES............................ 320

PROPOSED FINAL JURY INSTRUCTION NO. 83 BREACH OF CONTRACT –
OBLIGATION TO TIMELY DISCLOSE INTELLECTUAL PROPERTY
RIGHTS ("IPR")................................................................................................ 321

**ANTITRUST JURY INSTRUCTIONS** ...................................................................... **323**

PROPOSED FINAL JURY INSTRUCTION NO. 84 MONOPOLIZATION —
ELEMENTS........................................................................................................ 324

PROPOSED FINAL JURY INSTRUCTION NO. 84.1 MONOPOLIZATION —
MONOPOLY POWER GENERALLY ............................................................. 326

PROPOSED FINAL JURY INSTRUCTION NO. 85 MONOPOLIZATION —
RELEVANT MARKET..................................................................................... 327

PROPOSED FINAL JURY INSTRUCTION NO. 85.1 MONOPOLIZATION
RELEVANT TECHNOLOGY—MARKET ..................................................... 329

PROPOSED FINAL JURY INSTRUCTION NO. 85.2 MONOPOLIZATION
RELEVANT GEOGRAPHIC MARKET—MARKET ..................................... 330

PROPOSED FINAL JURY INSTRUCTION NO. 86 MONOPOLIZATION —
EVIDENCE OF MONOPOLY POWER ........................................................... 331

PROPOSED FINAL JURY INSTRUCTION NO. 86.1 MONOPOLIZATION—
EXISTENCE OF MONOPOLY POWER—DIRECT PROOF ......................... 335

PROPOSED FINAL JURY INSTRUCTION NO. 87 MONOPOLIZATION —
WILLFUL ACQUISITION OF MONOPOLY POWER THROUGH
ANTICOMPETITIVE ACTS ............................................................................ 337

PROPOSED FINAL JURY INSTRUCTION NO. 88 MONOPOLIZATION —
ANTICOMPETITIVE BEHAVIOR IN STANDARD-SETTING................. 340

PROPOSED FINAL JURY INSTRUCTION NO. 89 MONOPOLIZATION —
SAMSUNG'S INTENT ...................................................................................... 344

PROPOSED FINAL JURY INSTRUCTION NO. 90 MONOPOLIZATION —
INTERSTATE CONDUCT ................................................................................ 346

PROPOSED FINAL JURY INSTRUCTION NO. 91 MONOPOLIZATION — INJURY
AND DAMAGES .............................................................................................. 347

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANTITRUST JURY INSTRUCTIONS**

## PROPOSED FINAL JURY INSTRUCTION NO. 84
## MONOPOLIZATION — ELEMENTS

**Apple's Proposed Instruction**

I will now instruct you on how to decide whether Apple has proven that Samsung has violated the federal antitrust laws. Apple alleges that Samsung has unlawfully monopolized various markets consisting of technologies that competed to perform functions included in the UMTS standard. To prove its monopolization claim in any such market, Apple must persuade you that each of the following elements is more likely true than not:

> **First,** that the alleged technology market is a relevant antitrust market;
>
> **Second**, that Samsung possessed monopoly power in that market;
>
> **Third,** that Samsung willfully acquired its monopoly power in that relevant market by engaging in anticompetitive conduct;
>
> **Fourth**, that Samsung's conduct occurred in or affected interstate commerce; and
>
> **Fifth,** that Samsung's anticompetitive conduct was a substantial factor in causing injury to Apple in its business or property.

If you find that Apple has proved each of these elements for one or more alleged technology markets, then you must find for Apple and against Samsung on the monopolization claim. If you find that Apple has failed to do so, then you must find for Samsung and against Apple on this claim.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

Sherman Act Section 2, 15 U.S.C. § 2; *Verizon Commc'ns v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004); *Brunswich Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, 2008 WL 73689 (N.D. Cal. Jan. 5, 2008).

**Samsung's Objection to Apple's Instruction**

Samsung objects to this instruction in that it states that the markets consist of technologies that "competed to perform functions included in the UMTS standard." The statement presumes that such competing technologies exist, which Apple must prove at trial.

**Samsung's Proposed Instruction**

Apple alleges that Samsung failed to disclose its intellectual property rights in the patents essential to the UMTS standard to an organization called ETSI, and thus violated Section 2 of the Sherman Act. If you determine that these three patents are in fact standard essential patents, you must then evaluate whether Apple has proven that Samsung violated antitrust laws. To win on its antitrust claim, Apple must prove each of the following elements is more likely true than not true:

>**First,** that the alleged technology market is a relevant antitrust market;

>**Second,** that Samsung possessed monopoly power in that market;

>**Third,** that Samsung willfully acquired or maintained its monopoly power in that market by engaging in anticompetitive conduct; and

>**Fourth,** that Samsung's anticompetitive conduct was a substantial factor in causing injury to Apple in its business or property.

If you find that Apple has proved each of these elements, then you must find for Apple and against Samsung on the monopolization claim. If you find that Apple has failed to prove any one or more of these elements, then you must find for Samsung and against Apple on this claim.

**Source**

Adapted from ABA Model Antitrust Jury Instructions, at C-2.


**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is improper for two reasons. First, the instruction states that Apple's monopolization claim depends on a finding that Samsung's patents "are in fact standard essential patents." However, Apple has alleged that Samsung has monopolized the relevant technology markets on the basis of its <u>declaration</u> that its patents are essential and the market power it obtained and exercised as a result of those declarations, regardless of whether the patents are in fact standard-essential. Second, the instruction states that Apple's monopolization claim is based solely on a failure to disclose intellectual property rights ("IPR"). But Apple alleges an overall course of conduct in which Samsung not only failed to disclose its IPR, but also deceived standards bodies regarding its licensing intentions and later breached its licensing commitments. Apple's Proposed Final InstructionNo. 84 is an accurate statement of the law of monopolization and accurately describes Apple's claim.

**PROPOSED FINAL JURY INSTRUCTION NO. 84.1**
**MONOPOLIZATION — MONOPOLY POWER GENERALLY**

**Samsung's Proposed Instruction**

Monopoly power is the power to control prices and exclude competition in a relevant antitrust market. More precisely, a firm is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time. To prove a monopolization claim, one of the elements Apple must prove is that Samsung has monopoly power in a relevant antitrust market. However, monopoly power, in and of itself, is not unlawful. A patent owner who does no more than take advantage of the right to exclude created by its patent does not violate the antitrust laws.

I will now provide further instructions about how you may determining whether the Apple has met its burden of proving Samsung's alleged monopoly power in a relevant market.

**Source**

ABA Model Antitrust Jury Instructions, at C-4; *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 389 (1956); *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1987).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction is unnecessary, and Apple believes it should be deleted. To the extent it is included, Apple objects to including the statements that having monopoly power is not unlawful and that "[a] patent owner who does no more than take advantage of the right to exclude created by its patent does not violate the antitrust laws." These statements relate to whether Samsung is ultimately liable, and not whether Apple has proven monopoly power. Including them could confuse the jury and imply that enforcing a patent can never be part of the proof of monopoly power, which is incorrect. *See, e.g.*, *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007) (holding that standard-setting misconduct followed by improper assertion of patent rights can violate the Sherman Act).

1

**PROPOSED FINAL JURY INSTRUCTION NO. 85
MONOPOLIZATION — RELEVANT MARKET**

2

### Apple's Proposed Instruction

3

4   To prove a monopolization claim, one of the elements Apple must prove is that Samsung has monopoly power in a relevant antitrust market. An antitrust market is defined both by the relevant technologies that compete with each other, and by the geographic area in which they compete.

5

6   A relevant technology market includes all those technologies that are reasonable substitutes for each other from the user's point of view; that is, the technologies that compete with each other. These technologies are not physical products themselves, but rather are intellectual property rights and close substitutes – including ideas or techniques not covered by such property rights – that are used to produce products. A relevant technology market includes the technologies that users believe are reasonably interchangeable to achieve certain functionality, and need not be identical or precisely interchangeable as long as they are reasonable substitutes. This is a practical test, and you may consider the actual behavior of users or potential users and the marketing efforts of licensors in making this determination.

7

8

9

10

11   The relevant geographic market is the area in which the Samsung technologies face competition from other technologies to which customers can reasonably turn. The geographic market may be as large as global or nationwide, or as small as a single town or even smaller.

12

13   In this case, Apple claims that the relevant geographic market is worldwide. Samsung does not propose any geographic market, but asserts that Apple has not shown a worldwide market.

14

### Source

15

16   Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

17   ### Authorities

18   Sherman Act Section 2, 15 U.S.C. § 2; *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007); *Rebel Oil v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995); *Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989); *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, 2008 WL 73689 (N.D.Cal. Jan. 5, 2008).

19

20

21

### Samsung's Objection to Apple's Instruction

22

23   While Apple's instruction discusses both a technology market and a geographic market, the instruction fails to make clear that Apple must prove the existence of both. Apple's instruction also neglects to state that it must prove the existence of these markets by a preponderance of the evidence.

24

25

26

27

28

**Samsung's Proposed Instruction**

Apple must prove that it is more likely true than not true that Samsung had monopoly power in one or more relevant markets. Defining the relevant market is essential to determining whether Samsung had monopoly power because whether a company has monopoly power depends on the contours of the market.

There are two aspects you must consider in determining whether Apple has met its burden of proving the relevant market or markets. The first is the existence of a relevant technology market. The second is the existence of a relevant geographic market.

If, after considering all the evidence, you find that Apple has proven both a relevant technology market and a relevant geographic market, then you must find that Apple has met the relevant market requirement and you must consider the remaining elements of its unlawful monopolization claims.

If you find that Apple has failed to prove either a relevant technology market or a relevant geographic market, then you must find for Samsung and against Apple on Apple's unlawful monopolization claim.

**Source**

Adapted from ABA Model Antitrust Jury Instructions, at C-6

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction Nos. 85-85.2 are unnecessarily long, and Apple believes they should be combined to reduce the burden on the jury. Apple's corresponding instruction, No. 85, accurately and more succinctly identifies the elements of the law of market definition.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 85.1
MONOPOLIZATION RELEVANT TECHNOLOGY—MARKET**

2

3   <u>**Samsung's Proposed Instruction**</u>

4   A "technology" refers to an invention or process for accomplishing something, and is sometimes covered by a patent. The basic idea of a relevant technology market is that the technologies

5   within it are reasonable substitutes for each other from the user's point of view; that is, the technologies compete with each other. In other words, a relevant technology market includes the

6   technologies that a user believes are reasonably interchangeable or reasonable substitutes for each other. Technologies need not be identical or precise interchangeable as long as they are

7   reasonable substitutes. This is a practical test, and you may consider the actual behavior of users and the marketing efforts of licensors.

8

**Source**

9   Based generally on *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007); *Hynix, et al. v. Rambus Inc.*, Case No. 06-cv-00244-RMW, Ckt. No. 1254 (Final Jury Instructions), at 26-

10  27.

11

12  <u>**Samsung's Statement in Support**</u>

13  Apple's Proposed Final Jury Instruction No. 85 contains an abbreviated statement of law regarding market definition. Samsung's Proposed Final Jury Instruction No. 85.1 is part of

14  several instructions that provide the jury with greater detail regarding how technology and geographic markets are defined.

15

16  <u>**Apple's Objection to Samsung's Instruction**</u>

17  Samsung's proposed instruction Nos. 85-85.2 are unnecessarily long, and Apple believes they should be combined to reduce the burden on the jury. Apple's corresponding instruction, No. 85,

18  accurately and more succinctly identifies the elements of the law of market definition.

19

20

21

22

23

24

25

26

27

28

1

**PROPOSED FINAL JURY INSTRUCTION NO. 85.2**
**MONOPOLIZATION RELEVANT GEOGRAPHIC MARKET—MARKET**

2

**Samsung's Proposed Instruction**

3

The relevant geographic market is the area in which Samsung faces competition from other firms
that compete in the relevant product market and to which customers can reasonably turn for
purchases. When analyzing the relevant geographic market, you should consider whether
changes in prices or product offerings in one area have substantial effects on prices or sales in
another area, which would tend to show that both areas are in the same relevant geographic
market. The geographic market may be as large as global or nationwide, or as small as a single
town or even smaller.

4

5

6

7

Apple has the burden of proving the relevant geographic market by a preponderance of the
evidence. In this case, Apple claims that the relevant geographic market is worldwide. Samsung
asserts that Apple will not show that such a market exists or that Samsung has monopoly power in
it. In determining whether Apple has met its burden and demonstrated that its proposed
geographic market is proper, you may consider several factors, including:

8

9

10

- the geographic area in which Samsung licenses its patents and where Samsung's
  customers are located;
- the geographic area to which customers turn for supply of the product;
- the geographic area to which customers have turned or have seriously considered
  turning;
- the geographic areas that suppliers view as potential sources of competition;
- whether governmental licensing requirements, taxes, or quotas have the effect of limiting
  competition in certain areas.

11

12

13

14

15

**Source**
ABA Model Instructions, pp. C-13–C-14; *United States v. Grinnell Corp.*, 384 U.S. 563 (1966);
*Lantec, Inc. v. Novell, Inc.*, 306 F.3d. 1003, 1026-27 (10th Cir. 2002); *ReMax Int'l, Inc. v. Realty
One, Inc.*, 173 F.2d 995 (6th Cir. 1999); *Morgenstern v. Wilson*, 29 F.3d 1291 (8th Cir. 1994);
ABA Section of Antitrust Law, 1 Antitrust Law Developments 577-89 (5th ed. 2002); *Battle v.
Liberty Nat'l Life Ins. Co.*, 493 F.2d 39, 45 (5th Cir. 1974); *Apani Southwest, Inc. v. Coca-Cola
Enters., Inc.*, 300 F.3d 620, 626 (5th Cir. 2002) (finding alleged geographic market of 27 city-run
facilities insufficient to support Clayton Act and Sherman Act § 1 claims); *FTC v. Tenet Health
Care*, 186 F.3d 1045 (8th Cir. 1999) (holding that the government must present evidence
concerning where consumers could practicably go for care, not where they actually do go).

16

17

18

19

20

21

**Apple's Objection to Samsung's Instruction**

22

Samsung's proposed instruction No. 85.2 would confuse the jury in two ways. First, the
instruction inappropriately refers to whether "Samsung has monopoly power," which is
irrelevant to identifying the relevant geographic market. Second, the instruction refers to various
considerations that inappropriately focus on the location of licensees rather than the location of
potential licensors (or inventors) of alternative technologies that could be considered for
incorporation into the UMTS standard. Apple's corresponding instruction, No. 85, is an accurate
statement of the elements of the law of market definition and is more appropriate given the facts
of this case.

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 86**
**MONOPOLIZATION — EVIDENCE OF MONOPOLY POWER**

**Apple's Proposed Instruction**

If you find that Apple has proven one or more relevant markets, then you should determine whether Samsung has monopoly power in those markets. Monopoly power is the power to control prices and exclude competition in a relevant antitrust market.

*Direct Evidence of Monopoly Power*

In determining whether Samsung has monopoly power in a relevant market, you may consider whether there is direct evidence that Samsung controls prices or excluded competition. Such direct evidence would consist of evidence that Samsung has demanded or received royalties above competitive levels for patents it claims are essential to the UMTS standard or excluded alternative technologies in the relevant technology market or markets.

*Indirect Evidence of Monopoly Power*

If you do not find there is direct evidence of monopoly power, there are a number of factors you may consider as indirect evidence of monopoly power:

> One factor you should consider is Samsung's market share in any relevant technology market. A market share above 50 percent may be sufficient to support an inference that Samsung has monopoly power. The likelihood that a company has monopoly power is stronger when the company's share is above 50 percent. However, it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry into the market, actual entry and exit by other companies, and the number and size of competitors.

> Another factor you may consider is whether there are barriers to entry into the relevant market or markets. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. A potential barrier to entry may be the existence of a recognized standard that prevents alternative technologies from being adopted or introduced in the market. Similarly, if users of a technology cannot readily switch between technologies, entry into the technology market may be impossible.

If you find based on these factors or other evidence that Samsung more likely than not has the power to maintain royalties above a competitive level or to exclude alternative technologies in the relevant market or markets, then you should find that Samsung has monopoly power in the relevant market or markets.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

Sherman Act Section 2, 15 U.S.C. § 2; *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997); *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, 2008 WL 73689 (N.D.Cal. Jan. 5, 2008); *Research in Motion, Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 793 (N.D. Tex. 2008).

1

2

**Samsung's Objection to Apple's Instruction**

3

Both Samsung and Apple's instructions derive from ABA Model Antitrust Jury Instructions, C-16 to C-19, C-23.  However, Apple's instructions improperly abridge the rules by omitting important statements of law.  For example, Apple's instructions do not explain that a market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power (*see e.g. In re IBM Peripheral EDP Devices Antitrust Litig.*, 481 F. Supp. 965, 982 (N.D. Cal. 1979) ("This market was not monopolized. IBM did not control prices, it reacted to the prices set by others. IBM's market share (if the market had been properly defined) was below 57 percent and falling. "); *In re Se. Milk Antitrust Litig.*, 801 F. Supp. 2d 705, 725 (E.D. Tenn. 2011))  and that, to prove direct infringement, it must be shown that defendant has the power to maintain prices above a competitive level for a significant period of time (*Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 786 F. Supp. 2d 1202, 1212 (S.D. Tex. 2009)).  There is also no legal support for Apple's contention that direct evidence of monopolization includes that Samsung merely ***demanded*** above competitive levels for patents it claims are essential to the UMTS standard.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Samsung's Proposed Instruction**

If you find that plaintiffs have proven a relevant market, then you should determine whether Samsung has monopoly power in that market. As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market.

**Market Share**

The first factor that you should consider is Samsung's market share. A market share above 50 percent may be sufficient to support an inference that a defendant has monopoly power, but in considering whether a defendant has monopoly power it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors. Along with a defendant's market share, these factors should inform you as to whether the defendant has monopoly power. The likelihood that a company has monopoly power is stronger the higher that company's share is above 50 percent.

A market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power. However, if you find that the other evidence demonstrates that defendant does, in fact, have monopoly power despite having a market share below 50 percent, you may conclude that the defendant has monopoly power.

**Barriers to Entry**

You may also consider whether there are barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include intellectual property rights (such as patents or trade secrets), specialized marketing practices, and the reputation of the companies already participating in the market (or the brand name recognition of their products). Evidence of low or no entry barriers may be evidence that defendant does not have monopoly power, regardless of defendant's market share, because new competitors could enter easily if the defendant attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with high market share may support an inference that defendant has monopoly power.

**Number and Size of Competitors**

You may consider whether the defendant's competitors are capable of effectively competing. In other words, you should consider whether the financial strength, market shares and number of competitors act as a check on the defendant's ability to price its products. If the defendant's competitors are vigorous or have large or increasing market shares, this may be evidence that the defendant lacks monopoly power. On the other hand, if you determine that the defendant's competitors are weak or have small or declining market shares, this may support an inference that the defendant has monopoly power.

**Conclusion**

If you find that Samsung has monopoly power in the relevant market, then you must consider the remaining elements of Apple's monopolization claim. If you find that Samsung does not have monopoly power, then you must find for Samsung and against Apple on this claim.

**Source**

Based on ABA Model Antitrust Jury Instructions, at C-16 to C-19 and the authorities cited therein.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction misstates the law in *two* ways. First, the instruction (along with instruction No. 86.1) does not make clear that Apple can prove monopoly power through either direct or indirect evidence, and instead implies that Apple must prove monopoly power through both types of evidence. But the Ninth Circuit has made clear that either type of proof, standing alone, is sufficient to establish monopoly power. *See, e.g., Rebel Oil v. Atl. Richfield Co.,* 51 F.3d 1421, 1434 (9th Cir. 1995) ("Market power may be demonstrated through either of two types of proof. One type of proof is direct evidence of the injurious exercise of market power."). Second, the instruction fails to explain the role of standards in the analysis of barriers to entry. Again, the law is clear that standardization of one technology can eliminate alternative technologies from the relevant technology market. *See, e.g., Broadcom Corp. v. Qualcomm Inc.,* 501 F.3d 297, 314 (3d Cir. 2007) ("When a patented technology is incorporated in a standard, adoption of the standard eliminates alternatives to the patented technology."). Apple's corresponding instruction, No. 86, is an accurate statement of the law of monopoly power.

## PROPOSED FINAL JURY INSTRUCTION NO. 86.1
## MONOPOLIZATION—EXISTENCE OF MONOPOLY POWER—DIRECT PROOF

**Samsung's Proposed Instruction**

If you find that plaintiff has proven a relevant market, then you should determine whether defendant has monopoly power in that market. As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market.

Plaintiff has the burden of proving that defendant has the ability to raise or maintain the prices that it charges for goods or services in the relevant market above competitive levels. Plaintiff must prove that defendant has the power to do so by itself -- that is, without the assistance of, and despite competition from, any existing or potential competitors.

Plaintiff must also prove that defendant has the power to maintain prices above a competitive level for a significant period of time. If defendant attempted to maintain prices above competitive levels, but would lose so much business to other competitors that the price increase would become unprofitable and would have to be withdrawn, then defendant does not have monopoly power.

Similarly, plaintiff must prove that defendant has the ability to exclude competition. For example, if defendant attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and take so much business that the price increase would become unprofitable and would have to be withdrawn, then defendant does not have monopoly power.

The ability to earn high profit margins or a high rate of return does not necessarily mean that defendant has monopoly power. Other factors may enable a company without monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as the ability to offer superior products or services, the ability to maintain an efficient business operation, or superior advertising or marketing [expand or contract list as appropriate]. However, an ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power. By contrast, evidence that defendant would lose a substantial amount of sales if it raised prices substantially, or that the defendant's profit margins were low compared to its competitors, erratic, and/or decreasing, might be evidence that the defendant does not have monopoly power.

If you find that defendant has monopoly power in the relevant market, then you must consider the remaining elements of this claim. If you find that defendant does not have monopoly power, then you must find for defendant and against the plaintiff on this claim.

**Source**

Based on ABA Model Antitrust Jury Instructions, at C-23 and the authorities cited therein.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction misstates the law in two ways. First, the instruction (along with instruction No. 86) does not make clear that Apple can prove monopoly power through either direct or indirect evidence, and instead implies that Apple must prove monopoly power through both types of evidence. But the Ninth Circuit has made clear that either type of proof, standing alone, is sufficient to establish monopoly power. *See, e.g., Rebel Oil v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) ("Market power may be demonstrated through either of two types of proof. One type of proof is direct evidence of the injurious exercise of market power.").

1    Second, this instruction deals primarily with direct evidence of raised prices, rather than direct
evidence of excluded competition.  But Apple intends to introduce direct evidence of monopoly
2    power based on the exclusion of technologies that, pre-standardization, were viable alternatives
for the technologies Samsung claims are covered by its patents.  Apple's corresponding
3    instruction, No. 86, is an accurate statement of the law of monopoly power.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 87**
**MONOPOLIZATION — WILLFUL ACQUISITION OF MONOPOLY POWER**
**THROUGH ANTICOMPETITIVE ACTS**

2

3    **Apple's Proposed Instruction**

4    The next element Apple must prove is that Samsung willfully acquired monopoly power through anticompetitive acts or practices in the relevant technology markets. Anticompetitive acts are

5    acts, other than competition on the merits, that have the effect of preventing or excluding competition among technologies. In addition, you should distinguish the acquisition of monopoly

6    power through anticompetitive acts from the acquisition of monopoly power by supplying better technology, possessing superior business skills, or because of luck, which is not unlawful.

7

8    Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only

9    becomes unlawful where it involves anticompetitive acts.

10   To be anticompetitive, the acts or practices that result in the acquisition of monopoly power must represent something more than the conduct of business that is part of the normal competitive

11   process or commercial success. You may not find that a company willfully acquired monopoly power if it has acquired that power solely through the exercise of superior foresight and skill; or

12   because of economic or technological efficiency, including efficiency resulting from scientific research; or because changes in cost or taste have driven out all but one supplier.

13

**Source**

14
     Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-
15   RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

16   **Authorities**

17   *Rebel Oil Co., Inc. v. Atlantic Richfield, Co.* 51 F.3d 1421 (9th Cir. 1995) (monopoly power may be proven directly); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007);

18   *Research in Motion, Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 793 (N.D. Tex. 2008).

19

**Samsung's Objection to Apple's Instruction**

20

21   Both parties' instructions are based on the ABA Model Antitrust Jury Instructions, but Apple's instruction omits discussion of whether Samsung's conduct was legitimate business conduct.

22   *See e.g. Thomsen v. W. Elec. Co., Inc.*, 512 F. Supp. 128, 131 (N.D. Cal. 1981) aff'd, 680 F.2d 1263 (9th Cir. 1982). For example, Samsung intends to introduce evidence that the timing of

23   Samsung's disclosure of its essential patents was consistent with competition on the merits. Apple's instruction provides no guidance as to what constitutes legitimate business conduct and

24   should therefore be rejected. Apple's instruction also omits examples which may prove useful to explaining this element to the jury.

25

26

27

28

**Samsung's Proposed Instruction**

The next element plaintiffs must prove is that Samsung willfully acquired or maintained monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. In addition, you should distinguish the acquisition of monopoly power through anticompetitive acts from the acquisition of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, which is not unlawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals – or the achievement of these goals – unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether Samsung's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

For example, suppose there are five firms that make printers for home computers and that these printers comprised a relevant product market. Suppose also that Firm A developed a more efficient manufacturing process that allowed it to sell profitably at a lower price than its competitors. If Firm A grew its market share and achieved monopoly power by selling profitably at a lower price, it would not be unlawful for Firm A to achieve monopoly power in this way. Developing more efficient processes and developing the ability to sell profitably at lower prices is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct even if it has a negative effect on competitors.

Similarly, in the same example, suppose Firm B developed and patented a revolutionary new printer and consumers so preferred Firm B's printer that Firm B achieved monopoly power. It would not be unlawful for Firm B to achieve monopoly power in this way. Firm B "built a better mousetrap," which is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct.

By contrast, in the same example, suppose not only that Firm C makes printers, but also that Firm C is the world's only manufacturer of computers and that there are barriers to entry in the computer market such that no other firm will be able to enter that market. Suppose also that Firm C altered its computers in such a way that only Firm C's printers would work with its computers, and that the alteration does not improve the design of Firm C's computers or provide any benefits to competition or consumers – the only effect of the alteration is to exclude competing printer makers from the marketplace. If Firm C thereby prevented its printer competitors from competing and achieved monopoly power, it would be unlawful for Firm C to achieve monopoly power in the printer market in this way.

As these examples show, the acts or practices that result in the acquisition of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or

impossible for competitors to compete and that was taken for no legitimate business reason. You may not find that a company willfully acquired monopoly power if it has acquired that power solely through the exercise of superior foresight and skill; or because of economic or technological efficiency, including efficiency resulting from scientific research; or by obtaining a lawful patent; or because changes in cost or taste have driven out all but one supplier.

If you find that Apple has proven by a preponderance of the evidence that Samsung willfully acquired monopoly power through anticompetitive acts, then you must consider whether the Apple has proved the remaining elements of their monopolization claim. If, however, you find that Apple did not prove this element by a preponderance of the evidence, then you must find for Samsung and against the plaintiffs on this claim.

**Source**

Based on ABA Model Antitrust Jury Instructions, at C-26 to C-30 and the authorities cited therein; *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1370-72 (Fed. Cir. 2002); *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068-73 (Fed. Cir. 1998), *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 996 (9th Cir. 1979)).

**<u>Apple's Objection to Samsung's Instruction</u>**

Samsung's proposed instruction is likely to confuse the jury because it includes examples that unnecessarily increase its length and complexity. Apple's corresponding instruction, No. 87, is an accurate and more succinct statement of the law of willful acquisition of monopoly power.

**PROPOSED FINAL JURY INSTRUCTION NO. 88**
**MONOPOLIZATION — ANTICOMPETITIVE BEHAVIOR IN STANDARD-SETTING**

**Apple's Proposed Instruction**

Apple alleges that Samsung willfully acquired monopoly power based on anticompetitive behavior in connection with the UMTS standard-setting process at 3GPP. Apple and Samsung agree that Samsung was obligated to abide by the ETSI IPR Policy when participating in standard-setting activities related to the UMTS standard.

Based on the available information, a standard-setting organization can select the best technology (considering its cost and its performance) and can include that technology in the standard. To the extent the industry has invested in a standard and cannot easily transfer that investment to an alternative standard, the process of standardization may eliminate alternative technologies. When a patented technology is incorporated into such a standard, adoption of the standard may eliminate alternatives to the patented technology.

As to Apple's claims that Samsung failed to timely disclose IPR (including patents and patent applications) that may cover technology being considered for inclusion in the UMTS standard, you may find that Samsung willfully acquired or maintained monopoly power through anticompetitive acts if: (1) the ETSI IPR Policy created an expectation that participants would timely disclose IPR that reasonably might cover technology being considered for adoption in the UMTS standard; (2) Samsung knowingly failed to disclose such IPR in a timely fashion; (3) 3GPP relied on the requirement that Samsung would timely disclose such IPR when 3GPP created the UMTS standard; and (4) Samsung later attempted to enforce such IPR against a standard-compliant product.

As to Apple's claims that during the standard-setting process Samsung concealed its true intentions not to meet the commitment it had made to license its declared-essential IPR on fair, reasonable, and non-discriminatory ("FRAND") terms, you may find that Samsung willfully acquired or maintained monopoly power through anticompetitive acts if: (1) the ETSI IPR Policy created an expectation that participants would truthfully disclose their intentions whether or not to license their declared-essential IPR on FRAND terms; (2) Samsung knowingly concealed its true intentions; (3) 3GPP relied on the requirement that Samsung would truthfully disclose its intentions whether or not license its declared-essential IPR on FRAND terms when 3GPP adopted the UMTS standard; and (4) Samsung later attempted to enforce such IPR against a standard-compliant product in a manner inconsistent with its FRAND commitments.

In determining whether Apple has proved that Samsung willfully acquired monopoly power, you may consider Samsung's course of conduct as a whole and its overall effect, rather than focusing on a particular aspect of Samsung's disclosure or licensing conduct in isolation.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007); *Research in Motion, Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 793 (N.D. Tex. 2008).

## Samsung's Objection to Apple's Instruction

Apple's instruction includes statements that are both incorrect and unfounded. The instruction states that "a standard-setting organization can select the best technology (***considering its cost*** and its performance) . . . ." (emphasis added). But the ETSI Guide on Intellectual Property Rights states that the Technical Bodies that decide which standards to implement "are not the appropriate place to discuss IPR Issues" and that they "do not have the competence to deal with commercial issues." (ETSI Guide on Intellectual Property Rights § 4.1.) The instruction also misrepresents several provisions of the ETSI IPR Policy. The instruction asks the jury to consider whether "3GPP had an expectation that participants would timely disclose IPR that reasonably might cover technology being considered for adoption in the UMTS standard." However, the provision of the ETSI IPR Policy that forms the basis for Apple's claim regarding the timing of Samsung's disclosure of its essential patents to ETSI requires that "each MEMBER shall use its ***reasonable endeavors*** to timely inform ETSI of ESSENTIAL IPRs it becomes aware of." (D.N. 381 at 41; November 1997 ETSI IPR Policy § 4.1 (emphasis added).) Similarly, Apple's instructions incorrectly require the jury to consider whether the "ETSI IPR Policy created an expectation that participants would truthfully disclose their intentions whether or not to license their declared-essential IPR on FRAND terms." However, the provision of the ETSI IPR regarding the availability of licenses states that the owner shall be "***prepared to grant irrevocable licenses*** on fair, reasonable and non-discriminatory terms and conditions under such IPR . . . ." (D.N. 381 at 42; November 1997 ETSI IPR Policy § 6.1 (emphasis added).)

**Samsung's Proposed Instruction**

Apple alleges that Samsung willfully acquired or maintained monopoly power in the technologies based on anticompetitive behavior at ETSI. ETSI is a standard-setting organization. A standard can enhance consumer welfare by ensuring interoperability of products and devices. The ideal standard-setting process can allow members of a standard-setting organization to make an objective comparison between multiple technologies before a standard is adopted. To the extent the marketplace only recognizes one standard, the process of standardization may eliminate alternative technologies. When a patented technology is incorporated into a standard, adoption of the standard may eliminate alternatives to the patented technology. Nevertheless, "winning" the competition between two technologies to be included in the standard may enhance consumer welfare and not be anticompetitive even if the technology is covered by a patent.

Apple contends that Samsung's conduct with respect to the disclosure of its declared essential patents was anticompetitive. In order to prove that this conduct was anticompetitive, Apple must show that (1) ETSI members shared a clearly defined expectation that members would use reasonable endeavors to timely inform ETSI of essential IPR that the member became aware of; (2) Samsung knowingly failed to use reasonable endeavors to timely inform ETSI of essential IPR; (3) ETSI members relied on the requirement that Samsung would disclose such essential IPR when they adopted the standards; and (4) Samsung later attempted to enforce such a patent against a standards-compliant device.

Apple contends that Samsung's conduct with respect to making available licenses to declared essential IPRs was anticompetitive. In order to prove that this conduct was anticompetitive, Apple must show that (1) ETSI members shared a clearly defined expectation that members would be prepared to grant licenses to essential patents on FRAND terms and conditions; (2) Samsung knowingly did not intend to grant licenses to essential patents on FRAND terms and conditions; (3) ETSI members relied on the requirement that Samsung would be prepared to grant licenses to essential patents on FRAND terms and conditions when they adopted the standards; and (4) Samsung later attempted to enforce an essential patent against a standards-compliant device.

In addition, Apple must prove that Samsung induced ETSI to adopt its standard. In other words, Apple must prove that there was an alternative technology that ETSI was considering during the standard setting process and that ETSI would have adopted an alternative standard had it known of Samsung's intellectual property rights.

**Source**

Adapted from ABA Model Antitrust Jury Instructions, at C-26, D-64, and the authorities cited therein; *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007); November 1997 ETSI IPR Policy.

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction misstates the law and Samsung's disclosure obligations at ETSI. First, the instruction states that Apple must show that "there was an alternative technology that ETSI was considering during the standard setting process and that ETSI would have adopted an alternative standard had it known of Samsung's intellectual property rights." But the law is clear that Apple could also establish that Samsung's misconduct wrongfully led to its acquisition of monopoly power if Samsung's conduct caused ETSI to include a feature in the standard that it otherwise would have excluded, or if alternatives existed that ETSI did not consider during standardization but would have sought out had Samsung's intention not to license its IPR been known. *See, e.g., Broadcom Corp. v. Qualcomm Inc.*, 501 F. 3d 297, 313 (3d Cir. 2007)

1    ("Misrepresentations concerning the cost of implementing a given technology may confer an
     unfair advantage and bias the competitive process in favor of that technology's inclusion in the
2    standard."). Second, the instruction presents the two bases for Apple's claim in a misleading
     manner because it fails to clarify that either one, standing alone, is sufficient to prove
3    anticompetitive conduct. Apple can prevail by proving either its non-disclosure theory, its
     theory that Samsung concealed its licensing intentions during standardization, and Apple is
4    entitled to an instruction that the jury may consider Samsung's course of conduct as a whole.
     *See, e.g., Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) ("In
5    [Sherman Act cases], plaintiffs should be given the full benefit of their proof without tightly
     compartmentalizing the various factual components and wiping the slate clean after scrutiny of
6    each."). Third, Samsung's description of Samsung's obligations under the ETSI IPR Policy
     ignore the obligation to disclose IPR that "might be" essential if a Samsung proposal were
7    adopted. *See* ETSI IPR Policy Clause 4.1. Additionally, Apple asserts that Samsung failed to
     disclose IPR that it had actual knowledge might be essential to technologies under consideration
8    for standardization, and therefore the instruction's reference to "reasonable endeavors" is
     inapplicable. Apple's corresponding instruction, No. 88, accurately reflects the law and Apple's
9    claim.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 89**
**MONOPOLIZATION — SAMSUNG'S INTENT**

**<u>Apple's Proposed Instruction</u>**

In determining whether or not Samsung willfully acquired monopoly power in a relevant technology market, you may consider any evidence that Samsung intended to deceive ETSI to the extent it helps to understand the likely effect of Samsung's conduct. Specific intent to monopolize, however, is not required for one to be liable for monopolization; only the intent to commit the acts that resulted in monopolization.

**Source**

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

**Authorities**

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 US 585, 602 (1985).

**<u>Samsung's Objection to Apple's Instruction</u>**

Samsung objects to this instruction because Apple's cited authority does not support the proposition that "any evidence that Samsung intended to deceive ETSI to the extent it helps to understand the likely effect of Samsung's conduct." Further, the meaning of the instruction is unclear and may confuse the jury. Accordingly, Apple's proposed construction should be rejected, as it does nothing to clarify the intent requirement that is already set forth in both Samsung's Proposed Final Instruction No. 61.2 and Samsung's Alternative to Apple's Proposed Final Instruction No. 84.

**Samsung's Proposed Instruction**

Samsung has introduced evidence that its licensing decisions were based on legitimate business purposes. A refusal to cooperate that is designed to protect or further the legitimate business purposes of a monopolist does not violate the antitrust laws, even if that refusal injures competitors. In general, the desire, to maintain monopoly power or to block entry of competitors is not a legitimate business purpose. A legitimate business purpose is one that benefits the actor regardless of any harmful effect on competitors, such as a purpose to promote efficiency or quality, offer a better product or service, or increase short run profits. Thus, a refusal to cooperate that harms Samsung's independent interests and makes sense only to obtain or maintain monopoly power is not based on legitimate business purposes. A refusal to cooperate that is based in part on legitimate business reasons, even if it is also motivated by the desire to harm competitors, does not violate the antitrust laws. It is Apple's burden to prove that Samsung's refusal to cooperate was not motivated by legitimate business purposes.

**Source**

Based on ABA Model Antitrust Jury Instructions, at C-39; *City of Vernon v. Southern Cal. Edison Co.*, 955 F.2d 1361, 1266 (9th Cir. 1992).

**Apple's Objection to Samsung's Instruction**

Samsung's proposed instruction misstates the law and should be omitted. It misstates the law by imposing an improper legal standard—*i.e.*, the standard from a "refusal to deal" case—rather than the proper standard for a standard-setting misconduct case such as this one. In a unilateral refusal to deal case, plaintiffs must prove a lack of business justification. But the law is clear that such proof is not required in a standard-setting misconduct case. *See, e.g., Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007) (listing elements of a standard-setting misconduct case). To the extent Samsung wishes to raise the <u>defense</u> of business justification, *Samsung* must prove the existence of a legitimate business purpose, if indeed such a defense is even available outside the tying context. *See, e.g., Mozart Co. v. Mercedes-Benz of N. Am., Inc.*, 833 F.2d 1342, 1349-51) (9th Cir. 1987) (recognizing a limited defense of business justification in tying cases and setting out elements of such a defense). With regard to jury confusion, the instruction improperly adds discussion of a business justification defense to Apple's antitrust claim. In the present dispute, if Apple proves breach of Samsung's disclosure obligations, or that Samsung misrepresented its licensing intentions, there could be no possible business justification for such conduct, and Samsung has pointed to none.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 90**
**MONOPOLIZATION — INTERSTATE CONDUCT**

2

3

**Apple's Proposed Instruction**

The federal antitrust laws apply only to conduct that affects interstate commerce.  In this case, there is no dispute that Samsung's conduct affected interstate commerce.

4

5

**Source**

6

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

7

8

**Samsung's Objection to Apple's Instruction**

9

Samsung has addressed this element by eliminating the "interstate commerce" element from its Alternative to Apple's Proposed Final Instruction No. 84.  If the Court adopts Samsung's Instruction in lieu of Apple's Proposed Final Instruction No. 90, then this instruction is unnecessary.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROPOSED FINAL JURY INSTRUCTION NO. 91
## MONOPOLIZATION — INJURY AND DAMAGES

2

3

### Apple's Proposed Instruction

If you find that Samsung has violated the federal antitrust laws as alleged by Apple, you must then decide if Apple is entitled to recover damages from Samsung.

4

5

Apple is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation.

6

7

**First**, Apple must prove that it was in fact injured as a result of Samsung's alleged violation of the antitrust laws.

8

**Second**, Apple must prove that Samsung's alleged illegal conduct was a material cause of Apple's injury. This means that Apple must prove that some damages occurred as a result of Samsung's alleged antitrust violation, and not some other cause. Apple is not required to prove that Samsung's alleged antitrust violation was the sole cause of its injury; nor need Apple eliminate all other possible causes of injury.

9

10

11

**Third**, Apple must prove that its injury is the type of injury that the antitrust laws were intended to prevent. If Apple's injury was caused by a reduction in competition or acts that would otherwise harm consumers, then Apple's injury is an "antitrust injury." The costs and expenses in defending against the assertion of declared-essential patents may be antitrust injury. On the other hand, if Apple's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Apple's injuries are not antitrust injuries and Apple may not recover damages for those injuries under the antitrust laws.

12

13

14

15

16

If you find that Apple has suffered injury to its business or property, you must determine whether Apple has proven that it is entitled to damages for such injury. The amount of any such damages is the amount of damages that Apple has proven at trial with reasonable certainty.

17

18

### Source

19

Adapted from instructions in *Hynix Semiconductor Inc., v. Rambus Inc.*, No. 5:06-CV-00244-RMW, Dkt. No. 1254, filed Mar. 25, 2008 (N.D. Cal.).

20

21

### Authorities

22

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5141861, at *4 (N.D. Cal. Dec. 13, 2010).

23

24

### Samsung's Objection to Apple's Instruction

25

The parties' constructions are identical, except for Samsung's use of the term "essential patents" rather than "declared-essential patents." As Apple's antitrust claim is predicated on Samsung's patents being essential, rather than simply declared essential, Samsung's construction should be adopted.

26

27

28

**Samsung's Proposed Instruction**

If you find that Samsung has violated Section 2 of the Sherman Act as alleged by Apple, you must then decide if Apple is entitled to recover damages from Samsung.

Apple is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation.

> **First**, Apple must prove that it was in fact injured as a result of Samsung's alleged violation of the antitrust laws.
>
> **Second**, Apple must prove that Samsung's alleged illegal conduct was a material cause of Apple's injury. This means that Apple must prove that some damages occurred as a result of Samsung's alleged antitrust violation, and not some other cause. Apple is not required to prove that Samsung's alleged antitrust violation was the sole cause of its injury; nor need Apple eliminate all other possible causes of injury.
>
> **Third**, Apple must prove that its injury is the type of injury that the antitrust laws were intended to prevent. If Apple's injury was caused by a reduction in competition or acts that would otherwise harm consumers, then Apple's injury is an "antitrust injury." The costs and expenses in defending against the assertion of essential patents may be antitrust injury. On the other hand, if Apple's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Apple's injuries are not antitrust injuries and Apple may not recover damages for those injuries under the antitrust laws.

If you find that Apple has suffered injury to its business or property, you must determine whether Apple has proven that it is entitled to damages for such injury. The amount of any such damages is the amount of damages that Apple has proven at trial with reasonable certainty.

**Apple's Objection to Samsung's Instruction**

The parties' instructions are virtually identical, except that Samsung's proposed instruction refers to "essential patents" while Apple's refers to "declared-essential patents." Apple has alleged that Samsung has monopolized the relevant technology markets on the basis of its declaration that its patents are essential and the market power it obtained and exercised as a result of those declarations, regardless of whether the patents are in fact standard-essential. Apple's corresponding instruction, No. 91, accurately reflects the law and Apple's claim.

1   Dated:  July 13, 2012

HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
2   MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
3   JENNIFER LEE TAYLOR (CA SBN 161368)
jtaylor@mofo.com
4   ALISON M. TUCHER (CA SBN 171363)
atucher@mofo.com
5   RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
6   JASON R. BARTLETT (CA SBN 214530)
jasonbartlett@mofo.com
7   MORRISON & FOERSTER LLP
425 Market Street
8   San Francisco, California  94105-2482
Telephone:  (415) 268-7000
9   Facsimile:  (415) 268-7522

10  WILLIAM F. LEE
william.lee@wilmerhale.com
11  WILMER CUTLER PICKERING
HALE AND DORR LLP
12  60 State Street
Boston, MA 02109
13  Telephone: (617) 526-6000
Facsimile: (617) 526-5000

14

15  MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
16  WILMER CUTLER PICKERING
HALE AND DORR LLP
17  950 Page Mill Road
Palo Alto, California 94304
18  Telephone: (650) 858-6000
Facsimile: (650) 858-6100

19

20

By:    _Michael A. Jacobs_
21          Michael A. Jacobs

22          Attorneys for Plaintiff and
            Counterclaim-Defendant
23          APPLE INC.

24

25

26

27

28

1     Dated: July 13, 2012            QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP

2                                Charles K. Verhoeven (Cal. Bar No. 170151)
                                   charlesverhoeven@quinnemanuel.com

3                                50 California Street, 22nd Floor
                                   San Francisco, California 94111

4                                Telephone: (415) 875-6600
                                   Facsimile: (415) 875-6700

5

6                                Kevin P.B. Johnson (Cal. Bar No. 177129)
                                   kevinjohnson@quinnemanuel.com

7                                Victoria F. Maroulis (Cal. Bar No. 202603)
                                   victoriamaroulis@quinnemanuel.com

8                                555 Twin Dolphin Drive 5th Floor
                                   Redwood Shores, California 94065

9                                Telephone: (650) 801-5000
                                   Facsimile: (650) 801-5100

10                              Michael T. Zeller (Cal. Bar No. 196417)
                                 michaelzeller@quinnemanuel.com

11                              865 S. Figueroa St., 10th Floor
                                 Los Angeles, California 90017

12                              Telephone: (213) 443-3000
                                 Facsimile: (213) 443-3100

13

14                             By:    _Victoria Maroulis_

15                                    Victoria Maroulis

16                                  Attorneys for Defendants and
                                 Counterclaim-Plaintiffs

17                                  SAMSUNG ELECTRONICS CO.,
                                 LTD., SAMSUNG ELECTRONICS

18                                  AMERICA, INC. and SAMSUNG
                                 TELECOMMUNICATIONS

19                                  AMERICA, LLC

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION OF E-FILED SIGNATURE**

I, Michael A. Jacobs , am the ECF User whose ID and password are being used to file this Declaration.  In compliance with General Order 45, X.B., I hereby attest that Victoria Maroulis has concurred in this filing.

Dated:  July 13, 2012                                         /s/  Michael A. Jacobs
                                                                            Michael A. Jacobs