# EXHIBIT E

## PART ONE

<u>Ladies and Gentlemen:</u>

Let me thank you at the outset, as counsel have already done, for the attention which you have paid to the lawyers and the witnesses in the case and to all the evidence that has been introduced. I also want to thank you for your patience in enduring the occasional delays and hearings outside of your presence which are inevitable in any case.

My instructions to you are organized into three parts. The first part deals with civil cases generally. The second to the law applicable to the specific claims asserted in this case; and the third (and shortest) to the mechanics and procedure of your deliberations.

As you know, the functions of the Judge and of the Jury in a case of this sort are quite different from one another. It is my duty as Judge to instruct you as to the law which applies to the case. It is your duty to decide the facts and, in deciding these facts, to comply with the rules of law and apply them as I state them to you without regard to what you think the law is or should be. In deciding the facts and issues of fact, you must decide them without prejudice, or bias, or sympathy. Corporations stand equal before the law and are entitled to the same treatment as are individuals under the law.

If during the course of these instructions I state any rule, direction or idea in varying ways, no emphasis is intended by me and none must be inferred by you. You are not to single out any certain sentence or individual point or instruction and ignore the others. Rather, you are to consider all of my instructions as a whole, and you are to regard each instruction in the light of all others.

## PART TWO

Let me now instruct you on the law specifically applicable to this case.

This case is brought under section 2 of the Sherman Act. The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

It is undisputed that during the period that Novell owned WordPerfect and Quattro Pro (1994 to 1996), Microsoft had a monopoly in the PC operating systems market. Monopoly power is the power to control prices or exclude competition.

Novell claims that Microsoft injured Novell by engaging in anticompetitive conduct directed against it. Specifically, Novell alleges that, in violation of section 2 of the Sherman Act, Microsoft damaged its office productivity applications (WordPerfect, Quattro Pro and PerfectOffice) by withdrawing support for the namespace extension application programming interfaces (APIs) to preserve Microsoft's monopoly in the PC operating systems market. Because neither PerfectOffice nor WordPerfect nor Quattro Pro was a PC operating system, this claim may require a little more explanation. Novell presents two theories that underlie it. First, Novell contends that its office productivity applications were "cross-platform" software of such importance that their ability to run on other, non-Microsoft operating systems posed a threat to Microsoft's monopoly in the market for PC operating systems. Specifically, Novell says that the availability of WordPerfect, Quattro Pro, and PerfectOffice on non-Microsoft operating systems would have substantially reduced the dominance of Microsoft's PC operating systems. Second, Novell contends that PerfectOffice, WordPerfect, and Quattro Pro, including technologies called AppWare and OpenDoc, represented a form of "middleware" that threatened the applications barrier to entry that protected Microsoft's monopoly in the market for PC operating systems.

Therefore, according to Novell, Microsoft purposely harmed Novell's office productivity applications in order to protect its monopoly in the PC operating system market.

Although, as I have just stated, Novell claims that Microsoft engaged in anticompetitive conduct against its office productivity applications in order to maintain its monopoly in the PC operating system market, Novell is not claiming that Microsoft attempted to monopolize the productivity applications market itself, i.e., the market in which Novell's PerfectOffice, WordPerfect, and Quattro Pro and Microsoft's Office, Word, and Excel were direct competitors.

In order to prevail, Novell must prove by a preponderance of the evidence that Microsoft unlawfully maintained its monopoly power in the PC operating system market by engaging in anticompetitive conduct directed at Novell's office productivity applications. Anticompetitive conduct is conduct, other than competition on the merits, that has the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers in the relevant market. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals — or the achievement of these goals — unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether Microsoft's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors. You should consider whether Microsoft had legitimate business reasons for withdrawing support for the namespace extension

APIs. You should also distinguish maintenance of monopoly power through anticompetitive acts from the maintenance of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, which are not unlawful. You should consider all the characteristics of the relevant market and evaluate Microsoft's conduct as a whole.

Antitrust law does not impose a general duty upon a monopolist to cooperate with a competitor or to share its intellectual property with a competitor, even if the innovations or intellectual property might be useful to the competitor in developing its products. However, intellectual property rights do not confer a privilege to violate the antitrust laws, and, under certain circumstances, a refusal to cooperate with rivals can constitute anticompetitive conduct, such as when a monopolist has ended a voluntary (and thus presumably profitable) course of dealing, or when a monopolist has engaged in deceptive conduct, reasonably relied upon by a competitor, that has the purpose and effect of preventing a competitor from developing in a timely manner a product that would enhance competition by threatening a monopolist's monopoly power in the relevant market, here the PC operating system market.

Anticompetitive intent is not alone sufficient to establish a violation of the antitrust laws. While intent is not necessary to prove a violation of section 2 of the Sherman Act, it is not irrelevant to whether a violation occurred. You may consider Microsoft's intent in order to understand the likely effect of its conduct and to evaluate whether Microsoft's conduct was competition on the merits and whether the conduct harmed competition in the PC operating system market.

In order to prevail, Novell must also prove that the anticompetitive conduct it alleges was engaged in by Microsoft in fact caused the damage Novell claims it suffered.

Against the background of these rules and principles, you are being asked to answer certain questions. The questions are set forth on the special verdict form that Theresa will now hand to you.

The first two questions relate to the issue of causation about which I just instructed you. First, question 1 asks "has Novell proven by a preponderance of the evidence that Microsoft's decision to