William A. Isaacson (wisaacson@bsfllp.com)
(Admitted *Pro Hac Vice*)
Karen L. Dunn (kdunn@bsfllp.com)
(Admitted *Pro Hac Vice*)
Martha L. Goodman (mgoodman@bsfllp.com)
(Admitted *Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

John F. Cove, Jr. #212213
(jcove@bsfllp.com)
Meredith R. Dearborn #268312
(mdearborn@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460

David C. Kiernan #215335
(dkiernan@jonesday.com)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:    (415) 626-3939
Facsimile:    (415) 875-5700

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION<br><br>―――――――――――――――――<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No. C 05-00037 YGR<br>[CLASS ACTION]<br><br>**APPLE'S SUPPLEMENTAL MEMORANDUM RELATING TO APPLE'S MOTIONS *IN LIMINE* NOS. 1–3** |

# SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES:
# MOTION *IN LIMINE* NOS. 1 -3

As directed by the Court at the October 29 pre-trial conference, Defendant Apple Inc. ("Apple") submits this supplemental memorandum relating to Apple's Motions *in Limine* ("MIL") Nos. 1-3. In response to Apple's MILs Nos. 1-3, Plaintiffs argued that, if the motions were granted, portions of Apple's expert reports should also be stricken. Plaintiffs' Opp. to Apple's MIL No. 1 at 8 n.2; Plaintiffs' Opp. to Apple's MIL No. 2 at 12 n.4; Plaintiffs' Opp. to Apple's MIL No. 3 at 15 n.10 (Dkt. 824-3). This memorandum, as directed by the Court, replies to the footnoted requests to strike portions of Apple's expert reports.

Apple will deliver to the Court courtesy copies of Apple's expert reports marked to indicate the portions of the reports that Plaintiffs seek to strike relating to each MIL. Based on the hearing, if the MILs were granted and the issue of technical sharing is not raised, Apple would not plan to argue that technical sharing with Real Networks would be harmful to Apple. Apple would therefore not present the limited testimony on this point in the reports of Dr. Kelly, Expert Report of John P. Kelly, ¶¶ 36, 40 (Jan. 18, 2011) ("2011 Kelly Report") (Dkt. 536); Expert Report of John P. Kelly, ¶¶ 151-54 (July 19, 2013) ("2013 Kelly Report") (Dkt. 819-4); and Dr. Murphy's testimony about the benefits of DRM for consumers would also not be necessary. Expert Report of Kevin M. Murphy, ¶¶ 34-36 (Aug. 19, 2013) ("2013 Murphy Report") (Dkt. 824-9). In addition Apple would not present the following testimony in the 2013 Murphy Report: the first two sentence of ¶ 45 and the fourth sentence of ¶ 55. Apple would continue to contend that Real and other systems with no access to or knowledge of Apple's code and proprietary information would pose the risk of inadvertent corruption to iTunes and the iPod.

Beyond these limited paragraphs, Plaintiffs' footnoted motion is improper. Apple's MILs Nos. 1-3 seek to strike expert testimony of Plaintiffs' economic expert Dr. Noll and technical expert Dr. Martin that conflict with the law of the case and Ninth Circuit and Supreme Court case law. Plaintiffs by contrast seek to strike portions of Apple's reports that are consistent with and *agree* with the law of the case and Ninth Circuit and Supreme Court case law, including wide swaths of testimony that explain the development of the products, the security threats, and the

1

nature of competition, including competition with "open" system offerings such as Samsung, Creative, SanDisk, Rio and RealNetworks, and integrated offerings such Microsoft's Zune.

First, Plaintiffs seek to strike portions of Apple's expert reports concluding that the creation of technological incompatibilities is a legitimate product improvement from a technical perspective and pro-competitive from an economic perspective. 2013 Murphy Report ¶¶ 37-61 (Dkt. 824-9); 2013 Kelly Report, ¶¶ 155-66 (Dkt. 819-4). The opinions that Plaintiffs seek to strike are also the opinion of the Ninth Circuit; the creation of technological incompatibility *increases* competition:

> The creation of technological incompatibilities, without more, does not foreclose competition; rather, *it increases competition* by providing consumers with a choice among differing technologies, advanced and standard, and by providing competing manufacturers the incentive to enter the new product market by developing similar products of advanced technology.

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 542 (9th Cir. 1983) (emphasis added); *see also* Order Granting In Part Mot. for J. on the Pleadings at 10 (Oct. 30, 2009) (Dkt. 274) ("the introduction of technologically-related products, even if incompatible with the products offered by competitors, is alone neither a predatory nor anticompetitive act") (quoting *Foremost Pro,* 703. F.2d at 544).

Apple is entitled to show at trial that the iTunes 7.0 and 7.4 updates were genuine product improvements and if Apple succeeds, Plaintiffs' claims must fail. Order Granting in Part and Denying in Part Def.'s Mot. For Summ. J. at 12-13 (May 19, 2011) (Dkt. 627) (denying summary judgment on Plaintiffs' claims related to iTunes 7.0 due to factual disputes over whether "iTunes 7.0 was introduced to guard against the risk of corruption and was therefore a genuine product improvement"). Apple's iTunes 7.0 and 7.4 updates were genuine product improvements for several reasons. One of those is that the 7.0 and 7.4 updates created technological incompatibilities with the Real Networks' Harmony and other software that, in the words of the Ninth Circuit, *increased competition* by providing consumers with a choice among differing technologies and providing competing manufacturers the incentive to enter the new product market. Plaintiffs are not entitled to rebut these conclusions with expert opinions that disagree

2

APPLE'S SUPP MEMO RE MIL/MTS NOS. 1–3          No. C 05-00037 YGR

with the Ninth Circuit or the law of the case. In addition, Apple's expert Dr. Kelly may testify from his background that creating incompatibilities protects Apple's Walled Garden and thereby increases product quality, security and efficiency. 2013 Kelly Report, ¶¶ 155-66 (Dkt. 819-4).

One of the largest pieces of testimony Plaintiffs seek to strike is Dr. Kelly's testimony that Harmony's software or other software seeking to impose interoperability would introduce bugs and corruption and diminish the quality of iTunes and the iPod. *Id.* ¶¶ 75-150. Plaintiffs also seek to strike Dr. Kelly's explanation of how 7.0 and 7.4 worked and what 7.0 did compared to what 7.4 did. *Id.* ¶¶ 58-64. All of this testimony is unquestionably relevant to the issue of whether 7.0 and 7.4 were product improvements. *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp.* LP, 592 F.3d 991, 998-99 (9th Cir. 2010) (redesigns which make products more attractive to buyers, lower costs or improve performance do not present a jury issue in a Section 2 case); *Cal. Computer Prods., Inc. v. Int'l Bus. Machs. Corp.*, 613 F.2d 727, 744 (9th Cir. 1979) (affirming directed verdict in Section 2 cause of action because there was uncontroverted evidence that designs changes integrating CPUs and disk drives that prevented competitors from replacing the CPUs was a "cost-saving step").

Some of the testimony challenged by Plaintiffs also explains how Harmony works and there is no explanation as to why such testimony would be inadmissible with respect to 7.0 and 7.4. 2011 Kelly Report, ¶¶ 32-35 (Dkt. 536). A few paragraphs of Dr. Topel's report are also proper background on the iTunes store and iTunes updates. Expert Report of Robert H. Topel, ¶¶ 13, 20-21 (Aug. 19, 2013) ("2013 Topel Report") (Dkt. 824-10).

Finally, Plaintiffs seek to strike expert testimony generally discussing FairPlay and the 4.7 update. Some of this testimony would merely be background (although in shortened form) to explain the security enhancements of 7.0 and 7.4 because these updates were a change from 4.7. 2013 Kelly Report ¶¶ 17-31 (Dkt. 819-4). In addition, Apple's experts have critiqued the regression of Dr. Noll because in his before-and-after model, he ignores the effects of 4.7 in the period before 7.0, thus requiring an explanation of 4.7. Plaintiffs also seek to strike portions of Dr. Topel's report on how Real was not a major player in the market at the time of 4.7, which remains relevant to Real's status with respect to 7.0. 2013 Topel Report, ¶¶ 23-28 (Dkt. 824-10).

3

Dated: October 30, 2014

BOIES, SCHILLER & FLEXNER LLP

By: */s/ William A. Isaacson*
William A. Isaacson

Counsel for Defendant APPLE INC.