

EXHIBIT 1

No. 11-_____

_____

**In The United States Court Of Appeals**

**For The Ninth Circuit**

_____

**IN RE APPLE iPOD iTUNES ANTITRUST LITIGATION**

_____

On Petition for Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, No. 05-00037 JW

_____

**PETITION FOR PERMISSION TO APPEAL
ORDER GRANTING CLASS CERTIFICATION
Federal Rule Of Civil Procedure 23(f)**

_____

Robert A. Mittelstaedt (60359)
Craig E. Stewart (129530)
David C. Kiernan (215335)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone: (415) 626-3939
Facsimile:  (415) 875-5700

Attorneys for Defendant-Petitioner
APPLE INC.

The other key issue raised by the order below is whether an individual consumer who buys a product for personal use can represent not just other similarly-situated consumers, but also differently-situated resellers like Wal-Mart and Costco that buy and resell large quantities of the product. In ruling that they could, the court below addressed only the sub-issue of whether the fact that resellers, unlike consumers, benefit from higher retail prices affected its class certification decision. The court did not address the basic issues of whether consumers are adequate representatives of resellers or whether a consumer class action is the superior method for large resellers.

## **BACKGROUND**

The named plaintiffs are three individuals who challenge an Apple software update in 2006 that required iPod users to use Apple's free iTunes software application (rather than third party applications) to "sync" or load their iPods with music from their computers. Plaintiffs allege that the software update constituted unlawful monopolization and harmed them in various ways, including higher iPod prices. Plaintiffs conceded that economic theory provided no basis to conclude that the challenged conduct necessarily had any impact on iPod prices. Plaintiffs further conceded that, even though the case has been pending since 2005 and fact discovery has been closed for nearly a year, their expert had been unable, despite three attempts, to construct a reliable regression analysis that could establish impact on a common basis. Indeed, plaintiffs' expert admitted at his deposition that he could not rely on his regression analyses for anything, and certainly not to

as Best Buy, Target, Wal-Mart and Costco, each of which purchased at wholesale prices different from the retail prices plaintiffs paid.

The district court's ruling that these resellers may be included in a class with individual end-user plaintiffs independently merits review. The sole basis offered by the district for including the resellers was that they supposedly have the same incentive to prove and collect an overcharge.  But even if that were correct (*see infra*),  it is not an adequate basis for including them in the class.  Because the resellers paid different prices from the end-users in separate transactions, litigating their claims will necessarily involve separate proof from the end-users, as evidenced by Noll's proposed separate regression for resellers and his admission that the transaction data is different and requires different treatment.  *See* Doc. 679. As end-users, the named plaintiffs have no personal interest (and no relevant personal knowledge) in litigating these issues.  Similarly, because resellers generally have ongoing business relationships with Apple and purchase iPods for economic profit, their litigation and settlement incentives may differ from end-users.

Resellers are also differently situated with respect to plaintiffs' other theories of harm.  Whether any reseller was harmed by such things as higher prices for competing products, inability to purchase competing products or lack of technological innovation would not only vary from reseller to reseller, but would turn on an entirely different set of facts from those relevant to any consumer claim.

Even aside from these fundamental differences, the district court's ruling that the resellers possess the same economic interest as end users was itself in

conflict with decisions from other courts.  Plaintiffs say that, as consumers, they want lower retail prices for iPods.  Resellers, however, benefit from higher retail prices for iPods.[7]  Thus, the resellers' interests are aligned with Apple, not with consumers.

A putative class representative "cannot adequately protect the class if the representative's interests are antagonistic to or in conflict with the objectives of those being represented."  7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1768 (3d. ed. 2010).  "A fundamental conflict exists where some … members [of a class] claim to have been harmed by the same conduct that benefited other members of the class."  *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).  For that reason, the Eleventh Circuit held that plaintiffs could not adequately represent the interests of resellers that "appear to benefit from the effects of the conduct alleged to be wrongful by the named plaintiffs because their net economic situation is better off" as a result of the conduct.  *Id*. at 1191.  *See also Allied Orthopedic Appliances, Inc. v. Tyco Health Care Group*, 247 F.R.D. 156, 177 (C.D. Cal. 2007) ( "[T]o [the court's] knowledge, no circuit approves of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class.").

---

[7] To illustrate, a reseller that purchases iPods at, hypothetically, a 10% discount from Apple's retail prices will pay $90 for an iPod with a $100 retail price.  If the reseller charges the same retail price as Apple, the reseller will earn $10 on that iPod.  If the retail price drops to $90, however, the same reseller would earn only $9 on that same iPod.

EXHIBIT 2

**No. 11-80293**

_____

**In The United States Court Of Appeals**

**For The Ninth Circuit**

_____

**IN RE APPLE iPOD iTUNES ANTITRUST LITIGATION**

_____

On Petition for Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, No. 05-00037 JW

_____

**REPLY BRIEF IN SUPPORT OF PETITION FOR PERMISSION
TO APPEAL ORDER GRANTING CLASS CERTIFICATION**

_____

Robert A. Mittelstaedt (60359)
Craig E. Stewart (129530)
David C. Kiernan (215335)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone: (415) 626-3939
Facsimile:  (415) 875-5700

Attorneys for Defendant-Petitioner
APPLE INC.

order and made no specific findings to that effect.  In other circumstances in which district courts are required to resolve disputes, this Court's cases are clear that the court must explain the basis for its resolution.[4]  Factual disputes related to Rule 23's requirements should be treated no differently.  Plaintiffs do not contest that other circuits have required such an explanation.  *See* Pet. at 14-16 (citing cases).  This Court should make clear that the same requirement for a reasoned decision exists in this Circuit.

## III.    THE DISTRICT COURT ALSO ERRED IN DECIDING THAT PLAINTIFFS COULD REPRESENT RESELLERS.

Plaintiffs' argument regarding resellers suffers the same problem as the district court's order.  Plaintiffs assume that it is enough that consumers and resellers supposedly share a "common interest" in recovering an overcharge.  But even if their interests were aligned in that manner,[5] plaintiffs have no answer to the

---

[4]  *See McGrath v. County of Nevada*, 67 F.3d 248, 253-54 (9th Cir. 1995) (in determining attorney's fees under § 1988(b), a district court must "provide a clear indication of how it exercised its discretion, [or] we will remand the fee award for the court to provide an explanation"); *Solis v. County of Los Angeles*, 514 F.3d 946, 958 (9th Cir. 2008) (where the district court denied plaintiff's request for appointment of counsel without explanation, reversing because the court could not "determine on appellate review whether [the district court's] denial constituted an abuse of discretion"); *United Nat. Ins. Co. v. R & D Latex Corp.*, 141 F.3d 916, 919 (9th Cir. 1998) (reversing a decision to entertain a declaratory judgment action because "the lack of any reasoning or explanation whatsoever by the district court in support of its decision forecloses any meaningful appellate review for abuse of discretion") (citation omitted).

[5]  Plaintiffs do not dispute that, if prices were elevated as plaintiffs claim, resellers would have benefited from those higher prices, thus aligning their interests with Apple rather than plaintiffs.  Nor do they deny that resellers generally have ongoing business relationships with Apple that affect their litigation and settlement

(continued)

-11-

point that the resellers' claim turns on separate proof that is irrelevant to the consumers' claims because resellers purchased in separate transactions from consumers and paid different prices.  Thus, even if the consumers could prove impact and damages to themselves, that proof would not establish the resellers' claim—as evidenced by Noll's admission that the resellers' claim requires a separate regression model.  APP 372-377.  And plaintiffs as consumers have no stake whatsoever (nor personal knowledge) in adducing that separate proof or defending its validity.

Plaintiffs attempt to dismiss this problem by suggesting that the resellers can opt out if they believe their interests are not being adequately represented.  But that argument renders Rules 23(a)(3) and 23(a)(4) meaningless:  every typicality and adequacy of representation problem could be disregarded by putting the onus on the inadequately represented class members to figure out the problem and opt out.  Rule 23 requires that *plaintiffs* show that Rule 23(a)'s requirements are satisfied; it does not permit them to shift the responsibility for evaluating such issues to absent class members.

This is an important issue properly reviewable under Rule 23(a).  Plaintiffs do not dispute that it is commonly recurring question—and it has not been definitively settled by this Court.  The Court should grant this appeal to decide it.

---

incentives.  As the Eleventh Circuit recognized in *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003), these differing interests create a conflict that is not eliminated by the resellers' standing to sue under *Hanover Shoe*.

# EXHIBIT 3

No. 11-80293

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION

MELANIE TUCKER, SOMTAI TROY CHAROENSAK
AND MARIANA ROSEN
On Behalf of Themselves and All Others Similarly Situated,
*Plaintiffs-Respondents*,

vs.

APPLE INC.,
*Defendant-Petitioner*.

Appeal from the United States District Court
for the Northern District of California
No. 5:05-cv-00037-JW
The Honorable James Ware, Chief Judge

CLASS PLAINTIFFS' ANSWER TO APPLE'S PETITION FOR
PERMISSION TO APPEAL ORDER GRANTING CLASS CERTIFICATION

ROBBINS GELLER RUDMAN & DOWD LLP
BONNY E. SWEENEY
THOMAS R. MERRICK
ALEXANDRA S. BERNAY
CARMEN A. MEDICI
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs-Respondents
Melanie Tucker, Somtai Troy Charoensak and Mariana Rosen

cases, ignore *Dukes'* requirements, or apply a "lenient standard." *Id.* Instead, Judge Ware considered this voluminous record and specifically found that Plaintiffs had demonstrated that they could prove impact and damages on a class-wide basis. *See* D.E. No. 694 at 6; *see also* APP 282-292 (Supplemental Declaration of Roger G. Noll). "Although the parties dispute in their Supplemental Expert Reports whether Plaintiffs can prove impact and damages with a class-wide method in light of the Court's May 19 Order granting partial summary judgment to Defendant [citing Apple's expert report], ***the Court finds that Plaintiffs have demonstrated that it can be done***." D.E. No. 694 at 6. That Apple disagrees with that finding is no basis for interlocutory review.

As a separate ground for interlocutory review, Apple seeks to have this Court narrow the certified class of direct purchasers to exclude resellers and limit the class to consumers who purchased iPods from an Apple Store or from Apple online. Even if the precise class definition were an appropriate topic for a Rule 23(f) appeal, Judge Ware considered and rejected Apple's contention that resellers should be excluded from the class because they "benefit from higher retail prices." Pet. at 19. As the District Court held, all direct-purchaser Plaintiffs share a common interest in recovering the price increase in iPods attributable to Apple's misconduct. Apple's disagreement with that finding is no reason to grant the Petition.

- 3 -

Apple invites this Court to second-guess Chief Judge Ware's evaluation of the extensive factual record presented to him and replace his reasoning with its own, which is not an appropriate ground for a Rule 23(f) appeal.

## II.    ARGUMENT

### A.    The Ninth Circuit's Standard for Interlocutory Review Under Rule 23(f)

Reflecting the District Court's broad discretion on class certification, petitions for interlocutory review under Fed. R. Civ. P. 23(f) are granted "sparingly." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). *Chamberlan* identified three categories of cases where interlocutory review may be justified. While not completely clear from its Petition, Apple appears to be invoking two of the three: (1) "the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review"; and (2) "the district court's class certification decision is manifestly erroneous." *Id.* at 959; *see* Pet. at 2, 10.

"Unsettled" fundamental issues of class action law will not be found where prior decisions "resulted in different outcomes, not because they are in conflict with one another, but because they rest on different facts." *Chamberlan*, 402 F.3d at 961. While a court deciding class certification must engage in a "rigorous analysis," "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's

- 4 -

671983_1

claims as to a later version, iTunes 7.0.  Professor Noll reviewed the data specific to iTunes 7.0 and determined that methods common to all class members could be used to calculate damages to consumers, just as they had been for the earlier period.  APP 285.  Critically, Professor Noll opined that the method an economist would use to determine whether a software update harmed competition and damaged consumers does not depend on which update is analyzed.  APP 282.  Instead, the "appropriate method is to construct an econometric model to explain iPod prices and to determine whether iPod prices were higher after the update."  APP 282.  Professor Noll then performed that analysis by providing the Court with a revised version of his earlier regression, which included improved data received from Apple.  APP 282.  The fit of the equation was reported to be "very high" and Professor Noll opined that "[t]his regression demonstrates that a damage method that is common to members of the class can be implemented."  APP 285.

On September 23, 2011, again at the District Court's request, Professor Noll submitted a second supplemental declaration.  As with the other declarations, Professor Noll opined that it was feasible to construct an "econometric model for determining anticompetitive impact and calculating damages for direct purchasers of iPods from Apple that is predominantly common to class members . . . " APP 343.  In this report, Professor Noll described the regression analysis that the had conducted using data regarding iPods sold to end users.  For the end users, as for the resellers,

- 13 -

Professor Noll concluded that the regression analyses showed that impact could be determined, and damages calculated, using Apple's data and not relying on data pertaining to only individual class members. APP 342-343. Professor Noll also addressed various criticisms – many of which are repeated in Apple's Petition here – and explained that such criticisms were invalid and that supposed inconsistencies between testimony and his declarations were incorrect. APP 346-347. In fact, Professor Noll provided a detailed refutation of each of the supposed inconsistencies. *See* APP 349-371.

The record reflects that Chief Judge Ware's consideration of class certification involved a rigorous analysis. This is not an example of a court granting Plaintiffs' class-certification motion "just by hiring a competent expert." Pet. at 15. Apple's skewed and selective factual presentation – blithely ignoring all the evidence supporting the order – flouts the duty of "'scrupulous accuracy in referring to the record.'" *In re Disciplinary Action Boucher*, 837 F.2d 869, 871, *modified on other grounds*, 850 F.2d 597 (9th Cir. 1988).

### D.    The District Court Complied with Ninth Circuit Authority

The Supreme Court's *Dukes* decision, while making clear that the District Court is to conduct the type of rigorous analysis that Chief Judge Ware employed here, did not require the court to resolve all merits issues in the case.

There simply is no "unsettled and fundamental issue of relating to class actions" to support interlocutory review in this case.[15]

### E.    The Scope of the Class Is Not Grounds for Interlocutory Review

As a separate ground for review, Apple argues that the named Plaintiffs – end users – should not be allowed to represent reseller direct purchasers.  This issue presents neither an "unsettled and fundamental issue of law relating to class actions"; nor was Chief Judge Ware's decision on this point "manifestly erroneous."

---

*review denied*, Nos. 10-80088 & 10-80089 (9th Cir. June 14, 2010) ("*LCD I*"), (the court was presented with competing regression models; it declined to pick one over the other, saying "[a]t the class certification stage, the Court's inquiry is limited to determining 'whether plaintiffs have made a sufficient showing that the evidence they intend to present concerning antitrust impact will be made using generalized proof common to the class and that these common issues will predominate'"; *In re Online DVD Rental Antitrust Litig.*, No. M 09-2029 PJH, 2010 WL 5396064, at *9 (N.D. Cal. Dec. 23, 2010) ("*ODVD*") (in confronting competing expert analyses, the court, following *LCD I*, said that it was "persuaded that plaintiffs have put forth a feasible methodology to show that the impact of Wal-Mart's exit from the online DVD rental market can be measured, in a manner and with regard to evidence that applies equally to all class members").

[15]    Apple's reliance on *Conn. Retirement Plans and Trust Funds v. Amgen, Inc.*, 660 F.3d 1170 (9th Cir. 2011) is also misplaced.  Pet. at 11-12.  In securities cases like *Amgen*, if a plaintiff cannot show an efficient market and therefore be able to take advantage of the fraud on the market theory, individual reliance issues would predominate.  Antitrust cases such as this one have no such issues.  In fact, as the Supreme Court has noted, "predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

- 17 -

*Chamberlan*, 402 F.3d at 959.  Apple's main support is *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181 (11th Cir. 2003), which has been rejected by numerous courts.[16]  There is no "unsettled and fundamental issue of law" in the Ninth Circuit for this Court to address.

Chief Judge Ware's decision is also not "manifestly erroneous."  None of the grounds Apple asserts shows an actual conflict between the class representatives and resellers.  *See In re Static Random Access (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592, at * 4 (N.D. Cal. Sept. 29, 2008) ("The mere potential for a conflict of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical.")

Plaintiffs' expert examined voluminous evidence on Apple's pricing at both the wholesale and retail level and on that basis, he concluded that an economic regression could be implemented which would apply equally to all direct purchasers.  *See* APP

---

[16]    *See Braintree Labs., Inc. v. McKesson Corp.*, 11-80233 MISC JSW (JSC), 2011 WL 5025096, at *2 (N.D. Cal. Oct. 20, 2011) ("It is thus unsurprising that *Valley Drug* has not been followed in this District and others."). *See, e.g., Meijer, Inc. v. Abbott Labs.*, 251 F.R.D. 431, 433-36 (N.D. Cal. 2008); *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293 (D.D.C. 2007); *In re K-Dur Antitrust Litig.*, No. 01-1652 (JAG), 2007 WL 5302308 (D.N.J. Jan. 2, 2007); *Natchitoches Parish Hosp. Service Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 268-69 (D. Mass. 2008); *see also In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, No. 04-5525, 2008 WL 1946848, at *6 (E.D. Pa. May 2, 2008) ("[T]he Court declines to follow *Valley Drug* and will adhere instead to the principles announced in *Hanover Shoe* and *Brick*.").

173. Under Plaintiffs' theory of damages, all direct purchasers paid more for iPods than they would have but-for Apple's anticompetitive conduct. "Overcharges to the two categories of buyers, are linked by a common formula." APP 174.

Apple also argues that resellers could actually have benefited from higher retail prices. Pet. at 19. Besides making no economic sense, this argument is completely irrelevant. A "pass-on" or "otherwise benefited" defense is barred under settled antitrust law. *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489, 490 n.8 (1968) (disallowing "pass on" defense; "[a]s long as the seller continues to charge the illegal price, he takes from the buyer more than the law allows").[17]

Any differences in "litigation and settlement incentives" that resellers may have due to their "ongoing business relationships with Apple" (Pet. at 18) are easily handled through the notice and opt-out procedure.[18]

---

[17]    *See, e.g.*, *Teva Pharms. USA, Inc. v. Abbott Labs.*, 252 F.R.D. 213, 226-27 (D. Del. 2008) (rejecting as "irrelevant" adequacy challenge premised on variation in resellers' size and pricing strategies: "Direct purchasers may recover the amount of their overcharges irrespective of what happens after the overcharge is paid.") (citing *Hanover Shoe*, 392 U.S. at 489); "[T]he true import of the *Hanover Shoe* rule [is] that a direct purchaser may recover the full amount of the overcharge, even if he is otherwise benefitted, because the antitrust 'injury occurs and is complete when the defendant sells at the illegally high price.'" *Meijer, Inc.*, 251 F.R.D. at 435.

[18]    *See Meijer*, 251 F.R.D. at 436 ("[T]here is a much simpler and more effective way of determining class members' preferences: notify them of the action and give them the opportunity to opt out of the class or to enter an appearance.").

- 19 -

Finally, Apple argues that the named Plaintiffs "have no personal interest (and no relevant personal knowledge) in litigating" issues regarding resellers. Pet. at 18. In fact, all direct purchasers share a common interest: recovering the overcharge attributable to Apple's misconduct.[19]

## III.  CONCLUSION

Apple has failed to show any grounds for interlocutory review. Even a cursory review of the mammoth record regarding class certification demonstrates the court conducted the rigorous analysis required. Apple's Petition must be denied.

DATED: December 19, 2011            Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP

            s/ Bonny E. Sweeney
            BONNY E. SWEENEY

BONNY E. SWEENEY
THOMAS R. MERRICK
ALEXANDRA S. BERNAY
CARMEN A. MEDICI
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

---

[19]    *See Wellbutrin SR Direct Purchaser Antitrust Litig.*, 2008 WL 1946848, at *6 ("[B]ecause all class members have the right to pursue overcharge damages, they have the same incentive to do so, and there is no conflict among class members allegedly harmed by the same antitrust violation.").

- 20 -

# EXHIBIT 4

— SHEET 1 —

```
                UNITED STATES DISTRICT COURT

              NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE


THE APPLE IPOD ITUNES        )      NO. C 05-00037 YGR
ANTITRUST LITIGATION         )
                             )      PAGES 1 - 202
                             )
                             )      PRETRIAL HEARING CONFERENCE
                             )
                             )
                             )      OAKLAND, CALIFORNIA
_____)      WEDNESDAY, OCTOBER 30, 2014


            REPORTER'S TRANSCRIPT OF PROCEEDINGS


APPEARANCES:

FOR PLAINTIFFS:        ROBBINS GELLER RUDMAN & DOWD LLP
                       655 WEST BROADWAY, SUITE 1900
                       SAN DIEGO, CALIFORNIA  92101
                  BY:  ALEXANDRA S. BERNAY,
                       JENNIFER N. CARINGAL,
                       PATRICK COUGHLIN,
                       STEVEN M. JUDLOWSKI
                       CARMEN A. MEDICI,
                       BONNY E. SWEENEY, ATTORNEYS AT LAW

                       BONNETT FAIRBOURN FRIEDMAN & BALINT PC
                       4023 CAIN BRIDGE ROAD
                       FAIRFAX, VIRGINIA 22030
                  BY:  FRANCIS J. BALINT, JR.
                       ATTORNEY AT LAW

          (APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:           RAYNEE H. MERCADO, CSR NO. 8258

    PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.
```

```
          A P P E A R A N C E S  (CONT'D.)


FOR DEFENDANT:         BOIES, SCHILLER & FLEXNER LLP
                       5301 WISCONSIN AVENUE NW
                       WASHINGTON, D.C.  20015
                  BY:  WILLIAM A. ISAACSON,
                       KAREN L. DUNN,
                       MARTHA L. GOODMAN, ATTORNEYS AT LAW

                       BOIES, SCHILLER & FLEXNER LLP
                       1999 HARRISON STREET, SUITE 900
                       OAKLAND, CALIFORNIA  94612
                  BY:  JOHN F. COVE, JR.,
                       MEREDITH R. DEARBORN, ATTORNEYS AT LAW

                       JONES DAY
                       555 CALIFORNIA STREET, 26TH FLOOR
                       SAN FRANCISCO, CALIFORNIA  94104-1500
                  BY:  DAVID C. KIERNAN, ATTORNEYS AT LAW


                       --oOo--
```

**3**

1 WEDNESDAY, OCTOBER 29, 2014          9:31 A.M.
2      P R O C E E D I N G S
3      THE CLERK:  CALLING CIVIL ACTION 05-0037, THE APPLE
4 IPOD ITUNES ANTITRUST LITIGATION.
5      COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.
6      MS. SWEENEY:  GOOD MORNING, YOUR HONOR.  BONNY
7 SWEENEY FROM ROBBINS GELLER RUDMAN & DOWD REPRESENTING THE
8 PLAINTIFFS.
9      THE COURT:  ALL RIGHT.  WHY DON'T YOU INTRODUCE YOUR
10 TEAM.
11      MS. SWEENEY:  OKAY.  THIS IS PATRICK COUGHLIN.  HE
12 WASN'T HERE LAST TIME, YOUR HONOR, SO -- MR. COUGHLIN HAS
13 RECENTLY JOINED THE TRIAL TEAM.  HE HAS AN ENORMOUS AMOUNT OF
14 THE TRIAL EXPERIENCE.
15      THE COURT:  WELCOME.
16      MR. COUGHLIN:  THANK YOU, YOUR HONOR.
17      MS. SWEENEY:  WE HAVE ALEXANDRA BERNAY.  CARMEN
18 MEDICI BEHIND XAN, FRANK BALINT.
19      MR. BALINT:  MORNING, YOUR HONOR.
20      THE COURT:  MORNING.
21      MS. SWEENEY:  JENNIFER CARINGAL.
22      THE COURT:  OKAY.
23      MS. SWEENEY:  AND STEVE JUDLOWSKI.  STEVE IS ALSO NEW
24 TO THE TRIAL TEAM, YOUR HONOR.
25      MR. JUDLOWSKI:  MORNING, YOUR HONOR.

**4**

1      THE COURT:  GOOD MORNING.
2      OKAY.  ON THE DEFENSE SIDE.
3      MR. ISAACSON:  BILL ISAACSON.  GOOD MORNING, YOUR
4 HONOR.
5      THE COURT:  GOOD MORNING.
6      MR. ISAACSON:  WITH ME FROM BOIES, SCHILLER IS KAREN
7 DUNN, WHO (SIC) YOU'VE MET BEFORE; MEREDITH DEARBORN; MARTHA
8 GOODMAN.  DEPENDING ON HOW THE MORNING PLAYS OUT, IT'S
9 POSSIBLE YOU COULD ALSO HEAR FROM JOHN COVE.
10      MR. COVE:  MORNING, YOUR HONOR.
11      THE COURT:  GOOD MORNING.
12      MR. ISAACSON:  AND YOU KNOW DAVID KIERNAN FROM JONES
13 DAY.
14      THE COURT:  AND THAT'S COVE, C-O-V-E?
15      MR. COVE:  YES, YOUR HONOR.
16      THE COURT:  ARE YOU ALSO -- ARE YOU FROM JONES DAY OR
17 BOIES, SCHILLER?
18      MR. COVE:  I'M FROM BOIES, SCHILLER FROM OUR OAKLAND
19 OFFICE.
20      THE COURT:  OKAY.  ALL RIGHT.  WELL, A LOT TO DO.
21      PRIMARY LAWYERS COME UP TO THE MICS.  EVERYBODY ELSE MAKE
22 YOURSELVES COMFORTABLE, AND LET'S GET STARTED.
23      I'M GOING TO START WITH YOUR TRIAL READINESS BINDER.
24      ONE OF THE THINGS THAT I WANT TO MAKE SURE IS VERY CLEAR
25 TO EVERYONE IN LIGHT OF WHAT I'VE SEEN IN THAT BINDER IS THAT

5

1  YOU ONLY GET 20 HOURS, AND THAT 20 HOURS INCLUDES YOUR
2  OPENINGS AND YOUR CLOSINGS.
3      GIVEN THE TIME ESTIMATES THAT YOU'VE PROVIDED, YOU WON'T
4  HAVE AN OPENING OR A CLOSING SO I SUGGEST THAT YOU THINK ABOUT
5  THOSE TIME LIMITATIONS AND LET ME KNOW, BECAUSE YOU WILL GET
6  DAILY REPORTS, WHETHER YOU WANT ME TO RESERVE TIME FOR YOU.
7      YOU KNOW, WHY DOESN'T TECHNOLOGY WORK WHEN YOU'D LIKE IT
8  TO?
9      WE MAY HAVE THE REBOOT.
10              (PAUSE IN THE PROCEEDINGS.)
11              (OFF-THE-RECORD DISCUSSION.)
12      THE COURT:  OKAY.  TAB 1 IN YOUR BINDER, YOUR
13  STIPULATION -- YOUR PROPOSED TRIAL STIPULATIONS.  HAVE YOU
14  DECIDED -- HAVE YOU FINISHED YOUR MEETING AND CONFERRING ON
15  WHETHER OR NOT THESE ARE GOING TO BE READ TO THE JURY,
16  SUBMITTED AS AN EXHIBIT --
17      YOU'RE GOING TO HAVE TO SIT DOWN, MR. COLLIN (SIC).
18      MS. SWEENEY:  WE HAVE MET AND CONFERRED, YOUR HONOR,
19  AND I BELIEVE WE'VE REACHED AGREEMENT THAT THESE WILL BE READ
20  TO THE JURORS BUT NOT SUBMITTED.
21      MR. ISAACSON:  THAT'S RIGHT, YOUR HONOR.
22      THE COURT:  SO YOU WANT ME TO TELL THE JURY THAT
23  YOU'RE STIPULATING TO "THE AUTHENTICITY OF ANY DOCUMENT
24  CREATED AND PRODUCED BY A PARTY IN THIS CASE.  THE STIPULATION
25  SHALL NOT BE DEEMED OR INTERPRETED TO BE A STIPULATION THAT

6

1  ANY DOCUMENT IS ADMISSIBLE INTO EVIDENCE."
2      YOU WANT ME TO READ THAT TO THE JURY?
3      MR. ISAACSON:  WELL, TAB 1 ARE THE STIPULATIONS ON
4  LEGAL MATTERS.  I THINK WHAT WE'RE --
5      THE COURT:  RIGHT, SO THAT'S WHAT I SAID.
6      MR. ISAACSON:  MS. SWEENEY WAS TALKING ABOUT THE
7  STIPULATION OF FACTS.
8      MS. SWEENEY:  I WAS.  I APOLOGIZE, YOUR HONOR.  I WAS
9  TALKING ABOUT THE STIPULATION OF FACTS.
10      THE COURT:  DO WE ALL HAVE THE SAME BINDER?
11      MS. SWEENEY:  WE DO.
12      MR. ISAACSON:  RIGHT.
13      THE COURT:  I'M AT TAB 1 IN YOUR BINDER.
14      MR. ISAACSON:  THESE WOULD NOT BE READ TO THE JURY.
15      THE COURT:  OKAY.  SO DOCKET 838 WITH RESPECT TO YOUR
16  PROPOSED ORDER REGARDING THESE TRIAL STIPULATIONS WILL BE
17  ENTERED.
18      ALL RIGHT.  THE NEXT TAB I HAVE IS THE PLAINTIFF'S WITNESS
19  LIST.  I THINK WE HAVE SOME ISSUES WITH RESPECT TO THESE
20  WITNESSES.  AND LET'S GO THROUGH THIS.
21      I RECEIVED A MOTION THAT ON -- IT WAS FILED ON MONDAY,
22  RECEIVED A HARD COPY OF IT TODAY.  IS THAT RIGHT --
23      MR. ISAACSON:  YES, YOUR HONOR.
24      THE COURT:  -- MR. ISAACSON?
25      MR. ISAACSON:  YES, YOUR HONOR.

7

1      THE COURT:  REGARDING MR. RIEGEL?
2      MR. ISAACSON:  YES.  AS WELL AS MR. ROEVER.
3      THE COURT:  WELL -- OKAY.  RESPONSES.
4      MS. SWEENEY:  YES, YOUR HONOR.  WE'RE PREPARED TO
5  BRIEF IT, BUT IN THE INTERIM, PLAINTIFFS WERE NOT IN A
6  POSITION TO NOTIFY APPLE MUCH EARLIER THAN THEY DID ABOUT
7  MR. RIEGEL.  WE MET WITH MR. RIEGEL FOR THE FIRST TIME AFTER
8  THE LAST PRETRIAL CONFERENCE WITH YOUR HONOR.
9      THE COURT:  WHAT DO YOU MEAN BY THAT?  WHAT DO YOU
10  MEAN BY THAT?  THIS CASE HAS BEEN IN -- THIS CASE WAS FILED IN
11  2005.  2005.  WE'RE GOING ON TEN YEARS.  YOU HAVE -- NO.  STOP
12  FOR A MINUTE.
13      YOU HAVE A NUMBER OF NAMED PLAINTIFFS.  HE IS THE ONLY --
14  WELL, WHO IS THE NAMED PLAINTIFF THAT WAS IDENTIFIED FOR
15  DEPOSITION THAT WAS GOING TO REPRESENT THE CLASS OF RESELLERS?
16      MS. SWEENEY:  YOUR HONOR, JUDGE WARE HELD IN TWO
17  SEPARATE ORDERS AND THE NINTH CIRCUIT AFFIRMED --
18      THE COURT:  REFUSED TO -- NO, THEY DIDN'T AFFIRM.
19      MS. SWEENEY:  REFUSED --
20      THE COURT:  THEY REFUSED TO REVIEW.  IT'S A VERY
21  DIFFERENT THING.
22      MS. SWEENEY:  OKAY.  YOU'RE RIGHT, YOUR HONOR.  SO
23  THE NINTH CIRCUIT REFUSED TO REVIEW THE QUESTION WHETHER
24  PLAINTIFFS, WHO ARE TWO CONSUMERS, COULD REPRESENT A CLASS
25  THAT CONSISTED IN PART OF RESELLERS.

8

1      NOW, MR. RIEGEL IS A -- IS A RESELLER MEMBER OF THE CLASS.
2  HE'S AN ABSENT MEMBER OF THE CLASS.  IT'S QUITE COMMON IN
3  CLASS CASES FOR PLAINTIFFS TO CALL -- IN ADDITION TO NAMED
4  PLAINTIFFS, TO CALL ABSENT CLASS MEMBERS TO TESTIFY.
5      WE'RE PREPARED TO OFFER MR. RIEGEL UP FOR A DEPOSITION.
6  WE DIDN'T LEARN OF MR. RIEGEL'S CONTACT INFORMATION PRIOR TO
7  THE CLOSE OF DISCOVERY.  WE ONLY GOT THAT AS PART OF THE CLASS
8  NOTICE PROCEDURE.
9      MOREOVER, YOUR HONOR, WE WEREN'T ABLE TO --
10      THE COURT:  WELL, WHO DID YOU THINK WAS GOING TO
11  REPRESENT THEM?
12      MS. SWEENEY:  MS. (SIC) -- YOUR HONOR, WE'RE NOT
13  EXPECTING MR. RIEGEL TO REPRESENT THE CLASS.  WE HAVE CLASS
14  REPRESENTATIVES WHO REPRESENT BOTH THE CONSUMER PORTION AND
15  THE RESELLER PORTION OF THE CLASS.  MR. --
16      THE COURT:  WELL, WHO ELSE IS THERE, THEN?  I'M
17  LOOKING AT YOUR LIST.  I SEE TUCKER, WHO IS A CLASS REP.
18  SHE'S A CONSUMER, CORRECT?
19      MS. SWEENEY:  THAT'S CORRECT.
20      THE COURT:  ROSEN IS A CONSUMER.
21      MS. SWEENEY:  THAT'S CORRECT.
22      THE COURT:  OKAY.  SO WHO ELSE, THEN, WAS THERE
23  IDENTIFIED TO REPRESENT THE RESELLERS IN THIS CASE?
24      MS. SWEENEY:  JUDGE WARE APPOINTED MARIANA ROSEN AND
25  MELANIE TUCKER AS CLASS REPRESENTATIVES FOR THE ENTIRE CLASS,

**9**

1 INCLUDING THE RESELLER PORTION OF THE CLASS.
2 THE COURT: BUT THAT WAS -- THAT ORDER WAS RESCINDED
3 SUA SPONTE.
4 MS. SWEENEY: YOUR HONOR, THAT PART OF THE ORDER WAS
5 NOT RESCINDED. JUDGE WARE REAFFIRMED HIS ORDER APPOINTING
6 THOSE TWO CLASS REPRESENTATIVES AS REPRESENTATIVES OF THE
7 ENTIRE CLASS WHEN HE SUBSEQUENTLY CERTIFIED THE CLASS. AND
8 THAT PRECISE ISSUE WAS THE PRINCIPAL ARGUMENT THAT APPLE MADE
9 IN ITS 23(F) APPLICATION TO THE NINTH CIRCUIT --
10 THE COURT: WELL, IT'S --
11 MS. SWEENEY: -- WHICH AS YOUR HONOR POINTED OUT WAS
12 REFUSED BY THE NINTH CIRCUIT.
13 THE COURT: IT WAS REFUSED. IT WAS AN INTERLOCUTORY
14 ORDER. THEY DON'T HAVE TO REVIEW THESE THINGS. BUT IT'S AN
15 ISSUE. IT'S AN ISSUE IN THIS CASE BECAUSE, FRANKLY, I DON'T
16 UNDERSTAND HOW HE COULD HAVE RULED THE WAY HE DID.
17 I CERTAINLY DID NOT TAKE THAT APPROACH IN MY ANTITRUST
18 MDL. AND I REQUIRED THAT THEY WENT TO -- THAT THEY MADE SURE
19 THAT THEY HAD A REAL RESELLER.
20 MS. SWEENEY: WELL --
21 THE COURT: THE ISSUES WEREN'T DIFFERENT.
22 MS. SWEENEY: WELL, THEN, YOUR HONOR, WE ARE IN THE
23 POSITION OF HAVING A CERTIFIED CLASS WHERE JUDGE WARE
24 REPEATEDLY AND EXPLICITLY --
25 THE COURT: I UNDERSTAND.

**10**

1 MS. SWEENEY: -- AUTHORIZED OUR TWO PLAINTIFFS TO
2 REPRESENT THE ENTIRE CLASS, SO TO --
3 THE COURT: I UNDERSTAND, IT'S A DIFFICULT POSITION.
4 AND I'M FRANKLY NOT EXACTLY SURE WHAT I'M SUPPOSED TO DO WITH
5 IT. BECAUSE HE -- YOU KNOW, YOU OBVIOUSLY PROCEEDED THEN ON
6 THAT BASIS. BUT IT -- IT'S -- OUR -- TELL ME HOW IT IS YOU
7 CONVINCED HIM TO -- TO MAKE THAT DECISION? HOW IS IT THAT TWO
8 CONSUMERS CAN REPRESENT BEST BUY OR CIRCUIT CITY?
9 MS. SWEENEY: BECAUSE, YOUR HONOR, IT'S AN OVERCHARGE
10 CASE. AND ALL MEMBERS OF THE CLASS SUFFERED AN OVERCHARGE.
11 PROFESSOR NOLL IN HIS DAMAGES REPORT AND HIS METHODOLOGY,
12 WHICH WAS PRESENTED MULTIPLE TIMES TO JUDGE WARE, EXPLAINED
13 VERY CLEARLY HOW THE -- THE PRICING FOR RESELLERS WAS
14 DIFFERENT FROM -- BUT CLOSELY TIED TO -- EXPLICITLY LINKED TO
15 PRICING FOR MEMBERS OF THE CONSUMER -- CONSUMER MEMBERS OF THE
16 CLASS.
17 THE COURT: HOW IS THAT?
18 MS. SWEENEY: BECAUSE AS -- AS APPLE WILL SAY AND AS
19 THEY'VE SAID MULTIPLE TIMES IN THEIR DEFENSE, THE -- THE
20 RESELLERS GET A -- A DISCOUNT OFF THE LIST PRICES USED FOR THE
21 CONSUMERS, SO IT'S VERY CLOSELY TIED.
22 NOW, PROFESSOR NOLL TOOK INTO --
23 THE COURT: SO YOU'RE SAYING THAT THERE IS -- THAT
24 THE EVIDENCE THAT IS GOING TO COME INTO TRIAL THAT THERE IS NO
25 SEPARATE NEGOTIATION ON A WHOLESALE BASIS THAT IS NOT TIED TO

**11**

1 CONSUMER PRICES OR -- OR SAID DIFFERENTLY, THE EVIDENCE THAT
2 WILL COME IN AT TRIAL IS THAT THE PRICING FOR RESELLERS IS
3 DIRECTLY LINKED TO THE PRICING TO CONSUMERS.
4 IS THAT WHAT THE EVIDENCE WILL SHOW?
5 MS. SWEENEY: THAT'S RIGHT, YOUR HONOR.
6 NOW, THE RESELLERS GOT VOLUME DISCOUNTS, AND THOSE VOLUME
7 DISCOUNTS ARE ACCOUNTED FOR IN PROFESSOR NOLL'S DAMAGES
8 METHODOLOGY AND REPORT. BUT THE PRICES THEMSELVES ARE
9 DIRECTLY LINKED TO THE CONSUMER PRICES.
10 THE COURT: ALL RIGHT. WELL, WE'LL SEE HOW IT COMES
11 IN.
12 MR. ISAACSON: YOUR HONOR, COULD I ADD SOMETHING TO
13 THE RECORD ON THAT?
14 THE COURT: YOU MAY IN A MOMENT.
15 MR. ISAACSON: OKAY.
16 THE COURT: SO LET'S GO BACK TO MR. RIEGEL.
17 WHY NOW?
18 IF -- IF YOU ARE SO CONFIDENT THAT TUCKER AND ROSEN CAN
19 REPRESENT THESE CLASSES AND NEVER IDENTIFIED MR. RIEGEL AS
20 A -- UNDER RULE 26 OR OTHERWISE, WHY SHOULD I ALLOW YOU TO
21 HAVE HIM TESTIFY?
22 MS. SWEENEY: WELL, AS I SAID BEFORE, YOUR HONOR,
23 WE -- WE COULDN'T HAVE IDENTIFIED HIM EARLIER THAN WE DID, AND
24 WE BELIEVE THAT MR. RIEGEL --
25 THE COURT: BECAUSE WHY?

**12**

1 MS. SWEENEY: WELL, WE DIDN'T HAVE HIS CONTACT
2 INFORMATION UNTIL AFTER -- UNTIL THE CLASS NOTICE PROCEDURE.
3 AND MOREOVER --
4 THE COURT: WAIT. THE CLASS NOTICE PROCEDURE CLOSED
5 YEARS AGO.
6 MS. SWEENEY: LONG AFTER DISCOVERY.
7 THE COURT: SO WHY DIDN'T YOU DO IT -- I JUST PULLED
8 THAT ORDER. THE ORDER GRANTING THE NOTICE PLAN WAS MARCH 29TH
9 2012, TWO AND A HALF YEARS AGO.
10 WHEN DID THE OPT-OUT PROCEDURE FINISH?
11 MS. SWEENEY: I BELIEVE IT WAS -- WELL, THE -- THE
12 CLASS NOTICE WAS DELAYED FOR VARIOUS REASONS SO I'M NOT
13 POSITIVE THE EXACT DATE, BUT I BELIEVE --
14 THE COURT: DOES ANYBODY HAVE THE EXACT DATES?
15 (PAUSE IN THE PROCEEDINGS.)
16 MR. ISAACSON: I'M SORRY. WE WERE LOOKING AT WHEN
17 THE NOTICE WENT OUT, BUT --
18 THE COURT: DOES ANYBODY HAVE THE DATE WHEN -- THE
19 OPT-OUT CLOSED? EITHER SIDE. NO ONE KNOWS THIS?
20 MR. ISAACSON: WE CAN GET IT FOR YOU, YOUR HONOR.
21 MS. SWEENEY: I RECOGNIZE, YOUR HONOR, THAT IT WAS
22 OVER A YEAR AGO THAT THE OPT-OUT PERIOD CLOSED. I'M NOT
23 DENYING THAT. BUT IN ADDITION, WE -- WE SUBSEQUENTLY -- JULY,
24 AND THEN AFTER WE RECEIVED APPLE'S CORRECTED INFORMATION, NOT
25 TILL I THINK IT WAS AFTER PROFESSOR NOLL SUBMITTED HIS REPORT.

13

1    IN JULY OF 2013, WE GOT NEW INFORMATION ABOUT AFFECTED
2  IPODS, AND PROFESSOR NOLL HAD TO REDO HIS DAMAGES REPORT, SO
3  WE HAD --
4      THE COURT:  SO WHAT?  SO WHAT?  DID THIS PERSON, DID
5  THIS PERSON, MR. RIEGEL -- HIS TESTIMONY IMPACTS NOLL'S
6  ANALYSIS?
7      MS. SWEENEY:  MR. RIEGEL IS A CLASS MEMBER WHO BOUGHT
8  ONE OF THE SO-CALLED AFFECTED IPODS, THAT IS, ONE OF THE IPODS
9  THAT HAS KVC AND DVC ON IT.
10    NOW, WE DIDN'T HAVE THE INFORMATION UNTIL JULY 2013 AS TO
11 WHO PRECISELY THOSE CLASS MEMBERS WERE BECAUSE WE RELIED ON
12 APPLE'S SWORN DECLARATION, MR. FARRUGIA, AND HE CHANGED THAT
13 DECLARATION HALFWAY THROUGH OUR EXPERT REPORTING PROCESS.  AND
14 THEN IN ADDITION --
15     THE COURT:  AND THEN YOU DIDN'T DO ANYTHING AFTER
16 THAT EITHER.
17     MS. SWEENEY:  WELL, WE DID.
18     THE COURT:  THAT WAS, LIKE, DECEMBER OF LAST YEAR.
19     MS. SWEENEY:  AND -- AND THEN, YOUR HONOR -- I
20 BELIEVE IT WAS AT THE LAST PRETRIAL CONFERENCE, YOUR HONOR
21 COMMENTED THAT THE AMOUNT OF DAMAGES IS NOT A MATTER THAT CAN
22 BE SEALED, AND SO WE BELIEVE WE WERE THEN IN A POSITION TO
23 SPEAK WITH THIS MEMBER OF THE CLASS, THIS ABSENT CLASS MEMBER,
24 AND -- AND TALK ABOUT HOW HE HAD BEEN DAMAGED BY APPLE'S
25 CONDUCT.

14

1      THE COURT:  I DON'T UNDERSTAND THE LINK.  IT'S -- I
2  DON'T UNDERSTAND YOUR LOGIC.
3      MS. SWEENEY:  WELL, BECAUSE APPLE HAD SEALED AN
4  ENORMOUS AMOUNT OF INFORMATION IN THIS CASE, INCLUDING EVERY
5  BIT OF THE INFORMATION THAT PROFESSOR NOLL RELIED UPON TO
6  CALCULATE HIS DAMAGES.  AND THE PROTECTIVE ORDER PERMITTED US
7  TO SHARE IT WITH ATTORNEYS BUT NOT ABSENT CLASS MEMBERS.
8      THE COURT:  AND YOU COULDN'T CONTACT A RESELLER AND
9  SAY, WE'D LIKE YOU TO POTENTIALLY TESTIFY ABOUT YOUR PURCHASE?
10     MS. SWEENEY:  WE COULD, BUT WE COULDN'T INFORM THAT
11 CLASS MEMBER THE AMOUNT OF DAMAGES CALCULATED FOR THE CLASS
12 MEMBER.
13     THE COURT:  SO WHAT?  SO WHAT?
14     MS. SWEENEY:  WE THINK IT'S A RELEVANT CONSIDERATION.
15 IT WAS CERTAINLY A QUESTION THAT A CLASS MEMBER WOULD BE
16 LIKELY TO ASK US.
17    IN ANY CASE, WE'RE PREPARED TO OFFER MR. RIEGEL UP FOR A
18 DEPOSITION.  HE IS NOT VERY FAR FROM OAKLAND.  WE HAVE THREE
19 WEEKS BEFORE TRIAL BEGINS.  HIS TESTIMONY AT TRIAL WILL BE
20 VERY SHORT AND VERY LIMITED.
21     THE COURT:  ALL RIGHT.  A RESPONSE.
22     MR. ISAACSON:  FIRST OF ALL, TO ANSWER YOUR QUESTION,
23 OUR RECORDS SHOW THAT THE OPT-OUT DATE WAS JULY 30TH, 2012,
24 FOLLOWING THE NOTICE GOING OUT IN MAY OF 2012.
25     FIRST, YOUR HONOR, PLAINTIFFS HAVE BEEN ON NOTICE FOR

15

1  QUITE SOME TIME THAT THIS IS A LEGAL ISSUE IN THE CASE WHETHER
2  THE INDIVIDUAL PLAINTIFFS CAN REPRESENT THE RESELLERS.
3  REGARDLESS OF WHAT JUDGE WARE ORDERED, THEY KNOW THAT THIS WAS
4  AN -- THIS IS AN ISSUE GOING FORWARD ON APPEAL AND THAT A
5  CLASS CAN BE DECERTIFIED AT ANY TIME.
6     IN ADDITION, RECENT DECISIONS SUCH AS THE OPTICAL DISK
7  DRIVE CASE HAVE MADE THIS POINT VERY CLEAR, THAT INDIVIDUALS
8  SHOULD NOT BE REPRESENTING THE LARGE BUSINESSES.
9     SECONDLY, DURING DISCOVERY, RESELLER CONTRACTS WERE
10 PRODUCED.  THE NAMES OF RESELLERS ARE NOT A MYSTERY.
11 RESELLERS, YOU CAN ALSO GOOGLE THEM TO FIND OUT WHO THEY ARE.
12    THE ABILITY TO IDENTIFY NEW CLASS REPRESENTATIVES GOES
13 BACK TO 2005.  IT DOES NOT -- IT'S NOT CONNECTED TO THE DATE
14 THAT NOTICE WENT OUT OR ADDRESSES WERE PROVIDED.
15    THEY'RE ALSO -- IF THEY DIDN'T THINK THEY GOT ENOUGH
16 DURING THE DISCOVERY PERIOD AND THEY WANTED TO KNOW ABOUT --
17 MORE ABOUT RESELLERS, THEY COULD HAVE DONE MORE DISCOVERY.
18 BUT THEY DEFINITELY, THE NAMES OF RESELLERS WERE DEFINITELY
19 IDENTIFIED DURING DISCOVERY.
20    THIRD, DR. NOLL'S REPORT HAS TWO DIFFERENT RESULTS AND
21 TWO -- AND HIS MODEL HAS TO ADJUST FOR RESELLERS BECAUSE THEY
22 GET TWO DIFFERENT DISCOUNTS, SO HE CALCULATES A LOWER
23 RECHARGE -- OVERCHARGE FOR RESELLERS THAN HE DOES FOR
24 CONSUMERS.  2.38 PERCENT FOR RESELLERS.  CONSUMERS, THE
25 OVERCHARGE IS 7.45 PERCENT.

16

1    SO RIGHT NOW YOU HAVE A SITUATION WHERE TWO INDIVIDUAL
2  CLASS MEMBERS ARE -- ARE SEEKING TO REPRESENT A CLASS WHERE ON
3  A PERCENTAGE BASIS, THEY GET MATERIALLY MORE THAN THE
4  RESELLERS WITH NO INPUT FROM A RESELLER CLASS REPRESENTATIVE
5  TO SAY, YES, THAT IS AN APPROPRIATE WAY TO APPROACH THIS.
6     SO THERE -- THERE ARE VERY DIFFERENT ISSUES ABOUT
7  NEGOTIATIONS AND HOW YOU CALCULATE DAMAGES FOR THE INDIVIDUALS
8  AND THE RESELLERS IN THE CASE BASED ON THE PLAINTIFFS' CASE
9  THAT IS GOING TO BE PRESENTED TO THE JURY.
10    NOW -- SO THE FINAL POINT WOULD BE WITH REGARDS TO THIS
11 NEW WITNESS, WHICH ISN'T EVEN A NEW CLASS REPRESENTATIVE.
12 THEY'RE JUST TRYING TO GLOSS OVER THE LACK OF A CLASS
13 REPRESENTATIVE AND GIVE SOME COMFORT TO THE JURY THAT THE
14 RESELLERS ARE DE FACTO BEING REPRESENTED.
15    BUT, YOU KNOW, THIS PERSON'S NAME NEVER CAME UP IN
16 DISCOVERY, WAS NEVER IDENTIFIED TO US IN RULE 26 DISCLOSURES
17 OR OTHERWISE.  THERE'S NO REASON FOR A SURPRISE WITNESS.
18 THERE'S NO REASON WHY WE SHOULD HAVE TO GO PREPARE AND TAKE A
19 DEPOSITION WHEN WE HAVE MANY OTHER THINGS TO DO TO PREPARE FOR
20 TRIAL IN THE NEXT THREE WEEKS.  AND I THINK PART OF THIS
21 HEARING TODAY WILL MAKE -- I'M ASSUMING YOUR HONOR WILL BE
22 TELLING US SOME THINGS WE NEED TO DO TO PREPARE FOR TRIAL, AND
23 WE THINK WE SHOULD BE FOCUSING ON THOSE.
24    THE PREJUDICE IS CLEAR AND THE RULES ARE CLEAR THAT THEY
25 SHOULD NOT BE SPRINGING A COMPLETELY UNKNOWN WITNESS UPON US

17

1  AT THE LAST MINUTE.
2        THE COURT: RESPONSE?
3        MS. SWEENEY: I THINK THE NOTICE PERIOD IS -- IS
4  SUFFICIENT FOR APPLE TO CORRECT ANY DEFICIENCIES IN ITS
5  KNOWLEDGE, AND THERE IS NO PREJUDICE. APPLE HAS --
6        THE COURT: WELL, THERE'S SIGNIFICANT PREJUDICE.
7  THERE'S SIGNIFICANT PREJUDICE HERE. THIS IS YEARS LATE. EVE
8  OF TRIAL. THE EVE OF TRIAL AFTER A NINE-YEAR HOLD ON THIS
9  CASE.
10        MS. SWEENEY: ANY PREJUDICE CAN BE CORRECTED BY A
11  DEPOSITION. I'M NOT SURE WHAT PREJUDICE THERE IS WHEN THE
12  KIND OF TESTIMONY THAT HE'S GOING TO BE OFFERING SIMPLY IS --
13  IT --
14        THE COURT: WELL, THEN WHY IS IT NECESSARY?
15        MS. SWEENEY: BECAUSE IT REFLECTS A DIFFERENT
16  PERSPECTIVE FROM A DIFFERENT MEMBER OF THE CLASS. AND IT'S --
17  IT'S BEEN MY EXPERIENCE IN OTHER CLASS CASES THAT ABSENT CLASS
18  MEMBERS CAN TESTIFY. AND IT'S -- SO LONG AS IT'S NOT OVERLY
19  DUPLICATIVE OR CUMULATIVE, THEY CAN TESTIFY ON AREAS WHERE
20  CLASS MEMBERS ALSO HAVE SOME KNOWLEDGE. CLASS
21  REPRESENTATIVES. EXCUSE ME.
22        THE COURT: IT SEEMS TO ME THAT YOU TOOK A LITIGATION
23  STRATEGY IN THIS CASE AND NOW YOU'RE CONCERNED THAT IT WASN'T
24  THE RIGHT ONE AND SO YOU'D LIKE TO POTENTIALLY FIX YOUR
25  PROBLEM. BUT I WILL CONSIDER -- AND THERE WILL BE A -- A

18

1  FORMAL ORDER AFTER -- ISSUED THIS WEEK WITH RESPECT TO ALL THE
2  ISSUES THAT WE'RE GOING TO DISCUSS. I THINK IT'S A PROBLEM ON
3  MANY LEVELS. AND I UNDERSTAND THAT THERE ARE TIMES WHEN WE
4  WILL AUTHORIZE THE LAST-MINUTE DEPOSITION OF SOMEONE, BUT I AM
5  CONCERNED ABOUT HOW THE -- THE DELAY BY THE PLAINTIFFS.
6        YOU TOOK AN APPROACH. YOU HELD STEADFAST TO THAT APPROACH
7  FOR YEARS. AND NOW AT THE LAST MINUTE, YOU'RE CHANGING IT.
8  SO HE'S EITHER NOT MEANINGFUL, IN WHICH CASE THERE'S NO POINT
9  IN LETTING HIM IN; OR HE'S ACTUALLY PRETTY SIGNIFICANT, WHICH
10  IS WHY YOU'RE ASKING FOR HIS TESTIMONY TO BE ALLOWED AND WHICH
11  IS, IN FACT, THE BASIS FOR THE PREJUDICE.
12        YOU CAN'T HAVE IT BOTH WAYS, MS. SWEENEY.
13        MS. SWEENEY: YOUR HONOR, WE THINK THAT HE CAN ADD
14  MEANINGFUL TESTIMONY TO THE TRIAL. AND, IN FACT, WE RELIED
15  AND HAVE RELIED FOR YEARS UPON JUDGE WARE'S EXPLICIT AND
16  REPEATEDLY RULINGS AS TO THE CONTOURS OF THE CLASS AND THE
17  AUTHORITIES OF THE CLASS REPRESENTATIVES, AND I THINK WE WERE
18  ENTITLED TO DO THAT.
19        THE COURT: I UNDERSTAND THAT PERSPECTIVE. I DON'T
20  WANT TO TRY THIS CASE TWICE, THOUGH. AND THAT'S MY CONCERN.
21  BECAUSE IT'S NOT CLEAR TO ME THAT THAT WAS THE RIGHT DECISION.
22        SO, MR. ISAACSON, MY CONCERN IS THAT I GET TO THE END OF
23  THIS CASE, YOU'RE GOING TO MAKE THE MOTION.
24        MR. ISAACSON: YES, WE ARE, YOUR HONOR.
25        THE COURT: AND THEN I'M GOING TO SAY, WELL, NO, THEY

19

1  DON'T HAVE ANYTHING. AND WHATEVER WAY I RULE, THE -- THE
2  LOSING SIDE IS GOING TO TAKE IT TO THE NINTH CIRCUIT. SO IT
3  PUTS ME IN A PRETTY DIFFICULT POSITION, AS WELL AS THE
4  PARTIES. AND I DON'T THINK APPLE WANTS TO RETRY THIS CASE
5  EITHER.
6        MR. ISAACSON: NO, YOUR HONOR. THIS WILL BE A
7  CONSIDERABLE EXPENSE, AND THAT'S PART OF THE PREJUDICE HERE.
8  I MEAN, IF --
9        THE COURT: WELL, IS THERE ANYTHING SHORT OF ENTIRELY
10  EXCLUDING IT THAT WILL DEAL WITH THE PREJUDICE, WHICH I
11  UNDERSTAND? I UNDERSTAND YOUR PERSPECTIVE. BUT, FRANKLY, I'M
12  TELLING YOU, I DON'T WANT TO TRY THIS CASE TWICE.
13        MR. ISAACSON: WELL, FOR -- PURELY FROM THE POINT OF
14  VIEW OF EFFICIENCY, THE COURT IS GOING TO HAVE TO MAKE A
15  DECISION ABOUT WHETHER THE INDIVIDUAL PLAINTIFFS CAN REPRESENT
16  THE RESELLERS. THE -- DR. NOLL'S POINTS ON THIS ARE ALREADY
17  KNOWN AND DEFINED. THEY'VE BEEN PRESENTED TO THE COURT
18  PREVIOUSLY, INCLUDING THE DIFFERENT OVERCHARGE NUMBERS AND THE
19  DIFFERENT DISCOUNTS AND THE DIFFERENT SITUATIONS.
20        COUNSEL JUST SAID THE RESELLER WILL PROVIDE A DIFFERENT
21  PERSPECTIVE.
22        THE COURT: I HEARD HER.
23        MR. ISAACSON: YEAH. SO IN TERMS -- IF WE ARE GOING
24  TO GO UP ON APPEAL ON THE ISSUE OF WHETHER THE RESELLERS
25  CAN -- I'M SORRY -- WHETHER INDIVIDUALS CAN REPRESENT THE

20

1  RESELLERS, STREAMLINING THIS TRIAL WOULD INCLUDE KNOCKING THE
2  RESELLERS OUT OF THE CLASS NOW, BECAUSE IF THE COURT'S GOING
3  TO DO THAT AT THE END OF THE TRIAL, WE MIGHT AS WELL REMOVE
4  THAT ISSUE NOW.
5        THE COURT: WELL, ON THE OTHER HAND, I HAVEN'T HEARD
6  ANY EVIDENCE, AND THE PROPOSED JURY VERDICT FORMS DO SEPARATE
7  OUT DAMAGES RELATIVE TO THE RESELLER CLASS VERSUS DAMAGES
8  RELATIVE TO THE CONSUMER CLASS.
9        MR. ISAACSON: YES.
10        THE COURT: SO THE OTHER APPROACH THAT I HAVE BEEN
11  THINKING ABOUT IS LET IT COME IN AS IT WILL. HE MADE HIS
12  RULINGS. YOU RELIED ON THOSE RULINGS. AND AFTER I HEAR ALL
13  THE EVIDENCE, I'LL MAKE A DECISION. AND IF I HAVE TO MODIFY A
14  JUDGMENT BASED UPON THAT LEGAL ANALYSIS, THEN THAT'S WHAT I'LL
15  DO.
16        BUT I HAVE TO TELL YOU, I DON'T THINK IT'S FAIR THAT AT
17  THE LAST MINUTE YOU CHANGE THE FACTUAL BASIS UPON WHICH YOU'RE
18  PROCEEDING TO SHORE UP A POTENTIAL WEAKNESS IN YOUR CASE. I
19  DON'T THINK IT'S FAIR.
20        SO YOU KNOW WHERE I PRELIMINARY -- PRELIMINARILY STAND ON
21  THESE ISSUES. IF YOU HAVE ANYTHING ELSE TO SAY, NOW IS THE
22  TIME TO SAY IT, AND I'LL THINK ABOUT IT SOME MORE AFTER WE'RE
23  DONE.
24        MS. SWEENEY: AND, YOUR HONOR, WE'RE GOING TO
25  WITHDRAW THE OTHER WITNESS THAT APPLE HAS OBJECTED TO.

185

1    THE COURT: NO WAY. I'M NOT DOING SEVEN IN THIS
2  CASE. I HAVE A THANKSGIVING BREAK IN THERE.
3    MR. COUGHLIN: OKAY.
4    THE COURT: YOU KNOW, I'D CONSIDER EIGHT. I'LL CHEW
5  ON THAT, BUT CERTAINLY NOT SEVEN.
6    MR. COUGHLIN: UNDERSTAND.
7    THE COURT: THAT GIVES ME NO FLEXIBILITY WHATSOEVER.
8    MR. COUGHLIN: JUST WANTED TO ASK.
9    THE COURT: IN ANY EVENT, I'M USUALLY PRETTY CLOSE
10 AFTER WE DO -- I DO THE VOIR DIRE, YOU DO YOUR OWN VOIR DIRE.
11 I'LL RELEASE THE JURORS, THE EXPIRE PANEL. THEY'LL LEAVE THE
12 COURTROOM. I'LL HEAR YOUR CHALLENGES FOR CAUSE. AND THEN AT
13 THAT POINT, YOU WILL START STRIKING.
14    AND YOU STRIKE FROM THE ENTIRE PANEL THAT HAS BEEN
15 QUESTIONED. YOU EACH GET FOUR, SO ONCE YOU USE THOSE OR IF
16 YOU WANT TO SAVE, YOU CAN. BUT IF I HAVE THE TOP NINE, OR THE
17 TOP EIGHT, THAT'S MY JURY.
18    IF I'VE STRUCK SO MANY FOR CAUSE THAT I HAVE -- WE NEED TO
19 VOIR DIRE TWO OR THREE MORE, THEN I START TAKING THEM OFF THE
20 RANDOM ONE AT A TIME. YOU DON'T KNOW WHO'S COMING UP, AND I
21 DON'T TELL YOU IN ADVANCE SO YOU TAKE THAT RISK JUST LIKE YOU
22 WOULD OTHERWISE.
23    MR. COUGHLIN: SO --
24    THE COURT: AND I DO THEM ONE AT A TIME.
25    MR. COUGHLIN: SO IF WE'VE USED UP OUR -- THEN WE'RE

186

1  DONE AND --
2    THE COURT: IF YOU'VE USED THEM ALL UP, YES, THEN YOU
3  ARE DONE UNLESS THERE'S A CHALLENGE FOR CAUSE.
4    MR. COUGHLIN: GOT IT.
5    THE COURT: IF YOU HAVEN'T -- AND THAT'S WHAT
6  HAPPENED IN MY LAST TRIAL. ONE SIDE HAD ONE, THE OTHER SIDE
7  HAD NONE, AND WE DEALT WITH THEM ONE AT A TIME AS THEY CAME
8  UP.
9    BUT I HAVE A PRETTY GOOD SENSE ABOUT WHETHER SOMEONE'S
10 GOING TO BE CHALLENGED, AND SO IF I'M HAPPY WITH THAT ONE,
11 THEN YOU GET TO MEET AT SIDEBAR AND TELL ME WHETHER OR NOT
12 YOU'RE GOING TO USE THAT LAST ONE.
13    IF I THINK THERE'S SOME RISKS, THEN I'LL CALL SOMEONE ELSE
14 UP, BUT IT'S KIND OF IN MY DISCRETION, SO -- ALL RIGHT?
15 EVERYBODY UNDERSTAND THAT PROCESS?
16    MR. ISAACSON: JUST ONE QUESTION, THE -- THE LISTS,
17 WHEN DO WE GET THOSE?
18    THE COURT: YOU WILL GET THOSE TWO LISTS ON -- WELL,
19 YOU'LL GET THE RANDOM LIST ON MONDAY, WHICH IS THE DATE OF
20 JURY SELECTION. I THINK THAT I CAN HAVE FOR YOU THE
21 QUESTIONNAIRES -- IF WE'RE NOT MEETING ON THE 10TH, I'LL HAVE
22 A PACKET FOR YOU AT THE CLERK'S OFFICE WITH A COPY OF
23 QUESTIONNAIRES OF EVERYONE IN THE POOL. THAT WAY YOU CAN
24 REVIEW THEM IN ADVANCE OF MONDAY.
25    ON MONDAY, THEY WILL COME IN AND THEY WILL FILL OUT THEN

187

1  THE SECOND QUESTIONNAIRE, A COPY OF WHICH I GAVE YOU TODAY.
2  THAT SET OF QUESTIONNAIRES, AS SOON AS THEY FILL THEM OUT,
3  WE'LL MAKE COPIES. WE'LL MAKE TWO COPIES FOR EACH SIDE.
4  YOU'LL HAVE TO SEND SOMEONE OUT TO RUN ACROSS THE STREET AND
5  MAKE MORE COPIES IF YOU WANT -- YOU KNOW, YOU CAN KEEP ONE,
6  SOMEONE ELSE CAN RUN OUT AND COPY THE OTHER ONE. AND THAT
7  INFORMATION YOU'LL HAVE THAT MORNING, AND THAT'S -- IT'S JUST
8  THE WAY WE DO IT.
9    I DID HAVE ONE -- WE'VE PRESCREENED THESE FOLKS, SO WE'RE
10 HOPING NOT TO HAVE ISSUES. I DID HAVE ONE INDIVIDUAL WHO
11 WORKED FOR APPLE, AND I TOLD THEM TO TAKE HIM OUT OF THE POOL,
12 PUT HIM ON ANOTHER PANEL. SO OTHER THAN THAT, I HAVEN'T HEARD
13 ANY REAL ISSUES OR PROBLEMS. OKAY?
14    OTHER QUESTIONS ABOUT THAT?
15    MR. COUGHLIN: NO, I THINK THAT COVERS IT.
16    THE COURT: OKAY. FROM YOUR SIDE --
17    MR. ISAACSON: YES, YOUR HONOR.
18    THE COURT: -- MR. ISAACSON?
19    MR. ISAACSON: OH --
20    THE COURT: DURING ONE OF THE BREAKS, I PULLED SOME
21 INFORMATION ABOUT RULE 23, AND I -- I HAVE TO TELL YOU I'M
22 VERY CONCERNED RIGHT NOW ABOUT THIS ISSUE OF THE PORTION OF
23 THE CLASS THAT IS DEALT WITH WITH RESELLERS AND THE COURT'S
24 ROLE IN PROTECTING THOSE INDIVIDUALS AND WHETHER OR NOT I
25 SHOULD BE DOING SOMETHING RIGHT NOW TO DEAL WITH IT.

188

1    I UNDERSTAND THAT THE PLAINTIFFS ARE ASKING FOR THIS
2  UNNAMED CLASS MEMBER TO TESTIFY. THERE HASN'T BEEN A REQUEST
3  TO --
4      (SIMULTANEOUS COLLOQUY.)
5    THE COURT: -- IDENTIFY THIS PERSON AS A CLASS
6  REPRESENTATIVE.
7    MR. COUGHLIN: WE COULD, YOUR HONOR. IN FACT, IN
8  LIGHT OF YOUR HONOR'S CONCERNS, I THINK WE SHOULD MOVE TO
9  INTERVENE.
10    THE COURT: AND I THINK THE ISSUE HAS TO BE
11 ADDRESSED. I REALLY DO, BECAUSE -- AND I HAVE TO SAY, I --
12 YOU KNOW, I HAVE SOME AFFIRMATIVE OBLIGATIONS MYSELF HERE. I
13 UNDERSTAND THAT THERE ARE POTENTIAL ISSUES OF PREJUDICE.
14    I'M -- YOU KNOW, I'M WONDERING IF I NEED TO DO SOMETHING
15 ABOUT THAT INCLUDING, FRANKLY -- DESPITE ALL THE WORK THAT'S
16 BEEN DONE WHETHER I HAVE TO, YOU KNOW, KICK THIS A COUPLE
17 WEEKS TO MAKE SURE YOU HAVE YOUR OPPORTUNITY TO DEPOSE OR TO
18 DO WHAT YOU'RE GOING TO DO.
19    BUT I -- I'M -- IT'S A QUANDARY. I HAVEN'T FULLY
20 RESEARCHED OR ANALYZED THE COURT'S OWN AFFIRMATIVE OBLIGATIONS
21 ON THIS FRONT. THE -- THE RIGHTS AND -- OF THE CLASS, THE
22 IMPLICATIONS OF WHAT -- OF A RULING OR A JUDGMENT IN THIS CASE
23 ON EITHER SIDE, EITHER THE -- FOR THE PLAINTIFFS OR THE
24 DEFENSE. AND I -- I DON'T THINK IT HAS BEEN FULLY FLUSHED
25 OUT, AND I THINK IT NEEDS TO BE.

189

1    I JUST -- I DO HAVE SOME CONCERNS.  AND -- AND I TAKE
2  IT -- DID NO -- I MEAN, TELL ME MORE ABOUT THIS -- ABOUT THIS
3  RESELLER.  I MEAN, IS HE JUST A SMALL-TIME OPERATOR?  WHAT IS
4  HE?  AND, YOU KNOW, DID YOU GO AND -- AND -- DID YOU TALK TO
5  THE TRUSTEE FOR CIRCUIT CITY?  DID YOU -- I MEAN, DID YOU DO
6  ANYTHING IN TERMS OF -- OR WHAT IS IT THAT YOU DID?  AS CLASS
7  COUNSEL, WHAT DID YOU DO --
8         MR. COUGHLIN:  YOUR HONOR?
9         THE COURT:  -- TO TRY TO FIND A PLAINTIFF TO -- TO
10  REPRESENT THESE RESELLERS?
11         MR. COUGHLIN:  YOUR HONOR, WE REALLY BELIEVED THAT --
12  THAT IT WAS SUFFICIENT AND JUDGE WARE FOUND -- AND IT CAME UP
13  TWICE -- THAT THE CONSUMERS WERE GOOD ENOUGH.
14     OF COURSE AT THE TIME THAT ALL THIS WAS HAPPENING, IT WAS
15  TOUGH -- CERTAINLY IT'S GOING TO BE TOUGH TO GET BEST BUY WHO
16  HAS ALL THE APPLE PRODUCTS TO -- TO COME IN HERE.  AND SO IT
17  WAS MORE LIKELY THAN NOT GOING TO BE A SMALLER RETAILER LIKE
18  THIS GENTLEMAN WAS WHO HAD A COUPLE SHOPS.  AND, FRANKLY, WE
19  THOUGHT WE WERE FINE UNTIL -- I THINK IT WAS EVEN -- MIGHT
20  HAVE BEEN A COMMENT BY YOUR HONOR EIGHT -- TWO HEARINGS AGO.
21     AND SO WE, YOU KNOW, STARTED MORE DILIGENTLY SEARCHING,
22  AND WE CAME UPON THIS PERSON WHO LIVES UP IN TAHOE, AND HE
23  AGREED TO COME DOWN AND MEET WITH US ABOUT A WEEK AND A HALF
24  AGO FOR THE FIRST TIME.  WE MET WITH HIM.  HE OWNED A SMALL
25  SHOP.  HE IS IN THE DOCUMENTS AND ALWAYS HAS BEEN IN THE

---

191

1         THE COURT:  WELL, CIRCUIT CITY DOESN'T HAVE A
2  RELATIONSHIP WITH APPLE ANYMORE.  HAVE YOU -- HAVE YOU REACHED
3  OUT TO THE TRUSTEE?  I MEAN, THERE -- THE REASON I ASK IS
4  BECAUSE THEY'RE -- THEY'RE AFFILIATED WITH THE LITHIUM ION
5  BATTERIES CASE THAT I'M OVERSEEING.
6         MS. SWEENEY:  I HAVE, YOUR HONOR.  AND, YOU KNOW,
7  THEY MAY STEP IN.  THEY MAY -- THEY PERHAPS WOULD BE WILLING
8  TO STEP IN.  THEY HAVE A LOT OF LITIGATION GOING ON AT THE
9  MOMENT.  I THINK THAT THEY'RE SOMEWHAT RELUCTANT TO GET
10  INVOLVED IN MORE LITIGATION, BUT WE CAN APPROACH THEM AGAIN.
11         MR. ISAACSON:  THEY'RE INVOLVED IN A HOST OF
12  ANTITRUST CASES, LCD'S --
13         THE COURT:  WELL, I KNOW.  AND THAT'S -- I JUST HAVE
14  TO -- I MEAN, LOOK, I -- I REALLY DON'T WANT TO DELAY THIS,
15  BUT I ALSO THINK THAT IF IT'S GOING TO BE DONE, IT NEEDS TO BE
16  DONE PROPERLY.
17         MR. ISAACSON:  I MEAN --
18         THE COURT:  AND -- AND --
19         MR. ISAACSON:  A FULL RULE 23 PROCEEDING TAKES SOME
20  TIME.  IT'S MORE THAN A DEPOSITION.  WE ARE TALKING ABOUT
21  BRIEFING OF CLASS CERTIFICATION FOR A CLASS THAT'S ASSERTING
22  $150 MILLION IN CLAIMS.  AND YOU'RE GOING TO NEED -- BEYOND
23  THE DEPOSITION, WE DON'T KNOW WHAT DOCUMENTS THIS PERSON HAS.
24  AND IT'S NOT A MATTER OF JUST ROLLING INTO A -- THIS IS NOT
25  THE SAME -- ADVANCING THIS PERSON AS A CLASS REPRESENTATIVE AS

---

190

1  DOCUMENTS THAT APPLE PRODUCED TO US ON RESELLERS.  THAT IS
2  TRUE.  BUT HE AGREED TO TALK TO US AND DID AND HAS AGREED TO
3  TESTIFY, AND HE WOULD --
4     I THINK WITH YOUR HONOR RAISING THIS ISSUE, WE CAN
5  INTERVENE HIM.  I THINK THEY HAVE ENOUGH TIME TO DEPOSE HIM
6  AND WE CAN KEEP THE SCHEDULE, BUT I WOULD OF COURSE LEAVE THAT
7  UP TO THEM.
8         MR. ISAACSON:  HOW MANY IPODS DID DELAWARE COMPUTER
9  BUY DURING THE CLASS PERIOD?
10         MR. COUGHLIN:  WELL, IT'S IN THE -- IT'S IN THE
11  RECORD.  I THINK IT WAS -- IT WAS PROBABLY HUNDREDS.
12         (PAUSE IN THE PROCEEDINGS.)
13         MR. ISAACSON:  I JUST NEED TO UNDERSTAND A NOTE I'VE
14  BEEN GIVEN, IF YOU'LL GIVE ME A MOMENT.
15         (PAUSE IN THE PROCEEDINGS.)
16         MR. COUGHLIN:  IT WAS $60,000 WORTH APPROXIMATELY AS
17  FAR AS A DOLLAR FIGURE.  DOES THAT TRANSLATE -- I'M NOT
18  EXACTLY SURE HOW THAT TRANSLATES, 'CAUSE THEY'RE 299, AND
19  THEY'RE DIFFERENT PRICES.
20         MR. ISAACSON:  THAT'S ABOUT WHAT WE HAVE.  WE WERE
21  ACTUALLY GOING TO GIVE YOU 70,000, BUT I DON'T THINK THAT
22  THAT'S MATERIALLY DIFFERENT.  I THINK YOU'RE GOING TO RUN INTO
23  THE SAME ISSUE AS TO -- WHETHER THIS VERY SMALL PURCHASER
24  REPRESENTS THE CIRCUIT CITIES AND THE BEST BUYS AND WHATNOT.
25         MR. COUGHLIN:  WELL, WE CERTAINLY THINK HE DOES THAT.

---

192

1  OPPOSED TO A WITNESS IS ANOTHER SIGNIFICANT STEP.
2     THERE WAS A LOT OF PREJUDICE WITH A WITNESS -- WITH A
3  SURPRISE WITNESS.  NOW WE HAVE AN ENTIRELY NEW CLASS
4  REPRESENTATIVE INTENDED TO PROTECT AN ISSUE THEY DID NOT
5  PROTECT BEFORE.
6         THE COURT:  RIGHT, BUT THE EVIDENCE WON'T BE THE
7  SAME -- WON'T BE ANY DIFFERENT.
8         MR. COUGHLIN:  NO DIFFERENT.
9         MS. SWEENEY:  THAT'S RIGHT, YOUR HONOR.
10         MR. ISAACSON:  I DON'T KNOW THAT.
11         THE COURT:  WELL --
12         MR. ISAACSON:  I'VE NEVER EVEN MET THIS PERSON OR --
13         THE COURT:  WELL, THE EVIDENCE IN TERMS OF WHAT IS
14  BEING PROFFERED FOR DAMAGES CAN'T CHANGE.
15         MR. ISAACSON:  OH, THAT -- THAT EVIDENCE.  BUT THE
16  EVIDENCE ABOUT -- THE RULE 23 PROCEEDING, THOUGH, IS A
17  SEPARATE PROCEEDING.  THAT'S NOT SOMETHING THAT GETS DONE IN A
18  WEEK OR TWO.
19         THE COURT:  WELL, I -- WELL, THAT'S WHY I'M RAISING
20  IT, MR. --
21         MR. ISAACSON:  AND I APPRECIATE YOU RAISING IT,
22  AND -- BUT I'M -- AND I'M TRYING TO FORTHRIGHTLY TELL YOU THAT
23  THIS IS AN EXTENSIVE PROCEEDING.  I THINK IT'S WORTH HAVING
24  BECAUSE THERE'S NO POINT IN GOING THROUGH A TRIAL ON THIS
25  AMOUNT OF MONEY WHEN THERE'S NOT AN ADEQUATE CLASS

193

1   REPRESENTATIVE.
2        MR. COUGHLIN:  YOUR HONOR, WE THINK WE HAD A RULE 23
3   PROCEEDING, AND ALLS THAT WE WOULD BE DOING NOW IS ADDING A
4   REPRESENTATIVE SO THAT WHAT THE COURT WAS CONCERNED ABOUT WAS
5   STANDING, REALLY, OF THE CONSUMERS TO REPRESENT THE RETAILERS.
6   AND WE THINK OUR CONSUMERS DID.  AND IT DOESN'T CHANGE ANY OF
7   THE TRIAL EXCEPT AS TO THAT ONE WITNESS.  AND IT'S VERY
8   LIMITED.
9        I THINK THAT THE WITNESS WOULD BE ON THE STAND NO MORE
10  THAN 10 OR 15 MINUTES TOPS.
11       MR. ISAACSON:  WELL, I MEAN, IT DOES -- LET'S BE
12  CLEAR.  IF YOU CUT OUT THE RESELLER CLASS, DR. NOLL'S
13  TESTIMONY AND DAMAGE MODEL IS -- THERE'S A WHOLE SEPARATE SET
14  OF ASSUMPTIONS AND FACTORS HE DOES FOR THE RESELLERS.  HE
15  WON'T DO THAT WITHOUT THE RESELLERS THERE.
16       IT IS A DIFFERENT TRIAL AND A DIFFERENT EVIDENTIARY
17  PRESENTATION.  HE HAS DIFFERENT --
18       THE COURT:  NO.
19       MR. ISAACSON:  -- NUMBERS.
20       THE COURT:  I UNDERSTAND THAT HE HAS DIFFERENT
21  NUMBERS.  WHAT -- BUT HE CAN'T CHANGE HIS REPORT, SO WHAT I
22  MEANT IN TERMS OF THE EVIDENCE IS ALL THE DOCUMENTS ARE THE
23  SAME.  THE EXPERT REPORTS ARE THE SAME.  AREN'T THEY?  I
24  MEAN --
25       MR. ISAACSON:  THE DISCOVERY RECORD AND THE ACTUAL

194

1   REPORTS ARE FINISHED AND FIXED, YES.
2        THE COURT:  YES.  ALL OF THAT -- ALL OF THAT'S THE
3   SAME.
4        MR. ISAACSON:  BUT THAT DOESN'T MEAN WE DON'T
5   STREAMLINE THIS TRIAL -- I MEAN --
6        THE COURT:  WELL, IF -- IF I DECERTIFIED A RESELLER
7   CLASS, THEN OBVIOUSLY YES.  I MEAN, IT CUTS IT IN HALF, RIGHT?
8        MR. ISAACSON:  UM-HMM.
9        MS. SWEENEY:  IT WOULDN'T CUT IT IN HALF BY ANY
10  MEANS, YOUR HONOR.
11       THE COURT:  WELL, YOU'RE ACTUALLY RIGHT.  IT WOULDN'T
12  CUT IT SO MUCH IN HALF.  IT WOULD JUST CUT OUT THE DAMAGES
13  PORTION OF -- CUT OUT A PART OF HIS NUMBERS.
14       MR. COUGHLIN:  THAT'S CORRECT.
15       THE COURT:  RIGHT?  'CAUSE HE'S -- BECAUSE MY
16  UNDERSTANDING IS THAT ALL THE TESTIMONY IS THE SAME.  IT'S
17  JUST THAT HE WOULD ONLY BE TESTIFYING AS TO THE CONSUMER
18  PORTION VERSUS THE RESELLER.
19       MR. ISAACSON:  RIGHT.  AND HIS RESELLER TESTIMONY
20  INVOLVES DIFFERENT ASSUMPTIONS AND CALCULATIONS BECAUSE OF THE
21  RESELLERS' DIFFERENCES IN PURCHASING FROM THE -- FROM THE
22  CONSUMERS.
23       MS. SWEENEY:  I JUST WOULD TAKE ISSUES WITH THAT.
24  IT'S DIFFERENT NUMBERS.  IT'S DIFFERENT DATA POINTS, BUT IT'S
25  THE SAME METHODOLOGY, HAS ALWAYS BEEN THE SAME METHODOLOGY FOR

195

1   BOTH SEGMENTS OF THE CLASS.
2             (OFF-THE-RECORD DISCUSSION.)
3        MR. ISAACSON:  YEAH, I MEAN, HE'S GOT TWO DIFFERENT
4   MODELS ON THESE -- ON THESE TWO GROUPS.
5        MR. COUGHLIN:  YOUR HONOR, WE'VE GOT --
6        THE COURT:  WELL, PERHAPS -- GO AHEAD.
7        MR. COUGHLIN:  YOUR HONOR, WE'VE GOTTEN HERE TODAY
8   WITH -- WE'VE ALREADY NOTIFIED BOTH SIDES OF THIS CLASS, BOTH
9   THE RESELLERS, YOU KNOW, AND THE CONSUMERS, SO THEY'VE BEEN
10  NOTIFIED.
11       AND AT THE TIME THAT THEY WERE NOTIFIED, THE
12  REPRESENTATIVES, THE CONSUMERS WERE FOUND TO HAVE BEEN
13  ADEQUATE FOR BOTH THE RESELLERS AND FOR THE CONSUMERS.
14       THE COURT:  I UNDERSTAND.
15       MR. COUGHLIN:  SO WE -- WE ALSO FEEL AN OBLIGATION
16  TO, YOU KNOW, IF -- IF WHAT HE'S SAYING IS HE NEEDS A LITTLE
17  MORE TIME, THAT'S ONE THING.  IF WHAT HE'S SAYING THAT WE'RE
18  SOMEHOW GOING TO DROP HALF THIS CLASS, THAT'S A WHOLE
19  DIFFERENT THING, AND WE DON'T AGREE WITH THAT.
20       MR. ISAACSON:  AND LET'S BE CLEAR ABOUT THE NOTICE.
21  THE NOTICE DID NOT GIVE THE RESELLERS A RIGHT TO COME IN AND
22  OBJECT TO BEING PART OF THIS CLASS.  WAS NOT A FAIRNESS
23  HEARING.  IT WAS JUST A NOTICE OF THIS IS THE WAY IT IS.
24       MR. COUGHLIN:  THAT THEY'RE REPRESENTED, AND THAT
25  THIS CASE --

196

1        MR. ISAACSON:  YES.
2        MR. COUGHLIN:  -- IS GOING FORWARD.
3        MR. ISAACSON:  AND WITH NO NOTIFICATION OF YOU CAN
4   COME IN AND SAY, WE DON'T LIKE THIS.
5        MS. SWEENEY:  BUT THEY HAD AN OPPORTUNITY TO OPT OUT.
6        MR. ISAACSON:  -- OPT OUT.  IT'S NOT THE SAME THING
7   AS THE -- AS THE RIGHT TO BE REPRESENTED APPROPRIATELY.
8        MR. COUGHLIN:  WELL, YES, IF THEY DIDN'T FEEL THEY
9   WERE BEING REPRESENTED, THESE ARE SOPHISTICATED ENTITIES AND
10  COULD HAVE OPTED OUT, AND THEY DIDN'T.
11       MR. ISAACSON:  IT'S NOT -- YES, ANYBODY CAN OPT OUT.
12  IT'S NOT CORRECT UNDER RULE 23 THAT YOU CAN HAVE AN
13  INAPPROPRIATE REPRESENTATIVE BECAUSE PEOPLE COULD LEAVE THE
14  CLASS.
15       MR. COUGHLIN:  I'M JUST NOT SURE WHAT HE'S ARGUING
16  FOR.  IS HE ARGUING FOR A CONTINUANCE?  OR IS HE ARGUING THAT
17  WE CUT THIS CLASS IN HALF AND MOVE FORWARD WITH THE TRIALS AS
18  TO THE CONSUMERS?
19       MR. ISAACSON:  I WOULD AGREE, WE DON'T NEED TO
20  POSTPONE THE TRIAL IF WE CUT THE CLASS NOW.  BUT --
21       THE COURT:  WELL, I'M NOT -- LOOK, THERE ARE A COUPLE
22  OF THINGS.  THE REALITY THAT THE PLAINTIFFS WOULD CUT THE
23  CLASS IS NOT VERY REALISTIC.  EVEN IF I -- EVEN IF I
24  BIFURCATED IT, I'M NOT GOING TO DO THAT 'CAUSE I'M NOT GOING
25  TO TRY THIS TWICE.  AND NO ONE IN THIS COURTROOM SHOULD TRY

197

1  THIS TWICE.
2      ISSUES OF CLASS REPRESENTATIVES ARE -- ARE ALWAYS BEFORE
3  THE COURT. AND, IN FACT, THE NINTH CIRCUIT -- OR, YOU KNOW,
4  SOME CIRCUITS HAVE SENT IT BACK AFTER TRIAL TO BE FIXED, SO AS
5  I'VE SAID, I HAVE CONCERNS. YOU'VE RAISED CONCERNS.
6      WHAT I'M TRYING TO DO IS -- IS FIGURE OUT THE BEST -- THE
7  BEST WAY TO DEAL WITH IT NOT HAVING ACTUALLY HEARD THE
8  EVIDENCE. I UNDERSTAND, AS I SAID, I'VE -- YOU KNOW, THIS
9  ISSUE JUST CAME UP FOR ME, SO I HAVE NOT GONE BACK TO REREAD
10  OR TO READ WHAT THE MOTION WAS THAT WAS PUT IN FRONT OF JUDGE
11  WARE, WHAT -- YOU KNOW, ALL OF THE EVIDENCE THAT WAS PUT IN
12  FRONT OF JUDGE WARE. I DIDN'T READ ANY OF THAT YET BECAUSE
13  THE ISSUE JUST CAME UP FOR ME. SO --
14      MR. ISAACSON: AND THERE'S ONE POINT ON THAT, IF I
15  MAY, YOUR HONOR, JUST IN TERMS OF THE RECORD?
16      AM I CORRECT, ROGER NOLL'S REPORTS WAS NOT -- ON THE 7.0
17  WAS NOT BEFORE JUDGE WARE AT CLASS CERTIFICATION?
18      MR. KIERNAN: HIS FINAL ONE WAS.
19      MR. ISAACSON: OH, OKAY. NEVER MIND.
20      THE COURT: SO WHERE DO WE GO FROM HERE? PERHAPS A
21  MOTION TO ADD A CLASS MEMBER? PERHAPS YOU CHEW ON IT. WE
22  COME BACK AND TALK ABOUT IT. I -- AFTER I HAVE AN
23  OPPORTUNITY TO GO BACK TO LOOK AT THE -- THE EVIDENCE THAT WAS
24  SUBMITTED TO RESEARCH THE LAW?
25      MR. COUGHLIN: YOUR HONOR, IT -- I SEE THAT YOU HAVE

198

1  A CONCERN. AND IT'S PART OF THE REASON THAT WE REACHED OUT TO
2  FIND A RESELLER. AND -- WE -- DIDN'T THINK THAT IT CHANGED
3  ANY OF THE EVIDENCE AT TRIAL.
4      COUNSEL'S SAYING THEY WANT TO BRING ANOTHER RULE 23
5  MOTION, SO THERE WOULD -- I GUESS TO DECERTIFY THAT PART OF
6  THE CLASS. I DON'T THINK THE OTHER HALF WOULD BE UP IF -- IF
7  THAT'S WHAT THE COURT IS THINKING.
8      PART OF MY CONCERN IS THAT WE'RE VERY CLOSE TO TRIAL AND
9  DOING A LOT OF THINGS TO GET READY FOR TRIAL. AND, FRANKLY,
10  WE DON'T WANT TO LOSE OR LEAVE BEHIND HALF THIS CLASS. WE'RE
11  NOT WILLING TO DO THAT. SO IF HE THINKS HE NEEDS MORE TIME
12  AND THAT'S WHAT HE'S ASKING FOR, THAT'S FINE.
13      BUT WE -- BECAUSE YOUR HONOR'S CONCERNS, TOO, WE'RE GOING
14  TO -- WE ARE -- WOULD MOVE TO INTERVENE THIS WITNESS. I MEAN,
15  HE IS A CLASS MEMBER IN THE CLASS THAT CERTIFY HE GOT NOTICE.
16      MR. ISAACSON: HE GOT NOTICE? WE'VE HAD NO NOTICE OF
17  A NEW CLASS REPRESENTATIVE. WE DIDN'T EVEN HAVE NOTICE OF A
18  WITNESS UNTIL SHORTLY BEFORE.
19      THE COURT: WELL, I HAVE AN ORAL MOTION.
20      MR. ISAACSON: I'M GOING TO NEED TO TALK TO MY CLIENT
21  ABOUT THIS.
22      THE COURT: ALL RIGHT. ARE YOU LEAVING TOWN,
23  MR. ISAACSON?
24      MR. ISAACSON: NOT AS SOON AS I THOUGHT.
25      THE COURT: WELL, YOU WANT TO MEET ON FRIDAY ON THIS

199

1  ISSUE?
2      MR. COUGHLIN: THAT'D BE GREAT, YOUR HONOR.
3      MS. SWEENEY: THAT'S FINE, YOUR HONOR.
4      THE COURT: I HAVE A CRIMINAL CALENDAR AT 9:00.
5      THE CLERK: AND AT 1:00 -- ONE MATTER AT 1:00.
6      THE COURT: YEAH, WELL, THAT'S JUST A STATUS. THAT
7  WON'T TAKE LONG.
8      IF YOU THINK IT WILL TAKE LESS THAN AN HOUR, WE CAN
9  MEET --
10      MR. COUGHLIN: IT SHOULD ONLY TAKE I WOULD SAY HALF
11  AN HOUR TOPS. WE'RE EITHER GOING TO COME TO A DECISION TO
12  MOVE THE HEARING BACK 'CAUSE WE'RE NOT GOING TO AGREE TO DROP
13  HALF THE CLASS. SO OUR POSITION IS ALREADY PRETTY CANDID.
14  EITHER WE'LL WORK WITH MR. ISAACSON TO -- ON A SCHEDULE TO
15  MOVE IT BACK A MONTH OR TWO OR WHATEVER HE THINKS HE NEEDS TO
16  TAKE THE DEPOSITION AND FILE WHATEVER MOTION HE WANTS TO FILE.
17  OR WE'LL JUST GO FORWARD AND HE CAN TAKE THE DEPOSITION AND WE
18  CAN GO FORWARD WITH THE TRIAL, SO --
19      MR. ISAACSON: AND I DON'T KNOW THAT -- WHAT POSITION
20  WE WILL TAKE ON THIS, BUT IF WE GO DOWN THE ROAD, CAN WE ASK
21  QUESTIONS ABOUT WHAT THE COURT'S CALENDAR IS LIKE? WE
22  WOULDN'T WANT TO MAKE A PROPOSAL THAT WAS UNREALISTIC.
23      THE COURT: YEAH. WELL, I HAD PLANNED ON BEING IN
24  TRIAL.
25      I HAVE TO TELL YOU, I HAVE A LOT OF TRIALS SCHEDULED.

200

1  YOU KNOW --
2      MR. COUGHLIN: AND THIS IS AN OLD CASE.
3      THE COURT: -- IDEALLY -- HMM?
4      MR. COUGHLIN: AND THIS IS AN OLD CASE.
5      THE COURT: YES. I MEAN, I'D LIKE TO GET IT DONE.
6  AND I MEAN, YOU'RE -- AS WE ALL -- AS YOU KNOW AS LITIGATORS,
7  AS I KNOW AS A FORMER LITIGATOR, YOU GET ALL GEARED UP TO TRY
8  THE CASE, AND WHEN YOU'RE PUT OFF FOR TOO LONG, THEN WHAT
9  HAPPENS IS THAT YOU LOSE IT.
10      THE PROBLEM IS, IS THAT I'VE GOT CRIMINAL TRIALS BEGINNING
11  AT THE END OF JANUARY. SO --
12      FRANCES, CAN YOU GRAB MY TRIAL CALENDAR NOTEBOOK.
13      THE CLERK: YEAH.
14      MR. COUGHLIN: IS THERE ANY WAY WE COULD DO IT --
15      THE COURT: SO I CAN -- I WILL GIVE IT TO YOU. AND,
16  YOU KNOW, THESE CRIMINAL TRIALS, SOMETIMES THEY RESOLVE, SO --
17  YOU KNOW, I COULD HAVE YOU ON A TWO-WEEK STAND-BY KIND OF
18  THING.
19      I MEAN, THE CASE -- THE CASE IS ONLY -- YOU KNOW, SHOULD
20  ONLY TAKE ULTIMATELY TWO WEEKS.
21      MR. COUGHLIN: RIGHT.
22      THE COURT: THE REASON WE'RE IN A THREE-WEEK WINDOW
23  IS BECAUSE OF THE THANKSGIVING HOLIDAY. SO, YOU KNOW, WE
24  COULD STILL TRY IT IN DECEMBER. THAT WOULD BE ON THE SHORTER
25  SIDE. I DON'T KNOW THAT THAT'S FEASIBLE.

201

1  YOU KNOW, YOU HAVE EVERYTHING TOGETHER.  YOU'RE ALL READY
2  TO GO.  COULD DO IT RIGHT AFTER, YOU KNOW, THE NEW YEAR, BUT I
3  HAVE A -- WELL, I HAVE TWO CRIMINAL TRIALS SET THE WEEK OF THE
4  26TH, BUT I EXPECT ONLY ONE OF THOSE TO GO AND MAYBE JUST --
5  AND MAYBE NOT.  I MEAN, I'VE JUST RECENTLY GOT A PLEA -- PLEA
6  AGREEMENT FROM ONE OF THE DEFENDANTS.
7  MR. COUGHLIN:  IS THERE ANY CHANCE THAT WE COULD GET
8  IN BEFORE THAT, AT THE BEGINNING OF JANUARY, SAY, JANUARY 6TH?
9  WE COULD GET IT DONE BY THE 26TH.
10  MR. ISAACSON:  AND I'M GOING TO HAVE SOME PRACTICAL
11  PROBLEMS WITH THAT.
12  THE COURT:  YOU KNOW, THE LIFE OF A LITIGATOR IS HARD
13  ENOUGH --
14  MR. ISAACSON:  YES.
15  THE COURT:  -- THAN -- THAN DESTROYING YOUR FAMILY'S
16  CHRISTMAS AND NEW YEAR'S.
17  MR. ISAACSON:  I'M NOT EVEN JUST TALKING ABOUT --
18  THE COURT:  AND, FRANKLY, THE OTHER THING IS -- I
19  MEAN, I REMEMBER WHEN I WAS PRACTICING, YOU KNOW, ALL OUR
20  TRANSACTIONAL BUDDIES, THEY ALL GOT BASKETS FROM ALL THEIR
21  CLIENTS, AND WE NEVER GOT ANYTHING.  BUT WE DID GET NEW YEAR'S
22  OFF, OR AT LEAST NEW YEAR'S EVE.
23  SO YES, THE BEGINNING OF JANUARY, YOU KNOW, THE WEEK OF,
24  LIKE, THE 12TH, THE FOLLOWING WEEK.  YOU KNOW, AS LONG AS --
25  AS EVIDENCE IS DONE, I COULD PUSH OFF A CRIMINAL TRIAL

202

1  PROBABLY A DAY OR TWO.
2  THEN THOSE CASES ARE SET TO GO FOR TWO WEEKS.  THE NEXT --
3  I ONLY HAVE ONE WEEK IN FEBRUARY, AND THEN I START ANOTHER
4  CRIMINAL TRIAL AT THE END OF FEBRUARY.
5  MR. COUGHLIN:  WE'D RATHER NOT GO SO LONG, YOUR
6  HONOR.
7  AS YOU SAY, WE'RE ALL GEARED UP.  WE'RE UP HERE -- WE'VE
8  MOVED UP HERE AS OF THIS WEEK STARTING, SO --
9  THE COURT:  YEAH.  AND MARCH, BACK-TO-BACK CRIMINAL
10  TRIALS.  SO -- AND THEN A PATENT TRIAL IN APRIL.
11  SO I JUST -- I AM -- I'VE SCHEDULED MYSELF PRETTY TIGHTLY.
12  DOES THAT GIVE YOU ENOUGH INFORMATION, MR. ISAACSON?
13  MR. ISAACSON:  I APPRECIATE IT, YOUR HONOR.
14  THE COURT:  OKAY.  THEN ON THE ASSUMPTION THAT YOU'RE
15  GOING TO TRY TO CATCH A PLANE ON FRIDAY, WHY DON'T WE GO AHEAD
16  AND CONTINUE THIS TO FRIDAY AT EIGHT -- 8:15.
17  MR. COUGHLIN:  8:15, WE'LL BE HERE.
18  MS. SWEENEY:  THAT'S FINE, YOUR HONOR.
19  THE COURT:  ALL RIGHT?
20  MS. SWEENEY:  THANK YOU, YOUR HONOR.
21  THE COURT:  THANK YOU.  WE'LL SEE YOU THEN.
22  MS. SWEENEY:  THANK YOU, YOUR HONOR.
23  MR. ISAACSON:  THANK YOU.
24  (PROCEEDINGS WERE CONCLUDED AT 3:31 P.M.)
25  --000--

1
2
3  CERTIFICATE OF REPORTER
4
5  I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
6  FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.
7  I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO,
8  NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS
9  HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR
10  OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.
11
12  _____
13  RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR
14  FRIDAY, OCTOBER 31, 2014
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT 5

**From:** Imelda Rivera [mailto:irivera@BSFLLP.com]
**Sent:** Friday, October 31, 2014 4:19 PM
**To:** Andrew Friedman; fbalint@bffb.com; Elaine Ryan; bonnys@rgrdlaw.om; Xan Bernay; Carmen Medici; Jennifer Caringal; Patrick Coughlin; Steve Jodlowski; service@braunlawgroup.com; rak@katriellaw.com; mgoldberg@glancylaw.com; bmurray@glancylaw.com; Todd@Carpenterlawyers.com; tkennedy@murrayfrank.com; dkiernan@jonesday.com; aamiri@jonesday.com; alreenh@zhlaw.com; helenz@zhlaw.com; jsailer@murrayfrank.com
**Subject:** The Apple iPod iTunes Anti-Trust Litigation, USDC NDCal Case No. C 05-00037 YGR

Dear Counsel:

This e-mail constitutes service via electronic delivery of the attached documents.  Kindly reply confirm receipt of this documents.  Thank you.

Very truly yours,

*Imelda D. Rivera*
Legal Assistant
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Direct:  (510) 874-1112
Fax:      (510) 874-1460
irivera@bsfllp.com
www.bsfllp.com

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

1  William A. Isaacson (wisaacson@bsfllp.com)
   (Admitted *Pro Hac Vice*)
2  Karen L. Dunn (kdunn@bsfllp.com)
   (Admitted *Pro Hac Vice*)
3  Martha L. Goodman (mgoodman@bsfllp.com)
   (Admitted *Pro Hac Vice*)
4  BOIES, SCHILLER & FLEXNER LLP
   5301 Wisconsin Ave, NW
5  Washington, DC 20015
   Telephone: (202) 237-2727
6  Facsimile: (202) 237-6131

7  John F. Cove, Jr. #212213
   (jcove@bsfllp.com)
8  Meredith R. Dearborn #268312
   (mdearborn@bsfllp.com)
9  BOIES, SCHILLER & FLEXNER LLP
   1999 Harrison Street, Suite 900
10 Oakland, CA 94612
   Telephone: (510) 874-1000
11 Facsimile: (510) 874-1460

12 David C. Kiernan #215335
   (dkiernan@jonesday.com)
13 JONES DAY
   555 California Street, 26th Floor
14 San Francisco, CA 94104
   Telephone: (415) 626-3939
15 Facsimile: (415) 875-5700

16 *Attorneys for Defendant Apple Inc.*

17              UNITED STATES DISTRICT COURT

18            NORTHERN DISTRICT OF CALIFORNIA

19                   OAKLAND DIVISION

| | |
|---|---|
| 20 THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION | Lead Case No. C 05-00037 YGR [CLASS ACTION] |
| 21 | |
| 22 ———————————————— | **FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO KENNETH RIEGEL** |
| 23 This Document Relates To: | |
| 24 ALL ACTIONS | |

25         Propounding Party:   Apple Inc.

26         Responding Party:    Kenneth Riegel

27         Set Number:          One

28

BOIES SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

BOIES SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

Pursuant to Rule 26 and Rule 34 of the Federal Rules of the Civil Procedure, defendant APPLE, INC. ("Apple") hereby requests that Kenneth Riegel respond by November 4, 2014 and produce the following documents for inspection and copying at the offices of Apple's counsel, Boies, Schiller & Flexner, located at 1999 Harrison St. Ste. 900, Oakland, CA 94612.

## DEFINITIONS

For the purposes of these requests, the following definitions shall apply:

1.     "YOU," "YOUR," "YOURSELF" or "PLAINTIFF" means Kenneth Riegel, Delaware Computer Exchange, and all persons acting or purporting to act on behalf of Kenneth Riegel or Delaware Computer Exchange including attorneys.

2.     "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and description and every tangible thing that is or has been in the possession, custody, or control of PLAINTIFF, to which he has access, or of which he has knowledge, including, but not limited to, newspaper articles, news articles, correspondence, contracts, electronic mail, memoranda, stenographic notes, hand written notes, drafts studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, tapes, computer records, voice recordings, maps, reports, surveys, minutes, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, audio CDs, audio DVDs, or electronic storage device).

3.     "iTS" means the iTunes ONLINE MUSIC STORE.

4.     "ONLINE MUSIC STORE" means any place on the Internet from which DIGITAL MUSIC FILES may be purchased or acquired.

5.     "iPod" refers to the PORTABLE DIGITAL MUSIC PLAYER manufactured by Apple and all versions of that product.

DEF.'S FIRST SET OF REQUESTS FOR PRODUCTION                No. C 05-00037 YGR

6. "PORTABLE DIGITAL MUSIC PLAYER" means any device that can be easily transported and that is capable of playing a DIGITAL MUSIC FILE.

7. "DIGITAL MUSIC FILE" means a computer file regardless of format, including without limitation AAC, MP3, Real Audio, WAV, WMA, and MIDI, that allows music to be played on a computer or other device that utilizes computer software (e.g., a PORTABLE DIGITAL MUSIC PLAYER).

8. This "ACTION" means *The Apple iPod iTunes Antitrust Litigation*, No. C 05-00037 YGR (N.D. Cal.).

## INSTRUCTIONS

1. YOU are required to furnish all DOCUMENTS in YOUR possession, custody or control, including those DOCUMENTS that are in the possession, custody or control of YOUR (1) employees; (2) partners; (3) consultants; (4) attorneys; (5) accountants; (6) tax preparers; (7) representatives; (8) agents; or (9) any other person acting or purporting to act on YOUR behalf.

2. All non-identical copies of every document whose production is sought shall be separately produced.

3. The following rules of construction shall be applied herein: (1) the words "and" or "or" shall be construed conjunctively or disjunctively as necessary to make the requests inclusive rather than exclusive; (2) the singular includes the plural and vice-versa; and (3) the words "any," "all," "each" and "every" all include any, all , each and every.

4. If YOU do not produce any DOCUMENT based on attorney-client privilege, work product protection or any other statutory constitutional privilege or protection, YOU shall provide a privilege log setting forth the specific basis for the claim of privilege or protection and for each DOCUMENT provide:

  a. the subject matter of the DOCUMENT;

  b. the title, heading or caption of the DOCUMENT, if any;

  c. the date appearing on the DOCUMENT or, if no date appears thereon, the date or approximate date on which the DOCUMENT was prepared;

BOIES SCHILLER & FLEXNER LLP
OAKLAND CALIFORNIA

BOIES, SCHILLER & FLEXNER L L P
OAKLAND CALIFORNIA

d.  the general nature description of the DOCUMENT (e.g., whether it is a letter, memorandum, minutes of meeting, etc.) and the number of pages of which it consists;

e.  the identity of the person who signed the DOCUMENT or, if it was not signed, the person who prepared it;

f.  the identity of each person to whom the DOCUMENT was addressed and the identity of each person to whom a copy thereof was sent; and

g.  the identity of each person who has custody of a copy of each such DOCUMENT.

5.  If YOU claim privilege or protection to part of a DOCUMENT, YOU shall redact that portion which is privileged or protected and produce the remainder. When such redactions for privilege or protection are made, YOU shall place a legend similar to "REDACTION-PRIVILEGE" on the copy of the DOCUMENT produced. All redactions shall also be included on the privilege log described in the preceding numbered paragraph.

6.  If these requests cannot be responded to you in full, YOU shall respond to the extent possible, specify the reason for YOUR inability to respond to the remainder, and state whatever information or knowledge YOU have regarding the portion to which YOU have not responded.

7.  Unless otherwise specified, the time period covered by these requests is from January 1, 2005 through December 31, 2010.

**DOCUMENTS REQUESTED**

**REQUEST FOR PRODUCTION NO. 1**:

All DOCUMENTS reflecting, referring or relating to the purchase of any iPod from Apple or another entity including, but not limited to, contracts, transactional data related to the price paid, the date and quantity of purchase, entity purchased from, and type of device purchased as well as any documents regarding front-end or back-end discounts, marketing or business development funds, or any other promotional fund or rebate that you were eligible for as a reseller.

DEF.'S FIRST SET OF REQUESTS FOR PRODUCTION                    No.  C 05-00037 YGR

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS reflecting, referring or relating to the purchase of any PORTABLE DIGITAL MUSIC PLAYER other than an iPod including, but not limited to, contracts, transactional data related to the price paid, the date and quantity of purchase, entity purchased from, and type of device purchased as well as any documents regarding front-end or back-end discounts, marketing or business development funds, or any other promotional fund or rebate that you were eligible for as a reseller.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS reflecting, referring or relating to YOUR sale of iPods including, but not limited to, transactional data showing the types of iPods sold, the dates at which those models were sold, the prices charged for those models, the channel though which the sale took place, any discount, rebate, or coupon offered, any marketing materials used, and any sales or shipping receipts for those sales.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS reflecting, referring or relating to YOUR sale of any PORTABLE DIGITAL MUSIC PLAYER other than an iPod including, but not limited to, transactional data showing the types of PORTABLE DIGITAL MUSIC PLAYER sold, the dates at which those models were sold, the prices charged for those models, the channel though which the sale took place, any discount, rebate, or coupon offered, any marketing materials used, and any sales or shipping receipts for those sales.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS reflecting, referring or relating to any acquisition of digital music by YOU from iTS at any time, including without limitation DOCUMENTS showing dates, prices and titles of music purchased by YOU (including credit card receipts and statements). This request includes without limitation a copy of your Purchase History which can be printed out by opening iTunes, clicking the Music Store icon in the Sources List, signing into the store, clicking on your name next to the Account Button, clicking the View Account button, and clicking Purchase History.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS reflecting, referring or relating to any acquisition of digital music by YOU at any time from any other ONLINE MUSIC STORE, including without limitation DOCUMENTS showing dates, prices and titles of music purchased by YOU (including credit card receipts and statement).

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS reflecting, referring or relating to the acquisition by YOU at any time of any gift cards or similar cards that can be used to purchase digital music files at any ONLINE MUSIC STORE, including without limitation DOCUMENTS showing dates and prices of such cards purchased by YOU (including credit card receipts and statement).

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS reflecting, referring or relating to YOUR sale of gift cards or similar cards that can be used to purchase digital music files at any ONLINE MUSIC STORE, including, but not limited to, transactional data showing the types of cards sold, the dates at which those cards were sold, the prices charged, the channel though which the sale took place, any discount, rebate, or coupon offered, any marketing materials used, and any sales or shipping receipts for those sales.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS reflecting, referring or relating to any acquisition of any type of music by YOU at any time from any other source including traditional brick and mortar stores or Internet websites like Amazon.com, including without limitation DOCUMENTS showing dates, prices and titles of music acquired by YOU (including credit card receipts and statements).

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS reflecting, referring or relating to the acquisition at any time of any type of music by YOU from any source other than online stores or traditional brick and mortar stores, including music downloaded from the Internet using software like Napster or Kazaa, and music obtained from other persons, including without limitation DOCUMENTS showing dates, prices, titles or music obtained by YOU and the methods used to obtain them.

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS that support or relate to YOUR claim that YOU have been damaged in any way by Apple's conduct alleged in this Action.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS that support or relate to YOUR claim that iTS DIGITAL MUSIC FILES could not be played on any PORTABLE DIGITAL MUSIC PLAYER other than the iPod.

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS that support or relate to YOUR claim that the iPod was unable to play any DIGITAL MUSIC FILES other than those obtained from iTS.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS that support or relate to YOUR claim that Apple prevented the iPod from playing DIGITAL MUSIC FILES sold by RealNetworks.

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS reflecting, referring or relating to the formation, ownership, transfer, current status, and profit and losses of Delaware Computer Exchange at any time.

Date:  October 31, 2014

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By: _____
Meredith R. Dearborn
*Attorney for Defendant Apple Inc.*

1   William A. Isaacson (wisaacson@bsfllp.com)
    (Admitted *Pro Hac Vice*)
2   Karen L. Dunn (kdunn@bsfllp.com)
    (Admitted *Pro Hac Vice*)
3   Martha L. Goodman (mgoodman@bsfllp.com)
    (Admitted *Pro Hac Vice*)
4   BOIES, SCHILLER & FLEXNER LLP
    5301 Wisconsin Ave, NW
5   Washington, DC 20015
    Telephone: (202) 237-2727
6   Facsimile: (202) 237-6131

7   John F. Cove, Jr. #212213
    (jcove@bsfllp.com)
8   Meredith R. Dearborn #268312
    (mdearborn@bsfllp.com)
9   BOIES, SCHILLER & FLEXNER LLP
    1999 Harrison Street, Suite 900
10  Oakland, CA 94612
    Telephone: (510) 874-1000
11  Facsimile: (510) 874-1460

12  David C. Kiernan #215335
    (dkiernan@jonesday.com)
13  JONES DAY
    555 California Street, 26th Floor
14  San Francisco, CA 94104
    Telephone: (415) 626-3939
15  Facsimile: (415) 875-5700

16  *Attorneys for Defendant Apple Inc.*

17              UNITED STATES DISTRICT COURT

18              NORTHERN DISTRICT OF CALIFORNIA

19                  OAKLAND DIVISION

20  THE APPLE iPOD iTUNES ANTI-          Lead Case No. C 05-00037 YGR
    TRUST LITIGATION                     [CLASS ACTION]
21
                                         **DEFENDANT APPLE INC.'S FIRST**
22  _____     **INTERROGATORIES TO KENNETH**
                                         **RIEGEL**
    This Document Relates To:
23
    ALL ACTIONS
24

25          Propounding Party:    Apple Inc.

26          Responding Party:     Kenneth Riegel

27          Set Number:           One

28

BOIES SCHILLER & FLEXNER LLP
OAKLAND CALIFORNIA

Pursuant to Rules 26 and 33 of the Federal Rules of the Civil Procedure, Defendant APPLE, INC. ("Apple") hereby requests that Kenneth Riegel answer fully and separately in writing and under oath the following interrogatories by November 4th, 2014.

## DEFINITIONS

For the purposes of these requests, the following definitions shall apply:

1. "YOU," "YOUR," "YOURSELF" or "PLAINTIFF" means Kenneth Riegel, Delaware Computer Exchange and all persons acting or purporting to act on behalf of Kenneth Riegel or Delaware Computer Exchange including attorneys.

2. "DOCUMENT" and "DOCUMENTS" are intended to be interpreted in the broadest possible sense and include, but are not limited to, newspaper articles, news articles, correspondence, contracts, electronic mail, memoranda, stenographic notes, hand written notes, drafts studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, tapes, computer records, voice recordings, maps, reports, surveys, minutes, data compilations, and financial statements, licenses, and computer printouts. "DOCUMENT" and "DOCUMENTS" also include preliminary drafts or revisions or copies of any such document if the copy is in any way different from the original, now in your possession, custody or control, or in the possession, custody, or control of your advisors, agents, employees, servants, representatives, trustees, counsel or other persons acting or purporting to act on your behalf.

3. "iTS" means the iTunes ONLINE MUSIC STORE.

4. "ONLINE MUSIC STORE" means any place on the Internet from which DIGITAL MUSIC FILES may be purchased or acquired.

5. "iPod" refers to the PORTABLE DIGITAL MUSIC PLAYER manufactured by Apple and all versions of that product.

6. "PORTABLE DIGITAL MUSIC PLAYER" means any device that can be easily transported and that is capable of playing a DIGITAL MUSIC FILE.

DEF.'S FIRST SET OF INTERROGATORIES                    No. C 05-00037 YGR

7.     "DIGITAL MUSIC FILE" means a computer file regardless of format, including without limitation AAC, MP3, Real Audio, WAV, WMA, and MIDI, that allows music to be played on a computer or other device that utilizes computer software (e.g., a PORTABLE DIGITAL MUSIC PLAYER).

8.     The terms "relating to" and "relate to" mean directly or indirectly mentioning, describing, pertaining to, being connected with, or reflecting upon the subject matter of the specific request.

9.     The term "class" means any class identified in the Complaint.

10.    "Complaint" means the Amended Consolidated Complaint filed January 26, 2010.

11.    The term "class period" refers to the period of time between September 12, 2006 and March 31, 2009.

## INSTRUCTIONS

1.     Unless otherwise stated, the time period covered by these interrogatories is January 1, 2005 through December 31, 2010.

2.     The following rules of construction shall be applied herein:  (1) the words "and" or "or" shall be construed conjunctively or disjunctively as necessary to make the requests inclusive rather than exclusive; (2) the singular includes the plural and vice-versa; and (3) the words "any," "all," "each" and "every" all include any, all , each and every.

3.     When appropriate, the singular shall encompass the plural, and vice versa.

4.     Defendant hereby requests that, after answering these interrogatories, you supplement or correct any responses later learned to be incomplete or incorrect immediately upon learning that a prior response is incomplete or incorrect.

5.     All information requested herein is to be set forth if it is in the possession control of, or is available or accessible to you or any of your agents, consultants, counsel, investigators, representatives, or any other person or persons acting for you on your behalf.

6.     If you cannot answer certain of the following interrogatories in full after exercising due diligence to secure the information to do so, answer to the extent possible and explain your

inability to provide a complete answer. State whatever information or knowledge you have about the unanswered portion of any interrogatory.

7. If any information called for by an interrogatory is withheld on the basis of a claim of privilege, set forth the nature of the claimed privilege and the nature of the information with respect to which it is claimed.

8. Whenever an interrogatory requests the identification of a document, the answer shall state the name, address, position, and organization of the author and each recipient of the document, the custodian of the document, the date of the document, and a brief description of the subject matter of the document.

9. Whenever an interrogatory requests the identity of a person, state his or her full name, present or last known address, telephone number, and position of employment at the time in question.

10. Whenever an interrogatory requests the identity of an entity, state its name, address, telephone number, and the type of business in which the entity engages.

11. Whenever an interrogatory seeks a description of an act, transaction, occurrence, dealing or instance, state the date it occurred; the place where it occurred; the identity of each person participating therein; the person on whose behalf each such person participated or purported to participate; the nature and substance of all conversations or oral communications occurring during, or in connection with the act, transaction, occurrence, dealing or instance and identify all documents referring thereto or reflecting the act, transaction, occurrence dealing or instance.

12. Whenever an interrogatory asks for a date, state the exact day, month and year, if ascertainable, or, if not, the best approximation thereof.

## **INTERROGATORIES**

## **INTERROGATORY NO. 1**

Please identify all facts regarding the process YOU went through in order to purchase iPods from Apple, including any contractual negotiations, individually negotiated terms,

requirements of performance, price discussions, purchase quantity requirements, and the DATE upon which any negotiation, discussion or contractual agreement was entered.

**INTERROGATORY NO. 2**

Please identify all facts regarding the price YOU paid to Apple for iPods including whether such price was a list-price or individually negotiated, whether you received front-end or back-end discounts, rebates, marketing funds, business development funds or otherwise were able to alter the initially quoted price or purchase price.

**INTERROGATORY NO. 3**

Please identify the models and quantities of iPods purchased including the DATE of each purchase and price paid.

**INTERROGATORY NO. 4**

Please identify all facts regarding the reasons YOU became a reseller of iPods.

**INTERROGATORY NO. 5**

Please identify all facts relating to how YOU set prices for iPods including any marketing and promotions YOU ran or coupons, rebates or discounts YOU offered.

**INTERROGATORY NO. 6**

Please identify through which channels YOU sold and delivered iPods including, but not limited to, brick and mortar store locations, website sales, and mail order deliveries, and the DATES at which you sold through such channels.

**INTERROGATORY NO. 7**

Please identify all facts regarding YOUR purchase or sale of gift cards or similar cards that can be used to purchase digital music files at any ONLINE MUSIC STORE, including prices paid and received, the channels YOU acquired, sold and delivered such cards, how such cards were marketed, and the DATES at which you sold through such cards.

**INTERROGATORY NO. 8**

Please identify any facts personally known to YOU supporting the allegations that the disabling of RealNetworks's Harmony caused consumers to be locked-in or out of iPods or had any effect on the price of iPods.

**INTERROGATORY NO. 9**

Please identify all facts personally known to YOU regarding any change in consumer demand for iPods after September 12, 2006.

**INTERROGATORY NO. 10**

Please state the legal status of Delaware Computer Exchange including date and state of incorporation or other legal formation, Kenneth Riegel's past and present involvement in the company, any dates of termination, and transfers of ownership or controllership of the company at any time.

**INTERROGATORY NO. 11**

Please state the financial status of Delaware Computer Exchange including its capitalization as well as profits or losses in each year.

**INTERROGATORY NO. 12**

Please identify any other litigations to which YOU have been a party either as an individual or as part of a class at any time. If any, identify the parties involved, the date of the actions, the nature of the claims, and how it was adjudicated or resolved.

**INTERROGATORY NO. 13**

Please identify all facts personally known to YOU that support the assertions that Apple has "used its dominant market position in the markets for Audio Downloads and Portable Digital Media Players to stifle competition and strengthen its monopoly in these markets," and that "Apple engaged in systematic conduct to shut out rivals' competing Audio Downloads and Portable Digital Media Players by cutting off access to the marketplace," as alleged in paragraph 2 of the Complaint.

**INTERROGATORY NO. 14**

Please identify all facts personally known to YOU that support the assertion that "Apple used unneeded technological restrictions in conjunction with software updates to suppress new products that threatened its monopoly power in the relevant product markets," as alleged in paragraph 2 of the Complaint.

**INTERROGATORY NO. 15**

Please identify all facts personally known to YOU that support the assertion that "When competitors attempted to enter either market by selling products compatible with Apple's market-leading iPod or iTS files, Apple promptly issued software updates to end the compatibility," as alleged in paragraph 4 of the Complaint.

**INTERROGATORY NO. 16**

Please identify all facts personally known to YOU that support the assertion that "Consumers and merchants have come to recognize the Audio Download Market as a separate and distinct market from the market for music CDs," as alleged in paragraph 19 of the Complaint.

**INTERROGATORY NO. 17**

Please identify all facts personally known to YOU that support the assertion that cellular telephones that store and play digital music files—including but not limited to "smartphones"— did not compete with Portable Digital Media Players.

**INTERROGATORY NO. 18**

Please identify all facts personally known to YOU that support the assertion that "As a direct result of Apple's anticompetitive use of software updates, Plaintiffs and members of the Class paid supracompetitive prices for iPods," as alleged in paragraph 88 of the Complaint.

**INTERROGATORY NO. 19**

Please identify each software program, including, without limitation, those referred to in paragraphs 64 through 66 of the Complaint that YOU have used to make music you purchased from the iTS interoperable with any device not manufactured by Apple.

**INTERROGATORY NO. 20**

Please identify the model and manufacturer of each PORTABLE DIGITAL MEDIA PLAYER that YOU have purchased, used or sold for your own use or for resale.

DEF.'S FIRST SET OF INTERROGATORIES                                        No. C 05-00037 YGR

Date: October 31, 2014

Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By: _____
Meredith R. Dearborn
*Attorney for Defendant Apple Inc.*

DEF.'S FIRST SET OF INTERROGATORIES                     No.  C 05-00037 YGR

# EXHIBIT 6

— SHEET 1 —

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

```
THE APPLE IPOD ITUNES      )        NO. C 05-00037 YGR
ANTITRUST LITIGATION       )
                           )        PAGES 1 - 18
                           )
                           )        STATUS CONFERENCE
                           )
                           )
                           )        OAKLAND, CALIFORNIA
_____)        FRIDAY, OCTOBER 31, 2014
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

```
FOR PLAINTIFFS:        ROBBINS GELLER RUDMAN & DOWD LLP
                       655 WEST BROADWAY, SUITE 1900
                       SAN DIEGO, CALIFORNIA  92101
                 BY:   BONNY E. SWEENEY,
                       ALEXANDRA S. BERNAY,
                       JENNIFER N. CARINGAL, ATTORNEYS AT LAW

                       BONNETT FAIRBOURN FRIEDMAN & BALINT PC
                       4023 CAIN BRIDGE ROAD
                       FAIRFAX, VIRGINIA 22030
                 BY:   FRANCIS J. BALINT, JR.
                       ATTORNEY AT LAW

        (APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:           RAYNEE H. MERCADO, CSR NO. 8258

     PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.
```

---

A P P E A R A N C E S (CONT'D.)

```
FOR DEFENDANT:         BOIES, SCHILLER & FLEXNER LLP
                       5301 WISCONSIN AVENUE NW
                       WASHINGTON, D.C.  20015
                 BY:   WILLIAM A. ISAACSON, ATTORNEY AT LAW

                       BOIES, SCHILLER & FLEXNER LLP
                       1999 HARRISON STREET, SUITE 900
                       OAKLAND, CALIFORNIA 94612
                 BY:   JOHN F. COVE,
                       MEREDITH R. DEARBORN, ATTORNEYS AT LAW

                       JONES DAY
                       555 CALIFORNIA STREET, 26TH FLOOR
                       SAN FRANCISCO, CALIFORNIA  94104-1500
                 BY:   DAVID C. KIERNAN, ATTORNEY AT LAW

                       --oOo--
```

---

**3**

1  FRIDAY, OCTOBER 31, 2014            8:26 A.M.
2          P R O C E E D I N G S
3      THE CLERK:  CALLING CIVIL ACTION 05-0037, APPLE IPOD
4  ITUNES ANTITRUST LITIGATION.
5    COUNSEL, PLEASE STATE YOUR APPEARANCES.
6      MS. SWEENEY:  GOOD MORNING, YOUR HONOR.  BONNY
7  SWEENEY, ROBBINS GELLER RUDMAN & DOWD FOR THE PLAINTIFFS.
8      THE COURT:  MORNING.
9      MR. ISAACSON:  BILL ISAACSON, BOIES SCHILLER &
10 FLEXNER FOR THE DEFENDANT.
11     THE COURT:  GOOD MORNING.
12   OKAY.  AS I WAS SAYING, WE HAD TO EVACUATE THE BUILDING
13 YESTERDAY.  AND SO I RECEIVED THIS MORNING A COPY OF A LETTER
14 FROM YOU, MR. ISAACSON.
15     MR. ISAACSON:  YES.
16     THE COURT:  IS THERE SOME -- IS THERE ANYTHING ELSE,
17 I GUESS WAS MY FIRST QUESTION -- ANYTHING ELSE THAT I SHOULD
18 HAVE REVIEWED PRIOR TO THIS MORNING?
19     MR. ISAACSON:  NO, YOUR HONOR.  WE HAVE SOMETHING FOR
20 YOU NOW.
21     THE COURT:  OKAY.
22     MR. ISAACSON:  IT IS A FOLLOW-UP TO THAT LETTER.  WE
23 HAVE A PROPOSED STIPULATION.
24     THE COURT:  ALL RIGHT.  LET ME SEE IT.
25         (PAUSE IN THE PROCEEDINGS.)

---

**4**

1         (OFF-THE-RECORD DISCUSSION.)
2      MR. ISAACSON:  THAT'S TWO COPIES.
3      THE COURT:  AND WHAT'S THE -- THE CONTENT OF THE
4  PROPOSAL?
5      MR. ISAACSON:  THE PROPOSAL PROVIDES FOR AN EXTENSION
6  OF THE TRIAL DATE TO MONDAY, DECEMBER 8TH, AND -- AND THEN A
7  BRIEFING SCHEDULE FOR THE -- FOR THE PROPOSAL TO ADD
8  MR. RIEGEL AS A CLASS REPRESENTATIVE, AS WELL AS FOR APPLE TO
9  FILE A MOTION TO DECERTIFY THE RESELLER PORTION OF THE CLASS
10 AND FOR ALL THAT TO TAKE PLACE BEFORE THE TRIAL DATE.
11     THE COURT:  I THINK YOU'RE GOING TO HAVE TO SHORTEN
12 IT BY A WEEK, AND HERE'S WHY.
13   I'VE GOT TO GET THIS TRIAL DONE BEFORE THE WEEK OF
14 CHRISTMAS OR I'M GOING TO LOSE JURORS.  SO WE'VE GOT TO START
15 THIS TRIAL DECEMBER -- I'LL GIVE YOU THE MONDAY AFTER THE
16 HOLIDAY, BUT WE HAVE TO START THIS TRIAL ON DECEMBER 2ND AT
17 THE LATEST.  THAT GIVES ME -- UNLESS YOU'RE -- UNLESS YOU'RE
18 GOING TO SHORTEN THE TIME, AND I DON'T THINK YOU WANT TO
19 SHORTEN THE TIME.  YOU HAVE 20 HOURS EACH.  THAT'S ABOUT A
20 WEEK A PIECE.  AND THEN THEY HAVE TO DELIBERATE.
21   IF I GO INTO THE WEEK OF THE 22ND, I WILL LOSE PEOPLE.
22 PEOPLE HAVE KIDS.  THEY'RE ON BREAKS.  THE WEEK OF CHRISTMAS,
23 WE LOSE PEOPLE.  SO WE HAVE TO BE PREPARED TO BE DONE BY THE
24 19TH.  IF IT FALLS OVER A DAY ONTO MONDAY, AND I LOSE ONE, I
25 CAN DEAL WITH ONE.

13

1  ORDER.
2      MR. ISAACSON: UNDERSTOOD.
3      THE COURT: OKAY.
4      MS. SWEENEY: SCHEDULE'S FINE WITH US, YOUR HONOR.
5      THE COURT: OKAY. ALL RIGHT. SO IF I HAVE, THEN,
6  THE OPPOSITION ON THE 11TH TO THE MOTION FOR CLASS REP AND A
7  MOTION TO DECERTIFY, THEN THE OPPOSITION FOR THE MOTION TO
8  DECERTIFY WOULD BE NOON ON THE 14TH. AND THEN I ALSO NEED THE
9  REPLY NOON ON THE 14TH FOR THE MOTION TO ADD AS A CLASS REP.
10     I MEAN, ARE THE ISSUES GOING TO BE DIFFERENT? DO WE
11 REALLY NEED TWO DIFFERENT SETS OF MOTIONS ON THIS?
12     MR. ISAACSON: THEY ARE TWO SEPARATE SETS OF ISSUES.
13 I MEAN, THE ONE IS THAT -- SO THE OPPOSITION TO ADDING AT THIS
14 DATE GOES TO THE PREJUDICE TO THE APPLE -- THE PREJUDICE TO
15 THE CLASS, WHETHER THE -- WHETHER THERE ARE NOTICE ISSUES NOW
16 BECAUSE THE PERSON'S NOT BEEN IDENTIFIED IN ANY CLASS NOTICE,
17 SO AT -- AS WELL AS TO ANY OTHER ISSUES THAT COME UP IN THE
18 DEPOSITION.
19     WHEREAS THE MOTION TO DECERTIFY --
20     THE COURT: NO, I --
21     MR. ISAACSON: -- PART OF THE RESELLER CLASS --
22     THE COURT: ALL RIGHT. SO THEN NOON ON THE 14TH, I'M
23 GETTING THE OPPOSITION TO THE MOTION TO DECERTIFY. I'LL NEED
24 THE REPLY ON THAT BY MONDAY THE 17TH IF I'M GOING TO TAKE ANY
25 ARGUMENT.

14

1      MR. ISAACSON: UNDERSTOOD.
2      THE COURT: SO NOVEMBER 17TH, WE'LL SAY 9:00 A.M.
3  PACIFIC TIME, WHICH IS NOON EAST COAST TIME.
4      TENTATIVELY SET THE HEARING ON THE MOTION TO OCCUR 1:00
5  P.M. ON THE 18TH OF NOVEMBER.
6      JURY SELECTION -- WILL THEN BE MOVED TO NOVEMBER 19TH,
7  WHICH IS WEDNESDAY.
8      TRIAL TO BEGIN DECEMBER 2ND. YOUR OPENINGS ARE GOING TO
9  TAKE A LITTLE BIT OF TIME ANYWAY. YOU'VE GOT OPENINGS, I'VE
10 GOT TO INSTRUCT. PROBABLY GET ON, DEPENDING ON THE LENGTH,
11 ONE OR TWO WITNESSES.
12     YOU CAN GET THE CLASS REPS ON FIRST. SO YOU'LL HAVE TO
13 FIGURE IT OUT ON THE PLAINTIFFS' SIDE. APPLE WILL DO THEIR
14 BEST, BUT --
15     MS. SWEENEY: WE UNDERSTAND, YOUR HONOR.
16     THE COURT: -- THE SITUATION THAT WE FIND OURSELVES
17 IN. SO EVIDENCE TO BEGIN DECEMBER 2ND.
18     MS. SWEENEY: YOUR HONOR, I MAY HAVE MISSED IT, BUT
19 WHAT IS THE DATE WHEN APPLE'S GOING TO FILE ITS MOTION TO
20 DECERTIFY?
21     THE COURT: THE SAME DAY AS THEIR OPPOSITION.
22     MS. SWEENEY: OH.
23     THE COURT: SO THE 11TH.
24     MS. SWEENEY: OKAY.
25     THE COURT: OKAY. PRODUCTION -- ALL OF THE WRITTEN

15

1  DISCOVERY NEEDS TO BE DONE BY THE 4TH, NEXT WEEK.
2      OKAY. I THINK WITH THIS SCHEDULE, I CAN GET IT IN AND
3  KEEP MY JURY. I WON'T BE WRITING A TREATISE. I'LL TRY TO BE
4  AS COMPREHENSIVE AS I CAN. BUT GIVEN THE DEADLINE --
5      OKAY. OTHER THOUGHTS OR QUESTIONS?
6      MR. ISAACSON: JUST HAVE TWO MINISTERIAL MATTERS
7  UNRELATED TO THIS.
8      THE COURT: OKAY. WELL, LET ME SEE. MS. SWEENEY,
9  ANYTHING ON THIS?
10     MS. SWEENEY: ON THE SCHEDULE, NO, YOUR HONOR.
11     MR. ISAACSON: ALL RIGHT. SO LAST NIGHT AS YOU
12 DIRECTED AT THE LAST CONFERENCE, WE FILED OUR RESPONSES TO
13 THEIR FOOTNOTED MOTION TO --
14     THE COURT: RIGHT.
15     MR. ISAACSON: -- STRIKE. THIS IS COPIES OF THE
16 EXPERT REPORTS MARKED WITH WHAT PORTIONS THEY'VE ASKED TO
17 STRIKE.
18     THE COURT: OKAY. THAT'S APPRECIATED.
19     MR. ISAACSON: COURTESY COPY.
20     THE COURT: ALL RIGHT. AND DID THEY GET --
21     MR. ISAACSON: AND I'VE JUST GIVEN THEM A COPY OF THE
22 COURTESY COPY.
23     THE COURT: OKAY.
24     MS. SWEENEY: AND, YOUR HONOR, PLAINTIFFS HAD ALREADY
25 SUBMITTED TO THE COURT AND TO APPLE ALL OF THE HIGHLIGHTED

16

1  TESTIMONY THAT -- THAT PLAINTIFFS SEEK TO STRIKE IF YOUR HONOR
2  GRANTS MOTIONS IN LIMINE 1 THROUGH 3.
3      THE COURT: OKAY.
4      MS. SWEENEY: SO WE DIDN'T UNDERSTAND THAT THEY WERE
5  PERMITTED TO -- TO FILE WHAT IN ESSENCE IS A REPLY BRIEF IN
6  SUPPORT OF THEIR MOTIONS IN LIMINE --
7      THE COURT: I THOUGHT THIS WAS IN RESPONSE TO YOUR
8  FOOTNOTE.
9      MR. ISAACSON: YES.
10     MS. SWEENEY: BUT OUR FOOTNOTES ACTUALLY CITE THE
11 MATERIAL THAT MR. ISAACSON SAYS HE NOW PRESENTED TO YOU, SO
12 NOW YOU HAVE TWO SETS OF IT. BUT APPLE ALSO TOOK THE
13 OPPORTUNITY TO REBRIEF ITS MOTIONS IN LIMINE. AND WE -- WE
14 GOT THIS AROUND, I THINK, 10:00 O'CLOCK LAST NIGHT. WE
15 PREPARED A RESPONSE IF YOUR HONOR WOULD LIKE YET MORE BRIEFING
16 ON THE TOPIC, BUT WE DON'T THINK IT'S FAIR THAT APPLE GETS TO
17 FILE, IN EFFECT, A REPLY BRIEF WHEN PLAINTIFFS DIDN'T FILE A
18 REPLY IN SUPPORT OF ANY OF THEIR MOTIONS IN LIMINE.
19     MR. ISAACSON: I DON'T THINK WE FILED A REPLY BRIEF.
20 IF YOU LOOK AT IT, IT'S DIRECTED AT THOSE FOOTNOTES, AND IT
21 WAS AT THE DIRECTION OF THE COURT THAT WE --
22     THE COURT: OKAY. JUST FILE YOUR BRIEF.
23     MS. SWEENEY: THANK YOU, YOUR HONOR.
24     THE COURT: IF I NEED -- I WOULD HOPE AT THIS POINT
25 YOU UNDERSTAND THAT I TRY TO BE AS FAIR AS I CAN TO BOTH

EXHIBIT 7

**If you purchased one of the listed iPod models directly from Apple between September 12, 2006 and March 31, 2009, a class-action lawsuit may affect your rights.**

*A court authorized this Notice. This is not a solicitation from a lawyer.*

- Apple Inc. ("Apple") sells iPods directly to customers through its online and retail stores and directly to Apple authorized resellers. A lawsuit has been filed against Apple claiming that software updates Apple issued in 2006 for its iPod caused iPod prices to be higher than they otherwise would have been. Apple denies that the software updates had any effect on iPod prices. The Court has not yet decided whether Plaintiffs or Apple is correct. Apple has not been ordered to pay any money. There has been no settlement.

- The Court has allowed the lawsuit to proceed as a class action on behalf of all entities or persons who purchased certain iPod models between September 12, 2006 and March 31, 2009. The specific models ("Designated Apple iPods") are listed below at page 2.

- The Court has not decided whether Apple has in fact violated the law. The sole purpose of this Notice is to inform you of the lawsuit so that you can make an informed decision as to whether you should remain in or opt out of this Class Action. There is no money available now, and no guarantee that there will be. However, your legal rights are affected, and you have a choice to make now:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **DO NOTHING** | **Stay in this lawsuit. Await the outcome. Give up certain rights.**<br>By doing nothing, you keep the possibility of sharing in any recovery (monetary or otherwise) that may come from a trial or a settlement. But you give up any right you may have to sue Apple separately about the same legal claims in this lawsuit, and you will be bound by the outcome of this case. |
| **ASK TO BE EXCLUDED** | **Get out of this lawsuit. Get no benefits from it. Keep rights.**<br>If you ask to be excluded you will not be bound by what the Court does in this case and will keep any right you might have to sue Apple separately about the same legal claims in this lawsuit.<br>If a recovery is later awarded in this case, you would not share in that recovery. |

- Your options are explained in more detail in this Notice. To be excluded, you must act before **July 30, 2012**.

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ................................................................................................................. PAGE 2
    1.    What is this lawsuit about?
    2.    Why is this a class action?

**WHO IS IN THE CLASS?** .............................................................................................................. PAGE 2
    3.    Who is included in the Class?
    4.    What if I'm still not sure if I am included in the Class?

**THE CLAIMS IN THE LAWSUIT** ................................................................................................ PAGES 2-3
    5.    What are Plaintiffs asking for?
    6.    Is there any money available now?

**YOUR RIGHTS AND OPTIONS** ...................................................................................................... PAGE 3
    7.    What happens if I do nothing at all?
    8.    Why would I ask to be excluded?
    9.    How do I ask the Court to exclude me from the Class?

**THE LAWYERS REPRESENTING YOU** ............................................................................................ PAGE 3
    10.    Do I have a lawyer in this case?
    11.    How will the lawyers be paid?

**GETTING MORE INFORMATION** ................................................................................................... PAGE 3
    12.    Where can I get more information?

## 1. What is this lawsuit about?

The lawsuit claims that Apple violated federal and state laws by issuing software updates in 2006 for its iPod that prevented iPods from playing songs not purchased on iTunes. The lawsuit claims that the software updates caused iPod prices to be higher than they otherwise would have been. Apple denies that it did anything wrong and asserts that the software updates challenged by Plaintiffs improved its products, were good for consumers, and had no effect on iPod prices.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is known as *In re Apple iPod iTunes Antitrust Litigation*, C-05-00037-JW. The people who sued are called Plaintiffs, and Apple is called the Defendant.

The Court has not yet decided whether Plaintiffs or Apple is correct.

## 2. Why is this a class action?

Three individuals who bought iPods have sued Apple seeking to recover money for themselves and other people who bought iPods. On November 22, 2011, the Court allowed the case to proceed as a class action for all persons and entities that purchased one of the iPod models, listed below, directly from Apple between September 12, 2006 and March 31, 2009. All these people are a Class or Class Members. The Court will resolve the issues in the case for all Class Members, except for those who choose to exclude themselves from the Class. United States District Court Chief Judge James Ware is in charge of this Class Action.

More information about why the Court is allowing this lawsuit to be a class action is in the Order Granting Plaintiffs' Motion for Class Certification available at www.ipodlawsuit.com.

**WHO IS IN THE CLASS?**

## 3. Who is included in the Class?

The Court decided that everyone who fits the following description is a Class Member: All persons or entities in the United States (excluding federal, state and local governmental entities, Apple, its directors, officers and members of their families) who purchased one of the iPod models listed below directly from Apple between September 12, 2006 and March 31, 2009 ("Class Period").

The following iPod models are included in the Class Definition:

- iPod Standard, Classic, Special Models
    - iPod (5th generation) 30 GB
    - iPod (5th generation) 80 GB
    - iPod U2 Special Edition 30 GB
    - iPod Classic 120 GB
    - iPod Classic 80 GB
    - iPod Classic 160 GB
    - iPod (5th generation) 60 GB

- iPod shuffle Models
    - iPod shuffle (2nd generation) 1 GB
    - iPod shuffle (2nd generation) 2 GB
    - iPod shuffle (3rd generation) 4 GB
    - iPod shuffle (1st generation) 1 GB
    - iPod shuffle 512 MB

- iPod touch Models
    - iPod touch 8 GB
    - iPod touch 16 GB
    - iPod touch 32 GB
    - iPod touch (2nd generation) 8 GB
    - iPod touch (2nd generation) 16 GB
    - iPod touch (2nd generation) 32 GB

- iPod nano Models
    - iPod nano (2nd generation) 2 GB
    - iPod nano (2nd generation) 4 GB
    - iPod nano (2nd generation) 8 GB
    - iPod nano (3rd generation) 4 GB
    - iPod nano (3rd generation) 8 GB
    - iPod nano (4th generation) 4 GB
    - iPod nano (4th generation) 8 GB
    - iPod nano (4th generation) 16 GB
    - iPod nano (1st generation) 1 GB
    - iPod nano (1st generation) 2 GB
    - iPod nano (1st generation) 4 GB

## 4. What if I'm still not sure if I am included in the Class?

If you are still not sure whether you are included, you can get more information at www.ipodlawsuit.com, or get free help by calling or writing the lawyers in this case, at the phone number or address listed in Question 12.

**THE CLAIMS IN THE LAWSUIT**

## 5. What are Plaintiffs asking for?

Plaintiffs are seeking to recover money for themselves and the Class based on Plaintiffs' claim that Apple's software updates violated federal and state antitrust laws and caused iPod prices to be higher than they otherwise would have been. Apple claims that Plaintiffs should recover no money because it has not violated the law and the software updates challenged by Plaintiffs improved its products, were good for consumers, and did not increase iPod prices.

**6. Is there any money available now?**

No money is available now because the Court has not yet decided whether Apple has done anything wrong, and the two sides have not settled the case. There is no guarantee that any money will ever be available. If it is, you will be notified about your rights regarding any recovery.

### YOUR RIGHTS AND OPTIONS

You have to decide whether to stay in the Class or ask to be excluded before the trial, and you have to decide this prior to **July 30, 2012**.

**7. What happens if I do nothing at all?**

If you do not do anything now you will remain a member of the Class. If you stay in the Class and the Plaintiffs obtain benefits, either as a result of a trial or a settlement, you will be notified about how to seek a share of those benefits. If you do nothing, you will be bound by the Court's orders and will lose any right you may have to sue Apple over the claims in this case. You will also be legally bound by all of the Orders the Court issues and judgments the Court makes in the Class Action, including any judgment against Plaintiffs and in favor of Apple.

**8. Why would I ask to be excluded?**

If you would like to pursue your own lawsuit or claim against Apple for the claims in this case, do not want to be bound by what the Court does in this case, or if you simply do not want to be part of the Class pursuing claims against Apple, you need to ask to be excluded from the Class. If you exclude yourself from the Class – which also means to remove yourself from the Class, and is sometimes called "opting-out" of the Class – you will not be legally bound by the Court's judgments in this Class Action, and will keep any right you may have to later sue Apple for the claims being made in the case. If you exclude yourself, you also will not get any benefits from this lawsuit if there are any.

**9. How do I ask the Court to exclude me from the Class?**

To ask to be excluded, you must send an "Exclusion Request" in the form of a letter sent by mail to Apple iPod iTunes Antitrust Litigation, c/o Rust Consulting, Inc., P.O. Box 8038, Faribault, MN 55021-9438, stating that you want to be excluded from *In re Apple iPod iTunes Antitrust Litigation*. Your "Exclusion Request" should include your name and address. To be valid, your letter asking to be excluded from the Class must be signed and postmarked no later than **July 30, 2012**.

### THE LAWYERS REPRESENTING YOU

**10. Do I have a lawyer in this case?**

The Court has appointed Robbins Geller Rudman & Dowd LLP as Class Counsel in this case. The Court has determined that Robbins Geller Rudman & Dowd LLP is qualified to represent you and all other Class Members. You will not be charged for these lawyers. The lawyers handling the case are experienced in handling similar cases. More information about the law firm is available at www.rgrdlaw.com.

**11. How will the lawyers be paid?**

If Class Counsel recovers any money for the Class, they will ask the Court for payment of their fees and reimbursement of their litigation costs. You will not have to pay these fees and expenses out of your own pocket. If the Court grants Class Counsel's request, the fees and expenses will be deducted from any money obtained for the Class or paid separately by Apple.

### GETTING MORE INFORMATION

**12. Where can I get more information?**

If you want more detailed information, you may visit the website www.ipodlawsuit.com, where you will find the Court's Order Granting Plaintiffs' Motion for Class Certification and other case-related documents or you may call the Notice Administrator at 1-877-760-8875.

| Class Counsel: | Counsel for Defendant Apple: |
|---|---|
| Bonny E. Sweeney | Robert A. Mittelstaedt |
| Thomas R. Merrick | Craig E. Stewart |
| Alexandra S. Bernay | David C. Kiernan |
| Carmen A. Medici | JONES DAY |
| ROBBINS GELLER RUDMAN & DOWD LLP | 555 California Street, 26th Floor |
| 655 W. Broadway, Suite 1900 | San Francisco, CA 94104 |
| San Diego, CA 92101 | Telephone: 415-626-3939 |
| Telephone: 619-231-1058 | |

Dated: March 29, 2012

BY ORDER OF THE COURT
Honorable Chief Judge James Ware
United States District Court
for the Northern District of California

Apple iPod iTunes Antitrust Litigation
c/o Rust Consulting, Inc.
P.O. Box 8038
Faribault, MN 55021-9438

**IMPORTANT COURT DOCUMENT**

EXHIBIT 8

To: <<class member email address>>

Name: _____

Claimant ID: _____

From: Apple iPod Antitrust Administrator

Re: *In re Apple iPod iTunes Antitrust Litigation*

*(Email Body:)*

United States District Court for the Northern District of California
Case No. C-05-00037-JW

## NOTICE OF PENDENCY OF CLASS ACTION

TO:     ALL PERSONS OR ENTITIES IN THE UNITED STATES WHO PURCHASED ONE OF THE LISTED IPOD MODELS
        DIRECTLY FROM APPLE BETWEEN SEPTEMBER 12, 2006 AND MARCH 31, 2009 (THE "CLASS").

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.
YOUR RIGHTS MAY BE AFFECTED BY PROCEEDINGS IN THIS LITIGATION.

This Notice has been sent to you pursuant to an Order of the United States District Court for the Northern District of California. The purpose of this Notice is to inform you that you have been identified as a potential member of the Class described above so that you can decide whether to remain a Class Member or to exclude yourself or your company from the Class. If you want to stay in this Class Action, you need not do anything now, and you will be bound by the Court's rulings in the lawsuit. If you do not want to participate in this Class Action or have your rights affected by it, you must request exclusion as described in this Notice by **July 30, 2012**.

*This is not a solicitation from a lawyer.*

This Notice is not an expression of any opinion by the Court about the merits of any of the claims or defenses asserted by any party to this litigation. The Court has not decided whether Defendant Apple Inc. ("Apple") has done anything wrong. Apple has not been ordered to pay any money. There has been no settlement.

## I.     SUMMARY OF THE LITIGATION

Apple sells iPods directly to customers through its online and retail stores and directly to Apple authorized resellers. The lawsuit claims that Apple violated federal and state laws by issuing software updates in 2006 for its iPod that prevented iPods from playing songs not purchased on iTunes. The lawsuit claims that the software updates caused iPod prices to be higher than they otherwise would have been. Apple denies that it did anything wrong and asserts that the software updates challenged by Plaintiffs improved its products, were good for consumers, and had no effect on iPod prices. The Court has not yet decided whether Plaintiffs or Apple is correct.

On November 22, 2011, the Court allowed the case to proceed as a class action for all persons and entities that purchased certain iPod models between September 12, 2006 and March 31, 2009. The specific models of iPods covered by the Class Definition can be found at www.ipodlawsuit.com.

The Court appointed Plaintiffs as Class representatives, appointed Robbins Geller Rudman & Dowd LLP as Class Counsel, and directed that this Notice be sent to potential Class Members informing them of the pending litigation.

## II.    EXAMINATION OF PAPERS

This Notice is just a summary and does not describe all of the details of the litigation. For more details about the matters discussed in this Notice, you may desire to review certain documents related to the litigation. Several documents, including

the Complaint, Apple's Answer to the Complaint and the Court's Order certifying the Class are available for review at www.ipodlawsuit.com. The documents filed in the case may also be inspected during business hours at the office of the Clerk of the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, CA 94102, or by visiting the Court's Public Access to Court Electronic Records ("PACER") website at https://ecf.cand.uscourts.gov/cand/index.html.

Additional information can also be obtained from the Notice Administrator, Rust Consulting, Inc. by calling 1-877-760-8875.

## III. TO REQUEST EXCLUSION FROM THE LITIGATION

You have to decide whether to stay in the Class or ask to be excluded by **July 30, 2012**.

You do not need to do anything to be a member of the Class and to participate in any recovery the Plaintiffs may obtain for the Class and you will not incur any cost for doing so. As a Class Member, you will be represented by Plaintiffs and Class Counsel. However, if you choose, you may enter an appearance through your own counsel, at your expense. If you remain a member of the Class, you may not be permitted to pursue an individual action against Apple regarding the subject matter of this litigation.

If you do not want to remain a Class Member, if you do not want to be bound by what the Court does, or if you want to retain your right to pursue your own independent action against Apple for the claims in this case at your own expense, you must ask to be excluded from this Class Action. To ask to be excluded (which is the same as removing yourself from the Class or "opting-out"), you must send an "Exclusion Request" in the form of a letter sent by mail, to the Notice Administrator at Apple iPod iTunes Antitrust Litigation, c/o Rust Consulting, Inc., P.O. Box 8038, Faribault, MN 55021-9438 stating that you want to be excluded from *In re Apple iPod iTunes Antitrust Litigation*. Your "Exclusion Request" should include your name and address. To be valid, your letter asking to be excluded from the Class must be signed and postmarked no later than **July 30, 2012**.

If you properly submit a timely request to be excluded from the Class, you will not be bound by what the Court does and will not be eligible to receive any benefits that Plaintiffs may ultimately obtain in the case through judgment or settlement. You will, however, retain whatever legal rights you may have against Apple with regard to the claims that are the subject of this litigation.

### DO NOT CALL THE COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE.

Dated: March 29, 2012

BY ORDER OF THE COURT
Honorable Chief Judge James Ware
United States District Court
for the Northern District of California