William A. Isaacson (Admitted Pro Hac Vice)
wisaacson@bsfllp.com
Karen L. Dunn (Admitted Pro Hac Vice)
kdunn@bsfllp.com
Martha L. Goodman (Admitted Pro Hac Vice)
mgoodman@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

John F. Cove, Jr. (State Bar No. 212213)
jcove@bsfllp.com
Meredith R. Dearborn (State Bar No. 268312)
mdearborn@bsfllp.com
Maxwell V. Pritt (State Bar No. 243155)
mpritt@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460

David C. Kiernan (State Bar No. 215335)
dkiernan@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:  (415) 626-3939
Facsimile:  (415) 875-5700

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| The Apple iPod iTunes Antitrust Litigation | Case No. 05-cv-00037-YGR<br><br>**APPLE INC.'S BRIEF AND INDEX RELATING TO ILLEGALITY AND CHANGING CASE THEORIES**<br><br>**Judge:  Hon. Yvonne Gonzalez Rogers** |

In response to the Court's order (Pre-trial Order No. 4 ¶ 5(c) (Dkt. 866)), Apple hereby submits this brief, attached index, and accompanying highlighted documents that show that the legality of RealNetworks, Inc.'s and other hacker's conduct has been litigated in this case and provides information about Plaintiffs' changing theories of the case. Hearing Tr. 81:8–23.[1]

## I. BACKGROUND

Before the launch of the iTunes Store, Apple entered into contracts with record labels to offer digital music. The contracts required Apple to offer copyrighted music in a protected format and implement usage rules. Apple agreed to limit distribution of the music files through the use of FairPlay, an encryption-based digital rights management ("DRM") solution. Agreed Undisputed Facts ## 9, 10 (Dkt. 857, at ECF pp. 2–3). FairPlay DRM is an "access control" mechanism under the DMCA because it controls access to a copyrighted work (the music); thus, circumvention of FairPlay violates the DMCA. 17 U.S.C. § 1201(a)(1)(A).

From the very beginning, FairPlay was hacked repeatedly by programs that stripped FairPlay from iTS music, facilitating free, unlimited distribution of the music, and prompting concern from the record labels—who could withdraw their content from iTunes if Apple did not adequately protect their copyrighted content. Declaration of David C. Kiernan ("Kiernan Decl.") Ex. 28 (Apple's Mot. for Summ. J., Dkt. 473, ECF pp. 12–13 (Jan. 18, 2011)); Ex. 29 (Robbin Decl. ISO Apple's Mot. for Summ. J., Dkt. 467, ¶¶ 23–25, 30).[2] Modifying FairPlay in a way that circumvents or removes its access control mechanism is illegal under the DMCA. 17 U.S.C. § 1201(a)(1)(A).

Some of the hackers that circumvented FairPlay were QTFairUse, PlayFair, and Hymn. Harmony was among them. In July 2004, when it released Harmony, RealNetworks stated that Harmony could convert any music protected by any DRM—which would include iTS music protected by FairPlay—to the DRM format supported by the user's device. As Apple's expert

---

[1] Attached hereto as Exhibit A is an index of the relevant documents referred to in this brief. Each of these documents is attached to the declaration of David C. Kiernan, filed herewith. The documents have been highlighted and excerpted to draw attention to the relevant language. Additionally, the rows highlighted in grey indicate that the document pertains to Plaintiffs' changing theory of the case.

[2] All Exhibit references are to the Kiernan Decl. unless otherwise noted.

explained, to do this, Harmony had to have first removed FairPlay from iTS content. Ex. 39 ¶¶ 68-70, Ex. 40, 80:17-23.

In July 2004, when RealNetworks released Harmony, Apple announced that it considered Harmony a hack that potentially violated the DMCA. Ex. 1 (TX 2139), Ex. 2 (TX 2141) and Ex. 5 (TX 2146). Apple also internally questioned the legality of RealNetworks' conduct, asking "[how] can they put songs into FairPlay without reverse engineering our proprietary encryption algorithm?", surmising that RealNetworks may have used one of the DRM-stripping hacks "that has been out there," and noting that "[w]e will be actively working with legal to review this once we get our hands on it." Ex. 1.

## II. THE LEGALITY OF REALNETWORKS' AND OTHER HACKERS' CONDUCT HAS BEEN LITIGATED IN THIS CASE

In their initial Consolidated Complaint, Plaintiffs alleged that Apple viewed RealNetworks as a hacker and investigated whether it violated the DMCA and other laws. Ex. 7, ¶ 53 (Dkt. 107). In their Amended Complaint, Plaintiffs alleged that RealNetworks "independently analyzed the firmware within the iPod and was able to discern the required extra software code added by Apple to make downloaded songs playable on the iPod." Ex. 16, ¶ 66 (Dkt. 322, TX 2593). Plaintiffs again put the legality of RealNetworks' conduct at issue by claiming that RealNetworks "maintained that its conduct was legal." *Id*. ¶ 53. In addition, Plaintiffs stated that iTunes 7.0 was "intended to prevent JHymn *and other programs* from being used to create interoperability between Audio Downloads purchased from iTS and non-Apple Portable Digital Media Players." *Id* ¶ 66 (emphasis added). In other words, Plaintiffs challenged any updates that prevented any program—including JHymn and Harmony—that circumvented FairPlay and enabled the free, unlimited distribution of iTS copyrighted music in contravention of the DMCA.

In its Answer, Apple raised an affirmative defense that the challenged updates were justified because they stopped programs that violated the DMCA by circumventing or stripping FairPlay:

Defendant Apple has at all times and in all relevant manners acted

> reasonably, as necessary to serve legitimate business purposes …
>
> The updates challenged by plaintiffs stopped illegal hacks that circumvented Apple's antipiracy technology …
>
> Almost from inception, hackers attacked FairPlay seeking to circumvent it and evade the Labels' usage restrictions. The hackers published programs on the Internet that allowed users to strip or otherwise circumvent the content protection. By circumventing FairPlay, these hackers violated the federal Digital Millennium Copyright Act. *See, e.g.*, 17 U.S.C. § 1201(a)(2)(A) & 1201(b)(1)(A) (prohibiting any technology designed "to circumvent[] a technological measure that effectively controls access" to a copyrighted work or otherwise protects rights of copyrights owners).
>
> Apple released updates to stop such illegal hacks. Had it not done so, its ability to continue offering music to consumers would be jeopardized[.]

Ex. 22, at 20:5–11 (Dkt. 390).

Plaintiffs' counsel vigorously pursued discovery regarding DMCA issues. Although Apple initially objected to Plaintiffs' broad document request seeking "All documents discussing the Digital Millennium Copyright Act" (Ex. 11, at 8:27), Apple ultimately agreed to produce, and did produce, non-privileged documents related to RealNetworks, Harmony, and programs that circumvented FairPlay. Exs. 17-21, Kiernan Decl. ¶¶ 19, 24. It also agreed to produce and did produce documents that Plaintiffs' counsel said he needed to rebut Apple's DMCA defense. Ex. 17, Kiernan Decl., ¶ 24. In short, the documents Apple produced in response to Plaintiffs' requests are directly relevant to possible DMCA violations because they illustrate Apple's analysis of, responses to, and deliberations regarding programs that compromised the integrity of Apple's FairPlay DRM technology, including the DMCA implications of such programs. *Id.*

In addition to seeking documents, Plaintiffs' counsel asked Apple representatives, including Jeffrey Robbin, Eddy Cue, and Steve Jobs, about Apple's investigation of whether Harmony violated the DMCA. Exs. 23, 27, 36. Apple allowed these questions without objecting on relevance grounds. And as Plaintiffs' counsel conceded at the hearing, Apple's privilege log identifies privileged documents concerning its investigation of whether Harmony violated the DMCA. *See* Ex. 13.

Furthermore, both parties also provided technical expert testimony regarding whether RealNetworks' Harmony was a DRM-stripping hack that stripped FairPlay to allow users to play

1  iTS music on non-iPod devices. Ex. 39 ¶¶ 68–70 (Kelly Report), Ex. 38, ¶ 29–30 (Martin
2  Report), Ex. 41, ¶¶ 13–14 (Martin Rebuttal Report). Plaintiffs also deposed Apple's expert at
3  length regarding the basis for his opinion that Harmony stripped FairPlay DRM from digital
4  music files, conduct that would violate the DMCA. Ex. 40.

5       As the Court found in granting summary judgment as to iTunes 4.7, it was a legitimate
6  product improvement to strengthen FairPlay by making the system more difficult to hack. Ex. 37
7  (Dkt. 627, at ECF pp. 8–9). In addition, Apple argued on summary judgment, and will argue at
8  trial, that one of the several legitimate purposes of the updates to FairPlay in iTunes 7.0 and 7.4,
9  like 4.7, was to stop hacks that did or in the future could circumvent FairPlay. Ex. 28 (Dkt. 473)
10 at ECF pp. 15–16; Ex. 35 (Dkt. 546) at ECF pp. 10–12 and 16–17. In these summary judgment
11 papers, Apple also explained that hacker programs that removed FairPlay were illegal under the
12 DMCA. Ex. 28 at ECF pp. 21–22 (arguing that the "Sherman Act does not impose liability for
13 combating conduct illegal under other laws," citing cases and the DMCA). The cases Apple cited
14 in support of its summary judgment arguments are the same cases Apple cited in support of its
15 DMCA jury instruction. *Compare* Ex. 28 at ECF p. 21 (Apple's Mot. for Summ. J.) *with* Ex. 42
16 (Dkt. 847) at ECF pp. 96–97 (Apple's Proposed Jury Instruction No. 38). Plaintiffs failed to
17 assert a waiver argument in opposition to Apple's summary judgment brief. Ex. 31 (Dkt. 514) at
18 ECF pp. 22.

19 **III.   PLAINTIFFS' CHANGING THEORY OF THE CASE**

20      After the Court consolidated the relevant cases, on April 19, 2007, Plaintiffs filed a
21 Consolidated Complaint, basing their tying and monopolization claims in part on the fact that
22 iTunes Music Store and the iPod are an integrated system. Ex. 7, ¶ 43.

23      On May 15, 2009, the Court granted Apple's motion for judgment on the pleadings as to
24 Plaintiffs' *per se* tying claim, reasoning that music from the iTMS is separately available from the
25 iPod and that the fact of a "technological interrelationship" between iTMS music and the iPod did
26 not state a *per se* tying claim. Ex. 10, at ECF pp. 7–9. On October 30, 2009, the Court dismissed
27 Plaintiffs' rule of reason tying claim on the same grounds, reasoning again that the "the increased
28 convenience of using the two products [iTMS music and iPods] together due to technological

1   compatibility does not constitute anticompetitive conduct under either per se or rule of reason
2   analysis." Ex. 14, at ECF p. 9–10.  On December 21, 2009, the Court asked Plaintiffs to file an
3   amended complaint "that does not depend upon allegations of tying as the anticompetitive
4   conduct upon which they base their monopoly claims." Ex. 15, at ECF p. 11.

5   On January 26, 2010, Plaintiffs filed the Amended Consolidated Complaint ("ACC"),
6   which is the current operative complaint. Ex. 16 (Dkt. 322).  Plaintiffs now allege that "in order
7   to maintain its monopoly power in the market for Audio Downloads and the market for Digital
8   Media Players, Apple has used software updates to shut out competitors and cut off their access to
9   the marketplace." *Id*. ¶ 52.  Plaintiffs further allege, "Beginning in October 2004, Apple updated
10  its iPod and iTunes software to prevent songs downloaded from RealNetworks' music store from
11  being played on iPods," *id*. ¶ 60; that "Apple immediately began issuing software updates to
12  prevent iTS files that were made interoperable with other Portable Digital Media Players using
13  JHymn software from being played," *id*. ¶ 63; that "again in September 2006, Apple released
14  iTunes 7.0 intended to prevent JHymn and other programs from being used to create
15  interoperability between Audio Downloads purchased from iTS and non-Apple Portable Digital
16  Media Players," *id*. ¶ 66; and that "Apple continually redesigned its software even though it
17  admitted that doing so served no genuine antipiracy purpose," *id*. ¶ 67.  In Plaintiffs' renewed
18  motion for class certification, filed January 25, 2011, they confirmed that their theory of the case
19  changed course.  Ex. 30, at ECF pp. 11–12.

20  Plaintiffs have also changed course by claiming that they no longer rely on the allegations
21  in their complaint that iTunes 7.0 had the purpose of stopping DRM-stripping hacks like JHymn,
22  PlayFair, and QTFairUse. *Compare* Exs. 24–26 (December 2010 responses to Apple's
23  Interrogatory # 22; objecting, but not disclaiming reliance on paragraphs 64–66), *with* Exs. 32–34
24  (March 2011 amendments to interrogatory responses, claiming that they "no longer rely on these
25  allegations").  As Apple stated at the recent pretrial conference, the admission in the ACC that
26  iTunes 7.0 was intended to stop DRM-stripping hacks is case-dispositive, because it is clear that
27  stopping illegal activity of circumventing hacks is a legitimate business purpose.
28

| | |
|---|---|
| Dated: November 4, 2014 | Respectfully submitted, |
| | Jones Day |
| | By: /S/ *David C. Kiernan* |
| | David C. Kiernan |
| | Counsel for Defendant<br>APPLE INC. |

SFI-620875953

# Exhibit A

Exhibit A
APPLE INC.'S BRIEF AND INDEX RELATING TO ILLEGALITY AND
CHANGING CASE THEORIES

| Kiernan Dec. Ex. | Date | Document Title and Description |
|---|---|---|
| 1 | 25-Jul-04 | **Trial Exhibit 2139** (internal Apple email querying whether Harmony was legal). |
| 2 | 26-Jul-04 | **Trial Exhibit 2141** (internal Apple email proposing statement regarding Harmony's release; details that Apple is investigating Harmony's legality under the DMCA and other laws). |
| 3 | 26-Jul-04 | **RealNetworks Breaks Apple's Hold on iPod** (CNETNews.com article announcing release of Harmony as "RealNetworks' iPod hack" and addressing legal implications of Harmony's DRM technology). |
| 4 | 28-Jul-04 | **Universal Music Group Press Release Regarding RealNetworks' Harmony** (official press release stating that Universal Music Group will "not support any service or system that doesn't respect" the intellectual property rights of creators of technical systems or the rights of copyright owners.). |
| 5 | 29-Jul-04 | **Trial Exhibit 2146** (official Apple press release after Harmony's release; states that Apple is "investigating the implications of their actions under the DMCA and other laws."). |
| 6 | 21-Mar-07 | **Order by J. Ware Consolidating Related Cases** (Dkt. 106) (consolidated three related cases and ordering lead plaintiffs to file a Consolidated Complaint) |
| 7 | 19-Apr-07 | **Consolidated Complaint** (Dkt. 107) (basing tying and monopolization claims in part on Apple's integrated system: "For the purposes of this Consolidated Complaint, the tied product is the iPod, and the tying product is FairPlay-DRM music files purchased from the Music Store incapable of being played by other Digital Music Players," *id.* ¶ 43; discussing Apple's announcement re: Harmony, *id.* ¶ 53, and alleging, "True to its threat, Apple updated its iPod software to prevent songs downloaded from RealNetworks music store (or any other Online Music store) from being played on iPods. Thus, Apple continues to impede competition, and forces iPod users who wish to buy music online to do so exclusively from Apple's Music Store," *id.* ¶ 54). |
| 8 | 21-Jul-08 | **Pls.' Notice of Mot. and Mot. for Class Cert. and Appointment of Class Counsel** (Dkt. 165, at 9) ("Given Apple's overwhelming market power in the online recordings markets, Plaintiffs allege that Apple's unremitting policy of incompatibility constitutes an unlawful tying arrangement in violation of Section 1 of the Sherman Act.") |

**Exhibit A**
**APPLE INC.'S BRIEF AND INDEX RELATING TO ILLEGALITY AND CHANGING CASE THEORIES**

| Kiernan Dec. Ex. | Date | Document Title and Description |
|---|---|---|
| 9 | 2-Mar-09 | **Pls.' Opp'n to Def.'s Mot. for J. on the Pleadings** (Dkt. 209, at 7) ("Apple achieved this technological tie by encrypting the iTunes files with digital rights management ("DRM") technology called "FairPlay," so that the iTunes files could be portably played only on the portable digital media players manufactured by Apple (collectively, "iPod"). Complaint, ¶¶41-44. Plaintiffs contend that Apple thereby necessarily constrained the iTunes customer's choice of portable digital media players."). |
| 10 | 15-May-09 | **Order Granting in Part Def.'s Mot. for J. on the Pleadings** (Dkt. 213, at 7-8) (dismissing per se tying claim under Section 1 and reasoning that music from the iTunes Music Store ("iTMS") is separately available from the iPod, and that the fact of a "technological interrelationship" between iTMS music and the iPod—i.e., the integrated nature of these products— did not state a *per se* tying claim). |
| 11 | 20-Jul-09 | **Defendant Apple Inc.'s Responses to Plaintiffs' Am. First Set of Requests for Production of Documents**, at 8-9, 16-17, 20 (responding to document requests for those "discussing the Digital Millennium Copyright Act"; and relating to a "United States competitor's actual, anticipated, or potential actions relating to DRM in response to the Ipod or Apple's iTunes Store"; also responding to all document requests related to "RealNetworks' Harmony technology"). |
| 12 | 27-Aug-09 | **Pls.' Opp'n to Def.'s Mot. for J. on the Pleadings as to Pls.' Rule of Reason Tying Claim** (Dkt. 230, at 3)("Apple acted to maintain the tie by issuing software updates designed specifically to destroy any possibility that competing manufacturers could sell a portable digital media player that was interoperable with iTMS files."). |
| 13 | 16-Oct-09 | **Apple's Privilege Log** (detailing privileged documents related to Harmony and FairPlay hacks). |
| 14 | 20-Oct-09 | **Order Granting Def.'s Mot. for J. on the Pleadings** (Dkt. 274, at 9) (dismissing Plaintiffs' rule of reason tying claim on the same grounds as dismissal of *per se* tying claim, reasoning again that the "the increased convenience of using the two products [iTMS music and iPods] together due to technological compatibility does not constitute anticompetitive conduct under either per se or rule of reason analysis"). |

**Exhibit A**
**APPLE INC.'S BRIEF AND INDEX RELATING TO ILLEGALITY AND CHANGING CASE THEORIES**

| Kiernan Dec. Ex. | Date | Document Title and Description |
|---|---|---|
| 15 | 21-Dec-09 | **Order Decertifying Classes Without Prejudice to Being Renewed** (Dkt. 303, at 2, 11) (sua sponte decertifying the class until "Plaintiffs clarify what actions they allege Apple took to maintain monopoly power beyond initial technological relationships between its products"; asking Plaintiffs to file an amended complaint "that does not depend upon allegations of tying as the anticompetitive conduct upon which they base their monopoly claims"). |
| 16 | 26-Jan-10 | **Amended Consolidated Complaint** (Dkt. 322) (TX 2593)<br><br>As to legality of Harmony, alleging, "On July 26, 2004, RealNetworks . . . announced that songs sold through its online store could be played on the iPod . . . RealNetworks had independently analyzed the firmware within the iPod and was able to discern the required extra software code added by Apple to make downloaded songs playable on the iPod. . . . RealNetworks was able to convert their Helix DRM into the necessary DRM so that Audio Downloads sold through RealNetworks' online store could be playable on Apple's iPod. This technology was known as Harmony. RealNetworks maintained that its conduct was legal, ¶ 53, also stating that the purpose of iTunes 7.0 was to defeat DRM-stripping hacks PlayFair, QTFairUse, and JHymn, ¶ 66.<br><br>As to new theory of liability, alleging: "in order to maintain its monopoly power in the market for Audio Downloads and the market for Digital Media Players, Apple has used software updates to shut out competitors and cut off their access to the marketplace." ¶ 52. Plaintiffs further alleged, "beginning in October 2004, Apple updated its iPod and iTunes software to prevent songs downloaded from RealNetworks' music store from being played on iPods," ¶ 60; that "Apple immediately began issuing software updates to prevent iTS files that were made interoperable with other Portable Digital Media Players using JHymn software from being played," ¶ 63; that "again in September 2006, Apple released iTunes 7.0 intended to prevent JHymn and other programs from being used to create interoperability between Audio Downloads purchased from iTS and non-Apple Portable Digital Media Players" and that "Apple issued software updates intended to prevent the use of other similar programs including QTFairUse and PlayFair," ¶ 66; and that "Apple continually redesigned its software even though it admitted that doing so served no genuine antipiracy purpose," *id.* ¶ 67. |
| 17 | 23-Apr-10 | **Letter from Thomas R. Merrick to David C. Kiernan** (Plaintiffs stating that "one of Apple's primary defenses is that the so-called 'hacks' violated the DMCA"). |

**Exhibit A**
**APPLE INC.'S BRIEF AND INDEX RELATING TO ILLEGALITY AND CHANGING CASE THEORIES**

| Kiernan Dec. Ex. | Date | Document Title and Description |
|---|---|---|
| 18 | 27-Apr-10 | **Letter from David C. Kiernan to Thomas R. Merrick** (Apr. 27, 2010) (explaining why Plaintiffs do not need access to FairPlay source code because "there is also no dispute that the hacker programs at issue circumvented FairPlay.  Thus, those programs violated the DMCA."). |
| 19 | 3-May-10 | **Letter from Thomas R. Merrick to David C. Kiernan** (May 3, 2010) ("Plaintiffs disagree with Apple's cursory and universal position that each [hack] violated the DMCA and therefore Apple was always justified in shutting them down."). |
| 20 | 15-Jul-10 | **Letter from Thomas R. Merrick to David C. Kiernan** (July 15, 2010) (reflecting emerging agreement from Apple to provide all responsive, non-privileged documents related to hacks) |
| 21 | 26-Jul-10 | **Letter from David C. Kiernan to Thomas R. Merrick** (July 26, 2010) (agreeing to produce all responsive, non-privileged documents related to hacks). |
| 22 | 24-Sep-10 | **Apple's First Am. Answer and Defenses to Pls.' Consolidated Compl.** (Dkt. 390, at p. 19-20) (detailing third affirmative defense, that, *inter alia*, the "updates challenged by plaintiffs stopped illegal hacks" and that "by circumventing FairPlay, these hackers violated the Digital Millennium Copyright Act. See 17 U.S.C. 1201(a)(2)(A) & 1201(b)(1)(A)."). |
| 23 | 3-Dec-10 | **Excerpts from the Deposition of Jeffrey Robbin,** taken December 3, 2010 (discussing Apple's response to hacks, including notify[ing] our legal department so that they could start issuing cease-and-desist type notifications" and asking whether the witness knew what the DMCA was and whether Apple sent a cease-and-desist letter to RealNetworks). |
| 24 | 16-Dec-10 | **Plaintiff Somtai Troy Charoensak's Response to Apple Inc.'s First Interrogatories** (objecting to Apple's Interrogatory # 22, which asked to "Please identify all facts that YOU contend support your position that the software programs referred to in paragraphs 64-66 of the Complaint made iTS files inoperable with Portable Digital Media Players other than the iPod) |

**Exhibit A**
**APPLE INC.'S BRIEF AND INDEX RELATING TO ILLEGALITY AND CHANGING CASE THEORIES**

| Kiernan Dec. Ex. | Date | Document Title and Description |
|---|---|---|
| 25 | 16-Dec-10 | **Plaintiff Marianna Rosen's Response to Apple Inc.'s First Interrogatories** (objecting to Apple's Interrogatory # 22, which asked to "Please identify all facts that YOU contend support your position that the software programs referred to in paragraphs 64-66 of the Complaint made iTS files inoperable with Portable Digital Media Players other than the iPod) |
| 26 | 16-Dec-10 | **Plaintiff Melanie Tucker's Response to Apple Inc.'s First Interrogatories** (objecting to Apple's Interrogatory # 22, which asked to "Please identify all facts that YOU contend support your position that the software programs referred to in paragraphs 64-66 of the Complaint made iTS files inoperable with Portable Digital Media Players other than the iPod) |
| 27 | 17-Dec-10 | **Excerpts from the Deposition of Eddy Cue**, taken December 17, 2010 (questions & answers on legality of hacks under the DMCA). |
| 28 | 18-Jan-11 | **Apple's Renewed Mot. for Summ. J.** (Dkt. 473, at 15) (arguing that stopping hacks, which "were themselves illegal under the DMCA," was a legitimate business justification and that the "Sherman Act does not impose liability for combating conduct illegal under other laws"). |
| 29 | 18-Jan-11 | **Declaration of Jeffrey Robbin in Support of Defendant's Renewed Motion for Summary Judgment** (excerpted) (describing hacks like QTFairUse, Hymn, and FairPlay). |
| 30 | 25-Jan-11 | **Pls.' Notice of Mot. and Renewed Mot. for Class Cert. and App't of Lead Class Counsel** (Dkt. 486) ("In accordance with the Court's directive, on January 26, 2010, Plaintiffs filed an Amended Consolidated Complaint … alleging violations of Section 2 of the Sherman Act and California's UCL statute that are *not* premised on the technological tie between the iPod and digital audio files purchased through the iTunes Store … The ACC instead focuses on Apple's affirmative and pretextual use of software updates beginning in 2004 to maintain or attempt to maintain its monopolies in the digital audio file and digital media player markets."). |

**Exhibit A**
**APPLE INC.'S BRIEF AND INDEX RELATING TO ILLEGALITY AND CHANGING CASE THEORIES**

| Kiernan Dec. Ex. | Date | Document Title and Description |
|---|---|---|
| 31 | 28-Feb-11 | **Plaintiffs' Opposition to Apple's Renewed Mot. for Summ. J.** (Dkt. 514, at 22-23) (failing to argue that Apple's has waived a legitimate business justification defense based on the legality of Harmony.). |
| 32 | 07-Mar-11 | **Plaintiff Mariana Rosen's Additional Objections and Responses to Defendant Apple Inc.'s First Interrogatories** (in response to Apple's Interrogatory # 22, stating, "Plaintiff no longer relies on these allegations," referring to Paragraphs 64 –66 of Amended Consolidated Complaint (Dkt. 322)). |
| 33 | 07-Mar-11 | **Plaintiff Melanie Tucker's Additional Objections and Responses to Defendant Apple Inc.'s First Interrogatories** (in response to Apple's Interrogatory # 22, stating, "Plaintiff no longer relies on these allegations," referring to Paragraphs 64 –66 of Amended Consolidated Complaint (Dkt. 322)). |
| 34 | 07-Mar-11 | **Plaintiff Somtai Troy Charoensak's Additional Objections and Responses to Defendant Apple Inc.'s First Interrogatories** (in response to Apple's Interrogatory # 22, stating, "Plaintiff no longer relies on these allegations," referring to Paragraphs 64 –66 of Amended Consolidated Complaint (Dkt. 322)). |
| 35 | 28-Mar-11 | **Apple's Reply In Support of its Renewed Mot. for Summ. J.** (Dkt. 546, at 10-13 and 16-17) (further argument relating to Apple's business justification for updating FairPlay after the release of Harmony in reply to Plaintiffs' summary judgment opposition, stating, among other things, "Blocking hacks also benefitted consumers because, as Plaintiffs concede, the hacks violated the DMCA."). |
| 36 | 12-Apr-11 | **Excerpts from the Deposition of Steve Jobs**, taken April 12, 2011 (asking whether Apple concluded that RealNetworks's Harmony technology was illegal or whether Apple sent RealNetworks a cease-and-desist letter or to other entities that stripped DRM). |
| 37 | 19-May-11 | **Order Granting in Part and Denying in Part Def.'s Mot. for Summ. J.** (Dkt. 627, at 8) (finding no dispute of fact that iTunes 4.7 was a "genuine improvement" designed to respond to "hackers who had circumvented Defendant's previous anti-piracy software"). |

Exhibit A
APPLE INC.'S BRIEF AND INDEX RELATING TO ILLEGALITY AND
CHANGING CASE THEORIES

| Kiernan Dec. Ex. | Date | Document Title and Description |
|---|---|---|
| 38 | 8-Apr-13 | **Expert Report of David M. Martin, Jr., Ph.D.** (redacted) (Apr. 8, 2013) (Dkt. 819-2) (stating he has "seen no evidence that RealPlayer and Harmony were ever intended or able to strip FairPlay encryption from any songs purchased through the iTunes Store."). |
| 39 | 19-Jul-13 | **Expert Report of Dr. John P.J. Kelly** (redacted) (July 19, 2013) (Dkt. 819-4) (opining that RealNetworks's Harmony technology must strip DRM, including Apple's FairPlay). |
| 40 | 2-Oct-13 | **Excerpts from the Deposition of Dr. John P.J. Kelly**, taken October 2, 2013 (questions and answers on whether RealNetworks's Harmony technology removed DRM). |
| 41 | 30-Oct-13 | **Rebuttal Expert Report of David M. Martin, Jr., Ph.D.** (redacted) (Oct. 30, 2013) (Dkt. 819-8) (opining that "it defies imagination to think that RealNetworks, with stockholders, corporate lawyers, and a fixed address, would have published software that breaks its competitors' DRM protection schemes. . . . ."). |
| 42 | 22-Oct-14 | **Proposed Jury Instruction No. 38** (Apple's proposed jury instruction relating to the legality of Harmony and Apple's legitimate business justification. The instruction cites the same cases as Apple's 2011 renewed motion for summary judgment). |

SFI-620875952v1