# EXHIBIT 13

# JONES DAY

555 CALIFORNIA STREET • 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE: 415-626-3939 • FACSIMILE: 415-875-5700

Direct Number: (415) 875-5874
michaelscott@jonesday.com

JP010581
825624-605002

October 16, 2009

VIA E-MAIL & U.S. MAIL

Thomas R. Merrick
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301

Re:    The Apple iPod iTunes Anti-Trust Litigation No. C-05-00037-JW (N.D. Cal.)

Dear Tom:

Please find enclosed Apple's first privilege log, current as of October 16, 2009.

Sincerely,

Michael Scott

Enclosures

cc:    David Kiernan

**The Apple iPod iTunes Antitrust Litigation**
No. C-05-00037-JW (N.D. Cal.)
Apple Inc. Privilege Log

| No. | Date | Author/Custodian | Recipients | Description | Privilege |
|---|---|---|---|---|---|
| 1. | 8/20/2004 | Dave Heller | Jeff Robbin | Email reflecting confidential attorney-client communication concerning legal advice and work product regarding RealNetworks' Harmony prepared at the direction of counsel in anticipation of litigation and revealing attorney mental impressions. | ACP & AWP |
| 2. | 10/27/2006 | Laurence Pulgram | Carlyn Clause, Kevin Saul, David Hayes | Confidential attorney-client communication concerning legal advice regarding FairPlay hack. | ACP |
| 3. | 1/5/2004 | Tom Dowdy | Nancy Heinen, Kevin Saul, Eddy Cue, Jeff Robbin | Confidential attorney-client communication concerning legal advice regarding FairPlay hack. | ACP |
| 4. | 1/5/2004 | Tom Dowdy | Nancy Heinen, Kevin Saul, Eddy Cue, Jeff Robbin | Confidential attorney-client communication concerning legal advice regarding FairPlay hack. | ACP |
| 5. | Summer/Fall 2004 | Carlyn Clause | | Research collected by counsel in anticipation of litigation and revealing attorney mental impressions. | AWP |
| 6. | 7/29/2004 | Patricia Benson | Nancy Heinen, Carlyn Clause, Kevin Saul, Russell Frackman, George Borkowski | Confidential attorney-client communication concerning legal advice and work product regarding RealNetworks' Harmony prepared in anticipation of litigation and revealing attorney mental impressions. | ACP & AWP |
| 7. | 8/3/2004 | Patricia Benson | Nancy Heinen, Carlyn Clause, Kevin Saul, Russell Frackman, George Burkowski, Elise Bigelow | Email chain containing confidential attorney-client communication and research concerning legal advice and work product regarding RealNetworks' Harmony prepared in anticipation of litigation and revealing attorney mental impressions. | ACP & AWP |

**The Apple iPod iTunes Antitrust Litigation**
No. C-05-00037-JW (N.D. Cal.)
Apple Inc. Privilege Log

| No. | Date | Author/Custodian | Recipients | Description | Privilege |
|---|---|---|---|---|---|
| 8. | 7/27/2004 through 10/18/2004 | Carlyn Clause | | Notes reflecting confidential attorney-client communication concerning legal advice and work product regarding RealNetworks' Harmony prepared in anticipation of litigation and revealing attorney mental impressions. | ACP & AWP |
| 9. | Summer/Fall 2004 | Carlyn Clause | | Notes regarding RealNetworks' Harmony prepared by counsel in anticipation of litigation and revealing attorney mental impressions. | AWP |
| 10. | Summer/Fall 2004 | Carlyn Clause | | Memorandum regarding RealNetworks' Harmony prepared by counsel in anticipation of litigation and revealing attorney mental impressions. | AWP |
| 11. | 8/13/2004 | Mitchell Silberberg & Knupp LLP | Carlyn Clause | Confidential attorney-client communication concerning legal advice and work product regarding RealNetworks' Harmony prepared in anticipation of litigation and revealing attorney mental impressions. | ACP & AWP |
| 12. | 9/30/2004 | Mitchell Silberberg & Knupp LLP | Carlyn Clause | Confidential attorney-client communication concerning legal advice and work product regarding RealNetworks' Harmony prepared in anticipation of litigation and revealing attorney mental impressions. | ACP & AWP |
| 13. | 9/1/2004 | George Borkowski | Carlyn Clause | Confidential attorney-client communication concerning legal advice and work product regarding RealNetworks' Harmony prepared in anticipation of litigation and revealing attorney mental impressions. | ACP & AWP |

The Apple iPod iTunes Antitrust Litigation
No. C-05-00037-JW (N.D. Cal.)
Apple Inc. Privilege Log

| No. | Date | Author/Custodian | Recipients | Description | Privilege |
|---|---|---|---|---|---|
| 14. | 7/29/2004 | Brian Ross | Russell Frackman, Thomas Lambert, George Borkowski, Pat Benson, Mark Litvack, Marc Mayer | Memorandum concerning legal advice regarding RealNetworks' Harmony prepared in anticipation of litigation and revealing attorney mental impressions. | AWP |
| 15. | 8/4/2004 | George Borkowski | Russell Frackman, Thomas Lambert, Patricia Benson, Brian Ross, Marc Mayer | Memorandum concerning legal advice regarding RealNetworks' Harmony reflecting confidential attorney-client communication prepared in anticipation of litigation and revealing attorney mental impressions. | ACP & AWP |
| 16. | 8/11/2004 | George Borkowski | Russell Frackman, Thomas Lambert, Patricia Benson, Brian Ross, Marc Mayer | Memorandum concerning legal advice regarding RealNetworks' Harmony reflecting confidential attorney-client communication prepared in anticipation of litigation and revealing attorney mental impressions. | ACP & AWP |
| 17. | 8/17/2004 | George Borkowski | | Memorandum concerning legal advice regarding RealNetworks' Harmony reflecting confidential attorney-client communication prepared in anticipation of litigation and revealing attorney mental impressions. | ACP & AWP |
| 18. | 9/1/2004 | George Borkowski | Russell Frackman, Patricia Benson, Marc Mayer | Memorandum concerning legal advice regarding RealNetworks' Harmony reflecting confidential attorney-client communication prepared in anticipation of litigation and revealing attorney mental impressions. | ACP & AWP |

## The Apple iPod iTunes Antitrust Litigation
No. C-05-00037-JW (N.D. Cal.)
Apple Inc. Privilege Log

| No. | Date | Author Custodian | Recipients | Description | Privilege |
|---|---|---|---|---|---|
| 19. | 9/8/2004 | Marc Meyer | Russell Frackman, Patricia Benson, George Borkowski | Memorandum concerning legal advice regarding RealNetworks' Harmony reflecting confidential attorney-client communication prepared in anticipation of litigation and revealing attorney mental impressions. | ACP & AWP |
| 20. | Summer/Fall 2004 | George Borkowski | | Research collected by counsel in anticipation of litigation and revealing attorney mental impressions. | AWP |
| 21. | 10/19/2004 | George Borkowski | Carlyn Clause, Elise Bigelow, Kevin Saul, Russell Frackman, Patricia Benson | Confidential attorney-client communication concerning legal advice and work product regarding RealNetworks' Harmony prepared in anticipation of litigation and revealing attorney mental impressions. | ACP & AWP |
| 22. | 10/15/2004 | Elise Bigelow | Carlyn Clause, Russell Frackman, George Borkowski, Patricia Benson, Tom Lambert, Jason Hunt, Nancy Heinen, Phil Schiller, Steve Jobs | Email chain containing confidential attorney-client communication and research concerning legal advice regarding RealNetworks' Harmony prepared in anticipation of litigation and revealing attorney mental impressions. | ACP & AWP |
| 23. | 8/5/2004 | George Borkowski | | Memorandum regarding RealNetworks' Harmony prepared by counsel in anticipation of litigation and revealing attorney mental impressions. | AWP |
| 24. | 8/16/2004 | Tom Dowdy, Dave Heller, George Borkowski | | Confidential attorney-client communication concerning legal advice regarding RealNetworks' Harmony prepared in anticipation of litigation and revealing attorney mental impressions. | ACP & AWP |

4

**The Apple iPod iTunes Antitrust Litigation**
No. C-05-00037-JW (N.D. Cal.)
Apple Inc. Privilege Log

| No. | Date | Author/Custodian | Recipients | Description | Privilege |
|-----|------|------------------|------------|-------------|-----------|
| 25. | Summer/Fall 2004 | George Borkowski | | Confidential attorney-client communication concerning legal advice regarding RealNetworks' Harmony prepared in anticipation of litigation and revealing attorney mental impressions. | ACP & AWP |

SFI-621149v1

# EXHIBIT 14

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

The Apple iPod iTunes Antitrust Litigation

NO. C 05-00037 JW

**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO THE FIRST CAUSE OF ACTION FOR VIOLATIONS OF SECTION 1 OF THE SHERMAN ACT AND THE FIFTH CAUSE OF ACTION FOR VIOLATIONS OF THE CARTWRIGHT ACT**

_____/

## I.  INTRODUCTION

In this class action, Plaintiffs[1] allege that iTunes and iPods are two products that are sold separately by Apple Inc. ("Defendant"), but that Apple nevertheless violates the prohibitions of Section 1 of the Sherman Act against unlawful tying by forcing purchasers of iTunes to buy iPods because the products are technologically tied to one another.  The issue before the Court is whether these allegations state a cognizable claim under the rule of reason theory of antitrust.  In this Order, the Court finds that Plaintiffs do not state a claim for violation of Section 1 and accordingly, the Court grants judgment on the pleadings in favor of Apple.

## II.  BACKGROUND

Plaintiffs are prosecuting this class action against Apple alleging that the technological compatibility created by Apple between digital music files sold by its iTunes Music Store ("iTMS")

---

[1]   Named Plaintiffs are Melanie Tucker, Mariana Rosen, and Somtai Troy Charoensak.

**United States District Court**
For the Northern District of California

1   and iPod digital music players constitutes an unlawful tying arrangement in violation of Section 1 of

2   the Sherman Act, and violates related state laws.[2]  Originally, Plaintiffs based their Section 1 claims

3   on two alternative theories: *per se* unlawful tying and the rule of reason.[3]  In its May 15, 2009

4   Order,[4] based on undisputed allegations that iTunes files and iPods are sold separately, the Court

5   granted judgment on the pleadings in favor of Apple and dismissed *per se* tying as a permissible

6   basis for Plaintiffs' Section 1 claims.  Specifically, the Court found that there must be a tie between

7   two separate products or services sold in separate markets.[5]  Since the parties had not addressed

8   whether Plaintiffs should be permitted to proceed on a rule of reason theory, the Court invited

9   Defendant to file another Rule 12(c) motion to provide the parties with an opportunity to fully brief

10   the issue.

11        Presently before the Court is Defendant's Motion for Judgment on the Pleadings as to

12   Plaintiffs' Rule of Reason Tying Claim.  (hereafter, "Motion," Docket Item No. 229.)  The Court

13   conducted a hearing on October 5, 2009 and the matter was taken under submission for a decision.

14        **III.  DISCUSSION**

15   **A.**    **Examining the Allegations of the First Amended Complaint and the Answer**

16        The standards by which the Court evaluates a Rule 12(c) motion were articulated in its May

17   15 Order.  (<u>See</u> Order at 3.)  The Court applies those same standards in evaluate the present Motion.

18        Generally, in ruling on a motion for judgment on the pleadings, the allegations of the

19   non-moving party must be accepted as true, while the allegations of the moving party which have

20

21

22       [2] A detailed statement of the factual allegations and procedural history in this case may be found in the Court's December 20, 2006 Order Denying Defendant's Motion to Dismiss (Docket Item No. 27) and in the Court's December 22, 2008 Order Granting Plaintiffs' Motion for Class Certification as to Counts Two, Three, Four, Five, Six, and Seven Only and Appointing Class Counsel; *Sua Sponte* Order Reconsidering Defendant's Motion to Dismiss Count One and Requiring Further Briefing (Docket Item No. 196).

23

24

25       [3] (Second Amended Complaint ¶ 70, hereafter, "SAC," Docket Item No. 77.)

26       [4] (hereafter, "Order," Docket Item No. 213.)

27       [5] (Order at 4 (citing <u>Jefferson Parish Hosp. Dist. No. 2 v. Hyde</u>, 466 U.S. 2, 12 (1984)).)

28   2

1   been denied are assumed to be false.  Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896

2   F.2d 1542, 1550 (9th Cir. 1990).

3          Here, with respect to the relationship between iTunes and iPods, there are no conflicts

4   between the allegations of the First Amended Complaint and the Answer.

5          Plaintiffs allege:

6              Online music purchased from the iTMS is encoded by Apple with Digital
           Rights Management ("DRM") restrictions called "FairPlay."  (SAC ¶ 41.)
7              Use of FairPlay requires iTMS consumers to use Apple's iPod to transfer the
           music directly to a Digital Music Player.  (SAC ¶ 43.)
8              The tied product is the iPod and the tying product is FairPlay-DRM Online
           Music purchased from the iTMS.  Apple deliberately makes the music files purchased
9          from the iTMS incapable of being played by other Digital Music Players.  Thus,
           consumers who have purchased Online Music from Apple will have no choice but to
10         buy an iPod if they want to play their music directly on a Digital Media Player.
           (SAC ¶ 43.)
11             After purchasing Digital Music from the iTMS, consumers are locked into
           making all future Digital Music Player purchases from Apple, because consumers
12         with libraries of iTMS music could not utilize any of the songs they purchased from
           the iTMS with any non-iPod Digital Music Player.  (SAC ¶ 44.)
13              As a result of this activity, Apple has been able to charge supra-competitive
           prices to all purchasers of iPods.  (SAC ¶ 76.)
14
     Defendant alleges:
15
               On April 28, 2003, Apple launched the iTunes Music Store that can be
16         accessed by a computer and that allows users to browse listings of digital recordings.[6]
               Consumers may purchase individual songs from the iTunes Music Store. (Id.)
17             Customers can play music purchased from iTunes Music Store on a computer
           or CD player or on an iPod. (Id.)
18
     Based on the pleadings, it is conceded that iTunes music and iPods are always sold
19
     separately and without any requirement that purchasers of one product also purchase the other.  It is
20
     further conceded in the pleadings that either product may be used by consumers without the
21
     necessity of purchasing the other.  The gravamen of the Complaint is that Apple has created a DRM-
22
     mediated link between iTunes music and iPods which allows iPod owners to play back their iTunes
23
     music purchases with fewer intermediate steps than required for consumers who own a digital music
24
     player manufactured by one of Apple's competitors, and that Apple refuses to license the DRM
25

26

27         [6] (Defendant Apple Inc.'s Answer and Defenses to Plaintiffs' Consolidated Complaint ¶¶ 3-
     15, hereafter, "Answer," Docket Item No. 110.)

28                                                  3

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  technology to its competitors.  Plaintiffs allege that the technological interrelationship between

2  iTunes music files and iPods constitutes unlawful tying under the rule of reason because it is

3  tantamount to forcing consumers to forego their free choice of portable digital media players.

4  **B.      The Rule of Reason**

5         Section 1 of the Sherman Act prohibits "every contract, combination . . ., or conspiracy, in

6  restraint of trade or commerce." 15 U.S.C. § 1.  Courts have established two standards for

7  scrutinizing commercial practices under Section 1: *per se* rules of illegality and the rule of reason.

8  *Per se* analysis applies to practices that have such pernicious effect on competition that they are

9  presumed to be unreasonable and therefore illegal without elaborate inquiry into the precise harm

10 the practices have caused.  Northern Pac. R. Co. v. United States, 356 U.S. 1, 5 (1958).  Under a rule

11 of reason analysis, the factfinder weighs all of the circumstances surrounding a restrictive practice in

12 making a determination whether the practice should be prohibited as imposing an unreasonable

13 restraint on competition.  Chicago Bd. of Trade v. United States, 246 U.S. 231, 238 (1918).

14        In general, a "tie" is an arrangement in which a seller conditions the sale of one product on

15 the purchaser's agreement to purchase a separate product.  Eastman Kodak Co. v. Image Technical

16 Services, Inc., 504 U.S. 451 (1992).  If a seller is proved to have market power in a tying product

17 and the tying arrangement affects a substantial volume of commerce in the market for a tied product,

18 the tying arrangement is analyzed under the *per se* rule because courts regard such tying as serving

19 little purpose other than the restriction of competition.  U.S. Steel Corp. v. Fortner Enters., 394 U.S.

20 495, 503 (1969).

21        Here, the Court has ruled that the technological interrelationship between iTunes music and

22 iPods in the absence of any condition that purchasers of one product also purchase the other does not

23 state a Section 1 tying claim under the *per se* rule and has granted judgment on the pleadings on that

24 ground.[7]  Having been denied a right to proceed on the basis of a *per se* analysis, Plaintiffs are left

25 with allegations that Apple's conduct violates Section 1 under the rule of reason theory.

---

27    [7] The Court also granted Defendant's Motion with respect to Plaintiffs' state law claims, to
the extent those claims were based on unlawful tying under federal antitrust law.

28                                          4

1    It is well established that "[a] tying arrangement which is not unlawful *per se* 'may be

2  invalidated under the 'rule of reason' if the party challenging the tie demonstrates that it is 'an

3  unreasonable restraint on competition in the relevant market.'" County of Tuolumne v. Sonora

4  Cmty. Hosp., 236 F.3d 1148, 1157 (9th Cir. 2001) (quoting Beard v. Parkview Hosp., 912 F.2d 138,

5  140 (6th Cir. 1990)).  In a *per se* claim, "a showing that the defendant had market power in the tying

6  market leads to a presumption that it is using that power to expand into the tied market."  Brokerage

7  Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 519 (3d Cir. 1998); see also Jefferson Parish,

8  466 U.S. at 26 (finding that an analysis of actual market conditions may only be avoided upon a

9  showing that the arrangement "involves the use of market power to force [consumers] to buy

10  services they would not otherwise purchase"); Foremost Pro Color, Inc. v. Eastman Kodak Co., 703

11  F.2d 534, 540-41 (9th Cir. 1983) (finding that the *per se* tying rule excuses the necessity of

12  demonstrating unreasonable competitive effect because the party imposing the arrangement is

13  benefitting from "the leverage exerted as a result of its economic power in the market for the tying

14  product").

15    Where a plaintiff cannot demonstrate adequate market power to invalidate a restraint under

16  the *per se* tying rule, they may still succeed in stating a claim under the rule of reason by alleging

17  sufficient facts to demonstrate that the tying arrangement "unreasonably restrained competition."

18  Jefferson Parish, 466 U.S. at 29.  To state a claim under the rule of reason, a plaintiff cannot rely on

19  a presumption of unreasonable anticompetitive effect, but instead must "provide a basis for finding

20  that the [tying arrangement], as it actually operates in the market, has unreasonably restrained

21  competition."  Id.

22    In Jefferson Parish, the Supreme Court examined the validity of a tie between surgical and

23  anesthesiological services at a hospital.  466 U.S. at 4-5.  In that case, the hospital ("East Jefferson")

24  entered into an exclusive contract with a firm of anesthesiologists which required that every patient

25  undergoing surgery at East Jefferson use the services of a member of that firm.  Id.  After trial, the

26  district court denied relief to a board-certified anesthesiologist who was barred from admission to

27  the medical staff at East Jefferson because of the exclusive contract.  Id. at 5.  The Supreme Court

28

United States District Court
For the Northern District of California

affirmed the district court's decision.  Id.  To determine whether East Jefferson exerted sufficient

market power to establish *per se* tying liability, the Court looked at the hospital preferences of local

residents and found that seventy percent of those in the area used a hospital other than East

Jefferson.  Id. at 26.  The Court found that "[t]he fact that a substantial majority of the parish's

residents elect not to enter East Jefferson means that the geographic data does not establish the kind

of dominant market position that obviates the need for further inquiry into actual competitive

conditions."  Id. at 27.  Since East Jefferson did not have sufficient market power to establish *per se*

liability, the Court turned to the rule of reason and found insufficient evidence that the arrangement

at issue unreasonably restrained competition among anesthesiologists in that particular market.  Id.

at 29-30.

        In Town Sound and Custom Tops, Inc., the Third Circuit examined the validity of a tie

between cars and car stereo equipment.  959 F.2d 468, 471-73 (3d Cir. 1992).  In that case, a group

of independent car stereo dealers filed an antitrust action against Chrysler claiming that Chrysler

unlawfully restrained commerce by conditioning the sale of their cars on the purchase of Chrysler-

supplied sound systems.  Id. at 471.  The district court granted summary judgment to Chrysler on

plaintiffs' *per se* and rule of reason claims.  Id. at 474.  The Third Circuit affirmed.  Id. at 496.

When defining the relevant market broadly to include Chrysler cars and cars that are reasonably

interchangeable with Chrysler cars, the Third Circuit determined that Chrysler did not wield enough

market power to establish *per se* tying liability.  Id. at 480-81.  The Court found, however, that such

a showing of market power was not necessary to succeed on a tying claim under the rule of reason.

Id. at 482-85.  Ultimately, the plaintiffs' rule of reason claim failed for a reason not directly related

to market power: the plaintiffs could not show that Chrysler's conduct caused competitive injury in

the car stereo market.  Id. at 495.

        What is less clear from a review of the cases is whether a plaintiff may state a tying claim

under the rule of reason where, as here, its *per se* claim has failed on the basis of the absence of a

coercive tying relationship.  In their Motion, Defendant contends that without a coercive tie, there

can be no valid claim under either a *per se* analysis or a rule of reason analysis.  (Motion at 4-6.)

6

Case4:05-cv-00037-YGR   Document273   Filed11/30/09   Page1 of 51

1    Plaintiffs respond that a rule of reason claim is available even when all of the elements of *per se*

2    tying cannot be established and that they should be allowed to proceed on that theory because the

3    technological relationship between iTunes and iPod was intended to harm competition and in fact

4    caused injury to competition.[8]  In other words, Plaintiffs contend that even though the Court has

5    found that the technological interrelationship does not constitute tying under the *per se* rule, the

6    technological relationship is sufficient to constitute an unlawful restraint under the rule of reason.

7    **C.    Technological Relationship Between Products Under the Rule of Reason**

8           There have been a number of cases that have considered allegations of antitrust violations

9    based on a technological relationship between products.  Meaningful application of these so-called

10   "technological tie" cases requires an examination of what type of technological relationship was

11   involved.  The Court examines a couple of cases for illustration.

12          **1.    Products that are technologically integrated and sold as one product**

13          Products are characterized as "technologically tied" in cases involving integrated products,

14   namely, where a plaintiff alleges that unlawful tying takes place because two separate products have

15   been integrated and sold as one.  For example, in <u>United States v. Microsoft</u>, the D.C. Circuit

16   scrutinized Microsoft's practice of bundling its web browser, Internet Explorer ("IE"), with its

17   Windows operating system ("OS").  253 F.3d 34 (D.C. Cir. 2001).  The facts underlying the tying

18   claim consisted of four allegations:

19          (1) Microsoft required licensees of [the OS] to also license IE as a bundle at a single price;
            (2) Microsoft refused to allow [original equipment manufacturers] to uninstall or remove IE
20          from the Windows desktop; (3) Microsoft designed [the OS] in a way that withheld from
            consumers the ability to remove IE by use of the Add/Remove Programs utility; and (4)
21          Microsoft designed [the OS] to override the user's choice of default web browser in certain
            circumstances.
22
     <u>Id.</u> at 85-86 (internal citations omitted).  After a bench trial, the district court found Microsoft liable
23
     for, *inter alia*, the government's tying claim.  <u>Id.</u> at 48.  The D.C. Circuit reversed as to the
24
     government's tying claim under the *per se* rule, but remanded to the district court for further
25

26   ─────────────────

27          [8]  (<u>See</u> Plaintiffs' Opposition to Defendant's Motion for Judgment on the Pleadings as to
     Plaintiffs' Rule of Reason Tying Claim at 5, hereafter, "Opposition," Docket Item No. 230.)

28                                                    7

**United States District Court**
For the Northern District of California

Case4:05-cv-00037-YGR   Document273   Filed11/30/09   Page16 of 31

**United States District Court**
For the Northern District of California

1    proceedings under a rule of reason analysis. Id. at 89-97. The D.C. Circuit held that where the tying

2    arrangement alleged involves the integration of additional software functionality into a platform for

3    third-party applications, finding a *per se* violation "creates undue risks of error and of deterring

4    welfare-enhancing innovation." Id. at 90. Instead, the court found that the appropriate mode of

5    analysis was the rule of reason, and remanded the case so that the district court could make the

6    appropriate "inquiry into the actual effect of Microsoft's conduct on competition in the tied good

7    market." Id. at 95 (internal quotation omitted); see also Caldera, Inc. v. Microsoft Corp., 72 F.

8    Supp. 2d 1295 (D. Utah 1991).

9          It is clear that these integrated technology cases involve a technological relationship that can

10   fit within the tying paradigm because they involve allegations that, by virtue of technological

11   integration, purchasers are coerced into purchasing two allegedly separate products.

12         **2.    Products that are technologically interdependent and sold as separate products**

13         The phrase "technological tie" has also been used in cases in which technologically

14   interdependent products are being sold separately by the seller. See Foremost, 703 F.2d at 540-41.

15   In Foremost, the Ninth Circuit stated:

16         Although liberally sprinkled with the word 'required,' Foremost's tying allegation
           basically involves the so-called technological tie. In other words, because the new
17         film could not be processed with the old chemicals, and because the needed new
           photographic paper similarly could not be processed with the old chemicals, it was
18         necessary to purchase an entire package of film, chemicals and paper.

19   703 F.2d at 542.

20         In this latter group of technologically interdependent cases, there is no coercive tie between

21   two separate products. Although the technological relationship enhances the utility of each product,

22   purchasers are free from any requirement imposed by the seller to purchase one product in order to

23   obtain the other. Consistently, in cases involving only a technological interrelationship, courts have

24   adhered to the proposition that if the buyer is free to take either product by itself, there is no tying:

25         Foremost's tying claim alleged only the introduction of technologically related
           components incompatible with existing products offered by the competition. It did
26         not allege that the dominant purpose motivating Kodak's design and introduction of
           the 110 system was to compel purchase of the entire system as a package, rather than
27         to achieve the legitimate goal of marketing new, technologically superior products

28                                                       8

1    designed to satisfy consumer demand for small, pocket-sized cameras.  Therefore, the
2    complaint failed to state a claim for relief predicated on unlawful tying.

Foremost, 703 F. 2d at 543.

3    **D.    Technological Interrelationship Between iTunes and iPods**

4        In light of the analysis above, the Court finds that Plaintiffs cannot state a claim under the

5    rule of reason by demonstrating that a technological tie unreasonably restrains competition in the

6    relevant market.  Without a threshold showing of a "contract, combination in the form of trust or

7    otherwise, or conspiracy" that is actionable under Section 1 of the Sherman Act, Plaintiffs' antitrust

8    claims under the rule of reason theory is not viable.  Here, the only restrain alleged by Plaintiffs is

9    the technological interrelationship between iTunes and iPods.

10       As the Court pointed out in its previous Order, there is "no dispute that iTunes music and

11   iPods are always separately available."  (Order at 7.)  Furthermore, "there is no allegation that there

12   was any form of express conditioning in connection with Apple's sale of either iTunes music or

13   iPods," nor is there any "allegation of a package pricing policy that could constitute an unlawful

14   tie."  (Order at 8.)  While Defendant did develop two products that worked optimally with one

15   another, consumers remained free at all times to purchase one or the other without purchasing both.

16   Although Plaintiffs allege that functionality was impaired when not using the two products together,

17   it is undisputed that songs purchased from iTMS can be played without ever having to purchase an

18   iPod.

19       In stark contrast, consumers in the Microsoft case were forced to purchase the Microsoft OS

20   and the IE together as a bundle.  253 F.3d at 85-86.  Microsoft's direct conditioning of the purchase

21   of one product on that of another presents a much clearer example of the type of anticompetitive

22   conduct that the antitrust laws proscribe than the technological tie at issue here.  The consumer's

23   ability to play music purchased from iTunes is not conditioned on the purchase of an iPod.  The

24   increased convenience of using the two products together due to technological compatibility does

25   not constitute anticompetitive conduct under either *per se* or rule of reason analysis.  See Foremost,

26

27

28                                              9

1    703 F.2d at 544 ("[T]he introduction of technologically-related products, even if incompatible with

2    the products offered by competitors, is alone neither a predatory nor anticompetitive act.")

3            In sum, the Court holds that in order to state a Section 1 tying claim, whether under the *per*

4    *se* rule or the rule of reason, a plaintiff must first meet the threshold requirement of alleging a

5    coercive tying relationship.  Plaintiffs' allegations of a technological interrelationship between

6    iTunes and iPods fail to meet that requirement.  Accordingly, the Court GRANTS Defendant's

7    Motion for Judgment on the Pleadings as to Plaintiffs' Rule of Reason Tying Claim under 15 U.S.C.

8    §1 and all related state law claims.

9                                    **IV.  CONCLUSION**

10           The Court GRANTS Defendant's Motion for Judgment on the Pleadings as to Plaintiffs'

11   Rule of Reason Tying Claim under 15 U.S.C. §1 and all related state law claims.  Thus, the Court

12   DISMISSES Plaintiffs' First Cause of Action for violation of the Section 1 of the Sherman Act, 15

13   U.S.C. § 1, and Fifth Cause of Action for violation of the California's Cartwright Act, Cal. Bus. &

14   Prof. Code §§ 16700 *et seq.*

15

16   Dated:  October 30, 2009                    _____
                                                  JAMES WARE
17                                                United States District Judge

18

19

20

21

22

23

24

25

26

27

28
                                                 10

Case4:05-cv-00037-CGR  Document 274  Filed 10/30/09  Page 19 of 21

**United States District Court**

For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alreen Haeggquist alreenh@zhlaw.com
Andrew S. Friedman afriedman@bffb.com
Bonny E. Sweeney bonnys@csgrr.com
Brian P Murray bmurray@murrayfrank.com
Caroline Nason Mitchell cnmitchell@jonesday.com
Craig Ellsworth Stewart cestewart@jonesday.com
David Craig Kiernan dkiernan@jonesday.com
Elaine A. Ryan eryan@bffb.com
Francis Joseph Balint fbalint@bffb.com
Helen I. Zeldes helenz@zhlaw.com
Jacqueline Sailer jsailer@murrayfrank.com
John J. Stoia jstoia@csgrr.com
Michael D Braun service@braunlawgroup.com
Michael D. Braun service@braunlawgroup.com
Michael Tedder Scott michaelscott@jonesday.com
Robert Allan Mittelstaedt ramittelstaedt@jonesday.com
Roy A. Katriel rak@katriellaw.com
Thomas J. Kennedy tkennedy@murrayfrank.com
Thomas Robert Merrick tmerrick@csgrr.com
Tracy Strong invalidaddress@invalidaddress.com

Dated:  October 30, 2009                    Richard W. Wieking, Clerk

                                            By:    /s/ JW Chambers
                                                Elizabeth Garcia
                                                Courtroom Deputy

# EXHIBIT 15

Case 4:05-cv-00037-YGR  Document 363   Filed 12/21/09   Page 1 of 13

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| The Apple iPod iTunes Antitrust Litigation ———————————————————/ | NO. C 05-00037 JW<br>NO. C 07-06507 JW |
| Stacie Somers,<br><br>　　　　　Plaintiff,<br>　v.<br><br>Apple, Inc.,<br><br>　　　　　Defendant.<br>———————————————————/ | **ORDER DECERTIFYING CLASSES WITHOUT PREJUDICE TO BEING RENEWED; INVITING FURTHER MOTIONS** |

## I. INTRODUCTION

Plaintiffs[1] bring this class action against Defendant Apple Computer, Inc. ("Apple"), alleging violations of the Sherman Act, 15 U.S.C. §§ 1, *et seq.*, and related state law claims.  Plaintiffs allege that Apple has committed unlawful acts in the sale of its iPod portable digital music player and online digital music files sold through its iTunes Store ("iTS"), in violation of federal and state antitrust laws.

Presently before the Court are: (1) the Direct Purchaser Action Plaintiffs' Motion to Modify Injunctive Relief Class Definition to Include iTS Purchasers,[2] (2) the Indirect Purchaser Action Plaintiff's Motion for Class Certification of a Rule 23(b)(2) Class and Appointment of Class

---

[1]  Named Plaintiffs are Melanie Tucker, Mariana Rosen, and Somtai Troy Charoensak.

[2]  (hereafter, "Direct Purchaser Motion to Modify," No. C 05-00037 JW, Docket Item No. 236.)  For ease of identification, this Order will use the term "Direct Purchaser Action" to refer to the lead case in The Apple iPod iTunes Antitrust Litigation, No. C 05-00037 JW.

United States District Court

For the Northern District of California

Case 5:05-cv-00037-YGR   Document 363   Filed 12/21/09   Page 2 of 23

United States District Court

For the Northern District of California

1  Counsel,[3] (3) Defendant's Motion for Reconsideration of Rule 23(b)(2) Class in the Direct Purchaser

2  Action,[4] and (4) Defendant's Motion for Decertification of the Rule 23(b)(3) Class in the Direct

3  Purchaser Action.[5]

4       The Court conducted a hearing on November 23, 2009.  Prior to the hearing, the Court found

5  that the technological interoperability between iPods and media sold through Apple's iTS did not

6  constitute tying made unlawful under the Sherman Act.  Accordingly, the Court ordered the tying

7  claim dismissed from the Consolidated Complaint.  Since the monopoly claims require that Plaintiffs

8  allege anticompetitive conduct, at the hearing on the present Motions, the parties disputed whether

9  Plaintiffs could continue to rely on allegations of technological interoperability as a basis for their

10  monopoly claims and consequently on the definitions of certifiable classes.  As it presently stands,

11  the monopoly claims interweave allegations that there were technological ties between Apple

12  products when they were first introduced to the market (which, without more, is not anticompetitive

13  conduct) and allegations that Apple made technological modifications to its products for the express

14  purpose of maintaining monopoly power (which could support a monopoly claim).  Thus, the Court

15  finds that further orders with respect to the definition of the classes are premature until Plaintiffs

16  clarify what actions they allege Apple took to maintain monopoly power beyond initial

17  technological relationships between its products.  For the reasons set forth below, the Court, *sua*

18  *sponte*, decertifies the Rule 23(b)(2) and 23(b)(3) classes[6] in the Direct Purchaser Action and

19

20       [3]  (hereafter, "Indirect Purchaser Motion for Class Certification," No. C 07-06507 JW,
    Docket Item No. 83.)  For ease of identification, this Order will use the term "Indirect Purchaser
21  Action" to refer to Stacie Somers v. Apple, Inc., No. C 07-06507 JW.

22       [4]  (hereafter, "Motion for Reconsideration," Docket Item No. 244.)

23       [5]  (hereafter, "Motion for Decertification," Docket Item No. 240.)

24       [6]  As the Court will explain *supra*, this decertification is not dependent on the grounds raised
    by Defendant in its Motion to decertify, namely, that Plaintiffs' expert, Dr. Roger G. Noll's, report
25  provides an inadequate method for proving common impact on the class to meet the predominance
    requirement of Rule 23(b)(3).  The Court rejects Defendant's contention and decertifies the Rule
26  23(b)(3) without prejudice and only in order to ensure that a proper class would be defined in light
    of this Order.

27

28                                              2

Case 4:05-cv-00037-YGR   Document 363   Filed 12/1/09   Page 3 of 33

1    DENIES all other Motions as premature, without prejudice to being renewed after further

2    proceedings pursuant to this Order.  Plaintiffs are invited to submit an Amended Consolidated

3    Complaint that does not depend upon allegations of tying as the anticompetitive conduct upon which

4    they base their monopoly claims.  If Plaintiffs decline to do so, Defendant is invited to move for

5    judgment on the pleadings as to the monopoly claims on the ground that they cannot survive the

6    dismissal of the tying claims.

7                                              **II.  BACKGROUND**

8            A detailed outline of the factual allegations and procedural history in this case may be found

9    in the Court's December 20, 2006 Order Denying Defendant's Motion to Dismiss (Docket Item No.

10   27)[7] and in the Court's December 22, 2008 Order Granting Plaintiffs' Motion for Class Certification

11   as to Counts Two, Three, Four, Five, Six, and Seven Only and Appointing Class Counsel; *Sua*

12   *Sponte* Order Reconsidering Defendant's Motion to Dismiss Count One and Requiring Further

13   Briefing.  (hereafter, "December 22 Order," Docket Item No. 196.)  The Court reviews the relevant

14   alleged facts and procedural history to the extent they implicate the present Motions.

15   **A.**      <u>**Factual Allegations**</u>

16           In a Consolidated Complaint, Plaintiffs allege[8] as follows:

17                   In order to prevent consumers from making illegal unauthorized copies of digital

18           files, online music stores use protected digital file formats.[9]  While most online music stores

19           use a protected digital file format called WMA, Apple uses a format called AAC.  (<u>Id.</u> ¶¶ 40-

20           41.)  Apple encodes its AAC format files with DRM restrictions that Apple calls "FairPlay."

---

[7]  This Order may be found in the docket for <u>Tucker v. Apple Computer, Inc.</u>, 493 F. Supp. 2d 1090 (N.D. Cal. 2006), Case No. C 06-04457 JW, which was one of the original cases now included in this consolidated action.

[8]  During the course of pretrial proceedings, the Court has been made aware of changes in Apple's practices that have taken place while this action has been pending.  Since Plaintiffs have not filed a supplemental complaint, the Court describes the events as alleged by Plaintiffs as of the date of the Consolidated Complaint.

[9]  (Consolidated Complaint for Violations of Sherman Antitrust Act, Clayton Act, Cartwright Act, California Unfair Competition Law, Consumer Legal Remedies Act, and California Common Law of Monopolization ¶ 39, hereafter, "CC," Docket Item No. 107.)

3

United States District Court

For the Northern District of California

(Id. ¶ 41.)  Apple has not licensed or given access to its FairPlay-DRM format to any other manufacturer of digital music players.  (Id. ¶ 50.)  Apple has an approximately 85% share of the online digital music market and a 90% share of the online video market.  (Id. ¶¶ 5, 7.)

Apple also manufactures and sells digital music players variously called "iPods." (CC ¶ 9.)  Apple deliberately designed the iPod software so that iPods would only play files encoded in a single protected digital format, the Fairplay-modified AAC format.  (Id. ¶ 46.) As a result of Apple's actions, consumers who purchase media files from the iTS can only play those files directly[10] on an iPod.  (Id. ¶ 22.)  Conversely, Apple deliberately makes iPods unable to play music directly sold at rival online music stores, which means that iPod owners can only buy online music from the iTS to play on their iPods.  (Id. ¶ 23.)  Apple has an approximately 80% share of the digital music player market.  (Id. ¶ 10.)

On July 26, 2004, RealNetworks, an Apple competitor in the online digital music market, publicly announced that music files sold through its online store would be playable on the iPod.  (CC ¶ 52.)  In December 2004, Apple updated its iPod software to prevent songs downloaded from RealNetworks music store (or any other online music store) from being played on iPods.  (Id. ¶ 54.)  In at least two additional instances, Apple changed iPod and iTunes software to add new restrictions to music that customers previously purchased from Apple.  (Id. ¶ 55.)

On the basis of the allegations outlined above, Plaintiffs allege six causes of action.  Their first two causes of action are for violation of the Sherman Act, 15 U.S.C. § 2: (1) the unlawful acquisition or maintenance of monopoly power in the digital music player, online music, and online video markets; and (2) attempted monopolization of the digital music player, online music, and online video markets.  Their remaining state law causes of action are: (1) violation of the Cartwright Act, Cal. Bus. & Prof. Code §§ 16270, *et seq*.; (2) violation of California Unfair Competition Law,

---

[10]  The Court has been led to understand that Plaintiffs used the word "directly" to acknowledge that consumers could "indirectly" play music purchased from the iTS on other music devices.  Similarly, iPods could "indirectly" play music purchased online from other vendors.

United States District Court

For the Northern District of California

1    Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (3) violation of the Consumer Legal Remedies Act, Cal.

2    Civ. Code §§ 1750, *et seq*.; and (4) common law monopolization business practices.

3    **B.**    **Direct Purchaser Action**

4    On January 3, 2005, the original Complaint in this litigation was filed, which stated:

5    "Plaintiff brings this action on behalf of himself and on behalf of all other similarly situated

6    consumers who, during the period April 28, 2003 to the present ("the Class Period") purchased an

7    iPod device directly from Apple, and online digital music files from Apple's iTunes store."

8    (Complaint ¶ 56, Docket Item No. 1.)  On July 21, 2008, Plaintiffs in the Direct Purchaser Action

9    filed a Motion for Class Certification and Appointment of Class Counsel.  (See Docket Item No.

10   165.)  On December 22, 2008, the Court certified an injunctive relief class in the Direct Purchaser

11   Action defined as follows: "All persons or entities in the United States . . . who: (a) purchased an

12   iPod from Apple or (b) purchased audio or video files from the iTMS since April 28, 2003."

13   Subsequent to the Court's December 22 Order, Defendant sought clarification of the

14   definition of the class, pointing out to the Court that the Motion for Class Certification had not

15   included purchasers of audio or video files from the iTS in its definition of the class.  (See Docket

16   Item No. 197.)  In response to Defendant's request for clarification, on January 14, 2009, the Court

17   issued an Order Clarifying and Correcting Class Certification Order which modified the definition of

18   the injunctive relief class to include only direct purchasers of iPods.  (See Docket Item No. 198.)

19   Now, Plaintiffs in the Direct Purchaser Action seek to modify the class once again to include

20   purchasers of audio or video files from the iTS.  Concurrently, Defendant moves the Court to

21   reconsider its certification of the injunctive relief class.

22   **C.**    **Indirect Purchaser Class**

23   On February 23, 2009, Plaintiff in the Indirect Purchaser Class filed a Motion for Class

24   Certification and Appointment of Co-Lead Class Counsel.  (hereafter, "Indirect Purchaser Motion

25   for Class Certification," Docket Item No. 39.)  The Indirect Purchaser Plaintiff sought to certify a

26   class with the following definition: "All persons and entities in the United States . . . that from

27

28
                                                                    5

United States District Court
For the Northern District of California

1  December 31, 2003 to the present ("Class Period") purchased an Apple iPod indirectly from Apple

2  for their own use and not for resale." (Indirect Purchaser Motion for Class Certification at 3.)

3       On July 17, 2009, the Court issued an Order Denying in Part Plaintiff's Motion for Class

4  Certification. (hereafter, "July 17 Order," Docket Item No. 80.) In its July 17 Order, the Court

5  denied certification of a damages class under Rule 23(b)(3), but declined to rule on an injunctive

6  relief class under Rule 23(b)(2) until the parties provided further briefing on the operative theories

7  of liability, the class definition, and the form of relief sought. (July 17 Order at 12-13.)

8       Now, the Indirect Purchaser Action Plaintiff again moves the Court to certify an injunctive

9  relief class, this time seeking to add to the definition of the class provided in its original Motion "all

10  purchasers of audio or video files from the iTMS since December 31, 2003." (Indirect Purchaser

11  Motion for Class Certification at 1.)

12  **D.    Tying Claims**

13       Subsequent to class certification, the Court granted Judgment on the Pleadings in favor of

14  Apple dismissing Plaintiffs' tying claims on the ground that the allegations of technological

15  interoperability between iPods and music and videos purchased from iTS did not state a violation of

16  Section 1 of the Sherman Act under either a *per se*[11] theory or under the rule of reason.[12]

17                                    **III.  DISCUSSION**

18       Apple opposes modification of the injunctive relief class and moves for decertification of the

19  damages class on a number of grounds. A principal ground for Apple's opposition to expanding the

20  class is its contention that Plaintiffs' Section 2 monopoly claims are no longer viable because in

21  dismissing the tying claims, the Court has rejected Plaintiffs' only basis for their monopoly and

22  attempted monopoly claims. Although more appropriately raised by a formal motion for judgment

---

[11]  (See Order Granting in Part Defendant's Motion for Judgment on the Pleadings; Ordering Supplemental Briefing, Docket Item No. 213.)

[12]  (See Order Granting Defendant's Motion for Judgment on the Pleadings as to the First Cause of Action for Violations of Section 1 of the Sherman Act and the Fifth Cause of Action for Violations of the Cartwright Act, Docket Item No. 274.)

6

United States District Court

For the Northern District of California

1    on the pleadings, the Court considers, *sua sponte*, whether Plaintiffs state a basis for a monopoly

2    claim independent from the tying claims.

3    　　　To state a claim for monopolization, a plaintiff must allege that (1) the defendant possesses

4    monopoly power in the relevant market, (2) the defendant has willfully acquired or maintained that

5    power, and (3) the defendant's conduct has caused antitrust injury.  Cost Mgmt. Servs. v.

6    Washington Natural Gas, 99 F.3d 937, 949 (9th Cir. 1996); Foremost Pro Color, Inc. v. Eastman

7    Kodak Co., 703 F.2d 534, 543 (9th Cir. 1983).

8    　　　Here, to satisfy the requirement for alleged willful conduct, Plaintiffs must allege facts

9    showing that Apple engaged in anticompetitive conduct, with the specific intent to control prices or

10   destroy competition, beyond the technological interoperability of iPods and media sold through the

11   iTS.  See Foremost Pro, 703 F.2d 534.  The Court proceeds to examine the Consolidated Complaint

12   to explore, in light of the Court's dismissal of Plaintiffs' tying claims, whether there are other factual

13   allegations to support Plaintiffs' monopolization claims.[13]

14   **A.    Apple's Alleged Anticompetitive Conduct**

15   　　　In 2006, when the Court first examined the merits of Plaintiffs' monopoly and attempted

16   monopoly claims in light of Defendant's Rule 12(b)(6) challenge, the Court identified several

17   actions alleged by Plaintiffs to be Apple's anticompetitive conduct.  In its December 20, 2006 Order,

18

19

20

21

---

22   　　　[13]  It is well established that a preliminary inquiry into the merits of the plaintiffs' claims at
     the class certification stage is inappropriate.  See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177

23   (1974).  The court may only scrutinize the plaintiffs' legal causes of action to determine whether
     they are suitable for resolution on a class-wide basis.  See, e.g., Moore v. Hughes Helicopters, Inc.,

24   708 F.2d 475, 480 (9th Cir. 1983).  This inquiry requires the court to accept the substantive
     allegations contained in the plaintiffs' complaint as true and analyze only whether the asserted

25   claims or defenses are susceptible to resolution on a class-wide basis.  See McCarthy v. Kleindienst,
     741 F.2d 1406, 1419 n.8 (D.C. Cir. 1984).

26   　　　Accordingly, in reexamining Plaintiffs' monopoly claims in light of these Motions, the Court
     is not, *sua sponte*, challenging their merits, but rather setting forth what factual allegations are

27   susceptible to resolution on a class-wide basis.

28
                                                    7

the Court recited the six different actions Plaintiffs alleged that Apple took to maintain its monopoly. These allegations have been carried forward to the Consolidated Complaint.[14]

### 1. Actively modifying the iPod's "core processor," the Portal Player System-On-A-Chip, not to support WMA

Plaintiffs allege that Apple outsources most of the production of the iPod to third party manufacturers in Asia. One third party part used in the iPod is its "core processor," the Portal Player System-On-A-Chip. The System-On-A-Chip by default supports the WMA format. Apple, however, deliberately designed the iPod's software so that it would only play a single protected digital format, Apple's FairPlay-modified AAC format. (CC ¶ 46.)

### 2. Actively modifying the iPod Shuffle's SigmaTel chip not to support WMA

Plaintiffs allege that in place of the Portal Player System-On-A-Chip, Apple uses the SigmaTel STMP3550 in its low end iPod shuffles. Like the Portal Player System-On-A-Chip, the SigmaTel STMP3550 was designed to decode and play WMA files and does indeed play them on every Digital Music Player that contains the STMP3550 chip except the iPod. As in its higher end models, Apple's crippleware operating system software prevents the iPod shuffle from playing WMA files. (CC ¶ 48.)

### 3. Refusing to pay a nominal licensing fee for WMA

Plaintiffs allege that Apple could license its FairPlay-DRM format to other manufacturers of Digital Music Players, so that music purchased from the Music Store could be transferred directly to Digital Music Players other than the iPod. (CC ¶ 45.) The cost to Apple of licensing the WMA format would likely not exceed $800,000 per year or less than two cents per iPod sold in 2006. (Id. ¶ 49.) Apple has not licensed or given access to its FairPlay-DRM format to any other Digital Music Player manufacturer, thereby ensuring two results—both of which are anticompetitive. First, through the foregoing, Apple has ensured that the iPod is the only Digital Music Player that can directly play songs purchased from the Music Store. Second, through the foregoing, Apple has

---

[14] (December 20, 2006 Order at 10.) The anticompetitive acts that the Court cited were alleged in Plaintiffs' original Complaint. (See Class Action Complaint ¶¶ 16, 35-41, Docket Item No. 1.)

8

1   managed to ensure that owners of iPods wishing to purchase music files online to be directly played

2   on their iPod can only do so by purchasing these files at the Music Store.  (Id. ¶ 50.)

3       **4.      Using technological restrictions to prevent consumers who purchased
                  music from rival stores from playing their music on their iPods**

4       Plaintiffs allege that Apple gains access to the iPods of consumers when the consumers

5   download music and videos from the iTS and when consumers login to download updates to

6   software residing in their iPods.  (CC ¶¶ 51-55.)  Plaintiffs allege that in December 2004, Apple

7   used that access for an anticompetitive purpose, namely to install codes in the iPods that prevented

8   the owners from being capable of directly downloading music into their iPods that was being sold by

9   an Apple competitor, RealNetworks.[15]  Plaintiffs further allege that Apple used this online access to

10  impose "restrictions to music that customers previously purchased from Apple."[16]  (Id. ¶ 55.)

11      **5.      Selling music only using Apple's FairPlay DRM, which is incompatible
                  with any digital music players other than iPod**

12      Plaintiffs allege digital music purchased from the iTS is technologically tied to the iPod.

13  (CC ¶¶ 39-44.)

14

15      The Sherman act does not outlaw monopoly power gained from the popularity of

16  interoperable products even if incompatible with the products of competitors.  See Foremost Pro

17  Color, 703 F.2d at 543.

18      However, as the Court has previously held, Plaintiffs must allege willful conduct beyond

19  interoperability and incompatibility.   Accordingly, the Court invites Plaintiffs to show cause why

20  these allegations should not be stricken.

21      **6.      Using technological restrictions to prevent users from playing video files
                  purchased from Apple on rival video-enabled music players**

22      This appears to duplicate the conduct criticized in paragraph (5).

23

---

24      [15] It is not clear to the Court whether the allegation that "Apple updated its iPod software,"

25  (CC ¶ 54), alleges that Apple made a "software change," (id. ¶ 55), to iPods as they were being
    updated or to those sold after December 2004.  This is a matter left to pretrial discovery.

26

27      [16] Plaintiffs do not describe what other actions Apple took after December 2004 to further
    restrict consumers' rights to listen to the music they purchased from the iTS.

28

**United States District Court**
For the Northern District of California

1    B.      <u>Distinction Between the Above Alleged Conduct and the Dismissed Tying Claims</u>

2            At issue is whether additional clarification of the distinction between the six alleged

3    anticompetitive acts and the dismissed tying claims is necessary before any further orders with

4    respect to the definition of the class can be issued.

5            A Section 2 claim can be based on willful conduct undertaken to acquire monopoly power or,

6    if monopoly power is lawfully acquired, a Section 2 claim can be based on willful conduct

7    undertaken to maintain monopoly power.  See <u>Verizon Commc'ns, Inc. v. Law Offices of Curtis V.</u>

8    <u>Trinko</u>, 540 U.S. 398, 407 (2004) (a monopolization or attempt to monopolize claim requires "in

9    addition to the possession of monopoly power in the relevant market, 'the willful acquisition or

10   maintenance of that power as distinguished from growth or development as a consequence of a

11   superior product, business acumen, or historic accident'").

12           Here, Plaintiffs allege that Apple has monopoly power and acted to "maintain" its monopoly.

13   However, on the face of the Consolidated Complaint, Plaintiffs mix their allegations that Apple

14   introduced products to the market with technological restrictions with allegations that Apple

15   changed its products to thwart competition.  For purposes of certifying a class, the class definition

16   will depend upon what anticompetitive acts are alleged and when they allegedly took place.  The

17   Court is not able to discern whether Plaintiffs are basing their monopoly claims solely on

18   technological decisions made as products were introduced to the market or whether Plaintiffs are

19   alleging that Apple gained monopoly power and afterward made anticompetitive technological

20   decisions to maintain its monopoly.

21   C.      <u>Summary</u>

22           In sum, the Court finds that Plaintiffs' allegations of technology changes alleged to have

23   been made to maintain a monopoly are so inextricably interwoven with allegations about technology

24   decisions that are alleged to have been made before the products were first introduced to the market,

25   that the Court is not able to give clear definitions of the affected classes.  Indeed, Plaintiffs' earlier

26   motion to remove from the class a group that it now seeks to add demonstrated their own

27   ambivalence on the proper class definition.

28                                                   10

United States District Court

For the Northern District of California

1    Accordingly, to give consideration to class definitions based on clearly stated monopoly

2   claims delineating what anticompetitive conduct Apple is alleged to have engaged in and when it

3   allegedly took place, the Court vacates its Order certifying Rule 23(b)(2) and 23(b)(3) classes.[17]

### 1.    The Direct Purchaser Action

5    In light of the discussion above, Plaintiffs are invited to submit an Amended Consolidated

6   Complaint that does not depend upon allegations of tying as the anticompetitive conduct upon which

7   they base their monopoly claims.  If Plaintiffs decline to do so, Defendant is invited to move for

8   judgment on the pleadings as to the monopoly claims on the ground that they cannot survive the

9   dismissal of the tying claims.  The Court also invites Plaintiffs in the Direct Purchaser Action to, in

10  their amendment, combine their injunctive remedies with that of the Indirect Purchaser Action since

11  it appears to the Court that those remedies, to the extent they are viable, should be merged because

12  they derive from the same alleged anticompetitive conduct by Apple.

### 2.    The Indirect Purchaser Action

14   Nothing in this Order is intended to allow the Indirect Purchaser Plaintiff to renew her

15  Motion to certify a Rule 23(b)(3) class since the Court has found that Plaintiff has failed to meet her

16  burden of establishing "a reliable method for proving common impact on all purchasers of

17  [D]efendant's products throughout the chain of distribution."  In re Graphics Processing Units

18  Antitrust Litig., 253 F.R.D. 478, 507 (N.D. Cal. 2008).

19   Moreover, it is undisputed that there is no "indirect purchaser" of iTS digital music or video

20  files.  Accordingly, the Court orders the Indirect Purchaser Plaintiff to show cause, if any, why her

21  case should not be dismissed since the basis for a separate action, namely, indirect purchasers of

22  iPods, is no longer viable in light of the Court's denial of certification of the damages class.  Thus,

---

24       [17]  Federal Rule of Civil Procedure 23 provides district courts with broad discretion to
determine whether a class should be certified, and to revisit that certification throughout the legal
proceedings.  Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1176 (9th Cir. 2007).  If later evidence
25  disproves the plaintiffs' contentions, the court can modify or decertify the class.  See Gen. Tel. Co.
of S.W. v. Falcon, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge
26  remains free to modify it in light of subsequent developments in the litigation.").  A district court's
decision to decertify a class is committed to its sound discretion.  See Knight v. Kenai Peninsula
27  Borough Sch. Dist., 131 F.3d 807, 816 (9th Cir. 1997).

28                                             11

once the Direct Purchaser Plaintiffs amend their pleadings to add remedies also sought by the Indirect Purchaser Plaintiff, it appears to the Court that the Indirect Purchaser Action is no longer necessary.

### IV. CONCLUSION

The Court decertifies the Rule 23(b)(2) and 23(b)(3) classes and DENIES all other Motions as premature. On or before **January 25, 2010**, Plaintiffs in the Direct Purchaser Action shall file their Amended Consolidated Complaint consistent with the terms of this Order. If no amended pleading is filed, on or before **February 1, 2010**, Defendant shall file a motion for judgment on the pleadings as to Plaintiffs' monopoly claims. Defendant shall file its motion in accordance with the Civil Local Rule of Court. In addition, on or before **February 1, 2010**, the Indirect Purchaser Plaintiff shall file her Response to the Court's Order to Show Cause re: Dismissal of her remaining claims as duplicative of the Direct Purchaser Action.

In any event, the parties shall appear for a Case Management Conference on **February 22, 2010 at 10 a.m.** On or before **February 12, 2010**, the parties shall file a Joint Case Management Statement. The Statement shall include, among other things, the parties' proposed schedule for any further discovery in light of this Order and any further dispositive motions.

Dated: December 21, 2009

_____
JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alreen Haeggquist alreenh@zhlaw.com
Craig Ellsworth Stewart cestewart@jonesday.com
Craig L. Briskin cbriskin@findjustice.com
David Craig Kiernan dkiernan@jonesday.com
Elaine Wallace ewallace@jonesday.com
Helen I. Zeldes helenz@zhlaw.com
Michael Tedder Scott michaelscott@jonesday.com
Robert Allan Mittelstaedt ramittelstaedt@jonesday.com
Steven A. Skalet sskalet@findjustice.com
Alreen Haeggquist alreenh@zhlaw.com
Andrew S. Friedman afriedman@bffb.com
Bonny E. Sweeney bonnys@csgrr.com
Brian P Murray bmurray@murrayfrank.com
Caroline Nason Mitchell cnmitchell@jonesday.com
Elaine A. Ryan eryan@bffb.com
Francis Joseph Balint fbalint@bffb.com
Helen I. Zeldes helenz@zhlaw.com
Jacqueline Sailer jsailer@murrayfrank.com
John J. Stoia jstoia@csgrr.com
Michael D Braun service@braunlawgroup.com
Roy A. Katriel rak@katriellaw.com
Thomas J. Kennedy tkennedy@murrayfrank.com
Thomas Robert Merrick tmerrick@csgrr.com
Todd David Carpenter tcarpenter@bffb.com

**Dated: December 21, 2009**                    **Richard W. Wieking, Clerk**

                                                **By:    /s/ JW Chambers**
                                                      **Elizabeth Garcia**
                                                      **Courtroom Deputy**

**United States District Court**
For the Northern District of California