# EXHIBIT 30

[Part 1 of 2]

Case4:05-cv-00037-YGR Document488 Filed01/25/11 Page196 of 34

ROBBINS GELLER RUDMAN
& DOWD LLP
JOHN J. STOIA, JR. (141757)
BONNY E. SWEENEY (176174)
THOMAS R. MERRICK (177987)
ALEXANDRA S. BERNAY (211068)
PAULA M. ROACH (254142)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
johns@rgrdlaw.com
bonnys@rgrdlaw.com
tmerrick@rgrdlaw.com
xanb@rgrdlaw.com
proach@rgrdlaw.com

THE KATRIEL LAW FIRM
ROY A. KATRIEL (*pro hac vice*)
1101 30th Street, N.W., Suite 500
Washington, DC 20007
Telephone: 202/625-4342
202/330-5593 (fax)
rak@katriellaw.com

Co-Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTI-TRUST LITIGATION | Lead Case No. C-05-00037-JW(HRL) |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF LEAD CLASS COUNSEL |
| ALL ACTIONS. | |
| | JUDGE: Hon. James Ware |
| | DATE: April 18, 2011 |
| | TIME: 9:00 a.m. |
| | CTRM: 8, 4th Floor |

**[REDACTED]**

Case4:05-cv-00037-YGR Document468 Filed01/25/11 Page29 of 34

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. PROCEDURAL BACKGROUND ..... 3
  A. Earlier Class Certification ..... 3
  B. Plaintiffs' Narrowed Section 2 Claims ..... 5
  C. Factual Background ..... 7
III. THE REQUIREMENTS OF RULE 23 ARE FULLY SATISFIED ..... 11
  A. Rule 23(a) Is Satisfied ..... 12
    1. Numerosity ..... 12
    2. Commonality ..... 12
    3. Typicality ..... 14
    4. Adequacy ..... 15
  B. Rule 23(b)(3) Is Satisfied ..... 16
    1. Predominance ..... 16
    2. Superiority ..... 22
  C. There Exists a Readily Definable Class of Apple Customers ..... 23
  D. Appointment of Class Counsel ..... 23
IV. CONCLUSION ..... 24

593800_1

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)

- i -

Case4:05-cv-00037-YGR Document488 Filed01/25/11 Page3 of 34

# TABLE OF AUTHORITIES

Page

**CASES**

*Amchem Prods. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997) ....... 1, 16, 23

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 105 S. Ct. 2847 (1985) ....... 18

*Behrend v. Comcast Corp.*, No. 03-6604, 2007 WL 2972601 (E.D. Pa. Oct. 10, 2007) ....... 13

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ....... 11, 15

*Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008) ....... 18

*Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363 (2001) ....... 17

*Cost Mgmt. Servs. v. Wash. Natural Gas Co.*, 99 F.3d 937 (9th Cir. 1996) ....... 13

*Cummings v. Connell*, 316 F.3d 886 (9th Cir. 2003) ....... 15

*Davis v. Pac. Bell*, 204 F. Supp. 2d 1236 (N.D. Cal. 2002) ....... 2, 13

*Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 112 S. Ct. 2072 (1992) ....... 17, 19

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S. Ct. 2140 (1974) ....... 11

*Estate of Garrison v. Warner Bros., Inc.*, No. CV 95-8328 RMT, 1996 WL 407849 (C.D. Cal. June 25, 1996) ....... 14, 19

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534 (9th Cir. 1983) ....... 19

*Gintis v. Bouchard Transp. Co.*, 596 F.3d 64 (1st Cir. 2010) ....... 22

593800_1

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL) - ii -


Case4:05-cv-00037-YGR Document488 Filed01/25/11 Page49 of 34

**Page**

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......... 13, 14

*Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 92 S. Ct. 885 (1972) .......... 2

*Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061 (1977) .......... 19

*In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*, No. 02-6030 (WHW), 2006 WL 891362 (D.N.J. April 4, 2006) .......... 18

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001) .......... 21

*In re Corrugated Container Antitrust Litig.*, No. MDL 310, 1979 WL 1751 (S.D. Tex. Dec. 21, 1979) .......... 21

*In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677 (N.D. Ga. 1991) .......... 22

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) .......... *passim*

*In re Indus. Silicon Antitrust Litig.*, No. 95-1131, 1998 WL 1031507 (W.D. Pa. Oct. 13, 1998) .......... 21

*In re Live Concert Antitrust Litig.*, 247 F.R.D. 98 (C.D. Cal. 2007) .......... *passim*

*In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12 (D.D.C. 2001) .......... 13

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D 493 (S.D.N.Y. 1996) .......... 21

*In re Online DVD Rental Antitrust Litig.*, No. M 09-2029 PJH, 2010 WL 5396064 (N.D. Cal. Dec. 23, 2010) .......... *passim*

*In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231 (E.D.N.Y. 1998) .......... 1, 12

Case4:05-cv-00037-YGR Document488 Filed01/25/11 Page9 of 34

**Page**

*In re Potash Antitrust Litig.*, 159 F.R.D. 682 (D. Minn. 1995) .....21

*In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346 (N.D. Cal. 2005) ..... *passim*

*In re Static Random Access (SRAM) Antitrust Litig.*, No. C-07-01819 CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) .....22

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603 (N.D. Cal. 2009) ..... *passim*

*In re Tableware Antitrust Litig.*, 241 F.R.D. 644 (N.D. Cal. 2007) ..... *passim*

*In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68 (E.D.N.Y. 2000), *aff'd*, 280 F.3d 124 (2d Cir. 2001) .....16

*Krehl v. Baskin-Robbins Ice Cream Co.*, 78 F.R.D. 108 (C.D. Cal. 1978) .....12

*Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207 (9th Cir. 1977) .....13, 18

*Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830 (9th Cir. 1982) .....20, 21

*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998) .....23

*Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995) .....13, 17

*Slaven v. BP Am., Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000) .....23

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .....15

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159 (C.D. Cal. 2002) .....14

*Tucker v. Apple Computer Inc.*, No. 66-cv-04457-JW (N.D. Cal.) .....3

Case4:05-cv-00037-YGR Document488 Filed01/25/11 Page6 of 34

Page

*United Steel, Paper &Forestry, Rubber Mfg. Energy v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010) ....11

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ....22

*Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 89 S. Ct. 1562 (1969) ....19

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§2 .... *passim*
§15 ....2

28 U.S.C.
§1337 ....2

Federal Rules of Civil Procedure
Rule 23 .... *passim*
Rule 23(a) ....4, 12, 14, 15
Rule 23(a)(1) ....12
Rule 23(a)(2) ....12
Rule 23(a)(3) ....14
Rule 23(a)(4) ....15, 23
Rule 23(b)(3) ....5, 12, 16, 19
Rule 23(g)(1) ....23
Rule 26(e) ....7
Rule 56(f) ....6

**SECONDARY AUTHORITIES**

2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, §4:32 (4th ed. 2002) ....23

6 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, §18:1 (4th ed. 2002) .... *passim*

Joshua P. Davis & Eric L. Cramer, *Antitrust, Class Certification, and the Politics of Procedure*, 17 Geo. Mason L. Rev. 969, 983-84 (2010) ....1, 16, 19

593800_1

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL) - v -

Case4:05-cv-00037-JW Document468 Filed01/25/11 Page9 of 34

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on April 18, 2011, at 9:00 a.m., before the Honorable James Ware, in Courtroom 8, 4th Floor of the above-entitled Court, located at 280 South First Street, San Jose, California, Plaintiffs Melanie Tucker, Mariana Rosen, and Somtai Troy Charoensak (collectively "Plaintiffs"), will move the Court for class certification and the appointment of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Class Counsel.

**RELIEF SOUGHT**

Plaintiffs respectfully seek certification of the following class for purposes of their federal Sherman Act Section 2 claims and their derivative California Unfair Competition Law ("UCL") claim:

> All persons or entities in the United States (excluding federal, state and local governmental entities, Apple, its directors, officers and members of their families) who purchased an iPod directly from Apple between October 1, 2004 and March 31, 2009 ("Class Period").

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs request class certification of their claims that Defendant Apple, Inc. ("Apple") unlawfully maintained and/or attempted to maintain its monopolies of the digital audio file market and the portable digital media player market through anticompetitive conduct taken under the false pretext that its actions were required by its contracts with the record labels and benefited consumers. The Court has already ruled that Plaintiffs have adequately alleged viable federal antitrust claims under Section 2 of the Sherman Act and a viable state law claim under the UCL. *See* Dkt. No. 377. Plaintiffs seek damages for the supracompetitive price paid for iPods as a consequence of Apple's alleged anticompetitive conduct.

As the Supreme Court, other courts, and commentators have recognized, few cases are better candidates for class-wide resolution than antitrust actions. *Amchem Prods. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 2250 (1997) ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."); *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 238 (E.D.N.Y. 1998) ("Antitrust claims are well suited for class actions."); *see generally* Joshua P.

Davis & Eric L. Cramer, *Antitrust, Class Certification, and the Politics of Procedure*, 17 Geo. Mason L. Rev. 969, 983-84 (2010) ("*Davis*") ("because the predominant issues in antitrust cases tend to be common to the class, for at least two decades courts have routinely certified classes in antitrust cases in which direct purchasers seek damages – perhaps more regularly than in any other field of substantive law").

And class actions, in turn, "play an important role in the private enforcement of antitrust laws." *In re Online DVD Rental Antitrust Litig.*, No. M 09-2029 PJH, 2010 WL 5396064, at *3 (N.D. Cal. Dec. 23, 2010); *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 648 (N.D. Cal. 2007); *accord In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *3 (N.D. Cal. June 5, 2006) ("*DRAM*"); *see generally* 6 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, §18:1 (4th ed. 2002) ("*Newberg*"). In the words of the Supreme Court:[1]

> Every violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress. This system depends on strong competition for its health and vigor, and strong competition depends, in turn, on compliance with antitrust legislation. In enacting these laws, Congress had many means at its disposal to penalize violators. It could have, for example, required violators to compensate federal, state, and local governments for the estimated damage to their respective economies caused by the violations. But, this remedy was not selected. Instead, Congress chose to permit all persons to sue to recover three times their actual damages every time they were injured in their business or property by an antitrust violation. By offering potential litigants the prospect of a recovery in three times the amount of their damages, Congress encouraged these persons to serve as "private attorneys general."
>
> * * *
>
> Congress has given private citizens rights of action for injunctive relief and damages for antitrust violations without regard to the amount in controversy. 28 U.S.C. §1337; 15 U.S.C. §15. Rule 23 of the Federal Rules of Civil Procedure provides for class actions that may enhance the efficacy of private actions by permitting citizens to combine their limited resources to achieve a more powerful litigation posture.

*Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262-66, 92 S. Ct. 885, 891-93 (1972). Given the salutary role of the class mechanism in private antitrust actions, any doubt under Rule 23 is to be

---

[1] Unless otherwise noted, citations are omitted and emphasis is added.

resolved in favor of certification. *Online DVD*, 2010 WL 5396064, at *3; *see also Tableware*, 241 F.R.D. at 648; *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005).

Plaintiffs' Section 2 claims against Apple Inc. ("Apple") are particularly suited for class treatment because ***every*** element of those claims can and will be established by evidence and expert economic analysis common to all members of the proposed class of iPod purchasers. The predominance of common issues is confirmed in the declaration of esteemed Stanford economist, Professor *Emeritus* Roger G. Noll who, based on his expertise and the data produced by Apple, identifies the established methodologies that can be used to prove the requisite elements on a class-wide basis. *See* Declaration of Roger G. Noll, filed concurrently ("Noll Decl."). As shown below, Professor Noll's expert analysis is already more complete than his earlier declaration upon which the Court previously certified Plaintiffs' monopolization and attempted monopolization claims, and will only be further bolstered as Plaintiffs continue to digest the voluminous materials produced by Apple on the very eve of the discovery deadline.

## II. PROCEDURAL BACKGROUND

### A. Earlier Class Certification

In their original consolidated complaint, Plaintiffs alleged both tying and monopolization claims against Apple under Sections 1 and 2 of the Sherman Act.[2] Dkt. No. 107. Plaintiffs moved to certify damages and injunctive relief classes in 2008, supported by an initial declaration from Professor Noll. Dkt. Nos. 165, 166-1. On December 22, 2008, the Court certified classes for Plaintiffs' Section 2 claims, holding that common evidence would be used to prove these claims. Dkt. No. 196 (Order Granting Plaintiffs' Motion for Class Certification As To Counts Two, Three, Four, Five, Six and Seven Only And Appointing Class Counsel; *Sua Sponte* Order Reconsidering

---

2 Plaintiff William Slattery filed a complaint against Apple in 2005 (Dkt. No. 1) and was later dismissed as a Plaintiff. Plaintiffs Somtai Troy Charoensak and Mariana Rosen substituted as new lead Plaintiffs and filed a complaint against Apple in 2006. *See* Dkt. Nos. 73, 77. Plaintiff Melanie Tucker filed a complaint in 2006. *See Tucker v. Apple Computer Inc.*, No. 66-cv-04457-JW (N.D. Cal.), *Tucker* Dkt No. 1. On August 23, 2006 the *Tucker* action was related to the instant case (Dkt. No. 76) and an Amended Consolidated Complaint was filed on April 19, 2007. Dkt. No. 107.

Defendant's Motion to Dismiss Count One And Requiring Further Briefing).[3] Specifically addressing the market definition and market power elements of Plaintiffs' Section 2 claims, this Court found:

> Both of these threshold issues [relevant market and market power] are complex factual inquiries that do not depend in any way upon individualized proof. For example, whether an "online music market" exists, and whether Apple has power in that market, are broad questions that exist independently of each individual Plaintiff. If each Plaintiff were forced to proceed individually on their antitrust claims, each would have to prove market and market power as the foundational elements of their cases. As such, questions of market definition, market share, and market power are common to all members of the proposed class.

*Id.* at 6-7. The Court further held that the other elements of Plaintiffs' monopolization and attempted monopolization claims were likewise subject to common proof:

> Questions surrounding the willfulness of Apple's behavior are undoubtedly common to the class, as are questions of antitrust injury, especially if the injury alleged is that Apple uniformly charged consumers supracompetitive prices based on its purported monopoly position. Similar issues surrounding the intentionality of Apple's actions and antitrust injury will be integral to Plaintiffs' success on their attempted monopolization claim.

*Id.* at 8.

The Court specifically rejected Apple's argument that certification was inappropriate because individualized proof of injury was required, finding the predominance requirement satisfied by the "numerous common questions of law and fact involving [Apple]'s allegedly anticompetitive conduct." *Id.* at 12.[4] Finally, the Court held that a class action was "the superior method to adjudicate Plaintiffs' claims." *Id.* at 12. In a later order the Court clarified that it had considered but rejected Apple's argument that resellers should be excluded from the certified damages class. Dkt. No. 198 at 2 ("the Court implicitly included resellers in the certified class").

---

[3] Because of subsequent rulings and developments in the marketplace, discussed below, Plaintiffs' operative complaint does not include a claim for injunctive relief.

[4] The Court also rejected Apple's argument that individualized proof of injury prevented the named Plaintiffs' claims from being typical of those of the class: "Each of the antitrust causes of action asserted in this case are based on domestic iPod purchases directly from Apple, and relate to the same allegedly anticompetitive conduct associated with the iPod and the ITMS. Given that the named Plaintiffs allege antitrust injury based on exactly this type of iPod purchase, their claims are sufficiently co-extensive with those of absent class members to satisfy the typicality requirement of Rule 23(a)." *Id.* at 8-9.

Case4:05-cv-00037-YGR Document486 Filed01/25/11 Page11 of 34

The Court declined to certify Plaintiffs' tying claims, however, deferring that issue until the parties could brief the question as to whether the market-level coercion alleged by Plaintiffs was sufficient to support their tying claims under Section 1. *Id.* at 7-8. The Court ultimately dismissed Plaintiffs' tying claims, holding that Plaintiffs' allegations of technological interoperability between iPods and music purchased from iTMS (now known as the iTunes Store) did not constitute unlawful tying under Section 1 under either a per se or a rule of reason theory. Dkt. No. 213; Dkt. No. 274.

As a result of its ruling dismissing Plaintiffs' tying claims, the Court *sua sponte* vacated its order certifying the monopolization claims. The Court held that it was unable to provide clear definitions of the affected classes because Plaintiffs' monopoly maintenance claims remained "inextricably interwoven" with allegations supporting the dismissed claims. Dkt. No. 303 at 10. The Court invited Plaintiffs to further amend their complaint to clarify that the monopoly claims are not dependent upon the allegations of tying. *Id.* at 3. Notably, the Court made clear in its decertification order (Dkt. No. 303) that it was ***not*** decertifying the classes on the grounds raised by Apple in its motion to decertify:

> [T]his decertification is not dependent on the grounds raised by Defendant in its Motion to decertify, namely, that Plaintiffs' expert, Dr. Roger G. Noll's, report provides an inadequate method for proving common impact on the class to meet the predominance requirement of Rule 23(b)(3). The Court rejects Defendant's contention and decertifies the Rule 23(b)(3) without prejudice and only in order to ensure that a proper class would be defined in light of this Order.

*Id.* at 2 n.6.

**B. Plaintiffs' Narrowed Section 2 Claims**

In accordance with the Court's directive, on January 26, 2010, Plaintiffs filed an Amended Consolidated Complaint ("ACC") alleging violations of Section 2 of the Sherman Act and California's UCL statute that are ***not*** premised on the technological tie between the iPod and digital audio files purchased through the iTunes Store. Dkt. No. 322, ¶¶2-4. The ACC instead focuses on Apple's affirmative and pretextual use of software updates beginning in 2004 to maintain or attempt to maintain its monopolies in the digital audio file and digital media player markets. *Id.*, ¶¶52-67.

Case4:05-cv-00037-YGR Document480 Filed01/25/11 Page12 of 34

The Court, on June 29, 2010, sustained the ACC over Apple's motion to dismiss and alternative motion for summary judgment, rejecting Apple's assertion that the willfulness element of a Section 2 claim was inadequately plead. *See* Dkt. No. 377 at 5-6.[5] The Court wrote:

> The Court finds that Plaintiffs have alleged facts, which if proven true, would suffice to hold Defendant liable under Section 2 of the Sherman Act. Specifically, Plaintiffs allege that Defendant used software updates to maintain its monopolies in both the digital media and portable digital media player markets by preventing competing online music stores from offering customers digital files that could be played on the iPod, and by preventing competing music players from being able to play digital files purchased from the iTS. . . . Thus, Plaintiffs' allegations, if proven true, would satisfy the second element of a claim for monopolization under Section 2 of the Sherman Act.

*Id.* at 6.[6]

Notably, Apple sought summary dismissal of the Section 2 claims using a declaration in which Apple employee Jeffrey Robbin represented that Apple's conduct was motivated by its obligation to protect the digital rights management ("DRM") interests of the music labels. *Id.* at 7, 9-11 (noting Apple's contention that the updates were aimed at stopping hacks and complying with agreements with the labels). The Court rejected Apple's bid for summary resolution as insufficiently supported and premature, finding that Plaintiffs were entitled to conduct discovery in order to challenge the validity of Apple's business justification defense:

> The Court finds that the Declaration of one of Defendant's own employees is an insufficient basis upon which to find that there is no triable issue of fact as to Defendant's claimed business justification in the face of Plaintiffs' request for further discovery under Federal Rule of Civil Procedure 56(f). The Robbin Declaration provides little detail as to the nature of the hacks and how they worked, or the manner in which Defendant's software updates addressed the threat posed by the hacks. Furthermore, the temporal proximity between RealNetworks' announcement of its iPod-compatible Harmony technology in July 2004 and the release of iTunes 4.7, which ended that compatibility, in October 2004 raises questions about the real purpose of Defendant's software redesign that Plaintiffs should at least have an opportunity to explore through additional discovery.

*Id.* at 12-13.

---

[5] Apple did not challenge the first or third elements of Plaintiffs' Section 2 allegations, namely, that Apple possesses monopoly power in a relevant market and that its conduct has caused antitrust injury, in either its motion to dismiss or alternative motion for summary judgment. *Id.* at 5.

[6] The Court dismissed Plaintiffs' Cartwright Act, California Legal Remedies Act ("CLRA") and Common Law monopoly claims but upheld their UCL claims. *Id.* at 7-9.

Case4:05-cv-00037-YGR Document480 Filed01/25/11 Page13 of 34

In short, the Court has squarely framed the fundamental, common substantive issue to be litigated under the ACC: the validity of Apple's purported "business justification" defense.

C. **Factual Background**

Formal and informal discovery accomplished to date, despite Apple's significant delays,[7] amply demonstrates that Plaintiffs claims are proper for class treatment. Common issues regarding Apple's anticompetitive conduct swamp any purported issues affecting only individual members of the proposed class.

Plaintiffs allege that Apple obtained monopoly power in the market for digital audio files almost immediately after the launch of the iTunes Store in 2003 because Apple was the first legal download service to offer a comprehensive library of music. Apple was then able to leverage that power into monopoly power in the portable digital media player market because the iPod was the only portable digital media player that could directly play music purchased through the iTunes Store. Dkt. No. 322, ¶¶40-51, 62; *see also* Noll Decl. at 44-45, 48.

Evidence defining the digital audio file market and the portable digital media player market and demonstrating Apple's monopoly power in these markets is susceptible to common proof and will predominate over any individual issues. Noll Decl. at 29-51; *see also* §IIIB.1. [REDACTED]

[REDACTED][8] Ex. 1 at 24:6-9; Noll Decl. at 48. Common evidence also demonstrates [REDACTED]

---

[7] Plaintiffs have been greatly hampered by Apple's "data dump" during the month leading up to the discovery deadline and the two weeks following that deadline, during which time it produced more than a million pages of documents and data that Plaintiffs had requested in 2009. *See* Declaration of Paula M. Roach in support of renewed motion for class certification, filed concurrently ("Roach Decl."), ¶¶8-9. Plaintiffs accordingly reserve the right to supplement their expert report in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

[8] Unless otherwise noted, all references to "Ex" and "Exs." are to the declaration of Bonny E. Sweeney in support of Plaintiffs' renewed motion for class certification, filed concurrently ("Sweeney Decl.").

[redacted] Noll Decl. at 48; Ex. 1 at 184:15-18; Exs. 2-4. Similarly, Plaintiffs will use common evidence [redacted] Noll Decl. at 46-51; Ex. 5 at 30:21-31:5; *see also* Dkt. No. 196 at 6-7. This evidence is common to all class members.

Plaintiffs will also rely on common evidence to prove that Apple willfully maintained its monopolies in the relevant markets. [redacted]

As a result of Apple's decision to use FairPlay, digital audio files purchased from other internet sites (such as Amazon.com or Walmart.com) could not play directly on an iPod. Dkt. No. 322, ¶¶68-72. Similarly, songs purchased from the iTunes Store could not play directly on any portable digital media player other than the iPod. *Id.* [redacted]

---

9 [redacted]

[Page content redacted]

1  [redacted]
2  [redacted]
3  [redacted]
4  [redacted]
5  [redacted]
6  [redacted]
7  [redacted]
8  [redacted]
9  [redacted]
10 [redacted]
11 [redacted]
12 [redacted]
13 [redacted]
14 [redacted]
15 [redacted]
16 [redacted]
17 [redacted]
18 [redacted]
19 [redacted]
20      Proof that Apple used unnecessary and non-improving iTunes software and iPod firmware
21 updates to exclude RealNetworks and other potential rivals from the market is common to the class
22
23 [redacted]
24 [redacted]
25 [redacted]
26 [redacted]
27 [redacted]
28

---

593800_1

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)                                    - 10 -

Case4:05-cv-00037-YGR Document486 Filed01/25/11 Page19 of 34

because it will focus on Apple's conduct. Similarly, evidence that Apple's asserted business justification is mere pretext is also common to the class:[13] Plaintiffs will rely on common evidence to prove that the disabling updates provided no benefit to consumers because the recording labels did not, despite Apple's claims to the contrary, threaten to withhold music unless Apple shut down Harmony. [REDACTED] As a result of Apple's conduct, consumers were further restricted in the choice of music that was compatible with the iPod.[14]

## III. THE REQUIREMENTS OF RULE 23 ARE FULLY SATISFIED

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 2153 (1974); *see also Online DVD*, 2010 WL 5396064, at *2. Arguments evaluating the weight of evidence or the merits of a case are improper at the class certification stage. *United Steel, Paper &Forestry, Rubber Mfg. Energy v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (reversing a denial of a claim certification motion the court held that district courts "'may not go so far. . . as to judge the validity of these claims'"). The Court is instead "'bound to take the substantive allegations of the complaint as true.'" *Tableware*, 241 F.R.D. at 648 (quoting *Blackie v. Barrack*, 524 F.2d 891,

13 [REDACTED]

14 [REDACTED]

Case4:05-cv-00037-YGR Document486 Filed01/25/11 Page18 of 34

901 n.17 (9th Cir. 1975)). Nor may a court weigh the merits of conflicting expert evidence. *See In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 135 (C.D. Cal. 2007) (challenges to expert opinions constitute merits determinations not properly resolved at the class certification stage).

As shown below, certification of Plaintiffs' Section 2 claims and UCL claim, as well as Apple's affirmative defenses, is even more clearly warranted now than it was when the Court certified those claims earlier in this litigation.

**A. Rule 23(a) Is Satisfied**

**1. Numerosity**

The numerosity requirement is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'A finding of numerosity may be supported by common sense assumptions, and it is especially appropriate in antitrust actions brought under Rule 23(b)(3).'" *Tableware*, 241 F.R.D. at 648 (quoting *Playmobil*, 35 F. Supp. 2d at 239); *see also Online DVD*, 2010 WL 5396064, at *3 ("plaintiffs need not state the 'exact' number of potential class members"); *Rubber Chems.*, 232 F.R.D. at 350. "A potential class of 1,700 members is, *a fortiori*, sufficiently numerous to preclude joinder." *Krehl v. Baskin-Robbins Ice Cream Co.*, 78 F.R.D. 108, 114 (C.D. Cal. 1978). The fact that a class is geographically dispersed supports class certification. *DRAM*, 2006 WL 1530166, at *3.

[REDACTED] Because the number of putative class members in the United States is unquestionably in the millions, numerosity is easily satisfied. *See Online DVD*, 2010 WL 5396064, at *3; *Live Concert*, 247 F.R.D. at 116 (numerosity satisfied by "thousands" of class members); *Tableware*, 241 F.R.D. at 648-49 (same); *DRAM*, 2006 WL 1530166, at *3 (same).

**2. Commonality**

Commonality is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is permissively construed, such that "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of

Case4:05-cv-00037-YGR Document486 Filed01/25/11 Page19 of 34

salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In the antitrust context, "[a]n allegation of . . . monopolization . . . will establish a common question." *Newberg*, §18:5.

To prove their Section 2 monopolization claims, Plaintiffs must show: (1) that Apple possessed monopoly power in the relevant market; (2) that Apple willfully acquired or maintained that power; and (3) that Apple's conduct has caused antitrust injury. *See* Dkt. No. 377 at 5; *see also Cost Mgmt. Servs. v. Wash. Natural Gas Co.*, 99 F.3d 937, 949 (9th Cir. 1996); *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1218 (9th Cir. 1977). Similarly, to establish their Section 2 attempted monopolization claim, Plaintiffs must show: (1) a specific intent by Apple to monopolize the relevant market; (2) predatory or anticompetitive conduct by Apple designed to control prices or destroy competition; (3) a dangerous probability of success; and (4) causal antitrust injury. *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995); *Davis v. Pac. Bell*, 204 F. Supp. 2d 1236, 1241 (N.D. Cal. 2002).

Because none of these elements of either Section 2 violation turns on the individual circumstances of any one product purchaser, courts have consistently certified Section 2 monopolization and attempted monopolization claims for class-wide resolution of those claims. *See, e.g., Live Concert*, 247 F.R.D. at 131; *Behrend v. Comcast Corp.*, No. 03-6604, 2007 WL 2972601, at *12-*14 (E.D. Pa. Oct. 10, 2007); *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 29-30 (D.D.C. 2001).

Here, the legal issues common to all class members likewise include virtually every element of the federal antitrust claims alleged against Apple: What is the proper scope of the relevant markets? What are Apple's respective market shares? Does Apple enjoy market power in these markets? Has Apple used software updates to maintain or attempt to maintain monopoly power in these markets? Are Apple's asserted business justification mere pretext? If Apple is liable, how are damages to be calculated? These and many other common issues focusing on the common conduct of Apple are squarely raised in this action, amply demonstrating commonality. *Compare In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 609 (N.D. Cal. 2009) ("*SRAM*") (commonality satisfied based on common issues such as market definition, monopoly power,