# EXHIBIT 30

[Part 2 of 2]

anticompetitive conduct and casual antitrust injury); *Live Concert*, 247 F.R.D. at 117 (same); *Tableware*, 241 F.R.D. at 649 (same).

### 3. Typicality

The third Rule 23(a) requirement, typicality, is met where "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). This requirement is "permissive," and to be "liberally construed." *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 164 (C.D. Cal. 2002). A class representative's "claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *SRAM*, 264 F.R.D. at 609. In the antitrust context, typicality "will be established by plaintiffs and all class members alleging the same antitrust violations by the defendants." *Estate of Garrison v. Warner Bros., Inc.*, No. CV 95-8328 RMT, 1996 WL 407849, at *2 (C.D. Cal. June 25, 1996); *accord Newberg*, §18.8.[15] Plaintiffs' claims need not "be identical to the claims of class members." *Online DVD*, 2010 WL 5396064, at *4. "Rather, typicality results if the representative plaintiffs' claims 'arise[] from the same event, practice or course of conduct that gives rise to the claims of the absent class members and if their claims are based on the same legal or remedial theory." *Id.*

Here, Plaintiffs allege precisely the same antitrust claims on behalf of themselves and every other person that purchased an iPod directly from Apple during the Class Period, and seek relief for payment of supracompetitive prices based on the same legal theories. Dkt. No. 322, ¶¶6-8. Typicality is thus satisfied. *Cf. SRAM*, 264 F.R.D. at 609 (typicality requirement met by direct purchaser plaintiffs); *Live Concert*, 247 F.R.D. at 117-18 (same); *Tableware*, 241 F.R.D. at 649 (same).

---

[15] The typicality requirement "does not mandate that products purchased, methods of purchase, or even damages of the named plaintiffs must be the same as those of the absent of the class members." *SRAM*, 264 F.R.D. at 609; *see also DRAM*, 2006 WL 1530166, at *4 (typicality satisfied "even though the plaintiff followed different purchasing procedures, purchased in different quantities or at different prices, or purchased a different mix of products than did the members of the class").

### 4. Adequacy

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy under Rule 23(a)(4) turns on two basic questions: (1) whether named plaintiffs and their counsel have any conflicts of interest with class members; and (2) whether named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Id.*; *see also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Live Concert*, 247 F.R.D. at 118. To disqualify class representatives or class counsel, perceived conflicts of interest "must go to the heart of the litigation, relating to the subject matter of the suit." Newberg, §18:14; *accord Blackie*, 524 F.2d at 909; *see also Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) ("[T]his circuit does not favor denial of class certification on the basis of speculative conflicts.").

Here, the interests of Plaintiffs and the rest of the proposed classes are entirely aligned: as direct purchasers of iPods from Apple, all share the same interest in determining whether Apple's use of software updates to exclude competitors violated antitrust law, whether competition was thereby stifled, and whether Plaintiffs and class members consequently paid Apple supracompetitive prices for their iPods. *DRAM*, 2006 WL 1530166, at *6 (adequacy of representation met because "the named plaintiffs allege that all members of the proposed class paid artificially inflated prices as a result of defendants' [antitrust violation] during the relevant class period, that all suffered similar injury as a consequence of the conspiracy, and that all seek the same relief"). There are no conflicts precluding class certification. *Compare SRAM*, 264 F.R.D. at 609-10 (no conflict precluding certification of antitrust claims); *Live Concert*, 247 F.R.D. at 119-20 (same); *Tableware*, 241 F.R.D. at 649 (same).

Nor is there any basis to doubt that Mr. Charoensak, Ms. Rosen, and Ms. Tucker are motivated advocates for the proposed class. They have retained legal counsel with considerable experience in the prosecution of major class and antitrust litigation, including Robbins Geller, the firm which the Court previously designated as co-lead class counsel for this litigation. Ex. 30; *see also* Dkt. No. 106 (Order Consolidating Related Cases; Appointing Co-Lead Counsel); *Online DVD*, 2010 WL 5396064, at *4 ("representation will be found to be adequate when the attorneys

representing the class are qualified and competent"). Furthermore, all three proposed class representatives have already given day-long depositions, have submitted their iPods for a forensic inspection by Apple's counsel, and have produced voluminous (and needlessly intrusive) documentation to Apple as part of the discovery process, including: copies of all music files stored on their personal computers; copies of their iTunes Purchase history; iTunes account names and passwords; copies of receipts documenting their iPod purchases from Apple; and lists of every compact disc they currently own. Sweeney Decl., ¶¶2, 3.

### B. Rule 23(b)(3) Is Satisfied

Under Rule 23(b)(3), the Court may certify a class if it determines: (1) that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The "predominance" and "superiority" factors are closely related: when common issues predominate, class actions achieve Rule 23's objectives of economy and efficiency by minimizing costs and avoiding the confusion that would result from inconsistent outcomes. *Tableware*, 241 F.R.D. at 651.

#### 1. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. "A straightforward approach to predominance is to focus on what plaintiffs will need to prove at trial and then to ask whether they can attempt to offer that proof through predominantly common evidence." *Davis*, 17 Geo. Mason L. Rev. at 971. In antitrust cases, issues of monopolization and attempted monopolization are central common issues which readily satisfy the predominance requirement. *SRAM*, 264 F.R.D. at 611 ("'[C]ommon liability issues such as . . . monopolization have, almost invariably, been held to predominate over individual issues.'"); *Newberg*, §18:26 (same); *see, e.g., In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68, 88 (E.D.N.Y. 2000), *aff'd*, 280 F.3d 124 (2d Cir. 2001) (each element of an attempt to monopolize claim focuses on conduct of the defendants and its effects in the relevant markets, factors that will not vary from plaintiff to plaintiff).

Here, as shown below and confirmed by Professor Noll, each element of Plaintiffs' Section 2 monopolization claims can and will be proved in this case through evidence common to every member of the proposed classes.[16]

***Monopoly Power***. Plaintiffs will rely on common evidence to define the relevant markets and to prove that Apple has market power in these markets. In *Rebel Oil*, the Ninth Circuit reiterated that market power in a Section 2 claim may be demonstrated in either of two ways: (1) direct evidence of injurious exercise of market power, such as evidence of restricted output and supracompetitive prices, or (2) circumstantial evidence of dominance in the relevant and significant barriers to entry and competitor expansion of output. *Rebel Oil*, 51 F.3d at 1434. Neither of these alternative approaches turns on proof of the idiosyncratic circumstances of the individual iPod purchaser. Noll Decl. at 19-23; 29-51; *see, e.g., Rebel Oil*, 51 F.3d at 1432-43 (reviewing evidence submitted in support of and in opposition to motion for summary judgment on attempt to monopolize claim).

Plaintiffs here can most easily demonstrate Apple's market power in the relevant markets ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, together with proof of barriers to entry. *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 464, 112 S. Ct. 2072, 2081 (1992) ("The existence of such power ordinarily is inferred from the seller's possession of a predominant share of the market."); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As Professor Noll has opined, all of the economic evidence regarding market definition, market share and barriers to entry is common to the class. Noll Decl. at 29-51. Should Apple choose to debate market definition or dispute its market power, Apple will only reinforce the predominance of common issues. *See, e.g., Live Concert*, 247 F.R.D. at 123-31(concluding that whatever the respective merits of the parties' positions, the issue of market definition and market power were predominate common issues supporting class certification).

---

[16] Similarly, because Plaintiffs' UCL claim relies on Plaintiffs' proof of its Section 2 claims, this claim will be proven through common proof. *See* Dkt. No. 377 at 8; *see also Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001).

593800_1

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL) - 17 -

1      ***Anticompetitive Conduct.*** "Anticompetitive conduct is behavior that tends to impair the
2  opportunities of rivals and either does not further competition on the merits or does so in an
3  unnecessarily restrictive way." *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 894 (9th
4  Cir. 2008) (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 n.32, 105 S.
5  Ct. 2847 (1985)). Where, as here, the alleged anticompetitive conduct focuses "'on the defendants'
6  conduct and not on the conduct of the individual class members,'" predominance is satisfied. *Online*
7  *DVD*, 2010 WL 5396064, at *6 n.3 (quoting *In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*,
8  No. 02-6030 (WHW), 2006 WL 891362, at *9 (D.N.J. April 4, 2006)); *see also Live Concert*, 247
9  F.R.D. at 131-32. As summarized above, Plaintiffs' Section 2 claims turn on Apple's own actions in
10 response to RealNetworks' introduction of the Harmony technology that was fully interoperable
11 ***without*** diminishing DRM protections and Apple's software changes to exclude other competitors.
12 *See* §II(C), above. As Professor Noll explains, economic analysis can address whether this conduct
13 "reduced competition in the market for portable digital media players" and whether it "was
14 anticompetitive or an example of superior efficiency." Noll Decl. at 58, 61.

15 [REDACTED]
16 [REDACTED]
17 [REDACTED]
18 [REDACTED]

19     ***Specific Intent to Monopolize.*** This element of the attempted monopolization claim can be
20 inferred from "'either specific intent coupled with monopoly power *or* from "proof of specific intent
21 to . . . exclude competition . . . accompanied by predatory conduct directed to accomplishing the
22 unlawful purpose.'"" *Moore*, 550 F.2d at 1219.

23 [REDACTED]
24 [REDACTED]
25 [REDACTED]
26 [REDACTED]
27 [REDACTED]
28 [REDACTED] The burden shifts to Apple to demonstrate

1  "'valid business reasons'" for its actions. *Eastman Kodak*, 504 U.S. at 483. Plainly, any and all
2  such proof of "business justification" will likewise focus on the conduct of Apple, statements and
3  conduct by the recording labels, a technical analysis of Apple's software updates, and evidence
4  regarding competitors, not the circumstances of any individual consumer. Noll Decl. at 66-68.

5      ***Dangerous Probability of Success***. In the Ninth Circuit a dangerous probability of success
6  required for an attempted monopolization claim may be inferred from the existence itself of
7  predatory or anticompetitive conduct. *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d
8  534, 544 (9th Cir. 1983). Once again, therefore, the evidence presented will concern Apple's own
9  company-wide actions, not the actions of any individual iPod purchaser.

10      ***Antitrust Impact***. In a direct purchaser antitrust action, the mere payment of artificially high
11  prices is sufficient to establish injury in fact. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 729, 97 S.
12  Ct. 2061 (1977) ("[T]he overcharged direct purchaser . . . is the party 'injured in his business or
13  property' within the meaning of [the Clayton Act]."). Nevertheless, one tactic in opposing class
14  certification in antitrust cases is to isolate and focus on the question of antitrust impact, in the hopes
15  of persuading the court that such impact can only be proven on an individual basis. *Davis*, 17 Geo.
16  Mason L. Rev. at 985-86. To demonstrate antitrust impact at trial, however, Plaintiffs need only
17  show *some* injury suffered as a consequence of the alleged anti-competitive behavior. *See Zenith*
18  *Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 114 n.9, 89 S. Ct. 1562, 1572 n.9 (1969) (noting
19  the "burden of proving the fact of damage . . . is satisfied by . . . proof of *some* damage flowing from
20  the unlawful [conduct]; inquiry beyond this minimum point goes only to the amount and not the fact
21  of damage") (emphasis in original).

22      Antitrust impact is typically established for class certification purposes through expert
23  testimony confirming that generally accepted economic methodologies are available to demonstrate
24  impact and to reasonably calculate damages on a class-wide basis. *SRAM*, 264 F.R.D. at 612; *Live*
25  *Concert*, 247 F.R.D. at 136; *DRAM*, 2006 WL 1530166, at *8; *Estate of Garrison*, 1996 WL 407849,
26  at *4. Apple concedes this is the applicable standard. *See, e.g.*, Dkt. No. 240 at 1 (Defendant's
27  Motion for Decertification of Rule 23(B)(3) Class) ("To obtain class treatment, the plaintiff must
28  show a reliable method for proving common impact on the purported class."). At the class

certification stage, then, Plaintiffs "need only advance a plausible methodology to demonstrate that antitrust injury can be proven on a class-wide basis." *DRAM*, 2006 WL 1530166, at *9; *see also Online DVD*, 2010 WL 5396064, at *9-*10; *Live Concert*, 247 F.R.D. at 146-47.

Plaintiffs have done just that. Professor Noll, in his Declaration, explains the different ways Apple's alleged anticompetitive actions have harmed competition in the relevant markets, not only through supracompetitive pricing for iPods (specifically addressed below in the context of ways to calculate antitrust damages), but also: (a) "dead-weight loss" that occurs when prices exceed the incremental cost of production; (b) reduced intensity of competition among other firms in the respective markets; and (c) the adverse effects of "lock-in" due to technological incompatibility, which extends not only to reduced choice for consumers but also to reduced incentive to innovate by competitors. Noll Decl. at 63-66. Professor Noll confirms that the economic evidence to establish these harms, involving product features and market outcomes, is common to all class members. *Id.* at 65. *Cf. Live Concert*, 247 F.R.D. at 144 ("Plaintiffs have demonstrated that several generally accepted methodologies can be used to prove class-wide impact through the use of common evidence.").

Although the Court has already rejected Apple's attack on the sufficiency of Professor Noll's earlier report for purposes of class certification, (Dkt. No. 377 at 2 n.6) Professor Noll has revised his report to the extent possible given Apple's calculated discovery delay. *See* Noll Decl. at 14-19; Roach Decl., ¶¶8-10. Professor Noll has confirmed that class-wide impact can be demonstrated through the use of common evidence. For example, as he explains in his Declaration, each of the three damages methods that he proposes using in this case "produces a formula for damages that is based on data about prices, product characteristics, costs, and conditions in the market. Each method would be based on data and analysis for all iPods sold to all direct purchasers, and so would be predominantly common to class members." Noll Decl. at 28; *see generally* Noll Decl. at 68-84.

***Antitrust Damages.*** Once antitrust injury is established, the overall burden of proving damages is eased significantly under the Sherman Act. *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 836 (9th Cir. 1982); *see also Online DVD*, 2010 WL 5396064, at *11 ("plaintiffs have 'a limited burden with respect to showing that individual damages issues' do not predominate"); *Live*

*Concert*, 247 F.R.D. at 144-45 (citing *Moore*, 682 F.2d 830, among other authorities); *DRAM*, 2006 WL 1530166, at *10. Furthermore, "the use of an aggregate approach to measure class-wide damage is appropriate." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 324 (E.D. Mich. 2001). Individual damages issues are thus generally no bar to certification of antitrust claims. *Online DVD*, 2010 WL 5396064, at *11; *Live Concert*, 247 F.R.D. at 137 (collecting cases); *In re Rubber Chems.*, 232 F.R.D. at 354; *see generally Newberg*, §18:27. "Plaintiffs need not supply a 'precise damage formula,' but must simply offer a proposed method for determining damages that is not 'so insubstantial as to amount to no method at all.'" *Online DVD*, 2010 WL 5396064, at *11 (quoting *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 697 (D. Minn. 1995)).

Here again the quantification of damages only ***reinforces*** predominance because Plaintiffs will calculate those damages on a class-wide basis, based upon one or more of the three best established and most reliable aggregate damages methodologies. *Compare SRAM*, 247 F.R.D. at 144-47; *DRAM*, 2006 WL 1530166, at *10. Specifically, Professor Noll confirms that antitrust damages can be calculated under the "before-and-after" method, the "yardstick" method or the "mark-up" method – all recognized methodologies that are, in Professor Noll's opinion, suitable for use in this case, based upon documents and data produced by Apple and reasonably relied upon by experts in the field. Noll Decl. at 68-84.

Courts have repeatedly acknowledged these methodologies as accepted means of calculating class-wide damages in the antitrust context. *See, e.g., DRAM*, 2006 WL 1530166, at *10.[17] Decisions in this district subsequent to *DRAM* continue to recognize the validity of these methods and have certified classes accordingly. *See, e.g., Tableware*, 241 F.R.D. at 652 (the materials

---

[17] *See also In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D 493, 521 (S.D.N.Y. 1996) (holding the "'yardstick'" method for calculating damages, which "'compares profits earned or prices paid by the plaintiff with the corresponding data for a . . . market unaffected by the violation'" is "an accepted means of measuring damages in an antitrust action"); *In re Indus. Silicon Antitrust Litig.*, No. 95-1131, 1998 WL 1031507, at *3 (W.D. Pa. Oct. 13, 1998) (finding expert's before-and-after comparison proper model for showing antitrust damages); *In re Corrugated Container Antitrust Litig.*, No. MDL 310, 1979 WL 1751, at *2 (S.D. Tex. Dec. 21, 1979) (approving, over objection, damages amount in antitrust settlement because expert's damages "estimate was based on a before-and-after model, using the four years within the statute of limitations as 'before' and the years 1977 and 1978, after the grand jury investigation was underway, as 'after'").

593800_1

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL) - 21 -

supporting the before-and-after method "suffice to show that means exist for proving impact on a class-wide basis"); *SRAM*, 264 F.R.D. at 615 (finding "before and after" and "cost data" methods sufficient for certification of indirect purchase class); *In re Static Random Access (SRAM) Antitrust Litig.*, No. C-07-01819 CW, 2008 WL 4447592, at *6-*7 (N.D. Cal. Sept. 29, 2008) (same methods suffice for certification of direct purchaser class).

Apple may attempt to attack Professor Noll's application of these accepted models for quantifying class-wide damages, but this is neither the time nor place to resolve any such battle of the experts: "'It is not necessary that plaintiffs show that their expert's methods will work with certainty at this time. Rather, plaintiffs' burden is to present the court with a likely method for determining class damages.'" *Tableware*, 241 F.R.D. at 652 (quoting *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 693 (N.D. Ga. 1991)); *accord Live Concert*, 247 F.R.D. at 110 ("a district court is not permitted to discount the testimony of a plaintiff expert merely because the defendant has challenged some aspect of the expert's opinion"); *Rubber Chems.*, 232 F.R.D. at 353 (same). At this stage, Plaintiffs need to only offer "realistic methodologies." *DRAM*, 2006 WL 1530166, at *10. As Justice Souter recently wrote:

> Plaintiffs have offered affidavits of their expert economist in support of a class-wide methodology for appraising damages depending on severity and duration of contamination. [Defendant's] effort to discredit this approach apparently portends a fight over admissibility and weight that would be identical in at least a high proportion of cases if tried individually.

*Gintis v. Bouchard Transp. Co.*, 596 F.3d 64, 67 (1st Cir. 2010) (vacating denial of class certification).

### 2. Superiority

Superiority is demonstrated where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Apple cannot seriously question the superiority of the class mechanism in resolving the antitrust claims asserted against it here; the resolution of the monopolization claims of each iPod purchaser on an individual basis is plainly not the preferable alternative. *Live Concert*, 247 F.R.D. at 148 (holding class mechanism clearly superior way to resolve antitrust claims, even if individualized damages analysis were assumed *arguendo* to be required); *DRAM*, 2006 WL

1530166, at *11 ("it would be unnecessarily duplicative, and judicially inefficient, for the court to mandate individual trials as to each class member"); *see generally* 2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, §4:32 (4th ed. 2002) ("It is only when such difficulties make a class action less fair and efficient than some other method, such as individual interventions or consolidation of individual lawsuits, that a class action is improper.").

Indeed, class certification is nothing less than essential if the private antitrust enforcement mechanism is to function at all. As stated in *Tableware*: "The modest amount at stake for individual plaintiffs . . . renders individual prosecution impractical; class treatment not only promotes judicial economy, it represents plaintiffs' *only* chance for adjudication." *Tableware*, 241 F.R.D. at 652 (citing *Amchem Prods.*, 521 U.S. at 616).

### C. There Exists a Readily Definable Class of Apple Customers

A Rule 23 class must be defined with reasonable specificity. *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). A class definition is "'definite enough'" to satisfy Rule 23 if it "'is administratively feasible for the court to ascertain whether an individual is a member.'" *Tableware*, 241 F.R.D. at 650 (quoting *O'Connor*, 184 F.R.D. at 319). The class definition proposed by Plaintiffs here – all persons who purchased specified products directly from Apple during a specified time period – unquestionably constitute "ascertainable" classes within the meaning of Rule 23. *See, e.g., Live Concert*, 247 F.R.D. at 105 (certifying class of: "'All persons who purchased tickets to any live rock concert in the Chicago Region directly from any of the Defendants or their affiliates or predecessors or agents during the period from June 19, 1998 to the present'"). This Court has certified far less precisely defined classes. *See, e.g., Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 650-51 (C.D. Cal. 2000) (certifying class defined as persons who have suffered or will suffer economic damage as a result of an oil spill and/or the ensuing clean-up effort).

### D. Appointment of Class Counsel

Rule 23(g)(1) requires the Court to appoint counsel to represent the interests of the class. *Rubber Chems.*, 232 F.R.D. at 355. For the reasons stated above in connection with the adequacy requirements of Rule 23(a)(4), and as has hopefully been demonstrated thus far in this litigation, the counsel retained by Plaintiffs to prosecute this class action are "well equipped" to vigorously

represent the proposed classes. *See* Ex. 30. Accordingly, the Court should again appoint Robbins Geller as counsel for the class.[18]

IV. **CONCLUSION**

All of Rule 23's requirements for the certification of Plaintiffs' monopolization, attempted monopolization and UCL claims against Apple have once again been satisfied. Plaintiffs' renewed motion for class certification should be granted: the Court should appoint Melanie Tucker, Mariana Rosen, and Somtai Troy Charoensak as Class Representatives and Robbins Geller as Lead Class Counsel.

DATED: January 18, 2011

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN J. STOIA, JR.
BONNY E. SWEENEY
THOMAS R. MERRICK
ALEXANDRA S. BERNAY
PAULA M. ROACH


                              s/ Bonny E. Sweeney
                            BONNY E. SWEENEY

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

THE KATRIEL LAW FIRM
ROY A. KATRIEL
1101 30th Street, N.W., Suite 500
Washington, DC 20007
Telephone: 202/625-4342
202/330-5593 (fax)

Co-Lead Counsel for Plaintiffs

---

[18] Although the Court appointed Robbins Geller as interim co-lead class counsel together with The Katriel Law Firm, Robbins Geller now moves separately for Lead Class Counsel and has given notice to The Katriel Law Firm.

| | |
|---|---|
| 1 | |
| 2 | BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C. |
| 3 | ANDREW S. FRIEDMAN<br>FRANCIS J. BALINT, JR. |
| 4 | ELAINE A. RYAN<br>TODD D. CARPENTER |
| 5 | 2901 N. Central Avenue, Suite 1000<br>Phoenix, AZ 85012 |
| 6 | Telephone: 602/274-1100<br>602/274-1199 (fax) |
| 7 | BRAUN LAW GROUP, P.C. |
| 8 | MICHAEL D. BRAUN<br>10680 West Pico Blvd., Suite 280 |
| 9 | Los Angeles, CA 90064<br>Telephone: 310/836-6000 |
| 10 | 310/836-6010 (fax) |
| 11 | MURRAY, FRANK & SAILER LLP<br>BRIAN P. MURRAY |
| 12 | JACQUELINE SAILER<br>275 Madison Avenue, Suite 801 |
| 13 | New York, NY 10016<br>Telephone: 212/682-1818 |
| 14 | 212/682-1892 (fax) |
| 15 | GLANCY BINKOW & GOLDBERG LLP<br>MICHAEL GOLDBERG |
| 16 | 1801 Avenue of the Stars, Suite 311<br>Los Angeles, CA 90067 |
| 17 | Telephone: 310/201-9150<br>310/201-9160 (fax) |
| 18 | Additional Counsel for Plaintiffs |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

593800_1

PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF LEAD CLASS COUNSEL - C-05-00037-JW(HRL)   - 25 -

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 18, 2011.

s/ Bonny E. Sweeney
BONNY E. SWEENEY

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:    bonnys@rgrdlaw.com

593800_1

Case 4:05-cv-00037-YGR Document 877-10 Filed 11/04/14 Page 15 of 16
Case 4:05-cv-00037-YGR Document 486 Filed 01/25/11 Page 39 of 54

CAND-ECF- Page 1 of 2

## Mailing Information for a Case 5:05-cv-00037-JW

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Todd David Carpenter**
  tcarpenter@bffb.com,pjohnson@bffb.com,rcreech@bffb.com

- **Andrew S. Friedman**
  khonecker@bffb.com,rcreech@bffb.com,afriedman@bffb.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com

- **Roy Arie Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com

- **Thomas Robert Merrick**
  tmerrick@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com,ewallace@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,ybennett@jonesday.com

- **Brian P Murray**
  bmurray@murrayfrank.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Paula Michelle Roach**
  proach@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Elaine A. Ryan**
  eryan@bffb.com,pjohnson@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Michael Tedder Scott**
  michaelscott@jonesday.com,amhoward@jonesday.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **John J. Stoia , Jr**
  jstoia@rgrdlaw.com

- **Bonny E. Sweeney**
  bonnys@rgrdlaw.com,christinas@rgrdlaw.com,E_file_sd@rgrdlaw.com,proach@rgrdlaw.com

- **Helen I. Zeldes**
  helenz@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)