UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA   *ORIGINAL*

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

| | | |
|---|---|---|
| THE APPLE IPOD ITUNES | ) | NO. C 05-00037 YGR |
| ANTITRUST LITIGATION | ) | |
| | ) | PAGES 1 - 202 |
| | ) | |
| | ) | PRETRIAL HEARING CONFERENCE |
| | ) | |
| | ) | |
| | ) | OAKLAND, CALIFORNIA |
| _____ ) | | WEDNESDAY, OCTOBER 30, 2014 |

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:          ROBBINS GELLER RUDMAN & DOWD LLP
                         655 WEST BROADWAY, SUITE 1900
                         SAN DIEGO, CALIFORNIA  92101
                    BY:  ALEXANDRA S. BERNAY,
                         JENNIFER N. CARINGAL,
                         PATRICK COUGHLIN,
                         STEVEN M. JODLOWSKI
                         CARMEN A. MEDICI,
                         BONNY E. SWEENEY, ATTORNEYS AT LAW


                         BONNETT FAIRBOURN FRIEDMAN & BALINT PC
                         4023 CAIN BRIDGE ROAD
                         FAIRFAX, VIRGINIA 22030
                    BY:  FRANCIS J. BALINT, JR.
                         ATTORNEY AT LAW


          (APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:        RAYNEE H. MERCADO, CSR NO. 8258

    PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

# **A P P E A R A N C E S (CONT'D.)**

FOR DEFENDANT:   BOIES, SCHILLER & FLEXNER LLP
          5301 WISCONSIN AVENUE NW
          WASHINGTON, D.C.  20015
     BY: WILLIAM A. ISAACSON,
       KAREN L. DUNN,
       MARTHA L. GOODMAN, ATTORNEYS AT LAW


          BOIES, SCHILLER & FLEXNER LLP
          1999 HARRISON STREET, SUITE 900
          OAKLAND, CALIFORNIA  94612
     BY: JOHN F. COVE, JR.,
       MEREDITH R. DEARBORN, ATTORNEYS AT LAW

          JONES DAY
          555 CALIFORNIA STREET, 26TH FLOOR
          SAN FRANCISCO, CALIFORNIA  94104-1500
     BY: DAVID C. KIERNAN, ATTORNEYS AT LAW



           --O0O--

```
 1   WEDNESDAY, OCTOBER 29, 2014                      9:31 A.M.

 2                     P R O C E E D I N G S

 3           THE CLERK:  CALLING CIVIL ACTION 05-0037, THE APPLE

 4   IPOD ITUNES ANTITRUST LITIGATION.

 5      COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

 6           MS. SWEENEY:  GOOD MORNING, YOUR HONOR.  BONNY

 7   SWEENEY FROM ROBBINS GELLER RUDMAN & DOWD REPRESENTING THE

 8   PLAINTIFFS.

 9           THE COURT:  ALL RIGHT.  WHY DON'T YOU INTRODUCE YOUR

10   TEAM.

11           MS. SWEENEY:  OKAY.  THIS IS PATRICK COUGHLIN.  HE

12   WASN'T HERE LAST TIME, YOUR HONOR, SO -- MR. COUGHLIN HAS

13   RECENTLY JOINED THE TRIAL TEAM.  HE HAS AN ENORMOUS AMOUNT OF

14   THE TRIAL EXPERIENCE.

15           THE COURT:  WELCOME.

16           MR. COUGHLIN:  THANK YOU, YOUR HONOR.

17           MS. SWEENEY:  WE HAVE ALEXANDRA BERNAY.  CARMEN

18   MEDICI BEHIND XAN, FRANK BALINT.

19           MR. BALINT:  MORNING, YOUR HONOR.

20           THE COURT:  MORNING.

21           MS. SWEENEY:  JENNIFER CARINGAL.

22           THE COURT:  OKAY.

23           MS. SWEENEY:  AND STEVE JUDLOWSKI.  STEVE IS ALSO NEW

24   TO THE TRIAL TEAM, YOUR HONOR.

25           MR. JUDLOWSKI:  MORNING, YOUR HONOR.
```

```
 1                THE COURT:  GOOD MORNING.

 2           OKAY.  ON THE DEFENSE SIDE.

 3                MR. ISAACSON:  BILL ISAACSON.  GOOD MORNING, YOUR

 4      HONOR.

 5                THE COURT:  GOOD MORNING.

 6                MR. ISAACSON:  WITH ME FROM BOIES, SCHILLER IS KAREN

 7      DUNN, WHO (SIC) YOU'VE MET BEFORE; MEREDITH DEARBORN; MARTHA

 8      GOODMAN.  DEPENDING ON HOW THE MORNING PLAYS OUT, IT'S

 9      POSSIBLE YOU COULD ALSO HEAR FROM JOHN COVE.

10                MR. COVE:  MORNING, YOUR HONOR.

11                THE COURT:  GOOD MORNING.

12                MR. ISAACSON:  AND YOU KNOW DAVID KIERNAN FROM JONES

13      DAY.

14                THE COURT:  AND THAT'S COVE, C-O-V-E?

15                MR. COVE:  YES, YOUR HONOR.

16                THE COURT:  ARE YOU ALSO -- ARE YOU FROM JONES DAY OR

17      BOIES, SCHILLER?

18                MR. COVE:  I'M FROM BOIES, SCHILLER FROM OUR OAKLAND

19      OFFICE.

20                THE COURT:  OKAY.  ALL RIGHT.  WELL, A LOT TO DO.

21           PRIMARY LAWYERS COME UP TO THE MICS.  EVERYBODY ELSE MAKE

22      YOURSELVES COMFORTABLE, AND LET'S GET STARTED.

23           I'M GOING TO START WITH YOUR TRIAL READINESS BINDER.

24           ONE OF THE THINGS THAT I WANT TO MAKE SURE IS VERY CLEAR

25      TO EVERYONE IN LIGHT OF WHAT I'VE SEEN IN THAT BINDER IS THAT
```

1    YOU ONLY GET 20 HOURS, AND THAT 20 HOURS INCLUDES YOUR

2    OPENINGS AND YOUR CLOSINGS.

3        GIVEN THE TIME ESTIMATES THAT YOU'VE PROVIDED, YOU WON'T

4    HAVE AN OPENING OR A CLOSING SO I SUGGEST THAT YOU THINK ABOUT

5    THOSE TIME LIMITATIONS AND LET ME KNOW, BECAUSE YOU WILL GET

6    DAILY REPORTS, WHETHER YOU WANT ME TO RESERVE TIME FOR YOU.

7        YOU KNOW, WHY DOESN'T TECHNOLOGY WORK WHEN YOU'D LIKE IT

8    TO?

9        WE MAY HAVE THE REBOOT.

10                    (PAUSE IN THE PROCEEDINGS.)

11                    (OFF-THE-RECORD DISCUSSION.)

12        **THE COURT:**  OKAY.  TAB 1 IN YOUR BINDER, YOUR

13    STIPULATION -- YOUR PROPOSED TRIAL STIPULATIONS.  HAVE YOU

14    DECIDED -- HAVE YOU FINISHED YOUR MEETING AND CONFERRING ON

15    WHETHER OR NOT THESE ARE GOING TO BE READ TO THE JURY,

16    SUBMITTED AS AN EXHIBIT --

17        YOU'RE GOING TO HAVE TO SIT DOWN, MR. COLLIN (SIC).

18        **MS. SWEENEY:**  WE HAVE MET AND CONFERRED, YOUR HONOR,

19    AND I BELIEVE WE'VE REACHED AGREEMENT THAT THESE WILL BE READ

20    TO THE JURORS BUT NOT SUBMITTED.

21        **MR. ISAACSON:**  THAT'S RIGHT, YOUR HONOR.

22        **THE COURT:**  SO YOU WANT ME TO TELL THE JURY THAT

23    YOU'RE STIPULATING TO "THE AUTHENTICITY OF ANY DOCUMENT

24    CREATED AND PRODUCED BY A PARTY IN THIS CASE.  THE STIPULATION

25    SHALL NOT BE DEEMED OR INTERPRETED TO BE A STIPULATION THAT

```
 1    ANY DOCUMENT IS ADMISSIBLE INTO EVIDENCE."

 2        YOU WANT ME TO READ THAT TO THE JURY?

 3            MR. ISAACSON:  WELL, TAB 1 ARE THE STIPULATIONS ON

 4    LEGAL MATTERS.  I THINK WHAT WE'RE --

 5            THE COURT:  RIGHT, SO THAT'S WHAT I SAID.

 6            MR. ISAACSON:  MS. SWEENEY WAS TALKING ABOUT THE

 7    STIPULATION OF FACTS.

 8            MS. SWEENEY:  I WAS.  I APOLOGIZE, YOUR HONOR.  I WAS

 9    TALKING ABOUT THE STIPULATION OF FACTS.

10            THE COURT:  DO WE ALL HAVE THE SAME BINDER?

11            MS. SWEENEY:  WE DO.

12            MR. ISAACSON:  RIGHT.

13            THE COURT:  I'M AT TAB 1 IN YOUR BINDER.

14            MR. ISAACSON:  THESE WOULD NOT BE READ TO THE JURY.

15            THE COURT:  OKAY.  SO DOCKET 838 WITH RESPECT TO YOUR

16    PROPOSED ORDER REGARDING THESE TRIAL STIPULATIONS WILL BE

17    ENTERED.

18        ALL RIGHT.  THE NEXT TAB I HAVE IS THE PLAINTIFF'S WITNESS

19    LIST.  I THINK WE HAVE SOME ISSUES WITH RESPECT TO THESE

20    WITNESSES.  AND LET'S GO THROUGH THIS.

21        I RECEIVED A MOTION THAT ON -- IT WAS FILED ON MONDAY,

22    RECEIVED A HARD COPY OF IT TODAY.  IS THAT RIGHT --

23            MR. ISAACSON:  YES, YOUR HONOR.

24            THE COURT:  -- MR. ISAACSON?

25            MR. ISAACSON:  YES, YOUR HONOR.
```

 1            **THE COURT:**  REGARDING MR. RIEGEL?

 2            **MR. ISAACSON:**  YES.  AS WELL AS MR. ROEVER.

 3            **THE COURT:**  WELL -- OKAY.  RESPONSES.

 4            **MS. SWEENEY:**  YES, YOUR HONOR.  WE'RE PREPARED TO

 5     BRIEF IT, BUT IN THE INTERIM, PLAINTIFFS WERE NOT IN A

 6     POSITION TO NOTIFY APPLE MUCH EARLIER THAN THEY DID ABOUT

 7     MR. RIEGEL.  WE MET WITH MR. RIEGEL FOR THE FIRST TIME AFTER

 8     THE LAST PRETRIAL CONFERENCE WITH YOUR HONOR.

 9            **THE COURT:**  WHAT DO YOU MEAN BY THAT?  WHAT DO YOU

10     MEAN BY THAT?  THIS CASE HAS BEEN IN -- THIS CASE WAS FILED IN

11     2005.  2005.  WE'RE GOING ON TEN YEARS.  YOU HAVE -- NO.  STOP

12     FOR A MINUTE.

13        YOU HAVE A NUMBER OF NAMED PLAINTIFFS.  HE IS THE ONLY --

14     WELL, WHO IS THE NAMED PLAINTIFF THAT WAS IDENTIFIED FOR

15     DEPOSITION THAT WAS GOING TO REPRESENT THE CLASS OF RESELLERS?

16            **MS. SWEENEY:**  YOUR HONOR, JUDGE WARE HELD IN TWO

17     SEPARATE ORDERS AND THE NINTH CIRCUIT AFFIRMED --

18            **THE COURT:**  REFUSED TO -- NO, THEY DIDN'T AFFIRM.

19            **MS. SWEENEY:**  REFUSED --

20            **THE COURT:**  THEY REFUSED TO REVIEW.  IT'S A VERY

21     DIFFERENT THING.

22            **MS. SWEENEY:**  OKAY.  YOU'RE RIGHT, YOUR HONOR.  SO

23     THE NINTH CIRCUIT REFUSED TO REVIEW THE QUESTION WHETHER

24     PLAINTIFFS, WHO ARE TWO CONSUMERS, COULD REPRESENT A CLASS

25     THAT CONSISTED IN PART OF RESELLERS.

 1          NOW, MR. RIEGEL IS A -- IS A RESELLER MEMBER OF THE CLASS.

 2     HE'S AN ABSENT MEMBER OF THE CLASS.  IT'S QUITE COMMON IN

 3     CLASS CASES FOR PLAINTIFFS TO CALL -- IN ADDITION TO NAMED

 4     PLAINTIFFS, TO CALL ABSENT CLASS MEMBERS TO TESTIFY.

 5          WE'RE PREPARED TO OFFER MR. RIEGEL UP FOR A DEPOSITION.

 6     WE DIDN'T LEARN OF MR. RIEGEL'S CONTACT INFORMATION PRIOR TO

 7     THE CLOSE OF DISCOVERY.  WE ONLY GOT THAT AS PART OF THE CLASS

 8     NOTICE PROCEDURE.

 9          MOREOVER, YOUR HONOR, WE WEREN'T ABLE TO --

10          **THE COURT:**  WELL, WHO DID YOU THINK WAS GOING TO

11     REPRESENT THEM?

12          **MS. SWEENEY:**  MS. (SIC) -- YOUR HONOR, WE'RE NOT

13     EXPECTING MR. RIEGEL TO REPRESENT THE CLASS.  WE HAVE CLASS

14     REPRESENTATIVES WHO REPRESENT BOTH THE CONSUMER PORTION AND

15     THE RESELLER PORTION OF THE CLASS.  MR. --

16          **THE COURT:**  WELL, WHO ELSE IS THERE, THEN?  I'M

17     LOOKING AT YOUR LIST.  I SEE TUCKER, WHO IS A CLASS REP.

18     SHE'S A CONSUMER, CORRECT?

19          **MS. SWEENEY:**  THAT'S CORRECT.

20          **THE COURT:**  ROSEN IS A CONSUMER.

21          **MS. SWEENEY:**  THAT'S CORRECT.

22          **THE COURT:**  OKAY.  SO WHO ELSE, THEN, WAS THERE

23     IDENTIFIED TO REPRESENT THE RESELLERS IN THIS CASE?

24          **MS. SWEENEY:**  JUDGE WARE APPOINTED MARIANA ROSEN AND

25     MELANIE TUCKER AS CLASS REPRESENTATIVES FOR THE ENTIRE CLASS,

```
1    INCLUDING THE RESELLER PORTION OF THE CLASS.

2              THE COURT:  BUT THAT WAS -- THAT ORDER WAS RESCINDED

3    SUA SPONTE.

4              MS. SWEENEY:  YOUR HONOR, THAT PART OF THE ORDER WAS

5    NOT RESCINDED.  JUDGE WARE REAFFIRMED HIS ORDER APPOINTING

6    THOSE TWO CLASS REPRESENTATIVES AS REPRESENTATIVES OF THE

7    ENTIRE CLASS WHEN HE SUBSEQUENTLY CERTIFIED THE CLASS.  AND

8    THAT PRECISE ISSUE WAS THE PRINCIPAL ARGUMENT THAT APPLE MADE

9    IN ITS 23(F) APPLICATION TO THE NINTH CIRCUIT --

10             THE COURT:  WELL, IT'S --

11             MS. SWEENEY:  -- WHICH AS YOUR HONOR POINTED OUT WAS

12   REFUSED BY THE NINTH CIRCUIT.

13             THE COURT:  IT WAS REFUSED.  IT WAS AN INTERLOCUTORY

14   ORDER.  THEY DON'T HAVE TO REVIEW THESE THINGS.  BUT IT'S AN

15   ISSUE.  IT'S AN ISSUE IN THIS CASE BECAUSE, FRANKLY, I DON'T

16   UNDERSTAND HOW HE COULD HAVE RULED THE WAY HE DID.

17      I CERTAINLY DID NOT TAKE THAT APPROACH IN MY ANTITRUST

18   MDL.  AND I REQUIRED THAT THEY WENT TO -- THAT THEY MADE SURE

19   THAT THEY HAD A REAL RESELLER.

20             MS. SWEENEY:  WELL --

21             THE COURT:  THE ISSUES WEREN'T DIFFERENT.

22             MS. SWEENEY:  WELL, THEN, YOUR HONOR, WE ARE IN THE

23   POSITION OF HAVING A CERTIFIED CLASS WHERE JUDGE WARE

24   REPEATEDLY AND EXPLICITLY --

25             THE COURT:  I UNDERSTAND.
```

1          **MS. SWEENEY:**  -- AUTHORIZED OUR TWO PLAINTIFFS TO

2     REPRESENT THE ENTIRE CLASS, SO TO --

3          **THE COURT:**  I UNDERSTAND, IT'S A DIFFICULT POSITION.

4     AND I'M FRANKLY NOT EXACTLY SURE WHAT I'M SUPPOSED TO DO WITH

5     IT.  BECAUSE HE -- YOU KNOW, YOU OBVIOUSLY PROCEEDED THEN ON

6     THAT BASIS.  BUT IT -- IT'S -- OUR -- TELL ME HOW IT IS YOU

7     CONVINCED HIM TO -- TO MAKE THAT DECISION?  HOW IS IT THAT TWO

8     CONSUMERS CAN REPRESENT BEST BUY OR CIRCUIT CITY?

9          **MS. SWEENEY:**  BECAUSE, YOUR HONOR, IT'S AN OVERCHARGE

10    CASE.  AND ALL MEMBERS OF THE CLASS SUFFERED AN OVERCHARGE.

11    PROFESSOR NOLL IN HIS DAMAGES REPORT AND HIS METHODOLOGY,

12    WHICH WAS PRESENTED MULTIPLE TIMES TO JUDGE WARE, EXPLAINED

13    VERY CLEARLY HOW THE -- THE PRICING FOR RESELLERS WAS

14    DIFFERENT FROM -- BUT CLOSELY TIED TO -- EXPLICITLY LINKED TO

15    PRICING FOR MEMBERS OF THE CONSUMER -- CONSUMER MEMBERS OF THE

16    CLASS.

17          **THE COURT:**  HOW IS THAT?

18          **MS. SWEENEY:**  BECAUSE AS -- AS APPLE WILL SAY AND AS

19    THEY'VE SAID MULTIPLE TIMES IN THEIR DEFENSE, THE -- THE

20    RESELLERS GET A -- A DISCOUNT OFF THE LIST PRICES USED FOR THE

21    CONSUMERS, SO IT'S VERY CLOSELY TIED.

22       NOW, PROFESSOR NOLL TOOK INTO --

23          **THE COURT:**  SO YOU'RE SAYING THAT THERE IS -- THAT

24    THE EVIDENCE THAT IS GOING TO COME INTO TRIAL THAT THERE IS NO

25    SEPARATE NEGOTIATION ON A WHOLESALE BASIS THAT IS NOT TIED TO

```
 1    CONSUMER PRICES OR -- OR SAID DIFFERENTLY, THE EVIDENCE THAT

 2    WILL COME IN AT TRIAL IS THAT THE PRICING FOR RESELLERS IS

 3    DIRECTLY LINKED TO THE PRICING TO CONSUMERS.

 4        IS THAT WHAT THE EVIDENCE WILL SHOW?

 5            MS. SWEENEY:  THAT'S RIGHT, YOUR HONOR.

 6        NOW, THE RESELLERS GOT VOLUME DISCOUNTS, AND THOSE VOLUME

 7    DISCOUNTS ARE ACCOUNTED FOR IN PROFESSOR NOLL'S DAMAGES

 8    METHODOLOGY AND REPORT.  BUT THE PRICES THEMSELVES ARE

 9    DIRECTLY LINKED TO THE CONSUMER PRICES.

10            THE COURT:  ALL RIGHT.  WELL, WE'LL SEE HOW IT COMES

11    IN.

12            MR. ISAACSON:  YOUR HONOR, COULD I ADD SOMETHING TO

13    THE RECORD ON THAT?

14            THE COURT:  YOU MAY IN A MOMENT.

15            MR. ISAACSON:  OKAY.

16            THE COURT:  SO LET'S GO BACK TO MR. RIEGEL.

17        WHY NOW?

18        IF -- IF YOU ARE SO CONFIDENT THAT TUCKER AND ROSEN CAN

19    REPRESENT THESE CLASSES AND NEVER IDENTIFIED MR. RIEGEL AS

20    A -- UNDER RULE 26 OR OTHERWISE, WHY SHOULD I ALLOW YOU TO

21    HAVE HIM TESTIFY?

22            MS. SWEENEY:  WELL, AS I SAID BEFORE, YOUR HONOR,

23    WE -- WE COULDN'T HAVE IDENTIFIED HIM EARLIER THAN WE DID, AND

24    WE BELIEVE THAT MR. RIEGEL --

25            THE COURT:  BECAUSE WHY?
```

```
 1           MS. SWEENEY:  WELL, WE DIDN'T HAVE HIS CONTACT

 2   INFORMATION UNTIL AFTER -- UNTIL THE CLASS NOTICE PROCEDURE.

 3   AND MOREOVER --

 4           THE COURT:  WAIT.  THE CLASS NOTICE PROCEDURE CLOSED

 5   YEARS AGO.

 6           MS. SWEENEY:  LONG AFTER DISCOVERY.

 7           THE COURT:  SO WHY DIDN'T YOU DO IT -- I JUST PULLED

 8   THAT ORDER.  THE ORDER GRANTING THE NOTICE PLAN WAS MARCH 29TH

 9   2012, TWO AND A HALF YEARS AGO.

10      WHEN DID THE OPT-OUT PROCEDURE FINISH?

11           MS. SWEENEY:  I BELIEVE IT WAS -- WELL, THE -- THE

12   CLASS NOTICE WAS DELAYED FOR VARIOUS REASONS SO I'M NOT

13   POSITIVE THE EXACT DATE, BUT I BELIEVE --

14           THE COURT:  DOES ANYBODY HAVE THE EXACT DATES?

15                (PAUSE IN THE PROCEEDINGS.)

16           MR. ISAACSON:  I'M SORRY.  WE WERE LOOKING AT WHEN

17   THE NOTICE WENT OUT, BUT --

18           THE COURT:  DOES ANYBODY HAVE THE DATE WHEN -- THE

19   OPT-OUT CLOSED?  EITHER SIDE.  NO ONE KNOWS THIS?

20           MR. ISAACSON:  WE CAN GET IT FOR YOU, YOUR HONOR.

21           MS. SWEENEY:  I RECOGNIZE, YOUR HONOR, THAT IT WAS

22   OVER A YEAR AGO THAT THE OPT-OUT PERIOD CLOSED.  I'M NOT

23   DENYING THAT.  BUT IN ADDITION, WE -- WE SUBSEQUENTLY -- JULY,

24   AND THEN AFTER WE RECEIVED APPLE'S CORRECTED INFORMATION, NOT

25   TILL I THINK IT WAS AFTER PROFESSOR NOLL SUBMITTED HIS REPORT.
```

```
 1        IN JULY OF 2013, WE GOT NEW INFORMATION ABOUT AFFECTED

 2   IPODS, AND PROFESSOR NOLL HAD TO REDO HIS DAMAGES REPORT, SO

 3   WE HAD --

 4        THE COURT:  SO WHAT?  SO WHAT?  DID THIS PERSON, DID

 5   THIS PERSON, MR. RIEGEL -- HIS TESTIMONY IMPACTS NOLL'S

 6   ANALYSIS?

 7        MS. SWEENEY:  MR. RIEGEL IS A CLASS MEMBER WHO BOUGHT

 8   ONE OF THE SO-CALLED AFFECTED IPODS, THAT IS, ONE OF THE IPODS

 9   THAT HAS KVC AND DVC ON IT.

10        NOW, WE DIDN'T HAVE THE INFORMATION UNTIL JULY 2013 AS TO

11   WHO PRECISELY THOSE CLASS MEMBERS WERE BECAUSE WE RELIED ON

12   APPLE'S SWORN DECLARATION, MR. FARRUGIA, AND HE CHANGED THAT

13   DECLARATION HALFWAY THROUGH OUR EXPERT REPORTING PROCESS.  AND

14   THEN IN ADDITION --

15        THE COURT:  AND THEN YOU DIDN'T DO ANYTHING AFTER

16   THAT EITHER.

17        MS. SWEENEY:  WELL, WE DID.

18        THE COURT:  THAT WAS, LIKE, DECEMBER OF LAST YEAR.

19        MS. SWEENEY:  AND -- AND THEN, YOUR HONOR -- I

20   BELIEVE IT WAS AT THE LAST PRETRIAL CONFERENCE, YOUR HONOR

21   COMMENTED THAT THE AMOUNT OF DAMAGES IS NOT A MATTER THAT CAN

22   BE SEALED, AND SO WE BELIEVE WE WERE THEN IN A POSITION TO

23   SPEAK WITH THIS MEMBER OF THE CLASS, THIS ABSENT CLASS MEMBER,

24   AND -- AND TALK ABOUT HOW HE HAD BEEN DAMAGED BY APPLE'S

25   CONDUCT.
```

1          **THE COURT:**  I DON'T UNDERSTAND THE LINK.  IT'S -- I

2     DON'T UNDERSTAND YOUR LOGIC.

3          **MS. SWEENEY:**  WELL, BECAUSE APPLE HAD SEALED AN

4     ENORMOUS AMOUNT OF INFORMATION IN THIS CASE, INCLUDING EVERY

5     BIT OF THE INFORMATION THAT PROFESSOR NOLL RELIED UPON TO

6     CALCULATE HIS DAMAGES.  AND THE PROTECTIVE ORDER PERMITTED US

7     TO SHARE IT WITH ATTORNEYS BUT NOT ABSENT CLASS MEMBERS.

8          **THE COURT:**  AND YOU COULDN'T CONTACT A RESELLER AND

9     SAY, WE'D LIKE YOU TO POTENTIALLY TESTIFY ABOUT YOUR PURCHASE?

10         **MS. SWEENEY:**  WE COULD, BUT WE COULDN'T INFORM THAT

11    CLASS MEMBER THE AMOUNT OF DAMAGES CALCULATED FOR THE CLASS

12    MEMBER.

13         **THE COURT:**  SO WHAT?  SO WHAT?

14         **MS. SWEENEY:**  WE THINK IT'S A RELEVANT CONSIDERATION.

15    IT WAS CERTAINLY A QUESTION THAT A CLASS MEMBER WOULD BE

16    LIKELY TO ASK US.

17        IN ANY CASE, WE'RE PREPARED TO OFFER MR. RIEGEL UP FOR A

18    DEPOSITION.  HE IS NOT VERY FAR FROM OAKLAND.  WE HAVE THREE

19    WEEKS BEFORE TRIAL BEGINS.  HIS TESTIMONY AT TRIAL WILL BE

20    VERY SHORT AND VERY LIMITED.

21         **THE COURT:**  ALL RIGHT.  A RESPONSE.

22         **MR. ISAACSON:**  FIRST OF ALL, TO ANSWER YOUR QUESTION,

23    OUR RECORDS SHOW THAT THE OPT-OUT DATE WAS JULY 30TH, 2012,

24    FOLLOWING THE NOTICE GOING OUT IN MAY OF 2012.

25        FIRST, YOUR HONOR, PLAINTIFFS HAVE BEEN ON NOTICE FOR

```
1    QUITE SOME TIME THAT THIS IS A LEGAL ISSUE IN THE CASE WHETHER

2    THE INDIVIDUAL PLAINTIFFS CAN REPRESENT THE RESELLERS.

3    REGARDLESS OF WHAT JUDGE WARE ORDERED, THEY KNOW THAT THIS WAS

4    AN -- THIS IS AN ISSUE GOING FORWARD ON APPEAL AND THAT A

5    CLASS CAN BE DECERTIFIED AT ANY TIME.

6        IN ADDITION, RECENT DECISIONS SUCH AS THE OPTICAL DISK

7    DRIVE CASE HAVE MADE THIS POINT VERY CLEAR, THAT INDIVIDUALS

8    SHOULD NOT BE REPRESENTING THE LARGE BUSINESSES.

9        SECONDLY, DURING DISCOVERY, RESELLER CONTRACTS WERE

10   PRODUCED.  THE NAMES OF RESELLERS ARE NOT A MYSTERY.

11   RESELLERS, YOU CAN ALSO GOOGLE THEM TO FIND OUT WHO THEY ARE.

12       THE ABILITY TO IDENTIFY NEW CLASS REPRESENTATIVES GOES

13   BACK TO 2005.  IT DOES NOT -- IT'S NOT CONNECTED TO THE DATE

14   THAT NOTICE WENT OUT OR ADDRESSES WERE PROVIDED.

15       THEY'RE ALSO -- IF THEY DIDN'T THINK THEY GOT ENOUGH

16   DURING THE DISCOVERY PERIOD AND THEY WANTED TO KNOW ABOUT --

17   MORE ABOUT RESELLERS, THEY COULD HAVE DONE MORE DISCOVERY.

18   BUT THEY DEFINITELY, THE NAMES OF RESELLERS WERE DEFINITELY

19   IDENTIFIED DURING DISCOVERY.

20       THIRD, DR. NOLL'S REPORT HAS TWO DIFFERENT RESULTS AND

21   TWO -- AND HIS MODEL HAS TO ADJUST FOR RESELLERS BECAUSE THEY

22   GET TWO DIFFERENT DISCOUNTS, SO HE CALCULATES A LOWER

23   RECHARGE -- OVERCHARGE FOR RESELLERS THAN HE DOES FOR

24   CONSUMERS.  2.38 PERCENT FOR RESELLERS.  CONSUMERS, THE

25   OVERCHARGE IS 7.45 PERCENT.
```

1    SO RIGHT NOW YOU HAVE A SITUATION WHERE TWO INDIVIDUAL

2    CLASS MEMBERS ARE -- ARE SEEKING TO REPRESENT A CLASS WHERE ON

3    A PERCENTAGE BASIS, THEY GET MATERIALLY MORE THAN THE

4    RESELLERS WITH NO INPUT FROM A RESELLER CLASS REPRESENTATIVE

5    TO SAY, YES, THAT IS AN APPROPRIATE WAY TO APPROACH THIS.

6    SO THERE -- THERE ARE VERY DIFFERENT ISSUES ABOUT

7    NEGOTIATIONS AND HOW YOU CALCULATE DAMAGES FOR THE INDIVIDUALS

8    AND THE RESELLERS IN THE CASE BASED ON THE PLAINTIFFS' CASE

9    THAT IS GOING TO BE PRESENTED TO THE JURY.

10    NOW -- SO THE FINAL POINT WOULD BE WITH REGARDS TO THIS

11    NEW WITNESS, WHICH ISN'T EVEN A NEW CLASS REPRESENTATIVE.

12    THEY'RE JUST TRYING TO GLOSS OVER THE LACK OF A CLASS

13    REPRESENTATIVE AND GIVE SOME COMFORT TO THE JURY THAT THE

14    RESELLERS ARE DE FACTO BEING REPRESENTED.

15    BUT, YOU KNOW, THIS PERSON'S NAME NEVER CAME UP IN

16    DISCOVERY, WAS NEVER IDENTIFIED TO US IN RULE 26 DISCLOSURES

17    OR OTHERWISE.  THERE'S NO REASON FOR A SURPRISE WITNESS.

18    THERE'S NO REASON WHY WE SHOULD HAVE TO GO PREPARE AND TAKE A

19    DEPOSITION WHEN WE HAVE MANY OTHER THINGS TO DO TO PREPARE FOR

20    TRIAL IN THE NEXT THREE WEEKS.  AND I THINK PART OF THIS

21    HEARING TODAY WILL MAKE -- I'M ASSUMING YOUR HONOR WILL BE

22    TELLING US SOME THINGS WE NEED TO DO TO PREPARE FOR TRIAL, AND

23    WE THINK WE SHOULD BE FOCUSING ON THOSE.

24    THE PREJUDICE IS CLEAR AND THE RULES ARE CLEAR THAT THEY

25    SHOULD NOT BE SPRINGING A COMPLETELY UNKNOWN WITNESS UPON US

```
 1     AT THE LAST MINUTE.

 2              THE COURT:  RESPONSE?

 3              MS. SWEENEY:  I THINK THE NOTICE PERIOD IS -- IS

 4     SUFFICIENT FOR APPLE TO CORRECT ANY DEFICIENCIES IN ITS

 5     KNOWLEDGE, AND THERE IS NO PREJUDICE.  APPLE HAS --

 6              THE COURT:  WELL, THERE'S SIGNIFICANT PREJUDICE.

 7     THERE'S SIGNIFICANT PREJUDICE HERE.  THIS IS YEARS LATE.  EVE

 8     OF TRIAL.  THE EVE OF TRIAL AFTER A NINE-YEAR HOLD ON THIS

 9     CASE.

10              MS. SWEENEY:  ANY PREJUDICE CAN BE CORRECTED BY A

11     DEPOSITION.  I'M NOT SURE WHAT PREJUDICE THERE IS WHEN THE

12     KIND OF TESTIMONY THAT HE'S GOING TO BE OFFERING SIMPLY IS --

13     IT --

14              THE COURT:  WELL, THEN WHY IS IT NECESSARY?

15              MS. SWEENEY:  BECAUSE IT REFLECTS A DIFFERENT

16     PERSPECTIVE FROM A DIFFERENT MEMBER OF THE CLASS.  AND IT'S --

17     IT'S BEEN MY EXPERIENCE IN OTHER CLASS CASES THAT ABSENT CLASS

18     MEMBERS CAN TESTIFY.  AND IT'S -- SO LONG AS IT'S NOT OVERLY

19     DUPLICATIVE OR CUMULATIVE, THEY CAN TESTIFY ON AREAS WHERE

20     CLASS MEMBERS ALSO HAVE SOME KNOWLEDGE.  CLASS

21     REPRESENTATIVES.  EXCUSE ME.

22              THE COURT:  IT SEEMS TO ME THAT YOU TOOK A LITIGATION

23     STRATEGY IN THIS CASE AND NOW YOU'RE CONCERNED THAT IT WASN'T

24     THE RIGHT ONE AND SO YOU'D LIKE TO POTENTIALLY FIX YOUR

25     PROBLEM.  BUT I WILL CONSIDER -- AND THERE WILL BE A -- A
```

 1    FORMAL ORDER AFTER -- ISSUED THIS WEEK WITH RESPECT TO ALL THE

 2    ISSUES THAT WE'RE GOING TO DISCUSS.  I THINK IT'S A PROBLEM ON

 3    MANY LEVELS.  AND I UNDERSTAND THAT THERE ARE TIMES WHEN WE

 4    WILL AUTHORIZE THE LAST-MINUTE DEPOSITION OF SOMEONE, BUT I AM

 5    CONCERNED ABOUT HOW THE -- THE DELAY BY THE PLAINTIFFS.

 6        YOU TOOK AN APPROACH.  YOU HELD STEADFAST TO THAT APPROACH

 7    FOR YEARS.  AND NOW AT THE LAST MINUTE, YOU'RE CHANGING IT.

 8    SO HE'S EITHER NOT MEANINGFUL, IN WHICH CASE THERE'S NO POINT

 9    IN LETTING HIM IN; OR HE'S ACTUALLY PRETTY SIGNIFICANT, WHICH

10    IS WHY YOU'RE ASKING FOR HIS TESTIMONY TO BE ALLOWED AND WHICH

11    IS, IN FACT, THE BASIS FOR THE PREJUDICE.

12        YOU CAN'T HAVE IT BOTH WAYS, MS. SWEENEY.

13        **MS. SWEENEY:**  YOUR HONOR, WE THINK THAT HE CAN ADD

14    MEANINGFUL TESTIMONY TO THE TRIAL.  AND, IN FACT, WE RELIED

15    AND HAVE RELIED FOR YEARS UPON JUDGE WARE'S EXPLICIT AND

16    REPEATEDLY RULINGS AS TO THE CONTOURS OF THE CLASS AND THE

17    AUTHORITIES OF THE CLASS REPRESENTATIVES, AND I THINK WE WERE

18    ENTITLED TO DO THAT.

19        **THE COURT:**  I UNDERSTAND THAT PERSPECTIVE.  I DON'T

20    WANT TO TRY THIS CASE TWICE, THOUGH.  AND THAT'S MY CONCERN.

21    BECAUSE IT'S NOT CLEAR TO ME THAT THAT WAS THE RIGHT DECISION.

22        SO, MR. ISAACSON, MY CONCERN IS THAT I GET TO THE END OF

23    THIS CASE, YOU'RE GOING TO MAKE THE MOTION.

24        **MR. ISAACSON:**  YES, WE ARE, YOUR HONOR.

25        **THE COURT:**  AND THEN I'M GOING TO SAY, WELL, NO, THEY

1    DON'T HAVE ANYTHING.  AND WHATEVER WAY I RULE, THE -- THE

2    LOSING SIDE IS GOING TO TAKE IT TO THE NINTH CIRCUIT.  SO IT

3    PUTS ME IN A PRETTY DIFFICULT POSITION, AS WELL AS THE

4    PARTIES.  AND I DON'T THINK APPLE WANTS TO RETRY THIS CASE

5    EITHER.

6            **MR. ISAACSON:**  NO, YOUR HONOR.  THIS WILL BE A

7    CONSIDERABLE EXPENSE, AND THAT'S PART OF THE PREJUDICE HERE.

8    I MEAN, IF --

9            **THE COURT:**  WELL, IS THERE ANYTHING SHORT OF ENTIRELY

10   EXCLUDING IT THAT WILL DEAL WITH THE PREJUDICE, WHICH I

11   UNDERSTAND?  I UNDERSTAND YOUR PERSPECTIVE.  BUT, FRANKLY, I'M

12   TELLING YOU, I DON'T WANT TO TRY THIS CASE TWICE.

13           **MR. ISAACSON:**  WELL, FOR -- PURELY FROM THE POINT OF

14   VIEW OF EFFICIENCY, THE COURT IS GOING TO HAVE TO MAKE A

15   DECISION ABOUT WHETHER THE INDIVIDUAL PLAINTIFFS CAN REPRESENT

16   THE RESELLERS.  THE -- DR. NOLL'S POINTS ON THIS ARE ALREADY

17   KNOWN AND DEFINED.  THEY'VE BEEN PRESENTED TO THE COURT

18   PREVIOUSLY, INCLUDING THE DIFFERENT OVERCHARGE NUMBERS AND THE

19   DIFFERENT DISCOUNTS AND THE DIFFERENT SITUATIONS.

20      COUNSEL JUST SAID THE RESELLER WILL PROVIDE A DIFFERENT

21   PERSPECTIVE.

22           **THE COURT:**  I HEARD HER.

23           **MR. ISAACSON:**  YEAH.  SO IN TERMS -- IF WE ARE GOING

24   TO GO UP ON APPEAL ON THE ISSUE OF WHETHER THE RESELLERS

25   CAN -- I'M SORRY -- WHETHER INDIVIDUALS CAN REPRESENT THE

1    RESELLERS, STREAMLINING THIS TRIAL WOULD INCLUDE KNOCKING THE

2    RESELLERS OUT OF THE CLASS NOW, BECAUSE IF THE COURT'S GOING

3    TO DO THAT AT THE END OF THE TRIAL, WE MIGHT AS WELL REMOVE

4    THAT ISSUE NOW.

5         **THE COURT:**  WELL, ON THE OTHER HAND, I HAVEN'T HEARD

6    ANY EVIDENCE, AND THE PROPOSED JURY VERDICT FORMS DO SEPARATE

7    OUT DAMAGES RELATIVE TO THE RESELLER CLASS VERSUS DAMAGES

8    RELATIVE TO THE CONSUMER CLASS.

9         **MR. ISAACSON:**  YES.

10        **THE COURT:**  SO THE OTHER APPROACH THAT I HAVE BEEN

11   THINKING ABOUT IS LET IT COME IN AS IT WILL.  HE MADE HIS

12   RULINGS.  YOU RELIED ON THOSE RULINGS.  AND AFTER I HEAR ALL

13   THE EVIDENCE, I'LL MAKE A DECISION.  AND IF I HAVE TO MODIFY A

14   JUDGMENT BASED UPON THAT LEGAL ANALYSIS, THEN THAT'S WHAT I'LL

15   DO.

16        BUT I HAVE TO TELL YOU, I DON'T THINK IT'S FAIR THAT AT

17   THE LAST MINUTE YOU CHANGE THE FACTUAL BASIS UPON WHICH YOU'RE

18   PROCEEDING TO SHORE UP A POTENTIAL WEAKNESS IN YOUR CASE.  I

19   DON'T THINK IT'S FAIR.

20        SO YOU KNOW WHERE I PRELIMINARY -- PRELIMINARILY STAND ON

21   THESE ISSUES.  IF YOU HAVE ANYTHING ELSE TO SAY, NOW IS THE

22   TIME TO SAY IT, AND I'LL THINK ABOUT IT SOME MORE AFTER WE'RE

23   DONE.

24        **MS. SWEENEY:**  AND, YOUR HONOR, WE'RE GOING TO

25   WITHDRAW THE OTHER WITNESS THAT APPLE HAS OBJECTED TO.

1      **THE COURT:**  AND THAT'S MR. ROEVER.

2      **MS. SWEENEY:**  THAT'S CORRECT.

3      **MR. ISAACSON:**  HE DOES NOT RELATE TO THE CLASS

4  ISSUES.

5      **THE COURT:**  WELL, HE'S WITHDRAWN, SO IT'S NOT AN

6  ISSUE ANYMORE.

7      **MR. ISAACSON:**  OKAY.

8      **THE COURT:**  OKAY.  ANYTHING ELSE WITH RESPECT TO

9  PLAINTIFFS' WITNESSES?

10     **MR. COUGHLIN:**  YOUR HONOR, IF I MIGHT, AN ISSUE'S

11 COME UP AND WE'VE BEEN DISCUSSING IT WITH -- WITH APPLE'S

12 COUNSEL, IS THE -- WE WILL BE CALLING AND THEY ARE WITHIN THE

13 SUBPOENA POWER SEVERAL APPLE EMPLOYEES, AND WE'VE NOTIFIED

14 THEM AS OF LAST NIGHT WHO WE EXPECT TO CALL IN THE FIRST WEEK.

15     SO WE WANT TO MAKE SURE WE DON'T HAVE TO SERVE THEM WITH A

16 TRIAL SUBPOENA TO MAKE -- AND INCONVENIENCE THEM BY HAVING

17 THEM SIT HERE FOR A NUMBER OF DAYS SO WE'VE TOLD THEM WHICH

18 DAYS WE EXPECT THEM TO COME AND WE EXPECT TO GET THEM ON AND

19 OFF, AND WE'VE -- I'VE TAKEN THE TIME THAT BOTH SIDES

20 ESTIMATED AND -- AND ASKED THEM IF THERE'S ANY PROBLEM WITH

21 THAT, SO THAT'S AN ISSUE THAT'S --

22     **MR. ISAACSON:**  AND I DON'T THINK IT'S AN ISSUE, YOUR

23 HONOR.  WE APPRECIATE PLAINTIFFS DOING THIS.  THEY GAVE US

24 NOTICE OF THIS LAST NIGHT, WHO THEY WANTED AND ON WHAT DAYS.

25 AND WE ARE GOING TO CONTACT THOSE INDIVIDUALS TODAY.

```
 1          OUR INTENTION IS TO TRY AND DO WHAT YOU WANT, BUT --

 2          MR. COUGHLIN:  AND I JUST WANT --

 3          MR. ISAACSON:  NONE OF THOSE THREE PEOPLE KNOW ABOUT

 4    THIS YET.

 5          MR. COUGHLIN:  YEAH.  GOT IT.

 6          THE COURT:  SO THAT'S FINE.  LET'S LEAVE IT THERE.

 7    THANK YOU FOR HIGHLIGHTING THE POTENTIAL ISSUE.  DOESN'T SOUND

 8    LIKE IT'S A PROBLEM YET THAT I NEED TO DEAL WITH.

 9          MR. ISAACSON:  I THINK THE ONLY SUBSTANTIVE ISSUE

10    THAT COMES UP IS THAT IN THE MEET-AND-CONFERS, WE HAD A

11    DIFFERENCE OF OPINION AS TO WHEN THOSE WITNESSES WERE CALLED

12    AS TO WHETHER ON OUR CROSS-EXAMINATION, THAT IS, WHERE WE PUT

13    IN OUR DIRECT, WHETHER WE SHOULD BE LIMITED TO THE SCOPE OF

14    THEIR QUESTIONS OR HAVE TO CALL THESE PEOPLE BACK LATER IN OUR

15    CASE, WHICH I -- THE -- WHICH IS GROSSLY INEFFICIENT AND

16    REALLY UNFAIR TO THESE PEOPLE.

17          MR. COUGHLIN:  NO -- NO LIMITATION, YOUR HONOR.  THEY

18    CAN CERTAINLY GO BEYOND US.

19          THE COURT:  ALL RIGHT.  SO ORDERED.

20          THERE IS -- AND, AGAIN, THIS IS RAISED IN ONE OF THE

21    MOTIONS IN LIMINE.  THE ISSUE ABOUT EVIDENCE FROM INDIVIDUALS

22    BY PURPORTED DECLARATIONS, SOME OF WHICH WERE NOT EVEN SIGNED

23    UNDER PENALTY OF PERJURY.  I AM NOT GOING TO ADMIT

24    DECLARATIONS INTO A TRIAL AT LAW THAT AREN'T SUBJECT TO

25    CROSS-EXAMINATION.  YOU'RE ASKING FOR $350 MILLION.  PEOPLE
```

```
 1    HAVE TO COME AND TESTIFY.  THIS IS A COURT OF LAW.  AND
 2    OUT-OF-COURT STATEMENTS ARE NOT ADMISSIBLE GENERALLY.
 3        MR. COLLIN (PHONETIC)?
 4            MR. COUGHLIN:  WE UNDERSTAND, YOUR HONOR.
 5            THE COURT:  ALL RIGHT.
 6        APPLE'S WITNESS LIST, ANY ISSUES WITH APPLE'S WITNESSES?
 7    I KNOW WE'VE GOT SOME -- WE'RE NOT AT THE DESIGNATIONS YET.
 8        WHO IS THOMAS SLATTERY?
 9            MS. SWEENEY:  YEAH, YOUR HONOR.  PLAINTIFFS DO HAVE
10    OBJECTIONS TO THEM CALLING MR. SLATTERY THROUGH DEPOSITION
11    TESTIMONY AND ALSO MR. CHAROENSAK.  AND THE REASON IS THAT
12    MR. SLATTERY IS NO LONGER A PLAINTIFF IN THE CASE.
13    MR. CHAROENSAK IS A PLAINTIFF, AND WE ARE GOING TO PRESERVE
14    HIS APPELLATE RIGHTS, BUT WE ARE NOT -- HE IS NOT A MEMBER OF
15    THE CERTIFIED CLASS.  SO WE THINK THAT --
16            THE COURT:  I DON'T -- HE OPTED OUT?
17            MS. SWEENEY:  MR. CHAROENSAK?  HE DID NOT PURCHASE
18    WITHIN THE TIME PERIOD THAT THE JUDGE CERTIFIED THE CLASS.
19            THE COURT:  SO HOW IS HIS TESTIMONY RELEVANT?
20            MR. ISAACSON:  HE TESTIFIED -- SO HE WAS A PLAINTIFF.
21    HE WAS A CLASS REPRESENTATIVE WHO THEY'VE NOW DROPPED.  HE
22    TESTIFIED AT HIS DEPOSITION ABOUT THE ISSUES OF LOCK-IN AND
23    PURCHASE BEHAVIOR THAT'S RELEVANT AND SHORT.  AND SO WE WANT
24    THE OPTION OF PLAYING RELEVANT TESTIMONY.
25            THE COURT:  WELL, HOW IS IT RELEVANT IF THE PURCHASE
```

1    AT ISSUE DIDN'T OCCUR DURING THE CLASS PERIOD?

2            **MR. ISAACSON:**  BECAUSE ISSUES OF LOCK-IN, WHICH THEY

3    ARGUE, DON'T HAVE TO BE CONFINED TO WHETHER HE PURCHASED

4    DURING THAT PERIOD.  AND SO THERE CAN BE PEOPLE WHO HAVE

5    RELEVANT TESTIMONY TO THE ISSUES IN THIS CASE WHO DIDN'T

6    PURCHASE AN IPOD.

7            **THE COURT:**  WHAT DID HE SAY, GENERALLY SPEAKING?

8            **MR. ISAACSON:**  GENERALLY SPEAKING, FOR EXAMPLE, HE

9    RESISTED THE IDEA THAT HE WAS FORCED TO BUY IPODS BASED ON --

10    BASED ON THIS WHOLE IDEA OF YOU'VE GOT A LOT OF ITUNES MUSIC,

11    WHICH IS SORT OF FUNDAMENTAL TO DR. NOLL'S REPORT.

12        YOU'LL -- YOU'LL REMEMBER, YOUR HONOR, THAT WHEN YOU WERE

13    DEALING WITH THE ISSUES WITH DR. NOLL'S REPORT --

14            **THE COURT:**  YEAH.

15            **MR. ISAACSON:**  -- THAT THIS IS ABOUT AN ECONOMIST

16    DOING A REGRESSION WHO HAS NO CONSUMER EVIDENCE TO ACTUALLY

17    SUPPORT -- SUPPORT HIM.  THERE'S (SIC) NO CONSUMER SURVEYS.

18    THE ONLY CONSUMER EVIDENCE IN THIS CASE IS -- COMES FROM THE

19    COUPLE INDIVIDUALS WHO WERE DEPOSED.  THEY'VE DROPPED --

20            **THE COURT:**  DID MR. NOLL OR -- PROFESSOR NOLL REVIEW

21    THE -- ALL OF THE DEPOSITION TESTIMONY IN THIS CASE --

22            **MS. SWEENEY:**  YES, HE DID, YOUR HONOR.

23            **THE COURT:**  SO HE REVIEWED THIS TESTIMONY AS WELL?

24            **MS. SWEENEY:**  I'M SURE THAT HE DID.

25            **THE COURT:**  WELL, THEN HOW CAN I EXCLUDE IT?  IF IT'S

1   SOMETHING THAT HE CONSIDERED AS PART OF HIS ANALYSIS, THEN IT

2   BECOMES RELEVANT.

3         **MS. SWEENEY:**  THAT WOULD BRING IN A LOT OF MATERIAL,

4   YOUR HONOR, THAT IS OF ONLY MARGINAL RELEVANCE, AND IT'S ALSO

5   PREJUDICIAL BECAUSE IT IS CONFUSING TO THE JURY TO INTRODUCE

6   TESTIMONY OF A FORMER PLAINTIFF WHO DID NOT EVEN PURCHASE

7   WITHIN THE CLASS PERIOD.

8         **MR. ISAACSON:**  YOU KNOW, FOR EXAMPLE, THESE

9   CONSUMER -- ONE CONSUMER ISSUE IS THE ISSUE OF BURNING AND

10  RIPPING.  THE ARGUMENT OF LOCK-IN IS THAT ONCE YOU HAVE AN

11  IPOD AND YOU BUY FROM THE ITUNES STORE AND THIS HARMONY

12  SOFTWARE STOPS YOU FROM INTERACTING WITH THE REAL MUSIC STORE

13  THAT THEN YOU'RE LOCKED INTO YOUR IPOD.

14     THERE'S A PROCESS OF BURNING AND RIPPING TO CD'S AND

15  BURNING AND RIPPING THROUGH VIRTUAL BURNERS, WHICH ANY

16  CONSUMER CAN TESTIFY AS TO THE EASE OF THAT.  SO DESIGNATED

17  TESTIMONY OF THAT FROM THESE CONSUMERS SHOWS THAT THERE'S NO

18  LOCK-IN AND SHOWS THAT THIS WHOLE LOCK-IN THEORY JUST

19  FUNDAMENTALLY DOESN'T MAKE SENSE AT THE DAY-TO-DAY CONSUMER

20  LEVEL AND DIRECTLY REBUTS DR. NOLL'S TESTIMONY.

21        **MS. SWEENEY:**  YOUR HONOR, I WOULD DISAGREE WITH THAT

22  CHARACTERIZATION OF THE -- THE TESTIMONY, BUT IT IS IN THE

23  MATERIALS BEFORE YOUR HONOR AND WE HAVE -- HAVE

24  COUNTER-DESIGNATED IF YOUR HONOR LETS THAT TESTIMONY IN, BUT

25  WE BELIEVE IT TO BE IRRELEVANT.

1    **THE COURT:**  WELL, ALL RIGHT.  I -- I THOUGHT -- LET

2  ME GO TO THAT QUICKLY HERE.  I THOUGHT THAT THE DESIGNATION --

3  AND PERHAPS IT WAS ON THE OTHER INDIVIDUAL -- WELL, IT WAS

4  WITH RESPECT TO SLATTERY THAT THE ENTIRETY OF THE DEPOSITION

5  WAS BEING DESIGNATED.

6    **MR. ISAACSON:**  I'M NOT -- WE -- WE HAD SPECIFIC LINE

7  AND PAGE DESIGNATIONS.  WE DIDN'T DESIGNATE THE ENTIRE THING.

8    **THE COURT:**  WELL, IT SAYS "ENTIRETY OF THE

9  DEPOSITION."  I DID HAVE A QUESTION ABOUT IT, BUT THAT'S WHAT

10  IT SAYS, AND THAT'S WHAT I UNDERSTOOD IT TO BE.

11    **MR. ISAACSON:**  I'M NOT SURE WHY IT SAYS THAT.  WE --

12  WE'VE EXCHANGED NARROW DESIGNATIONS AND THE RUNNING TIME OF

13  THIS IS CURRENTLY 12 MINUTES FROM US AND 2 MINUTES FROM THE

14  PLAINTIFFS.  AND PROBABLY --

15    **THE COURT:**  WELL, THAT'S WHY IT WAS CONFUSING TO ME.

16    **MR. ISAACSON:**  I APOLOGIZE.

17    **THE COURT:**  WITH RESPECT TO -- OH, AND THAT WAS THE

18  SAME QUESTION I HAD WITH RESPECT TO -- HOWEVER YOU SAY HIS

19  NAME -- CHAROENSAK.

20    **MR. ISAACSON:**  FOR THAT, WE HAVE 8 MINUTES AND 25

21  SECONDS OF DESIGNATIONS, AND PLAINTIFFS HAVE 5 MINUTES AND 8

22  SECONDS OF COUNTER-DESIGNATIONS, ACCORDING TO OUR ESTIMATE.

23    **THE COURT:**  OKAY.

24    AND UNDER "DESIGNATION," IT SAID "ENTIRETY," SO -- ALL

25  RIGHT.  WELL, I WILL HAVE TO LOOK AT THOSE MORE CLOSELY.  I

1    WASN'T EXACTLY SURE WHAT I WAS SUPPOSED TO BE LOOKING AT.

2          **MR. ISAACSON:**  I COULD GIVE YOU AN EXAMPLE OF

3    MR. SLATTERY'S TESTIMONY IF YOU WOULD LIKE, YOUR HONOR.

4        YOU KNOW, WE DESIGNATED TESTIMONY AT PAGE 265 OF HIS

5    DEPOSITION WHERE HE TALKS ABOUT BURNING AND RIPPING AND HOW IT

6    COMMONLY TAKES HIM FIVE OR TEN MINUTES.  THAT SORT OF EVIDENCE

7    DIRECTLY RESPONDS TO DR. NOLL'S THEORY OF LOCK-IN.

8          **THE COURT:**  OKAY.  ANY MORE COMMENTS ON THAT ISSUE?

9          **MS. SWEENEY:**  JUST, YOUR HONOR, THAT IT ALSO IS

10   CUMULATIVE.  THE ACTUAL CLASS REPRESENTATIVES TO WHOSE

11   TESTIMONY WE DON'T OBJECT -- MS. TUCKER AND MS. ROSEN -- APPLE

12   ASKED THOSE SAME QUESTIONS AT THEIR DEPOSITIONS, SO THOSE

13   WITNESSES CAN AND WILL GIVE TESTIMONY ON THOSE VERY SAME

14   TOPICS AND --

15         **THE COURT:**  AND DO THEY SAY THE SAME -- THEY ALSO SAY

16   IT TAKES FIVE MINUTES?

17         **MS. SWEENEY:**  IT -- I THINK THAT THE TIME VARIES.  I

18   THINK THAT MS. TUCKER TESTIFIED THAT IT TAKES HER BETWEEN 10

19   AND 15 MINUTES.

20         **MR. ISAACSON:**  AND EVEN WITH THESE DESIGNATIONS, WE

21   WILL BE LOOKING AT THEM AS WE GET CLOSER TO TRIAL FOR ANYTHING

22   CUMULATIVE 'CAUSE THESE COUNT AGAINST OUR TIME.  WE'VE WORKED

23   THEM DOWN PRETTY FAR AT THIS POINT, BUT IT'S NOT GOING TO BE

24   SURPRISING IF THEY COME DOWN FURTHER.  BUT AT THIS POINT, I

25   THINK IT'S SUFFICIENT TO SAY THERE'S RELEVANT TESTIMONY, AND

1    DURING TRIAL, IF WE START TO PRESENT CUMULATIVE TESTIMONY, THE

2    COURT COULD DEAL WITH THAT AT THAT TIME.

3            **THE COURT:**  ALL RIGHT.  OTHER ISSUES?

4            **MR. COUGHLIN:**  YOUR HONOR, I THINK I MISSED THIS.  ON

5    STEVE JOBS, THERE'S A SHORT OBJECTION BY APPLE.  THEY WOULD

6    LIKE TO SAY THAT MR. JOBS WAS DEPOSED ON APRIL 12TH, 2011 --

7            **THE COURT:**  WELL, I'M NOT -- I WILL GET TO THAT

8    LATER.

9            **MR. COUGHLIN:**  OKAY.

10        OKAY.

11           **THE COURT:**  OKAY.  ANY CURRENT ISSUES WITH THE

12    PLAINTIFFS' EXPERTS OTHER THAN WHAT'S IDENTIFIED IN THE

13    MOTIONS?

14        HAVE YOU, FOR INSTANCE, AGREED ON THESE CURRICULUM VITAES?

15           **MR. ISAACSON:**  THEY WOULD NOT BE ADMITTED.

16           **THE COURT:**  OKAY.

17        BUT IT LOOKED LIKE YOU ALSO AGREED THAT THEY CAN SIT IN

18    THE COURTROOM?

19           **MR. ISAACSON:**  YES, YOUR HONOR.

20           **MS. SWEENEY:**  YES, YOUR HONOR.

21           **MR. ISAACSON:**  AND WE'VE ALSO TAKEN INTO ACCOUNT YOUR

22    HONOR'S COMMENTS AT THE LAST HEARING ABOUT THE TYPE OF

23    TESTIMONY YOU DON'T WANT TO HAVE FOLLOW THAT.  AND -- AND IN

24    THINKING ABOUT THAT, IT STRUCK US THAT -- YOU KNOW, WE'RE

25    STILL CONFINED TO THE REPORT.  AND SO IT STRUCK US THAT IF

1    THERE WAS TESTIMONY IN COURT THAT WAS RESPONDED TO BY A

2    REPORT, AN APPROPRIATE QUESTION WOULD BE "THIS WAS SAID IN

3    COURT; WHAT DOES YOUR REPORT SAY ABOUT THAT?"

4         **THE COURT:** OKAY.

5      LET'S LOOK AT YOUR EXHIBITS. I NEED BY DISC OR HARD

6    DRIVE -- I NEED A COPY SET OF ALL OF THESE EXHIBITS. IT IS

7    HARD TO MAKE DECISIONS IN A VACUUM WHEN I DON'T ACTUALLY HAVE

8    COPIES OF THE EXHIBITS. SO SOMEONE IS GOING TO NEED TO

9    DELIVER TO ME --

10        **MR. COUGHLIN:** WE'LL GET YOU COPIES OF THE EXHIBITS.

11             (OFF-THE-RECORD DISCUSSION.)

12        **THE COURT:** SO I TAKE IT THAT NO ONE IS GOING TO PUT

13   UP ON THE SCREEN DURING OPENINGS ANY DOCUMENT, RIGHT? BECAUSE

14   YOU'VE AGREED TO NOTHING IN TERMS OF STIPULATING THAT ANYTHING

15   CAN BE ADMITTED AT THIS POINT.

16        **MR. ISAACSON:** AND YOUR RULE PROVIDES THAT AS WELL,

17   SO WE WERE PLANNING TO FOLLOW YOUR RULE ABOUT NO DOCUMENTS

18   DURING OPENING.

19        **THE COURT:** NO, MY RULE SAYS THAT THERE ARE NO

20   DOCUMENTS UNLESS THERE IS AN AGREEMENT THAT IT CAN BE

21   ADMITTED, SO FREQUENTLY PEOPLE UNDERSTAND WHICH ARE THE NORMAL

22   SET OF DOCUMENTS THAT ARE GOING TO GET ADMITTED TO TRIAL.

23   THEY STIPULATE TO THOSE IN ADVANCE, AND THEN YOU CAN SHOW THEM

24   IN YOUR OPENING BECAUSE WE ALL AGREE THEY'RE COMING IN.

25      BUT I DON'T SEE ANY STIPULATIONS TO ADMIT.

```
 1              MR. COUGHLIN:  YOUR HONOR, I THINK WE -- WE WORKED
 2    VERY HARD ON ALL THE EXHIBITS.  I THINK WE GOT RID OF 95
 3    PERCENT OF ANY OBJECTIONS AS YOU CAN SEE, SO I THINK WE CAN
 4    WORK ON THIS ISSUE.  I CERTAINLY WOULD LIKE TO SHOW SOME OF
 5    THE DOCUMENTS THAT ARE NOT GOING TO BE CONTESTED AND EVERYBODY
 6    KNOWS THEY'RE GOING TO COME IN IN OUR OPENING, BUT -- BUT
 7    WE'LL TALK -- IT'S -- IT'S NOT THE KIND OF CASE WHERE THERE
 8    IS -- THERE ARE CRUCIAL DOCUMENTS EXCEPT FOR MAYBE SOME
 9    CONTRACTS AND/OR SOME TECHNICAL DOCUMENTS.
10              THE COURT:  NO, I WOULD AGREE WITH THAT.
11              MR. COUGHLIN:  YEAH.
12              MR. ISAACSON:  WE'RE HAPPY TO TALK ABOUT THAT.  WE
13    HAVE NOT TALKED ABOUT THAT WITHIN THE CONTEXT OF OPENINGS.
14    WE'VE HAD DISAGREEMENTS ABOUT WHETHER YOU NEED A SPONSORING
15    WITNESS, BUT WE -- WE'RE BOTH MUTUALLY EXPECTING THAT CERTAIN
16    DOCUMENTS ARE GOING TO COME IN THROUGH WITNESSES THEY'RE
17    CALLING.
18              THE COURT:  I MEAN, THE GOAL, AGAIN, OF DOING THIS IS
19    ULTIMATELY IT HELPS YOU WITH YOUR TIME BECAUSE EVERY TIME AN
20    EXHIBIT IS BEING OFFERED, IF I DON'T HAVE TO, YOU KNOW -- AND
21    SECONDS ADD UP, LET ME TELL YOU, OR A MINUTE ADDS UP.  YOU'RE
22    LOOKING AT WHAT YOUR CROSS-EXAMINATION'S GOING TO DO.  YOU
23    WEREN'T QUITE PAYING CLOSE ENOUGH ATTENTION.  I ASKED FOR YOUR
24    OPINION.  YOU HAVE TO SCRAMBLE TO LOOK AT THE DOCUMENT, SEE IF
25    THERE'S AN OBJECTION.
```

1          **MR. COUGHLIN:**  WE'LL WORK ON THAT, YOUR HONOR.  WE'LL

2     GET THAT DONE.

3          **MR. ISAACSON:**  AND I THINK WE HAVE A DONE A LOT OF

4     THAT.  I MEAN, SOMEONE'S GOING TO BE ABLE TO MOVE TO ADMIT AND

5     SAY THERE'S NO OBJECTION AND THEY'VE PRESENTED TO A WITNESS

6     AND SO IT WILL COME IN.  WE'VE JUST TRIED TO AVOID A PROCESS

7     WHERE THERE'S A PILE OF DOCUMENTS THAT ARE PREADMITTED THAT

8     ARE NEVER SHOWN TO ANY WITNESS.

9          **THE COURT:**  OKAY.  SO THERE'S -- THERE IS -- THAT

10    WON'T HAPPEN.  JUST BECAUSE YOU STIPULATE TO ADMIT DOESN'T

11    MEAN THAT I HAVE, IN FACT, ADMITTED THEM.

12         **MR. ISAACSON:**  RIGHT.

13         **THE COURT:**  SO THE WAY THE PROCESS WORKS, AT LEAST IN

14    MY COURTROOM, IS THAT IF YOU STIPULATE TO ADMIT AND

15    MS. SWEENEY HAS SOMEONE ON THE STAND AND SHE'S DOING HER

16    EXAMINATION, SHE REFERS TO TRIAL EXHIBIT 15.  I LOOK AT MY

17    BOOK, WHICH IS ALWAYS OPEN.  I SEE THAT THERE IS A STIPULATION

18    TO ADMIT.  SO NOW IT'S ON THE SCREEN.  BECAUSE IT'S ON THE

19    SCREEN AND I HAVE A STIPULATION, I WILL SAY IT'S ADMITTED.

20    NOW EVERYBODY IN THE COURTROOM CAN SEE IT.  AND IT IS

21    SEAMLESS.

22         IF IT IS NOT USED DURING THE TRIAL, YOU ARE GOING TO HAVE

23    TO ARGUE TO ME WHY I SHOULD ADMIT IT EVEN IF THERE IS A

24    STIPULATION TO ADMIT BECAUSE I DON'T UNDERSTAND WHY I WOULD

25    ADMIT SOMETHING THAT THE JURY'S NEVER SEEN, SO -- OR TALKED

1    ABOUT OR HEARD ABOUT.

2        SO THE GOAL IS, ESPECIALLY WITH A -- WITH EXHIBITS THAT

3    ARE BEING SHOWN ELECTRONICALLY AND I -- I EXPECT THAT YOU'RE

4    GOING TO HAVE THE FULL ELECTRONIC --

5        **MR. COUGHLIN:**  WE ARE, YOUR HONOR.

6        **THE COURT:**  -- OUTFIT IN HERE.

7        **MR. COUGHLIN:**  WE ARE, YOUR HONOR.

8        **MR. ISAACSON:**  YES.

9        **THE COURT:**  THAT NO ONE IS HAVING TO WAIT BECAUSE

10   IF -- IF YOU'RE LOOKING AT AN EXHIBIT DURING THE EXAMINATION

11   AND YOUR I.T. GUYS HAVE PUT IT ON THE SCREEN, THAT JURY IS NOT

12   LOOKING AT IT UNTIL I SAY IT'S OKAY.  BUT IF I'VE GOT THE

13   STIPULATION, THEN IT'S FINE.

14       **MR. ISAACSON:**  I THINK WE WERE TRYING TO ACHIEVE THAT

15   WITH DIFFERENT WORDS, BY "NON-OBJECTION" AS OPPOSED TO

16   "STIPULATION TO ADMIT."  AND WE CAN WORK WITH PLAINTIFFS

17   PERHAPS ON A PROCESS OF DOCUMENTS THAT CAN BE IMMEDIATELY

18   SHOWN TO A WITNESSES.

19       **MR. COUGHLIN:**  AND WE'LL ACTUALLY DO THAT AND USE

20   THAT WORD.  WE DID SAY, "NO OBJECTION," WHICH WE TOOK TO MEAN

21   THAT WE COULD DO IT, AS YOU SAID, SEAMLESSLY.  SO WE WILL

22   ACTUALLY USE THE WORD "STIPULATED TO" TO THE DOCUMENTS WHERE

23   THERE'S NO OBJECTION --

24                      (SIMULTANEOUS COLLOQUY.)

25       **THE COURT:**  AND THAT'S -- AND THAT'S WHERE THE COLUMN

1    THAT SAYS "STIPULATION TO ADMIT" -- THAT'S WHAT THAT COLUMN

2    SEEKS TO ACHIEVE.

3        THE DATE THAT IS -- IT'S ADMITTED IS THE DATE THAT I SAY

4    IT ACTUALLY IS IN EVIDENCE.  THIS IS JUST -- ALLOWS ME TO DO

5    THAT WITHOUT HAVING TO ASK ANY MORE QUESTIONS.

6            **MR. ISAACSON:**  FINE.

7            **MR. COUGHLIN:**  GOT IT, YOUR HONOR.

8            **THE COURT:**  OKAY?

9            **MR. ISAACSON:**  GOT IT.

10           **THE COURT:**  OKAY.  SO ONCE YOU GO THROUGH THAT

11   PROCESS, I'M GOING TO -- I WILL NEED TO HAVE AN UPDATED --

12   I'LL NEED TO HAVE UPDATED EXHIBIT LISTS.

13           **MR. COUGHLIN:**  WE'LL DO THAT, YOUR HONOR.

14           **THE COURT:**  OKAY.  SO LET'S LOOK AT -- AS I SAID

15   EARLIER, I HAVE NOT SEEN TRIAL EXHIBITS 11, 12, 13 AND 14,

16   WHICH ARE ON THIS LIST, INDICATED AS BEING SUBJECT TO APPLE'S

17   MOTION IN LIMINE NO. 4.

18                    (PAUSE IN THE PROCEEDINGS.)

19           **THE COURT:**  ARE THERE OTHER SPECIFIC DOCUMENTS -- I

20   HAVEN'T GONE THROUGH ALL 136 PAGES HERE, ARE THERE OTHER

21   SPECIFIC DOCUMENTS THAT ARE SPECIFICALLY REFERENCED IN THOSE

22   MOTIONS BECAUSE ONE OF THE ISSUES THAT I HAD WITH YOUR ALL --

23   WITH ALL OF YOUR MOTIONS IS THAT THEY WERE VERY BROAD.  I

24   TYPICALLY DON'T GRANT BROAD MOTIONS IN LIMINE.

25           **MR. COUGHLIN:**  YOUR HONOR, I THINK THOSE ARE THE ONLY

```
1    EXHIBITS THAT -- THAT THE PARTIES IDENTIFIED LIKE THAT.  AND,

2    YOUR HONOR, I DON'T THINK THERE'S A -- SOME OF THE MOTIONS IN

3    LIMINE TOUCH ON SOME OF THESE DOCUMENTS, WHETHER IT'S A

4    HACKING DOCUMENT OR SOMETHING ELSE.  BUT IT WASN'T OUR

5    INTENTION -- AND I THINK BOTH SIDES HAVE -- DIDN'T HAVE THE

6    INTENTION TO EXCLUDE THOSE DOCUMENTS.  IT MIGHT -- IT WAS JUST

7    ARGUMENT, LET'S SAY, SPRINGING FROM THEM.  BUT THE DOCUMENTS

8    THEMSELVES, I THINK BOTH SIDES INTENDED WOULD COME IN.

9              THE COURT:  WELL, NOW I'M SEEING -- NOW I'M SEEING

10   402 --

11        MR. ISAACSON:  ON PAGE 30, YOUR HONOR.

12             THE COURT:  -- 404 --

13      ALL RIGHT.  SO LET'S -- LET'S GO THROUGH THIS.  TAG THE

14   PAGES.  SO PAGE 3 OF 136.  YOU SAID PAGE 30?  I DON'T --

15        MR. ISAACSON:  I'M NOW LOOKING AT THE PLAINTIFFS'

16   EXHIBITS.

17             THE COURT:  RIGHT.  SO PAGE 31, I SEE.

18        MR. ISAACSON:  YES.  PAGE -- SO EXHIBITS ON PAGE 30

19   ARE -- ARE SENATE -- RELATE TO CONGRESSIONAL HEARINGS.

20             THE COURT:  WHAT -- WHAT EXHIBIT NUMBER?  I'M NOT

21   SEEING --

22        MR. ISAACSON:  209 AND 210.

23        THE COURT:  OKAY.  SO THIS IS ON -- AH.

24      LET'S ALL AGREE ON SOMETHING, ON A -- ON AN APPROACH.

25   PAGE 30 IS ACTUALLY THE PAGE NUMBER THAT IS IDENTIFIED ON THE
```

 1    EXHIBIT LIST, BUT IT'S NOT THE PAGE NUMBER ON THE -- IT'S NOT

 2    THE ECF PAGE NUMBER.

 3          **MR. ISAACSON:**  OH, YES.  I'M SORRY.

 4          **THE COURT:**  THE ECF PAGE NUMBER IS 31.

 5          **MR. ISAACSON:**  YES.

 6          **THE COURT:**  AND FROM MY PERSPECTIVE, WHEN I READ YOUR

 7    BRIEFS AND I'M TRYING TO FIND THINGS, IT IS EASIER TO LOOK AT

 8    THE ECF PAGE NUMBER BECAUSE THAT'S AT THE TOP OF THE PAGE.

 9          **MR. ISAACSON:**  OKAY.

10          **THE COURT:**  SO WHENEVER YOU BRIEF SOMETHING, IF YOU

11    ARE REFERRING TO A DOCUMENT AND I APPRECIATE THE PAGE SPECIFIC

12    REFERENCES, PIN CITES, PLEASE USE THE ECF NUMBER BECAUSE

13    THAT'S HOW I CAN FIND IT MOST EFFICIENTLY.

14       ALL RIGHT.  SO PAGE 31.  NEXT PAGE AFTER THAT, I SEE -- I

15    SEE IT AT 62 AND 63.  IS THERE ANYTHING IN BETWEEN?

16          **MR. ISAACSON:**  NO, I DID NOT SEE ANYTHING BEFORE

17    THEN, YOUR HONOR.

18                   (OFF-THE-RECORD DISCUSSION.)

19                   (PAUSE IN THE PROCEEDINGS.)

20          **MR. ISAACSON:**  WELL, OBVIOUSLY THE DECLARATIONS ARE

21    ON THERE AS EVIDENCE AND YOU'VE ALREADY REFERENCED THOSE.

22    THOSE ARE ON PAGE 121 OF THE ECF.

23          **THE COURT:**  RIGHT.  THOSE DON'T REFERENCE THE MOTION

24    IN LIMINES (SIC), BUT I KNOW THAT THERE IS ONE.

25          **MR. ISAACSON:**  RIGHT.  YES.  AND THEN YOU WOULD HAVE

```
1    TO MOVE TO PAGE 131.

2              THE COURT:  RIGHT.  AFTER THAT.  I SEE THAT.

3         OKAY.  SO LET'S GO THROUGH THESE, AND I'LL TAKE SOME BRIEF

4    ARGUMENT ON THEM.  BUT, AGAIN, I AM GOING TO NEED TO SEE THE

5    ACTUAL EXHIBITS.

6         SO WITH RESPECT TO 11, 12, 13, AND 14 --

7                   (PAUSE IN THE PROCEEDINGS.)

8              MR. ISAACSON:  SO THESE RELATE TO THE MOTION IN

9    LIMINE ON PROFITS.  AND THESE DOCUMENTS -- AND I DON'T KNOW IF

10   YOU WANT TO HEAR THAT WHOLE MOTION IN LIMINE RIGHT NOW, BUT

11   THE DOCUMENTS DESCRIBE SPECIFIC PROFITS ON IPODS.  I DON'T

12   KNOW HOW YOU PRESENT THESE TO THE JURY EXCEPT -- BECAUSE

13   THEY'RE CHARTS, JUST RAW NUMBERS.  BUT THE ONLY PURPOSE THAT

14   WE COULD SEE WAS TO TRY AND SAY TO THE JURY THAT THERE'S

15   SOMEHOW EXCESS PROFITS ON THE IPODS, WHICH IS AN ARGUMENT

16   ADDRESSED IN THE MOTION IN LIMINE.

17             THE COURT:  WHAT'S THE PLAN?

18             MS. SWEENEY:  YOUR HONOR, RESPONDING NOW TO THE --

19   THAT PARTICULAR MOTION IN LIMINE, PLAINTIFFS --

20             THE COURT:  OKAY.  YOU CAN RESPOND GENERALLY, BUT I

21   NEED TO KNOW ON THIS --

22                   (SIMULTANEOUS COLLOQUY.)

23             MS. SWEENEY:  ON THESE SPECIFIC DOCUMENTS, YES, YOUR

24   HONOR.  PROFESSOR NOLL RELIES ON THESE DOCUMENTS FOR A COUPLE

25   OF DIFFERENT REASONS.  ONE IS TO -- ONE OF THE -- THE METHODS
```

 1    THAT HE USES IS HE LOOKS AT -- AT PROFIT MARGINS IN ORDER

 2    TO -- TO DETERMINE WHETHER THERE IS MONOPOLY POWER.  IT'S

 3    AL- --

 4             **THE COURT:**  GO AHEAD.

 5             **MS. SWEENEY:**  IT'S ALSO COMMONLY ACCEPTED AS A -- AS

 6    A DIRECT METHOD OF SHOWING MONOPOLY POWER AS OPPOSED TO THE

 7    INDIRECT METHOD WHERE YOU LOOK AT MARKET SHARES, ET CETERA.

 8    SO THAT'S PRECISELY WHAT THESE DOCUMENTS GO TO.

 9             **THE COURT:**  AND THROUGH WHOM DO YOU INTEND -- DO YOU

10    ANTICIPATE PROFFERING THEM?

11             **MS. SWEENEY:**  PROFESSOR NOLL.

12             **THE COURT:**  OKAY.  RESPONSE?

13             **MR. ISAACSON:**  MR. COVE WAS PREPARED TO ADDRESS

14    NO. 4, SO I'M GOING TO ASK HIM TO SPEAK.

15             **MR. COVE:**  GOOD MORNING, YOUR HONOR.

16        I -- IF YOU'D LIKE ME JUST TO ADDRESS THESE PARTICULAR

17    DOCUMENTS, I'LL DO SO.  11, 12, AND 14 ARE STATEMENTS OF --

18    FINANCIAL STATEMENTS RELATING TO ITUNES STORE SALES.  DR. NOLL

19    DID NOT, IN FACT, DO ANY ANALYSIS ON MARGINS OR PROFITS WITH

20    REGARD TO -- TO ITUNES STORE SALES.  IN FACT, HE EXPLICITLY

21    STATED THAT HE HAD NOT.

22        ON PAGE 43 OF HIS REPORT, WHICH THE PLAINTIFFS CITE AT

23    PAGE 4 OF THEIR OPPOSITION TO OUR MOTION IN LIMINE, DR. NOLL

24    SAYS, APPLE PRODUCED ONLY HIGHLY AGGREGATED DATA ABOUT

25    REVENUES AND COSTS FOR THE ITUNES STORE.  THESE ARE NOT

```
 1    SUFFICIENT TO TAKE A MARGIN ANALYSIS FOR DOWNLOADS OF AUDIO

 2    FILES, WHICH ARE THE RELEVANT PRODUCT IN THIS CASE.  SO

 3    DR. NOLL EXPRESSLY DISCLAIMED THAT HE WAS DOING ANY SUCH

 4    ANALYSIS.

 5        AND FOR THE PLAINTIFFS TO PUT THESE IN AND WAVE THEM

 6    AROUND, A, THEY ARE BEYOND THE SCOPE OF DR. NOLL'S REPORT

 7    RIGHT NOW; AND, B, THE COURTS, AS WE SET OUT IN OUR MOTION,

 8    HAVE -- CLEARLY LOOK WITH DISFAVOR -- MODERN COURTS LOOK WITH

 9    DISFAVOR ON EVIDENCE OF THE PROFITS THAT ARE UNTETHERED TO ANY

10    ECONOMIC ANALYSIS AS EVIDENCE OF MONOPOLY OR MARKET POWER.

11             THE COURT:  ALL RIGHT.  LET'S DEAL WITH THE FIRST

12    ISSUE.  WHERE IN DR. NOLL'S REPORTS ARE 11, 12, AND 14

13    IDENTIFIED?  OR IS HE -- IS HE CORRECT THAT THEY ARE NOT?

14             MS. SWEENEY:  YOU'RE ASKING ME, YOUR HONOR?

15             THE COURT:  YES, I AM.

16             MS. SWEENEY:  11 AND 12 RELATE TO ITUNES --

17             THE COURT:  THAT WASN'T MY QUESTION.  MY QUESTION IS

18    WHERE IN HIS REPORT DOES HE SAY THAT HE RELIES ON THEM?  OR DO

19    YOU AGREE THAT THEY ARE -- THAT THEY'VE MADE AN ACCURATE

20    REPRESENTATION THAT HE HAS NOT?

21             MS. SWEENEY:  IN HIS APPENDIX, YOUR HONOR, HE

22    IDENTIFIES ALL OF THE DOCUMENTS THAT HE RELIED UPON.

23             THE COURT:  AND DO THEY INCLUDE 11, 12, AND 14?

24             MS. SWEENEY:  YES.  YES, THEY DO.

25             MR. COVE:  I'M SORRY IF I MISSPOKE.  I DID NOT MEAN
```

1    TO SAY THAT I -- I'D MEMORIZED THEIR APPENDIX AND KNOW THAT

2    THEY'RE NOT IN THERE.  WHAT I SAID WAS HE EXPRESSLY DISCLAIMED

3    ANY PROFIT ANALYSIS IN HIS REPORT.

4              **THE COURT:**  ALL RIGHT.  GIVE ME AN ECF NUMBER.

5              **MR. COVE:**  THE ECF NUMBER IS -- AND I HAVE -- I CAN

6    HAND THIS UP TO YOU IF YOU'D LIKE.  I HAVE COPIES, BUT THE ECF

7    NUMBER -- THERE ARE TWO ECF NUMBERS FOR HIS REPORT.  THE ONES

8    THE PLAINTIFF CITES IS -- IN THEIR OPPOSITION IS 813-3 AND

9    HIS -- WHICH IS --

10             **THE COURT:**  EIGHT DASH --

11             **MR. COVE:**  813-3.  AND IT'S -- THE DOCKET -- THE PAGE

12   NUMBER ON THE DOCKET IS 79, WHICH IS PAGE 43 OF HIS REPORT.

13   WE CITE IN OUR OPENING BRIEF ON THE MOTION IN LIMINE -- EXCUSE

14   ME -- WE CITE A DIFFERENT DOCKET NUMBER, WHICH IS DOCKET

15   NO. 751-1, BUT THEY'RE BOTH THE SAME THING.  AND IT'S -- IT'S

16   PAGE 43 OF HIS REPORT, BUT IT'S PAGE 79 OF DOCKETED PAGE (SIC)

17   813-3.

18      EXCUSE ME.

19                   (PAUSE IN THE PROCEEDINGS.)

20             **THE COURT:**  OKAY.  AND YOU'RE RELYING ON --

21             **MR. COVE:**  THE SECOND --

22             **THE COURT:**  I'M NOW AT THAT PAGE --

23             **MR. COVE:**  THE SECOND PARAGRAPH UNDER "MARGIN

24   ANALYSIS."

25             **THE COURT:**  OKAY.  HOLD ON.  LET ME JUST READ IT.

```
 1              (PAUSE IN THE PROCEEDINGS.)

 2         THE COURT:  ALL RIGHT.  SO WHERE IN HIS REPORT DOES

 3   HE SAY THAT HE'S RELYING ON THIS INFORMATION FOR AN OPINION?

 4         MS. SWEENEY:  IT'S IN HIS APPENDIX, YOUR HONOR, WHICH

 5   IS NOT PART OF THE --

 6         THE COURT:  MS. SWEENEY?

 7         MS. SWEENEY:  -- THE EXHIBIT.

 8         THE COURT:  DOES HE HAVE AN OPINION THAT REFERENCES

 9   THESE REPORTS?  THAT IS, A SPECIFIC OPINION UPON WHICH HE

10   RELIES ON THESE THREE DOCUMENTS?

11         MS. SWEENEY:  HE DOES NOT CALL THEM OUT IN HIS REPORT

12   IN A FOOTNOTE, IF THAT'S WHAT YOUR HONOR'S ASKING.

13         THE COURT:  NO, I'M FRANKLY JUST ASKING -- I WANT TO

14   LOOK AT HIS OPINION UPON WHICH YOU NEED THIS INFORMATION

15   ENTERED INTO EVIDENCE TO SUPPORT THE OPINION.  WHAT OPINION?

16         MS. SWEENEY:  EXHIBIT --

17         THE COURT:  WHAT PAGE AND -- UNFORTUNATELY, HE

18   DOESN'T HAVE PARAGRAPH NUMBERS.

19         MS. SWEENEY:  THAT'S RIGHT, YOUR HONOR.  I -- HE HAS

20   AN OPINION IN HIS REPORT, AND I'LL FIND THE PAGE CITE FOR YOU,

21   AS TO APPLE'S SHARE OF THE DOWNLOAD DIGITAL MUSIC MARKET.  AND

22   THESE TWO EXHIBITS, EXHIBITS 11 AND 12, GO TO THAT ISSUE, YOUR

23   HONOR.

24         THE COURT:  OKAY.  WELL, I NEED -- I NEED A OPINION.

25         MS. SWEENEY:  OKAY.  IN -- IN HIS REPORT --
```

```
 1                    (PAUSE IN THE PROCEEDINGS.)

 2          MS. SWEENEY:  HMM.  THIS -- THIS ISN'T THE CITATION

 3    THAT I WAS LOOKING FOR.  I'LL FIND IT, YOUR HONOR.

 4          THE COURT:  ALL RIGHT.  THERE'S ANOTHER -- SO I STILL

 5    DON'T HAVE AN OPINION YET, AND LET -- AND LET ME BE CLEAR.

 6       THE ONLY REASON THAT EVIDENCE LIKE THIS WOULD COME IN IS

 7    IF THERE IS A DISCLOSED OPINION UPON WHICH IT RELIES, AND THEN

 8    THERE IS AN ANCILLARY REASON TO ADMIT THEM.  JUST BECAUSE

 9    HE -- AN EXPERT RELIES ON SOMETHING DOESN'T MEAN THAT IT IS

10    ADMITTED.  EXPERT RELIES -- THEY RELY ON ECONOMIC TREATISES.

11    I'M NOT GOING TO ADMIT ECONOMIC TREATISES, BUT I DO NEED A

12    SPECIFIC OPINION.

13       ALL RIGHT.  SO WHAT ABOUT TRIAL EXHIBIT 13?

14          MR. COVE:  13, YOUR HONOR, IS A -- RELATES TO IPOD

15    SALES.  DR. NOLL DOES SLIGHTLY MORE WITH REGARD TO IPOD SALES

16    THAN HE DID WITH REGARD TO -- HE DID NO MARGIN ANALYSIS REGARD

17    TO ITUNES -- ITUNES STORE SALES.

18       FOR IPODS -- THIS IS SET OUT IN OUR -- IN OUR MOTION -- HE

19    REFERS TO SOME FINANCIAL ANALYSTS' ANALYSIS OR MARGINS, AND

20    THEN HE DOES HIS OWN MARGIN ANALYSIS BASED ON CHANGES IN --

21    ALLEGED CHANGES IN THE MARGIN OVER TIME.  IT WAS IN -- I DO

22    NOT BELIEVE IT WAS BASED ON THIS DOCUMENT NO. 13, WHICH IS

23    A -- WHICH JUST HAS GROSS NUMBERS AND -- AND REALLY DOESN'T

24    RELATE TO MARGINS AT ALL.

25       AND BASED ON -- ON THAT, WE THINK THIS GOES BEYOND THE
```

1    SCOPE OF HIS REPORT AND IS, AGAIN, SIMPLY TRYING TO HAVE

2    FREE-FLOATING EVIDENCE IN -- RELATING TO -- RELATING TO

3    PROFITS THAT IS UNFAIRLY PREJUDICIAL, THAT MODERN COURTS HAVE

4    RECOGNIZED IS NOT PROBATIVE OF MONOPOLY POWER AND MARKET

5    POWER.

6        WE HAVE NO OBJECTION TO -- AT THIS POINT TO -- TO WHAT

7    DR. NOLL HAS TESTIFIED ABOUT HIS MARGIN ANALYSIS.  WE'LL DEAL

8    WITH THAT IN CROSS-EXAMINATION.  BUT WE -- OUR OBJECTION IS TO

9    FREE-FLOATING DOCUMENTS AND ARGUMENTS BY COUNSEL AND TESTIMONY

10   BY OTHER WITNESSES THAT TRY TO RAISE THE INFERENCE OF MARKET

11   POWER OR APPLE'S WEALTH OR ISSUES LIKE THAT THAT ARE

12   UNTETHERED TO A SPECIFIC ECONOMIC ANALYSIS.

13       THE PLAINTIFFS CITE CASES FROM THE *GRIFFITH* CASE FROM 1948

14   ON THIS POINT.  WHAT THEY THOUGHT ABOUT ECONOMIC ANALYSIS IN

15   1948 IS NO LONGER MODERN LAW.

16           **THE COURT:**  OKAY.  DO YOU HAVE AN OPINION FOR ME WITH

17   RESPECT TO DOCUMENT 13 THAT YOU CAN IDENTIFY IN HIS REPORT?

18   IF NOT, I'LL GIVE YOU SOME TIME, BUT I'M GOING TO NEED IT.

19           **MS. SWEENEY:**  OKAY.  13 AND 14 GO TO APPLE'S SHARE OF

20   THE PORTABLE DIGITAL PLAYER MARKET, WHICH IS A PART OF

21   PROFESSOR NOLL'S REPORT.  AND WE'LL FIND THE EXACT CITATION

22   FOR YOU.

23           **MR. COVE:**  YEAH, I'M NOT SURE IF COUNSEL IS -- IF

24   WE'RE ON THE SAME WAVELENGTH, BUT THE 14 THAT I'M LOOKING AT

25   HAS ITS SALES, WHICH SUGGESTS IT'S ITUNES AND NOT IPODS.

1          **THE COURT:**  RIGHT.  14 ACCORDING TO THE EXHIBIT LIST

2     REFERENCES ITS SALES.

3          **MS. SWEENEY:**  OH, MY MISTAKE, YOUR HONOR.  EXHIBIT

4     13.

5          **THE COURT:**  OKAY.

6       ALL RIGHT.  NOW, LET'S GO TO THE NEXT, WHICH IS PAGE 31 OF

7     136.  AGAIN, I DON'T HAVE THOSE DOCUMENTS IN FRONT OF ME.

8       WHAT'S THE ARGUMENT WITH RESPECT TO NO. 209?

9               (PAUSE IN THE PROCEEDINGS.)

10         **THE COURT:**  THIS IS A HEARING BEFORE THE JUDICIARY,

11    STATEMENT OF REPRESENTATIVE SMITH -- LET ME -- LET ME SWITCH

12    THE -- THE ARGUMENT HERE.

13      WHAT'S THE EVIDENTIARY BASIS UPON WHICH A STATEMENT BY A

14    POLITICIAN COMES INTO EVIDENCE?

15         **MR. COUGHLIN:**  I DON'T THINK IT WOULD COME INTO

16    EVIDENCE EXCEPT FOR NOTICE ABOUT A CERTAIN THING HAPPENING AT

17    A CERTAIN TIME, YOUR HONOR.  I AGREE WITH THAT.

18         **THE COURT:**  OKAY.  SO, AGAIN, NOTICE OF WHAT EVENT?

19         **MR. COUGHLIN:**  THERE WERE -- IN THIS CASE, THERE WERE

20    HEARINGS ABOUT INTEROPERABILITY OCCURRING AT A TIME THAT

21    MR. JOBS WAS MAKING CERTAIN STATEMENTS TO THE MARKET ABOUT --

22    WELL, ABOUT THE PRODUCTS, ABOUT IPOD, AND THAT APPLE WAS --

23    AND SO WE THINK CERTAIN THINGS -- CERTAIN ACTIONS WERE

24    UNDERTAKEN, IN PART BECAUSE OF STUFF THAT WAS HAPPENING IN

25    CONGRESS HERE, OVER IN EUROPE, AND ALSO OTHER REGULATORY

1    BODIES, AS WELL AS BUSINESS ASPECTS THAT THEY WERE DISCUSSING.

2        AND SO THEN THEY WOULD MAKE AN ANNOUNCEMENT ABOUT THIS OR

3    THAT.  AND, REALLY, THESE DOCUMENTS ARE JUST -- WE UNDERSTAND

4    THAT THERE'S NOT -- NO DOCUMENT OF A CONGRESSIONAL SENATOR

5    WOULD BE COMING IN FOR THE TRUTH OF THE MATTER ASSERTED.  BUT

6    CERTAINLY WHEN WE HAVE A WITNESS ON THE STAND AND WE'RE

7    TALKING ABOUT -- WE'RE TALKING TO THAT WITNESS, YOU KNOW,

8    THERE WILL BE AN EVENT THAT OCCURRED AND THEN A REACTION BY

9    APPLE.

10        IN FACT, SOMETIMES THEY'RE QUESTION AND ANSWERS THAT APPLE

11    HAS PUT UP AND ACTUALLY THAT THEY WROTE INTERNALLY WHERE THEY

12    SAY, ARE YOU TAKING THIS ACTION BECAUSE OF THE REGULATORY

13    ACTION THAT'S OCCURRING OVER IN EUROPE?  AND THEY'LL HAVE

14    WRITTEN OUT ON ANSWER FOR STEVE JOBS.  HE'LL HAVE SEEN THAT

15    ANSWER AND TALKED ABOUT IT.

16        WHETHER WE ACTUALLY ADMIT IT OR HOW WE USE THAT EXHIBIT,

17    WE PUT THEM ON OUR EXHIBIT LIST 'CAUSE WE DO INTEND TO

18    QUESTION THE WITNESSES ABOUT IT.  THEY'VE OBJECTED.  I

19    CERTAINLY UNDERSTOOD THEIR OBJECTION.  WE ACTUALLY HAVE A

20    NUMBER OF OBJECTIONS THAT WE UNDERSTAND THE -- AS TO HEARSAY

21    AS TO CERTAIN, LET'S SAY, NEWS ARTICLES AND THINGS LIKE THAT

22    THAT, THAT, OF COURSE, WE'RE NOT GOING TO FLASH UP ON, BUT WE

23    MIGHT ASK SOMEBODY ABOUT A TIME PERIOD AND WHAT'S HAPPENING AT

24    THAT TIME.

25            THE COURT:  ALL RIGHT.  AND IS THAT WITH THE SAME

```
 1    WITH RESPECT TO 210, OR ARE THERE DIFFERENT ISSUES WITH

 2    RESPECT TO 210?

 3         MR. COUGHLIN:  WELL, 210 IS REALLY JUST THE NOTICE,

 4    AND, INTERNALLY, THEY'RE TALKING ABOUT THE CONGRESSIONAL

 5    HEARING.  AND IF MY MEMORY SERVES ME RIGHT EXACTLY, I THINK

 6    MR. JOBS IS TALKING ABOUT HOW UNBELIEVABLE IT IS THAT -- THAT

 7    THESE HEARINGS ARE GOING ON.

 8                   (PAUSE IN THE PROCEEDINGS.)

 9         THE COURT:  ALL RIGHT.  PAGE 62 OF 136.

10         MS. DUNN:  YOUR HONOR, WE'D LIKE TO RESPOND ON

11    EXHIBIT 209 AND 210.

12         THE COURT:  I'M GOING TO GO THROUGH THE ENTIRE --

13    LOOK, HE'S NOT SEEK BEING TO ADMIT THESE, SO I'M NOT GOING TO

14    ACTUALLY -- AT LEAST NOT PREADMIT.  WE'RE GOING TO GO THROUGH

15    THE MOTIONS IN LIMINE.

16         MS. DUNN:  OKAY.

17         THE COURT:  I WANT TO UNDERSTAND THE DOCUMENTS.  WHEN

18    I NEED SOME ARGUMENT, I'LL ASK YOU FOR IT.

19         MS. DUNN:  ALL RIGHT.  THANK YOU.

20         THE COURT:  ALL RIGHT.  TRIAL EXHIBITS 402 AND 404,

21    THOSE REFERENCE A COUPLE MOTIONS IN LIMINE.  I'M AT PAGE 62 OF

22    136, CONTEXT WITH RESPECT TO THESE DOCUMENTS?

23         MR. COUGHLIN:  YOUR HONOR, I'M TRYING TO PUT IN

24    CONTEXT OF WHAT -- WHAT THEIR OBJECTION IS.

25         THE COURT:  MR. ISAACSON?
```

```
 1          MR. ISAACSON:  YES.  SO WITH 402, THIS GOES TO JUST A

 2   GENERAL DISCUSSION OF INTEROPERABILITY AND LICENSING OF

 3   FAIRPLAY, WHICH HAS ALREADY BEEN RULED LEGAL IN THIS CASE.

 4          MR. COUGHLIN:  YOUR HONOR, I THINK THAT THAT -- THAT

 5   THAT -- THAT THAT DOCUMENT -- THAT THERE'LL BE A BETTER --

 6   ONCE WE GET TO THAT MOTION IN LIMINE AND TALK ABOUT THOSE

 7   ASPECTS THAT -- THAT ARE NOT IN CHALLENGE ABOUT 7.0 AND 7.4, I

 8   THINK WE'LL BE ABLE TO PUT THAT IN CONTEXT.

 9       I UNDERSTOOD THEIR OBJECTIONS ON THE SIDE HERE -- AND THEY

10   HAVE ANOTHER OBJECTION ASIDE FROM THEIR MOTION IN LIMINE PUT

11   UP TO THE SIDE.

12       I'M HAPPY TO GO THROUGH THESE DOCUMENTS, BUT I WASN'T

13   GOING TO THROW ANY OF THESE DOCUMENTS UP THERE, YOU KNOW,

14   UNLESS WE HAD A FURTHER DISCUSSION ABOUT THEM.  I THINK IT'S

15   MORE FRUITFUL ACTUALLY TO TALK ABOUT THEIR MOTIONS IN LIMINE.

16          THE COURT:  ALL RIGHT.

17          MR. COUGHLIN:  BUT --

18          MR. ISAACSON:  I DO THINK THIS DOCUMENT WOULD BE

19   CLEAR CUT COVERED BY THE MOTION IN LIMINE BECAUSE IT'S VERY

20   SHORT, AND IT SIMPLY SAYS -- IT TALKS ABOUT APPLE'S OFFER TO

21   LICENSE FAIRPLAY.  IT SAYS THERE'VE BEEN MANY SERVICES SEEKING

22   A LICENSE TO THE APPLE DRM.  THIS WOULD ENABLE THE

23   INTEROPERABILITY THAT WE HAVE BEEN URGING FOR A VERY LONG

24   TIME.

25       SO IT DIRECTLY RAISES THE ISSUES THAT JUDGE WARE SAID IS
```

```
1    LEGAL --
2          THE COURT:  WELL, JUDGE WARE ALSO SAID THEY COULD
3    HAVE CLASS REPRESENTATIVES, SO I'D BE A LITTLE CAREFUL.
4          MR. ISAACSON:  OKAY.  I -- AT LEAST WITH REGARDS TO
5    THAT RULING, HE'S -- HE'S FULLY SUPPORTED BY THE NINTH CIRCUIT
6    AND THEIR CASES.
7          THE COURT:  AND YOU THINK HE WAS JUST TAKING IT OUT
8    OF THIN AIR WITH RESPECT TO THE OTHER, MR. ISAACSON?  JUDGES
9    USUALLY DON'T DO THAT.
10         MR. ISAACSON:  NO, I -- BUT THERE IS -- WITH REGARDS
11   TO THIS BEING ON-POINT NINTH CIRCUIT CASE LAW, AS OPPOSED TO
12   AN ARGUMENT ABOUT WHICH PLAINTIFFS AND DEFENDANTS ARE ARGUING
13   ABOUT.
14         THE COURT:  OKAY.  AGAIN, UNFORTUNATELY, I DON'T HAVE
15   ANY OF THESE DOCUMENTS YET, SO I THINK I UNDERSTAND GENERALLY
16   AT LEAST THE SUBJECT MATTER OF THESE THINGS.
17         MR. ISAACSON:  AND I THINK --
18         THE COURT:  SO WE'LL --
19         MR. ISAACSON:  404 IS A REFERENCE TO THE EUROPEAN
20   ISSUE THAT WAS RAISE BY PLAINTIFFS' COUNSEL.  I THINK IT FALLS
21   WITHIN THAT CATEGORY.
22      AS WELL AS --
23         THE COURT:  WELL, THAT'S 404 AND 414.
24         MR. ISAACSON:  YES, YOUR HONOR.
25         THE COURT:  OKAY.  THEN THE NEXT SET IS ON PAGE 121.
```

1    I DON'T NEED ANY MORE ARGUMENT ON THOSE DECLARATIONS.

2        AND THE FINAL SET IS TRIAL EXHIBIT 808.  AGAIN, THE

3    EVIDENTIARY BASIS ON WHICH THIS WOULD COME INTO TRIAL?

4            **MR. ISAACSON:**  CAN WE EXPLAIN TO YOU WHAT THIS IS,

5    YOUR HONOR, BECAUSE WHILE THIS IS COVERED BY OUR MOTION IN

6    LIMINE ABOUT OTHER ANTITRUST CASES, THIS IS AN OCTOBER 2014

7    REPORT.  IT IS OVER A HUNDRED PAGES LONG FROM THE -- FROM THE

8    EXTERNAL COMPLIANCE MONITOR TO THE COURT IN THE *E-BOOKS*

9    LITIGATION.

10       SO IT IS RELATING TO COMPLIANCE EFFORTS FOR THE COURT'S

11   JUDGMENT IN THAT CASE BETWEEN THE TIME OF THE JUDGMENT AND

12   THIS REPORT, WHICH IS LONG PAST THE CLASS PERIOD, AND A

13   DOCUMENT THAT'S CLEARLY HEARSAY AND INTENDED TO BE

14   PREJUDICIAL.

15           **THE COURT:**  THE EVIDENTIARY BASIS UPON WHICH IT COULD

16   BE EVER ADMITTED.

17           **MR. COUGHLIN:**  I DON'T THINK IT COULD BE ADMITTED,

18   YOUR HONOR.  I THINK WE'RE GOING TO ASK QUESTIONS ABOUT IT

19   BECAUSE I THINK IT SHOWS -- IT GOES TO OUR -- WHAT IS THE

20   SUBJECT OF A MOTION IN LIMINE ABOUT 404(B) EVIDENCE.

21           **MR. ISAACSON:**  AND I DISAGREE WITH THAT, YOUR HONOR,

22   BECAUSE SEPARATE FROM THE 404(B) ARGUMENT, THIS DOCUMENT

23   RELATES TO POST-JUDGMENT COMPLIANCE EFFORTS IN THE *E-BOOKS*

24   CASE.  IT CAN'T --

25           **THE COURT:**  ARE THESE REMEDIAL EFFORTS?

```
 1            MR. ISAACSON:  IT'S --

 2            MR. COUGHLIN:  I DON'T THINK SO, YOUR HONOR.  FIRST

 3    OF ALL, THEY -- THESE -- THEY WERE FOUND TO BE IN VIOLATION OF

 4    ANTITRUST LAWS IN THE E-BOOKS CASE, AND SO SHE APPOINTED A

 5    MONITOR.  WHAT THAT MONITOR HAS UNCOVERED IS IN THIS REPORT.

 6    THOSE -- WHAT THEY'VE UNCOVERED ARE LAPSES FOR -- LET'S SAY TO

 7    PREVENT ANTITRUST VIOLATIONS.  AND THEY EXPLAIN THOSE.  AND

 8    THEY EXPLAIN -- SOMETIMES THEY EXPLAIN WHAT THEY INTEND TO DO

 9    OR HOW THEY INTEND TO FIX THEM.

10        BUT THE IDENTIFICATION OF THE PROBLEM IS -- IS WHAT IT

11    GOES TO THE HEART OF THIS CASE, AND IT INVOLVES THE SAME

12    PEOPLE.  AND, IN FACT, JUDGE COTE SPECIFICALLY CITES TO

13    EDUARDO CUE AS ONE PERSON AND TALKS AT LENGTH ABOUT, YOU KNOW,

14    WHAT HE DID OR DIDN'T DO IN THE E-BOOKS.

15            MR. ISAACSON:  WE ARE MERGING TWO DIFFERENT THINGS

16    WHEN WE'RE RAISING MR. CUE.  AND WHEN WE GET TO THE MOTION IN

17    LIMINE, MS. DUNN WILL ADDRESS THAT.

18        BUT WITH THIS REPORT, SEPARATE FROM THAT -- THIS HAS

19    NOTHING TO DO WITH MR. CUE.  THIS HAS TO DO WITH COMPLYING

20    WITH INJUNCTIONS.  WE DISAGREE WITH HIS CHARACTERIZATIONS TO

21    WHAT THE MONITOR HAS FOUND.  BUT REGARDLESS, IT CAN'T POSSIBLY

22    BE RELEVANT AS TO WHAT APPLE IS DOING IN 2013 AND 2014 TO AN

23    ANTITRUST CASE ABOUT THE YEARS 2006 AND 2009.

24        AND IT'S CLEARLY INTENDED TO BE PREJUDICIAL.  IT'S CLEARLY

25    INTENDED FOR THEM TO ARGUE, LOOK, APPLE IS A BAD COMPANY
```

1    TODAY.  THAT'S WHAT THEY WANT TO DO.

2            **THE COURT:**  I UNDERSTAND.

3            **MR. ISAACSON:**  WE DON'T THINK IT'S JUSTIFIED.

4            **THE COURT:**  I UNDERSTAND.  WE WILL GET TO THAT ONE,

5    AND THEN I'M SURE WE'LL GET TO IT AGAIN ONCE I ACTUALLY SEE

6    THE DOCUMENT.

7        ALL RIGHT.  LET'S MOVE TO APPLE'S EXHIBIT LIST.  AGAIN, IS

8    THERE ANY OBJECTION IN HERE THAT IS SPECIFIC TO A MOTION IN

9    LIMINE OR SOMEHOW SPECIFIC -- OR I NEED SOME CONTEXT BEFORE I

10   ACTUALLY SEE THESE DOCUMENTS.

11           **MR. COUGHLIN:**  I DON'T THINK SO, YOUR HONOR.  IF THEY

12   WANT TO TALK ABOUT ANY SPECIFIC DOCUMENT, I'M HAPPY -- THERE

13   WERE A COUPLE OF DOCUMENTS THAT WERE INCOMPLETE.  HERE'S AN

14   ISSUE THAT CAME UP.

15       SOME OF THESE DOCUMENTS CITE TO A LINK ON THE INTERNET.

16   AND YOU CAN NO LONGER GET THAT LINK AND THE -- WHAT WAS BEHIND

17   THAT DOCUMENT WAS NOT PRODUCED TO US AT THE TIME THE DOCUMENT

18   WAS PRODUCED, AND SO WE CAN'T LOOK AT THE ARTICLE OR THE

19   STATEMENT THAT THE PARTIES ARE REFERRING TO.  AND SO WE THINK

20   THAT THAT IS AN INCOMPLETE DOCUMENT.

21       AS YOU CAN SEE, YOUR HONOR, WE'VE GOT, YOU KNOW, NEARLY A

22   HUNDRED PAGES HERE, AND WE VERY -- WE HAVE VERY FEW

23   OBJECTIONS.  AND I DON'T THINK THEY DISAGREE THERE'S A BUNCH

24   OF ARTICLES THAT ARE CITED THAT THEIR EXPERTS HAVE PULLED OFF

25   THE INTERNET.  AND WE UNDERSTAND THEY'RE ACTUALLY NOT GOING TO

1    TRY TO ADMIT THOSE DOCUMENTS.  THEY JUST WANTED THEM -- OUT OF

2    ABUNDANCE OF CAUTION, I WAS TOLD, THAT THEY LISTED THEM,

3    AND -- AND EVERYBODY AGREES THAT THEY'RE HEARSAY.  THEY

4    WOULDN'T BE ADMITTED FOR THE TRUTH OF THE MATTER ASSERTED.

5    THEY MIGHT COME IN FOR SOME NOTICE ISSUE.  THEY MIGHT HAVE A

6    WITNESS UP ON THE STAND TALKING ABOUT SOMETHING, BUT NOT --

7    YOU KNOW, THE DOCUMENT WOULD NOT FLASH UP BECAUSE IT HAS THE

8    OBJECTION HERE, HEARSAY.

9        AND IF THEY WANT TO USE IT FOR SOMETHING ELSE, OTHER THAN

10   THE TRUTH, FOR A NOTICE, I'M SURE THAT COUNSEL CAN JUST TELL

11   US, HEY, WE'RE GOING TO USE THIS JUST FOR A NOTICE ISSUE.  I

12   DON'T THINK IT WOULD COME IN THEN ANYWAY.

13       BUT ANY DOCUMENT THEY WANT TO TALK ABOUT, WE'RE HAPPY TO

14   TALK ABOUT.

15           **MR. ISAACSON:**  SO JUST WITH RESPECT TO THE

16   COMPLETE -- I AGREE WITH THE REST OF THE STATEMENTS OF

17   COUNSEL.  JUST WITH RESPECT TO THE COMPLETENESS ARGUMENT.  IF

18   A (SIC) EMAIL HAS A LINK OF -- TO AN ARTICLE IN IT AND THAT

19   LINK IS NO LONGER AVAILABLE AND WAS NOT PRODUCED ON THAT --

20   BECAUSE OF THAT, THAT DOESN'T MEAN THAT THE DOCUMENT IS

21   INCOMPLETE FOR RULE 106 PURPOSES.  IT MAY NOT BE ADMITTED.

22   THAT WOULD GO TO THE WEIGHT.

23       FOR EXAMPLE, IF AN EMAIL OR A LETTER BACK IN THE DAYS

24   BEFORE EMAIL SAID, I READ THE *NEW YORK TIMES* ARTICLE TODAY AND

25   THEN GOES ON TO SAY THINGS, THE -- THAT LETTER OR EMAIL CAN BE

 1   ADMITTED WITHOUT HAVING THE *NEW YORK TIMES* ARTICLE ATTACHED,

 2   AND ANY -- AND ANY COUNSEL ARGUING ABOUT IT CAN POINT OUT THAT

 3   THE ARTICLE'S NOT ATTACHED.

 4          **MR. COUGHLIN:**  I DON'T NECESSARILY DISAGREE WITH --

 5   WITH WHAT HE'S SAYING.  AND, IN FACT, WE HAVE A BUNCH OF

 6   EMAILS WITH THE ARTICLES ACTUALLY ATTACHED THAT ARE GOING TO

 7   COME INTO EVIDENCE.  AND THE ARTICLES AREN'T GOING TO COME IN

 8   FOR THE TRUTH, BUT THEY'RE TALKING ABOUT THEM ABOVE THAT.

 9       THESE ARE LITTLE DIFFERENT.  THERE ARE PROBABLY TEN OF

10   THESE, I THINK, THAT -- THAT HAVE THESE CITES THAT I

11   COULDN'T -- I COULDN'T PULL IT UP.  I COULDN'T FIND IT.

12          **THE COURT:**  ALL RIGHT.  AS I SAID TO SOMEONE IN

13   CHAMBERS, ONE OF THE GOOD THINGS ABOUT THIS IS THAT IT TEES UP

14   THE ISSUE FOR ME SO I'M NOT TOTALLY SURPRISED WHEN I ACTUALLY

15   GET IT DURING THE TRIAL ITSELF.

16       BUT WITH RESPECT TO MOST OF THIS, IT LOOKS LIKE, YOU KNOW,

17   UNTIL I HAVE THE ACTUAL QUESTION IN FRONT OF ME AND THE

18   CONTEXT AND THE ACTUAL DOCUMENT, I PROBABLY WON'T BE ABLE TO

19   MAKE THE RULING.

20       NOW, THERE IS THE ISSUE, AS I'M LOOKING AT YOUR LIST,

21   MR. ISAACSON, ABOUT THE PHYSICAL ITEMS THAT HAVE BEEN

22   IDENTIFIED.  AND APPARENTLY THERE'S NO AGREEMENT ON THIS YET?

23   IS THERE SOME REASON --

24          **MR. COUGHLIN:**  WE DON'T THINK -- WE DON'T THINK THEY

25   SHOULD GO BACK TO THE JURY.  I DON'T THINK THEY INTEND TO, AND

1    SO MAYBE WE DON'T HAVE ANY DISAGREEMENT.

2              **MR. ISAACSON:**  I DON'T ACTUALLY AGREE WITH THAT.

3              **THE COURT:**  WHY?  JURORS LIKE THINGS.  JURORS LIKE TO

4    FEEL -- YOU KNOW, THEY WANT TO KNOW WHAT THEY'RE -- THEY WANT

5    TO KNOW WHAT THEY'RE ARGUING ABOUT.

6              **MR. COUGHLIN:**  ARE THEY GOING TO WORK?  IN OTHER

7    WORDS, WOULD THEY BE OPERABLE?

8              **THE COURT:**  WELL, THAT'S A QUESTION.

9              **MR. COUGHLIN:**  WELL, I'D LIKE TO KNOW THE ANSWER TO

10   THAT.

11             **THE COURT:**  I THINK THAT'S A GOOD -- I THINK THAT'S A

12   GOOD QUESTION.

13             **MR. COUGHLIN:**  I ASSUME THAT THEY -- I'M GOING TO GO

14   BACK OVER 20 YEARS WHERE I HAD A CASE AGAINST APPLE, AND IT

15   INVOLVED THE LISA AND THE MAC.  AND, IN FACT, WE HAD THIS VERY

16   DISCUSSION ABOUT WHETHER THAT COMPUTER WOULD GO BACK IN THE

17   ROOM.  AND IN THE END -- IT WAS IN FRONT OF JUDGE WARE IN '91,

18   WE AGREED THAT IT WOULD NOT GO BACK IN BECAUSE IT WAS -- IT

19   DID WORK, AND WE DIDN'T KNOW WHAT THE JURY WOULD DO WITH IT IN

20   THE BACK.  THAT'S THE SAME THING THAT WE -- PROBLEM THAT WE

21   HAVE WITH THESE.

22      I MEAN, IF SOMEBODY WANTS TO PICK UP AN IPOD AND LOOK AT

23   IT, HOLD IT, IS IT GOING TO BE -- YOU KNOW, IS IT GOING TO BE

24   READY TO PLUG IN?  ARE THEY GOING TO BE ABLE TO PUT --

25             **THE COURT:**  I DON'T KNOW WHEN YOU'RE LITIGATING THIS

```
 1    CASE IN ANOTHER TEN YEARS BEFORE THE NINTH CIRCUIT, THE CLERKS

 2    UP THERE AREN'T GOING TO KNOW WHAT IPODS ARE.  IT'S GOING TO

 3    BE 20 YEARS OLD, AND THESE WILL BE PART OF THE EVIDENTIARY

 4    RECORD, SO --

 5            MR. COUGHLIN:  SO NOBODY KNOWS WHAT A LISA AND A MAC

 6    ARE -- WELL, THEY KNOW WHAT A MAC IS, BUT THAT WAS OUR

 7    PROBLEM.  IF THEY'RE JUST THE PHYSICAL THINGS AND THEY'RE NOT

 8    GOING TO BE OPERATING, WE HAVE NO OBJECTION.

 9            MR. ISAACSON:  I --

10            THE COURT:  I DON'T KNOW HOW --

11            MR. ISAACSON:  I THINK WITH RESPECT -- WITH RESPECT

12    TO AT LEAST SOME OF THESE DEVICES -- I DON'T KNOW IF ALL OF

13    THEM -- I'LL HAVE TO THINK ABOUT -- YES, THEY ARE GOING TO BE

14    FULLY CHARGED.

15        I MEAN, FOR EXAMPLE, THE FEATURES OF THE IPOD AT -- DURING

16    THIS ERA ARE DIRECTLY AT ISSUE WITH RESPECT TO DR. NOLL'S

17    REPORT.  HE WANTS TO ATTRIBUTE NONE OF THE PRICE INCREASES TO

18    THESE, SUCH AS THE SCREEN SIZE, SUCH AS THE PIXELS.  SO

19    LOOKING AT THESE FEATURES IN A FULLY CHARGED IPOD IS -- IS

20    RELEVANT EVIDENCE AND SHOULD GO BACK TO THE JURY.

21            THE COURT:  ALL RIGHT.

22        WELL, BRING IN THE SET THAT YOU'RE SUGGESTING SO WE CAN

23    TAKE A LOOK.

24            MR. COUGHLIN:  AND, YOUR HONOR -- AND THERE IS AN

25    ISSUE, YOUR HONOR.  THE -- LET'S SAY YOU CAN TAKE AN IPOD FROM
```

1  THAT ERA.  WHAT'S HAPPENING TODAY AND WHAT YOU MAY BE ABLE TO,

2  YOU KNOW, PULL OUT OF THE AIR, YOU KNOW, USING A COMPUTER --

3  CERTAINLY THE COMPUTERS HAVE CHANGED THAT YOU'D BE RIPPING AND

4  BURNING ON OR DOING THINGS LIKE THAT, SO THE WHOLE, YOU KNOW,

5  THE -- THE GIG, SO TO SPEAK -- THE GIGABYTES THAT ARE

6  AVAILABLE ON YOUR IPHONE OR ANYTHING ELSE ARE JUST TOTALLY

7  DIFFERENT.  AND SO THE EXPERIENCE IS TOTALLY DIFFERENT.

8      THESE THINGS NOW FLASH UP IN A FLASH, WHERE THEY DIDN'T --

9  I MEAN, YOU'LL -- YOU'LL SEE DOCUMENTS HERE THAT SAYS IT TAKES

10  APPROXIMATELY 3.5 SECONDS FOR -- FOR THE SONG TO COME UP.

11  WOULD THAT HAPPEN TODAY?  NO, IT WOULD BE --

12          **THE COURT:**  WELL, BUT THAT'S THE QUESTION.

13          **MR. COUGHLIN:**  SO I HAVE A PROBLEM WITH THAT.

14  THAT'S -- SORRY.

15          **THE COURT:**  NO.  THE JURY -- THE JURY WILL HAVE TO

16  PUT THEMSELVES BACK INTO THE ERA.  AND THE QUESTION IS HOW TO

17  BEST GET THEM BACK THERE.  HOW ARE WE GOING TO DO THAT IF THEY

18  HAVE A DEVICE THAT THE EVIDENCE SHOWS -- AND, YOU KNOW, ALL OF

19  THIS HAS TO -- TO COME OUT.  IT'S NOT GOING TO JUST GO IN

20  THERE WITHOUT SOME CONTEXT, WITHOUT SOME EVIDENCE, WITHOUT

21  SOME TESTIMONY EXPLAINING THINGS.

22      CLEARLY ONE OF THE ISSUES IN THIS CASE IS WHAT WAS THE

23  POINT OF 7.0 AND 7.4.  YOU HAVE ONE VERSION, THEY HAVE ANOTHER

24  VERSION.  AND YOU BOTH WOULD LIKE TO EXCLUDE ALL OF THE

25  EVIDENCE THAT THE OTHER GUY HAS WITH RESPECT TO THEIR

 1    THEORIES.  GUESS WHAT?  YOU'RE ALL WRONG.

 2        THE JURY IS GOING TO GET TO HEAR IT ALL.  AND I WAS TRYING

 3    TO THINK OF A GOOD ANALOGY.  HAVEN'T QUITE COME UP WITH IT

 4    YET.  BUT, YOU KNOW, I DON'T KNOW, YOU HAVE SOME RECIPES.

 5    YOU'VE GOT SOME BASIC -- SOME BASIC -- SOME BASIC INGREDIENTS,

 6    AND ONE SAYS IT MAKES COOKIES AND THE OTHER ONE SAYS IT MAKES

 7    BREAD.  JURY GETS TO DECIDE.

 8        AND -- AND IF THIS IS GOING TO -- IF THERE IS SOME -- SOME

 9    WAY TO HELP THEM IN THEIR DECISION-MAKING PROCESS THAT HAS AN

10    EVIDENTIARY BASIS WITHOUT BEING OVERLY PREJUDICIAL, THEN I'M

11    GOING TO HEAR IT.  AND I THINK IT'S PROBABLY -- THERE'S SOME

12    VALIDITY TO IT.

13        DO I NEED TO SEND IN FIFTEEN DEVICES?  I DON'T KNOW THAT I

14    NEED TO DO THAT.

15            **MR. COUGHLIN:**  AND --

16        **THE COURT:**  PERHAPS TWO, PERHAPS THREE.  BUT UNTIL I

17    HAVE THE ACTUAL DEVICES, I'M NOT MAKING ANY DECISIONS.  UNTIL

18    THEY HAVE THE ACTUAL DEVICES AND CAN TEST THAT, THEY'RE NOT

19    COMING IN.  AND THEN HOW ARE YOU GOING TO DECIDE?  ARE YOU

20    PUTTING IN HANDEL'S MESSIAH OR COUNTRY WESTERN?  WHAT ARE

21    GOING TO DO?

22            **MR. COUGHLIN:**  WE'RE GOING WITH COUNTRY WESTERN, YOUR

23    HONOR.

24            **THE COURT:**  YEAH, YOU KNOW, GEORGE STRAIT, YOU COULD

25    HAVE THE GREATEST HITS OF ALL GENRES.

```
 1              MR. ISAACSON:  WE MAY JUST TAKE THE MUSIC THAT'S ON
 2    IT.
 3              THE COURT:  OR THAT.
 4         OKAY.  WELL, THAT ISSUE NEEDS TO STILL BE RESOLVED.  BUT
 5    WE DO NEED TO -- YOU DO NEED TO IDENTIFY VERY SPECIFIC THINGS.
 6    YOU DO NEED TO GIVE IT TO THE OTHER SIDE SO THAT THEY CAN HAVE
 7    A PERSPECTIVE.  AND THEN WE'LL TALK ABOUT IT AGAIN.
 8              MR. ISAACSON:  YES, WE ARE -- WE ARE -- WE AGREE WITH
 9    THAT, YOUR HONOR, AND ARE DOING THAT.
10              THE COURT:  OKAY.
11         ALL RIGHT.
12                   (OFF-THE-RECORD DISCUSSION.)
13              THE COURT:  ALL RIGHT.  KEEP GOING.
14         NEXT TAB IN YOUR BINDER, DISCOVERY DESIGNATIONS AND
15    OBJECTIONS.
16                   (PAUSE IN THE PROCEEDINGS.)
17              THE COURT:  OKAY.  MY FIRST QUESTION WITH RESPECT
18    TO -- I -- I NOW UNDERSTAND THAT WITH RESPECT TO THE TWO
19    ABSENT CLASS MEMBERS, DESPITE THE INDICATION THAT THE
20    DESIGNATION WAS THE ENTIRETY OF THE DEPOSITION, THAT'S NOT THE
21    INTENT.
22         BUT WITH RESPECT TO NO. 2, WHICH IS THE INTERROGATORY
23    RESPONSE, SEPARATE AND APART FROM THE FACT THAT THIS CLASS
24    MEMBER'S BEEN WITHDRAWN, FIRST QUESTION I HAD IS, IS IT
25    JUST -- IS IT DUPLICATIVE OF THE SAME INFORMATION BEING SOUGHT
```

1      TO BE ADMITTED BY CLASS MEMBERS WHO ARE NOT WITHDRAWN?

2          THAT IS, THE RESPONSE TO THE INTERROGATORIES TEND TO BE --

3              **MR. COUGHLIN:**  THE SAME.

4          **THE COURT:**  -- THE SAME, SO WHY DO I NEED FOUR COPIES

5      OF THE SAME RESPONSE?

6              **MR. ISAACSON:**  WELL, IN THE ABSENCE OF CONSUMER

7      SURVEYS, FOUR IS BETTER THAN ONE.  TO THE EXTENT -- SO THAT WE

8      ARE ABLE TO SAY THAT ALL OF -- ALL OF THE PLAINTIFFS AGREE ON

9      THIS POINT.

10             **THE COURT:**  WELL, CAN'T YOU SAY THAT ANYWAY?

11             **MR. ISAACSON:**  WE CAN TALK TO THE PLAINTIFFS ABOUT

12     HOW TO STREAMLINE THAT TO SAY -- AND PERHAPS WE COULD PUT IT

13     IN A STIPULATION.

14             **THE COURT:**  I THINK THAT WOULD ADDRESS THE ISSUE.  SO

15     THAT RELATES TO NO. 2 AND TO NO. 6.

16                     (PAUSE IN THE PROCEEDINGS.)

17             **THE COURT:**  OKAY.  THEN WE MOVE TO -- MOVE TO NO. 7.

18     OKAY.  SO WALK ME THROUGH THIS.

19         THE -- APPLE WANTS TO PUT IN THE RESPONSE TO INTERROGATORY

20     NO. 22.  AND THEN PLAINTIFF WANTS --

21                     (OFF-THE-RECORD DISCUSSION.)

22                     (PAUSE IN THE PROCEEDINGS.)

23             **THE COURT:**  PLAINTIFF WANTS TO ADD ITS RESPONSE TO

24     INTERROGATORY NO. 1?  BUT NOW EVEN THOUGH THEY WANT -- EVEN

25     THOUGH DEFENDANTS WANT NO. 22, IT'S NOW HEARSAY?  AND --

```
 1   WHY -- WHAT IS -- WHAT IS THE PLAN FOR HAVING -- FOR HAVING

 2   THIS COME INTO EVIDENCE?  AND BY THE WAY, IS THIS SWORN?  WERE

 3   THESE INTERROG- -- I DON'T SEE A VERIFICATION.

 4       THE INTERROGATORY RESPONSES, ESPECIALLY NO. 1, IS

 5   BASICALLY A LAWYER'S SUMMARY, AS IS NO. 22.  YOU -- YOU ASK

 6   FOR THEIR FACTS WITH RESPECT TO PARAGRAPHS 64 TO 66 OF THE

 7   COMPLAINT.  WHAT COMPLAINT?  THERE'S AN AMENDED COMPLAINT IN

 8   THIS CASE.  HOW IS THIS AT ALL RELEVANT FOR PURPOSES OF A

 9   TRIAL?  I DON'T UNDERSTAND WHAT YOU'RE DOING WITH THIS, EITHER

10   SIDE.

11           MR. ISAACSON:  OUR COUNTER-DESIGNATIONS WERE TO

12   INDICATE MATERIAL THAT WE MIGHT CROSS-EXAMINE A PLAINTIFF

13   WITNESS WITH AND SEEK TO ADMIT.

14       WE CERTAINLY HAVEN'T MADE --

15           THE COURT:  SO WAIT.  WAIT.  YOU'RE -- THESE ARE YOUR

16   DESIGNATIONS, NOT COUNTER-DESIGNATIONS.

17           MR. ISAACSON:  THE --

18           THE COURT:  NO. 7, AS I -- AS I UNDERSTOOD IT, THIS

19   IS -- I'M LOOKING AT DOCKET -- DOCUMENT 846.  THIS IS APPLE'S

20   DISCOVERY DESIGNATIONS.

21           MR. ISAACSON:  AND THEN WITH RESPECT TO THAT, IF

22   MS. TUCKER WAS GOING TO START -- BE EXAMINED ABOUT

23   INTERROGATORY NO. 1 AND THIS LONG THING -- WE'RE NOT SURE --

24   WE'RE UNCLEAR HOW THAT COMES IN.

25           THE COURT:  I DON'T KNOW HOW YOU GET -- TELL ME WHAT
```

```
1    YOU'RE GOING TO DO WITH NO. 22.

2          MR. ISAACSON:  RESPOND TO HOW THEY USED NO. 1.

3    THEY -- WE'RE --

4          THE COURT:  BUT IT'S YOUR -- IT'S YOUR AFFIRMATIVE

5    DESIGNATION.

6          MR. ISAACSON:  THE --

7          THE COURT:  NO. 7 IS YOUR AFFIRMATIVE DESIGNATION.

8    THEY ONLY COUNTER-DESIGNATED WITH B.

9          MR. ISAACSON:  RIGHT.  AND WITH NO. -- WITH NO. 22,

10   IF MS. TUCKER TESTIFIES, WE MAY USE LANGUAGE FROM THAT ANSWER

11   TO CROSS-EXAMINE HER.  AND THEN IF THAT -- AND THEN IF WE SEE

12   FIT, TO MOVE TO ADMIT IT.

13         THE COURT:  IS THE COMPLAINT -- HAS SOMEONE

14   IDENTIFIED THE COMPLAINT AS AN EXHIBIT?

15         MR. ISAACSON:  YES, YOUR HONOR.  BECAUSE --

16         THE COURT:  WHAT DOES PARAGRAPH 64 TO 66 SAY AND WERE

17   THEY SUPERSEDED BY THE AMENDED COMPLAINT?  AND WAS THE

18   COMPLAINT VERIFIED BY MS. TUCKER?

19         MR. ISAACSON:  RIGHT.  SO -- AT -- THE -- I DON'T

20   THINK IT MATTERS FOR A COMPLAINT IF IT'S VERIFIED IN ORDER FOR

21   IT TO BE AN ADMISSION BY A PARTY.

22      THE -- IN PARAGRAPH 66 OF THAT COMPLAINT, IT SAYS THAT

23   ITUNES 7.0 STOP (SIC) HACKS, AND THAT'S WHAT IT WAS ABOUT.

24   THE PLAINTIFFS -- SO OUR POINT IS THAT THE PLAINTIFFS' THEORY

25   OF THIS CASE HAS COMPLETELY CHANGED FROM THE -- FROM THE
```

1    COMPLAINT, AND WE'RE ENTITLED TO CROSS-EXAMINE PLAINTIFFS ON

2    THAT BASIS.  THAT'S AN ADMISSION ON THEIR PART, AN ADMISSION

3    THAT'S, YOU KNOW, FRANKLY, DISPOSITIVE OF THEIR CASE.

4                    (PAUSE IN THE PROCEEDINGS.)

5            **THE COURT:**  SO THE THEORY CHANGED BACK IN 2011.  IS

6    THAT WHAT YOU'RE SAYING?

7            **MR. ISAACSON:**  I'M NOT SURE -- I --

8            **THE COURT:**  BECAUSE THIS IS DATED MARCH 2011.

9            **MR. ISAACSON:**  YES, IT CHANGED IN -- BASIC -- WELL,

10   IT'S CHANGE -- I'M NOT SURE -- I GUESS BY THE TIME OF SUMMARY

11   JUDGMENT, IT MUST HAVE CHANGED.  BUT THE COMPLAINT SAYS

12   STRAIGHTFORWARD IN PARAGRAPH 66 THAT ITUNES 7.0 WAS INTENDED

13   TO STOP HACKING AND NOT -- AND NOTHING ABOUT REAL.

14      AND THAT'S NOT THE THEORY OF THIS CASE, WHICH IS WHY

15   INTERROGATORY 22 IS OF INTEREST TO US, BECAUSE WHAT THEY'RE --

16   THIS IS AT THE POINT WHERE THEY'RE ABANDONING IT.  PLAINTIFF

17   NO LONGER RELIES ON THESE ALLEGATIONS.

18           **THE COURT:**  ALL RIGHT.

19           **MR. ISAACSON:**  ALL RIGHT?  SO, YOU KNOW, AS PART OF

20   THE EXAMINATION ON THIS POINT IS TO SAY, YOU MADE THESE

21   ALLEGATIONS AND THEN YOU WITHDREW THEM.  AND THEN AT THE POINT

22   OF ABANDONMENT IS VERY LIKELY THIS INTERROGATORY.

23           **THE COURT:**  AND HOW ABOUT THE INTERROGATORIES, WAS IT

24   VERIFIED BY HER?  IF YOU'RE GOING TO QUESTION HER ON IT, IS

25   THERE A VERIFICATION?

1            MS. DEARBORN?

2            **MS. DEARBORN:**  WE NEED TO CHECK ON THAT, YOUR HONOR.

3            **THE COURT:**  WELL, I'D LIKE TO KNOW IF THERE'S A

4     VERIFICATION.

5            **MR. ISAACSON:**  AT PARAGRAPH 66 IS DOCUMENT 322 IN THE

6     CASE, WHICH SAYS --

7            **THE COURT:**  PARAGRAPH...?

8            **MR. ISAACSON:**  66.  AGAIN, IN SEPTEMBER 2006, APPLE

9     RELEASED --

10           **THE COURT:**  HOLD ON.  HOLD ON.  I'M NOT FOLLOWING

11    YOU, MR. ISAACSON.

12        TELL ME WHAT YOU'RE REFERENCING AGAIN.

13           **MR. ISAACSON:**  DOCUMENT 322, PAGE 14 OF 29 ACCORDING

14    TO THE ECF, AND IT'S TRIAL EXHIBIT 2593.

15        PARAGRAPH 66, AGAIN, IN SEPTEMBER 2006, APPLE RELEASED

16    ITUNES 7.0 INTENDED TO PREVENT JHYMN -- -HYMN, WHICH IS ONE OF

17    THE HACKS, AND OTHER PROGRAMS FROM BEING USED TO CREATE

18    INTEROPERABILITY BETWEEN AUDIO DOWNLOADS PURCHASED FROM ITUNES

19    AND NON-APPLE PORTABLE MEDIA PLAYERS.  THAT CONCESSION WOULD

20    BE FATAL TO THEIR CASE, AND THAT'S WHY THEY WITHDREW IT, AND

21    WE SHOULD BE FREE TO CROSS-EXAMINE PLAINTIFFS ON THIS AND TO

22    ADMIT THAT ADMISSION.

23           **THE COURT:**  ANY RESPONSE?

24           **MR. COUGHLIN:**  NO, YOUR HONOR.  I MEAN, WE UNDERSTAND

25    WHAT THEY'RE DOING.  WE -- WE DON'T THINK IT HAS THAT WEIGHT,

1    BUT -- IT WAS IN OUR COMPLAINT.

2         **THE COURT:**  NOW, THEN YOU -- YOU HAVE A

3    COUNTER-DESIGNATION AND THE BASIS FOR YOUR COUNTER-DESIGNATION

4    IS THAT THE RESPONSE TO INTERROGATORY NO. 22 IS INCOMPLETE?

5         **MR. COUGHLIN:**  OH, WE THINK THAT --

6         **THE COURT:**  HOW IS THAT?

7         **MR. COUGHLIN:**  WELL, WE THINK THAT THE -- THE

8    INTERROGATORY SHOULD BE READ, YOU KNOW, TOGETHER, AND THAT IF

9    YOU JUST LOOK AT ONE INTERROGATORY AS TO THAT AND WHAT THEY DO

10   WITH THE COMPLAINT, WELL, WE THINK, OF COURSE, IT FOLLOWS THE

11   EARLIER INTERROGATORIES.  IT'S ONE DOCUMENT.

12      I UNDERSTAND THEIR ARGUMENT.  I THINK IT -- I THINK IT

13   SHOULD --

14        **THE COURT:**  SOUNDS LIKE IT'S CROSS- --

15             (SIMULTANEOUS COLLOQUY.)

16        **THE COURT:**  SOUNDS LIKE IT'S GOING TO BE

17   CROSS-EXAMINATION; THAT IS, THAT IT'S GOING TO BE USED IN THE

18   CONTEXT OF SOME KIND OF CROSS-EXAMINATION.

19        **MR. ISAACSON:**  RIGHT.

20        **THE COURT:**  I DON'T KNOW WHY I WOULD -- WELL,

21   ANYHOW --

22        **MR. ISAACSON:**  I DON'T THINK IT GOES TO COMPLETENESS

23   SINCE THE --

24        **THE COURT:**  NO, I DON'T THINK IT GOES TO COMPLETENESS

25   EITHER.

```
 1            MR. ISAACSON:  RIGHT.

 2            THE COURT:  NOT IN THAT CONTEXT, IF THAT'S, IN FACT,

 3     THE WAY THE EVIDENCE COMES IN.

 4            MR. COUGHLIN:  I DON'T KNOW HOW THE EVIDENCE IS GOING

 5     TO COME IN, YOUR HONOR, SO WE COUNTER-DESIGNATED THINGS THAT

 6     WE WOULD PUT IN IF THEY JUST TRIED TO SAY, HEY, THAT WE

 7     WITHDREW SOME ALLEGATION AND TRIED TO LEAVE THE IMPRESSION

 8     THAT THAT -- WE WERE NO LONGER RELYING ON EVERYTHING ELSE THAT

 9     WE HAD SAID IN THOSE INTERROGATORIES, SO WE'LL SEE HOW THEY

10     USE IT, AND THEN WE'LL GO FROM THERE.

11            THE COURT:  ALL RIGHT.

12         ANYTHING ELSE YOU ALL WANT TO SAY WITH RESPECT TO NO. --

13     NO. 9, WHICH IS SLATTERY?  I'LL HAVE TO GO BACK AND REVIEW IT

14     NOW.

15         I'VE ALREADY HEARD SOME ARGUMENT.  I'M NOT REALLY SAYING

16     IF I NEED MORE, BUT IF THERE'S SOMETHING ELSE YOU THINK YOU

17     NEED TO SAY WITH RESPECT TO HIM AND THEN NO. 36,

18     MR. CHAROENSAK.  CHAROENSAK.

19            MR. ISAACSON:  ALL RIGHT.  WITH RESPECT TO

20     MR. CHAR- -- CHAROENSAK, HE IS STILL A PARTY.  HE TESTIFIED

21     ABOUT HIS UNDERSTANDING OF LOCK AND HIS PURCHASING BEHAVIOR

22     FOR ONLINE MUSIC AND IPODS AND OTHER RELEVANT TOPICS THAT

23     RELATE TO THE -- THE ECONOMICS OF THIS CASE.

24         AND, IN FACT, PLAINTIFFS RELIED ON HIS DEPOSITION

25     TESTIMONY IN OPPOSITION TO THE MOTION IN SUMMARY JUDGMENT AND
```

```
 1   INCLUDED EXCERPTS IN THEIR POWERPOINT THAT THEY SHOWED TO THE

 2   COURT AT THAT SUMMARY JUDGMENT HEARING, SO WE THINK WE'RE

 3   ENTITLED TO SHOW HOW HIS TESTIMONY IS ACTUALLY DAMAGING TO

 4   THEIR CASE IF WE DECIDE TO DO THAT.

 5           THE COURT:  OKAY.

 6       ANY FURTHER RESPONSE?

 7           MR. COUGHLIN:  WE DISAGREE, SO --

 8           THE COURT:  OKAY.  THEN WITH RESPECT TO MELANIE

 9   TUCKER, PLAINTIFFS' COUNTER-DESIGNATION P, I'M NOW ON PAGE 9

10   OF 18 IS MISSING FROM THE SUBMISSION.  I NEED THAT.

11           MR. ISAACSON:  ALL RIGHT.  WE'LL GET THAT TO YOU,

12   YOUR HONOR.

13           THE COURT:  WITH RESPECT TO APPENDIX G -- AND PERHAPS

14   YOU COULD JUST SEND ME THE WHOLE MINI TRANSCRIPT BECAUSE I'M

15   ALSO MISSING THE CONTEXT -- THE OBJECTION IS ON 403 GROUNDS.

16   I READ THE EXCERPT, BUT I NEED TO UNDERSTAND BETTER WHAT'S

17   GOING ON.

18       SO I TAKE IT MS. TUCKER HAD A BRIEF DATING RELATIONSHIP

19   WITH THE PLAINTIFF IN THIS -- I MEAN, WITH THE PLAINTIFF'S

20   LAWYERS IN THIS CASE AND NOW SHE'S A PLAINTIFF AND YOU DON'T

21   WANT THE JURY TO KNOW THAT SHE DATED HIM.

22           MR. COUGHLIN:  JUST THE WAY THE QUESTIONS CAME OUT

23   ABOUT THE DATING, AND, YES, SHE'S NO LONGER DATING HIM.  AND

24   JUST THE WAY -- MOON DOGGIES AND THE WAY THEY WERE GOING AFTER

25   HER, SO I THOUGHT THAT WAS UNFAIRLY PREJUDICIAL.
```

1          **MR. ISAACSON:**  I THINK IF -- IF A WITNESS --

2          **THE COURT:**  IS THERE -- IS THERE SOME -- I DON'T KNOW

3    WHO MOON DOGGIES IS --

4          **MR. COUGHLIN:**  IT'S A BAR.  IT'S A RESTAURANT BAR.

5          **THE COURT:**  KIND OF SOUNDS LIKE A BAR, BUT I DON'T

6    THINK WE HAVE A MOON DOGGIES UP HERE.

7          **MR. COUGHLIN:**  NO, THEY PROBABLY DON'T, SO WE'D HAVE

8    TO EXPLAIN WHAT MOON DOGGIES IS -- GO INTO SOME TESTIMONY

9    ABOUT THIS FORMER BOYFRIEND AND HOW MANY TIMES SHE MET HIM AND

10   SHE WAS WORKING THERE AS A WAITRESS AND -- YOU KNOW, IT'S A

11   SIDE SHOW.

12         **MR. ISAACSON:**  ALL RIGHT.  WE DON'T THINK IT'S A SIDE

13   SHOW BECAUSE IT'S BEARS -- ANY TIME SOMEONE HAS A RELATIONSHIP

14   WITH THE PLAINTIFFS' LAWYERS, IT BEARS ON THE CREDIBILITY OF

15   THEIR TESTIMONY.  BUT SEPARATE -- AND IT SHOULD BE SEPARATELY

16   RELEVANT TO THE COURT AS TO WHETHER THIS PERSON IS QUALIFIED

17   TO REPRESENT THE RESELLERS.

18         **THE COURT:**  DID YOU RAISE THAT ISSUE WITH JUDGE WARE?

19         **MR. ISAACSON:**  I DON'T KNOW THAT OFF THE TOP OF MY

20   HEAD.

21         **MS. SWEENEY:**  THEY DID NOT, YOUR HONOR.

22         **MR. ISAACSON:**  I BELIEVE --

23         **THE COURT:**  WAS SHE DEPOSED BEFORE THAT ISSUE WAS

24   BRIEFED TO JUDGE WARE?

25         **MS. SWEENEY:**  YES, SHE WAS.

```
 1          MR. ISAACSON:  COUNSEL DOESN'T RECALL IT BEING

 2    BROUGHT UP --

 3          THE COURT:  WELL, THAT WAS YOUR OPPORTUNITY.

 4          MR. ISAACSON:  I --

 5          THE COURT:  OKAY.

 6          MR. ISAACSON:  I WOULD --

 7          THE COURT:  GO AHEAD.

 8          MR. ISAACSON:  UNDER THE LAW, YOUR HONOR, TESTIMONY

 9    THAT YOU HEAR AT TRIAL CAN BE A BASIS FOR MOTION FOR

10    DECERTIFICATION.

11          THE COURT:  I UNDERSTAND.

12       AND THEN INCENTIVE FEES.

13       SO WITH RESPECT TO THOSE THREE, THAT IS, THOSE THREE

14    COUNTER-DESIGNATIONS FOR WHICH THERE IS AN OBJECTION, THE

15    OBJECTION'S OVERRULED.  I AGREE.  JURY'S ENTITLED TO KNOW.

16       ALL RIGHT.  MOVING ON TO PLAINTIFFS' DISCOVERY

17    DESIGNATIONS, WITH RESPECT TO STEVE JOBS, THIS IS WHAT I'M

18    WILLING TO DO:  I AM NOT GOING TO GIVE THE INSTRUCTION THAT IS

19    BEING ASKED FOR BY THE DEFENDANTS, BUT I WILL GIVE PART OF IT,

20    SO IT'S GRANTED IN PART AND DENIED IN PART.

21       I WILL ADVISE THE JURY THAT MR. JOBS WAS DEPOSED ON APRIL

22    12TH, 2011, AND AT THE TIME, MR. JOBS WAS ON MEDICAL LEAVE

23    FROM APPLE.  HE IS NOT HERE TO TESTIFY IN PERSON BECAUSE HE

24    HAS PASSED AWAY, PERIOD.  END OF STORY.

25       THE FACT THAT HE DIED OF CANCER IS NOT RELEVANT AND JUST
```

1    IS OVERLY -- JUST SEEKS TO -- FOR MANY PEOPLE TRY TO GET

2    SYMPATHY FROM THE -- FROM THE JURY, SO THAT'S NOT COMING IN.

3        IN ADDITION, I'M NOT GOING TO GIVE IT AS A PREINSTRUCTION

4    IN THIS CASE.  I WILL GIVE IT IMMEDIATELY PRIOR TO THE

5    TESTIMONY BEING PRESENTED TO THE JURY.

6        **MS. DUNN:**  THANK YOU, YOUR HONOR.

7        **THE COURT:**  OKAY.

8        WITH RESPECT TO THE FOLLOWING -- AND, AGAIN, YOU'LL GET A

9    WRITTEN ORDER ON ALL OF THIS, BUT JUST SO THAT YOU CAN START

10   MAKING PLANS.  A, APPLE'S COUNTER-DESIGNATION IS APPROVED.

11       WITH RESPECT TO B, MY QUESTION IS BECAUSE I AM (SIC) NOT

12   BEEN GIVEN EVERYTHING, I DON'T THINK, WILL THE JURY KNOW WHEN

13   DESIGNATION 3 IS READ WHO MR. CUE IS?  IF NOT, THEN APPLE'S

14   COUNTER-DESIGNATION B IS APPROVED.

15       ANY -- ANY SENSE?

16       **MR. COUGHLIN:**  I DON'T THINK THAT THEY WILL KNOW.

17       **THE COURT:**  ALL RIGHT.  SO B IS APPROVED.

18       WITH RESPECT TO C, IT IS NOT.

19       WITH RESPECT TO D, IT IS NOT APPROVED.  THAT IS, YOU CAN

20   DO IT BUT ON YOUR OWN TIME AND ON YOUR OWN -- IT JUST IS NOT

21   GOING TO BE PART OF THE -- PLAINTIFFS DON'T HAVE TO PLAY THAT

22   PORTION AS PART OF THEIR PRESENTATION.

23       **MR. ISAACSON:**  I THINK WE'VE ALREADY REACHED

24   AGREEMENT ON THAT, YOUR HONOR, WITH THE -- WITH THE

25   PLAINTIFFS, THAT THESE WOULD COME IN BUT WOULD COUNT AGAINST

1    OUR TIME.

2         **THE COURT:**  THE QUESTION IS -- THAT'S NOT -- WELL,

3    MAYBE -- MAYBE I DON'T UNDERSTAND HOW THIS HAS BEEN TEED UP.

4    THE QUESTION IS, AS I WAS READING THIS, WHEN -- AND I THOUGHT

5    THIS IS -- WAS PART OF THE REASON FOR THE OBJECTION -- WHEN

6    THE JURY IS PRESENTED WITH HIS VIDEOTAPED DEPOSITION, THEY ARE

7    GOING TO GET A SERIES OF CLIPS WHICH YOU'VE DESIGNATED.  THE

8    QUESTION IS WHAT CLIPS ARE THEY GOING TO SEE AND IN WHAT

9    ORDER.  THAT'S THE WAY I'VE READ IT.

10    I'VE READ THE TRANSCRIPT AND YOUR REQUEST FOR

11    COUNTER-DESIGNATIONS.  AS I DID FOR A AND B, I APPROVED THEM.

12    THAT MEANS THAT PLAINTIFF MUST INCLUDE THOSE WHEN THEY MAKE

13    THEIR PRESENTATION.  AND IN TERMS OF THE TIME, IT CAN GET

14    ASSESSED THE WAY YOU'VE INDICATED.

15    WITH RESPECT TO C AND D, YOU NEED TO DO THOSE ON YOUR OWN.

16    AFTER THEY PLAY THEIR SET, YOU CAN THEN PLAY ANOTHER SET.  AND

17    THAT WOULD INCLUDE C, D, AND ANYTHING ELSE I TELL YOU.  JUST

18    LIKE ON -- JUST LIKE WHEN I HAVE WITNESSES UP THERE WHO ARE

19    LIVE, YOU CAN'T GENERALLY DEMAND THAT THEY ASK YOUR QUESTIONS

20    FOR YOU.

21    BUT THIS IS A LITTLE BIT DIFFERENT BECAUSE IT'S A

22    DEPOSITION, SO I DO REQUIRE JUST FOR CONTEXT PURPOSES SO THE

23    THING DOESN'T HAVE TO BE TOTALLY REPLAYED THAT IN SOME

24    INSTANCES YOU CAN DEMAND THAT THEY PUT THEM IN THEIR PLAYING

25    OF THE DEPOSITION VIDEOTAPE.

```
1        WHEN I SAY NO, THAT MEANS YOU CAN'T.  PUT IT IN ON

2   YOURSELF AFTER THEY PRESENT -- THEY PRESENT THEIR VIDEOTAPE.

3   THAT'S -- THAT'S THE PROCESS THAT I'M GOING THROUGH.

4        UNDERSTAND?

5            MS. DEARBORN:  YES, YOUR HONOR.

6            THE COURT:  OKAY.

7        SO DESIGNATION C PRESENTED BY APPLE.  DESIGNATION D,

8   PRESENTED BY APPLE.  E AND F, THOSE ARE APPROVED.  THOSE SHALL

9   BE PRESENTED BY PLAINTIFF.  G, H, THOSE ARE APPROVED TO BE

10  PRESENTED BY PLAINTIFF.  I, IT'S NOT APPROVED; PRESENTED BY

11  APPLE.  J, THAT IS APPROVED, PRESENTED BY THE PLAINTIFF.  K,

12  IT'S NOT APPROVED.  IT WILL BE PRESENTED BY APPLE.  L AND N --

13  N AS IN NANCY, THOSE ARE NOT APPROVED.  THOSE ARE PRESENTED BY

14  APPLE.

15       NO. M, THE M DESIGNATION WAS NOT PROVIDED TO THE COURT.

16  SO I NEED THAT ONE AS WELL.

17                  (PAUSE IN THE PROCEEDINGS.)

18           MR. ISAACSON:  IF THIS IS A GOOD TIME, YOUR HONOR, WE

19  HAVE THE FLASH DRIVE WITH THE EXHIBITS AND THE PLAINTIFFS HAVE

20  REVIEWED AND OKAYED THIS.

21           THE COURT:  OKAY.  YOU CAN PRESENT THOSE UP.

22       OKAY.  WE'RE GOING TO MOVE INTO MOTIONS IN LIMINE.  DO YOU

23  WANT TO TAKE A -- LET'S GO AHEAD AND TAKE A 15-MINUTE BREAK.

24           MR. ISAACSON:  THANK YOU, YOUR HONOR.

25           MS. SWEENEY:  THANK YOU, YOUR HONOR.
```

```
1              THE COURT:  ALL RIGHT.  THANK YOU.

2          (RECESS TAKEN AT 11:23 A.M.; PROCEEDINGS RESUMED AT 11:38

3      A.M.)

4              THE CLERK:  COURT IS IN SESSION.  COME TO ORDER.

5          PLEASE BE SEATED.

6              THE COURT:  OKAY.  LET'S START WITH PLAINTIFFS'

7      MOTIONS.

8                      (PAUSE IN THE PROCEEDINGS.)

9              THE COURT:  THE FIRST MOTION ACCORDING TO THE

10     PROPOSED ORDER AND THE BRIEFING ASKS THE COURT TO EXCLUDE

11     EVIDENCE OF HACKING.  WELL, I'LL LET YOU GO AHEAD AND START,

12     MR. COUGHLIN.  IT'S TENTATIVELY DENIED.

13         HACKING IS A -- ESPECIALLY FROM WHAT I'VE READ THUS FAR,

14     IS A MATTER OF OPINION.

15             MR. COUGHLIN:  IT CAN BE, YOUR HONOR.

16             THE COURT:  AND THERE ARE EMAILS GALORE THAT TALK

17     ABOUT HACKING.  DEPOSITION TESTIMONY THAT TALKS ABOUT HACKING,

18     THE PARTIES TALK ABOUT HACKING.  AND THE JURY WILL ULTIMATELY

19     DECIDE WHATEVER ACTIONS WERE TAKEN BY THE PARTIES IN THIS CASE

20     AS -- WHERE IT FALLS ON THAT SCALE.

21             MR. COUGHLIN:  I UNDERSTAND, YOUR HONOR.  THE -- THE

22     POINT THAT WE WERE TRYING TO MAKE AND MAYBE WE DID IT

23     INARTFULLY IS THAT THE IDEA THAT SOMEHOW THEY'RE GOING TO NOW

24     BRAND WHAT REALNETWORKS DID WITH HARMONY AS UNLAWFUL RAISES A

25     HOST OF ISSUES.
```

```
 1              THE COURT:  WELL, THAT'S A SEPARATE ISSUE.  AND

 2   THAT'S NOT WHAT I --

 3              MR. COUGHLIN:  THAT'S REALLY WHAT THE -- WHEN WE TALK

 4   ABOUT WHERE THEY WENT WITH IT AND -- AND THE RESPONSE TO THAT

 5   IS THEY SAY THAT WHAT HARMONY DID WAS UNLAWFUL, IN VIOLATION

 6   OF THE DMCA, THE DIGITAL MILLENNIUM ACT.  AND WHAT WE DIDN'T

 7   WANT IS A WHOLE SEPARATE TRIAL, BECAUSE THOSE ARE ENTIRE

 8   TRIALS IN AND OF THEMSELVES, IS A TRIAL ON THE DMCA AND

 9   WHETHER WHAT HARMONY DID THAT VIOLATED THAT.

10       WE THINK THAT'S UNFAIR AND PREJUDICIAL AND SHOULDN'T

11   HAPPEN.  IT WASN'T THE CASE FOR YEARS.  TALK ABOUT THE WAY

12   LITIGATION SHIFTED OR NOT.  THEY ALWAYS SAID WHAT HAPPENED --

13   WHAT HAPPENED TO REALNETWORKS AND HARMONY WAS A SIDE THING

14   THAT HAPPENED BECAUSE THEY WERE TRYING TO KEEP OUT HACKS.

15       THEY CAN CERTAINLY TESTIFY AS TO WHAT THEY SAID AT THE

16   TIME AND WHAT THEY DID.  WHAT THEY ALSO DID, THOUGH, IS THEY

17   WENT OUT AND GOT EXPERT LEGAL OPINIONS ABOUT WHETHER

18   REALNETWORKS' AND HARMONY'S ACTIONS WERE UNLAWFUL.  AND THEY

19   LISTED THOSE OPINIONS ON THEIR PRIVILEGE LOG, AND NOW THEY'VE

20   COME BACK IN AND STARTED TO CLAIM IT'S UNLAWFUL AGAIN.  AND IF

21   THEY'RE GOING TO DO THAT AND THAT'S TEED UP MORE IN OUR JURY

22   INSTRUCTIONS AND WE THINK THEY'VE WAIVED THAT, AND WE SHOULD

23   GET THOSE.

24              THE COURT:  WELL --

25       ALL RIGHT.  GO AHEAD AND RESPOND, MS. DUNN, RIGHT?
```

1          **MS. DUNN:**  YES, THANK YOU.

2      YOUR HONOR IS CORRECT THAT THESE ARE TWO SEPARATE

3   CONVERSATIONS.  DO YOU WANT US TO STATE FOR THE RECORD OUR

4   OPPOSITION TO THE HACKING MOTION?

5          **THE COURT:**  WELL, THAT'S -- LET ME ASK THIS QUESTION,

6   MR. COUGHLIN, WITHOUT WAIVING YOUR RIGHT TO ARGUE THE ISSUES

7   WHICH WERE TEED UP IN THE CONTEXT OF THE JURY INSTRUCTIONS

8   WITH RESPECT TO THE NOTION THAT THERE SHOULD BE EVIDENCE ABOUT

9   WHETHER OR NOT THOSE EFFORTS WERE LEGAL VERSUS NOT LEGAL, IS

10  THE MOTION THAT WAS REALLY WRITTEN DIFFERENTLY AND OPPOSED

11  DIFFERENTLY ON THE TERM "HACKING" ITSELF -- IS THAT WITHDRAWN

12  AT THIS POINT?

13         **MR. COUGHLIN:**  TO THE EXTENT -- WHAT -- WHAT IT WAS

14  WRITTEN -- HOW IT WAS WRITTEN WAS THAT HACKING WHEN IT'S

15  COUPLED WITH ILLEGAL HACKING -- IF YOU LOOK AT OUR -- ON -- I

16  GUESS IT'S -- THE EF (SIC) IS PAGE 11 OF OUR MOTION IN LIMINE,

17  PAGE 4 OF THE DOCUMENT, THE FIRST THING WE TALK ABOUT IS

18  WHETHER THEY'RE GOING TO INSINUATE WHETHER IT'S ILLEGAL OR

19  NOT.  AND WE THINK THAT IS WRONG.

20     THEY RESPOND TO THAT MOTION AND SAY THAT THEY INTEND --

21  THEY INTEND TO ARGUE THAT, IN FACT, IT WAS ILLEGAL AND DID

22  VIOLATE THE DMCA.

23         **THE COURT:**  ALL RIGHT.  WELL, THEN --

24         **MR. COUGHLIN:**  THAT'S THE WAY THAT -- THAT'S THE WAY

25  THAT WE WENT ABOUT IT, AND THAT'S THE WAY THEY RESPONDED.  AND

1    THEY -- AND THEY ARGUE THAT IT WAS UNLAWFUL AND IN VIOLATION

2    OF THE ACT.

3         AND THEN THEY GO ON TO MAKE THE ARGUMENT THAT IF IT WAS

4    UNLAWFUL, THEN EVEN IF THEY UNDERTOOK ACTIVITY THAT WOULD BE

5    CONSIDERED AN ANTITRUST VIOLATION, IN THAT CONTEXT, IT IS NOT

6    AN ANTITRUST VIOLATION BECAUSE YOU CAN TAKE ACTION TO STOP AN

7    UNLAWFUL ACTIVITY AND THERE'S NO ANTITRUST IMPACT.

8              **THE COURT:**  OKAY.  WELL, LET'S FOCUS THE -- TO THE

9    EXTENT THAT THIS MOTION REQUESTS THAT THE COURT EXCLUDE THE

10   TERM "HACKING," THAT MOTION IS DENIED.

11             **MR. COUGHLIN:**  UNDERSTOOD.

12             **THE COURT:**  LET'S GO AHEAD THEN AND HAVE ARGUMENT ON

13   THE MORE NARROW ISSUE ABOUT WHETHER AT THIS JUNCTURE, ISSUES

14   RELATING -- LITIGATING AT TRIAL WHETHER OR NOT THE ACTIONS BY

15   REALNETWORKS WAS, IN FACT, LEGAL VERSUS NON-LEGAL CAN BE

16   LITIGATED HERE.  REALNETWORKS IS NOT A PARTY TO THIS CASE.

17   AND WITH RESPECT TO THAT ISSUE, IT WOULD BE TENTATIVELY

18   GRANTED.

19        BUT GO AHEAD.  YOU CAN ARGUE.

20             **MS. DUNN:**  YOUR HONOR, WELL, THE FIRST THING I WOULD

21   SAY IS THAT PLAINTIFFS THEMSELVES WILL LIKELY INTRODUCE AN

22   EMAIL THAT TALKS ABOUT THE LEGALITY OF REALNETWORKSS' BEHAVIOR

23   UNDER THE DMCA, THE VERY THING THAT THEY'RE ARGUING SHOULD BE

24   EXCLUDED.

25        THE STATEMENT ITSELF IS EXHIBIT 2146, AND IT'S THE

STATEMENT THAT WAS PUT OUT AFTER APPLE REALIZED WHAT

REALNETWORKS WAS DOING.  AND THE STATEMENT ALSO USES THE TERM

"HACKING," SAYS THAT REAL HAS ADOPTED THE TACTICS AND ETHICS

OF A HACKER.  AND THEN GOES ON TO SAY THAT THEY WOULD BE

LOOKING INTO THE LEGALITY UNDER THE DMCA.

SO THIS IS GOING TO BE RAISED IN ANY EVENT IN EXHIBITS

THAT PLAINTIFFS HAVE RELIED ON THUS FAR IN THIS LITIGATION

AND, AS WE UNDERSTAND IT, PLANS TO RELY ON HERE.

SO MORE RELEVANTLY TO THE LEGAL POINT, ONE KEY ISSUE FOR

THE JURY TO DETERMINE WILL BE WHETHER THIS WAS CONSIDERED

LEGITIMATE BUSINESS CONDUCT UNDER THE ANTITRUST LAWS.  AND THE

EVIDENCE WILL SHOW THAT REAL DID ACT ILLEGALLY, THAT IT

DECODED FAIRPLAY, THAT --

**THE COURT:**  DO I HAVE YOUR RULE 26 DISCLOSURES?  WAS

THIS IDENTIFIED AS A POTENTIAL ISSUE AND LITIGATED THROUGHOUT

THE CON- -- THROUGHOUT THIS CASE?

**MR. COUGHLIN:**  NEVER.

THE SUGGESTION FROM THE PLAINTIFFS IS IT WAS NEVER

LITIGATED.  ARE THEY MISREPRESENTING THAT --

**MS. DUNN:**  I BELIEVE THAT'S NOT FULLY THE CASE.  ALSO

JONES DAY'S COUNSEL IS HERE, AND HE CAN CORRECT ME IF I'M

WRONG.  BUT MY UNDERSTANDING THAT DOCUMENTS RELEVANT TO THIS

ISSUE WERE DISCLOSED TO THE PLAINTIFFS AND DISCUSSED.  THESE

ISSUES WERE BRIEFED AT SUMMARY JUDGMENT BY BOTH SIDES.  NO

WAIVER ARGUMENT WAS EVER MADE.  AND THAT IT WOULD BE PROPER.

 1          THE OTHER SUGGESTION I WOULD MAKE TO YOUR HONOR IS THAT

 2     SINCE YOU'VE HAD ALREADY DENIED THE MOTION TO RESERVE ON THE

 3     QUESTION OF THE JURY INSTRUCTION TO SEE HOW THE EVIDENCE COMES

 4     IN.

 5          WE BELIEVE IT WILL COME IN TO MAKE CLEAR THAT THERE WAS

 6     ILLEGAL BEHAVIOR ON THE PART OF REAL.  WE ALSO BELIEVE IT

 7     WOULD BE LEGALLY RELEVANT TO WHETHER OR NOT THERE WAS

 8     ANTI-COMPETITIVE BEHAVIOR ON APPLE'S PART GIVEN THE --

 9          **THE COURT:**  I'M NOT GOING TO RESERVE YET.

10          **MS. DUNN:**  OKAY.

11          **THE COURT:**  AND -- AND THAT IS BECAUSE THE OTHER

12     QUESTION I HAD WITH RESPECT TO THE JURY INSTRUCTIONS WHICH

13     WERE SUBMITTED BY APPLE IS WHO HAS THE BURDEN ON THIS ISSUE?

14          LET'S ASSUME FOR PURPOSES OF ARGUMENT THAT YOU'RE RIGHT.

15     YOU'VE NEVER INDICATED IN THOSE INSTRUCTIONS THAT YOU ACTUALLY

16     CARRY A BURDEN.  AND IF YOU CARRY A BURDEN, THEN THE QUESTION

17     IS, WAS IT RAISED AS AN AFFIRMATIVE DEFENSE.

18          **MS. DUNN:**  YOUR HONOR --

19          **THE COURT:**  AND THE SUGGESTION FROM THE PLAINTIFF IS

20     THAT IT WASN'T.

21          **MS. DUNN:**  OUR READING OF THE CASE LAW IS THAT WE

22     WOULD HAVE THE BURDEN TO -- THE BURDEN OF PRODUCTION OF A

23     LEGITIMATE BUSINESS JUSTIFICATION BUT THAT THEY WOULD HAVE THE

24     BURDEN OF PERSUASION ON THE FACT THAT IT WAS NOT A LEGITIMATE

25     BUSINESS JUSTIFICATION.

```
 1            THE COURT:  SO WHY DIDN'T YOU GIVE ME AN INSTRUCTION
 2   WITH RESPECT TO THE VARIOUS BURDENS AND THE AUTHORITY FOR
 3   THAT?
 4            MS. DUNN:  SO THERE IS AN INSTRUCTION ABOUT BURDENS.
 5   THERE ARE ACTUALLY OF COUPLE OF THEM.  AND WE CAME PREPARED TO
 6   DISCUSS THEM WITH YOUR HONOR TODAY.
 7            THE COURT:  OKAY.  WELL, I'D LIKE TO HAVE SPECIFIC
 8   REFERENCES TO SPECIFIC INSTANCES WHERE THIS WAS, IN FACT,
 9   PREVIOUSLY LITIGATED IN THIS CASE.  IT APPEARS TO BE IN
10   DISPUTE.
11            MS. DUNN:  YOUR HONOR, WE WILL GET THAT FOR YOU.
12            MR. COUGHLIN:  AND, YOUR HONOR, WHEN WE ASKED --
13   BECAUSE THERE WERE SOME INDICATION EARLY ON THERE (SIC) MIGHT
14   RAISE THIS ISSUE, THEIR DISCOVERY RESPONSES ON THIS ISSUE WAS
15   THAT THIS ISSUE WAS NOT RELEVANT, AND THEY REFUSED TO PRODUCE
16   DOCUMENTS.
17            THE COURT:  OKAY.  WELL, I WILL THEN --
18            MS. DUNN:  YOUR HONOR, PLAINTIFFS ARE REFERRING TO
19   ONE COMMENT MADE BY COUNSEL AT AN ORAL ARGUMENT, WHICH IS
20   BELIED BY ACTUAL DOCUMENT PRODUCTION, ACTUAL BRIEFING, AND
21   PAPER EVIDENCE SUBMITTED BY THE PARTIES.
22            MR. KIERNAN:  ACTUALLY, YOUR HONOR, HE'S REFERRING TO
23   RESPONSES TO THE FIRST DOCUMENT REQUEST --
24            THE COURT:  MR. KIERNAN?
25            MR. KIERNAN:  PARDON ME.
```

 1           **THE COURT:**  DO NOT TALK FROM OVER THERE.  MY COURT

 2    REPORTER CANNOT HEAR YOU.

 3           **MR. KIERNAN:**  I APOLOGIZE.

 4       COUNSEL IS REFERRING TO APPLE'S RESPONSE TO THE FIRST

 5    DOCUMENT REQUEST IN THE CASE.  AFTER THAT, THE PARTIES MET,

 6    CONFERRED BECAUSE THAT DOCUMENT REQUEST ASKED FOR ALL

 7    DOCUMENTS RELATED TO THE DMCA, UNBOUNDED, THAT APPLE HAD IN

 8    ITS POSSESSION.  WE LATER MET AND CONFERRED.  I PERSONALLY MET

 9    AND CONFERRED WITH TOM MERRICK, COUNSEL FOR PLAINTIFFS.  HE

10    THEN ASKED FOR DOCUMENTS -- TECHNICAL DOCUMENTS RELATED TO 4.7

11    AND OTHER APPLE UPDATES TO FAIRPLAY AND ITUNES TO ADDRESS

12    APPLE'S ARGUMENTS THAT REALNETWORKS AND OTHER HACKERS HAD

13    VIOLATED THE DMCA.

14       WE PRODUCED THOSE DOCUMENTS.  WE PRODUCED OTHER DOCUMENTS

15    RELATED TO THE DMCA.  BOTH MS. BERNAY AND MS. SWEENEY AT

16    DEPOSITION ASKED EDDIE CUE, JEFF ROBBIN, AND STEVE JOBS ABOUT

17    WHETHER REALNETWORKS HAD VIOLATED THE DMCA.  THEY SOUGHT

18    DISCOVERY.  WE DID NOT OBJECT TO THOSE QUESTIONS.  WE ALLOWED

19    THEM, EXCEPT TO THE EXTENT THEY CALLED FOR PRIVILEGE AND

20    INFORMATION.

21       IN OUR AFFIRMATIVE -- PARDON ME -- OUR AFFIRMATIVE DEFENSE

22    TO THE AMENDED COMPLAINT, WHICH I BELIEVE IS DOCKET 390 --

23    390, WE RAISE A DMCA IN RESPONSE TO ILLEGAL HACKERS STRIPPING

24    FAIRPLAY.  AND WE'VE ALLEGED ALL ALONG THAT REALNETWORKS IS A

25    HACKER PROGRAM THAT HAS STRIPPED FAIRPLAY.

 1         FINALLY, YOUR HONOR, WE PRODUCED AN EXPERT REPORT THAT WE

 2    PRODUCED TO PLAINTIFFS.  THEY DEPOSED DR. KELLY.  HE OPINES

 3    THAT REALNETWORKS HARMONY STRIPPED DRM, STRIPS THE FAIRPLAY

 4    FROM THE CONTENT, MAKING IT AVAILABLE TO OTHER -- TO OTHERS

 5    FOR -- THAT COULD BE USED FOR PIRACY.  THEY DEPOSED HIM ON

 6    THAT ISSUE.  AND THEN THEY PROVIDED THEIR OWN EXPERT,

 7    DR. MARTIN, THAT -- WHO OPINES THAT REALNETWORKS DID NOT DO

 8    THAT.

 9         ALL OF THAT EVIDENCE, ALL OF THAT ARGUMENT, GOES TO

10    WHETHER OR NOT REALNETWORKS VIOLATED THE DMCA.

11         **MR. COUGHLIN:**  YOUR HONOR, IT WAS NEVER RAISED AS A

12    REAL AFFIRMATIVE DEFENSE THAT WE WOULD HAVE TO LITIGATE THE

13    ISSUE OF WHETHER THERE WAS A VIOLATION OF THE DMCA.  THERE ARE

14    CASES OUT THERE WHERE ENTIRE CASES ARE WHETHER SOMETHING

15    VIOLATES THE DMCA OR NOT.

16         IN FACT, REALNETWORKS, IN A CASE THEY CITED, WAS INVOLVED

17    IN ONE OF THOSE IN A DIFFERENT ISSUE HAVING TO DO WITH DVD'S.

18    THIS ISSUE SHOULD HAVE BEEN RAISED AND LITIGATED IN THE

19    CONTEXT OF THIS CASE IN THE LAST SEVERAL YEARS, NOT BROUGHT UP

20    IN THE LAST MINUTE IN THE PRETRIAL STATEMENTS HERE.  IT WAS

21    NEVER FRAMED THAT THEY WERE GOING TO LITIGATE.  AND -- NOR IS

22    THERE ANY EXPERT OPINION ON IT ACTUALLY BEING A VIOLATION OF

23    THE DMCA.  HE TALKS ABOUT THE EXPERTS' DISCUSSION ABOUT WHAT

24    REALNETWORKSS' HARMONY ACTUALLY DID, NOT WHETHER IT WAS A

25    VIOLATION OF THE DMCA.

```
 1        AND SO IT'S BEEN CERTAINLY RAISED IN THESE PAPERS JUST AS
 2   WE GET READY FOR TRIAL, BUT IT WAS NOT THE ISSUE FOR YEARS.
 3   AND IF IT IS THE ISSUE, THEN WE WOULD LIKE THE DISCOVERY.  WE
 4   WOULD CERTAINLY LIKE THE LEGAL OPINIONS THAT THEY RECEIVED AT
 5   THE TIME AND WHEN THEY QUIT CALLING -- CALLING OUT
 6   REALNETWORKS AND HARMONY FOR A VIOLATION OF THE DMCA BECAUSE
 7   THEY'VE GOT SEVERAL OPINIONS LISTED ON THEIR PRIVILEGE LOG FOR
 8   THAT.
 9        MR. KIERNAN:  AND, YOUR HONOR, IF I MAY ADD, THEY'RE
10   LISTED ON THE PRIVILEGE LOG BECAUSE PLAINTIFFS SOUGHT
11   DISCOVERY, AND WE PROVIDED DISCOVERY TO THEM ON THE DMCA.
12   THAT IS THE REASON WHY PLAINTIFFS' COUNSEL ASKED OUR WITNESSES
13   ABOUT DMCA VIOLATIONS AND HOW REALNETWORKS VIOLATED THE DMCA,
14   SO TO -- TO ARGUE THAT PLAINTIFFS DID NOT SEEK THAT DISCOVERY
15   IS JUST WRONG.
16        MS. DUNN:  AND, YOUR HONOR, I'D LIKE TO RESPOND TO
17   THE POINT THAT THIS COULD HAVE BEEN RAISED AT THE BEGINNING OF
18   THE CASE.  YOU KNOW, RESPECTFULLY, THE THEORY OF THE CASE HAS
19   CHANGED QUITE A BIT.  AND NOW AND MORE RECENTLY, IT IS
20   NECESSARY TO DISCUSS THE LEGAL CONCEPT OF LEGITIMATE BUSINESS
21   JUSTIFICATION, AND THAT'S WHAT THIS GOES TO.
22        WHEN THE PLAINTIFFS ORIGINALLY BROUGHT THIS CASE
23   ORIGINALLY AS A TYING CASE AND THEN LATER, IT MUTATED, THIS
24   WOULD NOT HAVE -- HAVE BEEN AS RELEVANT.
25        NOW, IT'S OBVIOUSLY RELEVANT, AND IT HAS BEEN AN ISSUE IN
```

1    THE CASE SINCE IT BECAME RELEVANT.

2        I'D ALSO POINT YOUR HONOR TO A CASE FROM THE SEVENTH

3    CIRCUIT WRITTEN BY JUSTICE STEVENS WHEN HE WAS A JUSTICE

4    THERE.  IT'S CALLED *ALBERTO-CULVER CO.* AND IT'S CITED, DOCKET

5    NO. 836, PAGES 9 TO 10 WHERE IT SAYS THAT A GOOD-FAITH BELIEF

6    IN ILLEGALITY IS A PRO-COMPETITIVE JUSTIFICATION.

7                    (PAUSE IN THE PROCEEDINGS.)

8        **THE COURT:**  WHAT I AM GOING TO NEED IS -- ARE THE

9    DOCUMENTS THAT SUBSTANTIATE THE CLAIMS BEING MADE BY APPLE.  I

10   WOULD LIKE IT IN THE FOLLOWING FORMAT:  I WOULD LIKE SOME KIND

11   OF INDEX THAT IDENTIFIES EACH OF THE DOCUMENTS THAT HAVE BEEN

12   REFERENCED AND/OR RELIED UPON BY APPLE THAT THEY -- IT

13   INDICATES THAT THIS HAS, IN FACT, BEEN LITIGATED.

14       THE INDEX SHOULD PROCEED TO THE ACTUAL DOCUMENTS.  THE

15   DOCUMENTS SHOULD BE HIGHLIGHTED SO THAT I'M NOT SEARCHING FOR

16   THIS INFORMATION.  AND COPIES THAT OBVIOUSLY TO THE PLAINTIFF.

17       ONCE I HAVE A CHANCE TO REVIEW IT, WELL -- AND ACTUALLY IF

18   YOU CAN INTERLINEATE WHEN -- BECAUSE IT SEEMS TO BE AN

19   ISSUE -- A REPEATED ISSUE HERE -- WHEN APPLE CLAIMS THAT THE

20   MUTATION IN THIS CASE OCCURRED AND HOW THINGS CHANGED, THAT'S

21   IMPORTANT AS WELL.

22       SO TILL I HAVE SOME MORE INFORMATION, I'M NOT GOING TO BE

23   ABLE TO RESOLVE THE ISSUE FOR YOU.

24       ALL RIGHT.  LET'S MOVE ON.

25       AND BY THE WAY, AT THE END OF THE DAY, WE'LL GO THROUGH

1   EVERYTHING THAT'S ON YOUR TO-DO LIST AND DEPENDING ON THE

2   NATURE AND QUANTITY, WE'LL GET SOME DEADLINES AFFILIATED WITH

3   IT.

4        WITH RESPECT TO MOTION IN LIMINE NO. 2, THIS IS CUMULATIVE

5   EXPERT TESTIMONY, BUT THERE IS NO SPECIFIC REQUEST THAT --

6        WELL, HOLD ON.  GO AHEAD.  YOU CAN ARGUE.

7        **MS. SWEENEY:**  THANK YOU, YOUR HONOR.  SINCE

8   PLAINTIFFS FILED THE MOTION, WE HAVE RECEIVED FROM APPLE A

9   LITTLE MORE OF AN EXPLANATION OF HOW THEY INTEND TO USE THEIR

10  EXPERTS, BOTH IN THEIR OPPOSITION AND IN THEIR EXPERT WITNESS

11  DISCLOSURE.  AND SO THE -- THE FIRST PART OF OUR MOTION WAS

12  ADDRESSED TO THE EXTENSIVE OVERLAP BETWEEN THE OPINIONS OF

13  PROFESSORS MURPHY AND TOPEL.

14       IN THEIR EXPERT WITNESS DISCLOSURE THAT WAS FILED AS PART

15  OF THIS TRIAL READINESS BINDER, APPLE SAID THAT PROFESSOR

16  TOPEL WILL BE LARGELY RESPONSIBLE FOR DAMAGES ISSUES, AND

17  PROFESSOR MURPHY SHALL BE RESPONSIBLE FOR MATTERS PERTAINING

18  TO DEFINITION OF THE RELEVANT MARKETS, ET CETERA.

19       THERE STILL IS ONE VERY SIGNIFICANT AND IMPORTANT ISSUE

20  THAT OVERLAPS, THOUGH, AND THAT IS CAUSATION OR LACK OF IT.

21  APPLE SAYS THAT BOTH OF ITS ECONOMISTS WHO WORK TOGETHER ON

22  EVERY ASPECT OF THEIR REPORTS WILL BOTH GIVE TESTIMONY ON THAT

23  TOPIC, AND THAT IS CUMULATIVE AND UNNECESSARILY TIME

24  CONSUMING, PLUS IT'S VERY PREJUDICIAL.

25       WE CITED SOME CASES IN OUR MOTION, YOUR HONOR, THAT

1   DEMONSTRATE THAT COURTS HAVE FOUND THAT JURIES SOMETIMES COUNT

2   HEADS WHEN IT COMES TO EXPERTS, AND THIS WOULD BE AN UNFAIR

3   WAY FOR APPLE TO GAIN THE ADVANTAGE ON THE IMPORTANT CAUSATION

4   ISSUE BY SIMPLY HAVING TWO DISTINGUISHED PROFESSORS TALKING

5   ABOUT WHAT THEY CALL THE LACK OF CAUSATION.

6       AND THEN THE OTHER AREA OF OVERLAP IS BETWEEN THE --

7           **THE COURT:**  SO WITH RESPECT TO CAUSATION, WHAT

8   PARAGRAPHS SPECIFICALLY IN THE REPORT ARE YOU JUXTAPOSING?

9           **MS. SWEENEY:**  THAT'S A VERY GOOD QUESTION, YOUR

10  HONOR, AND I -- I DON'T HAVE THE EXACT CITATIONS TO THOSE

11  PARAGRAPHS, BUT I CAN GET YOU THOSE.

12      IT'S -- IT'S LITERALLY MANY PARAGRAPHS AND MANY PAGES OF

13  BOTH -- OF PROFESSOR TOPEL'S AND PROFESSOR MURPHY'S REPORTS,

14  AS WELL AS THEIR JOINT REPORT.

15          **THE COURT:**  OKAY.  THE SECOND ISSUE?

16          **MS. SWEENEY:**  THE SECOND ISSUE IS OVERLAP BETWEEN

17  WHAT I NOW GATHER WILL BE THE TESTIMONY OF PROFESSOR MURPHY,

18  THE ECONOMIST, AND THEIR TECHNOLOGY EXPERT, PROFESSOR KELLY.

19  AND THIS IS AS TO THE -- THE BENEFITS OR THE SO-CALLED

20  BENEFITS OF THE INTEGRATED PLATFORM APPROACH OR WHAT THEY

21  SOMETIMES REFER TO AS "THE WALLED GARDEN."

22      NOW, TO THE EXTENT THOSE TWO EXPERTS ACTUALLY DO GIVE

23  TESTIMONY THAT'S COMING FROM THEIR DIFFERENT PERSPECTIVES, ONE

24  A COMPUTER SCIENTIST AND ONE AN ECONOMIST, PERHAPS THAT'S NOT

25  AN -- OVERLY DUPLICATIVE.

```
 1          ON THE OTHER HAND, WE HAVE SEEN WHERE PROFESSOR MURPHY

 2     TENDS TO SLIDE INTO JUST SIMPLY REPEATING WHAT HIS EXPERT --

 3     WHAT HIS FELLOW EXPERT PROFESSOR KELLY HAS SAID ABOUT THE

 4     TECHNOLOGICAL BENEFITS OF AN INTEGRATED SYSTEM, AND WE DO NOT

 5     THINK THAT PROFESSOR MURPHY IS -- IS QUALIFIED TO GIVE THAT

 6     TESTIMONY, AND BESIDES, IT'S CUMULATIVE AND PREJUDICIAL.

 7          MS. DEARBORN:  YOUR HONOR, TAKING THE SECOND ISSUE

 8     FIRST, WHICH IS THE ALLEGED OVERLAP BETWEEN DR. KELLY, OUR

 9     TECHNICAL EXPERT, AND PROFESSOR MURPHY, OUR ECONOMIC EXPERT,

10     FIRST OFF, IT'S COMMON FOR EXPERTS TO RELY ON TESTIMONY FROM

11     OTHER EXPERTS IN WAYS IN WHICH THOSE -- THAT TESTIMONY WILL BE

12     COMPLEMENTARY AND -- AND ASSIST THE JURY IN UNDERSTANDING

13     THAT --

14          THE COURT:  IS THE INTENT, THEN, THAT MURPHY WILL

15     TESTIFY AFTER KELLY?

16          MS. DEARBORN:  I NEED TO CHECK ON THAT, YOUR HONOR,

17     BUT --

18          THE COURT:  MR. ISAACSON?

19               (SIMULTANEOUS COLLOQUY.)

20          MS. DEARBORN:  -- MY UNDERSTANDING --

21          THE COURT:  HE'S NODDING HIS HEAD YES BECAUSE WHEN

22     EXPERTS RELY EITHER ON OTHER EXPERTS OR ON PERCIPIENT

23     WITNESSES, UNTIL THOSE FACTS ARE ACTUALLY IN EVIDENCE, THE

24     OPINION CANNOT COME IN.

25          MS. DEARBORN:  UNDERSTOOD, YOUR HONOR.  ABSOLUTELY.
```

1      BUT PROFESSOR KELLY WILL TESTIFY ABOUT WHY APPLE'S

2  INTEGRATED APPROACH IS BETTER FROM THE POINT OF VIEW OF A

3  COMPUTER SCIENTIST IN TERMS OF INCREASED STABILITY, ENGINEERS

4  AND DEVELOPERS HAVE AN EASIER TASK MAINTAINING THE SYSTEM.

5      PROFESSOR MURPHY WILL TESTIFY ABOUT THE COMPETITIVE

6  BENEFITS OF AN INTEGRATED APPROACH FROM THE POINT OF VIEW OF

7  AN ECONOMIST.  EASE OF USE IS AN ATTRACTIVE FEATURE TO

8  CONSUMERS.  AND INTEGRATED MODELS COMPETE WITH ONES THAT ARE

9  MORE INTEROPERABLE, AND MORE COMPETITION IS GOOD.  IT GIVES

10 CONSUMERS MORE OPTIONS.

11      SO, YOUR HONOR, WE HAVE NO INTENTION OF PRESENTING

12 CUMULATIVE TESTIMONY IN THIS CASE.  THE COURT'S 20-HOUR TIME

13 LIMIT ENSURES THAT WE WILL NOT BE WASTING THIS COURT'S OR THE

14 JURY'S TIME.  THESE TWO EXPERTS ARE OFFERING DIFFERENT

15 OPINIONS BASED UPON DIFFERENT AREAS OF EXPERTISE.  THE ONLY

16 ALLEGED AREA OF OVERLAP IS THAT THEY BOTH TESTIFY THAT APPLE'S

17 INTEGRATED APPROACH IS GOOD IN ONE WAY OR ANOTHER, BUT

18 PLAINTIFFS HAVE CITED NO CASE FOR THE PROPOSITION THAT

19 TESTIMONY FROM EXPERTS IN DIFFERENT --

20      **THE COURT:**  MS. DEARBORN, SLOW DOWN.

21      **MS. DEARBORN:**  I APOLOGIZE.

22      -- WOULD BE NEEDLESSLY CUMULATIVE.

23      ON THE OTHER POINT ON -- REGARDING THE -- REGARDING

24 PROFESSORS MURPHY AND TOPEL, THEY WILL ALSO OFFER

25 NON-CUMULATIVE TESTIMONY.

 1          I THINK THAT THE LACK OF PARAGRAPH CITATIONS IN THIS

 2   MOTION IS ONE OF THE REASONS WHY IT'S REALLY QUITE OVERBROAD.

 3   THEY'RE SEEKING TO EXCLUDE OUR EXPERTS IN THEIR ENTIRETY BASED

 4   ON FIVE CHERRY-PICKED EXAMPLES.  AND THE DIFFERENCES ARE

 5   ACTUALLY APPARENT IN THOSE -- IN THOSE EXAMPLES THEMSELVES.

 6          BUT IN OUR -- IN OUR EXPERT DISCLOSURES, SUCH AS DOCKET

 7   849, AS MS. SWEENEY SAID, WE OUTLINED THE -- THE DIFFERENCES

 8   BETWEEN THESE EXPERTS' TESTIMONIES.  AND, YOUR HONOR, ONE OF

 9   THE -- ONE OF THE ISSUES IN THIS CASE IS -- WILL BE CAUSATION,

10   BUT DR. NOLL SAYS THAT HIS REGRESSION PROVES BOTH LIABILITY

11   AND DAMAGES AND CAUSATION.

12          PROFESSOR TOPEL WILL BE THE PRIMARY WITNESS ADDRESSING THE

13   REGRESSION, WHICH IMPACTS BOTH SIDES OF THIS CASE.  BUT

14   CAUSATION ISSUES WILL PERVADE IN ISSUES MORE THAN JUST THE

15   REGRESSION.

16              THE COURT:  ALL RIGHT.  NO. 3.

17                  (PAUSE IN THE PROCEEDINGS.)

18              THE COURT:  WELL, COUNSEL, THIS IS ONE OF THOSE THAT

19   I THINK IS SO OVERBROAD THAT YOU'RE SEEKING TO GET A RULING

20   ALMOST FROM THE COURT IN A WAY THAT THE OTHER SIDE IS GOING TO

21   TRY ITS CASE AND THE JURY'S GOING TO ULTIMATELY DECIDE THE

22   CASE.

23          YOU WANT A RULING --

24              MR. COUGHLIN:  I THINK I CAN NARROW IT DOWN, YOUR

25   HONOR.

 1              **THE COURT:**  THAT WOULD BE --

 2                   (SIMULTANEOUS COLLOQUY.)

 3              **MR. COUGHLIN:**  I UNDERSTAND THAT ALL THE ASPECTS OF

 4    7.0 AND 7.4 ARE GOING TO BE DISCUSSED, WHETHER IT'S DOWNLOAD

 5    OF MOVIES AND OTHER THINGS.  BUT THE ISSUE -- BUT -- WELL,

 6    WHAT HAS BEEN LITIGATED HERE, WHAT'S AT ISSUE, IS WHETHER

 7    THESE TWO -- THE KEYBAG VERIFICATION CODE, THE KVC, AND THE

 8    DATA BASS -- BASE VERIFICATION CODE, THE DVC -- WHETHER THOSE

 9    ARE PRODUCT IMPROVEMENTS.

10        AND THOSE ARE JUST -- IF I STEP BACK, LET'S TAKE A LOOK AT

11    THE *MICROSOFT/WINDOWS* CASE.  WHEN THEY PUT THE BROWSER INTO

12    THEIR WINDOWS OPERATING SYSTEM, THEY HAD A TRIAL ABOUT WHETHER

13    THAT WAS A ANTITRUST VIOLATION.

14        WELL, THAT WAS ONE ASPECT OF THAT OVERALL PRODUCT.  THEY

15    MADE IMPROVEMENTS TO WINDOWS 98 AS THEY PUT THAT BROWSER INTO

16    IT.  BUT WHAT WAS AT ISSUE WAS WHETHER THAT BROWSER, PUTTING

17    THAT IN, WAS TO EXTEND THE MONOPOLY POWER OF MICROSOFT.

18        THAT'S WHAT'S AT ISSUE HERE, IS PUTTING THESE TWO IN- --

19    INJECTION PREVENTION CODES IN WAS SOMEHOW A VIOLATION OF THE

20    ANTITRUST LAWS IN TRYING TO EXTEND THEIR MONOPOLY.

21        YOU KNOW, WHAT'S NOT AT ISSUE BUT WHAT'S TAKEN INTO

22    ACCOUNT BY THE EXPERTS ARE THE OTHER FEATURES AND HOW THEY

23    IMPACT THE PRICE AND NOT.  AND SO I UNDERSTAND THAT'S GOING TO

24    BE PART OF THE TRIAL, BUT WHAT'S AT ISSUE ARE THESE TWO

25    SPECIFIC FEATURES.

```
 1          THE COURT:  THEN I DON'T UNDERSTAND THE MOTION.  THAT
 2   IS, THEY -- APPLE HAS A RIGHT TO SAY WHAT IT IS THEY DID --
 3          MR. COUGHLIN:  I AGREE, YOUR HONOR.
 4          THE COURT:  -- AND WHY THEY -- WHY THEY THINK THEY
 5   DID IT, AND YOU HAVE A RIGHT TO CHALLENGE THAT.  SO -- SO I
 6   DON'T UNDERSTAND WHAT YOU WANTED ME TO EXCLUDE.
 7          MR. COUGHLIN:  NOTHING AT THE MOMENT, YOUR HONOR.
 8   THE -- WHAT APPEARED TO BE HAPPENING IN THE LAST COUPLE WEEKS
 9   IS THAT THE FOCUS CHANGED AS TO ALL THE THINGS THAT WERE IN
10   THIS 7.0 AND 7.4 INSTEAD OF WHAT HAS BEEN THE FOCUS OF WHAT IS
11   THE ANTITRUST VIOLATION, THE KVC AND DVC.
12      AND SO WE BROUGHT THE MOTION TO SAY, HEY, WE'RE NOT
13   CHALLENGING THE OTHER ASPECTS THAT WERE INCLUDED, YOU KNOW.
14   WE ARE CHALLENGING --
15                  (SIMULTANEOUS COLLOQUY.)
16          MR. COUGHLIN:  -- WHETHER THE 7.4 AND -- 7.0 AND 7.4
17   ARE AN IMPROVEMENT AS A RESULT OF THESE TWO ENCODED SOFTWARE.
18          THE COURT:  SO IS THE MOTION WITHDRAWN?
19          MR. COUGHLIN:  I'LL WITHDRAW THE MOTION.
20          THE COURT:  ALL RIGHT.  NO. 4.
21          MS. DUNN:  YOUR HONOR, TO THE EXTENT ANY ARGUMENT
22   REMAINS ON THESE TWO ASPECTS --
23          THE COURT:  IT'S WITHDRAWN.
24          MS. DUNN:  OKAY.
25          THE COURT:  THE MOTION'S WITHDRAWN.  THERE'S NOTHING
```

1   FOR ME TO RULE ON.  WE'RE MOVING ON.

2            **MS. DUNN:**  THANK YOU, YOUR HONOR.

3            **THE COURT:**  NO. 4.  ALL RIGHT.

4            **MS. SWEENEY:**  I THINK --

5            **THE COURT:**  I HAVE RULES FOR A REASON.  I HAVE RULES

6   FOR A REASON.  WHEN I SAY IN A STANDING ORDER THAT YOU SHALL

7   EXCHANGE MOTIONS BUT NOT FILE THEM, THAT IS AN ATTEMPT TO GET

8   ATTORNEYS WHO ARE ACTING PROFESSIONALLY TO TRY TO RESOLVE

9   THEIR ISSUES WITHOUT THE COURT'S INTERVENTION.

10       ONCE THAT OCCURS, THE GOAL IS THAT WHATEVER IS LEFT

11  STANDING IS THE ONLY THING THAT GETS SUBMITTED TO THE COURT.

12  IT IS NOT AN OPPORTUNITY TO REVISE YOUR MOTIONS.

13       NOW, ATTORNEYS -- AND I HAVE NO REASON TO THINK THAT

14  ANYBODY IN THIS COURTROOM IS UNETHICAL OR UNPROFESSIONAL -- I

15  UNDERSTAND YOU FIND TYPOS, YOU FIND SMALL LITTLE THINGS, YOU

16  WANT TO CHANGE THOSE, IT'S NO BIG DEAL AS LONG AS YOU LET THE

17  OTHER SIDE KNOW.

18       I'M NOT HERE TO, YOU KNOW, AS -- WHEN YOU SEE KIDS PLAYING

19  ON THE SOCCER FIELD AND THE REF SAYS, YOU KNOW, REF, COME ON,

20  LET THEM PLAY.  YEAH, IT WAS A BUNT, BUT COME ON.  YES,

21  TECHNICALLY, IT'S A VIOLATION.  TECHNICALLY, IT'S A FOUL, BUT

22  DO WE REALLY CARE?  NO, WE DON'T REALLY CARE ON THE LITTLE

23  THINGS.

24       IT DOES NOT MEAN THAT YOU GET TO WHOLESALE REVISE YOUR

25  MOTIONS.  NO ONE SAID -- NO ONE ALLOWED YOU TO -- TO GO AND DO

1    A WHOLESALE REVISION.  FOLLOW THE RULE.  PERIOD.

2       YES, MR. COVE?

3          **MR. COVE:**  YEAH, I -- I BELIEVE I WAS SCHEDULED TO

4    ARGUE THIS RATHER THAN MS. GOODMAN --

5          **THE COURT:**  I CAN'T HEAR YOU.

6          **MR. COVE:**  ARE WE -- WE'RE ON -- ON THE DEFENDANT'S

7    MOTION IN LIMINE 4?

8             **THE COURT:**  YES.  ISN'T THAT THE ONE --

9          **MS. DUNN:**  YES, YOUR HONOR.

10         **THE COURT:**  -- WHERE YOU WENT AND YOU REVISED IT AND

11   THEN AT THE 11TH HOUR, I'M OUT OF TOWN, HAVING TOLD YOU GUYS

12   THAT I WAS OUT OF TOWN, BEING INUNDATED WITH MOTIONS ON AN

13   ISSUE THAT I SHOULD HAVE NEVER HAD TO HAVE DEALT WITH.

14         **MR. ISAACSON:**  YOUR HONOR, WE DID THREE THINGS, ALL

15   RIGHT?  THE MOTION THAT WE EXCHANGED INCLUDED THE ARGUMENT

16   THAT WEALTH SHOULD NOT COME IN.  AT THE LAST CONFERENCE -- AND

17   THAT WAS BEFORE THE LAST CONFERENCE.  YOUR COURT SAID, I'D

18   JUST -- I GRANT THAT AS A MATTER OF COURSE, SO WE SENT THEM A

19   REVISION THAT REMOVED OUR ARGUMENTS ABOUT THAT.  OKAY?

20      THE SECOND THING WE DID WAS WE WERE -- WE WERE UNAWARE OF

21   A REPORT OF DR. MARTIN.  WE JUST HADN'T FOUND IT.  AND WE

22   DIDN'T ADD ANY ARGUMENTS.  WE DIDN'T REVISE ANY ARGUMENTS, BUT

23   WE HAD NOT ANNOTATED THE SAME ARGUMENTS WE WERE MAKING TO THE

24   SPECIFIC PARAGRAPHS OF THAT ADDITIONAL REPORT.  THAT WAS OUR

25   ERROR.  WE HADN'T FOUND THE REPORT.

1  BUT OUR EXACT SAME ARGUMENTS APPLIED.  WE WERE JUST

2  INDICATING THE PARAGRAPH NUMBERS OF THAT REPORT THAT WE --

3  THAT WE APPLIED -- THAT WE WERE DOING.  THAT WAS THE ERRATA.

4  EVERYTHING ELSE IN THE ERRATA -- WE WITHDREW SOME

5  OBJECTIONS TO PARAGRAPHS OF THE EXPERT REPORT IN ORDER TO

6  NARROW THE ISSUES.  THAT'S ALL WE DID.

7  **THE COURT:**  I UNDERSTAND.  I SAW THE RED LINE.  AND,

8  IN FACT, I READ THE RED LINE.

9  **MR. ISAACSON:**  AND --

10  **MR. COVE:**  I THINK WE MAY -- PARDON ME, YOUR HONOR.

11  I THINK WE MAY BE TALKING ABOUT TWO DIFFERENT THINGS.

12  **THE CLERK:**  CAN YOU GET TO GET MICS?

13  **MR. COVE:**  I'M SORRY.

14  MR. ISAACSON WAS REFERRING TO THE ERRATA, AND YOU WERE

15  TALKING --

16  **THE COURT:**  AH.  AND IT'S DEFENDANT'S MOTION 4 THAT

17  I'M THINKING ABOUT.  NOT PLAINTIFF'S MOTION 4, BUT -- SAW THE

18  NO. 4, AND IT -- IT IMMEDIATELY CREATED VISIONS OF STANDING ON

19  A CORNER IN NEW YORK CITY TRYING TO DEAL WITH THE FACT THAT

20  YOU GUYS WERE ARGUING OVER THIS.  SO COMMENTS REFLECTED ARE

21  WITH RESPECT TO DEFENDANT'S 4, NOT PLAINTIFFS' 4.

22  NEVERTHELESS, IT DOESN'T ULTIMATELY MATTER; THAT IS, I'VE

23  LOOKED AT IT, I WILL DEAL WITH IT.  BUT I HAVE RULES FOR A

24  REASON.

25  **MR. COVE:**  I --

```
 1            THE COURT:  AND IN THE FUTURE, DON'T DO IT.

 2            MR. COVE:  YOUR HONOR, I -- I APOLOGIZE FOR -- FOR

 3    FILING IT.  I BELIEVED THAT YOUR INTERVENING ORDER THAT CAME

 4    DOWN AFTER WE HAD EXCHANGED WAS A CHANGE IN CIRCUMSTANCES THAT

 5    WOULD -- IT WOULD BE HELPFUL TO NARROW THE SCOPE OF OUR

 6    MOTION, WHICH WE DID.  WE ELIMINATED FIVE OR MORE --

 7            THE COURT:  WELL, APPARENTLY, YOU'RE WRONG BECAUSE --

 8                    (SIMULTANEOUS COLLOQUY.)

 9            MR. COVE:  BUT I APOLOGIZE TO YOUR HONOR, BUT THAT

10    WAS MY THINKING AT THE TIME.

11            THE COURT:  -- CREATED MUCH MORE PAPER.

12       ALL RIGHT.  LET'S MOVE TO PLAINTIFFS' 4.

13            MS. SWEENEY:  I THINK YOUR HONOR HAS ALREADY DENIED

14    THAT ONE.

15            THE COURT:  YES.

16            MS. SWEENEY:  THIS IS THE UNAVAILABLE --

17            THE COURT:  YES.

18            MS. SWEENEY:  -- DECLARANTS.

19            THE COURT:  NO. 4 IS DENIED.

20            MS. SWEENEY:  SHOULD WE MOVE TO --

21            THE COURT:  NO. 5.

22            MS. SWEENEY:  NO. 5, THIS IS PERTAINS TO --

23            THE COURT:  SORRY ABOUT THAT, MS. -- WAS THAT YOUR

24    ONE OPPORTUNITY TO ARGUE?

25            MS. GOODMAN:  YES, YOUR HONOR.
```

1              **THE COURT:**  DO YOU WANT TO ARGUE?  I'LL GIVE YOU TWO

2      MINUTES JUST FOR PRACTICE.

3              **MS. GOODMAN:**  SURE, YOUR HONOR.

4              **THE COURT:**  PROBABLY -- IS THIS YOUR FIRST TIME?

5              **MS. GOODMAN:**  NOT MY FIRST ACTUALLY.

6              **THE COURT:**  ALL RIGHT.  GO AHEAD.  WHAT WERE YOU

7      GOING TO TELL ME?

8              **MS. GOODMAN:**  PLAINTIFFS HAVE NOT MET THEIR HEAVY

9      BURDEN OF PROVING THE ADMISSIBILITY OF THESE FIVE

10     DECLARATIONS.

11         RULE 807 IS TO BE USED ONLY IN TRULY EXCEPTIONAL

12     CIRCUMSTANCES NOT TO ADMIT RUN-OF-THE-MILL HEARSAY.  THE MAJOR

13     PROBLEM WITH THESE DECLARATIONS IS THAT THEY ARE NOT

14     TRUSTWORTHY.  TWO ARE NOT SWORN UNDER THE PENALTY OF PERJURY.

15     AND THREE ARE NOT ON THE BASIS OF PERSONAL KNOWLEDGE.  THE

16     *MUGNO* CASE THAT WE CITE IN OUR OPPOSITION SAYS BASED ON THOSE

17     FACTORS, THESE -- THOSE DECLARATIONS ARE NOT ADMISSIBLE.

18         THE MARKS DECLARATION SAYS NOTHING ABOUT ANY MATERIAL

19     FACTS IN THIS CASE THAT PLAINTIFFS SAY THEY DO, NAMELY THE KVC

20     AND THE DVC.  AND THE MORSE -- THE SAME IS TRUE FOR THE MORSE

21     DECLARATION.

22         THE -- WE -- APPLE HAS NOT HAD THE OPPORTUNITY TO

23     CROSS-EXAMINE THESE FIVE DECLARANTS.  AND THAT, AGAIN, MAKES

24     THESE DECLARATIONS UNTRUSTWORTHY.

25         AND THE ONLY CASE THAT PLAINTIFFS CITE WHERE EVIDENCE

1   COMES IN UNDER RULE 807 IS WIDELY DIFFERENT THAN THE CASE HERE

2   WHERE THERE WAS VIDEOTAPED SWORN TESTIMONY UNDER THE PENALTY

3   OF PERJURY THAT WAS PLAYED TO A JURY AND THAT THE FIVE -- THE

4   WITNESSES WHO WERE -- WHOSE TESTIMONY WAS BEING ADMITTED IN

5   THAT INSTANCE HAD BEEN DEPORTED TO MEXICO.  THIS IS NOT THAT

6   CASE.

7          **THE COURT:**  ALL RIGHT.  THANK YOU.

8          **MS. GOODMAN:**  THANK YOU, YOUR HONOR.

9          **THE COURT:**  NO. 5.

10         **MS. SWEENEY:**  THIS MOTION, YOUR HONOR, PERTAINS TO

11  CLASS CERTIFICATION.

12         **THE COURT:**  I -- AGAIN, I DON'T -- WHAT SPECIFICALLY

13  DO YOU WANT ME TO EXCLUDE?

14         **MS. SWEENEY:**  OKAY.  THAT'S A VERY GOOD QUESTION,

15  YOUR HONOR, AND I HAVE A VERY -- YOUR HONOR'S COMMENTS EARLIER

16  TODAY HAVE -- HAVE HELPED US FRAME THE ISSUE BECAUSE I

17  UNDERSTAND THAT SOME OF THE COMMENTS THAT DEFENSE COUNSEL IS

18  GOING TO MAKE IN QUESTIONS OF THE CLASS REPS ARE GOING TO COME

19  IN.

20      HOWEVER, THERE IS (SIC) SOME KINDS OF TESTIMONY THAT

21  SHOULD NOT BE ELICITED FROM ANY WITNESS.  WHEN WE EXCHANGED

22  POTENTIAL -- WHEN WE EXCHANGED THE -- THE MOTIONS IN LIMINE,

23  ONE OF THEM PERTAINED TO THE PASS-ON DEFENSE.  AND APPLE

24  AGREED THAT THEY WOULD NOT SEEK TO INTRODUCE ANY EVIDENCE OF

25  PASS-ON, SO WE DID NOT FILE THAT MOTION IN LIMINE.

1    IN AN ANTITRUST CASE, OF COURSE, UNDER *HANOVER SHOE*, THE

2    DEFENDANT IS NOT PERMITTED TO RAISE THE PASS-ON DEFENSE IN A

3    DIRECT PURCHASER CASE, WHICH THIS CASE IS.

4    AND WE -- WE KNOW FROM EXPERIENCE IN THE PRIOR BRIEFING IN

5    THIS CASE ON CLASS CERTIFICATION THAT APPLE IS LIKELY TO ARGUE

6    OR LIKELY TO ELICIT TESTIMONY ABOUT THE FACT THAT THE -- THE

7    RESELLERS MAY HAVE EARNED A HIGHER MARGIN OR THEY MAY HAVE

8    PASSED ON THE OVERCHARGE THAT THEY PAID WHEN THEY PURCHASED

9    THE SUPERCOMPETITIVELY PRICED IPODS.

10    SO WE REQUEST AN ORDER BARRING APPLE FROM MAKING THOSE

11    KINDS OF COLLATERAL ATTACKS ON THE CLASS CERTIFICATION ORDER.

12    **MR. ISAACSON:** WE'VE NOT INDICATED ANY INTENTION TO

13    DO THAT. SO -- WE WOULD ONLY CONSIDER DOING IT IF THEY

14    RAISED -- IF THEIR WITNESSES RAISED IT AND OPENED THE DOOR TO

15    THAT. BUT OTHERWISE, WE ACCEPT THAT, AND THAT'S WHY WE --

16    THAT ISSUE ISN'T BRIEFED IN THIS MOTION.

17    **THE COURT:** OKAY. WELL, THEN IT'S DENIED AS

18    PREMATURE AT THIS POINT. IF -- IF IT COMES UP, YOU CAN RAISE

19    IT AGAIN.

20    **MS. SWEENEY:** THANK YOU, YOUR HONOR.

21    **THE COURT:** NO 6.

22    (PAUSE IN THE PROCEEDINGS.)

23    **THE COURT:** OKAY. ARGUMENT?

24    **MR. COUGHLIN:** YES, YOUR HONOR. REALNETWORKS, AS

25    YOUR HONOR NOTED EARLIER, IS NOT A PARTY TO THIS LITIGATION,

1    SO WHETHER REALNETWORKS TOOK ANY ACTION OR WHAT ACTION THEY

2    TOOK LEGALLY WE THINK IS SIMPLY IRRELEVANT.  AND SO AS THIS

3    BECOMES MORE -- SHAPING UP TO BE A CASE ABOUT WHETHER

4    REALNETWORKS VIOLATED THE DMCA OR SOMETHING ELSE, WE THOUGHT

5    THAT WE WOULD MOVE TO -- FOR A MOTION IN LIMINE ELIMINATING

6    ANY OF THAT EVIDENCE.  THAT'S NOT RELEVANT TO THE ISSUES THAT

7    ARE GOING TO BE LITIGATED HERE OF WHETHER REALNETWORKS SHOULD

8    BE IN HERE SUING APPLE OR SHOULD HAVE AT THE TIME.

9            **THE COURT:**  WELL, THIS IS AT LEAST A MOTION THAT'S

10   CLEARLY DEFINED, IS A VERY NARROW MOTION SEEKING TO EXCLUDE

11   VERY SPECIFIC EVIDENCE REGARDING SPECIFICALLY THE FAILURE

12   THAT -- OR THE FACT -- I WON'T SAY "FAILURE" BECAUSE I HAVE --

13   I DON'T HAVE REALNETWORKS IN FRONT OF ME SO I HAVE NO IDEA,

14   BUT THE ALLEGED FACT THAT REALNETWORKS NEVER SUED APPLE.

15       SO HOW IS -- ONE, HOW WOULD IT BE RELEVANT; TWO, DOES IT

16   MATTER?

17           **MS. DUNN:**  YOUR HONOR, OUR RESPONSE IS JUST AS NARROW

18   AS THEIR MOTION, WHICH IS WE WANT TO MAKE CLEAR TO THE JURY

19   THAT REAL IS NOT A PARTY IN THIS CASE AND HAS NOT SUED BECAUSE

20   IT'S AN OBVIOUS QUESTION THAT WILL COME UP IN THE MINDS OF THE

21   JURY, HAS COME UP IN THE MIND OF THE COURT.

22       SO MUCH OF PLAINTIFFS' CASE IS BASED ON THE BEHAVIOR OF

23   REAL AND REAL'S PROGRAM THAT IT WOULD BE NATURAL FOR PEOPLE TO

24   WONDER, WELL, WHERE IS REAL AND TO POTENTIALLY CONCLUDE THAT

25   THERE HAD BEEN A SETTLEMENT WITH APPLE, WHICH, OF COURSE,

1    THERE HAD NOT BEEN, SO --

2         THE COURT:  -- THEY GOT BULLIED.  MAYBE THEY DIDN'T

3    SUE THEM BECAUSE APPLE BULLIED THEM TO NOT SUE THEM, REFUSED

4    TO -- TO DEAL WITH THEM.  I MEAN, WE AREN'T GOING TO LITIGATE

5    THAT.

6         MS. DUNN:  WELL, PRECISELY, YOUR HONOR.

7         THE COURT:  AND SO I WILL -- I AM WILLING TO INFORM

8    THE JURY FOR CLARITY THAT REALNETWORKS IS NOT A PARTY AND

9    NEVER HAS BEEN A PARTY TO THIS CASE.  END OF STORY.

10       THEY SHALL NOT SPECULATE AS TO ANYTHING -- AS TO THE ROLE

11   OF -- AND I'LL ENTERTAIN SPECIFIC INSTRUCTIONS, BUT THEY SHALL

12   NOT SPECULATE AS TO THE RELATIONSHIP BETWEEN REALNETWORKS AND

13   APPLE, PERIOD.

14        MS. DUNN:  THAT'S ALL WE ASK.

15        THE COURT:  ALL RIGHT.  SO IT'S GRANTED IN PART --

16        MR. COUGHLIN:  THANK YOU, YOUR HONOR.

17        THE COURT:  NO. 8 IN MY BINDER.

18        MS. SWEENEY:  NO. 8, YOUR HONOR.

19       SO WE'VE REQUESTED A MOTION IN LIMINE BARRING ARGUMENT OR

20   REFERENCE TO THE FACT THAT PLAINTIFFS, IF THEY WIN, ARE

21   ENTITLED TO TREBLE DAMAGES AND ATTORNEYS' FEES.  APPLE IN

22   RESPONSE HAS SAID, GEE, WE'LL PUT IN A JURY INSTRUCTION TO

23   THAT EFFECT THAT THE JURORS ARE NOT TO CONSIDER --

24        THE COURT:  OKAY.

25       MR. ISAACSON, I NEVER TALK TO JURIES ABOUT TREBLE DAMAGES

1   OR ATTORNEYS' FEES.  THERE'S NO NEED.  AND BY -- I CAN TELL

2   YOU, BY THE TIME THIS TRIAL'S DONE, THE JURY'S QUITE HAPPY TO

3   FOLLOW MY INSTRUCTIONS.  I BRING THEM BAKED GOODS, SO THEY

4   REALLY LIKE ME.

5         **MR. ISAACSON:**  I'M SURE THEY ARE, YOUR HONOR.  THAT'S

6   WHY -- BUT --

7         **THE COURT:**  NO, WE'RE NOT GOING TO DO AN INSTRUCTION.

8         **MR. ISAACSON:**  OKAY.

9         **THE COURT:**  WE'RE NOT GOING TO EVEN TALK ABOUT IT.

10  PERIOD.  MOTION'S GRANTED.

11        ALL RIGHT.  NO. 9.

12        **MS. SWEENEY:**  HERE, YOUR HONOR, WE REQUEST AN ORDER

13  PRECLUDING APPLE FROM ARGUING ABOUT OR ELICITING ANY TESTIMONY

14  ABOUT THE FACT THAT SOME OF THE PLAINTIFFS' CLAIMS IN THIS

15  MATTER HAVE BEEN DISMISSED.  THAT WOULD BE HIGHLY PREJUDICIAL

16  INFORMATION FOR THE JURY TO HEAR THAT PLAINTIFFS HAVE LOST

17  THEIR TYING CLAIM OR WHILE THE EVIDENCE SURROUNDING 4.7 AND

18  THE EVENTS OF 2004 ARE HIGHLY RELEVANT, THE FACT THAT JUDGE

19  WARE DID -- GRANTED SUMMARY JUDGMENT AS TO THAT CLAIM ALSO

20  SHOULD NOT GO BEFORE THE JURY BECAUSE IT WILL LIKELY INFECT

21  THEIR THOUGHTS ABOUT WHETHER 7.0 AND 7.4 ARE ANTICOMPETITIVE.

22        **THE COURT:**  WELL, THIS RELATES TO THE -- ALSO TO THE

23  REQUEST BY APPLE FOR A PROPOSED INSTRUCTION ON THE LAW OF THE

24  CASE.  THE MOTION IS TENTATIVELY GRANTED.

25        I'M NOT INCLINED TO GIVE THE JURY ANY KIND OF INDICATION

1    ABOUT FACTUAL FINDINGS BY A COURT WITH RESPECT TO ISSUES THAT

2    ARE ANCILLARY TO THESE.

3        THE REASON WE ARE HERE TODAY IS TO LITIGATE WHAT JUDGE

4    WARE FOUND HE COULD NOT FIND AS A MATTER OF LAW.  THAT'S WHY

5    WE'RE HERE.  PERIOD.

6        AND WHAT HE FOUND IN ADVANCE IS -- IS NOT RELEVANT AND IT

7    WILL CONFUSE THE JURY.  THAT'S MY TENTATIVE RULING.  YOU CAN

8    RESPOND, MS. DUNN.

9            **MS. DUNN:**  YOUR HONOR, FIRST, I THINK THIS MOTION IS

10   TRYING TO DO TWO THINGS.  AND ONE SPEAKS TO THE EXCLUSION OF

11   ALL EVIDENCE RELATED TO THE RULINGS -- PREVIOUS RULINGS BY

12   JUDGE WARE.  AND ONE SPEAKS TO THE EXCLUSION OF THE PROCEDURAL

13   HISTORY OF THOSE RULINGS ITSELF.

14       SO I'M HAPPY TO SPEAK ABOUT THE FORMER.  I FEEL LIKE YOUR

15   HONOR MAYBE DENIED THAT WHEN YOU CONSIDERED THE UNCHALLENGED

16   ASPECTS MOTION, BUT I JUST WANT TO MAKE SURE THAT WE'VE

17   CLEARED THAT AWAY BECAUSE I'M -- ESSENTIALLY WHAT PLAINTIFFS

18   ARE TRYING TO EXCLUDE IS EVIDENCE RELATED TO THOSE PREVIOUS

19   RULINGS SO THAT WOULD INCLUDE EVIDENCE RELATED TO THE 4.7

20   UPDATE, WHICH OF COURSE IS NECESSARY BOTH TO REFUTE THE NOLL

21   REGRESSION AND TO SHOW WHY 7.0 AND 7.4 ARE PRODUCT

22   IMPROVEMENTS.

23           **THE COURT:**  OKAY.  I DID RESOLVE -- I THINK I DID

24   RESOLVE THOSE ISSUES, SO --

25           **MS. DUNN:**  SO THEN WHAT IT SEEMS LIKE WE'RE LEFT WITH

1    IS THIS QUESTION OF PRIOR RULINGS OF THE COURT.  WE RECOGNIZE

2    IN OUR MOTION THAT THERE'S A DIFFERENCE BETWEEN THE COURT

3    INSTRUCTING ON PROCEDURAL HISTORY AND PRIOR RULINGS WHICH WE

4    AGREE THAT THERE IS SOME CASE LAW THAT THAT'S NOT FAVORED,

5    ALTHOUGH NOTE THAT IN THE NINTH CIRCUIT, THERE IS SOME CASE

6    LAW THAT THAT IS DONE AND EXAMPLES WE CAN POINT TO.

7        AND WE'RE HAPPY TO GIVE THAT UP, REFERENCE TO THE PRECISE

8    RULINGS.  BUT WE DO THINK THAT BECAUSE THE JURY IS GOING TO

9    HEAR EVIDENCE ABOUT 4.7, QUITE A LOT OF IT, BECAUSE PROFESSOR

10   NOLL'S REGRESSION DOESN'T TAKE INTO ACCOUNT 4.7, THAT'S ONE OF

11   THE PROBLEMS WITH IT, THE JURY WILL END UP SEEING A LOT OF

12   DOCUMENTS AND EVIDENCE RELATED TO 4.7 -- IN FACT, THAT'S THE

13   MAJORITY OF PLAINTIFFS' CASE, AND SO --

14        **THE COURT:**  AND WHAT I'M PREPARED TO DO WITH THAT --

15   AND I UNDERSTAND THAT WRINKLE -- IS TO ENTERTAIN AN

16   INSTRUCTION THAT TELLS THE JURY AT THE END OF THE CASE, NOT

17   BEFORE -- THE END OF THE CASE, UNLESS PLAINTIFFS IN THEIR

18   PRESENTATION OF THE EVIDENCE GO ACROSS THE LINE -- AND THERE

19   IS A LINE HERE -- TO SOMEHOW SUGGEST THAT WHAT WAS -- WHAT

20   HAPPENED IN 4.7 WAS NOT WHAT JUDGE WARE HAS ALREADY RULED AND

21   TO INSTRUCT THE JURY THAT WE'RE NOT HERE LITIGATING 4.7.

22   THAT'S NOT AN ISSUE THAT IS BEFORE THEM.  AND SO THAT THEIR

23   SOUL FOCUS IS WHAT THEY VIEW THE EVIDENCE IS AS IT RELATES TO

24   7.0.

25        BUT I AM NOT GOING TO THEN CROSS OVER AND TELL THEM

1    EXPLICITLY WHAT JUDGE WARE RULED WITH RESPECT TO 4.7 BECAUSE I

2    DO THINK IT WILL POTENTIALLY INFECT THEIR VIEW.

3        SO THIS IS -- THIS IS A TRIAL ABOUT 7.0.

4            MS. DUNN:  YOUR HONOR, I WOULD -- SAY A COUPLE

5    THINGS, ONE IS THAT IS THAT LINE-CROSSING ON THE PLAINTIFFS'

6    PART IS INEVITABLE.  ALL OF THE DOCUMENTS IN THIS CASE --

7            THE COURT:  WELL, THEN YOU'LL HAVE PLENTY OF

8    OPPORTUNITIES TO RAISE IT DURING TRIAL, THEN.  I KNOW YOU

9    THINK IT -- WHERE YOU THINK THE LINE IS AND WHERE I THINK THE

10   LINE IS ARE PROBABLY TWO DIFFERENT PLACES.

11           MS. DUNN:  THAT IS POSSIBLE, ALTHOUGH ALL THE

12   EVIDENCE IN THIS CASE, BECAUSE OF THE WAY THE CASE IS

13   DEVELOPED, REALLY IS FROM THE 4.7 TIME PERIOD.  AND I THINK

14   APART FROM THAT AND ADDRESSING YOUR HONOR'S OTHER CONCERN,

15   WHICH I ENTIRELY UNDERSTAND, IN THIS CASE, IT MAY BE

16   APPROPRIATE OR IT IS APPROPRIATE IN OUR VIEW, TO INSTRUCT ON

17   THE LAW OF THE CASE BECAUSE 7.0 HAS AN INCREDIBLE AMOUNT IN

18   COMMON WITH 4.7, AS THE JURY WILL SEE AND AS THE EVIDENCE WILL

19   SHOW.

20           THE COURT:  WELL, BUT NOT ENOUGH -- NOT ENOUGH TO GET

21   YOU SUMMARY JUDGMENT.

22           MS. DUNN:  WELL, WE BELIEVE THAT IS AN ERROR, QUITE

23   OBVIOUSLY.  AND, HOPEFULLY, WE WILL EVENTUALLY PERSUADE YOU AS

24   WELL.  BUT THE PLAINTIFFS ARE RELYING EXTREMELY ON EQUATING

25   4.7 WITH 7.0 TO THEIR BENEFIT TO DEMONSTRATE THAT 7.0 WASN'T

1   LAWFUL.  AND WE BELIEVE THAT WE ARE PREJUDICED AND DIS- --

2   DISADVANTAGED IN THE EXTREME BY NOT HAVING THE LAW OF THE CASE

3   EXPLAINED TO THE JURY.

4       IT'S NOT -- WE ARE NOT REQUESTING YOUR HONOR TO ADVISE

5   THEM ON SOMETHING THAT IS IN DISPUTE.  THIS IS THE LAW OF THE

6   CASE.  IT IS TYPICAL FOR COURTS TO INSTRUCT ON THE LAW OF THE

7   CASE --

8           **THE COURT:**  WELL, IT'S -- IT'S -- YOU KNOW, AGAIN,

9   YOU LIKE TO HAVE IT BOTH WAYS.  THAT IS, IT IS -- YOU LIKE

10  THIS PRIOR RULING AND SO YOU WANT ME TO FOCUS ON THIS PRIOR

11  RULING.  YOU DON'T LIKE OTHER PRIOR RULINGS AND SO WHEN YOU

12  BRING YOUR MOTIONS FOR JUDGMENT NOTWITHSTANDING PRIOR RULINGS,

13  PERHAPS YOU'RE -- YOU KNOW, YOU'LL THINK DIFFERENTLY.  I DON'T

14  KNOW.  OR MAYBE THEY WILL.

15      BUT AT THIS POINT IN TIME, I'M CERTAINLY NOT GOING TO

16  INSTRUCT THE JURY IN ADVANCE.  THE GOOD THING ABOUT HAVING

17  THESE MOTIONS IS IT TEES THESE ISSUES UP, AND SO IF I HAVE TO

18  DO SOMETHING DURING THE COURSE OF THE TRIAL TO CORRECT A

19  MISPERCEPTION, IF THAT IS, IN FACT, WHAT IS HAPPENING, THEN I

20  WILL CORRECT IT.

21      BUT I'M CERTAINLY NOT GOING TO PRECIPITATE IT BY GIVING

22  APPLE A LEG UP, SO TO SPEAK, AND TELLING THEM WHAT HAS

23  HAPPENED IN THIS CASE IN ADVANCE.  I WON'T DO IT.

24          **MS. DUNN:**  YOUR HONOR, LET ME ASK WHETHER YOUR RULING

25  THEN EXTENDS TO ARGUMENT ON OUR PART AS TO 4.7.  SO IF

1   APPLE --

2          **THE COURT:**  WELL, YOU CAN'T ARGUE DURING THE CASE.

3   AND -- AND ALL ATTORNEYS SHOULD BE VERY CAREFUL THAT THEIR --

4   THAT THEIR QUESTIONS TO THE JURY ARE NOT ARGUMENT.  SO I -- I

5   DON'T KNOW WHAT YOU MEAN BY YOUR ARGUMENT GIVEN THAT I

6   INSTRUCT THE JURY ON THE LAW BEFORE ANY ARGUMENT HAPPENS.  AND

7   WHEN LAWYERS TRY TO TESTIFY IN THE CONTEXT OF THEIR

8   QUESTIONINGS, THEY ARE REPRIMANDED.

9          **MS. DUNN:**  I UNDERSTAND, YOUR HONOR.

10         **THE COURT:**  SO I DON'T UNDERSTAND YOUR STATEMENT.

11         **MS. DUNN:**  THAT'S OKAY.  IT'S WITHDRAWN.

12         **THE COURT:**  NOW, WITH RESPECT TO THIS MOTION, TO THE

13  EXTENT TO THAT IT REFLECTS SPECIFICALLY APPLE'S REQUEST TO

14  PREINSTRUCT ON THE LAW OF THE CASE, THAT MOTION IS GRANTED.

15     DOES IT DO ANYTHING MORE THAN THAT?

16         **MS. SWEENEY:**  I DON'T THINK SO, YOUR HONOR, NO.

17         **THE COURT:**  OKAY.  LET'S MOVE TO THE DEFENDANT'S

18  MOTIONS.

19               (PAUSE IN THE PROCEEDINGS.)

20         **THE COURT:**  I'M STILL IN THE BINDER.  LET'S --

21  LET'S -- 1, 2 AND 3 ARE A LITTLE BIT MORE SIGNIFICANT.  LET'S

22  STICK WITH THE BINDER, SO APPLE'S 4.  AND THIS IS THE ISSUE

23  WITH RESPECT TO SUPERCOMPETITIVE PROFITS.  OKAY.

24     FIRST OF ALL, TO BE CLEAR, DOES THIS -- WE WENT THROUGH

25  THE SPECIFIC DOCUMENTS, CERTAINLY, THAT WERE IMPACTED.  AND I

1    STILL NEED INFORMATION FROM THE PLAINTIFFS TO FULLY EVALUATE

2    THAT ISSUE.  AND THOSE ARE TRIAL EXHIBITS 11, 12, 13 AND 14.

3          **MS. SWEENEY:**  AND, YOUR HONOR, WE'LL PROVIDE THOSE

4    CITATIONS AFTER THE BREAK.

5          **THE COURT:**  SO MY QUESTION TO YOU, MR. COVE, IS

6    WHETHER THERE'S SOMETHING BEYOND THAT THAT IS SPECIFIC THAT A

7    MOTION IN LIMINE CAN ACTUALLY ADDRESS?

8          **MR. COVE:**  YES, YOUR HONOR, BECAUSE AS OUR MOTION IS

9    SET OUT, WE SET OUT WHAT THE -- DR. NOLL SAID, WE'RE NOT

10   TRYING TO STRIKE OR EXCLUDE THAT AT -- AT THIS TIME.  WHAT WE

11   WANT TO ENSURE IS THAT THEY DON'T GO BEYOND WHAT -- THE

12   LIMITED ARGUMENT THAT DR. NOLL MADE IN RAISING ISSUES OF

13   PROFITABILITY, CASH ON HAND, EMPLOYEE COMPENSATION, ALL THOSE

14   KIND OF ISSUES.  AND THEY -- THEY PUT SOME DOCUMENTS ON THE

15   EXHIBIT LIST, BUT THEY'RE -- IT'S ALSO VERY POSSIBLE THAT THEY

16   COULD SPRING A QUESTION ON A APPLE WITNESS, WELL, DIDN'T YOU

17   MAKE "X" MILLION DOLLARS OR "X" HUNDREDS OF MILLIONS OF

18   DOLLARS ON THIS PRODUCT OR THAT PRODUCT.

19      SO THAT EVIDENCE COULD COME OUT IN A LOT OF WAYS, AND WE

20   WANT TO ENSURE THAT THAT EVIDENCE COMES OUT ONLY FOR THE

21   LIMITED -- YOU KNOW, THE COURTS ARE CLEAR -- MODERN COURTS ARE

22   CLEAR THAT ANY ANALYSIS OF PROFITABILITY MUST BE TIED TO A

23   STRINGENT ECONOMIC ANALYSIS AND EVEN THEN, IT'S SUSPECT.

24      AND IF YOU LOOK AT --

25          **THE COURT:**  WELL, THE -- THE REASON THAT I ASKED THE

1    QUESTION IS BECAUSE THE WAY YOU GUYS WRITE THESE MOTIONS

2    REALLY IS NOT HELPFUL FOR COURTS.  YOU SAY, YOU KNOW, "ALL

3    EVIDENCE" -- "ALL EVIDENCE, TESTIMONY, AND ARGUMENT BY

4    PLAINTIFFS AS TO APPLE'S FINANCIAL RESOURCES."  WELL, IT'S

5    NOT -- I MEAN, WE'RE GOING TO HAVE EVIDENCE REGARDING

6    APPLE'S -- YOU KNOW, THE FINANCES WITH RESPECT TO THESE

7    PRODUCTS.

8         MR. COVE:  WELL, YOUR HONOR, I -- IT'S CLEARLY

9    EVIDENCE -- I TAKE YOUR POINT THAT WE SHOULD HAVE BEEN MORE

10   CAREFUL.  BUT CLEARLY EVIDENCE AS TO THE PRICE -- THE MARGIN

11   ANALYSIS THAT DR. NOLL HAS -- HAS PROVIDED IS GOING TO COME

12   IN.  I THINK OUR MOTION IS CLEAR IN SAYING WE WERE NOT TRYING

13   TO EXCLUDE THAT.

14      BUT EVIDENCE OF WHAT IS APPLE'S OVERALL PROFITABILITY,

15   APPLE IS A MULTI-PRODUCT COMPANY --

16        THE COURT:  SO LET'S TAKE THEM, THEN, SPECIFICALLY.

17        MR. COVE:  OKAY.

18        THE COURT:  ALL RIGHT?  SO YOU WANT A MOTION TO

19   EXCLUDE EVIDENCE -- TO EXCLUDE SPECIFIC REFERENCE TO OVERALL

20   PROFITABILITY.

21        MR. COVE:  OVERALL PROFITABILITY --

22        THE COURT:  OKAY.  STOP.

23      ANY OBJECTION?

24        MS. SWEENEY:  YES, YOUR HONOR, TO THE EXTENT THAT

25   PROFESSOR NOLL HAS OPINED THAT ONE OF THE INDICIA OF MARKET

1   POWER IS PROFIT MARGIN.  AND I GATHER MR. COVE IS -- IS SAYING

2   SOMETHING DIFFERENT.

3       IF -- IF THEY'RE TALKING ABOUT APPLE'S OVERALL

4   PROFITABILITY, THAT'S ONE THING.  BUT IF IT'S THE

5   PROFITABILITY -- THE PROFIT MARGINS ON THE IPOD, THAT IS PART

6   OF PROFESSOR NOLL'S ANALYSIS.

7           **THE COURT:**  HENCE, OUR ISSUES.

8       ALL RIGHT.  WHY DON'T WE DO THIS:  I NEED FROM YOU, THE

9   PLAINTIFFS, THE SPECIFIC REFERENCES TO THE REPORT THAT YOU

10  BELIEVE ENTITLE YOU TO -- TO MOVE IN 11, 12, 13, AND 14.

11      MR. COVE, I UNDERSTAND YOUR PERSPECTIVE, AND I'M NOT --

12  I'M NOT ADVERSE TO ISSUING SOME KIND OF RULING THAT DEALS WITH

13  VERY NARROW -- OR AT LEAST VERY SPECIFIC IDENTIFICATIONS OF

14  PROBLEM ISSUES.  BUT THEY HAVE TO BE SPECIFIC ENOUGH SO THAT

15  THEY PUT THE ATTORNEYS ON NOTICE AS TO WHAT QUESTIONS CAN BE

16  ASKED APPROPRIATELY WITHIN THE CONTEXT OF THE COURT'S ORDER.

17      SO I THINK IF I HAD -- IF I HAD SOME MORE SPECIFIC TOPICS,

18  THEN I CAN GO THROUGH AND GIVE SOME SPECIFIC RULINGS AND THEN

19  SPECIFIC DIRECTION TO THE PLAINTIFFS BECAUSE I DO THINK THAT

20  THERE IS -- THAT THE MOTION IS WELL TAKEN, BUT IT HAS TO HAVE

21  SPECIFIC CONTOURS.

22          **MR. COVE:**  OKAY.  AND WOULD YOU LIKE THAT NOW, OR

23  WOULD YOU LIKE US TO -- ME TO COMPILE A LIST, PERHAPS SEND IT

24  TO THEM, SEE WHICH THEY CAN AGREE ON?  HOW WOULD YOU LIKE ME

25  TO ADDRESS --

 1          **THE COURT:**  WELL, YOU CAN EITHER -- IF WE HAVE TIME,

 2     YOU CAN EITHER DO IT LATER AND BRING IT TO ME AND WE CAN DO IT

 3     IN COURT.  IF YOU ALL CAN AGREE, THEN THAT'S FINE.

 4          OBVIOUSLY, WHAT'S IN THE REPORT, UNLESS IT'S BEEN

 5     STRICKEN, IT'S GOING TO COME IN --

 6          **MR. COVE:**  ABSOLUTELY.

 7          **THE COURT:**  -- SO IT CANNOT -- AND YOU'RE NOT SEEKING

 8     TO STRIKE PORTIONS OF THE REPORT.  SO THE -- THE

 9     IDENTIFICATION OF THE ISSUE CAN'T BE -- CAN'T IMPEDE ON THEIR

10     ABILITY TO HAVE VALID OPINIONS COME INTO EVIDENCE.

11          **MR. COVE:**  ABSOLUTELY.  AND AS I SAID, WE ARE -- WE

12     ARE NOT ATTEMPTING TO STRIKE WHAT THEY SAID ABOUT IT.  WHAT

13     WE'RE ATTEMPTING TO DO IS MAKE SURE THEY DON'T GO BEYOND THAT.

14          **THE COURT:**  I UNDERSTAND THAT.

15          **MR. COVE:**  AND DR. NOLL DID NOT OPINE ON THE -- DID

16     NOT OPINE THAT APPLE'S PROFITABILITY IN THE ABSTRACT INDICATED

17     MONOPOLY POWER.  HE DID IN THE MARGIN ANALYSIS OVER TIME THAT

18     SHOWED THE MARGIN INCREASING -- THIS IS ON PAGE -- THINK THE

19     ENTIRETY OF IT IS PAGE -- IS ON PAGE 79 THROUGH 81 OF THE

20     DOCKET NUMBER I GAVE YOU BEFORE.

21          THE ENTIRETY OF IT IS THE -- THE MARGINS GO UP DURING THE

22     RELEVANT TIME PERIOD, AND HE SAYS, WELL, THAT SHOWS -- AND,

23     YOU KNOW, WE'RE GOING TO CROSS-EXAMINE HIM.  WE DON'T AGREE

24     WITH HIM ON THAT.  BUT FOR HIM OR ANYONE ELSE TO SAY APPLE

25     MADE "X" BILLION DOLLARS LAST YEAR.  THAT SHOWS --

```
 1            THE COURT:  I AGREE.

 2                   (SIMULTANEOUS COLLOQUY.)

 3            MR. COVE:  SO THAT'S WHAT OUR CONCERN IS.

 4            THE COURT:  AND THE FACT THAT THEY MAY HAVE MADE

 5    PROFITS ON MACS IS NOT RELEVANT TO THIS CASE.

 6            MR. COVE:  RIGHT, AND --

 7            THE COURT:  SO THIS IS -- THERE IS A LINE.

 8            MR. COVE:  AND --

 9            THE COURT:  THE QUESTION IS DEFINING IT.

10            MR. COVE:  AND OUR ARGUMENT GOES BEYOND JUST THE

11    MULTI-PRODUCTS BUT TO THE SPECIFIC PRODUCTS AT ISSUE.

12        FIRST ON ITUNES, I READ YOU HIS ANALYSIS WITH HIS

13    STATEMENT, WHICH IS HE COULD NOT DO A MARGIN ANALYSIS ON

14    ITUNES.  SO, THEREFORE, WE THINK PROFITABILITY AND MARGIN

15    EVIDENCE RELATING TO ITUNES SHOULD BE EXCLUDED.  HE --

16        THEIR EXPERT COULDN'T DO IT.  YOU CAN'T HAVE LAY WITNESSES

17    DOING IT.  YOU CAN'T ASK QUESTIONS OF APPLE PEOPLE AND EXPECT

18    TO DRAW INFERENCES FROM THAT.

19            THE COURT:  OKAY.  WELL, WITH RESPECT TO THAT ISSUE,

20    I PROBABLY NEED TO SEE MORE WHAT WE'RE TALKING ABOUT AND --

21    AND LOOK AT THE ACTUAL PARAGRAPHS, ET CETERA, OF THE REPORT.

22            MR. COVE:  OKAY.

23            MS. SWEENEY:  AND WE CAN DO THAT AFTER THE BREAK,

24    YOUR HONOR.

25            THE COURT:  OKAY.
```

1    NEXT ONE IN THE BOOK, NO. 5.

2              (PAUSE IN THE PROCEEDINGS.)

3         **THE COURT:**  SO LET ME TELL YOU THAT I -- I THINK THIS

4    MOTION IS PREMATURE.  I'M JUST LOOKING AT KEVIN MURPHY'S

5    RESUME.

6         AND JUST AS A FOR INSTANCE, HE'S TESTIFIED IN OTHER CASES

7    BEFORE.  AND IF APPROPRIATE, PLAINTIFFS ARE WELL WITHIN THEIR

8    RIGHTS TO ATTACK HIS OPINIONS IF THEY'RE INCONSISTENT WITH

9    SOMETHING HE MAY SAY HERE UNDER OATH OR MAY RELATE TO WHAT

10   HE'S DONE.  I SAY THAT IT'S PREMATURE BECAUSE THERE'S ALWAYS A

11   LINE, AND UNTIL I HAVE THE SPECIFICS IN FRONT OF ME, IT'S NOT

12   CLEAR TO ME THAT I CAN MAKE SUCH A BROAD-BRUSH RULING.

13        YOU MAY PROCEED.

14        **MS. DUNN:**  THANK YOU.

15        YOUR HONOR, THERE ARE SEVERAL VERY SPECIFIC THINGS GOING

16   ON IN THIS MOTION, ONE OF WHICH THE RESPONSE HAS BEEN ABOUT

17   CROSS-EXAMINATION OF DR. MURPHY, AND WE CAN TALK ABOUT THAT.

18   BUT I'D LIKE TO FIRST TAKE THE TIME JUST TO BREAK DOWN WHAT

19   WE'RE TALKING ABOUT HERE BECAUSE IT'S OUR HOPE THAT SOME OF

20   THESE THINGS YOU WILL NOT THINK ARE PREMATURE AND YOU CAN RULE

21   ON THEM TODAY.

22        FIRST, THE -- WE SEEK TO EXCLUDE PLAINTIFFS USING,

23   REFERENCING IN ANY WAY, THE DECISIONS IN THE *E-BOOKS* CASE AND

24   THE HIGH TECHS -- *HIGH-TECH WORKERS* CASE.

25        SECONDLY, WE SEEK TO EXCLUDE SENATE AND OTHER EUROPEAN

1    PROCEEDINGS.  WE SEEK TO EXCLUDE DR. NOLL'S REFERENCE TO THE

2    *MICROSOFT* DECISION, AND WE SEEK TO EXCLUDE FINALLY WHAT WAS

3    DISCUSSED BRIEFLY EARLIER, THE MONITOR'S REPORT THAT WAS AN

4    OUTGROWTH OF THE *E-BOOKS* LITIGATION AND WHICH THE LITIGATION

5    AS A WHOLE POST-DATES THE CLASS PERIOD.

6        SO I'D LIKE TO GO THROUGH EACH OF THOSE, AND I CAN ALSO

7    ADDRESS YOUR HONOR'S DISCUSSION OF DR. MURPHY, WHICH IS A

8    SUBSET REALLY OF THE *E-BOOKS* AND *HIGH-TECH WORKERS*.

9        SO THIS MOTION ALL PUT TOGETHER REFLECTS A DESIRE ON THE

10   PART OF THE PLAINTIFFS TO INTRODUCE WHAT IS REALLY PROPENSITY

11   EVIDENCE AND ARGUE AND SHOW THAT APPLE IS JUST A BAD COMPANY

12   THAT ENGAGES IN ANTITRUST VIOLATIONS.

13       SO -- WHEREAS IRONICALLY, THEY DO NOT WANT YOU TO INSTRUCT

14   ON THE LAW OF THIS CASE OR SPEAK ABOUT PRIOR RULINGS OF THIS

15   COURT, THEY ARE HAPPY TO HAVE UNRELATED CASES ABOUT A TOTALLY

16   DIFFERENT SECTION OF THE ANTITRUST LAWS AND A TOTALLY

17   DIFFERENT JUDGE BROUGHT INTO EVIDENCE.

18       THIS IS PREJUDICIAL IN THE EXTREME.  WE STRENUOUSLY OBJECT

19   TO ANY RELIANCE ON THESE OPINIONS MAKING THE JURY AWARE THAT

20   THERE ARE THESE OTHER CASES THAT APPLE HAS BEEN SUED IN, OTHER

21   CASES FOR ANTITRUST VIOLATIONS AND THE VERDICTS.  THEY'RE

22   UNRELATED CASES.  THESE WERE CONSPIRACY CASES.  THEY ARE NOT

23   ABOUT MONOPOLIZATION.  AND COURTS HAVE ROUTINELY EXCLUDED THEM

24   UNDER 404(B), 803 AND ALSO 403.  I'M GOING TO ANTICIPATE THAT

25   THE PLAINTIFFS ARE GOING TO SAY, WELL, THIS IS -- THIS IS TO

1    PROVE INTENT.

2        WELL, THE ONLY -- THE ONLY CHARGE HERE WHERE THERE'S AN

3    INTENT ELEMENT IS ATTEMPTED MONOPOLIZATION.  AND THERE IS NO

4    WAY THAT THIS OTHER CASE THAT HAD TO DO WITH CONSPIRACY UNDER

5    AN ENTIRELY DIFFERENT SECTION -- HAD NOTHING TO DO WITH

6    MONOPOLIZATION -- CAN GO TO THE INTENT OF A COMPANY TO

7    MONOPOLIZE IN THIS CASE.

8        EVEN WORSE THAN USING JUST THIS AS PROPENSITY EVIDENCE IS

9    PROPENSITY EVIDENCE TO VIOLATE AN EXTREMELY BROAD LAW, SO IT'S

10   LIKE SAYING IF YOU ROB A BANK, YOU VIOLATED THE CRIMINAL LAW

11   AND THAT YOU PROBABLY ALSO MURDERED SOMEBODY.

12       THE MONITOR'S REPORT ACTUALLY, I THINK, PUTS A VERY FINE

13   POINT ON WHAT THEY'RE TRYING TO DO HERE.  IT'S OBVIOUSLY

14   HEARSAY.  THE ENTIRE LITIGATION IN THAT CASE POST-DATES THE

15   CLASS PERIOD.

16       AND, YOU KNOW, I WILL SAY THAT IF PLAINTIFFS WANT TO TALK

17   ABOUT THE ANTITRUST CASES THAT APPLE HAS LOST, I DON'T SEE WHY

18   WE WOULDN'T BE ABLE TO REBUT WITH EVERY SINGLE CASE, AND THERE

19   ARE MANY, THAT APPLE HAS WON, INCLUDING IN THIS CASE.

20       SO WITH REGARD TO *E-BOOKS* AND *HIGH-TECH WORKERS*, THAT'S A

21   PROBLEM.

22       SO PLAINTIFFS RESPOND BY SAYING, WELL, WE'RE JUST GOING TO

23   CROSS-EXAMINE DR. MURPHY.  AND I'LL GET TO THAT IN A SECOND.

24   BUT WHAT I FEAR THEY ARE DOING -- AND I HOPE IT'S NOT THE

25   CASE -- IS THAT JUDGE COTE IN THAT CASE WANTED TO -- OR IN HER

1    OPINION, SHE HAS CREDIBILITY ASSESSMENTS OF MR. CUE, WHO

2    PLAINTIFFS PLAN TO CALL AS A WITNESS AND WE WOULD PLAN TO CALL

3    AS A WITNESS.  THERE IS A LINE OF CASES, INCLUDING A CASE IN

4    THE NINTH CIRCUIT, BUT THESE CASES ARE IN THE FOURTH CIRCUIT,

5    THE ELEVENTH CIRCUIT, THE SIXTH CIRCUIT, THE THIRD CIRCUIT,

6    THAT SAYS (SIC) THAT THIS IS IMPERMISSIBLE, THAT YOU DO NOT

7    BRING ANOTHER JUDGE'S OPINION --

8            THE COURT:  I'M GOING TO STOP YOU RIGHT THERE.

9        IS THAT -- WITH RESPECT TO THIS SPECIFIC ISSUE, IS THERE A

10   PLAN ON THE PART OF THE PLAINTIFFS TO DO THAT?

11           MR. COUGHLIN:  NO.

12           THE COURT:  ALL RIGHT.  THE MOTION IS GRANTED WITH

13   RESPECT TO THAT ISSUE.

14       NEXT.

15           MS. DUNN:  THANK YOU, YOUR HONOR.

16       WITH REGARD TO CROSS-EXAMINATION OF DR. MURPHY, THESE

17   CASES THAT I WAS ABOUT TO TELL YOUR HONOR ABOUT SPEAK

18   PRECISELY TO THIS ISSUE, CROSS-EXAMINATION OF AN EXPERT.  THEY

19   DO NOT DISTINGUISH BETWEEN ADMISSION INTO EVIDENCE, AS

20   PLAINTIFF COUNSEL WAS TRYING TO DO EARLIER.  THEY SAY THAT IT

21   IS ABSOLUTELY IMPROPER TO ALLOW CREDIBILITY AND FACTUAL

22   DETERMINATIONS OF JUDGES INTO THE NEXT CASE BECAUSE THE

23   JURY --

24           THE COURT:  DIDN'T I JUST RULE ON THAT?  IS THERE --

25           MS. DUNN:  I TOOK YOU TO -- I TOOK YOU TO BE RULING

```
 1    ON E-BOOKS AND HIGH-TECH WORKERS AS A GENERAL MATTER, NOT

 2    SPECIFICALLY WITH REGARD TO DR. MURPHY.  BUT IF YOU HAVE

 3    RULED, THAT'S GREAT.

 4         THE COURT:  LET ME BE VERY SPECIFIC.  I STOPPED YOU

 5    AND I ASKED, WITH RESPECT TO THE CREDIBILITY ASSESSMENT OR

 6    ALLEGED -- I DON'T KNOW, YOU KNOW, 'CAUSE I HAVEN'T SEEN IT --

 7    THE ALLEGED CREDIBILITY ASSESSMENT OF CUE BY JUDGE KOH (SIC),

 8    I ASKED WITH RESPECT TO THAT ISSUE WHETHER THERE WAS A PLAN TO

 9    DO THAT.  PLAINTIFF SAID NO, THAT PART OF THE MOTION IS

10    GRANTED.

11      THAT'S WHAT I DID.

12         MS. DUNN:  I'M SPEAKING NOW ABOUT DR. MURPHY.

13         THE COURT:  OKAY.  SO NOW WITH DR. MURPHY, CITE

14    SPECIFICALLY WHAT YOUR CONCERN IS.

15         MS. DUNN:  IT'S THE SAME THING.  UNDER THESE CASES,

16    CROSS-EXAMINATION OF EXPERTS HAVE BEEN EXCLUDED BECAUSE THE

17    COURTS BELIEVE THAT IT'S INADMISSIBLE HEARSAY AND ALLOWING

18    EXTRINSIC EVIDENCE -- I CAN GIVE YOUR HONOR THE CASE CITES IF

19    THAT WOULD BE HELPFUL.

20         THE COURT:  NO, I WANT YOU TO STATE SPECIFICALLY WHAT

21    YOU'RE ASKING, WHAT YOU WANT THE ORDER TO READ.

22         MS. DUNN:  WE WOULD LIKE THE ORDER TO EXCLUDE ANY

23    REFERENCE TO E-BOOKS AND HIGH-TECH WORKERS, INCLUDING

24    CROSS-EXAMINATION OF DR. MURPHY, OUR EXPERT.

25         THE COURT:  WELL, THEN THAT'S NOT GRANTED THE WAY
```

```
 1    YOU'VE PHRASED IT.

 2        THEY'RE GOING TO CROSS-EXAMINE DR. MURPHY, SO -- WHAT --

 3            MS. DUNN:  HERE --

 4            THE COURT:  SO, AGAIN, SAY --

 5            MS. DUNN:  WHAT SHOULD NOT BE PERMITTED IS

 6    CROSS-EXAMINATION OF DR. MURPHY WITH JUDICIAL FINDINGS OR

 7    OPINIONS THAT SPEAK TO HIS EXPERT TESTIMONY IN OTHER CASES.

 8            THE COURT:  ALL RIGHT.  IS THERE A PLAN TO DO THAT?

 9            MR. COUGHLIN:  YOUR HONOR, I THINK THAT WE WILL DO

10    SOME OF THAT.

11            THE COURT:  ALL RIGHT.  WELL, THEN THAT COULD BE A

12    POTENTIAL ISSUE.  I TOOK A LOOK AT JUDGE KOH'S OPINION THAT

13    WAS REFERENCED TO ME IN THE OPPOSITION BY THE PLAINTIFF, AND

14    THIS IS IN RE: HIGH TECH'S EMPLOYEE ANTITRUST LITIGATION,

15    289 FRD 555.  I DON'T UNDERSTAND WHAT YOU WOULD CROSS-EXAMINE

16    HIM ON.

17            MR. COUGHLIN:  I DON'T THINK WE'D CROSS-EXAMINE HIM

18    ON ANY OPINION THAT SHE GAVE AS TO HIM IN THAT CASE.

19            THE COURT:  OKAY.  SO --

20            MR. COUGHLIN:  SO THEN --

21            THE COURT:  WITH RESPECT TO -- WITH RESPECT TO ANY

22    FINDINGS BY JUDGE KOH, THE MOTION IS GRANTED.  IT'S ENTIRELY

23    INAPPROPRIATE.  BUT WHAT, THEN, ARE YOU INTENDED -- ARE YOU

24    INTENDING TO DO?

25            MR. COUGHLIN:  IN THE E-BOOKS LITIGATION, I THINK
```

1    THAT HE GAVE A NUMBER OF OPINIONS THAT -- THAT HE GIVES HERE

2    ABOUT CLUSTERING AND OTHER ISSUES THE WAY HE DOES AN ANALYSIS.

3            **THE COURT:**  OKAY.  SO DO YOU HAVE A TRIAL TRANSCRIPT?

4            **MR. COUGHLIN:**  YES, WE HAVE A TRIAL TRANSCRIPT.

5            **THE COURT:**  FROM THE *E-BOOKS* LITIGATION?

6            **MR. COUGHLIN:**  YES.

7            **THE COURT:**  AND YOU WANT TO CROSS-EXAMINE HIM WITH

8    HIS TRIAL TESTIMONY IN ANOTHER CASE; IS THAT --

9            **MR. COUGHLIN:**  YES.

10           **THE COURT:**  OKAY.  SO WHAT'S THE PROBLEM WITH THAT?

11           **MS. DUNN:**  SO I HAVE THIS TRIAL TRANSCRIPT HERE.  IN

12   THAT CASE, THE JUDGE, JUDGE COTE, FOUND DR. MURPHY'S TESTIMONY

13   TO BE LEGALLY IRRELEVANT TO THE ISSUE IN THAT CASE SO THAT HAS

14   NO BEARING ON --

15           **THE COURT:**  OKAY.  LET'S --

16           **MS. DUNN:**  -- THIS CASE.

17           **THE COURT:**  LET'S -- IT IS INAPPROPRIATE TO USE

18   JUDICIAL FINDINGS IN OTHER CASES TO IMPEACH A WITNESS.  IT'S

19   NOT APPROPRIATE.

20           **MR. COUGHLIN:**  I AGREE, YOUR HONOR.

21           **THE COURT:**  AND THEY'RE EXCLUDED.  IF HE HAS

22   TESTIFIED, AS I START -- AS I SAID EARLIER, IN ANOTHER CASE,

23   UNDER OATH AND THEN SAYS SOMETHING DIFFERENTLY HERE IN COURT,

24   THAT'S PROPER IMPEACHMENT.  SO WHAT AM I MISSING HERE?

25           **MS. DUNN:**  WE AGREE WITH YOUR HONOR.  I THINK THE

 1  PLAINTIFFS INTEND TO USE THE FORMER, NOT THE LATTER.

 2          **THE COURT:**  WELL, HE JUST SAID HE AGREED WITH ME AND

 3  I JUST EXCLUDED IT, SO NOW WHAT AM I MISSING?

 4          **MS. DUNN:**  NOTHING.

 5          **THE COURT:**  ARE WE ALL ON THE SAME PAGE?

 6          **MR. COUGHLIN:**  I THINK WE ARE, YOUR HONOR.

 7          **MS. DUNN:**  YES.

 8          **THE COURT:**  OKAY.  IF YOU DO INTEND TO IMPEACH WITH

 9  TRIAL TESTIMONY, MAKE SURE YOU HAVE A COPY OF THAT TRANSCRIPT

10  FOR ME --

11          **MR. COUGHLIN:**  RIGHT.

12          **THE COURT:**  -- SO THAT I CAN CHECK IT BEFORE YOU MOVE

13  INTO THAT AREA.

14      ANYTHING ELSE WITH RESPECT TO THIS MOTION?

15          **MS. DUNN:**  YES, YOUR HONOR.

16          **THE COURT:**  SO THE MONITOR'S REPORT I'M NOT GETTING

17  TO YET BECAUSE I DON'T -- I UNDERSTAND IT'S ON THAT -- ON THE

18  FLASH DRIVE THAT YOU GAVE ME BUT I HAVEN'T LOOKED AT IT YET.

19  THE --

20      ALL RIGHT.  SO NOW THE NEXT ISSUE, THEN, WITH RESPECT TO

21  MOTION 5.

22          **MS. DUNN:**  THE NEXT ISSUE WOULD BE DR. NOLL'S

23  REFERENCE TO THE *MICROSOFT* CASE AND THE PLAINTIFFS SUGGEST

24  THAT THEY'RE GOING TO USE THE -- IN TWO WAYS.

25          **THE COURT:**  OKAY.  IS IT IN THE REPORT?  AND IF SO,

```
 1    WHAT ARE THE PARAGRAPHS OF THE REPORT?

 2              MS. DUNN:  WE CAN PULL THOSE.

 3              THE COURT:  SO ARE YOU ASKING TO STRIKE PORTIONS OF

 4    THE REPORT?  AND IF SO, WHY WASN'T IT DONE SOONER?

 5                   (PAUSE IN THE PROCEEDINGS.)

 6                   (OFF-THE-RECORD DISCUSSION.)

 7              MS. DUNN:  YOUR HONOR, IT'S ON THE MOTIONS TO STRIKE.

 8    IT'S DOCKET 751 AND PARAGRAPH -- PARAGRAPH 64 TO 66.

 9                   (OFF-THE-RECORD DISCUSSION.)

10              MS. DUNN:  OH, 751-1, PAGES 64 TO 66.  I APOLOGIZE.

11              THE COURT:  751-1.

12              MS. DUNN:  UM-HMM.

13              THE COURT:  WELL, NO, IT'S NOT 751-1 BECAUSE THAT'S A

14    DECLARATION.  IT'S A -- THAT'S A SIX-PAGE DECLARATION IN

15    SUPPORT OF A MOTION TO SEAL.

16              MS. DUNN:  YOUR HONOR, WE WILL DILIGENTLY LOOK FOR

17    THIS.

18        I'M ALSO HAPPY TO READ IT INTO THE RECORD IF THAT'S AT ALL

19    HELPFUL.

20              THE COURT:  YOU CAN READ IT IN.  I LIKE TO READ IT

21    MYSELF.

22                   (PAUSE IN THE PROCEEDINGS.)

23              THE COURT:  DO I HAVE HIS REPORT ANYWHERE ELSE?

24    ANYBODY HAVE IT?

25              MS. DUNN:  YOUR HONOR, I CAN GIVE YOU MY COPY
```

```
 1    THAT'S --
 2              THE COURT:  OKAY.  DO YOU HAVE A COPY OF HIS REPORT?
 3              MR. COUGHLIN:  I THINK I DO HAVE A COPY.
 4              MR. COVE:  I HAVE A CLEAN COPY.
 5              THE COURT:  ALL RIGHT.  LET ME --
 6                   (PAUSE IN THE PROCEEDINGS.)
 7              THE COURT:  SO YOU'RE -- YOUR MOTION THEN RELATES TO
 8    THE SECOND AND THIRD SENTENCE OF THE FIRST FULL PARAGRAPH ON
 9    PAGE 64?
10              MS. DUNN:  YES.  AND THEN THERE IS ANOTHER REFERENCE
11    ON PAGE 66.
12       ALTHOUGH EVEN WHEN HE IS NOT USING THE WORD "MICROSOFT,"
13    DR. NOLL IS OPINING ON THE LAW.  FOR EXAMPLE ON PAGE 66, THE
14    PARAGRAPH THAT SPEAKS, THE ANALYSIS --
15              THE COURT:  THAT'S A SEPARATE ISSUE.
16              MS. DUNN:  OKAY.
17              THE COURT:  EXPERT'S ATTEMPTS TO OPINE ON THE LAW IS
18    A SEPARATE ISSUE FROM THE REFERENCE TO A VERY SPECIFIC CASE
19    AND FINDINGS, WHICH IS ON THESE PAGES --
20                   (PAUSE IN THE PROCEEDINGS.)
21              THE COURT:  -- ON THE -- ON PAGE 66, THE SECOND FULL
22    PARAGRAPH, AND THEN WHAT FOLLOWS AS WELL.
23              MS. DUNN:  RIGHT.
24              THE COURT:  OKAY.  LET'S HEAR ARGUMENT.
25              MS. DUNN:  YOUR HONOR, OUR ARGUMENT HERE IS VERY
```

1   SIMPLE, WHICH IS THAT IT'S PREJUDICIAL AND --

2         **THE COURT:**  IT IS PREJUDICIAL.  THE QUESTION IS

3   WHETHER IT'S --

4         **MS. DUNN:**  IT'S UNDULY PREJUDICIAL, YES.  WE THINK

5   IT'S UNDULY PREJUDICIAL.

6         **THE COURT:**  AND THAT'S WHY I'M GOING TO LET YOU MAKE

7   THE ARGUMENT.  ON THE ONE HAND, I UNDERSTAND WHAT YOU'RE

8   SAYING WITH RESPECT TO DIFFERENT LITIGATION AND HOW IT MAY OR

9   MAY NOT APPLY IN THIS CASE.  ON THE OTHER HAND, WE HAVE AN

10  EXPERT HERE WHO IS TRYING TO OPINE ON COMPETITION.  AND THE

11  FACT THAT THESE PARTIES HAPPEN TO BE IN A DIFFERENT -- IN

12  DIFFERENT LITIGATION IS JUST PART OF THE WHOLE CONTEXT OF

13  ANTITRUST COMPETITION.

14     HIS OPINION HAS TO BE BASED ON SOMETHING.  AND THAT'S

15  WHERE THE TENSION IS.  SO GO AHEAD.

16        **MS. DUNN:**  YOUR HONOR, I CERTAINLY THINK IT'S

17  POSSIBLE FOR HIM TO GIVE HIS OPINION WITHOUT EXPLAINING THAT

18  THE U.S. GOVERNMENT SUED APPLE IN THE *MICROSOFT* CASE, BUT

19  ALTHOUGH --

20        **THE COURT:**  OKAY.  THAT'S ONE ISSUE.  BUT PAGES 66

21  AND 67 GO MORE TO THE ISSUE OF WHAT HAPPENS WHEN THERE ARE

22  SUCCESSFUL ANTITRUST CASES BROUGHT.

23        **MS. DUNN:**  I AGREE, SO TABLING THAT FOR JUST ONE

24  SECOND, I ALSO WANT TO NOTE THAT DR. NOLL WAS AN EXPERT IN A

25  CASE *NOVELL*, WHICH YOU'LL HEAR MORE ABOUT DURING THE

1    CONVERSATION ABOUT THE JURY INSTRUCTIONS.  AND SO *NOVELL* IS

2    EXTREMELY SIMILAR TO THIS CASE.  AND THE PARTY IN THE POSITION

3    OF APPLE WON IN THAT CASE.

4        AND SO IF DR. NOLL IS PERMITTED TO TALK ABOUT THE

5    *MICROSOFT* CASE, THERE WOULD BE NO REASON THAT WE SHOULD NOT

6    CROSS-EXAMINE HIM ABOUT WHAT HAPPENED IN THE *NOVELL* CASE, AND

7    THIS IS ONE REASON THAT EXPERTS SHOULDN'T BE ALLOWED TO TALK

8    ABOUT CASES THAT ARE NOT AT BAR.  AND I -- I IN READING WHAT

9    DR. NOLL HAS WRITTEN, HIS OPINION COMES THROUGH LOUD AND CLEAR

10   IN MANY DIFFERENT WAYS.  IT IS CERTAINLY NOT NECESSARY FOR HIM

11   TO MENTION THIS CASE.

12       THE PARTS THAT WE WOULD OBJECT TO IN 66 AND 67 ARE THE

13   PART (SIC) WHERE HE'S CLEARLY OPINING ON THE LAW, SO WHEN HE

14   SAYS, "THE ANALYSIS OF BUSINESS JUSTIFICATIONS MUST ADDRESS

15   WHETHER CONSUMERS ARE HARMED BY THE OPPORTUNITY TO DEAL WITH

16   MULTIPLE VENDORS FOR EACH PRODUCT," HE'S CLEARLY ADDRESSING AN

17   ISSUE OF LAW WHICH IS BEYOND HIS PURVIEW.

18           **THE COURT:**  RESPONSE.

19           **MR. COUGHLIN:**  I DON'T THINK HE'S OPINING ON THE LAW

20   AT ALL THERE.  HE'S TALKING ABOUT THE ECONOMICS OF -- AND THE

21   BUSINESS JUSTIFICATIONS FOR WHAT BUSINESSES DO IN THE CONTEXT

22   OF CONDUCTING THEIR BUSINESS AND WHETHER CONSUMERS ARE HARMED

23   BY THE LACK OF OPPORTUNITY TO -- TO HAVE MULTIPLE VENDORS

24   THERE.

25       AND THAT IS EXACTLY WHAT THIS CASE IS GOING TO.  HE USES

1    THE *MICROSOFT* CASE AS AN EXAMPLE OF WHEN THAT WAS SPLIT APART,

2    HOW THAT WAS HELPFUL FOR COMPETITION, AND BASICALLY PRICES

3    WENT DOWN, YOU HAD MORE COMPETITION INTO THE MARKET.  THAT'S

4    HIS BASIS OF -- OF BEING AN EXPERT, AND SO I DON'T THINK IT

5    GOES TO THE LEGAL ISSUES THAT YOUR HONOR'S GOING TO --

6        **THE COURT:**  WELL, HE'S -- THERE WERE TWO ISSUES

7    THERE.  ONE WAS THIS MOTION THAT SOMEHOW THAT PARAGRAPH ON

8    PAGE 66 IS A LEGAL ANALYSIS.  NOT SURE I BUY THAT.  THE

9    QUESTION -- THE OTHER QUESTION, THOUGH, IS WHETHER -- THE

10   ISSUE OF PREJUDICE WITH RESPECT TO THE SPECIFIC ARGUMENT THAT

11   THE U.S. GOVERNMENT, YOU KNOW, SUED APPLE AND --

12       **MR. COUGHLIN:**  I --

13       **THE COURT:**  -- AND THE 404(B) IMPLICATIONS OF THAT,

14   WHICH IS A VALID CONCERN.

15       **MR. COUGHLIN:**  WELL, THERE ARE 404(B) IMPLICATIONS.

16     IF THIS WAS -- COUNSEL MENTIONED IF -- IF IT WAS A BANK

17   ROBBERY.  WELL, IF THIS WAS AS BANK ROBBERY, WE'D HAVE THE

18   THREE OTHER PRIOR BANK ROBBERIES COMING IN UNDER 404(B).

19       **THE COURT:**  MAYBE, MAYBE NOT.

20       **MS. DUNN:**  WHICH ARE EXPLICITLY ENUNCIATED IN THE

21   RULE OF EVIDENCE.  THAT'S PRECISELY THE POINT.

22       **MR. COUGHLIN:**  BUT THE POINT, I -- THE POINT HERE --

23   AND I HAVE TRIED A NUMBER OF BANK ROBBERIES AND HAVE DONE JUST

24   THAT.  WHEN IT WAS SIMILAR, IT CAME IN.  IF IT'S NOT SIMILAR,

25   IT DOESN'T COME IN, EVEN IF IT IS ANOTHER BAD ACT, IF IT

 1    DOESN'T SHOW MODUS OPERANDI OR INTENT OR KNOWLEDGE.  AND,

 2    FRANKLY, IT'S A LITTLE EARLY TO TELL UNTIL WE START THE

 3    CROSS-EXAMINATIONS OF, LET'S SAY, EDUARDO CUE ABOUT WHETHER

 4    SOME OF THESE ACTIONS THAT HE TOOK IN *E-BOOKS* OR ANYTHING, YOU

 5    KNOW, QUALIFIES, A 404(B) SIMILAR ACT.  OR IF HE DEALT WITH

 6    PEOPLE IN THE SAME MANNER IN THAT CASE, NOT JUDGE COTE'S

 7    OPINIONS ABOUT HIS CREDIBILITY OR ANYTHING ELSE LIKE THAT.

 8        BUT IF HE TOOK SIMILAR ACTIONS, LIKE, FOR EXAMPLE, IN THAT

 9    CASE WITH THE MOST FAVORED NATIONS CLAUSE, DID HE DO SOMETHING

10    LIKE THAT HERE THAT IS SO SIMILAR THAT IT SHOULD COME IN.  I

11    DON'T KNOW THAT RIGHT NOW AS I STAND HERE.  THAT HASN'T BEEN

12    FRAMED UP AS THE ISSUE.

13            **THE COURT:**  WELL, MAYBE THE APPROPRIATE THING TO DO,

14    THEN, IS TO -- IS TO INDICATE THAT A -- A MOTION ON 404(B)

15    EVIDENCE, WHICH MUCH OF THIS IS, IS GRANTED WITHOUT PREJUDICE

16    UNTIL A -- UNTIL A FOUNDATION IS FORMED SO THAT YOU CAN MAKE

17    THE ARGUMENT.

18            **MR. COUGHLIN:**  I DON'T --

19            **THE COURT:**  AND SO THAT I CAN DETERMINE BASED UPON

20    WHAT I HEAR WHETHER OR NOT THERE'S SIMILARITY.

21            **MR. COUGHLIN:**  THAT IS -- THAT IS ONE ISSUE THAT'S

22    RAISED HERE.  WE'VE KIND OF JUMPED AWAY FROM THE ISSUE OF WHAT

23    WE'RE ACTUALLY DEALING WITH IN THE EXPERTS.

24        I WENT BACK -- YOU RAISED 404(B), SO I TALKED ABOUT IT

25    WITH A PARTICULAR WITNESS AND HOW IT MIGHT BECOME RELEVANT,

 1    YOU KNOW, UNDER ANY SCENARIO OF FACTS.  AND THEN WE WOULD HAVE

 2    TO MAKE THE SHOWING BEFORE WE WERE ALLOWED TO DO IT.

 3        BUT WHEN WE'RE TALKING TO WITNESSES -- EXPERT WITNESSES

 4    AND THEY'RE TALKING ABOUT THEIR WORK EITHER IN PRIOR

 5    LITIGATION OR WHAT THEY DO, I THINK IT'S FAIR GAME FOR US TO

 6    GO AFTER THEIR WITNESSES AND FOR THEM TO GO AFTER OURS AND --

 7    AND TALKING ABOUT NOT THE OPINIONS OF THE JUDGE IN THAT CASE

 8    BUT WHAT THEY DID IN THOSE CASES AND WHAT CONCLUSIONS THEY

 9    REACHED AND IF THEY REACHED CONCLUSIONS THAT ARE SOMEHOW

10    DIFFERENT THAN WHAT THEY'RE OPINING ON HERE.

11        DIDN'T YOU IN SUCH AND SUCH LITIGATION OPINE THAT YOU

12    DIDN'T NEED CLUSTERING IF YOU HAD ALL THE DATA.  THAT'S JUST

13    ONE EXAMPLE OF WHAT I THINK WOULD BE RELEVANT MAYBE HERE.

14        I THINK THAT HAS TO BE OPEN.  I DON'T THINK THERE'S ANY

15    REASON TO EXCLUDE THAT NOW.  AND CERTAINLY, WE'RE AT RISK IF

16    WE GO BEYOND WHAT YOUR HONOR HAS DRAWN AS THE LINE.  I DON'T

17    THINK I'VE DISAGREED WITH YOUR HONOR.

18        THE OPINION OF THE TWO JUDGES IN *E-BOOKS* OR *HIGH-TECH* ARE

19    IRRELEVANT FOR THE MOST PART.  BUT THE WORK THAT WAS DONE IN

20    THOSE CASES AND BY THESE EXPERTS MAY VERY WELL BE RELEVANT.

21    AND WE SHOULDN'T BE CUT OFF FROM CROSS-EXAMINATION BEFORE WE

22    EVEN GET THERE 'CAUSE WE'LL HAVE A FLOW GOING AND WE MAY OR

23    MAY NOT ASK A CERTAIN QUESTION.  WE DON'T KNOW WHAT THE

24    WITNESS WILL SAY NECESSARILY.

25        **THE COURT:**  WELL, THERE'S STILL -- DO YOU WANT TO

1    ADDRESS PAGE 64 OF THE REPORT?

2              (PAUSE IN THE PROCEEDINGS.)

3         **MR. COUGHLIN:**  HE'S USING THAT AS A REAL-WORLD

4    EXAMPLE OF WHAT HAPPENED.  IF THEY'RE WORRIED ABOUT THE

5    MENTION OF -- MENTIONING APPLE IN THAT LITIGATION, FRANKLY, I

6    DON'T HAVE ANY PROBLEM WITH NOT -- AND I'LL -- AND WE'LL TELL

7    HIM AHEAD OF TIME.

8         **THE COURT:**  OKAY.  WELL, SEE, THAT ALWAYS MAKES IT

9    EASY.  MOTION IS GRANTED TO THE EXTENT THAT --

10       I UNDERSTAND THERE'S MORE THERE.

11        **MS. DUNN:**  THANK YOU.

12        **THE COURT:**  BUT AT LEAST WITH RESPECT TO -- U.S.

13   GOVERNMENT SUING APPLE WITH RESPECT TO INTERNET EXPLORER AND

14   WINDOWS, THAT -- THAT'S EXCLUDED.

15        **MR. COUGHLIN:**  BUT HE CAN STILL TALK ABOUT THE *U.S./*

16   *MICROSOFT* CASE AND THE RESULT OF THAT AND HOW THAT ENHANCED

17   COMPETITION.

18        **THE COURT:**  WELL, THAT'S WHAT I STILL HAVE UNDER

19   SUBMISSION.

20        **MR. COUGHLIN:**  OH, OKAY.

21        **THE COURT:**  ANYTHING ELSE ON -- ANY OTHER ARGUMENT?

22   I'M NOT RULING FROM THE BENCH ON THIS ONE.

23        **MS. DUNN:**  OKAY.  YOUR HONOR, SINCE YOU'RE NOT RULING

24   FROM THE BENCH, I WOULD LIKE TO GIVE YOU THE CASE CITES

25   BECAUSE --

```
 1              THE COURT:  ARE THEY NOT IN YOUR MOTION?

 2              MS. DUNN:  NO, YOUR HONOR, BECAUSE THEY ARE A

 3    RESPONSE TO THE PLAINTIFFS' OPPOSITION.  WE DID GIVE THE

 4    PLAINTIFFS A LIST OF THESE CASES LAST NIGHT IN A LETTER.  AND

 5    I'M HAPPY TO PROVIDE THEM TO YOU IN ANY WAY, BUT I AM

 6    DISTURBED BY COUNSEL'S ARGUMENT BECAUSE I FELT THAT YOU HAD

 7    ALREADY RULED ON THIS ISSUE OF USING WHAT WAS IN JUDGE COTE'S

 8    OPINION, WHICH IS NOT JUST OPINION, IT IS ALSO FACTUAL

 9    FINDINGS, WHICH ARE THE VERY TOPIC OF THESE CASES THAT ALL SAY

10    THAT THESE MUST BE EXCLUDED.

11        AND I HAD THOUGHT THAT YOU HAD RULED ON THAT EXPRESSLY,

12    BUT IT SEEMS THAT COUNSEL STILL INTENDS TO USE THAT WITH

13    REGARD TO MR. CUE.

14              THE COURT:  LET ME --

15              MR. COUGHLIN:  NOT AT ALL.

16              THE COURT:  EVERYBODY SEEMS TO HAVE ACCESS TO

17    SOMETHING THAT I DON'T.

18        SO I HAVE THE -- I FOUND ONE THAT IS THE -- IS JUDGE KOH'S

19    OPINION.  WHICH OTHER DOCUMENTS ARE YOU TALKING ABOUT?

20              MS. DUNN:  JUDGE COTE.

21              THE COURT:  RIGHT.

22              MS. DUNN:  THAT'S SDNY.  WAS THE JUDGE IN *E-BOOKS*.

23    AND HER OPINION IN THAT CASE NUMEROUS TIMES SPEAKS TO THE

24    CREDIBILITY OF MR. CUE.  AND --

25              THE COURT:  OKAY.  BUT --
```

```
 1          MR. COUGHLIN:  AND I DON'T INTEND TO --

 2          THE COURT:  RIGHT.  CREDIBILITY DETERMINATIONS ARE --

 3   ARE OUT.  THEY'RE -- THEY CAN'T BE USED.  IF HE -- IF THIS --

 4   IF AN EXPERT -- BUT AN EXPERT CAN BE CROSS-EXAMINED ON THEIR

 5   WORK.  AND IF THEY GO IN ONE CASE AND TAKE ONE SET OF -- TAKE

 6   ONE SET OF POSITIONS AND THEN THE NEXT-HIGHEST BIDDER PAYS

 7   THEM FOR A SECOND SET OF OPINIONS, THEY GET TO BE

 8   CROSS-EXAMINED ON IT.  SO I DON'T UNDERSTAND WHAT THE ISSUE IS

 9   FROM YOUR PERSPECTIVE.

10          MS. DUNN:  WE AGREE WITH THAT, YOUR HONOR.  SO

11   THERE -- LET ME JUST DISAGGREGATE THIS A LITTLE.

12      DR. MURPHY IS OUR EXPERT, AND WE'VE ALL AGREED HE CAN BE

13   CROSS-EXAMINED BASED ON HIS PREVIOUS TESTIMONY AS YOU JUST

14   ARTICULATED.  BUT MY UNDERSTANDING IS YOU GRANTED THE MOTION

15   AS TO USING JUDICIAL COMMENTARY AND OPINIONS.

16          THE COURT:  RIGHT.

17                  (SIMULTANEOUS COLLOQUY.)

18          THE COURT:  WE'RE ALL ON THE SAME PAGE.

19          MS. DUNN:  WE'RE ON THE SAME PAGE ABOUT THAT, I

20   AGREE.

21      MR. CUE IS A DIFFERENT ISSUE.  HE IS NOT AN EXPERT.  HE IS

22   A WITNESS.  HE'S AN APPLE EMPLOYEE.  WHAT IT SOUNDED LIKE

23   PLAINTIFFS' COUNSEL WAS TALKING ABOUT WAS BRINGING UP PRIOR

24   ACTIVITY THAT WAS AT ISSUE IN THESE OTHER CASES.

25      AND YOUR HONOR HAD -- I THOUGHT HAD ALREADY GRANTED THE
```

1   MOTION AS TO NOT BRINGING UP THOSE PRIOR CASES.  AND SO I JUST

2   WANT TO BE CLEAR ABOUT WHAT WE'RE TALKING ABOUT.

3          **THE COURT:**  MY -- ALL RIGHT.  WHAT WAS MR. CUE

4   INVOLVED IN?  JUST *E-BOOKS* ONLY?

5          **MR. COUGHLIN:**  YES.  I THINK HE WAS NOT -- HE MIGHT

6   HAVE BEEN INVOLVED IN THE *HIGH-TECH*.  HE WAS NOT MENTIONED TO

7   MY KNOWLEDGE IN THE OPINION.  I -- I DON'T INTEND TO USE JUDGE

8   COTE'S -- ANY OF HER OPINIONS ABOUT HIS CREDIBILITY, AND SHE

9   HAD MANY, AT ALL WITH MR. CUE.

10          **THE COURT:**  WHAT IS THE CASE -- IS THERE --

11          **MR. COUGHLIN:**  YES, THERE'S A --

12          **THE COURT:**  -- A CASE NO. OR A FRD NUMBER OR SOME

13   KIND OF WESTLAW NUMBER WHERE I CAN READ HER OPINION?

14          **MR. COUGHLIN:**  YES.  I'LL GET THAT FOR YOU IN TWO

15   SECONDS, YOUR HONOR.

16                  (PAUSE IN THE PROCEEDINGS.)

17          **THE COURT:**  AND IS IT IN YOUR BRIEFING, 'CAUSE I ONLY

18   SAW THE ONE WITH RESPECT TO JUDGE KOH.  OH, WAIT.

19          **MS. DUNN:**  I BELIEVE IN THEIR OPPOSITION TO OUR MIL5.

20          **MR. COUGHLIN:**  IT'S --

21          **THE COURT:**  213 -- THE OCTOBER 4TH DECISION IN 2013?

22          **MR. COUGHLIN:**  YES, THAT'S IT, YOUR HONOR.  IT'S AT

23   THE BOTTOM OF PAGE -- I DON'T KNOW WHAT THE EF --

24          **THE COURT:**  ALL RIGHT.  I WILL READ THAT ONE.

25          **MR. COUGHLIN:**  JUST TO BE CLEAR, YOUR HONOR, THERE'S

1    NO -- THERE'S GOING TO BE NO ATTEMPT TO QUESTION MR. CUE ABOUT

2    JUDGE COTE'S OPINION OF HIS CREDIBILITY.  BUT IF -- FOR

3    EXAMPLE, IF HE TOOK SOME ACTION IN RELATION TO *E-BOOKS* AS AN

4    APPLE EMPLOYEE AND THE WAY HE DEALT WITH OTHERS, LIKE GIVING A

5    MOST FAVORED NATION CLAUSE OR DOING SOMETHING IN A CONTRACT, I

6    THINK WE GET TO ASK HIM ABOUT IT.  DOESN'T HAVE ANYTHING TO DO

7    WITH HER DECISIONS ABOUT HIS CREDIBILITY.  BUT IT HAS

8    EVERYTHING TO DO WITH WHAT HE DID PRIOR, AT A PRIOR TIME, AND

9    IT MAY OR MAY NOT BE -- MOVE INTO 404(B)-TYPE EVIDENCE.  WE

10   DON'T KNOW.

11        **THE COURT:**  WELL, WE HAVE TO -- WE HAVE TO HEAR FIRST

12   WHAT HE DID HERE.

13        **MR. COUGHLIN:**  THAT'S RIGHT.

14        **THE COURT:**  THAT -- THAT'S -- THAT'S THE QUESTION.

15   WHAT DID HE DO IN THIS CASE?  CAN SOMEBODY TELL ME WHAT HIS

16   ROLE IS AT APPLE?  JUST GIVE ME SOME UNDERSTANDING OF WHO THIS

17   PERSON IS.

18        **MR. COUGHLIN:**  YES, HE'S A SENIOR EXECUTIVE AT APPLE

19   THAT WAS INVOLVED IN NUMEROUS DECISIONS WITH REGARD TO THE

20   IPOD AT A HIGHER LEVEL -- ALBEIT AT A HIGHER LEVEL.  HE IS

21   COPIED ON PROBABLY 150 EMAILS WHEN THEY DISCUSS VARIOUS

22   SUBJECTS ABOUT -- ABOUT DEALING WITH THE PRODUCT, AND -- AND

23   HE RESPONDS TO SOME OF THOSE.

24        HE DIRECTS THAT CERTAIN ISSUES, SOME DEALING WITH

25   INTEROPERABILITY AND SOME DEALING WITH HACK FIXES AND THINGS

1   LIKE THAT, BE DIRECTED SOLELY THROUGH HIM AND SO THAT HE

2   FUNNELS THE EVIDENCE -- THE INFORMATION FROM DOWN BELOW AS

3   THERE'S CHATTER ABOUT IT ON -- HE WANTS IT GOING THROUGH HIM

4   BEFORE IT GOES OUTSIDE OF APPLE AND HOW THEY RESPOND TO

5   INQUIRIES ABOUT INTEROPERABILITY AND HACKS FIXES AND STUFF

6   LIKE THAT WITH THE VARIOUS MUSIC AND RECORD COMPANIES THAT ARE

7   INVOLVED.

8       SO HIS DEALING WITH THOSE COMPANIES, THOSE CONTRACTS.  THE

9   DRM, THE DIGITAL RIGHTS MANAGEMENT, IS A KEY -- IS GOING TO

10  BE --

11          THE COURT:  OKAY.  SO NOW, YOU SAID HE'S A SENIOR

12  EXECUTIVE AT APPLE.  I DON'T KNOW APPLE'S STRUCTURE.  IS THE

13  DIVISION THAT DEALS WITH THE IPOD THE EXACT SAME DIVISION THAT

14  DEALT WITH THE *E-BOOKS*?

15          MS. DUNN:  YOUR HONOR, PERHAPS I CAN HELP CLARIFY.

16  HE IS THE HEAD OF ITUNES.  HE'S IN CHARGE OF ITUNES, AND AS

17  FAR AS *E-BOOKS* GOES, HE WORKED ON NEGOTIATING CONTRACTS WITH

18  THE PUBLISHERS.

19              (PAUSE IN THE PROCEEDINGS.)

20          MR. COUGHLIN:  HE NEGOTIATED ALL THE LABEL CONTRACTS

21  HERE AND -- AND WAS INVOLVED IN RESPONSES TO REALNETWORKS, AND

22  HE WAS IN CHARGE, AS COUNSEL JUST SAID, OF ITUNES.

23          THE COURT:  SO HE NEGOTIATED THE CONTRACTS WITH THE

24  PUBLISHERS IN *E-BOOKS* AND NEGOTIATED THE CONTRACTS WITH THE --

25  WITH THE MUSIC LABELS.

1            **MR. COUGHLIN:**  HE WAS INVOLVED IN THOSE NEGOTIATIONS

2   YES, YOUR HONOR.

3            **THE COURT:**  WELL, DID HE NEGOTIATE THEM OR WAS HE

4   INVOLVED IN THEM?

5            **MR. COUGHLIN:**  I THINK HE WAS THE KEY PERSON IN THOSE

6   NEGOTIATIONS.

7            **THE COURT:**  DO YOU KNOW THE ANSWER?

8            **MS. DUNN:**  YOUR HONOR, AS TO THE RECORD LABELS OR THE

9   PUBLISHERS IN *E-BOOKS*?

10            **THE COURT:**  BOTH.

11            **MS. DUNN:**  OKAY.  SO MY UNDERSTANDING IS WITH REGARD

12   TO *E-BOOKS*, HE WAS THE KEY PERSON.  AND WITH REGARD TO THIS

13   CASE, HE WAS INVOLVED.  I DON'T KNOW IF THERE WERE OTHER

14   PEOPLE INVOLVED AS WELL, BUT HE CERTAINLY WAS INVOLVED,

15   ALTHOUGH I QUESTION WHETHER THIS IS -- IT'S A LITTLE BIT

16   APPLES AND ORANGES BECAUSE THE ISSUE OF THE CONTRACT

17   NEGOTIATION IN *E-BOOKS* WAS THE BASIS FOR LIABILITY.  THAT WAS

18   THE HEART OF THE CASE, WAS A CONSPIRACY SECTION ONE CASE.

19   HERE, NO ONE DISPUTES THAT THESE WERE NEGOTIATED CONTRACTS AND

20   THE -- THAT'S NOT THE SOURCE OF THE LIABILITY OR ANYTHING THAT

21   THE PLAINTIFFS HAVE EVER BROUGHT UP.

22        THE PLAINTIFFS ARE WORKING VERY HARD TO TRY TO GET THE

23   EXISTENCE OF THESE CASES INTO EVIDENCE AND OTHER PRIOR BAD

24   ACTS ABOUT MR. CUE, AND IT'S NOT PROPER.  IT IS HIGHLY

25   PREJUDICIAL.  IT WOULD BE VERY CONFUSING.  AND I THINK IT

1    WOULD BE HELPFUL IF THE PLAINTIFFS COULD SAY EXACTLY WHAT THEY

2    WISH TO PUT AT ISSUE, BECAUSE I FEEL AT THIS POINT, WE'RE SORT

3    OF, YOU KNOW, FIGHTING AGAINST A GHOST A LITTLE BIT.  I DON'T

4    KNOW -- I DON'T KNOW WHAT THEY INTEND.

5         **THE COURT:**  WAS HIS DEPOSITION TAKEN?

6         **MR. COUGHLIN:**  YES.

7         **THE COURT:**  WERE THESE ISSUES -- WERE THESE ISSUES

8    NOT EXPLORED IN DEPOSITION?

9         **MR. COUGHLIN:**  NO, THE ISSUES DEALING WITH THE

10   CONTRACTS WITH THE LABELS WAS EXPLORED.

11        **THE COURT:**  WHAT ABOUT HIS INTERRELATIONSHIP WITH THE

12   *E-BOOKS*, IF ANYTHING?  WAS THE *E-BOOKS* CASE EXPLORED WITH HIM?

13        **MR. COUGHLIN:**  THIS OPINION, I DON'T THINK -- I KNOW

14   IT WASN'T OUT.  THE *E-BOOKS* DECISION AND HIS ACTIVITIES IN

15   *E-BOOKS* I DON'T BELIEVE WAS OUT WHEN HIS DEPOSITION WAS TAKEN.

16        **THE COURT:**  ALL RIGHT.

17        **MS. DUNN:**  THAT SPEAKS TO OUR POINT, YOUR HONOR.

18   THESE CASES WELL POST-DATE ANY ACTIVITY IN THIS CASE.

19      WOULD YOU LIKE US TO HAND UP THESE CASES OR GET YOU A

20   LITTLE LATER TODAY WITH A LIST?

21        **THE COURT:**  IF YOU HAVE PRINTOUTS, I'LL TAKE THEM.

22        **MS. DUNN:**  THANK YOU.

23        **MR. COUGHLIN:**  AGAIN, YOUR HONOR, THE ACTIVITY, THE

24   DECISIONS POST DATE --

25        **THE COURT:**  I UNDERSTAND THE ISSUES NOW.

1          **MR. COUGHLIN:**  OKAY.

2          **THE COURT:**  WE CAN GIVE THIS BACK TO --

3          **MS. DUNN:**  BUT TO BE FAIR, ACTUALLY, THAT'S

4     INACCURATE.  THE DECISIONS DON'T JUST POST-DATE, ALL ACTIVITY

5     POST-DATES BECAUSE THE E-BOOK STORE DID NOT EVEN OPEN UNTIL

6     JANUARY OF 2010.

7                    (OFF-THE-RECORD DISCUSSION.)

8          **THE COURT:**  OKAY.

9          **MR. COUGHLIN:**  AND JUST A FINAL NOTE --

10         **THE COURT:**  AND THE BALANCE OF THAT MOTION IS TAKEN

11    UNDER SUBMISSION.

12        YES, GO AHEAD.

13         **MR. COUGHLIN:**  JUST A FINAL NOTE ON THAT, YOU KNOW,

14    IF THE ACTIVITY -- EVEN IF THE ACTIVITY FOLLOWS, THAT IF IT'S

15    THE SAME ACTIVITY AND SHEDS LIGHT ON THE PRIOR ACTIVITY, IT

16    WOULD COME IN UNDER 404(B).  IT DOESN'T HAVE TO BE -- OCCUR

17    BEFORE THE TIME TO SHOW THE INTENT AT AN EARLIER TIME.

18         **MS. DUNN:**  YOUR HONOR, INTENT IS ONLY RELEVANT TO

19    ATTEMPTED MONOPOLIZATION AND CANNOT BE PROVEN WITH ACTIONS IN

20    A CONSPIRACY CASE.

21        THE ONE THING HANGING OUT THERE ABOUT THIS MOTION, WHICH I

22    DON'T KNOW IF YOU WANT TO ADDRESS, IS THIS ISSUE OF THE HOUSE

23    OF REPRESENTATIVES HEARING THAT WE SAW APPEAR EARLIER WITH THE

24    EXHIBITS.

25         **MR. COUGHLIN:**  I THOUGHT WE AGREED NOT TO -- WE

1    WEREN'T GOING TO BE USING ANY OF THE THING (SIC) COMING FROM

2    THE HOUSE.  IT WOULD JUST BE -- IF IT CAME UP AT ALL, IT WOULD

3    BE A NOTICE ISSUE ABOUT CERTAIN -- CERTAIN -- A FACT THAT AN

4    INVESTIGATION MIGHT HAVE OCCURRED AND APPLE TOOK SOME ACTION

5    AT A CERTAIN POINT IN TIME, NOT THAT -- ANY STATEMENT BY ANY

6    CONGRESSMAN OR CONGRESSWOMAN.

7         **MS. DUNN:**  IF PLAINTIFFS ARE SUGGESTING THAT THEY

8    WON'T TRY TO USE THE STATEMENTS FROM THAT HOUSE HEARING, WE

9    WOULD WELCOME THAT.

10    THERE ARE TWO MARKED EXHIBITS.  ONE IS THIS NOT-OFFICIAL

11    TRANSCRIPT OF A HOUSE HEARING.  AND THEN THE SECOND EXHIBIT IS

12    AN EMAIL WITH AN ARTICLE ABOUT THAT HEARING TO WHICH STEVE

13    JOBS RESPONDS.  OBVIOUSLY, THOSE TWO PIECES OF EVIDENCE WOULD

14    BE TREATED DIFFERENTLY.

15    CERTAINLY THE FACT OF COMMENTING ON AN ARTICLE THAT

16    HAPPENS ALL THE TIMES -- TIME IN THESE DOCUMENTS IS VERY

17    DIFFERENT THAN A LEGISLATOR OPINING AS A POLICY MATTER ON

18    SOMETHING THAT HAS ALREADY BEEN RULED LEGAL BY THIS COURT.

19         **THE COURT:**  WELL, I DIDN'T UNDERSTAND THE LAST

20    STATEMENT, BUT --

21         **MR. COUGHLIN:**  YEAH.

22         **THE COURT:**  -- I'M JUST GOING TO LEAVE IT THERE.

23    LET'S MOVE ON.

24    SO QUERY WHETHER DEFENDANTS ARE GOING TO INTRODUCE

25    EVIDENCE PRAISING MR. JOBS FOR BEING A VISIONARY AND PIONEER

 1    IN THE INDUSTRY.

 2              **MS. DUNN:**  YOUR HONOR, I -- THUS FAR WE HAVE ONLY

 3    DISCUSSED EVIDENCE THAT SPEAK TO THE PRODUCTS AS BEING

 4    INNOVATIONS, AND CERTAINLY THEY WERE INNOVATIONS --

 5    EXTRAORDINARY INNOVATIONS IN THE INDUSTRY.  I THINK THERE

 6    ARE --

 7              **THE COURT:**  MY POINT IS -- LET ME JUST CUT TO THE

 8    CHASE.  THE POINT IS IF YOU PUT HIS CHARACTER INTO ISSUE, THEN

 9    THE DOOR IS OPENED.

10              **MS. DUNN:**  I UNDERSTAND THAT.

11              **THE COURT:**  SO --

12              **MS. DUNN:**  WE DON'T BELIEVE THAT THIS TRIAL IS ABOUT

13    STEVE JOBS OR HIS CHARACTER, WHETHER HE WAS A GOOD GUY OR BAD

14    GUY --

15              **THE COURT:**  VISIONARIES CAN BE GOOD GUYS AND BAD

16    GUYS.  THEY'RE -- VISIONARIES TAKE ALL TYPES.  THE QUESTION IS

17    WHETHER YOU PUT IT AT ISSUE.  SO IT'S NOT ALLOWED IN YOUR

18    CASE-IN-CHIEF IF THEY OPEN THE DOOR, IT'S AVAILABLE --

19              **MR. COUGHLIN:**  UNDERSTOOD, YOUR HONOR.

20              **MS. DUNN:**  UNDERSTOOD.

21                   (PAUSE IN THE PROCEEDINGS.)

22              **THE COURT:**  ALL RIGHT.  APPLE'S MOTION NO. 1.

23              **MR. ISAACSON:**  YES, YOUR HONOR.  WOULD YOU LIKE ME TO

24    ADDRESS THAT MOTION?

25              **THE COURT:**  I WOULD.

 1        **MR. ISAACSON:**  ALL RIGHT.  SO THIS MOTION IS

 2   ADDRESSED TOWARD SPECIFIC PARTS OF THE EXPERT REPORTS THAT

 3   WOULD ARGUE THAT WE SHOULD HAVE AIDED OUR COMPETITOR AND THAT

 4   INTEROPERABILITY IS SOMETHING THAT COULD BE ARGUED TO BE

 5   ANTICOMPETITIVE.

 6        THE NINTH CIRCUIT HAS NOT ONLY SAID THAT IT'S PERMISSIBLE

 7   UNDER THE ANTITRUST LAWS TO MAKE CHANGES THAT CREATE

 8   INCOMPATIBILITY.  THAT'S *FOREMOST*.  *FOREMOST* GOES ON TO SAY

 9   THAT AS A MATTER OF LAW --

10        **THE COURT:**  YOU KNOW WHAT?  I'M GOING TO INTERRUPT

11   YOU.  SORRY.

12        THE PLAINTIFFS AGREE WITH -- WITH THE GENERAL MOTION OF

13   LAW.  SO LET'S -- LET'S MOVE BEYOND THAT.  THERE IS NO DISPUTE

14   REGARDING THE GENERAL STATEMENT OF THE LAW.  THE QUESTION IS

15   WHETHER SPECIFIC FACTS OR SPECIFIC PORTIONS OF THE REPORT CAN

16   SERVE MULTIPLE PURPOSES, YOU INTERPRETING THEM ONE WAY AND THE

17   OTHER SIDE INTERPRETING THEM A DIFFERENT WAY.

18        THOSE KIND OF ISSUES ARE THE ONES THAT I -- THAT I HAVE TO

19   DEAL WITH.  SO, FRANKLY, RATHER THAN HAVING, YOU KNOW, A

20   STATEMENT REGARDING THE GENERAL AREA OF THE LAW, WHICH

21   EVERYBODY AGREES ON, I'D RATHER HAVE ARGUMENT REGARDING THE

22   VERY SPECIFIC ISSUES THAT THE COURT NEEDS TO DEAL WITH.

23        SO LET'S DO IT THAT WAY.

24        **MR. ISAACSON:**  HAPPY TO DO THAT, YOUR HONOR.

25        DO YOU WANT TO START WITH THE -- THE REPORT OF THE OPENING

REPORT OF DR. MARTIN.

          **THE COURT:**  ALL RIGHT.  THAT'S YOUR TAB 1.  THAT'S

WHERE WE'LL START.

          **MR. ISAACSON:**  YES.  AND THEN WE'VE HIGHLIGHTED FOR

YOU A SECTION OF HIS REPORT RUNNING FROM PARAGRAPHS 43 THROUGH

48.

          **THE COURT:**  OKAY.

          **MR. ISAACSON:**  ALL RIGHT.  AND IN THIS PART OF THE

REPORT, HE SAYS RIGHT AT THE OUTSET THAT MR. ROBBIN, THAT'S AN

APPLE EXECUTIVE, DISCUSSES THE POSSIBILITY THAT APPLE COULD

HAVE SHARED TECHNICAL INFORMATION WITH REALNETWORKS.

     AND HE GOES ON TO GIVE THE OPINION WHY THAT WOULD HAVE

BEEN BOTH FEASIBLE AND HELPFUL AND THAT THIS INFORMS HIS

OPINION AS TO WHY THIS IS NOT A LEGITIMATE PRODUCT INNOVATION.

HE SAYS, FOR EXAMPLE, IN PARAGRAPH 44, MY REVIEW OF THE

EMBEDDED KEYBAG ARCHITECTURE LEADS ME TO CONCLUDE THAT

DISCLOSING SUFFICIENT TECHNICAL INFORMATION TO REALNETWORKS IN

ORDER TO UPDATE HARMONY FOR ITUNES 4.7 SHOULD HAVE BEEN

POSSIBLE WITH LITTLE OR NO THREAT TO THE SECURITY OF

FAIRPLAY-ENCRYPTED SONGS.

     THE NINTH CIRCUIT NOT ONLY ADVISES AND THE SUPREME COURT

NOT ONLY ADVISES THAT WE HAVE NO DUTY UNDER THE ANTITRUST LAWS

TO DO THIS, BUT IF YOU GO DOWN THIS ROAD, YOU'RE PUTTING THE

COURT AND REALLY THE JURY IN THE POSITION OF CENTRAL PLANNERS

FOR TECHNOLOGICAL DEVELOPMENT.

1      THEY WANT TO -- THEY WANT TO SAY, WELL, WE CAN USE THIS

2  FOR SOME OTHER PURPOSE.  BUT THE CASES ARE CLEAR THAT THAT

3  PURPOSE IS INVALID UNDER THE ANTITRUST LAWS BECAUSE OUR --

4  THAT THESE TYPES OF ARGUMENTS ARE NOT SUPPOSED TO BE MADE.

5  BECAUSE THEN THE JURY SITS THERE AND WEIGHS HOW SHOULD WE HAVE

6  DESIGNED THIS.  SHOULD WE HAVE DONE SOMETHING DIFFERENTLY?

7  SHOULD WE HAVE SHARED INFORMATION?  HOW DO WE WEIGH THAT?  ALL

8  OF THAT IS EXPRESSLY FORBIDDEN BY THE NINTH CIRCUIT AND BY THE

9  SUPREME COURT.

10      **THE COURT:**  ALL RIGHT.  A RESPONSE.

11      **MS. SWEENEY:**  YOUR HONOR, I -- I THINK FIRST OF ALL,

12  MR. ISAACSON IS I THINK ADDRESSING TWO OF THE MOTIONS IN

13  LIMINE NOT JUST THE FIRST ONE.  THE FIRST MOTION IN LIMINE IS

14  DUTY TO AID.  AND WE AGREE UNDER THE -- AND WE'RE NOT

15  ASSERTING THAT APPLE HAD ANY DUTY TO AID ITS COMPETITORS.

16  ALSO I THINK HE'S REFERENCING APPLE'S MOTION IN LIMINE NO. 2,

17  WHICH IS LESS RESTRICTIVE ALTERNATIVES.  AND, IN FACT, IF YOU

18  LOOK AT THE HIGHLIGHTED TESTIMONY FOR MARTIN, APPLE MUSHED IT

19  TOGETHER, SO -- IT RELATES TO BOTH OF THOSE MOTIONS, SO I'M

20  GOING TO ADDRESS BOTH OF THOSE IN MY REMARKS.

21      SO FIRST OF ALL, WITH RESPECT TO DUTY TO AID, IT'S TRUE

22  THAT DR. MARTIN STARTS OUT BY SAYING APPLE COULD HAVE

23  ALLEVIATED SOME OF THESE PROBLEMS BY PROVIDING TECHNICAL

24  INFORMATION TO ITS COMPETITORS.

25      HOWEVER, IN THOSE PARAGRAPHS, DR. MARTIN IS NO. 1,

1    RESPONDING DIRECTLY TO APPLE'S OWN WITNESS, MR. ROBBIN, AS

2    WELL AS DR. KELLY IN -- IN A SUBSEQUENT REPORT.

3        BUT -- BUT MORE IMPORTANTLY, AND THIS IS TRUE FOR BOTH THE

4    DUTY TO AID AND THE LESS RESTRICTIVE ALTERNATIVE ARGUMENT THAT

5    APPLE MAKES, DR. MARTIN IS ASSESSING APPLE'S SUPPOSED FIX OF A

6    SUPPOSED PROBLEM.  AND HE'S SAYING, LOOK, THERE'S NO FIT

7    BETWEEN THE SUPPOSED PROBLEM, WHICH WAS THE INJECTION OF

8    FOREIGN CONTENT INTO THE IPOD, AND THE FIX.  THEY SAID THAT

9    THERE WAS CORRUPTION CAUSED BY THESE FILES THAT CAME FROM

10   SOURCES OTHER THAN ITUNES, BUT WHAT DID APPLE DO?  APPLE MADE

11   IT SO THAT CONSUMERS COULDN'T PLAY SONGS ON THEIR IPODS

12   WHETHER THEY WERE DRM RESTRICTED OR NOT.

13       SO THERE WAS NO FIT BETWEEN THE PURPORTED PROBLEM AND THE

14   FIX THAT APPLE IMPLEMENTED, AND THAT'S WHAT DR. MARTIN IS

15   TALKING ABOUT IN HIS REPORT IN ALL OF THOSE HIGHLIGHTED

16   PARAGRAPHS.  AND I'D JUST LIKE TO DRAW YOUR HONOR'S ATTENTION

17   TO THE NINTH CIRCUIT'S TWO DECISIONS IN THE KODAK CASE FIRST

18   BEFORE IT WENT UP TO THE SUPREME COURT IN 1990; AND SECOND,

19   WHEN IT CAME DOWN IN 1997.

20       AND IN BOTH OF THOSE DECISIONS, THE COURT TALKED ABOUT HOW

21   PRETEXT -- PRETEXT IS OBVIOUSLY AN ISSUE THAT PLAINTIFFS GET

22   TO RAISE IN THESE CASES.

23       GENUINE PRODUCT IMPROVEMENT, IT WASN'T A GENUINE PRODUCT

24   IMPROVEMENT.  WAS APPLE'S RESPONSE PURPORTED BUSINESS

25   JUSTIFICATION A PRETEXT?  AND IN -- IN THE 1997 DECISION --

1    AND THIS IS 125 F3D. 1 -- 195 AT 1212, THE COURT TALKS ABOUT

2    HOW -- HOW KODAK IS COMPLAINING, WELL, YOU LOOKED AT LESS --

3            **THE COURT:**  YOU KNOW, LOOK, WE HAVE A LOT TO DO.

4            **MS. SWEENEY:**  OKAY.  I'LL CUT IT SHORT.

5            **THE COURT:**  I CAN READ THE LAW.  I'VE READ THE LAW.

6    AND YOU'RE WASTING TIME.  I CUT OFF -- I CUT OFF MR. ISAACSON

7    BEFORE FOR THE SAME REASON.  WHAT I WANT TO DO IS FOCUS ON

8    ACTUALLY WHAT'S -- WHAT I'M BEING ASKED TO STRIKE AND REALLY

9    NOTHING ELSE.

10            **MS. SWEENEY:**  OKAY.

11            **THE COURT:**  SO AS I LOOK AT PARAGRAPH 43, WHAT

12    MR. MARTIN SAYS -- FIRST OF ALL, HE SAYS -- HE QUOTES OR HE --

13    I HAVEN'T COMPARED THEM, BUT HE SAYS THAT MR. ROBBIN, WHO'S

14    THE -- APPLE'S EXPERT --

15            **MR. ISAACSON:**  HE'S AN EXECUTIVE, YOUR HONOR.

16            **THE COURT:**  OR EXECUTIVE?  THANK YOU.

17            **MR. ISAACSON:**  YES.

18            **THE COURT:**  HE SAYS ON PAGE 15 TO 17 OF HIS

19    DECLARATION, ROBBIN DISCUSSES THE POSSIBILITY THAT THEY COULD

20    HAVE SHARED TECHNICAL INFORMATION.

21        OKAY.  SO HE'S NOT SAYING -- THAT IS, MARTIN'S NOT SAYING

22    THAT THEY COULD HAVE DONE IT.  HE'S RESPONDING OR HIS -- AT

23    LEAST IDENTIFYING SOMETHING THAT AN APPLE PERSON SAID.

24            **MR. ISAACSON:**  I UNDERSTAND THAT -- WITH REGARD TO

25    ANY MOTION IN LIMINE IF WE OPEN THE DOOR AT TRIAL, BUT

1    MR. ROBBIN'S NOT GOING TO BE SAYING THIS AT TRIAL.

2        SO THE ONLY ISSUE IS -- HERE IS WHETHER HE'S GOING TO GIVE

3    THESE -- THE OPINIONS HE'S GIVING AND HE'S GIVING THESE SAME

4    TYPE OF OPINIONS THROUGHOUT HIS REPORT.

5        **MS. SWEENEY:**  AND, YOUR HONOR, I WOULD JUST REPEAT

6    THAT ALL DR. MARTIN IS DOING HERE IS RESPONDING DIRECTLY TO

7    APPLE'S OWN WITNESSES OR HE'S TALKING ABOUT HOW --

8        **THE COURT:**  THE QUESTION IS IN LIGHT OF THE LAW, ARE

9    YOU GOING TO ASSERT THESE OPINIONS?  AND I HAVEN'T GONE

10    THROUGH -- AS I WAS WAITING TO HEAR WHAT YOU HAD TO SAY -- ARE

11    YOU GOING TO ASSERT THESE OPINIONS AS PART OF YOUR AFFIRMATIVE

12    CASE?  OR ARE YOU, IN LIGHT OF THE LAW, WAITING TO SEE IF

13    APPLE OPENS THE DOOR?

14        **MS. SWEENEY:**  WE'RE WAITING TO SEE IF APPLE OPENS THE

15    DOOR.

16        **THE COURT:**  OKAY.  THEN SEEMS TO ME WE DON'T HAVE AN

17    ISSUE.  SO THE RULING WOULD BE THAT IT IS GRANTED UNLESS THE

18    DOOR IS OPENED, BUT I NEED TO CROSS-CHECK WHETHER ALL OF THESE

19    PARAGRAPH REFERENCES ARE -- FALL INTO THAT CATEGORY.

20        AND DO THEY FALL INTO THAT CATEGORY OR NOT, MS. SWEENEY?

21        **MS. SWEENEY:**  THEY DO.  I -- I WOULD JUST LIKE TO BE

22    CAREFUL, THOUGH, TO -- SOME OF THESE -- THEY ALL START OUT --

23    DR. KELLY SAYS OR MR. ROBBIN SAYS BUT SOME OF THEM ALSO

24    ADDRESS THE SUBSTANTIVE ISSUE THAT I MENTIONED, WHICH IS THE

25    FIX DIDN'T REALLY ADDRESS THE PURPORTED PROBLEM.  AND I WANT

```
 1   TO MAKE SURE THAT THAT DOESN'T GET LOST IN THIS DISCUSSION.

 2             THE COURT:  SO --

 3             MS. SWEENEY:  LET ME FIND THAT.

 4             THE COURT:  -- IDENTIFY AND MAYBE WE HAVE TO -- MAYBE

 5   YOU HAVE TO TAKE A BREAK.  BUT IF -- IF THE NOTION IS THAT

 6   THERE -- IN LIGHT OF THE LAW, THE PLAINTIFF DOESN'T HAVE ANY

 7   INTENTION TO BRING UP IN ITS AFFIRMATIVE CASE THESE -- THESE

 8   OPINIONS WHICH ARE RESPONSIVE TO APPLE, THEN THEY'RE -- THEN

 9   THEY'RE EASILY EXCLUDED UNLESS THE DOOR IS OPENED, IN WHICH

10   CASE IT CAN BE REVISITED.

11      THE ISSUE WITH RESPECT TO WHETHER IT'S A GENUINE PRODUCT

12   IMPROVEMENT VERSUS A PRETEXT, THAT'S A DIFFERENT KIND OF

13   ISSUE, AND -- IN TERMS OF THE FACTS.

14             MR. ISAACSON:  RIGHT, BUT A LACK OF -- AN ABSENCE OF

15   SHARING TECHNICAL INFORMATION OR A LACK OF ASSISTANCE TO

16   COMPETITORS CANNOT BE USED TO SHOW PRETEXT.

17             THE COURT:  OKAY.  SO WHAT I NEED TO KNOW IS WHAT OF

18   THIS IS MERELY REBUTTAL AND WHAT IS IT THAT YOU'RE SEEKING --

19   IN THESE REPORTS THAT THEY ARE SEEKING TO STRIKE, WHAT IS IT

20   THAT YOU ARE SEEKING, MS. SWEENEY, TO -- TO PUT ON IN YOUR

21   CASE-IN-CHIEF?

22      HAVE YOU DONE A LINE-BY-LINE ANALYSIS?

23             MS. SWEENEY:  I WOULD HAVE TO DO THAT OVER THE BREAK,

24   YOUR HONOR.

25             THE COURT:  ALL RIGHT.  I THINK THE CONVERSATION WILL
```

1    BE MORE PRODUCTIVE IF I HAVE THAT, AND THAT WAY WE CAN FOCUS

2    ON -- ON THE VERY SPECIFIC PORTIONS OF THE REPORT THAT WOULD

3    BE EXCLUDED ABSENT A DOOR BEING OPENED.

4         **MR. ISAACSON:**  AND JUST TO HELP THE DISCUSSION LATER,

5    IT'S QUITE EASY FOR US TO SAY -- YOU KNOW, TO NOT USE THE WORD

6    (SIC) "SHARING TECHNICAL INFORMATION."

7       ONE OF THE REASONS, THOUGH, THAT THERE IS A RISK OF

8    CORRUPTION IS THAT THE THIRD PARTY LACKS OUR CODE, LACKS OUR

9    TECHNICAL INFORMATION.  AND WE HAVE TO HAVE THE ROOM TO SAY

10   THAT, THAT THEY DON'T HAVE THAT INFORMATION WITHOUT OPENING

11   THE DOOR BECAUSE IT'S A FACT.  THEY DON'T HAVE THAT

12   INFORMATION.  IT'S AN UNDISPUTED FACT.  THEY DON'T HAVE THAT

13   INFORMATION.

14      AND IT DOES -- AND AS A MATTER OF FACTUAL PREMISE, IT'S

15   TRUE THAT THAT INCREASES THE RISK OF CORRUPTION.

16        **THE COURT:**  ALL RIGHT.  WELL, I UNDERSTAND, BUT I DO

17   THINK THAT IT IS -- THAT IT'S A BETTER USE OF EVERYBODY'S TIME

18   TO DIG INTO THE SPECIFICS OF THIS.

19      OKAY.

20      THAT'S MOTION IN LIMINE NO. 2.  IS THAT RIGHT?

21        **MR. ISAACSON:**  YES, YOUR HONOR.

22        **THE COURT:**  ALL RIGHT.  SO THEN WHAT'S LEFT IS NO. 3.

23        **MR. ISAACSON:**  YES, YOUR HONOR.

24      NOW IF I CAN FOCUS YOU ABOUT WHAT THIS MOTION'S ABOUT,

25   WHICH IS PROBABLY BEST PUT AT PAGE 17 OF 24 IN THE -- IN THE

1   ECF ON OUR MOTIONS AT THE TOP, AND I WOULD POINT YOU TO TWO

2   SPECIFIC STATEMENTS THERE.

3       ONE IS IN THE MIDDLE, DR. NOLL SAYING THAT THE RELEVANT

4   ISSUE REFERRING TO THIS CASE IS --

5           **THE COURT:**  WHAT LINE -- WHAT LINE ARE YOU AT?

6           **MR. ISAACSON:**  I'M AT LINE 18 AND 19.

7           **THE COURT:**  OKAY.  GO AHEAD.

8           **MR. ISAACSON:**  THE RELEVANT ISSUE IS WHETHER FORCING

9   CONSUMERS TO BUY EITHER ALL OR NO COMPLEMENTARY PRODUCTS FROM

10  APPLE IS A REASONABLE RESTRICTION ON COMPETITION.  THERE'S A

11  SIMILAR STATEMENT FROM PLAINTIFF'S COUNSEL, MS. SWEENEY, AT

12  LINES 3 AND 4.  THIS CASE IS ABOUT APPLE LOCKING OUT ALL

13  RIVALS BY VIRTUE OF ITS LACK OF INTEROPERABILITY.

14      SO, THE -- THE REASON FOR THIS MOTION WAS THE CONCERN THAT

15  THERE WAS GOING TO BE EXPERT TESTIMONY AND SUPPORTING ARGUMENT

16  THAT SAYS, TO -- THAT TELLS THE JURY THAT THIS CASE IS ABOUT

17  SOMETHING THAT IT CAN'T BE ABOUT.

18      AND JUST LOOKING AT JUDGE WARE'S DECISION -- I MEAN, THIS

19  WHOLE CASE IS GOING TO TRIAL BASED ON PAGE 12 OF HIS DECISION

20  WHICH RUNS OVER A LITTLE BIT ON TO PAGE 13, AND THAT'S PAGE --

21  OF HIS -- OF HIS DECISION ON SUMMARY JUDGMENT, DOCUMENT 627.

22      AND HE SAYS AFTER SUMMARIZING THE EVIDENCE FROM DR. MARTIN

23  IN LIGHT OF THE PARTIES' CONFLICTING EVIDENCE, THE COURT FINDS

24  THAT IT'S UNABLE TO DETERMINE AS A MATTER OF LAW THAT ITUNES

25  7.0 WAS INTRODUCED TO GUARD AGAINST THE RISK OF CORRUPTION AND

1    WAS THEREFORE A GENUINE PRODUCT IMPROVEMENT.

2        HE -- HE FOCUSED THE ISSUE ON WHETHER THIS PRODUCT

3    GENUINELY HELPED STOP CORRUPTION OR NOT.  HE DIDN'T PUT IT ON

4    WHAT THEY ARE SAYING THE WHOLE CASE IS ABOUT, BOTH IN OPEN

5    COURT AND IN THE EXPERT REPORTS, ABOUT INTEROPERABILITY, WHICH

6    JUDGE WARE UNDER THE LAW OF THE CASE SAID WAS LEGAL.

7            **THE COURT:**  WELL, HE SAID 4.7 WAS LEGAL.

8            **MR. ISAACSON:**  HE ALSO IN TERMS OF THE -- AND THE

9    TYING -- IN THE TYING DECISION, HE ALSO SAID THAT HAVING AN

10   INTEROPERABLE ITUNES AND IPOD SYSTEM WAS PERFECTLY LEGAL.  AND

11   IN HIS ULTIMATE DECISION ABOUT WHAT SHOULD GO TO TRIAL, IT'S

12   IS THIS A GENUINE PRODUCT IMPROVEMENT BASED ON THE ISSUE OF

13   CORRUPTION.

14           **THE COURT:**  OKAY.

15       RESPONSE.

16           **MS. SWEENEY:**  YES, YOUR HONOR.  WELL, TWO THINGS,

17   FIRST OF ALL, THROUGHOUT ITS JURY INSTRUCTIONS AND ITS MOTIONS

18   IN LIMINE, APPLE REPEATS A MYTH, WHICH IS THAT JUDGE WARE HELD

19   THAT FOR ALL PURPOSES AND IN ALL CIRCUMSTANCES, APPLE'S

20   INTEGRATED PLATFORM APPROACH IS LAWFUL.

21       WHAT JUDGE WARE HELD IS THAT ITS INTEGRATED APPROACH WAS

22   LAWFUL UNDER THE CIRCUMSTANCES AND -- AND JUDGE WARE HIMSELF

23   SAID THAT APPLE'S INTEGRATED APPROACH BY ITSELF DOES NOT

24   CONSTITUTE ANTICOMPETITIVE CONDUCT.

25           **THE COURT:**  RIGHT, SO -- SO YOU'RE SUGGESTING THAT --

1    THAT CHANGES WITH THE INTRODUCTION OF 7.0?

2            **MS. SWEENEY:**  I'M SAYING, YOUR HONOR, THAT JUDGE WARE

3    RECOGNIZED THAT ON CERTAIN -- UNDER CERTAIN CIRCUMSTANCES, THE

4    INTEGRATED APPROACH COULD BE UNLAWFUL.  THE WHOLE CASE --

5            **THE COURT:**  YEAH, BUT HOLD ON.

6            **MS. SWEENEY:**  YEAH.

7            **THE COURT:**  THIS IS AN IMPORTANT POINT.  YES, THERE

8    ARE MANY CASES OUT THERE.  THERE ARE MANY ANTITRUST CASES.  HE

9    PRESIDED OVER MANY OF THEM.  I DON'T READ THAT STATEMENT TO

10    SUGGEST THAT HE'S SAYING THAT IN THIS CASE, THE CHANGE FROM

11    FOUR-POINT -- 4.7 TO 7.0 PUT BACK INTO ISSUE THE PLATFORM,

12    THAT -- THE INTEGRATED PLATFORM.

13            **MS. SWEENEY:**  THE --

14            **THE COURT:**  IS THAT HOW YOU READ IT?

15            **MS. SWEENEY:**  IT'S IMPOSSIBLE FOR PROFESSOR NOLL TO

16    TALK ABOUT THE LOCK-IN, THE --

17            **THE COURT:**  JUST ANSWER MY QUESTION.

18            **MS. SWEENEY:**  NO, THAT'S NOT HOW I READ IT, YOUR

19    HONOR, AND PERHAPS I WAS NOT VERY CLEAR, BUT I JUST DON'T WANT

20    TO LEAVE THE COURT WITH THE IMPRESSION THAT WE AGREE WITH

21    APPLE WHEN IT SAYS THAT AN INTEGRATED APPROACH IS LEGAL UNDER

22    ALL CIRCUMSTANCES.  AND *ALLIED ORTHOPEDIC* --

23            **THE COURT:**  WHAT I NEED TO KNOW IS WHETHER YOU'RE

24    GOING TO ARGUE OR WANT TO ARGUE TO THE JURY THAT AN INTEGRATED

25    APPROACH IN THIS CASE WITH THIS UPGRADE IS -- AND JUST THAT

1    ISSUE, JUST THAT ISSUE, OF INTEGRATION, WHETHER THAT IS

2    ILLEGAL CONDUCT.

3         **MS. SWEENEY:**  NO, YOUR HONOR.  BUT WE ARE GOING TO

4    ARGUE AND PROFESSOR NOLL IS GOING TO TESTIFY ABOUT THE LOCK-IN

5    EFFECT, AND YOU CAN'T TALK ABOUT LOCK-IN WITHOUT TALKING ABOUT

6    INCOMPATIBILITY.

7       IT'S ONE THING TO HAVE A FULLY INTEGRATED APPROACH, AS

8    APPLE HAS DONE, AND IT'S ANOTHER THING TO BLOCK

9    INTEROPERABILITY BY WOULD-BE COMPETITORS.  THAT'S WHAT THIS

10   WHOLE CASE IS ABOUT.  AND APPLE'S MOTION IS SO OVERBROAD THAT

11   IT WOULD PREVENT US FROM PUTTING ON OUR CASE.

12      YOU CAN'T UNDERSTAND PLAINTIFF'S CASE WITHOUT TALKING

13   ABOUT THE FACT THAT APPLE'S INTEGRATED SYSTEM MADE IT

14   INCOMPATIBLE -- MADE THE IPOD INCOMPATIBLE WITH MUSIC FROM

15   OTHER SOURCES.  AND THAT'S WHAT THIS MOTION, IF GRANTED IN ITS

16   ENTIRETY, WOULD PREVENT PLAINTIFFS FROM DOING, SO --

17        **MR. ISAACSON:**  YOUR HONOR, MAY I SAY SOMETHING?

18        **THE COURT:**  YOU MAY.

19        **MR. ISAACSON:**  LET'S BE CLEAR ON WHAT'S HAPPENING

20   HERE.  JUDGE WARE BUT ALSO THE NINTH CIRCUIT HAS SAID VERBATIM

21   THAT INCOMPATIBILITY IS NOT ONLY NOT ANTICOMPETITIVE, IT'S

22   PRO-COMPETITIVE.  AND THEY ARE SAYING THAT THEIR EXPERT WANTS

23   TO GET ON THE STAND AND TESTIFY THAT CAUSING INCOMPATIBILITY

24   CAUSED LOCK-IN AND CAUSED THE DAMAGES HERE.

25      THAT IS PRECISELY CONTRARY TO THE LAW OF THE CASE AND TO

```
 1    THE LAW OF THE NINTH CIRCUIT AND TO THE SUPREME COURT

 2    DECISIONS.  AND --

 3          THE COURT:  MR. ISAACSON, DO YOU HAVE THE LIST FOR ME

 4    OF THE PARAGRAPHS IN NOLL'S REPORT WHERE HE SAYS THIS?

 5          MR. ISAACSON:  YES.

 6          THE COURT:  AND WHICH DOCKET IS THAT?

 7          MR. ISAACSON:  THIS WOULD BE TAB -- STARTING AT TAB

 8    3.

 9          THE COURT:  WELL, MY TAB 3 HAS HIS REPORT, BUT

10    UNLIKE -- HOLD ON.

11          MR. ISAACSON:  RIGHT.  AND WE'VE HIGHLIGHTED IT EVEN

12    THOUGH IT DOESN'T HAVE --

13          THE COURT:  OH, I SEE.  OKAY.

14          MR. ISAACSON:  -- PRODUCT -- PARAGRAPH NUMBERS.

15          THE COURT:  SO WE'RE TALKING ABOUT PARAGRAPHS -- OR

16    PAGES 64 TO 68, 63, AND THEN TAB 4 AS WELL?

17          MR. ISAACSON:  YES, 'CAUSE THAT'S HIS REBUTTAL

18    DECLARATION.

19          THE COURT:  WELL, SEE, THIS IS WHY I MAKE TENTATIVE

20    RULINGS.  THE MORE YOU LEARN ABOUT THE CASE, THE MORE YOU

21    LEARN WHAT YOU HAVE TO DO.

22       OKAY.  LET'S LOOK AT PAGE 64.

23          MS. SWEENEY:  AND, AGAIN, YOUR HONOR, THE

24    HIGHLIGHTING HERE REFLECTS ALL THREE OF APPLE'S FIRST MOTIONS

25    IN LIMINE.  SO IT'S NOT CLEAR TO ME WHICH PORTIONS OF THE
```

1    HIGHLIGHTED OPINION IS -- IS RELEVANT TO THIS PARTICULAR

2    MOTION.

3                **MR. ISAACSON:**  WE'VE SPECIFIED IT, BUT THERE IS

4    DEFINITELY GOING TO BE OVERLAP AMONGST THE MOTIONS AT THIS

5    POINT, YOUR HONOR.  I MEAN, WE HAVE SPECIFIED WITH RESPECT TO

6    MOTION IN LIMINE NO. 3 PAGES 64 THROUGH 68 OF HIS REPORT WHERE

7    YOU CAN SEE HE IS TALKING ABOUT OUR JUSTIFICATION OF

8    TECHNOLOGICAL INCOMPATIBILITY.  THAT'S RIGHT AT THE TOP OF

9    PAGE 64.  ALL RIGHT?

10    AND HE WANTS TO TAKE ON AND SAY THAT TECHNOLOGICAL

11    INCOMPATIBILITY IS NOT A LEGITIMATE PRODUCT QUALITY

12    JUSTIFICATION WHEN THE NINTH CIRCUIT HAS SAID EXACTLY THE

13    OPPOSITE.  NOW, HE MAY DISAGREE WITH THE NINTH CIRCUIT, BUT --

14    AND HE MAY DISAGREE WITH JUDGE WARE, BUT THAT IS FOR THE

15    ECONOMICS JOURNALS AND NOT FOR THE JURY.

16    HE -- FOR EXAMPLE, HE CONTINUES ON PAGE 66.  HE'S

17    EXPRESSLY TALKING ABOUT INCOMPATIBILITY AND INTEGRATION.  THE

18    ANALYSIS OF BUSINESS JUSTIFICATION MUST ADDRESS WHETHER

19    CONSUMERS ARE HARMED BY THE OPPORTUNITY TO DEAL WITH MULTIPLE

20    VENDORS FOR EACH PRODUCT RATHER THAN ONLY FOR THE GROUP OF

21    PRODUCTS AND WHETHER THE OPPORTUNITY FOR CHOICE AMONG VENDORS

22    OR PRODUCTS IN EACH RELEVANT MARKET OFFSETS THE BENEFITS.

23    DR. NOLL HAS THE OPINION THAT INTEGRATED PRODUCTS ARE --

24    ARE NOT PRO-COMPETITIVE.  AND HE WANTS TO GIVE -- GIVE THOSE

25    OPINIONS TO THE JURY.

1           **THE COURT:**  RESPONSE.

2           **MS. SWEENEY:**  YEAH, WHAT PROFESSOR NOLL SAYS AND HE

3   SAYS IT HERE IN PAGE -- ON PAGE 66, HE SAYS, SURE, APPLE CAN

4   DEVELOP ITS INTEGRATED PLATFORM APPROACH.  LOTS OF COMPANIES

5   DO THAT.  APPLE CAN SAY, CUSTOMERS, BECAUSE WE MAKE THE -- ALL

6   THREE OF -- COMPONENTS OF THIS INTEGRATED SYSTEM, IF YOU BUY

7   ONLY OUR PRODUCTS, YOU WILL BENEFIT BECAUSE IT'S THE SEAMLESS

8   TRANSITION FROM ONE COMPONENT TO THE NEXT COMPONENT.

9           AND SURELY, IF THAT WAS THE BEST RESULT, THAT WOULD HAVE

10  SOLD.  BUT APPLE MADE ITS PRODUCTS INCOMPATIBLE AND BLOCKED

11  COMPETITORS LIKE REALNETWORKS FROM MAKING THEIR SONGS PLAYABLE

12  ON THE IPOD.  AND IT'S HARD FOR ME TO UNDERSTAND HOW WHAT

13  PROFESSOR NOLL SAYS HERE ABOUT THAT, WHICH IS CONSUMERS LIKE

14  CHOICE, HOW DOES THAT -- HOW -- WHY SHOULD THAT BE BARRED

15  UNDER JUDGE WARE'S RULING THAT AN INTEGRATED SYSTEM IN AND OF

16  ITSELF IS NOT ANTICOMPETITIVE?

17          **THE COURT:**  WELL, IT'S NOT FOR HIM TO SAY.

18          **MR. ISAACSON:**  IT'S ALSO, JUDGE --

19          **THE COURT:**  THAT IS, HE SAYS ON PAGE 68, THE

20  EXPERIENCES WITH CONSUMER ELECTRONICS OVER THE LAST DECADE DO

21  NOT SUPPORT THE CONCLUSION THAT INTEGRATED SYSTEMS ARE BETTER.

22  THAT'S HIS OPINION.  BUT IT SUGGESTS THAT -- THE PROBLEM IS,

23  IS THAT IT SUGGESTS THAT IT'S ILLEGAL.

24          **MS. SWEENEY:**  I DON'T THINK THAT'S TRUE AT ALL, YOUR

25  HONOR.  I THINK PROFESSOR NOLL IS ENTITLED TO OFFER HIS

1    OPINION AS AN ECONOMIST.  THEY HAVE PROFESSOR MURPHY, THEIR

2    ECONOMIST, GIVING PAGES AND PAGES OF OPINION IN HIS REPORT AS

3    TO THE PRO-COMPETITIVE ADVANTAGES OF AN INTEGRATED SYSTEM AND

4    NOT JUST AN INTEGRATED SYSTEM BUT AN INTEGRATED SYSTEM PLUS

5    INCOMPATIBILITY, THE SO-CALLED WALLED GARDEN APPROACH.

6         PROFESSOR NOLL IS --

7              **THE COURT:**  BUT -- BUT AS AN AFFIRMATIVE OPINION OR

8    AS A REBUTTAL TO NOLL?

9              **MS. SWEENEY:**  IT'S AN AFFIRMATIVE OPINION, YOUR

10   HONOR.

11             **THE COURT:**  YOU'RE --

12             **MR. ISAACSON:**  WELL, IT -- WE HAVE TO BE PREPARED TO

13   HANDLE THE WHOLE CASE DEPENDING ON THE OUTCOMES OF RULINGS.

14        SO YES, DR. MURPHY AGREES WITH THE NINTH CIRCUIT, AND HE

15   AGREES WITH JUDGE WARE'S OPINION THAT AN INTEGRATED SYSTEM IS

16   PRO-COMPETITIVE.  AND IF NECESSARY, HE IS PREPARED TO SAY

17   THAT.

18        BUT DR. NOLL IS -- THIS ISN'T JUST A MATTER OF SUGGESTING

19   ILLEGALITY.  THIS IS HIS ANTITRUST OPINION THAT HE HAS GIVEN,

20   AND HE WANTS -- AND HE WANTS TO, BASED ON HIS VIEW OF THE

21   ECONOMIC LITERATURE, SAY THAT AN INTEGRATED SYSTEM IS NOT

22   COMPETITIVE.

23        IT -- I MEAN, AT TAB 4 WHEN HE WINDS IT ALL UP WITH HIS

24   CONCLUSION -- AND THIS IS THE LANGUAGE I POINTED TO, YOUR

25   HONOR.  THIS IS AT PAGE 13 OF HIS REPLY REPORT.  HE SAYS -- HE

```
1    HAS A SYSTEM (SIC), SUPERIORITY OF CLOSED SYSTEMS, A SECTION.

2    AND HE SAYS AT THE END OF THE FIRST PARAGRAPH, WHAT I READ TO

3    YOU BEFORE, THE RELEVANT ISSUE IS NOT WHETHER APPLE IS CORRECT

4    IN ITS BELIEF ABOUT THE SUPERIORITY OF ALL THINGS APPLE BUT

5    WHETHER FORCING CONSUMERS TO BUY EITHER ALL OR NO

6    COMPLEMENTARY PRODUCTS FROM APPLE IS A REASONABLE RESTRICTION

7    ON COMPETITION.  IN THE ABSENCE OF ACTIONS TO DISABLE THE USE

8    OF COMPETING PRODUCTS, CONSUMERS CAN JUDGE FOR THEMSELVES

9    WHETHER APPLE'S WALLED GARDEN IS SUPERIOR RATHER THAN DELEGATE

10   THIS EVALUATION TO APPLE.

11       AND THE COURTS IN THE ANTITRUST LAWS DO DELEGATE THAT

12   UNILATERAL DECISION TO APPLE.  THE COURTS SAY, WE ARE NOT

13   TAMPERING WITH THOSE UNILATERAL DECISIONS, AND THAT DECISION

14   IS PRO-COMPETITIVE BECAUSE SOMEBODY ELSE CAN DECIDE TO DO IT

15   DIFFERENTLY.

16       THEY WANT TO TRY A CASE WITH DR. NOLL TO HAVE HIM DISAGREE

17   WITH THE LAW.  AND THAT SHOULD NOT BE PERMITTED.

18            THE COURT:  RESPONSE?

19            MS. SWEENEY:  JUDGE WARE RULED THAT APPLE HAD NOT

20   SUFFICIENTLY SHOWN THAT 7.0 AND 7.4 WERE PRODUCT IMPROVEMENTS.

21   NOW WHAT DID THEY DO?  7.0 AND 7.4 BROKE COMPATIBILITY.  THEY

22   BROKE COMPATIBILITY BETWEEN APPLE'S INTEGRATED SYSTEM AND

23   MUSIC THAT CAME FROM ANOTHER SOURCE, SO JUDGE WARE HIMSELF HAS

24   RULED -- AND THIS IS THE OPINION ON WHICH MR. ISAACSON IS

25   RELYING ON HEAVILY.  JUDGE WARE HAS RULED THAT IT'S A FACT
```

```
 1   QUESTION AS TO WHETHER THIS WAS ANTICOMPETITIVE CONDUCT.

 2        PROFESSOR NOLL'S OPINION GOES TO THE QUESTION OF

 3   WHETHER --

 4        THE COURT:  WELL, BUT -- THE PROBLEM IS, IS IT GOES

 5   BEYOND THAT.

 6        IF I LOOK AT PARAGRAPH -- PAGE 13 AND 14, THE SECTION IS

 7   ON -- GENERICALLY ON CLOSED SYSTEMS, PERIOD.  IT DOESN'T

 8   INVOLVE THIS SPECIFIC -- THIS SPECIFIC PRODUCT CHANGE IN THIS

 9   SPECIFIC PRODUCT.

10        IT'S SAYING IN GENERAL, CLOSED SYSTEMS ARE BAD.  PERIOD.

11   END OF STORY.  THAT'S WHAT HE'S SAYING.

12        MS. SWEENEY:  PROFESSOR NOLL IS GIVING HIS ECONOMIC

13   OPINION THAT -- I MEAN, WHEN WE TALK ABOUT AN INTEGRATED

14   SYSTEM, HE'S NOT SAYING APPLE'S INTEGRATED SYSTEM IS NOT

15   PRO-COMPETITIVE.  HE'S SAYING YOU CAN MAKE AN INTEGRATED

16   SYSTEM AND YOU SELL IT TO YOUR CUSTOMERS AND THOSE CUSTOMERS

17   WILL CHOOSE WITH THEIR DOLLARS.  IF THEY LIKE IT BETTER, THEY

18   WILL BUY IT.  BUT THAT'S NOT WHAT APPLE DID.  APPLE TOOK

19   AFFIRMATIVE STEPS TO BLOCK COMPATIBILITY --

20                  (SIMULTANEOUS COLLOQUY.)

21        THE COURT:  THAT'S NOT WHAT HE'S SAYING HERE.  THAT'S

22   NOT WHAT HE'S SAYING.

23        MS. SWEENEY:  AT THE BOTTOM OF --

24        THE COURT:  HE'S MAKING A GENERIC STATEMENT ABOUT

25   INTEGRATED SYSTEMS.
```

 1          ALL RIGHT.  SO WHAT'S THE EFFECT IF I GRANT THE MOTION ON

 2    HIS REPORT?  AND WHAT'S THE EFFECT ON THE COUNTER-MOTIONS IF

 3    GRANTED?  I MEAN, ON THE -- ON THE OTHER REPORTS?  THE --

 4    APPLE'S REPORTS, WHAT PORTIONS OF YOUR REPORTS COME OUT AND

 5    ARE NO LONGER RELEVANT?

 6          DO YOU KNOW THE ANSWER TO THAT?

 7               **MR. ISAACSON:**  I DON'T KNOW THE ANSWER TO THAT.

 8               **THE COURT:**  ALL RIGHT.  I'M GOING TO NEED THE ANSWER

 9    TO THAT QUESTION.

10          SO WHAT HAPPENS TO HIS ANALYSIS IF THE MOTION'S GRANTED?

11               **MS. SWEENEY:**  YOUR HONOR, IN OUR -- IN OUR OPPOSITION

12    TO APPLE'S MOTIONS, WE HIGHLIGHTED FOR YOUR HONOR THOSE

13    PORTIONS OF APPLE'S EXPERTS' OPINIONS THAT WOULD HAVE TO BE

14    EXCLUDED IF YOUR HONOR EXCLUDES THOSE PORTIONS OF PROFESSOR

15    NOLL'S OPINIONS.

16               **THE COURT:**  I'M GOING TO WANT A RESPONSE FROM APPLE

17    ON THOSE SPECIFIC PARAGRAPHS.

18          OKAY.  CAN YOU RESPOND?

19               **MS. SWEENEY:**  I THINK IT UNFAIRLY PREJUDICES

20    PLAINTIFFS' ABILITY TO PUT ON THEIR CASE.  OUR WHOLE CASE IS

21    ABOUT INCOMPATIBILITY.  AND YOU'RE TYING PROFESSOR NOLL'S

22    HANDS BEHIND HIS BACK IF HE CAN'T TALK ABOUT HIS OPINIONS AS

23    AN ECONOMIST WITH SEVERAL DECADES OF EXPERIENCE INTO HOW

24    INTEGRATED SYSTEMS WORK.

25               **THE COURT:**  YEAH, THE PROBLEM THAT I HAVE WITH HIS

1    OPINION IS IT'S OVERBREADTH IN LIGHT OF THE NINTH CIRCUIT

2    AUTHORITY.  I WILL GO BACK AND READ IT.  I WILL GO BACK AND

3    LOOK MORE CLOSELY, BUT I THINK THAT HE DISAGREES WITH THE

4    NINTH CIRCUIT, AND THAT MAY BE THE CASE.  WHEN YOU TAKE THIS

5    UP ON APPEAL, THEY CAN REVIEW IT AGAIN AND SEE IF HE'S RIGHT

6    OR NOT.

7         BUT IT DOES SEEM TO ME FROM MY READ THAT HE IS MAKING A

8    VERY BROAD STATEMENT THAT ALL INTEGRATED SYSTEMS ARE NOT GOOD

9    FOR COMPETITION.  AND THAT'S -- AND THAT IS AN OPINION THAT --

10   IT'S -- IT'S STILL NOT -- YOU KNOW, I STILL HAVE TO FIGURE OUT

11   HOW IT -- YOU KNOW, HOW IT SO UNDULY PREJUDICES YOUR ABILITY

12   TO PRESENT THE REST OF YOUR CASE.

13        BUT I'M HAVING A HARD TIME UNDERSTANDING HOW I CAN ALLOW

14   HIM TO MAKE THAT BROAD-SWEEPING STATEMENT IN LIGHT OF CASE

15   AUTHORITY.

16        DO YOU WANT TO ADD ANYTHING?

17            **MS. SWEENEY:**  WELL, I GUESS, WE -- WE WOULD LIKE SOME

18   SORT OF CLARIFICATION FROM -- FROM APPLE AS TO WHICH PORTIONS

19   OF THE HIGHLIGHTED PARTS OF HIS TESTIMONY GO TO WHICH OF ITS

20   MOTIONS.  AND THEN WE CAN ADDRESS MORE SPECIFICALLY YOUR

21   HONOR'S QUESTIONS.

22            **THE COURT:**  I'LL LET YOU CHEW ON THAT.  WE'LL BE

23   MEETING FREQUENTLY, SO -- OKAY.

24            **MS. SWEENEY:**  THANK YOU, YOUR HONOR.

25            **THE COURT:**  I THINK THOSE ARE ALL THE MOTIONS,

```
 1    CORRECT?

 2              MR. ISAACSON:  YES, YOUR HONOR.  I -- LET ME

 3    DOUBLE-CHECK.  I BELIEVE THAT'S CORRECT.  OTHERS AGREE WITH

 4    ME.

 5              THE COURT:  WITH RESPECT TO -- I DON'T HAVE IN MY

 6    TRIAL BINDER YOUR STIPULATION OF FACTS.  SOMEBODY HAVE A

 7    DOCKET NUMBER FOR THAT AND HAS IT BEEN --

 8              MR. ISAACSON:  IT'S IN THE JOINT PRETRIAL STATEMENT.

 9              MS. SWEENEY:  OH, THAT'S RIGHT.

10              THE COURT:  OKAY.  HAS IT BEEN PUT INTO THE -- SINCE

11    IT'S GOING INTO THE JURY ROOM, HAS IT BEEN PUT INTO THE FORM

12    OF AN EXHIBIT AND PUT ON AN EXHIBIT LIST?

13              MR. ISAACSON:  I DON'T THINK SO.  WE WOULD NEED TO DO

14    THAT.

15              THE COURT:  OKAY.

16              MS. SWEENEY:  BUT, YOUR HONOR, I THINK THAT'S THE ONE

17    THAT WE AGREED THAT WE WOULD HAVE READ TO THE JURY INSTEAD OF

18    GOING INTO THE DELIBERATION ROOM.

19              MR. ISAACSON:  THAT'S FINE.  PROBABLY EASY TO READ IF

20    WE PUT IT IN A SEPARATE DOCUMENT.

21              MS. SWEENEY:  CORRECT.  I AGREE.

22                   (PAUSE IN THE PROCEEDINGS.)

23              THE COURT:  OKAY.  SO THEN ARE YOU TALKING ABOUT --

24    I'M LOOKING AT DOCUMENT 823, WHICH IS THE JOINT PRETRIAL

25    CONFERENCE STATEMENT, AND THIS -- THESE ARE THE FACTS
```

```
 1   BEGINNING AT LINE 19 OF PAGE 7?
 2            MR. ISAACSON:  OR PAGE 9 AT THE TOP, YES.
 3            THE COURT:  9 OF 22, YES.  AND THEN EXTENDING THROUGH
 4   LINE 5 ON PAGE 11 OF 22?  IS THAT RIGHT?  THAT'S WHAT YOU WANT
 5   ME TO READ TO THE JURY?
 6            MR. ISAACSON:  YES.  YES, YOUR HONOR.
 7            MS. SWEENEY:  YES, YOUR HONOR.
 8            THE COURT:  OKAY.  SO WHY DON'T YOU PULL THOSE OUT
 9   AND FILE THEM AS A SEPARATE DOCUMENT.  AND IN LIGHT OF TODAY'S
10   CONVERSATIONS, THERE MAY BE ONE OR TWO MORE THINGS THAT YOU
11   WANT TO ADD, I THINK, IF I REMEMBER.  SO CHECK YOUR NOTES AND
12   SEE IF THAT NEEDS TO BE AMENDED AT ALL.
13            MS. SWEENEY:  OKAY.
14            THE COURT:  OKAY.
15       OKAY.  EVERYBODY REMEMBERS THAT VIDEO CLIPS NEED
16   TRANSCRIPTS, RIGHT?
17            MR. ISAACSON:  YES.
18            MS. SWEENEY:  YES, YOUR HONOR.
19            MR. ISAACSON:  AND THEY'LL BE HARD-COPY TRANSCRIPTS
20   AS WELL AS TRANSCRIPTS RUNNING ALONG THE BOTTOM.
21            THE COURT:  OKAY.
22                 (PAUSE IN THE PROCEEDINGS.)
23            THE COURT:  ALL RIGHT.  I'LL TAKE SOME LIMITED
24   ARGUMENT ON SOME OF THE BIG TOPICS THAT ARE RAISED IN THE JURY
25   INSTRUCTIONS.
```

1          WHY DON'T WE GO AHEAD AND TAKE A 15-MINUTE BREAK.   2:15.

2          (RECESS TAKEN AT 1:57 P.M.; PROCEEDINGS RESUMED AT 2:15

3     P.M.)

4               **THE CLERK:**   COURT IS IN SESSION.

5               **THE COURT:**   ALL RIGHT.   ALL RIGHT.   THERE ARE A

6     NUMBER OF BIG ISSUES THAT I'LL JUST TAKE SOME PRELIMINARY

7     ARGUMENT ON WITH RESPECT TO THE JURY INSTRUCTIONS.

8                    (PAUSE IN THE PROCEEDINGS.)

9               **THE COURT:**   IN TERMS OF -- JUST A SIDE NOTE WITH

10    RESPECT TO THE FORMATTING OF THE SUBSTANTIVE LAW INSTRUCTIONS.

11    THESE WILL GET REVISED, BOTH SIDES -- DOES IT -- NEITHER SIDE

12    DID IT, IN MY VIEW, EXACTLY RIGHT -- WILL BE REVISED TO

13    PROVIDE MORE STRUCTURE FOR THE JURY.

14        SO THE SECTION 2 CLAIM HAS FIVE COMPONENTS.   THAT'S IN

15    YOUR INSTRUCTIONS 27.   I AM USED TO AND WILL IN THIS CASE MAKE

16    SURE THAT THE JURY UNDERSTANDS WHAT THE LAW IS WITH RESPECT TO

17    EACH ELEMENT.   SO THESE INSTRUCTIONS DON'T READ THAT WAY.

18    THAT IS, THEY JUST GO OFF AND TALK ABOUT THE LAW.   THEY NEED

19    BOOK ENDS.   JURORS NEED BOOK ENDS.

20        SO YOU CAN EXPECT THAT THEY WILL ULTIMATELY READ, YOU

21    KNOW, WITH RESPECT TO ELEMENT 1, HERE IS WHAT YOU NEED TO

22    KNOW.   WITH RESPECT TO ELEMENT 2, HERE IS WHAT YOU NEED TO

23    KNOW.   THE LANGUAGE AND THE TERMS THAT YOU USE AND THE

24    ELEMENTS MUST MATCH THE LANGUAGE AND THE TERMS THAT YOU USE IN

25    THE EXPLANATIONS.   THEY DON'T SOMETIMES.   AND THAT'S A

 1    PROBLEM.  SO THOSE ARE -- THOSE ARE MORE MINOR ISSUES IN TERMS

 2    OF GETTING THINGS FIXED.

 3        BUT THERE ARE A SERIES OF MORE SUBSTANTIVE ISSUES, AND I

 4    THINK I RAISED THIS ISSUE BRIEFLY WITH MS. DUNN WITH REGARD TO

 5    WHAT LOOK LIKE AFFIRMATIVE DEFENSES AND THEN THIS MOTION THAT

 6    THE CONDUCT OF REALNETWORKS ITSELF WAS UNLAWFUL.  WE AREN'T --

 7    I CANNOT AND WILL NOT HAVE THIS CASE TURN INTO WHETHER OR NOT

 8    THEIR TRANSLATION WAS UNLAWFUL.  AND I USE THAT WORD

 9    SPECIFICALLY.

10        NOW, IT MAY BE RELEVANT.  IT MAY BE -- IT MAY IMPACT

11    HOW -- HOW -- HOW THE JURY THINKS ABOUT IT, BUT IT'S HARD TO

12    UNDERSTAND HOW I COULD HAVE A JURY MAKE A FINDING THAT

13    REALNETWORKS ACTED IN AN UNLAWFUL MANNER WHEN IT'S NOT A PARTY

14    TO THIS CASE.

15            **MR. ISAACSON:**  SO WE HAVE NOT PUT ANY SUCH FINDING IN

16    THE VERDICT FORM.  WHAT WE --

17            **THE COURT:**  BUT YOU HAVE IT IN THE INSTRUCTION.

18            **MR. ISAACSON:**  YES, BECAUSE --

19            **THE COURT:**  I MEAN --

20            **MR. ISAACSON:**  I'M SORRY.  AND --

21            **THE COURT:**  AND SO IF -- BECAUSE YOU HAVE IT IN THE

22    INSTRUCTION, IT REQUIRES THAT THEY AT LEAST THINK ABOUT OR

23    MAKE THAT INTERNAL FINDING IN ORDER TO MAKE SOME OTHER

24    FINDING.  AND I DON'T SEE HOW I CAN DO THAT.

25            **MR. ISAACSON:**  WELL, THE -- I MEAN, THE LAW INSTRUCTS

1   THAT A LEGITIMATE BUSINESS JUSTIFICATION INCLUDES ILLEGAL

2   CONDUCT.  THE EXPERT REPORTS THAT HAVE BEEN PUT IN HAVE

3   ALREADY EXPLAINED THAT -- THAT HARMONY STRIPPED THE DRM OF

4   FAIRPLAY.

5        **THE COURT:**  IS IT OBJECTIVE OR SUBJECTIVE?  DOES THAT

6   MATTER?

7        **MR. ISAACSON:**  WE ARE --

8        **THE COURT:**  THAT IS, IF APPLE ITSELF THOUGHT IT WAS

9   UNLAWFUL BUT IT TURNS OUT IT WASN'T, DOES THAT MATTER?

10        **MR. ISAACSON:**  WE ARE PHRASING IT OBJECTIVELY.

11        **THE COURT:**  I KNOW, BUT THAT MAKES A DIFFERENCE

12   BECAUSE IF IT'S SUBJECTIVE, THEN PERHAPS THAT'S GOOD ENOUGH.

13   THAT IS, I HAVE APPLE HERE, SO WHAT THEY THINK IS RELEVANT AS

14   OPPOSED TO WHAT IS.

15        **MR. ISAACSON:**  I DON'T THINK THERE'S ANY QUESTION

16   THAT APPLE THOUGHT ABOUT IT.  IT'S PART OF THE PLAINTIFF'S

17   EVIDENCE.  AGAIN, DOES THE -- MR. JOBS' STATEMENT THAT -- THAT

18   REAL WERE HACKERS AND POTENTIALLY VIOLATING THE DCMA (SIC).

19        **THE COURT:**  BUT DOES THE LAW STATE THAT THIS ISSUE OF

20   UNLAWFULNESS IS -- THAT THE FINDING OR -- SHOULD BE AN

21   OBJECTIVE OR SUBJECTIVE STANDARD, ONE -- ONE VERSUS THE OTHER?

22   CAN I WRITE THIS INSTRUCTION AS A SUBJECTIVE STANDARD?

23        **MS. DUNN:**  SO THERE IS A CASE FROM THE SEVENTH

24   CIRCUIT WHICH SPEAKS ABOUT IF YOU HAVE A GOOD-FAITH BELIEF

25   THAT THE -- THAT THE PARTY HAS ACTED ILLEGALLY, THEN THAT IS

1    NOT THE KIND OF BEHAVIOR THAT THE ANTITRUST LAWS ARE MEANT TO

2    PROTECT.

3        SO THERE ARE SOME CASES WHERE THE BEHAVIOR IS -- IS KNOWN

4    TO BE ILLEGAL.  THERE'S A CASE ABOUT TRAFFICKING PRESCRIPTION

5    DRUGS FROM CANADA, SO A KNOWN ILLEGAL ACTIVITY.  BUT THE CASE

6    WHERE JUSTICE STEVENS BEFORE HE WAS A JUSTICE WROTE TALKS

7    ABOUT A GOOD-FAITH BELIEF THAT SOMEBODY HAS VIOLATED YOUR

8    TRADEMARK OR YOUR COPYRIGHT IS SUFFICIENT.

9        SO IT IS POSSIBLE, I THINK, TO WRITE AN INSTRUCTION IN

10   THAT WAY.  AND THERE WILL BE EVIDENCE IN THIS CASE OBVIOUSLY

11   THAT APPLE DID HAVE SUCH A GOOD-FAITH BELIEF.

12           **THE COURT:**  DO YOU HAVE A PERSPECTIVE?

13           **MS. SWEENEY:**  YES, YOUR HONOR.  FIRST OF ALL, THE --

14   THE CASE WHICH MS. DUNN CITES WAS -- WAS NOT CITED BY APPLE

15   PREVIOUSLY.  I BELIEVE IT'S ONE OF THE ONES THAT WAS SUBMITTED

16   LAST NIGHT.  BUT IN ANY CASE, THE -- SO YOUR HONOR RAISES A

17   GOOD QUESTION, IS -- SHOULD IT BE SUBJECTIVE OR OBJECTIVE.

18       AND THEN IN ADDITION, AS WE SAID, APPLE HAS WAIVED THESE

19   DEFENSES; SECOND, APPLE HAS SORT OF VERY NARROWLY DEFINED THE

20   CONDUCT TO HAVE BEEN RESTRAINED AND SAYS IT ALL HAS TO DO WITH

21   REAL.  WELL, AS APPLE HAS -- HAS CONCEDED AND AS WE HAVE

22   POINTED OUT, DVC WAS ADDRESSED NOT ONLY AT REAL BUT ALSO

23   BLOCKED ANY DRM-FREE MUSIC THAT CAME FROM SOME OTHER SOURCE

24   LIKE A WINPOD OR AN ANAPOD, SO IT'S COMPLETELY IRRELEVANT IF

25   THE CONDUCT IS FRAMED IN THE WAY IT ACTUALLY IS FRAMED IN THE

1   CASE.

2       AND THEN APPLE'S CASES, THE CASES THAT APPLE CITES IN ITS

3   DMCA INSTRUCTION, IN ITS COPYRIGHT INFRINGEMENT INSTRUCTION,

4   IN ITS BREACH OF CONTRACT INSTRUCTION ALL MAKE CLEAR WHY THESE

5   JURY INSTRUCTIONS ARE INAPPROPRIATE.

6       IN ALL THOSE CASES, THE OTHER PARTY WAS THE ONE WHO IS --

7   IS THE -- THE PLAINTIFF IN THOSE CASES WAS ALLEGED TO HAVE

8   ENGAGED IN ILLEGAL CONDUCT.  HERE, REAL IS NOT A PARTY.  SO

9   APPLE IS USING THIS UNCLEAN HANDS DEFENSE AGAINST PLAINTIFFS,

10  WHO OBVIOUSLY COULDN'T POSSIBLY BE ACCUSED OF HAVING UNCLEAN

11  HANDS WHEN IT COMES TO WHETHER OR NOT REAL'S CONDUCT VIOLATED

12  THE DMCA AND OTHER -- AND THE CONTRACT AND COPYRIGHT --

13  ET CETERA.

14          **THE COURT:**  LET'S ASSUME FOR PURPOSES OF ARGUMENT

15  THAT REALNETWORKS' CONDUCT WAS ILLEGAL.  HOW IS IT THAT THE

16  PLAINTIFFS COULD BENEFIT FROM ILLEGAL CONDUCT?

17          **MS. SWEENEY:**  PLAINTIFFS -- WELL, AS I SAID, WHAT

18  ABOUT DVC?  THAT HAS NOTHING TO DO WITH WHETHER REAL'S CONDUCT

19  WAS LEGAL OR NOT.  IT WAS CODE THAT WAS PUT ON THE IPODS THAT

20  BLOCKED --

21          **THE COURT:**  THAT'S A SEPARATE ISSUE.

22          **MS. SWEENEY:**  OKAY.

23          **THE COURT:**  WITH RESPECT TO THE CONDUCT THAT IS --

24  AND PERHAPS IT IS MORE NARROW.  I'M JUST TRYING TO UNDERSTAND

25  YOUR PERSPECTIVE ON THE LAW WITH RESPECT TO CONDUCT THAT WAS

1    FOUND TO BE ILLEGAL.  IF CONDUCT WAS FOUND TO BE ILLEGAL --

2        AND SHE'S GOING TO HAVE TO ARGUE THIS 'CAUSE SHE STARTED.

3    YOU CAN PASS HER A NOTE.

4            **MR. COUGHLIN:**  OKAY.

5        **THE COURT:**  IF IT'S FOUND TO BE ILLEGAL, DOES THE LAW

6    ALLOW A PLAINTIFF TO BENEFIT EVEN IF IT'S A THIRD -- IF IT'S A

7    NON-PARTY TO THAT ILLEGAL CONDUCT?

8        **MS. SWEENEY:**  I -- I DON'T HAVE A CASE TO CITE YOUR

9    HONOR.  I DON'T KNOW THAT -- IF A PLAINTIFF COULD BENEFIT FROM

10   THAT -- I'M NOT SAYING THAT A PLAINTIFF WOULD NECESSARILY

11   BENEFIT FROM THAT.  BUT HOW ARE THEY GOING TO -- HOW ARE THEY

12   GOING TO PROVE THAT IT'S ILLEGAL IN THE CONTEXT OF THIS CASE?

13   THEY HAD AN OPPORTUNITY TO BRING THAT LAWSUIT, AND THEY

14   DIDN'T.

15       THEY HAD AN OPPORTUNITY TO RAISE THAT DEFENSE AS AN

16   AFFIRMATIVE DEFENSE IN THIS CASE, AND THEY DIDN'T.  IT'S NOT

17   IN APPLE'S ANSWER TO THE COMPLAINT.

18                    (PAUSE IN THE PROCEEDINGS.)

19       **MS. SWEENEY:**  I DON'T THINK THAT APPLE CAN USE THE

20   ALLEGATIONS OF WRONGFUL CONDUCT BY A THIRD PARTY TO INJURE A

21   DIFFERENT PARTY.  I DON'T THINK THAT THAT PROVIDES ANY EXCUSE

22   UNDER THE LAW.  AND THAT'S WHAT APPLE'S TRYING TO DO HERE.

23       **THE COURT:**  WELL, IT'S TWO SIDES OF THE SAME COIN.

24   YOU'RE TRYING TO BENEFIT; THEY'RE SAYING IT'S ILLEGAL.  HOW

25   CAN YOU BENEFIT -- I MEAN, IT'S -- IT'S -- I DON'T UNDERSTAND

1    THAT COMMENT.

2        **MS. SWEENEY:**  I'M NOT SURE WHAT YOUR HONOR MEANS BY

3    PLAINTIFFS ARE TRYING TO BENEFIT FROM --

4        **THE COURT:**  THERE IS CONDUCT THAT IS RELEVANT IN THIS

5    CASE.  AND THE QUESTION IS WHAT DO WE DO WITH IT?  HOW DOES

6    THE LAW ADDRESS IT?  BUT IT'S RELEVANT.  AND UNDER ONE THEORY,

7    THE DEFENDANT RESPONDED TO THAT CONDUCT.  THEY SAY FOR THEIR

8    OWN LEGITIMATE PURPOSES; YOU SAY FOR MONOPOLISTIC PURPOSES AND

9    YOU GET DAMAGES.

10       HAD -- HAD THERE BEEN NO REALNETWORKS OR ANY ENTITY LIKE

11   IT, THEN THE -- THEN THE ARGUMENT ON THE OTHER SIDE IS THEY

12   WOULD HAVE NEVER HAD TO DO WHAT THEY DID.

13       **MS. SWEENEY:**  WELL, I -- I THINK YOUR HONOR, IS THAT

14   PART OF THE PROBLEM IS IN HOW NARROWLY APPLE HAS FRAMED THE

15   CONDUCT.  THE CONDUCT IS APPLE'S TAKING STEPS TO BLOCK OUT

16   COMPETITORS, WHETHER IT'S REALNETWORKS, WHETHER IT'S DRM

17   MUSIC, WHETHER IT'S DRM-FREE MUSIC.  AND THAT IS THE CONDUCT

18   THAT PLAINTIFFS CHALLENGE.  AND THAT IS THE CONDUCT THAT

19   PLAINTIFFS ASSERT CAUSED THEM TO PAY SUPERCOMPETITIVE PRICES

20   FOR IPODS.  NOW --

21       **THE COURT:**  BUT YOUR EVIDENCE IS GOING -- IT INCLUDES

22   THE REALNETWORKS CONDUCT, RIGHT?  AND WHO ELSE?

23       **MS. SWEENEY:**  IT INCLUDES REALNETWORKS' CONDUCT, BUT

24   IT'S NOT LIMITED TO REALNETWORKS.  THERE WERE OTHER

25   COMPETITORS IN THE MARKETS THAT, LIKE REALNETWORKS, DEVELOPED

1    A TRANSLATION SYSTEM.  WE'LL TALK ABOUT THAT.

2        WE WILL ALSO TALK ABOUT THE ENTRANCE INTO THE MARKET OF

3    COMPANIES THAT WERE GIVEN LARGE DRM-FREE LIBRARIES BEFORE

4    APPLE WAS, LIKE AMAZON.  THERE'S NOTHING THAT APPLE CAN SAY

5    ABOUT THAT CONDUCT BEING ILLEGAL.

6        AND COMPANIES THAT DEVELOPED JUKE BOXES OR CLIENT SOFTWARE

7    THAT PERMITTED CONSUMERS TO LOAD SONGS ONTO THEIR IPODS

8    WITHOUT USING THE ITUNES SOFTWARE.  THAT WAS ALL --

9            **THE COURT:**  AND HOW IS THAT EVIDENCE COMING IN?

10           **MS. SWEENEY:**  HOW IS IT COMING IN?

11           **THE COURT:**  WHO'S TESTIFYING TO THOSE?

12           **MS. SWEENEY:**  MOSTLY THIS EVIDENCE IS COMING IN

13   THROUGH APPLE WITNESSES.  THESE ARE APPLE DOCUMENTS.  APPLE

14   EMAILS BACK AND FORTH AT THE HIGHEST LEVELS OF THE COMPANY.

15           **THE COURT:**  OKAY.

16       ALL RIGHT.  ANY -- ANYTHING ON THESE SET OF -- OF

17   INSTRUCTIONS THAT ARE DEFENSE FOCUSED IN TERMS OF -- I WOULD

18   SAY AFFIRMATIVE DEFENSES?  I KNOW YOU THINK DIFFERENTLY, BUT

19   FOR SHORTHAND.

20           **MS. DUNN:**  WELL, YOUR HONOR, CAN -- CAN WE TAKE THIS

21   JUST IN TWO PARTS, WHICH IS -- WHAT WE WERE JUST DISCUSSING IS

22   THIS IDEA OF OUR RESPONSE TO PLAINTIFFS PUTTING REAL AT THE

23   CENTER OF THIS CASE.  AND IT TURNS THE WHOLE CASE ON ITS HEAD

24   TO AT THIS POINT HAVE THEM SAY, WELL, WE'RE INTRODUCING THIS

25   INTO THE CASE.

1      THEY BUILT THEIR ENTIRE CASE AROUND REAL.  I'M NOT AWARE

2   ACTUALLY OF OTHER COMPANIES THAT BUILT TRANSLATION SYSTEMS.

3   THERE ARE A COUPLE COMPANIES THAT POPPED UP AFTERWARDS SAYING

4   THEY -- THEY WANTED TO, BUT THE REALITY IS PLAINTIFFS' ENTIRE

5   CASE IS REAL AND ITS BEHAVIOR.  AND THE EVIDENCE THAT THEY'RE

6   INTRODUCING ON THEIR OWN GOES TO HOW APPLE GREETED WHAT

7   REALNETWORKS WAS DOING AND HOW THEY FELT THAT -- THEY RESPOND.

8      IN ANY EVENT, IT WOULDN'T MATTER IF -- IF OTHER SYSTEMS

9   WERE RENDERED INOPERABLE, IF HARMONY WAS -- REAL'S HARMONY WAS

10   RENDERED INOPERABLE.  AND PLAINTIFFS RAISING THESE DISCRETE

11   ELEMENTS, THE DVC, IS -- IS ALSO IRRELEVANT BECAUSE ALL

12   ELEMENTS OF 7.0 -- OR NEARLY ALL WOULD HAVE HAD THE SAME

13   EFFECT ON HARMONY.  SO I'M NOT SURE I UNDERSTAND THEIR

14   CONTRARY ARGUMENT.

15      I THINK YOUR HONOR IS SECONDARILY ASKING THIS QUESTION

16   ABOUT BURDEN OF PROOF, WHICH GOES TO THE QUESTION OF

17   AFFIRMATIVE DEFENSES.  AND YOUR HONOR IS CORRECT THAT WE DON'T

18   BELIEVE THAT WE DO HAVE AFFIRMATIVE DEFENSES.  WE BELIEVE THAT

19   WE ARE RESPONDING TO PLAINTIFFS' ARGUMENT ABOUT REAL AND THAT

20   IT IS OUR BURDEN UNDER THE LAW TO POINT TO A LEGITIMATE

21   BUSINESS JUSTIFICATION, WHICH IS WHAT IT WAS WHEN APPLE

22   RESPONDED TO WHAT REAL WAS DOING.

23      AND THAT IS A CASE THAT -- CALLED *CITY OF VERNON* V.

24   *SOUTHERN CAL EDISON COMPANY*, 955 F.2D. 1361.

25            **THE COURT:**  IS THAT CITED IN YOUR INSTRUCTIONS?

 1          **MS. DUNN:**  SO THIS IS A NEW CASE NOT CITED IN OUR

 2    INSTRUCTIONS; ALTHOUGH TO CORRECT THE RECORD, THE CASE I CITED

 3    EARLIER WAS CITED IN OUR OPPOSITION TO THE MOTION IN LIMINE

 4    NO. 1.

 5          **THE COURT:**  SO THIS -- CITY -- HOLD ON.  *CITY OF*

 6    *VERNON* VS. --

 7          **MS. DUNN:**  *SOUTHERN CALIFORNIA EDISON COMPANY.*

 8          **THE COURT:**  AND --

 9          **MS. DUNN:**  AND THE CITE IS 955 F.2D. 1361.  AND THIS

10    CASE WAS IN THE LETTER THAT WE SENT LAST NIGHT TO PLAINTIFF'S

11    COUNSEL.

12          **THE COURT:**  AND IT'S IN ONE OF THESE FILES?

13          **MS. DUNN:**  WE HAVE A COPY FOR YOUR HONOR.

14          **THE COURT:**  WHAT'S THE YEAR?

15          **MS. DUNN:**  1992.

16          **THE COURT:**  OKAY.

17          **MS. DUNN:**  AND SO WHAT THAT CASE SAYS IS THAT

18    ALTHOUGH THE DEFENDANT GENERALLY HAS THE BURDEN OF COMING

19    FORWARD WITH A LEGITIMATE BUSINESS JUSTIFICATION AFTER THE

20    PLAINTIFF HAS SHOWN EVIDENCE OF MONOPOLISTIC INTENT, THE

21    PLAINTIFF -- IN THIS CASE, VERNON -- ULTIMATELY HAS THE BURDEN

22    OF PROVING THAT THE DEFENDANT ACTED WITHOUT A LEGITIMATE

23    BUSINESS JUSTIFICATION.

24       SO THIS IS REALLY A BURDEN OF PRODUCTION VERSUS BURDEN OF

25    PROOF.  AND IT MAKES SENSE BECAUSE PART OF PLAINTIFFS' PRIMA

 1    FACIE CASE IS THAT THEY HAVE TO SHOW THAT THIS WAS NOT A

 2    PRODUCT IMPROVEMENT.

 3              **THE COURT:**  OKAY.  ANYTHING ELSE?

 4          **MS. DUNN:**  NOT ON THAT ISSUE.

 5          **MS. SWEENEY:**  CAN I RESPOND, YOUR HONOR, ON THE

 6    BURDEN OF PROOF ISSUE?

 7              **THE COURT:**  YOU MAY.

 8          **MS. SWEENEY:**  WELL, FIRST OF ALL, WE -- WE JUST -- WE

 9    THINK IT'S PRETTY CLEAR THAT AS TO THE AFFIRMATIVE DEFENSES

10    SUCH AS DMCA, APPLE BEARS THE BURDEN OF PROOF ON THOSE

11    AFFIRMATIVE DEFENSES.

12        AS TO WHETHER PLAINTIFFS OR DEFENDANTS BEAR THE BURDEN OF

13    PROOF ON THE LEGITIMATE BUSINESS JUSTIFICATION, I AGREE THAT

14    THE NINTH CIRCUIT HAS BEEN SOMEWHAT UNCLEAR ON THIS POINT, BUT

15    I THINK THE MOST RELEVANT CASE IS THE CASE ON WHICH THE

16    PARTIES AND THIS COURT HAVE RELIED VERY HEAVILY, AND THAT'S

17    THE *ALLIED ORTHOPEDIC* CASE.

18        AND IN THAT CASE, YOUR HONOR, THE COURT WHEN IT'S

19    DISCUSSING PRODUCT DESIGN CHANGES AND THE ASSERTED

20    PRO-COMPETITIVE JUSTIFICATION, IT RELIES VERY HEAVILY ON THE

21    *UNITED STATES* VS. *MICROSOFT* CASE.  AND THAT WAS A CASE IN THE

22    DC CIRCUIT WHERE THE COURT FORMULATED A BURDEN-SHIFTING

23    APPROACH THAT VERY CLOSELY MODELED THE RULE OF REASON

24    BURDEN-SHIFTING APPROACH AND ACCORDED THE BURDEN OF PROOF TO

25    DEFENDANT ON THE BUSINESS JUSTIFICATION.

 1          AND I'M LOOKING AT -- LET'S SEE.  I'M LOOKING FOR THE PAGE

 2    NUMBER HERE.

 3          THIS IS 592 F.3D AT 998.  AND THE COURT -- THIS IS -- THE

 4    NINTH CIRCUIT QUOTES *MICROSOFT* APPROVINGLY AND NOTED THAT

 5    MICROSOFT LOST IN THAT CASE BROUGHT BY THE UNITED STATES

 6    BECAUSE QUOTE MICROSOFT PROVIDED NO PRO-COMPETITIVE

 7    JUSTIFICATION FOR HAVING INTEGRATED INTERNET EXPLORER INTO

 8    WINDOWS.  HAVING FAILED TO SHOW THAT ITS CONDUCT SERVED A

 9    BURDEN OF PROOF OTHER THAN PROTECTING ITS OPERATING SYSTEM

10    MONOPOLY, THE DC CIRCUIT HELD THAT MICROSOFT HAD VIOLATED

11    SECTION 2 OF THE SHERMAN ACT.

12          SO WE THINK THAT'S THE BEST AUTHORITY ON THE QUESTION OF

13    WHO BEARS THE BURDEN OF PROOF ON THE LEGITIMATE BUSINESS

14    REASON OR PRO-COMPETITIVE JUSTIFICATION.

15          WE ALSO CITED THE *WILLIAM INGLIS* CASE, YOUR HONOR.  THAT'S

16    IN OUR JURY INSTRUCTION STATEMENT.  THAT'S A NINTH CIRCUIT

17    CASE I BELIEVE FROM THE 1980'S THAT STATED VERY CLEARLY THAT

18    IN A SECTION 2 CASE, THE DEFENDANT BEARS THE BURDEN OF PROOF

19    ON THE PRO-COMPETITIVE -- THE LEGITIMATE BUSINESS

20    JUSTIFICATION DEFENSE.

21          THE CASES THAT APPLE RELIES UPON, *METRONET*, FOR EXAMPLE,

22    IS AN ESSENTIAL FACILITIES CASE.  THAT'S EASILY DISTINGUISHED

23    BECAUSE AN ESSENTIAL FACILITIES CASE INCLUDES AS ONE OF ITS

24    ELEMENTS THE FEASIBILITY OF MAKING THE FACILITY AVAILABLE TO

25    COMPETITORS.

1    SO THE COURT IN THAT CASE SAID THAT FOR THAT PARTICULAR

2    CLAIM, THE BURDEN WAS ON PLAINTIFF.  IT THEN WENT ON TO TALK

3    ABOUT A SECTION 2 -- EXCUSE ME -- THE MONOPOLIZATION CLAIM

4    THAT PLAINTIFF HAD ALSO BROUGHT.  AND THE COURT, WHEN IT

5    DESCRIBED THE ELEMENTS OF THE PLAINTIFFS' CLAIM, SAID NOTHING

6    ABOUT PLAINTIFF BEARING THE BURDEN OF PROOF ON THE

7    PRO-COMPETITIVE BUSINESS JUSTIFICATION.

8    SO THE -- THE LAW IN THE NINTH CIRCUIT, ALTHOUGH IT HASN'T

9    BEEN EXTREMELY CLEAR, WE THINK THAT THERE -- THAT THE CLEAR

10   THRUST OF IT AND CERTAINLY IS THE MOST IMPORTANT CASE FOR THIS

11   PARTICULAR CASE, WHICH IS THE *ALLIED ORTHOPEDIC* CASE MADE

12   CLEAR THAT THAT BURDEN IS APPLE'S, NOT DEFENDANT -- EXCUSE

13   ME -- NOT PLAINTIFFS'.

14           **MS. DUNN:**  YOUR HONOR, MAY WE RESPOND?

15           **THE COURT:**  BRIEFLY.

16           **MS. DUNN:**  WE AGREE THAT PLAINTIFFS ARE LOOKING AT

17   SOME OF THE RIGHT CASES, BUT WE THINK THEY MISREAD THEM.

18   *MICROSOFT* EXPRESSLY ASSIGNED TO THE PLAINTIFF THE BURDEN OF

19   PROVING A LEGITIMATE BUSINESS JUSTIFICATION.  THAT'S

20   CONSISTENT WITH *CITY OF VERNON* AND *WILLIAM INGLIS*, WHICH THEY

21   POINT TO, WAS JUST A PREDATORY PRICING CASE WHICH PREDATED

22   *CITY OF VERNON*, WHICH IS NOW SETTLED LAW IN THE NINTH CIRCUIT.

23   SO WE WOULD DIRECT YOUR HONOR TO PAGE 54 OF *MICROSOFT* TO

24   *CITY OF VERNON* AT 1366.  AND THEN ALSO NOTE THAT IF PLAINTIFFS

25   ARE LOOKING TO *ALLIED ORTHOPEDIC* FOR SUPPORT, IT REALLY

1    DOESN'T OFFER ANY TO THEM BECAUSE IT REQUIRES THE PLAINTIFFS

2    TO SHOW AS PART OF THEIR PRIMA FACIE CASE THAT A PRODUCT

3    DESIGN CHANGE WAS NOT A PRODUCT IMPROVEMENT.  AND SO THAT IS

4    CONSISTENT WITH *CITY OF VERNON* AND THE OTHER CASE LAW THAT

5    ASSIGNS THIS BURDEN TO THE PLAINTIFF.

6        WE DON'T -- WE CERTAINLY ACCEPT THAT WE BEAR THE BURDEN OF

7    PRODUCTION TO POINT TO A LEGITIMATE BUSINESS JUSTIFICATION,

8    BUT THEY BEAR THE BURDEN OF PROOF ON THAT.

9            **THE COURT:**  WELL, HAVING SOMETHING AS PART OF YOUR

10   PRIMA FACIE CASE IS DIFFERENT THAN THE ULTIMATE BURDEN OF

11   PROOF.

12           **MS. DUNN:**  I AGREE WITH THAT ALSO.  I -- THE CASE

13   THAT DEFINES THE BURDEN OF PROOF IS CONSISTENT WITH *ALLIED*

14   *ORTHOPEDIC*, WHICH TALKS ABOUT WHAT THE PLAINTIFFS NEED TO

15   PROVE AS PART OF THEIR CASE.

16           **MS. SWEENEY:**  ON THAT LAST POINT THAT YOUR HONOR

17   RAISED AS TO PLAINTIFFS' PRIMA FACIE CASE, I NOTED THAT IN

18   APPLE'S JURY VERDICT FORM, THEY ACTUALLY ADDED ELEMENTS WHICH

19   IS NOT SUPPORTED BY ANY LEGAL AUTHORITY WHATSOEVER FOR THE

20   PLAINTIFFS TO PROVE GENUINE PRODUCT IMPROVEMENT AND LACK OF

21   VALID BUSINESS JUSTIFICATION.

22           **THE COURT:**  I NOTICED.

23       OKAY.  WELL, THAT WAS ONE CHUNK.

24       IS THERE -- ARE THERE ANY -- ANY OTHER CHUNKS THAT YOU

25   WANTED TO TALK ABOUT ON THE FRONT END?  I'M NOT GOING TO MAKE

```
1    ANY DECISIONS ON THESE INSTRUCTIONS RIGHT NOW OTHER THAN THE

2    ONES THAT I'VE ALREADY TOLD YOU ABOUT.

3          MR. ISAACSON:  WE'RE HERE FOR THE COURT, SO --

4          THE COURT:  OKAY.  THAT'S FINE.  SO WHAT I DO NEED IS

5    A COPY -- NEED A WORD VERSION OF THE INSTRUCTIONS WITHOUT THE

6    ARGUMENT.  YOU CAN HAVE YOUR COMPETING INSTRUCTIONS, BUT I

7    NEED A WORD VERSION STRIPPED OF THE ARGUMENT.

8          MR. ISAACSON:  WE'LL DO THAT, YOUR HONOR.  WOULD IT

9    BE OF HELP TO YOU -- WE HAVE A LOT OF RED LINES.  WE HAVE RED

10   LINES RELATIVE TO ONE ANOTHER.  WE HAVE RED LINES VERSUS THE

11   ABA MODEL REVISIONS.  I DON'T KNOW IF YOU WANT ANY OF THAT.

12         THE COURT:  WELL, IT WOULD HAVE BEEN HELPFUL TO HAVE

13   IT BEFORE I WENT THROUGH IT THE FIRST TIME.

14         MR. ISAACSON:  THE OTHER SIDE WAS -- WE SUGGESTED,

15   AND THE OTHER SIDE DID NOT AGREE.

16         THE COURT:  IT WOULD HAVE BEEN HELPFUL.

17     GO AHEAD AND SEND IT.  AND I DON'T KNOW THAT I'LL USE IT

18   AT THIS POINT 'CAUSE I'VE ALREADY MARKED UP MY COPIES, BUT --

19   THOSE KINDS OF THINGS ARE HELPFUL.  SO -- BUT I DO WANT ONE

20   CLEAN VERSION --

21         MS. SWEENEY:  YOUR HONOR, CAN I --

22         THE COURT:  -- THAT DOES NOT HAVE THE ARGUMENT.

23         MS. SWEENEY:  WHEN -- WITH RESPECT TO THE JURY

24   INSTRUCTIONS, ONE OVERALL COMMENT I WOULD LIKE TO MAKE IS THAT

25   PLAINTIFFS TRIED TO MAKE THE INSTRUCTIONS AS CONCISE AS
```

1    POSSIBLE.  WE -- WE USED THE MODEL RULES AS A GUIDE, BUT IN

2    MANY CASES, WE -- WE TRUNCATED THEM AND WE FOLLOWED -- IN

3    DOING SO, WE FOLLOWED THE APPROACH OF OTHER COURTS, INCLUDING

4    JUDGE KOH'S JURY INSTRUCTIONS IN THE *APPLE/SAMSUNG* SECTION 2

5    CASE.

6        AND WE ALSO SUBMITTED TO YOUR HONOR AS ADDITIONAL

7    AUTHORITIES THE INSTRUCTIONS PROPOSED BY APPLE IN THAT CASE

8    WHEN IT WAS A PLAINTIFF WHEN IT ALSO PROPOSED THESE VERY SHORT

9    INSTRUCTIONS.

10       AND I ALSO JUST LIKE TO CORRECT THE RECORD.  I DIDN'T SAY

11   WE WOULDN'T AGREE TO PROVIDE THESE RED LINES.  I TOLD COUNSEL

12   FOR APPLE THAT MY OFFICE HAS BEEN CLOSED THE LAST SEVERAL DAYS

13   BECAUSE WE -- IT'S OUR FIRM RETREAT, AND SO WE HAD VERY SHORT

14   STAFF AND COULDN'T PUT THEM TOGETHER IN TIME.  BUT WE WOULD BE

15   HAPPY TO DO WHATEVER YOUR HONOR REQUIRES.

16           **THE COURT:**  ALL RIGHT.  AND, YOU KNOW, MY PERSPECTIVE

17   ON INSTRUCTIONS IS THAT GIVEN THE CONTEXT, SOMETIMES MORE

18   EXPLANATION IS RIGHT AND OTHER TIMES, LESS EXPLANATION IS

19   RIGHT.  AND IT'S ONE OF THE PRIVILEGES AND BURDENS THAT I

20   HAVE, WHICH IS TO MAKE THE CALL.  SO SOMETIMES I PREFER THE

21   LONGER; SOMETIMES I PREFER THE SHORTER.

22           **MR. ISAACSON:**  ACTUALLY, ONE OF THE THINGS YOU SEE

23   FROM THE RED LINES IS I -- THAT -- WHY I WOULD DISAGREE WITH

24   COUNSEL -- WE OFTEN TRIED TO CUT BACK EXTRANEOUS PARTS.

25           **THE COURT:**  OH, OKAY.

```
 1        LET'S GO OVER THE LIST.
 2                   (PAUSE IN THE PROCEEDINGS.)
 3        MR. ISAACSON:  FIRST UP ON OUR LIST IS FLASH DRIVE OF
 4   EXHIBITS, WHICH YOU HAVE.
 5        I DON'T KNOW.  DO YOU WANT ME TO GO THROUGH OUR -- OUR
 6   NOTES ON THE LIST?  IS THAT HELPFUL?
 7        THE COURT:  SO WHAT I HAVE IS -- RIGHT.  SO THE --
 8   THE EXHIBITS I DO HAVE.
 9        I NEED AN UPDATED LIST OR WITH STIPULATIONS.  SO WHEN CAN
10   YOU EXCHANGE THE PHYSICAL ITEMS?  OR WHEN CAN YOU DELIVER TO
11   PLAINTIFF --
12                   (PAUSE IN THE PROCEEDINGS.)
13        MR. ISAACSON:  I THINK IT WILL BE A ROLLING PROCESS.
14   WE HAVE SOME COMING IN TOMORROW AND THE NEXT DAY, AND I THINK
15   WE'LL -- AS WE GET THEM, WE WILL SHARE THEM WITH THE OTHER
16   SIDE.
17        THE COURT:  ALL RIGHT.  REASONABLY WHEN WILL THEY
18   HAVE THEM ALL SO THAT YOU CAN MEET AND CONFER?
19                   (OFF-THE-RECORD DISCUSSION.)
20        MR. ISAACSON:  THE --
21        THE COURT:  I MEAN, ARE YOU GETTING THEM FROM APPLE?
22   CAN SOMEONE DRIVE DOWN THERE?  IT'S NOT LIKE IT'S ACROSS THE
23   UNITED STATES.
24        MR. ISAACSON:  THEY DON'T HAVE AS BIG A CLOSET AS YOU
25   WOULD THINK THEY HAVE -- THAT THEY MIGHT.  IT'S ACTUALLY NOT
```

1    ALL BEEN AVAILABLE FROM THAT PERIOD FROM APPLE.  WE OBVIOUSLY

2    STARTED THERE.

3        SO WE'LL DO WHAT WE'RE TOLD.  WEEK BEFORE TRIAL FOR THE

4    LAST OF THEM WOULD -- WOULD BE HELPFUL.

5            **THE COURT:**  WELL, WHEN WILL YOU HAVE ENOUGH TO BE

6    ABLE TO MEET AND CONFER ON THE ISSUE?

7            **MR. ISAACSON:**  THIS -- THIS WEEK, WE WILL START

8    SENDING -- WELL, I GUESS WE HAVE TO FIGURE OUT HOW TO DO THAT,

9    BUT WE WILL -- WE'LL BEGIN TALKING ABOUT MEETING AND

10   CONFERRING AND HOW TO -- WE'RE IN DIFFERENT GEOGRAPHIC

11   LOCATIONS.

12           **MR. COUGHLIN:**  WE'RE GOING TO BE UP HERE.

13           **MS. SWEENEY:**  WE'RE HERE.

14           **MR. COUGHLIN:**  WE CAN DO IT.

15           **MR. ISAACSON:**  RIGHT, SO -- SO WE SHOULD BE ABLE TO

16   START DOING THAT THIS WEEK.

17           **THE COURT:**  OKAY.  I NEED THE TWO DISCOVERY

18   DESIGNATIONS.  LET'S GET THOSE BY TOMORROW, THURSDAY.

19           **MR. ISAACSON:**  THE TWO DISCOVERY -- I'M SORRY.  JUST

20   SO I UNDERSTAND, THE TWO DISCOVERY DESIGNATIONS?

21           **THE COURT:**  RIGHT.  THAT WE'RE MISSING.

22           **MR. ISAACSON:**  OH, YES.

23           **THE COURT:**  DO YOU NEED ME TO REPEAT THEM?

24           **MR. ISAACSON:**  RIGHT.  YES.  NO, NO, NO, NO.  I

25   UNDERSTAND WHAT YOU'RE TALKING ABOUT.

1            **THE COURT:**  I'M GOING TO HAVE YOU SEND ME A NUMBER OF

2    THINGS BY TOMORROW, IF POSSIBLE.  WELL, ON -- THINK IT'S ON

3    APPLE'S SIDE, I NEED A REVISED ORDER REGARDING THE DISCOVERY

4    DESIGNATIONS BECAUSE I THINK AT THE END, IT JUST GAVE --

5    DIDN'T SEPARATE OUT EACH OF THE INDIVIDUAL RULINGS.  AND TO

6    THE EXTENT THAT I'VE ALREADY MADE RULINGS, THOSE CAN BE

7    INCLUDED.

8        I BELIEVE THAT PLAINTIFFS DID SEPARATE IT OUT, BUT I NEED

9    AN EDITABLE VERSION.  SO THESE NEED TO BE SENT TO THE PROPOSED

10   ORDER BOX.  SO FOR PLAINTIFFS, IT'S DOCUMENT 846-10.  AND THEN

11   WHATEVER THE COROLLARY IS FOR APPLE, SO JUST --

12           **MR. ISAACSON:**  I'M TOLD THAT WAS A JOINT SUBMISSION,

13   BUT --

14           **THE COURT:**  OKAY.  SO IT HAS TO BE REVISED -- ONE OF

15   THE TWO, AND I THINK IT WAS APPLE'S, DID NOT LIST OUT EACH OF

16   THE SEPARATE DESIGNATIONS, SO THAT NEEDS TO BE REVISED.

17       OKAY.  WITH RESPECT TO MOTION IN LIMINE 1, THIS IS

18   PLAINTIFF'S MOTION IN LIMINE --

19           **MR. ISAACSON:**  THIS IS JUST CLERICAL, YOUR HONOR, BUT

20   THE PROPOSED ORDER THAT -- WE JUST WANT TO MAKE SURE WE'RE

21   DOING WHAT THE COURT WANTS US TO DO.  THE PROPOSED ORDER THAT

22   WE HAD HAS EACH ITEM AND A BOX OR "GRANTED," "DENIED" OR

23   "GRANTED WITH MODIFICATION" BROKEN OUT.

24           **THE COURT:**  SO WHAT IT DOESN'T DO -- LET ME JUST GIVE

25   YOU AN EXAMPLE.

```
 1                    (PAUSE IN THE PROCEEDINGS.)

 2           MR. ISAACSON:  AND IF YOU'RE TALKING ABOUT WHETHER IT

 3    COUNTS AGAINST OUR TIME OR THEIR TIME, WE COULD PUT THAT IN

 4    THERE.

 5           THE COURT:  NO, IT WASN'T THAT.

 6                    (PAUSE IN THE PROCEEDINGS.)

 7           THE COURT:  OKAY.  WELL, I'M NOT SEEING IT.  JUST

 8    MAKE SURE THAT THERE'S ONE LINE FOR EVERY RULING THAT NEEDS TO

 9    BE MADE.  THAT'S ALL.

10           MR. ISAACSON:  OUR -- I'LL HAND YOU OUR COPY TO MAKE

11    SURE IT'S WHAT YOU WANT.

12           THE COURT:  HERE, I HAVE IT.

13                    (PAUSE IN THE PROCEEDINGS.)

14           THE COURT:  ALL RIGHT.  SO LOOK AT -- THE DEPOSITION

15    OF STEVE JOBS, THERE IS ONE LINE, BUT THERE ARE MULTIPLE

16    RULINGS.

17           MS. DEARBORN:  I THINK I MIGHT UNDERSTAND THE ISSUE,

18    YOUR HONOR.  WE -- THE -- THE PLAINTIFFS AND APPLE AGREED THAT

19    WHERE THERE WAS A COUNTER-DESIGNATION BUT NO SEPARATE

20    OBJECTION TO THE COUNTER-DESIGNATED MATERIAL, EITHER AS

21    IMPROPER 106 MATERIAL OR SOME OTHER OBJECTION --

22           THE COURT:  NO, THAT'S NOT IT.

23           MS. DEARBORN:  -- THEN WE ESSENTIALLY -- OKAY.

24           THE COURT:  SO -- SO I'M LOOKING AT THE DOCUMENT THAT

25    YOU HAVE THERE 846-10.
```

1          **MS. DEARBORN:**  UM-HMM.

2          **THE COURT:**  OKAY.  PAGE 7 OF 7.  WHAT DO YOU SHOW?

3          **MS. DEARBORN:**  THERE'S A SINGLE LINE HERE FOR THE

4    DEPOSITION OF STEVE JOBS BECAUSE THIS WAS THE -- THIS WAS THE

5    MATERIAL THAT PLAINTIFFS AND APPLE AGREED SHOULD BE PRESENTED

6    TO THE COURT.

7          WHERE -- THERE WERE A NUMBER OF COUNTER-DESIGNATIONS BUT

8    WE AGREED THAT WHERE THERE WAS NO SEPARATE OBJECTION TO THE

9    COUNTER-DESIGNATION, THEN THAT NEED NOT BE PERMITTED (SIC) --

10   OR PRESENTED TO THE COURT.

11         AND I UNDERSTAND THAT YOUR HONOR HAS GONE THROUGH THOSE

12   COUNTER-DESIGNATIONS AND MADE RULINGS ON THEM, BUT THE

13   PLAINTIFFS' DESIGNATIONS ARE IN THE SAME -- ARE IN THE SAME

14   BOAT, YOUR HONOR.

15         **THE COURT:**  EXHIBIT H HAS HALF A DOZEN DIFFERENT

16   DESIGNATIONS TO WHICH THERE WERE OBJECTIONS.

17         **MS. DEARBORN:**  THAT'S RIGHT.  THOSE WERE 106

18   OBJECTIONS, AND THEN IN -- IN ORDER TO CURE THE 106 OBJECTION,

19   WE SUGGESTED ADDITIONAL TESTIMONY TO BE COUNTER-DESIGNATED.

20   IF THE PLAINTIFFS MADE NO SEPARATE OBJECTION TO THAT

21   COUNTER-DESIGNATION, WE ESSENTIALLY VIEWED IT AS CURING THE

22   106 OBJECTION AND SO IT -- THERE NEED -- IN AN EFFORT TO

23   NARROW THE ISSUES FOR THE COURT TO DECIDE, WE DID NOT PRESENT

24   THOSE TO THE COURT.

25         **THE COURT:**  SO I DIDN'T HAVE TO MAKE ALL THOSE

```
 1    RULINGS?

 2           MS. DEARBORN:  THAT'S -- THAT WAS OUR UNDERSTANDING,

 3    YOUR HONOR.

 4           THE COURT:  I MEAN, THAT'S NOT HELPFUL, GUYS.  I

 5    MEAN, SERIOUSLY, WHY GIVE IT TO ME IF I DON'T HAVE TO MAKE A

 6    RULING?

 7           MS. DEARBORN:  WE LISTED OUR DESIGNATION AND

 8    COUNTER-DESIGNATIONS FROM EACH PARTY IN AN EFFORT TO IDENTIFY

 9    WHICH PARTICULAR PORTION OF THE DEPOSITION TRANSCRIPT WAS

10    BEING DESIGNATED BY EACH PARTY, WHICH THEN ALLOWS FOR

11    ACCOUNTING OF TIME.

12           MR. ISAACSON:  BUT WE TAKE YOUR POINT.

13           MS. DEARBORN:  YES.

14           MR. ISAACSON:  YOU SHOULD HAVE BIG BOLD WARNINGS, AND

15    WE DIDN'T DO THAT.

16           THE COURT:  OKAY.  DON'T GIVE ME SOMETHING IF I DON'T

17    HAVE TO RULE ON IT.

18           MS. DEARBORN:  YES, YOUR HONOR.

19           THE COURT:  PLAINTIFF'S MOTION NO. 1, SOMEBODY WAS

20    GOING TO GIVE ME SOME ADDITIONAL INFORMATION.

21           MR. COUGHLIN:  I THINK COUNSEL FOR -- APPLE WAS GOING

22    TO GIVE SOME ADDITIONAL INFORMATION, YOUR HONOR.

23                   (PAUSE IN THE PROCEEDINGS.)

24           MS. DUNN:  OKAY.  SO YOU HAD ASKED US FOR REFERENCES

25    TO SPECIFIC INSTANCES WHERE THE LEGALITY OF REAL'S ACTIONS
```

```
 1    WERE IN DISPUTE, SPECIFICALLY HAVING TO DO WITH WHETHER THIS

 2    ISSUE HAD COME UP IN LITIGATION, WHETHER DOCUMENTS HAD BEEN

 3    EXCHANGED, WHETHER QUESTIONS HAD BEEN ASKED IN DEPOSITION.

 4        YOU ASKED FOR ACTUAL DOCUMENTS HIGHLIGHTED, COPIES TO THE

 5    PLAINTIFF WITH AN INDEX OF EACH DOCUMENT REFERENCED AND RELIED

 6    UPON, AND YOU WANTED US TO INTERLINEATE WHETHER APPLE CLAIMS

 7    THAT CASE HAD CHANGED.

 8              THE COURT:  WHEN CAN YOU DO THAT?

 9         MS. DUNN:  WHEN CAN WE DO THAT?

10                   (OFF-THE-RECORD DISCUSSION.)

11         MR. ISAACSON:  FORTY-EIGHT HOURS?

12         MS. DUNN:  YEAH.

13         MR. ISAACSON:  FRIDAY?

14         MS. DUNN:  FRIDAY?  WE'RE OBVIOUSLY AT THE SERVICE OF

15    THE COURT.  BUT 48 HOURS WOULD HELP.

16              THE COURT:  OKAY.  FRIDAY.

17         MR. COUGHLIN:  YOUR HONOR, WE WOULD HAVE TO TAKE A

18    LOOK AT THAT AND IF -- I GUESS IF WE COULD GET BACK TO YOU NO

19    LATER THAN MONDAY OR TUESDAY WITH --

20              THE COURT:  WELL, THE QUESTION IS WHEN WE'RE GOING TO

21    MEET AGAIN.  WE'RE GOING TO HAVE TO MEET AGAIN, SO I DON'T

22    KNOW IF YOU'RE GOING TO WANT TO RESPOND TO THAT IN WRITING OR

23    IF YOU'RE JUST GOING TO WANT TO ARGUE IT.

24         MR. COUGHLIN:  I'D HAVE TO LOOK AT IT.

25              THE COURT:  ALL RIGHT.  SO LET'S FIGURE OUT IN A
```

1    MINUTE WHEN YOUR RESPONSE WILL BE DUE.

2        OKAY.  I'M GOING TO NEED A PROPOSED FORM OF ORDER FROM

3    EACH OF YOU ON EACH OF YOUR MOTIONS IN LIMINE.  AND I'M GOING

4    TO GO ASK THAT YOU DO IT IN THE FIRST INSTANCE SO THAT WE'RE

5    ALL CLEAR ABOUT WHAT HAS BEEN EXCLUDED, WHAT HASN'T BEEN

6    EXCLUDED.  AND TO THE EXTENT THAT THERE ARE DISAGREEMENTS OVER

7    THE OTHER SIDE'S VIEW, IT'S IMPORTANT FOR US TO KNOW IT NOW SO

8    THAT THEN THAT PROPOSED ORDER CAN GET MODIFIED.

9        I TEND TO FIND THAT IT'S REFERENCED FREQUENTLY DURING

10   TRIALS, SO I WILL AMEND IT -- I'D ALREADY STARTED ONE, BUT I

11   THINK IN LIGHT OF ALL OF THE SUB-RULINGS THAT WERE MADE, WITH

12   RESPECT TO MANY OF THESE MOTIONS, THAT IT WILL BE HELPFUL TO

13   ME TO HAVE YOU ARTICULATE WHAT YOU HEARD, AND THEN WE CAN

14   CONFIRM WHAT I ORDERED.  OKAY?

15       SO I'D LIKE THAT BY -- I COULD HAVE IT BY FRIDAY FROM EACH

16   OF YOU, AND THEN WE CAN TALK ABOUT IT NEXT WEEK.

17       ALL RIGHT.  WAS THERE ANY -- DOES ANYBODY HAVE ANYTHING ON

18   THEIR LIST REGARDING THE MOTIONS IN LIMINE?

19           **MS. SWEENEY:**  THIS WILL BE ADDRESSED AGAIN IN THE

20   PROPOSED ORDERS, YOUR HONOR, BUT IN RESPONSE TO APPLE'S

21   MOTIONS IN LIMINE 1 THROUGH 3, WE DID PROVIDE IN OUR PROPOSED

22   ORDER -- YOUR HONOR HAD ASKED ME, AND I DIDN'T REALIZE THAT WE

23   HAD PROVIDED IN OUR PROPOSED ORDER IF YOUR HONOR DOES GRANT

24   THAT, THEN WHICH CORRESPONDING TESTIMONY FROM APPLE'S

25   WITNESSES SHOULD BE STRICKEN.  THAT'S -- THAT'S ALL DELINEATED

1    THERE.

2            **MR. ISAACSON:**  RIGHT.  AND WE SHOULD PROVIDE YOU OUR

3    RESPONSE ON THAT I THINK IS WHAT YOU INDICATED.  WE BEGAN

4    LOOKING AT THAT.

5            **THE COURT:**  OKAY.  CAN YOU HAVE THAT BY TOMORROW?

6            **MR. ISAACSON:**  YES.

7                    (PAUSE IN THE PROCEEDINGS.)

8            **MS. SWEENEY:**  TWO MORE ISSUES, YOUR HONOR.  WITH

9    RESPECT TO EXHIBITS 11, 12, 13, 14, WE WERE GOING TO PROVIDE

10   YOU EXACT LINE, PAGE NUMBERS FOR WHERE THAT'S SUPPORTED BY AN

11   OPINION IN PROFESSOR NOLL'S REPORT.  AND WE WILL GET THAT TO

12   YOU BY FRIDAY OR -- OR WHEN WE SUBMIT THESE OTHER MATERIALS.

13           **MR. COUGHLIN:**  BY FRIDAY, YOUR HONOR.  OR IF WE'RE

14   NOT GOING TO USE IT, WE'LL TELL YOU THAT, TOO.

15           **MS. SWEENEY:**  AND THEN WITH RESPECT TO THE

16   PLAINTIFFS' MOTION REGARDING CUMULATIVE TESTIMONY BY THE

17   EXPERTS --

18           **THE COURT:**  HOLD ON.

19           **MS. SWEENEY:**  I'M SORRY.

20           **THE COURT:**  I JUST WANT TO MAKE A NOTE ON THESE.

21                   (PAUSE IN THE PROCEEDINGS.)

22           **THE COURT:**  OKAY.  GO AHEAD.

23           **MS. SWEENEY:**  THIS IS PLAINTIFFS' MOTION IN LIMINE

24   NO. 2, CUMULATIVE EXPERT TESTIMONY.  WE AGREED TO PROVIDE YOUR

25   HONOR WITH CITATIONS TO THE MURPHY AND NOLL REPORTS WHERE THEY

1    BOTH GIVE OPINIONS AND TESTIMONY ABOUT CAUSATION OR LACK

2    THEREOF.  AND WE CAN DO THAT BY FRIDAY AS WELL.

3              **THE COURT:**  THAT'S FINE.  I HAVE TO TELL YOU THAT

4    CAUSATION IS SUCH A COMPLICATED ISSUE.  I THINK IT'S GOING TO

5    BE A TOUGH RIDE FOR YOU.  YOU MAY THINK ABOUT WHETHER OR NOT

6    YOU REALLY WANT TO SPEND THE TIME.  BUT GO AHEAD.

7         SO THAT'S NO. 2?  BY FRIDAY?

8              **MS. SWEENEY:**  YES, YOUR HONOR.

9              **THE COURT:**  OKAY.  ANYTHING ELSE ON YOUR LIST?  THE

10   MONITOR'S REPORT -- WELL, I GUESS I HAVE THAT NOW 'CAUSE I

11   HAVE ALL THE EXHIBITS.

12                   (PAUSE IN THE PROCEEDINGS.)

13             **MR. COUGHLIN:**  YOUR HONOR, I THINK THAT WE WILL --

14   WE'LL GET WITH COUNSEL HERE AND WORK -- WORK ON THE

15   STIPULATIONS TO ADMIT.  I THINK WE BOTH WENT THROUGH IT, THAT

16   IF WE DIDN'T HAVE AN OBJECTION, WE MEANT THAT WAS -- FELL INTO

17   YOUR STIPULATION TO ADMIT.

18        WE ALSO BOTH AGREE THAT WE'RE NOT GOING TO BE JUST PUTTING

19   IN EXHIBITS WITHOUT A WITNESS, SO -- AND WE UNDERSTAND THOSE

20   WON'T -- ANY WITNESS -- ANY -- ANY DOCUMENT WE DON'T USE WITH

21   A WITNESS WILL NOT BE GOING BACK TO THE JURY.

22             **THE COURT:**  AT LEAST NOT WITHOUT PERMISSION.

23        OKAY.  WELL, I DON'T NEED THAT IMMEDIATELY.  I'D LIKE --

24             **MR. COUGHLIN:**  OKAY.

25             **THE COURT:**  -- BE PREPARED BEFORE EVIDENCE STARTS,

1    SO, YOU KNOW, AS LONG AS I HAVE IT THE WEEK BEFORE SO I CAN

2    FIX MY TRIAL BINDER, THAT'S FINE.

3         **MR. COUGHLIN:**  YOUR HONOR, SOMETHING THAT WAS UNCLEAR

4    AT LEAST TO ME WAS I DIDN'T SEE THAT WE HAD TO PROVIDE YOU

5    WITH ANY VOIR DIRE THAT WE INTEND TO DO, THE 20 MINUTES, AHEAD

6    OF TIME; IS THAT CORRECT?

7         **THE COURT:**  YOU MEAN ISSUES THAT YOU WANT ME TO

8    ADDRESS?

9         **MR. COUGHLIN:**  NO, ISSUES THAT WE MIGHT ADDRESS.

10        **THE COURT:**  WHAT'S THE QUESTION AGAIN?

11        **MR. COUGHLIN:**  THE QUESTION WAS WE -- WE WEREN'T

12   GOING TO SUBMIT ANY OF THAT TO YOU.

13        **THE COURT:**  NO.

14        **MR. COUGHLIN:**  THAT'S JUST US TALKING TO THE JURY.

15        **THE COURT:**  THAT'S YOUR -- THAT'S YOUR 20 MINUTES.

16   IT'S NOT A LOT OF TIME.  I CAN'T IMAGINE THAT YOU WOULD WASTE

17   IT WITH IRRELEVANT QUESTIONS.

18        **MR. COUGHLIN:**  I HOPE NOT, YOUR HONOR.

19        **THE COURT:**  I THINK ONLY ONCE I'VE STRICKEN A

20   QUESTION, BUT AS A LAW STUDENT, I LAUGHED AT A QUESTION.  GOT

21   ME OFF THE JURY PRETTY QUICKLY WHEN I WAS IN THE BOX.

22      YEAH, BUT I DON'T --

23        **MR. COUGHLIN:**  JUST SO I UNDERSTAND, YOUR HONOR,

24   YOU'RE GOING TO -- THE RANDOM -- THEY'RE GOING TO BE PICKED

25   RANDOMLY --

 1              **THE COURT:**  I CAN GO OVER THAT QUICKLY.  I DID IT

 2   WITH THESE GUYS.  I UNDERSTAND YOU'RE NEW TO THE CASE, 'CAUSE

 3   I DO IT DIFFERENTLY.

 4       SO I HAVE IN THE BOX THERE 14 SEATS.  I ADD ABOUT 4 MORE,

 5   4 TO 6.  THAT GIVES ME -- I HAVE TO BE ABLE TO SEE THEM, SO

 6   ABOUT 18.

 7       WHAT YOU WILL GET IS TWO LISTS.  ONE IS THE -- THE FIRST 2

 8   PAGES OF THE RANDOM AND THE COMPLETE ALPHABETICAL LIST.  WE

 9   WILL TAKE THE FIRST 18 PEOPLE OFF OF THE RANDOM, AND THEY WILL

10   BE RE-SORTED IN ALPHABETICAL ORDER, AND THEY WILL BE PUT INTO

11   THE BOX IN ALPHABETICAL ORDER SO THAT THE JURORS DON'T KNOW

12   WHERE THEY STAND IN THE RANKING ON THE RANDOM.

13       AND THEN --

14              **MR. COUGHLIN:**  BUT WE KNOW.

15              **THE COURT:**  YOU KNOW 'CAUSE YOU HAVE THE --

16                    (SIMULTANEOUS COLLOQUY.)

17              **THE COURT:**  ABOUT THE FIRST BOX.

18       SO THAT'S ABOUT FOUR -- IT'S ABOUT THE -- WHAT I PUT, SO

19   ABOUT 18 NAMES.  I'M ONLY SEATING -- WHAT DID I TELL YOU?

20              **MR. COUGHLIN:**  YOU SAID NINE, YOUR HONOR.

21              **THE COURT:**  NINE.

22              **MR. COUGHLIN:**  AND I WAS WONDERING IF WE -- HATE TO

23   HAVE TO CONVINCE MORE THAN WE NECESSARILY HAVE TO.  IT'S SUCH

24   A SHORT TRIAL.  IT SEEMS LIKE SEVEN WOULD BE PLENTY,

25   ESPECIALLY WITH THE BREAK.

```
 1          THE COURT:  NO WAY.  I'M NOT DOING SEVEN IN THIS

 2    CASE.  I HAVE A THANKSGIVING BREAK IN THERE.

 3          MR. COUGHLIN:  OKAY.

 4          THE COURT:  YOU KNOW, I'D CONSIDER EIGHT.  I'LL CHEW

 5    ON THAT, BUT CERTAINLY NOT SEVEN.

 6          MR. COUGHLIN:  UNDERSTAND.

 7          THE COURT:  THAT GIVES ME NO FLEXIBILITY WHATSOEVER.

 8          MR. COUGHLIN:  JUST WANTED TO ASK.

 9          THE COURT:  IN ANY EVENT, I'M USUALLY PRETTY CLOSE

10    AFTER WE DO -- I DO THE VOIR DIRE, YOU DO YOUR OWN VOIR DIRE.

11    I'LL RELEASE THE JURORS, THE EXPIRE PANEL.  THEY'LL LEAVE THE

12    COURTROOM.  I'LL HEAR YOUR CHALLENGES FOR CAUSE.  AND THEN AT

13    THAT POINT, YOU WILL START STRIKING.

14        AND YOU STRIKE FROM THE ENTIRE PANEL THAT HAS BEEN

15    QUESTIONED.  YOU EACH GET FOUR, SO ONCE YOU USE THOSE OR IF

16    YOU WANT TO SAVE, YOU CAN.  BUT IF I HAVE THE TOP NINE, OR THE

17    TOP EIGHT, THAT'S MY JURY.

18        IF I'VE STRUCK SO MANY FOR CAUSE THAT I HAVE -- WE NEED TO

19    VOIR DIRE TWO OR THREE MORE, THEN I START TAKING THEM OFF THE

20    RANDOM ONE AT A TIME.  YOU DON'T KNOW WHO'S COMING UP, AND I

21    DON'T TELL YOU IN ADVANCE SO YOU TAKE THAT RISK JUST LIKE YOU

22    WOULD OTHERWISE.

23          MR. COUGHLIN:  SO --

24          THE COURT:  AND I DO THEM ONE AT A TIME.

25          MR. COUGHLIN:  SO IF WE'VE USED UP OUR -- THEN WE'RE
```

1  DONE AND --

2          **THE COURT:**  IF YOU'VE USED THEM ALL UP, YES, THEN YOU

3  ARE DONE UNLESS THERE'S A CHALLENGE FOR CAUSE.

4          **MR. COUGHLIN:**  GOT IT.

5          **THE COURT:**  IF YOU HAVEN'T -- AND THAT'S WHAT

6  HAPPENED IN MY LAST TRIAL.  ONE SIDE HAD ONE, THE OTHER SIDE

7  HAD NONE, AND WE DEALT WITH THEM ONE AT A TIME AS THEY CAME

8  UP.

9      BUT I HAVE A PRETTY GOOD SENSE ABOUT WHETHER SOMEONE'S

10  GOING TO BE CHALLENGED, AND SO IF I'M HAPPY WITH THAT ONE,

11  THEN YOU GET TO MEET AT SIDEBAR AND TELL ME WHETHER OR NOT

12  YOU'RE GOING TO USE THAT LAST ONE.

13      IF I THINK THERE'S SOME RISKS, THEN I'LL CALL SOMEONE ELSE

14  UP, BUT IT'S KIND OF IN MY DISCRETION, SO -- ALL RIGHT?

15  EVERYBODY UNDERSTAND THAT PROCESS?

16          **MR. ISAACSON:**  JUST ONE QUESTION, THE -- THE LISTS,

17  WHEN DO WE GET THOSE?

18          **THE COURT:**  YOU WILL GET THOSE TWO LISTS ON -- WELL,

19  YOU'LL GET THE RANDOM LIST ON MONDAY, WHICH IS THE DATE OF

20  JURY SELECTION.  I THINK THAT I CAN HAVE FOR YOU THE

21  QUESTIONNAIRES -- IF WE'RE NOT MEETING ON THE 10TH, I'LL HAVE

22  A PACKET FOR YOU AT THE CLERK'S OFFICE WITH A COPY OF

23  QUESTIONNAIRES OF EVERYONE IN THE POOL.  THAT WAY YOU CAN

24  REVIEW THEM IN ADVANCE OF MONDAY.

25      ON MONDAY, THEY WILL COME IN AND THEY WILL FILL OUT THEN

```
1    THE SECOND QUESTIONNAIRE, A COPY OF WHICH I GAVE YOU TODAY.
2    THAT SET OF QUESTIONNAIRES, AS SOON AS THEY FILL THEM OUT,
3    WE'LL MAKE COPIES.  WE'LL MAKE TWO COPIES FOR EACH SIDE.
4    YOU'LL HAVE TO SEND SOMEONE OUT TO RUN ACROSS THE STREET AND
5    MAKE MORE COPIES IF YOU WANT -- YOU KNOW, YOU CAN KEEP ONE,
6    SOMEONE ELSE CAN RUN OUT AND COPY THE OTHER ONE.  AND THAT
7    INFORMATION YOU'LL HAVE THAT MORNING, AND THAT'S -- IT'S JUST
8    THE WAY WE DO IT.
9        I DID HAVE ONE -- WE'VE PRESCREENED THESE FOLKS, SO WE'RE
10   HOPING NOT TO HAVE ISSUES.  I DID HAVE ONE INDIVIDUAL WHO
11   WORKED FOR APPLE, AND I TOLD THEM TO TAKE HIM OUT OF THE POOL,
12   PUT HIM ON ANOTHER PANEL.  SO OTHER THAN THAT, I HAVEN'T HEARD
13   ANY REAL ISSUES OR PROBLEMS.  OKAY?
14       OTHER QUESTIONS ABOUT THAT?
15           MR. COUGHLIN:  NO, I THINK THAT COVERS IT.
16           THE COURT:  OKAY.  FROM YOUR SIDE --
17           MR. ISAACSON:  YES, YOUR HONOR.
18           THE COURT:  -- MR. ISAACSON?
19           MR. ISAACSON:  OH --
20           THE COURT:  DURING ONE OF THE BREAKS, I PULLED SOME
21   INFORMATION ABOUT RULE 23, AND I -- I HAVE TO TELL YOU I'M
22   VERY CONCERNED RIGHT NOW ABOUT THIS ISSUE OF THE PORTION OF
23   THE CLASS THAT IS DEALT WITH WITH RESELLERS AND THE COURT'S
24   ROLE IN PROTECTING THOSE INDIVIDUALS AND WHETHER OR NOT I
25   SHOULD BE DOING SOMETHING RIGHT NOW TO DEAL WITH IT.
```

```
 1        I UNDERSTAND THAT THE PLAINTIFFS ARE ASKING FOR THIS

 2   UNNAMED CLASS MEMBER TO TESTIFY.  THERE HASN'T BEEN A REQUEST

 3   TO --

 4                   (SIMULTANEOUS COLLOQUY.)

 5        THE COURT:  -- IDENTIFY THIS PERSON AS A CLASS

 6   REPRESENTATIVE.

 7        MR. COUGHLIN:  WE COULD, YOUR HONOR.  IN FACT, IN

 8   LIGHT OF YOUR HONOR'S CONCERNS, I THINK WE SHOULD MOVE TO

 9   INTERVENE.

10        THE COURT:  AND I THINK THE ISSUE HAS TO BE

11   ADDRESSED.  I REALLY DO, BECAUSE -- AND I HAVE TO SAY, I --

12   YOU KNOW, I HAVE SOME AFFIRMATIVE OBLIGATIONS MYSELF HERE.  I

13   UNDERSTAND THAT THERE ARE POTENTIAL ISSUES OF PREJUDICE.

14        I'M -- YOU KNOW, I'M WONDERING IF I NEED TO DO SOMETHING

15   ABOUT THAT INCLUDING, FRANKLY -- DESPITE ALL THE WORK THAT'S

16   BEEN DONE WHETHER I HAVE TO, YOU KNOW, KICK THIS A COUPLE

17   WEEKS TO MAKE SURE YOU HAVE YOUR OPPORTUNITY TO DEPOSE OR TO

18   DO WHAT YOU'RE GOING TO DO.

19        BUT I -- I'M -- IT'S A QUANDARY.  I HAVEN'T FULLY

20   RESEARCHED OR ANALYZED THE COURT'S OWN AFFIRMATIVE OBLIGATIONS

21   ON THIS FRONT.  THE -- THE RIGHTS AND -- OF THE CLASS, THE

22   IMPLICATIONS OF WHAT -- OF A RULING OR A JUDGMENT IN THIS CASE

23   ON EITHER SIDE, EITHER THE -- FOR THE PLAINTIFFS OR THE

24   DEFENSE.  AND I -- I DON'T THINK IT HAS BEEN FULLY FLUSHED

25   OUT, AND I THINK IT NEEDS TO BE.
```

```
 1          I JUST -- I DO HAVE SOME CONCERNS.  AND -- AND I TAKE

 2     IT -- DID NO -- I MEAN, TELL ME MORE ABOUT THIS -- ABOUT THIS

 3     RESELLER.  I MEAN, IS HE JUST A SMALL-TIME OPERATOR?  WHAT IS

 4     HE?  AND, YOU KNOW, DID YOU GO AND -- AND -- DID YOU TALK TO

 5     THE TRUSTEE FOR CIRCUIT CITY?  DID YOU -- I MEAN, DID YOU DO

 6     ANYTHING IN TERMS OF -- OR WHAT IS IT THAT YOU DID?  AS CLASS

 7     COUNSEL, WHAT DID YOU DO --

 8               MR. COUGHLIN:  YOUR HONOR?

 9               THE COURT:  -- TO TRY TO FIND A PLAINTIFF TO -- TO

10     REPRESENT THESE RESELLERS?

11               MR. COUGHLIN:  YOUR HONOR, WE REALLY BELIEVED THAT --

12     THAT IT WAS SUFFICIENT AND JUDGE WARE FOUND -- AND IT CAME UP

13     TWICE -- THAT THE CONSUMERS WERE GOOD ENOUGH.

14          OF COURSE AT THE TIME THAT ALL THIS WAS HAPPENING, IT WAS

15     TOUGH -- CERTAINLY IT'S GOING TO BE TOUGH TO GET BEST BUY WHO

16     HAS ALL THE APPLE PRODUCTS TO -- TO COME IN HERE.  AND SO IT

17     WAS MORE LIKELY THAN NOT GOING TO BE A SMALLER RETAILER LIKE

18     THIS GENTLEMAN WAS WHO HAD A COUPLE SHOPS.  AND, FRANKLY, WE

19     THOUGHT WE WERE FINE UNTIL -- I THINK IT WAS EVEN -- MIGHT

20     HAVE BEEN A COMMENT BY YOUR HONOR RIGHT -- TWO HEARINGS AGO.

21          AND SO WE, YOU KNOW, STARTED MORE DILIGENTLY SEARCHING,

22     AND WE CAME UPON THIS PERSON WHO LIVES UP IN TAHOE, AND HE

23     AGREED TO COME DOWN AND MEET WITH US ABOUT A WEEK AND A HALF

24     AGO FOR THE FIRST TIME.  WE MET WITH HIM.  HE OWNED A SMALL

25     SHOP.  HE IS IN THE DOCUMENTS AND ALWAYS HAS BEEN IN THE
```

```
 1    DOCUMENTS THAT APPLE PRODUCED TO US ON RESELLERS.  THAT IS

 2    TRUE.  BUT HE AGREED TO TALK TO US AND DID AND HAS AGREED TO

 3    TESTIFY, AND HE WOULD --

 4       I THINK WITH YOUR HONOR RAISING THIS ISSUE, WE CAN

 5    INTERVENE HIM.  I THINK THEY HAVE ENOUGH TIME TO DEPOSE HIM

 6    AND WE CAN KEEP THE SCHEDULE, BUT I WOULD OF COURSE LEAVE THAT

 7    UP TO THEM.

 8            MR. ISAACSON:  HOW MANY IPODS DID DELAWARE COMPUTER

 9    BUY DURING THE CLASS PERIOD?

10            MR. COUGHLIN:  WELL, IT'S IN THE -- IT'S IN THE

11    RECORD.  I THINK IT WAS -- IT WAS PROBABLY HUNDREDS.

12               (PAUSE IN THE PROCEEDINGS.)

13            MR. ISAACSON:  I JUST NEED TO UNDERSTAND A NOTE I'VE

14    BEEN GIVEN, IF YOU'LL GIVE ME A MOMENT.

15               (PAUSE IN THE PROCEEDINGS.)

16            MR. COUGHLIN:  IT WAS $60,000 WORTH APPROXIMATELY AS

17    FAR AS A DOLLAR FIGURE.  DOES THAT TRANSLATE -- I'M NOT

18    EXACTLY SURE HOW THAT TRANSLATES, 'CAUSE THEY'RE 299, AND

19    THEY'RE DIFFERENT PRICES.

20            MR. ISAACSON:  THAT'S ABOUT WHAT WE HAVE.  WE WERE

21    ACTUALLY GOING TO GIVE YOU 70,000, BUT I DON'T THINK THAT

22    THAT'S MATERIALLY DIFFERENT.  I THINK YOU'RE GOING TO RUN INTO

23    THE SAME ISSUE AS TO -- WHETHER THIS VERY SMALL PURCHASER

24    REPRESENTS THE CIRCUIT CITIES AND THE BEST BUYS AND WHATNOT.

25            MR. COUGHLIN:  WELL, WE CERTAINLY THINK HE DOES THAT.
```

```
 1              THE COURT:  WELL, CIRCUIT CITY DOESN'T HAVE A

 2   RELATIONSHIP WITH APPLE ANYMORE.  HAVE YOU -- HAVE YOU REACHED

 3   OUT TO THE TRUSTEE?  I MEAN, THERE -- THE REASON I ASK IS

 4   BECAUSE THEY'RE -- THEY'RE AFFILIATED WITH THE LITHIUM ION

 5   BATTERIES CASE THAT I'M OVERSEEING.

 6              MS. SWEENEY:  I HAVE, YOUR HONOR.  AND, YOU KNOW,

 7   THEY MAY STEP IN.  THEY MAY -- THEY PERHAPS WOULD BE WILLING

 8   TO STEP IN.  THEY HAVE A LOT OF LITIGATION GOING ON AT THE

 9   MOMENT.  I THINK THAT THEY'RE SOMEWHAT RELUCTANT TO GET

10   INVOLVED IN MORE LITIGATION, BUT WE CAN APPROACH THEM AGAIN.

11              MR. ISAACSON:  THEY'RE INVOLVED IN A HOST OF

12   ANTITRUST CASES, LCD'S --

13              THE COURT:  WELL, I KNOW.  AND THAT'S -- I JUST HAVE

14   TO -- I MEAN, LOOK, I -- I REALLY DON'T WANT TO DELAY THIS,

15   BUT I ALSO THINK THAT IF IT'S GOING TO BE DONE, IT NEEDS TO BE

16   DONE PROPERLY.

17              MR. ISAACSON:  I MEAN --

18              THE COURT:  AND -- AND --

19              MR. ISAACSON:  A FULL RULE 23 PROCEEDING TAKES SOME

20   TIME.  IT'S MORE THAN A DEPOSITION.  WE ARE TALKING ABOUT

21   BRIEFING OF CLASS CERTIFICATION FOR A CLASS THAT'S ASSERTING

22   $150 MILLION IN CLAIMS.  AND YOU'RE GOING TO NEED -- BEYOND

23   THE DEPOSITION, WE DON'T KNOW WHAT DOCUMENTS THIS PERSON HAS.

24   AND IT'S NOT A MATTER OF JUST ROLLING INTO A -- THIS IS NOT

25   THE SAME -- ADVANCING THIS PERSON AS A CLASS REPRESENTATIVE AS
```

1   OPPOSED TO A WITNESS IS ANOTHER SIGNIFICANT STEP.

2       THERE WAS A LOT OF PREJUDICE WITH A WITNESS -- WITH A

3   SURPRISE WITNESS.  NOW WE HAVE AN ENTIRELY NEW CLASS

4   REPRESENTATIVE INTENDED TO PROTECT AN ISSUE THEY DID NOT

5   PROTECT BEFORE.

6           **THE COURT:**  RIGHT, BUT THE EVIDENCE WON'T BE THE

7   SAME -- WON'T BE ANY DIFFERENT.

8           **MR. COUGHLIN:**  NO DIFFERENT.

9           **MS. SWEENEY:**  THAT'S RIGHT, YOUR HONOR.

10          **MR. ISAACSON:**  I DON'T KNOW THAT.

11          **THE COURT:**  WELL --

12          **MR. ISAACSON:**  I'VE NEVER EVEN MET THIS PERSON OR --

13          **THE COURT:**  WELL, THE EVIDENCE IN TERMS OF WHAT IS

14  BEING PROFFERED FOR DAMAGES CAN'T CHANGE.

15          **MR. ISAACSON:**  OH, THAT -- THAT EVIDENCE.  BUT THE

16  EVIDENCE ABOUT -- THE RULE 23 PROCEEDING, THOUGH, IS A

17  SEPARATE PROCEEDING.  THAT'S NOT SOMETHING THAT GETS DONE IN A

18  WEEK OR TWO.

19          **THE COURT:**  WELL, I -- WELL, THAT'S WHY I'M RAISING

20  IT, MR. --

21          **MR. ISAACSON:**  AND I APPRECIATE YOU RAISING IT,

22  AND -- BUT I'M -- AND I'M TRYING TO FORTHRIGHTLY TELL YOU THAT

23  THIS IS AN EXTENSIVE PROCEEDING.  I THINK IT'S WORTH HAVING

24  BECAUSE THERE'S NO POINT IN GOING THROUGH A TRIAL ON THIS

25  AMOUNT OF MONEY WHEN THERE'S NOT AN ADEQUATE CLASS

1    REPRESENTATIVE.

2         **MR. COUGHLIN:**  YOUR HONOR, WE THINK WE HAD A RULE 23

3    PROCEEDING, AND ALLS THAT WE WOULD BE DOING NOW IS ADDING A

4    REPRESENTATIVE SO THAT WHAT THE COURT WAS CONCERNED ABOUT WAS

5    STANDING, REALLY, OF THE CONSUMERS TO REPRESENT THE RETAILERS.

6    AND WE THINK OUR CONSUMERS DID.  AND IT DOESN'T CHANGE ANY OF

7    THE TRIAL EXCEPT AS TO THAT ONE WITNESS.  AND IT'S VERY

8    LIMITED.

9       I THINK THAT THE WITNESS WOULD BE ON THE STAND NO MORE

10   THAN 10 OR 15 MINUTES TOPS.

11        **MR. ISAACSON:**  WELL, I MEAN, IT DOES -- LET'S BE

12   CLEAR.  IF YOU CUT OUT THE RESELLER CLASS, DR. NOLL'S

13   TESTIMONY AND DAMAGE MODEL IS -- THERE'S A WHOLE SEPARATE SET

14   OF ASSUMPTIONS AND FACTORS HE DOES FOR THE RESELLERS.  HE

15   WON'T DO THAT WITHOUT THE RESELLERS THERE.

16      IT IS A DIFFERENT TRIAL AND A DIFFERENT EVIDENTIARY

17   PRESENTATION.  HE HAS DIFFERENT --

18        **THE COURT:**  NO.

19        **MR. ISAACSON:**  -- NUMBERS.

20        **THE COURT:**  I UNDERSTAND THAT HE HAS DIFFERENT

21   NUMBERS.  WHAT -- BUT HE CAN'T CHANGE HIS REPORT, SO WHAT I

22   MEANT IN TERMS OF THE EVIDENCE IS ALL THE DOCUMENTS ARE THE

23   SAME.  THE EXPERT REPORTS ARE THE SAME.  AREN'T THEY?  I

24   MEAN --

25        **MR. ISAACSON:**  THE DISCOVERY RECORD AND THE ACTUAL

1    REPORTS ARE FINISHED AND FIXED, YES.

2              **THE COURT:**  YES.  ALL OF THAT -- ALL OF THAT'S THE

3    SAME.

4              **MR. ISAACSON:**  BUT THAT DOESN'T MEAN WE DON'T

5    STREAMLINE THIS TRIAL -- I MEAN --

6              **THE COURT:**  WELL, IF -- IF I DECERTIFIED A RESELLER

7    CLASS, THEN OBVIOUSLY YES.  I MEAN, IT CUTS IT IN HALF, RIGHT?

8              **MR. ISAACSON:**  UM-HMM.

9              **MS. SWEENEY:**  IT WOULDN'T CUT IT IN HALF BY ANY

10   MEANS, YOUR HONOR.

11             **THE COURT:**  WELL, YOU'RE ACTUALLY RIGHT.  IT WOULDN'T

12   CUT IT SO MUCH IN HALF.  IT WOULD JUST CUT OUT THE DAMAGES

13   PORTION OF -- CUT OUT A PART OF HIS NUMBERS.

14             **MR. COUGHLIN:**  THAT'S CORRECT.

15             **THE COURT:**  RIGHT?  'CAUSE HE'S -- BECAUSE MY

16   UNDERSTANDING IS THAT ALL THE TESTIMONY IS THE SAME.  IT'S

17   JUST THAT HE WOULD ONLY BE TESTIFYING AS TO THE CONSUMER

18   PORTION VERSUS THE RESELLER.

19             **MR. ISAACSON:**  RIGHT.  AND HIS RESELLER TESTIMONY

20   INVOLVES DIFFERENT ASSUMPTIONS AND CALCULATIONS BECAUSE OF THE

21   RESELLERS' DIFFERENCES IN PURCHASING FROM THE -- FROM THE

22   CONSUMERS.

23             **MS. SWEENEY:**  I JUST WOULD TAKE ISSUES WITH THAT.

24   IT'S DIFFERENT NUMBERS.  IT'S DIFFERENT DATA POINTS, BUT IT'S

25   THE SAME METHODOLOGY, HAS ALWAYS BEEN THE SAME METHODOLOGY FOR

1    BOTH SEGMENTS OF THE CLASS.

2                    (OFF-THE-RECORD DISCUSSION.)

3            **MR. ISAACSON:**  YEAH, I MEAN, HE'S GOT TWO DIFFERENT

4    MODELS ON THESE -- ON THESE TWO GROUPS.

5            **MR. COUGHLIN:**  YOUR HONOR, WE'VE GOT --

6            **THE COURT:**  WELL, PERHAPS -- GO AHEAD.

7            **MR. COUGHLIN:**  YOUR HONOR, WE'VE GOTTEN HERE TODAY

8    WITH -- WE'VE ALREADY NOTIFIED BOTH SIDES OF THIS CLASS, BOTH

9    THE RESELLERS, YOU KNOW, AND THE CONSUMERS, SO THEY'VE BEEN

10    NOTIFIED.

11        AND AT THE TIME THAT THEY WERE NOTIFIED, THE

12    REPRESENTATIVES, THE CONSUMERS WERE FOUND TO HAVE BEEN

13    ADEQUATE FOR BOTH THE RESELLERS AND FOR THE CONSUMERS.

14            **THE COURT:**  I UNDERSTAND.

15            **MR. COUGHLIN:**  SO WE -- WE ALSO FEEL AN OBLIGATION

16    TO, YOU KNOW, IF -- IF WHAT HE'S SAYING IS HE NEEDS A LITTLE

17    MORE TIME, THAT'S ONE THING.  IF WHAT HE'S SAYING THAT WE'RE

18    SOMEHOW GOING TO DROP HALF THIS CLASS, THAT'S A WHOLE

19    DIFFERENT THING, AND WE DON'T AGREE WITH THAT.

20            **MR. ISAACSON:**  AND LET'S BE CLEAR ABOUT THE NOTICE.

21    THE NOTICE DID NOT GIVE THE RESELLERS A RIGHT TO COME IN AND

22    OBJECT TO BEING PART OF THIS CLASS.  WAS NOT A FAIRNESS

23    HEARING.  IT WAS JUST A NOTICE OF THIS IS THE WAY IT IS.

24            **MR. COUGHLIN:**  THAT THEY'RE REPRESENTED, AND THAT

25    THIS CASE --

```
 1              MR. ISAACSON:  YES.

 2              MR. COUGHLIN:  -- IS GOING FORWARD.

 3              MR. ISAACSON:  AND WITH NO NOTIFICATION OF YOU CAN

 4    COME IN AND SAY, WE DON'T LIKE THIS.

 5              MS. SWEENEY:  BUT THEY HAD AN OPPORTUNITY TO OPT OUT.

 6              MR. ISAACSON:  -- OPT OUT.  IT'S NOT THE SAME THING

 7    AS THE -- AS THE RIGHT TO BE REPRESENTED APPROPRIATELY.

 8              MR. COUGHLIN:  WELL, YES, IF THEY DIDN'T FEEL THEY

 9    WERE BEING REPRESENTED, THESE ARE SOPHISTICATED ENTITIES AND

10    COULD HAVE OPTED OUT, AND THEY DIDN'T.

11              MR. ISAACSON:  IT'S NOT -- YES, ANYBODY CAN OPT OUT.

12    IT'S NOT CORRECT UNDER RULE 23 THAT YOU CAN HAVE AN

13    INAPPROPRIATE REPRESENTATIVE BECAUSE PEOPLE COULD LEAVE THE

14    CLASS.

15              MR. COUGHLIN:  I'M JUST NOT SURE WHAT HE'S ARGUING

16    FOR.  IS HE ARGUING FOR A CONTINUANCE?  OR IS HE ARGUING THAT

17    WE CUT THIS CLASS IN HALF AND MOVE FORWARD WITH THE TRIALS AS

18    TO THE CONSUMERS?

19              MR. ISAACSON:  I WOULD AGREE, WE DON'T NEED TO

20    POSTPONE THE TRIAL IF WE CUT THE CLASS NOW.  BUT --

21              THE COURT:  WELL, I'M NOT -- LOOK, THERE ARE A COUPLE

22    OF THINGS.  THE REALITY THAT THE PLAINTIFFS WOULD CUT THE

23    CLASS IS NOT VERY REALISTIC.  EVEN IF I -- EVEN IF I

24    BIFURCATED IT, I'M NOT GOING TO DO THAT 'CAUSE I'M NOT GOING

25    TO TRY THIS TWICE.  AND NO ONE IN THIS COURTROOM SHOULD TRY
```

1   THIS TWICE.

2       ISSUES OF CLASS REPRESENTATIVES ARE -- ARE ALWAYS BEFORE

3   THE COURT.  AND, IN FACT, THE NINTH CIRCUIT -- OR, YOU KNOW,

4   SOME CIRCUITS HAVE SENT IT BACK AFTER TRIAL TO BE FIXED, SO AS

5   I'VE SAID, I HAVE CONCERNS.  YOU'VE RAISED CONCERNS.

6       WHAT I'M TRYING TO DO IS -- IS FIGURE OUT THE BEST -- THE

7   BEST WAY TO DEAL WITH IT NOT HAVING ACTUALLY HEARD THE

8   EVIDENCE.  I UNDERSTAND, AS I SAID, I'VE -- YOU KNOW, THIS

9   ISSUE JUST CAME UP FOR ME, SO I HAVE NOT GONE BACK TO REREAD

10  OR TO READ WHAT THE MOTION WAS THAT WAS PUT IN FRONT OF JUDGE

11  WARE, WHAT -- YOU KNOW, ALL OF THE EVIDENCE THAT WAS PUT IN

12  FRONT OF JUDGE WARE.  I DIDN'T READ ANY OF THAT YET BECAUSE

13  THE ISSUE JUST CAME UP FOR ME.  SO --

14      **MR. ISAACSON:**  AND THERE'S ONE POINT ON THAT, IF I

15  MAY, YOUR HONOR, JUST IN TERMS OF THE RECORD?

16      AM I CORRECT, ROGER NOLL'S REPORTS WAS NOT -- ON THE 7.0

17  WAS NOT BEFORE JUDGE WARE AT CLASS CERTIFICATION?

18      **MR. KIERNAN:**  HIS FINAL ONE WAS.

19      **MR. ISAACSON:**  OH, OKAY.  NEVER MIND.

20      **THE COURT:**  SO WHERE DO WE GO FROM HERE?  PERHAPS A

21  MOTION TO ADD A CLASS MEMBER?  PERHAPS YOU CHEW ON IT.  WE

22  COME BACK AND TALK AND ABOUT IT.  I -- AFTER I HAVE AN

23  OPPORTUNITY TO GO BACK TO LOOK AT THE -- THE EVIDENCE THAT WAS

24  SUBMITTED TO RESEARCH THE LAW?

25      **MR. COUGHLIN:**  YOUR HONOR, IT -- I SEE THAT YOU HAVE

 1    A CONCERN.  AND IT'S PART OF THE REASON THAT WE REACHED OUT TO

 2    FIND A RESELLER.  AND -- WE -- DIDN'T THINK THAT IT CHANGED

 3    ANY OF THE EVIDENCE AT TRIAL.

 4        COUNSEL'S SAYING THEY WANT TO BRING ANOTHER RULE 23

 5    MOTION, SO THERE WOULD -- I GUESS TO DECERTIFY THAT PART OF

 6    THE CLASS.  I DON'T THINK THE OTHER HALF WOULD BE UP IF -- IF

 7    THAT'S WHAT THE COURT IS THINKING.

 8        PART OF MY CONCERN IS THAT WE'RE VERY CLOSE TO TRIAL AND

 9    DOING A LOT OF THINGS TO GET READY FOR TRIAL.  AND, FRANKLY,

10    WE DON'T WANT TO LOSE OR LEAVE BEHIND HALF THIS CLASS.  WE'RE

11    NOT WILLING TO DO THAT.  SO IF HE THINKS HE NEEDS MORE TIME

12    AND THAT'S WHAT HE'S ASKING FOR, THAT'S FINE.

13        BUT WE -- BECAUSE YOUR HONOR'S CONCERNS, TOO, WE'RE GOING

14    TO -- WE ARE -- WOULD MOVE TO INTERVENE THIS WITNESS.  I MEAN,

15    HE IS A CLASS MEMBER IN THE CLASS THAT CERTIFY HE GOT NOTICE.

16        **MR. ISAACSON:**  HE GOT NOTICE?  WE'VE HAD NO NOTICE OF

17    A NEW CLASS REPRESENTATIVE.  WE DIDN'T EVEN HAVE NOTICE OF A

18    WITNESS UNTIL SHORTLY BEFORE.

19        **THE COURT:**  WELL, I HAVE AN ORAL MOTION.

20        **MR. ISAACSON:**  I'M GOING TO NEED TO TALK TO MY CLIENT

21    ABOUT THIS.

22        **THE COURT:**  ALL RIGHT.  ARE YOU LEAVING TOWN,

23    MR. ISAACSON?

24        **MR. ISAACSON:**  NOT AS SOON AS I THOUGHT.

25        **THE COURT:**  WELL, YOU WANT TO MEET ON FRIDAY ON THIS

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

1    ISSUE?

2          **MR. COUGHLIN:**  THAT'D BE GREAT, YOUR HONOR.

3          **MS. SWEENEY:**  THAT'S FINE, YOUR HONOR.

4          **THE COURT:**  I HAVE A CRIMINAL CALENDAR AT 9:00.

5          **THE CLERK:**  AND AT 1:00 -- ONE MATTER AT 1:00.

6          **THE COURT:**  YEAH, WELL, THAT'S JUST A STATUS.  THAT

7    WON'T TAKE LONG.

8        IF YOU THINK IT WILL TAKE LESS THAN AN HOUR, WE CAN

9    MEET --

10         **MR. COUGHLIN:**  IT SHOULD ONLY TAKE I WOULD SAY HALF

11   AN HOUR TOPS.  WE'RE EITHER GOING TO COME TO A DECISION TO

12   MOVE THE HEARING BACK 'CAUSE WE'RE NOT GOING TO AGREE TO DROP

13   HALF THE CLASS.  SO OUR POSITION IS ALREADY PRETTY CANDID.

14   EITHER WE'LL WORK WITH MR. ISAACSON TO -- ON A SCHEDULE TO

15   MOVE IT BACK A MONTH OR TWO OR WHATEVER HE THINKS HE NEEDS TO

16   TAKE THE DEPOSITION AND FILE WHATEVER MOTION HE WANTS TO FILE.

17   OR WE'LL JUST GO FORWARD AND HE CAN TAKE THE DEPOSITION AND WE

18   CAN GO FORWARD WITH THE TRIAL, SO --

19         **MR. ISAACSON:**  AND I DON'T KNOW THAT -- WHAT POSITION

20   WE WILL TAKE ON THIS, BUT IF WE GO DOWN THE ROAD, CAN WE ASK

21   QUESTIONS ABOUT WHAT THE COURT'S CALENDAR IS LIKE?  WE

22   WOULDN'T WANT TO MAKE A PROPOSAL THAT WAS UNREALISTIC.

23         **THE COURT:**  YEAH.  WELL, I HAD PLANNED ON BEING IN

24   TRIAL.

25        I HAVE TO TELL YOU, I HAVE A LOT OF TRIALS SCHEDULED.

```
 1        YOU KNOW --

 2            MR. COUGHLIN:  AND THIS IS AN OLD CASE.

 3            THE COURT:  -- IDEALLY -- HMM?

 4            MR. COUGHLIN:  AND THIS IS AN OLD CASE.

 5            THE COURT:  YES.  I MEAN, I'D LIKE TO GET IT DONE.

 6    AND I MEAN, YOU'RE -- AS WE ALL -- AS YOU KNOW AS LITIGATORS,

 7    AS I KNOW AS A FORMER LITIGATOR, YOU GET ALL GEARED UP TO TRY

 8    THE CASE, AND WHEN YOU'RE PUT OFF FOR TOO LONG, THEN WHAT

 9    HAPPENS IS THAT YOU LOSE IT.

10        THE PROBLEM IS, IS THAT I'VE GOT CRIMINAL TRIALS BEGINNING

11    AT THE END OF JANUARY.  SO --

12    FRANCES, CAN YOU GRAB MY TRIAL CALENDAR NOTEBOOK.

13            THE CLERK:  YEAH.

14            MR. COUGHLIN:  IS THERE ANY WAY WE COULD DO IT --

15            THE COURT:  SO I CAN -- I WILL GIVE IT TO YOU.  AND,

16    YOU KNOW, THESE CRIMINAL TRIALS, SOMETIMES THEY RESOLVE, SO --

17    YOU KNOW, I COULD HAVE YOU ON A TWO-WEEK STAND-BY KIND OF

18    THING.

19        I MEAN, THE CASE -- THE CASE IS ONLY -- YOU KNOW, SHOULD

20    ONLY TAKE ULTIMATELY TWO WEEKS.

21            MR. COUGHLIN:  RIGHT.

22            THE COURT:  THE REASON WE'RE IN A THREE-WEEK WINDOW

23    IS BECAUSE OF THE THANKSGIVING HOLIDAY.  SO, YOU KNOW, WE

24    COULD STILL TRY IT IN DECEMBER.  THAT WOULD BE ON THE SHORTER

25    SIDE.  I DON'T KNOW THAT THAT'S FEASIBLE.
```

```
 1        YOU KNOW, YOU HAVE EVERYTHING TOGETHER.  YOU'RE ALL READY

 2   TO GO.  COULD DO IT RIGHT AFTER, YOU KNOW, THE NEW YEAR, BUT I

 3   HAVE A -- WELL, I HAVE TWO CRIMINAL TRIALS SET THE WEEK OF THE

 4   26TH, BUT I EXPECT ONLY ONE OF THOSE TO GO AND MAYBE JUST --

 5   AND MAYBE NOT.  I MEAN, I'VE JUST RECENTLY GOT A PLEA -- PLEA

 6   AGREEMENT FROM ONE OF THE DEFENDANTS.

 7        MR. COUGHLIN:  IS THERE ANY CHANCE THAT WE COULD GET

 8   IN BEFORE THAT, AT THE BEGINNING OF JANUARY, SAY, JANUARY 6TH?

 9   WE COULD GET IT DONE BY THE 26TH.

10        MR. ISAACSON:  AND I'M GOING TO HAVE SOME PRACTICAL

11   PROBLEMS WITH THAT.

12        THE COURT:  YOU KNOW, THE LIFE OF A LITIGATOR IS HARD

13   ENOUGH --

14        MR. ISAACSON:  YES.

15        THE COURT:  -- THAN -- THAN DESTROYING YOUR FAMILY'S

16   CHRISTMAS AND NEW YEAR'S.

17        MR. ISAACSON:  I'M NOT EVEN JUST TALKING ABOUT --

18        THE COURT:  AND, FRANKLY, THE OTHER THING IS -- I

19   MEAN, I REMEMBER WHEN I WAS PRACTICING, YOU KNOW, ALL OUR

20   TRANSACTIONAL BUDDIES, THEY ALL GOT BASKETS FROM ALL THEIR

21   CLIENTS, AND WE NEVER GOT ANYTHING.  BUT WE DID GET NEW YEAR'S

22   OFF, OR AT LEAST NEW YEAR'S EVE.

23        SO YES, THE BEGINNING OF JANUARY, YOU KNOW, THE WEEK OF,

24   LIKE, THE 12TH, THE FOLLOWING WEEK.  YOU KNOW, AS LONG AS --

25   AS EVIDENCE IS DONE, I COULD PUSH OFF A CRIMINAL TRIAL
```

1   PROBABLY A DAY OR TWO.

2      THEN THOSE CASES ARE SET TO GO FOR TWO WEEKS.  THE NEXT --

3   I ONLY HAVE ONE WEEK IN FEBRUARY, AND THEN I START ANOTHER

4   CRIMINAL TRIAL AT THE END OF FEBRUARY.

5         **MR. COUGHLIN:**  WE'D RATHER NOT GO SO LONG, YOUR

6   HONOR.

7      AS YOU SAY, WE'RE ALL GEARED UP.  WE'RE UP HERE -- WE'VE

8   MOVED UP HERE AS OF THIS WEEK STARTING, SO --

9         **THE COURT:**  YEAH.  AND MARCH, BACK-TO-BACK CRIMINAL

10  TRIALS.  SO -- AND THEN A PATENT TRIAL IN APRIL.

11     SO I JUST -- I AM -- I'VE SCHEDULED MYSELF PRETTY TIGHTLY.

12     DOES THAT GIVE YOU ENOUGH INFORMATION, MR. ISAACSON?

13        **MR. ISAACSON:**  I APPRECIATE IT, YOUR HONOR.

14        **THE COURT:**  OKAY.  THEN ON THE ASSUMPTION THAT YOU'RE

15  GOING TO TRY TO CATCH A PLANE ON FRIDAY, WHY DON'T WE GO AHEAD

16  AND CONTINUE THIS TO FRIDAY AT EIGHT -- 8:15.

17        **MR. COUGHLIN:**  8:15, WE'LL BE HERE.

18        **MS. SWEENEY:**  THAT'S FINE, YOUR HONOR.

19        **THE COURT:**  ALL RIGHT?

20        **MS. SWEENEY:**  THANK YOU, YOUR HONOR.

21        **THE COURT:**  THANK YOU.  WE'LL SEE YOU THEN.

22        **MS. SWEENEY:**  THANK YOU, YOUR HONOR.

23        **MR. ISAACSON:**  THANK YOU.

24        (PROCEEDINGS WERE CONCLUDED AT 3:31 P.M.)

25                     --OOO--

1

2

3                    **CERTIFICATE OF REPORTER**

4

5              I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

6     FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

7     I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO,

8     NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS

9     HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR

10    OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

11

12    _____

13         RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

14                   FRIDAY, OCTOBER 31, 2014

15

16

17

18

19

20

21

22

23

24

25

**RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530**