1  ROBBINS GELLER RUDMAN
   & DOWD LLP
2  BONNY E. SWEENEY (176174)
ALEXANDRA S. BERNAY (211068)
3  CARMEN A. MEDICI (248417)
JENNIFER N. CARINGAL (286197)
4  655 West Broadway, Suite 1900
San Diego, CA 92101
5  Telephone: 619/231-1058
619/231-7423 (fax)
6  bonnys@rgrdlaw.com
xanb@rgrdlaw.com
7  cmedici@rgrdlaw.com
jcaringal@rgrdlaw.com
8      – and –
PATRICK J. COUGHLIN (111070)
9  STEVEN M. JODLOWSKI (239074)
Post Montgomery Center
10 One Montgomery Street, Suite 1800
San Francisco, CA 94104
11 Telephone: 415/288-4545
415/288-4534 (fax)
12 patc@rgrdlaw.com
sjodlowski@rgrdlaw.com
13
Class Counsel for Plaintiffs
14
[Additional counsel appear on signature page.]
15

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTITRUST LITIGATION | Lead Case No. C-05-00037-YGR |
| | <u>CLASS ACTION</u> |
| This Document Relates To: | PLAINTIFFS' RESPONSE TO APPLE'S BRIEF AND INDEX RELATING TO ILLEGALITY AND CHANGING CASE THEORIES |
| ALL ACTIONS. | |
| | Date: November 18, 2014<br>Time: 1:00 p.m.<br>Courtroom: 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

982126_1

# I. Introduction

On September 30, 2014, Apple sent Plaintiffs an initial draft of the pretrial conference statement in which it asserted for the first time in this prolonged litigation the purported affirmative defense that the actions of RealNetworks in developing Harmony allegedly violated the Digital Millennium Copyright Act ("DMCA") and other laws.[1] *See* Medici Decl.[2], Ex. 1 at 19.[3] Apple asserted no such affirmative defense in any answer, disclosure statement, interrogatory response, expert report or brief to the Court. To the contrary, Apple carefully avoided making any contention that RealNetworks had acted unlawfully.[4] In addition, Apple resisted any discovery into the lawfulness of Harmony, objecting to discovery into that issue as irrelevant. Moreover, in those internal documents produced by Apple, in deposition testimony by Apple employees and in its own arguments made to the Court, Apple consistently characterized RealNetworks' development of Harmony as separate and distinct from the other hacks and as a "competitor" whose actions – though legal – were adversely impacted by its software updates only as "a side effect."[5]

Recently, Apple argued that the subjective understanding of its employees as to the legality of RealNetwork's actions under the DCMA was nevertheless relevant, explicitly asserting a

---

[1] In contravention of this Court's order authorizing Apple to brief "the extent to which plaintiffs previously sought to litigate the issue of legality of RealNetworks, Inc.'s conduct," Apple spends the majority of its brief discussing other so-called hacks. ECF 866 at 3.

[2] *See* Declaration of Carmen Medici in Support of Plaintiffs' Response to Apple's Brief and Index Relating to Illegality and Changing Case Theories, filed concurrently ("Medici Decl.").

[3] On October 22, 2014, the parties submitted Joint Proposed Jury Instructions. Apple's proposed jury instructions 38-42 seek to require the jury to rule in favor of Apple if they find that RealNetworks violated the law. ECF 847 at 103-117. For the same reasons set forth in this brief, Plaintiffs' Motion *in Limine* No. 1 and Plaintiffs' Objection to Apple's Jury Instructions, Apple's Proposed Jury Instructions Nos. 38-42 (ECF 847 at 103-117) should be denied and stricken.

[4] *See* Apple's Privilege Log, ECF 877-3 at 2-7: Apple appears to have obtained opinions on the legality of Real's actions, but there is no evidence that Apple ever sued Real, or sent Real a cease and desist letter as it did with other so-called "hacks" *See* ECF 877-15 at 4-7, Jobs Dep. (Jobs does not recall Apple sending RealNetworks a cease and desist letter).

[5] As Apple's counsel previously explained: "Our position, and we've said it over and over, is that the hacks are not competitors and the software updates at issue in this case were the ones directed at the hacks. And one of those software updates that were directed at the hacks had the side effect of blocking Harmony." ECF 820-1 at 4-8, Exhibit 1 to Plaintiffs' MIL No. 1, (July 19, 2010 Hrg. Tr. at 9:14-20).

1  "subjective good faith" defense that (once again) was never pled, and which, if permitted by the
2  Court, necessarily requires the disclosure of the legal opinions Apple obtained on that issue which it
3  has withheld to date as privileged. *See In re Fresh & Process Potatoes Antitrust Litig.*, No. 4:10-
4  md-02186-BLW-CWD, 2014 U.S. Dist. LEXIS 50828 (D. Id. Apr. 11, 2014).[6]

## II.   On September 30, 2014, Apple For the First Time in This Litigation Asserted that RealNetworks' Conduct Was Illegal

It is plain from the record that neither Apple's employees nor Apple's counsel ever squarely asserted that RealNetworks' actions were *illegal*. Though Apple now suggests in careful wording that the legality of RealNetworks' behavior has always been at issue, a close reading of Apple's brief reveals that none of its citations actually support this proposition.[7] Even where those cited materials do address legality, it is the legality of *others*, not RealNeworks, that is at issue. Apple does not, because it cannot, say that **RealNetworks** was the focus of the illegality. *See* ECF 877 at 3 ("The Legality of RealNetworks and ***Other Hackers***") (emphasis added). Previously in this litigation, Apple had always treated RealNetworks differently. *See*, *e.g.*, ECF 813-4 at 28-29, ¶45, Aug. 19, 2013 Expert Report of Kevin M. Murphy (differentiating between RealNetworks and hackers); *id.* at 30-31, ¶¶49-50 (describing "hackers" in ¶49 and stating in ¶50 "RealNetworks' approach was different" and noting that Real was a competitor, not a hacker); *see also* Medici Decl., Ex. 2, Declaration of Paula M. Roach, filed concurrently ("Roach Decl."), ¶11 ("Apple never expressed that RealNetworks' Harmony was illegal, rather Apple always treated Harmony and RealNetworks separately from the other so-called 'hacks' like JHymn.").

Apple has long-since waived any affirmative defense of unlawful conduct by RealNetworks. Its reference to its Answer and Affirmative Defenses is misleading. Apple's answer states that "hackers published programs on the Internet that allowed users to strip or otherwise circumvent the

---

[6]  In *Potatoes*, the Court held that if there was "any suggestion that [defendants] sought, obtained or relied upon the advice of counsel, the privilege is waived." *Id.* at *37. To hold otherwise, "would be tantamount to allowing [defendants] to use the privilege as both a sword and a shield." *Id.*

[7]  In one sentence, Apple does say that "Harmony was among [the hackers]." ECF 877 at 2. The explanation for that sentence, however, swallows the allegation. Read closely, that sentence parrots a meaningless and unsupported contention that Apple's expert fabricated out of thin air. Contrary to Dr. Kelly's assertions, Harmony did not strip FairPlay protection from music. *See* n.10, below.

1 content protection [FairPlay]." ECF 877 at 4. Apple goes on the state that "[b]y circumventing
2 FairPlay, these hackers violated the federal Digital Millennium Copyright Act. *See*, *e.g.*, 17 U.S.C. §
3 1201(a)(2)(A) & 1201(b)(1)(A)." *Id.* But Apple does not include RealNetworks in this group of
4 hackers. And it is undisputed that RealNetworks never "published programs on the internet that
5 allowed users to strip or otherwise circumvent the content protection" of Apple's FairPlay. *Id.*
6 Apple's efforts to lump RealNetworks in with "[t]he hackers" now is disingenuous. *Id.*

7 Second, Apple refused to produce discovery on the DMCA, claiming that "documents
8 discussing the Digital Millennium Copyright Act are not relevant to the claims and defenses in this
9 action." ECF 877-16 at 170.[8]

10 Third, the documents Apple itself cites support the fact that the legal status of RealNetworks'
11 actions was never at issue in this case. *See*, *e.g.,* ECF 877-5 at 32-40, Robbin Dep. (not treating
12 RealNetworks like it did other hackers); ECF 877-6 at 72:3-6, Cue Dep. (Q: "And going back to
13 RealNetworks now, is that something that stripped the DRM protection off of a song?" A: "No, it
14 does not.")

15 Fourth, neither Apple's counsel nor its experts argued before September 30, 2014 that
16 RealNetworks' actions were illegal. *See*, *e.g.*, ECF 809-1 at 10-12, Apple's Dec. 20, 2013 Motion
17 for Summary Judgment (discussing what RealNetworks did, but never saying what it did was
18 illegal); ECF 533 at 9, Apple's Jan. 18, 2011 Motion for Summary Judgment (discussing illegal
19 hacks separately from Harmony); ECF 341, Apple's Feb. 22, 2010 Motion to Dismiss or,
20 Alternatively, for Summary Judgment (nowhere claiming Harmony was illegal, but arguing that
21 various programs such as JHymm violated the Digital Millennium Copyright Act).

22 Finally, Apple asserts that Plaintiffs changed their case, excusing Apple from having raised
23 its new affirmative defense until September 30, 2014. This is not true. Legal rulings narrowed the
24 case and refocused it, but these changes never impacted the current issues. Plaintiffs have
25 consistently alleged that Apple maintained its monopoly by excluding competitors from the iPod.

---

[8] The correspondence Apple cites makes clear, any documents produced that related to the DMCA, related to it only tangentially and were produced pursuant to other relevant document requests. *See also* Medici Decl., Ex. 2, Roach Decl.

*See, e.g.,* ECF 1 at 22-23, Initial Complaint (Count IV: Unlawful Acquisition and/or Maintenance of Monopoly); ECF 322 at 12 Amended Consolidated Complaint (section on Apple's anticompetitive use of software updates).

### III. Even if the Issue of RealNetworks' Legality Were at Issue, RealNetworks' Conduct Was Legal

Even accepting Apple's argument that the legality of RealNetworks' conduct is at issue, Apple's claims of illegality are contrary to the plain language of the DMCA and Ninth Circuit precedent. Apple asserts that "FairPlay DRM" is an "access control" mechanism under the DMCA because it controls access to a copyrighted work (the music); thus, circumvention of FairPlay violates the DMCA. 17 U.S.C. §1201(a)(1)(A). Apple goes on to say "modifying FairPlay in a way that circumvents or removes its access control mechanism is illegal under the DMCA." 17 U.S.C. §1201(a)(1)(A); ECF 877 at 2.[9] In the first instance, there is no evidence that RealNetworks' Harmony stripped off Apple's FairPlay DRM.[10] Harmony instead allowed a legally purchased song from RealNetworks, protected by RealNetworks' Helix DRM to be translated from Helix DRM to FairPlay DRM and played on the iPod. *Id.*

Secondly, the DMCA permits circumvention for the very purpose of achieving interoperability. 17 U.S.C. §1201(f). Specifically, 17 U.S.C. §1201(f) says that a person in legal possession of a program is permitted to reverse-engineer and circumvent its protection if this is necessary in order to achieve interoperability. *See* Pamela Samuelson and Suzanne Scotchmer, *The*

---

[9] The DMCA itself "does not limit the scope of the antitrust laws, either explicitly or implicitly." *Chamberlain Group, Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1201 (Fed Cir. 2004); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 536 (6th Cir. 2004) (a "lock out" code, *i.e.*, one that requires that a particular code sequence be included in the component device to permit use is generally precluded from copyright protection). As a result, the music labels had no objection to RealNetworks' actions. ECF 815-8 at 7-9, at Cue Dep. Exhibit 64 (Apple-AIIA00090441-43).

[10] *See* ECF 819-2 at 11-13, ¶¶27-30, Apr. 8, 2013; Expert Report of David M. Martin Jr., *see also* ECF 815-8 at 24 (Apple_AIIA00090471) (RealNetworks statement about Harmony Technology and Creating Consumer Choice: "Harmony Technology does not remove or disable any digital rights management system."). Nor does Harmony violate the DMCA as the DMCA "explicitly allows the creation of interoperable software." *Id.*; *see* ECF 877-6 at 72 Cue Dep. (Apple agrees that Harmony did not strip off FairPlay DRM protection).

1  *Law and Economics of Reverse Engineering*, 111 Yale L. J. 1575, 1635 (2002) ("L&E of Reverse
2  Engineering").[11]

3  This exception in the DMCA flows from the Ninth Circuit's *Sega Enters. Ltd. v. Accolade,
4  Inc.*, 977 F.2d 1510 (9th Cir. 1992) case. *See* L&E of Reverse Engineering at 1635, n.289. The
5  *Sega* case has a factual pattern strikingly similar to the case at hand. In the *Sega* case, Accolade, a
6  small U.S. computer game company, disassembled Sega game programs in order to get information
7  necessary to make its games compatible with the Sega Genesis console. *Id.*, 977 F.2d at 1515-16.
8  Accolade then sold its independently developed games in competition with those made by Sega and
9  third-party developers licensed by Sega. *Id.* The reverse engineering "was done" solely in order to
10 discover the functional requirements for compatibility with the Genesis console. *Id.*[12] This is
11 exactly what has occurred here. RealNetworks' Harmony mimics FairPlay DRM so that
12 RealNetworks songs can be played on the iPod.

13 DATED: November 6, 2014                        Respectfully submitted,

                                                 ROBBINS GELLER RUDMAN
                                                    & DOWD LLP
                                                 BONNY E. SWEENEY
                                                 ALEXANDRA S. BERNAY
                                                 CARMEN A. MEDICI
                                                 JENNIFER N. CARINGAL


                                                       s/ Bonny E. Sweeney
                                                 BONNY E. SWEENEY

                                                 655 West Broadway, Suite 1900
                                                 San Diego, CA 92101
                                                 Telephone: 619/231-1058
                                                 619/231-7423 (fax)

---

[11] Apple took this issue up with the Librarian of Congress as it relates to the iPhone only to receive an adverse ruling. The Register agreed that the activity of an iPhone owner who modifies his or her iPhone's "firmware/operating system in order to make it interoperable with an application that Apple has not approved but that the iPhone owner wishes to run on the iPhone, fits comfortably within the four corners of fair use." Recommendation of the Register of Copyrights in RM 2008-8 Rulemaking on Exemptions from Prohibition of Circumvention of Copyright Protection Systems for Access Control Technologies, June 11, 2010. Medici Decl., Ex. 4 at 91.

[12] The Ninth Circuit affirmed *Sega* in *Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000).

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN
STEVEN M. JODLOWSKI
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

Class Counsel for Plaintiffs

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
FRANCIS J. BALINT, JR.
ELAINE A. RYAN
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: 602/274-1100
602/274-1199 (fax)

THE KATRIEL LAW FIRM
ROY A. KATRIEL
1101 30th Street, N.W., Suite 500
Washington, DC 20007
Telephone: 202/625-4342
202/330-5593 (fax)

BRAUN LAW GROUP, P.C.
MICHAEL D. BRAUN
10680 West Pico Blvd., Suite 280
Los Angeles, CA 90064
Telephone: 310/836-6000
310/836-6010 (fax)

GLANCY BINKOW & GOLDBERG LLP
BRIAN P. MURRAY
122 East 42nd Street, Suite 2920
New York, NY 10168
Telephone: 212/382-2221
212/382-3944 (fax)

GLANCY BINKOW & GOLDBERG LLP
MICHAEL GOLDBERG
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310/201-9150
310/201-9160 (fax)

Additional Counsel for Plaintiffs

982126_1

PLAINTIFFS' RESPONSE TO APPLE'S BRIEF AND INDEX RELATING TO ILLEGALITY AND CHANGING CASE THEORIES - C-05-00037-YGR - 6 -

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 6, 2014.

    s/ Bonny E. Sweeney
BONNY E. SWEENEY

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  bonnys@rgrdlaw.com

982126_1

# Mailing Information for a Case 4:05-cv-00037-YGR The Apple iPod iTunes Anti-Trust Litigation

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amir Q Amiri**
  aamiri@jonesday.com,ttualaulelei@jonesday.com

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com,LMix@rgrdlaw.com,TJohnson@rgrdlaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Jennifer N. Caringal**
  JCaringal@rgrdlaw.com

- **Todd David Carpenter**
  Todd@Carpenterlawyers.com

- **Patrick J. Coughlin**
  PatC@rgrdlaw.com,SusanM@rgrdlaw.com,e_file_sd@rgrdlaw.com,SJodlowski@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **John F. Cove , Jr**
  jcove@bsfllp.com,jchavez@bsfllp.com,kmurphy@bsfllp.com,dnasca@bsfllp.com,sphan@bsfllp.com

- **Meredith Richardson Dearborn**
  mdearborn@bsfllp.com,cseki@bsfllp.com

- **Karen Leah Dunn**
  kdunn@bsfllp.com

- **Andrew S. Friedman**
  khonecker@bffb.com,rcreech@bffb.com,afriedman@bffb.com

- **Martha Lea Goodman**
  mgoodman@bsfllp.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com,winkyc@zhlaw.com

- **William A. Isaacson**
  wisaacson@bsfllp.com,jmilici@bsfllp.com

- **Steven M. Jodlowski**
  sjodlowski@rgrdlaw.com

- **Roy Arie Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com

- **Carmen Anthony Medici**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,mlandsborough@jonesday.com,pwalter@jonesday.com

- **Brian P. Murray**
  bmurray@glancylaw.com

- **Maxwell Vaughn Pritt**
  mpritt@bsfllp.com,jchavez@bsfllp.com,irivera@bsfllp.com

- **Christopher G. Renner**
  crenner@bsfllp.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Kieran Paul Ringgenberg**
  kringgenberg@bsfllp.com,gaulkh@bsfllp.com,dnasca@bsfllp.com,sphan@bsfllp.com,irivera@BSFLLP.com

- **Elaine A. Ryan**
  eryan@bffb.com,nserden@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Michael Tedder Scott**
  mike.scott@dlapiper.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **Bonny E. Sweeney**
  bonnys@rgrdlaw.com,slandry@rgrdlaw.com,E_file_sd@rgrdlaw.com,ckopko@rgrdlaw.com

- **Helen I. Zeldes**
  helenz@zhlaw.com,winkyc@zhlaw.com,aarono@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`