1  William A. Isaacson (wisaacson@bsfllp.com)
   (Admitted *Pro Hac Vice*)
2  Karen L. Dunn (kdunn@bsfllp.com)
   (Admitted *Pro Hac Vice*)
3  Martha L. Goodman (mgoodman@bsfllp.com)
   (Admitted *Pro Hac Vice*)
4  BOIES, SCHILLER & FLEXNER LLP
   5301 Wisconsin Ave, NW
5  Washington, DC 20015
   Telephone:  (202) 237-2727
6  Facsimile:  (202) 237-6131

7  John F. Cove, Jr. #212213
   (jcove@bsfllp.com)
8  Kieran P. Ringgenberg #208600
   (kringgenberg@bsfllp.com)
9  Meredith R. Dearborn #268312
   (mdearborn@bsfllp.com)
10 BOIES, SCHILLER & FLEXNER LLP
   1999 Harrison Street, Suite 900
11 Oakland, CA 94612
   Telephone:  (510) 874-1000
12 Facsimile:  (510) 874-1460

13 David C. Kiernan #215335
   (dkiernan@jonesday.com)
14 JONES DAY
   555 California Street, 26th Floor
15 San Francisco, CA  94104
   Telephone:  (415) 626-3939
16 Facsimile:  (415) 875-5700

17 *Attorneys for Defendant Apple Inc.*

18                 UNITED STATES DISTRICT COURT

19               NORTHERN DISTRICT OF CALIFORNIA

20                     OAKLAND DIVISION

21 | | |
|---|---|
| THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION | Lead Case No.  C 05-00037 YGR [CLASS ACTION] |
| _____ | **APPLE'S MOTION FOR DECERTIFICATION OF RULE 23(b)(3) CLASS** |
| This Document Relates To: | |
| ALL ACTIONS | Date:     November 18, 2014 Time:     1:00 p.m. Place:     Courtroom 1, 4th Floor Judge:    Honorable Yvonne Gonzalez Rogers |

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

# TABLE OF CONTENTS

I.     PROCEDURAL BACKGROUND ................................................................................ 5

II.    DECERTIFICATION IS MANDATORY WHENEVER IT BECOMES APPARENT THAT THE REQUIREMENTS OF RULE 23 ARE NOT MET ................ 7

III.   CERTIFICATION OF A CLASS COMPRISING OF BOTH CONSUMERS AND RESELLERS WITHOUT A RESELLER REPRESENTATIVE DOES NOT MEET THE STANDARDS OF RULE 23 ........................................................................ 9

    A.     Individual Consumers Cannot Fairly Represent Resellers Because by Plaintiffs' Own Theory Consumers and Resellers Have Inconsistent Injury and Damages. ................................................................................................. 9

    B.     Individual Consumers Cannot Represent Resellers Who Have Individual Issues as to Impact and Damages. ................................................................. 12

    C.     Individual Consumers Cannot Fairly Represent Resellers Who, Under Plaintiffs' Theory, Benefitted from the Alleged Conduct by Increasing Sales Volume of iPods and Other Products. ......................................................... 14

    D.     A Reseller Class Is Not the Superior Method of Litigating This Dispute. .......... 16

IV.   DELAWARE COMPUTER EXCHANGE IS NOT A PROPER CLASS REPRESENTATIVE FOR THOSE RESELLERS WHO PURCHASED AT AN INDIVIDUALLY NEGOTIATED PRICE. ........................................................................ 17

    A.     Delaware Computer Exchange Cannot Fairly Represent Large Resellers Who Individually Negotiated Pricing and Related Terms. ................................. 18

    B.     Issues Unique to Delaware Computer Exchange Prevent It from Serving as an Adequate and Typical Class Representative. ................................................... 20

    C.     Delaware Computer Exchange Cannot Fairly Represent Resellers Who Sold Products from Apple's Competitors. ......................................................... 23

V.     CONCLUSION. ................................................................................................. 24

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

APPLE'S MOT. FOR PARTIAL DECERT.             No. C 05-00037 YGR

1

# TABLE OF AUTHORITIES

2

## CASES

3

*Abbyy USA Software House, Inc. v. Nuance Commc'ns, Inc.*,
    No. C 08-01035 JSW, 2008 WL 4830740 (N.D. Cal. Nov. 6, 2008) ................................... 16

4

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*,
    247 F.R.D. 156 (C.D. Cal. 2007) .............................................................................................. 18

5

6

*Am. Express Co. v. Italian Colors Rest.*,
    133 S. Ct. 2304 (2013) .............................................................................................................. 11

7

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ......................................................................................................... 2, 3, 13

8

9

*Applied Elastomerics, Inc. v. Z-Man Fishing Prods, Inc.*,
    521 F. Supp. 2d 1031 (N.D. Cal. 2007) ................................................................................... 24

10

*Barnes v. Am. Tobacco Co.*,
    161 F.3d 127 (3d Cir. 1998) ...................................................................................................... 8

11

*Boucher v. Syracuse Univ.*,
    164 F.3d 113 (2d Cir. 1999) ...................................................................................................... 8

12

13

*Burns v. U.S. R.R. Retirement Bd.*,
    701 F.2d 189 (D.C. Cir. 1983) ................................................................................................... 8

14

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ................................................................................................... 7, 10, 11

15

16

*Cummings v. Connell*,
    316 F.3d 886 (9th Cir. 2003) ..................................................................................................... 9

17

*Davies v. W.W. Grainger, Inc.*,
    No. 13-CV-3546, 2014 WL 2935905 (N.D. Ill. June 27, 2014) ............................................. 23

18

19

*Deiter v. Microsoft Corp.*,
    436 F.3d 461 (4th Cir. 2006) ..................................................................................... 15, 21, 22

20

*Duran v. U.S. Bank Nat'l Ass'n*,
    59 Cal. 4th 1 (2014) ................................................................................................................... 9

21

22

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ..................................................................................................... 7

23

*Ellis v. Elgin Riverboat Resort*,
    217 F.R.D. 415 (N.D. Ill. 2003) ................................................................................................ 9

24

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ............................................................................................................ 4, 11

25

26

*Hanon v. Dataprods. Corp.*,
    976 F.2d 497 (9th Cir. 1992) ................................................................................................... 23

27

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
    392 U.S. 481 (1968) ................................................................................................................. 17

28

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

*Hansberry v. Lee*,
   311 U.S. 32 (1940) ............................................................................................... 2

*In re Cmty. Bank of N. Va.*,
   622 F.3d 275 (3d Cir. 2010) ............................................................................... 25

*In re Cotton Yarn Antitrust Litig.*,
   505 F.3d 274 (4th Cir. 2007) ............................................................................. 25

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) ..................... 15

*In re Facebook, Inc., PPC Advertising Litig.*,
   282 F.R.D. 446 (N.D. Cal. 2012) ....................................................................... 26

*In re Fine Paper Antitrust Litig.*,
   617 F.2d 22 (3d Cir. 1980) ................................................................................... 8

*In re Fresh Del Monte Pineapples Antitrust Litig.*,
   No. 1:04-md-1628 RMB, 2008 WL 5661873 (S.D.N.Y. Feb. 20, 2008) ............. 19

*In re Graphics Processing Units Antitrust Litig.*,
   253 F.R.D. 478 (N.D. Cal. 2008) ................................................................. passim

*In re Optical Disk Drive Antitrust Litig.*,
   No. 3:10-md-2143 RS, 2014 WL 4965655 (N.D. Cal. Oct. 3, 2014) ............ passim

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   725 F.3d 244 (D.C. Cir. 2013) ................................................................. 10, 11, 18

*In re Titanium Dioxide Antitrust Litig.*,
   962 F. Supp. 2d 840 (D. Md. 2013) .................................................................... 26

*J. Truett Payne Co. v. Chrysler Motors Corp.*,
   451 U.S. 557 (1981) ............................................................................................ 17

*K.M.C. Co., Inc. v. Irving Trust Co.*,
   757 F.2d 752 (6th Cir. 1985) .............................................................................. 24

*Kelley v. Microsoft Corp.*,
   No. C07-0475 MJP, 2009 WL 413509  (W.D. Wash. Feb. 18, 2009) ................... 8

*L.A. Memorial Coliseum Comm'n v. NFL*,
   791 F.2d 1356 (9th Cir. 1986) ............................................................................ 17

*Langbecker v. Electronic Data Sys. Corp.*,
   476 F.3d 299 (5th Cir. 2007) ....................................................................... 11, 18

*Lewis v. First Am. Title Ins. Co.*,
   265 F.R.D. 536 (D. Idaho 2010) ......................................................................... 23

*Lilly v. Jamba Juice Co.*,
   No. 13-cv-02998-JST, 2014 WL 4652283 (N.D. Cal. Sept. 18, 2014) ............... 19

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) ................................................................................ 7

*Moreno v. Sanchez*,
   106 Cal. App. 4th 1415 (2003) ........................................................................... 25

i

APPLE'S MOT. FOR PARTIAL DECERT.                          No.  C 05-00037 YGR

*O'Connor v. Boeing N. Am. Inc.*,
   197 F.R.D. 404 (C.D. Cal. 2000) ........................................................................9

*O'Connor v. Boeing N. Am., Inc.*,
   180 F.R.D. 359 (C.D. Cal. 1997) ......................................................................19

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ..............................................................................8

*Oginski v. Paragon Properties of Costa Rica, LLC*,
   282 F.R.D. 672 (S.D. Fla. 2012) ......................................................................11

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ....................................................................................3, 20

*Prado-Steiman ex rel. Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ........................................................................14

*Price v. City of Seattle*,
   No. C03-1365 RSL, 2006 WL 2691402 (W.D. Wash. Sep. 19, 2006) ...............9

*Puffer v. Allstate Ins. Co.*,
   255 F.R.D. 450 (N.D. Ill. 2009) ......................................................................19

*Richardson v. Byrd*,
   709 F.2d 1016 (5th Cir. 1983) ...........................................................................9

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) .....................................................................10

*Tracinda Corp. v. DaimlerChrysler AG*,
   502 F.3d 212 (3d Cir. 2007) .............................................................................24

*Walewski v. Zenimax Media, Inc.*,
   502 F. App'x. 857 (11th Cir. 2012) ..................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ..............................................................................passim

*Zamora v. Lehman*,
   214 Cal. App. 4th 193 (2013) ...........................................................................25

*Zenith Labs. v. Carter-Wallace, Inc.*,
   530 F.2d 508 (3d Cir. 1976) ..............................................................................9

**STATUTES**

15 U.S.C. § 15b ..................................................................................................22

**RULES**

Fed. R. Civ. P. 23 ......................................................................................passim

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

ii

APPLE'S MOT. FOR PARTIAL DECERT.                          No.  C 05-00037 YGR

1

**OTHER AUTHORITIES**

2

7A C. Wright & A. Miller, *Federal Practice and Procedure*
§1768 (3d. ed. 2010) ............................................................................................................ 16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE'S MOT. FOR PARTIAL DECERT.                          No.  C 05-00037 YGR

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that, pursuant to the briefing and hearing schedule set out in Pre-Trial Order No. 4 (Dkt. 866), on November 18, 2014, at 1:00 p.m., Defendant Apple Inc. will and hereby does move pursuant to Federal Rule of Civil Procedure 23(c)(1)(C) to decertify the class, in part, to exclude commercial resellers from the class.  This motion is based on attached Memorandum of Points and Authorities, the Declaration of Kieran P. Ringgenberg filed herewith, the files and records in this action, and any such other materials that the Court may consider.

**RELIEF SOUGHT**

Apple requests that the Court partially decertify the Rule 23(b)(3) class to exclude commercial resellers of iPods.

APPLE'S MOT. FOR PARTIAL DECERT.                              No.  C 05-00037 YGR

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

### MEMORANDUM OF POINTS AND AUTHORITIES

The current class of direct purchasers of Apple iPods contains multiple constituencies:  (1) individual consumers who bought iPods from Apple's website or Apple Stores, paying retail list prices, and (2) businesses like Amazon, Best Buy, and Wal-Mart who bought iPods, often in large volumes, at wholesale rates which were often subject to individually negotiated terms.  The difference between and within these groups is readily apparent.  The differences between resellers and consumers are recognized by Plaintiffs in this action, whose expert, Dr. Noll, prepared two different assessments of impact and damages using two different regressions coming to wildly different overcharge claims as to consumers and resellers.  This gives rise to a number of problems, but chief among them is that no class plaintiff has been adequately representing the interests of the reseller direct purchasers.  Plaintiffs' strategic decisions were made and executed with only the consumer plaintiffs to guide and direct them, and that process has resulted in an overcharge claim for consumers (7.45%) nearly three times as large on a percentage basis than the claim for resellers (2.38%).

Plaintiffs' eleventh-hour attempt to solve that problem by adding a reseller class representative is an impermissible end-run around Rule 23 and due process that would trample the rights of Apple and absent reseller class members alike.  Rule 23 requires a putative class representative to be not only typical and "suffer[] the same injury" as the putative class members, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011), but to adequately represent the interests of the absent class members, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997).  This is a requirement of constitutional magnitude:  Binding absent class members would violate due process unless their representative shares the same interest and is legally entitled to "stand in judgment" for them.  *Hansberry v. Lee*, 311 U.S. 32, 43 (1940); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810-12 (1985) (due process "of course requires that the named plaintiff at all times adequately represent the interests of the absent class members").  Reseller absent class members were entitled to have a representative standing in for them—and making decisions about their rights and the case—throughout the litigation and that defect cannot

APPLE'S MOT. FOR PARTIAL DECERT.                                      No.  C 05-00037 YGR

1    be retroactively cured now, on the eve of trial, by tacking on this clearly inadequate named

2    plaintiff as a fig leaf for this fundamental flaw.

3          The Supreme Court has warned that Rule 23 "must be . . . applied with the interests of

4    absent class members in close view," and has emphasized that it is specifically designed to

5    "protect absentees" and afford the protections that "legitimize[] representative action in the first

6    place." *Amchem*, 521 U.S. at 620, 623, 629.  To allow subversion of Rule 23 to salvage a quest

7    for class certification would violate these principles and "create[] perverse incentives for class

8    representatives to place at risk potentially valid claims for monetary relief." *Wal-Mart*, 131 S. Ct.

9    at 2559; *see also Amchem*, 521 U.S. at 629 ("the rulemakers' prescriptions for class actions may

10   be endangered by 'those who embrace [Rule 23] too enthusiastically just as [there are by] those

11   who approach [the Rule] with distaste'") (alterations in original).

12         As Plaintiffs' last-ditch effort to add a representative shows, individual consumers cannot

13   stand in for resellers.  That is true not just because their interests are different, but also because

14   they are in conflict.  Separate damages analyses leave the existing consumer representatives with

15   no incentive to maximize recovery for resellers.  They also create a conflict of interest between

16   consumers and retailers, as each will be competing for a damage award from the jury.  Further,

17   under Plaintiffs' theory, Apple's allegedly anticompetitive conduct resulted in increases not only

18   to the prices of iPods, but also to the *volume* of iPod sales because the alleged conduct shifted the

19   demand curve for iPods, thereby increasing sales of iPods at the expense of other players.  At

20   least some resellers benefitted from higher sales volume.  As Mr. Riegel, the former owner of the

21   putative reseller class representative, explained:  "Since we were a hundred percent dedicated to

22   Apple, we suffered at times, when Apple suffered, and then we benefited when Apple benefited."

23   Ringgenberg Decl., Ex. E (Riegel Dep.) at 12:19-21.  Retailers therefore stand at odds with

24   consumers, who did not benefit from any shift in the demand curve, but allegedly suffered harm if

25   prices were increased.

26         Given these differences and conflicts, and given that individual resellers with substantial

27   sales volume could have brought their own individual cases (if they thought they had cases to

28   bring), a certified class that includes resellers should not proceed.  *In re Optical Disk Drive*

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

APPLE'S MOT. FOR PARTIAL DECERT.                                No.  C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

1   *Antitrust Litig.*, No. 3:10-md-2143 RS, 2014 WL 4965655, *5 (N.D. Cal. Oct. 3, 2014)

2   [hereinafter *Optical Disk*] (finding both typicality and adequacy lacking in such circumstances).

3       Further, for the reasons stated in Apple's Opposition to the Motion to Add Class

4   Representative—most notably the lack of standing—Plaintiffs' dilatory request to add Delaware

5   Computer Exchange[1] as a plaintiff and reseller class representative should be denied.  To comply

6   with Rule 23 and protect absent class members, it is therefore necessary for this Court to exercise

7   its discretion to decertify the class in part so as to exclude resellers.  *See Gen. Tel. Co. of Sw. v.*

8   *Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains

9   free to modify it in light of the subsequent developments in the litigation").

10      Moreover, Delaware Computer Exchange is not an adequate and typical representative for

11  the resellers in the class.  First, Delaware Computer Exchange was a small enterprise that

12  purchased iPods from Apple at fixed, non-negotiable prices.  Ringgenberg Decl., Ex. E (Riegel

13  Dep.) at 96:3-4 ("the pricing was dictated to us, so there was nothing we could talk about on

14  pricing").  The prices for the large resellers making up most of the reseller volume, by contrast,

15  were subject to individually negotiated contract terms between Apple and the reseller.  This

16  difference in the method of establishing the purchase price of iPods precludes a finding that

17  Delaware Computer Exchange's claims are typical of those held by all resellers.  *In re Graphics*

18  *Processing Units Antitrust Litig.*, 253 F.R.D. 478, 489-90 (N.D. Cal. 2008) [hereinafter *In re*

19  *GPU*].  It also shows that Dr. Noll's method for assessing impact and damages—a single average

20  overcharge percentage for all resellers, including those who purchased at list price and those who

21  purchased at a negotiated price—cannot accurately assess impact and damages across all

22  resellers.  *See Wal-Mart*, 131 S. Ct. at 2551 (Rule 23 requires the presence of common issues that

23  are "capable of classwide resolution . . . in one stroke").

24  _____

25      [1] As set out in detail in Apple's Opposition to Plaintiffs' and Riegel's Motion to Add
    Class Representative, "Delaware Computer Exchange" is not a legal entity but merely a trade
26  name.  The legal entity that purchased iPods from Apple was K & N Enterprises, Inc., which
    Plaintiffs have said no longer exists.  For clarity and ease of reference, this motion simply refers
27  to "Delaware Computer Exchange," which is how Plaintiffs refer to their proposed new class
    representative.

28

APPLE'S MOT. FOR PARTIAL DECERT.                    No.  C 05-00037 YGR

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

Second, Delaware Computer Exchange faces a number of unique issues that make it unsuitable as a class representative.  As detailed in Apple's Opposition to Plaintiffs' Motion to Add Class Representative, Delaware Computer Exchange is not a legal entity that can bring suit, and all its assets were sold in 2008, leaving it without standing.  Moreover, the pertinent reseller agreement required mediation prior to bringing suit, required suit within one year (waiving any longer statute of limitations) and also waived jury trial rights, features that are not found in the resale agreements of other class members, particularly the large resellers that accounted for most of the sales volume.

Third, unlike many other members of the putative reseller class, Delaware Computer Exchange sold Apple products exclusively.  As an exclusive reseller, Delaware Computer Exchange wholly shared Apple's interests in tightly integrated Apple products to the extent that this promoted higher demand for iPods over competing players, and which, Mr. Riegel believed, also increased sales of Apple's Macintosh computers.  This interest is quite different than non-exclusive retailers, such as Best Buy, which sell a variety of competing players and other Apple-competitive products.

For these reasons, further described below, Apple moves for partial decertification of the Rule 23(b)(3) class.

## I.     PROCEDURAL BACKGROUND.

In July of 2008, Plaintiffs sought to certify a class comprising all persons who purchased an iPod directly from Apple within the class period, including resellers.  Apple argued in response that individual consumers could not adequately represent the interests of commercial entities who purchased iPods for resale.  Opp. to Mot. for Class Cert. at 22-23 (Oct. 20, 2008) (Dkt. 185).  On December 22, 2008, Judge Ware issued a 14-page order granting Plaintiffs' class certification motion.  Order Granting Pls.' Mot. for Class Cert. and Requiring Further Briefing (Dkt. 196).  Although the issue of including resellers in the class was extensively briefed, Judge Ware did not mention or discuss whether resellers were to be included within the certified class.  When Apple sought clarification of the December 22, 2008 order, Judge Ware responded by order dated

APPLE'S MOT. FOR PARTIAL DECERT.                                    No.  C 05-00037 YGR

January 15, 2009, which stated, without elaboration, that in "declining to address [the issue of reseller representation] in the December 22 Order, the Court implicitly included resellers in the certified class." Order Vacating Case Mgmt. Conf.; Clarifying and Correcting Class Cert. Order, at 2 (Dkt. 198).

Judge Ware decertified the class on December 21, 2009.  When Plaintiffs moved to recertify the class, Apple again argued that resellers "are not similarly situated to consumers such as Plaintiffs, and Plaintiffs have no personal stake in presenting the facts necessary for resellers to recover."  Opp. to Renewed Mot. for Class Cert., at 21 (Feb. 28, 2011) (Dkt. 512).  Judge Ware recertified the class, including resellers, on November 22, 2011.  Order Granting Pls.' Mot. for Class Cert. (Dkt. 694).  Judge Ware found that the Court's obligation during the class certification stage was only to ensure that Plaintiffs met the burden of showing "the evidence they intend to present concerning antitrust impact will be made using generalized proof"; Judge Ware held that the Court "cannot weigh in on the merits of plaintiffs' substantive arguments."  *Id.* at 6.  Judge Ware agreed with Plaintiffs that they had "provided sufficient expert testimony to show that antitrust impact *may* be demonstrated" and concluded Plaintiffs' three proposed methodologies for doing so were "sufficient to establish their method for determining damages at this stage."  *Id.* at 6-7 (emphasis added).

The Order's only discussion of resellers (1) stated that the Court's prior orders had previously ruled that resellers were "properly included" (with no explanation of why); and (2) stated that a reseller's pass-on of overcharges to consumers has "no bearing" on injury to the reseller, and therefore there was "no conflict" among class members regarding pursuit of overcharge damages.  *Id.* at 7-8.

Following Judge Ware's decision on class certification, the Supreme Court and Ninth Circuit have issued rulings holding that a rigorous analysis of the requirements of Rule 23 is required, including substantive issues that overlap with the merits and proof that common evidence of impact has been demonstrated, not that it may.  The Supreme Court has made clear that "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that [Rule 23's] prerequisites . . . have been satisfied.'"  *Wal-Mart*, 131 S. Ct. at 2552.  The analysis will

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

6

1    frequently "overlap with the merits of the plaintiff's underlying claim" because a "'class

2    determination generally involves considerations that are enmeshed in the factual and legal issues

3    comprising the plaintiff's cause of action.'" *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432

4    (2013) (quoting *Wal-Mart*, 131 S. Ct. at 2551-52); *accord Mazza v. Am. Honda Motor Co., Inc.*,

5    666 F.3d 581, 588 (9th Cir. 2012) ("Before certifying a class, the trial court must conduct a

6    rigorous analysis to determine whether the party seeking certification has met the prerequisites of

7    Rule 23") (quotation marks omitted).  "[I]t is not correct to say a district court *may* consider the

8    merits to the extent that they overlap with class certification issues; rather, a district court *must*

9    consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale*

10   *Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphasis in original).

11        On November 3, 2014, on the eve of trial, Plaintiffs filed a motion to add reseller and

12   absent class member Delaware Computer Exchange as a named plaintiff and class representative.

## II.   DECERTIFICATION IS MANDATORY WHENEVER IT BECOMES APPARENT THAT THE REQUIREMENTS OF RULE 23 ARE NOT MET.

15        "An order that grants or denies class certification may be altered or amended before final

16   judgment." FED. R. CIV. P. 23(c)(1)(C).  Thus, "before entry of a final judgment on the merits, a

17   district court's order respecting class status is . . . inherently tentative." *Officers for Justice v.*

18   *Civil Serv. Comm'n*, 688 F.2d 615, 633 (9th Cir. 1982).  "A court's power to revisit certification

19   is a vital ingredient in the flexibility of courts to realize the full potential benefits from the

20   judicious use of the class action device." *Kelley v. Microsoft Corp.*, No. C07-0475 MJP, 2009

21   WL 413509, at *2 (W.D. Wash. Feb. 18, 2009) (quotation marks omitted).  This is true even

22   when it only becomes apparent to the trial court during, or even after, a full trial on the merits that

23   a class should not have been certified.  *In re Fine Paper Antitrust Litig.*, 617 F.2d 22, 27 (3d Cir.

24   1980); *see also Burns v. U.S. R.R. Retirement Bd.*, 701 F.2d 189, 191-92, (D.C. Cir. 1983) ("The

25   original . . . [class] certification. . . may require alteration or amendment as the case unfolds")

26   (Ginsburg, J.)).

27        District courts have a continuing obligation to ensure class certification is appropriate, and

28   must decertify the class if they determine the requirements of Rule 23 are not met.  *E.g., Boucher*

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

7

1    *v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) ("under Rule 23(c)(1), courts are 'required to

2    reassess their class rulings as the case develops'") (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d

3    127, 140 (3d Cir. 1998)); *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) ("The district

4    judge must define, redefine, subclass, and decertify as appropriate in response to the progression

5    of the case from assertion to facts").  This ongoing review is necessary to protect absent class

6    members against the harm to their interests resulting from appointment of an improper class

7    representative.  *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) ("Class certification is

8    not immutable, and class representative status could be withdrawn or modified if at any time the

9    representatives could no longer protect the interests of the class").  As the California Supreme

10   Court recently recognized in applying the state-law analogue to Rule 23, "[a]fter a class has been

11   certified, the court's obligation to manage individual issues does not disappear. . . . Trial courts

12   also have the obligation to decertify a class action if individual issues prove unmanageable."

13   *Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 29 (2014).

14          District courts routinely exercise their discretion to decertify a class that it, or a previous

15   judge, originally certified.  *E.g.*, *Zenith Labs. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir.

16   1976) (affirming decertification order after change in jurists); *Price v. City of Seattle*, No. C03-

17   1365 RSL, 2006 WL 2691402, at *1 n.2, *6-8 (W.D. Wash. Sep. 19, 2006) (decertifying class

18   certified by prior jurist); *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415 (N.D. Ill. 2003) (same).

19          "The standard used by the courts in reviewing a motion to decertify is the same as the

20   standard used in evaluating a motion to certify."  *O'Connor v. Boeing N. Am. Inc.*, 197 F.R.D.

21   404, 410 (C.D. Cal. 2000).  A motion to decertify a class is not, therefore, governed by the

22   standards applying to motions for reconsideration.  *Slaven v. BP Am., Inc.,* 190 F.R.D. 649, 651-

23   52 (C.D. Cal. 2000) (the "usual reluctance to entertain motions for reconsideration simply does

24   not apply in the class certification context"; "Because Defendants' [decertification] motion assists

25   the Court in performing its role as gatekeeper, or manager, of the class action, the motion should

26   not be denied on the ground that it impermissibly recounts old facts and law under Local Rule

27   7.16").

28   ///

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

8

III.   **CERTIFICATION OF A CLASS COMPRISING OF BOTH CONSUMERS AND RESELLERS WITHOUT A RESELLER REPRESENTATIVE DOES NOT MEET THE STANDARDS OF RULE 23.**

Rule 23 requires, among other things, that "the claims . . . of the representative parties are typical of the claims . . . of the class," that "the representative parties will fairly and adequately protect the interests of the class," that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(a)(3)-(4), (b)(3).

Since Judge Ware last decided class certification in 2011, it has become clear that Rule 23 can no longer be applied with a blind eye towards issues that overlap with the merits.  In the 2013 case of *Comcast Corp. v. Behrend*, the Supreme Court reversed class certification because the plaintiffs had fallen "short of establishing that damages are capable of measurement on a classwide basis." 133 S. Ct. at 1433.  "Before *Behrend*, the case law was far more accommodating to class certification under Rule 23(b)(3)." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 249 (D.C. Cir. 2013).  Now, even in antitrust cases, "[c]lass "certification is far from automatic." *Id.*  The current understanding of Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013).

A.   **Individual Consumers Cannot Fairly Represent Resellers Because by Plaintiffs' Own Theory Consumers and Resellers Have Inconsistent Injury and Damages.**

To satisfy Rule 23's typicality requirement, "a class representative must . . . possess the same interest and suffer the same injury as the class members." *Gen. Tel.*, 457 U.S. at 156 (quotation marks omitted); *accord Wal-Mart*, 131 S. Ct. at 2550.  Moreover, class plaintiffs are required to put forth a workable damages model that ensures "damages are capable of measurement on a classwide basis." *Comcast*, 133 S. Ct. at 1433; *accord In re Rail Freight Antitrust Litig.*, 725 F.3d at 253 ("No damages model, no predominance, no class certification").  Intraclass conflicts regarding anticipated damages may also preclude certification where one set of putative class members is entitled to higher levels of damages than another set, *see Oginski v.*

APPLE'S MOT. FOR PARTIAL DECERT.                    No.  C 05-00037 YGR

1  *Paragon Properties of Costa Rica, LLC*, 282 F.R.D. 672, 680 (S.D. Fla. 2012) (no adequacy

2  where certain purchasers  may be entitled to ordinary damages and others may be entitled to

3  treble damages), or where some putative class members may have gained financially from the

4  allegedly wrongful conduct, *see Langbecker v. Electronic Data Sys. Corp.*, 476 F.3d 299, 315

5  (5th Cir. 2007) (intraclass conflict of interest precluded certification where, in stock drop case,

6  some members of the putative class continued to invest in the stock and made money from the

7  investment).

8  The Court in *Optical Disk* last month found that a similar class of consumers and resellers

9  could not be certified:

10  The circumstances here are thus remarkably similar to those in *In re Graphics Processing Units Antitrust Litigation*, 253 F.R.D. 478 (N.D. Cal. 2008) ("*GPU*").

12  Here, the representative plaintiffs' claims are not typical of the putative class. Significantly, the named plaintiffs each purchased a single graphics card through [a defendant's] website . . . . The terms of their purchases were non-negotiable . . . . By contrast, the putative class includes wholesale purchasers who collectively comprised over 99.5% of defendants' business. These wholesale customers purchased a vast array of products on individually negotiated terms. Unlike the representative plaintiffs who had no negotiating power at all, some wholesale conglomerates, such as Dell, Microsoft, Hewlett-Packard, Apple, Motorola, and Best Buy, likely had more bargaining power than defendants themselves . . . .  The wholesale purchasers therefore came to the negotiating table in a fundamentally different position than the representative plaintiffs.

19  *Optical Disk*, 2014 WL 4965655, at *5 (alteration in original).  The court in *Optical Disk* further

20  noted that these "overwhelming disparities defeat typicality.  The representative plaintiffs simply

21  do not have the appropriate incentive to establish antitrust violations with respect to all of the

22  absent class members," and concluded that "the disparity between the named class members

23  would preclude certification."  *Id.* (quoting *In re GPU*, 253 F.R.D. at 490).

24  In this case, Plaintiffs' expert, Dr. Noll, calculated damages separately for consumers and

25  resellers.  Underlying this decision is the fact that individual consumers such as class

26  representatives Charoensak and Rosen pay non-negotiable list prices for iPods, while commercial

27  resellers purchase iPods at discounted wholesale prices.  For some of these resellers, Apple sets a

10

APPLE'S MOT. FOR PARTIAL DECERT.                                  No.  C 05-00037 YGR

standard wholesale price for a particular product.  By contrast, for large, national and regional

retailers like Best Buy or Target, who account for the great majority of iPods purchased by

resellers, the net price paid is the product of individualized negotiations, resulting in a variety of

different outcomes under different contract terms.  Ringgenberg Decl., Ex. G (Donnelly Dep.) at

17:20-25 ("If [certain resellers] maintain these advertised, minimum advertised prices, then

they'll get back margin dollars, a couple of percent back, you know, to increase their

compensation"); *id.* at 19:1-2 (regarding how Apple calculates the advertising compensation:

"It's a contractual term they would get, and it's as a percentage of this price"); Ringgenberg

Decl., Exs. H & I (Apple_AIIA_B_011951; Apple_AIIA_B_014372).

The differences between the interests of the current class representatives and the reseller

portion of the class are clearly evidenced in the damages models and calculations.  Following the

decision on class certification, Plaintiffs' economist Dr. Noll chose to run different regressions on

two separate data sets to analyze the different categories of purchasers: one for all consumer

sales, and one for all reseller sales (combining both the resellers with standard terms and the

resellers with negotiated terms).  Ringgenberg Decl., Ex. J (Noll Rebuttal Report, Exs. 3-A & 3-B

(Nov. 25, 2013)).  These resulted in an estimate of two separate measures of harm, with the

damages allegedly suffered by consumers approximately three times greater, on a percentage

basis, than those allegedly suffered by retailers.  *Id.*, Exs. 4, 5-A, 5-B, 5-C.

It should not be surprising that Plaintiffs' litigation position is that the consumers paid

nearly triple the percentage overcharge.  The current class representatives, both consumers, had

no incentive to maximize damages recovered by resellers; it will not benefit them in the slightest.[2]

It would also potentially be *in* the consumers' interest to minimize reseller damages because

consumers and resellers are competing before the jury for verdicts on liability and damages.  In

*Amchem*, the interests "within the single class [were] not aligned" with regard to damages

because there some in the class wanted "generous immediate payments" and others wanted a

---

[2] It is irrelevant "that *counsel* have an incentive to prove the [retailers'] claims."  *In re GPU*, 253 F.R.D. at 490 (emphasis in original).  "[T]he test is whether the clients themselves" are proper class representatives.  *Id.*

APPLE'S MOT. FOR PARTIAL DECERT.                                  No.  C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1    "fund for the future."  521 U.S. at 626.  Thus, the broad class could not be certified.  *Id.* at 627-

2    28.

3            This same conflict exists in this case where the consumer class has no incentive to

4    vigorously represent the reseller portion of the class and has incentives to underplay any injury to

5    resellers.  Just as the Court in *Amchem* found that the result of a negotiated settlement's effective

6    allocation decisions was suspect in light of the conflict within the class, Plaintiffs' use of different

7    analyses to determine impact and damages for each class (finding consumers were overcharged at

8    almost triple the percentage of resellers) is also suspect because determinations are being made

9    regarding each category of purchaser in the class without any representative ensuring that the

10   decisions being made on behalf of the reseller portion of the class are in the resellers' interests.

11   *See* 521 U.S. at 626.  This problem would continue through trial, with no class representative in a

12   position to meaningfully ensure that the resellers' point of view is protected.  As explained below,

13   with discovery and expert reports long since completed, this problem could not be resolved by a

14   late substitution in any event.

15           Such misalignment of incentives underscores named Plaintiffs' inadequacy to protect the

16   interests of absent reseller class members.  *E.g.*, *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d

17   1266, 1279 (11th Cir. 2000) ("named plaintiffs [must] have incentives that align with those of

18   absent class members so as to assure that the absentees' interests will be fairly represented");

19   *Walewski v. Zenimax Media, Inc.*, 502 F. App'x. 857, 861 (11th Cir. 2012) (per curiam)

20   (affirming denial of class certification where class was impermissibly broad because it included

21   both end-user consumers and resellers).

22       **B.    Individual Consumers Cannot Represent Resellers Who Have Individual
               Issues as to Impact and Damages.**

23

24           Rule 23's requirement that common issues predominate is not met where litigating the

25   claims of absent putative class members will require different types and methods of proof than the

26   claims of the named class representatives.  "In undertaking the predominance analysis, courts

27   must identify the issues involved in the case and determine which are subject to 'generalized

28   proof,' and which must be the subject of individualized proof."  *Optical Disk*, 2014 WL 4965655

APPLE'S MOT. FOR PARTIAL DECERT.                                    No.  C 05-00037 YGR

1    at *6.  Plaintiffs must satisfy the predominance requirement with respect to three key elements of

2    their claims: (1) whether Apple monopolized the relevant markets in violation of the antitrust

3    laws; (2) the fact of plaintiffs' antitrust injury, or "impact" of defendants' unlawful activity; and

4    (3) the amount of damages sustained as a result of the antitrust violations.  *Id.*; *In re Dynamic*

5    *Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *7

6    (N.D. Cal. June 5, 2006); *see also Deiter v. Microsoft Corp.*, 436 F.3d 461, 468 (4th Cir. 2006)

7    (no predominance where the claims of absent wholesale customers require "new and different

8    proof").

9         Here, as noted earlier, Dr. Noll acknowledges that separate proof is necessary to prove

10   damages on the part of consumers and resellers.  This is evidenced by Dr. Noll using two separate

11   data sets to perform two separate regressions to arrive at two separate overcharge claims, as well

12   as his acknowledgement that "the supply demand interrelationship between Apple and the

13   resellers is different than between Apple and the direct customers . . . ."  Ringgenberg Decl., Ex.

14   K (Noll Dep.) at 132:24-133:1 (May 16, 2013); *see also id.* at 200:2-7 (Noll "wouldn't anticipate"

15   the impact on consumers and resellers to be the same; "For the same reason we observe other

16   differences in the coefficients between the new models.  That there are differences in the

17   customer bases of Apple, direct sales customers, versus the customers or the resellers").

18        It is equally obvious that separate proof would be required to show the different impact

19   among retailers who receive the standard reseller price and those that negotiate various different

20   deals.  In particular, to prove injury to the absent wholesale resellers, Plaintiffs would need to

21   establish the various wholesale prices they paid for iPods, and then show that the competitive

22   price that each reseller paid would have been different absent the alleged unlawful conduct.

23   Ringgenberg Decl., Ex. K (Noll Dep.) at 138:4-8 (May 16, 2013) ("Remember that all these

24   things have built into them all these discounts as well, all right.  So what the net price is to Best

25   Buy is not going to be some fixed percentage of the retail price, because there's all this other stuff

26   going on").

27        These reseller issues have no bearing on the claims of individual consumers who

28   purchased iPods at non-negotiable list prices.  Because the individual consumer class

APPLE'S MOT. FOR PARTIAL DECERT.                                      No.  C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1    representatives have no incentive to develop and present the evidence necessary to litigate the

2    resellers' claims, Rule 23's predominance and adequate representation requirements cannot be

3    satisfied.

4        **C.   Individual Consumers Cannot Fairly Represent Resellers Who, Under
             Plaintiffs' Theory, Benefitted from the Alleged Conduct by Increasing Sales
5            Volume of iPods and Other Products.**

6        Individual consumers cannot be expected to represent the interests of resellers for an

7    additional reason:  Under Plaintiffs' theory, some resellers of iPods—such as exclusive Apple

8    dealers—benefitted from any alleged impairment of competitors because it "shifted the demand

9    curve" away from competing players and toward iPods.  Ringgenberg Decl., Ex. L (Noll. Dep.) at

10   20:19-25 (Sept. 19, 2008).  And, as Mr. Riegel testified, iPod sales also lead to more Apple

11   computers sales.  Ringgenberg Decl., Ex. E (Riegel Dep.) at 61:6-8 ("Q. And did the success of

12   iPods help K&E (sic) sell more Mac computers? A. Yes.").  In other words, under Plaintiffs'

13   theory, at least some resellers sold more iPods and Macintosh computers than they would have in

14   the but-for world (i.e., absent the alleged conduct at issue in the case).

15       Further, resellers like Delaware Computer Exchange could have actually used the

16   challenged activity to increase their own volume of iPod sales by discounting their products

17   below Apple's prices.  Because consumers could buy Apple products either directly from Apple

18   or from resellers like Delaware Computer Exchange, Mr. Riegel confirmed that "Apple was the

19   chief competitor."  Ringgenberg Decl., Ex. E  (Riegel Dep.) at 22:24-25.  It normally benefits a

20   competitor when its rival raises its prices.  *See, e.g., Abbyy USA Software House, Inc. v. Nuance*

21   *Commc'ns, Inc.*, No. C 08-01035 JSW, 2008 WL 4830740 (N.D. Cal. Nov. 6, 2008) (finding no

22   antitrust injury as a result of the alleged action because "[a]s a competitor, [plaintiff] stands to

23   profit from the alleged reduced supply and raised prices").  And here, Plaintiffs' theory is that

24   consumers buying from Apple were overcharged at a higher rate (7.45%) than resellers were

25   (2.38%).  Ringgenberg Decl., Ex. J (Noll Rebuttal Decl.) at 12.  This would have given resellers

26   like Delaware Computer Exchange an additional 5.7% of price margin in which they could have

27   profitably taken retail sales from Apple by reducing the price.  As an example, $15 of extra

28   margin on a $299 iPod would allow Delaware Computer Exchange to lure customers away from

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

14

1    Apple by offering a price that was $10 lower than Apple's and still increase Delaware Computer

2    Exchange profit margin by $5.  In fact, Mr. Riegel confirmed that he offered discounts precisely

3    for this purpose.  Ringgenberg Decl., Ex. E (Riegel Dep.) at 57:8-11 ("If we were competing with

4    the Apple store for—especially the education store, then we might offer a discount to try and have

5    them buy from us instead of Apple direct").  Any increase in sales volume for iPods and other

6    products directly benefits resellers, who profited from those increased sales, and those benefits

7    must be accounted for in assessing whether putative class members suffered any net injury and, if

8    so, how much.

9         It is well established that recovery for antitrust violations is limited "to compensation for

10   the 'net' injury incurred as a result of the defendant's antitrust violation."  *L.A. Memorial*

11   *Coliseum Comm'n v. NFL*, 791 F.2d 1356, 1366 (9th Cir. 1986).  "The relevant inquiry is 'what

12   plaintiff's situation would have been in the absence of the defendant's violation.'"  *Id.* at 1367

13   (quoting *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566 (1981)).

14        Under this theory, the ultimate relief awarded must take into account any benefits
          which would not have been received by plaintiff 'but for' the defendant's
15        anticompetitive conduct, or amounts a plaintiff would have expended in the
          absence of the violation.  An antitrust plaintiff may recover only to the 'net' extent
16        of its injury; if benefits accrued to it because of an antitrust violation, those
          benefits must be deducted from the gross damages caused by the illegal conduct.
17

18   *Id.*

19         To be clear, Apple is not arguing that the resellers' ability to pass on an alleged

20   overcharge should mitigate their damages, if any, or preclude class certification.  *See Hanover*

21   *Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 488-90 (1968) (holding that a reseller may

22   recover the amount of an illegal overcharge, even if it passed on the costs to consumers).  Rather,

23   the point is that where, as here, the conduct is alleged to have increased the *output* or *volume* of

24   sales of the subject product and related products—sales that exclusive resellers, and likely many

25   non-exclusive resellers as well, would not have otherwise made—the additional profits must be

26   considered in evaluating whether consumers can be adequate and typical representatives of

27   resellers, as well as the necessity of individualized inquiry as to whether there was a net harm to

28

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

15

APPLE'S MOT. FOR PARTIAL DECERT.                                    No.  C 05-00037 YGR

resellers.  *See In re Rail Freight Antitrust Litig.*, 725 F.3d at 253 ("When a case turns on individualized proof of injury, separate trials are in order").

The potential for conflict among putative class members is particularly acute where the underlying allegation is not price-fixing or another per se violation, but the allegedly anticompetitive integration of complementary products, integration that under Plaintiffs' theory clearly benefits Apple-exclusive reseller class members.  "[N]o circuit approves of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class."  *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007); *see* 7A C. Wright & A. Miller, *Federal Practice and Procedure* §1768 (3d. ed. 2010) ("It is axiomatic that a putative class representative cannot protect the class if the representative's interests are antagonistic to or in conflict with the objectives of those being represented"); *Langbecker*, 476 F.3d at 315.  The named Plaintiffs, both individual consumers, cannot possibly purport to adequately represent resellers' interest in allegedly anticompetitive activity that resulted in increased output of the products they sell.  Ringgenberg Decl., Ex. E (Riegel Dep.) at 12:19-21 ("Since we were a hundred percent dedicated to Apple, we suffered at times when Apple suffered, and then we benefited when Apple benefited").

### D.     A Reseller Class Is Not the Superior Method of Litigating This Dispute.

Rule 23 requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  This requirement is not met here, for much of the same reasons that Rule 23's commonality, typicality and predominance requirements cannot be met by any class comprising both end-user consumers and resellers.  *See O'Connor v. Boeing N. Am., Inc.,* 180 F.R.D. 359, 383 (C.D. Cal. 1997) ("The inquiries surrounding predominance of common facts and superiority of the class action are intertwined. The greater the number of individual issues, the less likely that a class action is the superior method of adjudication").

Litigating individual reseller claims would also be superior because of the individualized nature of the questions of whether resellers suffered a net harm and, if so, how much, taking into

APPLE'S MOT. FOR PARTIAL DECERT.                                    No.  C 05-00037 YGR

account the offsetting benefits of any volume increases in iPod sales that may have resulted from Apple's conduct, which may differ based on whether a reseller exclusively sold Apple products or sold a variety of competing products. *See, e.g., Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2014 WL 4652283, at *10 (N.D. Cal. Sept. 18, 2014) (rejecting certification of damages issues because of individual damages issues, including "benefit [class members] receive"); *see also In re Fresh Del Monte Pineapples Antitrust Litig.*, No. 1:04-md-1628 RMB, 2008 WL 5661873, at *9 (S.D.N.Y. Feb. 20, 2008) ("because individual damages issues will predominate, a class action is not a 'superior' method of adjudication" under Rule 23); *Puffer v. Allstate Ins. Co.*, 255 F.R.D. 450, 471-73 (N.D. Ill. 2009) (same).

## IV. DELAWARE COMPUTER EXCHANGE IS NOT A PROPER CLASS REPRESENTATIVE FOR THOSE RESELLERS WHO PURCHASED AT AN INDIVIDUALLY NEGOTIATED PRICE.

Even if Delaware Computer Exchange is added as a class representative, partial decertification remains necessary. First, after having litigated for nearly a decade, and presenting an expert who has committed himself to a damages calculation that treats resellers significantly differently than consumers, the proceeding cannot be reshaped now to protect the interests of the absent reseller class members. Due process "of course requires that the named plaintiff at *all times* adequately represent the interests of the absent class members." *Shutts*, 472 U.S. at 812 (emphasis added).

Second, in any event, under Rule 23 Delaware Computer Exchange is not a proper representative for the entire class of resellers. Delaware Computer Exchange made a relatively small number of purchases of iPods from Apple at standard, non-negotiated prices.[3] Unlike large retailers like Best Buy or Wal-Mart, Delaware Computer Exchange did not individually negotiate with Apple to determine the terms on which it would purchase iPods. Ringgenberg Decl., Ex. E (Riegel Dep.) at 96:3-4 ("the pricing was dictated to us, so there was nothing we could talk about

---

[3] Delaware Computer Exchange purchased 971 iPods from 2003 through 2008 whereas Best Buy purchased 16,639,076 and all other top 10 retailers purchased over one million units. Ringgenberg Decl., Ex. R (Apple's Response to Pls.' First Set of Interrogatories), Attach. A.

APPLE'S MOT. FOR PARTIAL DECERT.                                   No.  C 05-00037 YGR

1    on pricing that wouldn't—it was just wasting air").  Mr. Riegel has testified that business

2    development funds and other economic benefits for selling iPods were not available to his

3    company during the class period, which is not true for the larger resellers, as their contracts show.

4    *Compare id.* at 44:11-13 ("There's no business development funds on iPods, during this time

5    period that we're talking about") *with* Ringgenberg Decl., Exs. H, I, M (Apple_AIIA_B_011951

6    (Amazon receiving financial incentives relating to iPods and iPod Nanos);

7    Apple_AIIA_B_014372 (Wal-Mart receiving financial incentives relating to iPods);

8    Apple_AIIA_B_002371 (Target receiving financial incentives relating to iPods)).

9         As demonstrated below, these key differences in economic terms render Delaware

10    Computer Exchange an improper representative for those resellers who purchased iPods with

11    individually negotiated terms.  Further, as an exclusive seller of Apple products, Delaware

12    Computer Exchange is subject to volume incentives that differ from those retailers who sell a

13    variety of competing products.  Even if the Court grants Plaintiffs' motion to add Delaware

14    Computer Exchange as a named plaintiff, therefore, the class must be partially decertified to

15    exclude non-exclusive resellers who purchased iPods with negotiated terms.

16         **A.    Delaware Computer Exchange Cannot Fairly Represent Large Resellers Who
           Individually Negotiated Pricing and Related Terms.**

17

18         As courts have long recognized, strong pricing heterogeneity within a putative class of

19    commercial purchasers precludes certification of a single class for antitrust claims against a seller.

      In *In re GPU*, for example, the proposed class representatives were consumers who purchased
20
      graphics chips and graphic cards from defendant manufacturers at fixed, non-negotiable prices
21
      published on the defendant's website.  253 F.R.D. at 491.  Judge Alsup concluded that individual
22
      consumers were not proper representatives for class members who were wholesale purchasers.
23
      *Id.* at 489-90.  "[T]he representative plaintiffs' claims are not typical of the putative class," Judge
24
      Alsup reasoned, because "[t]he terms of their purchases were non-negotiable. . . .  By contrast, the
25
      putative class includes wholesale purchasers [who purchased] products on individually negotiated
26
      terms."  *Id.*  Similarly, in *Optical Disk*, Judge Seeborg concluded that individuals and entities that
27
      purchased optical disk drives "at nonnegotiable, list prices" could not represent a class
28

APPLE'S MOT. FOR PARTIAL DECERT.                                    No.  C 05-00037 YGR

1    comprising "purchasers [who] typically negotiated prices" with the defendants.  2014 WL

2    4965655, at *5 (finding both typicality and adequacy lacking in such circumstances).

3         A relevant metric under Rule 23 is whether the class representatives "were able to

4    negotiate their deals in a different competitive context from that involving the plaintiffs."  *Deiter*,

5    436 F.3d at 468.  In *Deiter*, a group of individuals who purchased software licenses from

6    Microsoft at fixed prices sought to represent a class that included so-called "Enterprise"

7    customers—who purchased large numbers of licenses at lower prices based on individually

8    negotiated agreements with Microsoft.  *Id.* at 465.  The district court found typicality lacking, and

9    the Fourth Circuit affirmed, concluding that proof of supracompetitive list prices would have no

10   bearing on prices paid by Enterprise customers, which "were negotiated and, as a consequence,

11   were both discounted and unique to each transaction."  *Id.* at 468.  To prove monopoly pricing for

12   Enterprise customers, the Fourth Circuit noted, additional "evidence would be required to

13   demonstrate how [the defendant's] monopoly powers caused [wholesale] customers to be

14   overcharged in *negotiated* deals."  *Id.* (emphasis in original).

15        Here, Delaware Computer Exchange was "in a fundamentally different position" than the

16   major retailers who purchased iPods on individually negotiated terms.  *In re GPU*, 253 F.R.D. at

17   490.  Delaware Computer Exchange paid a non-negotiable price, while some big retailers that

18   sold many orders of magnitude more iPods and other Apple products negotiated individual deals

19   for their purchases.  Such differences in "competitive context" between individual and wholesale

20   purchases are fatal to Rule 23's typicality requirement.  *Deiter*, 436 F.3d at 468.  Where ordinary

21   purchasers, who purchase at list price, seek to represent the interests of wholesale purchasers who

22   negotiate individual deals, the "representative plaintiffs simply do not have the appropriate

23   incentive to establish antitrust violations with respect to the absent class members."  *In re GPU*,

24   253 F.R.D. at 490.

25        This issue is starkly illustrated by the results that Dr. Noll realized when he chose to

26   evaluate consumers and resellers separately.  As noted above, Dr. Noll's overcharge percentage

27   calculation for consumers was three times higher for consumers (who bought at list prices) than

28   resellers overall.  If the difference between the average consumer overcharge and the average

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

APPLE'S MOT. FOR PARTIAL DECERT.                                     No.  C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

reseller overcharge is that high, there is no reason to believe that, applying Dr. Noll's methods, the difference between alleged overcharge for resellers who bought at Apple's standard percentage under the retail list price is also not substantially different than the alleged overcharge for resellers who bought pursuant to negotiated terms.  But, because there was no class representative with an incentive to investigate, this issue was never explored.

> **B.**   **Issues Unique to Delaware Computer Exchange Prevent It from Serving as an Adequate and Typical Class Representative.**

Delaware Computer Exchange further cannot serve as an adequate class representative because of individualized issues regarding its own ability to bring a claim.  A "named plaintiff's motion for class certification should not be granted if there is a danger that the absent class members will suffer if their representative is preoccupied with defenses unique to it." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation marks omitted); *accord Lewis v. First Am. Title Ins. Co.*, 265 F.R.D. 536, 557 (D. Idaho 2010) ("It is well established that when a putative representative may be subject to unique defenses, the representative cannot establish typicality and class certification must be denied"); *Davies v. W.W. Grainger, Inc.*, No. 13-CV-3546, 2014 WL 2935905, at *4 (N.D. Ill. June 27, 2014) ("Davies succeeds in demonstrating that he is not an adequate representative because it is likely that too much time and attention will be spent on rebutting substantial individual defenses to the detriment of absent class plaintiffs").  Decertification is appropriate for that reason here, in three ways.

First, for reasons more thoroughly laid out in Apple's Opposition to the Motion to Add a Class Representative, Delaware Computer Exchange is nothing but a trade name and lacks the capacity and standing to sue, and the actual purchaser (K & N Enterprises, Inc.) also lacks capacity to sue and sold any claim that it had in the asset sale in 2008.  Opposition at § 1.  It is axiomatic that a plaintiff without a legal claim cannot adequately represent absent class members.

Second, the applicable reseller agreement (between Apple and K & N Enterprises) contains a Limitations of Claims provision, with provisions requiring mediation prior to filing suit, a one year statute of limitations on claims, and a waiver of jury trial rights.  Ringgenberg Decl., Ex. C (RIEGEL00093).  These provisions stand as a bar to Delaware Computer Exchange

APPLE'S MOT. FOR PARTIAL DECERT.                            No.  C 05-00037 YGR

1    bringing suit and trying its case before a jury as an individual and certainly from standing in as an

2    adequate representative of larger resellers, many of which have specifically negotiated for

3    different Limitation of Claims provisions that may have preserved the very rights and claims that

4    Delaware Computer Exchange has waived.  For example, many resellers (such as Incentive

5    Concepts LLC, and Micro Center) did not waive their jury trial rights, *id.*, Exs. N & O

6    (Apple_AIIA_B_003353 at 357; Apple_AIIA_B_003508 at 513), other resellers (such as

7    Amazon and Toys R Us) are not required to engage in pre-suit mediation and are governed under

8    the laws of a different state, *id.*, Exs. P & Q (Apple_AIIA_B_003270 at 273-74;

9    Apple_AIIA_B_003665 at 670).  Each one of these provisions presents issues which would need

10   to be litigated and decided.

11        ***Jury Trial Waiver***:  Delaware Computer Exchange's contract contains an express

12   provision waiving the right to a jury trial "in any action, proceeding or counterclaim (whether or

13   not relating to or arising out of this agreement)."  Ringgenberg Decl., Ex. C (RIEGEL00093) at

14   096.  "The right to a jury trial in federal court is governed by federal law, and under federal law,

15   parties may contractually waive their right to a jury trial."  *Applied Elastomerics, Inc. v. Z-Man*

16   *Fishing Prods, Inc.*, 521 F. Supp. 2d 1031, 1044 (N.D. Cal. 2007); *accord Tracinda Corp. v.*

17   *DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007) ("The question of a waiver of a

18   constitutional right, including the Seventh Amendment right to a jury trial, is a federal question

19   controlled by federal law"); *K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir.

20   1985) ("It is clear that the parties to a contract may by prior written agreement waive the right to

21   jury trial").  Here, Mr. Riegel confirmed that he, as the former owner of Delaware Computer

22   Exchange, knowingly and voluntarily executed his reseller contract with Apple which contained

23   the jury waiver provision.  Ringgenberg Decl., Ex. E (Riegel Dep.) at 33:24-34:11 (agreeing that

24   by signing the agreed to the terms of the contract including the jury waiver provision).  Delaware

25   Computer Exchange is thus unable to proceed with his claim before the jury in this case, placing

26   it at odds with other resellers (and consumers) who did not agree to such a waiver.

27        ***Statute of Limitations***:  Delaware Computer Exchange's reseller agreement with Apple

28   provides for a one-year statute of limitations for all claims "arising out of any dispute or

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

1    controversy between the parties."  Ringgenberg Decl., Ex. C (RIEGEL00093) at 096.  "California

2    courts accord contracting parties substantial freedom to modify the length of the statute of

3    limitations."  *Zamora v. Lehman*, 214 Cal. App. 4th 193, 206 (2013).  Such provisions are

4    enforceable unless "the period of limitation, *in itself*, [is] unreasonable."  *Moreno v. Sanchez*, 106

5    Cal. App. 4th 1415, 1439 (2003) (emphasis in original).  Courts have found that a one year statute

6    of limitation is reasonable, even for antitrust claims.  *See In re Cotton Yarn Antitrust Litig.*, 505

7    F.3d 274, 288 (4th Cir. 2007) ("Antitrust is a complex area of law, and antitrust trials (or

8    arbitration proceedings) can be long and involved.  There is no basis in the record, however, for

9    us to conclude that the same difficulty and complexity also attends to the plaintiff's initial

10   determination to pursue an antitrust claim, so as to make a one-year limitations period

11   unreasonably short").  The one-year time limitation on Delaware Computer Exchange's ability to

12   recover damages on its claims is not shared by those resellers (and consumers) who did not agree

13   to such a provision in their contracts with Apple.[4]

14        ***Pre-Trial Mediation Condition***:  As explained further in the Opposition to the Motion to

15   Add Class Representative, Delaware Computer Exchange's contract also provides that, prior to

16   bringing suit, the parties must "seek to resolve the dispute or controversy pursuant to non-binding

17

---

18        [4] The impact of Delaware Computer Exchange's one-year window in which to bring
     claims, and consequent limitation in its ability to recover damages that arise outside that window,
19   would have to be resolved prior to trial.  Should the issue arise, it will be Apple's position that,
     unlike those resellers for whom the Sherman Act's ordinary four-year statute of limitations
20   applies, *see* 15 U.S.C. § 15b, Delaware Computer Exchange cannot recover for any damages it
     incurred more than a year prior to the January 26, 2010 filing of the operative Complaint.  *See*
21   Order Granting in Part and Denying in Part Def.'s Mot. for Summ. J. at 4 (May 19, 2011) (Dkt.
     627) (evaluating the claims set forth in Plaintiffs' January 26, 2010 Amended Consolidated
22   Complaint).  This is because Plaintiffs' only claims that survived summary judgment relate to
     Apple's release of iTunes 7.0, *see id.* at 7-13, which was described for the first time in the
23   January 26, 2010 complaint, *see* Amend. Consolidated Compl. at 13 (Dkt. 322).  Some courts
     have held that class action tolling "only applies to claims that are identical to those asserted in the
24   initial class action" whereas others have found that tolling may apply where there is sufficient
     "common factual and legal nexus with those brought in the prior class action."  *In re Cmty. Bank*
25   *of N. Va.*, 622 F.3d 275, 299-300 (3d Cir. 2010).  Under either test, the claims at issue here are
     too factually remote to anything filed prior to the operative Complaint to permit tolling of
26   Delaware Computer Exchange's claims.

27

28

APPLE'S MOT. FOR PARTIAL DECERT.                              No.  C 05-00037 YGR

1    mediation."  Ringgenberg Decl., Ex. C (RIEGEL00093) at 096.  In addition to rendering it futile

2    to add Delaware Computer Exchange as a class representative, this provision has implications for

3    the manageability of this case as a class action, given that Apple's agreements with resellers have

4    different provisions regarding whether and how such pre-trial mediation must take place.

5            Delaware Computer Exchange, with its many individualized issues regarding its ability to

6    bring claims, is thus an inadequate representative for other purchasers who either do not share

7    these issues or whose contracts present additional or different issues.[5]  For example, *In re*

8    *Titanium Dioxide Antitrust Litigation*, 962 F. Supp. 2d 840 (D. Md. 2013), involved class

9    members who were "subject to arbitration, forum selection, or class action or jury waiver

10   clauses," which put them "in a different legal position than those class members whose contracts

11   contain no such provision."  *Id.* at 861.  The court held:  "The claims of named Plaintiffs are not

12   typical of the claims of those class members against whom the Defendants now seek to enforce

13   such contractual provisions," and modified the class definition accordingly.  *Id.* at 861-63.

14   Further, in *In re Facebook*, Judge Hamilton rejected two class representatives as inadequate

15   where it was unclear whether either had contested the action giving rise to the suit within the

16   designated period "to avoid waiver under his contract."  *In re Facebook, Inc., PPC Advertising*

17   *Litig.*, 282 F.R.D. 446, 454 (N.D. Cal. 2012).  Thus, the court found them inadequate

18   representatives because "they both may be required to litigate individualized defenses that are

19   potentially dispositive of their claims."  *Id.*

20           **C.    Delaware Computer Exchange Cannot Fairly Represent Resellers Who Sold
                      Products from Apple's Competitors.**

21           There is a fundamental conflict of interest between exclusive Apple resellers like

22   Delaware Computer Exchange (when it was in business) and multiproduct retailers like Best Buy,

23   Target and Walmart.  Plaintiffs' theory of liability is that Apple allegedly locked consumers into

24   purchasing iPods, as opposed to competing players, by denying interoperability to third party

25   software.  According to Dr. Noll, this "shifted the demand curve" for iPods, enabling Apple to

26

27           [5] Apple would also need to amend its Answer to raise affirmative defenses, including
     statute of limitations and waiver.

28

APPLE'S MOT. FOR PARTIAL DECERT.                                    No.  C 05-00037 YGR

B O I E S ,  S C H I L L E R  &  F L E X N E R  L L P
O A K L A N D ,  C A L I F O R N I A

charge higher prices.  Ringgenberg Decl., Ex. L (Noll. Dep.) at 20:19-25 (Sept. 19, 2008).  But if Apple's conduct increased demand for iPods versus other players, it would have increased the sales volume of exclusive Apple resellers by encouraging consumers to buy iPods, rather than competing players.  In a case challenging Apple's design decisions that allegedly drove up the volume of iPod sales, class members who exclusively sell Apple products have a fundamentally different interest than multi-brand retailers who may wish to promote the sales of other products. In plain terms, if Plaintiffs prevail in this litigation and diminish Apple's ability to offer new integrated products, Apple-only retailers will not be better off, they will be worse off. Ringgenberg Decl., Ex. E (Riegel Dep.) at 12:19-21 ("Since we were a hundred percent dedicated to Apple, we suffered at times, when Apple suffered and then we benefited when Apple benefited").

## V.   CONCLUSION.

For all the foregoing reasons, Apple respectfully requests that the Court partially decertify the Rule 23(b)(3) class to exclude commercial resellers of iPods.


Date:  November 11, 2014                    Respectfully submitted,

                                            BOIES, SCHILLER & FLEXNER LLP


                                            By:   /s/ Kieran P. Ringgenberg
                                                  Kieran P. Ringgenberg


                                            *Attorneys for Defendant Apple Inc.*

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

APPLE'S MOT. FOR PARTIAL DECERT.                    No.  C 05-00037 YGR