# Exhibit N

# Redacted



## Authorized Apple U.S. iPod Wholesaler Agreement

This Authorized Apple U.S. iPod Wholesaler Agreement ("Agreement") is entered into by and between Apple Inc., a California corporation located at 1 Infinite Loop, Cupertino, CA 95014 ("Apple") and:

Company Name ("Wholesaler"): **INCENTIVE CONCEPTS LLC**

Address: **2645 METRO BLVD**

City, ST, Zip: **MARYLAND HEIGHTS MO 63043**

### 1. Definitions
When used in this Agreement, the following terms have the meanings specified below:

A. "Agreement" means collectively this Authorized Apple U.S. iPod Wholesaler Agreement, any amendments or additions, and any documents or materials incorporated by reference, including but not limited to the Policies and Practices and Apple's Trademark Guidelines.

B. "Apple Marks" means trademarks, service marks, logos and product names owned by or licensed to Apple, and used on and in connection with Authorized Apple Price Lists, and the designation "Authorized Apple Wholesaler".

C. "Authorized Apple Price Lists" means the then-current lists of prices for Wholesaler's purchase of Products from Apple.

D. "Authorized Apple Products Lists" means the then-current lists of hardware and software products that Wholesaler is authorized by Apple to resell.

E. "Authorized Apple Wholesaler" means an entity authorized by Apple to resell Products to resellers in the United States, and with which Apple has an Authorized Apple iPod Wholesaler U.S. Sales Agreement in effect.

F. "Authorized Locations" means locations where Wholesaler is authorized by Apple to resell Products.

G. "Confidential Information" means any information in oral or written form that recipient knows or has reason to know is confidential information and that is disclosed in connection with this Agreement or to which recipient may have access in connection with this Agreement, including but not limited to business and marketing plans, financial information and data, personnel information, information regarding strategic alliances, costs or pricing data, and the identities of customers and prospective customers. Confidential Information shall not include any information that (i) was rightfully in the possession of recipient prior to disclosure; (ii) was independently developed by recipient without the use of Confidential Information; or (iii) is now, or hereafter becomes, available to the public other than as a result of disclosure by recipient in violation of this Agreement.

H. "Policies and Practices" means the Apple Wholesaler Policies and Practices manual posted on the Apple sales web, and otherwise made available to Wholesaler, containing Apple's policies, practices, and programs that, together with this Agreement, govern Wholesaler's activities under or in any manner related to this Agreement. The Policies and Practices, including all policies and guidelines referenced therein, may be updated, modified or amended from time to time in Apple's sole discretion, and such updates, modifications and amendments will be binding on Wholesaler.

I. "Products" means iPod and iPod accessories that Wholesaler is authorized by Apple to resell to resellers.

### 2. Appointment
Apple appoints Wholesaler as a limited and non-exclusive Authorized Apple Wholesaler for the resale of iPod and iPod accessories from Authorized Locations to resellers for resale to end-user customers and to end-user customers within the United States in compliance with the terms of this Agreement; and Wholesaler accepts this appointment. Wholesaler agrees that Apple must approve all resellers prior to any resale of Products.

### 3. Scope of Authorization
A. Wholesaler will purchase Products directly from Apple, except where Apple authorizes other purchases. Apple will not in any way be responsible or liable to a reseller for any act or omission by any Authorized Apple Wholesaler. Wholesaler will sell Products to resellers from Authorized Locations at prices determined solely by Wholesaler. Apple reserves the right to remove or add Products from the Authorized Apple Products Lists, and change the Policies and Practices and scope of Wholesaler's authorization at any time and without notice. Wholesaler will have a commercially reasonable period of time to implement such changes by Apple, not to exceed thirty (30) days.

B. Wholesaler will not sell, rent or lease Products: (i) for export outside the United States, either directly or indirectly; (ii) for use by public or private nonprofit educational institutions; (iii) in response to a Federal Government Contracting Officer's delivery order against the General Services Administration (GSA) Automatic Data Processing (ADP) Schedule as published in the Commerce Business Daily; (iv) to certain Apple customers participating in special programs and identified by Apple; or (v) directly to end-user customers.

### 4. Wholesaler's Obligations
A. Wholesaler shall act at all times and conduct its activities in a professional and competent manner. Wholesaler will actively promote and sell Products to resellers, and maintain a high level of customer satisfaction. Without limitation, Wholesaler will: (i)

RECEIVED Apple Inc. APR 15 2008 Sales Contracts Mgmt

CONFIDENTIAL - ATTORNEYS EYES ONLY    Apple_AIIA_B_003353



comply with all Policies and Practices; (ii) accept and fulfill orders from resellers in a fair and equitable manner, unless credit or other legitimate concerns exist; (iii) maintain a sufficient level of Products in inventory to provide timely fill rates for reseller's Product orders. (iv) distribute the Products with all packaging and warranties intact as shipped from Apple, and make no changes to or reconfigurations of the Products without Apple's prior written approval; (v) use best efforts to notify Apple of any resellers not in compliance with their Reseller Agreement to the extent Wholesaler has knowledge of such noncompliance; (vi) offer or facilitate reasonable financing terms for any reseller; and (vii) not engage in any illegal, false or deceptive acts or practices with respect to Wholesaler's business activities.

B. Wholesaler will provide knowledgeable assistance to resellers in connection with the Products, including: (i) assisting to determine appropriate Product configurations that fit the needs of resellers; (ii) providing information and advice on the general use of Products; and (iii) distributing notices marketing and program information, and other materials provided by Apple which Apple requires or requests that Wholesaler distribute to resellers.

C. Wholesaler will promptly notify Apple in writing of any suspected Product defect or safety issue.

D. Wholesaler will not make any representations, warranties, or guarantees to resellers or to the trade with respect to the specifications, features, or capabilities of any Apple Products that are inconsistent with Apple's literature, including all warranties and disclaimers contained in such literature.

E. Wholesaler will maintain an Internet email address, which it will provide to Apple, and have Internet access at all times. Wholesaler will access Apple's channel web sites at least weekly to ascertain whether Apple has modified the Policies and Practices.

F. Wholesaler will pay any applicable sales or use taxes due on account of purchases under this Agreement. Wholesaler will be responsible for the collection of applicable sales taxes and use taxes associated with the resale of Products.

5. Purchases Directly from Apple
A. In order to qualify to purchase Products directly from Apple, Wholesaler must satisfy all requirements and perform all obligations of the Policies and Practices applicable to or governing direct Wholesaler purchases of Products. Any order placed with Apple is subject to acceptance by Apple, and Apple may decline any order, in whole or in part, for any reason. Apple may cancel any accepted order prior to shipment. Unless Wholesaler notifies Apple otherwise, Apple may make partial shipments of Wholesaler's orders. Apple will not be liable for any failure to ship complete orders. Wholesaler will be invoiced separately for each partial shipment and will pay each invoice when due, without regard to subsequent deliveries.

B. The price for Products purchased directly from Apple will be the price on the applicable Authorized Apple Price List on the date that Apple ships the Products. Prices include freight and insurance using an Apple-selected carrier. Wholesaler will be invoiced upon shipment of Product and, provided Wholesaler is qualified for credit from Apple, such invoice will be due no later than thirty (30) days from the date of invoice. Apple reserves the right to change the Authorized Apple Price List and Wholesaler's credit terms at any time.

C. Wholesaler acknowledges that Apple has set its prices and entered into this Agreement in reliance upon the provisions of this Agreement, particularly including (but not limited to) Sections 13 and 15A, and that the provisions of this Agreement form an essential basis of the bargain between the parties.

D. Should there at any time be monies owing from Apple to Wholesaler whether under this Agreement or otherwise, Wholesaler authorizes Apple to set off against any such sums owed by Apple to Wholesaler any amount or other obligation (contingent or otherwise) that Wholesaler owes to Apple. If Apple has reasonable grounds for concern that it may have a claim on any basis against Wholesaler, Apple may also withhold from any payments otherwise due from Apple to Wholesaler an amount that Apple deems reasonably necessary to cover the amount of the possible claim.

E. Title and risk of loss to all Products will pass to Wholesaler upon shipment from Apple's shipping location. For Products shipped pursuant to Apple's standard practices in all but the last week of every Apple fiscal quarter during the term of the Agreement, Apple will issue credits or replace Products returned due to damage in transit or that are lost in transit. For Products shipped pursuant to Apple's standard practices in the last week of every Apple fiscal quarter during the term of the Agreement, Apple will not issue credits or replace Products returned due to damage in transit or that are lost in transit. Instead, Apple will provide third-party insurance for damaged or lost Products with Wholesaler named as the loss payee. When not shipping Products pursuant to Apple's standard practices but instead shipping via a carrier selected by Wholesaler, Apple will not issue credits or replace Products returned due to damage in transit or that are lost in transit.

E. 

CONFIDENTIAL - ATTORNEYS EYES ONLY        Apple_AIIA_B_003354





#### 6. Rights Reserved to Apple.

A. Nothing in this Agreement shall be construed as limiting in any manner Apple's marketing, sale or distribution activities, or its appointment of other resellers, agents, licensees, or distributors. Further, Apple remains free at all times to open Apple retail stores or authorize additional resellers in any location, including in locations that are proximate to Authorized Locations.

B. Apple may allocate available inventory in its sole discretion and without liability to Wholesaler. Wholesaler acknowledges that Apple may choose to allocate available inventory to or among Apple's own retail and web-based stores, education customers, sales territories, other resellers, or otherwise, before Wholesaler, and that there may be delays in Apple's fulfillment of Wholesaler orders.

#### 7. Confidentiality

Neither party will use the other's Confidential Information except as required to achieve the objectives of this Agreement, or disclose such Confidential Information except to employees, agents or contractors who have a need to know or as required by law. Neither party will make any disclosure or statement of Confidential Information in connection with this Agreement or its subject matter without the other's prior written consent or as required by law.

#### 8. Limited Warranty to Wholesaler

A. Apple warrants that any Products purchased directly from Apple for resale to resellers according to this Agreement will conform to their general descriptions on the Authorized Apple Price Lists. Wholesaler's sole and exclusive remedy for any breach of this warranty will be a credit to Wholesaler's account for such nonconforming Products that are returned to Apple.

B. For Products sold by Apple to Wholesaler, Apple's standard Limited Warranty will flow to the end-user customer.

C. APPLE MAKES NO OTHER WARRANTY TO WHOLESALER, EITHER EXPRESS OR IMPLIED, WITH RESPECT TO THE PRODUCTS. APPLE SPECIFICALLY DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

#### 9. Records, Inspections and Reporting

A. Wholesaler will provide to Apple a list of all Authorized Locations and any other information that Apple may reasonably request, including sales and inventory reports, in formats prescribed by Apple. During the term of this Agreement and for five (5) years after its expiration or termination, Apple will have the right to inspect Wholesaler's Authorized Locations and other related facilities at any time upon prior written notice during regular business hours for purposes of verifying Wholesaler's compliance with the terms of this Agreement and Policies and Practices.

B. Wholesaler will maintain, at the applicable Authorized Location, its records, contracts and accounts relating to the sale of Products for at least five (5) years. Upon Apple's reasonable request, during the term of this Agreement and for five (5) years after its expiration or termination, Wholesaler will promptly provide copies of any requested records, financial statements and documents to Apple.

C. Wholesaler will provide Apple with resale certificate numbers and any other documentation requested by taxing authorities to substantiate any claim of exemption from taxes, duties, or imposts.

#### 10. Proprietary Rights

A. Apple Marks. Subject to Wholesaler's compliance with the terms of this Agreement, and Apple's Trademark Guidelines (available at http://www.apple.com/legal/trademark/guidelinesfor3rdparties.html), including all policies and guidelines referenced therein (the Trademark Guidelines and all policies and guidelines referenced therein being expressly incorporated herein by reference) Apple grants Wholesaler a privilege and limited license to use the Apple Marks solely for the promotion and sale of Products under Wholesaler's appointment, except that Wholesaler shall not use or allow others to use any of the Apple Marks on any promotional merchandise such as key chains, mugs, or T-shirts unless such use is pursuant to Apple's written merchandising policies. No other rights to any Apple property or right is granted. Wholesaler agrees that Apple owns all rights in the Apple Marks, and that any use by Wholesaler shall inure to the benefit of Apple. Apple reserves the right, in its sole discretion, to update, modify or amend the Trademark Guidelines (including all policies and guidelines referenced therein) and Wholesaler shall comply with the Trademark Guidelines as amended, modified or updated. Except as expressly permitted hereunder, Wholesaler agrees not to use any Apple trademark, service mark, logo, trade dress, design, "look and feel" (e.g., the design and layout of Apple's retail stores or websites, or the name under which Wholesaler does business) in any manner whatsoever, or act in any manner that implies an endorsement of Wholesaler by Apple. Wholesaler will not remove, obfuscate or add any mark to any materials provided by Apple or packaging for products on Authorized Apple Products Lists.

B. Software Rights. Wholesaler will not separate any software or its end-user license from the Products. Wholesaler may distribute software that is incorporated in or packaged with Products solely in connection with the authorized sale of such Products, and will have no other rights with respect to such software. Wholesaler will not disassemble, de-compile, reverse engineer, copy, modify, create derivative works, or otherwise change such software or its form. Wholesaler will pass on to resellers any licenses that should flow to end-user customers for the software accompanying the Products.

C. Apple Proprietary Customer Information. Wholesaler acknowledges that (i) Apple maintains customer



information independently derived from numerous sources other than Wholesaler, including product registration and use of Apple's websites by customers and prospective customers; (ii) such customer information may be identical to information that Wholesaler has developed or maintains; and (iii) Apple has a proprietary interest in such customer information when derived from sources other than Wholesaler, whether or not Wholesaler has derived or maintains identical information. Wholesaler disclaims any interest whatsoever in Apple's proprietary customer information.

### 11. Insurance

For each Authorized Location, Wholesaler will have a general liability insurance policy, including coverage for premises liability, contractual liability, products, and completed operations with limits of not less than one million dollars ($1,000,000) per occurrence for bodily, personal injury or property damage, or one million dollars ($1,000,000) in a combined single limit, and an Umbrella Liability policy with limits not less that five million dollars ($5,000,000) per occurrence. A Certificate of Insurance will be made available to Apple at its request.

### 12. Indemnity

A. If Wholesaler promptly notifies Apple in writing and gives Apple sole control over the defense and all related settlement negotiations, Apple will defend, hold harmless and indemnify Wholesaler against any damages finally awarded or amounts paid in settlement as a result of any claim or threat of claim brought by a third party against Wholesaler to the extent based on an allegation that: (i) the marketing or licensed use of any Apple-branded Products sold by Wholesaler infringes any U.S. patent, copyright, trademark, trade secret or other proprietary right of a third party, or (ii) a defective Product directly caused death or personal injury or damage to tangible property; provided that in either case Wholesaler did not alter, modify, or otherwise change the Product or software that gave rise to such claim.

B. Wholesaler will defend, hold harmless and indemnify Apple against any claim or threat of claim brought by a third party against Apple arising out of the acts or omissions of Wholesaler, its employees or agents, excluding acts or omissions expressly required or proscribed by this Agreement.

C. If either party seeks indemnification provided for in this Section, each party seeking indemnification will cooperate with and provide reasonable assistance in the defense or settlement of any claim or legal proceeding. Wholesaler and Apple will not make public any terms, or the mere existence, of any settlements.

### 13. Limitation of Liabilities and Remedies

The total liability of either party to the other on all claims of any kind under or related to this Agreement, whether in contract, warranty, tort, strict liability, statute, or otherwise, shall be limited to the total amounts paid by Wholesaler to Apple in the twelve (12) months prior to the date the initial claim is made against either party by the other or one hundred thousand dollars ($100,000), whichever is greater; provided that in no event shall all recoveries exceed three hundred thousand dollars ($300,000). IN NO EVENT, WHETHER AS A RESULT OF BREACH OF CONTRACT, WARRANTY, TORT, STRICT LIABILITY, STATUTE OR OTHERWISE, SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY SPECIAL, CONSEQUENTIAL, INCIDENTAL OR INDIRECT DAMAGES (INCLUDING LOST BUSINESS PROFITS, LOSS OF DATA, INTERRUPTION IN USE, OR UNAVAILABILITY OF DATA) OR FOR PUNITIVE OR EXEMPLARY DAMAGES. The limitation in the preceding two sentences shall not apply to (i) indemnity claims under Section 12 with respect to defective Products that directly cause death, personal injury or tangible property damage, (ii) any claims by Apple against Wholesaler for violation of intellectual property rights, including claims under Section 10, or (iii) the amount due from Wholesaler to Apple for products or services ordered from Apple. The remedies set forth in this Agreement will be Wholesaler's sole and exclusive remedies for any claim against Apple under or related to this Agreement. Wholesaler waives and relinquishes any rights or claims under franchise, dealership, or other statutes, or at common law that would or might arise out of Apple's termination of this Agreement, Apple's refusal to accept Wholesaler's order, or Apple's refusal to renew or extend the term of this Agreement.

### 14. Term and Termination

A. Term. Unless terminated earlier as provided in this Agreement: (i) the initial term of this Agreement will be from its effective date until April 30, 2011.

B. Termination. This Agreement may be terminated as follows: (i) either party may terminate this Agreement at any time, with or without cause, on thirty (30) days written notice of termination to the other party; and (ii) Apple may terminate this Agreement and any other active agreement with Wholesaler immediately and without any period to remedy if: (a) Wholesaler fails to fully perform any obligation under this Agreement or violates any Policies and Practices, (b) Wholesaler commits a felony or engages in any unlawful or unfair business practice, (c) there is a material change in or transfer of Wholesaler's management, ownership, control, business operations, or Wholesaler becomes affiliated, through common management, ownership, or control, with any person or entity that is unacceptable to Apple, (d) Wholesaler's actions expose or threaten to expose Apple to any liability, obligation, or violation of law, (e) Wholesaler fails to maintain sufficient net worth and working capital to meet its obligations, has a receiver or trustee appointed for its property, becomes insolvent or makes an assignment for the benefit of creditors, (f) Wholesaler closes its last Authorized Location, or (g) Wholesaler abandons this Agreement.

C. Effect of Notice of Termination. If either party gives notice of termination of this Agreement according to Section 14B(i): (i) all unpaid Apple invoices will become due on the effective date of termination; (ii) Apple may refuse all or part of Wholesaler's orders received by Apple after the date of notice of termination and cancel any orders not yet shipped; and (iii) Apple may restrict Wholesaler's use of any available promotional allowances. Wholesaler may continue to use the

CONFIDENTIAL - ATTORNEYS EYES ONLY

Apple_AIIA_B_003356



designation "Authorized Apple Wholesaler" until the effective date of termination.

D. **Effect of Expiration or Termination.** Within ten (10) days after expiration or termination, Wholesaler will provide a list of all Products remaining in Wholesaler's inventory to Apple, and Apple reserves the first right to purchase such Products. If Apple purchases Products from Wholesaler, the parties will determine the price. If Apple purchases Products from Wholesaler, upon Apple's acceptance of such Products, Apple will issue a credit to Wholesaler in the amount of Apple's purchase to offset any amount due Apple by Wholesaler or, if there is no amount due Apple by Wholesaler, Apple will pay Wholesaler forty-five (45) days from Apple's acceptance of Products. If Apple does not purchase Products remaining in Wholesaler's inventory, Wholesaler may sell the Products solely to a reseller or to an Authorized Apple Wholesaler. Furthermore, upon expiration or termination of this Agreement: (i) Wholesaler will immediately cease use of the Apple Marks and the designation "Authorized Apple Wholesaler"; (ii) Apple will cancel all unshipped Product orders; (iii) Wholesaler will no longer accrue any promotional allowances or other available funds; and (iv) Wholesaler will return promptly to Apple all Apple property in Wholesaler's possession, such as loaned equipment and all material containing Confidential Information. If Wholesaler fails to comply with any provisions of Sections 14.C or 14.D, Apple is not obligated to refund amounts due Wholesaler, if any, until forty-five (45) days after Wholesaler has complied fully with Sections 14.C and 14.D.

E. **Survivorship.** Those sections that by their nature survive expiration or termination of this Agreement shall survive expiration or termination.

## 15. General Terms

A. **Governing Law; Venue; Limitation of Claims.** This Agreement will be governed and interpreted under the laws of California, U.S.A. without regard to conflict of laws principles or provisions. In the event of any dispute or controversy between the parties to this Agreement, the parties shall try to resolve the dispute in a fair and reasonable way. To that end, the parties shall first attempt to resolve such dispute or controversy through one senior management member of each party. If the parties' senior management members are unable to resolve such dispute or controversy within sixty (60) days after the complaining party's written notice to the other party of such dispute or controversy, the parties shall further seek to resolve the dispute or controversy pursuant to non-binding mediation conducted in either Santa Clara County or San Francisco, California. Each party shall bear its own expenses in connection with the mediation except that Apple shall pay the fees and expenses of the mediator. If the parties are unable to resolve the dispute or controversy within sixty (60) days after commencing mediation, either party may commence litigation in the state or federal courts in Santa Clara County, California (but only such courts). Notwithstanding the foregoing, each party shall have the right to seek equitable relief in order to protect any rights to confidentiality or intellectual property. The parties hereby waive any bond requirements for obtaining equitable relief. ANY LITIGATION ARISING OUT OF ANY DISPUTE OR CONTROVERSY BETWEEN THE PARTIES TO THIS AGREEMENT MUST BE BROUGHT WITHIN ONE (1) YEAR FROM THE FIRST DATE SUCH ACTION COULD HAVE BEEN BROUGHT. IF A LONGER PERIOD IS PROVIDED BY STATUTE, THE PARTIES HEREBY EXPRESSLY WAIVE IT.

B. **Notice.** Any notice under this Agreement, except notices of changes in Policies and Practices as provided below, must be in writing and will be deemed given upon the earlier of actual receipt or ten (10) days after being sent by first class mail, return receipt requested, to the address set forth below for Apple and to the address designated on page one (1) of this Agreement by Wholesaler for receipt of notices, or as may be provided by the parties.

Apple Inc.
Sales Contracts Management
1 Infinite Loop, M/S 38-2CM
Cupertino, CA 95014

Either party may give notice of its change of address for receipt of notices by giving notice in accordance with this section. Notices of changes in the Policies and Practices that are posted on the Apple channel web sites will be given by Apple by posting to the Apple channel web sites and will be deemed given when posted.

C. **Severability.** If a court of competent jurisdiction holds that any provision of this Agreement is invalid or unenforceable, the remaining portions of this Agreement will remain in full force and effect, and the parties will replace the invalid or unenforceable provision with a valid and enforceable provision that achieves the original intent of the parties and economic effect of the Agreement.

D. **Headings and Construction.** Paragraph headings are for reference only and will not be considered as parts of this Agreement. Wherever the singular is used, it includes the plural, and, wherever the plural is used, it includes the singular.

E. **Waivers.** A party's waiver of any breach by the other party or failure to enforce a remedy will not be considered a waiver of subsequent breaches of the same or of a different kind.

F. **Assignments and Other Material Business Changes.** Wholesaler will notify Apple promptly if there is a material change in Wholesaler's ownership, management, or control; or Wholesaler acquires an ownership, managerial or controlling interest in a third party that sells or services Products. Wholesaler may not assign, in whole or in part, this Agreement without Apple's prior written approval.

G. **Relationship of Parties.** The parties are independent contractors, neither party has the power or authority to bind the other party, and are contracting for certain goods and services. Nothing in this Agreement will be construed as creating any relationship such as employer-

CONFIDENTIAL - ATTORNEYS EYES ONLY   Apple_AIIA_B_003357



employee, principal-agent or franchisor-franchisee. Wholesaler acknowledges that Apple can sell Products directly to any person, including Resellers.

H. **Entire Agreement.** Apple and Wholesaler acknowledge that this Agreement supersedes and extinguishes all previous agreements and representations of, between or on behalf of the parties with respect to its subject matter. This Agreement contains all of Apple's and Wholesaler's agreements, warranties, understandings, conditions, covenants, and representations with respect to its subject matter, and Apple and Wholesaler acknowledge and agree that they have not relied on any other agreements, warranties, understandings, conditions, covenants or representations in entering into this Agreement. Neither Apple nor Wholesaler will be liable for any agreements, warranties, understandings, conditions, covenants, or representations not expressly set forth or referenced in this Agreement. Apple is deemed to have refused any different or additional provisions in purchase orders, invoices or similar documents, unless Apple affirmatively accepts such provision in writing, and such refused provisions will be unenforceable.

I. **Modifications.** Except as otherwise provided in this Agreement, no modification to this Agreement will be binding unless in writing and signed by an authorized representative of each party.

J. **Counterparts**
This Agreement may be executed in one or more counterparts (including by facsimile), each of which when so executed shall be deemed to be an original and shall have the same force and effect as an original but such counterparts together shall constitute one and the same instrument.

The duly authorized representatives of the parties execute this Agreement as of the dates set forth below.

Wholesaler
SIGNATURE: _[signature]_
PRINT NAME: I. Joseph Liuzza
TITLE: E.V.P.
DATE: 4/10/08

Apple Inc.
SIGNATURE: _[signature]_
PRINT NAME: **Stephen Glaros**
             Sr Contracts Program Manager
TITLE:
DEPT: Sales Contracts Management
EFFECTIVE DATE: 4/16/08