# Exhibit O



## Apple Authorized Service Provider Agreement

This Apple Authorized Service Provider Agreement ("Agreement") is entered into by and between Apple Inc., a California corporation located at 1 Infinite Loop, Cupertino, CA 95014 ("Apple"):

Company Name ("Service Provider"): _Micro Center_

Address: _4119 Leap Rd._

City, ST, Zip: _Hilliard  OH  43026_

---

**1. Definitions.** When used in this Agreement, the following terms have the meanings specified below:

A. "Agreement" means collectively this Apple Authorized Service Provider Agreement, any amendments or additions, any documents or materials incorporated by reference, including the Apple Authorized Service Provider Manual.

B. "Apple Authorized Service Provider" means a person or entity authorized by Apple to service Products and sell Resale Products.

C. "Apple Marks" means trademarks, service marks, logos and product names owned by or licensed to Apple, and used on and in connection with Authorized Apple Products Lists, and the designation "Apple Authorized Service Provider."

D. "Apple Service Price List" means a then-current list of prices for Service Provider's purchase of Service Training & Tools and Service Stock and Resale Products.

E. "Apple Authorized Service Provider Program Manual" means the then-current information made available to Service Provider, which describes Apple's policies and procedures for providing customer service and support, and which are incorporated by reference to this Agreement and which Apple may update periodically.

F. "Authorized Service Location" means the location(s) at which Service Provider is authorized by Apple in this Agreement to service Products and which are identified in the General Information Form and/or General Update Form as approved by Apple.

G. "Confidential Information" means any information in oral or written form that recipient knows or has reason to know is confidential information and that is disclosed in connection with this Agreement or to which recipient may have access in connection with this Agreement, including but not limited to business and marketing plans, Product information, Covered Repair policies, financial information and data, personnel information, information regarding strategic alliances, costs or pricing data, and the identities of customers and prospective customers. Notwithstanding the foregoing, Confidential Information shall not include information that: (i) is now or subsequently becomes generally available to the public through no fault or breach on the part of recipient; (ii) recipient can demonstrate to have had rightfully in its possession prior to disclosure to recipient by discloser; (iii) is independently developed by recipient without the use of any Confidential Information; or (iv) recipient rightfully obtains from a third party who has the right to transfer or disclose it to recipient without limitation. Nothing in this Agreement will obligate either party to disclose any Confidential Information.

H. "Covered Repair" means a Product repair or replacement that is covered by an obligation described in Apple's product warranty, extended service contract or service program described in the Apple Authorized Service Provider Program Manual.

I. "IUFU" ("Inoperable Upon First Use") means a Product that does not function or operate upon first use.

J. "Global Service Exchange" or "GSX" means Apple's online system for creating service orders and ordering Service Stock.

K. "Products" means hardware and software products under the Apple Inc. brand name (excluding third party products) that Service Provider is authorized to service under this Agreement and as listed in Apple's Global Service Exchange.

L. "Resale Products" means (i) support related products branded by the AppleCare service mark and (ii) new, used, remanufactured, or refurbished modules and piece parts, both of which Apple sells to Service Provider for the sole purpose of resale.

M. "Sales Documentation" means Service Provider's records, contracts, invoices and receipts relating to the sale of Resale Products required to comply with applicable service contract regulation.

N. "Service Documentation" means Service Provider's records, contracts, accounts and written and signed work orders relating to the service of Products or use of Service Stock.

O. "Service Products" means Service Stock and Service Training & Tools.

P. "Service Stock" means new, used, remanufactured, or refurbished modules and piece parts that Apple sells to Service Provider for the sole purpose of repairing Products.

Q. "Service Training & Tools" means Product service documentation, tools, diagnostics and training materials.

**2. Appointment.** Subject to Service Provider's compliance with this Agreement, Apple appoints Service Provider as a limited and nonexclusive Apple Authorized Service Provider as specified in the applicable portions of the Apple Authorized Service Provider Manual to sell Resale Products and service Products within the U.S. Apple grants Service Provider the right to provide repair services for Covered Repairs in return for reimbursement from Apple; and Service Provider accepts this appointment.

**3. Scope of Authorization.**
A. Upon confirmation that Service Provider has certified technicians in accordance with the Apple Authorized Service Provider Manual, Service Provider is authorized to purchase from Apple (i) Service Stock for the sole purpose of servicing Products, and (ii) Resale Products for the sole purpose of resale. Except when providing services for Covered Repairs, in which case Apple will compensate Service Provider in accordance with the Apple Authorized Service Provider Manual, Service Provider will determine its own prices for products, parts and repairs. Apple reserves the right to remove or add Resale Products and Service Products from the Apple Service Price List and change the Apple Authorized Service Provider Manual and scope of Service Provider's authorization at any time and without notice. Service Provider will have a

---

CONFIDENTIAL - ATTORNEYS EYES ONLY                                    Apple_AIIA_B_003508



commercially reasonable period of time to implement such changes by Apple, not to exceed thirty (30) days.

B. Service Provider will not resell or otherwise transfer Service Stock, except in the course of its repair of Products, unless Apple authorizes in writing other sales or transfers. Service Provider will only use Service Stock purchased from Apple, except where Apple authorizes in writing other purchases, or from another Apple Authorized Service Provider whose Apple Authorized Service Provider contract with Apple has expired or been terminated. Service Provider will not utilize new, used, remanufactured or refurbished Service Products obtained from unauthorized sources to perform repairs, except where Apple authorizes in writing other parts to be used in repairs.

4. **Service Provider's Obligations.**
A. Service Provider shall act at all times and conduct its activities in a professional and competent manner. Service Provider will perform all service using best efforts and maintain a high level of customer satisfaction. Without limitation, Service Provider will: (i) adhere to all requirements of the Apple Authorized Service Provider Manual, including those requiring the use of certified technicians; (ii) repair or replace Products presented for service in accordance with the Apple Authorized Service Provider Program Manual, even if the Products were not purchased from Service Provider or are not currently manufactured by Apple; (iii) purchase and keep current at all times an inventory of Service Stock that is reasonably sufficient to meet Service Provider's obligations under this Agreement; (iv) perform or provide service for Covered Repairs at Apple's then-current rates, without other charge; (v) maintain an electronic service database that includes but is not limited to product serial number, customer name, customer physical address, customer e-mail address, customer work authorization information, service event status, service diagnosis, service parts used, and relevant GSX order information; and (vi) obtain all required certifications, registrations and licenses, and comply with federal, state and local laws and regulations.

B. To obtain reimbursement for Covered Repairs, Service Provider must access GSX and furnish Apple with information establishing that it has performed the Covered Repairs as required by the Apple Authorized Service Provider Program Manual and maintain Service Documentation in accordance with this Agreement. The Apple Authorized Service Provider Program Manual may include a performance evaluation program that sets Service Provider's compensation for Covered Repairs based on Service Provider's performance.

C. Service Provider will maintain an Internet email address, which it will provide to Apple, and have Internet access at all times. Service Provider will access Apple's service web sites at least weekly to ascertain whether Apple has modified the Apple Authorized Service Provider Manual.

D. Service Provider will notify Apple promptly in writing of any suspected Product or Service Product defect or safety issue. In the event Apple implements a program relating to Product safety, recall or extended repair coverage ("Product Program"), upon Apple's request, Service Provider will (i) communicate promptly to Service Provider's customers all Apple approved notices relating to the Product Program, (ii) reasonably assist with the implementation of changes, recalls and/or repairs of the Product Program in relation to Service Provider's customers, and (iii) report to Apple promptly the progress of such actions.

E. If Service Provider discovers the existence of non-genuine (counterfeit) products in its inventory, Service Provider will (i) promptly notify Apple, (ii) provide Apple with details on how the products were acquired, and (iii) reasonably assist Apple's investigation of such products.

F. Service Provider will pay any applicable sales or use taxes, duties and other imposts due on account of purchases under this Agreement; as well as recycling fees, and any other fees imposed on the Service Products and Resale Products, parts thereof, or their packaging by any central or local authority, collecting society, or other institution, attributable to Service Provider's activities under this Agreement. Service Provider will be responsible for the collection of all applicable sales tax, use taxes, and other fees associated with the resale of Service Stock and Resale Products.

G. **Export Compliance.** Service Provider will not sell, export or transfer Products, Service Products, Resale Products, or any Apple technical information outside the United States, either directly or indirectly. Notwithstanding the foregoing, Service Provider acknowledges that all Products, Service Products and Resale Products, and Apple technical information is subject to applicable laws, regulations, orders and other limitations on the export and re-export of commodities, technical data and software, and cannot be exported, resold or transferred in anyway: (i) in violation of such limitations imposed by the United States, or any other relevant national government authority; or (ii) to any country for which an export license or other governmental approval is required at the time of export, without first obtaining all necessary licenses or other approvals; or (iii) to any country or national or resident of a country to which trade is embargoed by the United States, or (iv) to any person or firm on the U.S. Department of Commerce's Table of Denial Orders or Entities list, or U.S Treasury Department's list of Specially Designated Nationals; or (v) for use in any sensitive nuclear, chemical or biological weapons, or missile technology end-uses unless authorized by the U.S. Government by regulation or specific license.

H. **Business Ethics.**
Service Provider has reviewed and understands Apple's policies with respect to ethical business issues and agrees to fully comply with all such policies, including Apple's policies relating to the United States Foreign Corrupt Practices Act (the "FCPA"). Service Provider confirms it has a full understanding of the rules and principles of the FCPA and shall strictly comply with it and any other anti-bribery or similar legislation in any jurisdiction where business or services will be conducted or performed pursuant to this Agreement. Apple's policies regarding ethical business issues are located at http://www.apple.com/supplierresponsibility.

Service Provider confirms that no owner, partner, officer, director or employee of Service Provider has been or will become during the term of this Agreement (i) an official or employee of a governmental entity or political party or (ii) a candidate for political office.

Service Provider will not directly or indirectly pay, offer, promise or give or authorize to pay, offer or give money or anything of value to any employee or official of a government or department thereof, political party or a candidate for political office, to any employees or officials of a public international organization, or to any employees of enterprises or companies owned or controlled by a government, or to any other person while being aware of or having a belief that such money or item of value will be passed on to one of the above, to influence any act or decision by such person or by any governmental body for the purpose of obtaining, retaining or directing business to Apple. Service Provider warrants it shall not undertake any activity or action that may cause Apple to be in breach of the rules or regulations of the FCPA or similar legislation.

Any fee paid by Apple to Service Provider for Covered Repairs will be for the services actually rendered in accordance with the terms of this Agreement and no part of any such fee or any other funds of Service Provider will directly or indirectly,

CONFIDENTIAL - ATTORNEYS EYES ONLY   Apple_AIIA_B_003509



be paid to or accrue for the benefit of, any official, agent or employee of, (or in any way connected with) any government or any political party or sub-division, ministry, agency or authority thereof or a political party or an officer, agent or employee of a political party or a candidate for political office or a director, officer, employee or shareholder of any customer or prospective customer of Apple.

**5. Purchases from Apple.**
**A.** Any order placed with Apple is subject to acceptance by Apple, and Apple may decline any order, in whole or in part, for any reason. Apple may cancel any accepted order prior to shipment. Apple may make partial shipments of Service Provider's orders. Apple will not be liable for any failure to ship complete orders. Service Provider will be invoiced separately for each partial shipment and will pay each invoice when due, without regard to subsequent deliveries.

**B.** The price for Resale Products and Service Products purchased directly from Apple will be the price on the Service Price List on the date that Apple ships the products. Service Provider will be invoiced upon shipment of product and, provided Service Provider is qualified for credit from Apple, such invoice will be due no later than thirty (30) days from the date of invoice. Apple reserves the right to change the Apple Service Price List and Service Provider's credit terms at any time.

**C.** Service Provider acknowledges that Apple has set its prices and entered into this Agreement in reliance upon the provisions of this Agreement, particularly including (but not limited to) Sections 13 and 15A, and that the provisions of this Agreement form an essential basis of the bargain between the parties.

**D.** Should there at any time be monies owing from Apple to Service Provider whether under this Agreement or otherwise, Service Provider authorizes Apple to set off against any such sums owed by Apple to Service Provider any amount or other obligation (contingent or otherwise) owed by Service Provider to Apple. If Apple has reasonable grounds for concern that it may have a claim against Service Provider for possibly overstated, undocumented, unverifiable or fraudulent transactions, Apple may also withhold from any payments otherwise due from Apple to Service Provider an amount which Apple deems reasonably necessary to cover the amount of such possible claims.

**E.** Title and risk of loss to all Resale Products and Service Products will pass to Service Provider upon shipment from Apple's shipping location. For Resale Products and Service Products shipped pursuant to Apple's standard practices in all but the last week of every Apple fiscal quarter during the term of this Agreement, Apple will issue credits or replace Resale Products and Service Products returned due to damage in transit or that are lost in transit. For Resale Products and Service Products shipped pursuant to Apple's standard practices in the last week of every Apple fiscal quarter during the term of this Agreement, Apple will not issue credits or replace Resale Products or Service Products returned due to damage in transit or that are lost in transit. Instead, Apple will provide third-party insurance for damaged or lost Resale Products or Service Products with Service Provider named as the loss payee. When not shipping Resale Products or Service Products pursuant to Apple's standard practices but instead shipping via a carrier selected by Service Provider, Apple will not issue credits or replace Resale Products or Service Products returned due to damage in transit or that are lost in transit.

**6. Rights Reserved to Apple.**
**A.** Nothing in this Agreement shall be construed as limiting in any manner Apple's marketing, sale or distribution activities, or its appointment of other service providers, agents, licensees, or distributors. Further, Apple remains free at all times to open Apple retail stores or authorize additional service providers in any location, including in locations that are proximate to Authorized Service Locations.

**B.** Apple may allocate its available inventory and make deliveries (including partial shipments) in its sole discretion and without liability to Service Provider. Service Provider acknowledges that Apple may choose to allocate available inventory to or among Apple's own retail and web-based stores, education customers, sales territories, other service providers, or otherwise, before Service Provider, and that there may be delays in Apple's fulfillment of Service Provider orders.

**7. Confidentiality.**
**A. Use of Confidential Information**
Both parties agree to protect the other party's Confidential Information, using at least the same degree of care that it uses to protect its own confidential and proprietary information of similar importance, but no less than a reasonable degree of care. Neither party will use the other's Confidential Information except as required to achieve the objectives of this Agreement, or disclose such Confidential Information except to employees, agents or contractors who have a need to know or as required by law. Neither party will make any disclosure or statement of Confidential Information in connection with this Agreement or its subject matter without the other's prior written consent or as required by law. A party may disclose Confidential Information to the extent required by law, provided recipient makes reasonable efforts to give discloser notice of such requirement prior to any such disclosure and takes reasonable steps to obtain protective treatment of the Confidential Information.

**B. Term of Confidential Information**
Recipient's duty to protect discloser's Confidential Information expires five (5) years from the date of expiration or termination of this Agreement.

**8. Limited Warranty to Service Provider.**
**A.** Apple warrants to Service Provider that Resale Products and Service Products shipped by Apple: (1) will conform to their general descriptions on the Apple Service Price List and (2) will not be Inoperable Upon First Use. These warranties are nontransferable and void if the product has been modified, abused or subjected to unusual physical or electrical stress. Service Provider's sole and exclusive remedy for any breach of this warranty will be replacement of the item upon return to Apple of the nonconforming unit.

**B.** APPLE MAKES NO OTHER WARRANTY TO SERVICE PROVIDER, EITHER EXPRESS OR IMPLIED, WITH RESPECT TO THE PRODUCTS, RESALE PRODUCTS OR THE SERVICE PRODUCTS. APPLE SPECIFICALLY DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**9. Records, Inspections, and Reporting.**
**A.** Unless otherwise instructed by Apple, Service Provider will report to Apple the service option selected for each Authorized Service Location, and any other information that Apple may reasonably request, including Service Stock sales and inventory reports and information on Resale Product sales required to comply with applicable service contract regulations, in computer readable format and as otherwise prescribed by Apple. Apple will have the right to inspect Service Provider's Authorized Service Locations and other related facilities at any time, upon prior notice and during regular business hours for purposes of verifying Service Provider's compliance with the terms of this Agreement and Apple Authorized Service Provider Manual. Service Provider will cooperate with all reasonable requests made by Apple regarding the inspection and will not attempt to limit its scope.

CONFIDENTIAL - ATTORNEYS EYES ONLY   Apple_AIIA_B_003510



B. Service Provider will maintain, at the applicable Authorized Service Location, Sales Documentation and Service Documentation for at least five (5) years. Upon Apple's reasonable request, during the term of this Agreement and for five (5) years after its expiration or termination, Service Provider will promptly provide copies of the Sales Documentation and Service Documentation and any requested information, records, financial statements and documents to Apple. If Apple determines that Service Provider has failed to maintain Service Documentation or has maintained or created fraudulent Service Documentation regarding its reimbursement for Covered Repairs or otherwise engaged in any fraudulent conduct with respect to this Agreement, Apple may withhold any reimbursement payments otherwise due from Apple to Service Provider and may demand that Service Provider (i) repay to Apple all fees and other compensation fraudulently obtained by Service Provider, or obtained without proper substantiation, including without limitation for services purportedly performed, labor, travel and administration fees and (ii) pay to Apple the then-current stock price of Service Stock listed on the Apple Service Price List for which Apple reimbursed Service Provider in relation to such fraudulent or unsubstantiated activities. If the fraudulent or unsubstantiated activities discovered during Apple's inspection exceed, in the aggregate, Five Thousand dollars ($5,000) in value or five percent (5%) of total Covered Repairs reimbursement claims submitted during the period under review, Service Provider will reimburse Apple for its costs of conducting the inspection.

C. Service Provider will provide Apple with resale certificate numbers and any other documentation requested by taxing authorities to substantiate any claim of exemption from taxes, duties, or imposts.

### 10. Proprietary Rights.
**A. Apple Marks**
Subject to Service Provider's compliance with the terms of this Agreement, and Apple's Trademark Guidelines (available at http://www.apple.com/legal/trademark/guidelinesfor3rdpartie s.html), including all policies and guidelines referenced therein (the Trademark Guidelines and all policies and guidelines referenced therein being expressly incorporated herein by reference), Apple grants Service Provider a privilege and limited license to use the Apple Marks solely for the promotion and sale of Resale Products and Service Products, and the delivery of services as an Apple Authorized Service Provider. No other rights to any Apple property or right is granted. Without limiting the foregoing, Service Provider's license does not include the right to (i) use any Apple trademark, service mark, logo, trade dress, design, "look and feel" (e.g., the design and layout of Apple's retail stores or websites, or the name under which Service Provider does business) in any manner whatsoever, or in any manner that implies an endorsement of Service Provider by Apple; (ii) use or allow others to use any of the Apple Marks on any promotional merchandise, including but not limited to key chains, mugs, or T-shirts unless such use is pursuant to Apple's written merchandising policies; (iii) apply or register, be assigned, establish the right of use or security on, or use, on its own or through a third party, any trademark/design or any other mark which is identical or similar to, or is likely to be mistaken or confused with Apple Marks without Apple's prior written approval; or (iv) use Apple Marks, Products and Resale Products in a manner that is not in compliance with Apple's marketing and identity guidelines. Service Provider agrees that Apple owns all rights in the Apple Marks, and that any use by Service Provider shall inure to the benefit of Apple. Service Provider will not remove, obfuscate or add any mark to any materials provided by Apple. If Apple determines that Service Provider's use of Apple Trademarks fails to comply with this Agreement (including the Trademark Guidelines), without limiting or waiving any of its rights, Apple may require Service Provider to immediately cure any nonconformance at Service Provider's own expense. Apple

reserves the right, in its sole discretion, to update, modify or amend the Trademark Guidelines (including all policies and guidelines referenced therein) and Service Provider shall comply with the Trademark Guidelines as amended, modified or updated.

**B. Software Rights**
Service Provider will not separate any software or its end-user license from Resale Products or Service Products. Service Provider will not disassemble, de-compile, reverse engineer, copy, modify, create derivative works, or otherwise change such software or its form. Service Provider may distribute software that is incorporated in or packaged with Service Products solely in connection with the authorized repair of Products, and will have no other rights with respect to such software. Service Provider will pass on to customers any end-user licenses for the software accompanying Resale Products or Service Products.

**C. Apple Proprietary Customer Information**
Service Provider acknowledges that (i) Apple maintains customer information independently derived from numerous sources other than Service Provider, including product registration and use of Apple's websites by customers and prospective customers; (ii) such customer information may be identical to information that Service Provider has developed or maintains; and (iii) Apple has a proprietary interest in such customer information when derived from sources other than Service Provider, whether or not Service Provider has derived or maintains identical information. Service Provider disclaims any interest whatsoever in Apple's proprietary customer information.

### 11. Insurance.
For each Authorized Service Location, Service Provider will have a general liability insurance policy, including coverage for premises liability, products, and completed operations. This policy will have limits of not less than one million dollars ($1,000,000) per incident for bodily, personal injury or property damage, or one million dollars ($1,000,000) in a combined single limit, and a Certificate of Insurance will be made available to Apple at its request.

### 12. Indemnity.
A. Subject to the exceptions in this Section A and the notice and defense conditions in Section C below, Apple will defend and indemnify Service Provider against any damages finally awarded or amounts paid in settlement as a result of any claim brought by a third party against Service Provider to the extent based on an allegation that any Apple-branded Resale Product or Apple-branded Service Product sold by Apple to Service Provider infringes or misappropriates any U.S. patent, copyright, trademark, or trade secret, provided however, that Apple shall not be liable for or obligated to defend any claims arising out of Service Provider's (or any of its subcontractors'): (i) alteration or modification of any Apple-branded Resale Product or Apple-branded Service Product (ii) combination of the Apple-branded Resale Product or Apple-branded Service Product with any other equipment, items or products, (iii) use of any Apple-branded Resale Product or Apple-branded Service Product for a purpose for which it was not intended, (iv) failure to use an upgrade or replacement version of any Apple-branded Resale Product or Apple-branded Service Product when such upgrade or replacement version is made available by Apple, (v) export of any Apple-branded Resale Product or Apple-branded Service Product in violation of applicable export control regulations, or (vi) use of any Apple-branded Resale Product or Apple-branded Service Product consisting of software in a manner not authorized under the applicable end user license agreement. In the event of any alleged, actual or potential claim arising under this Section A, Apple may (but is not obligated), at its sole option, to: (a) procure for Service Provider the right to continue use of the applicable Apple-branded Service Product or Apple-branded Resale Product, (b) replace or modify the applicable Apple-

CONFIDENTIAL - ATTORNEYS EYES ONLY        Apple_AIIA_B_003511



branded Service Product or Apple-branded Resale Product to avoid the alleged infringement or misappropriation, or (c) if Apple determines, in its sole discretion, that neither of the foregoing options are commercially reasonable, then Apple may issue a pro-rata refund of the amount paid by Service Provider for the applicable infringing Apple-branded Resale Product, less depreciation on a straight line, three-year basis. THE FOREGOING CONSTITUTES SERVICE PROVIDER'S SOLE REMEDY AND APPLE'S SOLE AND EXCLUSIVE LIABILITY FOR ALL INTELLECTUAL PROPERTY CLAIMS.

**B. Personal Injury/Tangible Property Claims.** Subject to the exceptions in Section A and the notice and defense conditions in Section C below, Apple will defend and indemnify Service Provider against any damages finally awarded or amounts paid in settlement as a result of any claim brought by a third party against Service Provider to the extent based on an allegation that a defective Apple-branded Service Product directly caused death or personal injury or tangible property damage; provided however, that Apple shall not be liable for or obligated to defend any claims arising out of Service Provider's (or any of its subcontractors') gross negligence or willful misconduct. THE FOREGOING CONSTITUTES SERVICE PROVIDER'S SOLE REMEDY AND APPLE'S SOLE AND EXCLUSIVE LIABILITY FOR ALL PERSONAL INJURY AND PROPERTY DAMAGE CLAIMS.

**C. Notice/Defense.** Service Provider must promptly notify Apple, in writing, of any claim, demand, proceeding or suit of which Service Provider becomes aware which may give rise to a right of defense pursuant to Section A or Section B above (in each instance, referred to as a "Claim"). Notice of any Claim must be provided to Apple in writing within thirty (30) days of Service Provider's first learning of such Claim. Notice must include an offer to tender the defense of the Claim to Apple. If it accepts such tender, Apple will take over sole control of the defense of the Claim, including the right to take any and all actions necessary to completely and finally resolve the Claim by settlement or compromise.

**D.** Service Provider will defend, hold harmless and indemnify Apple against any claim or threat of claim brought by a third party against Apple arising out of the acts or omissions of Service Provider, its employees or agents, excluding acts or omissions expressly required or prescribed by this Agreement.

**E.** If either party seeks indemnification provided for in this section, each party seeking indemnification will cooperate with and provide reasonable assistance in the defense or settlement of any claim or legal proceeding. Service Provider and Apple will not make public any terms, or the mere existence, of any settlements.

**13. Limitation of Liability and Remedies.** THE TOTAL LIABILITY OF EITHER PARTY TO THE OTHER ON ALL CLAIMS OF ANY KIND UNDER OR RELATED TO THIS AGREEMENT, WHETHER IN CONTRACT, WARRANTY, TORT, STRICT LIABILITY, STATUTE, OR OTHERWISE, SHALL BE LIMITED TO THE TOTAL PURCHASES (NET OF PART RETURNS OR EXCHANGES) BY SERVICE PROVIDER IN THE TWELVE (12) MONTHS PRIOR TO THE DATE THE INITIAL CLAIM IS MADE AGAINST EITHER PARTY BY THE OTHER OR ONE HUNDRED THOUSAND DOLLARS ($100,000), WHICHEVER IS GREATER; PROVIDED THAT IN NO EVENT SHALL ALL RECOVERIES EXCEED THREE HUNDRED THOUSAND DOLLARS ($300,000). IN NO EVENT, WHETHER AS A RESULT OF BREACH OF CONTRACT, WARRANTY, TORT, STRICT LIABILITY, STATUTE OR OTHERWISE, SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY SPECIAL, CONSEQUENTIAL, INCIDENTAL OR INDIRECT DAMAGES (INCLUDING LOST BUSINESS PROFITS, LOSS OF DATA, INTERRUPTION IN USE, OR UNAVAILABILITY OF DATA), OR FOR PUNITIVE OR EXEMPLARY DAMAGES. The limitation in the preceding two sentences shall not apply to (i) indemnity claims under Section 12 with respect to defective Products that directly cause death, personal injury or tangible property damage, (ii) any claims by Apple against Service Provider for violation of intellectual property rights, including claims under Section 10, (iii) the amount due from Service Provider to Apple for products or services ordered from Apple, or (iv) claims by Apple for any sums due under Section 9B. The remedies set forth in this Agreement will be Service Provider's sole and exclusive remedies for any claim against Apple under or related to this Agreement, and are not cumulative nor may the liability cap be applied so as to increase the liability cap instance. Service Provider waives and relinquishes any rights or claims under franchise, dealership, or other statutes, or at common law, that would or might arise out of Apple's termination of this Agreement, Apple's refusal to accept Service Provider's order, or Apple's refusal to renew or extend the term of this Agreement. THE PARTIES AGREE THAT THE TERMS OF THIS AGREEMENT, INCLUDING THOSE CONCERNING WARRANTIES, INDEMNITY AND LIMITATIONS OF LIABILITY, REPRESENT A FAIR ALLOCATION OF RISK BETWEEN THE PARTIES WITHOUT WHICH THEY WOULD NOT HAVE ENTERED INTO THIS AGREEMENT.

**14. Term and Termination.**
**A. Term**
Unless terminated earlier as provided in this Agreement, the initial term of this Agreement will be from its effective date until April 30, 2010.

**B. Termination**
This Agreement may be terminated as follows: (i) either party may terminate this Agreement or an Authorized Location at any time, with or without cause, on thirty (30) days' written notice of termination to the other party; and (ii) Apple may terminate this Agreement, an Authorized Location and any other active agreement with Service Provider immediately and without any period to remedy if: (a) Service Provider fails to fully perform any obligation under this Agreement or violates any practices or procedures set forth in the Apple Authorized Service Provider Manual, (b) Service Provider commits a felony or engages in any unlawful or unfair business practice, (c) Service Provider purchases Resale Products or Service Products from unauthorized sources; (d) Service Provider participates in the unauthorized export of Apple Products or service parts; (e) there is a material change in or transfer of Service Provider's management, ownership, control or business operations, or Service Provider becomes affiliated, through common management, ownership, or control, with any person who or entity that is unacceptable to Apple, (f) Service Provider's actions expose or threaten to expose Apple to any liability, obligation, or violation of law, (g) Service Provider fails to maintain sufficient net worth and working capital to meet its obligations, has a receiver or trustee appointed for its property, becomes insolvent or makes an assignment for the benefit of creditors, (h) Service Provider closes its last Authorized Service Location, or (i) Service Provider abandons this Agreement.

**C. Effect of Notice of Termination**
If either party gives notice of termination of this Agreement according to Section 14B(i): (i) all unpaid Apple invoices will become due on the effective date of termination; (ii) Apple may refuse all or part of Service Provider's orders received by Apple after the date of notice of termination; and (iii) Service Provider will cease placing new orders for Resale Products and Service Products. Service Provider may continue to use the designation "Apple Authorized Service Provider" until the effective date of termination. In addition, if termination is in accordance with Section 14B(ii), all unpaid Apple invoices will become due on the effective date of termination.

**D. Effect of Expiration or Termination**
Within ten (10) days after expiration or termination, Service Provider will provide a list of all Resale Products or Service Products remaining in Service Provider's inventory to Apple

CONFIDENTIAL - ATTORNEYS EYES ONLY    Apple_AIIA_B_003512



and Apple reserves the first right to purchase such Resale Products or Service Products. If Apple purchases Resale Products or Service Products from Service Provider, the parties will determine the price (which shall not exceed the unit price paid by Service Provider). If Apple purchases Resale Products or Service Products from Service Provider, upon Apple's acceptance of such products, Apple will issue a credit to Service Provider in the amount of Apple's purchase to offset any amount due Apple from Service Provider or, if there is no amount due Apple from Service Provider, Apple will pay Service Provider forty-five (45) days from Apple's acceptance of such products. If Apple does not purchase Resale Products or Service Products remaining in Service Provider's inventory, Service Provider may sell such products solely to an Apple Authorized Service Provider. Furthermore, upon expiration or termination of this Agreement: (i) Service Provider will immediately cease use of the Apple Marks and the designation "Apple Authorized Service Provider"; (ii) Service Provider will complete all service in progress, and will make final claim upon Apple for all reimbursement for providing Covered Repair services within thirty (30) days of the date of such expiration or termination; and (iv) Service Provider will return promptly to Apple all Apple property in Service Provider's possession, such as loaned equipment and all material containing Confidential Information, or destroy such Confidential Information and certify in writing to Apple that such Confidential Information has been destroyed. If Service Provider fails to comply with any provisions of Sections 14.C or 14.D, Apple is not obligated to refund amounts due Service Provider, if any, until forty-five (45) days after Service Provider has complied fully with Sections 14.C and 14.D.

### E. Survivorship
Those sections that by their nature survive expiration or termination of this Agreement will survive expiration or termination; including without limitation sections relating to definitions, limited warranty, indemnification, limitations of liability, payment, and general terms.

### 15. General Terms.
#### A. Governing Law; Venue; Limitation of Claims
This Agreement will be governed and interpreted under the laws of California, USA, without regard to its conflict of laws principles or provisions. In the event of any dispute or controversy between the parties to this Agreement, the parties shall try to resolve the dispute in a fair and reasonable way. To that end, the parties shall first attempt to resolve such dispute or controversy through one senior management member of each party. If the parties' senior management members are unable to resolve such dispute or controversy within thirty (30) days after the complaining party's written notice to the other party of such dispute or controversy, the parties shall further seek to resolve the dispute or controversy pursuant to non-binding mediation conducted in either Santa Clara County or San Francisco, California. Each party shall bear its own expenses in connection with the mediation, except that Apple shall pay the fees and expenses of the mediator. If the parties are unable to resolve the dispute or controversy within thirty (30) days after commencing mediation, either party may commence litigation in the state or federal courts in Santa Clara County, California (but only such courts). Notwithstanding the foregoing, each party shall have the right to seek equitable relief in order to protect any rights to confidentiality or intellectual property. The parties hereby waive any bond requirements for obtaining equitable relief. ANY LITIGATION ARISING OUT OF ANY DISPUTE OR CONTROVERSY BETWEEN THE PARTIES TO THIS AGREEMENT MUST BE BROUGHT WITHIN ONE (1) YEAR FROM THE FIRST DATE SUCH ACTION COULD HAVE BEEN BROUGHT. IF A LONGER PERIOD IS PROVIDED BY STATUTE, THE PARTIES HEREBY EXPRESSLY WAIVE IT.

### B. Notice
Any notice under this Agreement, except notices of changes in Apple Authorized Service Provider Manual as provided below, must be in writing and will be deemed given upon the earlier of actual receipt or ten (10) days after being sent by first class mail, return receipt requested, to the address set forth below for Apple and to the address designated on page one (1) of this Agreement by Service Provider for receipt of notices, or as may be provided by the parties.

Apple Inc.
Sales Contracts Management
1 Infinite Loop, M/S 38-2CM
Cupertino, CA 95014

Either party may give notice of its change of address for receipt of notices by giving notice in accordance with this section. Notices of changes in the Apple Authorized Service Provider Manual that are posted on the Apple service web sites will be given by Apple by posting to the Apple service web sites and will be deemed given when posted.

### C. Severability
If a court of competent jurisdiction holds that any provision of this Agreement is invalid or unenforceable, the remaining portions of this Agreement will remain in full force and effect, and the parties will replace the invalid or unenforceable provision with a valid and enforceable provision that achieves the original intent of the parties and economic effect of the Agreement.

### D. Headings and Construction
Paragraph headings are for reference only and will not be considered as parts of this Agreement. Wherever the singular is used, it includes the plural, and wherever the plural is used, it includes the singular.

### E. Waivers
A party's waiver of any breach by the other party or failure to enforce a remedy will not be considered a waiver of subsequent breaches of the same or of a different kind.

### F. Assignments and Other Material Business Changes
Service Provider will notify Apple promptly if there is a material change in Service Provider's ownership, management, or control; or Service Provider acquires an ownership, managerial or controlling interest in a third party that sells or services Products. Service Provider may not assign, in whole or in part, this Agreement without Apple's prior written approval.

### G. Relationship of Parties
Service Provider is an independent contractor, has no power or authority to bind Apple, and is contracting for certain goods and services. Nothing in this Agreement will be construed as creating any relationship such as employer-employee, principal-agent or franchisor-franchisee. Service Provider acknowledges that Apple can sell Products, Resale Products or Service Products directly to any person, including Service Provider's customers. Apple may change the method of providing service to Customers, at its sole discretion, including but not limited to, having Products sent to a central depot for repair and providing customers with parts.

### H. Entire Agreement
Apple and Service Provider acknowledge that this Agreement supersedes and extinguishes all previous agreements and representations of, between or on behalf of the parties with respect to its subject matter. This Agreement contains all of Apple's and Service Provider's agreements, warranties, understandings, conditions, covenants, and representations with respect to its subject matter, and Apple and Service Provider acknowledge and agree that they have not relied on any other agreements, warranties, understandings, conditions, covenants or representations in entering into this Agreement.

CONFIDENTIAL - ATTORNEYS EYES ONLY                           Apple_AIIA_B_003513



In the event of a conflict between the terms and conditions of this Apple Authorized Service Provider Agreement and the terms and conditions of the Apple Authorized Service Provider Program Manual, the terms and conditions of this Apple Authorized Service Provider Agreement shall prevail. Neither Apple nor Service Provider will be liable for any agreements, warranties, understandings, conditions, covenants, or representations not expressly set forth or referenced in this Agreement. Apple is deemed to have refused any different or additional provisions in purchase orders, invoices or similar documents, unless Apple affirmatively accepts such provision in writing, and such refused provisions will be unenforceable.

**I. Modifications**
Except as otherwise provided in this Agreement, no modification to this Agreement will be binding unless in writing and signed by an authorized representative of each party.

**J. Force Majeure.**
Neither party will be liable for delay or failure to fulfill its obligations under this Agreement, other than payment obligations, due to unforeseen circumstances or causes beyond the parties' reasonable control, including acts of God, war, riot, embargoes, acts of civil or military authorities, acts of terrorism or sabotage, electronic viruses or corrupting microcode, fire, flood, accident, strikes, inability to secure transportation, failure of communications networks, or shortage of supply or failure to deliver by Apple's vendors, provided such party promptly notifies the other party and uses reasonable efforts to correct such failure or delay in its performance.

**K. Counterparts**
This Agreement may be executed in one or more counterparts (including by facsimile), each of which when so executed shall be deemed to be an original and shall have the same force and effect as an original but such counterparts together shall constitute one and the same instrument.

The duly authorized representatives of the parties execute this Agreement as of the dates set forth below.

| Service Provider | Apple Inc. |
|---|---|
| SIGNATURE: *Tom Dooley* | SIGNATURE: *Celeste Smith* |
| PRINT NAME: Tom Dooley | PRINT NAME: Celeste Smith |
| TITLE: Service Bzye / MGR | TITLE: Contracts Specialist |
| DATE: 4/21/2009 | DEPT: Sales Contracts Management |
| | EFFECTIVE DATE: 4-24-09 |

CONFIDENTIAL - ATTORNEYS EYES ONLY    Apple_AIIA_B_003514



## Certificate of Compliance

I, _Tom Dooley_, an authorized representative of _Micro Center_ ("Service Provider") hereby certify that I have authority to bind and obligate Service Provider by submitting this form. I further certify that Service Provider complies with all applicable provisions of the Apple Authorized Service Provider Agreement ("Agreement") and the policies and procedures of the Apple Authorized Service Provider Program Manual ("ASPM"), including but not limited to:

1. Record Keeping Requirements. Per section 4.3.11 of the ASPM, Service Provider maintains "all service records, including, but not limited to, service orders and service invoices signed by customers, in written form, and/or in electronic form, provided such electronic forms are a clear reproduction of the original written documents and are capable of being retrieved for Apple during a scheduled review, for a period not less than five (5) years from the date the service event was completed or reimbursement from Apple was made, whichever is later." Furthermore, per section 4.3.12, Service Provider captures and retains "service documentation as described in Exhibit F: Carry-In Repair Service, Exhibit G: Mail-in Facilitation, and Exhibit H: Onsite Repair Service;

2. Global Service Exchange ("GSX") Documentation Requirements. Per section 4.5.2, Exhibits F, G and H of the ASPM, Service Provider accurately records data within Apple's GSX system including, but not limited to:
    a. The customer drop off date as the "Unit Received Date" and not the date of diagnosis or part order; and
    b. The date the repair is complete, verified and the customer contacted for pick-up as "Marked Complete Date". Marked Complete Date is not the date when the customer picks the unit up. Marking repairs complete in GSX should be performed on a daily basis;
    c. Customer's first name, last name, company name (as applicable), physical address, email address and primary phone number. At no time should Service Provider substitute its own contact information in lieu of proper customer information, except for units owned by Service Provider or its employees.

3. Repair Area and Repair Bench Requirements. Per Section 4.3.4 of the ASPM, Service Provider maintains requirements for Repair Area and Repair Bench service, including but not limited to:
    a. Proper grounding with surge-protected power source attached to each workbench;
    b. ESD compliant mats on all workbenches;
    c. ESD compliant wrist straps worn when appropriate;
    d. Periodic inspection of ESD mats and grounding wires to ensure reliable path to ground; and
    e. ESD-safe trays/containers for screws, washers, jumpers and cables, etc.
    f. ESD prevention is critical to the reduction of service DOA parts, reduction in repair turn around time and reduction in first time fix, which ultimately increases customer satisfaction and reduces the cost to repair for Service Provider.

4. Apple Certified Technician Requirements. Per section 4.3.9 and Exhibit E of the ASPM, Service Provider employs Service Technicians that have successfully completed both a software and hardware exam at an Authorized Apple Training Center or Prometric Testing Center. Only Apple Certified Technicians can perform repairs on Apple products, both for in-warranty and out-of-warranty repairs and remain certified via Apple's online Recertification Exams.

Signed: _[signature]_
Name: _Tom Dooley_
Title: _Service Buyer/MGR_
Date: _4/22/2009_

RECEIVED
APR 23 2009
Sales Contracts Mgmt

1 Infinite Loop, Mail Store 38-2CM, Cupertino, CA 95014

CONFIDENTIAL - ATTORNEYS EYES ONLY                              Apple_AIIA_B_003515