ROBBINS GELLER RUDMAN
  & DOWD LLP
BONNY E. SWEENEY (176174)
ALEXANDRA S. BERNAY (211068)
CARMEN A. MEDICI (248417)
JENNIFER N. CARINGAL (286197)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
bonnys@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com
jcaringal@rgrdlaw.com
      – and –
PATRICK J. COUGHLIN (111070)
STEVEN M. JODLOWSKI (239074)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
patc@rgrdlaw.com
sjodlowski@rgrdlaw.com

Class Counsel for Plaintiffs

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTITRUST LITIGATION | Lead Case No. C-05-00037-YGR |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR DECERTIFICATION OF RULE 23(b)(3) CLASS |
| ALL ACTIONS. | |

DATE: November 18, 2014
TIME: 12:00 p.m.
CTRM: 1, 4th Floor
JUDGE: Hon. Yvonne Gonzalez Rogers

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL AND PROCEDURAL SUMMARY .................................................4

    A.   Procedural History .....................................................................................4

        1.   Initial Class Certification .................................................................4

        2.   Renewed Motion for Class Certification ..........................................5

        3.   Apple's Rule 23(f) Petition ...............................................................6

        4.   The Resellers' Response to the Class Notice ....................................6

    B.   K&N Enterprises, Inc..................................................................................6

III.  LEGAL ARGUMENT ...........................................................................................8

    A.   Reseller Class Members Are Adequately Represented .............................8

        1.   Consumers May Represent Resellers, as Both Are Direct
             Purchasers .......................................................................................10

        2.   Using a Common Method, Professor Noll Uses Common Proof to
             Ascertain Impact for the Entire Direct-Purchaser Class .................14

        3.   Any Purported "Benefit" Received by Certain Resellers as a Result
             of Apple's Antitrust Violations Is Irrelevant and Therefore Cannot
             Create a Conflict Among Consumers and Resellers .......................15

        4.   A Class Action Remains Superior to Hundreds of Individual
             Actions by Resellers ......................................................................17

    B.   Reseller Class Members Will Be Severely Prejudiced by Decertification
        on the Eve of Trial ....................................................................................18

    C.   K&N Is a Suitable Reseller Representative ...............................................19

        1.   Rule 23(a)(3) Typicality Is Satisfied..............................................19

        2.   Rule 23(a)(4) Adequacy Is Satisfied..............................................20

        3.   Apple's Purported Defenses Are No Bar to K&N's Appointment
             as a Class Representative ...............................................................21

            a.   Purported Waiver of Right to Jury Trial .......................................22

            b.   Purported Contractual Statute of Limitations ...............................22

            c.   Purported Mediation Requirement.................................................23

984331_1

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(b)(3) CLASS - C-05-00037-YGR                          - i -

1

2                                                                                                 **Page**

3

        4.      K&N Did Not Assign Its Antitrust Claims Against Apple........................24

4

        5.      K&N May Sue Under Delaware Law........................................................24

5

        6.      K&N's Status a Specialized Apple Reseller Does Not Prevent It

6               from Representing Multi-Product Resellers .............................................25

7   IV.    CONCLUSION...................................................................................................................25

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR                                    - ii -

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Alakozai v. Chase Inv. Servs. Corp.*,
    No. CV 11-09178 SJO JCx, 2014 WL 5660697
5
    (C.D. Cal. Oct. 6, 2014) ..................................................................................................15

6

*Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. L.P.*,
    247 F.R.D. 156 (C.D. Cal. 2007) ...................................................................................21
7

8

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) .................................................................................................22, 23

9

*Armstrong v. Davis*,
10
    275 F.3d 849 (9th Cir. 2011) ....................................................................................18, 20

11

*Birmingham Steel Corp. v. TVA*,
12
    353 F.3d 1331 (11th Cir. 2003) ......................................................................................19

13

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ....................................................................................16, 21
14

15

*Braintree Labs., Inc. v. McKesson Corp.*,
    No. 11-80233 MISC JSW (JSC), 2011 U.S. Dist. LEXIS 121499
16
    (N.D. Cal. Oct. 20, 2011) ...............................................................................................16

17

*Catholic Social Servs., Inc. v. I.N.S.*,
    232 F.3d 1139 (9th Cir. 2000) .......................................................................................22
18

19

*Comcast Corp. v. Behrend*,
    __ U.S. __, 133 S. Ct. 1426 (2013) .............................................................................3, 4

20

*Cummings v. Connell*,
    316 F.3d 886 (9th Cir. 2003) .........................................................................................21
21

22

*Darley Liquor Mart, Inc. v. Bechtel*,
    No. 81C-JL-78, 1982 Del. Super. LEXIS 781
23
    (Del. Super. Mar. 19, 1982) ...........................................................................................24

24

*De La Fuente v. Stokely-Van Camp, Inc.*,
    713 F.2d 225 (7th Cir. 1983) .........................................................................................15

25

*Deiter v. Microsoft Corp.*,
26
    436 F.3d 461 (4th Cir. 2006) .........................................................................................11

27

*Doers v. Golden Gate Bridge Highway & Transp. Dist.*,
    23 Cal. 3d 180 (1979) ....................................................................................................23
28

1

2                                                                                    **Page**

3

4    *Easterling v. Dept. of Corr.*,
        278 F.R.D. 41 (D. Conn. 2011) ...............................................................18

5    *Eggleston v. Chicago Journeymen Plumbers, etc.*,
        657 F.2d 890 (7th Cir. 1981) ...................................................................3

6

7    *Ellis v. Costco Wholesale Corp.*,
        657 F.3d 970 (9th Cir. 2011) ..................................................................20

8    *Ewert v. Ebay, Inc.*,
        No. C-07-02198 RMW, 2010 U.S. Dist. LEXIS 108838
9        (N.D. Cal. Sept. 30, 2010) .....................................................................9

10

11   *Freeman v. Celebrity Cruises, Inc.*,
        No. 93 CIV. 5270 (LMM), 1994 U.S. Dist. LEXIS 17455
12       (S.D.N.Y. Dec. 8, 1994).........................................................................22

13   *Gortat v. Capala Bros., Inc.*,
        No. 07 Civ. 3629 (ILG) (SMG), 2012 U.S. Dist. LEXIS 47066
14       (E.D.N.Y. Apr. 3, 2012)..........................................................................18

15   *Grafton Partners, LLP v. Superior Court*,
        36 Cal. 4th 944 (2005) ............................................................................22
16

17   *Hanlon v. Chrysler Corp.*,
        150 F.3d 1011 (9th Cir. 1998) ................................................................20
18

19   *Hanon v. Dataproducts Corp.*,
        976 F.2d 497 (9th Cir. 1992) ........................................................19, 20, 21

20   *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
        392 U.S. 481 (1968)..........................................................................1, 16, 17
21

22   *In re Bulk [extruded] Graphite Prods. Antitrust Litig.*,
        No. 02-6030 (WHW), 2006 U.S. Dist. LEXIS 16619
23       (D.N.J. Apr. 4, 2006) ........................................................................16, 20

24   *In re Dynamic Random Access Memory Antitrust Litig.*,
        No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841
25       (N.D. Cal. June 5, 2006) ........................................................................20

26   *In re Dynamic Random Access Memory Antitrust Litig.*,
        No. M-02-1486-PJH, 2013 U.S. Dist. LEXIS 188116
27       (N.D. Cal. Jan. 8, 2013) ...........................................................................9

28

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR

**Page**

*In re Evanston Nw. Healthcare Corp. Antitrust Litig.*,
   268 F.R.D. 56 (N.D. Ill. 2010).........................................................................9, 11

*In re Flat Glass Antitrust Litig.*,
   191 F.R.D. 472 (W.D. Pa. 1999) ...............................................................................15

*In re Graphics Processing Units Antitrust Litig.*,
   253 F.R.D. 478 (N.D. Cal. 2008)....................................................................10, 11, 13

*In re Optical Disk Drive Antitrust Litigation*,
   No. 3:10-md-2143 RS, 2014 U.S. Dist. LEXIS 142678
   (N.D. Cal. Oct. 3, 2014)........................................................................10, 11, 12, 13

*In re Relafen Antitrust Litig.*,
   360 F. Supp. 2d 166 (D. Mass. 2005) ......................................................................17

*In re Scrap Metal Antitrust Litig.*,
   2006 U.S. Dist. LEXIS 75873 (N.D. Ohio Sept. 30, 2006),
   *aff'd*, 527 F.3d 517 (6th Cir. 2008) ..........................................................................19

*In re Sulfuric Acid Antitrust Litig.*,
   847 F. Supp. 2d 1079 (N.D. Ill. 2011) .....................................................................18

*In re TFT-LCD Antitrust Litig.*,
   No. M 07-1827 SI, 2009 U.S. Dist. LEXIS 17792
   (N.D. Cal. Mar. 3, 2009).............................................................................................19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 291 (N.D. Cal. 2010)....................................................................9, 11, 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   MDL No. 1827, 2012 U.S. Dist. LEXIS 6393
   (N.D. Cal. Jan 18, 2012) ...........................................................................................22

*In re Urethane Antitrust Litig.*,
   MDL No. 1616, 2013 U.S. Dist. LEXIS 69784
   (D. Kan. May 15, 2013) .......................................................................................18, 19

*In re Vitamin C Antitrust Litig.*,
   279 F.R.D. 90 (E.D.N.Y. 2012) ................................................................................17

*In re Wellbutrin SR Direct Purchaser Litig.*,
   No. 04-5525, 2008 U.S. Dist. LEXIS 36719
   (E.D. Pa. May 2, 2008) ..............................................................................................16

984331_1

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR                          - v -

1

2                                                                                          **Page**

3
*Kornberg v. Carnival Cruise Lines, Inc.*,
4      741 F.2d 1332 (11th Cir. 1984) ...................................................................22

5  *Latman v. Costa Cruise Lines, N.V.*,
6      758 So. 2d 699 (Fla. Dist. App. 3d Dist. 2000) ..........................................22

7  *Leyva v. Medline Indus.*,
      716 F.3d 510 (9th Cir. 2013) .....................................................................20

8  *Meijer, Inc. v. Abbott Labs*,
9      251 F.R.D. 431 (N.D. Cal. 2008)..........................................................9, 16, 17

10  *Morgan v. Laborers Pension Trust Fund*,
11      81 F.R.D. 669 (N.D. Cal. 1979).................................................................19

12  *Paulsen v. CNF Inc.*,
      559 F.3d 1061 (9th Cir. 2009) ...................................................................23

13  *Rodriguez v. Hayes*,
14      591 F.3d 1105 (9th Cir. 2010) ...................................................................20

15  *Teva Pharms. USA, Inc. v. Abbott Labs.*,
16      252 F.R.D. 213 (D. Del. 2008) ...................................................................17

17  *The Apple iPod iTunes Antitrust Litig.*,
      No. C 05-00037 JW, 2011 U.S. Dist. LEXIS 134836
18       (N.D. Cal. Nov. 22, 2011)..........................................................................16

19  *The Apple iPod iTunes Antitrust Litig.*,
      No. 05-cv-00037-YGR, 2014 U.S. Dist. LEXIS 136437
20      (N.D. Cal. Sept. 26, 2014) ...........................................................................8

21  *Valley Drug Co. v. Geneva Pharm., Inc.*,
22      350 F.3d 1181 (11th Cir. 2003) .............................................................15, 16

23  *Van Ness Townhouses v. Mar Indus. Corp.*,
      862 F.2d 754 (9th Cir. 1988) .....................................................................23

24  *Woe v. Cuomo*,
25      729 F.2d 96 (2d Cir. 1984)..........................................................................18

26  *Yokoyama v. Midland Nat'l Life Ins. Co.*,
27      594 F.3d 1087 (9th Cir. 2010) ...................................................................15

28

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR                    - vi -

1

2                                                                                          **Page**

3

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §1.....................................................................................................................4, 5, 10
   §2.......................................................................................................... *passim*

Federal Rules of Civil Procedure
   Rule 17(b) ...................................................................................................24
   Rule 23 .........................................................................................3, 4, 5, 18
   Rule 23(a).......................................................................................................3
   Rule 23(a)(3) ...............................................................................................19
   Rule 23(a)(4) ...............................................................................................20
   Rule 23(b)(2).................................................................................................5
   Rule 23(b)(3)..............................................................................5, 15, 20
   Rule 23(c)(1)(C)..........................................................................................19
   Rule 23(f) ......................................................................................................6

California Business & Professions Code
   §17200............................................................................................................4

Del. Gen. Corp. Law,
   §275.............................................................................................................24
   §278.............................................................................................................24

**SECONDARY AUTHORITIES**

William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations*
   §8224 (Perm. ed. 1995 database updated Sept. 2014) ............................................24

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR                    - vii -

# I.      INTRODUCTION

After six years of litigation, dozens of briefs on the facts and the law, twelve expert reports, three hearings and a rigorous review of the record, the Court on November 22, 2011 certified a plaintiff class consisting of "[a]ll persons or entities in the United States . . . who purchased an iPod directly from Apple between September 12, 2006 and March 31, 2009." ECF 694 at 9 (the "Class"). The Class asserts Section 2 monopoly maintenance claims on behalf of all such direct purchasers, whether they happened to purchase their iPod for resale ("resellers") or for their own end use ("consumers"), under the common allegation that *all* such direct purchasers paid supra-competitive prices for the iPods purchased during the Class Period.  As the Court explained in response to Apple's contention that the consumer plaintiffs could not represent the reseller plaintiffs, "resellers are properly included in the certified class" (ECF 694 at 8) because, under the Supreme Court's decision in *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489-92 (1968), "all class members have the right to pursue overcharge damages [and] have the same incentive to do so" and "there is no conflict among class members allegedly harmed by the same antitrust violation."  ECF 694 at 8.  As shown below, a wealth of precedent confirms the soundness of the Court's ruling; courts have consistently held that consumer plaintiffs can adequately represent both consumers and resellers in a combined direct-purchaser class.

A fundamental and frankly stunning misrepresentation of the record pervades Apple's motion:  that significant numbers of the reseller members of the currently certified Class of direct iPod purchasers engaged in individual price negotiation.  Apple uses this untruth to try to (a) create a bogus "conflict" within the Class and (b) draw this case within a very, very limited exception to the otherwise unbroken line of cases approving common representation of all direct purchasers.  But the record here shows, to the contrary, that Apple's pricing to resellers was not individually negotiated, but rather formulaic and keyed off the retail sales pricing.  In the words of Apple's own expert:

> *The prices paid by purchasers (either individual customers or resellers) have a fundamental common element:  they were all set by Apple according to its pricing policy*.  In the case of individuals who purchase directly from Apple, the vast majority of the prices for the same model in the same time period were identical. *The same is true for resellers*.  During the time period in which Best Buy acquired its shipment of Nano 3rd Generation iPods, so did thousands of other resellers.  *And*

*virtually all of them, large and small, paid the same (or nearly the same) price as Best Buy*.

ECF 813-4 (Murphy Report), ¶95.

Not only that, the regression analysis of Professor Roger Noll (with which the Court is familiar as it was the subject of Apple's unsuccessful summary judgment and *Daubert* motions) is based on a data set of actual pricing that fully accounts for any discounting or other variation that may have occurred as to resellers.  And, as the Court is also aware, Professor Noll uses the same regression model analysis for both the consumer and reseller components of the Class, modified to account for the different prices paid by resellers and consumers.  The notion that there is any significant difference in the consumers' and resellers' interest in proving monopoly power, anticompetitive conduct, antitrust injury and antitrust damages for overcharges caused by Apple's issuance of KVC and DVC – let alone a difference rising to the level of a conflict sufficient to undermine adequacy – is completely baseless.

Apple's suggestion that Judge Ware's decision to appoint consumer representatives of the entire direct purchaser Class was haphazard or anything less than the requisite "rigorous analysis" is likewise sorely misguided.  Judge Ware was well aware that the claims of the named Plaintiffs were not just "reasonably coextensive with" – but actually fully aligned with – all members of the direct purchaser class, which numbered some 8 million consumers and some 967 resellers (only a handful of which might be considered "mega-resellers").  The Ninth Circuit declined to consider Apple's petition for interlocutory review of the Class Representatives' purported inability to represent both consumers and resellers in this very case.  And, following Class Notice, the resellers themselves agree:  *not a single reseller* has opted out of the Class as certified, nor sought previously to intervene or otherwise expressed any dissatisfaction with the Class representation approved by the Court.  To decertify the reseller component of the Class now would severely and unfairly prejudice all reseller members relying on the representative prosecution of their antitrust claims.

Yet Apple, as the purported champion of the interests of the reseller plaintiffs, insists that the resellers must have separate class representation to order to obtain class relief.  Any glimmer of merit to that contention will be mooted by Plaintiffs' pending motion – filed out of an abundance of

984331_1

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR

- 2 -

1    caution – to intervene K&N Enterprises, Inc. ("K&N"), as an additional representative for the Class.

2    As shown below, Apple's strained typicality and adequacy attacks on K&N are meritless, raised as

3    they are by an adverse party whose only interest is ensuring there be no reseller relief at all.

4    *Eggleston v. Chicago Journeymen Plumbers, etc.*, 657 F.2d 890, 895 (7th Cir. 1981) ("When it

5    comes, for instance, to determining whether 'the representative parties will fairly and adequately

6    protect the interests of the class,'" . . . it is a bit like permitting a fox, although with a pious

7    countenance, to take charge of the chicken house.").[1]  If anything, the case for retaining resellers in

8    the certified Class is ***only stronger*** now that Plaintiffs have offered K&N as an additional Class

9    Representative.

10          In any event, K&N readily satisfies Rule 23(a)'s typicality, adequacy and superiority

11   requirements.  Distilled to its essence, Apple's argument is that K&N is atypical not of all or even

12   most of the reseller members of the Class, but that it is atypical of the mega-resellers.  But the claims

13   of all resellers are, in every relevant respect, reasonably coextensive with one another; were it not so,

14   the mega-resellers – who are surely sufficiently sophisticated to make their own decision as to Class

15   representation – would have opted out to pursue their claims individually. Furthermore, none of

16   Apple's purported defenses to K&N's claims raise unique individual issues that could prove a

17   distraction at trial; indeed, to the contrary, even if Apple had not already waived such defenses they

18   (a) are futile and (b) at best only raise additional ***common*** issues that only reinforce commonality

19   and predominance under Rule 23.  Nor has Apple identified any genuine conflict going to "the very

20   heart of the suit," so as to undermine adequacy under Ninth Circuit law.  Finally, Apple's assertion

21   that over 900 individual reseller suits would be a superior means of litigating their claims refutes

22   itself in the stating, especially as to the non-mega-resellers like K&N who form the vast majority of

23   reseller Class members.

24          Apple meanwhile uses the dust-up over reseller representation as cover to launch an untimely

25   challenge attacking Professor Noll's inclusion of resellers in his antitrust impact and damages

26   analysis, citing *Comcast Corp. v. Behrend*, __ U.S. __, 133 S. Ct. 1426 (2013).  While defendants in

27

28   ---
     [1]    Here, and throughout, citations are omitted and emphasis is added, unless otherwise noted.

cases of every stripe promptly raised *Comcast* challenges in its wake (thereby generating a wealth of law within the Ninth Circuit cabining *Comcast* to its actual holding), Apple here made a strategic decision **not** to do so **before** the Court ruled on its motion for summary judgment – in the hopes of obtaining an order precluding relief on a class-wide basis.  Because Apple strategically delayed in raising this argument, the Court should in its discretion deny Apple's eve-of-trial *Comcast* attack as untimely.  And even if the Court were willing to entertain Apple's argument now for the first time, this case does not remotely present the fundamental "disconnect" encountered in *Comcast* between the plaintiffs' multiple theories of liability and their expert's analysis, for here Professor Noll's antitrust impact and damages analysis squarely matches Plaintiffs' theory of Section 2 liability premised on Apple's exclusion of legal music from non-Apple sources through the challenged features of Updates 7.0 and 7.4.  The Court already determined as much in denying Apple's motion for summary judgment.  ECF 788 at 17 ("the admission of [Professor] Noll's opinions alone supplies a triable issue of fact regarding the fact and amount of antitrust damages, as well as the definition of the relevant market").

In sum, while a court may when warranted alter or amend a class certification order at any time before judgment, doing so remains an exercise of **discretion**, in which both procedural and substantive considerations are pertinent.  Apple's unjustifiable delay in moving to decertify until the eve of trial alone warrants denial of its motion.  But beyond that, Apple's substantive contentions are unavailing under both Rule 23 and *Comcast*.  For each and all the foregoing reasons, as addressed in further detail below, Apple's motion  is not well-taken, and should be therefore denied in its entirety.

## II.     FACTUAL AND PROCEDURAL SUMMARY

### A.     Procedural History

#### 1.     Initial Class Certification

On July 21, 2008, Plaintiffs moved for class certification of their claims alleged under Sections 1 and 2 of the Sherman Act and under  Section 17200 of California's Unfair Competition Law ("UCL").  ECF 165.  In its opposition to Plaintiffs' motion, Apple argued, as it does now, that the named plaintiffs could not represent resellers because "[resellers] are obviously not in the same position as individual end-user purchasers" and because "the resellers' claims involve facts that are

1  immaterial to end-user plaintiffs." ECF 185 at 22-23. Apple reiterated its position at the hearing,

2  arguing that "the class shouldn't be certified for the resellers like Walmart and Target and Best

3  Buy." ECF 199 (Dec. 16, 2008 Hrg. Tr.) at 43:17-44:17. On December 22, 2008, the Court granted

4  Plaintiffs' motion, certifying classes for injunctive and declaratory relief under Rule 23(b)(2) and for

5  actual damages under Rule 23(b)(3). The classes included "[a]ll persons or entities . . . who since

6  April 28, 2003, purchased an iPod directly from Apple." ECF 196 at 13.

7        In a subsequent order, the Court – in response to Apple's suggestion that the certification

8  order somehow excluded resellers – reaffirmed that the class definition did, in fact, include resellers

9  who purchased iPods directly from Apple. It stated, "in ruling on class certification, the Court

10  considered Defendant's contentions that resellers should be excluded from the class definition. In

11  declining to address this issue in the December 22 Order, the Court implicitly included resellers in

12  the certified class." ECF 198 at 2.

13                    **2.        Renewed Motion for Class Certification**

14        On December 21, 2009, the Court *sua sponte* decertified both the Rule 23(b)(2) and (b)(3)

15  classes ***without prejudice,*** because it had dismissed Plaintiffs' Section 1 tying claim. ECF 303. In

16  January 2011, Plaintiffs renewed their motion for class certification based on their monopolization

17  and attempted monopolization claims under Section 2. ECF 532. Apple again argued in response

18  that the consumer plaintiffs could not represent resellers, devoting a substantial portion of its

19  opposition to this argument. *See* ECF 529 at 2-3, 21-25. It argued, among other things, that resellers

20  are not similarly situated to end users, that consumers are not typical of resellers, that Plaintiffs were

21  not adequate representatives for resellers, and that a class action is not a superior method of

22  adjudication under Rule 23 because it is more efficient for resellers to resolve their claims through

23  independent actions. *Id*. at 23-24. As part of its opposition, Apple also submitted multiple

24  declarations from an expert economist who opined on the issue of the inclusion of resellers in the

25  class. ECF 665 (July 23, 2011 Burtis Report) at 5; ECF 692 (Nov. 14, 2011 Burtis Report) at 1-29.

26        The Court granted Plaintiffs' motion for class certification over Apple's objection. In so

27  doing, it stated that: (i) the Court had already considered and rejected Apple's argument that the

28  Class should exclude resellers; and (ii) the consumer Plaintiffs can adequately represent all direct

1   purchasers, including resellers.  ECF 694 at 7-8.  That decision was issued on a highly developed

2   factual record, as fact discovery had closed nearly one year earlier, in December 2010.  Notice was

3   thereafter disseminated to all direct purchasers encompassed within the certified Class, including

4   resellers.  ECF 873-1 at 1.

### 3.      Apple's Rule 23(f) Petition

6          Apple filed a petition for interlocutory review of the Court's class certification order under

7   Rule 23(f).  A key piece of Apple's 23(f) petition was its reseller argument.  It urged the Ninth

8   Circuit to "resolve the propriety of individual end-user consumers representing large retailer entities

9   such as Wal-Mart and Target."  In an order dated March 13, 2012, after Plaintiffs had submitted their

10  answering brief, the Ninth Circuit declined to hear Apple's petition.  ECF 701.

### 4.      The Resellers' Response to the Class Notice

12         Accordingly, the Class Notice approved by the Court was disseminated to all members of the

13  Class, consumers and resellers alike.  ECF 873-1 at 1.  The Class Notice explained that three

14  individuals had been appointed as Class Representatives and identified Class Counsel by name, and

15  explained that any direct purchaser included within the Class definition who did not agree to the

16  proposed representative prosecution of the claims had the option to opt out.  ECF 873-2 at 52-55.

17         Notice was sent to over 8 million consumers and 967 resellers.  ECF 873-1 at 1.  Of the

18  resellers who received notice, only 9 mega-resellers purchased over a million iPod units.  Jodlowski

19  Decl., ¶4.[2]  Following Class Notice, no resellers of *any* size, including mega-resellers, requested

20  exclusion from the Class.  ECF 873-1 at 1.

### B.      K&N Enterprises, Inc.

22         K&N is a member of the certified Class, and received the Class Notice mailed to all resellers

23  included in Apple's direct purchaser records.  Declaration of Kenneth Riegel, dated November 11,

24  2014, filed concurrently ("Riegel Decl."), ¶18.  Incorporated in 1992, K&N was a retail computer

25  reseller which sold primarily Apple products.  Riegel Decl., ¶3; *see also* Jodlowski Decl., Ex. 1,

26  Riegel Dep. at 9:15-10:10.  By 2005, the company was operating two retail stores and had $2.1

27

28  [2]      *See* Declaration of Steven M. Jodlowski, filed concurrently ("Jodlowski Decl.").

984331_1

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR                      - 6 -

1    million in annual revenue.  Riegel Decl., ¶¶4-6; Jodlowski Decl., Ex. 1, Riegel Dep. at 19:18-23.

2    During the Class Period, K&N purchased directly from Apple 328 iPods for $65,792.  Jodlowski

3    Decl., ¶5.  K&N's sales, in terms of number of iPods and total dollar sales, place it in the top quarter

4    of resellers within the Class.  *Id.*

5            Like all Apple authorized resellers, K&N was bound by Apple's standardized reseller

6    agreement and pricing policies.  Riegel Decl., ¶8.  It had to abide by Apple's minimum advertised

7    price for Apple products, including iPods.  Jodlowski Decl., Ex. 1, Riegel Dep. at 56:12-19; *id*. at

8    96:3-4 ("pricing was dictated to us"); *id*. at 97:5-10 (testifying that the terms of the Apple reseller

9    agreement were "take it or leave it").  Also like all resellers, the price paid by K&N for products

10   purchased directly from Apple was based on a standardized price list created by Apple.  Jodlowski

11   Decl., Ex. 2, Riegel00087-89 at 88.  Those wholesale prices were based on the retail prices Apple

12   sets (for consumers) and a percentage discount off of that price (for resellers).  *See* ECF 567 at 28

13   (Noll Reply Decl.) ("because wholesale prices are based on retail list prices and because all

14   consumers who bought directly from Apple paid list price, the overcharges to the two categories of

15   buyers are linked by a common formula").  Apple did not offer volume discount plans to K&N or

16   any other reseller.  ECF 813-3 at 115 (Apr. 3, 2013 Noll Decl.); *see also* Riegel Decl., ¶8.

17           At deposition, K&N's owner, Mr. Riegel, testified that he decided to get personally involved

18   in the lawsuit because he felt that Apple had committed a wrong.  Jodlowski Decl., Ex. 1, Riegel

19   Dep. at 32:19-33:2.  That wrong, he explained, was that Apple made changes to its system so that

20   music that was bought from other digital music stores would not play on iPods.  Jodlowski Decl.,

21   Ex. 1, Riegel Dep. at 83:8-84:9.

22           K&N, through Mr. Riegel, has actively participated in this case since it decided to seek

23   appointment as an additional class representative.  In a highly compressed time frame, Mr. Riegel

24   gathered and produced documents requested by Apple, responded to a set of interrogatories, and sat

25   for a deposition.  Riegel Decl., ¶23.  In addition, Mr. Riegel has performed his own investigation and

26   reviewed numerous materials relating to the case.  Jodlowski Decl., Ex. 1, Riegel Dep. at 88:18-24,

27   91:25-92:3.  This includes materials relating to Apple's software updates, the history of the iPod, the

28   music industry's view of digital music rights protection, and Apple's FairPlay program.  *Id*. at 93:7-

984331_1

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR                                    - 7 -

1   24. Mr. Riegel read a portion of the expert report of Plaintiffs' expert economist, Professor Noll. *Id.*

2   at 94:16-19. He is also familiar with RealNetworks and the various iPod models (and their features)

3   sold during the class period. *Id.* at 46:25-47:18, 49:11-12. As the owner of K&N, Mr. Riegel met

4   with other Apple resellers at meetings arranged by Apple for its specialists and retailers. Jodlowski

5   Decl., Ex. 1, Riegel Dep. at 95:4-24; Riegel Decl., ¶8.

6       Mr. Riegel, who presently lives in South Lake Tahoe, is prepared to attend trial and provide

7   testimony on behalf of the Class. Riegel Decl., ¶¶21-22. He has also expressed his willingness to

8   act in the best interests of the Class and otherwise discharge his duties as class representative. *Id.*

9   **III.   LEGAL ARGUMENT**

10      **A.      Reseller Class Members Are Adequately Represented**

11      This Court was on firm legal footing when it certified a class comprised of both consumers

12  and resellers. As Plaintiffs have demonstrated to the Court, their Section 2 and UCL claims are

13  premised on allegedly anticompetitive actions taken by Apple that resulted in an overcharge in the

14  price of iPods to all direct purchasers, regardless of whether they intended to use or resell the

15  product. The focus of this case is of course on Apple's conduct: whether Apple had monopoly

16  power; whether Apple engaged in anticompetitive conduct; whether Apple's insertion of KVC and

17  DVC was a "genuine product improvement." ECF 839 at 2 (Agreed Joint Statement of the Case).

18  *Id.*

19      Not only is Apple's alleged course of conduct common to all direct purchasers, but Professor

20  Noll has opined that they were all similarly injured by that conduct. ECF 813-3 at 41-42, 113-127

21  (Apr. 3, 2013 Noll Decl.); ECF 567 at 28 ("[T]he interests of distributors, resellers and consumers

22  are fully aligned in seeking to eliminate anticompetitive overcharges by Apple."). Professor Noll's

23  opinions have been tested through a *Daubert* proceeding and found by this Court to be based on a

24  reliable method intended to isolate the pricing effects of Apple's anticompetitive conduct. *The Apple*

25  *iPod iTunes Antitrust Litig.*, No. 05-cv-00037-YGR, 2014 U.S. Dist. LEXIS 136437, at *17-*18

26  (N.D. Cal. Sept. 26, 2014).

27      Accordingly, there is nothing unique about the Class claims or about Professor Noll's

28  econometric analysis that takes this case outside the mainstream of authority recognizing that all

984331_1

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR                    - 8 -

1  direct purchasers can be represented by a direct purchaser who does not intend to resell the product.

2  *See Ewert v. Ebay, Inc.*, No. C-07-02198 RMW, 2010 U.S. Dist. LEXIS 108838, at *6, *9 (N.D.

3  Cal. Sept. 30, 2010) (certifying class of "'[a]ll eBay customers . . . who used eBay's "Online Auction

4  Format'" which included individuals and "many sophisticated business entities likely to have

5  interests and motivations different from those of the named plaintiffs"); *In re Evanston N.*

6  *Healthcare Corp. Antitrust Litig.*, 268 F.R.D. 56, 60 (N.D. Ill. 2010) (certifying class of "'[a]ll

7  persons or entities . . . who solely paid fixed amount co-pays,'" which included individuals and

8  managed care organizations); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 303-04,

9  315 (N.D. Cal. 2010) (certifying class of "'[a]ll persons and entities [who] purchased a television,

10  computer monitor, or notebook computer containing a TFT-LCD panel,'" which included

11  individuals who purchased a single panel and high-volume purchasers such as Sanyo, Apple, Dell

12  and HP); *In re Dynamic Random Access Memory Antitrust Litig.*, No. M-02-1486-PJH, 2013 U.S.

13  Dist. LEXIS 188116, at *94-*97 (N.D. Cal. Jan. 8, 2013) (where both resellers and consumers were

14  in the certified indirect class, finding "[s]ubclasses [a]re [n]ot [r]ecommended" because "all class

15  members' interests have been fully and fairly represented and treated fairly"). As the court stated in

16  *Meijer, Inc. v. Abbott Labs*, 251 F.R.D. 431 (N.D. Cal. 2008), in the case of alleged overcharges to

17  direct purchasers, "'all class members have the right to pursue overcharge damages, they have the

18  same incentive to do so, and there is no conflict among [consumer and reseller] class members

19  allegedly harmed by the same antitrust violation.'" *Id.* at 435.

20       In the face of this authority, which Apple ignores entirely, Apple contends that consumers

21  cannot represent resellers. In support of its position, Apple makes four arguments: (i) that

22  consumers and resellers have "inconsistent injury and damages," because, it says, resellers purchase

23  iPods at "negotiated" prices; (ii) that separate proof is necessary to prove impact and damages for

24  consumers and resellers; (iii) that individual consumers cannot represent Apple-only resellers, who

25  supposedly "benefitted" from Apple's anti-competitive conduct by gaining additional profit; and (iv)

26  that litigating individual reseller claims would be superior to a class action. ECF 888 at 15-23. As

27  explained below, these arguments lacked merit before and they lack merit now.

28

984331_1

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR                                    - 9 -

1

2

### 1. Consumers May Represent Resellers, as Both Are Direct Purchasers

Throughout its motion Apple relies heavily on the rulings in *In re Graphics Processing Units Antitrust Litig. ("GPU")*, 253 F.R.D. 478 (N.D. Cal. 2008) and *In re Optical Disk Drive Antitrust Litigation ("ODD")*, No. 3:10-md-2143 RS, 2014 U.S. Dist. LEXIS 142678 (N.D. Cal. Oct. 3, 2014). Neither case remotely warrants decertification here.

In *GPU*, the plaintiffs sought certification of a class of purchasers of computer graphics chips and cards in an alleged price-fixing conspiracy by two defendants. *GPU*, 253 F.R.D. at 480. Three individual consumers sought to represent a class of all direct purchasers of graphics cards and graphic chips. *Id.* at 481. In denying certification, the court found plaintiffs' claims as consumers who purchased at a fixed price were not typical because 99.5% of the class was composed of wholesalers who made multiple large purchases of the product on individually negotiated terms. *Id.* at 490-91. As a result, the proof needed to establish the individuals' claims differed from the proof required for the wholesalers' claims. *Id.* In addition, despite seeking to represent all direct purchasers of graphics chips, "[n]one [of the representative plaintiffs in *GPU*] purchased any graphics chip." *Id.* at 489.

In *ODD*, the court faced a situation in which substantial differences in separately negotiated purchase prices undermined the plaintiffs' allegation of a Section 1 price-fixing conspiracy. As in *GPU*, a critical factor in the court's typicality assessment was therefore the fact that, unlike the proposed representatives, a significant portion of the class had purchased optical disk drives at varying, negotiated prices. *ODD*, 2014 U.S. Dist. LEXIS 142678, at *45-*46 (noting that the circumstances in *GPU* were "remarkably similar"). In fact, the proposed class definition included two high-volume purchasers (Dell and HP) who were allegedly involved in the bid-rigging at issue. *Id.* at *46.

In contrast here, as to both the consumers and the resellers, the pricing on Apple's iPods was: (a) keyed off the retail price set by Apple; and (b) not negotiable. *See* ECF 529 at 22 (resellers' wholesale price is "set at varying discounts from Apple's retail prices"). Each reseller was presented with a standardized sales agreement which stated that "the price for Products purchased directly

984331_1

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR

- 10 -

1    from Apple will be the price on the applicable Authorized Apple Price List." Jodlowski Decl., Ex. 2,

2    Riegel 00087-92 at 88 (K&N reseller agreement); Jodlowski Decl., Ex. 3, Apple_SOM00007874-83

3    at 75 (RadioShack reseller agreement); Jodlowski Decl., Ex. 4, Apple_SOM00007895-901 at 96

4    (Costco reseller agreement).  As Mr. Riegel testified, as to the resellers the "pricing was dictated to

5    us" on a "take it or leave it" basis.  Jodlowski Decl., Ex. 1, Riegel Dep. at 56:12-19; *id.* at 96:3-4; *id.*

6    at 97:5-10.  In such circumstances, direct-purchaser consumers can represent classes that include

7    direct-purchaser resellers.  *See TFT-LCD*, 267 F.R.D. at 291 (rejecting defendants' contention that,

8    under *GPU*, the plaintiffs could not represent high-volume purchasers such as Sanyo, Apple, Dell

9    and HP); *Evanston*, 268 F.R.D. at 56, 61 (class included managed care organizations with different

10   co-pays than consumers).[3]

11         Until now, Apple has never contested the non-negotiable terms offered to its resellers, as

12   confirmed by its expert Dr. Murphy, quoted in the Introduction, above.  ECF 813-4 (Murphy

13   Report), ¶95.  After years of litigation and the development of a substantial factual record, not a

14   shred of evidence has been uncovered which establishes Apple's new contention that large resellers

15   "individually negotiated terms."  ECF 888 at 8.  Apple has never produced a single e-mail, internally

16   at Apple or between Apple and its resellers, which reflects any such negotiations.  And, despite

17   offering numerous opinions on resellers, Apple's experts have never been able to point to any such

18   evidence.  Jodlowski Decl., Ex. 5, Sept. 30, 2009 Burtis Dep. at 188:1-3.  To the contrary, Apple's

19   experts examined the record and opined that the pricing for consumers and resellers "has a

20   fundamental common element."  ECF 813-4 (Murphy Report), ¶95.[4]  Apple does so only now, in a

21   strained attempt to shoe-horn this case into the circumstances in *GPU* and *ODD*.

22

---

23   [3]      Likewise distinguishable is *Dieter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006), where
     the Fourth Circuit upheld a district court's denial of class certification based on the differences
24   between the class representatives' purchasing channel and those of absent class members, who
     largely purchased in bulk through individually negotiated transactions.  *See TFT-LCD*, 267 F.R.D. at
25   303-04 (distinguishing both *Dieter* and *GPU*).

26   [4]      While all resellers did not pay the same price (*see* ECF 813-3 at 305, 375-513), the varying net
     prices they paid were ***not*** the result of individual negotiations, but rather differences in Apple's list
27   prices and discounts, which variations are taken into account in Professor Noll's regression.  *See*
     ECF 813-3 at 77-79.

28

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR                          - 11 -

1    Apple's entire evidentiary showing for its assertion that large resellers negotiated wholesale

2    prices consists of two documents (neither of which is the agreement authorizing the retailers to act as

3    Apple resellers), and one deposition excerpt from an individual who testified that he was not

4    involved in the contracts with resellers.  Jodlowski Decl., Ex. 6, Donnelly Dep. at 91:22-92:4.  None

5    of this establishes that Apple negotiated wholesale prices with large resellers, much less establishes

6    that a substantial portion of class negotiated wholesale prices such that typicality is destroyed.  *ODD*,

7    2014 U.S. Dist. LEXIS 142678, at *45-*46 ("almost half" of the purchases at issue were subject to

8    negotiated prices by two wholesalers).

9    First, Apple grossly overstates the two documents on which it relies.  The first document

10   reflects Amazon's participation in Apple's "Direct Marketer Program," under which, as the title

11   suggests, Amazon could qualify for a ███████ if it sold a certain number of iPods to incentivize

12   marketing.  ECF 890-4 (Ringennberg Decl.), Ex. H.  This temporary program was created by Apple

13   and made available to its resellers (not just Amazon) during certain periods of time when Apple

14   sought to stimulate sales.  This rebate was set by Apple, not negotiated.  *Id*. at 2.  The second

15   document reflects a ███████ provided by Apple to Wal-Mart.  ECF 890-6, Ex. I.  Again,

16   nothing in the document states, or even suggests, that the rebate was negotiated.

17   Second, Apple's citation to two excerpts from the deposition testimony of Mark Donnelly

18   likewise falls far short of establishing negotiated wholesale prices between Apple and its large

19   resellers.  In the cited testimony, Mr. Donnelly testified that resellers could receive a small rebate

20   (known as "margin dollars") if they sold Apple's product at a high enough margin.  ECF 888 at 17.

21   Mr. Donnelly never testified that "the net price paid is the product of individualized negotiations."

22   In fact, Mr. Donnelly testified that it was his understanding that any discounts offered to resellers

23   were ***not*** negotiated, but rather, were "a number that Apple arrives at on its own."  Jodlowski Decl.,

24   Ex. 6, Donnelly Dep. at 43:1-15.  He further testified that the prices on wholesale purchases by

25   resellers "***would be the same***," regardless of the channel through which the product was purchased.

26   *Id*. at 35:5-24.  This, of course, is completely consistent with the terms of Apple's reseller

27   agreements and Apple's pricing policies.

28

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR                                    - 12

1       More importantly, even if Apple could establish that wholesale prices with some resellers

2   were negotiated, it would not prevent Plaintiffs from establishing price impact on a class-wide basis.

3   Professor Noll utilized Apple's individual sales records reflecting each of the millions of transactions

4   at issue when determining impact and damages to the Class.   The records supporting Professor

5   Noll's impact and damages analysis capture any variables in pricing, and reflect discounts provided

6   to resellers related to business development funds and quantity as well as any discounts for back-end

7   and front-end margin.   ECF 813-3 at 114-15 (Apr. 3, 2013 Noll Decl.) (also explaining that the

8   "procedure allows us to take into account the possibility that other discounts that are not revealed in

9   the data that Apple has produced for larger customers").   As a result, ***the regression analysis run by***

10  ***Professor Noll, which establishes impact for all Class members, accounts for any variation in the***

11  ***prices paid by resellers, including any rebates***.   This further distinguishes this action from *ODD* and

12  *GPU*, where the experts "mysteriously chose to average certain products and purchases with one

13  another and then correlate instead of correlating disaggregated data for individual products and

14  particular customers."   *GPU*, 253 F.R.D. at 493; *id*. at 496 ("'if individual customers qualify for

15  volume discounts at some times but not others, the regression [analysis] would need to take this into

16  account'").

17       This is simply not a "tail wagging the dog" situation like *GPU* or *ODD*, where a small

18  portion of the class tries to represent the large portion; here, there are some 8 million consumers in

19  the Class, compared to only 967 resellers.   *Compare* ECF 873-1, at 1 *with GPU*, 253 F.R.D. at 489-

20  90 (individual wholesalers comprised 99.5% of the class).   Professor Noll has quantified the

21  common injury as to both consumers and resellers, at approximately $195 million and $149 million

22  respectively.   ECF 813-3 at 321-24 (Nov. 25, 2013 Noll Rebuttal Decl.).   Moreover, as noted above,

23  all indications based on the reseller reaction to the notice of pendency are that resellers are satisfied

24  with their representation in this case.   As Judge Ware previously found, there is nothing here that

25  calls into question the consumer plaintiffs' ability to effectively represent the entire direct-purchaser

26  class and prosecute the action in the best interests of the Class as a whole.

27

28

1

### 2.     Using a Common Method, Professor Noll Uses Common Proof to Ascertain Impact for the Entire Direct-Purchaser Class

2

3        In its second argument, Apple contends that the claims of the reseller members of the Class

4    will require "different types and methods of proof" than the consumer class members.  ECF 888 at

5    18-20.  Apple is wrong on both counts.

6        As this Court has previously found, Plaintiffs' impact and damages model is based on the

7    overcharge all purchasers paid for iPods.  Critically, Professor Noll used the ***same methodology*** to

8    ascertain antitrust impact and quantify antitrust damages for both consumers and resellers.  ECF 813-

9    3 at 105-06 (Apr. 3, 2013 Noll Decl.) (applying a hedonic multiple-regression analysis for both

10   consumers and resellers); ECF 535 at 70 ("[i]n both cases, damages are still calculated from a

11   ***common*** formula that takes into account the magnitude of price discrimination among buyers").

12       Apple's argument that the "type" of proof needed to establish impact on resellers is different

13   than the type of proof needed to establish impact on consumers is incorrect.  To make this argument,

14   Apple ignores its previous judicial admissions that prices charged to resellers were based on the

15   retail prices Apple sets (for consumers) and a percentage discount off of that price (for resellers).

16   *See* ECF 529 at 22 (resellers' wholesale price is "set at varying discounts from Apple's retail prices);

17   ECF 567 (Noll Reply Decl.) at 28 ("because wholesale prices are based on retail list prices and

18   because all consumers who bought directly from Apple paid list price, the overcharges to the two

19   categories of buyers are linked by a common formula").  If a consumer paying a retail price was

20   overcharged, it follows that a reseller paying the wholesale price was likewise overcharged.

21       Further, with only a few exceptions, Professor Noll's regression analysis for the resellers

22   utilized the ***same*** indicator variables as the regression analysis for the consumers.  These common

23   indicator variables include the characteristics of the various iPod products sold to the Class, as well

24   as significant market and competitive events, such as the launch date of iTunes, the date on which

25   Harmony became available, the date on which Harmony was disabled, the introduction of DRM-free

26   music by Apple's competitors, and the number of songs available for download on iTunes.  ECF

27   813-3 at 108-13 (Apr. 3, 2013 Noll Report).  All of these variables will be used in both the reseller

28

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR                              - 14 -

1   and consumer regressions to establish impact and quantify damages caused by Apple's Section 2

2   antitrust violation.

3          By utilizing Apple's transactional records, Professor Noll ensured the proper "fit" for

4   *Daubert* purposes for the reseller plaintiffs.  It also ensured that Professor Noll measured impact for

5   each Class member.  *Alakozai v. Chase Inv. Servs. Corp.*, No. CV 11-09178 SJO JCx, 2014 WL

6   5660697, at *17 n.14 (C.D. Cal. Oct. 6, 2014) ("'*Comcast* does not act as a bar to class actions

7   where the plaintiffs proved a ***workable*** damages model.'") (emphasis in original).  This was

8   completely acceptable – indeed, required – and in no way defeats certification.  *De La Fuente v.*

9   *Stokely-Van Camp, Inc.*, 713 F.2d 225, 233 (7th Cir. 1983) ("It is very common for Rule 23(b)(3)

10  class actions to involve differing damage awards for different class members.").

11         To the extent Apple argues that variation in the amount of the overcharge for resellers and

12  consumers is a basis for decertification, its argument runs afoul of Ninth Circuit's admonition that:

13  "[i]n this circuit, . . . damage calculations alone cannot defeat certification.  We have said that '[t]he

14  amount of damages is invariably an individual question and does not defeat class action treatment.'"

15  *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *TFT-LCD*, 267

16  F.R.D. at 300-01 ("'the various products purchased and the different amount of damage sustained by

17  individual plaintiffs do not negate a finding of typicality, provided the cause of those injuries arises

18  from a common wrong'") (quoting *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 480 (W.D. Pa.

19  1999)).

20              **3.      Any Purported "Benefit" Received by Certain Resellers as a**
                          **Result of Apple's Antitrust Violations Is Irrelevant and**
21                        **Therefore Cannot Create a Conflict Among Consumers and**
                          **Resellers**
22

23         Although it now avoids citing to *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181

24  (11th Cir. 2003), Apple's third argument tries to resuscitate the widely rejected notion, adopted in

25  *Valley Drug*, that a conflict within the class may exist where certain class members receive a "net

26  economic benefit" from defendant's misconduct.  *Id.* at 1191-91.  As it did in previous class

27  certification briefing, Apple contends that Apple-only resellers of iPods "benefitted" from Apple's

28

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR                                          - 15 -

1   anticompetitive conduct, because such resellers purportedly sold more Apple iPods and computers.

2   ECF 888 at 20.  This, Apple reasons, creates a conflict among consumers and certain resellers.

3          First, as Apple acknowledges in its motion, at most the supposed "benefit" of additional sales

4   to certain resellers only raises "**the potential** for conflict among . . . class members." ECF 888 at 22.

5   However, a "potential" conflict is not enough to defeat adequacy.  Only a conflict that goes to the

6   "very heart" of the representation undermines adequacy. *Blackie v. Barrack*, 524 F.2d 891, 909 (9th

7   Cir. 1975); *see, e.g.*, *In re Bulk [extruded] Graphite Prods. Antitrust Litig.*, No. 02-6030 (WHW),

8   2006 U.S. Dist. LEXIS 16619, at *19-*25 (D.N.J. Apr. 4, 2006) (rejecting similar attack on

9   adequacy).

10         In any event, Apple is wrong as a matter of law that increased volume for certain resellers

11  creates a conflict, material or otherwise.  As the Court explained in previously denying this very

12  argument, it is a fundamental principle of antitrust law that, "'when a seller overcharges a

13  buyer . . . the fact that the buyer raises the price for its own product, thereby passing on the

14  overcharge to its customers and avoiding a loss in profit, has no bearing on the issue of whether the

15  buyer has suffered an injury and thus has the right to recover damages from the seller.'" *The Apple*

16  *iPod iTunes Antitrust Litig.*, No. C 05-00037 JW, 2011 U.S. Dist. LEXIS 134836, at *15

17  (N.D. Cal. Nov. 22, 2011) (quoting *Meijer*, 251 F.R.D. at 433 (citing *Hanover Shoe*, 392 U.S. at

18  489-92)).  As a result, "'all class members have the right to pursue overcharge damages, they have

19  the same incentive to do so, and there is no conflict among class members allegedly harmed by the

20  same antitrust violation.'" *Id*. at *15-*16.[5]

21         Recognizing this flaw in its argument, Apple tries to sidestep *Hanover Shoe* by asserting that

22  it is not arguing that the resellers' ability to pass on the alleged overcharge should mitigate their

---

23  [5]     Apple no doubt omits any reference to *Valley Drug* in this motion because its reasoning has been

24  so thoroughly discredited.  *See Meijer*, 251 F.R.D. at 434-35 ("*Valley Drug* conflicts with the
    Supreme Court's decisions in *Hanover Shoe* and *Illinois Brick*."); *In re Wellbutrin SR Direct*

25  *Purchaser Litig.*, No. 04-5525, 2008 U.S. Dist. LEXIS 36719, at *27-*28 (E.D. Pa. May 2, 2008)
    ("[B]ecause all class members have the right to pursue overcharge damages, they have the same

26  incentive to do so, and there is no conflict among class members allegedly harmed by the same
    antitrust violation. Accordingly, the Court declines to follow *Valley Drug* and will adhere instead to

27  the principles announced in *Hanover Shoe* and *Illinois Brick*."); *Braintree Labs., Inc. v. McKesson*
    *Corp.*, No. 11-80233 MISC JSW (JSC), 2011 U.S. Dist. LEXIS 121499, at *7 (N.D. Cal. Oct. 20,

28  2011) ("It is thus unsurprising that *Valley Drug* has not been followed in this District and others.").

1   damages.  ECF 888 at 21.  But, as many courts within this District and in others have found,

2   *Hanover Shoe* is not so limited.  Whether Apple characterizes its "benefit" argument as one of

3   "mitigation" or one of "increased volume and profits," such a collateral advantage does not create a

4   conflict of interest between consumers and resellers.  *Teva Pharms. USA, Inc. v. Abbott Labs.*, 252

5   F.R.D. 213, 226-27 (D. Del. 2008) (rejecting as "irrelevant" an adequacy challenge premised on

6   variation in resellers' size and pricing strategies) (citing *Hanover Shoe*, 392 U.S. at 489); *In re*

7   *Relafen Antitrust Litig.*, 360 F. Supp. 2d 166, 187-89 (D. Mass. 2005) (*Hanover Shoe* precludes

8   contention that class certification should be denied because allegedly overcharged direct purchasers

9   "otherwise benefitted" from the challenged misconduct); *In re Vitamin C Antitrust Litig.*, 279 F.R.D.

10  90, 103 (E.D.N.Y. 2012) ("*Hanover Shoe* . . . eradicates any possibility that a named plaintiff's

11  downstream sales could create a conflict of interest with other class members.")

**4.      A Class Action Remains Superior to Hundreds of Individual
Actions by Resellers**

13  Finally, Apple argues that because resellers could bring their own individual claims, a class

14  action is not the superior method for resolving this litigation.  ECF 888 at 22.  This argument fails

15  because most resellers in the proposed class do not have purchases large enough to justify an

16  individual claim.  As noted above, of the resellers who received notice, only 9 purchased over a

17  million iPods.  Jodlowski Decl., ¶4.  Even K&N, which is within the top quarter of all resellers in

18  selling of volume with $67,000 in direct iPod purchases, could not cost effectively pursue individual

19  litigation against Apple in a cost-intensive antitrust case like this one.

20  Even if, after class certification, any question remained as to the superiority of a class action

21  over individual actions, it was definitively answered by the resellers' response to Class Notice.  Not

22  a single reseller, large or small, chose to opt out of this case.  This includes the mega-sellers, who, as

23  sophisticated entities with considerable resources, are certainly capable of determining whether the

24  class representatives are adequately representing their interests in this litigation.  *See Meijer*, 251

25  F.R.D. at 436 ("[T]here is a much simpler and more effective way of determining class members'

26  preferences: notify them of the action and give them the opportunity to opt out of the class or to enter

27  an appearance.")  In this case, it is clear that the resellers prefer the class action procedure.

28

984331_1

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR                                      - 17 -

1    As such, the Court's earlier reasoning still holds true.  ECF 196 at 12-13 (finding that a class

2  action is the superior method to adjudicate plaintiffs' claims because it "involves potentially millions

3  of class members, each of whom may have suffered damages [of no more than several hundred

4  dollars] as a result of Defendant's standardized conduct" and because "there would be little incentive

5  for an individual iPod purchaser to take on a factually complex antitrust case such as this one").

### B.    Reseller Class Members Will Be Severely Prejudiced by Decertification on the Eve of Trial

7    The decision to alter or amend class certification of course rests squarely in the discretion of

8  the Court.  *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2011) (Rule 23 "provides district

9  courts with broad discretion to determine whether a class should be certified.").  Here, the Court

10  should not lightly exercise that discretion to decertify the reseller component of the Class.  Very few

11  resellers are mega-resellers like Best Buy or Circuit City.  Indeed, the vast majority of resellers are

12  smaller resellers like K&N, who like the mega-sellers have elected to remain in the Class and be

13  bound by its outcome.

14    Given the undeniable prejudice of a suddenly unrepresented class, courts have in their

15  discretion frequently denied decertification attempts raised on the eve of trial.  *See Easterling v.*

16  *Dept. of Corr.*, 278 F.R.D. 41, 44 (D. Conn. 2011) ("A court should be wary of revoking a

17  certification order at a late stage in the litigation process.") (citing *Woe v. Cuomo*, 729 F.2d 96, 107

18  (2d Cir. 1984)); *Gortat v. Capala Bros., Inc.*, No. 07 Civ. 3629 (ILG) (SMG), 2012 U.S. Dist.

19  LEXIS 47066, at *4 (E.D.N.Y. Apr. 3, 2012) (late stage of litigation weighs against decertification;

20  granting the eleventh-hour motion to decertify, where facts were known for well over a year, would

21  prejudice class members who have not taken independent steps to protect their rights); *In re*

22  *Urethane Antitrust Litig.*, MDL No. 1616, 2013 U.S. Dist. LEXIS 69784, at *30 (D. Kan. May 15,

23  2013) ("Reconsideration of the Court's certification order [on the eve of trial] or even post trial

24  would cause severe prejudice to plaintiffs, who prepared for a long and complex trial at great

25  expense and who might find it much more difficult to assert individual claims at this time."); *In re*

26  *Sulfuric Acid Antitrust Litig.*, 847 F. Supp. 2d 1079, 1083 (N.D. Ill. 2011) (reconsideration of four-

27  year-old certification order two months before trial after reassignment of the case to a new judge was

28

1    inappropriate where issues could have been raised at the time of the original order; rescinding order

2    would cause undue harm to plaintiffs); *In re Scrap Metal Antitrust Litig.*, 2006 U.S. Dist. LEXIS

3    75873, at *77-*78 (N.D. Ohio Sept. 30, 2006) ("request to decertify the Plaintiff Class literally on

4    the eve of trial was inappropriate and untimely"), *aff'd*, 527 F.3d 517 (6th Cir. 2008).

5          Under the circumstances, the Court should exercise its discretion to **preserve**, rather than

6    decertify, the Class, especially when: (1) there are no new factual circumstances or legal

7    developments sufficient to justify decertification; and (2) due to pre-trial exigencies Plaintiffs were

8    given only two-and-a-half days to oppose an Apple decertification motion weeks, if not months, in

9    the making.  Rule 23(c)(1)(C) allows for alteration or amendment of a certification order before final

10   judgment, but that rule does not sanction untimely motions for decertification based on issues known

11   to the movant for a long time.  *Urethane*, 2013 U.S. Dist. LEXIS 69784, at *31 n.2.

12         **C.     K&N Is a Suitable Reseller Representative**

13         Courts regularly – even routinely – appoint an additional class representative to moot any

14   even arguable contention that a class or some component of a class is not adequately represented.

15   *See, e.g.*, *In re TFT-LCD Antitrust Litig.*, No. M 07-1827 SI, 2009 U.S. Dist. LEXIS 17792, at *10

16   (N.D. Cal. Mar. 3, 2009) (permitting direct purchaser plaintiffs to add a new class representative);

17   *Morgan v. Laborers Pension Trust Fund*, 81 F.R.D. 669, 673-75 (N.D. Cal. 1979) (same);

18   *Birmingham Steel Corp. v. TVA*, 353 F.3d 1331 (11th Cir. 2003) (substitution of a class

19   representative advances the efficient administration of justice and serves the interests of the class

20   even after discovery was completed and case was ready for trial).  Plaintiffs have done so here, by

21   moving to intervene K&N.  Apple's contentions that the reseller component of the Class must be

22   decertified despite the intervention and appointment of K&N are meritless, for K&N is a typical and

23   adequate representative of those Class members.

24         **1.     Rule 23(a)(3) Typicality Is Satisfied**

25         "The purpose of the typicality requirement is to assure that the interest of the named

26   representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497,

27   508 (9th Cir. 1992).  "The typicality requirement [is] satisfied when each class member's claim

28   arises from the same course of events, and each class member makes similar legal arguments to

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR                                          - 19 -

prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (internal quotation marks omitted).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).[6]

Here, the claims of K&N are certainly "reasonably co-extensive" with the claims of the other resellers, including the mega-resellers who make up less than 2% of the reseller component of the certified Class.  K&N and the other resellers in the Class not only challenge the same actions by Apple, they claim precisely the same injury, for all resellers within the Class are encompassed within Professor Noll's analysis of antitrust impact and antitrust damages.  As noted above, Apple's attempt to manufacture differences in the calculation of damages among resellers is foreclosed by the Ninth Circuit's rule that differences in the amount of damages do not undermine typicality.  *In re Dynamic Random Access Memory Antitrust Litig.*, No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841, at *29-*35 (N.D. Cal. June 5, 2006) (typicality met even where plaintiffs purchased in different quantities or at different prices); *Graphite*, 2006 U.S. Dist. LEXIS 16619, at *16-*18; *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013) ("[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).").

## 2.     Rule 23(a)(4) Adequacy Is Satisfied

"To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks omitted).

---

[6]     The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon*, 976 F.2d at 508 (internal quotation marks omitted).  "Where the challenged conduct is a policy or practice that affects all class members . . . the cause of the injury is the same"; thus, the analysis requires "comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class."  *Davis*, 275 F.3d at 868-69.

1    Apple raises only the first question here, reiterating its phony assertion that resellers

2    "individually" negotiated wholesale prices.  Besides being untrue, it is a distinction that does not

3    amount to a true conflict going to the heart of the claims to be litigated.  *Cummings v. Connell*, 316

4    F.3d 886, 896 (9th Cir. 2003) (stating that "this circuit does not favor denial of class certification on

5    the basis of speculative conflicts"); *Blackie*, 524 F.2d at 909 (noting that class members might have

6    differing interests at later stages of litigation, but that "potential conflicts" do not present a valid

7    reason for refusing to certify a class; adding that "courts have generally declined to consider

8    conflicts, particularly as they regard damages, sufficient to defeat class action status at the outset

9    unless the conflict is apparent, imminent, and on an issue at the very heart of the suit"); *Allied*

10   *Orthopedic Appliances, Inc. v. Tyco Health Care Grp. L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007)

11   (stating that "[c]lass certification will be inappropriate if fundamental conflicts of interest are

12   determined to exist among the proposed class members"; adding that "[a] conflict is 'fundamental'

13   when it goes to the specific issues in controversy, or where . . . some plaintiffs claim to have been

14   harmed by the same conduct that benefited other members of the class, preventing the named

15   representatives from 'vigorously prosecut[ing] the interests of the class through qualified counsel'").

### 3.    Apple's Purported Defenses Are No Bar to K&N's Appointment as a Class Representative

17    Typicality can be questioned where a putative class representative is subject to ***unique***

18   ***defenses*** which threaten to become ***the focus of the litigation***.  *Hanon*, 976 F.2d at 508.  Apple

19   asserts a series of purported defenses to K&N's claims, premised on certain terms of the

20   standardized contract between Apple and its resellers for the sale of iPods.  Most of these purported

21   defenses are not, however, unique to K&N; all resellers with similar language in their reseller

22   contracts share a common interest in resisting them.  Thus, many of the purported defenses only

23   ***reinforce*** typicality and commonality.  Nor do the defenses threaten to become a distracting focus at

24   trial, because (a) Apple has waived any such defenses as to the reseller Class, and/or (b) they are

25   self-evidently meritless.

26

27

28

### a.    Purported Waiver of Right to Jury Trial

Apple for the first time invokes language purporting to waive the right to a jury trial, ECF 888 at 26-27, despite knowing that resellers were members of the certified Class for years. However, the language on which Apple relies is prefaced with a declaration that California law governs, and such provisions purporting to waive the right to a jury trial are utterly unenforceable in California. *Grafton Partners, LLP v. Superior Court*, 36 Cal. 4th 944 (2005).  In addition, Apple has plainly waived this argument as it has affirmatively acquiesced in a jury trial of the Class claims. Finally, to whatever extent this issue remains alive at all, it is undeniably a common issue that K&N shares with many other resellers in the Class.

### b.    Purported Contractual Statute of Limitations

Because K&N was within the Class definition (a) as originally alleged by Plaintiffs, (b) as originally certified by the Court, and (c) as currently certified by the Court, the limitations periods applicable to the claims to be tried have been tolled. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 561 (1974) (the commencement of a class action tolls the statute of limitations until a motion "strip[s] the suit of its class action character"); *Catholic Social Servs., Inc. v. I.N.S.*, 232 F.3d 1139 (9th Cir. 2000).

*American Pipe* tolling applies to both statutory and contractual limitations periods.  *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1336-37 (11th Cir. 1984) ("The filing of a class action . . . commences the suit for the entire class for the purpose of the statute of limitations whether or not each member of the class is cognizant of the action.  There is no essential difference between [contractual] and statutory limitations."); *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699 (Fla. Dist. App. 3d Dist. 2000) (rejecting argument that as a prerequisite to maintaining a class action each member must have submitted a written claim in accordance with limitations period outlined on ticket; the contractual provision could be satisfied or compliance excused as to the class plaintiffs); *Freeman v. Celebrity Cruises, Inc.*, No. 93 CIV. 5270 (LMM), 1994 U.S. Dist. LEXIS 17455, at *8-*11(S.D.N.Y. Dec. 8, 1994) (same).[7]

---

[7]    Plaintiffs as direct purchasers from Apple had standing to assert putative class claims on behalf of all direct sellers, including resellers, sufficient to support application of *American Pipe*.  *In re*

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR

1   Once again, to whatever extent Apple may argue *American Pipe* is inapplicable here, Apple

2   raises an issue common to all resellers, for if true not only their Class claims but their individual

3   claims would be deemed time-barred. Apple's contention thus again only reinforces typicality,

4   commonality and predominance.

5                          **c.      Purported Mediation Requirement**

6   Apple next invokes language in its reseller agreement calling for the parties to "attempt"

7   "non-binding" pre-litigation mediation efforts.  ECF 888 at 28-29.  This anemic pre-litigation

8   protocol does not preclude either party from filing suit; indeed the agreement expressly contemplates

9   litigation ("either party may commence litigation"), and the clause contemplates litigation brought in

10  this very forum ("federal or state court in Santa Clara County, California").  Jodlowski Decl., Ex. 2,

11  RIEGEL00087-92.[8]

12  Moreover, even if this were a full-blown arbitration clause, Apple has long-since waived the

13  right to invoke it by litigating this action against the entire Class of resellers for years, including

14  through the summary judgment motion by which it sought to bind all Class members.  *Doers v.*

15  *Golden Gate Bridge Highway & Transp. Dist.*, 23 Cal. 3d 180, 188 (1979) (under California law,

16  "judicial litigation of the merits of arbitrable issues . . . waives a party's right to arbitration"); *see*

17  *also Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 755 (9th Cir. 1988) (by litigating

18  arbitrable claims for two years before moving to compel arbitration, defendant waived its contractual

19  right to compel arbitration).[9]  The prejudice to Plaintiffs, including in particular the reseller members

20  of the certified Class, is self-evident.  At best, the effect of this protocol and whether Apple waived it

21  as to resellers are yet again common issues that do not undermine typicality or adequacy as to K&N.

22

23  *TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2012 U.S. Dist. LEXIS 6393, at *44-
    *45 (N.D. Cal. Jan 18, 2012) (consumer plaintiffs' assertion of antitrust claims tolled reseller's
24  claims under *American Pipe*).

25  [8]   Plaintiffs' case was originally venued in San Jose in Santa Clara County, but transferred to San
    Francisco and then the Oakland division respectively, when Judge Ware became Chief Judge, and
26  when the case was reassigned.

27  [9]   In a federal question action that involves supplemental jurisdiction over state law claims, the
    federal court applies the choice of law rules of the forum state.  *Paulsen v. CNF Inc.*, 559 F.3d 1061,
28  1080 (9th Cir. 2009).

1

### 4.   K&N Did Not Assign Its Antitrust Claims Against Apple

2   Apple argues that K&N's sale of the business operations at its remaining store in December

3   2007 somehow constituted an assignment of K&N's antitrust claims against Apple.  ECF 888 at 10-

4   12.  As further detailed in Plaintiffs' Reply Brief in Support of Motion to Add a Class Representative

5   at 8-10, this claim is belied by the facts.  In particular (although Apple chose not to examine Mr.

6   Riegel about it in his deposition), K&N specifically did not under the agreement assign any causes of

7   action to the buyer, let alone antitrust claims against Apple that were not even known to K&N at the

8   time.  Riegel Decl., ¶¶13-17.

9

### 5.   K&N May Sue Under Delaware Law

10   Although K&N is not currently operating, it has not been dissolved.  Riegel Decl., ¶17; *see*

11   *also* Del. Gen. Corp. Law §275 (setting forth the affirmative steps that must be taken to formally

12   dissolve a company). [10]  Thus, under Delaware law it has the capacity to sue.  *Darley Liquor Mart,*

13   *Inc. v. Bechtel*, No. 81C-JL-78, 1982 Del. Super. LEXIS 781 (Del. Super. Mar. 19, 1982).

14   Moreover, even a dissolved company has the capacity to sue under Delaware law.  Del. Gen. Corp.

15   Law §278.  A company may sue for a term of three years from the date of dissolution, and that

16   capacity is extended so long as the action is begun prior to or within three years after the date of

17   dissolution.  *Id.*  Since K&N is not formally dissolved, the three-year limitations period has not even

18   begun to run.  And even if K&N were somehow deemed dissolved, its cause of action would revert

19   to Mr. Riegel himself as K&N's sole shareholder at such time as it ceased to exist.  16A, William

20   Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* §8224, at 460 (Perm. ed. 1995

21   database updated Sept. 2014) ("[a]fter dissolution, the property of the corporation passes to the

22   shareholders").  *See also* Plaintiffs' Reply Brief in Support of Motion to Add a Class Representative

23   at 7-8.

24

25

26

---

27   [10]   The "[c]apacity to sue or be sued is determined . . . for a corporation, by the law under which it
28   was organized."  Fed. R. Civ. P. 17(b).

1

### 6.   K&N's Status a Specialized Apple Reseller Does Not Prevent It from Representing Multi-Product Resellers

2

Apple's final argument – that "there is a fundamental conflict of interest between exclusive Apple resellers like Delaware Computer and multiproduct retailers" – is nothing more than a re-hash of its earlier argument that Apple-only resellers "benefitted" from higher sales volume due to Apple's anticompetitive conduct.  As explained above (*see supra* §III.A.3.), the Supreme Court has already disposed of this economic fiction, and therefore Apple cannot rely on it to defeat certification.

Moreover, Apple's argument is based on an incorrect factual assertion.  ECF 888 at 29-30. Contrary to its suggestion, Mr. Riegel never testified that K&N was an "Apple-only" reseller.  At his deposition, Mr. Riegel testified that, while K&N "specialized" in Apple products, K&N also sold other products, such as IBM- and Windows-compatible products.  Jodlowski Decl., Ex. 1, Riegel Dep. at 10:4-21.  Apple inexplicably omits this portion of Mr. Riegel's testimony, which preceded its selective citation.

## IV.   CONCLUSION

For the reasons stated above, Apple's motion for decertification should be denied in its entirety.

DATED:  November 14, 2014

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
BONNY E. SWEENEY
ALEXANDRA S. BERNAY
CARMEN A. MEDICI
JENNIFER N. CARINGAL

s/ Bonny E. Sweeney
BONNY E. SWEENEY

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

984331_1

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR                    - 25 -

1
2 ROBBINS GELLER RUDMAN
  & DOWD LLP
3 PATRICK J. COUGHLIN
 STEVEN M. JODLOWSKI
4 Post Montgomery Center
 One Montgomery Street, Suite 1800
5 San Francisco, CA  94104
 Telephone:  415/288-4545
 415/288-4534 (fax)
6
 Class Counsel for Plaintiffs
7
8 BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
9 ANDREW S. FRIEDMAN
 FRANCIS J. BALINT, JR.
10 ELAINE A. RYAN
 2325 E. Camelback Road, Suite 300
11 Phoenix, AZ  85016
 Telephone:  602/274-1100
 602/274-1199 (fax)
12
13 THE KATRIEL LAW FIRM
 ROY A. KATRIEL
14 1101 30th Street, N.W., Suite 500
 Washington, DC  20007
15 Telephone:  202/625-4342
 202/330-5593 (fax)
16
 BRAUN LAW GROUP, P.C.
17 MICHAEL D. BRAUN
 10680 West Pico Blvd., Suite 280
18 Los Angeles, CA  90064
 Telephone:  310/836-6000
19 310/836-6010 (fax)
20 GLANCY BINKOW & GOLDBERG LLP
 BRIAN P. MURRAY
21 122 East 42nd Street, Suite 2920
 New York, NY  10168
22 Telephone:  212/382-2221
 212/382-3944 (fax)
23
 GLANCY BINKOW & GOLDBERG LLP
24 MICHAEL GOLDBERG
 1925 Century Park East, Suite 2100
25 Los Angeles, CA  90067
 Telephone:  310/201-9150
26 310/201-9160 (fax)

27 Additional Counsel for Plaintiffs
28

984331_1

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPLE'S MOTION FOR
DECERTIFICATION OF RULE 23(B)(3) CLASS - C-05-00037-YGR   - 26 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 14, 2014.

s/ Bonny E. Sweeney
BONNY E. SWEENEY

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:        bonnys@rgrdlaw.com

## Mailing Information for a Case 4:05-cv-00037-YGR The Apple iPod iTunes Anti-Trust Litigation

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amir Q Amiri**
  aamiri@jonesday.com,ttualaulelei@jonesday.com

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com,LMix@rgrdlaw.com,TJohnson@rgrdlaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Jennifer N. Caringal**
  JCaringal@rgrdlaw.com

- **Todd David Carpenter**
  Todd@Carpenterlawyers.com

- **Patrick J. Coughlin**
  PatC@rgrdlaw.com,SusanM@rgrdlaw.com,e_file_sd@rgrdlaw.com,SJodlowski@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **John F. Cove , Jr**
  jcove@bsfllp.com,jchavez@bsfllp.com,kmurphy@bsfllp.com,dnasca@bsfllp.com,sphan@bsfllp.com

- **Meredith Richardson Dearborn**
  mdearborn@bsfllp.com,cseki@bsfllp.com

- **Karen Leah Dunn**
  kdunn@bsfllp.com

- **Andrew S. Friedman**
  khonecker@bffb.com,rcreech@bffb.com,afriedman@bffb.com

- **Martha Lea Goodman**
  mgoodman@bsfllp.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com,winkyc@zhlaw.com

- **William A. Isaacson**
  wisaacson@bsfllp.com,jmilici@bsfllp.com

- **Steven M. Jodlowski**
  sjodlowski@rgrdlaw.com

- **Roy Arie Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com

- **Carmen Anthony Medici**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,mlandsborough@jonesday.com,pwalter@jonesday.com

- **Brian P. Murray**
  bmurray@glancylaw.com

- **Maxwell Vaughn Pritt**
  mpritt@bsfllp.com,jchavez@bsfllp.com,irivera@bsfllp.com

- **Christopher G. Renner**
  crenner@bsfllp.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Kieran Paul Ringgenberg**
  kringgenberg@bsfllp.com,gaulkh@bsfllp.com,ftang@BSFLLP.com,dnasca@bsfllp.com,sphan@bsfllp.com,irivera@BSFLLP.com

- **Elaine A. Ryan**
  eryan@bffb.com,nserden@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Michael Tedder Scott**
  mike.scott@dlapiper.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **Bonny E. Sweeney**
  bonnys@rgrdlaw.com,slandry@rgrdlaw.com,E_file_sd@rgrdlaw.com,ckopko@rgrdlaw.com

- **Helen I. Zeldes**
  helenz@zhlaw.com,winkyc@zhlaw.com,aarono@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)