William A. Isaacson (wisaacson@bsfllp.com)
(Admitted *Pro Hac Vice*)
Karen L. Dunn (kdunn@bsfllp.com)
(Admitted *Pro Hac Vice*)
Martha L. Goodman (mgoodman@bsfllp.com)
(Admitted *Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone:  (202) 237-2727
Facsimile:  (202) 237-6131

John F. Cove, Jr. #212213
(jcove@bsfllp.com)
Kieran P. Ringgenberg #208600
(kringgenberg@bsfllp.com)
Meredith R. Dearborn #268312
(mdearborn@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone:  (510) 874-1000
Facsimile:  (510) 874-1460

David C. Kiernan #215335
(dkiernan@jonesday.com)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:  (415) 626-3939
Facsimile:  (415) 875-5700

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION<br><br>_____<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No.  C 05-00037 YGR<br>[CLASS ACTION]<br><br>**APPLE'S REPLY IN SUPPORT OF MOTION FOR DECERTIFICATION OF RULE 23(b)(3) CLASS**<br><br>Date:    November 18, 2014<br>Time:    12:00 p.m.<br>Place:   Courtroom 1, 4th Floor<br>Judge:   Honorable Yvonne Gonzalez Rogers |

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

**TABLE OF CONTENTS**

I.   RESELLERS HAVE NOT BEEN AND ARE NOT ADEQUATELY
     REPRESENTED. ................................................................................................ 2

     A.   Plaintiffs' Expert Used Different Data and Methodologies to Measure
          Damages for Consumers and Resellers. ............................................................. 2

     B.   Under Plaintiffs' Theory of Liability, Resellers Would Stand to Benefit
          from the Alleged Conduct through Increased Sales Volume. ............................. 4

     C.   Differences in Pricing Schemes Available to Consumers and Resellers
          Preclude Certification. ....................................................................................... 6

     D.   The Absence of Opt-Outs Does Not Show Adequate Representation. ................ 8

II.  K & N CANNOT ADEQUATELY REPRESENT ALL RESELLERS. ......................... 8

     A.   As a Small Reseller, K & N Cannot Adequately Represent All Resellers. .......... 8

     B.   K & N Cannot Serve as a Class Representative or, At the Very Least,
          Individualized Questions Relating to K & N Render It an Atypical and
          Inadequate Representative. ................................................................................. 9

          1.   Neither "Delaware Computer Exchange" Nor Kenneth Riegel Can
               Represent Resellers. ................................................................................. 9

          2.   K & N Is Void and Lacks Capacity to Sue. ............................................. 10

          3.   The Plain Terms of the Asset Sale Agreement Show That K & N
               Sold All Its Assets Including Any Antitrust Claim. ................................ 12

          4.   K & N Agreed to Mediate Before Any Suit. ............................................ 13

          5.   K & N Agreed to a Shortened Statute of Limitation. ............................... 14

          6.   K & N Waived Jury Trial Rights. ............................................................. 14

III. PLAINTIFFS' PREJUDICE ARGUMENT IS MERITLESS ........................................ 15

IV.  CONCLUSION. ............................................................................................................ 15

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

APPLE'S REPLY IN SUPPORT OF MOT. FOR PARTIAL DECERT.      No.  C 05-00037 YGR

# **TABLE OF AUTHORITIES**

## **CASES**

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*,
   247 F.R.D. 156 (C.D. Cal. 2007) ................................................................6

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .............................................................................2, 4

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   No. C 10–4387 PJH, 2014 WL 60097 (N.D.Cal. Jan. 7, 2014) .............................3

*Banas v. Volcano Corp.*,
   --- F. Supp. 2d ----, 2014 WL 1309720 (N.D. Cal. Mar. 31, 2014) ......................13

*Burke v. Ford*,
   389 U.S. 320 (1967) ....................................................................................5

*Citadel Holding Corp. v. Roven*,
   603 A.2d 818 (Del.1992) ............................................................................13

*City of Spokane, Wash. v. Fed. Nat. Mortgage Ass'n*,
   No. CV-13-0020-LRS, 2013 WL 3288413 (E.D. Wash. June 28, 2013) ..............13

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ................................................................................3

*Confed Admin. Servs., Inc. v. United Health Care Org., Inc.*,
   No. 95 Civ. 4985 (SAS), 1995 WL 608254 (S.D.N.Y. Oct. 17, 1995) ...............11

*Deiter v. Microsoft Corp.*,
   436 F.3d 461 (4th Cir. 2006) .......................................................................7

*Dubin v. Miller*,
   132 F.R.D. 269 (D. Colo. 1990) ..................................................................15

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*,
   702 A.2d 1228 (Del. 1997) .........................................................................13

*Easterling v. Connecticut Dep't of Correction*,
   278 F.R.D. 41 (D. Conn. 2011) ...................................................................15

*Eubank v. Pella Corp.*,
   753 F.3d 718 (7th Cir. 2014) ........................................................................8

*Ewert v. eBay, Inc.*,
   No. C-07-02198 RMW, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010)................4

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ....................................................................................2

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
   392 U.S. 481 (1968) ....................................................................................5

*In re Dynamic Access Memory Antitrust Litig.*,
   No. M-02-1486-PJH, 2013 U.S. Dist. LEXIS 188116 ......................................4

*In re Graphics Processing Units Antitrust Litig*,
   253 F.R.D. 478 (N.D. Cal. 2008) ............................................................4, 6, 9

*In re Optical Disk Drive Antitrust Litig.*,
   No. 3:10-md-2143 RS, 2014 WL 4965655 (N.D. Cal. Oct. 3, 2014) ...................7

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   725 F.3d 244 (D.C. Cir. 2013) .................................................................................3

*In re Relafen Antitrust Litig.*,
   360 F.Supp.2d 166 (D. Mass. 2006) ..........................................................................6

*In re Scarff*,
   No. 03-54723 ASW, 2010 WL 4052917 (Bankr. N.D. Cal. Oct. 14, 2010) ..............13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 291 (N.D. Cal. 2010) .........................................................................4, 14

*In re Urethane Antitrust Litig.*,
   No. 04-1616-JWL, 2013 WL 2097346 (D. Kan. May 15, 2013).............................15

*In re Vitamin C Antitrust Litig*,
   279 F.R.D. 90 (E.D.N.Y. 2012) ................................................................................6

*Kottaras v. Whole Foods Market, Inc.*,
   281 F.R.D. 16 (D.D.C . 2012).....................................................................................6

*L.A. Memorial Coliseum Comm'n v. NFL*,
   791 F.2d 1356 (9th Cir. 1986)....................................................................................6

*Marlo v. United Parcel Serv., Inc.*,
   251 F.R.D. 476 (C.D. Cal. 2008) .............................................................................16

*Marlo v. United Parcel Serv., Inc.*,
   639 F.3d 942 (9th Cir. 2011)....................................................................................16

*Meijer, Inc. v. Abbott Labs*,
   251 F.RD. 431 (N.D. Cal. 2008).......................................................................4, 5, 7

*Metropolitan Interconnect, Inc. v. Alexander & Hamilton, Inc.*,
   No. Civ. A 04-2896, 2005 WL 1431670 (E.D. La. May 26, 2005) ........................11

*Mobius Connections Grp., Inc. v. TechSkills, LLC*,
   No. 2:10-CV-01678-GMN, 2012 WL 194434 (D. Nev. Jan. 23, 2012) ...............12

*Nebco & Associates v. United States*,
   23 Cl. Ct. 635 (1991) ...............................................................................................13

*Nelson v. Adams USA, Inc.*,
   529 US 460 (2000).....................................................................................................14

*Siegel v. Chicken Delight, Inc.*,
   448 F.2d 43 (9th Cir. 1971).........................................................................................6

*Teva Pharms. USA, Inc. v. Abbot Labs*,
   252 F.R.D. 213 (D. Del. 2008)....................................................................................6

*Transpolymer Indus., Inc. v. Chapel Main Corp.*,
   582 A.2d 936 (Del. 1990) .........................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ...............................................................................................4

*Wax v. Riverview Cem. Co.*,
   24 A.2d 431 (Del. Super. Ct. 1942) .........................................................................11

**STATUTES**

Delaware Code § 510 ....................................................................................................11

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

Delaware Code Annotated, Title 8, Section 278.................................................................11, 12

Delaware Code Annotated, Title 8, Section 510.......................................................................11

## OTHER AUTHORITIES

1 McLaughlin on Class Actions § 4:18 (10th ed.) ...................................................................10

15A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations*
§7388 (Perm. ed. 1995 database updated Sept. 2014) ............................................................13

## RULES

Rule 23 ....................................................................................................................2, 3, 8, 15

Plaintiffs do not dispute that, with only consumer representatives at the helm, their expert chose to run separate regressions, based on different data, to calculate damages for consumers and retailers, and that the expert's estimate of damages places the overcharge to consumers (7.45%) at nearly three times that of retailers (2.38%). Nor do they seriously dispute that the named representatives, both consumers, had no incentive to maximize reseller damages, nor that consumers and resellers are in strategic conflict over an award of damages between them. Instead, Plaintiffs try, but fail, to rebut the obvious fact that major retailers like Wal-Mart and Amazon negotiated for and obtained different terms than consumers and smaller retailers. Resting on the novel premise that Wal-Mart's unique (and valuable) financial terms with Apple were not "negotiated," Opp. at 12, the rest of Plaintiffs' arguments fall like a house of cards.

Nor do Plaintiffs deny that under their theory of liability, Apple's conduct "shifted the demand curve" for iPods, thereby increasing the *volume* of iPod sales and profiting at least some resellers. Instead, Plaintiffs claim that the benefits to resellers of such sales should be set aside, citing irrelevant law about the pass-on defense and ignoring binding circuit law requiring that damages take account of the *net* impact on plaintiffs.

The same conflicts persist within the reseller class, rendering a small, specialized Apple reseller like K & N Enterprises, Inc. ("K & N") wholly inadequate to represent the interests of those major resellers who account for the great majority of reseller iPod purchases. This is particularly true because K & N is, by Plaintiffs' own admission, a void corporation that is legally incapable of filing suit. K & N is also subject to several other individual defenses that leave it with no claim and individual issues to litigate that leave it inadequate to represent other resellers.

The best Plaintiffs can say is that no resellers have opted out of the class. But the class notice, as Plaintiffs have argued, Dkt. 873 at ECF pp.15-17, did not disclose to resellers that there was no reseller named plaintiff to look out for their interests, nor that the consumer plaintiffs would claim an overcharge for themselves almost triple the alleged overcharge to resellers. Nor is there any prejudice to resellers from reseller decertification at this stage. Consumer plaintiffs will try their case and, to the extent any reseller believes it has a claim, it can pursue it.

APPLE'S REPLY IN SUPPORT OF MOT. FOR PARTIAL DECERT.        No. C 05-00037 YGR

I.      **RESELLERS HAVE NOT BEEN AND ARE NOT ADEQUATELY REPRESENTED.**

To satisfy Rule 23's typicality, predominance and adequacy requirements, "a class representative must . . . possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (quotation marks omitted). Plaintiffs do not directly contest that where the incentives of different putative class members do not align with regard to damages, Rule 23 is not satisfied and certification is improper.  Mot. at 9-12, 15-16 (collecting cases).  Here, the conflict between individual consumers and resellers leaves no one able to represent both groups fairly.

A.      **Plaintiffs' Expert Used Different Data and Methodologies to Measure Damages for Consumers and Resellers.**

Apple showed in its motion that Plaintiffs' expert Dr. Noll constructed his econometric analysis to treat consumers and resellers as distinct groups, and that the named plaintiffs, both consumers, had no interest in maximizing resellers' damages, and rather had strategic reasons to minimize them.  Mot. at 9-16.  The results speak for themselves:  Dr. Noll estimated that the group with representation in this action (consumers) suffered a 7.45% overcharge, more than three times his calculation of the overcharge for the group without representation (resellers), whose alleged overcharge he said was 2.38%.  Mot. at 10-11.  The conflict between the groups precludes certification of a single, uniform class, even where all class members share a generalized interest in recovering damages from the defendant.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626-28 (1997) (class certification improper where the incentives "within the single class [were] not aligned" with regard to damages because some putative class members wanted "generous immediate payments" and others wanted a "fund for the future").

Plaintiffs do not dispute that Dr. Noll's damages calculations rely on two separate regressions for consumers and resellers, nor that the regressions end up with widely different results.  Instead, they argue that he "used the same methodology" and "the same indicator variables."  Opp. at 14.  But Plaintiffs concede, as they must, "exceptions" to this claim of uniformity, which they do not explain and instead sweep under the rug.  *Id.*  In fact, the two

APPLE'S REPLY IN SUPPORT OF MOT. FOR PARTIAL DECERT.        No.  C 05-00037 YGR

regressions included different variables and were run on completely separate data sets.  Mot. at 13; Noll Rebuttal Report (Nov. 25, 2013), Dkt. 809-5 at ECF pp.300-03.  Moreover, if the world were as simple as Plaintiffs make it out to be, Dr. Noll would not have had to use two damages models.  As Dr. Noll explained:

> Let's take the simplest possible case, which I doubt that it's true, but let's assume that it's true.  Assume that the wholesale market looks exactly like the retail market, that there's a posted price for each model of iPod that's 30 or 40 percent below the retail price and everybody can buy as much as they want at that posted price.  In that case, the—a product-specific dummy variable whether the buyer was a wholesaler would be sufficient, right. . . . But I suspect there are quantity discounts and advance purchase discounts and, you know, special promotional discounts if you spend some money on advertising we'll pay some of it.  So there's likely to be more complexity in the price formation in the wholesale market than in the retail market in which case there will probably have to be two equations.

Ringgenberg Decl., Ex. S (Noll Dep.), at 239:9-240:18 (Sept. 19, 2008).  This complexity in the reseller market shows the conflict between consumers and resellers (and among resellers).[1]

The cases cited by Plaintiffs, Opp. at 15, for the proposition that "damage calculations alone cannot defeat certification" predate, and are rendered dead letter, by *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).  *See, e.g., In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013) (*Comcast* "sharpens the defendants' critique of the damages model as prone to false positives.  It is now indisputably the role of the district court to scrutinize the evidence before granting certification"); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10–4387 PJH, 2014 WL 60097, *12 (N.D. Cal. Jan. 7, 2014) ("under *Comcast*, a court can certify a Rule 23(b)(3) class only if there is evidence demonstrating the existence of a classwide method of awarding relief that is consistent with the plaintiffs' theory of liability").

More fundamentally, Plaintiffs mischaracterize Apple's argument as simply focused on "variation in the amount of overcharge for resellers and consumers."  Opp. at 15.  Some variation

---

[1] Plaintiffs have failed to address why, given that uniformity in pricing, Dr. Noll's damages results in overcharges for consumers three times as high as for resellers despite the fact that Dr. Noll has testified, "If you assume that the wholesale price is always x percent of the retail price, then something that causes the retail price to go up will cause exactly the same percentage increase in the wholesale price."  Ringgenberg Decl., Ex. T (Noll Dep.), at 131:21-24 (May 16, 2013).

APPLE'S REPLY IN SUPPORT OF MOT. FOR PARTIAL DECERT.          No.  C 05-00037 YGR

1   in the amount of damages available to different members of a class is permissible, so long as

2   damages remain "capable of classwide resolution . . . in one stroke." *Wal-Mart Stores, Inc. v.*

3   *Dukes*, 131 S. Ct. 2541, 2551 (2011).  Dr. Noll employed separate regressions, with different

4   underlying data, and arrived at damages calculations that diverge by a factor of three for the same

5   products.  This is not mere "variation"; it is a recipe for conflict because certification of a single

6   class that is represented by only one sector of a conflicted class tramples on the rights of absent

7   class members.  *Amchem Prods.,* 521 U.S. at 626-28; *In re Graphics Processing Units Antitrust*

8   *Litig*, 253 F.R.D. 478, 490 (N.D. Cal. 2008) ("*GPU*") (discussing conflicting incentives).

9          None of the cases cited by Plaintiffs certified a class in which consumers represented

10  resellers without a reseller representative, much less where consumers represented resellers and

11  allocated them lower damages*. See* Opp. at 9 (citing *Ewert v. eBay, Inc.,* No. C-07-02198 RMW,

12  2010 WL 4269259 (N.D. Cal. Oct. 25, 2010)) (resellers represented by named reseller

13  representative; same damages methodology used for all class members); *In re TFT-LCD (Flat*

14  *Panel) Antitrust Litig.*, 267 F.R.D. 291, 301 (N.D. Cal. 2010) (resellers represented by named

15  reseller representatives in each class; single damages model used for each separately represented

16  class); *In re Dynamic Access Memory Antitrust Litig.*, No. M-02-1486-PJH, 2013 U.S. Dist.

17  LEXIS 188116, at *96-97, *322 (N.D. Cal. Jan. 8, 2013) (approving a class settlement where

18  named representatives included both resellers and consumers).  And the named class

19  representative in *Meijer, Inc. v. Abbott Labs*, 251 F.R.D. 431 (N.D. Cal. 2008) ("*Meijer*"),

20  frequently cited by Plaintiffs, was a large reseller supermarket/pharmacy chain with considerable

21  experience in antitrust litigation.

22        **B.      Under Plaintiffs' Theory of Liability, Resellers Would Stand to Benefit from
                  the Alleged Conduct through Increased Sales Volume.**

23

24         If Plaintiffs' theory is correct, the divide between consumers and resellers is even greater

25  than that estimated by Dr. Noll because many, if not most, resellers benefited from increased

26  demand for iPods.  Plaintiffs allege that Apple's iTunes 7.0 software update was designed to

27  preserve incompatibility with certain third-party software, which "shifted the demand curve"

28

APPLE'S REPLY IN SUPPORT OF MOT. FOR PARTIAL DECERT.          No.  C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

toward iPods and away from competing players.  Dkt. 891-12 at ECF p.4.  In other words, an essential aspect of Plaintiffs' theory of liability is that Apple's actions led to more sales of iPods.

The conflict between resellers and consumers under Plaintiffs' theory of liability could not be more apparent:  Resellers resell iPods and make a profit on each sale.  Any increase in sales volume benefits resellers.  Consumers, by contrast, are harmed by the higher prices that Plaintiffs allege resulted from the shift in demand.  This theory aligns resellers with *Apple*, and against consumers.  Dkt. 891-5 at ECF p.6 ("Since we were a hundred percent dedicated to Apple, we suffered at times when Apple suffered, and then we benefited when Apple benefited").

Plaintiffs' response to this misses the point.  Relying on a case that Apple did not cite—the Eleventh Circuit's *Valley Drug* decision—Plaintiffs again resort to rebutting an argument that Apple did not make, arguing the truism that "pass-on" does not mitigate damages for an antitrust defendant.  Opp. at 15-16.  As Apple made clear in its Motion (at p.14), Apple is ***not*** claiming that the alleged overcharge benefitted resellers or that Apple could use a pass-on defense.  Rather, under Plaintiffs' theory, the conduct at issue "is alleged to have increased the *output* or *volume* of sales of the subject product and related products," which was a benefit to resellers[2] that must be considered.  Mot. at 14-16.  Plaintiffs' brief attacks a straw man.

The cases cited by Plaintiffs demonstrate the error.  In *Meijer,* the defendants argued that the alleged overcharge increased profit margins because (1) some sales were priced on a "set percentage mark-up" and (2) it increased the interest ("float") resellers earned on accounts receivable.  251 F.R.D. at 433.  Judge Wilken rejected those arguments, explaining that, under *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968), "the effect of an overcharge on a buyer's profits is not an appropriate topic of inquiry."  *Id.*[3]  Here, Apple is not

---

[2] This case presents a far different issue than the alleged overcharge in typical price fixing or restricted output cases in which an inflated sales price would reduce output for all or most resellers.  *See Burke v. Ford*, 389 U.S. 320, 322 (1967) ("When competition is reduced, prices increase and unit sales decrease").  It is Plaintiffs' theory that Apple's alleged conduct *increased* sales of its iPods (which is normally considered *competitive*) that gives rise to the conflict between resellers and consumers.

[3] Plaintiffs other cases are similar.  *See Teva Pharms. USA, Inc. v. Abbot Labs*, 252 F.R.D. 213, 226-67 (D. Del. 2008) ("defendants contend that the 'Big Three' may have ***benefitted from***

APPLE'S REPLY IN SUPPORT OF MOT. FOR PARTIAL DECERT.          No.  C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

arguing that any extra profit associated with an alleged *overcharge* should be considered, but rather that the alleged shift in demand to iPods had positive effects on resellers' business *other than* the alleged impact on price, namely that, under Plaintiffs' theory, the alleged conduct led resellers to sell more iPods and related products, earning them a greater profit.  Governing Ninth Circuit law "requires a deduction for benefits that would not have accrued to plaintiff in the absence of the [alleged] violation." *L.A. Memorial Coliseum Comm'n v. NFL*, 791 F.2d 1356, 1367 (9th Cir. 1986); *see also Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 52-53 (9th Cir. 1971).  That principle has been repeatedly applied to offset damages from alleged overcharges, when the conduct offers benefits to the plaintiff other than those arising from the overcharge itself.  *E.g., Kottaras v. Whole Foods Market, Inc.*, 281 F.R.D. 16, 25 (D.D.C . 2012) (overcharges on some products must be offset by price decreases on others) (citing *L.A. Mem'l*).  Consumer named plaintiffs that are not subject to the same damages offset and do not have the same incentives to increase Apple sales cannot be typical or adequate class representatives of resellers who are.  *See Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.,* 247 F.R.D. 156, 177 (C.D. Cal. 2007) ("no circuit approves of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class").

### C.   Differences in Pricing Schemes Available to Consumers and Resellers Preclude Certification.

As two Courts in this District have held in analogous circumstances, where one set of class members purchase on non-negotiable terms and another set purchase "on individually negotiated terms," such disparities in contracting arrangements within a putative class "preclude certification." *GPU*, 253 F.R.D. at 483, 489-90; *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143 RS, 2014 WL 4965655, *5 (N.D. Cal. Oct. 3, 2014) ("*ODD*").  Class members

---

*an overcharge* whereas the named plaintiffs did not")  (emphasis added); *see also In re Vitamin C Antitrust Litig,* 279 F.R.D. 90, 103 (E.D.N.Y. 2012) (rejecting argument wholesaler wanted high prices in order to increase profit margins on "downstream sales").  The other case cited by Plaintiffs, *In re Relafen Antitrust Litigation*, 360 F. Supp. 2d 166 (D. Mass. 2006), concerns standing, not damages, and to the extent it suggests that benefits to plaintiffs from the alleged misconduct must be ignored in calculating damages, it is contrary to binding law in this circuit.

APPLE'S REPLY IN SUPPORT OF MOT. FOR PARTIAL DECERT.          No.  C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

"who had no negotiating power at all" cannot adequately represent wholesale purchasers "who came to the negotiating table in a fundamentally different position." *GPU*, 253 F.R.D. at 489-90. Such representatives "simply do not have the appropriate incentive to establish antitrust violations with respect to all of the absent class members." *Id.* at 490; *accord ODD*, 2014 WL 4965655, at *5; *see also Deiter v. Microsoft Corp.*, 436 F.3d 461, 468 (4th Cir. 2006).

Plaintiffs do not deny that large, national and regional retailers account for the great majority of iPod purchases made by resellers during the class period. Plaintiffs suggest that K & N was in the "top quarter of all resellers" with a volume of "$67,000" in iPod purchases over the class period, Opp. at 17, but that figure pales in comparison to the top 10 resellers, who ***each*** purchased more than 1 million ***units*** of iPods in the period. Dkt. 891-18.

Nor do Plaintiffs deny that these large retailers purchased in accordance with contract terms that differed among the resellers. Instead, Plaintiffs implausibly suggest that these individualized terms must have originated solely from Apple on a take-it-or-leave-it basis, rather than negotiation between Apple and each reseller. This claim that there is not a "shred of evidence . . . that large resellers 'individually negotiated terms,'" Opp. at 11, is flatly contradicted by the record. Ample evidence demonstrates that major resellers negotiated for a variety of terms with significant economic impact.[4] Plaintiffs otherwise fail to respond to the precedent holding that the consumer class representatives, who could not negotiate over the terms of the iPod purchases, may not under Rule 23 represent those putative class members who purchased iPods pursuant to "negotiated deals." Mot. at 9-13.

Plaintiff's characterization of Dr. Murphy's report on this point, Opp. at 1-2, is misleading and incomplete. The excerpt cited by Plaintiffs discusses Dr. Noll's error in failing to recognize

---

[4] *E.g.*, Ringgenberg Decl., Ex. U, Apple_AIIA_B_003397 (Meijer ████████████████████████████ ; Ex. V, Apple_AIIA_B_003404 (emails related to Meijer's negotiation for ████████████████████████████ ; Ex. W, Apple_AIIA_B_013428 (Costco receiving ████████████████████████ Ex. X, Apple_AIIA_B_011954 (Amazon receiving ████████████████████ ); Ex. Y, Apple_AIIA_B_013099 (Circuit City receiving a ████████████████████ Dkt. 890-3 (Amazon receiving financial incentives related to iPods and iPod nanos); Dkt. 890-5 (Wal-Mart receiving financial incentives related to iPods).

APPLE'S REPLY IN SUPPORT OF MOT. FOR PARTIAL DECERT.       No. C 05-00037 YGR

his observations are not independent and, instead, treating a sale of thousands of units to one customer at the same price as thousands of separate observations.  Dr. Murphy specifically notes that the price for the particular model of Nano 3rd Generation iPods at that time—one of 29 iPod models at issue in this litigation—was the same or nearly the same for most resellers.  Dkt. 809-4 at ECF pp.80-81.  But at the same time, Dr. Murphy points out that there is variation in the prices paid by different resellers for a given iPod at a given time, and that different resellers receive different back-end margins or no back-end margins at all.  *Id.* at ¶95 & n.137.  Plaintiffs' expert Dr. Noll affirms that the "reseller transaction data show substantial within-quarter variation in prices."  Noll Rebuttal Report, Dkt. 809-5 at ECF pp.271 & 338.

> **D.      The Absence of Opt-Outs Does Not Show Adequate Representation.**

Plaintiffs falsely claim that the lack of opt-outs shows that resellers have concluded that class representation by consumers is adequate.  Opp. at 2, 17.  In reality, "opting out of a class action is very rare.  Virtually no one who receives notice that he is a member of a class in a class action suit opts out."  *Eubank v. Pella Corp.,* 753 F.3d 718, 728 (7th Cir. 2014).  And in this case, the class notice, as Plaintiffs themselves have argued, Dkt. 873 at ECF pp.15-17, did not disclose there was no reseller to look out for resellers' distinct interests, nor that the consumer plaintiffs would claim for themselves an alleged overcharge almost triple what they claimed absent resellers suffered.  The class notice gave absent resellers no basis to judge the adequacy of the representation the consumer plaintiffs are providing, so opt-out rate is simply irrelevant to adequacy.

**II.      K & N CANNOT ADEQUATELY REPRESENT ALL RESELLERS.**

> **A.      As a Small Reseller, K & N Cannot Adequately Represent All Resellers.**

First, unlike the large retailers who enjoyed sufficient bargaining power to negotiate over contract terms with Apple, K & N was in no such position.  A relatively small reseller, K & N made limited numbers of purchases of iPods from Apple at standard, non-negotiated prices.  Dkt. 891-5 at ECF p.29 (Riegel Dep.), at 96:3-5 (attempting to negotiate over contract terms with Apple would be "just wasting air").  This difference yielded tangible results:  large retailers negotiated for financial terms that were more favorable than those received by K & N.  *Compare*

APPLE'S REPLY IN SUPPORT OF MOT. FOR PARTIAL DECERT.          No.  C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1   *id.* at 44:11-13 and Dkt. 891-1 at ECF p.6 (K & N received no back-end margin from Apple) *with*

2   Dkts. 890-3, -5 & -7  (resellers receiving financial incentives relating to iPods) and n.4, *supra*

3   (examples of negotiated terms).  As described above, this "fundamentally different position" in

4   how K & N and other resellers "came to the negotiating table" with Apple precludes certification

5   of a single class.  *GPU*, 253 F.R.D. at 490.

6        Dr. Noll's damages model presupposes that large retailers with specialized contract terms

7   like Wal-Mart incurred the same per-unit harm as ordinary resellers like K & N.  But there is no

8   reason to conclude that if he ran separate regressions on the large resellers and the small resellers,

9   that the differences would not be large as he estimated between consumers and resellers, or that

10  some would not have suffered any damages at all.  His model simply does not account for the

11  distinct circumstances of resellers with contracts that contained more favorable terms than those

12  available to small resellers like K & N.

13       Second, whether one characterizes K & N as an "exclusive" or "specialized" Apple

14  reseller, it is undisputed that K & N was "a hundred percent dedicated to Apple" such that "we

15  suffered . . . when Apple suffered and then we benefited when Apple benefited."  Dkt. 891-5 at

16  ECF p.6 (Riegel Dep.), at 12:19-21.  Class members like K & N that specialize in selling Apple

17  products have a fundamentally different interest in the outcome of this case than multi-brand

18  retailers who sell a variety of products.

19  **B.   K & N Cannot Serve as a Class Representative or, At the Very Least, Individualized Questions Relating to K & N Render It an Atypical and Inadequate Representative.**

20

21       Courts must consider whether a "putative representative may be subject to unique

22  defenses" that may raise typicality and adequacy concerns "because he or she at a minimum will

23  be distracted by the necessity of addressing the issue if it is not shared by *all* class members."  1

24  McLaughlin on Class Actions § 4:18 (10th ed.) (emphasis added).  As discussed below, there are

25  a number of unique defenses to K & N that render it atypical and inadequate.

26  **1.   Neither "Delaware Computer Exchange" Nor Kenneth Riegel Can Represent Resellers.**

27

28       Plaintiffs' Motion to Add stated that "Plaintiffs seek to add Delaware Computer Exchange

9

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1   as a class representative."  Dkt. 873 at ECF p.7; *accord* Dkt. 873-3 (Proposed Order) ("Delaware

2   Computer Exchange is hereby appointed as a class representative").  Plaintiffs' discovery

3   responses referred to Kenneth Riegel as a "Plaintiff."  Apple showed that neither "Delaware

4   Computer Exchange" (because it was a mere trade name) nor Mr. Riegel (as an individual who

5   never purchased an iPods for resale) could serve as a class representative.  Dkt. 889 at ECF pp.9-

6   10.  Plaintiffs do not dispute that showing.

7       Despite having told the Court just days ago that "K & N Enterprises is no longer in

8   existence," Dkt. 873 at ECF p.7 n.1, Plaintiffs now say that K & N, rather than Delaware

9   Computer Exchange or Mr. Riegel, should be added as class representative.  They go so far as to

10  tell the Court, inaccurately, that is what they asked for all along.  Dkt. 895 at ECF p.7 ("Plaintiffs'

11  motion seeks to add 'K & N Enterprise Inc. f/d/b/a Delaware Computer Exchange' as a

12  plaintiff").  In support of that assertion, Plaintiffs cite Dkt. 873 at ECF p.7, though that page says

13  nothing of sort, and, in any event, is contrary to Plaintiffs' assertion on that same page, that K &

14  N "is no longer in existence."

15      Plaintiffs' shifting and confusion alone are enough to conclude that there is no

16  representative before the Court that can adequately represent the interests of resellers who bought

17  millions of iPods.  Plaintiffs contend that "K & N, through Mr. Riegel, has actively participated in

18  this case since it decided to seek appointment as an additional class representative," Opp. at 7,

19  and yet asked the Court to add a defunct trade name as a plaintiff and then, only on reply,

20  proffered the allegedly pertinent legal entity that had allegedly been "actively participat[ing]"

21  some weeks before.  That is enough to find this entity "inadequate."

22          **2.      K & N Is Void and Lacks Capacity to Sue.**

23      Plaintiffs assert that because K & N was not formally dissolved that "under Delaware law

24  it has the capacity to sue."  Opp. at 24.  Plaintiffs are wrong.

25      There is no dispute that K & N is a void corporation.  Under Delaware Law, any

26  corporation which "neglects or refuses for 1 year to pay the State any franchise tax . . . or refuse

27  to file a complete annual franchise tax report, the charter of the corporation shall be void"  Del.

28  Code Ann. tit. 8, § 510.  Mr. Riegel admitted in his deposition the he did not "continue with the

filings and the payment for – to the State of – to the State of Corporations."  Dkt. 891-5 at ECF pp.5-6 (Riegel Dep.) at 11:23-12:4.  Delaware's Division of Corporation website shows that since March 1, 2009, K & N has been designated "Void," as Plaintiffs now admit.  Dkt. 895-2, Ex. 2.

Under Delaware law, when a corporation is void, "all powers conferred by law upon the corporation are declared inoperative."  Del. Code. § 510.  Any attempt to exercise that power is a criminal act under Delaware law.  *Confed Admin. Servs., Inc. v. United Health Care Org.*, No. 95 Civ. 4985 (SAS), 1995 WL 608254, at *2  (S.D.N.Y. Oct. 17, 1995) ("While a Delaware corporation that fails to pay its taxes is not extinguished as a legal entity, the corporation is defunct and any exercise of corporate powers is considered a criminal offense") (citing *Wax v. Riverview Cem. Co.*, 24 A.2d 431, 436 (Del. Super. Ct. 1942)).  Thus, "[u]nder Del. Code Ann., tit. 8, § 510, if any corporation neglects or refuses to pay the State any franchise tax it owes, the charter of the corporation is void, and all powers conferred by law upon the corporation are declared inoperative, including the power to sue in court."  *Metropolitan Interconnect, Inc. v. Alexander & Hamilton, Inc.*, No. Civ. A 04-2896, 2005 WL 1431670, at *2 (E.D. La. May 26, 2005) (citing *Transpolymer Indus., Inc. v. Chapel Main Corp.*, 582 A.2d 936 (Del. 1990) (where a company is "voided . . . for failure to pay the required franchise taxes . . . . the corporation has, pursuant to 8 Del. C. § 510, become void and revoked and all power heretofore conferred upon the corporation has become 'inoperative.'  The corporation has thereby ceased to exist and has lost any standing to appeal and be heard, even if represented by counsel")).

Plaintiffs contend that "even a dissolved company has the capacity to sue" so long as the action is brought prior to or within three years after the date of dissolution.  Opp. at 24.  This argument is a red herring.  First, the parties agree that K & N is not dissolved, it is void.  Second, even if this three-year window for dissolved corporations did apply to K & N, the window would have been long-passed because K & N has been void since March 1, 2009 and it did not move to intervene until November 3, 2014 (Dkt. 873).[5]

---

[5] Delaware Code Ann., tit. 8, § 278 permits three years to bring suits "by or against" the dissolved corporation in order to facilitate the winding down of a corporation.  Unless and until K & N is permitted to be added as a named party, this case is not "by or against" K & N, and thus that three-year window has already closed.  Any suggestion that because K & N is not formally

APPLE'S REPLY IN SUPPORT OF MOT. FOR PARTIAL DECERT.     No.  C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1    Plaintiffs' last ditch effort to salvage K & N's claims by saying that they somehow revert

2    to Mr. Riegel as the sole shareholder also must be rejected.  Plaintiffs' reference to the property of

3    the corporation being distributed to the shareholders after dissolution refers to things like money

4    and assets, and they cite no authority that such shareholders would have antitrust injury and

5    antitrust standing to assert claims, and they entirely ignore the settled law that shareholders lack

6    such standing.  Dkt. 889 at ECF p.9 (citing authority).

7              **3.      The Plain Terms of the Asset Sale Agreement Show That K & N Sold
                        All Its Assets Including Any Antitrust Claim.**

8    

9        Plaintiffs also cannot overcome that K & N sold any claims it had when it sold its assets in

10   2008.  Plaintiffs contend that K & N did not "assign any causes of action," Dkt. 895 at ECF

11   pp.13-14, relying solely on improper extrinsic evidence—Mr. Riegel's declaration (provided after

12   his deposition)—of his purported intent.  Dkt. 895-3 (Riegel Decl.), at ¶¶15-16.

13       "It is an elementary canon of contract construction that the intent of the parties must be

14   ascertained from the language of the contract."  *Mobius Connections Grp., Inc. v. TechSkills,*

15   *LLC*, No. 2:10-CV-01678-GMN, 2012 WL 194434, at *4 (D. Nev. Jan. 23, 2012) (quoting

16   *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992)).[6]  Thus, the "motivations of the

17   parties in entering into the contract are irrelevant," *In re Scarff*, No. 03-54723 ASW, 2010 WL

18   4052917, at *9 (Bankr. N.D. Cal. Oct. 14, 2010) (applying Delaware law), and extrinsic evidence

19   "may not be used to interpret the intent of the parties, to vary the terms of the contract or to create

20   an ambiguity.'"  *Banas v. Volcano Corp.*, --- F. Supp. 2d ----, 2014 WL 1309720, at *8 (N.D. Cal.

21   Mar. 31, 2014) (quoting *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232-

22   33 (Del. 1997)).

23       K & N's sale of "all . . . right, title and interest in and to the Business . . . except as

24   otherwise provided herein" to Apple Sauce, Inc. could not be clearer.  Dkt. 891-6 at ECF p.2.  As

25   _____

26   dissolved, it may then later pay its owed fees, then be reinstated, then be dissolved, then have
     three years to bring claims to wind-down its affairs would be squarely at odds with the plain
27   language and purpose of the statute, which is to limit, not to extends into perpetuity, the time to
     wind down a corporation's affairs.

28       [6] Delaware law governs the agreement.  Dkt. 895-4 (Riegel Decl., Ex. A) at ECF p.4.

APPLE'S REPLY IN SUPPORT OF MOT. FOR PARTIAL DECERT.          No.  C 05-00037 YGR

Apple explained in its motion, "'all' unambiguously means all. The ordinary meaning of 'all' is '[t]he whole of,' 'every, all kinds, all sorts,' and 'any whatever.' 'All' is an inclusive adjective that does not leave room for unmentioned exceptions." *City of Spokane, Wash. v. Fed. Nat'l Mortg. Ass'n*, No. CV-13-0020-LRS, 2013 WL 3288413, at *2 (E.D. Wash. June 28, 2013) (citations omitted). "All" includes an assignor's claims. *E.g.*, *Nebco & Associates v. United States*, 23 Cl. Ct. 635, 645 (1991) (rejecting as "absurd" the plaintiff's assertion that it retained the right to bring claims after assigning "all its 'right, title, and interest,'" and explaining such an assignment transfers all interest including claims). That the sales agreement listed some specific items being transferred is also irrelevant. 15A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 7388 (Perm. ed. 1995 database updated Sept. 2014) ("mention of specific items" in assignment does "not limit the effect of the assignment"; "general assignment by a corporation of all of its assets and property passes the company's goodwill, trademarks, trade names, and books and records of the corporation," and "[c]auses of action").

But even if the Court were to conclude that there was some question as to whether K & N's claim was assigned, the issue would need to be litigated and resolved individually and, thus K & N is not an adequate class representative.

### 4. K & N Agreed to Mediate Before Any Suit.

Apple and K & N agreed to mediate prior to filing any suit against each other. K & N's failure to satisfy this condition requires dismissal of K & N's claim. Dkt. 889 at ECF p.12. Plaintiffs say that K & N's promise to mediate "does not preclude" it from filing suit. But the plain terms provide that K & N (or Apple) "shall" engage in mediation and provides that a party "may" file suit only if "unable to resolve the dispute or controversy within sixty (60) days after commencing mediation." Dkt. 891-3 at ECF p.5. Plaintiffs ignore the caselaw dismissing actions based on the failure to perform such mandatory mediation clauses. Dkt. 889 at ECF p.12. A dismissed plaintiff cannot be an adequate class representative, particularly when other absent class members did not agree to the same terms. Dkt. 890-11 at ECF pp.5-6 (Amazon; no pre-condition mediation requirement).

B O I E S , S C H I L L E R & F L E X N E R L L P
O A K L A N D , C A L I F O R N I A

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1    Plaintiffs' claim that Apple waived this provision by defending itself in this litigation.

2   But K & N was not a party to this action and Apple's named adversaries—the named class

3   representatives—did not agree to K & N's mediation clause or one like it.  Further, should the

4   Court permit Plaintiffs to add K & N as a party to the Complaint, Due Process required that Apple

5   be afforded an opportunity to submit a response to the amended complaint.  *See Nelson v. Adams*

6   *USA, Inc.*, 529 US 460, 466 (2000) ("This opportunity to respond, fundamental to due process, is

7   the echo of the opportunity to respond to original pleadings secured by Rule 12").

8            **5.      K & N Agreed to a Shortened Statute of Limitation.**

9            K & N also agreed to a 1-year statute of limitations. Plaintiffs do not contest this fact, but

10  say K & N's claims were subject to *American Pipe* tolling because K & N was "within the Class

11  definition."  Opp. at 22.  But that is not enough.  As Apple showed, Mot. at 22 n.4, and Plaintiffs

12  ignored, even for absent class members, there is no "tolling for claims that were not asserted in

13  the class action."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07–1827, 2013 WL

14  254873, *2 (N.D. Cal. Jan. 23, 2013).  Here, because the Plaintiffs fundamentally changed the

15  nature of the conduct alleged in this action, the claims now asserted, based on the iTunes 7.0 and

16  7.4 updates in 2006, were not within the scope of the complaint until January 26, 2010.  This

17  means that K & N's claim expired before any tolling could begin.  Mot. at 22 n.4.  Plaintiffs fail

18  to respond.  A plaintiff with no viable claim cannot be a class representative, nor could it

19  adequately represent class members who did not agree to such a short limitations period.  *E.g.*,

20  Dkt. 890-11 (Amazon contract containing no statute of limitation provision).

21           **6.      K & N Waived Jury Trial Rights.**

22           K & N's contract also contains an explicit waiver of the right to a jury trial.  Plaintiffs say[7]

23  that such provisions are "utterly unenforceable in California," Opp. at 22, but as Apple showed

24  and Plaintiffs ignored, such waivers are enforceable as a matter of federal law, which governs, as

25  here, where a plaintiff seeks to assert federal claims in federal court.  Mot. at 21.

26  _____

27       [7] Plaintiffs also argue that Apple waived its rights to enforce the contract, but as explained
    above, Apple could not have done so because K & N previously did not attempt to intervene and
28  the named plaintiffs did not agree to a jury waiver.

APPLE'S REPLY IN SUPPORT OF MOT. FOR PARTIAL DECERT.          No.  C 05-00037 YGR

III.    **PLAINTIFFS' PREJUDICE ARGUMENT IS MERITLESS.**

Plaintiffs contend, Opp. at 18, that the Court should push forward to trial with resellers in the class irrespective of any Rule 23 deficiencies because of the timing of the decertification motion.  But Plaintiffs ignore settled law that, because absent class members' Due Process rights are not Apple's to waive, the court may—indeed, must—revisit the original certification decision and decertify the class whenever it becomes apparent that certification was improper.  Mot. at 7-8.  None of Plaintiffs' cases deny decertification solely on the basis of the timing of the motion, but rather consider that timing a makeweight factor in denying decertification where the facts did not support decertification.  *See, e.g.*, *Easterling v. Connecticut Dep't of Correction*, 278 F.R.D. 41, 47 (D. Conn. 2011) ("declin[ing] to revoke its earlier certification entirely" where the court had "already granted summary judgment to the plaintiff on the issue of liability").  Indeed, purported prejudice[8] to absent class members cannot, by itself, justify denial of decertification because maintaining an improper certification would only prejudice them more.  *See Dubin v. Miller*, 132 F.R.D. 269, 275 (D. Colo. 1990) ("Although the passage of time may have prejudiced class members' ability to pursue their claims, individually or as a class, there is a greater chance of prejudice if I bind them to the result of a lawsuit brought by a representative whom I believe to be inadequate and whose claims I believe to be atypical").  Accordingly, where the facts require, courts decertify classes even on the eve of trial.  *See, e.g.*, *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 479, 480-81 (C.D. Cal. 2008), *aff'd*, 639 F.3d 942 (9th Cir. 2011).

IV.    **CONCLUSION**.

For all the foregoing reasons, Apple respectfully requests that the Court partially decertify the Rule 23(b)(3) class to exclude commercial resellers of iPods.

---

[8] Further, the cases Plaintiffs cite involve motions to decertify the entire class.  *See, e.g., In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2013 WL 2097346, at *1 (D. Kan. May 15, 2013) (considering impact on plaintiffs who "prepared for a long and complex trial at great expense").  By contrast, Apple's motion only seeks a narrowing of the class; the consumer named Plaintiffs would still represent a large class at trial and resellers have not been involved.

APPLE'S REPLY IN SUPPORT OF MOT. FOR PARTIAL DECERT.        No.  C 05-00037 YGR

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

Date:  November 17, 2014

Respectfully submitted,

BOIES, SCHILLER & FLEXNER LLP

By: /s/ Kieran P. Ringgenberg
       Kieran P. Ringgenberg

*Attorneys for Defendant Apple Inc.*

APPLE'S REPLY IN SUPPORT OF MOT. FOR PARTIAL DECERT.      No.  C 05-00037 YGR