# Exhibit Y

# Redacted

# Apple Computer, Inc. 

## Amendment to the Authorized Apple Reseller U.S. Sales Agreement

This Amendment to the Authorized Apple Reseller U.S. Sales Agreement ("Amendment") amends the Authorized Apple Reseller U.S. Sales Agreement ("Agreement") entered into between Apple Computer, Inc. ("Apple") and Circuit City Stores, Inc. ("Reseller") as of July 26, 2004. In the event of a conflict between the terms of this Amendment and the terms of the Agreement, the terms of this Amendment shall prevail.

The parties hereby agree to the following:

1. **Section 1M, Products.** This section is revised to read as follows, "Products" means iPod and iPod accessories that Reseller is authorized by Apple to resell to Customers."

2. **Section 2, Appointment.** This section is revised to read as follows, "Apple appoints Reseller as a limited and nonexclusive Authorized Apple Reseller for the resale of iPod and iPod accessories from Authorized Locations to Customers for use within the United States in compliance with the terms of this Agreement; and Reseller accepts this appointment."

3. **Section 3A, Scope of Authorization.** This section is modified by deleting "and without notice" from the 3rd sentence.

4. **Section 4F, Reseller's Obligations.** This section is modified to read as follows, "Reseller will maintain an Internet email address, which it will provide to Apple, and have Internet access at all times. Apple will provide Reseller with written notification in the event Apple has modified the Practices and Procedures. Reseller will have a commercially reasonable period of time to implement such modifications by Apple, not to exceed thirty (30) days."

5. **Section 7B, Limited Warranty.** This section is modified by adding the following to the end of the section, "In the event that Apple has required Reseller to make modifications to the Products, the preceding requirement shall not apply."

6. **Section 8A, Records, Inspections, and Reporting.** This section is modified to read as follows:
    (a) "Reseller will provide to Apple a list of all Authorized Locations and any other information that Apple may reasonably request, including sales and inventory reports, in formats agreed upon by both Apple and Reseller."
    (b) All references to "five (5) years" are deleted and replaced with "three (3) years."

7. **Section 8B, Records, Inspections, and Reporting.** This section is modified by deleting all references to "five (5) years" and replacing them with "three (3) years."

8. **Section 10B, Insurance.** The following paragraph is added to the Agreement in its entirety, "B. During the term of this Agreement, Apple shall maintain a policy of commercial general liability insurance, including products – completed operations coverage, with an insurance carrier authorized to do business in the United States, with limits of no less than $1,000,000 per occurrence. Products – completed operations coverage will be maintained for the time period covered by this Agreement and for at least five (5) years after the goods to be delivered under this Agreement have been delivered to Circuit City Stores, Inc. Such polices shall name Circuit City Stores, Inc. as an additional insured. Prior to delivery of goods, annually thereafter, and upon reasonable request, a certificate of insurance shall be provided to Circuit City Stores, Inc. evidencing the required coverage and naming Circuit City Stores, Inc. as an additional insured. Apple shall have the right to self-insure, as long as Apple maintains an audited net worth (Shareholder's Equity) of $100,000,000.00"

9. **Section 11A, Indemnity.** This section is modified to read as follows, "If Reseller notifies Apple in writing and gives Apple sole control over the defense and all related settlement negotiations, Apple will defend, hold harmless and indemnify Reseller against any damages finally awarded or amounts paid in settlement as a result of any claim or threat of claim brought by a third party against Reseller to the extent based on an allegation that: (i) the marketing or use of any Products sold by Reseller or software licensed by Apple to a Customer infringes any U.S. patent, copyright, trademark, trade secret or other proprietary right of a third party, or (ii) the sale, resale, use or failure of a defective Product directly caused death or personal injury to any person (including Reseller's employees) or property damage resulting or arising from or alleged to result or arise from or out of the sale, resale, use or failure of the Products; provided that Reseller did not alter, modify, or otherwise change the Product or software that gave rise to such claim (unless such modification is at the direction of Apple) and (iii) for Apple's actual or alleged breach of this Agreement and Apple's actual or alleged violation of any of the laws of any governmental entity with respect to the Products."

RECEIVED
APPLE COMPUTER, INC.
JUL 28 2004
SALES CONTRACTS MGMT

1

CONFIDENTIAL - ATTORNEYS EYES ONLY                                    Apple_AIIA_B_013099

**10. Section 13B, Termination.** This section is modified to read as follows, "This Agreement may be terminated as follows: (i) either party may terminate this Agreement at any time, with or without cause, on thirty (30) days' written notice of termination to the other party; and (ii) either party may terminate this Agreement and any other active agreement immediately and without any period to remedy if: (a) either party fails to fully perform any obligation under this Agreement or, in the case of Reseller, violates any Practice and Procedure, (b) either party commits a felony or engages in any unlawful or unfair business practice, (c) there is a material change in or transfer of either party's management, ownership, control or business operations, or either party becomes affiliated, through common management, ownership, or control, with any person or entity that is unacceptable to the other party, (d) either party's actions expose or threaten to expose the other party to any liability, obligation, or violation of law, (e) either party fails to maintain sufficient net worth and working capital to meet its obligations, has a receiver or trustee appointed for its property, becomes insolvent or makes an assignment for the benefit of creditors, (f) in the case of Reseller closes its last Authorized Location, or (g) either party abandons this Agreement."

**11. Section 13C, Effect of Notice of Termination.** This section is modified to read as follows, "If either party gives notice of termination of this Agreement according to Section 13B(i): (i) Apple may refuse all or part of Reseller's orders received by Apple after the date of notice of termination; (ii) Reseller will cease placing new orders for Products from any Authorized Apple Wholesaler; and (iii) Apple may restrict Reseller's use of any available promotional allowances. Reseller may continue to use the designation "Authorized Apple Reseller" until the effective date of termination. In addition, if termination is in accordance with Section 13B(ii), all unpaid Apple invoices will become due on the effective date of termination."

**12. Section 13D, Effect of Expiration or Termination.** Subsection (iv) is modified to read as follows, "(iv) upon request by Apple, Reseller will return promptly to Apple all Apple property in Reseller's possession, such as loaned equipment and all material containing Confidential Information. Apple acknowledges that Reseller will keep an archival copy of all documentation, which may include Confidential Information, after the expiration or termination of this Agreement."

**13. Section 14A, Governing Law; Venue; Limitation of Claims.** This section is modified to read as follows, "This Agreement will be governed and interpreted under the laws of New York, USA, without regard to its conflict of laws provisions. In the event of any dispute or controversy between the parties to this Agreement, the parties shall try to resolve the dispute in a fair and reasonable way. To that end, the parties shall first attempt to resolve such dispute or controversy through one senior management member of each party (except claims for breach of confidentiality or claims for indemnification). If the parties' senior management members are unable to resolve such dispute or controversy within sixty (60) days after the complaining party's written notice (a "Dispute Notice") to the other party of such dispute or controversy, the parties shall further seek to resolve the dispute or controversy pursuant to non-binding mediation conducted in a place acceptable to both parties. Each party shall bear its own expenses in connection with the mediation, except that Apple shall pay the fees and expenses of the mediator. If the parties are unable to resolve the dispute or controversy within sixty (60) days after commencing mediation, either party may commence litigation in the state or federal courts in Santa Clara County, California (but only such courts). Notwithstanding the foregoing, each party shall have the right to seek equitable relief in order to protect any rights to confidentiality or intellectual property. The parties hereby waive any bond requirements for obtaining equitable relief. To the extent permitted by law, EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT OF TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER OR NOT RELATING TO OR ARISING OUT OF THIS AGREEMENT). ANY LITIGATION ARISING OUT OF ANY DISPUTE OR CONTROVERSY BETWEEN THE PARTIES TO THIS AGREEMENT MUST BE BROUGHT WITHIN ONE (1) YEAR FROM THE FIRST DATE SUCH ACTION COULD HAVE BEEN BROUGHT. IF A LONGER PERIOD IS PROVIDED BY STATUTE, THE PARTIES HEREBY EXPRESSLY WAIVE IT."

**14. iPod Program Terms and Conditions.**

**Apple's Obligations:**

Apple will sell iPods to Circuit City at the prices set out on Apple's price lists in effect on the date the order is accepted, subject to any discounts to which Apple agrees and that Circuit City can demonstrate to be lawful under the Robinson-Patman Act. Specifically, all discount pricing to be extended to Circuit City will be dependent on Circuit City's written certification that the discount pricing extended is no lower than that offered for competitive products by other manufacturers. Any discounts extended to Circuit City under this section are in lieu of price protection that otherwise might be made available to Circuit City as an Apple reseller, and Circuit City hereby waives any claims to such price protection, should it otherwise be available to Apple resellers.

[redacted]

2

CONFIDENTIAL - ATTORNEYS EYES ONLY

**Circuit City's Obligations:**

Circuit City will stock an appropriate selection of iPod products representative of the current products offerings in all Circuit City store locations. Circuit City will promote iPods and make them available for purchase at Circuit City's website.

Circuit City will incorporate training, or update training as necessary for Apple's iPod into Circuit City's provided in-store training as agreed upon by both parties.

Circuit City will place ads for iPod in its weekly preprints. Apple and Circuit City will work closely in developing a comprehensive ad campaign to be funded out of the available rebate dollars. (When Apple subsidizes reseller advertising, either through cooperative advertising funds or through rebate funds that are expected to be spent on advertising, Apple requires adherence to its Minimum Advertising Price program. Apple will provide Apple's Minimum Advertising Price guidelines at such time as Circuit City indicates that it will participate in Apple's co-op fund that includes advertising reimbursement or subsidy.)

Circuit City will feature iPod on the cover of its weekly preprint up to as many as three (3) times in six (6) months.

Circuit City will provide Apple weekly EDI feeds that allow Apple to see weekly sell-through, inventory positions and stock outs for the iPod by storefront. These reports will be treated as confidential and for Apple's internal use only.

Circuit City will pay all of Apple's invoices within thirty days of the date of invoice.

In lieu of the invoice requirements in Section 4.B of Apple's Authorized Reseller US Sales Agreement, which Apple hereby waives, Circuit City will provide invoices to customers in its current standard form.

The duly authorized representatives of the parties execute this Amendment as of the dates set forth below.

| Reseller | Apple Computer, Inc. |
|---|---|
| SIGNATURE: *[signature]* | SIGNATURE: *[signature]* |
| PRINT NAME: BRAD GRAY | PRINT NAME: Preston Patton |
| TITLE: BUYER | TITLE: Senior Manager |
| DATE: 7/26/04 | DEPT: Sales Contracts Management |
| | EFFECTIVE DATE: 8/18/04 |

© 2004 Apple Computer, Inc. All rights reserved. Apple and the Apple logo are registered trademarks of Apple Computer, Inc.

7/04

3

CONFIDENTIAL - ATTORNEYS EYES ONLY

Apple_AIIA_B_013101