UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA   ORIGINAL

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

| | | |
|---|---|---|
| THE APPLE IPOD ITUNES | ) | NO. C 05-00037 YGR |
| ANTITRUST LITIGATION | ) | |
| | ) | PAGES 1 - 61 |
| | ) | |
| | ) | MOTIONS HEARING |
| | ) | |
| | ) | |
| | ) | OAKLAND, CALIFORNIA |
| _____) | | TUESDAY, NOVEMBER 18, 2014 |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

APPEARANCES:

FOR PLAINTIFFS:           ROBBINS GELLER RUDMAN & DOWD LLP
                          655 WEST BROADWAY, SUITE 1900
                          SAN DIEGO, CALIFORNIA  92101
                    BY:   ALEXANDRA S. BERNAY,
                          JENNIFER N. CARINGAL,
                          PATRICK J. COUGHLIN,
                          STEVEN M. JODLOWSKI
                          CARMEN A. MEDICI,
                          BONNY E. SWEENEY, ATTORNEYS AT LAW

                          BONNETT FAIRBOURN FRIEDMAN & BALINT PC
                          4023 CAIN BRIDGE ROAD
                          FAIRFAX, VIRGINIA 22030
                    BY:   FRANCIS J. BALINT, JR.
                          ATTORNEY AT LAW

                    (APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:          RAYNEE H. MERCADO, CSR NO. 8258

    PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

## A P P E A R A N C E S (CONT'D.)

```
FOR DEFENDANT:          BOIES, SCHILLER & FLEXNER LLP
                        5301 WISCONSIN AVENUE NW
                        WASHINGTON, D.C.  20015
                BY:  WILLIAM A. ISAACSON,
                     KAREN L. DUNN,
                     MARTHA L. GOODMAN, ATTORNEYS AT LAW


                        BOIES, SCHILLER & FLEXNER LLP
                        1999 HARRISON STREET, SUITE 900
                        OAKLAND, CALIFORNIA  94612
                BY:  JOHN F. COVE, JR.,
                     MEREDITH R. DEARBORN,
                     KIERAN P. RINGGENBERG,
                         ATTORNEYS AT LAW



                        --OOO--
```

```
 1    TUESDAY, NOVEMBER 18, 2014                    12:02 P.M.

 2                        P R O C E E D I N G S

 3              THE CLERK:  CALLING CIVIL ACTION 05-0037, THE APPLE

 4    IPOD ITUNES ANTITRUST LITIGATION.  COUNSEL, PLEASE COME

 5    FORWARD AND STATE YOUR APPEARANCES.

 6              MS. SWEENEY:  GOOD AFTERNOON, YOUR HONOR.  BONNIE

 7    SWEENEY FOR THE PLAINTIFFS.

 8         SHALL I INTRODUCE MY COLLEAGUES, YOUR HONOR?

 9              THE COURT:  GO AHEAD, MS. SWEENEY.

10              MS. SWEENEY:  MR. COUGHLIN, MS. BERNAY, MR. MEDICI,

11    MR. BALINT, MR. JODLOWSKI, AND MS. CARINGAL.

12              THE COURT:  OKAY.  WELCOME BACK.

13         MR. ISAACSON.

14              MR. ISAACSON:  BILL ISAACSON FOR THE DEFENDANT.  AND

15    AT COUNSEL TABLE IS KAREN DUNN, MEREDITH DEARBORN, AND MARTHA

16    GOODMAN.

17              THE COURT:  OKAY.  MR. COVE?  IS MR. COVE HERE?

18              MR. ISAACSON:  MR. COVE?

19              MR. COVE:  I'M HERE, YOUR HONOR.

20              MR. ISAACSON:  RIGHT.  AND KIERAN RINGGENBERG IS

21    SITTING NEXT TO HIM.

22              THE COURT:  WELL, BUSY DAY.  LET'S GET STARTED.

23         WE WILL START WITH SOME ARGUMENT ON MOTIONS IN LIMINE

24    NUMBERS 1 THROUGH 3.  AFTER THAT, WE'LL MOVE TO THE OTHER

25    THREE PENDING MOTIONS, SO THE MOTION TO PRECLUDE TESTIMONY,
```

1    THE MOTION TO ADD A CLASS REP, AND THE MOTION TO DECERTIFY.

2        AFTER THAT, THERE ARE SOME HOUSEKEEPING ISSUES THAT I WANT

3    TO DISCUSS WITH YOU, IN PART COMING OUT OF THE ORDER THAT I

4    ISSUED TODAY WITH RESPECT TO THE OTHER MOTIONS IN LIMINE

5    CONFIRMING SOME OF THE ORAL RULINGS THAT I MADE BUT ALSO

6    MAKING SOME ADDITIONAL RULINGS.

7        SO LET'S START WITH MOTIONS IN LIMINE NO. 1 THROUGH 3.

8    WHO'S GOING TO ARGUE THOSE?

9        OKAY.  MS. SWEENEY, MR. ISAACSON.

10       THERE IS SOME AMOUNT OF OVERLAP IN THESE IN THE SENSE OF

11   WHAT MY CURRENT PLAN IS TO DO WITH THEM.  SO WHAT I'D LIKE TO

12   DO IS JUST GIVE YOU A PREVIEW OF WHAT I'M THINKING, AND THEN

13   YOU CAN COMMENT AND ARGUE.

14       WHAT I'M THINKING IS THAT I'M PREPARED TENTATIVELY TO

15   GRANT ON THE NARROW ISSUE THAT APPLE HAD NO LEGAL DUTY TO AID

16   REALNETWORKS OR ANY OTHER THIRD-PARTY COMPETITORS, INCLUDING

17   WITH RESPECT TO INTEROPERABILITY OR SOME PURPORTED LESS

18   RESTRICTIVE ALTERNATIVE IN CONNECTION WITH ITS PRODUCT

19   DEVELOPMENT, AND ON THE NARROW ISSUE THAT AN INTEGRATED

20   APPROACH, WITHOUT MORE, IS NOT ILLEGAL AND THAT VERSIONS OF

21   ITUNES PRIOR TO 7.0 HAVE BEEN FOUND, IN FACT, TO BE LEGAL.

22       HOWEVER, I USE THE WORD "NARROW" SPECIFICALLY BECAUSE I

23   THINK THAT THE MOTIONS OVERREACH IN ATTEMPTING TO EXCLUDE

24   EVIDENCE THAT MAY BE USED FOR OTHER PERMISSIBLE PURPOSES.  FOR

25   EXAMPLE, EVIDENCE THAT COULD BE IMPERMISSIBLY USED TO BALANCE

1    TO -- TO SOME ATTEMPT TO BALANCE THE BENEFITS OF A GENUINE

2    PRODUCT IMPROVEMENT IN ITUNES 7.0, IF FOUND, AGAINST THEIR

3    ALLEGEDLY ANTICOMPETITIVE EFFECTS COULD, IT SEEMS TO ME, ALSO

4    BE PERMISSIBLY USED TO SUGGEST THAT THE IMPROVEMENTS

5    THEMSELVES WERE, IN FACT, PRETEXTUAL, WHICH IT SEEMS TO ME IS

6    THE POINT OF THIS TRIAL.

7         THEREFORE, I'VE NOT -- AND IN THAT RESPECT, I'VE NOT BEEN

8    ABLE TO FIND ANY LAW THAT SAYS THAT A PLAINTIFF CANNOT PRESENT

9    CIRCUMSTANTIAL EVIDENCE OF PRETEXT.  AND THAT'S, IN FACT, WHAT

10   IT IS.  SO HOW DO I DEAL WITH THE ISSUE?

11        THERE IS EVIDENCE THAT CIRCUMSTANTIALLY SHOULD, IN FACT,

12   IT SEEMS TO ME, BE ALLOWED; HOWEVER, I ALSO HAVE TO MAKE SURE

13   THAT IT'S NOT USED IN AN IMPROPER WAY.  SO IT SEEMS TO ME THE

14   WAY THAT I DEAL WITH THAT IS, IN FACT, TO PREINSTRUCT THE JURY

15   SPECIFICALLY THAT APPLE HAD NO GENERAL LEGAL DUTY TO ASSIST

16   COMPETITORS OR TO MAKE ITS PRODUCTS INTEROPERABLE, THAT THE

17   JURY MUST DETERMINE THAT 7.0 WAS, IN FACT -- OR HAS TO

18   DETERMINE WHETHER 7.0 WAS A GENUINE PRODUCT IMPROVEMENT, AND

19   IF IN DOING SO OR IF THEY DO FIND AS MUCH, THEY CANNOT USE

20   THAT EVIDENCE TO BALANCE ANY BENEFITS, IF ANY, AGAINST ANY

21   ANTICOMPETITIVE EFFECTS IT MAY HAVE HAD.

22        AND THREE, THAT I DO HAVE TO GIVE THEM THE CONTEXT IN

23   WHICH THIS LAWSUIT IS BEING TRIED, AND THAT IS IT IS ONLY THE

24   LEGALITY OF ITUNES 7.0 WHICH IS AT ISSUE AND THAT PRIOR

25   VERSIONS HAVE BEEN FOUND TO BE LEGAL.

```
1        I ALSO THINK THAT, TO ENSURE THAT THE EVIDENCE IS BEING

2   USED PROPERLY, THAT THE VERDICT FORM SHOULD EXCLUDE AN

3   INTERROGATORY REQUIRING THAT THE JURY FIND ONE WAY OR THE

4   OTHER WHETHER IT WAS A GENUINE PRODUCT IMPROVEMENT.  AND IF I

5   FORCE THEM TO MAKE THAT EXPLICIT DECISION, AND I INSTRUCT THEM

6   WHAT THEY CAN DO WITH THE EVIDENCE, THAT IS THE BEST ASSURANCE

7   THAT I HAVE THAT THEY ARE, IN FACT, USING IT PROPERLY.

8        SO THAT IS WHAT I AM TENTATIVELY INCLINED TO DO.  YOU MAY

9   RESPOND.

10       WE'LL START WITH YOU, MS. SWEENEY.

11            MS. SWEENEY:  YOUR HONOR, OF COURSE IT DEPENDS ON HOW

12  THE ORDER IS WRITTEN, IN PARTICULAR, SINCE DEFENDANT ALSO

13  STRUCTURED ITS MOTION AS A MOTION TO STRIKE, PRECISELY WHICH

14  PARTS OF PROFESSOR NOLL'S AND PROFESSOR MARTIN'S TESTIMONY

15  WOULD BE STRICKEN.  BUT IN CONCEPT, YOUR HONOR, PLAINTIFFS

16  HAVE NO OBJECTION TO THE TENTATIVE THAT YOUR HONOR HAS

17  OUTLINED.

18       WE BELIEVE THAT THE PRETEXT IS CRITICAL TO PROVING OUR

19  CASE, AND APPLE'S MOTION CLEARLY OVERREACHED IN ITS -- IN

20  THIS -- THE STRIKING OF A LOT OF TESTIMONY THAT WOULD GO TO

21  PRETEXT.  SO WE'RE SATISFIED THAT SO LONG AS THE ORDER IS

22  WRITTEN IN SUCH A WAY THAT IT DOES NOT PRECLUDE THAT EVIDENCE

23  OR PRECLUDE EVIDENCE THAT PROFESSOR NOLL WILL NEED TO TESTIFY

24  TO, TO EXPLAIN HIS THEORY OF LOCK-IN AND CAUSATION, THEN THE

25  CONCEPT IS ACCEPTABLE TO PLAINTIFFS.
```

 1          **THE COURT:**  MR. ISAACSON.

 2          **MR. ISAACSON:**  I AGREE WITH PLAINTIFF COUNSEL THAT IT

 3    WILL BE IMPORTANT TO FIND OUT WHAT PARTS OF THE EXPERT REPORT

 4    ARE IN AND OUT.

 5       BUT AS I UNDERSTAND WHAT THE COURT IS TALKING ABOUT AS A

 6    CONCEPT IS THAT THE JURY WILL BE INSTRUCTED THAT A GENUINE

 7    PRODUCT IMPROVEMENT IS IMMUNE UNDER THE ANTITRUST LAWS AND, IF

 8    THAT'S THE CASE, YOU'RE NOT SUPPOSED TO BALANCE WHETHER IT'S A

 9    GOOD PRODUCT IMPROVEMENT OR A BAD PRODUCT IMPROVEMENT;

10    HOWEVER, THAT THE PLAINTIFFS MAY ARGUE FOR -- MAY PUT IN

11    EVIDENCE OF THE EXACT SAME BALANCE -- BALANCING AND THEN SAY

12    THIS IS EVIDENCE OF PRETEXT.

13       AND I THINK THE COURT IS CORRECT THAT THERE IS NO CASE

14    THAT HAS EVER HAPPENED WHERE, PARTICULARLY A SECTION 2 CASE,

15    WHERE THE BALANCING OF A PRODUCT IMPROVEMENT HAPPENS BASED ON

16    THE ARGUMENT OF PRETEXT.  IN OTHER WORDS, THE JURY IS TOLD

17    THAT YOU WILL DETERMINE WHETHER THIS PRODUCT IMPROVEMENT WAS

18    ACTUALLY PRETEXTUAL OR NOT, AND THEN YOU WILL WEIGH -- IN THAT

19    CONTEXT, YOU MAY -- YOU WILL HEAR ARGUMENT WEIGHING THE

20    TECHNOLOGICAL BENEFITS AND DISADVANTAGES OF THESE

21    IMPROVEMENTS.

22       THE NINTH CIRCUIT IS QUITE CLEAR THAT THAT TYPE OF

23    BALANCING FOR ANY PURPOSES IS NOT WHAT GOES TO A JURY BECAUSE

24    THEN THE JURY AND THE COURT BECOMES A CENTRAL PLANNER FOR OUR

25    ECONOMY.  *ALLIED ORTHOPEDIC* IS QUITE CLEAR THAT ANTITRUST

1    SCHOLARS -- I'M QUOTING -- "HAVE LONG RECOGNIZED THE

2    UNDESIRABILITY OF HAVING THE COURTS OVERSEE PRODUCT DESIGN, TO

3    WEIGH THE BENEFITS OF AN IMPROVED PRODUCT DESIGN AGAINST THE

4    RESULTING INJURIES TO COMPETITORS IS NOT JUST UNWISE, IT IS

5    UNADMINISTERABLE."

6         AND I THINK THE COURT IS GRAPPLING WITH HOW TO ADMINISTER

7    SOMETHING THAT THE NINTH CIRCUIT HAS SAID CAN'T BE

8    ADMINISTERED.  THESE LINES CANNOT BE DRAWN BY USING THE WORD

9    "PRETEXT."  AND THERE'S NO COURT GUIDANCE THAT THIS COURT HAS

10   THAT SAYS, WELL, AS LONG AS THE PLAINTIFF STANDS UP AND SAYS

11   "PRETEXT" THAT THEY --

12        **THE COURT:**  WELL, HOW DO I GET THAT THEN?  I CAN'T

13   ELIMINATE BY FIAT, WHICH IS WHAT YOU'RE ASKING ME TO DO,

14   EVIDENCE OF PRETEXT.  SO HOW, MR. ISAACSON, DOES THE LAW

15   OTHERWISE GET DRAWN?

16        **MR. ISAACSON:**  I ACTUALLY -- WHEN IT COMES TO GENUINE

17   PRODUCT IMPROVEMENT, I DON'T THINK THERE'S ANY DOCTRINE OF A

18   PRETEXTUAL PRODUCT IMPROVEMENT.

19        WHERE --

20        **THE COURT:**  HOW CAN THAT BE?  HOW CAN THAT BE?  IF --

21   WE HAVE CIRCUMSTANCES IN OTHER AREAS OF THE LAW WHERE THE

22   NOTION THAT -- I MEAN, CORPORATIONS -- WE -- THE ALLEGATION

23   HERE IS THAT THE CORPORATION WAS NOT ACTING HONESTLY.  THEY

24   HAVE A RIGHT TO CHALLENGE THAT.

25        **MR. ISAACSON:**  I ACTUALLY DON'T THINK THAT'S THE

```
 1   ALLEGATION.  BECAUSE WHAT YOU'RE ACTUALLY GOING TO RUN INTO

 2   HERE, YOUR HONOR, IS APPLE SAYING THAT WE HAD THESE UPDATES,

 3   AND THEY HAD THE EFFECT OF BLOCKING THESE THIRD PARTIES WHO

 4   WANTED TO INTEROPERATE, THAT DID CREATE INCOMPATIBILITY, AND

 5   WE ARE ALLOWED TO DO THAT.  THAT IS A GENUINE PRODUCT

 6   IMPROVEMENT.

 7       AND IF A JURY IS ALLOWED TO SAY, "NO, WE THINK, IN

 8   WEIGHING THE PROS AND CONS OF THAT CONDUCT," WHICH IS WHAT

 9   THE --

10           THE COURT:  BUT IT'S NOT WEIGHING.  THAT'S THE POINT.

11   THAT IS, IF YOU SAY THAT WE -- WELL, LET ME ASK THIS QUESTION:

12   THERE ARE ALL SORTS OF ARGUMENTS BEING MADE IN THE EXPERT

13   REPORTS ABOUT SUGGESTING A PRETEXT.  WHAT IS IT THAT THE

14   PLAINTIFFS ARE GOING TO PUT ON IN TERMS OF EVIDENCE REGARDING

15   THE ACTUAL -- THE ACTUAL STATEMENTS OR THE ACTUAL MOTIVES THAT

16   APPLE HAS FOR HAVING MADE THE UPGRADE?

17           MS. SWEENEY:  PLAINTIFFS WILL INTRODUCE EVIDENCE THAT

18   APPLE MADE THE UPDATES IN ORDER TO BLOCK COMPETITION.

19           THE COURT:  I'M --

20           MS. SWEENEY:  YOU WANT TO KNOW WHICH?

21           THE COURT:  I WANT TO KNOW SPECIFICALLY WHO'S GOING

22   TO GET ON THE STAND AND IDENTIFY WHAT SPECIFIC REASONS.  WHAT

23   EVIDENCE DO YOU HAVE NOW?

24           MS. SWEENEY:  SURE.

25           THE COURT:  WHAT EVIDENCE ARE THEY GOING TO SAY WHEN
```

```
 1   THEY SIT ON THAT STAND AND TELL THE JURY WHY THEY DID THE

 2   UPDATES?  WHAT IS IT?

 3         MS. SWEENEY:  WELL, I'M GOING TO REFER SPECIFICALLY

 4   TO THE TESTIMONY THAT APPLE HAS PROPOSED BE STRICKEN, THE

 5   TESTIMONY OF PROFESSOR NOLL --

 6         THE COURT:  NO.  HE CAN'T DO THAT.

 7         MS. SWEENEY:  WELL -- WELL, LET ME --

 8         THE COURT:  THAT IS HE CAN'T DO IT.  AS A PRELIMINARY

 9   MATTER, WHAT IS GOING TO BE IN THE RECORD FROM APPLE WITH

10   RESPECT TO THEIR STATED OBJECTIVES FOR THE UPGRADE?

11         MS. SWEENEY:  MR. CUE, THE VICE-PRESIDENT OF INTERNET

12   MUSIC, HAS SAID REPEATEDLY, AND WE HAVE A LOT OF DOCUMENTS TO

13   THIS EFFECT, THAT THE LABELS WERE FINE WITH INTEROPERABILITY.

14   ONE OF THE PRETEXT ARGUMENTS THAT PLAINTIFFS --

15         THE COURT:  DID -- DO YOU NOT UNDERSTAND MY QUESTION?

16         MS. SWEENEY:  I'M SORRY, YOUR HONOR.  I MUST NOT

17   UNDERSTAND YOUR QUESTION.

18         THE COURT:  DID YOU EVER ASK APPLE WHY THEY MADE THE

19   CHANGE TO 7.0 FROM 4.7?  DID YOU ASK THEM THAT QUESTION?

20         MS. SWEENEY:  WE -- WE -- WE KNOW WHAT APPLE'S

21   RESPONSE IS, YES.  WE HAVE --

22         THE COURT:  OKAY.  THAT'S MY QUESTION.

23         MS. SWEENEY:  OKAY.  APPLE SAYS THAT IT MADE THE

24   CHANGE FROM 7 -- THAT IT INTRODUCED 7.0 TO COUNTER BUGS CAUSED

25   BY FOREIGN -- BY INJECTION OF FOREIGN MUSIC FILES.  AND SO OUR
```

1    COUNTEREVIDENCE THAT SHOWS THAT THAT'S PRETEXT, THEY'VE ALSO

2    SAID THAT THEY DID IT IN ORDER TO RESPOND TO THE LABEL'S

3    COMPLAINTS ABOUT HACKS.  SO WE HAVE EVIDENCE THAT RESPONDS TO

4    THE CONTENTION ABOUT HACKS.

5             **THE COURT:**  AND WHO'S GOING TO SAY THAT?  WHO IS --

6             **MS. SWEENEY:**  WELL, MR. CUE IS GOING TO SAY THAT.

7         AND THE REASON I REFERRED TO PROFESSOR NOLL WAS BECAUSE

8    APPLE HAS, IN ITS MOTION, SOUGHT TO STRIKE DOCUMENTS AUTHORED

9    BY MR. CUE THAT PROFESSOR NOLL HAS RELIED UPON.

10        AND THEN WITH RESPECT TO THE BUGS THAT APPLE ASSERTS WAS

11   ONE OF ITS JUSTIFICATIONS FOR 7.0, WE HAVE THE TESTIMONY OF

12   OUR TECHNOLOGY EXPERT, DR. MARTIN, WHO LOOKS AT THE PURPORTED

13   FIX AND COMPARES IT TO THE PURPORTED PROBLEM AND SAID THERE IS

14   A HUGE DISCONNECT HERE.

15            **THE COURT:**  SO IF THERE ARE TWO STATED OBJECTIVES

16   FROM APPLE THAT WILL COME INTO EVIDENCE, HOW IS IT, IN A

17   FACT-FINDING SITUATION OF TRUTH, MR. ISAACSON, THAT ONE HAS TO

18   JUST ACCEPT APPLE'S STATEMENTS?  I DON'T SEE HOW THAT IS AT

19   ALL APPROPRIATE.

20            **MR. ISAACSON:**  BECAUSE THE ISSUE OF GENUINE PRODUCT

21   IMPROVEMENT DOES NOT RELATE TO OUR INTENT.  ALL RIGHT?  IF --

22   IF THIS IS A PRODUCT IMPROVEMENT, IT IS THE END OF THE STORY.

23   THERE IS NOT SUPPOSED TO BE BALANCING.  THE JURY IS NOT

24   SUPPOSED TO BE ASKED TO BALANCE THAT.

25            **THE COURT:**  BUT WHAT IF THEY -- WHAT IF THE JURY

```
 1    SAYS, "WE DON'T BELIEVE YOU.  THAT'S NOT -- WE DON'T BELIEVE
 2    YOU, APPLE."
 3              MR. ISAACSON:  RIGHT.  THE --
 4          THE COURT:  I MEAN, DO I HAVE TO STOP THE TRIAL
 5    HALFWAY ONCE WE GET THOSE STATEMENTS AND THE TECHNICAL PERSON
 6    COMES IN AND SAYS, "THAT'S NOT TRUE, THEY'RE LYING TO YOU.
 7    HERE'S THE REASONS WHY THEY'RE LYING TO YOU."  AND THEN AFTER
 8    THAT EVIDENCE IS PRESENTED, SEND THE JURY IN TO MAKE THAT
 9    DETERMINATION?
10              MR. ISAACSON:  ONE OF THINGS THE PLAINTIFFS HAVE MADE
11    CLEAR IS THAT THEY ARE NOT GOING TO SAY WE'RE LYING ABOUT --
12    ABOUT SOMETHING.  OKAY?  THAT THESE IMPROVEMENTS, AND THIS IS
13    7.0, CREATED INCOMPATIBILITY.  CREATING INCOMPATIBILITY,
14    ACCORDING TO THE NINTH CIRCUIT, IS PRO-COMPETITIVE.
15          THE COURT:  OKAY.  WELL, THEN ANSWER MY OTHER
16    QUESTION AS I TRY TO BALANCE THIS.  BECAUSE I DON'T THINK THAT
17    A JURY HAS TO ACCEPT MR. CUE'S TESTIMONY ONCE HE GETS ON THE
18    STAND AND SAYS WHY THEY DID WHAT THEY DID.
19              MR. ISAACSON:  MR. CUE DID NOT DO THESE TECHNICAL
20    DEVELOPMENTS.  HE'S NOT THE TECHNICAL PERSON.  ALL RIGHT?
21    THIS IS -- THE FACT WHETHER IT'S A GENUINE PRODUCT IMPROVEMENT
22    IS AN OBJECTIVE THING.  DID IT REDUCE COSTS?  DID IT INCREASE
23    SECURITY?  AND, YOUR HONOR, IT HAD TO INCREASE SECURITY.
24              THE COURT:  IF THIS WAS NOT -- MR. ISAACSON, IF THERE
25    WAS NOTHING TO BE TRIED, YOU WOULD HAVE WON SUMMARY JUDGMENT
```

1    ON THIS ISSUE.  YOU DIDN'T.  SO THE THRESHOLD QUESTION THAT

2    THE JURY IN THIS TRIAL HAS TO DECIDE IS WHETHER IT'S A GENUINE

3    PRODUCT IMPROVEMENT.

4         **MR. ISAACSON:**  ALL RIGHT.

5         **THE COURT:**  AND SO WE AREN'T GOING TO HAVE A TRIAL

6    WHERE APPLE GETS UP HERE AND -- I MEAN, SOMEONE IS GOING TO

7    HAVE TO TESTIFY ABOUT WHY THERE WAS A CHANGE, AND THE JURY IS

8    GOING TO HAVE TO DECIDE WAS IT GENUINE -- A GENUINE PRODUCT

9    IMPROVEMENT OR NOT.

10        SO WHAT ARE THE ELEMENTS OF A GENUINE PRODUCT IMPROVEMENT,

11   PERHAPS?  AND PERHAPS THAT'S WHERE -- PERHAPS I SEND THEM IN.

12   I DON'T KNOW.  THAT'S WHY I'M THINKING THROUGH THIS.  BUT YOU

13   CANNOT ASSUME THAT THEY HAVE TO ACCEPT WHATEVER IT IS THAT

14   APPLE SAYS.

15        **MR. ISAACSON:**  WELL, WITH THAT BROAD A STATEMENT,

16   YES, I AGREE.  THEY DON'T HAVE TO ACCEPT EVERYTHING WE SAY.

17   BUT, ALL RIGHT, THIS ISSUE OF GENUINE PRODUCT IMPROVEMENT,

18   YES, THE -- BUT WE DIDN'T WIN SUMMARY JUDGMENT.  THE SCOPE OF

19   THE PLAINTIFFS' CASE THAT THEY WANT TO PRESENT AFTER THE

20   MOTION FOR SUMMARY JUDGMENT, HOWEVER, IS BECOMING CLEAR THAT

21   THEY WANT TO DO THIS CASE ABOUT INCOMPATIBILITY.  BUT WHAT --

22        **THE COURT:**  I WISH THAT -- LOOK, WE DON'T HAVE ALL

23   DAY.  THE TWO OF YOU REALLY NEED TO FOCUS YOUR RESPONSES IN --

24   IN TERMS OF WHAT MY REAL QUESTION IS.

25        SO GET TO THE HEART OF THE QUESTION, MR. ISAACSON.

1          MR. ISAACSON:  THE -- WELL, I THINK THE ANSWER TO

2    YOUR QUESTION IS, AS I SAID FIRST, THE OBJECTIVE EVIDENCE IS

3    WHAT MATTERS RATHER THAN MR. CUE'S TESTIMONY ABOUT WHAT THE

4    OVERALL PURPOSES WERE.  THEY -- BUT AFTER THAT, IF YOU'RE

5    GOING TO GET IN A DEBATE ABOUT PURPOSES, YES, THEN WE WILL

6    HAVE THAT DEBATE.  AND IF YOU LET THE JURY DECIDE THE PURPOSES

7    AND YOU LET EVIDENCE IN THAT -- IN DECIDING WHETHER WE HAD A

8    LEGITIMATE PURPOSE OR NOT, WHETHER YOU'RE WEIGHING AND

9    BALANCING THE MERITS OF A PRODUCT IMPROVEMENT, THEN YOU'RE

10   RUNNING INTO THE NINTH CIRCUIT.

11         THE COURT:  WELL, WHAT IS A GENUINE PRODUCT

12   IMPROVEMENT?  I MEAN, FIRST OF ALL, IS IT A TRIABLE ISSUE?  OR

13   ARE YOU SAYING IT'S NOT A TRIABLE ISSUE?

14         MR. ISAACSON:  I'M NOT SAYING -- IN SOME CASES, IT

15   COULD BE A TRIABLE ISSUE.

16      A GENUINE PRODUCT IMPROVEMENT --

17         THE COURT:  OKAY.  IS THERE ANY LAW ON --

18         MR. ISAACSON:  YES.

19         THE COURT:  -- THE -- WHERE THE ISSUE OF A GENUINE

20   PRODUCT IMPROVEMENT WAS TRIED?

21         MR. ISAACSON:  I DON'T BELIEVE IT'S GONE TO TRIAL.

22   IT'S IN *ALLIED*.  IT WAS DECIDED ON SUMMARY JUDGMENT.

23         THE COURT:  I KNOW IT WAS IN *ALLIED*.  BUT THAT'S --

24   BUT IS THERE -- IS THERE ANY CASE LAW?

25         MR. ISAACSON:  NO.  IT DOESN'T GO TO TRIAL TYPICALLY

```
1    BECAUSE THE COURTS SAY THESE ARE RARE AND WE'RE GOING TO BE

2    CAUTIOUS ABOUT THESE THINGS.

3              THE COURT:  OR THEY SETTLE.

4              MR. ISAACSON:  YOU CAN SAY THAT ABOUT EVERY CASE,

5    YES.  BUT -- BUT THE COURT -- THE NINTH CIRCUIT HAS SAID,

6    "WE'RE SKEPTICAL OF THESE CASES."  THE SUPREME COURT SAYS,

7    "WE'RE CAUTIOUS ABOUT THESE CASES."  SO I DO THINK IT IS MORE

8    THAN SETTLEMENT.

9              THE COURT:  ALL RIGHT.  WELL, THEN, BUT BOTH OF YOU

10   COMMENT, THEN, ON THE FIRST -- ON THIS THRESHOLD ISSUE.  WE

11   HAVE ONLY THE EVIDENCE FROM THE PERCIPIENT WITNESSES AND

12   PERHAPS THE TECHNICAL EXPERTS ON WHETHER OR NOT THERE'S A

13   GENUINE PRODUCT IMPROVEMENT.  AT THAT POINT, I SEND IT TO THE

14   JURY FOR THAT DETERMINATION, NO ECONOMISTS YET, BECAUSE THEY

15   HAVE TO DECIDE THAT.

16      THOUGHTS.

17             MR. ISAACSON:  I THINK THAT WOULD STREAMLINE THE

18   CASE.

19             THE COURT:  THAT'S WHAT I'M -- BECAUSE THE PROBLEM,

20   MS. SWEENEY, WITH YOUR ARGUMENT IS THE STATE OF THE LAW FROM

21   THE NINTH CIRCUIT -- I MEAN, THERE'S REAL ISSUES HERE.  AND

22   I'M NOT GOING TO -- YOU KNOW, IT'S -- WE ARE -- WE ARE

23   TREADING IN UNCERTAIN WATERS.  AND FRANKLY, I DON'T KNOW HOW

24   ELSE TO DRAW THE LINE HERE.  ALLOW YOU TO -- REALLY TO OFFER

25   EVIDENCE OF PRETEXT IN AN ENVIRONMENT WHERE THE -- THE TASK
```

```
1    THAT WE'RE ASKING THE JURY TO ENGAGE IN IS TOUGH FOR LAWYERS,

2    MUCH LESS FOR NON-LAWYERS, BECAUSE THEY HAVE TO SLICE THAT

3    EVIDENCE SO THINLY TO USE IT APPROPRIATELY.  IT SEEMS TO ME

4    THAT IF THEY NEED TO MAKE THAT DECISION, I SEND THEM IN TO

5    MAKE THE DECISION, AND THEN WE GO FROM THERE.  IF THEY SAY NO,

6    IT WASN'T A GENUINE PRODUCT IMPROVEMENT, THEN WE KEEP GOING.

7         MS. SWEENEY:  CAN I RESPOND, YOUR HONOR?

8         THE COURT:  YES.

9         MS. SWEENEY:  I DON'T THINK THE JURY CAN ANSWER THAT

10   QUESTION WITHOUT THE BACKGROUND OF THE COMPETITIVE

11   CIRCUMSTANCES UNDER WHICH APPLE --

12        THE COURT:  COMPETITIVE CIRCUMSTANCES ISN'T PART OF

13   THAT QUESTION.

14        MS. SWEENEY:  WELL, YOUR HONOR, I WOULD REFER YOU TO

15   THE -- THE ALLIED DECISION WHERE THE COURT SPECIFICALLY

16   REJECTED A LEAST RESTRICTIVE ALTERNATIVE REQUIREMENT AND THE

17   NINTH CIRCUIT NONETHELESS ACKNOWLEDGED THAT, QUOTE, "EVIDENCE

18   OF AN INNOVATOR'S INITIAL INTENT MAY BE HELPFUL TO THE EXTENT

19   THAT IT SHOWS THE INNOVATOR KNEW ALL ALONG THAT THE NEW DESIGN

20   WAS NO BETTER THAN THE OLD DESIGN AND THUS INTRODUCED THE

21   DESIGN SOLELY TO ELIMINATE COMPETITION."

22        SO PART OF OUR PUTTING ON OF OUR EVIDENCE INVOLVES LOOKING

23   AT THE TIMING OF APPLE'S CONDUCT.  WHEN APPLE FOUND OUT ABOUT

24   THESE COMPETITIVE THREATS, IT ENGINEERED THIS CHANGE TO 7. --

25   THIS 7.0 CHANGE TO THE SOFTWARE AND IT USED -- IT USED THIS
```

1    PRETEXTUAL JUSTIFICATION TO ASSERT THAT THERE WAS CORRUPTION

2    CAUSED BY INJECTION OF FOREIGN CONTENT.  SO THAT THE TIMING

3    AND THE COMPETITIVE SETTING IS ABSOLUTELY CRITICAL FOR

4    PLAINTIFFS TO PUT APPLE'S ACTIONS IN CONTEXT IN ORDER FOR THE

5    JURY TO MAKE THAT DETERMINATION.

6          THE COURT:  YOU CAN DO THAT -- YOU CAN DO THAT

7    WITHOUT EVIDENCE OF DAMAGES CERTAINLY.

8          MS. SWEENEY:  AND I'M NOT UNDERSTANDING HOW YOUR

9    HONOR -- I DON'T -- I'M SORRY THAT I DON'T UNDERSTAND HOW --

10   WHAT YOUR HONOR IS THINKING.  WE WOULD HAVE A TRIAL SOLELY ON

11   THE QUESTION OF GENUINE PRODUCT IMPROVEMENT?

12         THE COURT:  WELL, NOT SOLELY.  THAT IS, IF THEY FIND

13   THAT THERE IS NO GENUINE PRODUCT IMPROVEMENT, THEN YOU CAN PUT

14   ON THE BALANCE OF THE EVIDENCE.

15         MS. SWEENEY:  AND ARE YOU CONTEMPLATING THAT THIS

16   WOULD JUST BE PERCIPIENT WITNESSES WITHOUT ANY EXPERT

17   TESTIMONY WHATSOEVER?

18         THE COURT:  IT COULD BE EXPERT -- YOUR TECHNICAL

19   EXPERTS.

20         MS. SWEENEY:  BUT WITHOUT THE -- THE BACKGROUND

21   ECONOMIC UNDERSTANDING OF WHAT COMPATIBILITY AND THE LACK OF

22   COMPATIBILITY DID TO THE COMPETITIVE CIRCUMSTANCES TO THE

23   MARKET IN WHICH APPLE WAS OPERATING, I DON'T THINK THAT THAT

24   IS A FAIR WAY TO PRESENT THAT QUESTION TO THE JURY, FROM THE

25   PLAINTIFFS' POINT OF VIEW.

```
 1            MR. ISAACSON:  BUT THAT'S NOT WHAT THE NINTH CIRCUIT
 2    SAYS.  I MEAN, ALLIED ORTHOPEDIC SAYS, QUOTE, "THERE IS NO
 3    ROOM IN THIS ANALYSIS FOR BALANCING THE BENEFITS OR WORTH OF A
 4    PRODUCT IMPROVEMENT AGAINST ITS ANTICOMPETITIVE EFFECTS."
 5        AND I'M NOT SURE WHAT OTHER PART MS. SWEENEY WAS QUOTING
 6    FROM.  BUT IN TERMS OF INTENT, IT SAYS THAT STATEMENTS OF AN
 7    INNOVATOR'S INTENT TO HARM A COMPETITOR THROUGH GENUINE
 8    PRODUCT IMPROVEMENT ARE INSUFFICIENT BY THEMSELVES TO CREATE A
 9    JURY QUESTION UNDER SECTION 2.
10        THE ISSUE -- AND THIS WAS THE THRESHOLD ISSUE THAT JUDGE
11    WARE SAID, THERE WAS SUPPOSED TO BE A DISPUTED ISSUE OF FACT
12    ABOUT QUOTING THEIR TECHNICAL EXPERT, DR. MARTIN, NOT
13    DR. NOLL, DR. MARTIN.  DR. MARTIN CREATED THIS DISPUTED ISSUE
14    OF FACT THAT IS SUPPOSED TO GO TO TRIAL.  WE DON'T THINK THAT
15    THAT DISPUTED ISSUE OF FACT CAN STAND UP TO SCRUTINY, BUT IT
16    IS THE THRESHOLD QUESTION.
17            MS. SWEENEY:  YOUR HONOR, THIS -- THIS MOTION STARTED
18    OUT AS A MOTION TO STRIKE SPECIFIC TESTIMONY FROM THE REPORTS
19    OF NOLL AND -- AND MARTIN.  AND THERE IS ONE LINE IN THE NOLL
20    REPORT WHERE HE TALKS ABOUT LEAST RESTRICTIVE ALTERNATIVES.
21    THAT TESTIMONY IS -- IS NOT THE KIND OF BACKGROUND TESTIMONY
22    THAT WE'RE ASKING -- WE'RE NOT ASKING FOR ANY KIND OF
23    BALANCING TESTIMONY FROM DR. NOLL.  BUT WE HAVE TO BE ABLE TO
24    TALK ABOUT COMPATIBILITY AND INCOMPATIBILITY.
25            THE COURT:  AND THE PROBLEM IS THAT YOU'LL CONFUSE
```

1    THE JURY.  THAT IS, THERE'S ALREADY -- YOU'VE ALREADY BEEN

2    GIVEN AN ORDER BY THE PRIOR JUDGE IN THIS CASE THAT THE

3    INTEGRATED PLATFORM WAS LEGAL, THAT INTEROPERABILITY WITH

4    RESPECT TO THIS WAS LEGAL CONDUCT AND NOT ANTICOMPETITIVE.

5    AND THE ONLY -- AS OF 4.7.  SO ALL OF THAT WAS LEGAL.  UP TO

6    4.7.

7         THE ONLY THING THAT WE ARE DEALING WITH IS THE TIME PERIOD

8    BETWEEN 4.7 AND 7.0.  AND THE QUESTION IS:  WHAT DID THEY DO?

9    AND ULTIMATELY WHY DID THEY DO IT?  WERE THEY ATTEMPTING TO

10   MAINTAIN THEIR MONOPOLY, ASSUMING THERE IS A MONOPOLY?  I

11   MEAN, THERE ARE LOTS OF OTHER ISSUES THAT HAVE TO BE DECIDED.

12   BUT THE THRESHOLD QUESTION IS WHY DID THEY DO WHAT THEY DID IN

13   THAT TIME PERIOD, BECAUSE THEY'RE CLAIMING IT WAS A GENUINE

14   PRODUCT IMPROVEMENT.  AND IF THE -- IF THE IMPROVEMENT OR IF

15   THE CHANGE TO 7.0 WAS A PRETEXT, THAT THERE WAS NOTHING REALLY

16   THERE, THERE WAS NO REAL IMPROVEMENT, FOR LACK OF A BETTER

17   WORD, TO THE PRODUCT WHICH IS AT ISSUE, THAT IT WAS ALL A

18   PRETEXT, THEN THERE'S SOMETHING TO FIGHT ABOUT.

19        **MS. SWEENEY:**  YOUR HONOR, CAN I RESPOND TO THAT?

20        FIRST OF ALL, YOU STARTED OUT YOUR COMMENTS BY SAYING THAT

21   WHAT PLAINTIFFS PROPOSE WOULD CONFUSE THE JURY.  WELL, YOU --

22   WHEN WE STARTED THIS CONVERSATION, YOUR HONOR SAID THAT YOU

23   PLANNED TO ISSUE AN INSTRUCTION TO THE JURY WHICH I THINK

24   WOULD CLEARLY ALLEVIATE ANY POSSIBLE CONFUSION.

25        **THE COURT:**  WELL, IT DOESN'T CLEARLY DO IT.  LET ME

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

1    TELL YOU.

2              **MR. ISAACSON:**  YEAH.

3              **THE COURT:**  BECAUSE I'VE BEEN STRUGGLING WITH THIS

4    FOR THE LAST FEW WEEKS.  AND IT MAY DO IT.  I'M -- I'M HOPEFUL

5    THAT IT WILL.  ON THE OTHER HAND, A BIFURCATED APPROACH MIGHT

6    BE THE BETTER APPROACH WHICH IS WHY I'M SUGGESTING THIS.

7              **MS. SWEENEY:**  AND MAY I MAKE ONE MORE COMMENT, YOUR

8    HONOR?

9         AND THAT IS I -- APPLE HAS TODAY, AS IT HAS THROUGHOUT IN

10   ALL OF ITS BRIEFING PERTAINING TO MOTIONS IN LIMINE 1 THROUGH

11   3, IT HAS STRETCHED BEYOND ITS BOUNDARIES THE ORDERS ISSUED BY

12   JUDGE WARE AND ALSO BY THE NINTH CIRCUIT.  AND THE NINTH

13   CIRCUIT AND JUDGE WARE HAVE NEVER HELD THAT INCOMPATIBILITY IN

14   ALL FORMS IS -- IS PER SE LEGAL.

15             **THE COURT:**  NO.  LOOK, BOTH SIDES OF YOU DO IT, AND

16   BELIEVE ME, EVERY TIME BOTH OF YOU DO IT, I IGNORE YOU.  SO

17   HYPERBOLE ON BOTH SIDES IS IRRELEVANT TO ME, WHICH IS WHAT

18   BOTH OF YOU DO.  YOU'VE DONE IT ON THE CLASS CERT ON BOTH

19   SIDES.  SO THAT'S NOT WHERE THE -- THAT'S NOT WHERE THE FOCUS

20   OF THE DISCUSSION SHOULD BE.

21        IF YOU CAN'T APPRECIATE THE QUANDARY IN WHICH I'M FACED,

22   THEN LET'S MOVE ON.  AND I'LL DEAL WITH IT ON MY OWN.  IF YOU

23   WANT TO SAY ANYTHING ELSE TO INFORM MY DECISION, THEN NOW IS

24   YOUR OPPORTUNITY.  BUT ARGUING AT THE EXTREMES DOESN'T HELP

25   YOU.

1        **MR. ISAACSON:**  ALL RIGHT.

2        **THE COURT:**  ANYTHING ELSE?

3        **MR. ISAACSON:**  I'VE GIVEN YOU MY VIEW THAT THE

4    BIFURCATION MAKES SENSE UNDER THE LAW.  I'VE GIVEN YOU MY

5    OTHER VIEWS AS WELL.  I THINK YOU'RE GRAPPLING WITH WHAT THE

6    SUPREME -- WHAT THE NINTH CIRCUIT HAS SAID CAN'T BE

7    ADMINISTERED, AND THAT'S THE SOURCE OF THE DIFFICULTY HERE.

8        **MS. SWEENEY:**  AND, YOUR HONOR, I WOULD JUST SAY AGAIN

9    THAT BIFURCATING IN THE MANNER THAT YOU SUGGEST WOULD CRIPPLE

10   PLAINTIFFS' CASE, IT WOULD MAKE IT UN-UNDERSTANDABLE TO THE

11   JURY.  AND I DON'T SEE THAT IT WOULD CAUSE ANY EFFICIENCY.  IN

12   FACT, QUITE THE OPPOSITE.

13       **THE COURT:**  WELL, RIGHT NOW, FRANKLY, I'M NOT

14   CONCERNED ABOUT EFFICIENCY.  I'M CONCERNED ABOUT GETTING IT AS

15   RIGHT AS I CAN UNDER THE DIFFICULT CIRCUMSTANCES THAT I HAVE.

16       ALL RIGHT.  LET'S MOVE ON.

17       I HAVE THREE MOTIONS.

18       THE MOTION TO PRECLUDE RIEGAL'S TESTIMONY, I'M TENTATIVELY

19   INCLINED TO DENY.

20       THE MOTION TO ADD A CLASS REP, I AM TENTATIVELY INCLINED

21   TO DENY.

22       THE MOTION TO DECERTIFY, I AM TENTATIVELY INCLINED TO

23   DENY.

24       SO TAKE THEM ONE AT A TIME.

25       **MR. ISAACSON:**  LET ME START WITH THE MOTION TO ADD

```
 1     THE CLASS REP BECAUSE I THINK SOME OF THIS -- BECAUSE THAT

 2     AFFECTS THE OTHER MOTIONS.

 3          THE COURT:  WELL, LET ME TELL YOU WHAT MY CONCERN IS.

 4     AND, FRANKLY, I WOULDN'T START WITH YOU BECAUSE YOU'RE ON THE

 5     WINNING END OF THAT ONE.

 6          ON THE MOTION TO ADD A CLASS REP, I'M TENTATIVELY INCLINED

 7     TO DENY IT BECAUSE IT DOES NOT SEEM TO ME THAT THIS PROPOSED

 8     CLASS REP HAS STANDING TO ACT.  I FIND IT HARD TO ADD SOMEONE

 9     WHOSE CORPORATE STATUS IS IN DEFAULT.

10          I JUST DON'T SEE HOW I CAN DO IT.  EVEN WITH THE THREE

11     YEARS, THIS CASE WAS FILED IN 2005.  IT'S 2014.  WE GRANT

12     CORPORATIONS THE RIGHT TO ACT AND SERVE AS PERSONS UNDER

13     STATUTORY REQUIREMENTS.  THIS PROPOSED CLASS REP HAS NOT MET

14     THE STATUTORY REQUIREMENTS SO I DON'T SEE HOW I CAN HAVE HIM

15     SERVE OR HAVE IT SERVE.

16          SO YOU CAN ADDRESS THAT, MS. SWEENEY.

17          MS. SWEENEY:  OKAY.  I -- I'LL START WITH THE

18     QUESTION OF STANDING, AND THEN IF YOUR HONOR HAS ANY

19     ADDITIONAL QUESTIONS, I WILL ADDRESS THOSE.

20          K&N ENTERPRISES IS A VOID CORPORATION.  IT IS NOT A

21     DISSOLVED CORPORATION.  UNDER DELAWARE LAW, WHICH GOVERNS

22     BECAUSE THAT IS WHERE THE CORPORATION WAS INCORPORATED, A VOID

23     CORPORATION STILL HAS CERTAIN LEGAL CAPACITIES.  AND WE HAVE

24     CITED THE RELEVANT STATUTES.  WE'VE ALSO CITED CASE LAW, IN

25     PARTICULAR, WAX V. RIVERVIEW, A DELAWARE CASE, HAD AN EXTENDED
```

1   DISCUSSION OF THIS QUESTION.  AND IT POINTED TO ADDITIONAL --

2          **THE COURT:**  EVEN IF YOU'RE RIGHT, THERE'S A

3   THREE-YEAR LIMIT.

4          **MS. SWEENEY:**  YOUR HONOR, THAT THREE-YEAR LIMIT

5   APPLIES TO DISSOLUTION.  IF A CORPORATION IS DISSOLVED, THERE

6   IS THEN A THREE-YEAR LIMIT.  BUT IN THE *WAX* CASE, THERE WAS

7   ACTUALLY A 20-YEAR HIATUS.  AND THAT WAS A CASE THAT --

8          **THE COURT:**  WHY IS IT THAT HE HASN'T PAID THE FEES SO

9   THAT HIS CORPORATE STATUS IS IN GOOD STANDING?

10         **MS. SWEENEY:**  IT'S PURELY A TAX ISSUE, YOUR HONOR.

11  HE HAS -- I MEAN, HE -- AND MR. COUGHLIN, I BELIEVE, IS

12  MEETING WITH HIM THIS WEEKEND.  MAYBE THE OWNER WOULD BE

13  WILLING TO DO THAT, BUT THERE ARE TAX PENALTIES ASSOCIATED

14  WITH KEEPING A CORPORATION IN EXISTENCE.

15      BUT THE POINT IS THE LAW PERMITS A VOID CORPORATION THAT

16  HAS NOT BEEN DISSOLVED TO SUE AND BE SUED.  THAT IS THE *WAX*

17  CASE.  THAT IS ALSO THE *DARLEY LIQUOR* CASE.  THESE ARE

18  DELAWARE CASES.

19      APPLE HAS RELIED UPON AN UNPUBLISHED DECISION FROM

20  DELAWARE AND A CASE FROM THE EASTERN DISTRICT OF LOUISIANA

21  THAT -- WHERE THE COURTS STATE IN DICTUM THAT THAT IS NOT THE

22  CASE, BUT THE LAW IS AS WE HAVE CITED IN THOSE DELAWARE CASES,

23  THE *WAX* CASE AND THE *DARLEY* CASE.

24      AND ALSO, THERE WAS A CASE IN THE SOUTHERN DISTRICT OF

25  NEW YORK WHICH FOLLOWED THE *WAX* CASE WHICH WE CITED.  AND THAT

```
1   IS THE BOARD OF MANAGERS OF SOHO INTERNATIONAL.  AND THAT IS A

2   RECENT CASE, 2005.

3       SO YOUR HONOR, IN SHORT, K&N ENTERPRISES DOES HAVE

4   STANDING TO BRING SUIT.  IT HAS NOT WAITED TOO LONG.  IT

5   PROBABLY COULD FILE THE PAPER THAT'S REQUIRED TO REINSTATE IT

6   AS A CORPORATION.  I DON'T -- FROM MY UNDERSTANDING OF THAT

7   PROCESS, IT'S VERY FAST AND SIMPLE.  BUT WE DON'T THINK IT'S

8   NECESSARY BECAUSE UNDER THE GOVERNING LAW, WHICH IS DELAWARE

9   LAW, K&N ENTERPRISES HAS THE RIGHT TO SUE.

10          THE COURT:  SO -- OH, METROPOLITAN CASE WHICH WAS --

11  THAT'S THE UNREPORTED CASE YOU'RE TALKING ABOUT?

12          MS. SWEENEY:  THAT'S THE CASE FROM THE EASTERN

13  DISTRICT OF LOUISIANA, YOUR HONOR.

14          THE COURT:  JUDGE SARAH VANCE IS A VERY WELL-KNOWN

15  AND SMART JUDGE.  SHE'S ON THE MDL PANEL.

16          MS. SWEENEY:  WELL, AND I WOULD JUST POINT YOUR HONOR

17  TO THE PAGE WITHIN THAT DECISION AT STAR 7 WHERE THE COURT

18  INVOKES THAT THREE-YEAR PERIOD WHICH YOUR HONOR REFERRED TO,

19  WHICH OF COURSE IS -- IS REFERRING TO DISSOLUTION OF

20  CORPORATIONS.

21          THE COURT:  STAR 7 DOES NOT SAY THAT, AT LEAST THE

22  ONE I'M LOOKING AT.  SO I'M TALKING ABOUT METROPOLITAN

23  INTERCONNECT V. ALEXANDER AND HAMILTON IN WHICH THE JUDGE

24  INDICATES THAT, QUOTE, "UNDER DELAWARE CODE, ANNOTATED TITLE 8

25  AT SECTION 510, IF A CORPORATION NEGLECTS OR REFUSES TO PAY
```

1    THE STATE ANY FRANCHISE TAX IT OWES, THE CHARTER OF THE

2    CORPORATION IS VOID AND ALL POWERS CONFERRED BY LAW UPON THE

3    CORPORATION ARE DECLARED INOPERATIVE, INCLUDING THE POWER TO

4    SUE IN COURT."  CITING A DELAWARE CASE FROM 1990.

5             **MS. SWEENEY:**  WELL, THE COURT ALSO CITES THE *DARLEY*

6    *LIQUOR MART* CASE, YOUR HONOR, WHICH STANDS FOR THE PROPOSITION

7    THAT A VOID BUT NOT YET DISSOLVED CORPORATION HAS THE ABILITY

8    TO SUE AND BE SUED.

9        SO I -- I GUESS I WOULD REFER YOUR HONOR TO THE DELAWARE

10   CASES WHICH OUGHT TO BE MORE PERSUASIVE ON THIS POINT THAN THE

11   EASTERN DISTRICT OF LOUISIANA, WITH ALL DUE RESPECT TO THE

12   COURT WHO ISSUED THE OPINION.

13            **THE COURT:**  WELL, I'M NOT SEEING HER CITE THAT CASE

14   SO --

15            **MS. SWEENEY:**  THAT'S AT 2005 U.S. --

16            **THE COURT:**  WHAT'S INTERESTING ABOUT *DARLEY* IS IT'S

17   ALL OF MAYBE A HUNDRED WORDS.

18       THIS IS THE SUPERIOR COURT OF DELAWARE.  CAN SOMEONE TELL

19   ME WHETHER THE SUPERIOR COURT IS -- IS THAT THE TRIAL COURT

20   LEVEL IN DELAWARE?

21       I DON'T PRACTICE IN DELAWARE.

22            **MS. SWEENEY:**  I BELIEVE SO, YOUR HONOR.

23            **MR. ISAACSON:**  YES, YOUR HONOR.

24            **MS. SWEENEY:**  AND THEN, YOUR HONOR, THE -- THE *WAX V.*

25   *RIVERVIEW* CASE IS NOT A RECENT CASE.  IT'S A 1942 CASE.  BUT

1    IT'S NEVER BEEN OVERRULED.  IT'S STILL THE LEADING CASE THAT'S

2    CITED IN THE ANNOTATED CODE.

3        THERE THE COURT HAS AN EXTENDED DISCUSSION.  AND IT -- IT

4    COMPARES DIFFERENT PROVISIONS IN THE -- THE DELAWARE STATUTES

5    PERTAINING TO VOID AND DISSOLVED CORPORATIONS.  AND IT SAYS IF

6    A DISSOLVED CORPORATION CAN SUE OR BE SUED AND TAKE THESE

7    LEGAL ACTIONS AFTER DISSOLUTION FOR THREE YEARS, WHY NOT A

8    VOID CORPORATION WHICH IS A -- A LEVEL REMOVED FROM

9    DISSOLUTION.  A VOID CORPORATION IS -- I THINK THE COURT SAID

10   IN A COMA, IT IS NOT DEAD.  AND WHAT MR. ISAACSON'S CASES ARE

11   TALKING ABOUT IS A CASE THAT'S DEAD, A CASE THAT'S BEEN -- OR

12   EXCUSE ME -- A CORPORATION THAT HAS BEEN DISSOLVED.

13            **THE COURT:**  MR. ISAACSON.

14            **MR. ISAACSON:**  SO THE STATUTE MAKES THE DISTINCTION

15   BETWEEN A VOID AND A DISSOLVED CORPORATION.  THE STATUTE COULD

16   NOT BE CLEARER.  THIS IS SECTION 510 THAT THE PARTIES HAVE

17   QUOTED.  AND IT TALKS ABOUT WHAT HAPPENS WHEN YOU -- THE

18   CORPORATION FAILS TO FILE ITS TAX RETURNS AND FAILS TO PAY ITS

19   TAXES.  IT SAYS THE CHARTER OF THE CORPORATION SHALL BE VOID

20   AND ALL POWERS CONFERRED BY LAW UPON THE CORPORATION ARE

21   DECLARED INOPERATIVE.  AND IT GOES ON TO SAY UNLESS THE

22   SECRETARY OF STATE, FOR GOOD CAUSE, SHALL HAVE GIVEN FURTHER

23   TIME FOR PAYMENTS, ET CETERA, CIRCUMSTANCES WHICH ARE NOT

24   PRESENT HERE.

25       THE STATUTE CLEARLY SAYS THAT THE VOID CORPORATION HAS

```
 1    NO -- ALL OF ITS POWERS CONFERRED UPON LAW ARE DECLARED
 2    INOPERATIVE, WHICH IS WHY THE DELAWARE SUPREME COURT, IN
 3    TRANSPOLYMER, WHICH IS WHAT'S CITED BY THE METROPOLITAN COURT,
 4    SAID THAT A VOID CORPORATION HAS NO STANDING TO PURSUE AN
 5    APPEAL, AND WHY THE METROPOLITAN COURT IS SIMPLY FOLLOWING THE
 6    PLAIN LANGUAGE OF THE STATUTE.
 7        DISSOLUTION AND THE THREE-YEAR PERIOD IS AN ENTIRELY -- IS
 8    A DIFFERENT STATUTE AND A DIFFERENT SECTION.  IN FACT --
 9           THE COURT:  IS IT PROPER IN DELAWARE TO CITE
10    SUPREME COURT OPINIONS THAT HAVE BEEN UNPUBLISHED?
11           MR. ISAACSON:  I DON'T KNOW THE ANSWER TO THAT, YOUR
12    HONOR.
13           THE COURT:  I'D LIKE TO KNOW THE ANSWER TO THAT
14    QUESTION, MR. ISAACSON.
15           MR. ISAACSON:  WE WILL FIND OUT.
16        AND WE'VE EVEN NOTED THE SEPARATE STATUTORY PROVISION THAT
17    MAKES IT A CRIMINAL ACT TO EXERCISE THE POWERS OF THE
18    CORPORATION AFTER -- ONCE IT'S DECLARED VOID.  THERE'S NO
19    ISSUE THAT THIS COMPANY WAS VOID IN 2009.
20        NOW, THERE ARE COURTS THAT SAY WHAT DO WE DO IF YOU UNVOID
21    THE CORPORATION MORE THAN THREE YEARS LATER?  IS IT -- IS IT
22    LIKE A DISSOLVED CORPORATION OR WAS IT GONE?  WE'RE NOT IN
23    THAT SITUATION HERE BECAUSE THE CORPORATION IS VOID NOW AND
24    WANTS TO GO TO TRIAL AS A VOID CORPORATION.
25        AND IF IT -- IF IT GOT -- IF IT WENT IN AND GOT
```

1    EVERYTHING, FILED ITS TAX RETURNS AND PAID EVERYTHING, IT

2    WOULD BE MORE THAN THREE YEARS AFTER IT WAS VOIDED, AS THE

3    COURT POINTED OUT.

4         **MS. SWEENEY:**  AND, YOUR HONOR, IN RESPONSE TO THAT

5    LAST POINT, I WOULD JUST REFER BACK TO THE *WAX* CASE WHERE IT

6    WAS 20 YEARS.  IN THE CASE OF A VOIDED CORPORATION,

7    MR. ISAACSON IS AGAIN REFERRING TO THE DISSOLUTION PROVISION

8    IN THE DELAWARE STATUTE SO THAT THE THREE YEARS IS NOT

9    PERTINENT HERE.

10        **THE COURT:**  ALL RIGHT.

11        **MR. ISAACSON:**  THERE IS -- THERE IS A RULE ON CITING

12   THESE UNREPORTED DECISIONS.  WE'LL SEND YOU THE RULE.  I'M

13   NOT -- I DON'T WANT TO INTERPRET IT ON THE SCREEN FOR YOU.

14        **THE COURT:**  OKAY.

15      WITH RESPECT TO THE TESTIMONY, HERE AGAIN, I'M INCLINED TO

16   DENY THE MOTION.  IT'S NOT THAT -- IT WAS NOT THAT INVOLVED.

17   LIMITED.  IT WOULD GIVE SOME INFORMATION TO THE JURY WHICH --

18   FROM REAL PEOPLE WHO ARE ACTUALLY ENGAGED IN THE PURCHASE OF

19   THESE PRODUCTS.

20      I DELAYED THE TRIAL SO THAT APPLE COULD HAVE AN

21   OPPORTUNITY TO DEPOSE HIM.  THE PLAINTIFFS -- AS I'VE

22   MENTIONED BEFORE, THE POSTURE OF THIS CASE LEAVES MUCH TO BE

23   DESIRED, BUT IT IS -- IT RESULTED IN PART FROM -- FROM THAT.

24      SO, MR. ISAACSON?

25        **MR. ISAACSON:**  I DON'T HAVE ANYTHING TO ADD FROM OUR

```
 1    PAPERS ON THIS ONE.  THE COURT HAS DISCUSSED WITH US AT

 2    LENGTH.  I THINK THAT WE ARE FACING PREJUDICE FROM THIS.  IF

 3    WE HAVEN'T PERSUADED THE COURT THAT IT'S SUFFICIENT PREJUDICE,

 4    I DON'T HAVE ADDITIONAL ARGUMENT TO MAKE.  WE DO THINK WE ARE

 5    PREJUDICED BY THIS LAST-MINUTE ADDITION OF A WITNESS THAT WAS

 6    NOT DISCLOSED.

 7            THE COURT:  OKAY.  ANYTHING ELSE?

 8            MS. SWEENEY:  I WOULD JUST DISAGREE WITH THE

 9    PREJUDICE ARGUMENT BECAUSE, AS YOUR HONOR POINTED OUT,

10    MR. RIEGAL WAS DEPOSED.  WE ANSWERED INTERROGATORIES AND WE

11    PRODUCED DOCUMENTS.

12            THE COURT:  OKAY.  LAST MOTION.  THE MOTION TO

13    DECERTIFY, AGAIN, I'M TENTATIVELY INCLINED TO DENY THE MOTION.

14    I THINK AS THE -- THE PLAINTIFFS HAVE ARGUED IN THIS CASE THAT

15    THEY DON'T REALLY NEED THE CLASS REPRESENTATIVE BECAUSE THEIR

16    APPROACH WAS APPROPRIATE TO BEGIN WITH AND THEY HAVE REPEATED

17    ORDERS FROM JUDGE WARE THAT APPROVED THEIR APPROACH.  AND

18    AFTER READING YOUR BRIEFS AND WEIGHING ALL THE ISSUES, IT

19    FINALLY OCCURRED TO ME THAT I SHOULD JUST LET YOU TRY THE CASE

20    THE WAY YOU TEED IT UP, AND THEN YOU CAN TAKE IT TO THE NINTH

21    CIRCUIT AND THEY'LL DEAL WITH IT THE WAY THEY'RE GOING TO DEAL

22    WITH IT.

23        MY ATTEMPT TO TRY TO -- TO CHANGE THE LANDSCAPE IN A WAY

24    THAT PROTECTED EVERYBODY DID NOT QUITE WORK AS WELL AS I

25    LIKE -- WOULD HAVE WANTED IT TO WORK.  SO WE'RE GOING TO TRIAL
```

1   AND WE'RE GOING TO TRIAL IN THE WAY THAT EVERYTHING GOT TEED

2   UP, AND THAT'S JUST THE WAY IT IS.

3       SO, YOU KNOW, DEFENDANTS THINK THEY HAVE A SILVER BULLET

4   WHEN THEY GET TO THE NINTH CIRCUIT, THEN YOU STILL HAVE YOUR

5   SILVER BULLET.  I JUST -- I FRANKLY DON'T KNOW WHAT ELSE TO DO

6   WITH THIS CASE.  I MEAN, I HAVE -- YOU KNOW, SOMETIMES IT IS

7   WHAT IT IS, AS THEY SAY.

8       SO, INTERESTING, SOME OF THE ARGUMENTS THAT WERE MADE

9   SHOULD HAVE BEEN MADE PERHAPS YEARS OR MONTHS AGO.  MAYBE THEY

10  WERE.  I DIDN'T REREAD ALL OF THE BRIEFING THAT WAS MADE TO

11  JUDGE WARE.  BUT IT'S A -- THEY'RE NOT ISSUES THAT I'M GOING

12  TO RECONSIDER AT THIS POINT.  SO YOU CAN RESPOND.

13      MR. ISAACSON.

14      **MR. ISAACSON:**  WELL, I UNDERSTAND THE POSTURE THAT

15  THE COURT IS IN.  WE HAD THIS DISCUSSION WHEN WE WERE LAST

16  HERE WHEN WE DIDN'T HAVE THE ADDITIONAL CLASS REPRESENTATIVE

17  AND THE COURT EXPRESSED SKEPTICISM.  AND OBVIOUSLY THERE'S THE

18  RECENT DECISION OF *OPTICAL DISK DRIVE* FOLLOWING GRAPHIC -- THE

19  *GPU* CASE.  SO --

20      **THE COURT:**  WELL, AND THAT, AGAIN, WAS VERY

21  DIFFERENT.  RIGHT?  THAT *OPTICAL DISK DRIVE* CASE WAS -- WAS

22  DONE WITHIN NINE MONTHS TO A YEAR OF THE 12(B)(6) MOTIONS IN

23  THAT MDL.  AND, YOU KNOW, IT'S JUST A DIFFERENT POSTURE.  IT'S

24  NOT THE SAME.

25      **MR. ISAACSON:**  I AGREE IT'S DIFFERENT.  WE ARE IN A

1    DIFFERENT TIME PERIOD THAN THAT CASE AND THE POSTURE.  I THINK

2    IT IS THE IDENTICAL ISSUE.  AND NOW WE WILL BE GOING TO TRIAL

3    ON SOMETHING THAT THESE OTHER COURTS HAVE DISAGREED WITH.

4        WHAT WE WILL ASK THIS COURT TO DO IS TO LOOK AT THIS ISSUE

5    BEFORE IT GOES TO THE NINTH CIRCUIT SO THAT THE NINTH CIRCUIT

6    HAS THE BENEFIT OF YOUR VIEWS AS WELL.  THAT CAN BE DONE AFTER

7    TRIAL.  BUT I UNDERSTAND THE COURT WANTS TO HOLD THE TRIAL

8    BASED ON THE LAY OF THE LAND AS IT'S -- AS IT'S ARRIVED TO

9    THIS COURT.

10           THE COURT:  WELL, AND -- YOU KNOW, AND THERE ARE A

11   NUMBER OF OTHER THINGS.  I MEAN, THEY'VE MADE THE ARGUMENT --

12   THE PLAINTIFFS HAVE MADE THE ARGUMENT THAT THERE'S EVEN

13   ADMISSION FROM THE DEFENDANTS HERE THAT EVERYTHING WAS TEED

14   OFF THE SALE PRICE TO THE CONSUMER AND SO THERE IS REALLY NO

15   DIFFERENCE.  AND THAT'S PERHAPS THE ARGUMENT THAT JUDGE WARE

16   BOUGHT.  I DON'T KNOW.  I HAVEN'T HEARD THE EVIDENCE,

17   OBVIOUSLY.  I'VE ONLY READ THE REPORTS.  AND THE MORE WE

18   ACTUALLY HEAR AND -- AND TESTIMONY ALWAYS MAKES THINGS MUCH

19   MORE CLEAR, THEN I'LL KNOW MORE.

20       BUT I -- IT -- YOU KNOW, THE RESELLERS IN THIS CASE WERE

21   GIVEN NOTICE.  TO DECERTIFY AT THIS JUNCTURE ON THE EVE OF

22   TRIAL, I THINK, FRANKLY, MORE THAN ANYTHING ELSE SEVERELY PUTS

23   AT A DISADVANTAGE THOSE UNNAMED CLASS MEMBERS, AND I'M JUST

24   NOT WILLING TO DO IT.

25           MR. ISAACSON:  I UNDERSTAND YOUR POSITION, YOUR

```
1    HONOR.  WE'LL ASK YOU TO REVISIT IT AS -- AS THE TRIAL GOES

2    ON.  I WOULD SAY ONLY THIS ABOUT THE NOTICE.  THE -- THE

3    NOTICE CERTAINLY NEVER ADVISED THE RESELLERS OF THE DISPARITY

4    IN DAMAGES THAT WERE GOING TO BE PURSUED ON BEHALF OF THE

5    CONSUMERS AND OF THE RESELLERS.  THERE WAS NO NOTICE OF THAT

6    OR THE FACT -- OR ANY NOTICE OF THE CLASS REPRESENTATIVE.  SO

7    THE RESELLERS DON'T HAVE ANY NOTICE THAT THEY ARE OR ARE NOT

8    REPRESENTED AT THIS POINT.

9              THE COURT:  WELL --

10             MS. SWEENEY:  CAN I RESPOND TO THAT, YOUR HONOR?

11             THE COURT:  YOU MAY.

12             MS. SWEENEY:  I WOULD -- I WOULD JUST POINT OUT THAT

13   IN -- WHEN THAT CLASS WAS CERTIFIED AND WHEN NOTICE WENT OUT,

14   PROFESSOR NOLL HADN'T COMPLETED HIS DAMAGES ANALYSIS BECAUSE

15   APPLE HAD NOT YET FINISHED PRODUCING ALL OF THE TRANSACTIONAL

16   DATA FOR THE RESELLERS.  SO THERE WAS NO WAY TO DISCLOSE THE

17   DAMAGES ANALYSIS IN THE NOTICE.  IT'S NOT PROPER ROLE FOR

18   NOTICE IN ANY CASE.  AND AS YOUR HONOR NOTED, THE RESELLER

19   REGRESSION MODEL WAS THE SAME AND KEYED OFF THE CONSUMER

20   TRANSACTIONAL DATA.

21             THE COURT:  WELL, IT WILL BE INTERESTING.  YOU MAY BE

22   WITH ME FOR THE NEXT TEN YEARS.  WHO KNOWS.  HOPEFULLY NOT.

23             MS. SWEENEY:  HOPEFULLY NOT.

24             THE COURT:  OKAY.  I WILL ISSUE WRITTEN ORDERS WITH

25   RESPECT TO THESE MOTIONS.  BUT YOU'RE ALL PREPARING FOR TRIAL.
```

1   YOU SHOULD KNOW WHERE I STAND PRELIMINARILY AND USE YOUR BEST

2   JUDGMENT.

3          **MS. SWEENEY:**  THANK YOU, YOUR HONOR.

4          **THE COURT:**  OKAY.

5      LET'S TALK ABOUT THE -- JUST A COUPLE OF THINGS ON THE

6   ORDER THAT I ISSUED EARLIER TODAY WITH RESPECT TO THE MOTIONS

7   IN LIMINE.  I HAVE A COUPLE OF OBSERVATIONS THAT I WANT TO

8   SHARE.

9      FIRST IS WITH RESPECT TO REALNETWORKS.  APPLE HAS

10  INDICATED OR SUGGESTED, AND I DON'T KNOW IF THIS IS FOR POST

11  TRIAL MOTIONS OR WHAT, MR. ISAACSON OR MS. DUNN, THAT YOU PLAN

12  ON SEEKING SOME RULING FROM THE COURT THAT BECAUSE

13  REALNETWORKS ENGAGED IN UNLAWFUL ACTIVITY, YOUR ACTIONS WERE

14  JUSTIFIED.

15     NOW, PERHAPS I'M MISINTERPRETING THAT.  I DON'T EXACTLY

16  KNOW.  BUT THE COMMENT THAT I WANT TO SHARE WITH YOU IS -- WAS

17  PRECIPITATED BY THAT NOTION AND, FRANKLY, TRYING TO UNDERSTAND

18  WHAT THIS TRIAL IS GOING TO LOOK LIKE.

19     REALNETWORKS -- NEITHER SIDE HAS ANY WITNESS FROM

20  REALNETWORKS.

21          **MR. COUGHLIN:**  THAT'S CORRECT, YOUR HONOR.

22          **THE COURT:**  THERE IS NO ONE FROM REALNETWORKS WHO IS

23  GOING TO COME UP HERE AND TESTIFY FROM PERSONAL KNOWLEDGE, NO

24  ONE IS GOING TO TELL THIS JURY FROM PERSONAL KNOWLEDGE WHAT

25  THEY DID.

1          **MR. COUGHLIN:**  YOUR HONOR, AS FAR AS, YOU KNOW,

2    INFORMATION ABOUT REALNETWORKS, WHAT WE HAVE IS THE INITIAL

3    STATEMENT FROM JOBS THAT WAS TURNED INTO A PRESS RELEASE AND

4    CALLED THEM, YOU KNOW, ADOPTING THE ETHICS AND ACTIONS OF A

5    HACKER AND THEY WERE GOING TO CHECK INTO THE UNLAWFULNESS OF

6    IT.  WE KNOW THAT THERE WAS NO CEASE AND DESIST LETTER EVER

7    SENT TO REALNETWORKS IN THIS REGARD.

8          AND IN FACT, THEY WENT OUT AND GOT A LEGAL OPINION FROM, I

9    THINK IT WAS, FENWICK & WEST WITHIN A MONTH OF THAT LETTER,

10   AND THEY NEVER AGAIN CALLED THEM UNLAWFUL.  OKAY?

11         IF -- IF THEY ARE NOW TRYING TO INTERJECT INTO THIS CASE

12   ABOUT UNLAWFULNESS, THEN WE SHOULD GET -- WE ARE GOING TO FILE

13   A MOTION BECAUSE THEY ARE RELYING -- IT'S A SUBJECTIVE -- THEY

14   CHANGED THEIR JURY INSTRUCTION TO ONE OF IN THEIR VIEW THAT

15   THEY THOUGHT IT WAS UNLAWFUL AND MAYBE SOME OF THEIR WITNESSES

16   WILL TESTIFY TO THAT.

17         IF SO, JEFF ROBBIN, FOR EXAMPLE, GOT THE LETTER FROM

18   FENWICK & WEST.  HE'S LISTED ON THE PRIVILEGE LOG AS RECEIVING

19   THAT OPINION ABOUT WHETHER REALNETWORKS' ACTIONS WERE LAWFUL

20   OR NOT.  SO --

21         **THE COURT:**  LET ME JUST -- I'M GOING TO CUT YOU OFF A

22   LITTLE BIT, MR. COUGHLIN.  I HADN'T QUITE FINISHED.

23         I JUST WANT TO REMIND EVERYBODY THAT TO THE EXTENT THAT

24   EITHER SIDE BRINGS REALNETWORKS INTO THIS, YOU'RE GOING TO

25   HAVE TO HAVE AN EVIDENTIARY BASIS FOR DOING IT.  MANY OF THE

1    THINGS THAT I'VE SEEN, UNTIL I GET SOME PROFFER, THERE'S --

2    IT'S HEARSAY.  DOES ANYBODY -- DID ANYBODY GET THE SOURCE

3    CODE?  SOME TECHNICAL ANALYSIS -- YOU KNOW, SOME TECHNICAL

4    PERSON GOING TO COME IN AND SAY, "WE HAD THEIR SOURCE CODE,"

5    OR, "WE REVERSE-ENGINEERED," OR SOMETHING?

6         BUT WITH RESPECT TO THEIR CONDUCT, UNLESS THERE'S AN

7    EVIDENTIARY BASIS FOR GETTING THINGS IN, IT'S SPECULATIVE.  SO

8    I JUST -- I RAISE THAT IN A PRETRIAL CONTEXT SO THAT YOU

9    UNDERSTAND THAT I AM SENSITIVE TO THIS ISSUE.  THAT WAS REALLY

10   THE POINT OF MY COMMENT, MR. COUGHLIN.

11        **MR. COUGHLIN:**  UNDERSTAND, YOUR HONOR.

12        **THE COURT:**  MS. DUNN.

13        **MS. DUNN:**  YOUR HONOR, WE UNDERSTAND.  OUR PLAN IS TO

14   PRESENT OBJECTIVE EVIDENCE THROUGH OUR EXPERT AND NOT TO DO

15   WHAT MR. COUGHLIN SUGGESTS WHICH IS TO TALK ABOUT, THROUGH OUR

16   FACT WITNESSES, WHAT THEY MAY OR MAY NOT HAVE BELIEVED ABOUT

17   THE LEGALITY OF REAL.

18        AND WE RESPECT WHAT YOU SAY AND UNDERSTAND IT, AND WE'LL

19   LOOK FORWARD TO PUTTING IN OUR EVIDENCE.

20        **THE COURT:**  WELL, I'VE SEEN AT LEAST ONE OF THESE

21   EXPERT REPORTS WHERE THERE SEEMS TO BE SOME CONCLUSION ABOUT

22   REALNETWORKS' CONDUCT WITHOUT ANY EVIDENTIARY BASIS FOR THE

23   CONCLUSION.  SO UNLESS I HAVE SOME EVIDENCE, THOSE CONCLUSIONS

24   DON'T COME IN.  I CAN'T REMEMBER WHAT SIDE'S REPORT IT IS NOW.

25   BUT JUST AN FYI.

1          **MS. DUNN:**  THANK YOU, YOUR HONOR.

2          **THE COURT:**  THAT WAS ONE ISSUE.

3       NOW, WITH RESPECT TO PREINSTRUCTING THE JURY, AT A

4    MINIMUM, WHETHER OR NOT I BIFURCATE, THE JURY WILL BE

5    PREINSTRUCTED.

6       APPLE'S PRIOR SUBMISSIONS NO. 17 AND 31, I FIND TO BE TOO

7    ARGUMENTATIVE.  I'M NOT USING THEM.

8       YOU WERE GIVEN A DEADLINE TO, IF YOU SO CHOOSE, TO SUBMIT

9    SOMETHING FOR ME TO CONSIDER.  NOW PERHAPS YOU DON'T WANT TO

10   BECAUSE YOU WANT TO MAINTAIN YOUR POSITIONS FOR APPELLATE

11   PURPOSES.  NEITHER SIDE SEEMED TO AGREE WITH THE STRUGGLE THAT

12   I'M -- OR AT LEAST THE LINE THAT I'M TRYING TO DIVINE TO

13   INSTRUCT THE JURY.  BUT IF YOU WANT ME TO CONSIDER AN

14   INSTRUCTION, THEN I'D LIKE TO HAVE THAT BY TOMORROW MORNING.

15         **MR. ISAACSON:**  WE WILL -- WE'RE GOING TO TAKE A HARD

16   LOOK AT THAT AND THE DEADLINE WILL BE NO PROBLEM.

17         **MR. COUGHLIN:**  WE WILL DO THE SAME, YOUR HONOR.

18         **THE COURT:**  OKAY.  I KNOW YOU JUST GOT -- THOSE ARE

19   THE TWO THINGS COMING OUT OF THAT ORDER.  I KNOW THAT YOU JUST

20   GOT IT.  DO YOU HAVE ANY QUESTIONS?

21      MR. ISAACSON, ANY QUESTIONS?

22         **MR. ISAACSON:**  NO, YOUR HONOR.

23            (PAUSE IN THE PROCEEDINGS.)

24         **THE COURT:**  WELL, YOU CAN ALSO ASK ME TOMORROW IF YOU

25   NEED.

1    USUALLY, WHAT HAPPENS IS WE WILL -- LET'S SEE.  WE'RE ON

2    TARGET, FRANCES, TO MEET AT WHAT TIME?  8:00 OR 8:30 TOMORROW?

3    WE'RE ON CALENDAR FOR TOMORROW AT WHAT TIME?

4         **THE CLERK:**  FOR 8:30 FOR COUNSEL AND 9:30 FOR THE

5    PANEL.

6         **THE COURT:**  SO WHAT HAPPENS IS THE JURY WILL -- IS

7    SET TO COME IN I THINK AT ABOUT 8:00 O'CLOCK.  IT USUALLY

8    TAKES ABOUT AN HOUR FOR THEM TO GET CHECKED IN, DO THEIR

9    QUESTIONNAIRES, ALL OF THE QUESTIONNAIRES TO BE COPIED.  AND

10   THEN WE'LL PROBABLY START VOIR DIRE AT ABOUT 9:30.

11   SO IF WE NEED TO TALK ABOUT SOME THINGS, WE'LL HAVE SOME

12   TIME IN THE MORNING TO DO THAT.

13   YOU ALL GOT YOUR COPIES OF THE QUESTIONNAIRES?

14        **MR. COUGHLIN:**  WE DID, YOUR HONOR.  WE RECEIVED 44 OF

15   THE QUESTIONNAIRES, AND WE UNDERSTOOD THERE WAS GOING TO BE

16   50 JURORS BROUGHT IN.  DID WE GET THE RIGHT NUMBER?

17        **THE CLERK:**  (NODS HEAD.)

18        **MR. COUGHLIN:**  YES?  44 ARE COMING IN.  UNDERSTAND.

19   AND THOSE 44, WE RECEIVED THEM IN ALPHABETICAL ORDER.  AS

20   I UNDERSTAND, YOUR HONOR, YOU'RE GOING TO CHOOSE THEM RANDOMLY

21   AND THEN SEAT THEM IN ALPHABETICAL ORDER.

22        **THE COURT:**  CORRECT.

23        **MR. COUGHLIN:**  RESEAT THEM IN ALPHABETICAL.

24        **THE COURT:**  SO YOU HAVE ALL 44.  I OBVIOUSLY DON'T

25   HAVE 44 CHAIRS.

```
 1              (SIMULTANEOUS COLLOQUY.)

 2         THE COURT:  I'M ONLY CALLING UP 18.  THEY WILL BE THE

 3    FIRST 18 OFF OF THE RANDOM, RESORTED INTO ALPHA.

 4       OKAY?  ANY QUESTIONS ABOUT -- OR ANYTHING YOU WANT TO TALK

 5    ABOUT?  WE'LL START WITH PLAINTIFFS.

 6         MR. COUGHLIN:  YES, YOUR HONOR.  I THINK WE HAVE DONE

 7    PRETTY GOOD AT TRYING TO REACH THOSE STIPULATIONS TO ADMISSION

 8    THAT YOUR HONOR TALKED ABOUT.  BUT THERE'S THREE CATEGORIES OF

 9    DOCUMENTS AND IN A -- WITH 20 HOURS EACH SIDE, FRANKLY I WOULD

10    ASK THAT WE HAVE BEFORE THIS TRIAL STARTS A -- A FEW HOURS

11    WITH THE THREE CATEGORIES THERE ARE.

12       THERE'S THE FIRST CATEGORY WHERE THERE'S NO OBJECTIONS

13    RAISED BY THE DEFENDANTS, AND YET THERE'S NO STIPULATION TO

14    ADMISSION.

15       THERE'S A SECOND CATEGORY OF DOCUMENTS WHERE THERE'S AN

16    EMAIL EXCHANGE WITH AN EMBEDDED ARTICLE.  THE EMBEDDED ARTICLE

17    OBVIOUSLY IS HEARSAY, BUT THE EMAIL EXCHANGE IS NOT.  THERE'S

18    AN OBJECTION TO THE HEARSAY AS BEING USED FOR THE TRUTH OF THE

19    MATTER WHICH WE WOULDN'T INTEND TO DO.  BUT WE'D LIKE A

20    STIPULATION TO THE ADMISSION TO THE -- TO THE TOP PART.

21       AND THEN THERE'S -- FINALLY THERE'S SOME ADOPTIVE

22    ADMISSIONS.

23       SO THERE'S THREE CATEGORIES OF DOCUMENTS, AND THEY COVER

24    ABOUT 40 DOCUMENTS ON THEIR SIDE AND ABOUT 70 MAYBE ON OUR

25    SIDE.  AND IF WE COULD GET SOME GUIDANCE, YOU KNOW, WITH THOSE
```

 1    DOCUMENTS.  IN A 20-HOUR TRIAL WHERE WE HAVE MR. ROBBIN, WHO

 2    IS A KEY WITNESS, NOT COMING IN TILL FRIDAY, THAT'S GOING TO

 3    BE CRUCIAL.

 4        SO I WOULD ASK THAT WE SET ASIDE A MORNING OR A LATE

 5    AFTERNOON SOMETIME BETWEEN AFTER WE PICK THIS JURY AND COME IN

 6    AND TALK ABOUT THESE DOCUMENTS -- THESE CATEGORIES.

 7        AND I ACTUALLY BROUGHT SOME EXAMPLES THIS MORNING.  IF

 8    I -- IF YOU WANTED TO SEE THREE QUICK EXAMPLES OF THE THREE

 9    CATEGORIES, WE CAN DO THAT.

10        BUT THAT'S ONE HOUSEKEEPING MATTER.

11        THE OTHER HOUSEKEEPING MATTER I WAS WONDERING IS, IS THE

12    COURT INCLINED TO SAY ANYTHING ABOUT THE NOTICE GOING OUT TO

13    THE CLASS, THE NOTICE --

14            **THE COURT:**  TO THE JURY?

15            **MR. COUGHLIN:**  TO THE JURY.

16            **THE COURT:**  NO.

17            **MR. ISAACSON:**  SO AT THIS POINT, WE HAVE, STIPULATED

18    SO THAT THEY COULD BE USED IN OPENING ARGUMENT OR BE

19    IMMEDIATELY SHOWN TO A WITNESS, APPROXIMATELY 380 DOCUMENTS

20    ALL OF WHICH REFLECT THAT THEY WERE SENT FROM OR TO OR COPIED

21    TO WITNESS -- APPLE WITNESSES IN THIS CASE.

22        WE THINK THAT WILL ALLOW THE TRIAL TO FLOW EFFICIENTLY.

23        THERE IS, AS MR. COUGHLIN SAYS, A CATEGORY OF DOCUMENTS

24    WHERE WE ARE NOT GOING TO OBJECT TO THE UPPER PART AND WE --

25    AND THERE'S QUITE A NUMBER OF THESE.

1      **THE COURT:** I'VE ACTUALLY SEEN. I MEAN, THEY WERE

2      SOME OF THE ONES THAT I DEALT WITH HAD THE NEWS ARTICLES

3      EMBEDDED --

4          **MR. ISAACSON:** RIGHT.

5          **THE COURT:** -- IN THEM.

6          **MR. ISAACSON:** AND WE'RE NOT PRE-STIPULATING TO THOSE

7      BECAUSE WE'RE NOT AWARE OF HOW THEY'RE GOING TO BE USED.

8      WE'RE NOT -- FOR EXAMPLE, WE DON'T WANT THOSE USED IN OPENING

9      ARGUMENT, AND WE THINK WE HAVE TO BE CAREFUL ABOUT HOW THEY'RE

10     SHOWN TO THE JURY.

11     THERE'S A THIRD CATEGORY OF DOCUMENTS TO WHICH WE'D HAD NO

12     OBJECTION, BUT THERE'S NO WITNESS ATTACHED TO THEM. NOW, IF

13     THEY'RE SHOWN TO A WITNESS WE'VE SAID, WHO HAS SUBJECT MATTER

14     KNOWLEDGE OF IT WHO SAYS, "YES. I WAS NOT COPIED ON THIS, BUT

15     I'M FAMILIAR WITH THE SUBJECT MATTER OR THIS DISCUSSION,"

16     WE'RE NOT GOING TO OBJECT TO THAT DOCUMENT. BUT WE HAVE NO

17     WAY OF DOING THAT IN ADVANCE AND SO WE'VE NOT STIPULATED TO

18     THAT.

19         **THE COURT:** GO AHEAD.

20         **MR. COUGHLIN:** AND, YOUR HONOR, THERE ARE THOSE THREE

21     CATEGORIES. THERE ARE SOME DOCUMENTS WHERE THEY FILED NO

22     OBJECTION, YOU KNOW, AND -- AND IT'S ONE OF THE SIX WITNESSES

23     THAT THEY LISTED. YOU KNOW, WE'RE FINE WITH THOSE SIX

24     WITNESSES. AND -- BUT THEY HAVE NO OBJECTION AND -- AND IT

25     MAY -- ONE OF THE ONES THAT DOESN'T HAVE AN OBJECTION DOES

1    HAVE AN EMBEDDED ARTICLE AND IT IS FROM STEVE JOBS.  IT'S DOWN

2    WAY BELOW A CERTAIN EMAIL EXCHANGE.

3        BUT WE THINK THAT THESE DOCUMENTS -- IT'S NOT SO MUCH USE

4    THEM IN OPENING.  IT'S THE FACT THAT WE MIGHT HAVE -- BECAUSE

5    OF THE WAY THE WITNESSES ARE GOING TO COME IN.  IF WE GOT TO

6    CALL THE WITNESSES THE WAY WE WANTED TO CALL THEM, WE'D START

7    OFF WITH MR. ROBBIN, WHICH IS WHO I ASKED FOR FIRST.  OKAY?

8    AND THEN WE WOULD MAYBE GO TO MR. FARRUGIA.  WE WOULD DO THE

9    TECHNICAL THINGS.  LIKE YOUR HONOR ASKED, YOU KNOW, WHERE'S --

10   WHO ARE THE WITNESSES THAT ARE GOING TO TALK ABOUT THE PRODUCT

11   IMPROVEMENT?  WELL, THESE TWO WITNESSES ARE THE ONES THAT ARE

12   GOING TO DEAL WITH THOSE THINGS.

13       BUT THAT WITNESS, MR. ROBBIN, ISN'T COMING TILL FRIDAY.

14   OKAY?  SO THAT'S PART OF THE REASON WE WERE GOING TO PUT

15   DR. NOLL ON, ON THURSDAY.  BUT WHEN WE HAVE THAT KIND OF

16   MIX-AND-MATCH WITNESSES -- AND THEY'VE WORKED WITH ME ON IT,

17   I'M NOT SAYING THAT -- SOME OF THESE DOCUMENTS, STIPULATION TO

18   ADMISSION, THE LAST THREE TRIALS I'VE HAD, WE'VE HAD AT LEAST

19   A HALF DAY TO A THREE-DAY HEARING ON DOCUMENTS SO WE DIDN'T

20   SPEND ANY TIME, ESPECIALLY IN A 20-HOUR TRIAL, GOING THROUGH

21   DOCUMENTS.

22       NOW WE ONLY HAD A TWO-HOUR DEPOSITION OF MR. JOBS SO WE

23   COULDN'T GO THROUGH ALL OF HIS DOCUMENTS.  BUT THERE ARE

24   CLEARLY DOCUMENTS, AND THERE'S NO CONTEST AS TO THE

25   AUTHENTICITY OF THESE DOCUMENTS, AND SO WE'D LIKE TO TALK

```
1    ABOUT SOME OF THOSE DOCUMENTS.  WE'D JUST LIKE SOME OF THE

2    COURT'S TIME SO WE DIDN'T SPEND THAT TIME WITH A WITNESS OR

3    NOT GET THAT APPROPRIATE DOCUMENT IN UNTIL WE GET TO THREE

4    DAYS INTO THE TRIAL.

5       WE'RE JUST ASKING FOR A LITTLE TIME FROM THE COURT TO TAKE

6    A LOOK AT SOME OF THOSE DOCUMENTS.  OR IF WE CAN, YOU KNOW --

7    AND I'M NOT TALKING ABOUT IF HE'S WORRIED ABOUT OPENING AND

8    USING THEM ON OPENING, WE'LL AGREE WE WON'T USE THOSE IN

9    OPENING.

10          MR. ISAACSON:  I'M ALSO -- I DON'T KNOW HOW THESE --

11   IT'S IMPORTANT THAT THESE DOCUMENTS ARE USED APPROPRIATELY

12   WITH WITNESSES, AND I DON'T KNOW HOW THEY'RE GOING TO BE USED

13   SO IT'S NOT JUST A MATTER OF OPENING.

14          MR. COUGHLIN:  WELL, I'D LIKE --

15          MR. ISAACSON:  AND WE DO -- AND TO SAY THEY WERE NOT

16   OBJECTED TO, THE DOCUMENTS WITH NO SPONSORING WITNESS DO HAVE

17   OUR OBJECTION THAT THEY HAVE TO BE SHOWN TO A WITNESS WHO HAS

18   KNOWLEDGE OF IT OR WHO IS COPIED ON IT.  SO THAT OBJECTION IS

19   IN THERE.

20          MR. COUGHLIN:  AND I'M NOT SPEAKING ABOUT THAT

21   OBJECTION.

22          THE COURT:  DO YOU -- OKAY.  WHAT ELSE DO WE HAVE

23   OTHER THAN THE DOCUMENTS?  ANYTHING ELSE?

24          MR. COUGHLIN:  WELL, THE DOCUMENTS WERE THE KEY --

25          THE COURT:  PRIMARY?
```

1      **MR. COUGHLIN:**  -- THING.  I UNDERSTOOD YOUR HONOR'S

2   QUICK RESPONSE THAT YOU WOULDN'T TELL THE JURY THAT THEY HAVE

3   NOTICE.  MAYBE WE'D LIKE TO BRIEF THAT A LITTLE BECAUSE I

4   THINK THE JURY SHOULD KNOW THAT WE HAVE NOTICE.  WE'RE WORKING

5   WITH THEM ON THE PHYSICAL EXHIBITS.  WE'RE GOING TO EXAMINE

6   THEM.  AND THERE ARE SOME ISSUES THERE.  AND I DON'T KNOW

7   IF -- I DON'T KNOW IF IT'S RIPE UNTIL AFTER WE EXAMINE THE

8   PHYSICAL EXHIBITS AND FIND OUT EXACTLY WHERE THEY GOT THEM

9   FROM AND WHAT THEY INTEND TO DO WITH THEM BEFORE WE GO FURTHER

10   WITH THE COURT.

11      **MR. ISAACSON:**  RIGHT.  WE'LL BE PRESENTING

12   CERTIFICATIONS BASED ON THE -- I GUESS IT'S THE ID NUMBERS OF

13   THE DEVICES WHICH WILL AUTHENTICATE THE DEVICES AND WHICH

14   UNDER THE LAW WILL -- IS SUFFICIENT.  AND APPLE IS LOOKING AT

15   THOSE ID'S AND PREPARING THE CERTIFICATIONS.

16      **MR. COUGHLIN:**  AND, YOUR HONOR, I UNDERSTAND THAT

17   THEY INTEND TO DO CERTAIN DEMONSTRATIONS.  AND I THINK, OF

18   COURSE, THAT'S FINE AND APPROPRIATE, YOU KNOW, FOR AN EXPERT

19   TO MAYBE DO A DEMONSTRATION.  BUT IT BETTER BE A DETERMINATION

20   THAT THE EXPERT HAD DONE IN PREPARING THE EXPERT'S REPORT AND

21   SUBJECT TO THE, YOU KNOW, TO THE DEPOSITION.

22      **THE COURT:**  DO YOU HAVE YOUR LIST OF EXHIBITS WITH

23   YOU?

24      **MR. COUGHLIN:**  YOUR HONOR, WE EXCHANGED ADDITIONAL

25   EXHIBITS -- WE EXCHANGED ADDITIONAL EXHIBITS LAST NIGHT.  THE

1  PARTIES DID.  AND JUST AS KIND OF A FINAL DAY TO TRY TO GET

2  UPDATED, AND THERE'S NO PROBLEM WITH THAT, BUT I THINK IF WE

3  GIVE YOU A LIST RIGHT NOW, WHICH WE CAN DO BECAUSE I HAVE A

4  FINAL LIST RIGHT HERE WITH ALL THE EXHIBITS, BUT IT -- I THINK

5  IT WOULD BE MORE INFORMATIVE IF WE GET TOGETHER AND SUBMIT

6  THAT TO YOUR HONOR BECAUSE I DON'T THINK WITH THE OBJECTIONS

7  OR NOT OBJECTIONS TO THOSE NEW DOCUMENTS THAT WE DID EXCHANGE

8  LAST NIGHT.

9          **MR. ISAACSON:**  THAT SOUNDS RIGHT.

10          **THE COURT:**  WELL, SO IT DOESN'T HAVE TO BE

11  COMPREHENSIVE.  DOES SOMEONE HAVE A COPY THAT I CAN TAKE A

12  LOOK AT?

13          **MR. ISAACSON:**  I HAVE A COPY OF THE EXHIBIT LIST AS

14  OF THE DATE OF THE PRETRIAL READINESS BINDER.

15          **MR. COUGHLIN:**  I THINK THIS IS IT.

16          **MR. ISAACSON:**  I'VE GOT APPLE'S.

17          **MR. COUGHLIN:**  AND I'VE GOT PLAINTIFFS'.

18          **THE COURT:**  AND THIS HAS THOSE OBJECTIONS IN IT OR

19  NOT?

20          **MR. ISAACSON:**  YES.

21          **MR. COUGHLIN:**  YES.

22      AND, YOUR HONOR, I'VE KEYED UP FIVE EXHIBITS THAT WE

23  COULD --

24          **MR. ISAACSON:**  THAT -- WHAT WE JUST HANDED TO YOU

25  DOES NOT EXPLAIN -- THAT WOULD -- THAT'S FROM THE READINESS

```
 1    BINDER SO THAT DOES NOT EXPLAIN THE 370 -- APPROXIMATELY

 2    370 EXHIBITS THAT WE'VE MOVED FROM NO OBJECTION TO

 3    STIPULATION.

 4              THE COURT:  OKAY.

 5              MR. COUGHLIN:  AND WE'VE DONE THE SAME.

 6              MR. ISAACSON:  YEAH.

 7              MR. COUGHLIN:  SOME 400 EXHIBITS OR SOMETHING.

 8              THE COURT:  ALL RIGHT.  SO WHICH ARE THE FIVE THAT

 9    YOU'VE KEYED UP?

10              MR. COUGHLIN:  YOUR HONOR, THE FIRST ONE IS

11    EXHIBIT 267.  IT'S DATED NOVEMBER --

12              THE COURT:  PLAINTIFFS' 267?

13              MR. COUGHLIN:  PLAINTIFFS' EXHIBIT 267.

14                   (DEMONSTRATIVE PUBLISHED.)

15              MR. COUGHLIN:  AND IT IS AN EMAIL FROM STEVE JOBS TO

16    JEFF ROBBIN, TWO OF THE KEY WITNESSES HERE.  AND IF YOU'LL SEE

17    AT THE BOTTOM HERE, IT HAS ONE OF THOSE EMBEDDED ARTICLES.

18    THIS IS ABOUT NAVIO.  IT HAD THE SAME TECHNOLOGY OR SIMILAR

19    TECHNOLOGY AS TO REALNETWORKS.  AND SO THIS OCCURS -- THIS

20    WOULD BE JUST GIVING NOTICE.  THE COMPANY GOT NOTICE THAT

21    NAVIO WAS COMING OUT.  AND OF COURSE IT SAYS IN THERE, YOU

22    KNOW, THAT WILL PLAY ON IPODS.  SO IT'S NOT FOR THE TRUTH OF

23    THE MATTER ASSERTED, JUST THAT THEY GOT NOTICE THAT ANOTHER

24    COMPETITOR WAS COMING OUT WITH.

25         AND THEN IF YOU GO TO THE TOP OF THE DOCUMENT, YOU CAN SEE
```

1    THAT STEVE JOBS, ON NOVEMBER 16TH, TELLS JEFF ROBBIN WHO WAS

2    IN CHARGE OF THE TECHNICAL ASPECTS OF THE DRM, "WE MAY NEED TO

3    CHANGE THINGS HERE."

4        IF THERE WAS NO OBJECTION BY APPLE TO THIS DOCUMENT,

5    EITHER TO THE HEARSAY PART OF IT OR THIS, AND SO THIS IS THE

6    KIND OF THING THAT WE -- WE DIDN'T GET A CHANCE NECESSARILY --

7    WE CAN'T WAIT TILL FRIDAY TO TALK ABOUT THIS DOCUMENT.  IT'S

8    CLEARLY AN ADMISSION AND A BUSINESS RECORD ON THE TOP BETWEEN

9    TWO OF THE TOP PEOPLE AT APPLE.  THERE'S NO QUESTION ABOUT ITS

10   AUTHENTICITY AND THERE'S NO OBJECTION TO IT.

11       IF WE GO TO THE NEXT DOCUMENT, I'LL SHOW YOU WHY IT'S

12   IMPORTANT.

13                   (DEMONSTRATIVE PUBLISHED.)

14           MR. COUGHLIN:  IF WE LOOK AT THIS, THIS IS

15   PLAINTIFFS' EXHIBIT 269, WHICH IS A DAY AND A HALF LATER.  AND

16   IT'S AN INSTANT MESSAGE FROM ROBBIN -- BETWEEN ROBBIN AND

17   FARRUGIA.  SO ROBBIN, IN CHARGE OF THE TECHNICAL ASPECTS OF

18   THESE CHANGES, AND FARRUGIA, WHO IS IN CHARGE OF THE DRM

19   SECTION.  AND AFTER JOBS SAYS THINGS MAY NEED TO CHANGE HERE,

20   HE SAYS, "HEY, WE NEED TO LOCK DOWN THE KEYBAG."

21       SO THIS IS A TIME FRAME A DAY AND A HALF LATER AFTER THAT

22   EXCHANGE FROM MR. JOBS, AND THEY SENT -- TALKING ABOUT LOCKING

23   DOWN THE KEYBAG.  AND MR. FARRUGIA SAYS THAT'S A SIMPLE

24   MECHANISM.

25       NOW MR. FARRUGIA SAYS THAT HE TOOK A LOOK AT THE

```
 1    ARCHITECTURE AND MADE THE DECISION ON HIS OWN TO, QUOTE, LOCK

 2    DOWN THE KEYBAG.  WELL, WE WOULD SUGGEST THAT THESE DOCUMENTS,

 3    AND IF WE GO TO THE NEXT DOCUMENT, AND THAT'S EXHIBIT --

 4    DEFENDANT'S EXHIBIT 2776, THIS IS MR. FARRUGIA RESPONDING

 5    WITHIN SIX DAYS OF THOSE TWO OTHER EMAILS AND BASICALLY

 6    SAYING, "HEY, I HAVE THE SOLUTION."

 7        AND HE OUTLINES IT IN A FOUR-PAGE LETTER TO JEFF ROBBIN

 8    THAT HE HAS THE POINT -- BASICALLY IT'S THE KVC.  SO THIS

 9    CHAIN OF EVENTS -- THE DEFENDANTS WANT TO PUT IN THE THIRD

10    DOCUMENT HERE.  AND WE'VE -- WE HAVEN'T OBJECTED TO THAT.  AND

11    YET PREVENT US TO THE TWO PRIOR DOCUMENTS THAT PUT IT IN

12    CONTEXT.  AND -- AND YET THEY -- THEY DIDN'T OBJECT TO THE

13    PRIOR TWO DOCUMENTS, BUT THEY WON'T, QUOTE, STIPULATE TO THEIR

14    ADMISSION.  I'D LIKE TO BE ABLE TO USE THOSE WITH MR. FARRUGIA

15    WHO'S GOING TO BE HERE THE FIRST DAY OF TRIAL.

16        AND SO THOSE ARE THE KIND OF THINGS AND I'D LIKE TO KNOW

17    THEY'RE STIPULATED TO THE ADMISSION BECAUSE I CAN ESTABLISH

18    THE FOUNDATION AS AN DISMISSION AND BUSINESS RECORD FOR BOTH

19    OF THESE.

20             MR. ISAACSON:  YEAH, WE'RE NOT -- WE'RE NOT GOING TO

21    HAVE DEBATES ABOUT AUTHENTICITY, AND WE'RE NOT GOING TO HAVE

22    DEBATES ABOUT BUSINESS RECORDS.  THE -- WE WILL TAKE A LOOK AT

23    267 BECAUSE THIS IS AN EXAMPLE OF WE NEED TO LOOK AT THE

24    ARTICLE AND SEE IF THERE'S SOMETHING ELSE IN HERE.  WE'RE NOT

25    GOING TO OBJECT TO THE FACT THAT THEY WERE DISCUSSING NAVIO.
```

```
1    I THOUGHT THE CASE WAS ABOUT REALNETWORKS, BUT NOW IT'S ABOUT

2    SOME UNKNOWN COMPANY NAMED NAVIO.  AND IF THE INSTANT MESSAGE

3    IS WITH MR. FARRUGIA, WE CAN CONFIRM THAT, WE WILL PUT THAT ON

4    THE LIST AS WELL.

5        I DON'T THINK THE THIRD DOCUMENT --

6        MR. COUGHLIN:  THE THIRD DOCUMENT IS NOT OBJECTED TO.

7    THAT'S THEIR DOCUMENT.  THE POINT WAS THEY'RE OBJECTING TO THE

8    TWO DOCUMENTS THAT LEAD TO THE THIRD DOCUMENT.  AND -- AND --

9    AND THAT'S MY OBJECTION.

10       AND THEN THE NEXT CATEGORY, IF WE GO TO EXHIBIT 83 --

11       MR. ISAACSON:  MY POINT IS, YOUR HONOR, RATHER

12   THAN --

13       THE COURT:  WELL, ONE OF THE ISSUES --

14       MR. ISAACSON:  HE'S IN OPENING STATEMENT NOW.

15       THE COURT:  ONE OF THE ISSUES, MR. ISAACSON, IS THAT

16   UNDER MY TRADITIONAL RULE, THEY CAN'T EVEN SHOW THIS DOCUMENT

17   TO THE JURY.

18       MR. ISAACSON:  RIGHT.

19       THE COURT:  AND -- AND IF WE HAVE A PROBLEM WITH --

20   WITH WITNESSES AND THERE HAVE BEEN ACCOMMODATION MADE, THEN,

21   YOU KNOW, I'VE GOT TO DECIDE WHAT I'M GOING TO DO WITH THAT.

22       NOW, PERHAPS WHAT -- PERHAPS THE APPROACH SHOULD BE THE

23   FOLLOWING, AND THAT IS TO HAVE YOU IDENTIFY THESE DOCUMENTS

24   FOR ME.

25       MR. COUGHLIN:  OKAY.
```

1          **THE COURT:**  I CAN TAKE A LOOK AT THEM.  AND WITH

2     RESPECT TO THOSE DOCUMENTS, RELAX MY RULE SO THAT YOU CAN SHOW

3     THEM TO THE JURY.  IN TERMS OF WHETHER OR NOT THEY ULTIMATELY

4     GET ADMITTED, THEN --

5          **MR. COUGHLIN:**  I UNDERSTAND.

6          **THE COURT:**  -- I CAN HOLD OFF ON DECIDING THE

7     ADMISSIBILITY ISSUES.

8          JURIES, YOU KNOW, THEY DON'T -- THEY DON'T FOCUS ON THOSE

9     PARTICULAR ISSUES ANYWAY, AT LEAST NOT DURING THE COURSE OF

10    THE TRIAL.

11         BUT THEN THAT GIVES YOU THE FLEXIBILITY OF BEING ABLE TO

12    SHOW IT TO THEM SO YOU CAN CONDUCT YOUR EXAMINATION.  AND IF

13    THERE IS SOMETHING IN THAT SET OF 70 OR 40 THAT EITHER SIDE

14    BELIEVES SHOULDN'T EVEN BE SHOWN TO THE JURY, THEN YOU CAN

15    IDENTIFY THOSE IN ADVANCE AND I CAN LOOK AT THOSE PARTICULAR

16    ONES IN ADVANCE.

17         AND ONCE I GET THE FOUNDATION IN THE RECORD, AFTER THE

18    FACT AT THE END OF EACH DAY, WE CAN GO THROUGH EXHIBITS AND

19    SEE WHAT'S ADMITTED AND WHAT'S NOT ADMITTED.  AND ONCE THE

20    FOUNDATION IS LAID, WE'LL SEE WHETHER THERE'S EVEN ANY

21    OBJECTION.

22         SO PERHAPS THAT'S THE APPROACH TO -- TO TAKE, GIVEN THE

23    CIRCUMSTANCES.

24         **MR. COUGHLIN:**  I -- I UNDERSTAND THAT, YOUR HONOR.

25    AND I -- AND I HESITATE TO REVISIT SOMETHING THAT YOUR HONOR

 1   STARTED OFF WITH, BUT I'M -- I'M GOING TO TAKE A CHANCE, MAYBE

 2   WRONGLY, BECAUSE I'M DOING MORE OF THE TECHNICAL ASPECTS.

 3       YOUR HONOR ASKED, YOU KNOW, WELL, WHAT ARE -- WHAT IS

 4   APPLE GOING TO SAY ABOUT WHAT THEY DID AND WHY THEY DID IT AND

 5   WHEN THEY DID IT.  AND WHAT THEY'RE GOING TO SAY IS WE

 6   INTRODUCED THESE PRODUCTS, KVC AND DVC, THAT KVC IS THE

 7   KEYBAG, ERASES THE CONTENTS THERE, OR THE DVC ERASES THE WHOLE

 8   DATABASE.  WE THINK ONE WAS DIRECTED AT THE COMPETITORS LIKE

 9   REALNETWORKS AND NAVIO, AND WE THINK THAT THE SECOND ONE, THE

10   DVC, THE DATABASE BLOWUP WAS WHEN THE FREE MUSIC WENT TO

11   AMAZON AND OTHERS AND WINAMP AND OTHER MUSIC NET AND OTHER

12   PLAYERS WERE THEN ERASED FROM THE SYSTEM.  WE THINK THEY WERE

13   DIRECTED AT COMPETITORS NOT FOR THE STATED PURPOSE THAT THE

14   WITNESSES TODAY ARE SAYING.

15       THEY WILL GET ON THE STAND, MR. FARRUGIA AND MR. ROBBIN,

16   AND THEY WILL SAY, OH, WE DID THIS TO MAKE OUR SYSTEM LESS

17   SUSCEPTIBLE TO CORRUPTION.  OKAY?  WE THINK THAT EXPLANATION

18   IS A PRETEXT.  THEY DID IT, WE THINK, IN RESPONSE TO THESE

19   COMPETITIVE THREATS.  OKAY?  AND WE THINK WE CAN SHOW THAT,

20   THAT THAT'S WHY THEY DID IT AND THE TIMING OF IT.

21       AND I THINK ALSO THE MARKET CONDITIONS -- YOUR HONOR ASKED

22   ABOUT HAVING PROFESSOR NOLL TESTIFY, THE MARKET CONDITIONS --

23                    (PAUSE IN THE PROCEEDINGS.)

24           MR. COUGHLIN:  AND YOUR HONOR THOUGHT THAT MAYBE THE

25   MARKET CONDITIONS DIDN'T HAVE ANYTHING TO DO WITH THE PRODUCT

1    IMPROVEMENTS AND SO WE COULD BIFURCATE THOSE.

2         I THINK THAT IN THE CONTEXT IN WHICH THE, QUOTE, YOU KNOW,

3    DVC AND KVC WERE DONE, IT'S CRUCIAL TO UNDERSTAND THE MARKET

4    CONDITIONS AND -- AND THE SEQUENCE OF EVENTS ABOUT WHY THEY

5    PUT THESE, QUOTE, WHAT THEY TERM IMPROVEMENTS AND WHAT WE SAY

6    ARE NOT PRODUCT IMPROVEMENTS, WHY THEY PUT THEM INTO PLAY.

7         AND I THINK IT ALL TIES TOGETHER, AND OUR CASE IS TIED

8    TOGETHER THAT WAY.  YOU CAN'T EXAMINE ONE IN A VOID, SO TO

9    SPEAK.  MAYBE NOT THE RIGHT TERM BECAUSE OF K&N.  BUT THEY TIE

10   TOGETHER ABOUT WHAT THEY DID, WHEN THEY DID IT, AND THE

11   ACTIONS THAT THEY TOOK.  YOU CAN'T JUST SAY, OH, IS THIS A

12   PRODUCT IMPROVEMENT?  WELL, NOW THEY'RE ASSERTING THEY

13   UNDERTOOK THIS PRODUCT IMPROVEMENT TO PREVENT CORRUPTION.

14        WE WILL SHOW THAT NONE OF THEIR -- WE BELIEVE WE CAN SHOW

15   THAT THE CONTEMPORANEOUS DOCUMENTS, WHEN THEY WERE UNDERTAKING

16   THESE PRODUCT IMPROVEMENTS, DON'T SAY THAT.  THEY ACTUALLY SAY

17   WE UNDERTOOK IT BECAUSE THIS WAS AN INJECTION THAT REAL WAS --

18        **THE COURT:**  BUT YOU CAN DO THAT WITH PERCIPIENT

19   WITNESSES, CAN'T YOU, WITHOUT YOUR EXPERT COMING IN AND GIVING

20   SOME GRANDIOSE THEORY ON COMPETITIVE MARKETS?  THAT'S MY

21   CONCERN.  NOT SO MUCH THAT YOU'RE CHALLENGING THE ACCURACY OF

22   WHAT THEY'RE SAYING WITH CONTEMPORANEOUS DOCUMENTS OR THEIR

23   OWN STATEMENTS OR WHAT WAS THERE.  MY CONCERN IS FOR SOMEONE

24   TO COME IN WHO, AFTER THE FACT, WITH SOME HYPOTHETICALS ABOUT

25   COMPETITION AND ANTITRUST LAW AND THOSE KINDS OF ISSUES THAT

```
 1    ARE EXPERT IN NATURE AND NOT GROUNDED IN THE FACTS OF THE DAY.
 2         MR. COUGHLIN:  I THINK -- I HESITATE TO DISAGREE WITH
 3    YOUR HONOR, BUT I THINK THAT THE SETTING OF THE MARKET
 4    CONDITIONS, AND WHEN THEY UNDERTOOK THESE AND WHAT THE MARKET
 5    WAS LIKE WHEN THEY UNDERTOOK THEM HELPS PUT THEM INTO
 6    PERSPECTIVE, YOU KNOW.  AND WHENEVER YOU CHOP UP A PLAINTIFFS'
 7    CASE, YOU KNOW, EVEN FROM THE DAMAGES AND OTHERWISE, YOU KNOW,
 8    IT PREJUDICES PLAINTIFFS.  THAT'S WHY DEFENSE ATTORNEYS ALWAYS
 9    ASK THAT THE CASE BE CHOPPED UP, YOU KNOW, AND SO THAT THE
10    JURY NEVER UNDERSTANDS THE FULL PICTURE OR STORY.
11       THIS IS THE SHORTEST --
12         THE COURT:  BUT FOR -- BUT EVEN IN TERMS OF WHAT
13    YOU'VE JUST SAID, THE NOTION OF EXPLAINING THE COMPETITIVE
14    ENVIRONMENT IS WHOLLY INDISTINCT AND SEPARATE FROM THE ISSUE
15    OF DAMAGES.
16         MR. COUGHLIN:  THAT, I AGREE WITH.  THAT, I AGREE.
17    SO, YOU KNOW, IF -- BUT WE -- AND, YOU KNOW, IT MAY WORK OUT
18    JUST FINE BECAUSE WE'RE HAVING DR. NOLL TESTIFY ON THURSDAY
19    AND THEN ROBBINS COMING IN IN THE MORNING, AND MAYBE WE COULD
20    HOLD OFF ON SOME AND REALLY JUST TALK ABOUT THE MARKET BEFORE
21    WE GOT INTO THE DAMAGES.
22       BUT I THINK IN A TRIAL -- I'VE NEVER BEEN IN A SHORTER
23    ANTITRUST TRIAL THAN WHAT WE HAVE SET HERE RIGHT NOW.  I DON'T
24    THINK IT'S LONG --
25         THE COURT:  WELL, THIS IS A PRETTY NARROW ISSUE.
```

| | |
|---|---|
| 1 | **MR. COUGHLIN:** IT'S A NARROW CASE. IT SHOULD BE |
| 2 | TRIED THIS QUICKLY. IT ABSOLUTELY SHOULD BE. BUT I THINK |
| 3 | THAT WE SHOULD -- TO CHOP UP DR. NOLL'S TESTIMONY FROM THE |
| 4 | COMPETITIVE ENVIRONMENT AND THE IMPACT, AND MAYBE YOU'RE NOT |
| 5 | SUGGESTING THAT EVEN FROM THE DAMAGES, YOUR HONOR, IS -- IS -- |
| 6 | IS GOING TO BE -- FOR EXAMPLE, I'M GOING TO VOIR DIRE THIS |
| 7 | JURY TOMORROW. AND THEY'RE GOING TO HAVE CERTAIN IDEAS AND |
| 8 | OPINIONS ON, AS IN THE QUESTIONNAIRE, THEY HAVE A QUESTION |
| 9 | ABOUT THEIR -- HOW THEY FEEL ABOUT CLASS ACTIONS, HOW THEY |
| 10 | FEEL ABOUT ANTITRUST. I ASSUME A LOT OF THEM ARE GOING TO GET |
| 11 | IN THE JURY AND SAY, "OH, I" -- YOU KNOW, I'M NOT SURE |
| 12 | ABOUT -- I HOPE THAT A BUNCH OF THEM WANT TO GET IN AND SAY, |
| 13 | "I THINK THAT'S THE GREATEST THING SINCE SLICED BREAD, THE |
| 14 | CLASS-ACTION." |
| 15 | **THE COURT:** I EXPECT THEY'RE GOING TO SAY THEY HAVE |
| 16 | NO OPINION BECAUSE THEY DON'T KNOW ANYTHING ABOUT IT. BUT GO |
| 17 | AHEAD. |
| 18 | **MR. COUGHLIN:** BUT SOME ARE GOING TO SAY THEY HAVE A |
| 19 | NEGATIVE OPINION, THAT, YOU KNOW, THEY RECEIVED A COUPON OR |
| 20 | SOME 10 CENTS, AND I'M GOING TO SAY, "HEY, THIS IS AN |
| 21 | ANTITRUST CASE. IT'S A BIG CASE. THE DAMAGES ARE UP IN THE |
| 22 | 350 MILLIONS, ESTIMATED TO BE IN THAT RANGE. CAN YOU SIT ON A |
| 23 | JURY AND AWARD THOSE TYPES OF NUMBERS? OR IS THAT TOO MUCH |
| 24 | FOR YOU?" I WANT TO KNOW THAT BEFORE WE SEAT A JURY. |
| 25 | A NUMBER OF CASES I'VE HAD AGAINST THE TOBACCO INDUSTRY, |

1    FOR EXAMPLE, THERE WAS BILLIONS DOLLARS.  AND SOME JUROR SAID,

2    "I DON'T FEEL I COULD EVER HIT A CORPORATION WITH A

3    MULTIBILLION DOLLAR VERDICT."

4        SO THOSE ARE THE KINDS OF THINGS THAT I THINK I HAVE A

5    RIGHT TO ASK, YOU KNOW, AS WE SIT HERE.  AND I MEAN, THAT'S

6    JUST STARTING OFF FROM DAY ONE.  SO I JUST THINK THAT, WELL,

7    BIFURCATING ANY PART OF THIS TRIAL WILL HINDER THE

8    PRESENTATION.

9            MR. ISAACSON:  YOUR HONOR, I THINK COUNSEL IS TRYING

10   TO EXPAND PROFESSOR NOLL BOTH BEYOND HIS EXPERTISE AND HIS

11   ACTUAL REPORT.

12       PROFESSOR NOLL, LIKE ANY ECONOMIST, CAN'T GO ON THE STAND

13   TO TALK ABOUT PEOPLE'S MOTIVES.  HE DOES GIVE OPINIONS THAT

14   BALANCE -- THAT TALK ABOUT THE ANTICOMPETITIVE EFFECTS WHICH

15   DO NOT COME INTO PLAY UNLESS THERE IS NOT A GENUINE PRODUCT

16   IMPROVEMENT.  AND PROFESSOR NOLL SAYS THAT.

17       PAGE 59 OF HIS DECLARATION, HE SAYS -- HE SETS OUT WHAT

18   HIS STANDARD IS.  "APPLE'S CONDUCT TO REESTABLISH THE LOCK-IN

19   OF IPOD OWNERS WAS ANTICOMPETITIVE IF IT WAS COSTLY TO

20   IMPLEMENT, PROVIDED NO BENEFIT TO CONSUMERS BUT INCREASED

21   PROFITS ONLY BECAUSE IT INCREASED APPLE'S MARKET POWER.  THE

22   EXPERT REPORT OF DR. DAVID MARTIN SHOWS THAT THE CHANGES IN

23   DRM THAT WERE ASSOCIATED WITH ITUNES 7.0 AND 7.4 PRODUCED NO

24   BENEFITS TO CONSUMERS."

25       HE IS RELYING ON -- HE SAYS THE STANDARD IS:  WAS THERE

1   ANY BENEFIT TO CONSUMERS?  AND SAYS HE IS RELYING ON THEIR

2   TECHNICAL EXPERT, DR. MARTIN, FOR THAT PRONG OF HIS ANALYSIS.

3      IF AT THE END OF THE TESTIMONY OF THE FACT WITNESSES AND

4   DR. MARTIN, THE JURY WERE TO FIND THERE WAS A BENEFIT TO

5   CONSUMERS HERE, A GENUINE PRODUCT IMPROVEMENT, DR. NOLL IS

6   IRRELEVANT.

7            **MR. COUGHLIN:**  IF THEY FIND THERE WAS A GENUINE

8   PRODUCT IMPROVEMENT, I AGREE THAT HIS TESTIMONY WILL BECOME

9   IRRELEVANT, BUT THE -- TO PUT THE CONTEXT OF WHAT THEY DID IN

10  CONTEXT OF THE COMPETITIVE ENVIRONMENT, YOU HAVE TO HAVE NOLL.

11  AND SO WHEN YOU -- WHEN YOU TAKE A LOOK AT WHAT THEIR

12  PRETEXTUAL EXPLANATION IS, CORRUPTION, YOU PUT IT IN LINE WITH

13  THE ACTUAL EVIDENCE CONTEMPORANEOUS OF THE DOCUMENTS, YOU TIE

14  THAT WITH IN DR. NOLL'S STATEMENT ABOUT THE MARKET CONDITIONS

15  AT THE TIME AND THE IMPACT, THAT ALL COMES IN AS YOU DECIDE

16  WHETHER IT'S PRETEXTUAL OR NOT.

17           **MR. ISAACSON:**  DR. NOLL --

18           **MR. COUGHLIN:**  THE ACTUAL DAMAGE NUMBERS AND THE

19  REGRESSION ANALYSIS MIGHT BE SOMETHING DIFFERENT.

20           **MR. ISAACSON:**  DR. NOLL CANNOT GIVE OPINIONS ABOUT

21  WHETHER THIS PRODUCT IMPROVEMENT STOPPED CORRUPTION, AND HE

22  DID NOT GIVE SUCH OPINIONS.  DR. MARTIN GAVE THOSE OPINIONS.

23  IT'S THOSE OPINIONS THAT JUDGE WARE CITED IN HIS -- PAGE 12

24  AND 13 OF THE SUMMARY JUDGMENT OPINION.  HE ENTIRELY RELIED ON

25  DR. MARTIN AS TO -- AND SAID THE ISSUE WAS CORRUPTION, NOT

1   ECONOMICS.

2        AND AS TO THE ISSUE I THOUGHT WE WERE PREVIOUSLY

3   DISCUSSING, A PROCESS OF DISCUSSING EXHIBITS, WE'RE FINE WITH

4   THAT.  WE'VE ACTUALLY INVITED THAT, BUT WE'VE GOTTEN 98-PAGE

5   LISTS OF EXHIBITS.

6        **THE COURT:**  WELL, LET'S DO THIS.  IN LIGHT OF WHAT I

7   SAID I WAS WILLING TO DO FOR PURPOSES OF THE PRESENTATION OF

8   EVIDENCE, GO AHEAD, CHEW ON THAT, AND WE CAN DETERMINE WHETHER

9   WE NEED TO MEET IN ADVANCE.

10        **MR. COUGHLIN:**  I THINK THAT WORKS.

11        **THE COURT:**  IF WE DO -- IF WE DO -- AND I'M GOING TO

12   GIVE THESE EXHIBIT LISTS BACK TO YOU UNTIL THEY'RE READY TO BE

13   GIVEN TO ME, THE REVISED ONES.

14        **MR. COUGHLIN:**  THANK YOU, YOUR HONOR.

15        **THE COURT:**  I HAVE TIME ON FRIDAY MORNING TO MEET

16   WITH YOU ALL.  SO I COULD DO IT THEN.

17        **MR. COUGHLIN:**  WE'LL BE HERE.

18        **THE COURT:**  SO --

19        **MR. COUGHLIN:**  WE'LL TRY TO WORK IT OUT BEFORE THAT.

20   AND MAYBE YOUR HONOR'S SOLUTION ABOUT USING THEM BUT NOT

21   ADMITTING THEM UNTIL LATER WORKS AND MAYBE WE CAN FIGURE

22   OUT --

23        **THE COURT:**  THE REASON THAT I HAVE THAT STANDING RULE

24   IS BECAUSE SOMETIMES THERE ARE, YOU KNOW, THERE ARE GRUESOME

25   PHOTOS OR THERE ARE OTHER THINGS THAT ARE VERY CONTROVERSIAL

```
 1      AND I DON'T -- YOU KNOW, I WANT THE GENERAL RULE TO BE THAT
 2      YOU DON'T SHOW ANYTHING TO THE JURY UNLESS I'VE ADMITTED IT.
 3          BUT WE'RE TALKING ABOUT EMAILS AND THINGS LIKE THAT HERE
 4      SO THAT'S PROBABLY -- THAT MAY BE LESS OF A CONCERN.  AND IF
 5      THERE IS A DOCUMENT THAT'S OF CONCERN, THEN YOU CAN RAISE THAT
 6      ONE WITH ME MORE SPECIFICALLY AND I CAN DEAL WITH THAT
 7      INDIVIDUAL DOCUMENT.
 8          BUT I STILL THINK IF THE -- THERE ARE THESE THREE
 9      CATEGORIES, IT WILL BE -- YOU KNOW, WHEN I GET YOUR INDEXES
10      BACK, IF YOU WANT TO HAVE A LEGEND WITH THE THREE CATEGORIES
11      SO I QUICKLY KNOW THAT, YOU KNOW, THERE WAS NO OBJECTION BUT
12      YOU DIDN'T -- YOU WEREN'T WILLING TO STIPULATE YET,
13      ANYTHING -- ANY PREINFORMATION WILL HELP ME MAKE RULINGS MORE
14      QUICKLY DURING THE COURSE OF THE TRIAL.
15              MR. ISAACSON:  ALL RIGHT.
16              MR. COUGHLIN:  WE'LL --
17              THE COURT:  I STILL THINK THE FIRST SOLUTION MAY BE
18      THE --
19              MR. ISAACSON:  AND THIS IS REALLY ABOUT NOW 40 TO
20      70 DOCUMENTS ABOVE THE 370 OR SO THAT WE'VE AGREED TO, IT
21      WOULD BE HELPFUL TO GET THOSE IN ADVANCE BECAUSE WE MAY BE
22      ABLE TO QUICKLY --
23                  (SIMULTANEOUS COLLOQUY.)
24              MR. COUGHLIN:  WE'LL TRY TO DO IT TONIGHT.  WE'LL DO
25      IT IN A COUPLE HOURS.
```

```
 1              THE COURT:  OKAY.
 2              MR. COUGHLIN:  I KNOW EXACTLY WHAT THE DOCUMENTS AT
 3   ISSUE ARE.  AND WE CAN DO THAT.
 4         I'M GOING TO MAKE A -- I APPRECIATE ALL THE ACCOMMODATION
 5   YOU'VE DONE FOR US.  I'M SUPPOSED TO -- I'LL BE IN TAHOE ON
 6   FRIDAY MORNING WITH MR. RIEGAL, JUST FINISHING UP THE PREP.
 7   AND SO COULD WE -- IS THERE ANOTHER DAY, MONDAY OR TUESDAY,
 8   THAT YOU HAVE AVAILABLE?  I'LL BE HERE FRIDAY MORNING.
 9              THE COURT:  I COULD DO IT FRIDAY AFTERNOON, BUT
10   MONDAY OR TUESDAY ARE NOT AVAILABLE.
11              MR. COUGHLIN:  OH, FRIDAY AFTERNOON MIGHT WORK.
12              MR. ISAACSON:  AND MAYBE --
13              MR. COUGHLIN:  UNLESS YOU'RE FLYING.
14              MR. ISAACSON:  MAYBE WE CAN MOOT THE ISSUE.  WE'LL
15   WORK ON THAT.
16              THE COURT:  WE COULD HAVE A CONFERENCE CALL ON MONDAY
17   OR TUESDAY BUT --
18              MR. COUGHLIN:  I'D RATHER DO IT IN PERSON.  I THINK
19   YOU'VE GOT TO SEE THE DOCUMENTS.  IF THEY'RE -- HOPEFULLY, I
20   THINK THAT WITH YOUR GUIDANCE WE'VE BEEN ABLE TO WORK THROUGH
21   A LOT OF THESE ISSUES, AND HOPEFULLY WE'LL GET RID OF THESE.
22              THE COURT:  OKAY.  ANYTHING -- ANYTHING ELSE THEN?
23   DO WE WANT TO JUST PUT A PLACEHOLDER ON THE CALENDAR FOR
24   FRIDAY?  BECAUSE YOU STILL HAVE THE PHYSICAL EXHIBITS TO DEAL
25   WITH.  AND HAS THERE -- HAVE YOU ALREADY EXCHANGED ALL OF YOUR
```

```
1   OPENING SLIDES?  THERE ARE NO OBJECTIONS THAT I HAVE TO DEAL

2   WITH IN ADVANCE?

3         MR. ISAACSON:  WE'VE AGREED ON A DATE TO EXCHANGE

4   THOSE WITHIN A COUPLE DAYS BEFORE THE OPENING.  I DON'T RECALL

5   WHAT IT IS, BUT WE HAVE NOT EXCHANGED THEM AT THIS POINT.

6         THE COURT:  WHAT'S THE DATE OF EXCHANGE?

7         MS. SWEENEY:  I THINK IT'S 48 HOURS.

8         MR. ISAACSON:  YEAH, DECEMBER 1ST.

9         MR. COUGHLIN:  DECEMBER 1ST FOR THE OPENING.

10        THE COURT:  WELL, THAT'S NOT 48 HOURS.  THAT'S 24

11  HOURS.

12        MR. COUGHLIN:  WE'LL GIVE THEM THE -- WE'LL MAKE SURE

13  IT'S 48 HOURS AHEAD OF TIME.  I THINK EVERYBODY'S WORKING

14  THROUGH THE WEEKENDS.

15        MR. ISAACSON:  I THINK THAT'S FAIR TO SAY.

16        THE COURT:  OKAY.  DO YOU WANT TO GET ON THE CALENDAR

17  FOR THE 1ST?  I WAS NOT GOING TO PUT ANYTHING ON THE CALENDAR

18  FOR THE 1ST.

19        MR. COUGHLIN:  I THINK WE SHOULD BE ON THE CALENDAR

20  FOR THE 1ST JUST IN CASE THERE'S SOMETHING.

21        THE COURT:  MR. ISAACSON, WHEN ARE YOU FLYING?

22        MR. ISAACSON:  OH, I'LL BE HERE.  I'LL BE HERE BEFORE

23  THE 1ST.

24        THE COURT:  OKAY.  WELL, I HAVE A 2:00 O'CLOCK

25  CALENDAR.  SO ANYTIME BEFORE MY 2:00 O'CLOCK CALENDAR WORKS.
```

```
1    WHAT TIME IS BEST FOR YOU GUYS?  FIRST THING?

2            MR. COUGHLIN:  FIRST THING.

3            MR. ISAACSON:  FIRST THING.

4            THE COURT:  SO LET'S -- 9:00 A.M.?

5            MR. ISAACSON:  THAT'S FINE.

6            MR. COUGHLIN:  PERFECT.

7            THE COURT:  ALL RIGHT.  SO WE'LL PUT YOU ON THE

8    CALENDAR FOR 9:00 A.M. ON MONDAY, THE 1ST, AND THEN ON THE

9    14TH -- I MEAN, THE 21ST, I CAN PUT YOU ON THE CALENDAR AT

10   9:30.

11           MR. COUGHLIN:  ON THE 21ST?

12           THE COURT:  ON THE 21ST.

13           MR. COUGHLIN:  IN THE MORNING, 9:30 IN THE MORNING?

14   WE'LL TAKE IT.

15           MR. ISAACSON:  FRIDAY?  YES.

16           THE COURT:  OKAY.

17      ALL RIGHT.  ANYTHING ELSE FOR TODAY?  NO?

18      HEARING NONE, GREAT.  WELL, WE'RE GOING TO TRIAL, HAVING

19   SOME FUN.

20           MR. COUGHLIN:  THANK YOU, YOUR HONOR.

21           THE COURT:  WE'RE ADJOURNED.

22           (PROCEEDINGS WERE CONCLUDED AT 1:35 P.M.)

23                        --O0O--

24

25
```

**RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530**

1                      **CERTIFICATE OF REPORTER**

2

3              I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

4     FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

5     I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO,

6     NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS

7     HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR

8     OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

9

10                    _Raynee H. Mercado_

11              RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

12                    TUESDAY, NOVEMBER 18, 2014

13

14

15

16

17

18

19

20

21

22

23

24

25

**RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530**