1  William A. Isaacson (wisaacson@bsfllp.com)
   (Admitted *Pro Hac Vice*)
2  Karen L. Dunn (kdunn@bsfllp.com)
   (Admitted *Pro Hac Vice*)
3  Martha L. Goodman (mgoodman@bsfllp.com)
   (Admitted *Pro Hac Vice*)
4  BOIES, SCHILLER & FLEXNER LLP
   5301 Wisconsin Ave, NW
5  Washington, DC 20015
   Telephone:  (202) 237-2727
6  Facsimile:  (202) 237-6131

7  John F. Cove, Jr. #212213
   (jcove@bsfllp.com)
8  Kieran P. Ringgenberg #208600
   (kringgenberg@bsfllp.com)
9  Meredith R. Dearborn #268312
   (mdearborn@bsfllp.com)
10 BOIES, SCHILLER & FLEXNER LLP
   1999 Harrison Street, Suite 900
11 Oakland, CA 94612
   Telephone:  (510) 874-1000
12 Facsimile:  (510) 874-1460

13 David C. Kiernan #215335
   (dkiernan@jonesday.com)
14 JONES DAY
   555 California Street, 26th Floor
15 San Francisco, CA  94104
   Telephone:  (415) 626-3939
16 Facsimile:  (415) 875-5700

17 *Attorneys for Defendant Apple Inc.*

18                  UNITED STATES DISTRICT COURT

19                  NORTHERN DISTRICT OF CALIFORNIA

20                          OAKLAND DIVISION

| | |
|---|---|
| THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION | Lead Case No.  C 05-00037 YGR  [CLASS ACTION] |
| ——————————————— | **APPLE'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 10 TO EXCLUDE PHYSICAL EXHIBITS** |
| This Document Relates To: ALL ACTIONS | Date:     December 1, 2014  Time:    9:00 a.m.  Place:   Courtroom 1, 4th Floor  Judge:   Honorable Yvonne Gonzalez Rogers |

1  Apple opposes Plaintiffs' motion to exclude Apple iPods from evidence. Apple will seek
2  to admit into evidence the following iPods: TX 2743-K (classic 4G), TX 2712-K (classic 6G), TX
3  2715-A (nano 2G), TX 2716-K (nano 3G), TX 2720-A (touch 1G), and TX 2845 (classic 7G).

4  **I.    iPods Are Relevant.**

5  Plaintiffs' motion ignores that, in order to prevail on their claims against Apple, they must
6  prove antitrust injury, *i.e.*, that the alleged anticompetitive conduct caused Apple to charge higher
7  prices for iPods. Plaintiffs' argument that iPods are not relevant to whether the use of keybag and
8  database integrity checks was anticompetitive ignores the other issues the jury must decide at
9  trial. Apple does not offer the iPods for a purpose related to the integrity checks, but instead as to
10 causation and to show that the software updates in 7.0 & 7.4 were genuine product improvements.

11 For example, updates to iTunes 7.0 included improved resolution for videos and Apple's
12 Cover Flow (a graphical user interface), features that can be best observed by examining an iPod
13 for which Plaintiffs claim damages and thus will aid the jury in determining whether the updates
14 were genuine product improvements. Ex. 11 (TX 2423).[1] iPods are also relevant to show iPod
15 features that Dr. Noll did not account for in his regression, like display size and resolution. Ex.
16 12 (TX 2669). An earlier iPod model will likewise aid the jury in determining whether Plaintiffs
17 have proved that the cause of allegedly higher iPod prices was Apple's alleged anticompetitive
18 conduct, not some other factor. *Compare* Ex. 5 (TX 2743) *with* Ex. 6 (TX 2712).

19 **II.   The Apple Products Are Properly Authenticated.**

20 Plaintiffs ignore authority from this District holding that devices bearing a manufacturer's
21 logo or trade inscription are self-authenticating under Rule 902(7).[2] *ACCO Brands, Inc. v. PC*
22 *Guardian Anti-Theft Products, Inc.*, 592 F. Supp. 2d 1208 (N.D. Cal. 2008), ends the
23 authentication inquiry. There, the defendant purchased three *Apple* computers called Macintosh
24 Portables on eBay. *Id.* at 1218. Like Plaintiffs here, the plaintiff in *ACCO Brands* argued that the

---

[1] All references to Exhibits are to Exhibits to the Declaration of Suzanne E. Jaffe filed herewith.

[2] This rule provides that evidence of an "inscription, sign, tag, or label purporting to have been affixed in the course of business and indicating origin, ownership, or control" is self-authenticating and "require[s] no extrinsic evidence of authenticity." FRE 902(7).

1

APPLE'S OPP. TO PLS.' MIL 10                                              No. C 05-00037 YGR

Apple products were inadmissible because they were unauthenticated. *Id.* The court rejected the plaintiff's argument and held that the Apple products were self-authenticating under Rule 902(7) "because they are inscribed with the Macintosh Portable trade name." *Id.* at 1219; *see also Tal v. McGann*, No. 88 CIV. 7678 (JSM), 1991 WL 113776, at *2 n.3 (S.D.N.Y. June 17, 1991) (valium pills with a "distinctly recognizable . . . inscription affixed to each pill" self-authenticating). iPods that Apple seeks to introduce are inscribed with the Apple logo and iPod trade name, and are therefore self-authenticating. *See, e.g.*, Ex. 7 (TX 2715-A), Ex. 5 (TX 2743-K). iPods also self-authenticate when they are turned on. *See, e.g.*, Ex. 7 (TX 2715-A displaying "© 2001-2007 Apple Inc. All rights reserved. Apple.").

Even if iPods were not self-authenticating, Apple employees' declarations authenticate them. Rule 901(a) requires only "evidence sufficient to support a finding that the item is what the proponent claims it is." FRE 901(a); *see also Orr v. Bank of Am.*, *NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Once "there is prima facie evidence of genuineness, the evidence is admitted, and the trier of fact makes its own determination of the evidence's authenticity and weight." *Orr*, 285 F.3d at 773 n.6. An Apple employee with knowledge of the routine business practices of AppleCare has sworn under penalty of perjury that AppleCare, Apple's product and customer support service, keeps authentic warranty replacement iPod service models in the normal course of business. Ex. 1 ¶¶ 1, 9 (O'Neil Decl.). Similarly, two Apple employees have personally confirmed that iPods Dr. Kelly relied on in preparation of his expert report are authentic iPods and are running authentic Apple firmware. Exs. 2 and 4 (Carvalho and Sorbi Decls.).

Plaintiffs also do not support (with citation or argument) their contention that iPods must be excluded under Rule 701. Expert testimony is not required to authenticate these devices. *United States v. Whitaker*, 127 F.3d 595, 601 (7th Cir. 1997) (computer files properly authenticated where FBI agent testifies he was present when files were retrieved by installing a program on defendant's computer); *United States v. Berringer*, 601 F. Supp. 2d 976, 980 (N.D. Ohio 2008) (no expert testimony required to authenticate files obtained from defendant's computer).

**III. Any Chain-Of-Custody Issues Go To Weight, Not Admissibility.**

In an attempt to distract the Court from admitting relevant evidence, Plaintiffs suggest that Apple must present a complete chain of custody starting with the moment iPods were manufactured abroad; with whom they crossed the high seas; when and by whom they were sent to retail stores or to AppleCare; how they were maintained and handled in such stores or by AppleCare; how they were used by a previous owner; when and how they were listed on eBay, and more. Such gaps in the chain of custody go "to the weight of this evidence, not its admissibility," *ACCO Brands*, 592 F. Supp. 2d at 1219 (that Mac Portables were purchased from eBay goes to weight, not admissibility), especially in civil cases, *Gov't Suppliers Consolid. Servs., Inc. v. Bayh*, 753 F. Supp. 739, 772 n.40 (S.D. Ind. 1990) (chain-of-custody standard is "relaxed" in civil cases).

Apple has proffered an adequate chain of custody. After obtaining the iPods from AppleCare, where authentic iPods are kept in the normal course of business, Apple provided them to outside counsel, who synced a single song to the iPods that was purchased from the iTunes Store using iTunes, precisely as the iPod + iTunes + iTunes Store integrated ecosystem is designed to operate. Jaffe Decl. ¶¶ 7-12. As to Dr. Kelly's iPods, the chain of custody is also more than adequate. These iPods were purchased on eBay (save for one); relied on in Dr. Kelly's expert reports; restored to factory settings prior to being shipped to outside counsel; shipped to Apple's HQ for verification; so verified; and returned to outside counsel, who restored them and synced the same song to all of the iPods. *Id.* ¶¶ 6, 11-12; *see also In re Exxon Valdez*, 270 F.3d 1215, 1248-49 (9th Cir. 2001) (admitting blood samples despite "remarkable mishandlings" in chain of custody; chain "was good enough so that reasonable jurors could conclude" evidence was what it purported to be); *CTS Corp. v. Piher Int'l Corp.*, 527 F.2d 95, 104 (7th Cir. 1975) (improper to exclude evidence where record indicated possibility that the evidence "was mislabeled, or confused with another device when it was in the custody of Motorola's patent department").

The one chain-of-custody case Plaintiffs cite—a habeas case in which a relaxed chain of custody did not apply—also explains that "when it is the barest speculation that there was

3

tampering, it is proper to admit the evidence and let what doubt remains go to its weight." *Castaneda v. Cash*, No. C 11-4708 WHO (PR), 2013 WL 6155605, at *8 (N.D. Cal. Nov. 22, 2013) (noting that "flaws in the chain are often mere technical omissions that competent counsel may consider unworthy of extended debate"). Plaintiffs offer the barest of speculation that Apple's attorneys have altered iPods in a way that is different from how iPods are to be operated by the millions of consumers Plaintiffs represent (both in restoring and syncing iPods); their speculation as to other alterations is rank and irrelevant to the purpose for which iPods are offered. Dkt. 922 at 5 n.9. Nor does the fact that a lawyer is involved in the chain of custody change the outcome. *S.E.C. v. Conaway*, No. 2:05-CV-40263, 2009 WL 1313326, at *2 (E.D. Mich. May 11, 2009) (outside counsel's declaration part of chain of custody of evidence).

**IV.  iPods Should Not Be Excluded Under Rule 403.**

Plaintiffs have offered no principled argument for the iPods' exclusion under Rule 403. The six iPods Apple seeks to admit are not confusing, misleading, unduly prejudicial, or cumulative. *Wise v. State*, 719 N.E.2d 1192, 1196 (Ind. 1999) (videotape showing burning of replica of baby's room, with stuffed animals and baby shoes showing how "wonderful, warm and comfortable" the room looked when the child was killed, not unduly prejudicial); *Dutton v. State*, 452 A.2d 127, 138-39 (Del. 1982) (not cumulative to admit bone fragments of victim into evidence where photographs of fragments also in evidence). Further, to alleviate any potential confusion, Dr. Kelly can put his iPods back into the state they existed when he prepared his expert report and a non-attorney can restore and sync a song on iPods from AppleCare that was available during the class period,[3] though such efforts are not required under the law.[4] *Kyles v. Black & Decker Mfg. Co.*, 709 F.2d 620, 621 (8th Cir. 1983) (affirming introduction of similar, but not identical, physical evidence to that at issue). Any potential confusion can also be cured with a limiting instruction. *United States v. Aldaco*, 201 F.3d 979, 986-87 (7th Cir. 2000).

---

[3] That the song Apple's counsel synced to iPods was not available during the class period is irrelevant because the jurors will not be able to listen to the song.

[4] Plaintiffs' citation to *Grotemeyer v. Hickman*, 393 F.3d 871, 878 (9th Cir. 2004) is inapposite; it stands for the irrelevant proposition that jurors cannot conduct out-of-court experiments while on a weekend recess.

| | |
|---|---|
| Date: November 25, 2014 | Respectfully submitted, |
| | BOIES, SCHILLER & FLEXNER LLP |
| | By: */s/ William A. Isaacson*_____ |
| | *Attorneys for Defendant Apple Inc.* |