ROBBINS GELLER RUDMAN
  & DOWD LLP
BONNY E. SWEENEY (176174)
ALEXANDRA S. BERNAY (211068)
CARMEN A. MEDICI (248417)
JENNIFER N. CARINGAL (286197)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: 619/231-1058
619/231-7423 (fax)
bonnys@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com
jcaringal@rgrdlaw.com
       – and –
PATRICK J. COUGHLIN (111070)
STEVEN M. JODLOWSKI (239074)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone: 415/288-4545
415/288-4534 (fax)
patc@rgrdlaw.com
sjodlowski@rgrdlaw.com

Class Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTITRUST LITIGATION | Lead Case No. C-05-00037-YGR |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(h)(3), OR RULE 50 |
| ALL ACTIONS. | |
| | Date: TBD<br>Time: TBD<br>Courtroom: 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. LEGAL ARGUMENT............................................................................................................1

    A. Apple's Rule 12 Attack Is Meritless........................................................................1

    B. Ms. Rosen's Trial Testimony Establishes Her Article III Standing ........................4

    C. Ms. Rosen Has Standing Even as to Her September 2006 iPod 5th Generation ("iPod 5th Gen.") Purchase................................................................6

    D. Even if Ms. Rosen's Claims Were Mooted by Apple's Change in Position as to the Affected iPods, She Remains an Adequate Representative of the Certified Class..........................................................................................................7

    E. Even if the Named Plaintiff's Claims Were Mooted, the Class Claims Remain and a Substitute Class Representative Should Be Appointed ....................8

III. CONCLUSION.....................................................................................................................11

# TABLE OF AUTHORITIES

Page

**CASES**

*Aguilar v. Boulder Brands, Inc.*,
   No. 3:12-cv-01862-BTM-BGS, 2014 U.S. Dist. LEXIS 122822
   (S.D. Cal. Sept. 2, 2014) ........................................................................................................... 11

*Association of Data Processing Service Organizations v. Camp*,
   397 U.S. 150 (1970) ................................................................................................................... 3

*Bates v. United Parcel Service, Inc.*,
   511 F.3d 974 (9th Cir. 2007) ........................................................................................ 6, 8, 10, 11

*Binta B. ex rel. S.A. v. Gordon*,
   710 F.3d 608 (6th Cir. 2013) ...................................................................................................... 8

*Cal Cartage Co., Inc. v. United States*,
   721 F.2d 1199 (9th Cir. 1983) .................................................................................................... 4

*Darley Leone Mart, Inc. v. Bechtel*,
   No. 8K-JC-78, 1982 Del. Super. LEXIS 781
   (Del. Super. Mar. 19, 1982) ....................................................................................................... 8

*E. Texas Motor Freight Sys., Inc. v. Rodriguez*,
   431 U.S. 395 (1977) ................................................................................................................. 10

*Everett v. MCI, Inc.*,
   No. 05-2122-PHX-ROS, 2006 U.S. Dist. LEXIS 71871
   (D. Ariz. Sept. 29, 2006) ............................................................................................................ 2

*Franks v. Bowman Transp. Co., Inc.*,
   424 U.S. 747 (1976) ................................................................................................................... 7

*Frederic G. Krapf & Son, Inc. v. Gorson*,
   243 A.2d 713 (Del. 1968) .......................................................................................................... 9

*Fulfillment Servs. Inc. v. United Parcel Serv., Inc.*,
   528 F.3d 614 (9th Cir. 2008) ...................................................................................................... 4

*In re ATM Fee Antitrust Litig.*,
   686 F.3d 741 (9th Cir. 2012) ...................................................................................................... 3

*In re Telectronics Pacing Sys., Inc.*,
   172 F.R.D. 271 (S.D. Ohio 1997) ............................................................................................... 9

**Page**

*In re TFT-LCD Antitrust Litig.*,
  No. M 07-1827 SI, MDL No. 1827, 2009 U.S. Dist. LEXIS 17792
  (N.D. Cal. Mar. 3, 2009) ..................................................................................................9

*In re Urethane Antitrust Litig.*,
  768 F.3d 1245 (10th Cir. 2014) ........................................................................................7

*Kirola v. City and County of San Francisco*,
  No. C 07-3685 SBA, 2014 U.S. Dist. LEXIS 60919
  (N.D. Cal. Apr. 29, 2014) .................................................................................................10

*Krechman v. Cnty. of Riverside*,
  723 F.3d 1104 (9th Cir. 2013) ..........................................................................................5

*Kremens v. Bartley*,
  431 U.S. 119 (1977) ..........................................................................................................10

*Kuahulu v. Employers Ins. of Wausau*,
  557 F.2d 1334 (9th Cir. 1977) ..........................................................................................10

*Lidie v. State of Cal.*,
  478 F.2d 552 (9th Cir. 1973) ............................................................................................10

*Lierboe v. State Farm Mutual Auto. Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003) ....................................................................................9, 10

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..........................................................................................................6

*Lynch v. Baxley*,
  651 F.2d 387 (5th Cir. 1981) ............................................................................................10

*Morgan v. Laborers Pension Trust Fund*,
  81 F.R.D. 669 (N.D. Cal. 1979) .......................................................................................9

*Pitts v. Terrible Herbst, Inc.*,
  653 F.3d 1081 (9th Cir. 2011) ..........................................................................................7

*Preminger v. Peake*,
  552 F.3d 757 (9th Cir. 2008) ............................................................................................3

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000) ..........................................................................................................5

**Page**

*Rogers v. Paul*,
    382 U.S. 198 (1965) ................................................................................................................. 9

*Sosna v. Iowa,*
    419 U.S. 393 (1975) .............................................................................................................. 7, 8

*U.S. Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980) ................................................................................................................. 6

*Williams v. Boeing Co.*,
    No. C98-761, 2005 U.S. Dist. LEXIS 27491 (W.D. Wash. Nov. 4, 2005) ............................ 10

**STATUTES, RULES AND REGULATIONS**

Del. Gen. Corp. Code,
    §278 .......................................................................................................................................... 8
    §312(a) ..................................................................................................................................... 9
    §312 (c) .................................................................................................................................... 9
    §312 (e) .................................................................................................................................... 9

§61.075(6)(a)1.a., Fla. Stat. (2008) ................................................................................................. 2

Federal Rules of Civil Procedure
    Rule 12 ..................................................................................................................................... 1
    Rule 23(a)(4) ............................................................................................................................ 8
    Rule 23(f) ................................................................................................................................. 9
    Rule 50 ..................................................................................................................................... 5
    Rule 50(a) ................................................................................................................................. 5

**SECONDARY AUTHORITIES**

*Manual for Complex Litigation* (Fourth) (2007)
    §21.26 ....................................................................................................................................... 9

## I. INTRODUCTION

Apple's motion to dismiss the claims for lack of Article III standing is meritless. Apple's entire motion hangs on a single document – emblazoned with the signature of Plaintiff Marianna Rosen ("Ms. Rosen") and in Apple's possession since September 11, 2008 – that confirms rather than refutes that Ms. Rosen purchased two iPod products during the Class Period with KVC and DVC. Apple's mid-trial bid to dismiss the Class members' claims is likewise baseless, even if Apple's argument about Ms. Rosen's iPod purchases were true (and it is not).

## II. LEGAL ARGUMENT

### A. Apple's Rule 12 Attack Is Meritless

In its Rule 12 motion Apple belatedly disputes Ms. Rosen's trial testimony based on a single, previously undisclosed document that it retrieved from its own records – a document which, ironically, *confirms* rather than refutes her continuing standing to assert claims on behalf of herself and the Certified Class.

Specifically, post-testimony investigation[1] has confirmed that Ms. Rosen in fact purchased for her own personal use two indisputably affected iPods directly from the Apple store at the Short Hills, New Jersey mall on September 11, 2008 (collectively, "the 2008 iPods"), squarely within the Class Period. Declaration of Marianna Rosen, dated December 6, 2014 ("Rosen Decl."), filed concurrently, ¶¶8, 13. The 2008 iPods, bearing serial numbers YM8361TK3QX and 1A836F5F201, are both models in which KVC and DVC were admittedly installed. ECF 813-6 (Supplemental Decl. of Farrugia) at 2-3. The Apple store contacted by Ms. Rosen confirmed her purchases on that date and e-mailed her a copy of her receipt. Rosen Decl., ¶¶6-7. A true and accurate copy of the receipt sent by Apple is attached as Rosen Decl., Ex. 2.

---

[1] Following Ms. Rosen's trial testimony, Apple requested and Plaintiffs voluntarily produced the serial number to the iPod she brought with her to trial. Using that serial number, Apple in less than 24 hours produced an internal document in Ms. Rosen's name from the Short Hills Mall Apple store – demonstrating that Apple has ready access to Plaintiffs' purchase records. *See also* Declaration of Alexandra S. Bernay, filed concurrently ("Bernay Decl."), Ex. 1, Trial Transcript at 637:2-7 ("The Court: So what were you doing in 2011, four years ago, three years ago, to investigate this particular issue that you apparently resolved in less than 24 hours? Mr. Isaacson: I don't have an answer for that, your honor. The Court: Well, that's a problem.").

1    Upon delivery of Ms. Rosen's receipt for the 2008 iPods, Apple for the first time disclosed its own "Internal Reprint Copy" of the receipt, which Apple says shows that the 2008 iPods were supposedly not purchased by Ms. Rosen but "instead were ordered by her former husband's law firm, The Rosen Law Firm." ECF 955 at 6:27-28. This is at odds with the facts.

Ms. Rosen purchased the 2008 iPods for her own use. Rosen Decl., ¶¶8, 13. She was not asked or directed by anyone to buy the iPods. *Id.*, ¶9. She gave one iPod to her son, as gift from her for his personal use; it has never been used for any other purpose. *Id.*, ¶8. She kept the other iPod for her own personal use; it has never been used for any other purpose. *Id.* Ms. Rosen's iPod is reflected on her own personal iTunes account. *Id.*; Ex. 1 attached hereto. In fact, it was by reviewing her iTunes account (information in Apple's hands), that Ms. Rosen was able to see the serial number for the 2008 iPod Touch, which is labeled as "marianna Rosen's iPod" in her iTunes account. *Id.*, ¶5.

Ms. Rosen paid for the 2008 iPods with a credit card that she frequently used during the time for personal purchases. Rosen Decl., ¶¶10, 12. The credit card had her name on it and she was authorized to use it for such purposes. *Id.* This is true even if the card also had the name of the law firm that her husband, Laurence Rosen, owned at the time and at which she worked as a bookkeeper and office manager, known as "The Rosen Law Firm, PA." *Id.* The Rosen Law Firm ("the law firm") is a Florida Professional Association, the stock of which was at the time 100% held as marital property of both Ms. Rosen and Mr. Rosen. *Id.*, ¶11; *see generally* §61.075(6)(a)1.a., Fla. Stat. (2008) (marital assets include, among other things, "[a]ssets acquired . . . during the marriage, individually by either spouse or jointly by them"). Because the law firm was solely owned by Mr. Rosen and thus the Rosens' marital community, Ms. Rosen was named on and authorized to use, and frequently did use, the firm credit card for personal purchases. *Id.*; *see also Everett v. MCI, Inc.*, No. 05-2122-PHX-ROS, 2006 U.S. Dist. LEXIS 71871, at *6 n.4 (D. Ariz. Sept. 29, 2006) (finding that wife had standing to challenge overcharges on checking account she shared with her husband and was authorized to use). Ms. Rosen's purchases of the two 2008 iPods was not done at the direction of the law firm, nor were those iPods property of the law firm. *Id.*

PLAINTIFFS' OPP TO APPLE INC.'S NOM & MTD FOR LACK OF SUBJECT-MATTER
JURISDICTION PURSUANT TO FRCP 12(b)(1) & 12(h)(3), OR RULE 50 - C-05-00037-YGR         - 2 -

1    Ms. Rosen's declaration shows just how grossly Apple is elevating form over substance to
2 argue – based only on its own "internal reprint" – that Ms. Rosen was not the actual purchaser of the
3 2008 iPods from Apple.  Apple's entire (one paragraph) argument that "the evidence does not permit
4 the reasonable conclusion that [Ms. Rosen] purchased one of the allegedly affected iPods" hinges
5 *solely* on the reference to "The Rosen Law Firm" on the document.  Declaration of Tim O'Neil (ECF
6 956), ¶9 and Exhibit 2.  Mr. O'Neil in his declaration fails, however, to explain how or why the
7 words "The Rosen Law Firm" appear on the document.  *Id.*
8    At deposition, Mr. O'Neil ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
9 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
10 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
11 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
12 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
13 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
14 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
15 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
16 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
17 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
18 ■■■■■■■■■■■■■■■
19    Apple has failed to raise any genuine issue of fact requiring the Court to adjudicate Ms.
20 Rosen's continuing standing to assert her claims and represent the certified Class.  The constitutional
21 requirements of standing are satisfied if "the plaintiff alleges that the challenged action has caused
22 him injury-in-fact, economic or otherwise." *Association of Data Processing Service Organizations*
23 *v. Camp*, 397 U.S. 150, 152 (1970).  The contours of the injury-in-fact requirement are very
24 generous: once the plaintiff has alleged a specific, "identifiable trifle" of injury that is fairly
25 traceable to the defendant's conduct, the requirement of a constitutionally adequate stake in the
26 controversy is satisfied.  *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008) ("The injury may be
27 minimal.").  Plaintiffs are, therefore, entitled to summary adjudication by the Court in their favor
28 with respect to Ms. Rosen's standing, even before considering her unimpeached trial testimony.  *In*

*re ATM Fee Antitrust Litig.*, 686 F.3d 741, 747-48 (9th Cir. 2012) (standing is a question of law for the court to decide, and the court need not conduct evidentiary inquiry absent a genuine issue of material fact).[2]

**B.    Ms. Rosen's Trial Testimony Establishes Her Article III Standing**

Ms. Rosen's trial testimony unequivocally establishes her Article III standing. She testified that she purchased at least two affected iPods during the Class Period: (1) an iPod nano, and (2) an iPod touch:

> Q.    And you understand that you're here today to discuss some issues related to your purchases of iPods; is that right?
>
> A.    Right.
>
> Q.    And have you ever owned an iPod?
>
> A.    Yes.
>
> Q.    Have you – when did you purchase your first iPod?
>
> A.    I believe that I purchased my first iPod in February, March of 2004. And I bought another iPod, it was iPod nano for my little sister as a gift for her graduation I think in July of the same year. Then I bought, I guess it's next generation iPod, a black iPod in September 2006. I bought an iPod nano. I think it's called nano, the green kind of slick narrow iPod which is smaller than the ones prior, in 2007, in the fall of 2007. And the last iPod I bought was the iPod touch. And I think I bought it as a Hanukkah gift for my son in December of '08.
>
> Q.    And did you purchase all of those iPods at an Apple store?
>
> A.    I think, you know, I don't remember a hundred percent, but I think it's a very good assumption that I bought it at the Apple store in Short Hills Mall, which is not far from my house. That's where I bought most of my Apple products.

Bernay Decl., Ex. 4, Trial Transcript at 583:10-584:10.[3]

---

[2]    Where the plaintiff is asserting a federal private cause of action,"[t]he injury required by Article III can exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Fulfillment Servs. Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 618-19 (9th Cir. 2008) (citation omitted); *Cal Cartage Co., Inc. v. United State*s, 721 F.2d 1199, 1203 (9th Cir. 1983) (holding that once it is established that a private cause of action exists, the inquiry shifts from whether Article III standing exists to whether prudential standing concerns are satisfied). Apple challenges only Article III standing in its motion.

[3]    Ms. Rosen's trial testimony also establishes her purchase of an iPod 5th Gen. in September 2006, discussed *infra*.

During cross-examination Apple chose **not** to question Ms. Rosen on any perceived inconsistencies with past interrogatory answers or deposition testimony. Bernay Decl., Ex. 4, Trial Transcript at 593:4-611:13. Nor did Apple use any of its own apparently extensive internal records. *Id.* In short, Apple elicited no trial testimony from Ms. Rosen at all undermining the accuracy of her testimony regarding the nature and timing of her purchases.

Beyond her iPod purchases, Ms. Rosen also testified as to the adverse economic lock-in which effectively forced her to continue to purchase iPods rather than other mp3 players:

> Q. Why have you purchased so many Apple products?
>
> A. Well, you know, I like Apple products. I think they are good products. I also, after I bought my first iPod, which was in 2004, I immediately proceeded in building the library which consisted of a good percentage of songs that I bought from iTunes store, which came together with the software. And also copying my cd library. So once I build that library, I sort of had to use iPod products because I couldn't use any others, mp3 players. So I was just using my library and loading it there.

Bernay Decl., Ex. 4, Trial Transcript at 584:18-585:3; *see also, id.* at 590:13-18 ("So in that, I was in a way a little bit forced to buy certain products. Even if I would have chosen Apple at the end, I wanted to be my free choice not because I already invested time and money in the library. I felt like I [was] stuck.").

There is, then, absolutely nothing in the current trial record that precludes the jury from fully crediting Ms. Rosen's testimony that she purchased the specified iPods from Apple and was otherwise economically injured during the Class Period, which in turn necessarily precludes Apple's Rule 50 motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000); *Krechman v. Cnty. of Riverside*, 723 F.3d 1104, 1109 (9th Cir. 2013) (district court can grant a Rule 50(a) motion for judgment as a matter of law only if there is "'no legally sufficient basis for a reasonable jury to find for that party on that issue'") (citation omitted). "[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150; *id.* at 149-50 (the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor).

The Court thus cannot under Rule 50 weigh the credibility of trial testimony – especially where, as here, it is stands **uncontroverted**. *See, e.g.*, *Krechman*, 723 F.3d at 1110-11 (reversing

1  grant of motion for judgment as a matter of law). Under the present record, there is an ample
2  evidentiary basis for the jury to find that Ms. Rosen suffered economic loss during the Class Period
3  fairly traceable to Apple's alleged misconduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61
4  (1992) (alleged overcharges are a concrete, particularized, and actual injury-in-fact).

### C. Ms. Rosen Has Standing Even as to Her September 2006 iPod 5th Generation ("iPod 5th Gen.") Purchase

If the named plaintiff's claim remains a live controversy at the time of class certification, the case will not become moot even if the named plaintiff's personal claim later expires. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398-99 (1980). Standing and mootness are two sides of the same coin. *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 986 (9th Cir. 2007) ("[M]ootness is described as 'the doctrine of standing set in a time frame.'").

Here, Apple does not in its motion dispute Ms. Rosen's trial testimony regarding her September 2006 purchase of the iPod 5th Gen. within the Class Period, except to argue that the iPod 5th Gen. does not include the KVC and DVC challenged by Plaintiffs. But at a minimum her purchase of the iPod 5th Gen. gave Ms. Rosen standing to assert a claim based on Apple's prior sworn testimony regarding affected models.

The Court's Order certifying the Class was premised on the list of iPods identified by Apple's Augustin Farrugia as affected by the changes in Updates 7.0 and 7.4. Bernay Decl, ¶3. The Class certified by the Court: (a) defined a Class Period of September 12 , 2006 through March 31, 2009 ("the Class Period"); and (b) defined class membership in terms of the specific models of iPods sold during the Class Period, ***including specifically the iPod 5th Gen.*** ("the Class Definition"). *Id.*, ¶6; *see also*, ECF 694 at 9 ("Class Notice"). The Class Notice was issued to more than 8 million consumers in the spring of 2012. Bernay Decl., ¶7.

On July 2, 2013, after Class Notice and after Plaintiffs submitted Professor Roger Noll's liability and damages report, Apple submitted a corrected declaration from Augustin Farrugia in which he changed his previous testimony identifying the affected iPods. Bernay Decl., ¶10. Plaintiffs subsequently asked Apple to stipulate to revise the Class Definition to exclude the purportedly unaffected models. *Id.*, ¶11. Apple refused to do so. *Id.* Plaintiffs in the October 14,

1  2014 Joint Pre-Trial Conference Statement acknowledged, therefore, that they only sought damages
2  for the Class members who purchased affected iPods.  ECF 823 at 1.

3        This chronology establishes two things.  First, Ms. Rosen had standing at the time of
4  certification of the Class even with respect to her uncontested purchase of the iPod 5th Gen.  She
5  remains a member of the Class as currently certified.

6        Second, it is far too late for Apple to seek to alter the class definition.  Apple made a strategic
7  decision not to modify the class definition to align with Farrugia's changed testimony.  Presumably
8  Apple did so because it seeks to attack Plaintiffs' expert, Professor Roger G. Noll, at trial, and to
9  preserve any challenges to the certification of the Class.  It is therefore unavailing for Apple to argue
10 that the governing class definition may include Class members who purchased only unaffected
11 models.  Whatever the amount of damages awarded by the jury, Plaintiffs will engage in a post-
12 verdict allocation process among the certified Class as a whole, in which Apple has no standing to
13 participate or object.  *In re Urethane Antitrust Litig.,* 768 F.3d 1245, 1269 (10th Cir. 2014)
14 (defendant "has no interest in the method of distributing the aggregate damages award among class
15 members").

16     **D.**    **Even if Ms. Rosen's Claims Were Mooted by Apple's Change in Position as to the Affected iPods, She Remains an Adequate**
17           **Representative of the Certified Class**

18       Even if the Court were to find that Ms. Rosen's individual claims were moot, she remains a
19 proper and adequate representative of the Class claims, which were certified nearly 2 years ***before***
20 Apple's change in designation of the affected models.  Once a district court has certified a class,
21 mooting the putative class representative's claim will not moot the class action because, upon
22 certification, the class acquires a legal status separate from the interest asserted by the class
23 representative, such that an Article III controversy then exists between the named defendant and
24 every member of the certified class.  *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir.
25 2011) (citing *Sosna v. Iowa,* 419 U.S. 393 (1975)).

26       Apple in its brief tries to limit *Sosna* to instances in which the disputed issue is "capable of
27 repetition yet evading review" (ECF 955 at 11:25-12:10), but that argument has since long been
28 discredited.  *See Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 754 (1976).  Apple's cited cases

1  declining to apply the "capable of repetition" exception where a plaintiff never had standing at all
2  (ECF 955 at 11-12) are inapplicable here because (a) Plaintiffs do not rely on that exception and (b)
3  Ms. Rosen at the absolute minimum had standing through the date of Class certification.

4  Under *Sonsa*, after class certification the analysis shifts from whether the case is justiciable to
5  Rule 23(a)(4)'s fair and adequate representation requirement. Addressing this requirement, the
6  *Sonsa* Court concluded that even though the named plaintiff's personal claim may be moot, she still
7  adequately protected the interests of the class because it was "unlikely that segments of the class
8  [Sosna] represent[ed] would have interests conflicting with those she . . . sought to advance." 419
9  U.S. 393, 403 (1975). An appointed class representative may therefore continue to represent a
10 certified class even if her personal claims have become moot, at least until such time that there is
11 determination that representative is no longer adequate. *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d
12 608 (6th Cir. 2013). By traveling across the country and testifying at trial, as well as submitting to
13 invasive discovery of her music purchases, sitting for a day-long deposition and taking an active role
14 in the litigation, Ms. Rosen has demonstrated her adequacy as a class representative through her
15 unflagging willingness to serve the best interests of the Class.

16 **E.  Even if the Named Plaintiff's Claims Were Mooted, the Class Claims Remain and a Substitute Class Representative Should Be Appointed**
17
18 Finally, even if Ms. Rosen's claims were deemed moot, and even if Ms. Rosen were for some
19 reason deemed inadequate to continue as the representative of the Class, the appropriate remedy is to
20 a name substitute class representative. *Bates*, 511 F.3d at 986-88

21 Plaintiffs have numerous Class members who are prepared to step in and serve as class
22 representatives without delay. First, K&N Enterprises, Inc. ("K&N") is willing to serve as a class
23 representative. As the Court is aware, Plaintiffs believe that K&N has standing to bring claims
24 against Apple. *See Darley Leone Mart, Inc. v. Bechtel*, No. 8K-JC-78, 1982 Del. Super. LEXIS 781
25 (Del. Super. Mar. 19, 1982); *see also* Del. Gen. Corp. Code §278. Moreover, K&N is ready and
26 willing to revive for that purpose (curing the concern of the Court expressed in its earlier order (ECF
27
28

1  927))[4], and its owner Ken Riegel has:  (a) already been deposed by Apple; and (b) already testified at
2  trial.  Bernay Decl., ¶13.

3  Numerous other absent members of the Certified Class have likewise contacted Plaintiffs
4  expressing a readiness and willingness to serve as Class Representative.  Bernay Decl., ¶12.  To the
5  extent the Court deems Ms. Rosen an improper or inadequate class representative in any respect, the
6  only fair and equitable remedy is to substitute one or more additional class representatives.

7  A motion to add a class representative should be granted where the proposed new plaintiff is
8  a member of the class and seeks the same relief for all of the reasons offered by the original
9  plaintiffs.  *Rogers v. Paul*, 382 U.S. 198, 198-99 (1965).  Courts within the Ninth Circuit often allow
10 either substitution or addition of new class representatives.  *See, e.g.*, *In re TFT-LCD Antitrust Litig.*,
11 No. M 07-1827 SI, MDL No. 1827, 2009 U.S. Dist. LEXIS 17792, at *10 (N.D. Cal. Mar. 3, 2009);
12 *Morgan v. Laborers Pension Trust Fund*, 81 F.R.D. 669, 673-75 (N.D. Cal. 1979) (permitting
13 plaintiffs to add new class representatives).  "The court may permit intervention by a new
14 representative or may simply designate that person as a representative in the order granting class
15 certification."  *Manual for Complex Litigation* (Fourth) §21.26 (2007) (citing *In re Telectronics
16 Pacing Sys., Inc.*, 172 F.R.D. 271, 283 (S.D. Ohio 1997) (court named substitute new class
17 representative without formal intervention or joinder)).  Bernay Decl., Ex. 5.

18 This is not a case like *Lierboe v. State Farm Mutual Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th
19 Cir. 2003) where the named plaintiff "never had standing" and "never was a member of the class she
20 was named to represent."  There the Ninth Circuit, on an accepted Rule 23(f) interlocutory appeal of
21 class certification, dismissed a putative class case for lack of standing after it was determined, by
22 certified question to the state supreme court, that the plaintiff  ("Lierboe") had no claim "from the
23 outset of her litigation."   350 F.3d at 1023 n. 6.  But the Ninth Circuit simultaneously noted: "If
24 Lierboe initially had a viable . . . claim that later became moot, then our law in an appropriate case
25 would permit substituting proper class representatives to allow the suit to proceed."  *Id.* (citing

---

[4]  *See* Del. Gen. Corp. Code §312(a), (c) and (e) (revival of a "void" company is immediate and retroactive); *Frederic G. Krapf & Son, Inc. v. Gorson*, 243 A.2d 713 (Del. 1968).  There is absolutely no prejudice to Apple.

1  *Kuahulu v. Employers Ins. of Wausau*, 557 F.2d 1334, 1336-37 (9th Cir. 1977) ("If the district court
2  had certified appellant's class prior to appellant's own claim [ ] becoming moot, we would not
3  dismiss this appeal for mootness.  In such a case, remand to the district court would be appropriate in
4  order to determine whether a substitute representative would be available.")).  Like *Lierboe*, the
5  entire line of cases cited by Apple is premised on a finding that the plaintiff never had a viable claim
6  at the outset – a finding that cannot be made here.  *See, e.g.*, *Lidie v. State of Cal.*, 478 F.2d 552, 555
7  (9th Cir. 1973) (substitution denied "where the original plaintiffs were never qualified to represent
8  the class"); *Williams v. Boeing Co.*, No. C98-761, 2005 U.S. Dist. LEXIS 27491, at *32-*33 (W.D.
9  Wash. Nov. 4, 2005) (same; plaintiffs failed to allege actionable claims at the outset); *Kirola v. City*
10 *and County of San Francisco*, No. C 07-3685 SBA, 2014 U.S. Dist. LEXIS 60919, at *4 (N.D. Cal.
11 Apr. 29, 2014) (same; plaintiffs lacked standing to bring lawsuit in the first instance).

12       Even considering her uncontested iPod 5th Gen. purchase alone, Ms. Rosen had standing
13 when the operative complaint was filed and when the Class was certified, and she remains a member
14 of the Class as such to this very day.  But she furthermore unquestionably had (and has) standing
15 based on her purchase of the 2008 iPods, which place her squarely within the certified Class and
16 within Plaintiffs' expert damages analysis.

17       Apple's suggested course – that the Court dismiss the entire case rather than providing an
18 opportunity to substitute a new class representative – conflicts with the law of this Circuit.  As an *en*
19 *banc* panel of the Ninth Circuit observed in *Bates*, the Supreme Court has held it would be error for a
20 district court to dismiss class allegations where it had already certified a class and "only later had it
21 appeared that the named plaintiffs were not class members or were otherwise inappropriate class
22 representatives."  511 F.3d at 986 (citing and quoting *E. Texas Motor Freight Sys., Inc. v. Rodriguez*,
23 431 U.S. 395, 406 n.12 (1977)); *Kremens v. Bartley*, 431 U.S. 119 (1977) (the claims of the narrower
24 class remain "live," even after the contours of the class have changed or the class has been truncated
25 by intervening legislation); *Lynch v. Baxley*, 651 F.2d 387, 387-88 (5th Cir. 1981) (finding that the
26 district court committed reversible error in dismissing the class after it found that the class
27 representative lacked standing).  Even in the situation of a not-yet-certified class, the Ninth Circuit
28

1 calls for a flexible solution, not dismissal. *Aguilar v. Boulder Brands, Inc.*, No. 3:12-cv-01862-BTM-BGS, 2014 U.S. Dist. LEXIS 122822, at \*16-\*17 (S.D. Cal. Sept. 2, 2014).

The Ninth Circuit applied these principles in *Bates* when the named plaintiff's claim arguably became "moot" and "not redressable" after he signed a collective bargaining agreement that precluded him from benefitting from the relief he sought. 511 F.3d at 986. Nevertheless, drawing on *Sonsa* and other Supreme Court precedent, the Ninth Circuit held that the class had standing and should be permitted to pursue the certified claims. *Id*. at 987-88 (citing *Sonsa*). "Even if [the plaintiff's] claim later became moot or nonredressable, an identifiable member of the class . . . surely has standing" and can support the class claims. *Id*. at 987. Here, too, numerous members of the Class have purchased affected iPods and surely have standing.

## III.  CONCLUSION

For each and all the foregoing reasons, Apple's motion to dismiss for lack of subject matter jurisdiction and to decertify the Class is not well-taken and should be denied in its entirety.

DATED: December 6, 2014

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
BONNY E. SWEENEY
ALEXANDRA S. BERNAY
CARMEN A. MEDICI
JENNIFER N. CARINGAL

                s/ Bonny E. Sweeney
                BONNY E. SWEENEY

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN
STEVEN M. JODLOWSKI
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

Class Counsel for Plaintiffs

BONNETT, FAIRBOURN, FRIEDMAN
 & BALINT, P.C.
ANDREW S. FRIEDMAN
FRANCIS J. BALINT, JR.
ELAINE A. RYAN
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
602/274-1199 (fax)

THE KATRIEL LAW FIRM
ROY A. KATRIEL
1101 30th Street, N.W., Suite 500
Washington, DC  20007
Telephone:  202/625-4342
202/330-5593 (fax)

BRAUN LAW GROUP, P.C.
MICHAEL D. BRAUN
10680 West Pico Blvd., Suite 280
Los Angeles, CA  90064
Telephone:  310/836-6000
310/836-6010 (fax)

GLANCY BINKOW & GOLDBERG LLP
BRIAN P. MURRAY
122 East 42nd Street, Suite 2920
New York, NY  10168
Telephone:  212/382-2221
212/382-3944 (fax)

GLANCY BINKOW & GOLDBERG LLP
MICHAEL GOLDBERG
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)

Additional Counsel for Plaintiffs

PLAINTIFFS' OPP TO APPLE INC.'S NOM & MTD FOR LACK OF SUBJECT-MATTER
JURISDICTION PURSUANT TO FRCP 12(b)(1) & 12(h)(3), OR RULE 50 - C-05-00037-YGR             - 12 -

CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 6, 2014.

    s/ Bonny E. Sweeney
BONNY E. SWEENEY

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:          bonnys@rgrdlaw.com