ROBBINS GELLER RUDMAN
  & DOWD LLP
BONNY E. SWEENEY (176174)
ALEXANDRA S. BERNAY (211068)
CARMEN A. MEDICI (248417)
JENNIFER N. CARINGAL (286197)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
bonnys@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com
jcaringal@rgrdlaw.com
        – and –
PATRICK J. COUGHLIN (111070)
STEVEN M. JODLOWSKI (239074)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
patc@rgrdlaw.com
sjodlowski@rgrdlaw.com

Class Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTITRUST LITIGATION | Lead Case No. C-05-00037-YGR |
| | CLASS ACTION |
| This Document Relates To: | DECLARATION OF ALEXANDRA S. BERNAY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12 (h)(3), OR RULE 50 |
| ALL ACTIONS. | |

Date:        TBD
Time:        TBD
Courtroom:  1, 4th Floor
Judge:       Hon. Yvonne Gonzalez Rogers

989262_1

1    I, ALEXANDRA S. BERNAY, declare as follows:

2    1.    I am an attorney duly licensed to practice before all of the courts of the State of

3    California.  I am a member of the law firm of Robbins Geller Rudman & Dowd LLP, one of the

4    counsel of record for plaintiff in the above-entitled action.  I have personal knowledge of the matters

5    stated herein and, if called upon, I could and would competently testify thereto.

6    2.    I submit this declaration in support of Plaintiffs' Opposition to Apple Inc.'s Motion to

7    Dismiss for Lack of Subject-Matter Jurisdiction Pursuant to Federal Rules of Civil Procedure 12

8    (b)(1) and 12(h)(3), or Rule 50.

9    3.    At the time of class certification in 2011, Plaintiffs relied upon a list of iPod models

10    identified by Apple's Augustin Farrugia as models affected by the software and firmware updates

11    (the keybag verification code and the database verification code) in iTunes 7.0 and 7.4.

12    4.    The Court requested supplemental information regarding those models on June 22,

13    2011.

14    5.    The list of affected models included a number of types of iPods and various

15    generations within iPod type.  The list included iPod Classic models, iPod nanos, iPod touch models

16    and iPod shuffles.  The iPod Classic Fifth Generation was included on that list.

17    6.    After the Court certified the class and approved the list of models in the class period, I

18    worked with Apple's counsel and the class administrator, Rust Consulting Group, to effectuate a

19    notice plan.  The parties worked extensively on the notice plan, carefully crafting the language to be

20    used in mailed and publication notice as well as the case information that would appear on the case

21    website, www.ipodlawsuit.com.  That list of models remains available on the Court-approved site.

22    7.    The notice to the class took place in the spring of 2012, with more than 8 million

23    consumers and more than 500 resellers receiving direct notice.

24    8.    In March of 2013 I received a phone call from Apple's counsel informing me that Mr.

25    Farrugia had determined that the list of affected models Apple provided was incorrect.

26    9.    I later received an email from Apple's counsel which detailed this list of affected

27    models.  Because this was not an official statement from Apple, Plaintiffs requested a sworn

28    statement regarding which models were actually affected.

989262_1

BERNAY DECL ISO PLTFS' OPP TO APPLE'S MOTION TO DISMISS FOR LACK OF SUBJECT-
MATTER JURISDICTION PURS TO FRCP (b)(1) & 12 (h)(3), OR RULE 50 - C-05-00037-YGR        - 1 -

10.     On July 2, 2013, Augustin Farrugia submitted a supplemental declaration that provided a list of iPod models claimed to be affected by the software and firmware updates (the keybag verification code and the database verification code) in iTunes 7.0 and 7.4.

11.     In early September I wrote to Apple's counsel asking Apple to agree to revise the class definition to conform it to the list of affected models claimed in Mr. Farrugia's Supplemental Declaration. I followed up on this query a couple of days later. Apple's counsel informed me that he had passed the message on to Apple. I later learned that Apple's new counsel refused to agree to this revision.

12.     Since the beginning of this trial Plaintiffs' counsel have received a number of calls and emails from members of the certified class who have expressed an interest in serving as a class representative. I have had phone and email communication with several of these class members in the last two days.

13.     Ken Riegel, the owner of K& N Enterprises, Inc. has been deposed by Apple and has testified at trial. I understand that K&N Enterprises, Inc. is ready and willing to revive its corporate status to become an active corporate entity by filing a form with the Division of Corporations in Delaware.

14.     Attached are true and correct copies of the following exhibits:

Exhibit 1:     Relevant excerpts from the Trial Transcript of Proceedings, held December 4, 2014;

Exhibit 2:     Relevant excerpts from the deposition transcript of Timothy O'Neil, taken December 5, 2014;

Exhibit 3:     O'Neil Deposition Exhibit No. 4;

Exhibit 4:     Relevant excerpts from the Trial Transcript of Proceedings, held December 3, 2014; and

Exhibit 5:     Index from Trial Transcript of Proceedings, held December 2, 2014.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 6th day of December, 2014, at San Francisco, California.

_____
ALEXANDRA S. BERNAY

BERNAY DECL ISO PLTFS' OPP TO APPLE'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION PURS TO FRCP (b)(1) & 12 (h)(3), OR RULE 50 - C-05-00037-YGR          - 2 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 6, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 6, 2014.

<u>s/ Bonny E. Sweeney</u>
BONNY E. SWEENEY

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:        bonnys@rgrdlaw.com

# EXHIBIT 1

*In re Apple iPod iTunes Antitrust Litigation - Jury Trial Volume 4 - December 4, 2014*

— Sheet 1 —

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

THE APPLE IPOD ITUNES    )    NO. C 05-00037 YGR
ANTITRUST LITIGATION      )
                          )    PAGES 623 - 874
                          )
                          )    JURY TRIAL VOLUME 4
                          )
                          )
                          )    OAKLAND, CALIFORNIA
_____)    THURSDAY, DECEMBER 4, 2014

REPORTERS' TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:        ROBBINS GELLER RUDMAN & DOWD LLP
                       655 WEST BROADWAY, SUITE 1900
                       SAN DIEGO, CALIFORNIA  92101
                  BY:  ALEXANDRA S. BERNAY,
                       JENNIFER N. CARINGAL,
                       PATRICK COUGHLIN,
                       STEVEN M. JODLOWSKI,
                       CHARLES MCCUE,
                       CARMEN A. MEDICI,
                       BONNY E. SWEENEY, ATTORNEYS AT LAW

                       BONNETT FAIRBOURN FRIEDMAN & BALINT PC
                       4023 CAIN BRIDGE ROAD
                       FAIRFAX, VIRGINIA 22030
                  BY:  FRANCIS J. BALINT, JR.
                       ATTORNEY AT LAW

            (APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:        RAYNEE H. MERCADO, CSR NO. 8258
                    DIANE E. SKILLMAN, CSR NO. 4909

    PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

    RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

---

I N D E X

| PLAINTIFFS' WITNESSES | PAGE | VOL. |
|---|---|---|
| CUE, EDUARDO | | |
| DIRECT EXAMINATION BY MS. SWEENEY | 651 | 4 |
| CROSS-EXAMINATION BY MR. ISAACSON | 692 | 4 |
| REDIRECT EXAMINATION BY MS. SWEENEY | 754 | 4 |
| RECROSS-EXAMINATION BY MR. ISAACSON | 765 | 4 |
| FURTHER REDIRECT EXAMINATION BY MS. SWEENEY | 767 | 4 |
| | | |
| MARKS, AMANDA | | |
| DIRECT EXAMINATION BY MR. COUGHLIN | 769 | 4 |
| CROSS-EXAMINATION BY MR. ISAACSON | 806 | 4 |
| | | |
| SCHILLER, PHILLIP | | |
| DIRECT EXAMINATION BY MS. SWEENEY | 791 | 4 |
| CROSS-EXAMINATION BY MR. ISAACSON | 806 | 4 |
| REDIRECT EXAMINATION BY MS. SWEENEY | 841 | 4 |
| RECROSS-EXAMINATION BY MR. ISAACSON | 848 | 4 |

--oOo--

    RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

---

A P P E A R A N C E S (CONT'D.)

FOR DEFENDANT:         BOIES, SCHILLER & FLEXNER LLP
                       5301 WISCONSIN AVENUE NW
                       WASHINGTON, D.C.  20015
                  BY:  WILLIAM A. ISAACSON,
                       KAREN L. DUNN,
                       MARTHA L. GOODMAN, ATTORNEYS AT LAW

                       BOIES, SCHILLER & FLEXNER LLP
                       1999 HARRISON STREET, SUITE 900
                       OAKLAND, CALIFORNIA  94612
                  BY:  MEREDITH R. DEARBORN, ATTORNEYS AT LAW

                       JONES DAY
                       555 CALIFORNIA STREET, 26TH FLOOR
                       SAN FRANCISCO, CALIFORNIA  94104-1500
                  BY:  DAVID C. KIERNAN, ATTORNEYS AT LAW

                       APPLE
                       1 INFINITE LOOP, MS 169-2NYJ
                       CUPERTINO, CALIFORNIA  95014
                  BY:  SCOTT B. MURRAY,
                       SENIOR LITIGATION COUNSEL

                       --oOo--

    RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

---

E X H I B I T S

| PLAINTIFFS' EXHIBITS | W/DRAWN | IDEN | EVID | VOL. |
|---|---|---|---|---|
| 2 | | | 647 | 4 |
| 55 | | | 866 | 4 |
| 83 | | | 866 | 4 |
| 118 | | | 855 | 4 |
| 121 | | | 855 | 4 |
| 124 | | | 854 | 4 |
| 125 | | | 855 | 4 |
| 128 | | | 854 | 4 |
| 130 | | | 855 | 4 |
| 147 | | | 856 | 4 |
| 193 | | | 866 | 4 |
| 222 | | | 856 | 4 |
| 319 | | | 860 | 4 |
| 383 | | | 864 | 4 |
| 461 | | | 857 | 4 |
| 816 | | | 857 | 4 |
| 880 | | | 869 | 4 |
| 940 | | | 865 | 4 |

    RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

*In re Apple iPod iTunes Antitrust Litigation - Jury Trial Volume 4 - December 4, 2014*

Sheet 4

635

1  WHICH DAMAGES WOULD BE CLAIMED.
2      THE -- THE CHANGE IN THE IPODS AFFECTED HAVE NOTHING TO DO
3  WITH THE FACT THAT THESE PLAINTIFFS ARE NOW DISCLOSING FOR THE
4  FIRST TIME IPODS FOR WHICH DAMAGES WOULD HAVE BEEN CLAIMED
5  FROM THE BEGINNING OF THE -- FROM THE BEGINNING OF THIS
6  COMPLAINT, THE -- THE BEGINNING OF THIS OPERATIVE COMPLAINT.
7      ALL RIGHT.  THIS -- THE CHANGE IN THE DAMAGE THEORY HAS
8  NOTHING --
9      THE COURT:  I UNDERSTAND THAT.  BUT WE'RE TEN YEARS
10 INTO THIS LITIGATION AND IT'S NOT CLEAR TO ME WHERE IN THE
11 DEPOSITION -- AND I -- I UNDERSTAND, MR. ISAACSON, THAT YOU
12 WERE NOT INVOLVED IN THIS CASE FROM THE BEGINNING.  BUT
13 TYPICALLY, THESE THINGS WOULD HAVE BEEN INVESTIGATED.  AND DO
14 I -- AND RESEARCHED AS PART OF THE DISCOVERY.
15     MR. ISAACSON:  AND THEY -- AND THEY WERE, YOUR HONOR.
16 SO LET ME -- SO THE DEPOSITION IS 2007.  ALL RIGHT?  SO WE ARE
17 TALKING ABOUT PURCHASES AFTER 2007.
18     THE COURT:  CAN I HAVE HER DEPOSITION, PLEASE?
19     MR. ISAACSON:  SURE.
20     THE COURT:  I'M TALKING TO MY COURTROOM DEPUTY.
21     MR. ISAACSON:  THE DEPOSITION IS IN 2007.  WE'RE
22 TALKING ABOUT 2008 PURCHASES, SO THIS WOULD NOT HAVE BEEN
23 DISCUSSED DURING THE DEPOSITION.
24     THE INTERROGATORY RESPONSE, WHICH IS 2010, COMES AFTER
25 THIS ALLEGED PURCHASE.  SO DISCOVERY WAS TAKEN ON IT.  AND THE
       RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

636

1  INTERROGATORY RESPONSE SAYS, "I BOUGHT THREE IPODS."  OKAY?
2  THESE ARE THE -- TWO OF THEM ARE BEFORE THE CLASS PERIOD AND
3  ONE IS -- ONE IS THE ONE THAT DR. NOLL SAYS WOULD HAVE NO
4  DAMAGES ASSOCIATED WITH IT.
5      THE TWO IPODS THAT ARE BEING DISCLOSED WERE PURCHASED
6  BEFORE THAT INTERROGATORY RESPONSE AND WERE NOT DISCLOSED IN
7  THE INTERROGATORY RESPONSE SO APPLE IS NOT PUT ON NOTICE THAT
8  THESE IPODS EXIST.
9      THEN IN THE CLASS CERTIFICATION MOTION, WHICH IS 2011,
10 PLAINTIFFS SAY, AS I SAID, THAT -- THAT THEIR THREE PROPOSED
11 PLAINTIFFS -- WE'RE DOWN TO TWO -- HAVE SUBMITTED THEIR IPODS
12 FOR FORENSIC INSPECTION BY APPLE COUNSEL SO --
13     THE COURT:  OKAY.  SO AT THAT TIME, YOU HAD SOME
14 INFORMATION ABOUT WHAT THE PLAINTIFFS APPARENTLY HAD OR DIDN'T
15 HAVE, AND YOU DIDN'T RAISE THE ISSUE THAT IT -- THAT THEY
16 WEREN'T -- IN 2011, YOU DIDN'T RAISE THE ISSUE THAT YOU
17 THOUGHT THAT THEY WEREN'T QUALIFIED BECAUSE THEY DIDN'T HAVE
18 AN IPOD?
19     MR. ISAACSON:  THAT -- THAT IS CORRECT.  BECAUSE WITH
20 THIS -- OBVIOUS -- TWO OF THEM ARE OBVIOUSLY OUTSIDE THE CLASS
21 PERIOD.  I DON'T THINK THE PLAINTIFFS HAVE EVER CLAIMED ANY
22 DAM -- THAT WAS SELF-EVIDENT.
23     THE THIRD IPOD, IN ORDER TO IDENTIFY THAT WAS FIFTH
24 GENERATION, TOOK SOME -- TOOK PUTTING PUZZLE PIECES TOGETHER
25 BECAUSE SHE SAID, "I BOUGHT AN IPOD ON THIS DATE IN SEPTEMBER
       RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

637

1  2006."
2      THE COURT:  SO WHAT WERE YOU DOING IN 2011, FOUR
3  YEARS AGO, THREE YEARS AGO, TO INVESTIGATE THIS PARTICULAR
4  ISSUE THAT YOU APPARENTLY RESOLVED IN LESS THAN 24 HOURS?
5      MR. ISAACSON:  I DON'T HAVE AN ANSWER FOR THAT, YOUR
6  HONOR.
7      THE COURT:  WELL, THAT'S A PROBLEM.
8      MR. ISAACSON:  I -- I UNDERSTAND THAT.  BUT AT THE
9  END OF THE DAY, THERE'S STILL -- WE'RE AT TRIAL AND A
10 PLAINTIFF HAS TO SHOW INJURY.
11     THE COURT:  WELL, AND I UNDERSTAND THAT, TOO, BUT I
12 DID EXCUSE HER.  AND IF YOU THOUGHT YOU HAD AN ISSUE, YOU
13 SHOULD HAVE ADVISED ME, AND I WOULDN'T HAVE EXCUSED HER.  AND
14 I SAID THAT TO YOU AT THE END OF THE COURT YESTERDAY.
15     MR. ISAACSON:  RIGHT.
16     THE COURT:  SO THAT CREATES ANOTHER PROBLEM.
17     MR. ISAACSON:  RIGHT.  I THINK IT COULD BE RESOLVED
18 BY -- BY PHONE OR VIDEO TESTIMONY.
19     THE -- BECAUSE WE ARE JUST -- THE ONLY ISSUE THAT HAS COME
20 UP IS THEY'RE NOW GIVING US A RECEIPT THAT SHE SAYS WAS HER
21 PURCHASE, AND THE RECEIPT FROM APPLE SHOWS THAT THE TWO -- THE
22 TWO DEVICES THAT COUNSEL JUST IDENTIFIED -- AND WE'LL HAVE
23 COPIES MADE FOR EVERYBODY -- ARE FROM THE ROSEN LAW FIRM.
24     AND WE WILL PUT ON A WITNESS TO CERTIFY THIS DOCUMENT.
25 AND THE JURY IS GOING TO BE TOLD THAT THIS WITNESS HAS NOT
       RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

638

1  PURCHASED A DEVICE AND THESE TWO DEVICES WERE PURCHASED BY THE
2  ROSEN LAW FIRM.
3      SO WE'RE -- I'M DELIVERING THE INFORMATION TO YOU AS I
4  HAVE IT.
5      THE COURT:  OKAY.  RESPONSE.
6      MS. SWEENEY:  YOUR HONOR, I -- WE -- OR MS. ROSEN
7  CALLED APPLE THIS MORNING AND IS GETTING THE RECEIPTS.  I
8  HAVEN'T SEEN THIS INFORMATION THAT MR. ISAACSON IS REFERRING
9  TO.  THEY HAVE A LOT OF INFORMATION ABOUT THE PURCHASES OF
10 PLAINTIFFS AND CLASS MEMBERS WHICH THEY HAVE WITHHELD, AND IT
11 SEEMS TO ME GROSSLY UNFAIR FOR APPLE TO RAISE IT NOW WHEN THEY
12 HAVE HAD THIS INFORMATION ALL ALONG AND CHOSE STRATEGICALLY TO
13 WAIT TO BRING IT UP NOW.
14     MR. ISAACSON:  WE HAD ABSOLUTELY NO REASON TO SEARCH
15 THE PURCHASES OF THE ROSEN LAW FIRM.
16     THE COURT:  SO YOU CAN -- YOU CAN SEARCH BY NAME?
17 AND IF SO, WHY DIDN'T YOU SEARCH BY NAME OF THE NAMED
18 PLAINTIFFS?
19     MR. ISAACSON:  YOU CAN SEARCH BY NAME.  IT'S NOT
20 NECESSARILY COMPLETE.  SO WHEN YOU SEARCH HER NAME, YOU DON'T
21 TURN THIS UP.  BUT I CAN'T HAND THAT TO YOU AND SAY THEREFORE
22 SHE DIDN'T HAVE A PURCHASE.  THE RECORDS ARE NOT PERFECT.
23     IF WE CAN -- WHEN WE GET A -- A SERIAL NUMBER, WE CAN THEN
24 PULL UP A RECEIPT MANY TIMES, INCLUDING THIS CASE.  BUT IF I
25 SEARCH MY NAME IN THE APPLE DEVICE, THERE'S MANY REASONS MY
       RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

EXHIBIT 2

Confidential - Attorneys' Eyes Only

**Timothy O'Neil**                    **The Apple iPod iTunes Anti-Trust Litigation**

**Page 1**

```
1                UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                     OAKLAND DIVISION

4

5   THE APPLE iPOD iTUNES    ) Lead Case No. C 05-00037
    ANTI-TRUST LITIGATION    )
6                            )
                             )
7   _____  )
                             )
8   This Document Relates To: )
                             )
9   ALL ACTIONS              )
    _____  )
10

11

12

13

14

15           CONFIDENTIAL - ATTORNEYS' EYES ONLY

16     VIDEOTAPED DEPOSITION OF TIMOTHY PATRICK O'NEIL

17              Friday, December 5, 2014

18                 Oakland, California

19

20

21

22

23   Reported By:

24   Hanna Kim, CLR, CSR No. 13083

25   Job No.: 10013785
```

**Page 2**

```
1                UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                     OAKLAND DIVISION

4

5   THE APPLE iPOD iTUNES    ) Lead Case No. C 05-00037
    ANTI-TRUST LITIGATION    )
6                            )
                             )
7   _____  )
                             )
8   This Document Relates To: )
                             )
9   ALL ACTIONS              )
    _____  )
10

11

12

13

14        Confidential - Attorneys' Eyes Only,

15   Videotaped Deposition of TIMOTHY PATRICK O'NEIL, taken

16   on behalf of the Plaintiffs at 1999 Harrison Street,

17   Suite 900, Oakland, California 94612, beginning at

18   4:21 p.m. and ending at 5:37 p.m., on Friday,

19   December 5, 2014, before Hanna Kim, CLR, CSR No. 13083.

20

21

22

23

24

25
```

**Page 3**

```
1              APPEARANCES OF COUNSEL:

2

3   For the Plaintiffs:

4         ROBBINS GELLER RUDMAN & DOWD, LLP

5         BY:  CARMEN A. MEDICI, ESQ.

6         BY:  ALEXANDRA S. BERNAY, ESQ.

7         655 West Broadway, Suite 1900

8         San Diego, California  92101

9         619.231.1058

10        cmedici@rgrdlaw.com

11        xanb@rgrdlaw.com

12

13  For the Defendant, Apple Inc. and the Witness:

14        BOIES, SCHILLER & FLEXNER, LLP

15        BY:  KIERAN PAUL RINGGENBERG, ESQ.

16        1999 Harrison Street, Suite 900

17        Oakland, California 94612

18        510.874.1000

19        kringgenberg@bsfllp.com

20

21  Also Present:

22        NOREEN KRALL, ESQ., Vice President Chief

23        Litigation Counsel of Apple Inc.

24        FRANK CLARE, Video Specialist

25
```

**Page 4**

```
1                INDEX OF EXAMINATION

2

3   WITNESS:  TIMOTHY PATRICK O'NEIL

4

5   EXAMINATION                              PAGE

6         BY MR. MEDICI                     7, 57

7         BY MR. RINGGENBERG                   54

8

9

10               INDEX OF EXHIBITS

11  O'NEIL DEPOSITION EXHIBITS               PAGE

12  Exhibit 1    "Declaration of Tim O'Neil in   15

13               Support of Apple Inc.'s Motion

14               to Dismiss for Lack of

15               Subject-Matter Jurisdiction

16               Pursuant to Federal Rules of

17               Civil Procedure 12(b)(1) and

18               12(h)(3) or Rule 50; Exhibits 1

19               and 2; 8 pages

20  Exhibit 2    "Internal Reprint Copy," dated   45

21               September 20th, 2006; Trial

22               Exhibit 2855; 2 pages

23  Exhibit 3    document dated September 20th,   45

24               2006; Trial Exhibit 2857; 2

25               pages
```

Timothy O'Neil                                    The Apple iPod iTunes Anti-Trust Litigation

Page 37

1 he performed at the direction of lawyers in connection
2 with this case or any other case, other than the work
3 he did, as described in the declaration, on
4 December 3rd, December 4th.
5        MR. MEDICI:  Again, I'll just have a standing
6 disagreement.
7 BY MR. MEDICI:
8    Q.  So, aside from searching GCRM -- and let's --
9 let's -- let's start with this first iPod in
10 paragraph -- paragraphs 4 and 6.
11       Did you do anything else, aside from what's
12 described here, in -- in order to locate information
13 about that iPod?
14    A.  No.  I was provided the serial number, and
15 looked it up in GCRM.  GCRM took me to POS, and that's
16 where I got the invoice.
17    Q.  Is it possible that one person could have more
18 than one profile on GCRM?
19    A.  Very much so, as you could see by the stack of
20 paper that you received.
21    Q.  I haven't looked at that yet.
22       If -- if I went and purchased an iPod at the
23 Apple Store, would any of the information from that
24 transaction end up in GCRM?
25    A.  I -- I -- I honestly -- like without you

Page 38

1 inputting the information?
2    Q.  Yes.
3    A.  I don't know.
4    Q.  You don't know one way or the other?
5    A.  I -- I don't know.  I'm not actually a
6 technical person.  Like I don't have a technical role,
7 so I don't know if they're on the back end somewhere,
8 the one database, POS inputs information into GCRM, you
9 know.
10    Q.  Do you know -- strike that.
11       Are you able to edit records in GCRM?
12    A.  GCRM is a customer relations management tool,
13 whereby tech support people that have access to, you
14 know, take calls, et cetera, can edit the -- the
15 information in there.  But like it's basically, you
16 know, oh, you need to change your address or -- or you
17 need to enter a case note, like the notes of a call --
18 that kind of thing.  That's pretty much what GCRM is.
19    Q.  So what information does the point-of-sale
20 database have in it?
21    A.  I -- I'm not from the retail side.  I don't
22 have much background.  I just am able to pull the
23 invoices of the customer purchases.
24    Q.  Have you ever used the point-of-sale database
25 to do anything but pull the invoices of customer

Page 39

1 purchases?
2    A.  No.
3    Q.  Do you have any idea what kind of information
4 is in that system, aside from the information that is
5 included in Exhibits 1 and 2?
6    A.  It's the POS database, so it's basically
7 the -- I would assume, but, again, I'm not an expert,
8 that when the customer makes a purchase, the -- you
9 know, the product is scanned.  And then, the -- you
10 know, the card is swiped or the payment method is
11 entered.  And then, you know, somewhere in the back
12 end, it generates the invoice, which can be e-mailed to
13 a customer or printed and taken home with them.  And
14 that's -- that's basically what it is; it's
15 point-of-sale.
16    Q.  Do you know if an employee can input any
17 information into that record before it gets sent to the
18 database?
19    A.  I -- you know, just from having purchased
20 stuff, yes, they can enter e-mail addresses, from my
21 understanding, or they can update the name of the
22 person, if the individual wants to update a name or
23 something associated with it.
24    Q.  So, if an individual wants to change the name
25 associated with a purchase, they're able to do that at

Page 40

1 the point-of-sale?
2    A.  I -- I don't -- I -- yes, I believe so.  I
3 mean, I'm just speaking from having made purchases.  My
4 name is Tim O'Neil or -- you can put it in under "T.
5 O'Neil" or -- I'm just --
6    Q.  But -- but as far as --
7    A.  I don't work in -- in retail.
8    Q.  As far as you know, that field is -- is
9 editable?
10    A.  I believe so, yes, but only at the time of
11 purchase.
12    Q.  How long have you held the job that you have
13 currently at Apple?
14    A.  Three years.
15    Q.  What did you do before that?
16    A.  I worked in AppleCare.  I worked in a role
17 called executive relations.
18       I can explain that if you want.  If not...
19    Q.  Yeah, go ahead.
20    A.  I was hired in 2005, worked in executive
21 relations, which responds to escalations on behalf of
22 the executive team, makes outreach to the customer,
23 resolves customer concerns.
24    Q.  So when --
25    A.  White glove support.

Page 37..40

1    (O'Neil Deposition Exhibit 2 was marked.)
2    (O'Neil Deposition Exhibit 3 was marked.)
3  BY MR. MEDICI:
4    Q.  Court reporter is going to hand you O'Neil 2
5  and O'Neil 3.  O'Neil --
6    THE WITNESS:  Here you go.
7  BY MR. MEDICI:
8    Q.  I'm actually going to hand O'Neil 4 to you, as
9  well.
10    MR. RINGGENBERG:  I've got 2 and 4.  I'm not
11  sure I got 3.  What was 3?
12    Oh, thank you.  Sorry.
13    (O'Neil Deposition Exhibit 4 was marked.)
14  BY MR. MEDICI:
15    Q.  Okay.  For the record, Exhibit -- O'Neil
16  Exhibit 2 is something that's entitled "Internal
17  Reprint Copy" dated September 20th, 2006.  It's a
18  two-page document, Trial Exhibit 2855.
19    Exhibit 3, Trial Exhibit 2857.  Has the same
20  date.
21    And then Exhibit 4 is a one-page e-mail
22  attaching a receipt called a duplicate receipt from
23  September 11th, 2008.
24    Did I correctly identify those three
25  documents?

1    A.  Yeah, I believe so.
2    Q.  Can you please turn to Exhibit 2 of your
3  declaration.
4    A.  Mm-hmm.
5    Q.  And then can you also turn to Exhibit 4.  I'd
6  like to compare page 2 of Exhibit 4 to this Exhibit 2
7  of your declaration.
8    My first question is, what's the difference
9  between an internal reprint copy and a duplicate
10  receipt?
11    A.  So, I guess there -- the easiest way to
12  describe it is that, in POS, there's different --
13  different versions of the same data that you can pull.
14  I guess that's the best way to put it.
15    Q.  Okay.  Why -- why does the Exhibit 2 to your
16  declaration have a customer name and Exhibit O'Neil 4
17  does not?
18    MR. RINGGENBERG:  Objection.  Foundation as to
19  O'Neil 4.
20    THE WITNESS:  I don't have an answer for that.
21  BY MR. MEDICI:
22    Q.  Can you tell me what O'Neil Exhibit 4 is?
23    A.  It's an e-mail to Marianna Rosen -- or, sorry,
24  from Marianna Rosen -- originally to Marianna Rosen
25  to --

1    Q.  Let me -- let me start again here.
2    Do -- do you see on the first page where it
3  says "shorthills@apple.com"?
4    A.  Yeah.
5    Q.  Do you recognize that to be the Short Hills,
6  New Jersey, Apple Store?
7    A.  Yes.
8    Q.  And then they're e-mailing
9    ████████████████; is that correct?
10    A.  I understand that, yes.
11    Q.  And then, attached to that e-mail is a -- a
12  duplicate receipt which has a bar code on it, and that
13  bar code is R0435033178.
14    You see that?
15    A.  I do.
16    Q.  And then, if you look over at Exhibit 2 to
17  your declaration, Trial Exhibit 2884, do you see that
18  the receipt ID on that document matches the receipt ID
19  of the duplicate receipt?
20    A.  I'm sorry, which -- which documents again?
21  Four and which document?
22    Q.  Exhibit 2 to your declaration.
23    A.  Oh.
24    Yes, I see that they are the same invoices.
25    Q.  And does that tell you that these are the --

1  this is about the same purchase?
2    A.  Yes.
3    Q.  Okay.  Now, I'd like to -- I'd like to ask a
4  couple more questions about what the difference is
5  between an internal receipt -- an internal reprint copy
6  and a duplicate receipt.
7    Why -- why -- would you be able to pull, for
8  instance, a duplicate receipt?
9    A.  So, this is the one that was actually sent to
10  a customer.  I don't -- I don't know if it's a
11  different format or anything like that.  It appears
12  that she requested it, and they e-mailed it to her.
13  And from my own recollection of having receipts
14  e-mailed to me, it looks similar to that.
15    The internal reprint is -- it's an -- it's the
16  reprint.  It has more data on it.
17    And aside from them being different versions,
18  I -- I don't know.  Again, I'm not the -- the POS
19  expert or worked from -- in retail, so...
20    Q.  Okay.  The question was -- was, are you able
21  to pull a duplicate receipt rather than an internal
22  reprint copy?
23    A.  So, in -- in this format, I -- I think it's
24  when it's e-mailed to a customer.  And I don't do that,
25  so I don't know if it -- it looks like exactly the same

Confidential - Attorneys' Eyes Only

Timothy O'Neil                           The Apple iPod iTunes Anti-Trust Litigation

Page 49

1 or anything like that.
2     Q.  Same database?
3     A.  I would probably say yeah, but I don't know
4 that functionality at all.  I mean, it's POS, so it's
5 point-of-sale system.
6     Q.  All right.  Let's turn to your -- to your
7 declaration, please.
8     A.  Okay.
9     Q.  You use the word "serialized" in here?
10    A.  Yes.
11    Q.  What does that mean?
12    A.  So, GCRM tracks serialized Apple products.
13 And by serialized, it's products that have serial --
14 serial numbers associated with them.  So it would be
15 Macs, iPods, iPhones, iPads, cinema displays, Apple
16 TVs, but it wouldn't be your keyboard or your mouse or
17 cables or anything like that.  It's serialized
18 products.
19        Excuse me.
20        And so, that's what GCRM has in it.
21    Q.  Okay.  Can you please turn to Exhibit 3,
22 O'Neil Exhibit 3.
23    A.  Yep.
24    Q.  Can you identify Trial Exhibit 2857, O'Neil 3?
25    A.  Yes.

Page 50

1     Q.  What is this?
2     A.  That is -- if you recall earlier in the
3 conversation, I mentioned the installed product page
4 from GCRM.  That's -- that's what it looks like.  So
5 all of the serial numbers that we've been discussing
6 all have pages similar to this in GCRM.
7     Q.  Are you able to search any of these fields
8 that are available on this page?
9     A.  I'm able for -- to find a product.  This is
10 not the actual search screen.
11        Does that make sense?
12        This is the results screen after -- after you
13 do the search.  So I'm only really able to do the
14 search via serial number in GCRM.  I don't believe I
15 can -- yeah, I don't think I can pull any transactional
16 data.  It's just associated with the serial number.
17    Q.  But didn't you say earlier that you could run
18 searches by name?
19    A.  Yeah, but that's a different -- you're asking
20 about the installed product page, and I'm talking about
21 the installed product page.  So I get to this page here
22 via serial number search.
23    Q.  Okay.  I -- on the right side, it says
24 "channel type."  It's about three or four inches down
25 the page.

Page 51

1        What does indirect channel mean?
2     A.  I'm -- I'm not in -- in sales, so I'm really
3 not sure it's -- exactly what it means.
4     Q.  Down -- down at the bottom of the page, it has
5 "date created" and "date modified."
6        Do you see that?
7     A.  Yep.
8     Q.  Do -- do you know -- do you know what that --
9 what the -- what that means, aside from -- like do --
10 do you know what those particular fields mean, aside
11 from just your experience?
12    A.  I -- I -- I don't.  I believe it's kind of
13 tracked to, I mean, the actual -- the actual product
14 itself.  Because all these products and stuff -- not to
15 get boring or too technical, but all the serial
16 numbers, even before they're sold, they live all in
17 SAP and all -- who does the manufacturing and all the
18 stuff like that.  But I would venture a guess that it
19 was created similarly when it was shipped.  And then,
20 when it was purchased, that modified the record.  I
21 mean, I -- I can only speculate.
22    Q.  Okay.  That's fine.
23        Is there any way that you can tell that --
24 from anything that we have here or that is -- any of
25 these exhibits, including your declaration -- strike

Page 52

1 that.  I'll start over so I can get a clean question.
2        Is there -- is there anything here today that
3 indicates that any of these purchases were made
4 anywhere but in a physical store?
5     A.  They all appear to have been made at a
6 physical store, an Apple retail store.
7        MR. MEDICI:  Okay.  Can we take two or three
8 minutes?  I want to look over this document you gave
9 me, and then I'll probably I would have five minutes
10 left or so.
11        MR. RINGGENBERG:  Fine.
12        MR. MEDICI:  Thanks.
13        THE VIDEOGRAPHER:  We're off the record at
14 5:19 p.m.
15        (Short recess taken.)
16        THE VIDEOGRAPHER:  We're back on the record at
17 5:26 p.m.
18 BY MR. MEDICI:
19    Q.  Mr. O'Neil, I just a few more questions.
20        Aside from personal experience, you know
21 nothing about the data collecting process of -- at the
22 point-of-sale for the Apple point-of-sale database; is
23 that correct?
24    A.  That's correct.
25    Q.  I'd also like to request any -- any documents

**Confidential - Attorneys' Eyes Only**

Timothy O'Neil          The Apple iPod iTunes Anti-Trust Litigation

Page 57

1  guess it's called ISNT --

2       THE COURT REPORTER:  What's it called, ISN --

3       THE WITNESS:  ISNT.  It's a technical support

4  kind of -- not technical support, but like the whole

5  technical side of the retail side.

6       MR. RINGGENBERG:  Okay.  Thank you.

7       I don't have any more questions.

8           FURTHER EXAMINATION

9  BY MR. MEDICI:

10      **Q.  Can you spell the name of the first**

11 **individual, Rob, that you talked to about the**

12 **point-of-sale entry information?**

13      A.  His last name is Maiolo.  And I believe it's

14 spelled M-A-I-O-L-O.

15      **Q.  And then he told you that he didn't understand**

16 **how it worked and that you should talk to somebody**

17 **else; is that correct?**

18      A.  He said he believed that it was done that way

19 but you should make sure.

20      **Q.  Did he provide you any basis on his belief?**

21      A.  Aside from his working knowledge of being on

22 the retail side?

23      **Q.  What do you mean, "being on the retail side"?**

24      A.  He works as the attorney that supports Apple

25 retail.

Page 58

1       **Q.  Okay.  So he's not actually swiping cards?**

2       A.  No, he doesn't swipe cards, but he has a very

3  good understanding of all the things on the retail

4  side, so he's at least a good jumping off point.  So if

5  I have a question, I would ask him and he would put me

6  in the right direction.

7       **Q.  Great.**

8       **So then he pointed you in the direction of**

9  **Scott -- what's his last name?**

10      A.  Lauretis, L-A-U-R-E-T-I-S.

11      **Q.  And --**

12      A.  And I'm not 100 percent clear, but that's

13 close.

14      **Q.  And -- and you spoke to this individual?**

15      A.  I did.

16      **Q.  When?**

17      A.  Actually, today.

18      **Q.  For how long?**

19      A.  As long as it took me to ask the question,

20 like five minutes or so.

21      **Q.  And what is his job?**

22      A.  I don't know his specific role.  I don't...

23      **Q.  So is he a -- does he work at the**

24 **point-of-sale?**

25      A.  He works in retail, and he has a very strong

Page 59

1  understanding of point-of-sale, which is why I was

2  recommended to call him.

3       MR. MEDICI:  Object to the answer and move to

4  strike to -- the -- it's speculation there.

5  BY MR. MEDICI:

6       **Q.  So no -- neither of these individuals that you**

7  **talked to, that you based your understanding of how**

8  **this particular field is populated, have any experience**

9  **actually swiping credit cards at the point-of-sale; is**

10 **that correct?**

11      A.  I don't know Scott's specific role at Apple,

12 but I know it is on the technical side of how our POS

13 system is -- works.

14      **Q.  And then he told you that certainly,**

15 **100 percent, that field is populated by what again?**

16      A.  So the name field on a POS transaction that

17 has a name, when there's a credit card associated with

18 it -- so you can get -- you can buy something with

19 cash, right.  You don't actually have to provide your

20 name when you buy something with cash.  If you

21 provide -- buy something with a credit card or a debit

22 card, you would be -- I mean, that private information

23 is actually -- like that name -- name -- I wouldn't say

24 private information, but your name is actually

25 associated with the card.  I mean, I -- again, I make

Page 60

1  purchases.  In Target, you want to e-mail it, sure,

2  fine.

3       **Q.  And does -- does it have every authorized user**

4  **on a card?  Is that provided in -- in the name field?**

5       A.  I don't have an understanding of that, so I

6  can't answer --

7       **Q.  Do you know if the customer field captures**

8  **anything else -- I'm sorry.  Strike that question.**

9       **Do you know if the point-of-sale database**

10 **captures any other information in the customer field**

11 **except for the name associated with the credit card?**

12      A.  If point-of-sale captures -- can you just

13 repeat the question, please?

14      **Q.  Let me ask one set of question first.**

15      **Does the point -- your testimony is that**

16 **the -- based on what someone else told you, who doesn't**

17 **actually swipe credit cards, that the customer field is**

18 **populated by the name on a credit card if a credit card**

19 **is used; is that correct?**

20      A.  So consumers or, actually, the -- the -- well,

21 if it's self-checkout, consumers actually swipe their

22 credit cards.  And if it's the -- the actual retail

23 salesperson that swipes the credit cards, they don't

24 have the -- they probably -- they don't work on the

25 back end of the POS systems.  I mean, that's why I

**Page 57..60**

Confidential - Attorneys' Eyes Only

Timothy O'Neil                          The Apple iPod iTunes Anti-Trust Litigation

Page 61

1 spoke with or was recommended to speak to somebody that

2 works on the back end of the POS system and has an

3 understanding of.

4       So, that said, the name on the invoice when a

5 credit card is swiped, from my understanding, is

6 associated with the credit card, but it can be edited

7 based on the customer request.

8    **Q.  Which -- can you read to me the --**

9 **the information on that card (indicating) ; not the**

10 **number, but the --**

11    A.  "Carmen Medici," and "RTRND, LLP."

12   **Q.  Okay.  And what would be put in the customer**

13 **field if that card was swiped at an Apple Store?**

14   A.  I don't know because I'm not an POS expert.

15   **Q.  All right.  Thank you.**

16    MR. RINGGENBERG:  You don't get that back.  He

17 gets to keep that.

18    MR. MEDICI:  You will note I didn't mark it.

19 It's almost maxed out anyway.

20    I don't think I have any further questions.

21 Thank you for your time.  See you soon.

22    Do you have any redirect or --

23    MR. RINGGENBERG:  No.  So we can go off the

24 record.

25    THE VIDEOGRAPHER:  This concludes today's

Page 62

1 testimony given by Timothy O'Neil.  The one original

2 disc will be retained by Aptus.  We're off the record

3 at 5:36 p.m.

4    (Discussion off the record.)

5    THE COURT REPORTER:  Just to confirm, you want

6 the final transcript tonight, correct?

7    MR. RINGGENBERG:  Tomorrow is fine.

8    MR. MEDICI:  We have a brief due tomorrow, so

9 we want it tonight.

10    (Proceedings concluded at 5:37 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 63

1          DECLARATION UNDER PENALTY OF PERJURY

2  Case Name: The Apple iPod iTunes Anti-Trust Litigation

3  Date of Deposition: 12/05/2014

4  Job No.: 10013785

5

6          I, TIMOTHY O'NEIL, hereby certify

7  under penalty of perjury under the laws of the State of

8  _____ that the foregoing is true and correct.

9          Executed this _____ day of

10 _____, 2014, at _____.

11

12

13

14          _____

15                    TIMOTHY O'NEIL

16

17

18

19  NOTARIZATION (If Required)

20  Subscribed and sworn before me

21  this _____ day of_____, 2014.

22

23  _____

24  (signature and seal of Notary)

25

Page 64

1              CERTIFICATE OF REPORTER

2

3          I, Hanna Kim, a Certified Shorthand Reporter,

4  do hereby certify:

5          That prior to being examined, the witness in

6  the foregoing proceedings was by me duly sworn to

7  testify to the truth, the whole truth, and nothing but

8  the truth;

9          That said proceedings were taken before me at

10 the time and place therein set forth and were taken

11 down by me in shorthand and thereafter transcribed into

12 typewriting under my direction and supervision;

13          I further certify that I am neither counsel

14 for, nor related to, any party to said proceedings, not

15 in anywise interested in the outcome thereof.

16          In witness whereof, I have hereunto subscribed

17 my name.

18

19  Dated:  5th day of December, 2014

20

21

22

23                    _____

                         Hanna Kim

24                       CLR, CSR No. 13083

25

# EXHIBIT 3



**From:** Marianna Rosen [mailto:marianna_rosen@yahoo.com]
**Sent:** Thursday, December 04, 2014 8:00 AM
**To:** Xan Bernay; Patrick Coughlin; Bonny Sweeney
**Subject:** Fwd: Your receipt from Apple Store, Short Hills



Begin forwarded message:

> **From:** shorthills@apple.com
> **Date:** December 4, 2014 at 07:57:07 PST
> **To:** marianna_rosen@yahoo.com
> **Cc:** shorthills@apple.com
> **Subject: Your receipt from Apple Store, Short Hills**
> **Reply-To:** Do_not_reply@apple.com
>
> Thank you for shopping at the Apple Store.
>
> To tell us about your experience, click here.

1



DUPLICATE RECEIPT



**Apple Store, Short Hills**
1200 Morris TPKE STE B102
Short Hills, NJ 07078
shorthills@apple.com
973-564-5813

www.apple.com/retail/shorthills

September 11, 2008 11:09 AM

| | |
|---|---|
| **iPod nano 8GB - green** | $ 149.00 |

Part Number: MB745LL/A
Serial Number: YM8361TK3QX
Return Date: Sep. 25, 2008
For Support, Visit: APPLE.COM/SUPPORT

| | |
|---|---|
| **iPod touch 8GB** | $ 229.00 |

Part Number: MB528LL/A
Serial Number: 1A836F5F201
Return Date: Sep. 25, 2008
$ 22.90 fee if opened
For Support, Visit: APPLE.COM/SUPPORT

| | |
|---|---|
| **Shure SE110 - White** | $ 99.95 |

Part Number: TM267LL/A
Return Date: Sep. 25, 2008
Customer Support: 800-516-2525 ext. 4

| | |
|---|---|
| Sub-Total | $ 477.95 |
| Tax@7.0% | $ 33.46 |
| **Total** | **$ 511.41** |
| Amount Paid Via Visa (A) | $ 511.41 |
| xxxxxxxxxxxxxxxxxxxx^ban | |
| 081764 | |



\* R 0 4 3 5 0 3 3 1 7 8 \*

http://www.apple.com/legal/sales_policies/retail.html
Tell us about your experience at the Apple Store.
Visit www.apple.com/feedback/retail.html

EXHIBIT 4

*In re Apple iPod iTunes Antitrust Litigation - Jury Trial Volume 3 - December 3, 2014*

— Sheet 1 —

```
                UNITED STATES DISTRICT COURT

               NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE


THE APPLE IPOD ITUNES      )      NO. C 05-00037 YGR
ANTITRUST LITIGATION       )
                           )      PAGES 402 - 622
                           )
                           )      JURY TRIAL VOLUME 3
                           )
                           )      OAKLAND, CALIFORNIA
_____)      WEDNESDAY, DECEMBER 3, 2014


            REPORTERS' TRANSCRIPT OF PROCEEDINGS


APPEARANCES:

FOR PLAINTIFFS:        ROBBINS GELLER RUDMAN & DOWD LLP
                       655 WEST BROADWAY, SUITE 1900
                       SAN DIEGO, CALIFORNIA  92101
                   BY: ALEXANDRA S. BERNAY,
                       JENNIFER N. CARINGAL,
                       PATRICK COUGHLIN,
                       STEVEN M. JODLOWSKI,
                       CHARLES MCCUE,
                       CARMEN A. MEDICI,
                       BONNY E. SWEENEY, ATTORNEYS AT LAW

                       BONNETT FAIRBOURN FRIEDMAN & BALINT PC
                       4023 CAIN BRIDGE ROAD
                       FAIRFAX, VIRGINIA 22030
                   BY: FRANCIS J. BALINT, JR.
                       ATTORNEY AT LAW

           (APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:           RAYNEE H. MERCADO, CSR NO. 8258
                       DIANE E. SKILLMAN, CSR NO. 4909

   PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

   RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530
```

## I N D E X

| PLAINTIFFS' WITNESSES | PAGE | VOL. |
|---|---|---|
| MARTIN, DAVID | | |
| CROSS-EXAMINATION BY MR. ISAACSON | 411 | 3 |
| | | |
| FARRUGIA, AUGUSTIN | | |
| DIRECT EXAMINATION BY MR. COUGHLIN | 454 | 3 |
| CROSS-EXAMINATION BY MS. DUNN | 514 | 3 |
| REDIRECT EXAMINATION BY MR. COUGHLIN | 566 | 3 |
| | | |
| ROSEN, MARIANNA | | |
| DIRECT EXAMINATION BY MS. BERNAY | 581 | 3 |
| CROSS-EXAMINATION BY MR. ISAACSON | 593 | 3 |
| REDIRECT EXAMINATION BY MS. BERNAY | 611 | 3 |

--oOo--

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

## A P P E A R A N C E S (CONT'D.)

```
FOR DEFENDANT:        BOIES, SCHILLER & FLEXNER LLP
                      5301 WISCONSIN AVENUE NW
                      WASHINGTON, D.C.  20015
                  BY: WILLIAM A. ISAACSON,
                      KAREN L. DUNN,
                      MARTHA L. GOODMAN, ATTORNEYS AT LAW

                      BOIES, SCHILLER & FLEXNER LLP
                      1999 HARRISON STREET, SUITE 900
                      OAKLAND, CALIFORNIA  94612
                  BY: MEREDITH R. DEARBORN, ATTORNEYS AT LAW


                      JONES DAY
                      555 CALIFORNIA STREET, 26TH FLOOR
                      SAN FRANCISCO, CALIFORNIA  94104-1500
                  BY: DAVID C. KIERNAN, ATTORNEYS AT LAW

                      APPLE
                      1 INFINITE LOOP, MS 169-2NYJ
                      CUPERTINO, CALIFORNIA  95014
                  BY: SCOTT B. MURRAY,
                      SENIOR LITIGATION COUNSEL

                      --oOo--
```

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

## E X H I B I T S

| PLAINTIFFS' EXHIBITS | W/DRAWN | IDEN | EVID | VOL. |
|---|---|---|---|---|
| 269 | | | 576 | 3 |
| 271 | | | 576 | 3 |
| 316 | | | 577 | 3 |
| 327 | | | 575 | 3 |
| 371 | | | 577 | 3 |
| 820 | | | 576 | 3 |
| 871 | | | 577 | 3 |
| 927A | | | 576 | 2 |
| | | | | |
| DEFENDANT'S EXHIBITS | W/DRAWN | IDEN | EVID | VOL |
| 2239 | | | 575 | 3 |
| 2247 | | | 575 | 3 |
| 2265 | | | 575 | 3 |
| 2309 | | | 575 | 3 |
| 2329 | | | 578 | 3 |
| 2416 | | | 578 | 3 |
| 2446, 2446A | | | 485 | 3 |
| 2776 | | | 575 | 3 |
| 2784 | | | 619 | 3 |

--oOo--

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530

**Raynee H. Mercado, CSR, RMR, CRR, FCRR and Diane E. Skillman, CSR, RPR, FCRR**

*In re Apple iPod iTunes Antitrust Litigation - Jury Trial Volume 3 - December 3, 2014*

Sheet 46

582

ROSEN - DIRECT / BERNAY

1  BY MS. BERNAY:
2  Q. WHERE ARE YOU FROM ORIGINALLY?
3  A. I'M FROM RUSSIA, SOVIET UNION FORMERLY. AND I CAME HERE
4  IN 1996, AND I BECAME A CITIZEN OF THE UNITED STATES IN 2003.
5  Q. YOU TOOK THE CITIZENSHIP TEST AND ALL THAT?
6  A. YES, OF COURSE.
7  Q. WONDERFUL.
8      CAN YOU TELL ME A LITTLE BIT ABOUT YOUR EDUCATIONAL
9  BACKGROUND?
10 A. RIGHT. I HAVE A DEGREE FROM UNIVERSITY OF MOSCOW AND I
11 HAVE A GRADUATE DEGREE IN INTERNATIONAL FINANCIAL AND BANKING
12 FROM COLUMBIA UNIVERSITY IN NEW YORK. I GRADUATED IN 2000.
13 Q. TELL ME A LITTLE BIT ABOUT YOUR WORK HISTORY SINCE
14 GRADUATING FROM COLUMBIA?
15 A. RIGHT AFTER MY GRADUATION IN 2000, I WENT TO WORK FOR AN
16 INVESTMENT BANK. IT WAS CALLED SOLOMON, SMITH BARNEY AT THAT
17 TIME. IT LATER BECAME CITIGROUP. I WORKED THERE FOR FOUR AND
18 A HALF YEARS.
19     AND THEN RIGHT AFTER I LEFT THE BANKING, I WORKED FOR MY
20 HUSBAND'S LAW PRACTICE JUST DOING SOME BACK OFFICE STUFF.
21     AND I -- SINCE THEN, I AM NOT WORKING THERE ANY MORE SINCE
22 2012 AND I'M TAKING SOME CLASSES IN COLUMBIA UNIVERSITY TO
23 PREPARE MYSELF FOR PH.D. STUDIES IN COMPARATIVE LITERATURE.
24 Q. AND YOU ALSO TAKE CARE OF YOUR CHILDREN AS WELL; IS THAT
25 RIGHT?

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

583

ROSEN - DIRECT / BERNAY

1  A. RIGHT. I HAVE TWO BOYS, 8 AND 15.
2  Q. AND IS IT RIGHT THAT WHEN YOU WERE FIRST DEPOSED IN THIS
3  MATTER, YOUR YOUNGER SON WAS ONLY THREE MONTHS OLD; IS THAT
4  RIGHT, APPROXIMATELY?
5  A. YES, I THINK SO. HE WAS BORN IN OCTOBER 2006.
6  Q. SO HOW OLD IS HE NOW?
7  A. EIGHT AND CHANGE.
8  Q. YOUR OLDEST SON IS HOW OLD?
9  A. FIFTEEN.
10 Q. AND YOU UNDERSTAND THAT YOU'RE HERE TODAY TO DISCUSS SOME
11 ISSUES RELATED TO YOUR PURCHASES OF IPODS; IS THAT RIGHT?
12 A. RIGHT.
13 Q. AND HAVE YOU EVER OWNED AN IPOD?
14 A. YES.
15 Q. HAVE YOU -- WHEN DID YOU PURCHASE YOUR FIRST IPOD?
16 A. I BELIEVE THAT I PURCHASED MY FIRST IPOD IN FEBRUARY,
17 MARCH OF 2004.
18     AND I BOUGHT ANOTHER IPOD, IT WAS IPOD NANO FOR MY LITTLE
19 SISTER AS A GIFT FOR HER GRADUATION I THINK IN JULY OF THE
20 SAME YEAR.
21     THEN I BOUGHT, I GUESS IT'S NEXT GENERATION IPOD, A BLACK
22 IPOD IN SEPTEMBER 2006.
23     I BOUGHT AN IPOD NANO. I THINK IT'S CALLED NANO, THE
24 GREEN KIND OF SLICK NARROW IPOD WHICH IS SMALLER THAN THE ONES
25 PRIOR, IN 2007, IN THE FALL OF 2007.

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

584

ROSEN - DIRECT / BERNAY

1      AND THE LAST IPOD I BOUGHT WAS THE IPOD TOUCH. AND I
2  THINK I BOUGHT IT AS A HANUKKAH GIFT FOR MY SON IN DECEMBER OF
3  '08.
4  Q. AND DID YOU PURCHASE ALL OF THOSE IPODS AT AN APPLE STORE?
5  A. I THINK, YOU KNOW, I DON'T REMEMBER A HUNDRED PERCENT, BUT
6  I THINK IT'S A VERY GOOD ASSUMPTION THAT I BOUGHT IT AT THE
7  APPLE STORE IN SHORT HILLS MALL, WHICH IS NOT FAR FROM MY
8  HOUSE. THAT'S WHERE I BOUGHT MOST OF MY APPLE PRODUCTS.
9  Q. AND THE SHORT HILLS MALL IS IN NEW JERSEY?
10 A. YES. IT IS IN SHORT HILLS.
11 Q. HAVE YOU EVER PURCHASED ANYTHING ELSE FROM APPLE?
12 A. YES. I HAVE A PHONE. SO I HAVE A MAC BOOK AIR AND A
13 DESKTOP.
14 Q. HAVE YOU EVER PURCHASED MUSIC FROM APPLE?
15 A. AND THEN MUSIC FOR MY ITUNES LIBRARY AND VIDEOS, TOO.
16 Q. THAT IS A NUMBER OF APPLE PRODUCTS; IS THAT RIGHT?
17 A. IT'S QUITE A NUMBER, YES.
18 Q. WHY HAVE YOU PURCHASED SO MANY APPLE PRODUCTS?
19 A. WELL, YOU KNOW, I LIKE APPLE PRODUCTS. I THINK THEY ARE
20 GOOD PRODUCTS.
21     I ALSO, AFTER I BOUGHT MY FIRST IPOD, WHICH WAS IN 2004, I
22 IMMEDIATELY PROCEEDED IN BUILDING THE LIBRARY WHICH CONSISTED
23 OF A GOOD PERCENTAGE OF SONGS THAT I BOUGHT FROM ITUNES STORE,
24 WHICH CAME TOGETHER WITH THE SOFTWARE. AND ALSO COPYING MY CD
25 LIBRARY.

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

585

ROSEN - DIRECT / BERNAY

1  SO ONCE I BUILD THAT LIBRARY, I SORT OF HAD TO USE IPOD
2  PRODUCTS BECAUSE I COULDN'T USE ANY OTHERS, MP3 PLAYERS. SO I
3  WAS JUST USING MY LIBRARY AND LOADING IT THERE.
4  Q. YOU MENTIONED THAT YOU GOT MUSIC FROM CD'S AND ALSO FROM
5  THE ITUNES STORE.
6      WAS THERE ANY OTHER SOURCES OF MUSIC THAT YOU GOT TO PUT
7  ON YOUR IPOD?
8  A. NO. I DON'T THINK I COULD HAVE DONE IT. I TRIED TO BUY
9  MUSIC FROM DIFFERENT WEBSITE, BUT IT DIDN'T -- I WAS UNABLE TO
10 SAVE IT ON MY -- IN MY ITUNES LIBRARY. SO THE SOURCE OF MY
11 ITUNES LIBRARY IS PRIMARILY ITUNES PURCHASES AND THE SONGS
12 FROM MY CD COLLECTION.
13 Q. YOU MENTIONED THAT YOU TRIED TO BUY MUSIC FROM A DIFFERENT
14 WEBSITE, BUT YOU WERE UNABLE TO SAVE IT IN YOUR ITUNES
15 LIBRARY.
16     CAN YOU TELL ME A LITTLE BIT MORE ABOUT THAT?
17 A. I DON'T REMEMBER ALL THE DETAILS AND MECHANICS OF IT
18 PRECISELY. IT WAS QUITE A BIT OF TIME AGO. BUT I THINK WHAT
19 HAPPENED WAS I JUST RECEIVED AN EMAIL FROM A FRIEND OF MINE
20 THAT, YOU KNOW, I WAS INTO -- I PRIMARILY USED MY IPOD AT THAT
21 TIME FOR WORKING OUT. SO I WAS INTO THIS MUSIC THAT WAS SORT
22 OF VERY FAST BUT ALSO IT WOULD GET BORING VERY FAST, SO I WAS
23 SEARCHING FOR DIFFERENT MUSIC.
24     AND ACTUALLY AT THE TIME ITUNES WASN'T THAT BIG, THE MUSIC
25 STORE, SO I LOOKING FOR WHERE ELSE I COULD BUY THE MUSIC.

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

*In re Apple iPod iTunes Antitrust Litigation - Jury Trial Volume 3 - December 3, 2014*

Sheet 48

590

ROSEN - DIRECT / BERNAY

1  NOT ENOUGH REALLY, YOU KNOW, TO MAKE A DIG DEAL OF IT.  WHEN I
2  LEARNED ABOUT THIS AND I UNDERSTOOD, I JUST -- I MAY SOUND A
3  LITTLE NAIVE, BUT I ACTUALLY THOUGHT THAT IF THIS BECOMES AN
4  ISSUE THAT PEOPLE WILL KNOW ABOUT AND MAYBE THINGS WILL CHANGE
5  BECAUSE I THINK IT WOULD BE BENEFICIAL FOR EVERYONE THAT
6  PEOPLE COULD USE MUSIC ON DIFFERENT DEVICES AND VICE VERSA.
7  Q.  AND DO YOU THINK THAT YOU HAVE BEEN DAMAGED OR INJURED BY
8  APPLE'S CONDUCT HERE?
9  A.  I THINK DAMAGE IS A VERY STRONG WORD.  I WOULDN'T SAY I
10  WAS REALLY, REALLY DAMAGED, BUT I THINK, YOU KNOW, IF I
11  COULD -- I JUST WANT TO MAKE -- EVEN IF IT'S A GOOD CHOICE, I
12  WANT TO MAKE IT FOR THE RIGHT REASON.
13      SO IN THAT, I WAS IN A WAY A LITTLE BIT FORCED TO BUY
14  CERTAIN PRODUCTS.  EVEN IF I WOULD HAVE CHOSEN APPLE AT THE
15  END, I WANTED TO BE MY FREE CHOICE NOT BECAUSE I ALREADY
16  INVESTED TIME AND MONEY IN THE LIBRARY. I FELT LIKE I STUCK.
17      AND ALSO I THINK THAT -- YOU KNOW, I STUDIED ECONOMICS TO
18  UNDERSTAND THAT IF WE WOULD HAVE A FEE --
19      MR. ISAACSON:  OBJECTION, YOUR HONOR.  SHE'S NOW
20  ABOUT TO MAKE STATEMENTS BASED ON HER BACKGROUND OF ECONOMICS.
21      THE COURT:  OVERRULED.
22  BY MS. BERNAY:
23  Q.  YOU CAN GO AHEAD AND ANSWER THE QUESTION AS YOU WERE
24  GOING.
25  A.  I JUST THINK THAT IF WE HAVE -- IF PEOPLE, YOU KNOW,

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

591

ROSEN - DIRECT / BERNAY

1  PEOPLE CAN LIKE A CD, FOR INSTANCE.  IF YOU HAVE A CD, IT HAS
2  NOTHING TO DO WITH MY BACKGROUND IN ECONOMICS.  IF I'M A
3  SIMPLE CONSUMER BUYING A CD FROM A RECORD COMPANY, THE RECORD
4  COMPANY DOESN'T TELL ME OR DOESN'T MAKE A CD SO I CAN USE IT
5  ONLY ON BANG & OLUFSEN. I CAN BUY A BANG & OLUFSEN OR ANY
6  OTHER CD PLAYER AND PLAY IT AND LISTEN TO MUSIC.  THERE'S NO
7  LIMITATIONS.  IT'S MY CHOICE WHAT KIND OF CD PLAYER TO BUY.
8      SO IF I BUY MUSIC FOR ITUNES, I THINK IT WOULD BE
9  BENEFICIAL FOR EVERYONE IF I COULD PUT THIS MUSIC IN ANY
10  DEVICE.  IF I CHOOSE TO BUY AN APPLE DEVICE, THAT'S FINE, BUT
11  I WANT TO MAKE THE FREE CHOICE.  I DON'T WANT ANYBODY TO MAKE
12  CHOICE FOR ME.
13  Q.  YOU UNDERSTAND YOU'RE A CLASS REPRESENTATIVE HERE?
14  A.  YES.
15  Q.  WHAT DOES THAT MEAN?
16  A.  WELL, I THINK I REPRESENT A LOT OF PEOPLE WHO HAVE SIMILAR
17  STORIES IN MY SITUATION, AND I JUST HAPPEN TO BE -- I'M HOPING
18  I'M ANSWERING, YOU KNOW, GIVING THE TESTIMONY BASED ON WHAT
19  THEY WOULD SAY.
20  Q.  AND DO YOU GET ANYTHING FOR BEING A CLASS REPRESENTATIVE?
21  A.  I DON'T THINK SO.  RATHER THAN, YOU KNOW, IF THERE'S GOING
22  TO BE ANY DAMAGES OR WHATEVER FOR THE CLASS OVERALL.  I DON'T
23  THINK I'M GETTING ANYTHING -- I HOPE MY EXPENSES FOR THE TRIP
24  HERE WOULD BE RETURNED.  THAT'S IT.
25  Q.  AND YOU MENTIONED THE TRIP HERE.  THAT'S ONE OF THE THINGS

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

592

ROSEN - DIRECT / BERNAY

1  THAT YOU'VE DONE IN THIS CASE.
2      WHAT ELSE HAVE YOU DONE AS A CLASS REPRESENTATIVE IN THIS
3  CASE?
4  A.  WELL, OTHER THAN MEETING FIRSTHAND WITH THE LAWYERS WHEN
5  THEY EXPLAIN TO ME, I THINK I WAS -- HAD ALL DAY DEPOSITION
6  BACK IN 2007 IN THE WINTER.  AND I THINK I HAVE BEEN ALSO
7  ASKED TO PROVIDE ACCESS TO MY COMPUTER THAT I HAD AT THAT
8  TIME, AND I REALLY DON'T KNOW WHAT THEY DID THERE.
9      AS I SAID, I DON'T KNOW, BUT THEY HAVE GOTTEN ACCESS TO
10  ALL MY RECORDS FROM MY COMPUTER, INCLUDING ITUNES LIBRARY AND
11  EVERYTHING ELSE.
12  Q.  DID YOU TURN OVER ANY DOCUMENTS OTHER THAN THOSE RECORDS,
13  DO YOU KNOW?
14  A.  IF I REMEMBER, I DON'T THINK SO.  I MIGHT HAVE ANSWERED
15  SOME EMAILS.  IT WAS A WHILE AGO.
16  Q.  AND DO YOU THINK BEING INVOLVED IN THIS CASE WAS THE RIGHT
17  THING TO DO?
18  A.  I THINK SO.  I HOPE I AM NOT HURTING ANYONE.  I REALLY
19  LIKE APPLE PRODUCTS.  I JUST THINK THAT, AGAIN, IT'S -- IF IT
20  HELPS IMPROVE EVEN APPLE AND MAKE IT EASIER TO USE AND MORE
21  TRANSFERABLE, I THINK IT'S A GOOD THING FOR EVERYONE.
22      MS. BERNAY:  I HAVE NO FURTHER QUESTIONS AT THIS
23  TIME, BUT MR. ISAACSON WILL BE ASKING YOU SOME.  THANK YOU.
24      THE COURT:  CROSS?
25      (BINDER HANDED TO WITNESS.)

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

593

ROSEN - CROSS / ISAACSON

1  ///
2  ///
3      CROSS-EXAMINATION
4  BY MR. ISAACSON:
5  Q.  GOOD AFTERNOON, MS. ROSEN.  MY NAME IS BILL ISAACSON.
6  I'VE GOT A FEW QUESTIONS FOR YOU.
7      NOW, YOU SAID THAT YOU BECAME A PLAINTIFF IN THIS ACTION
8  IN 2006 -- IN THE SUMMER OF 2006.
9      DID YOU REVIEW COMPLAINTS THAT WERE FILED BY YOUR LAWYERS
10  AFTER THAT ON YOUR BEHALF?
11  A.  I THINK SO.  WE DISCUSSED IT.
12  Q.  ALL RIGHT.  CAN I ASK YOU TO LOOK AT -- WE HAVE GIVEN YOU
13  A BINDER.
14  A.  UH-HUH.
15  Q.  I WILL ASK YOU TO LOOK AT 2593.
16      (EXHIBIT DISPLAYED TO JURY.)
17      JUST TAKE A LOOK AT THE FIRST PAGE.
18      DO YOU RECOGNIZE THIS IS A COMPLAINT THAT'S FILED IN 2010
19  AFTER YOU'RE A PLAINTIFF.  YOU WILL SEE THE NAMES OF YOUR
20  LAWYERS THERE.  IT'S THE AMENDED CONSOLIDATED COMPLAINT.  THIS
21  IS THE COMPLAINT THAT GOVERNS OUR ACTION.
22      DO YOU RECOGNIZE THIS AS A DOCUMENT YOU'VE READ BEFORE?
23  A.  ARE WE LOOKING AT THE FIRST PAGE, THE COVER PAGE?
24  Q.  IF YOU NEED -- WHATEVER YOU NEED TO DO TO FAMILIARIZE
25  YOURSELF TO ANSWER THE QUESTION WHETHER YOU'VE REVIEWED THIS

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

*In re Apple iPod iTunes Antitrust Litigation - Jury Trial Volume 3 - December 3, 2014*

Sheet 49

---

594

ROSEN - CROSS / ISAACSON

1  DOCUMENT BEFORE.
2  **A. YOU KNOW, IT WAS A WHILE AGO. SO THEY ALL LOOK MORE OR**
3  **LESS THE SAME LEGAL DOCUMENTS TO ME. I'M NOT A LAWYER. I**
4  **HAVE NO BACKGROUND IN THAT.**
5  **   IT LOOKS -- I MEAN I'VE DEFINITELY SEEN SOMETHING LIKE**
6  **THAT. I DON'T KNOW IF IT IS EXACTLY THIS ONE. I DON'T**
7  **REMEMBER THE DATES. I DIDN'T MEMORIZE IT.**
8  Q. SURE.
9  **A. I DIDN'T HAVE AN STACK OF THESE PAPERS IN MY DESK.**
10 Q. ON PAGE 3 OF 29, PARAGRAPH 7, DO YOU SEE YOUR NAME THERE
11 AS A PLAINTIFF?
12    PARAGRAPH 7?
13 **A. YES, I SEE MY NAME.**
14 Q. IF WE CAN TURN TO PAGE 6 -- PARAGRAPH 66, WHICH IS PAGE 14
15 OF 29.
16 **A. OKAY.**
17 Q. THIS IS THE COMPLAINT THAT GOVERNS THIS ACTION RIGHT NOW.
18 **A. UH-HUH.**
19 Q. AND IT SAYS:
20    "IN SEPTEMBER 2006, APPLE RELEASED 7.0."
21    NOW, YOU UNDERSTAND THIS CASE IS ABOUT 7.0 AND 7.4. DO
22 YOU UNDERSTAND THAT?
23 **A. RIGHT. I MEAN, IT LOOK -- AS I SAY, I AM NOT A VERY**
24 **TECHNOLOGICAL GUY. I JUST UNDERSTAND THE GIST OF IT. TO**
25 **UNDERSTAND THE WHOLE NUMBERS BEHIND IT, I WOULDN'T GO THAT**

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

---

596

ROSEN - CROSS / ISAACSON

1  RECENT COMPLAINT FILED BY YOUR LAWYERS. DO YOU STAND BY THIS
2  DOCUMENT?
3  **A. OF COURSE. I MEAN, IF WE DO UNDERSTAND -- IF I DO**
4  **UNDERSTAND CORRECTLY, I HOPE I DO, I STAND BY THIS DOCUMENT.**
5  Q. LET ME ASK YOU TO -- LET'S GO OVER YOUR PURCHASE HISTORY
6  OF IPODS. IT WENT BY A LITTLE QUICKLY.
7     SO YOU BOUGHT TWO IPODS IN 2004, CORRECT?
8  **A. CORRECT. BUT THE SECOND ONE WASN'T FOR ME. I BOUGHT IT**
9  **AS A GIFT AND I DIDN'T USE IT.**
10 Q. ALL RIGHT. AND YOU UNDERSTAND THAT THIS CLASS ACTION IS
11 FOR IPOD PURCHASERS BEGINNING IN SEPTEMBER 2006 RUNNING
12 THROUGH MARCH 2009.
13 **A. YEAH. I UNDERSTAND THAT.**
14 Q. THEN YOU BOUGHT A NEXT GENERATION BLACK IPOD IN
15 DECEMBER 2006, CORRECT?
16 **A. NO. I THINK I BOUGHT THE NEXT GENERATION BLACK IPOD IN**
17 **SEPTEMBER 2006. YOU SEE --**
18 Q. THAT'S FINE.
19 **A. -- THIS IS -- AGAIN, IT'S LONG TIME AGO.**
20 **   AND WHILE, YOU KNOW, I'M TRYING TO HAVE THE BEST**
21 **RECOLLECTION OF THIS EVENT, THE PURCHASE OF IPOD AND THAT**
22 **EVENT, MY LIFE GOES BY. WHAT I TRY TO REMEMBER, I BOUGHT IT**
23 **FOR MY SON, FOR MY SISTER GRADUATION. MY SON WAS BORN A MONTH**
24 **LATER. THAT'S HOW I REMEMBER IT.**
25 Q. I'M SORRY. I THINK YOU'RE ABSOLUTELY RIGHT ABOUT

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

---

595

ROSEN - CROSS / ISAACSON

1  FAR, BUT I UNDERSTAND WHAT THIS CASE IS ABOUT.
2  Q. AND IT SAYS THAT:
3     "APPLE RELEASED ITUNES 7.0 INTENDED TO PREVENT JHYMN
4     AND OTHER PROGRAMS FROM BEING USED TO CREATE
5     INTEROPERABILITY BETWEEN AUDIO DOWNLOADS PURCHASED
6     FROM THE ITUNES STORE AND NONAPPLE PORTABLE DIGITAL
7     MEDIA PLAYERS."
8     DID YOU UNDERSTAND WHEN THIS COMPLAINT WAS FILED, THAT
9  JHYMN WAS A KNOWN HACKER?
10 **A. I DON'T KNOW. YOU KNOW WHAT? I'M BASICALLY -- IF I WERE**
11 **MORE TECHNOLOGICALLY INCLINED, I WOULD HAVE KNOWN ALL THOSE**
12 **DIFFERENT NAMES. BUT BECAUSE I'M NOT, I GO STRAIGHT TO APPLE**
13 **ITUNES BUY STUFF AND I DON'T GO SURFING THE SET (SIC), SO I**
14 **DIDN'T KNOW WHAT AND WHO WAS A KNOWN HACKER. I DON'T KNOW**
15 **WHAT IT IS.**
16 Q. PARAGRAPH 66 GOES ON TO SAY:
17    "THROUGHOUT THE CLASS PERIOD, APPLE ISSUED SOFTWARE
18    UPDATES INTENDED TO PREVENT THE USE OF OTHER SIMILAR
19    PROGRAMS, INCLUDING QT FAIR USE AND PLAY FAIR."
20    DO YOU RECOGNIZE QT FAIRUSE AND PLAY FAIR AS KNOWN
21 HACKERS?
22 **A. I WOULD GIVE YOU THE SAME ANSWER. ACTUALLY I DON'T KNOW**
23 **WHAT IT IS AND WHAT THEY DO. NEVER USED THIS.**
24 Q. ALL RIGHT.
25    THIS COMPLAINT WAS FILED ON YOUR BEHALF. IT'S THE MOST

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

---

597

ROSEN - CROSS / ISAACSON

1  SEPTEMBER. I THOUGHT YOU SAID DECEMBER.
2     LET ME HELP YOU. IN YOUR BINDER IS 2784. THIS IS A
3  DOCUMENT YOUR LAWYERS GAVE US.
4     (EXHIBIT DISPLAYED TO JURY.)
5     ITUNES INFORMATION FOR MS. ROSEN. AND IF YOU TURN TO
6  PAGE 3 OF 23. IT IS NOT ALWAYS TO READ HERE, BUT IF WE CAN
7  BLOW IT UP.
8     THAT IS A RECEIPT FROM THE APPLE STORE FROM SEPTEMBER OF
9  2006. THAT WAS A RECEIPT YOU MUST HAVE GIVEN YOUR LAWYERS.
10 IT'S FOR A IPOD IS 30GIG BLACK IPOD.
11    THAT'S WHAT YOU PURCHASED IN SEPTEMBER 2006?
12 **A. RIGHT.**
13 Q. THAT WAS THE NEWEST GENERATION OF CLASSIC IPOD THAT WAS
14 AVAILABLE. IT WAS A NEW IPOD?
15 **A. UH-HUH.**
16 Q. I'M SORRY, THE COURT REPORTER NEEDS YOU TO SAY YES OR NO.
17 **A. YES. SORRY.**
18 Q. AND SO THAT WAS -- AT THAT TIME YOU UNDERSTAND THAT THAT
19 WAS A CLASSIC FIFTH GENERATION IPOD. THAT'S WHAT WAS ON SALE
20 IN SEPTEMBER OF 2006?
21 **A. YES.**
22 Q. YOU UNDERSTAND THAT THE PLAINTIFFS IN THIS CASE ARE NOT
23 CLAIMING ANY DAMAGES FROM THE FIFTH GENERATION IPODS; YOU
24 UNDERSTAND THAT, DON'T YOU?
25 **A. I DON'T UNDERSTAND WHY THIS IS -- I MEAN, IT'S A LITTLE**

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

---

*In re Apple iPod iTunes Antitrust Litigation - Jury Trial Volume 3 - December 3, 2014*

Sheet 50

---

**598**

ROSEN - CROSS / ISAACSON

1  BIT OF A LEGAL STAB THAT YOU ARE TRYING TO MAKE ME SAY "YES"
2  OR "NO" ABOUT. I DON'T UNDERSTAND WHY IS THAT IMPORTANT. I'M
3  TRYING TO TALK ABOUT MY OWN EXPERIENCE WITH THE IPODS.
4  Q. I UNDERSTAND. THERE MAY BE SOME THINGS I TALK ABOUT THAT
5  MAY NOT BE IMPORTANT TO YOU, BUT GIVE ME A LITTLE LEEWAY AND
6  WE WILL WORK THROUGH THEM.
7  A. RIGHT.
8  Q. DO YOU UNDERSTAND THAT YOUR FIFTH GENERATION IPOD THAT YOU
9  GOT IN SEPTEMBER 2006, THAT THE PLAINTIFFS AND THEIR EXPERT,
10  THE ECONOMIST, DR. NOLL, IS NOT SAYING THERE WAS ANY DAMAGES
11  ATTRIBUTABLE TO THAT IPOD.
12     DO YOU KNOW THAT?
13     MS. BERNAY: OBJECTION. IT'S CALLING FOR A LEGAL
14  CONCLUSION AT THIS POINT. IT'S GETTING A LITTLE BIT FAR --
15     THE COURT: OVERRULED.
16     MR. ISAACSON: THIS IS A STIPULATED FACT IF THAT WILL
17  HELP YOU.
18     THE COURT: THE QUESTION IS DOES SHE KNOW.
19     MR. ISAACSON: YES.
20     THE COURT: THAT IS THE QUESTION.
21  BY MR. ISAACSON:
22  Q. DO YOU KNOW THAT FOR THAT IPOD THAT NO DAMAGES ARE BEING
23  CLAIMED BY THE PLAINTIFFS?
24  A. OKAY. I UNDERSTAND THAT, I THINK.
25  Q. THEN YOU BOUGHT AN IPOD IN FALL OF 2007. I THINK THAT'S
DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

---

**599**

ROSEN - CROSS / ISAACSON

1  WHAT YOU SAID?
2  A. RIGHT.
3     IT'S AN IPOD NANO. IT IS THE NARROW VERSION OF IT. THE
4  ONE THAT CAME IN COLORS.
5  Q. AT THE TIME YOU BOUGHT THIS, YOU WERE A CLASS PLAINTIFF?
6  A. UH-HUH.
7  Q. I AM SORRY, YOU HAVE TO USE A WORD FOR THE COURT REPORTER.
8  A. YES.
9  Q. AND DO YOU HAVE THAT NANO TODAY?
10  A. I NOT SURE. I THINK I SHOULD HAVE IT BECAUSE -- I DON'T
11  HAVE IT TODAY WITH ME. WAS THAT THE QUESTION? OR DO I HAVE
12  IT IN MY HOUSE?
13  Q. WELL, BOTH.
14  A. I DON'T HAVE IT WITH ME. THAT'S FOR SURE.
15     I -- BECAUSE I MOVED AND RIGHT NOW MY HOUSE IS UNDER
16  CONSTRUCTION AND I HAVE A LOT OF MY STUFF STORED. I PRESUME
17  IT'S SOMEWHERE IN THE BOXES BECAUSE A LOT OF STUFF ARE IN
18  BOXES, BUT I DON'T HAVE IT, YOU KNOW, WITH ME IN THE APARTMENT
19  THAT I'M RENTING TEMPORARILY.
20  Q. YOU THINK YOU BOUGHT IT AT AN APPLE STORE?
21  A. I THINK I BOUGHT IT AT THE APPLE STORE.
22  Q. DID YOU KEEP THE RECEIPTS?
23  A. YOU KNOW, AGAIN, I TEND TO KEEP RECEIPTS FOR A COUPLE OF
24  YEARS, USUALLY, ESPECIALLY THE THINGS THAT I MIGHT RETURN
25  WHERE THERE IS A WARRANTY CONCERN, BUT ALL THE STUFF FROM
DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

---

**600**

ROSEN - CROSS / ISAACSON

1  2007, 2008, I DOUBT I HAVE IT.
2     AND ANOTHER REASON IS A LOT OF STUFF I HAD TO THROW AWAY
3  WHEN I WAS MOVING. EVEN IF I HAD IT --
4  Q. AT THE TIME YOU WERE A CLASS PLAINTIFF, YOU BOUGHT AN IPOD
5  AND YOU BELIEVE YOU THREW OUT THE RECEIPT AFTER A COUPLE OF
6  YEARS; IS THAT RIGHT?
7  A. I MIGHT HAVE. IF IT'S SO -- IF IT'S A CRUCIAL MATTER, ALL
8  OF IT CAN BE -- ALL THE RECEIPTS AND ALL THE RECORDS COULD BE
9  ON MY PURCHASES FROM APPLE ARE EASILY ACCESSIBLE.
10  Q. DID YOU UNDERSTAND THAT AS A CLASS PLAINTIFF, YOU WERE
11  SUPPOSED TO KEEP YOUR RECORDS RELATED TO THIS CASE, SUCH AS
12  YOUR PURCHASES OF IPODS?
13  A. I AM PRETTY SURE THAT ALL MY PURCHASES FROM APPLE WHICH
14  ARE IMPORTANT, CAN BE UPLOADED FROM MY HISTORY OF PURCHASES.
15  AND THEY SEND ME EMAILS, SO I DON'T THINK THE PHYSICAL PAPER
16  RECEIPT IS A CRUCIAL MATTER. IF NECESSARY --
17  Q. I --
18  A. -- WE CAN ACCESS, ANYONE CAN ACCESS THE RECEIPT.
19  Q. I APPRECIATE YOUR VIEWS ABOUT WHAT'S CRUCIAL AND NOT
20  CRUCIAL.
21     MY QUESTION IS, DID YOU UNDERSTAND YOU HAD AN OBLIGATION
22  AS A CLASS PLAINTIFF TO KEEP YOUR RECORDS RELATED TO THIS CASE
23  AND NOT THROW THEM OUT?
24  A. I AM SORRY --
25     MS. BERNAY: OBJECTION.
DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

---

**601**

ROSEN - CROSS / ISAACSON

1     THE WITNESS: -- I THINK THE QUESTION IS WHETHER I
2  UNDERSTOOD IT WAS CRUCIAL OR NOT. MY VIEWS ON THAT ARE
3  IMPORTANT, RIGHT?
4     SO ARE YOU ASKING ME AS A PLAINTIFF, I UNDERSTOOD IT WAS
5  IMPORTANT. I UNDERSTOOD THAT IN THIS DIGITAL DAY AND AGE, IF
6  NECESSARY, AND IF IT COME TO IT, ALL THOSE RECORDS CAN BE
7  EASILY ACCESSIBLE.
8  BY MR. ISAACSON:
9  Q. HAVE YOU MADE ANY ATTEMPT TO ACCESS THOSE RECORDS?
10  A. UNTIL I WAS ASKED TO. ON MY OWN VOLITION, NO. IF
11  SOMEBODY WOULD ASK ME, I CAN.
12  Q. SO NO ONE -- NONE OF YOUR LAWYERS HAVE ASKED YOU TO HAND
13  OVER ANY OF THE RECORDS OF YOUR PURCHASES?
14  A. NOT THAT I REMEMBER. I THINK THEY JUST TOOK MY WORD FOR
15  IT. I'M NOT LYING ABOUT MY PURCHASES.
16  Q. OKAY. AND YOU DON'T KNOW WHETHER YOU'VE THROWN OUT THE
17  RECEIPTS AND YOU DON'T KNOW WHETHER YOU STILL HAVE THAT IPOD
18  NANO; IS THAT RIGHT?
19     MS. BERNAY: OBJECTION, ASKED AND ANSWERED.
20     THE COURT: SUSTAINED. COMPOUND.
21     MR. ISAACSON: ALL RIGHT.
22  BY MR. ISAACSON:
23  Q. YOU DON'T KNOW WHETHER -- YOU DON'T KNOW WHETHER YOU THREW
24  OUT YOUR RECEIPTS FROM THE -- FOR THE PURCHASE OF THE IPOD
25  NANO; IS THAT CORRECT?
DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

---

*In re Apple iPod iTunes Antitrust Litigation - Jury Trial Volume 3 - December 3, 2014*

Sheet 51

602

ROSEN - CROSS / ISAACSON

1    MS. BERNAY: OBJECTION, ASKED AND ANSWERED.
2    THE COURT: OVERRULED.
3    THE WITNESS: I DON'T KNOW IF I THREW OUT THE
4    RECEIPT.
5    BY MR. ISAACSON:
6    Q. YOU DON'T KNOW WHETHER YOU KEPT THE IPOD AND WHETHER IT'S
7    AVAILABLE TO BE INSPECTED; IS THAT RIGHT?
8    **A. I THINK IT IS THE SAME QUESTION.**
9    **I AM PRETTY SURE THE IPOD IS IN ONE OF THE BOXES WHERE ALL**
10   **OF THE TECHNOLOGY IS IN MY NEW HOUSE STORED.**
11   Q. NOW, THE IPOD TOUCH, I BELIEVE YOU SAID YOU BOUGHT ONE OF
12   THOSE IN DECEMBER 2008; IS THAT RIGHT?
13   **A. YES, IT IS RIGHT.**
14   Q. ALL RIGHT. DID YOU KEEP ANY RECORDS OF THAT PURCHASE?
15   **A. AGAIN, I THINK ALL THE RECEIPTS FOR MY PURCHASE FROM THE**
16   **APPLE STORE WERE EMAILED TO ME. SO TO THE EXTENT THEY ARE**
17   **AVAILABLE ON THE SERVER OF MY MAIL, IT'S THERE.**
18   **BUT I DO -- I HAVE -- YOU KNOW, AGAIN, IF SOMEONE ASKS AND**
19   **IT BECOMES IMPORTANT, I THINK IT'S VERY EASILY ACCESSIBLE.**
20   Q. NO ONE HAS EVER ASKED YOU TO RETAIN YOUR RECORDS OF YOUR
21   PURCHASES OF IPODS AFTER THIS COMPLAINT WAS FILED; IS THAT
22   CORRECT?
23   **A. I DON'T REMEMBER IF ANYONE ASKED ME TO.**
24   Q. IS YOUR IPOD TOUCH -- DO YOU STILL HAVE THAT?
25   **A. YES.**
     DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

603

ROSEN - CROSS / ISAACSON

1    Q. WHERE IS THAT?
2    **A. I HAVE IT.**
3    Q. YOU HAVE IT HERE WITH YOU IN CALIFORNIA?
4    **A. YES.**
5    Q. ALL RIGHT.
6    NOW, YOU MENTIONED YOUR HUSBAND. YOU SAID YOUR HUSBAND
7    KNEW THE LAWYERS. YOUR HUSBAND, I THINK YOU SAID, IS A
8    PLAINTIFFS' CLASS ACTION LAWYER, RIGHT?
9    **A. HE'S A SECURITIES LITIGATION --**
10   Q. YES.
11   THE REPORTER: I'M SORRY.
12   BY MR. ISAACSON:
13   Q. AND YOU WORKED SOME WITH HIS LAW FIRM, CORRECT?
14   THE COURT: MR. ISAACSON, HOLD ON.
15   DID YOU GET THAT?
16   THE REPORTER: NOT THE END OF IT.
17   BY MR. ISAACSON:
18   Q. I NEED YOU TO REPEAT YOUR ANSWER.
19   **A. CLASS ACTION.**
20   Q. AND YOU'VE WORKED FOR YOUR HUSBAND'S LAW FIRM DOING
21   BOOKKEEPING, ACCOUNTING, GENERAL OFFICE MANAGER MATERIAL,
22   RIGHT?
23   **A. RIGHT. PAYROLL PROCESSING, THINGS LIKE THAT.**
24   Q. YOU GOT INVOLVED IN THIS LAWSUIT BECAUSE YOUR HUSBAND
25   MENTIONED IT. YES?
     DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

604

ROSEN - CROSS / ISAACSON

1    **A. I -- I WOULDN'T MAKE THAT CONJECTURE. I DON'T THINK I GOT**
2    **INVOLVED IN THIS LAWSUIT BECAUSE MY HUSBAND MENTIONED IT.**
3    **IT IS A LITTLE BIT INCORRECT. I THINK HE MENTIONED MY**
4    **NAME TO THE LAWYERS AND THEY CONTACTED ME. I DIDN'T GET**
5    **INVOLVED BECAUSE HE MENTIONED IT.**
6    Q. ALL RIGHT. NOW THAT SOUNDS MORE ACCURATE.
7    NOW, YOU KNOW THE LAWYERS FROM THE LAW FIRM HERE, ROBBINS
8    GELLER, A FINE LAW FIRM?
9    **A. YES.**
10   Q. AND YOUR HUSBAND WORKS WITH THIS LAW FIRM IN MANY CASES,
11   RIGHT?
12   **A. I HAVE NO IDEA. MY UNDERSTANDING -- THAT THEY WOULD NOT**
13   **HAVE ANYTHING TO DO WITH EACH OTHER BECAUSE MY HUSBAND DOESN'T**
14   **DO CONSUMER FRAUD. HE DOES SECURITIES FRAUD, WHICH IS**
15   **DIFFERENT.**
16   Q. ALL RIGHT. DOES YOUR HUSBAND TALK ABOUT HIS CASES WITH
17   YOU?
18   **A. WE ACTUALLY -- I DON'T KNOW IF I'M SOLICITING MORE**
19   **INFORMATION RIGHT NOW.**
20   **I'M ACTUALLY DIVORCED AND WE HAVE NOT BEEN LIVING TOGETHER**
21   **AND DISCUSSING HIS CASES FOR OVER TWO YEARS.**
22   Q. ALL RIGHT. I WILL CONFINE MYSELF TO PERIOD BEFORE THAT
23   HAPPENED.
24   SO FROM 2006 UNTIL ABOUT TWO YEARS AGO, DO YOU REMEMBER
25   TALKING FROM TIME TO TIME ABOUT SOME OF YOUR HUSBAND'S CASES,
     DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

605

ROSEN - CROSS / ISAACSON

1    THE CASE NAMES?
2    **A. I KNEW THE CASE NAMES VERY WELL, OF COURSE. BUT I**
3    **DIDN'T -- I WOULDN'T DISCUSS THE DETAILS OF THE LITIGATION.**
4    **SOMETIMES IF THINGS GO BAD HE WOULD COME BACK FRUSTRATED AND**
5    **SAY THAT, YOU KNOW, SOMETHING WENT WRONG, THINGS LIKE THAT,**
6    **BUT WE DIDN'T GET INTO DETAILS.**
7    Q. DO YOU REMEMBER THE NAMES OF ANY OF THE CASES?
8    **A. I REMEMBER THE NAMES OF SOME OF THE CASES, I GUESS, BUT I**
9    **DON'T THINK IT'S -- THAT'S -- I WOULD PROBABLY BE FILING SOME**
10   **RECEIPTS AND THINGS LIKE THAT RELATED TO THE CASES.**
11   Q. LET ME SEE IF I CAN REFRESH YOUR MEMORY ON SOME NAMES.
12   **A. YES.**
13   Q. I'M GOING TO SHOW THIS TO HER.
14   (BINDER HANDED TO COUNSEL AND WITNESS.)
15   BY MR. ISAACSON:
16   Q. I KNOW THIS LOOKS LARGE, I'M TRYING TO MAKE IT EASY FOR
17   YOU.
18   WE HAVE COLLECTED 18 CASES OVER THE LAST FIVE YEARS WHICH
19   YOUR HUSBAND HAS WORKED ON. AND SO THERE'S 18 TABS AND WE
20   HAVE PUT POST-ITS WHERE WE CAN FIND YOUR HUSBAND'S NAME.
21   SO, FOR EXAMPLE, THE FIRST TAB, THERE'S A CASE CALLED IN
22   RE: GALENA BIOPHARMA SECURITIES LITIGATION. AND AT PAGE 8 OF
23   21, YOUR HUSBAND IS A LAWYER ON THAT CASE. THAT'S YOUR FORMER
24   HUSBAND.
25   ISN'T THAT ON PAGE 8 OF 21? WE HAVE HIGHLIGHTED IT FOR
     DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

*Raynee H. Mercado, CSR, RMR, CRR, FCRR and Diane E. Skillman, CSR, RPR, FCRR*

*In re Apple iPod iTunes Antitrust Litigation - Jury Trial Volume 3 - December 3, 2014*

Sheet 52

606

ROSEN - CROSS / ISAACSON

1  YOU.
2  **A. YES. CAN I ASK A QUESTION? WHERE WOULD I SEE THE SAME OF**
3  **THE CASE?**
4  Q. IT IS ON THE FIRST PAGE AT THE TOP.
5  **A. I AM SORRY. I AM NOT SURE I UNDERSTAND. THIS IS PAGE 8,**
6  **RIGHT?**
7      MR. ISAACSON: MAY I APPROACH?
8      THE COURT: YOU MAY.
9          (COUNSEL ASSISTS WITNESS.)
10 BY MR. ISAACSON:
11 Q. ON PAGE 1 AT THE TOP, WOULD BE THE CASE NAME. AND THEN ON
12 PAGE 8 --
13 **A. OKAY. THIS IS THE BEGINNING.**
14 Q. THAT'S YOUR EX-HUSBAND?
15 **A. THAT'S MY EX-HUSBAND. THE CASE WAS FILED, IF I READ IT**
16 **CORRECTLY, IN 2014.**
17    **ME AND MY HUSBAND WERE ACTIVELY PITTED AGAINST EACH OTHER**
18 **IN OUR DIVORCE, AND THE LAST THING I WOULD DISCUSS WITH HIM IS**
19 **HOW HE'S DOING IN HIS LAW PRACTICE. AND YOU CAN UNDERSTAND**
20 **WHY.**
21 Q. ALL RIGHT. I WAS UNAWARE OF THAT WHEN WE PUT TOGETHER THE
22 BINDER.
23    LET ME ASK YOU TO LOOK AT TAB 3.
24    THIS CASE, IS BACK IN 2011, FEBRUARY. WERE YOU MARRIED AT
25 THIS TIME?

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

607

ROSEN - CROSS / ISAACSON

1  **A. WE -- IN JUNE 2011 THAT WAS THE TIME WHEN HE RETAINED HIS**
2  **LAWYER. SO WE WERE MARRIED AT THE TIME TECHNICALLY,**
3  **TECHNICALLY STILL MARRIED BECAUSE THE JUDGMENT WILL BE ENTERED**
4  **ON THE 8TH OF DECEMBER.**
5  Q. THINGS WERE NOT GOING WELL?
6  **A. NO.**
7  Q. I WON'T INTRUDE INTO THAT.
8     ALL RIGHT. LET'S TRY TAB 10. HUFNAGEL VERSUS RHINO
9  INTERNATIONAL CORPORATION (PHONETIC).
10 NOVEMBER 2010. YOUR HUSBAND IS HIGHLIGHTED ON THE FIRST
11 PAGE. DO YOU SEE THAT?
12 **A. I SEE HIM BEING HIGHLIGHTED, YES.**
13 Q. THIS IS A CASE NAME YOU RECOGNIZE?
14 **A. I HEARD THE NAME NAGEL (PHONETIC) FROM HIM, I GUESS.**
15 Q. IF YOU LOOK ON PAGE 4, DO YOU SEE THAT ROBBINS GELLER WAS
16 CO-COUNSEL WITH YOUR HUSBAND IN THIS CASE?
17 **A. I SEE IT HIGHLIGHTED. CAN -- AM I ALLOWED TO ASK**
18 **QUESTIONS, TOO? NO?**
19 Q. I THINK IT WOULD GO QUICKER IF YOU LET ME ASK THE
20 QUESTIONS. YOUR COUNSEL GETS TO ASK YOU QUESTIONS.
21 **A. I DON'T UNDERSTAND. THERE'S A LOT OF LAWYERS ON THIS**
22 **CASE. I WOULD NOT KNOW ALL OF THEM.**
23 Q. RIGHT.
24 **A. AND IF I UNDERSTAND CORRECTLY, THE WAY SECURITIES CLASS**
25 **ACTION LITIGATION WORKS, THERE'S A LOT OF PEOPLE FILING.**

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

608

ROSEN - CROSS / ISAACSON

1  Q. YES.
2  **A. AND THEY MAY NOT BE AWARE OF EACH OTHER EXISTENCE OR THEY**
3  **WILL, BUT THEY'RE NOT NECESSARILY WORKING TOGETHER.**
4  Q. OR --
5  **A. IT IS MY UNDERSTANDING.**
6  Q. OR THEY ARE WORKING TOGETHER IN A LOT OF CASES, AND NOT
7  MENTIONING IT TO THEIR WIFE. THAT'S HOW THE CLASS ACTION
8  WORLD CAN WORK, RIGHT?
9  **A. THAT'S ENTIRELY POSSIBLE. BECAUSE I HAVE NO IDEA HOW MANY**
10 **PEOPLE HE WORKS WITH.**
11 Q. YOUR HUSBAND HAS NEVER MENTIONED THE FACT -- YOUR
12 EX-HUSBAND NEVER MENTIONED THE FACT THAT HE WORKED WITH
13 ROBBINS GELLER FIRM IN MANY, MANY CASES, DID HE?
14 **A. NO.**
15 Q. OKAY.
16    THE COURT: THREE MINUTES. I DON'T KNOW IF THIS IS A
17 GOOD TIME TO BREAK, OR IF YOU HAVE GOT SOMETHING YOU CAN DO IN
18 THREE MINUTES.
19    MR. ISAACSON: I CAN DO SOMETHING IN THREE MINUTES.
20 I MIGHT BE ABLE TO BE DONE IN FIVE ALTOGETHER WHICH WOULD BE
21 GOOD FOR THE WITNESS.
22    THE COURT: THAT WOULD BE.
23 BY MR. ISAACSON:
24 Q. YOU BASICALLY HAVE -- AT LEAST -- BACK IN 2007, YOU HAD NO
25 KNOWLEDGE OF COMPUTERS. THAT WAS HOW YOU CHARACTERIZED

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

609

ROSEN - CROSS / ISAACSON

1  YOURSELF?
2  **A. I MEAN NO KNOWLEDGE IS PROBABLY A STRONG WORD. I USED**
3  **COMPUTERS, BUT I DON'T KNOW HOW THEY WORK. I STILL DON'T KNOW**
4  **HOW THEY WORK.**
5  Q. RIGHT, BUT YOU KNEW HOW TO BURN CD'S.
6  **A. YES.**
7  Q. YOU BURNED A LOT OF CD'S?
8  **A. I DID.**
9  Q. YOU HAD --
10 **A. WELL, IF YOU SAY "BURN", NO. I COPIED A LOT OF CD'S. I**
11 **THINK BURN IS THE OPPOSITE PROCESS, RIGHT? IS WHEN YOU CREATE**
12 **A CD.**
13 Q. OR YOU -- YOU COPIED A LOT OF THEM, YOU RIPPED THEM INTO
14 YOUR ITUNES?
15 **A. I COPIED THEM INTO MY ITUNES.**
16 Q. ALL RIGHT. AND YOU HAD A NANNY WHO WAS MUCH MORE COMPUTER
17 LITERATE THAN YOU; YOU HAD HER COPY MUSIC FILES FROM YOUR
18 COMPUTER, RIGHT?
19 **A. I'M SORRY, WHEN YOU SAY "COPY MUSIC FILES FROM MY**
20 **COMPUTER", TO WHERE?**
21 Q. WELL, YOU HAD HER HELP YOU WITH COPYING SOME MUSIC FILES
22 BECAUSE YOU HAD DIFFICULT WITH THAT. YOUR NANNY WAS BETTER
23 WITH THAT, SO YOU HAD HER HELP YOU?
24 **A. MAYBE. IT SOUNDS ENTIRELY POSSIBLE.**
25 Q. AND YOU NEVER ASKED YOUR NANNY, HOWEVER, TO HELP YOU BURN

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

*In re Apple iPod iTunes Antitrust Litigation - Jury Trial Volume 3 - December 3, 2014*

Sheet 53

610

ROSEN - CROSS / ISAACSON

1 ANY CD'S; THAT WAS EASY FOR YOU?
2 **A. WHEN YOU SAY "BURNING CD'S" YOU MEAN CREATING --**
3 Q. I'M SORRY, COPYING CD'S INTO THE ITUNES LIBRARY. THAT WAS
4 EASY FOR YOU?
5 **A. IT IS RELATIVELY STRAIGHTFORWARD PROCESS. YOU ARE**
6 **PROMPTED BY ITUNES PROGRAM WHAT TO DO.**
7 Q. NOW, IN THIS CASE, YOU'VE -- DO YOU UNDERSTAND THE CLASS
8 ALSO INCLUDES BUSINESSES LIKE WAL-MART AND BEST BUY?
9 **A. THAT'S WHAT IT SAYS ON THE COVER. I UNDERSTOOD FROM**
10 **READING, YES.**
11 Q. YOU'VE NEVER SPOKEN TO ANY OF THOSE PEOPLE, HAVE YOU?
12 **A. FROM -- REGARDING THIS PARTICULAR LAWSUIT?**
13 Q. RIGHT. AS PART OF YOUR WORK AS CLASS REPRESENTATIVE,
14 YOU'VE NEVER SPOKEN TO ANY OF THE BUSINESSES IN THE CLASS?
15 **A. NO. I HAVEN'T SPOKEN TO THEM, NO, ABOUT THIS LAWSUIT.**
16 NO.
17 Q. RIGHT. AND ONE FINAL THING THEN.
18 WHEN YOU BOUGHT YOUR FIRST IPOD IN 2004, YOU BELIEVED THAT
19 THE IPOD ONLY WORKED WITH ITUNES, CORRECT?
20 **A. I DIDN'T -- WHEN I ACTUALLY WAS BUYING THAT, I DIDN'T GO**
21 **THROUGH THE PROCESS OF BUYING MUSIC, ET CETERA. I DIDN'T**
22 **REALLY THINK ONE WAY OR THE OTHER.**
23 **YOU KNOW, WHEN YOU DON'T ENCOUNTER THE PROBLEM, YOU DON'T**
24 **FORM ANY BELIEFS. ONCE YOU HAVE AN ISSUE, YOU FORM BELIEFS.**
25 **SO I HAVEN'T HAD AN ISSUE AT THAT TIME. I HAVE NOT HAD ANY**
DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

611

ROSEN - REDIRECT / BERNAY

1 **OPINION ON THE MATTER WHEN I WAS BUYING.**
2 Q. WELL, AT SOME POINT BEFORE THE COMPLAINT WAS FILED, YOU
3 FORMED THE BELIEF --
4 **A. I FORMED THAT BELIEF, YES.**
5 Q. THAT APPLE PRODUCTS WORK TOGETHER AND IPOD ONLY WORKED
6 WITH ITUNES. YOU HAD THAT BELIEF BEFORE THE COMPLAINT WAS
7 FILED, RIGHT?
8 **A. I BELIEVE SO, YES.**
9 Q. AND WHEN YOU BOUGHT YOUR IPODS AFTER THE LAWSUIT WAS
10 FILED, YOU ALREADY BELIEVED THAT ITUNES AND IPOD ONLY WORKED
11 TOGETHER. THAT WAS YOUR BELIEF?
12 **A. RIGHT.**
13 MR. ISAACSON: I HAVE NO FURTHER QUESTIONS.
14 THE COURT: DO YOU HAVE ANY REDIRECT?
15 MS. BERNAY: JUST VERY QUICK.
16 REDIRECT EXAMINATION
17 BY MS. BERNAY:
18 Q. MS. ROSEN, YOU MENTIONED THE IPOD TOUCH, AND MR. ISAACSON
19 ASKED YOU IF IT WAS HERE IN CALIFORNIA. DO YOU REMEMBER THAT?
20 **A. UH-HUH.**
21 Q. DO YOU HAVE THAT IPOD TOUCH ACTUALLY WITH YOU TODAY IN
22 COURT?
23 **A. I DON'T HAVE -- I THINK I HAVE IT WITH ME IN MY BAG.**
24 Q. WOULD YOU BE WILLING TO SHOW THAT TO THE APPLE LAWYERS, IF
25 THEY ASKED?
DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

612

1 **A. OF COURSE. IF SOMEONE NEEDS IT TO LOOK AT IT, OF COURSE.**
2 MS. BERNAY: NOTHING FURTHER. THANK YOU, YOUR HONOR.
3 THE COURT: ANY QUESTIONS ON THAT TOPIC ONLY?
4 MR. ISAACSON: NO, YOUR HONOR. WE WILL RAISE THE
5 TOPIC AFTER THE WITNESS HAS BEEN EXCUSED.
6 THE COURT: OKAY. THEN YOU ARE EXCUSED.
7 I HEAR NO REQUEST FROM APPLE TO INSPECT THE IPOD, CORRECT?
8 MR. ISAACSON: I WAS GOING TO WAIT FOR HER TO BE
9 EXCUSED. YES, WE WOULD --
10 THE COURT: IF I EXCUSE HER, I LOSE JURISDICTION.
11 MR. ISAACSON: I WOULD TRUST THE PLAINTIFFS' LAWYERS
12 WOULD WORK WITH HER.
13 THE COURT: I WILL TELL YOU WHAT. YOU CAN STEP DOWN.
14 YOU ARE NOT EXCUSED QUITE YET. BUT YOU CAN GO DOWN RIGHT HERE
15 NEXT TO YOUR LAWYERS.
16 I'M GOING TO LET THE JURY GO. IT'S THE END OF OUR TRIAL
17 DAY.
18 LADIES AND GENTLEMEN, AGAIN, APOLOGIES FOR THAT FALSE
19 ALARM. I GUESS IT'S GOOD TO KNOW THAT IT WORKS.
20 YOU'VE NOW HEARD A DAY AND A HALF OF REAL EVIDENCE. SO
21 NOW HOPEFULLY MY INSTRUCTIONS ARE BEGINNING TO MAKE MORE SENSE
22 TO YOU ABOUT YOUR LACK OF ABILITY TO DO ANYTHING OUTSIDE THIS
23 COURTROOM. SO NO RESEARCH, NO CONSULTING DICTIONARIES, NO
24 SEARCHING THE INTERNET. DO NOT INVESTIGATE ANY OF THESE
25 ISSUES. DO NOT INVESTIGATE ANY OF THE HISTORY. DO NOT
DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

613

1 INVESTIGATE ANY OF THESE ENTITIES.
2 ALL RIGHT? DON'T DO ANY OF THAT. YOU'VE HAD A FULL DAY
3 OF THIS CASE. GO AND DO OTHER THINGS. FINISH YOUR HOLIDAY
4 SHOPPING. GET SOME WORK DONE. TAKE A NAP, IF YOU NEED TO.
5 REMEMBER, DO NOT COMMUNICATE WITH ANYONE IN ANY WAY ABOUT
6 THIS CASE AND DO NOT LET ANYONE ELSE COMMUNICATE WITH YOU.
7 AS I MENTIONED TO YOU EARLIER, SOMETIMES WHEN COMPANIES
8 LIKE APPLE ARE IN LITIGATION, THERE'S A LOT OF PRESS, SO DO
9 NOT LOOK AT THE PRESS. NO EMAILS, SOMEONE FORWARDS THEM TO
10 YOU, IF THEY HAPPEN TO SEE YOU WALK OUT OF THE COURTHOUSE AND
11 SAID, HEY, THAT PERSON HAS A JUROR TAG I KNOW THAT PERSON, AND
12 THIS MAY BE THE ONLY TRIAL GOING ON IN THIS COURTHOUSE, YOU
13 HAVE TO DELETE IT. DON'T LOOK AT IT. DON'T THINK ABOUT IT.
14 LISTEN TO MUSIC. DON'T LISTEN TO THE NEWS, IF YOU CAN AVOID
15 IT. CHANGE THE CHANNEL.
16 BUT, PLEASE, WE IMPRESS UPON YOU THE NEED TO TRY AND KEEP
17 YOURSELVES AS ISOLATED AS POSSIBLE FROM ANY OUTSIDE INFLUENCE
18 WITH RESPECT TO THIS CASE. OKAY?
19 ANY QUESTIONS AT THIS POINT? IS THAT REFRIGERATOR BIG
20 ENOUGH FOR SNACKS?
21 YES. YOU DO HAVE SOMETHING? I THINK I GOT A HIGHLIGHT ON
22 THIS ONE. THIS IS ABOUT EVIDENCE PRESENTATION?
23 JUROR: (NODS HEAD.)
24 THE COURT: I WILL TALK TO THEM ABOUT THAT.
25 ANYTHING ELSE? NO?
DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

# EXHIBIT 5

UNITED STATES DISTRICT COURT

*CERTIFIED COPY*

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE


THE APPLE IPOD ITUNES          )          NO. C 05-00037 YGR
ANTITRUST LITIGATION           )
                               )          PAGES 198 - 401
                               )
                               )          **JURY TRIAL VOLUME 2**
                               )
                               )
                               )          OAKLAND, CALIFORNIA
_____)          TUESDAY, DECEMBER 2, 2014


### REPORTERS' TRANSCRIPT OF PROCEEDINGS


APPEARANCES:

FOR PLAINTIFFS:          ROBBINS GELLER RUDMAN & DOWD LLP
                         655 WEST BROADWAY, SUITE 1900
                         SAN DIEGO, CALIFORNIA  92101
                BY:  ALEXANDRA S. BERNAY,
                     JENNIFER N. CARINGAL,
                     PATRICK COUGHLIN,
                     STEVEN M. JODLOWSKI,
                     CHARLES MCCUE,
                     CARMEN A. MEDICI,
                     BONNY E. SWEENEY, ATTORNEYS AT LAW

                         BONNETT FAIRBOURN FRIEDMAN & BALINT PC
                         4023 CAIN BRIDGE ROAD
                         FAIRFAX, VIRGINIA 22030
                BY:  FRANCIS J. BALINT, JR.
                     ATTORNEY AT LAW

                (APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:          RAYNEE H. MERCADO, CSR NO. 8258
                      DIANE E. SKILLMAN, CSR NO. 4909

    PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.


*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

# I N D E X

|                                             | **PAGE** | **VOL.** |
|---------------------------------------------|----------|----------|
| OPENING STATEMENT BY MS. SWEENEY            | 214      | 2        |
| OPENING STATEMENT BY MR. COUGHLIN           | 243      | 2        |
| OPENING STATEMENT BY MR. ISAACSON           | 268      | 2        |

| **PLAINTIFFS' WITNESSES**                   | **PAGE** | **VOL.** |
|---------------------------------------------|----------|----------|
| RIEGEL, KENNETH                             |          |          |
| DIRECT EXAMINATION BY MR. COUGHLIN          | 310      | 2        |
| CROSS-EXAMINATION BY MS. DUNN               | 335      | 2        |

| MARTIN, DAVID                               |          |          |
|---------------------------------------------|----------|----------|
| SWORN                                       | 345      | 2        |
| DIRECT EXAMINATION BY MR. COUGHLIN          | 346      | 2        |