# BOIES, SCHILLER & FLEXNER LLP

5301 Wisconsin Avenue N.W.   *   Washington, DC 20015-2015   *   PH 202.237.2727   *   FAX 202.237.6131

December 8, 2014

Honorable Yvonne Gonzalez Rogers
United States District Court
Northern District of California
Oakland Branch
1301 Clay Street
Oakland, CA 94612

      Re:   *Apple iPod iTunes Antitrust Litigation*
           Case No. C-05-0037

Dear Judge Gonzalez Rogers:

    Apple submits this letter addressing a number of items in preparation for tomorrow's charge conference, and to respond to Plaintiffs' letter regarding the draft instruction on genuine product improvements. Dkt. 970. Apple notes that it will have a few additional items to raise at the charging conference, but submits this letter in an effort to aid the Court and streamline the issues.

    **1.   Genuine Product Improvements Instruction (Court's Draft, p. 21)**

    Plaintiffs say they are "masters of their claim," but in fact the Court has already included the "KVC" and "DVC" in Plaintiffs' claim. Conforming the Court's other references to Plaintiffs' claim would result in the Court espousing Plaintiffs' theory of the case in its instructions. Plaintiffs are not entitled to this. As the Court noted in addressing this same issue with the jury's preinstruction, "Ms. Sweeny, that is your theory. I'm not here to – to sanction your theory. . . . What was given to the consumer was 7.0 and 7.4. You're going to argue about what that means, and they're going to have their arguments about what that means." 12/1/2014 Tr. 38:18-39:22.

    The evidence at trial has weakened, not strengthened, Plaintiffs' argument because it has shown the entire iTunes 7.0 and 7.4 updates, particularly the security architecture, cannot be disaggregated as Plaintiffs suggest. As Augustin Farrugia testified, the keybag integrity check is part of the fully redesigned keybag architecture that Apple rolled out in the iPod in 7.0. *See* Trial Tr. (Farrugia) 535:2-20. It is actually part of the keybag. Trial Tr. (Farrugia) 521:4-524:25. The database is also an integral part of the iPod firmware and cannot be considered in isolation. *See* Trial Tr. (Robbin) 997:25-998:8. Moreover, Apple's updates of FairPlay for the same release in which it offered feature-length movies for the first time was part of its overall strengthening and improvement of the DRM in preparation for the demands of those content owners, who had, unlike the record labels, never offered their material in an unprotected format. *Cf.* Trial Tr.

(Farrugia) 515:10-515:23; (Cue) 725:20-726:14, 737:6-738:6; (Robbin) 1013:3-15.  The additional features in iTunes 7.0, including its offering of video content and other features that required increased security, cannot be disaggregated from the security architecture redesign that it implemented, and must be considered as a whole.

The Ninth Circuit has not adopted the approach Plaintiffs' urge on this Court; instead, it has treated products as a whole.  In *Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*, 592 F.3d 991, 993, 1001-04 (9th Cir. 2010), the court asked whether OxiMax, the "patented pulse oximetry system," was a product improvement.  There, the second generation design "mov[ed] the digital memory chip from the monitor to the sensor," which allowed Tyco to add new features to sensors, but also made Plaintiff's generic sensors (which lacked memory chips) incompatible with the second generation monitors.  *Id.* at 994.  It was "undisputed that by placing a digital memory chip in the sensor and moving the calibration coefficients from the monitor to the sensor, Tyco made its new OxiMax system incompatible with generic sensors and harmed generic sensor manufacturers."  *Id.* at 1000.  Yet the Ninth Circuit did not constrain its examination of whether the system was a product improvement to the decision to moving the chip from the monitor to the sensor or moving the calibration coefficients.  Instead, the court noted that it had to decide "whether there remains a genuine issue that OxiMax sensor design provided some new benefit to consumers," *id.* at 1000, including whether that design "allows it to introduce new types of sensors without requiring its customers to purchase new monitors or reprogram their installed base of monitors," *id.* at 1001, or whether the "introduction of new types of sensor and sensor functions and will reduce costs for consumers in the long run."  *Id.*  In short, consistent with Ninth Circuit law, the jury should be entitled to consider the product consumers were provided—here, iTunes 7.0 and 7.4—in deciding whether the product at issue was an improvement.

Plaintiffs also mischaracterize the record in discussing Judge Ware's 2011 summary judgment decision.  As Apple has noted, Judge Ware held that the "product" at issue is iTunes 7.0 and 7.4, not the isolated elements on which Plaintiffs choose to focus.  *In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1147 (N.D. Cal. 2011).  In the very block quote Plaintiffs cite, Judge Ware asked whether iTunes 7.0 was "introduced to guard against the risk of corruption."  Apple has put on evidence that the security redesign in 7.0 and 7.4, including the integrity checks (but not limited to them), did just that, and much more—*e.g.*, protected the user experience, introduced new features to consumers, blocked both direct and indirect attacks from hackers. *See, e.g.*, Trial Tr. (Farrugia) 463:1-5, 489:17-491:22; 497:18-20, 498:1-499:10; 529:23-532:12; 538:20-539:8; (Martin) 438:24-439:11; (Robbin) 997:6-998:8.  Moreover, Apple in its 2011 motion papers argued that it introduced a redesigned FairPlay that included a new keybag that was more secure against attacks *and* reduced corruption created by injection.  *See generally* Dkt. 473.

Plaintiffs' citation to *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001), is inapposite.  *Microsoft* did not involve a simple product improvement, but rather an extended course of conduct that involved threatening actual and potential competitors, deceptive behavior, exclusionary contracts, and other conduct.  *Allied Orthopedic* makes clear that technical innovation that excludes competitors, without more, is not a basis for liability.  In *Microsoft*,

Honorable Yvonne Gonzalez Rogers
December 8, 2014
Page 3

there was substantial evidence of an additional course of conduct; the product design was a small part of the overall case.  Furthermore, the D.C. Circuit's statement that "[i]n order to violate the antitrust laws, the incompatible product must have an anticompetitive effect that outweighs any procompetitive justification for the design," *id.* at 75, is squarely at odds with the Ninth Circuit's mandate in *Allied Orthopedic* that "[t]here is no room in this analysis for balancing the benefits or worth of a product improvement against its anticompetitive effects." *Allied Orthopedic*, 592 F.3d at 1000.  Apple also notes that, unlike Apple here, Microsoft gave "no justification for two of the three challenged actions that it took in integrating IE into Windows." *Microsoft*, 253 F.3d at 66.

In addition, Plaintiffs simply cannot prove that the two "challenged" aspects of iTunes 7.0 and 7.4 on which they now narrowly focus caused any of the harm they claim.  Multiple aspects of the FairPlay redesign begun in 2005 with Augustin Farrugia's hiring and continuing through iTunes 7.0 and beyond, which Plaintiffs do not dispute made the system more secure, would have ended interaction with the iPod by unauthorized third parties.  The fact that Plaintiffs chose not to challenge those aspects, even though they would have had the *exact same effect* that Plaintiffs are now claiming was anticompetitive, is not a reason to instruct the jury incorrectly.

Finally, Plaintiffs wrongly contend that there is "no difference between a genuine product improvement defense and a legitimate business justification defense."  As the ABA model rules (and the Court's proposed instructions) make clear, Plaintiffs cannot establish that Apple willfully maintained monopoly power through anticompetitive conduct without proving that Apple did not have a legitimate business purpose in issuing iTunes 7.0 and 7.4 updates and related technology.  Apple has already met its burden of production on several such purposes—*e.g.*, improving security and stability of its products, protecting the integrity of its integrated platform and user experience, responding to potential violations of the Digital Millennium Copyright Act, and detecting tampering and corruption in its products.  Whether iTunes 7.0 and 7.4 were in fact genuine product improvements is a different question that its business justification and requires a separate finding.  Moreover, given Plaintiffs' reliance on pretext, *i.e.*, the assertion of illegitimate business justification, it is surprising that they would argue so strenuously against a separate instruction that Apple had a legitimate business justification. The Court should once again reject Plaintiffs' attempt to limit their burden of proving anticompetitive conduct.

Separate from its response to Plaintiffs' letter, Apple attaches as Attachment A a revised proposed instruction on genuine product improvements and legitimate business purposes (No. 31) to conform to the Court's preliminary law of the case instruction.  Apple also attaches a redline as Attachment B.  We propose these suggestions in an effort to make this instruction more balanced and we correct and leave undisturbed Plaintiffs' references to "KVC" and "DVC," even though we oppose them, in an effort to accommodate Plaintiffs' preferences in characterizing their claim.

2. **Withdrawal of Submitted Instructions**

Apple respectfully withdraws its Proposed Instructions Nos. 39, 41, and 42.

Honorable Yvonne Gonzalez Rogers
December 8, 2014
Page 4

### 3. Direct Purchaser Instruction

In light of the evidence concerning whether Ms. Rosen actually purchased an affected iPod, Apple attaches as Attachment C an instruction on the direct purchaser requirement for Sherman Act claims.

### 4. Revised Verdict Form

Apple attaches a revised verdict form as Attachment D. Apple's revised verdict form adopts Questions 1 and 2 in Plaintiffs' proposed verdict form on Plaintiffs' monopolization claim, Dkt. 842 at ECF p.2, in place of Apple's corresponding Questions 1 and 2 for that claim. Apple's only proposed modification to those questions is to complete the date range in Question 2 to add the days to the relevant time period (September *12*, 2006 and March *31*, 2009). Additionally, Apple has revised its special interrogatories on injury and causation (Questions 6 and 11) to require that the jury find Plaintiffs, including Plaintiff Marianna Rosen, were direct purchasers.

Respectfully submitted,

  */s/ Karen L. Dunn*
Karen L. Dunn
*Counsel for Apple Inc.*