# ATTACHMENT A

## GENUINE PRODUCT IMPROVEMENTS
## AND LEGITIMATE BUSINESS PURPOSES

Plaintiffs' allege that Apple willfully maintained monopoly power based on anticompetitive conduct when it released the software updates known as iTunes 7.0 and 7.4, and certain new iPod models containing updated complementary "firmware." Plaintiffs claim that these updates made these iPods incompatible with certain third party software. Plaintiffs further claim that Apple's keybag verification code, or "KVC," which was part of the version of FairPlay launched in September 2006, and its database verification code, or "DVC," which was part of the version of FairPlay activated in software and firmware beginning in September 2007, excluded competitors from the Portable Digital Media Player market but provided no benefit to consumers and therefore were not genuine product improvements.

Apple contends that the iTunes 7.0 and 7.4 updates, which contained new consumer-facing features as well as a complete redesign to FairPlay, were genuine product improvements and that it had legitimate business reasons for these updates. Apple contends that the redesign of FairPlay contained in iTunes 7.0 and 7.4 and the new iPod models improved the security and stability of its product, which benefited consumers, helped fulfill Apple's obligations to the record companies, and protected the integrity of its platform and user experience by detecting and preventing tampering and corruption. Apple contends that the FairPlay redesign, which included but was not limited to the keybag integrity check and the database integrity check, secured not only music downloads but also other content, such as movies, and is still used today in Apple products. Apple further contends that at all times users were able to play music from any third-party music store, either by direct download to iTunes or by transferring the songs into iTunes.

Under the Sherman Act, offering a genuine product improvement cannot be considered an anticompetitive act, regardless of its effect on a competitor. Similarly, if a firm has a legitimate business reason for the design of its product, that design cannot be considered an anticompetitive act, regardless of its effect on a competitor. Antitrust law does not impose a duty on a monopolist to cooperate with a competitor or to share its intellectual property with a competitor, even if the innovations or intellectual property might be useful to the competitor in developing its products.  Thus, Apple had no duty to deal with RealNetworks or other third parties. Also, evidence that the defendant could have chosen a different design or approach in achieving its business goal that would have had less of an effect on competitors does not mean that the conduct is anticompetitive.  However, a design change that serves no purpose other than protecting a monopoly may constitute anticompetitive conduct.

As the Court explained to you at the beginning of this trial, Apple's integrated design of iTunes, iPods, and the iTunes Store and the updates before 7.0 were legal and not anticompetitive.

You may not consider iTunes 4.7 to be anticompetitive or illegal, or to support any finding of liability or damages against Apple. However, you are not required to ignore such evidence. To the contrary, you may consider such evidence in understanding the purpose and context of the conduct Plaintiffs allege to be unlawful including whether the stated reasons for the 7.0 and 7.4 updates were pretextual and not supportive of a finding that the updates were genuine product improvements.

Therefore, in deciding whether Apple engaged in illegal and anticompetitive acts in this case, the issue is limited to Apple's development and distribution of iTunes 7.0 and iTunes 7.4.

You will be asked at the outset of your deliberations to determine specifically whether the

updates were genuine product improvements. If you find that they were, then Apple cannot be found liable.

If you find they were not, then you must still determine whether Apple had legitimate business reasons for issuing the iTunes 7.0 and iTunes 7.4 updates and related technology as part of the analysis of the third element. If you find that Apple did have legitimate business reasons for its conduct, then you must find that no anticompetitive conduct exists, even if Apple had other reasons, and you must find for Apple.

If you find that Plaintiffs have proved that Apple willfully acquired or maintained monopoly power through anticompetitive acts, then you must consider whether Plaintiffs have proved the remaining two elements of their monopolization claim.