1  William A. Isaacson (wisaacson@bsfllp.com)
   (Admitted *Pro Hac Vice*)
2  Karen L. Dunn (kdunn@bsfllp.com)
   (Admitted *Pro Hac Vice*)
3  Martha L. Goodman (mgoodman@bsfllp.com)
   (Admitted *Pro Hac Vice*)
4  BOIES, SCHILLER & FLEXNER LLP
   5301 Wisconsin Ave, NW
5  Washington, DC 20015
   Telephone:  (202) 237-2727
6  Facsimile:  (202) 237-6131

7  John F. Cove, Jr. #212213
   (jcove@bsfllp.com)
8  Kieran P. Ringgenberg #208600
   (kringgenberg@bsfllp.com)
9  Meredith R. Dearborn #268312
   (mdearborn@bsfllp.com)
10 Maxwell V. Pritt #253155
   (mpritt@bsfllp.com)
11 BOIES, SCHILLER & FLEXNER LLP
   1999 Harrison Street, Suite 900
12 Oakland, CA 94612
   Telephone:  (510) 874-1000
13 Facsimile:  (510) 874-1460

14 David C. Kiernan #215335
   (dkiernan@jonesday.com)
15 JONES DAY
   555 California Street, 26th Floor
16 San Francisco, CA  94104
   Telephone:  (415) 626-3939
17 Facsimile:  (415) 875-5700

18 *Attorneys for Defendant Apple Inc.*

19                        UNITED STATES DISTRICT COURT

20                       NORTHERN DISTRICT OF CALIFORNIA

21                                OAKLAND DIVISION

| 22 | THE APPLE IPOD ITUNES ANTI-TRUST LITIGATION | **LEAD CASE NO.  C 05-00037 YGR**<br>**[CLASS ACTION]** |
|---|---|---|
| 23 | THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | **APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(H)(3), OR RULE 50** |
| | | Date:   TBD<br>Time:   TBD<br>Place:  Courtroom 1, 4th Floor<br>Judge:  Honorable Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

I. MS. ROSEN HAS SUFFERED NO INJURY AND LACKS ARTICLE III STANDING. ................................................................................................................. 1

    A. THE PURCHASE OF TWO IPODS ON THE ROSEN LAW FIRM CORPORATE CARD DOES NOT CREATE ARTICLE III STANDING. .......... 2

    B. MS. ROSEN'S PURCHASE OF OTHER IPODS DOES NOT PROVIDE A BASIS FOR ARTICLE III STANDING JURISDICTION. .............................. 4

        1. Ms. Rosen Has Not Met the Article III Requirements. ............................. 4

        2. Ms. Rosen's Claim Based on iTunes 7.0 and 7.4 Did Not Become Moot.  It Never Existed. ............................................................................ 6

II. SUBSTITUTION OR INTERVENTION OF A CLASS REPRESENTATIVE IS NOT PERMITTED. ............................................................................................... 8

    A. PLAINTIFFS' ASSERTION THAT THE COURT CAN SUBSTITUTE OR INTERVENE A NEW CLASS REPRESENTATIVE CONTRADICTS GOVERNING PRECEDENT. ....................................................................... 8

    B. PLAINTIFFS FAIL TO IDENTIFY A SUITABLE CLASS REPRESENTATIVE OTHER THAN K &N, WHICH THE COURT HAS ALREADY REJECTED. ..................................................................................... 9

CONCLUSION ................................................................................................................... 13

APPENDIX ......................................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ................................................................................................. 4

*Binta B. ex rel. S.A. v. Gordon*,
   710 F.3d 608 (6th Cir. 2013) ................................................................................................. 7

*County of Riverside v. McLaughlin*,
   500 U.S. 44 (1991) ................................................................................................................ 6

*Davis v. Fed. Election Com'n*,
   554 U.S. 724 (2008) .............................................................................................................. 6

*Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*,
   523 F.3d 1116 (9th Cir. 2006) ............................................................................................... 3

*Hohlbein v. Hospitality Ventures LLC*,
   248 F. App'x 804 (9th Cir. 2007) .......................................................................................... 4

*In re Flash Memory Antitrust Litig.*
   No. C 07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010) ...................................... 9

*In re Motor Fuel Temperature Sales Practices Litigation*,
   MDL No. 1840, 2012 WL 1672994 (D. Kan. May 14, 2012) .......................................... 3, 4

*Jones v. Ford Motor Co.*,
   599 F.2d 394 (10th Cir. 1979) ............................................................................................... 4

*Legal Aid Soc'y of Alameda Cnty. v. Brennan*,
   608 F.2d 1319 (9th Cir. 1979) ............................................................................................... 4

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
   350 F.3d 1018 (9th Cir. 2003) ..................................................................................... 1, 7, 8, 9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .............................................................................................................. 4

*Osakan v. Apple Am. Grp.*,,
   No. C 08-4722 SBA, 2010 WL 1838701 (N.D. Cal. May 5, 2010) ...................................... 9

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) .............................................................................................................. 7

*Pitts v. Terrible Herbst, Inc.*,
   653 F.3d 1081 (9th Cir. 2011) ........................................................................................... 6, 7

*Sherman v. British Leyland Motors, Ltd.*,
   601 F.2d 429 (9th Cir. 1979) ............................................................................................ 3, 4

*Solinger v. A&M Records, Inc.*,
   718 F.2d 298 (9th Cir. 1983) ................................................................................................. 3

*Somers v. Apple, Inc.*,
   258 F.R.D. 354 (N.D. Cal. 2009) .......................................................................................... 3

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ................................................................................................. 3

*U.S. Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980) .............................................................................................................. 6



*Weiss v. Regal Collections*,
  385 F.3d 337 (3d Cir. 2004) ......................................................................................................... 7

# INTRODUCTION

This $1 billion case is now about one half of two iPods.

The sole remaining named Plaintiff, Marianna Rosen, concedes that this case, in which Ms. Rosen seeks a judgment for more than $1 billion, now turns entirely on her purported marital property *interest* in two iPods purchased on the corporate credit card of her former husband's law firm. She fails to meet the requirements of Article III standing to assert the claims being tried because she suffered no injury from the conduct alleged and because she has not sought (and cannot seek) any redress applicable to her. Thus, because there is no named plaintiff with Article III standing as to claims now being tried, and there never has been such a named Plaintiff, the Court has never had jurisdiction over those claims.

To the extent the Court believes that the current record is insufficient to determine that the Rosen Law Firm P.A., and not Ms. Rosen, purchased the two iPods in 2008, Apple respectfully requests that the Court permit narrow discovery on the bank issuing the credit card at issue, and hold an evidentiary hearing on the matter.

Ms. Rosen's jurisdictional problem cannot be solved by substitution or intervention of K & N Enterprises, Inc. or any other plaintiff. Because the Court never had Article III jurisdiction over the remaining claims in this case, *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003), forbids the Court from substituting or intervening a new plaintiff to create jurisdiction. Moreover, the Court already rejected K & N as a plaintiff because it is void and lacks legal capacity to bring claims; nothing has changed. And even setting that issue aside, a number of additional reasons bar K & N from serving, including that it sold its assets (including any legal claim), it agreed to mediate as a precondition of suit, it agreed to a shortened statute of limitations, and it is not an adequate representative of consumer plaintiffs.

The bulk of Ms. Rosen's brief is a series of largely incorrect factual assertions aimed to distract the Court from the merits of this motion. All are meritless, irrelevant, or both.

## I.  MS. ROSEN HAS SUFFERED NO INJURY AND LACKS ARTICLE III STANDING.

Ms. Rosen does not dispute any of the legal principles that require judgment for Apple:

1. Article III standing is essential to the Court's subject matter jurisdiction;
2. the Court is empowered to decide (and must decide) under Rule 12(b)(3) and 12(h)(1) issues of fact to determine its subject matter jurisdiction;
3. Article III standing requires proof of (a) injury in fact (b) fairly traceable to the conduct at issue; and (c) redressable by the relief plaintiff seeks;
4. the named plaintiff in a class action must have Article III standing for the Court to have jurisdiction; and
5. Ms. Rosen bears the burden of proof to show each element of Article III standing.

(Mot. at 5-7).

Ms. Rosen's primary argument is that she has standing based on the purchase of two iPods (an iPod touch and an iPod nano) on her ex-husband's law firm's corporate credit card. That argument fails for the reasons detailed below. Her alternative argument is that she has standing based on her purchase of other iPods, which fails because, by Ms. Rosen's own admission, she (as with other purchasers of those types of iPods) suffered no damage and no relief is sought based on their purchase.

To assist the Court in sorting through the various claims Ms. Rosen has made about various iPod purchases, Apple has include as an Appendix at the end of this Reply a chart listing the iPods by serial number along with other pertinent information.

### A.   THE PURCHASE OF TWO IPODS ON THE ROSEN LAW FIRM CORPORATE CARD DOES NOT CREATE ARTICLE III STANDING.

Ms. Rosen argues that the purchase of two iPods on her ex-husband's law firm's corporate credit card are sufficient to provide standing because "the law firm was solely owned by Mr. Rosen and thus the Rosens' marital community" and she was "authorized to use, and frequently did use, the firm credit card." (Opp. at 2.) She is wrong.

As Ms. Rosen does not dispute, The Rosen Law Firm P.A. is a separate legal entity incorporated under the laws of the State of Florida. (Mot. at 5; Pritt Decl. Ex F.) Ms. Rosen acknowledges that her former husband, Laurence Rosen, was its owner. (Opp. at 2.)

It is, of course, settled law that "a bright line rule emerged from *Illinois Brick*: only direct purchasers have standing under § 4 of the Clayton Act to seek damages for antitrust violations." *Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120-21 (9th Cir. 2008).[1] It is also settled that, where an individual uses a corporate credit card to make purchases, the purchases are by the corporation, not the individual, and the individual lacks standing to sue based on those purchases. *In re Motor Fuel Temperature Sales Practices Litig.*, MDL No. 1840, 2012 WL 1672994, *5 (D. Kan. May 14, 2012). There, the plaintiff Wilson was the sole owner of a corporation called Wonderland. *Id.* at *2. He bought gas with his Wonderland corporate credit card for his use, and attempted to sue in his own name. *Id.* The Court rejected that claim on standing grounds, explaining that, "[m]otor fuel purchases on Wonderland credit cards reflect transactions between Wonderland and defendants. Wilson in his individual capacity was not a party to any transaction between Wonderland and defendants." *Id.* at *5 n.8. Thus, the court concluded, "under both Article III" and the specific state statute at issue, "Wilson lacks standing to sue." *Id.*

Recognizing this, Ms. Rosen argues that she may sue because the law firm "was solely owned by [her ex-husband] Mr. Rosen and thus the Rosens' martial community," and she was "authorized to use, and frequently did use, the firm credit card for personal purchases." (Opp. at 2). This only proves her lack of standing. Whatever Ms. Rosen's motivation or practice, use of the law firm's credit card to make purchases means that the corporation, not Ms. Rosen, was the purchaser of the iPods. "The conveniences and immunities that arise from doing business through corporate entities carry with them the costs of having those corporate entities seek their remedies in court for injuries to their business or property interests. A shareholder of a corporation injured by antitrust violations has no standing to sue in his or her own name . . . ." *Solinger v. A&M Records, Inc.*, 718 F.2d 298, 299 (9th Cir. 1983) (per curiam); *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439-40 (9th Cir. 1979) (president and sole shareholder of corporation had no standing to assert antitrust claims on corporation's behalf);

---

[1] An indirect purchaser case was filed, but class certification was denied for lack of standing, *Somers v. Apple, Inc.*, 258 F.R.D. 354 (N.D. Cal. 2009), and the Ninth Circuit affirmed, *Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013).

*accord Jones v. Ford Motor Co.*, 599 F.2d 394, 397 (10th Cir. 1979) ("It is settled law that shareholders . . . do not have standing to sue for antitrust violations that injure a corporation"). Indeed, she was not even the shareholder of the corporation, but merely claims to have held a 50% marital interest in the firm at the time. She is even further removed from the purchase than the plaintiff in the *Motor Fuel Temperature* and *Sherman* cases, where the sole shareholder was not permitted to pursue antitrust claims for the businesses' purchases. She lacks standing.

"[B]ecause the evidentiary burden to demonstrate standing remains on [the plaintiff], the district court may revisit the issue of standing in an evidentiary hearing or at trial, where the controverted facts 'must be supported adequately by the evidence adduced' there." *Hohlbein v. Hospitality Ventures LLC*, 248 F. App'x 804, 806 & n.2 (9th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *see Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001) (a district court "may reconsider whether the plaintiffs have standing" at trial); *Legal Aid Soc'y of Alameda Cnty. v. Brennan*, 608 F.2d 1319, 1333 (9th Cir. 1979) ("To sustain a favorable judgment, the allegations [supporting standing] must be uncontroverted or proven").

Apple submits that the record is clear that the 2008 purchases were by The Rosen Law Firm P.A., and not Ms. Rosen. She concedes that she used the firm's corporate card to purchase the iPods (Opp. at 2), that ends the inquiry. Nonetheless, if the Court has any question about this issue, Apple respectfully requests the Court permit limited document discovery of the bank issuing the card to confirm that, in fact, The Rosen Law Firm P.A. was the account holder and was legally responsible for card charges, and then conduct an evidentiary hearing on the issue.

### B. MS. ROSEN'S PURCHASE OF OTHER IPODS DOES NOT PROVIDE A BASIS FOR ARTICLE III STANDING JURISDICTION.

Ms. Rosen's opposition refers to iPod purchases made in 2004 (Opp. at 5), the purchase of an iPod fifth generation classic in September 2006 (Opp. at 6), and the purchase of an iPod touch (Opp. at 4), which was actually purchased in July 2009. None of those purchases can provide a basis for Article III jurisdiction.

#### 1. Ms. Rosen Has Not Met the Article III Requirements.

Ms. Rosen told the Court in the joint pretrial statement that she sought damages only

"during the class period" and only for specifically listed models of iPods. (Dkt. 823 at ECF p. 3.) It is undisputed that her alleged 2004 purchases were prior to the class period and were prior to the conduct at issue in the case, that is, the release of iTunes 7.0 and 7.4 in 2006 and 2007. There can be no claim that her 2004 purchases were somehow affected by events that happened two years later. Nor does Ms. Rosen seek any relief for those purchases.

It is also undisputed that the fifth generation iPod classic was not one of the models for which Plaintiffs claim damages because it did not contain the keybag or database integrity verification for DRM music on which Ms. Rosen bases her claim. (Dkt. 823 at ECF p. 3; Opp. at 6.) The opinion of Ms. Rosen's expert, Dr. Noll, is that those models were not subject to overcharges. (Dec. 18, 2013 Noll Dep. at 62:3-9.) Thus, by virtue of that purchase, Ms. Rosen suffered no injury from the iTunes 7.0 or 7.4 updates and she seeks no relief relating to that iPod purchase. Such purchases could provide no standing to assert the claims at trial.

Ms. Rosen quotes her trial testimony regarding the purchase of an iPod touch "in December of '08" and argues that it is sufficient to support a verdict. (Opp. at 4). While Ms. Rosen urges the Court to rely on that testimony, she does also explain her testimony that, "I have it [the iPod touch] with me in my bag," (Trial Tr. at 611:21-612:1), nor that, after the serial number was obtained and a purchase receipt pulled, Ms. Rosen's counsel conceded that this iPod touch was actually purchased in July 2009, after the class period. (Trial Tr. at 632:23-25 (Ms. Sweeney: "the serial number we gave Apple yesterday was for an iPod that was purchased outside the class period")). There can be no argument that admittedly false trial testimony is a reasonable basis for a jury verdict or the Court's own jurisdictional fact-finding.

Ms. Rosen briefly argues that she suffered "economic lock-in" by buying music from Apple's iTunes store in 2004. (Mot. at 5.) But conduct or alleged injury prior to the release of iTunes 7.0 in 2006 cannot provide standing to assert the claims at trial, which are expressly limited to iTunes 7.0 and 7.4. And she does not seek relief for any alleged lock-in other than from her purchase of the specific models listed in the pretrial conference statement. "[S]tanding is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to

press and for each form of relief that is sought." *Davis v. Fed. Election Com'n*, 554 U.S. 724, 734 (2008) (alteration in original) (internal quotation marks and citations omitted).

### 2. Ms. Rosen's Claim Based on iTunes 7.0 and 7.4 Did Not Become Moot. It Never Existed.

Ms. Rosen's final argument is that her fifth generation iPod classic purchase provided her standing, but that her case became "moot" after the factual record was clarified, and that this somehow allows the class action to proceed despite the fact that she was never injured and does not seek any redress applicable to her. (Opp. at 7.) She fundamentally misstates the applicable law and confuses the issues of mootness and standing.

Mootness is "the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). The *Sonsa* line of cases on which Ms. Rosen relies permit plaintiffs who had Article III standing, but whose claims are later mooted by changes in events, to sometimes serve as class representatives for a limited purpose. For example, in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), the named plaintiffs were individuals who were arrested and who alleged that they were placed in pretrial detention without a prompt probable cause determination. *Id.* at 47-48. They sought injunctive relief (not damages) requiring prompt probable cause determinations, and when they filed the complaint they were in detention. *Id.* at 49. "Plainly, plaintiffs' injury was at that moment capable of being redressed through injunctive relief," and thus they had Article III standing. *Id.* at 51. "[E]ventually, they either received probable cause determinations or were released," and thus their claims became moot. *Id.* at 51. For such "inherently transitory" claims, an exception permits the Court—which had Article III jurisdiction over the class claim—to continue despite the mootness of the named plaintiffs' claims. *Id.* at 52.

Similarly, Ms. Rosen relies on *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011), which demonstrates her error. In *Pitts*, there was no dispute that the named plaintiff had Article III standing to assert the claim at issue. Instead, the defendant made an "offer of judgment for the full amount of a putative class representative's individual claim," which Pitts declined. *Id.*

at 1084. The court held that defendant's "unaccepted offer of judgment did not moot Pitts's case because his claim is transitory in nature and may otherwise evade review." *Id*.at 1090-91. "Where, as here, a defendant seeks to 'buy off' the small individual claims of the named plaintiffs, the analogous claims of the class—though not *inherently* transitory—become no less transitory than inherently transitory claims. Thus, although Pitts's claims 'are not "inherently transitory" as a result of being time sensitive, they are "acutely susceptible to mootness" in light of [the defendant's] tactic of "picking off" lead plaintiffs with a Rule 68 offer to avoid a class action.'" *Id.* at 1091 (quoting *Weiss v. Regal Collections*, 385 F.3d 337, 347 (3d Cir. 2004)).

There is nothing "inherently transitory" or "acutely susceptible to mootness" about this case. It has been litigated for a decade. Ms. Rosen was never injured by the conduct on which she seeks a billion dollar judgment—Apple's issuance of iTunes 7.0 and 7.4—and is entitled to no part of that judgment if it were awarded. She has never had standing to assert the claim being tried, and therefore the Court lacks Article III jurisdiction, even in a class action. That is the square holding of *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003); *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class"); Mot. at 9 (collecting cases).[2]

Ms. Rosen is simply wrong to assert that she "had standing at the time of the certification of the Class." (Opp. at 7.) She has never had a purchase of any model that was subject to the keybag and database integrity checks on which Ms. Rosen's trial claim is based and which are subject to the damages claim at trial. What model of iPod she purchased in the class period has not changed since the class was certified, or indeed since the operative complaint, nor could it.

---

[2] The only other authority cited by Ms. Rosen, *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608 (6th Cir. 2013) also provides her no support. There, a case had been litigated for "over thirty years" regarding payments under Tennessee's Medicaid program. *Id.* at 613. At the time the class was certified, the plaintiffs were enrolled in the program and thus had standing. *Id.* In the course of the case, the court ordered injunctive relief and oversaw various changes in the program over the years. *Id.* Subsequently, a dispute arose regarding attorneys' fees and it was discovered that none of the named plaintiffs "remained alive or enrolled in" the Medicaid program (then called TennCare). *Id.* at 616. Thus, the claims of the named plaintiffs had become moot because of intervening events, rather than—like Ms. Rosen—never having a claim.

The facts remain the same: she bought two iPods before iTunes 7.0 and 7.4, and then an iPod fifth generation that did not contain the software feature alleged to cause injury and which she admits was not subject to any overcharge. Further evidence may have come to light about the iPod she purchased, but that does not turn her absence of injury into a mere mootness problem. She never had injury from iTunes 7.0 and 7.4 and she never had a claim based on iTunes 7.0 or 7.4, and that is the claim that is being tried.

Similarly, Ms. Rosen's assertion that the class certification order salvages her standing is also meritless. In *Lierboe*, the district court certified the class *prior to* the ruling of the Montana Supreme Court that eliminated the plaintiff's claim. 350 F. 3d at 1021. Nonetheless, the Ninth Circuit held, standing "is dispositive of the appeal of the class certification. Because the Supreme Court of Montana has now established that Lierboe has and had no stacking claim, the district court's certification of the class with Lierboe as its representative must be vacated." *Id.* at 1022-23. Considering and rejecting the very argument Ms. Rosen makes here, the Ninth Circuit held, "because this is not a mootness case, in which substitution or intervention might have been possible, we remand this case to the district court with instructions to dismiss." *Id.* at 1023.

## II. SUBSTITUTION OR INTERVENTION OF A CLASS REPRESENTATIVE IS NOT PERMITTED.

Ms. Rosen is also wrong that the Court's lack of jurisdiction can be cured by adding a new class representative. First, *Lierboe,* 350 F.3d at 1023, stands squarely to the contrary. Second, the only specifically identified proposed class representative, K & N Enterprises, Inc., has already been rejected because it is a void corporation and is improper for several other reasons that the Court has not yet reached.

### A. PLAINTIFFS' ASSERTION THAT THE COURT CAN SUBSTITUTE OR INTERVENE A NEW CLASS REPRESENTATIVE CONTRADICTS GOVERNING PRECEDENT.

The law of this circuit is unequivocal. Where a class representative lacks Article III standing, substitution or intervention is not possible. *Id.* ("[B]ecause this is not a mootness case, in which substitution or intervention might have been possible, we remand this case to the district court with instructions to dismiss"). Plaintiffs do not dispute that *Lierboe* is governing law—they

argue only that *Lierboe* does not apply in cases involving mootness. (Opp. at 9-10.) As discussed above, Plaintiffs' argument is wrong because the issue here is lack of standing, not mootness.

### B. PLAINTIFFS FAIL TO IDENTIFY A SUITABLE CLASS REPRESENTATIVE OTHER THAN K &N, WHICH THE COURT HAS ALREADY REJECTED.

Moreover, the only potential named plaintiff identified by Ms. Rosen is K & N. The Court has already rejected K & N's bid to be added as a class representative because the corporation is void under Delaware law. (Order Denying Plaintiffs' Motion to Add Class Representative at 6-8 (Nov. 25, 2014), Dkt. 927). K & N's owner, Mr. Riegel, has not taken any steps to remedy this deficiency. Plaintiffs claim that Mr. Riegel is "ready and willing" to revive K & N, Mot. at 8, but that is what Ms. Rosen's counsel told the Court before the Court denied K & N's last attempt to intervene (Ms. Sweeney: "It's purely a tax issue, your honor. He has—I mean, he—and Mr. Coughlin, I believe, is meeting with him this weekend. <u>Maybe the owner would be willing to do that</u>, but there are tax penalties associated with keeping a corporation in existence.") Nothing has changed to justify reconsideration of the exact same issue.

In addition, Apple showed that it would be fundamentally unfair to add a new class representative shortly before trial. (Opp. Mot. to Add Class Representative at 20-23 (Nov. 11, 2014), Dkt. 889). To add a class representative in the middle of trial, as Ms. Rosen's case is set to close, would be even worse. Though Apple examined Mr. Riegel at trial, he was not a class representative at that time. Informing the jury of the addition of a new class representative at this stage would sew confusion and unduly prejudice Apple. *See In re Flash Memory Antitrust Litig.* No. C 07-0086 SBA, 2010 WL 2332081 at *17 (N.D. Cal. June 9, 2010) (denying motion to add a new class representative because of prejudice to defendants); *Osakan v. Apple Am. Grp.*, No. C 08-4722 SBA, 2010 WL 1838701, at *4 (N.D. Cal. May 5, 2010) (same).

In addition, as discussed in Apple's previous submissions to the Court, adding K & N as a class representative is impermissible for a host of other reasons, among which include the following:

1  • K & N sold all "right, title and interest" to its Apple reseller business, Delaware
2     Computer Exchange (DCE), in 2008, including any claims, and thus lacks standing
3     (Dkt. 889 at 11-12);
4  • K & N contractually agreed (1) to mediate prior to filing suit, (2) to a one year
5     statute of limitations on claims, and (3) to waive jury trial rights, which both bar its
6     claims and make it an inadequate class representative (Mot. for Partial
7     Decertification at 26-29 (Nov. 11, 2014), Dkt. 888); (Dkt. 889 at 12);
8  • As a reseller, K & N would not adequately represent individual consumers (*see*
9     Dkt. 888 at 18-22); and
10 • K & N, as a relatively small and Apple-exclusive dealer, cannot adequately
11    represent other resellers who purchased pursuant to individually negotiated terms
12    or who sold products from Apple's competitors (Dkt. 888 at 23-26).

The Court is in the midst of trial, and Ms. Rosen is on her last witness. Her suggestion that the Court ignore binding precedent and substitute a class representative whom the Court has already rejected is absurd.

### III. MS. ROSEN'S ATTEMPT TO BLAME APPLE FOR HER NON-DISCLOSURE OF HER ALLEGED IPOD PURCHASES SHOULD BE REJECTED.

Ms. Rosen suggests in her brief (as counsel has in Court) that Apple had an obligation to investigate "the nature and timing" of iPod purchases in Ms. Rosen's name and in the name of her husband's law firm (Opp. at 5) and that Apple withheld information about which iPods were affected under Plaintiffs' theory of liability and damages on their claims as to iTunes 7.0 and 7.4, *id.* at 6-7. In addition to being entirely irrelevant to whether Ms. Rosen can meet her burden to show standing for the remaining claims and relief sought, Plaintiffs' contentions are misplaced and inaccurate.

First, Ms. Rosen's assertions that one of the newly disclosed iPods "is reflected in her own personal iTunes account," and "by reviewing her iTunes account (information in Apple's hands)" Apple could have identified its serial number and its assigned name ("marianna Rosen's iPod") (Opp. at 2) are false. Ms. Rosen attaches a screenshot of the iTunes client software to support her

APPLE'S REPLY ISO MTN TO DISMISS FOR LACK OF JURISDICTION   C 05-00037 YGR

point. But as Jeffrey Robbin[3] explains, that screenshot merely shows that an iPod with that serial number was backed up to that computer, and that information (including the user-assigned name) is not sent to Apple's servers, and thus it does not at all suggest that Apple knew or could have connected this iPod to Ms. Rosen. (Robbin Decl. ¶¶ 3-6).

Nor does Ms. Rosen's submission of a duplicate receipt from the Apple Store support her. She does not dispute that the September 11, 2008 purchase of two iPods was charged to her now ex-husband's law firm's corporate credit card. That duplicate receipt does not contradict that fact. It shows the same credit card as the duplicate receipt submitted by Apple, which identifies the purchaser as the Rosen Law Firm. (O'Neil Decl. Ex. 2, Dkt. 956-2.)

Ms. Rosen has failed to accurately identify her iPod purchases since she was first deposed in January 2007. Apple propounded an interrogatory seeking identification of Ms. Rosen's purchases, and Ms. Rosen replied in 2010 that, "Plaintiff has purchased a 15GB iPod, and a 30GB video iPod for her own use. She also has purchased an iPod mini as a present for her sister. She has not purchased any other MP3 players." (Pritt Decl., Ex. C, Dkt. 957-3 at ECF pp. 16-17). And Plaintiffs' class certification brief stated that, "all three proposed class representatives have already given day-long depositions, have submitted their iPods for a forensic inspection by Apple's counsel, and have produced voluminous (and needlessly intrusive) documentation to Apple as part of the discovery process, including: copies of all music files stored on their personal computers; copies of their iTunes Purchase history; iTunes account names and passwords; copies of receipts documenting their iPod purchases from Apple; and lists of every compact disc they currently own." (Dkt. 486 at ECF p. 22.)

Ms. Rosen has never tried to explain why she did not include the purported 2008 purchases in her responses. Instead, she testified at trial about a supposed December 2008 iPod touch purchase (Trial Tr. at 602:11-13) that, in reality, was purchased in July 2009 (after the class period). Then, the day after her trial testimony, she provided another serial number that allowed Apple to identify a different iPod touch purchased by the Rosen Law Firm, as well an iPod nano

---

[3] As Mr. Robbin explained at trial, he has overseen the development of the iTunes client software since its existence.

that was on the same receipt. (O'Neil Decl. ¶¶ 4-7 & Exs. 1, 2, Dkt. 956). That was Apple's first opportunity to address the issue of the purchases by the Rosen Law Firm. That is the reason this issue is being presented to the Court at this time.

Second, during expert merits discovery in March 2013, review of the source code showed that certain iPod models that were included in the class definition,[4] including the iPod classic 5th generation model (the only model that any named Plaintiff involved this case ever alleged to have purchased during the class period), did not contain the keybag integrity check or database integrity check for music about which Ms. Rosen complains. Apple immediately informed Plaintiffs, Bernay Decl., Dkt. 964 at ECF p. 2, ¶ 8, and Plaintiffs' technical expert, Dr. Martin, took this information into account in his April 8, 2013 report. April 8, 2013 Martin Report at 34, ¶ 84. Plaintiffs' economic expert, Dr. Noll, did not, however, and continued to include the unaffected iPod models in his damages analysis. April 3, 2013 Noll Report, Exs. 15.1 & 15.2 ("Apple Reseller Sales Damages Models" and "Apple Direct Sales Damages Models": including unaffected models like the "iPod Classic 5th Gen"). Plaintiff did not stop seeking damages from the unaffected models until November 25, 2013, when Dr. Noll revised his damages model to exclude those models. Nov. 25, 2013 Noll Report, Ex. 5-A and 5-B (revised "Apple Reseller Sales Damages Models" and "Apple Direct Sales Damages Models"). Dr. Noll did not confirm until his December 18, 2013 deposition that Plaintiffs were no longer seeking damages for the unaffected iPod models. Dec. 18, 2013 Noll Dep. at 62:3-9. That sequence of events provides no basis for Ms. Rosen's non-disclosure of her alleged 2008 iPod purchases, which would have been relevant both before and after the clarification of the impacted iPod models.

///

///

///

---

[4] Plaintiffs, not Apple, compiled the list of iPods—from the internet—that the Court adopted. Pls' Response To June 22, 2011 Order, Dkt. 644 at ECF p. 3 ("Using materials from Apple's website as well as reseller price lists and the reseller transaction data produced in discovery, Plaintiffs have identified 29 iPod models that should be included in the Class definition"; referring to a list of iPods in Ms. Sweeney's June 23, 2011 Declaration at Dkt. 645-1); Order Granting Pls' Renewed Mot. For Class Cert., Dkt. 694 at 9 & n.24 (adopting Ms. Sweeney's list).

## **CONCLUSION**

For the foregoing reasons, Apple respectfully requests the Court dismiss the case, decertify the class, and enter judgment for Apple.

Date: December 8, 2014                                   Respectfully Submitted,

                                                                                    BOIES, SCHILLER & FLEXNER LLP


                                                                                    By:  /s/ William A. Isaacson
                                                                                              William A. Isaacson

                                                                                    *Attorneys for Defendant Apple Inc.*

# APPENDIX

## Marianna Rosen's Purchases

| Date of Purchase | Disclosed to Apple | Standing? |
|---|---|---|
| February 18, 2004 | 1/24/07 deposition (119:6-120:1) and 12/16/10 interrogatory responses (TX 2869) at 15:26-27 | Before class period |
| July 2004 from Best Buy | 1/24/07 deposition (61:3-25) and 12/16/10 interrogatory responses (TX2869) at 15:26-27 | Before class period |
| September 20, 2006 | 1/24/07 deposition (120:2-12, 122:5-12) and 12/16/10 interrogatory responses (TX2869) at 15:26-27 | Model not affected by keybag and database integrity checks; excluded from damages claim (Dkt. 823 at 3) |
| July 10, 2009 | 12/3/14 Tr. 584:1-3 ("And the last iPod I bought was the iPod touch. And I think I bought it as a Hanukkah gift for my son in December of '08"); 611:21-612:1 ("I have it [the iPod touch] with me in my bag"); provided for inspection after testimony; serial number used to determine date of purchase was July 10, 2009 (O'Niel Decl. & Ex 1); 12/4/2014 Tr. 632:22-23 (Ms. Sweeney: "the serial number we gave Apple yesterday was for an iPod that was purchased outside the class period") | After class period |

## The Rosen Law Firm P.A.'s Purchases

| Date of Purchase | Disclosed to Apple | Standing? |
|---|---|---|
| September 11, 2008 | 12/4/14 serial number provided in screenshot from iTunes client (Rosen Decl. Ex. 1); serial number used to identify receipt (O'Neil Decl. & Ex. 2) | Not Ms. Rosen's purchase |
| September 11, 2008 | 12/3/14 Tr. 583:23-25 ("I bought an iPod nano. I think it's called nano, the green kind of slick narrow iPod which is smaller than the ones prior, in 2007, in the fall of 2007"); listed on same receipt identified by using serial number in Rosen Ex. 1 (O'Neil Decl. & Ex. 2) | Not Ms. Rosen's purchase |