UNITED STATES DISTRICT COURT

*ORIGINAL*

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

| | | |
|---|---|---|
| THE APPLE IPOD ITUNES | ) | NO. C 05-00037 YGR |
| ANTITRUST LITIGATION | ) | |
| | ) | PAGES 1 - 80 |
| | ) | |
| | ) | PRETRIAL HEARING CONFERENCE |
| | ) | |
| | ) | |
| | ) | OAKLAND, CALIFORNIA |
| _____) | | ~~WEDNESDAY, OCTOBER 30, 2014~~ |
| | | Wednesday, December 1, 2014 |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

APPEARANCES:

FOR PLAINTIFFS:            ROBBINS GELLER RUDMAN & DOWD LLP
                          655 WEST BROADWAY, SUITE 1900
                          SAN DIEGO, CALIFORNIA  92101
                    BY:   ALEXANDRA S. BERNAY,
                          PATRICK COUGHLIN,
                          CARMEN A. MEDICI,
                          BONNY E. SWEENEY, ATTORNEYS AT LAW

                          BONNETT FAIRBOURN FRIEDMAN & BALINT PC
                          4023 CAIN BRIDGE ROAD
                          FAIRFAX, VIRGINIA 22030
                    BY:   FRANCIS J. BALINT, JR.
                          ATTORNEY AT LAW

            (APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:         RAYNEE H. MERCADO, CSR NO. 8258

     PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

## A P P E A R A N C E S (CONT'D.)

```
FOR DEFENDANT:         BOIES, SCHILLER & FLEXNER LLP
                       5301 WISCONSIN AVENUE NW
                       WASHINGTON, D.C.  20015
                  BY:  WILLIAM A. ISAACSON,
                       KAREN L. DUNN,
                       MARTHA L. GOODMAN, ATTORNEYS AT LAW


                       BOIES, SCHILLER & FLEXNER LLP
                       1999 HARRISON STREET, SUITE 900
                       OAKLAND, CALIFORNIA  94612
                  BY:  MEREDITH R. DEARBORN, ATTORNEYS AT LAW


                       JONES DAY
                       555 CALIFORNIA STREET, 26TH FLOOR
                       SAN FRANCISCO, CALIFORNIA  94104-1500
                  BY:  DAVID C. KIERNAN, ATTORNEY AT LAW



                       --OOO--
```

```
 1    MONDAY, DECEMBER 1, 2014                           9:07 A.M.

 2                        P R O C E E D I N G S

 3              THE CLERK:  CALLING CIVIL ACTION 05-0037, THE APPLE

 4    IPOD ITUNES ANTITRUST LITIGATION.

 5        COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

 6              MS. SWEENEY:  BONNY SWEENEY FOR THE PLAINTIFFS, YOUR

 7    HONOR.

 8              THE COURT:  AND WITH YOU TODAY, MS. SWEENEY?

 9              MS. SWEENEY:  WITH ME TODAY IS PATRICK COUGHLIN,

10    ALEXANDRA BERNAY, FRANK BALINT, AND CARMEN MEDICI.

11              THE COURT:  OKAY.  GOOD MORNING, EVERYONE.

12        MR. ISAACSON.

13              MR. ISAACSON:  BILL ISAACSON, YOUR HONOR, FOR

14    DEFENDANT, APPLE.  WITH ME TODAY IS KAREN DUNN, MARTHA

15    GOODMAN, AND MEREDITH DEARBORN OF BOIES SCHILLER; SCOTT

16    MURRAY, INHOUSE AT APPLE; AND DAVID KIERNAN FROM JONES DAY.

17              THE COURT:  OKAY.  WHICH -- I -- DID YOU DO THEM IN

18    ORDER?  SO IT'S GOODMAN, THEN DEARMAN?

19              MR. ISAACSON:  DEARBORN.

20              THE COURT:  DEARBORN.

21              MR. ISAACSON:  YES.

22              THE COURT:  DEARBORN.  I'M JUST TRYING TO BEGIN TO

23    MEMORIZE EVERYONE'S NAMES.  OKAY.  GOOD ENOUGH.

24        WELL, LIKE I SAID, WELCOME BACK.  THOSE OF YOU WHO ARE NOT

25    FROM CALIFORNIA, WE DO NOT COMPLAIN ABOUT THE RAIN HERE
```

```
1    BECAUSE WE ARE IN A DROUGHT AND HAVE BEEN FOR YEARS.  SO NO

2    COMPLAINTS ABOUT RAIN EVER, EVER, EVER.  OKAY.

3        WE HAVE A NUMBER OF THINGS TO WORK ON.  LET'S GET OUR

4    COLLECTIVE LISTS TOGETHER.

5        WE'LL START WITH THE PLAINTIFFS.  I KNOW YOU'VE GOT

6    MOTIONS IN LIMINE 10 AND 11.  ANYTHING ELSE FROM THE

7    PLAINTIFFS?  I ALSO HAVE THE LETTER RECEIVED LATE LAST

8    NIGHT -- OR LAST NIGHT FROM APPLE.

9        MS. SWEENEY.

10        MS. SWEENEY:  YOUR HONOR, MS. BERNAY IS GOING TO

11   ADDRESS THE MOTIONS IN LIMINE.  MR. COUGHLIN IS GOING TO

12   ADDRESS THE CONFIDENTIALITY ISSUES.  AND THEN AT THE END, I

13   WOULD LIKE TO ADDRESS A FEW QUESTIONS WITH RESPECT TO THE JURY

14   INSTRUCTIONS.

15        THE COURT:  WHICH JURY INSTRUCTIONS?  THE ONES I SENT

16   YOU?

17        MS. SWEENEY:  YES, YOUR HONOR.

18        THE COURT:  OKAY.

19   ANYTHING ELSE ON YOUR LIST, MR. ISAACSON?

20        MR. ISAACSON:  NO POINTS OF DISAGREEMENT.  THERE'S A

21   FEW POINTS WE WANT TO GO OVER ABOUT HOW EXHIBITS ARE BEING

22   HANDLED THAT THE PARTIES HAVE AGREED UPON, BUT WE WANT TO MAKE

23   SURE THE COURT AGREES WITH HOW WE'RE HANDLING THINGS.

24        THE COURT:  OKAY.  ONE HOUSEKEEPING ISSUE.  I'VE GOT

25   DOCKET NO. 857, WHICH WERE THE AGREED UNDISPUTED FACTS.  I
```

1    JUST WANT TO CONFIRM THAT THAT IS IN -- THAT THAT PARTICULAR

2    DOCUMENT IS THE ONE THAT I'M GOING TO READ TO THE JURY AND

3    THAT THAT HAS NOT CHANGED.  THIS WAS FILED BACK ON

4    OCTOBER 30TH, 2014.

5              **MS. SWEENEY:**  IT HAS NOT CHANGED, YOUR HONOR.

6              **MR. ISAACSON:**  IT DEFINITELY HAS NOT CHANGED.

7              **THE COURT:**  OKAY.  SO MY PLAN WOULD BE TO READ THIS

8    TO THE JURY AFTER OPENINGS, AFTER MY INSTRUCTIONS, GENERAL

9    INSTRUCTIONS, KIND OF AS THE FIRST -- AS THE FIRST BIT OF

10   ACTUAL EVIDENCE FOR THEM TO CONSIDER.

11        WHAT I WILL PLAN TO DO IS ALSO HAVE A VERY SIMPLE ONE-,

12   TWO-SENTENCE INSTRUCTION WITH RESPECT TO REALNETWORKS AT THAT

13   TIME.  WHEN I PUT TOGETHER THE INSTRUCTIONS THAT I SENT TO

14   YOU, IT DIDN'T QUITE FIT IN TERMS OF THE FLOW.  AND I READ

15   THESE THINGS OUT LOUD TO MYSELF IN MY HEAD TRYING TO FIGURE

16   OUT HOW THE FLOW WORKS.  SO IT WAS REALLY FOCUSED ON THE LAW

17   AND -- THE LAW OF THE CASE SO I THOUGHT IT WOULD BE BETTER TO

18   DO IT IN THIS CONTEXT.

19        I ASSUME -- ARE YOU GOING TO -- IS ANYBODY GOING TO

20   MENTION REALNETWORKS DURING THEIR OPENING?

21              **MS. SWEENEY:**  YES, YOUR HONOR, I THINK BOTH SIDES

22   WILL.

23              **THE COURT:**  OKAY.  THEN THAT WAY THEY'LL BE

24   INTRODUCED TO WHO IT IS, AND AFTER THEY GET THAT INTRODUCTION

25   FROM YOU, THEN I WILL GIVE THEM THE INSTRUCTION WITH RESPECT

```
 1   TO THEIR PARTICIPATION.  OKAY?
 2            MS. SWEENEY:  THAT'S FINE, YOUR HONOR.
 3            THE COURT:  ALL RIGHT.  AND THEN LET'S SEE.  THIS IS
 4   A NEW EXHIBIT LIST, I TAKE IT, FROM PLAINTIFFS THAT WAS HANDED
 5   TO ME.  PLAINTIFFS' EXHIBIT LIST UPDATED AS OF NOVEMBER 30TH.
 6            MS. SWEENEY:  YES, YOUR HONOR.
 7            THE COURT:  OKAY.  ALL RIGHT.  LET'S GET STARTED.
 8      WE'LL START WITH MOTIONS 10 AND 11.
 9            MS. BERNAY:  GOOD MORNING, YOUR HONOR.  ALEXANDRA
10   BERNAY FOR THE PLAINTIFFS.
11            THE COURT:  GOOD MORNING.
12            MS. BERNAY:  AND SO I'M GOING TO ADDRESS MOTION IN
13   LIMINE 10 FIRST, BUT THE ISSUES REALLY DO OVERLAP SO --
14            THE COURT:  YES.
15            MS. BERNAY:  -- ORIGINALLY APPLE WANTED TO BRING IN
16   15 DIFFERENT DEVICES AND SEND THEM BACK TO THE JURY WITH MUSIC
17   ON THEM CHARGED.  THEY -- THAT'S WHAT THEY TOLD PLAINTIFFS
18   THEN.  WHEN WE MET AND CONFERRED, THINGS CHANGED AROUND A
19   LITTLE BIT, AND ONCE THEY RECEIVED OUR MOTION, THINGS CHANGED
20   EVEN FURTHER.  THEY'VE CHANGED AGAIN.
21      AND NOW THE -- THE PLAN, AT LEAST THAT THEY HAVE, IS TO
22   BRING IN SIX IPODS CHARGED WITH MUSIC BUT NOT PLAYABLE.  AT
23   EVERY TURN APPLE HAS REALLY TRIED TO CHANGE THE CONVERSATION
24   ABOUT THIS, AND THAT LEAVES US WITH A PROBLEM WHICH IS THAT WE
25   DON'T REALLY UNDERSTAND WHAT THEY PLAN TO DO WITH THESE
```

1    DEVICES, MOSTLY BECAUSE THEY WON'T TELL US AND THEN THEY COME

2    UP WITH KIND OF DIFFERENT REASONS.

3        FOR US, WE FIND THAT THESE DEVICES ARE IRRELEVANT.

4    THEY'RE IRRELEVANT TO THE KEY ISSUE IN THIS CASE WHICH WAS THE

5    ISSUANCE AND ACTIVATION OF KVC AND DVC IN ITUNES 7.0 AND 7.4,

6    BUT THEY'RE ALSO IRRELEVANT FOR THE OTHER ISSUES THAT APPLE --

7        **THE COURT:**  WELL, DO THEY ALL HAVE 7.0 AND 7.4 ON

8    THEM?

9        **MS. BERNAY:**  IT'S NOT COMPLETELY CLEAR BASED ON WHAT

10   WE KNOW ABOUT.

11       **THE COURT:**  MR. ISAACSON, CAN YOU ANSWER MY QUESTION?

12       **MR. ISAACSON:**  YES.  THEY ARE ALL DEVICES FROM THE

13   PERIODS WHERE THEY WOULD HAVE 7.0 AND/OR 7.4.  YOU'LL RECALL

14   THAT 7.4 WAS ON THE DEVICES AS OF SEPTEMBER 2006 AND ACTIVATED

15   LATER SO WE HAVE -- WE HAVE SIX DEVICES -- I'M SORRY.  THERE'S

16   ONE DEVICE FROM BEFORE THE PERIOD, OCTOBER 2004.  SO WE HAVE

17   FIVE DEVICES BEGINNING SEPTEMBER 2006 THROUGH SEPTEMBER 2008

18   AND ONE DEVICE FROM OCTOBER 2004 FOR PURPOSES OF COMPARISON.

19       **MS. BERNAY:**  AND, YOUR HONOR, THAT'S CORRECT ON THEIR

20   LIST.  SO TRIAL EXHIBIT 2743 IS A FOURTH IPOD PHOTO, FOURTH

21   GENERATION THAT WOULD NOT HAVE HAD 7.0.

22       **THE COURT:**  OKAY.  CONTINUE.

23       **MS. BERNAY:**  THANK YOU.

24       SO ONE OF THE THINGS THAT THEY SAY ARE THAT THESE ARE

25   RELEVANT TO SHOW, FOR EXAMPLE, A FEATURE THAT DR. NOLL DIDN'T

```
 1    CONSIDER.  SO, FIRST, THAT'S NOT ACCURATE.  DR. NOLL'S MODEL

 2    CONSIDERED ALL THE RELEVANT VARIABLES IN RUNNING HIS

 3    REGRESSION.  AND THEN, SECOND OF ALL --

 4            THE COURT:  THAT'S -- AGAIN, THAT'S SOMETHING THAT

 5    WE'RE HERE TO DEBATE THAT.

 6            MS. BERNAY:  SURE.  I UNDERSTAND THAT, YOUR HONOR.

 7    BUT ONE OF THE THINGS THAT THEY SAY, FOR EXAMPLE, IS THAT THE

 8    JURORS SHOULD BE ALLOWED OR ABLE TO TEST PIXEL RESOLUTION.  I

 9    DON'T KNOW HOW THEY'RE GOING TO BE ABLE TO TEST SOMETHING LIKE

10    PIXEL RESOLUTION BY LOOKING AT AN IPOD THAT, BY THE TIME IT

11    GETS BACK TO THE JURY ROOM, MAY NOT EVEN BE CHARGED ANYMORE.

12    SO WE BELIEVE THE REASON, REALLY, THAT THEY WANT TO SUBMIT A

13    NUMBER OF THESE DEVICES IS TO CONFUSE THE ISSUES.

14        WE RAISED A NUMBER OF AUTHENTICITY CONCERNS AS WELL.  IT'S

15    NOT THAT WE HAVE SUCH A PROBLEM WITH THE DEVICES THAT COME

16    DIRECTLY FROM APPLE.  THEY DID EVENTUALLY PROVIDE US SOME

17    INFORMATION FROM VARIOUS APPLE EMPLOYEES.  BUT, AGAIN, AS

18    WE'VE NOTED IN OUR MOTION, APPLE'S LAWYERS ACTUALLY GOT

19    INVOLVED IN THE PROCESS, ADDED CONTENT.  THE SONG THAT THEY

20    ADDED WAS SOMETHING THAT WAS FROM 2012, WAS SPECIALLY MASTERED

21    FOR IPOD SONG TRACK, AND THAT REALLY KIND OF INFECTS THE

22    PROCESS.

23            THE COURT:  WELL, I -- I -- FIRST OF ALL, THIS IS NOT

24    A CRIMINAL TRIAL SO --

25            MS. BERNAY:  SURE.
```

```
 1              THE COURT:  -- THIS NOTION THAT THERE'S SOME CHAIN OF

 2     CUSTODY ISSUE IS NOT PERSUASIVE.

 3         SECOND, I UNDERSTOOD AT LEAST PART OF THIS WAS NOT -- WAS

 4     THAT THEY WERE BEING USED ALSO -- OR THEY WANTED TO USE THEM

 5     FOR DEMONSTRATIVE PURPOSES.

 6              MR. ISAACSON:  THAT IS ONE PURPOSE, YOUR HONOR.

 7              THE COURT:  SO -- SO IS IT RIGHT THAT YOU'RE ASKING

 8     THAT THE COURT PREADMIT SIX?

 9              MR. ISAACSON:  WE ARE -- YES, WE ARE ASKING FOR

10     ADMISSION OF THOSE SIX, YES.

11              THE COURT:  ALL RIGHT.  CONTINUE.

12              MS. BERNAY:  YOUR HONOR, WE THEN MOVE ON TO THE

13     DEMONSTRATIVES WHICH I THINK HAS DIFFERENT ISSUES.  AND WE

14     HEAR WHAT YOU'RE SAYING ABOUT THE CHAIN OF CUSTODY.  BUT FOR

15     THESE DIFFERENT DEVICES, THESE ARE ONES THAT THEY'VE BOUGHT ON

16     THE INTERNET.  WE HAVE NO IDEA WHAT THEY REALLY CONTAIN, WHAT

17     PURPOSE THEY REALLY --

18              THE COURT:  DO YOU HAVE ANY REASON TO BELIEVE THAT

19     THESE AREN'T THE IPODS AT ISSUE IN THIS CASE?

20              MS. BERNAY:  AS TO --

21              THE COURT:  YES OR NO?

22              MS. BERNAY:  AS TO THE IPODS, NO.

23              THE COURT:  OKAY.

24              MS. BERNAY:  WE DON'T HAVE -- WE DON'T HAVE AN ISSUE

25     WITH THE IPODS IN THAT MANNER.  THE ISSUE IS WITH THESE OTHER
```

```
 1    DEVICES THAT -- THEY HAVE 24 OTHER DIFFERENT DEVICES, MANY OF
 2    WHICH ARE NOT IPODS, THAT THEY WANT TO SHOW THE JURY.  THESE
 3    ARE THINGS LIKE THE CREATIVE NOMAD WHICH WAS SOMETHING THAT'S
 4    JONES DAY'S PROPERTY, THE PERSONAL PROPERTY OF SOMEBODY AT
 5    BOIES SCHILLER, THE RCA LYRA, JUKEBOX, ZUNE, CREATIVE ZEN,
 6    MOBIBLUE CUBE, IT GOES ON AND ON.
 7        AND WITH THOSE DEVICES, WHEN WE WENT TO INSPECT THEM, WE
 8    FOUND, YOU KNOW, VARIOUS TYPES OF MUSIC ON THEM.  WE DON'T
 9    KNOW WHERE THESE CAME FROM.  ONE OF THE BOXES SAID IT HAD A
10    WHITE DEVICE IN IT, INSIDE WAS A BLACK DEVICE.  AND WE DON'T
11    KNOW THAT THE CONTENT ON THE DEVICES MAKES IT SO THAT THEY
12    OPERATE IN THE WAY THAT THE DEVICE WAS INTENDED TO.
13        THE COURT:  WHAT DOES IT MATTER IF THEY'RE BEING USED
14    FOR DEMONSTRATIVE PURPOSES?
15        MS. BERNAY:  WELL, BECAUSE IT WOULDN'T BE AN ACCURATE
16    REPRESENTATION, YOUR HONOR.
17        THE COURT:  WELL, THE QUESTION IS ARE THEY GOING TO
18    PLAY WHAT'S ON IT?
19        MS. BERNAY:  WELL --
20        THE COURT:  YES OR NO?
21        MR. ISAACSON:  NO.
22        MS. BERNAY:  WELL, THEY HAD PREVIOUSLY TOLD US YES.
23        THE COURT:  OKAY.  LOOK, I -- I UNDERSTAND THE
24    FRUSTRATION.  THAT'S WHY WE'LL DO IT ON THE RECORD.  BUT WE'RE
25    IN TRIAL MODE.
```

1              **MS. BERNAY:**  SURE.

2              **THE COURT:**  AND THINGS HAPPEN LAST MINUTE IN TRIAL

3    MODE.  SO KEEP GOING.

4              **MS. BERNAY:**  FINALLY, YOUR HONOR, THERE'S THE ISSUE

5    OF BURNING AND RIPPING.  SO THEY BOUGHT THESE WRITABLE CD'S

6    THAT ARE NOT FROM THE PERIOD AND THEY WANT TO PUT ON A

7    DEMONSTRATION THAT, ACCORDING TO THEM, BURNING AND RIPPING IS

8    EASY.  THESE CD'S, AS THEY ADMIT, ARE MODERN CD'S.  APPARENTLY

9    THEY COULDN'T FIND THE RIGHT CD'S.  AND WE THINK THAT THIS IS

10   GOING TO CONFUSE THE JURY, MISLEAD THE JURY, AND WE'RE GOING

11   TO HAVE TO WASTE SUBSTANTIAL TIME ON CROSS, YOU KNOW, GETTING

12   TO THE POINT OF THE MATTER WHICH IS THAT IT'S NOT A

13   SUBSTANTIALLY SIMILAR DEMONSTRATION WHICH IS WHAT THE CASE LAW

14   REQUIRES.

15             **THE COURT:**  ALL RIGHT.  MR. ISAACSON.

16             **MR. ISAACSON:**  WELL, FIRST OF ALL, WITH RESPECT TO

17   THE SIX DEVICES THAT WE WOULD WANT ADMITTED, THEY ARE DEVICES

18   FROM THE PERIOD, OR ONE DEVICE THAT WILL PERMIT US TO DO

19   COMPARISON TO DEVICES IN THE PERIOD.  THERE'S NO ISSUE AS TO

20   WHETHER THEY ARE AUTHENTIC IPOD DEVICES.  A SUFFICIENT SHOWING

21   HAS BEEN MADE TO SHOW THAT THEY ARE AUTHENTIC BOTH BY

22   CERTIFYING THEM FROM WITHIN APPLE, AND BY -- THEY'RE

23   SELF-AUTHENTICATING BY THE NATURE OF THE DEVICES THEMSELVES.

24        AND THEY ARE RELEVANT TO SHOW THE JURY THE IPODS THAT

25   PLAINTIFFS ALLEGE HAVE HIGHER PRICES DUE TO AN ANTITRUST

1    VIOLATION TO SEE THE FEATURES, AND OF COURSE WE ARGUE THAT

2    DR. NOLL HAS IGNORED THE RELEVANT FEATURES.  AND SO ALLOWING

3    THE JURY TO SEE THE DIFFERENT FEATURES IS RELEVANT.

4        FOR EXAMPLE, ON PIXELS, PIXELS JUST MEAN HOW CLEAR YOUR

5    SCREEN IS, YOUR SCREEN RESOLUTION.  A JUROR CAN LOOK AT TWO

6    DIFFERENT SCREENS AND MAKE THEIR OWN DECISIONS.  AND GIVING

7    THEM INFORMATION ABOUT HOW MANY PIXELS ARE IN THE SCREEN MAY

8    NOT BE AS HELPFUL AS HAVING THEM ACTUALLY LOOK AT IT.

9        WITH REGARDS TO THE DEMONSTRATIVES, THERE'S NO SERIOUS

10   ISSUE --

11           THE COURT:  IS THERE ANY OTHER PURPOSE FOR WHICH

12   THEY -- YOU WOULD BE OFFERING THEM OTHER THAN PIXELS?

13           MR. ISAACSON:  OH --

14           THE COURT:  SO IDENTIFY --

15           MR. ISAACSON:  -- YES, SIZE.

16           THE COURT:  -- ALL OF THEM.

17           MR. ISAACSON:  THERE IS THE SIZE OF THE DEVICE.

18   THERE IS THE -- THERE IS THE LOOK AND FEEL OF THE DEVICE.

19   THERE IS THE SCREEN SIZE OF THE DEVICE WHICH IS DIFFERENT FROM

20   THE SCREEN QUALITY.  THERE ARE DEVICES WITH -- WITH THE

21   SCREENS WHERE YOU CAN SEE MOVIES OR TV'S ON THEM AND THOSE

22   WHERE WE -- WHERE WE WOULD DO A COMPARISON TO THOSE WITHOUT.

23           THE COURT:  YOU'LL HAVE TO LINK IT, MR. ISAACSON, TO

24   THE 7.0 AND 7.4.

25           MR. ISAACSON:  WELL, 7.0 WAS THE FIRST ITUNES -- WAS

```
1   THE LAUNCH OF ITUNES MOVIES.  AND SO -- WHICH IS WHAT IT WAS

2   MOST FAMOUS FOR.  AND PLAINTIFFS WILL ARGUE THE FACT THAT

3   MOVIES WERE NOW AVAILABLE ON ITUNES AND AVAILABLE TO SHOW ON

4   NEW IPOD DEVICES IS IRRELEVANT TO THE PRICE -- TO THE PRICING

5   OF THE IPOD, AND WE WILL SAY IT IS VERY RELEVANT.

6          THE COURT:  SO HOW IS SCREEN SIZE RELEVANT TO 7.0 AND

7   7.4 -- 7.0 AND 7.4?

8          MR. ISAACSON:  BECAUSE THAT IS ANOTHER

9   CHARACTERISTIC, SO SCREEN SIZE IS INCREASED.

10         THE COURT:  I UNDERSTAND THAT -- OKAY.  BUT WE'RE NOT

11  DEALING WITH THE DIFFERENCE BETWEEN ONE MODEL OF IPOD TO THE

12  NEXT MODEL OF THE IPOD.  WHAT WE'RE DEALING WITH HERE IS

13  THE -- IS 7.0 AND 7.4.  SO HOW ARE THOSE RELEVANT?

14         MR. ISAACSON:  YOUR HONOR IS NOT FACTUALLY CORRECT,

15  BECAUSE AT THE SAME TIME AS 7.0 AND 7.4 STARTED, NEW

16  GENERATIONS OF IPODS WERE BEING SOLD WITH NEW FEATURES AT

17  EXACTLY THE SAME TIME.  SO IT IS THE CASE THAT THE NEW

18  FEATURES OF IPODS WHICH HAD ALSO 7.0 AND 7.4 WILL BE PART OF

19  THE EVIDENCE IN THE CASE.

20     THE LAST FEATURE THAT I DIDN'T MENTION WAS COVER FLOW

21  WHICH BASICALLY MEANS YOU COULD GET YOUR ALBUM COVERS IN

22  ITUNES -- SHOWN ON ITUNES AND THEN EVENTUALLY ON YOUR IPOD

23  WITH 7.4.

24         THE COURT:  ALL RIGHT.  SO THE -- WITH -- ARE YOU

25  SAYING WITH RESPECT TO PIXELS?
```

```
 1              MR. ISAACSON:  YEAH, SO THERE'S -- THERE ARE DEVICES

 2    DURING THE CLASS PERIOD BEGINNING IN SEPTEMBER 2006 WHICH HAVE

 3    MORE PIXELS THAN THE DEVICES BEFORE SEPTEMBER 2006.  CONSUMERS

 4    PUT VALUE ON THE RESOLUTION OF THE SCREEN, THE QUALITY OF WHAT

 5    THEY ARE LOOKING AT, WHICH NECESSARILY AFFECTS THE PRICING.

 6    DR. NOLL IS DOING A BEFORE-AND-AFTER ANALYSIS OF SEPTEMBER

 7    2006.  HE'S NOT ACTUALLY EVER ISOLATING 7.0 OR 7.4.  HE'S

 8    ISOLATING SEPTEMBER 2006.  AND ALL OF THESE FEATURES CHANGED

 9    BEFORE AND AFTER SEPTEMBER 2006.

10              MS. BERNAY:  YOUR HONOR, IF I MAY?

11              THE COURT:  NO.  NOT YET.

12              MS. BERNAY:  OKAY.

13              THE COURT:  I NEED MY RECORD TO BE CLEAR.

14         SIZE OF THE DEVICE, THOSE ALL CHANGED?

15              MR. ISAACSON:  YES.

16              THE COURT:  DID THEY GET BIGGER, SMALLER, WHAT?

17              MR. ISAACSON:  SOMETIMES SLEEKER.  BUT, YES, IN

18    GENERAL, SMALLER, LIGHTER WEIGHT.  WHICH CONSUMERS PUT VALUE

19    ON.  THE LESS -- THE LIGHTER IT IS, THE MORE VALUABLE IT IS TO

20    CONSUMER.  AND ANYBODY WHO CARRIES THESE DEVICES HAS NOTICED

21    THAT OVER TIME, THEY BECOME LIGHTER AND EASIER TO CARRY.

22              THE COURT:  SCREEN SIZE?

23              MR. ISAACSON:  BIGGER SCREENS, EASIER TO SEE YOUR

24    TV'S AND MOVIES, MORE VALUABLE TO THE CONSUMER.  ALSO, YOU CAN

25    SEE YOUR -- YOUR SONGS -- YOUR SONG LIST MORE EASILY.
```

```
 1            THE COURT:  ANYTHING -- THE LOOK AND FEEL, IS THERE

 2    ANYTHING DIFFERENT FROM WHAT YOU'VE ALREADY SAID?

 3            MR. ISAACSON:  THERE ARE DESIGN -- WE WILL BE ABLE TO

 4    SHOW THAT THERE WERE, YOU KNOW, FOR EXAMPLE, NANOS WITH NEW --

 5    THAT LOOK COOLER.  AND THAT RELATES TO PRICING.

 6            THE COURT:  OKAY.  OTHER ARGUMENTS?

 7            MR. ISAACSON:  COVER FLOW WAS INTRODUCED WITH 7.0 AND

 8    7.4, WHICH YOU COULD SEE ON THE SCREENS.

 9      SO WITH REGARD TO THOSE SIX DEVICES, THAT'S WHAT I WOULD

10    HAVE TO SAY.  THE DEMONSTRATIVES, I WOULD HAVE ADDITIONAL

11    THINGS TO SAY.

12            THE COURT:  NOW WHAT ABOUT THE -- TELL ME ABOUT THE

13    DEVICES, WHAT THE JURY WOULD OR WOULD NOT BE ABLE TO DO.

14    THAT'S ALWAYS OF CONCERN IF THEY GO INTO THE BACK.

15            MR. ISAACSON:  THEY CAN TURN THEM ON AND LOOK AT

16    THEM.

17            THE COURT:  THEY CAN'T PLAY ANYTHING?

18            MR. ISAACSON:  I HAVE -- THEY ARE OUTFITTED SO YOU

19    COULD PLAY THE SONG.  I DON'T KNOW IF WE CARE IF THEY PLAY THE

20    SONG.  BUT I DON'T KNOW HOW TO DISABLE THE -- ONCE YOU TURN ON

21    THE SCREEN AND LOOK AT IT, I MEAN, WE COULD -- YOU NEED A SONG

22    ON THERE TO SEE THE SONG LIST.

23            THE COURT:  SO THEY ARE PLAYABLE?

24            MR. ISAACSON:  SOME OF THEM ARE PLAYABLE.

25            THE COURT:  SOME OF THEM OR ALL OF THEM?
```

```
1          MR. ISAACSON:  ALL OF THEM.  ALL OF THE SIX ARE

2    PLAYABLE.

3          THE COURT:  AND THEN THE ONE WITH THE MOVIE, THAT'S

4    PLAYABLE AS WELL?  OR IS THE MOVIE NOT ON THERE?

5          MR. ISAACSON:  WE DON'T HAVE -- WE DON'T HAVE ANY

6    MOVIES LOADED ONTO THEM TO PLAY THE MOVIE.

7          THE COURT:  OKAY.  SO 2743 IS WHICH DEVICE?

8          MR. ISAACSON:  THAT'S AN IPOD FOURTH GENERATION

9    CALLED A FOURTH GENERATION PHOTO.  IT DATES FROM OCTOBER 2004.

10          THE COURT:  AND THIS IS THE ONE WITHOUT 7.0 AND 7.4?

11          MR. ISAACSON:  CORRECT.  IT'S AN ILLUSTRATION OF A

12   PRE-SEPTEMBER 2006 DEVICE IN ORDER TO DO A COMPARISON BEFORE

13   AND AFTER SEPTEMBER 2006.

14          THE COURT:  2712?

15          MR. ISAACSON:  THAT'S A CLASSIC SIXTH GENERATION

16   DEVICE FROM SEPTEMBER 2007, WHICH IS THE SAME DATE AS 7.4.

17          THE COURT:  2715?

18          MR. ISAACSON:  THAT'S A NANO SECOND GENERATION FROM

19   SEPTEMBER 2006, THE SAME DATE AS 7.0.

20          THE COURT:  2716?

21          MR. ISAACSON:  THAT'S A NANO THIRD GENERATION FROM

22   SEPTEMBER 2007.

23          THE COURT:  2720?

24          MR. ISAACSON:  THAT'S A TOUCH FIRST GENERATION

25   SEPTEMBER 2007.
```

```
 1              THE COURT:  2845?

 2              MR. ISAACSON:  2845 IS THE CLASSIC SEVENTH GENERATION

 3    FROM SEPTEMBER 2008.

 4              THE COURT:  AND THEN 2705 IS A ZUNE?

 5              MR. ISAACSON:  YES, YOUR HONOR.

 6              THE COURT:  FROM WHAT YEAR?

 7              MR. ISAACSON:  I DON'T -- 2006.

 8              THE COURT:  2006.

 9         2733?

10              MR. ISAACSON:  THIS IS A --

11              THE COURT:  SANSA?

12              MR. ISAACSON:  A SANDISK SANSA.

13              THE COURT:  WHAT YEAR?

14                   (OFF-THE-RECORD DISCUSSION.)

15              MR. ISAACSON:  THIS WOULD BE FROM DURING THE CLASS

16    PERIOD.

17              THE COURT:  TO BE CLEAR, ALL OF THE EXHIBITS THAT I

18    REFERENCED IN TERMS OF THE IPODS, THOSE ARE THE SIX THAT

19    YOU'RE ASKING TO HAVE ADMITTED?

20              MR. ISAACSON:  CORRECT.

21         THE REST OF THE DEVICES WE WOULD SEEK TO USE AS

22    DEMONSTRATIVES.  OR POTENTIALLY.

23              THE COURT:  OKAY.  OTHER ARGUMENTS WITH RESPECT TO

24    THE SIX?  ANYTHING ELSE?

25              MR. ISAACSON:  NOT WITH RESPECT TO THE SIX, YOUR
```

1   HONOR.

2          **THE COURT:**  ALL RIGHT.  HOW ABOUT WITH RESPECT TO THE

3   DEMONSTRATIVES?

4          **MR. ISAACSON:**  WELL, WITH RESPECT TO THE

5   DEMONSTRATIVES, THESE -- SOME OF THESE ARE COMPETITOR DEVICES

6   THAT WOULD ILLUSTRATE FOR THE JURY THE COMPETITION THAT WAS

7   GOING ON BETWEEN MOBILE DEVICES SUCH AS THE ZUNE AND THE

8   NOMAD.

9       WITH REGARDS TO AUTHENTICATION OF THESE FOR PURPOSES OF

10   DEMONSTRATIVES, IT'S MORE THAN ENOUGH FOR A WITNESS TO LOOK AT

11   IT, RECOGNIZE IT.  THEY'RE MARKED AS ZUNE.  THE BOX SAYS ZUNE.

12   IT SAYS ZUNE ON IT.  THERE'S NO SERIOUS ISSUE THAT THIS WAS A

13   ZUNE.  AND IN TERMS OF ILLUSTRATING THE COMPETITION THAT WAS

14   GOING ON AMONGST DEVICES, IT'S HELPFUL TO SHOW THAT TO THE

15   JURY.

16          **THE COURT:**  WHAT -- WHO IS -- WHO DO YOU ANTICIPATE

17   BEING THE WITNESS PROFFERING THIS INFORMATION?

18          **MR. ISAACSON:**  SOME OF THESE WILL BE -- THESE WILL

19   PRINCIPALLY BE FACT WITNESSES.

20          **THE COURT:**  WHO?

21          **MR. ISAACSON:**  WELL, FOR EXAMPLE, MR. CUE OR

22   MR. SCHILLER WOULD BE ABLE TO HOLD UP THE ZUNE AND SAY THIS

23   WAS WHAT WE WERE COMPETING AGAINST DURING A PERIOD OF TIME.

24          **THE COURT:**  OKAY.  ANYTHING ELSE ON DEMONSTRATIVES?

25          **MR. ISAACSON:**  I THINK THAT'S PRINCIPALLY IT.

```
 1        WE ALSO HAVE SOME, YOU KNOW, FURTHER DEMONSTRATIVES OF

 2   IPODS WHICH ARE RELEVANT BUT WE DON'T NEED TO SEND BACK TO THE

 3   JURY.  AND THEY WOULD BE RELEVANT FOR THE SAME ISSUES THAT WE

 4   WERE DISCUSSING BEFORE.

 5        IF YOU WANT ME TO DISCUSS THE BURNING AND RIPPING, I THINK

 6   IT'S SELF-EVIDENT WHY --

 7             THE COURT:  NO.  THAT'S THIRD.  OKAY, THAT'S NEXT.

 8   GO AHEAD.

 9             MR. ISAACSON:  IF WE DECIDE TO DO THAT, IT WOULD --

10   BOTH SIDES ARE GOING TO BE TALKING ABOUT BURNING AND RIPPING.

11   THE -- DR. NOLL SAYS THAT'S A SWITCHING COST THAT CAUSES

12   PEOPLE TO BE LOCKED IN.  WE MAY DECIDE TO ILLUSTRATE BURNING A

13   DISK FOR THE JURY.

14             THE COURT:  SO THE MAIN PROBLEM THAT I HAVE WITH THAT

15   PARTICULAR SUGGESTION IN TERMS OF A DEMONSTRATIVE IS THAT THE

16   ABILITY TO BURN AND RIP A DISK IS VERY FACT-DEPENDENT ON

17   ONE'S -- ON A CLASS MEMBER'S OR ANY CONSUMER'S COMFORT LEVEL

18   WITH THE TECHNOLOGY.  SO YOU MAY GET AN EXPERT ON HERE WHO CAN

19   DO IT IN TEN SECONDS.  THAT DOESN'T MEAN THAT SOME CONSUMER

20   DIDN'T TAKE THEM TWO HOURS TO DO IT.

21        SO THAT, I HAVE A PARTICULAR PROBLEM WITH BECAUSE I DON'T

22   THINK THAT YOU CAN ACCURATELY DESCRIBE FOR ALL PLAINTIFFS, ALL

23   CONSUMERS, THE COMPLEXITY WITH RESPECT TO THAT PARTICULAR

24   DEMONSTRATION.

25             MR. ISAACSON:  I THINK ANY PHYSICAL ACT CAN BE
```

```
 1    DEMONSTRATED, YOUR HONOR, AND THAT'S WHAT BURNING AND RIPPING

 2    IS.  I DO IT AT HOME EVERY WEEK.

 3         THE COURT:  YOU MAY, BUT THAT DOESN'T MEAN THAT

 4    SOMEONE WHO'S NOT FAMILIAR WITH TECHNOLOGY IS.  THERE ARE

 5    PLENTY OF -- LOOK, THERE ARE PLENTY OF ADULTS WHO RELY ON

 6    THEIR CHILDREN TO DO THAT KIND OF THING FOR THEM BECAUSE THEY

 7    CAN'T.

 8         MR. ISAACSON:  WELL --

 9         THE COURT:  AND THAT'S AN ISSUE OF COMFORT LEVEL.  SO

10    THE ABILITY -- MY CONCERN IS THAT IT WOULD NOT ACCURATELY

11    DESCRIBE THE PROCESS FOR ALL CONSUMERS.

12         MR. ISAACSON:  ANY --

13         THE COURT:  ARE YOU GOING TO GET SOMEONE UP HERE WHO

14    HAS -- WHO'S NEVER BEEN ABLE -- WHO'S NEVER EVEN TRIED TO DO

15    IT?

16         MR. ISAACSON:  ANYTIME YOU DEMONSTRATE A PHYSICAL

17    ACT, THE PERSON DEMONSTRATING THE PHYSICAL ACT, IT COULD BE

18    SAID THAT THERE ARE MANY OTHER PEOPLE WHO MIGHT HAVE MORE

19    DIFFICULTY WITH THE ACT.  ALL RIGHT.  THAT'S A POINT THAT CAN

20    ALWAYS BE MADE.  BUT THAT'S NOT A REASON WHY YOU DON'T

21    DEMONSTRATE PHYSICAL ACTS, WHICH IS WHAT BURNING AND RIPPING

22    IS.  IT'S JUST TO SHOW THE PHYSICAL ACT.

23         THE COURT:  ANY OTHER ARGUMENT?

24         MR. ISAACSON:  I THINK THE CASE LAW SUPPORTS THAT

25    PHYSICAL ACTS CAN BE USED AS DEMONSTRATIVE PERFORMANCES, AND
```

1    IT WOULD BE -- AND IT WOULD BE HELPFUL TO ILLUSTRATE THAT TO

2    THE JURY.

3              **THE COURT:**  IT CAN BE DONE IN WORDS AS WELL.

4              **MR. ISAACSON:**  IT CAN BE DONE IN WORDS AS WELL.

5              **THE COURT:**  OKAY.  OTHER ARGUMENTS?

6              **MR. ISAACSON:**  NO, YOUR HONOR.

7              **THE COURT:**  ANY RESPONSE?

8              **MS. BERNAY:**  YES.  THANK YOU, YOUR HONOR.

9        SO APPLE'S COUNSEL TALKED ABOUT A NUMBER OF PURPORTED

10   REASONS WHY THESE DEVICES WOULD BE HELPFUL TO GO BACK TO THE

11   JURY.  BUT WHAT THEY HAVE INFORMED US, FOR EXAMPLE, IS THAT

12   THEY DON'T HAVE CHARGERS, THEY DON'T HAVE A WAY TO LISTEN TO

13   THE AUDIO, THERE'S NO SPEAKERS, THERE'S NO HEADPHONES GOING

14   BACK, THERE'S NO MOVIES ON IT.  SO BY THE TIME THAT THESE

15   DEVICES DO GO BACK TO THE JURY, MANY OF THE THINGS THAT

16   MR. ISAACSON SAID WOULD BE SO IMPORTANT FOR THE JURORS TO

17   VIEW, THEY WOULDN'T BE ABLE TO VIEW.

18             **THE COURT:**  SO WHY WOULDN'T WE HAVE A CHARGER?  I

19   MEAN, DO YOU OBJECT TO A CHARGER?

20             **MS. BERNAY:**  WELL, WE WOULD OBJECT TO THE CHARGER

21   BECAUSE WE DON'T THINK THAT THE JURY SHOULD BE BACK THERE

22   PLAYING WITH THESE DEVICES.

23             **THE COURT:**  BUT YOUR OBJECTION IS TO THE DEVICE

24   ITSELF.

25             **MS. BERNAY:**  IT IS, YOUR HONOR.

 1              **THE COURT:**  IF I CHOOSE -- OR IF I DECIDE THAT HAVING

 2      THE DEVICES WOULD BE APPROPRIATE, IF THAT'S THE DECISION THAT

 3      I MAKE, WHAT'S YOUR OBJECTION TO A CHARGER?

 4              **MS. BERNAY:**  WELL, MY OBJECTION TO A CHARGER WOULD BE

 5      DIFFERENT DEPENDING ON THE USE THAT IT'S GOING TO BE USED FOR.

 6      FOR EXAMPLE, MR. ISAACSON TALKED ABOUT THE LOOK AND FEEL.

 7      THAT IS NOT WHAT THIS CASE IS ABOUT.  THIS CASE IS NOT ABOUT

 8      THESE PHYSICAL DEVICES.  THE CASE --

 9              **THE COURT:**  WELL, HERE'S -- WELL, LET'S ASK A

10      QUESTION ABOUT THAT.  WHAT HE ARGUED IS THAT NOLLS (PHONETIC)

11      DID NOT CONSIDER LOOK AND FEEL AS ONE OF THE FACTORS IN HIS

12      REGRESSION ANALYSIS.  DID HE OR DID HE NOT?

13              **MS. BERNAY:**  I DON'T BELIEVE -- I BELIEVE THAT WHAT

14      HE DID COVERED ISSUES SUCH AS LOOK AND FEEL BECAUSE HE

15      CONSIDERED ALL RELEVANT VARIABLES IN DOING THE REGRESSION.

16              **THE COURT:**  IN HIS VIEW.

17              **MS. BERNAY:**  YES, YOUR HONOR.

18              **THE COURT:**  IN HIS VIEW.

19              **MS. BERNAY:**  CORRECT.

20              **THE COURT:**  THIS IS A TRIAL BECAUSE BOTH SIDES DO NOT

21      AGREE.

22              **MS. BERNAY:**  I UNDERSTAND WHAT YOU'RE SAYING.

23              **THE COURT:**  SO IF HE CONSIDERED LOOK AND FEEL, THEN

24      THE RELEVANCE OF THOSE DEVICES, THE LOOK AND FEEL OF THOSE

25      DEVICES IS IN FACT RELEVANT.  SO DID HE?  IF HE DID, THEN

1    THEY'RE RELEVANT FOR THAT BASIS.  IF HE DIDN'T, THEN THEY'RE

2    ALSO RELEVANT BECAUSE IT IS A CHALLENGE TO HIS ANALYSIS.

3         **MS. BERNAY:**  YOUR HONOR, BUT EVEN IF AN ITEM IS

4    MARGINALLY RELEVANT, AND HERE I'VE SAID IT WOULD BE MARGINALLY

5    RELEVANT, THERE'S ALSO THE ISSUE OF CONFUSING THE JURY,

6    MISLEADING AND IT BEING UNDULY PREJUDICIAL, AND WE THINK IF

7    THE JURY IS BACK THERE PLAYING WITH THESE DEVICES -- WE ALL

8    LIKE APPLE PRODUCTS -- AND IT COULD CONFUSE THE ISSUES FOR THE

9    JURORS.

10        **THE COURT:**  OKAY.  OTHER ISSUES?

11        **MS. BERNAY:**  ON THE DEMONSTRATIVES, WE'RE STILL NOT

12    TOTALLY SURE WHAT -- WHAT THEY'RE USING THEM FOR.  WHAT I

13    WOULD SAY IS THAT WE DON'T BELIEVE THAT MR. CUE, FOR EXAMPLE,

14    IS A PROPER SPONSORING WITNESS FOR WHAT A ZUNE OR AN IRIVER

15    IS.  OUR UNDERSTANDING FROM -- IN FACT, HOW THE PRICING

16    COMMITTEE WORKED WAS THAT THEY DIDN'T HAVE ACTUAL DEVICES THAT

17    THEY WERE USING.  WHAT THEY USED WERE SPECS AND

18    SPECIFICATIONS.  AND WE HAVE A NUMBER OF EXHIBITS IN THE CASE

19    THAT ARE THESE EXACT SPECS, YOU KNOW, AND SO WE DON'T KNOW

20    THAT HAVING THESE DEVICES -- AGAIN, WE DON'T KNOW THEIR PLANS

21    FOR THEM.  ARE THEY GOING TO PLAY WHATEVER CONTENT IS -- IS ON

22    THESE DEVICES?  IS --

23        **THE COURT:**  WELL, THEY'VE TOLD ME NO.  SO, CORRECT?

24        **MR. ISAACSON:**  PARDON?

25        **THE COURT:**  YOU'VE TOLD ME NO, THAT YOU'RE NOT

1   PLAYING ANYTHING OFF THE DEMONSTRATIVES?

2          **MR. ISAACSON:**  CORRECT.  WE'RE NOT GOING TO PLAY THE

3   MUSIC OUT LOUD IF THAT'S THE QUESTION.  YES.

4          **THE COURT:**  OKAY.  ALL RIGHT.  SO IT IS SO ORDERED

5   THAT THEY WILL NOT PLAY MUSIC OFF OF THOSE DEVICES.

6          **MS. BERNAY:**  DO THEY INTEND TO HAVE THEM ON AND SHOW

7   WHATEVER IS SCROLLING ON THE SCREEN OR VIDEO IF THE DEVICES

8   HAVE VIDEO?

9          **MR. ISAACSON:**  THE DEVICES DON'T HAVE VIDEO.  AND I

10  DON'T -- I DON'T KNOW IF WE'LL BE ABLE TO SHOW THE SCREEN FROM

11  THAT DISTANCE.  I DON'T KNOW IF IT MATTERS IF THEY'RE OFF OR

12  ON.  SOME OF THEM TURN ON.  SOME OF THEM DON'T.

13         **THE COURT:**  IS IT PRIMARY -- SO WHAT'S THE PRIMARY

14  USE, MR. ISAACSON, THE LOOK AND FEEL, THE HOLD, THE WEIGHT?

15         **MR. ISAACSON:**  YEAH.  YOU CAN HOLD UP THE TWO DEVICES

16  AND -- AND IT'S ALSO TO SAY -- I MEAN, SOME OF THEM LOOK

17  PRETTY DARN GOOD.  I MEAN, THIS WAS OUR COMPETITION AT THE

18  TIME.  THIS -- WE WERE FACING COMPETITION.  AND IT'S A MATTER

19  OF JUST HOLDING UP AND SAYING, YES, THESE THINGS EXISTED.

20     AND WE DO HAVE CHARGERS FOR THE SIX THAT WOULD GO BACK

21  INTO THE JURY ROOM.

22         **THE COURT:**  MS. BERNAY, OTHER ARGUMENTS REGARDING

23  DEMONSTRATIVES?

24         **MS. BERNAY:**  JUST ON THE BURNING AND RIPPING, YOUR

25  HONOR.  WE AGREE WITH YOU.  I HAVE TRIED TO BURN AND RIP

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

1    MYSELF.  I AM PRETTY GOOD AT AT LEAST SETTING UP A DVR, AND

2    I'VE HAD SIGNIFICANT TROUBLE DOING THAT.  AND THEN ALSO IT

3    WOULDN'T BE REPLICATING THE SITUATION AS -- AS IT EXISTED

4    DURING THE TIME SINCE THEY HAVE MODERN WRITABLE CD'S.

5            THE COURT:  OKAY.  ANY OTHER COMMENTS?

6            MS. BERNAY:  NOT AT THIS TIME, YOUR HONOR.

7            THE COURT:  MR. ISAACSON, ANY OTHER COMMENTS?

8            MR. ISAACSON:  NOTHING FURTHER, YOUR HONOR.

9            THE COURT:  SUBMITTED?

10           MS. BERNAY:  THANK YOU, YOUR HONOR.

11           THE COURT:  IN THAT A YES?

12           MS. BERNAY:  OH --

13           MR. ISAACSON:  YES.

14           MS. BERNAY:  -- YES.

15           THE COURT:  ALL RIGHT.  SO WITH RESPECT TO

16   EXHIBITS -- THE IPODS, ASSUMING THAT YOU CAN LAY THE

17   FOUNDATION, I THINK THAT THOSE ARE PROPERLY ADMISSIBLE.  I

18   DON'T THINK THAT THEY'RE UNDULY PREJUDICIAL.  YOU ARE GOING TO

19   HAVE TO -- IF YOUR ARGUMENT, MR. ISAACSON IS THAT THIS WAS --

20   WELL, NO, THAT'S A SECOND ISSUE.

21       SO WITH RESPECT TO THOSE, I DO THINK THAT IT'S IMPORTANT

22   TO MAKE SURE THAT THE JURY UNDERSTANDS WHAT THE DEVICES ARE

23   THAT ARE AT ISSUE.  THE -- I THINK IT WILL ALSO HELP THEM WITH

24   RESPECT TO THESE EXPERT REPORTS THAT TALK ABOUT ALL OF THESE

25   VARIOUS MODELS, ALL OF THE SALES NUMBERS, DAMAGES FLOW

1    DIRECTLY FROM THESE DEVICES.  AND I THINK IN ORDER FOR THE

2    JURY TO DO ITS JOB, I NEED TO HELP THEM AND ASSIST THEM IN

3    MAKING THIS AS REAL AS POSSIBLE, GIVEN THE -- GIVEN THE FACT

4    THAT -- THAT WE'RE DEALING IN A TIME PERIOD THAT HAS LONG

5    SINCE PASSED.

6        WITH RESPECT TO THE DEMONSTRATIVES, I'LL RESERVE.  YOU'LL

7    HAVE TO ESTABLISH A FOUNDATION.  THE ARGUMENT IS THAT THESE

8    WERE YOUR -- THAT THIS WAS YOUR COMPETITION.  IF YOU CAN

9    ESTABLISH THAT WITH CONTEMPORANEOUS RECORDS, THEN I WOULD BE

10   MORE INCLINED TO ALLOW YOU TO DO IT.

11       IF YOU CAN'T AND YOU JUST WANT SOME WITNESS TO SIT UP

12   THERE WITHOUT ANY KIND OF CONTEMPORANEOUS ARGUMENT THAT --

13   THAT IS, ANY DOCUMENTS OR ANYTHING, SAYING THAT THESE WERE IN

14   FACT YOUR -- THAT THIS WAS YOUR COMPETITION, THIS WAS WHAT YOU

15   WERE TRYING TO DEAL WITH, THEN I SEE THE RELEVANCE OF IT, AS I

16   BALANCE THESE ISSUES, IS LESS COMPELLING.

17       SO IF YOU CAN ESTABLISH A FOUNDATION, THEN I WOULD BE MORE

18   INCLINED TO ALLOW YOU TO USE THEM.  OBJECTIONS SHOULD BE MADE

19   AT THE TIME IF YOU DON'T THINK THAT THE FOUNDATION HAS BEEN

20   PROPERLY SET.

21           MR. ISAACSON:  WE WILL SHOW THOSE DOCUMENTS FIRST

22   THEN, YOUR HONOR, BEFORE.

23           THE COURT:  AND WITH RESPECT TO BURNING AND RIPPING,

24   GIVEN THAT YOU DON'T HAVE THE CD'S FROM THE TIME PERIOD, I DO

25   THINK THAT IT'S PREJUDICIAL BECAUSE THERE ARE TOO MANY

```
 1    VARIABLES TO ACCURATELY DESCRIBE FOR THE JURY WHAT THIS --
 2    WHAT THIS IS LIKE.  ONE OF THE ISSUES IS -- OR AT LEAST
 3    APPLE'S PERSPECTIVE, FROM WHAT I'VE READ, IS THAT THIS WAS AN
 4    EASY THING TO DO, BURNING AND RIPPING.  AND I'M NOT CONVINCED
 5    THAT THAT'S -- THAT THAT WAS OR IS THE CASE FOR ALL PEOPLE.
 6    AND SO YOU CAN DESCRIBE THAT IN WORDS, BUT I DON'T THINK THAT
 7    IT'S NECESSARY TO -- OR IN FACT, I THINK IT WOULD BE UNDULY
 8    PREJUDICIAL FOR YOU TO TRY TO BRING SOMEONE IN TO DO IT IN A
 9    WAY THAT WAS EASY FOR THEM BUT DOESN'T ACCURATELY DESCRIBE THE
10    PROCESS FOR EVERYONE.
11         SO THOSE ARE MY RULINGS ON THOSE THREE ISSUES.
12         LET'S GO TO THE NEXT ISSUE, THEN.
13             MS. BERNAY:  THANK YOU, YOUR HONOR.
14             THE COURT:  WHICH IS THE CONFIDENTIALITY ISSUES.
15             MR. ISAACSON:  MR. KIERNAN WILL BE SPEAKING TO THAT,
16    YOUR HONOR.
17             THE COURT:  OKAY.  GENTLEMEN, JUST GIVE ME A MINUTE.
18    LET ME WRITE SOME NOTES.
19                  (PAUSE IN THE PROCEEDINGS.)
20             THE COURT:  OKAY.  WITH RESPECT TO THIS ISSUE, I DID
21    GET A CHANCE BEFORE I CAME IN TO COURT THIS MORNING TO READ
22    THE SUBMISSIONS THAT YOU HAD FILED LAST NIGHT.
23         WHERE DO WE STAND -- HAS THERE -- I TAKE IT YOU HAVE NOT
24    TALKED ABOUT THIS THIS MORNING BEFORE COMING IN; IS THAT
25    CORRECT?
```

```
 1          MR. KIERNAN:  THAT'S CORRECT, YOUR HONOR.

 2          MR. COUGHLIN:  YOUR HONOR, IF I COULD -- MAYBE I

 3   COULD ILLUSTRATE WHERE WE STAND AND WHAT WE'RE TRYING TO DO

 4   AND WILLING TO DO.  IF I COULD DO THAT IN A MINUTE, I THINK IT

 5   WOULD HELP US.

 6          THE COURT:  GO AHEAD, MR. COUGHLIN.

 7          MR. COUGHLIN:  IF I COULD HAND UP EXHIBIT NO. 2 TO

 8   THE COURT, WHICH IS ALSO --

 9          THE COURT:  WELL, LET ME FIRST ASK, BEFORE YOU GET

10   THERE, HOW MANY DOCUMENTS ARE WE TALKING ABOUT, MR. KIERNAN?

11          MR. KIERNAN:  IN TOTAL, YOUR HONOR, INDIVIDUAL

12   DOCUMENTS, CLOSE TO 50, BUT THE NUMBER IS A BIT MISLEADING

13   BECAUSE MANY OF THE DOCUMENTS ARE DUPLICATES.

14          THE COURT:  WELL, ALL RIGHT.  SO WE'RE TALKING ABOUT

15   50 DOCUMENTS.  THIS IS THE DAY BEFORE TRIAL.  WE HAVE BEEN IN

16   PRETRIAL CONFERENCES SINCE OCTOBER.  WHY AM I HEARING THIS FOR

17   THE FIRST TIME ON DECEMBER 1ST BEFORE -- WE'VE ALREADY PICKED

18   THE JURY.  SO WHY SO LATE?  YOUR DELAY IS SIGNIFICANT.

19          MR. KIERNAN:  YOUR HONOR, WE HAD BEEN WORKING WITH

20   PLAINTIFFS, AND TO BE CANDID, I WAS CONFIDENT THAT WE WOULD

21   REACH A WORKABLE, REASONABLE SOLUTION FOR REDACTING WHAT I

22   CONSIDER TO BE SMALL PORTIONS OF, FRANKLY, A SMALL NUMBER OF

23   DOCUMENTS THAT FALL INTO FOUR DISCRETE CATEGORIES OF

24   INFORMATION TRADE SECRETS OF APPLE.

25          I RAISED THIS WITH MS. BERNAY IN LATE AUGUST, EARLY
```

1    SEPTEMBER, THAT WE WOULD HAVE TO REACH AN AGREEMENT WITH

2    RESPECT TO HOW TO PROTECT CERTAIN TRADE SECRETS, SOME OF WHICH

3    HAVE NOTHING TO DO WITH THE CASE, FOR EXAMPLE, THE PRICING

4    INFORMATION AND LABEL CONTRACTS AND THE RESELLER AGREEMENTS,

5    AND ALSO THE HIGHLY CONFIDENTIAL TRADE SECRETS, BOTH SOURCE

6    CODE AND TECHNICAL DESCRIPTIONS OF FAIRPLAY, THE PUBLIC

7    DISCLOSURE OF WHICH WOULD CAUSE GREAT HARM TO APPLE.

8         I RAISED THE ISSUE AGAIN WHEN WE MET AND CONFERRED ABOUT

9    SEALING ISSUES.  RIGHT IN THE ATTORNEYS' LOUNGE I SAT WITH

10   MS. BERNAY AND MR. MEDICI.  WE WENT THROUGH A NUMBER OF

11   DOCUMENTS THAT WE HAD SEALED IN CONNECTION WITH MOTION FOR

12   SUMMARY JUDGMENT AND THE *DAUBERT* MOTIONS, WHICH INCLUDED

13   TECHNICAL SPECIFICATIONS OF FAIRPLAY.  EXCUSE ME.  AND I

14   RAISED AGAIN THAT WE WERE GOING TO HAVE TO DEAL WITH THIS

15   ISSUE FOR THE TRIAL EXHIBITS, HOW WE'RE GOING TO DEAL WITH

16   EITHER INFORMATION THAT'S NOT RELEVANT OR THAT IT'S SO

17   DETAILED IT WOULD PROVIDE HACKERS OR OTHERS WITH THE ABILITY

18   TO REVERSE-ENGINEER FAIRPLAY AND COMPROMISE THE SECURITY

19   SYSTEM.  THE SECURITY SYSTEM, AS ASIDE (SIC) THAT APPLE STILL

20   HAS AN OBLIGATION WITH THE CONTENT PROVIDERS, WITH THE RECORD

21   LABELS, AND VIDEO AND OTHER CONTENT PROVIDERS, TO KEEP

22   CONFIDENTIAL AND TO KEEP SECURE SO THAT HACKERS CANNOT VIOLATE

23   THE COPYRIGHTS OF THOSE COPY -- OF THE CONTENT PROVIDERS.

24        LAST WEEK I DISCUSSED WITH MR. MEDICI AND MS. BERNAY A

25   PROPOSAL TO HANDLE THESE DOCUMENTS.  I PROPOSED TO PROVIDE

1    SAMPLE REDACTIONS FOR THE TECHNICAL SPECIFICATIONS SO THAT WE

2    COULD AGREE TO THE SCOPE.  AND ONE OF THE REASONS FOR THAT,

3    YOUR HONOR, IS FOR THE MAIN DOCUMENT THAT MR. COUGHLIN JUST

4    HANDED YOU, IT'S 103 PAGES, PLAINTIFFS HAVE PUT NINE VERSIONS

5    OF THIS DOCUMENT ON THEIR EXHIBIT LIST.  AND THE IDEA WAS

6    LET'S REDACT THAT DOCUMENT FIRST.  IF WE AGREE TO THE SCOPE,

7    THEN WE CAN PORT THOSE OR INCORPORATE THOSE ON THE OTHER NINE

8    VERSIONS OF THE SAME DOCUMENT.

9        AT THE SAME TIME, I DISCUSSED THE LABEL AGREEMENTS AND

10   PROPOSED THAT WE WOULD MAKE VERY MINOR REDACTIONS AFTER

11   TALKING TO THE LABELS.  AND, YOU KNOW, SOME OF THE LABEL

12   AGREEMENTS WE PROPOSED ONE REDACTION.  ON A COUPLE OF THE

13   LABEL AGREEMENTS, IT'S A REDACTION OF TWO OR THREE TERMS THAT

14   CAME AT THE REQUEST OF THE LABELS.

15       AND THEN FINALLY WERE THE RESELLER CONTRACTS WHICH WE

16   RAISED AND WE JUST RECENTLY SOUGHT TO SEAL, AND SO DID

17   PLAINTIFFS, SECTIONS OF THE RESELLER AGREEMENTS.  AGAIN, VERY

18   MINOR REDACTIONS OF THE PRICING INFORMATION.

19       I'VE ASKED -- I AGAIN ASKED PLAINTIFFS YESTERDAY IF THEY

20   WOULD AGREE TO THAT, PARTICULARLY GIVEN THAT THEY PURPORT TO

21   REPRESENT THE RESELLERS IN THIS CASE AS ABSENT CLASS MEMBERS,

22   AND WHETHER THEY WERE WAIVING THE CONFIDENTIALITY ON BEHALF OF

23   THE RESELLERS.  I HAVEN'T RECEIVED A RESPONSE.

24       APPLE'S POSITION IS IT HAS A CONTRACTUAL OBLIGATION TO

25   PROTECT THAT INFORMATION FROM PUBLIC DISCLOSURE, AND THE

1    PUBLIC DISCLOSURE WOULD HARM BOTH THE RESELLERS AND APPLE BY

2    PROVIDING COMPETITORS WITH AN UNFAIR ADVANTAGE OF VIEWING

3    THE -- THAT CONFIDENTIAL INFORMATION.

4        I HAVE BROUGHT HERE TODAY OUR FINAL REDACTIONS TO ALL

5    THREE CATEGORIES OF DOCUMENTS.  AND I -- I'VE ALSO ASKED, JUST

6    AS A FINAL NOTE, YOUR HONOR, PLAINTIFFS TO IDENTIFY ANY

7    REDACTIONS THAT THEY DISAGREE WITH, THAT THEY BELIEVE THEY

8    WOULD BE PREJUDICED BY THOSE REDACTIONS, THEY NEED THAT

9    INFORMATION TO BE PUBLIC FOR WHATEVER REASON, WHETHER IN THE

10   LABEL AGREEMENTS --

11       **THE COURT:**  SO YOU HAVE PHYSICAL COPIES OF THESE AND

12   THEY'RE HIGHLIGHTED OR WHAT?

13       **MR. KIERNAN:**  THEY'RE ALL HIGHLIGHTED.  AND I'M

14   WILLING TO GO PAGE BY PAGE.

15       **MR. COUGHLIN:**  I'M SURE HE IS.  HE'S NOT TRYING THE

16   CASE.  YOUR HONOR, WE'VE BEEN WORKING FOR THREE MONTHS ON

17   THESE ISSUES.  OKAY.  SO IN THE LAST WEEK, WE GET A DUMP OF

18   DOCUMENTS AFTER PREPARING ALL OF OUR WITNESSES.

19       **THE COURT:**  MR. COUGHLIN, CAN YOU TELL ME WHETHER OR

20   NOT HE MISREPRESENTED THAT THESE ISSUES WERE RAISED BACK IN

21   AUGUST AND SEPTEMBER AND THAT THEY HAVE BEEN IN A SERIES OF

22   ONGOING CONVERSATIONS ON THEM?

23       **MR. COUGHLIN:**  I ABSOLUTELY BELIEVE HE HAS

24   MISREPRESENTED BECAUSE I HAVE BEEN DEEPLY INVOLVED IN ALL THE

25   DOCUMENTS.  WE STIPULATED TO --

1              **THE COURT:**  HOLD ON, MR. COUGHLIN.

2        YOU -- WHEN DID YOU -- LET ME ASK YOU WHY ARE YOU ARGUING

3    THIS AND NOT MS. BERNAY?

4              **MR. COUGHLIN:**  BECAUSE I HAVE BEEN THE ONE IN CHARGE

5    OF THE DOCUMENTS.

6              **THE COURT:**  YOU WERE NOT IN THIS CASE IN AUGUST, WERE

7    YOU?

8              **MR. COUGHLIN:**  I STARTED THE CASE IN SEPTEMBER,

9    THAT'S TRUE.  I WORKED THROUGH ALL THE ADMISSIBILITY ISSUES.

10   I WORKED THROUGH ALL THE STIPULATIONS.  I WORKED THROUGH ALL

11   OF THE OBJECTIONS.  I DID THAT.  OKAY?  NONE OF THESE

12   OBJECTIONS -- I'VE PREPARED THESE WITNESSES WITH THIS DOCUMENT

13   THAT YOU HAVE IN FRONT OF YOU IS THE KEY DOCUMENT IN THE CASE.

14   IT -- IT'S -- 70 PERCENT OF IT NOW HAS BEEN REDACTED,

15   70 PERCENT.  THESE AREN'T MINOR REDACTIONS.  AND TO SHOW HOW

16   ONE HAND DOESN'T KNOW WHAT THE OTHER IS DOING, THEY SUBMITTED

17   SLIDES TO US YESTERDAY, YESTERDAY MORNING, WITH SOME OF THE

18   REDACTED PORTIONS IN THOSE SLIDES TO SHOW TO THE JURY

19   TOMORROW.

20        THAT'S WHAT I'M DEALING WITH.  I CAN'T GO TO TRIAL AND BE

21   WORKING THROUGH WHAT MR. KIERNAN WOULD LIKE TO WORK THROUGH ON

22   THE EVE OF TRIAL, WHICH HE NEVER BROUGHT UP DURING THE

23   OBJECTION PHASE, WHICH HE NEVER BROUGHT UP DURING THE

24   STIPULATION PHASE.  THE FIRST TIME HE RAISED IT WITH

25   MS. BERNAY FOR TRIAL WAS ON NOVEMBER 25TH.  OKAY?  SO THAT'S

1    THE FIRST TIME THAT THESE ISSUES HAVE BEEN RAISED.

2         AND IF I MIGHT SHOW YOUR HONOR, THEY HAVE A SLIDE THAT

3    THEY'RE GOING TO SHOW IN OPENING THAT THEY GAVE US YESTERDAY

4    MORNING.  WE MET AND CONFERRED LAST NIGHT.  ON THAT SLIDE ARE

5    THINGS THAT ARE REDACTED OUT OF HERE.  SO THIS TRIAL TEAM IS

6    PUTTING UP SUPPOSEDLY REDACTED -- MAYBE THEY'RE NOT TALKING TO

7    EACH OTHER.  BUT THE TIME AND EFFORT OF ME NOW TO GO BACK

8    THROUGH WITH MY WITNESSES WITH THESE REDACTIONS, IT JUST -- I

9    COULDN'T GO TO TRIAL.  I'M SERIOUSLY SAYING WE COULD NOT GO TO

10   TRIAL.  AND I THINK THIS IS -- THEY'VE WAIVED ANY OF THIS

11   STUFF.  THEY NEVER BROUGHT IT UP.  THEY -- THEY BRING -- ON

12   THE EVE OF TRIAL, THEY BRING HARD COPIES FOR US TO TAKE A LOOK

13   AT.  AM I SUPPOSED TO SPEND MY DAY AND A HALF IN HERE WITH

14   MR. KIERNAN WHILE MR. ISAACSON GOES TO GET READY FOR TRIAL

15   WITH HIS TEAM?  I DON'T THINK THAT'S FAIR.  I CAN'T DO THAT.

16        **THE COURT:**  THAT'S WHY I STARTED THIS CONVERSATION

17   ASKING HIM WHEN THESE CONVERSATIONS STARTED.

18        SO THAT SAID, WHAT I AM NOT PREPARED TO DO IS, GIVEN THE

19   CIRCUIT AUTHORITY ON THESE ISSUES, IS HAVE SOMEONE RACE UP TO

20   THE CIRCUIT BECAUSE I'M NOT SEALING SOMETHING THAT NEEDS TO BE

21   SEALED.

22        NOW, I THOUGHT I READ IN YOUR LETTER OF THIS MORNING THAT

23   THERE ISN'T AN OBJECTION TO SOURCE CODES BEING SEALED?

24        **MR. COUGHLIN:**  WE'VE ALWAYS SAID THAT.

25        **THE COURT:**  OKAY.  SO THAT'S NOT AN ISSUE.

```
 1        HOW MANY DOCUMENTS ARE WE DOWN TO?  YOU STARTED WITH 50.

 2   SOURCE CODE IS SEALED.  SO WHAT ELSE?

 3        MR. KIERNAN:  SOURCE CODE --

 4        THE COURT:  SOURCE CODE REPRESENTS HOW MANY OF THOSE

 5   DOCUMENTS?

 6        MR. KIERNAN:  PROBABLY FIVE, YOUR HONOR.  OR -- BUT

 7   SOME OF THESE DOCUMENTS, INCLUDING THE ONE THAT MR. COUGHLIN

 8   HANDED YOU, HAS SOURCE CODE AT THE END, BUT NOW I UNDERSTAND

 9   THAT THE SOURCE CODE SECTION OF THIS DOCUMENT WILL BE SEALED;

10   CORRECT?

11        MR. COUGHLIN:  THAT'S CORRECT.

12        MR. KIERNAN:  OKAY.

13        MR. COUGHLIN:  YOUR HONOR, IF I MIGHT.  TAKE A LOOK,

14   IF YOU COULD, IF YOU'D TAKE A LOOK AT PAGE 11 OF THIS

15   DOCUMENT.

16        MR. KIERNAN:  AND I'LL JUST NOTE FOR THE RECORD THAT

17   WE'VE REVISED THESE REDACTIONS AFTER MR. MEDICI RAISED ISSUES

18   ON FRIDAY, WHICH I BROUGHT TODAY.  SO, FOR EXAMPLE, 11, WE ARE

19   NOT REDACTING.  I REMOVED THIS REDACTION ON SATURDAY --

20             (SIMULTANEOUS COLLOQUY.)

21        MR. KIERNAN:  I DO WANT TO NOTE, BECAUSE SINCE HE'S

22   ATTACKED MY CREDIBILITY AND CLAIMING THAT I DID NOT RAISE

23   THESE ISSUES, I DID.  SECOND, MR. COUGHLIN HAS NOT BEEN

24   INVOLVED WITH RESPECT TO THE CONFIDENTIALITY ISSUES.

25   MR. MEDICI TOLD ME HE WAS IN CHARGE OF THAT.
```

```
 1              THE COURT:  ALL RIGHT.  MR. MEDICI, COME UP HERE.
 2              MR. MEDICI:  YOUR HONOR, WE -- WE HAVE, IN FACT,
 3     TALKED ABOUT CONFIDENTIALITY ISSUES FOR MONTHS AND YEARS IN
 4     THIS CASE, AND THAT'S TRUE.  BUT WHERE I THINK THE -- THE
 5     DISTINCTION NEEDS TO BE DRAWN IS THAT WE NEVER EVER DISCUSSED
 6     CONFIDENTIALITY ISSUES ABOUT DOCUMENTS THAT WERE GOING TO BE
 7     USED AS EXHIBITS AT TRIAL UNTIL MONDAY.  I GOT AN EMAIL MONDAY
 8     MORNING.  THE EMAIL SAID, "HEY, CAN WE HAVE A MEET-AND-CONFER
 9     TODAY?"
10         I SAID, SURE, LET'S DO IT AT NOON.  AND AT NOON, THEY
11     RAISED FOR THE FIRST TIME THE USE OF EXHIBITS THAT THEY HAD
12     CONFIDENTIALITY CONCERNS ABOUT AT TRIAL.
13              THE COURT:  DO YOU HAVE AN EMAIL, MR. KIERNAN, WHERE
14     YOU CAN CONFIRM THAT TRIAL EXHIBITS WERE DISCUSSED BEFORE --
15     BEFORE LAST TUESDAY, NOVEMBER 25TH, BEFORE THANKSGIVING?
16              MR. KIERNAN:  I DO NOT RECALL AN EMAIL.  THE FIRST
17     DISCUSSION WAS BY TELEPHONE IN LATE AUGUST WITH MS. BERNAY.
18     AND THE OTHER INCIDENT WAS, AS I SAID, IN THE ATTORNEYS'
19     LOUNGE WHILE WE WERE GOING THROUGH THE MOTION TO SEAL.  AND I
20     RAISED THEN THAT WE'RE GOING TO HAVE TO DEAL WITH THE PROCESS
21     FOR HOW TO HANDLE THESE AT TRIAL.
22              THE COURT:  MS. BERNAY, IS HE MISREPRESENTING THAT
23     CONVERSATION?
24              MS. BERNAY:  I MEAN, WHAT HE'S SAYING IS ACCURATE.
25     WE HAD GENERAL CONVERSATIONS IN THE ATTORNEY LOUNGE REGARDING,
```

1    YES, THIS IS SOMETHING THAT WOULD NEED TO BE DEALT WITH, AND

2    THEN WE NEVER HEARD FROM THEM.  WE ONLY DEALT WITH THE BOIES

3    SCHILLER LAWYERS REGARDING TRIAL EXHIBITS.  AND IT WASN'T

4    UNTIL THE 25TH OF NOVEMBER THAT WE GOT AN EMAIL SAYING WE NEED

5    TO TALK ABOUT CONFIDENTIALITY REGARDING TRIAL EXHIBITS.  AND

6    THEN WE HAD A CALL AT NOON WITH ME AND MR. MEDICI AND

7    MR. AMIRI AND MR. KIERNAN DURING THAT CALL.  I THINK THERE MAY

8    HAVE BEEN A BOIES SCHILLER LAWYER, TOO, AS WELL.

9          MR. KIERNAN:  AND, YOUR HONOR, IF I MAY, THIS -- YOU

10   KNOW, THERE MAY HAVE BEEN A MIXUP BECAUSE I'VE BEEN -- I WAS

11   OUT OF STATE FOR PERSONAL REASONS FOR A LARGE PART OF OCTOBER,

12   AND NOT TO SAY THAT THAT'S ANY EXCUSE, BUT GIVEN THAT I'VE

13   RAISED THE ISSUE WITH MS. BERNAY, THAT MAY HAVE ADDED TO THE

14   DELAY.

15         MS. BERNAY:  AND THERE WERE MANY, MANY

16   MEET-AND-CONFERS REGARDING TRIAL EXHIBITS WITH THE BOIES

17   SCHILLER TEAM THAT MR. COUGHLIN AND MYSELF AND OTHERS FROM MY

18   TEAM --

19         THE COURT:  WHO WAS THE LEAD ON THE ISSUE?

20         MS. BERNAY:  ON THOSE, IT WAS MR. COUGHLIN WAS THE

21   LEAD ON THE EXHIBITS.

22         THE COURT:  WHO WAS THE LEAD FOR THE DEFENSE?

23         MS. BERNAY:  IT WAS EITHER MS. GOODMAN OR

24   MS. DEARBORN DEPENDING ON THE CIRCUMSTANCES.

25         MR. COUGHLIN:  AND I WAS INVOLVED IN ALL OF THOSE,

1    YOUR HONOR, AND NOT ONCE WERE ANY OF THESE THINGS ABOUT

2    REDACTIONS.  WE WENT THROUGH THE OBJECTIONS.  WE WENT THROUGH

3    EVERY DOCUMENT.  IT TOOK US WEEKS AND WEEKS TO DO THAT.  NONE

4    OF THESE REDACTIONS WERE MENTIONED.

5        THEN WE WENT THROUGH THE OBJECTIONS.  YOUR HONOR WANTED TO

6    KNOW SPECIFICALLY ABOUT THE STIPULATIONS.  WE DID THAT.

7        AND TO FIND OUT THAT DOCUMENT, THAT MOST IMPORTANT

8    DOCUMENT OF THE CASE COMES OVER THURSDAY NIGHT WITH 70 PERCENT

9    OF IT REDACTED, THAT'S NOT OKAY.  HE WANTS ME NOW TO SPEND

10   TODAY WITH HIM GOING THROUGH WHAT HE THINKS -- THEY SHOULD

11   HAVE DONE THIS IN SEPTEMBER OR OCTOBER WITH WHAT THEY WANTED

12   REDACTED AND KEPT CONFIDENTIAL.

13        **THE COURT:**  I WOULD DISAGREE.

14        **MR. COUGHLIN:**  IN FACT, IT WAS WORSE.  THEY

15   STIPULATED TO THE ADMISSION WITHOUT ANY REDACTIONS.  NOW

16   THEY'VE GOT THEM IN THEIR OPENING, THE STUFF THAT HE SENT OVER

17   FOR US TO LOOK AT FOR REDACTIONS.  SO THERE'S TWO FIRMS, AND

18   I'LL TELL YOU WHAT, IT IS DISRUPTIVE.  IT'S TAKEN UP A LOT OF

19   TIME.  IT'S TAKEN UP TWO OF MY PEOPLE, SUPPORT PEOPLE WHO HELP

20   ME, AND IT'S NOT OKAY.

21        **THE COURT:**  DO YOU HAVE THE PHYSICAL DOCUMENTS WITH

22   YOU?

23        **MR. KIERNAN:**  YES, YOUR HONOR.

24        **THE COURT:**  ALL RIGHT.  HAND THEM TO THE DEPUTY.

25        DO YOU HAVE A LIST -- DO YOU HAVE TWO COPIES?

```
 1              MR. KIERNAN:  YES, I DO.  YES I DO, YOUR HONOR.

 2              THE COURT:  I WANT THE BOX.

 3          ALL RIGHT.  NEXT ISSUE?  I'LL GET BACK TO THIS.

 4                      (PAUSE IN THE PROCEEDINGS.)

 5              THE COURT:  OKAY.

 6              MS. SWEENEY:  I THINK --

 7              THE COURT:  MS. SWEENEY, YOU WANTED TO TALK ABOUT

 8      JURY INSTRUCTIONS, YOU SAID.

 9              MR. COUGHLIN:  YES, YOUR HONOR.  THANK YOU.

10          THE PREINSTRUCTIONS THAT YOUR HONOR ISSUED LAST WEEK, THE

11      ONE THAT'S TITLED "LAW OF THE CASE," PLAINTIFFS HAVE A CONCERN

12      AND REQUEST A VERY MINOR MODIFICATION.  AND THE CONCERN IS

13      THAT IN THE -- THE REFERENCES TO ITUNES 7.0 AND 7.4 UPDATES --

14              THE COURT:  HOLD ON.

15          WHAT PAGE ARE YOU ON?  SO WE'RE ON PAGE --

16              MS. SWEENEY:  PAGE 11.

17              THE COURT:  OKAY.  GO AHEAD.

18              MS. SWEENEY:  OKAY.  SO THERE ARE REFERENCES TO 7.0

19      AND 7.4 AND THE DETERMINATION BY THE JURY WHETHER THOSE

20      UPDATES WERE GENUINE PRODUCT IMPROVEMENTS.  OUR CONCERN IS

21      THAT THERE'S NO LINK TO THE KVC DVC CHANGES, AND I UNDERSTAND

22      YOUR HONOR'S CONCERN THAT BECAUSE THIS IS AT THE BEGINNING OF

23      THE CASE, THE JURY WON'T HAVE HEARD ABOUT KVC AND DVC.

24          BUT WE GOT APPLE'S PROPOSED SLIDES FOR THE OPENING

25      STATEMENTS FOR TOMORROW, YOUR HONOR, AND THEY RELY VERY
```

```
1    HEAVILY ON THE LANGUAGE IN THIS INSTRUCTION WITH RESPECT TO

2    GENUINE PRODUCT IMPROVEMENT.  AND THEN THEY HAVE A NUMBER OF

3    OTHER SLIDES THAT TALK ABOUT COVER FLOW, THAT TALK ABOUT THE

4    ABILITY TO WATCH FULL-LENGTH DISNEY MOVIES, ET CETERA,

5    ET CETERA.

6        AND SO OUR CONCERN IS, YOUR HONOR, THAT THEY'RE TRYING TO

7    CONFUSE THE JURY INTO THINKING THAT THE WHOLE QUESTION OF

8    GENUINE PRODUCT IMPROVEMENT GOES TO ALL OF THOSE CHANGES IN

9    7.0 AND 7.4.

10       NOW, IT'S TRUE THAT DR. NOLL HAS TO BE ABLE TO ISOLATE THE

11   EFFECTS OF KVC DVC FROM THOSE OTHER CHANGES IN 7.0, 7.4.  SO

12   WE UNDERSTAND THAT THAT EVIDENCE IS GOING TO COME IN --

13       THE COURT:  BUT, MS. SWEENEY, THAT IS YOUR THEORY.

14   I'M NOT HERE TO -- TO SANCTION YOUR THEORY.  I'M HERE TO MAKE

15   SURE THAT THERE'S AN EVEN PLAYING FIELD.  AND SO --

16       MS. SWEENEY:  MAY I --

17       THE COURT:  YOU SHOULD ADDRESS THAT BECAUSE WHAT

18   YOU'RE SUGGESTING -- LOOK, THE VERDICT FORM IS NOT GOING TO

19   SAY KVC OR DVC.  WHAT WAS -- WHAT WAS GIVEN TO THE CONSUMER

20   WAS 7.0 AND 7.4.  YOU'RE GOING TO ARGUE ABOUT WHAT THAT MEANS,

21   AND THEY'RE GOING TO HAVE THEIR ARGUMENTS ABOUT WHAT THAT

22   MEANS.

23       MS. SWEENEY:  YOUR HONOR, THERE HAS NEVER BEEN AN

24   ALLEGATION IN THIS CASE BY DEFENDANT THAT THE WHOLE PACKAGE

25   OF -- OF PRODUCT CHANGES IN 7.0 AND 7.4 WERE AT ISSUE.  AND,
```

1    FOR EXAMPLE, IN THEIR STATEMENTS AND THEIR PROPOSED JURY

2    INSTRUCTIONS, AND I'M REFERRING TO DOCUMENT 847, PAGE 80 OF

3    THAT DOCUMENT, APPLE TALKS ABOUT THE LEGITIMATE BUSINESS

4    REASONS FOR THE CHALLENGED ITUNES UPDATES, AND THEY REFER ONLY

5    TO THE -- WHAT THEY DESCRIBE AS ENHANCING THE SECURITY OF THE

6    DRM PROTECTION.

7        SO -- SO BOTH PARTIES, YOUR HONOR, HAVE ALWAYS FOCUSED ON

8    THESE SECURITY CHANGES THAT WERE IN 7.0 AND 7.4.  AND FOR

9    APPLE NOW ON THE VERY BEGINNING OF TRIAL TO TRY TO MUDDY THE

10   ISSUES IN THE WAY THAT IT HAS IS -- IS JUST SIMPLY NOT FAIR.

11       AND LIKE I SAID, OF COURSE PLAINTIFFS' EXPERT, DR. NOLL,

12   HAS TO ISOLATE THE EFFECTS OF THOSE SECURITY CHANGES TO THE

13   SOFTWARE, BUT THAT DOESN'T MEAN THAT THE JURY SHOULD BE ASKED

14   TO DECIDE WHETHER A COVER FLOW WAS A PRODUCT IMPROVEMENT, AND

15   THAT'S PLAINTIFFS' CONCERN, THAT THESE ISSUES ARE GOING TO BE

16   MUDDIED IN SUCH A WAY THAT THE JURY MIGHT MAKE THAT MISTAKE.

17       **THE COURT:**  WELL, THE JURY IS JUST BEING GIVEN A -- A

18   PREVIEW.  WE AREN'T AT THE FINAL INSTRUCTIONS.

19       MR. ISAACSON?

20       **MR. ISAACSON:**  WE THINK THE INSTRUCTION IS CORRECT,

21   PARTICULARLY AS YOUR HONOR SAYS FOR A PRELIMINARY INSTRUCTION

22   TO THE JURY.  IF THEY HAVE A CASE TO BE MADE ABOUT SOMETHING

23   MORE SPECIFIC, YOUR HONOR CAN DECIDE THAT WHEN THE EVIDENCE IS

24   IN.

25       BUT AT THIS JUNCTURE, THIS ISSUE IS ABOUT 7.0 AND 7.4.

```
 1   AND YOUR HONOR -- AND YOU'RE NOT SUPPOSED TO BALANCE THE PROS

 2   AND CONS OF THESE THINGS.  BUT WE WILL BE TALKING BOTH ABOUT

 3   THE MERITS OF 7.0 AND 7.4 AS A WHOLE, AS WELL AS ALL OF THE

 4   SECURITY FEATURES OF 7.0 AND 7.4, AND THAT'S PARTICULARLY

 5   IMPORTANT WHERE DR. NOLL CANNOT BE SAID TO HAVE ISOLATED THE

 6   KVC OR THE DVC.  HE ISOLATED SEPTEMBER 2006.  THAT'S WHAT HE

 7   ISOLATED.

 8       SO WE THINK THE INSTRUCTION IS CORRECT THE WAY IT IS

 9   PHRASED.

10          THE COURT:  I THINK THE OTHER THING, MS. SWEENEY,

11   AND -- WELL, SO WHAT ARE YOU SUGGESTING?

12          MS. SWEENEY:  WE ARE PROPOSING, YOUR HONOR, ADDING

13   SOME OF THE LANGUAGE THAT IS SIMILAR TO THE -- THE LANGUAGE IN

14   THE PREVIOUS INSTRUCTION WHICH IS THE PARTIES -- WHICH IS THE

15   STATEMENT OF THE CASE WHICH WAS PUT TOGETHER BY THE PARTIES.

16       SO, FOR EXAMPLE, IN THE FIRST PARAGRAPH OF THE "LAW OF THE

17   CASE" INSTRUCTION AT PAGE 11, AFTER IT SAYS "THE ITUNES 7.0

18   AND 7.4 UPDATES," IF YOUR HONOR WERE TO JUST TAKE THE LANGUAGE

19   FROM THE PREVIOUS INSTRUCTION AND ADD IN THE PHRASE "THAT

20   TERMINATED THE IPOD'S ABILITY TO PLAY DIRECTLY AUDIO FILES

21   PURCHASED FROM NON-APPLE ONLINE" -- OR EXCUSE ME, THAT'S --

22   THAT'S A LITTLE DIFFERENT.  OR I THINK WHAT WE SAID -- WHAT

23   YOU SAID IN THE PREVIOUS ONE WAS "THAT TERMINATED THE IPOD'S

24   ABILITY TO PLAY AUDIO FILES LEGALLY OBTAINED FROM SOURCES

25   OTHER THAN APPLE."
```

```
 1          NOW, THIS IS ON -- THIS LANGUAGE IS DRAWN FROM PAGE 10 OF

 2    THE PREINSTRUCTIONS.

 3          MR. ISAACSON:  ALL RIGHT.  THAT'S -- THE

 4    PREINSTRUCTIONS AS TO THE PLAINTIFFS' CONTENTIONS.

 5          THE COURT:  RIGHT.  AND THAT -- I'M LOOKING AT THAT

 6    FROM DOCKET -- OR DOCKET NO. 839 OF THE PARTIES' AGREED JOINT

 7    STATEMENT OF THE CASE THAT WAS FILED WITH THE COURT.

 8          MR. ISAACSON:  RIGHT.  AND IT GOES ON TO SAY THAT "WE

 9    MAINTAIN THAT ITUNES 7.0 AND 7.4 AND RELATED TECHNOLOGIES WERE

10    PRODUCT AND SECURITY IMPROVEMENTS AND THAT APPLE HAD

11    LEGITIMATE BUSINESS REASONS."  SO I DON'T THINK IT'S RIGHT TO

12    INJECT INTO THE INSTRUCTION THEIR SIDE OF THE CASE AS OPPOSED

13    TO OUR SIDE OF THE CASE.

14          THE COURT:  WELL, IS THERE A WAY TO INJECT BOTH,

15    MR. ISAACSON, WOULD BE MY NEXT QUESTION?

16          MR. ISAACSON:  I THINK THE STATEMENT OF THE CASE ON

17    PAGE 10 DOES THAT.  THAT'S THE WHOLE POINT OF TELLING THE JURY

18    THE TWO SIDES, THE PARTIES' RESPECTIVE POSITIONS, AS OPPOSED

19    TO THE LAW OF THE CASE.

20          MS. SWEENEY:  WELL, I APPRECIATE, YOUR HONOR, THAT

21    THE -- THE STATEMENT OF THE CASE WAS PUT TOGETHER BY THE

22    PARTIES AND THERE'S DIFFERENT VIEWS THERE, BUT I'M -- WHEN --

23    WHEN THE COURT ISSUES THIS INSTRUCTION ON LAW OF THE CASE, THE

24    PARTIES HAVE NEVER EVER ARGUED WHETHER COVER FLOW WAS A

25    GENUINE PRODUCT IMPROVEMENT.
```

```
 1              THE COURT:  WELL, I DON'T TALK ABOUT COVER FLOW IN
 2       HERE.
 3              MS. SWEENEY:  NO, I UNDERSTAND, YOUR HONOR.  BUT MY
 4       CONCERN IS AFTER SEEING THE SLIDES THAT MR. ISAACSON SENT OVER
 5       YESTERDAY, THAT THAT IS HOW APPLE IS GOING TO TALK ABOUT
 6       PRODUCT IMPROVEMENTS AND THEY'RE GOING TO MUSH IT ALL TOGETHER
 7       FOR THE JURY.
 8              MR. ISAACSON:  WE HAVE TO -- DR. NOLL MUSHES IT ALL
 9       TOGETHER.  WE HAVE TO TALK ABOUT IT ALL TOGETHER.  I MEAN,
10       THAT'S WHAT DR. NOLL DOES.
11              THE COURT:  THAT IS -- WELL, I'M -- IT WILL BE
12       INTERESTING TO HEAR HOW PROFESSOR NOLL SEGREGATES.
13                      (PAUSE IN THE PROCEEDINGS.)
14              MR. ISAACSON:  AND, YOU KNOW, IT'S PROBABLY WORTH
15       NOTING THIS IS GOING BACK TO JUDGE WARE'S DECISION ON SUMMARY
16       JUDGMENT, WHICH I THINK THE COURT WAS TRYING TO FOLLOW IN THIS
17       INSTRUCTION, REFERS TO -- THE GENUINE PRODUCT IMPROVEMENT
18       ISSUE IS RELATING TO ITUNES 7.0.
19              MS. SWEENEY:  THAT'S TRUE, YOUR HONOR, BUT JUDGE WARE
20       ALSO QUOTED DIRECTLY FROM PLAINTIFFS' EXPERT WHERE PLAINTIFFS'
21       EXPERT WAS TALKING ABOUT THE SECURITY CHANGES IN THAT CODE,
22       THE KVC AND DVC.
23                      (PAUSE IN THE PROCEEDINGS.)
24              THE COURT:  WELL, THINKING OUT LOUD, BECAUSE WE DON'T
25       HAVE ANY LONGER A STATEMENT OF THE CASE, I COULD SAY, NOW
```

```
1    LOOKING AT -- DO YOU ALL HAVE 839 IN FRONT OF YOU?
2            MR. ISAACSON:  839.
3            THE COURT:  THAT WAS YOUR STATEMENT OF THE CASE,
4    MR. ISAACSON, THE JOINT AGREED-UPON.
5            MR. ISAACSON:  RIGHT, RIGHT.  I'M LOOKING AT PAGE 10
6    OF YOUR INSTRUCTIONS WHICH IS THE STATEMENT OF THE CASE.
7            THE COURT:  MY STATEMENT IS THE LAW OF THE CASE.
8            MR. ISAACSON:  NO, THE PAGE BEFORE THAT IS THE
9    STATEMENT OF THE CASE.
10           THE COURT:  OKAY.
11           MS. SWEENEY:  AND I WOULD JUST POINT OUT, YOUR HONOR,
12   THAT EVEN IN APPLE'S STATEMENT OF THE CASE, STATEMENT OF THE
13   CLAIMS, IT ONLY TALKS ABOUT THE -- THE -- THE ISSUES THAT ARE
14   KVC AND DVC.  IT SAYS IT WOULD HURT COMPETITION AND INNOVATION
15   TO REQUIRE COMPATIBILITY WITH UNAUTHORIZED AND UNSUPPORTED
16   THIRD-PARTY SYSTEMS OR SOFTWARE.  THAT'S KVC AND DVC.
17           THE COURT:  MS. SWEENEY, AN OPENING STATEMENT -- THE
18   PURPOSE OF AN OPENING STATEMENT IS TO GIVE THE JURY AN OUTLINE
19   OF WHAT THE PARTIES EXPECT THE EVIDENCE IS GOING TO SHOW.  YOU
20   NOW KNOW WHAT APPLE INTENDS TO PRESENT BECAUSE THEY'VE JUST
21   GIVEN YOU A ROADMAP IN TERMS OF WHAT THEY EXPECT THE EVIDENCE
22   IS GOING TO SHOW.
23       THE REASON THAT I SAY THAT IS BECAUSE IT SOUNDS LIKE
24   YOU'RE OBJECTING TO THEIR THEORY OF DEFENSE.  AND CERTAINLY AT
25   THIS JUNCTURE, I'M NOT GOING TO, NOR AM I IN A POSITION -- I
```

1    HAVEN'T EVEN SEEN THE SLIDES THAT YOU'RE TALKING ABOUT -- TO

2    VITIATE THEIR THEORY OF THE CASE AS YOU'RE SUGGESTING THEY'RE

3    ABOUT TO PRESENT.  WHAT DO YOU WANT ME TO DO WITH THEIR THEORY

4    OF THE CASE?

5            MS. SWEENEY:  WELL, YOUR HONOR, THEIR THEORY OF THE

6    CASE IS, AS MR. ISAACSON DESCRIBED EARLIER IN DISCUSSION OF

7    THE MOTIONS IN LIMINE, WHICH IS THAT DR. NOLL DIDN'T --

8            THE COURT:  RIGHT.

9            MS. SWEENEY:  -- ISOLATE THESE CHARACTERISTICS.  BUT

10   THAT IS NOT -- IT -- BUT THAT PERTAINS TO KVC, DVC, AND THE

11   REGRESSION ANALYSIS AND THE ISOLATION OF THOSE EFFECTS.

12       NOW, THAT'S DIFFERENT FROM LOOKING AT WHETHER THERE WAS A

13   GENUINE PRODUCT IMPROVEMENT, AND THAT'S THE BASIS FOR OUR

14   CONCERN.  IT'S -- WE'RE --

15           THE COURT:  WELL, THAT'S YOUR ARGUMENT.  THEIR

16   ARGUMENT IS DIFFERENT.  I HAVE HEARD NO EVIDENCE.  AND UNTIL I

17   HEAR EVIDENCE, I AM NOT GOING TO FINALIZE WHAT THE

18   INSTRUCTIONS ARE, WHICH IS WHAT YOU'RE ASKING ME TO DO, AND

19   I'M NOT GOING TO DO IT.

20       THE QUESTION THAT WILL BE TRIED IS WHETHER OR NOT THOSE

21   UPDATES WERE GENUINE PRODUCT IMPROVEMENTS.  WHAT IS THAT AT

22   THIS POINT?  I CAN'T TELL YOU BECAUSE I'VE HEARD NO EVIDENCE.

23   YOU WANT ME TO LIMIT THAT IN SCOPE IS WHAT I'M HEARING YOU

24   SAY.  WHAT I'M HEARING THE DEFENSE SAY IS THAT THEY THINK IT'S

25   BROADER THAN YOU THINK.  WE'LL FIGURE IT OUT AT THE END OF THE

```
1    CASE.  I'M NOT GOING TO CHANGE IT.

2        ANY OTHER ISSUES ON THESE?

3            MR. ISAACSON:  ON THE PRELIMINARY INSTRUCTIONS, YOUR

4    HONOR, NO.  I MEAN, WE'VE MADE OUR PREVIOUS OBJECTION TO --

5            THE COURT:  RIGHT.  AND YOUR PREVIOUS OBJECTIONS

6    STAND FOR PURPOSES OF APPELLATE PURPOSES.

7            MR. ISAACSON:  YEAH.

8            THE COURT:  I'M NOT -- I'VE HEARD THEM, I'VE

9    CONSIDERED THEM, AND THIS IS WHAT I'VE COME UP WITH.

10           MR. ISAACSON:  THANK YOU, YOUR HONOR.

11           THE COURT:  ANY OTHER OBJECTIONS WITH RESPECT TO THE

12   JURY INSTRUCTIONS?  AND -- AND, MS. SWEENEY, YOUR OBJECTION

13   WITH RESPECT TO MY "LAW OF THE CASE" INSTRUCTION IS ALSO

14   NOTED.

15           MS. SWEENEY:  THANK YOU, YOUR HONOR.

16           THE COURT:  ANY OTHER OBJECTIONS?

17           MS. SWEENEY:  NO, YOUR HONOR, NOT THAT WE HAVEN'T

18   ALREADY SUBMITTED.

19           THE COURT:  OKAY.  EXHIBITS WAS THE NEXT LIST -- WAS

20   THE NEXT ISSUE.

21       DEFENSE WANTED TO RAISE SOME.

22           MR. ISAACSON:  OH, NO.  I'M -- THESE ARE REALLY

23   HOUSEKEEPING AT THIS POINT.

24           THE COURT:  THAT'S FINE.

25           MR. ISAACSON:  SO WE ARE GOING TO TRY AND OPERATE AS
```

1   MUCH AS POSSIBLE ELECTRONICALLY WITH SHOWING WITNESSES

2   EXHIBITS.  WE'VE TALKED ABOUT BEFORE A WITNESS MAY WANT A HARD

3   COPY OF EXHIBITS.  SO AT LEAST WITH SOME OF THE WITNESSES, WE

4   WOULD PLAN -- BOTH SIDES WOULD PLAN TO HAND THEM A BINDER OF

5   EXHIBITS THAT THEY CAN ACCESS IF THEY WANT TO.  HOWEVER, IN

6   ORDER TO SAVE SOME TREES, WE'RE JUST GOING -- WE'RE ONLY GOING

7   TO CREATE ONE COPY AND GIVE IT TO A WITNESS.

8           THE COURT:  THAT'S FINE.  FRANKLY, YOU CAN USE MINE.

9   AS LONG AS I HAVE -- AND I THOUGHT WE HAD TALKED ABOUT THIS A

10  FEW MONTH AGO.

11          MR. ISAACSON:  WE DID.  I JUST WANTED TO MAKE SURE.

12          THE COURT:  AND AS LONG AS I HAVE THE ELECTRONIC

13  VERSION, THEN I DON'T NEED -- I RARELY, IF EVER, NEED THE

14  PAPER COPY.  SO DON'T GO AND MAKE ANOTHER COPY SET.  THOSE ARE

15  THERE.  BOTH SIDES CAN USE THEM.

16          MR. COUGHLIN:  I THINK WHAT HE'S TALKING ABOUT, YOUR

17  HONOR, IS THAT THOSE ARE IN ORDER OF THE EXHIBIT NUMBERS.  AND

18  WHAT WE INTEND TO DO IS GIVE A WITNESS A BINDER OF THE 15,

19  20 EXHIBITS THAT WE MIGHT GO THROUGH WITH HE OR SHE JUST SO

20  THAT THEY HAVE THEM UP THERE BUT NOT DISTRIBUTE THEM

21  THROUGHOUT THE COURTROOM.

22          MR. ISAACSON:  AND WE'LL OPERATE OUT OF OUR EXHIBIT

23  BINDERS.

24          MR. COUGHLIN:  WE COULD GIVE YOU A BINDER JUST LIKE

25  THAT JUST SO YOU HAVE A READY REFERENCE RIGHT THERE IF YOU

1   WANT TO LOOK AT IT, BUT YOU CAN PULL IT UP ON YOUR SCREEN,

2   TOO, THIS WHOLE THING.

3          **THE COURT:**  OKAY.  WELL, GIVING THEM A BINDER, I

4   THINK, TENDS TO WORK PRETTY WELL.  YOU ARE WELCOME TO RECYCLE

5   MY -- THAT COPY SET OVER THERE, SERIOUSLY, SO THAT WE'RE NOT

6   KILLING TREES.  BUT I WAS A LITTLE SURPRISED THAT I GOT A COPY

7   SET BECAUSE I THOUGHT I TOLD YOU ALL THAT AS LONG AS I HAD AN

8   ELECTRONIC SET, I DIDN'T NEED A FULL SET.  IT'S IN MY STANDING

9   ORDER BECAUSE I DON'T USUALLY HAVE -- OR I FREQUENTLY -- YOU

10  KNOW, WE TRY SMALLER CASES SOMETIMES, AND IT'S NOT AS

11  HIGH-TECH AS THIS ONE.

12         **MR. ISAACSON:**  WELL, I THINK WE'LL WAIT TILL THE END

13  TO RECYCLE THEM, BUT IF YOU WANT THEM OUT OF YOUR WAY, WE'LL

14  GET THEM OUT OF YOUR WAY.

15         **THE COURT:**  NO, THEY'RE FINE THERE.  SO, YEAH, THAT'S

16  FINE.

17     REMINDER THAT IF YOU'RE PLANNING ON USING DEPOSITION

18  TRANSCRIPTS, THOSE NEED TO BE IDENTIFIED SO THAT THE COURTROOM

19  DEPUTY CAN HAVE THOSE UP HERE AND READY FOR ME AND WE'RE NOT

20  SCRAMBLING LOOKING FOR THEM.  YOU'LL WASTE TIME THAT WAY.  SO

21  YOU NEED TO MAKE SURE THAT SHE KNOWS THE DAY BEFORE OR FIRST

22  THING IN THE MORNING SO SHE CAN PULL THEM.

23         **MS. SWEENEY:**  CAN I JUST ASK A CLARIFYING QUESTION?

24         **THE COURT:**  SURE.

25         **MS. SWEENEY:**  YOU MEAN ALL DEPOSITION EXHIBITS, EVEN

```
1    IF THEY WERE DEPOSITIONS THAT WEREN'T TAKEN IN THIS CASE?

2            THE COURT:  I'M TALKING ABOUT TRANSCRIPTS.  SO IF YOU

3    HAVE A WITNESS UP THERE, YOU THINK YOU MAY IMPEACH THEM, WE

4    DON'T WANT TO WASTE TIME HAVING MY COURTROOM DEPUTY LOOK FOR

5    THE TRANSCRIPT THAT I AM GOING TO NEED TO SEE IN ORDER FOR

6    YOUR IMPEACHMENT TO HAPPEN.

7            MS. SWEENEY:  UNDERSTOOD, YOUR HONOR.  THANK YOU.

8            THE COURT:  OTHER HOUSEKEEPING?

9            MR. ISAACSON:  WITH RESPECT TO DEMONSTRATIVES, WE

10   HAVE A PROCESS FOR EXCHANGING THOSE.  IF THEY'RE NOT OBJECTED

11   TO, OUR ASSUMPTION IS THAT IF WE USE THEM WITH A WITNESS, WE

12   CAN PUT THEM ON THE SCREEN IMMEDIATELY, BUT IF IT'S -- I JUST

13   WANTED TO CLARIFY THAT WITH YOUR HONOR.

14           MR. COUGHLIN:  SAY THAT AGAIN, BILL.  I'M SORRY.

15           MR. ISAACSON:  IF THERE'S AN UNOBJECTED-TO

16   DEMONSTRATIVE --

17           MR. COUGHLIN:  YES.

18           MR. ISAACSON:  -- THEN IT CAN GO RIGHT UP ON THE

19   SCREEN.

20           MR. COUGHLIN:  THAT'S OUR UNDERSTANDING, IS THAT

21   YOUR --

22           THE COURT:  AND REMIND ME -- THAT'S FINE WITH ME.

23   REMIND ME HOW FAR IN ADVANCE DO YOU HAVE TO EXCHANGE THEM?

24   DID YOU DECIDE 48 HOURS?

25           MR. COUGHLIN:  I THINK WE DO HAVE 48 HOURS.
```

```
 1            THE COURT:  THAT WAS MY MEMORY.  IF THERE'S AN ISSUE,
 2    WE SHOULD PROBABLY TALK ABOUT IT THE DAY BEFORE THE TESTIMONY,
 3    GIVEN THAT YOU'VE GOT 48 HOURS.  SO JUST A REMINDER, TRIAL DAY
 4    GOES UNTIL 1:30.  TWO 15-MINUTE BREAKS.  THERE IS NO FOOD IN
 5    THE COURTROOM.  YOU'RE GOING TO HAVE TO EAT YOUR SNACKS
 6    OUTSIDE.
 7         THEN I HAVE MY 2:00 O'CLOCK CALENDARS ON MONDAY, TUESDAY,
 8    THURSDAY.  SO IF WE NEED TO MEET ON THOSE DAYS, WE MEET AFTER
 9    MY CALENDAR UNTIL WE ARE DONE.
10            MR. COUGHLIN:  UNDERSTOOD, YOUR HONOR.
11            THE COURT:  OKAY.
12            MR. COUGHLIN:  YOUR HONOR, JUST A CLARIFICATION
13    QUESTION.  WE STIPULATED TO 95 PERCENT OF THE DOCUMENTS THAT
14    THEY CAN BE ADMITTED.  OF COURSE WE HAVE TO HAVE A WITNESS
15    BEFORE THEY'RE ACTUALLY ADMITTED.
16            THE COURT:  RIGHT.
17            MR. COUGHLIN:  BUT WE INTEND TO -- I THINK WE BOTH
18    INTEND TO FLASH UP ON THE SCREEN, WITH THOSE STIPULATIONS --
19            THE COURT:  RIGHT.
20            MR. COUGHLIN:  -- THE DOCUMENT AND DIRECT THE
21    WITNESS'S ATTENTION TO A PAGE OR SOMETHING AND ASK THAT
22    WITNESS ABOUT THAT.
23         WE BOTH INTEND, I THINK, TO HAVE, IF THE WITNESS NEEDS IT,
24    A HARD COPY OF SOME OF THE BIGGER DOCUMENTS IF THE WITNESS
25    SAYS, "I NEED TO PUT IT IN CONTEXT."  BUT WE DON'T INTEND TO
```

```
1    HAVE THE WITNESS FLIPPING THROUGH THE PAGES FIRST.  WE COULD

2    SAY IF THE WITNESS WANTS TO GO TO PAGE -- YOU KNOW,

3    DOCUMENT 3, WE COULD SAY, "HEY, IF YOU LOOK AT TAB 3, YOU

4    KNOW, THAT DOCUMENT IS THERE AND YOU CAN LOOK AT THE PAGE

5    BEFORE AND AFTER," THAT'S HOW WE INTEND TO DO IT.  BUT WE

6    INTEND TO FLASH THESE DOCUMENTS UP ON THE SCREEN AND TALK TO

7    THEM, BECAUSE OF THE TIME CONSTRAINTS, AND I THINK THAT'S WHY

8    WE WORKED -- LITERALLY HAD DOZENS AND DOZENS OF MEETINGS OVER

9    THESE DOCUMENTS FOR THEIR ADMISSIBILITY.

10        SO THAT'S HOW WE INTEND TO DO IT IF THAT'S ALL RIGHT WITH

11   THE COURT.

12            THE COURT:  NO, THAT'S FINE.  I MEAN, THAT TENDS TO

13   WORK PRETTY WELL.  YOU CAN -- YOUR CHOICE ABOUT WHETHER YOU

14   WANT TO OFFER THEM FOR ADMISSION AT THE TIME.  IF YOU THINK

15   YOU'RE GOING TO HAVE AN ISSUE WITH FOUNDATION PROBLEMS, I

16   WOULD SUGGEST THAT YOU OFFER THEM AT THE TIME I HAVE THE

17   WITNESS ON THE STAND SO THAT I CAN HEAR ANY FOUNDATION

18   ARGUMENTS AT THE TIME.

19            MR. COUGHLIN:  AND, YOUR HONOR, I THINK THAT BOTH

20   SIDES AGREE TO THIS.  MY OWN UNDERSTANDING OF WHAT WE WERE

21   GOING TO DO IS LET'S SAY A WITNESS IS ON THE STAND AND -- WITH

22   HOW MUCH TIME AND EVERYTHING, LET'S SAY THERE ARE 10 OR 15

23   DOCUMENTS THAT WITNESS TAKES A LOOK AT, COMMENTS WHETHER HE

24   KNEW ABOUT IT OR NOT, AND THEN AT THE END OF THAT, THERE'LL BE

25   THREE OR FOUR THAT THE WITNESS SAYS, NO, I DIDN'T KNOW THAT,
```

1    OR I WASN'T COPIED THERE, NOBODY TOLD ME THAT.

2        WELL, OBVIOUSLY THE OTHER 12, MAYBE BEFORE THAT WITNESS

3    LEAVES THE STAND, WE MOVE FOR THE ADMISSION.  THE THREE WE

4    WOULD NOT AND WE'D WAIT FOR THE NEXT WITNESS THAT MIGHT HAVE

5    HAD MORE KNOWLEDGE.  THAT'S -- THAT'S WHAT WE INTEND TO DO, I

6    THINK.

7            MR. ISAACSON:  SOUNDS CORRECT, YES.

8            THE COURT:  SO YOU CAN -- IF YOU WANT TO DO THEM IN A

9    GROUP AT THE END OF THE WITNESS, IF YOU WANT TO DO THEM AT THE

10   END OF THE DAY, YOU CAN DO THEM AT THE END OF DAY.

11           MR. COUGHLIN:  RIGHT.

12           THE COURT:  BECAUSE IF IT'S NOT -- IF THE JURY IS NOT

13   SITTING THERE, IT DOESN'T COUNT AGAINST YOUR TIME.  BUT IF YOU

14   THINK YOU HAVE A FOUNDATION PROBLEM, THEN YOU MAY WANT TO

15   OFFER BECAUSE, IF THE OBJECTION IS SUSTAINED, YOU NO LONGER

16   HAVE A WITNESS ON THE STAND.

17           MR. COUGHLIN:  I UNDERSTAND.

18           MR. ISAACSON:  RIGHT.  THE --

19           THE COURT:  OKAY.

20           MR. ISAACSON:  JUST TO BE CLEAR, THE DOCUMENTS -- WE

21   HAVE THE ONES THAT WE'VE STIPULATED TO ADMIT.  THE ONES THAT

22   HAVE NOT BEEN STIPULATED TO ADMIT UNTIL A FOUNDATION HAS BEEN

23   LAID WOULD NOT GO ON.

24           THE COURT:  OKAY.

25           MR. COUGHLIN:  THAT'S CORRECT.  THEY CAN'T GO UP

```
 1    UNTIL THE FOUNDATION HAS BEEN LAID OR NOT.  YOU KNOW, AND

 2    THAT, WE'D HAVE TO, OF COURSE, WALK UP AND HAND A PHYSICAL

 3    EXHIBIT TO THAT WITNESS, TRY TO LAY THE FOUNDATION, FIND OUT

 4    IF THERE WAS AN OBJECTION OR NOT BEFORE WE FLASH IT UP.

 5         THE COURT:  OKAY.  DO WE HAVE ONE OR TWO PEOPLE

 6    RUNNING THE SCREENS BACK THERE?

 7         MR. ISAACSON:  WE WILL HAVE --

 8         UNIDENTIFIED SPEAKER:  ONE FOR EACH SIDE.

 9         MR. ISAACSON:  -- ONE FOR EACH SIDE.

10         THE COURT:  AND THEY UNDERSTAND HOW THIS WORKS IN

11    TERMS OF THE RULES?

12         MR. ISAACSON:  THEY --

13         THE COURT:  SO THERE WILL BE -- NOW, LET'S SAY YOU

14    HAVE SOMEBODY LIKE THAT UP THERE, THERE'S NO STIPULATION TO

15    ADMIT.  AM I GOING TO SEE IT ON -- I SHOULD BE ABLE TO SEE IT

16    ON MY SCREEN?  SO, CORRECT, YOU DO HAVE THIS OPERATIONAL SO

17    THAT THE COURT AND THE PARTIES CAN SEE IT, BUT THE JURY

18    CANNOT; IS THAT RIGHT?

19         MR. COUGHLIN:  I THINK WE CAN DO THAT.  WITH A LITTLE

20    BIT OF REJIGGERING, IF I GOT THAT WORD RIGHT, WE CAN DO THAT.

21    WE CAN DO THAT.

22         THE COURT:  I THINK THAT'S PROBABLY THE MOST

23    EFFICIENT WAY AND HOW I'VE DONE IT BEFORE.

24      OKAY.  DO I HAVE ALL OF THE EXHIBITS NOW ELECTRONICALLY?

25         MR. COUGHLIN:  YOU SHOULD HAVE ALL THE EXHIBITS, YOUR
```

```
 1    HONOR.  AND THE PARTIES AREN'T SURE EXACTLY WHAT'S GOING TO
 2    COME UP SO WE HAVE GIVEN OURSELVES A LITTLE LEEWAY, IF A NEW
 3    EXHIBIT COMES UP, WE'LL GET IT TO YOUR HONOR AHEAD OF TIME.
 4    WE'LL FIND OUT IF THERE'S A STIPULATION OR NOT THAT WE JUST
 5    EXCHANGED SOME EXHIBITS, I GUESS, YESTERDAY AND WE'LL MAKE
 6    SURE YOUR HONOR HAS THOSE BEFORE THE END OF DAY IF THEY'RE NOT
 7    THERE.
 8           MR. ISAACSON:  THAT'S CORRECT.  THAT'S THE ONLY
 9    EXHIBITS YOU DON'T HAVE.
10           THE COURT:  OKAY.  ANY OTHER -- ANY OTHER
11    HOUSEKEEPING ISSUES?
12           MR. ISAACSON:  WE -- THE PARTIES HAVE A JOINT
13    PROPOSED INSTRUCTION ABOUT EVIDENCE FOR A LIMITED PURPOSE.
14    THERE ARE DOCUMENTS IN THE CASE WITH EMBEDDED HEARSAY SUCH AS
15    EMAILS THAT DISCUSS NEWSPAPER ARTICLES, AND AT THAT -- AT THE
16    TIME OF SUCH EVIDENCE, THE PARTIES PUT TOGETHER AN INSTRUCTION
17    THAT COULD BE GIVEN TO THE JURY TO EXPLAIN THAT THE DOCUMENT
18    IS BEING ADMITTED FOR A LIMITED PURPOSE.
19           THE COURT:  OKAY.  DO YOU HAVE THAT?
20           MR. ISAACSON:  YES.
21       THERE'S THREE COPIES.  IF YOU WANT MORE, I'VE GOT MORE.
22           MR. COUGHLIN:  AND, YOUR HONOR, I THINK THAT --
23           THE COURT:  HOLD ON.  LET ME JUST READ IT.
24               (PAUSE IN THE PROCEEDINGS.)
25           THE CLERK:  IT'S THREE COPIES OF THE SAME; CORRECT?
```

1              **MR. ISAACSON:**  YES, THEY'RE ALL THE SAME.

2                   (PAUSE IN THE PROCEEDINGS.)

3              **THE COURT:**  OKAY.  I DON'T HAVE A PROBLEM WITH THIS

4       INSTRUCTION.  DO YOU WANT ME TO DO IT AS PART OF THE

5       PREINSTRUCTIONS OR THE FIRST TIME IT COMES UP?

6              **MR. ISAACSON:**  THE FIRST TIME IT COMES UP, YOUR

7       HONOR.

8              **MR. COUGHLIN:**  AND OF COURSE I WOULD SAY AS PART OF

9       PREINSTRUCTIONS.  BUT I THINK THE FIRST TIME IT COMES UP IS

10      FINE AS LONG AS IT'S JUST NOT REPEATED EVERY DOCUMENT.  THERE

11      ARE LITERALLY DOZENS AND DOZENS OF THOSE DOCUMENTS.

12         AND CERTAINLY THEY COULD BE REMINDED AT THE END THAT IT

13      WAS FOR THEIR -- THERE'S A PART OF THOSE DOCUMENTS THAT START

14      OFF ON THE TOP WITH THE --

15             **THE COURT:**  I'VE SEEN THEM.

16             **MR. COUGHLIN:**  YES.

17             **THE COURT:**  I THINK WITH SOME OF THESE -- SOME OF

18      THESE INSTRUCTIONS, IT IS BETTER THAT -- WHEN I GIVE THEM TOO

19      MUCH INFORMATION AT THE BEGINNING, IT'S VERY OVERWHELMING.

20      AND SO I THINK, YOU KNOW, I'LL GIVE IT THE FIRST TIME THE

21      ISSUE COMES UP, JUST LIKE I'LL DO IT THE FIRST TIME WE HAVE A

22      DEPOSITION, TO EXPLAIN TO THEM HOW THEY'RE SUPPOSED TO USE

23      THOSE.  IF WE HAVE INTERROGATORIES, HOW THOSE GET DEALT WITH.

24      AND IF I NEED TO GIVE IT ONCE OR TWICE, YOU KNOW, UNTIL I'M

25      PRETTY SURE THAT THEY UNDERSTAND WHAT'S GOING ON, IT'S

```
 1    GENERALLY A JUDGMENT CALL ON THAT POINT.

 2            MR. COUGHLIN:  THANK YOU, YOUR HONOR.

 3        ONE FINAL QUESTION.  DO YOU HAVE -- AS WE TRY TO ESTIMATE

 4    TIME AND WE'RE WORKING TOGETHER ON THE WITNESSES AND GETTING

 5    THEM HERE ON TIME, DO YOU HAVE AN IDEA OF HOW LONG IT USUALLY

 6    TAKES YOU TO GET THEM IN, PREINSTRUCT THEM, AND BEFORE WE

 7    START OUR OPENINGS?

 8            THE COURT:  ABOUT NO MORE THAN 30 MINUTES.

 9            MR. COUGHLIN:  THANK YOU.

10            THE COURT:  OKAY.  ALSO, WHO'S YOUR -- WHO'S THE

11    DESIGNATED TIMEKEEPERS ON EACH SIDE?  I'M GOING TO KEEP TIME.

12    I WILL GIVE YOU A SPREADSHEET, BUT SOMETIMES THIS IS WHAT

13    HAPPENS.  YOU'RE ON REDIRECT, RECROSS, YOU GO A MINUTE,

14    MINUTE, MINUTE, MINUTE.  I JUST ESTIMATE AT THAT POINT.

15        SECOND, WHEN WE GET REALLY CRAZY DAYS, IF WE HAVE ANY, I

16    MAY GET THE MATH WRONG.  SO I NEED TO MAKE SURE THAT SOMEONE

17    IS DOUBLE-CHECKING MY MATH BECAUSE MY CLERKS ARE DOING WORK ON

18    OTHER CASES WHEN I'M IN TRIAL.  SO I WANT ONE PERSON FROM EACH

19    SIDE WHO'S GOING TO SAY, "YES, I DOUBLE-CHECKED YOUR MATH."

20            MR. COUGHLIN:  WELL, YOUR HONOR, I MIGHT HAVE

21    SOMEBODY ELSE DO IT, BUT I'LL DOUBLE-CHECK YOUR MATH.

22            THE COURT:  YEAH, YOU SHOULDN'T DO IT, MR. COUGHLIN.

23                  (SIMULTANEOUS COLLOQUY.)

24            THE COURT:  I'M ASKING FOR SOMEONE WHO'S NOT --

25            MR. COUGHLIN:  WE HAVE A PERSON.  LARRY WILL DO IT.
```

```
 1            THE COURT:  ALL RIGHT.  AND SOMEONE ON THAT SIDE?

 2   PERFECT.  THANK YOU.

 3            MR. ISAACSON:  AND WE'LL ALSO ADD A FEATURE WHERE

 4   THEY COULD MEET AND CONFER, WHICH IN PAST CASES WE'VE FOUND

 5   THAT THERE HAVE BEEN NO DISAGREEMENTS.

 6            THE COURT:  THAT'S -- THAT'S TRUE.  MY ANTICIPATION

 7   IS THAT IT'S PROBABLY THE RIGHT TIME TO START LOOKING AT JURY

 8   INSTRUCTIONS NEXT MONDAY SO PLAN ON A LATE DAY.  I EXPECT THAT

 9   I'LL GET -- ONCE THE PLAINTIFF CLOSES, I'LL GET MOTIONS

10   BECAUSE THAT HAPPENS IN EVERY SINGLE CASE.  SO WE'LL -- WHEN

11   WE GET CLOSER, WE'LL SEE WHERE YOU ARE ON THAT FRONT.

12            MR. ISAACSON:  ONE OTHER HOUSEKEEPING QUESTION, YOUR

13   HONOR.  SO THERE'S CERTAIN ISSUES THAT YOU'VE RULED ON AND

14   SPECIFICALLY WITH REGARDS TO MOTIONS IN LIMINE 1 THROUGH 3

15   WHERE YOU HAVEN'T NECESSARILY AGREED WITH EVERYTHING WE'VE

16   SAID.  WHEN THOSE ISSUES COME UP, MY PLAN WOULD BE TO STAND UP

17   AND OBJECT AND REFER TO THE MOTION IN LIMINE IN ORDER TO

18   PRESERVE THAT OBJECTION.  UNLESS SOME SORT OF RECORD COULD BE

19   MADE THAT THAT OBJECTION HAS ALREADY BEEN PRESERVED.

20            MR. COUGHLIN:  I THINK THAT THE OBJECTION HAS ALREADY

21   BEEN PRESERVED, YOUR HONOR.  I DON'T THINK HE NEEDS TO BE

22   POPPING UP.

23            MR. ISAACSON:  IF THAT'S REFLECTED IN THE RECORD,

24   THEN I CAN RELY ON THAT.

25            THE COURT:  ALL RIGHT.  THEN THERE WILL BE A STANDING
```

```
 1    OBJECTION BASED ON THE COURT'S ORDER WITH RESPECT TO MOTIONS
 2    IN LIMINE 1, 2, AND 3, AND THE DEFENDANT'S PERSPECTIVE ON
 3    THOSE ISSUES.  I THINK THAT GIVEN HOW BIG OF AN ISSUE THAT IS,
 4    MR. ISAACSON, YOU WOULD BE STANDING UP EVERY OTHER QUESTION.
 5    AND THAT'S -- THERE'S NO NEED FOR THAT SO --
 6            MR. ISAACSON:  THAT'S WHY I BROUGHT IT UP.
 7            THE COURT:  OKAY.
 8            MR. COUGHLIN:  AND, YOUR HONOR, THAT RAISES A
 9    QUESTION THAT MY EX- -- THAT ONE OF THE EXPERTS RAISED WITH ME
10    YESTERDAY, ACTUALLY.  LOOKING AT THE REDACTIONS THAT THE COURT
11    PUT IN OR -- OR GRANTED AND THE MOTIONS IN LIMINE, YOU KNOW,
12    HE SAID, "WELL, WHAT IF I GET ASKED X?"
13            THE COURT:  BY WHOM?
14            MR. COUGHLIN:  BY MR. ISAACSON, NOT BY ME BECAUSE
15    I'VE TOLD HIM WHAT WE CAN TALK ABOUT OR NOT.
16        AND I SAID, "WELL, JUST MAKE SURE YOU" -- IT'S -- I
17    DON'T -- I TOLD HIM JUST MAKE SURE IT SPECIFICALLY GOES TO AN
18    ISSUE THAT HE IS BRINGING UP AND IN THE DOOR AND DON'T ANSWER
19    IT, YOU KNOW, SIDEWAYS.  IN OTHER WORDS, ANSWER IT DIRECTLY.
20    BUT IF HE OPENS THE DOOR ABOUT ONE OF THESE ISSUES, HE'S GOING
21    TO ANSWER THE QUESTION.
22            THE COURT:  IF THE DOOR GETS OPENED, THE DOOR GETS
23    OPENED.  THE OTHER QUESTION IS HOW WIDE.
24            MR. COUGHLIN:  HOW WIDE IT IS.
25            THE COURT:  HOW WIDE SOMEONE BELIEVES THE DOOR GETS
```

```
1    OPENED.  SO HE SHOULD -- IF HE BELIEVES THAT DOOR IS OPEN, BUT

2    IT'S DEBATABLE, IT IS SAFER FOR HIM, DURING A BREAK, TO TALK

3    TO YOU ABOUT IT AND ASK THAT HE BE ALLOWED TO FULLY EXPLAIN

4    HIS ANSWER SO WE CAN DISCUSS THOSE ISSUES OUTSIDE THE PRESENCE

5    OF THE JURY.

6              MR. COUGHLIN:  UNDERSTOOD.

7              MR. ISAACSON:  UNDERSTOOD, YOUR HONOR.

8              THE COURT:  OKAY.  AND I THINK ALL THESE -- ALL OF

9    THE EXPERTS HAVE TESTIFIED BEFORE?  OR DO I HAVE ANY NEWBIES?

10             MR. COUGHLIN:  NO.  THEY'VE --

11             THE COURT:  ON THE PLAINTIFFS' SIDE, THEY'VE ALL

12   TESTIFIED, YES OR NO?

13             MR. COUGHLIN:  YES.

14             THE COURT:  HOW ABOUT ON THE DEFENSE SIDE?

15             MR. ISAACSON:  I'M SORRY.  MY -- I WAS --

16             THE COURT:  MY QUESTION WAS WHETHER THE DEFENSE

17   EXPERTS HAVE ALL TESTIFIED IN COURT BEFORE?

18             MR. ISAACSON:  YES.

19             THE COURT:  MY LAST TRIAL I HAD A NEWBIE, AND IT WAS

20   NOT A PLEASANT EXPERIENCE.  PRECISELY FOR THAT REASON.

21             MR. COUGHLIN:  RIGHT.

22             THE COURT:  SO --

23             MR. ISAACSON:  AND WE WERE JUST -- TAKING YOUR

24   COMMENT ABOUT THE WITNESS TALKING TO THE LAWYER, WE UNDERSTOOD

25   THE COURT IS TALKING ABOUT THAT VERY SPECIFIC CIRCUMSTANCE
```

 1  WHERE THEY NEED GUIDANCE AS TO ARE THEY ALLOWED TO SAY THIS,

 2  ARE THEY ALLOWED TO SAY THAT, AS OPPOSED TO WITNESSES TALKING

 3  TO LAWYERS ONCE THEY'VE GONE ON THE STAND.  WE WOULD

 4  UNDERSTAND THAT ONCE THE WITNESS GOES ON THE STAND THAT WE'RE

 5  NOT TALKING TO THE WITNESS UNLESS SOMETHING SPECIFIC LIKE THAT

 6  COMES UP.

 7          **MR. COUGHLIN:**  WELL, THAT'S ALWAYS AN INTERESTING

 8  QUESTION.  THE QUESTION IS, LET'S SAY THE WITNESS IS IN THE

 9  MIDDLE OF DIRECT.  I UNDERSTAND IF -- I'VE JUST PUT THE

10  WITNESS ON, I DON'T GET A CHANCE TO TALK TO HIM, BUT IF I'M

11  DONE WITH DIRECT AND HE STARTS IN ON CROSS, THEN I SHOULD BE

12  ABLE, AT A BREAK OR OVERNIGHT, TALK TO THAT WITNESS ABOUT

13  WHAT'S GOING ON IN THEIR PART OF THE QUESTIONING.  THAT'S THE

14  WAY I'VE NORMALLY DON'T IT.

15          **MR. ISAACSON:**  I'VE NOT HAD THAT EXPERIENCE.  ONCE

16  THE WITNESS -- I UNDERSTOOD THE CIRCUMSTANCE THAT YOUR HONOR

17  ADDRESSED WHERE THE WITNESS WANTS TO KNOW HOW TO FOLLOW THE

18  COURT'S INSTRUCTIONS.  THAT'S ONE THING.

19          **THE COURT:**  WELL, THAT'S WHAT WE JUST TALKED ABOUT

20  RIGHT NOW.  I DON'T KNOW THAT WE'VE EVER TALKED ABOUT THE

21  OTHER ISSUE.

22          **MR. ISAACSON:**  ALL RIGHT.

23          **THE COURT:**  AND IT -- I KIND OF AM IN THE BOAT WITH

24  MR. COUGHLIN HERE.  GENERALLY SPEAKING, I HAVEN'T PROHIBITED

25  COUNSEL FROM TALKING TO THEIR WITNESSES ONCE THAT EXAMINATION,

```
 1   INITIAL EXAMINATION, IS OVER.  IN PART BECAUSE IF YOU DON'T
 2   HAVE -- THEY'RE RELYING ON YOUR EXPERTISE.  IF YOU'VE GOT
 3   SOMEONE WHO'S BEING A JERK ON THE STAND, I'M NOT GOING TO STOP
 4   YOU FROM TELLING THEM TO STOP BEING A JERK ON THE STAND, OR
 5   "YOU'RE COMING ACROSS, YOU KNOW, ARROGANT," OR WHATEVER.
 6   THAT'S PART OF YOUR JOB.
 7        THAT SAID, IF I HAVE A SITUATION WHERE WE'RE IN THE MIDST
 8   OF A VERY CRITICAL, TENSE PERIOD, WE'RE NOT TAKING A BREAK,
 9   MR. COUGHLIN, SO THERE'S GOING TO BE NO OPPORTUNITY TO
10   WOODSHED THE WITNESS.
11        MR. COUGHLIN:  I WON'T --
12        THE COURT:  AND IF I THINK THAT THERE IS AN ISSUE
13   WITH RESPECT TO CREDIBILITY OR SOME CONCERN, I WILL INSTRUCT
14   YOU NOT TO TALK TO THEM.  BUT I HAVE NOT STOPPED LAWYERS FROM
15   TALKING TO THEIR WITNESSES ABOUT, GENERALLY SPEAKING, THEIR --
16   THEIR TESTIMONY.
17        MR. ISAACSON:  ALL RIGHT, YOUR HONOR.
18        THE COURT:  OKAY.  OTHER ISSUES?  OTHER -- WE WILL
19   STILL HAVE THE DOCUMENT ISSUE, BUT OTHER -- ANY OTHER
20   HOUSEKEEPING ISSUES?
21        MR. COUGHLIN:  NONE, YOUR HONOR.
22        MR. ISAACSON:  JUST TO REPORT WE EXCHANGED OPENING
23   SLIDES YESTERDAY, AS YOU HEARD, AND THERE'S NO OBJECTIONS THAT
24   YOU NEED TO HEAR ABOUT THOSE.
25        THE COURT:  LET'S GO OFF THE RECORD FOR A FEW
```

```
 1    MINUTES.
 2                         (RECESS.)
 3         THE COURT:  OKAY.  LET'S GO BACK ON THE RECORD.
 4    LET'S DEAL WITH THESE IN CHUNKS.
 5       MR. COUGHLIN.
 6                    (OFF-THE-RECORD DISCUSSION.)
 7         THE COURT:  AS I UNDERSTAND IT, YOU DON'T HAVE A --
 8    AND I'M ASSUME -- ASSUME FOR PURPOSES OF ARGUMENT THAT THE TAB
 9    THAT HE'S GIVEN ME WHICH IDENTIFIES SOURCE CODE, THAT ONLY
10    SOURCE CODE HAS BEEN REDACTED.  IT SOUNDS LIKE YOU DON'T HAVE
11    AN ISSUE WITH SOURCE CODE BEING SEALED.  CORRECT?
12         MR. COUGHLIN:  I HAVE NO ISSUE WITH SOURCE CODE BEING
13    SEALED.
14         THE COURT:  OKAY.
15         MR. COUGHLIN:  EXCEPT -- EXCEPT, YOUR HONOR --
16         THE COURT:  SO I -- I'M ON VOLUME 1, NOT VOLUME 2.
17    SO I KNOW WE HAVE ISSUES WITH THIS FAIRPLAY DOCUMENT.  BUT
18    VOLUME 2 HAS A WHOLE LIST OF OTHER -- THERE ARE OTHER
19    DOCUMENTS.
20         MR. COUGHLIN:  LET ME -- LET'S -- IF WE COULD DO
21    THIS, YOUR HONOR.  IF WE COULD FLIP TO, JUST TO SHOW YOU WHAT
22    MY PROBLEM WITH THAT STATEMENT ABOUT AND -- LET'S SEE.  I'LL
23    JUST START WITH THIS ONE DOCUMENT.  IF WE CAN FLIP TO
24    TAB 2165.
25         THE COURT:  WAIT.
```

1          **MR. COUGHLIN:**  IN THE FIRST VOLUME.

2          **THE COURT:**  OKAY.

3          **MR. COUGHLIN:**  SO THIS IS A CLOAKWARE DOCUMENT --

4              (OFF-THE-RECORD DISCUSSION.)

5          **THE COURT:**  IT'S ONE WORD.  OKAY.

6          **MR. COUGHLIN:**  AND IF WE FLIP TO WHERE THEY REDACTED

7   TO PAGE 6 OF 29 THERE, ON PAGE 6, THIS DOCUMENT WHICH IS DATED

8   IN SEPTEMBER -- SEPTEMBER 28, 2004, IT TALKS ABOUT THE

9   VULNERABILITIES AFTER 4.7.  4.7, IT WENT IN AND THEY CHANGED

10  TO A PUBLIC PRIVATE KEY.  PUT THE PRIVATE KEY IN THE IPOD.

11  IT'S CALLED RSA TECHNOLOGY.  THOSE ARE THE INITIALS OF THE

12  INVENTORS.  AND IT TALKS ABOUT RSA PUBLIC KEY AT THE BOTTOM OF

13  THAT PAGE FOR IPOD AND AIRTUNES CAN BE FOUND, AND IT SAYS THE

14  PROTECTIONS ARE NONE.

15          **THE COURT:**  YES.

16          **MR. COUGHLIN:**  THEN HE -- THEN THEY RECOMMEND TWO,

17  QUOTE, PROTECTIONS, AND IT'S A -- A SECURED LOADER AND AN RSA

18  WHITE BOX.  OKAY?  SO THEIR OUTSIDE SOURCE RECOMMENDS TWO

19  SOLUTIONS TO THE PERCEIVED PROBLEM.

20          **THE COURT:**  THIS ISN'T -- THIS ISN'T SOURCE CODE.

21          **MR. COUGHLIN:**  THAT'S --

22          **THE COURT:**  IT'S NOT SOURCE CODE.

23          **MR. COUGHLIN:**  THAT'S, MY POINT.

24          **MR. KIERNAN:**  YES, YOUR HONOR.  THIS FOLLOWS -- I

25  MEAN, I AGREE WITH THAT.  THIS FOLLOWS -- THERE'S SOURCE CODE

1    AND THEN THERE ARE TECHNICAL SPECIFICATIONS OF FAIRPLAY THAT

2    WOULD -- THAT ARE STILL TRADE SECRETS.  JUST BECAUSE IT'S NOT

3    A SOURCE CODE DOESN'T MEAN IT'S NOT A TRADE SECRET.

4            **THE COURT:**  OKAY.  WE ARE NOT CONDUCTING THIS TRIAL

5    IN A CLOSED COURTROOM.  THIS ONE EXAMPLE, THIS PAGE 6 OF 29,

6    IS A PROBLEM.  BECAUSE YOU'VE PUT THIS BEHIND A TAB THAT SAYS

7    SOURCE CODE.  AND THIS IS CERTAINLY NOT SOURCE CODE.  AND YOU

8    AGREE THAT IT'S NOT SOURCE CODE.  IT ISN'T AND -- AND IT

9    FUNDAMENTALLY DEALS WITH THE ISSUES THAT NEED TO BE TRIED IN

10   THIS CASE.  SO YOU WANT ME TO KICK OUT THE PRESS AND EVERYBODY

11   IN THIS COURTROOM WHEN WE'RE TALKING ABOUT THIS -- THESE TWO

12   LINES?  THAT'S WHAT YOU'RE ASKING ME TO DO.

13           **MR. KIERNAN:**  WELL, YOUR HONOR, WHAT I WAS ASKING WAS

14   FOR THE PLAINTIFFS TO IDENTIFY SOMETHING JUST LIKE THIS SO

15   THEN WE COULD REVIEW IT AND --

16           **THE COURT:**  THIS IS THE DAY BEFORE TRIAL.  THAT'S THE

17   PROBLEM.  WE'RE AT THE DAY BEFORE TRIAL, AND I'M LOOKING AT

18   THIS PAGE.

19      MR. KIERNAN, I DON'T -- YOU KNOW, YOU'VE NEVER IDENTIFIED

20   FOR ME WHY YOU WEREN'T IN TOWN IN OCTOBER, AND I SUSPECT IT'S

21   SOMETHING SIGNIFICANT.  UNFORTUNATELY, YOU KNOW, JONES DAY AND

22   BOIES SCHILLER ARE VERY BIG LAW FIRMS.  THEY SHOULD HAVE

23   BROUGHT IN SOMEONE TO HELP YOU.  BECAUSE THINGS LIKE THIS, I

24   CANNOT SEAL.  I CAN'T.  I MEAN, THERE ISN'T A BASIS FOR

25   SEALING THEM IN A TRIAL THAT TALKS ABOUT -- THAT SURROUNDS

1    FUNDAMENTALLY THESE ISSUES.

2        AND THE PROBLEM NOW IS THAT IT -- THE OVERBREADTH OF YOUR

3    REQUEST ON THE EVE OF TRIAL, NOT EVEN 24 HOURS BEFORE WE

4    START, CREATES MAJOR ISSUES.  SO I WILL SEAL SOURCE CODE.

5    THAT IS NOT SOURCE CODE.

6        **MR. COUGHLIN:**  YOUR HONOR, I DON'T WANT TO TAKE UP

7    YOUR TIME, AND I DON'T WANT TO TAKE UP MY TIME WHICH I'M --

8        **THE COURT:**  I -- I UNDERSTAND, MR. COUGHLIN, BUT I DO

9    HAVE TO --

10       **MR. COUGHLIN:**  OKAY.

11       **THE COURT:**  EVEN THOUGH I'M ON THE EVE OF TRIAL, IT

12   STILL DOESN'T MATTER.  I STILL HAVE TO UNFORTUNATELY DO THIS

13   JOB OF CLEANING THIS UP AND --

14       **MR. KIERNAN:**  MAY I SUGGEST HAVING ONE WORD WITH MY

15   CLIENT?

16       **THE COURT:**  GO AHEAD.

17             (PAUSE IN THE PROCEEDINGS.)

18       **THE COURT:**  I HAVE ANOTHER SUGGESTION ONCE HE GETS

19   BACK TO THE MIC.

20             (PAUSE IN THE PROCEEDINGS.)

21       **THE COURT:**  MR. KIERNAN.

22       **MR. KIERNAN:**  THANK YOU, YOUR HONOR.

23       **THE COURT:**  DO YOU HAVE ANYTHING TO ADD AT THIS

24   POINT?

25       **MR. KIERNAN:**  I WAS CURIOUS ABOUT WHAT YOUR

1    SUGGESTION WAS.

2         **THE COURT:**  WELL, MY SUGGESTION WAS THAT -- LET ME

3    ASK THIS.  HAVE YOU ALL AGREED OR NOT AGREED -- BECAUSE I

4    DIDN'T FORCE YOU TO -- HAVE YOU AGREED ON IDENTIFYING EXHIBITS

5    IN ADVANCE?

6         **MR. COUGHLIN:**  NO.

7         **THE COURT:**  BUT YOU'RE GOING TO HAVE BINDERS --

8    YOU'RE GOING TO GIVE WITNESSES BINDERS THE DAY OF.  AND THEN

9    ARE YOU GOING TO GIVE A BINDER TO THE OTHER SIDE OR NOT?

10        **MR. COUGHLIN:**  SURE.  YOUR HONOR, THAT'S -- HERE'S

11   THE PROBLEM WITH THAT, IS THAT, FOR EXAMPLE, IN KELLY'S REPORT

12   THEY'VE REDACTED ALL THE STUFF DEALING WITH DIVERSITY BAGS AND

13   UNIVERSAL KEYBAGS.  IN THE OPENING SLIDES, YOU'LL SEE THEM

14   TALK ABOUT SOME OF THOSE ISSUES.  I HAVE PREPARED MY WITNESSES

15   TO TALK ABOUT THOSE ISSUES.  AND NOW, AM I --

16        **THE COURT:**  SO THAT -- BUT, MR. COUGHLIN, I'M -- I'M

17   CONFUSED.  KELLY'S REPORT DOESN'T COME INTO EVIDENCE.

18        **MR. COUGHLIN:**  NO, THAT'S RIGHT.  KELLY'S REPORT

19   DOESN'T COME INTO EVIDENCE, BUT THEY'VE REDACTED THAT IN OTHER

20   PLACES SO THAT -- IN OTHER WORDS --

21        **THE COURT:**  YOU SAID --

22        **MR. COUGHLIN:**  THEY'VE REDACTED IT HERE IN THEIR

23   REPORT; RIGHT?  IN HIS REPORT.

24        **THE COURT:**  YOU SAID THAT, FOR EXAMPLE, IN KELLY'S

25   REPORT, THEY'VE REDACTED ALL THE STUFF DEALING WITH DIVERSITY

1    BAGS.  WHY DO I CARE?  KELLY'S REPORT DOESN'T COME INTO

2    EVIDENCE.

3            **MR. COUGHLIN:**  OKAY.  THEN YOU KNOW WHAT, YOUR HONOR,

4    THEN I'LL STICK RIGHT WITH THE DOCUMENTS THAT WE'RE USING.  IF

5    WE COULD GO TO EXHIBIT 2, I'LL SHOW YOU A SPECIFIC EXAMPLE OF

6    WHAT I'M TALKING ABOUT.

7            **THE COURT:**  AND I UNDERSTAND, AND IF WE'RE GOING TO

8    EXHIBIT 2, AND I'M NOW IN VOLUME 2, THIS FAIRPLAY NEXT GEN

9    PACKET.  THESE ARE -- MANY OF THESE ARE --

10           **MR. KIERNAN:**  ALL OF THEM ARE.

11           **THE COURT:**  THEY'RE ALL IDENTICAL COPIES OF THE

12   SAME --

13           **MR. KIERNAN:**  NOT IDENTICAL.  THEY'RE VERSIONS WHERE

14   THEY'RE ADDING SECTIONS TO IT, BUT THE REDACTIONS WOULD BE THE

15   SAME THROUGHOUT.

16           **THE COURT:**  ALL RIGHT.  SO, MR. COUGHLIN.

17           **MR. COUGHLIN:**  IF WE TURN TO PAGE 22 OF THAT

18   DOCUMENT, I HAVE A HANDWRITTEN -- I HAVE A REDACTED COPY, AND

19   THEN -- DO YOU HAVE A HANDWRITTEN "NO" ON YOURS?

20           **THE COURT:**  NO.

21           **MR. KIERNAN:**  SORRY.

22               (PAUSE IN THE PROCEEDINGS.)

23           **MR. COUGHLIN:**  IN THAT PARAGRAPH, WE HAVE APPLE'S

24   3 NEWTONIAN WHICH IS MARKED TO BE REDACTED.

25     IF WE TAKE A LOOK AT THE DEFENDANT'S OPENING SLIDES THAT

```
 1    WE APPROVED YESTERDAY --

 2         THE COURT:  WELL, WHAT WOULD BE THE BASIS FOR ME

 3    SEALING THE TERM "APPLE'S 3 NEWTONIAN"?

 4         MR. KIERNAN:  YOUR HONOR, AS THE STATEMENT SAYS,

 5    "CHIEFLY THE PROTECTION RELIES ON THE SECRET AND ROBUSTNESS OF

 6    APPLE'S 3 NEWTONIAN FUNCTION."  THE APPLE ENGINEERS HAVE TOLD

 7    ME THAT THIS IS SECRET.  IT'S KEPT FROM HACKERS.

 8         THE COURT:  SO HOW MANY PEOPLE -- HOW MANY PRESS

 9    MEMBERS DO I HAVE RIGHT NOW?

10      I HAVE PRESS HERE.

11      THIS TERM IS A TRADE SECRET?  IT CERTAINLY ISN'T SOURCE

12    CODE.

13      AM I SUPPOSED TO KICK HIM OUT NOW AND ORDER HIM UNDER --

14    ORDER HIM NOT TO TALK ABOUT THIS?  THAT PHRASE CANNOT, BY

15    DEFINITION, BE A TRADE SECRET.

16         MR. KIERNAN:  AND, YOUR HONOR, THE REASON I WROTE

17    "NO" HERE IS WE'RE WILLING TO REMOVE THE REDACTION FROM THAT

18    ENTIRE PARAGRAPH.

19         THE COURT:  WELL, THAT'S -- THAT'S GOOD BECAUSE THE

20    REQUEST TO SEAL IT IS DENIED.

21      BUT IT CREATE -- IT ILLUSTRATES THE PROBLEM.

22      ALL RIGHT.  I'M GOING TO GO BACK TO THE OTHER BINDER FOR A

23    MOMENT.  THE LABEL CONTRACTS, I TOOK A QUICK LOOK AT THESE.

24      MR. COUGHLIN.  THERE ARE -- SPECIFICALLY THERE ARE A

25    COUPLE OF DIFFERENT THINGS THAT THEY'RE TRYING TO SEAL HERE.
```

```
 1      ONE ARE SPECIFIC PRICING INFORMATION.  THOSE ARE USUALLY FOUND

 2      ON EXHIBITS TO THE DOCUMENTS.

 3          ANY OBJECTIONS TO THE PRICING ISSUES?

 4              MR. COUGHLIN:  NO, YOUR HONOR.

 5              THE COURT:  ALL RIGHT.  SPECIFIC PRICING STATEMENTS

 6      OR AGREEMENTS, TERMS, WILL BE -- WILL BE SEALED.

 7          NOW, IN THESE DOCUMENTS, THERE ARE ALSO TERMS WITHIN THE

 8      CONTRACTS THAT THEY ARE SEEKING TO SEAL, TEND TO BE FAVORABLE

 9      TERMS, IT APPEARS TO ME, THAT REFLECT -- THAT ARE TANGENTIAL

10      TO SPECIFIC PRICING INFORMATION.

11          ANY OBJECTIONS TO THOSE GENERALLY?  I'VE GOT MR. MEDICI

12      STANDING UP HERE.

13              MR. COUGHLIN:  GENERALLY I DON'T HAVE ANY OBJECTION

14      TO THAT, YOUR HONOR.  I MEAN, MR. MEDICI WAS TRYING TO MAKE

15      THE LEGAL POINT THESE ARE OLD CONTRACTS, YOU KNOW, AND THERE'S

16      NO DECLARATION FROM THE LABELS.  BUT GENERALLY, WE DON'T

17      HAVE -- I JUST HAVE LOST MY HELP FOR A COUPLE OF DAYS, AND I'M

18      GETTING READY FOR TRIAL AND SO TO --

19              THE COURT:  I KNOW.  I'M GOING TO TRY NOT TO PUT THE

20      BURDEN ON YOU.

21              MR. COUGHLIN:  OKAY.

22              THE COURT:  I'M JUST TRYING TO UNDERSTAND THE

23      POSITION SO THAT WE CAN --

24              MR. COUGHLIN:  NO PROBLEM.

25              THE COURT:  -- TRY TO GET THROUGH THIS.
```

```
1          MR. COUGHLIN:  I'LL DO IT.

2          THE COURT:  ON THE RESELLER CONTRACTS, AGAIN, WHAT

3   I'M SEEING HERE ARE ISSUES THAT -- THEY'RE TERMS IN THE

4   CONTRACTS THAT RELATE TO FINANCIAL ISSUES.  SO OVERAGE

5   CHARGES, REFUNDS, PERCENTAGES.

6          MR. COUGHLIN:  I FIND IT FASCINATING BECAUSE APPLE

7   JUST MADE THE ARGUMENTS TO YOUR HONOR THAT THESE VERY

8   CONTRACTS IN THE INTERVENTION MOTION AND THE DIFFERENCES IN

9   THOSE PERCENTAGES MADE A DIFFERENCE AND WHY PEOPLE WERE

10  SITUATED AT DIFFERENT WAYS AND ARGUED, YOU KNOW, THE

11  NEGOTIATION POINT.  SO NOW WE'RE A COUPLE WEEKS LATER AND NOW

12  WE'RE GOING TO REDACT THAT.

13      THAT'S FINE.  FINE WITH ME.

14          THE COURT:  WELL, AGAIN --

15          MR. COUGHLIN:  I HOPE IT GETS RID OF THEIR ARGUMENT

16  FOR APPEAL IF THEY MOVE TO REDACT SOMETHING LIKE THAT.

17          MR. KIERNAN:  WELL, DIFFERENT CONTEXT.

18  DECERTIFICATION MOTION, WE SOUGHT TO SEAL THAT INFORMATION

19  THEN AND WE CAN CONTINUE TO NOW.  AND WE STILL RESERVE FOR

20  APPEAL OUR ARGUMENT THAT THE RESELLER CLASS SHOULD NOT BE

21  CERTIFIED FOR ALL THE REASONS STATED IN OUR BRIEFS.

22          THE COURT:  WELL, IF IT DOESN'T COME INTO EVIDENCE,

23  THEN IT WILL NOT BE CONSIDERED FOR PURPOSES OF ANY RENEWED

24  MOTION FOR DECERTIFICATION.

25          MR. COUGHLIN:  RIGHT.  THAT'S OUT OF THE CASE IF THEY
```

```
1   GET THIS REDACTION, RIGHT?
2            THE COURT:  IF IT'S NOT IN EVIDENCE, IT WILL NOT BE
3   CONSIDERED.
4            MR. ISAACSON:  YOUR HONOR, FOR PURPOSES OF CLASS
5   CERTIFICATION ISSUES, THAT'S NOT BOUND BY THE TRIAL RECORD.
6            THE COURT:  IN TERMS OF WHAT THE COURT WILL LOOK AT
7   IN TERMS OF WHETHER OR NOT THE -- THERE ARE SIMILARITIES --
8            MR. ISAACSON:  YOUR HONOR, WHILE THE TRIAL RECORD MAY
9   PROVIDE YOU ADDITIONAL INFORMATION, THE -- THE EVIDENCE
10   SUBMITTED TO THE JURY -- THE JURY DOES NOT DECIDE CLASS
11   CERTIFICATION.
12            THE COURT:  NO.
13            MR. ISAACSON:  THE COURT DOES.  AND SO THOSE
14   CONTRACTS, AS WELL AS ANY OTHER DOCUMENT THAT MAY BE RELEVANT
15   TO THE COURT IN DECIDING WHETHER TO DECERTIFY THE CLASS, MAY
16   BE CONSIDERED BY THE COURT WHETHER OR NOT THEY BECOME ADMITTED
17   AS TRIAL EXHIBITS.
18            THE COURT:  WELL, IT WILL BE INTERESTING.
19       ANY OBJECTION --
20            MR. COUGHLIN:  NONE.
21            THE COURT:  -- TO THOSE ONES?
22            MR. COUGHLIN:  NO.
23            THE COURT:  ALL RIGHT.  SO THE TERMS IN THOSE
24   CONTRACTS THAT RELATE TO THESE PRICING ISSUES ARE NOT A
25   CONCERN.
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

1    **MR. KIERNAN:**  AND, YOUR HONOR, FOR THE REMAINING

2    DOCUMENTS IN VOLUME 1, UNDER THE FIRST TAB, EXCEPT TO THE

3    EXTENT THAT IT REFLECTS SOURCE CODE OR A DIAGRAM OF THE

4    KEYBAG, GIVING AN EXAMPLE OF THAT, APPLE WOULD WITHDRAW ALL

5    THE REMAINING REDACTIONS.

6        **THE COURT:**  OKAY.  GIVE ME AN EXAMPLE.

7            (PAUSE IN THE PROCEEDINGS.)

8        **MR. KIERNAN:**  SO IF YOU TURN TO TAB 244, AND IT'S

9    PAGE 21 OF THAT DOCUMENT.

10       **THE COURT:**  I DON'T HAVE 244 IN THIS -- IN THE

11   FAIRPLAY NEXT GEN.

12       **MR. KIERNAN:**  VOLUME 1, YOUR HONOR.

13       **THE COURT:**  OKAY.

14       **MR. KIERNAN:**  TAB 44, PAGE 21, IS AN EXAMPLE OF THE

15   DIAGRAM OF THE IPOD KEYBAG.  THERE ARE SIMILAR DIAGRAMS THAT

16   LOOK ESSENTIALLY THE SAME FOR THE DESKTOP KEYBAG.  WE WOULD

17   REQUEST THAT THIS -- THAT THE DIAGRAMS THAT THE KEYBAG AND

18   ACTUAL SOURCE CODE THAT ARE REFLECTED IN THESE DOCUMENTS

19   REMAIN REDACTED, BUT OTHERWISE REMOVE ALL THE OTHER REDACTIONS

20   IN THE DOCUMENT.

21     SO, FOR EXAMPLE, PAGE 17, WE WOULD REMOVE THE REDACTIONS.

22       **THE COURT:**  PAGE 21, MR. COUGHLIN, YOUR PERSPECTIVE.

23       **MR. COUGHLIN:**  YOUR HONOR, THE -- THE PROBLEM I HAVE

24   IS THAT ONE OF THE ISSUES THAT YOU'RE GOING TO -- THAT THE

25   JURY IS GOING TO HAVE TO DECIDE IS THEY TALKED ABOUT

1    IMPROVEMENTS TO THE KEYBAG, AND THEY SAY THEY ARE NOT ONLY

2    IMPROVEMENTS WITH THE KVC AND DVC BUT, FOR EXAMPLE, INTEGRITY

3    CHECKS, DIVERSITY KEYBAGS, UNIVERSAL KEYBAGS, AND PART OF IT

4    HAS TO DO WITH THE FORMATTING OF THE KEYBAG.

5        SO, FOR EXAMPLE, IF YOU HAVE -- THIS IS A DOCUMENT THAT

6    MR. FARRUGIA WOULD HAVE CREATED, AND IF YOU HAVE -- YOU HAVE

7    THE PICTURE -- I'M JUST LOOKING AT PAGE 21.  HE SHOWS YOU THE

8    CHANGE THAT HE DID FOR THE -- LET'S SAY THE PRODUCT

9    IMPROVEMENT.

10       NOW, I COULD SAY, YOU KNOW WHAT, I DON'T CARE ABOUT THIS

11   PARTICULAR ONE, BUT THERE ARE A NUMBER OF ONES WHERE WE'RE

12   SIGNING ON FOR THE KVC TO THE ENTIRE KEYBAG A SIGNATURE AND

13   HOW THAT CHANGED AND HOW THAT WORKED, OKAY?  AND THEN FOR THE

14   DVC, WE HAVE THE SAME THING.

15       IN OTHER WORDS, I'D HAVE TO GO THROUGH THIS -- THESE

16   DOCUMENTS AND SEE WHICH ONES ACTUALLY ARE PAYING (SIC).  SO

17   FOR HIM TO PICK OUT ONE KEYBAG CHANGE A GENERATION -- AND I

18   HOPE THAT THEY DON'T TALK ABOUT IT.  IF HE'S GOING TO TALK

19   ABOUT -- IF THEY'RE GOING TO TALK ABOUT GRANULARITY AND -- AND

20   YOU CAN SEE THE CHANGE IN THIS, THE DIVERSIFICATION, SO TO

21   SPEAK, AND IT -- WHAT IT DOES IS THEY'RE GOING TO ARGUE AND

22   SOMETIMES I'M GOING TO AGREE WITH THEM, SOMETIMES NOT, THAT

23   THIS DIVERSIFICATION COMPLICATION CREATES GRANULARITY AND IT'S

24   A PRODUCT IMPROVEMENT BECAUSE THEN YOU CAN'T GO FURTHER INTO

25   THE KEYBAG.  YOU GET STOPPED THERE.  AND ONLY PART OF THE

```
1   KEYBAG IS COMPROMISED.

2       AND THEN WE'RE GOING TO HAVE AN ARGUMENT WHETHER THAT PART

3   OF THE KEYBAG CAN BE DELETED IF IT IS COMPROMISED, OR DO YOU

4   HAVE TO DELETE THE WHOLE KEYBAG.

5       AND SO THIS PARTICULAR DOCUMENT -- THIS PARTICULAR -- THIS

6   IS -- I THINK THIS IS THE NEXT GENERATION DOC.

7           MR. KIERNAN:  YOUR HONOR, I'M CONVINCED.  THIS WAS

8   THE DISCUSSION I WANTED ON FRIDAY.  LISTENING TO MR. COUGHLIN,

9   I WILL WITHDRAW THE REDACTIONS TO DIAGRAMS OF THE KEYBAG.

10          MR. COUGHLIN:  BECAUSE THEY HAVE TO HAVE THEM TO

11  PROVE THEIR PART OF THE CASE WHICH IS --

12          MR. KIERNAN:  NOT WHAT I SAID.

13          MR. COUGHLIN:  WELL, THAT'S WHAT THEY'RE GOING TO

14  ARGUE.

15          THE COURT:  SO THAT'S WITHDRAWN.

16          MR. COUGHLIN:  OKAY.

17          THE COURT:  SO ALL THEN THAT REMAINS IS SOURCE CODE.

18          MR. KIERNAN:  WHICH THEY AGREED TO.

19      YEAH, OKAY.  SORRY, YOUR HONOR.

20          THE COURT:  I AM SUMMARIZING HERE.

21          MR. KIERNAN:  THANK YOU.

22          THE COURT:  SO SOURCE CODE IS SEALED.  AND I DON'T

23  EXPECT WE'RE GOING TO HAVE MANY DISCUSSIONS ABOUT SOURCE CODE.

24  IF WE DO, I'LL DEAL WITH HOW I DEAL WITH IT.  GIVEN THE -- I

25  MEAN, THERE ARE DIFFERENT WAYS.  IT DEPENDS ON THE NATURE OF
```

```
1    THE QUESTION, ET CETERA.  SO IT CAN BE REDACTED.  IF THERE'S
2    SOME REASON THAT I HAVE TO UNREDACT A PORTION OR IF THERE IS
3    SOME NEED TO TALK ABOUT A SPECIFIC LINE, WE CAN TALK ABOUT IT
4    IN THE CONTEXT OF THE TRIAL.  BUT THE GOING-IN POSITION IS
5    THAT THE SOURCE CODE IS SEALED AND CAN BE REDACTED.
6        PRICING TERMS CAN BE REDACTED.
7        AND THE ANCILLARY -- ANCILLARY TERMS OF THE CONTRACTS
8    WHICH REFLECT PRICING AND/OR FINANCIAL CONSIDERATIONS IN THE
9    CONTRACTS, THOSE CAN BE SEALED AS WELL.
10           MR. COUGHLIN:  THERE'S ONLY ONE LINE THAT I CAN THINK
11   OF, A SOURCE CODE, THAT HAS WHAT YOU'RE TALKING ABOUT, AND IT
12   ACTUALLY HAS THE SOURCE CODE AND THEN ABOVE IT, A LINE BELOW
13   IT IN PLAIN ENGLISH.  SO THAT'S A SITUATION ACTUALLY THAT YOU
14   DESCRIBED.  AND I CAN ONLY THINK OF ONE SPOT THAT I KNOW OF IN
15   THE SOURCE CODE WHERE THAT COMES OUT.
16           THE COURT:  ALL RIGHT.
17           MR. COUGHLIN:  AND WE'LL IDENTIFY IT AHEAD OF TIME.
18           MR. KIERNAN:  YEAH.
19           MR. COUGHLIN:  IT'S ONE OF THOSE ONES THAT'S OBJECTED
20   TO AND WE'D IDENTIFY IT ANYWAY.
21           THE COURT:  OKAY.  SO NOW HOW MANY --
22           MR. KIERNAN:  AND WE PERMITTED, JUST FOR
23   CLARIFICATION FOR PLAINTIFFS, AND THIS MAY HAVE BEEN OBVIOUS
24   FROM THE REDACTIONS, BUT JUST SO THE RECORD IS CLEAR, FOR
25   CHECK-IN AND CHECKOUT LOGS, WHICH INCLUDES SOME OF THE PLAIN
```

```
 1    ENGLISH, WE'RE NOT ASSERTING SOURCE CODE FOR THAT.  WE'RE ONLY
 2    TO THE ACTUAL CODE.  AND THEN OF COURSE WE'RE WILLING TO MEET
 3    AND CONFER ABOUT SINGLE LINES OF CODE IF THAT'S -- IF THAT'S
 4    AN ISSUE.
 5             THE COURT:  HOW MANY COPIES OF THESE COLOR-CODED
 6    DOCUMENTS DO YOU WANT, MR. COUGHLIN?
 7             MR. COUGHLIN:  THIS IS -- WE DON'T NEED TO KILL ANY
 8    MORE TREES.  FOR EXAMPLE, ON PAGE -- IF WE COULD TAKE A LOOK
 9    AT TAB -- JUST FOR MY EDIFICATION, TAB 298.
10             THE COURT:  OKAY.
11             MR. COUGHLIN:  IF YOU FLIP TO THE SECOND PAGE, THAT'S
12    WHAT THE KEYBAG LOOKS LIKE IN AN UN -- IS THAT THE KIND OF
13    THING THAT THERE'S NO LONGER -- THAT'S NO LONGER OBJECTED TO?
14             MR. KIERNAN:  CORRECT.
15             THE COURT:  OKAY.  WHAT I WOULD LIKE YOU TO DO
16    THEN -- WELL, I GUESS THE OTHER QUESTION I HAD, BECAUSE IT WAS
17    STILL OUTSTANDING AND I THINK THAT THERE ARE SOME -- THERE'S
18    SOME OVERLAP, THERE WERE STILL SOME ADMINISTRATIVE MOTIONS TO
19    SEAL WITH RESPECT TO THE RECENT MOTIONS.  SO IS THE
20    PERSPECTIVE CHANGED WITH RESPECT TO THOSE AS WELL?
21        TELL YOU WHAT.  I'LL GIVE YOU 24 HOURS.  I'D LIKE
22    SOMETHING FILED TO LET ME KNOW WHAT, IF ANYTHING, IS STILL IN
23    PLAY VERSUS WHAT IS WITHDRAWN, MR. KIERNAN.
24             MR. KIERNAN:  OKAY.
25             THE COURT:  BECAUSE I'M NOT -- YOU KNOW, THERE ARE
```

```
1    NUMEROUS DOCUMENTS.

2              MR. KIERNAN:  UNDERSTOOD.

3              THE COURT:  WE'VE ALREADY GONE THROUGH A

4    SIGNIFICANTLY AMOUNT OF WORK.  I WAS GOING TO FINISH THAT OFF,

5    BUT IF I CAN FOCUS ON OTHER ISSUES, THEN I'D RATHER FOCUS ON

6    OTHER ISSUES.

7              MR. KIERNAN:  UNDERSTOOD.

8              THE COURT:  SO I'LL EXPECT SOME KIND OF STATEMENT

9    WITH RESPECT TO THAT FILED TOMORROW.

10      OKAY?  OKAY.  I THINK, THEN, THAT THAT DEALS WITH

11   EVERYTHING.

12             MR. KIERNAN:  YOUR HONOR, THE -- THE LAST ISSUE, AT

13   LEAST ON MY AGENDA, IS WITH RESPECT TO THE LARGE DOCUMENT, THE

14   FAIRPLAY NEXT GENERATION HAS THE NINE OTHER VERSIONS OF IT,

15   I'M FINE WITH THE SAME RULE APPLYING, WHICH IS THE ACTUAL

16   SOURCE CODE IS REDACTED.

17      THERE IS A SECTION IN THE DOCUMENT THAT STARTS AT PAGE 36

18   AND RUNS TO PAGE 47.  IT IS A DETAILED DESCRIPTION OF DRM

19   PROPOSED FOR SUBSCRIPTION SERVICES THAT APPLE WAS

20   CONTEMPLATING AT THE TIME.

21             THE COURT:  SO IT'S NOT --

22             MR. KIERNAN:  THESE TRADE SECRETS HAVE NOT BEEN AT

23   ISSUE IN THIS CASE, AND SO I WOULD ASK PLAINTIFFS TO AGREE

24   THAT THOSE PAGES, THE PARTS THAT I HAVE REDACTED, REMAIN

25   REDACTED.
```

```
 1              MR. COUGHLIN:  I AGREE WITH THAT, YOUR HONOR.  THAT'S

 2      FINE.

 3              THE COURT:  OKAY.  SO BEGINNING ON PAGE 36?

 4              MR. COUGHLIN:  AT THE BOTTOM OF PAGE 36, I BELIEVE

 5      HE'S TALKING ABOUT.

 6              MR. KIERNAN:  YES.  THANK YOU.

 7              THE COURT:  I HAVE THE WRONG DOCUMENT THEN.  WHAT --

 8              MR. KIERNAN:  THIS IS TAB 2 IN VOLUME 2, YOUR HONOR.

 9              THE COURT:  SO, ALL RIGHT.  WELL, THEN I DO HAVE THE

10      RIGHT DOCUMENT.  BUT MY PAGE 36 OF 103 HAS A REDACTION AT THE

11      TOP OF PAGE 36.

12              MR. KIERNAN:  YES.  LET ME CLARIFY.  WHERE IT STATES

13      "ALL YOU CAN EAT OR SUBSCRIPTION."

14              THE COURT:  RIGHT.

15              MR. KIERNAN:  THIS STARTS THE SECTION ON

16      SUBSCRIPTION.  IN LIGHT OF THE PLAINTIFFS' COMMENTS AT THE END

17      OF LAST WEEK, I WENT THROUGH AND DID MORE NARROWLY TAILORED

18      REDACTIONS IN THAT SECTION.

19              THE COURT:  SO THE REDACTIONS, AS I UNDERSTAND IT,

20      BEGIN ON PAGE 37.

21              MR. KIERNAN:  CORRECT.

22              THE COURT:  AND THEN THEY RUN THROUGH, YOU'RE SAYING,

23      PAGE 47.  AND THERE'S NO OBJECTION.  SO IT'S ORDERED.

24              MR. COUGHLIN:  HE'S ACTUALLY REQUESTING THAT START ON

25      PAGE 36, AND I HAVE NO PROBLEM WITH THAT.  THAT'S THE PROBLEM
```

1    THAT WE'VE HAD, THOUGH.  I MEAN, HE DIDN'T REDACT THAT FIRST

2    PAGE.  MAYBE HE WAS TRYING TO BE MORE NARROW OR NOT.  BUT THAT

3    SECTION IS NOT AT ISSUE IN THIS TRIAL.

4            **THE COURT:**  OKAY.

5            **MR. COUGHLIN:**  AND, YOUR HONOR, I DON'T KNOW HOW --

6            **THE COURT:**  SO FOR PURPOSES -- FOR PURPOSES OF THE

7    EXHIBITS THAT ACTUALLY GO INTO THE JURY ROOM, TO THE EXTENT

8    THAT THEY ARE USED, THEN APPLE WILL HAVE TO PROVIDE A COPY TO

9    THE COURTROOM DEPUTY, WHICH IS THE OFFICIAL EXHIBIT, WITH THE

10   REDACTION IN PLACE, AND AN IDENTICAL COPY TO THE PLAINTIFFS.

11   UNDERSTOOD?

12           **MR. KIERNAN:**  YES, YOUR HONOR.

13           **MR. COUGHLIN:**  AND, YOUR HONOR, I ASSUME THAT WE'RE

14   GOING TO TELL THE JURY THAT -- THAT THAT WAS REDACTED AT

15   EITHER APPLE'S REQUEST OR IT DOESN'T PERTAIN TO THIS CASE,

16   SOMETHING TO LET THEM KNOW.

17           **THE COURT:**  YEAH, I WILL ADD THAT ON MY LIST OF

18   THINGS.  I MEAN, SO SOME OF THIS STUFF THEY WON'T EVEN SEE THE

19   REDACTIONS MOST LIKELY, GIVEN THE WAY THE PRESENTATION

20   HAPPENS.  IT'S JUST FOR PURPOSES OF WHAT ENDS UP IN THE JURY

21   ROOM.

22           **MR. COUGHLIN:**  AND I WANT TO JUST MAKE SURE THIS IS

23   THE ENTIRE RECORD THAT WE'RE TALKING ABOUT HERE, THESE TWO

24   VOLUMES AND WHAT WE'VE DISCUSSED TODAY.  THERE'S NOT SOMETHING

25   ELSE ASIDE -- YOU KNOW WHAT?  ASIDE FROM THOSE IDENTIFICATION

1    OF THOSE DOCUMENTS THAT ARE SIMILAR TO EXHIBIT 2.

2         **MR. KIERNAN:**  RIGHT.  AND THEN TO THE EXTENT THAT

3    THEY'RE GOING TO USE -- AS MR. COUGHLIN POINTED OUT THAT THIS

4    HAS BEEN A MOVING TARGET, PLAINTIFFS MAY HAVE ADDITIONAL

5    EXHIBITS, TO THE EXTENT THEY CONTAIN ANY SIMILAR INFORMATION.

6         **MR. COUGHLIN:**  CERTAINLY.  I'LL -- WE'LL PROVIDE THEM

7    AHEAD OF TIME.

8         **THE COURT:**  OKAY.  WELL, YOU GUYS HAVE ALL WORKED

9    VERY HARD, I CAN TELL.  IT'S MUCH APPRECIATED.  WE'RE NOT HERE

10   AT 6:00 O'CLOCK BEFORE OPENING STATEMENTS.  THAT'S ALWAYS A

11   GOOD SIGN.  I HOPE YOU AT LEAST GOT TO HAVE SOME TURKEY AND

12   STUFFING.  I HAVE A LITTLE EXTRA.  I COULD BRING IT IN.  BUT

13   NOT MUCH.  MY SON TOOK THE LAST -- THE LAST LEG THIS MORNING

14   FOR SCHOOL LUNCH.

15        **MR. COUGHLIN:**  NOW, WOULD THAT BE A TEXAS DEEP-FRIED

16   TURKEY, YOUR HONOR?

17        **THE COURT:**  YOU KNOW, WE DON'T DEEP-FRY THEM IN

18   TEXAS.  I'M MEXICAN-AMERICAN.  WE DON'T DEEP -- WE DID SPICE

19   ONE LAST YEAR SO -- BUT, NO, THEY'RE -- IT'S ALL GOOD.

20      OKAY.  ANYTHING ELSE?  IF NOT, WE WILL STAND IN RECESS

21   UNTIL 8:00 A.M. TOMORROW MORNING.  AND I'LL SEE YOU THEN.

22        **MR. COUGHLIN:**  SEE YOU THEN.

23        **MR. KIERNAN:**  THANK YOU, YOUR HONOR.

24        (PROCEEDINGS WERE CONCLUDED AT 11:15 A.M.)

25                        --O0O--

1

2

3                    **CERTIFICATE OF REPORTER**

4

5            I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

6    FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

7    I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO,

8    NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS

9    HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR

10   OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

11

12   _____

13            RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

14                    MONDAY, DECEMBER 1, 2014

15

16

17

18

19

20

21

22

23

24

25