William A. Isaacson (wisaacson@bsfllp.com)
(Admitted *Pro Hac Vice*)
Karen L. Dunn (kdunn@bsfllp.com)
(Admitted *Pro Hac Vice*)
Jonathan H. Sherman (jsherman@bsfllp.com)
(*Pro Hac Vice* to be filed)
Martha L. Goodman (mgoodman@bsfllp.com)
(Admitted *Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW
Washington, DC  20015
Telephone:  (202) 237-2727
Facsimile:  (202) 237-6131

John F. Cove, Jr. #212213
(jcove@bsfllp.com)
Kieran P. Ringgenberg #208600
(kringgenberg@bsfllp.com)
Maxwell V. Pritt # 253155
(mpritt@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA  94612
Telephone:  (510) 874-1000
Facsimile:  (510) 874-1460

David C. Kiernan #215335
(dkiernan@jonesday.com)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:  (415) 626-3939
Facsimile:  (415) 875-5700

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION<br><br>———————————————<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No.  C 05-00037 YGR<br>[CLASS ACTION]<br><br>**APPLE'S OPPOSITION TO MEDIA INTERVENORS' MOTION FOR ACCESS TO THE VIDEO DEPOSITION OF STEVE JOBS**<br><br>Date:         December 9, 2014<br>Time:        4:00 p.m.<br>Courtroom: 1, 4th Floor<br>Judge:       Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................... 3

I.  MOVANTS ARE NOT ENTITLED TO THE VIDEO OF MR. JOBS'
    TESTIMONY. ............................................................................................................. 3

    A.  Local Rule 77-3 Prohibits the Release of Mr. Jobs' Videotaped Testimony,
        and the Rule Tracks Well-Established First Amendment Law on the Issue. ......... 3

    B.  The Common-Law Right to Access Judicial Records for Inspection and
        Copying Is Not Applicable Here. ............................................................................ 5

    C.  Even if the Common-Law Right of Access Applied Here, the Presumption
        of Disclosure Would Be Overcome By Compelling Reasons. ............................... 7

CONCLUSION ...................................................................................................................... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

On this motion, three proposed intervenors, Bloomberg L.P., The Associated Press, and Cable News Network, Inc. ("Movants"), seek "access to the video deposition of Apple's late CEO Steve Jobs that was used as trial testimony" on December 5, 2014. (Mem. at 1). Their motion should be denied.

On December 5, 2014, Plaintiff played an approximately twenty-seven minute excerpt from Mr. Jobs' deposition for the jury, pursuant to Federal Rule of Civil Procedure 32(a)(4)(A). The excerpt was not admitted into evidence as an exhibit. See Trial Tr. 1058:18-1059:22. Thus, by its terms, the Court's December 4, 2014 Order requiring the parties to provide the press with "five copies of each admitted exhibit" is inapplicable. See Order for Parties to Accommodate the Press (Dkt. 951) (emphasis added). Moreover, this Court specifically addressed Mr. Jobs' testimony prior to the entry of the December 4, 2014 Order, requiring the parties to produce to the press only the transcript of the deposition excerpts played at trial. See Trial Tr. 647:19-648:9. It did not direct the parties to produce the video played for the jury. See id.

Mr. Jobs' testimony was played in open court, with the press and public present. The transcript of the testimony played at trial was appended to the trial transcript, and Apple previously filed the complete transcript of Mr. Jobs' deposition in the public docket. See App'x to Trial Tr. Vol. 5; Jobs Dep. Tr. (Dkt. 860-8). Movants observed Mr. Jobs' testimony in court. They have access to the written transcript.

Movants support their request by citing to the First Amendment and common-law rights of access. They assert that "the trial testimony of Steve Jobs is presumptively open to the press and public," and thus because Mr. Jobs' testimony happened to be captured on videotape, they are entitled to take the parts of the video deposition played in open court as part of the trial in this matter and use that videotape however they wish, particularly because of the unique nature of the visual imagery that the video testimony conveys. (Mem. at 2-5). Put another way, Movants wish

to obtain a recorded copy of audio-visual testimony played in this federal court.[1]

Neither case law nor common sense supports this request. Movants' citations to constitutional and common-law access rights do not bear minimal scrutiny in light of the Local Rules of this Court and Supreme Court precedent.

*First*, in this Court, audio-visual recording (and broadcast) of live testimony is absolutely forbidden by Local Rule 77-3. Four years ago, in fact, the Supreme Court issued an order in *Hollingsworth v. Perry*, 558 U.S. 183, 197-98 (2010), barring this district from amending its local rules to permit audio-visual recording and coverage of a different high-profile case.

*Second,* there is no First Amendment right for any member of the press or the public to obtain a recording of live witness testimony. The Supreme Court has held so on two occasions and said so in dicta on others.

*Third*, the common-law right of access does not authorize the relief Movants seek. The video of Mr. Jobs' testimony is not a "judicial record"; it is "merely an electronic recording of witness testimony." *United States v. McDougal*, 103 F.3d 651, 657 (8th Cir. 1996). Were it otherwise, the common-law right of access would swallow the limits under the First Amendment of the Supreme Court's cases expressly excluding recordings or witness testimony from the scope of the constitutional access right.

Finally, *fourth*, even were the common-law right implicated here, the balance of factors would weigh heavily in favor of rejecting Movants' request. Mr. Jobs is of course a figure of public interest, but nowhere in their motion papers do Movants explain why or how, for example, the visual image of him "wearing his trademark black turtleneck and jeans" could provide information to the public that would assist with the public's understanding of the judicial process or this case. If anything, policy considerations cut against compelling disclosure here. If Movants are correct that the "substantial public interest" requires disclosure of a video record "only available to those fortunate enough to be in court that day" (Mem. at 4), then the testimony

---

[1] If the Court grants Movants' request, it will have to grant the same request made by every member of the public in any case. *See generally Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 609 (1978) ("The First Amendment generally grants the press no right to information about a trial superior to that of the general public.").

of every witness who consensually sits for a video deposition in every litigation in this country will be affected by the knowledge that they, too, one day could be someone else's "interest," and hence decline to appear for testimony. That is hardly consistent with the "fair administration of justice." For that reason, at present, the Judicial Conference of the United States opposes recording witness testimony, just as the Supreme Court and the Local Rules of this Court prohibit it.[2]

## ARGUMENT

### I. MOVANTS ARE NOT ENTITLED TO THE VIDEO OF MR. JOBS' TESTIMONY.

There is no dispute that public and press have a presumptive right to hear and observe testimony delivered in court. *See, e.g.*, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575-80 (1980). Nor is there a dispute that they have a common-law right to judicial records, such as exhibits at trial. *See, e.g.*, *Valley Broad. Co. v. U.S. Dist. Court for Dist. of Nev.*, 798 F.2d 1289, 1292-94 (9th Cir. 1986). But neither of those rights saves Movants' motion, and fifty years of law is arrayed against it.

#### A. Local Rule 77-3 Prohibits the Release of Mr. Jobs' Videotaped Testimony, and the Rule Tracks Well-Established First Amendment Law on the Issue.

Local Rule 77-3 provides in pertinent part:

> Unless allowed by a Judge or a Magistrate Judge with respect to his or her own chambers or assigned courtroom for ceremonial purposes or for participation in a pilot or other project authorized by the Judicial Council of the Ninth Circuit or the Judicial Conference of the United States, the taking of photographs, public broadcasting or televising, or recording for those purposes in the courtroom or its environs, in connection with any judicial proceeding, is prohibited.

---

[2] Report of the Proceedings of the Judicial Conference of the United States at 47 (Sept. 20, 1994), http://www.uscourts.gov/FederalCourts/JudicialConference/Proceedings/Proceedings.aspx?doc=/uscourts/FederalCourts/judconf/proceedings/1994-09.pdf (rejecting recommendation to permit audio-visual coverage of civil cases because "the intimidating effect of cameras on some witnesses and jurors was cause for concern" for a majority of the Conference); *accord Sunshine in the Courtroom Act of 2007: Hearing Before the Comm. on the Judiciary, House of Representatives*, 110th Cong. 15-17 (2007), *available at* http://www.gpo.gov/fdsys/pkg/CHRG-110hhrg37979/pdf/CHRG-110hhrg37979.pdf (testimony of Hon. John R. Tunheim, Judge, U.S. District Court, on behalf of the Judicial Conference of the United States).

Mr. Jobs had been available to testify in person in court last week, Rule 77-3 would have barred Movants from obtaining a video recording of his testimony.[3] Permitting them to obtain a video copy of that testimony amounts to granting them the very thing the Rule forbids.

Rule 77-3 is based on longstanding Judicial Conference policy and is the result of a thorough rule-making process, based on a long history of Supreme Court case law. *Cf.* Fed. R. Crim. P. 53 (barring audio-visual coverage of all federal criminal court proceedings). The Supreme Court first dealt with the question in 1965, rejecting a claim that the audio-visual coverage of portions of a criminal defendant's pre-trial hearing and trial was protected by the First Amendment. *Estes v. Texas*, 381 U.S. 532, 539 (1965). Thirteen years later it held that there was no First Amendment right to obtain copies of recordings sought in connection with a Watergate-related trial. *Nixon v. Warner Commc'ns, Inc.*. 435 U.S. 589, 610 (1978) ("[T]here is no constitutional right to have [live witness] testimony recorded and broadcast ... live or on tape to the public.").

In 1984, Movant CNN sought a waiver in the United States Court for the Southern District of New York of a local rule then in force substantively identical to Local Rule 77-3. The Second Circuit vacated the District Court's grant of the waiver, and in doing so declined to hold that the presumptive First Amendment right to attend and observe trials established by *Richmond Newspapers* (which had been decided after *Nixon*) extended to the right to record the trial. *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (1984).[4] *Nixon* remains good law; the presumptive First Amendment right of access to trials right does not include a right to obtain

---

[3] Although Rule 77-3 provides an exception for matters participating in an authorized pilot project, that pilot project is expressly limited to cases that the Court has selected for participation, where all parties have consented to recording. *See* Judicial Conference Committee on Court Administration and Case Management, "Guidelines for the Cameras Pilot Project in the District Courts," §§ 1.c, 2.a-2c. (June 8, 2011), http://www.uscourts.gov/uscourts/News/2011/docs/CamerasGuidelines.pdf. The Court has not selected this case for participation in the pilot project, and Apple has not consented to any recording.

[4] "There is a long leap, however, between a public right under the First Amendment to attend trials and a public right under the First Amendment to see a given trial televised. It is a leap that is not supported by history. It is a leap that we are not yet prepared to take. It is a leap that many federal judges and, indeed, apparently the judges of the Southern District of New York, one of the most eminent district courts in the United States, oppose." 752 F.2d at 23.

video recordings of witness testimony, or even non-testimonial video records admitted into evidence. *E.g., Valley Broad. Co.*, 798 F.2d at 1292-93.[5]

In *Valley Broadcasting Co.*, a television station sought access to video and audio tapes admitted into evidence at trial. 798 F.2d at 1290. After noting that the station had been granted access to the trial proceedings and the transcripts of the exhibits in question, the Ninth Circuit held that "[a]ny [F]irst [A]mendment rights to which existing case law entitled Valley Broadcasting were amply satisfied by the district court's provision for media access to the trial itself." *Id.* at 1292-93. The same is true here. Movants had an opportunity to observe Mr. Jobs' testimony when it was played in open court, and even had advance notice of the date and time when it would be shown. They have access to the transcript of the video played for the jury, which was appended to the public trial transcript. *See* App'x to Trial Tr. Vol. 5. Indeed, Movants have access to the *entire* transcript of Mr. Jobs' deposition, which is publicly available. (Dkt. 860-8). Nothing further is required to satisfy the First Amendment.

Movants are simply wrong. The First Amendment confers no right to record—or obtain recordings of—witness testimony at this trial

**B.   The Common-Law Right to Access Judicial Records for Inspection and Copying Is Not Applicable Here.**

Movants are also wrong in asserting that the common-law right of access permits them to obtain the video recording of Mr. Jobs' testimony. The video recording of that testimony is not a "judicial record," and therefore the common-law right does not apply.

---

[5]   The rule is of particular resonance to this Court on this Motion. In 2009, the Ninth Circuit Judicial Council sought to amend Rule 77-3 to allow permit this Court to grant a request to record and provide audio-visual coverage of the Proposition 8 trial. The Supreme Court intervened and concluding this district had not followed appropriate procedures in amending Rule 77-3. *See Hollingsworth v. Perry,* 558 U.S. 183 (2010). In the course of doing so, the Court noted that while some federal district courts had relied on permissive local rules granting judges discretion to permit recordings of proceedings, none of those courts had deal with "high profile" trials, such as the one at issue in that matter. *See id.* at 198. It further explained that the amendment of the Local Rule 77-3 had not taken into account the Judicial Conference's expressed concerns regarding the recording of court proceedings. *See id.* at 193-94.

The Ninth Circuit has yet to address the threshold issue of whether videotaped deposition testimony played at trial is a judicial record subject to the common-law right of access. But other courts have done so. In *McDougal*, 103 F.3d at 656-57, the Eighth Circuit held that a videotaped deposition shown at trial was not a judicial record, and thus was not subject to the common-law right. The court recognized that the Second Circuit had reached a contrary result in *In re Application of CBS, Inc.*, 828 F.2d 958 (2d Cir. 1987), but concluded that the testimony played at trial should be treated like the testimony of a live witness:

> [T]he videotape at issue in the present case is merely an electronic recording of witness testimony. Although the public had a right to hear and observe the testimony at the time and in the manner it was delivered to the jury in the courtroom, we hold that there was, and is, no additional common law right to obtain, for the purposes of copying, the electronic recording of that testimony.

*McDougal*, 103 F.3d at 657.

Similarly, in *In re Application of American Broadcasting Cos., Inc.*, 537 F. Supp. 1168, 1171-72 (D.D.C. 1982), the court concluded that "it [was] logical" that the testimony of a witness who appeared by videotaped deposition "should be treated in the same fashion as is the testimony of any live witness at trial—namely, the testimony is displayed to the jury, which can hear and view it but not record it." Otherwise, the court explained, the witness's testimony, "alone among witnesses at a trial, could be copied and broadcast." *Id.* at 1171.

In both *McDougal* and *In re Application of American Broadcasting Cos.*, the courts grounded their analyses in the straightforward principle that recorded testimony should be treated like live testimony, rather than like video recordings of out-of-court conduct or unsworn conversations. *See McDougal*, 103 F.3d at 651 (distinguishing between "recordings of the primary conduct of witnesses or parties" and "an electronic recording of witness testimony"); *In re Application of Am. Broad. Cos., Inc.*, 537 F. Supp. at 1168, 1171, 1173 (distinguishing between "real evidence" and recorded testimony). Federal Rule of Civil Procedure 32(a)(4)(A) supports the point. *See* 8A Wright, Miller & Marcus, *Federal Practice and Procedure*, §§ 2143, 2146 (3d. ed. 2010).

1   This conclusion is reinforced by the very cases Movants cite. All of them involve
2   recordings of what the Eighth Circuit described as "recordings of the primary conduct of
3   witnesses or parties . . . . similar to documentary evidence to which the common law right of
4   public access ordinarily may apply." *See McDougal*, 103 F.3d at 657.[6] In *McDougal*, on the
5   other hand, the court made clear that video depositions played in court were "on equal footing"
6   with live testimony, and thus not judicial records implicating the common-law right of access.
7   *See id.* at 657.

8   The Court should look to the *substance* of the record in question, rather than mechanically
9   focusing on its format. The logical approach here is to treat recorded testimony, such as Mr.
10  Jobs', like live testimony. *See* Fed. R. Civ. P. 32(a)(4)(A); *see also McDougal*, 103 F.3d at 651;
11  *In re Application of Am. Broad. Cos., Inc.*, 537 F. Supp. at 1168, 1171, 1173. On the other hand,
12  it would be unreasonable and arbitrary to follow *In re Application of CBS*, 828 F.2d at 959-60,
13  and treat Mr. Jobs' videotaped testimony like a video recording of *conduct or events* admitted
14  into evidence, simply because Mr. Jobs was unavailable to testify in person at trial.[7]

15  Accordingly, the Court should conclude that the video of Mr. Jobs' testimony is not a
16  judicial record, and is not subject to the common-law right of access.

   **C.   Even if the Common-Law Right of Access Applied Here, The Presumption of Disclosure Would Be Overcome By Compelling Reasons.**

19  Even if the Court found that Mr. Jobs' testimony is a judicial record subject to the

---

[6] *See Valley Broad. Co.*, 798 F.2d at 1290-91 (video admitted into evidence, "generally record[ing] conversations occurring during the planning or commission of residential burglaries"); *United States v. Criden*, 648 F.2d 814, 815 (3d Cir. 1981) (video admitted into evidence); *United States v. Criden*, 501 F. Supp. 854, 855 (E.D. Pa. 1980) (describing the records at issue as "video tapes of meetings between the defendants and undercover F.B.I. agents"); *In re Application of Nat'l Broad. Co., Inc.*, 635 F.2d 945, 947-49 (2d Cir. 1980) (video admitted into evidence of elected officials negotiating and accepting bribes); *United States v. Mouzin*, 559 F. Supp. 463, 463-64 (C.D. Cal. 1983) (video admitted into evidence, such as "tape recordings of meetings attended by defendants and undercover government agents").

[7] *In re Application of CBS* is also distinguishable on the grounds that the videotaped deposition in that case was apparently entered into evidence. *See* 828 F.2d at 960 (referring to "a videotaped deposition introduced in evidence" and "a videotaped exhibit"). The video of Mr. Jobs' deposition was not moved into evidence. *See* Trial Tr. 1058:18-1059:22.

7
APPLE'S OPP. TO MEDIA INTERVENOR'S MTN FOR ACCESS     No. C 05-00037 YGR

common-law right of access—and it is not—the presumption favoring access would be overcome by compelling reasons that weigh against Movants' request. The common-law right of access "does not mandate disclosure in all cases." *San Jose Mercury News, Inc. v. U.S. Dist. Ct. for Dist. of N. Cal.*, 187 F.3d 1096, 1102 (9th Cir. 1999). The Court must "weigh the interests advanced by the parties in the light of the public interest and the duty of the courts." *Valley Broad. Co.*, 798 F.2d at 1294 (quoting *Nixon*, 435 U.S. at 602). Factors relevant in this balancing test "include the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Hagestad v. Tragresser*, 49 F.3d 1430, 1434 (9th Cir. 1995).

Disclosure of the video of Mr. Jobs' testimony would not promote the public interest, the duties of the court, or the public's understanding of the judicial process—it would do just the opposite. Most crucially, unfettered disclosure of Mr. Jobs' testimony based solely on the general interest of the press—or indeed *any* member of the wider public—would deter other individuals from appearing voluntarily for videotaped depositions, and undermine the operations of the courts. *See Am. Broad. Cos.*, 537 F. Supp. at 1171 n.10 (noting that if depositions recorded for use at trial could be copied and broadcast, "it seems likely that future witnesses might reasonably resist videotape recordation. Such a result would be counter to the Rule and would impede the utilization at trial of a practical instrument of modern technology").

Movants' request is simply an attempt to generate public interest for reasons wholly unrelated to the resolution of this trial. These considerations have no place in the Ninth Circuit's balancing test, and undermine the purposes of videotaped depositions. *See McDougal*, 103 F.3d at 658 ("[A]s a matter of public policy, . . . courts should avoid becoming the instrumentalities of commercial or other private pursuits[.]"); *Paisley Park Enters., Inc. v. Uptown Prods.*, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999) ("Rule 30(b)(2) . . . was not intended to be a vehicle for generating content for broadcast and other media."). Tellingly, Movants do not explain why Mr. Jobs' "tone of voice, demeanor, and appearance" is necessary for the public to evaluate his testimony, while the transcript suffices for all the other witnesses in this case—and in countless other cases throughout this district. *See* Civ. L.R. 77-3. Movants also do not explain how Mr.

Jobs' "trademark" attire advances any public understanding of this case or the judicial process. Nor can they. Mr. Jobs is the only witness in this case whose testimony the broader public would ever see. The public's view of this estimated ten-day trial—and almost ten years of litigation—would be shaped entirely by a few minutes of one witness's testimony.

## CONCLUSION

Movants are not entitled to the video of Mr. Jobs' testimony under Local Rule 77-3, the First Amendment, or the common law. Their request for access should be denied.

Date: December 9, 2014                    Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By: _/s/ Jonathan H. Sherman_____
Jonathan H. Sherman

*Attorneys for Defendant Apple Inc.*

## ATTESTATION OF FILER

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document. I have obtained Jonathan H. Sherman's concurrence to file this document on his behalf.

Date: December 9, 2014                    Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP

By: _/s/ Maxwell V. Pritt_____
Maxwell V. Pritt

*Attorneys for Defendant Apple Inc.*