ROBBINS GELLER RUDMAN
  & DOWD LLP
BONNY E. SWEENEY (176174)
ALEXANDRA S. BERNAY (211068)
CARMEN A. MEDICI (248417)
JENNIFER N. CARINGAL (286197)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
bonnys@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com
jcaringal@rgrdlaw.com
        – and –
PATRICK J. COUGHLIN (111070)
STEVEN M. JODLOWSKI (239074)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
patc@rgrdlaw.com
sjodlowski@rgrdlaw.com

Class Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTITRUST LITIGATION | Lead Case No. C-05-00037-YGR |
| | <u>CLASS ACTION</u> |
| This Document Relates To:<br><br>ALL ACTIONS. | PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL THE PRODUCTION OF COMMUNICATIONS BETWEEN APPLE AND ITS COUNSEL REGARDING THE "LEGALITY" OF HARMONY |
| | Date:       TBD<br>Time:       TBD<br>Courtroom: 1, 4th Floor<br>Judge:      Hon. Yvonne Gonzalez Rogers |

989296_2

1  TO:  ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2  PLEASE TAKE NOTICE THAT on a date and time to be determined, Plaintiffs will, in the
3  United States District Court, Northern District of California, located at 1301 Clay St., Oakland, CA,
4  Courtroom 1, 4th Floor, before the Honorable Yvonne Gonzalez Rogers, move for an order
5  compelling the production of communications between Apple and its counsel regarding the
6  "Legality" of Harmony.  This motion is based on this notice of motion and motion, the
7  accompanying memorandum of points and authorities, the trial record, and such other matters as
8  may be presented to the Court at the time of the hearing.

## I. INTRODUCTION

When a party injects an issue which in fairness requires disclosure of otherwise privileged communications, the privilege is impliedly waived. *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1162 (9th Cir. 1992). Because here Apple has manifested an intent to assert its "good faith belief" in the illegality of non-party RealNetworks' Harmony technology, Plaintiffs move to compel Apple's production of documents it has withheld as privileged that bear on its true state of mind as to RealNetworks' actions.

Apple first raised the legality of Harmony as a purported affirmative defense to Plaintiffs' Section 2 antitrust claims in its proposed jury instructions. Oct. 29, 2014 Pre-Trial Conference Hearing Tr. at 79, 159-160.[1] When the Court expressed skepticism, Apple pivoted, and stated that it planned instead to show that Apple had a subjective, "good faith belief" that RealNetworks' actions were unlawful:

> So there is a case from the Seventh Circuit which speaks about if you have a good-faith belief that the -- that the party has acted illegally, then that is not the kind of behavior that the antitrust laws are meant to protect… And there will be evidence in this case obviously that Apple did have such a good faith belief.

*Id.* at 79, 159-160.  As shown below, Apple has already partially followed through on its plan at trial, making its purported belief about Harmony's illegality a key piece of its defense.  Not only has it

---

[1]  Apple is still proffering a jury instruction on RealNetworks' purported violation of the Digital Millennium Copyright Act. Trial Tr. at 1524:19-23 (addressing Apple Proposed Instruction No. 38).

1 offered testimony on this point, Apple has also offered an exhibit which specifically references Apple's intention to seek legal advice in the days following the release of Harmony.

Having made a strategic choice to defend itself with evidence of its supposed "good faith belief" as to Harmony's legality, Apple has opened the door for full discovery of its true state of mind on that issue.[2] Apple cannot profess a good faith belief in Harmony's illegality while simultaneously withholding communications on its privilege log bearing on that belief. *Chevron*, 974 F.2d at 1162-63; *see also Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir.), *modified on reh.*, 30 F.3d 1347 (11th Cir. 1994); *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2nd Cir. 1991) (assertions as to the defendant's good faith are "inextricably intertwined" with his state of mind and require waiver of the privilege in order to determine the basis of his belief). Here, likewise, fundamental fairness demands that Plaintiffs be afforded the requested discovery.

## II.   BACKGROUND

On July 26, 2004, RealNetworks announced its Harmony technology. Trial Tr. at 657:13-18. The announcement stated that Harmony would allow users to buy DRM-protected (*i.e.*, legally downloaded) music from RealNetworks' Music Store and play it on an iPod. Plfs' Tr. Ex. 121. As the company explained, Harmony was a digital rights management "transla[tion]" system. *Id.* It allowed customers to use any online music store to purchase music for their portable device and also allowed users to transfer music downloaded from the RealPlayer Music Store to many devices. *Id.* (RealNetworks statement telling users that they can "buy music once and play it anywhere"). *Id.* at 2.

Music labels and musicians applauded RealNetworks. Trial Tr. at 670:14-18, 673:16-674:6, 778:20-779:22; Pls' Tr. Ex. 125. Larry Kenswil, president of UMG's eLabs division, said in a statement, "[u]p to now, the world of downloads has been far too close to a world where the CD you buy in one store wouldn't play on the CD player you bought in another. We applaud RealNetworks'

---

[2] Plaintiffs' motion is limited in scope. Consistent with the rule that the scope of a waiver extends only to "all communications on the same subject matter," Plaintiffs do not seek to compel Apple to produce its communications with its counsel relating to any other so-called "hacks." *Stanford v. Roche*, 237 F.R.D. 618, 625 (N.D. Cal. 2006).

efforts to help correct this situation and appeal to all people and companies in this area to work toward a world of universal interoperability." Plfs' Tr. Ex. 813 at 2.

The announcement triggered a flurry of activity at Apple, as RealNetworks threatened to cut into Apple's market share. Plfs' Tr. Ex. 153. Furious with the executives from the music labels, Apple first demanded that Universal withdraw its support for RealNetworks. Trial Tr. at 673:16-674:6, 778:20-779:22; Pls' Tr. Ex. 125. Although it had not sought any legal opinions on Harmony, it publicly labeled RealNetworks a "hacker" and implied that its conduct was illegal. *See* Ex. A, Apple Privilege Log (August 2004). In a press release, Apple stated that "[w]e are stunned that RealNetworks has adopted the tactics and ethics of a hacker to break into the iPod®, and we are investigating the implications of their actions under the DMCA and other laws." Trial Ex. 137 (Apple July 29, 2004 Statement).

Over the next few weeks, Apple obtained a number of legal opinions from its counsel as to the legality of Harmony. Ex. A (Apple Privilege Log, Entry Nos. 1, 6-19, 21-25, 52, 56-58, 79, 89, 156, and 179). That advice was solicited by and provided to many of Apple's top executives and key trial witnesses, including Eddy Cue, Phil Schiller, and Jeff Robbin. *Id*. (ECF Nos. 52 and 156). Apple refused to produce the opinions in discovery, however, objecting that they are "not relevant to the claims or defenses in this action" and protected from disclosure under the attorney-client and work-product privileges. Apple's Responses to First Amended RFP (July 20, 2009), Nos. 4, 25.

In October 2004 Apple implemented iTunes 4.7, which prevented songs downloaded through RealNetworks' Music Store from playing on the iPod. Plfs' Tr. Ex. 118. RealNetworks re-established compatibility in April 2005, issuing an update to its Harmony software. Trial Tr. at 480:20-21. Again, Apple sought advice from its counsel about Harmony. Ex. A (Apple December 7, 2009 Privilege Log, Entry No. 89 (May 4, 2005)). And again, Apple issued a statement in response to RealNetworks. The statement was similar to the statement issued in response to July 2004 Harmony, except in one critical respect: this time Apple did not call RealNetworks a "hacker" or imply that it was acting illegally. Plfs' Tr. Ex. 213. Instead, it simply stated that the Harmony technology would likely cease to work with current and future iPods. *Id.* Apple has never produced any documents explaining its change of stance as to RealNetworks.

Although it asserts in this litigation that it believed that RealNetworks' Harmony technology was illegal, Apple never sued RealNetworks, nor even sent it a cease and desist letter. ECF 877-15 at 4-7 (Jobs Dep.).

### III. APPLE MUST PRODUCE ITS COMMUNICATIONS WITH COUNSEL REGARDING HARMONY

#### A. Apple's Communications with Its Counsel Regarding Harmony Are Relevant

Under the Federal Rules of Civil Procedure, discovery is appropriate "if there is any possibility that the information sought may be relevant to a claim or defense of any party." *City of Rialto v. United States DOD*, 492 F. Supp. 2d 1193, 1202 (C.D. Cal. 2007). A party seeking to withhold discovery has a "heavy burden" of showing why discovery should not be permitted. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Sequoia Prop. Equip. Ltd. P'Ship v. United States*, 203 F.R.D. 447, 451 (E.D. Cal. 2001).

Because Apple has at trial professed a purported "good faith belief" that RealNetworks' conduct was illegal, Apple's communications with counsel on that topic are relevant to its true state of mind. *Bilzerian*, 926 F.2d at 1292 (in securities fraud case, "[defendant's] conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent").

The withheld communications also have a bearing more generally on Apple's anticompetitive intent, which is relevant to Plaintiffs' monopolization and attempted monopolization claims. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985) (evidence of intent is relevant to whether a conduct is anticompetitive under Section 2); *United States v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001) ("'knowledge of intent may help . . . to interpret facts and predict consequences'") (citing *Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238 (1918)).

#### B. Apple Has Waived Any Privilege by Injecting the Issue of Its State of Mind as to the Legality of Harmony into This Litigation

The factual issue of Apple's state of mind as to Harmony necessarily implicates the legal advice Apple received regarding Harmony, thereby placing the privileged communications at issue. *Cox*, 17 F.3d 1418-19; *Phelps v. MC Communs., Inc.*, No. 2:11-cv-00423, 2013 U.S. Dist. LEXIS

1  101965, at *58-*60 (D. Nev. July 19, 2013) (privileged communications placed at issue by asserting
2  that "[d]efendants at all times had a good faith and reasonable belief that it had compensated
3  Plaintiff in accordance with the FLSA"); *In re Fresh and Process Potatoes Antitrust Litig.*, No. 4:10-
4  md-02186-BLW-CWD, 2014 U.S. Dist. LEXIS 50828, at *37 (D. Id. Apr. 11, 2014) ("[e]ven if
5  [defendants] do not reveal the advice, [] any suggestion that [defendants] sought, obtained or relied
6  upon the advice of counsel, the privilege is waived").

7        A party need not specifically assert reliance on counsel as an affirmative defense to waive the
8  privilege.  *Cox*, 17 F.3d at 1419; *Bilzerian*, 926 F.2d at 1291-92; *In re Broadcom Corp. Sec. Litig.*,
9  No. SA CV 01-275-GLT (MLGx), 2005 U.S. Dist. LEXIS 44424, at *9-*11 (C.D. Cal. Feb. 11,
10 2005).  An implicit waiver may arise from indirect evidence where a party affirmatively raises an
11 inference of reliance on counsel for its own benefit.  *Cox*, 17 F.3d at 1419 (a party "waives the
12 privilege if it injects into the case an issue that in fairness requires an examination of otherwise
13 protected communications"); *Bilzerian*, 926 F.2d at 1292 (defendant in securities fraud case
14 implicitly waives the attorney-client privilege by testifying that he "thought his actions were legal");
15 *Broadcom*, 2005 U.S. Dist. LEXIS 44424, at *9-*11 ("Defendants have injected an issue that
16 requires examination of the attorneys' communications with defendants to see if defendants are
17 corroborated."); *Regents of the Univ. of Cal. v. Micro Therapeutics*, No. C 03 05669 JW (RS), 2007
18 U.S. Dist. LEXIS 54054, at *12 (N.D. Cal. July 13, 2007) ("courts frequently conclude that a party
19 waives the protection of the attorney-client privilege when the party voluntarily injects into suit a
20 question that turns on state of mind") (citing *Anderson v. Nixon*, 444 F. Supp. 1195, 1200 (D.D.C.
21 1978) ("A client waives his attorney-client privilege when he brings suit or raises an affirmative
22 defense that makes his intent and knowledge of the law relevant.")).

23       In *Bilzerian*, which was cited with approval by the Ninth Circuit in *Chevron*, the Second
24 Circuit found that a defendant in a securities fraud case waived the attorney-client privilege as to
25 communications with his counsel about the legality of his actions when he testified that he believed
26 in "good faith" that certain disclosures he made to the Securities and Exchange Commission were
27 legal.  *Bilzerian*, 926 F.2d at 1291.  In affirming the district court's decision, the Second Circuit held
28 that defendant's testimony put his knowledge of the law and the basis for his understanding of what

1  the law required in issue. *Id.* at 1292. His conversations with counsel about the legality of his
2  actions, the Court said, were directly relevant to his knowledge and intent. *Id.* at 1293.

3  Similarly, in *Cox*, even though a defendant disclaimed any intent to assert the advice of
4  counsel defense or rely on any privileged attorney-client communication, he was held to have
5  waived the privilege by taking the position that, at the time a certain company policy was
6  implemented, it "believed the policy to be lawful." *Cox*, 17 F.3d at 1418. This position "necessarily
7  implicates all of the information at its disposal" when the defendant acted. *Id.* The district court
8  refused to allow the defendant to present evidence tending to show it intended to comply with the
9  law, while not disclosing documents tending to show it might have known its actions did not
10 conform to the law. *Id.* In affirming the district court, the Eleventh Circuit held the party could have
11 denied *scienter* without affirmatively asserting it believed its action was legal. *Id.* at 1419. Having
12 gone beyond the mere denial to affirmatively assert good faith, however, the party injected the issue
13 of its knowledge of the law into the case and thereby waived the attorney-client privilege. *Id.*

14 In similar fashion here, Apple has injected the factual issue of its state of mind into this
15 litigation. In fact, Apple has gone further than the defendants in *Cox* and *Bilzerian*.

16 In its direct examination of Eddy Cue and Phil Schiller, Apple's counsel solicited testimony
17 that Apple believed RealNetworks had "adopted the tactics and ethics of a hacker." Trial Tr. at
18 661:20-662:3. Apple also offered into evidence and had its witnesses discuss repeatedly (and even
19 read) a July 25, 2004 e-mail between Steve Jobs, Eddy Cue, Phil Schiller and several other top
20 Apple executives, in which Mr. Cue indicated that Apple was seeking the advice of counsel. In that
21 e-mail, Mr. Cue says that, "I didn't say they legally did it. Also they may have used the DVD Jon
22 hack that has been out there. We'll be actively working with legal to review this once we get our
23 hands on it." *Compare* Trial Tr. at 692:17-20 (discussing Trial Ex. 2139) *with Bilzerian*, 926 F.2d at
24 1291 (finding implied waiver despite the fact that defendant did not disclose the existence of any
25 privileged communications). Additionally, during its examination of Dr. Kelly, Apple solicited

26
27
28

1  testimony that RealNetworks "stripped" the DRM from songs downloaded from iTunes.  12/10/14

2  Trial Tr. (Rough) at 50.[3]

3       Fairness demands that Plaintiffs be able to scratch beneath the surface of Apple's testimony

4  and obtain discovery concerning the advice Apple received in connection with Harmony.  Without

5  access to the communications, Plaintiffs cannot test and rebut Apple's testimony – a clear prejudice.

6  A "[party] cannot invoke the attorney-client in privilege to deny [] access to the very information

7  that [its opponent] must refute in order to demonstrate [its claims]."  *Chevron*, 974 F.2d at 1163;

8  *Bilzeran*, 926 F.2d at 1992 ("A defendant may not use the privilege to prejudice his opponent's case

9  or to disclose some selected communications for self-serving purposes.").  Apple having put its state

10  of mind at issue, Plaintiffs are entitled to otherwise privileged evidence which may undermine the

11  basis for Apple's belief that RealNetworks had engaged in illegal conduct.

12  **IV.    CONCLUSION**

13       For the reasons stated above, Plaintiffs' motion to compel is well-taken and should be

14  granted.

15  DATED:  December 10, 2014          Respectfully submitted,

16                                                          ROBBINS GELLER RUDMAN
                                                          & DOWD LLP

17                                                          BONNY E. SWEENEY
                                                        ALEXANDRA S. BERNAY

18                                                          CARMEN A. MEDICI
                                                        JENNIFER N. CARINGAL

19

20                                                                         s/ Bonny E. Sweeney

21                                                                       BONNY E. SWEENEY

22                                                          655 West Broadway, Suite 1900
                                                        San Diego, CA  92101

23                                                          Telephone:  619/231-1058
                                                        619/231-7423 (fax)

24

25

26

---

27  [3]  Dr. Kelly later acknowledged that he did not examine the source code for Harmony.  12/10/14
28  Trial Tr. (Rough) at 102-04.

989296_2    PLNFFS' NOM & MOTION TO COMPEL THE PRODUCTION OF COMMUNICATIONS BETWEEN
APPLE AND ITS COUNSEL REGARDING THE "LEGALITY" OF HARMONY - C-05-00037-YGR    - 7 -

| | |
|---|---|
| 1 | |
| 2 | ROBBINS GELLER RUDMAN<br>  & DOWD LLP |
| 3 | PATRICK J. COUGHLIN<br>STEVEN M. JODLOWSKI |
| 4 | Post Montgomery Center<br>One Montgomery Street, Suite 1800 |
| 5 | San Francisco, CA  94104<br>Telephone:  415/288-4545 |
|   | 415/288-4534 (fax) |
| 6 | |
| 7 | Class Counsel for Plaintiffs |
| 8 | BONNETT, FAIRBOURN, FRIEDMAN<br>  & BALINT, P.C. |
| 9 | ANDREW S. FRIEDMAN<br>FRANCIS J. BALINT, JR. |
|   | ELAINE A. RYAN |
| 10 | 2325 E. Camelback Road, Suite 300<br>Phoenix, AZ  85016 |
| 11 | Telephone:  602/274-1100<br>602/274-1199 (fax) |
| 12 | |
| 13 | THE KATRIEL LAW FIRM<br>ROY A. KATRIEL |
|   | 1101 30th Street, N.W., Suite 500 |
| 14 | Washington, DC  20007<br>Telephone:  202/625-4342 |
| 15 | 202/330-5593 (fax) |
| 16 | BRAUN LAW GROUP, P.C. |
|   | MICHAEL D. BRAUN |
| 17 | 10680 West Pico Blvd., Suite 280<br>Los Angeles, CA  90064 |
| 18 | Telephone:  310/836-6000<br>310/836-6010 (fax) |
| 19 | |
| 20 | GLANCY BINKOW & GOLDBERG LLP<br>BRIAN P. MURRAY |
|   | 122 East 42nd Street, Suite 2920 |
| 21 | New York, NY  10168<br>Telephone:  212/382-2221 |
| 22 | 212/382-3944 (fax) |
| 23 | GLANCY BINKOW & GOLDBERG LLP |
|   | MICHAEL GOLDBERG |
| 24 | 1925 Century Park East, Suite 2100<br>Los Angeles, CA  90067 |
| 25 | Telephone:  310/201-9150<br>310/201-9160 (fax) |
| 26 | |
| 27 | Additional Counsel for Plaintiffs |
| 28 | |

989296_2

PLNFFS' NOM & MOTION TO COMPEL THE PRODUCTION OF COMMUNICATIONS BETWEEN APPLE AND ITS COUNSEL REGARDING THE "LEGALITY" OF HARMONY - C-05-00037-YGR      - 8 -

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 10, 2014.

　　　　　　　　　　　　　　　　　　s/ Bonny E. Sweeney
　　　　　　　　　　　　　　　　　　BONNY E. SWEENEY

　　　　　　　　　　　　　　　　　　ROBBINS GELLER RUDMAN
　　　　　　　　　　　　　　　　　　　　& DOWD LLP
　　　　　　　　　　　　　　　　　　655 West Broadway, Suite 1900
　　　　　　　　　　　　　　　　　　San Diego, CA  92101-8498
　　　　　　　　　　　　　　　　　　Telephone:  619/231-1058
　　　　　　　　　　　　　　　　　　619/231-7423 (fax)

　　　　　　　　　　　　　　　　　　E-mail:      bonnys@rgrdlaw.com

989296_2

# Mailing Information for a Case 4:05-cv-00037-YGR The Apple iPod iTunes Anti-Trust Litigation

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amir Q Amiri**
  aamiri@jonesday.com,cdelacroix@jonesday.com

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com,LMix@rgrdlaw.com,TJohnson@rgrdlaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Thomas R. Burke**
  thomasburke@dwt.com,natashamajorko@dwt.com,sfodocket@dwt.com

- **Jennifer N. Caringal**
  JCaringal@rgrdlaw.com,Chuckm@rgrdlaw.com

- **Todd David Carpenter**
  Todd@Carpenterlawyers.com

- **Patrick J. Coughlin**
  PatC@rgrdlaw.com,SusanM@rgrdlaw.com,e_file_sd@rgrdlaw.com,SJodlowski@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **John F. Cove , Jr**
  jcove@bsfllp.com,jchavez@bsfllp.com,kmurphy@bsfllp.com,dnasca@bsfllp.com,sphan@bsfllp.com

- **Meredith Richardson Dearborn**
  mdearborn@bsfllp.com,cseki@bsfllp.com

- **Karen Leah Dunn**
  kdunn@bsfllp.com

- **Andrew S. Friedman**
  khonecker@bffb.com,rcreech@bffb.com,afriedman@bffb.com

- **Martha Lea Goodman**
  mgoodman@bsfllp.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com,winkyc@zhlaw.com

- **William A. Isaacson**
  wisaacson@bsfllp.com,jmilici@bsfllp.com

- **Suzanne Elizabeth Jaffe**
  SJAFFE@BSFLLP.COM,jchavez@bsfllp.com

- **Steven M. Jodlowski**
  sjodlowski@rgrdlaw.com

- **Roy Arie Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com

- **Carmen Anthony Medici**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,mlandsborough@jonesday.com,pwalter@jonesday.com

- **Brian P. Murray**
  bmurray@glancylaw.com

- **Maxwell Vaughn Pritt**
  mpritt@bsfllp.com,jchavez@bsfllp.com,irivera@bsfllp.com

- **Christopher G. Renner**
  crenner@bsfllp.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Kieran Paul Ringgenberg**
  kringgenberg@bsfllp.com,gaulkh@bsfllp.com,ftang@BSFLLP.com,cduong@bsfllp.com,dnasca@bsfllp.com,sphan@bsfllp.com,irivera@BSFLLP.com

- **Elaine A. Ryan**
  eryan@bffb.com,nserden@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Michael Tedder Scott**
  mike.scott@dlapiper.com

- **Jonathan H Sherman**
  jsherman@bsfllp.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **Bonny E. Sweeney**
  bonnys@rgrdlaw.com,slandry@rgrdlaw.com,E_file_sd@rgrdlaw.com,ckopko@rgrdlaw.com

- **Helen I. Zeldes**
  helenz@zhlaw.com,winkyc@zhlaw.com,aarono@zhlaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`