ROBBINS GELLER RUDMAN
  & DOWD LLP
BONNY E. SWEENEY (176174)
ALEXANDRA S. BERNAY (211068)
CARMEN A. MEDICI (248417)
JENNIFER N. CARINGAL (286197)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
bonnys@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com
jcaringal@rgrdlaw.com
    – and –
PATRICK J. COUGHLIN (111070)
STEVEN M. JODLOWSKI (239074)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
patc@rgrdlaw.com
sjodlowski@rgrdlaw.com

Class Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE APPLE IPOD ITUNES ANTITRUST LITIGATION | ) ) ) |
| This Document Relates To: | ) ) ) |
| ALL ACTIONS. | ) ) ) ) |

Lead Case No. C-05-00037-YGR

CLASS ACTION

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL THE PRODUCTION OF COMMUNICATIONS BETWEEN APPLE AND ITS COUNSEL REGARDING THE "LEGALITY" OF HARMONY

Date:      TBD
Time:      TBD
Courtroom:  1, 4th Floor
Judge:    Hon. Yvonne Gonzalez Rogers

989296_2

1    TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2        PLEASE TAKE NOTICE THAT on a date and time to be determined, Plaintiffs will, in the

3    United States District Court, Northern District of California, located at 1301 Clay St., Oakland, CA,

4    Courtroom 1, 4th Floor, before the Honorable Yvonne Gonzalez Rogers, move for an order

5    compelling the production of communications between Apple and its counsel regarding the

6    "Legality" of Harmony.   This motion is based on this notice of motion and motion, the

7    accompanying memorandum of points and authorities, the trial record, and such other matters as

8    may be presented to the Court at the time of the hearing.

9    **I.    INTRODUCTION**

10        When a party injects an issue which in fairness requires disclosure of otherwise privileged

11    communications, the privilege is impliedly waived.  *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156,

12    1162 (9th Cir. 1992).  Because here Apple has manifested an intent to assert its "good faith belief" in

13    the illegality of non-party RealNetworks' Harmony technology, Plaintiffs move to compel Apple's

14    production of documents it has withheld as privileged that bear on its true state of mind as to

15    RealNetworks' actions.

16        Apple first raised the legality of Harmony as a purported affirmative defense to Plaintiffs'

17    Section 2 antitrust claims in its proposed jury instructions.  Oct. 29, 2014 Pre-Trial Conference

18    Hearing Tr. at 79, 159-160.[1]  When the Court expressed skepticism, Apple pivoted, and stated that it

19    planned instead to show that Apple had a subjective, "good faith belief" that RealNetworks' actions

20    were unlawful:

21        So there is a case from the Seventh Circuit which speaks about if you have a good-
         faith belief that the -- that the party has acted illegally, then that is not the kind of
22        behavior that the antitrust laws are meant to protect… And there will be evidence in
         this case obviously that Apple did have such a good faith belief.

23

24    *Id.* at 79, 159-160.  As shown below, Apple has already partially followed through on its plan at trial,

25    making its purported belief about Harmony's illegality a key piece of its defense.  Not only has it

26

27    _____

[1]    Apple is still proffering a jury instruction on RealNetworks' purported violation of the Digital
28    Millennium Copyright Act.  Trial Tr. at 1524:19-23 (addressing Apple Proposed Instruction No. 38).

1    offered testimony on this point, Apple has also offered an exhibit which specifically references

2    Apple's intention to seek legal advice in the days following the release of Harmony.

3        Having made a strategic choice to defend itself with evidence of its supposed "good faith

4    belief" as to Harmony's legality, Apple has opened the door for full discovery of its true state of

5    mind on that issue.[2]   Apple cannot profess a good faith belief in Harmony's illegality while

6    simultaneously withholding communications on its privilege log bearing on that belief.  *Chevron*,

7    974 F.2d at 1162-63; *see also Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir.),

8    *modified on reh.*, 30 F.3d 1347 (11th Cir. 1994); *United States v. Bilzerian*, 926 F.2d 1285, 1294

9    (2nd Cir. 1991)  (assertions as to the defendant's good faith are "inextricably intertwined" with his

10   state of mind and require waiver of the privilege in order to determine the basis of his belief).  Here,

11   likewise, fundamental fairness demands that Plaintiffs be afforded the requested discovery.

12   **II.    BACKGROUND**

13       On July 26, 2004, RealNetworks announced its Harmony technology.  Trial Tr. at 657:13-18.

14   The announcement stated that Harmony would allow users to buy DRM-protected (*i.e.*, legally

15   downloaded) music from RealNetworks' Music Store and play it on an iPod.  Plfs' Tr. Ex. 121.  As

16   the company explained, Harmony was a digital rights management "transla[tion]" system.  *Id.*  It

17   allowed customers to use any online music store to purchase music for their portable device and also

18   allowed users to transfer music downloaded from the RealPlayer Music Store to many devices.  *Id.*

19   (RealNetworks statement telling users that they can "buy music once and play it anywhere").

20   *Id.* at 2.

21       Music labels and musicians applauded RealNetworks.  Trial Tr. at 670:14-18, 673:16-674:6,

22   778:20-779:22; Pls' Tr. Ex. 125.  Larry Kenswil, president of UMG's eLabs division, said in a

23   statement, "[u]p to now, the world of downloads has been far too close to a world where the CD you

24   buy in one store wouldn't play on the CD player you bought in another.  We applaud RealNetworks'

25

26   _____
[2]    Plaintiffs' motion is limited in scope.  Consistent with the rule that the scope of a waiver extends

27   only to "all communications on the same subject matter," Plaintiffs do not seek to compel Apple to
     produce its communications with its counsel relating to any other so-called "hacks."  *Stanford v.*

28   *Roche*, 237 F.R.D. 618, 625 (N.D. Cal. 2006).

PLNFFS' NOM & MOTION TO COMPEL THE PRODUCTION OF COMMUNICATIONS BETWEEN
APPLE AND ITS COUNSEL REGARDING THE "LEGALITY" OF HARMONY - C-05-00037-YGR        - 2 -

1   efforts to help correct this situation and appeal to all people and companies in this area to work

2   toward a world of universal interoperability." Plfs' Tr. Ex. 813 at 2.

3       The announcement triggered a flurry of activity at Apple, as RealNetworks threatened to cut

4   into Apple's market share. Plfs' Tr. Ex. 153. Furious with the executives from the music labels,

5   Apple first demanded that Universal withdraw its support for RealNetworks. Trial Tr. at 673:16-

6   674:6, 778:20-779:22; Pls' Tr. Ex. 125. Although it had not sought any legal opinions on Harmony,

7   it publicly labeled RealNetworks a "hacker" and implied that its conduct was illegal. *See* Ex. A,

8   Apple Privilege Log (August 2004). In a press release, Apple stated that "[w]e are stunned that

9   RealNetworks has adopted the tactics and ethics of a hacker to break into the iPod®, and we are

10  investigating the implications of their actions under the DMCA and other laws." Trial Ex. 137

11  (Apple July 29, 2004 Statement).

12      Over the next few weeks, Apple obtained a number of legal opinions from its counsel as to

13  the legality of Harmony. Ex. A (Apple Privilege Log, Entry Nos. 1, 6-19, 21-25, 52, 56-58, 79, 89,

14  156, and 179). That advice was solicited by and provided to many of Apple's top executives and

15  key trial witnesses, including Eddy Cue, Phil Schiller, and Jeff Robbin. *Id*. (ECF Nos. 52 and 156).

16  Apple refused to produce the opinions in discovery, however, objecting that they are "not relevant to

17  the claims or defenses in this action" and protected from disclosure under the attorney-client and

18  work-product privileges. Apple's Responses to First Amended RFP (July 20, 2009), Nos. 4, 25.

19      In October 2004 Apple implemented iTunes 4.7, which prevented songs downloaded through

20  RealNetworks' Music Store from playing on the iPod. Plfs' Tr. Ex. 118. RealNetworks re-

21  established compatibility in April 2005, issuing an update to its Harmony software. Trial Tr. at

22  480:20-21. Again, Apple sought advice from its counsel about Harmony. Ex. A (Apple December

23  7, 2009 Privilege Log, Entry No. 89 (May 4, 2005)). And again, Apple issued a statement in

24  response to RealNetworks. The statement was similar to the statement issued in response to July

25  2004 Harmony, except in one critical respect: this time Apple did not call RealNetworks a "hacker"

26  or imply that it was acting illegally. Plfs' Tr. Ex. 213. Instead, it simply stated that the Harmony

27  technology would likely cease to work with current and future iPods. *Id.* Apple has never produced

28  any documents explaining its change of stance as to RealNetworks.

1    Although it asserts in this litigation that it believed that RealNetworks' Harmony technology

2    was illegal, Apple never sued RealNetworks, nor even sent it a cease and desist letter.  ECF 877-15

3    at 4-7 (Jobs Dep.).

4    **III.    APPLE MUST PRODUCE ITS COMMUNICATIONS WITH COUNSEL
         REGARDING HARMONY**

5

6        **A.    Apple's Communications with Its Counsel Regarding Harmony Are
             Relevant**

7        Under the Federal Rules of Civil Procedure, discovery is appropriate "if there is any

8    possibility that the information sought may be relevant to a claim or defense of any party."  *City of*

9    *Rialto v. United States DOD*, 492 F. Supp. 2d 1193, 1202 (C.D. Cal. 2007).  A party seeking to

10   withhold discovery has a "heavy burden" of showing why discovery should not be permitted.

11   *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Sequoia Prop. Equip. Ltd. P'Ship v.*

12   *United States*, 203 F.R.D. 447, 451 (E.D. Cal. 2001).

13       Because Apple has at trial professed a purported "good faith belief" that RealNetworks'

14   conduct was illegal, Apple's communications with counsel on that topic are relevant to its true state

15   of mind.  *Bilzerian*, 926 F.2d at 1292 (in securities fraud case, "[defendant's] conversations with

16   counsel regarding the legality of his schemes would have been directly relevant in determining the

17   extent of his knowledge and, as a result, his intent").

18       The withheld communications also have a bearing more generally on Apple's anticompetitive

19   intent, which is relevant to Plaintiffs' monopolization and attempted monopolization claims.  *Aspen*

20   *Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985) (evidence of intent is relevant

21   to whether a conduct is anticompetitive under Section 2); *United States v. Microsoft Corp.*, 253 F.3d

22   34, 59 (D.C. Cir. 2001) ("'knowledge of intent may help . . . to interpret facts and predict

23   consequences'") (citing *Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238 (1918)).

24       **B.    Apple Has Waived Any Privilege by Injecting the Issue of Its State of
             Mind as to the Legality of Harmony into This Litigation**

25

26       The factual issue of Apple's state of mind as to Harmony necessarily implicates the legal

27   advice Apple received regarding Harmony, thereby placing the privileged communications at issue.

28   *Cox*, 17 F.3d 1418-19; *Phelps v. MC Communs., Inc.*, No. 2:11-cv-00423, 2013 U.S. Dist. LEXIS

989296_2

PLNFFS' NOM & MOTION TO COMPEL THE PRODUCTION OF COMMUNICATIONS BETWEEN
APPLE AND ITS COUNSEL REGARDING THE "LEGALITY" OF HARMONY - C-05-00037-YGR          - 4 -

1    101965, at *58-*60 (D. Nev. July 19, 2013) (privileged communications placed at issue by asserting

2    that "[d]efendants at all times had a good faith and reasonable belief that it had compensated

3    Plaintiff in accordance with the FLSA"); *In re Fresh and Process Potatoes Antitrust Litig.*, No. 4:10-

4    md-02186-BLW-CWD, 2014 U.S. Dist. LEXIS 50828, at *37 (D. Id. Apr. 11, 2014) ("[e]ven if

5    [defendants] do not reveal the advice, [] any suggestion that [defendants] sought, obtained or relied

6    upon the advice of counsel, the privilege is waived").

7         A party need not specifically assert reliance on counsel as an affirmative defense to waive the

8    privilege. *Cox*, 17 F.3d at 1419; *Bilzerian*, 926 F.2d at 1291-92; *In re Broadcom Corp. Sec. Litig.*,

9    No. SA CV 01-275-GLT (MLGx), 2005 U.S. Dist. LEXIS 44424, at *9-*11 (C.D. Cal. Feb. 11,

10   2005). An implicit waiver may arise from indirect evidence where a party affirmatively raises an

11   inference of reliance on counsel for its own benefit. *Cox*, 17 F.3d at 1419 (a party "waives the

12   privilege if it injects into the case an issue that in fairness requires an examination of otherwise

13   protected communications"); *Bilzerian*, 926 F.2d at 1292 (defendant in securities fraud case

14   implicitly waives the attorney-client privilege by testifying that he "thought his actions were legal");

15   *Broadcom*, 2005 U.S. Dist. LEXIS 44424, at *9-*11 ("Defendants have injected an issue that

16   requires examination of the attorneys' communications with defendants to see if defendants are

17   corroborated."); *Regents of the Univ. of Cal. v. Micro Therapeutics*, No. C 03 05669 JW (RS), 2007

18   U.S. Dist. LEXIS 54054, at *12 (N.D. Cal. July 13, 2007) ("courts frequently conclude that a party

19   waives the protection of the attorney-client privilege when the party voluntarily injects into suit a

20   question that turns on state of mind") (citing *Anderson v. Nixon*, 444 F. Supp. 1195, 1200 (D.D.C.

21   1978) ("A client waives his attorney-client privilege when he brings suit or raises an affirmative

22   defense that makes his intent and knowledge of the law relevant.")).

23        In *Bilzerian*, which was cited with approval by the Ninth Circuit in *Chevron*, the Second

24   Circuit found that a defendant in a securities fraud case waived the attorney-client privilege as to

25   communications with his counsel about the legality of his actions when he testified that he believed

26   in "good faith" that certain disclosures he made to the Securities and Exchange Commission were

27   legal. *Bilzerian*, 926 F.2d at 1291. In affirming the district court's decision, the Second Circuit held

28   that defendant's testimony put his knowledge of the law and the basis for his understanding of what

1  the law required in issue.  *Id.* at 1292.  His conversations with counsel about the legality of his

2  actions, the Court said, were directly relevant to his knowledge and intent.  *Id*. at 1293.

3       Similarly, in *Cox*, even though a defendant disclaimed any intent to assert the advice of

4  counsel defense or rely on any privileged attorney-client communication, he was held to have

5  waived the privilege by taking the position that, at the time a certain company policy was

6  implemented, it "believed the policy to be lawful."  *Cox*, 17 F.3d at 1418.  This position "necessarily

7  implicates all of the information at its disposal" when the defendant acted.  *Id*.  The district court

8  refused to allow the defendant to present evidence tending to show it intended to comply with the

9  law, while not disclosing documents tending to show it might have known its actions did not

10  conform to the law.  *Id*.  In affirming the district court, the Eleventh Circuit held the party could have

11  denied *scienter* without affirmatively asserting it believed its action was legal.  *Id*. at 1419.  Having

12  gone beyond the mere denial to affirmatively assert good faith, however, the party injected the issue

13  of its knowledge of the law into the case and thereby waived the attorney-client privilege.  *Id*.

14       In similar fashion here, Apple has injected the factual issue of its state of mind into this

15  litigation.  In fact, Apple has gone further than the defendants in *Cox* and *Bilzerian*.

16       In its direct examination of Eddy Cue and Phil Schiller, Apple's counsel solicited testimony

17  that Apple believed RealNetworks had "adopted the tactics and ethics of a hacker."  Trial Tr. at

18  661:20-662:3.  Apple also offered into evidence and had its witnesses discuss repeatedly (and even

19  read) a July 25, 2004 e-mail between Steve Jobs, Eddy Cue, Phil Schiller and several other top

20  Apple executives, in which Mr. Cue indicated that Apple was seeking the advice of counsel.  In that

21  e-mail, Mr. Cue says that, "I didn't say they legally did it.  Also they may have used the DVD Jon

22  hack that has been out there.  We'll be actively working with legal to review this once we get our

23  hands on it."  *Compare* Trial Tr. at 692:17-20 (discussing Trial Ex. 2139) *with Bilzerian*, 926 F.2d at

24  1291 (finding implied waiver despite the fact that defendant did not disclose the existence of any

25  privileged communications).  Additionally, during its examination of Dr. Kelly, Apple solicited

26

27

28

PLNFFS' NOM & MOTION TO COMPEL THE PRODUCTION OF COMMUNICATIONS BETWEEN
APPLE AND ITS COUNSEL REGARDING THE "LEGALITY" OF HARMONY - C-05-00037-YGR      - 6 -

1   testimony that RealNetworks "stripped" the DRM from songs downloaded from iTunes.  12/10/14

2   Trial Tr. (Rough) at 50.[3]

3        Fairness demands that Plaintiffs be able to scratch beneath the surface of Apple's testimony

4   and obtain discovery concerning the advice Apple received in connection with Harmony.  Without

5   access to the communications, Plaintiffs cannot test and rebut Apple's testimony – a clear prejudice.

6   A "[party] cannot invoke the attorney-client in privilege to deny [] access to the very information

7   that [its opponent] must refute in order to demonstrate [its claims]."  *Chevron*, 974 F.2d at 1163;

8   *Bilzeran*, 926 F.2d at 1992 ("A defendant may not use the privilege to prejudice his opponent's case

9   or to disclose some selected communications for self-serving purposes.").  Apple having put its state

10  of mind at issue, Plaintiffs are entitled to otherwise privileged evidence which may undermine the

11  basis for Apple's belief that RealNetworks had engaged in illegal conduct.

12  **IV.    CONCLUSION**

13       For the reasons stated above, Plaintiffs' motion to compel is well-taken and should be

14  granted.

15  DATED:  December 10, 2014                Respectfully submitted,

16                                          ROBBINS GELLER RUDMAN
                                             & DOWD LLP
17                                          BONNY E. SWEENEY
                                            ALEXANDRA S. BERNAY
18                                          CARMEN A. MEDICI
                                            JENNIFER N. CARINGAL
19

20                                               s/ Bonny E. Sweeney
21                                          BONNY E. SWEENEY

22                                          655 West Broadway, Suite 1900
                                            San Diego, CA  92101
23                                          Telephone:  619/231-1058
                                            619/231-7423 (fax)
24

25

26

---

27  [3]    Dr. Kelly later acknowledged that he did not examine the source code for Harmony.  12/10/14

28  Trial Tr. (Rough) at 102-04.

989296_2

PLNFFS' NOM & MOTION TO COMPEL THE PRODUCTION OF COMMUNICATIONS BETWEEN
APPLE AND ITS COUNSEL REGARDING THE "LEGALITY" OF HARMONY - C-05-00037-YGR        - 7 -

1

2  ROBBINS GELLER RUDMAN
   & DOWD LLP
3  PATRICK J. COUGHLIN
STEVEN M. JODLOWSKI
4  Post Montgomery Center
One Montgomery Street, Suite 1800
5  San Francisco, CA  94104
Telephone:  415/288-4545
6  415/288-4534 (fax)

7  Class Counsel for Plaintiffs

8  BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
9  ANDREW S. FRIEDMAN
FRANCIS J. BALINT, JR.
10  ELAINE A. RYAN
2325 E. Camelback Road, Suite 300
11  Phoenix, AZ  85016
Telephone:  602/274-1100
12  602/274-1199 (fax)

13  THE KATRIEL LAW FIRM
ROY A. KATRIEL
14  1101 30th Street, N.W., Suite 500
Washington, DC  20007
15  Telephone:  202/625-4342
202/330-5593 (fax)

16  BRAUN LAW GROUP, P.C.
MICHAEL D. BRAUN
17  10680 West Pico Blvd., Suite 280
Los Angeles, CA  90064
18  Telephone:  310/836-6000
310/836-6010 (fax)

19  GLANCY BINKOW & GOLDBERG LLP
20  BRIAN P. MURRAY
122 East 42nd Street, Suite 2920
21  New York, NY  10168
Telephone:  212/382-2221
22  212/382-3944 (fax)

23  GLANCY BINKOW & GOLDBERG LLP
MICHAEL GOLDBERG
24  1925 Century Park East, Suite 2100
Los Angeles, CA  90067
25  Telephone:  310/201-9150
310/201-9160 (fax)

26

27  Additional Counsel for Plaintiffs

28

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 10, 2014.

                                   s/ Bonny E. Sweeney
                                   BONNY E. SWEENEY

                                   ROBBINS GELLER RUDMAN
                                       & DOWD LLP
                                   655 West Broadway, Suite 1900
                                   San Diego, CA  92101-8498
                                   Telephone:  619/231-1058
                                   619/231-7423 (fax)

                                   E-mail:        bonnys@rgrdlaw.com

989296_2

## Mailing Information for a Case 4:05-cv-00037-YGR The Apple iPod iTunes Anti-Trust Litigation

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amir Q Amiri**
  aamiri@jonesday.com,cdelacroix@jonesday.com

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com,LMix@rgrdlaw.com,TJohnson@rgrdlaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Thomas R. Burke**
  thomasburke@dwt.com,natashamajorko@dwt.com,sfodocket@dwt.com

- **Jennifer N. Caringal**
  JCaringal@rgrdlaw.com,Chuckm@rgrdlaw.com

- **Todd David Carpenter**
  Todd@Carpenterlawyers.com

- **Patrick J. Coughlin**
  PatC@rgrdlaw.com,SusanM@rgrdlaw.com,e_file_sd@rgrdlaw.com,SJodlowski@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **John F. Cove , Jr**
  jcove@bsfllp.com,jchavez@bsfllp.com,kmurphy@bsfllp.com,dnasca@bsfllp.com,sphan@bsfllp.com

- **Meredith Richardson Dearborn**
  mdearborn@bsfllp.com,cseki@bsfllp.com

- **Karen Leah Dunn**
  kdunn@bsfllp.com

- **Andrew S. Friedman**
  khonecker@bffb.com,rcreech@bffb.com,afriedman@bffb.com

- **Martha Lea Goodman**
  mgoodman@bsfllp.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com,winkyc@zhlaw.com

- **William A. Isaacson**
  wisaacson@bsfllp.com,jmilici@bsfllp.com

- **Suzanne Elizabeth Jaffe**
  SJAFFE@BSFLLP.COM,jchavez@bsfllp.com

- **Steven M. Jodlowski**
  sjodlowski@rgrdlaw.com

- **Roy Arie Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com

- **Carmen Anthony Medici**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,mlandsborough@jonesday.com,pwalter@jonesday.com

- **Brian P. Murray**
  bmurray@glancylaw.com

- **Maxwell Vaughn Pritt**
  mpritt@bsfllp.com,jchavez@bsfllp.com,irivera@bsfllp.com

- **Christopher G. Renner**
  crenner@bsfllp.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Kieran Paul Ringgenberg**
  kringgenberg@bsfllp.com,gaulkh@bsfllp.com,ftang@BSFLLP.com,cduong@bsfllp.com,dnasca@bsfllp.com,span@bsfllp.com,irivera@BSFLLP.com

- **Elaine A. Ryan**
  eryan@bffb.com,nserden@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Michael Tedder Scott**
  mike.scott@dlapiper.com

- **Jonathan H Sherman**
  jsherman@bsfllp.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **Bonny E. Sweeney**
  bonnys@rgrdlaw.com,slandry@rgrdlaw.com,E_file_sd@rgrdlaw.com,ckopko@rgrdlaw.com

- **Helen I. Zeldes**
  helenz@zhlaw.com,winkyc@zhlaw.com,aarono@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`