**Robbins Geller Rudman & Dowd LLP**

| | | | | |
|---|---|---|---|---|
| Atlanta | Chicago | Melville | Philadelphia | San Francisco |
| Boca Raton | Manhattan | Nashville | San Diego | Washington, DC |

Bonny E. Sweeney
bonnys@rgrdlaw.com

December 10, 2014

<u>VIA ECF</u>

The Honorable Judge Yvonne Gonzalez Rogers
United States District Court
   Northern District of California
Oakland Courthouse
1301 Clay Street, Courtroom 1, 4th Floor
Oakland, CA 94612

      Re:   *The Apple iPod iTunes Antitrust Litigation*,
             No. C-05-0037-YGR

Dear Judge Gonzalez Rogers:

      I write to follow up on the parties' arguments at the December 9, 2014 hearing. During the hearing, the Court invited plaintiffs to submit a supplemental submission on several issues concerning the currently contemplated jury instructions. These issues are addressed below.

### I.   Proposed Instruction Regarding the Substitution of Barbara Bennett as Class Representative

      After the hearing, plaintiffs had an opportunity to review Apple's proposal regarding the substitution of Barbara Bennett as a class representative. Plaintiffs believe Apple's proposal contains unnecessary and duplicative information already provided to the jury. Because the parties have been unable to agree on an instruction, plaintiffs propose the following instruction:

**Class Representative**

> Because her iPod purchase was made on a business card, Marianna Rosen has been replaced as the Class Representative by Barbara Bennett. The Class remains certified. As the Court makes Class certification decisions, this is not a decision that concerns your deliberations.

## II. Proposed Instruction Regarding the Deposition of Steve Jobs

At the hearing, plaintiffs asked the Court to submit a supplemental instruction to the jury concerning the scope of Mr. Jobs' deposition. Plaintiffs' request was prompted by a factually incorrect and prejudicial statement by Apple's counsel during opening statements. In opening statements, Apple's counsel told the jury that "plaintiffs are going to show you a short video of Steve Jobs . . . . But will he be asked any questions about 7.0 and 7.4. The answer is no." Trial Tr. at 288:25-289:3.

As we explained to the Court, plaintiffs were prevented from questioning Mr. Jobs about the iTunes 7.0 and 7.4 updates because, pursuant to Apple's request, the Court limited the scope of the deposition to three discrete topics: (i) the July 26, 2004 RealNetworks announcement; (ii) the July 29, 2004 Apple Announcement in response thereto; and (iii) Apple's software updates in October 2004 (iTunes 4.7). *See* ECF 543 (March 21, 2011 Order). When plaintiffs asked the Court to compel Mr. Jobs to appear for deposition, plaintiffs did not limit their request in time or scope. Nor did plaintiffs limit their request to updates prior to iTunes 7.0 and 7.4. ECF 404 (Plaintiffs' Opp. to Mot. for Protective Order). To the contrary, plaintiffs argued that Mr. Jobs had unique knowledge of several key events in late 2006 and early 2007 surrounding the issuance and activation of iTunes 7.0 and 7.4, and plaintiffs sought testimony on these topics. ECF 483, Ex. 2 (filed under seal) (March 2007 e-mail from Universal Music to Steve Jobs regarding industry move to DRM-free); Ex. 3 (January 2007 e-mail); Exs. 5-6 (March 2007 e-mails). Nevertheless, the Court sustained Apple's objections to plaintiffs' request, except with respect to a few events leading up to the release of iTunes 4.7 in October 2004. In fact, if Apple had its way, plaintiffs would not have been able to depose Mr. Jobs at all. *See* ECF 396 (Apple Motion for Protective Order); ECF 419 (Apple's Reply in Support of Motion for Protective Order Preventing the Deposition of Steve Jobs).

Accordingly, to cure any prejudice caused by Apple's counsel's comments regarding the scope of Mr. Jobs' deposition, plaintiffs propose the following instruction:

### Deposition of Steve Jobs

In opening statements, Apple's counsel stated that you would be shown the videotaped deposition of Mr. Jobs. Apple's counsel further stated that during the deposition plaintiffs' counsel did not ask Mr. Jobs any questions about the iTunes 7.0 and 7.4 updates. Plaintiffs did not question Mr. Jobs about the iTunes 7.0 and 7.4 updates because the Court had, pursuant to Apple's request, entered an order limiting the subject of the deposition.

### III. Proposed Instruction Regarding Genuine Product Improvements

At the hearing, the Court indicated that it would give further thought to the instruction on "Genuine Product Improvement and Legitimate Business Purposes." Plaintiffs respectfully reiterate three concerns regarding the instruction.

#### A. KVC/DVC

First, the description of plaintiffs' claims in the currently contemplated instruction is overbroad and improperly endorses Apple's defense. At the hearing, the Court suggested that such an instruction was appropriate because it believed that Dr. Noll's analysis was based on the entirety of iTunes 7.0 and 7.4. This is not the case.

Dr. Noll repeatedly testified that his analysis was focused on the KVC and DVC, which he considered separable components of iTunes 7.0 and 7.4. When asked to describe his analysis, Dr. Noll explained:

> The issue there is: was there anything about that component of the software that produced value other than just disabling Harmony? And like Dr. Martin testified about that and some Apple witnesses have testified about that. That is the crucial issue. If there is no gained benefit from the KVC and DVC code that disabled Harmony, then the maintenance and enhancement of monopoly power with that software is anticompetitive because it didn't benefit consumers.

Trial Tr. at 1166:13-1167:3.

On at least two occasions Apple's counsel asked Dr. Noll whether his analysis was predicated on the entirety of iTunes 7.0 and 7.4, or whether it was predicated specifically on the KVC and DVC. Each time, Dr. Noll made clear that his opinions on anticompetitive conduct are predicated on KVC and DVC – and not the other features of 7.0:

> Q. Okay. *So under the standard that you're using here*, do I have it right that if 7.0 changed the codes and that disabled Harmony and that provided any benefit to consumers, you would not have an opinion about whether it was anticompetitive; is that correct?
>
> A. *When you say "changed the code," it has to be just that part of the code that has to do with KVC and DVC.*
>
> Q. Well –

> A. *Other things in 7.0 that had nothing to do with disabling Harmony would not have any relevance to this.*

Trial Tr. at 1218:19-1219:3 (emphasis added).

Apparently unsatisfied with Dr. Noll's responses, Apple again pressed Dr. Noll on this issue the next morning:

> Q. And all you talked about at your deposition was 7.0, not KVC or DVC, correct?
>
> A. And that's right. I used the term "7" – like I have in my testimony here, I used the term "7.0" to refer to these *particular features. It's not the entire software package. They're -- they're separable, the KVC, DVC components are separable from the rest of the software.*

Trial Tr. at 1332:24-1333:5 (emphasis added); *id*. at 1217:6-11 ("Q. Okay. And you don't know, based on your background, what components of 7.0 disabled harmony; is that correct? A. Well, I do know what they are. Yes. It's the KVC and the DVC.").

Put simply, Dr. Noll's colloquial use of the terms iTunes 7.0 and 7.4 does not mean that his analysis is based on *all* of the features of iTunes 7.0 and 7.4.

### B. Introductory Paragraph

Second, the first paragraph of the currently contemplated instruction likewise suggests that plaintiffs' claims are predicated on all of the features of iTunes 7.0 and 7.4. Plaintiffs propose the following as a replacement for the first paragraph:

> Plaintiffs contend that the issuance and activation of the software and firmware changes made to its iTunes and iPods through iTunes 7.0 and 7.4 (known as the Keybag Verification Code or KVC and Database Verification Code or DVC) constitute anticompetitive conduct because they excluded competitors from the market but provided no new benefit to consumers, and were not a genuine product improvement. Apple denies that these product design changes were anticompetitive.

### C. Pretext

Third, the currently contemplated draft instructions on maintenance of monopoly power and product improvements seemingly segment the single issue of pretext into three separate elements of proof.

In the instruction on willful maintenance of monopoly power, the jury is explicitly instructed that it must determine whether Apple's conduct was anticompetitive or legitimate business conduct. In the instruction that follows, on product improvements, the jury is instructed that it must in addition determine whether 7.0 and 7.4 are genuine product improvements, and then, even if they are, furthermore determine whether Apple had a legitimate business reason for using the updates as part of the analysis of the third element (*i.e.*, willful misconduct).

Under the jury instructions as drafted, therefore, to determine willful misconduct the jury may well conclude that plaintiffs must prove ***pretext three times***: (1) to show willful misconduct; (2) to rebut Apple's genuine product improvement contention; and (3) to rebut Apple's legitimate business reasons contention.

To avoid this unfairness, Plaintiffs respectfully request that the instruction on product improvements be revised to ***replace the following language***:

> You will be asked at the outset of your deliberations to determine specifically whether the updates were genuine product improvements. If you find that they were, then Apple cannot be found liable.
>
> If you find they were not, then you must still determine whether Apple had legitimate business reasons for issuing the iTunes 7.0 and iTunes 7.4 updates and related technology as part of the analysis of the third element. If you find that Apple did have legitimate business reasons for its conduct, then you must find that no anticompetitive conduct exists, even if Apple had other reasons, and you must find for Apple.

***with this language***:

> If you find pretextual Apple's contentions that the updates were genuine product improvements and that it had legitimate business reasons for them, then you may find Apple's conduct anticompetitive.

      This proposed language fits the context of the immediate preceding and following sentences of the instruction on product improvements.

      Thank you for your attention to this request.

                                      Respectfully submitted,

                                      BONNY E. SWEENEY
                                      Counsel for Plaintiffs

BES:sll

cc:      Counsel of Record (via ECF)

CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 10, 2014.

                                                s/ Bonny E. Sweeney
                                                BONNY E. SWEENEY

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:       bonnys@rgrdlaw.com

**Mailing Information for a Case 4:05-cv-00037-YGR The Apple iPod iTunes Anti-Trust Litigation**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amir Q Amiri**
  aamiri@jonesday.com,cdelacroix@jonesday.com

- **Francis Joseph Balint , Jr**
  fbalint@bffb.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com,LMix@rgrdlaw.com,TJohnson@rgrdlaw.com

- **Michael D Braun**
  service@braunlawgroup.com

- **Michael D. Braun**
  service@braunlawgroup.com,clc@braunlawgroup.com

- **Thomas R. Burke**
  thomasburke@dwt.com,natashamajorko@dwt.com,sfodocket@dwt.com

- **Jennifer N. Caringal**
  JCaringal@rgrdlaw.com,Chuckm@rgrdlaw.com

- **Todd David Carpenter**
  Todd@Carpenterlawyers.com

- **Patrick J. Coughlin**
  PatC@rgrdlaw.com,SusanM@rgrdlaw.com,e_file_sd@rgrdlaw.com,SJodlowski@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **John F. Cove , Jr**
  jcove@bsfllp.com,jchavez@bsfllp.com,kmurphy@bsfllp.com,dnasca@bsfllp.com,sphan@bsfllp.com

- **Meredith Richardson Dearborn**
  mdearborn@bsfllp.com,cseki@bsfllp.com

- **Karen Leah Dunn**
  kdunn@bsfllp.com

- **Andrew S. Friedman**
  khonecker@bffb.com,rcreech@bffb.com,afriedman@bffb.com

- **Martha Lea Goodman**
  mgoodman@bsfllp.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,judyj@zhlaw.com,winkyc@zhlaw.com

- **William A. Isaacson**
  wisaacson@bsfllp.com,jmilici@bsfllp.com

- **Suzanne Elizabeth Jaffe**
  SJAFFE@BSFLLP.COM,jchavez@bsfllp.com

- **Steven M. Jodlowski**
  sjodlowski@rgrdlaw.com

- **Roy Arie Katriel**
  rak@katriellaw.com,rk618@aol.com

- **Thomas J. Kennedy**
  tkennedy@murrayfrank.com

- **David Craig Kiernan**
  dkiernan@jonesday.com,lwong@jonesday.com

- **Carmen Anthony Medici**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com

- **Caroline Nason Mitchell**
  cnmitchell@jonesday.com,mlandsborough@jonesday.com

- **Robert Allan Mittelstaedt**
  ramittelstaedt@jonesday.com,mlandsborough@jonesday.com,pwalter@jonesday.com

- **Brian P. Murray**
  bmurray@glancylaw.com

- **Maxwell Vaughn Pritt**
  mpritt@bsfllp.com,jchavez@bsfllp.com,irivera@bsfllp.com

- **Christopher G. Renner**
  crenner@bsfllp.com

- **George A. Riley**
  griley@omm.com,lperez@omm.com,cchiu@omm.com

- **Kieran Paul Ringgenberg**
  kringgenberg@bsfllp.com,gaulkh@bsfllp.com,ftang@BSFLLP.com,cduong@bsfllp.com,dnasca@bsfllp.com,sphan@bsfllp.com,irivera@BSFLLP.com

- **Elaine A. Ryan**
  eryan@bffb.com,nserden@bffb.com

- **Jacqueline Sailer**
  jsailer@murrayfrank.com

- **Michael Tedder Scott**
  mike.scott@dlapiper.com

- **Jonathan H Sherman**
  jsherman@bsfllp.com

- **Craig Ellsworth Stewart**
  cestewart@jonesday.com,mlandsborough@jonesday.com

- **Bonny E. Sweeney**
  bonnys@rgrdlaw.com,slandry@rgrdlaw.com,E_file_sd@rgrdlaw.com,ckopko@rgrdlaw.com

- **Helen I. Zeldes**
  helenz@zhlaw.com,winkyc@zhlaw.com,aarono@zhlaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)