1  William A. Isaacson (wisaacson@bsfllp.com)
   (Admitted *Pro Hac Vice*)
2  Karen L. Dunn (kdunn@bsfllp.com)
   (Admitted *Pro Hac Vice*)
3  Martha L. Goodman (mgoodman@bsfllp.com)
   (Admitted *Pro Hac Vice*)
4  BOIES, SCHILLER & FLEXNER LLP
   5301 Wisconsin Ave, NW
5  Washington, DC 20015
   Telephone:  (202) 237-2727
6  Facsimile:  (202) 237-6131

7  John F. Cove, Jr. #212213
   (jcove@bsfllp.com)
8  Kieran P. Ringgenberg #208600
   (kringgenberg@bsfllp.com)
9  Meredith R. Dearborn #268312
   (mdearborn@bsfllp.com)
10 Maxwell V. Pritt #253155
   (mpritt@bsfllp.com)
11 BOIES, SCHILLER & FLEXNER LLP
   1999 Harrison Street, Suite 900
12 Oakland, CA 94612
   Telephone:  (510) 874-1000
13 Facsimile:  (510) 874-1460

14 David C. Kiernan #215335
   (dkiernan@jonesday.com)
15 JONES DAY
   555 California Street, 26th Floor
16 San Francisco, CA  94104
   Telephone:  (415) 626-3939
17 Facsimile:  (415) 875-5700

18 *Attorneys for Defendant Apple Inc.*

19                UNITED STATES DISTRICT COURT

20               NORTHERN DISTRICT OF CALIFORNIA

21                       OAKLAND DIVISION

| | |
|---|---|
| 22  THE APPLE iPOD iTUNES ANTI-TRUST LITIGATION | Lead Case No.  C 05-00037 YGR [CLASS ACTION] |
| 23 | |
| 24  ———————————————— | **APPLE INC.'S OPPOSITION TO MOTION TO INTERVENE BARBARA BENNETT AS A CLASS REPRESENTATIVE** |
| 25  This Document Relates To: ALL ACTIONS | |
| 26 | Date:   TBD |
| 27 | Time:   TBD |
| 28 | Place:  Courtroom 1, 4th Floor  Judge:  Honorable Yvonne Gonzalez Rogers |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 1

ARGUMENT .................................................................................................................... 5

I.   MS. BENNETT IS NOT AN ADEQUATE REPRESENTATIVE. ................... 5

II.  MS. BENNETT'S SUBSTITUTION IS TOO LATE TO PROVIDE THE COURT JURISDICTION OR PROTECT THE INTERESTS OF THE ABSENT CLASS MEMBERS. ......................................................................... 8

III. MS. BENNETT CANNOT ADEQUATELY REPRESENT RESELLERS ...... 9

IV.  MS. BENNETT'S ADDITION MID-TRIAL IS HIGHLY PREJUDICIAL ... 10

V.   IF MS. BENNETT IS PERMITTED TO BE ADDED, THE COURT SHOULD BAR CLASS COUNSEL FROM REFERRING TO HER IN CLOSING. ..... 12

CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

*Bodner v. Oreck Direct, LLC*,
   No. C 06-4756 MHP, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007)...................6

*Burkhalter Travel Agency v. MacFarms Intern., Inc.*,
   141 F.R.D. 144 (N.D. Cal. 1991)...................6

*Del Campo v. American Corrective Counseling Serv's, Inc.*,
   No. C 01-21151 JW (PVT), 2008 WL 2038047 (May 12, 2008)...................6

*Folding Cartons, Inc. v. American Can Co.*,
   79 F.R.D. 698 (N.D. Ill.1978)...................6

*Harris v. Vector Marketing Corp.*,
   No. C-08-5198 EMC, 2010 WL 3743532 (N.D. Cal. Sept. 17, 2010)...................10

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010)...................9

*In re DaimlerChrysler AG Sec. Litig.*,
   216 F.R.D. 291 (D. Del. 2003)...................6

*In re Flash Memory Antitrust Litig.*,
   No. C 07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010)...................11

*Irise v. Axure Software Solutions, Inc.*,
   No. CV 08-03601 SJO JWJx, 2009 WL 3615973 (C.D. Cal. July 30, 2009)...................12

*McPhail v. First Command Fin. Planning, Inc.*,
   247 F.R.D. 598 (S.D. Cal. 2007)...................6

*Monroe v. City of Charlottesville, Va.*,
   579 F.3d 380 (4th Cir. 2009)...................6

*Osakan v. Apple Am. Group*,
   No. C 08-4722, 2010 WL 1838701 (N.D. Cal. May 5, 2010)...................10, 11

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)...................8, 9

*Pub. Citizen, Inc. v. Mukasey*,
   No. C08-0833MHP, 2008 WL 4532540 (N.D. Cal. Oct. 9, 2008)...................10

*Rolex Employees Ret. Trust v. Mentor Graphics Corp.*,
   136 F.R.D. 658 (D. Or. 1991)...................6

*Soto v. Castlerock Farming and Transport, Inc.*,
   No. 1:09-cv-00701 AWI JLT, 2011 WL 3489876 (E.D. Cal. Aug. 9, 2011...................10, 11

*Weisman v. Darneille*,
   78 F.R.D. 669 (S.D.N.Y.1978)...................6

*Welling v. Alexy*,
   155 F.R.D. 654 (N.D. Cal. 1994)...................6

## RULES

Fed. R. Civ. P. 15(a)(2)...................10

Fed. R. Civ. P. 23(a)(4)...................5

Fed. R. Civ. P. 24(b)...................10

**OTHER AUTHORITIES**

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1766 (3d ed. 2005) .................................................................................................. 6

# INTRODUCTION

The substitution of Barbara Bennett after the last witness of "her" trial case had begun cannot be expected to safeguard adequately the interests of the absent class. Before taking the reins of this action seeking a $1 billion judgment, she had read one five-page summary prepared by counsel and seen a few press reports. When deposed, she professed to know little about the case, most of what she said she knew about the case was simply inaccurate, and she repeatedly made clear she had no interest in learning the truth.

Her substitution is also too late. The former representatives both lacked standing for a year before trial, including the critical pretrial preparation period. They were representatives in name only. And they were actually inadequate during that time, as demonstrated by, among other things, allowing the lawyers ostensibly representing them to forfeit any claim for damages by them. The reality is that this is, and has been, a case driven and controlled by the class lawyers, without a representative to work with them, and the appointment of Ms. Bennett will not change that.

Mid-trial substitution would also prejudice Apple because it lacked a reasonable opportunity to investigate and present any individual issues regarding Ms. Bennett at trial.

If Ms. Bennett is allowed as a class representative, Apple respectfully requests that class counsel not be permitted at closing argument to refer to her beyond what is in the Court's instruction.

Finally, while Apple does not repeat the previously-rejected arguments at full length, Ms. Bennett is also not an adequate representative for each of the reasons previously articulated by Apple in moving to decertify the class and in seeking to dismiss this action for lack of subject matter jurisdiction.

# FACTUAL BACKGROUND

Former named plaintiffs were Somtai Charoensak, Melanie Wilson (formerly Tucker), and Marianna Rosen, each an individual consumer, none of whom had purchased from Apple any of the iPod models of the type for which damages are sought at trial in this case.

On November 22, 2011, Judge Ware certified a class that included purchasers of Classic

Fifth Generation model iPods and other models.

During merits discovery in March 2013, review of the source code showed that certain iPod models that were included in the class definition, including the iPod Classic Fifth Generation model, did not contain the keybag integrity check or database integrity check for music which are the subject of the trial in this case. Apple immediately informed counsel for Plaintiffs (Dkt. 964 at ECF p. 2, ¶ 8), and Plaintiffs' technical expert, Dr. Martin, took this information into account in his April 8, 2013 report. (April 8, 2013 Martin Report at 34, ¶ 84) Plaintiffs' economic expert, Dr. Noll, issued a new damages report on November 25, 2013, which concluded there was no alleged overcharge on Classic Fifth Generation iPods as well as the other models that did not contain the integrity checks. (Nov. 25, 2013 Noll Report, Ex. 5-A and 5-B (revised "Apple Reseller Sales Damages Models" and "Apple Direct Sales Damages Models")) That was made clear by Dr. Noll in his December 18, 2013 deposition. (Dec. 18, 2013 Noll Dep. at 62:3-9)

From the end of 2013 until trial, therefore, Plaintiffs proceeded without a class representative who had purchased an iPod model on which Dr. Noll had calculated damages.

Former named Plaintiffs formally dropped out of the case one by one. Somtai Charoensak dropped out as a class representative at the time of the pretrial statement because "he did not purchase an iPod during the currently certified Class Period." (Oct. 14, 2014 Joint Pre-Trial Conf. Stmt., Dkt. 823 at ECF p. 1 n.1) After counsel conceded that Melanie Wilson (formerly Tucker) had not purchased a claim for which there was damages, (Tr. 640:23-24, 641:19-21), Ms. Wilson dropped out on December 5, 2014, (Tr. 890:21-891:1). And the Court, on December 8, 2014 concluded that Ms. Rosen had not made a purchase of an affected model. (*See* Tr. 1303:22-1304:4)

After that determination, trial continued. On December 8, at about 6:43 pm, counsel disclosed the name Barbara Bennett and sent Apple's counsel a receipt for an iPod purchase. (Declaration of Kieran P. Ringgenberg ("Ringgenberg Decl.") Ex. A) The next day, she testified at an evidentiary hearing. She later sat for a short deposition.

Prior to seeking appointment as a class representative, Ms. Bennett had exchanged emails with counsel, read some press reports, received a five-page summary of the case, and had a short

APPLE INC.'S OPP. TO MOTION TO INTERVENE   No. C 05-00037 YGR

five or ten minute conversation in the hall with counsel which Ms. Bennett characterized as non-substantive. (Tr. 1440:21-1441:5)

When asked if she had ever retained a lawyer before, Ms. Bennett said that she "grew up with lawyers." (Tr. 1442:11) In her deposition she said, "Family members were judges. Family members who were in legislature. Family members who had law firms. Family members who are international tax lawyers." (Ringgenberg Decl. Ex. B at 38:22-39:6) She also said she knew what an engagement or retention letter was, but hadn't signed one. (Tr. 1442:9-20) Her counsel later explained to her, on the witness stand, that she had signed one. (Tr. 1449:11-22)

Ms. Bennett claimed to have a technology background and worked for Sun Microsystems and Fidelity in some sort of technical capacity, and that she was currently doing consulting work. (Tr. 1420:24-1421:11) When ask for more details at her deposition, she testified as follows:

> Q. What kind of consulting work are you doing right now?
>
> A. Technology, finance, gardening. I mean, you name it. I get calls a lot of times, a lot of it's technology work, a lot of it is information security work. This time of year it's tax work. Just things that people -- out of marketing for a former employer that was looking at some affinity marketing for some sports groups, so it varies. It's very interesting but it varies.
>
> Q. Can you give me an example of the work you've done relating to the information security?
>
> A. Well, talk about AT&T, e-mail, viruses, spam, Trojans, spam filters that are not working, that are outsourced in Manila; Manila has bad weather, everything goes down; that type of stuff.

(Ringgenberg Decl. Ex. B at 7:8-23)

Before the Court, when asked by her counsel what she understands "the case to be about," she said:

> A. No, no, I'm trying to do this succinctly. It -- it becomes -- it -- I don't want to call it monopolistic behavior. I'll call it restrictive behavior that becomes onerous the bigger the company is, like the banks that are too big to fail. There's some behavior that might have

been fine when Apple was very small.  Or I worked in startup software companies that are fine when you're little and you're trying to protect yourself where you're trying to protect your activity, but as it gets bigger and bigger, it then shuts other users or other customers out of a market and out of a use.  And music, by and of itself, is owned in theory by the people that wrote it, that composed it, that orchestrated it, that perform it.  There's sync licenses, there's mechanical licenses.  There's a lot of -- so if someone says, "but we'll put this in a file format that you can't use or listen to," that restricts not just the owner of the iPod but the creative side, the -- you know, BMI and ASCAP and all the -- and there are ways to manage licensing fees and -- and performance fees that I don't think this particular execution of protections did any favors to the music world.

(Tr. 1429:18-1430:13)

Ms. Bennett testified both before the Court and in her deposition that her concern about iPods was the "file format" used for music.  In her testimony before the Court, she claimed that there were "rare pieces of music" that were not available to put on her iPod, such as some "Hungarian-formatted music."  (Tr. 1424:8-1426:3)  She said she was injured because some music "wasn't in iTunes" so was not available "if I had wanted to buy it.  So that cost me money that rather than buying a track, one single, I ended up buying a whole CD."  (Tr. 1429:5-1249:11)

Similarly, when asked during her deposition to explain what, in her view, Apple had done wrong that warranted her suing Apple, she repeatedly said that Apple should have allowed DRM-free songs to be played on iPods.  (Ringgenberg Decl. Ex. B at 26:18-28:23)  It is a basic, undisputed fact that iPods were always compatible with DRM-free songs from any source in a wide array of file formats from their launch through the class period.  (*E.g.*, Noll Tr. 1162:18-1163:8; 1182:17-19; Murphy Tr. 1768:21-1769:5)  The evidence at trial showed that, not only was it possible, but the majority of music on iPods was DRM-free music ripped from CDs or other sources.  (Murphy Tr. at 1768:21-1769:9)  Class counsel has never attempted to disprove that it was possible or common for iPods to play DRM-free music.

When asked if Ms. Bennett would reconsider her participation in the lawsuit if she was able to correct her misunderstanding of this underlying "fact" (that iPods would not play DRM-

free music) that Ms. Bennett found central to her claims, Ms. Bennett said:

>   Q.  You wouldn't consider it at all?
>
>   A.  No.  Because from my point of view I don't think those facts are accurate and it's an if, I know from experience in having worked with some very high level technology people and music people, and people that were high level music executives at the very studios you're talking about, I happen to know some of what was going on at that point.

(Ringgenberg Decl. Ex. B at Tr. 32:4-32:11)

When shown the press release announcing the very first iPod model, which explained that the iPod was compatible a wide array of common music file formats, she testified as follows:

>   Q.  And do you understand that since its introduction the iPod has supported all of those file formats, MP3 --
>
>   A.  I have no idea.
>
>   Q.  Right.  And my question is:  What if it's true that it actually does support those file formats and has ever since its introduction.  Would that change your view at all about anything that you've said today?
>
>   A.  Yeah.  Because if it's true nobody knew about it.

(Ringgenberg Decl. Ex B at 57:11-20)

## ARGUMENT

### I. MS. BENNETT IS NOT AN ADEQUATE REPRESENTATIVE.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy of representation is the key to the integrity of class action litigation, not only in pragmatic terms of the efficiency and thoroughness of the proceedings, but far more importantly in relation to the fair and just resolution of the dispute. . . .  the Court must be especially sensitive to insuring that the due process rights of the absent parties are protected, since they will be bound by any final judgment.  Any infirmities of representation will thus result in a defect of constitutional dimensions." *Del Campo v. American Corrective Counseling Serv's, Inc.*, No. C 01-21151 JW (PVT), 2008 WL 2038047, at *4 (N.D.

Cal. May 12, 2008) (alterations in original) (quoting *Folding Cartons, Inc. v. American Can Co.*, 79 F.R.D. 698, 701 (N.D. Ill. 1978)).

"Findings that a representative lacks sufficient interest, credibility, or either knowledge or an understanding of the case—although a knowledge or understanding of all the intricacies of the litigation is not required—are grounds for denying class certification. The analysis is intended 'to ensure that the parties are not simply lending their names to a suit controlled entirely by the class attorney.'" *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385 (4th Cir. 2009) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 1766 (3d ed. 2005)). "[A] class representative who is unfamiliar with the case will not serve the necessary role of 'check[ing] the otherwise unfettered discretion of counsel in prosecuting the suit.'" *Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D. Cal. 1994) (quoting *Weisman v. Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y. 1978)); *accord Burkhalter Travel Agency v. MacFarms Intern., Inc.*, 141 F.R.D. 144, 153 (N.D. Cal. 1991) ("a party who is not familiar with basic elements of its claim is not considered to be an adequate representative for the class because there is no sense that there is an actual party behind counsel's prosecution of the action").

Courts in this Circuit have rejected proposed class representatives who failed to show they understood enough about the lawsuit to check class counsel. For example, in *Bodner v. Oreck Direct, LLC*, Judge Hall Patel held:

> In light of plaintiff's undeniable and overwhelming ignorance regarding the nature of this action, the facts alleged, and the theories of relief against defendant, the court cannot conclude that he has met the threshold typicality or adequacy requirements of Rule 23(a). It is clear from the record that plaintiff's counsel, and not plaintiff, is the driving force behind this action. Such a 'cart before the horse' approach to litigation is not the proper mechanism for the vindication of legal rights.

No. C 06-4756 MHP, 2007 WL 1223777, *2 (N.D. Cal. Apr. 25, 2007); *see also McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 612 (S.D. Cal. 2007) ("the Court finds the Morrisons may not serve as class representatives because they 'have little or no supervisory role in the litigation and little knowledge of the underlying facts of the law suit'") (quoting *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 299 (D. Del. 2003)); *Rolex Employees Ret. Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 666 (D. Or. 1991) ("Moreland has failed to

6

1  demonstrate that he has sufficient familiarity with this case or sufficient resources to allow him to
2  check the actions of counsel and truly serve as the representative of the proposed class").

3  Counsel argues that "the threshold of knowledge required to qualify a class representative
4  is low." (Mot. at 5) But if there is a "threshold of knowledge" that means anything, Ms. Bennett
5  does not meet it. Her sole knowledge of the case was from an online article, a 5-page summary
6  from counsel, and a 5 to 10 minute, non-substantive conversation with counsel in the hall prior to
7  her testimony. (Tr. 1440:21-1441:5)

8  In addition, Ms. Bennett's understanding of the case was simply wrong. When asked by
9  her counsel on direct examination to explain what the case is about, Ms. Bennett could not
10 provide even a basic answer, but instead devolved into references to "sync licenses" and
11 "mechanical licenses," "BMI and ASCAP," and "ways to manage licensing fees and -- and
12 performance fees." (Tr. 1429:18-1430:13)

13 Class counsel claims injury from alleged iPod overcharges; Ms. Bennett claims injury
14 because music she wanted was not on iTunes, requiring her to buy a CD. (Tr. 1429:5-1249:11
15 ("So that cost me money that rather than buying a track, one single, I ended up buying a whole
16 CD"))

17 Ms. Bennett firmly believes, and is attempting to sue Apple because, iPods were not able
18 to play DRM-free music. Counsel's assertion that there was an attempt to "intimidate" Ms.
19 Bennett[1] on this issue is patently false. Ms. Bennett's purported basis for suing Apple – that
20 iPods could not play DRM-free music – was based on a fundamental misunderstanding of the
21 facts. Ms. Bennett was asked whether there was source, other than the class lawyers, she trusted
22 who might help her better understand the truth about this issue, and if she was able to confirm the
23 truth, whether she would reconsider her suit. Rather than providing a straightforward answer,
24 Ms. Bennett said, variously:

---

[1] By contrast, counsel for Plaintiffs asked Tim O'Neil, the Apple employee who pulled and provided purchase receipts for iPods disclosed at trial as allegedly purchased by Ms. Rosen, whether he had been drinking or was on drugs, whether he'd ever been arrested, whether he'd ever been accused of lying at work, and for his annual salary. (Ringgenberg Decl. Ex. C at 8:18-21; 10:15-25)

7

APPLE INC.'S OPP. TO MOTION TO INTERVENE            No. C 05-00037 YGR

- "I know from experience in having worked with some very high level technology people and music people, and people that were high level music executives at the very studios you're talking about, I happen to know some of what was going on at that point" (Ringgenberg Decl. Ex. B at 32:7-11);
- the answer might vary depending on the "window of time" (*id*. at 32:19-33:1) (it didn't),
- "amateur users and end users" would not know whether DRM-free music worked on iPods (*id*. at 33:7-8) (in fact, it worked for millions of consumers);
- she "had firsthand experience where I know that's not true" (*id*. at 34:1-2); and
- only a "qualified expert who has been around that long and can testify to file formats" would be able to say if it were true (*id.* at 69:11-12).

Similarly, Ms. Bennett claimed a great deal of familiarity with lawyers and the legal process (Ringgenberg Decl. Ex. B at 38:22-39:6), and claimed to understand what a retention or engagement letter was (Tr. 1442:9-20), but she did not know that she had actually signed one until her lawyer told her so on the witness stand (Tr. 1449:11-22).

Ms. Bennett has not demonstrated that she has the knowledge or ability to check counsel. Her appointment would insure that this case will continue to be, as it has been, driven and controlled by lawyers unguided by a client. Protecting the interests of absent class members requires more.

## II. MS. BENNETT'S SUBSTITUTION IS TOO LATE TO PROVIDE THE COURT JURISDICTION OR PROTECT THE INTERESTS OF THE ABSENT CLASS MEMBERS.

The "Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

Here, the prior class representatives had no claim and no standing. That was true, by their own admission, at the very least from November and December 2013, when Dr. Noll's revised damages calculations stated that there were no damages from purchases of iPod Classic Fifth Generation models, which are the only models that Ms. Wilson (formerly Tucker) and Ms. Rosen

8

APPLE INC.'S OPP. TO MOTION TO INTERVENE                              No. C 05-00037 YGR

allegedly purchased in the class period. (Nov. 25, 2013 Noll Report, Ex. 5-A and 5-B (revised "Apple Reseller Sales Damages Models" and "Apple Direct Sales Damages Models"); Dec. 18, 2013 Noll Dep. at 62:3-9)

This class action was a captainless ship, without any adequate class representative and steered only by the class counsel from, at the very least, late 2013 through the middle of the trial and, ironically, until the middle of the trial testimony of the expert, Dr. Noll, who concluded that the prior named plaintiffs had no damages. (Noll Tr. 1212: 8-21; TX 757)

Apple previously argued that, as a result of the lack of standing of the named plaintiffs, the Court lacked Article III jurisdiction. (Dkt. 955 at ECF p. 7-12; Dkt. 972 at ECF p. 5-16) As the Court has ruled on that point, Apple merely reiterates and reserves it here.

Even setting Article III jurisdiction aside, the lack of a class representative who was adequate or had standing meant that the absent class members were entirely dependent on the unchecked conduct of counsel during the year leading up to trial. There was no constitutionally required adequate representation "at all times" and thus Ms. Bennett's substitution now cannot salvage the class case. *Shutts*, 472 U.S. at 812; *accord Hesse v. Sprint Corp.*, 598 F.3d 581, 588–89 (9th Cir. 2010) (Due Process requires that the named plaintiff provide adequate representation to the class "at all times").

Ms. Bennett argues that the Court should ignore these problems because, she says, Apple should have raised them sooner. But the absent class members' Due Process rights are not Apple's to waive. It is the class counsel who has a fiduciary duty to the class, not Apple. If there is any fault in not addressing this issue, it lies with them.

**III.   MS. BENNETT CANNOT ADEQUATELY REPRESENT RESELLERS.**

As Apple showed in its motion to decertify, a consumer plaintiff cannot adequately represent resellers for several reasons, including because, by Plaintiff's own theory, consumers and resellers have inconsistent theories of injuries and damages, which means that a consumer is atypical and unrepresentative of resellers due to differences in injury and damages. (Dkt. 888 at ECF p. 15-23) In light of the Court's prior ruling rejecting those points, Apple merely reiterates and reserves them here.

**IV. MS. BENNETT'S ADDITION MID-TRIAL IS HIGHLY PREJUDICIAL.**

Ms. Bennett seeks to be added as a class representative under Federal Rule of Civil Procedure 15(a)(2) or, alternatively, to intervene permissively under Rule 24(b). (Mot. at 6)

Prejudice is the "most critical" of the Rule 15 factors. *Soto v. Castlerock Farming and Transport, Inc.,* No. 1:09-cv-00701 AWI JLT, 2011 WL 3489876, at *5 (E.D. Cal. Aug. 9, 2011); *accord Osakan v. Apple Am. Group*, No. C 08-4722, 2010 WL 1838701, at *4 (N.D. Cal. May 5, 2010); *Pub. Citizen, Inc. v. Mukasey*, No. C08-0833MHP, 2008 WL 4532540, at *4 (N.D. Cal. Oct. 9, 2008) ("prejudice is the touchstone of the inquiry under rule 15(a) and carries the greatest weight") (quotation marks omitted). Prejudice also supports denial of a motion under Rule 24. *See Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2010 WL 3743532, at *5 (N.D. Cal. Sept. 17, 2010).

Ms. Bennett argues that Apple would not be prejudiced by mid-trial addition of a plaintiff because she "has sat for both an evidentiary hearing and deposition" and produced documents. (Mot. at 9) In fact, Ms. Bennett produced a single document, a purchase receipt, at 6:43 pm the night before her testimony, and a single other document, a partial copy of a credit card statement, at her hearing. (Tr. at 1432:23-25 ("Ms. Bernay: That's correct. I just received it from Ms. Bennett. And this was a copy of the copy that she had which is in fact cut off. So I apologize for that. And we should be able to -- if Mr. Isaacson wants to go online and get a cleaner copy, but I did want to at least have this before the Court.")) Despite counsel's statement, she has never produced a full copy of her credit card statement, online or otherwise.

Further, Apple has had no opportunity to investigate adequately any individual issues regarding Ms. Bennett, and certainly not the investigation it completed for the other named plaintiffs. The class certification motion explained, by contrast, that "all three proposed class representatives have already given day-long depositions, have submitted their iPods for a forensic inspection by Apple's counsel, and have produced voluminous (and needlessly intrusive) documentation to Apple as part of the discovery process, including: copies of all music files stored on their personal computers; copies of their iTunes Purchase history; iTunes account

names and passwords; copies of receipts documenting their iPod purchases from Apple; and lists of every compact disc they currently own." (Dkt. 486 at ECF p. 22)

Ms. Bennett notes that Apple declined the offer of a short continuance at trial, but that offer presented a Hobson's choice: prejudice by disrupting trial preparation and risking witness unavailability (and fear of losing jurors to the holiday season) or prejudice by limiting possible investigation of Ms. Bennett. And in any event, a delay would not have permitted anything like the investigation that would have been allowed had Ms. Bennett showed up during discovery. That is prejudice either way.

Courts repeatedly find prejudice warranting denial of motions to add class representatives where the motions were filed shortly before or after the close of discovery, let alone in the middle of trial. In *Soto,* for example, the named plaintiffs brought a motion to add representatives while discovery was still ongoing, but two years after "Defendant argued against their ability to act as class representatives." 2011 WL 3489876, at *4. Despite the fact that the defendant had already taken a limited deposition of the proposed new class representative, the court denied the motion to add him as a class representative because it "would unduly prejudice Defendant, because Defendant has been preparing arguments and defenses based upon the identity of the class representatives who have been named since 2009." *Id* at *6–7. Similarly, in *Osakan,* the court concluded that adding "four new class representatives" a month before the scheduled trial date "will unduly prejudice Defendants, who have been preparing their defense based on the identity of the class representative—Mr. Osakan—who is identified in the original complaint as well as the amended complaint." 2010 WL 1838701, at *5. And in *In re Flash Memory Antitrust Litig.,* No. C 07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010), the court denied a request to add class representatives even before the court had ruled on class certification because it "would require Defendants to conduct new and/or additional discovery that would not otherwise have been required had Plaintiffs joined the appropriate representatives in the first instance." *Id.* at *17. The same result follows in this case, where the proposed addition of a class representative is even later and the prejudice even stronger.

1  The disruption of trial required to address this issue is, by itself, sufficient prejudice to
2  deny Ms. Bennett's motion. For example, in *Irise v. Axure Software Solutions, Inc.,* No. CV 08-
3  03601 SJO JWJx, 2009 WL 3615973 (C.D. Cal. July 30, 2009), the court rejected an amendment
4  that would have added issues to the trial, reasoning that it would "forc[e] [the opposing party]
5  iRise to prepare new lines of argument just two months before the scheduled trial date . . . where
6  final trial preparation is already underway. . . . iRise should be allowed to concentrate on trial
7  preparation for the issues already in the litigation." *Id.* at *4. The same is even more true in this
8  case. *E.g., Emmpresa Cubana Del Tabaco v. Culbro Corp.,* 213 F.R.D. 151, 159–60 (S.D.N.Y.
9  2003) ("prejudice is not limited to the fact that the parties would have to squeeze in two
10 depositions in the two-month period before trial"; "even the bare minimum of discovery required
11 by fairness would at the very least severely hamper trial preparation and likely could not be
12 completed in the two months before the trial is set to begin").

13 No case cited by Ms. Bennett permits a new plaintiff mid trial. So far as Apple is aware,
14 it is literally unprecedented. It should be denied.

**V.    IF MS. BENNETT IS PERMITTED TO BE ADDED, THE COURT SHOULD BAR CLASS COUNSEL FROM REFERRING TO HER IN CLOSING.**

If the case is to move forward with Ms. Bennett, fairness requires, and Apple respectfully requests, that class counsel be forbidden from referring to her in any way beyond what is in the Court's instruction to the jury about her.

**CONCLUSION**

Apple respectfully requests that the Court deny the motion to intervene Ms. Bennett, decertify the class, and grant judgment in Apple's favor.

Date: December 13, 2014                    Respectfully submitted,

                                           BOIES, SCHILLER & FLEXNER LLP

                                           By: */s/ William A. Isaacson*
                                              William A. Isaacson

                                           *Attorney for Defendant Apple Inc.*