EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

*CERTIFIED COPY*

| | | |
|---|---|---|
| THE APPLE IPOD ITUNES | ) | NO. C 05-00037 YGR |
| ANTITRUST LITIGATION | ) | |
| | ) | PAGES 1965 - 2090 |
| | ) | |
| | ) | **JURY TRIAL VOLUME 10** |
| | ) | |
| | ) | |
| | ) | OAKLAND, CALIFORNIA |
| _____ ) | FRIDAY, DECEMBER 12, 2014 |

<u>REPORTERS' TRANSCRIPT OF PROCEEDINGS</u>

APPEARANCES:

FOR PLAINTIFFS:            ROBBINS GELLER RUDMAN & DOWD LLP
                          655 WEST BROADWAY, SUITE 1900
                          SAN DIEGO, CALIFORNIA  92101
                    BY:  ALEXANDRA S. BERNAY,
                          JENNIFER N. CARINGAL,
                          PATRICK COUGHLIN,
                          STEVEN M. JODLOWSKI,
                          CHARLES MCCUE,
                          CARMEN A. MEDICI,
                          BONNY E. SWEENEY, ATTORNEYS AT LAW

                          BONNETT FAIRBOURN FRIEDMAN & BALINT PC
                          4023 CAIN BRIDGE ROAD
                          FAIRFAX, VIRGINIA 22030
                    BY:  FRANCIS J. BALINT, JR.
                          ATTORNEY AT LAW

                 (APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:        RAYNEE H. MERCADO, CSR NO. 8258
                    DIANE E. SKILLMAN, CSR NO. 4909

     PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

```
 1   FRIDAY, DECEMBER 12, 2014                          8:10 A.M.

 2                    P R O C E E D I N G S

 3       (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE PRESENCE

 4   OF THE JURY:)

 5            THE COURT:  GOOD MORNING, EVERYONE.  COUNSEL.

 6            COUNSEL:  GOOD MORNING, YOUR HONOR.

 7            THE CLERK:  CALLING CIVIL ACTION 05-0037, APPLE IPOD

 8   ITUNES ANTITRUST LITIGATION.

 9       COUNSEL, PLEASE STATE YOUR APPEARANCE.

10            MS. SWEENEY:  GOOD MORNING.  BONNY SWEENEY FOR THE

11   PLAINTIFFS.  WITH ME TODAY AT COUNSEL TABLE, MR. COUGHLIN,

12   MS. BERNAY, MR. MEDICI, AND MR. BALINT.

13            MR. ISAACSON:  MORNING, YOUR HONOR.  BILL ISAACSON

14   FOR APPLE.  AT COUNSEL TABLE, KAREN DUNN, MEREDITH DEARBORN,

15   MARTHA GOODMAN, AND SCOTT MURRAY FROM APPLE.

16            THE COURT:  GOOD MORNING, EVERYONE.

17            MR. ISAACSON:  GOOD MORNING.

18            THE COURT:  OKAY.  SO A NUMBER OF THINGS TO DO.

19                 (OFF-THE-RECORD DISCUSSION.)

20            THE COURT:  I RECEIVED AGAIN A NUMBER OF FILINGS LAST

21   NIGHT.  IS -- I -- I HAVEN'T SEEN A FILING FROM THE DEFENSE

22   CHALLENGING THE APPOINTMENT OF MS. BENNETT AS A NAMED CLASS

23   REPRESENTATIVE.

24            MR. ISAACSON:  RIGHT.  WE WOULD LIKE TO PUT SOMETHING

25   ON THE RECORD DOING THAT SOON.
```

1          THE COURT:  ALL RIGHT.  DO IT NOW.

2          MR. ISAACSON:  WE'VE NOT COMPLETED -- WE ARE STILL

3    GATHERING SOME LAST PIECES OF INFORMATION SO WE WOULD LIKE TO

4    DO IT IN WRITING.  WE MAY BE ABLE TO DO IT TODAY OVER THE

5    WEEKEND OR BY MONDAY.  BUT I CANNOT TELL YOU THAT OUR -- THAT

6    I'VE GOT COMPLETE INFORMATION YET.

7          THE COURT:  WELL, MR. ISAACSON, YOU'RE CLOSING

8    EVIDENCE TODAY.  I'M INSTRUCTING THE JURY ON MONDAY.

9          MR. ISAACSON:  I UNDERSTAND, YOUR HONOR.  BUT WE WERE

10    GIVEN THIS CLASS REPRESENTATIVE FAIRLY RECENTLY.  AND THE

11    DEPOSITION HAPPENED ONLY RECENTLY.  WE'RE FOLLOWING UP ON SOME

12    ITEMS.  WE ARE WORKING AS FAST AS WE CAN.

13      WE ARE CERTAINLY GOING TO MAKE A RECORD OBJECTION THAT --

14    THAT THIS IS IMPROPER FOR THIS TO HAVE BEEN DONE AT THE LAST

15    MINUTE, AND YOUR HONOR'S AWARE OF THAT.  BUT IF WE'VE GOT

16    ANYTHING ELSE TO SAY, I WANT TO MAKE SURE WE'RE DOING IT IN

17    ONE FILING.  IT'S NOT AN ISSUE FOR THE JURY.  IT'S AN ISSUE

18    FOR THE COURT.

19          MS. SWEENEY:  YOUR HONOR, I HAVEN'T RECEIVED ANY

20    REQUEST FROM MR. ISAACSON FOR ADDITIONAL INFORMATION ABOUT

21    MS. BENNETT.  I'M NOT SURE WHAT HE'S REFERRING TO ABOUT HIS

22    CONTINUING INVESTIGATION SEVERAL DAYS AFTER THE DEPOSITION OF

23    MS. BENNETT.

24          MR. ISAACSON:  THAT'S CORRECT.  IT'S NOT INFORMATION

25    WE ARE SEEKING FROM PLAINTIFFS.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

EXHIBIT 2

UNITED STATES DISTRICT COURT

*ORIGINAL*

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

THE APPLE IPOD ITUNES          )      NO. C 05-00037 YGR
ANTITRUST LITIGATION           )
                               )      PAGES 1101 - 1310
                               )
                               )      **JURY TRIAL VOLUME 6**
                               )
                               )
                               )      OAKLAND, CALIFORNIA
_____ )      MONDAY, DECEMBER 8, 2014

REPORTERS' TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:          ROBBINS GELLER RUDMAN & DOWD LLP
                         655 WEST BROADWAY, SUITE 1900
                         SAN DIEGO, CALIFORNIA  92101
                  BY:  ALEXANDRA S. BERNAY,
                       JENNIFER N. CARINGAL,
                       PATRICK COUGHLIN,
                       STEVEN M. JODLOWSKI,
                       CHARLES MCCUE,
                       CARMEN A. MEDICI,
                       BONNY E. SWEENEY, ATTORNEYS AT LAW

                         BONNETT FAIRBOURN FRIEDMAN & BALINT PC
                         4023 CAIN BRIDGE ROAD
                         FAIRFAX, VIRGINIA 22030
                  BY:  FRANCIS J. BALINT, JR.
                       ATTORNEY AT LAW

            (APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:       RAYNEE H. MERCADO, CSR NO. 8258
                   DIANE E. SKILLMAN, CSR NO. 4909

     PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

1    THE HUSBAND, BUT IT'S A MARITAL ASSET.  AND SO IN THE EVENT --

2    THAT'S WHY IT WOULD HAVE TO BE QUANTIFIED IN THE EVENT OF A

3    DIVORCE.

4            **THE COURT:**  WELL, YOU'VE CERTAINLY CREATED A PROBLEM

5    ON THE PLAINTIFFS' SIDE.

6        ALL RIGHT.  IT'S 1:40.  I HAVE A SHORT 2:00 O'CLOCK

7    CALENDAR.  WE HAVE SOME OTHER THINGS TO DO.

8        GET SOME LUNCH.  WE WILL STAND IN RECESS UNTIL 2:45.

9            **MR. BALINT:**  THANK YOU, YOUR HONOR.

10           **MR. ISAACSON:**  THANK YOU, YOUR HONOR.

11       (RECESS TAKEN AT 1:40 P.M.; RESUMED AT 2:53 P.M.)

12       (PROCEEDINGS HELD OUTSIDE THE PRESENCE OF THE JURY.)

13           **THE CLERK:**  REMAIN SEATED.  COURT IS IN SESSION.

14   COME TO ORDER.

15           **THE COURT:**  ALL RIGHT.  WE ARE BACK ON THE RECORD.

16   THE RECORD WILL REFLECT THAT THE JURY IS OBVIOUSLY NOT HERE.

17       I HAVE NOW HAD AN OPPORTUNITY TO FINISH MY REVIEW OF

18   APPLE'S LATEST FILING.  AS YOU ALL KNOW, I RECEIVED THE

19   INITIAL MOTION ON FRIDAY, HAD THOSE CASES WITH ME, AND THEN

20   RECEIVED THE BRIEFING IN CASES BY THE PLAINTIFFS OVER THE

21   WEEKEND.

22       IN LIGHT OF THE DOCUMENTATION PROVIDED BY APPLE, I AM

23   CONCERNED THAT MS. ROSEN DOES NOT POSSESS THE SAME INTEREST OR

24   SUFFER THE SAME INJURY AS THE ABSENT CLASS MEMBERS.  I AM

25   TROUBLED ABOUT HER FAILURE TO PREVIOUSLY DISCLOSE THE

1304

1    SPECIFICS OF THESE IPODS IN RESPONSES TO INTERROGATORIES

2    EARLIER IN THIS CASE AND THE FAILURE OF PLAINTIFFS' COUNSEL

3    THEMSELVES TO INVESTIGATE SUFFICIENTLY THE ADEQUACY OF THEIR

4    NAMED PLAINTIFFS BEFORE TRIAL.

5        NEVERTHELESS, THE COURT IS MINDFUL OF THE MILLIONS OF

6    ABSENT CLASS MEMBERS WHO PURCHASED A RELEVANT IPOD DURING THE

7    CLASS PERIOD, WHICH IS CONFIRMED BY APPLE'S DOCUMENTATION, AND

8    I DO NOT BELIEVE THAT APPLE DISPUTES THAT SUCH PEOPLE EXIST.

9        THE COURT HAS AN AFFIRMATIVE OBLIGATION AND DUTY TO

10   PROTECT THE INTEREST OF THE CLASS ABSENT CLASS MEMBERS.  THIS

11   IS A PRINCIPLE WELL-ESTABLISHED BY THE CASE LAW.

12       THE COURT REFERS TO *SILBER VERSUS MABON*, 957 F.2D AT 697,

13   701.  IT'S A NINTH CIRCUIT CASE 1992.  AND IT'S ALSO CONFIRMED

14   IN THE ROUND TREATISE ON NEWBERG ON CLASS ACTIONS SECTION 1-5,

15   FIFTH EDITION.

16       BASED UPON WHAT HAS BEEN PUT BEFORE THE COURT, THE COURT

17   FINDS THAT ROSEN HAD STANDING AS OF THE TIME OF CLASS, THE

18   INITIAL CLASS CERTIFICATION.  HOWEVER, DUE TO THE EVIDENCE

19   ADDUCED AT TRIAL, I FIND THAT SHE'S INADEQUATE TO REPRESENT

20   THE CLASS.

21       IN A 2011 OPINION IN *PITTS VERSUS TERRIBLE HERBST, INC*.,

22   THE NINTH CIRCUIT, CITING THE UNITED STATES SUPREME COURT

23   RECOGNIZED THE QUOTE, UPON CERTIFICATION, THE CLASS ACQUIRES A

24   LEGAL STATUS SEPARATE FROM THE INTEREST ASSERTED BY THE CLASS

25   REPRESENTATIVE, SO THAT AN ARTICLE III CONTROVERSY NOW EXISTS

```
 1    BETWEEN THE NAMED DEFENDANT AND A MEMBER OF THE CERTIFIED

 2    CLASS.  IT'S A PARAPHRASED QUOTE.

 3        IN A 2007 DECISION IN BATES VERSUS UPS, THE NINTH CIRCUIT

 4    ALSO CITED THE SUPREME COURT FOR THE PROPOSITION THAT IF THE

 5    INITIAL CERTIFICATION WAS PROPER AND DECERTIFICATION NOT

 6    APPROPRIATE, THE CLAIMS OF THE CLASS MEMBERS WOULD NOT NEED TO

 7    BE MOOTED OR DESTROYED BECAUSE OF SUBSEQUENT EVENTS OR THE

 8    PROOF AT TRIAL HAS UNDERMINED THE NAMED PLAINTIFFS' INDIVIDUAL

 9    CLAIMS.  IT'S FOUND AT 511 F. 3D 974, 987.

10        HERE, THE COURT FINDS THE CLAIMS OF THE UNNAMED CLASS

11    MEMBERS REMAIN A LIVE CONTROVERSY FOR PURPOSES OF STANDING.

12    ONCE A CLASS HAS BEEN CERTIFIED, THE CLASS OF UNNAMED PERSONS

13    DESCRIBED IN THE CERTIFICATION ACQUIRED A LEGAL STATUS

14    SEPARATE FROM THE INTEREST ASSERTED BY THE NAMED PLAINTIFF SO

15    THAT AN ARTICLE III CONTROVERSY STILL EXISTS BETWEEN THE NAMED

16    DEFENDANT AND A MEMBER OF THE CERTIFIED CLASS.  THE COURT

17    CITES TO SOSNA VERSUS IOWA, 419 UNITED STATES 393 AT 399, A

18    1975 CASE.

19        BASED UPON THE RECORD BEFORE THE COURT AT THE TIME, ROSEN

20    WAS A MEMBER OF THE CLASS AT THE TIME CLASS CERTIFICATION

21    HAPPENED, WHICH IS A SNAPSHOT IN TIME FOR DETERMINING INITIAL

22    STANDING BASED ON THE AUTHORITY OF BATES.  STANDING IN THE

23    FIRST INSTANCE DOES NOT DEPEND UPON THE MERITS OF ROSEN'S

24    CLAIMS, BUT ON A DETERMINATION THAT SHE MADE ALLEGATIONS OF

25    DEMONSTRABLE PARTICULARIZED INJURY.  THE COURT REFERENCES
```

1306

1    *WARTH VERSUS SELDIN*, 422 U.S. 490 AT 508, 1975.  HOWEVER, AS

2    THE NINTH CIRCUIT HAS HELD, FAILURE OF PROOF AS TO THE NAMED

3    PLAINTIFF WOULD NOT BAR MAINTENANCE OF THE CLASS ACTION OR

4    ENTRY OF JUDGMENT AWARDING RELIEF TO THE MEMBERS OF THE CLASS,

5    CITING TO *GIBSON VERSUS LOCAL 40, SUPERCARGOES & CHECKERS, ET*

6    *CETERA*, 543 F.2D AT 1259, 1263, NINTH CIRCUIT CASE FROM 1976.

7        HERE, AFTER THAT SNAPSHOT IN TIME, THE CLASS DEFINITION

8    WAS CHANGED.  REGARDLESS OF THE REDRESSABILITY OF ROSEN'S

9    INDIVIDUAL CLAIMS, THE CLAIMS OF THE UNNAMED CLASS MEMBERS

10   REMAINED A LIVE CONTROVERSY FOR PURPOSES OF STANDING.  ONCE

11   THE CLASS WAS CERTIFIED, THE CLASS OF UNNAMED PERSONS

12   DESCRIBED IN THE CERTIFICATION, AS I INDICATED BEFORE,

13   ACQUIRED A LEGAL STATUS SEPARATE AND APART FROM THE NAMED

14   PLAINTIFF.

15       ONCE A CLASS HAS BEEN CERTIFIED, THE DISTRICT COURT HAS A

16   CONTINUING DUTY TO UNDERTAKE A STRINGENT EXAMINATION OF THE

17   ADEQUACY OF REPRESENTATIVES BY THE CLASS REPRESENTATIVE AND

18   THEIR COUNSEL AT ALL STAGES IN THE PROCEEDINGS TO PROTECT THE

19   ABSENT MEMBERS.

20       THERE ARE A NUMBER OF CIRCUIT OPINIONS THAT REAFFIRM THAT

21   POSITION INCLUDING *GENERAL MOTORS ENGINE INTERCHANGE*

22   *LITIGATION*, SEVENTH CIRCUIT CASE FROM 1979, *BARNEY VERSUS*

23   *HOLZER CLINIC*, A SIXTH CIRCUIT CASE FROM '97, AND *IN RE FINE*

24   *PAPER ANTITRUST LITIGATION*, A THIRD CIRCUIT CASE FROM 1980.

25       AS THE NINTH CIRCUIT HELD IN *BATES*, EVEN IF THE

1307

1   PLAINTIFFS' CLAIM LATER BECAME MOOT OR NONREDRESSABLE, SO LONG

2   AS ANOTHER MEMBER OF THE CLASS STEPS FORWARD TO REPRESENT THE

3   CLASS, THE ENTIRE FEDERAL CLASS HAS STANDING.

4       INDEED, THE COURT INDICATES THAT THE SUPREME COURT ALSO

5   PROVIDED SOME GUIDANCE ON THIS QUESTION.  WHERE IT'S STATED IN

6   *EAST TEXAS MOTOR FREIGHTS SYSTEMS, INC. VERSUS RODRIGUEZ*, 431

7   U.S. 595, IF THE DISTRICT COURT HAD CERTIFIED A CLASS AND ONLY

8   LATER HAD IT APPEARED THAT THE NAMED PLAINTIFFS WERE NOT CLASS

9   MEMBERS OR WERE OTHERWISE INAPPROPRIATE CLASS REPRESENTATIVES,

10  THE CLASS CLAIMS WOULD HAVE ALREADY BEEN TRIED, AND, PROVIDED

11  THE INITIAL CERTIFICATION WAS PROPER AND DECERTIFICATION NOT

12  APPROPRIATE, THE CLAIMS OF THE CLASS MEMBERS WOULD NOT NEED TO

13  BE MOOTED OR DESTROYED BECAUSE SUBSEQUENT EVENTS OR PROOF AT

14  TRIAL HAD UNDERMINED THE NAMED PLAINTIFFS' INDIVIDUAL CLAIMS.

15      THE NINTH CIRCUIT RECOGNIZED AS MUCH IN *BATES* CITING TO

16  *EAST TEXAS*.  ACCORDINGLY, THE COURT WILL INTERVENE A MOTION TO

17  INTERVENE BY AN APPROPRIATE CLASS REPRESENTATIVE IN LIGHT OF

18  THE FACT THAT WE ARE IN THE MIDST OF TRIAL.

19      THE COURT WILL TAKE COMMENTS FROM THE PARTIES, BUT I

20  EXPECT TO SEE TOMORROW A POTENTIAL APPROPRIATE CLASS

21  REPRESENTATIVE.

22      IN LIGHT OF THE FACT THAT THE DEFENDANTS HAVE NOT HAD ANY

23  DISCOVERY ON THIS, AT THE CLOSE OF PROFESSOR NOLL'S TESTIMONY,

24  THE JURY WILL BE EXCUSED FOR THE DAY AND THE COURT WILL

25  CONDUCT AN EVIDENTIARY HEARING AT WHICH TIME THE DEFENSE CAN

1308

```
1    QUESTION ANY WITNESS THAT THE PLAINTIFFS BRING IN.

2        MS. SWEENEY.

3            MS. SWEENEY:  YOUR HONOR, THERE IS A -- THERE ARE

4    PLAINTIFFS WHO STAND WILLING AND READY TO STEP IN, AND WE WILL

5    HAVE THEM IN COURT TOMORROW.

6            THE COURT:  YOU WILL TODAY --

7            MS. SWEENEY:  I'M SORRY, TODAY.

8            THE COURT:  YOU WILL TODAY GIVE THE DEFENSE THEIR

9    NAMES, SERIAL NUMBERS OF IPODS, ANY INFORMATION THAT YOU HAVE

10   SO THAT THEY CAN BEGIN THEIR INVESTIGATION.

11       DO YOU UNDERSTAND?

12           MS. SWEENEY:  YES, I DO, YOUR HONOR.

13           THE COURT:  MR. ISAACSON, IT WAS NOT AT ALL CLEAR TO

14   THE COURT THAT IT COULD TAKE A VERDICT WITHOUT ADDRESSING THIS

15   ISSUE.

16           MR. ISAACSON:  I ACTUALLY FILED SOME AUTHORITY FOR

17   YOU ON THAT, BUT -- IT HASN'T COME UP OFTEN, BUT IT HAS COME

18   UP.  BUT I THINK IN LIGHT OF YOUR RULING THAT'S --

19           THE COURT:  IT'S MOOT.

20           MR. ISAACSON:  THAT IS MOOT, YES.

21       AND I DON'T THINK IT'S A SUBJECT MATTER JURISDICTION

22   THING, SO IT'S NOT A MATTER OF PRESERVING ANY OBJECTIONS.

23       SO I THINK MY ONLY QUESTION IS, YOU CITED A *PITTS* CASE

24   FROM 2011, AND THAT IS THE ONLY ONE WHERE YOU DIDN'T SAY THE

25   CITATION.
```

**DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930**

1    **THE COURT:** THERE WERE THREE I DIDN'T CITE THE

2    CITATION. LET ME GIVE IT TO YOU.

3        THAT WOULD BE 653 F. 3D, 1081 AT 1090.

4        THE CIRCUIT CASES THAT CAN I REFERENCED, THE SEVENTH

5    CIRCUIT CASE *IN RE GENERAL MOTORS* IS 594 F.2D, 1106. THE

6    *BARNEY* SIXTH CIRCUIT CASE IS 110 F. 3D AT 1207, AND THE THIRD

7    CIRCUIT 1980 CASE IS 617 F.2D 22.

8        **MR. ISAACSON:** ALL RIGHT.

9        **THE COURT:** MS. SWEENEY, YOU TELL ME WHAT

10   INVESTIGATION HAVE YOU -- DO YOU HAVE AT THIS JUNCTURE WITH

11   RESPECT TO THE NAMED PEOPLE THAT YOU HAVE INTERVIEWED?

12       **MS. SWEENEY:** I PERSONALLY HAVEN'T INTERVIEWED THEM.

13   MS. BERNAY DID. BUT WHAT WE HAVE IS WE HAVE NAMES, WE HAVE

14   THE SERIAL NUMBERS OF IPODS, WE HAVE THE DATE OF PURCHASE,

15   LOCATION OF PURCHASE. THEY ARE DIRECT PURCHASERS FROM AN

16   APPLE STORE. WE CAN PROVIDE ALL THAT INFORMATION TO DEFENSE

17   COUNSEL.

18       **THE COURT:** ALL RIGHT. WHY DON'T WE DO THIS. IN

19   LIGHT OF WHAT NEEDS TO BE DONE, WE CAN RECESS FOR TODAY, DEAL

20   WITH JURY INSTRUCTIONS TOMORROW.

21       MS. BERNAY, YOU IMMEDIATELY GET THAT INFORMATION OVER TO

22   THE DEFENDANTS. THAT WAY YOU TAKE THIS TIME NOW,

23   MR. ISAACSON, TO DEAL WITH THAT ISSUE.

24       **MR. ISAACSON:** UNDERSTOOD, AND I APPRECIATE THAT.

25       WHAT HAPPENS TO PLAINTIFF ROSEN WITH RESPECT TO THE JURY?

1310

```
 1   THE JURY HAS BEEN TOLD SHE IS THE CLASS REPRESENTATIVE.

 2            THE COURT:  I UNDERSTAND.  I WILL ENTERTAIN

 3   INSTRUCTIONS.  I CAN CREATE MY OWN, BUT IF YOU WANT TO HAVE A

 4   ROLE IN THAT, THEN I WILL ENTERTAIN INSTRUCTIONS.

 5            MR. ISAACSON:  ALL RIGHT.

 6            THE COURT:  YOU SHOULD EXCHANGE THEM AMONGST

 7   YOURSELVES IF YOU CAN AGREE ON SOME LANGUAGE.  THAT'S ALWAYS

 8   BETTER.  IF NOT, I WILL DO THAT AS PART OF THE FINAL

 9   INSTRUCTION.

10            MS. SWEENEY:  THANK YOU, YOUR HONOR.

11            THE COURT:  ALL RIGHT.  WE WILL ADJOURN UNTIL

12   TOMORROW AT EIGHT A.M.

13            MR. ISAACSON:  THANK YOU, YOUR HONOR.

14

15            (PROCEEDINGS ADJOURNED AT 3:08 P.M.)

16

17

18

19

20

21

22

23

24

25
```

# EXHIBIT 3

UNITED STATES DISTRICT COURT    *CERTIFIED COPY*

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE


THE APPLE IPOD ITUNES      )        NO. C 05-00037 YGR
ANTITRUST LITIGATION       )
                           )        PAGES 1311 - 1529
                           )
                           )        **JURY TRIAL VOLUME 7**
                           )
                           )
                           )        OAKLAND, CALIFORNIA
_____)        TUESDAY, DECEMBER 9, 2014


                **REPORTERS' TRANSCRIPT OF PROCEEDINGS**


APPEARANCES:

FOR PLAINTIFFS:         ROBBINS GELLER RUDMAN & DOWD LLP
                        655 WEST BROADWAY, SUITE 1900
                        SAN DIEGO, CALIFORNIA  92101
                BY:  ALEXANDRA S. BERNAY,
                     JENNIFER N. CARINGAL,
                     PATRICK COUGHLIN,
                     STEVEN M. JODLOWSKI,
                     CHARLES MCCUE,
                     CARMEN A. MEDICI,
                     BONNY E. SWEENEY, ATTORNEYS AT LAW

                        BONNETT FAIRBOURN FRIEDMAN & BALINT PC
                        4023 CHAIN BRIDGE ROAD
                        FAIRFAX, VIRGINIA 22030
                BY:  FRANCIS J. BALINT, JR.
                     ATTORNEY AT LAW

            (APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:        RAYNEE H. MERCADO, CSR NO. 8258
                    DIANE E. SKILLMAN, CSR NO. 4909

    PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.


*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

BENNETT – DIRECT / BERNAY

1    Q.   -- BLOG ON THE INTERNET?

2    A.   RIGHT.

3    Q.   AND NOW, YOU UNDERSTAND THAT YOU'RE HERE TODAY TO DISCUSS

4    SOME ISSUES RELATED TO YOUR PURCHASES OF IPODS?

5    A.   SURE.

6    Q.   IS THAT RIGHT?

7         SO HAVE YOU EVER OWNED AN IPOD?

8    A.   I'VE HAD TWO.  I HAD THE IPOD CLASSIC THAT I BOUGHT, I

9    BELIEVE, IN 2005.  AND THEN THIS -- THE ONE, THE IPOD NANO.

10   Q.   OKAY.  AND SO YOU MENTIONED THAT YOU BOUGHT AN IPOD

11   CLASSIC IN ABOUT 2005.  DID YOU BUY THAT FROM THE APPLE STORE?

12   A.   YES.

13   Q.   AND DO YOU STILL HAVE THAT IPOD?

14   A.   YES.

15   Q.   OKAY.  AND THEN YOU MENTIONED THIS IPOD NANO.  ABOUT WHEN

16   DID YOU PURCHASE THAT?

17   A.   2006, I THINK IT WAS IN NOVEMBER.  YOU HAVE MY CREDIT

18   STATEMENT THERE.

19   Q.   AND NOW THAT YOU'VE MENTIONED YOUR CREDIT STATEMENT, I'M

20   ACTUALLY GOING TO --

21        MS. BERNAY:   AND, YOUR HONOR, I'M NOT SURE HOW YOU

22   WANT TO HANDLE, BUT I'D LIKE TO MARK WHAT IS TITLED A

23   DUPLICATE RECEIPT.  AND THERE'S ACTUALLY -- WELL, THERE'S A

24   LITTLE BIT OF IDENTIFYING INFORMATION ON HERE, I BELIEVE.

25        BUT IF I COULD APPROACH THE WITNESS, YOUR HONOR.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

```
 1        THE COURT:  YOU MAY.  IT WILL BE MARKED AS --

 2        MS. BERNAY:  THANK YOU.

 3        THE COURT:  -- EXHIBIT 1.

 4      (PLAINTIFFS' EXHIBIT 1 MARKED FOR IDENTIFICATION)

 5   BY MS. BERNAY:

 6   Q.  MS. BENNETT, HAVE YOU HAD A MOMENT TO LOOK NOW AT WHAT

 7   WE'VE MARKED AS EXHIBIT 1?

 8   A.  MM-HMM.

 9   Q.  WHAT IS THIS, IF YOU CAN TELL ME?

10   A.  IT'S A RECEIPT FROM THE DERBY STREET APPLE STORE IN

11   HINGHAM, MASSACHUSETTS WHERE I BOUGHT THE IPOD NANO.  IT'S

12   LISTING THE IPOD NANO AS A RED SPECIAL EDITION NANO.  PRICE

13   POINT WAS $199.  AND THEN I PICKED UP A TECH SUPPORT APP FOR

14   THE IPOD FOR $59 AT THE SAME TIME.  SO THE AMOUNT PAID BY MY

15   CREDIT CARD WAS 267.95, AND THE -- I'M TRYING TO FIND THE DATE

16   ON HERE.  NOVEMBER 5, 2006.

17   Q.  AND YOU'LL NOTICE THAT IT SAYS AMOUNT PAID VIA VISA; DO

18   YOU SEE THAT?

19   A.  YES.

20   Q.  AND IS THAT YOUR -- DO YOU RECOGNIZE THOSE LAST FOUR

21   DIGITS?

22   A.  YEAH, THAT'S MY CREDIT CARD.

23   Q.  AND TELL ME WHAT YOU REMEMBER ABOUT BUYING THIS -- THIS

24   PARTICULAR IPOD NANO?

25   A.  WELL, I LOVE THE APPLE STORES.  I MEAN, THEIR CUSTOMER
```

1    SHOULD BE ABLE TO -- IF MR. ISAACSON WANTS TO GO ONLINE AND

2    GET A CLEANER COPY, BUT I DID WANT TO AT LEAST HAVE THIS

3    BEFORE THE COURT.

4    **BY MS. BERNAY:**

5    **Q.**  MS. BENNETT, CAN YOU IDENTIFY WHAT WE'VE MARKED AS

6    EXHIBIT 2?

7    **A.**  YES.

8    **Q.**  WHAT IS IT?

9    **A.**  IT IS MY CREDIT -- MY VISA CREDIT CARD WITH THE CHARGES

10   INCLUDING THE APPLE STORE CHARGE FOR 267.95.

11   **Q.**  AND DO YOU SEE THAT ABOUT THREE-QUARTERS OF THE WAY

12   THROUGH ON THE TRANSACTIONS?

13   **A.**  YES.

14   **Q.**  OKAY.  AND AGAIN, THIS IS YOUR PERSONAL CREDIT CARD, AND

15   YOU PAY THE BALANCE, YOUR NAME IS ON THE CARD?

16   **A.**  YES.

17            **MS. BERNAY:**  I HAVE NOTHING FURTHER AT THIS TIME.

18   THANK YOU, MS. BENNETT.

19            **THE COURT:**  MR. ISAACSON?

20            **MR. ISAACSON:**  ONE MOMENT, YOUR HONOR.

21            (PAUSE IN THE PROCEEDINGS.)

22            **CROSS-EXAMINATION**

23   **BY MR. ISAACSON:**

24   **Q.**  GOOD MORNING, MS. BENNETT.

25       MY NAME --

1    **A.**   I THINK IT -- THIS IS MY OPINION.   I THINK THIS CASE IS

2    ABOUT RESTRICTED USE BASED ON PROPRIETARY FILE FORMATS.

3    **Q.**   OKAY.   MEANING DRM?

4    **A.**   DRM AND YOUR -- THE VARIOUS AUTHENTICATION VERIFICATION

5    FORMATTING THAT WERE USED ON THESE FILES SO THAT ONLY AN IPOD

6    COULD ACCESS MUSIC OR USE MUSIC FROM ITUNES DATABASES.

7    **Q.**   ALL RIGHT.   AND THAT WAS -- SO WHEN YOU FIRST CONTACTED

8    THE COURT AND THE LAWYERS, YOU THOUGHT THIS WAS A CLASS ACTION

9    THAT SAID APPLE SHOULD NOT BE PUTTING DRM ON ITS MUSIC DURING

10   THIS PERIOD OF TIME THAT'S AT ISSUE; IS THAT CORRECT?

11   **A.**   THE MANNER IN WHICH APPLE HAS CHOSEN TO RESTRICT THE USE

12   OF MUSIC PURCHASED BY ITUNES IN THIS WINDOW -- AND THEY'VE

13   CHANGED OVER THE YEARS -- WAS PROBLEMATIC FOR ME.   IT COSTS ME

14   MONEY, IT RESTRICTED ACCESS TO CERTAIN KINDS OF MUSIC THAT I

15   COULDN'T GET.

16   **Q.**   ALL RIGHT.

17   **A.**   AND COULD NOT PUT ON MY MACHINE TO TAKE TO THE RINK.

18   **Q.**   ALL RIGHT.   LET ME UNDERSTAND THAT.   THE --

19        AND, AGAIN, I'M JUST FOCUSING ON WHEN -- BEFORE YOU TALKED

20   TO THE LAWYERS.   DID YOU -- WAS IT YOUR BELIEF THAT THIS CASE

21   WAS ABOUT THE FACT THAT APPLE HAD DRM ON ITS SYSTEM AND IT

22   SHOULDN'T HAVE DRM?

23   **A.**   IT'S THE IMPLEMENTATION OF A DIGITAL RIGHTS MANAGEMENT

24   PROTOCOL --

25   **Q.**   OKAY.

1    Q.  OKAY.  THAT WAS A VERY LONG ANSWER BEFORE WE GOT TO YES.

2        JUST TO BE CLEAR, BY THE TIME YOU CALLED INTO THE -- YOU

3    WROTE INTO THE COURT, YOU THOUGHT THIS CASE WAS ABOUT THE FACT

4    THAT CONSUMERS WERE BEING DENIED MUSIC AND MAYBE MUSIC PRICES

5    WERE HIGHER BECAUSE OF THAT?

6            MR. COUGHLIN:  I OBJECT.

7                    (SIMULTANEOUS COLLOQUY.)

8            THE WITNESS:  I NEVER -- I NEVER SAID ANYTHING ABOUT

9    PRICES.

10           THE COURT:  I HAVE AN OBJECTION.

11   BY MR. ISAACSON:

12   Q.  I'M JUST ASKING --

13           THE COURT:  SO HOLD ON.

14       SHE ANSWERED THE QUESTION.  THE OBJECTION IS MOOT.

15           MR. ISAACSON:  RIGHT.

16   Q.  SO DID YOU THINK WHAT THIS CASE WAS ABOUT WAS THE FACT

17   THAT PEOPLE WERE -- THAT CONSUMERS WERE BEING DENIED ACCESS TO

18   MUSIC, THAT THAT'S WHAT THE CASE WAS ABOUT?

19           MS. BERNAY:  OBJECTION, AGAIN MISSTATES THE PRIOR

20   TESTIMONY.

21           THE COURT:  OVERRULED.

22           THE WITNESS:  SHALL I ANSWER?

23           THE COURT:  YOU MAY.

24           THE WITNESS:  I THINK THE CASE IS ABOUT THE

25   RESTRICTION OF WHAT CONSUMERS CAN ACCESS AND LISTEN TO, MUSIC

1    THAT IS OUT AND AVAILABLE BUT NOT USABLE ON AN IPOD IN THE

2    FILE FORMAT THAT APPLE HAS RESTRICTED THE IPOD TO.  SO, YES, I

3    GUESS THE ANSWER TO THAT QUESTION IS A YES.

4    **BY MR. ISAACSON:**

5    **Q.**  OKAY.

6        THE -- SO THEN YOU TALKED TO THE LAWYERS BY PHONE?

7    **A.**  EMAIL.

8    **Q.**  EMAIL.  AND THEN WHEN -- WHEN DID YOU FIRST MEET WITH

9    THE -- WHEN DID YOU FIRST HAVE SUBSTANTIVE CONVERSATIONS WITH

10   THE PLAINTIFF LAWYERS?  VERBAL CONVERSATIONS, NOT EMAIL.

11   **A.**  I THINK YESTERDAY.  WE MAY HAVE HAD ONE QUICK QUESTION THE

12   DAY BEFORE, CAN I COME OUT HERE.

13   **Q.**  UM-HMM.

14   **A.**  BUT THE -- THE MOST CONVERSATIONS WE'VE HAD WERE

15   YESTERDAY, AND IT WAS MOSTLY ABOUT ARRANGING TRAVEL PLANS.

16   **Q.**  OKAY.  SO TWO DAYS AGO, YOU TALKED WITH THE PLAINTIFFS'

17   LAWYERS ABOUT COMING OUT HERE.  AND YESTERDAY YOU HAD

18   NONSUBSTANTIVE CONVERSATIONS, YOU TALKED ABOUT GETTING OUT

19   HERE; IS THAT A FAIR --

20   **A.**  YES.

21   **Q.**  ALL RIGHT.  SO TODAY WOULD HAVE BEEN YOUR FIRST

22   SUBSTANTIVE CONVERSATIONS ABOUT THE CASE WITH THE LAWYERS.

23        **MS. BERNAY:**  OBJECTION, MISSTATES HER PRIOR

24   TESTIMONY.  SHE TESTIFIED THAT SHE HAD EMAIL CONVERSATION.

25        **THE COURT:**  OVERRULED.  NO COACHING.  SHE CAN ANSWER.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

1          THE COURT:  IS THAT A "YES"?

2          THE WITNESS:  YES.

3     BY MR. ISAACSON:

4     Q.  AFTER YOU READ THAT MEMO, YOUR UNDERSTANDING OF THIS CASE

5     THAT IT WAS ABOUT DENYING CONSUMERS ACCESS TO MUSIC.

6     A.  NO.  THAT SIMPLIFIES IT DRAMATICALLY.  IT HAS TO DO WITH

7     DRM.  IT HAS TO DO WITH -- WITH VERIFICATION OR VALIDATION, I

8     FORGET THE -- THE KEYBAG AND THE DATABASE PROTOCOLS THAT --

9     THAT WERE IN SOME UPGRADES THAT WERE CHANGES THAT WERE MADE TO

10    THE ITUNES FUNCTIONALITY.  THE QUESTION OF SHERMAN ANTITRUST

11    AND WHAT CONSTITUTES MONOPOLY BEHAVIOR AND WHAT DOESN'T.

12    IT -- I MEAN, AS I SAY, IT'S ALL VERY HIGH -- HIGH LEVEL, AND

13    I HAVEN'T HAD ACCESS OR RECEIVED ANY OF THE BACKUP

14    DOCUMENTATION OR ANY OF THE COURT FILINGS, WHICH, IF I

15    CONTINUE, I WOULD TAKE A LOOK AT.

16    Q.  RIGHT.  YOU WILL BE -- YOU WILL ACTUALLY BE REVIEWING WHAT

17    THIS CASE IS ABOUT PRETTY MUCH FOR THE FIRST TIME AFTER --

18    AFTER THIS TESTIMONY IF YOU'RE PERMITTED TO CONTINUE; IS THAT

19    A FAIR STATEMENT?

20         MS. BERNAY:  OBJECTION.

21         THE WITNESS:  NO.

22         MS. BERNAY:  MISSTATES --

23      GO AHEAD.

24         THE COURT:  IT CAN'T MISSTATE TESTIMONY.  THE

25    QUESTION WAS NEVER ASKED.  SHE SAID NO.

EXHIBIT 4

```
 1                    UNITED STATES DISTRICT COURT

 2                 NORTHERN DISTRICT OF CALIFORNIA

 3                        OAKLAND DIVISION

 4

     _____
 5                                     )
     THE APPLE IPOD ITUNES ANTITRUST )
 6   LITIGATION                        )
     _____)
 7   This Document Relates To:         )    No. C-05-00037-YGR
                                       )
 8            ALL ACTIONS.             )
     _____)
 9

10

11

12

13

14            Videotaped deposition of BARBARA BENNETT, Volume

15   I, taken on behalf of Defendant, at 1999 Harrison Street,

16   Oakland, California, beginning at 2:56 p.m. and ending at

17   4:29 p.m. on Tuesday, December 9, 2014, before Angelica R.

18   Gutierrez, Certified Shorthand Reporter No. 13292.

19

20

21

22

23

24

25
```

1    were being asked, and unfair, for a guy who all he did

2    was pull a couple of receipts off his computer, because

3    that's his job.  And he's asked if he's on drugs and if

4    he's been arrested.

5        A.   What's the point?

6        Q.   Here's my question:  Do you understand that

7    the lawyers who are appearing in your name answer to

8    you, and that you have an obligation, or at least you

9    could if you chose to, to help them behave and conduct

10   themselves in a professional manner?

11       A.   Why would you imply that I have any reason to

12   think they're not acting in a professional manner?

13       Q.   I didn't -- well, other than what we just --

14   you can make your own judgment about that, I guess

15   we'll put it that way.

16           MS. BERNAY:  Is that a question or --

17           MR. RINGGENBERG:  Yeah.

18           MR. RINGGENBERG:  Q.  The question is:  Do you

19   understand that, as the client, you can exercise some

20   control over how the lawyers behave?

21       A.   Of course I do.

22       Q.   You said at deposition today, or in your

23   testimony earlier today, that you grew up with lawyers.

24   I thought that's what you said.

25       A.   Yes.

1    tomorrow and Thursday.  If they want me back on Friday

2    that's up to my lawyer.

3         Q.    It's actually up to you, but --

4         A.    No.  It's a scheduling thing, so --

5         Q.    But right now, at least, you're not planning

6    on it; is that right?

7         A.    I wasn't planning on being here today either,

8    until last night.

9         Q.    Okay.  And what's your understanding of what

10   your role will be from here on out, since we're in the

11   middle of trial.  It's a little unusual situation.

12        A.    Yes.  I understand.

13        Q.    So what's your understanding of what your role

14   is going to be?

15        A.    I may be asked to perform certain activities

16   representing a group of people who are being

17   represented by the law firm sitting next to me in a

18   case, apparently has enough merit to go to trial.

19        Q.    And what are the activities that you think you

20   might have to do?  What is it that you think might have

21   to do?

22        A.    I'm going to look at all the documents that we

23   have.  I certainly will do some background research and

24   I will look historically at what I can find on the

25   iTunes and the various iPod models.  I can certainly

Page 68

1    talk to engineers that I know that are familiar, in

2    some cases more than I, with certain aspects of how

3    Apple has operated in the past.

4         Q.    So I have one last question for you --

5         A.    Uh-hum.

6         Q.    -- which is will you please find someone you

7    trust, other than your lawyers, and ask them whether or

8    not it was true that iPods can play DRM free music

9    every day since 2001?  Would you do that for me,

10   please?

11        A.    If we can find some qualified expert who has

12   been around that long and can testify to file formats.

13        Q.    I mean find someone you trust, who is

14   knowledgeable, and ask them.  Would you do that?

15        A.    I certainly can ask.  I don't know that I'll

16   find anyone that is sort of going to MIT or Solaris,

17   that's a qualified engineer.  I don't know that some

18   techie that listens to music while he codes is going to

19   be able to give me the answer about the history of a 14

20   year comment about file formats available online.

21        Q.    I understand that you may not believe them,

22   but would you please find someone whose opinion you

23   trust and ask them if it's true, who's knowledgeable,

24   and see what they say; would you do that?

25        A.    And if they say I don't know?

                                              Page 69

1     A.    Yes.

2     Q.    And do you recall that the court indicated

3  that she found -- while you were sitting there she made

4  a statement regarding that you had made a prima fascia

5  showing that you're a proper class representative, that

6  you have standing; do you remember that?

7     A.    Yes.

8     Q.    Now, are you willing to continue, you know, to

9  work with us and to take part in this litigation and do

10  whatever is necessary in the best interests of the

11  class?

12     A.    Yes.

13          MS. BERNAY:  I have nothing further.

14                    EXAMINATION

15          MR. RINGGENBERG:  Q.  I have two really quick

16  questions.  I just -- very quick.

17          When you worked at Sun what was the name that

18  you used on your employment records?

19     A.    Barbara Bennett.

20     Q.    And in testimony today you talked about

21  signing an engagement letter, which you looked at on

22  the stand.  You talked about receiving a memo from the

23  lawyers.  In what order did that sequence happen?

24     A.    The letter that I signed came first, and then

25  I believe it was several hours later when the memo --

Page 73