United States District Court
Northern District of California

1

2

3

4

5

6            **UNITED STATES DISTRICT COURT**

7            **NORTHERN DISTRICT OF CALIFORNIA**

8

9

10

11   **THE APPLE IPOD ITUNES ANTITRUST**          **Case No.: 05-CV-0037 YGR**
     **LITIGATION**
12                                               **ORDER DENYING NONPARTY MEDIA**
                                                 **INTERVENORS' MOTION TO COPY THE VIDEO**
13   **This Order Relates to:**                  **DEPOSITION OF STEVE JOBS**

14   **All Actions**                             Re: Dkt. No. 977

15

16

17        On Monday, December 8, 2014, non-parties Bloomberg L.P., The Associated Press, and

18   Cable News Network, Inc. ("Media Intervenors") moved to intervene in this case for the limited

19   purpose of obtaining access to the video deposition of former CEO of Apple Inc. ("Apple") Steve

20   Jobs. (Dkt. No. 977.) The motion is styled as one for "access." In reality, its focus, more

21   precisely, seeks permission to copy the video deposition.[1] Given the time sensitive nature of the

22   request, the Court ordered any opposition be filed by 8 a.m. on Tuesday, December 9, 2014, and

23   scheduled a hearing for 4 p.m. on that same day. Apple opposes the motion. (Dkt. No. 979.) After

24   oral argument, the Media Intervenors submitted supplemental authority on Friday, December 12,

25   2014. (Dkt. No. 994.) Apple submitted a response thereto on Sunday, December 14, 2014. (Dkt.

26

27        [1] The parties played only an excerpted portion of the deposition during trial on Friday
     afternoon, December 5, 2014. While the motion at issue appeared to request access to the entire
28   video deposition, during oral argument the Media Intervenors clarified that they only seek access to
     the portion of the video played at trial.

United States District Court
Northern District of California

1  No. 1003.)  On Tuesday, December 16, 2014, the trial concluded after the jury rendered a verdict.

2  (Dkt. No. 1008.)

3  Having carefully considered the papers submitted and the arguments of counsel, the Court

4  hereby **DENIES** the Media Intervenors' motion for access to the videotaped deposition of Steve Jobs

5  by way of a copy and beyond that which has already been granted.  As set forth below, the request

6  is not authorized by current Ninth Circuit precedent and such an extension of existing law is not

7  warranted or prudential.

8  **I.      RELEVANT FACTS**

9  Plaintiffs filed the instant case in 2005.  The long history of this antitrust dispute has been

10  recounted in detail in earlier orders.  *See In re Apple iPod iTunes Antitrust Litig.*, No. 05-CV-0037

11  YGR, 2014 WL 6783763, at *2 n.4 (N.D. Cal. Nov. 25, 2014).

12  On April 12, 2011, plaintiffs deposed Steve Jobs, Apple's then-CEO.  Nearly six months

13  later, he passed away.  The parties captured the deposition via audiovisual recording ("the Jobs

14  Deposition").  At the time of the deposition, Jobs was on medical leave from the company,

15  suffering from cancer.

16  On December 2, 2014, evidence began in the instant trial.  To accommodate access to the

17  evidence by the public, including the press, a large, 55-inch extra monitor was installed in the

18  courtroom, facing the gallery.  This allowed members of the public to view the evidence in the

19  same manner as the jury, whether by way of documents, charts, summaries, or audiovisual

20  deposition testimony.  Moreover, on December 4, 2014, the Court issued an order requiring that

21  counsel "place five copies of each admitted exhibit on the designated table outside of Courtroom 1

22  after trial adjourns each day, either in paper form or on five USB flash drives.  Each side [was]

23  responsible for providing copies of the admitted exhibits that it requested be admitted."  (Dkt. No.

24  951 (Order for Parties to Accommodate the Press).)

25  Pursuant to Civil Local Rule 77-3, cameras were not allowed in the courtroom during the

26  trial.  Thus, no live witness's testimony was recorded visually.  Throughout the trial numerous clips

27  of deposition testimony for direct and impeachment purposes were shown to the jury (and to

28  members of the public present in the courtroom).  None of these video clips were offered or

1    admitted into evidence as exhibits.  However, the transcribed excerpts were attached to the official

2    trial transcript.  On December 5, 2014, certain portions of the Jobs Deposition, comprising about

3    thirty minutes of the two-hour deposition, were played for the jury in open court.  Advanced notice

4    was provided to members of the public, including the media, who were previously present during

5    the trial.  (Dkt. No. 1009 (Tr.) at 869:12-17.)  A transcript of the portions of the Jobs Deposition to

6    be presented at trial had been filed in advance on the public docket.  (Dkt. No. 846-9.)[2]  The instant

7    motion followed.

8    **II.      LEGAL STANDARD**

9            The Ninth Circuit has not squarely addressed the issue of whether to allow the public

10   copying access to a videotaped deposition used during a civil trial and not admitted into evidence as

11   an exhibit.

12           As a starting point for analyzing the request, the Court notes that a strong judicial

13   presumption exists favoring public access to judicial records, including the right to copy and

14   inspect those records.  *Valley Broad. Co. v. U.S. Dist. Court for Dist. of Nevada*, 798 F.2d 1289,

15   1290, 1293-94 (9th Cir. 1986).  The underlying purpose of the presumption is to "promot[e] the

16   public's understanding of the judicial process and of significant public events . . . ."  *Id*. at 1294.

17   The Ninth Circuit has apparently not defined the contours of a "judicial record."

18           However, even where a particular item is found to be a judicial record, and notwithstanding

19   the presumption favoring access, courts in the Ninth Circuit must also evaluate the risk that the

20   material at issue would be put to an improper use, which may counsel against permitting the

21   exercise of that right in a given instance.  *Id*.  Improper uses include "publication of scandalous,

22   libelous, pornographic, or trade secret materials; infringement of fair trial rights of the defendants

23   or third persons; and residual privacy rights."  *Id*. (internal quotations omitted).  Ultimately, the

24   court must weigh "'the interests advanced by the parties in the light of the public interest and the

25   duty of the courts.'"  *Id*. (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 602 (1978)).

26

27

28           [2] The transcript of proceedings from December 5, 2014, attaching the relevant transcript of
     the Jobs Deposition, is also now available to the public.  (Dkt. No. 1010 (Tr.) at 228-238.)

United States District Court
Northern District of California

3

1    The Court begins with the threshold question of whether the video deposition testimony at

2  issue constitutes a judicial record.

3  **III.    DISCUSSION**

4        **A.    WHETHER THE JOBS DEPOSITION IS A JUDICIAL RECORD**

5    It appears that only the Eighth Circuit has come close to addressing squarely the threshold

6  issue.  In *United States v. McDougal*, 103 F.3d 651, 656 (8th Cir. 1996), the Eighth Circuit held

7  "as a matter of law that the [deposition] videotape itself is not a judicial record to which the

8  common law right of public access attaches [and] [e]ven if the defendants had moved for the

9  admission of the videotape into evidence, the videotape itself would not necessarily have become a

10  judicial record subject to public review."  In *McDougal*, a number of media organizations moved

11  for access to a video recording of President Clinton's deposition testimony in a criminal case

12  immediately after it was taken or, in the alternative, at the time of its display to the jury.  *Id*. at 652.

13  Ultimately, excerpts of the video deposition were played at trial.  *Id*. at 653-54.  That deposition,

14  recorded at the White House and given by a sitting president, *id*. at 653, was presumably of great

15  public interest.  The trial court denied the motion, finding the video deposition was not a judicial

16  record and that "the press's First Amendment right of access to public information had been 'fully

17  satisfied in this instance by allowing the press to attend the playing of the videotaped deposition

18  and in providing full access to the written transcript.'"  *Id*. at 652, 654, 656.

19    The authorities presented by the Media Intervenors for the contrary position do not

20  persuade.  As reflected in those cases, while other courts have allowed the copying of videotapes in

21  certain circumstances, frequently the videotape at issue was not a deposition but instead directly

22  documented the underlying conduct at issue, was deposition testimony that had been admitted as an

23  exhibit, or its release was unopposed.  *See, e.g.*, *Valley Broad. Co.*, 798 F.2d at 1290 (involving

24  non-testimonial audio and video tape recordings admitted into evidence in a criminal case); *United*

25  *States v. Mouzin*, 559 F. Supp. 463, 463-64 (C.D. Cal. 1983) (same); *United States v. Criden*, 648

26  F.2d 814, 815-16 (3d Cir. 1981) (involving apparently non-testimonial video and audio tapes that

27  had been admitted into evidence); *Application of CBS, Inc.*, 828 F.2d 958, 960 (2d Cir. 1987)

28  (apparently involving "a videotaped [deposition] exhibit" that had been "introduced in evidence");

United States District Court
Northern District of California

4

1   *United States v. Graham*, 257 F.3d 143, 147 (2d Cir. 2001) (involving "a number of audio and

2   video tapes featuring conversations between and among the defendants and a confidential

3   informant" that had been played in open court); *Application of CBS, Inc.*, 540 F. Supp. 769, 770

4   (N.D. Ill. 1982) (involving audio tapes of "recordings of conversations" relating to the defendant in

5   a criminal case).  Some do not even address the question of whether the videotape at issue

6   constituted a "judicial record." *See United States v. Fromme*, 2013 U.S. Dist. LEXIS 119044, at

7   *1-2 (E.D. Cal. Aug. 21, 2013) (involving an unopposed motion to unseal the video tape deposition

8   of President Ford by the Historical Society but not directly addressing the issue of whether it was a

9   judicial record).

10   One case presented by the Media Intervenors does address the specific question presented,

11   albeit in the context of a criminal case governed by Federal Rule of Criminal Procedure 53.[3]  In

12   *United States v. Berger*, 990 F. Supp. 1054, 1057 (C.D. Ill. 1998), the court held "that the

13   [deposition] videotape [at issue] is more akin to a judicial record than a violation of the ban of

14   cameras in a federal courtroom."  Nevertheless, that lone case is readily distinguishable from the

15   circumstances here.  The subject of the deposition in that case—Illinois Governor Jim Edgar—had

16   agreed to appear the following day at the trial when the court was faced with the unexpected illness

17   of a juror, with only one alternate remaining. *Id*. at 1055.  The testimony had been specially

18   scheduled due to the Governor's pre-planned three-week trip abroad. *Id*.  Given the circumstances,

19   the parties stipulated to a deposition by video in lieu of live testimony at trial. *Id*. at 1055, 1058

20   n.7.  Critically, and prior to the deposition being played at trial, the court and the parties had agreed

21   that "once played to the jury, both the transcript and the videotape itself would be open to the

22   public for inspection and copying." *Id*. at 1056.  In the intervening two weeks, the Governor failed

23   to object to the planned release of the videotape. *Id*. at 1056 & n.3.  He only objected an hour

24   before the deposition transcript and video were to be made publicly available. *Id*.  The court

25   ultimately authorized the video's release over the Governor's objection. *Id*. at 1059.

26

27   [3] "Except as otherwise provided by a statute or these rules, the court must not permit the

28   taking of photographs in the courtroom during judicial proceedings or the broadcasting of judicial
proceedings from the courtroom."  Fed. R. Crim. P. 53.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Here, the Court agrees with the Eighth Circuit and concludes that the Jobs Deposition is not

2  a judicial record.  It was not admitted into evidence as an exhibit.  Instead, the Jobs Deposition was

3  merely presented in lieu of live testimony due to the witness's unavailability, and was and should

4  be treated in the same manner as any other live testimony offered at trial.  As is typical of all live

5  testimony, it is properly made available to the public through its initial courtroom presentation and,

6  subsequently, via the official court transcript, the latter of which is the judicial record of such

7  testimony.  Said differently, the docket, transcript, and exhibits are the court's official "record" of

8  the trial, "record" being defined, in part, as "[t]he official report of the proceedings in a case,

9  including the filed papers, a verbatim transcript of the trial or hearing (if any), and tangible

10  exhibits."  *Black's Law Dictionary* 1279 (7th ed. 1999).

11    To employ such a rule as called for by the Media Intervenors could create anomalous

12  results.  For example, the public would have special access to videos that would not even be

13  available to the court of appeals in the appellate record.[4]  And snippets of previously recorded

14  impeachment testimony played at trial would be publicly available for copying and distribution,

15  while the direct live testimony of witnesses would remain sheltered from audiovisual recording.

16  Thus, without Ninth Circuit authority mandating such a release, the Court finds the reasoned

17  conclusion of the Eighth Circuit to be most persuasive.

18    **B.    THE PUBLIC RIGHT OF ACCESS AND THE WEIGHING OF INTERESTS**

19    All of the trial testimony in this case was accessible to the public—the courtroom was not

20  sealed for any portion of it.  In fact, to accommodate the press, the Court ordered additional copies

21  of exhibits be made available on a daily basis and ensured the public had advanced notice of the

22  playing of the Jobs Deposition.

23    Additionally, the Eighth Circuit in *McDougal* recognized that "courts should avoid

24  becoming the instrumentalities of commercial or other private pursuits."  103 F.3d at 658.  Here,

25  the Court has no evidence that the news media intend to use the video for improper purposes.

26  Nevertheless, the Eighth Circuit counseled that "the public's interest in gaining access to the

27

28    [4] "The following items constitute the record on appeal: (1) the original papers and exhibits
filed in the district court; (2) the transcript of proceedings, if any; and (3) a certified copy of the
docket entries prepared by the district clerk."  Fed. R. App. P. 10.

United States District Court
Northern District of California

1  videotape recording is only marginal [given] the testimony has already been made visually and

2  aurally accessible in the courtroom and the transcript has been widely distributed and publicized,"

3  *id*. at 658, as is the case here.

4  The Court is mindful of the public interest in the video testimony at issue and in the

5  importance of the presumption of public access to judicial records.  The Court also recognizes the

6  public policy concern raised by defendant, namely that if releases of video depositions routinely

7  occurred, witnesses might be reticent to submit voluntarily to video depositions in the future,

8  knowing they might one day be publicly broadcast.  If cameras in courtrooms were not currently

9  prohibited, the argument might have less weight.  However, given the lack of authority approving

10 such a release, the concern is well-taken that under the current rules, deponents have no expectation

11 or notice that the videos will be disseminated beyond the presentation during trial.

12 If the video had been introduced as a trial exhibit, or if no objection had been lodged, the

13 ruling on this motion might be different.  In light of the present circumstances and the lack of legal

14 authority justifying the Media Intervenors' request, however, the Court will not authorize the

15 copying of the Jobs Deposition.

16 **IV.    CONCLUSION**

17 As set forth above, the Court has considered the Media Intervenors' request and therefore

18 **GRANTS** the Motion for Leave to Intervene.  However, the Court **DENIES** the Motion for Access to

19 the Video Deposition of Steve Jobs for purposes of copying.

20 This Order terminates Docket No. 977.

21 **IT IS SO ORDERED**.

22

23 Date:  December 17, 2014

   _____
   **YVONNE GONZALEZ ROGERS**
24 **UNITED STATES DISTRICT COURT JUDGE**

25

26

27

28

7