UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA   *ORIGINAL*

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

| | | |
|---|---|---|
| THE APPLE IPOD ITUNES | ) | NO. C 05-00037 YGR |
| ANTITRUST LITIGATION | ) | |
| | ) | PAGES 1965 - 2090 |
| | ) | |
| | ) | **JURY TRIAL VOLUME 10** |
| | ) | |
| | ) | |
| | ) | OAKLAND, CALIFORNIA |
| _____ ) | | FRIDAY, DECEMBER 12, 2014 |

### REPORTERS' TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS:           ROBBINS GELLER RUDMAN & DOWD LLP
                          655 WEST BROADWAY, SUITE 1900
                          SAN DIEGO, CALIFORNIA  92101
                   BY:  ALEXANDRA S. BERNAY,
                        JENNIFER N. CARINGAL,
                        PATRICK COUGHLIN,
                        STEVEN M. JODLOWSKI,
                        CHARLES MCCUE,
                        CARMEN A. MEDICI,
                        BONNY E. SWEENEY, ATTORNEYS AT LAW

                          BONNETT FAIRBOURN FRIEDMAN & BALINT PC
                          4023 CAIN BRIDGE ROAD
                          FAIRFAX, VIRGINIA 22030
                   BY:  FRANCIS J. BALINT, JR.
                        ATTORNEY AT LAW

                   (APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:           RAYNEE H. MERCADO, CSR NO. 8258
                       DIANE E. SKILLMAN, CSR NO. 4909

     PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

## A P P E A R A N C E S (CONT'D.)

```
FOR DEFENDANT:          BOIES, SCHILLER & FLEXNER LLP
                        5301 WISCONSIN AVENUE NW
                        WASHINGTON, D.C.  20015
                  BY:   WILLIAM A. ISAACSON,
                        KAREN L. DUNN,
                        MARTHA L. GOODMAN, ATTORNEYS AT LAW


                        BOIES, SCHILLER & FLEXNER LLP
                        1999 HARRISON STREET, SUITE 900
                        OAKLAND, CALIFORNIA  94612
                  BY:   MEREDITH R. DEARBORN, ATTORNEYS AT LAW


                        JONES DAY
                        555 CALIFORNIA STREET, 26TH FLOOR
                        SAN FRANCISCO, CALIFORNIA  94104-1500
                  BY:   DAVID C. KIERNAN, ATTORNEYS AT LAW


                        APPLE
                        1 INFINITE LOOP, MS 169-2NYJ
                        CUPERTINO, CALIFORNIA  95014
                  BY:   SCOTT B. MURRAY,
                          SENIOR LITIGATION COUNSEL


                        --O0O--
```

## I N D E X

**DEFENDANT'S WITNESSES**                          **PAGE**    **VOL.**

DONNELLY, MARK

CROSS-EXAMINATION BY MR. MEDICI                    1982        10


**PLAINTIFFS' REBUTTAL WITNESSES**                 **PAGE**    **VOL.**

SCHULTZ, RODERICK DAVID

DIRECT EXAMINATION BY MR. COUGHLIN                 1987        10

CROSS-EXAMINATION BY MR. ISAACSON                  2004        10

REDIRECT EXAMINATION BY MR. COUGHLIN               2029        10

RECROSS-EXAMINATION BY MR. ISAACSON                2033        10

FURTHER RECROSS-EXAMINATION BY MR. ISAACSON        2035        10

REDIRECT EXAMINATION BY MR. COUGHLIN               2038        10

--oOo--

## E X H I B I T S

| PLAINTIFFS' EXHIBITS | W/DRAWN | IDEN | EVID | VOL. |
|---|---|---|---|---|
| 2 | | | 2078 | 10 |
| 737 | | | 2080 | 10 |
| 951 COVER PAGE AND PAGE 35 | | | 1972 | 10 |

| DEFENDANTS' EXHIBITS | W/DRAWN | IDEN | EVID | VOL. |
|---|---|---|---|---|
| 2228 | | | 2081 | 10 |
| 2344 | | | 2073 | 10 |
| 2379 | | | 2074 | 10 |
| 2405 | | | 2074 | 10 |
| 2416 | | | 2082 | 10 |
| 2446A | | | 2083 | 10 |
| 2493 | | | 2074 | 10 |
| 2561 | | | 2074 | 10 |
| 2593 | | | 1971 | 10 |
| 2712 | | | 2076 | 10 |
| 2715A | | | 1971 | 10 |
| 2720A | | | 1971 | 10 |
| 2743 | | | 2076 | 10 |
| 2844 | | | 2074 | 10 |
| 2858 | | | 2014 | 10 |
| 2877 | | | 2074 | 10 |

```
 1   FRIDAY, DECEMBER 12, 2014                          8:10 A.M.

 2                        P R O C E E D I N G S

 3       (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE PRESENCE

 4   OF THE JURY:)

 5            THE COURT:  GOOD MORNING, EVERYONE.  COUNSEL.

 6            COUNSEL:  GOOD MORNING, YOUR HONOR.

 7            THE CLERK:  CALLING CIVIL ACTION 05-0037, APPLE IPOD

 8   ITUNES ANTITRUST LITIGATION.

 9       COUNSEL, PLEASE STATE YOUR APPEARANCE.

10            MS. SWEENEY:  GOOD MORNING.  BONNY SWEENEY FOR THE

11   PLAINTIFFS.  WITH ME TODAY AT COUNSEL TABLE, MR. COUGHLIN,

12   MS. BERNAY, MR. MEDICI, AND MR. BALINT.

13            MR. ISAACSON:  MORNING, YOUR HONOR.  BILL ISAACSON

14   FOR APPLE.  AT COUNSEL TABLE, KAREN DUNN, MEREDITH DEARBORN,

15   MARTHA GOODMAN, AND SCOTT MURRAY FROM APPLE.

16            THE COURT:  GOOD MORNING, EVERYONE.

17            MR. ISAACSON:  GOOD MORNING.

18            THE COURT:  OKAY.  SO A NUMBER OF THINGS TO DO.

19                   (OFF-THE-RECORD DISCUSSION.)

20            THE COURT:  I RECEIVED AGAIN A NUMBER OF FILINGS LAST

21   NIGHT.  IS -- I -- I HAVEN'T SEEN A FILING FROM THE DEFENSE

22   CHALLENGING THE APPOINTMENT OF MS. BENNETT AS A NAMED CLASS

23   REPRESENTATIVE.

24            MR. ISAACSON:  RIGHT.  WE WOULD LIKE TO PUT SOMETHING

25   ON THE RECORD DOING THAT SOON.
```

1      **THE COURT:**  ALL RIGHT.  DO IT NOW.

2      **MR. ISAACSON:**  WE'VE NOT COMPLETED -- WE ARE STILL

3  GATHERING SOME LAST PIECES OF INFORMATION SO WE WOULD LIKE TO

4  DO IT IN WRITING.  WE MAY BE ABLE TO DO IT TODAY OVER THE

5  WEEKEND OR BY MONDAY.  BUT I CANNOT TELL YOU THAT OUR -- THAT

6  I'VE GOT COMPLETE INFORMATION YET.

7      **THE COURT:**  WELL, MR. ISAACSON, YOU'RE CLOSING

8  EVIDENCE TODAY.  I'M INSTRUCTING THE JURY ON MONDAY.

9      **MR. ISAACSON:**  I UNDERSTAND, YOUR HONOR.  BUT WE WERE

10  GIVEN THIS CLASS REPRESENTATIVE FAIRLY RECENTLY.  AND THE

11  DEPOSITION HAPPENED ONLY RECENTLY.  WE'RE FOLLOWING UP ON SOME

12  ITEMS.  WE ARE WORKING AS FAST AS WE CAN.

13      WE ARE CERTAINLY GOING TO MAKE A RECORD OBJECTION THAT --

14  THAT THIS IS IMPROPER FOR THIS TO HAVE BEEN DONE AT THE LAST

15  MINUTE, AND YOUR HONOR'S AWARE OF THAT.  BUT IF WE'VE GOT

16  ANYTHING ELSE TO SAY, I WANT TO MAKE SURE WE'RE DOING IT IN

17  ONE FILING.  IT'S NOT AN ISSUE FOR THE JURY.  IT'S AN ISSUE

18  FOR THE COURT.

19      **MS. SWEENEY:**  YOUR HONOR, I HAVEN'T RECEIVED ANY

20  REQUEST FROM MR. ISAACSON FOR ADDITIONAL INFORMATION ABOUT

21  MS. BENNETT.  I'M NOT SURE WHAT HE'S REFERRING TO ABOUT HIS

22  CONTINUING INVESTIGATION SEVERAL DAYS AFTER THE DEPOSITION OF

23  MS. BENNETT.

24      **MR. ISAACSON:**  THAT'S CORRECT.  IT'S NOT INFORMATION

25  WE ARE SEEKING FROM PLAINTIFFS.

1          **THE COURT:**  I WANT IT BY NOON ON SATURDAY.

2          **MR. ISAACSON:**  WE WILL DO THAT.

3          **THE COURT:**  OKAY.

4     I HAVE HEARD -- WELL, LET'S SEE.  AND THIS WILL JUST ISSUE

5     AS A SEPARATE ORDER.  DEFENDANTS REQUEST TO ADMIT PHYSICAL

6     ITEMS 2715A AND 2720A IS GRANTED.

7        (DEFENDANT'S EXHIBITS 2715A AND 2720A RECEIVED IN

8     EVIDENCE)

9          **THE COURT:**  THERE IS VERY LITTLE BATTERY LIFE LEFT ON

10    THOSE FOR SOME REASON SO THEY NEED TO BE CHARGED.

11       SECOND, THE REQUEST TO ADMIT AS A PARTY ADMISSION

12    PARAGRAPH 66 OF THE AMENDED CONSOLIDATED COMPLAINT AS TRIAL

13    EXHIBIT 23 -- OR 2593 IS GRANTED.

14       (DEFENDANT'S EXHIBIT 2593 RECEIVED IN EVIDENCE)

15         **THE COURT:**  PLAINTIFFS' REQUEST TO ADMIT THE ENTIRE

16    AMENDED CONSOLIDATED COMPLAINT, TRIAL EXHIBIT 952, IS DENIED.

17       PLAINTIFFS' REQUEST TO ADMIT THE RESPONSE TO INTERROGATORY

18    NO. 22 FROM PLAINTIFF MARIANNA ROSEN AS TRIAL EXHIBIT 950 IS

19    DENIED.

20       PLAINTIFFS' REQUEST TO ADMIT RESPONSE TO INTERROGATORY

21    NO. 22 FROM PLAINTIFFS' ADDITIONAL OBJECTIONS AND RESPONSES TO

22    DEFENDANT APPLE IS -- AS TRIAL EXHIBIT 951 IS GRANTED.  TO BE

23    SPECIFIC, ONLY THE COVER PAGE AND ONLY PAGE 35.  SHALL BE PART

24    OF THAT EXHIBIT.

25

```
 1          (PLAINTIFFS' EXHIBIT 951 COVER PAGE AND PAGE 35 RECEIVED

 2    IN EVIDENCE)

 3          THE COURT:  WITH RESPECT TO THE -- WITH RESPECT TO

 4    THE REQUEST FOR INSTRUCTIONS REGARDING MR. JOBS' DEPOSITION

 5    AND THE CLASS REPRESENTATIVE, I'VE DRAFTED MY OWN WHICH DO NOT

 6    TRACK EITHER OF THE PARTIES' SUBMISSIONS, BUT I THINK FAIRLY

 7    ACCURATELY DESCRIBE THE SITUATION.  YOU'LL GET COPIES OF THOSE

 8    THIS AFTERNOON, UNDERSTANDING THAT THE DEFENDANT STILL WANTS

 9    TO OBJECT TO THE COURT'S APPOINTMENT OF MS. BENNETT.

10          WITH RESPECT TO THE DEFENDANT'S REQUEST TO PROVIDE A

11    PROPOSED JURY INSTRUCTION NO. 40 REGARDING BREACH OF CONTRACT,

12    THAT REQUEST IS DENIED.

13          WITH RESPECT TO ITS REQUEST TO PROVIDE THE JURY WITH

14    PROPOSED INSTRUCTION NO. 38, IT IS DENIED.

15          OKAY.  COURT FINDS THERE'S INSUFFICIENT EVIDENCE IN THE

16    RECORD TO SUPPORT THOSE INSTRUCTIONS.  OBJECTIONS ARE NOTED,

17    MR. ISAACSON.

18          MR. ISAACSON:  THANK YOU, YOUR HONOR.

19          THE COURT:  ALL RIGHT.  I UNDERSTAND THAT WE SHOULD

20    BE DONE PRETTY QUICKLY AFTER THIS.  RIGHT?

21          MS. SWEENEY:  YES, YOUR HONOR.

22          THE COURT:  THAT'S WHAT I'M TOLD.

23          MR. ISAACSON:  YES.

24          THE COURT:  ALL RIGHT.  ONCE THAT HAPPENS, WE CAN

25    HAVE A DISCUSSION ABOUT JURY INSTRUCTIONS.  THE MAIN
```

1   INSTRUCTION I THINK AT ISSUE IS ELEMENT THREE WITH RESPECT TO

2   THE SHERMAN ACT.  I USED TO HAVE IT IN TWO SEPARATE

3   INSTRUCTIONS.  I'VE NOW COMBINED IT INTO ONE INSTRUCTION,

4   WHICH I THINK MAKES MORE SENSE AND IS LESS CONFUSING.

5       THE PARTIES HAVE PROVIDED THE COURT WITH VARIOUS FORMS OF

6   LANGUAGE, ESPECIALLY IN TERMS -- WITH RESPECT TO THEIR OWN

7   VIEWS ON THE EVIDENCE.  I AM CURRENTLY NOT INCLINED TO GIVE

8   ANYBODY'S VIEWS TO JUST STATE WHAT THE LAW IS.  THE LAW WITH

9   RESPECT TO THAT ELEMENT IS COMPLICATED ENOUGH WITHOUT ME GOING

10  ON AND ON ABOUT YOUR RESPECTIVE POSITIONS.  BUT WE'LL HAVE

11  THAT DISCUSSION.

12      SO I'VE INSTRUCTED MY LAW CLERK TO TAKE THE PORTIONS OF

13  THE PLAINTIFFS' REQUEST, PORTIONS OF THE DEFENSE REQUEST, PUT

14  THEM INTO ONE DOCUMENT, AND THEN THAT WAY WE'LL HAVE SOMETHING

15  THAT WE CAN ALL OPERATE OFF TOGETHER THIS AFTERNOON.

16      ONCE WE CLOSE, WE'LL GET THAT TO YOU, WE'LL TAKE A SHORT

17  BREAK SO YOU CAN DIGEST IT, AND THEN WE CAN HAVE A TALK ABOUT

18  IT.

19      I THINK THE REST OF THE INSTRUCTIONS ARE NOT REALLY AT

20  ISSUE AT THIS POINT.  I THINK WE GOT MOST OF THAT DONE THE

21  OTHER NIGHT, SO I THINK WE'RE MAKING GOOD PROGRESS HERE.

22      THOSE WERE THE ISSUES ON MY LIST.  ANYTHING ELSE ON YOUR

23  LIST?

24          **MR. ISAACSON:**  YES, YOUR HONOR.  WE WERE -- LATE LAST

25  EVENING WE WERE GIVEN SOME PROPOSED EXHIBITS FOR THE SCHULTZ

```
 1    TESTIMONY TODAY, FOUR NEW EXHIBITS, AND THREE OF THEM WE WOULD

 2    HAVE OBJECTIONS TO.  I WOULD LIKE BEFORE MR. SCHULTZ TESTIFIES

 3    TO HAND THEM UP TO YOU AND TO DISCUSS THEM IN ADVANCE.

 4              THE COURT:  ALL RIGHT.

 5         WHICH NUMBER -- THIS WAS --

 6                   (OFF-THE-RECORD DISCUSSION.)

 7              MR. ISAACSON:  I'M SORRY.  THE FIRST ONE IS NOT -- IS

 8    955, THOUGH IT DOESN'T HAVE THE STICKER ON IT.

 9              THE COURT:  DO I HAVE IT SO --

10              MR. ISAACSON:  YOU DO NOT HAVE ANY OF THESE.  THESE

11    WERE SHARED WITH US LATE LAST EVENING.

12              THE COURT:  OKAY.  WHY DON'T YOU HAND THOSE UP.

13         I SHOULD ALSO SAY FOR THE RECORD, THE PLAINTIFFS' MOTION

14    TO COMPEL THE PRODUCTION OF COMMUNICATIONS BETWEEN APPLE AND

15    ITS COUNSEL IS DENIED AS MOOT.

16              MR. ISAACSON:  ALL RIGHT.

17         YOUR HONOR, WHAT THIS DOCUMENT IS -- IT'S TAKEN OFF

18    INTERNET.  YOU'LL SEE ON THE FIRST PAGE, IT'S -- IT'S A VERY

19    LONG DOCUMENT GIVING HIS VIEWS ON THE INTERNET ABOUT DRM.

20    IT'S -- YOU CAN SEE AT THE TOP, IT'S WRITTEN AFTER HE'S LEFT

21    APPLE AND HE'S AT ADOBE.  SO THIS IS NOT WHILE HE'S WORKING AT

22    APPLE.  SO IT'S PURELY HEARSAY.

23         DOWN AT THE BOTTOM -- YOU CAN SEE THE EXAMPLE ON THE --

24    AND HE'S GIVING OPINIONS, LIKE ANYBODY WOULD ON THE INTERNET,

25    AND YOU CAN SEE DOWN AT THE BOTTOM OF THE FIRST PAGE
```

1    DISCUSSING THE BUSINESS MODEL.  HE'S SPECULATING ONE WAY OR

2    THE OTHER, WHICH U.S. CITIZENS ARE ALLOWED TO DO, ABOUT WHAT

3    APPLE WAS DOING.

4        BUT THIS TYPE OF EVIDENCE WOULD CLEARLY BE INADMISSIBLE AS

5    WELL AS PREJUDICIAL AND PUTTING IN FRONT OF HIM, READING IT

6    OUT LOUD, SAYING THESE WORDS TO THE JURY ARE NOT PROPER IN

7    THIS CASE AND GO TO ISSUES THAT ARE NOT IN THIS CASE.

8            **THE COURT:**  RESPONSE?

9            **MR. COUGHLIN:**  YOUR HONOR, HE WAS THE ARCHITECT OF

10   THE --

11           **THE COURT:**  I DON'T CARE IF HE WAS THE ARCHITECT.

12           **MR. COUGHLIN:**  DVC --

13           **THE COURT:**  RESPOND TO THE OBJECTIONS.

14           **MR. COUGHLIN:**  I DON'T INTEND TO INTRODUCE THIS

15   DOCUMENT.  I JUST MARKED IT AS AN EXHIBIT SO WE'D HAVE IT

16   MARKED AS AN EXHIBIT.  I'M GOING TO ASK HIM ABOUT SOME OF

17   THESE ISSUES.  HE WAS THE PERSON AT APPLE RESPONSIBLE FOR THE

18   DVC.

19           **MR. ISAACSON:**  THESE WORDS SHOULD NOT --

20           **THE COURT:**  OKAY.

21           **MR. ISAACSON:**  I DON'T WANT THIS TO BE --

22           **THE COURT:**  THE PLAINTIFF IS INSTRUCTED NOT TO READ

23   FROM THIS DOCUMENT.

24           **MR. COUGHLIN:**  THAT'S FINE, YOUR HONOR.  I DIDN'T

25   INTEND TO READ FROM THE DOCUMENT.

```
 1              THE COURT:  OKAY.

 2              MR. ISAACSON:  ALL RIGHT.  NOW, 950 --

 3              THE COURT:  AND THIS ONE IS -- THE ONE THAT YOU'VE

 4     HANDED UP TO ME IS --

 5              MR. ISAACSON:  955.

 6              THE COURT:  IT WAS MARKED AS 955?

 7              MR. ISAACSON:  YES.  THE NEXT ONE IS 956.

 8              THE COURT:  THAT'S 955.

 9                   (OFF-THE-RECORD DISCUSSION.)

10     BY MR. ISAACSON:

11     Q.  NOW, THIS IS 956.

12              THE CLERK:  TWO COPIES --

13              THE COURT:  I ONLY NEED ONE COPY.

14              MR. ISAACSON:  956 IS AN EMAIL WHICH MR. SCHULTZ IS

15     COPIED WHILE HE'S WORKING AT APPLE.  THERE'S NO ISSUE ABOUT

16     AUTHENTICITY OR HEARSAY.  THIS IS AN ISSUE AS TO THE SUBJECT

17     MATTER.

18         AND AT THE BOTTOM OF THE EMAIL, WHAT YOU WILL SEE IS

19     THEY'RE LITERALLY DISCUSSING WHETHER FRANCE -- THE GOVERNMENT

20     OF FRANCE IS GOING TO PASS A LAW BANNING DRM.  AND THIS IS A

21     DISCUSSION, AND THEN MR. SCHULTZ RESPONDS TO THAT.  SO THIS

22     WOULD BE INTRODUCING EVIDENCE ABOUT POTENTIAL FRENCH

23     LEGISLATORS' VIEWS ON DRM.

24         NOW THE COURT HAS ALREADY RULED ON A MOTION IN LIMINE

25     ABOUT EUROPEAN INVESTIGATIONS OF DRM.  THIS -- I DON'T THINK
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

1    WE MADE A MOTION IN LIMINE ABOUT LEGISLATION IN EUROPE HAVING

2    TO DO WITH DRM, BUT I DON'T THINK THIS WOULD -- I THINK THIS

3    WOULD BE SUBJECT TO BE NOT BEING USED AT THIS CASE FOR THE

4    SAME REASONS.

5             **MR. COUGHLIN:**  YOUR HONOR, MR. CUE TALKED ABOUT

6    THE -- THE COMPETITORS GOT SOME GOVERNMENT OFFICIALS LIKE IN

7    EUROPE AND COMPETITORS STARTED WRITING ARTICLES AND TELLING

8    THE PRESS THAT APPLE -- THAT WAS A CLOSED PROPRIETARY SYSTEM

9    AND THAT WE WANTED THIS CLOSED ENVIRONMENT.  SO MR. CUE HAS

10   ALREADY OPENED THE DOOR TO THE FRENCH INVESTIGATION.

11            **THE COURT:**  WE ARE NOT GETTING INTO A EUROPEAN

12   INVESTIGATION.

13       NEXT.

14            **MR. ISAACSON:**  ALL RIGHT.  THE NEXT IS 953.

15                 (PAUSE IN THE PROCEEDINGS.)

16            **MR. ISAACSON:**  953 IS AN INSTANT MESSAGE BETWEEN

17   PEOPLE I DON'T KNOW.  IT IS DATED AFTER MR. SCHULTZ LEAVES THE

18   COMPANY, AND --

19            **THE COURT:**  WHO IS REFERENCED IN THAT MAC ADDRESS?

20            **MR. ISAACSON:**  I DON'T KNOW WHO THESE INDIVIDUALS

21   ARE.  PRESUMABLY, THEY'RE ENGINEERS.

22       THE -- THERE IS A DISCUSSION --

23            **THE COURT:**  WELL, HOLD ON.  WHAT IS THIS?

24            **MR. COUGHLIN:**  YOUR HONOR, IT'S AN INSTANT MESSAGE

25   CHAT ESSENTIALLY ABOUT ROD SCHULTZ LEAVING THE COMPANY BETWEEN

1    TWO APPLE ENGINEERS.  I THINK THEY INTEND TO, YOU KNOW, GO

2    QUESTION MR. SCHULTZ ABOUT HIS PERFORMANCE, AND THIS IS A

3    DOCUMENT THAT TALKS ABOUT "WE'RE LOSING GOOD PEOPLE LIKE ROD

4    SCHULTZ."

5         **THE COURT:**  SO WHAT?  IT'S HEARSAY.  WHO ARE THESE

6    INDIVIDUALS?

7         **MR. COUGHLIN:**  I DON'T DISAGREE, YOUR HONOR.  IT JUST

8    DEPENDS ON WHAT THEY GO INTO.  THEY'RE BOTH ENGINEERS AT

9    APPLE, HARDWARE ENGINEERS.

10        **THE COURT:**  SO --

11        **MR. ISAACSON:**  AND WHAT THEY'RE SPECIFICALLY

12   INTERESTED IS ON PAGE 4 OF 6.  THIS IS, AGAIN, LANGUAGE I

13   THINK THAT THEY WOULD LIKE TO SOMEHOW GET IN FRONT OF THE

14   JURY.  AND YOU'LL SEE SORT OF TWO -- LITTLE OVER HALFWAY DOWN

15   THE PAGE, MR. SCHULTZ'S NAME ON THE RIGHT.

16      AND THEY'RE TALKING ABOUT HOW HE LEFT THE COMPANY.

17        **MR. COUGHLIN:**  AND I -- AND I DON'T INTEND TO GET

18   INTO THIS UNLESS APPLE'S COUNSEL SOMEHOW TRIES TO DISPARAGE

19   MR. SCHULTZ AND HIS PERFORMANCE.  I MEAN, I DIDN'T RECEIVE

20   ANYTHING FROM APPLE LAST NIGHT.  BUT I UNDERSTAND THAT THEY

21   SENT SOMETHING OVER TO MR. SCHULTZ ABOUT A PERFORMANCE

22   INDICATION (SIC).  I DON'T KNOW WHY THEY WOULD SEND THAT TO

23   HIM AND NOT TO ME.

24        **MR. ISAACSON:**  BECAUSE IT'S REBUTTAL.  BUT IN ANY

25   EVENT.

1     **THE COURT:** WELL --

2        **MR. ISAACSON:** THE PREJUDICIAL WORDS SHOULD NOT BE

3   READ OUT LOUD FROM THE --

4        **MR. COUGHLIN:** AND I'M THEN GOING TO SAY -- AHEAD OF

5   TIME, THEN, IT'S CALLED A COACHING DOCUMENT SUPPOSEDLY THAT

6   THEY SENT OVER TO MR. SCHULTZ'S COUNSEL LAST NIGHT, AS I

7   UNDERSTAND, SOMETHING ABOUT HIS PERFORMANCE FROM JUNE OF 2007

8   TO DECEMBER OF 2007.  I THINK IT'S FALSE, AND I WANT TO

9   CHALLENGE IT BEFORE THEY USE IT.  AND WE'D -- I'D LIKE TO HAVE

10  A DISCUSSION WITH THE COURT BEFORE THEY GET INTO IT.

11       **THE COURT:** OKAY.  WELL, THIS DOCUMENT, 953, CANNOT

12  BE USED WITHOUT MY PERMISSION, AND YOU CERTAINLY -- THERE'S NO

13  BASIS FOR USING IT IN THIS TRIAL.  WE DON'T HAVE THE AUTHORS.

14  IT'S HEARSAY.  THERE'S NO WAY TO CROSS-EXAMINE THE PEOPLE WHO

15  WROTE THESE IM MESSAGES.

16     SO DO NOT USE IT UNLESS YOU TALK TO ME IN ADVANCE OUTSIDE

17  THE PRESENCE OF THE JURY, MR. COUGHLIN.

18       **MR. COUGHLIN:** I UNDERSTAND, YOUR HONOR.  I'D JUST

19  LIKE TO SAY ON THE RIGHT SIDE IS ENGINEER SUKI LEE FROM APPLE

20  AND ON THE LEFT SIDE, MUL- -- I'M GOING TO SAY THIS WRONG SO

21  I'LL JUST SPELL IT.  M-C -- AND I SHOULD BE ABLE TO SAY IT

22  RIGHT, 'CAUSE I'M IRISH, BUT M-C-C-L-A-U-G-H-R-Y.

23       **THE COURT:** OKAY.

24       **MR. COUGHLIN:** MCCLAUGHRY.

25       **THE COURT:** ALL RIGHT.  NEXT?

```
 1           MR. ISAACSON:  THAT'S IT.

 2           THE COURT:  ON YOUR SIDE, DO YOU HAVE ANOTHER

 3   DOCUMENT FOR ME TO SEE THAT APPLE SENT OVER.

 4           MR. COUGHLIN:  I DON'T HAVE IT.

 5           MR. ISAACSON:  NO.  BEFORE I WOULD USE ANY DOCUMENT,

 6   I WOULD HAVE TO SHOW IT TO HIM, NOT ON THE SCREEN, AND LAY A

 7   FOUNDATION AND THEN HAVE A DISCUSSION.  AND I DON'T KNOW THAT

 8   I INTEND TO DO THAT.

 9           THE COURT:  ALL RIGHT.  ANY OTHER MIDNIGHT ISSUES TO

10   DISCUSS THIS MORNING AT 8:00 A.M.?

11           MR. ISAACSON:  I THINK THAT'S IT.

12           THE COURT:  DO I HAVE MY JURY HERE?

13           THE CLERK:  YES.

14           THE COURT:  THINK THIS IS THE LAST ONE I'M GOING TO

15   GIVE, YOU GUYS.  HERE'S YOUR TIME SHEETS.  EVERYBODY'S DONE A

16   GOOD JOB GETTING IT IN.  FRANKLY, I'M -- THINK THAT MY

17   ESTIMATE WAS APPROPRIATE.  YOU'RE BEGINNING TO REPEAT

18   YOURSELVES, SO JUST ANOTHER INDICATION THAT TIME LIMITS

19   REQUIRE PEOPLE TO FOCUS THEIR EFFORTS.

20           MR. COUGHLIN:  I THINK IT'S FABULOUS, YOUR HONOR.

21           THE COURT:  YOU'RE ON THE RECORD, MR. COUGHLIN.

22                     (LAUGHTER.)

23           THE COURT:  I'LL LET MY COLLEAGUES KNOW NEXT TIME

24   YOU'RE TRYING A CASE IN FRONT OF THEM AND YOU SAY THAT'S NOT

25   ENOUGH.
```

1    **MR. COUGHLIN:**  WELL, ACTUALLY JUDGE WARE, IN THE

2    FIRST APPLE TRIAL I HAD, HAD 52 HOURS, AND WE -- AS YOU CAN

3    IMAGINE WENT RIGHT TO THE EDGE, 48.

4        **THE COURT:**  WELL, AND JUDGE WHITE JUST DID A TRIAL

5    WITH 45 ON EACH SIDE, AND HE WAS -- THINK HE WENT ALMOST HAD A

6    HEART ATTACK BY THE END, THE REPETITION WAS JUST SO EGREGIOUS.

7    SO IT DOESN'T DO YOU FOLKS ANY FAVORS, FRANKLY.  WE'RE HELPING

8    YOU.  WE REALLY ARE.

9        **MR. COUGHLIN:**  I UNDERSTAND.

10       **THE COURT:**  OKAY.  LET'S GET GOING.

11    (THE FOLLOWING PROCEEDINGS WERE HEARD IN THE PRESENCE OF

12   THE JURY:)

13       **THE COURT:**  GOOD MORNING.  EVERYONE CAN BE SEATED.

14    WE'RE BACK ON THE RECORD.  THE RECORD WILL REFLECT THAT

15   THE JURY IS HERE.  SO I HAVE JUROR NUMBER 1 IN A HAWAIIAN

16   SHIRT.  HE REALLY WANTS TO GET AWAY, I GUESS, FOR THE

17   HOLIDAYS.

18    AND NOW I DON'T HAVE OTHER JURORS IN PARKAS OVER THERE, SO

19   IT SOUNDS LIKE THE -- LOOKS LIKE THE TEMPERATURE HAS INCREASED

20   SUFFICIENTLY.  I KNOW YESTERDAY'S STORM WAS A BIG PROBLEM, BUT

21   I DO UNDERSTAND THAT WE HAVE THREE TO FOUR FEET OF NEW SNOW IN

22   TAHOE, SO IT'S REALLY MUCH NEEDED RAIN.

23    AND WE ALL -- SO WELCOME BACK.  I BELIEVE THAT WE'VE GOT

24   JUST TODAY LEFT OF TESTIMONY FOR YOU, AND WE'LL TALK ABOUT

25   NEXT WEEK'S SCHEDULE.  OKAY?

1    SO WHERE ARE WE?

2    MR. MEDICI.

3         **MR. MEDICI:**  GOOD MORNING.

4         **THE COURT:**  GOOD MORNING, SIR.

5    ALL RIGHT.  MR. DONNELLY, YOU'RE STILL UNDER OATH.

6         **THE WITNESS:**  YES, YOUR HONOR.

7         **THE COURT:**  YOU MAY PROCEED.

8                   <u>**CROSS-EXAMINATION**</u>

9    **BY MR. MEDICI:**

10   **Q.**  GOOD MORNING, MR. DONNELLY.

11   **A.**  GOOD MORNING, MR. MEDICI.

12   **Q.**  LAST NIGHT I WAS ABLE TO SHORTEN UP MY QUESTIONS, SO I'M

13   SORRY THAT I MADE YOU COME BACK, BUT I SHOULD BE JUST A FEW

14   MINUTES HERE, AND THEN WE CAN GET YOU ON YOUR WAY.

15   **A.**  THANK YOU.

16   **Q.**  ALL RIGHT.  SO I BELIEVE WE ENDED YESTERDAY TALKING ABOUT

17   END-OF-LIFE PRICING.  AND I JUST WANT TO KNOW A LITTLE BIT

18   ABOUT HOW END-OF-LIFE PRICING WORKS.

19       IS IT CORRECT THAT AT THE END OF AN IPOD'S LIFE, WHEN A

20   NEW MODEL IS BEING INTRODUCED, THAT APPLE REDUCES THE PRICE OF

21   THE OLD IPOD IN ORDER TO GET RID OF THAT OLD STOCK SO THAT

22   THEY CAN BEGIN SELLING THE NEW IPOD?

23   **A.**  YES, THAT'S A COMMON PRACTICE.

24   **Q.**  OKAY.  AND HOW DOES THE PRICING DIFFER FROM WHAT IT WAS TO

25   WHAT IT IS WHEN IT REACHES THE END OF LIFE?

1    **A.** THAT DEPENDS ON A LOT OF FACTORS.  IF THERE'S A WHOLE

2    BUNCH OF OLDER IPODS THAT ARE STILL IN THE STORES, THEN THAT

3    LEADS US TO HAVE A DEEPER PRICE REDUCTION MOST TIMES TO –– TO

4    SELL IT THROUGH.

5         IF WE HAVE –– SO WE MEASURED IT IN TERMS OF WEEKS' SUPPLY

6    THAT WERE IN THE CHANNEL.  IF THERE WERE TWO WEEKS OF SUPPLY

7    IN THE CHANNEL, THE PRICE REDUCTION MAY NOT BE VERY DEEP.  IF

8    THERE WERE SIX WEEKS OF SUPPLY IN THE CHANNEL, THE PRICE

9    REDUCTION PERHAPS WOULD BE DEEPER.

10   **Q.** AND IT'S VERY COMMON TO CHANGE THE PRICE OF AN IPOD BY

11   VARIOUS AMOUNTS WHEN IT REACHES THE END OF LIFE; IS THAT

12   RIGHT?

13   **A.** YES.  THE –– WE WOULD CONFER HOW FAR TO REDUCE THE PRICE

14   DEPENDING ON COMPARISONS WITH HOW COMPELLING THE NEW MODEL

15   WAS, THE MEMORY CONFIGURATIONS.  WE WOULD TAKE THOSE THINGS

16   INTO CONSIDERATION TO SET THE PRICE.

17   **Q.** EXCELLENT.  THANK YOU.

18        CAN YOU PLEASE PUT UP TRIAL EXHIBIT 2493.

19                    (EXHIBIT PUBLISHED TO JURY.)

20   **BY MR. MEDICI:**

21   **Q.** AND YOU SAW THIS YESTERDAY.  I'D JUST LIKE TO GO TO PAGE

22   4.  CAN YOU BRIEFLY EXPLAIN AGAIN JUST FOR BACKGROUND WHAT

23   THIS –– WHAT THIS PAGE REPRESENTS?

24   **A.** THIS PAGE REPRESENTS THE PLAN OF RECORD PRICING FOR THIS

25   PARTICULAR IPOD TRANSITION.

 1      **MR. MEDICI:**  AND CAN YOU BLOW UP THE -- THE "DIRECT"

 2  ROW, PLEASE.

 3                  (EXHIBIT PUBLISHED TO JURY.)

 4  **BY MR. MEDICI:**

 5  **Q.**  I JUST WANT TO ASK YOU THE -- THE FIRST COLUMN READS -- OR

 6  THE FIRST ROW READS "PRICE," AND THEN THE SECOND TWO ROWS READ

 7  SIMP GM AND THEN ADG GM.

 8      WHAT DO THOSE TWO THINGS MEAN?

 9  **A.**  THIS -- THE SIMP GM STANDS FOR SIMPLE GROSS MARGIN.  IT'S

10  A MEASURE OF THE AMOUNT OF MONEY LEFT OVER AFTER THE PRICE

11  MINUS THE DISCOUNT TO THE DEALER AND THEN SUBTRACTING THE

12  PRODUCT COST.  SO WE HAVE A LEFT OVER BIT WHICH IS THE -- THE

13  GROSS MARGIN.

14      AND THEN THE ADJUSTED GROSS MARGIN TAKES INTO ACCOUNT

15  THE -- THE DISCOUNT PROGRAMS, SOME SCRAP AND REWORK AND SOME

16  OTHER COST OF SALES AND OTHER FACTORS TO REDUCE THE -- THE

17  MARGIN FURTHER.

18  **Q.**  OKAY.  AND THEN LET'S JUST GO TO -- LET'S SAY THE FIFTH

19  ROW -- FIFTH ROW THERE WHICH IS THE EIGHT GIGABYTE RED IPOD

20  NANO; IS THAT RIGHT?

21  **A.**  THE FIFTH COLUMN?  EIGHT GIGABYTE RED OR THE ONE NEXT TO

22  IT, THE 199 OR 299?

23  **Q.**  WELL, LET'S DO THE 299 ONE SINCE IT'S HIGHLIGHTED.

24  **A.**  OKAY.

25  **Q.**  ALL RIGHT.  AND THEN WHAT'S THE -- WHAT'S THE 24.9 THERE?

 1   THAT'S THE PERCENTAGE GROSS MARGIN?

 2   **A.**   THAT IS THE PERCENTAGE GROSS MARGIN WHICH IS THE -- THE

 3   NUMBER THAT WE TALKED ABOUT DIVIDED BACK INTO THE -- THE

 4   SELLING PRICE INTO THE DEALER.

 5   **Q.**   AND THESE -- THIS PLAN OF RECORD, INCLUDING THESE GROSS

 6   MARGINS, ARE TYPICALLY INCLUDED IN THE PRICE COMMITTEE

 7   PACKAGE; IS THAT RIGHT?

 8   **A.**   YES, THEY ARE.

 9          **MR. MEDICI:**   ALL RIGHT.   I HAVE NO FURTHER QUESTIONS.

10   THANK YOU, MR. DONNELLY.

11          **THE WITNESS:**   THANK YOU.

12          **THE COURT:**   REDIRECT?

13          **MS. DEARBORN:**   NO FURTHER QUESTIONS, YOUR HONOR.

14          **THE COURT:**   WELL, THAT WAS QUICK.   BUT IT'S BETTER

15   THAN BEING LONG.

16          **THE WITNESS:**   I ENJOYED A SHOW IN THE CITY LAST

17   NIGHT, SO IT'S FINE.

18          **THE COURT:**   ALL RIGHT.   GOOD ENOUGH.   YOU'RE EXCUSED.

19   THANK YOU.

20          **THE WITNESS:**   THANK YOU, YOUR HONOR.

21          **MR. COUGHLIN:**   YOUR HONOR, PLAINTIFFS WOULD CALL

22   MR. ROD SCHULTZ.

23          **THE COURT:**   WELL, HOLD ON.   HOLD ON.   HOLD ON.   YOU

24   DON'T GET TO DO THAT YET, MR. COUGHLIN.   HAVE A SEAT.   HOLD

25   YOUR HORSES.

```
 1            MR. COUGHLIN:  ALL RIGHT.  HAPPY TO DO THAT.

 2            THE COURT:  MR. ISAACSON -- YOU CAN LEAVE,

 3   MR. DONNELLY.

 4            MS. DEARBORN:  YOUR HONOR, SHOULD WE ASK IF THE JURY

 5   HAS ANY QUESTIONS?

 6            THE COURT:  OH, I SEE.

 7       DOES THE JURY HAVE ANY QUESTIONS?

 8                   (JURORS SHAKING HEADS.)

 9            THE COURT:  THEY DO NOT.  OKAY.

10       NOW, MR. ISAACSON.

11            MR. ISAACSON:  I WAS JUST SIGNALING MS. DEARBORN

12   ABOUT THE JUROR QUESTIONS.

13            THE COURT:  DOES THE DEFENSE HAVE ANY MORE WITNESSES?

14            MR. ISAACSON:  OH.  YES.

15            THE COURT:  THAT LITTLE THING.

16            MR. ISAACSON:  YES.  THANK YOU.

17                   (LAUGHTER)

18            MR. ISAACSON:  THE DEFENSE HAS NO FURTHER WITNESSES,

19   YOUR HONOR.

20            THE COURT:  DOES THE DEFENSE REST?

21            MR. ISAACSON:  SUBJECT TO CHECKING IF WE HAVE ANY

22   OUTSTANDING EXHIBITS THAT HAVE BEEN MOVED TO -- THAT WE'VE

23   OFFERED AND HAVE NOT BEEN ADMITTED, AND CHECKING THAT.

24            MR. COUGHLIN:  NO OBJECTION TO THAT, YOUR HONOR.

25            THE COURT:  OKAY.  NOW THAT WE HAVE THAT ON THE
```

```
 1    RECORD, COUNSEL, IS THERE A REBUTTAL CASE?

 2            MR. COUGHLIN:  THERE IS, YOUR HONOR.

 3        AND WE WOULD CALL MR. ROD SCHULTZ.

 4            THE COURT:  ALL RIGHT.

 5                (PAUSE IN THE PROCEEDINGS.)

 6            MR. COUGHLIN:  MR. SCHULTZ.

 7                (PAUSE IN THE PROCEEDINGS.)

 8                (OFF-THE-RECORD DISCUSSION.)

 9              RODERICK DAVID SCHULTZ,

10    CALLED AS A WITNESS FOR THE PLAINTIFFS, HAVING BEEN DULY

11    SWORN, TESTIFIED AS FOLLOWS:

12            THE WITNESS:  I DO.

13            THE CLERK:  PLEASE BE SEATED, AND THEN WOULD YOU

14    PLEASE STATE YOUR FULL NAME -- SCOOT UP TO THE MIC -- YOUR

15    FULL NAME AND SPELL YOUR LAST NAME.

16            THE WITNESS:  SO RODERICK DAVID SCHULTZ.  LAST NAME

17    SCHULTZ, S-C-H-U-L-T-Z.

18            THE COURT:  GOOD MORNING, MR. SCHULTZ.

19            THE WITNESS:  GOOD MORNING.

20            THE COURT:  YOU MAY PROCEED.

21              DIRECT EXAMINATION

22    BY MR. COUGHLIN:

23    Q.  MR. SCHULTZ, IS IT FAIR TO SAY THIS IS THE LAST PLACE YOU

24    WOULD LIKE TO BE TODAY?

25    A.  THAT'S A PRETTY GOOD STATEMENT.
```

```
 1    Q.  LET ME SHOW YOU WHAT'S BEEN MARKED PREVIOUSLY AS EXHIBIT

 2    316.

 3                    (EXHIBIT PUBLISHED TO JURY.)

 4         MR. COUGHLIN:  IF I COULD TAKE THOSE BOOKS THAT YOU

 5    HAVE IN FRONT OF YOU AWAY FROM YOU.

 6                    (PAUSE IN THE PROCEEDINGS.)

 7    BY MR. COUGHLIN:

 8    Q.  AND YOU CAN OPEN THE BOOK.  IT'S IN THE BOOK, MR. SCHULTZ,

 9    IF YOU WANT TO OPEN THE BOOK.

10        MR. SCHULTZ, THIS IS A DOCUMENT DATED APRIL 25TH, 2006.

11    AND IF WE FLIP TO THE -- AND ON THE FRONT PAGE IT'S AN EMAIL

12    FROM YOU TO CHRIS WYSOCKI; IS THAT RIGHT?

13    A.  WYSOCKI.

14    Q.  OKAY.  AND IF WE FLIP TO THE NEXT PAGE, IT SAYS "IPOD

15    DATABASE VERIFICATION A.P.I."?

16                    (EXHIBIT PUBLISHED TO JURY.)

17         THE WITNESS:  RIGHT.

18    BY MR. COUGHLIN:

19    Q.  DID YOU DRAFT THIS DOCUMENT?

20    A.  YES.

21    Q.  ARE YOU THE ARCHITECT OF THE DATABASE VERIFICATION?

22         MR. ISAACSON:  OBJECTION, LEADING.

23         MR. COUGHLIN:  YOUR HONOR, I'D LIKE TO HAVE THIS

24    WITNESS DECLARED AS AN ADVERSE WITNESS.

25         THE COURT:  OH, THERE'S NO FOUNDATION FOR THAT YET.
```

1    YOU CAN SET SOME FOUNDATION, BUT OTHERWISE, HE'S YOUR WITNESS,

2    MR. COUGHLIN.  YOU KNOW.

3         **MR. COUGHLIN:**  I UNDERSTAND, YOUR HONOR.  I'LL SET

4    THE FOUNDATION.

5    **Q.**  YOU USED TO WORK AT APPLE, DIDN'T YOU, MR. SCHULTZ?

6    **A.**  THAT'S RIGHT.

7    **Q.**  AND YOU'VE BEEN WAITING A LONG TIME FOR THIS DAY TO COME.

8    YOU THOUGHT IT MIGHT COME TO IT THAT YOU WOULD HAVE TO COME

9    TESTIFY HERE; IS THAT RIGHT?

10   **A.**  YEAH, WE'VE BEEN -- I'VE BEEN IN CONTACT WITH THE APPLE

11   ATTORNEYS FOR ABOUT EIGHT YEARS NOW IN THIS CASE.

12   **Q.**  OKAY.  AND AT DIFFERENT TIMES THEY TALKED TO YOU ABOUT

13   COMING AND TESTIFYING; IS THAT RIGHT?

14   **A.**  WE -- I HAD NO VISIBILITY INTO THE STATUS OF THIS CASE

15   OTHER THAN A PHONE CALL OCCASIONALLY FROM -- FROM THE

16   ATTORNEYS TO TELL ME THAT I WAS ON A LIST.  THEY WERE JUST,

17   YOU KNOW, CHECKING IN WITH ME.  AND THEN ABOUT SEVEN OR EIGHT

18   WEEKS AGO, THEY TOLD THIS WAS GOING TO TRIAL BUT I PROBABLY

19   WAS NOT GOING TO GET CALLED.  AND THEN ABOUT THREE WEEKS AGO

20   THEY TOLD ME THAT I WAS GOING TO BE SUBPOENAED BY YOU GUYS.

21   **Q.**  AND DID YOU THINK TO YOURSELF MAYBE I'LL TRY TO DUCK THAT

22   SUBPOENA?

23   **A.**  I DID NOT, BUT I -- I MEAN IT WAS SOMETHING THAT I WAS NOT

24   LOOKING FORWARD TO.

25   **Q.**  AND THEN WE SERVED YOU, RIGHT?

1    **A.**   THAT'S CORRECT.

2    **Q.**   AND THEN YOU KNEW I WANTED TO MEET YOU, RIGHT?

3    **A.**   THAT'S RIGHT.

4    **Q.**   OKAY.  AND WE MET AT THE MERCURY CAFE, YOU AND YOUR

5    ATTORNEY, AND I BROUGHT A COUPLE OF SMART-LOOKING ENGINEER

6    GUYS?

7    **A.**   THEY LOOKED BRILLIANT.

8    **Q.**   AND YOU DIDN'T WANT TO TALK TO US, RIGHT?

9    **A.**   NO.

10   **Q.**   YOU DIDN'T HARDLY SAY ANYTHING; IS THAT RIGHT?

11   **A.**   THAT'S RIGHT.

12   **Q.**   OKAY.

13        AND I SAID I REALLY NEEDED TO TALK TO YOU BEFORE YOU COME

14   AND TESTIFY; DO YOU REMEMBER THAT?

15   **A.**   THAT'S RIGHT.

16   **Q.**   OKAY.  AND THEN I SET UP ANOTHER MEETING WITH YOU AND YOUR

17   ATTORNEY AT A CAFE ON HAYES STREET; DO YOU REMEMBER THAT?

18   **A.**   I DO.

19   **Q.**   AND WE SAT OUTSIDE THAT CAFE AND TALKED A LITTLE BIT; IS

20   THAT CORRECT?

21   **A.**   THAT'S CORRECT.

22   **Q.**   AND YOU DIDN'T WANT TO TALK TO ME THAT NIGHT; IS THAT

23   CORRECT?

24   **A.**   THAT'S RIGHT.

25   **Q.**   AND I TOLD YOU A LITTLE BIT ABOUT THE THEORY OF OUR CASE

1   AND SAID THAT THE DATABASE VERIFICATION CODE WAS AT THE HEART

2   OF IT; IS THAT CORRECT?

3   **A.**   THAT'S RIGHT.

4   **Q.**   OKAY.  WE TALKED A LITTLE BIT ABOUT RSA TECHNOLOGY; IS

5   THAT CORRECT?

6   **A.**   WE DID.

7   **Q.**   AND WE TALKED ABOUT WHETHER THIS WAS A PRODUCT IMPROVEMENT

8   OR NOT; IS THAT CORRECT?

9   **A.**   THAT'S RIGHT.

10   **Q.**   AND YOU GAVE AN OPINION ABOUT THAT; IS THAT CORRECT?

11   **A.**   I DID.

12   **Q.**   IS THIS A PRODUCT IMPROVEMENT?

13           **MR. ISAACSON:**  OBJECTION, LEADING.

14           **THE COURT:**  OVERRULED.

15           **MR. ISAACSON:**  NO --

16   **BY MR. COUGHLIN:**

17   **Q.**   WAS THIS DATABASE VERIFICATION A PRODUCT IMPROVEMENT?

18   **A.**   I DID NOT SEE THIS AS A PRODUCT IMPROVEMENT.

19   **Q.**   DID YOU SEE IT AS A SECURITY IMPROVEMENT?

20   **A.**   NO.

21   **Q.**   LET'S TALK ABOUT WHAT YOU SAW AS THE PROBLEM HERE.

22   **A.**   THIS WAS DESIGNED AS A HANDSHAKE TO AUTHENTICATE THE MUSIC

23   PLAYER THAT WAS TRYING TO SYNC TO THE IPOD.  AND -- AND IT'S A

24   HANDSHAKE, SO THE IPOD WOULD HAND THE PLAYER ITS SERIAL

25   NUMBER, REFERRED TO AS THE GUID IN THIS DOCUMENT, AND IF THE

1    PLAYER COULD MANIPULATE THE GUID MATHEMATICALLY IN A WAY AND

2    PROVE THAT IT WAS ITUNES, THE IPOD WOULD ALLOW THE PLAYER TO

3    SYNC MUSIC TO ITS DATABASE.

4    **Q.**   OKAY.  AND IT SAYS, "TO PREVENT INJECTION OF CONTENT AND

5    IPOD DATABASES FROM CLIENTS OTHER THAN ITUNES INTO THE DRM

6    PROTECTED OR NON-DRM PROTECTED CONTENT."

7        CAN YOU TELL US WHAT THAT MEANS?

8    **A.**   THE CONTENT WAS TREATED AS TWO DIFFERENT TYPES OF -- OF

9    CONTENT.  PROTECTED CONTENT IS DRM CONTENT.  WHICH MEANT WE

10   HAD TO OPEN UP THE KEYBAG AND DO, YOU KNOW, CRYPTOGRAPHIC

11   MANIPULATIONS OF THE KEYS IN ORDER TO -- TO ACCESS THEM TO

12   DECRYPT THE CONTENT.

13       NON-ENCRYPTED CONTENT WAS ANYTHING THAT CAME FROM A RIPPED

14   CD AT THIS TIME, RIGHT?  THE -- ALL CONTENT WAS PRETTY MUCH

15   DRM'S ON ITUNES.  SO WE CLASSIFIED IT AS EITHER DRM OR NON-DRM

16   CONTENT.  AND THIS WAS INTENDED TO BLOCK 100 PERCENT OF

17   CONTENT COMING FROM A NON-ITUNES CLIENT.

18   **Q.**   SO IT WAS INTENDED TO BLOCK DRM CONTENT WHICH IS PROTECTED

19   MUSIC FROM OTHER SOURCES, OTHER SOURCES THAN ITUNES; IS THAT

20   RIGHT?

21   **A.**   ANY MUSIC THAT -- IT WAS INTENDED TO PROTECT -- TO PREVENT

22   MUSIC THAT WAS COMING FROM A NON-ITUNES CLIENT.

23   **Q.**   SO COMPETITORS.

24   **A.**   I -- I DON'T KNOW WHAT IS CONSIDERED A COMPETITOR OR NOT A

25   COMPETITOR OF ITUNES AT THIS TIME.  RIGHT?  IT'S A MUSIC

1  PLAYER.

2  **Q.**  OKAY.  AND WHAT WAS THE PROPOSAL?  IF YOU CAN TELL US

3  EXACTLY HOW IT WORKS.

4    MR. SCHULTZ, LET'S STOP BEFORE YOU ANSWER THAT.

5    THEN YOU KNEW I WANTED TO MEET WITH YOU AND GO THROUGH

6  THESE DOCUMENTS BEFOREHAND BUT YOU REFUSED TO MEET ME; IS THAT

7  CORRECT?

8  **A.**  THAT'S CORRECT.  I DID NOT WANT TO SEE THESE DOCUMENTS.

9  **Q.**  OKAY.

10    LET'S GO THROUGH -- TELL ME WHAT THE PROPOSAL WAS.

11  **A.**  (REVIEWING DOCUMENT.)

12    SO IT'S ESSENTIALLY WHAT I JUST SAID.  WE -- A MAC IS A

13  MESSAGE AUTHENTICATION CODE.  AND WE WOULD CREATE THIS MAC TO

14  VALIDATE THAT THE CONTENT HAS COME FROM ITUNES.  I -- IT'S

15  BEEN A LONG TIME SINCE I'VE SEEN THIS DOCUMENT, AND I'M TRYING

16  TO GO THROUGH THESE DETAILS RIGHT NOW SO GIVE ME A SECOND.

17    (REVIEWING DOCUMENT.)

18  **Q.**  AND MR. SCHULTZ, A COPY OF THE DOCUMENT IS IN THAT BINDER.

19  **A.**  YEAH.

20  **Q.**  IT MIGHT BE EASIER TO LOOK AT THE DOCUMENT.

21  **A.**  (REVIEWING DOCUMENT.)

22    SO, YEAH.  I MEAN IT SAYS IT RIGHT HERE.  THE MAC KEY

23  PROVIDES AUTHENTICATION OF --

24    **THE COURT:**  SO, MR. SCHULTZ, I TAKE IT YOU'VE NEVER

25  HAD TO TESTIFY IN COURT.

```
 1            THE WITNESS:  NO.

 2            THE COURT:  THAT'S ALL RIGHT, MOST PEOPLE DON'T.  BUT

 3    MY COURT REPORTER HAS --

 4            THE WITNESS:  I APOLOGIZE.

 5            THE COURT:  -- TO TYPE DOWN EVERY SINGLE WORD YOU

 6    SAY.

 7            THE WITNESS:  GOT IT.

 8            THE COURT:  AND SO WHEN YOU TALK VERY FAST, SHE CAN'T

 9    DO THAT.

10            THE WITNESS:  OKAY.  SURE.  I'LL SLOW DOWN.

11                 (OFF-THE-RECORD DISCUSSION.)

12        SO THE MAC KEY -- THERE'S A SENTENCE IN HERE.  IT SAYS,

13    "THE MAC KEY PROVIDES AUTHENTICATION OF THE SOURCE OF THE

14    DATA, AND THE MAC PROVIDES AUTHENTICITY OF THE DATA."

15    BY MR. COUGHLIN:

16    Q.  AND WHAT PAGE ARE YOU ON?

17    A.  PAGE 3 OF 7.

18    Q.  OKAY.  AND WHAT DOES THAT MEAN, "THE MAC"?  WHAT ARE WE

19    TALKING ABOUT WHEN WE'RE TALKING ABOUT THE MAC KEY?

20    A.  SO A HASH IS BASICALLY A FINGERPRINT OF SOMETHING.  AND

21    YOU CAN CREATE SOMETHING CALLED A KEYED HASH, WHICH IS A WAY

22    TO SAY, HEY, LISTEN, I'M GOING TO CREATE A FINGERPRINT BUT

23    IT'S SPECIFIC TO THIS KEY.

24        AND THAT'S LITERALLY WHAT WE WERE DOING.  WE WERE SAYING,

25    LISTEN, THERE'S A KEYED HASH ON HERE THAT WE'RE USING SO THAT
```

**RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530**

1   WE CAN CREATE A FINGERPRINT BUT IT'S NOT A GENERALIZED

2   ALGORITHM.  IT'S AN ALGORITHM THAT WE CAN ONLY USE IF YOU HAVE

3   THE KEY.

4        AND THAT'S-- THAT IS -- IT LOOKS LIKE THAT'S WHAT I WAS

5   ATTEMPTING TO DO HERE.  IT'S BEEN A REALLY LONG TIME SINCE

6   I'VE SEEN THIS DOC.

7   **Q.**  AND WHAT'S THE IMPACT OF CREATING THAT, QUOTE,

8   "FINGERPRINT"?  IS IT TO RECOGNIZE IT IF IT'S A DIFFERENT

9   FINGERPRINT COMING IN?

10  **A.**  YEAH.  I MEAN YOU CAN DISCRIMINATE BASED UPON THE

11  FINGERPRINT NOW.  SO YOU CAN SAY, YES, I'M GOING THE ALLOW

12  THIS OR NOT ALLOW THIS BASED UPON THE FACT THAT I'VE NOW

13  AUTHENTICATED WHERE IT'S COMING FROM OR IF THE OTHER SIDE HAS

14  ACCESS TO THAT SAME KEY.

15  **Q.**  OKAY.  SO SOME THIRD PARTY, LET'S SAY A THIRD-PARTY PLAYER

16  LIKE WINAMP -- DO YOU KNOW WHO WINAMP IS?

17  **A.**  I'M FAMILIAR WITH WINAMP.

18  **Q.**  OWNED BY AOL, CORRECT?

19  **A.**  YEAH.  YEAH.

20  **Q.**  AND DO YOU KNOW -- DO YOU KNOW J. RIVER MEDIA CENTER?  DO

21  YOU KNOW WHO THEY ARE?

22  **A.**  I DON'T.

23  **Q.**  OKAY.  THIRD-PARTY PLAYER, YOU DON'T KNOW THEM?

24  **A.**  NO.

25  **Q.**  SO IF A THIRD-PARTY PLAYER TRIED TO ORGANIZE YOUR MUSIC ON

1    YOUR IPOD, THE IPOD WOULD RECOGNIZE THAT IT WASN'T FROM

2    ITUNES; IS THAT -- EXPLAIN TO ME HOW THAT WORKS.

3    **A.**  SO THE DATABASE HAD ALREADY -- THE DATABASE FORMAT HAD

4    BEEN REVERSE ENGINEERED AND IT WAS READILY AVAILABLE ON LINE.

5    SO PEOPLE WERE USING THIRD-PARTY MUSIC PLAYERS TO SYNC TO THE

6    IPOD, NOT JUST ITUNES.  AND WE ADDED AN EXTRA LAYER TO THE

7    DATABASE SAYING, LISTEN, IF YOU WANT TO WRITE TO THE IPOD

8    DATABASE, YOU MUST NOW BE AN ITUNES CLIENT.

9    **Q.**  NOW THAT HAD BEEN GOING ON FOR YEARS, THOUGH.  THAT HAD

10   BEEN GOING ON SINCE THE IPOD WAS RELEASED; IS THAT CORRECT?

11   **A.**  YEAH, FROM WHAT I CAN TELL.

12   **Q.**  YEAH?

13   **A.**  ONCE THE DATABASE WAS REVERSED, THAT'S -- PEOPLE WERE ABLE

14   TO DO THAT.

15   **Q.**  OKAY.  AND THEY DID IT FOR YEARS; IS THAT CORRECT?

16   **A.**  YEAH.

17   **Q.**  OKAY.  AND THAT HAD NEVER BEEN A PROBLEM AT APPLE BEFORE?

18   **A.**  NOT THAT I WAS AWARE OF.

19        **MR. ISAACSON:**  OBJECTION, FOUNDATION.

20        **THE COURT:**  SUSTAINED.

21   **BY MR. COUGHLIN:**

22   **Q.**  TO YOUR KNOWLEDGE, HAD IT BEEN A PROBLEM AT APPLE BEFORE?

23   **A.**  NO.

24   **Q.**  AND WHEN YOU -- HOW WERE -- WHO TOLD YOU TO DESIGN THE

25   DATABASE VERIFICATION?

1    **A.**   MY MANAGER.

2    **Q.**   WHO WAS THAT?

3    **A.**   AUGUSTIN FARRUGIA.

4    **Q.**   AND DID YOU HAVE A CONVERSATION ABOUT WHO IT WAS MEANT TO

5    KEEP OUT?

6    **A.**   I WAS TOLD THAT IT WAS MEANT TO KEEP OUT LINUX PLAYERS.

7    **Q.**   THIRD PARTY -- THIRD-PARTY PLAYERS, ESSENTIALLY, THE LINUX

8    COMMUNITY?

9    **A.**   LINUX WOULD BE A SPECIFIC EXAMPLE OF A THIRD-PARTY PLAYER.

10   **Q.**   NOW WERE YOU TOLD TO -- DID YOU DESIGN THIS BY YOURSELF?

11   **A.**   I DESIGNED THE HANDSHAKE.

12   **Q.**   OKAY.

13   **A.**   THE AUTHENTICATION MECHANISM TO VALIDATE WHETHER IT WAS

14   REALLY AN ITUNES CLIENT.  THERE'S A LOT OF OTHER FUNCTIONALITY

15   AROUND THIS THAT HOOKED UP INTO ITUNES.  SO AT THE END OF DAY,

16   ITUNES HAD TO MAKE THE CHOICE WHETHER TO HONOR THE -- THE

17   HANDSHAKE OR NOT.  I JUST PRESENTED THE -- THE TOOL FOR DOING

18   IT.

19   **Q.**   OKAY.  DO YOU KNOW IF IT WAS IMPLEMENTED, THIS TOOL?

20   **A.**   YES, IT WAS.

21   **Q.**   OKAY.  DID YOU DO ANY WORK ON IT FROM WHEN YOU DESIGNED IT

22   TO WHEN IT WAS IMPLEMENTED?  DID YOU DO MORE WORK ON IT?

23   **A.**   ONCE I DESIGNED THE HANDSHAKE, THE CODE WAS COMMITTED, AND

24   THAT WAS IT.  NO MODIFICATIONS WERE DONE UNTIL IT WAS

25   BROKEN --

1        (OFF-THE-RECORD DISCUSSION.)

2        **THE WITNESS:**  NO MODIFICATIONS WERE DONE TO THE

3   PROD- –– TO THE AUTHENTICATION PROTOCOL ONCE I COMMITTED THE

4   CODE.

5   **BY MR. COUGHLIN:**

6   **Q.**  LET ME SHOW YOU WHAT'S BEEN MARKED AS EXHIBIT 327.  IT'S

7   IN YOUR BOOK THERE.

8        (EXHIBIT PUBLISHED TO JURY.)

9   **BY MR. COUGHLIN:**

10  **Q.**  THIS APPEARS TO BE A DOCUMENT DATED MAY 17TH, 2006.

11  **A.**  YEAH.

12  **Q.**  AND IT SEEMS TO BE –– IT'S TWO PAGES LONGER.  CAN YOU TELL

13  US WHAT THIS IS?  IS THIS THE SAME ––

14  **A.**  MORE THAN LIKELY JEAN-FRANCOIS AND I WENT THROUGH AND DID

15  A REVIEW OF THE PROTOCOL OR THE ALGORITHM, AND HE PROBABLY

16  MADE SOME SUGGESTIONS.  AND –– BECAUSE JEAN-FRANCOIS DID MOST

17  OF WORK ON THE IPOD.  I WORKED MOSTLY ONLY THE CLIENTS.

18  AND –– BUT THIS AUTHENTICATION ALGORITHM HAD TO RUN

19  SYMMETRICALLY ON BOTH SIDES.  SO BASED UPON A MEETING, I'M

20  GUESSING, WITH JEAN-FRANCOIS, I MADE SOME MODIFICATIONS.

21      **MR. ISAACSON:**  OBJECTION, YOUR HONOR, TO TESTIMONY

22  ABOUT GUESSING.

23  **BY MR. COUGHLIN:**

24  **Q.**  I CAN'T SAY THAT NAME.  WHO IS THAT GENTLEMAN YOU'RE

25  TALKING ABOUT?

1   **A.**   JEAN-FRANCOIS RIENDEAU?

2   **Q.**   YES.  WHO WAS HE?

3   **A.**   HE WAS A COWORKER OF MINE.

4   **Q.**   AND SO YOU GOT TOGETHER AND TALKED ABOUT THE DATABASE

5   VERIFICATION; IS THAT RIGHT?

6   **A.**   YES.

7   **Q.**   WHERE WAS HE LOCATED?

8   **A.**   RIGHT ACROSS THE HALL FROM ME.

9   **Q.**   OKAY.

10       LET ME SHOW YOU WHAT'S BEEN MARKED AS EXHIBIT 0006.

11              (EXHIBIT PUBLISHED TO JURY.)

12  **BY MR. COUGHLIN:**

13  **Q.**   MR. SCHULTZ, JUST TAKE A MINUTE AND FLIP THROUGH THAT SO

14  YOU CAN LOOK AT THAT DOCUMENT IN YOUR BOOK.  IT MIGHT TAKE A

15  MINUTE, BUT JUST FLIP THROUGH EVERY PAGE SO YOU GET A -- SO

16  YOU UNDERSTAND WHAT WE'RE TALKING ABOUT.

17  **A.**   (REVIEWING DOCUMENT.)

18       OKAY.

19  **Q.**   MR. SCHULTZ, THIS IS A -- AN EMAIL DATED JANUARY 27, 2006.

20  IT HAS YOUR NAME ON IT.  DO YOU RECALL RECEIVING THIS

21  DOCUMENT?

22  **A.**   I -- I DO NOT.  IN THIS FORMAT?  I DON'T REMEMBER SEEING

23  THIS DOCUMENT BEFORE.

24  **Q.**   OKAY.

25       ARE YOU FAMILIAR WITH THE CONTENTS OF IT?

SCHULTZ – DIRECT / COUGHLIN

1   **A.**   YES.

2   **Q.**   LET ME ASK YOU TO FLIP TO EXHIBIT 807.

3                  (EXHIBIT PUBLISHED TO JURY.)

4   **BY MR. COUGHLIN:**

5   **Q.**   THIS IS A DOCUMENT DATED MAY 12TH, 2006.

6   **A.**   YEAH.

7   **Q.**   AND WHO -- WHO DID YOU RECEIVE THIS FROM?

8   **A.**   GIANPAOLO FASOLI.

9   **Q.**   COULD YOU SAY THAT A LITTLE --

10  **A.**   G.P. FASOLI?  GIANPAOLO --

11  **Q.**   UH-HUH.  AND IT SAYS, "THE COMPANY I WAS LOOKING FOR

12  YESTERDAY IS CALLED NAVIO.  HERE'S THE STORY."

13  **A.**   RIGHT.

14  **Q.**   WHAT WAS THE BACKGROUND OF THIS?  WHY WOULD YOU BE

15  EXCHANGING AN EMAIL WITH -- WHO -- WHAT WAS HIS POSITION AT

16  APPLE?

17  **A.**   HE WAS A COWORKER OF MINE.

18  **Q.**   OKAY.  AND WHY WOULD HE BE EXCHANGING THIS STORY ABOUT

19  NAVIO WITH YOU; DO YOU KNOW?

20  **A.**   I DON'T RECALL THE SPECIFIC EMAIL.  I CAN SPECULATE IF

21  YOU'D LIKE ME TO ON WHY HE WOULD HAVE SENT THIS.

22  **Q.**   I DON'T WANT YOU TO SPECULATE.

23      DO YOU REMEMBER THAT THERE WAS A COMPANY EMERGING CALLED

24  NAVIO AROUND THIS TIME FRAME?

25  **A.**   IT'S NOT SOMETHING THAT I -- I RECALL.

1    **Q.**  LET ME SHOW YOU EXHIBIT 465.

2        TAKE A MINUTE AND READ THAT.  AND IF WE COULD FOCUS ON THE

3    PARAGRAPH, PULL UP THE PARAGRAPH THERE.

4            **THE WITNESS:**  YOU WANT ME TO FOCUS ON THE FIRST

5    PARAGRAPH?

6    **BY MR. COUGHLIN:**

7    **Q.**  YES, PLEASE.

8    **A.**  (REVIEWING DOCUMENT.)

9                (EXHIBIT PUBLISHED TO JURY.)

10           **MR. ISAACSON:**  YOUR HONOR, WE'RE PUTTING ON THE

11   SCREEN THE EMBEDDED HEARSAY.

12           **THE COURT:**  IT'S A PREVIOUSLY ADMITTED DOCUMENT.

13           **MR. ISAACSON:**  I WOULD LIKE THE JURY TO BE TOLD THAT

14   THIS IS HEARSAY THAT'S BEING PUT ON THE SCREEN SO THEY

15   UNDERSTAND WHAT THEY'RE LOOKING AT.

16           **THE COURT:**  WELL, ALL RIGHT.

17       LADIES AND GENTLEMEN, I'VE TOLD YOU THIS BEFORE.  I'LL

18   JUST REMIND YOU THAT FOR PURPOSES OF THE EVIDENCE, WHEN YOU

19   HAVE ARTICLES OF EVIDENCE THAT HAVE THESE NEWS ARTICLES OR

20   BLOGS, ET CETERA, THEY ARE NOT -- THEY CAN NOT BE EVIDENCE FOR

21   THE TRUTH OF WHAT IS SAID IN THERE, THAT IS, IT CAN ONLY BE

22   INTRODUCED FOR OTHER PURPOSES SUCH AS NOTICE.

23       OKAY?

24   **BY MR. COUGHLIN:**

25   **Q.**  THIS DOCUMENT AT THE TOP, IF WE CAN GO -- THIS IS AN

1    ARTICLE THAT CAME OUT, AND THAT IS HEARSAY.  AND AT THE TOP --

2    AND -- AND THE ARTICLE TALKS ABOUT APPLE "HAS BLOCKED THE NEW

3    IPODS FROM SYNCING WITH THIRD-PARTY APPLICATION, I.E.,

4    ANYTHING THAT ISN'T ITUNES."

5        DO YOU SEE THAT?

6    **A.**   I DO.

7    **Q.**   IS THIS -- IS -- BLOCKING LINUX CONSISTENT WITH WHAT YOU

8    WERE TOLD THE PURPOSE OF THE DATABASE VERIFICATION CODE WAS?

9    **A.**   YES.

10   **Q.**   OKAY.

11       AND AT THE TOP, IT SAYS "IT LOOKS LIKE IT'S STARTING."  DO

12   YOU SEE THAT?

13   **A.**   YES.

14   **Q.**   OKAY.  NOW, THIS VERIFICATION CODE THAT YOU DESIGNED, IT

15   WAS CRACKED PRETTY QUICKLY TO YOUR KNOWLEDGE; IS THAT CORRECT?

16   **A.**   IT TOOK ABOUT THREE DAYS.

17   **Q.**   OKAY.  MIGHT HAVE EVEN BEEN SHORTER TIME, RIGHT?

18   **A.**   PROBABLY.

19   **Q.**   OKAY.  BUT IT DIDN'T NECESSARILY -- IT STILL DID ITS JOB,

20   RIGHT?  IT WAS STILL ACTIVATED AT SOME TIME IN THE IPODS,

21   RIGHT?

22   **A.**   YES.

23   **Q.**   OKAY.  AND SO IT WOULD STILL KEEP OFF PEOPLE WHO DIDN'T

24   GET AROUND IT OR REVERSE ENGINEER IT; IS THAT RIGHT?

25   **A.**   THAT'S CORRECT.

1    Q.  AND IT WASN'T -- YOU DIDN'T DESIGN THIS TO KEEP OUT

2    CORRUPTION; IS THAT CORRECT?

3    A.  I WAS TOLD THAT THIRD-PARTY PLAYERS WERE CORRUPTING THEIR

4    DATABASE, SO AUTHENTICATE THE THIRD-PARTY PLAYER AND PREVENT

5    THEM FROM SYNCING.

6    Q.  OKAY.  AND YOU DIDN'T THINK IT WAS A SECURITY UPDATE,

7    THOUGH, DID YOU?

8    A.  NO.

9    Q.  AND THOSE THIRD-PARTY PLAYERS HAD BEEN OPERATING ON APPLE

10   FOR YEARS; IS THAT CORRECT?

11   A.  THAT'S CORRECT.

12   Q.  OKAY.

13          MR. COUGHLIN:  I HAVE NO FURTHER QUESTIONS, YOUR

14   HONOR.

15          THE COURT:  CROSS?

16                    **CROSS-EXAMINATION**

17   BY MR. ISAACSON:

18   Q.  HI, MR. SCHULTZ.  MY NAME'S BILL ISAACSON.

19   A.  GOOD TO MEET YOU.

20   Q.  WE ARE MEETING FOR THE FIRST TIME.  YOU HAVE TALKED TO

21   SOME APPLE LAWYERS BY TELEPHONE, I THINK, BUT YOU HAVE

22   NEVER -- SINCE YOU LEFT THE COMPANY, YOU HAVE NOT HAD MEETINGS

23   WITH APPLE LAWYERS ABOUT THIS CASE; IS THAT RIGHT?

24   A.  I'VE HAD NO PHYSICAL MEETINGS WITH APPLE ABOUT THIS CASE.

25   Q.  RIGHT.  AND YOU'VE HAD HOW MANY PHYSICAL MEETINGS WITH

1    MR. COUGHLIN OR HIS CREW?

2    **A.**  TWO.

3    **Q.**  OKAY.  NOW, WHILE YOU WERE AT APPLE, YOU WERE NOT PART OF

4    THE MANAGEMENT, CORRECT?

5    **A.**  THAT'S CORRECT.

6    **Q.**  RIGHT.  AND YOU DID NOT PARTICIPATE IN MEETINGS WHERE

7    BUSINESS STRATEGY WAS SET?

8    **A.**  THAT'S RIGHT.

9    **Q.**  YOU DIDN'T PARTICIPATE IN BUSINESS MEETINGS ABOUT FAIRPLAY

10   OR WHAT MANAGEMENT WANTED TO DO WITH FAIRPLAY?

11   **A.**  CORRECT.

12   **Q.**  YOU DIDN'T EVER SPEAK WITH STEVE JOBS.

13   **A.**  NO.

14   **Q.**  OKAY.  YOU DIDN'T SPEAK WITH EDDY CUE ABOUT APPLE'S

15   BUSINESS STRATEGY?

16   **A.**  NO.

17   **Q.**  AND YOU NEVER -- YOU WERE NEVER AT ANY MEETING ABOUT

18   PRICING OF IPODS?

19   **A.**  NO.

20   **Q.**  NEVER HEARD ANYTHING ABOUT WHAT YOU WERE DOING WITH THE

21   DVC HAVING ANYTHING TO DO WITH PRICING OF IPODS?

22   **A.**  THAT'S RIGHT.

23   **Q.**  OKAY.  NOW YOU STARTED AT APPLE IN JANUARY 2006; IS THAT

24   RIGHT?

25   **A.**  CORRECT.

1   Q.   AND SO THAT'S JANUARY 2006, AUGUSTIN FARRUGIA WAS ALREADY

2   WORKING AT APPLE FOR SOME PERIOD OF MONTHS, RIGHT?

3   A.   I BELIEVE HE HAD COME IN IN 2005, IN FEBRUARY OF 2005,

4   AROUND THAT TIME.

5   Q.   THERE WAS ALREADY A TEAM IN PLACE THAT YOU WERE JOINING

6   THAT WAS WORKING ON UPGRADING FAIRPLAY?

7   A.   I WAS THE THIRD PERSON TO JOIN THAT TEAM.

8   Q.   RIGHT.

9        AND AUGUSTIN FARRUGIA HAD ALREADY STARTED REDESIGNING

10  FAIRPLAY BEFORE YOU -- WORKING ON REDESIGNING FAIRPLAY BEFORE

11  YOU JOINED APPLE.

12  A.   THAT'S CORRECT.

13  Q.   ALL RIGHT.  AND IT WAS A TOTAL -- TOTAL RE-ARCHITECTURE OF

14  THE FAIRPLAY DRM, CORRECT?

15  A.   AT THE TIME THEY WERE SWITCHING OVER TO WHITE-BOX

16  CRYPTOGRAPHY IN THE -- IN THE DRM.

17  Q.   THEY WERE CHANGING CRYPTOGRAPHY OF THE DRM IN PREPARATION

18  FOR 7.0, CORRECT?

19  A.   YES, I'M NOT FAMILIAR WITH THE NUMBERS OF THE -- THE

20  RELEASES.

21  Q.   ALL RIGHT.  SO WOULD -- DOES IT HELP YOU -- DO YOU

22  REMEMBER THERE WAS A SEPTEMBER 2006 RELEASE?

23  A.   YES.

24  Q.   OKAY.  AND I'LL TELL YOU THAT WAS 7.0.

25  A.   GOT IT.

SCHULTZ – CROSS / ISAACSON

1   Q.   I DON'T THINK ANYBODY'S DISPUTING THAT IN THIS CASE.

2        AND SO FOR ALL THOSE MONTHS BEFORE YOU JOINED THE COMPANY,

3   AUGUSTIN FARRUGIA AND THEN A GROWING TEAM THROUGH SEPTEMBER

4   2006 WORKED ON A COMPLETE SOFTWARE RE-ARCHITECTURE OF -- OF

5   FAIRPLAY, CORRECT?

6   A.   I MEAN, IT WAS -- IT WAS A GROWING PIECE OF CODE, RIGHT?

7   BUT YES, SIGNIFICANT IMPROVEMENTS AND CHANGES WERE MADE TO THE

8   CRYPTOGRAPHY TO HIDE KEYS, PROVIDE ALL KINDS OF NEW

9   FUNCTIONALITY FOR ITUNES CONTENT.

10  Q.   ALL RIGHT.  AND WHEN YOU ARRIVED AT APPLE, DID YOU LEARN

11  THAT HARMONY HAD ALREADY BEEN BLOCKED ONCE BY A PREVIOUS

12  UPDATE, RIGHT?

13  A.   THAT'S CORRECT.

14  Q.   SO YOU ALREADY KNEW THAT HARMONY HAD BEEN PREVIOUSLY

15  BLOCKED BY A PREVIOUS SOFTWARE UPDATE?

16  A.   WE WERE TOLD NOT TO SPEAK ABOUT HARMONY.

17  Q.   OKAY.

18       ALL RIGHT.  NOW, YOU DID -- I THINK YOU SAID YOU DID THE

19  INITIAL DRAFT OF THE DATABASE INTEGRITY CHECK; IS THAT RIGHT?

20  A.   CORRECT.

21  Q.   OKAY.  AND YOU LOOKED AT -- WE LOOKED AT 316.

22       CAN WE PUT THAT ON THE SCREEN AT PAGE 2.

23                (EXHIBIT PUBLISHED TO JURY.)

24            THE WITNESS:  GOT IT.

25

1   **BY MR. ISAACSON:**

2   **Q.** ALL RIGHT.  NOW, THE -- I WANT TO ASK YOU ABOUT THIS --

3   UNDER "PROPOSAL," "AS THIS DATABASE IS GENERATED...."

4       CAN WE HIGHLIGHT THAT WHOLE SENTENCE THERE.

5           (EXHIBIT PUBLISHED TO JURY.)

6   **BY MR. ISAACSON:**

7   **Q.** ALL RIGHT.  NOW, YOU SAID, "MAC" IS "MESSAGE

8   AUTHENTICATION CODE," CORRECT?

9   **A.** THAT'S RIGHT.

10  **Q.** RIGHT.

11      SO IT -- IT REFERS TO, "AS THIS DATABASE IS GENERATED BY

12  ITUNES ON THE DESKTOP, A MAC VALUE FOR ALL PIECES OF CONTENT

13  AND A MAC VALUE OF ALL CONTENT MAC'S CALLED THE DATABASE MAC

14  WILL BE GENERATED."

15      NOW, I WANT TO TALK TO YOU ABOUT THOSE TWO DIFFERENT

16  THINGS ON EITHER SIDE OF "AND."

17  **A.** GOT IT.

18  **Q.** SO THE "VALUE FOR ALL PIECES OF CONTENT," THAT REFERS TO A

19  MAC FOR EACH SONG IN THE DATABASE, CORRECT?

20  **A.** YEAH, THE BEST WAY TO LOOK AT IS IT IF YOU LOOK AT THE

21  PICTURE AND THEN IN THE DETAIL SECTION, YOU'LL SEE A MAC VALUE

22  IN THE SECOND LINE OF THE PICTURE.

23          (EXHIBIT PUBLISHED TO JURY.)

24       **THE WITNESS:**  RIGHT THERE.

25       **MR. ISAACSON:**  LET'S BLOW THAT UP.

1    (EXHIBIT PUBLISHED TO JURY.)

2        **THE WITNESS:**  THAT'S THE BEST WAY TO LOOK AT THIS.

3    **BY MR. ISAACSON:**

4    **Q.**  ALL RIGHT.

5    **A.**  SO YOU SEE THE MAC VALUE AT THE TOP, THAT MAC VALUE IS THE

6    DATABASE MAC.  THERE'S A MAC VALUE ASSOCIATED WITH EVERY TRACK

7    IN THE TRACK LISTING HEADER.

8    **Q.**  RIGHT.

9    **A.**  THAT IS THE TRACK MAC.

10   **Q.**  "THE TRACK MAC," SO THAT'S EACH SONG TRACK.

11   **A.**  THAT'S CORRECT.

12   **Q.**  OKAY.  SO IT'S NOT THE WHOLE DATABASE; IT'S ALL OF THE

13   SONG ENTRIES IN DATABASE, RIGHT?

14   **A.**  YES.  AND THEN IT'S GLUED TOGETHER WITH THE FINAL MAC AT

15   THE TOP.

16   **Q.**  RIGHT. RIGHT.  WE'LL GET TO THE SECOND -- SO THE DATABASE

17   FOR EACH SONG ENTRY WOULD INCLUDE THINGS LIKE SONG TITLE,

18   LENGTH OF SONG, ART, THE NUMBER OF TIMES IT'S BEEN PLAYED, AND

19   OTHER INFORMATION; IS THAT CORRECT?

20   **A.**  I'M NOT -- I CAN'T REMEMBER THE DATA THAT WE MAC'D OVER.

21   **Q.**  OKAY.  SO YOU'RE NOT -- YOU DON'T REMEMBER WHAT WAS

22   ACTUALLY IN THE DATABASE OTHER THAN GENERALLY SONG ENTRIES.

23   **A.**  I MEAN, I KNOW WHAT WAS IN THE IPOD DATABASE.  WHAT WE

24   CHOSE TO MAC OVER, I CAN'T -- I CAN'T BE AWARE OF RIGHT NOW.

25   **Q.**  RIGHT.  SO I'M -- WE'RE GOING TO GO OVER WHAT YOU MAC'D

1    OVER, SEE IF I CAN REMIND YOU OF THAT.  BUT JUST IN TERMS OF

2    WHAT THE DATABASE IS, THE -- BECAUSE ALL OF US DON'T KNOW

3    THAT, THE SONG ENTRY, THE SONG ENTRIES IN THE DATABASE, WHAT

4    THAT IS ARE THE SONG TITLES, THE LENGTH OF THE SONG, THE ART

5    RELATED TO THE SONG, THE NUMBER OF TIMES THE SONG --

6    **A.**  RIGHT.  SO YOU --

7    **Q.**  -- AND OTHER INFORMATION.  DO I HAVE THAT RIGHT?

8    **A.**  YEAH, YOU CAN THINK OF THE DATABASE AS BEING A BOOKSHELF

9    OF BOOKS.  SO EACH -- EACH BOOK IS A SONG, AND THE ENTIRE

10   DATABASE IS THE BOOKSHELF.

11   **Q.**  OKAY.  THANK YOU.

12       SO NOW, THE -- THE OTHER -- LET'S GO BACK TO THAT SENTENCE

13   WE WERE LOOKING AT.  SO AFTER A MAC VALUE FOR ALL PIECES OF

14   CONTENT -- AND THAT'S ALL THE BOOKS ON THE BOOKSHELF, RIGHT?

15   **A.**  INDIVIDUALLY.

16   **Q.**  RIGHT.  INDIVIDUALLY.

17       AND THEN A MAC VALUE OF ALL CONTENT MAC'S CALLED THE

18   DATABASE MAC, THAT'S THE WHOLE DATABASE, THAT'S THE BOOKSHELF.

19   **A.**  THAT'S RIGHT.

20   **Q.**  OKAY.

21       ALL RIGHT.  NOW, LET'S LOOK AT 820.

22               (EXHIBIT PUBLISHED TO JURY.)

23   **BY MR. ISAACSON:**

24   **Q.**  ALL RIGHT.  NOW, AT THE TOP -- THIS IS JUNE -- JUNE 20TH,

25   2006.  THE LAST DOCUMENT WE WERE LOOKING AT IS APRIL 20TH,

```
 1    2006.

 2        OH, HERE'S A COPY.  THAT WILL HELP YOU (HANDING DOCUMENT).

 3    A.   THANKS.

 4    Q.   SO WE'RE LOOKING AT 820.  DO YOU HAVE THAT, MR. SCHULTZ?

 5    A.   I DO YES.

 6    Q.   AND ON JUNE 20TH, 2006, THIS IS A EMAIL FROM

 7    MR. BOLLINGER, WHO WAS ONE OF YOUR COLLEAGUES, AND YOU'RE

 8    COPIED ON THIS EMAIL, RIGHT?

 9    A.   I AM.

10    Q.   ALL RIGHT.  NOW, THE -- GOING TO THE BOTTOM OF THIS EMAIL,

11    JEAN-FRANCOIS IS WRITING?

12    A.   YES.

13    Q.   RIGHT.  HE'S WRITING IN THE MIDDLE, "THE TIME REQUIRED TO

14    HASH 1 MEGABYTE IS AROUND 100" -- WHAT'S "MS" STAND FOR?

15    A.   MILLISECONDS.

16    Q.   MILLISECONDS?

17    A.   YES.

18    Q.   THIS MEANS THAT A FULL NANO DATABASE WITH A THOUSAND SONGS

19    AND AN AVERAGE OF ONE KILOBYTE PER DB ENTRY WILL TAKE JUST

20    THAT TIME TO BE HASHED.

21        NOW, THAT'S REFERRING TO YOUR MAC'ING THE INDIVIDUAL SONG

22    ENTRIES, RIGHT?

23    A.   RIGHT.  SO HE'S TRYING TO -- HE'S TRYING TO SAY THAT THIS

24    IS NOT GOING TO CAUSE RIDICULOUS OVERHEAD ON THE DEVICE TO

25    VALIDATE THE DATABASE.
```

1   **Q.**   RIGHT.  HE'S TALKING ABOUT THE BOOKS HERE AND NOT THE

2   BOOKSHELF.

3   **A.**   (REVIEWING DOCUMENT.)

4       CORRECT.

5   **Q.**   OKAY.  AND THEN -- SO GOING DOWN TO THE NEXT PARAGRAPH, HE

6   SAYS, "ONE THING TO CONSIDER IS THAT FOR FUTURE IPOD VIDEOS --

7   THAT'S A -- ONE OF THE IPODS, IT WAS REFERRED TO AS "THE IPOD

8   VIDEO," RIGHT?

9   **A.**   THAT'S RIGHT.

10  **Q.**   SO ONE THING TO CONSIDER IS THAT FUTURE IPOD VIDEOS HAVING

11  A MUCH LARGER CAPACITY, THE DATABASE COULD BE AS BIG AS 15

12  MEGABYTES, WHICH COULD TAKE AROUND 1.7 SECONDS TO VERIFY WHICH

13  COULD BE JUDGED TOO LONG.

14      AND SO WHAT HE'S SAYING THERE IS IF YOU MAC THE INDIVIDUAL

15  SONG ENTRIES, THE EXPERIENCE -- IT MAY TAKE 1.7 SECONDS TO

16  VERIFY THAT, WHICH MAY BE TOO LONG FROM APPLE'S PERSPECTIVE

17  FOR WHAT A CONSUMER WANTS.

18  **A.**   THAT'S RIGHT.

19  **Q.**   OKAY.

20      THE -- NOW, LET'S MOVE UP TO AUGUSTIN'S RESPONSE TO THAT,

21  AUGUSTIN FARRUGIA.

22                  (EXHIBIT PUBLISHED TO JURY.)

23  **BY MR. ISAACSON:**

24  **Q.**   SO "ONE OF THE CONSEQUENCES," IN THE MIDDLE "TEAM."

25                  (EXHIBIT PUBLISHED TO JURY.)

1    **BY MR. ISAACSON:**

2    **Q.**  ALL RIGHT.  HE SAYS, "ONE OF THE CONSEQUENCES OF SIGNING

3    THE WHOLE DATABASE IS THE LOST (SIC) OF GRANULARITY IN THE

4    IPOD BEHAVIOR."

5        NOW, THE WHOLE DATABASE IS THE BOOKSHELF, NOT THE

6    INDIVIDUAL BOOKS, RIGHT?

7    **A.**  CORRECT.  SO IN THIS CASE, IF YOU'RE ONLY DOING A SINGLE

8    MAC OVER THE ENTIRE DATABASE, IF A SINGLE BIT IN THE ENTIRE

9    DATABASE IS MODIFIED, THE ENTIRE MAC WILL FAIL.

10   **Q.**  RIGHT.  SO WHAT HE'S SAYING HERE IS EXACTLY THAT, "IF THE

11   IPOD DETECTS AN ERROR IN THE DATABASE, WE WILL NEED TO REJECT

12   THE DATABASE INSTEAD OF REJECTING THE SINGLE TRACK."

13       HE'S EXPLAINING HERE WHY YOU'RE GOING TO NOT HAVE MAC'S

14   FOR INDIVIDUAL SONG ENTRIES AND YOU'RE JUST GOING TO HAVE A

15   MAC FOR THE WHOLE DATABASE BECAUSE HAVING A MAC FOR ALL THE

16   INDIVIDUAL SONG ENTRIES WILL CAUSE --

17            **MR. COUGHLIN:**  I'D OBJECT, YOUR HONOR --

18                 (SIMULTANEOUS COLLOQUY.)

19            **MR. ISAACSON:**  -- DELAYS TO CONSUMERS --

20            **THE COURT:**  OVERRULED.

21   **BY MR. ISAACSON:**

22   **Q.**  IS THAT CORRECT?

23   **A.**  VALIDATING EVERY SINGLE SONG INDIVIDUALLY WAS OVERKILL.

24   **Q.**  YES.

25   **A.**  THE DATABASE -- YOU CAN REJECT OR VALIDATE THE DATABASE

1    BASED ON -- FROM 10,000 FEET OR AT 3 FEET.

2    Q.   RIGHT.  VALIDATING -- VALIDATING EVERY SONG INDIVIDUALLY,

3    AS YOU SAID, WAS OVERKILL AND WOULD ALSO CAUSE A DELAY IN TIME

4    FOR CONSUMERS, RIGHT?

5    A.   THAT'S RIGHT.

6    Q.   RIGHT.  I'D BE SITTING THERE -- THIS IS MY IPHONE

7    (INDICATING), NOT MY IPOD, BUT I'D BE WAITING 1.5 TO 2 SECONDS

8    FOR THE MAC'ING TO HAPPEN.

9    A.   THE NANO IS THE SLOWEST PERFORMING DEVICE WE HAD, WHICH IS

10   WHY WE WERE BASE-LINING IT ON THE NANO.

11   Q.   OKAY.  NOW, THERE WAS WHAT YOU CALL MAC OF THE DATABASE OR

12   THE DATABASE SIGNING CODE THAT WAS IN ITUNES 7.0, BUT IT

13   DIDN'T WORK YET, RIGHT?

14   A.   YEAH, I'M NOT EXACTLY SURE WHEN IT WAS RELEASED.

15   Q.   OKAY.  THE -- NOW, YOU CONTINUED TO WORK ON DATABASE

16   SIGNING UNTIL JUNE 2007; IS THAT RIGHT?

17   A.   I CAN'T RECALL WHEN I -- WHAT PROJECTS I WAS WORKING ON AT

18   THE TIME.

19                    (PAUSE IN THE PROCEEDINGS.)

20   BY MR. ISAACSON:

21   Q.   AND I MAY HAVE THAT WRONG.  I'M GOING TO SHOW YOU A

22   DOCUMENT IN THE HOPES THAT WE --

23                    (PAUSE IN THE PROCEEDINGS.)

24        MR. ISAACSON:   OH, WE'RE LOW ON EXHIBIT STICKERS.

25   THIS WILL BE 2858, YOUR HONOR.  AND I JUST WANT TO SHOW IT TO

1    HIM, AS OPPOSED TO PUT IT ON THE SCREEN, TO SEE IF I CAN HELP

2    HIS MEMORY.

3        (DEFENDANT'S EXHIBIT 2858 MARKED FOR IDENTIFICATION)

4            **THE COURT:**  I'D LIKE A COPY --

5            **MR. COUGHLIN:**  I'D OBJECT, YOUR HONOR.  I'VE NEVER

6    EVEN SEEN THIS DOCUMENT.  I'D LIKE ONE PROVIDED.

7            **THE COURT:**  I'D LIKE A COPY.

8                (PAUSE IN THE PROCEEDINGS.)

9            **THE COURT:**  YOUR OBJECTION'S NOTED.  YOU CAN SHOW HIM

10   THE DOCUMENT.  DO NOT PUT IT ON THE SCREEN.

11               (PAUSE IN THE PROCEEDINGS.)

12   **BY MR. ISAACSON:**

13   **Q.**  I'LL SHOW YOU 2858 (HANDING DOCUMENT.)

14   **A.**  (REVIEWING DOCUMENT.)

15   **Q.**  SO TAKE A LOOK AT THIS, AND I'LL ASK YOU, DO YOU RECOGNIZE

16   THIS AS PRINTOUT FROM CODE THAT ILLUSTRATES THE TIME LINE FOR

17   THE -- WHAT YOU CALL THE MAC?

18   **A.**  THIS IS A CHANGE LOG, CORRECT.

19   **Q.**  ALL RIGHT.  AND THIS SHOWS WHO DID WORK ON THE --

20   **A.**  THIS IS A -- WHEN YOU COMMITTED CODE, YOU WOULD PUT NOTES

21   IN ABOUT WHAT YOU'RE --

22           **THE COURT:**  FOLKS, I'VE GOT AN OBJECTION TO THE USE

23   OF THIS DOCUMENT, SO AT THIS POINT, WAIT FOR A QUESTION --

24           **THE WITNESS:**  OKAY.

25           **THE COURT:**  -- SO I CAN UNDERSTAND WHAT'S HAPPENING

 1   HERE.

 2       HE ASKED HE ORIGINALLY WHETHER YOU –– OR YOU SAID YOU

 3   DIDN'T REMEMBER WHETHER YOU'D WORKED ON SOMETHING, SO HE

 4   WANTED TO SHOW YOU THE DOCUMENT.

 5       WHERE DO WE STAND, MR. ISAACSON?  A QUESTION, PLEASE.

 6   **BY MR. ISAACSON:**

 7   **Q.**  RIGHT.  DOES –– LOOKING AT THIS DOCUMENT, DOES THIS ASSIST

 8   YOU TO RECALL THAT YOU BEGAN WORKING ON THIS PARTICULAR PART

 9   OF THE PROJECT IN MAY 2006?  AND I ––

10   **A.**  YEAH, I –– I MEAN, I'M LOOKING AT THE CHECK-INS AND THE

11   COMMENTS ASSOCIATED WITH IT.  CANDY IS THE NAME OF THE –– THE

12   PROJECT FOR IPOD DATABASE VERIFICATION.  THAT WAS THE CODE

13   NAME.

14   **Q.**  AND I ACTUALLY MISSPOKE WHEN I SAID 2007.  DOES THIS

15   ACTUALLY ASSIST YOU IN UNDERSTANDING THAT YOU STOPPED WORKING

16   ON THIS PROJECT IN AUGUST OF 2006?

17   **A.**  YEAH.  SORRY.  I'M JUST GOING THROUGH MY –– MY

18   COMMITMENTS.

19       (REVIEWING DOCUMENT.)

20       YEAH, I MEAN, ON THIS PIECE OF PAPER, THE LAST COMMIT THAT

21   I HAVE INTO –– FOR DB SIGNATURE IS AUGUST OF 2006.

22   **Q.**  AND YOU RECALL THAT WHEN YOU STOPPED WORKING ON THE

23   PROJECT, THE PROJECT WAS REASSIGNED TO JEAN-FRANCOIS –– IS IT

24   RIENDEAU?

25   **A.**  IT WASN'T REASSIGNED.  IT WAS TRANSITIONED OVER TO HIM TO

1   INTEGRATE INTO THE IPOD.

2   **Q.**  RIGHT.

3   **A.**  BECAUSE HE WORKED -- HE WORKED ON THE IPOD SIDE OF THE

4   WORLD.

5   **Q.**  RIGHT.  AFTER YOU STOPPED WORKING ON IT, IT WAS

6   TRANSITIONED OVER TO JEAN-FRANCOIS.

7   **A.**  NO, NO.  HE BASICALLY TOOK MY ALGORITHM AND HAD TO

8   BASICALLY USE THAT ALGORITHM ON THE IPOD.

9   **Q.**  AND YOU DON'T KNOW WHAT CHANGES HE MADE ON THAT ALGORITHM

10   AFTER YOU LEFT APPLE, DO YOU?

11   **A.**  AFTER I LEFT APPLE?

12   **Q.**  YES.

13   **A.**  NO, I HAVE NO IDEA.

14   **Q.**  OKAY.  YOU LEFT APPLE WHEN?

15   **A.**  FEBRUARY OF 2008.

16   **Q.**  ALL RIGHT.  THE -- AND YOU DON'T KNOW WHAT CHANGES THAT

17   WERE MADE ON THE MAC AFTER IT WAS TRANSITIONED TO

18   MR. RIENDEAU, CORRECT?

19   **A.**  WELL, I KNOW THAT ONCE WE RELEASED IT, IT WAS MY ORIGINAL

20   ALGORITHM, AND IT WAS BROKEN.  ONCE IT WAS BROKEN, THEY ADDED

21   WHITE-BOX CRYPTOGRAPHY TO THE ALGORITHM TO MAKE IT MORE

22   DIFFICULT TO BREAK.

23   **Q.**  ALL RIGHT.  I'LL COME BACK TO THAT.

24   **A.**  OKAY.

25   **Q.**  BUT DO YOU -- ALL RIGHT.  DO YOU RECALL THAT THIS WAS

1    RELEASED IN SEPTEMBER 2007, THE ACTUAL MAC?

2    **A.**   THAT SOUNDS ABOUT RIGHT.

3    **Q.**   OKAY.  AND SO IN SEPTEMBER 2007, THE MAC ALGORITHM THAT

4    YOU WORKED ON, YOU UNDERSTOOD WAS RELEASED AND THEN IT WAS

5    BROKEN, AS YOU SAID?

6    **A.**   THAT'S CORRECT.

7    **Q.**   OKAY.  THE -- PRIOR TO THAT, THEN, BETWEEN AUGUST 2006 AND

8    SEPTEMBER 2007, THE MAC FOR IMPLEMENTATION ON THE IPOD HAD

9    BEEN TRANSITIONED TO GIANPAOLO (SIC) RIENDEAU?

10   **A.**   JEAN-FRANCOIS RIENDEAU.

11   **Q.**   JEAN-FRANCOIS RIENDEAU.  THANK YOU.

12       IS THAT CORRECT?

13   **A.**   IT WAS NEVER TRANSITIONED.  JEAN-FRANCOIS WAS ALWAYS

14   RESPONSIBLE FOR IPOD.

15   **Q.**   RIGHT.  BUT THEN THERE WERE DIFFERENT PEOPLE WORKING ON

16   "CANDY" AS YOU CALLED IT, RIGHT?

17   **A.**   YEAH.  SO THE BEST WAY TO LOOK AT IT IS THAT THE

18   AUTHENTICATION ALGORITHM IS LITERALLY THE KEY TO YOUR FRONT

19   DOOR.  WHAT THEY DID INSIDE --

20   **Q.**   I'M JUST ASKING YOU ABOUT WHO WAS WORKING ON IT WHEN.

21   RIGHT?

22       NOW, AFTER JUNE -- AFTER AUGUST 2006, SUKI LEE WAS WORKING

23   ON CANDY, RIGHT?

24   **A.**   NO.  SUKI WAS NOT AN ENGINEER.

25   **Q.**   OKAY.

1    **A.**   SHE WAS A PROGRAM MANAGER AND WOULD -- WOULD HAVE NEVER

2    TOUCHED CODE.

3    **Q.**   ALL RIGHT.  WHAT ABOUT GUY BAR-NAHUM?

4    **A.**   I'M NOT FAMILIAR WITH THAT PERSON.

5    **Q.**   ALL RIGHT.  HE WAS A -- ANOTHER ENGINEER WORKING WITH

6    AUGUSTIN FARRUGIA?

7    **A.**   AUGUSTIN DIDN'T WRITE CODE EITHER.

8    **Q.**   RIGHT, BUT HE WAS AN ENGINEER WORKING UNDER AUGUSTIN

9    FARRUGIA, DO YOU --

10   **A.**   NO.  INCORRECT.  HE WASN'T ON THE FAIRPLAY TEAM.

11              **THE COURT:**  HE WHAT?

12              **THE WITNESS:**  HE WAS NOT ON THE FAIRPLAY TEAM.

13   **BY MR. ISAACSON:**

14   **Q.**   WHAT ABOUT MR. WYSOCKI?

15   **A.**   CHRIS WAS NOT ON THE FAIRPLAY TEAM.

16   **Q.**   ALL RIGHT.

17        NOW, WHILE YOU WERE WORKING ON THIS PROJECT, YOU

18   THOUGHT -- YOU UNDER -- YOU BELIEVED WHILE YOU WERE WORKING ON

19   THIS PROJECT THAT DRM WAS EXTREMELY VULNERABLE TO ATTACK; IS

20   THAT RIGHT?

21   **A.**   A DRM IS A BARRIER THAT'S ALWAYS GOING TO BE ATTACKED.  SO

22   IF YOU PUT A BARRIER UP IN FRONT OF SOMEBODY TO PREVENT THEM

23   FROM DOING SOMETHING, THEY WILL ATTACK IT.

24   **Q.**   RIGHT.

25        AND, IN FACT, YOU WERE TOLD THIRD-PARTY PLAYERS WERE

1   CORRUPTING THE DATABASE, CORRECT?

2   **A.**   CORRECT.  THAT'S NOT AN ATTACK ON THE DRM.

3   **Q.**   SO YOU DON'T THINK -- SO WHEN YOU SAY -- YOU'RE JUST

4   GIVING AN OPINION TODAY THAT CORRUPTING THE DATABASE IS NOT AN

5   ATTACK; IS THAT RIGHT?

6   **A.**   THAT'S NOT AN OPINION.  THAT'S A STATEMENT.

7   **Q.**   OKAY.  NOW -- AND WHILE YOU WERE WORKING WITH APPLE, YOU

8   THOUGHT IT WAS IMPOSSIBLE TO PREDICT WHAT ATTACKS WOULD HAPPEN

9   AGAINST THE DRM, RIGHT?

10  **A.**   YOU -- WE HAD A REVERSE ENGINEERING TEAM THAT WOULD BREAK

11  OUR STUFF FOR US.  THAT'S OUR PREDICTION MECHANISM.

12  **Q.**   RIGHT.  BUT YOU COULD NOT -- YOU DIDN'T KNOW --

13  **A.**   NO.

14  **Q.**   THERE ARE A LOT OF HACKERS OUT THERE.  YOU DIDN'T KNOW

15  THAT YOUR REVERSE ENGINEERING TEAM COULD FIGURE OUT --

16  **A.**   THAT'S RIGHT.  YOU CAN'T PREDICT HOW YOUR HOUSE IS GOING

17  TO GET BROKEN INTO.  YOU JUST CAN'T DO IT.

18  **Q.**   RIGHT.  YOU THOUGHT -- WHILE YOU WERE AT APPLE, YOU

19  THOUGHT OF DRM AS LIKE A CASTLE, IT SHOULD HAVE MULTIPLE

20  BARRIERS OF DEFENSE; IS THAT RIGHT?

21  **A.**   THAT'S OUT OF MY ARTICLE.

22  **Q.**   WAS THAT YOUR -- WAS THAT YOUR VIEW WHEN YOU WERE AT

23  APPLE?

24  **A.**   THAT IS -- A WAY OF LOOKING AT A DRM.

25  **Q.**   ALL RIGHT.  AND YOU UNDERSTOOD THAT THE WORK THAT YOU WERE

1    DOING AT APPLE WAS INTENDED TO KEEP THE DRM AS SECURE AS

2    POSSIBLE, CORRECT?

3    **A.** THAT IS CORRECT.

4    **Q.** OKAY. THERE'S NO QUESTION IN YOUR MIND THAT THE MAC WAS

5    INTENDED TO INCREASE THE SECURITY OF THE DRM, CORRECT?

6    **A.** NO. IT WAS NOT INTENDED TO INCREASE THE SECURITY OF THE

7    DRM.

8    **Q.** I -- LET ME PUT IT DIFFERENT. THERE'S -- YOU'RE -- NOW,

9    YOU DON'T KNOW THE INTENT OF ANY OF THE EXECUTIVES IN THIS

10   CASE, CORRECT?

11   **A.** THAT IS CORRECT.

12   **Q.** OKAY. THE -- WHEN YOU SAY YOUR OPINION -- WHEN YOU GIVE

13   AN OPINION ABOUT INTENT, YOU'RE GIVING AN OPINION, RIGHT?

14   **A.** YOU TELL ME.

15   **Q.** OKAY.

16       THE -- THERE'S NO QUESTION IN YOUR MIND THAT THE MAC

17   ACTUALLY DID INCREASE THE SECURITY OF THE DRM.

18   **A.** THERE IS NO CRYPTOGRAPHIC FUNCTIONALITY. DRM IS BASED ON

19   CRYPTOGRAPHY. THERE WAS NO CRYPTOGRAPHIC FUNCTIONALITY THAT

20   WAS BEING PROVIDED BY THAT MAC.

21   **Q.** OKAY. NOW YOU'RE USING THE TERM "CRYPTOGRAPHY," WHICH IS

22   NOT WHAT I'M ASKING. ALL RIGHT.

23       THE ACTUAL MAC INCREASED THE SECURITY OF DRM FROM THIRD

24   PARTIES INCLUDING THIRD-PARTY SOFTWARE, CORRECT?

25   **A.** NO.

1    **Q.**  OKAY.

2        IT KEPT -- IT INCREASED THE SECURITY OF THE DATABASE FROM

3    THIRD-PARTY SOFTWARE, CORRECT?

4    **A.**  IT PREVENTED THIRD-PARTY SOFTWARE FROM WRITING TO THE

5    DATABASE.

6    **Q.**  RIGHT.

7    **A.**  EXCUSE ME.

8    **Q.**  SO THE DATABASE WAS MORE SECURE FROM THIRD PARTIES,

9    CORRECT?

10   **A.**  THIRD -- THIRD PARTIES WERE NOT ABLE TO WRITE TO THE

11   DATABASE.

12   **Q.**  ALL RIGHT.  AND THAT MEANT IT WAS MORE SECURE, RIGHT, FROM

13   THOSE THIRD PARTIES?

14   **A.**  I -- I DON'T KNOW WHAT YOUR DEFINITION OF "SECURITY" HERE

15   IS.

16   **Q.**  ALL RIGHT.

17       THE -- AND ONE OF THE PROBLEMS THAT YOU UNDERSTOOD OF

18   ATTACKERS -- YOU MENTIONED THE REVERSE ENGINEERING TEAM.  ONE

19   OF THE PROBLEMS YOU UNDERSTOOD WHILE YOU WERE AT APPLE FROM

20   ATTACKERS IS THEY WOULD REVERSE-ENGINEER EITHER THE DRM OR THE

21   DATABASE, CORRECT?

22   **A.**  NO.  THE -- ATTACKERS WERE REVERSE-ENGINEERING THE DRM.

23   THE DATABASE WAS NEVER CONSIDERED AN ATTACK.

24   **Q.**  ALL RIGHT.  THE -- IT IS YOUR TESTIMONY THAT THE DATABASE

25   HAD BEEN REVERSE-ENGINEERED, CORRECT, BY THIRD PARTIES?

1   **A.**   THAT'S CORRECT.

2   **Q.**   OKAY.  NOW, WHEN YOU LEFT APPLE, YOU WENT TO ADOBE, RIGHT?

3   **A.**   CORRECT.

4   **Q.**   AND WHILE YOU WERE AT ADOBE, YOU IMPLEMENTED ANTI-REVERSE

5   ENGINEERING ATTACK -- ANTI-REVERSE ENGINEERING TECHNIQUES,

6   RIGHT?

7   **A.**   CORRECT.  I BUILT A DRM AT ADOBE.

8   **Q.**   RIGHT.

9        NOW, YOU MENTIONED -- NOW, YOU ARE FAMILIAR WITH A HACK

10  CALLED "REQUIEM," RIGHT?

11  **A.**   THE REQUIEM -- THE REQUIEM ATTACK CAME OUT THE WEEK BEFORE

12  I LEFT APPLE.

13  **Q.**   RIGHT.  AND THAT WAS EARLY 2008, CORRECT?

14  **A.**   IT WAS FEBRUARY OF 2008.

15  **Q.**   RIGHT.  AND THAT WAS A HACK ON THE FAIRPLAY DRM, CORRECT?

16  **A.**   YES, IT WAS A VERY SOPHISTICATED ATTACK ON THE FAIRPLAY

17  DRM.

18  **Q.**   RIGHT.  AND THAT -- AND YOU UNDERSTOOD THAT THAT ATTACK

19  COST APPLE MILLIONS OF DOLLARS TRYING TO FIGHT OFF THAT ATTACK

20  WITH ITS SECURITY TEAM, RIGHT?

21  **A.**   THE FAIRPLAY TEAM SPENT A LONG TIME ADDING FEATURES TO TRY

22  AND PREVENT REQUIEM FROM WORKING.

23  **Q.**   ALL RIGHT.  NOW, YOU TENDERED YOUR RESIGNATION ON FEBRUARY

24  9TH, 2008, RIGHT?

25  **A.**   THAT'S CORRECT.

SCHULTZ – CROSS / ISAACSON

1   **Q.**   RIGHT.  AND PRIOR TO THAT, YOU HAD, IN EFFECT -- IT HAD

2   BEEN SUGGESTED THAT YOU -- THAT YOU LEAVE APPLE AND FIND OTHER

3   EMPLOYMENT; IS THAT FAIR?

4   **A.**   THAT IS INCORRECT.

5   **Q.**   OKAY.  IS IT -- NOW, YOU HAD GOTTEN A PERFORMANCE REVIEW

6   BEFORE YOU LEFT, RIGHT?  BEFORE YOU RESIGNED?

7   **A.**   NO.

8   **Q.**   OKAY.

9        DID YOU -- WERE YOU GIVEN ANY INFORMATION ABOUT YOUR

10   PERFORMANCE BEFORE YOU LEFT?

11   **A.**   NO.

12   **Q.**   ALL RIGHT.

13        NOW, BEFORE YOU LEFT, YOU HAD BEEN INFORMED THAT YOU

14   WEREN'T GOING TO GET A RAISE, A BONUS, OR ANY OPTIONS; IS THAT

15   RIGHT?

16   **A.**   NO, I GOT A RAISE, BUT I DIDN'T GET ANY OPTIONS, I DON'T

17   BELIEVE.

18   **Q.**   RIGHT.  YOU WERE INFORMED THAT FOR THE LAST YEAR OF YOUR

19   EMPLOYMENT, YOU WERE NOT GOING TO GET A BONUS OR ANY OPTIONS,

20   RIGHT?

21   **A.**   I'M NOT AWARE OF -- I DON'T KNOW WHAT BONUSES WE GOT.  I

22   MEAN, I GOT PATENT BONUSES, BUT I DIDN'T -- I DON'T REMEMBER

23   ANY OTHER BONUSES, MAYBE SOME SHIP BONUSES FOR SHIPPING

24   PRODUCT.

25   **Q.**   ALL RIGHT.

```
 1              MAY I HAVE A MOMENT, YOUR HONOR?

 2                        (PAUSE IN THE PROCEEDINGS.)

 3              MR. ISAACSON:  CAN WE PULL UP 2877?

 4                        (OFF-THE-RECORD DISCUSSION.)

 5              MR. ISAACSON:  YOUR HONOR, IF I CAN ACTIVATE THE ELMO

 6     SOMEHOW.

 7              THE COURT:  OKAY.  I DON'T KNOW WHAT YOU'RE USING

 8     THERE, MR. ISAACSON.

 9              MR. ISAACSON:  SURE.  YES.

10              MR. ISAACSON:  IF I MAY HAND HIM A COPY, IT'S A

11     DOCUMENT HE'S WRITTEN ON.

12              THE COURT:  YOU MAY.

13              MR. ISAACSON:  (HANDING DOCUMENT.)

14              THE COURT:  SO WE CAN ACTIVATE THE ELMO.  THAT'S

15     FINE.

16              MR. ISAACSON:  IS IT ON?

17                        (OFF-THE-RECORD DISCUSSION.)

18     BY MR. ISAACSON:

19     Q.  ALL RIGHT.  SO THIS IS AN EMAIL EXCHANGE YOU HAD WITH

20     JEAN-FRANCOIS IN JUNE 2006, RIGHT?

21     A.  CORRECT.

22                        (EXHIBIT PUBLISHED TO JURY.)

23     BY MR. ISAACSON:

24     Q.  RIGHT.  AND AT THE BOTTOM, WHERE IT SAYS, "SO THE

25     POSSIBILITY OF HAVING A FULL DATABASE SIGNATURE INSTEAD OF A
```

1    SIGNATURE ON EACH INDIVIDUAL ENTRY AND ONE COMPOSITE SIGNATURE

2    CAN SERIOUSLY BE CONSIDERED."

3        WHAT'S BEING DISCUSSED HERE AGAIN IS THE BOOK -- IS THE

4    MAC FOR THE BOOKS AND THE MAC FOR THE BOOKSHELF, RIGHT, WHAT

5    WE WERE TALKING ABOUT BEFORE?

6    **A.**   RIGHT.  SO THE SPEED OF THE HASHING ALGORITHM WAS

7    ACCELERATED BY -- BY JEAN-FRANCOIS.  LOOKS LIKE HE'S USING --

8                    (OFF-THE-RECORD DISCUSSION.)

9            **THE WITNESS:**  YEAH, SO IT LOOKS LIKE HE'S USING A

10   HARDWARE ACCELERATOR FOR DOING THE HASHING ALGORITHM CALLED

11   SHA-1.

12   **BY MR. ISAACSON:**

13   **Q.**   ALL RIGHT.  AND SO HE'S SAYING THAT WE CAN NOW JUST DO THE

14   MAC FOR THE WHOLE DATABASE; WE DON'T HAVE TO DO IT FOR ALL THE

15   BOOKS, THE INDIVIDUAL SONGS.

16   **A.**   HE'S SAYING FOR FUTURE IPOD VIDEOS HAVING A MUCH LARGER

17   CAPACITY, WE CAN DO THIS, YES.

18   **Q.**   RIGHT.

19       AND YOUR RESPONSE TO THAT WAS "AWESOME THIS IS REALLY GOOD

20   TO HEAR."

21   **A.**   THAT'S RIGHT.

22   **Q.**   "NICE WORK."

23   **A.**   I MEAN, ANY TIME YOU CAN GET A FASTER HASHING ALGORITHM,

24   THAT'S BETTER.

25   **Q.**   YOU SAID -- NOW, IN TERMS OF YOUR WORK ON THE MAC, THAT

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

 1  WAS ON FOR THE ITUNES DESK -- DESKTOP, NOT THE IPOD, CORRECT?

 2  **A.**  FOR THE ALGORITHM TO WORK, THE ALGORITHM HAD TO RUN ON

 3  BOTH SIDES.

 4  **Q.**  RIGHT, BUT IN TERMS OF -- YOU -- THE TRANSITION FOR THE

 5  IPOD WENT TO JEAN-FRANCOIS.  BEFORE THAT, YOU WERE WORKING ON

 6  THE IPOD --

 7  **A.**  IT WAS NEVER TRANSITION TO JEAN-FRANCOIS.  JEAN-FRANCOIS

 8  ALWAYS WORKED ON THE IPOD.

 9          **THE COURT:**  AND ONE AT A TIME, MR. SCHULTZ, SO I CAN

10  GET A QUESTION AND ANSWER.

11          **THE WITNESS:**  GOT IT.  SORRY.

12  **BY MR. ISAACSON:**

13  **Q.**  RIGHT.  I'M SORRY.

14     JEAN-FRANCOIS ALWAYS WORKED ON THE IPOD, AND YOU WORKED ON

15  THE ITUNES DESKTOP, CORRECT?

16  **A.**  RIGHT.  TYPICALLY, WE WOULD PAIR UP, SO WE WOULD HAVE

17  CLIENT AND -- AND BASICALLY PLAYER.  RIGHT?  SO THE CLIENT IN

18  THIS CASE IS THE ITUNES CLIENT RUNNING ON THE DESKTOP, AND

19  JEAN-FRANCOIS WAS WORKING ON THE PLAYER, THE IPOD PLAYER.

20  **Q.**  RIGHT.  AND YOU DID NOT INTEGRATE THE CODE INTO THE IPOD.

21  **A.**  NO, BUT THE ALGORITHM HAD TO BE THE SAME.

22  **Q.**  I -- MY QUESTION -- I'M JUST TRYING TO FIGURE OUT WHO DID

23  WHAT?

24  **A.**  GOT IT.

25  **Q.**  OKAY.  YOU WEREN'T THE PERSON WHO INTEGRATED THE CODE INTO

1    THE IPOD, CORRECT?

2    **A.**  SO YES, THE CODE WAS COMMITTED BY ME.  AND WHAT YOU CHOSE

3    (SIC) COMPILING THE IPOD IMAGE WAS -- WAS JEAN-FRANCOIS'S

4    CHOICE.

5    **Q.**  RIGHT.  RIGHT.

6        AND THAT INTEGRATION OF CODE INTO THE IPOD WAS NOT

7    COMPLETE UNTIL SEPTEMBER 2007, CORRECT, WHEN THE -- WHEN

8    THE --

9    **A.**  SO --

10   **Q.**  -- WHEN THE DATABASE INTEGRITY WAS RELEASED.

11   **A.**  RIGHT.  SO WE PROBABLY WITH IFDEF'D THE CODE OUT.

12            **THE COURT:**  YOU PROBABLY WHAT?

13            **THE WITNESS:**  WE PROBABLY MARKED THE CODE TO BE DEAD

14   CODE UNTIL THAT TIME, WHICH IS TYPICAL.  YOU WOULD ADMIT THE

15   CODE INTO THE CODE BASE, AND THEN YOU WOULD TURN IT OFF

16   BASICALLY --

17   **BY MR. ISAACSON:**

18   **Q.**  RIGHT.

19   **A.**  -- BY IFDEF'ING AROUND IT.

20   **Q.**  SO ALL THE CODE THAT YOU'RE TALKING ABOUT WAS DEAD UNTIL

21   SEPTEMBER 2007, CORRECT?

22   **A.**  I GUESS -- YEAH, I GUESS SO.

23   **Q.**  ALL RIGHT.

24            (PAUSE IN THE PROCEEDINGS.)

25            **THE COURT:**  MR. ISAACSON, BEFORE YOU CONTINUE, YOU

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

1    USED A TERM.

2           **THE WITNESS:**  "SHA"?

3           **THE COURT:**  NO, "F" –– HE WORKED AROUND IT BY DOING

4    SOMETHING TO THE CODE.

5           **MR. ISAACSON:**  I THOUGHT IT WAS DEF (PHONETIC).

6           **THE WITNESS:**  I'M SORRY.  IF –– IFDEF, JUST ONE WORD,

7    IFDEF.

8           **THE COURT:**  IFDEF, WHICH IS CODE, I TAKE IT.

9           **THE WITNESS:**  YEAH.

10          **THE COURT:**  OKAY.  THANK YOU.

11   **BY MR. ISAACSON:**

12   **Q.**  IF YOU CAN JUST TAKE A QUICK LOOK AT 2858 AGAIN, WHICH WAS

13   THE –– I THINK THE LOG ––

14   **A.**  GOT IT.

15   **Q.**  –– CODE ON IT?

16   **A.**  YEP.  YEP.

17   **Q.**  ALL RIGHT.

18      AND THAT'S WHERE WE LOOKED AT THAT SHOWED YOU THAT YOU

19   WOULD –– YOU LAST SIGNED ON TO WORK ON THIS IN AUGUST 2006.

20      AND THIS DOCUMENT GOES ON TO SHOW MR. RIENDEAU SIGNING ON

21   AFTER THAT TO WORK ON THE HARDWARE AND THE CODE, RIGHT?

22   **A.**  (REVIEWING DOCUMENT.)

23      YEAH, SO I MEAN, LOOKING AT THE CHANGE LOGS, HE ADDED THE

24   SHA-1 ACCELERATOR, WHICH HE'S SHOWING HERE.

25      (REVIEWING DOCUMENT.)

1    YEAH, THE -- ACCORDING TO THESE CHANGE LOGS, HE'S JUST

2    MODIFYING THE SHA-1 INTERFACE TO THE H-MAC.

3    **Q.**  ALL RIGHT.  THANK YOU VERY MUCH.

4         **THE COURT:**  REDIRECT?

5                        **REDIRECT EXAMINATION**

6    **BY MR. COUGHLIN:**

7    **Q.**  MR. SCHULTZ, YOU SAID THAT THE CODE WAS DEAD.  WHAT DID

8    YOU MEAN BY THAT?  EXPLAIN WHAT THAT IS.

9    **A.**  SO WHEN YOU WRITE COMPUTER CODE, YOU CAN PREVENT THE

10   COMPILER FROM COMPILING THE INSTRUCTIONS IN BY PUTTING IFDEF'S

11   AROUND IT TO BASICALLY TURN IT OFF.

12       IT'S LIKE WRITING A PARAGRAPH IN A BOOK AND THEN COVERING

13   IT UP UNTIL YOU WANT IT TO BE SHOWN AND THEN PULLING OFF

14   THE -- THE COVER.

15   **Q.**  OKAY.  SO YOU -- THIS DATABASE VERIFICATION WAS FIRST PUT

16   IN IN 2006 -- IN THE FALL OF 2006 PUT INTO ITUNES, RIGHT, IN

17   7.0?

18   **A.**  I BELIEVE SO.

19   **Q.**  OKAY.  AND WHAT -- WHEN YOU TALK ABOUT IT BEING DEAD, YOU

20   HAVE A -- IT'S EITHER A ZERO OR A ONE, RIGHT?  AND THIS WAS

21   TURNED TO ZERO.

22   **A.**  THAT'S CORRECT.

23   **Q.**  OKAY.  AND THEN -- SO IT WAS IN THE PRODUCT IN SEPTEMBER

24   2006, AND THEN IT WAS FLIPPED ON AFTER THAT; IS THAT RIGHT?

25   **A.**  IT WAS IN THE -- IT WAS IN THE CODE BASE.  IT WAS NEVER

1    GOING TO BE COMPILED INTO SPA BINARY IMAGE THAT WAS PUSHED

2    OUT.

3    **Q.**  OKAY.

4    **A.**  BECAUSE IT WAS DEAD.

5    **Q.**  AND THEN YOU TURN IT -- HOW DO YOU TURN IT ON?  DO YOU

6    FLIP A SWITCH AND JUST CHANGE THE ZERO TO A ONE?

7    **A.**  ESSENTIALLY THAT'S WHAT YOU DO.  YOU EITHER REMOVE THE

8    IFDEF'S OR YOU CHANGE THE FLAG THAT YOU'RE LOOKING FOR.

9    **Q.**  LAST NIGHT YOU RECEIVED A -- YOU REVIEWED A PERFORMANCE

10   REPORT, IS THAT CORRECT, FROM APPLE?

11   **A.**  THAT'S CORRECT.

12   **Q.**  OKAY.  AND HAD YOU BEEN EVER -- EVER GIVEN THAT

13   PERFORMANCE --

14   **A.**  NO.

15   **Q.**  HAD ANYBODY EVER TALKED TO YOU ABOUT A LACK OF PERFORMANCE

16   IN JUNE 2007 TO DECEMBER OF 2007?

17   **A.**  NO.

18   **Q.**  OKAY.  IN FACT, YOU WERE OFFERED A POSITION IN APPLE TV AS

19   YOU WERE GETTING READY TO LEAVE APPLE; IS THAT CORRECT?

20   **A.**  YEAH, I HAD NUMEROUS OFFERS TO STAY AT APPLE AS I WAS

21   WALKING OUT THE DOOR.

22   **Q.**  AND WOULD THEY -- WERE THEY GIVING YOU A RAISE?

23   **A.**  YOU CAN'T OFFER PEOPLE RAISES TO STAY AT -- AT A JOB -- AT

24   THAT APPLE, LIKE IT'S AGAINST THE RULES.  SO NO, I WAS NOT

25   BEING OFFERED ANYTHING TO STAY.

1    Q.    SO THAT PERFORMANCE THING THAT YOU WERE SENT OVER LAST,

2    NIGHT, DID IT JAR YOU?  WERE YOU CONCERNED?

3    A.    I MEAN, THERE WERE NO SIGNATURES ON THAT DOCUMENT.

4    Q.    OKAY.

5    A.    I HAD NEVER SEEN THE DOCUMENT BEFORE UNTIL LAST NIGHT.

6    Q.    SO YOU DIDN'T SIGN IT?

7    A.    NO, I HAD NEVER SEEN IT.

8    Q.    WAS THERE A SUPERVISOR'S SIGNATURE SIGNED?

9    A.    NO.

10          **MR. COUGHLIN:**  I HAVE NO FURTHER QUESTIONS, YOUR

11    HONOR.

12          **THE COURT:**  ANY RECROSS ON THOSE TWO TOPICS ONLY?

13          **MR. ISAACSON:**  NO, YOUR HONOR.

14          **THE COURT:**  ANY QUESTIONS FROM THE JURY?

15          **A JUROR:**  CAN I HAVE A COUPLE MINUTES?

16          **THE COURT:**  YES, YOU MAY HAVE A COUPLE MINUTES.

17                (PAUSE IN THE PROCEEDINGS.)

18          **THE COURT:**  SO, MR. SCHULTZ, SO THAT YOU KNOW WHAT'S

19    GOING ON, I LET THE JURY PROPOSE QUESTIONS.

20          **THE WITNESS:**  OKAY.

21          **THE COURT:**  SO ONCE I RECEIVE THEM, I WILL LOOK AT

22    THEM WITH THE LAWYERS AND DECIDE WHETHER OR NOT TO ASK IT.

23          **THE WITNESS:**  GOT IT.

24                (PAUSE IN THE PROCEEDINGS.)

25          **A JUROR:**  YOUR HONOR, CAN I PUT TWO QUESTIONS ON ONE

SCHULTZ - REDIRECT / COUGHLIN

1    FORM?

2         **THE COURT:**  YES.

3              (PAUSE IN THE PROCEEDINGS.)

4         **THE COURT:**  ALL RIGHT.  COUNSEL, SIDEBAR.

5              (SIDEBAR OFF THE RECORD.)

6         **THE COURT:**  ALL RIGHT.  WE'RE BACK ON THE RECORD.

7    OKAY., MR. SCHULTZ.  SO WITH RESPECT TO THE FIRST

8    QUESTION, YOU TESTIFIED THAT CORRUPTING THE DATABASE IS NOT AN

9    ATTACK.  CAN YOU EXPAND ON YOUR TESTIMONY THAT THAT WAS A

10   STATEMENT AND NOT AN OPINION?

11        **THE WITNESS:**  SO YEAH, TO GIVE A LITTLE BIT MORE KIND

12   OF COLOR TO THAT, WAS THAT IF YOU WERE ATTACKING THE IPOD'S

13   DRM CONTENT, YOU WOULD NOT CORRUPT THE DATABASE TO TRY AND GET

14   A KEY.

15        IN FACT, THAT WOULD PROBABLY MAKE IT MORE DIFFICULT FOR

16   YOU TO EXTRACT A KEY FROM THE -- FROM THE DRM, SO -- I MEAN,

17   IT'S -- IT'S JUST SOMETHING YOU WOULDN'T DO.

18        IF -- IF YOU'RE ATTACKING THE DRM, RIGHT, WHICH IS WHAT

19   YOU DO TO TRY AND RIP THE CONTENT -- YOU KNOW, A DATABASE

20   CORRUPTION IS SOMETHING THAT, LIKE, A MALICIOUS ATTACKER WOULD

21   DO AS, LIKE, HEY, I'M ATTACKING A USER WHO HAS AN IPOD, RIGHT?

22   BUT THE DRM THREAT MODEL IS THAT THE PERSON WHO OWNS THE

23   CONTENT AND THE DEVICE IS GOING TO ATTACK THE DEVICE, RIGHT?

24        SO THE -- THE THREAT VECTOR THAT DRM IS DESIGNED FOR IS

25   THE USER, RIGHT?  AND SO NO USER IS GOING TO INTENTIONALLY

 1   DESTROY THEIR OWN DATABASE, BECAUSE THERE'S NO VECTOR FOR

 2   GAINING CRYPTOGRAPHIC INFORMATION.

 3       DOES THAT -- DOES THAT ANSWER THE QUESTION?

 4           **THE COURT:**  ANY FOLLOW-UP, MR. COUGHLIN?

 5           **MR. COUGHLIN:**  NO, YOUR HONOR.

 6           **THE COURT:**  MR. ISAACSON?

 7                    **RECROSS-EXAMINATION**

 8   **BY MR. ISAACSON:**

 9   **Q.** JUST TO SIMPLIFY IT, YOU ARE USING THE TERM "ATTACK" WITH

10   RESPECT TO EXTRACTING A KEY FROM THE KEYBAG AND NOT WITH

11   RESPECT TO AN ATTEMPT TO GET INTO THE DATABASE; IS THAT RIGHT?

12   **A.** CORRECT.  SO IT DEPENDS ON -- I MEAN, AT THE END OF THE

13   DAY, YOU COULD PROTECT EVERYTHING, RIGHT?  YOU CAN -- YOU

14   KNOW, AND SO THE DATABASE WAS NEVER PROTECTED.  IT WAS NEVER

15   DEEMED AN ATTACK VECTOR.

16   **Q.** RIGHT.  AND NOW YOU SAY NO USER WOULD DESTROY THEIR OWN

17   DATABASE.  THIRD-PARTY SOFTWARE IMPLEMENTED BY A USER IS

18   NOT -- IS -- THAT'S A THIRD PARTY, NOT THE USER, RIGHT?

19   **A.** THE USER -- WELL, WITH LINUX, ANYBODY CAN WRITE --

20   **Q.** I'M NOT TALKING ABOUT JUST LINUX, SIR.  I'M TALKING ABOUT

21   ALL THIRD-PARTY SOFTWARE THAT'S OUT THERE IN THE WORLD.

22   **A.** YES.

23   **Q.** RIGHT?  THAT'S A THIRD PARTY AND NOT JUST THE USER, RIGHT?

24   **A.** CORRECT.

25           **MR. ISAACSON:**  OKAY.  I DON'T HAVE ANY MORE

1    QUESTIONS.

2            **THE COURT:**  ANY FOLLOW-UP?

3            **MR. COUGHLIN:**  NO.

4            **THE COURT:**  OKAY.  THEN THE SECOND QUESTION, "CAN YOU

5    EXPLAIN WHAT 'NO CRYPTOGRAPHIC FUNCTIONALITY ADDED BY MAC'

6    MEANS?"

7            **THE WITNESS:**  SURE.  SO THE FOUNDATION OF THE MAC IS

8    A CRYPTOGRAPHIC ALGORITHM.  IN THIS CASE WE WERE USING SHA-1

9    HASHING, WHICH IS A FINGERPRINT.  BUT HASHING OVER THE DATA IS

10   LITERALLY JUST A WAY TO VALIDATE THE DATA, AND ALL WE WERE

11   VALIDATING WAS THE DATABASE.  WE WERE NOT VALIDATING ANY

12   CRYPTOGRAPHIC INFORMATION USED ON THAT DATABASE.  THAT WAS ALL

13   CONTAINED WITHIN THE KEYBAG.

14        SO THIS FUNCTIONALITY WAS EXTERNAL TO THE KEYBAG, AND IT

15   WAS SPECIFICALLY FOCUSED ON THE DATABASE, NOT FOCUSED ON THE

16   KEYBAG.  NO VERIFICATION WAS DONE ON THE KEYBAG WITH THAT MAC.

17           **THE COURT:**  ANY FOLLOW-UP?

18           **MR. COUGHLIN:**  NO, YOUR HONOR.

19           **THE COURT:**  MR. ISAACSON?

20           **MR. ISAACSON:**  YES, YOUR HONOR.

21               (PAUSE IN THE PROCEEDINGS.)

22            **FURTHER RECROSS-EXAMINATION**

23   BY MR. ISAACSON:

24   **Q.**  JUST AGAIN, SOME OF THE TERMS YOU'RE USING.

25   **A.**  OKAY.

1  **Q.**  YOU'RE SAYING THAT THE MAC DID NOT VALIDATE CRYPTOGRAPHIC

2  INFORMATION.  YOU'RE SAYING THAT THE SONG ENTRIES WERE NOT

3  ENCOMPASSED BY -- WERE NOT -- WERE NOT ENCRYPTED; IS THAT

4  RIGHT?

5  **A.**  IT WAS DONE --

6                    (OFF-THE-RECORD DISCUSSION.)

7          **THE WITNESS:**  SO IT WAS DONE -- THE MAC'S WERE DONE

8  OVER ALL TYPES OF CONTENT AS THIS SPEC POINTS OUT, ENCRYPTED

9  AND UNPROTECTED CONTENT.

10  **BY MR. ISAACSON:**

11  **Q.**  RIGHT.  SO THE DATABASE HAD ENCRYPTED AND UNENCRYPTED

12  CONTENT; IS THAT RIGHT?

13  **A.**  YES.

14  **Q.**  RIGHT.

15      AND THE MAC WAS DONE FOR BOTH -- THE MAC FOR THE WHOLE

16  DATABASE PROTECTED BOTH THE ENCRYPTED CONTENT AND THE

17  UNENCRYPTED CONTENT, RIGHT?

18  **A.**  IT VALIDATED IT.

19  **Q.**  RIGHT.

20      IT KEPT THIRD PARTIES FROM GETTING AT THE BOTH THE

21  ENCRYPTED CONTENT AND THE UNENCRYPTED CONTENT, CORRECT?

22  **A.**  NO.

23  **Q.**  OKAY.  IT KEPT -- THIRD -- WHEN -- WHEN THE DATABASE MAC

24  WAS IMPLEMENTED AS YOU CALL IT --

25  **A.**  RIGHT.

1  **Q.**  -- IT MADE IT MORE DIFFICULT FOR THIRD PARTIES TO GET INTO

2  THE DATABASE?

3  **A.**  IT'S MADE IT MORE DIFFICULT FOR THEM TO WRITE TO THE

4  DATABASE, NOT TO GET INTO IT.

5  **Q.**  ALL RIGHT.  THANK YOU FOR THE MORE SPECIFIC WORD.

6      THE MAC HAD THE EFFECT OF -- OF STOPPING THIRD PARTIES

7  FROM WRITING TO THE DATABASE WHICH INCLUDED BOTH ENCRYPTED AND

8  UNENCRYPTED CONTENT.

9      DO I HAVE THAT RIGHT?

10  **A.**  THE DATABASE WAS A POINTER TO ENCRYPTED AND UNENCRYPTED

11  CONTENT.

12  **Q.**  YES.

13                    (PAUSE IN THE PROCEEDINGS.)

14  **BY MR. ISAACSON:**

15  **Q.**  AND FOR THE CHANGES THAT HAPPENED IN SEPTEMBER 2007, THEY

16  WERE MORE THAN THE MAC, RIGHT?  THERE WAS A -- THERE WAS A LOT

17  OF NEW CODE PUT INTO THAT UPDATE FOR FAIRPLAY, CORRECT?

18  **A.**  THERE WAS A LOT OF STUFF THAT WENT INTO THAT UPDATE.

19  **Q.**  RIGHT.  A LOT OF NEW CODE, RIGHT?

20  **A.**  INTO ITUNES 7.0?

21  **Q.**  SEVEN-POINT -- WELL -- YES, WELL -- START WITH 7.0,

22  SEPTEMBER 2006.

23  **A.**  YEAH.

24  **Q.**  THERE WAS A LOT OF NEW CODE?

25  **A.**  TONS.

1    **Q.**   TONS.  CHANGED THE CODE, RIGHT?

2    **A.**   YEAH, THE FEATURES --

3            **MR. COUGHLIN:**  I OBJECT, YOUR HONOR.  WE'RE PAST --

4    WAY PAST THE SCOPE OF THE QUESTION.

5            **THE COURT:**  OVERRULED.

6    **BY MR. ISAACSON:**

7    **Q.**   OKAY.  7 -- AND THEN IN 7.4, THE CODE -- WHICH IS

8    SEPTEMBER 2007 --

9    **A.**   YEAH.

10   **Q.**   -- A YEAR LATER --

11   **A.**   YEAH.

12   **Q.**   -- IN ADDITION TO THE MAC NO LONGER BEING DEAD, THERE WAS

13   ALL NEW CODE IN THAT UPDATE, RIGHT?

14   **A.**   YEAH, I MEAN, EVERY UPDATE WAS PUSHED OUT FOR A REASON

15   BECAUSE THERE WAS NEW CODE.

16   **Q.**   RIGHT.  AND YOU CHANGED THE CRYPTOGRAPHIC CODES THAT -- IN

17   7.4, RIGHT?

18   **A.**   I'M NOT SURE I UNDERSTAND THE QUESTION.

19   **Q.**   OKAY.  WITH EACH UPDATE, THE CODES WERE CHANGED, RIGHT?

20   **A.**   NEW FEATURES WERE ADDED IN, BUGS WERE PATCHED, RIGHT?

21   **Q.**   BUT THE CRYPTOGRAPHIC CODES, THE SECURITY CODES WERE

22   CHANGED IN 7.4, OR DO YOU KNOW THAT ONE WAY OR THE OTHER?

23   **A.**   OF COURSE -- I MEAN, FEATURES ARE ADDED TO FAIRPLAY

24   CONSTANTLY.  WHEN YOU SAY -- I GUESS WHAT I'M STRUGGLING WITH

25   IS WHAT YOUR DEFINITION OF "CODES" IS, RIGHT?  THAT'S A VERY,

1    VERY ABSTRACT TERM.

2    **Q.**  ALL RIGHT.  I WON'T KEEP YOU TO DISCUSS IT.

3    **A.**  OKAY.

4    **Q.**  THANKS VERY MUCH.

5                    **REDIRECT EXAMINATION**

6    **BY MR. COUGHLIN:**

7    **Q.**  IT WAS YOUR ALGORITHM THAT WAS PUT IN IN SEPTEMBER 2006,

8    IS THAT RIGHT, IN 7.0?

9    **A.**  YES.

10   **Q.**  OKAY.  AND THEN THAT ALGORITHM WAS SWITCHED ON IN

11   SEPTEMBER 2007, IS THAT RIGHT, IN 7.4?

12   **A.**  CORRECT.

13           **MR. COUGHLIN:**  NO FURTHER QUESTIONS.

14           **MR. ISAACSON:**  NOTHING FURTHER, YOUR HONOR.

15           **THE COURT:**  ANYTHING ELSE?  NO?

16      ALL RIGHT.  ALL RIGHT THEN, MR. SCHULTZ, YOU'RE EXCUSED.

17           **THE WITNESS:**  THANK YOU.

18           **THE COURT:**  NEXT WITNESS?

19           **MR. COUGHLIN:**  YOUR HONOR, PLAINTIFFS REST.

20           **THE COURT:**  OH, SO DR. NOLL'S NOT COMING BACK?

21           **MR. COUGHLIN:**  NO.

22           **THE COURT:**  OKAY.  ANY -- REBUTTAL TO THE REBUTTAL?

23           **MR. ISAACSON:**  NOT AT THIS POINT, AND I DON'T THINK

24   WE WILL.  IF WE DO, WE'LL MAKE AN APPLICATION, BUT --

25           **THE COURT:**  OKAY.

SCHULTZ – REDIRECT / COUGHLIN

1    LADIES AND GENTLEMEN, THEN THAT CONCLUDES THE EVIDENTIARY

2   PORTION OF THE TRIAL.  SO AFTER THE EVIDENTIARY PORTION OF THE

3   TRIAL, THE COURT ALWAYS HAS TO SPEND SOME TIME WITH LAWYERS

4   NOW THAT I KNOW WHAT THE EVIDENCE IS THAT HAS BEEN PRESENTED

5   TO YOU TO FINALIZE ALL THE LEGAL INSTRUCTIONS THAT NEED TO BE

6   GIVEN TO YOU.

7    SO AS YOU WILL RECALL, WHEN WE STARTED THIS TRIAL, WE HAD

8   AN EMPTY BOX.  RIGHT?  NOW, YOU HAVE ALL THE EVIDENCE YOU CAN

9   CONSIDER IN THAT BOX.  BUT WHAT YOU DON'T HAVE YET ARE THE

10  INSTRUCTIONS AS TO HOW TO THINK ABOUT THAT EVIDENCE.  AND

11  THAT'S WHAT I STILL HAVE TO GIVE TO YOU.

12   AND THE PARTIES, BELIEVE IT OR NOT, ALSO HAVE THEIR

13  PERSPECTIVES ON WHAT THEY THINK THE LAW SAYS OR MEANS, AND SO

14  THEY LIKE THE ARGUE ABOUT WHAT I'M GOING TO TELL THE JURY, AND

15  THAT'S THEIR RIGHT.  SO WE JUST NEED SOME TIME TO DO THAT.

16   THE OTHER THING YOU DON'T HAVE IS -- YOU DON'T HAVE THE

17  ARGUMENTS FROM THE LAWYERS YET.  SO YOU THINK ABOUT IT, YOU

18  HAVE ALL THOSE PUZZLE PIECES AND THEY'RE GOING TO PUT TOGETHER

19  A PICTURE THAT DIFFERS FROM ONE ANOTHER, AND THAT'S

20  ESSENTIALLY WHAT ARGUMENT IS.  THEY GET TO USE THE EVIDENCE

21  AND ARGUE TO YOU WHAT THEY BELIEVE THE EVIDENCE NOW SHOWS.

22   THOSE TWO PICTURES WILL BE DIFFERENT.  I GUARANTEE YOU.

23  IF THEY WEREN'T, WE WOULDN'T BE HERE.

24   YOU THEN GET TO TAKE ALL OF THAT INFORMATION, ALL OF THOSE

25  ARGUMENTS, AND THE COURT'S INSTRUCTIONS, AND YOU WILL THEN GO

1   BACK INTO THE JURY ROOM AND PUT TOGETHER YOUR OWN PICTURE.

2   AND THEN YOU WILL DECIDE AND ANSWER THE QUESTIONS ON THE

3   VERDICT FORM THAT I GIVE TO YOU, AND THAT WILL BE YOUR

4   COMMUNICATION TO THE COURT ABOUT WHAT YOU BELIEVE COLLECTIVELY

5   THE EVIDENCE SHOWS.

6        SO THAT'S -- THAT'S THE PROCESS.

7        AS I'VE TOLD YOU, THE PARTIES HAVE BEEN WORKING FURIOUSLY

8   WHEN YOU'RE NOT HERE, AND THEY WILL CONTINUE TO WORK FURIOUSLY

9   BEFORE YOU COME BACK SO THAT I'M NOT KEEPING YOU WAITING.  I

10  AM GOING TO ASK THAT YOU RETURN SO THAT WE WILL START WITH YOU

11  AT 10:30 ON MONDAY MORNING.

12       AND THIS IS WHAT I ANTICIPATE WILL HAPPEN.  I WILL GIVE

13  YOU INSTRUCTIONS.  YOU WILL HEAR FROM THE PARTIES, AND THEN I

14  WILL SEND YOU OFF TO DELIBERATE.  THAT MEANS WE WILL PROBABLY

15  GO LATER INTO THE AFTERNOON.  I'M THINKING -- I'M THINKING YOU

16  SHOULD HAVE THE CASE NO LATER THAN 3:00 O'CLOCK, SO 2:30 OR

17  3:00.

18       AND THEN ONCE YOU HAVE THAT, YOU CAN DECIDE WHETHER YOU

19  WANT TO STAY LATER OR JUST AGREE ON A SCHEDULE AND COME BACK

20  IN THE MORNING AND START YOUR DELIBERATIONS IN EARNEST.

21       DOES ANYBODY ANTICIPATE A PROBLEM WITH BEING HERE AS LATE

22  AS 3:00 O'CLOCK ON MONDAY?

23                 (JURORS SHAKING HEADS.)

24            **THE COURT:**  NO?  THAT WORKS.

25       OKAY.  SO THEN YOU ARE EXCUSED UNTIL 10:30 ON MONDAY.

1    AGAIN, I WILL REMIND YOU -- AND NOW IT'S VERY IMPORTANT --

2    CRITICALLY IMPORTANT THAT YOU -- THAT YOU STRICTLY COMPLY WITH

3    THE DAILY ADMONISHMENT THAT I HAVE BEEN GIVING YOU NOT TO

4    COMMUNICATE WITH ANYONE OR LET ANYONE ELSE COMMUNICATE WITH

5    YOU IN ANY WAY ABOUT THE MERITS OF THIS CASE.

6    BECAUSE ALL THE EVIDENCE IS NOW IN, PEOPLE MAY WRITE ABOUT

7    WHAT THEY THINK, BUT THEIR OPINION'S NOT RELEVANT TO ME.  IT'S

8    RELEVANT TO ME IS YOUR OPINION AND NOT YOUR INDIVIDUAL OPINION

9    BUT YOUR COLLECTIVE OPINION.

10   SO I HOPE OVER THE COURSE OF THE LAST COUPLE WEEKS YOU'VE

11   GOTTEN TO KNOW EACH OTHER WELL.  I HEAR FROM FRANCES THAT SHE

12   GOES IN AND YOU'RE LAUGHING AND ALL TALKING TOGETHER, SO

13   THAT'S ALL -- THAT'S ALL GOOD BECAUSE YOU HAVE TO WORK AS A

14   TEAM WHEN YOU GET IN THERE.  YOU HAVE TO LISTEN TO EACH OTHER.

15   AND YOU HAVE TO DELIBERATE TOGETHER.

16   BUT THE FACT THAT THERE MAY HAVE BEEN PRESS IN THE GALLEY

17   AND THE FACT THAT THEY MAY HAVE THEIR OWN OPINIONS ON WHERE

18   THIS CASE SHOULD GO, IT'S IMPORTANT THAT YOU'RE NOT INFECTED

19   BY ANYTHING SO DO NOT DO ANY RESEARCH, DO NOT READ ANY NEWS

20   ARTICLES, WATCH, LISTEN TO ANY NEWS OR MEDIA ACCOUNTS OR

21   COMMENTARY ABOUT THIS CASE.

22   DO NOT DISCUSS IT WITH YOUR FRIENDS, NEIGHBORS, FAMILY.

23   DON'T DISCUSS IT WITH EACH OTHER BECAUSE YOU STILL HAVE MORE

24   TO THINK ABOUT.  YOU STILL HAVE TO HEAR WHAT THE PARTIES ARE

25   GOING TO SAY.  ENJOY THE HOLIDAY WEEKEND.

1    I CAN ASSURE YOU WE'LL ALL BE WORKING AND STAY DRY.  AND

2    WE WILL SEE YOU NEXT WEEK AT 10:30 ON MONDAY.  THANK YOU.

3        (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE PRESENCE

4    OF THE JURY:)

5            **THE COURT:**  ALL RIGHT.  THE RECORD WILL REFLECT THAT

6    THE JURY HAS LEFT THE COURTROOM.

7        LET'S STAND IN RECESS TILL 10:15.

8                (RECESS TAKEN AT 9:53 A.M.)

9            (CONTINUED NEXT PAGE; NOTHING OMITTED.)

2043

```
 1          (PROCEEDINGS HELD OUTSIDE THE PRESENCE OF THE JURY.)

 2          THE CLERK:  REMAIN SEATED.  COURT IS IN SESSION.

 3   COME TO ORDER.

 4          THE COURT:  OKAY.  WE'RE BACK ON THE RECORD.

 5          (PROCEEDINGS HELD OUTSIDE THE PRESENCE OF THE JURY.)

 6          SO I HAD DELIVERED TO YOU THREE INSTRUCTIONS THAT I WANT

 7   TO TALK ABOUT.

 8          FIRST ONE IS THE -- ON THE SMALLER SIDE, THE FIRST TWO

 9   SMALL ONES ADDRESS THOSE SMALLER ISSUES THAT BOTH SIDES

10   RAISED.

11          ANY COMMENTS?

12          MS. SWEENEY:  YOUR HONOR, THE ONE REGARDING

13   DEPOSITION TESTIMONY IS FINE FOR PLAINTIFFS.

14          MR. ISAACSON:  NO OBJECTION.

15          THE COURT:  OKAY.  AND?

16          MS. SWEENEY:  AND THE SECOND ONE, WE WOULD REQUEST

17   THE INSERTION OF THE WORD "AN AFFECTED IPOD" IN THE FOURTH

18   LINE OF THE SECOND PARAGRAPH BECAUSE SHE DID PURCHASE AN

19   UNAFFECTED MODEL IPOD DURING THAT TIME PERIOD.  AND THERE'S --

20          THE COURT:  WELL, BUT IT WASN'T CLEAR TO ME THAT SHE

21   DID -- DIDN'T SHE USE THE SAME CORPORATE CARD?

22          MS. SWEENEY:  NO.  THAT WAS FOR THE CLASSIC FIFTH

23   GENERATION.  WELL, I SHOULD SAY THERE'S NO EVIDENCE ON THAT

24   BECAUSE THAT WAS A SUBJECT OF DISCOVERY, AND THEY HAVE THE

25   RECEIPT --
```

2044

```
 1            THE COURT:  IS THERE AN OBJECTION?

 2            MR. ISAACSON:  NO.  PUTTING THAT WORD IN THERE I

 3    DON'T THINK CHANGES ANYTHING.

 4            THE COURT:  OKAY.  ANY OTHER COMMENTS ON THIS ONE?

 5            MR. ISAACSON:  NO, YOUR HONOR, NOT FROM APPLE.

 6            THE COURT:  OKAY.

 7         OKAY.  SO, THE THIRD ELEMENT, AGAIN, I HAVE PUT YOUR -- AS

 8    I SAID, I RECONFIGURED THIS TO BE ONE AS OPPOSED TO TWO.  AND

 9    I'VE INCLUDED YOUR OWN LANGUAGES IN TERMS OF RED VERSUS GREEN.

10         SO LET'S START WITH THE FIRST PARAGRAPH.  ANY OBJECTIONS

11    TO THE FIRST PARAGRAPH?

12            MR. COUGHLIN:  ARE WE TALKING ABOUT THE RED, IF THE

13    RED IS ADDED?

14            THE COURT:  WE ARE JUST GOING PARAGRAPH BY PARAGRAPH,

15    MR. COUGHLIN.

16            MR. COUGHLIN:  OKAY.

17            MS. DUNN:  NO.

18            THE COURT:  FIRST PARAGRAPH.  IT IS ONE SENTENCE.

19            MR. COUGHLIN:  NO OBJECTION.

20            MS. DUNN:  NO OBJECTION.

21            THE COURT:  ALL RIGHT.  ALL RIGHT.

22         THE NEXT SENTENCE.

23            MR. COUGHLIN:  YOUR HONOR, I WOULD --

24            THE COURT:  "THE SHERMAN ACT OFFERING A GENUINE

25    PRODUCT IMPROVEMENT CANNOT BE CONSIDERED AN ANTICOMPETITIVE
```

```
1    ACT REGARDLESS OF ITS EFFECT ON A COMPETITOR."

2              MR. COUGHLIN:  NO OBJECTION.

3              MS. DUNN:  NO OBJECTION.

4              THE COURT:  "THEREFORE, AS A THRESHOLD QUESTION, YOU

5    WILL BE ASKED TO DETERMINE WHETHER THE SOFTWARE UPDATE KNOWN

6    AS ITUNES 7.0," AND THEN I'VE GOT THE PLAINTIFFS' LANGUAGE.

7              MR. COUGHLIN:  I WOULD JUST PUT A PERIOD AFTER 7.0.

8              THE COURT:  WELL, THAT IS NOT A STATEMENT.

9              MR. COUGHLIN:  EXCUSE ME, YOUR HONOR?

10             THE COURT:  "YOU WILL BE ASKED TO DETERMINE WHETHER

11   THE SOFTWARE UPDATE KNOWN AS ITUNES 7.0 PERIOD"?  THAT IS NOT

12   A SENTENCE.

13             MR. COUGHLIN:  I WAS GOING TO CORRECT THE SENTENCE,

14   BUT I WAS GOING TO END IT THERE.  SO IF WE CAN PUT SOMETHING

15   BEFORE THAT.

16      I WOULD ADD, "YOU WILL BE ASKED TO DETERMINE WHETHER" -- I

17   DIDN'T MEAN PERIOD THERE, I MEANT STOP IT THERE AND THEN PICK

18   UP WHERE GENUINE PRODUCT IMPROVEMENT.

19             THE COURT:  SO THE --

20             MR. COUGHLIN:  I WOULD TAKE OUT THE RED LANGUAGE.

21             THE COURT:  WHICH WAS YOUR LANGUAGE.

22             MR. COUGHLIN:  YES.

23             THE COURT:  IS THERE AN OBJECTION TO THE PROPOSED

24   REVISION?

25             MS. DUNN:  NO.  THAT'S FINE.
```

2046

1          **THE COURT:**  THAT'S FINE WITH YOU?  OKAY.

2          **MR. COUGHLIN:**  AND I WOULD JUST ADD, "WHETHER THE

3    FIRMWARE AND SOFTWARE UPDATES KNOWN AS ITUNES 7.0".  BECAUSE

4    IT'S IN THE FIRMWARE AS WELL AS THE SOFTWARE.

5          **MS. DUNN:**  I MEAN, THE FIRMWARE IS IN THE IPOD.

6          **MR. COUGHLIN:**  RIGHT.  THAT'S WHERE THE KVC AND DVC

7    ARE, THE FIRMWARE.

8          **MS. DUNN:**  SO, I MEAN, THIS CASE IS ABOUT ITUNES 7.0,

9    THE SOFTWARE UPDATE, IS WHAT THIS SAYS.

10        SO I THINK IF YOU ARE GOING TO DO THAT, YOU PROBABLY

11   SHOULD INCLUDE THE RED LANGUAGE TO MAKE IT CLEAR.  BUT I DON'T

12   THINK IT MAKES SENSE TO SAY, "THE SOFTWARE AND FIRMWARE

13   UPDATES KNOWN AS 7.0."  BECAUSE THE TRUTH IS, THOSE FIRMWARE

14   UPDATES, LIKE THEY CONTINUE.

15         **THE COURT:**  WE ARE GOING TO HAVE YOU TALK IN THE

16   MIC --

17         **MS. DUNN:**  OKAY.

18         **THE COURT:**  -- MS. DUNN.

19         **MR. COUGHLIN:**  YOUR HONOR, IF SHE WANTS TO DO THAT,

20   THAT'S FINE.  WE WILL LEAVE THE RED LANGUAGE AND WE WON'T

21   CHANGE THE SENTENCE.

22         **THE COURT:**  SO ARE WE GOOD THEN WITH THAT SENTENCE?

23   DOES THAT WORK?

24         **MS. DUNN:**  THAT'S FINE.

25         **THE COURT:**  OKAY.  SO THAT STAYS IN.

```
1        WE HAVE MADE IT THROUGH TWO PARAGRAPHS.

2        NEXT PARAGRAPH.  UNDERSTANDING THERE ARE OBJECTIONS TO THE

3   APPROACH THAT THE COURT HAS TAKEN -- AND USUALLY AFTER EVERY

4   DAY WHEN I HAVE LOTS OF OBJECTIONS, I GO BACK AND SAY, YOU

5   KNOW, IT'S THE LIFE OF A JUDGE.  IF ONE SIDE WINS, THE JUDGE

6   IS GREAT.  IF THAT SIDE LOSES, TOTALLY SCREWED UP.  SO I KNOW.

7   I KNOW THAT'S MY ROLE.

8        SO, DESPITE THE OVERALL OBJECTIONS, WHICH ARE ALL

9   PRESERVED FOR THE RECORD BECAUSE THEY HAVE BEEN STATED MANY

10  TIMES, IS THERE ANYTHING SPECIFIC YOU WANT TO TALK ABOUT THE

11  THIRD PARAGRAPH?

12            MR. COUGHLIN:  NO, YOUR HONOR.

13            MS. DUNN:  NO, YOUR HONOR.

14            THE COURT:  OKAY.

15       NOW, THE NEXT TWO PARAGRAPHS ARE YOUR OWN REQUESTS WITH

16  RESPECT TO THE COURT EXPLAINING TO THE JURY YOUR PERSPECTIVES

17  ON THE CASE.  LET'S TALK FIRST ABOUT WHETHER THE COURT SHOULD

18  DO THIS AT ALL.

19       SO DO YOU WANT ME TO DO IT?  YES OR NO.  AND IF YOU BOTH

20  WANT ME TO DO IT, THEN WE CAN TALK ABOUT THE LANGUAGE.

21            MR. COUGHLIN:  I DON'T CARE IF THE COURT DOES IT.  IF

22  IT'S GOING TO BE DONE FOR THEM THOUGH, OF COURSE, I WOULD LIKE

23  A PARAGRAPH.

24            THE COURT:  MR. ISAACSON?

25            MR. COUGHLIN:  IN FACT, BECAUSE IT'S NOT -- BECAUSE
```

2048

```
 1   WE ARE SO -- WE HAVE SUCH DIFFERENT VIEWS, I DON'T THINK WE

 2   SHOULD DO IT.

 3             THE COURT:  WELL, THAT'S MY PERSPECTIVE.

 4             MS. DUNN:  ALSO MY PERSPECTIVE.

 5             THE COURT:  OKAY.

 6      SO, THE NEXT TWO PARAGRAPHS, EVERYBODY AGREES, CAN BE

 7   DELETED, RIGHT?  AND YOU GUYS CAN JUST ARGUE, WHICH IS FINE

 8   WITH ME.

 9      OKAY.  NOW I THINK THE REST IS PRETTY STRAIGHTFORWARD, BUT

10   PROBABLY NOT.

11      THE NEXT PARAGRAPH, "IF YOU FIND".

12             MR. COUGHLIN:  NO OBJECTION.

13             MS. DUNN:  NO OBJECTION.

14             THE COURT:  OKAY.

15      IS THERE AN OBJECTION TO THE NEXT PARAGRAPH "DEFINING

16   ANTICOMPETITIVE ACTS"?

17      AND I THINK THE REST OF THIS IS PROBABLY PRETTY

18   STRAIGHTFORWARD.

19             MS. SWEENEY:  NO OBJECTION, YOUR HONOR.

20             MS. DUNN:  NO OBJECTION.

21             THE COURT:  OKAY.  "MERE POSSESSION OF MONOPOLY

22   POWER"?

23             MS. SWEENEY:  NO OBJECTION.

24             MS. DUNN:  NO OBJECTION.

25             THE COURT:  "ANY ACTS AND PRACTICES THAT RESULT IN
```

2049

```
 1    THE MAINTENANCE OF MONOPOLY POWER"?

 2         MR. COUGHLIN:  NO OBJECTION.

 3         MS. DUNN:  NO OBJECTION.

 4         THE COURT:  "IF A FIRM HAS A LEGITIMATE BUSINESS

 5    REASON FOR ITS CONDUCT," THAT PARAGRAPH?

 6         MR. COUGHLIN:  I WOULD JUST LIKE TO SAY FOR THE

 7    RECORD, YOUR HONOR, WE DON'T LIKE IT, BUT WE DON'T HAVE AN

 8    OBJECTION.

 9         THE COURT:  WELL, THAT'S NOT MY ROLE.

10         MS. DUNN:  WE LIKE IT.

11         THE COURT:  ALL RIGHT.  I'M HEARING THAT NO

12    OBJECTION.

13         MS. DUNN:  NO OBJECTION.

14         THE COURT:  AND THEN THE FINAL PARAGRAPH?

15         MR. COUGHLIN:  NO OBJECTION.

16         MS. DUNN:  NO OBJECTION.

17         THE COURT:  THERE WAS ONE OTHER PARAGRAPH THAT

18    STARTED AT THE BOTTOM OF THE SECOND PAGE, WENT ONTO THE THIRD

19    PAGE, "THE DIFFERENCE BETWEEN THE -- BETWEEN ANTICOMPETITIVE

20    CONDUCT AND LEGITIMATE BUSINESS PURPOSE CAN BE DIFFICULT."

21      AND I WILL STRESS DIFFICULT.

22         MS. SWEENEY:  NO OBJECTION, YOUR HONOR.

23         MS. DUNN:  NO OBJECTION.

24         THE COURT:  OKAY.  ALL RIGHT.  WELL, THAT WAS EASIER

25    THAN I THOUGHT IT WAS GOING TO BE.
```

```
 1        SO THOSE WERE THE ONES THAT I HAD THAT I WANTED TO TALK TO

 2   YOU ABOUT, I THINK.  WHY DON'T YOU CHECK YOUR NOTES.  I HAVE

 3   ALREADY MADE THE RULINGS ON THE ONES THE COURT'S NOT GOING TO

 4   GIVE.  SEE IF THERE IS ANYTHING ELSE WE NEED TO CHAT ABOUT.

 5        GIVEN THAT I DID ALLOW IN THAT ONE INTERROGATORY RESPONSE,

 6   I DON'T KNOW THAT IT WILL BE USED, BUT I WILL HAVE TO INCLUDE

 7   THE STANDARD INSTRUCTION ON THAT ISSUE, WHICH IS:  THAT

 8   EVIDENCE WAS RECEIVED IN THE FORM OF ANSWERS OF ONE OF THE

 9   PARTIES TO WRITTEN INTERROGATORIES SUBMITTED BY THE OTHER

10   SIDE.  THESE ANSWERS WERE GIVEN IN WRITING AND UNDER OATH

11   BEFORE THE ACTUAL TRIAL IN RESPONSE TO QUESTIONS THAT WERE

12   SUBMITTED IN WRITING UNDER ESTABLISHED COURT PROCEDURES.  YOU

13   SHOULD CONSIDER THE ANSWERS INSOFAR AS POSSIBLE IN THE SAME

14   WAY AS IF THEY WERE MADE FROM THE WITNESS STAND.

15        THE DAMAGES ONE.  THAT'S WHAT WE STILL HAVE TO DO.

16             MS. SWEENEY:  THAT'S WHAT I WAS JUST GOING TO SAY,

17   YOUR HONOR.

18                  (PAUSE IN THE PROCEEDINGS.)

19             MR. ISAACSON:  YOUR HONOR, DID YOU -- YOUR PROPOSED

20   INSTRUCTION ON THE INTERROGATORY, DID IT SAY THE INTERROGATORY

21   WAS VERIFIED?

22             THE COURT:  I THOUGHT WE RESOLVED THIS ISSUE.  IT HAS

23   TO BE VERIFIED.

24             MR. ISAACSON:  IT'S NOT VERIFIED.

25             THE COURT:  ALL RIGHT.  MR. COUGHLIN?
```

```
1          MR. COUGHLIN:  WE HAVE VERIFIED VERSIONS.  SO....

2          MR. ISAACSON:  VERIFIED AS OF WHAT DATE?

3          MS. BERNAY:  LAST WEEK.  I THINK IT WAS THE 4TH OR

4   THE 5TH OF DECEMBER.

5          MR. COUGHLIN:  VERIFIED ON THE 4TH OF DECEMBER.

6      AT LEAST IT WAS A WEEK AGO, YOUR HONOR.

7          MR. ISAACSON:  AND NOT PRODUCED.

8          THE COURT:  THIS IS WHAT CIRCUIT JUDGES HAVE NO IDEA

9   HAPPENS UNLESS THEY WERE TRIAL COURT JUDGES.  SITTING UP HERE,

10  THINGS HAPPEN.  ALL RIGHT.  LET ME CHEW ON IT.

11      HE IS GOING TO PRINT YOU COPIES OF THE FIFTH ELEMENT.

12      I NEED TO JUST, IN THE QUIET OF A BUSINESS HOUR WITHOUT

13  BEING 9:00 O'CLOCK, I NEED TO READ THIS AGAIN.

14      CAN WE TAKE A BREAK FOR ANOTHER HALF HOUR?

15         MR. ISAACSON:  ABSOLUTELY, YOUR HONOR.

16         THE COURT:  WE WILL GIVE IT TO YOU.  JUST KNOW THAT I

17  WANTED TO SIT DOWN AND READ IT AGAIN, AND THEN WE CAN TALK.

18      SO I WILL HAVE HIM BRING THESE THINGS OUT.  YOU CAN GO TO

19  THE ATTORNEY LOUNGE AND WE WILL MEET UP IN ANOTHER HALF HOUR.

20         MR. ISAACSON:  THANK YOU.

21         MR. COUGHLIN:  THANK YOU.

22         MS. DUNN:  THANK YOU, YOUR HONOR.

23      (RECESS TAKEN AT 10:38 A.M.; RESUME AT 11:10 A.M.)

24         THE CLERK:  YOU MAY BE SEATED.  COURT IS IN SESSION.

25  COME TO ORDER.
```

2052

1          **THE COURT:**  OKAY.  WE ARE BACK ON THE RECORD.

2       THE RECORD WILL REFLECT THAT THE PARTIES ARE PRESENT.

3          **MR. COUGHLIN:**  YOUR HONOR, IF WE MIGHT JUST DO A

4    LITTLE HOUSEKEEPING SO WE DON'T FORGET AT THE END.

5       I THINK THERE ARE EXHIBITS THAT MR. ISAACSON WANTS TO MOVE

6    IN.

7          **MR. ISAACSON:**  THAT MS. DEARBORN WANTS TO MOVE IN.

8          **THE COURT:**  WE WILL DEAL WITH EXHIBITS AFTERWARDS.

9          **MR. COUGHLIN:**  OKAY.

10          **THE COURT:**  THEN I ALSO GAVE YOU A DRAFT OF A

11    POTENTIAL VERDICT FORM WHICH WE NEED TO REVIEW, TOO.

12       OKAY.  SO WITH RESPECT TO THE DAMAGES, THIS IS A SERIES OF

13    INSTRUCTIONS, FIVE PAGES.  THE FIRST TWO PAGES, THE FIFTH

14    ELEMENT UNDER BOTH CLAIMS HAS THREE COMPONENTS.

15       AND THEN THERE'S THE WHAT'S TITLED IN THE MODEL IS THE

16    INTRODUCTION AND PURPOSE IN TERMS OF THE AMOUNTS, THE FIFTH

17    ELEMENT IS THE INJURY AND CAUSATION, AND THEN SPECULATION, AND

18    THEN CAUSATION, AND DISAGGREGATION.  SO THOSE ARE THE -- THIS

19    IS THE WORKING COPY THAT I HAVE PROVIDED TO YOU.

20       I HAVE YOUR PRIOR SUBMISSIONS TO ME IN THE EVENT THAT YOU

21    NEED ME TO REFER BACK TO THAT.

22       LET'S START WITH THE FIFTH ELEMENT.  ANY OBJECTIONS TO --

23    THROUGH THE FIRST COMPONENT?

24          **MS. SWEENEY:**  NO, YOUR HONOR.

25          **MR. ISAACSON:**  NO OBJECTION, YOUR HONOR.

2053

```
1        THE COURT:  ALL RIGHT.

2      THE SECOND COMPONENT THEN, I DON'T THINK THE FIRST

3   SENTENCE IS OBJECTIONABLE, BUT THEN I -- WHAT I HAVE HERE FOR

4   THE REST OF IT IS PORTIONS FROM BOTH PARTIES; THE GREEN BEING

5   SUBMITTED FROM APPLE AND THE RED FROM PLAINTIFFS.

6      SO COMMENTS.

7        MS. SWEENEY:  YOUR HONOR, PLAINTIFFS WOULD PROPOSE

8   JUST ELIMINATING, NOT SURPRISINGLY, THE GREEN.  PART OF IT IS

9   REDUNDANT OF THE FIRST SENTENCE.  BUT THE PART THAT PLAINTIFFS

10  OBJECT TO IS WHERE IT SAYS, "ANY ALLEGED INJURY THAT IS CAUSED

11  BY LEGAL CONDUCT AS OPPOSED TO ANTICOMPETITIVE CONDUCT CANNOT

12  BE CONSIDERED."

13     AND I UNDERSTAND THAT THAT'S CORRECT, BUT THE WAY IT'S

14  WORDED, IT SUGGESTS THAT THE ANTI -- THAT THE ANTICOMPETITIVE

15  CONDUCT HAS TO BE THE SOLE CAUSE OF THE INJURY, AND THAT'S NOT

16  THE LAW.

17       THE COURT:  I SAY AT THE BOTTOM THAT THEY'RE NOT

18  REQUIRED TO PROVE THAT THE ALLEGED ANTITRUST VIOLATION WAS THE

19  SOLE CAUSE.  I INCLUDED THAT.

20     THIS GETS TO THE DISAGGREGATION INSTRUCTION LATER.

21       MS. SWEENEY:  YEAH, I UNDERSTAND.

22       THE COURT:  THAT INSTRUCTION COMES FROM THE MODEL.  I

23  THINK IT'S THE LAW.  I UNDERSTAND IT TO BE THE LAW.

24       MS. SWEENEY:  THEN, YOUR HONOR, I WOULD SUGGEST -- I

25  JUST THINK THAT THE FIRST TWO SENTENCES IN THAT PARAGRAPH...
```

```
 1   MAYBE IT'S REDUNDANT OF THE TITLE, NOT EXACTLY THE FIRST

 2   SENTENCE.

 3           THE COURT:  OF THE TITLE?  WHICH TITLE ARE YOU

 4   TALKING ABOUT?

 5           MS. SWEENEY:  OF THE SUBSECTION.

 6       I WITHDRAW THAT OBJECTION, YOUR HONOR.

 7           MR. ISAACSON:  WE HAVE NO OBJECTION TO THE PARAGRAPH

 8   AS A WHOLE.

 9           THE COURT:  ALL RIGHT.  THEN I WILL KEEP IT AS IT'S

10   FORMULATED THERE.

11       ELEMENT -- OR COMPONENT THREE?  THE FINAL COMPONENT.  ANY

12   OBJECTIONS?

13           MS. SWEENEY:  NO OBJECTION, YOUR HONOR.

14           MR. ISAACSON:  I AM SORRY, NUMBER THREE?  WE HAVE NO

15   OBJECTION.

16           THE COURT:  OKAY.  THEN THE NEXT, THE ANTITRUST

17   DAMAGES, INTRODUCTION AND PURPOSE.

18           MS. SWEENEY:  NO OBJECTION, YOUR HONOR.

19           MR. ISAACSON:  WE DON'T HAVE A SUBSTANTIVE OBJECTION.

20   JUST IN TERMS OF AVOIDING CONFUSION, IT REFERS TO, IN THE

21   FIRST LINE, "EITHER OF THEIR CLAIMS" AND LATER ON, AT THE --

22   TOWARDS THE BOTTOM OF THE PARAGRAPH, "IF YOU FOUND FOR APPLE

23   ON BOTH ALLEGED CLAIMS".

24       NOW, I UNDERSTAND THAT THAT RELATES TO MONOPOLIZATION AND

25   ATTEMPT TO MONOPOLIZATION, BUT I WANT TO AVOID THE JURY
```

2055

```
 1     THINKING THAT BOTH UPDATES ARE STILL IN THE CASE.

 2         MY SUGGESTION IS, IF YOU FIND APPLE'S -- IF YOU FIND --

 3             THE COURT:  GIVE ME A LINE.

 4             MR. ISAACSON:  THE FIRST LINE.

 5     "IF YOU FIND PLAINTIFFS PROVED THAT APPLE VIOLATED

 6     SECTION 2 OF THE SHERMAN ACT", INSTEAD OF "EITHER OF THEIR

 7     CLAIMS UNDER".

 8             THE COURT:  ANY OBJECTION TO THAT?

 9             MS. SWEENEY:  I DON'T UNDERSTAND MR. ISAACSON'S

10     OBJECTION SINCE IT'S -- THE CONFUSION HAS BEEN ELIMINATED WITH

11     YOUR HONOR'S REVISIONS.  I PREFER THE WAY IT'S STATED HERE.

12     WE DO HAVE TWO CLAIMS.  AND WE ARE ENTITLED TO ASK FOR DAMAGES

13     SEPARATELY IF WE WIN ON ONE AND LOSE ON THE OTHER.

14             THE COURT:  SO I CAN -- VIOLATED EITHER....  I COULD

15     SAY -- FIRST OF ALL, I'LL CAPITALIZE C, CLAIMS, BECAUSE THIS

16     WHOLE -- ALL OF THESE INSTRUCTIONS REFER TO THEM WITH A

17     CAPITAL C.

18         AND JUST SAY "PROVE THAT APPLE VIOLATED EITHER CLAIM UNDER

19     THE SHERMAN ACT".

20         HOW ABOUT THAT?

21             MR. ISAACSON:  THAT WOULD BE FINE, YOUR HONOR.

22             MS. SWEENEY:  THAT'S FINE WITH PLAINTIFFS.

23             THE COURT:  OKAY.

24         ANYTHING ELSE ON THIS PAGE?

25             MR. ISAACSON:  NOT FROM APPLE, YOUR HONOR.
```

2056

1          MS. SWEENEY:  NOR FROM PLAINTIFFS, YOUR HONOR.

2          THE COURT:  ALL RIGHT.  SPECULATION?

3          MS. SWEENEY:  NO OBJECTION, YOUR HONOR.

4          MR. ISAACSON:  NO OBJECTION, YOUR HONOR.

5          THE COURT:  OKAY.  THEN, CAUSATION AND

6     DISAGGREGATION.

7          MS. SWEENEY:  IN THE MIDDLE OF THE SECOND PARAGRAPH,

8     IT SAYS, "PLAINTIFFS BEAR THE BURDEN OF PROVING DAMAGES WITH

9     REASONABLE CERTAINTY".  AND I BELIEVE THAT THE MODEL

10    INSTRUCTION SAYS "REASONABLE PROBABILITY".

11         THE COURT:  LET ME TAKE A LOOK AT THAT.

12         MS. SWEENEY:  I WAS HUNTING THAT UP JUST A MOMENT

13    AGO.

14       THAT'S AT F-15.

15         THE COURT:  I'M LOOKING AT F -- I'M LOOKING AT F-18,

16    WHICH SAYS "REASONABLE CERTAINTY".

17       F-15 IS SPECULATION.

18         MR. ISAACSON:  AND IT'S ALSO TALKING ABOUT INJURY.

19    WELL, MAYBE NOT -- TALKING ABOUT SPECULATION.

20         MS. SWEENEY:  IT'S FINE WITH PLAINTIFFS, YOUR HONOR.

21         THE COURT:  OKAY.  ANYTHING ELSE ON THIS ONE?

22         MS. SWEENEY:  NO, YOUR HONOR.

23         MR. ISAACSON:  NOTHING.  NO OBJECTION, YOUR HONOR.

24         THE COURT:  OKAY.

25         MS. DUNN:  YOUR HONOR?

1          **THE COURT:**  YES, MA'AM.

2          **MS. DUNN:**  I AM SORRY TO DO THIS, AND ASK THE COURT

3     TO GO BACKWARDS JUST A LITTLE BIT BEFORE WE LEAVE JURY

4     INSTRUCTIONS.

5          **THE COURT:**  THAT'S FINE.

6          **MS. DUNN:**  THANK YOU.

7     SO -- AND I SHOULD HAVE PICKED THIS UP EARLIER, IN THE

8     LANGUAGE IN THE THIRD ELEMENT THAT ALSO IS REFLECTED IN YOUR

9     HONOR'S PROPOSED VERDICT FORM ABOUT COMPLIMENTARY FIRMWARE

10    UPDATES THAT WERE INCLUDED IN CERTAIN NEW IPOD MODELS THAT

11    WERE SOLD WITH OR AFTER THE RELEASE OF ITUNES 7.0, IPODS THAT

12    WERE SOLD AFTER THE RELEASE OF 7.0, EVEN WITH THOSE UPDATES,

13    WOULD ALSO, AT A CERTAIN POINT, CONTAIN 7.4.

14    SO WE WOULD PROPOSE JUST REVERTING TO MR. COUGHLIN'S

15    ORIGINAL SUGGESTION WHICH IS "SOFTWARE AND FIRMWARE UPDATES IN

16    ITUNE 7.0" TO AVOID ANY CONFUSION FOR THE JURY.

17         **MR. ISAACSON:**  AND WHEN I DISCUSS THE VERDICT FORM, I

18    AM GOING TO SUGGEST THAT THE -- THE TERM "COMPLEMENTARY", I

19    ONLY FOCUS NOW IT'S IN THE FIRST SENTENCE OF THE VERDICT

20    FORM --

21         **THE COURT:**  SO LET'S TURN TO THE VERDICT FORM FIRST,

22    AND THEN I CAN GO BACK TO THE INSTRUCTION.

23    SO WHAT IS YOUR PROPOSAL ON THE FIRST INTERROGATORY FOR

24    THE VERDICT FORM?

25    SO LET ME GET BOTH SIDES' PERSPECTIVES.  MR. ISAACSON OR

```
 1    MS. DUNN.

 2              MR. ISAACSON:  ON NUMBER ONE?

 3              THE COURT:  CORRECT.

 4              MR. ISAACSON:  THE POINT MS. DUNN WAS JUST RAISING

 5    WAS APPLICABLE HERE.

 6        SO, IT WOULD BE BETTER EXPRESSED AS, "WERE THE SOFTWARE

 7    AND FIRMWARE UPDATES IN ITUNES 7.0" --

 8              THE COURT:  HOLD ON.  LET ME WRITE THAT DOWN SO I

 9    KNOW YOUR PERSPECTIVE.

10              MR. ISAACSON:  -- "GENUINE PRODUCT IMPROVEMENTS".

11        IT WOULD ALSO BE ACCEPTABLE TO SAY, "WAS ITUNES 7.0 A

12    GENUINE PRODUCT IMPROVEMENT?"

13              MR. COUGHLIN:  WELL, THE POINT OF THIS IS --

14              THE COURT:  HOLD ON.

15        ALL RIGHT.  MR. COUGHLIN, A RESPONSE TO THEIR REQUESTED

16    REVISION.

17              MR. COUGHLIN:  WELL, YOUR HONOR, WE ARE TALKING ABOUT

18    IPOD MODELS THAT CAME OUT LATER.  THEY ARE SQUARELY IN THE

19    CLASS.  THERE WERE NEW MODELS ISSUED ALL THE TIME.  THAT IS

20    WHAT THIS IS REFERRING TO.  NOW THEY ARE TRYING TO --

21              THE COURT:  OKAY.  I DON'T THINK THAT THERE IS ANY

22    DISPUTE ABOUT THE IPOD MODELS THAT ARE IN THE CLASS.

23              MR. ISAACSON:  CORRECT.

24              THE COURT:  RIGHT?  SO, IF I HAVE TO INSTRUCT THE

25    JURY THAT THERE IS NO DISPUTE ON THAT ISSUE, I CAN, BUT
```

2059

```
 1   THAT'S -- THAT'S NOT IN DISPUTE HERE.

 2            MR. COUGHLIN:  CORRECT.

 3            THE COURT:  OKAY.  SO, NOW RESPOND.

 4            MR. COUGHLIN:  OKAY.  SO HOW DID YOU WANT TO MODIFY

 5   IT?

 6            THE COURT:  THEY ARE SUGGESTING THAT IT READ:  "WERE

 7   THE SOFTWARE AND FIRMWARE UPDATES OF ITUNES 7.0 GENUINE

 8   PRODUCT IMPROVEMENTS?"  WHICH THEY SAID YOU HAD ORIGINALLY

 9   PROPOSED.

10            MR. COUGHLIN:  WELL, I THINK IT SHOULD READ, TO BE

11   CLEAR, "WERE THE ITUNE 7.0" -- THE WAY IT IS WRITTEN -- I

12   THINK THE WAY IT IS WRITTEN ORIGINALLY IS THE WAY WE WOULD DO

13   IT.

14            THE COURT:  WELL, I ONLY CHANGED THIS THIS MORNING

15   BASED UPON OUR DISCUSSION FROM THIS MORNING.

16            MR. COUGHLIN:  I AGREE WITH IT.

17            MR. ISAACSON:  RIGHT.  BUT THE CURRENT LANGUAGE --

18            THE COURT:  THAT YOU PREVIOUSLY AGREED TO.

19            MR. ISAACSON:  YES, BUT WE ARE THINKING CAREFULLY

20   ABOUT THIS, AND IT'S --

21            THE COURT:  I JUST WANT TO MAKE SURE THE RECORD IS

22   CLEAR, MR. ISAACSON.

23            MR. ISAACSON:  RIGHT.

24      BECAUSE WE WANT THE JURY TO HAVE THE CORRECT QUESTION.

25   THAT THERE ARE GOING TO BE NEW IPOD MODELS THAT ARE GOING TO
```

2060

```
1   HAVE 7.4.  AND WE DON'T WANT TO PUT A QUESTION IN FRONT OF

2   THEM THAT SUGGESTS THAT 7.4 IS BEFORE THEM.  AND SO -- AND

3   PUTTING IT MORE SIMPLY AND SHORTER --

4           THE COURT:  HOW ABOUT "THE STIPULATED MODELS OF

5   IPODS"?

6           MR. ISAACSON:  I GUESS I DON'T KNOW WHY SHORTER AND

7   SWEETER ISN'T BETTER.

8           THE COURT:  IT COULD BE, BUT I HAVE AN OBJECTION, SO

9   I'M TRYING TO WORK THROUGH THE OBJECTION.

10          MR. ISAACSON:  RIGHT.  MS. DUNN IS HELPING ME DO

11  THAT.

12      "WAS ITUNES 7.0, WHICH WAS CONTAINED IN STIPULATED MODELS

13  OF IPODS, A GENUINE PRODUCT IMPROVEMENT?"

14          MR. COUGHLIN:  YOUR HONOR, I THINK WE SHOULD FIRST

15  SAY, "WERE ITUNES 7.0, THE FIRMWARE AND SOFTWARE, GENUINE

16  PRODUCT IMPROVEMENTS?"

17          MR. ISAACSON:  HOW ABOUT THIS?  "WERE THE FIRMWARE

18  AND SOFTWARE UPDATES IN ITUNES 7.0, WHICH WERE CONTAINED IN

19  STIPULATED MODELS OF IPODS, GENUINE -- A GENUINE PRODUCT

20  IMPROVEMENT?"

21          THE COURT:  HOW ABOUT THAT, MR. COUGHLIN?

22          MR. COUGHLIN:  I THINK I'M FINE WITH THAT.  THIS IS

23  JUST A NITPICKING POINT BECAUSE I SPENT TOO MUCH TIME WITH

24  ENGINEERS IN THE LAST MONTH AND A HALF, BUT THEY ALWAYS WANT

25  ME TO SAY "FIRMWARE" BEFORE "SOFTWARE".  I'M JUST SAYING.
```

1        THE COURT:  OKAY.  WELL, ENGINEERS CAN BE LIKE THAT.

2              (PAUSE IN THE PROCEEDINGS.)

3        MR. COUGHLIN:  YOUR HONOR, JUST FOR THE RECORD, AND

4   TO PRESERVE OUR OBJECTION, WE ARE OBJECTING TO THIS BEING ON

5   THE VERDICT FORM, BUT THAT'S A SEPARATE ISSUE.

6        THE COURT:  I UNDERSTAND.

7        MR. COUGHLIN:  OKAY.

8        THE COURT:  AND SO EVERYBODY'S CLEAR, THE WAY I HAVE

9   STRUCTURED THIS IS IF THEY SAY "YES", THEN THEY WILL SIGN THE

10  FORM AND I WILL HOLD AS A MATTER OF LAW, BASED UPON THE JURY'S

11  FINDING, THAT THE PLAINTIFFS HAVE FAILED TO PROVE THEIR CLAIMS

12  UNDER THE FIRST CLAIM AND THE SECOND CLAIM.  BECAUSE I DON'T

13  HAVE THEM ACTUALLY MAKE THAT FINDING.  THIS IS AN

14  INTERROGATORY.

15     EVERYBODY UNDERSTANDS THAT?

16        MR. COUGHLIN:  UNDERSTAND THAT.

17        MR. ISAACSON:  YES.

18        THE COURT:  OKAY.  SO, EVERYBODY'S NOW MORE

19  COMFORTABLE WITH THIS?

20        MR. ISAACSON:  THANK YOU, YOUR HONOR.  YES.  SO, THE

21  THIRD ELEMENT OF --

22        THE COURT:  THE THIRD ELEMENT WILL THEN READ -- IT

23  WILL TRACK --

24        MR. ISAACSON:  YES.

25        THE COURT:  SO IT WILL SAY, "THEREFORE, AS A

2062

```
1   THRESHOLD QUESTION, YOU WILL BE ASKED TO DETERMINE WHETHER THE

2   FIRMWARE AND SOFTWARE UPDATES IN THE ITUNES 7.0 -- IN ITUNES

3   7.0, WHICH WERE CONTAINED IN STIPULATED MODELS OF IPODS, A

4   GENUINE PRODUCT IMPROVEMENT?"

5           MR. ISAACSON:  "WAS A GENUINE PRODUCT IMPROVEMENT",

6   YES.

7           THE COURT:  OKAY.  SO I WILL FIX THAT.

8           MR. COUGHLIN:  I THINK IT SHOULD SAY "WERE GENUINE

9   PRODUCT IMPROVEMENTS".

10     WE HAVE TWO THAT WERE IN THERE, KVC AND DVC.

11          MR. ISAACSON:  7.0 IS ONE THING.  AND YOU ARE ARGUING

12  ONE THING AT THIS POINT, 7.0.

13          MR. COUGHLIN:  WELL, WE ARE ARGUING ABOUT THE

14  FIRMWARE AND SOFTWARE UPDATES IN 7.0.

15          THE COURT:  I THINK IT DEPENDS ON HOW ONE SLICES IT.

16          MR. ISAACSON:  I THINK IT'S GRAMMATICAL TO SAY "WAS",

17  BUT I'M NOT GOING TO --

18          THE COURT:  ACTUALLY IT IS GRAMMATICAL TO SAY "WERE"

19  BECAUSE THEY WERE PLURAL.  AND EVEN YOUR CLIENT IS SHAKING HIS

20  HEAD YES.

21          MR. ISAACSON:  OKAY.  THEN WE WILL GO WITH YOU AND MY

22  CLIENT.

23          THE COURT:  THAT WORKS FOR US.

24     OKAY.  I LIKE TO BE GRAMMATICALLY CORRECT.  I DON'T SPLIT

25  INFINITIVES MUCH, TO MY CHAGRIN.
```

2063

1        **MR. ISAACSON:**  THAT WAS THE FIRST THING I WAS TOLD ON

2    THE FIRST DAY OF MY CLERKSHIP.

3        **THE COURT:**  IT JUST DRIVES ME NUTS.  IT'S LIKE

4    FINGERNAILS ON A CHALKBOARD.

5        LET'S GET BACK TO THE VERDICT FORM.

6        AS I TOLD YOU BEFORE, I LIKE MY VERDICT FORMS TO BE NOT

7    BULKY.  AND I FOUND YOUR PROPOSALS TO BE MORE BULKY, SO THIS

8    IS VERY TRIMMED DOWN, OR AT LEAST IT IS LESS WORDY.

9        IT MAKES THE SAME POINTS AND IT TRACKS THE INSTRUCTIONS,

10   WHICH IS WHAT IS MOST IMPORTANT TO ME.  SO -- AS I THINK IT

11   PROVIDES CLARITY FOR THE JURY.

12       SO ANY OTHER THOUGHTS ON THE VERDICT FORM?

13       **MS. SWEENEY:**  NO, YOUR HONOR.

14       **THE COURT:**  DID YOU FIND A TYPO?

15       I DO HAVE A QUESTION SPEAKING OF TYPOS.  APPLE INC., IS

16   THERE A COMMA BETWEEN APPLE INC. OR NOT?

17       **MS. DUNN:**  WE ARE TOLD NO.

18       **THE COURT:**  OKAY.  I JUST WANT TO MAKE SURE.

19       **MS. DUNN:**  THANK YOU FOR ASKING.

20       **THE COURT:**  OKAY.

21       **MR. ISAACSON:**  THIS IS INCORRECT, AS A MATTER OF LAW.

22       **THE COURT:**  WHICH?

23       **MR. ISAACSON:**  THAT NUMBER 2.  AFTER YOU ANSWER -- IF

24   YOU ANSWER "NO", YOU SKIP TO QUESTION 8.  IF THERE'S NO

25   RELEVANT MARKET, YOU WOULD NOT HAVE AN ATTEMPTED

1    MONOPOLIZATION CLAIM.

2         **THE COURT:**  WELL, THEY HAVE TO DO IT FOR BOTH CAUSES

3    OF ACTION.  I'M HAVING THEM -- I AM HOPING I DON'T HAVE AN

4    INCONSISTENT JURY VERDICT.  IF I GET AN INCONSISTENT JURY

5    VERDICT, I WILL SEND IT BACK.

6         **MR. ISAACSON:**  RIGHT.

7      WHAT I'M SAYING HERE IS, THERE'S ONE QUESTION ON RELEVANT

8    MARKET.  IF YOU ANSWER "NO", IT SAYS, THEN YOU GO TO THE

9    ATTEMPTED MONOPOLIZATION CLAIM.  AND IF THERE'S NO RELEVANT

10   MARKET, THERE IS NO ATTEMPTED MONOPOLIZATION.

11        **THE COURT:**  I KNOW.  AND THAT MEANS WHEN THEY ANSWER

12   THE QUESTIONS WITH RESPECT TO THE SECOND CLAIM, THEY SHOULD

13   ANSWER THAT CONSISTENTLY.

14        **MR. ISAACSON:**  I DON'T -- I DON'T THINK THIS ACTUALLY

15   TELLS THEM TO DO THAT.  I THINK YOU DON'T GO TO ATTEMPTED

16   MONOPOLIZATION IF THERE'S NO RELEVANT MARKET.

17     I THINK IF THERE'S NO RELEVANT MARKET, THE CASE IS OVER.

18        **THE COURT:**  RESPONSE?

19        **MS. SWEENEY:**  IT'S TRUE THAT FOR OUR ATTEMPT CLAIM,

20   WE HAVE TO PROVE RELEVANT MARKET, BUT I -- I'M STILL

21   STRUGGLING TO UNDERSTAND -- I MEAN --

22        **THE COURT:**  I UNDERSTAND WHAT YOU'RE SAYING, BUT

23   USUALLY WE SEND BOTH CLAIMS TO THE JURY.  AND THEY HAVE TO BE,

24   IN MY VIEW, CONSISTENT.  YOU CAN'T HAVE THE SECOND WITHOUT THE

25   FIRST.  I UNDERSTAND THAT AS A MATTER OF LAW, BUT WE USUALLY

2065

```
1    STILL SEND BOTH CLAIMS AND LET THEM DECIDE BOTH CLAIMS.

2            MR. ISAACSON:  BUT -- SO --

3            THE COURT:  I HEAR WHAT YOU ARE SAYING.

4            MR. ISAACSON:  YOU ARE LEAVING OUT A RELEVANT ELEMENT

5    UNDER --

6            THE COURT:  NO, BECAUSE IT IS IN THE DESCRIPTION.  IT

7    IS IN THE DESCRIPTION, WHEN THEY GO THROUGH THE ELEMENTS,

8    THAT'S IN THEIR DESCRIPTION.

9        I SEE WHAT YOU ARE SAYING.

10           MR. ISAACSON:  FOR EXAMPLE, IF THEY WERE TO SAY "NO"

11   AND THEN FILL OUT AN ATTEMPTED MONOPOLIZATION CLAIM.

12           THE COURT:  AND IF THEY GOT TO "YES", I WILL SEND

13   THEM BACK AND SAY THESE CAN'T --

14           MR. ISAACSON:  IT IS THE "NO" ANSWER BECAUSE THE "NO"

15   ANSWER ENDS THE CASE.  AND SO THEY ACTUALLY SHOULDN'T BE

16   WORKING ON ATTEMPTED MONOPOLIZATION THEN.

17           THE COURT:  I SEE WHAT YOU ARE SAYING.

18           MR. COUGHLIN:  YOU COULD PUT IT IN BOTH PLACES SO THE

19   WHOLE THING IS IN BOTH PLACES.

20       THEN THEY ARE DECIDING EACH CLAIM AS YOU -- AS YOUR HONOR

21   WAS ATTEMPTING TO ACCOMPLISH.  THEN, IF THEY FIND "NO" AS TO

22   THAT --

23           THE COURT:  IS THERE ANY OBJECTION -- THEIR APPROACH

24   IS A VALID APPROACH.  AND I THOUGHT ABOUT IT MYSELF, BUT THIS

25   IS THE FORM I CAME UP WITH.
```

1        IS THERE AN OBJECTION TO THEIR APPROACH?  AS A MATTER OF

2    LAW THEY ARE RIGHT.

3            **MR. COUGHLIN:**  YES.  AS A MATTER OF LAW THEY ARE

4    RIGHT.  AND I THINK THE BETTER WAY TO DO IT IS -- YOU MAY GET

5    AN INCONSISTENT VERDICT THAT WAY IF YOU PUT IT BOTH PLACES,

6    BUT --

7            **THE COURT:**  AND THAT'S NEVER A GOOD THING,

8    MR. COUGHLIN.

9            **MR. COUGHLIN:**  THAT'S TRUE, IT'S NEVER A GOOD THING.

10   BUT THEN THEY MIGHT GO BACK AND SAY THEY WERE WRONG ON THE

11   FIRST ONE.

12           **THE COURT:**  ALL RIGHT.  OTHER COMMENTS?

13           **MR. ISAACSON:**  SO, A SIMILAR ISSUE IS THAT -- BUT

14   LESS DANGEROUS, IS THAT QUESTION 4, IS THE ANTICOMPETITIVE

15   CONDUCT QUESTION.  AND THEN IF THEY ANSWER "NO", THEY SKIP TO

16   QUESTION 8, AND THEY ARE ASKED THE SAME QUESTION.

17           **THE COURT:**  I UNDERSTAND.

18           **MR. ISAACSON:**  NOW, THAT'S LESS DANGEROUS, BUT IF

19   THEY GIVE YOU A "YES" AND A "NO" --

20           **THE COURT:**  THEN IT GOES BACK.

21           **MR. ISAACSON:**  RIGHT.

22           **THE COURT:**  ANY OTHER COMMENTS?

23           **MR. ISAACSON:**  SO, WE WOULD RESERVE OUR OBJECTION

24   TO -- WE OFFERED A SPECIAL VERDICT ON LEGITIMATE BUSINESS

25   PURPOSE.  IT'S NOT A WORRYING ISSUE, BUT WE WANT TO RESERVE

1    OUR OBJECTION ON THAT.

2         AND WE DO THINK THAT UNDER THE LAW, ON QUESTION 4, THAT

3    THE ANTICOMPETITIVE CONDUCT HAS TO BE NECESSARY TO WILLFULLY

4    MAINTAIN MONOPOLY POWER AND BE REASONABLY CAPABLE OF

5    CONTRIBUTING SIGNIFICANTLY TO THE MAINTENANCE OF THAT POWER,

6    AND THAT THERE IS AN EVIDENTIARY BASIS FOR THIS BECAUSE OF THE

7    INSIGNIFICANCE OF HARMONY, REAL, AND THINGS LIKE NAVIO.

8         SO WE DO THINK THERE IS-- I UNDERSTAND THE COURT'S

9    QUESTION IS SHORTER, BUT IT IS LEAVING OUT ELEMENTS THAT ARE

10   SUPPORTED BY THE INSTRUCTIONS IN OTHER CASES.  AND I

11   BELIEVE --

12        **THE COURT:**  WELL, IT TRACKS THE -- AS I SAID, IT

13   TRACKS THE ELEMENTS AS SET FORTH IN THE INSTRUCTIONS.  AND

14   OBVIOUSLY THE INSTRUCTIONS ARE SIGNIFICANTLY LONGER THAN THE

15   LIST OF ELEMENTS THAT I HAVE GIVEN TO THE JURY, BUT THAT

16   DOESN'T MEAN THAT THEY WEREN'T INSTRUCTED ON THE LAW.

17        **MR. ISAACSON:**  I UNDERSTAND THAT, YOUR HONOR.  BUT BY

18   SAYING "ANTICOMPETITIVE CONDUCT ALONE IS ENOUGH" IT IS

19   OMITTING THAT THAT CONDUCT HAS TO WILLFULLY MAINTAIN MONOPOLY

20   POWER AND BE REASONABLY CAPABLE OF CONTRIBUTING SIGNIFICANTLY

21   TO THAT POWER.

22        SO IT WOULD PERMIT THEM TO MAKE A FINDING THAT WE HAD

23   ENGAGED IN ANTICOMPETITIVE CONDUCT NO MATTER HOW SMALL AND HOW

24   IRRELEVANT TO THE MAINTENANCE OF MONOPOLY POWER OR THE

25   CONTRIBUTION TO MONOPOLY POWER.

1    **MR. COUGHLIN:** YOUR HONOR, I THINK THAT -- I THINK

2    THE INSTRUCTION COVERS THAT, MR. ISAACSON'S POINT, AND SO THEY

3    WILL BE GOVERNED BY THE INSTRUCTIONS. AND I THINK THAT YOU

4    DON'T NEED TO REPEAT THE WHOLE INSTRUCTION IN THE VERDICT

5    FORM.

6    **MR. ISAACSON:** I UNDERSTAND THE PRINCIPLE THAT YOU

7    DON'T HAVE TO REPEAT AN INSTRUCTION IN THE VERDICT FORM, BUT

8    THIS INSTRUCTION -- OUR INSTRUCTION WAS DRAWN FROM THE *NOVELL*

9    CASE. AND IT'S NOT A MATTER OF SAYING, WELL, THEY CAN GO TO

10   THE INSTRUCTIONS. THIS ACTUALLY SAYS THAT IF THEY ENGAGED IN

11   ANTICOMPETITIVE CONDUCT WITHOUT ANY LIMITATIONS, SO NO MATTER

12   HOW SMALL, THAT THEY CAN ANSWER THIS QUESTION "YES".

13   **THE COURT:** I CAN ADD "PER THE COURT'S INSTRUCTIONS".

14   **MR. COUGHLIN:** YOU COULD ACTUALLY REFER TO THE

15   COURT'S INSTRUCTION RIGHT THERE, YOUR HONOR, THE NUMBER,

16   BECAUSE THEY WILL HAVE THE INSTRUCTIONS.

17   **THE COURT:** I WOULD HAVE TO DO IT AS TO ALL OF THEM,

18   AND I'M NOT INCLINED TO DO THAT.

19   **MS. SWEENEY:** YOUR HONOR, THIS IS ALREADY A FAIRLY

20   LONG VERDICT FORM. SO PLAINTIFFS WOULD OPPOSE THE ADDITION OF

21   THE LANGUAGE PROPOSED BY MR. ISAACSON.

22   **MR. ISAACSON:** OUR --

23   **THE COURT:** I'M A LITTLE BIT CONCERNED, MR. ISAACSON,

24   BECAUSE YOU HAD NO OBJECTION TO THE ELEMENTS AS SET FORTH IN

25   THE FIRST CLAIM IN THE INSTRUCTIONS, AND THAT'S WHERE THIS IS

```
1   TAKEN FROM.
2            MR. ISAACSON:  I DON'T --
3            THE COURT:  THAT FIRST CLAIM, AS I RECALL IT, IS
4   TAKEN STRAIGHT FROM THE MODEL INSTRUCTIONS.  AND IT WAS
5   SUBMITTED TO ME AS A JOINT INSTRUCTION BY BOTH PARTIES,
6   STIPULATED.  WE NEVER HAD AN ARGUMENT ABOUT IT.
7       ABA MODEL INSTRUCTION C-2.  JOINT INSTRUCTIONS SUBMITTED
8   OCTOBER 22ND, 2014.  THAT'S WHERE IT IS TAKEN FROM.
9                  (PAUSE IN THE PROCEEDINGS.)
10           MR. ISAACSON:  BECAUSE WE HAVE IT IN THE THIRD
11  ELEMENT.  I MEAN THERE'S A SUMMARY AT THE TOP, THEN IT GOES
12  THROUGH THE ELEMENTS, SUCH AS DANGEROUS PROBABILITY OF
13  SUCCESS.
14           THE COURT:  I AM TALKING ABOUT IT WAS ORIGINALLY
15  NUMBER 27.
16           MR. ISAACSON:  I AM SORRY.  I AM BEING TOLD I AM
17  LOOKING AT THE WRONG PAGE.
18           THE COURT:  JOINT PROPOSED JURY INSTRUCTION DOCKET
19  NUMBER 847, PAGE 49.  MODEL CODE INSTRUCTION.
20           MS. DUNN:  I APOLOGIZE, YOUR HONOR, WHAT PAGE?
21           THE COURT:  49.
22           MS. DUNN:  THANK YOU.
23           THE COURT:  AND IN THE STATUS BACK IN OCTOBER, THIS
24  WAS ONE OF THE FEW WHERE THE PARTIES AGREED.  THERE WAS NO
25  DISPUTE.
```

2070

```
1        MR. ISAACSON:  THAT IS FOLLOWED BY OUR PROPOSED

2   INSTRUCTION NUMBER 30.

3        THE COURT:  THAT'S NOT WHAT I AM TALKING ABOUT.

4    I HAVE PAGES AND PAGES OF INSTRUCTIONS THAT GIVE

5   COMPREHENSIVE INSTRUCTIONS WITH RESPECT TO EACH AND EVERY

6   ELEMENT.  THE ELEMENTS, AS IDENTIFIED, COME FROM THE MODEL

7   INSTRUCTIONS.  THE MODELS -- THE ELEMENTS, AS IDENTIFIED, WERE

8   AGREED UPON.

9    SO ALL THIS IS IS A RESTATEMENT OF AN ELEMENT THAT HAS

10  BEEN MORE FULLY AND COMPLETELY DESCRIBED IN THE INSTRUCTIONS.

11       MR. ISAACSON:  ALL RIGHT.  I WILL TAKE IT THAT MY

12  OBJECTION IS OVERRULED.

13       THE COURT:  WELL, YOU CAN SIT THERE AND CONTINUE TO

14  ARGUE, BUT THAT WOULD BE A --

15       MR. ISAACSON:  I WOULD LIKE YOU TO REFER THEM TO --

16  AS DEFINED IN THE INSTRUCTIONS.

17       THE COURT:  WELL THEN I WILL DO THAT AT THE VERY

18  BEGINNING.  "WE, THE JURY, UNANIMOUSLY FIND AS FOLLOWS

19  PURSUANT TO THE COURT'S INSTRUCTIONS:"

20    OR "NOT PURSUANT", "IN ACCORDANCE WITH".  THAT SOUNDS LIKE

21  I'M INSTRUCTING THEM TO FIND AS THEY'RE DOING.

22    OKAY.  OTHER ISSUES?

23       MS. SWEENEY:  NO, YOUR HONOR.  NOT ON THE VERDICT

24  FORM.

25       THE COURT:  MR. ISAACSON?
```

```
1              (PAUSE IN THE PROCEEDINGS.)

2         MR. ISAACSON:  I WOULD TAKE -- MY OBJECTION HAS BEEN

3    OVERRULED WOULD APPLY TO QUESTION 8 FOR THE RECORD.

4         THE COURT:  WHICH ONE?

5         MR. ISAACSON:  MY OBJECTION THAT'S BEEN OVERRULED

6    WITH RESPECT TO QUESTION 4 WOULD --

7         THE COURT:  YES.

8         MR. ISAACSON:  -- WOULD APPLY TO QUESTION 8.

9         THE COURT:  YES.  BUT I DO THINK, I DO THINK I'M

10   GOING TO CHANGE NUMBER 2, MR. COUGHLIN.  BECAUSE I DON'T HAVE

11   THE SAME SEPARATE QUESTION ON THE RELEVANT ANTITRUST MARKET,

12   I'M NOT GOING TO SEND THEM TO THE SECOND CLAIM.

13        MR. COUGHLIN:  I UNDERSTAND.

14        THE COURT:  SO THAT WILL CHANGE, MR. ISAACSON.

15        MR. ISAACSON:  UNDERSTOOD, YOUR HONOR.

16      WE HAVE GOT NOTHING ELSE, YOUR HONOR.

17        THE COURT:  OKAY.  WHAT I -- I GUESS ONE QUESTION

18   GIVEN THE RECONFIGURATION OF THE INTERROGATORY AND THE JURY

19   INSTRUCTION, DO I NEED -- OR I WOULD SUGGEST THAT I INCLUDE IN

20   HERE ANOTHER INSTRUCTION THAT SAYS THAT "THE PARTIES STIPULATE

21   THAT THE IPOD MODELS AT ISSUE ARE", AND JUST IDENTIFY THEM.

22        MR. COUGHLIN:  THAT'S FINE, YOUR HONOR.

23        MR. ISAACSON:  YES.  I THINK THAT WAS -- WE HAVE

24   GIVEN -- THAT WAS IN SOME HIGHLIGHTED LANGUAGE FROM AN

25   INSTRUCTION.  WE CAN JUST PULL THAT OUT.
```

```
 1           THE COURT:  I HAVE IT.  ACTUALLY, I THINK IT WAS IN
 2     THE DAMAGES INSTRUCTION THAT WAS PROVIDED.
 3           MR. ISAACSON:  YES.
 4           THE COURT:  SO THESE ARE THE ONES THAT I HAVE.  LET
 5     ME JUST VERIFY.
 6        IPOD CLASSIC, SIXTH GENERATION AND SEVENTH GENERATION,
 7     IPOD NANO, SECOND, THIRD AND FOURTH GENERATIONS, IPOD TOUCH
 8     FIRST AND SECOND GENERATION.
 9           MR. COUGHLIN:  THAT'S CORRECT.
10           MR. ISAACSON:  MS. GOODMAN SAYS YOU ARE CORRECT.
11           THE COURT:  EXCELLENT.  I LIKE IT WHEN I'M CORRECT.
12        OKAY.  SO WHAT I WILL DO IS MAKE THESE CHANGES.  I WILL
13     SEND THEM TO YOU.  AND I WILL ASK THAT YOU FIND YOURSELVES A
14     QUIET ROOM, SEE IF YOU -- READ THROUGH THEM.  IF YOU FIND ANY
15     NITS, SO ALL OF YOUR OBJECTIONS ARE OTHERWISE PRESERVED.  IF
16     YOU FIND ANY KIND OF MISCELLANEOUS THINGS, SEND US A NOTE BY
17     THE END OF SATURDAY.  BECAUSE WHAT WILL HAPPEN ON SUNDAY, IS
18     COPIES OF THESE WILL BE MADE, AND HOLE-PUNCHED, AND PUT IN
19     BINDERS FOR THE JURORS SO THEY ARE READY TO GO ON MONDAY
20     MORNING.
21        DID YOU HAVE --
22           MR. COUGHLIN:  I WAS JUST THINKING -- IN MY MIND, I
23     WAS THINKING WHAT WAS GOING TO HAPPEN MONDAY MORNING.  I GUESS
24     WE ARE JUST GOING TO ARGUE THE MOTIONS THAT ARE GOING TO BE
25     BRIEFED ON SATURDAY.
```

```
 1              THE COURT:  RIGHT.

 2              MR. COUGHLIN:  FINALIZED BY US.

 3              THE COURT:  CORRECT.

 4              MR. ISAACSON:  I'M SORRY, WHAT TIME ARE WE STARTING

 5      ON MONDAY?

 6              THE COURT:  EIGHT A.M.

 7              MR. ISAACSON:  ALL RIGHT.

 8              MS. SWEENEY:  YOUR HONOR, OUR BRIEF IS DUE TOMORROW

 9      AT NOON, AND WE WERE WONDERING IF YOU WOULD LIKE A COURTESY

10      COPE DELIVERED.  AND IF SO, WHAT TIME?

11              THE COURT:  NO.  DO NOT DELIVER, JUST SEND ME A

12      COURTESY COPY BY EMAIL.

13              MS. SWEENEY:  OKAY.

14              THE COURT:  OKAY.  SO YOU WANT TO TALK ABOUT

15      EXHIBITS?

16              MR. COUGHLIN:  YES, YOUR HONOR.

17              THE COURT:  OKAY.

18          COUNSEL?

19              MS. DEARBORN:  THE FIRST EXHIBIT WITH MR. DONNELLY

20      THAT WE USED WAS TRIAL EXHIBIT 2344.  IT WAS STIPULATED.  WE

21      WOULD MOVE TO ADMIT IT.

22              MR. MEDICI:  NO OBJECTION.

23              THE COURT:  IT IS ADMITTED.

24          (DEFENDANT'S EXHIBIT 2344 RECEIVED IN EVIDENCE)

25              MS. DEARBORN:  2844.
```

2074

```
 1            MR. MEDICI:  NO OBJECTION.

 2            THE COURT:  ADMITTED.

 3         (DEFENDANT'S EXHIBIT 2844 RECEIVED IN EVIDENCE)

 4            MS. DEARBORN:  2493.

 5            MR. MEDICI:  NO OBJECTION.

 6            THE COURT:  ADMITTED.

 7         (DEFENDANT'S EXHIBIT 2493 RECEIVED IN EVIDENCE)

 8            MS. DEARBORN:  2556.

 9            MR. MEDICI:  NO OBJECTION.

10            THE COURT:  ADMITTED.

11       (DEFENDANT'S EXHIBIT 2556 RECEIVED IN EVIDENCE)

12            MS. DEARBORN:  2561.

13            MR. MEDICI:  NO OBJECTION.

14            MS. BERNAY:  23 --

15            THE CLERK:  WAIT.  WAIT.  SHE'S GOT TO RESPOND.

16            MS. DEARBORN:  I APOLOGIZE.

17            THE COURT:  2561 IS ADMITTED.

18         (DEFENDANT'S EXHIBIT 2561 RECEIVED IN EVIDENCE)

19            MS. DEARBORN:  2379.

20            MR. MEDICI:  IS THAT --

21            MS. DEARBORN:  IT'S THE UNIVERSAL CONTRACT.

22            MR. MEDICI:  YOU ARE NOT TALKING ABOUT THE MPD

23    DOCUMENT?

24            MS. DEARBORN:  NO.

25            MR. MEDICI:  NO OBJECTION.
```

```
1          THE COURT:  ADMITTED.
2          (DEFENDANT'S EXHIBIT 2379 RECEIVED IN EVIDENCE)
3          MS. DEARBORN:  THAT'S ALL WE HAVE FOR MR. DONNELLY.
4          MR. MEDICI:  PLAINTIFFS WOULD LIKE TO MOVE IN 2405.
5          MS. DEARBORN:  IT HAS BEEN STIPULATED.  NO OBJECTION.
6          THE COURT:  OKAY.  ADMITTED.
7          (DEFENDANT'S EXHIBIT 2405 RECEIVED IN EVIDENCE)
8          THE COURT:  ANYTHING WITH SCHULTZ?
9          MR. ISAACSON:  YES, YOUR HONOR.
10     2877 AND 2858.
11         MR. COUGHLIN:  NO OBJECTION, YOUR HONOR.
12         THE COURT:  OKAY.  BOTH ARE ADMITTED.
13     (DEFENDANT'S EXHIBITS 2877 AND 2858 RECEIVED IN EVIDENCE)
14         MS. DEARBORN:  A FEW OTHER MINOR HOUSEKEEPING
15  MATTERS?
16         THE COURT:  HOLD ON.  LET ME JUST NOTE THESE.
17     I THINK WE SHOULD PROBABLY GO THROUGH EVERYTHING FROM TOP
18  TO BOTTOM NUMERICALLY SO THAT WE MAKE SURE IT'S ALL IN.  JUST
19  GIVE ME A MINUTE HERE.
20              (PAUSE IN THE PROCEEDINGS.)
21         THE COURT:  OKAY.  WHAT ELSE?
22         MS. DEARBORN:  THERE WERE TWO OTHER PHYSICAL EXHIBITS
23  USED WITH DR. KELLY.  I BELIEVE THE COURT IS IN POSSESSION OF
24  THOSE.
25     IT'S TRIAL EXHIBIT 2712 AND 2743.
```

```
 1              THE CLERK:  WHAT IS 2712K, 2743A -- I HAVE THREE.

 2              MS. DEARBORN:  YOU'VE GOT THREE?

 3              THE COURT:  WHICH IS 2712?  DO YOU HAVE IT THERE?

 4              THE CLERK:  NO.  I HAVE TWO EXHIBITS.  THE IPODS WERE

 5    TAKEN OUT OF THE BAG AND I DON'T KNOW WHICH TAG GOES WITH

 6    WHICH ONE.  BUT I HAVE TWO EXHIBIT TAGS.  MAYBE COUNSEL CAN

 7    FIGURE OUT WHICH IS WHICH AND TELL ME WHAT.

 8                        (PAUSE IN THE PROCEEDINGS.)

 9              THE CLERK:  SO CAN YOU IDENTIFY THEM?

10              MS. DEARBORN:  2712 SHOULD BE THE IPOD 6, SIXTH

11    GENERATION.  AND 2743 IS THE IPOD FOURTH GENERATION, THE

12    PHOTO.

13              MR. COUGHLIN:  WHAT WAS THE SECOND NUMBER?

14              MS. DEARBORN:  2743.

15              MR. COUGHLIN:  AND THAT WAS A WHAT?

16              MS. DEARBORN:  THE IPOD CLASSIC FOURTH GENERATION,

17    THE PHOTO.

18              THE COURT:  OKAY.  THEY ARE BOTH ADMITTED OVER

19    OBJECTION.

20        (DEFENDANT'S EXHIBITS 2712 AND 2743 RECEIVED IN EVIDENCE)

21              MS. DEARBORN:  I DON'T BELIEVE WE ARE SEEKING TO

22    ADMIT THAT ONE.  THANK YOU.

23                        (EXHIBIT HANDED TO COUNSEL.)

24              THE COURT:  OKAY.

25              MS. DEARBORN:  THE SECOND ISSUE IS THE DATA SET.
```

1   THERE WERE SOME QUESTIONS YESTERDAY.  AND WE HAVE A NEW COPY

2   OF THE LARGE BLOWUP AS WELL AS THE THUMB DRIVE FOR THE COURT.

3           **MR. COUGHLIN:**  IT'S FINE.

4           **THE CLERK:**  AND THE NUMBERS?

5           **MS. DEARBORN:**  THAT IS 2784 AND 2784A (SIC).

6       I APOLOGIZE.  APPARENTLY I HAVE MY NUMBERS TRANSPOSED.

7   2874 AND 2874A.

8           **THE COURT:**  BOTH OF THOSE WERE PREVIOUSLY ADMITTED.

9           **MS. DEARBORN:**  RIGHT.

10          **THE COURT:**  OKAY.  OUT OF THE INTEREST OF JUSTICE,

11  THE COURT MAINTAINS ITS DECISION TO INCLUDE 951.

12      THIS IS THE INTERROGATORY RESPONSE.  IT'S NOT AS IF APPLE

13  DIDN'T KNOW.  WE ARE SEEKING TRUTH AND JUSTICE, SO I'M LETTING

14  IT IN.

15          **MR. ISAACSON:**  UNDERSTOOD, YOUR HONOR.

16          **THE COURT:**  DON'T SMILE SO BIG.

17          **MR. ISAACSON:**  IT HAS BEEN A LONG WEEK.

18          **THE COURT:**  IT IS ALREADY IN, FRANCES.

19      OKAY.  ANYTHING ELSE?  OTHERWISE WE ARE GOING TO GO

20  THROUGH THESE TOP TO BOTTOM.  HOPEFULLY SOMEBODY HAS A LIST.

21      OKAY.  HERE WE GO.  THIS IS WHAT I HAVE.

22      FRANCES, YOU SHOULD INTERRUPT ME IF YOU'VE GOT SOMETHING

23  DIFFERENT.

24          **THE CLERK:**  I AM JUST GOING TO WRITE WHAT YOU PUT.

25          **THE COURT:**  OKAY.  I SHOW THAT I HAVE ADMITTED THE

```
1    FOLLOWING:  55, 69 --

2              MR. COUGHLIN:  YOUR HONOR?  I THINK WE STARTED WITH

3    2.

4              THE COURT:  YES, 2.

5              THE CLERK:  I DON'T THINK THAT'S --

6              THE COURT:  IT MAY NOT HAVE ACTUALLY BEEN ADMITTED.

7              THE CLERK:  IT WAS ONLY I.D.'D.  I DON'T HAVE IT

8    ADMITTED.

9              THE COURT:  ANY OBJECTION?

10        2 IS ADMITTED.

11         (PLAINTIFFS' EXHIBIT 2 RECEIVED IN EVIDENCE)

12              MR. COUGHLIN:  THANK YOU.

13              THE COURT:  START AGAIN.

14        2, 55, 69, 83, 92, 102, OR JUST THE WHOLE 100 SERIES.

15    102, 118, 121, 124, 125, 128, 130, 133, 136, 147, 153, 172,

16    176, 181, 193.

17        AND THE 200 SERIES:  218, 222, 267, 269, 271.

18        IN THE 300 SERIES:  312, 316, 319, 327, 333, 369, 371 --

19              MR. COUGHLIN:  YOUR HONOR?

20              THE COURT:  -- AND 383.

21              MR. COUGHLIN:  OKAY.

22              MS. DEARBORN:  WE DID NOT HAVE 369 ON OUR LIST, YOUR

23    HONOR.

24              MR. COUGHLIN:  LET ME JUST LOOK AND SEE WHAT 369 IS.

25              THE COURT:  OKAY.  THIS IS AN EMAIL FROM LAPINSKI TO
```

2079

```
1    THE IPOD ENGINEERING MANAGEMENT RE: WEEKLY STATUS, DATED

2    SEPTEMBER 22ND, 2006, ATTACHING A POWER POINT.

3              MS. DEARBORN:  369.

4                   (PAUSE IN THE PROCEEDINGS.)

5              MR. COUGHLIN:  WE DON'T HAVE IT ON OURS, YOUR HONOR.

6              MS. DEARBORN:  I DON'T BELIEVE THIS WAS USED WITH THE

7    WITNESS.

8              THE COURT:  OKAY.  SO I WILL TAKE THAT OFF MY LIST.

9              MR. COUGHLIN:  OKAY.

10             THE COURT:  ALL RIGHT.

11        400 SERIES.  I ONLY HAVE 461 AND 465.

12             MR. COUGHLIN:  SHOWS THAT A LOT OF TREES WERE KILLED

13   WITH THAT.

14             THE COURT:  NOTHING IN THE 500 SERIES.

15        NOTHING IN THE 600 SERIES.

16        IN THE 700 SERIES:  731, '32, '33, '35, '36, '54, '55 --

17             MR. COUGHLIN:  WE HAVE 737.

18             THE COURT:  HOLD ON.

19        '57, '60 AND '61.

20        SO YOU ARE SHOWING 737?

21             MR. COUGHLIN:  YES.

22             THE COURT:  DO THE DEFENDANTS SHOW 737?

23             MS. DEARBORN:  THAT IS ON OUR LIST, YOUR HONOR.

24             THE COURT:  ALL RIGHT.  THEN IT IS ADMITTED.

25
```

```
 1            (PLAINTIFFS' EXHIBIT 737 RECEIVED IN EVIDENCE)

 2            THE COURT:  IN THE 800 SERIES.  LET ME JUST GET

 3     THROUGH THE WHOLE THING, MR. COUGHLIN.

 4        816, 820, 869, '70 AND '71, 880, 880A, 893, AND '94.

 5            MR. COUGHLIN:  CORRECT.

 6            MS. DEARBORN:  YES.

 7            THE COURT:  IS THAT WHAT YOU HAVE?

 8            MS. DEARBORN:  IT IS WHAT I HAVE AS WELL.

 9            THE COURT:  900 SERIES:  908, 915, '16, '17, '18,

10     '19, '21, '22, '23, '24, '26, '40, '42, '44, '51, AND 927A.

11        IT IS A ONE-PAGER FROM THE REPORT.  IT'S THAT FIGURE.

12            MR. COUGHLIN:  OH.  IT'S THE DRAWING OF THE 7.0, THE

13     KEYBAG.

14            THE COURT:  THAT'S WHY IT'S AN A DESIGNATION.  I

15     THINK IT WAS A FIGURE TAKEN FROM SOMEONE'S DECLARATION.

16            MS. DEARBORN:  951?

17            THE COURT:  927A.

18        951 IS THE INTERROGATORY.

19            MS. DEARBORN:  OH, I SEE.  OKAY.

20        WE HAVE THAT.

21            THE COURT:  OKAY?

22            MS. DEARBORN:  WE'RE OKAY.

23            THE COURT:  MS. DEARBORN, ARE YOU READY?

24            MS. DEARBORN:  I'M READY.  THANK YOU, YOUR HONOR.

25            THE COURT:  OKAY.  THE 2000 SERIES.
```

2081

```
1        2015, '21, '28, '50, '82, '88, AND '98.

2              MR. COUGHLIN:  WE DON'T HAVE 2028, YOUR HONOR.

3              MS. DEARBORN:  WE AGREE WITH PLAINTIFFS, YOUR HONOR,

4    THAT DID NOT COME IN.

5              THE COURT:  OKAY.  I WILL SCRATCH THAT OUT.

6        2100 SERIES:  21'7, 2118, '19, '39, '40, '59, '71, '82 --

7    I'M SORRY, '83 AND '85.

8              MR. COUGHLIN:  THAT'S WHAT WE HAVE, YOUR HONOR.

9              MS. DEARBORN:  US, TOO, YOUR HONOR.

10             THE COURT:  2200 SERIES:  2205, 2222, '34, '39, '43,

11   '47, '52, '53, '65, '72, '73.

12             MS. DEARBORN:  YOUR HONOR, WE ALSO HAD ON OUR LIST

13   2228.

14             MR. COUGHLIN:  SO DO WE, YOUR HONOR.

15             THE COURT:  OKAY.  THAT'S ADMITTED.

16       (DEFENDANT'S EXHIBIT 2228 RECEIVED IN EVIDENCE)

17             THE COURT:  2300 SERIES:  2309, 2316, '17, '29, '30,

18   '37, '42, '44, '54, '79, '89, AND '94.

19             MR. COUGHLIN:  WE DON'T HAVE 2316.

20             MS. DEARBORN:  NEITHER DO WE, YOUR HONOR.  LET'S

21   CHECK IT.

22             MR. COUGHLIN:  IF WE CAN JUST TAKE -- BECAUSE THERE'S

23   A COUPLE MORE.

24                    (PAUSE IN THE PROCEEDINGS.)

25             MR. COUGHLIN:  SO, 2316 IS FINE.  2344?
```

```
 1             MS. DEARBORN:  THAT WAS ADMITTED TODAY.

 2             MR. COUGHLIN:  IT HAS "ADMIT".  OKAY.  AND '79?

 3             MS. DEARBORN:  SAME.

 4             MR. COUGHLIN:  SAME.  OKAY, YOUR HONOR.  WE BOTH HAVE

 5     THE SAME LIST NOW.

 6             THE COURT:  AND '16, WAS THAT -- DID YOU HAVE THAT?

 7             MS. DEARBORN:  IT WASN'T ON OUR LIST EITHER, YOUR

 8     HONOR, BUT WE HAVE NO PROBLEM ADMITTING IT.

 9             MR. COUGHLIN:  IT IS AN APPLE PRESS RELEASE.  WE HAVE

10     NO PROBLEM WITH IT.  WE WOULD ADD IT.

11             THE COURT:  OKAY.  2400 SERIES:  2405, 2419, '21,

12     '23, '28, '46, '49, '51, '58, '61, '62, '81, '93, '95, '97.

13             MS. DEARBORN:  WE ALSO HAD 2416.

14             MR. COUGHLIN:  NO OBJECTION, YOUR HONOR.

15             THE COURT:  2416 IS ADMITTED.

16         (DEFENDANT'S EXHIBIT 2416 RECEIVED IN EVIDENCE)

17             MR. COUGHLIN:  AND WE HAD 2426 AND 2446A.

18             THE COURT:  WELL, I HAVE 2446.  WHAT'S THE "A"?

19             THE CLERK:  A SCREEN SHOT.

20             MS. DEARBORN:  DID YOU SAY 2426 OR 2446?

21             MR. COUGHLIN:  I FIRST SAID 2426.  AND THAT IS A

22     STIPULATED TO ADMIT.  IT'S AN EMAIL WITH JOBS, CUE, ROBBIN.

23             MS. DEARBORN:  NO, WE HAVE NO RECORD OF THAT.

24             MR. COUGHLIN:  MS. CARINGAL CORRECTED ME.  WE ARE NOT

25     MOVING FOR IT.
```

2083

```
1         THE COURT:  SO THEN YOU HAD AN "A" DESIGNATION?

2         MS. DEARBORN:  WE HAVE THAT ON OUR LIST AS WELL, YOUR

3    HONOR, 2446A.

4         THE COURT:  AND NOT 2446 WITHOUT THE "A", OR BOTH?

5         MS. DEARBORN:  WE HAVE BOTH.

6         THE COURT:  OKAY.  SO 2446A IS ADMITTED.

7       (DEFENDANT'S EXHIBIT 2446A RECEIVED IN EVIDENCE)

8         THE COURT:  2500 SERIES.  I ONLY HAVE THREE: '5, '56

9    AND '93.

10        MS. DEARBORN:  WE ALSO HAVE 2561 ADMITTED TODAY.

11        THE COURT:  OKAY.

12        MR. COUGHLIN:  I THINK WE TOOK CARE OF 2593 BY WHAT

13   YOU DID TODAY.

14        MS. DEARBORN:  THAT'S RIGHT.

15        THE COURT:  OKAY.

16     NOTHING IN THE 2600 SERIES.

17     AND THEN IN THE 2700 SERIES I HAVE:  2712, 2715A, 2720A,

18   2743, '45, '67, '76, '80, '83, AND '84 WITH A REDACTION.

19        MR. COUGHLIN:  WE HAVE A FEW DIFFERENCES ON IT.  GIVE

20   US A SECOND TO LOOK THEM UP.

21            (PAUSE IN THE PROCEEDINGS.)

22        MR. COUGHLIN:  OKAY.  I THINK 25 -- 27, I AM SORRY,

23   2715A I THINK THE DEFENDANTS WERE SEEKING.  I'M NOT SURE WHAT

24   IT IS.

25        MS. DEARBORN:  THOSE ARE ALL PHYSICAL EXHIBITS.
```

```
1    THAT'S THE IPOD NANO --

2              THE COURT:  I JUST DID THOSE TODAY.

3              MR. COUGHLIN:  2715A WAS ADMITTED THIS MORNING?

4              THE COURT:  YES.  AND '20A AS WELL.

5              MR. COUGHLIN:  GOT IT.

6              THE COURT:  HOPEFULLY I DIDN'T HAVE THOSE IN MY CAR

7    YESTERDAY.  I ALMOST TOOK THEM HOME.  VERY GLAD I DIDN'T.

8              MR. COUGHLIN:  WE'RE ALL SET ON THE 27 SERIES.

9              THE COURT:  YES.  OKAY.

10        2800:  2805, '11, '44, '50, '58, '74, '74A, AND '77.

11             MS. DEARBORN:  2858 WAS ADMITTED TODAY AS WAS 2877.

12   AS WAS 2874A.

13        THIS IS OBVIOUSLY A USEFUL EXERCISE, YOUR HONOR.

14             THE COURT:  THAT'S WHY I DO IT.

15             MR. COUGHLIN:  I THINK WE ARE FINE.

16             THE COURT:  OKAY.

17        SO, THE NEXT THING I NEED YOU TO DO, NOW THAT WE ARE ALL

18   SET ON WHAT'S BEEN ADMITTED, DID YOU -- THERE'S NOTHING BEYOND

19   2800, RIGHT?  WE ARE GOOD -- IS I NEED SOMEONE -- WE NEED

20   THESE PULLED TOGETHER FOR THE JURY.  AND SOMEONE NEEDS TO --

21   ARE YOU GOING TO SEND IN THE HARD COPIES OR ARE YOU GOING TO

22   SEND IN AN ELECTRONIC VERSION?

23             MR. COUGHLIN:  I THINK WE SHOULD SEND IN THE HARD

24   COPIES, YOUR HONOR.  AND WE WILL PUT TOGETHER, WITH APPLE,

25   WHAT -- WE WILL PUT TOGETHER MAYBE TWO OR THREE COPIES THAT
```

2085

1    THEY CAN HAVE IF SOMEBODY WANTS TO LOOK AT THE SAME -- WE'LL

2    SEND IN FOUR COPIES.  THEY ARE NOT GOING TO BE THAT BIG.  THEN

3    TWO PEOPLE, SINCE THERE'S EIGHT JURORS, CAN SHARE THEM.  I

4    THINK FOUR COPIES WOULD BE ENOUGH.

5            **MS. DEARBORN:**  THAT'S FINE WITH APPLE, YOUR HONOR.

6            **MS. DUNN:**  IS THERE SOME WAY YOU TYPICALLY DO IT THAT

7    YOU WOULD PREFER?

8            **THE COURT:**  I TYPICALLY ONLY SEND IN ONE COPY BECAUSE

9    IT'S THE COURT EXHIBIT, BUT I CAN -- I CAN TELL THEM THAT --

10   WHAT I WOULD DO -- WELL, I WAS GOING TO SAY YOU CAN STAMP THEM

11   "COPIES", BUT --

12           **MR. COUGHLIN:**  I THINK --

13           **THE COURT:**  LOOK, WE HAVE ALL THIS PAPER.  DON'T GO

14   MAKING MORE COPIES.

15      IF YOU WANT, YOU CAN TAKE THESE BINDERS.  IT'S JUST 12:20.

16   YOU CAN TAKE THESE BINDERS TO THE ATTORNEY LOUNGE.  AND

17   ONCE -- ONE PERSON FROM EACH SIDE, AND PULL TOGETHER THE

18   BINDERS, OR PULL OUT THE EXHIBITS THAT GO INTO THE JURY ROOM,

19   PUT THEM BACK IN THE BINDERS.  YOU CAN TAKE THE COURT'S

20   EXHIBITS NUMBER AND YOU CAN TAKE THE COURTESY COPY.  SO

21   THERE'S TWO COPIES THERE.

22           **MR. COUGHLIN:**  YOUR HONOR, I WONDER -- WE WILL DO

23   THAT.  AND IF WE CAN TAKE THEM OUT OF HERE, TAKE THEM TO THE

24   OFFICES --

25           **THE CLERK:**  NO.  NO.  NOT ADMITTED.

1        **MR. COUGHLIN:**  NO?

2        **THE CLERK:**  NO.  I MADE ARRANGEMENTS WITH ONE FROM

3    EACH SIDE TO WORK WITH ME TO PULL THE BINDERS FOR ONE COPY OF

4    EVERYTHING.

5        **MS. DEARBORN:**  THAT'S FINE, YOUR HONOR.

6        **MR. COUGHLIN:**  AND THEN WE WILL SEND IT -- WE WILL

7    GET A DUPLICATE OF THAT -- THEN WE CAN --

8        **THE COURT:**  IF YOU WANT TO -- LOOK, IF YOU WANT TO

9    STIPULATE, THEN THAT'S FINE.  I DON'T WANT TO SEND IN FOUR.

10        YOU CAN ALSO SEND IN AN ELECTRONIC VERSION ON A THUMB

11    DRIVE, OR SOMETHING.  I'VE GOT THREE, FOUR ENGINEERS ON THIS

12    JURY.  THEY ARE GOING TO BE GIVEN A LAPTOP THAT IS SECURED.

13        **MR. COUGHLIN:**  THAT'S FINE, YOUR HONOR.

14        **MS. DUNN:**  THAT'S A GOOD IDEA.  I THINK ONE HARD

15    COPY, ONE THUMB DRIVE, AND WE WILL MAKE IT EASY.

16        **THE COURT:**  SOMEONE WILL STAY HERE AND WORK WITH

17    FRANCES AND PULL THESE THINGS TOGETHER.

18        **MR. COUGHLIN:**  YES.

19        **THE COURT:**  YOU CAN -- BY THE WAY, YOU CAN ALL TAKE

20    YOUR -- MY EXHIBITS.  I DON'T NEED THEM.  OKAY?  SO YOU CAN

21    START PULLING THOSE OUT OF THERE.

22        OTHER ISSUES?

23        **MR. ISAACSON:**  JUST BEFORE CLOSING ARGUMENT, I JUST

24    WANTED TO CLARIFY WHERE WE STAND AND GET SOME GUIDANCE ON

25    WHAT'S PERMITTED AND NOT PERMITTED.

1    THE CASE IS ABOUT 7.0 AND NOT 7.4.  I UNDERSTAND THAT

2    MR. COUGHLIN IS GOING TO ARGUE THAT WHAT HAPPENED WITH RESPECT

3    TO 7.4 RELATES TO OUR INTENT TO 7.0.  I THINK THE COURT HAS

4    RULED THAT THAT IS PERMISSIBLE.

5    THE -- THE COURT, I THINK, APPROPRIATELY EXPRESSED THAT

6    THERE HAVE BEEN CERTAIN ARGUMENTS THAT HAVE GONE BEYOND THAT

7    SORT OF -- THAT SORT OF THING.  THERE'S BEEN A LOT OF COMMENTS

8    ABOUT INTEROPERABILITY, FOR EXAMPLE, THROUGHOUT THE TRIAL.

9    AND I THINK THE COURT WAS EXPRESSING IT HAD SOME THOUGHTS

10   ON THIS, AND GIVEN THE INSTRUCTIONS, I THINK WE WOULD

11   APPRECIATE HEARING FROM THE COURT WHAT ITS THOUGHTS ARE AT

12   THIS POINT.

13   **THE COURT:**  WELL, I DON'T ACTUALLY UNDERSTAND YOUR

14   QUESTION.

15   I MEAN, THE REASON -- THE VERDICT FORM THAT YOU SAW TODAY

16   HAS TAKEN MANY SHAPES OVER THE COURSE OF THIS TRIAL.  THAT

17   INTERROGATORY WAS IN, THEN IT WAS OUT, THEN IT WAS IN AGAIN.

18   AS I EXPRESSED TO YOU ALL BEFORE, AND I UNDERSTAND THAT,

19   YOU KNOW, BOTH SIDES HAVE THEIR REASONS FOR DISAGREEING WITH

20   ME.  THE ISSUE, IN MY VIEW, OF WHETHER SOMETHING IS A GENUINE

21   PRODUCT IMPROVEMENT IS A DISTINCT AND SEPARATE ANALYSIS.  AND

22   THAT'S WHY I -- WHY THE VERDICT FORM ENDED UP THE WAY IT DID

23   BECAUSE I WAS TOO CONCERNED THAT IT WOULD ALL GET MESHED

24   TOGETHER IN TERMS OF THE JURY'S ANALYSIS IF I DIDN'T SEGREGATE

25   IT OUT.

1        SO, I MEAN, I THINK MY THOUGHTS ON WHAT THE LAW IS ARE

2    ACTUALLY EXPRESSED IN THE INSTRUCTIONS.

3            **MR. ISAACSON:**  ALL RIGHT.

4        MAY I CONFER WITH MY COLLEAGUE FOR A MOMENT?

5                    (PAUSE IN THE PROCEEDINGS.)

6            **MR. COUGHLIN:**  I MEAN I CERTAINLY INTEND TO ARGUE

7    THAT THE KVC AND DVC WERE IN 7.0, AND THAT AT THE TIME 7.0 WAS

8    ISSUED, ONLY THE KVC WAS ACTIVATED AND LATER THE DVC WAS

9    ACTIVATED.

10           **MR. ISAACSON:**  UNDERSTOOD, YOUR HONOR.  THANK YOU.

11           **THE COURT:**  OKAY.  OTHER ISSUES OR CONCERNS?

12       I SHOULD TELL YOU, I GUESS, ONCE THE JURY IS SENT OUT FOR

13   DELIBERATIONS, YOU NEED TO BE CLOSE BY.  SO I THINK YOU'VE GOT

14   ROOMS IN THE ATTORNEY LOUNGE RESERVED FOR YOU, BUT I'M GOING

15   TO NEED TWO OR THREE CELL PHONE NUMBERS BECAUSE I DON'T LIKE

16   TO MAKE JURORS WAIT.  AND WHEN THEY HAVE QUESTIONS, I NEED TO

17   TALK TO YOU.

18       SO, I DO WANT TO MAKE SURE THAT YOU ARE CLOSE BY, YOU

19   KNOW, FIVE, NO MORE THAN TEN MINUTES AWAY.

20           **MR. COUGHLIN:**  WE WILL GIVE YOU THOSE NUMBERS RIGHT

21   NOW, YOUR HONOR.

22           **THE COURT:**  GIVE THEM TO FRANCES.

23           **MR. ISAACSON:**  WE HAVE OUR CHOICE OF THREE LOCATIONS:

24   THE ATTORNEY LOUNGE, THE HOTEL TWO BLOCKS AWAY, OR THE OFFICE

25   TEN BLOCKS AWAY.

1      THE OFFICE IS PROBABLY FIVE TO TEN MINUTES IF WE TAKE THE

2   CAR.  SO I GUESS WE WILL CONFINE OURSELVES TO THE ATTORNEY

3   LOUNGE OR THE HOTEL.

4          **THE COURT:**  OKAY.  OTHER QUESTIONS, CONCERNS?

5      WHY DON'T YOU ADD THEM ALL ON THERE.

6      WE DON'T WANT YOUR NOTES, MR. COUGHLIN.

7          **MR. COUGHLIN:**  THEY WOULDN'T BE HELPFUL.

8          **THE COURT:**  ANYTHING ELSE?

9      THE OTHER THING, JUST, AGAIN, SO THAT YOU KNOW IN ADVANCE,

10  USUALLY WHEN I TAKE A VERDICT, I WILL OFFER TO CHAT WITH THE

11  JURORS IF THEY WANT TO CHAT.  OBVIOUSLY NOT ABOUT THE CASE,

12  BUT SOMETIMES THEY LIKE TO TALK.

13     I ASSUME WHICHEVER WAY IT COMES OUT, WE'LL HAVE THINGS TO

14  TALK ABOUT.  SO WE WILL TAKE A RECESS IN CASE YOU WANT TO TALK

15  TO THEM.  THEY OBVIOUSLY WILL BE RELEASED TO TALK TO YOU, AND

16  THEN WHEN YOU ALL GATHER BACK INTO THE COURTROOM, WE'LL TALK

17  ABOUT NEXT STEPS AFTER THE VERDICT.  OKAY?

18     ANYTHING ELSE?

19         **MR. COUGHLIN:**  NO, YOUR HONOR.

20         **MR. ISAACSON:**  NOTHING ELSE, YOUR HONOR.

21         **THE COURT:**  I APPRECIATE ALL THE COOPERATION THAT

22  BOTH SIDES HAVE AFFORDED EACH OTHER.  IT ALWAYS MAKES MY LIFE

23  EASIER.  AND SO I JUST LET YOU KNOW THAT IN ADVANCE.  THANK

24  YOU VERY MUCH.

25         **MR. COUGHLIN:**  THANK YOU, YOUR HONOR.

1        **MR. ISAACSON:** THANK YOU, YOUR HONOR.

2           (PROCEEDINGS CONCLUDED AT 12:30 P.M.)

3

4

5

6                    **CERTIFICATE OF REPORTERS**

7        WE, RAYNEE H. MERCADO AND DIANE E. SKILLMAN, OFFICIAL

8    REPORTERS FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF

9    CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING IS A CORRECT

10   TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

11   ABOVE-ENTITLED MATTER.

12

13   _____

14        RAYNEE H. MERCADO, CSR 8258, RMR, CRR, FCRR

15

16

17

18        DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

19           FRIDAY, DECEMBER 12, 2014

20

21

22

23

24

25