UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**ORIGINAL**

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE


| | | |
|---|---|---|
| THE APPLE IPOD ITUNES ANTITRUST LITIGATION | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>_____) | NO. C 05-00037 YGR<br><br>PAGES 1 - 197<br><br>JURY TRIAL - VOLUME 1<br><br><br>OAKLAND, CALIFORNIA<br>WEDNESDAY, NOVEMBER 19, 2014 |


## REPORTERS' TRANSCRIPT OF PROCEEDINGS


APPEARANCES:

FOR PLAINTIFFS:          ROBBINS GELLER RUDMAN & DOWD LLP
                         655 WEST BROADWAY, SUITE 1900
                         SAN DIEGO, CALIFORNIA  92101
                 BY:  ALEXANDRA S. BERNAY,
                      JENNIFER N. CARINGAL,
                      PATRICK COUGHLIN,
                      STEVEN M. JODLOWSKI
                      CARMEN A. MEDICI,
                      BONNY E. SWEENEY, ATTORNEYS AT LAW


                         BONNETT FAIRBOURN FRIEDMAN & BALINT PC
                         4023 CAIN BRIDGE ROAD
                         FAIRFAX, VIRGINIA 22030
                 BY:  FRANCIS J. BALINT, JR.
                      ATTORNEY AT LAW


            (APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:          RAYNEE H. MERCADO, CSR NO. 8258
                      DIANE E. SKILLMAN, CSR NO. 4909


    PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

**A P P E A R A N C E S (CONT'D.)**

```
FOR DEFENDANT:           BOIES, SCHILLER & FLEXNER LLP
                         5301 WISCONSIN AVENUE NW
                         WASHINGTON, D.C.  20015
                    BY:  WILLIAM A. ISAACSON,
                         KAREN L. DUNN,
                         MARTHA L. GOODMAN, ATTORNEYS AT LAW


                         BOIES, SCHILLER & FLEXNER LLP
                         1999 HARRISON STREET, SUITE 900
                         OAKLAND, CALIFORNIA  94612
                    BY:  MEREDITH R. DEARBORN, ATTORNEYS AT LAW



                         --O0O--
```

```
 1   WEDNESDAY, NOVEMBER 19, 2014                        8:42 A.M.

 2                     P R O C E E D I N G S

 3       (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE PRESENCE

 4   OF THE JURY:)

 5           THE CLERK:  CALLING CIVIL ACTION 05-0037, THE APPLE

 6   IPOD ITUNES ANTITRUST LITIGATION.

 7       COUNSEL, PLEASE STATE YOUR APPEARANCES.

 8           MS. SWEENEY:  GOOD MORNING, YOUR HONOR.  BONNY

 9   SWEENEY.  WITH ME TODAY ARE PATRICK COUGHLIN, FRANK BALINT,

10   ALEXANDRA BERNAY.

11           THE COURT:  OKAY.

12           MR. ISAACSON:  BILL ISAACSON FOR DEFENDANT APPLE.

13   I'M HERE WITH MEREDITH DEARBORN, MARTHA GOODMAN, KAREN DUNN,

14   AND THEN SCOTT MURRAY OF APPLE.

15           THE COURT:  OKAY.

16       OKAY.  LET'S TALK ABOUT THESE PROPOSALS YOU FILED.

17       FOR PURPOSES OF THE RECORD, THE COURT REFERS TO DOCKET

18   NOS. 914, WHICH IS PLAINTIFFS' PROPOSED JURY INSTRUCTIONS,

19   NO. 17 AND 31, AND DEFENDANT'S FILING DOCKET NO. 913.

20       ALL RIGHT.  A COUPLE OF QUESTIONS.

21       THESE ARE HELPFUL.  I'M NOT GOING TO ACCEPT EITHER WITHOUT

22   CHANGES, PROBABLY A LITTLE OF BOTH.  BUT I DO WANT TO MAKE

23   SURE WE ARE ALL ON THE SAME PAGE ABOUT SOME OF THE BASICS.

24       AND THAT IS, LET'S START WITH, IN LIGHT OF WHAT YOU'VE

25   GIVEN ME, WHAT A JURY VERDICT FORM IS GOING TO LOOK LIKE.
```

1    PLAINTIFFS DON'T DIRECTLY ADDRESS IT.  APPLE DOES.  AND THAT

2    IS THE NOTION THAT IF THE JURY FINDS THAT THE SOFTWARE AND

3    FIRMWARE CHANGES IN ITUNES 7.0 AND 7.4 WERE NOT GENUINE

4    PRODUCT IMPROVEMENTS, WE'RE GOING TO -- I'M GOING TO GET TO

5    LEGITIMATE BUSINESS JUSTIFICATION IN A MINUTE -- BUT THE CASE

6    IS OVER.  THAT IS, THE JURY CAN CHECK THE BOX, IF THEY SAY

7    "NO," THEY GO AND THEY SIGN THE FORM, IT'S DONE.

8            MS. SWEENEY:  CAN I RESPOND, YOUR HONOR?

9            THE COURT:  YOU CAN.

10           MS. SWEENEY:  WE HAVE IN OUR PROPOSED JURY

11   INSTRUCTIONS A PROPOSED INSTRUCTION AS TO MONOPOLY LEVERAGING.

12   IT'S OUR POSITION THAT EVEN IF THE JURY FINDS THAT THERE WAS

13   NO GENUINE PRODUCT IMPROVEMENT, THE JURY CAN NONETHELESS FIND

14   THAT APPLE ENGAGED IN ANTICOMPETITIVE CONDUCT THROUGH MONOPOLY

15   LEVERAGING.

16           MR. ISAACSON:  YOUR HONOR, MONOPOLY LEVERAGING

17   REQUIRES AN ANTICOMPETITIVE ACT.  A GENUINE PRODUCT

18   IMPROVEMENT CANNOT BE AN ANTICOMPETITIVE ACT.  IT WOULD END

19   ANY CLAIM FOR MONOPOLY LEVERAGING.  THE CLAIM FOR MONOPOLY

20   LEVERAGING IS COMPLETELY REDUNDANT OF A CLAIM FOR ENHANCING

21   MONOPOLY POWER UNDER SECTION 2.

22           THE COURT:  WHAT EVIDENCE OTHER THAN -- WELL,

23   RESPOND.

24           MS. SWEENEY:  YOUR HONOR, WE -- WE'VE CITED SOME

25   CASES IN OUR PROPOSED JURY INSTRUCTIONS.  AND THEN THE --

1        **THE COURT:**  I'M ASKING ABOUT --

2        **MS. SWEENEY:**  I UNDERSTAND.

3     THE EVIDENCE IS WE WILL PRESENT EVIDENCE THAT APPLE USED

4  ITS WELL-ESTABLISHED MONOPOLY IN THE DIGITAL DOWNLOAD MARKET

5  TO MAINTAIN AND ENHANCE ITS MONOPOLY POWER IN THE PORTABLE

6  DIGITAL PLAYER MARKET.

7        **THE COURT:**  BY WHAT ACT?

8        **MS. SWEENEY:**  THE ACTS ARE -- ARE THE SAME IN TERMS

9  OF APPLE ENGINEERED THIS INCOMPATIBILITY WITH COMPETING

10  PRODUCTS.

11        **THE COURT:**  WELL, IF THAT'S YOUR THEORY, THEN I'M NOT

12  GOING TO LET YOU DO THAT.  I JUST -- THAT -- IF THAT'S ALL THE

13  EVIDENCE YOU HAVE, THAT IS THE SAME SET OF ACTS, THEN NO, YOU

14  DON'T GET TO MAKE THAT DIFFERENT KIND OF CLAIM.  I DON'T THINK

15  THAT THE LAW SUPPORTS IT.  I WILL GO BACK AND LOOK AT YOUR

16  CASES, BUT I WOULD NOT BANK ON IT, IF I WERE YOU.

17        **MS. SWEENEY:**  OKAY.  THANK YOU, YOUR HONOR.

18        **THE COURT:**  NOW, WE DIDN'T TALK YESTERDAY ABOUT THE

19  IMPACT OF THIS OTHER QUESTION WHICH IS LEGITIMATE BUSINESS

20  JUSTIFICATION.  MY FOCUS HAD BEEN ON WHETHER OR NOT THE

21  CHANGES MADE WERE, IN FACT, PRODUCT IMPROVEMENTS, GENUINE

22  PRODUCT IMPROVEMENTS.  THAT'S WHAT THE SUMMARY JUDGMENT ORDER

23  SAID NEEDED TO STILL BE TRIED.  THAT'S WHAT ALL OF THE FILINGS

24  SEEM TO INDICATE THAT WE WERE DEALING WITH THIS SLICE.  SO HOW

25  DOES THAT FIT IN?  HOW DOES THAT FIT IN?

```
 1        AM I SUPPOSED TO HAVE THE JURY ANSWER THE QUESTION THAT

 2   THERE WAS NO GENUINE PRODUCT IMPROVEMENT AND NO LEGITIMATE

 3   BUSINESS JUSTIFICATION?  OR NO LEGITIMATE -- HOW AM I SUPPOSED

 4   TO ASK THAT QUESTION?  IT'S NOT CLEAR TO ME, GIVEN YOUR NEW

 5   FILINGS, WHAT THE POSITIONS OF THE PARTIES ARE ON THAT ISSUE

 6   AND WHETHER IT'S EVEN NECESSARY GIVEN THE FACTS.

 7        MR. ISAACSON:  I THINK IT IS NECESSARY BY THE FINAL

 8   INSTRUCTIONS.  WE DIDN'T FEEL IT WAS NECESSARY FOR THE

 9   PRELIMINARY INSTRUCTIONS, WHICH IS WHAT WE'RE DEALING WITH AT

10   THIS MOMENT.

11        IF YOU -- IF THE JURY WERE TO FIND -- IF THE PLAINTIFFS'

12   THEORY AS EXPRESSED YESTERDAY IS THAT EVERYTHING THAT APPLE

13   DID IN 7.0 AND 7.4 WAS PRETEXTUAL AND INTENDED -- WAS NOT --

14   WAS PRETEXTUAL AND NOT ACTUALLY INTENDED TO IMPROVE SECURITY

15   OR IMPROVE THE PRODUCT, IT WAS INTENDED TO EXCLUDE

16   COMPETITORS, APPLE'S CASE INCLUDES THAT CREATING

17   INCOMPATIBILITY WITH SO-CALLED COMPETITORS, EXCLUDING THEM IS

18   A LEGITIMATE METHOD OF COMPETITION, AND THERE ARE LEGITIMATE

19   BUSINESS JUSTIFICATIONS FOR THAT, THAT APPLE PRODUCTS WORK

20   BETTER WHEN OTHER PARTIES ARE NOT COMING INTO THE SYSTEM.

21   THAT CASE -- THAT EVIDENTIARY CASE WILL BE PRESENTED TO THE

22   JURY.

23        SO IF THE JURY WERE TO CONCLUDE AT THE END OF THE CASE

24   THAT, OKAY, THIS REALLY WASN'T ABOUT -- HAD NOTHING TO DO WITH

25   SECURITY, WHICH WE DON'T AGREE WITH, BUT IF THEY WERE TO SAY
```

```
 1   THIS HAD NOTHING TO DO WITH SECURITY OR IMPROVING THE PRODUCT,
 2   THIS WAS JUST ABOUT KEEPING REAL AND NAVIO AND WHOEVER OUT,
 3   THERE ARE LEGITIMATE BUSINESS JUSTIFICATIONS FOR THAT THAT ARE
 4   SUPPORTED BY -- AND THOSE LEGITIMATE BUSINESS JUSTIFICATIONS
 5   ARE SUPPORTED BY THE CASE LAW.
 6          THE COURT:  BUT THEY WOULD GO ON -- BUT THEY WOULD GO
 7   ON AND DO THE ANALYSIS OF WHETHER OR NOT THE PLAINTIFFS PROVE
 8   THEIR CASE.
 9          MR. ISAACSON:  YES.  YES.
10          THE COURT:  SO --
11          MR. ISAACSON:  WELL, I'M SORRY, NO, NO.  AT THAT
12   POINT, IF THERE'S A LEGITIMATE BUSINESS JUSTIFICATION -- I
13   MISUNDERSTOOD -- IF THERE'S A LEGITIMATE BUSINESS
14   JUSTIFICATION, THAT ENDS THE PLAINTIFFS' CASE.
15          THE COURT:  OH, I'M NOT SURE ABOUT THAT.
16      A RESPONSE.
17          MS. SWEENEY:  YES, YOUR HONOR.  AND I APOLOGIZE IF
18   OUR INSTRUCTION -- OUR PROPOSED INSTRUCTIONS WEREN'T CLEAR ON
19   THIS POINT.
20      WE DON'T THINK THAT APPLE GETS TWO OPPORTUNITIES TO ARGUE
21   ITS LEGITIMATE BUSINESS JUSTIFICATION.  AS MR. ISAACSON JUST
22   SAID, THEIR PROPOSED LEGITIMATE BUSINESS JUSTIFICATION IS THE
23   SAME ARGUMENT, THE SAME EVIDENCE THAT THEY'RE GOING TO PRESENT
24   IN -- IN SUPPORT OF THEIR CLAIM THAT THERE WAS A GENUINE
25   PRODUCT IMPROVEMENT.  AS MR. ISAACSON SAID, APPLE PRODUCTS
```

```
 1    WORK BETTER WHEN OTHER PRODUCTS ARE NOT COMING INTO THE

 2    SYSTEM.  THAT IS PART OF THEIR JUSTIFICATION FOR 7.0 AND 7.4

 3    WHICH WE BELIEVE IS PRETEXTUAL.  SO WE DON'T THINK THAT APPLE

 4    GETS TWO OPPORTUNITIES TO PRESENT ITS DEFENSE.

 5         THE COURT:  DOES ANY OF THE CASE LAW MAKE THE

 6    DISTINCTION THAT YOU'RE TRYING TO MAKE, MR. ISAACSON?

 7         MR. ISAACSON:  THEY -- THE GENUINE PRODUCT

 8    IMPROVEMENT AND THE LEGITIMATE BUSINESS JUSTIFICATION ARE

 9    TREATED SEPARATELY UNDER THE CASE LAW AND TREATED --

10         THE COURT:  IS THERE ANY CASE THAT HAS HAD A

11    CIRCUMSTANCE WHERE, AS YOU'RE TRYING TO ASSERT, IN THE SAME

12    CASE THE ISSUE IS ONE OR THE OTHER?

13         MR. ISAACSON:  I DON'T THINK A GENUINE PRODUCT

14    IMPROVEMENT HAS GONE TO TRIAL, PERIOD.  SO I THINK YOU'RE ON

15    NEW GROUND HERE, THOUGH I CAN DOUBLE-CHECK THOSE CASES.

16         THE COURT:  BUT THEN IT SEEMS TO ME -- IT SOUNDS AS

17    IF ALL OF THOSE OTHER CASES DIDN'T DEAL WITH THE ISSUE OF

18    PRODUCT IMPROVEMENT, THEY DEALT SOLELY WITH THE ISSUE OF

19    LEGITIMATE BUSINESS JUSTIFICATION.  IS THAT RIGHT?

20         MR. ISAACSON:  I DON'T --

21         THE COURT:  THE OTHER CASES THAT YOU'RE REFERENCING.

22         MR. ISAACSON:  I WILL HAVE TO REREVIEW -- REREVIEW

23    THAT, YOUR HONOR.  BUT ALL I KNOW AT THIS POINT IS I'M NOT

24    AWARE OF A GENUINE PRODUCT IMPROVEMENT CASE THAT WENT TO

25    TRIAL.
```

```
 1          MS. SWEENEY:  AND WE HAVE FOUND NO CASE, YOUR HONOR,

 2   WHERE THE DEFENDANT WAS PERMITTED TO PRESENT BOTH OF THOSE

 3   DEFENSES.  AND THE CASES THAT WE HAVE SEEN ARE LEGITIMATE

 4   BUSINESS JUSTIFICATION CASES.

 5          THE COURT:  WELL, WHAT IS THE JUSTIFICATION OTHER

 6   THAN -- I MEAN, HOW ARE THESE ANY DIFFERENT, GIVEN YOUR THEORY

 7   OF THE CASE?  IT SOUNDS AS IF THEY'RE THE EXACT SAME.

 8          MR. ISAACSON:  NO.  IT ACCEPTS -- WITH THE GENUINE

 9   BUSINESS JUSTIFICATION, IT ACCEPTS THAT THERE WAS NO OTHER

10   ACTION TAKEN HERE OTHER THAN WHAT THEY SAY.  AND THAT THAT

11   IS --

12          THE COURT:  ALL OF THE -- ALL OF THE EVIDENCE --

13          MR. ISAACSON:  -- A LEGITIMATE METHOD OF COMPETING.

14          THE COURT:  IT'S MY UNDERSTANDING THAT ALL OF THE

15   EVIDENCE THAT YOU ARE PRESENTING IN TERMS OF THE CHANGES BEING

16   MADE TO 7.0 AND 7.4 WERE, IN FACT, THE JUSTIFICATIONS THAT

17   THEY WERE GENUINE PRODUCT IMPROVEMENTS.  THEY'RE NOT SEPARATE

18   AND APART.

19      I DON'T UNDERSTAND HOW YOU CAN MAKE THE ARGUMENT THAT A

20   COMPANY SUCH AS APPLE, THAT THEIR LEGITIMATE BUSINESS

21   JUSTIFICATION IS ANYTHING OTHER THAN INTEGRAL TO THE PRODUCT

22   IMPROVEMENT.

23          MR. ISAACSON:  I DISAGREE WITH YOUR HONOR BECAUSE

24   APPLE MARKETS ITSELF, PROMOTES ITSELF, IT COMPETES AND SAYS,

25   "WE ARE DIFFERENT ON THE SPACES."  AND SOMEONE COULD SAY, AND
```

1    THE PLAINTIFFS ARE GOING TO SAY, THAT IS ILLEGITIMATE, DOESN'T

2    RESULT IN ANY PRODUCT QUALITY.  PROFESSOR NOLL SAYS IT HURTS

3    PRODUCT QUALITY, THAT OUR WHOLE SYSTEM DOES THAT.  AND WE SAY

4    WE COMPETE ON THAT BASIS AND PROVIDE CONSUMER CHOICE ON THAT

5    BASIS.  AND THAT IS AN ACCEPTED BUSINESS JUSTIFICATION FOR

6    WHAT APPLE DOES.  AND THEY WILL --

7         **THE COURT:**  WELL, BUT THE JURY IS ALREADY BEING

8    ADVISED THAT THE INTEGRATED PLATFORM HAS BEEN FOUND TO BE

9    LEGAL.  SO WE'RE NOT -- THAT'S NOT THE DISPUTE.  SO THAT

10   JUSTIFICATION IS NOT -- IN SOME WAYS NOT EVEN REALLY RELEVANT

11   BECAUSE I'M ALREADY INSTRUCTING THEM AS A MATTER OF LAW THAT

12   THAT'S THE CASE.  THE ISSUE HERE IS SOLELY 7.0 AND 7.4 AND THE

13   CIRCUMSTANCES SURROUNDING IT.

14        **MR. ISAACSON:**  I -- I --

15        **THE COURT:**  AND SO THE JUSTIFICATION FOR 7.0 AND 7.4

16   IS -- YOU AREN'T GOING TO BE ALLOWED TO DOVETAIL THAT BACK

17   INTO RULINGS THAT HAVE ALREADY BEEN MADE.  THAT'S NOT WHY

18   WE'RE HERE.

19        **MR. ISAACSON:**  WELL, YOUR HONOR, PLAINTIFFS INTEND TO

20   SAY AND PUT ON EXPERTS TO SAY AND -- TO CROSS-EXAMINE OUR

21   WITNESSES TO SAY THAT CREATING INCOMPATIBILITY IS

22   ANTICOMPETITIVE AND BAD.

23        **THE COURT:**  AND THE JURY IS GOING TO BE INSTRUCTED

24   THAT AS A MATTER OF LAW, WITHOUT MORE, IT'S LEGAL.

25        **MR. ISAACSON:**  IT -- BUT WE ARE ENTITLED TO MORE THAN

1    THAT BECAUSE IT IS NOT JUST THAT IT IS LEGAL.  IT IS -- WE ARE

2    ALLOWED TO ARGUE THAT THAT -- WE ENHANCE CONSUMER CHOICE AND

3    WE -- AND WE BOLSTER COMPETITION BY DOING THAT.

4        IT'S NOT SIMPLY A MATTER OF BEING LEGAL, YOUR HONOR.

5    OKAY?  THEY ARE GOING TO BE SAYING -- THEY'RE GOING TO BE

6    ATTACKING IT.  WE ARE ALLOWED TO DEFEND IT.  AND THAT DEFENSE

7    IS CONSISTENT WITH THE LAW, THAT IT'S NOT SIMPLY THAT IT'S

8    LEGAL, IT'S NOT SIMPLY THAT IT'S NOT ANTICOMPETITIVE, IT'S

9    THAT IT IMPROVES CONSUMER CHOICE.  AND THE CASES SAY THAT.

10            THE COURT:  WELL, THEN, WHAT -- HOW DO YOU TIE THAT

11   BACK TO 7.0 AND 7.4?

12            MR. ISAACSON:  BECAUSE 7.0 AND 7.4, ACCORDING TO

13   THEIR OWN CASE, KEEPS PEOPLE OUT OF OUR SYSTEM.  AND WE

14   MAINTAIN OUR ECOSYSTEM.  AND THAT'S HOW WE MARKET AND COMPETE

15   AND SAY HERE'S THE CHOICE -- SORRY -- HERE'S THE CHOICE THAT

16   YOU HAVE, CONSUMER.

17       NOW, THEY MAY --

18            THE COURT:  WELL, I MEAN --

19            MR. ISAACSON:  -- ARGUE THAT DOESN'T IMPROVE PRODUCT

20   QUALITY, BUT THAT'S A CHOICE THAT WE ARE ALLOWED TO ARGUE

21   SHOULD BE IN THE MARKETPLACE.

22       AND I WOULD JUST SAY SECONDARILY, YOU'RE ALSO GOING TO

23   CROSS THIS BRIDGE WHEN YOU DECIDE WHETHER THERE'S A SUFFICIENT

24   EVIDENTIARY FOUNDATION FOR THE DMCA ISSUE AND THOSE ISSUES.

25   BECAUSE THOSE -- THOSE CROSS OVER INTO THE AREA OF LEGITIMATE

1    BUSINESS JUSTIFICATION.

2                  (PAUSE IN THE PROCEEDINGS.)

3          **MR. ISAACSON:**  SO MY COLLEAGUE IS REMINDING ME THAT

4    *TYCO* OR *ALLIED ORTHOPEDIC* TALKS ABOUT THAT PRODUCT

5    IMPROVEMENTS CAN HAVE THE EFFECT OF HARMING OR EVEN DESTROYING

6    COMPETITORS, AND THEN CITES ANOTHER NINTH CIRCUIT CASE THAT

7    REFUSING TO AID A COMPETITOR -- WHERE -- WHERE A MONOPOLIST'S

8    REFUSAL TO AID A COMPETITOR IS BASED PARTIALLY ON A DESIRE TO

9    RESTRICT COMPETITION, WE DETERMINE ANTITRUST LIABILITY BY

10   ASKING WHETHER THERE WAS A LEGITIMATE BUSINESS JUSTIFICATION

11   FOR THE MONOPOLIST'S CONDUCT.

12       WE FEEL THAT UNDER THE LAW, WE ARE ALLOWED TO PRESENT

13   OTHER LEGITIMATE REASONS FOR OUR CONDUCT OTHER THAN THE FACT

14   THAT THIS ACTUALLY IMPROVED THE PRODUCT.

15         **MS. SWEENEY:**  AND, YOUR HONOR, I WOULD -- I WOULD

16   JUST REAFFIRM WHAT I SAID BEFORE, WHICH IS I DON'T HEAR

17   MR. ISAACSON SAYING -- WE'VE CERTAINLY NOT SEEN IN THE

18   EVIDENCE THAT WE EXPECT APPLE TO PUT FORWARD ANY LEGITIMATE

19   BUSINESS JUSTIFICATION OTHER THAN THESE PRODUCT CHANGES WERE

20   PRODUCT IMPROVEMENTS.  AS MR. ISAACSON JUST SAID, WHAT THEY DO

21   ENHANCES CONSUMER CHOICE.  WELL, THAT GOES DIRECTLY TO THE

22   QUESTION THAT *TYCO* SAYS THE JURY MUST ANSWER, WHICH IS:  DID

23   THE PRODUCT CHANGE PROVIDE A NEW CONSUMER BENEFIT?

24       SO, AGAIN, WE THINK THAT APPLE IS JUST TRYING TO GET TWO

25   OPPORTUNITIES TO PRESENT THE SAME DEFENSE, AND THAT'S NOT FAIR

1   AND IT'S CERTAINLY NOT SUPPORTED BY THE LAW.

2          **MR. ISAACSON:**  FOR EXAMPLE, THE LEGITIMATE BUSINESS

3   JUSTIFICATION --

4          **THE COURT:**  WELL, MR. ISAACSON, I'M GOING TO CUT YOU

5   OFF.

6          **MR. ISAACSON:**  OKAY.

7          **THE COURT:**  BECAUSE IT'S CLEAR TO ME THAT UNTIL I

8   HEAR THE EVIDENCE, I'M NOT GOING TO BE ABLE TO CONFIRM THE

9   JURY INSTRUCTION SO -- AT LEAST NOT 31.

10     WITH RESPECT TO 17 -- AND UNDERSTAND THAT I JUST RECEIVED

11  THESE -- WOULD IT BE ACCURATE TO SAY THE FOLLOWING?  I THINK

12  IT IS, BUT I'LL ASK.  LOOKING AT PLAINTIFF'S 17.  THAT

13  PLAINTIFF BRINGS THIS ACTION ALLEGING THAT CERTAIN SOFTWARE

14  AND FIRMWARE CHANGES APPLE MADE TO ITS ITUNES AND IPODS

15  THROUGH ITUNES 7.0 AND 7.4 WERE NOT GENUINE PRODUCT

16  IMPROVEMENTS BUT AN ATTEMPT TO MAINTAIN AND ENHANCE ITS

17  MONOPOLY POWER.

18     IS THAT ACCURATE?

19         **MS. SWEENEY:**  I -- I BELIEVE SO, YOUR HONOR.  I'M NOT

20  SURE I CAUGHT EVERY WORD, BUT I THINK THAT'S RIGHT.

21         **THE COURT:**  WELL, I JUST RECONFIGURED AND DELETED

22  MUCH OF YOUR FIRST PARAGRAPH.

23     GOING TO --

24         **MS. SWEENEY:**  YOUR HONOR, I'M SORRY TO INTERRUPT, BUT

25  I HAVE IT NOW ON THE SCREEN IN FRONT OF ME.  I REALIZE I

1   DIDN'T KNOW THAT BEFORE.  AND, YES, THAT'S CORRECT.

2          **THE COURT:**  GIVEN OUR PRIOR DISCUSSION, USING APPLE'S

3   17 AT LINE 12, "AS THE JURY, YOU MUST DECIDE WHETHER THE

4   SOFTWARE AND FIRMWARE CHANGES IN ITUNES 7.0 AND 7.4 WERE

5   GENUINE PRODUCT IMPROVEMENTS OR NOT GENUINE PRODUCT

6   IMPROVEMENTS BUT EVIDENCE OF A PRETEXT."

7      THAT WOULD FAIRLY SUMMARIZE THE PARTIES' POSITIONS,

8   CORRECT?

9          **MR. ISAACSON:**  I'M SORRY.  "YOU MUST DECIDE WHETHER

10  THE SOFTWARE AND FIRMWARE CHANGES IN ITUNES 7.0 AND 7.4 WERE

11  NOT GENUINE PRODUCT" --

12         **THE COURT:**  -- "WERE GENUINE PRODUCT IMPROVEMENTS OR

13  NOT GENUINE PRODUCT IMPROVEMENTS BUT EVIDENCE OF PRETEXT."

14     I SAY IT THAT WAY BECAUSE THE ANALYSIS WOULD NOT BE OVER

15  IF THEY DECIDE WHETHER THEY ARE NOT GENUINE PRODUCT

16  IMPROVEMENTS.

17         **MR. ISAACSON:**  RIGHT.  I AGREE THAT THAT IS WHAT THE

18  PLAINTIFFS ARE SAYING.  WE DO NOT AGREE THAT PRETEXT CAN BE

19  INSTRUCTED ON WITH RESPECT TO THE ISSUE OF -- OF GENUINE

20  PRODUCT IMPROVEMENTS.  AND I'VE EXPRESSED THAT POSITION

21  YESTERDAY.

22         **THE COURT:**  WELL, I DON'T KNOW HOW ELSE TO EXPLAIN TO

23  THE JURY WHAT THEY'RE BEING TOLD TO DO.

24     THE WHOLE POINT OF THESE INSTRUCTIONS IS TO GIVE THEM A

25  FRAMEWORK TO UNDERSTAND WHAT THEY CAN CONSIDER FOR WHAT

1   PURPOSE AND WHAT THEY SHOULD NOT BE DOING.  THAT'S THE LINE

2   I'M TRYING TO DRAW FOR THEM.

3          **MR. ISAACSON:**  I UNDERSTAND THAT'S THE LINE THE COURT

4   IS TRYING TO DRAW, AND I -- I UNDERSTAND WHY THE LANGUAGE

5   YOU'RE PROPOSING WOULD ACHIEVE THAT.  WE'RE JUST RESERVING OUR

6   OBJECTION THAT PRETEXT SHOULD NOT GO TO THE JURY.  AND I'VE

7   EXPLAINED THE REASONS FOR THAT YESTERDAY BASED ON THE CASE

8   LAW.

9          **THE COURT:**  THE ISSUE OF BALANCING -- THE WAY I

10  UNDERSTOOD THE CONCERN WITH BALANCING WAS THAT THE PROBLEM WAS

11  IN THE JURY -- THE JURY IS NOT TO BALANCE THE POTENTIAL

12  COMPETITIVE EFFECTS IN DECIDING -- IN DETERMINING THE QUESTION

13  OF GENUINE PRODUCT IMPROVEMENT.  THAT'S HOW I UNDERSTOOD IT.

14  BECAUSE THE COMPETITIVE EFFECTS ARE NOT, IN SOME WAYS, THE

15  PROBLEM.

16     BUT THE WAY THAT YOU'VE STRUCTURED THIS, IT SAYS "IF YOU

17  DECIDE."  IF YOU DECIDE THAT ITUNES 7.0 AND 7.4 WERE GENUINE

18  PRODUCT IMPROVEMENTS, THEN YOU CANNOT BALANCE THE EVIDENCE.  I

19  DON'T QUITE UNDERSTAND WHAT YOU MEAN, MR. ISAACSON, BECAUSE --

20  BECAUSE I UNDERSTOOD IT TO BE --

21         **MR. ISAACSON:**  I UNDERSTAND YOUR -- I ACTUALLY AGREE

22  WITH YOUR POINT, YOUR HONOR.  WE WERE ACTUALLY TRYING TO -- WE

23  WERE PAYING ATTENTION TO THE TRANSCRIPT AT THIS POINT AND

24  TRYING TO ADHERE TO LANGUAGE THAT YOUR HONOR HAD SAID.  AND I

25  THINK YOU'RE CORRECT IN THAT THIS WOULD BE BETTER READ IN

1    SAYING "IN DECIDING WHETHER ITUNES 7.0 OR 7.4 WERE GENUINE

2    PRODUCT IMPROVEMENTS, YOU SHOULD NOT BALANCE."

3            **THE COURT:**  CHIME IN IF YOU WANT TO, MS. SWEENEY.

4            **MS. SWEENEY:**  I DON'T HAVE APPLE'S PROPOSED

5    INSTRUCTION IN FRONT OF ME, BUT I --

6            **THE COURT:**  DOES SOMEBODY HAVE AN EXTRA COPY?

7            **MR. ISAACSON:**  YES.

8            **MS. SWEENEY:**  THANK YOU VERY MUCH.

9            **THE COURT:**  THE SENTENCE I WAS TALKING ABOUT IS AT

10   LINE 15.

11           **MS. SWEENEY:**  YES.  I AGREE WITH YOUR HONOR'S

12   INTERPRETATION OF THE LAW ON THAT POINT, YOUR HONOR.  I THINK

13   THIS LAST SENTENCE DOESN'T ACCURATELY REFLECT THE *ALLIED*

14   DECISION.

15           **THE COURT:**  ALL RIGHT.  SO I THINK WHAT I AM GOING TO

16   DO IS -- I'LL PUT IT TOGETHER AND I'LL -- AND I WILL SEND YOU

17   A COPY BEFORE I USE IT.  BUT I THINK I'M GOING TO START WITH

18   PARAGRAPH 1 OF PLAINTIFFS' AS I'VE RESTRUCTURED IT.

19       I AM NOT GOING TO GET INTO THE KVC AND THE DVC.  WE'RE

20   JUST -- I'M GOING TO LEAVE IT VERY SIMPLE FOR THEM BECAUSE

21   THEY HAVEN'T HEARD ANY EVIDENCE YET.  BUT WHAT THAT DOES IS IT

22   SETS THE FRAMEWORK OF WHAT THE PLAINTIFFS ARE ALLEGING.  THEN

23   MOVE OVER TO APPLE'S WHERE IT TALKS PRETTY SIMPLY ABOUT WHAT

24   THE FRAMEWORK OF THE LAW IS.

25       I AM NOT GOING TO -- THE CLAUSE AT LINE 10, I'M NOT GOING

1   TO GET INTO THAT BECAUSE IT'S ACTUALLY AMBIGUOUS.  CHANGES --

2   7.0 AND 7.4 DIDN'T HAPPEN OVERNIGHT.  THINGS WERE CHANGING IN

3   THAT INTERIM PERIOD.  IT JUST SEEMS TO ME TO BE SIMPLER TO SAY

4   THE PLATFORM ISSUES, THE INTEGRATION, THAT'S NOT AT ISSUE,

5   PERIOD, END OF STORY.  YOU CAN EXPLAIN IT MORE LATER IF YOU

6   WANT, MR. ISAACSON.

7       AND THEN -- AND THEN FINISH OFF WITH THE FINAL PARAGRAPH

8   THAT INCLUDES THE ISSUE OF PRETEXT, WHICH YOU THINK IS

9   IMPORTANT FOR THEM TO UNDERSTAND THE FULL CONTEXT OF HOW THIS

10  CASE IS GETTING TRIED AND WHAT THEY ARE NOT ALLOWED TO DO IN

11  TERMS OF DECIDING WHETHER THOSE UPDATES WERE PRODUCT

12  IMPROVEMENTS.

13      **MR. ISAACSON:**  YOUR HONOR, WITH THE -- I TAKE YOUR

14  POINT ABOUT "CHANGES."  HOWEVER -- AND MAYBE "UPDATES" WOULD

15  BE A BETTER WORD.  BUT -- BECAUSE OTHERWISE YOU'RE LEAVING --

16  YOU'RE NOT TELLING THE JURY THAT WHEN THEY HEAR 4.7 OR OTHER

17  UPDATES THAT THOSE HAVE BEEN DETERMINED TO BE LEGAL.

18      **THE COURT:**  WELL, I WOULD -- IF IT'S "UPDATES," I

19  WOULD DO THAT.

20      **MR. ISAACSON:**  THAT -- THAT WOULD BE --

21      **THE COURT:**  BECAUSE THAT --

22      **MR. ISAACSON:**  THAT WAS OUR INTENTION.

23      **THE COURT:**  -- ORIGINALLY THE CONCERN WAS 4.7.

24      **MR. ISAACSON:**  YES.

25      **THE COURT:**  BUT "CHANGES" IS DIFFERENT FROM AN

1    UPDATE.  SO "UPDATE" I'M WILLING TO DO.

2        ALL RIGHT.

3        SO THIS IS WHAT I'VE ALSO DECIDED.  I'M NOT GOING TO

4    BIFURCATE.  I'M GOING TO LET THE PLAINTIFFS TRY THEIR CASE.

5    BUT WHAT I AM GOING TO DO -- AND I DON'T GENERALLY DO IT, WE

6    AS JUDGES RARELY DO IT -- BUT I'M GOING TO GIVE THE JURY THE

7    PREINSTRUCTIONS THAT THEY'RE RECEIVING FOR THEIR BINDERS.  AND

8    I'M GOING TO DO THAT SO THAT THEY CAN ALWAYS GO BACK AND

9    REFERENCE THEM IF THEY NEED TO.  AND THEY CAN ALWAYS HAVE THE

10   FRAMEWORK AVAILABLE TO THEM TO REMIND THEMSELVES HOW THEY ARE

11   SUPPOSED TO BE THINKING ABOUT THE EVIDENCE.

12       IT IS ONE THING FOR ME TO TELL THEM UPFRONT WHAT THEY'RE

13   SUPPOSED TO DO, BUT THEY WILL HAVE NO CONTEXT.  THEY WILL HAVE

14   HEARD NO EVIDENCE.  THEY WILL -- WE'RE GOING TO BE GIVING THEM

15   SO MUCH INFORMATION, IT'S GOING TO BE OVERWHELMING.  AND I

16   WILL NOT BE SATISFIED, I THINK, THAT THEY WILL BE ABLE TO DO

17   THEIR JOB PROPERLY IF THEY DON'T HAVE THESE RULES HANDY FOR

18   THEM WHEN THEY ARE HEARING THE EVIDENCE.

19       AND IF NECESSARY, AND IF I THINK THAT THERE HAVE BEEN

20   INAPPROPRIATE QUESTIONS LODGED OR ASKED OR THAT CROSS THE

21   LINE, THEN I CAN REMIND THEM.  YOU KNOW, I STRIKE THE QUESTION

22   AND I'LL SAY TO THEM, "GO BACK.  I TOLD YOU IN THOSE

23   INSTRUCTIONS THIS IS WHAT YOU'RE SUPPOSED TO DO.  AND YOU HAVE

24   THEM IN YOUR BINDER."  AND THAT WAY THEY HAVE FREQUENT AND

25   EASY ACCESS TO THEM.

 1          LIKE I SAID, I TYPICALLY DON'T GIVE THEM THE

 2    PREINSTRUCTIONS, BUT I THINK IN THIS CASE, IT'S APPROPRIATE TO

 3    HAVE -- FOR THEM TO HAVE COPIES OF THE ENTIRE PACKET.  SO

 4    THAT'S WHAT THEY WILL BE GIVEN.

 5          I WILL SEND YOU -- WE'LL HAVE TO COMPLETE THE PACKETS IN

 6    ADVANCE, AND THEN I'LL SEND YOU COPIES.  IF YOU SEE ANY

 7    PROBLEMS WITH THEM, YOU CAN LET US KNOW.

 8          **MR. ISAACSON:**  I HAD ONE MORE SUGGESTION ABOUT THE

 9    INSTRUCTION, YOUR HONOR.  IT'S JUST ABOUT THE ORDER OF IT.

10    RIGHT NOW IT'S NO. 17.  I BELIEVE NO. 4 RIGHT NOW IS THE

11    SUMMARY OF THE CASE THAT THE PARTIES AGREED TO.  THIS WOULD

12    LOGICALLY FOLLOW THAT.

13          **THE COURT:**  YEAH, WELL, THE OTHER THING THAT I MIGHT

14    DO, I HAVE -- I SHOULD TO GO BACK -- I DON'T HAVE IT IN FRONT

15    OF ME.  WE'RE SCHEDULED TO MEET ON FRIDAY.  BEFORE FRIDAY, I

16    WILL TAKE A LOOK AT THE WHOLE CONTEXT.  WHAT I -- ANY

17    PERSPECTIVES ON WHETHER YOU WANT ME -- THERE -- THERE ARE TWO

18    WAYS TO DO IT.  ONE IS I CAN INSTRUCT THEM IN ADVANCE, AND

19    THEN YOU CAN GIVE YOUR OPENINGS.  OR I CAN INSTRUCT THEM ON

20    THE BASICS, YOU CAN GIVE YOUR OPENINGS, AND THEN I CAN

21    INSTRUCT THEM ON THE SPECIFICS OF THIS PARTICULAR FRAMEWORK.

22          I MAY EVEN IN THE CONTEXT OF -- LIKE I SAID, I HAVE TO GO

23    BACK AND LOOK AT THEM, BUT THERE ARE VERY GENERIC

24    INSTRUCTIONS.  I WANT TO BE ABLE TO GIVE THEM THIS INSTRUCTION

25    WHEN IT'S GOING TO HAVE THE MOST IMPACT.

1      MR. COUGHLIN, ARE YOU DOING THE OPENING?

2          **MR. COUGHLIN:**  NO, YOUR HONOR.  I'M NOT DOING THE

3  OPENING, BUT I HAVE AN OPINION ABOUT WHAT YOU JUST SAID.

4          **THE COURT:**  WELL, MR. COUGHLIN, THEN YOU'RE GOING TO

5  HAVE TO SIT DOWN.

6          **MR. COUGHLIN:**  OKAY.

7          **THE COURT:**  BECAUSE MS. SWEENEY IS THE ONE THAT'S UP

8  HERE.  YOU DON'T GET TO DOUBLE-TEAM UNLESS IT'S YOUR ISSUE.

9  YOU CAN PASS HER A NOTE, THOUGH.

10     MR. ISAACSON?

11         **MR. ISAACSON:**  I DON'T FEEL STRONGLY ABOUT IT.  I

12  THINK DURING THE OPENINGS IT'S APPROPRIATE TO MAKE OCCASIONAL

13  REFERENCE TO THE INSTRUCTIONS THAT HAVE BEEN GIVEN, AND THAT'S

14  A LITTLE BIT EASIER DONE IF THEY'VE ALREADY BEEN GIVEN AS

15  OPPOSED TO "YOU WILL HEAR FROM THE COURT."  BUT OTHERWISE, I

16  DON'T HAVE A STRONG FEELING ONE WAY OR THE OTHER.

17         **MS. SWEENEY:**  I ALSO DON'T HAVE A STRONG OPINION,

18  YOUR HONOR.

19     ALTHOUGH I THINK MY COLLEAGUE DOES.

20         **MS. SWEENEY:**  I DO, YOUR HONOR.

21         **THE COURT:**  IT MUST NOT BE STRONG ENOUGH BECAUSE HE

22  DIDN'T WRITE IT DOWN.

23     OKAY.

24     ANYTHING ELSE YOU WANT TO SAY ON THESE INSTRUCTIONS FOR

25  THE MOMENT?

1          **MS. SWEENEY:**  NO, YOUR HONOR.

2          **THE COURT:**  OKAY.  HOW ARE WE DOING ON OUR JURY?

3                (OFF-THE-RECORD DISCUSSION.)

4          **THE COURT:**  OKAY.  SO I AM TOLD THAT OF THE 44 WHO

5    WERE SUPPOSED TO SHOW UP TODAY, 36 SHOWED UP.  SO THEY'RE

6    APPARENTLY MAKING COPIES OF THE QUESTIONNAIRES, AND AS SOON AS

7    WE GET THEM, WE'LL GIVE THEM TO YOU.

8       SIR.

9          **MR. COUGHLIN:**  YOUR HONOR, I AM GOING TO DO THE VOIR

10   DIRE.  SO I -- ONE THING IS WHEN WE FIRST TALKED, I THOUGHT

11   THAT -- I UNDERSTAND YOU'RE GOING TO SIT 18 UP HERE, BUT I

12   THOUGHT YOU WERE GOING TO SIT ANOTHER SIX SO WE COULD KNOW

13   WHERE THE FIRST 24 WERE.

14         **THE COURT:**  NO.

15         **MR. COUGHLIN:**  IN THE FIRST ROW.  NO.  JUST 18?

16         **THE COURT:**  EIGHTEEN.

17         **MR. COUGHLIN:**  DONE.

18         **THE COURT:**  AND I'M ONLY GOING TO SEAT EIGHT RATHER

19   THAN NINE.

20         **MR. COUGHLIN:**  I SAW THAT.  THANK YOU.

21         **THE COURT:**  WHOEVER IS IN CHARGE OF TECHNOLOGY, I

22   NEED THAT SCREEN PUT DOWN BECAUSE I CAN'T SEE THE JURORS.

23                (OFF-THE-RECORD DISCUSSION.)

24         **THE COURT:**  JUST SO THAT YOU KNOW, WHAT I WILL DO IS

25   THE JURY WILL COME IN, WE'LL CHECK THEM IN.  ONCE I COME IN,

```
1    WE'LL SWEAR THE PANEL.  AND THEN I'LL HAVE A NUMBER OF THINGS
2    TO SAY TO THEM.  ONCE I GET THROUGH MY PRELIMINARY REMARKS, I
3    WILL THEN HAVE YOU EACH INTRODUCE YOURSELVES AND YOUR TEAMS
4    AND YOUR REPRESENTATIVE.
5         OKAY?  SO IT'S A TOUGH JOB, IT'S RAINING OUTSIDE.  IT'S
6    ALWAYS TOUGH FOR A JUDGE WHEN PEOPLE ARE GRUMPY THAT THEY HAD
7    TO GO THROUGH THE RAIN TO GET HERE.
8         OH, ONE OTHER THOUGHT.  JUST SO THAT YOU KNOW AS WELL.
9    ONE OF THE 44 -- I DON'T KNOW IF HE SHOWED UP OR NOT -- IS A
10   PARTNER AT COOLEY WHERE I WAS FORMERLY A PARTNER.  NEVER
11   WORKED ON A CASE.  I ACTUALLY HAD TO LOOK UP HIS PICTURE
12   BECAUSE I COULDN'T REMEMBER HIM.
13        MR. COUGHLIN:  MR. TETER?  TIM TETER?
14        THE COURT:  MR. TETER.  HAVE ANY OF YOU WORKED WITH
15   MR. TETER?
16        MR. ISAACSON:  I HAVE -- NOBODY ON OUR TEAM.
17   HE HAS REPRESENTED APPLE IN CASES.
18        THE COURT:  HE HAS REPRESENTED APPLE?
19        MR. ISAACSON:  YES.
20        THE COURT:  SO.
21        MR. COUGHLIN:  I'D HAVE TO GO FOR CAUSE, YOUR HONOR.
22        THE COURT:  YES.  SO I -- GIVEN THAT, IF HE SHOWS UP,
23   I MIGHT DEAL WITH HIM ON THE EARLIER SIDE.  I DON'T KNOW IF
24   HE'S IN THE SET OF -- OF THE FIRST 18.  BUT REGARDLESS, IF
25   HE'S REPRESENTED APPLE, THEN --
```

```
1              MR. ISAACSON:  UNDERSTOOD.

2              THE COURT:  -- HE SHOULD BE EXCUSED FOR CAUSE, IT

3     SEEMS TO ME.

4              MR. COUGHLIN:  UNDERSTAND, YOUR HONOR.

5              THE COURT:  ANY OTHERS THAT YOU SAW THAT YOU HAVE --

6     THAT PEOPLE KNEW ON YOUR TEAMS OR ANYTHING LIKE THAT?

7              MR. ISAACSON:  THERE WAS NOTHING LIKE THAT THAT WE

8     SAW.

9              MR. COUGHLIN:  YOUR HONOR, I -- THERE'S ANOTHER

10    ATTORNEY, KEN KECSKES, K-E-E-S-K-E-S (SIC), WHO WORKS AT

11    HOLLAND & KNIGHT.  WE DID A CHECK.  THEY'VE BEEN ON THE OTHER

12    SIDE OF JUST A FEW CASES OF US.  COOLEY WAS ON THE OTHER SIDE

13    OF A HUNDRED WHILE MR. TETER -- I MEAN -- WHERE TIM WAS --

14             THE COURT:  I WAS ACTUALLY --

15             MR. COUGHLIN:  I DON'T THINK THAT'S A CONFLICT --

16             THE COURT:  -- I WAS ACTUALLY LOOKING FORWARD TO

17    HAVING HIM UNDER OATH AND ASKING HIM ABOUT HIS BIO, BUT I

18    THINK WE CAN PASS.

19             MR. COUGHLIN:  SO I DON'T KNOW IF THAT'S A -- I GUESS

20    I CAN TALK TO KEN KESCKES ABOUT --

21             THE COURT:  WELL, I WILL TALK TO HIM ABOUT IT.

22             MR. COUGHLIN:  OKAY.

23             MR. ISAACSON:  AND WE DON'T MIND IF HE'S -- I MEAN,

24    WE'RE TRYING TO AVOID ISSUES LIKE THIS.  IF WE WANT TO SEND

25    HIM HOME EARLY, THAT'S NOT GOING TO BE AN ISSUE FOR US.
```

```
 1              THE COURT:  OKAY.  WELL, LET'S SEE WHERE HE FALLS ON
 2    THE LIST, AND THEN WE'LL DEAL.  BUT I DID MAKE THAT ONE NOTE,
 3    GIVEN THAT THAT USED TO BE THE FIRM WHERE I PRACTICED.  SO --
 4              MR. ISAACSON:  LOGISTICS QUESTIONS.  IN TERMS OF THE
 5    PEREMPTORIES, THE JURY IS IN THE ROOM, OUT OF THE ROOM?
 6              THE COURT:  OH, NO, THEY'RE OUT OF THE ROOM.
 7              MR. ISAACSON:  OKAY.
 8              THE COURT:  OUT OF THE ROOM.
 9              MR. ISAACSON:  ALL RIGHT.  AND SO WE HAVE THE PIECE
10    OF PAPER FOR THAT.  DO WE JUST --
11              THE COURT:  SO, NO.  WHAT WILL HAPPEN IS THE JURY
12    WILL BE OUT OF THE ROOM.  I'LL GIVE YOU JUST A COUPLE MINUTES.
13    AND THEN I WILL SAY, "MR. COUGHLIN, WE'LL START WITH YOU."
14              MR. COUGHLIN:  BACK AND FORTH.
15              THE COURT:  BACK AND FORTH.
16              MR. COUGHLIN:  RIGHT.
17              THE COURT:  AND WE JUST GO BACK AND FORTH UNTIL WE'RE
18    DONE.
19              MR. ISAACSON:  ALL RIGHT.  AND IS A PARTY PERMITTED
20    TO PASS?
21              THE COURT:  YES.  SO THE WAY THE PASSING WORKS IS.
22    AT LEAST IN -- I WAS ACTUALLY SURPRISED THAT SOME JUDGES SAY
23    ONCE YOU'VE PASSED, YOU'RE DONE.  IT'S A LITTLE BIT --
24              MR. ISAACSON:  THAT'S WHY WE ASKED.
25              THE COURT:  -- HARSH.
```

```
 1           MR. COUGHLIN:  I'VE FOUND IT ABOUT 50/50, ONCE YOU

 2   PASS YOU'RE DONE IN A LOT OF --

 3           THE COURT:  YEAH.  NO, I DON'T DO THAT.  I DON'T --

 4   BECAUSE IT CHANGES, RIGHT?  THE -- THE NATURE OF THE EIGHT

 5   CHANGES.  SO IF YOU'RE HAPPY WITH THE FIRST EIGHT, AND THEN

 6   THEY'VE STRUCK SOMETHING THAT ALLOWS YOU TO CHANGE YOUR

 7   THOUGHT PROCESS, THEN MY VIEW IS YOU SHOULD BE ABLE TO HAVE

 8   ANOTHER GO AT IT.

 9        SO THE ONLY TIME THAT WE STOP IS WHEN I HAVE TWO PASSES,

10   TWO CONSECUTIVE PASSES, I'VE GOT MY JURY.  OR YOU'RE OUT OF

11   CHALLENGES AND THEN IT'S JUST FOR CAUSE.

12        SO IF WE GET DOWN TO THE WIRE, WHERE I'VE STRUCK PEOPLE

13   AND I'M BRINGING THEM UP ONE AT A TIME, THEN I'LL PROBABLY

14   MEET AT SIDEBAR SO THAT I DON'T HAVE TO DEAL WITH FOR-CAUSE

15   CHALLENGES SO THAT I DON'T HAVE TO HAVE EVERYBODY LEAVE THE

16   COURTROOM.

17        DURING THE BREAKS -- AND YOU SHOULD UNDERSTAND I DO NOT

18   TAKE VERY MANY BREAKS SO GO TO THE RESTROOM NOW -- BUT YOU

19   WILL BE ALLOWED, WHEN WE HAVE A BREAK, ATTORNEYS CAN USE THE

20   RESTROOM IN THE JURY ROOM SO THAT YOU'RE NOT IN THE -- IN THE

21   BATHROOMS WITH THE JURORS.  SO THEY'LL BE OUT IN THE PUBLIC

22   HALL.  YOU GUYS CAN USE THESE ONES.  YOU CANNOT LEAVE THAT

23   JURY ROOM.  THERE'S TWO BATHROOMS IN THERE.  THAT'S A SECURED

24   COURTROOM.  OKAY.  OR IT'S A SECURED HALLWAY.

25        OTHER LOGISTICAL QUESTIONS?
```

```
 1          MR. ISAACSON:  YES.  SO WHEN WE DO THE VOIR DIRE, IF

 2   WE ASK -- YOU KNOW, WE WILL ASK A QUESTION LIKE "DO YOU HAVE

 3   STRONG NEGATIVE OPINIONS ABOUT APPLE?"  SOMEONE RAISES THEIR

 4   HAND.  DO WE THEN DISCUSS THAT IN FRONT OF THE FULL PANEL?

 5          THE COURT:  YOU WILL.  SAY -- BUT -- BUT I WILL BE

 6   DOING THAT, TOO.  I MEAN, THAT'S ON THEIR QUESTIONNAIRE.

 7          MR. ISAACSON:  I --

 8          THE COURT:  IF THEY'VE IDENTIFIED IT ON THEIR

 9   QUESTIONNAIRE, THAT'S SOMETHING THAT I WILL DISCUSS WITH THEM.

10   I DON'T HAVE ANY INTEREST IN HAVING A JURY THAT'S NOT GOING TO

11   BE FAIR TO BOTH SIDES.

12          MR. ISAACSON:  NO.  I'M -- IN TERMS OF AIRING OUT

13   NEGATIVE OPINIONS IN FRONT OF THE REST OF THE PANEL.

14          THE COURT:  NO.  WE DO IT -- WE DO IT ALL THE TIME,

15   MR. ISAACSON.  YOU SHOULD SEE US IN CRIMINAL TRIALS.  IT'S A

16   WHOLE DIFFERENT BALL OF WAX, AS THEY SAY.  WE HAVE TO DO IT.

17   I MEAN, I HAVE -- I HAVE PEOPLE SAY, YOU KNOW, "I THINK

18   DEFENDANTS SHOULD GO TO JAIL AUTOMATICALLY."

19       I SAID, "OKAY.  WELL, LET ME ASK THE COURTROOM.  HOW MANY

20   OF YOU THINK I SHOULD SEND THIS PERSON TO JAIL RIGHT NOW, NO

21   TRIAL?  RIGHT NOW RAISE YOUR HAND."

22       AND THEY'RE ACTUALLY GENERALLY VERY SHOCKED THAT I WOULD

23   SAY THAT, AND THAT'S THE -- THAT'S MY JOB, TO MAKE SURE THAT

24   THEY'RE SHOCKED, TO UNDERSTAND THAT WE HAVE A PROCESS IN

25   PLACE.  SO --
```

1          MR. ISAACSON:  IT'S A GOOD QUESTION TO ASK.

2          THE COURT:  IF PEOPLE FEEL THAT WAY, I WILL PUSH

3     BACK.  IF I THINK THAT THEY'RE BEGINNING TO INFECT THE JURY,

4     THEN I WILL TELL THEM THAT I WILL TALK TO THEM LATER IN

5     PRIVATE AND I'LL MOVE ON.  I'VE DONE THIS ENOUGH THAT I CAN

6     GENERALLY GET A SENSE OF WHO MY PROBLEM CASES ARE.

7          MR. ISAACSON:  ALL RIGHT.  WE JUST WANTED TO GET A

8     FEEL FOR HOW YOU HANDLED IT.

9          THE COURT:  OKAY.  OTHER QUESTIONS?

10         MR. COUGHLIN:  NO, YOUR HONOR.  SO AS I UNDERSTAND

11    IT, THEN, BECAUSE THOSE QUESTIONS -- THE QUESTIONNAIRE THAT

12    THEY'RE FILLING OUT, THEY HAVE, I GUESS, FIVE -- THEY'RE ASKED

13    ABOUT FIVE STRONG FEELINGS.  AND IF -- IF SOMEBODY HAS A

14    STRONG FEELING, ARE YOU GOING TO INQUIRE ABOUT THAT --

15         THE COURT:  ABSOLUTELY.

16         MR. COUGHLIN:  -- ABOUT THAT FIRST?

17         THE COURT:  ABSOLUTELY.  YOU DON'T HAVE THAT MUCH

18    TIME.

19         MR. COUGHLIN:  NO.  AND I'M -- IF I'M QUESTIONING,

20    WILL YOU BE JUMPING IN AND ASKING A FOLLOW-UP QUESTION IF

21    SOMEBODY SAYS SOMETHING?

22         THE COURT:  NO.

23         MR. COUGHLIN:  I JUST WANT TO KNOW IF IT COUNTS

24    AGAINST MY TIME IF YOU JUMPED IN.  OKAY.

25         THE COURT:  THE OTHER THING IS BECAUSE YOU HAVE A

1    LIMITED AMOUNT OF TIME, I WILL GIVE YOU A WARNING WHEN YOUR

2    TIME IS UP.  IF I THINK THAT YOU'RE REALLY IN THE MIDST OF AN

3    IMPORTANT VOIR DIRE DIALOGUE, AND GIVE YOU EXTRA TIME, I WILL

4    GIVE THE OTHER SIDE THE SAME AMOUNT OF EXTRA TIME.

5         **MR. COUGHLIN:**  UNDERSTAND.

6         **THE COURT:**  OKAY.  OTHER QUESTIONS?

7         **MR. ISAACSON:**  THAT'S IT, YOUR HONOR.

8         **THE COURT:**  ALL RIGHT.  WE'LL STAND IN RECESS UNTIL

9    THE JURY GETS HERE.  IF YOU HAVE ANY ISSUES, LET MY COURT

10   DEPUTY KNOW.

11        (RECESS TAKEN AT 9:23 A.M.)

12

13

14             (CONTINUED NEXT PAGE; NOTHING OMITTED.)

15

16

17

18

19

20

21

22

23

24

25

```
1              (ROLL TAKEN OF ENTIRE VENIRE.)

2              (PAUSE IN THE PROCEEDINGS.)

3         THE CLERK:  THE FIRST THING I NEED TO DO IS CALL 18

4    OF YOU UP INTO THE BOX.  AND I'M GOING TO SHOW YOU WHERE THE

5    FIRST PERSON SITS.

6         THE FIRST NAME, COME WAY BACK HERE IN THE CORNER INTO THIS

7    CHAIR, NUMBER 1.  THE NEXT NAME MOVES HERE.  AND I'LL HELP

8    YOU.  THE NEXT NAME YOU MOVE CROSS THE BACK -- THE FRONT LIKE

9    THAT.  THE FIRST PERSONS COME SIT HERE, AND THEN I WILL CALL

10   THE REST OF THE NAMES.

11        RICHARD BARRIOS, B-A-R-R-I-O-S.

12        THEN WAY BACK IN THAT CORNER THERE.

13        OKAY.  THE NEXT LOIS DUMOULIN.  AM I SAYING YOUR NAME

14   RIGHT?

15             PROSPECTIVE JUROR:  DUMOULIN.

16             THE CLERK:  I MADE IT TOO FANCY.

17        LOIS DUMOULIN, D-U-M-O-U-L-I-N.

18        AND THEN YOU'RE RIGHT NEXT TO HIM RIGHT THERE.

19        JERRY KAAKE, K-A-A-K-E.  AND YOU WILL BE THE FIRST ONE IN

20   THE FRONT ROW OF THE BOX HERE.

21        KENNETH KECSKES, K-E-C-S-K-E-S.

22        DAVID KENNEDY, K-E-N-N-E-D-Y.

23        JEANIE LOCKLEAR, L-O-C-K-L-E-A-R.

24        SEAN MCCULLY, M-C-C-U-L-L-Y.

25        JOHN OVALLE.
```

```
 1              PROSPECTIVE JUROR:  OVALLE.

 2              THE CLERK:  OKAY.  O-V-A-L-L-E.

 3         STEVEN PITTS, P-I-T-T-S.

 4         THE NEXT PERSON, YOU ARE GOING TO COME WAY DOWN IN THE

 5    RIGHT CORNER OVER HERE IN THE BACK THERE.

 6         SHANTI RATTIA, R-A-T-T-I-A.

 7         THAT'S A GOOD WAY TO GET AROUND THE EQUIPMENT THERE.

 8         ALOK SHARMA, S-H-A-R-M-A.

 9         KATHY SPRAGUE S-P-R-A-G-U-E.

10         JAMES VICTORIA, V-I-C-T-O-R-I-A.

11         TIMOTHY WELCH, W-E-L-C-H.

12         JEROME WIEGERT, W-I-E-G-E-R-T.

13         MARY ANN WRIGHT.  W-R-I-G-H-T.

14         MITCHELL YOUNG, Y-O-U-N-G.

15         CARMEN ZEPEDA, Z-E-P-E-D-A.

16         (PROCEEDINGS HELD IN THE PRESENCE OF THE COURT, COUNSEL,

17    AND PROSPECTIVE JURORS.)

18              THE CLERK:  ALL RISE.  COURT IS IN SESSION.  THE

19    HONORABLE YVONNE GONZALEZ ROGERS PRESIDING.

20              THE COURT:  GOOD MORNING, EVERYONE.

21              EVERYONE:  GOOD MORNING.

22              THE COURT:  A LITTLE LUKEWARM.  WE'LL TALK ABOUT THAT

23    IN A MINUTE.

24         YOU HAVE ALL BEEN CALLED AS PROSPECTIVE JURORS IN THE CASE

25    OF THE APPLE IPOD ITUNES ANTITRUST LITIGATION CASE.  THIS IS
```

CASE NUMBER 05-37.

YOU WILL NOW BE SWORN.

(PROSPECTIVE JURORS SWORN.)

**EVERYONE:** I DO.

**THE CLERK:** YOU MAY BE SEATED.  COUNSEL MAY BE SEATED ALSO.

**THE COURT:** WELL, I TAKE IT BY THAT RATHER LUKEWARM GOOD MORNING THAT NO ONE WAS VERY EXCITED TO GET THE NOTICE ADVISING YOU THAT YOU WERE BEING SUMMONED TO COME INTO COURT FOR A MEDIUM-LENGTH TRIAL.  I UNDERSTAND THAT.  I UNDERSTAND YOU ARE NOT HERE VOLUNTARILY.

SO LET ME BEGIN BY THANKING YOU FOR HONORING YOUR CITIZENSHIP.  THAT IS WHAT YOU'VE DONE.

THE RIGHT TO A TRIAL BY JURY IS GUARANTEED TO EACH AND EVERY ONE OF US BY THE CONSTITUTION, BUT THAT RIGHT IS A HOLLOW RIGHT IF INDIVIDUALS, SUCH AS YOURSELVES, DO NOT APPEAR WHEN SUMMONED.  SO, AGAIN, I THANK YOU.

I WANT TO FIRST ASK, CAN EVERYONE HERE ME?  WE DO HAVE LISTENING DEVICES IF YOU NEED THEM.

I WOULD LIKE TO THINK THAT OUR RIGHT TO A TRIAL BY JURY IS ONE OF OUR MOST CHERISHED RIGHTS.  I WAS WORKING WITH MY SON YESTERDAY WHO IS TAKING HIS EIGHTH GRADE TEST ON THE CONSTITUTION TODAY.  SO WE WENT THROUGH WHERE DO YOU -- WHERE IS THAT RIGHT?  DOES ANYBODY REMEMBER WHICH AMENDMENTS IT IS?  THE SIXTH AMENDMENT AND THE SEVENTH AMENDMENT, SIXTH FOR

CRIMINAL, SEVENTH FOR CIVIL.

    I KEEP WITH ME UP HERE THIS WORN COPY OF THE CONSTITUTION AS A CONSTANT REMINDER THAT EVERY DAY IN THIS COURTHOUSE AND IN COURTHOUSES ACROSS THIS COUNTRY THE RIGHTS THAT WERE ARTICULATED HUNDREDS OF YEARS AGO ARE KEPT SAFE AND ARE PROMOTED.

    I THINK EVERY WEEK WE CAN PROBABLY PICK UP A NEWSPAPER, READ THE INTERNATIONAL SECTION, AND DETERMINE THAT THE RIGHT TO A TRIAL BY JURY IS NOT GUARANTEED TO OTHER PEOPLE IN EVERY OTHER COUNTRY.  DEMOCRACY THERE DOES NOT GOVERN, BUT DEMOCRACY REQUIRES PARTICIPATION.  SO EVERY YEAR YOU MAY BE ASKED TO SERVE, TO ENGAGE IN YOUR DEMOCRACY.

    WE REAP THE BENEFITS OF LIVING IN THIS GREAT COUNTRY AND, FRANKLY, SOMETIMES I THINK WE TAKE THEM FOR GRANTED THOSE RIGHTS, THOSE PROTECTIONS.  OUR COUNTRY DOES NOT ASK TOO MUCH OF US, BUT ONCE IN A WHILE WE DO.

    YOU ALL, AS CITIZENS, ENJOY, YOU MAY NOT THINK IT, BUT YOU DO, IN FACT, ENJOY THE RIGHT TO SERVE AS A JUROR.  THAT RIGHT CANNOT BE DENIED TO YOU ON THE BASIS OF RELIGION, OR GENDER, NATIONAL ORIGIN, SEXUAL ORIENTATION, OR ECONOMIC STATUS.  YOU ALL HAVE THOSE RIGHTS.  AND I WILL HAVE YOU RECALL THAT NOT SO LONG AGO IN OUR HISTORY MANY OF US IN THIS COURTROOM WERE NOT ALLOWED TO SERVE AS JURORS.  MYSELF INCLUDED.  THAT RIGHT WAS DENIED TO MANY OF US.  SO IT IS A RIGHT AND A PRIVILEGE THAT YOU ALL HAVE.

1      SO, AGAIN, I THANK YOU FOR BEING HERE.

2      I WANT TO FIRST SHARE WITH YOU JUST SOME GENERAL

3  INFORMATION ABOUT YOUR ROLES AS PROSPECTIVE JURORS.  THIS IS A

4  CIVIL CASE, AND IN A LITTLE WHILE, I WILL INTRODUCE THE

5  PARTIES AND TELL YOU A LITTLE BIT ABOUT IT.

6      BUT WHAT IS THE ROLE OF THE JUROR?  I HAVE LOOKED AT ALL

7  OF YOUR QUESTIONNAIRES, AND I CAN TELL NOT TOO MANY OF YOU

8  HAVE ACTUALLY SERVED.  RAISE YOUR HANDS IF YOU HAVE ACTUALLY

9  SERVED AND DELIBERATED IN A JURY ROOM.

10                    (HANDS RAISED).

11      SO NOT TOO MANY.  BUT IT IS THE DUTY OF THE JURORS TO

12  DETERMINE WHAT THE FACTS OF THE CASE ARE.  THERE IS A DISPUTE

13  HERE.  AND YOU DETERMINE THOSE FACTS BASED UPON THE EVIDENCE.

14  A JURY'S DECISION IS THEN EXPRESSED IN WHAT WE CALL A VERDICT.

15  AND MANY PEOPLE PROBABLY HEARD THAT WORD, BUT THAT'S HOW THE

16  JURY EXPRESSES ITS CONCLUSION.

17      JURORS ARE, IN A SENSE, THE SOLE JUDGES OF THE WEIGHT AND

18  EFFECT OF ALL OF THE EVIDENCE.  HOWEVER, THERE'S AN IMPORTANT

19  LIMITATION ON THE JURORS' POWER TO DETERMINE THE FACTS, AND

20  THAT IS THAT YOU MUST DO IT WITHIN AND IN CONFORMITY WITH THE

21  RULE OF LAW.  THAT IS WHERE THE ROLE OF THE JUDGE COMES IN.

22      IT IS MY JOB TO RULE ON QUESTIONS OF LAW AND TO EXPLAIN TO

23  YOU WHAT THE LAW IS WITH RESPECT TO THE DISPUTE SO THAT YOU

24  CAN RESOLVE THE FACTUAL DISPUTES IN THAT CONTEXT.  AT THE

25  BEGINNING OF THE CASE, DURING THE CASE, AND AT THE END OF THE

1    CASE IT IS MY JOB TO MAKE THOSE EXPLANATIONS TO YOU.

2        IT IS YOUR DUTY AS JURORS TO ACCEPT THOSE INSTRUCTIONS

3    WITHOUT RESERVATION.  YOU MUST DO THIS WHETHER YOU AGREE WITH

4    THE POLICY OF THE LAW OR NOT.

5        WHY IS THAT?  BECAUSE WE DON'T HAVE TRIALS BASED UPON THE

6    LAW OF EIGHT PEOPLE OR 12 PEOPLE, HOWEVER MANY I SEE.  OUR

7    LAWS ARE CREATED THROUGH A DEMOCRATIC PROCESS.  AND IT IS OUR

8    JOB AND OUR COLLECTIVE SOCIETY TO PRESERVE AND RESPECT THOSE

9    LAWS.

10        NOW, THE LAW -- THE ROLE OF THE LAWYERS ARE DIFFERENT.

11    WHO HAS SEEN PERRY MASON OR SOME LAW SHOW?  MY KIDS LOVE "MY

12    COUSIN VINNY".  IT'S THE GREATEST COURTROOM SCENE.  "A FEW

13    GOOD MEN".

14        LAWYERS OBJECT.  THEY ASK QUESTIONS.  THAT'S THEIR JOB.

15    IT IS THEIR JOB TO PRESENT THE EVIDENCE TO YOU WITHIN THE RULE

16    OF LAW AND WITHIN THE RULES OF THE CODE OF EVIDENCE.

17        BUT I CAN GUARANTEE YOU THEY WILL NOT EVER STAND UP HERE

18    AND TAKE AN OATH.  THEY DO NOT TELL YOU WHAT THE FACTS ARE.

19    THEY CANNOT TESTIFY.  THAT'S NOT THEIR JOB.  THEIR JOB IS TO

20    PRESENT EVIDENCE TO YOU.

21        AT THE END OF A TRIAL, ASSUMING EVERYBODY DOES HIS OR HER

22    JOB, WE'LL HAVE A FAIR AND IMPARTIAL WEIGHTING OF ALL THE

23    EVIDENCE WITHIN THE PRINCIPLES OF LAW ESTABLISHED BY AND

24    STATED TO YOU FROM THE JUDGE, AND THEN WE GET OUR VERDICT.

25        SO WHAT AM I LOOKING FOR?  I'M LOOKING FOR EIGHT JURORS.

```
1    LOOK AROUND.  MOST OF YOU WILL NOT BE WITH US.  I'M ONLY

2    LOOKING FOR EIGHT JURORS WHO CAN BE FAIR AND IMPARTIAL AND

3    AVAILABLE TO SERVE.

4        I'M GOING TO SHIFT GEARS NOW AND TELL YOU A LITTLE BIT

5    ABOUT THIS CASE AND ABOUT THE PARTIES WHO ARE GOING TO

6    PRESENT.

7        BEFORE I DO THAT, HAS ANYBODY HAD -- I HAVE NOW BEEN

8    TALKING FOR A LITTLE WHILE.  IS THERE ANY LANGUAGE ISSUE?  HAS

9    ANYONE NOT BEEN ABLE TO UNDERSTAND ENOUGH ENGLISH TO KNOW WHAT

10   I'VE SAID?

11       THE RECORD WILL REFLECT -- YES, MA'AM?  ARE YOU -- AND YOU

12   ARE A PERSPECTIVE JUROR?  NO.  OKAY.  DID.

13       YOU RAISE YOUR HAND?

14            PROSPECTIVE JUROR:  YES.

15            THE COURT:  OKAY.  SO DO YOU UNDERSTAND WHAT I'M

16   SAYING OR DO YOU HAVE A LANGUAGE PROBLEM?

17            PROSPECTIVE JUROR:  I HAVE A LANGUAGE PROBLEM.

18            THE COURT:  ALL RIGHT.  SO I WILL REMEMBER YOUR FACE

19   IN CASE YOU GET UP HERE.  ALL RIGHT.  WE WILL WAIT WITH YOU.

20       A FEW INTRODUCTIONS.  LET'S START THERE.  WE WILL BEGIN

21   WITH THE PLAINTIFF.  MR. COUGHLIN, IF YOU WOULD LIKE TO

22   INTRODUCE YOURSELF.

23            MR. COUGHLIN:  GOOD MORNING, LADIES AND GENTLEMEN.

24   MY NAME IS PATRICK COUGHLIN, AND WITH ME ARE MY PARTNER BONNY

25   SWEENEY AND ALEXANDER BONNETT, AND MY CO-COUNSEL FRANK BALINT.
```

```
1    AND WE REPRESENT -- WE REPRESENT THE CLASS.  THIS IS A CLASS

2    ACTION, AND WE REPRESENT 800 MILLION PLUS CONSUMERS, PLUS

3    ABOUT 967 RESELLERS OR SOME BIG BOX STORES LIKE CIRCUIT CITY,

4    SOME SMALLER STORES THAT BOUGHT APPLE PRODUCTS FROM APPLE.

5    AND THAT'S WHO WE REPRESENT.

6         THANK YOU.

7              THE COURT:  MR. ISAACSON.

8          MR. ISAACSON:  IT'S A LONG WAY OVER.

9         I'M BILL ISAACSON.  I WILL BE REPRESENTING, ALONG WITH MY

10   COLLEAGUES, APPLE, AND DEFENDING AGAINST THIS CLASS ACTION.

11        MY COLLEAGUES, KAREN DUNN, MARTHA GOODMAN, MEREDITH

12   DEARBORN, AND SCOTT MURRAY IS HERE ON BEHALF OF APPLE.  WE

13   LOOK FORWARD TO TALKING TO YOU.

14             THE COURT:  OKAY.  I AM GOING TO ASK MY COURTROOM

15   DEPUTY, SHE'S GOING TO PUT A SCHEDULE UP IN FRONT OF YOU.

16        AS I SAID, I'M LOOKING FOR EIGHT JURORS.  JUST SO THAT YOU

17   UNDERSTAND THE TIMING OF THIS CASE, THIS IS GOING TO BE A

18   COMPLICATED, VERY INTERESTING CASE, BUT FOR A VARIETY OF

19   REASONS, I'M PICKING THE JURY TODAY BUT WE ARE ACTUALLY NOT

20   GOING TO BEGIN EVIDENCE UNTIL THE TUESDAY AFTER THANKSGIVING.

21        THAT WILL GIVE PEOPLE AN OPPORTUNITY TO GET THEIR AFFAIRS

22   IN ORDER SO THAT THEY CAN DEAL WITH ANY CARPOOL ISSUES OR

23   THINGS LIKE THAT.

24        BUT ONCE EVIDENCE COMMENCES, AS YOU CAN SEE IN THE

25   SCHEDULE, SO THURSDAY OF NEXT WEEK IS THANKSGIVING.  WE WON'T
```

1    BE IN COURT ON FRIDAY.  AND THEN THE PARTIES WILL COME BACK,

2    WE WILL WORK ALL DAY ON MONDAY TO MAKE SURE THIS IS ALL

3    PACKAGED UP NICELY FOR THE JURY, AND THEN WE WILL START

4    EVIDENCE ON TUESDAY.

5        AND WE'LL BE IN SESSION EVERY DAY FROM 8:30 IN THE MORNING

6    UNTIL 1:30 IN THE AFTERNOON.  AND WE WILL BE DONE NO LATER

7    THAN DECEMBER 19TH.

8        THAT LEAVES PLENTY OF TIME FOR DELIBERATIONS, ET CETERA.

9        I FIND THAT SCHEDULE TO WORK PRETTY WELL FOR MOST PEOPLE,

10   ESPECIALLY WHEN YOU HAVE JOBS.  IT MEANS YOU CAN LEAVE AND

11   PERHAPS GET SOME THINGS DONE IN THE AFTERNOON.

12       WITH RESPECT TO HARDSHIPS, THERE ARE A VERY LIMITED NUMBER

13   OF TIMES UNDER WHICH, IN MY OPINION, A HARDSHIP WOULD BE

14   WARRANTED.  SO LET ME GIVE YOU SOME EXAMPLES AS YOU THINK

15   ABOUT THAT IN CASE YOU'RE GOING TO SUGGEST TO ME THAT THIS IS

16   REALLY TOO INCONVENIENT FOR YOU TO SERVE.  BECAUSE, REMEMBER,

17   IT'S PROBABLY VERY INCONVENIENT FOR THE PERSON SITTING RIGHT

18   NEXT TO YOU, TOO.  IT'S INCONVENIENT FOR EVERYBODY.  I GET

19   THAT.  I TOTALLY GET IT.

20       BUT I PROMISE YOU, I AM A VERY EFFICIENT JUDGE.  I WORK

21   THESE -- I DON'T KNOW HOW TRIAL ATTORNEYS IN MY COURTROOM

22   SLEEP.  I WORK THEM SO HARD TO MAKE SURE THAT THIS IS

23   PRESENTED TO YOU WITHOUT ANY DELAY.  VERY EFFICIENTLY.  SO,

24   THEY WORK ALL DAY PRESENTING, THEN THEY GO BACK TO THEIR

25   HOTELS AND THEY ARE WORKING ALL NIGHT TO GET IT READY FOR THE

1    NEXT DAY, AND WE JUST DON'T STOP.

2        I DON'T TAKE LUNCH.  WE GO FROM 8:30 TO 1:30 WITH TWO

3    15-MINUTE BREAKS.  YOU CAN EAT AFTERWARDS.  THE LAWYERS

4    GENERALLY LOSE A FEW POUNDS.  WHEN YOU LEAVE AT 1:30, I HAVE

5    ABOUT THREE, 400 OTHER CASES.  WHEN THEY NEED TO TALK TO ME,

6    THEY COME IN AT 2:00 O'CLOCK.  SO IF I HAVE A CALENDAR, THEN

7    THESE GUYS GET A BREAK FOR ABOUT AN HOUR OR TWO, AND THEN COME

8    BACK.

9        WE ARE CONSTANTLY WORKING DURING TRIAL.  IT IS A VERY BUSY

10   TIME.  I GUARANTEE YOU THAT WHEN YOU ARE IN THIS COURTROOM,

11   YOU WILL BE HEARING EVIDENCE NONSTOP SO THAT WE KNOW THAT WE

12   DON'T WANT TO BE WASTING YOUR TIME, AND WE APPRECIATE

13   EVERYTHING THAT YOU ARE GIVING.

14       SO, I UNDERSTAND.  IT'S NOT CONVENIENT.  BUT CONVENIENCE

15   AND HARDSHIPS ARE TWO DIFFERENT THINGS.

16       SO HERE IS WHAT I WOULD CONSIDER TO BE A VALID HARDSHIP.

17   YOU'RE A FULL-TIME STUDENT AND IN DECEMBER YOU ARE TAKES

18   EXAMS.  IF YOU DON'T SHOW UP, ALL OF THAT WILL HAVE BEEN

19   WASTED.  I BELIEVE HEAVILY IN THE VALUE OF AN EDUCATION, AND

20   BELIEVE THAT'S AN APPROPRIATE EXCEPTION, SO I WOULD EXCUSE

21   SOMEONE.

22       YOU WERE THE SOLE CARETAKER OF A VERY SICK ELDERLY PERSON

23   FOR WHOM NO ONE CAN REPLACE YOU.

24       ECONOMIC HARDSHIP IN AND OF ITSELF IS NOT A HARDSHIP

25   EXCUSE FOR PURPOSES OF JURY SERVICE.

```
1        WELL, NOW WOULD YOU LIKE TO HEAR A LITTLE BIT ABOUT THE

2   CASE?  I APOLOGIZE.  I AM GOING TO HAVE TO STAND SO I CAN SEE

3   YOU.  I CAN'T SEE YOU TOO WELL, JUROR NUMBER TWO.

4        THIS IS AN ANTITRUST CLASS ACTION WHICH INVOLVES APPLE'S

5   INTEGRATED DIGITAL CONTENT PLATFORM COMPRISED OF APPLE'S

6   IPODS, THE ITUNE STORE, AND ITUNE SOFTWARE.  THE SOFTWARE

7   PROGRAM THAT APPLE DESIGNED TO RECORD, MANAGE AND PLAY MUSIC

8   ON IPODS.

9        THE PLAINTIFFS HERE ALLEGE THAT DEFENDANT APPLE, INC.

10  ENGAGED IN MONOPOLIZATION AND ATTEMPTED MONOPOLIZATION BY

11  MAKING CERTAIN SOFTWARE AND FIRMWARE CHANGES IN VIOLATION OF

12  SECTION 2 OF THE SHERMAN ACT, WHICH IS A FEDERAL STATUTE, AND

13  IN VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW.

14       THE PLAINTIFFS' CALIFORNIA LAW CLAIM IS ONE FOR THE COURT

15  TO DECIDE, NOT THE JURY, BUT WE ALL LISTEN TO THE SAME

16  EVIDENCE.

17       PLAINTIFFS CONTEND THAT APPLE MAINTAINED AND ENHANCED ITS

18  MONOPOLY POWER IN THE MARKET FOR PORTABLE DIGITAL MEDIA

19  PLAYERS BY ISSUING AND ACTIVATING CERTAIN SOFTWARE AND

20  FIRMWARE CHANGES IN ITUNES 7.0 AND 7.4 THAT TERMINATED THE

21  IPOD'S ABILITY TO PLAY AUDIO FILES LEGALLY OBTAINED --

22  OBTAINED FROM SOURCES OTHER THAN APPLE.

23       PLAINTIFFS REFER TO THESE CHANGES AS THE KEY BAG

24  VERIFICATION CODE OR THE KVC AND THE DATABASE VERIFICATION

25  CODE OR DVC.  PLAINTIFFS CONTEND THAT THESE CHANGES HARMED
```

1    COMPETITION AND RESULTED IN OVERCHARGES IN THE AMOUNTS PAID

2    FOR IPODS BY PURCHASERS OF CERTAIN IPODS BETWEEN THE YEARS OF

3    2006 AND 2009.

4        PLAINTIFFS CONTEND THAT THE CHALLENGED SOFTWARE CHANGES

5    WERE NOT GENUINE PRODUCT IMPROVEMENTS, NOR DID APPLE HAVE A

6    LEGITIMATE BUSINESS REASON FOR THE CHANGE.

7        APPLE DENIES ALL OF THOSE ALLEGATIONS.  APPLE MAINTAINS

8    THAT IT COMPETED WITH AN INTEGRATED SYSTEM TO PROVIDE QUALITY

9    PRODUCTS.  APPLE ALSO SAYS THAT IT WOULD HURT COMPETITION AND

10   INNOVATION TO REQUIRE COMPATIBILITY WITH UNAUTHORIZED AND

11   UNSUPPORTED THIRD-PARTY SYSTEMS OR SOFTWARE.

12       APPLE MAINTAINS THAT ITUNES 7.0 AND 7.4 AND RELATED

13   TECHNOLOGIES WERE PRODUCT AND SECURITY IMPROVEMENTS, AND THAT

14   APPLE HAD LEGITIMATE BUSINESS REASONS FOR DEVELOPING AND

15   DISTRIBUTING THESE UPDATES.

16       APPLE DENIES THAT IT HAD A MONOPOLY POWER IN ANY MARKET

17   ALLEGED BY THE PLAINTIFFS AND DENIES THAT ITS CONDUCT WAS

18   ANTICOMPETITIVE OR ILLEGAL.

19       APPLE ALSO MAINTAINS THAT PLAINTIFFS WERE NOT HARMED BY

20   ANY OF THE CONDUCT THAT PLAINTIFFS ALLEGE IS ANTICOMPETITIVE.

21       THAT'S WHAT THE CASE IS ABOUT.  NOW, THE ATTORNEYS AND

22   PARTIES WERE PREVIOUSLY INTRODUCED TO YOU.  LET ME INTRODUCE A

23   COUPLE MORE FOLKS.

24       MY COURTROOM DEPUTY IS FRANCES STONE HERE.  SHE'S THE

25   PERSON WITH WHOM YOU WILL HAVE THE MOST INTERACTION.  MY COURT

1    REPORTER RIGHT NOW IS DIANE SKILLMAN.  SHE WILL BE

2    INTERCHANGING WITH ANOTHER COURT REPORTER RAYNEE MERCADO.

3        SO IF ANY PROSPECTIVE JUROR KNOWS ANY OF THESE

4    INDIVIDUALS, COULD YOU PLEASE STAND?

5                        (NO RESPONSE.)

6            **THE COURT:**  NO.  MR. TETER, ARE YOU HERE?

7            **PROSPECTIVE JUROR:**  YES, YOUR HONOR.

8            **THE COURT:**  MR. TETER, I UNDERSTAND YOU REPRESENTED

9    APPLE?

10           **PROSPECTIVE JUROR:**  YES.  I'M CURRENTLY REPRESENTING

11   APPLE IN A CASE --

12           **THE COURT:**  YOU ARE EXCUSED FOR CAUSE.

13           **PROSPECTIVE JUROR:**   THANK YOU.

14           **THE COURT:**  YOU WERE PREVIOUSLY GIVEN A LIST ON YOUR

15   JUROR QUESTIONNAIRES OF ALL OF THE INDIVIDUALS WHO WERE

16   PROSPECTIVE WITNESSES.  I DID NOT SEE, OTHER THAN SOME PEOPLE

17   CIRCLING APPLE AND STEVE JOBS, THAT ANYBODY KNEW ANY OF THE

18   OTHER SPECIFIC WITNESSES.  I WOULD JUST LIKE TO CONFIRM THAT

19   ON THE RECORD.

20       NOW I'M ASKING JUST THE 18 OF YOU.  DO ANY OF YOU REMEMBER

21   CIRCLING ANYONE ELSE THAT YOU KNEW?  RAISE YOUR HAND.

22                        (NO RESPONSE.)

23       THE RECORD WILL REFLECT THAT NO HANDS WERE RAISED.

24       ALL RIGHT.  NOW THE PROCESS THAT WE ARE NOW GOING TO START

25   IS CALLED VOIR DIRE.  VOIR DIRE IS, DATES BACK TO THE 1600'S,

1    THAT TERM.  IT'S A FRENCH PHRASE, ANGLO-FRENCH, AND IT

2    LITERALLY MEANS TO SPEAK THE TRUTH.  AND THAT'S WHAT WE'RE

3    ASKING YOU TO DO.

4        I'M GOING TO ASK A SERIES OF QUESTIONS, THE ATTORNEYS WILL

5    HAVE AN OPPORTUNITY TO ASK SOME QUESTIONS, BUT WHAT WE ARE

6    TRYING TO DO IS GET TO KNOW YOU A LITTLE BIT BECAUSE IT'S

7    IMPORTANT FOR ALL THE PARTIES IN THIS COURTROOM THAT THE EIGHT

8    JURORS TO WHOM THEY ENTRUST THEIR CASE THAT THEY ARE SURE THAT

9    THOSE PEOPLE WILL BE FAIR.  AND IT IS MY DUTY AS A JUDGE TO

10   MAKE SURE THAT I HAVE GOT JURORS WHO ARE GOING TO BE FAIR TO

11   BOTH SIDES.  SO THAT'S REALLY WHAT WE'RE, WHAT WE'RE GOING TO

12   DO HERE.

13       NOW, DON'T BE CONFUSED IF YOU EVER MOVE DOWN TO TEXAS AND

14   YOU GET CALLED IN TO JURY DUTY, AND THE JUDGE SAYS, WELL,

15   WE'RE GOING TO NOW DO VOIR DIRE -- VOIR DIRE.  ACTUALLY IT'S

16   VOIR DIRE.  I HAVE BEEN IN CALIFORNIA TOO LONG.  IT'S THE SAME

17   THING.  IT'S JUST DOWN IN TEXAS THEY SAY IT WITH A TWANG AND

18   UP HERE WE ARE A LITTLE MORE SOPHISTICATED.  I CAN SAY THAT

19   BECAUSE ALL MY FAMILY IS IN TEXAS, SO I HARBOR NO ILL WILL

20   TOWARDS TEXANS.

21       ANYWAY, IF THERE IS ANY TIME I'M ASKING YOU A QUESTION

22   THAT YOU BELIEVE IT MAY CALL FOR A PERSONAL OR EMBARRASSING

23   ANSWER THAT YOU DON'T WANT TO ANSWER IN FRONT OF A HUNDRED OR

24   SO FOLKS THAT ARE HERE TODAY, JUST LET ME KNOW AND I WILL TALK

25   TO YOU IN PRIVATE ABOUT IT.  WHAT IS MOST IMPORTANT IS I GET

```
1    THE INFORMATION.  OKAY?  THAT'S WHAT IS MOST IMPORTANT.

2        ALL RIGHT.  SO LET'S START.  DO WE HAVE A MICROPHONE?

3            THE CLERK:  YOU NEED TO HOLD IT UP TO YOUR MOUTH, NOT

4    DOWN HERE (INDICATING) WHEN YOU DO IT.

5            THE COURT:  ALL RIGHT.  MR. BARRIOS; IS THAT RIGHT?

6            PROSPECTIVE JUROR:  YES.

7            THE COURT:  NOW, MR. BARRIOS, IT LOOKS LIKE YOU WERE

8    IN THE MILITARY; IS THAT RIGHT?

9            PROSPECTIVE JUROR:  MARINE CORPS FOR SEVEN AND A HALF

10   YEARS.

11           THE COURT:  AND YOU ARE NOT IN A RESERVE STATUS RIGHT

12   NOW?

13           PROSPECTIVE JUROR:  NO, NOT AT ALL.

14           THE COURT:  OKAY.  AS A COMPUTER PROGRAMMER, CAN YOU

15   TELL ME HOW MUCH BACKGROUND YOU HAVE IN COMPUTER PROGRAMMING,

16   WHAT KIND OF COURSES YOU'VE TAKEN?

17           PROSPECTIVE JUROR:  THE LAST THREE AND A HALF YEARS

18   IN THE MARINE CORPS AS A PROGRAMMER, I HAVE A LEAN DBASE

19   CLIPPER.  AFTER THAT, I DID EIGHT AND A HALF YEARS AT HOSPITAL

20   INFORMATION SYSTEMS AT ST. JOSEPHS.

21           THE COURT:  OKAY.  DID YOU EVER GO BACK AND GET A

22   DEGREE OR --

23           PROSPECTIVE JUROR:  NO DEGREES.  NO DEGREES.

24           THE COURT:  HOW ABOUT CERTIFICATIONS?  DO YOU HAVE

25   ANY PARTICULAR CERTIFICATIONS?
```

```
1          PROSPECTIVE JUROR:  CURRENTLY EPIC CLIENT SYSTEMS

2    MANAGER.  IT'S PART OF OUR EMR THERE AT CHILDREN'S HOSPITAL.

3          THE COURT:  OKAY.

4          PROSPECTIVE JUROR:  THAT WOULD BE THE ONLY

5    CERTIFICATION I'M CURRENTLY HOLDING.

6          THE COURT:  IS THERE A WAY FOR YOU TO EXPLAIN TO ME

7    KIND OF THE SCOPE OF YOUR KNOWLEDGE IN TERMS OF COMPUTER

8    PROGRAMMING?

9        IS THIS -- AS YOU HEARD ME SAY, THIS IS GOING TO DEAL WITH

10   SOME SOFTWARE AND FIRMWARE CHANGES.  HOW VERSED ARE YOU IN

11   THOSE ISSUES?

12         PROSPECTIVE JUROR:  WELL, I'M FAMILIAR WITH SOFTWARE

13   UPDATES.  THEY HAPPEN ALL THE TIME.

14         THE COURT:  DO YOU WRITE --

15         PROSPECTIVE JUROR:  I DON'T WRITE ANY OF THE CODE,

16   NO.

17         THE COURT:  WHAT DO YOU DO THEN?

18         PROSPECTIVE JUROR:  THE PROGRAMMER DAYS WERE BACK IN

19   DATABASE PROGRAMMING WITH DBASE.  SO THAT'S BACK IN THE '90S.

20         THE COURT:  WHAT THEN DO YOU DO IN TERMS OF BEING A

21   SYSTEMS ANALYST?

22         PROSPECTIVE JUROR:  RIGHT NOW WE IMPLEMENTED AN EMR

23   AT CHILDREN'S HOSPITAL A YEAR AGO, FOCUSED WITH CITRIX RIGHT

24   NOW AS WELL AS KEEPING THE EMR RUNNING.

25         THE COURT:  EMR IS?
```

45

1          **PROSPECTIVE JUROR:**  ELECTRONIC MEDICAL RECORD.

2    THERE'S ABOUT 20 SERVERS THAT DO VARIOUS FUNCTIONS FOR THE EMR

3    THAT I'M RESPONSIBLE FOR.

4          **THE COURT:**  AND WITH RESPECT TO YOUR JOB DUTIES, IF

5    YOU HAD TO WRITE A JOB DESCRIPTION BECAUSE YOU WERE GOING TO

6    TEXAS AND SOMEONE WAS GOING TO REPLACE YOU, HOW WOULD YOU

7    DESCRIBE IT?

8          **PROSPECTIVE JUROR:**  WELL -- WELL, THE TITLE OF EPIC

9    CLIENT SYSTEMS MANAGER, YOU HAVE TO BE CERTIFIED BY EPIC.  SO

10   THAT WOULD BE -- I MEAN THAT -- THE DESCRIPTION -- IT'S --

11   I -- I JUST CAN'T PUT THAT TOGETHER.

12         **THE COURT:**  OKAY.

13      SO DO YOU SERVE ALL IT NEEDS OR DO YOU ONLY WORK WITH THE

14   DATABASE RECORD -- OF RECORDS?

15         **PROSPECTIVE JUROR:**  I WORK WITH ANYTHING -- WHAT

16   HAPPENS IS THE HELP DESK -- THIS -- THIS -- THIS JOB IS IN

17   BETWEEN EVERYTHING.  SO THE HELP DESK IS COMING TO US, THE

18   APPLICATION FOLKS ARE COMING TO US.  WE WORK WITH THE MAIN

19   DATABASE GUYS AND THE AIX GUYS.  SO WHENEVER -- WE ARE IN THE

20   MIDDLE JACK-OF-ALL-TRADE THING.

21         **THE COURT:**  OKAY.  SO IF -- SO YOU'RE -- YOU'RE THE

22   INTERFACE BETWEEN CHILDREN'S HOSPITAL AND THEN THE ULTIMATE

23   PROVIDER FOR THE SERVICE?

24         **PROSPECTIVE JUROR:**  AND THEN EPIC, YES.

25         **THE COURT:**  OKAY.  BUT RIGHT NOW, YOU'RE NOT WRITING

```
1     CODES OR CREATING CODES OR DOING ANYTHING ON THE MORE --

2              PROSPECTIVE JUROR:  NO.

3              THE COURT:  -- ON THAT MORE TECHNICAL SIDE.

4         YOU SAY YOU'VE BOUGHT A -- YOU'VE PURCHASED FOR YOURSELF

5     OR SOMEONE ELSE AN IPOD; IS THAT RIGHT?

6              PROSPECTIVE JUROR:  YES.  THAT WAS 15 YEARS AGO.

7              THE COURT:  OKAY.  DID YOU USE IT YOURSELF OR SOMEONE

8     ELSE?

9              PROSPECTIVE JUROR:  IT'S MINE.  IT PLAYS MUSIC IN THE

10    CAR.

11             THE COURT:  DO YOU STILL USE IT?

12             PROSPECTIVE JUROR:  YES, I DO.

13             THE COURT:  ARE YOU -- IS THE CONTENT OF YOUR IPOD

14    STATIC AT THIS POINT OR HAVE YOU, OVER THE YEARS, DOWNLOADED

15    MUSIC FROM OTHER --

16             PROSPECTIVE JUROR:  I HAVEN'T DOWNLOADED IN QUITE A

17    FEW YEARS.  SO IT'S STATIC.

18             THE COURT:  AND YOU'RE NOT OVERLY SATISFIED OR OVERLY

19    DISSATISFIED, PRETTY NEUTRAL WITH THAT PRODUCT?

20             PROSPECTIVE JUROR:  YES.

21             THE COURT:  I HAVE THE APPLE PEOPLE HERE, ANY MAJOR

22    COMPLAINTS?

23             PROSPECTIVE JUROR:  NO.

24                        (LAUGHTER).

25             THE COURT:  WE ARE GOING TO PASS IT TO MS. DUMOULIN,
```

```
 1    BUT MS. DUMOULIN, I'M GOING TO ASK YOU TO COME UP HERE AND SIT

 2    CLOSER TO ME BECAUSE I CANNOT SEE YOU.

 3              PROSPECTIVE JUROR:  SIT OVER HERE?

 4              THE COURT:  YES.  RIGHT THERE.

 5                   (JURORS SITS IN WITNESS BOX.)

 6         THANK YOU SO MUCH.

 7              THE COURT:  WHAT IS YOUR CURRENT OCCUPATION?

 8              PROSPECTIVE JUROR:  CAREGIVER.

 9              THE COURT:  WHO ARE YOU TAKING CARE OF?

10              PROSPECTIVE JUROR:  TED NOVAK.

11              THE COURT:  OKAY.

12              PROSPECTIVE JUROR:  AND I ALSO BABYSIT MY

13    GRANDDAUGHTER.

14              THE COURT:  THE REASON I ASK IS BECAUSE YOU LEFT THIS

15    BLANK.  YOU'RE PROVIDING -- DO YOU WORK FOR A COMPANY THAT

16    PLACES YOU SOMEWHERE OR WHAT IS THE CURRENT STATUS OF YOUR

17    EMPLOYMENT?

18              PROSPECTIVE JUROR:  NO, IT'S PRIVATE.

19              THE COURT:  AND TED NOVAK IS A PRIVATE CLIENT?

20              PROSPECTIVE JUROR:  YES.

21              THE COURT:  CAN YOU --

22              PROSPECTIVE JUROR:  IT'S PART TIME.

23              THE COURT:  AND IS HE ELDERLY?  CAN YOU TELL ME ABOUT

24    HIM?

25              PROSPECTIVE JUROR:  HE'S ELDERLY.  HE HAS DEMENTIA.
```

```
 1            THE COURT:  DOES HE HAVE OTHER CAREGIVERS?

 2            PROSPECTIVE JUROR:  HIS WIFE.

 3            THE COURT:  HOW MANY HOURS A DAY DO YOU HELP THEM?

 4            PROSPECTIVE JUROR:  COUPLE OF DAYS A WEEK.

 5            THE COURT:  OKAY.

 6            PROSPECTIVE JUROR:  JUST TO GIVE HER A BREAK.

 7            THE COURT:  I SEE.  SO YOU'LL BE ABLE TO STILL HELP

 8     THEM OUT IN THE AFTERNOONS WHEN WE ARE NOT IN SESSION IF YOU

 9     WERE SEATED --

10            PROSPECTIVE JUROR:  I BABYSIT FOR MY GRANDDAUGHTER

11     EVERY DAY DURING THE WEEK.

12            THE COURT:  HOW OLD IS SHE?

13            PROSPECTIVE JUROR:  TWO AND A HALF.

14            THE COURT:  WHAT DO HER PARENTS DO?

15            PROSPECTIVE JUROR:  MY DAUGHTER WORKS FOR DMV AND HER

16     HUSBAND IS A BART TRAIN OPERATOR.

17            THE COURT:  SO DOES SHE GO TO ANY DAY CARE?

18            PROSPECTIVE JUROR:  NO, NOT YET.

19            THE COURT:  SO WHAT WILL HAPPEN IF YOU ARE SERVING?

20            PROSPECTIVE JUROR:  I DON'T KNOW, YOU KNOW.

21            THE COURT:  DID YOU TALK TO YOUR DAUGHTER ABOUT THE

22     FACT THAT YOU MIGHT HAVE TO BE HERE FOR --

23            PROSPECTIVE JUROR:  YES.  SHE TOLD ME I SHOULD HAVE

24     SIGNED ON THE BACK OF THE FORM AND SAID I WOULDN'T BE ABLE TO

25     COME, YOU KNOW, BECAUSE, YOU KNOW, TAKING CARE OF HER
```

1    DAUGHTER.

2            **THE COURT:**  NOW, YOU SAY YOU'RE MARRIED?

3            **PROSPECTIVE JUROR:**  YES.

4            **THE COURT:**  CAN YOUR HUSBAND TAKE CARE OF HER?

5            **PROSPECTIVE JUROR:**  HE WORKS.

6            **THE COURT:**  WHAT DOES HE -- SO HE'S AT HOME DEPOT?

7            **PROSPECTIVE JUROR:**  YES.

8            **THE COURT:**  THAT IS FULL TIME?

9            **PROSPECTIVE JUROR:**  YES.

10            **THE COURT:**  ARE THERE ANY OTHER RELATIVES AROUND WHO

11    COULD TAKE CARE OF HER?

12            **PROSPECTIVE JUROR:**  NO.  WE HAVE A VERY SMALL FAMILY.

13            **THE COURT:**  WHEN YOU WERE -- YOUR PRIOR CRIMINAL --

14    YOUR PRIOR JURY DUTY SERVICE AS A CRIMINAL CASE YOU SAID.  DO

15    YOU REMEMBER SOME OF THE DETAILS OF THAT?

16            **PROSPECTIVE JUROR:**  IT WAS A THEFT.

17            **THE COURT:**  WAS IT HERE IN ALAMEDA COUNTY OR --

18            **PROSPECTIVE JUROR:**  CONTRA COSTA.

19            **THE COURT:**  CONTRA COSTA?

20            **PROSPECTIVE JUROR:**  UH-HUH.

21            **THE COURT:**  WERE YOU THE FOREPERSON ON THE JURY?  DID

22    YOU LEAD THE DISCUSSIONS?

23            **PROSPECTIVE JUROR:**  NO, NOT AT ALL.

24            **THE COURT:**  AND WHAT WAS THE VERDICT, DO YOU

25    REMEMBER?

1          **PROSPECTIVE JUROR:**  GUILTY.

2          **THE COURT:**  OKAY.  OKAY.  SO YOU HAVE AN IPOD AS

3    WELL?

4          **PROSPECTIVE JUROR:**  YES.

5          **THE COURT:**  AND IN TERMS OF DOWNLOADING, YOU SAID

6    YOU'VE DOWNLOADED USING CD'S.  ANYTHING -- ANY OTHER SOURCE?

7    ANY ONLINE SOURCE?

8          **PROSPECTIVE JUROR:**  MOSTLY ALL CD'S.

9          **THE COURT:**  OKAY.  NOW YOU INDICATED ON HERE, AND A

10   NUMBER OF YOU DID, THAT STEVE JOBS WAS A GENIUS.  HE CAN BE A

11   GENIUS, BUT WE'RE STILL HAVING A TRIAL.

12      DO YOU THINK YOU CAN BE FAIR TO THE PLAINTIFFS IN THIS

13   CASE?  LISTEN TO THE EVIDENCE, GIVEN THAT YOU HAVEN'T HEARD

14   ANYTHING, LISTEN TO THE EVIDENCE AND FOLLOW THE LAW AS I

15   INSTRUCT YOU?

16         **PROSPECTIVE JUROR:**  WELL, FROM WHAT YOU SAID, IT

17   SOUNDS KIND OF COMPLICATED.  AND I DON'T KNOW IF I WOULD QUITE

18   UNDERSTAND, YOU KNOW, EXACTLY WHAT'S GOING ON.

19         **THE COURT:**  WELL, SOMETIMES -- IT'S INTERESTING YOU

20   SAY THAT.  IT COULD BE COMPLICATED.  I'M NOT SURE IT'S AS

21   COMPLICATED AS THE LAST ONE WHERE THE JURY HAD TO DECIDE A

22   PATENT CASE WITH THE ARCHITECTURE OF A SEMICONDUCTOR CHIP.

23   NOW THEY SETTLED.  IT'S THE ONLY TIME I HAD A JURY CHEER THAT

24   THEY DIDN'T HAVE TO DECIDE.

25      BUT A LOT OF TIMES IN CASES, PEOPLE GET ON THE STAND.

```
1   JUST LIKE THAT CASE.  AND THEY SWEAR AN OATH TO TELL THE

2   TRUTH.  AND THE QUESTION IS, DO YOU BELIEVE THEM OR NOT.  DO

3   YOU THINK THAT THEY ARE TELLING THE TRUTH.

4       WELL, YOU DON'T HAVE TO BE A ROCKET SCIENTIST.  I THINK

5   FREQUENTLY ROCKET SCIENTISTS AREN'T ALWAYS THE BEST JUDGE OF

6   CHARACTER, RIGHT?

7           PROSPECTIVE JUROR:  HMM.

8           THE COURT:  IT IS THE REASON WE HAVE JURORS FROM THE

9   COMMUNITY COME IN AND WEIGH THE EVIDENCE, PART OF THAT

10  WEIGHING IS WHETHER OR NOT YOU BELIEVE SOMEONE IS TELLING THE

11  TRUTH.

12          PROSPECTIVE JUROR:  UH-HUH.

13          THE COURT:  AND IF THEY ARE NOT, THEN YOU MAKE YOUR

14  DECISION BASED UPON WHO YOU BELIEVE.

15      HAVE YOU EVER FOUND YOURSELF IN A SITUATION WHERE YOU

16  SAID, YOU KNOW, THAT PERSON IS JUST LYING?

17          PROSPECTIVE JUROR:  YES.

18          THE COURT:  OKAY.  SO THEN YOU FOUND YOURSELF IN

19  CIRCUMSTANCES WHERE YOU CAN JUDGE SOMEONE'S CREDIBILITY.  YOU

20  COULD PROBABLY SERVE IN AN EQUALLY IMPORTANT WAY HERE.

21      THE QUESTION IS WHETHER YOU'RE GOING TO THINK STEVE JOBS

22  WAS SUCH A GENIUS THAT OF COURSE HE COULD NEVER DO ANYTHING

23  WRONG.  THAT'S KIND OF WHAT I NEED TO KNOW.  WHETHER YOU WOULD

24  BE WILLING TO LISTEN TO EVERYBODY, EVERYBODY WHO COMES UP

25  HERE, AND THEN TO TREAT THEM EQUALLY OR AT LEAST FAIRLY.
```

```
1        CAN YOU DO THAT?

2              PROSPECTIVE JUROR:  YES.

3              THE COURT:  OKAY.  ALL RIGHT.  YOU CAN GO BACK DOWN.

4    I DIDN'T MEAN TO PUT YOU ON THE HOT SEAT SO MUCH, BUT I HAVE

5    TO SEE YOU IF I'M GOING TO TALK TO YOU.

6              PROSPECTIVE JUROR:  OKAY.

7              THE COURT:  LET'S GO TO MR. KAAKE?  DID I SAY THAT

8    RIGHT?

9              PROSPECTIVE JUROR:  KAAKE, BUT CLOSE ENOUGH.

10             THE COURT:  KAAKE.  ALL RIGHT, MR. KAAKE.

11        WHAT DID YOU DO AS A CHIEF ENGINEER FOR VISA?

12             PROSPECTIVE JUROR:  I PRIMARILY WAS RESPONSIBLE FOR

13   THEIR SETTLEMENT SYSTEMS.

14             THE COURT:  CAN YOU EXPLAIN THAT TO ME IN MORE COMMON

15   TERMS?

16             PROSPECTIVE JUROR:  WELL, SO VISA IS THE CREDIT CARD

17   COMPANY.  AND NIGHTLY THEY SETTLED; TRANSACTIONS COME IN, THEY

18   DECIDE WHO PAYS WHO, AND CONVERT MONEY INTO DIFFERENT

19   CURRENCIES, ET CETERA.

20             THE COURT:  AND AS THE ENGINEER, WHAT IS YOUR ROLE IN

21   DEALING WITH THAT?  WERE YOU WRITING CODE TO DO THAT?

22             PROSPECTIVE JUROR:  OCCASIONALLY.  THE ROLE IS TO

23   FOLLOW THE ARCHITECTURE, SOLVE PROBLEMS, ANSWER QUESTIONS.

24   YOU NAME IT.

25             THE COURT:  HOW MANY PEOPLE DID YOU SUPERVISE?
```

1          **PROSPECTIVE JUROR:**  THIS WAS A TECHNICAL POSITION.

2          **THE COURT:**  OKAY.

3          **PROSPECTIVE JUROR:**  BUT THE GROUP USUALLY RANGED

4    ANYWHERE FROM FOUR PEOPLE UP TO TEN PEOPLE.

5          **THE COURT:**  AND NOW YOU'RE RETIRED?

6          **PROSPECTIVE JUROR:**  CORRECT.

7          **THE COURT:**  HOW ARE YOU ENJOYING YOUR RETIREMENT?

8          **PROSPECTIVE JUROR:**  MUCH BETTER.

9          **THE COURT:**  WHAT ARE YOU DOING WITH YOUR DAYS?

10         **PROSPECTIVE JUROR:**  I EXERCISE.  I RUN.  I DO A LOT

11   OF READING.  I STILL DO SOME PROGRAMMING, BUT --

12         **THE COURT:**  SO YOU HAVE PLENTY OF TIME TO SERVE.

13         **PROSPECTIVE JUROR:**  I HAVE PLENTY OF TIME.

14         **THE COURT:**  OKAY.  AND YOU'VE NEVER SERVED BEFORE.

15   IT LOOKS LIKE YOU WERE IN THE ARMY BEFORE?

16         **PROSPECTIVE JUROR:**  I WAS IN THE ARMY.  I HAVE NEVER

17   BEEN ON A JURY.

18         **THE COURT:**  IT'S BECAUSE MILITARY IS AN EXCEPTION, SO

19   YOU DON'T HAVE TO SERVE IF YOU ARE IN THE MILITARY.

20         **PROSPECTIVE JUROR:**  THAT WAS AWHILE AGO.

21         **THE COURT:**  NOW, YOU'VE NEVER BOUGHT AN IPAD; IS THAT

22   RIGHT.

23         **PROSPECTIVE JUROR:**  NO, I DON'T HAVE AN IPOD.

24         **THE COURT:**  AND YOU'RE ONE OF THE FEW PEOPLE THAT ARE

25   FAMILIAR WITH DIGITAL RIGHTS MANAGEMENT.  YOU SAID IN YOUR

1  RESPONSE IT'S SOMEWHAT RESTRICTIVE.  CAN YOU GIVE ME A -- ANY

2  THOUGHTS YOU HAVE ON DRM?

3          **PROSPECTIVE JUROR:**  WELL, PRIMARILY I FEEL THAT --

4  THAT THE -- CERTAINLY IT'S -- IT'S FAIR TO PAY FOR SOMEBODY

5  ELSE'S WORK, BUT I THINK THEY RESTRICT THE COPYING IT, BEING

6  ABLE TO BACK IT UP, BEING ABLE TO COPY IT SO YOU CAN USE IT,

7  MOVE IT AROUND, THINGS LIKE THAT.

8          **THE COURT:**  AND DO YOU HAVE ANY UNDERSTANDING OF WHAT

9  THE LAW SAYS WITH RESPECT TO THE ABILITY TO USE DIGITAL RIGHTS

10 MANAGEMENT?

11         **PROSPECTIVE JUROR:**  NOT -- I MEAN I'VE READ A LITTLE,

12 BUT NO.  NO.

13         **THE COURT:**  WOULD YOU HAVE ANY HESITATION IN

14 ACCEPTING THE LAW AS I GIVE IT TO YOU WITH RESPECT TO WHAT'S

15 ALLOWED?

16         **PROSPECTIVE JUROR:**  NO, OF COURSE NOT.

17         **THE COURT:**  OKAY.  YOU SAY THAT YOU'VE DOWNLOADED

18 MUSIC AND OTHER AUDIO CONTENT.  IS THAT ONTO THE IPAD AND

19 IPHONE?

20         **PROSPECTIVE JUROR:**  YES.

21         **THE COURT:**  ANYTHING OTHER THAN AMAZON?

22         **PROSPECTIVE JUROR:**  ITUNES.

23         **THE COURT:**  ITUNES?

24         **PROSPECTIVE JUROR:**  YES.

25         **THE COURT:**  OKAY.  THAT'S ALL I HAVE FOR NOW,

```
 1    MR. KAAKE.  THANKS.

 2       KECSKES?

 3               PROSPECTIVE JUROR:  KECSKES.

 4          THE COURT:  KECSKES?

 5          PROSPECTIVE JUROR:  YES.

 6          THE COURT:  WHAT'S THE ORIGIN OF THAT NAME?

 7          PROSPECTIVE JUROR:  A HUNGARIAN NAME.

 8          THE COURT:  HUNGARIAN.  OKAY.

 9       YOU'RE A LAWYER?

10          PROSPECTIVE JUROR:  YES, MA'AM.

11          THE COURT:  AND YOU DON'T KNOW ANY OF THE LAWYERS IN

12    THIS ROOM?

13          PROSPECTIVE JUROR:  I DO NOT.

14          THE COURT:  AND HAVE YOU EVER LITIGATED AGAINST OR

15    WITH ROBBINS, GELLER, RUDMAN & DOWD GENERALLY?

16          PROSPECTIVE JUROR:  NO.

17          THE COURT:  WHAT ABOUT BOIES, SCHILLER?

18          PROSPECTIVE JUROR:  NO.

19          THE COURT:  JONES DAY?

20          PROSPECTIVE JUROR:  NO.

21          THE COURT:  OKAY.  IN THE CONTEXT OF YOUR PRACTICE,

22    WHAT HAS BEEN THE MOST -- WHAT'S YOUR SPECIALTY?

23          PROSPECTIVE JUROR:  REAL ESTATE AND LAND USE.

24          THE COURT:  DID YOU KNOW THAT I HEARD THEY'RE TAKING

25    PROPERTY OUT OF FIRST-YEAR CURRICULUM.  IT'S GONE.
```

```
1    INTELLECTUAL PROPERTY IS NOW THE NEW THING.  REAL PROPERTY IS

2    GONE FROM THE FIRST-YEAR CURRICULUM.

3             PROSPECTIVE JUROR:  THAT'S A SHAME.  WE ALL HAVE TO

4    LIVE SOMEWHERE.

5             THE COURT:  YES.  AND LET ME TELL YOU THERE'S STILL

6    PLENTY OF REAL ESTATE DISPUTES.  AND INTELLECTUAL PROPERTY ALL

7    STEMS BACK TO REAL PROPERTY CONCEPTS ANYHOW.  BUT I HAD A

8    NUMBER OF LAW SCHOOL DEANS TELL ME THAT.  I WAS VERY

9    SURPRISED.

10       SO NEVER ANY -- HAVE YOU HAD ANY EXPOSURE WHATSOEVER TO

11   ANTITRUST LAW?

12             PROSPECTIVE JUROR:  NO.

13             THE COURT:  HOW ABOUT EXPOSURE TO CLASS ACTIONS?

14             PROSPECTIVE JUROR:  NO.

15             THE COURT:  ARE YOU A LITIGATOR OR ARE YOU ON THE

16   TRANSACTIONAL SIDE?

17             PROSPECTIVE JUROR:  I'M A TRANSACTIONAL ATTORNEY.

18             THE COURT:  OKAY.  DID YOU INTENTIONALLY AVOID

19   LITIGATION?

20             PROSPECTIVE JUROR:  NO.  I CONSIDERED LITIGATION.  I

21   CLERKED FOR JUDGE NAPOLEON JONES IN THE SOUTHERN DISTRICT IN

22   LAW SCHOOL.  ENJOYED THAT.  I STARTED OUT DOING SOME

23   LITIGATION IN A SMALL FIRM IN OXNARD, BUT BECAME MORE

24   ATTRACTED TO THE TRANSACTIONAL SIDE AND THEN MOVED TO SAN

25   DIEGO.
```

57

1          **THE COURT:** OKAY. SO NOW YOU'RE WRITING REAL ESTATE

2   CONTRACTS, WHAT OTHER KINDS OF THINGS MAKE UP YOUR DAILY DIET

3   OF LEGAL PRACTICE?

4          **PROSPECTIVE JUROR:** IN ADDITION TO REAL ESTATE AND

5   LAND USE ENTITLEMENT WORK AND ENVIRONMENTAL WORK, OCCASIONALLY

6   I COME ACROSS SOME TRADEMARK WORK, AND THAT'S MOST OF IT.

7          **THE COURT:** OKAY. YOU CHECKED THE BOX ECONOMICS AND

8   MATHEMATICS. DO YOU HAVE EXPERIENCE OR SOMEONE CLOSE TO YOU?

9          **PROSPECTIVE JUROR:** I HAVE EXPERIENCE AS PART OF MY

10  LAND USE PRACTICE. I ADVISE CLIENTS ON PUBLIC FINANCE.

11         **THE COURT:** OKAY. ARE YOU FAMILIAR WITH HOW

12  REGRESSION ANALYSES WORK?

13         **PROSPECTIVE JUROR:** NO.

14         **THE COURT:** HAVE YOU DOWNLOADED MUSIC OR OTHER AUDIO

15  COMMENT FROM ANY SOURCE OTHER THAN ITUNES?

16         **PROSPECTIVE JUROR:** I DON'T RECALL ANY OTHER SOURCE.

17         **THE COURT:** NOW IS YOUR WIFE A STAY AT HOME AT THIS

18  POINT?

19         **PROSPECTIVE JUROR:** NO. SHE IS A LAWYER AND SHE

20  WORKS FOR A NONPROFIT.

21         **THE COURT:** WHAT NONPROFIT IS THAT?

22         **PROSPECTIVE JUROR:** IT'S CALLED THE MATRIX PARENT

23  NETWORK. AND SO SHE ADVISES PARENTS AND KIDS ON NAVIGATING

24  THE SPECIAL EDUCATION SYSTEM.

25         **THE COURT:** OKAY. DOES SHE HAVE ANY EXPERTISE IN

```
1    ANTITRUST LAW?

2              PROSPECTIVE JUROR:  NO.

3          THE COURT:  CLASS ACTIONS?

4              PROSPECTIVE JUROR:  NO.

5          THE COURT:  HAS SHE EVER BEEN A LITIGATOR?

6          PROSPECTIVE JUROR:  SHE WAS A PUBLIC DEFENDER.

7          THE COURT:  OKAY.  WITH RESPECT TO RECEIPTS OF

8    PAYMENTS FROM CLASS ACTIONS, ARE THESE JUST SMALL LITTLE

9    COUPONS THINGS YOU ARE REFERENCING, OR CAN YOU GIVE ME AN

10   EXPLANATION?

11             PROSPECTIVE JUROR:  YEAH.  I THINK MOST OF THOSE WERE

12   JUST REALLY SMALL COUPON THINGS, AS YOU MENTIONED.  I THINK

13   THE ONE EXCEPTION MIGHT HAVE BEEN ANOTHER, AGAIN, SMALL

14   AMOUNTS RELATED TO A FINANCIAL INSTITUTION THAT ADMINISTERS A

15   TRUST THAT WE ARE INVOLVED WITH.

16         THE COURT:  OKAY.  DO YOU HAVE ANY CONCERNS ABOUT

17   YOUR ABILITY TO BE FAIR TO BOTH SIDES IN THIS CASE?

18             PROSPECTIVE JUROR:  NO, YOUR HONOR.

19         THE COURT:  YOUR CURRENT ROLE AT THE LAW FIRM, DO YOU

20   HAVE ANY MANAGEMENT ROLES?

21             PROSPECTIVE JUROR:  I'M A MENTORING PARTNER AND

22   RECRUITING, RECRUITING RESPONSIBILITIES.

23         THE COURT:  HAVE YOU EVER HAD TO MAKE PURCHASING

24   DECISIONS FOR THE LAW FIRM OR PARTS OF THE LAW FIRM?

25             PROSPECTIVE JUROR:  ONLY THE LIBRARY.
```

```
1              THE COURT:  OKAY.  AND THOSE PURCHASES, DID THEY

2     INVOLVE ANY APPLE-RELATED PRODUCTS?

3              PROSPECTIVE JUROR:  NO.

4              THE COURT:  OKAY.  OKAY.  THAT'S ALL FOR NOW.

5        MR. KENNEDY.

6              PROSPECTIVE JUROR:  YES, JUDGE.

7              THE COURT:  GOOD MORNING.

8              PROSPECTIVE JUROR:  GOOD MORNING.

9              THE COURT:  I TAKE IT, DID WE -- SO I WILL CONFIRM ON

10    THE RECORD, DID WE GET YOU TO SIGN, MR. KENNEDY --

11             PROSPECTIVE JUROR:  I DID, YES.

12             THE COURT:  -- THE FORM?  OKAY.

13       YOU HAVE STRONG OPINIONS ABOUT MR. JOBS ON BOTH ENDS OF

14    THE SPECTRUM IT LOOKS LIKE.

15             PROSPECTIVE JUROR:  YES.  YES.

16             THE COURT:  DO YOU REMEMBER WHAT YOU WROTE ON HERE

17    ABOUT HIM?

18             PROSPECTIVE JUROR:  YES.  I SAID THAT HE WAS AN

19    A-HOLE.

20             THE COURT:  YES.  SO I TAKE IT YOU DON'T HAVE ANY

21    HESITATION IN EXPRESSING YOURSELF.

22             PROSPECTIVE JUROR:  YEAH.

23             THE COURT:  NOW, YOU ALSO SAID -- THAT WAS ON ONE

24    SIDE OF THE SPECTRUM.  YOU ALSO SAID HE WAS A JOB CREATOR AND

25    AN INNOVATOR.
```

1          **PROSPECTIVE JUROR:**  YES.

2          **THE COURT:**  SO GIVEN THAT YOU HAVE STRONG OPINIONS

3     ABOUT HIM ON BOTH SIDES OF THE SPECTRUM, A TRIAL IS ABOUT --

4     KEEP THAT IN MIND -- BUT A TRIAL IS ABOUT EVIDENCE THAT IS

5     BROUGHT IN TO THE COURTROOM.

6          I DESCRIBE IT AS IF YOU HAD AN EMPTY BOX.  THINK ABOUT

7     EVIDENCE IS STARTING WITH AN EMPTY BOX.  AND THE ONLY THING

8     THAT WE PUT IN THE BOX IS WHAT COMES FROM THAT WITNESS STAND,

9     AND ANY DOCUMENTS OR OTHER EVIDENCE THAT I HAVE ADMITTED.  WE

10    PUT ALL OF THAT IN THE BOX.

11         NOW, THE LAWYERS THEN, TAKE WHAT'S IN THAT BOX AND THEY

12    ARGUE WHAT THEY THINK IT MEANS, WHAT THAT PICTURE SHOWS.  WE

13    DON'T LET THINGS COME IN OR JURORS TO CONSIDER THINGS THAT

14    THEY MAY HAVE SEEN OUTSIDE OF THE COURTROOM BECAUSE IT'S

15    IMPORTANT THAT EVERYBODY IS OPERATING WITH THE SAME SET OF

16    PIECES OF THE PUZZLE.

17         SO, DO YOU THINK YOU CAN CONTROL THOSE STRONG OPINIONS OF

18    YOURS ON BOTH SIDES OF THAT SPECTRUM, AND COME IN WITH A FAIR

19    OPEN MIND, LISTEN TO WHAT'S BEING PUT IN THAT BOX, AND DECIDE

20    THIS CASE SOLELY BASED UPON THE EVIDENCE?

21         **PROSPECTIVE JUROR:**  YES, I CAN.

22         **THE COURT:**  YOU SAID YOUR COUSIN WORKS IN THE MUSIC

23    INDUSTRY?

24         **PROSPECTIVE JUROR:**  YEAH.  SHE WORKED FOR THE SAN

25    FRANCISCO SYMPHONY, BUT SHE WENT TO NYU AND MAJORED IN MUSIC.

1    I THINK SHE COMPOSES MUSIC ON THE SIDE AND SHE DID SOME OTHER

2    ODD JOBS IN THE MUSIC INDUSTRY, TOO.

3              **THE COURT:**  HAVE YOU HAD DISCUSSIONS WITH HER ABOUT

4    THE ARTISTS AND TECHNOLOGY?

5              **PROSPECTIVE JUROR:**  NOT REALLY.

6              **THE COURT:**  BECAUSE YOU THEN IDENTIFIED ANOTHER

7    OPINION ABOUT WHO GETS THE MONEY FOR MUSIC AND --

8              **PROSPECTIVE JUROR:**  YEAH.

9              **THE COURT:**  -- YOU FELT -- YOU SEEMED TO SUGGEST THAT

10    YOU FELT LIKE MORE SHOULD GO TO THE ARTIST.

11             **PROSPECTIVE JUROR:**  YES.

12             **THE COURT:**  SO, HAVE YOU -- HOW DID YOU DEVELOP THAT

13    OPINION?

14             **PROSPECTIVE JUROR:**  I'VE READ ARTICLES ABOUT IT

15    ONLINE.

16             **THE COURT:**  THIS CASE ISN'T ABOUT THAT ISSUE.

17             **PROSPECTIVE JUROR:**  YEAH.

18             **THE COURT:**  DO YOU HAVE ANY STRONG OPINIONS THAT

19    APPLE, IN PARTICULAR, IS ON THE RIGHT OR WRONG SIDE OF THAT

20    ISSUE?

21             **PROSPECTIVE JUROR:**  NO.

22             **THE COURT:**  OKAY.  HAVE YOU DOWNLOADED MUSIC OR AUDIO

23    CONTENT FROM ANY SOURCE OTHER THAN ITUNES?

24             **PROSPECTIVE JUROR:**  YES.

25             **THE COURT:**  WHAT ARE THOSE SOURCES.

1        **PROSPECTIVE JUROR:**  THEY WERE ILLEGAL SOURCES, BUT

2   THEY WERE CALLED ARES AND LIVEWIRE.

3        **THE COURT:**  YOU SAID ILLEGAL SOURCES?

4        **PROSPECTIVE JUROR:**  YEAH, PIRACY PLACES.

5        **THE COURT:**  OKAY.  SO ARES?

6        **PROSPECTIVE JUROR:**  A-R-E-S.  AND THEN LIVEWIRE WAS A

7   BIG ONE WHEN I WAS BACK IN HIGH SCHOOL.

8        **THE COURT:**  SO YOU DID THIS WHEN YOU WERE IN HIGH

9   SCHOOL?

10        **PROSPECTIVE JUROR:**  YEAH.

11        **THE COURT:**  WHEN WAS THAT?

12        **PROSPECTIVE JUROR:**  2006 TO 2009.

13        **THE COURT:**  OKAY.  DID YOU THINK ABOUT IT BACK THEN

14   AS ILLEGAL CONDUCT OR YOU JUST DID IT BECAUSE EVERYBODY DID

15   IT?

16        **PROSPECTIVE JUROR:**  I WAS A HIGH SCHOOL STUDENT AND

17   DIDN'T HAVE ANY MONEY TO BUY MUSIC, SO I FIGURED I WOULD

18   DOWNLOAD IT ILLEGALLY.

19        **THE COURT:**  OKAY.  AND WHAT DID YOU DOWNLOAD IT ON?

20        **PROSPECTIVE JUROR:**  I HAD AN IPOD AND I PUT IT ON

21   THAT.

22        **THE COURT:**  AT ANY POINT IN TIME DID YOU RUN INTO

23   PROBLEMS WITH DOWNLOADING IT?

24        **PROSPECTIVE JUROR:**  SOMETIMES THE QUALITY WOULDN'T BE

25   VERY GOOD, BUT OTHER THAN THAT, NOTHING REALLY.

1        **THE COURT:**  THE QUALITY WASN'T GOOD?

2        **PROSPECTIVE JUROR:**  YEAH, THE QUALITY OF THE MUSIC.

3        **THE COURT:**  OTHER PROBLEMS?

4        **PROSPECTIVE JUROR:**  NO.

5        **THE COURT:**  NOW, THIS CASE INVOLVES SOME OF THOSE

6    ISSUES.  DO YOU HAVE OPINIONS ON WHETHER YOU THINK IT WAS

7    APPROPRIATE OR NOT APPROPRIATE?

8        **PROSPECTIVE JUROR:**  I MEAN, I KNOW IT WAS ILLEGAL TO

9    DO, BUT I DON'T REALLY HAVE AN OPINION ABOUT IT.

10        **THE COURT:**  DO YOU HAVE ANY UNDERSTANDING OF WHAT THE

11   LAW IS WITH RESPECT TO HOW COMPANIES CAN REACT IN THESE KINDS

12   OF MARKETS OR WHAT THEY CAN DO?

13        **PROSPECTIVE JUROR:**  NO, NOT REALLY.

14        **THE COURT:**  DO YOU HAVE ANY HESITATION IN FOLLOWING

15   THE LAW AS I GIVE IT TO YOU?

16        **PROSPECTIVE JUROR:**  NO.

17        **THE COURT:**  SO YOU WOULDN'T BRING A LAWSUIT

18   NECESSARILY?

19        **PROSPECTIVE JUROR:**  NO.

20        **THE COURT:**  AND WHY IS THAT?

21        **PROSPECTIVE JUROR:**  FEEL LIKE IT WOULD JUST TAKE TOO

22   MUCH TIME, PAPERWORK.  AND I'M FIGHTING A CORPORATION, SO I'D

23   PROBABLY LOSE.

24        **THE COURT:**  YOU SAID YOU ARE FIGHTING CORPORATIONS SO

25   YOU'D PROBABLY LOSE.  YOU KNOW, THAT'S NOT ALWAYS THE WAY IT

1   WORKS.

2       BUT HERE I HAVE A CORPORATION ON ONE SIDE.  AND THE LAW

3   REQUIRES THAT YOU TREAT CORPORATIONS OR JURORS TREAT

4   CORPORATIONS FAIRLY.

5           **PROSPECTIVE JUROR:**  UH-HUH.

6           **THE COURT:**  DO YOU HAVE -- DO YOU DISLIKE

7   CORPORATIONS SO MUCH THAT YOU THINK IT WOULD BE HARD FOR YOU

8   TO TREAT A CORPORATION FAIRLY?

9           **PROSPECTIVE JUROR:**  I DON'T THINK THEY ARE PEOPLE

10  LIKE SOME PEOPLE THINK, BUT THAT'S ABOUT IT.

11          **THE COURT:**  OKAY.  WELL, I CAN UNDERSTAND.  I MEAN,

12  THEY ARE COMPRISED OF PEOPLE.

13          **PROSPECTIVE JUROR:**  YEAH.

14          **THE COURT:**  BUT FOR PURPOSES -- AND, YOU KNOW, PEOPLE

15  IN THE CORPORATION MAKE DECISIONS.

16          **PROSPECTIVE JUROR:**  YEAH.

17          **THE COURT:**  IT'S NOT AS IF IT'S LIKE THE BOARD OR

18  SOMETHING WHERE YOU'VE GOT SOME PHYSICAL ENTITY THAT'S MAKING

19  DECISIONS BASED UPON A COLLECTIVE -- YOU'VE GOT REAL PEOPLE.

20          **PROSPECTIVE JUROR:**  YEAH.

21          **THE COURT:**  AND THE CORPORATION IS THE ENTITY THAT'S

22  HERE, AND THEY ARE ENTITLED TO BE TREATED FAIRLY.

23      SO I JUST NEED TO MAKE SURE THAT -- BECAUSE YOU'RE -- IT

24  SEEMS LIKE YOU'RE A STRONGLY-OPINIONATED GUY, AND THAT'S ALL

25  RIGHT, THAT YOU ARE GOING TO TREAT THEM FAIRLY.

```
 1          PROSPECTIVE JUROR:  YEAH.

 2          THE COURT:  YOU DON'T HARBOR ANY KIND OF DEEP-SEEDED

 3     DISLIKE FOR THEM; IS THAT RIGHT OR NOT?

 4          PROSPECTIVE JUROR:  I GUESS I DO HAVE STRONG OPINIONS

 5     ABOUT CORPORATIONS.  YOU'RE RIGHT.

 6          THE COURT:  YOU WORK FOR?

 7          PROSPECTIVE JUROR:  RIGHT NOW I'M PURSUING MY BA IN

 8     PSYCHOLOGY.  THIS IS MY LAST SEMESTER.  AND THEN I WORK AS AN

 9     INTERN FOR THE CITY COUNCIL OF SAN JOSE FOR COUNSEL MEMBER

10     XAVIER CAMPOSE.

11          THE COURT:  AND THE COURSES YOU ARE TAKING, THOSE ARE

12     EVENING COURSES?

13          PROSPECTIVE JUROR:  SAY THAT AGAIN?

14          THE COURT:  ARE THE COURSES YOU ARE TAKING EVENING

15     COURSES?

16          PROSPECTIVE JUROR:  YES.  THERE'S AN EVENING CLASS ON

17     TUESDAYS AND THURSDAYS.

18          THE COURT:  OKAY.

19       OKAY.  MR. KENNEDY, WE'RE GOING TO PASS YOU.  I'M SURE

20     PEOPLE HAVE LOTS OF QUESTIONS FOR YOU LATER.

21       MS. LOCKLEAR?

22          PROSPECTIVE JUROR:  YES.

23          THE COURT:  GOOD MORNING.

24          PROSPECTIVE JUROR:  GOOD MORNING.

25          THE COURT:  YOU ARE A MUSICIAN?
```

1      **PROSPECTIVE JUROR:**  YES.

2        **THE COURT:**  WHAT IS YOUR SPECIALTY?

3      **PROSPECTIVE JUROR:**  FLUTE.

4        **THE COURT:**  AND HAVE YOU EVER MADE RECORDS OR ALBUMS

5   OR ANYTHING LIKE THAT?

6      **PROSPECTIVE JUROR:**  I NEVER PRODUCED ANYTHING.  I

7   RECORDED SOME THINGS JUST FOR PERSONAL USE AND GIFTS.

8        **THE COURT:**  DO YOU HAVE ANY OPINIONS ON THE MUSIC

9   INDUSTRY'S INTERACTION WITH DIGITAL DEVICES THAT PLAY MUSIC

10   FOR INDIVIDUALS AND HOW THAT KIND OF WORKS WITH COMPANIES?

11      **PROSPECTIVE JUROR:**  NO.  MY FOCUS IS USING GARAGE

12   BAND TO PLAY BACKGROUND MUSIC, WHICH I ADD TO THAT WITH MY

13   INSTRUMENT AND USING IT TO LISTEN TO MYSELF, SEE HOW I CAN

14   IMPROVE, BUT NOTHING LIKE WHAT YOU DESCRIBED.

15        **THE COURT:**  IS GARAGE BAND A PROGRAM?

16      **PROSPECTIVE JUROR:**  YES.

17        **THE COURT:**  WHAT KIND OF PROGRAM IS THAT?

18      **PROSPECTIVE JUROR:**  IT'S A PROGRAM ON MY MAC BOOK

19   PRO.

20        **THE COURT:**  YOU'VE NEVER HAD AN IPOD, I TAKE IT?

21      **PROSPECTIVE JUROR:**  I DON'T HAVE AN IPOD.  I HAVE AN

22   IPAD.

23        **THE COURT:**  OKAY.  AND WHEN YOU SAID THAT YOU'VE

24   DOWNLOADED -- HAVE YOU EVER DOWNLOADED FROM THE ITUNES STORE?

25      **PROSPECTIVE JUROR:**  YES.

1          **THE COURT:**  OTHER SOURCES YOU PUT NET, DO YOU MEAN

2    JUST --

3          **PROSPECTIVE JUROR:**  THERE'S A COMPOSER NAMED CHUCK

4    WILSON WHO DOES MEDITATIVE MUSIC.  AND IT'S LEGAL TO DOWNLOAD

5    FROM HIS SITE.  AGAIN, THAT'S FOR BACKGROUND.

6          **THE COURT:**  ANY OTHER SITES?

7          **PROSPECTIVE JUROR:**  NO.

8          **THE COURT:**  IT SOUNDS LIKE YOU ARE VERY SATISFIED

9    WITH YOUR APPLE PRODUCTS?

10          **PROSPECTIVE JUROR:**  I LOVE IT.  I ALSO ON MY IPAD

11   HAVE A PROGRAM CALLED FORSCORE WHERE YOU CAN SCAN ALL YOUR

12   SHEET MUSIC INTO IT.  AND THAT WAY YOU DON'T HAVE TO LUG

13   AROUND BIG BOOKS WHEN YOU GO PLAY.  AND YOU HAVE A

14   LIGHT-WEIGHT STAND, AND IT'S VERY, VERY CONVENIENT.

15          **THE COURT:**  ALL RIGHT.  NOW GIVEN HOW MUCH YOU LOVE

16   YOUR APPLE PRODUCTS AND THEIR RELIABILITY, CUSTOMER SUPPORT,

17   DO YOU THINK IN THIS CASE YOU COULD GIVE THE PLAINTIFFS A

18   FAIR -- THE PLAINTIFFS ARE SUING APPLE.  DO YOU THINK YOU CAN

19   GIVE THEM A FAIR HEARING AND LISTEN TO WHAT THEY HAVE TO SAY

20   AND EVALUATE THE EVIDENCE IN A FAIR WAY?

21          **PROSPECTIVE JUROR:**  YES.

22          **THE COURT:**  HAVE YOU EVER BEEN -- DOESN'T SOUND LIKE

23   YOU HAVE EVER BEEN INVOLVED IN A LAWSUIT YOURSELF?

24          **PROSPECTIVE JUROR:**  NO.

25          **THE COURT:**  YOU'RE A TEACHER.  WAS IT OF MUSIC?

1          **PROSPECTIVE JUROR:**  NO, I'M RETIRED.  I TAUGHT K

2     THROUGH 6.  I TAUGHT ESL AND LIBRARY AND COMPUTERS.

3          **THE COURT:**  WHAT WAS YOUR FAVORITE CLASS?

4          **PROSPECTIVE JUROR:**  COMPUTERS.

5          **THE COURT:**  AND WHAT WAS YOUR FAVORITE GRADE?

6          **PROSPECTIVE JUROR:**  THIRD, BUT THEY ALL HAVE PROS AND

7     CONS, SO I REALLY LIKED ALL OF THEM.

8          **THE COURT:**  OKAY.  TERRIFIC.  THANK YOU.

9          **PROSPECTIVE JUROR:**  I HAVE ONE QUESTION.  I'M

10    PLANNING FOR A MEMORIAL TOMORROW.  IS THAT GOING TO BE A

11    PROBLEM?

12         **THE COURT:**  NO.

13         **PROSPECTIVE JUROR:**  OKAY.

14         **THE COURT:**  NO.  I WILL HAVE THE JURY PICKED TODAY.

15    AND THEN WE WON'T MEET AGAIN UNTIL AFTER THANKSGIVING.

16       MR. MCCULLY?

17         **PROSPECTIVE JUROR:**  GOOD MORNING.

18         **THE COURT:**  GOOD MORNING.

19       SO ANOTHER ENGINEER.

20         **PROSPECTIVE JUROR:**  CORRECT.

21         **THE COURT:**  SO CAN YOU DESCRIBE FOR ME JUST SOME

22    BACKGROUND IN TERMS OF WHAT -- JUST LEVEL OF EXPERTISE?

23    PARTIES HERE, YOU KNOW, ARE KIND OF INTERESTED TO KNOW WHAT

24    PEOPLE'S BACKGROUNDS ARE IN TERMS OF UNDERSTANDING THE

25    EVIDENCE, THOSE KINDS OF THINGS.

1          **PROSPECTIVE JUROR:**  I PRIMARILY WORK IN MECHANICAL,

2    WHICH IS HARDWARE, GEARS, MOTORS.  I LIKE TO JOKE THAT IT'S

3    PLATES WITH HOLES IN IT.  SO PRETTY SIMPLE STUFF.  NOT A LOT

4    OF SOFTWARE.

5          **THE COURT:**  OKAY.  AND WHAT KIND -- YOU'VE BEEN AT

6    GOOGLE FOR A YEAR?

7          **PROSPECTIVE JUROR:**  CORRECT.

8          **THE COURT:**  SO WHAT KINDS OF THINGS ARE YOU DOING

9    WITH GOOGLE?

10          **PROSPECTIVE JUROR:**  PLATES WITH HOLES IN THEM.  LOTS

11    OF THEM.  IT'S ACTUALLY A LITTLE MORE THAN WHERE I WAS BEFORE

12    AT LOCKHEED.

13      SO, YEAH.  THAT'S --

14          **THE COURT:**  AT LOCKHEED?

15          **PROSPECTIVE JUROR:**  LOCKHEED MARTIN WAS WHERE I

16    WORKED BEFORE.

17          **THE COURT:**  I KNOW.  WHAT DID YOU DO PRIMARILY FOR

18    LOCKHEED?

19          **PROSPECTIVE JUROR:**  THAT WAS MORE THAN MOTORS AND

20    GEARS AND BEARINGS AND MECHANISMS.  MORE COMPLICATED.

21          **THE COURT:**  ON AIRCRAFT?

22          **PROSPECTIVE JUROR:**  SATELLITES.

23          **THE COURT:**  EVEN THOUGH YOUR LOVE IS HARDWARE, DID

24    YOU EVER TINKER WITH SOFTWARE?

25          **PROSPECTIVE JUROR:**  YES.  JUST A LITTLE BIT.  VISUAL

1    BASIC, LAB VIEW, THINGS THAT ARE NECESSARY TO DO THE

2    MECHANICAL STUFF.

3            **THE COURT:**  HAVE YOU EVER PROGRAMMED ANYTHING?

4            **PROSPECTIVE JUROR:**  A FEW THINGS IN LAB VIEW, CONTROL

5    SYSTEMS REQUIRE SOFTWARE TO CONTROL THEM.  SO YOU'LL HAVE TO

6    WRITE CODE TO DO THAT.

7            **THE COURT:**  ARE YOU A MUSIC BUFF?

8            **PROSPECTIVE JUROR:**  YES.

9            **THE COURT:**  AND YOU CONSIDER DRM TO BE BAD.  SO GIVE

10   ME YOUR OPINIONS ON THOSE SO THAT ALL PARTIES KNOW THAT GOING

11   IN.

12           **PROSPECTIVE JUROR:**  IT CAME OUT.  I REMEMBER IT

13   COMING OUT AND IT SEVERELY LIMITED THE SHARING YOU COULD DO

14   WITH THE MUSIC THAT YOU HAD.

15       AND IT WAS A LITTLE BIT FRUSTRATING AT FIRST BECAUSE

16   EVERYONE WAS TRYING TO FIGURE OUT HOW TO DEAL WITH IT.  EVEN,

17   YOU KNOW, MUSIC YOU OWNED OFF OF CD'S, YOU WONDERED IF YOU

18   COULD MAKE COPIES AND USE IT ON MULTIPLE MACHINES.  I MEAN,

19   THERE WAS A LOT OF QUESTIONS.  IT WAS VERY FRUSTRATING AT THE

20   BEGINNING.  IT'S A LITTLE MORE CLEAR NOW WHAT YOU CAN AND

21   CANNOT DO WITH THE STUFF.

22       I DID COMMENT THERE'S A GOOD ASPECT OF THAT THAT HOPEFULLY

23   THE MUSICIANS GET A LITTLE BIT OF THAT.

24           **THE COURT:**  IN TERMS OF THE CD'S, DO YOU RECALL --

25   AND YOU HAVE A -- YOU HAD AN IPOD AT LEAST, OR YOU STILL HAVE

```
1    ONE?

2              PROSPECTIVE JUROR:  CORRECT.  IPOD, IPHONES.

3              THE COURT:  WHEN YOU ENCOUNTERED DRM, WAS IT IN THE

4    CONTEXT OF YOUR IPOD?

5              PROSPECTIVE JUROR:  I THINK I HAD A SAND SET AT THE

6    TIME, BUT IT ALSO AFFECTED THE IPOD WHEN WE HAD THEM.

7              THE COURT:  OKAY.

8              PROSPECTIVE JUROR:  JUST BEING ABLE TO SHARE BETWEEN

9    MACHINES AND BEING ABLE TO TAKE IT WITH YOU OR PUT IT ON SOME

10   OTHER MACHINE AND LISTEN TO IT.

11             THE COURT:  YOU SAID YOU HAD A WHAT?

12             PROSPECTIVE JUROR:  SAND SET WAS ANOTHER BRAND THAT I

13   HAD OWNED.  IT'S ANOTHER PLAYER.

14             THE COURT:  DID YOU -- DO YOU HAVE ANY DISTINCT

15   MEMORIES OF TRYING TO LOAD YOUR CD'S ONTO YOUR IPOD?

16             PROSPECTIVE JUROR:  YES.  IT GENERALLY WORKED IN THE

17   EARLY DAYS WITH THE EARLIER CD'S.  I DON'T DO IT AS MUCH

18   ANYMORE.

19             THE COURT:  WHAT WAS THAT EXPERIENCE LIKE?

20             PROSPECTIVE JUROR:  THE CD'S WERE OKAY.  JUST RIP

21   THEM AND TRANSFER THEM ORIGINALLY.  THEY WERE PRETTY OLD ONES

22   AT THE TIME.

23             THE COURT:  OKAY.

24             PROSPECTIVE JUROR:  LIKE I SAID, I HAVEN'T DONE THAT

25   IN MANY YEARS NOW.
```

72

```
1          THE COURT:  NOW GIVEN THAT YOU'VE HAD SOME VERY

2    SPECIFIC EXPERIENCES WITH SOME OF THESE ISSUES, AGAIN, IMAGINE

3    THAT BOX THAT WE'RE -- THAT I REFERENCED.  THERE WILL BE

4    EVIDENCE BROUGHT INTO COURT THAT PROVIDE SOME INFORMATION ON

5    THESE KINDS OF ISSUES, AND THE JURY GETS TO CONSIDER ALL OF

6    THAT.  AND THE JURY GETS TO DECIDE WHETHER OR NOT THEY BELIEVE

7    PEOPLE.

8         WHAT WOULD NOT BE APPROPRIATE IS FOR YOU TO SAY, FOR

9    INSTANCE, IF YOU WERE SITTING ON THIS JURY, WELL, WAIT A

10   MINUTE, WHEN I DID IT, THIS IS WHAT HAPPENED.

11        THAT WOULD BE EVIDENCE IN A WAY THAT IS NOT APPROPRIATE

12   BECAUSE THE -- BECAUSE THE PARTIES DON'T GET TO HEAR WHAT

13   HAPPENED TO YOU, DON'T GET TO CHALLENGE IT OR QUESTION.

14        DO YOU THINK THAT YOU COULD MAKE SURE THAT YOU'RE NOT --

15   WHEN YOU ARE DELIBERATING, KEEPING THAT TO YOUR, YOU KNOW,

16   YOURSELF, AND JUST REALLY FOCUSING ON WHAT'S BEEN PRESENTED AT

17   TRIAL, AND WHETHER OR NOT YOU BELIEVE THE WITNESSES OR NOT?

18          PROSPECTIVE JUROR:  HONESTLY, I THINK IT MIGHT

19   INFLUENCE MY OPINION OF WHAT'S BEING PRESENTED, WHETHER THEY

20   ARE HONEST ABOUT WHAT THEY'RE SAYING.  JUST BECAUSE I HAVE

21   THAT FIRSTHAND EXPERIENCE.

22        ARE YOU SAYING THAT I NEED TO DISMISS THAT ENTIRELY?

23   THROW --

24          THE COURT:  I LET JURORS ASK QUESTIONS.

25          PROSPECTIVE JUROR:  OKAY.
```

1          **THE COURT:**  SO, IF YOU ASKED A QUESTION THAT WOULD

2     GET AT THE HEART OF WHAT YOU WERE THINKING SO THAT EVERYBODY

3     IN THE COURTROOM HEARD IT --

4          **PROSPECTIVE JUROR:**  I SEE.

5          **THE COURT:**  -- THEN THAT WOULD BE EVIDENCE THAT

6     EVERYBODY COULD CONSIDER.

7        NOT ALL JUDGES LET JURORS ASK QUESTIONS, BUT I DO.  SO IF

8     YOU COULD FIGURE OUT A WAY TO ASK A QUESTION SO THAT EVERYBODY

9     HEARD IT, WOULD THAT BE GOOD ENOUGH, DO YOU THINK?

10         **PROSPECTIVE JUROR:**  I'M ALREADY SO NERVOUS JUST

11    ANSWERING THESE QUESTIONS.  I DON'T KNOW THAT I COULD --

12         **THE COURT:**  GUESS WHAT?  THE WAY I DO IT -- I

13    CERTAINLY DON'T PUT YOU ON THE SPOT TO ASK.  EVERYBODY GETS A

14    NOTEBOOK.  IN THOSE NOTEBOOKS, YOU HAVE PIECES OF PAPER AND

15    YOU GET TO WRITE THE QUESTION DOWN.

16       AND THEN WHEN I ASK THE QUESTION, NO ONE EVEN KNOWS WHO

17    ASKED IT.

18         **PROSPECTIVE JUROR:**  OKAY.

19         **THE COURT:**  YOU WOULDN'T ASK IT PERSONALLY.  I WOULD

20    JUST BE ABLE TO READ IT AND MAKE SURE THAT IT'S A PROPER

21    QUESTION WITHIN THE CONFINES OF THE CODE OF EVIDENCE.

22       BUT THAT'S REALLY THE APPROPRIATE -- THAT'S REALLY THE

23    APPROPRIATE TIME BECAUSE OTHERWISE IT IS JUST REALLY NOT FAIR.

24       NOW, WE DON'T ASK JURORS TO THROW AWAY THEIR COMMON SENSE.

25    THAT'S NOT -- AND WE DON'T ASK THEM TO ALWAYS -- YOU DON'T

1    HAVE TO BELIEVE PEOPLE, BUT YOU DO -- BECAUSE YOUR ONE

2    EXPERIENCE MAY NOT BE THE EXPERIENCE OF HUNDREDS OR THOUSANDS

3    OF OTHER PEOPLE.  RIGHT?  IT'S JUST ONE EXPERIENCE.  SO IT'S

4    IMPORTANT TO PUT THAT IN CONTEXT AND REMEMBER IT'S ONE

5    EXPERIENCE.

6         BUT IF IT'S IMPORTANT AND THERE'S SOME IMPORTANT

7    PRINCIPLE, THEN CERTAINLY YOU'D BE, IN THAT WAY, YOU WOULD BE

8    ABLE TO ASK A QUESTION SO THAT EVERYBODY CAN HEAR.

9             **PROSPECTIVE JUROR:**  UNDERSTAND THE RULES.  I HOPE I

10   CAN DO IT.

11            **THE COURT:**  AND YOU'D GIVE IT YOUR BEST EFFORT?

12            **PROSPECTIVE JUROR:**  YES.  IF I WERE SELECTED, YES.

13            **THE COURT:**  OKAY.  YOU, TOO, THINK MR. JOBS WAS A

14   VISIONARY AND YOU ARE A HUGE FAN OF APPLE AND APPLE PRODUCTS.

15        WILL YOU -- CAN YOU ASSURE ME THAT IF YOU WERE CHOSEN,

16   THAT YOU WOULD GIVE THE PLAINTIFFS IN THIS CASE A FAIR CHANCE

17   TO PRESENT THEIR CASE AND TO LISTEN TO THE EVIDENCE AND BE

18   FAIR?

19            **PROSPECTIVE JUROR:**  AGAIN, IT WOULD BE A CHALLENGE

20   FOR ME, BUT I'D LIKE TO THINK I COULD DO IT.

21            **THE COURT:**  SO DO YOU THINK THAT EVERYTHING THAT

22   APPLE DOES IS RIGHT?

23            **PROSPECTIVE JUROR:**  NO.  I DON'T USE ITUNES MUCH.  I

24   USE RHAPSODY.  BUT FOR THE MOST PART, I REALLY BELIEVE IN

25   THEIR PRODUCTS AND HARDWARE.

1          **THE COURT:**  WELL, THERE ARE ALLEGATIONS HERE AND

2    THERE ARE LAWS.  THE LAWS HAVE TO BE FOLLOWED.

3          **PROSPECTIVE JUROR:**  CORRECT.

4          **THE COURT:**  AND THE CHARGE FOR THE JURY WILL BE TO

5    LISTEN TO WHAT I TELL YOU THE LAW IS, AND THEN DECIDE ACTUALLY

6    WHAT HAPPENED IN TERMS OF THE DISPUTE BETWEEN THE PARTIES.

7    AND NO ONE IS PERFECT, IT WOULD SEEM TO ME.  SO WE JUDGE EVERY

8    CASE BY WHAT WE HEAR IN TERMS OF THE EVIDENCE.  PERHAPS

9    SOMETIMES THEY ARE RIGHT, PERHAPS SOMETIMES THEY ARE WRONG.

10        I DON'T KNOW.  I HAVEN'T HEARD ANY EVIDENCE.  NEITHER OF

11   YOU.  THE QUESTION IS, ARE YOU A FUNDAMENTALLY FAIR PERSON

12   THAT YOU WOULD NOT, YOU KNOW, THAT YOU WOULD GIVE BOTH SIDES

13   AN EQUAL OPPORTUNITY TO BE HEARD AND TO DECIDE BASED UPON WHAT

14   YOU HEAR?

15        **PROSPECTIVE JUROR:**  I THINK SO.

16        **THE COURT:**  I BELIEVE YOU, MR. MCCULLY.

17        LET'S PASS IT TO MR. OVALLE?

18        **PROSPECTIVE JUROR:**  OVALLE.

19        **THE COURT:**  OVALLE?

20        **PROSPECTIVE JUROR:**  (NODS HEAD.)

21        **THE COURT:**  OKAY.  YOU CHECKED EVERY SINGLE APPLE

22   PRODUCT.

23        **PROSPECTIVE JUROR:**  THEY DIDN'T HAVE THE 2E ON THERE.

24   I WOULD HAVE CHECKED IT AS WELL.

25        **THE COURT:**  WHY DON'T WE START WITH THE LAST QUESTION

1    I ASKED MR. MCCULLY.  HOW ABOUT YOU?  WILL YOU GIVE THE

2    PLAINTIFFS A FAIR SHOT IN THIS CASE?

3            **PROSPECTIVE JUROR:**  YEAH, OF COURSE.

4            **THE COURT:**  YOU SAY YOU'VE RUN YOUR COMPANY FOR TEN

5    PLUS YEARS, YOUR OWN COMPANY.  DO YOU PURCHASE PRODUCTS ON --

6    FIRST OF ALL, DO YOU SUPERVISE EMPLOYEES?

7            **PROSPECTIVE JUROR:**  YES, I DO.

8            **THE COURT:**  HOW MANY?

9            **PROSPECTIVE JUROR:**  SIX.

10            **THE COURT:**  AND DO YOU PURCHASE APPLE PRODUCTS FOR

11    THEM AS WELL?

12            **PROSPECTIVE JUROR:**  LET'S SEE.  ON THE DESIGN SIDE

13    OUR MARKETING TEAM WILL WORK WITH APPLE PRODUCTS.  I WORK WITH

14    APPLE PRODUCTS.  THE REST OF OUR OFFICE WORKS OFF OF A PC

15    PLATFORM.

16            **THE COURT:**  GIVEN THAT YOU ARE RUNNING YOUR OWN

17    COMPANY, HOW ABOUT -- YOU DIDN'T CHECK THE BOXES FOR FINANCE,

18    ACCOUNTING, ECONOMICS.  DO YOU HAVE ANY BACKGROUND IN THAT?

19            **PROSPECTIVE JUROR:**  I JUST THOUGHT IT SAID STRONG

20    OPINIONS ABOUT THEM, AND I DON'T HAVE STRONG OPINIONS ABOUT

21    THEM.

22            **THE COURT:**  SO THE QUESTION WAS, DO YOU HAVE ANY WORK

23    EXPERIENCE, KNOWLEDGE, TRAINING, OR ADVANCED EDUCATION, AND

24    THERE WERE A SERIES.

25        SO THAT'S THE QUESTION.  SO DO YOU HAVE THAT IN FINANCE?

1          **PROSPECTIVE JUROR:**  OF COURSE, YES.  I MEAN, I RUN MY

2    OWN BUSINESS.  SO TO THE EXTENT OF RUNNING A SMALL BUSINESS IN

3    THE STATE OF CALIFORNIA.

4          **THE COURT:**  OKAY.  AND ECONOMICS OR MATH AS SEPARATE

5    AND DISTINCT FROM FINANCE?

6          **PROSPECTIVE JUROR:**  I TOOK SOME COURSES IN COLLEGE,

7    BUT, NO, OTHER THAN JUST BUSINESS EXPERIENCE.

8          **THE COURT:**  DO YOU TAKE ANY COURSES IN ANTITRUST LAW?

9          **PROSPECTIVE JUROR:**  I DO NOT.

10         **THE COURT:**  HAVE YOU EVER USED REGRESSION ANALYSES?

11         **PROSPECTIVE JUROR:**  NO, I HAVE NOT.

12         **THE COURT:**  BUT YOU CAN READ FINANCIAL STATEMENTS?

13         **PROSPECTIVE JUROR:**  YES, I CAN.

14         **THE COURT:**  AND DO YOU CREATE YOUR OWN FOR YOUR

15   COMPANY?

16         **PROSPECTIVE JUROR:**  WE USE PROGRAMS PRIMARILY, LIKE A

17   QUICKBOOKS.

18         **THE COURT:**  OKAY.

19         **PROSPECTIVE JUROR:**  WE ALSO USE OUR SOFTWARE ON OUR

20   PC SIDE WHICH INTEGRATES OUR QUOTES BUSINESS INTO YOU ARE AP

21   AND AR.  A LOT OF IT IS AUTOMATED.

22         **THE COURT:**  SO ON DRM, YOU, TOO, ARE FAMILIAR, BUT NO

23   STRONG OPINIONS; IS THAT RIGHT?

24         **PROSPECTIVE JUROR:**  TO THE EXTENT THAT, YEAH, IT'S

25   JUST ANNOYING WHEN BACK IN THE OLD DAYS YOU COULDN'T SHARE THE

```
1    MUSIC AND THEN YOU HAVE A LIMITATION ON HOW MANY DEVICES IT

2    CAN GO ON.  AND SOME PEOPLE MAYBE JUST HAVE ONE DEVICE, BUT I

3    CARRY MULTIPLE DEVICES, AND THAT'S KIND OF A FRUSTRATION.

4              THE COURT:  OKAY.  DO YOU HAVE ANY DISTINCT MEMORIES

5    OF RUNNING INTO DRM IN THE 2006 TO 2009 TIME FRAME?

6              PROSPECTIVE JUROR:  YES, TO SOME EXTENT.  I THINK I

7    WENT TO SOME ALTERNATIVE SERVICES AS A RESULT OF IT.  I TRIED

8    TO EXPLORE OUTSIDE OF THE ITUNES-THEMED DOWNLOADING BECAUSE

9    MAYBE THERE'S OTHER PROGRAMS THAT ACTUALLY WOULD ALLOW YOU NOT

10   ONLY TO BUY AND DOWNLOAD THE MUSIC ONTO YOUR DEVICE, BUT THEN

11   BURN IT ONTO A CD AND DO SOME OTHER THINGS THAT ITUNES WAS NOT

12   PARTICULARLY KEEN ON YOU DOING.

13             THE COURT:  OKAY.  SO YOU DID SOME OF THAT?

14             PROSPECTIVE JUROR:  OF COURSE, YES.

15             THE COURT:  DO YOU REMEMBER THOSE COMPANIES?

16             PROSPECTIVE JUROR:  LIKE I HAVE BEEN WITH RHAPSODY

17   BEFORE.  THERE'S ANOTHER COMPANY THAT CAME AND WENT.  I WAS ON

18   THEIR SERVICE FOR ABOUT A YEAR.

19      WHAT ELSE?  YOU KNOW, A LOT OF MUSICIANS THAT I'LL FOLLOW

20   THAT DON'T PER SE USE THE PLATFORMS TO SELL THEIR CONTENT.

21   THEY HAVE THEIR OWN WEBSITES TO DOWNLOAD THEIR OWN CONTENT

22   FROM.  I PROBABLY DO A LOT MORE OF THAT NOW.

23             THE COURT:  DOES THE NAME "REAL NETWORK" SOUND

24   FAMILIAR TO YOU?

25             PROSPECTIVE JUROR:  IT DOES NOT.  IT'S A PRETTY
```

1    UBIQUITOUS NAME.  NO, IT DOES NOT.

2         **THE COURT:**  HOW ABOUT HARMONY?

3         **PROSPECTIVE JUROR:**  HARMONY?

4         **THE COURT:**  YES.

5         **PROSPECTIVE JUROR:**  I MIGHT BE CONFUSING IT WITH

6    E-HARMONY.  BUT AGAIN, IT'S AN UBIQUITOUS-SOUNDING TECH NAME.

7         **THE COURT:**  IN THE PANEL OF 18, IS REAL NETWORKS IN

8    THE MUSIC SIDE, DOES THAT SOUND FAMILIAR TO ANYONE?

9                   (HAND RAISED.)

10        **THE COURT:**  OKAY.

11        **PROSPECTIVE JUROR:**  I HAVE HEARD OF IT.

12        **THE COURT:**  THE TWO OF YOU HAVE HEARD OF THEM?  OKAY.

13   I'LL COME BACK TO THAT.

14      HOW ABOUT HARMONY ON THE MUSIC SITE?  NOT THE DATING SITE.

15   I DON'T WANT TO HEAR ABOUT THE DATING SITE.  EVERYBODY'S UNDER

16   OATH.

17      HOW'S MY COURT REPORTER DOING?  I HAVE TO CHECK IN WITH

18   THE COURT REPORTER.  SHE -- DOESN'T MATTER WHO'S SPEAKING,

19   SHE'S WORKING.  AND WHEN I GET A GRIMACE OR A GRUNT, IT MEANS

20   I HAVE GONE TOO FAR AND PUSHED HER OVER THE LINE.  I DON'T

21   TAKE BREAKS VERY OFTEN.

22      OKAY.  SO YOU HAVE DONE AMAZON, GOOGLE PLAY, YOU HAVE DONE

23   SOME OF THESE OTHER ONES.  THE SAME QUESTION THAT I ASKED TO

24   MR. MCCULLY.

25      SOME OF THESE ISSUES ARE GOING TO COME INTO PLAY.  JURORS

```
1   WILL HAVE AN OPPORTUNITY TO ASK QUESTIONS.  DO YOU THINK YOU

2   CAN BE FAIR TO BOTH SIDES?

3           PROSPECTIVE JUROR:  OF COURSE.

4           THE COURT:  ALL RIGHT.  LET'S GO AHEAD AND PASS IT TO

5   MR. PITTS.

6       GOOD MORNING, MR. PITTS.

7           PROSPECTIVE JUROR:  GOOD MORNING.

8           THE COURT:  YOU'VE SAT ON TWO JURIES?

9           PROSPECTIVE JUROR:  THAT'S CORRECT.

10          THE COURT:  AND BOTH OF THOSE WERE CRIMINAL CASES.

11  COULD YOU TELL ME A LITTLE BIT ABOUT EACH OF THEM?

12          PROSPECTIVE JUROR:  THE FIRST ONE WAS A KIDNAPPING

13  AND ROBBERY.  THAT'S ONE WHERE WE ACTUALLY DELIBERATED AND

14  CAME TO A VERDICT.

15      THE SECOND ONE WE WERE IMPANELED.  SOME SORT OF DRUNK

16  DRIVING CHARGE WE WEREN'T SURE OF.  WE RECESSED FOR LUNCH AND

17  WHEN LUNCH WAS OVER, THEY PLEA BARGAINED OR CAME TO AN

18  AGREEMENT.

19          THE COURT:  OKAY.  SO WITH RESPECT TO THE FIRST ONE,

20  WHAT WAS THE VERDICT?

21          PROSPECTIVE JUROR:  GUILTY.

22          THE COURT:  AND WERE YOU THE FOREPERSON?

23          PROSPECTIVE JUROR:  NO, I WAS NOT.

24          THE COURT:  STATE COURT, WHICH COUNTY?

25          PROSPECTIVE JUROR:  SANTA CLARA.
```

1        **THE COURT:**  YOU DON'T HAVE AN IPOD?

2        **PROSPECTIVE JUROR:**  NO, I DO NOT.

3        **THE COURT:**  AND YOU'VE NEVER BOUGHT ONE FOR ANYBODY?

4        **PROSPECTIVE JUROR:**  I'M A RELUCTANT USER OF

5  TECHNOLOGY.

6        **THE COURT:**  THAT'S OKAY.

7        **PROSPECTIVE JUROR:**  MY COMPANY IS BEGINNING TO ISSUE

8  IPADS TO ALL THE TECHNICIANS IN THE CENTRAL OFFICES.

9        **THE COURT:**  THIS IS IN YOUR ROLE WITH AT&T?

10        **PROSPECTIVE JUROR:**  THAT'S CORRECT.

11        **THE COURT:**  NOW EVEN THOUGH YOU ARE A RELUCTANT USER,

12  YOU DON'T HOLD IT AGAINST ANYONE, DO YOU?

13        **PROSPECTIVE JUROR:**  NO, I DO NOT.

14        **THE COURT:**  THIS IS GOING TO INVOLVE TECHNOLOGY

15  ISSUES.  FOR SOME PEOPLE, THE TECHNOLOGY IS GOING TO BE KIND

16  OF OLD BECAUSE WE ARE GOING BACK TO 2006 TO 2009.

17     DO YOU HAVE ANY CONCERNS ABOUT, YOU KNOW, BEING ABLE TO

18  FULLY ENGAGE AS A JUROR GIVEN THAT IT DEALS WITH AN AREA THAT

19  YOU KIND OF ARE -- KIND OF AVOID IT SEEMS LIKE?

20        **PROSPECTIVE JUROR:**  THAT IS TRUE.  I DO HAVE SOME

21  QUESTIONS ABOUT TERMINOLOGY AND CONCEPTS BEHIND IT JUST

22  BECAUSE I AM NOT INVOLVED WITH IT MORE THAN I HAVE TO BE.

23        **THE COURT:**  WOULD YOU HAVE ANY HESITATION, FOR

24  INSTANCE -- AND I, FRANKLY, I TRY TO REMIND THE LAWYERS, YOU

25  KNOW, THESE GUYS, LAWYERS, THEY LIVE WITH THEIR CASES FOR

```
 1    YEARS BEFORE THEY GET TO TRIAL.  AND SO THEY COME IN AND THEY
 2    SAY, WELL, WHEN THE DRM CONNECTED TO THE KVC WHILE THEY WERE
 3    IN THE AM -- IT'S -- THE WHOLE SENTENCE HAS LIKE SEVEN OR
 4    EIGHT DIFFERENT ACRONYMS.  I HAVE TO REMIND THEM, NO ONE KNOWS
 5    WHAT YOU ARE TALKING ABOUT.  IF I DON'T KNOW WHAT YOU ARE
 6    TALKING ABOUT, YOU CAN BE SURE NO ONE ELSE KNOWS WHAT YOU ARE
 7    TALKING ABOUT.
 8         SO, AGAIN, SOMETIMES, I HAVEN'T FOUND IT TO BE NECESSARY
 9    IN THIS CASE SO FAR, BUT I'LL HAVE THEM DO GLOSSARIES, WE'LL
10    GIVE A LIST OF TERMS SO THAT THE JURY HAS THE TOOLS THEY NEED.
11         IF, FOR INSTANCE, YOU SAT ON THIS JURY AND THERE WAS A
12    CONCEPT OR A TERM THAT YOU DIDN'T UNDERSTAND, WOULD YOU BE
13    WILLING TO WRITE ME A NOTE SO I CAN MAKE SURE YOU GET THAT
14    INFORMATION?
15              PROSPECTIVE JUROR:  YES, I WOULD.
16              THE COURT:  OTHERWISE YOU LOOKED LIKE YOU'RE PRETTY
17    NEUTRAL ON EVERYTHING.  ANY CONCERNS ABOUT SERVING AS A JUROR?
18              PROSPECTIVE JUROR:  NONE.
19              THE COURT:  ALL RIGHT, MR. PITTS.
20         NOW, OF THE 18 OF YOU, DOES ANYONE HAVE TO USE THE
21    BATHROOM?
22                        (HANDS RAISED.)
23              THE COURT:  THAT COFFEE RAN THROUGH?  IT IS 11:19.
24    THIS IS WHAT WE ARE GOING TO DO.  AS YOU CAN TELL, IT HAS
25    TAKEN ME A LITTLE BIT OVER AN HOUR TO TALK TO THIS FRONT ROW.
```

1      I NOW AM GOING TO NEED TO TALK TO THE BACK ROW.  AND

2    BECAUSE I WANT TO BE ABLE TO HAVE SOME DECISIONS MADE AND LET

3    YOU GO ON WITH YOUR LIVES, WE'RE NOT TAKING LUNCH TODAY.

4      SO, IF YOU'RE REALLY HUNGRY, THERE'S SOME VENDING

5    MACHINES.  GET YOURSELF SOME KIND OF SNACK.  BUT I EXPECT THAT

6    WE ARE GOING TO BE HERE PROBABLY TWO TO THREE HOURS, AND I

7    WILL BE DONE.  I'LL HAVE MY JURY IN THE NEXT TWO TO THREE

8    HOURS, PROBABLY CLOSER TO THREE.

9      SO WE ARE GOING TO GO AHEAD AND TAKE A 15-MINUTE BREAK.

10   THERE ARE RESTROOMS OVER WHERE THE JURY ASSEMBLY ROOM WAS.

11   THERE ARE RESTROOMS DOWN THE HALL HERE.

12     I AM GOING TO ASK, AS A NOTE OF BEING GLAD THAT THOSE OF

13   YOU IN THE BACK ARE NOT IN THIS GROUP UP HERE, BECAUSE I KNOW

14   MANY OF YOU WERE LIKE THANK GOODNESS I DIDN'T GET PICKED IN

15   THE FIRST 18, BUT IF YOU SEE THEM IN THE BATHROOM, LET THEM GO

16   FIRST.  BECAUSE THEY NEED TO GET BACK HERE.  I CANNOT START

17   UNTIL I HAVE ALL OF THESE GUYS UP HERE.

18     I NEED YOU THERE, TOO.  THESE ONES IT IS MUCH MORE CLEARER

19   TO ME I'M MISSING THEM IF I'M MISSING THEM.  SO LET THEM GO

20   FIRST.

21     THE OTHER THING, AND YOU ARE NOW INSTRUCTED, AND WHOEVER

22   IS ON THE JURY WILL, BY THE END OF THE TRIAL, BE ABLE TO

23   MEMORIZE THIS, INSTRUCTIONS THAT I'M GIVING YOU.  HERE'S YOUR

24   ADMONITION.  AND THAT IS, THAT IT IS IMPORTANT THAT YOU

25   REMEMBER, AND YOU ARE INSTRUCTED, NOT TO DISCUSS THIS CASE

```
 1   WITH ANY PERSON UNTIL IT IS ULTIMATELY SUBMITTED TO THEM FOR

 2   DECISION.  THAT INCLUDES ALL OF YOUR FELLOW PROSPECTIVE

 3   JURORS, THE PARTICIPANTS, THE ATTORNEYS, THE WITNESSES, THE

 4   SPECTATORS, MEMBERS OF YOUR FAMILY, YOUR FRIENDS.  YOU MAY NOT

 5   TWEET, YOU MAY NOT USE SOCIAL MEDIA.  I FORGOT TO GET THE LIST

 6   FROM MY KIDS ABOUT ALL OF THE CURRENT AND HOT PROGRAMS.  LET'S

 7   SEE, YOU WOULD PROBABLY KNOW THEM ALL, RIGHT?  NO FACEBOOKING,

 8   NO LINKED-IN, NO TWEETER, NO --

 9            PROSPECTIVE JUROR:  INSTAGRAM.

10            THE COURT:  INSTAGRAM.  THANK YOU.

11      YOU CAN'T GO OUT OF THIS COURTROOM AND SEND SOMEONE A

12   NOTE.  YOU WILL NEVER GUESS WHAT, I AM SITTING ON -- I COULD

13   BE A JUROR IN AN APPLE CASE.  YOU CANNOT DO IT.  YOU ARE

14   INSTRUCTED YOU WILL BE IN CONTEMPT OF COURT.

15      NOW, THE LAST TIME I HAD A JUROR WHO THOUGHT SHE WAS DOING

16   SOMETHING THAT WAS, YOU KNOW, NOT REALLY A VIOLATION OF THE

17   RULE, BUT DID ASK AN ATTORNEY ABOUT, YOU KNOW, HOW LONG THEY

18   THOUGHT A CASE WOULD LAST, ET CETERA, EVEN THOUGH I TOLD AND

19   GAVE THE INSTRUCTION YOU ARE NOT SUPPOSED TO TALK TO ANYBODY

20   ABOUT ANYTHING.

21      I FOUND OUT AFTER THE TRIAL FINISHED.  AND THIS IS WHAT

22   HAPPENED TO THAT JUROR.  SHE WAS SITTING AT WORK ONE DAY AND A

23   UNITED STATES MARSHAL WALKED UP TO HER DESK AND SERVED HER

24   WITH A SUMMONS.  AND SHE HAD TO SHOW UP BACK HERE IN THIS

25   COURT AND BE CROSS-EXAMINED BY ME OVER WHAT IT WAS SHE DID.
```

1        THIS IS SERIOUS.  AND AS JUDGES, I HAVE TO TELL YOU WE ARE

2   VERY NERVOUS ABOUT JURORS AND SOCIAL MEDIA AND NOT FOLLOWING

3   THESE RULES.  WE DIDN'T USED TO HAVE THESE PROBLEMS.  WE

4   REALLY DIDN'T.

5        BUT, AGAIN, I GO BACK TO THIS BOX.  IT IS INCREDIBLY

6   IMPORTANT FOR EVERYONE THAT THE ONLY THING THAT IS BEING

7   CONSIDERED IS WHAT HAPPENS IN THIS COURTROOM AND THAT YOU AS

8   PROSPECTIVE JURORS ARE NOT INFLUENCED BY ANYBODY ABOUT

9   ANYTHING.  WE TAKE YOU AS YOU COME TO US TODAY.  THAT'S HOW WE

10  TAKE YOU.

11       SO EVEN DURING THIS BREAK, EVEN THOUGH YOU HAVE NOT BEEN

12  PICKED, THESE LAWYERS, THESE PARTIES ARE ENTITLED TO KNOW YOUR

13  OPINIONS WITHOUT YOU BEING INFLUENCED BY SOMEONE ELSE.  SO I

14  DON'T WANT YOU TO TALK TO EACH OTHER ABOUT WHAT WE HAVE TALKED

15  ABOUT HERE BECAUSE THAT'S NOT THE POINT.  THEY NEED TO KNOW

16  WHAT YOU THINK.  OKAY?  THAT'S WHAT'S IMPORTANT.

17       SO, THE LAWYERS HAVE BEEN INSTRUCTED THAT THEY CANNOT TALK

18  TO YOU.  THE PARTIES HAVE BEEN INSTRUCTED THEY CANNOT TALK TO

19  YOU.  SO, IF YOU WALK BY THEM AND THEY PUT THEIR EYES DOWN,

20  THEY DON'T SMILE AT YOU OR SOMETHING, DON'T GIVE THEM -- DON'T

21  FEEL BAD.  THEY ARE JUST -- THEY KNOW THAT THEY CANNOT VIOLATE

22  THIS RULE AS WELL.  OKAY?

23       SO, IT IS 11:24 ACCORDING TO MY CLOCK.  CHECK YOUR

24  WATCHES.  LET'S JUST MAKE IT EASY.  WE WILL START UP -- WE

25  WILL GO A LITTLE BIT MORE.  WE WILL START UP AGAIN AT 11:45.

1          OKAY?  ANY QUESTIONS BEFORE WE TAKE OUR FIRST BREAK?

2          YES, SIR.

3              **PROSPECTIVE JUROR:**  AT WHAT POINT ARE WE TO BRING UP

4      OUR CONCERNS --

5              **THE COURT:**  WHY DON'T -- WHY DON'T YOU TAKE THE MIC.

6              **PROSPECTIVE JUROR:**  SORRY, VERY SORRY.

7          AT WHAT POINT DO I BRING UP A CONCERN I MIGHT HAVE OF

8      SERVING ON THIS JURY?  IS THAT WHEN I HAD THE MIC?

9              **THE COURT:**  THAT WAS WHEN YOU HAD THE MIC.  SO WHAT'S

10     YOUR CONCERN?

11             **PROSPECTIVE JUROR:**  FORGIVE ME.  I'M SO SORRY.

12             **THE COURT:**  NO.

13             **PROSPECTIVE JUROR:**  SITTING LONG TIMES FOR ME, I KNOW

14     THIS IS LENGTHENING FOR ME, BUT IT'S A CONDITION I HAVE THAT

15     MAKES IT VERY DIFFICULT.

16         AND THEN WORKING AT GOOGLE, AND THE MEDIA THAT YOU

17     MENTIONED, I'M KIND OF BOMBARDED BY THAT EVEN THOUGH THAT'S

18     NOT MY STRENGTH OR WHAT I'M DOING EVERY DAY.  THE EMAILS, THE

19     WEBSITES OPEN, THAT KIND OF STUFF.

20         AM I NOT GOING TO BE ABLE TO GO TO WORK?  SO THAT WOULD BE

21     A CONCERN.  SORRY TO BRING THAT UP.

22             **THE COURT:**  TWO THINGS.  ONE IS, DO YOU HAVE BACK

23     PROBLEMS?

24             **PROSPECTIVE JUROR:**  YES, LOWER BACK PROBLEMS.

25             **THE COURT:**  SO, JURORS DURING MY TRIAL CAN STAND AS

```
1    MUCH AS THEY WANT.

2              PROSPECTIVE JUROR:  THANK YOU.

3         THE COURT:  I THINK IT'S ACTUALLY HEALTHY FOR YOU TO

4    GET UP AND MOVE AROUND.  FRANKLY, IF IT WAS MORE APPROPRIATE

5    FOR A JUDGE TO GET UP AND MOVE AROUND MORE OFTEN, I WOULD,

6    TOO, BUT EVERYBODY IS ALWAYS VERY NERVOUS EVERY TIME I STAND

7    UP SO I TEND NOT TO DO IT IN THE MIDDLE OF EVIDENCE.

8         BUT JURORS ABSOLUTELY HAVE -- I ACCOMMODATE THEM.  WE HAVE

9    LOTS OF CHAIRS, STAND UP BY THE WALL.  I MEAN -- SO THAT WILL

10   BE ACCOMMODATED.

11        IN TERMS OF ACCESS TO MEDIA, IF YOU'RE CHOSEN, WE WILL

12   FIGURE OUT HOW TO MAKE SURE THAT YOU ARE PROTECTED.  YOU CAN

13   GO TO WORK AFTER YOU ARE OUT OF TRIAL.  WE GET OUT OF 1:30, SO

14   YOU CAN GO IN THE AFTERNOONS.

15        BUT LET ME TELL YOU, GOOGLE SPENDS PLENTY OF TIME USING

16   COURT RESOURCES.  AND THAT WOULD NOT BE AN EXCUSE, AT LEAST

17   NOT A HARDSHIP REASON FOR ME TO LET YOU OFF.  AND I'M NOT

18   SAYING THAT YOU SUGGESTED THAT THEY ASK, BUT THE ANSWER EVEN

19   IF THEY DID WOULD BE NO.

20        OKAY?

21             PROSPECTIVE JUROR:  THANK YOU.  AGAIN, SORRY.

22        THE COURT:  NO.  NO WORRIES.  NO WORRIES.  ALL RIGHT.

23   SO WE ARE GOING TO -- ANY OTHER QUESTIONS?  I THOUGHT --

24             PROSPECTIVE JUROR:  I HAD THE SAME QUESTION WITH

25   REGARD TO THE BACK AND BEING ABLE TO STAND.
```

1          **THE COURT:**  ALL RIGHT.  SO THAT QUESTION HAS NOW BEEN

2     ANSWERED.

3        ALL RIGHT.  SO, WE WILL STAND IN RECESS THEN UNTIL 11:45.

4        (PROCEEDINGS HELD OUTSIDE THE PRESENCE OF THE PROSPECTIVE

5     JURORS.)

6          **THE CLERK:**  EVERYONE ON THE PANEL IS OUT?

7          **THE COURT:**  ALL RIGHT.  HAVE A SEAT.

8        I WANT TO MAKE SURE, IS THERE ANYONE STILL IN THE

9     COURTROOM WHO IS A PROSPECTIVE JUROR?

10                         (NO RESPONSE.)

11        NO?  OKAY.

12        JUST A QUICK THING BEFORE I LET YOU GO.  JUST A REMINDER

13     THAT YOU GUYS CAN COME INTO THE BATHROOMS RIGHT HERE TO GO TO

14     THE BATHROOM.

15        SECOND, IS THERE A -- NOW THAT WE HAVE SEEN HALF OF THEM,

16     IS THERE A PARTICULAR AREA THAT YOU ALL WANT ME TO ADDRESS?  I

17     DOUBLE CHECKED YOUR QUESTIONNAIRES.  I THINK I'M GETTING MOST

18     OF THEM.  BUT IF THERE'S SOMETHING YOU WANT ME TO DO, LET ME

19     KNOW.

20        AND I WAS VERY SURPRISED.  I WENT BACK.  I WAS LOOKING AT

21     THAT LIST.  ON THE LIST YOU GAVE ME, WE DIDN'T HAVE REAL

22     NETWORKS.  WE HAD THE WITNESSES, BUT THERE WAS A, YOU KNOW,

23     THE REAL NETWORKS COMPANY WAS NOT LISTED ON HERE, WHICH IS

24     UNFORTUNATE.  SO IS THERE SOMETHING -- SO IT'S REAL NETWORKS.

25     IT'S NOT E-HARMONY, IT'S HARMONY, RIGHT?

1    **MR. ISAACSON:**  YES.

2        **THE COURT:**  IS THERE ANY OTHER COMPANY THAT I SHOULD

3    HAVE -- THAT I NEED TO MENTION WITH THESE FOLKS?

4        **MR. COUGHLIN:**  WELL, I DON'T THINK SO, YOUR HONOR.

5    THERE'S SOME SIDE COMPANIES, BUT I DON'T THINK SO.  NAVIO

6    MIGHT BE ONE.

7        **THE COURT:**  ANY OTHER ISSUES YOU WANT ME TO DEAL WITH

8    PROACTIVELY BEFORE YOU GET UP?

9        **MR. COUGHLIN:**  NO, YOUR HONOR.

10        **MR. ISAACSON:**  YOU'VE ASKED A COUPLE OF THEM

11   INDIVIDUALLY ABOUT WHETHER THEY HAVE BACKGROUND OR KNOWLEDGE

12   OF THE REGRESSION ANALYSIS.  THAT MIGHT BE APPROPRIATE FOR A

13   GENERAL QUESTION.

14        **THE COURT:**  I'LL DO THAT.  OKAY.  GIVEN THEIR

15   BACKGROUNDS, MY SENSE WAS THAT THOSE OTHERS DID NOT.  I WILL

16   ASK GENERALLY.

17      GO AHEAD AND TAKE YOUR BREAK.

18        (RECESS TAKEN AT 11:24 A.M.; RESUMED AT 11:45 A.M.)

19        **THE CLERK:**  REMAIN SEATED.  COURT IS IN SESSION.

20   COME TO ORDER.

21        **THE COURT:**  OKAY.  WE ARE BACK ON THE RECORD.  THE

22   RECORD WILL REFLECT THAT THE JURY IS ALL -- PROSPECTIVE JURY

23   PANEL IS ALL BACK.  LET'S SEE.  YES, GO AHEAD.

24      SO, MR. OVALLE, YOU HAD SOMETHING YOU WANTED TO ADD?

25        **PROSPECTIVE JUROR:**  I APOLOGIZE.  I JUST CHECKED AN

```
 1    ITINERARY.  I THOUGHT I WAS LEAVING ON THE 19TH, WHICH MADE
 2    THE SCHEDULE LOOK GREAT, BUT, IN FACT, IT'S THE 18TH OF MY
 3    DEPARTURE.
 4              THE COURT:  WHAT DEPARTURE IS THAT?
 5              PROSPECTIVE JUROR:  I'M FLYING WITH MY FAMILY AWAY ON
 6    VACATION.
 7              THE COURT:  WELL, WHERE ARE YOU GOING?
 8              PROSPECTIVE JUROR:  WE ARE GOING THIS YEAR TO PALM
 9    SPRINGS.
10              THE COURT:  ALL RIGHT.  WELL, THAT'S NOT TOO FAR.
11              PROSPECTIVE JUROR:  IT ISN'T.  YOU'RE RIGHT.
12              THE COURT:  AND, YOU KNOW, IT'S -- WHAT TIME DO YOU
13    LEAVE?
14              PROSPECTIVE JUROR:  CAN I LOOK IN MY PHONE?
15              THE COURT:  MORNING OR NIGHT?
16              PROSPECTIVE JUROR:  I BELIEVE IT'S IN THE AFTERNOON.
17              THE COURT:  OKAY.  SO THE LAWYERS NOW KNOW THAT.  I
18    ALWAYS PUT A LITTLE CUSHION IN THERE, SO HOPEFULLY WE WOULD BE
19    DONE BEFORE YOU LEAVE.  SO THEY NOW KNOW.
20              PROSPECTIVE JUROR:  THANK YOU.
21              THE COURT:  THANK YOU.
22         I ONCE HAD A HUSBAND -- MAYBE I SHOULDN'T TELL YOU ALL.  I
23    HAD A HUSBAND COME UP AND SAY, YOUR HONOR, IT'S MY 25TH
24    WEDDING ANNIVERSARY.  IF I DON'T TAKE MY WIFE, LITERALLY SHE'S
25    GOING TO KILL ME.  WE HAVEN'T GONE ANYWHERE IN 20 YEARS.  I
```

```
1    LET HIM GO.  BUT IT WAS ONLY A WEEK-LONG TRIAL, SO IT WASN'T

2    SO BAD.  AND I KNEW HIS WIFE, WHICH MADE IT WORSE.

3        OKAY.  SO LET'S HAVE THE MIC COME OVER HERE TO MS. RATTIA?

4             PROSPECTIVE JUROR:  YES.  OKAY.

5             THE COURT:  OKAY.  SO, MS. RATTIA, YOU -- ANOTHER

6    AIRPLANE COMPANY, NORTHROP.  YOU SAY MANUFACTURING SUPPORT.

7    WHAT DOES THAT MEAN?

8             PROSPECTIVE JUROR:  SO I SUPPORT ALL OF THE

9    MANUFACTURING DEPARTMENT FOR SAP IMPLEMENTATION.  IF THEY HAVE

10   ANY QUESTIONS, ARE THEY FOLLOWING THE PROCEDURES, ARE THEY

11   BUILDING THE QUALITY PRODUCT.  AND I DO ALL THE AUDITS AND

12   ASSESSMENTS.

13            THE COURT:  YOU SAID SAP IMPLEMENTATION?

14            PROSPECTIVE JUROR:  YES.  I WAS ONE OF THE PERSON ON

15   THE SAP IMPLEMENTATION TEAM.

16            THE COURT:  SO AN INSTANCE OF SOMEONE THINKING

17   EVERYBODY IN THE COURTROOM KNOWS WHAT THAT MEANS.  WHAT DOES

18   SAP MEAN?

19            PROSPECTIVE JUROR:  THAT'S A SYSTEMS APPLICATION THAT

20   WE READ IN ALL THE PROGRAMS.  HOW LONG IT SHOULD TAKE, AND

21   WHAT WE NEED TO DO FOR --

22            THE COURT:  YOU'RE NOT A TECHNICAL PERSON, YOUR BA IS

23   IN ENGLISH AND HISTORY.

24        SO, IS YOUR -- WHAT KIND OF SUPPORT THEN ARE YOU GIVING

25   THEM?
```

1          **PROSPECTIVE JUROR:**  I SUPPORT THEM -- BECAUSE I HAVE

2    A LOT OF EXPERIENCE EVEN THOUGH I DON'T HAVE TECHNICAL

3    BACKGROUND, BUT I HAVE A LOT OF EXPERIENCE AS A PRODUCTION

4    SUPERVISOR.  AND MY BIGGEST BACKGROUND I USED TO BE A TEACHER

5    IN INDIA.  AND SO THEN FROM THE PRODUCTION SUPERVISOR, I WAS

6    HIRED AS A PLANNING ENGINEER THAT USED TO SCHEDULE ALL OF THE

7    SHIPS, HOW LONG IT SHOULD TAKE TO GET IT OUT FROM THE

8    FACILITY.

9          **THE COURT:**  OKAY.  AND DO YOU -- DOES ANYBODY REPORT

10   TO YOU OR ARE YOU SOLELY THERE SUPPORTING THE GROUPS?

11         **PROSPECTIVE JUROR:**  NO ONE IS REPORTING TO ME IN THIS

12   FACILITY, NO.

13         **THE COURT:**  ARE YOU A FAMILY OF ENGINEERS?  SO ALL

14   YOUR SONS ARE ENGINEERS, YOUR HUSBAND IS AN ENGINEER?

15         **PROSPECTIVE JUROR:**  THAT'S CORRECT.

16         **THE COURT:**  WELL, YOU MUST FEEL VERY PROUD.  I CAN'T

17   GET ANYONE IN MY FAMILY TO BE A LAWYER.

18      YOU USE MANY OF THE APPLE PRODUCTS?

19         **PROSPECTIVE JUROR:**  YES, I DO.

20         **THE COURT:**  AND SOUNDS LIKE YOU'RE VERY SATISFIED

21   WITH THEM.  NO COMPLAINTS?

22         **PROSPECTIVE JUROR:**  NO.  NOT AT THIS POINT.

23         **THE COURT:**  DO YOU USE THEM MUCH FOR MUSIC?

24         **PROSPECTIVE JUROR:**  YEAH, I HAVE DOWNLOADED THE ITUNE

25   MUSIC AND LEGALLY BOUGHT, BUT I DON'T REALLY USE THE IPOD THAT

```
1    MUCH.  BUT I DO USE IPAD ON A DAILY BASIS.

2           THE COURT:  DID YOU BUY THE IPOD FOR YOURSELF OR FOR

3    YOUR SONS OR HUSBAND?

4           PROSPECTIVE JUROR:  IT WAS A GIFT FROM MY SONS.

5           THE COURT:  IT WAS A GIFT FROM YOUR SONS TO YOU?

6           PROSPECTIVE JUROR:  YES.

7           THE COURT:  THEY WERE TRYING TO BRING YOU INTO THE

8    DIGITAL MUSIC AGE?

9           PROSPECTIVE JUROR:  NO, NOT REALLY.  BECAUSE I WAS

10   OUT SICK AT THAT TIME, AND -- LAST YEAR.  AND I WAS GOING TO

11   BUY IT MYSELF.  SO THEY DON'T KNOW WHAT TO BUY FOR ME.  SO

12   ONCE THEY HEARD I WANT TO BUY IT, SO THEY DECIDED TO GET IT

13   BEFORE I BOUGHT IT.

14          THE COURT:  EXCELLENT.  WELL, THOSE ARE GOOD SONS.

15      AND THEN YOU AT THIS POINT JUST FOCUSED ON USING THE ITUNE

16   STORE FOR YOUR SOURCE OF MUSIC, YOU ARE NOT USING ANYTHING

17   ELSE?

18          PROSPECTIVE JUROR:  THAT'S CORRECT.

19          THE COURT:  ANY CONCERNS ABOUT SITTING ON THIS JURY?

20          PROSPECTIVE JUROR:  NO.

21          THE COURT:  OKAY.  LET'S PASS IT TO MR. SHARMA?

22          PROSPECTIVE JUROR:  YES.

23          THE COURT:  SO, MR. SHARMA, CAN YOU EXPLAIN TO ME

24   WHAT YOU DO?  I TAKE IT YOU ARE SENIOR VICE PRESIDENT OF

25   OPERATIONS.
```

1          **PROSPECTIVE JUROR:**  THAT'S CORRECT.

2          **THE COURT:**  AND THE COMPANY, IT'S 314E, AM I --

3          **PROSPECTIVE JUROR:**  YES, THAT'S CORRECT.

4          **THE COURT:**  WHAT DOES THAT STAND FOR?

5          **PROSPECTIVE JUROR:**  WELL, THE FOUNDER IS A

6     MATHEMATICIAN.  SO IT'S -- PHI, PI AND E, BUT WE HAVE NOTHING

7     TO DO -- WE DO HEALTHCARE IT CONSULTING.

8          **THE COURT:**  IT HAS NOTHING TO DO WITH PIE?

9          **PROSPECTIVE JUROR:**  NOTHING TO DO WITH PIE.

10         **THE COURT:**  AND ON MARCH 14TH, DO YOU ALWAYS BUY

11    PIES?  I DO.

12         **PROSPECTIVE JUROR:**  YES, WE DO.  WE HAVE A PIE DAY.

13         **THE COURT:**  YES.  WE HAVE A PIE DAY, TOO.  MY KIDS

14    ALWAYS REMIND ME TO PICK UP THE PIE ON MARCH 14TH.

15       WHAT DO YOU DO IN YOUR OPERATIONS ROLE?

16         **PROSPECTIVE JUROR:**  I HAVE BEEN WITH THIS COMPANY FOR

17    OVER SIX YEARS NOW.  I HAVE HAD MULTIPLE ROLES FROM SALES AND

18    THE ACCOUNT MANAGEMENT.  CURRENTLY I'M MANAGING THE ENTIRE

19    TEAM OF SALES ACCOUNT MANAGERS, RECRUITERS, AND ADMINISTRATIVE

20    STAFF.

21         **THE COURT:**  HAVE YOU DONE PURCHASING FOR THE COMPANY?

22         **PROSPECTIVE JUROR:**  YES, I'M INVOLVED WITH IT.  I

23    REPORT TO THE OWNER, AND IT'S A SMALL COMPANY, SO MOST

24    PURCHASING DECISIONS WE TAKE TOGETHER.

25         **THE COURT:**  HOW BIG IS THE COMPANY?

```
 1                 PROSPECTIVE JUROR:  IN TERMS OF NUMBER OF EMPLOYEES,
 2      WE ARE ABOUT 40-ODD.  A LOT OF OUR EMPLOYEES ACTUALLY WORK
 3      OFF-SITE, SO THAT WILL BE ANOTHER HUNDRED.
 4                 THE COURT:  AND WHAT IS THE MAIN PURPOSE OF THE
 5      COMPANY?
 6                 PROSPECTIVE JUROR:  WE SUPPORT ELECTRONIC MEDICAL
 7      RECORD IMPLEMENTATION.
 8                 THE COURT:  SO THE SAME KIND OF RECORDS THAT WE WERE
 9      TALKING ABOUT WITH MR. BARRIOS; IS THAT RIGHT?
10                 PROSPECTIVE JUROR:  ABSOLUTELY.  THERE IS A COMPANY
11      CALLED EPIC.  WE SUPPORT THEIR PRODUCT.
12                 THE COURT:  OKAY.  HAVE YOU -- DO YOU HAVE ANY
13      EXPERIENCE IN TERMS OF PROGRAMMING, IN TERMS OF BEING INVOLVED
14      WITH SOFTWARE OR FIRMWARE UPGRADES?
15                 PROSPECTIVE JUROR:  NO.  I AM NOT A PROGRAMMER.
16                 THE COURT:  WHAT SUB-MAJOR DID YOU HAVE IN TERMS OF
17      YOUR ENGINEERING DEGREE?
18                 PROSPECTIVE JUROR:  ELECTRONICS AND
19      TELECOMMUNICATION.
20                 THE COURT:  OKAY.  AND ANY EXPERIENCE OR KNOWLEDGE,
21      TRAINING IN FINANCE?
22                 PROSPECTIVE JUROR:  NO.
23                 THE COURT:  ECONOMICS?
24                 PROSPECTIVE JUROR:  NO.
25                 THE COURT:  ACCOUNTING?
```

```
 1            PROSPECTIVE JUROR:  NO.  I'VE DONE MY MBA, SO I'VE

 2   HAD THESE SUBJECTS, FINANCE AND ACCOUNTING, BUT OTHER THAN

 3   THAT, NO TRAINING.

 4            THE COURT:  WHEN YOU WERE TAKING YOUR MBA COURSE, DID

 5   YOU TAKE A COURSE ON ANTITRUST LAW?

 6            PROSPECTIVE JUROR:  NO.

 7            THE COURT:  GIVEN YOUR POSITIVE VIEWS OF MR. JOBS,

 8   CAN YOU GIVE THE PLAINTIFFS A FAIR SHAKE IN THIS CASE?

 9            PROSPECTIVE JUROR:  YES.

10            THE COURT:  THE OTHER SOURCE WHERE YOU'VE DOWNLOADED

11   MUSIC, I CAN'T QUITE TELL.  WHAT SOURCE?

12            PROSPECTIVE JUROR:  IT'S A SITE FOR DOWNLOADING

13   INDIAN MUSIC.

14            THE COURT:  WHAT IS IT CALLED?

15            PROSPECTIVE JUROR:  SAAVN.

16            THE COURT:  SO S-A --

17            PROSPECTIVE JUROR:  -- A-A-V-N.

18            THE COURT:  V-N.  OKAY.

19       ANY CONCERNS ABOUT SERVING?

20            PROSPECTIVE JUROR:  YES, I DO HAVE A QUESTION.

21       I AM ACTUALLY GOING TO BE OUT OF COUNTRY LEAVING

22   DECEMBER 6TH FOR TWO AND A HALF WEEKS.  THIS IS A TRIP WE

23   PLANNED ABOUT TWO AND A HALF MONTHS BACK.

24            THE COURT:  SO WHEN YOU WERE SENT THE QUESTIONNAIRE

25   ASKING FOR YOUR TRAVEL PLANS, THAT TIME FRAME WAS INCLUDED.
```

```
1    WHY DIDN'T YOU LET US KNOW THEN?

2             PROSPECTIVE JUROR:  I WASN'T SURE HOW LONG THE TRIAL

3    GO.  I THOUGHT IT WAS GOING TO BE ONE DAY.

4             THE COURT:  NO.  THE FORM THAT WAS SENT TO EVERYBODY

5    GAVE A SPECIFIC RANGE; THROUGH THE 12TH AND THE ORIGINAL FORM

6    THAT WAS MAILED TO YOU AT HOME.

7        WHEN DID YOU MAKE THESE PLANS?

8             PROSPECTIVE JUROR:  I BOOKED MY TICKETS IN AUGUST OF

9    THIS YEAR.

10            THE COURT:  AND DO YOU HAVE ACCESS TO THAT ON YOUR

11   PHONE?

12            PROSPECTIVE JUROR:  I CAN TRY.

13            THE COURT:  OKAY.  I'LL ASK YOU FOR THAT AFTER THE

14   BREAK.

15            PROSPECTIVE JUROR:  SURE.

16            THE COURT:  NOW, YOU INDICATED THAT YOU HAD SOME

17   EXPOSURE TO REAL NETWORKS OR AT LEAST FAMILIAR WITH THEM?

18            PROSPECTIVE JUROR:  I'VE HEARD THE NAME.  I DO

19   REMEMBER IT BEING SOMETHING TO DO AGAIN WITH MUSIC, BUT I

20   DON'T REMEMBER EXACTLY WHAT IT WAS.

21            THE COURT:  SO YOU CAN'T REMEMBER MUCH OTHER THAN THE

22   NAME?

23            PROSPECTIVE JUROR:  THAT'S RIGHT.

24            THE COURT:  HOW ABOUT HARMONY?

25            PROSPECTIVE JUROR:  NO.
```

```
 1              THE COURT:  OKAY.  LET'S PASS IT TO MS. SPRAGUE.

 2         STILL MORNING.  SO GOOD MORNING.

 3              PROSPECTIVE JUROR:  GOOD MORNING.

 4              THE COURT:  WHAT IS YOUR CURRENT STATUS?  YOU DON'T

 5    HAVE ANYTHING LISTED IN TERMS OF YOUR OCCUPATION.

 6              PROSPECTIVE JUROR:  I HAVE BEEN A FULL-TIME MOTHER

 7    UNTIL RECENTLY.

 8              THE COURT:  OKAY.

 9         AND BY THAT YOU MEAN YOUR KIDS ARE NOW IN COLLEGE BECAUSE

10    YOU ARE STILL A MOM.

11              PROSPECTIVE JUROR:  YES.  OF COURSE.  YOU NEVER

12    STOP --

13              THE COURT:  NEVER STOP BEING A MOM.  YOUR KIDS ARE

14    OFF IN COLLEGE.  ARE YOU DOING ANY VOLUNTEER WORK ANYWHERE?

15              PROSPECTIVE JUROR:  YEAH.  ALAMEDA COUNTY FOOD BANK.

16              THE COURT:  TELL SUSAN BATESON I SAID HELLO.

17              PROSPECTIVE JUROR:  OKAY.

18              THE COURT:  THAT IS A GREAT INSTITUTION.

19         SO ARE YOU FAMILIAR WITH REGRESSION ANALYSES?

20              PROSPECTIVE JUROR:  YEAH.

21              THE COURT:  AND DID YOU -- YOU STUDIED ECONOMICS,

22    YES?

23              PROSPECTIVE JUROR:  YES.

24              THE COURT:  THERE WERE A NUMBER OF ECONOMICS

25    PROFESSORS LISTED AS POTENTIAL WITNESSES.
```

```
 1              PROSPECTIVE JUROR:  DON'T KNOW ANY OF THEM.

 2         THE COURT:  YOU DON'T KNOW THEM?

 3              PROSPECTIVE JUROR:  NO.

 4         THE COURT:  OKAY.  DID YOU SPECIALIZE IN A PARTICULAR

 5    AREA OF ECONOMICS AT CAL?

 6              PROSPECTIVE JUROR:  NO.

 7         THE COURT:  WHEN YOU BECAME A FINANCIAL ANALYST, WAS

 8    THAT RIGHT AFTER UNDER GRAD?

 9              PROSPECTIVE JUROR:  YES.

10         THE COURT:  AND EXPLAIN TO ME WHAT YOUR DUTIES WERE

11    THERE.

12              PROSPECTIVE JUROR:  WELL, I FIRST WORKED AT A BANK

13    AND THAT WAS KIND OF NUMBER CRUNCHING.  THEN I WORKED IN THE

14    CONSULTING DEPARTMENT OF AN ACCOUNTING FIRM, AND I DID --

15    COMPILED FINANCIAL STATEMENT PROJECTIONS FOR SMALL BUSINESSES,

16    COST PROPOSALS.

17         THE COURT:  DID YOU EVER DO ANYTHING IN THE MUSIC

18    INDUSTRY?

19              PROSPECTIVE JUROR:  NO.

20         THE COURT:  WHEN DID YOU GET YOUR BA?

21              PROSPECTIVE JUROR:  '84.

22         THE COURT:  AND WHAT DOES YOUR HUSBAND DO?

23              PROSPECTIVE JUROR:  HE'S A CONSULTANT.

24         THE COURT:  MANAGEMENT CONSULTANT --

25              PROSPECTIVE JUROR:  YES.
```

1          **THE COURT:**  -- OR SOME OTHER KIND OF CONSULTANT?

2          **PROSPECTIVE JUROR:**  MANAGEMENT CONSULTANT.

3          **THE COURT:**  BUT HE HAS HIS OWN BUSINESS?

4          **PROSPECTIVE JUROR:**  NO.

5          **THE COURT:**  IT SAYS "SELF-EMPLOYED".

6          **PROSPECTIVE JUROR:**  WELL, YEAH, HE WORKS FOR

7     SOMEBODY.

8          **THE COURT:**  WHO IS THAT?

9          **PROSPECTIVE JUROR:**  COLLABORATIVE CONSULTING.

10         **THE COURT:**  DOES HE HAVE A SPECIALTY?

11         **PROSPECTIVE JUROR:**  SALES FORCE MANAGEMENT.

12         **THE COURT:**  NOTHING IN PARTICULAR WITH THE MUSIC

13    INDUSTRY?

14         **PROSPECTIVE JUROR:**  HUH-UH.

15         **THE COURT:**  THAT'S A NO?

16         **PROSPECTIVE JUROR:**  YES.

17         **THE COURT:**  THE REASON I SAY THAT IS SHE IS TYPING IT

18    DOWN.  SO WHEN THEY SAY UH-HUM OR HUH-UH, IT'S NOT QUITE CLEAR

19    ON THE TRANSCRIPT.

20       OTHER THAN YOUR BA, DO YOU HAVE -- WHAT'S THE SOURCE, IF

21    ANY, OF YOUR EXPERIENCE IN FINANCE OR ACCOUNTING, YOUR BA AND

22    YOUR FIRST JOB OR TWO JOBS?

23         **PROSPECTIVE JUROR:**  NONE.  JUST USING IT IN MY WORK.

24         **THE COURT:**  WOULD THE SAME THING BE FOR ECONOMICS AND

25    MATHEMATICS?

101

```
 1              PROSPECTIVE JUROR:  UH-HUH.

 2          THE COURT:  YES?

 3              PROSPECTIVE JUROR:  YES.

 4          THE COURT:  YOU'VE NEVER OWNED OR BOUGHT AN IPOD?

 5              PROSPECTIVE JUROR:  I HAVE ONE.  I GOT IT AS A GIFT.

 6          THE COURT:  OKAY.  DO YOU DOWNLOAD MUSIC FROM ANY

 7      OTHER SOURCE OTHER THAN THE ITUNE STORE?

 8              PROSPECTIVE JUROR:  NO.

 9          THE COURT:  DO YOU REMEMBER WHEN YOU RECEIVED YOUR

10      IPOD?

11              PROSPECTIVE JUROR:  FEELS LIKE FOUR OR FIVE YEARS

12      AGO, BUT IT COULD BE LONGER.

13          THE COURT:  OKAY.  ANY CONCERNS ABOUT SERVING ON THE

14      JURY?

15              PROSPECTIVE JUROR:  NO.

16          THE COURT:  OKAY.  THANK YOU.

17         MR. VICTORIA, GOOD AFTERNOON.

18              PROSPECTIVE JUROR:  GOOD AFTERNOON, YOUR HONOR.

19          THE COURT:  YOU HAVE VIRTUALLY EVERY APPLE PRODUCT

20      THAT WAS ON THIS QUESTIONNAIRE.

21              PROSPECTIVE JUROR:  I HAVE A LOT OF EXPERIENCE WITH A

22      LOT OF THE PRODUCTS, YES.

23          THE COURT:  AND YOU SAY YOU ARE JUST SOMEWHAT

24      SATISFIED.  A LOT OF TIMES I GET VERY, OR NOT AT ALL, MAYBE

25      NEUTRAL, BUT YOU'RE KIND OF RIGHT THERE IN THE MIDDLE.
```

1    CAN YOU TELL ME WHY IT'S SOMEWHAT?  WHAT IS KIND OF GOOD

2    AND WHAT'S BAD?

3            **PROSPECTIVE JUROR:**  PERSONAL EXPERIENCE.  MY BROTHER

4    HAD AN IPHONE 4S, UPGRADED IT TO A 7.0, BREAKED (SIC) HIS

5    PHONE.  WENT TO THE APPLE STORE.  APPLE SAID THEY COULDN'T DO

6    ANYTHING ABOUT IT EXCEPT YOU CAN BUY A NEW ONE.  SO IT'S

7    SOMEWHAT SATISFIED.  IT'S SOMEWHAT TYPICAL.

8            **THE COURT:**  SO YOU SAID HE BROKE HIS PHONE?

9            **PROSPECTIVE JUROR:**  HE DID NOT.  HE UPGRADED THE

10   SOFTWARE, AND HIS PHONE WOULD THEN TURN ON AFTER THE FACT.

11           **THE COURT:**  OH, REALLY.  OKAY.  SO THIS WAS ON A --

12           **PROSPECTIVE JUROR:**  IPHONE, I THINK EITHER 4S OR 4.

13   I DON'T REMEMBER.

14           **THE COURT:**  AND HE DOWNLOADED THE SOFTWARE?

15           **PROSPECTIVE JUROR:**  YES.

16           **THE COURT:**  AND THEN IT DIDN'T -- THEN IT WOULDN'T

17   WORK AFTER THAT?

18           **PROSPECTIVE JUROR:**  YES, YOUR HONOR.

19           **THE COURT:**  OKAY.

20     WELL, THIS CASE DOESN'T DEAL WITH IPHONES, DEALS WITH

21   IPODS.

22     SO, CAN YOU SIT IN JUDGMENT IN THIS CASE AND NOT HOLD THAT

23   AGAINST APPLE BECAUSE WE HAVE NO EVIDENCE ABOUT WHAT THE

24   ISSUES WERE OR ANYTHING LIKE THAT?

25           **PROSPECTIVE JUROR:**  YES, YOUR HONOR.

1          **THE COURT:**  ARE YOU SURE?

2          **PROSPECTIVE JUROR:**  YES.

3          **THE COURT:**  SO WHAT ARE YOU SATISFIED WITH?  WHAT IS

4     ON THE GOOD SIDE?

5          **THE CLERK:**  DID YOU TURN OFF THE BUTTON ON THE

6     BOTTOM?

7          **THE COURT:**  THERE WE GO.

8          **THE CLERK:**  HOLD IT RIGHT UP THERE.

9          **PROSPECTIVE JUROR:**  SATISFIED WITH USER EXPERIENCE

10    AND USABILITY.

11         **THE COURT:**  OKAY.  HOW ABOUT YOUR EXPOSURE TO DRM?

12    EXPLAIN OR GIVE ME ANY INFORMATION YOU HAVE ABOUT DRM AND --

13         **PROSPECTIVE JUROR:**  IT WAS, I GUESS, IN OUR

14    GENERATION -- MY GENERATION, FROM PERSONAL EXPERIENCE, SORT OF

15    A HINDERANCE, YET NOT TOO WORRIED ABOUT IT MYSELF BECAUSE I

16    TEND TO STREAM MORE MUSIC THAN TO PURCHASE AND DOWNLOAD.

17         **THE COURT:**  OKAY.

18       DO YOU HAVE ANY MEMORY OF HAVING INTERACT -- DOWNLOADED

19    INFORMATION IN THAT 2006 TO 2009 TIME PERIOD?

20         **PROSPECTIVE JUROR:**  DOWNLOADED MUSIC TO SPECIFICALLY

21    ITUNES OR?

22         **THE COURT:**  ATTEMPTED TO DO IT THROUGH ANY OTHER

23    SOURCE --

24         **PROSPECTIVE JUROR:**  HUM --

25         **THE COURT:**  -- ON THE IPOD.

1          **PROSPECTIVE JUROR:** I WOULDN'T BE ABLE TO

2     SPECIFICALLY TELL YOU WHICH SONG -- I DID DOWNLOAD MUSIC

3     DURING THAT TIME PERIOD, YES.

4          **THE COURT:** DO YOU HAVE ANY GENERAL MEMORIES ABOUT

5     THE EXPERIENCE, POSITIVE OR NEGATIVE?

6          **PROSPECTIVE JUROR:** I CAN'T REMEMBER.

7          **THE COURT:** OKAY.

8        AND NO GENERAL FEELING ONE WAY OR THE OTHER?

9          **PROSPECTIVE JUROR:** NO.

10         **THE COURT:** NOW, YOU SAID THE OTHER SOURCE YOU USE IS

11    SOUND CLOUD?

12         **PROSPECTIVE JUROR:** YES.

13         **THE COURT:** ANY CONCERNS ABOUT SITTING ON THE JURY?

14         **PROSPECTIVE JUROR:** JUST LIKE EVERYONE ELSE, WORK.

15         **THE COURT:** YES, I CAN UNDERSTAND THAT.

16       IN TERMS OF YOUR BEING AN ENGINEERING TECHNICIAN, CAN YOU

17    GIVE ME A LITTLE BIT MORE INFORMATION?

18         **PROSPECTIVE JUROR:** SURE.

19       I WORK ON A TEAM CALLED PERFORMANCE EVALUATION AND

20    COMPETITIVE ASSESSMENT FOR SMART PHONES AND TABLETS. WE

21    PRETTY MUCH -- OUR COMPANY PURCHASES THE BEST OF TECHNOLOGIES,

22    ALL SMART PHONES AND TABLETS, AND WE DO BENCHMARKING

23    PERFORMANCE AND USER EXPERIENCE TESTING.

24         **THE COURT:** AND YOU HAVE BEEN DOING THAT JUST UNDER

25    TWO YEARS?

1          **PROSPECTIVE JUROR:**  YES.

2          **THE COURT:**  DID YOU DO THAT -- FOR WHOM ARE YOU DOING

3    THAT?

4          **PROSPECTIVE JUROR:**  INTEL.

5          **THE COURT:**  OKAY.  AND THE CUSTOMER SUPPORT WAS ALSO

6    FOR INTEL?

7          **PROSPECTIVE JUROR:**  THAT WAS FOR A DIFFERENT TECH

8    COMPANY TANGO.

9          **THE COURT:**  TANGO?

10         **PROSPECTIVE JUROR:**  YES.

11         **THE COURT:**  WHAT KIND OF CUSTOMER SUPPORT?

12         **PROSPECTIVE JUROR:**  IT WAS PRETTY MUCH DOING --

13   ANSWERING EMAILS FOR USERS ON IOS, ANDROID, AND WINDOWS

14   PLATFORMS WHO HAVE GENERAL QUESTIONS ABOUT THE SOFTWARE AND

15   HOW TO USE IT, AND THINGS OF THAT NATURE.

16         **THE COURT:**  OKAY.  SO YOU FEEL PRETTY VERSED IN THESE

17   KIND OF TECHNOLOGY ISSUES?

18         **PROSPECTIVE JUROR:**  NOT THE PROGRAM INSIDE OF IT, BUT

19   KNOW HOW TO USE, YES.

20         **THE COURT:**  OKAY.  AND HOW INDIVIDUALS MIGHT

21   INTERFACE WITH TECHNOLOGY AND --

22         **PROSPECTIVE JUROR:**  YES, YOUR HONOR.

23         **THE COURT:**  OKAY.

24      ALL RIGHT, MR. VICTORIA, THANK YOU.

25      MR. WELCH?

1      **PROSPECTIVE JUROR:**  GOOD AFTERNOON.

2          **THE COURT:**  GOOD AFTERNOON.

3      ALL RIGHT.  SO LET'S START WITH ECONOMICS, FINANCE.  I

4  TAKE IT YOU'VE -- YOU'RE FAMILIAR WITH REGRESSION ANALYSES?

5          **PROSPECTIVE JUROR:**  YES.

6          **THE COURT:**  AND HAVE YOU EVER CREATED THEM YOURSELVES

7  OR GIVE ME SOME IDEA OF YOUR FAMILIARITY WITH THEM.

8          **PROSPECTIVE JUROR:**  WELL, MY MBA, I WAS A -- FINANCE

9  WAS THE FOCUS.  I'VE CREATED THEM.  I'VE USED THEM IN MY JOB

10  CURRENTLY.  AND ALSO UNDER GRAD.  I WAS AN ECONOMICS AND

11  POLITICAL SCIENCE MAJOR.

12          **THE COURT:**  SO YOU FEEL PRETTY COMFORTABLE EVALUATING

13  THEM?

14          **PROSPECTIVE JUROR:**  YES.

15          **THE COURT:**  AND UNDERSTANDING THE VARIABLES THAT

16  USE -- THAT GO INTO CREATING THEM?

17          **PROSPECTIVE JUROR:**  YES.  NOT KNOWN NATIONAL, HOW THE

18  VARIABLES AFFECT THE RESULTS, YES.

19          **THE COURT:**  MS. SPRAGUE, WOULD THAT BE THE SAME FOR

20  YOU AS WELL?

21          **PROSPECTIVE JUROR:**  YES.

22          **THE COURT:**  ALL RIGHT.  IN TERMS OF YOUR CURRENT JOB,

23  YOU ARE A BOND TRADER?

24          **PROSPECTIVE JUROR:**  YES.

25          **THE COURT:**  AND HAVE YOU BEEN DOING THAT SINCE --

```
1    LOOKS LIKE QUITE A LONG TIME.

2              PROSPECTIVE JUROR:  ON AND OFF, YES.

3         THE COURT:  OKAY.  HOW ABOUT YOUR USE OF TECHNOLOGY

4    AS IT RELATES TO MUSIC?

5              PROSPECTIVE JUROR:  I OWN AN IPOD.  I OWN AN IPAD.

6         THE COURT:  YOU DON'T OWN --

7              PROSPECTIVE JUROR:  I DO.  I CHECKED THEM ALL OFF.

8         THE COURT:  YOU DO OWN AN IPOD.  HOW LONG HAVE YOU

9    USED IT?

10             PROSPECTIVE JUROR:  TEN YEARS?  SOMEWHERE IN THERE.

11        THE COURT:  OKAY.  DID YOU EVER TRY TO DOWNLOAD MUSIC

12   OR OTHER AUDIO CONTENT OTHER THAN USING THE ITUNES STORE?

13             PROSPECTIVE JUROR:  CD'S.  AND I DIDN'T ACTUALLY DO

14   IT.  I HAVE TEENAGERS THAT DO IT FOR ME.

15        THE COURT:  SO YOU DIDN'T HAVE TO DO THAT.  YOU JUST

16   SAID, HERE, LOAD THESE.  I'LL PAY YOU A BUCK A CD OR 50 CENTS

17   A CD.

18             PROSPECTIVE JUROR:  NO.  THEY GOT DINNER THAT NIGHT.

19        THE COURT:  THAT'S THE OTHER WAY TO DO IT.

20      ALL RIGHT.  CD'S, ANY OTHER SOURCE YOU CAN THINK OF?

21             PROSPECTIVE JUROR:  YOU SAID THE ITUNE STORE AND

22   CD'S, AND WHATEVER ELSE THEY USED.

23        THE COURT:  OKAY.  HAVE YOU OR A CLOSE FAMILY MEMBER

24   EVER BEEN INVOLVED IN A LAWSUIT?

25             PROSPECTIVE JUROR:  NO, YOUR HONOR.
```

```
1              THE COURT:  OKAY.  ANY CONCERNS ABOUT SERVING?

2              PROSPECTIVE JUROR:  YOUR HONOR, I'M -- PERSONALLY I

3    OWN THE SHARES OF APPLE.  I OWN THE DEBT OF APPLE.  THE

4    COMPANY I WORK FOR OWNS THE DEBT AND THE EQUITY OF APPLE.  NOT

5    DISCUSSING APPLE AT WORK WOULD BE HARD, IF NOT IMPOSSIBLE.

6              THE COURT:  ALL RIGHT.  SO HOW MANY SHARES DO YOU OWN

7    OR GIVE ME A RANGE?  THAT'S FINE.

8              PROSPECTIVE JUROR:  THE RANGE, I BELIEVE, YOUR HONOR,

9    OF APPLE ITSELF IS AROUND 200 SHARES.  AND THEN OWNING ETS AND

10   ANY OTHER S&P 500 OR BELOW, APPLE WOULD BE PART OF IT.

11             THE COURT:  AND YOU ARE SAYING BLACK ROCK DOES AS

12   WELL?

13             PROSPECTIVE JUROR:  YES.

14             THE COURT:  DO YOU HAVE A SENSE OF HOW MUCH BLACK

15   ROCK OWNS?

16             PROSPECTIVE JUROR:  YOUR HONOR, THE NUMBER IS

17   ENORMOUS, BUT CAN BE LOOKED UP.  THE EQUITY -- MOST OF THE

18   EQUITY IS PROBABLY PUBLIC RECORD.  THE BONDS PROBABLY NOT.

19             THE COURT:  OKAY.  SO IN THIS CASE PLAINTIFFS ARE

20   ASKING FOR HUNDREDS OF MILLIONS OF DOLLARS.

21        NOW, THE QUESTION IS, IF YOU THOUGHT THEY WERE RIGHT, IF

22   YOU THOUGHT THEY PROVED THEIR CASE, UNDER THE LAW COULD YOU

23   AWARD APPROPRIATE DAMAGES?

24             PROSPECTIVE JUROR:  TO BE HONEST WITH, YOUR HONOR, I

25   AM QUESTIONING MYSELF.
```

```
1              THE COURT:  ALL RIGHT.  THAT'S FAIR ENOUGH.

2         YOU WERE ON A JURY?

3              PROSPECTIVE JUROR:  YES.

4              THE COURT:  AND WHAT KIND OF A CASE WAS THAT?

5              PROSPECTIVE JUROR:  WRONGFUL DEATH.

6              THE COURT:  WHAT WAS THE VERDICT?

7              PROSPECTIVE JUROR:  NOT GUILTY.

8              THE COURT:  NOT GUILTY?

9              PROSPECTIVE JUROR:  YES, YOUR HONOR.

10             THE COURT:  SO WRONGFUL DEATH THEY WERE ASKING FOR

11   MONEY DAMAGES, THOUGH, SO YOU FOUND FOR THE DEFENDANT?

12             PROSPECTIVE JUROR:  YES, YOUR HONOR.

13             THE COURT:  OKAY.  THANK YOU, MR. WELCH.

14        MR. WIEGERT?

15             PROSPECTIVE JUROR:  WIEGERT.

16             THE COURT:  WIEGERT?

17             PROSPECTIVE JUROR:  YES.

18             THE COURT:  YOU ARE AN IT CONSULTANT.  CAN --

19             PROSPECTIVE JUROR:  I AM A RETIRED IT CONSULTANT.

20             THE COURT:  RETIRED --

21             PROSPECTIVE JUROR:  ABOUT TEN YEARS AGO.  I HAD MY

22   OWN COMPANY FOR 12 YEARS.  WE -- I HAD EMPLOYEES UP TO SIX,

23   SOMETIMES WORKED BY MYSELF.  WE WENT INTO COMPANIES AND

24   BASICALLY BUILT IT PRODUCTS FOR THEM.

25             THE COURT:  OKAY.
```

110

```
1              PROSPECTIVE JUROR:  SOFTWARE SYSTEMS.

2              THE COURT:  THE REASON WHY THE SECOND HALF OF JURY

3    SELECTION ALWAYS GOES FASTER IS BECAUSE PEOPLE LIKE

4    MR. WIEGERT HAVE BEEN LISTENING SO INTENTLY THAT THEY ANSWER

5    MY QUESTIONS BEFORE I EVEN ASK.  SO FEWER WORDS NEED TO BE

6    SAID.  AND THAT'S APPRECIATED.  I'M SURE EVERYBODY APPRECIATES

7    IT.

8        YOU WORKED IN THE PAST FOR ORACLE AND CISCO YOU SAID, OR

9    IS THAT PART OF THE CONSULTING?

10             PROSPECTIVE JUROR:  PART OF THE CONSULTING.

11             THE COURT:  YOU, IN TERMS OF FINANCE AND ACCOUNTING,

12   IS THAT -- EXPLAIN THAT TO ME.

13             PROSPECTIVE JUROR:  SIGNIFICANT OTHER PERSON I LIVE

14   WITH IS A UNIT CONTROLLER.

15             THE COURT:  A UNIT CONTROLLER?

16             PROSPECTIVE JUROR:  UNIT CONTROLLER.

17             THE COURT:  OKAY.

18             PROSPECTIVE JUROR:  I HAVE HAD ACCOUNTING CLASSES AND

19   OBVIOUSLY A LOT OF INTERACTION WITH ACCOUNTING PEOPLE THAT I

20   DEVELOP THE SYSTEMS FOR.

21             THE COURT:  ANY FAMILIARITY WITH REGRESSION ANALYSES?

22             PROSPECTIVE JUROR:  NO.

23             THE COURT:  IS IT RIGHT THAT YOU DON'T HAVE AN IPOD?

24             PROSPECTIVE JUROR:  CORRECT.

25             THE COURT:  YOU DO HAVE AN IPHONE AND AN IPAD,
```

1    DESKTOP COMPUTER.

2        WHAT'S YOUR SATISFACTION LEVEL?

3            **PROSPECTIVE JUROR:**  AT THIS POINT I'M NEUTRAL.

4            **THE COURT:**  SO HAVE YOU THEN NOT USED OR DOWNLOADED

5    MUSIC EVEN ON TO YOUR IPHONE OR IPAD?

6            **PROSPECTIVE JUROR:**  NEVER.

7            **THE COURT:**  YOU SAID THERE'S A PAYMENT THAT YOU

8    RECEIVED THROUGH A STOCK CLASS ACTION?

9            **PROSPECTIVE JUROR:**  YEAH, BASICALLY.  IT WAS

10    MISREPRESENTATION OF FINANCIAL STATEMENTS.  SMALL COMPANY.

11            **THE COURT:**  AND WERE -- DID YOU JUST TELL ME ABOUT

12    YOUR INVOLVEMENT.  DID YOU JUST RECEIVE A NOTICE?

13            **PROSPECTIVE JUROR:**  I JUST RECEIVED A NOTICE.  FILLED

14    IT OUT.  NO INVOLVEMENT EXCEPT CASH THE CHECK.

15            **THE COURT:**  OKAY.  ANY CONCERNS GIVEN WHAT YOU HAVE

16    HEARD THUS FAR ABOUT SERVING?

17            **PROSPECTIVE JUROR:**  NO.

18            **THE COURT:**  ANYTHING YOU THINK THE PARTIES WOULD LIKE

19    TO KNOW ABOUT YOU IN TERMS OF --

20            **PROSPECTIVE JUROR:**  THE ONLY THING THAT MAY BE, WHICH

21    I MENTIONED, THERE IS THE FACT THAT I ACTUALLY WORKED WITH

22    STEVE JOBS WHEN HE BOUGHT PIXAR FROM LUCAS FILMS.  SO --

23            **THE COURT:**  I DON'T SEE THAT.

24            **PROSPECTIVE JUROR:**  OH, REALLY?

25            **THE COURT:**  WAS IT ON THE BACK OR SOMETHING?

1      **PROSPECTIVE JUROR:**  I JUST CIRCLED WHO I KNEW.  YOU

2   KNOW, FAMILIAR WITH?

3      **THE COURT:**  OKAY.  SO TELL ME ABOUT THAT.

4      **PROSPECTIVE JUROR:**  BASICALLY WHEN STEVE JOBS BOUGHT

5   PIXAR FROM LUCAS FILMS, SOMEONE CONTACTED ME, I AM NOT EVEN

6   SURE WHO IT WAS WITHIN HIS ORGANIZATION.  AND THEY NEEDED

7   SOMEONE TO COME IN THAT KNEW THEIR SOFTWARE SYSTEM VERY WELL

8   BECAUSE THEY NEEDED TO GET FINANCIAL STATEMENTS OUT.  SO I

9   SPENT A YEAR WORKING WITH THEM --

10      **THE COURT:**  YOU WORKED WITH HIM PERSONALLY?

11      **PROSPECTIVE JUROR:**  I WORKED -- I MET HIM

12   PERIODICALLY, LET'S PUT IT THAT WAY.  HE DID NOT OBVIOUSLY SIT

13   THERE AND GO THROUGH TRANSACTIONS.

14      **THE COURT:**  SO GIVE ME A SENSE OF HOW MANY TIMES YOU

15   MET WITH HIM.

16      **PROSPECTIVE JUROR:**  OH, PROBABLY TWO OR THREE, AND

17   THAT'S IT.

18      **THE COURT:**  TWO OR THREE.

19      **PROSPECTIVE JUROR:**  OVER A YEAR.  AND THAT WASN'T

20   NECESSARILY MEETING WITH HIM.  IT WAS RUNNING IN SOME TYPE OF

21   MEETING, THAT TYPE OF THING.

22      **THE COURT:**  SO IN THE CONTEXT OF THOSE, LET'S COUNT

23   THEM -- CALL THEM ENCOUNTERS FOR RIGHT NOW.

24      **PROSPECTIVE JUROR:**  OKAY.

25      **THE COURT:**  HOW LONG WOULD THEY LAST AND WERE THEY

1    SUBSTANTIVE?

2            **PROSPECTIVE JUROR:**  THEY WERE NOT NECESSARILY LONG.

3    NO, THEY WERE NOT.

4            **THE COURT:**  DID YOU FORM AN IMPRESSION OF HIM?

5            **PROSPECTIVE JUROR:**  I'VE ALWAYS HAD A VERY HIGH

6    IMPRESSION OF HIM.  I THINK HE'S EXTREMELY CREATIVE.

7            **THE COURT:**  DESPITE HAVING MET AND INTERACTED WITH

8    HIM TWO OR THREE TIMES, DO YOU THINK THAT YOU CAN LISTEN TO

9    THE EVIDENCE IN THIS CASE FAIRLY AND GIVE THE PLAINTIFFS A --

10   TREAT THE PLAINTIFFS FAIRLY IN THIS CASE?

11           **PROSPECTIVE JUROR:**  YES.

12           **THE COURT:**  IN THOSE THREE ENCOUNTERS, DID YOU HAVE

13   ANY NEGATIVE INTERACTION?

14           **PROSPECTIVE JUROR:**  NO.

15           **THE COURT:**  HAS ANYBODY ELSE MET STEVE JOBS

16   PERSONALLY?

17                       (NO RESPONSE.)

18           **THE COURT:**  LOTS OF PEOPLE CIRCLED THE NAME.  AND WE

19   ASKED ARE YOU FAMILIAR WITH.  SO, ALL RIGHT.  NO OTHERS HAVE

20   RAISED THEIR HANDS.

21      LET'S GO TO MS. WRIGHT.

22           **PROSPECTIVE JUROR:**  GOOD AFTERNOON.

23           **THE COURT:**  GOOD AFTERNOON.

24      I HAVE TO SAY, THIS IS AN INCREDIBLY ACCOMPLISHED BUNCH.

25   SO MANY ENGINEERS, BA'S, JD'S, A ROCKET SCIENTIST.  I

```
1    SHOULDN'T HAVE MADE MY JOKE ABOUT ROCKET SCIENTISTS.

2        MY SON IS STUDYING AERONAUTICAL ENGINEERING.  SO I LOVE

3    THAT PARTICULAR ROCKET SCIENTIST.

4        IN YOUR CASE, LET'S SEE.  HAVE YOU USED REGRESSION

5    ANALYSES?

6              PROSPECTIVE JUROR:  NOT AT WORK.  I'VE LEARNED ABOUT

7    THEM IN CLASSES.

8              THE COURT:  OKAY.  SO DO YOU THINK YOU COULD

9    COMFORTABLY EVALUATE ONE?

10             PROSPECTIVE JUROR:  I BELIEVE SO.

11             THE COURT:  IN TERMS OF YOUR ENGINEERING, GIVE US ALL

12   A BIT BETTER SENSE OF WHAT IT IS YOU DO.

13             PROSPECTIVE JUROR:  AT MY CURRENT JOB, I'M A

14   PROFESSIONAL SERVICES ENGINEER WHICH MEANS I WORK DIRECTLY

15   WITH CUSTOMERS, HELP THEM TO OPTIMIZE THEIR INTEGRATIONS.  ON

16   THE TECHNICAL SIDE, I DO WHATEVER NEEDS TO BE DONE ANALYZING

17   THEIR DATA OR WRITING SCRIPTS OR DEALING WITH DATABASES.

18       I DON'T WRITE NEARLY AS MUCH CODE AS I USED TO.

19             THE COURT:  YOU HAVE WRITTEN CODE IN THE PAST?

20             PROSPECTIVE JUROR:  YES.  I WORKED FOR NUMEROUS FIRMS

21   BETWEEN 1991 AND 2004.

22             THE COURT:  OKAY.  AND IN A SENSE, IS THAT KIND OF

23   THE PURVIEW OF THE VARIOUS THINGS YOU'VE DONE OVER YOUR

24   CAREER?

25             PROSPECTIVE JUROR:  SO THAT ENCOMPASSES PROFESSIONAL
```

1    SERVICES AND SOFTWARE DEVELOPMENT.  BEFORE THAT I ALSO WORKED

2    IN THE AEROSPACE INDUSTRY AT LOCKHEED WHERE I DID STRUCTURE

3    DYNAMICS ANALYSES.

4            THE COURT:  OKAY.  YOU HAVE LOTS OF VARIOUS APPLE

5    PRODUCTS.  YOU RECALL DISTINCTLY HAVING PURCHASED AN IPOD IN

6    THAT PERIOD, 2006 TO 2009?

7            PROSPECTIVE JUROR:  I BELIEVE WE PURCHASED AN IPOD

8    FOR OUR DAUGHTER DURING THAT PERIOD.  SHE WAS IN HIGH SCHOOL.

9            THE COURT:  OKAY.  DID YOU USE IT?

10           PROSPECTIVE JUROR:  I ONLY ASSISTED HER IN

11   DOWNLOADING SONGS FROM ITUNES DURING THAT PERIOD.  I DID NOT

12   USE IT MYSELF.

13           THE COURT:  OKAY.  YOU'RE FAMILIAR WITH DIGITAL

14   RIGHTS MANAGEMENT?

15           PROSPECTIVE JUROR:  I AM FAMILIAR WITH THE CONCEPT.

16   I DON'T HAVE ANY EXPERIENCE WITH IT.

17           THE COURT:  NO STRONG OPINIONS --

18           PROSPECTIVE JUROR:  NO STRONG OPINIONS.

19           THE COURT:  YOU WERE ON A JURY BEFORE?

20           PROSPECTIVE JUROR:  YES.

21           THE COURT:  AND TELL ME ABOUT THAT CASE.

22           PROSPECTIVE JUROR:  THAT WAS A CIVIL CASE.  IT WAS IN

23   SAN MATEO COUNTY COURT.  WE DID REACH A VERDICT AND WE FOUND

24   FOR THE PLAINTIFF.

25           THE COURT:  WHAT WAS THE FACT PATTERN?

1          **PROSPECTIVE JUROR:**  THE LAWSUIT, I BELIEVE, WAS FOR

2     NONPAYMENT FOR GOODS FOR A SUPERMARKET THAT HAD GONE BANKRUPT.

3          **THE COURT:**  OKAY.  DID YOU LIKE MIT OR STANFORD

4     BETTER?

5        ALL RIGHT.  YOU DON'T HAVE TO ANSWER THAT ONE.

6          **PROSPECTIVE JUROR:**  IN THIS COURTROOM, I SHOULD

7     PROBABLY NOT ANSWER THAT QUESTION.

8          **THE COURT:**  WE PROBABLY HAVE SOME FROM ALL DIFFERENT

9     PLACES.

10       OKAY.  LET'S PASS IT TO MR. YOUNG.  GOOD AFTERNOON.

11         **PROSPECTIVE JUROR:**  HI.

12         **THE COURT:**  SO TELL ME WHAT YOU DO AS AN AUDITOR FOR

13    THE STATE OF CALIFORNIA.

14         **PROSPECTIVE JUROR:**  I WORK FOR THE DEPARTMENT OF

15    HEALTH CARE SERVICES, AND WE AUDIT PROVIDERS WITHIN THE

16    MEDI-CAL PROGRAM.

17         **THE COURT:**  SO WHAT DOES THAT MEAN?  YOU CHECK TO SEE

18    WHETHER THE DEPARTMENT IS MANAGING THINGS PROPERLY OR THAT THE

19    CLAIMS THAT ARE BEING SENT ARE BEING PROPER?

20         **PROSPECTIVE JUROR:**  IT'S MORE RELATED TO FRAUD AND

21    ABUSE.

22         **THE COURT:**  AND HAVE YOU DONE THAT FOR THE ENTIRE

23    NINE YEARS?

24         **PROSPECTIVE JUROR:**  YES.

25         **THE COURT:**  AND THEN BEFORE THAT, WHAT DID YOU DO?

```
1    IT WAS ONLY EIGHT MONTHS THAT YOU SERVED AS AN ACCOUNTANT?

2              PROSPECTIVE JUROR:  YES.

3              THE COURT:  DID YOU HAVE THESE JOBS RIGHT AFTER YOU

4    RECEIVED YOUR BA?

5              PROSPECTIVE JUROR:  YES.

6              THE COURT:  DO YOU HAVE ANY EXPOSURE TO REGRESSION

7    ANALYSES?

8              PROSPECTIVE JUROR:  I DON'T REMEMBER.

9              THE COURT:  AND YOU CHECKED THAT YOU HAVE AN IPOD.

10   YOU DIDN'T GET IT IN THAT RELEVANT TIME PERIOD.  WAS THAT FOR

11   YOU OR FOR SOMEONE ELSE, THE IPOD?

12             PROSPECTIVE JUROR:  MYSELF.

13             THE COURT:  DO YOU REMEMBER WHEN YOU BOUGHT IT?

14             PROSPECTIVE JUROR:  MAYBE THREE YEARS AGO.  I DIDN'T

15   BUY IT.  IT WAS A FREE GIFT FOR OPENING A BANK ACCOUNT.

16             THE COURT:  DID YOU USE IT AFTER YOU RECEIVED IT?

17             PROSPECTIVE JUROR:  YEAH.  I USE IT RIGHT NOW, TOO,

18   TO THIS DAY.

19             THE COURT:  OKAY.  AND OTHER THAN THE ITUNES STORE,

20   DO YOU GET -- DO YOU DOWNLOAD MUSIC OR OTHER CONTENT FROM ANY

21   OTHER SOURCE?

22             PROSPECTIVE JUROR:  NO.

23             THE COURT:  SO YOUR VIEW OF APPLE AND STEVE JOBS IS

24   KIND OF ON BOTH ENDS OF THE SPECTRUM, THE WAY YOU RESPONDED TO

25   YOUR QUESTIONS.
```

```
 1        SO, DO YOU THINK YOU CAN, FIRST OF ALL, TREAT APPLE FAIRLY

 2   IN THIS CASE OR DO YOU HAVE A STRONG OPINION ABOUT APPLE?

 3             PROSPECTIVE JUROR:  I HAVE A STRONG NEGATIVE OPINION

 4   OF APPLE.

 5             THE COURT:  OKAY.  LET ME CAN YOU THIS:  WHAT IS

 6   THE -- CAN YOU TELL ME SIMPLY WHAT THAT OPINION IS?

 7             PROSPECTIVE JUROR:  AFTER WE GOT THE FREE IPOD,

 8   MYSELF AND MY WIFE, WE BOTH GOT THE FREE IPODS, WITHIN A YEAR,

 9   WITHIN SIX MONTHS THEY CAME OUT WITH NEW IOS, BUT OUR VERSION,

10   THE GENERATION THAT WE HAVE, THIRD GENERATION WAS TOO OLD TO

11   UPGRADE TO THE NEW IOS, AND WE WEREN'T ABLE TO UPGRADE AND WE

12   WEREN'T ABLE TO USE THE NEWER APPS.

13      THAT WAS PARTICULARLY FRUSTRATING FOR BOTH OF US.

14             THE COURT:  OKAY.

15             PROSPECTIVE JUROR:  AND THEN MY WIFE GOT ME AN IPAD

16   THAT I DIDN'T WANT, AND I DIDN'T UPGRADE TO THE IOS 7.  NOW

17   THAT THEY HAVE IOS 8, MY IPAD IS A 16 GIGABYTE.  IT DOESN'T

18   HAVE ENOUGH ROOM TO UPGRADE TO IOS 8, SO BASICALLY I'M STUCK.

19             THE COURT:  SO BECAUSE OF THAT, YOU DON'T -- YOU HAVE

20   THIS STRONG NEGATIVE OPINION?

21      FRANCES?

22             THE CLERK:  IT'S THE BATTERY.

23             THE COURT:  DO WE HAVE EXTRA BATTERIES?

24                  (PAUSE IN THE PROCEEDINGS.)

25             THE COURT:  ONE OF THESE DAYS WE WILL BE ABLE TO FIND
```

```
1    A HAND HELD MIC THAT GETS THROUGH THE ENTIRE VOIR DIRE.  IT'S

2    ON OUR CHECKLIST OF THINGS TO DO.  GET THE MICROPHONE.  MAKE

3    SURE YOU HAVE THE EXTRA BATTERIES BECAUSE THEY ALWAYS SEEM TO

4    RUN OUT.

5        NO?

6        MR. YOUNG, DO YOU MIND MAYBE COMING UP HERE SO THAT WE

7    WAY -- WE CAN KEEP GOING WHILE SHE'S TRYING TO FIGURE THAT

8    OUT?

9                    (PAUSE IN THE PROCEEDINGS.)

10           THE COURT:  YES, WE HAVE IT?

11           THE CLERK:  SORRY.

12           THE COURT:  I HAVE A BATTERIES CASE, TOO.

13        THERE WE ARE.  GREAT.

14           THE CLERK:  THERE WE ARE.

15           THE COURT:  OKAY.  SO YOU HAVE YOUR STRONG NEGATIVE

16    OPINION IS BASED UPON THAT EXPERIENCE BETWEEN YOU AND YOUR

17    WIFE?

18           PROSPECTIVE JUROR:  YES.

19           THE COURT:  ARE THERE ANY OTHER THINGS THAT HAPPENED

20    THAT LED TO YOU YOUR STRONG NEGATIVE OPINION?

21           PROSPECTIVE JUROR:  PERSONALLY?

22           THE COURT:  YES.

23           PROSPECTIVE JUROR:  NO.

24           THE COURT:  SO THAT'S THE ENTIRETY OF IT, RIGHT?

25           PROSPECTIVE JUROR:  (NODS HEAD.)
```

1          **THE COURT:**  WELL, THERE'S A LOT OF OVERLAP BETWEEN

2     WHAT'S GOING TO -- WHAT THE PARTIES ARE GOING TO TALK ABOUT IN

3     THIS CASE -- OR SOME OVERLAP.

4        DO YOU THINK, GIVEN HOW YOU FEEL, THAT THIS, THAT THIS IS

5     PROBABLY NOT A CASE WHERE YOU CAN BE FAIR AND KIND OF LISTEN

6     TO -- YOUR EXPERIENCE WON'T BE IN EVIDENCE.  AND IT DOESN'T

7     INVOLVE IPADS, IT INVOLVES IPODS.

8        BUT TO THE EXTENT THAT THERE MIGHT BE SIMILARITIES, I HAVE

9     TO KNOW WHETHER YOU CAN PUT THAT OPINION ASIDE.

10          **PROSPECTIVE JUROR:**  I DON'T THINK I CAN.

11          **THE COURT:**  ALL RIGHT.

12        LET'S GO AHEAD AND PASS IT TO MRS. ZEPEDA.

13        ALL RIGHT.  MS. ZEPEDA, WHAT IS YOUR CURRENT OCCUPATION OR

14     POSITION?

15          **PROSPECTIVE JUROR:**  I JUST RECENTLY GOT A CERTIFICATE

16     MEDICAL ASSISTING IN MAY.

17          **THE COURT:**  ARE YOU LIVING WITH YOUR FOLKS?

18          **PROSPECTIVE JUROR:**  YES.

19          **THE COURT:**  DO YOU HAVE A SIBLING THAT LIVES WITH

20     YOU?

21          **PROSPECTIVE JUROR:**  YES.

22          **THE COURT:**  IS THAT THE 15-YEAR-OLD?

23          **PROSPECTIVE JUROR:**  UH-HUH.

24          **THE COURT:**  IS THAT A YES?

25          **PROSPECTIVE JUROR:**  YES.

1          THE COURT:  AND ARE YOU THE OLDEST IN YOUR FAMILY?

2          PROSPECTIVE JUROR:  IN MY CLOSE FAMILY?

3          THE COURT:  ARE YOU THE OLDEST CHILD --

4          PROSPECTIVE JUROR:  YES.  YES.

5          THE COURT:  NOT CHILD, BUT DO YOU HAVE OTHER

6   SIBLINGS?

7          PROSPECTIVE JUROR:  JUST MY SISTER.

8          THE COURT:  JUST YOUR ONE SISTER?

9          PROSPECTIVE JUROR:  UH-HUH.

10          THE COURT:  OKAY.  SO RIGHT NOW YOU DON'T HAVE A

11   POSITION.  YOU'RE LOOKING FOR WORK; IS THAT RIGHT?

12          PROSPECTIVE JUROR:  YES.

13          THE COURT:  AND YOU COME FROM THE GENERATION THAT

14   SEEMS TO BE VERY VERSED IN TECHNOLOGY.  SO HOW LONG HAVE YOU

15   HAD YOUR IPOD?

16          PROSPECTIVE JUROR:  I BOUGHT THAT FOR MY LITTLE

17   COUSIN, NOT FOR ME.

18          THE COURT:  YOU DON'T USE ONE?

19          PROSPECTIVE JUROR:  NO.

20          THE COURT:  HOW ABOUT THE IPHONE?

21          PROSPECTIVE JUROR:  I HAD AN IPHONE FOR TWO YEARS.

22          THE COURT:  DO YOU HAVE ONE NOW?

23          PROSPECTIVE JUROR:  YES.

24          THE COURT:  BUT YOU ARE VERY DISSATISFIED?

25          PROSPECTIVE JUROR:  VERY SATISFIED.

```
1          THE COURT:  SO, IN TERMS OF YOUR SATISFACTION, WHAT

2   IS YOUR RATE OF SATISFACTION?  YOU CHECKED VERY DISSATISFIED.

3          PROSPECTIVE JUROR:  OH, I DID?  I'M SORRY.

4          THE COURT:  THAT'S OKAY.  THAT'S WHY I'M ASKING.

5     ARE YOU VERY SATISFIED?

6          PROSPECTIVE JUROR:  YES.  SORRY ABOUT THAT.

7          THE COURT:  THAT'S ALL RIGHT.

8     DO YOU DOWNLOAD MUSIC?

9          PROSPECTIVE JUROR:  NO.

10          THE COURT:  DO YOU ENJOY MUSIC?

11          PROSPECTIVE JUROR:  YES.

12          THE COURT:  DO YOU USE SOME OTHER DEVICE FOR

13   LISTENING TO MUSIC?

14          PROSPECTIVE JUROR:  YES.  I USE AN APP CALLED MUSIC

15   VIDEO, I BELIEVE.

16          THE COURT:  OKAY.

17          PROSPECTIVE JUROR:  IT JUST MAKES A PLAY LIST FROM

18   YOUTUBE VIDEOS SO YOU CAN LISTEN TO THEM WITHOUT WI-FI OR

19   INTERNET.

20          THE COURT:  WELL, I HAVE TO TELL YOU.  SOMETIMES WHEN

21   I WAS A STATE COURT JUDGE, I WOULD PRESIDE OVER DUI'S.  I

22   ALWAYS FELT BAD FOR THE 19 YEAR OLDS WHO COME INTO COURT,

23   DOING THEIR DUTY, AND SAY, JUDGE, I CAN'T EVEN DRINK AND I

24   HAVE TO SIT HERE IN A DUI?

25     BUT HERE, LOOK, THIS IS SOMETHING YOU KNOW ABOUT, AND YOU
```

```
 1    COULD DELIBERATE ON IT.  DO YOU HAVE ANY CONCERNS ABOUT

 2    SERVING ON THE JURY?

 3              PROSPECTIVE JUROR:  NO.

 4         THE COURT:  OKAY.  LET ME SEE COUNSEL AT SIDEBAR REAL

 5    QUICK.

 6              (SIDEBAR DISCUSSION HELD AND NOT REPORTED)

 7         THE COURT:  OKAY.  OKAY.  MS. DUMOULIN, CAN YOU

 8    PLEASE STAND?  MR. SHARMA, CAN YOU PLEASE STAND?  MR. WELCH,

 9    PLEASE STAND.  AND MR. YOUNG, CAN YOU STAND?

10         OKAY.  I'M GOING TO EXCUSE THE FOUR OF YOU.  THANK YOU FOR

11    YOUR SERVICE.  YOU'RE RELEASED AND FREE TO GO.  OKAY?

12         ALL RIGHT.  WILL THE FOLLOWING FOUR JURORS COME FORWARD --

13    OR PROSPECTIVE JURORS.

14         KENNALEE WELLIVER.  AND MS. WELLIVER, I'M GOING TO HAVE

15    YOU COME UP AND SIT IN SEAT NUMBER 2 HERE.

16         MARIA ROSARIO BARRAZA.  AND IF YOU'LL SIT IN THE SEAT

17    RIGHT OVER HERE IN THE BACK ROW, THAT SECOND SEAT.

18         HOLLY SMITH.  MS. SMITH, YOU ARE GOING TO GO TO THE BACK

19    ROW, THE THIRD SEAT ON THIS SIDE FROM THE END.

20         AND CONRAD ZIOMEK.

21              THE CLERK:  THE LAST NAME IS Z-I-O-M-E-K, CONRAD.

22              THE COURT:  OKAY.  LET'S GIVE THE MIC BACK OVER HERE

23    TO THE FRONT, JUROR NUMBER 2.

24         OKAY.  GOOD AFTERNOON, MS. WELLIVER.

25              PROSPECTIVE JUROR:  GOOD AFTERNOON, YOUR HONOR.
```

124

```
1          THE COURT:  WELLIVER?

2          PROSPECTIVE JUROR:  WELLIVER.

3          THE COURT:  I'M GOING TO HAVE YOU COME UP HERE.

4      YOU ARE CURRENTLY SERVING AS A PARALEGAL; IS THAT RIGHT?

5          PROSPECTIVE JUROR:  NO.  I HAVE A PARALEGAL

6   CERTIFICATE.  I'M WORKING NOW AT A LIBRARY.

7          THE COURT:  OKAY.  AND WHICH LIBRARY ARE YOU WORKING

8   FOR?

9          PROSPECTIVE JUROR:  SAN LORENZO LIBRARY.

10          THE COURT:  WHAT DO YOU -- DO YOU DO KIND OF NORMAL

11  LIBRARIAN DUTIES OR IS THERE OTHER THINGS THAT YOU DO, OR ARE

12  YOU IN MANAGEMENT?

13          PROSPECTIVE JUROR:  I'M A LIBRARY CLERK.  I BASICALLY

14  DEAL WITH PEOPLE'S -- THEIR ACCOUNTS, WHETHER THEY OWE MONEY,

15  WHETHER THEY HAVE LOST OR DAMAGED AN ITEM, AND WHAT HAPPENED

16  TO THE BOOK.

17          THE COURT:  OKAY.  AND YOU INDICATE THAT YOU BOTH

18  HAVE OR PURCHASED FOR OTHERS, BOTH AN IPAD AND AN IPOD?

19          PROSPECTIVE JUROR:  YES.

20          THE COURT:  ARE THEY FOR YOU OR SOMEONE ELSE?

21          PROSPECTIVE JUROR:  I USE OUR OLDER IPOD.  A NEWER

22  ONE FOR MY HUSBAND, AND AN IPAD THAT I PRETTY MUCH USE.

23          THE COURT:  OKAY.  IF -- YOU SAID YOU ARE ONLY

24  SOMEWHAT SATISFIED.  CAN YOU TELL ME WHAT YOU LIKE AND WHAT

25  YOU DON'T LIKE IN TERMS OF YOUR EXPERIENCE?
```

1      **PROSPECTIVE JUROR:**  WELL, I GUESS THE NUMBER ONE

2   THING I LOOK FOR IN SOMETHING IS BATTERY LIFE.  AND MY -- I

3   JUST WISH THE APPLES HAD LONGER BATTERY LIFE.

4      **THE COURT:**  OKAY.

5      **PROSPECTIVE JUROR:**  IT'S WHAT MAKES ME LOOK FOR THE

6   COMPETITION.

7      **THE COURT:**  OKAY.  YOU SAID YOU ARE FAMILIAR WITH

8   DIGITAL RIGHTS MANAGEMENT?

9      **PROSPECTIVE JUROR:**  YES.

10      **THE COURT:**  AND WHAT IS THE SOURCE OF YOUR

11   FAMILIARITY?  DOES IT COME FROM THE APPLE USE OR IS IT IN PART

12   WITH YOUR LIBRARY EXPERIENCE?

13      **PROSPECTIVE JUROR:**  PROBABLY MY APPLE WITH THE IPOD

14   BACK WHEN I FIRST GOT IT, YOU KNOW, HAVING TO DOWNLOAD,

15   GETTING MY PERSONAL CD'S ONTO THE IPOD.  I HAD MY HUSBAND DO

16   IT BECAUSE HE'S AN ENGINEER AND IS REALLY GOOD AT IT.

17      BUT PRETTY MUCH NOW I USE MY IPOD FOR LISTENING TO AUDIO

18   BOOKS.

19      **THE COURT:**  OKAY.  AND YOU REMEMBER PURCHASING THAT

20   IPOD IN THAT PERIOD?

21      **PROSPECTIVE JUROR:**  YES.

22      **THE COURT:**  WHAT OTHER SOURCES DO YOU USE TO DOWNLOAD

23   MUSIC OR OTHER AUDIO CONTENT IN ADDITION TO ITUNES?

24      **PROSPECTIVE JUROR:**  I PRETTY MUCH USE OVER DRIVE

25   MEDIA AND THEN TRANSFER IT TO MY COMPUTER.  AND THEN I HAVE TO

```
1    GO THROUGH ITUNES TO GET IT ONTO MY IPOD.

2            THE COURT:  OKAY.  DO YOU HAVE ANY ISSUES WITH THAT

3    PROCESS?

4            PROSPECTIVE JUROR:  NO.  I STILL USE THAT IPOD.

5            THE COURT:  SO YOU REMEMBER GETTING A 10-DOLLAR

6    COUPON AT LAMPS PLUS?

7            PROSPECTIVE JUROR:  YES.

8            THE COURT:  AND YOU USED THAT?

9            PROSPECTIVE JUROR:  NO.  I WOULD HAVE RATHER HAD $10.

10           THE COURT:  SO YOU RECEIVED IT, BUT YOU DIDN'T END UP

11   USING IT?

12           PROSPECTIVE JUROR:  NO.

13           THE COURT:  YOU'VE BEEN ON A JURY BEFORE IT LOOKS

14   LIKE?

15           PROSPECTIVE JUROR:  YEAH.

16           THE COURT:  YOU SAID MANY, MANY TIMES?

17           PROSPECTIVE JUROR:  WELL, I GUESS I GET CALLED EVERY

18   YEAR, BUT I'VE SERVED ON A CIVIL CASE.

19           THE COURT:  OKAY.  WELL, JUST AS A FORMER STATE COURT

20   JUDGE, I CAN TELL YOU THAT YOU WILL CONTINUE TO GET CALLED

21   EVERY YEAR.  THEY HAVE IT ON A ONE-YEAR CYCLE.

22           PROSPECTIVE JUROR:  SOMETIMES TWICE.

23           THE COURT:  IF IT IS TWICE, YOU CAN COMPLAIN BECAUSE

24   YOU ARE ONLY REQUIRED TO GO ONCE.  EXCEPT UNLESS IT'S ONCE IN

25   STATE AND ONCE IN FEDERAL.  TWO DIFFERENT SYSTEMS.
```

1          ANYWAY, HOW MANY TIMES HAVE YOU ACTUALLY SERVED ON A JURY?

2              **PROSPECTIVE JUROR:**  ONCE.

3              **THE COURT:**  AND THIS WAS A CIVIL CASE?

4              **PROSPECTIVE JUROR:**  YES.

5              **THE COURT:**  WERE YOU THE FOREPERSON?

6              **PROSPECTIVE JUROR:**  NO.

7              **THE COURT:**  TELL ME ABOUT THE CASE.

8              **PROSPECTIVE JUROR:**  MANY YEARS AGO IN SAN BERNARDINO

9     COUNTY, A WIDOW SUED SOUTHERN PACIFIC RAILROAD BECAUSE HER

10    HUSBAND WAS KILLED BY ANOTHER EMPLOYEE AND SHE WAS SUING THE

11    RAILROAD.

12             **THE COURT:**  WHAT DID YOU DECIDE?

13             **PROSPECTIVE JUROR:**  WE DECIDED --

14             **THE COURT:**  OR THE JURY.

15             **PROSPECTIVE JUROR:**  WE DECIDED IN FAVOR OF THE WIDOW,

16    BUT THE JUDGE THREW OUR VERDICT OUT OF COURT.

17             **THE COURT:**  OKAY.  HAVE YOU EVER MET STEVE JOBS?

18             **PROSPECTIVE JUROR:**  NO.

19             **THE COURT:**  HAVE ANY OF THE NEW PEOPLE EVER MET STEVE

20    JOBS?

21                           (HAND RAISED.)

22             **THE COURT:**  YOU DID?  YOU DID MEET HIM?

23             **PROSPECTIVE JUROR:**  YES.

24             **THE COURT:**  I WILL GET TO YOU ABOUT THAT.

25        ANY CONCERNS ABOUT SERVING ON THIS JURY?

1          **PROSPECTIVE JUROR:**  NO.

2          **THE COURT:**  ALL RIGHT.  THANK YOU.

3       SO YOU CAN GO DOWN, AND THEN LET'S HAND IT TO....

4          **THE COURT:**  MS. BARRAZA.

5          **PROSPECTIVE JUROR:**  BARRAZA.

6          **THE COURT:**  THAT'S A "Z" AT THE END?

7          **PROSPECTIVE JUROR:**  YES.

8          **THE COURT:**  GOOD AFTERNOON.

9          **PROSPECTIVE JUROR:**  GOOD AFTERNOON.

10          **THE COURT:**  SO YOU WORK AT TARGET?

11          **PROSPECTIVE JUROR:**  YES.

12          **THE COURT:**  AND WHAT DO YOU DO AT TARGET?

13          **PROSPECTIVE JUROR:**  SALES FLOOR.

14          **THE COURT:**  AND THEN YOUR HUSBAND DOES SECURITY?

15          **PROSPECTIVE JUROR:**  YES.

16          **THE COURT:**  WHERE DOES HE DO SECURITY?

17          **PROSPECTIVE JUROR:**  HILLTOP MALL IN RICHMOND.

18          **THE COURT:**  YOU CHECKED LAW AND GOVERNMENT WITH

19    RESPECT TO YOUR BROTHER-IN-LAW.  WHAT DOES HE DO?

20          **PROSPECTIVE JUROR:**  CHP.

21          **THE COURT:**  CHP?

22          **PROSPECTIVE JUROR:**  YES.

23          **THE COURT:**  IN TERMS OF THE APPLE PRODUCTS, IS THE

24    IPAD, IPOD, AND IPHONE, ARE THOSE FOR YOU OR SOMEONE IN YOUR

25    FAMILY?

129

```
1            PROSPECTIVE JUROR:  THE IPOD IS -- WE HAVE ABOUT

2     THREE, BUT THEY ARE MY KIDS, MY CHILDREN.

3            THE COURT:  HAVE YOU EVER USED ONE?

4            PROSPECTIVE JUROR:  NO.

5            THE COURT:  AND DO YOU USE EITHER THE IPAD OR THE

6     IPHONE?

7            PROSPECTIVE JUROR:  I USE BOTH.  IPAD, IPAD MINI, AND

8     IPHONE.

9            THE COURT:  OKAY.

10        HAVE YOU DOWNLOADED MUSIC OR OTHER --

11           PROSPECTIVE JUROR:  NO.

12           THE COURT:  CONTENT?

13           PROSPECTIVE JUROR:  NO.

14           THE COURT:  WHEN YOU BOUGHT THE IPODS, YOU REMEMBER

15    BUYING THEM IN THAT TIME PERIOD?

16           PROSPECTIVE JUROR:  I BELIEVE, YEAH.  BECAUSE I

17    STARTED WORKING FOR TARGET AROUND 2007, SO I GET A DISCOUNT.

18    SO I FIGURE I BOUGHT IT AROUND 2008.

19           THE COURT:  OKAY.

20           PROSPECTIVE JUROR:  THAT IS WHEN MY DAUGHTER WAS IN

21    HIGH SCHOOL.

22           THE COURT:  AND YOU LOVE THOSE PRODUCTS YOU SAID?

23           PROSPECTIVE JUROR:  YES.

24           THE COURT:  ANY CONCERNS ABOUT SERVING ON THE JURY?

25           PROSPECTIVE JUROR:  JUST THE ENGLISH IS MY SECOND
```

130

LANGUAGE, SO I DON'T UNDERSTAND A LOT OF TERMS, ESPECIALLY

LEGAL TERMS.  AND SINCE I NEVER USED THE IPOD, I DON'T KNOW --

I KNOW THAT YOU CAN DOWNLOAD MUSIC, BUT I DON'T KNOW ANYTHING

ELSE ABOUT IT.

       **THE COURT:**  BUT YOU USE ENGLISH IN YOUR JOB, RIGHT?

       **PROSPECTIVE JUROR:**  YES.

       **THE COURT:**  AND YOUR -- THE COLLEGE COURSES YOU TOOK

WERE IN ENGLISH; IS THAT RIGHT?

       **PROSPECTIVE JUROR:**  MOST OF THEM.

       **THE COURT:**  YOU WERE BORN IN MEXICO?

       **PROSPECTIVE JUROR:**  YES.

       **THE COURT:**  BUT YOU ARE A U.S. CITIZEN?

       **PROSPECTIVE JUROR:**  YES.

       **THE COURT:**  WHEN DID YOU BECOME A U.S. CITIZEN?

       **PROSPECTIVE JUROR:**  2007?  I MEAN, NO, I AM SORRY.

1997.

       **THE COURT:**  OKAY.  THANKS MS. BARRAZA.

   OKAY.  MS. SMITH?

       **PROSPECTIVE JUROR:**  HELLO.

       **THE COURT:**  GOOD AFTERNOON.

   NOW, TELL ME ABOUT YOUR BACHELOR-IN-PROGRESS WORK.  ARE

YOU TAKING COURSES RIGHT NOW?

       **PROSPECTIVE JUROR:**  THE CLASSES BEGIN JANUARY.

       **THE COURT:**  AND YOUR WORK AT SUTTER YOU SAY IS

CLERICAL?

```
1              PROSPECTIVE JUROR:  YES.

2              THE COURT:  ANYTHING ELSE THAT YOU MAY DO ON A

3     TECHNOLOGY FRONT?

4              PROSPECTIVE JUROR:  ALL OF MY WORK IS ON A COMPUTER.

5              THE COURT:  OKAY.  SO YOU FEEL COMFORTABLE ABOUT, AT

6     LEAST -- HOW LONG HAVE YOU BEEN USING A COMPUTER, PRETTY LONG

7     TIME?

8              PROSPECTIVE JUROR:  YES.

9              THE COURT:  WHEN YOU SAID THAT CIVIL TRIAL THAT YOU

10    WERE ON --

11             PROSPECTIVE JUROR:  IT WAS DISMISSED.  WE WALKED INTO

12    THE COURTROOM, AND THE JUDGE SAID, THANK YOU FOR YOUR SERVICE.

13             THE COURT:  THOSE ARE GOOD DAYS SOMETIMES.  JURORS

14    REALLY GET UPSET, THEN I TELL THEM, THERE'S GOOD NEWS AND BAD

15    NEWS.  THE GOOD NEWS IS YOU ARE DONE, THAT'S GOOD.  BUT IT'S

16    AMAZING TO ME SOMETIMES WITH JUST THE IMPANELMENT OF A JURY

17    DOES TO LITIGANTS.  ALL OF A SUDDEN, IT'S VERY REAL AND THEY

18    DECIDE TO RESOLVE IT.

19        SO, IPAD, IPOD, IPHONE, YOU HAVE ALL OF THOSE, OR DID YOU

20    BUY THEM FOR SOMEONE ELSE?

21             PROSPECTIVE JUROR:  THE IPAD IS THE ONLY THING THAT

22    BELONGS TO ME.

23             THE COURT:  OKAY.  HAVE YOU EVER USED AN IPOD?

24             PROSPECTIVE JUROR:  I HAVE USED IT, NOT MUCH.

25             THE COURT:  WHO DID YOU BUY IT FOR?
```

1          PROSPECTIVE JUROR:  MY SON.

2          THE COURT:  THE OLDEST?

3          PROSPECTIVE JUROR:  YES.

4          THE COURT:  AND YOU'RE JUST NEUTRAL ON THE

5   SATISFACTION FRONT?

6          PROSPECTIVE JUROR:  YES.  I BELIEVE WITH EVERY

7   PRODUCT THERE'S PROS AND CONS.

8          THE COURT:  OKAY.  SO WHEN DID YOU BUY THAT IPOD?

9   WAS THAT MORE RECENTLY?

10          PROSPECTIVE JUROR:  TWO YEARS AGO.

11          THE COURT:  ANYTHING OTHER THAN GOOGLE PLAY THAT YOU

12   USE AS A SOURCE FOR DOWNLOADING?

13          PROSPECTIVE JUROR:  I DON'T DOWNLOAD MUCH MUSIC.  I

14   WILL MAKE PEOPLE CRINGE.  I MAINLY USE MY IPAD FOR READING.

15          THE COURT:  THAT'S ALL RIGHT.  I DO, TOO.

16          PROSPECTIVE JUROR:  AS FAR AS MUSIC GOES, FOR THE

17   MOST PART I USE A RADIO APP, IHEART RADIO.

18          THE COURT:  IHEART?

19          PROSPECTIVE JUROR:  YES.

20          THE COURT:  THE LAWSUIT THAT YOUR FATHER WAS IN, DID

21   YOU HAVE TO TESTIFY OR DO ANYTHING --

22          PROSPECTIVE JUROR:  I DID HAVE TO MEET WITH ALL

23   ATTORNEYS, THE ATTORNEY THAT WAS ORIGINALLY OVERSEEING THE

24   TRUST, AS WELL AS MY FATHER'S ATTORNEY AND HIS BROTHER'S

25   ATTORNEY, BUT I NEVER WENT INTO THE COURTROOM.

133

```
1              THE COURT:  WHY DID YOU HAVE TO MEET WITH THEM?

2              PROSPECTIVE JUROR:  BECAUSE MY NAME WAS LISTED IN THE

3    TRUST.

4              THE COURT:  SO YOU DIDN'T HAVE TO EVER TESTIFY?

5              PROSPECTIVE JUROR:  NO.

6         AS FAR AS I KNOW, THE CASE IS STILL ONGOING, BUT I STAY

7    OUT OF IT AS MUCH AS POSSIBLE.

8              THE COURT:  FAMILY DISPUTES ARE DIFFICULT.

9              PROSPECTIVE JUROR:  YES.

10             THE COURT:  OKAY.  ANY CONCERNS ABOUT SITTING ON THE

11   JURY?

12             PROSPECTIVE JUROR:  JUST WITH MY EMPLOYMENT, BUT

13   THAT'S NOT REALLY THE COURT'S PROBLEM.

14             THE COURT:  SUTTER -- DOES SUTTER MEDICAL HAVE -- I

15   WOULD EXPECT THAT THEY HAVE SOME AMOUNT --

16             PROSPECTIVE JUROR:  WE HAVE A NEW DIRECTOR ON THE

17   FLOOR, AND SHE DOES NOT KNOW HOW TO DO SCHEDULING OR PAYROLL.

18   SO MY NURSES MAY COME LOOKING FOR ME IF THEY DON'T GET PAID.

19             THE COURT:  OKAY.  WELL, IF YOU ARE CHOSEN, HOPEFULLY

20   YOU HAVE A LITTLE BIT OF TIME TO MAKE SURE THAT THAT ALL GETS

21   FIXED.

22        OKAY.  LET'S PASS IT DOWN THEN, LAST JUROR, AND THAT'S

23   ZIOMEK.

24             PROSPECTIVE JUROR:  ZIOMEK.

25             THE COURT:  ONE MORE TIME.
```

```
 1                PROSPECTIVE JUROR:  ZIOMEK.

 2           THE COURT:  OKAY.  SO LET'S START WITH YOUR

 3   INDICATION THAT YOU'VE MET STEVE JOBS; IS THAT RIGHT?

 4                PROSPECTIVE JUROR:  I HAVE.

 5           THE COURT:  WHAT WAS THE CONTEXT OF HAVING MET HIM?

 6                PROSPECTIVE JUROR:  IT WAS AN EVENT THAT I WAS

 7   WORKING THAT HE WAS PART OF.  HE ASKED MY OPINION ON ONE

 8   ELEMENT OF THAT PRODUCTION.

 9           THE COURT:  OKAY.  CAN YOU GIVE US A LITTLE BIT MORE

10   THAN THAT?

11                PROSPECTIVE JUROR:  NO.  IT WAS -- WELL, I HAVE TO

12   QUALIFY ALL MY STATEMENTS.  I -- I'M NOT AN EMPLOYEE OF APPLE.

13           THE COURT:  RIGHT.

14                PROSPECTIVE JUROR:  BUT LAST YEAR THEY'RE PROBABLY MY

15   SINGLE LARGEST EMPLOYER, AND ALL MY WORK IS UNDER A

16   NONDISCLOSURE AGREEMENT.  SO I'M HESITANT TO ANSWER SOME

17   QUESTIONS, BUT HE HAD ASKED ME ABOUT PLACEMENT OF A SETTING

18   ELEMENT IN A THEATRICAL APPLICATION.

19           THE COURT:  SO YOU SAID RIGHT NOW APPLE IS YOUR

20   SINGLE LARGEST CLIENT?

21                PROSPECTIVE JUROR:  WELL, I'M NOT AN EMPLOYEE OF

22   APPLE.  I WORK WITH THEM THROUGH OUTSIDE VENDORS, BUT THE

23   AMOUNT WITH THEM LAST YEAR WOULD BE -- THEY WOULD BE MY SINGLE

24   LARGEST EMPLOYER.

25           THE COURT:  SO IN PERCENTAGE TERMS, HOW MUCH OF YOUR
```

```
 1    COMPENSATION IS GENERATED BY APPLE?

 2              PROSPECTIVE JUROR:  IT'S ABOUT 50 PERCENT.  AND THEN

 3    AFTER THAT, I HAVE MANY SMALL EMPLOYERS I WORK FOR.

 4              THE COURT:  COUNSEL, ANY OBJECTION TO DISMISSING THIS

 5    JUROR?

 6              MR. COUGHLIN:  NO, YOUR HONOR.

 7              MR. ISAACSON:  NO, YOUR HONOR.

 8              THE COURT:  MR. ZIOMEK, YOU ARE DISMISSED.

 9       LEAVE THE MIC RIGHT THERE.  I'M GOING TO CALL ONE MORE

10    PERSON UP.

11              THE CLERK:  AND THEN JUST RETURN THE JURY ROOM.

12

13

14

15

16

17

18

19

20

21

22

23

24

25       (NOTHING OMITTED; CONTINUED ON NEXT PAGE.)
```

```
 1              THE COURT:  IF MS. BEVERLY JOHNSON WILL COME FORWARD,

 2     PLEASE.

 3                     (PAUSE IN THE PROCEEDINGS.)

 4              THE COURT:  MS. JOHNSON, THAT BACK ROW.

 5        GOOD AFTERNOON.

 6              PROSPECTIVE JUROR:  GOOD AFTERNOON.

 7              THE COURT:  SO, MS. JOHNSON, LET'S START WITH YOUR

 8     JURY SERVICE.  IT LOOKS LIKE YOU'VE BEEN ON --

 9              PROSPECTIVE JUROR:  I THINK THREE OR FOUR.

10              THE COURT:  -- THREE OR FOUR.

11              PROSPECTIVE JUROR:  AND I HAVE BEEN A FOREPERSON.

12              THE COURT:  SO TELL ME ABOUT THE CASES, THE CIVIL

13     CASE FIRST.

14              PROSPECTIVE JUROR:  THE CIVIL CASE WAS, I THINK, IN

15     THE LATE '70'S.  IT WAS A CASE BETWEEN A LAND DEVELOPER AND

16     THE BANK.  WE DID COME TO A VERDICT FOR THE PLAINTIFF, WHO

17     WAS, IN FACT, THE BANK.

18              THE COURT:  OKAY.  AND THEN THE CRIMINAL CASES?

19              PROSPECTIVE JUROR:  WOW.  ONE HAD TO DO WITH RAPE.

20     WE DID NOT COME TO A VERDICT IN THAT ONE.

21              THE COURT:  OKAY.

22              PROSPECTIVE JUROR:  ONE HAD TO DO WITH THEFT.  WE DID

23     FIND A GUILTY VERDICT IN THAT.

24        AND THE MOST RECENT ONE WAS SOLICITATION OF A MINOR.  AND

25     WE DID COME TO A VERDICT IN THAT.
```

1    **THE COURT:**  GUILTY OR NOT GUILTY?

2    **PROSPECTIVE JUROR:**  NOT GUILTY.

3    **THE COURT:**  OKAY.

4    WERE ALL FOUR TRIALS IN ALAMEDA COUNTY?

5    **PROSPECTIVE JUROR:**  YES.

6    **THE COURT:**  MS. JOHNSON, HAS SOMEONE BROKEN THE NEWS

7    TO YOU?

8    **PROSPECTIVE JUROR:**  THAT?

9    **THE COURT:**  THAT THE MORE YOU SERVE ON JURIES, THE

10   MORE LIKELY IT IS THAT PEOPLE ARE GOING TO PICK YOU TO SERVE

11   ON JURIES?

12   **PROSPECTIVE JUROR:**  I ALREADY KIND OF KNOW THAT.

13                    (LAUGHTER.)

14   **THE COURT:**  NOW, ON WHICH THESE WERE YOU THE

15   FOREPERSON?

16   **PROSPECTIVE JUROR:**  THE LAST ONE WITH --

17   **THE COURT:**  SOLICITATION?

18   **PROSPECTIVE JUROR:**  CORRECT.  AND I VOLUNTEERED FOR

19   THAT BECAUSE I WANTED US TO MOVE EXPEDITIOUSLY.

20   **THE COURT:**  OKAY.

21   SO YOU'RE RETIRED FROM THE GIRL SCOUTS EXECUTIVE STAFF.

22   **PROSPECTIVE JUROR:**  CORRECT.

23   **THE COURT:**  AND WHAT IS IT THAT YOU DO NOW PRIMARILY

24   WITH YOUR TIME?

25   **PROSPECTIVE JUROR:**  SERVE ON JURIES.

```
 1                          (LAUGHTER.)

 2          PROSPECTIVE JUROR:  I'M RETIRED AND I LOVE IT.  SO I

 3   KIND OF DO WHATEVER IT IS THAT SUITS MY FANCY.

 4          THE COURT:  OKAY.  AND WHAT ARE SOME OF YOUR FAVORITE

 5   THINGS TO DO?

 6          PROSPECTIVE JUROR:  READING IS ONE.  TRAVEL IS

 7   ANOTHER.

 8          THE COURT:  DO YOU BAKE?  BECAUSE SOMETIMES I TRY TO

 9   GET THE BAKED GOODS IN HERE, BUT IT DOESN'T ALWAYS WORK.

10          PROSPECTIVE JUROR:  JUST THIS TIME OF THE YEAR.

11          THE COURT:  THE IPOD THAT IS LISTED HERE, IS THAT

12   YOURS OR FOR SOMEONE ELSE?

13          PROSPECTIVE JUROR:  ACTUALLY IT -- THERE SHOULD HAVE

14   BEEN "S" ON THAT.  IT'S FOR OTHER PEOPLE.

15          THE COURT:  OKAY.

16          PROSPECTIVE JUROR:  THE OTHER ITEMS ARE MINE.

17          THE COURT:  SO YOU'VE NEVER PERSONALLY USED THE IPOD?

18          PROSPECTIVE JUROR:  NO.  CHILDREN, MY HUSBAND, THEIR

19   CHILDREN.

20          THE COURT:  WERE THOSE MORE RECENT PURCHASES?  IS

21   THAT WHY YOU CHECKED "NO" ON THE TIME FRAME FOR PURCHASE?

22          PROSPECTIVE JUROR:  OVER TIME.

23          THE COURT:  WHEN YOU'RE DOWNLOADING CONTENT, IS THAT

24   ON THE IPOD AND THE IPHONE?

25          PROSPECTIVE JUROR:  MAINLY IT'S ON THE IPAD AND THE
```

1   IPHONE.

2          **THE COURT:**  ANY PLACE OTHER THAN THE ITUNES STORE?

3          **PROSPECTIVE JUROR:**  NO.

4          **THE COURT:**  THE SMALL CLAIMS LAWSUIT, DID YOU BRING

5   THAT YOURSELF OR SOMEONE --

6          **PROSPECTIVE JUROR:**  I DID NOT.  IT WAS AGAINST ME.

7          **THE COURT:**  OKAY.  HAVE YOU EVER MET MR. JOBS?

8          **PROSPECTIVE JUROR:**  I HAVE NOT.

9          **THE COURT:**  DO YOU HAVE ANY CONCERNS ABOUT SERVING ON

10  THIS JURY?

11         **PROSPECTIVE JUROR:**  NONE OTHER THAN MY ABILITY TO

12  STAND WHEN MY BACK IS BOTHERING ME.

13         **THE COURT:**  AND AS YOU HEARD ME SAY, THAT'S TOTALLY

14  FINE.  YOU CAN STAND AS MUCH AS IS NEEDED.

15     OKAY.  TERRIFIC.

16     ALL RIGHT.  LADIES AND GENTLEMEN, AT THIS TIME, I'M GOING

17  TO ALLOW -- WELL LET ME ASK, WAIT, A COUPLE MORE PANEL

18  QUESTIONS.  I WANT TO MAKE SURE THAT I GOT EVERYBODY.

19     HAS ANYBODY HEARD OR WAS ANYBODY -- HEARD OR IS FAMILIAR

20  WITH REALNETWORKS?  IF YOU ARE, RAISE YOUR HAND.

21     OKAY.  SO LET'S BRING THE MIC BACK UP, AND WE'LL START

22  RIGHT HERE.  JUROR NO. 4.

23     SIR, SO LET ME KNOW WHAT YOUR BACKGROUND IS WITH THAT.

24         **PROSPECTIVE JUROR:**  VERY LITTLE.  I JUST RECALL IT,

25  THE NAME.  AND I BELIEVE IT WAS RELATED TO MUSIC SERVICES ON

```
1    THE INTERNET.

2              THE COURT:  OKAY.

3              PROSPECTIVE JUROR:  BUT BEYOND THAT, THAT'S ALL I

4    RECALL.

5              THE COURT:  OKAY.  THANK YOU, MR. KECSKES.

6              PROSPECTIVE JUROR:  KECSKES.

7              THE COURT:  OKAY.  SLOWLY BUT SURELY.

8        MR. KAAKE; IS THAT RIGHT?

9              PROSPECTIVE JUROR:  YES, THAT'S RIGHT.

10             THE COURT:  HOW ABOUT YOU?

11             PROSPECTIVE JUROR:  IT'S SIMILAR.  IT'S BEEN A LITTLE

12   WHILE, BUT THERE WAS SOME DEALING WITH SOFTWARE RELATED TO

13   REALNETWORKS OFF OF THE INTERNET AND MUSIC.

14             THE COURT:  OKAY.  AND DO YOU HAVE ANY -- OTHER THAN

15   THAT KIND OF VERY GENERIC MEMORY, ANY OTHER MEMORY ABOUT

16   REALNETWORKS AND THOSE ISSUES RELATED TO IT?

17             PROSPECTIVE JUROR:  JUST NEGATIVE, BUT IT'S BEEN --

18   IT'S BEEN A COUPLE OF YEARS.  I CAN'T -- I COULDN'T EVEN TELL

19   YOU EXACTLY WHEN IT WAS.

20             THE COURT:  AND DID YOU SAY JUST NEGATIVE?

21             PROSPECTIVE JUROR:  PROBABLY.  YES, NEGATIVE

22   IMPRESSIONS.

23             THE COURT:  OF REALNETWORKS?

24             PROSPECTIVE JUROR:  OF THE SOFTWARE THAT -- THAT

25   SOMEHOW I GOT INVOLVED WITH.
```

1      **THE COURT:**  OKAY.  BUT OTHER THAN THAT KIND OF

2  GENERAL IMPRESSION, YOU DON'T REMEMBER ANYTHING ELSE?

3      **PROSPECTIVE JUROR:**  CORRECT.

4      **THE COURT:**  OKAY.  OKAY.  THEN I HAD MR. BARRIOS, IS

5  THAT RIGHT?

6      **PROSPECTIVE JUROR:**  YES.  SAME EXPERIENCE, USING IT

7  AS A MEDIA PLAYER.  SO --

8      **THE COURT:**  OKAY.  AND -- AND DID YOU USE

9  REALNETWORKS?

10      **PROSPECTIVE JUROR:**  JUST THE REAL MEDIA PLAYER, I'VE

11  USED THAT BUT NOT --

12      **THE COURT:**  OKAY.  ANYTHING ELSE YOU REMEMBER?

13      **PROSPECTIVE JUROR:**  NO.

14      **THE COURT:**  HOW ABOUT, AGAIN TO THE PANEL, ANYBODY

15  HAVE ANY INTERACTION WITH HARMONY ON THE MUSIC FRONT?  NO?

16    DOES ANYBODY ELSE HAVE EXPERIENCE WITH REGRESSION ANALYSES

17  THAT I'VE NOT ASKED?

18    OKAY.  MR. KAAKE.

19      **PROSPECTIVE JUROR:**  WELL, I USED REGRESSION ANALYSIS

20  WHEN I WAS A SYSTEMS PROGRAMMER AND OTHER TIMES.

21      **THE COURT:**  SO YOU FEEL COMFORTABLE AND FAMILIAR WITH

22  THEM?

23      **PROSPECTIVE JUROR:**  YES.

24      **THE COURT:**  ANYBODY ELSE?  ALL RIGHT.

25    SO AT THIS POINT, I'M GOING TO ALLOW THE ATTORNEYS TO ASK

1    YOU ALL QUESTIONS.  THEY HAVE BEEN COPIOUSLY TAKING NOTES AS

2    I'VE ASKED YOU QUESTIONS.  AND YOU SHOULD ALL KNOW THAT I PUT

3    THEM UNDER STRICT TIME LIMITS.  THEY HATE IT.  IT IS THE

4    NUMBER ONE COMPLAINT THAT LAWYERS HAVE ABOUT JUDGES, THAT WE

5    LIMIT THEIR TIME TO TALK TO JURORS, BUT WE DO IT ANYWAY.

6         SO I'M GOING TO, ON THEIR BEHALF, ASK YOU NOT TO HOLD IT

7    AGAINST THEM IF THEY DON'T ASK YOU A QUESTION.  THEY'VE BEEN

8    LISTENING.  THIS IS THEIR CHANCE TO FOLLOW UP WITH SOME OTHER

9    QUESTIONS.  OKAY?

10        AND LIKE I SAID, THEY JUST AREN'T GIVEN A LOT OF TIME, BUT

11   I CAN TELL YOU THEY'D LOVE TO HEAR EACH AND EVERY ONE OF YOUR

12   LIFE STORIES IF I GAVE THEM THAT OPPORTUNITY.  WHICH I WON'T.

13        MR. COUGHLIN, WE WILL BEGIN WITH YOU, SIR.

14        **MR. COUGHLIN:**  THANK YOU, YOUR HONOR.

15        WE'RE GETTING INTO THE AFTERNOON.  SO GOOD AFTERNOON.  AND

16   I'M PATRICK COUGHLIN, AGAIN, AND THIS IS MY PARTNER AGAIN,

17   BONNY SWEENEY, CO-COUNSEL FRANK BALINT, AND MY OTHER PARTNER

18   ALEXANDRA BERNAY.

19        AND WE REPRESENT -- THIS IS A CLASS ACTION, AND WE

20   REPRESENT A LARGE GROUP OF CONSUMERS, OVER 8 MILLION CONSUMES

21   AND ABOUT 967, I BELIEVE IT IS, RESELLERS.  AND I DON'T KNOW

22   HOW FAMILIAR YOU ARE WITH CLASS ACTIONS.  NOT MANY PEOPLE

23   CHECKED THAT THEY HAD STRONG VIEWS.

24        MR. WIEGERT, YOU HAD -- I GUESS YOU'D RECEIVED A CHECK.

25   YOU WEREN'T INVOLVED IN THE -- IN THE ACTION ITSELF.  DO YOU

1   HAVE ANY FEELINGS ABOUT CLASS ACTIONS IN GENERAL?

2           **PROSPECTIVE JUROR:** NO.

3           **MR. COUGHLIN:** WAS IT JUST FINE FOR YOU TO GET THAT

4   CHECK?  DO YOU UNDERSTAND THAT YOU DIDN'T PARTICIPATE BUT THAT

5   SOMEBODY ELSE REPRESENTED THE CLASS AND THERE WAS A

6   REPRESENTATIVE TO SHOW UP?  SO YOU UNDERSTAND HOW IT WORKS

7   THAT -- THAT WE'RE NOT GOING TO HAVE 8 MILLION PEOPLE SHOW UP

8   AT THE DOOR, BUT THEY'RE REPRESENTED HERE AND -- AND THE

9   RESELLERS ARE ALSO REPRESENTED HERE.

10          **THE CLERK:** YOU NEED TO MAKE YOUR RESPONSE OUT LOUD

11  FOR THE COURT REPORTER.

12          **PROSPECTIVE JUROR:** YES, I UNDERSTAND THAT.

13          **MR. COUGHLIN:** SO YOU UNDERSTAND THAT?

14      AND DO YOU HAVE ANY PROBLEM WITH THAT BECAUSE YOU DON'T

15  SEE EVERYBODY?  SOMETIMES PEOPLE SAY, HEY, I WANT TO SEE ALL

16  THE PEOPLE THAT ARE INVOLVED IN BOTH SIDES.  THAT DOESN'T

17  BOTHER YOU AT ALL?

18          **PROSPECTIVE JUROR:** NO.

19          **MR. COUGHLIN:** DOES THE SIZE OF THIS -- HER HONOR

20  SAID THAT THERE WERE HUNDREDS OF MILLIONS OF DOLLARS AT STAKE.

21  AND IN THIS CASE THERE ARE HUNDREDS OF MILLIONS OF DOLLARS AT

22  STAKE.  AND DO YOU HAVE ANY PROBLEM WITH THE SIZE OF THE --

23  LIKE SOMEBODY SAYS, HEY, I CAN -- I CAN SIT ON A JURY IF IT'S

24  ONLY, YOU KNOW, $5,000, $2,000.

25          **PROSPECTIVE JUROR:** NO.  IT'S -- THE SETTLEMENT THAT

1    I WAS INVOLVED IN WAS A SUBSTANTIAL AMOUNT, TOO, SO I

2    UNDERSTAND THAT.

3         **MR. COUGHLIN:**  OKAY.  DID YOU FEEL YOU GOT AN AMOUNT

4    THAT WAS FAIR AND REASONABLE?

5         **PROSPECTIVE JUROR:**  MORE THAN FAIR.

6         **MR. COUGHLIN:**  OKAY.

7      MS. WRIGHT, LET ME ASK YOU A COUPLE QUESTIONS, IF I COULD.

8      THANK YOU, MR. WIEGERT.

9         **PROSPECTIVE JUROR:**  CERTAINLY.

10        **MR. COUGHLIN:**  SO YOU WORK AT THREATMETRIX; IS THAT

11   RIGHT?

12        **PROSPECTIVE JUROR:**  THAT'S CORRECT.

13        **MR. COUGHLIN:**  COULD YOU TELL US A LITTLE MORE ABOUT

14   WHAT EXACTLY THREATMETRIX -- WHAT YOU DO THERE AND WHAT IT

15   DOES.

16        **PROSPECTIVE JUROR:**  OKAY.  SO THREATMETRIX, TO START

17   OFF WITH, PROVIDES SECURITY AND FRAUD DETECTION IN THE

18   INTERNET WORLD.  SO WE HAVE CUSTOMERS THAT ARE E-COMMERCE,

19   FINANCIAL INSTITUTIONS.  SO THE EASIEST EXAMPLE TO UNDERSTAND

20   IS A BANK PROVIDING ONLINE BANKING, AND THREATMETRIX WOULD BE

21   MONITORING THOSE TRANSACTIONS AND THOSE LOGINS TO TRY TO ALERT

22   THE BANK TO ACCOUNT TAKEOVERS OR FRAUDULENT TRANSACTIONS.

23        **MR. COUGHLIN:**  AND SO YOU'RE ACTUALLY -- YOU'RE A

24   SCIENTIST AND YOU'RE -- YOU'VE GONE TO MIT AND STANFORD, AND

25   SO YOU HAVE A BACKGROUND IN CODING; IS THAT RIGHT?

1          **PROSPECTIVE JUROR:**  THAT'S CORRECT.

2          **MR. COUGHLIN:**  AND SO YOU'RE A PROGRAMMER; IS THAT

3    CORRECT?

4          **PROSPECTIVE JUROR:**  I HAVE WORKED AS A PROGRAMMER,

5    YES.

6          **MR. COUGHLIN:**  IN THIS CASE, THERE'S GOING TO BE --

7    YOU'RE GOING TO HEAR INFORMATION ABOUT SECURITY SYSTEMS, DRM,

8    WHICH YOU'RE FAMILIAR WITH.  I HEARD EARLIER YOU SAID THAT,

9    YES.  AND SO YOU'RE GOING TO HAVE TO, YOU KNOW, DETERMINE --

10   DETERMINE ISSUES OF WHEN, LET'S SAY A PROGRAMMER -- ANOTHER

11   PROGRAMMER MAY GET UP THERE AND YOU'RE GOING TO HAVE TO MAKE

12   DECISIONS ABOUT WHETHER THAT PROGRAMMER IS -- THAT PROGRAMMER

13   MAY HAVE A DOCUMENT IN FRONT OF HIM.  WE'LL CALL IT AN

14   EXHIBIT.  AND THAT EXHIBIT MAY SAY WE DID THIS FOR X.  AND THE

15   PROGRAMMER MAY SAY WE DID THIS FOR X OR WE DID THIS FOR Y.

16   AND YOU MAY HAVE TO MAKE A DETERMINATION OF WHETHER THAT

17   DOCUMENT ABOUT WHY THEY DID AND THE SPECIFICS THAT THEY

18   UNDERTOOK TO DEVELOP SOME PROGRAM, WHETHER THAT IS THE REASON

19   THAT THAT PERSON IS GIVING THERE.  DO YOU THINK THAT YOU CAN

20   SIT AND MAKE THAT DECISION?

21         **PROSPECTIVE JUROR:** YES, I DO.

22         **MR. COUGHLIN:**  OKAY.  THAT YOU CAN LOOK AND -- AND IT

23   MAY BE THIS WAY.  SO IF I MIGHT TAKE IT A LITTLE FURTHER.

24   THAT PERSON TESTIFYING WOULD BE GIVING, LET'S SAY, DIRECT

25   EVIDENCE.  YOU HEAR WHAT HE OR SHE HAD TO SAY ABOUT SOMETHING

1    THAT WAS HAPPENING, LET'S SAY, AT AN EARLIER TIME, BUT THEY'RE

2    TALKING ABOUT AND SAY THEY WERE DIRECTLY INVOLVED.

3        THE DOCUMENT MAY NOT BE AS FULLY DEVELOPED, OR IT MAY.  OR

4    IT MAY LEAD YOU IN A DIFFERENT DIRECTION, YOU KNOW.  IN OTHER

5    WORDS, YOU MAY HAVE TO DECIDE WHETHER WHAT THAT PERSON IS

6    SAYING IS A PRETEXT OR NOT, IN OTHER WORDS, GIVING YOU NOT THE

7    REAL REASON THAT THEY DID SOMETHING.

8        BUT DO YOU THINK YOU CAN TAKE A LOOK AT THAT AND MAKE THAT

9    JUDGMENT WITH YOUR BACKGROUND?

10            **PROSPECTIVE JUROR:**  I BELIEVE SO.

11            **MR. COUGHLIN:**  OKAY.  THANK YOU.  THANK YOU FOR YOUR

12    TIME.

13        MR. MCCULLY, I KNOW YOU DON'T LIKE TO TALK, BUT IF YOU

14    COULD TAKE THAT MIC JUST FOR A SECOND.

15            **PROSPECTIVE JUROR:**  YOU KNOW I'M NERVOUS.

16            **MR. COUGHLIN:**  WELL, SO YOU'RE A MECHANICAL ENGINEER.

17    YOU MAINLY WORK WITH HARDWARE; IS THAT RIGHT?

18            **PROSPECTIVE JUROR:**  YES.

19            **MR. COUGHLIN:**  AND NOT SOFTWARE OR FIRMWARE?

20            **PROSPECTIVE JUROR:**  NO.

21            **MR. COUGHLIN:**  YOU KNOW WHAT INTEROPERABLE MEANS,

22    RIGHT?  MAKE SOMETHING COMPATIBLE?

23            **PROSPECTIVE JUROR:**  YEAH.

24            **MR. COUGHLIN:**  OKAY.  HAVE YOU EVER

25    REVERSE-ENGINEERED ANYTHING?

```
 1            PROSPECTIVE JUROR:  NO, NOT PER SE.  WE DID --

 2            MR. COUGHLIN:  NO?

 3            PROSPECTIVE JUROR:  -- SPECS ON LANGUAGES TO TALK TO

 4      DIFFERENT INSTRUMENTS.

 5            MR. COUGHLIN:  OKAY.

 6            PROSPECTIVE JUROR:  I MIGHT HAVE TO WRITE CODE FOR

 7      THAT.

 8            MR. COUGHLIN:  I SEE.  SO YOU'VE NEVER TAKEN -- HAVE

 9      YOU EVER TAKEN APART A TOASTER JUST TO SEE HOW IT WORKS?

10            PROSPECTIVE JUROR:  YES.

11            MR. COUGHLIN:  OKAY.  WHAT KIND OF VEHICLE DO YOU

12      OWN?

13            PROSPECTIVE JUROR:  A HONDA FIT.

14            MR. COUGHLIN:  OKAY.  AND WHEN YOU -- WHEN YOU GO --

15      LET'S SAY YOU NEED AN OIL CHANGE.  DO YOU MAKE SURE YOU GET

16      THE FACTORY OIL CHANGE?  OR ARE YOU MOST INTERESTED IN

17      SOMETHING LIKE IT'S THE BEST -- THE BEST OF THAT?  WOULD YOU

18      GO BUY A NAPA OIL FILTER VERSUS STICKING WITH THE --

19            PROSPECTIVE JUROR:  OEM AND THE SYNTHETIC.  GET

20      BETTER GAS MILEAGE.

21            MR. COUGHLIN:  OKAY.  SO YOU STICK WITH THE FACTORY

22      OF THE CAR THAT YOU HAVE.

23            PROSPECTIVE JUROR:  OR BETTER.

24            MR. COUGHLIN:  OR BETTER.  OKAY.  BUT YOU WOULD BUY

25      THE BETTER IF IT WAS AVAILABLE; IS THAT RIGHT?
```

1          **PROSPECTIVE JUROR:**  RIGHT.

2          **MR. COUGHLIN:**  OKAY.  AND DO YOU THINK -- THERE ARE

3   SOME CAR COMPANIES THAT IF YOU CHANGE SOMETHING THEY SAY, HEY,

4   YOU VOID YOUR WARRANTY IF YOU TAKE IT SOMEWHERE ELSE TO WORK.

5   WHAT DO YOU THINK ABOUT THAT?

6          **PROSPECTIVE JUROR:**  I PRETTY MUCH IGNORE IT.

7          **MR. COUGHLIN:**  YEAH, YOU FORGO THE WARRANTY BECAUSE

8   YOU SAY YOU THINK YOU HAVE THE RIGHT TO HAVE A CHOICE BECAUSE

9   IT'S YOUR CAR; RIGHT?

10          **PROSPECTIVE JUROR:**  YEAH.

11          **MR. COUGHLIN:**  OKAY.  THAT'S REALLY ALL I WANTED TO

12  KNOW FROM YOU.

13      SO DID YOU HAVE ANY PROBLEM WITH THE DIRECT AND

14  CIRCUMSTANTIAL EVIDENCE THAT I TALKED ABOUT?  IF YOU HAD A --

15  HAD ONE OF YOUR FELLOW ENGINEERS ON THE STAND AND I WAS

16  CROSS-EXAMINING THEM AND I HAD A DOCUMENT THAT MAYBE SAID ONE

17  THING AND HE OR SHE SAID ANOTHER, WOULD YOU HAVE ANY PROBLEM

18  MAKING THE CHOICE BETWEEN WHETHER WHAT IS BEING TOLD TO YOU

19  NOW IS TRUE VERSUS WHAT WAS ACTUALLY OCCURRING AT THE TIME?

20          **PROSPECTIVE JUROR:**  TRYING TO JUDGE WHETHER THEY'RE

21  TELLING THE TRUTH?

22          **MR. COUGHLIN:**  YES.

23          **PROSPECTIVE JUROR:**  THAT'S BASICALLY THE -- THAT'S

24  ALWAYS A CHALLENGE, RIGHT?

25          **MR. COUGHLIN:**  IT IS.  THIS IS A DISPUTE, THOUGH.

1    THEY HAVE -- THEY HAVE A STORY.  THEY HAVE THEIR STORY, AND WE

2    HAVE OUR STORY, AND THEY'RE DIFFERENT, THEY'RE CONFLICT, YOU

3    KNOW.  WE SAY SOMETHING HAPPENED FOR A CERTAIN REASON AND

4    SOMETHING WAS DONE FOR A CERTAIN REASON.  AND THEY SAY NO, NO,

5    THAT'S NOT RIGHT.  THAT'S WHY WE'RE HERE TODAY.

6        AND THAT'S -- THAT'S ALSO WHAT HAPPENS IN CRIMINAL CASES.

7    YOU KNOW, A PERSON WILL SAY, "I DIDN'T DO IT."  IT ALSO

8    HAPPENS IN CIVIL CASES, THOUGH.  BUT THAT IS -- THIS IS GOING

9    TO BE CONFLICT HERE, AND THAT'S WHAT YOU'RE GOING TO RUN INTO.

10   AND YOU'RE GOING TO HAVE TO MAKE SOME TOUGH CHOICES, AND

11   THEY'RE NOT EASY, YOU KNOW, BUT THOSE ARE SOME OF THE

12   DECISIONS YOU'RE GOING TO MAKE.

13           **PROSPECTIVE JUROR:**  USUALLY GO WITH THE PAPER BECAUSE

14   PEOPLE'S RECOLLECTIONS ARE GENERALLY A LITTLE LESS RELIABLE,

15   BUT THAT WOULD BE MY ONLY OPINION ON THAT.

16           **MR. COUGHLIN:**  OKAY.  THAT'S -- THEN I'M NOT GOING TO

17   ASK YOU ANOTHER QUESTION.  THAT'S WHAT I WANTED TO KNOW.

18       AND IF YOU COULD PASS THE MIC RIGHT NEXT DOOR TO

19   MS. LOCKLEAR.

20           **PROSPECTIVE JUROR:**  HI.

21           **MR. COUGHLIN:**  HI.  SO I UNDERSTAND THAT YOU LOVE

22   MUSIC; IS THAT RIGHT?  WOULD THAT BE A FAIR STATEMENT?

23           **PROSPECTIVE JUROR:**  YES.

24           **MR. COUGHLIN:**  OKAY.  AND WHAT I DIDN'T -- I DIDN'T

25   GET OR DIDN'T CATCH, HAVE YOU EVER RIPPED OR BURNED CD'S?

1          PROSPECTIVE JUROR:  I'VE BURNED CD'S, YEAH.

2          MR. COUGHLIN:  FOR YOUR OWN -- FOR YOUR FRIENDS AND

3     RELATIVES TO -- AND MIXED IT WITH THE GARAGE MUSIC THING,

4     PLAYER THAT YOU HAD?

5          PROSPECTIVE JUROR:  OF MY -- OF MY WORK?  YES.

6          MR. COUGHLIN:  YES.  AND OF YOUR OWN MUSIC, WHEN

7     YOU -- WHEN YOU -- DO YOU -- WHEN YOU BUY MUSIC, DID YOU --

8     YOU USE A SERVICE, A STREAMING SERVICE, I THINK, FOR THE

9     GARAGE MUSIC; IS THAT RIGHT?  OR DID I GET THAT WRONG?

10         PROSPECTIVE JUROR:  I'VE USED CHUCK WILSON'S ONLINE

11    MUSIC.

12         MR. COUGHLIN:  OKAY.

13         PROSPECTIVE JUROR:  WHICH IS LEGAL.  AND THEN IT'S

14    AMBIENT AND IT SERVES AS BACKGROUND MUSIC FOR WHAT I DO.

15         MR. COUGHLIN:  OKAY.  AND WHEN YOU -- AND DO YOU BUY

16    CD'S AT ALL?

17         PROSPECTIVE JUROR:  I DO.

18         MR. COUGHLIN:  UM-HMM.  AND DO YOU -- DO YOU LIKE TO

19    OWN YOUR MUSIC?  IN OTHER WORDS, SOME PEOPLE GET A STREAMING

20    SERVICE AND DON'T MIND IF IT DISAPPEARS IF THEY DON'T PAY

21    THEIR PRESCRIPTION, AND SOME PEOPLE THINK MUSIC IS -- A SONG

22    IS MORE IMPORTANT, I WANT TO OWN -- I WANT TO OWN MY OWN SONG.

23    DO YOU FEEL THAT WAY?  DO YOU HAVE A STRONG FEELING EITHER WAY

24    THAT WAY?

25         PROSPECTIVE JUROR:  OWN MY OWN MUSIC THAT I MAKE?

1    **MR. COUGHLIN:**  OR EVEN A CD.  LET'S SAY YOU BUY A CD.

2    DO YOU THINK YOU SHOULD BE ABLE TO DO ANYTHING YOU WANT WITH

3    IT?  PLAY IT ON ANY DEVICE YOU WANT?

4        **PROSPECTIVE JUROR:**  SO IF I BUY A CD -- YOUR QUESTION

5    IS IF I BUY A CD, SHOULD I BE ABLE TO PLAY IT ON MY --

6        **MR. COUGHLIN:**  PLAY IT IN YOUR CAR, PLAY IT ON YOUR

7    PANASONIC, PLAY IT ON YOUR SONY, PLAY IT ON YOUR BOY SYSTEM,

8    ANY SYSTEM THAT YOU WANT.  IF YOU BUY THE CD, CAN YOU -- DO

9    YOU THINK YOU SHOULD BE ABLE TO PLAY IT -- DO YOU THINK IF YOU

10   BUY SOMETHING THAT YOU SHOULD BE ABLE TO PLAY IT ANYWHERE THAT

11   YOU WANT ON ANY DEVICE THAT -- LEGALLY, I'M ONLY TALKING ABOUT

12   LEGAL.  YOU BUY IT LEGALLY, DO YOU THINK YOU SHOULD BE ABLE TO

13   PLAY IT ANYWHERE?

14       **PROSPECTIVE JUROR:**  IF I PURCHASE IT, YES.  I CAN

15   PLAY IT IN MY CAR, I CAN PLAY IT ON MY MAC, WHATEVER.

16       **MR. COUGHLIN:**  OKAY.  THAT'S REALLY ALL I WANTED TO

17   KNOW.

18       **PROSPECTIVE JUROR:**  OKAY.

19       **MR. COUGHLIN:**  IF YOU COULD HAND -- IF YOU COULD HAND

20   THE MIC OVER TO MR. KENNEDY.

21       **PROSPECTIVE JUROR:**  YES.

22       **MR. COUGHLIN:**  MR. KENNEDY, DO YOU EVER REMEMBER

23   HEARING ABOUT A CAMPAIGN, RIP, MIX, BURN, AN APPLE CAMPAIGN?

24       **PROSPECTIVE JUROR:**  I DO NOT.

25       **MR. COUGHLIN:**  YOU DO NOT.  BUT YOU RIP AND BURN

1    CD'S; IS THAT RIGHT?

2            **PROSPECTIVE JUROR:**  YES.

3            **MR. COUGHLIN:**  AND YOU DO THAT TODAY?

4            **PROSPECTIVE JUROR:**  I DO NOT.

5            **MR. COUGHLIN:**  NO, YOU DON'T, YOU'VE STOPPED DOING

6    THAT?

7            **PROSPECTIVE JUROR:**  AFTER -- PROBABLY WHEN I GOT TO

8    COLLEGE.

9            **MR. COUGHLIN:**  AFTER YOU GOT OUT OF COLLEGE?

10           **PROSPECTIVE JUROR:**  WHEN I WENT AWAY TO COLLEGE, I

11   LEFT ALL MY MUSIC AT HOME AND I STOPPED LISTENING.  I LISTEN

12   TO THE RADIO NOW.

13           **MR. COUGHLIN:**  I SEE.  SO YOU'RE ESSENTIALLY STUDYING

14   AWAY AND TRYING TO GET THROUGH COLLEGE?

15           **PROSPECTIVE JUROR:**  EXACTLY.

16           **MR. COUGHLIN:**  OKAY.  AND YOU QUIT USING LIMEWIRE AND

17   THOSE OTHER THINGS?

18           **PROSPECTIVE JUROR:**  YEAH, I STOPPED DOING ALL THAT

19   BAD STUFF.

20           **MR. COUGHLIN:**  OKAY.  AND ACTUALLY YOU WOULDN'T DO

21   THAT TODAY, YOU WOULD BUY YOUR MUSIC LEGALLY?

22           **PROSPECTIVE JUROR:**  YEAH, I WOULD BUY LEGALLY NOW.

23           **MR. COUGHLIN:**  SO THAT THE ARTISTS WOULD GET PAID AND

24   THE LABELS OR MUSIC COMPANIES WOULD GET SOME PART OF IT, TOO?

25                   (SIMULTANEOUS COLLOQUY.)

 1          **PROSPECTIVE JUROR:**  UH-HUH.

 2          **THE COURT:**  GENTLEMEN, ONE AT A TIME.

 3          **MR. COUGHLIN:**  OH, SORRY.

 4          **THE COURT:**  GO AHEAD.

 5          **MR. COUGHLIN:**  SORRY.

 6       OKAY.  THAT'S ALL I WANTED TO KNOW.

 7       SEND IT TO OUR ATTORNEY.  AND I'M GOING TO GET THIS NAME

 8   WRONG, BUT MY NAME IS OFTEN BUTCHERED ALSO.  SO IT'S KECSKES?

 9          **PROSPECTIVE JUROR:**  KECSKES.

10          **MR. COUGHLIN:**  KECSKES.  OKAY.  YOU WORK AT HOLLAND &

11   KNIGHT; IS THAT RIGHT?

12          **PROSPECTIVE JUROR:**  I DID.  I WORK AT FOX ROTHSCHILD

13   RIGHT NOW.

14          **MR. COUGHLIN:**  OH, FOX ROTHSCHILD RIGHT NOW.

15       AND YOU'RE IN REAL ESTATE.  IS THERE ANY CHANCE THAT --

16   APPLE ACTUALLY OWNS A LOT OF REAL ESTATE AND RENTS A LOT OF

17   REAL ESTATE.  IS THERE ANY CHANCE THAT -- THAT YOU WOULD COME

18   IN CONTACT WITH THEM IN A BUSINESS SETTING?

19          **PROSPECTIVE JUROR:**  IS THERE ANY CHANCE I COULD?

20          **MR. COUGHLIN:**  IN THE FUTURE MAYBE.

21          **PROSPECTIVE JUROR:**  YEAH, SURE.

22          **MR. COUGHLIN:**  HAVE YOU EVER?

23          **PROSPECTIVE JUROR:**  NO.

24          **MR. COUGHLIN:**  NO.  SO YOU'VE NEVER -- THEY'VE NEVER

25   HIRED YOUR FIRM, TO YOUR KNOWLEDGE?

1          **PROSPECTIVE JUROR:**  TO MY KNOWLEDGE.  YES.

2          **MR. COUGHLIN:**  OKAY.

3      AND YOUR FIRM DOESN'T DO ANY SECURITIES WORK, DO THEY?

4  CLASS-ACTION -- DO THEY DO ANY CLASS-ACTION WORK?

5          **PROSPECTIVE JUROR:**  YES.

6          **MR. COUGHLIN:**  OKAY.  WHAT KIND OF CLASS-ACTIONS?

7          **PROSPECTIVE JUROR:**  ALL DIFFERENT KINDS.  LABOR,

8  CORPORATE, A LOT OF DIFFERENT KINDS.

9          **MR. COUGHLIN:**  SO YOU'RE DEFENDING CLASS-ACTIONS; IS

10  THAT RIGHT?

11          **PROSPECTIVE JUROR:**  YES.

12          **MR. COUGHLIN:**  YOU'RE NOT BRINGING THEM ON BEHALF OF

13  PLAINTIFFS; IS THAT RIGHT?

14          **PROSPECTIVE JUROR:**  THAT'S CORRECT.

15          **MR. COUGHLIN:**  SO THAT ALL YOUR PARTNERS RIGHT NOW

16  ARE ALL WONDERING THERE'S NO WAY THAT GUY IS GOING TO GET ON

17  THAT JURY, THERE'S NO WAY THAT HE COULD BE FAIR; DO YOU THINK?

18          **PROSPECTIVE JUROR:**  NO, I DON'T THINK THAT.

19          **MR. COUGHLIN:**  DO YOU THINK YOU CAN BE FAIR TO THE

20  PLAINTIFFS WHEN -- WHEN YOUR FIRM IS ALWAYS, ALWAYS ON THE

21  OTHER SIDE?

22          **PROSPECTIVE JUROR:**  YES, I THINK I CAN BE FAIR.

23          **MR. COUGHLIN:**  OKAY.  AND YOU'RE FAMILIAR WITH OUR

24  FIRM, RIGHT?  HAVE YOU EVER HEARD OF OUR FIRM?

25          **PROSPECTIVE JUROR:**  I HAVE HEARD OF IT, BUT I DON'T

1    KNOW A LOT ABOUT IT.

2            **MR. COUGHLIN:**  OKAY.  AND DO YOU KNOW IF YOUR FIRM

3    HAS BEEN ON THE OTHER SIDE OF OUR FIRM?

4            **PROSPECTIVE JUROR:**  I DO NOT KNOW.

5            **MR. COUGHLIN:**  OKAY.  OKAY.  IF WE COULD HAND IT OVER

6    TO MR. KAAKE.  DID I GET THAT RIGHT?

7            **PROSPECTIVE JUROR:**  YES.

8            **MR. COUGHLIN:**  OKAY.  MR. KAAKE, HAVE YOU EVER

9    REVERSE-ENGINEERED ANYTHING, ANY CODE?

10           **PROSPECTIVE JUROR:**  YES.

11           **MR. COUGHLIN:**  RIGHT.  AND WHY DID YOU DO THAT?

12           **PROSPECTIVE JUROR:**  PROBLEM SOLVING.

13           **MR. COUGHLIN:**  OKAY.  HAVE YOU EVER

14   REVERSE-ENGINEERED SOMEBODY ELSE'S CODE TO SEE WHAT THEY WERE

15   DOING?  I'M NOT TALKING ABOUT DOING ANYTHING ILLEGAL.  I'M

16   JUST TALK -- DID YOU EVER REVERSE-ENGINEER SOMETHING TO TAKE A

17   LOOK AT IT TO SEE HOW ANOTHER COMPANY WAS DOING SOMETHING, OR

18   NOT?

19           **PROSPECTIVE JUROR:**  NO, NOT REALLY.

20           **MR. COUGHLIN:**  HAVE YOU EVER DEVELOPED CODE FROM

21   SCRATCH, FROM THE BEGINNING?

22           **PROSPECTIVE JUROR:**  YES.

23           **MR. COUGHLIN:**  YES.  AND -- AND DO YOU -- HAVE YOU

24   EVER DEVELOPED CODE TO MAKE SOMETHING INTEROPERABLE, SOMETHING

25   SO THAT IT WORKED TOGETHER WITH SOMETHING ELSE?

```
 1                   PROSPECTIVE JUROR:  YES.

 2              MR. COUGHLIN:  OKAY.  AND HOW -- AND WHY DO YOU DO

 3    THAT?  WHY DO YOU WANT AN INTEROPERABLE SYSTEM?

 4              PROSPECTIVE JUROR:  WELL, USUALLY YOU HAVE TWO

 5    DIFFERENT APPLICATIONS AND YOU NEED DATA FROM ONE TO THE

 6    OTHER.

 7              MR. COUGHLIN:  AND -- AND THE WAY TO DO IT IS TO MAKE

 8    THEM -- IS TO DO A -- A CODE THAT MAKES THEM CONNECT; IS THAT

 9    CORRECT?

10              PROSPECTIVE JUROR:  YES.

11              MR. COUGHLIN:  AND WHAT WOULD YOU CALL THAT CODE THAT

12    MAKES THEM CONNECT?

13              PROSPECTIVE JUROR:  USUALLY -- WELL, DEPENDS ON WHAT

14    YOU'RE DOING, BUT YOU'RE TRYING TO MAKE THEM INTEROPERATE SO

15    USUALLY YOU'RE EITHER DOING COMMUNICATIONS OR YOU'RE EXPORTING

16    DATA, IMPORTING DATA, WHATEVER.

17              MR. COUGHLIN:  AND DO YOU HAVE TO UNDERSTAND THE

18    WHOLE SYSTEM TO MAKE THESE INTEROPERATE, OR DO YOU JUST NEED

19    TO KNOW THE OUTSIDE INTERFACES, THE API?

20              PROSPECTIVE JUROR:  WELL, YOU -- IT DEPENDS ON WHAT

21    YOU'RE DOING, BUT -- BUT IN GENERAL, YOU HAVE TO KNOW WHAT THE

22    DATA IS THAT YOU'RE GOING TO SHARE BETWEEN TWO SYSTEMS.  AND

23    IT --

24              MR. COUGHLIN:  IT'S BETTER TO KNOW THE WHOLE THING?

25              PROSPECTIVE JUROR:  IT'S BETTER TO KNOW EVERYTHING,
```

1    YES.

2              **MR. COUGHLIN:**  OKAY.  IF I COULD ASK YOU TO HAND THE

3    MIC OVER TO MS. WELLIVER.

4        SO MS. WELLIVER, I SEE THAT YOU HAVE -- DID YOU HAVE SOME

5    PARALEGAL TRAINING?

6              **PROSPECTIVE JUROR:**  YES.

7              **MR. COUGHLIN:**  OKAY.  AND DID YOU WORK AT A LAW FIRM?

8              **PROSPECTIVE JUROR:**  I DID.

9              **MR. COUGHLIN:**  OKAY.  AND WHAT WAS THE NAME OF THAT

10   LAW FIRM?

11             **PROSPECTIVE JUROR:**  STEEFEL, LEVITT & WEISS.

12             **MR. COUGHLIN:**  AND WHAT KIND OF WORK DID THEY DO?

13             **PROSPECTIVE JUROR:**  I WAS IN ESTATE PLANNING.

14             **MR. COUGHLIN:**  OKAY.  SO YOU DIDN'T HAVE ANYTHING TO

15   DO WITH SECURITIES OR CLASS-ACTIONS?

16             **PROSPECTIVE JUROR:**  NO.

17             **MR. COUGHLIN:**  ANTITRUST ACTIONS?

18             **PROSPECTIVE JUROR:**  NO.

19             **MR. COUGHLIN:**  OKAY.  AND -- AND THEN I -- I'M NOT

20   SURE AND I MUST HAVE MISSED IT, YOU SAID SOMETHING ABOUT THE

21   LIBRARY?

22             **PROSPECTIVE JUROR:**  I WORK FOR ALAMEDA COUNTY LIBRARY

23   NOW AT THE SAN LORENZO BRANCH.

24             **MR. COUGHLIN:**  OKAY.  AND YOU SAY IN A LAWSUIT, THAT

25   YOU GOT SOME COUPONS; IS THAT RIGHT?

1          **PROSPECTIVE JUROR:**  YEAH.

2          **MR. COUGHLIN:**  OKAY.  AND YOU'D RATHER HAVE GOTTEN

3    THE TEN BUCKS?

4          **PROSPECTIVE JUROR:**  WELL, IT WAS THE CLASS-ACTION

5    WITH LAMPS PLUS, AND THEY GAVE US A $10 COUPON FOR THEIR

6    STORES.

7          **MR. COUGHLIN:**  ALMOST FORCE YOU TO GO BACK AND GET

8    ANOTHER LAMP YOU DIDN'T WANT; IS THAT RIGHT?  BUT YOU DIDN'T

9    DO THAT, RIGHT?

10          **PROSPECTIVE JUROR:**  NO.

11          **MR. COUGHLIN:**  YOU WOULD HAVE RATHER HAD THE $10?

12          **PROSPECTIVE JUROR:**  YEAH.

13          **MR. COUGHLIN:**  OKAY.  THIS ISN'T A COUPON CASE.

14    OKAY?  THIS IS ABOUT MONEY DAMAGES, YOU KNOW, AND HUNDREDS OF

15    MILLIONS OF DOLLARS IN POTENTIAL DAMAGES.

16       SO DID THE FACT THAT YOU GOT A COUPON IN THE MAIL IN A

17    CLASS-ACTION KIND OF GIVE YOU LIKE WHAT ARE THESE PEOPLE

18    DOING, WHY ARE THEY WASTING OUR TIME?

19          **PROSPECTIVE JUROR:**  WELL, HAVING A LEGAL BACKGROUND,

20    WHEN I GOT THE NOTIFICATION ABOUT THE CLASS, I WAS JUST

21    CURIOUS TO SEE WOULD I GET LOST IN THE COG, WOULD THEY REALLY

22    FIND ME.  SO THAT'S WHY I JUST CHECKED THE BOX AND SENT THE

23    THING BACK IN, JUST WONDERING WHAT WOULD HAPPEN.  AND THEN I

24    GOT THE RESPONSE WHEN --

25          **MR. COUGHLIN:**  WHEN IT SETTLED?

```
 1                    PROSPECTIVE JUROR:  YES.

 2                MR. COUGHLIN:  AND YOU DON'T KNOW IF IT WENT TO TRIAL

 3   OR NOT?

 4                    PROSPECTIVE JUROR:  NO.

 5                MR. COUGHLIN:  BUT IT SETTLED.

 6        AND BEFORE THAT, YOU LEARNED ABOUT IT -- YOU LEARNED ABOUT

 7   IT BECAUSE YOU GOT A NOTICE IN THE MAIL; IS THAT RIGHT?

 8                    PROSPECTIVE JUROR:  YES.

 9                MR. COUGHLIN:  OKAY.  THAT THERE WAS AN ACTION GOING

10   ON, AND YOU GOT A NOTICE FROM A COURT THAT SAID, HEY, THIS IS

11   WHAT -- THIS ACTION IS PENDING HERE AND IT'S GOING FORWARD.

12   SO THAT YOU KNEW ABOUT IT BEFOREHAND; IS THAT RIGHT?

13                    PROSPECTIVE JUROR:  YES.

14                MR. COUGHLIN:  OKAY.  SO THEN YOU DECIDED TO

15   PARTICIPATE AND YOU FILLED OUT THE FORM AND SENT IT IN?

16                    PROSPECTIVE JUROR:  YES.

17                MR. COUGHLIN:  OKAY.  AND THEN LATER THEY FOUND YOU

18   AGAIN AND YOU GOT YOUR COUPON?

19                    PROSPECTIVE JUROR:  YES.

20                MR. COUGHLIN:  SO IT WORKED?

21                    PROSPECTIVE JUROR:  YES.

22                MR. COUGHLIN:  OKAY.  I'M GLAD IT WORKED FOR YOU.

23   I'M SORRY IT WASN'T $10, BUT I'M GLAD IT WORKED FOR YOU.

24        MR. BARRIOS, IS IT BARRIO OR BARRIOS?

25                    PROSPECTIVE JUROR:  BARRIOS.
```

1        **MR. COUGHLIN:**  BARRIOS.  MR. BARRIOS, YOU HAVE A

2   SYSTEMS ANALYST BACKGROUND; IS THAT RIGHT?

3        **PROSPECTIVE JUROR:**  YES.

4        **MR. COUGHLIN:**  SO YOU MAKE THINGS INTEROPERATE; IS

5   THAT RIGHT?

6        **PROSPECTIVE JUROR:**  YES.

7        **MR. COUGHLIN:**  TELL US HOW YOU DO THAT AT YOUR JOB.

8   I DIDN'T UNDERSTAND THE -- THERE'S A CONNECTION BETWEEN -- I

9   GUESS YOU -- YOU WERE WORKING WITH EPIC AND YOU WERE

10  WORKING --

11       **PROSPECTIVE JUROR:**  WELL, WE IMPLEMENTED EPIC A YEAR

12  AGO.

13       **THE COURT:**  ONE MINUTE, MR. COUGHLIN.

14       **MR. COUGHLIN:**  OH, I HAVE ONE MINUTE.  OKAY.  THANK

15  YOU, YOUR HONOR.

16     I'VE GOT ONE MINUTE.  GO AHEAD.

17       **PROSPECTIVE JUROR:**  I CAN'T EXPLAIN IT IN A MINUTE.

18       **MR. COUGHLIN:**  OKAY.

19       **THE COURT:**  GO AHEAD.  EXPLAIN.

20       **PROSPECTIVE JUROR:**  WELL, THERE'S -- THERE'S A DOZEN

21  FILE SERVERS.  YOU'VE GOT 4,000 COMPUTERS OUT IN THE HOSPITAL.

22  YOU'VE GOT THE MAINFRAME.  THERE'S 12 SERVERS IN THE MIDDLE

23  THAT DO SOME OF THE APPLICATION WORK.  SO I SUPPORT THOSE

24  12 SERVERS.  IT'S PRINTING, THERE'S INTERFACES, THERE'S DATA

25  STORAGE.  WE SAY FILES.  SO IT'S -- THERE'S A LOT.  IT'S JUST

1    A BIG MASS OF STUFF THAT HAPPENS IN THAT MIDDLE GROUND.

2           **MR. COUGHLIN:**  AND YOU MAKE IT ALL WORK TOGETHER?

3           **PROSPECTIVE JUROR:**  YES.

4           **MR. COUGHLIN:**  OKAY.  YOU KNOW, I'M GOING TO END IT

5    RIGHT HERE BECAUSE I DON'T WANT SOMEBODY CUT OFF IN THE MIDDLE

6    OF THEIR QUESTION.  THANK YOU.  THANK YOU FOR YOUR TIME.  I'M

7    SORRY I DIDN'T GET TO ASK EVERYBODY A QUESTION.

8        I DID HAVE A QUESTION FOR YOU, MR. PITTS, BUT I'LL SIT

9    DOWN RIGHT NOW.  THANK YOU.

10          **THE COURT:**  MR. ISAACSON, YOU'LL HAVE EQUAL TIME.

11   YOU MAY PROCEED.

12          **MR. ISAACSON:**  ACTUALLY, I'M ALSO GOING TO WANT YOU

13   TO MEET MS. DUNN, SO I'M GOING TO USE A LITTLE TIME AND YOU'LL

14   MEET MS. DUNN.  BUT I'LL ASK YOU A FEW QUESTIONS AND SEE HOW

15   FAR WE GET.

16       NOW ONE OF THE THINGS YOU MAY ALREADY HAVE NOTICED IS

17   THAT, AS THE DEFENDANT REPRESENTING APPLE, WE GO SECOND IN

18   THIS CASE.  SO YOU WILL HEAR FROM THE PLAINTIFF AND THEN YOU

19   WILL HEAR FROM US IN TERMS OF PRESENTATION OF EVIDENCE,

20   OPENING STATEMENTS, AND THAT SORT OF THING.

21       IS ANYBODY GOING TO HAVE ANY PROBLEM RESERVING JUDGMENT

22   WHILE YOU'RE HEARING FROM ONE SIDE UNTIL YOU HEAR FROM BOTH

23   SIDES SO THAT YOU CAN GET THE WHOLE SIDE OF THE STORY?

24   ANYBODY GOING TO HAVE ANY PROBLEM WITH THAT?

25       NOW, THE OTHER THING IS YOU'VE HEARD IT'S AN ANTITRUST

 1    CASE AND THE JUDGE ALREADY GAVE YOU A BRIEF INSTRUCTION ON

 2    THAT.  YOU'RE GOING TO HEAR ABOUT VARIOUS FACTS, AND YOU ARE

 3    THE DECIDER OF THE FACTS, BUT YOU'RE GOING TO DECIDE THEM

 4    UNDER THE LAW.  IS ANYBODY GOING TO HAVE TROUBLE RESERVING

 5    JUDGMENT ABOUT HOW THEY'RE GOING TO DECIDE THIS CASE UNTIL

 6    THEY LOOK AT THAT LAW CAREFULLY AS THE COURT GIVES IT TO YOU?

 7    ANYBODY GOING TO HAVE ANY PROBLEM ON THAT?

 8        NOW, FOR EXAMPLE, YOU'RE GOING TO HAVE TO ALSO DECIDE

 9    WHAT'S RELEVANT IN THE CASE UNDER THE LAW BY LOOKING AT THOSE

10    LEGAL INSTRUCTIONS.  SO IF YOU -- YOU'RE GOING TO HEAR

11    PHRASES, YOU'VE ALREADY HEARD PHRASES LIKE "RIP" AND "BURN."

12    IF YOU'RE TRYING -- BEFORE YOU MAKE ANY DECISION ABOUT WHAT --

13    HOW TO DECIDE THIS CASE, ARE YOU GOING TO BE ABLE TO WAIT AND

14    LOOK AT THOSE INSTRUCTIONS ABOUT WHAT THE ANTITRUST LAW SAYS

15    THAT THE COURT IS GOING TO GIVE YOU?

16        ALL RIGHT.

17        YOU'RE GOING TO HEAR EVIDENCE IN THIS CASE ABOUT SECURITY

18    UPDATES AND APPLE SECURITY UPDATES.  YOU ALREADY HEARD MENTION

19    OF 7.0, 7.4.  YOU'RE GOING TO LEARN THOSE NUMBERS.  AND YOU'RE

20    GOING TO BE ASKED TO DECIDE THOSE UNDER THE ANTITRUST LAWS.

21        SO BEFORE YOU MAKE UP YOUR MIND ABOUT WHAT APPLE DID WITH

22    RESPECT TO 7.0 AND 7.4, IS ANYBODY GOING TO HAVE ANY PROBLEM

23    WAITING TO LOOK AT WHAT THE LAW SAYS ABOUT THAT THAT THE COURT

24    IS GOING TO GIVE YOU?  NOT THE LAWYERS.  THE COURT IS GOING TO

25    GIVE YOU THE LAW.

```
1         OKAY.

2         NOW, THE COURT SAID A FEW THINGS TO YOU, MR. COUGHLIN SAID

3    A FEW THINGS TO YOU.  DOES ANYTHING YOU'VE HEARD SO FAR REMIND

4    YOU OF ANYTHING IN YOUR OWN LIFE?  IS ANYBODY SITTING HERE

5    THINKING, OH, THAT REMINDS ME OF SOMETHING I WENT THROUGH OR

6    AN ISSUE I DEALT WITH?

7         NOW, THIS IS A PIECE OF LITIGATION, A CLASS-ACTION AGAINST

8    APPLE.  DOES ANYBODY HAVE ANY KNOWLEDGE OR INFORMATION ABOUT

9    ANY OTHER LAWSUITS AGAINST APPLE?  ANYBODY HEARD OF ANY OTHER

10   CASE AGAIN APPLE?

11        ALL RIGHT.

12                   (DISCUSSION OFF THE RECORD.)

13        THE COURT:  FIRST OF ALL, WE NEED TO GET HIM THE MIC.

14   AND COUNSEL IS REMINDED TO IDENTIFY THE JUROR FOR THE RECORD.

15        MR. ISAACSON:  YES.

16        PROSPECTIVE JUROR:  SORRY.

17        MR. ISAACSON:  MR. MCCULLY.

18        PROSPECTIVE JUROR:  YES.  I BELIEVE THERE'S ONE

19   BETWEEN YOU AND SAMSUNG RIGHT NOW.

20        MR. ISAACSON:  OKAY.

21        PROSPECTIVE JUROR:  IS THAT NOT CORRECT?

22        MR. ISAACSON:  ANYBODY ELSE HEARD OF ANYTHING ELSE?

23        PROSPECTIVE JUROR:  I'VE HEARD OF THE SAME SUIT.

24        MR. ISAACSON:  OKAY.  MR. KECSKES -- EVERYBODY HAS

25   MISPRONOUNCED YOUR NAME, AND I APOLOGIZE.
```

1          MR. MCCULLY, ONE OTHER QUESTION.  YOU WORK AT GOOGLE.

2          **PROSPECTIVE JUROR:**  YES.

3          **MR. ISAACSON:**  AND YOU'VE PROBABLY HEARD THAT APPLE

4    COMPETES AGAINST GOOGLE.

5          **PROSPECTIVE JUROR:**  YES.

6          **MR. ISAACSON:**  IF YOU RENDER A VERDICT FOR APPLE IN

7    THIS CASE AND DON'T HIT APPLE WITH A BIG VERDICT, YOU'RE GOING

8    TO BE IN ANY TROUBLE AT WORK?  ANY OF YOUR PEOPLE GOING TO SAY

9    ANYTHING TO YOU ABOUT YOU MISSED YOUR OPPORTUNITY?

10         **PROSPECTIVE JUROR:**  NO.

11         **MR. ISAACSON:**  ALL RIGHT.  NOW, AND ACTUALLY

12   MR. COUGHLIN SAID THAT THEY'RE GOING TO BE ASKING FOR HUNDREDS

13   OF MILLIONS OF DOLLARS IN DAMAGES.  IS ANYBODY GOING TO HAVE

14   ANY PROBLEM WAITING TO HEAR THE EVIDENCE -- AND HE ALSO TALKED

15   ABOUT THERE'S GOING TO BE CONSUMERS WHO ARE IN THIS CLASS,

16   THERE'S GOING TO BE BUSINESSES IN THIS CLASS, AND HE'S GOING

17   TO ASK FOR HUNDREDS OF MILLIONS OF DOLLARS FOR THESE PEOPLE

18   AND FOR THOSE BUSINESSES.  IS ANYBODY GOING TO HAVE ANY

19   PROBLEM IF THEY HEAR THE EVIDENCE, IF THEY HEAR THE LAW

20   PRESENTED BY THE COURT SAYING, YES, THOSE ARE CONSUMERS, YES,

21   THERE'S A LOT OF MONEY, BUT I'M COMFORTABLE AWARDING ZERO IF

22   THE EVIDENCE AND THE LAW SAYS THAT'S WHAT I SHOULD DO; ANYBODY

23   HAVE ANY PROBLEM WITH THAT?

24         OKAY.  THANKS.

25         DOES ANYBODY AT THIS POINT HAVE ANY JUDGMENTS OR OPINIONS

1     ABOUT THIS CASE BASED ON YOUR BACKGROUND, WHAT YOU'VE WALKED

2     IN TODAY WITH, AND WHAT YOU'VE HEARD?

3         OKAY.

4         FILE SHARING OF MUSIC.  DOES ANYBODY HAVE ANY STRONG --

5     THERE'S -- SOME PEOPLE HAVE MENTIONED THAT THEY -- THAT'S GONE

6     ON IN THE PAST.  ANYBODY HAVE ANY STRONG OPINIONS ABOUT THE --

7     ANY OLD LEGAL ISSUES HAVING TO DO WITH FILE SHARING?

8             **PROSPECTIVE JUROR:**  I SAID IT DESTROYED SHARING SO

9     THAT WAS PRETTY STRONG.

10            **MR. ISAACSON:**  RIGHT, THAT DR --

11            **PROSPECTIVE JUROR:**  THAT DRM DESTROYED SHARING

12    BECAUSE YOU COULD NO LONGER SHARE YOUR MUSIC WITH FRIENDS.

13            **MR. ISAACSON:**  ALL RIGHT.  SO DO YOU HAVE ANY

14    ATTITUDES ABOUT THAT THAT WOULD CAUSE YOU TO SAY, I DON'T

15    THINK I CAN MAKE A FAIR DECISION ABOUT WHAT APPLE DID ONCE I

16    HEAR THE FACTS, AND THE JUDGE TELLS YOU THE LAW?

17            **PROSPECTIVE JUROR:**  I'M NOT -- I'M NOT CERTAIN IF

18    I -- I CAN.  I THINK I CAN.

19            **MR. ISAACSON:**  OKAY.  IF -- WILL YOU BE ABLE TO

20    LISTEN TO THE LAW AND DECIDE WHETHER THE FACT THAT DRM LIMITED

21    SOME SHARING HAS ANYTHING TO DO WITH THIS CASE?  ARE YOU GOING

22    TO BE ABLE TO WAIT AND DECIDE THAT AND LOOK AT WHAT THE LAW

23    SAYS?

24            **PROSPECTIVE JUROR:**  YES.

25            **MR. ISAACSON:**  OKAY.

```
 1        THE -- MS. SMITH.  SORRY TO SURPRISE YOU THERE.  ON YOUR

 2   QUESTIONNAIRE, YOU MENTIONED A CLASS-ACTION, I THINK, WHERE

 3   YOU BENEFITED FROM -- WAS IT -- DID IT HAVE TO DO WITH KINDLE?

 4        PROSPECTIVE JUROR:  IT WAS FROM AMAZON FOR THE

 5   KINDLE.  I KNEW NOTHING ABOUT IT UNTIL I RECEIVED AN EMAIL

 6   SAYING I ALREADY RECEIVED LIKE A $9 CREDIT.  I HONESTLY DON'T

 7   KNOW ALL THE DETAILS TO IT.

 8        MR. ISAACSON:  OKAY.  DID YOU DO ANY LOOKING INTO

 9   WHAT THAT CLASS-ACTION WAS ABOUT OR LEARN ANYTHING ABOUT THIS?

10        PROSPECTIVE JUROR:  NO.

11        MR. ISAACSON:  MR. -- IS IT OVALLE?  YES.

12        YOU MENTIONED -- I JUST WANT TO MAKE SURE ABOUT ONE THING.

13   YOU MENTIONED IN YOUR QUESTIONNAIRE DOING, I THINK, SOME

14   DESIGN WORK RELATED TO APPLE HEADQUARTERS.  ARE YOU DOING ANY

15   WORK FOR APPLE?

16        PROSPECTIVE JUROR:  WELL, WITH ALL THEIR LAWYERS

17   IN-HOUSE AND THE AMOUNT OF NDA'S I'VE SIGNED, I CAN'T REALLY

18   SAY OTHER THAN FOR THE LAST THREE YEARS, YES, I'VE BEEN

19   ACTIVELY INVOLVED IN THE DESIGN WORK OF MUCH OF WHAT'S GOING

20   ON AT -- IN CUPERTINO RIGHT NOW.

21        MR. ISAACSON:  OKAY.

22        I'LL ASK YOU ONE MORE EASY SET OF QUESTIONS, AND THEN I'M

23   GOING TO LET MS. DUNN TALK TO YOU.

24        WILL YOU RAISE YOUR HAND AND IF YOU OWN AND ARE USING A

25   SMART PHONE?
```

```
 1                          (HANDS RAISED.)

 2              MR. ISAACSON:  RAISE YOUR HAND IF YOU'RE USING A CELL

 3    PHONE.  REMEMBER THAT TERM?  NOT A SMART PHONE, THE OTHER

 4    PREVIOUS PHONES.

 5                          (HANDS RAISED.)

 6              MR. ISAACSON:  ANYBODY NOT USING ANY SORT OF MOBILE

 7    PHONE?

 8              PROSPECTIVE JUROR:  BLACKBERRY.

 9              MR. ISAACSON:  BLACKBERRY.

10              PROSPECTIVE JUROR:  BECAUSE --

11                      (OFF-THE-RECORD DISCUSSION.)

12              MR. ISAACSON:  THAT IS MS. RATTIA?

13              PROSPECTIVE JUROR:  YEAH, RATTIA.  I USE THE

14    BLACKBERRY.

15              MR. ISAACSON:  ALL RIGHT.

16              THE COURT:  OKAY.  TEN MINUTES LEFT.

17        MS. DUNN?  TEN MINUTES LEFT.

18              MS. DUNN:  THANK YOU, YOUR HONOR.

19        SO I JUST WANT TO BE ABLE TO SAY MR. KECSKES' NAME

20    CORRECTLY BECAUSE IF YOU'RE LAST, YOU GET TO DO THAT.  AND

21    IT'S NICE TO SEE YOU.  WE'RE PRETTY FAR AWAY AND YOU'RE BEHIND

22    THE MONITORS AND I'M PRETTY SHORT SO THIS IS WHAT I LOOK LIKE.

23        SO I WANT TO ASK A COUPLE INDIVIDUAL QUESTIONS, AND I

24    DEFINITELY WON'T GET TO EVERYONE.

25        MR. KENNEDY, I WANT TO START WITH YOU, AND IT'S GOOD TO BE
```

1    ABLE TO SEE YOU.  SO IF YOU COULD GRAB THE MIC.

2        WHEN THE JUDGE WAS TALKING TO YOU, SHE ASKED YOU ABOUT

3    WHETHER YOU HAVE STRONG FEELINGS ABOUT CORPORATIONS, AND YOU

4    SAID THAT YOU DID.  SO I WANTED TO ASK YOU WHAT ARE SOME OF

5    THOSE STRONG FEELINGS?

6        **PROSPECTIVE JUROR:**  I GUESS THEY GET A LOT OF TAX

7    BREAKS THAT I DON'T AGREE WITH.  THEY GET A LOT OF PROTECTIONS

8    THAT MOST PEOPLE DON'T GET.  AND I DON'T KNOW IF YOU PAY

9    ATTENTION TO POLITICS, BUT THE SUPREME COURT SAID THAT

10   CORPORATIONS ARE PEOPLE, AND I COMPLETELY DISAGREE WITH THAT.

11       **MS. DUNN:**  AND WHY DO YOU DISAGREE?  WHAT -- WHAT'S

12   DRIVING YOUR FEELINGS?

13       **PROSPECTIVE JUROR:**  BECAUSE CORPORATIONS ARE

14   MOTIVATED BY PROFITS AND THEIR SHAREHOLDERS VERSUS THE

15   INTERESTS AND WELL-BEING OF THE PEOPLE WHO WORK THERE AND THE

16   PEOPLE THAT THEY SERVE.

17       **MS. DUNN:**  SO, AND I HAVE TO SAY I REALLY APPRECIATE

18   YOUR HONESTY BECAUSE IN THIS CASE, YOU KNOW, WE HAVE

19   PLAINTIFFS, AND OBVIOUSLY MR. ISAACSON AND I REPRESENT A

20   CORPORATION.  SO WE'RE TRYING TO FIGURE OUT, YOU KNOW, HOW

21   STRONG YOUR FEELINGS ARE AND WHETHER YOU WOULD BRING THEM WITH

22   YOU TO THE JURY ROOM.

23       **PROSPECTIVE JUROR:**  NO, I WOULDN'T.

24       **MS. DUNN:**  OKAY.  THANK YOU FOR TELLING ME THAT.

25       MS. BARRAZA.

```
 1              PROSPECTIVE JUROR:  YES.

 2          MS. DUNN:  GOOD TO MEET YOU.

 3       SO YOU SPOKE EARLIER TO THE JUDGE ABOUT SOME ISSUES WITH

 4    LANGUAGE THAT YOU WERE HAVING, AND IT WAS GOOD THAT YOU

 5    BROUGHT THEM UP.  ONE QUESTION I HAVE:  WERE YOU ABLE TO

 6    UNDERSTAND EVERYTHING THAT THE JUDGE SAID TO YOU TODAY SO FAR?

 7              PROSPECTIVE JUROR:  YES.

 8          MS. DUNN:  AND DID YOU UNDERSTAND EVERYTHING THAT

 9    MR. COUGHLIN AND MR. ISAACSON SAID TO YOU?

10              PROSPECTIVE JUROR:  YEAH.  BUT NOT A LOT OF THE STUFF

11    THAT THEY WERE -- THEY WERE TALKING TO THE OTHER.

12          MS. DUNN:  CAN YOU SAY MORE ABOUT THAT?

13              PROSPECTIVE JUROR:  WELL, I DON'T UNDERSTAND A LOT OF

14    THE LEGAL TERMS AND A LOT OF, YOU KNOW, LIKE THE TERMS.

15          MS. DUNN:  RIGHT.  SO WERE THERE THINGS THAT

16    MR. COUGHLIN SAID TODAY THAT YOU DID NOT UNDERSTAND?

17              PROSPECTIVE JUROR:  YES.

18          MS. DUNN:  OKAY.  HOW ABOUT MR. ISAACSON?

19              PROSPECTIVE JUROR:  BOTH.

20          MS. DUNN:  HOW ABOUT ME?  YOU UNDERSTAND ME?

21              PROSPECTIVE JUROR:  WELL, I UNDERSTAND WHAT -- THAT

22    YOU'RE TALKING TO ME AND YOU'RE ASKING ME QUESTIONS, BUT THE

23    TERMS, THAT'S WHAT -- A LOT OF TERMS, I DON'T UNDERSTAND THEM.

24          MS. DUNN:  GREAT.  THANK YOU.

25       MS. SMITH, I HAVE ONE QUESTION FOR YOU.  SO EARLIER, YOU
```

```
1    SAID THAT PRODUCTS HAVE PROS AND CONS.

2              PROSPECTIVE JUROR:  YES.

3         MS. DUNN:  I JUST WANTED TO TALK TO YOU A LITTLE BIT

4    ABOUT WHAT YOU MEANT BY THAT.  DID YOU SAY THAT YOU HAVE AN

5    IPOD?

6              PROSPECTIVE JUROR:  I HAVE AN IPAD.

7         MS. DUNN:  OKAY.  SO YOU HAVE AN IPAD BUT NOT AN

8    IPOD?

9              PROSPECTIVE JUROR:  MY SON HAS AN IPOD.

10        MS. DUNN:  OKAY.  SO THINKING SPECIFICALLY ABOUT THE

11   IPOD, ARE THERE PARTICULAR PROS AND CONS THAT ARE CONCERNING

12   YOU?

13             PROSPECTIVE JUROR:  I DON'T THINK I USE IT ENOUGH TO

14   REALLY JUDGE THE PRODUCT.

15        MS. DUNN:  OKAY.

16             PROSPECTIVE JUROR:  I CAN SAY THE EXPERIENCE I HAD,

17   MY DAUGHTER BROKE MY SON'S IPOD AND THE COST TO FIX IT

18   WOULD -- WASN'T WORTH IT.  WE WERE JUST BETTER OFF BUYING A

19   NEW ONE.

20        MS. DUNN:  OKAY.  AND DID YOU BUY A NEW IPOD?

21             PROSPECTIVE JUROR:  YES.

22        MS. DUNN:  THANKS VERY MUCH.

23        SO I HAVE A GENERAL QUESTION WHICH IS IF I COULD SEE A

24   SHOW OF HANDS OF PEOPLE WHO HAVE STRONG OPINIONS ABOUT OPEN

25   SOURCE CODE OR OPEN SOURCE SOFTWARE.
```

 1          OKAY.  SO IT LOOKS LIKE WE HAVE A FEW PEOPLE, AND I'D LOVE

 2   TO HEAR FROM EACH OF YOU.  AND MAYBE THROUGH YOUR ANSWERS,

 3   PEOPLE WHO DON'T KNOW WHAT OPEN SOURCE CODE OR OPEN SOURCE

 4   SOFTWARE WILL LEARN ABOUT THAT.

 5          **PROSPECTIVE JUROR:**  I THINK OPEN SOURCE IS A GREAT

 6   SHARING ENVIRONMENT, AND I BELIEVE IN SHARING KNOWLEDGE AND

 7   THAT KIND OF ENVIRONMENT.

 8          **MS. DUNN:**  UM-HMM.  MR. MCCULLY.

 9      OH, I'M SORRY.

10          **PROSPECTIVE JUROR:**  JAMES VICTORIA.

11          **MS. DUNN:**  RIGHT.  MR. VICTORIA.

12          **PROSPECTIVE JUROR:**  SAME THING.  I THINK TRANSPARENCY

13   IS HUGE WHEN IT COMES TO OPEN SOURCE SOFTWARE AND LETTING

14   USERS AND LETTING, I GUESS, OTHER DEVELOPERS SORT OF BE OPEN

15   TO IT.

16          **MS. DUNN:**  UM-HMM.

17          **PROSPECTIVE JUROR:**  YES.

18          **MS. DUNN:**  AND, MR. KAAKE, I THINK YOU ALSO HAD AN

19   OPINION.

20          **PROSPECTIVE JUROR:**  YES, JERRY KAAKE.  MY OPINION IS

21   THAT IT BASICALLY GIVES A THIRD PARTY THE ABILITY TO BRING

22   FUNCTIONALITY TO A MARKETPLACE.

23          **MS. DUNN:**  OKAY.  WHAT HAPPENS IF THE THIRD PARTY

24   DOESN'T HAVE VERY GOOD KNOWLEDGE OR COMPLETE KNOWLEDGE?  WHAT

25   HAPPENS TO THE FUNCTIONALITY; DO YOU KNOW?

```
 1              PROSPECTIVE JUROR:  IF -- IF THEY DON'T HAVE COMPLETE
 2     KNOWLEDGE OF THE FIELD THEY'RE WORKING IN?
 3              MS. DUNN:  YEAH.
 4              PROSPECTIVE JUROR:  WELL, USUALLY THAT'S GOING TO
 5     FAIL.
 6              MS. DUNN:  YEAH.  CAN YOU SAY MORE ABOUT THAT, HOW IT
 7     WOULD FAIL?
 8              PROSPECTIVE JUROR:  WELL, THE PROBLEM WOULD BE IF YOU
 9     DON'T UNDERSTAND THE FIELD, YOU'RE GOING TO MISS IMPORTANT
10     AREAS OR YOU'RE GOING -- OR YOU'RE GOING TO DO SOMETHING WRONG
11     WHICH IS GOING TO DRIVE PEOPLE AWAY FROM THAT.
12              MS. DUNN:  GOT IT.  OKAY.  SO THAT MAKES SENSE TO ME.
13          DID ANYBODY ELSE HAVE AN OPINION ABOUT THAT?
14          OKAY.
15          ONE OTHER THING.  I -- WE DO HAVE A LOT OF PEOPLE WITH
16     TECHNICAL BACKGROUNDS ON THE JURY, AND I'M WONDERING IF
17     ANYBODY HAS ANY STRONG OPINIONS ABOUT SECURITY ISSUES.
18          NO STRONG OPINIONS?  OKAY.
19          EARLIER A COUPLE PEOPLE TOLD STORIES.  MR. YOUNG, WHO'S
20     NOT HERE ANYMORE, ACTUALLY TOLD A STORY ABOUT HE AND HIS WIFE
21     HAD A PROBLEM WITH AN UPGRADE TO A PRODUCT.
22          DOES ANYBODY ELSE HAVE A PERSONAL STORY ALONG SIMILAR
23     LINES THAT THEY -- THAT POPS TO THEIR MIND WHEN THEY HEARD
24     MR. YOUNG'S STORY?
25          I THINK ALSO, MR. VICTORIA, YOU HAD A SIMILAR STORY.
```

1        ANYBODY ELSE?

2        GO AHEAD, MR. OVALLE.

3            **PROSPECTIVE JUROR:**  YES.  MY WIFE'S PHONE IS THE

4    OLDER IPHONE.  THE LAST UPDATE IOS THAT CAME OUT, 8, WHATEVER

5    WE'RE UP TO NOW, HER PHONE HAS BEEN INOPERABLE SINCE.  I HAVE

6    THE NEWER ONE, AND IT'S STILL SITTING IN MY UPDATE.  SO ONE

7    THING I'VE LEARNED WITH APPLE UPDATES IS THAT THEY'RE

8    SOMETIMES HIT OR MISS, IS NEVER AUTOMATICALLY HAVE THEM UPDATE

9    IT.  IT'S A MANUAL THING.  SO YOU CAN GET INFORMATION ON HOW

10    THE NEW IOS SYSTEM IS WORKING FROM APPLE AND WHETHER OR NOT

11    IT'S WORTH THE TIME TO -- TO UPGRADE OR UPDATE YOUR SOFTWARE

12    ON AN OLDER DEVICE.

13        SO THEY AREN'T VERY KIND TO -- AT LEAST MY FEELING IS THAT

14    THEY'RE VIEW OF CREATING THESE NEW OPERATING SYSTEMS REALLY

15    LEAVES, IF YOU ARE .1 BEHIND IN VERSION, YOU WILL NOT BE ABLE

16    TO UPGRADE UNLESS YOU BUY A NEW DEVICE.

17            **MS. DUNN:**  OKAY.  ANYBODY ELSE?

18            **PROSPECTIVE JUROR:**  SIMILAR EXPERIENCE.

19            **MS. DUNN:**  SIMILAR EXPERIENCE?

20            **THE COURT:**  TWO MINUTES.

21            **MS. DUNN:**  SO THE -- ONE THING TO BE CLEAR IS THIS --

22    THIS CASE IS NOT GOING TO BE ABOUT THE OPERATING SYSTEM.  IT'S

23    GOING TO BE ABOUT ITUNES.  I JUST WANT TO MAKE SURE IF ANYBODY

24    UNDERSTANDS -- DOESN'T UNDERSTAND THE DIFFERENCE, RAISE YOUR

25    HAND.  THEY'RE -- ITUNES HAS SPECIFICALLY TO DO WITH THE IPOD,

1    AND I THINK YOU'RE TALKING ABOUT AN IPHONE.

2        ANYBODY THAT HAVE A PROBLEM EVER GO TO APPLE CUSTOMER

3    SERVICE, CUSTOMER CARE TO GET IT FIXED?

4            **PROSPECTIVE JUROR:**  I NEEDED HELP WITH MY --

5        **MS. DUNN:**  MS. LOCKLEAR.

6        **PROSPECTIVE JUROR:**  YES.  WITH MY -- TO UPGRADE MY

7    COMPUTER AND I DIDN'T KNOW MY PASSWORD.  SO WHEN I CALLED, I

8    WAS ONLINE FOR A VERY LONG TIME AND THEN I GOT CUT OFF, AND I

9    HAD LEFT MY PHONE NUMBER.  AND I WAS NEVER CALLED BACK.  SO I

10   ACTUALLY WENT INTO THE STORE, MADE AN APPOINTMENT, HAD TO GO

11   BACK.  SO IT WAS A VERY CUMBERSOME PROCESS.

12           **MS. DUNN:**  WHAT HAPPENED IN THE END?

13           **PROSPECTIVE JUROR:**  IN THE END, I GOT GREAT HELP AT

14   THE GENIUS BAR SO -- BUT IT JUST SEEMED LIKE I HAD TO JUMP

15   THROUGH A LOT OF HOOPS TO GET THERE.

16           **MS. DUNN:**  OKAY.

17           **THE COURT:**  LESS THAN A MINUTE, LESS THAN ONE MINUTE.

18           **MS. DUNN:**  LESS THAN A MINUTE.

19       SO FOR THE PEOPLE WHO SPOKE ABOUT THEIR PERSONAL

20   EXPERIENCES, WHEN YOU GO TO THE JURY ROOM, WILL YOU BE ABLE TO

21   LEAVE THOSE PERSONAL EXPERIENCES BEHIND AND EVALUATE ONLY THE

22   EVIDENCE IN THIS CASE?

23           **PROSPECTIVE JUROR:**  YES.

24       **MS. DUNN:**  YES?  OKAY.

25           **THE COURT:**  OKAY.  THANK YOU.

```
 1            MS. DUNN:  THANKS VERY MUCH.

 2            THE COURT:  ALL RIGHT.  LADIES AND GENTLEMEN, I AM

 3    GOING TO -- I NEED TO TALK TO THE LAWYERS OUTSIDE OF THE

 4    PRESENCE OF THE JURY.  THIS PROCESS WILL TAKE ABOUT

 5    15 MINUTES.

 6        I NEED AND WILL ASK THAT ALL JURORS, THE ONES UP HERE AND

 7    THE ONES STILL IN THE AUDIENCE, I'M GOING TO ASK YOU TO LEAVE

 8    THE COURTROOM.  I WILL NOT CALL YOU BACK IN BEFORE 2:00

 9    O'CLOCK.  SO IF YOU NEED TO GO TO THE BATHROOM OR SOMETHING,

10    THAT'S FINE.  BUT DO NOT STRAY VERY FAR.

11        I DO WANT TO ASK A FOLLOW-UP QUESTION OF MS. SPRAGUE, SO

12    IF YOU'LL WAIT HERE, PLEASE.  BUT IF THE REST OF YOU WILL

13    PLEASE LEAVE THE COURTROOM NOW.

14        NOW, ONE OTHER NOTE.  WHEN YOU COME BACK, YOU'RE NOT

15    COMING TO THESE CHAIRS.  YOU WILL ALL STAY IN THE BACK.  OKAY?

16        THANK YOU.  SO YOU CAN LEAVE THE COURTROOM NOW, ALL

17    JURORS.

18                  (JURY VENIRE EXCUSED FOR RECESS.)

19            THE COURT:  ALL RIGHT.  THE RECORD WILL REFLECT THAT

20    ALL BUT ONE OF THE JURORS HAS LEFT THE COURTROOM.

21        MS. SPRAGUE, I JUST WANTED TO --

22        COUNSEL CAN BE SEATED.

23        I JUST WANTED TO CHECK IN WITH YOU.  YOU'VE GIVEN VERY

24    SHORT ANSWERS.

25            PROSPECTIVE JUROR:  UM-HMM.
```

```
 1            THE COURT:  AND YOU SEEM VERY RESERVED, AND THAT'S

 2    FINE IF THAT'S YOUR PERSONALITY.  BUT I WANT TO MAKE SURE THAT

 3    THERE'S NOT SOMETHING ELSE GOING ON IN YOUR LIFE THAT IS

 4    DISTRACTING, AND THAT YOU CAN SERVE AND GIVE THIS YOUR FULL

 5    ATTENTION.  AND IF THERE IS SOMETHING ELSE GOING ON THAT I

 6    NEED TO KNOW ABOUT, I CAN ALSO TALK TO YOU IN CHAMBERS WITH

 7    THE PARTIES SO THAT WE'RE NOT IN THIS BIG COURTROOM.  BUT I

 8    WANT TO MAKE SURE YOU'RE OKAY AND THAT THIS IS JUST KIND OF

 9    YOUR -- MOST -- AS YOU CAN SEE, MANY PEOPLE WILL OPEN UP AND

10    JUST TALK.  AND YOUR RESPONSES ARE VERY, VERY SHORT AND NOT

11    MUCH MORE BEYOND "YES, MA'AM," "NO, MA'AM," KIND OF THING.

12            PROSPECTIVE JUROR:  I'M AT THE FAR END OF THE

13    SPECTRUM IN TERMS OF INTROVERSION SO PEOPLE LOOKING AT ME

14    FREAKS ME OUT.  SO PROBABLY THAT'S WHY MY ANSWERS ARE SHORT.

15            THE COURT:  OKAY.  BUT SO OTHER THAN -- OTHER THAN

16    THAT, EVERYTHING'S OKAY, YOU CAN SERVE AND YOU FEEL LIKE YOU

17    CAN SERVE?

18            PROSPECTIVE JUROR:  YES.

19            THE COURT:  AND NOTHING GOING ON THAT I SHOULD BE

20    CONCERNED ABOUT IN TERMS OF YOUR ABILITIES TO SERVE?

21            PROSPECTIVE JUROR:  NO.

22            THE COURT:  OKAY.  THAT'S ALL I WANTED TO CHECK IN

23    JUST IN CASE SOMETHING WAS THERE.  THANK YOU.

24         (PROSPECTIVE JUROR SPRAGUE EXCUSED FOR RECESS.)

25            THE COURT:  OKAY.  THE RECORD WILL REFLECT THE LAST
```

1    JUROR HAS LEFT THE COURTROOM.

2        CHALLENGES FOR CAUSE.  LET'S START WITH PLAINTIFFS.

3    MR. COUGHLIN.

4        **MR. COUGHLIN:**  YOUR HONOR, I JUST DIDN'T GET ENOUGH

5    INFORMATION ON JOHN OVALLE.  HE SAID HE WAS DOING A LOT OF

6    WORK OUT IN CUPERTINO FOR APPLE, AND YET HE COULDN'T TALK

7    ABOUT IT SO IT'S -- IT'S LIKE I JUST DIDN'T -- AT THE END --

8    AND THAT CAME UP AFTER SO I DIDN'T GET A CHANCE TO QUESTION

9    HIM.  BUT IT SOUNDS LIKE THEY'RE DOING -- HE'S A SMALL COMPANY

10   WITH SIX EMPLOYEES, AND THEY'RE DOING A HUGE JOB ON A NEW

11   CAMPUS DOWN IN CUPERTINO.  SO I'M -- I'M CONCERNED THAT --

12   THAT HE MIGHT -- SHOULD BE CHALLENGED FOR CAUSE.

13       **MR. ISAACSON:**  WE'RE INTENDING TO WIN THIS VERDICT.

14   WE DON'T WANT TO HAVE SOMEONE WHO'S WORKING FOR APPLE ON THE

15   JURY.  SO WE WOULD NOT HAVE ANY OBJECTION TO THAT.

16       **THE COURT:**  ALL RIGHT.  GRANTED.

17       THAT IS JUROR NO. 8, JOHN PAUL OVALLE.

18       ALL RIGHT.

19       **MR. COUGHLIN:**  NOW I KNOW THAT MR. KEN KECSKES, YOU

20   KNOW, I THINK HE WAS TRYING TO BE CANDID.  I'M NOT QUESTIONING

21   THAT.  BUT ALL HIS DEFENSE -- ALL HIS FIRM DOES IS ON THE

22   OPPOSITE SIDE OF THESE CASES.  AND I JUST DON'T -- I THINK

23   THAT PUTS HIM IN A -- LIKE BOIES SCHILLER IS ON BOTH SIDES OF

24   THESE CASES.  SO THAT MIGHT BE DIFFERENT IF -- IF THERE WAS A

25   LAWYER FROM THERE, BUT THAT'S ALL THEIR FIRM DOES IS BE ON THE

| | |
|---|---|
| 1 | OTHER SIDE OF THE CASES, AND I DON'T THINK THAT HE ACTUALLY |
| 2 | CAN BE FAIR AND IMPARTIAL. |
| 3 |      **THE COURT:**  RESPONSE. |
| 4 |      **MR. ISAACSON:**  WE WOULD DISAGREE WITH THAT, YOUR |
| 5 | HONOR.  HE'S A REAL ESTATE LAWYER.  AND THE FACT THAT HIS -- |
| 6 | THAT HE'S GOT PARTNERS WHO DEFEND AGAINST OTHER CLASS-ACTIONS |
| 7 | DOESN'T MAKE HIM BIASED.  AND HE SAID HE WOULD BE ABLE TO |
| 8 | EVALUATE THE CASE FAIRLY. |
| 9 |      **THE COURT:**  THE OBJECTION IS OVERRULED. |
| 10 | NEXT. |
| 11 |      **MR. COUGHLIN:**  THAT'S ALL I HAD FOR CAUSE. |
| 12 |      **THE COURT:**  OKAY.  DEFENSE? |
| 13 |      **MR. ISAACSON:**  MR. KENNEDY, YOUR HONOR.  THIS IS THE |
| 14 | GENTLEMAN WHO EXPRESSED STRONG FEELINGS AGAINST CORPORATIONS |
| 15 | THAT WE FEEL WOULD BE BROUGHT INTO THE JURY ROOM.  THE ISSUES |
| 16 | OF -- THAT THEY'RE ONLY MOTIVATED BY PROFIT AND NOT THE |
| 17 | INTERESTS OF THE PEOPLE WHO WORK THERE OR THE INTERESTS OF |
| 18 | OTHER PEOPLE.  AND HE -- HE USED VERY STRONG TERMS IN SAYING |
| 19 | THAT.  AND THIS IS ALSO THE GENTLEMAN WHO I BELIEVE CALLED -- |
| 20 |      **THE COURT:**  I KNOW WHO HE IS.  BUT ANYTHING ELSE YOU |
| 21 | WANTED TO PUT ON THE RECORD WITH RESPECT TO YOUR MOTION? |
| 22 |      **MR. ISAACSON:**  JUST THE TERMS HE USED WITH -- ABOUT |
| 23 | MR. JOBS WHICH WERE STRONGER THAN -- I THINK THAT -- THAT -- |
| 24 | THAT SHOWED DEFINITE BIAS AND NOT JUST SOMEONE WHO WOULD HAVE |
| 25 | AN OPINION THAT THEY COULD SET ASIDE. |

1          **MR. COUGHLIN:**  WELL, I THINK HIS OPINIONS ABOUT

2    MR. JOBS RAN THE GAMUT FROM GENIUS AND INNOVATOR, IF I CAN

3    REMEMBER THE WORDS CORRECTLY, YOU KNOW, TO -- TO SOME STRONGER

4    WORDS.

5       I ALSO THINK, FRANKLY, THE SUPREME COURT CASE THAT HE'S

6    TALKING ABOUT WENT TO THE SUPREME COURT BECAUSE SOME PEOPLE

7    DON'T THINK CORPORATIONS SHOULD BE PEOPLE.  HE SAID HE COULD

8    BE FAIR AND HE SAID -- SO WE DISAGREE WITH THAT.

9          **THE COURT:**  THE OBJECTION IS OVERRULED.

10      NEXT?

11         **MR. ISAACSON:**  OKAY.

12      FOR CAUSE, THAT'S IT.  I HAVE ONE QUESTION, THOUGH.

13         **THE COURT:**  OKAY.

14         **MR. ISAACSON:**  THE SUBSTITUTE JURORS THAT CAME IN, DO

15   THEY, IN TERMS OF THE ORDER THAT WE WERE GIVEN, DO THEY GO

16   REPLACE THE PEOPLE THEY WERE AT OR DO THEY GO AT THE END?

17         **THE COURT:**  OKAY.  IT DOESN'T MATTER UNDER MY SYSTEM.

18   I'LL EXPLAIN IN A SECOND.

19         **MR. COUGHLIN:**  AS I UNDERSTAND YOUR SYSTEM, THERE'S

20   ONLY GOING TO BE ENOUGH JURORS LEFT.

21         **MR. ISAACSON:**  OH, I'M SORRY.  THERE -- I NEGLECTED

22   ONE OTHER ISSUE.  THE JUROR WITH THE LANGUAGE ISSUE.

23         **THE COURT:**  YEAH, I'M -- OKAY, GO AHEAD.  I'M NOT

24   GOING TO REMOVE HER.  SHE  -- THIS AREA -- I FEEL VERY

25   STRONGLY THAT PEOPLE ARE ENTITLED TO SERVE.  SHE WORKS IN

1   ENGLISH.  SHE'S BEEN EDUCATED IN ENGLISH.  SHE IS AFRAID OF

2   LEGAL QUESTIONS, AND THAT'S ALL RIGHT.  AND IT IS OUR JOB TO

3   EXPLAIN THEM TO HER.  YOU CAN HAVE STRONG JURORS AND YOU CAN

4   HAVE WEAKER JURORS, BUT THEY STILL ARE ENTITLED TO SERVE.

5       NOW IF YOU DON'T WANT HER ON THERE, THAT'S YOUR CHOICE,

6   BUT I'M NOT GOING TO STRIKE HER.

7           **MR. ISAACSON:**  THE ONE THING SHE SAID THAT RAISED

8   THIS CONCERN WAS NOT WHAT -- WHAT YOUR HONOR IS ADDRESSING,

9   THE FACT THAT SHE WOULD HAVE TO HAVE LEGAL ISSUES EXPLAINED TO

10  HER.  IT'S THAT SHE HAD -- WHILE SHE FOLLOWED WHAT THE COURT

11  SAID AND THE LAWYERS SAID, SHE HAD A HARD TIME FOLLOWING THE

12  REST OF THE COMMUNICATIONS THAT WERE GOING ON IN THE COURT,

13  THAT SHE WAS ACTUALLY HAVING DIFFICULTY UNDERSTANDING THOSE

14  COMMUNICATIONS, WHICH -- WHICH INDICATED THAT THIS MAY BE A

15  STRONGER LANGUAGE ISSUE THAN -- AND WITH COMPLETE SYMPATHY TO

16  WHAT THE COURT'S PREFERENCE IS.  BUT WHEN SHE SAID THAT, IT

17  INDICATED THAT SHE LITERALLY MAY NOT FOLLOW A GREAT DEAL OF

18  WHAT'S GOING ON IN THE COURTROOM.

19          **MR. COUGHLIN:**  AND I DISAGREE, YOUR HONOR.  SHE'S A

20  CITIZEN.  SHE'S GOT A RIGHT TO BE HERE.  SHE SPEAKS THE

21  LANGUAGE.  SHE CERTAINLY UNDERSTOOD EVERYTHING THAT MS. DUNN

22  ASKED.

23          **THE COURT:**  AND I THINK ISSUES ABOUT CREDIBILITY ARE

24  IMPORTANT, AND IT'S ONE THING TO TRY TO FOLLOW A CONVERSATION

25  THAT YOU'RE NOT A PART OF THAT'S ON THE OTHER SIDE OF THE

1   COURTROOM.  IT'S ANOTHER THING TO BE ABLE TO FOCUS AND SEE A

2   WITNESS AND SEE HOW THEY TESTIFY AND WHETHER OR NOT THEY

3   BELIEVE THEM.

4        THE OBJECTION IS OVERRULED.

5        OKAY.  SO WE HAVE IN THE POOL, WE STARTED BEFORE THE

6   FOR-CAUSE CHALLENGES WITH 18.  ALL 18 ARE AVAILABLE TO BE

7   STRUCK USING YOUR PEREMPTORY CHALLENGES.  NOW I'VE PUT THEM IN

8   THE SEAT NUMBERS FOR CONVENIENCE.  BUT AS YOU KNOW, THEY

9   WERE -- THEY WERE BROUGHT UP HERE IN ALPHABETICAL ORDER AND

10  THEY'RE NOT COMING BACK TO THE SEAT.

11       SO THOSE WHO GET PLACED WILL GET PLACED IN THE ORDER OF

12  THE RANDOM LIST WHICH YOU WERE PROVIDED THE FIRST COUPLE

13  PAGES, AND THEN YOU KNOW WHAT FOLLOWS BECAUSE I CALLED THEM

14  UP.  AND SO I'LL GO THROUGH WHO I HAVE.  LET'S DO IT THAT WAY.

15       AND LET'S USE THE LIST -- THE RANDOM LIST THAT YOU WERE

16  GIVEN BECAUSE THIS IS THE WAY IN WHICH THEY WILL GET CALLED UP

17  IF THEY'RE SEATED, DEPENDING WHO'S LEFT.

18       SEAN MCCULLY, WHO'S IN SEAT NO. 7 -- OR WHAT'S GOING TO BE

19  EASIER FOR YOU?  DO YOU WANT ME TO DO IT BY NUMBER THE WAY

20  THEY WERE SEATED?  OR DO YOU WANT ME TO DO IT BY RANDOM IN THE

21  WAY THEY WILL GET CALLED UP?

22          **MR. COUGHLIN:**  IT DOESN'T MATTER TO ME.

23          **MR. ISAACSON:**  THE RANDOM LIST IS FINE.

24          **THE COURT:**  OKAY.  HOW ABOUT FOR THE CLERK?  IS IT

25  EASIER --

```
 1              THE CLERK:  GO AHEAD, RANDOM.

 2              THE COURT:  ALL RIGHT.  SO I HAVE SEAN MCCULLY,

 3    CARMEN ZEPEDA, KATHY SPRAGUE, JEANIE LOCKLEAR, JEROME WIEGERT,

 4    MARY ANN WRIGHT, DAVID KENNEDY, JAMES VICTORIA, RICHARD

 5    BARRIOS, JERRY KAAKE, STEVEN PITTS, SHANTI RATTIA, KENNETH

 6    KECSKES OR HOWEVER YOU SAY THAT, KENNALEE WELLIVER -- HOW

 7    ABOUT WELLIVER, MARIA BARRAZA, HOLLY SMITH, AND BEVERLY

 8    JOHNSON.

 9         IS THAT WHAT YOU HAVE?

10              MR. ISAACSON:  YES, YOUR HONOR.

11              THE COURT:  YES, MR. COUGHLIN?  EVERYBODY'S ON THE

12    SAME PAGE?

13              MR. COUGHLIN:  I THINK SO, YOUR HONOR.  I HAD

14    MCCULLY, ZEPEDA, SPRAGUE, LOCKLEAR, WIEGERT, WRIGHT, KENNEDY,

15    VICTORIA, BARRIOS, KAAKE, PITTS, OVALLE --

16              THE COURT:  NO.

17              MR. COUGHLIN:  GONE?

18              MR. ISAACSON:  NO, HE'S GONE.

19              THE COURT:  PAUL OVALLE IS GONE.

20              MR. COUGHLIN:  OVALLE IS GONE.

21         RATTIA, KECSKES --

22              THE COURT:  KECSKES.

23              MR. COUGHLIN:  KECSKES, WELLIVER, BARRAZA, MARIA

24    BARRAZA, HOLLY SMITH, AND BEVERLY JOHNSON.

25              THE COURT:  YES.  OKAY.
```

 1          SO IF YOU WANT -- DO YOU WANT TO SIT AT YOUR TABLES FOR

 2     THIS?  OR ARE YOU GOING TO DO IT ON YOUR OWN?  WE'LL START

 3     WITH PLAINTIFF.  FIRST PEREMPTORY.

 4              **MR. ISAACSON:**  ONE QUESTION, YOUR HONOR.

 5          AND ACTUALLY I WOULD LIKE TO CONSULT WITH MY TABLE BEFORE

 6     I DO THIS.  BUT THERE'S 17 JURORS.  THERE'S FOUR STRIKES EACH.

 7     IF WE USE ALL OF THEM, THEN WE'RE AT NINE.  IF WE USE LESS

 8     THAN THEM -- IF WE USE LESS THAN THEM.  SO ARE WE TAKING --

 9              **THE COURT:**  THE TOP EIGHT WILL BE SEATED.

10              **MR. ISAACSON:**  ON THE RANDOM LIST?  THAT'S WHAT I

11     WANT TO KNOW.

12              **THE COURT:**  ON THE RANDOM LIST.

13              **MR. ISAACSON:**  ALL RIGHT.

14              **MR. COUGHLIN:**  GOT IT.

15              **MR. ISAACSON:**  MAY I HAVE A MOMENT TO TALK TO MY

16     CLIENTS?

17              **THE COURT:**  I'LL GIVE YOU GUYS JUST A COUPLE OF

18     MINUTES.

19              **MR. ISAACSON:**  THANK YOU.

20                  (PAUSE IN THE PROCEEDINGS.)

21              **THE COURT:**  OKAY, LET'S GO.

22          ALL RIGHT.  WE'RE BACK ON THE RECORD.  IT'S LIKE THE NFL

23     DRAFT, IT SEEMS LIKE SOMETIMES.  CLOCK STARTING.

24              **THE CLERK:**  OKAY.  SO YOU'RE GOING TO USE THE MICS AT

25     THE TABLES.

```
 1            THE COURT:  YES.  YOU CAN BE AT YOUR TABLES IF YOU

 2    WANT.  JUST REMEMBER WE CAN HEAR YOU IF YOU DON'T TURN OFF

 3    THAT MIC IN BETWEEN YOUR ROUND.

 4                   (OFF-THE-RECORD DISCUSSION.)

 5            THE COURT:  SO JUST KNOW THOSE MICS ARE LIVE, IS THE

 6    POINT.

 7            MS. DUNN:  OKAY.

 8            THE COURT:  SO DO YOU WANT TO COME -- DO YOU WANT

 9    THOSE -- DO YOU WANT TO COME UP FRONT AND BE ABLE TO GO BACK

10    TO YOUR TABLE?

11            MR. COUGHLIN:  THAT'S THE WAY WE'D LIKE TO DO IT,

12    YOUR HONOR.

13            THE COURT:  ALL RIGHT.  LET'S TURN OFF THE MICS AT

14    THE TABLE, THEN.

15            THE CLERK:  ALL RIGHT, THEY'RE OFF.

16            THE COURT:  OKAY.  SO STARTING WITH PLAINTIFF, FIRST

17    CHALLENGE.

18            MR. COUGHLIN:  OH, MR. -- THE LAWYER, MR. KECSKES.

19            THE COURT:  OKAY.  THAT'S JUROR NO. 18 ON THE RANDOM,

20    MR. KECSKES.  HE WAS NO. 4 IN THE BOX.

21       APPLE?

22            MR. ISAACSON:  MR. KENNEDY.  NO. --

23            THE COURT:  OKAY.  MR. --

24            MR. ISAACSON:  -- 5 IN THE BOX.

25            THE COURT:  -- KENNEDY, WHO IS NO. 9 IN THE RANDOM, 5
```

```
 1    IN THE BOX.

 2         PLAINTIFFS?

 3              MR. COUGHLIN:  MR. WIEGERT.

 4              THE COURT:  OKAY.  MR. WIEGERT, BY THE PLAINTIFFS,

 5    NO. 6 ON THE RANDOM, 15 IN THE BOX.

 6         DEFENSE?

 7              MR. ISAACSON:  MR. VICTORIA.

 8              THE COURT:  OKAY.  MR. VICTORIA, NO. 10 ON THE

 9    RANDOM, 13 ON THE BOX.

10         PLAINTIFFS?

11              MR. COUGHLIN:  MS. LOCKLEAR.

12              THE COURT:  MS. LOCKLEAR IS NO. 5 ON THE RANDOM,

13    NO. 6 IN THE BOX.

14         DEFENSE?

15              MR. ISAACSON:  MS. SMITH.  HOLLY SMITH.

16              THE COURT:  OKAY.  MS. SMITH, 21 ON THE RANDOM, BUT

17    14 IN THE BOX.

18         AND I'M GOING TO PAUSE FOR A MOMENT TO TELL YOU WHO I HAVE

19    SO THERE ARE NO SURPRISES.

20         IF I SAT THE JURY RIGHT NOW, YOU EACH HAVE ONE PEREMPTORY

21    LEFT, IT WOULD BE MCCULLY, ZEPEDA, SPRAGUE, WRIGHT, BARRIOS,

22    KAAKE, PITTS, AND RATTIA.

23         EVERYBODY WITH ME?  BEFORE YOUR STRIKES, THAT'S MY JURY.

24                   (PAUSE IN THE PROCEEDINGS.)

25              THE COURT:  AND I SEAT THEM AFTER I GET TWO PASSES IN
```

1    A ROW.

2        ALL RIGHT.  MR. COUGHLIN.

3            **MR. COUGHLIN:**  RATTIA.

4            **THE COURT:**  OKAY.  SO RATTIA IS STRUCK.  THAT'S THE

5    LAST FOR THE PLAINTIFF, WHICH MEANS THAT PRIOR LIST I GAVE YOU

6    PLUS WELLIVER.

7        DEFENSE?

8            **MR. ISAACSON:**  MR. PITTS.

9            **THE COURT:**  OKAY.  MR. PITTS IS OUT PER DEFENSE

10   STRIKE.

11       WHICH MEANS I HAVE BARRAZA AND WELLIVER.

12       OKAY.  SO THIS IS THE JURY:  MCCULLY, ZEPEDA, SPRAGUE,

13   WRIGHT, BARRIOS, KAAKE, WELLIVER, AND BARRAZA.

14       OKAY?  THE JURY CAN BE CALLED BACK IN.

15                    (PAUSE IN THE PROCEEDINGS.)

16       (THE FOLLOWING PROCEEDINGS WERE HEARD IN THE PRESENCE OF

17   THE JURY VENIRE:)

18           **THE COURT:**  YOU MAY BE SEATED.

19       OKAY, LADIES AND GENTLEMEN, THE PROCESS THAT WE WENT

20   THROUGH WHEN YOU WERE NOT IN THE COURTROOM ALLOWS THE PARTIES

21   TO EXERCISE WHAT WE CALL PEREMPTORY CHALLENGES.  AND THAT IS

22   THEY'VE HEARD EVERYTHING YOU'VE SAID AND THEY GET A VERY FEW

23   NUMBER OF CHALLENGES TO IDENTIFY PEOPLE WHO THEY ASK THAT I

24   EXCUSE FROM JURY SERVICE.

25       THE REASON THAT WE LET THEM DO THIS -- AND I LIKE TO

1    EXPLAIN IT TO PEOPLE BECAUSE THEY DON'T ALWAYS KNOW -- THAT IS

2    WE LIKE THE PARTIES TO BE ABLE TO HAVE SOME AMOUNT OF SAY IN

3    THE PERSONS TO WHOM THEY CHOOSE TO ENTRUST THEIR CASE.  AND WE

4    DO THAT SO THAT THEY ULTIMATELY FEEL MORE SATISFIED WITH THE

5    RESULT.  SO I JUST WANT YOU TO KNOW THAT THAT'S AN IMPORTANT

6    PART OF THIS JURY PROCESS.  AND I THANK EVERYBODY FOR THEIR

7    HONESTY AND FOR SHARING A FEW THINGS WITH US EARLIER TODAY.

8        SO IF THE FOLLOWING JURORS WILL PLEASE COME BACK UP, AND

9    WE'LL START THE PLACEMENT IN THE FIRST ROW:  SEAN MCCULLY.

10       MR. MCCULLY, YOU TAKE THE VERY FIRST SEAT UP HERE IN THE

11   CORNER.

12       CARMEN ZEPEDA.

13       KATHY SPRAGUE.

14       HAVE A SEAT RIGHT THERE, RIGHT.

15       MARY ANN WRIGHT.

16       RICHARD BARRIOS.  AND MR. BARRIOS, I'M GOING TO HAVE YOU

17   TAKE THE BACK ROW, THE VERY FIRST SEAT.

18       JERRY KAAKE.

19       KENNALEE WELLIVER.

20       AND MARIA BARRAZA.

21       SO IF THE EIGHT OF YOU WILL STAND TO BE SWORN.

22                      (JURY SWORN.)

23           **THE CLERK:**  ALL RIGHT.  YOU CAN BE SEATED.

24           **THE COURT:**  ALL RIGHT.  LADIES AND GENTLEMEN WHO ARE

25   NOT UP HERE, I THANK YOU AGAIN FOR YOUR SERVICE, FOR HONORING

1   THE CONSTITUTION.  HAVE A TERRIFIC DAY.  YOU'RE ALL EXCUSED

2   AND DISMISSED.

3        (REMAINDER OF JURY VENIRE EXCUSED FROM THE COURTROOM.)

4             **THE COURT:**  OKAY.  THE REST OF YOU MAY BE SEATED.

5        WE ARE PRETTY MUCH DONE FOR THE DAY.  I'M GOING TO GIVE

6   YOU ANOTHER INSTRUCTION.  WHEN WE BREAK HERE, MY COURTROOM

7   DEPUTY WILL GO INTO THE BACK ROOM WITH YOU, AND WILL TAKE DOWN

8   YOUR CELL PHONE NUMBERS.  WE'LL GIVE YOU A NUMBER TO CALL,

9   BECAUSE AS YOU KNOW, WHILE WE'RE IN TRIAL, YOUR CELL PHONES

10  NEED TO BE IN THE OFF POSITION.  IT DOESN'T LOOK LIKE ANY OF

11  YOU HAVE YOUNG CHILDREN, BUT WE WILL GIVE YOU A PHONE NUMBER

12  THAT WILL ALWAYS GET PICKED UP IN CASE THERE'S AN EMERGENCY.

13       MY COURTROOM DEPUTY AND I, WE COMMUNICATE -- MS. BARRAZA

14  HAS A 12-YEAR-OLD SO -- MY COURTROOM DEPUTY AND I COMMUNICATE

15  ELECTRONICALLY.  SO IF WE RECEIVE A PHONE CALL TO THE

16  COURTHOUSE THAT THERE'S AN EMERGENCY FOR ANY OF YOU, I WILL

17  STOP THE TRIAL IMMEDIATELY SO THAT YOU CAN GO AND TAKE CARE OF

18  YOUR PERSONAL EMERGENCY.  SO I DON'T WANT YOU TO EVER HAVE TO

19  WORRY ABOUT THAT.

20       NOW, AS YOU CAN TELL, WE'RE NOT GOING TO BE IN COURT NEXT

21  WEEK.  THERE'S A LITTLE BIT OF A BREAK HERE.  AND I REALLY DO

22  HOPE THAT GIVES YOU AN OPPORTUNITY TO GET ARRANGEMENTS MADE TO

23  THE EXTENT THAT YOU NEED TO.  AND THEN WE WILL START TRIAL

24  WITH INSTRUCTIONS AND OPENING STATEMENTS AND WITNESSES ON THE

25  TUESDAY AFTER THANKSGIVING.

 1   WE START PROMPTLY AT 8:30 SO YOU NEED TO BE HERE NO LATER

 2   THAN 8:15.  YOU ARE NOW THE MAIN EVENT.  EVERYTHING THAT

 3   HAPPENS IN THIS COURTROOM IS BEING PRESENTED FOR YOU SO THAT

 4   YOU CAN MAKE THE DECISIONS WITH REGARD TO THIS CASE.

 5   I CAN'T EMPHASIZE STRONGLY ENOUGH MY ADMONITION AT THE

 6   BREAK THAT IT REALLY IS INCREDIBLY IMPORTANT THAT YOU NOT

 7   COMMUNICATE WITH ANYONE ABOUT YOUR ROLE ON THIS CASE, AND THAT

 8   YOU NOT -- YOU'VE HEARD NOW SOME INFORMATION, NOT -- YOU

 9   HAVEN'T HEARD ANY EVIDENCE.  NO ONE'S GOTTEN ON THE STAND AND

10   TAKEN AN OATH AND SWORN TO YOU TO TELL THE TRUTH.  BUT YOU NOW

11   KNOW YOU'VE HEARD THINGS LIKE 7.0 AND 7.4 AND YOU KNOW IT

12   INVOLVES THE ITUNES.  I WILL GIVE YOU A FORMAL INSTRUCTION,

13   BUT YOU CAN'T DO ANY RESEARCH.  YOU CAN'T GO AND TRY TO FIGURE

14   OUT ANYTHING ABOUT THIS CASE.

15   FRANKLY, MY PREFERENCE IS THAT BETWEEN NOW AND THE TUESDAY

16   AFTER THANKSGIVING, YOU DON'T THINK ABOUT IT AT ALL, OTHER

17   THAN TO MAKE SOME PERSONAL ARRANGEMENTS.  WHO COOKS

18   THANKSGIVING?  RAISE YOUR HAND.  ANY OF YOU COOK THANKSGIVING?

19   THAT'S WHAT YOU SHOULD BE FOCUSING ON.  WHAT'S THAT STUFFING

20   GOING TO TASTE LIKE?  WHO'S MAKING THE PIES?  WHO'S PLAYING

21   FOOTBALL IN THE BACKYARD?  I CAN GUARANTEE YOU THESE LAWYERS

22   ARE GOING TO GET A VERY SHORT THANKSGIVING.  SO LET THEM WORRY

23   ABOUT IT.  YOU DON'T.  DON'T DO ANY RESEARCH.  DON'T DO,

24   FRANKLY, ANY INVESTIGATION ABOUT THIS CASE.

25   NOW, ANYTIME APPLE -- OR FREQUENTLY WHEN APPLE IS INVOLVED

```
 1    IN A CASE, THERE ARE ALWAYS NEWS ARTICLES.  THERE'S PRESS.
 2    IT -- IT HAPPENS.  THERE ARE PROBABLY REPORTERS IN THE ROOM
 3    RIGHT NOW.  YOU ARE INSTRUCTED TO AVOID ANY AND ALL NEWS MEDIA
 4    REGARDING THIS LAWSUIT.  SO WHAT MIGHT HAPPEN:  YOU'RE DRIVING
 5    TO THE COURTHOUSE AND SOME RADIO STATION MENTIONS THE CASE.
 6    CHANGE THE CHANNEL.  YOU CAN LET ME KNOW THAT IT -- YOU
 7    JUST -- IT HAPPENED.  IT'S NOT AN ACCIDENT -- I MEAN, IT WAS
 8    AN ACCIDENT, THAT'S NOT A PROBLEM.  BUT IF YOU'RE READING THE
 9    NEWSPAPER AND THERE'S AN ARTICLE, JUST AVOID IT.
10        YOU CAN RESEARCH LATER, WHEN IT'S ALL SAID AND DONE --
11    YOU'LL PROBABLY BE SICK OF IT -- BUT WHEN IT'S ALL SAID AND
12    DONE, IF YOU WANT TO GO BACK AND SEE EVERYTHING THAT WAS SAID
13    IN THE NEWSPAPERS OR ONLINE MEDIA, DO IT AFTER IT'S ALL DONE.
14    BUT THE REALITY IS THAT THOSE REPORTERS AND WHAT THEY WRITE IS
15    THAT PERSON'S OPINION, THAT PERSON'S REFLECTION ABOUT WHAT
16    THEY SAY.  WE DON'T CARE ABOUT THAT.  WE CARE ABOUT WHAT YOU
17    THINK.  AND IT'S YOUR IMPRESSIONS THAT ARE IMPORTANT AND IT'S
18    YOUR VIEW OF THE EVIDENCE THAT'S IMPORTANT.  AND I CAN
19    GUARANTEE YOU THAT NO ONE FROM THE PRESS IS GOING TO BE AS
20    CLOSE TO THESE WITNESSES AS YOU ARE.
21        SO WHAT THEY ARE SAYING ABOUT WHAT HAPPENS IN THIS
22    COURTROOM IS NOT RELEVANT TO YOU.  IT MAY BE INTERESTING.  IT
23    MAY BE, YOU KNOW, ENTICING IN A SENSE, BUT IT'S NOT REALLY --
24    IT'S NOT AT ALL RELEVANT.  SOMETIMES I HAVE TO TELL YOU, I
25    READ ARTICLES WHEN I'M IN TRIAL AND THINK "REALLY?  THAT'S
```

1    WHAT YOU GOT OUT OF YESTERDAY?  DID YOU LEAVE AFTER THE FIRST

2    FIVE MINUTES?"

3        WE SIT HERE THE WHOLE TIME.  WE LISTEN TO EVERYTHING.  WE

4    CAN SEE THEM.  YOU MAY SIT THERE AND SEE THEM NERVOUS,

5    SHAKING, SOMETHING THAT NO ONE IN THE BACK OF THE COURTROOM

6    COULD SEE.  THAT MIGHT -- THAT MIGHT SUGGEST TO YOU THAT -- OR

7    THAT MAY WEIGH ON YOUR VIEW OF THAT PERSON'S CREDIBILITY.  SO

8    NO ONE IS GOING TO BE AS INVESTED FROM A RECEIVING POINT OF

9    VIEW THAN YOU GUYS.  AND HOPEFULLY THE COURT AS WELL.  BUT

10   EVERYTHING IS -- BECAUSE I HAVE MY OWN DECISIONS TO MAKE IN

11   THIS CASE.

12       BUT IT IS IMPORTANT THAT YOU KEEP THAT EMPTY BOX IN VIEW

13   AND UNDERSTAND THE ONLY THING YOU SHOULD BE THINKING ABOUT IS

14   WHAT WE PUT IN THAT BOX DURING THIS COURT TRIAL, COURTROOM

15   TRIAL.  AND IT'S FRANKLY, I THINK, A LOT EASIER FOR YOU IF YOU

16   DON'T LET YOUR MIND SOMEHOW GET IMPACTED FROM THINGS THAT ARE

17   OUTSIDE THE COURTROOM.

18       SO IF YOU JUST AVOID IT IN ITS ENTIRETY, THAT'S ENOUGH.

19   NOW, YOU'RE ALL -- YOU ALL HAVE SIGNIFICANT OTHERS, YOU'RE ALL

20   LIVING WITH FOLKS.  SO WHAT ARE -- WHAT ARE YOU SUPPOSED TO

21   SAY?  WELL, YOU CAN SAY THAT YOU'RE IN A CIVIL CASE, IN A --

22   IN A CIVIL CASE IN FEDERAL COURT IN FRONT OF A JUDGE.  AND

23   THAT'S ABOUT IT.  TELL THEM IT'S A CIVIL CASE.  YOU'LL TELL

24   THEM ALL ABOUT IT WHEN IT'S OVER.  JUST TELL THEM IT'S A CIVIL

25   CASE, NOT A CRIMINAL CASE, IT'S A CIVIL CASE.

1        BECAUSE WE FRANKLY DON'T WANT YOUR SPOUSES AND SIGNIFICANT

2   OTHERS INFLUENCING YOU EITHER ABOUT ANY OF THESE ISSUES.  THAT

3   WILL BE TOUGH, BUT I TRUST YOU CAN USE YOUR BEST EFFORTS TO DO

4   IT.

5        SO ANY QUESTIONS ABOUT THAT?

6        ANY QUESTIONS GENERALLY?

7        YES, SIR.

8            **JUROR NO. 1:**  IF I COME ACROSS AN ARTICLE, I NEED TO

9   REPORT TO YOU EVEN IF IT'S AN ACCIDENT?

10            **THE COURT:**  EVEN IF IT'S AN ACCIDENT?

11            **JUROR NO. 1:**  YES.

12            **THE COURT:**  YOU KNOW, I WOULD JUST -- JUST DON'T READ

13   IT.

14        ANY OTHER QUESTIONS?  ANYBODY HAVE QUESTIONS ABOUT

15   LOGISTICS?

16        GO AHEAD.

17            **JUROR NO. 1:**  DO WE REPORT TO THE JURY ROOM EVERY

18   MORNING?

19            **THE COURT:**  SO THOSE KINDS OF THINGS, THE COURTROOM

20   DEPUTY WILL EXPLAIN TO YOU IN THE -- IN THE BACK ROOM.

21            **THE COURT:**  OKAY.  OTHER QUESTIONS YOU MAY WANT TO

22   ASK RIGHT NOW?

23        NO.  ALL RIGHT, THEN.

24                (PAUSE IN THE PROCEEDINGS.)

25            **THE COURT:**  CAN I ASK WHICH OF YOU, JUST BY A SHOW OF

1    HANDS, USES SOCIAL MEDIA?

2                        (HANDS RAISED.)

3              **THE COURT:**   OKAY.  SO JUST A REMINDER, THAT'S ANOTHER

4    NO-NO.  YOU JUST CANNOT USE SOCIAL MEDIA.  YOU CANNOT SAY

5    YOU'RE FRUSTRATED.  YOU CANNOT SAY THE JUDGE WAS NOT NICE TO

6    US TODAY, THE JUDGE RAN LATE.  YOU CAN SAY ALL THAT LATER.  I

7    UNDERSTAND.  IT'S THE NATURE OF MY JOB.  BUT NOTHING ABOUT THE

8    CASE, OKAY?

9        SO YOU ARE INSTRUCTED YOU MAY NOT DISCUSS THE CASE WITH

10   ANYONE INCLUDING MEMBERS OF YOUR FAMILY, PEOPLE INVOLVED IN

11   THE TRIAL, OR ANYONE ELSE.  THIS INCLUDES THE DISCUSSING OF

12   THE CASE IN INTERNET CHAT ROOMS OR THROUGH INTERNET BLOGS,

13   INTERNET BULLETIN BOARDS, OR EMAILS.

14       YOU ARE NOT ALLOWED TO PERMIT OTHERS TO DISCUSS THE CASE

15   WITH YOU.  IF ANYONE APPROACHES YOU AND TRIES TO TALK TO YOU

16   ABOUT THE CASE, PLEASE LET ME KNOW ABOUT IT IMMEDIATELY.  DO

17   NOT READ, LISTEN TO ANY NEWS STORIES, ARTICLES, RADIO,

18   TELEVISION, OR ANY ONLINE REPORTS ABOUT THE CASE OR ABOUT

19   ANYONE WHO HAS ANYTHING TO DO WITH IT.

20       DO NOT DO ANY RESEARCH SUCH AS CONSULTING DICTIONARIES,

21   SEARCHING THE INTERNET, USING ANY REFERENCE MATERIALS.  DO NOT

22   MAKE ANY INVESTIGATION ABOUT THE CASE ON YOUR OWN.

23       IF YOU NEED TO COMMUNICATE WITH ME, SIMPLY SEND ME A NOTE

24   THAT'S SIGNED THROUGH THE COURTROOM DEPUTY.

25       DO NOT MAKE UP YOUR MIND ABOUT THE VERDICT UNTIL YOU HAVE

1    GONE INTO THE JURY ROOM TO DECIDE THE CASE AND YOU AND YOUR

2    FELLOW JURORS HAVE DISCUSSED THE EVIDENCE.  YOU NEED TO KEEP

3    AN OPEN MIND BEFORE THEN.  UNTIL THE CASE IS GIVEN TO YOU FOR

4    YOUR DELIBERATIONS, YOU MAY NOT DISCUSS THE CASE WITH EACH

5    OTHER AS WELL.

6         SINCE YOU WILL BE SPENDING SOME TIME TOGETHER, THOUGH, YOU

7    CAN DISCUSS ALL SORTS OF OTHER THINGS.  SO I'M SURE -- I HAVE

8    TO TELL YOU MY LAST JURY BONDED SO WELL, THEY APPARENTLY HAD A

9    BIRTHDAY PARTY IN THERE AND DIDN'T EVEN TELL ME ABOUT IT.  I

10   WAS VERY DISAPPOINTED I DIDN'T GET A PIECE OF CAKE.

11        BUT ANYHOW, THE FIRST DAY YOU'RE HERE, WE'LL HAVE A TRAY

12   OF SNACKS IN THERE BECAUSE I DON'T WANT ANYBODY WHINING.  YOU

13   CAN BRING WATER INTO THE COURTROOM.  IF YOU WANT TO BRING

14   COFFEE, I ALLOW YOU TO.  I DON'T ALLOW THEM TO DO IT BECAUSE

15   THEY MAY GET THINGS DIRTY.  BUT YOU CAN DO THAT, JUST DON'T

16   TELL OUR COURTROOM MANAGER THAT I SAID THAT BECAUSE COFFEE IS

17   NOT SUPPOSED TO BE ALLOWED.  BUT WE'LL HAVE COFFEE AND TEA AND

18   THOSE KINDS OF THINGS FOR YOU.

19        I HOPE EVERYBODY HAS A SAFE AND ENJOYABLE, RESTFUL

20   THANKSGIVING.  AND WE LOOK FORWARD TO SEEING YOU THE TUESDAY

21   AFTER THAT HOLIDAY.

22        ANY QUESTIONS?

23        NO?  IF NOT, YOU ARE DISMISSED TO GO INTO THE JURY ROOM

24   WITH MY COURTROOM DEPUTY WHO WILL GIVE YOU SOME MORE

25   INFORMATION.  THANK YOU VERY MUCH.

```
 1            (JURY EXCUSED FROM THE COURTROOM.)

 2       (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE PRESENCE

 3   OF THE JURY:)

 4            THE COURT:  OKAY.  THE RECORD WILL REFLECT THAT THE

 5   JURY HAS LEFT THE COURTROOM.

 6       WE ARE SCHEDULED TO MEET ON FRIDAY.  ANY ISSUES BEFORE

 7   THEN, COUNSEL?

 8            MR. ISAACSON:  NO, YOUR HONOR.  WE JUST WANTED TO

 9   CLARIFY WHAT THE AGENDA ON FRIDAY IS.  WE DON'T HAVE EXHIBITS

10   YET, AND I DON'T KNOW IF YOU HAVE OTHER ISSUES YOU WANTED TO

11   GO OVER.

12            THE COURT:  THIS WAS REALLY A PLACEHOLDER FOR ALL OF

13   YOU.

14            MR. COUGHLIN:  YES.  YOUR HONOR, I MEANT TO TALK TO

15   YOU THIS MORNING.  IT'S THE EXHIBITS WITH THE EMBEDDED

16   ARTICLES IS REALLY WHAT WE'RE TALKING ABOUT IN THERE.  AND

17   I'LL SEND YOU OVER ANOTHER -- YOU HAVE THAT LIST, BUT I'LL

18   SEND IT OVER AGAIN TONIGHT.

19            MR. ISAACSON:  I --

20            THE COURT:  SO I THINK YOU HAVE THE EMAIL, RIGHT,

21   FROM MY COURTROOM DEPUTY?

22            MR. COUGHLIN:  YES, YOUR HONOR.  WE'LL EMAIL YOU IF

23   WE CAN WORK THIS OUT.

24            MR. ISAACSON:  YES.

25            THE COURT:  YES, I MEAN, IF THERE'S NO REASON TO
```

1   MEET, THEN -- THEN WE DON'T NEED TO.

2       I WAS HOPING TO HAVE DONE BY FRIDAY THE PRELIMINARY JURY

3   INSTRUCTIONS, BUT WE ALSO -- AGAIN, AS SOON AS I GET THOSE TO

4   YOU, I CAN'T -- YOU'RE NOT GOING TO AGREE ON WHAT'S -- WHAT I

5   ULTIMATELY CRAFT, AND WE TALKED, I THINK, ENOUGH ABOUT THAT

6   THIS MORNING SO I DON'T KNOW THAT THERE'S MORE DISCUSSION THAT

7   NEEDS TO BE HAD.

8       AND THEN WE STILL HAVE THE -- WE'LL STILL MEET AGAIN ON

9   MONDAY.  WHAT I'LL PROBABLY DO IS ONCE I SEND THOSE TO YOU,

10  ASK IF YOU HAVE ANY KIND OF MINOR THINGS YOU WANT ME TO DEAL

11  WITH.  AND THAT WAY, WE CAN DEAL WITH THEM AND MAKE COPIES SO

12  THAT WE'RE NOT SCRAMBLING AT THE LAST MINUTE.

13      SO IF YOU DON'T NEED TO MEET, I DON'T NEED TO MEET WITH

14  YOU.

15          **MR. COUGHLIN:**  UNDERSTOOD.

16          **MR. ISAACSON:**  AND THE OTHER POSSIBLE ALTERNATIVE IS

17  IF WE GET DOWN TO A HANDFUL OF DOCUMENTS, PERHAPS A PHONE

18  CONFERENCE COULD HANDLE IT AS WELL.

19          **MR. COUGHLIN:**  I --

20          **THE COURT:**  THAT'S -- THAT'S FINE WITH ME.

21          **MR. COUGHLIN:**  IF THAT'S WHAT WE GET DOWN TO, THAT'S

22  GREAT.  THERE'S MORE THAN THAT NOW.

23          **THE COURT:**  OKAY.  ANYTHING ELSE?

24          **MR. ISAACSON:**  NO, YOUR HONOR.  THANK YOU.

25          **THE COURT:**  ALL RIGHT.  THANK YOU.

 1    WE STAND IN RECESS, THEN, UNTIL FRIDAY UNLESS OTHERWISE

 2    ADVISED.

 3        (PROCEEDINGS WERE CONCLUDED AT 2:27 P.M.)

 4                    --O0O--

 5

 6

 7            **CERTIFICATE OF REPORTER**

 8

 9        I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

10    FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

11    I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO,

12    NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS

13    HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR

14    OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

15

16    _____

17    RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

18    _____

19

20    DIANE E. SKILLMAN, CSR, RPR, FCRR

21

22        THURSDAY, NOVEMBER 20, 2014

23

24

25

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*